CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

NOV 21 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, ET AL., | Case No. 3:17-cv-00072-NKM |
| Plaintiffs, | Hon. Norman K. Moon |
| v. | |
| JASON KESSLER, ET AL., | |
| Defendants. | |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT MICHAEL PEINOVICH

Defendant Michael Peinovich, Pro Se, submits this memorandum in support of his motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### FACTUAL ALLEGATIONS AS TO MICHAEL PEINOVICH

Though Plaintiffs, in a transparent lawfare tactic to try to intimidate, bankrupt, and silence defendant Peinovich and other defendants, have filed a 96-page complaint, the complaint contains no plausible allegations that Peinovich did anything unlawful or not fully protected by the First and Second Amendments to the United States Constitution. Here are the few, sparse, and conclusory allegations that even mention Peinovich:

Page 1 – Peinovich's name appears in the list of defendants.

Page 17, paragraph 43 – Peinovich's name appears in a paragraph describing who he is and where he is from.

Page 19, paragraph 51 – Peinovich's name appears in a list of people that attended the May 13, 2017 demonstrations in Charlottesville. This paragraph makes no allegations of illegal activity.

1

Page 20, paragraph 53 – Peinovich's name appears in a paragraph describing the May 13th event, also making no allegations of wrongful actions.

Page 23, paragraph 63 – Peinovich's name appears in a list of people that allegedly planned and coordinated supposedly "illegal acts that occurred" in Charlottesville on Aug 12, 2017.

Page 40, paragraph 119 - This paragraph alleges that Peinovich and another person announced a general legal fund and gave advice on getting transportation to the event.

Page 43, paragraph 131- This paragraph alleges that Peinovich made a threatening tweet to the business owners in Charlottesville. The tweet was in fact warning the businesses about leftist violence.

Page 54, paragraph 174 - This paragraph alleges that on Aug 12, 2017 Peinovich and others "executed" a supposed plan to carry out ethnic/religious based violence.

Page 65, paragraph 210 - This paragraph speaks of Peinovich being in McIntire park at 1:00pm August 12, 2017. It then talks about a violent incident that allegedly happened there that Peinovich neither witnessed nor ever heard about anywhere else.

Page 65, paragraph 211 - This paragraph alleges Peinovich called the counter-protesters savages. Here is a video of Peinovich's speech: https://www.youtube.com/watch?v=anevSVP-CkI. As the video makes clear, although Peinovich was rightfully critical of the violence threatened and inflicted by the counter-protestors, his speech emphasized the importance of the pro-monument demonstrators peacefully exercising their First Amendment rights.

Page 86, paragraph 298 - This paragraph alleges Peinovich arranged for legal representation and transportation for people attending the rally in order to supposedly engage in illegal acts.

2

Case 3:17-cv-00072-NKM-JCH   Document 118   Filed 11/21/17   Page 2 of 9   Pageid#: 525

Page 86, paragraph 299 - This paragraph alleges Peinovich appeared on a promotional poster for the event.

## ARGUMENT

Three Supreme Court cases demonstrate why this harassing, mendacious, and un-American complaint should be dismissed: *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Snyder v. Phelps*, 562 U.S. 443 (2011).

The Court in *Iqbal* summarized the new pleading standard it had earlier adopted in *Twombly*:

> As the Court held in *Twombly*, 550 U. S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard . . . it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 665.

And further:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

3

and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 665.

The *Twombly* and *Iqbal* cases and the standards they adopt have a direct application to the plaintiffs' complaint in this case.

First, as to all the defendants, but particularly as to Peinovich, the complaint contains nothing but conclusory statements, naked assertions, labels, and "the-defendant-unlawfully-harmed-me accusations."

Second, the *Twombly* and *Iqbal* decisions emphasize that context and common sense are critical in evaluating the complaint's allegations. The obvious context in this case is the defendants' participation in classic First Amendment activity: marching, speeches in parks, carrying signs, expressing political protests. Plaintiffs complain that the defendants' activities were highly offensive, but the Supreme Court has often noted that it is precisely offensive speech that requires First Amendment protection. As the Supreme Court stated in *Snyder v. Phelps*:

> The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U. S. 254, 270 (1964). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U. S. 64, 74–75 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U. S. 138, 145 (1983) (internal quotation marks omitted).
>
> * * *
>
> Given that Westboro's speech was at a public place on a matter of public concern, that speech is entitled to "special protection" under the First Amendment. Such speech cannot be restricted simply because it is upsetting or arouses contempt. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U. S. 397, 414 (1989). Indeed, "the point of all

4

speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U. S. 557, 574 (1995).

The jury here was instructed that it could hold Westboro liable for intentional infliction of emotional distress based on a finding that Westboro's picketing was "outrageous." "Outrageousness," however, is a highly malleable standard with "an inherent subjectiveness about it which would allow a jury to impose liability on the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular expression." *Hustler*, 485 U. S., at 55 (internal quotation marks omitted). In a case such as this, a jury is "unlikely to be neutral with respect to the content of [the] speech," posing "a real danger of becoming an instrument for the suppression of . . . 'vehement, caustic, and sometimes unpleasan[t]'" expression. *Bose Corp.*, 466 U. S., at 510 (quoting *New York Times*, 376 U. S., at 270). Such a risk is unacceptable; "in public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U. S. 312, 322 (1988) (some internal quotation marks omitted). What Westboro said, in the whole context of how and where it chose to say it, is entitled to "special protection" under the First Amendment, and that protection cannot be overcome by a jury finding that the picketing was outrageous.

Plaintiffs' affront to First Amendment principles is all the more egregious given that they seek not only damages – no doubt huge damages – but "[i]njunctive relief enjoining Defendants from future violations of rights guaranteed by state and federal law," i.e., an injunction that will intimidate defendants from ever again stepping outside the narrow confines of political orthodoxy.

Third, as the Court stated in *Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Even assuming, contrary to fact, that the defendants' conduct as alleged in the complaint could somehow be viewed as actionable, that conduct is also manifestly subject to being viewed as activity protected by the First and Second Amendments. Accordingly, the alleged conduct "stops short of the line between possibility and plausibility" that it must reach under *Twombly* and *Iqbal*. The facts and holding in *Twombly* are instructive:

5

there, where the alleged Sherman Act conspiracy could be viewed as actionable but also as nonactionable, the motion to dismiss was granted.

Fourth, the Court in *Twombly* rejected the "just let the case go to discovery and summary judgment" rationale that the plaintiffs will undoubtedly invoke in this case. The Court stated:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. *See, e.g.,* Easterbrook, *Discovery as Abuse*, 69 B. U. L. Rev. 635, 638 (1989) (Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves). And it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a ß1 claim.

The plaintiffs in this case have enormous resources on their side. Several major law firms, no doubt working pro bono, with probably dozens of attorneys and deep pockets for depositions and other discovery expenses, are lined up to represent them. Peinovich, by contrast, has not been able to find a single lawyer licensed in Virginia to take his case, despite the supposed but apparently illusory ethical obligation lawyers have to represent unpopular clients and to assure at least a semblance of a fair trial. Massive, expensive, drawn out, and invasive discovery will in itself be a huge *in terrorem* victory for the plaintiffs, and probably the only realistic victory they hope to achieve, given the indigence of most of the defendants.

## CONCLUSION

The complaint in this case is a spurious, albeit well financed, act of lawfare that should shame any attorney who has a genuine respect for principles of free speech and assembly. Its aim is to intimidate and bankrupt the defendants, and its authors care little if they damage the First Amendment in the process. The complaint should be dismissed immediately as to Peinovich and all other defendants.

Peinovich adopts and incorporates the motions to dismiss and supporting memoranda filed by defendants League of the South and Matthew Parrott.

Respectfully submitted,

Michael Peinovich, Pro Se

## CERTIFICATE OF SERVICE

On this 16th day of November, 2017, I Michael Peinovich certify that I mailed copies of this memorandum in support and the accompanying motion to:

Alan Levine
Cooley LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036

7

Christopher Bradford Greene
Julie Eden Fink
Roberta Ann Kaplan
Seguin Layton Strohmeier

Kaplan & Company, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118


David E. Mills
Cooley LLP
1299 Pennsylvania Avenue, NW,
Suite 700
Washington, DC 20004


Joshua James Libling
Philip Matthew Bowman
Yotam Barkai
Boies Schiller Flexner, LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022

Karen Leah Dunn
William Anthony Isaacson
Boies Schiller Flexner, LLP
1401 New York Avenue, NW
Washington, DC 20005


Robert T. Cahill
Cooley LLP
11951 Freedom Drive
Reston, VA 20190


Nathan Damigo
14773 Orange Blossom Road
Oakdale, CA 95361
PRO SE

Elmer Woodard
5700 US Hwy 29

Blairs, VA 24527

**Justin Saunders Gravatt**
Duane, Hauck, Davis &
Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220

**Bryan Jeffrey Jones**
Bryan J. Jones, Attorney at law
106 W. South Street, Suite 211
Charlottesville, VA 22902

_____
Michael Peinovich