CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 26 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ELIZABETH SINES, et al., | Case No. 3:17-cv-00072-NKM |
| Plaintiffs, | Hon. Norman K. Moon |
| v. | |
| JASON KESSLER, et al. | |
| Defendants. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
FRATERNAL ORDER OF ALT-KNIGHTS' MOTION TO DISMISS

I. BACKGROUND

On October 11, 2017, plaintiffs filed a 96-page complaint alleging four causes of action of civil rights conspiracy and racial, religious, ethnic animosity against the Fraternal Order of the Alt-Knights (FOAK) and all other defendants. (ECF 1, Counts 1, 2, 3 & 5). On December 21, 2017, Mr. Kyle Chapman c/o FOAK was personally served with the initial Summons and Complaint in Oakland, California.

On January 5, 2018, plaintiffs amended their complaint and filed a longer 110-page pleading alleging three causes of action of federal and state civil rights conspiracy in violation of 42 U.S.C. § 1985(3), § 1986 and Virginia Codes against FOAK and all other defendants. (ECF 175, Counts 1, 2 & 3). Plaintiffs dropped the racial, religious or ethnic harassment claim against FOAK. (ECF 1, Count 5). On January 10, 2018, Mr. Chapman was served with the First Amended Complaint via U.S. postal certified mail to his residence in Daly City, California. Fed. R. Civ. P. 6(d).

FOAK hereby moves to dismiss itself from the instant action pursuant to Federal Rules of Civil Procedure sections 12(b)(2) and 12(b)(6).

1

## II. LEGAL ARGUMENT

### a. Plaintiffs' Complaint Against FOAK Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) For Lack Of Personal Jurisdiction

#### i. FOAK Is Not An Unincorporated Association And Does Not Perform Activities In Virginia

Plaintiffs have alleged that FOAK is an unincorporated association pursuant to Virginia Code § 8.01-15 (FAC ¶ 41). Section 8.01-15 defines unincorporated associations as those which are commonly known or called by a name "under which they do business." It also provides for judgments to attach to the "real and personal property ... as if it were incorporated." Virginia Code § 8.01-15.

FOAK is a loosely created grass root social media Facebook Group[1] and/or Twitter handle[2] (Declaration of Kyle Chapman ("Chapman Decl.") ¶ 3). It conducts no business, for

---

[1] A Facebook Group is a place for people to share their common interests and express their opinion. They let people come together around a common cause, issue, express objectives, discuss issues, post photos and share related content. Any Facebook user can make a group. Members are able to leave the group as they please. Facebook Groups can be deleted by removing all the members. https://www.facebook.com/help/162866443847527.
 FOAK does not have any control over anyone who wishes to create a Facebook FOAK Group page or any iteration thereof. A search for FOAK can easily yield multiple Groups with similar or same names that are in no way affiliated with each other. (Chapman Decl. ¶ 3).

[2] A Twitter handle is a username selected by anyone using social media platform Twitter. A Twitter profile is the page that displays information about a particular user, person or group. Following someone on Twitter simply means subscribing to their tweets or messages so they can receive and read them, but does not necessarily mean they agree or share the same common belief or opinion. Twitter followers are the people who follow or subscribe to another person's tweets. https://help.twitter.com/en. As plaintiffs point out, Twitter is just a "social media site where [users] share and post information." (FAC ¶ 277).
 Just like the Facebook Groups, Twitter allows users to create same or similar FOAK handles that are in no way affiliated with each other. (Chapman Decl. ¶ 3).

profit or otherwise. (Chapman Decl. ¶ 4). It does not have an official membership process nor does it collect any dues or payments. (Chapman Decl. ¶ 5). FOAK never had an office, agent or property in Virginia. (Chapman Decl. ¶ 6). Nor is it capable of holding property. (*Id.*). FOAK never reached into Virginia to solicit or initiate business, including creating a Virginia Facebook Group or Twitter handle.[3] (Chapman Decl. ¶ 7). FOAK does not transact or perform any activities in Virginia. (Chapman Decl. ¶ 8). In short, FOAK does not meet the Virginia statutory definition of an unincorporated association. Standing alone, these allegations are insufficient to establish FOAK as an unincorporated association under Virginia law. They are further insufficient to establish that FOAK may be sued under it's common name under federal law. Fed. R. Civ. P. 17(b)(3).

### ii. Plaintiffs Cannot Provide Any Grounds On Which This Court Can Have Personal Jurisdiction Over FOAK

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of an action when the court lacks personal jurisdiction over the defendant. "When the exercise of personal jurisdiction is challenged pursuant to Rule 12(b)(2), Fed.R.Civ.P., the question 'is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence.'" *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681, 683-84 (E.D. Va. 1999) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Virginia has a three-part test to determine whether specific personal jurisdiction is met. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers. Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) ("(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether

---

[3] In fact, Mr.Chapman has never even been to Virginia or set foot on the state of Virginia. (Chapman Decl. ¶ 10).

3

the exercise of personal jurisdiction would be constitutionally 'reasonable.'"). As discussed above, *supra* Section II.a.i, the first and third part of the personal jurisdiction test cannot be met because FOAK is not a corporate or unincorporated association or otherwise; nor does it transact or perform any activities within the state of Virginia. (Chapman Decl. ¶¶ 3-8).

Plaintiffs may argue that they have satisfied the second part of the test by alleging that (i) the facts that give rise to their complaint rose from events occurring in Charlottesville, Virginia; (ii) Agustus Sol Invictus is second in command at FOAK and was at the Charlottesville rallies; and (iii) unidentified FOAK members' participated in the Charlottesville rallies. (FAC ¶¶ 40-41, 63, 85, 143, 150, 159, 182, 187, 329)); *Lozinski v. Lozinski*, 185 W.Va. 558 (1991); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). These are mere conclusory allegations and neither explicitly or implicitly allege that anyone, including Invictus, was acting as an agent, servant or on behalf of FOAK. If there were any FOAK members at the rally, they attended them on their own accord and not as a representative of FOAK. (Chapman Decl. ¶ 9). At most, FOAK may be connected to some parties in this case, but without more, this does not show how FOAK's limited actions or non-actions within Virginia are connected to the claims in the complaint. *Tucker v. Thomas*, 853 F. Supp. 2d 576 (2012).

Finally, FOAK must be dismissed from this lawsuit as other defendants already sued are the appropriate parties in interest.

### b. Plaintiffs' Complaint Against FOAK Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) For Failure To State A Cognizable Claim

Even if the complaint were not barred by lack of personal jurisdiction, it would nevertheless warrant dismissal under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; it does not "resolve contests surrounding the

facts, the merits of the claim, or the applicability of defenses." *See Butler v. United States*, 702 F.3d 749, 752 (2012) (citing *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesvile*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In essence, the plaintiffs must "nudge [their] claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). In deciding whether the plaintiffs have met this plausibility standard, the reviewing court must take as true all well-pleaded facts in the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Even after amending their complaint, plaintiffs still fail to state a cognizable claim against FOAK. Instead, plaintiffs' complaint is replete with irrelevant, inflammatory, prejudicial and immaterial allegations that provide no support to any of their claims. After stripping away all the hyperbole, the factual content of the allegations against FOAK are sparse (FAC ¶¶ 40-41, 63, 187) and do not allow the Court to draw reasonable inferences that FOAK is liable for the misconduct alleged. *Iqbal*, 566 U.S. at 678. Instead, the complaint makes only conclusory legal allegations without averring to any facts that FOAK directly and/or proximately caused tortious injury through its affiliation and networking with other defendants. This is a case "where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of

5

misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted) (citing Fed. R. Civ. P. § 8(a)(2)).

Thus pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must be dismissed in its entirety against FOAK due to its failure "to state a claim upon which relief can be granted[.]"

### i. FOAK Cannot Be Held Responsible For Any Alleged Members Actions

Merely averring that FOAK members were at the Charlottesville events (FAC ¶¶ 40-41, 63, 85, 143, 150, 159, 182, 187, 329) or claiming unidentified FOAK members were part of the civil conspiracy that promoted the alleged harassment and violence at Charlottesville, does not nudge the plaintiffs' claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. To the extent that plaintiffs claim that FOAK is responsible for any alleged conspiracy actions before, during or after the Charlottesville events under the doctrine of respondent superior, this claim must fail since FOAK cannot be joined in this action under this theory. While respondent superior typically applies to an employer-employee context, it can operate in settings beyond formal employment. *Black's Law Dictionary* (9th ed. 2009) ("[t]he [respondent superior] doctrine hold[s] an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency"). However, plaintiffs neither explicitly or implicitly allege that anyone, including Invictus, was acting as an agent or servant of FOAK. As such, plaintiffs have failed to plead sufficient facts to state a claim against FOAK on the basis of respondent superior.

### ii. FOAK Cannot Be Held Liable For Misconduct Of Third-Parties

In addition, averring to unnamed or unidentified defendants or phantom third-party co-conspirators (*e.g.*, FAC ¶¶ 4, 45, 78, 81, 98, 106, 109, 120-121, 130, 135, 149-150, 153, 157-

158, 165-166, 168-169, 172, 175-176, 187-188, 201-202, 216, 217, 222, 234-235, 259) do not further plaintiffs cause as they are baseless and therefore must be dismissed. A liable-by-association legal doctrine which plaintiffs desire for this Court to create would result in people not exercising their free speech rights for fear of being sued for what a third-party may do. Furthermore, plaintiffs' complaint lacks any specific factual allegations that FOAK conspired with anyone; defendants, co-conspirators, or otherwise, to engage in any criminal conduct. Although third-parties are alleged to have discussed hypothetical violence before, during or after the rally, such statements cannot be imputed to FOAK to establish that FOAK conspired to act in an illegal manner.

The allegations made against FOAK are conclusory and not well-pleaded with averments of act. Members of the social media FOAK Group or Twitter handle that may share the members at the Charlottes rally's right to exercise their First and Second Amendment rights and/or protect and defend the statute of General Robert E. Lee from removal at a permitted public rally (FAC ¶¶ 47-48, 55, 61) does not constitute an actionable conspiracy in and of itself, and FOAK therefore is not liable for what any third-parties may have or may not have done.

### c. Plaintiffs' Federal Conspiracy Claims (Counts 1 & 2) Against FOAK Under 42 U.S.C. §§ 1985(3) & 1986 Fail And Must Be Dismissed

42 U.S.C. § 1985(3) is not intended to serve as a "general federal tort law," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). It therefore "does not itself create any substantive rights but rather merely serves as a vehicle for vindicating some otherwise defined federal right, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

In order to state a claim for a private conspiracy under the "equal protection" clause of § 1985(3), the plaintiff must allege that "the conspiracy was: (1) motivated by a class-based

7

invidiously discriminatory animus; and (2) aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

In addition, a "civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Tucker v. Thomas*, 853 F. Supp. 2d 576 (2012) (quoting *Dunn v. Rockwell*, 225 W.Va. 43 (2009)). The existence of the conspiracy must be factually alleged to support a claim of civil conspiracy. "The essence of a conspiracy is an agreement between two or more persons to accomplish an unlawful purpose." *Id.* (quoting *Precision Piping & Instruments, Inc. V. E.I. duPont De Nemours & Co.*, 707 F. Supp. 225, 229 (S.D.W.Va. 1989)). The Fourth Circuit expressed the need to support conclusory statements and recitations of legal terms of art with factual allegations. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (the court need not accept plaintiffs' legal conclusions and unwarranted inferences or arguments).

Though plaintiffs' complaint rambles on for 110 pages and includes 375 numbered paragraphs, it contains no colorable allegation FOAK tried to, or conspired to, impair any of the plaintiffs' civil rights. Plaintiffs' failure to allege how FOAK was affirmatively linked to any of the alleged conspiracy actions in Charlottesville is also fatal to the statutory claims. § 1985(3) requires the pleading of at least some facts that show FOAK's participation in a conspiracy. That Invictus was a member of the FOAK's Facebook group[4] is not sufficient to show the existence of a conspiracy. (FAC ¶¶ 40-41). Neither does averring to the existence of unnamed or unidentified FOAK members sufficient. (*e.g.*, FAC ¶¶ 40-41, 63, 85, 143, 150, 159, 182, 187, 329); *see also supra* Section II.b.i. Conclusory and speculative allegations are insufficient to

---

[4] Invictus removed himself as a member of the FOAK Facebook group on or about November, 2017. (Chapman Decl. ¶ 11).

state a claim under federal law. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013); *Lucas v. Kale*, 364 F. Supp. 1345 (W.D. Va. 1973) (court dismissed 42 U.S.C. § 1985 claim by pointing out that plaintiff had provided no evidence of conspiracy, and no indication that defendants were attempting to deprive him of equal protection of laws or equal privileges and immunities under law, nor any evidence of purposeful intent to discriminate, but had offered vague complaint that defendants acted in concert to deny him civil rights).[5]

The plaintiffs, collectively, failed to state sufficiently specific factual allegations against FOAK. Rather the complaint is peppered with conclusory generalizations -- plaintiffs claim they are "white, brown, and black; Christian and Jewish; young and old" and "they share a deep love of this country, their city, and [their] values" (FAC ¶ 2). While defendants, including FOAK are "neo-Nazi, Klansmen, white supremacist, and white nationalist" who "all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others in Charlottesville. They also coordinated with numerous named and unnamed co-conspirators" "to engage in, promote, and incite racial, religious, and ethnicity-based harassment and violence" on the residents of Charlottesville. (FAC ¶¶ 3, 63, 312-335). However, plaintiffs fail, throughout their complaint, to put any factual meat on these conclusory bones. (*See e.g.*, FAC ¶¶ 45-48, 63, 68-72, 80-81, 98, 106, 109, 124-125, 149, 153, 168, 173,

---

[5] Just because plaintiffs disagreed with the opinions or beliefs by those at Charlottesville, that is not evidence that FOAK conspired to violate their civil rights. *Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008); *Aryan v Mackey*, 462 F. Supp. 90 (N.D. Tex. 1978) (mere conjectures insufficient to demonstrate deprivation of constitutional rights); *Adams v. Teamsters Local 115*, 214 Fed. App'x 167 (3rd Cir. 2007) (plaintiffs concede claims were not actionable because they could not show that they were members of protected group or motivated by discriminatory animus directed toward their political affiliations); *McIntosh v. Arkansas Republican Party-Frank White Election Comm.*, 766 F.2d 337 (8th Cir. 1985) (where only evidence to support claim that exclusion is motivated by race is activist's own conclusory statement and where in fact luncheon is attended by racially mixed audience); *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) (derogatory references to racial or ethnic background by themselves do not rise to level of deprivation of constitutional rights).

175-176, 187, 193, 209, 215-216, 233-235). Importantly, plaintiffs never explain specifically how FOAK personally did anything to them nor how FOAK "conspired" with anybody other to do anything other than hold lawful political rallies. (*e.g.*, FAC ¶¶ 40-41, 63, 85, 143, 150, 159, 182, 187, 329).

Similarly, plaintiffs' 42 U.S.C. § 1986 claim must also fail since plaintiffs failed to state a § 1985 claim. Plaintiffs' cause of action under § 1986 requires that FOAK knew of the § 1985(3) conspiracy and had the power to prevent the commission of same, and neglects or refuses to do so. Since plaintiffs have not established a claim against FOAK under § 1985(3), the interrelated and dependent cause of action under § 1986 must also be dismissed. *Proffitt v. United States*, 758 F. Supp. 342, 345 (E.D. Va. 1990).

Accordingly, Counts 1 and 2 of plaintiffs' complaint must be dismissed against FOAK.

### d. Plaintiffs' State Conspiracy Claim (Count 3) Against FOAK Under Virginia Codes Fail And Must Be Dismissed

Plaintiffs state conspiracy claims under various Virginia Code statutes fare no better and must be dismissed because Virginia law does not allow for a civil cause of action based on violations of criminal statutes. *Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 429 S.E.2d 31 (1993). Federal Courts have recognized this prohibition. *Pace v. Medco Franklin Re, LLC*, 2013 WL 3233469, at *4 (E.D. Ky June 24, 2013). Actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious. *Dunlap v. Cottman Transmission Systems, LLC*, 754 S.E. 2d 313, 317 (Va. 2014); "[I]n Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007) ("Civil conspiracy is merely a method of establishing joint liability for the underlying

tort."); *Commercial Bus. Sys. v. Hailfax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892 (1997); *Gilber v. Glock*, 800 S.E.2d 800, 820-21 (2017) ("A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."). All of Plaintiffs allegations derived from Title 18 of the Virginia Code must be dismissed as against FOAK, as they are all defined as crimes under Virginia law and are therefore not civilly actionable.

Even if plaintiffs were able to cite to the Virginia Codes statutes for their civil conspiracy claim (which they cannot), based on the allegations plead in the complaint they still cannot meet any of the factual threshold requirement to hold FOAK liable. As detailed more fully below, *infra* Section II.d.i, the underlying pleaded facts do not support any violations of plaintiffs by FOAK pursuant to Virginia Code sections 8.01-42.1 (intimidation, harassment or violence directed against a person motivated by racial, religious, or ethnic animosity); 18.2-38 & 18.2-42 (mob assault or battery); 18.2-42.1 (mob violence); 18.2-46.5 (conspires or aids and abets in commission of an action of terrorism); 18.2-52 (bodily injury by means of acid, lye or other caustic substance or explosive or fire); 18.2-408 (conspire to produce a riot); 182.415 (disorderly conduct due to intoxication or act of violence); 18.2-423.01 (intimidation); assault; battery or false imprisonment. (FAC ¶ 351).

### i. Individual Plaintiffs Fail To State A Claim Against FOAK

Individual plaintiff's allegations fare no better.

### 1. Plaintiff Elizabeth Sines

Sines alleges that she witnessed the events at Charlottesville, including where defendant James Alex Fields, Jr. drove his car into a crowd. (FAC ¶¶ 15, 254-255, 294).

Sines makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Sines never explains how FOAK conspired with others to perpetrate any her claims.

### 2. Plaintiff Seth Wispelwey

Wispelwey alleges that he was providing security services at a church during the Charlottesville event. An hour after service ended, he drove some clergies back to their hotels. Outside the hotel, defendant Invictus walked towards him and stated "What the hell are you doing" and demanded that he reveal which church he belonged to. Then Wispelwey walked towards Emancipation Park where he was confronted by unidentified defendants and co-conspirators and was knocked into a bush. An unidentified co-conspirator then stared at him and shouted "fuck you, faggot." (FAC ¶¶ 11, 178-182, 205-210, 290).

Wispelwey makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Wispelwey never explains how FOAK conspired with others to perpetrate any his claims.

### 3. Plaintiff Marissa Blair

Blair alleges she is multi-racial and while counter-protesting on Fourth Street, was almost hit by the car driven by defendant Field and allegedly sustained injuries to her hematoma and a gash on her right arm. (FAC ¶¶ 16, 243-244, 287).

Blair makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Blair never explains how FOAK conspired with others to perpetrate any her claims.

### 4. Plaintiff Tyler Magill

Magill alleges he ran through a crowd and locked arms with other counter-protesters at the Rotunda. Then he alleges that unidentified defendants and co-conspirators threw an unidentified fluid on him. Four days following the Charlottesville events, he collapsed at his place of work and suffered a stroke. Magill alleges the medical professionals maintain the stroke was due to trauma to his neck. (FAC ¶¶ 10, 166-169, 283-285).

Aside from the extreme unlikelihood of Magill being able to successfully link his stroke to a four-day old event, he makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Magill never explains how FOAK conspired with others to perpetrate any of the things he claims of.

### 5. Plaintiff April Muniz

Muniz alleges that she followed the Charlottesville rally participants towards McIntire Park to counter-protest and then to Fourth Street where she was almost hit by the vehicle driven by defendant Field and as result suffered an acute stress reaction. (FAC ¶¶ 20, 234, 254-256, 291-292).

Muniz makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Muniz never explains how FOAK conspired with others to perpetrate any her claims.

### 6. Plaintiff Hannah Pearce

Pearce alleges she is Jewish and went to counter-protest at Charlottesville Emancipation Park with her son. While there an unidentified co-conspirator pointed at her and said "Oh good, they are marking themselves for us, so it is easy to find them." Then another unidentified co-conspirator threw an open bottle of foul liquid at her. (FAC ¶¶ 14, 220-221, 295). Pearce further

alleges that due to her fears of the upcoming Charlottesville events, the synagogue to which she belongs decided to move and hide a sacred scroll. (FAC ¶ 138).

Pearce makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Pearce never explains how FOAK conspired with others to perpetrate any her claims.

### 7. Plaintiff Marcus Martin

Martin alleges he is African-American and was counter-protesting on Fourth Street when he saw defendant Field driving down the road. Martin alleges was struck by the vehicle and sustained injuries, including a broken leg, fractured ankle and bruises. (FAC ¶¶ 17, 243-245, 286).

Martin makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Martin never explains how FOAK conspired with others to perpetrate any his claims.

### 8. Plaintiff Natalie Romero

Romero alleges she is Colombian-American and was counter-protesting at the Charlottesville Rotunda. Then unidentified defendants and co-conspirators threw an unidentified fluid on her. She further alleges she was pushed against a police car and spit on by unidentified defendants and co-conspirators. She further alleges that while counter-protesting on Fourth Street, she was struck by the vehicle driven by defendant Field. She alleges she suffered a skull fracture as a result. (FAC ¶¶ 18, 165-169, 171, 211, 243, 249-251, 288). After the events, Romero further alleges she received four harassing phone calls from unidentified Klan members trying to sell her a Dodge Challenger. (FAC ¶¶ 58, 274-275). Finally, she alleges she is on a list of antifa

members, including those "known to be violent" who had attended the Charlottesville rally. (FAC ¶¶ 276-277).

Romero makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Romero never explains how FOAK conspired with others to perpetrate any her claims.

### 9. Plaintiff Chelsea Alvarado

Alvarado alleges she was counter-protesting on Fourth Street when she struck by the vehicle driven by defendant Field and fell to the ground and suffered a concussion and contusions to her legs. (FAC ¶¶ 19, 243, 252-253, 289).

Alvarado makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Alvarado never explains how FOAK conspired with others to perpetrate any her claims.

### 10. Plaintiff John Doe

Doe alleges that he is African-American and while he counter-protesting at the Rotunda, was encircled by unidentified defendants and co-conspirators. Then the unidentified defendants and co-conspirators allegedly threw an unidentified fluid on him. He also alleges he was maced during this time. (FAC ¶¶ 13, 165-174, 293).

Doe makes no specific allegations whatsoever against FOAK and therefore fails to state any claim against FOAK. Further Doe never explains how FOAK conspired with others to perpetrate any his claims.

Accordingly, Count 3 of plaintiffs' Complaint must be dismissed against FOAK.

### e. In The Alternative, Plaintiffs' Request For Compensatory & Punitive Damages Should Be Dismissed

In the alternative, if FOAK is not dismissed from the instant action, then FOAK requests that plaintiffs be barred from seeking compensatory and punitive damages.

In Virginia, compensatory damages are damages "allowed as a recompense for loss or injury actually received and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury to the reputation, and the like." *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494 (E.D. Va. 2010) (citing *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 276 (1967)). As plead in the complaint, there are no strong factual support that FOAK caused the plaintiffs to suffer any of their alleged damages. *See also, supra*, Section II.b.

Furthermore, the Supreme Court of Virginia has "repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Madison v. Acuna*, No. 6:12-CV-00028, 2012 WL 6196450, at *3 (W.D. Va. Dec. 12, 2012) (citing *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992). In order to justify an award of punitive damages, therefore, a defendant's acts must constitute "willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others." Va. Code § 8.01-52(5); *see also Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003) ("A claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton.") (citations omitted); *Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934) ("reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result"); *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999) ("each case ... must be evaluated on its own facts, and a defendant's entire conduct must be considered in determining whether his actions or omissions present such a question for a jury's determination"). Looking at the facts as

alleged in the complaint here, the Court should find that FOAK neither acted willfully or in a wanton negligent manner or demonstrated a conscious disregard for the safety of others, and grant FOAK's claim to dismiss punitive damages.

### III. CONCLUSION

For the reasons stated above, the Court should dismiss all claims against FOAK. Since the defects with those claims are inherent and incurable, dismissal should be with prejudice. The Court should also order any and all such relief as it deems necessary and just, including (i) Mr. Chapman's attorneys' fees and costs related to this action; and (2) sanctions pursuant to Federal Rule of Civil Procedure 11 (sanctions justified for filing improper pleading for improper purpose, such as to harass defendants with frivolous claims); *In re Edmond*, 934 F.2d 1304, 1313 (4th Cir. 1991).

Dated: January 26, 2018

In Pro Per
Kyle Chapman
c/o Fraternal Order of Alt-Knights
52 Lycett Circle
Daly City, CA 94015
kyleschapman@yahoo.com