**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,

Plaintiffs,

v.

JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSELY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,

Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHAEL PEINOVICH'S MOTIONS TO QUASH AND TO REQUIRE COMPLIANCE WITH RULE 45**

On February 14, 2018, Defendant Michael Peinovich filed a Motion to Quash Plaintiffs' Subpoenas to Twitter, GoDaddy, Cloudflare, and Hatreon as docket number 226 ("Motion to Quash"). On February 20, 2018, Defendant Peinovich filed a Motion to Require Plaintiffs' Full Compliance with Fed. R. Civ. P. 45(A)(4) and (B)(4) or in the Alternative to Quash as docket number 229 ("Rule 45 Motion"). Because the two motions are related, Plaintiffs hereby respond in opposition to both motions.

## PRELIMINARY STATEMENT

Defendant Peinovich has moved to quash subpoenas (to which he lacks the standing to object) in the wrong court, articulating no cognizable interest in the materials called for by those subpoenas. Based on a misreading of the Federal Rules, he also complains that he did not receive information to which he is not entitled. For the reasons set forth below, Defendant Peinovich's Motion to Quash and Rule 45 Motion should both be denied.

## BACKGROUND

These motions relate to four non-party subpoenas (the "Subpoenas") Plaintiffs issued to gather evidence related to Defendants' and their co-conspirators' coordination of and planning for racially-motivated violence they committed in Charlottesville on August 11 and 12. The Subpoenas are briefly summarized below.

<u>GoDaddy</u>. Plaintiffs issued a subpoena to GoDaddy, a web services company that previously provided services to two relevant websites: the Daily Stormer and AltRight.com. The Daily Stormer was published by Defendant Anglin and was a key communications tool used in connection with Defendants' conspiracy. As alleged in the First Amended Complaint ("FAC"), ECF No. 175, Daily Stormer was named after Der Stürmer, a Nazi propaganda tabloid known for virulently anti-Semitic caricatures and published by Julius Streicher, who was later convicted of crimes against humanity at Nuremberg. (FAC ¶ 25.) Anglin and his associates at Daily Stormer, including Defendant Robert "Azzmador" Ray, used Daily Stormer to 'make a racist army.'" (*Id.*) Daily Stormer established "meet ups" and chat rooms that co-conspirators and attendees used throughout the August 11 and 12 weekend

to coordinate their violence. (*Id.*) Defendant Anglin orchestrated the movements of Daily Stormer followers and incited them to violence on a live feed that streamed contemporaneously with the events as they occurred on August 11 and 12 in Charlottesville. (*Id.*)

Altright.com, as alleged in the FAC, was a communication tool used by Defendant Spencer. In advance of the August 11 and 12 events, one posting on Altright.com explained: "Our ideas dominate the internet . . . Now it's time to dominate the streets. . . . You might think it's just a rally, but really, it's so much more . . . . We are telling the anti-White establishment and it's [sic] attack dogs that we are not going to give another inch . . . And now we have come to the tipping point." (*Id.* ¶ 87.)

GoDaddy likely has information about content posted on both of these websites that is no longer publicly available, as well as GoDaddy may also have information about who updated the websites to communicate these messages and whether any other Defendants or individuals who engaged in violence accessed the messages, which will help Plaintiffs establish the details of the coordination among Defendants and co-conspirators. This information will also be important to Plaintiffs' efforts to authenticate statements made on Altright.com and the Daily Stormer.

Cloudflare. The Cloudflare subpoena seeks information similar to the GoDaddy subpoena. The primary difference is that Cloudflare provided services to Defendant Peinovich's website, RightStuff.biz, in addition to the Daily Stormer and AltRight.com. Defendant Peinovich uses The Right Stuff website to host his podcast, or "talk show," among other uses. Previous podcasts on The Right Stuff have discussed extreme violence in conjunction with the Charlottesville rally, (*id.* ¶ 96 (opining about the impossibility of "Beat[ing] up the wrong n[******]" and discussing gassing Jews)), and to organize logistics for the rally, (*id.* ¶ 129). Like GoDaddy, Cloudflare likely has information about content posted on both of these websites that is no longer publicly available, as well as information about who updated the websites to communicate these messages and whether any other Defendants or individuals who engaged in violence accessed the messages. Again, this information will help Plaintiffs establish the details of the coordination among Defendants and co-conspirators.

Hatreon. Plaintiffs issued a subpoena to Hatreon, a crowd-funding site used by Defendants in connection with the conspiracy alleged in the FAC. Defendant Cantwell, for example, used Hatreon to raise money for bail after he was arrested for felonies committed on August 11 and 12, 2017, in Charlottesville. Plaintiffs have requested information about transactions on Hatreon relating to the events in Charlottesville. This information is relevant to establishing coordination among the Defendants and their co-conspirators before, during, and after the events of August 11 and 12.

Twitter. Defendants issued a subpoena to Twitter because, as alleged in the FAC, and based on publicly available materials, various Defendants and co-conspirators used Twitter to confirm their attendance at the Charlottesville rallies, to encourage others to attend, and to disseminate information about the rally, including the planned violence. Twitter was also a primary mechanism for communication during the rally and a means of disseminating instructions between and among co-conspirators. (*See, e.g.*, *id.* ¶ 80.) While some of Defendants' communications were in the form of public messages, Twitter users can also communicate in non-public ways. In addition, some of those messages, public or private, may have subsequently been deleted by the users, but are still accessible to Twitter. The subpoena also seeks information about Twitter users who communicated with the Defendants and their co-conspirators during a short period around the time of the Unite the Right rally to enable Plaintiffs to identify additional third parties who may have relevant information.

## ARGUMENT

As a threshold matter, a motion to quash may only be made in "the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A), (B). Compliance is not required in this District for any of the Subpoenas.[1] Accordingly, the Court cannot grant Defendant Peinovich's motion to quash.[2]

[1] The relevant places of compliance are: Twitter and Cloudflare – Oakland, California; GoDaddy – Phoenix, Arizona; and Hatreon – Austin, Texas. (S*ee* Exhibit A to Motion to Quash, ECF No. 226 2, at 2; Exhibit C to Motion to Quash, ECF No. 226-4, at 2; Exhibit B to Motion to Quash, ECF No. 226-3, at 2; and Exhibit D to Motion to Quash, ECF No. 226-5, at 2.)

[2] To the extent the Court treats this motion as a motion for a protective order, the motion should nevertheless be denied for the reasons stated below.

Moreover, even if this were the correct venue, Defendant Peinovich lacks standing to move to quash the Subpoenas. The Fourth Circuit has held that a party lacks standing to move to quash a subpoena issued to a nonparty unless the party seeking to challenge the subpoena can show a personal right or privilege in the information sought by the subpoena. *U.S. v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005). Here, Defendant Peinovich fails to show that he has a personal right or privilege in the information sought by the Subpoenas—indeed, Defendant Peinovich does not even attempt to show such an interest.

Defendant Peinovich plainly has no "personal right or privilege" in the information sought by the Subpoenas with respect to users other than himself. And courts have held that an internet or social media user lacks standing to suppress discovery from internet and social media sources even as to the user's own information. In *People v. Harris*, for example, a New York court held that an individual did not have standing to move to quash a subpoena directed to Twitter because the defendant had no proprietary or privacy interest in his tweets or user information. 945 N.Y.S.2d 505, 508-10 (Crim. Ct. 2012). In that case, the defendant, Malcolm Harris, was charged with disorderly conduct in connection with an "Occupy Wall Street" protest. *Id*. at 506. The New York County District Attorney sent a subpoena to Twitter seeking "user information including email address, and Tweets posted for the period of September 15, 2011 to December 31, 2011, for the Twitter account @destructuremal, the Twitter account which is allegedly used by Malcolm Harris." *Id*. The defendant moved to quash the subpoena. *Id*. at 507. Analogizing the information sought to customer bank records, which the United States Supreme Court has held are business records of the bank in which a customer has no proprietary interest, *United States v. Miller*, 425 U.S. 435 (1976), and relying upon Twitter's terms of service,[3] the

[3] Twitter's terms of service provide: "By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods (now known or later developed)." *Available at* https://twitter.com/en/tos.

court held that the defendant lacked standing to challenge the subpoena because the defendant had no proprietary or privacy interest in the information being sought. *Harris*, 945 N.Y.S.2d at 508-10.

Even if Defendant Peinovich had standing, the motion would still fail because he has failed to establish that any of the grounds for quashing a subpoena exist here. A subpoena must be quashed, upon timely motion, if it (1) fails to allow reasonable time to comply, (2) requires a person to comply beyond the geographical limits of Rule 45, (3) requires disclosure of privileged or protected material, or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). A subpoena may also be quashed if it requires disclosure of a trade secret or other sensitive commercial information or the opinion of an un-retained expert. Fed. R. Civ. P. 45(d)(3)(B).

The only one of those specified grounds that Defendant Peinovich even attempts to assert is that the Subpoenas impose an undue burden on him. The Subpoenas, however, are not directed to Defendant Peinovich and therefore impose no burden on him, much less an "undue" burden, as he is not required to do anything. *See* Fed. R. Civ. P 45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on *a person subject to the subpoena*." ) (emphasis added); *see also Liberty Media Holdings, LLC, v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05; and Does 1 through 38*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011) (denying defendants' motion to quash subpoenas to their internet service providers and stating that defendants could not assert "undue burden" because the subpoenas were not directed at them); *CineTel Films, Inc. v. Does 1-1, 052*, 853 F.Supp.2d 545, 556 (D. Md. 2012) (same).[4]

[4] The *CineTel* court found that the defendants had standing because the information sought by the subpoena was their own information, not, as here, the information of unnamed non-parties, but nevertheless denied the motion to quash on the grounds that the defendants had no privacy interest in their own internet conduct. 853 F. Supp. 2d at 555-56. The court specifically stated that the movants "did not have standing to contest the subpoena on other grounds," such as undue burden. *Id.* at 556. In this case, Defendant Peinovich does not seek to justify his motion as a way of protecting his own internet habits—indeed, he volunteers that he uses all the relevant websites—such that *CineTel* supports the conclusion that Defendant Peinovich lacks standing for his motion.

Defendant Peinovich nevertheless argues that the Subpoenas will "destroy Peinovich's talk show and vocation" (Motion to Quash at 2), and that the Subpoenas will "have a chilling effect on free speech generally as individuals who would like to consume or produce politically incorrect, conservative, pro-Trump, pro-white, right wing, or other controversial content would feel they may be subject to doxing, intimidation, and harassment" (*id.* at 4).

These vague, hypothetical concerns would not provide a basis to quash the Subpoenas even if they were substantiated (and they are not).[5] If there were any legitimate concern about harassment of Defendant Peinovich's followers (and he has utterly failed to show that there is), such concern could be addressed by the confidentiality order in place in this litigation, which places restrictions on the public disclosure of confidential information. Defendant Peinovich's unsubstantiated concern is not a reason to preclude production of the information sought.

Finally, Plaintiffs have fully complied with their Rule 45 obligations. Defendant Peinovich argues that advance notice and a copy of third party subpoenas must be provided to parties in a litigation. (*See* Rule 45 Motion at 1-2.) He acknowledges that Plaintiffs have done that. Indeed, Defendant Peinovich attaches copies of the Subpoenas about which he complains to his motion papers. Defendant Peinovich's citation to Rule 45(b)(4) is inapposite because that rule establishes the necessary content of any proof of service in the event that such proof is necessitated by an issue before the court (such as a challenge to service or a motion to compel). *See* Fed. R. Civ. P. 45(a)(4). No such proof of service has been required. Plaintiffs have thus satisfied their obligations under Rule 45.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Peinovich's Motion to Quash and Rule 45 Motion.

---

[5] Defendant Peinovich's failure to meet his burden of proof is yet another independent basis on which to deny his motion. As the moving party, Peinovich bears the burden of proof under FRCP 45(d)(3) and has failed to carry this burden. "[V]ague legal conclusions" are not sufficient to satisfy this burden. *In re C and M Investments of High Point Inc.*, No. 13-10661, 2015 WL 661177, at *4 (Bankr. M.D.N.C. 2015).

Dated: February 28, 2018

*/s/ Philip M. Bowman*
Philip M. Bowman (*pro hac vice*)
Joshua J. Libling (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
ybarkai@bsfllp.com
jlibling@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
Seguin L. Strohmeier (*pro hac vice*)
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com
cgreene@kaplanandcompany.com
sstrohmeier@kaplanandcompany.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

Alan Levine (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas,
46th Floor New York, NY 10036
Telephone: (212)
479-6260 Fax:
(212) 479-6275
alevine@cooley.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania
Avenue, NW Suite 700
Washington, DC
20004 Telephone:
(202) 842-7800
Fax: (202) 842-
7899
dmills@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jeff Schoep, Nationalist Front, National Socialist Movement, Matthew Parrott, Matthew Heimbach, Robert Ray, Traditionalist Worker Party, Elliot Kline, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

Michael Peinovich
a/k/a Michael "Enoch" Peinovich
PO Box 1069
Hopewell Junction, NY 12533
mpeinovich@gmail.com

*Pro Se Defendant*

I further hereby certify that on February 28, 2018, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
P.O. Box 54
Pelham, NC 27311

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

Richard Spencer
1001-A King Street
Alexandria, VA 22314
-and-
P.O. Box 1676
Whitefish, MT 59937

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085
Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

*s/ Philip M. Bowman*
Philip M. Bowman (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com

*Counsel for Plaintiffs*