UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| ELIZABETH SINES, ET AL., | Case No. 3:17-cv-00072-NKM |
| --- | --- |
| Plaintiffs, | Hon. Norman K. Moon |
| v. | |
| JASON KESSLER, ET AL., | |
| Defendants. | |

### DEFENDANT MICHAEL PEINOVICH'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant Michael Peinovich, Pro Se, submits this reply memorandum in further support of his motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### INTRODUCTION

Plaintiffs' amended complaint is a SLAPP suit, pure and simple. And it is a SLAPP suit of the worst kind, for it seeks to employ nebulous conspiracy claims not only to prevent the defendants' exercise of their First Amendment rights but as an *in terrorem* tactic for restraining all persons, across the country, who wish to engage in First Amendment activity in support of views that can be derided, fairly or unfairly, as similar to those the defendants have espoused. Plaintiffs want the defendants, and anyone who thinks remotely like them, to be quiet, and this lawsuit is a blunt instrument to achieve that result. This case, in a few words, is a lawfare tactic that will succeed just by being filed, unless it is dismissed at the outset.

Plaintiffs' SLAPP suit violates a host of fundamental principles of American culture and jurisprudence, including the following:

- The principle that the First Amendment protects – indeed protects above all else – speech that is, in the view of many, caustic, offensive, vehement, unpleasant, even outrageous. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 391-95 (1992); *Snyder v. Phelps*, 562 U.S. 443, 457-58 (2011). As succinctly expressed by Justice Holmes in his dissent in *United States v. Schwimmer* (Justice Brandeis concurring), 279 U.S. 644, 654-55 (1929): "If there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought – not free thought for those who agree with us but freedom for the thought we hate."

- The principle that Americans are free to assemble in groups and to march and demonstrate in support of their views, subject to reasonable limitations of time and place – such as those with which the defendants in this case fully complied by obtaining a permit, approved by this Court.

- The principle that persons are entitled to be judged as individuals based on their own conduct and not the conduct of others and that courts should be wary of undermining this principle by allegations of conspiracy.

- The principle that litigation should not be used as a weapon by the wealthy and powerful to prevent or restrict public participation by those for whom the litigation is an overwhelming burden. Roberta Kaplan, the lead attorney for the plaintiffs, is one of the wealthiest and most powerful attorneys in the country, and has made public statements indicating that her intent in bringing this suit is to punish defendants for views she personally deems unacceptable (Exhibit A).

2

Violating these fundamental principles while pretending, like a modern day Tartuffe, not to do so is no easy task. It has forced the plaintiffs to make truly extraordinary statements that they contradict repeatedly. Among these are that plaintiffs are not attacking the content of defendants' expressive conduct even though plaintiffs claim they were traumatized by that content; that they are not attacking defendants' right to participate in demonstrations even though plaintiffs repeatedly characterize the defendants' marches and demonstrations, pursuant to a permit, as "campaigns of violence"; that they respect defendants' First Amendment rights even though plaintiffs group the defendants all together, over and over, so that all of them must suffer from the alleged ill-conceived acts any one of them allegedly committed; that plaintiffs were captive victims, when nearly all the plaintiffs came to Charlottesville to confront the messages the defendants expressed. *See Snyder v. Phelps*, 562 U.S. at 459 ("In most circumstances, 'the Constitution does not permit the government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer. Rather, ... the burden normally falls upon the viewer to avoid further bombardment of [his] sensibilities simply by averting [his] eyes.'") (Quoting *Erznoznik v. Jacksonville,* 422 U.S. 205, 210-11 (1975).

Justifying such blatant violations of fundamental principles is also a challenge for plaintiffs' legal research. It is a challenge they did not and could not meet. Not a single case among the dozens plaintiffs cite in their 45-page opposition memorandum involved facts remotely similar to those alleged in the amended complaint. And with good reason: no court has approved, and no court should ever approve, the destruction of First Amendment and other fundamental principles that plaintiffs' amended complaint embodies.

# I.

## PLAINTIFFS' AMENDED COMPLAINT FAILS TO MEET *TWOMBLY / IQBAL* PLAUSIBILITY PLEADING STANDARDS AS TO PEINOVICH

Peinovich is named as a defendant in three of the seven claims alleged in the amended complaint, namely, Count I (42 U.S.C. § 1985(3) Conspiracy), Count II (42 U.S.C. § 1986), and Count III (Civil Conspiracy). Accordingly, as plaintiffs' Count II Section 1986 claim is dependent on the Count I Section 1985(3) claim, all of plaintiffs' claims against Peinovich are predicated on conspiracy allegations. Plaintiffs' conspiracy allegations against Peinovich, however, do not come close to satisfying *Twombly / Iqbal* pleading standards.

As explained in Peinovich's initial memorandum, and as plaintiffs acknowledge (Memo. Opp., page 30), Peinovich is mentioned in only 14 of the 335 paragraphs in the amended complaint (prior to the causes of action), namely paragraphs 42, 50, 63, 96, 129, 141, 187, 207, 229-230, 310, and 326-327. As further explained in Peinovich's initial memorandum, these paragraphs are either so purely conclusory that under *Twombly* and *Iqbal* they are entitled to no presumption of truth, *e.g.*, paragraphs 63, 187, and 326, or allege actions by Peinovich that are perfectly legal and fully protected by the First Amendment, *e.g.*, paragraphs 42 (creating website, cohosting podcast, speaking alongside Defendant Spencer, and speaking at McIntire Park), 50 (organizing event involving lit torches around statue of Robert E. Lee), 52 (sharing a podium with Defendant Spencer), 96 (someone else on Peinovich's podcast made an alleged statement (quote is heavily excerpted) about "beating up a negro"), 129 ( another person on Peinovich's podcast announced a general legal fund and discussed transportation to the demonstration in Charlottesville), 141 (tweeting "Do these white business owners and shitlibs in CVille think that

4

their virtue signaling mean they we be spared somehow? Lol."), 207 (walking toward Emancipation Park "flanked by security team"), 229 (reassembling in McIntire Park), 230 (calling counter protestors "savages"), 310 (assisting in fundraising for Defendant Cantwell, who had been imprisoned), and 327 (being featured in a promotional poster for Unite the Right Rally).

Paragraphs 96, 141, and 230 merit special discussion. Paragraph 96 includes a heavily edited quote from an unnamed guest on Peinovich's podcast. No date, episode number, or time stamp are provided so that Peinovich can provide the complete quote and its context. Indeed, no basis is provided for concluding that the alleged quote even related to the Unite the Right event in any way. It is simply quoting something someone said on the Internet. In fact, plaintiffs' case as to Peinovich promoting violence through his podcast is remarkable for how lacking in actual evidence it is. Peinovich has been a prolific public speaker and podcaster for 4 years, with hundreds, perhaps thousands of hours of audio of his speech freely available online. If Peinovich were in fact such a notorious promoter of violence and terror as plaintiffs allege, surely they would be able to find more material than this one heavily excerpted quote from a third party. As to Paragraph 141, Peinovich obviously did not intend this tweet as a threat but rather as an observation that business owners and s***libs in Charlottesville would likely not be spared from violence and intimidation by counter protestors such as the Antifa even if they "virtue signaled" by putting up signs in their shop windows declaring support for left-leaning causes. The tweet makes no sense otherwise; obviously Peinovich was not expecting s***libs to be virtue signaling toward the pro-Monument demonstrators.

5

Paragraph 230 alleges Peinovich called the counter-protesters savages. Here is a video of Peinovich's actual speech to which plaintiffs refer: https://www.youtube.com/watch?v=p4ZzehhjOYQ. (The video linked in Peinovich's original Motion to Dismiss has been removed from YouTube, this is a working link. Peinovich also has a personal copy of the video and would be happy to make it available to the Court should the above link be removed, the e-filing system does not allow for videos to be uploaded. See also a transcription of the speech attached as Exhibit B). As the video makes clear, although Peinovich was rightfully critical of the violence threatened and inflicted by the counter-protestors, his speech emphasized the importance of the pro-monument demonstrators peacefully exercising their First Amendment rights and expressing positive messages about White Americans while not disparaging any other group of people. The Court can and should listen to the entirety of this speech, and not merely the misleading and carefully excerpted versions on which plaintiffs rely, on this motion to dismiss. *See, e.g., Hoffman v. Daimler Trucks North America, LLC,* 940 F. Supp.2d 347, 354 (W.D. Va. 2013) ("The Court may rely on exhibits attached to the complaint . . . and pertinent documents that a plaintiff fails to attach to the complaint if a defendant has attached them to a motion to dismiss, especially if a plaintiff has referred to the documents in the complaint, *see Davis v. George Mason Univ.,* 395 F.Supp.2d 331, 335 (E.D. Va. 2005), *aff 'd*, 193 Fed.Appx. 48 (4th Cir.2006); 5A Wright & Miller § 1327, without converting the motion to dismiss into a motion for summary judgment."); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280-82 (E.D. Va. 1995); *Cortec Indus. V. Sun Holding L.P.*, 949 F.2d 42. 48 (2d Cir. 1991); *131 Main Street Associates v. Manko*, 897 F. Supp. 1507, 1532 n. 23 (S.D. N.Y. 1999).

6

As Peinovich explained in his initial memorandum, this sparse mixture of conclusory statements and allegations describing lawful conduct protected by the First Amendment does not meet *Twombly / Iqbal* plausibility standards for pleading an actionable conspiracy. Several decisions by and from within the Fourth Circuit bolster this conclusion. In *A Society Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011), the Fourth Circuit affirmed the dismissal of Section 1985(3) conspiracy claims, noting that, in accordance with *Twombly* and *Iqbal*, "[f]acts pled that are 'merely consistent with' liability are not sufficient . . . In addition, where a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality' . . . The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." (quoting *Twombly*). Five years later, in *Thomas v. The Salvation Army Southern Territory*, 841 F.3d 632 (4th Cir. 2016), the Fourth Circuit again affirmed dismissal of a Section 1985(3) conspiracy claim, again noting that allegations of parallel conduct and a bare assertion of conspiracy are insufficient under *Twombly*. *Id*. at 637. *See also Polidi v. Bannon*, 226 F.Supp.3d 615, 623 (E.D. Va. 2016) (dismissing Section 1985(3) claim on *Twombly* pleading grounds); *Melvin v. Social Security Administration*, 126 F.Supp.3d 584, 609-10 (E.D.N.C. 2015) (dismissing Section 1985(3) conspiracy claim in 153 page complaint and emphasizing that plaintiff must plausibly plead "that there was a single plan, the *essential nature* and general scope of which was known to each person who is to be held responsible for its consequences") (emphasis added) ; *cf. Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir. 1995) (granting summary judgment against Section 1985(3) conspiracy claim and noting

7

that there is a "relatively heightened" pleading standard for such claims); *Scott v. Greenville County*, 716 F.2d 1409, 1424 (4th Cir. 1983) (rejecting allegations that private citizens were liable for Section 1985(3) conspiracy simply because they wrote letters and spoke at public meetings).

Perhaps the essence of the *Twombly / Iqbal* pleading standard is that where a court, taking due note of context, can see an "obvious alternative explanation" for the defendant's alleged conduct that does not entail liability under plaintiff's conspiracy theory, then the plaintiff has failed to nudge its claim across the line from conceivable to plausible. *See McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582, 587-88 (4th Cir. 2015). Here, there is an obvious alternative explanation for the conduct plaintiffs allege as to Peinovich: he was exercising his First Amendment rights to prepare podcasts, speak out on public issues, state unpopular views, and join with others in a large demonstration. To let plaintiffs' conspiracy claims proceed against him under these circumstances would be a manifest violation of *Twombly / Iqbal* pleading requirements.

## II.

## PLAINTIFFS HAVE NOT PLEADED AND CANNOT PLEAD THE NECESSARY ELEMENTS OF A 42 U.S.C. § 1985(3) CLAIM

One would not know it from plaintiffs' opposition memorandum, but Section 1985(3) conspiracy claims have been narrowly circumscribed by the Supreme Court and the Fourth Circuit. Plaintiffs' proposed broad and unprecedented use of Section 1985(3), if permitted, would represent a major and dangerous expansion of this section.

Section 1985(3) states, in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws; ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The starting point for the modern interpretation of Section 1985(3) is the Supreme Court's decision in *Griffin v. Breckenridge*, 403 U.S. 88, 98–99 (1971). In *Griffin*, a group of African-Americans was assaulted by a group of whites while traveling on an interstate highway in Mississippi. The African-Americans filed an action for damages pursuant to Section 1985(3). The issue before the Supreme Court was whether Section 1985(3) reached individuals acting in a purely private capacity. Although the Court held that the statute does create a cause of action for certain kinds of private action interfering with federally protected rights to travel and Thirteenth Amendment rights, the Court expressed considerable concern over the broad language of Section 1985(3). The Court cautioned that although Section 1985(3) was designed to reach private conspiracies, Congress did not intend it to "apply to all tortious, conspiratorial interferences with the rights of others." 403 U.S. at 101.

In 1983, the Supreme Court decided *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825 (1983). In *Scott*, the Court considered the application of Section 1985(3) to a conspiracy directed by a pro-union group against a group of non-union employees working for a non-union contractor. The conspiracy resulted in a physical attack upon the non-union workers, who subsequently brought an action for damages under Section 1985(3). The district court found that such an attack evidenced a discriminatory animus against non-union workers as a class, and

9

constituted an interference with the right of association, in violation of Section 1985(3). On appeal, the Fifth Circuit affirmed. The Supreme Court, however, reversed. The Court found disconcerting the argument that Section 1985(3) provides "a remedy for every concerted effort by one political group to nullify the influence or do injury to a competing group by use of otherwise unlawful means." *Id*. at 836. The Court reasoned:

> To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role which the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*Id*.

In *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), the Supreme Court refused to extend Section 1985(3) to claims against persons who organized and coordinated antiabortion demonstrations. In the course of that opinion, the Court stated:

> Our discussion in *Carpenters* makes clear that it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not "for the purpose" of denying equal protection simply because it has an effect upon a protected right. The right must be *"aimed at,"* 463 U. S., at 833 (emphasis added); its impairment must be a conscious objective of the enterprise. Just as the "invidiously discriminatory animus" requirement, discussed above, requires that the defendant have taken his action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Feeney,* 442 U. S., at 279, so also the "intent to deprive of a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it. That was not shown to be the case here, and is on its face implausible.

> 506 U.S. at 275-76

10

In *Harrison v. KVAT Food Management, Inc.,* 766 F.2d 155 (4th Cir. 1985), the Fourth Circuit, rejecting a contrary decision by the Second Circuit, held that republicans as a class are not protected by Section 1985(3), even if it is alleged that defendants' conduct aimed to discourage the participation of a republican in the affairs of his party. The Fourth Circuit stated:

> [A]nalyzing the *Scott* decision, we find little support for the contention that § 1985(3) includes in its scope of protection the victims of purely political conspiracies. Indeed, the opinion in *Scott* exhibits a noticeable lack of enthusiasm for expanding the coverage of § 1985(3) to any classes other than those expressly provided by the Court. . . . the Court provided no authority on which to base the extension of § 1985(3) protection urged upon us here. . . We are concerned here with a statute enacted to fulfill a particular purpose and designed to meet particular conditions. . . In fact, the Court in *Scott* expressed uncertainty over whether even the use of unlawful conduct in the deprivation of rights necessarily calls for a remedy. The Court remarked: "[W]e find difficult the question of whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means." *Carpenters v. Scott*, 463 U.S. at 836.

*Id.* at 161-63.

The elements of a Section 1985(3) conspiracy claim must be viewed against the background of the reluctance to expand such a claim shown in the Supreme Court and Fourth Circuit decisions discussed above. These elements are: (1) a conspiracy by two or more persons; (2) who are motivated by a specific, class-based, invidiously discriminatory purpose; (3) to deprive the plaintiff of the equal enjoyment of rights secured by law to all; (4) that results in injury to the plaintiff; (5) as a consequence of an overt act committed by the defendants in connection with the conspiracy. *Thomas v. Salvation Army*, 841 F.3d at 637. Properly interpreted in accordance with the *Griffin, Scott, Bray,* and *Harrison* cases, plaintiffs' allegations do not satisfy these elements.

The reality of plaintiffs' Section 1985(3) claim is that the plaintiffs were counter protestors – persons who voluntarily came to the demonstration to express their objections to it – some of whom happen to be African-American or Jewish, and / or persons, some of whom happen to be African-American or Jewish, who read or observed signs or other statements allegedly made or actions allegedly taken by some of the defendants and were greatly offended. But extending Section 1985(3) claims into such a context of highly charged political and cultural disagreement would embroil federal courts deeply into undoubtedly futile attempts to fashion "a remedy for every concerted effort by one political group to nullify the influence or do injury to a competing group by use of otherwise unlawful means," a result disapproved by the Supreme Court in *Carpenters / Scott*. And far from upholding the equal protection of the laws, it would promote invidious distinctions among counter protestors, for counter protestors who are African-American or Jewish would have greater rights than those who are not. Further, it would approve a large step toward applying Section 1985(3) "to all tortious, conspiratorial interferences with the rights of others," despite the Supreme Court's warning against this in *Griffin*.

Plaintiffs' reckless invocations of conspiracy are also inconsistent with the narrow focus on specific intent required by the Supreme Court in *Bray*. Plaintiffs' paradigm is that any pro-monument demonstrator who participated in any way in planning or organizing the demonstration is liable for all alleged harms caused by any of the hundreds of demonstrators who participated. But in *Bray*, which involved defendants who organized anti-abortion demonstrations, the Court emphasized that Section 1985(3)'s "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of

12

producing it." Plaintiffs' allegations as to Peinovich (and other defendants) do not come remotely near supporting a non-speculative inference that he was not only aware of violations of plaintiffs' right to equal enjoyment of the laws but acted for the very purpose of producing those violations.

Peinovich must also take issue with plaintiffs' reliance on Section 1982 as the basis for their Section 1985(3) conspiracy claim. Plaintiffs' Section 1982 contention rests in large part on their allegation (Paragraph 202) that as the pro-monument protestors marched down Jefferson Street, they passed the synagogue of which one of the plaintiffs is a member, and during Shabbat services three co-conspirators in uniforms and semi-automatic weapons stood across from the temple and shouted threatening and offensive statements. While such alleged conduct was highly inappropriate and offensive (and inconsistent with the admonitions Peinovich gave in his speech to which plaintiffs make reference, see pages 4-5 of this reply memorandum), affirming a claim under Section 1982 – which provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property" – based on such allegations would stretch Section 1982 beyond recognition. There is no support in the Fourth Circuit for such an interpretation of Section 1982. In any event, none of plaintiffs' allegations come remotely close to supporting a plausible, nonspeculative inference that Peinovich knew or approved of such conduct.

### III.

**PLAINTIFFS HAVE NOT PLEADED AND CANNOT
PLEAD A VIABLE CLAIM UNDER 42 U.S.C. § 1986**

The broad construction of Section 1986 that underlies plaintiffs' Section 1986 claim has no support in any case law. No case known to Peinovich has ever affirmatively upheld a Section 1986 claim. This includes the one case cited by plaintiffs, *Coleman v. Boeing Co.*, 2017 WL 2992526 (D.S.C. June 22, 2017). *Coleman*, in fact, as a dozen other cases have done, *e.g.*, *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985); *Davis v. Hudgins*, 896 F. Supp.2d 561, 571 (E.D. Va. 1995), rejected a Section 1986 claim on the ground that the claim was dependent on a viable Section 1985(3) claim, which plaintiffs had not pleaded. These precedents support dismissal of plaintiffs' Section 1986 claim in this case as well, for here too plaintiffs have not pleaded a viable Section 1985(3) claim, specifically against Peinovich but more generally as to all defendants in light of the First Amendment context and the amended complaint's pleading deficiencies.

Even assuming, contrary to fact, that plaintiffs had stated a viable Section 1985(3) claim against one of the defendants, Section 1986 should not be given the broad interpretation plaintiffs urge. Such an interpretation would impose amorphous and virtually unlimited obligations on even private citizens to prevent alleged violations by others of Section 1985. This is not consistent with basic principles of statutory construction. *See, e.g., Nat'l Labor Relations Board v. Wheeling Elec. Co.,* 444 F.2d 783, 787 (4th Cir. 1971) (where a literal interpretation of a statute would not accord with intended purpose of legislation or produce an absurd result, courts must look beyond words of the statute); *United States v. American Trucking Ass'n*, 310 U.S. 534, 543 (1940) ("Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,' this Court has followed [the purpose of the act] father than the literal words."). Moreover, such a

14

broad interpretation would be unconstitutional under the void for vagueness and overbreadth doctrines, for no private citizen would have fair notice of the criteria by which he or she could be held liable under Section 1986 for the conduct of others, *e.g.*, in a mass demonstration. Under the void for vagueness doctrine, a law cannot be enforced if it is so vague or confusing that the average person could not figure out what is being prohibited or what the penalties are for breaking that law. *See, e.g., Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048-51 (1991) (holding that attorney disciplinary rule was unconstitutionally vague as applied); *Keyishian v. Board of Regents*, 385 U.S. 589-603-04 (holding that restrictions on government employee speech was unconstitutionally vague). Under the overbreadth doctrine, a statute that proscribes not merely unprotected speech but protected speech as well does not pass constitutional muster. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (striking down bias-motivated criminal ordinance where it proscribed not only fighting words but protected speech). Accordingly, insofar as Section 1986 must be interpreted in this case at all, it must be limited to persons who had an independent, recognized duty to prevent unlawful conduct, such as sheriffs or the police.

### IV.

### PLAINTIFFS HAVE NOT PLEADED A PLAUSIBLE
### CIVIL CONSPIRACY CLAIM AGAINST PEINOVICH

Plaintiffs Count III Civil Conspiracy claim is an extreme example of dragnet pleading: all 13 plaintiffs sue all 25 defendants alleging civil conspiracy for 18 alleged instances of unlawful actions. Such undifferentiated catch-all pleading is disfavored. *See, e.g., Alliance Technology Group LLC v. Achieve 1, LLC*, 2013 WL 143500 at *8-9 (E.D. Va. Jan. 11, 2013); *Maisha v. University of North Carolina*, 2013 WL 1232947 at * 6 (M.D.N.C. Mr. 27, 2013); *Fox*

15

*v. City of Greensboro*, 807 F.Supp.2d 476, 493 (M.D.N.C. 2011) (a plaintiff does not satisfy FRCP 8 when the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong) (internal quotations and citations omitted). It should be particularly disfavored in the context of First Amendment activity, for, as the Supreme has repeatedly affirmed:

> The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States,* 354 U.S. 476, 484 (1957); *New York Times Co. v. Sullivan,* 376 U.S. 254, 269 (1964). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64,74-75 (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the "'highest rung of the heirarchy of First Amendment values,'" and is entitled to special protection. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982); *Carey v. Brown,* 447 U.S. 455, 467 (1980).

*Connick v. Myers*, 461 U.S. 138, 145 (1983). Undifferentiated pleading using a civil conspiracy claim as a weapon is antithetical to the breathing space the First Amendment requires.

The Supreme Court has made clear that it will not allow use of state law tort theories, such as civil conspiracy, to chill the exercise of First Amendment freedoms. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254 (1964) (restricting use of state law defamation claims on First Amendment grounds); *Snyder v. Phelps*, 562 U.S. 443, 458-61 (2011) (restricting use of intentional infliction of emotional distress, invasion of privacy, and civil conspiracy claims on First Amendment grounds). Plaintiffs' assertion that the First Amendment is irrelevant to this case is preposterous. All of Peinovich's and the other defendants' alleged actions for which the plaintiffs seek to hold them liable occurred in the context of expressive activity and a demonstration for which a permit was duly obtained with the help of the American Civil

16

Liberties Union and by means of an injunction issued by this Court. It is, indeed, surprising that the plaintiffs have not joined the ACLU as a conspirator, for the ACLU was aware of the tenor of defendants' messages but nonetheless – as a matter of principle and to its credit – played an important role in enabling the demonstration to proceed.

The *Twombly / Iqbal* pleading standard, of course, applies also to state law claims in federal court, *see, e.g., Stanley v. Star Transport, Inc.*, 2010 WL 2079731 at * 2 (W.D. Va. May 22, 2010); *Alliance* Technology *Group LLC v. Achieve 1, LLC*, 2013 WL 143500 at * 8-9 (E.D. Va. Jan. 11, 2013). This has important consequences. All the critical aspects of the *Twombly / Iqbal* plausibility standard previously discussed apply fully to plaintiffs' civil conspiracy claims: the importance of the First Amendment context, *see Iqbal,* 556 U.S. at 679 ("[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); the "obvious alternative explanation" for Peinovich's alleged conduct, i.e., his participation in protected First Amendment activity, e.g., his speaking "alongside Defendant Spencer," describing the counter protestors as "savages," and participating in fundraising for a man who had been imprisoned; the requirement that plaintiffs plausibly allege "that there was a single plan, the *essential nature* and general scope of which was known to each person who is to be held responsible for its consequences" (emphasis added); the principle that allegations showing mere parallel conduct are insufficient to plausibly allege a conspiracy; the principle that allegations showing conduct that was merely consistent with a conspiracy are also insufficient. Plaintiffs' amended complaint does not meet any of these critical aspects of the *Twombly / Iqbal* pleading standards.

17

Justice Roberts' closing words in the Supreme Court's unanimous *Snyder v. Phelps* opinion bear repeating:

> Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate. That choice requires that we shield Westboro from tort liability for its picketing in this case.

562 U.S. at 46061. Some of the messages communicated by some of the participants in the demonstrations at issue in this case were no doubt highly offensive, although it bears mention that most of the plaintiffs in this case deliberately came to Charlottesville to hear and confront those messages. But suppressing offensive speech, by lawfare SLAPP suits such as the plaintiffs' in this case or other means, is not the answer; the answer is more speech. That, at any rate, is the path great jurists of the American tradition of free expression have mapped out. As Judge Learned Hand once stated:

> The First Amendment … presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and will always be, folly; but we have staked upon it our all. *United States v. Associated Press*, 52 F. Supp. 362 S.D.N.Y. (1943), aff'd, 326 U.S. 1 (1945).

The plaintiffs' civil conspiracy claim, like its other claims against Peinovich, is radically at variance with this path, and should be dismissed.

## CONCLUSION

For the reasons stated, Peinovich respectfully requests that his motion to dismiss plaintiffs' amended complaint be granted in its entirety.

Respectfully submitted,

Michael Peinovich, Pro Se

## CERTIFICATE OF SERVICE

On this 5th day of March, 2018, I Michael Peinovich certify that I served electronically or mailed copies of this reply memorandum to:

Christopher Greene <cgreene@kaplanandcompany.com>,
David Campbell <DCampbell@dhgclaw.com>,
Elmer Woodard <isuecrooks@comcast.net>,
James Kolenich <jek318@gmail.com>,
Bryan Jones <bryan@bjoneslegal.com>,
Roberta Kaplan <rkaplan@kaplanandcompany.com>,
Julie Fink <jfink@kaplanandcompany.com>,
Gabrielle Tenzer <gtenzer@kaplanandcompany.com>,
Alan Levince <alevine@cooley.com>,
Karen Dunn <KDunn@bsfllp.com>,
Philip Bowman <pbowman@bsfllp.com>

Michael Peinovich