UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>                Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>                Defendants. | **Civil Action No. 3:17-cv-00072-NKM**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS MATTHEW PARROTT AND TRADITIONALIST WORKER PARTY SHOULD NOT BE SANCTIONED FOR SPOLIATION AND ORDERED TO PERMIT PLAINTIFFS TO CONDUCT A FORENSIC EXAMINATION OF INFORMATION SYSTEMS**

Plaintiffs respectfully submit this Emergency Motion for an Order to Show Cause (the "Motion") why an order should not be issued: (1) prohibiting Defendants Matthew Parrott a/k/a David Matthew Parrott ("Parrott") and Traditionalist Worker Party ("TWP") from further destroying relevant evidence; (2) permitting Plaintiffs immediately to electronically preserve and conduct a forensic examination of Parrott and TWP's information systems and electronically stored information ("ESI"), including all computers and electronic devices, to attempt to recover any deleted data, at Parrott's and TWP's expense; (3) providing for adverse inferences to be drawn to the extent that any evidence has been lost or destroyed; and (4) awarding Plaintiffs the costs and attorneys' fees associated with this Motion.

## PRELIMINARY STATEMENT

On March 13, 2018, Defendant Matthew Parrott, the Chief Information Officer of Defendant TWP, announced on the social network Gab[1] that he intended to delete and destroy all membership information for TWP. (Ex. 1.) Specifically, he wrote:

> All of the information systems are completely air-gapped and will be destroyed within a few hours in order to guarantee all membership information literally no longer exists anywhere.

(*Id.*) When asked to explain, Parrott's lawyer responded by saying "I don't know anymore [*sic*] about this situation than you," and advising Plaintiffs' counsel to "file what you think best for your case." (Ex. 2.)

This deliberate destruction of information directly relevant to this litigation is a blatant violation of Parrott's and TWP's obligations as parties before this Court—obligations of which they and their counsel are no doubt aware. Indeed, this is not the first time that Defendant Parrott has flouted his discovery obligations. As set out in Plaintiffs' email to the Court dated March 2,

---

[1] Like Twitter, Gab is an online news and social networking service where users post and interact with messages.

2018, Defendant Parrott encouraged anyone "involved in any altercation in Cville" – including, obviously, the Defendants in this case – to disable their social media, because "[e]verybody's getting a ride." (Ex. 3.) As of late last night, the TWP website was down, and Parrott has now claimed that the "information was scrubbed." (Ex. 4.)

These actions by Defendants Parrott and TWP are not only clear violations of the Federal Rules of Civil Procedure, but threaten to immediately and materially impact Plaintiffs' ability to obtain evidence and try this case. Accordingly, pursuant to Federal Rule of Civil Procedure 37(e) and in accordance with this Court's inherent power to control these proceedings, Plaintiffs move for an order to show cause why an order should not be issued: (1) prohibiting Parrott and TWP from further destroying relevant evidence; (2) permitting Plaintiffs immediately to electronically preserve and conduct a forensic examination of Parrott and TWP's information systems and ESI, including all computers and electronic devices, to attempt to recover any deleted data, at Parrott's and TWP's expense; (3) providing for adverse inferences to be drawn to the extent that any evidence has been lost or destroyed; and (4) awarding Plaintiffs the costs and attorneys' fees associated with this Motion.

## RELEVANT FACTUAL BACKGROUND

Defendant TWP is an unincorporated association pursuant to Virginia Code § 8.01-15, and a national political party committee registered with the Federal Election Commission since 2015. It was founded by Defendants Parrott and Matthew Heimbach. Members of TWP voluntarily joined for the common purpose of promoting anti-Semitism. (First Amended Complaint, ECF No. 175 ("FAC") ¶ 33.) Parrott has acted as TWP's Director and Chief Information Officer, (*id.* ¶ 32), although he purported to resign from that role on March 13, 2018 (Ex. 5.).

The FAC alleges that TWP coordinated a "joint operation" with other Defendants to attend the "Unite the Right" events in Charlottesville on August 11 and 12, 2017. Together, Parrott, TWP and other Defendants planned, directed, and prepared for unlawful acts of violence, intimidation, harassment, and denial of equal protection to Charlottesville citizens. (*See, e.g.*, *id*. ¶¶ 63, 67.) The FAC alleges that TWP members were active participants on the Charlottesville 2.0 Discord server that was used to plan the "rally." (*See, e.g.*, *id*. ¶¶ 77, 322.) While at the "rally," TWP members acted with militaristic cohesion and joined with other Defendant organizations "to help create two shield walls" for "the fight" (*id*. ¶ 212), and charge through protestors outside Emancipation Park using shields and rods (*id.* ¶ 214).

On January 25, 2018, Plaintiffs served a Request for Production of Documents on all Defendants ("Plaintiffs' First RFP"), including of course Parrott and TWP. (Ex. 6.) Among other things, Instruction G to Plaintiffs' First RFP instructed Defendants to "preserve all Documents and Communications relevant to the lawsuit." (*Id.*) Request No. 8 also requested that Defendants produce documents relating to their efforts to preserve documents. (*Id.*) Defendants Parrott's and TWP's responses to Plaintiffs' First RFPs were due by February 26, 2018, but neither has ever provided any response.

On March 2, 2018, Plaintiffs submitted an email to the Court, notifying the Court that Defendants had failed to timely respond to Plaintiffs' discovery requests and that Defendants Michael Peinovich and Parrott had each made public, on-line statements stating either that they may have deleted relevant information relating to this case that has been requested in discovery, that they intend to do whatever is necessary to prevent disclosure, or encouraging others to take similar or related actions. (Ex. 3.) With respect to Parrott specifically, Plaintiffs explained that Parrott had posted a statement on Twitter encouraging others "involved in any altercation in

3

Cville" to disable their social media. (*Id*.) In light of these statements, Defendants' failure to respond to discovery requests, and Plaintiffs' fact-based concerns about the loss or deletion of information relating to this case, Plaintiffs requested in the March 2 email an order directing Defendants to (a) respond to Plaintiffs' discovery requests by a date certain, and (b) preserve information relating to this action and confirm in writing that they are in compliance with their obligation to do so. (*Id.*) Plaintiffs also requested that the Court order Defendants to immediately: (1) take all necessary steps to have any of Defendants' computers, mobile devices, and other electronic devices and data, including webmail, social media, and cloud storage accounts, that may contain information relating to this action imaged by a third party vendor agreed upon by Plaintiffs; and (2) stop the deletion of and immediately recover any social media accounts or data containing information relating to this action that Defendants have deleted or attempted to delete. (*Id.*) Parrott did not respond to Plaintiffs' March 2 email.

The Court responded to the Plaintiffs' March 2 email by affirming that the Court expected any party wishing to raise a discovery dispute to confer with the opposing party before bringing the matter to the Court's attention. (Ex. 7.) Accordingly, on March 9, 2018, Plaintiffs' counsel wrote to counsel for Defendants, including Parrott and TWP, regarding their failure to respond to Plaintiffs' First RFPs and requesting that they confirm in writing that they: (1) were complying with their preservation obligations; (2) would take all necessary steps to ensure that Defendants' electronic data were preserved by a third-party vendor; and (3) would cease any deletions and immediately recover any deleted information. (Ex. 8.)

On March 12, counsel for Parrott and TWP (along with a number of other Defendants) responded by email to Plaintiffs' March 9 letter, acknowledging Defendants' legal obligation to preserve documents, but stating that "we decline your request to have each client provide written

4

verification of their compliance with what is already a legal obligation." (Ex. 9.) Counsel further informed Plaintiffs that Defendants do not intend to respond to Plaintiffs' discovery requests until April 6—more than one month after such responses were otherwise due, notwithstanding that they have neither sought nor received any extension of time to respond. (*Id.*)

At approximately 5:00 am on Tuesday, March 13, Parrott posted on Gab: "I hereby fully and permanently resign from @tradworker."[2] (Ex. 5.) At approximately 8:30 pm the same day, Parrott further posted on Gab (the "March 13 Post"):

> All of the information systems are completely air-gapped[3] and ***will be destroyed within a few hours in order to guarantee all membership information literally no longer exists anywhere***.

(Ex. 1 (emphasis added).) As of at least 10:50 pm, the TWP website was no longer accessible. (Ex. 10.) Upon learning of this planned document destruction, Plaintiffs' counsel emailed counsel for Parrott and TWP at 11:17 pm providing a copy of the March 13 Post and asking that counsel confirm by 9:00 am today that Parrott had not destroyed, and would take steps to preserve, any such documents and information contained in TWP's information systems. (Ex. 11.) Counsel for Parrott and TWP responded at 8:27 am on March 14, 2018 as follows: "I have read the Gab and other common alt-right feeds. *I don't know anymore* [*sic*] *about this situation than you. . . . I understand that you have to file what you think best for your case*." (Ex. 2 (emphasis added).) At approximately 12:30 am on March 14, 2018, Parrott posted on Gab that the "the information was scrubbed on account of widespread concern about the data's security. It was a practical security step, and not a political act." (Ex. 4.)

---

[2] "@tradworker" is TWP's Gab account.

[3] Plaintiffs understand the term "air-gapped" to mean that an information system has been physically disconnected from the Internet and all other networks, meaning that any information stored on it can only be accessed (or deleted) by the user in physical possession of the system.

5

# ARGUMENT

## I. Standard

"It is difficult to imagine conduct that is more worthy of . . . sanction than spoliation of evidence *in anticipation of litigation* because that conduct frustrates, sometimes completely, the search for truth." *Samsung Elecs. Co.* v. *Rambus Inc.*, 439 F. Supp. 2d 524, 535 (E.D. Va. 2006) (emphasis added), *vacated on other grounds*, 523 F.3d 1374 (Fed. Cir. 2008). In truth, however, there is conduct even more worthy of sanction than spoliation *in anticipation* of litigation: spoliation *after* litigation has commenced.

To prove sanctionable spoliation, a party must show:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Victor Stanley, Inc.* v. *Creative Pipe, Inc.*, 269 F.R.D. 497, 520–21 (D. Md. 2010) (internal quotation marks omitted). As set forth below, there can be no dispute, based on their own statements and admissions, that Defendants Parrott and TWP have engaged in spoliation, and that sanctions are now warranted.

## II. Defendants Parrott and TWP Have Engaged In Spoliation.

Defendants Parrott and TWP have a duty to preserve all information, including ESI, that they know or reasonably should know "is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Samsung*, 439 F. Supp. at 543. A party under a duty to preserve information is subject to sanctions for spoliation where the party "willfully

6

engage[s] in conduct resulting in the evidence's loss or destruction." *Turner* v. *United States*, 736 F.3d 274, 282 (4th Cir. 2013). Although the conduct "must be intentional," it is not necessary to prove bad faith. *Id*. However, proof of bad faith is a basis for ordering certain sanctions, including attorneys' fees and directing the jury to make adverse inferences. *See Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 50–51 (1991) (attorneys' fees may be awarded as a sanction for bad-faith conduct in the course of litigation); Fed. R. Civ. P. 37(e)(2).

The information referenced in Defendant Parrott's Post is undoubtedly subject to Parrott's and TWP's duty to preserve. Given Defendants' failure to respond to discovery, Plaintiffs do not know the full scope of information stored on TWP's systems (or what those systems comprise). Nonetheless, Parrott's Post confirms that, at a minimum, those systems store "all membership information" of TWP. Information concerning TWP's membership, including the identities of its members and their roles in the organization, is plainly relevant to Plaintiffs' claims against TWP and its leaders Parrott and Heimbach, and within the scope of discovery provided by Federal Rule of Civil Procedure 26(b)(1). Such information was specifically requested in Plaintiffs' First RFPs, Request No. 3, which called for "[a]ll Documents concerning and all Communications concerning or with . . . Traditionalist Worker Party." (Ex. 6 at p. 9.) Given this, Parrott and TWP cannot deny that they knew they were under a duty to preserve the information on TWP's systems. Indeed, Plaintiffs specifically reminded Parrott and TWP of their preservation obligations in Plaintiffs' First RFPs, by email to the Court on March 2, and by their letter of March 9. (Exs. 6, 3, 8.)

Parrott's March 13 Post leaves no room for doubt: he intended to destroy all of Parrott and TWP's ESI completely and permanently, and he did so knowing that he was under a legal obligation to preserve that information, even noting that this destruction of critical data was not a political act. Compounding this, Parrott and TWP failed to timely respond to Plaintiffs' First RFPs

7

and have not produced a single document in the case—documents which may now be lost forever. Accordingly, the Court should conclude that Parrott and TWP have engaged in spoliation, and that they acted in bad faith and with the intent to deprive Plaintiffs of the use of TWP's ESI in the litigation. *See* Fed. R. Civ. Proc. 37(e)(2); *Leon* v. *IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (finding bad-faith spoliation where plaintiff knew he was under a duty to preserve data but intentionally deleted files and wrote a program to overwrite deleted space).

### III. The Court Should Order That Defendants Parrott and TWP Cease Destroying Documents, and Permit Plaintiffs to Preserve Parrott's and TWP's ESI and Subject Their Devices to Forensic Examination to Attempt to Restore Any Deleted Information.

This Court has broad discretion to fashion an appropriate sanction to remedy Defendants' spoliation. *Silvestri* v. *Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). In exercising this discretion, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id.* (quoting *West* v. *Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). In addition to deterring further spoliation, an appropriate remedy will "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (internal quotation marks omitted).

One of the "mildest of available remedies" is for this Court to authorize the Plaintiffs to preserve all ESI and to conduct a forensic examination of TWP's information systems to determine what information has been destroyed, and whether some or all of the information may be recovered. *Klipsch Grp., Inc.* v. *Big Box Store Ltd.*, No. 12 CIV. 6283(VSB)(MHD), 2014 WL 904595, at *6 (S.D.N.Y. Mar. 4, 2014), *aff'd sub nom. Klipsch Grp., Inc.* v. *ePRO E-Commerce Ltd.*, 880 F.3d 620 (2d Cir. 2018). Courts have frequently recognized that such a remedy is appropriate. In *Klipsch*, the Court authorized the plaintiff to "undertake a forensic investigation

8

into . . . defendants' computer systems for the purpose of determining, if possible, the likelihood of document destruction . . . the likely nature and volume of any such destroyed documents, [and] whether some or all of those documents may be recovered." *Klipsch*, 2014 WL 904595 at *6. Similarly, in *Treppel* v. *Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008), the Court permitted the plaintiff to undertake, at the defendants' expense, a forensic examination of an executive's laptop to attempt to recover deleted emails. *See also Orrell* v. *Motorcarparts of Am., Inc.*, No. CIV. 3:06CV418-R, 2007 WL 4287750, at *8 (W.D.N.C. Dec. 5, 2007) (permitting employer to conduct a forensic examination of former employee's computer where there was evidence of spoliation); *Hosch* v. *BAE Sys. Info. Sols., Inc.*, No. 1:13-cv-00825 (AJT/TCB), 2014 WL 1681694, at *3 (E.D. Va. Apr. 24, 2014) (referring to order to compel plaintiff to submit electronic devices and email accounts to forensic inspection after plaintiff admitted destroying relevant information).

Here, Plaintiffs risk suffering severe prejudice if the ESI in Parrott and TWP's systems is destroyed and is ultimately unrecoverable. The most expedient way for this Court to attempt to ameliorate this risk is to order that Parrott and TWP immediately cease any and all destruction of evidence, and permit the Plaintiffs to carry out a forensic examination of TWP's information systems at Parrott's and TWP's expense. To avoid doubt, Plaintiffs request that such an order include permitting Plaintiffs to access any data repositories that TWP accesses remotely (for example, web servers or cloud storage services), in addition to any devices in Parrott or TWP's physical possession, custody or control.

**IV.     The Court Should Draw Adverse Inferences against Parrott and TWP (or Instruct a Jury to Do the Same).**

In addition to ordering relief intended to preserve and restore ESI data, an adverse inference is warranted for that discovery that has already been lost. Remedies for spoliation should serve

9

the twin purposes of "leveling the evidentiary playing field and . . . sanctioning the improper conduct." *Vodusek* v. *Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). Where lost or destroyed evidence "would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence," a court may "permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence," provided the responsible party "knew the evidence was relevant to some issue at trial." *Id*.

Although this proceeding is still in its early stages, it is not too early to infer that the destruction of Parrott's and TWP's ESI will cause serious prejudice to the Plaintiffs. Information about the membership of TWP, communications between those members, and communications between TWP members and others present during the events on August 11 and August 12, 2017, is clearly relevant to the claims alleged in the FAC. Indeed, it is crucial. The FAC alleges that TWP was one of the key participants in the events on August 11 and 12 that are at the heart of the FAC. TWP's leaders and members were instrumental in planning the "rally" and the unlawful acts of violence and intimidation that occurred. (*See, e.g.*, FAC ¶¶ 63, 67.) TWP members were active participants on the Charlottesville 2.0 Discord server that was used to plan the "rally," and likely used other, private, means to communicate with one another. (*See, e.g.*, *id*. ¶¶ 77, 322.) Establishing that individuals who caused Plaintiffs' injuries were members of TWP will be crucial for establishing liability. Moreover, the coordination among the members of TWP and others required significant communications—communications which Plaintiffs cannot access without discovery. It is impossible to know without discovery to what extent Parrott and TWP have now destroyed these communications which lie at the heart of the case.

For the reasons set out above, Parrott knew that the evidence he destroyed would have been relevant at trial. Such information would naturally be relevant to Plaintiffs' claims and damages

10

and, in fact, was already requested in discovery. Accordingly, to the extent that TWP's information is unrecoverable, the Court should, at an appropriate juncture, draw adverse inferences against Parrott and TWP.[4]

V.      **Defendants Parrott and TWP Should Pay Plaintiffs' Costs of this Motion, Including Attorneys' Fees.**

It is well-established that courts have the inherent power to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (internal quotation marks omitted). Courts in the Fourth Circuit routinely award costs and attorneys' fees to remedy spoliation, in order to "compensate the prejudiced party but also [to] punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Victor Stanley, Inc.*, 269 F.R.D. at 536 (internal quotation marks omitted). In *Goodman* v. *Praxair Services, Inc.*, 632 F. Supp. 2d 494, 524 (D. Md. 2009), the Court explained that courts will award costs or attorneys' fees to compensate the prevailing party for the reasonable expenses incurred in making the motion, for any additional discovery that must be performed as a result of the spoliation, and for any investigatory costs into the spoliator's conduct. *See also Trigon Ins. Co.* v. *United States*, 234 F. Supp. 2d 592, 593–94 (E.D. Va. 2002) (defendant ordered to pay plaintiff's "expenses and fees

---

[4] As noted in their March 2 email to the Court, Plaintiffs also believe there is a significant risk that the remaining Defendants are failing to comply with their preservation obligations and may be destroying relevant and responsive documents. (*See* Ex. 3.) Defendant Peinovich openly stated an intent to destroy relevant communications. (*See id.*) With the exception of Defendant Fields, Defendants have all failed to respond to Plaintiffs' discovery requests, notwithstanding that their responses were due weeks ago and that Defendants neither sought nor obtained any extension of time to respond. A critical part of the First RFPs sought documents relating to Defendants' preservation efforts. (Ex. 6, Request No. 8.) Moreover, notwithstanding Plaintiffs' request that Defendants confirm they have preserved and will continue to preserve relevant documents and information, those Defendants represented by Messrs. Kolenich and Woodard have refused to do so (Ex. 9), and the other Defendants have thus far not done so either. Plaintiffs thus face a real and immediate risk that Defendants are failing to preserve documents, and may even be taking active steps to destroy relevant information. Plaintiffs anticipate that they may need to seek additional relief from the Court on this basis.

incurred in its efforts to discern the scope, magnitude and direction of the spoliation of evidence, to participate in the recovery process, and to follow up with depositions to help prepare its own case and to meet the defense of the [defendant]"); *Leon*, 2004 WL 5571412, at *5 (plaintiff ordered to pay defendant's reasonable expenses "incurred investigating and litigating the issue of . . . spoliation").

Here, Plaintiffs should be awarded the cost of any forensic inspections ordered pursuant to this Motion, the fees incurred in investigating Parrott and TWP's spoliation, as well as the reasonable attorneys' fees incurred in bringing this Motion. This is so regardless of whether any deleted data is ultimately recovered. A party's "attempted destruction of authentic . . . information threatens the integrity of judicial proceedings even if the authentic evidence is not successfully deleted." *CAT3, LLC* v. *Black Lineage, Inc*., 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the Motion and order Parrott and TWP to show cause why the relief sought should not be granted.

Dated: March 14, 2018

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle Tenzer (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
Seguin L. Strohmeier (*pro hac vice*)
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com
cgreene@kaplanandcompany.com
sstrohmeier@kaplanandcompany.com

Respectfully submitted,

*s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

12

Philip M. Bowman (*pro hac vice*)
Yotam Barkai (pro hac vice)
Joshua J. Libling (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
ybarkai@bsfllp.com
jlibling@bsfllp.com

Alan Levine (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

       I hereby certify that on March 14, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jeff Schoep, Nationalist Front, National Socialist Movement, Matthew Parrott, Matthew Heimbach, Robert Ray, Traditionalist Worker Party, Elliot Kline, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

Michael Peinovich
a/k/a Michael "Enoch" Peinovich
PO Box 1069
Hopewell Junction, NY 12533

*Pro Se Defendant*

14

Case 3:17-cv-00072-NKM-JCH   Document 272   Filed 03/14/18   Page 15 of 16   Pageid#: 1858

I further hereby certify that on March 14, 2018, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
P.O. Box 54
Pelham, NC 27311

Richard Spencer
1001-A King Street
Alexandria, VA 22314
-and-
P.O. Box 1676
Whitefish, MT 59937

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

*s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
Email: rcahill@cooley.com

*Counsel for Plaintiffs*