```
 1                UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF VIRGINIA
 2                   CHARLOTTESVILLE DIVISION

 3    ELIZABETH SINES, et al.,
                                    No. 3:17-cv-72
 4                  Plaintiffs,
                                    Charlottesville, Virginia
 5        vs.                       March 16, 2018
                                    2:03 p.m.
 6    JASON KESSLER, et al.,

 7                     Defendants.

 8           TRANSCRIPT OF TELEPHONIC CONFERENCE CALL
              BEFORE THE HONORABLE JOEL C. HOPPE
 9               UNITED STATES MAGISTRATE JUDGE.

10    APPEARANCES:

11    For the Plaintiffs:

12    J. BENJAMIN ROTTENBORN
      Woods Rogers
13    123 East Main Street
      Charlottesville, VA 22902
14    434-220-5685

15    ROBERTA ANN KAPLAN
      Kaplan & Company, LLP
16    350 Fifth Avenue, Suite 7110
      New York, NY 10118
17    212-763-0883

18    KAREN LEAH DUNN
      Boies Schiller Flexner, LLP
19    1401 New York Avenue, NW
      Washington, DC 20005
20    202-237-2727

21    Transcribed by:   Carol Jacobs White
                        Registered Diplomate Reporter
22                      Federal Certified Realtime Reporter
                        PO Box 182
23                      Goode, VA 24556
                        Carol.jacobs.white@gmail.com
24
          Proceedings recorded by FTR; computer-assisted
25    transcription.
```

```
 1   APPEARANCES (continued):

 2   For the Plaintiffs:

 3   PHILIP MATTHEW BOWMAN
     Boies Schiller Flexner, LLP
 4   575 Lexington Avenue, 7th Floor
     New York, NY 10022
 5   212-446-2300

 6   ALAN LEVINE
     Cooley LLP
 7   1114 Avenue of the Americas, 46th Floor
     New York, NY 10036
 8   212-479-6260

 9   DAVID E. MILLS
     Cooley LLP
10   1299 Pennsylvania Avenue, NW, Suite 700
     Washington, DC 20004
11   202-842-7800

12

13   For the Defendants:

14   ELMER WOODARD
     5661 US HWY 29
15   Blairs, VA 24527
     434-878-3422
16
     JAMES EDWARD KOLENICH
17   Kolenich Law Office
     9435 Waterstone Blvd., Suite 140
18   Cincinnati, OH 45249
     513-444-2150
19
     RICHARD SPENCER, Pro Se
20   1001-A King Street
     Alexandria, VA 22314
21
     DAVID LEON CAMPBELL
22   Duane, Hauck, Davis & Gravatt, P.C.
     100 West Franklin Street, Suite 100
23   Richmond, VA 23220
     804-644-7400 x 221
24

25
```

```
 1   APPEARANCES (continued):

 2   BRYAN JEFFREY JONES
     Bryan J. Jones, Attorney at law
 3   106 W. South Street, Suite 211
     Charlottesville, VA 22902
 4   540-623-6952

 5   MICHAEL ENOCH PEINOVICH, Pro Se
     P.O. Box 1069
 6   Hopewell Junction, NY 12533
     917-747-9238

 7

 8   ************************************************************

 9        (Call to Order of the Court at 2:03 p.m.)

10           THE COURT:  Hi.  This is Joel Hoppe.

11           Thank you-all for calling in for the scheduling

12   conference in Sines versus Kessler.

13           Now, this matter is on the record.  And I imagine

14   we have a number of parties and attorneys for the parties

15   who have called in, but there may also be some third

16   parties who have called in as well, as this is a public

17   matter.

18           Now, first off, I would like to find out who is

19   on the line for the plaintiffs.

20           MR. ROTTENBORN:  Good afternoon, Your Honor.

21   This is Ben Rottenborn, from WoodsRogers.

22           On the line with me this afternoon is Roberta

23   Kaplan, from Kaplan & Company; Karen Dunn and Philip

24   Bowman, from Boies Schiller; and Alan Levine and David

25   Mills, from Cooley.
```

1      THE COURT:  All right.  And, Mr. Rottenborn, who

2  is going to be speaking on behalf of the plaintiffs?

3      MR. ROTTENBORN:  I will let my co-counsel answer

4  who is going to take the lead on most of those.  It won't

5  be me this afternoon.

6      MS. KAPLAN:  Your Honor, this is Roberta Kaplan.

7  I think I will be addressing most of the issues, although

8  it is certainly possible that either Ms. Dunn or

9  Mr. Levine could chime in on certain matters.

10      THE COURT:  Okay.  And this -- what I'm going to

11  ask will go for everybody, but because this is being

12  recorded and to make an accurate record, I would ask that

13  you state your name or identify yourself before you

14  -- before you speak.  And I'll try and remember to remind

15  you when you forget.

16      MR. ROTTENBORN:  Will do.  Thank you, Your Honor.

17      THE COURT:  All right.

18      Now, for the defendants, Mr. Woodard, is that

19  you.

20      MR. WOODARD:  Hi, Judge.  How are you?

21      THE COURT:  All right.  Good afternoon.  And you

22  are representing a number of the defendants in this case.

23  And do you have anybody else with you?

24      MR. WOODARD:  Yes, sir.  Mr. Kolenich -- Albert

25  Woodard.  Mr. Kolenich should be somewhere on the phone.

```
 1   Is he --
 2           MR. KOLENICH:  Yes.  This is Mr. Kolenich.  I'm
 3   here.
 4           MR. WOODARD:  There we are.  He'll be carrying
 5   the ball for us, Judge.
 6           THE COURT:  All right.
 7           And, Mr. Spencer, are you on the line?
 8           MR. SPENCER:  Yes, I am.  Good afternoon, Your
 9   Honor.
10           THE COURT:  All right.  Good afternoon.
11           And how about for Mr. Fields?
12           MR. CAMPBELL:  Good afternoon, Your Honor.  This
13   is David Campbell on behalf of Mr. Fields.
14           THE COURT:  Let's see.  How about for -- well,
15   Mr. Jones, are you on the phone?
16           MR. JONES:  Yes, I am.
17           THE COURT:  All right.  You also represent a
18   number of defendants in this case.
19           MR. JONES:  That's correct.
20           THE COURT:  All right.  Are there any other
21   parties or attorneys for a party on the phone.
22           MR. PEINOVICH:  Yes, Your Honor, this is Michael
23   Peinovich, pro se, here.
24           THE COURT:  Okay.  Mr. Peinovich -- sorry --
25           MR. PEINOVICH:  No problem.
```

 1          THE COURT:  -- is here.

 2          Anyone else?

 3      (No response.)

 4          THE COURT:  All right.  Well, where I would like

 5  to start is by addressing the case schedule.  Now, there

 6  are a number of motions that are related to the case

 7  schedule.  And I -- I have read the filings in those.  It

 8  is the motion to prevent Mr. Peinovich from recording the

 9  26(f) conference with plaintiffs' counsel, there are two

10  motions to stay discovery, and then there's also a

11  recently filed motion to show cause that was filed by the

12  plaintiffs that relates to some concerns about spoliation

13  of evidence.

14          Now, I do want to address a little later on the

15  recording and then the stays of discovery.  And as for the

16  concerns about the spoliation, I would like to hear what

17  counsel's thoughts are as far as the ESI protocol and any

18  document preservation order and any other interim steps

19  that might be necessary to make sure that evidence is

20  preserved for use in the case.  But I don't intend to get

21  into that show cause motion beyond those issues, because

22  it really was just filed.  And I think that a lot of the

23  other issues would just need to be briefed and then allow

24  time to fully address those.

25          Now, as to -- as to the case schedule, there is

essentially one 26(f) report that has been submitted and
there are a number of proposed changes to the schedule.

Ms. Kaplan, do you want to update me on any
scheduling discussions that you have had with the
defendants or any other suggestions as to the deadlines?

MS. KAPLAN:  Your Honor, we -- you know, we have
an agreement with the defendants as to how far away from
the trial date certain things should happen in the case.
I think we have reached agreement on those issues.  So
everything really comes down to the trial date.

We were thinking earlier today that perhaps we
could wait until May to set the trial date, in large part
because we have kind of gotten such a slow start in terms
of document production.  But if Your Honor wants to set a
trial date today, we're obviously amenable to that as
well.

THE COURT:  How long do you think the trial would
be in this case?  Just give me an estimate.

MS. KAPLAN:  I think two weeks, maybe three, Your
Honor.

THE COURT:  All right.  And, Mr. Kolenich, do you
think it would be two to three weeks as well?  Or
Mr. Woodard?

     (Pause.)

MR. WOODARD:  I would advert that it -- I think

1    it is going to be longer, Judge.  That's my crystal ball

2    at work right now, obviously.

3          THE COURT:  Well, perhaps -- let me ask you this,

4    Ms. Kaplan:  Have initial disclosures been made by all of

5    the parties at this point?

6          MS. KAPLAN:  All but defendant Spencer and the

7    parties that haven't appeared in the case yet, Your Honor.

8          THE COURT:  And as to the parties who haven't

9    appeared in the case, is there anyone who default has not

10   been entered?  I know the -- the --

11         MS. KAPLAN:  Yes, Your Honor --

12         THE COURT:  Go ahead.

13         MS. KAPLAN:  Yes, Your Honor.  I believe that as

14   to the non-appearing defendants, I believe they are all

15   covered by the default judgment.

16         THE COURT:  All right.  So it just remains with

17   Mr. Spencer to make the initial disclosures.

18         MR. SPENCER:  I will -- Your Honor, this is

19   Richard Spencer.

20         I will be sending a motion, a joinder to Mike

21   Peinovich's motion to stay discovery.

22         MR. PEINOVICH:  Richard, this is not about that.

23   This is about the initial disclosure under the Rule 26,

24   which is where you indicate, like, the kind of thing that

25   you intend to bring forward as evidence should this -- in

1  the unlikely event this goes to trial.  So -- yeah, you

2  should -- you have do that.  But, you know, we can discuss

3  it.

4          THE COURT:  All right.  Why don't we -- why don't

5  you-all save that conversation for after this conference

6  call.

7          But, Mr. Spencer, I understand that you want to

8  join the motion to stay.

9          Ms. Kaplan, I know you, in your 26(f) report

10 concerning Mr. Spencer, had indicated that you would want

11 those disclosures to be made, I guess, to and from

12 Mr. Spencer within 14 days.  And I think that's a -- you

13 know, a reasonable period.  And so what I will do is after

14 this conference call I will enter an order that will set

15 the deadline for making the initial disclosures as 14 days

16 from the entry of the order.

17         MS. KAPLAN:  That's fine, Your Honor.  Thank you.

18         THE COURT:  All right.  Now, as far as the -- I

19 think -- if it -- since you-all already have the initial

20 disclosures for the most part, I guess that's not the -- I

21 guess there's the difficulty in figuring out what the

22 scope of the case is or how long it might take to try, but

23 you would want to wait until after the motion to dismiss

24 hearing to, you know, see what the posture of the case is

25 before setting a trial date, Ms. Kaplan, but --

1    MS. KAPLAN:  Your Honor, it is not so much what

2  the Court decides on the motion to dismiss.  We're pretty

3  confident about that.  The problem that we have is to date

4  we have not received any written responses to our requests

5  for documents or our interrogatories from any of the

6  defendants.  They are all very overdue.  And none of the

7  defendants have produced a single document to us.  So it

8  is very hard -- and we need certain things to get even

9  third-party documents -- consents from certain defendants

10  to get things from some of the third-party technology

11  sources.

12    So without having a better sense of when that

13  will happen and when we get some cooperation in that

14  regard, it is very hard to figure out kind of how long it

15  will take us to complete discovery.

16    THE COURT:  All right.

17    All right.  And, Mr. Woodard, would you suggest

18  holding off until that hearing on the motion to dismiss

19  before setting a trial date?

20    MR. WOODARD:  Absolutely.

21    THE COURT:  All right.  Mr. Campbell?

22    MR. CAMPBELL:  Yes, I would, Your Honor.

23    THE COURT:  All right.  Mr. Jones?

24    MR. JONES:  Yes, Your Honor, I would too.

25    THE COURT:  All right.  Mr. Spencer?

1          MR. SPENCER:  Yes, Your Honor.

2          THE COURT:  All right.  And Mr. Peinovich?

3          MR. PEINOVICH:  Yes, Your Honor.  I completely

4    agree.

5          THE COURT:  All right.  Well, then I'll concur in

6    that.  And we will postpone setting a trial date until

7    -- until that hearing.  And, you know, it may be that we

8    can use that date, following the hearing, as a time to

9    check in on the status of discovery and see where things

10   stand at that point, how the production of discovery is

11   going as well.

12         MS. KAPLAN:  Yes, Your Honor.  Well, obviously, I

13   assume this is already -- you have this in mind, but once

14   we discuss the motions for stay, and assuming there will

15   be no stay of discovery, it would, obviously, be very

16   helpful to have orders with hard dates for the defendants

17   to have to respond to our discovery requests, because at

18   this point, again, they are all overdue from when they

19   were supposed to have been submitted.

20         THE COURT:  All right.

21         MR. PEINOVICH:  May I say something here?

22         THE COURT:  If you can remember to identify

23   yourself.

24         MR. PEINOVICH:  Yes.  This is Michael Peinovich.

25         I would just like to say, in response to what

```
 1   Ms. Kaplan said, that I consider my motion to stay
 2   discovery to be a response to their initial discovery
 3   request.  And I don't think I -- I think until that matter
 4   is settled, I'm not actually overdue on anything.  That's
 5   my opinion.
 6             THE COURT:  I don't know about that.
 7             MR. PEINOVICH:  Okay.
 8             THE COURT:  All right.
 9             MR. PEINOVICH:  Obviously, (inaudible) Your Honor
10   if I'm mistaken in that, but --
11             THE COURT:  All right.
12             And, Mr. Spencer, I know you hadn't joined in the
13   -- or haven't had a discussion about the 26(f) deadlines,
14   but have you seen the proposed deadlines that plaintiffs
15   counsel and then the rest of the defense counsel and
16   defendants have agreed to?
17             MR. SPENCER:  Yes.  I have seen those deadlines.
18             THE COURT:  All right.  Do you have any problems
19   with those deadlines?
20             MR. SPENCER:  No.
21             THE COURT:  All right.  Well, that will be the
22   -- you know, the rough breakdown of the deadlines in the
23   case as far as discovery cutoff and expert reports and
24   things of that nature.
25             Now, Ms. Kaplan, have you-all had any further
```

discussions about the scope of discovery and whether there would be any limits put on it?  I'm not talking about the stay of discovery, but as far as, you know, the number of interrogatories and things like that?

MS. KAPLAN:  Yes.  Your Honor, I'm glad you asked that.  I don't know that we have had any discussions about interrogatory limits, but with respect to depositions, obviously, we believe there needs to be a change to the ordinary course, since there are 25 defendants in the case.  Only 20 of those are individuals who we need to depose.  So we are suggesting 20 party depositions per side and then another 10 nonparty depositions.

THE COURT:  All right.

All right.  Mr. Woodard or Mr. Kolenich?

MR. WOODARD:  Do you want to take this one?

MR. KOLENICH:  Yeah, I have got it.

Mr. Kolenich, Your Honor.

We are not necessarily not in agreement with that.  We would just like to consider it.  Ten nonparty depositions might not be enough, given the huge number of witnesses that are in the process of being identified in this case.  But, I mean, certainly some limit is appropriate.  I just don't know that 10 nonparty witnesses is something we can agree to right now.

THE COURT:  All right.  Well, that sounds like

1   that is probably something that you-all need to discuss

2   further.  And I think if there are any issues or

3   disagreements about those numbers, you can -- you can

4   bring them to my attention, and I'll resolve them.

5           MS. KAPLAN:  Thank you, Your Honor.  From

6   Ms. Kaplan.  We will do that.

7           THE COURT:  And, of course, Mr. Jones and

8   Peinovich and Spencer and Mr. Campbell, you-all would need

9   to be involved in those discussions as well.

10          UNIDENTIFIED VOICE:  Yes, Your Honor.

11          UNIDENTIFIED VOICE:  Yes, Your Honor.

12          UNIDENTIFIED VOICE:  Thank you.

13          UNIDENTIFIED VOICE:  I agree with Mr. Kolenich's

14  interpretation here.  I think there is a potentially large

15  amount of people that could be deposed here.  But, you

16  know, obviously there would have to be a reasonable limit.

17          THE COURT:  All right.

18          MR. WOODARD:  Elmer Woodard.  How many plaintiffs

19  are there?

20          MS. KAPLAN:  10, I believe.

21          MR. WOODARD:  Say again, please?

22          MS. KAPLAN:  I apologize.  For Ms. Kaplan.  I

23  believe the number is 10.

24          MR. WOODARD:  Okay.

25          THE COURT:  All right.

1        MR. CAMPBELL:  Your Honor, if I could, briefly.

2   This is David Campbell.  I would think that, obviously, we

3   would only need 10 party witness depositions then, but I

4   would think that we would need significantly more than,

5   say, 20 nonparty, even as regards to the medical

6   allegations.  You know, for each plaintiff -- if they are

7   all together like this, each plaintiff would presumably

8   have at least one physician.  And that's not counting fact

9   witnesses.  So I would just carve out -- say, you know,

10  that we would need to carve out an expert versus fact

11  witness area as well.

12       MS. KAPLAN:  Well, Ms. Kaplan, Your Honor --

13       MR. WOODARD:  Yeah, this is Elmer Woodard.  It

14  seems like the one thing everybody can agree on, there are

15  going to be a whole bunch of nonparty depositions.  So why

16  don't we just solve the problem and say 50?  And if we

17  need more, then we can always come back and ask.  But, for

18  God's sake, let us hope we don't need more than 50.  That

19  would cover it.  And we can dispose of that issue right

20  now.

21       MS. KAPLAN:  For Ms. Kaplan, Your Honor.  I don't

22  think the plaintiffs would agree to that high of a number.

23  We are anxious to get to trial.  We think that would delay

24  discovery for far too long.

25       UNIDENTIFIED VOICE:  I have a number of

1  (inaudible).

2          THE COURT:  I think what you-all need to do is to

3  allow discovery to proceed a little bit further and start

4  really trying to identify who the witnesses -- nonparty

5  witnesses may be in the case.  And then I think that will

6  inform your decision more.

7          And, you know, if it seems like it is getting to

8  be too many folks, then I would encourage you to consider

9  whether you need all of those people.  And then if you do

10  need to involve me in reaching an agreement -- or reaching

11  a number that is workable, you can do that.

12          MS. KAPLAN:  For Ms. Kaplan, Your Honor, that

13  seems like a very reasonable way to proceed.  We agree.

14          THE COURT:  Okay.

15          Now, this does tie in -- my next question, this

16  does tie in somewhat with the motion to stay, in

17  particular for Mr. Fields, because I know the 26(f) report

18  there is -- there's a request by the defendants that any

19  defendant who has a pending criminal charge, that that

20  person's deposition would be put off until after the

21  criminal charges are resolved.

22          Who -- who is affected by that concern, other

23  than Mr. Fields at this point?

24          MR. WOODARD:  This is Elmer Woodard.

25  Mr. Cantwell is affected by that.  And we agree with

Mr. Campbell.

THE COURT:  Anyone else?

(No response.)

THE COURT:  All right.  Mr. Cantwell --

MR. PEINOVICH:  May I ask a question, Your Honor?
This is Michael Peinovich.

THE COURT:  Sure.

MR. PEINOVICH:  What about potential people that
I would like to depose that are not parties to this suit
that are facing charges?  Like there are a number of
counterprotesters that I would like to depose.  But I
don't know -- I would have to research if they are facing
charges or not.  So how would that be affected here?

THE COURT:  Well, if it is not a party, then it
is -- if the person is not a party and they are facing
charges, then that's not something that I'm going to
factor into the -- into any scheduling decisions.

MR. PEINOVICH:  Okay.  All right.  Thank you very
much.

THE COURT:  And, Mr. Campbell, and perhaps
Mr. Woodard or Mr. Kolenich, just to delve in a little bit
to the motion to stay, what other -- what concerns other
than your clients' depositions are fueling the motion to
stay?  Are there other areas of discovery that you think
could be problematic?

```
 1          MR. WOODARD:  This is Elmer Woodard.

 2          Mr. Peinovich probably ought to carry that ball.

 3          MR. CAMPBELL:  Judge, if I could --

 4          THE COURT:  This is Joel Hoppe again.

 5          Mr. Peinovich wasn't raising that, that concern

 6  about the criminal consequences of responding to

 7  discovery.

 8          So, Mr. Campbell, go ahead.

 9          MR. CAMPBELL:  Yes, sir.  Thank you, Your Honor.

10          Your Honor, in addition to the depositions, I

11  think any interrogatory that calls for a description or a

12  statement of the defendants would be problematic as well.

13  And I would certainly, you know, proffer to the Court that

14  staying or severing as to Mr. Fields would be an

15  alternative route, rather than staying the entire case,

16  because I don't know that anyone disagrees that the issues

17  are a little different.

18          Anything that would be describing events -- and

19  there's also a concern, Judge, of -- on my behalf, for my

20  client, which may not be a concern for the Court and with

21  even the plaintiff, as to any -- pleading the Fifth might

22  be interpreted by an insurance carrier as not cooperating

23  under the contract, that might affect coverage.  And that

24  may not be anything that the Court or, frankly, the

25  plaintiffs are concerned with, but that would certainly be
```

1    a concern of mine.

2           THE COURT:  All right.  Mr. Campbell, are there

3    some categories of discovery that you think wouldn't prove

4    problematic for Mr. Fields?  It sounds like there have

5    been some discovery responses from Mr. Fields.

6           MR. CAMPBELL:  I would say, Your Honor, that

7    producing documents wouldn't necessarily be problematic.

8    I think any -- you know, in discovery, that expert

9    defenses and that kind of thing wouldn't necessarily be

10   problematic.  I think that the concern is all-around Fifth

11   Amendment privileges of Mr. Fields.  And actually I

12   shouldn't say that, Your Honor.  There could be some

13   overlay of expert discovery that might run afoul of the

14   portion of the brief with concern as to impermissibly

15   aiding prosecution in the criminal case.

16          So I could see -- I could think of a category of

17   expert discovery that might be problematic as well.  But

18   in general, it would be statements or descriptions.

19          THE COURT:  All right.

20          All right, Mr. Fields --

21          MR. CAMPBELL:  Yeah, as far as Cantwell is

22   concerned, yeah, any description of -- it is a little more

23   nettlesome.  My impression of the complaint is that it

24   pretty much says Mr. Cantwell allegedly did things on

25   August 12th.  And to the extent that it -- that I'm

correct, then Mr. Cantwell doesn't particularly have

-- there aren't any categories of discovery that he

couldn't answer about August 12th.  There -- now, as to

August 11th, on the other hand, specifically the night

thereof, and, in fact, the events of all day, that can get

us into some Fifth Amendment problems.

        And -- so his primary objection is to making any

statements about August 11th.  I'm not -- I just don't

remember the complaint enough to be able to tell you

whether or not it alleges he did anything on August 11th

that affected the plaintiffs.  I don't think it does.  But

I don't remember it --

        THE COURT:  When is his criminal trial set for?

        MR. CAMPBELL:  August.

        THE COURT:  Okay.

        MR. CAMPBELL:  And so that would be our primary

-- our primary concern.

        THE COURT:  All right.

        MR. CAMPBELL:  So that means -- Ms. Kaplan may

-- if they are saying he didn't do anything that affected

the plaintiffs on August 11th, then we have -- it is not

that big a deal, it doesn't seem to me.  But if she's

saying he did something essentially before August 12th to

do that, then, of course, August 11th would be -- any

statements about events on August 11th would be

1  problematical.

2          THE COURT:  Okay.

3          Ms. Kaplan.

4          MS. KAPLAN:  Yes, Your Honor?

5          THE COURT:  I think I understand your position

6  from your brief.  You essentially proceed ahead with

7  discovery.  And any defendants can raise a Fifth Amendment

8  concern when they -- you know, if they see fit and make a

9  particularized objection or statement about that

10  privilege.  Is there anything -- anything additional that

11  you would -- that you would add, in particular about the

12  depositions of Mr. Cantwell and Mr. Fields?  And it may be

13  that -- just given the schedule of the case, that those

14  would come sufficiently late in the case so that it

15  wouldn't be a problem.

16          MS. KAPLAN:  Yes, Your Honor.  That's exactly

17  what I was thinking.  Certainly they should proceed with

18  producing documents and things of that nature, which is

19  our highest priority right now.

20          In terms of depositions, we are certainly aware

21  of the Fifth Amendment issues.  We just heard that

22  Mr. Cantwell's trial is scheduled for August.  I believe

23  Mr. Fields' is currently scheduled for November.  And we

24  certainly can take that into account in terms of

25  scheduling depositions and try to be as sensitive to that

1  as we possibly can.  But right now I don't think it is a

2  ripe issue.

3          THE COURT:  All right.  Well, what I -- I do

4  intend to address the motions for stay in written orders.

5  And I'll try and do that -- do that shortly.  Is there

6  -- is there anything else?

7          Mr. Peinovich, I know you have a motion to stay

8  as well.  And I read that and your reply and the

9  plaintiff's response to it.  Is there anything else that

10 you would want to say on your motion?

11         MR. PEINOVICH:  No.  I would reiterate the

12 arguments that would be in those documents that are

13 already filed.  I mean, I could do that.  But if you

14 understand the arguments, then there's kind of no point in

15 me reiterating them.  So, yeah.

16         THE COURT:  No need to reiterate what you already

17 wrote.

18         All right.  Now, Ms. Kaplan, in the 26(f) report

19 you noted a need to have a robust ESI protocol.  And, of

20 course, there's now the motion to show cause for

21 spoliation and just the general concerns about any

22 document preservation.

23         What do you suggest as far as the steps for any

24 ESI protocol or preservation order or other means to make

25 sure that all documents, whether electronic or otherwise,

1    are preserved for discovery purposes?

2            Let's see if there's an agreement on that.

3            MS. KAPLAN:  No, I don't think there's an

4    agreement, Your Honor.  And we have been -- tried to be

5    involved and we conversed with defendants on several

6    occasions to try to inquire as to what steps, if any, had

7    been taken to preserve electronic information.  And so far

8    we haven't really gotten any responses.

9            I think an order from the Court making it clear

10   that, obviously, defendants have to preserve all of their

11   materials and to identify any instances since the filing

12   of the complaint in which documents weren't preserved

13   would be extremely helpful.

14           I'm mindful of what the Court said at the

15   beginning of the conference.  I don't want to go into too

16   much detail about spoliation, but we have very, very

17   serious concerns about this, are thinking about maybe a

18   request for an independent examiner to come in and do kind

19   of an audit of their devices to make sure that nothing has

20   been deleted and, if it has, to try to get it restored.

21           MR. PEINOVICH:  May I comment, Your Honor?  This

22   is Michael Peinovich.

23           THE COURT:  Sure.  Go ahead, Mr. Peinovich.

24           MR. PEINOVICH:  Yeah, I've confirmed to the

25   plaintiffs in an email at least twice, but I think three

```
 1   times, that I have not deleted nor will I delete any
 2   information relevant to this case.  I'd be happy to swear
 3   to that in some way as well.  I have confirmed that, as
 4   well as said that I am more than happy to discuss
 5   discovery disputes with them.  They are not -- they don't
 6   really want to talk to me.
 7               THE COURT:  All right.  Well --
 8               MR. SPENCER:  Richard Spencer.  I would second
 9   that.  I have absolutely no intention to delete any
10   electronic record regarding Charlottesville, being that
11   information is exculpatory.
12               THE COURT:  All right.  Well, and I certainly
13   think that it is incumbent upon everyone to preserve any
14   potentially relevant evidence.  And I -- in recognizing
15   some of the concerns that have been raised in this case, I
16   certainly am entering a preservation order.  And if
17   there's any ESI protocol, whether it is agreed upon or if
18   there are separate protocols that the parties want to
19   submit, I'm happy to consider those as well.  I do take
20   everyone's obligation to preserve this evidence very
21   seriously.
22               MR. PEINOVICH:  May I make one more comment
23   -- sorry.  Go ahead, Ms. Kaplan.
24               MS. KAPLAN:  No, no.  Go ahead, Mr. Peinovich.  I
25   apologize.
```

1      MR. PEINOVICH:  Yes.  I would just like to say
2  that I know there is an issue with another one of the
3  defendants in the order with spoliation.  And that's -- I
4  wanted to just emphasize that I am not involved in that in
5  any way.  And I don't believe any information relevant to
6  me or evidence that I might have was, you know, destroyed
7  in this case.  And I am absolutely preserving everything.
8  I am not -- I am not involved in that issue with one of
9  the other defendants.  I just wanted to reiterate that.
10      THE COURT:  All right.  Thank you, Mr. Peinovich.
11  And I hear you loud and clear on that.
12      And, Mr. Spencer, I sense that you are going to
13  echo that.
14      MR. SPENCER:  Yes, I -- yes.  This is Richard
15  Spencer.  I would echo that.  Again, I won't -- I can't
16  say whether -- the things that were said by Matt Parrott
17  recently about destroying information, I don't know
18  whether that is true or not.  But, regardless, there is no
19  information regarding me that could be destroyed involving
20  that defendant.  The -- Matthew Heimbach and the
21  Traditionalist Workers Party, I have never been a member;
22  I have nothing to do with them; I am not connected with
23  them.
24      So I will -- you know, I'm a very reasonable
25  person.  I understand my obligations as a citizen.  I

would not even consider destroying information relevant to
the case.

        THE COURT:  All right.  All right.  Thank you.

        Ms. Kaplan?

        MS. KAPLAN:  Yes, Your Honor.

        THE COURT:  Was there something that you were
going to say?

        MS. KAPLAN:  Yeah, a couple things.  One, I would
be happy to submit for the Court -- and we could try to
meet and confer -- a proposed order in this respect as
well as an ESI protocol.

        In our document request and interrogatories we
have actually asked the defendants to identify what steps
have been taken, what devices they have, et cetera.  And
hopefully when we get answers to that we'll be in a more
educated position to respond.

        There's one other issue, Your Honor, I'm just
previewing that is likely to come up, which is in some of
the third-party subpoenas we are going to need consent
from the defendants, under the Stored Communications Act,
in order for an entity, plus this Court, to produce
documents to us.  And so we may need the Court's
assistance in that as well.

        THE COURT:  All right.  Mr. Kolenich and
Mr. Woodard, you know, the concern has been raised about

the spoliation in relation to your clients.  I'm not
trying to get into the details of it.  But, you know, I do
think it is important to have something in place to -- you
know, to ensure that spoliation -- or at least take
reasonable steps to ensure that spoliation isn't going to
happen.  Do you-all have any suggestions about ESI
protocol or a preservation order or is that something that
you want to take up with Ms. Kaplan after the hearing?

MR. KOLENICH:  Judge, this is Jim Kolenich.
Yeah, I think we would like to discuss that with
Ms. Kaplan's office.

We did provide them a declaration from
Mr. Parrott affirming that he hasn't destroyed anything
that could be responsive to their discovery requests,
despite his social media posts.  So we would just like to
echo what Mr. Spencer and Mr. Peinovich are saying, that
we haven't destroyed anything.  We understand their
concern, but the information is safe and secure.

But, yeah, we understand that there will be an
ESI protocol that we should agree to.  And we will do
that.  We will negotiate that with Ms. Kaplan's office.

THE COURT:  All right.

MS. KAPLAN:  Your Honor, if I may.  I mean, the
problem that we're having on this -- and, again, I know
Your Honor doesn't want a full argument, and so we can

respond later, but the problem we have on day one they say
something publicly, encouraging people or saying that they
destroyed materials, and then on day three they say they
haven't.  That doesn't leave us in a very comfortable
position, as Your Honor can imagine.  That's why we think
some kind of third-party examination may well be necessary
here.

MR. PEINOVICH:  I would like to say something
here.  Michael Peinovich.

THE COURT:  Hold on, Mr. Peinovich.

And, you know, Ms. Kaplan, maybe at some point
that examination will be necessary.  But I think the first
-- the first step is to get the ESI protocol, get a
document preservation order.  And I would like you-all
(inaudible) and do that in pretty short order, really in
the next week, I would think, or two, if that is
manageable.

MS. KAPLAN:  We will absolutely do that, Your
Honor.  Thank you.

THE COURT:  All right.  And, Mr. Campbell and
Mr. Jones, are you agreeable to that?

MR. CAMPBELL:  Your Honor, Dave Campbell.  Are we
agreeable to negotiating an ESI agreement?

THE COURT:  Yes, sir.

MR. CAMPBELL:  Yes, sir.  Of course.  Yes, Your

```
 1   Honor.
 2           MR. JONES:  Yes, Your Honor.  Bryan Jones here.
 3           THE COURT:  All right.
 4           And, Mr. Spencer and Mr. Peinovich, it sounds
 5   like you-all are in spirit and in favor of that as well?
 6           MR. PEINOVICH:  Yes, Your Honor, I'm more than
 7   happy to negotiate something like that with plaintiffs.  I
 8   would just like to say that I have not ever said that I
 9   deleted anything.  I -- in fact, just the opposite.  The
10   -- any social media posts of mine actually reaffirms my
11   statements that I have not deleted anything.  And I have
12   taken steps to preserve information.  So what --
13   Ms. Kaplan's previous statement about something said on
14   day one and then something else said on day two does not,
15   in my opinion, apply to me.
16           THE COURT:  All right.
17           Mr. Spencer, are you agreeable with engaging in
18   negotiating the ESI protocol?
19       (Pause.)
20           THE COURT:  Mr. Spencer, are you still there?
21       (No response.)
22           THE COURT:  We may have dropped somebody.
23           MR. SPENCER:  I'm here.  I'm sorry.  I muted the
24   phone.
25           Yes.  I am, of course -- I am, of course, willing
```

1    to negotiate.  That is perfectly fine.

2         I would also just like to mention, Roberta

3    Kaplan, when she said on day one they claim they are

4    deleting and on day three they claim that they were

5    preserving the information, that is in direct reference to

6    another party.  It is in direct reference to Matt Parrott

7    and the Traditionalist Workers Party.  I have never said

8    anything approaching that.

9         THE COURT:  All right.  Ms. Kaplan -- I don't

10   know that she was directing that at you.  But we can move

11   -- I think we can move beyond that.

12        All right.  Ms. Kaplan, are there other things to

13   discuss as far as discovery or the case schedule at this

14   point?

15        MS. KAPLAN:  I think the only issue that I'm

16   aware of, Your Honor -- and one of my colleagues may kick

17   me and tell me I'm missing something, but the only thing

18   that I'm aware of is the motion that we had in connection

19   with doing the meet-and-confer process with Mr. Peinovich,

20   precluding him from recording our conversations.

21        THE COURT:  Right.  And that is something that I

22   -- that I will -- or I do want to address today, so we can

23   go ahead and take that up.

24        It seems that most of the things that you would

25   want to discuss in the Rule 26(f) conference we have

probably covered today; is that correct?

MS. KAPLAN:  I think so, Your Honor.

THE COURT:  All right.  And, Mr. Peinovich, what is -- do you still have concerns about wanting to -- wanting to record your conversations with plaintiffs' counsel?

MR. PEINOVICH:  I am happy to do -- if they are uncomfortable talking with me on the phone -- I believe that if we do speak on the phone, I just have a basic right to preserve conversations with them for use in the case and future, you know, recordkeeping and reference. If I agree to something on the phone, I would like to have sort of an exact recording of what is said.  If they are not comfortable with that, I am happy to conduct negotiations over email.

THE COURT:  Well, you may -- it is probably good practice for anyone, if there is an actual agreement, to have it in email or a letter or document more memorializing that agreement.

But, Mr. Peinovich, there is, in every civil case -- and the Rules of Civil Procedure really require this -- that the parties and attorneys have to work together and have to be able to cooperate at least to a certain degree, to make the case proceed and to do so in a just way.  And I -- you know, I don't think that recording

those conversations, one, is necessary.  In my experience,
I have never seen that there's, you know, some real
fallout from not having a recording of a conversation
between counsel or counsel and an unrepresented party.
But I do think it would be inconsistent with the rules,
because it engenders -- or really encourages people not to
be as cooperative, if they are recording.

So what I would do is ask you not to record your
conversations with plaintiffs' counsel.  And if you feel
like you need to have a record of the discussion, then an
email is certainly sufficient.

MR. PEINOVICH:  Yeah.  I completely understand
that decision.  And I'm happy to comply with that, Your
Honor.

I -- again, I'm a pro se defendant.  I'm kind of
up against a lot of stuff here.  And when I was initially
saying this, I was less seasoned, shall we say, in doing
these matters.  But through dealing with this case and,
you know, learning about the system and stuff, I have
become more familiar and more comfortable with it.  So I
am happy to either not record, if we talk voice, and, in
the alternative, simply conduct negotiations via email.

THE COURT:  Okay.  All right.  Thank you,
Mr. Peinovich.  And I think that addresses that motion.

All right.  Mr. --

1          MS. KAPLAN:  Your Honor?

2          THE COURT:  Go ahead.

3          MS. KAPLAN:  One other issue that we had is, you

4    know, we are very eager to get this case underway.  You

5    have heard me talk about trying to get documents produced.

6    As soon as we start getting documents in, we are very

7    eager to start taking depositions.  Obviously, we won't

8    take the depositions of the two defendants right now with

9    criminal issues, but as to the other defendants.

10         And one thing we would like to ask is we would

11   like to do the depositions in the courthouse, if that's

12   okay with Your Honor.

13         THE COURT:  You know, I suppose that would really

14   depend on the convenience of all of the parties and if it

15   is -- if that's the most suitable place for somebody to

16   -- you know, to travel for a deposition.  It is certainly

17   something that we can consider.

18         MS. KAPLAN:  So the parties that may not want to

19   travel, we are certainly amenable to doing those

20   depositions in the closest federal courthouse to wherever

21   they are located.

22         THE COURT:  All right.

23         MR. WOODARD:  This is Elmer Woodard.

24         That might not be a bad idea.  We have -- we have

25   -- speaking for our guys, we have security concerns which

1   are much, much lessened if we're in the federal

2   courthouse.  So that might not be a bad idea, Judge.

3          THE COURT:  All right.  Mr. Campbell, you are

4   -- Mr. Fields is in -- well, he's in custody at this point

5   and the deposition certainly would be some ways off.  But

6   is that something -- something -- I imagine the deposition

7   for Mr. Fields would be at the local jail, one way or the

8   other one, whenever that is going to take place.

9          MR. CAMPBELL:  That was my thought, although Your

10  Honor may be able to cause a change to that.  But that was

11  -- that was kind of my thought.  But, again, Judge, I am

12  certainly hoping you rule in our favor on the motion to

13  stay, at least in regard to Mr. Fields, so I don't want to

14  say something to the contrary.

15         THE COURT:  Right.  No, I understand.

16         And, Mr. Jones, what are your thoughts on where

17  to hold the depositions?

18     (Pause.)

19         THE COURT:  Mr. Jones, would you concur in this

20  request to have the depositions at the courthouse in

21  Charlottesville or a courthouse in another jurisdiction?

22         MR. JONES:  Sorry, Your Honor.  Yes, I would

23  concur in that.

24         THE COURT:  All right.

25         MR. CAMPBELL:  And, Your Honor, if I could

briefly -- Dave Campbell, again -- that doesn't sound like a bad idea to me insofar as the Court's ruling and other individuals.

THE COURT:  Okay.  Let's see, and Mr. Spencer?

MR. SPENCER:  I -- I have no objection.

THE COURT:  All right.  Mr. Peinovich?

MR. PEINOVICH:  Yeah.  I would -- I agree to the item about the federal courthouse closest to where I'm located.  I would -- I have a serious security concern about traveling to Charlottesville.  I have been -- as well as other defendants, have been subject to physical attack outside of the Charlottesville courthouse.  In particular, Defendant Kessler has been attacked several times in going to and from court appearances.  And I don't want to be subjected to that.  So I would prefer to be deposed, if I'm going to be deposed, in a courthouse near where I live, a federal courthouse, of course.  So I'm agreeable to that.

MS. KAPLAN:  We understand that, Your Honor.  And I think Mr. Peinovich is quite close to most of us in New York, so that shouldn't be a problem.

THE COURT:  All right.  Well, what I -- what I would ask you-all to do on that is when you get -- get around to scheduling depositions, you know, of course you are going to -- if it is out of this district, you would

1   need to check with those courts and make sure that they

2   can or are willing to accommodate the request to hold the

3   deposition there.  And once you know about a time to hold

4   a deposition, then contact the clerk's office at this

5   -- in this district and we'll see if we can arrange to

6   have a deposition at the courthouse as well.

7          You know, I think that there are some

8   -- certainly some things that are in favor of it, you

9   know.  I do have some -- there are some security concerns

10  about having -- there are some security concerns as well.

11  And certainly we can try and address those here at the

12  courthouse.

13         MR. WOODARD:  Your Honor, this is Elmer Woodard.

14         Some security concerns doesn't really -- it kind

15  of understates it, Your Honor.  The truth is that the last

16  thing that I want to do for any of my clients is have any

17  kind of dissemination of where they are going to be and

18  when they are going to be there, because I have already

19  had -- one of my clients already has had a hit squad come

20  after him because that information got out.  And whether

21  it is at the Charlottesville courthouse or at the -- you

22  know, some courthouse in Utah, I don't know.  But we have

23  serious, serious security concerns, because, remember, we

24  can't carry firearms between the sidewalk and the door.

25  And we certainly can't carry them through the door.  And

1    the only thing that kept one of my -- one of our clients

2    from either getting killed or having the heck beat out of

3    him was he was carrying a firearm.  And he showed it to

4    the people who were coming after him and they backed off.

5         THE COURT:  Mr. Woodard, we don't need to get

6    into all of that.  But, you know, hearing this, it does

7    make me wonder if it makes sense for you-all to just agree

8    to another location that isn't going to draw the attention

9    that coming to the federal courthouse in Charlottesville

10   would certainly engender.  And I'll just -- we can

11   (inaudible) throw that out --

12        MS. KAPLAN:  Your Honor, I think maybe another

13   solution that is -- we have been told that the courthouse

14   would be the safest, but maybe a solution is for all of

15   the parties to agree that deposition notice, schedule

16   dates for deposition, persons, and times be kept strictly

17   confidential.

18        MR. WOODARD:  That's what I was going to suggest,

19   Ms. Kaplan.  I think that's -- that was where my concern

20   is.  The federal courthouse is a pretty safe place.  We

21   don't have a problem with that.  But there is a security

22   concern getting to the door.  And I would -- that's what I

23   was going to ask for is that the time and location of any

24   depositions has to be kept confidential, because I

25   -- because, honestly, Judge, we don't want to create a

situation where we have got to be inside the federal courthouse at ten o'clock and there's a mob outside, and we can't get there because of the screaming mob. So we're either -- you know, we either -- we either get beat up or held in contempt by a federal judge. Neither one is particularly palatable.

THE COURT: Well, the depositions, of course, are a non-public proceeding, so that's something that you-all can keep your schedule amongst yourselves. And let the clerk's office know when you -- you know, when you want to have those. And then we'll see if -- we'll see if the schedules can be accommodated. But that may be -- that may be the best way to handle it.

MR. WOODARD: Okay.

THE COURT: All right.

Counsel, let me tell you about how I do like to address discovery disputes. And I do try to address them informally and do so quickly. It does require that you-all -- the rules require that you-all confer in good faith to try and resolve any disputes before you bring them to my attention, though. And oftentimes that means that after objections are filed to -- or submitted, if there are any discovery requests, that you-all at least pick up the phone, if not meet in person. And there may be additional written discussions about the dispute. But

1    it really does require that you-all try and work it out

2    and narrow the dispute before you bring it to me.

3           Now, if you can't resolve it on your own, what I

4    would ask you to do is to contact Karen Dodson, who is my

5    scheduling clerk in Harrisonburg.  You can set up a

6    conference call with me.  You can send Karen, you know, a

7    short email, really just a paragraph or two letting me

8    know what the dispute is about.  If it is something that

9    is a little bit more involved, then you can submit a joint

10   letter to Karen, really of no more than two pages, just

11   giving me the gist of the dispute.  If there are any

12   requests for production of documents or interrogatories

13   that are at issue, attach those and the objections to the

14   letter so that I can see the language of the request and

15   the objection.  We'll have a conference call and then see

16   if we can resolve it that way.

17          Sometimes I will rule on the conference call and

18   an order will come out of it.  And other times we can just

19   reach an agreement by discussing it on the conference

20   call.  If it is something that turns out to be more

21   involved that requires, you know, briefing, then we can

22   talk about a briefing schedule on that call.

23          Now, Ms. Kaplan, do you have any questions about

24   that?

25          MS. KAPLAN:  Not at all, Your Honor.  Thank you.

```
 1            THE COURT:  All right.  And, Mr. Spencer, do you

 2   have any questions about that procedure?

 3            MR. SPENCER:  No.

 4            THE COURT:  All right.  And Mr. Campbell?

 5            MR. CAMPBELL:  No, sir.

 6            THE COURT:  All right.  Mr. Woodard or

 7   Mr. Kolenich?

 8            MR. WOODARD:  We're okay with it.

 9            MR. KOLENICH:  No, sir.

10            THE COURT:  All right.  And Mr. Jones?

11       (No response.)

12            THE COURT:  Mr. Jones, are you there?

13       (No response.)

14            THE COURT:  All right.  And Mr. Peinovich?

15            MR. PEINOVICH:  Yes, Your Honor.  I'm

16   (inaudible).

17            THE COURT:  Okay.

18            All right.

19            There are a number of motions that are pending.

20   There are a couple of motions to quash subpoenas.  I don't

21   want to address those today.  There's Mr. Peinovich

22   (inaudible) filed motion for sanctions.  And Ms. Kaplan

23   has responded to that.  And I don't intend to address that

24   today either.  But I will address those in written orders.

25   And if I think that I need to have a hearing on any of
```

```
 1   those, I'll contact the parties.
 2           Now, on the motion to stay discovery -- they are
 3   the two -- I just want to ask if anybody has anything else
 4   that they want to say on those motions.
 5           Mr. Peinovich, I think I -- I think you already
 6   indicated that you had said everything that you needed to
 7   on your motion?
 8           MR. PEINOVICH:  Uh-huh.  Yes.  Yes.  That's
 9   correct, Your Honor.
10           THE COURT:  All right.  And Ms. Kaplan -- well,
11   let me ask this:  Mr. Campbell, as to Mr. Fields' motion,
12   is there anything else that you wanted to say on that?
13           MR. CAMPBELL:  Judge, I would just -- you know,
14   if it were a typical hearing, I would expect to go and
15   then have the plaintiff go and then respond, as it being
16   my motion.  I would just ask that the Court -- in addition
17   to what is filed in the motion, in addition to the
18   concerns I raised earlier as to severing and/or to issues
19   with potential negative coverage ramifications for
20   Mr. Fields, I would just ask the Court to permit me to
21   respond if there's anything I feel the need to when
22   Ms. Kaplan has an opportunity.
23           THE COURT:  All right.
24           MR. WOODARD:  This is Elmer Woodard.  Can I add
25   something, Judge?
```

```
 1           THE COURT:  Yes, for Mr. Cantwell, go ahead.
 2           MR. WOODARD:  Well, for Mr. Cantwell and the rest
 3   of our clients.  I have got -- I have got evidence that
 4   -- from a -- well, I have got credible evidence, let's put
 5   it that way, that -- we -- we joined in on the motion to
 6   stay by Mr. Peinovich because we have got credible
 7   evidence that the purpose of this is -- the purpose of
 8   this whole case is to, quote, bankrupt the defendants and
 9   discover their operations, unquote.
10           And so we would also ask -- we would join into
11   the motion to stay because the complaint says the purpose
12   of this is to get a bunch of money for the injured
13   plaintiffs.  And so to the extent that the discovery seeks
14   to discover operations that aren't relevant to what the
15   complaint seeks, we would join into Mr. Peinovich's motion
16   to stay and --
17           THE COURT:  Mr. Woodard, let me cut in on that
18   because that isn't a proper reason to stay discovery.
19   That may be an objection in responding to discovery, but
20   saying that the request isn't relevant is not a grounds to
21   stay.
22           MR. WOODARD:  Yes, sir.
23           THE COURT:  All right.
24           Ms. Kaplan, is there anything that you would want
25   to say on either of the motions to stay discovery?
```

          MS. KAPLAN:  I don't think we need to add
anything right now, Your Honor.  Thank you.
          THE COURT:  Okay.  All right, Mr. Campbell,
then -- I know you wanted to respond to Ms. Kaplan's
arguments, so is there anything else that you want to say?
          MR. CAMPBELL:  No, not at all, sir.
          THE COURT:  All right.  Like I said, I will do a
written -- I'm going to take up those motions and address
them in a written order.
          All right.  I think that is essentially
everything that I wanted to cover today.
          Ms. Kaplan, is there anything else that you think
we need to (inaudible).
          MS. KAPLAN:  Nothing off the top -- nothing else
for today, Your Honor.  Thank you.
          THE COURT:  All right.  And I know that you
mentioned earlier that you -- in the order addressing the
motions to stay discovery you would want some sort of a
deadline put in place should I deny those motions for the
defendants to respond to your discovery, which at this
point I understand that their responses are overdue under
the time limits in the rules.
          MS. KAPLAN:  Yes, Your Honor -- I'm sorry.  Could
you -- I apologize, Your Honor.  I got distracted.  What
was the last thing you said?

          THE COURT:  That you had asked for a -- for me to

impose a deadline for the defendants to respond to your

written discovery because you have indicated that it is

-- those responses are overdue at this point.

          MS. KAPLAN:  Yes, Your Honor.  And what we would

-- what we would propose is something less than the 30

days, as they are already overdo, for the written

responses and objections.  And, obviously, then they can

have a rolling production of the actual documents.  But we

would at least like to get their written responses in

pretty promptly.

          THE COURT:  All right.

          MR. CAMPBELL:  Your Honor, if I could briefly.

This is David Campbell again.

          We did -- I just wanted to point out we did

timely file objections, although not responses, and would

again -- if the Court is inclined to deny the motion to

stay, I would request that the Court in some way

incorporate a reference that it sounded like plaintiffs'

counsel stated today that they agreed to hold off -- to

some -- I mean, they didn't say, "We'll wait until after

the trial," but they did represent to the Court that they

would agree to hold off on the deposition of anyone facing

criminal charges to some extent.

          THE COURT:  And, Mr. Campbell, I'll say this.

1    You know, I'm certainly leaning towards denying the stay,

2    but I am receptive, you know, to certain instances or

3    certain, you know, types of discovery that may be

4    particularly problematic for Mr. Fields -- or,

5    Mr. Woodard, for Mr. Cantwell -- to respond to today.  So

6    if there are -- I think if there are certain categories or

7    -- or, like, a deposition that presents a problem, if

8    that's not something that you are able to work out with

9    plaintiffs' counsel, then, you know, you can bring that

10   back to -- back in front of me.

11          All right.

12          MR. CAMPBELL:  Thank you, Your Honor.

13          MR. WOODARD:  Yes, sir.

14          THE COURT:  All right.

15          Mr. Woodard or Mr. Kolenich, is there anything

16   else that you think we need to address today?

17          MR. KOLENICH:  No, sir.

18          MR. WOODARD:  I have just got a question, maybe a

19   dumb one.  So at the end of the -- at the end of the day,

20   the motions to dismiss are scheduled for, what, May 24th

21   or something like that?

22          THE COURT:  That's right.

23          MR. WOODARD:  That's my understanding.  I'm not

24   sure if that's correct.  Okay.

25          And so -- here is the only thing I would like to

say, is that the scope of discovery is absolutely huge.
And I think it is burdensome on all of the defendants to
have to start ponying all of that stuff up, only to have
-- you know, only to be let out of the case on a motion to
dismiss.  That's -- that's my only -- but it sounds like,
to me, that the motions -- if the motions to stay are
granted, then that's precisely what is going to happen.
Am I wrong on that?

        THE COURT:  Well, the -- I mean, Mr. Peinovich's
motion is essentially that, that, you know, there's a
pending motion to dismiss and so discovery shouldn't
proceed.  But if I deny those motions, then discovery is
proceeding.  And, if not, it is not on (inaudible) there's
a motion to stay.  But I will try and address those
motions to stay shortly.

        MR. WOODARD:  Okay.  I just wanted to make sure I
was clear.

        THE COURT:  All right.

        Mr. Kolenich, is there anything else that you
wanted to -- that you think we needed to cover today?

        MR. KOLENICH:  No, sir, Your Honor.  The -- you
guys just mentioned a May hearing on that motion to
dismiss.  Is that accurate or is that -- I had it as June
12th.

        THE COURT:  No, I have May.

```
 1              UNIDENTIFIED VOICE:  (Inaudible.)

 2              THE COURT:  Yeah, the docket in this case says

 3   May 24th, at I think 10:00 a.m., in front of Judge Moon,

 4   for the motions to dismiss.

 5              MR. KOLENICH:  Thank you, Your Honor.

 6              THE COURT:  All right.  Mr. Campbell, is there

 7   anything else that you think we need to address today?

 8              MR. CAMPBELL:  No, sir.

 9              THE COURT:  All right.  Mr. Jones?

10              MR. JONES:  No, sir.

11              THE COURT:  And Mr. Spencer?

12              MR. SPENCER:  No, sir.

13              THE COURT:  And Mr. Peinovich?

14              MR. PEINOVICH:  No, Your Honor.

15              THE COURT:  All right.  Well, I will hold off on

16   entering a scheduling order until we do get a trial date

17   scheduled.  And that will be closer to the time of the

18   hearing on the motion to dismiss.  And -- but we will be

19   in touch with you-all to schedule a status conference,

20   perhaps for after that hearing, to just check in on how

21   the case is proceeding.

22              All right.  I want to thank everyone for calling

23   in and for participating productively today in this

24   hearing.

25              Thank you very much.  And have a good day.
```

1          UNIDENTIFIED VOICE:  Thank you, Your Honor.

2          MR. WOODARD:  Thank you, Judge.  Have a good

3  weekend.

4          MS. KAPLAN:  Thank you, Your Honor.

5      (Thereupon, these proceedings were adjourned at

6  3:10 p.m.)

7

8

9

10          I certify that the foregoing is a correct

11  transcript from the record of proceedings in the above-

12  entitled matter.

13
        ___/s/ Carol Jacobs White___          ___March 20, 2018___
14              Court Reporter                          Date

15

16

17

18

19

20

21

22

23

24

25