UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ELIZABETH SINES, ET AL.,          Case No. 3:17-cv-00072-NKM │

Plaintiffs,          │ Hon. Norman K. Moon
│ v. │

JASON KESSLER, ET AL.,

Defendants. │

### DEFENDANT MICHAEL PEINOVICH'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION TO RESTRAIN ROBERTA KAPLAN, ESQ. AND KAPLAN AND COMPANY LLP FROM FURTHER IMPROPER AND UNETHICAL EXTRAJUDICIAL STATEMENTS AND FOR SANCTIONS

Defendant Michael Peinovich, Pro Se, respectfully submits this reply memorandum in further support of his motion to restrain Roberta Kaplan, Esq., and Kaplan and Company LLP from further improper and unethical extrajudicial statements and for sanctions.

### ARGUMENT

Ms. Kaplan has adopted a two step approach in her opposition memorandum: 1) ignore some and sugarcoat others among the many inflammatory and manifestly prejudicial extrajudicial statements she has made in the publicity war she has launched against Peinovich and the other defendants, and 2) water down the ethical standards to which she is subject so that they are virtually meaningless. Neither step survives critical examination.

**1. Ms. Kaplan Outrageously Links Peinovich and the Other Defendants to Nikolas Cruz.**

Nowhere in Ms. Kaplan's 20-page opposition memorandum does she try to defend, or even mention, her Tweets linking Peinovich and the other defendants to Nikolas Cruz. She does

1

not try to defend those tweets because they are indefensible. Nikolas Cruz is the troubled young man who is accused of murdering 14 schoolchildren and three school employees and wounding 17 others in Parkland, Florida, on February 14, 2018. He has become a symbol for and embodiment of irrational and murderous hate to everyone who reads the news across the country, and is the centerpiece of the debate now raging over gun control.

There is zero evidence linking Cruz to Peinovich or the other defendants. It is outrageous and unethical for Ms. Kaplan to have broadcast such a nonexistent link via her tweets. Even if such evidence existed, Ms. Kaplan should not have broadcast such alleged evidence, especially in light of its inflammatory nature. See Rule 3.6 of the New York Rules of Professional Conduct:

> A statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury . . . and the statement relates to: (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness or the expected testimony of a party or witness . . . (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial.

Circulating tweets linking your opposing parties in a jury trial to an accused mass murderer of school children is highly unethical, prejudicial, and indefensible conduct, and Ms. Kaplan should be sanctioned for doing so by dismissal of plaintiffs' complaint. Her actions have poisoned the public's views about Peinovich and the other defendants in ways that are impossible to ameliorate. Attempting to void dire prospective jurors with questions even mentioning Nikolas Cruz would only further harm the defendants and deprive them of a fair trial.

2.  **Ms. Kaplan Improperly Links Peinovich and the Other Defendants to an Unknown Internet Poster that Uses the Name "American Identitarian Party."**

2

Ms. Kaplan has devoted a considerable portion of her Twitter publicity campaign and also her opposition memorandum to linking Peinovich and the other defendants to an Internet poster who identifies himself or herself as the "American Identitarian Party." Peinovich has stated before and affirms again that he did not make those posts, does not even know who the person or persons who made the posts is or are, had never previously heard of the "American Identitarian Party," and does not know anyone who knows anything about that alleged entity or the person or persons behind it. As everyone knows, posting on the Internet using a fake name is easy. The Internet is the Wild West of trolls, shills, and anonymous and falsely identified posters, and such persons often do their damage by pretending to be the opposite of what they are – e.g., pretending to be an "Alt- Right" sympathizer when in reality the poster's aim is to harm an "Alt-Right" person or entity by making them look violent, offensive, or ridiculous.

Ms. Kaplan has never, in her opposition memorandum or during her Twitter campaign, brought forth concrete evidence that the "American Identitarian Party" even exists, much less that it is actually one of the defendants or affiliated with one. For all that appears, the "American Identitarian Party" postings could have been made by AntiFa or other persons sympathetic to the plaintiffs in this case.[1] Given the huge and obvious uncertainty regarding the true identities of the authors of the "American Identitarian Party" posts, it was reckless, inappropriate, unethical, and damaging for Ms. Kaplan to include in her publicity campaign assertions that Peinovich or the other defendants were the authors of or otherwise responsible for the posts.

---

[1] See, e.g., *A black man goes undercover in the alt-right* https://www.ted.com/talks/theo_e_j_wilson_a_black_man_goes_undercover_in_the_alt_right;
*Undercover with the alt-right* https://www.nytimes.com/2017/09/19/opinion/alt-right-white-supremacy-undercover.html

3
Case 3:17-cv-00072-NKM-JCH   Document 283   Filed 03/21/18   Page 3 of 10   Pageid#: 2005

### 3. Ms. Kaplan Has Improperly and Unethically Invoked Religious Authority to Direct and Justify Violence Against Peinovich and the Other Defendants.

Ms. Kaplan in her opposition memorandum attempts to soft-pedal her prior vehement and repeated characterization of the defendants as "Hamans" and her invocation of the Jewish holiday of Purim in a call to dispense justice to these "Hamans." But to those who celebrate Purim and also those who, though non-observant, know the story and tradition of Purim, Ms. Kaplan's message comes through loud and clear: Peinovich and the other defendants are as evil as Haman and deserve his fate: a violent death.

As the Court may be aware, Haman is described in the Hebrew Bible as evil person and a tribal enemy of the Jews. The following is from a Wikipedia article on Haman https://en.wikipedia.org/wiki/Haman (citations omitted):

> [Haman] instigates a plot to kill all of the Jews of ancient Persia. . . The plot is foiled by Queen Esther, the king's recent wife, who is herself a Jew. Haman is hanged from the gallows that had originally been built, on the advice of his wife Zeresh, to hang Mordecai. The dead bodies of his ten sons . . . . are also hanged after they die in battle trying to kill the Jews (Esther 9:5-14).
>
> \* \* \* \* \*
>
> In Rabbinical tradition, Haman is considered to be an archetype of evil and persecutor of the Jews.
>
> \* \* \* \* \*
>
> The Jewish holiday of Purim commemorates the story of the deliverance of the Jews and the defeat of Haman. On that day, the Book of Esther is read publicly and much noise and tumult is raised at every mention of Haman′s name. A special noisemaker called in Hebrew a ra'ashan (רעשן) (in Yiddish: "grogger" or "hamandreyir") is used to express disdain for Haman.

In accordance with this history, Ms. Kaplan, by characterizing the defendants as "Hamans" and invoking Purim, has been urging those to whom her tweets and their retweets were directed to regard the defendants as enemies of Jews and archetypes of evil who deserve to

be killed. While it may be unlikely that many in her direct and extended audience would actually condone homicide, nonetheless her characterizations carry an emotive impact; moreover, it is reasonable to assume that there are Antifa in her audience for whom even a little encouragement to violence is like a lit match on dry leaves.[2] Kaplan complains that defendants Peinovich and Kessler have made statements calling attention to her apparent religious and ethnic hatred towards them as a motivation for bringing this suit. Yet by characterizing defendants as "Hamans" Kaplan links them to an ancient tribal and religious enemy of the Jewish people, thus showing these statements to be *prima facie* true. While Ms. Kaplan has repeatedly made clear her hostility to the defendants, she needs to restrain her animosity within ethical bounds. It is disgraceful that an attorney would encourage violence against her adversaries, and even more disgraceful that she invokes religious authority in doing so.

4.   **Ms. Kaplan Improperly Attributes Every Defendants' Alleged Actions to Every Other Defendant.**

Ms. Kaplan in her opposition memorandum describes a number of offensive Internet posts she attributes to the "defendants" that, she asserts, justified her actions in linking the defendants to Nikolas Cruz and describing the defendants as "Hamans," among other actions. Here again, as plaintiffs have in their complaint, Ms. Kaplan feels at liberty to indiscriminately attribute every defendant's alleged action to every other defendant. When her memorandum` descends to specifics, however, she describes only three statements by Peinovich. One, that Ms.

---

[2] For Antifa's propensity for violence see e.g., *How Antifa Broke The Alt-Right* – "You may not approve of the violence of Antifa, but it does serve a purpose." https://thedailybanter.com/2018/03/how-antifa-broke-the-alt-right/;
*Why We Fought in Charlottesville: A Letter on the Dangers Ahead* – "The antifa strategically incited enough violence before noon to make the police declare it illegal to gather in Emancipation Park" https://itsgoingdown.org/fought-charlottesville-letter-dangers-ahead/

Kaplan is a "very wealthy and powerful Jewish lesbian," is simply objective truth and how Ms. Kaplan describes herself, except perhaps for the "wealthy" attribute – and "wealthy" is not disparaging even if untrue. Peinovich's comments critical of Kaplan's ethnic and religious biases may seem abrasive to some, but they are mild in comparison to Kaplan's bloodcurdling statements linking defendants to an alleged mass murderer of children, calling defendants terrorists, calling defendants "Hamans" and urging violence against them. It also bears mention that the comments Ms. Kaplan's memorandum attributes to Peinovich occurred on February 14, 2018, which is after Ms. Kaplan had begun her publicity campaign (e.g., February 9, 2018 Makers conference; February 12, 2018 interview in New York Times) against Peinovich and the other defendants. Peinovich had in fact refrained from significant public comment on the case until he was made aware of the media offensive Kaplan was engaged in.

Ms. Kaplan also asserts in her memorandum that she has received "a steady barrage of threats and hateful messages since filing this lawsuit." Peinovich has never sent Ms. Kaplan any such messages and does not condone them. But, as a matter of fact, Peinovich and Spencer have themselves received a steady barrage of threats – including death threats – and hateful messages for years, before and after the filing of this lawsuit. And those threats have credibility, given

Antifa's recognized propensity for violence.[3] Moreover, any actually offensive messages cited by Kaplan in her reply come from unknown individuals that are not parties to this case.

5. **Ms. Kaplan Ignores the Fundamental Fact that, as an Attorney, She Is Subject to Norms of Conduct that Do Not Apply to Laypersons.**

Ms. Kaplan's opposition memorandum puts forward the thesis that her publicity war is justified by offensive postings made, or allegedly made, by the "defendants." But there is no equivalence. The defendants she cites are laypersons; Ms. Kaplan is an attorney. Attorneys are subject to high ethical standards unique to themselves. Even if, for example, Mr. Kessler and Mr. Azzmador made the allegedly offensive tweets Ms. Kaplan cites, this would not justify Ms. Kaplan in engaging in a wide-ranging Twitter, speechmaking, and media interview publicity campaign whose natural result, in violation or Rule of Professional conduct 3.6, has been to taint the general public's perceptions of the defendants.

6. **Peinovich Is Not Seeking a "Sweeping Gag Order" that Limits Ms. Kaplan's First Amendment Rights, as She Claims.**

Ms. Kaplan's protestations in her opposition that Peinovich is seeking a "sweeping gag order" that violates her First Amendment rights is ironic in light of her avowed purpose of using this litigation to demonstrate to the defendants and others that the defendants' messages – which, while offensive to many are well within the core protections of the First Amendment – are

---

[3] For violence and threats directed at defendants see, e.g., Spencer being punched in face while peacefully expressing his views: https://www.youtube.com/watch?v=9rh1dhur4aI;
*Neo-Nazi Richard Spencer Got Punched—You Can Thank the Black Bloc* – "If that sounds to you like a precondition for mob violence, you're right. But this is only a problem if you think there are no righteous mobs, or that windows feel pain, or that counter-violence (like punching Richard Spencer) is never valid" https://www.thenation.com/article/if-you-appreciated-seeing-neo-nazi-richard-spencer-get-punched-thank-the-black-bloc/;
Masked Antifa attacking Matthew Heimbach with spiked brass knuckles: http://idavox.com/index.php/2018/03/06/richard-routed-antifa-ensures-low-attendance-for-dick-spencer-in-michigan-brawls-and-arrests-outside/

"unacceptable." In any event, Peinovich is not seeking a sweeping gag order and the remedies he requests do not contravene First Amendment doctrine.

The issue of drawing the line between permissible and impermissible trial publicity has been addressed frequently by courts and by legal authorities who prepare rules of professional ethics. Much of that accumulated thought and wisdom has been developed in the context of Rule 3.6. In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Supreme Court upheld the "substantial likelihood of material prejudice" standard now incorporated into Rule 3.6 as a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials. The Court held that lawyers' extrajudicial statements pose a threat to a pending proceeding's fairness, since lawyers have special access to information through discovery and client communication and their statements are likely to be received as especially authoritative. The "substantial likelihood of material prejudice" standard, designed to protect the integrity and fairness of a State's judicial system, is aimed at comments that are likely to influence a trial's outcome or prejudice the jury venire, even if an untainted panel is ultimately found. The Court noted that few interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors. 501 U.S. at 1075-76. In *In re Morissey*, 168 F.3d 134 (4th Cir. 1999), the Fourth Circuit upheld the constitutionality of an even less protective "reasonable likelihood" standard, albeit in a criminal case.

The "substantial likelihood of material prejudice" standard has been fleshed out in many versions of Rule 3.6, including the American Bar Association and New York versions. Certain fact situations have been crystalized as safe harbors – clearly not prejudicial – or, on the other hand, as presumptively prejudicial. If Ms. Kaplan in this case had stayed within

8

the safe harbors – e.g., stating (1) the claim, offense or defense and the identity of the persons involved; (2) information contained in a public record; (3) that an investigation of a matter is in progress; or (4) the scheduling or result of any step in litigation – Peinovich would never have filed his present motion. But Ms. Kaplan has strayed far beyond these safe harbors and into areas that are presumptively prejudicial – e.g., the character, credibility, and reputation of a party or witness and the expected testimony of a party or witness; and information she knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial. There are no First Amendment obstacles to corrective remedies for acts of this character.

As explained in Peinovich's initial memorandum, the appropriate remedy in this case is dismissal of plaintiffs' complaint. Ms. Kaplan's improper and inflammatory publicity campaign has gone on for over a month, with nationwide impact. It is not realistically possilbe at this point to undo the harm from Ms. Kaplan's linking defendants to a mass murderer; characterizing defendants as "Hamans" and invoking impassioned religious sentiment against them; linking defendants to offensive tweets by unknown persons or entities; having one of the plaintiffs comment on the evidence she will present; repeatedly grouping all defendants together in public announcements; and Ms. Kaplan's many other prejudicial extrajudicial statements. If, however, the Court does not find that dismissal is appropriate, at a minimum Ms. Kaplan should be instructed to limit any additional extrajudicial statements in accordance with the standards articulated in Rule 3.6 of the New York Rules of Professional Conduct or a similar standard.

## CONCLUSION

For the reasons stated, Peinovich respectfully requests that plaintiffs' amended complaint be dismissed as an appropriate sanction for Ms. Kaplan's numerous, unethical, and prejudicial extrajudicial statements in this jury trial case. In the alternative, Ms. Kaplan should be instructed to cease her publicity campaign against the defendants.

Dated: March 21, 2018.

Respectfully submitted,

Michael Peinovich, Pro Se

## CERTIFICATE OF SERVICE

On this 21st day of March, 2018, I Michael Peinovich certify that I served electronically or mailed copies of this reply memorandum to:

Christopher Greene <cgreene@kaplanandcompany.com>,
David Campbell <DCampbell@dhgclaw.com>,
Elmer Woodard <isuecrooks@comcast.net>,
James Kolenich <jek318@gmail.com>,
Bryan Jones <bryan@bjoneslegal.com>,
Roberta Kaplan <rkaplan@kaplanandcompany.com>,
Julie Fink <jfink@kaplanandcompany.com>,
Gabrielle Tenzer <gtenzer@kaplanandcompany.com>,
Alan Levince <alevine@cooley.com>,
Karen Dunn <KDunn@bsfllp.com>,
Philip Bowman <pbowman@bsfllp.com> ,
Richard Spencer <richardbspencer@gmail.com>

Michael Peinovich