UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, ET AL., | Case No. 3:17-cv-00072-NKM |
| Plaintiffs, | Hon. Norman K. Moon |
| v. | |
| JASON KESSLER, ET AL., | |
| Defendants. | |

DEFENDANT MICHAEL PEINOVICH'S OBJECTIONS
TO MAGISTRATE JUDGE'S MARCH 22, 2018 ORDER

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Michael Peinovich respectfully submits the following objections to certain portions of Magistrate Judge Hoppe's order issued on March 22, 2018 denying Peinovich's motion to restrain Roberta Kaplan, Esq. and Kaplan and Company LLP from improper and unethical extrajudicial statements and for sanctions.

**Summary of Peinovich's Motion, Ms. Kaplan's
Opposition, Peinovich's Reply, and Magistrate's Ruling**

Peinovich filed his initial motion on March 10, 2018. ECF 258. Ms. Kaplan filed her opposition memorandum on March 14, 2018. ECF 273. Peinovich timely filed (electronically) his reply memorandum in further support late on the evening of March 21, 2018. ECF 283. The next morning, March 22, 2018, Magistrate Hoppe denied Peinovich's motion. ECF 285.

**Peinovich's Initial Motion**. In his initial motion, Peinovich presented evidence, including Ms. Kaplan's tweets and excerpts from her speeches and interviews, showing that Ms.

1

Kaplan was aggressively engaging in an extrajudicial pre-trial publicity campaign against Peinovich and the other defendants. As Peinovich showed, Ms. Kaplan's extrajudicial statements included:

- tweets falsely linking the defendants in this case, including Peinovich, to Nikolas Cruz, the suspected murderer of 17 schoolchildren;

- tweets stirring up religious animus against Peinovich and the other defendants by characterizing them as "modern day Hamans" who should be properly dealt with on the Jewish holiday of Purim (in Rabbinical tradition, Haman is considered an archetype of evil and persecutor of the Jews; he was hanged along with his ten sons);

- tweets linking Peinovich and the other defendants to offensive Internet posts by someone or some entity calling himself, herself, or itself the "American Identitarian Party," an entity or person with which Peinovich had no association whatever and that may have been a troll or a shill by someone hostile to the defendants;

- Ms. Kaplan's on-stage televised interviews before a large audience at a feminist MAKERS conference, in which the editor in chief of Huffington Post also participated and which was potentially shown to millions of viewers, and in which Ms. Kaplan not only spoke at length about this case but showcased one of the plaintiffs, Marissa Blair. Ms. Blair described her experiences in Charlottesville and stated that the defendants were not at Charlottesville to exercise their First Amendment rights (even though they obtained a permit to

march via an injunction issued by this Court) but to incite violence and scare people. Ms. Kaplan described Peinovich and the other defendants as "Nazis" who hate blacks, gays, Jews, and women, and analogized them to anti-abortion protestors who murder doctors.

In his discussion of legal authority, Peinovich cited, among other authority, the New York and American Bar Association versions of Rule of Professional Conduct 3.6, which places limits on the nature and extent of pretrial publicity attorneys can ethically create or engage in in jury trials. Peinovich acknowledged that Rule 3.6 of the Virginia Rules of Professional Conduct applies only to criminal trials, but explained, correctly he submits, that this Court has inherent authority to look to the New York (Ms. Kaplan is a member of the New York bar) or ABA rule for guidance in addressing whether Ms. Kaplan's pretrial publicity campaign should be sanctioned or restrained.

**Ms. Kaplan's Opposition Memorandum.** In her opposition memorandum, Ms. Kaplan sought to minimize the caustic and prejudicial nature of her tweets and other extrajudicial statements, made a "you do it too" argument citing primarily alleged statements by defendants (who are not attorneys) other than Peinovich (who is also not an attorney), and sought to dilute the ethical standards to which she was subject so that they became virtually meaningless. She did not even attempt to defend her tweets falsely linking Peinovich and the other defendants to Nikolas Cruz and presented no evidence that the "American Identitarian Party" was allied with or known to Peinovich, or even an actual entity.

**Peinovich's Reply Memorandum**. In his reply memorandum, Peinovich addressed all of Ms. Kaplan's arguments in her opposition, further substantiating in detail the blatantly

3

unethical and prejudicial nature of her tweets and other extrajudicial statements and refuting her contention that no legal authority supported the remedies that Peinovich sought.

**The Magistrate Judge's March 22, 2018 Order**.  The Magistrate Judge's three-page March 22, 2018 order consists essentially of a discussion of the Magistrate Judge's authority under a federal court's inherent power and also under Fed. R. Civ. P. 16(c)(2)(P), a rejection of Peinovich's request that plaintiffs' complaint be dismissed, a statement that "the Court is not persuaded that [Ms. Kaplan] contravened any applicable statute or rule," a statement that "'nothing presented thus far suggests' counsel's statements 'present a reasonable likelihood of tainting the jury pool,'" and a statement that "Ms. Kaplan's comments do not directly attribute of of the third-party statements, of which Mr. Peinovich objects, to the Defendants." Nowhere does the Magistrate's order mention Rule 3.6 or specifically address or even mention Ms. Kaplan's tweets and other extrajudicial statements linking the defendants to Nikolas Cruz, calling the defendants "modern day Hamans" on Purim, attributing offensive posts by unknown entities to the defendants, calling the defendants "Nazis" who hate women, or any of her other extrajudicial statements Peinovich substantiated in his initial motion and reply memorandum.

**Standard of Review**

Under Federal Rule of Civil Procedure 72(a), a party may serve and file objections to a magistrate's order within 14 days after being served with a copy. Rule 72(a) further states that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

**Grounds for Peinovich's Objections**

4

Peinovich does not object to the specific portion of the Magistrate's order rejecting Peinovich's request for dismissal of the complaint. He does, however, object to the Magistrate's conclusion that Ms. Kaplan's pretrial publicity campaign, as manifested in her tweets, interviews, and other extrajudicial statements, contravened no ethical rules or standards and was not prejudicial to Peinovich and the other defendants. The Magistrate's order effectively and improperly gives Ms. Kaplan carte blanche to continue her blatantly unethical actions.

The precise ground on which the Magistrate denied Peinovich's alternative request that Ms. Kaplan be instructed to cease further improper and unethical pretrial extrajudicial statements is not fully apparent from the Magistrate's order. There is perhaps some implication that Peinovich's alternative request was too vague to be enforced. In Peinovich's reply memorandum, however, he stated with particularity the remedy he was requesting, namely, that Ms. Kaplan be instructed to comply with the New York or ABA version of Ethical Rule 3.6 or a substantially similar standard:

> The "substantial likelihood of material prejudice" standard has been fleshed out in many versions of Rule 3.6, including the American Bar Association and New York versions. Certain fact situations have been crystalized as safe harbors – clearly not prejudicial – or, on the other hand, as presumptively prejudicial. If Ms. Kaplan in this case had stayed within the safe harbors – e.g., stating (1) the claim, offense or defense and the identity of the persons involved; (2) information contained in a public record; (3) that an investigation of a matter is in progress; or (4) the scheduling or result of any step in litigation – Peinovich would never have filed his present motion. But Ms. Kaplan has strayed far beyond these safe harbors and into areas that are presumptively prejudicial – e.g., the character, credibility, and reputation of a party or witness and the expected testimony of a party or witness; and information she knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial.

Peinovich Reply Memo. at 8.

The Magistrate's laconic order leaves uncertain whether the Magistrate was holding that 1) Rule 3.6, as articulated in the New York or ABA versions, or substantially similar standards, does not apply, or 2) assuming Rule 3.6 or a substantially similar ethical standard does apply, Peinovich failed to demonstrate Ms. Kaplan's contravention of it. Under either interpretation, the order is clearly erroneous.

It cannot be that this federal Court is powerless to restrain an attorney's pretrial publicity campaign simply because the Virginia ethical rules have limited Virginia's Rule 3.6 to criminal cases. It is within this Court's discretion under its inherent powers to adopt, not adopt, or modify the Virginia Rules. This Court has the authority – indeed the obligation – to protect the rights of Peinovich and the other defendants to a fair jury trial. In doing so it is appropriate that the Court draw guidance from the wisdom and experience embodied in the New York and ABA versions of Rule 3.6.

Ms. Kaplan's contravention of the New York and ABA Rule 3.6 is flagrant. She did far more than merely state "the claim, offense or defense and the identity of the persons involved . . . [and] information contained in a public record." No safe harbor protected her actions. She falsely linked Peinovich and the other defendants to Nikolas Cruz, the suspected murderer of 17 school children; characterized Peinovich and the other defendants as "modern day Hamans," i.e., as embodiments of evil under Rabbinical traditions; arranged for one of the plaintiffs to describe her version of the events in Charlottesville before a large audience, in a presentation that was then made available on a website accessible by millions of persons; described Peinovich and the other defendants as hateful Nazis in that same presentation; without any evidence, tied offensive posts by unknown persons to Peinovich and the other defendants; repeatedly attributed alleged

acts of any defendant to all the other defendants, including Peinovich, thus implicitly bolstering plaintiffs' conspiracy claims in their complaint;  and took many other actions aimed at turning the public, including the public in the Western District of Virginia, against Peinovich and the other defendants.  Ms. Kaplan's tweet linking defendants to Nikolas Cruz is so indefensible Ms. Kaplan did not even try to defend it in her opposition memorandum and the Magistrate Judge did not even mention it in his order.  Peinovich carefully and fully substantiated all of Ms. Kaplan's pretrial publicity actions in his motion and reply memorandum.  On no fair and reasonable interpretation of Rule 3.6 or a similar ethical standard should Ms. Kaplan's actions be condoned, as the Magistrate's order has done.

The Magistrate's statement that statement that "'nothing presented thus far suggests' counsel's statements 'present a reasonable likelihood of tainting the jury pool'" unfairly places a virtually impossible burden on Peinovich and the other defendants.  Ms. Kaplan has a large following for her tweets, and her tweets are undoubtedly retweeted.  Peinovich cannot know whether some of these tweets and retweets reach persons in Virginia.  He also cannot know whether some of the potentially millions of persons who observed, in person or online, Ms. Kaplan's attack on Peinovich at the MAKERS conference are from Virginia or have influence on persons in Virginia.  Further, Ms. Kaplan has given interviews in the New York Times attacking Peinovich and the other defendants, and the New York Times obviously reaches persons in Virginia.  The appropriate approach to this issue is to ask whether Ms. Kaplan's pretrial publicity campaign raises significant risks of prejudicing Peinovich and the other defendants.  This is surely the case, given the inflammatory nature of her actions, the nature of the media she has chosen to use, and the issues involved.

## CONCLUSION

For the reasons stated, Peinovich respectfully requests that the Magistrate's March 22, 2018 order be reversed and that Ms. Kaplan be instructed to cease her unethical and prejudicial extrajudicial statements, as manifested by her actions described in Peinovich's initial motion and reply memorandum.

Dated: April 5, 2018.

Respectfully submitted,

Michael Peinovich, Pro Se

## CERTIFICATE OF SERVICE

On this 5th day of April, 2018, I Michael Peinovich certify that I served electronically or mailed copies of this reply memorandum to:

Christopher Greene <cgreene@kaplanandcompany.com>,
David Campbell <DCampbell@dhgclaw.com>,
Elmer Woodard <isuecrooks@comcast.net>,
James Kolenich <jek318@gmail.com>,
Bryan Jones <bryan@bjoneslegal.com>,
Roberta Kaplan <rkaplan@kaplanandcompany.com>,
Julie Fink <jfink@kaplanandcompany.com>,
Gabrielle Tenzer <gtenzer@kaplanandcompany.com>,
Alan Levince <alevine@cooley.com>,
Karen Dunn <KDunn@bsfllp.com>,
Philip Bowman <pbowman@bsfllp.com> ,
Richard Spencer <richardbspencer@gmail.com>

_____

Michael Peinovich