UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>       Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>       Defendants. | **Civil Action No. 3:17-cv-00072-NKM** |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT MICHAEL PEINOVICH'S OBJECTIONS TO MAGISTRATE JUDGE'S APRIL 20, 2018 ORDER**

1

Plaintiffs submit this Memorandum in Response to Defendant Michael Peinovich's Objections to Magistrate Judge Hoppe's April 20, 2018 Order (ECF No. 309, "Objs.") denying Peinovich's Motion to Quash Subpoenas to Twitter, GoDaddy, CloudFlare, and Hatreon (ECF No. 226, "Motion to Quash") and Motion to Require Plaintiffs' Full Compliance with Fed. R. Civ. P. 45(a)(4) and (b)(4) (ECF No. 229, "Rule 45 Motion").[1] For the reasons below, Plaintiffs respectfully request that the Court deny Peinovich's objections.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). For non-dispositive matters, such as this one, "the district court will modify or set aside the magistrate judge's order only if it 'is clearly erroneous or is contrary to law.'" *Wyatt v. Owens*, No. 7:14-Civ-492, 2016 WL 6651410, at *1 (W.D. Va. Nov. 10, 2016) (Moon, J.) (quoting Fed. R. Civ. P. 72(a)). "A ruling is 'clearly erroneous' only when the totality of the record leaves the Court with 'the definite and firm conviction that a mistake has been committed.' It is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* at *2 (citations omitted). "The leading treatise on federal practice and procedure describes altering a magistrate's nondispositive orders as 'extremely difficult to justify.'" *Id.* (quoting 12 Wright & Miller, *Federal Practice and Procedure* § 3069 (2d ed. 1997)).

---

[1] On February 14, 2018, Peinovich filed a motion to quash Plaintiffs' subpoenas to third parties Twitter, Inc., GoDaddy.com, LLC, Cloudflare, Inc., and Hatreon. ECF No. 226. On February 20, 2018, Peinovich filed a motion to compel Plaintiffs' compliance with Rule 45. ECF No. 229. On February 28, 2018, Plaintiffs responded to those two motions. ECF No. 249 ("Opp."). On March 7, 2018, Peinovich filed a reply in support of his motions. ECF No. 255 ("Reply"). On April 20, 2018, Judge Hoppe denied both motions. ECF No. 304 ("Order").

**ARGUMENT**

Plaintiffs' subpoenas to Twitter, Inc., GoDaddy.com, LLC, Cloudflare, LLC, and Hatreon (the "Subpoenas") were designed to gather evidence relating to Defendants' and their coconspirators' coordination of and planning for the Unite the Right rally and other events underlying this action.  *See* Opp. 2-4 (summarizing Subpoenas).  As Judge Hoppe explained, the Subpoenas "are limited in scope to particular topics, persons, and entities related to the alleged events underlying this lawsuit and seek documents or ESI covering a relatively short period."  Order 6.  For example, Plaintiffs requested that GoDaddy and Cloudflare, both Internet services companies, produce nonpublic content about certain websites—the Daily Stormer, AltRight.com, and the Right Stuff—that Defendants and their coconspirators had used to plan violence and organize logistics for the rally.  *Compare* First Amended Complaint ("FAC"), ECF No. 175, ¶¶ 25, 87, 96, 129 *with* Mot. to Quash Ex. B (GoDaddy Subpoena) at Requests ("Reqs.") 2, 3; Mot. to Quash Ex. C (Cloudflare Subpoena) at Reqs. 2-4.  Plaintiffs also requested that Hatreon, a crowdfunding site used by Defendants in connection with the conspiracy, produce information about transactions relating to the rally.  *Compare* FAC ¶ 309 *with* Mot. to Quash Ex. D (Hatreon Subpoena) at Reqs. 1-3.  Plaintiffs further requested that Twitter, on which Defendants and coconspirators had disseminated information about the rally and communicated instructions during the rally, produce nonpublic communications among Defendants and coconspirators.  *Compare* FAC ¶ 80 *with* Mot. to Quash Ex. A (Twitter Subpoena) at Reqs. 1, 2, 5-8.

Judge Hoppe denied Peinovich's Motion to Quash the Subpoenas.  Judge Hoppe first interpreted the Motion to Quash as a motion for a protective order under Rule 26.  Order 2-3.  Judge Hoppe agreed with Peinovich that he "claims some personal right in the information held by [the subpoenaed] companies" and thus had standing to move to quash the Subpoenas.  *Id.* at

3-4. However, the motion failed because Judge Hoppe found that Peinovich could not demonstrate that he would suffer "annoyance, embarrassment, oppression, or undue burden," as required under Rule 26. *Id.* at 5. "First, Peinovich 'cannot claim any hardship, let alone undue hardship' because he has 'no obligation to produce any information under the subpoenas issued' to Twitter, GoDaddy.com, Cloudflare, and Hatreon." *Id.* at 6 (citation omitted). Peinovich claimed that he would suffer a "risk of harm to [his] reputation or online business" from the Subpoenas, but that argument was "too speculative" to support quashing the Subpoenas. *Id.* Second, although Judge Hoppe acknowledged that the "undue burden category 'encompasses situations where the subpoena seeks information irrelevant to the case,'" Peinovich "failed to show that any of the subpoenas are overbroad or irrelevant.[2] On the contrary, Plaintiffs' Subpoenas are limited in scope to particular topics, persons, and entities related to the alleged events underlying this lawsuit and seek documents or ESI covering a relatively short period." *Id.* (citations omitted).

In his Objections, Peinovich makes little attempt to respond to the rationales underlying Judge Hoppe's order. Rather, Peinovich argues that a "First Amendment associational privilege" requires that the Court quash the Subpoenas. Objs. 8. Peinovich argues that followers of his podcasts will be subject to "malicious [doxing][3] and cyber vigilantism" resulting from the Subpoenas, and that the Subpoenas will thus "infringe on the protected associational right." *Id.*

---

[2] Notably, Peinovich's subpoena to Enom, Inc., a domain name registrar and Web hosting company, seeks discovery regarding all "persons, including entities, that have presently registered or ever in the past registered" two website domains—exactly the sort of information to which he objected in his Motion to Quash, but directed to domains that have nothing to do with the conspiracy at the heart of the Amended Complaint. *See* Ex. A at Request No. 1.

[3] "Doxing" is an Internet practice in which someone's private personal information is published in an effort to punish or shame the target.

4

at 3, 8, 10. Although the issue of "doxing" was before Judge Hoppe (who rejected Peinovich's concern as "too speculative"), Order 5, this "associational privilege" was mentioned nowhere in Peinovich's briefing on his Motion to Quash or Rule 45 Motion, which argued instead that the potential for doxing posed an "undue burden" due to "[h]arm to Peinovich's vocation and business'" and "disclosure to plaintiffs of information having no legitimate bearing on this case." Reply 5.

Peinovich appears to argue that, simply because he has invoked the First Amendment, the Court should apply a *de novo* standard of review for his Objections. *See* Objs. 8. But the cases that he cites do not support that broad proposition and are distinguishable. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (discussing appellate standard of review for trial court's findings of fact involving "actual malice" under Rule 52, not standard of review for magistrate judge's ruling of nondispositive motions under Rule 72); *Kriss v. Bayrock Grp., LLC*, No. 10 CIV. 3959 LGSFM, 2015 WL 1305772, at *1 (S.D.N.Y. Mar. 23, 2015) (applying *de novo* standard because magistrate report "recommends exercising the Court's inherent powers to sanction Plaintiffs in a manner that may prove dispositive," not because First Amendment issues were raised); *Clyburn v. News World Commc'ns, Inc.*, No. CIV. A. 86-1149, 1988 WL 489658, at *3 (D.D.C. Apr. 14, 1988) (applying *de novo* standard to issue of whether journalist could be compelled to disclose confidential sources to grand jury conducting criminal investigation).

Here, the typical legal standard applies: "the district court will modify or set aside the magistrate judge's order only if it 'is clearly erroneous or is contrary to law.'" *Wyatt*, 2016 WL 6651410, at *1. Judge Hoppe's Order, finding that the Subpoenas did not pose an undue burden on Peinovich and did not seek irrelevant information, was neither. Peinovich's Objections

provide no new arguments on those points, but simply repeat his assertion that he will lose listeners and supporters out of their fear of being "doxed," *i.e.*, having their personal identifying information revealed. *See* Objs. 11 (quoting his reply brief). This was exactly the argument that Judge Hoppe rejected in finding that the "alleged risk of harm to Peinovich's reputation or online business" was "too speculative to show good cause why the Court should quash any of the subpoenas." Order 6.

Peinovich claims that he has recently continued "to receive anxious communications from listeners concerned about being doxed as a result of the subpoenas and has lost regular listeners as a result of these concerns." Objs. 12. That does nothing to fix the fundamentally speculative nature of his argument: Peinovich provides no concrete evidence that such fears are well-founded or that he will lose business sufficient to satisfy the "high hurdle" to resist discovery. *See* Order 6 (quoting *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)). Peinovich also provides no evidence of any connection between Plaintiffs and doxing practices, beyond simply stating in conclusory fashion that counterprotestors responsible for doxing are "indisputably allied with the plaintiffs." Objs. 11. Furthermore, as Plaintiffs pointed out before Judge Hoppe, Peinovich's concern over disclosure "could be addressed by the confidentiality order in place in this litigation, which places restrictions on the public disclosure of confidential information." Opp. 7. Peinovich did not present to Judge Hoppe, and does not present now, any reason to doubt the effectiveness of the confidentiality order in place.

Because the relevant question is whether Judge Hoppe's order was "clearly erroneous or contrary to law," the Court should disregard Peinovich's new arguments concerning a First Amendment associational privilege, which were not raised before Judge Hoppe. *See Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991) ("Review

6

of a Magistrate's ruling before the District Court does not permit consideration of issues not raised before the Magistrate. . . . This rule is based upon the same concept which prevents parties from arguing in the appellate courts issues and arguments not raised below.") (citation omitted); *accord Baird v. CCDC/CCSCC*, No. CIV.A. 2:08-00044, 2008 WL 4999252, at *2 (S.D.W. Va. Nov. 20, 2008). However, even if the Court could properly consider those arguments *de novo*, they would fail because the Subpoenas do not implicate any associational right.

The Subpoenas seek information, *inter alia*, regarding individuals who updated and accessed the Daily Stormer, AltRight.com, and Right Stuff websites, in order to establish the details of coordination among Defendants and coconspirators who used these websites to plan violence and coordinate the Unite the Right rally. *See* Opp. 2-3. The Subpoenas are not directed at associations or groups, as in the cases cited by Peinovich, and they do not seek "identities of rank and file members," "mailing lists and lists of conference attendees," "contributor lists," "past political activities," "internal policy or campaign communications," or "membership lists." *See* Objs. 9 (quoting cases).[4] Thus, the associational privilege doctrine is inapposite. *See, e.g.*, *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003) (denying motion for protective order where requested discovery was "limited and for a specific purpose other than

---

[4] *See, e.g.*, *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 88 (1982) (holding that Ohio could not compel disclosures of names and addresses by political party); *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 454, 462-63 (1958) (overturning Alabama order to NAACP to produce its membership lists); *Pulte Home Corp. v. Montgomery Cty. Md.*, No. GJH-14-3955, 2017 WL 1104670, at *14 (D. Md. Mar. 24, 2017) (granting motion to quash subpoenas issued to organizations such as the Audubon Naturalist Society and the Sierra Club); *Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 WL 4750931, at *1-2 (D. Mass. Aug. 10, 2015) (allowing LGBT-rights organization to redact personal information in document productions); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 1, 4 (D.D.C. 2002) (granting motion for protective order where government sought, *inter alia*, "[c]ontributor lists" and "[l]ists of political activities or causes" from pacifist organization).

inquiry into the [group's] associational activities. It is not a general fishing expedition," and where the group's "claim that enforcement of the discovery order could likely cause current members to withdraw is conclusory") (citation omitted), *aff'd*, No. 1:00CV1262, 2012 WL 1565228 (M.D.N.C. Apr. 30, 2012); *In re Grand Jury Subpoena Served Upon Crown Video Unlimited, Inc.*, 630 F. Supp. 614, 619 (E.D.N.C. 1986) (denying motions to quash subpoenas where "[t]here has been no showing that any of the subpoenaed corporations, in tandem with their respective clients, have advocated political, economic, religious or cultural beliefs through their commercial relationship").[5]

Finally, Judge Hoppe also rejected Peinovich's Rule 45 Motion because "Plaintiffs complied with their obligations under Rule 45(a)(4) by serving 'a notice and a copy of the subpoena' on Defendant Peinovich." Order 6-7. Peinovich objects to Judge Hoppe's ruling on the basis that, having not received a proof of service on the relevant third parties, "Peinovich cannot know with certainty where, when, and from which court plaintiffs filed their subpoena." Objs. 14. But as Judge Hoppe recognized in rejecting exactly that argument, "Rule 45(b)(4) requires proof of service only 'when necessary,' such as to support a motion to compel compliance with a subpoena or to hold a nonparty in contempt of court." Order 7. Peinovich's Objections add nothing to controvert Judge Hoppe's ruling that "Peinovich 'has shown no need for proof of service' in this case." *Id.* (citation omitted).

---

[5] Even if the Court did find that the Subpoenas implicated some associational right, "the answer is not to suppress such evidence, but rather to exercise judicial discretion by providing protection short of suppression." *Duke Energy Corp.*, 218 F.R.D. at 473 ("[T]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights.").

## CONCLUSION

For the foregoing reasons, Defendant Peinovich's objections to Magistrate Judge Hoppe's April 20, 2018 order should be denied.

Dated:  May 18, 2018

Respectfully submitted,

*/s/ Philip M. Bowman*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
Seguin L. Strohmeier (*pro hac vice*)
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com
gtenzer@kaplanandcompany.com
cgreene@kaplanandcompany.com
sstrohmeier@kaplanandcompany.com

Philip M. Bowman (*pro hac vice*)
Joshua J. Libling (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
jlibling@bsfllp.com
ybarkai@bsfllp.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Alan Levine (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jeff Schoep, Nationalist Front, National Socialist Movement, Matthew Parrott, Matthew Heimbach, Robert Ray, Traditionalist Worker Party, Elliot Kline, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

Michael Peinovich
a/k/a Michael "Enoch" Peinovich
PO Box 1069
Hopewell Junction, NY 12533

*Pro Se Defendant*

1

I further hereby certify that on May 18, 2018, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
P.O. Box 54
Pelham, NC 27311

Richard Spencer
1001-A King Street
Alexandria, VA 22314

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

*/s/ Philip M. Bowman*
Philip M. Bowman (*pro hac vice*)
Joshua J. Libling (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
jlibling@bsfllp.com
ybarkai@bsfllp.com

*Counsel for Plaintiffs*