UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

ELIZABETH SINES, ET AL.,                        Case No. 3:17-cv-00072-NKM

Plaintiffs,                                     Hon. Norman K. Moon

v.

JASON KESSLER, ET AL.,

Defendants.

### DEFENDANT MICHAEL PEINOVICH'S REPLY
### MEMORANDUM IN FURTHER SUPPORT OF HIS OBJECTIONS
### TO MAGISTRATE JUDGE'S APRIL 20, 2018 ORDER

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure, defendant Michael Peinovich respectfully submits this reply memorandum in further support of his objections to Magistrate Judge Hoppe's order issued on April 20, 2018 denying Peinovich's motions 1) to quash plaintiffs' subpoenas to Twitter, Godaddy, Cloudflare, and Hatreon, and 2) to require plaintiffs' full compliance with F.R.C.P. 45(a)(1)(D)(4) and (b)(4).

## Argument

Plaintiffs in their memorandum in opposition to Peinovich's objections continue the tactic they have adopted throughout this litigation: downplaying the importance of the First Amendment and avoiding its application to this case. Having asserted that the First Amendment does not apply to defendants' classic free expression activities of participating in a rally in a park – for which they obtained a permit by injunction from this Court – plaintiffs now contend that the First Amendment is irrelevant to broad subpoenas that seek to disclose the identities of

1

thousands of persons who have chosen to associate in some way with Peinovich's podcasts, even if merely by listening to them – disclosures that would expose these persons to the poisonous practice of doxxing that unfortunately now afflicts our culture.  Doxxing has become so toxic in fact that an attendee at the Unite the Right rally who had his identity exposed by the press has recently and tragically ended his own life due to the harassment he received. See an article about this here:  http://theredelephants.com/man-commits-suicide-far-left-activist-exposes-personal-info-leading-loss-job-relentless-attacks/  The damage inflicted by the practice of doxxing is not speculative or theoretical. It is very real and very serious. For this and other reasons the First Amendment should not be hidden away like some embarrassing relative, as plaintiffs repeatedly urge.  It should be front and center, proudly so.

Against this background, Peinovich responds as follows to the particular points made in plaintiffs' opposition memorandum.

Plaintiffs claim the First Amendment should not be factored into the standard by which this Court reviews the Magistrate's order.  But as explained in Peinovich's initial memorandum, several courts have adopted the Bose de novo standard of review where a Magistrate's ruling involves protected First Amendment activity. See, e.g., Kriss v. Bayrock Group, LLC, 2016 WL 406375 at * 1 (S.D.N.Y. Feb. 1, 2016).   Moreover, as the District Court in Phillips v. Raymond Corp., 213 F.R.D. 521, 525 (N.D. Ill. 2003), quoting the Wright & Miller Federal Practice and Procedure Treatise, stated:

> If it is true (and of course it is) that a District Judge is free at any time to reexamine such interlocutory discovery and evidentiary rulings of his or her own—rulings that are typically made by him or her during the progress of the litigation—it would turn the jurisprudential system on its head to ascribe irrevocable finality (akin to that of a final judgment) to any unreviewed discovery or evidentiary rulings by a Magistrate Judge. As

2

12 Charles Wright, Arthur Miller & Richard Marcus, Federal Practice and Procedure § 3069, at 353–55 (2d ed.1997) (footnotes omitted) explain in some detail:

> But it is also important to avoid the conclusion that district judges are absolutely powerless to alter magistrate-judge resolution of nondispositive matters unless they fall into the clearly erroneous category. At bottom, the power to review is necessary to avoid constitutional difficulties, and an absolute prohibition on revision by the district judge creates risks of undermining that essential review authority. Moreover, the analogy of magistrate judges to municipal courts in some state-court systems seems ultimately misplaced in this context. The case itself remains the district judge's case throughout. This reality is confirmed by Rule 72(a)'s directive that objections be presented to "[t]he district judge to whom the case [is] assigned." If that judge would not be powerless to reconsider his or her own prior rulings in the case, it is difficult to understand why the magistrate judge's orders should be absolutely immune to revision unless clearly erroneous on the basis of the material available to the magistrate judge.
>
> \* \* \* \* \* \*
>
> Much as the district judge should defer to the magistrate judge's decision, therefore, he or she should not be hamstrung by the clearly erroneous standard. At its broadest, it is limited to factual findings; even the Third Circuit recognized that "the phrase 'contrary to law' indicates plenary review as to matters of law."

See also Wakefern Food Corp. v. Prospect Plaza Improvements, LLC, 2010 WL 4514287 at * n.2 (D. Conn. Nov. 2, 2010) (for questions of law, there is no practical difference between review under Rule 72(a)'s "contrary to law" standard and review under Rule 72(b)'s de novo standard).

Plaintiffs assert that Peinovich did not adequately raise the issue of First Amendment associational privilege before the Magistrate. Peinovich, however, invoked the First Amendment, ECF 255 (Peinovich reply memorandum) at 3-4 (citing Enterline v. Pocono Medical Center) and 4 (citing Cooksey v Futrell) and discussed at length the free expression and associational harms flowing to him and those who listen to his podcasts from plaintiffs' broad and invasive subpoenas.

3

Plaintiffs claim that the Magistrate Judge addressed and rejected Peinovich's showing regarding the harms arising to him and his podcast listeners from the profoundly anti-free expression practices of doxxing. The Magistrate Judge, however, said not a single word about doxxing in his brief opinion.

Plaintiffs claim that Peinovich has not adequately supported his invocation of the First Amendment associational privilege. But, one may ask rhetorically, what more can reasonably be expected of him? Peinovich affirmatively averred under oath in his pleadings before the Magistrate that numerous of his listeners and followers have expressed great trepidation to him about becoming targets of doxxing and other cyber attacks as a result of the subpoenas. He further explained that "perception in this case is reality." He again averred under oath in his initial memorandum to this Court that many of his listeners and followers have cancelled their accounts and stopped visiting his website because of the Magistrate Judge's April 20, 2018 order and the publicity given to it by the plaintiffs' counsel. Peinovich's showing easily meets the requirements for a prima facie basis to invoke the associational privilege. In Buckley v. Valeo, the Supreme Court discussed association rights in the context of required disclosures of financial contributors to political parties. 424 U.S. 1, 64 (1976). The Court concluded that before considering a disclosure exemption for a particular party, the party must show "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." Id. at 74. The Court noted that the showing could include specific evidence of past or present harassment against members due to their associational ties or evidence of harassment against the party itself. Id.

4

Numerous court have followed Buckley, requiring that a party asserting the need for protective relief show a reasonable probability of a chill on its First Amendment association right. See , e.g, Black Panther Party v. Smith, 661 F.2d 1243, 1268 (D.C. Cir. 1981) (requiring a showing of "some probability").  This chilling effect may be demonstrated by the potential for the withdrawal of active members or the dissuasion of prospective members from joining because of a fear that exposure of their beliefs will result in threats, harassment, or reprisal, which may not only affect physical well-being, but also political activities or economic interests. See, e.g., Brock v. Local 375, Plumbers Int'l Union, 860 F.2d 346, 349–50 (9th Cir.1988).   But a party need not prove to a certainty that its First Amendment rights will be chilled. Black Panther Party, 661 F.2d at 1267–68.  Instead, the party asserting the right must demonstrate "objective and articulable" facts that disclosure of information may chill association rights. To illustrate, "specific evidence of past or present harassment of members due to their associational ties" or "harassment directed against the organization itself" demonstrate a reasonable probability of a chill on association rights. Buckley, 424 U.S. at 74.  International Action Center v. United States, 207 F.R.D. 1, 3 (D.D.C. 2002) is a case involving facts quite similar to those in this case in which the associational privilege was upheld.

Plaintiffs assert that Peinovich's subpoena to Enom entails a violation of the very associational privilege he asserts by his motion to quash.  But Peinovich's subpoena to Enom has a laserlike focus on the person or persons who registered the domain of two websites.  This contrasts with the thousands of identities plaintiffs seek to uncover by their subpoenas to Cloudflare and others.

5

Plaintiffs cite United States v. Duke Energy Corp., 218 F.R.D. 468, 473 (M.D. N.C. 2003) for the proposition that "the First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights." But that court added at page 473: "Of course, if the scope of the lawsuit and the discovery goes to the heart of the group's associational activities, then the Court will employ a higher level of scrutiny. Wilkinson v. F.B.I., 111 F.R.D. 432, 436 (C.D.Cal.1986) (collecting cases). And, the level of scrutiny markedly increases when the discovery is for membership lists. Wyoming v. U.S. Dept. of Agr., 239 F.Supp.2d 1219, 1237 (D.Wyo. 2002)." Moreover, the Duke Energy opinion has been limited to its facts in cases such as Pulte Home Corp, et al. v. Montgomery County, Maryland, 2017 WL 1104670 at * 7-8 (D. Md. March 24, 2017).

Plaintiffs assert that Peinovich has not offered any alternative short of complete suppression. Peinovich, however, presented a reasonable alternative to complete quashing of the subpoenas on pages 13-14 of this initial memorandum to this Court.

## Conclusion

For the reasons stated, Peinovich respectfully requests that the Magistrate's April 20, 2018 order be reversed; that the subpoenas in question be quashed or, at a minimum, modified so as not to require disclosure of personally identifiable information of visitors to and supporters of Peinovich's website and podcasts; and that plaintiffs be required to fully comply with the notice requirements of Rule 45.

Dated: May 25, 2018.

                                    Respectfully submitted,

                                    /s/ Michael Peinovich

                                    Michael Peinovich, Pro Se


**CERTIFICATE OF SERVICE**

On this 25th day of May, 2018, I Michael Peinovich certify that I served electronically or mailed copies of this objection and memorandum to:

Christopher Greene <cgreene@kaplanandcompany.com>,
David Campbell <DCampbell@dhgclaw.com>,
Elmer Woodard <isuecrooks@comcast.net>,
James Kolenich <jek318@gmail.com>,
Bryan Jones <bryan@bjoneslegal.com>,
Roberta Kaplan <rkaplan@kaplanandcompany.com>,
Julie Fink <jfink@kaplanandcompany.com>,
Gabrielle Tenzer <gtenzer@kaplanandcompany.com>,
Seguin Strohmeier <sstrohmeier@kaplanandcompany.com>,
Alan Levince <alevine@cooley.com>,
Karen Dunn <KDunn@bsfllp.com>,
Philip Bowman <pbowman@bsfllp.com>,
Richard Spencer <richardbspencer@gmail.com>

                                    /s/ Michael Peinovich
                                    _____
                                    Michael Peinovich