UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>        Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>        Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT PEINOVICH TO RESPOND TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Plaintiffs move this Court pursuant to Rules 1 and 37 of the Federal Rules of Civil Procedure to compel Defendant Michael Peinovich ("Peinovich") to provide a complete answer to an interrogatory seeking the identity of his shadow counsel that is ghostwriting his pleadings, for Plaintiffs' reasonable expenses in connection with this motion (including attorneys' fees), and for such other relief as the Court deems necessary and appropriate (the "Motion").

## PRELIMINARY STATEMENT

Since the start of the case, Peinovich has claimed to be a *pro se* litigant; no attorney has entered an appearance on his behalf. Peinovich now admits that he has shadow counsel that ghostwrites his pleadings, but refuses to answer an interrogatory asking him to identify such counsel. The law sensibly does not permit Peinovich to hide the identity of counsel from Plaintiffs and the Court, or shield shadow counsel's pleadings from scrutiny. Moreover, Peinovich's artificial *pro se* status and shadow counsel's refusal to appear in the case are creating unnecessary procedural hurdles and other inefficiencies. Accordingly, the Court should order Peinovich to answer the interrogatory and disclose the identity of his counsel.

## FACTUAL BACKGROUND

Between the commencement of this action in October 2017 and March 2018, Peinovich, purporting to be a *pro se* litigant, filed sixteen briefs with this Court, as compared with a total of nineteen briefs filed by the other eighteen Defendants combined. Peinovich's filings include a motion for sanctions against Plaintiffs' counsel (ECF Nos. 258, 283), a motion to quash Plaintiffs' subpoenas served on third parties (ECF Nos. 226, 255), and a motion to compel disclosure of subpoena recipient contact information (ECF Nos. 229, 255), all of which were denied by this Court (ECF Nos. 285, 304). Peinovich has objected to each of those rulings, and the objections are pending before Judge Moon. (ECF Nos. 296, 309.)

1

In light of Peinovich's multiple filing, on March 23, 2018, Plaintiffs served the Second Set of Interrogatories to Defendant Michael Peinovich (the "Interrogatory"). The Interrogatory contained a single request:

> Identify the name, address, email address, educational and professional background . . . and relationship to [him] of any person who assisted or advised [him] in preparing, including conducting legal research for, drafting, or commenting on drafts of, or with whom [he] shared or exchanged drafts in advance of filing with the Court [each of his court filings].

(Ex. A.)

On April 24, 2018, Peinovich served unverified Responses and Objections to the Interrogatory in which he refused to provide any answer. (Ex. B.) On May 10, Plaintiffs sent Peinovich a deficiency letter, requesting that he answer the Interrogatory and providing authority for Plaintiffs' entitlement to the information sought. (Ex. C.) On May 18, Peinovich wrote that he took "issue with every key point" in Plaintiffs' May 10 letter and again stated he would not answer the Interrogatory. (Ex. D.)

During the parties' June 5 teleconference with this Court, Plaintiffs raised the issue of Peinovich's refusal to identify his counsel. (Ex. E at 21–25.) Peinovich acknowledged that he had "hire[d] an attorney" and explained that he believes he is "allowed to hire an attorney to ghostwrite pleadings" and that his attorney "does not want to identify himself" for fear of being harassed. (*Id.* at 23:22–23, 24:3–5.) Concluding that the issue was ripe for consideration, the Court then directed Plaintiffs to file a motion. (*Id.* at 25:8–15.)

**ARGUMENT**

I.  **Plaintiffs (and the Court) Are Entitled to Learn the Identity of Counsel Ghostwriting Peinovich's Pleadings.**

Where counsel "ghost-writes" pleadings for a party, the Court should order the party to identify counsel and declare whether counsel intends to represent him/her in the case. *See Stewart* v. *Angelone*, 186 F.R.D. 342, 344 (E.D. Va. 1999). "[T]he practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding *pro se* is inconsistent with the procedural, ethical and substantive rules of this Court." *Sejas* v. *MortgageIT, Inc.*, No. 11-cv-469, 2011 WL 2471205, at *1 (E.D. Va. June 20, 2011) (internal quotation marks omitted)); *see also Davis* v. *Back*, No. 09-cv-557, 2010 WL 1779982, at *13 (E.D. Va. Apr. 29, 2010) (describing the practice of ghostwriting by counsel as "strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys" and citing cases); *Anderson* v. *Duke Energy Corp.*, No. 06-cv-399, 2007 WL 4284904, at *1 n.1 (W.D.N.C. Dec. 4, 2007) ("The practice of 'ghostwriting' by an attorney for a party who otherwise professes to be *pro se* is disfavored and considered by many courts to be unethical.").

The reasons for such authority are clear. *First*, "[g]host-writing is in violation of Rule 11" because it prevents a party and counsel from complying with Rule 11's mandatory certification requirements. *Washington* v. *Hampton Roads Shipping Assoc.*, No. 01-cv-880, 2002 WL 32488476, at *5 n.6 (E.D. Va. May 30, 2002); *see also Laremont-Lopez* v. *Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1077–78 (E.D. Va. 1997). Because Rule 11 permits the imposition of monetary sanctions for filings that are legally frivolous or made for an improper purpose (such as harassment), it is unclear at this point in time whether Peinovich, who signed the court filings, his shadow attorney who drafted them, or both of them should be held to account

under Rule 11 for any deficiencies in Peinovich's court filings. *See Laremont-Lopez*, 968 F. Supp. at 1079 n. 4.

*Second*, and relatedly, "unrevealed support [provided to a *pro se* litigant] in the background enables an attorney to launch an attack, even against another member of the Bar (as was done by this same plaintiff), without showing his face. [This] smacks of the gross unfairness that characterizes hit-and-run tactics." *Klein* v. *Spear, Leeds & Kellogg*, 309 F. Supp. 341, 343 (S.D.N.Y. 1970). This is exactly what Peinovich and his shadow counsel are doing here.

Shadow counsel wrote, and Peinovich filed, a baseless motion for sanctions against Plaintiffs' counsel, which accused her of unethical conduct and sought, among other things, what the Court recognized as a "broad gag order[]" on counsel. (ECF No. 285 at 2.) After this Court denied the motion, Peinovich and his shadow counsel filed a baseless objections to the Court's order. This is precisely the kind of "grossly unfair" conduct made possible by use of shadow counsel. *Klein*, 309 F. Supp. at 343.[1]

*Third*, a "*pro se* [party who] enjoys the benefit of legal counsel while also being subjected to the less stringent standard reserved for those proceeding without the benefit of counsel . . . places the opposing party at an unfair disadvantage, interferes with the efficient administration of justice, and constitutes a misrepresentation to the Court." *Laremont-Lopez*, 968 F. Supp. at 1077–78; *see also Deforest* v. *Johnny Chisholm Glob. Events*, *LLC*, No. 08-cv-498, 2010 WL 1792094, at *5 n. 9 (N.D. Fla. May 4, 2010), *report and recommendation adopted*, No. 08-cv-498, 2010 WL 2278356 (N.D. Fla. June 4, 2010) ("[Defendant] would receive an unfair

---

[1] In addition, Peinovich and his counsel's actions necessarily circumvent this Court's General Rule 6(i), which requires the Court to approve an attorney's withdrawal of appearance. *See* W.D. Va. Gen. R. 6(i) (2013); *see also Laremont-Lopez*, 968 F. Supp. at 1079. Peinovich's disclosure that he has an attorney also gives rise to a concern that Plaintiffs may be required to communicate with that attorney rather than with Peinovich directly. *See* Va. Rules of Prof'l Conduct r. 4.2.

4

advantage in that his pleadings would be construed liberally while those filed by Plaintiff would be held to a higher level of scrutiny; this advantage could affect other aspects of the litigation as well."). Again, that is exactly what Peinovich is doing here.

Peinovich has no right to hide the identiTy of shadow counsel that is ghostwriting his pleadings. To the contrary, this tactic is "inconsistent with the procedural, ethical and substantive rules of this Court." *Sejas*, 2011 WL 2471205, at *1; *see also Hampton Roads Shipping,* 2002 WL 32488476, *5 n. 6 (holding that if the Court finds evidence of ghostwriting, it will "be dealt with appropriately"). Accordingly, Plaintiffs respectfully request that the Court order Peinovich to answer the Interrogatory.

## II. The Efficient Management of This Case Favors Disclosure.

The just, speedy, and inexpensive determination of this action also counsels in favor of compelling Peinovich to respond to the Interrogatory. *See* Fed. R. Civ. P. 1. "Even if the Court is able to determine who is responsible for drafting the complaints, the additional inquiry necessitated by the lawyers' failure to sign the pleadings interferes with the 'just, speedy, and inexpensive determination' of those actions." *Laremont-Lopez*, 968 F. Supp. at 1079 (citing Fed. R. Civ. P. 1). Indeed, issues of confidentiality and scheduling have already arisen that would be substantially alleviated if Peinovich disclosed the identity of shadow counsel and he made an appearance in this case.

### A. Peinovich's Artificial *Pro Se* Status Increases the Burden of Protecting Highly Confidential Information.

Pursuant to the protective order entered by the Court, the parties may designate certain information produced in this case as "Highly Confidential." (Order for the Production of Documents and Exchange of Confidential Information, dated January 3, 2018 (ECF No. 167, the "Protective Order"), ¶ 3.) Such information is effectively "attorney's eyes only" and may only be

shared with counsel, experts, and court personnel; it may not be shared with the parties themselves. (*Id.* ¶ 5.) Consequently, when responding to Defendants' discovery requests, Plaintiffs have been forced to create both a "Highly Confidential" response to be served on Defendants' counsel and a second "Confidential" response, in which all Highly Confidential information is redacted, so that the discovery responses can be served on Peinovich in compliance with the Protective Order. This process is time-consuming and burdensome.

Unless Peinovich identifies shadow counsel and he makes an appearance in the case, the burden of such redactions will dramatically increase as Plaintiffs begin producing documents containing Highly Confidential information. By way of example only, the Protective Order permits parties to mark as Highly Confidential "non-party surnames" (Protective Order, ¶ 3(b)), which means that most emails and many other documents to be produced contain such Highly Confidential information. As a result, Plaintiffs anticipate that Peinovich's artificial *pro se* status, if not remedied, will necessitate Plaintiffs' redaction of the vast majority of the documents in their production—an extremely expensive and time-intensive process.

### B.     Peinovich's Artificial *Pro Se* Status Is Causing Unnecessary Delay.

Peinovich's purported *pro se* status has affected the parties' ability to resolve discovery disputes expeditiously and to schedule conferences before the Court. Peinovich has repeatedly failed to timely respond to Plaintiffs' discovery requests,[2] and has explicitly relied upon his purported *pro se* status to argue that he should not be obligated to timely engage in discovery negotiations. *See, e.g.*, Ex. G (stating that he would not respond to Plaintiffs' deficiency letter

---

[2]     Peinovich was served with Plaintiffs' [Corrected] First Set of Documents Requests and Plaintiffs' First Set of Interrogatories on January 25, 2018. He failed to respond by the February 26, 2018 due date and persisted in that failure even after Plaintiffs brought his non-response to the Court's attention. (*See* Ex. F.) It was not until the Court specifically ordered Peinovich to respond (ECF No. 287, at 3) that he served any responses at all (two months after they were due).

6

because he does not "have a highly paid team of lawyers working full time on this"); *see also* Ex. B at 7 (noting that "Plaintiffs are represented by over a dozen big firm lawyers. Peinovich, by contrast, is proceeding *pro se*.")

Moreover, Peinovich has recently explained that—notwithstanding the parties' efforts to accommodate one another's schedules—he can only participate in court conferences on Tuesdays, as he now claims to be busy every other day of the week. (Ex. H.) Besides unnecessarily burdening *all* parties and the Court, these scheduling issues are a problem of Peinovich's own making; he has admittedly engaged an attorney who is presumably capable of timely responding to Plaintiffs' discovery requests and correspondence, and of representing Peinovich during court conferences (even if they are held on a day other than Tuesday).

### III. Peinovich's Arguments Against Disclosure Are Unpersuasive.

As the party resisting discovery, Peinovich bears the burden of persuasion. *See Scott* v. *Clark*, No. 12-cv-00036, 2013 WL 6158458, at *5 (W.D. Va. Nov. 25, 2013) (Moon, J.) ("[T]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules.") (citation omitted); *see also Eramo* v. *Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (citation omitted)).

Peinovich does not object to the Interrogatory on relevance grounds. (*See* Ex. B.) Rather, he asserts two objections that do not entitle him to resist disclosure. *First*, Peinovich claims he has the right to have shadow counsel ghost-write his pleadings so he does not need to identify counsel. (Exs. B, D.) But the purported authority supporting the non-disclosure of his attorney's identity in response to the Interrogatory is both non-precedential and beside the point.

7

Peinovich relies primarily on a Virginia Legal Ethics Opinion ("LEO") advising that attorneys may, under certain circumstances, provide undisclosed assistance to *pro se* litigants. *See* Va. LEO 1874 (July 28, 2014). But it explicitly acknowledges that, following the court's decision in *Laremont-Lopez*, discussed *supra*, "lawyers are now on notice . . . that 'ghostwriting' may be forbidden in some courts, and should take heed, even if such conduct does not violate any specific standing rule of court." *Id.* at 4. Even if the legal opinion had any bearing on Peinovich's right to refuse disclosure, which it does not, the opinion is by its terms "advisory only and not binding on any court or tribunal." *Id.* at 11.

Peinovich tries to evade the holdings of the numerous Eastern District of Virginia cases cited in Section I, all of which hold that the law prohibits ghostwriting, by claiming they do not apply in the Western District. (*See* Ex. D.) But he never identifies why this Court would refuse to follow these repeated and well-reasoned Virginia federal court opinions or what Western District authority would permit ghostwriting.

Peinovich also cites a law review article, but such scholarship does not support Peinovich's position. Instead, it recognizes what the law actually is, rather than what Peinovich hopes it to be: "In a majority of federal district courts, a court would likely find [ghostwriting by an attorney] unethical, illegal, and subject to sanctions." Blake George Tanase, *Give Ghosts A Chance: Why Federal Courts Should Cease Sanctioning Every Legal Ghostwriter*, 48 Ga. L. Rev. 661, 663–64 (2014).[3]

---

[3] Peinovich also cites to a 2007 American Bar Association formal opinion in his response (Ex. D), but that opinion—in addition to being based on the ABA Model Rules of Professional Responsibility, and not any operative professional rules—is largely reflected in the Virginia LEO and is inapplicable for the same reasons. He also cites to Rule 1.6(a) of the Rules of Professional Conduct (*see id.*), but that Rule governs whether an *attorney* may disclose information "gained in the professional relationship" with a client. It has no bearing on whether the *client* may refuse to disclose their attorney in a public, civil litigation.

8

*Second*, Peinovich argues that purported unspecified threats from AntiFa, justify the non-disclosure of his attorney's identity. (*See, e.g.*, Ex. B at 4–7; Ex. D; Ex. E at 23:23–24:5.) Tellingly, Peinovich cites no authority to support this argument. And the Peinovich offers no evidence of the risks to which he refers. Notably, there are ***eighteen*** Defendants participating in this litigation. The attorneys for all but one—Peinovich—have appeared on the record, participated in oral arguments, and generally had their identities made public. Peinovich has proffered no reason why his lawyer should be afforded treatment not available to any other counsel in this litigation. Indeed, if the identity of any counsel to this litigation were to merit protection from disclosure, it would be counsel for ***Plaintiffs*** and not Defendants. Since filing this litigation, Plaintiffs' counsel have received numerous threats, including that "kike dyke"—in reference to Ms. Kaplan—go "in the oven" (Ex. I); that the "kikes," in reference to the Plaintiffs' attorneys, "all need to be gassed" (Ex. J); and that, in a tweet from Defendant Kessler, Ms. Kaplan "fucked with the wrong one" (Ex. K).

Peinovich's reasons for refusing to answer the Interrogatory are baseless and the Court should order him to answer it promptly.[4]

---

[4] Plaintiffs request that if the Court grants Plaintiffs' Motion, which it should, Peinovich be required to pay Plaintiffs' reasonable expenses incurred on this Motion, including attorney's fees. The Federal Rules provide that, subject to certain exceptions, "[i]f a motion [to compel] is granted . . . the Court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or deponent advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion, compel Peinovich to respond to the Interrogatory promptly, award Plaintiffs' their reasonable expenses (including attorneys' fees), and order such other relief as the court deems necessary and appropriate.

Dated: June 21, 2018

Respectfully submitted,

/s/

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
Seguin L. Strohmeier (*pro hac vice*)
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com
gtenzer@kaplanandcompany.com
cgreene@kaplanandcompany.com
sstrohmeier@kaplanandcompany.com

Philip M. Bowman (*pro hac vice*)
Yotam Barkai (pro hac vice)
Joshua J. Libling (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
ybarkai@bsfllp.com
jlibling@bsfllp.com

Robert T. Cahill (VSB No. 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

| | |
|---|---|
| Alan Levine (*pro hac vice*)<br>COOLEY LLP<br>1114 Avenue of the Americas, 46th Floor<br>New York, NY 10036<br>Telephone: (212) 479-6260<br>Fax: (212) 479-6275<br>alevine@cooley.com | David E. Mills (*pro hac vice*)<br>COOLEY LLP<br>1299 Pennsylvania Avenue, NW<br>Suite 700<br>Washington, DC 20004<br>Telephone: (202) 842-7800<br>Fax: (202) 842-7899<br>dmills@cooley.com<br><br>*Counsel for Plaintiffs* |

# CERTIFICATE OF SERVICE

      I hereby certify that on June 21, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

| | |
|---|---|
| Justin Saunders Gravatt<br>David L. Hauck<br>David L. Campbell<br>Duane, Hauck, Davis & Gravatt, P.C.<br>100 West Franklin Street, Suite 100<br>Richmond, VA 23220<br>jgravatt@dhdglaw.com<br>dhauck@dhdglaw.com<br>dcampbell@dhdglaw.com<br><br>*Counsel for Defendant James A. Fields, Jr.* | Bryan Jones<br>106 W. South St., Suite 211<br>Charlottesville, VA 22902<br>bryan@bjoneslegal.com<br><br>*Counsel for Defendants Michael Hill,*<br>*Michael Tubbs, and League of the South* |
| James E. Kolenich<br>Kolenich Law Office<br>9435 Waterstone Blvd. #140<br>Cincinnati, OH 45249<br>jek318@gmail.com<br><br>*Counsel for Defendants Jeff Schoep,*<br>*Nationalist Front, National Socialist*<br>*Movement, Matthew Parrott, Matthew*<br>*Heimbach, Robert Ray, Traditionalist Worker*<br>*Party, Elliot Kline, Jason Kessler, Vanguard*<br>*America, Nathan Damigo, Identity Europa,*<br>*Inc. (Identity Evropa), and Christopher*<br>*Cantwell* | John A. DiNucci, Esq.<br>8180 Greensboro Drive<br>Suite 1150<br>McLean, Virginia 22102<br>dinuccilaw@outlook.com<br><br>*Counsel for Defendant Richard Spencer* |

Defendant Michael Peinovich (*pro se*)

I further hereby certify that on June 21, 2018, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a Loyal White Knights Church of the
Invisible Empire, Inc.
c/o Chris and Amanda Barker
P.O. Box 54
Pelham, NC 27311

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

*s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
Email: rcahill@cooley.com

*Counsel for Plaintiffs*