# EXHIBIT E

```
1                  UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF VIRGINIA
2                     CHARLOTTESVILLE DIVISION

3    ELIZABETH SINES, et al.,
                                   No. 3:17-cv-72
4                    Plaintiffs,
                                   Charlottesville, Virginia
5        vs.                       June 5, 2018
                                   3:33 p.m.
6    JASON KESSLER, et al.,

7                    Defendants.

8            TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
                BEFORE THE HONORABLE JOEL C. HOPPE
9                 UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Plaintiffs:

12   ROBERTA ANN KAPLAN            PHILIP MATTHEW BOWMAN
     Kaplan & Company, LLP         Boies Schiller Flexner, LLP
13   350 Fifth Avenue, Suite 7110  575 Lexington Avenue, 7th Floor
     New York, NY 10118            New York, NY  10022
14   212-763-0883                  212-446-2300

15   For the Defendants:

16   JAMES EDWARD KOLENICH         JOHN A. DiNUCCI
     Kolenich Law Office           Law Office of John A. DiNucci
17   9435 Waterstone Blvd., Suite 140 8180 Greensboro Drive, Suite 1150
     Cincinnati, OH 45249          McLean, VA 22102
18   513-444-2150                  703-821-4232

19   DAVID LEON CAMPBELL           MICHAEL ENOCH PEINOVICH,  PRO SE
     Duane, Hauck, Davis & Gravatt P.O. Box 1069
20   100 West Franklin St., Ste. 100 Hopewell Junction, NY 12533
     Richmond, VA 23220            917-747-9238
21   804-644-7400 x 221

22   Transcribed by:   Carol Jacobs White
                       Registered Diplomate Reporter
23                     PO Box 182
                       Goode, VA 24556
24                     Carol.jacobs.white@gmail.com

25       Proceedings recorded by FTR; computer-assisted transcription.
```

1    (Call to Order of the Court at 3:33 p.m.)

2         THE COURT:  Hi.  This is Joel Hoppe.  And we are on the

3    record in *Sines versus Kessler* for a follow-up scheduling

4    conference.

5         And who is on the line for the plaintiffs?

6         MS. KAPLAN:  Your Honor, it is Roberta Kaplan, from

7    Kaplan & Company.  And I believe there are one or two other

8    attorneys on the phone from other firms.

9         Phil, are you on?

10        MR. BOWMAN:  Yes, Philip Bowman, from Boies Schiller, for

11   the plaintiffs.

12        THE COURT:  All right.  Anybody else?

13        Okay.  Then, how about -- let's see, for the defendants.

14   For Mr. Spencer?  Do we have Mr. DiNucci on the phone?

15        MR. DiNUCCI:  Yes, Your Honor.  I'm here.

16        THE COURT:  All right.  And then for Mr. Fields, we have

17   either Mr. Campbell or Mr. Gravatt?

18        MR. CAMPBELL:  Mr. Campbell, Your Honor.  I'm right here.

19        THE COURT:  All right.  And then for Hill, Tubbs, and

20   League of the South, do we have Mr. Jones?

21   (No response.)

22        THE COURT:  Is Bryan Jones on the phone?

23   (No response.)

24        THE COURT:  All right.

25        And, Mr. Peinovich, are you on the phone?

```
 1              MR. PEINOVICH:  I'm right here, sir -- oh, sorry, Your
 2     Honor.  I'm here, Your Honor.
 3              THE COURT:  Okay.  That's fine.
 4              And then, Mr. Woodard or Mr. Kolenich, are you on the
 5     phone for, I think, the rest of the defendants?
 6              MR. KOLENICH:  Mr. Kolenich, Your Honor.
 7              THE COURT:  All right.
 8              All right.  Anyone else -- I think I may have a law clerk
 9     and an intern on the phone too, but is anybody else on the line?
10         (No response.)
11              THE COURT:  All right.
12              Well, thanks for calling in on this scheduling
13     conference.  I think the purpose of today's hearing is really to
14     address discovery and the schedule in the case.
15              Ms. Kaplan, have you-all had any discussions about those
16     issues since our last conference?
17              MS. KAPLAN:  We have, Your Honor.  And we have
18     crystallized things, we think, or we hope, into four issues for
19     today, one of which, of course, is the case schedule, which we
20     discussed back in March.
21              THE COURT:  Okay.  What are -- what are the other issues,
22     as you see them?
23              MS. KAPLAN:  There are two discovery issues.  One has to
24     do with kind of giving you an update on document preservation,
25     where we are on the ESI protocols.  Second, how we present -- there
```

```
 1    are certain other discovery disputes that we would like to present
 2    to Your Honor and how you want us to do that.  Third is an issue
 3    relating to Mr. Peinovich's status as a pro se defendant and his
 4    refusal to identify the consulting counsel that he has working with
 5    him.  And then, four, as Your Honor knows, of course, is setting a
 6    trial date.
 7              THE COURT:  All right.
 8              All right.  Well, why don't we go ahead and take up the
 9    schedule and the trial date.  You-all had submitted a 26(f) report
10    -- well, before I move on to that, let me just ask, Mr. DiNucci,
11    are there any other issues that you think we need to address today?
12              MR. DiNUCCI:  There's nothing I have.  With all due
13    respect, Your Honor, I'm only getting my feet wet right now.  But
14    there's no issues that I have got, that I have been able to
15    identify from what I have been able to review so far.
16              THE COURT:  Okay.  And, Mr. Kolenich?
17              MR. KOLENICH:  No additional issues, Your Honor.
18              THE COURT:  All right.  Mr. Campbell?
19              MR. CAMPBELL:  No, sir.
20              THE COURT:  All right.  Mr. Peinovich?
21              MR. PEINOVICH:  I mean, the plaintiffs are being very
22    unresponsive in their responses to my -- in their responses to my
23    discovery request.  But we are still negotiating with each other,
24    as far as I'm concerned, so no issues.
25              THE COURT:  All right.  And I think that's something that
```

1    we can take up, at least preliminarily, when we address how to

2    resolve or how to present discovery disputes.

3            So why don't we go ahead and discuss the schedule and the

4    potential -- or and the trial date.  There's a -- you-all have

5    submitted a 26(f) report.  Do you still want to proceed under those

6    deadlines that were set forth in the report?  There's an update --

7            MS. KAPLAN:  I'm not aware, Your Honor -- I don't think

8    -- a lot of the stuff kind of -- as you'll see in paragraph two on

9    page three, kind of factors off the date of the trial.  So I think

10   the crucial question is really figuring out a proposed date for the

11   trial.  And I'm okay with those kind of periods based on that.

12           THE COURT:  All right.  Well, then, what discussions have

13   you-all had about a trial date?

14           MS. KAPLAN:  Your Honor, I -- you know, on that I confess

15   that there hasn't been a lot of meet and conferring on that.  I

16   think we said last time -- and maybe I didn't; I apologize if I

17   didn't -- we're thinking a target date -- and we apologize for

18   this.  We know that while you are not in a rocket docket in

19   Virginia, you are a semi-rocket docket jurisdiction, so we want to

20   be mindful of that.  On the other hand, we know, as Your Honor has

21   already seen, is there has been substantial delays, not only in

22   party discovery but in third-party discovery from getting

23   information from Discord most prominently.

24           And so, factoring all of that into account, we would like

25   to set a target date of May next year, so May 2019.  That, of

1  course, has to be subject to assuming we actually succeed in

2  getting some of the discovery that we want.  Many of the

3  depositions we don't want to take until we have had some of that

4  discovery.

5       And, second, the Boies Schiller team may have a trial

6  that may be -- that was already, you know, subject to a prior

7  order, that may be scheduled at that date.  And if that happens,

8  obviously, we'll have to come back to Your Honor.

9       THE COURT:  Okay.  All right.  But you are thinking

10  somewhere in around May of 2019.  And can you give an estimate for

11  how long or do you need -- you-all need to know what Judge Moon

12  -- whether Judge Moon is going to pare down the case or what he's

13  going to do with the motion to dismiss before he can give a

14  reasonable estimate as to the time?

15       MS. KAPLAN:  Yeah, I'm not sure, you know -- for example,

16  if he pared it down by cutting out some of the defendants, I'm not

17  sure that would make a significant difference, frankly, in terms of

18  timing.  I'm trying to recall our prior estimate.  I think it was

19  three to four weeks.  And I don't think that really changes.

20       THE COURT:  Yeah.  I think that's what it was too.

21       All right.  And, Ms. Kaplan, is there general agreement

22  with the defendants as to the timing and the estimates for how long

23  the trial would take?

24       MS. KAPLAN:  Well, I think the estimates we talked about

25  at your last call -- and, Your Honor, this is my bad.  I apologize

1    for this.  We have not discussed the trial date with the

2    defendants.  And for that I apologize.

3            THE COURT:  All right.  And I think we -- the last call,

4    it was two to three weeks or three to four.  I understand that

5    those are estimates.

6            All right.  Well, Mr. Kolenich, what are your thoughts on

7    the trial date and how long it may take?

8            MR. KOLENICH:  I think that, given the number of issues,

9    the number of parties, that -- three to four weeks is a substantial

10   time.  I don't know what other business the Court may have to

11   conduct during the trial period.  But I don't have any problem with

12   that.  I can assure the Court that our evidence and putting in our

13   case probably can be done in three to four days, at worst.  So just

14   relying on the plaintiffs, their needs, and, of course, jury

15   selection.  But I don't have any objection or problem with the

16   three to four weeks.

17           THE COURT:  Okay.  All right.  And you think May 2019 is

18   a reasonable time frame?

19           MR. KOLENICH:  Yes, sir.  I don't have a problem with

20   that either.  And, surprisingly, I'm wide open in May 2019.

21           THE COURT:  All right.

22           MS. KAPLAN:  Not anymore.  Not anymore, Mr. Kolenich.

23           MR. KOLENICH:  Right.  Right.

24           THE COURT:  You-all will have to -- you know, with UVA

25   graduation always falling in the middle of May, you'll probably

```
 1   have to make your hotel reservations now, to be able to stake a
 2   hotel room.
 3            Mr. DiNucci, what are your thoughts on those issues?
 4            MR. DiNUCCI:  I pretty much confirm with what Ms. Kaplan
 5   said, from what little I know yet.  I'm learning a lot fast.  Three
 6   or four weeks sounds like more than a reasonable estimate.  And May
 7   of next year is not something of which I would have a problem.
 8            I certainly understand needing hotel rooms.  I nearly
 9   didn't get to my daughter's graduation, trying to get a room down
10   there.  May, I think, next year makes sense.
11            THE COURT:  Okay.
12            Mr. Campbell?
13            MR. CAMPBELL:  Yeah, Judge, I would like to just, you
14   know, put it off as far as possible.  June of next year sounds good
15   to me.  I just want to make sure -- I'm attempting to make sure
16   that we can hold off on the deposition of my client until after the
17   criminal matter is resolved.  So I'm in agreement with as far out
18   as anyone wants to push it.
19            And I do think that, depending on how the discovery plays
20   out with the plaintiffs, that we're probably going to need, you
21   know, a fair amount of time to call defense experts.  I understand
22   there's some -- at least one plaintiff who claims a stroke.  It's
23   kind of, I would say, remote in time to the events sued upon.  And,
24   obviously, we're -- you know, there's a number of defense medical
25   experts that we would anticipate calling.  So we would probably
```

1  need a couple of days.

2          THE COURT:  Okay.  And is Mr. Fields' trial date still

3  scheduled?  Is it --

4          MR. CAMPBELL:  Yes, sir.  It's beginning right after

5  Thanksgiving, for three weeks, I believe.

6          THE COURT:  Okay.

7          MR. CAMPBELL:  So I think that would permit -- I don't

8  have the -- I apologize.  I don't have the order -- the 26(f) order

9  in front of me, but I think that would permit time to, you know,

10  let that play out and then still give the plaintiffs an opportunity

11  to depose him without running up against any deadlines.

12          THE COURT:  Yeah.  I think --

13          MS. KAPLAN:  Your Honor, with respect to Mr. Fields, we

14  may have to ask your permission to go past the fact discovery

15  cutoff if we use this date, because we, obviously, don't want to do

16  it until his trial is completed, as we previously discussed.

17          MR. CAMPBELL:  Yeah.  And in consideration of that, I

18  would wholeheartedly agree to permit extension beyond any deadline.

19  That would be great.

20          THE COURT:  I think that's certainly something that we

21  can work with.  And the 26(f) report has a close-of-fact discovery

22  at 150 days before trial.  So we would be right around the time, I

23  would think, that the trial would conclude for Mr. Fields.  So if

24  we need to go a little bit beyond that, I think that's fine.

25          All right.

1    What I'll do -- you know, Heidi Wheeler will actually

2  schedule the trial for Judge Moon.  And I will let her know that

3  you-all are looking for -- oh, Mr. Peinovich, I'm sorry.  Is that

4  -- is that -- the time frame and the length of the trial, does that

5  sound like it is --

6    MR. PEINOVICH:  Yeah.  I'm easy.  You know, whatever is

7  fine with me.

8    THE COURT:  Okay.  All right.

9    Well, I'll get Heidi to figure out a time in or around

10 May for three to four weeks that Judge Moon would be available to

11 schedule this for a trial.  And she'll send out those dates.

12    Now, moving on to the next issue, the document

13 preservation and an ESI protocol, where are you on those

14 discussions?

15    MS. KAPLAN:  Sure, Your Honor.

16    We have circulated orders.  Unfortunately, the parties

17 have been unable to reach an agreement.

18    The issues, frankly, kind of revolve around what you

19 would expect, really, in an ESI order.  You know, we want to make

20 sure that we get the documents as they existed in the ordinary

21 course.  We have been receiving things as one giant PDF.  As a

22 result of that, we're not getting any metadata, which is crucial in

23 this case, given how many of their communications were electronic.

24 And there's also no Bates numbering.  So we think all of this stuff

25 is particularly important here.

```
 1          We understand that they don't want to agree to do it this

 2    way.  And we're perfectly happy, however Your Honor wants, to do a

 3    letter brief or a motion to Your Honor with maybe two different

 4    proposals, and Your Honor could choose.  Whatever is easiest for

 5    Your Honor.

 6          THE COURT:  All right.

 7          All right.  Mr. Kolenich?

 8          MR. KOLENICH:  Yeah, we have had multiple discussions

 9    about the ESI.  I don't think we're particularly far apart.  But it

10    is true that some of my clients are resistant to machine imaging

11    and so forth that goes on in larger litigation.  I'm sure we can

12    come to some agreement.  But if they would rather -- you know, if

13    they would rather submit counterproposals to the Court, for the

14    Court to make an order, that's all right with me as well.

15          THE COURT:  All right.  Well, what I --

16          MS. KAPLAN:  Your Honor --

17          THE COURT:  Sure.  Go ahead.

18          MS. KAPLAN:  Your Honor, I just want to add.  There's one

19    other issue where I believe Mr. Kolenich, at least on behalf of his

20    clients, has agreed to provide us with their devices so that we can

21    have, you know, forensic people, who understand how to do this,

22    take images of them.  And we are currently in the process of

23    working that out with Mr. Kolenich.  But it is, obviously, a

24    related issue.

25          MR. KOLENICH:  That's true, Your Honor.  We just need to,
```

you know, hammer out the protocol for doing that, particularly who
gets the data first. So, you know, ordinarily, if somebody is
imaged -- their device is imaged, I would get the data first, so
that I could, you know, turn over what is responsive and hold back
what is privileged or what is completely irrelevant, such as just
totally personal communications. And we're not clear that the ESI
documents call for that now. It seems like the other side -- and
I'm not talking about Ms. Kaplan, but the other attorneys that I've
talked to -- think that they are going to get the data first before
I get a look at it. I'm not sure that we're, you know, in
agreement with that procedure.

MS. KAPLAN: Yeah. Your Honor, this is the advantage in
being the most senior attorney on the case. I certainly agree with
Mr. Kolenich on that. And to the extent that anyone on my team
said otherwise, obviously -- I mean, the data people may have it
first, but they are not going to be reading it. And I certainly
agree that he should have an opportunity to review, for relevance
and privilege, first.

THE COURT: I would agree with that as well. All right.

MR. CAMPBELL: Your Honor, if I could briefly. I
apologize for interrupting. This is Dave Campbell on behalf of
Mr. Fields.

I don't think I can comply with that order. I don't have
any problems with the terms. I'm just indicating that I don't
believe that I can make the agencies that have responsive devices

1  in my regard turn them over.  Your Honor may be able to, but I
2  certainly can't.  So I'm just kind of raising a different issue
3  there, Judge.  I don't want to sign something that I know I'm going
4  to run afoul of because I cannot comply.
5          THE COURT:  Right.
6          MS. KAPLAN:  We certainly understand, Your Honor.  If
7  Mr. Fields' devices are in the possession of the government, we'll
8  have to work that out separately.  We understand.
9          MR. CAMPBELL:  All right.
10         THE COURT:  All right.  Mr. DiNucci, have you had a
11 chance to look at this issue?
12         MR. DiNUCCI:  No, I have not, Your Honor.  I have got a
13 large stack of papers sitting in front of me to read, including
14 materials related to these issues.  But right now I'm about as
15 ignorant as a baby on this.
16         THE COURT:  All right.
17         All right.  And, Mr. Peinovich, what is your view on the
18 ESI protocol at this point?
19         MR. PEINOVICH:  Well, you know, I have not been deleting
20 any documents.  I'm happy to turn over responsive documents.  But
21 I'm going to object to any kind of device imaging of any of my
22 devices.  If that's, like, (inaudible), I'm not going to agree to
23 that, you know, immediately.
24         THE COURT:  All right.
25         MR. PEINOVICH:  I'm happy to turn over any and all

1    responsive documents that I have, though.

2             THE COURT:  Okay.

3             Well, here is what -- it sounds like there's a bit more

4    that you-all can discuss on the issue about the ESI protocol and

5    also the device imaging.  And what I would ask you to do is to

6    follow up on those discussions.  And if there are differences -- I

7    would want you to submit, you know, one proposed ESI protocol.  But

8    if there are -- and it sounds like there would just be a couple of

9    differences.  I don't want to work from two different documents.  I

10   think that gets a little more complicated.  But if there are

11   differences in a couple of provisions, then you-all can brief those

12   differences and why you -- why you think that, you know, some

13   should be in there and some should not.  And I can -- and I can

14   (inaudible) on that.  And I think just filing it regularly on ECF

15   is the way to go on that.

16            You know, I would -- to avoid any significant delay in

17   getting these materials, getting an agreement in place, you know, I

18   encourage you-all to do this pretty soon.  It seems like it would

19   probably make sense to go ahead and -- or that there would be

20   simultaneous filings from each of the parties and then just a

21   -- and then just a response on it.  I don't think that there would

22   need to be any additional briefing on that.

23            MS. KAPLAN:  That makes sense, Your Honor.  And if it is

24   easier for Your Honor, we could do, like, a black-lined version

25   with the differences or something like that.

```
1          THE COURT:  Yeah.  I think that would be fine.  And
2   you-all can work together to just submit the one document, with the
3   different input from each side.
4          All right.  And then now just -- and I think that you-all
5   can -- once you -- once you have had an opportunity to discuss the
6   issue and it is ripe to present to me, then I think just figure out
7   a date to agree amongst yourselves on when you'll file the opening
8   brief and then a date on when the responses would be due.
9          MS. KAPLAN:  So a similar issue, Your Honor, which we may
10  want to schedule on a similar time schedule -- and it was the next
11  issue I have -- is there were kind of a number of discovery
12  disputes.  We have received very -- precious few documents.
13  Certain documents we have received no -- certain defendants, excuse
14  me, we have received no documents from.  Among other reasons, we're
15  being told that documents are privileged from defendants who are
16  proceeding pro se, who are also refusing to give us a privilege log
17  to substantiate that.
18         We're being told that certain documents were not being
19  produced on First Amendment grounds.  We're not being told what
20  specific documents those are, which I think the current federal
21  rules require, but that's our understanding.  We, obviously, think
22  that's an improper objection.
23         We would propose a similar procedure to kind of put in
24  front of Your Honor all of those issues, so we can kind of get that
25  all wrapped up and finalize at least the documents defendants have
```

1   kind of at their hands to be produced that should be produced.

2            THE COURT:  Okay.

3            All right.  Are there -- Mr. Kolenich, are there any

4   concerns on your side as far as discovery production?

5       (No response.)

6            THE COURT:  Mr. Kolenich, are you still with us?

7            MR. KOLENICH:  Yes, Your Honor.  I'm sorry.

8            I have no issues that we haven't been actively discussing

9   with the plaintiffs' attorneys.  And I think it is mostly going to

10  be wrapped up with this ESI protocol.  And then there are -- there

11  are a couple of outstanding minor requests that my guys have

12  basically got the information and I should be able to turn over

13  very quickly.

14           And then we do have an ancillary issue with defendant

15  Kline, who steps in and out of participating in the litigation at

16  his leisure, I guess.  And we may be in a position where we have to

17  withdraw as counsel for him again.  But we'll come to that

18  determination very quickly and either fully cooperate with the

19  plaintiffs' discovery efforts or withdraw from representing him.

20  He's not resisting discovery so much as just not participating at

21  all at this point.

22           THE COURT:  Okay.  All right.

23           MS. KAPLAN:  He's a key -- very key defendant here, Your

24  Honor, so, obviously, that's a matter of some concern to us.  And

25  we, obviously, not only want his documents, but, you know, really

```
 1    need to take his deposition.  So we'll, obviously, have to deal
 2    with those issues in the future.
 3              THE COURT:  Okay.  All right.  And it may be that we just
 4    need to get him on a -- on the call with Mr. Kolenich at some
 5    point, if -- you know, if that's going to be on a discovery hearing
 6    or if -- you know, if he continues to not be responsive to you,
 7    Mr. Kolenich, and you need to move to withdraw, then get him on the
 8    phone for that hearing.
 9              MR. KOLENICH:  Yeah.  That's a large -- that's part of
10    the problem, if I could -- if I could get him on the phone.  When I
11    have him on the phone, he's not uncooperative.  But he, alone among
12    my numerous clients, just doesn't call back when he feels like it.
13              THE COURT:  All right.  Well, I don't know if it will
14    produce the desired result, but the Court could certainly send him
15    something directly, saying that he needs to participate himself and
16    -- in a hearing, and maybe that will get his attention.
17              MR. KOLENICH:  Anything to help, Your Honor.
18              If you give me a few days to talk to my co-counsel,
19    Mr. Woodard, it may be that we just elect to withdraw as counsel
20    and the Court wouldn't have to bother with it and the plaintiffs
21    could proceed against him after that order.
22              THE COURT:  All right.
23              All right.  Mr. DiNucci, any issue that you have
24    identified on the discovery?
25              MR. DiNUCCI:  Well, none that I have, but I believe that
```

1   Ms. Kaplan's firm has some issues with Mr. Spencer about discovery.

2   I got a letter from Mr. Greene, Ms. Kaplan's associate, last

3   Wednesday, which was a cover letter for a couple letters I believe

4   Mr. Greene had previously sent to Mr. Spencer about discovery.  I'm

5   only now digesting that and trying to set up a meeting with

6   Mr. Spencer so I can go over the issues raised by Mr. Greene and

7   see where we go with it and try to get some response back to

8   counsel in a timely manner.

9          THE COURT:  Okay.

10         All right.  And, Ms. Kaplan, as far as Mr. Spencer, it

11  sounds like there's some further discussions that you and

12  Mr. DiNucci or someone from your team can have with Mr. DiNucci to

13  see if those issues are -- about the discovery production are ones

14  that need to be brought to my attention or if that's something that

15  you-all can work out.

16         MS. KAPLAN:  Yeah, I agree, Your Honor.  I think the fact

17  that Mr. Spencer now has counsel is a material development in the

18  case.  And we'll see if we can work through things with

19  Mr. DiNucci.

20         On the Mosely, or the Kline issue, you know, just -- if

21  it helps, if he refuses to cooperate and there's withdrawal of

22  counsel, which, obviously, isn't counsel's fault, we would,

23  obviously, seek sanctions, probably, including adverse inferences,

24  against Mr. Mosely.

25         THE COURT:  Okay.  That's -- when you say Mosely, are you

1  referring to Kline?

2          MS. KAPLAN:  Yeah.  Kline.  I'm sorry.  Yes.

3          THE COURT:  Okay.

4          MS. KAPLAN:  I apologize, Your Honor.

5          THE COURT:  All right.  And, Mr. Campbell, what about the

6  written discovery from your client?  It is not like -- there had

7  been some production as of our last conference call.  Are there any

8  issues that you can see on your end in getting discovery?

9          MR. CAMPBELL:  Other than electronic, no.  I think that

10  we -- I have been having direct communications with Ms. Kaplan's

11  team.  And I think we're pretty much in an okay spot, as far as I

12  know.  And, I mean, I'm waiting on some stuff from them, but I'm

13  certainly not pushing anyone to hurry up in this case.  So I think

14  we have everything -- we don't -- haven't necessarily reached

15  agreement on everything, but I think we have agreed that we don't

16  need to push forward at this point in time on any of the issues as

17  between us.

18          MS. KAPLAN:  We agree with that, Your Honor.  We have no

19  issues with Mr. Campbell.

20          THE COURT:  Okay.  All right.

21          And, Mr. Peinovich --

22          MR. PEINOVICH:  Well, I have (inaudible) --

23          THE COURT:   -- (inaudible) discovery that you have

24  requested, if you requested some?

25          MR. PEINOVICH:  No, I haven't gotten anything.  And, on

```
 1   top of that, they have not indicated whether they have any
 2   documents that are responsive to any of my requests either.  But,
 3   you know, we're still actively negotiating.  I have been talking
 4   back and forth with, you know, Chris Greene almost every day, it
 5   seems.  So, I mean, I feel that I'm still in active negotiation
 6   phase with them.  So, while, obviously, I think that their
 7   objections are improper, we're still negotiating.
 8             THE COURT:  All right.
 9             MS. KAPLAN:  Your Honor, I'm not sure we agree with
10   Mr. Peinovich on whether we are in active negotiations with him on
11   a daily basis.  And that actually leads into the other concern we
12   have, which is his concern as a pro se --
13             MR. PEINOVICH:  Well, we email back and forth every day.
14   I'm emailing with Chris every day -- I mean, almost every day.
15   We're constantly emailing back and forth on this.
16             THE COURT:  All right.  Well, hold on, Mr. Peinovich.
17   I'll certainly give you an opportunity to say what you would like
18   to say, but let's let everybody finish before you interject.
19             MS. KAPLAN:  So here's the situation.  We responded to
20   the written interrogatories from Mr. Peinovich.  We're not aware of
21   any issues with our responses, although if there are, we haven't
22   heard them.  We sent an email yesterday -- he sent us an email
23   yesterday, which we'll respond to.  Documents, we intend to start a
24   rolling production of our documents as early as today or tomorrow.
25             And, you know, obviously, we got defendants' request
```

later than they got our request, so it is a little bit behind in

time, but we are certainly following up. And with respect to

Mr. Peinovich, we haven't received a single document. And we don't

want to be -- have this process of him constantly saying he's still

in negotiation. We would like to kind of join issue on the issues,

Your Honor, and file a motion and get some orders, because -- we

think he is withholding documents. He won't, again, follow the

rules and specify which documents he's withholding based on which

objection. But we need clarity on that. It may require

intervention from the Court.

     And, again, if I may, that leads into the fourth and

final issue, which is in response to our interrogatory request or

interrogatory question, Mr. Peinovich did acknowledge that he has

counsel with whom he's consulting on this case, but he will not

identify who that individual is. He is still taking the position

that he's pro se.

     And that causes, you know, a bunch of issues for us. For

one, we're not sure whether under that standard he should get the

more lenient treatment that pro se plaintiffs get from the Court;

two, it, obviously, is creating practical issues with respect to

the production of documents. If we were dealing with an attorney

on the other side, I think we would be farther along and wouldn't

be kind of in this state of the unknown with respect to

Mr. Peinovich.

     And then there's, frankly, a very practical issue, which

1 is the confidential order in the case has an attorneys' eyes only

2 designation.  Mr. Peinovich is, at least right now, the only person

3 without an attorney.  And if he doesn't have an attorney, that

4 requires us to go through a very burdensome redaction process that

5 we wouldn't have to go through with the other defendants; and,

6 frankly, given the fact that he's acknowledging that he's

7 consulting with counsel, we don't think we should have to go

8 through.

9        There's ample authority, actually, in the Fourth Circuit.

10 I was surprised to see this.  But there's a significant amount of

11 authority in the Fourth Circuit about shadow counsel and whether it

12 is permissible or not.  And we would like to file a motion on that

13 and let Your Honor decide the issue.

14        THE COURT:  All right.

15        All right.  Mr. Peinovich, we're really not talking

16 about, I guess, the process now for addressing the issues about

17 discovery production and then this consulting counsel.  You know,

18 I'm not deciding the substance of anything.  But, you know, we do

19 need to go ahead and figure out when these issues -- when and how

20 these issues will be presented to me.

21        So is there -- is there anything that you would want to

22 say on those issues?

23        MR. PEINOVICH:  Yeah.  Sure.  I did acknowledge in my

24 second-to-latest email to Chris Greene that I was happy to revise

25 my responses to the interrogatories and document requests to comply

with the issue of -- one, there's one answer I wanted to clarify,
that they asked me to clarify, and then there was another one where
they wanted to say which documents I had or didn't have and was
withholding or not withholding according to my objection.  And I
indicated I was happy to do that.  This was, I believe, a few days
ago.  I can't remember exactly what day it was.  It was a few days
ago.  And he wanted the answers, like, within, you know, two days.
And I had just recently gotten the plaintiffs' responses to my
document requests and interrogatories, which are like 11 documents
I have to work through.  So I told him I'm happy to give you a
revised copy of that and send that off, and I will, in fact, deal
with some of those issues, like telling whether or not I have
responsive documents, et cetera.

        I do have some documents.  They are responsive.  And I
will detail all of that in my next response.  But this is why I'm
saying I think that we're still kind of negotiating.

        And I'll add that, you know, I did yesterday, after going
through all 11 of these documents, send my objections to what I
think are improper objections from plaintiff to my discovery
requests.

        As far as the matter of the consulting attorney, I gave
my arguments as to why I believe that, one, I'm allowed to hire an
attorney to ghostwrite pleadings for me, and, two, why my attorney
has good reason to want to remain anonymous, including, you know,
the risk and threat of harassment from Antifa activists, which I

provided ample evidence of in communications with the plaintiffs,
which is my -- which is his fear here. That's specifically his
problem. So -- he has been harassed in the past. He's afraid he
will be harassed again, which is why he does not want to identify
himself. I have requested that he not do so. But this is -- this
is my position right now. And I'm going to stick to it, unless
there's a court order.

THE COURT: All right. Well, it seems that it would
-- that it makes sense to have some sort of a deadline for -- for
the end of the meet and confer on these outstanding issues and have
a time for submitting the issues to the Court for determination.

Ms. Kaplan, how much -- how much longer do you think it
makes sense to allow that, I guess, meet-and-confer process to
continue?

MS. KAPLAN: My instinct, Your Honor, is really it has
been going on since April. Like it shouldn't last more than
another week. The answer is this is not complicated stuff.

And Mr. Peinovich, you know, in his last email to us,
dated May 30th, said he doesn't have a team of paid lawyers working
full-time. I don't know whether the person that is ghostwriting
his briefs is full-time or not, but he has got a lawyer. And that
lawyer has obligations. And that lawyer should be responding as a
lawyer to our discovery requests. It just -- you can't -- I'm not
aware of any rule that would permit someone to serve as a
ghostwriting lawyer in this case. And, obviously, no one on our

```
1    side is going to do anything with respect to his lawyer.  I just
2    -- we should just brief the issue.  I don't know what else to say.
3              THE COURT:  I think --
4              MR. PEINOVICH:  Your Honor, the area that he's worried
5    about, his name being public, period.  That is the issue.  And
6    there -- we cited ample, you know, decisions and bar association
7    opinions on this that allow for this sort of thing.
8              THE COURT:  All right.  Well, I think what we need to do
9    -- I see these as two issues.  And so what I would ask you to do,
10   Ms. Kaplan, if you want to file a motion relating to the consulting
11   attorney, it sounds like Mr. Peinovich is solid on on his argument
12   there and that he's not intending to make any movement.  So it
13   doesn't seem like any further discussion between the parties would
14   really be helpful on that.  So I think you can just go ahead and
15   brief that issue.  And I'll take it up when it is ripe.
16             And then on the discovery, I'd say maybe allow another
17   week or so to confer, and then you file a -- and what I would
18   suggest is filing, you know, a -- just a discovery motion; not
19   necessarily -- I mean, essentially, a motion to compel.  But just
20   go ahead and file that in the next two -- two weeks or so.
21             And, Mr. Peinovich, you will have an opportunity to
22   respond to that.  And then we can -- we can take that up in a
23   -- you know, at a hearing.  And, of course, the plaintiffs can file
24   a reply as well.  But it seems like we just need to go ahead and
25   get that -- get that on the docket.
```

1    Are there -- Ms. Kaplan, are there concerns about some of

2    the -- any of the other defendants that you think you'll need to

3    raise at this time, or is it probably more of a focus between -- or

4    issue between you-all and Mr. Peinovich?

5    MS. KAPLAN:  There were concerns on Mr. Spencer, Your

6    Honor, but now that he has counsel, we're hoping that we can work

7    those out.

8    THE COURT:  Okay.

9    MS. KAPLAN:  And, Mr. Kolenich, you know, if he was to be

10   -- based on his representations here, I think he's operating in

11   good faith to try to get us discovery.  So I think that's basically

12   the universe.

13   THE COURT:  All right.

14   MR. PEINOVICH:  I have a question, Your Honor.

15   THE COURT:  Yes?

16   MR. PEINOVICH:  In regards to the end of the meet-and-

17   confer phase, does this also include the -- my requests on the

18   plaintiffs, which they have also been, you know, completely

19   unresponsive to?

20   THE COURT:  You know, Mr. Peinovich, if the time for the

21   plaintiff to respond has passed and you-all have discussed the

22   objections and you think that you have pretty well run down that

23   -- the issues and gone over the issues with them, then you

24   certainly may file a motion to compel as well.  And it may make

25   sense to go ahead and try and take up these competing motions at

1    the same time during a hearing.

2              MR. PEINOVICH:  Okay.

3              MS. KAPLAN:  That would be fine --

4              MR. PEINOVICH:  I -- sorry.  Sorry.

5              MS. KAPLAN:  I apologize.  No, I apologize,

6    Mr. Peinovich.  Go ahead.

7              MR. PEINOVICH:  I was just saying -- I wanted to say I'm

8    not trying to do this in bad faith.  Like, I will produce things.

9    I have things to produce.  And, you know, I had sent out to Chris

10   Greene, the last email to him, right now I'm working on revising

11   the response.  That will be -- I can't get -- I can't give you an

12   exact date, but soon.

13             MS. KAPLAN:  Well, I understand that they are to be at

14   least within a week.  And our responses, we provided very

15   substantive responses to the plaintiffs' interrogatories.  There

16   are, obviously, things that we think are irrelevant or have other

17   objections, and we're happy to discuss them.  But, you know,

18   Mr. Peinovich, like anyone, has the right to move if he disagrees.

19   But they are pretty -- as Your Honor will see, they are pretty

20   -- we gave them a lot of information.

21             THE COURT:  And, Mr. Peinovich, I'll say this, that

22   -- you know, at some point, you know, the parties have discussed

23   the issues enough that it does become -- the issue becomes mature

24   for the Court to consider.  But it frequently happens that after a

25   motion to compel is filed, the parties still end up working the

```
 1    dispute out.  Okay?  So just because the motion to compel is filed,
 2    doesn't mean that the meet-and-confer is -- it is somehow
 3    completely ended.  You can still continue to talk and try and work
 4    things out.  But it just means that it is -- you know, it is coming
 5    to the Court if it is not worked out and, you know, the issues are
 6    being presented to the Court for decision.
 7              MR. PEINOVICH:  Yeah.
 8              MS. KAPLAN:  My --
 9              MR. PEINOVICH:  Yeah, like I'm not --
10              MS. KAPLAN:  I apologize.  Please proceed.  I'm sorry.
11              MR. PEINOVICH:  I think there's some delay here.
12              But, yeah.  No, that's fine.  No -- yeah, I do have some
13    responsive documents and I plan on producing them.  The documents
14    aren't really the issue.  It is more the stuff with the consulting
15    attorney who I maintain has a right to anonymity here.  But, you
16    know, that's an issue that, I guess, is going to be before the
17    Court.  So that's all I have got, really.
18              THE COURT:  Okay.  Ms. Kaplan?
19              MS. KAPLAN:  One other issue, Your Honor.  My colleagues,
20    who are better lawyers than I, reminded me that we actually
21    -- since Mr. Jones isn't on the phone, we may indeed have some
22    issues with Mr. Jones, but we'll kind of take those up on the same
23    schedule.
24              THE COURT:  Okay.  All right.
25              And if there's -- if there's a need to have any
```

1  discussion with me relating to Mr. Jones -- and I would ask that

2  -- you know, if there are any issues, that you contact Karen, and

3  we can do a conference call with him as well.  I'm not sure why

4  he's not on the phone today, but I don't want to address anything

5  that would relate to his clients without him.

6          All right.  Well, is there anything else that we should

7  take up today?

8          MS. KAPLAN:  Nothing from the plaintiffs, Your Honor.

9          THE COURT:  Mr. Kolenich?

10         MR. KOLENICH:  Nothing, Your Honor.

11         THE COURT:  Mr. DiNucci?

12         MR. DiNUCCI:  Not from me, Your Honor.

13         THE COURT:  Mr. Campbell?

14         MR. CAMPBELL:  No, sir.

15         THE COURT:  All right.  Mr. Peinovich?

16         MR. PEINOVICH:  No -- no, Your Honor.

17         THE COURT:  Okay.

18         Well, what I'll do is ask Heidi to send you-all some

19  dates for the trial.  And once we get that in place, then I'll

20  issue a revised scheduling order that incorporates the deadlines in

21  the 26(f) report that are keyed from the trial date.  And I'll keep

22  an eye out for some of the motions that we have discussed today.

23         MS. KAPLAN:  Thank you, Your Honor.

24         THE COURT:  All right.  Thank you-all for calling in.

25  Have a good day --

1          MS. KAPLAN:  Oh --

2          THE COURT:  Yes, ma'am?

3          MS. KAPLAN:  Your Honor, one more thing I forgot to

4    mention.  It doesn't involve you directly, but, obviously, there

5    are motions to quash subpoenas that have been filed in other

6    jurisdictions pursuant to Rule 45.  And I assume Your Honor is

7    aware of those.  And we will be litigating those kind of in the

8    regular course.

9          THE COURT:  Okay.  I know I have seen one from the -- a

10   decision from the -- I think, the (inaudible) District in

11   Louisiana, but I haven't -- I have seen some of the others.

12         MS. KAPLAN:  Yeah, that's another motion in the Northern

13   District of California from a woman, I believe, whose name on

14   Discord -- or whose handle on Discord, believe it or not, was

15   kristall.night.  And she is objecting to production of any

16   information about her.  And we're litigating that there.

17         THE COURT:  Okay.  All right.  Thank you, Ms. Kaplan.

18         Well, if there's nothing else, then you-all take care and

19   have a good day.

20         UNIDENTIFIED VOICE:  Thank you, Your Honor.

21         MS. KAPLAN:  Thank you, Your Honor.

22         UNIDENTIFIED VOICE:  Thank you, Your Honor.

23      (Thereupon, these proceedings were adjourned at 4:17 p.m.)

24

25

1      I, court-approved transcriber, certify that the foregoing is a

2  correct transcript from the official electronic sound recording of

3  the proceedings in the above-entitled matter.

4

5          _____/s/ Carol Jacobs White_____    ___June 8, 2018___

6          Signature of Approved Transcriber            Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25