UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

**ELIZABETH SINES, ET AL.,**               Case No. 3:17-cv-00072-NKM

**Plaintiffs,**                             Hon. Norman K. Moon
 v.

**JASON KESSLER, ET AL.,**

 **Defendants.**

**DEFENDANT MICHAEL PEINOVICH'S (1) SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF HIS OBJECTIONS TO MAGISTRATE JUDGE'S MARCH 22, 2018 ORDER AND (2) EMERGENCY MOTION TO REQUIRE REMOVAL OF INFLAMMATORY AND PREJUDICIAL VIDEO POSTED BY ROBERTA KAPLAN**

Defendant Michael Peinovich, pro se, respectfully submits the following: (1) a supplemental memorandum in further support of his objections to Magistrate Judge Hoppe's order issued on March 22, 2018 denying Peinovich's motion to restrain Roberta Kaplan, Esq. and Kaplan and Company LLP from improper and unethical extrajudicial statements and for sanctions, and (2) an emergency motion to require Ms. Kaplan to remove an inflammatory and prejudicial video that she, or persons or entities under her control, posted to the Internet on or about June 21, 2018. Ms. Kaplan's posting of this jury-tainting video after the close of briefing in this matter, and -- disrespectfully to the Court -- while a decision from the Court was pending, has necessitated this supplemental memorandum and emergency motion.

# ARGUMENT

In brief summary, the subject of Peinovich's objections here encompasses Ms. Kaplan's unethical, multifaceted pretrial publicity campaign and her repeated efforts to undermine the rights of the defendants, including Peinovich, to a fair trial in this emotion-laden, controversial litigation. Ms. Kaplan's publicity campaign has included linking the defendants to Nikolas Cruz, a mass murderer; invoking the Jewish holiday of Purim to stir up religious antipathy toward the defendants; and attributing offensive social media posts by unknown persons to the defendants. Among the arguments Ms. Kaplan has proffered to justify her actions are that no ethical rules restrain her and that Peinovich has not shown that her publicity maneuvers have any tendency to reach the Western District of Virginia. Peinovich's briefs explain the fallacious nature of these arguments. Ms. Kaplan's outrageous June 21, 2018 video, posted to a Facebook page entitled "Now This Politics" (https://www.facebook.com/NowThisPolitics/videos/2114525281912284/) and to a similar Twitter account (https://twitter.com/nowthisnews/status/1009496855166705665) brings the fallacies of her arguments into even sharper relief and unmasks her true motives.

As noted in Peinovich's prior briefs, New York and ABA Ethical Rule 3.6 provide a limited safe harbor for pretrial publicity, allowing litigants to state "the claim, offense or defense and the identity of the persons involved . . . [and] information contained in the public record." Ms. Kaplan's June 21, 2018 video makes a mockery of that safe harbor. Plaintiffs' bogus legal theory is that the defendants can be held liable for civil rights conspiracy for "organizing" the Charlottesville rally, a rally which was permitted by this Court. Consequently, a critical factual issue under plaintiffs' theory, hotly contested by Peinovich, Spencer, and other defendants, is who were the "organizers" of the rally. But Ms. Kaplan in her video has resolved that issue for

2

the public.  She states unequivocally that Richard Spencer was an organizer;  she even shows a video clip of him standing in front of people, pointing to images on a wall.  The clip in question is from a public press conference held by Mr. Spencer well after August 12, and thus could not possibly show Mr. Spencer planning a secret conspiracy, despite the clear implication by Ms. Kaplan that this is precisely what it shows. The images Mr. Spencer is pointing to have not been admitted into evidence in this case, and have no chance of ever being so admitted.  Kaplan also lets the public know that other currently contested factual matters are not actually contested, simply because she says so:  Heather Heyer was murdered;  the defendants carefully planned the Charlottesville violence;   the defendants, i.e., all of them, including Peinovich and Spencer, coordinated what weapons to bring, what uniforms to wear, what commanders to follow, and who would be the targets of their "racially motivated violence." All of these matters are still before the Court, but Ms. Kaplan intentionally obscures this fact for the public, presenting her side of things as indisputable truth for which she is seeking just retribution.

     Ms. Kaplan's presentation is done against a background of sombre, spooky music and is interspersed with scenes of hooded klansmen marching and burning crosses. Featured prominently are shots of a man holding a Nazi swastika flag, yet this unnamed person is not a defendant in this case and there is no allegation of any connection between this man and any defendants. All of this is meant to lead the viewer to only one possible conclusion:  her client's claims are 100% valid;  the KKK Act prohibits exactly the kind of "conspiracy" that the defendants engaged in;  the defendants are evil, hateful, guilty people.  It bears emphasis in this regard that New York Rule 3.6 states: "A statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury . . .  and it relates to: (1)

3

the character, credibility, [or] reputation of a party . . . or the identity of a witness or the expected testimony of a party or witness . . . (5) information the lawyer knows or reasonably should know is likely to be inadmissible at trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial." Ms. Kaplan's video is hugely prejudicial by this standard or any other reasonable standard.

To demonstrate that the video's prejudicial effect is not merely theoretical, here is a small sample, in no particular order, of public comments left by Facebook and Twitter users after viewing it.

 **April Denise** Good, sue them into oblivion! Please. These people should be in prison and have no business walking among us.
Like · Reply · 1d  8

 **Vivian Vanegas** They are TERRORIST they need to be locked up w/o parole
Like · Reply · 21h

 **Jenelle Marie Soller** These people should be put in cages.
Like · Reply · 20h

 **Erick Towet** We need to take them to Guantanamo
Like · Reply · 5h

 **Hilda Sustaita** GO AFTER THEM B@$+@%&$!!!!!
Like · Reply · 23h

 **Estephania A. Loder** Call the exterminator 
Like · Reply · 2h

 **Shellie Balakin** Take all of their money. Every single penny.

Like · Reply · 1d  108

 **Sherrie Harrell** Thank you these groups need to be stopped they are terrorists organizations

Like · Reply · 1d

 **Farah Dormanesh** These weak soulless criminals the debe idea out of their soul every so e one them

Like · Reply · 1d

 **Robert Lake** The fact that they met in Trump Tower speaks volumes...

Like · Reply · 1d  1

 **Kerry Scaggs** Thank you for what you do. We count on laws to stop this outrage These so called AMERICANS do not belong here. Trump has released these demons into OUR civilized communities. Of course one of them holding a meeting in Trump Tower had nothing to do with Trump. WAKE UP AMERICA, you know this is wrong.

Like · Reply · 1d · Edited  104

 **Aimee Wireman** You don't get to be a nazi and a proud american. The two are mutually exclusive. Punching nazis is as American as baseball and apple pie.

Like · Reply · 1d  6

 **Randy Gill** Antifa will take care of them

Like · Reply · 1d  2





There are hundreds of other similar comments attached to the video. The vitriol of these comments, some of them calling for violence against the defendants, shows the poisonous effect it has, and will continue to have, on the public mood if it is allowed to remain. While these individuals are certainly free to express their opinions on Facebook and Twitter, no matter how distasteful or unhinged they might be, basic fairness would require that anyone who has made such comments be removed from a pool of potential jurors. Accordingly, the damage done to the jury pool by Ms. Kaplan's video is not speculative, it is a fait accompli. As of the date of this filing, neither Ms. Kaplan, nor any staff of Kaplan & Company LLP, nor any staff of "Now This Politics" have intervened to remove the violent content and threats associated with this video.

Notably some of the above commenters have taken at face value Ms. Kaplan's claim that a meeting at Trump Tower was held in order to plan violence, when no facts that would lend weight to this bare allegation have ever been presented. Kaplan's motives are made clear by the

prominent inclusion of this allegation in her propaganda video. Kaplan is a well known and vocal anti-Trump activist. She clearly intends to establish a "guilt by association" link in the minds of her viewers between President Trump and the defendants in this case, who she smears as violent Nazi terrorists, thus accomplishing two political goals at once with this bad faith SLAPP lawsuit.

The video also shows the fallacy of Ms. Kaplan's contention that her publicity campaign does not reach the Western District of Virginia. Within one day of being posted to Facebook, Ms. Kaplan's latest video outrage has been seen by over 500,000 viewers and shared by roughly 8,000 Facebook users. If not immediately removed, as it must be, that number will grow into the millions. Basic math dictates that at the very least tens of thousands of those viewers are residents of Western Virginia. Propaganda of this sort need not be directed exclusively at residents of Western Virginia in order for it to have the desired effect on them.

The logical conclusion of Ms. Kaplan's video is that she believes she is not subject to Rule 3.6, to any restrictions on her pretrial publicity campaign, or to any standards of ethical conduct whatsoever. This video is not only prejudicial to defendants, it is disrespectful to this Court, which Kaplan treats flippantly as merely a vehicle for her personal political agenda. As explained in Peinovich's earlier briefs, this Court has the inherent power to correct abuses by attorneys who appear before it. Ms. Kaplan must be reigned in or she will continue with her poisonous publicity war, ruining any chance defendants have of a fair trial.

Accordingly, Peinovich respectfully moves for an order from the Court requiring Ms. Kaplan to immediately remove the June 21, 2018 video and refrain from further violations of the ethical restrictions to which attorneys are subject as to pretrial publicity.

## CONCLUSION

For the reasons stated, Peinovich respectfully requests that the Magistrate's March 22, 2018 order be reversed, that Ms. Kaplan be instructed to cease her unethical and prejudicial extrajudicial statements as manifested by her actions described in Peinovich's initial motion and reply memorandum; and that Ms. Kaplan be ordered to remove immediately her June 21, 2018 video.

Dated: June 23, 2018.

Respectfully submitted,

Michael Peinovich, Pro Se

## CERTIFICATE OF SERVICE

On this 23rd day of June, 2018, I Michael Peinovich certify that I served electronically or mailed copies of this objection and memorandum to:

Christopher Greene <cgreene@kaplanandcompany.com>,
David Campbell <DCampbell@dhgclaw.com>,
Elmer Woodard <isuecrooks@comcast.net>,
James Kolenich <jek318@gmail.com>,
Bryan Jones <bryan@bjoneslegal.com>,
Roberta Kaplan <rkaplan@kaplanandcompany.com>,
Julie Fink <jfink@kaplanandcompany.com>,
Gabrielle Tenzer <gtenzer@kaplanandcompany.com>,
Seguin Strohmeier <sstrohmeier@kaplanandcompany.com>,
Alan Levince <alevine@cooley.com>,
Karen Dunn <KDunn@bsfllp.com>,
Philip Bowman <pbowman@bsfllp.com>,
John DiNucci <dinuccilaw@outlook.com>,
David Mills <dmills@cooley.com>,
Joshua Libling <jlibling@bsfllp.com>

_____

Michael Peinovich