UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **ELIZABETH SINES, ET AL.,** | Case No. 3:17-cv-00072-NKM |
| **Plaintiffs,** | Hon. Norman K. Moon |
| v. | |
| **JASON KESSLER, ET AL.,** | |
| Defendants. | |

**DEFENDANT MICHAEL PEINOVICH'S REVISED OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Defendant Michael Peinovich, Pro Se, in accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, submits the following revised responses and objection to Plaintiffs' Second Set of Interrogatories.

**PRELIMINARY STATEMENT**

1. Peinovich's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, his right to rely on other facts or documents at trial.

2. By making the accompanying responses and objections, Peinovich does not waive, and hereby expressly reserves, his right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Peinovich makes the responses and objections herein without in any way implying that he

considers the interrogatories and his responses relevant or material to the subject matter of this action.

3. Peinovich reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

4. Peinovich will make his responses, if any is required in light of his objections, available only after agreement with plaintiffs' counsel as to the application of the parties' confidentiality agreement to the responses. Agreement on the confidentiality agreement is particularly critical in light of the open and avowed intentions of persons and groups linked to and including plaintiffs to harass, doxx, and intimidate Peinovich and anyone else who these persons or groups perceive as remotely associated with or sympathetic to Peinovich.

## GENERAL OBJECTIONS

1. Peinovich objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2. Peinovich objects to each interrogatory that is overly broad, unduly burdensome, seeks information not relevant to any party's claim or defense, or, assuming relevance, seeks information that is not proportional to the needs of the case, the importance of the issues at stake, the parties' resources, the parties' relative access to relevant information, the importance of discovery in resolving the issues, and the burden and expense of the discovery when compared to its likely benefit.

3. Peinovich objects to each instruction, definition, and interrogatory to the extent it seeks documents protected from disclosure by the attorney client privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Peinovich occur, it is inadvertent and shall not constitute a waiver of any privilege.

4. Peinovich objects to each instruction, definition, and interrogatory to the extent it calls for production of a privilege log. As will be further explained, plaintiffs are improperly seeking to use inquiries into Peinovich's communications and relationships with attorneys, inquiries which have no prospect to leading to discoverable evidence, to undermine and prevent such communications and relationships. As plaintiffs are aware, Antifa organizations, with which plaintiffs closely cooperated in the Events described in plaintiffs' complaint, openly proclaim their intentions to harass and incite violence against attorneys who represent persons toward whom Antifa has antipathy. See, e.g., https://torchantifa.org/?p=687.

5. Peinovich incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Peinovich does not waive his right to amend his responses.

**PEINOVICH'S OBJECTIONS AND RESPONSES**

**PLAINTIFFS' INTERROGATORY NO. 5 (FROM SECOND SET):**

Identify the name, address, email address, educational and professional background (including whether they have graduated from or are currently attending law school), and relationship to you of any person who assisted or advised you in preparing, including

conducting legal research for, drafting, or commenting on drafts of, or with whom you shared or exchanged drafts in advance of filing with the Court, each of the Court Filings.

**PEINOVICH'S RESPONSE:**

This interrogatory seeks information not relevant to any party's claim or defense, and Peinovich objects to it on this ground. Moreover, even assuming, contrary to fact, the information sought by the interrogatory had some remote relevance, it is not proportional to the needs of the case, the parties' relative access to relevant information, the importance of the issues at stake, the importance of discovery in resolving the issues, and the burden and expense of the discovery when compared to its likely benefit, which is zero.

At least one of the plaintiffs in this case, Seth Wispelwey, and undoubtedly many of the others, are closely linked to Antifa and other groups who openly proclaim their intentions to threaten and harm others and to disregard the law. The following is a quotation from page 72-73 of the November 24, 2017 Independent Review of the 2017 Protest Events in Charlottesville, Virginia prepared by Timothy Heaphy of Hunton and Williams (the "Heaphy Report") (linked here: http://apps.washingtonpost.com/g/documents/local/report-reviewing-protest-related-events-in-charlottesville/2654/):

> Led by Seth Wispelwey and Brittany Caine Conley, these individuals formed a new group called Congregate Charlottesville. Wispelwey told us that the Clergy Collective was too close to the City "establishment" and lacked transparency. He explained that Congregate Charlottesville's goal was to "equip faith leaders to show up on matters of justice." They put out a call for 1,000 clergy to attend the August 12 event. In the weeks leading up to August 12, Congregate organized a series of trainings for nonviolent direct action to anyone who was interested in participating. They brought in trainers from out of town, including Reverend Osagyefo Sekou. We learned that some trainings were attended by as many as 100 people, and participants were repeatedly warned about the potential for significant violence on August 12. Members of Black Lives Matter and Standing Up for Racial Justice also attended the trainings.
>
> Individuals who attended these trainings told us that their goal was to create "cognitive dissonance" and to delay and obstruct the hate speech that they expected. They wanted to be visible in the

opposition to the right wing groups and make it harder for them to have a platform to express racism. In service of that mission, they were willing to break the law and expected to be arrested.

Mr. Wispelwey has been particularly emphatic in his support for Antifa's tactics. The following is an excerpt from an article dated August 17, 2017 by "Crimethinc.Ex-Workers Collective" [an Antifa publication] entitled "Why We Fought in Charlottesville: A Letter on the Dangers Ahead"  (linked here in its entirety: https://itsgoingdown.org/fought-charlottesville-letter-dangers-ahead/):

> I am one of the thousands of people who confronted Nazis and white supremacists in Charlottesville, Virginia last weekend. I am a blue-collar person, with a job, family, and responsibilities. I would have preferred to do other things with my weekend. However, I had to ask myself: *If these people are allowed to run roughshod over this town, what will they do next?*
>
> \* \* \* \* \*
>
> No, I did not behave peacefully when I saw a thousand Nazis occupy a sizable American city. I fought them with the most persuasive instruments at hand, the way both my grandfathers did. I was maced, punched, kicked, and beaten with sticks, but I gave as good as I got, and usually better. Donald Trump says that "there was violence on both sides." Of course there was.
>
> \* \* \* \* \*
>
> Permit me to quote a post from a clergyperson in Charlottesville at length, because it correctly explains what happened on Saturday morning, and why. There are countless other narratives like it online.
>
> *"A note on the Antifa:*
> *They are the reason Richard Spencer did not speak today. They are the reason the "Unite the Right" march didn't happen. They strategically used violent tactics to incite the Nazis to violence, such that the governor declared a state of emergency before noon. Before the "Unite the Right" rally was scheduled to begin.*
> *One could argue this meant Nazis dissipated into the streets faster making it less safe, but let's be real: Nazis have been making these streets less safe for a long time. They would have been out and about soon enough with or without the antifa.*
> *I was with a group of clergy committed to non-violence today. We did our part. We bore witness to the pain and hatred in this city. We provided pastoral care/support as needed, especially during traumatic violent acts. This was our determined role going into today. Yes, some clergy risked injury and arrest to stop the Nazis. They formed a blockade at the entrance, but they were*

> *overpowered by the Nazis. The police did not view us as threatening enough to shut things down, because again, we were no there to threaten.*
> *The antifa strategically incited enough violence before noon to make the police declare it illegal to gather in Emancipation Park. Through this strategic violence they effectively made a previously legally permitted Nazi rally, illegal.*
> *We may not agree with each others tactics. We may have had different goals, but if you're looking to praise people specifically for shutting down the "Unite the Right" rally, praise/thank the antifa. Not the clergy and not the police."*

The "clergyperson in Charlottesville" – almost certainly Mr. Wispelwey – thus "praise[s]/thank[s]" the Antifa for their "strategic violence" in making "a previously legally permitted Nazi rally, illegal" and for forming a blockade to prevent the pro-monument protestors from exercising their rights, affirmed by an injunction issued by the same Court this lawsuit was filed in, to demonstrate.

The Antifa that plaintiff Wispelwey so effusively praises and thanks have openly declared their willingness to threaten and physically harm attorneys who represent persons, such as Peinovich, whom Antifa label as neo-Nazis.  *See, e.g.,* https://torchantifa.org/sacramento-attorney-danny-brace-defends-neo-nazi-william-planer/.  This attached article describes how Antifa put out a "Neighborhood Safety Alert" about an attorney named Danny Brace, whom the Antifa describe as a "scumbag attorney for Neo-Nazis" and as "Dump Truck Dan."  The "Neighborhood Safety Alert" has Mr. Brace's photograph, address, and telephone number, and states: "Dump Truck Dan has taken the money of neo-Nazis and is providing legal services to them, enabling their hateful actions.  He is not welcome in this neighborhood."  The article further states:

> It is unacceptable that Brace is accepting the money of Neo-Nazis and White Nationalists in exchange for defending a known white supremacist, especially one who has attacked anti-racist protesters and sent them to the hospital. These actions cannot go unopposed. Help us spread the

6

word about Brace, who he is funded by, and the kinds of people he likes to defend- you can leave reviews of Danny Brace and Brace Law on Yelp, Google, and Yellow Pages. His law firm is located at 901 H St, suite 500, Sacramento CA, 95814, the office phone number is (916) 447-0592, and Danny Brace's email is dbrace@bracelaw.com. Feel free to get in touch with him and let him know how you feel about him accepting the money of white supremacists and defending a violent Neo-Nazi.

In other words, according to Antifa, "it is unacceptable" that anyone they label a "neo-Nazi" should have legal representation, and they will threaten, harass, and even physically harm any attorney who tries to provide it. These are the people whose tactics plaintiff Wispelwey not only condones but praises. It bears emphasis that "it is unacceptable" ultimatums from Antifa are serious and credible threats. Antifa has a long history of violence and intimidation and has been described as a domestic terrorist organization by Homeland Security. https://www.politico.com/story/2017/09/01/antifa-charlottesville-violence-fbi-242235.

Because of the credible threats of Antifa and for other reasons, Peinovich has found it difficult to find a lawyer licensed in Virginia with expertise in First Amendment litigation who will enter his or her appearance in this case on his behalf. He is, accordingly, proceeding pro se, as he has a right to do. Although proceeding pro se, he has consulted with an attorney with respect to the pleadings he has filed in this Court and the First Amendment and other issues they raise. This fact has been obvious. There is nothing unethical about this. *See, e.g.*, American Bar Association Formal Opinion 07-446; Blake George Tanase, *Give Ghosts a Chance: Why Federal Courts Should Cease Sanctioning Every Legal Ghostwriter,* 48 Ga. L. Rev. 661 (2014)

Plaintiffs are represented by over a dozen big firm lawyers. Peinovich, by contrast, is proceeding pro se. But even plaintiffs' enormous advantage in legal resources is not enough for them. They want to prevent Peinovich from having any legal assistance at all by exposing Peinovich's consulting lawyer to threats and intimidation from Antifa and thus preventing

7

Peinovich from obtaining even this limited degree of legal assistance. There is no reasonable prospect that plaintiffs' interrogatory will lead to relevant or proportionate information. Plaintiffs have no right to know the identity of Peinovich's consulting attorney or to see the drafts or legal advice Peinovich shared with his consulting attorney. The tactical and harassment motives prompting plaintiffs' interrogatory are plain.

Dated: June 11, 2018

I Michael Peinovich declare under penalty of perjury that the foregoing is true and correct.

Michael Peinovich