UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

SINES, et al.,                           :
                                         :
    Plaintiffs,                          :
                                         :
    vs.                                  : Case No. 3:17-cv-00072-NKM
                                         :
KESSLER, et al.,                         :
                                         :
    Defendants.                          :

**DEFENDANT SPENCER'S OPPOSITION TO MOTION TO COMPEL
INSPECTION AND ELECTRONIC IMAGING OF ELECTRONIC DEVICES**

### I.  Introduction

Defendant Richard B. Spencer (Mr. Spencer) hereby opposes Plaintiffs' Motion to Compel Defendants to Permit Inspection and Imaging of Electronic Devices.

### II.  Facts

The First Amended Complaint identifies only four (4) alleged electronic communications[1] by Mr. Spencer.

The other allegations about electronic communications contained in the First Amended Complaint do not identify Mr. Spencer; they either identify other Defendant alone or merely refer to the defendants collectively.

In addition, although the First Amended Complaint identifies "Discord" as the principal electronic communications

---

[1] They are text messages, instant messages or e-mails that are alleged at Pars. 52, 166, 194, and 260. Of those, one was to a reporter on August 11 (Par. 52), two (2) were also on August 11 (Pars. 166 and 184) and one (1) was on August 12 (Par. 260).

1

"platform" through which alleged co-conspirators exchanged messages, it does not in any way, shape or form alleged that Mr. Spencer used Discord as a medium of communication.[2]

Indeed, at the hearing before Judge Moon on May 24, 2018, lead counsel for Plaintiffs conceded that Plaintiffs had not found a single communication by Mr. Spencer on Discord.[3]

On April 18, 2018, Mr. Spencer served Plaintiffs' counsel with his Objections and Responses to Plaintiffs' First Request for Documents (hereinafter the "Response").[4] The Response consisted of 79 pages, of which 1 page was a cover page, 3 pages were objections and 75 pages were responses.

Mr. Spencer produced, *inter alia*, some 37 pages of electronic communications and 17 pages of "links" to other electronic communications.

At no time have Plaintiffs filed any motion to compel based on any alleged deficiency in Mr. Spencer's Response.

Instead, Plaintiffs have filed the instant Motion, arguing that they believe Mr. Spencer possesses additional responsive communications and that he did not produce the referenced electronic communications in the format they requested.

---

[2] First Amended Complaint at Par. 71.
[3] Transcript of Motions to Dismiss (5/24/18) at pp. 60, 63 at (Docket Entry 321).
[4] The Response -- although not the responsive documents -- are attached to the Motion as Exhibit 18. (Document ID Nos. 3274-3287). The actual document production is attached hereto as Exhibits 1 through 5.

2

### III. Argument

*A. There is No Need for Imaging of Mr. Spencer's Devices.*

*1. Plaintiffs Do Not Allege Any Misconduct by Mr. Spencer.*

*a. Mr. Spencer's Document Production Has Been Adequate.*

Plaintiffs argue that imaging of Mr. Spencer's electronic devices is warranted because "Defendants' document production has been inadequate."[5] Plaintiffs' basis for this assertion against Mr. Spencer appears to be the contentions set forth in Plaintiffs' Exhibit 18, a letter, dated May 10, 2018, from Plaintiff's counsel to Mr. Spencer, in which letter Plaintiffs state that they have various reasons to believe that Mr. Spencer did not produce all responsive documents or things.

For example, Plaintiffs contend that: (1) although they received from other Defendants copies of various documents that are responsive to the request to Mr. Spencer, Mr. Spencer himself did not produce his copies thereof;[6] (2) Mr. Spencer's Response identified things he was producing that were not, in fact, produced;[7] and (3) Plaintiffs themselves are aware of (and

---

[5] Motion at p. 8 (Docket Page No. 3176).
[6] Exhibit 18 at Docket Page Nos. 3311-3312. Nowhere do Plaintiffs specifically identify those documents and nowhere do they explain their purported materiality and how their "absence" from Mr. Spencer's production suggests that he is purposefully withholding responsive documents.
[7] Exhibit 18 at Docket Page Nos. 3311-3312. Plaintiffs have not filed a motion to compel production of those things.

3

presumably have in their possession) various other responsive documents or things.[8]

Yet, Mr. Spencer's Response consists of 79 pages, of which 75 pages contain actual responses and copies of and/or links to responsive documents. Of those 75 pages, some 37 pages consist of electronic communications and 17 pages consist of links to other electronic communications. The totality of Mr. Spencer's response and production make manifest that he is acting in good faith; and the fact that, as evidence of inadequacy, what Plaintiffs point to are documents in the possession of other parties or in the public realm evidences that Mr. Spencer is not hiding things. These circumstance suggest nothing more than the normal "inefficiencies" in discovery.

If, as Plaintiffs suggest (but do not demonstrate), Mr. Spencer has additional responsive documents (not previously identified), the appropriate recourse is a motion to compel production and entry of an appropriate order that would not saddle Mr. Spencer with the sort of costs associated with imaging.[9]

---

[8] Exhibit 18 at Docket Page Nos. 3311-3312. If, as is indicated by Plaintiffs' references to the "missing" things, Plaintiffs already possess them or have access to others because they are publicly available, one questions why imaging is needed.
[9] Plaintiffs do note that, in his Response, Mr. Spencer identified various documents or things as having been produced, but that they were not, in fact, produced. Counsel will address this defect with Mr. Spencer and remedy any defect.

4

*b. Mr. Spencer Has Not Threatened to Destroy Evidence.*

Plaintiffs argue that imaging of Mr. Spencer's electronic devices is warranted because "Defendants threatened to destroy and withhold relevant evidence."[10]

Yet, although Plaintiffs recite threats by Defendant Parrott to destroy evidence, they do not cite any alleged such threats by Mr. Spencer.[11]

*2. That Plaintiffs Allege Electronic Communications Among Defendants Is Not Sufficient to Warrant Requiring Mr. Spencer to Submit His Devices to Imaging.*

Plaintiffs argue that "[i]maging of Defendants' electronic devices is warranted because electronic communications among the Defendant and their co-conspirator are a key factual component of this litigation."[12] In so arguing, Plaintiffs reference Paragraphs 68 through 142 of their First Amended Complaint and the fact that, although certain Defendants, used cell telephones to communicate, they did not produce any text messages.[13]

Plaintiffs do make broad allegations that Defendants communicated through electronic means in Paragraphs 68 through 142 of the Amended Complaint, but their allegations that Mr. Spencer so communicated are extremely limited.

---

[10] Motion at p. 8 (Docket Page No. 3176).
[11] Motion at p. 5 (Docket Page No. 3173).
[12] Motion at p. 10 (Docket Page No. 3178).
[13] Motion at pp. 10-11 (Docket Page Nos. 3178-3179).

5

For example, in only a limited number of those paragraphs do Plaintiffs identify Mr. Spencer and, indeed, in only a handful do they allege transmission of any electronic communication by Mr. Spencer.

Indeed, although Plaintiffs allege that "[o]ne Internet tool Defendants used extensively to plan and direct illegal acts was the chat platform Discord,"[14] they do not allege and cannot allege that Mr. Spencer communicated through that platform.[15]

Moreover, although Plaintiffs complain that Defendants Damigo, Heimbach, Hill, Parrott, Ray, Schoep, Tubbs, and Vanguard America have not produced any text messages, they do not make any such allegation about Mr. Spencer. As noted above, Mr. Spencer has produced many text messages.

### B. There is No Need for Metadata.[16]

#### 1. Much, If Not All, of the Information Plaintiffs Seek is in Their Possession or Otherwise Available to Them Through Other, Less Expensive Means.

---

[14] First Amended Complaint at Par. 71. A fair reading of the First Amended Complaint indicates that, in Plaintiffs' view, Discord was -- overwhelmingly -- the principal means of communication among all Defendants (except Mr. Spencer).

[15] At the hearing before Judge Moon on May 24, 2018, lead counsel for Plaintiffs conceded that Plaintiffs (who, in the First Amended Complaint) extensively refer to specific communications through Discord, had not found a single communication by Mr. Spencer on Discord. Transcript of Motion to Dismiss (5/24/18) (Docket Entry 321).

[16] Plaintiffs argue that Mr. Spencer "waived any objection to producing documents with metadata because [he] failed to timely object. Motion at p. 12 (Document ID No. 3180). Mr. Spencer did, however, object to "each instruction, definition and document request to the extent it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure ..." (Response at p. 3 [Exhibit 14 at Document ID No. 3274]). Mr. Spencer submits that, given that Rule 34 does not affirmatively state that a responding party must produce documents in such a form that metadata is revealed, this objection was sufficient to preserve an objections to production of metadata.

Plaintiffs cannot justify the proposed intrusion and burden on Mr. Spencer given that much, if not all of the information they seek is already in their possession or readily available to them by other means.

Plaintiffs complain as follows:

> Virtually none of the documents produced by Defendants contain metadata -- such as sender, recipient and date sent -- for the files provided. Virtually none of the documents produced by Defendants contain metadata -- such as sender, recipient and date sent -- for the files provided.[17]

Yet, Plaintiffs already have such information in their possession -- in Mr. Spencer's Response.

For example, pages 15 through 41 of Mr. Spencer's Response set forth numerous "iMessages" between Mr. Spencer and alleged co-conspirators -- and set forth dates of the communications, identify participants in the communications and contain the content of the communications.[18]

Similarly, pages 42 through 49 of the Response set forth various e-mails between Mr. Spencer and alleged co-conspirators -- and set forth dates thereof, identify authors thereof and recipient and set forth attachments.[19]

Similarly, too, pages 53 through 68 of Mr. Spencer's Response set forth numerous "tweets" or "retweets" by Mr.

---

[17] Motion at p. 4 (Document ID No. 3172).
[18] *See* Defendant's Exhibit 1 attached hereto.
[19] *See* Defendant's Exhibit 2 attached hereto.

7

Spencer -- and set forth the dates of the communications, identify him as the author and provide the "link" to the tweets.[20]

In short, there is no need to for imaging by any third party.[21]

    C. *If the Court Orders Generalized ESI Imaging by a Third-Party Vendor, Plaintiffs Should Bear the Cost.*

  1. *Miscellaneous Factors Bearing on Allocation of Cost*[22]

    a. *Plaintiffs' Requests Are Vague and Overbroad.*

Various of Plaintiffs' requests are overbroad and vague. *See, e.g.,* Request No. 4 (documents "concerning violence, intimidation or harassment of Person on the basis of race, religion or ethnicity ..."); Request No. 6 ("[a]ll documents concerning and communications concerning or with any Plaintiff or Defendant ...").

    b. *Likelihood of Finding Relevant Information*

As argued above, Plaintiffs have not demonstrated that imaging likely will lead to discovery of relevant information.

  c. *Any Information Sought Can Be Derived From Other Sources.*

---

[20] *See* Defendant's Exhibit 4 attached hereto.
[21] If the Court determines that Plaintiffs are entitled to production of such documents in "native format," it should order that Mr. Spencer produce them in such format and not that he submit his electronic devices to a third-party vendor for generalized imaging.

[22] Mr. Spencer notes that this analysis with respect to the costs of third-party imaging also applies to the issue whether third-party imaging is warranted at all.

8

The documents of Mr. Spencer to which Plaintiffs refer are available from other sources that are readily accessible to Plaintiffs.

For example, publications by Mr. Spencer are publicly available.[23] So, too, are "tweets" or "re-tweets"[24] and any on-line videos by Mr. Spencer.[25]

  d. *Plaintiffs Have Not Made any Showing of Relative Benefit.*

Plaintiffs have not made any concrete showing of any tangle benefit to them of third-party imaging of Mr. Spencer's electronic devices. For example, as argued above, Plaintiffs do not even argue that Mr. Spencer has threatened to destroy or has destroyed evidence; nor have they demonstrated any likelihood that there is further responsive information.

 e. *The Cost of Imaging is Much More Easily Borne by Plaintiffs.*

   1. *Plaintiffs, Whose Case is Being Financed by a Well-Funded Charity, Will Not Sustain Any Economic Hardship.*

Plaintiffs, Mr. Spencer believes, are not paying for legal representation.[26] Instead, as stated in a press release issued on October 12, 2017 by an organization called "Integrity First for America," this lawsuit is being financed by that

---

[23] Exhibit 18 at Document No. 3312.
[24] *See* Response at pp. 53-68).
[25] Exhibit 18 at Document No. 3311.
[26] Plaintiffs are represented by two of the largest and most powerful law firms in the United States and by a smaller, but equally prestigious law firm. It beggars the imagination to think that Plaintiffs are paying any legal fees.

9

organization.[27] And one source of funds that Integrity First for America uses to finance this lawsuit is on-line contributions by donors.[28]

Thus, there would be no economic hardship imposed on Plaintiffs if the Court did not impose on Mr. Spencer the costs of any third-party imaging.

    *2. Economic Hardship to Mr. Spencer[29]*

If Mr. Spencer is constrained to pay for imaging by a third-party vendor, he would have to divert his economic resources from maintaining legal counsel[30] to hiring an information technology (IT) expert whose function would be to provide Plaintiffs with information they already have.

---

[27] The referenced press release can be found at the following hyperlink: https://www.integrityfirstforamerica.org.

[28] *See* https://secure.givelively.org/donate/integrity-first-for-america.

[29] Mr. Spencer recognizes that a party objecting to production on the grounds of burdensomeness ordinarily is required to provide specific information about the nature and degree of the burden. To date, however, the undersigned counsel has been unable to consult with any third-party imaging vendor about costs. One well-respected vendor recommended by a colleague of counsel in the Northern Virginia bar indicated he has a conflict of interest because he is providing services to two of the law firms representing Plaintiffs. In addition, other two vendors that counsel contacted have not responded to his inquiries.

Mr. Spencer respectfully submits that the Court should not require him to provide the ordinary substantiation of burdensomeness given that the cost of third-party imaging simply is not known to him or counsel.

Counsel is also concerned that, because of the politically charged nature of this case, it might prove impossible to find a third-party vendor willing to assist in this matter.

[30] It is important to note that Mr. Spencer is defending against not only this lawsuit, but also a lawsuit brought in the Circuit Court for the City of Charlottesville by two other alleged victims of the events of August 12, 2017. *See Tadrint Washington, et al. vs. James A. Fields, et al.*, CL No. 17-442.

Case 3:17-cv-00072-NKM-JCH Document 355 Filed 10/16/18 Page 10 of 14 Pageid#: 3349

### III. Conclusion

For the foregoing reasons and those to be advanced at oral argument, the Motion should be denied.

Alternatively, if the Court orders electronic imaging, it should not enter the Stipulation and Order submitted by Plaintiffs but should make various material modifications to it (which modifications Mr. Spencer will detail at oral argument).[31]

Respectfully submitted,

/s/ John A. DiNucci
John A. DiNucci (VSB No. 29270)
8180 Greensboro Drive
Suite 1150
McLean, Virginia 22102
tel.: (703) 821-4232
fax:  (703) 790-9863
e-mail: dinuccilaw@outlook.com

---

[31] Such modifications include requiring Plaintiff to pay for imaging, providing Mr. Spencer much more time than set forth in the proposed order for accomplishing any imaging and permitting defense counsel to review the results of the imaging not only for privilege, but also for relevance. (Counsel will further confer with Plaintiffs' counsel about these.)

11

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 16, 2018, I filed the foregoing Opposition with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including the following:

>Philip M. Bowman, Esq.
>Boies, Schiller Flexner, LLP
>575 Lexington Avenue
>New York, New York 10022
>
>Robert T. Cahill, Esq.
>Cooley, LLP
>11951 Freedom Drive
>14th Floor
>Reston, Virginia 20190
>
>Roberta Kaplan, Esq.
>Kaplan & Company, LLP
>350 Fifth Avenue
>Suite 7110
>New York, New York 10118
>
>Karen L. Dunn, Esq.
>Boies, Schiller, Flexner, LLP
>1401 New York Avenue. N.W.
>Washington, D.C. 20005
>
>Alan Levine, Esq.
>Cooley, LLP
>1114 Avenue of the Americas
>46th Floor
>New York, New York 10036
>
>David E. Mills, Esq.
>Cooley, LLP
>1299 Pennsylvania Avenue, N.W.
>Suite 700
>Washington, D.C. 20004

David Campbell, Esq.
Duane, Hauck, Davis & Gravatt
100 West Franklin Street
Suite 100
Richmond, Virginia 23220

Bryan Jones, Esq.
106 West South Street
Suite 211
Charlottesville, Virginia 22902

Elmer Woodard, Esq.
5661 U.S. Highway 29
Blairs, Virginia 24527

James Edward Kolenich, Esq.
9435 Waterstone Boulevard
Suite 140
Cincinnati, Ohio 45429

Lisa M. Lorish, Esq.
Federal Public Defenders Office
Western District of Virginia
40 East Market Street
Suite 106
Charlottesville, Virginia 22902

I also certify that, on October 16, 2018, I served the following persons with a copy of the foregoing Opposition by mail, first-class, postage-prepaid:

Loyal White Knights of the Ku Klux Klan
c/o Chris and Amanda Baker
P.O. Box 54
Pelham, North Carolina 27311

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, Ohio 43085

Andrew Anglin
P.O. Box 208
Worthington, Ohio 43085

13

East Coast Knights of the Ku Klux Klan
26 South Pine Street
Red Lion, Pennsylvania 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, California 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, Florida 32824

                                /s/   John A. DiNucci
                                John A. DiNucci
                                8180 Greensboro Drive
                                Suite 1150
                                McLean, Virginia 22102
                                tel.: (703) 821-4232
                                fax:  (703) 790-9863
                                e-mail: dinuccilaw@outlook.com