<pre>
 1
 2                 IN THE UNITED STATES DISTRICT COURT
 3               FOR THE WESTERN DISTRICT OF VIRGINIA
 4                      CHARLOTTESVILLE DIVISION
 5
 6   ELIZABETH SINES, et al,        )
                                    )
 7               Plaintiffs,        )   Civil Case No.
                                    )   3:17cv00072-NKM-JCH
 8   vs.                           )
                                    )
 9   JASON KESSLER, et al,          )
                                    )
10               Defendants.        )
11   _____
12
13           TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING
             HONORABLE JUDGE JOEL C. HOPPE PRESIDING
14                 TUESDAY, FEBRUARY 12, 2019
15   _____
16
17
18
19
20
21
22
23
24
25   Proceedings recorded FTR and transcribed using Computer-Aided
     Transcription
</pre>

1                          **A P P E A R A N C E S**

2

On behalf of Plaintiffs Elizabeth Sines, Seth Wispelwey,
3    Marissa Blair, Tyler Magill, April Muniz, Hannah Pearce,
Marcus Martin, John Doe, Natalie Romero, and Chelsea Alvarado:
4
                **Gabrielle E. Tenzer,** Esquire
5               Kaplan & Company, LLP
                350 Fifth Avenue, Suite 7110
6               New York, NY 10118

7               **Christopher Bradford Greene,** Esquire
                Kaplan & Company, LLP
8               350 Fifth Avenue, Suite 7110
                New York, NY 10118
9
                **Jessica E. Phillips,** Esquire
10              Boies Schiller Flexner, LLP
                1401 New York Avenue, NW
11              Washington, DC 20005

12              **Alan Levine,** Esquire
                Cooley LLP
13              1114 Avenue of the Americas, 46th Floor
                New York, NY 10036
14
                **Michael Low Bloch,** Esquire
15              Kaplan Hecker & Fink LLP
                350 Fifth Avenue, Suite 7110
16              New York, NY 10118

17   On behalf of Defendants Jason Kessler, Christopher Cantwell,
Vanguard America, Andrew Anglin, Moonbase Holdings, LLC,
18   Robert Azzmador Ray, Nathan Damigo, Elliot Kline, also known
as, Eli Mosely, Identity Evropa, Matthew Heimbach, Matthew
19   Parrott, also known as David Matthew Parrott, Traditionalist
Worker Party, Michael Hill, Michael Tubbs, Jeff Schoep,
20   National Socialist Movement, Nationalist Front, Augustus Sol
Invictus, Fraternal Order of the Alt-Knights, Michael Enoch
21   Peinovich, Loyal White Knights of The Ku Klux Klan, East Coast
Knights of The Ku Klux Klan, also known as East Coast Knights
22   of The True Invisible Empire, and Natalie Romero:

23              **James Edward Kolenich,** Esquire
                Kolenich Law Office
24              9435 Waterstone Blvd., Suite 140
                Cincinnati, OH 45249
25

1                    **A P P E A R A N C E S** cont'd

2     On behalf of Richard Spencer:
              **John A. DiNucci,** Esquire
3             Law Office of John A. DiNucci
              8180 Greensboro Drive, Suite 1150
4             McLean, VA 22102

5     On behalf of League of the South:
              **Bryan Jeffrey Jones,** Esquire
6             Bryan J. Jones, Attorney at law
              106 W. South Street, Suite 211
7             Charlottesville, VA 22902

8     On behalf of James Fields:
              **David Leon Campbell,** Esquire
9             Duane, Hauck, Davis & Gravatt, P.C.
              100 West Franklin Street, Suite 100
10            Richmond, VA 23220

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SINES v. KESSLER; 3:17cv00072-NKM-JCH                    4

```
 1         (Telephonic proceedings commenced at 12:31 p.m.)
 2         THE COURT:  Hi, this is Joel Hoppe.  Who is on the
 3   line for the plaintiff?
 4         MS. TENZER:  Good afternoon, Your Honor.  This is
 5   Gabrielle Tenzer at Kaplan Hecker & Fink on behalf of the
 6   plaintiffs.  I'm here with my colleague Chris Greene.  And I
 7   believe there are others on the phone on behalf of plaintiffs
 8   who are dialed in from other locations.
 9         MS. PHILLIPS:  Hi, Your Honor.  This is Jessica
10   Phillips from Boies Schiller Flexner, I'm also on the line for
11   plaintiffs.
12         MR. LEVINE:  And Alan Levine from Cooley,
13   Your Honor, along with Michael Bloch from Kaplan Hecker &
14   Fink.
15         THE COURT:  All right.  Good afternoon, you all.
16         And then who do we have on the line for the
17   defendants?
18         Mr. Kolenich, are you on the phone?
19         MR. KOLENICH:  Yes, sir, I'm with Mr. Kessler and
20   various other defendants.
21         THE COURT:  All right.  How about Mr. DiNucci?
22         MR. DINUCCI:  I'm here, Your Honor, for Mr. Spencer.
23         THE COURT:  All right.  And let's see, who else do
24   we have on the line?
25         MR. JONES:  Bryan Jones here for League of the
```

1    South.

2            THE COURT:  All right.

3            MR. CAMPBELL:  Good afternoon, Judge.  This is Dave

4    Campbell for James Fields.  Just jumped on here a little late.

5            THE COURT:  Okay.  Well we were just figuring out

6    who's on the phone, so you haven't missed anything.

7            All right.  Anyone else on the line?

8            Okay.  Counsel, this call is being recorded by the

9    court's FTR system, so there is a record of the call.

10           And as I understand it, Ms. Tenzer, from your

11   e-mail, there's some deadlines that you would like to have set

12   so that discovery can move forward and come to a completion in

13   very short order, recognizing that we're really about two

14   months away from the close of discovery.

15           MS. TENZER:  Yes, Your Honor.  Thank you.

16           If it's okay, I'll sort of lay out for the Court

17   where things stand and the issue at hand.  I think it's pretty

18   straightforward.  As you know, the Court ordered the

19   collection and imaging and production of ESI from the

20   defendants' devices and social media accounts.  And as part of

21   that stipulation and order, the parties were to enter into a

22   contract with a third-party vendor as the first step in that

23   process.  We sent the draft contract to the defendants at the

24   end of December.  It's now almost mid-February and we still

25   don't have an executed contract.  So that's the first order of

1    business.

2         But due to the challenges of getting the contract in

3    place, we're, you know, equally if not more concerned about

4    what will ultimately happen once the contract is, in fact, in

5    place.  In order to go through this process, the vendor is

6    going to need actual physical access to the defendants'

7    devices; their phones, their computers.  They're going to need

8    credentials so that they can access those devices, as well as

9    their social media accounts.  And based on the length of time

10   it has been taking to get even just the contract in place,

11   we're very, very concerned with how the rest of the process is

12   going to move forward.

13        Just to give Your Honor a sense, we understand from

14   the vendor that even once the contract is signed and they have

15   access to the accounts and the devices, it's probably going to

16   take them, you know, assuming everything actually goes

17   smoothly, about a month on their end to do all the collection

18   on the processing on the front end and the back end.  So that

19   doesn't even include the time that the defendants' counsel

20   would require to review the documents before they're -- they

21   select which documents are relevant and not privileged to be

22   produced to us.

23        So even if the contract were signed this week, which

24   we hope that it can be, realistically, if everything goes

25   well, unfortunately, it looks like we wouldn't see any

1   documents from the defendants until probably April.

2           So we would like to discuss with the Court a way of

3   ensuring that the process moves forward as expeditiously as

4   possible, but we also wanted to raise with the Court,

5   unfortunately, what seems to be the fact that the documents

6   won't be available to us until at least April.  And, you know,

7   we feel that there -- you know, due process entitles us to be

8   able to obtain and review those documents before we notice

9   defendants' depositions, so we have a bit of a scheduling

10  conundrum.

11          THE COURT:  All right.  Well, let's -- let's address

12  any scheduling issues at the end.

13          Mr. Kolenich, why don't we start with you.  What's

14  going on with the contract?

15          MR. KOLENICH:  Thank you, Your Honor.  I think

16  there's only one issue remaining with the contract.  We've had

17  a couple productive calls with the third-party vendor,

18  plaintiffs' counsel and defense counsel and there's just one

19  issue, in my opinion, that's holding things up, or at least

20  that's holding me up from signing the contract, which is this

21  indemnification clause.  They want us to indemnify them up to

22  a million dollars for any third parties that might sue them

23  because information, their private information that's on my

24  client's devices would be then in possession of a third-party

25  vendor or potentially, you know, lawyers' offices, plaintiffs'

1    lawyers and so forth.

2          And I think that, you know, we raised objection

3    collectively, the defendants, that we shouldn't have to

4    indemnify them for just anything, but only for our own acts or

5    omissions.  And I think we sort of agreed with that, but the

6    third-party vendor wasn't happy with that.  So we're in the

7    process of working that out.  I think a couple potential

8    solutions present themselves.  One is that the plaintiffs

9    agree to do that indemnification while retaining their right

10   to come to court.  The main contribution from us if

11   indemnification actually is necessary.  The other is that the

12   court simply orders us to sign that, which independent of our

13   inability to actually pay the indemnification, or just put in

14   the contract that the third-party vendor understands that

15   defendants, or at least certain defendants who have

16   represented to this court that they can't afford this, can't

17   afford the indemnification either.  So something simple like

18   that would solve it and then at least my clients would be able

19   to sign the contract.

20         As to the rest of Ms. Tenzer -- well, you wanted to

21   put that off until later, so that's all I have, Your Honor.

22         THE COURT:  Okay.  And Mr. DiNucci, Mr. Jones,

23   Mr. Campbell, is that your concern as well with the contract?

24   Are there any additional concerns or issues?

25         MR. DINUCCI:  This is John DiNucci.  I join in

1   Mr. Kolenich's remarks.  If I remember correctly, I'm looking

2   right now at the last draft indemnification language which I

3   believe came from the third-party vendor.  The way I still

4   read it is if somebody, meaning not the defendants, were to

5   call as a witness somebody from the third-party vendor, the

6   defendants would be responsible for paying the third-party

7   vendor's fees, which I don't understand.  But I certainly join

8   in Mr. Kolenich's concern as well.  I mean, and that is, as

9   Mr. Kolenich indicated, at least as I recall, the only issue

10  the language in this indemnification provision.

11          We've had several conference calls with plaintiffs'

12  counsel about it.  There's been an exchange of e-mails and I

13  think I sent a letter on the defense side sometime ago.  So

14  we've been working towards conclusion and then we get this

15  notice that plaintiffs want a conference call with Your Honor.

16          So we're close, it's just this indemnification

17  language is tricky.  And I got to -- I mean, how do you foist

18  that upon your client, say sign something that's going to make

19  you liable for somebody else's mistake?

20          THE COURT:  Well, and is this -- the indemnification

21  provision, this is something that the third-party vendor is

22  insisting on?

23          MR. DINUCCI:  That's one way to interpret.  The last

24  e-mail I saw was from Miss Brennan and it's dated February

25  the 4th.  And she indicated IES proposed the following

```
1    language, then she had a redraft of the earlier

2    indemnification provision that we've been discussing with

3    plaintiffs' counsel.

4             THE COURT:  All right.  Ms. Tenzer, is this, the

5    indemnification, is that something that the vendor is

6    insisting?

7             MS. TENZER:  Your Honor, it is an issue between the

8    vendor and the defendant.  We really don't have, you know, a

9    dog in that fight, so to speak.  It's our understanding the

10   vendor has been trying, as Mr. DiNucci indicated, by making

11   alternative proposals and I think is trying to work something

12   out with the defendants.  And, you know, again, it's not sort

13   of our issue, but if there's anything that we could do to help

14   facilitate those negotiations, obviously, we're happy to do

15   that.  But that is, as we understand, the one outstanding item

16   and it is something that the vendor is looking for and that I

17   believe is sort of -- is the standard in these kinds of

18   contracts.  But, again, it's my understanding that they are

19   trying to work with defense counsel to try to work something

20   out.

21            THE COURT:  Okay.  All right.

22            Mr. Jones and Mr. Campbell, do you all have anything

23   to add?

24            MR. JONES:  I don't, Your Honor.  This is Bryan

25   Jones.
```

1          MR. CAMPBELL:  This is Dave Campbell.  I would just

2    add that my client's electronic devices are still in the

3    possession of the FBI.  And I think we're not really involved

4    in this dispute, haven't been asked to endorse the contract.

5    I just wanted to make sure I participated because I've seen a

6    lot of information seemed to reference potential problems with

7    timing and that kind of thing, so I just wanted to make sure I

8    was on the call for anything in that regard.

9          THE COURT:  All right.  I got you.

10          MR. CAMPBELL:  Yes, sir.

11          THE COURT:  Well, you know, this does seem like this

12    is an issue -- well, it is an issue between the vendor and the

13    defendants at this point.  And this has just got to move

14    forward.  This one issue cannot throw off the entire case

15    schedule.

16          So, Mr. Kolenich and Mr. DiNucci and Mr. Jones, you

17    all will need to just, and encourage the plaintiffs to try and

18    facilitate this as best as possible to move things forward.

19    But you all just need to, you know, have some more discussions

20    with the vendor.  But this contract has got to be signed by

21    Friday, whatever form the indemnification is in or not.  And

22    I'm not going to -- you know, without having the third-party

23    vendor on the phone, I'm not going to tell them they have to

24    give up that, you know, that language if that's a customary

25    provision that's in the agreements that they use.  So, what I

```
 1    would like you all to do is to wrap up the negotiations on

 2    that and have the contract signed by this Friday.

 3              MR. DINUCCI:  Your Honor, could I inquire of the

 4    court on a particular point?

 5              THE COURT:  Sure.

 6              MR. DINUCCI:  I clearly understand your point that

 7    we're going to have to wrap this up, and that the vendor, if

 8    it is customary, we'll get language saying that the defendants

 9    have to indemnify the vendor if third parties complain that

10    their confidential information has been leaked, for lack of a

11    better word.  That's indemnification issue number one.

12              But indemnification issue two is why should the

13    defendants have to pay if for some reason the plaintiffs call

14    the third-party vendor as a witness in this lawsuit?  That

15    should be the plaintiffs' responsibility if for some reason

16    they think they need testimony from the third-party vendor.

17              MS. TENZER:  Your Honor, if I may.  I don't

18    understand that to be an issue.  But I will say that if that

19    is the issue, if we were to call the third-party vendor in

20    this litigation, which -- we would not ask the defendants to

21    pay for that.

22              THE COURT:  Yeah.  I would think that whatever party

23    calls the vendor would be responsible for paying that.

24              MR. DINUCCI:  Thank you.

25              THE COURT:  Okay.  Now, Ms. Tenzer, you've asked if
```

1    the devices would be turned over at the time, and social media

2    accounts, is access to those provided at the time that the

3    contract is entered into?

4           Mr. Kolenich, is there any problem with that?  It

5    does seem like these things need to be provided to the vendor

6    as soon as possible.

7           MR. KOLENICH:  I'm sorry, Your Honor, are you

8    discussing turning over the parties' electronic devices?

9           THE COURT:  That's right.

10          MR. KOLENICH:  No.  As I understand it, there's

11   no -- most of my clients are squared away with just sending it

12   in these Faraday bags that the vendors will send.  One or two

13   of them, like, if there's a larger device, if there's

14   someplace they can meet near where the client is.  I think the

15   third-party vendor is used to dealing with this issue.  I

16   don't foresee it being a problem.  All of my people, as best I

17   can tell, and as you know I have a large number of individuals

18   I'm representing, I understand that they're going to have to

19   turn these devices over and they're prepared to do it.

20   They're prepared to be without their devices for a day, day

21   and a half, whatever it is, two days, you know, to send it

22   there, have it imaged and sent back.

23          THE COURT:  Okay.  All right.  Mr. DiNucci.

24          MR. DINUCCI:  I actually have two of my clients'

25   devices here, Your Honor.  We're just waiting to see what

SINES v. KESSLER; 3:17cv00072-NKM-JCH                    14

 1    we're told to do and how to do it by the third-party vendor.

 2    The idea is to get them done expeditiously so we can get the

 3    original devices back.  I think there the interests of both

 4    sides converge.

 5              THE COURT:  Okay.  And Mr. Jones.

 6              MR. JONES:  Yes, Your Honor.  I have one client who,

 7    you know, the phone that he uses and that will need to be

 8    imaged is both his only personal phone and his work phone.  So

 9    we'll just need to make arrangements, but he is certainly

10    willing to comply.  I had talked to him previous, one of the

11    plaintiffs' counsel about setting something up where he could

12    just go plug it in in home town, you know, where he lives, so

13    he doesn't have to mail it out.  But he's certainly willing to

14    comply and turn it over.

15              THE COURT:  Okay.  All right.  And, Ms. Tenzer, is

16    there -- do you have concerns about the timing there?  It

17    sounds like it would be the third-party vendor would provide

18    the means for the defendants to submit their devices.  And

19    then, you know, any other -- if there's social media access,

20    things like that.

21              MS. TENZER:  No.  I appreciate what defense counsel

22    has said on the phone.  I think that, in addition, the

23    vendor -- again, I don't want to speak for the vendor -- but I

24    think the vendor will need certain credentials and so forth to

25    be able to get into the devices and the social media accounts.

 1              And it may be useful if defense counsel can start

 2     pulling those all together to provide to the vendor so that

 3     once they get the devices and the account, they can

 4     immediately start performing the work that they need.

 5              I'll also just add that, you know, we -- again, we

 6     appreciate that everybody wants to do this expeditiously.   I

 7     think we probably want to have some sort of media status

 8     conference or something with the Court to ensure that

 9     everything is moving forward once the contract is signed.

10              MR. DINUCCI:  Can I interject a comment?

11              THE COURT:  Sure.  Go ahead.

12              MR. DINUCCI:  This is coming from a technical

13     incompetent; me.  I think it would be helpful if as we work

14     with the third-party vendor on the contract, we also learn

15     directly from the third-party vendor what it would need to

16     access these social media accounts.  I don't even know the

17     nomenclature, so if the third-party vendor can tell us what it

18     needs in simple English it would be helpful.

19              MS. TENZER:  I agree.  And I think it probably makes

20     sense to set up a call with the vendor this week, which we

21     would not participate in but the defense counsel and the

22     vendor could participate.

23              THE COURT:  You know, I think that would make some

24     sense.  Mr. DiNucci and defense counsel, are you all amenable

25     to setting up a call or for having some way of getting the

```
 1    information from the third-party vendor so that you all can be

 2    ready to comply with their instructions?

 3              MR. DINUCCI:  Certainly.  No problem here,

 4    Your Honor.

 5              MR. KOLENICH:  Yeah, we'll communicate with the

 6    vendor and get that done.

 7              THE COURT:  Okay.

 8              MR. JONES:  Not a problem.

 9              MR. CAMPBELL:  Judge, I'm happy, if I need to, but

10    my understanding is I don't, but I'll certainly make myself

11    available if I need to.

12              THE COURT:  Okay.  All right.  What else?  What else

13    do we need to address at this point?  I know there aren't any

14    deadlines in the stipulation about how long counsel will need

15    to review the documents or the -- what's received from the

16    third-party vendor for responsiveness and privilege and so

17    forth and then to produce that information.  But that may be

18    something that we'll, you know, that we need to go ahead and

19    figure out a time frame for.

20              MS. TENZER:  Your Honor.

21              THE COURT:  Yes.

22              MS. TENZER:  I do think along those lines another

23    thing that the parties could be doing to help make this move

24    forward as quickly as possible would be in light of the topic

25    that you just raised, the review of the documents by defense
```

1    counsel, I think under the stipulation there's supposed to be

2    a negotiation regarding search terms and those types of

3    things.  If we could start doing that sooner rather than

4    later, that would probably help to move things along.

5            THE COURT:  Yeah.  Mr. Kolenich, what do you think

6    about that, go ahead and start talking about search terms?

7            MR. KOLENICH:  We can.

8            THE COURT:  Start talking about how long you all

9    think you may need to perform that review, then produce the

10   documents.

11           MR. KOLENICH:  Well, that gets again to the issue of

12   who's footing the bill for those, which is plaintiffs on the

13   first instance.  It's been my experience that the third-party

14   vendors can expedite review of the results and these images

15   for an advanced fee, or an additional fee.  And that can be

16   done in just a couple days per device.  So the imaging takes a

17   day, you know, and the turn around of the second day is just

18   mailing it back.  Then they have the data, they do their

19   initial processing of the data, then we submit search terms

20   for X time limitations, whatever it is we're going to submit.

21           I don't think there's any negotiation between the

22   parties on that.  Whatever the plaintiffs want to search for,

23   they can search for.  That's the point of this exercise.  Then

24   we do the review for privilege, creative privilege or

25   production.  As long as the third-party vendor, and they

 1    always have been in my experience, is willing to expedite that

 2    for us so that we don't have to go and fumble through the

 3    relativity on our own, which would delay things.  There's

 4    going to be a fee for that.  As long as plaintiffs' foot the

 5    bill for that in the first instance, I think the turnaround

 6    time can be just a couple days per device.  The third-party

 7    vendor will give us the results of the searches.  We'll tell

 8    them what needs to be redacted from the privilege log, that's

 9    a quick process, as long as somebody is footing the bill for

10    their participation.

11              THE COURT:  All right.  Ms. Tenzer, what's your view

12    of that?

13              MS. TENZER:  Frankly, I'm not sure I understand what

14    Mr. Kolenich is saying.  In my limited experience, you mean

15    the data will be processed by the vendor and then the

16    attorneys review the documents.  You agree on search terms,

17    they get run against the data, and then attorneys review the

18    data.  I don't know what other procedures Mr. Kolenich is

19    referring to.  I mean, we're happy to discuss whatever

20    processes he's talking about, but I'm -- I'm not sure I know

21    what he's talking about.

22              THE COURT:  Well, is it your understanding that the

23    third-party vendor will receive search terms from the parties

24    and then mirror the universe of documents?  Is that the

25    process?

```
 1              MS. TENZER:  Yeah.  If the vendor will run search
 2    terms against the data, yes.
 3              THE COURT:  And then it would be from that career
 4    path to the search terms that narrow the documents that the
 5    defendants would then do their review for privilege and
 6    responsiveness.
 7              MS. TENZER:  Exactly.
 8              THE COURT:  All right.  Mr. Kolenich, so would
 9    that --
10              MR. KOLENICH:  That's all correct, Your Honor.  It's
11    just that it goes a lot faster with the ESI professionals
12    assisting us with the search.  And they always add a charge
13    for that service, in my experience.  Again, my experience is
14    also limited.  I don't mean to try to trump Ms. Tanzer's
15    experience, she's certainly superior to mine, but --
16              MS. TENZER:  I don't know about that.
17              THE COURT:  All right.  Mr. Kolenich, the search
18    that you're talking about is after -- after the fact.
19              MR. KOLENICH:  After.  Right.
20              Just for creating a privilege log and then they get
21    production, they have it.
22              THE COURT:  Okay.  Well, why don't -- here's what I
23    would suggest.  Why don't you all talk this through a bit more
24    about the timing and the different steps and how, you know,
25    how the search and the review and the production will go and
```

1   see if you all can't come up with some guidelines and some

2   deadlines for that.  And if there are issues, let me know.

3   We'll probably need to talk about how that fits into the

4   overall schedule.  And perhaps we can -- perhaps we can do

5   that and see how the -- I guess the delivery of the devices

6   and social media accounts, how that is all progressing.  We

7   can do that all at a status conference.  And perhaps next

8   Friday?  Or Thursday?

9           MS. TENZER:  That sounds like a great plan,

10  Your Honor.

11          THE COURT:  Why don't we -- do you all want to do

12  next Thursday afternoon?  I'll get Karen to confirm, but I do

13  have some time later in the afternoon on Thursday.

14          MS. TENZER:  That works for plaintiff, Your Honor.

15          MR. KOLENICH:  That would work, I'm available.

16          THE COURT:  Let's see, Mr. Kolenich, are you

17  available sometime that afternoon?

18          MR. KOLENICH:  Yes, sir.

19          THE COURT:  All right.  Mr. DiNucci, are you

20  available that afternoon as well?

21          MR. DINUCCI:  Yes, I am, Your Honor.

22          THE COURT:  Okay.  Mr. Jones?

23          MR. JONES:  Yes, Your Honor, I'm available.

24          THE COURT:  Okay.  Again, Mr. Campbell, at this

25  point I don't know that that's something that you would need

1   to participate in.

2          Ms. Tenzer, do you have a different view?

3          MS. TENZER:  No, Your Honor, I don't believe that

4   Mr. Fields is part of the stipulation.

5          THE COURT:  Okay.

6          MR. CAMPBELL:  That sounds good.  I would just

7   mention if anyone is ever discussing moving the trial date or

8   anything along those lines, I would ask to be a part of that

9   conversation.

10         THE COURT:  Okay.  Why don't you plan -- since we

11  will be discussing scheduling issues, why don't you plan on

12  calling in.

13         MR. CAMPBELL:  Yes, sir.

14         THE COURT:  Next Thursday.  Why don't we -- does

15  3:00 work for everybody?

16         MR. KOLENICH:  (Inaudible.)

17         MR. DINUCCI:  Yes, Your Honor.

18         THE COURT:  Okay.

19         All right.  Let's plan on that.  We'll get a notice

20  out for a conference call for next Thursday, which the 21st,

21  at 3:00 p.m.

22         Now, Ms. Tenzer, is there anything else that we need

23  to address today?

24         MS. TENZER:  There is one other thing we wanted to

25  mention, Your Honor, and see if you could advise us.  And I

```
1    apologize for bringing it up without having previewed it.  But
2    we had served a subpoena on Twitter early last year.  And you
3    may recall, this is Mr. Peinovich had moved to quash and
4    Your Honor denied that motion.  Mr. Peinovich then appealed
5    your decision to Judge Moon.  Judge Moon then issued his
6    decision on the motion to dismiss and dismissed Mr. Peinovich
7    from the case and then asked the parties to meet and confer
8    and advise the Court whether they thought any additional
9    briefing would be needed based on Mr. Peinovich's change in
10   status.  And the parties made those filings.  But Judge Moon
11   has yet to do anything on Mr. Peinovich's appeal of your
12   decision.  And we were sort of hoping you could give us some
13   advice as to what we might do to get that taken care of so
14   that we could hopefully move forward with the subpoena on
15   Twitter.
16            THE COURT:  Okay.  We'll notify Judge Moon's
17   chambers that that is a live issue that you all want to move
18   forward on and make sure that they're aware of that.
19            MS. TENZER:  Thank you, Your Honor.  We appreciate
20   that.
21            THE COURT:  All right.  Anything from the
22   defendants' side that we should address today?
23            MR. KOLENICH:  No, sir.
24            THE COURT:  All right.
25            MR. DINUCCI:  No, Your Honor.
```

1          THE COURT:  Okay.  Well, counsel, thank you all for

2     calling in and we'll be back on the phone next Thursday.

3     Thank you.

4          MS. TENZER:  Thank you, Your Honor.

5       (Teleconference concluded at 1:00:52 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2

3           I, DONNA J. PRATHER, do hereby certify that the

4    above and foregoing, consisting of the preceding 23 pages,

5    constitutes a true and accurate transcript of my stenographic

6    notes and is a full, true and complete transcript of the

7    proceedings to the best of my ability.

8           Dated this 19th day of February, 2019.

9

10                    DONNA J. PRATHER, RPR, CRR, CBC, CCP
                      Federal Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25