```
 1                      UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF VIRGINIA
 2                         CHARLOTTESVILLE DIVISION

 3   ELIZABETH SINES, et al,

 4                 Plaintiffs,
                                        No. 3:17-cv-72
 5        vs.                           Charlottesville, Virginia
                                        February 21, 2019
 6   JASON KESSLER, et al,

 7                 Defendants.

 8           TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING
                BEFORE THE HONORABLE JOEL C. HOPPE
 9                UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Plaintiffs:

12   GABRIELLE E. TENZER               YOTAM BARKAI
     MICHAEL L. BLOCH                  Boies Schiller Flexner, LLP
13   Kaplan & Company, LLP             575 Lexington Avenue, 7th Floor
     350 Fifth Avenue, Suite 7110      New York, NY 10022
14   New York, NY 10118                212-446-2300
     212-763-0883
15

16   DAVID E. MILLS
     Cooley LLP
17   1299 Pennsylvania Avenue, NW, Suite 700
     Washington, DC 20004
18   202-842-7800

19

20   Appearances Continued Next Page

21

22   Transcribed by:    Carol Jacobs White
                        Registered Diplomate Reporter
23                      P.O. Box 182
                        Goode, VA 24556
24

25       Proceedings recorded by FTR; computer-assisted transcription.
```

```
 1  For the Defendants:

 2  JAMES EDWARD KOLENICH                JOHN A. DINUCCI
    Kolenich Law Office                  Law Office of John A. DiNucci
 3  9435 Waterstone Blvd., Suite 140     8180 Greensboro Dr., Ste. 1150
    Cincinnati, OH 45249                 McLean, VA 22102
 4  513-444-2150                         703-821-4232

 5  BRYAN JEFFREY JONES                  DAVID LEON CAMPBELL
    Bryan J. Jones, Attorney at law      Duane, Hauck, Davis & Gravatt
 6  106 W. South Street, Suite 211       100 West Franklin St., Ste. 100
    Charlottesville, VA 22902            Richmond, VA 23220
 7  540-623-6952                         804-644-7400 x 221

 8              **************************************

 9      (Call to Order of the Court at 3:06 p.m.)

10            THE COURT:  Hi.  This is Joel Hoppe.

11        Who is on the line for the plaintiffs?

12            MS. TENZER:  Good afternoon, Your Honor.  This is

13  Gabrielle Tenzer at Kaplan Hecker & Fink, on behalf of the

14  plaintiffs.  I'm here with my colleague Mike Bloch and also Yotam

15  Barkai from the Boies Schiller firm.  And I believe that there may

16  be others on the line as well.

17            MR. MILLS:  This is David Mills, from Cooley, also for

18  the plaintiff.

19            THE COURT:  All right.  Well, good afternoon.

20        And then who do we have for the defendants?

21        Mr. Kolenich, are you on the phone?

22            MR. KOLENICH:  Yes, sir,

23            THE COURT:  All right.  Good afternoon.

24        And who else do we have for the defendants?

25            MR. DiNUCCI:  This is John DiNucci, for Mr. Spencer, Your
```

```
 1   Honor.
 2              THE COURT:  All right.  Good afternoon.
 3              MR. JONES:  Bryan Jones here for --
 4              THE COURT:  All right.  Mr. Jones?
 5              MR. JONES:  Yes.
 6              THE COURT:  All right.  All right.  Good afternoon.
 7         And who else do we have?  Anyone else?
 8              MR. CAMPBELL:  Yes, sir.  This is Dave Campbell, for
 9   Mr. Fields.
10              THE COURT:  All right.  Mr. Campbell.
11         All right.  Counsel, I have reviewed the plaintiffs'
12   email from earlier today.  And there are a number of motions
13   concerning status of counsel.
14         And let me also say that this hearing is being recorded
15   by the Court's FTR system.  So there is a record being made of the
16   hearing.
17         As to the motions regarding the status of counsel,
18   there's one filed by Mr. Stern that I do intend to deny, because
19   you can't substitute counsel if there isn't another attorney to
20   step in to represent the entity.  Now, that is not going to
21   ultimately resolve the issue, because, Mr. Kolenich, you have filed
22   the motion to withdraw.  And then, of course, Mr. -- is it Schoep?
23   Is that how his name is pronounced?
24              MR. KOLENICH:  Schoep, Your Honor.
25              THE COURT:  Schoep, has also filed a motion to represent
```

```
 1  his self.
 2          So what I intend to do on all of those motions,
 3  Mr. Kolenich, your motion and Mr. Schoep's motion, is to have a
 4  conference call on those motions -- have a hearing on them, and
 5  also have Mr. Stern on the phone, and explain that any entities
 6  need to be represented by an attorney and that, you know, they will
 7  need to -- Mr. Schoep and Mr. Stern will have to hire another
 8  attorney, and do it, you know, expeditiously, if that's their
 9  intent, and then also discuss their discovery obligations during
10  that hearing.  And I think we need to do that soon.  I suggest we
11  will do it next week.  And I can get Karen to contact you-all to
12  set that up.
13          Now, I want to take up the issues that are identified in
14  Ms. Tenzer's email.  And then, if there's some other issues, we can
15  address those as well.  The first one is the third-party vendor
16  contract.
17          And, Ms. Tenzer, other than Mr. Schoep and then, you
18  know, NSM and NF, have the other defendants signed the contract?
19          MS. TENZER:  Defense counsel has signed on behalf of all
20  of the other defendants, with the exception of the other now pro se
21  defendants, including Mr. Moseley and Mr. Heimbach.
22          THE COURT:  Okay.  All right.  And -- all right.
23          So is the vendor ready to go forward with those
24  defendants?
25          MS. TENZER:  Are you asking me, Your Honor?  This is
```

```
 1  Ms. Tenzer.
 2            THE COURT:  Yes, as far as you know.
 3            MS. TENZER:  Okay.  I believe so.
 4            I will say, you know, we participated in getting the
 5  contract signed.  And the way the contract is set up, once it is
 6  signed, the defendants are supposed to interact with the vendor.
 7  And I think the idea was that we would be involved as little as
 8  possible, in order to give -- preserve the defendants', you know,
 9  confidentiality and privilege and so forth.
10            There is a reporting requirement.  But since the contract
11  wasn't signed until this week, we won't be getting our first report
12  until next week.
13            I do understand that the vendor has reached out to the
14  defendants.  But it is my understanding that as of yesterday
15  nothing had been handed over to the vendor.  But I would also -- I
16  think the defense counsel could also speak to the status of that.
17  But it is my understanding that that has not happened yet.
18            THE COURT:  Okay.
19            All right.  So, Mr. Kolenich, how about for your clients,
20  as far as their interactions with the vendor and providing devices
21  and access to social media, where is that process?
22            MR. KOLENICH:  We are in touch with the vendor, Your
23  Honor.  And they have given us a multi-step process.  The first
24  step is providing account credentials for various accounts
25  identified in our ESI declarations, which we're in the process of
```

```
 1  doing.  On my end, I would expect that to be done no later than
 2  Monday, to the vendor.  At that point, they are going to give us
 3  specific instructions on turning over the devices.  So while no
 4  devices have been turned over yet, that's in process and will be
 5  done quickly.
 6          THE COURT:  Okay.  And that's according to the vendor's
 7  schedule?
 8          MR. KOLENICH:  Yes.
 9          THE COURT:  All right.
10          MR. KOLENICH:  Yes.
11          THE COURT:  All right.  Mr. DiNucci, is that the same for
12  you and Mr. Spencer?
13          MR. DiNUCCI:  Your Honor, I guess -- sometime, I believe
14  it was yesterday, I had received -- I believe other counsel had
15  -- an email from the third-party vendor, setting forth a list of
16  pieces of information, such as credentials, as Monte called it,
17  that they are going to need to access devices.  And then they asked
18  particular to my client's social media accounts, some of which are
19  disabled or shut down, whatever the term is.
20          And I've exchanged a series of emails with IDS this
21  morning about what they need from me, because I don't, frankly,
22  understand a whole lot of this technical stuff.  And I'm awaiting
23  instructions on how and -- you know, to get the devices to them.
24  And I have got several here.  I'll probably hand-deliver those, or
25  have my law clerk do so.  To the extent that they are going to be
```

```
 1   going through other devices, I have got to make arrangements with
 2   Mr. Spencer, who lives in Montana, to get those devices.
 3             THE COURT:  Okay.
 4             MR. DiNUCCI:  But communicating with IDS to get this ball
 5   rolling.
 6             THE COURT:  All right.
 7             And, Mr. Jones, how about for your clients?
 8             MR. JONES:  Yeah.  I'm in the same step.  I have been in
 9   communication with them about getting the credentials passed over.
10   It should be Monday at the latest.  I would hope I could get that
11   to them probably by tomorrow.  And then I think they are going to
12   let us know how they want us to turn over the devices.
13             THE COURT:  Okay.
14             All right.  Well, it sounds like that's proceeding, at
15   least, according to what the vendor has asked.
16             Ms. Tenzer, I know you have indicated it will take about
17   four weeks for the vendor to process information after they receive
18   the devices and credentials and passwords and so forth.  Is there
19   -- is there any ability on the vendor's part to expedite that?
20             MS. TENZER:  I don't believe so, Your Honor.  That's both
21   what I would say -- call on the front end and the back end, so all
22   of it.  But I don't think that they can expedite it in any way.  It
23   is a number of devices and social media accounts.  And so I think
24   they are hoping to process it as quickly as they possibly can, but
25   it is a lot of devices and accounts that they are going to have to
```

```
 1   be imaging.
 2              THE COURT:  Okay.  All right.
 3              Let me back up just a minute.
 4              Mr. Kolenich, what is -- what is the holdup for -- your
 5   current clients -- and I know that that status is somewhat in
 6   question now -- what is the holdup or the problem with them as far
 7   as signing the contract and providing the devices?  I'm not asking
 8   you to get into attorney-client privileged information, but can you
 9   tell me what is going on?
10              MR. KOLENICH:  Sure, Your Honor.
11              The contract is signed.  The clients that I
12   unquestionably represent, it is signed.  The holdup on getting
13   account credentials is simply communicating with them and getting
14   the responses, which it is common for them to answer in a couple of
15   days after receiving that request.  Regardless of how many times I
16   call, how many messages I send, that is not uncommon.  Some of
17   them, for a variety of reasons, don't check their messages every
18   day or do not physically wear their phone at all times so that they
19   get a message, the way you or I do, when it essentially comes in.
20   So that's the nature of the delay.  But it usually is not bad.  It
21   is a couple of days.  And that's why I say I expect to have it in a
22   couple of days.  And the vendor will have it on Monday.  And then
23   we can begin the process of physically handing over the devices.
24              But there will always -- at least there always has been
25   until now -- be this sort of three- to four-day delay or lag time
```

```
 1   between me reaching out to them and them answering.  Unlike a
 2   normal case where, if necessary, I can go physically track down a
 3   client who is in my city, that is not the case here.
 4              THE COURT:  Okay.  All right.  But you think that you-all
 5   will have the credentials and then the -- and any social media
 6   information and the devices from the National Front and Schoep and
 7   NSM within a couple of days?
 8              MR. KOLENICH:  No, sir.  They are not communicating with
 9   me.  But -- Schoep has fired me, unquestionably.  But, no, I will
10   not have anything from them.  And they are not a party to this
11   contract, because I'm unauthorized to sign for them at this point.
12              THE COURT:  Okay.  I'm sorry.  That's who I was asking
13   about with my last question.
14              MR. KOLENICH:  I completely misunderstood you, Your
15   Honor.
16              I can't make any -- yeah, I don't believe I'm authorized
17   to act on behalf of either of those entities.  And I have certainly
18   been fired every place by Mr. Schoep at this point.  So I can't
19   possibly bind them to a contract.  And they are not communicating
20   with me anyway.  So, no, I have no ability to get their devices or
21   do anything in regards to those forms.
22              THE COURT:  And what is -- if you can tell me, what is
23   their problem with doing those?  I mean, why are they not signing
24   the contract?
25              MR. KOLENICH:  I can't -- I don't have the exact answer
```

1  to that.  I have a theory, based on privileged information.  But as
2  far as what is going on with them, they have been taken over
3  legitimately, legally, by this Mr. Stern.  And he has authorized
4  -- you know, he is the president of that organization now.  So
5  -- and he hasn't communicated with me at all, despite a request to
6  put me in touch with him, to find out what is going on.
7           So why they won't sign it or what they intend to do, I do
8  not know.  What little I could theorize would be based on
9  privileged information, so I can't say.
10          THE COURT:  Okay.  All right.  Well, I think what we need
11 to do on that is, then, like I said earlier, we'll get -- or at
12 least attempt to get Mr. Stern and Mr. Schoep on the phone.
13 Mr. Kolenich, I'll have you on as well.  And we'll address your
14 motion to withdraw and Mr. Schoep's motion to represent himself and
15 then also address the discovery issues.  And we'll try and do that
16 -- I'll try and do that next week.
17          MR. KOLENICH:  Okay.
18          THE COURT:  All right.
19          All right.  Ms. Tenzer, on the production of the
20 documents from the devices and social media accounts, have you-all
21 -- it sounds like you-all had talked some about the process for
22 search terms and so forth.  Have you-all talked about a time frame
23 for -- after the information is obtained or processed by the
24 third-party vendor and then given to the defendants, a time frame
25 for the defendants to then produce it -- produce responsive

```
 1  nonprivileged documents to the plaintiffs?
 2              MS. TENZER:  We haven't, Your Honor, because I think part
 3  of the issue there will be what the volume is, which at this point
 4  we don't know.  So I think it -- we haven't discussed it.  We are
 5  happy to discuss it, but I would think that it would be difficult
 6  for defense counsel to -- or for us to engage in some sort of
 7  meaningful discussion until we know what the volume is.
 8              THE COURT:  All right.
 9              All right.  And is that something that you-all just
10  aren't going to know until the vendor actually provides it?  Or
11  will the vendor be able to give some estimates after they have
12  started their process?
13              MS. TENZER:  I -- I think it will depend on what they
14  find when they start trying to image the devices.  And then it will
15  also depend on the search terms and the number of hits and so
16  forth, not to get into the weeds.  But if the defendants are okay,
17  we could try to talk with the vendor and find out sort of when
18  -- when in the process we may have a better sense.  But I think it
19  is probably not going to be -- well, since they don't have any of
20  the devices or the social media accounts yet, and it sounds like
21  they are not going to have them for another week, I don't think
22  they will be able to tell us anything.
23              THE COURT:  All right.
24              All right.  So I do think that it will be important to
25  have a deadline for that production once the documents are
```

```
 1   provided.  And I also think that it would be -- probably make sense
 2   to have a procedure to -- in place to bring disputes before me for
 3   resolution quickly, if any disputes do arise about what documents
 4   are actually produced.  So that's -- I think that's --
 5             MS. TENZER:  We totally agree, Your Honor.
 6             THE COURT:  All right.  And I think that's something that
 7   you-all should discuss and see if there's an agreement.  But what
 8   I'm -- you know, what I'm contemplating is that if there are
 9   documents withheld and there's a dispute, that there would be
10   -- that the defendants would need to file a motion for a protective
11   order, you know, within five days or so after the date for the
12   production; plaintiffs respond in a similar time; and then we'll
13   have a hearing, you know, very soon thereafter.  And it may -- it
14   may even help to have the defendants submit in camera -- depending
15   on the volume of the documents, but in camera the documents that
16   are withheld.  We will need to have this thing move along
17   expeditiously.
18             MS. TENZER:  Again, we completely agree, Your Honor.
19             THE COURT:  All right.
20             All right.  Mr. Kolenich, you -- anything that you want
21   to weigh in on that, the process for the production?  You don't
22   have to.  It is something I just kind of want to raise that you-all
23   can discuss and then we can get a procedure in place.
24             MR. KOLENICH:  No, I have nothing to add, Your Honor.  I
25   think that all attorneys are on the same page here.  And we're
```

```
 1  aware of the tight time frame.  I can't imagine there's much we are
 2  going to be trying to withhold or assert a privilege on with this
 3  stuff.
 4           THE COURT:  All right.
 5           All right, Mr. DiNucci?
 6           MR. DiNUCCI:  I have nothing to add, Your Honor.
 7           THE COURT:  All right.
 8           And Mr. Jones?
 9           MR. JONES:  Nothing to add, Your Honor.
10           THE COURT:  All right.
11           How about the consents for Twitter?
12           MS. TENZER:  Your Honor, this is Ms. Tenzer.
13           We did raise that with defendants' counsel during our
14  meet-and-confer yesterday.  And they indicated that they -- I don't
15  want to speak for them, but we understand that they would be
16  willing to provide those once we work that out with Twitter in
17  terms of what would be needed from -- you know, from Twitter's
18  perspective.  We had a call with Twitter's counsel this morning.
19  They needed to speak with their client.  And we're trying to move
20  that forward as quickly as we can.  We reached out to their counsel
21  as soon as we got the decision, which we wanted to thank you for
22  helping to get filed.  And, as I said, we spoke with their counsel
23  this morning.  And we're trying to move that forward quickly.
24           THE COURT:  Okay.
25           All right.  And certainly that would be something -- the
```

```
 1  Twitter accounts would be something we would want to address during
 2  the call next week with Mr. Stern and Mr. Schoep on the phone as
 3  well, if possible.
 4          All right.  Other than the schedule, are there any other
 5  issues that we need to address today about discovery?
 6          MS. TENZER:  I think we have covered everything we had in
 7  mind for today, Your Honor, other than the schedule.  Thank you.
 8          THE COURT:  All right.
 9          Mr. Kolenich, anything else that we need to address about
10  discovery?
11          MR. KOLENICH:  Nothing else, Your Honor.
12          THE COURT:  All right.  Mr. DiNucci?
13          MR. DiNUCCI:  There are several issues I have with the
14  plaintiffs about discovery.  I owe Ms. Tenzer a letter about a
15  couple of them.  I'll take one more crack at resolving them, and
16  then we may be presenting any remaining issues to the Court.
17          THE COURT:  Okay.
18          All right.  Mr. Jones, anything else?
19          MR. JONES:  Nothing from me, Your Honor.
20          THE COURT:  All right.
21          And, Mr. Campbell, I'm not, you know, prohibiting you
22  from weighing in, but I think that, you know, given your client's
23  situation, there's probably not much for you to add at this point.
24          MR. CAMPBELL:  No, sir.  Thank you.
25          THE COURT:  All right.
```

```
 1              Ms. Tenzer, on the issue of the schedule, I know this is
 2   -- I know things are taking -- you know, taking longer and it is a
 3   difficult process.  You know, I want to see -- you know, I think
 4   what I would like to see is how this final, you know, ESI is being
 5   -- how the production is going to go forward, see if there's a way
 6   to get it done with -- you know, with reasonable time frames.  And,
 7   you know, if there's not, then I think we -- I mean, at that point,
 8   if it is just impossible to do, then we talk about trying to
 9   reschedule.  I think it is going to be -- I know Judge Moon is
10   going to be really reluctant to reschedule the trial date.  And I
11   think it will be hard to get another, you know, multi-week trial on
12   his calendar.  So I think for all of the parties' sake I really
13   want to try and push and see if we're able to keep this trial date.
14   It may prove that we can't do it.  But, you know, I think we need
15   to keep giving it a try.
16              MS. TENZER:  Your Honor, this is Ms. Tenzer.
17              I appreciate what you're saying.  And, obviously, we
18   understand Judge Moon's scheduling issues.  And as we have
19   expressed in the past, we too -- we're trying very hard not to have
20   to move the trial date.  And when we had the conference at the
21   beginning of January, you know, when we were discussing the
22   schedule for the first time and rejiggering the schedule, as I
23   think we expressed at that time, it was very much our hope that we
24   wouldn't have to move the trial date.  And that's when we moved the
25   fact discovery cutoff date.  But we're now almost two months from
```

```
 1   that conference and not much has changed.
 2            And I appreciate that everybody is trying and now we
 3   -- you know, we have the contract signed by some of the defendants
 4   and some of it is moving forward.  But -- and I know I said this
 5   before, but I think realistically it doesn't look like we're going
 6   to have the defendants' documents much before the end of the
 7   discovery cutoff, which would just make it impossible for us to
 8   meaningfully prepare for their deposition.
 9            THE COURT:  Right.  Well -- and I -- you know, what I
10   want to do is see when you are able to get those documents.  And
11   I'm going to make sure that you have time to make use of those
12   documents for the depositions.  But I also want to see how that is
13   going to -- you know, over the next couple of months, see how that
14   is going to fit into the rest of the schedule and what impact, you
15   know, that has on -- on, really, the dispositive motions deadline,
16   because, you know, I would think that if this is discovery that you
17   need more for preparing for trial, you know, rather than on
18   dispositive motions, then it may not be necessary to move the trial
19   date.  But if this is discovery that, you know, the plaintiffs are
20   going to need to oppose any of the defendants' possibly forthcoming
21   dispositive motions, then, you know, we have -- that is something
22   that we'll have to -- have to address.
23            And, you know, I'll make sure that you-all have your
24   opportunity to -- you know, to have the discovery that you believe
25   is necessary to oppose any motions, and then also that the
```

```
 1   defendants have the discovery that they think is necessary, if they
 2   are going to file any motions.  But I want to hold off and see how
 3   things go over the next month, six weeks or so.
 4              MS. TENZER:  Okay.  I -- obviously, we respect what Your
 5   Honor has said.  I think, just looking down the pike and just
 6   seeing how things have gone even over the last week, I don't see
 7   how we would get the documents and be able to finish depositions
 8   even by the existing trial date.  I mean, if we don't have
 9   documents until April, they are -- we probably wouldn't take -- we
10   wouldn't be able to even start depositions until later in April.
11   And there are a number of defendants that would need to be deposed,
12   which would probably take us, you know, into June.  But maybe we
13   can put our heads together.  And since we're going to have another
14   call next week, hopefully maybe we can think about this and maybe
15   revisit it next week.
16              THE COURT:  And, Ms. Tenzer, you may be absolutely right.
17   But let's -- you know, let's see -- let's see how it goes.  And,
18   you know, keep the conversation open.  I don't want to place
19   unreasonable or impossible demands on the parties.
20              All right.  Is there anything else that we need to take
21   up today?
22              MR. CAMPBELL:  Your Honor, this is Dave Campbell, for
23   Mr. Fields.
24              I was just wondering.  Is there any way -- I assume if we
25   continue attempting to make sure all of the discovery gets done and
```

```
 1    another month passes, that we're probably getting farther and
 2    farther into Judge Moon's trial calendar.  Is there any way to try
 3    to have a tentative kind of hold range, you know, that we start
 4    looking at now, with the hope that we never need to use it, but so
 5    that we don't end up rescheduling, you know, in late March and then
 6    if we're looking into next year or something like that.  Just an
 7    idea, Judge.  I didn't mean to interrupt.
 8              THE COURT:  I think it is a fine idea.  And I'm certainly
 9    going to be looking into the scheduling options and seeing what is
10    available.
11              MR. CAMPBELL:  Thank you, Your Honor.
12              THE COURT:  All right.
13              All right.  Anything else to address today, counsel?
14         (No response.)
15              UNIDENTIFIED VOICE:  No, sir.
16              THE COURT:  Okay.
17              All right.  Well, then, thanks for calling in.  And Karen
18    will be in touch about scheduling a conference call for next week
19    to address counsel's status for Mr. Schoep and NSM and NF and also
20    discovery regarding those defendants.
21              MS. TENZER:  Thank you, Your Honor.
22              THE COURT:  All right.  If there's nothing further, then,
23    have a good day.
24              UNIDENTIFIED VOICE:  Thank you, Your Honor.
25              THE COURT:  All right.  Bye.
```

1     (Thereupon, these proceedings were adjourned at 3:34 p.m.)

2

3     I, court-approved transcriber, certify that the foregoing is a

4 correct transcript from the official electronic sound recording of

5 the proceedings in the above-entitled matter.

6       /s/ Carol Jacobs White        January 25, 2019
    Signature of Approved Transcriber      Date