UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,

    Plaintiffs,

v.

JASON KESSLER, et al.,

    Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

**PLAINTIFFS' MOTION FOR RULE 37 SANCTIONS AGAINST DEFENDANT JEFF SCHOEP**

Plaintiffs move this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure for sanctions against Defendant Jeff Schoep and for other such relief as the Court deems necessary and appropriate.

PRELIMINARY STATEMENT

A year and a half into this litigation, Plaintiffs have the same number of documents from Jeff Schoep that they had at the start of this case: zero. And make no mistake, that is by his design. Despite routine document requests, repeated follow-up correspondence with and his attorneys, and multiple court orders, Mr. Schoep persistently ignores and, at times, overtly disobeys his obligations to produce responsive documents. Mr. Schoep has accomplished this through

unfulfilled promises to produce, crafty maneuvering, outright defiance of court orders and feigned ignorance of technological wherewithal (from a man who has remained active on social media throughout the life of this case). A week delay here, a few days there, over and over again, has added up to more than thirteen months of total failure to produce a single page. After countless letters, a successful motion to compel, multiple court conferences, and at least two court orders compelling production, we are precisely where we started this case, albeit now with a rapidly approaching discovery deadline. Fifty-six weeks after we served Mr. Schoep a document request, we are now seven weeks away from the end of fact discovery and Mr. Schoep is still intentionally withholding his electronic devices and access to any of his social media accounts. Mr. Schoep managed to escape his discovery obligations most recently by firing his attorney—for this litigation matter, but not others he is involved with—on the very day he was finally required to execute the third-party vendor contract and at long last surrender his electronic devices. Mr. Schoep's evasive, death-by-a-thousand-cuts strategy has achieved what he and other Defendants seem to have set out to do from the very beginning: run out the discovery clock on Plaintiffs. Merely obtaining documents and digesting them in time to take a meaningful deposition before the current fact discovery cutoff will, at best, involve a Herculean effort that Plaintiffs should not have to bear. More likely, however, it will simply be impossible to take his deposition, let alone one consistent with due process, before the current end of fact discovery. Enough is enough: Mr. Schoep should be sanctioned.[1]

Plaintiffs seek the following sanctions under Rule 37:

1. An order compelling Mr. Schoep to execute the third-party vendor contract within 24 hours and to provide access to his electronic devices and social media accounts immediately upon execution, with a substantial monetary penalty for every day thereafter that he fails to do so.

---

[1] Plaintiffs intend to seek sanctions against Defendants Elliot Kline a/k/a Eli Mosley, Matthew Heimbach, and potentially others for similar dilatory tactics.

2. An order compelling Mr. Schoep to certify under oath that there was no responsive content deleted from any electronic devices or social media accounts after this lawsuit was filed and to set forth in detail the efforts and steps he has taken to locate information responsive to Plaintiffs' document requests.

3. Reasonable expenses, including attorney's fees, incurred by Plaintiffs in bringing the Motion to Compel Defendants to Permit Inspection and Imaging of Electronic Devices as well as the instant motion.

## FACTUAL BACKGROUND

### I. Schoep's Role in the Conspiracy

On October 11, 2017, Plaintiffs sued various white supremacists under the Ku Klux Klan Act, 42 U.S.C. § 1983, among other statutes, for conspiring to engage in racially motivated violence and intimidation in the streets of Charlottesville, Virginia, in August 2017. (*See* Compl., ECF No. 1.) Defendant Jeff Schoep at the time was one of the leaders of two different white supremacist groups: Defendant National Socialist Movement ("NSM"), the largest neo-Nazi coalition in the United States, and Defendant Nationalist Front ("NF"), an umbrella organization consisting of white supremacist and white nationalist groups. (Am. Compl., ECF No. 175 ¶¶ 37-39.) Mr. Schoep played an active role in planning and participating in the rally in Charlottesville and utilized five different social media platforms—along with his e-mail account and cell phone—to communicate in aid of the conspiracy. (*See, e.g.*, *id.* ¶¶ 63; 214; 228; Ex. 3 at 1 (Def. Jeff Schoep's Resp. to Def.'s First Interogs. and Req. for Prod. of Docs. (Apr. 6, 2018)).)

Based on the limited evidence Plaintiffs have received thus far, there is reason to believe that each of his social media accounts contains important evidence in support of Plaintiffs' allegations. Shortly after the rally, for example, Mr. Schoep tweeted, "It was an Honor to stand with U all in C'Ville this weekend. NSM, NF, TWP, LOS, VA, ECK, CHS, and the rest, true warriors!" (Am. Compl. ¶ 37.) Mr. Schoep similarly used the social media service "VK" account

3

to communicate with followers before and after the rally, as well as to raise money for the legal defense of himself and his organization while this case has been ongoing. (*See* Ex. 12 (Excerpted Posts from Jeff Schoep's Public VK Profile (Aug. 8, 2017; Aug. 1, 2017; Aug. 15, 2017; May 29, 2018), *available at* https://vk.com/id300604375.) Given Mr. Schoep's role as an actively engaged "Commander" of major white supremacist organizations that had a robust presence in Charlottesville, the amount of relevant information contained on his electronic devices and the multiple social media accounts he used is potentially voluminous. But because of Mr. Schoep's stalling and stonewalling, Plaintiffs still have none of it.

### II. Plaintiffs' Discovery Requests

From the outset of this litigation, until very recently, Mr. Schoep has been represented by counsel. On January 25, 2018, Plaintiffs served a request for documents on all Defendants which sought all documents related to the events described in the Complaint, broken down into eight separate categories. (*See* Ex. 1 (Pls.' [Corrected] First Set of Reqs. for Produc. of Docs. to All Defs. (Jan. 25, 2018)).) This straightforward request sought electronic documents, including, for example, e-mails, text messages, and content posted on social media, and also instructed Mr. Schoep to preserve all documents and communications relevant to this lawsuit. (*Id.* at 3; 5-6.) On the same date, Plaintiffs served Mr. Schoep with a set of interrogatories, asking Mr. Schoep to identify, among other things, all means of communication he used to communicate about the events set forth in the Complaint, as well as the electronic devices he used for such communication. (*See* Ex. 2 at 8 (Pls.' First Set of Interrogs. to All Defs. (Jan. 25, 2018)).)

### III. Schoep's Response (or lack thereof)

In a response served more than a month late, Mr. Schoep identified five different social media accounts, one cell phone, and one e-mail account he used to communicate about the events

underlying this lawsuit. (*See* Ex. 3.) With respect to the responsive documents in his possession, Mr. Schoep represented, under oath, the following:

> Mr. Schoep, authorized officer of NSM, believes he can locate certain receipts and e-mails, that are responsive, however, he is not presently able to locate them. If located, they will be promptly provided to Plaintiffs. In addition there are numerous videos posted on nsm88.org that are responsive but, due to technical difficulties, cannot be turned over until the week of April 9, 2018.

(*Id.* at 2.) In the ten months since making that commitment, although he has remained engaged in the litigation and comments on it on social media, *see* Ex. 12 at 4, Mr. Schoep has yet to produce a single document.

Plaintiffs followed up on Mr. Schoep's belated response two weeks later through a letter to his attorneys laying out the inadequacy of Defendants' responses, including Mr. Schoep's. (Ex. 4 (Letter from G. Tenzer to J. Kolenich and E. Woodard (Apr. 24, 2018).) Among other things, Plaintiffs pointed out that Mr. Schoep's discovery obligations went further than simply making vague reference to a website that purportedly contains responsive information mixed in with non-responsive information, and that Defendants are required to collect responsive material within their custody and control and produce it to Plaintiffs. (*Id.* at 3.) Plaintiffs also requested that Defendants execute Plaintiffs' Proposed Order and Stipulation for the Production of Electronically Stored Information and Proposed Evidence Preservation Stipulation and Order. (*Id.*)

After months of negotiation, Mr. Schoep neither produced documents nor signed the Proposed Order and Stipulation. Having received nothing from Mr. Schoep—as well as a host of other Defendants—Plaintiffs were forced to file a Motion to Compel Defendants to Permit Inspection and Imaging of Electronic Devices on October 2, 2018. (*See* ECF No. 354.) Plaintiffs sought to compel Defendants, including Mr. Schoep, to submit their electronic devices and social media accounts that contained potentially relevant information to a neutral, third-party vendor for imaging and preservation. Mr. Schoep, through his attorney Mr. Kolenich, opposed that motion.

5

(*See* ECF No. 355.) After the parties fully briefed the issue, the Court granted Plaintiffs' motion on November 13, 2018. (ECF No. 379.) During argument on the motion, the Court noted that "these discovery requests were issued in January; now it is November. And it is a significant delay." (ECF No. 385 at 8 (Nov. 13, 2018 Tr.).)

### IV. The Vendor Contract

Cognizant of the time it would take to negotiate a contract with a discovery vendor and of the discovery cutoff (then February 8, 2019), Plaintiffs sent a contract to Defendants that they were prepared to sign on December 28, 2018. Although the deadline for fact discovery at that point was only five weeks away, Defendants, including Mr. Schoep, took their time reviewing the contract. In a January 4, 2019 hearing held at Plaintiffs' request, Plaintiffs' counsel informed the Court that "we have sent the contract to the other side. And we are waiting to hear back from them on that . . . . As you may recall, some of the certs came in late. And therefore, everything sort of -- it was a waterfall. And we're falling behind." (Ex. 5 at 13 (Jan. 4, 2019 Tr.).)

As a result of these discovery delays, after the January 4 conference, the Court moved the fact discovery deadline back to April 17, 2019. (*See* ECF No. 397.) But Defendants, including Mr. Schoep, continued to negotiate the contract, primarily with the third-party vendor, ***for over a month***—nearly one-third of the time left in the new fact discovery schedule. On January 16, 2019, Plaintiffs sought the Court's assistance in encouraging Defendants to sign the third-party vendor contract so that discovery could proceed. Still, the contract remained unsigned. Mindful of the impending fact discovery deadline, Plaintiffs requested a conference with the Court to discuss a deadline by which Defendants could be ordered to execute the contract and then immediately tender their devices to the vendor for imaging. (Ex. 6 (Email from G. Tenzer to Judge Hoppe and

6

others (Feb. 6, 2019)).) The Court accommodated Plaintiffs' request with another conference on February 12, 2019.

The Court began the February 12 telephonic hearing by noting there were "deadlines that [Plaintiffs] would like to have set so that discovery can move forward and come to a completion in very short order, recognizing that we're really about two months away from the close of discovery." (Ex. 7 at 5 (Feb. 12, 2019 Tr.).) With respect to the vendor contract, the Court ordered Defendants to sign the contract by Friday, February 15: "[T]his has just got to move forward. . . .[T]his contract has got to be signed by Friday, whatever form the indemnification is in or not. . . . [W]hat I would like you all to do is to wrap up the negotiations on that and have the contract signed by this Friday." (*Id.* at 9-12.)

Recognizing that signing the contract was only the first step in a lengthy production process that involves imaging each of Defendants' devices, Plaintiffs specifically requested that Defendants turn over their electronic devices and provide access to social media accounts at the time of entering into the contract. (*Id.* at 12-13.) The Court asked counsel for certain Defendants, Mr. Kolenich, who still represented Mr. Schoep, whether there was any problem with that. (*Id.*) Mr. Kolenich replied, "No. As I understand it, there's no -- most of my clients are squared away with just sending it in these Faraday bags that the vendors will send. One or two of them, like, if there's a larger device, if there's someplace they can meet near where the client is. . . . I don't foresee it being a problem. All of my people, as best I can tell . . . I understand that they're going to have to turn these devices over and they're prepared to do it." (*Id.* at 13.) With respect to social media accounts, Plaintiffs asked that defense counsel "start pulling those all together to provide to the vendor so that once they get the devices and the account, they can immediately start performing the work that they need." (*Id.* at 14-15.) Mr. Kolenich stated there would be no problem setting

7

up a call with the vendor that week to get the process started on providing access to Defendants' social media accounts. (*Id.* at 15-16.)

V.    **Schoep "Fires" Kolenich**

On February 14, Mr. Kolenich, who at that time still represented Mr. Schoep, stated he had no further comments on the vendor contract. (Ex. 8 (Email from J. Kolenich to J. Brennan and others (Feb. 14, 2019).) On February 16, however, the day after the contract was to be executed and all devices turned over, Mr. Kolenich reported that Mr. Schoep—along with the NSM and NF, which Mr. Schoep controls—had fired him, something Mr. Kolenich claimed was a "very recent development" that prevented him from being able to "ethically[] bind them to a contract[.]" (Ex. 9 (Email from J. Kolenich to J. Brennan and others (Feb. 16, 2019)).) In other words, over the course of thirteen months since his electronic documents were requested, Mr. Schoep allowed Mr. Kolenich to respond to discovery requests, litigate a motion to compel, and undertake a months-long negotiation over the third-party vendor contract on his behalf. But he fired Mr. Kolenich on the day Mr. Kolenich was prepared to execute the contract on his behalf, which would have required Mr. Schoep finally to turn over his electronic devices. And tellingly, Mr. Schoep sought to terminate the representation by Mr. Kolenich only in this case; he expressly requested that Mr. Kolenich continue to represent him in other matters. (*See* ECF No. 421 at 2.)

VI.   **Schoep Fails to Participate or Comply with Court Orders**

Upon learning Mr. Schoep was proceeding in the litigation *pro se*, Plaintiffs reached out to Mr. Kolenich seeking permission to speak with Mr. Schoep regarding the third-party vendor contract. On Wednesday, February 20, Plaintiffs then emailed Mr. Schoep at the address provided by Mr. Kolenich. (Ex. 10 (Email from C. Greene to J. Schoep (Feb. 20, 2019)).) The email attached the third-party vendor contract and asked Mr. Schoep to execute the agreement.

8

Additionally, Mr. Schoep was invited to participate in the meet-and-confer among the parties scheduled for that afternoon. (*Id.*) Plaintiffs also offered to schedule another time to discuss search terms and other issues relating to the collection of Mr. Schoep's devices and social media accounts with him. Mr. Schoep never responded to the email and failed to appear for the meet-and-confer. The Court held a conference the following day regarding the status of Defendants' electronic device collection and production process. Not a single Defendant had yet provided the vendor with a single electronic device or access to a single social media account. Mr. Schoep failed to appear entirely.

The Court held another conference on the issue on February 21, 2019. Mr. Schoep again failed to appear. Regarding Mr. Schoep, NSM, and NF failing to sign the third-party vendor contract, the Court inquired of Mr. Kolenich, "what is the holdup or the problem with them as far as signing the contract and providing the devices? I'm not asking you to get into attorney-client privileged information but can you tell me what is going on? . . . [W]hat is their problem with doing those? I mean, why are they not signing the contract?" (Ex. 11 at 9 ( Feb. 21, 2019 Tr.).) Mr. Kolenich stated only that he had "a theory, based on privileged information[]" but as to "why they won't sign it or what they intend to do, [he did] not know." (*Id.* at 10.) As of the filing of this motion, Mr. Schoep has yet to execute the third-party vendor contract, respond to Plaintiffs' communication, or provide access to any electronic device or social media account.

## LEGAL STANDARD

A court may impose sanctions, up to and including dismissal or a default judgment, when a party fails to comply with discovery ordered by the court. *See* Fed. R. Civ. P. 37(b)(2); *Mut. Fed. Sav. & Loan v. Richards & Ass'n.*, 872 F.2d 88, 92 (4th Cir. 1989). It is generally recognized that Rule 37 sanctions are intended to: (1) penalize culpable parties; (2) deter others from engaging

9

in similar conduct; (3) compensate the court and other parties for expense caused; and (4) compel discovery. *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* § 49 (2013) (citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)).

The Fourth Circuit has developed a four-part test for a district court to apply in determining what sanctions to impose under Rule 37: (1) whether the noncomplying party acted in bad faith;[2] (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective. *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The presence or absence of any one of these factors is not dispositive: "[t]he harshest of sanctions" may be imposed "when . . . culpability is minimally present, if there is a considerable showing of prejudice, or, alternatively, the prejudice is minimal but the culpability is great. . . ." *Victor Stanley, Inc.* v. *Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010).

Rule 37 specifies a nonexclusive list of substantive, case-related sanctions for failure to obey a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also provides for the "payment of expenses" by the disobedient party, including "the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at 37(b)(2)(C).

---

[2] While bad faith is relevant to the analysis, and is evident in Mr. Schoep's case, the Fourth Circuit does not require that a Court find bad faith in order to impose the type of sanctions being sought here. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001) (holding that dismissal for spoliation is "usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case."); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions.").

# ARGUMENT

Mr. Schoep has flouted both the Federal Rules and specific mandates from this Court, culminating in the eleventh hour termination of his counsel, in a transparent attempt to avoid turning over the very information this Court ordered all Defendants to disclose. After Mr. Schoep failed to produce a single document in the first ten months of discovery, Plaintiffs were forced to seek an order from this Court compelling him to submit his electronic devices and social media accounts to a third-party vendor for imaging. When Mr. Schoep failed to execute the agreement necessary to begin the imaging process, Plaintiffs were forced to return to the Court to seek a deadline for him to do so. That deadline was imposed by the Court and then promptly ignored by Mr. Schoep who, rather than comply with the Court's directive, chose to fire his lawyers on the very day he was required to sign the agreement. He has since ignored communications from Plaintiffs and continues to withhold all documents. His obstinate disobedience is not only willful, it has effectively run out the discovery clock, virtually eliminating any chance that Plaintiffs can conduct the necessary follow-up investigation or take a meaningful deposition from Mr. Schoep in the few short weeks left in the discovery period. The Federal Rules simply do not allow a party to prejudice its adversary by willfully evading discovery violations and wantonly violating Court orders without any recourse. That is precisely what Rule 37 is for.

Applying the four-part test to this case makes clear that sanctions against Mr. Schoep are warranted. There is no question that Mr. Schoep "failed, without reasonable explanation, to comply with the discovery rules and a court order, which alone merits admonishment." *Diversified Servs., LLC* v. *Nat'l Cas. Co.*, No. 2:14–CV–00033, 2015 WL 164088, at *3 (S.D.W. Va Jan. 13, 2015). "Indeed, any noncompliance by a party with a court-ordered discovery deadline is a ground for some form of sanctions." *Bluestein* v. *Cent. Wis. Anesthesiology, S.C.*, 296 F.R.D. 597, 600

(W.D. Wis. 2013) (citing *Tamari v. Bache & Co.*, 729 F.2d 469, 473 (7th Cir. 1984) ("[C]ulpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all.")). Not only has Mr. Schoep failed to provide any documents in the more than thirteen months since he was served with document requests, he has taken affirmative steps to evade court orders obstruct Plaintiffs' attempts to obtain his documents, such as firing his attorney in this matter (but not others) when the time finally came for him to sign the third-party vendor agreement and surrender his devices. The Court should infer bad faith from those facts alone. *See, e.g.*, *Green* v. *John Chatillon & Sons*, 188 F.R.D. 422, 424 (M.D.N.C. 1998) (noting "[n]oncompliance with discovery orders can serve as a basis for a finding of bad faith," and dismissing plaintiff's claims with prejudice under the four-part *Mutual Federal* test based on plaintiff's "complete failure to provide discovery over ***eight months*** after the original requests and over two months after being ordered . . . to do so" (emphasis added)); *Daye* v. *Gen. Motors Corp.*, 172 F.R.D. 173, 177 (M.D.N.C 1997) ("The failure of Plaintiffs and Colbert to honor the Orders of this Court and Colbert's failure to initiate any contact with Defendant's counsel for over six months constitutes both unjustifiable negligence as well as bad faith.").

Moreover, Mr. Schoep has not articulated any legitimate explanation for his failure to produce the documents he promised by "the week of April 9, 2018" or to sign the third-party vendor contract when ordered to do so by the Court. (*See* Ex. 3 at 2.) When asked by the Court during the February 21 conference—a conference that Mr. Schoep ignored—what Mr. Schoep's problem was in signing the contract and providing his devices, Mr. Kolenich stated he did not know. (Ex. 11 at 9-10.) The inability to provide reasons for discovery failures has been taken by courts as evidence of bad faith. *See Robinson* v. *Yellow Freight Sys.*, 132 F.R.D. 424, 428 (W.D.N.C. 1990) ("Plaintiff has utterly failed to come forward with any legitimate reason that

explains his refusal to attend the two (2) scheduled depositions in Kingstree. Thus, the Court concludes that Plaintiff chose to disregard this Court's discovery orders in bad faith."). It is particularly suspicious that Mr. Schoep waited until the very day he was supposed to sign the contract to fire his attorneys and to seek to fire them in this matter alone, while hoping to retain them in other matters. This Court should not countenance such gamesmanship.

The prejudice to Plaintiffs from a Mr. Schoep's wholesale failure to produce documents is substantial. Mr. Schoep was the leader of one of the entity Defendants, NSM. (Am. Compl. ¶¶ 37-38.) He participated in the planning of the Charlottesville rally, and attended the rally alongside others from his organization. (*Id.* ¶¶ 63; 214; 228.) Without access to a single document from him or his organization, it will be difficult for Plaintiffs to establish at trial the pivotal role he seems to have played. Courts have recognized that a party's failure to provide documents necessary for its adversary to prove elements of its case constitutes the prejudice Rule 37 seeks to remedy. *See, e.g.*, *Mut. Fed.*, 872 F.2d at 93 ("Mutual suffered great prejudice as a result of the defendants' misconduct because Mutual could not prove its case, in particular its RICO claim, without the business and bank records withheld by R & A."). Certainly, the logic of *Mutual Federal*, which dealt with a partial production, applies *a fortiori* when a party fails to provide **any** documents whatsoever.

Additionally, while Mr. Schoep admitted in his interrogatory response that he attended the rally with other members of NSM (Ex. 3 at 1), Plaintiffs currently do not know who those other members are, which is detrimental to Plaintiffs' ability to prove liability against NSM as an organization. Were Mr. Schoep to have produced the content of his phone or other social media accounts in a timely manner, Plaintiffs would have had the ability to discover who else from his organization participated in the planning of, or attended, the rally, with time to potentially

13

investigate and depose those people. Even were Mr. Schoep to suddenly produce the evidence he has been withholding for over a year, there is no time left on the discovery clock for Plaintiffs to conduct any meaningful follow-up investigation on what they receive. In addition to the time and expense it has cost Plaintiffs to pursue basic discovery from Mr. Schoep, he should not be allowed to prejudice Plaintiffs in their ability to investigate and prove their case through willful defiance of the discovery process.[3]

Regarding deterrence, the Supreme Court has instructed that the "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Such deterrence is particularly necessary in this case. As the Court is aware, Mr. Schoep is far from the only Defendant who has failed to produce a single document. Indeed, ***nine*** of the remaining Defendants have yet to turn over any documents, seven weeks before the close of fact discovery. Plaintiffs have worked diligently throughout this case to comply with their own discovery obligations and even to facilitate Defendants' ability to meet theirs, offering, for example, to pay for costs Plaintiffs are rarely obligated to shoulder. Those efforts have been met with stall tactics by Defendants, leaving Plaintiffs hamstrung in their ability to receive and review Defendants' documents in time to take meaningful depositions and conduct any follow-up investigation.

---

[3] While the Court noted it was "going to make sure that [Plaintiffs] have time to make use of those documents for the depositions" (Ex. 11), that ship seems to have already sailed. The time it takes for the vendor to process the electronic devices and social media accounts once they are provided would likely leave Plaintiffs days, at best, to review and digest the documents prior to the end of fact discovery, even if Mr. Schoep decides to become fully compliant overnight.

Finally, the sanctions Plaintiffs are seeking are the least drastic necessary to encourage compliance with this Court's orders and Defendants' discovery obligations, as well as to remedy the expense and effort Plaintiffs have undertaken to obtain Mr. Schoep's documents. Plaintiffs do not seek any of the more damaging case-related options listed in Rule 37. However, it is apparent that the Court's clear order that the third-party vendor contract be signed by Friday, February 15, was insufficient to motivate Mr. Schoep to take even that first step toward producing his documents, and that the sanctions Plaintiffs have requested are narrowly tailored to penalize Mr. Schoep appropriately, deter others from committing similar misconduct, and remedy the substantial prejudice Mr. Schoep has caused Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion, impose the requested sanctions on Mr. Schoep, and order such other relief as the Court deems necessary and appropriate.

Dated: February 27, 2019

Respectfully submitted,

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
jmatz@kaplanhecker.com
cgreene@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
jphillips@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

# RULE 37 CERTIFICATION

      Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted to meet and confer with Mr. Schoep. In addition to the various communications and court proceedings detailed on pages three through nine, Mr. Greene emailed Mr. Schoep on February 20, 2019 at the address provided by Mr. Kolenich, asking him to sign the third-party vendor contract and inviting him to join the meet-and-confer scheduled that afternoon. *See* Ex. 10. Mr. Greene also offered to schedule another time to speak with Mr. Schoep. *Id.* Mr. Schoep never responded to that communication, and then failed to appear for both the meet-and-confer and the call with the Court scheduled for the following day.


Dated: February 27, 2019                                Respectfully submitted,

                                                                      */s/ Michael L. Bloch*
                                                                      Michael L. Bloch (*pro hac vice*)
                                                                      Christopher B. Greene (*pro hac vice*)

                                                                      */s/ Robert T. Cahill*
                                                                      Robert T. Cahill (VSB 38562)


                                                                      *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Lisa M. Lorish
Federal Public Defenders Office
Western District of Virginia - Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
lisa_lorish@fd.org

*Fifth Amendment Counsel for Defendant James A. Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Nationalist Front, National Socialist Movement,[1] Matthew Parrott, Robert Ray, Traditionalist Worker Party, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

---

[1] Although Plaintiffs understand that Mssrs. Kolenich and Woodard have terminated their representation of Defendants Nationalist Front and National Socialist Movement, a proper substitution of counsel has yet to be approved by the Court.

I further hereby certify that on February 27, 2019, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a : Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
2634 U.S. HWY 158 E
Yanceyville, NC 27379

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

I further hereby certify that on February 27, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Jeff Schoep,
jeffschoep@gmail.com

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*