# EXHIBIT 5

```
 1                     UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF VIRGINIA
 2                        CHARLOTTESVILLE DIVISION

 3    ELIZABETH SINES, et al.,
                                        No. 3:17-cv-72
 4                    Plaintiffs,
                                        Charlottesville, Virginia
 5       vs.                            January 4, 2019
                                        2:04 p.m.
 6    JASON KESSLER, et al.,
                        Defendants.
 7
                     TRANSCRIPT OF TELEPHONIC MOTION HEARING
 8              BEFORE THE HONORABLE JOEL C. HOPPE
                    UNITED STATES MAGISTRATE JUDGE.
 9    APPEARANCES:

10    For the Plaintiffs:

11    ROBERTA ANN KAPLAN              ALAN LEVINE
      GABRIELLE E. TENZER            Cooley LLP
12    Kaplan & Company, LLP          1114 Avenue of the Americas
      350 Fifth Avenue, Suite 7110   New York, NY  10036
13    New York, NY 10118             212-479-6260
      212-763-0883
14
      DAVID E. MILLS                 JESSICA E. PHILLIPS
15    Cooley LLP                     Boies Schiller Flexner, LLP
      1299 Pennsylvania Ave., NW     1401 New York Ave., NW
16    Washington, DC 20004           Washington, DC 20005
      202-842-7800                   202-237-2727
17
      For the Defendants:
18
      JAMES EDWARD KOLENICH          JOHN A. DiNUCCI
19    Kolenich Law Office            Law Office of John A. DiNucci
      9435 Waterstone Blvd., Suite 140 8180 Greensboro Drive, Suite 1150
20    Cincinnati, OH 45249           McLean, VA 22102
      513-444-2150                   703-821-4232
21
      Also Present:  ROBERT AZZMADOR RAY
22
      Transcribed by:   Carol Jacobs White
23                      Registered Diplomate Reporter
                        PO Box 182
24                      Goode, VA 24556
                        Carol.jacobs.white@gmail.com
25    Proceedings recorded by FTR; computer-assisted transcription.
```

```
 1        (Call to Order of the Court at 2:04 p.m.)

 2              THE COURT:  Hi.  This is Joel Hoppe.

 3              Who is on the line for the plaintiffs?

 4              MS. TENZER:  Good afternoon, Your Honor.  This is

 5    Gabrielle Tenzer from Kaplan Hecker & Fink, on behalf of the

 6    plaintiffs.  And I'm here with my colleagues Robbie Kaplan and Alan

 7    Levine from the Cooley firm.  And there may be others on the line

 8    as well.

 9              THE COURT:  Okay.  Good afternoon.

10              And then how about for Mr. Ray and Mr. Heimbach?

11              MR. KOLENICH:  Good afternoon, Judge.  Jim Kolenich for

12    Mr. Ray and Mr. Heimbach.

13              THE COURT:  Good afternoon, Mr. Kolenich.

14              And then, Mr. Ray and Mr. Heimbach, are you on the phone

15    as well.

16              MR. RAY:  I'm Robert Ray.  I am on the phone.

17              THE COURT:  Okay.  All right.  So we have Mr. Ray.

18              How about -- is anybody else on the line?

19         (No response.)

20              THE COURT:  Okay.

21              All right.  Well, thank you-all for calling in.  This

22    hearing is being recorded by the Court's FTR system, so there is a

23    record of it.

24              And there are a number of things that I wanted to

25    address.  You know, one is the -- Mr. Kolenich's second motion to
```

1    withdraw from representing Mr. Ray and Mr. Heimbach.  And then also

2    there was a letter that plaintiffs filed concerning some discovery

3    issues, but more about extending the fact discovery deadline.

4            And then just recently there was a filing of a suggestion

5    of bankruptcy, Mr. Kolenich, by -- regarding Mr. Damigo.  And it

6    may be helpful to have everybody on the phone for that.  But I also

7    wanted to just kind of hear what you-all -- what your thoughts were

8    as to the impact of that for the case at this point.

9            Why don't -- why don't we address the suggestion of

10   bankruptcy first.  And, Mr. Kolenich, what -- do you have any

11   suggestions -- you know, it is a stay of all proceedings as to

12   Mr. Damigo.  What is your assessment of the impact on the overall

13   case?

14           MR. KOLENICH:  Your Honor, I -- it is my understanding

15   -- and I'm not a routine bankruptcy practitioner, although I have

16   done some of these adversary proceedings -- that until further

17   order of the bankruptcy judge, nothing else can be done regarding

18   Mr. Damigo.  It has no effect on the rest of the case.

19           THE COURT:  All right.  And, Ms. Tenzer or Ms. Kaplan or

20   Mr. Levine, what are your views on that?

21           MR. LEVINE:  It is Levine, Your Honor.

22           THE COURT:  Levine.  Excuse me.

23           MR. LEVINE:  So we are currently evaluating the impact of

24   it.  But we expect to make a motion in the federal bankruptcy court

25   to relieve the stay to permit Mr. Damigo to proceed -- the claim

1    against Mr. Damigo to proceed here.  But I am not prepared to say

2    when we are doing that.  We are looking at it right now.  And we

3    are going to do whatever we are going to do as quickly as possible.

4              THE COURT:  Okay.  All right.

5              Well, then, let's go ahead and move on to the other

6    issues.  As to the request to extend discovery to the -- it would

7    be to the expert disclosure -- or the deadline for expert

8    discovery, as I understand it, which would be 75 days before trial,

9    is that what you-all were proposing?

10             MR. LEVINE:  Your Honor, it is Alan Levine again.

11             When we were -- what we proposed was that the close of

12   fact discovery be moved to April 24, which is the date of the close

13   of expert discovery and also happens to be the date under your

14   order that dispositive motions are filed.  We don't see a reason

15   right now to interfere with the Court's order from June 15, 2018,

16   that required expert discovery to be completed 75 days before

17   trial, because we don't believe necessarily that the expert

18   discovery has to -- has to follow the fact discovery as this case

19   is now playing out.

20             The -- from our vantage point, we're going to -- we have

21   tendered dates for the plaintiffs for their depositions.  And I

22   -- my expectation is that those depositions will take place in more

23   than enough time for the defendants, if they so choose to get

24   expert discovery of physicians or other medical experts in respect

25   of the damages.  We have provided -- we have provided the

1  information in respect of the plaintiffs' doctors, etc.  So the

2  defendants have that information.

3          As far as experts on the plaintiffs' side, on our side,

4  at the present time, Your Honor, we haven't really decided if we

5  are going to have experts.  But we're almost certain that they

6  -- that expert -- any such experts would not be connected to the

7  completion of fact discovery.  And so I don't think that one would

8  have to follow the other in the traditional sense.

9          So at this time we're trying to hold tight to the Court's

10  trial date, although -- although you might hear from us at a later

11  point.  But right now we're definitely trying to hold tight to that

12  date.  And we're just trying to move the fact discovery date to a

13  time that is more realistic given all of the difficulties that we

14  know the Court is aware of that we have had in getting ESI

15  discovery and Discord discovery.

16          THE COURT:  All right.  And, Mr. Levine, at this time you

17  don't anticipate that the plaintiffs would be filing any

18  dispositive motions; is that correct?

19          MR. LEVINE:  That's right, Your Honor.

20          THE COURT:  All right.  And the deadline to exclude

21  experts also falls at that dispositive motions' deadline, which is

22  75 days before trial.  So that's just something else to keep in

23  mind.

24          Mr. --

25          MR. LEVINE:  Understood.

```
 1              THE COURT:  All right.

 2              And I think I have heard some chimes, so I'm wondering if

 3   anybody else has called in.

 4              MR. DiNUCCI:  Yes, Your Honor.  This is John DiNucci.  I

 5   got tied up with something else.  My apologies.  I just called in

 6   at the tail end of Mr. Levine's comments.

 7              THE COURT:  Okay.

 8              MR. MILLS:  And this is David Mills and Jessica Phillips

 9   have also joined in.  We're just going to put it on mute.

10              THE COURT:  All right.

11              All right.  Well, let me -- what we were talking about

12   was the extension of fact discovery to April 24th, which is 75 days

13   before trial.

14              Do any of the defendants think that you may be filing for

15   summary judgment?

16              Mr. Kolenich?

17              Mr. Kolenich, are you still there?

18              MR. KOLENICH:  I'm sorry, Your Honor.  I had it muted.

19              Yes, we do anticipate filing for summary judgment,

20   although, admittedly, that's heavily dependent on the remaining

21   fact discovery.

22              THE COURT:  Okay.  Do you -- do you think that -- pushing

23   the discovery -- the fact discovery deadline back to the same

24   deadline as that for filing dispositive motions, is that going to

25   cause any problems for you in filing those motions?
```

 1           MR. KOLENICH:  We don't have any objection to pushing the

 2    fact discovery deadline back.  As far as it being on the very day

 3    it is due, I don't think it will.  I think that they have proffered

 4    dates.  We should be able to work with them.  This whole expert

 5    thing, you know, they haven't identified experts yet.  So, I don't

 6    know, as long as the Court is aware that there may be issues that

 7    come up with that date.  But I think I'm satisfied for now.  I

 8    should be able to work with that date as things stand right now.

 9           THE COURT:  All right.

10           Mr. DiNucci, how about from your perspective?

11           MR. DiNUCCI:  I do anticipate, Your Honor, preparing and

12    filing a motion for summary judgment.  As far as the impact on such

13    a motion from any extension of the fact discovery cutoff, I guess

14    that's something I'm just going to have to live with, although I

15    suppose I could be filing a motion only to find out that at the

16    last minute I get hit with a slew of information that says it was a

17    waste of time filing the summary judgment motion.  But I have to

18    live with it.  But I do not oppose an extension of the discovery

19    cutoff.  Given certain circumstances, I think I need it myself.

20           The one comment I would like to make in that vein -- and

21    it ties into the colloquy about experts -- unless I have missed

22    something, I haven't seen any material medical records from any of

23    the plaintiffs, most particularly mister -- I think his name is

24    Magill, who indicates he had a stroke because of certain alleged

25    events.  I mean, I'm sort of handicapped right now, without that

1   information, because I have nothing to give to an expert on my side

2   to start to analyze and see if we're going to designate -- defense

3   collectively designate somebody on certain critical issues.

4           THE COURT:  All right.

5           Mr. Levine, on -- do you -- is there some medical

6   discovery that you anticipate providing for that plaintiff?  Or do

7   you think --

8           MS. TENZER:  Your Honor, this is Gabrielle Tenzer.  Hi.

9           We have -- as we discussed with Mr. DiNucci, we have

10  gotten HIPPA releases and received medical records for the

11  plaintiffs, which are -- or have for the large part been produced

12  to Mr. DiNucci.  We also have recently requested updated medical

13  records and records that go back farther in time, partially in

14  response to requests from Mr. DiNucci.  So those we have been

15  producing and will continue to produce as -- you know, consistent

16  with our obligations under the rules.

17          THE COURT:  All right.  You think that you already have

18  provided the medical records for that plaintiff?

19          MS. TENZER:  It is my understanding that we have produced

20  medical records for all of the plaintiffs except for Plaintiffs Doe

21  and Magill, as Mr. DiNucci pointed out.  And that's the current

22  status.

23          MR. DiNUCCI:  Could I interject a comment, Your Honor?

24          THE COURT:  Sure.

25          MR. DiNUCCI:  Mr. DiNucci here.

1          Judge, I personally have not seen the medical records

2     being alluded to, with respect to very limited exceptions.  And one

3     of the issues -- and it is not -- I guess technically it is

4     certainly not before the Court, but what is making review of

5     records difficult here is the documents are being produced not

6     -- they are not labeled to correspond with the document requests.

7     And so we're having to pour through thousands and thousands of

8     pages to try to isolate documents that are most important at this

9     point.  I'm looking at -- you know, I'm focused on damages and

10    medical records.  And I just haven't seen something.  But there's

11    some buried in there.  But, by and large, I haven't seen medical

12    bills, for example.  I haven't seen psychological evaluations or

13    psychiatric evaluations of any of the plaintiffs.  And I think for

14    most -- some are complaining of hard tissue injuries and we have

15    Mr. Magill and the alleged stroke, but for the rest it seems that

16    the damage claim is primarily psychological.  I don't have any

17    evaluations.

18          THE COURT:  All right.

19          MR. DiNUCCI:  And if I've missed something, I'll eat crow

20    big time.  But perhaps plaintiffs' counsel could help me out and

21    give me some Bates numbers, because otherwise I have got to go back

22    through about 10,000 pages of paper.  I haven't just seen them.

23          MS. TENZER:  Your Honor, it is Gabrielle Tenzer again.

24          We have produced the records.  And as we've discussed

25    with Mr. DiNucci, we believe that we have complied with the federal

1   rules for production of ESI.  And there's no requirement that we

2   tie them specifically to specific requests.  But in response, one,

3   I think we have identified medical records to the extent that they

4   are responsive to specific interrogatories that have been posed.

5   We've served with our discovery a cover letter each time that

6   provides the Bates ranges that are being produced and then

7   specifically identify particular Bates ranges that are responsive

8   to particular interrogatories.

9          I would also suggest, having seen some of them, the

10  medical records are pretty obvious in certain respects.  They are

11  large sort of chunks of documents.  A lot of them are from UVA.

12  And that's all I can say at this point.

13          THE COURT:  Are you making that same identification,

14  particular Bates numbers, for the request for productions of

15  documents as well, with the exception of any ESI --

16          MS. TENZER:  No.  Because of the way that we have

17  answered the interrogatories, where we say that we will, under Rule

18  I think it is 33(d), you know, produce documents -- business

19  records type documents that are -- that provide the information in

20  response to the interrogatory, we have been providing those

21  specifically because that's sort of part of the .rog response.

22          But it is our -- it is our interpretation of the rules

23  that there's no requirement under the federal rules to specifically

24  identify Bates ranges as being responsive to particular document

25  requests.

1          THE COURT:  All right.

2          Mr. DiNucci --

3          MS. TENZER:  Yeah, I mean, I -- I -- we have met and

4     conferred with Mr. DiNucci about this.  You know, I can confer with

5     my team and we can see if we can provide him the specific Bates

6     ranges for the medical records, if that will move the process

7     along.

8          THE COURT:  Yeah.  I think that would be helpful.  If

9     there are 20 requests for production of documents, I hope that you

10    are not just delivering, you know, written responses to those

11    without identifying any documents and then a bankers box or a CD

12    with a couple thousand documents that don't have any -- you know,

13    that aren't associated with any particular request.

14         MS. TENZER:  We would be happy to go back and identify

15    the medical records by Bates ranges for Mr. DiNucci and the other

16    defendants.

17         THE COURT:  Okay.  All right.

18         MS. TENZER:  Mr. DiNucci did serve over a hundred

19    document requests, so --

20         MR. DiNUCCI:  That's correct.  I have a very voluminous

21    document request.  But those requests for medical records are

22    limited in number.  And as I recall, nothing that has been produced

23    has been labeled to correspond to the document request.  And with

24    respect to interrogatory answers and allusion to a reference to

25    documents and Bates numbers in response to interrogatories, I have

1    got -- we have issues that I don't want to bore the Court with now

2    about the sufficiency of the interrogatory answers.  So I'll be

3    taking that up with Ms. Tenzer again.

4              THE COURT:  Okay.

5              MR. DiNUCCI:  But I'll leave it at that.

6              THE COURT:  All right.  All right.

7              Well -- all right.  So, from the defendants' perspective,

8    it sounds like it may be -- it may be necessary to back up the fact

9    discovery deadline just a bit, you know, maybe -- maybe a week or

10   so, to allow for fact discovery to close a bit in advance of

11   dispositive motions deadline.  I'm fine with extending fact

12   discovery.  I think that is necessary given how the discovery has

13   gone.  But I think it probably makes sense to set the close of fact

14   discovery at, let's say, April 17th, to allow a little bit of time

15   in between the two deadlines.

16             MR. LEVINE:  That works.  Thank you, Your Honor.

17             THE COURT:  All right.  Mr. Levine, are there also some

18   outstanding issues about the defendants' compliance with the ESI

19   protocol?

20             MR. LEVINE:  I think Ms. Tenzer will tackle that issue.

21   That's her baby.

22             THE COURT:  Sorry.  Ms. Tenzer.

23             MS. TENZER:  Thank you, Your Honor.

24             I think you are talking about what we refer to as now the

25   imaging stip, the issues that we had discussed previously and the

1    order that Your Honor entered.  And we have made some progress on

2    that.

3              The one thing I would like to note, we -- under the order

4    there is supposed to be a third-party discovery vendor that is

5    going to be doing the imaging and hosting the documents for the

6    defendants' counsel to review.  The next step in the process is to

7    have the contract entered into by all of the parties.  We have sent

8    the contract to the other side.  And we are waiting to hear back

9    from them on that.

10             So we're -- I would say we're behind schedule under the

11   order.  As you may recall, some of the certs came in late.  And,

12   therefore, everything sort of -- it was a waterfall.  And we're

13   falling behind.

14             But where we are now is we have received the certs, other

15   than from the three defendants that we have discussed previously:

16   Ray, Heimbach, and Mosely.  We have raised some issues with those

17   certs that have yet to be addressed.  But putting that aside, I

18   think the next big ticket item is to get the vendor contract in

19   place.  And we are open to having, you know, meet and confer

20   discussions with defense counsel if they want to discuss the

21   contract.  But we would like to get that in place as quickly as

22   possible, so we can start the imaging process.

23             THE COURT:  Okay.  Is there anything that we need to

24   -- you know, the contracts are an issue that you-all are working

25   on.  Is there anything that we need to address about compliance

1   with the order, I guess in particular for Mr. Ray and Mr. Heimbach

2   on the certifications?

3           MS. TENZER:  I don't know if we're going to address that

4   in the motion to withdraw.  Those are still outstanding --

5           THE COURT:  All right.

6           MS. TENZER:  -- those certifications.

7           THE COURT:  Mr. Kolenich, what is the status of those?

8           MR. KOLENICH:  Judge, as I think I emailed to chambers,

9   Mr. Heimbach's response to the last court order was to terminate my

10  representation.  So he has fired myself and Mr. Woodard and forbid

11  us to take any actions on his behalf.  The Court will also note

12  that he hasn't called in today, even though I did transmit the time

13  and call-in information.  So that's the status on Heimbach.

14          Mosely's status is well-known to the Court.

15          Mr. Ray's information, that is on me.  I haven't

16  completed getting that information from Mr. Ray yet.  He is fully

17  cooperating with the process.  And we'll get that just as soon as

18  possible.  And, of course, the contract issue, the statement of

19  work, is a separate issue.  And we'll take that up with Ms. Tenzer.

20          THE COURT:  Where -- Mr. Kolenich, it is news to me that

21  Heimbach has terminated your representation.  I don't recall seeing

22  that.

23          MR. KOLENICH:  Sorry, Your Honor.  I emailed it -- I

24  thought I did -- to chambers.  Maybe I sent it to the wrong one; I

25  don't know.  I deal with many federal courts.  But Mr. Heimbach did

1    fire me more than a week ago, myself and Mr. Woodard.  And we are

2    explicitly forbidden from taking any further action on his behalf.

3              THE COURT:  Okay.

4              All right.  Did -- has anyone else seen that, that email?

5              MR. KOLENICH:  I'll see who I sent it to, Judge.  I

6    believe I copied plaintiffs on it.  But if I didn't, then, again,

7    that's my fault.

8              THE COURT:  Okay.

9              All right.

10             MR. LEVINE:  We received it, Your Honor.

11             THE COURT:  You did?  Okay.  I don't know if it --

12   somehow maybe a gremlin in my computer erased it before I saw it.

13   That certainly can happen as part of the shutdown.

14             Well, Mr. Kolenich, I mean, that's certainly --

15   obviously, if he has fired you, that changes things considerably

16   for the motion to withdraw.

17             You know, given that, Mr. Levine or Ms. Tenzer, do

18   you-all have a different position on the motion to withdraw as far

19   as Mr. Heimbach at this point?  Are you still opposing it?  It

20   seems like it would be proper.

21             MR. LEVINE:  I don't think we'd take a position now, Your

22   Honor.  I -- if he has been fired, he has been fired.

23             THE COURT:  Yeah.  You know, it is -- and that was

24   -- with -- Mr. Kolenich, with your previous motion to withdraw for

25   Elliot Kline, you know, I granted that because there had really

1   been a complete breakdown in communications.  Here it sounds like

2   there has been a breakdown and also you have been terminated.  So,

3   you know, I will certainly grant your motion to withdraw

4   Mr. Heimbach.

5          MR. KOLENICH:  Thank you, Your Honor.

6          Now, Mr. Ray, of course, is on the phone.

7          THE COURT:  Right.

8          MR. KOLENICH:  And he -- I think he -- I'm sorry.  Go

9   ahead, Judge.

10          THE COURT:  Mr. Kolenich, can you -- I do want you to

11   send -- because now Mr. Heimbach is going to be pro se, and I don't

12   remember whether we -- the Court already has his contact

13   information or not, but we're going to need that so that we can

14   contact him.  And plaintiffs' counsel will need that as well so

15   they can contact him directly.

16          MR. KOLENICH:  I will send that, Your Honor.

17          THE COURT:  Okay.

18          All right.  Then, moving on to the motion to withdraw as

19   to Mr. Ray.  Any change in circumstances?

20          MR. KOLENICH:  He has still got the criminal motion

21   pending.  I think we already acknowledged that we're going to hang

22   in through the discovery process at least.  In the meantime, if

23   he's able to rectify the fee situation, then maybe we'll hang in

24   longer than that.  So I think that the motion to withdraw as to

25   Mr. Ray is still in a taken-under-advisement status pending

1    discovery.

2              THE COURT:  Okay.  All right.

3              Well, I tell you, I will -- I'm fine doing that,

4    continuing to take it under advisement.

5              Mr. Kolenich, the more I think about it, I would -- you

6    know, Mr. Ray certainly has his obligations to you.  And I would in

7    no way -- you know, if I were to deny your motion to withdraw, I

8    would in no way be endorsing his failure to pay you for your

9    services, but -- and also, in particular, to pay the costs

10   associated with, you know, depositions and things like that.

11             Mr. Ray, you know, Mr. Kolenich is -- he's staying in the

12   case and continuing to work on your behalf and incur fees, whether

13   -- whether or not you are paying those, you are still -- you are

14   still obligated to pay them.  And, in particular, you know, when it

15   is time for your deposition, if there are costs associated with

16   getting transcripts and things like that, if you-all want them, I

17   think it is very important for you to -- you know, for you to pay

18   for any deposition transcripts, any hard costs that Mr. Kolenich

19   would have in representing you.

20             MR. RAY:  Yes, sir.  I understand that.  And I do agree.

21   I am certainly not falling behind on my payments because I don't

22   want to pay Mr. Kolenich.  Thus far this process has basically just

23   completely broken me financially.  And I am trying to -- I'm at my

24   wit's end to do it, but I'm trying to come up with some way to

25   raise some money to pay Mr. Kolenich.  I have been very happy with

1  his representation.  And I would like, if at all possible, to be

2  able to keep him on through this whole process.

3  THE COURT:  All right.  And he has certainly -- in past

4  calls he has said that, you know, he doesn't think that you are

5  unwilling to pay.  He thinks that it is difficult for you.  And,

6  you know, I understand that.  But I do think it is important that

7  you are paying -- certainly paying the costs associated with the

8  representation.

9  And, you know, Mr. Kolenich, when it -- when it gets to

10  -- gets to time for trial in this matter, you know, whether or not

11  I were to grant the motion to withdraw, I think that -- or not, you

12  know, the cost of coming to trial and the time for being there at

13  trial, you know, it is ultimately going to be the same.  And I

14  don't know -- I imagine there would be some additional time that

15  you would have to devote to preparing Mr. Ray for trial, some new

16  conferences and meetings with him.  But, you know, I don't think

17  that it is going to be so great, at least at this -- at least as

18  far as I can see things at this point, that it would -- that it

19  would warrant withdrawing from the matter.

20  I'm going to take the motion under advisement.  I'll be

21  happy to hear you otherwise, if you think differently, at a later

22  time.  But that's how I'm viewing the motion at this point.

23  MR. KOLENICH:  Yes, sir.  We'll get through discovery and

24  then see where we're at.

25  THE COURT:  Okay.

1          All right.  Well, then, is there anything else that we

2    need to take up today?  Ms. Tenzer?  Mr. Levine?

3          MR. LEVINE:  Just in spite of defendants' counsel's best

4    efforts, you know, we -- this -- the discovery -- the electronic

5    discovery, these consents, all of this, Your Honor, is just moving

6    very slowly.  I mean, we still don't have -- we still don't have

7    consents from Mosely, from Ray.

8          We don't -- the -- I'll just alert Your Honor we are very

9    likely to make a motion to compel Discord to produce.  We have

10   found the production, after all of this, very wanting, incomplete.

11   We have tried to get a response of where we are before today to

12   report to the Court, but that isn't even complete.  So we're not

13   even in a position to definitively tell you where we are with

14   Discord.

15         But it is -- all of this has taken just a lot of time.

16   And, of course, I'm sure the Court can appreciate our reluctance to

17   take -- take the defendants' depositions without basic documents

18   which constitute their writings and contemporaneous comments about

19   the events in question.  So that's why we have been holding off.

20   And that's why, at least for the next several weeks, we're pretty

21   much going to continue to be delayed in scheduling the defendants.

22         But we -- we're trying to move as quickly as possible.

23   We would like to keep the trial date in July.  And we certainly are

24   going to do our level best to complete the fact discovery in the

25   time that the Court has now allotted to us.

```
 1              THE COURT:  All right.

 2              Mr. Kolenich, when will you have a certification from

 3   Mr. Ray to provide to the plaintiffs' counsel?

 4              MR. KOLENICH:  Judge, I'll get that as soon next week as

 5   I can.  But what I hear Mr. Levine saying is that Discord is not

 6   cooperating with them, the releases that we have provided

 7   notwithstanding.  And I --

 8              THE COURT:  Mr. Levine, has Discord -- you have gotten

 9   some information from Discord, but not everything that you had been

10   expecting; is that right?

11              MR. LEVINE:  Exactly, Your Honor.

12              THE COURT:  And it --

13              MR. KOLENICH:  I don't know then, Judge, if it makes

14   sense -- does it make more sense for the defendants themselves, the

15   actual Discord account holders, to try to get this stuff from

16   Discord?  If plaintiffs would tell us who they are talking to over

17   there, which I asked them through Mr. Greene and I didn't get any

18   response, maybe we can get Discord more motivated.  I don't know.

19              MR. LEVINE:  I -- I don't -- I have no problem telling

20   defendants' lawyers who represents Discord.  It is the law firm of

21   Perkins & Coie.  But it is not so much that they don't like talking

22   to us.  It is the electronic data doesn't seem to be talking to us,

23   Your Honor.

24              THE COURT:  Okay.  All right.  Well, that's probably --

25              MR. LEVINE:  I mean, if the defendants' lawyers think
```

1   they can help us in this process, I would love their assistance.  I

2   just -- we haven't reached out to them for that purpose because I

3   don't really think that's where the problem is here, Your Honor.

4            THE COURT:  Okay.

5            MR. KOLENICH:  With Mr. Ray in particular, like we

6   discussed last time, that information we don't want it going to the

7   plaintiffs and then to us.  It needs to come directly to me.  So I

8   really need to -- you know, I need to send Mr. Ray's Discord

9   release directly to these people, not through Boies Schiller.

10            MR. LEVINE:  Jim, I'm happy to give that to you.  That

11   won't be a problem.

12            MR. KOLENICH:  Okay.  Yeah.  Just email that to me, and

13   I'll send it in.

14            I have Mr. Ray's signature on the Discord release now.  I

15   have it in my possession.  I understand he hasn't sent you the ESI

16   stip either.  So we'll get that very quickly next week.

17            THE COURT:  All right.

18            All right.  And I think -- Mr. Ray, I think that is

19   important to get that done quickly and have that done next week.

20            MR. RAY:  Okay.  I'm not -- I'm not sure I know what

21   -- I'm not sure I know what that is, but I'm willing to comply with

22   whatever the Court wants.

23            THE COURT:  All right.  Well, that's something you can

24   talk to Mr. Kolenich more about -- about that.

25            MR. RAY:  Yes, sir.

1        THE COURT:  And then, Mr. Levine, as to Mosely, you know,

2    he's representing himself.  And so that's, you know, something that

3    if we need to get him on the phone with -- you know, with you, we

4    can set that -- we can set that up.

5        MR. LEVINE:  Your Honor, perhaps we'll talk to Ms. Dotson

6    off-line and maybe get -- and request a date.  That would be

7    -- that would be appreciated -- if the Court were to issue a

8    conference date for both sides and that generated from chambers,

9    that would be good.

10        THE COURT:  Yeah.  I'm happy to do that.  And I'll

11    mention that to Ms. Dotson this afternoon.

12        MR. LEVINE:  Thank you.

13        THE COURT:  You know, counsel, if we need to put in some

14    hard deadlines for certain things to happen in discovery, you know,

15    then we can do that and we can set some regular compliance.

16    There's still time to have -- you know, we have got a number of

17    months left in discovery.  So there's time to get this done.  But I

18    understand there's a lot to do.  So, you know, please get me

19    involved earlier rather than later.

20        MS. KAPLAN:  Your Honor, this is Ms. Kaplan.

21        Discord -- we asked Discord -- following up on the

22    conversation we had on our last call, we asked Discord if they

23    would consent to any motion practice being before Your Honor.  And

24    unfortunately they are refusing to consent to that.  So any motion

25    practice, unfortunately, that we file against Discord will have to

1    be in the Northern District of California, which, obviously, is not

2    ideal.  But they refuse to give that consent.

3                THE COURT:  Okay.  All right.  Well, thanks for letting

4    me know that.

5                All right.  And then, you know, I'm sure that -- I'm sure

6    that you-all can -- I know you don't want to take any of the

7    defendants' depositions at this point, but I imagine that you can

8    set them, just so that they are on the schedule, in the

9    anticipation that you are going to have discovery before those

10   depositions, just to get them on everybody's schedules, which I'm

11   sure are getting busier by the day.

12               MR. LEVINE:  Okay.

13               THE COURT:  All right.

14               Anything else?

15               Mr. Kolenich, anything?

16               MR. KOLENICH:  No, sir.

17               THE COURT:  All right.  And, Mr. DiNucci, anything else?

18               MR. DiNUCCI:  Nothing, Your Honor.

19               THE COURT:  All right.  And then as to those on mute,

20   Mr. Mills?  Ms. Phillips?

21               MR. MILLS:  No, Your Honor.  Thank you.

22               THE COURT:  All right.  Well, thank you.

23               Well, counsel, Mr. Ray, thank you for calling in.  And

24   have a good weekend.

25               UNIDENTIFIED VOICE:  You too, Your Honor.

1    UNIDENTIFIED VOICE:  Your Honor, are you going to issue

2 an order in respect of the April 17 date?

3    THE COURT:  I will.  I'll do a short order on the things

4 that we have discussed today.

5    UNIDENTIFIED VOICE:  Thank you, Your Honor.

6    THE COURT:  All right.  Thank you.  Take care.  Bye.

7   (Thereupon, at 2:42 p.m. these proceedings were adjourned.)

8

9

10    I, court-approved transcriber, certify that the foregoing is a

11 correct transcript from the official electronic sound recording of

12 the proceedings in the above-entitled matter.

13

14

     /s/ Carol Jacobs White     January 11, 2019

15   Signature of Approved Transcriber    Date

16

17

18

19

20

21

22

23

24

25