```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF VIRGINIA
 2                     CHARLOTTESVILLE DIVISION

 3   ELIZABETH SINES, et al,

 4                      Plaintiffs,
                                        No. 3:17-cv-72
 5        vs.                           Charlottesville, Virginia
                                        March 1, 2019
 6   JASON KESSLER, et al,

 7                      Defendants.

 8         TRANSCRIPT OF TELEPHONIC MOTION and DISCOVERY HEARING
                    BEFORE THE HONORABLE JOEL C. HOPPE
 9                  UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Plaintiffs:

12   GABRIELLE E. TENZER              YOTAM BARKAI
     MICHAEL L. BLOCH                 Boies Schiller Flexner, LLP
13   Kaplan & Company, LLP            575 Lexington Avenue, 7th Floor
     350 Fifth Avenue, Suite 7110     New York, NY 10022
14   New York, NY 10118               212-446-2300
     212-763-0883
15

16   ALAN LEVINE
     Cooley LLP
17   1114 Avenue of the Americas, 46th Floor
     New York, NY 10037
18   212-479-6260

19


20   Appearances Continued Next Page

21


22   Transcribed by:    Carol Jacobs White
                         Registered Diplomate Reporter
23                       P.O. Box 182
                         Goode, VA 24556
24


25       Proceedings recorded by FTR; computer-assisted transcription.
```

```
 1   For the Defendants:

 2   JAMES EDWARD KOLENICH            JAMES HART STERN, Pro Se
     Kolenich Law Office             12625 Frederick Street
 3   9435 Waterstone Blvd., Suite 140   Suite I-5
     Cincinnati, OH 45249            Moreno Valley, CA 92553
 4   513-444-2150

 5   JEFF SCHOEP, Pro Se
     PO Box 13768
 6   Detroit, MI 48213

 7            ****************************************

 8        (Call to Order of the Court at 10:06 a.m.)

 9            THE COURT:  Hi.  This is Joel Hoppe.

10            Who is on the line for the plaintiffs?

11            MR. BLOCH:  Good morning, Judge.  This is Michael Bloch,

12   from Kaplan Hecker & Fink, for the plaintiffs.

13            MR. LEVINE:  And Alan Levine, from Cooley, for the

14   plaintiffs, Your Honor.

15            MR. BARKAI:  Good morning, Your Honor.  This is Yotam

16   Barkai, from Boies Schiller Flexner, sir, also for the plaintiffs.

17            MS. TENZER:  And Gabrielle Tenzer, from Kaplan Hecker &

18   Fink, is also on the line.

19            THE COURT:  All right.

20            All right.  Well, good morning.

21            And, let's see, Mr. Kolenich, are you on the phone?

22            MR. KOLENICH:  Yes, sir.

23            THE COURT:  All right.  Good morning.

24            MR. KOLENICH:  Good morning.

25            THE COURT:  And Mr. DiNucci?
```

1     (No response.)

2          THE COURT:  All right.  How about Mr. Schoep?  Are you on

3     the phone?

4          MR. SCHOEP:  Yes, I am.

5          THE COURT:  All right.  Good morning, Mr. Schoep.

6          MR. SCHOEP:  Good morning.

7          THE COURT:  All right.  And then do we have Mr. Stern on

8     the phone?

9          MR. STERN:  Yes, I am.  I just joined in.

10         THE COURT:  All right.  Good morning, Mr. Stern.

11         Okay.  Do we have anybody else on the line?

12    (No response.)

13         THE COURT:  All right.

14         Well, Mr. Schoep, Mr. Stern, and counsel, this hearing is

15    being recorded by the court's FTR system, so there is a record of

16    this hearing.

17         There are a number of things that I want to take up

18    today.  I believe the first things that we'll need to address are

19    the motions concerning counsel and representations.  And then --

20    we're not going to take up at this time plaintiffs' motion for

21    sanctions against Mr. Schoep.  That's something that, Mr. Schoep,

22    you'll have an opportunity to respond in the time allowed by the

23    court's local rules and the scheduling order.  And then I'll take

24    that motion up when it is ripe.  And it is not right now.  But I do

25    want to get an update about discovery.

1          And then, of course, Mr. Bloch, I did review your letter.

2          MR. BLOCH:  Yes, sir.

3          THE COURT:  And I want to address the schedule, at least

4     preliminarily.  We don't have all of the parties on the line, but I

5     think we can take that up to a degree.

6          So, to start off with, Mr. Schoep, it looks like, from

7     your motion, that you would like to terminate Mr. Kolenich and

8     Mr. Woodard's representation of you yourself and try to hire other

9     counsel.  Is that correct?

10         MR. SCHOEP:  That is correct.

11         THE COURT:  All right.  And let me say this -- and

12    Mr. Kolenich has filed a motion to withdraw as well -- you know, I

13    do intend to grant your motion, because you do have a right to

14    represent yourself.  If you want to be represented by an attorney

15    in the case, though, you are going to need to hire an attorney who

16    can be admitted to practice in this district.  And you are going to

17    have to do that shortly.  You know, we're not going to be

18    postponing deadlines and things like that for you to hire an

19    attorney if that's going to be a protracted endeavor.

20         Now, I will say this.  I am going to continue the trial

21    in the case.  And we'll discuss the deadlines later.  So there

22    isn't going to be that -- you are not going to have to hire an

23    attorney that is going to have to be ready to jump into trial in

24    July.  But I'm not going to give you a long time to hire an

25    attorney.

1          MR. SCHOEP:  I understand.  I appreciate that.  If I

2    could just have enough time to -- you know, to retain one, that

3    would be good.  I don't know what is a fair amount -- what do you

4    believe is a fair amount of time?

5               THE COURT:  Well, I'm going to give you 14 days.

6               MR. SCHOEP:  Okay.

7               THE COURT:  And, you know, Mr. Schoep, in the meantime,

8    you know, while you are representing yourself, you know, it is your

9    responsibility to be meeting deadlines and adhering to the rules of

10   civil procedure and also, you know, the local rules and the court's

11   scheduling order.  So, you know, you're handling your case by

12   yourself at this point.

13              MR. SCHOEP:  Yes.  I understand that.

14              THE COURT:  Okay.  All right.

15              And -- now, Mr. Kolenich, as to your motion to withdraw,

16   I take it you are still intending to withdraw from representing the

17   National Socialist Movement and the Nationalist Front; is that

18   correct?

19              MR. KOLENICH:  Yes, sir, pursuant to -- I mean, clearly I

20   have been replaced by Mr. Schoep, and it is pretty obvious from the

21   National Socialist Movement and the Nationalist Front as well.  So

22   it is pursuant to their termination of my services.

23              THE COURT:  All right.

24              And, Mr. Stern, you know, I denied your motion last week

25   because I don't have any information that you are an attorney, and

1    a non-attorney can't represent an entity.  So are you intending to

2    hire an attorney to represent the National Socialist Movement?

3           MR. STERN:  Understandable about you denying the motion.

4    I appreciate that.  And, yes, I do intend on hiring an attorney.

5    And the substitution of counsel was basically to replace the

6    counsel that was on record as fast as possible.  I do -- I have

7    been in contact with the Virginia Bar Association and have talked

8    to several reputable attorneys that will be -- I don't want to hold

9    the case up, so it would probably be within the next four days I

10   can -- they will be subbing in.  In the meantime, at the same time

11   I filed a motion for summary judgment on the organization, which we

12   will be totally cooperative to everything necessary for the

13   plaintiff.

14          THE COURT:  Okay.

15          All right.  Well, what I'm going to do -- for

16   Mr. Kolenich, on your motion to withdraw, I'm going to grant that

17   motion.

18          And, Mr. Stern and Mr. Schoep, I'm going to -- for the

19   different entities that you are associated with -- Mr. Schoep, I

20   understand you are still associated with the Nationalist Front; is

21   that correct?

22          MR. SCHOEP:  Basically, the Nationalist Front was never

23   incorporated.  It was never an organization.  It doesn't have a

24   website.  It was basically just an idea.  It is not an actual

25   organization or anything of that nature.  So -- there's no website.

1    There's no organization.  Basically, it was just an idea of working

2    together.  There was no leadership.  There was no specific

3    representative or anything like that.  It is like a paper tiger.

4    It is nothing.

5             THE COURT:  All right.  Well, be that as it may, it is a

6    named defendant.  And it is not an individual.  So, you know, from

7    what I -- from what I have before me, it is -- I don't -- or I

8    can't find that the Nationalist Front can represent, you know,

9    itself or that a non-attorney can represent it.  So for the

10   Nationalist Front and the National Socialist Movement, in the order

11   that I enter allowing Mr. Kolenich to withdraw, I'm going to give

12   those entities 14 days also to hire counsel.  And I'm going to

13   order that they do hire counsel.  And, you know, failure to have an

14   attorney note an appearance for those entities can be subject to

15   the court's contempt authority.

16            MR. STERN:  Your Honor, may I interject?  The National

17   Socialist Movement -- from my time of being with the old

18   organization, looking into it, the National Socialist Movement have

19   no documentation, which I have been looking for, showing anything

20   about the Nationalist Front.  So I'm here just strictly -- the

21   National Socialist Movement is on its own, not representing or

22   taking any responsibility for the Nationalist Front.

23            THE COURT:  Okay.  I understand that, Mr. Stern.

24            MR. SCHOEP:  And if I might interject as well, on that, I

25   mean, how are we supposed to prove the Nationalist Front is an

```
 1    organization or anything like that or that I'm responsible for it?

 2    I guess that's just a question I would have.  I mean, if there's no

 3    organization, how are we supposed to defend it and how are we

 4    supposed to represent it?

 5              THE COURT:  Well, that is something that the Court is not

 6    going to offer counsel or advice on.  That's really up to you,

 7    Mr. Schoep, or anyone who -- you know, who would assert, you know,

 8    control or authority over the Nationalist Front to determine.  And,

 9    you know, it is probably a good reason to talk to a lawyer.

10              MR. SCHOEP:  Right.  I'm just concerned that if I'm

11    representing myself -- I believe I will be able to retain counsel

12    within the next two weeks without any -- too many issues on that.

13    But I'm just concerned if -- you know, why am I required to retain

14    counsel for the Nationalist Front, you know, because I don't want

15    to be in contempt of court.  So am I required -- for some reason,

16    is that my responsibility?  I guess that's the question.  Sorry.

17              THE COURT:  Well, Mr. Schoep, if you are a representative

18    of that entity, then -- and, you know, the responsibility falls to

19    the individuals who -- you know, who have authority or who

20    represent the entity.  So the answer -- the answer would be yes.

21    It is your responsibility.

22              MR. SCHOEP:  I'm sorry.  I didn't hear the last thing you

23    said, sir.

24              THE COURT:  The answer would be yes.  It is your

25    responsibility.
```

1          MR. SCHOEP:  All right.

2          THE COURT:  All right.

3          Well, that -- I think that takes care of all of the

4    representation issues that are before the Court at this time.

5          Let's see, Mr. Bloch or Ms. Tenzer, do you want to

6    address where things stand with discovery, and in particular the

7    ESI?  And what I'm -- I'm just wondering what additional needs to

8    be done as far as getting vendor contracts signed, getting devices

9    and social media credentials to the vendor?  And I think those

10   would be the -- you know, the first steps.  But if there are other

11   things to address, let me know.

12         MR. BLOCH:  Yes.  Thank you, Judge.  This is Mr. Bloch.

13         And I just wanted to go back one second, because I think

14   it is related to both the counsel issue as well as the discovery

15   issues.  That is, with respect to Mr. Schoep, I certainly

16   appreciate and respect his right to hire counsel.  I just wonder --

17   while he is currently pro se and we are in the collection process,

18   particularly given that Mr. Schoep authorized Mr. Kolenich to sign

19   the vendor contract weeks ago, I wonder if he could be encouraged

20   to sign the vendor contract today and potentially turn over his

21   electronic devices as well?

22         THE COURT:  Well, I do want to address that with

23   Mr. Schoep.  That's why I wanted to -- and I think we can do that

24   today.  But I wanted to hear where things were.

25         And, Mr. Schoep, I have read the email that you sent to

1    the court.  I think that was today.

2            MR. SCHOEP:  (Inaudible).

3            THE COURT:  Yeah, Mr. Schoep, are you -- it sounded like,

4    from your email, that you don't have any opposition to signing the

5    vendor contract?

6            MR. SCHOEP:  As it was explained to me back in December,

7    when I did sign it, that -- my attorney at that time, he felt that

8    it was a necessary thing for me to sign, and I did agree to it.

9    You know, I explained in the email letter this morning.  But before

10   I do that, I would rather confer with my new attorney, just to see

11   if that's something that, you know, we're going to file objections

12   to or anything of that nature.  I would rather not make a decision

13   on that before talking to my new counsel.  So if I could have the

14   two weeks on that, I would be prepared to either sign it in two

15   weeks or let my attorney answer for that.

16           THE COURT:  Well, I think the time has passed for

17   objections to this.  I mean, this has been the route that we have

18   been taking for the last number of months.  So I'm not going to

19   allow additional time on that.  It is something that really should

20   have happened quite some time ago.  So on the signing the contract

21   for the vendor, I'm going to require that you do that soon.

22           Have you seen -- have you been provided the contract?

23           MR. SCHOEP:  I'm not 100 percent sure on that, but I do

24   have another request.  If you are going to order the signing of

25   that, one of the things that I'm concerned about there is to have

1    the record sealed.  My one -- my main concern -- you know, I don't

2    have any reason to hide anything or anything like that as far as,

3    you know, I don't feel I have any burden of guilt on anything.  But

4    my concern is people's names, addresses, careers, things of that

5    nature getting doxxed and put out to the public.  We have seen this

6    time and time and time again when it comes -- you know, these

7    things.

8          So what I'm asking for is that these things are sealed

9    and that it goes no further than the attorneys in the case.  I

10   don't want this to be something that the communists can get and put

11   out online and ruin people's lives just because they wrote to us.

12   I mean, it is a First Amendment issue, basically, that a person

13   should have the right to freedom of speech and assembly, and they

14   should have the right to contact us and ask us for information

15   without that information being doxxed out to people that might be

16   hostile to those individuals and their families.

17         THE COURT:  All right.

18         And, Mr. Schoep, I think the concerns that you raise are

19   addressed by the protective order that the Court has entered in

20   this case, so that, you know, the materials that would be taken

21   from any devices or social media accounts are going to fall under

22   that protective order, and, you know, they are identified as

23   confidential.  They are only to be used in this case, and not

24   disseminated beyond the case.

25         And if there are any -- if there's any use of those

1  documents for court filings, there's a local rule -- it is Local

2  Rule 9 -- that sets out the sealing procedure.  You know, there has

3  to be a showing made that certain information should be non-public

4  and sealed.  But, you know, contact or identifying information for

5  people, addresses, phone numbers, things like that, that

6  information is always sealed.  That is going to be non-public.  And

7  that sort of information would be redacted.

8       MR. SCHOEP:  And are you saying that no information in

9  there can be used or utilized in other cases?  It is specifically

10  for this case only?

11       THE COURT:  Right.  The protective order would say that

12  any information is just used for this case.

13       MR. SCHOEP:  And you do have that in place, that seal,

14  and that's in place?  Or that's a Virginia state law or federal

15  law --

16       THE COURT:  The protective order is an order that the

17  Court entered with the agreement of the parties months ago in the

18  case.  So those are the rules that govern the use of discovery in

19  this case, you know, discovery that is labeled confidential.

20       MR. SCHOEP:  Okay.  If that's in place, I really don't

21  have any objections other than that.  That was my biggest concern

22  in that matter, is that that sort of thing is protected so that it

23  doesn't ruin anybody's lives or anything like that.  And that was a

24  big concern of mine.  So if that's the case, I'm pleased to hear

25  -- I have seen other cases where things were supposed to be sealed

 1    and things slipped out in the courtroom and then those people

 2    sitting in there put that information out.  So as long as that is

 3    not the case, I thank you very much for that.

 4            THE COURT:  Okay.  All right.

 5            Well, what I'll do then is -- Mr. Bloch, and Mr. Schoep

 6    is representing himself at this point, and so you can communicate

 7    directly with him.  And I think you would need to do that, to be

 8    able to -- you know, to transmit the contract and to provide that

 9    information of the third-party vendor to him so that he can sign

10    that contract.

11            And, Mr. Schoep, I'll give you, you know, today and the

12    weekend to review it, but I'm going to enter an order requiring

13    that -- and this isn't just for you; this is for all the

14    defendants -- that the contract be signed by Monday and provided to

15    the vendor.

16            MR. SCHOEP:  I'm sorry.  The last thing -- it was

17    breaking up -- I didn't hear that.  I'm sorry.

18            THE COURT:  Hold on just a second.  Make sure that when

19    you are talking that you identify yourself, just for the recording.

20            MR. STERN:  This is James Stern for the National

21    Socialist Movement.

22            If there are contracts -- if there is a contract that

23    needs to be signed by the National Socialist Movement, so I can get

24    it to whoever I talk to higher, I can get it to them expeditiously

25    or not?

```
1              THE COURT:  Yes.

2              And, Mr. Bloch, has the National Socialist Movement also

3    not signed the document?

4              MR. BLOCH:  That's correct, Judge.

5              THE COURT:  Okay.

6              So, Mr. Stern, it seems -- you know, I guess it is a bit

7    of a different situation with the National Socialist Movement.

8    Mr. Stern is their representative at this time.

9              Mr. Bloch, I'll authorize you to forward the contract to

10   him.  I don't see why, if he is their representative, he can't sign

11   the contract and, you know, bind NSM on it as well.

12             MR. BLOCH:  Thank you, Judge.  We'll send a copy of the

13   contract to Mr. Schoep as well as Mr. Stern today.

14             THE COURT:  Okay.

15             MR. STERN:  Your Honor, James Stern.

16             For clarity, you said bind me on it as well.  What -- can

17   you give me -- what does that exactly mean?

18             THE COURT:  Well, why you couldn't sign a contract on

19   behalf of the entity that you represent, and that, you know, you

20   could sign a contract binding the entity as you are the -- are you

21   the president of National Socialist Movement?

22             MR. STERN:  Yes, I am.

23             THE COURT:  So --

24             MR. STERN:  I would think --

25             THE COURT:  -- I would think that you could then act on
```

```
1   behalf of that group, to sign a contract.

2            MR. STERN:  Thank you, Your Honor.

3            THE COURT:  Okay.

4            All right.  And, Mr. Bloch, do you have the contact

5   information for Mr. Schoep and Mr. Stern?

6            MR. BLOCH:  I believe I do, but it may be helpful for

7   each of them to just let us know the best email address to reach

8   them.  I believe we have two email addresses for Mr. Schoep and one

9   for Mr. Stern.  Assuming the email addresses that they communicated

10  with the court from are sufficient, we do have those.

11           THE COURT:  Mr. Schoep, I think you have a Gmail address.

12  It is Jeffschoep@gmail.com.  Is that the best one for you?

13           MR. SCHOEP:  Yes, sir.

14           THE COURT:  Okay.  And, Mr. Stern, how about for you?

15  What is the best?

16           MR. STERN:  Jamesstern@thejamesstern.com.

17           THE COURT:  All right.  And that's -- I think that's on

18  your motion for summary judgment.

19           MR. STERN:  Yes, it is, Your Honor.  The information on

20  there is all correct and up-to-date.

21           THE COURT:  All right.

22           All right.  And then the contract would need to be signed

23  by Monday.  And then any devices or social media account

24  credentials and things like that would need to be provided to the

25  vendor not later than a week from today, next Friday.
```

1          MR. STERN:  Your Honor, James Stern.

2          On this issue of discovery, many of the information that

3     the National Socialist Movement have, as far as website or Twitter

4     accounts or anything like that, could you enter an order -- since

5     I'm now the president of the organization -- that can -- order that

6     there be no interference by Mr. Schoep of me providing that

7     information and having access to those accounts?

8          THE COURT:  Well, I don't know that I can do that, based

9     on -- you know, on the information I have right now.  I think

10    that's something that you-all would need to talk about, if there is

11    -- you know, if there is a concern.

12         MR. STERN:  No concern, Your Honor.  No concerns.  I just

13    want to make sure that there's nothing held up.  I have just become

14    involved February 15th of all of the information.  And I'm

15    expeditiously trying, with due diligence, to read everything.

16         I see that this case has been held up on discovery

17    apparently for quite a while.  And I want to make sure, on the

18    National Socialist Movement side, there's nothing to hold up any

19    information that counsel needs from our side.  And I can -- I'm in

20    a position to make sure that it gets there.  But I just want to

21    make sure there's no interference from -- any opposition from

22    somebody who has nothing to do with the organization anymore; who

23    clearly had, you know, a 25-year reign with the organization.  I

24    want to make sure that -- he has no legal standing, no binding ties

25    with the organization for any more, period.  So I just want to make

```
1    sure that that is clear, that he's not going to interfere with the
2    duties of turning this information over to the counsel.
3              THE COURT:  Well, and that's not something that I'm going
4    to weigh in on right now.  But what I would expect you-all to do is
5    that when you are identifying any devices or social media accounts
6    that are associated with the National Socialist Movement, that, you
7    know, if they are relevant, they need to be provided and turned
8    over.
9              And if there is an issue, Mr. Schoep or Mr. Stern,
10   you-all need to talk about it.  You also would need to identify
11   what those issues are so the plaintiffs are aware of whether
12   devices are being withheld for some reason, you know, other than
13   relevance.  And then the plaintiffs can bring that to my attention.
14   And we can, you know, address this issue, if it arises and when it
15   is more mature and fully presented so that I can consider all of
16   the different -- you know, all of the different factors that would
17   go into it.
18             MR. STERN:  And is Mr. Bloch -- is Mr. Bloch a lawyer
19   -- this is Mr. James Stern.
20             Is Mr. Bloch a lawyer for the plaintiff?
21             THE COURT:  Mr. Bloch is one of the plaintiffs' lawyers.
22   And his -- I think his contact information is on the -- well,
23   Mr. Bloch, why don't you -- if you would provide your contact
24   information, you know, to Mr. Stern and Mr. Schoep.  I imagine you
25   can do that in the email when you transmit -- transmit the
```

1   contract.  But -- and they should -- Mr. Schoep and Mr. Stern

2   should have contact information or be provided contact information

3   for the plaintiffs' attorneys as well.

4           MR. BLOCH:  Absolutely, Judge.  Will do.

5           THE COURT:  All right.

6           All right.  Mr. Bloch, what other, you know,

7   discovery-related issues do we need to address?

8           MR. BLOCH:  Thank you, Judge.

9           We received a report from the vendor Wednesday night

10  which we would be happy to provide to the Court.  It was sent to

11  all parties.  I think the best way to describe the progress at this

12  point would be minimal.  I wouldn't say nonexistent, but I would

13  say it is minimal.

14          As of Wednesday night, when the report was sent, there

15  were no electronic devices that had been turned over at all.  It

16  is, obviously, conceivable that that may have changed to some

17  degree yesterday.  There was a reference in the report to

18  Mr. Kessler planning on turning over his phone yesterday.  And

19  there was some communication, I believe, with Mr. DiNucci to the

20  same effect, that they intended to surrender a device yesterday.

21  But at least as of Wednesday night there had been no electronic

22  devices turned over.

23          There were --

24          THE COURT:  Why don't we do this.  I'm a little -- we

25  probably should have had -- if we are going to get into this, we

```
1    probably should have had Mr. DiNucci and other defense counsel on
2    the line.  What I'm going to do -- and I think the order will
3    address this -- is that we're going to enter an order, it will
4    either be today or Monday, but that we'll set Monday for the date
5    to sign the contract and have that submitted to the vendor, next
6    Friday for the date to have all devices and social media account
7    credentials provided to the vendor.  And then -- and perhaps early
8    the following week, Monday or Tuesday, we can just have a status
9    conference.  And I'm going to want to hear at that point that all
10   of those things have been done.
11            MR. BLOCH:  Thank you, Judge.
12            Judge, just to update you, we did have a call with most
13   defense lawyers yesterday.  It was everybody with the exception of
14   Mr. Campbell.  And we had discussed exactly what Your Honor is
15   suggesting, which is another call on these issues with the Court.
16   Everybody is available Tuesday afternoon, if that's convenient for
17   the Court.
18            THE COURT:  Is that Tuesday the -- Tuesday the 12th?
19            MR. BLOCH:  Tuesday next week, which I believe is the
20   5th.
21            THE COURT:  Why don't we rather do it -- have it that
22   following week, which would come after the deadlines for devices
23   and account credentials to be provided, because I want to make sure
24   that those have been submitted by then.  And I'm out of the office
25   next Tuesday.
```

1          MR. STERN:  Your Honor, James Stern.  Question --

2          THE COURT:  Yes, Mr. Stern.

3          MR. STERN:  Question.

4          The time frame that I have been given to have counsel

5    submitted, and can I ask that the Court -- in between that time, so

6    I can make sure that I adequately update my counsel on everything

7    in hiring them, can I be privileged to be part of any procedures

8    until that time, until that deadline is up, so I can make sure I

9    can fill him in on everything, so that I can adequately fill him

10   in?

11         THE COURT:  We'll -- I'll make sure that the order that I

12   enter is sent to you and Mr. Stern.  You'll get that as well.

13         And then, Mr. Bloch, I think it would make sense for any

14   email communications to include Mr. Stern and Mr. Schoep.

15         MR. BLOCH:  Absolutely.

16         MR. STERN:  Thank you, Your Honor.  Thank you.

17         THE COURT:  All right.  Mr. Bloch, what else?

18         MR. BLOCH:  Well, Judge, I think that is it in terms of

19   issues related to discovery and schedule that I think I can address

20   without the other lawyers here, with I think one exception, which

21   is that one of the things we talked about -- and I believe that

22   this probably goes along with what Your Honor was saying earlier

23   about continuing the trial date, but there is one deadline coming

24   up on March 11th, which is the expert disclosure date.  All of the

25   parties, I believe Mr. Kolenich --

1          THE COURT:  I'm sorry.  That will be continued as well.

2    If you-all don't have the discovery necessary to make the

3    disclosures, then it -- there's certainly good cause to extend

4    that, you know, and the other deadlines in the case.  We're going

5    to -- what we'll have to do and what I envision is that, you know,

6    after the vendor has collected the ESI and that you-all know that

7    -- that all of the parties know the scope of that and have a sense

8    of when it can be produced, that we're going to have a better idea

9    of what the schedule going forward will look like.

10          So what I would -- you know, what I would anticipate is

11   that around that time that you-all could come up with some

12   reasonable time frame for the production of the ESI and that we can

13   talk about what the schedule would -- for the rest of the case

14   would look like.  But, in the meantime, I think that we're going to

15   want to -- you are going to want to be in touch with Heidi Wheeler

16   probably after next -- well, two Tuesday's status conference, to

17   start trying to figure out what trial dates Judge Moon might have

18   available.

19          MR. BLOCH:  Okay.  Thank you, Judge.

20          I think -- with that, at this time, unless my other

21   colleagues on the line have anything else to add, I think that's

22   all we have from the plaintiffs' side.

23          THE COURT:  All right.

24          Mr. Kolenich, anything else from you?

25          MR. KOLENICH:  Just, Your Honor, as to March 12th, it

 1   appears I'm scheduled for depositions all day and will be

 2   unavailable.

 3            THE COURT:  That's fine.  I'll get Heidi to -- or not

 4   Heidi -- Karen to reach out to you-all to try and schedule a status

 5   conference sometime -- sometime that week.

 6            MR. KOLENICH:  Thank you.

 7            THE COURT:  Mr. Stern and Mr. Schoep, hopefully by then

 8   you-all will have an attorney in place to represent you and the

 9   organizations.

10            MR. STERN:  Yes, Your Honor.

11            MR. SCHOEP:  Yes.

12            THE COURT:  Mr. Schoep, do you have anything else to

13   raise today?

14            MR. SCHOEP:  I think that's all right now, Your Honor.

15            THE COURT:  Okay.  Mr. Stern, anything else?

16            MR. STERN:  Other than the motion for summary judgment,

17   which -- is that -- can that be -- could Your Honor grant that, so

18   I can save a lot of time and, actually, finances on this issue and

19   move forward expeditiously?

20            THE COURT:  Well, I can't --

21            MR. STERN:  I'm sorry.

22            THE COURT:  I can't -- I can't take that up right now.

23   And I think that -- if you are -- if you anticipate having a lawyer

24   in the case in the next week or so, that that's something that you

25   will want to talk to your lawyer about.

1    MR. STERN:  Uh-huh.  Thank you, Your Honor.

2    THE COURT:  All right.

3    All right.  Well, thank you-all for calling in today.

4 And I'll try and get that order entered today or, at the latest, on

5 Monday.  And then we will have a status conference the week of

6 March 11th.

7    MR. BLOCH:  Thanks very much, Judge.

8    THE COURT:  All right.  Have a good day.

9   (Thereupon, these proceedings were adjourned at 10:42 a.m.)

10

11  I, court-approved transcriber, certify that the foregoing is a

12 correct transcript from the official electronic sound recording of

13 the proceedings in the above-entitled matter.

14   /s/ Carol Jacobs White    March 5, 2019
   Signature of Approved Transcriber   Date

15

16

17

18

19

20

21

22

23

24

25