IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION


ELIZABETH SINES, et al.,          )
                                  )
                Plaintiffs,       )   Civil Case No. 3:17-CV-00072
                                  )
vs.                               )
                                  )
JASON KESSLER, et al.,            )
                                  )
                Defendants.       )

_____

                TRANSCRIPT OF TELEPHONIC HEARING
        HONORABLE MAGISTRATE JUDGE JOEL C. HOPPE PRESIDING
              MONDAY, MARCH 18, 2019, 4:08 P.M.
_____











Court Reporter:            Judy K. Webb, RPR
                           210 Franklin Road, S.W., Room 540
                           Roanoke, Virginia 24011
                           (540)857-5100 Ext. 5333


            Proceedings recorded FTR and transcribed using
Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2   On behalf of Plaintiffs Elizabeth Sines, Seth Wispelwey,
    Marissa Blair, Tyler Magill, April Muniz, Hannah Pearce,
3   Marcus Martin, John Doe, Natalie Romero, and Chelsea Alvarado:

4            **Jessica E. Phillips, Esquire**
             Boies Schiller Flexner, LLP
5            1401 New York Avenue, NW
             Washington, DC 20005
6
             **David E. Mills, Esquire**
7            Cooley LLP
             1114 Avenue of the Americas, 46th Floor
8            New York, NY 10036

9            **Michael Low Bloch, Esquire**
             **Roberta Ann Kaplan, Esquire**
10           **Gabrielle E. Tenzer, Esquire**
             Kaplan Hecker & Fink LLP
11           350 Fifth Avenue, Suite 7110
             New York, NY 10118

12

13  On behalf of Defendants Jason Kessler; Christopher Cantwell;
    Vanguard America; Robert Azzmador Ray; Nathan Damigo; Elliot
14  Kline, also known as Eli Mosely; Identity Evropa; Matthew
    Heimbach; Matthew Parrott, also known as David Matthew
15  Parrott; Traditionalist Worker Party:

16           **James Edward Kolenich, Esquire**
             Kolenich Law Office
17           9435 Waterstone Blvd., Suite 140
             Cincinnati, OH 45249

18

19  On behalf of Richard Spencer:

20           **John A. DiNucci, Esquire**
             Law Office of John A. DiNucci
21           8180 Greensboro Drive, Suite 1150
             McLean, VA 22102

22

23

24

25

1                **A P P E A R A N C E S** cont'd

2  On behalf of Michael Hill, Michael Tubbs, and League of the
   South:
3
                **Bryan Jeffrey Jones, Esquire**
4               Bryan J. Jones, Attorney at law
                106 W. South Street, Suite 211
5               Charlottesville, VA 22902

6

7  On behalf of Jeff Schoep, National Socialist Movement,
   Nationalist Front:
8
                **William Edward ReBrook, IV, Esquire**
9               The Rebrook Law Office
                6013 Clerkenwell Court
10              Burke, VA 22015

11

12 For James Stern:

13              **James Stern, Pro Se**
                12625 Frederick Street, Suite I-5
14              Moreno Valley, VA 92553

15

16 Also Present:

17              **Brenton Vincenzes, Esquire**
                **Jeff Schoep**
18

19

20

21

22

23

24

25

1      (Court convened at 4:08 p.m.)

2          UNIDENTIFIED MALE VOICE:  Hello.

3          THE COURT:  Hi.  This is Joel Hoppe.

4          UNIDENTIFIED MALE VOICE:  Hello.

5          THE COURT:  Hello.  This is Joel Hoppe.

6          UNIDENTIFIED MALE VOICE:  Hello.

7          THE COURT:  Hold on a second.  I'm talking, okay?

8          This is Joel Hoppe.  Who is on the line for the

9  plaintiffs?

10          MR. BLOCH:  Good afternoon, Judge.  This is Michael

11  Bloch from Kaplan Hecker & Fink on behalf of the plaintiffs.

12  And I'm here with my colleague Gabrielle Tenzer.

13          MR. ReBROOK:  Hello, Judge.  This is Edward ReBrook.

14  I am the new attorney for the National Socialist Movement, the

15  Nationalist Front, and Mr. Jeff Schoep.  I'm being joined

16  with --

17          THE COURT:  Are the plaintiffs --

18          MR. ReBROOK:  -- [indiscernible].

19          THE COURT:  Hold on, Mr. ReBrook.  [Indiscernible]

20  and Justin.  All right.

21          Is anybody else on the line for plaintiffs?

22          MS. PHILLIPS:  Yes, Your Honor.

23          MS. KAPLAN:  Yes, Your Honor.

24          MS. PHILLIPS:  This is Jessica Phillips from Boies

25  Schiller Flexner, also for the plaintiff.

 1          MR. MILLS:  And David Mills from Cooley.

 2          MS. KAPLAN:  And Roberta Kaplan is on as well, Your

 3   Honor, but I'm deferring to my colleague Michael Bloch.

 4          MR. STERN:  And James Stern for the National

 5   Socialist Movement.  And this attorney -- my attorney just got

 6   disconnected, but he's calling back in, Brenton Vincenzes,

 7   who's going to be representing the National Socialist

 8   Movement, that you ordered me to find an attorney for.

 9          MR. ReBROOK:  I'm sorry, this is again Edward

10   ReBrook.

11          THE COURT:  Yeah, Mr. ReBrook --

12          MR. ReBROOK:  I am the attorney --

13          THE COURT:  -- stop.

14          MR. ReBROOK:  -- for the National Socialist

15   Movement --

16          THE COURT:  Mr. ReBrook, stop for a second, okay?

17   Listen, I'm going to address this with y'all in a minute, but

18   we're going to get to things in an orderly way.

19          MR. ReBROOK:  Understood.

20          THE COURT:  I'm just trying to see who is on the

21   phone right now.

22          MR. ReBROOK:  All right.

23          THE COURT:  There are a lot of people on the phone,

24   and I'm going to ask for you to speak when it's your time.

25   Okay?

1        MR. ReBROOK:  Understood.  My apologies.

2        THE COURT:  All right.  Mr. Kolenich, are you on the

3  phone?

4        MR. KOLENICH:  Yes, sir.

5        THE COURT:  All right.  And Mr. DiNucci?

6        MR. DiNUCCI:  I'm here, Your Honor.

7        THE COURT:  And, Mr. Jones, are you on the phone?

8        MR. JONES:  Yes, Your Honor.

9        THE COURT:  All right.  And Mr. Campbell?

10     (No response.)

11        THE COURT:  All right.  Now, are there any pro se

12  defendants on the phone?

13        MR. STERN:  Yes, Your Honor, James Stern.  You

14  ordered me to get a lawyer for -- to go out of pro se.

15        THE COURT:  All right.  And then, Mr. ReBrook, you're

16  here for at least Mr. Schoep and the Nationalist Front.  And I

17  understand that there is some disagreement --

18        MR. ReBROOK:  And the National Socialist Movement.

19        MR. SCHOEP:  I'm on the phone as well, Your Honor.

20  This is Jeff Schoep, one of the defendants.

21        MR. VINCENZES:  Hello, can you guys hear me?

22        THE COURT:  Yes.  Who just called in?

23        MR. VINCENZES:  This is attorney Brent Vincenzes

24  speaking.

25        MR. STERN:  For the National Socialist Movement.

 1          THE COURT:  All right.  Mr. Vincenzes, who are you

 2     calling on behalf of?

 3          MR. VINCENZES:  I am -- so just to be clear, I am a

 4     Virginia state bar licensed attorney.  I am admitted to the

 5     Eastern District.  I am not admitted to the Western District

 6     at this time; I can be, but I have not been retained yet.  But

 7     I'm calling on behalf of Mr. Stern.

 8          THE COURT:  Mr. Stern is not a party to this lawsuit;

 9     the National Socialist Movement is.  So, Mr. Vincenzes, I

10     think I provided instructions that if you wanted to

11     participate you would have to be here in person to sit in, in

12     the courtroom.  So if you want to get admitted in this

13     district and file a notice of appearance, you can do that;

14     otherwise, you're not participating in this call.  I'm not

15     going to make you hang up, but -- you can listen in, but

16     that's it.  I think my instructions were pretty clear, and it

17     sounds like they were not followed.

18          MR. VINCENZES:  I'm sorry?  Not followed?

19          THE COURT:  That's right.  It sounds like they were

20     not followed.

21          Mr. Vincenzes, when you file a notice of appearance

22     and get admitted in this district, then I'll be happy to hear

23     from you if you're representing a named party in the case,

24     okay?

25          MR. VINCENZES:  I'm sorry, I did -- I'm unclear.  I

1 didn't mean to not follow the instructions. I was just --

2 received a phone call saying I could call in. But I can hang

3 up if you would like me to.

4        THE COURT: You can listen in -- you can listen in,

5 but that's it.

6        MR. VINCENZES: Okay. I won't say a word. That's

7 fine.

8        THE COURT: And, Mr. ReBrook, I understand that

9 you've been admitted in this district at this time but you

10 haven't filed a notice of appearance on behalf of any

11 defendants. You need to --

12        MR. ReBROOK: I just [indiscernible] --

13        THE COURT: Hold on.

14        MR. ReBROOK: -- [indiscernible] --

15        THE COURT: Hold on.

16        MR. ReBROOK: -- [indiscernible] --

17        THE COURT: Mr. ReBrook. Mr. ReBrook, stop talking

18 over me, all right?

19        Listen, there are a lot of people on the phone. We

20 have a number of things to address; we're going to do this in

21 an orderly way. I'm going to listen to you, you're going to

22 listen to me. That's how we have to do that in this district,

23 okay?

24        Now, you need to file a written notice of appearance.

25 And every communication with the Court, and this goes for

1  everyone, needs to be formal.  If it's through an e-mail,

2  everyone needs to be copied on it.  I won't tolerate any *ex*

3  *parte* -- any inappropriate *ex parte* communications from

4  anyone, and I want to be real clear about that going forward.

5       All right.  Now, there are a number of things that we

6  need to address here today; first is attorney status.  I think

7  we've gone over that for the most part.

8       We also need to get an update on discovery.  And the

9  plaintiffs did send an e-mail, copying everyone in the case,

10  providing an update about where things stand with the

11  production of ESI and the defendants turning over devices and

12  access to social media accounts.

13       Mr. Bloch, is there -- is there anything additional

14  to add to your report?

15       MR. BLOCH:  Judge, I don't think there's anything

16  additional.  I think the kind of two overarching concerns that

17  we have that are sort of touched upon in the e-mail are,

18  number one, there are obviously still some devices and

19  accounts that have yet to be turned over.

20       And number two is the appearance of a number of

21  additional social media accounts that have surfaced in various

22  ways have kind of undermined our confidence that the

23  stipulations that were signed and sworn by defendants are sort

24  of entirely reliable and in terms of being able to have some

25  confidence that we understand the entire universe of social

1  media accounts and devices that contain potentially responsive

2  documents.

3         So the only thing that's sort of additional that I

4  didn't mention in the e-mail is that I think it would be

5  helpful for us to have new certifications from each party that

6  kind of swears to a comprehensive list of social media

7  accounts and devices that contain potentially responsive

8  documents.  I think it's clear at this point that the ones

9  that were submitted in December are not entirely complete.

10        THE COURT:  All right.  Mr. Kolenich, there were --

11  some of the plaintiffs' concerns about the completeness of the

12  certifications are directed to some of your clients.

13        Yeah, I'm thinking about how we do this in an orderly

14  way so that I can hear from each party about -- about the

15  completeness of the certifications, but also, we need to bring

16  this portion of discovery to a close, and I want to do it -- I

17  want to do it soon.

18        So, you know, Mr. Kolenich, I would like to hear from

19  you now.  It also may be that, you know, we need to move to a

20  more formal motions practice at this time, too, so that if

21  it's -- if your clients don't want to do updated

22  certifications, that perhaps there can be a, you know,

23  written -- written motion and then response on your part, and,

24  you know, the client's -- you know, the client's signature

25  indicating what has been provided and what hasn't and why.

1 There may be a couple of ways to do this, but I do think we

2 need to -- we need to bring to this a conclusion.

3      Mr. Kolenich, what do you have to say?

4      MR. KOLENICH:  No, I understand, Your Honor.  I think

5 that Mr. Bloch's take on this is a little, little bit over the

6 top for what's going on.  We've been in communication with the

7 ESI vendor and they're aware of, you know, the status of

8 what's being mailed and when and, you know, why things are

9 being sent in piecemeal, and they haven't expressed any

10 problems with that.  So I'm not sure why Mr. Bloch is

11 complaining on that particular issue.

12      But if I could just go one by one, I think that's the

13 only way this will make any sense to the Court.

14      THE COURT:  All right.

15      MR. KOLENICH:  Mr. Parrott has mailed his stuff last

16 week, and I have the FedEx or USPS number, whatever it is,

17 tracking number provided to the ESI vendor, and his stuff

18 should have arrived either today or tomorrow.

19      Vanguard, I'll save them for last.

20      Identity Evropa has sent the Discord authorization

21 that Mr. Bloch requested, or that the plaintiffs requested.

22      There are so many lawyers over there, I don't mean to

23 blame you, Mr. Bloch.  Sorry.

24      As far as I know, Identity Evropa is fully

25 cooperative, and I want to underline that for the Court.  Most

1  of my clients are fully and enthusiastically cooperative with

2  this.  This is not some sort of willful disobedience to what's

3  expected by the Court or by the plaintiffs.  So especially

4  Identity Evropa is enthusiastically cooperative.  And this new

5  Discord and these social media they are discussing were all

6  post Charlottesville and contained next to nothing responsive

7  to a discovery request.  I know they're not going to take my

8  guy's word for that, but that's where it is.

9         And that will -- you know, they're paying to find

10  that out the long way, the hard way, whatever.  That's fine.

11  They'll have full and complete access to anything that IE has.

12  And they already have the Discord release.  This just wasn't

13  something that -- since it didn't discuss Charlottesville,

14  they didn't believe it was responsive or needed to be turned

15  over, or the planning of Charlottesville.

16         Moving on to Mr. Ray.  The ESI vendor is aware of why

17  Mr. Ray's laptop -- you know, he uses that for work, so when

18  he gets the first one back, he will send the second one in,

19  you know, when he has a day that he cannot do his particular

20  line of work.

21         This Gab, Kyrpto Report stuff, he doesn't have those

22  pass codes.  That's old stuff.  He has the current Kyrpto

23  Report password, so I'm not sure why they're saying that he

24  hasn't provided that.

25         And as far as the comment section for the Daily

1  Stormer website, I don't understand that.  You know, the ESI

2  vendor did say that, that he said "does not remember."  But

3  that can't be accurate, because that's a thing that he uses

4  currently with his job.  So I'll run down why the ESI vendor

5  is saying that.  I have a call scheduled with them tomorrow,

6  and we'll see -- you know, we'll get that squared away.

7          THE COURT:  And Mr. -- Mr. Kolenich, I'm sorry.  For

8  Mr. Ray, the Discord, it looks like there are a couple of

9  Discord accounts that he doesn't have the password for.  Does

10  he have a password for any of them?

11          MR. KOLENICH:  It was my understanding that he does

12  not, Your Honor, but I will circle back on that and make sure

13  that I'm clear on what Ray is saying to the ESI vendor.  In

14  order to be as efficient as possible, I had the clients, with

15  the ESI vendor's permission, contact Ms. Kaitlyn Seely

16  [phonetic] directly, and that was working.  But as far as I

17  know, she was squared away with Mr. Ray my last communication

18  with her.  I would like to, you know, have a day to speak with

19  her, speak with Mr. Ray and see what the problem is with

20  miscommunication.

21          It can't be right that he doesn't have Daily Stormer

22  pass codes for the media.  The comment section, that's

23  something he uses on a daily basis.  That can't be accurate

24  information.

25          THE COURT:  Okay.

1    MR. KOLENICH:  Vanguard is a problem.  Vanguard has

2 not turned over the devices they were supposed to turn over

3 and is not listening to counsel on the necessity of hurrying

4 up and providing this stuff, so I really don't have anything

5 to say in regard to them other than it might be useful for the

6 Court to give them sort of a warning shot that, you know,

7 you're not kidding, sanctions possible in this circumstance,

8 and give them one last chance to comply.

9    The situation with Vanguard is they really don't

10 exist anymore in any kind of a real sense.  Obviously, they're

11 in litigation and their officers are hanging on, trying to do

12 their job in defending, but they don't want to be involved.

13 And if their officers decide to just hang it up and leave the

14 organization, I don't know who takes over at that point.

15 There is a likely suspect.

16    But the current guy who I've been dealing with is

17 kind of frustrated with it all and doesn't want to deal with

18 it.  So I think if the Court could send, you know, some

19 sort of -- some sort of warning before actually imposing

20 sanctions or making us go through motion practice, with

21 Vanguard that might be useful to at least bring this to a

22 conclusion that either he is or is not going to cooperate.

23    THE COURT:  All right.  All right.  Well, you know, I

24 have -- I have issued an order directing that the devices and

25 account information be provided, and if it's -- and if you all

Sines, et al. v. Kessler, et al. - 3/18/19

1  agree, the plaintiffs' and Vanguard's counsel agree that it

2  hasn't been done and that's clear, then, you know, it may be

3  time to, you know, issue a show cause and give them a certain

4  amount of time to be able to, you know, to rectify the

5  violation of the order.  And, you know, if they do it

6  within -- within that time, then perhaps the show cause order

7  can be dismissed.  But if there just hasn't been any attempt

8  to comply with my order, then I do think we need to move

9  forward.

10        MR. KOLENICH:  I can't say there has been, Your

11  Honor.  And the show cause order is sort of exactly what I was

12  envisioning.  I can't -- I can't deny that it had not been

13  complied with.  There's been no indication that I can give the

14  Court that there's been any effort to comply on that one

15  client.

16        THE COURT:  Okay.  All right.  Mr. Kolenich, anything

17  else to report on those clients?

18        MR. KOLENICH:  I think the only other thing is I

19  already have the supplemental ESI declarations from Parrott

20  and Kessler.  Those are the only ones the plaintiffs asked me

21  for, so, you know, if they wanted a global one, it's news to

22  me.  They didn't mention that before.  Other than that,

23  nothing else, Your Honor.

24        THE COURT:  Okay.  All right.  And, Mr. Jones, how

25  about for Hill and Tubbs?  It looks like there -- there may be

1  a few things outstanding for them as well.

2       MR. JONES:  Yeah.  They have all their devices sent

3  in, but plaintiffs have notified me of some new accounts that

4  were not turned over.  Both Hill and Tubbs have said that a

5  new recreated post Charlottesville sent them significantly

6  after Charlottesville [indiscernible] is there.  But they said

7  they didn't have any responsive information on it.  But I'm

8  happy to have them sign a new stipulation and get that sent

9  out here in the next day or two.

10       THE COURT:  Okay.  All right.  And, Mr. ReBrook, it

11 looks like Mr. Schoep is also mentioned in this -- in the

12 e-mail.  Have you -- have you seen the e-mail from plaintiffs'

13 counsel?  Do you know what I'm talking about?

14       MR. ReBROOK:  I'm not certain what you're referring

15 to, Your Honor.

16       THE COURT:  So this is an e-mail that was sent to --

17 it's all of the -- all of the attorneys of record in the case

18 today, and it -- what it says for Mr. Schoep is that -- this

19 is talking about providing devices and social media account

20 credentials to a third-party vendor.

21       What it says is that:  Although Defendant Schoep

22 provided his cell phone to the vendor on March 11th, the

23 vendor was unable to obtain any information from the device

24 due to water damage, as Mr. Schoep reported that the phone had

25 fallen in a toilet last year.

1      Do you have any response on that, or any additional

2  information?

3      MR. ReBROOK:  I know that he mentioned the same thing

4  to me prior to retaining me on this matter, that he had

5  dropped his phone in the toilet at some point.  And I'm under

6  the impression that he has turned over that phone, as well as

7  the other things that have been demanded in the discovery

8  request, to the third-party vendor.

9      THE COURT:  All right.  Mr. Bloch, having heard from

10  defendants' counsel, what are your -- what do you propose at

11  this point?

12      MR. BLOCH:  Thank you, Judge.  I think I understood

13  with respect to Vanguard America.

14      I think with respect to the other defendants who seem

15  to still have outstanding materials, including Mr. Ray and

16  Mr. Parrott, as well as Mr. Hill and Mr. Tubbs, I think it

17  feels to us that the warning shots have already been sort of

18  issued, and it seems to me to make sense, at least with

19  respect to each of those people, that something along the

20  lines of the order to show cause might be appropriate for them

21  as well.

22      THE COURT:  It sounds like there's a fair amount of

23  compliance, and also some disagreement about whether certain

24  accounts, you know, really are relevant or they're responsive,

25  and that -- and so, you know, with that in mind what I

1  would -- what I would think would be necessary is this:  Do

2  you feel like the responses that you've received and the

3  information that's been provided to the vendor is insufficient

4  at this point that -- you know, once you feel like you've

5  reached that point that it would really be incumbent upon the

6  plaintiffs to file a motion to compel and allow the defendants

7  to file formal responses on, you know, on each of the items so

8  that I can see exactly what each party's position is on it,

9  and then we'll move -- this has been outstanding for some

10  time.  We'll move quickly and definitively on the -- I don't

11  know that there's -- I don't think there's anything really

12  complicated at this point.

13          It's just a question of whether -- whether things

14  should, you know, should be turned over or not; and if they

15  haven't, then, you know, why not?  But I think that would

16  probably be the way, way to go for it.  I don't think that --

17  I don't think that just issuing a show cause when there's

18  some -- some dispute, and, you know, at least a pretty good

19  amount of compliance, I don't know that that's appropriate at

20  this time.

21          MR. BLOCH:  Understood, Judge.  Just a couple points

22  of clarification.  One is, I think it would be our position

23  that each of these things have previously been compelled by

24  Your Honor by force of the order in November.

25          It's hard for me to tell whether there's disagreement

Sines, et al. v. Kessler, et al. - 3/18/19

1   at this point about -- and obviously we can meet and confer

2   again with defendants on this point if necessary.  But it's

3   not clear to me that there's disagreement on certain things;

4   including, for example, things like where defendants have

5   not -- don't remember passwords and things like that, it would

6   be our position that they ought to sort of take steps to

7   recover passwords, which in my experience isn't, isn't such a

8   difficult task, and turn it over.  And the same thing with

9   Mr. Ray's laptop, for example.  It sounds like -- it's not

10  clear to me that that -- that there's a sort of principled

11  position to withhold some of these things.

12          So I guess one -- one point of clarification we're

13  wondering about is whether it's appropriate to move to compel

14  to the extent there's just a disagreement on these issues or

15  whether just to move for sanctions at this point.

16          THE COURT:  I think you could do it either way.

17  You're moving to compel or moving for the Court to issue a

18  show cause.  I just don't think that I'm in a position, with

19  the information in front of me right now, to just go ahead and

20  issue a show cause order.  So I think there are a couple ways

21  you can do it; it all gets to the same result.

22          MR. BLOCH:  Okay.  The other just one -- the other

23  thing I think may be worth clarifying is there may be a point

24  of disagreement where I think defendants have -- it sounds

25  like they have withheld certain accounts and potentially

1  devices on grounds that they were -- I guess, probably mainly

2  accounts, that they were created after the events in

3  Charlottesville.

4        It's our position, and I think it's fairly clear,

5  that merely because an account was created after

6  Charlottesville, it doesn't make it nonresponsive,

7  particularly when they comment on the events that took place

8  in Charlottesville. And I think that applies certainly -- I

9  think with all of the accounts that we have identified, but

10 particularly the identity of Ropus [phonetic] servers were

11 all -- a lot of them were created beyond the date of the

12 incident in this case, but they still contain responsive

13 materials. And I'm not -- I don't know if there's

14 disagreement on that point, but it does sound like that's the

15 basis that a number of things have been withheld.

16        THE COURT: I'm sure that accounts created after

17 August 2017 could hold responsive documents, so that's

18 something that if it hasn't been discussed before, it

19 certainly should be discussed by counsel. And if there is --

20 if there is some disagreement that, you know, the parties

21 are -- are insisting on and their positions are firm, then I

22 think you need to move forward with a formal motion.

23        All right. Mr. Bloch, anything else on the discovery

24 issues?

25        MR. BLOCH: The only other thing, Judge, I think is

1  we did -- and I appreciate defense counsel will be providing

2  additional certifications for the various specific accounts

3  that we asked about.  I do think it would be helpful for each

4  party to submit an updated, comprehensive certification.

5           I think the ones that we -- you know, we've been sort

6  of chasing this down one by one.  As an account pops up, you

7  know, we've been reaching out to defendants to try to confirm

8  that, in fact, it is the defendants' account.  And so far, you

9  know, our list is up to six, six defendants who we've found

10 additional accounts for.  I suspect there may be more.  But

11 it's becoming a cumbersome process to keep track of, and I

12 guess -- I guess I'm specifically asking of defendants whether

13 they would do that for each party so that we can have a -- we

14 can understand the baseline that we're operating from going

15 forward.

16          THE COURT:  All right.  Mr. Kolenich, you indicated

17 that Mr. Parrott and Mr. Kessler have updated their

18 certifications.  Now, for your other clients, is that

19 something that you're willing to do?  It seems reasonable when

20 there have been a number of new devices and accounts that have

21 surfaced through this process.

22          MR. KOLENICH:  Your Honor, that certainly seems

23 reasonable for the stuff we know about.  I mean, at some

24 point -- you know, outside this litigation, I have clients who

25 have dozens of Gmail, Hotmail accounts, most of which are

1  defunct, they don't use, and if asked to certify, they would

2  just not know, they would forget it, they don't have the

3  password.

4       I personally tried to recover an old Hotmail

5  password, I can't do it, on an account of mine that hasn't

6  been used for some years.

7       Mr. Bloch and the entire plaintiffs, true, are

8  attempting to litigate this case to a point of sanctions on

9  discovery instead of, you know, what's reasonable for my

10  clients.  It's not reasonable [indiscernible] know we're going

11  to do one declaration, another declaration, another

12  declaration.  There's no way for them to know.  They are not

13  corporations, they do not have IT people, there's no way for

14  them to know the entire universe of social media they're

15  using.

16       IE has already provided the Discord release.  Of

17  course they knew they were using that.  That's a mistake by

18  them.  It won't happen again.  It's a misunderstanding; that's

19  all it was.

20       Kessler and Parrott forgot about these rarely used

21  accounts.  I got their supplemental decs; I will provide them

22  today at some point.  But -- and this is directed not so much

23  to the Court as to the plaintiffs' attorneys:  There is no way

24  that they could possibly know every last social media account

25  that they ever appeared on, whether before or after

1  Charlottesville.  So to some extent, these declarations are

2  not, you know, getting at a legitimate effort to get all, you

3  know, the full universe of this [indiscernible] information.

4       That said -- and I hope the Court understands that

5  I'll provide declarations from my clients, you know, however

6  many declarations they want -- it's not going to solve this

7  problem.  It is never going to solve the problem, or there's

8  no way to know how many different social media accounts they

9  were on two years ago or last year, or what they've got going

10 on now that they consider a complete side issue that may or

11 may not contain the word "Charlottesville."

12      So I think that we need to get through the CSI

13 process, we need to get what's on the main device that these

14 guys use, and then we need to have a fair analysis of the fact

15 that they either do or do not have a case.  This process has

16 to come to an end.  They're not entitled to discover every

17 last syllable my men typed into the Internet ever, you know,

18 thread that may have contained the word "Charlottesville."

19 That's abusive and simply not provided by the civil rules.

20      But I will confer with them, and I will cooperate

21 fully and enthusiastically in getting them whatever satisfies

22 them in the way of these declarations.

23      And again, that's aside from Vanguard.  Vanguard

24 richly deserves the order to show cause; I can't say

25 otherwise.

1      THE COURT:  All right.

2      MR. BLOCH:  Judge -- sorry.

3      THE COURT:  Mr. Bloch.

4      MR. BLOCH:  If I may briefly, Judge.  Mr. Bloch.

5  Obviously, all we're asking for is what was called for in the

6  certifications and order by the Court, which is, you know, not

7  every social media account that each party had, but just

8  social media accounts that contained potentially responsive

9  documents in the litigation.

10     And the additional social media accounts that we have

11 identified I think we were careful to -- to the extent we had

12 any access to any part of it, we were careful to try to

13 determine whether or not they were not only accounts that

14 belonged to the parties, but whether they contained

15 potentially responsive documents, and only raised with the

16 defendants or with the Court accounts that seemed to fall in

17 those categories.

18     And so, you know, I certainly think that defendants

19 should be held to the standard that is called for in the

20 certifications, which is to certify under oath which of the

21 social media accounts that they had and used that contained

22 potentially responsive documents, which is the only way by

23 which, you know, we can sort of move forward with the vendor

24 in determining what is the universe of responsive documents

25 out there.  So I'm only asking for certifications from each

1  party that fall in that -- you know, under that definition.

2       THE COURT:  All right.  And, you know, these

3  certifications, I mean, this is a -- it's an involved and

4  extensive process using the third-party vendor, so all of the

5  parties who are signing certifications need to do their very

6  best to get the information right in the first instance.

7       This is also a discovery process, and every party has

8  a duty to supplement, and, you know, your investigations have

9  to be reasonable.  So if there are things that don't turn up

10  on the first instance and there's a good reason why they

11  didn't, the rules require, you know, a timely supplement, and

12  so that's how I'm viewing these certifications.  It's not a --

13  you know, it's not a trap to set up sanctions, but everybody

14  needs to be doing their best to provide, you know, the

15  information that's available to them that's relevant.

16       MR. KOLENICH:  Jim Kolenich, Your Honor.  It's just

17  going to continue going around in that circle.  It's my

18  client's position that this new stuff is nonresponsive, not

19  necessarily the IE, but the other two.  You know, they

20  wouldn't have been included.  Even if they had been fully

21  informed by their lawyer, they would have still taken the

22  position it's not responsive.

23       So, I mean, we're going to file the certification.

24  We've given them the pass codes for this new stuff.  Several

25  of my clients are fully wide open and cooperative to any

1 electronic discovery, but, you know, they're saying, well, we

2 just want what -- you know, we want to pin down the universe

3 of responsive documents.

4      They have a lot of social media that, by and large,

5 is nonresponsive, and it's just never going to end with the

6 plaintiff saying, "We found this one. We found that one. We

7 found another one." I'm sure there's 500 other social media

8 accounts out there, but most of them are defunct, unused, or

9 my guys [indiscernible]. We just can't provide it, and at

10 some point it would be nice if the plaintiffs would admit to

11 that fact.

12      And, you know, take this Discord release. All of it

13 is already on the Internet, but they're going to come at us

14 like we have some information that's not already out there.

15 It's out there. It's full and complete on that Unicorn Riot

16 website. There isn't anything else to get, but they're going

17 to make a big deal, like, "Well, we need a certification. We

18 need this. We need that." Okay. And they have it already.

19 We have already complied with that. I just, I would like the

20 Court to know that there is no obfuscation going on on our

21 part.

22      MS. KAPLAN: Your Honor, if I may respond to that.

23 This is Ms. Kaplan. That is not even close to being an

24 accurate description of the record here.

25      We are over a year into this case, Your Honor, and we

1  have seen problem after problem after problem with trying get

2  any discovery from these defendants.  The Discord release he's

3  talking about we only know about because some people hacked

4  into Discord and disclosed additional channels that defendants

5  never told us about in this case, never disclosed, never said

6  a word about.  And they now say, "Oh, we should just rely on

7  what the hackers did because it's all now out there."

8       This process has been, with all respect, Your Honor,

9  a farce.  And we're not trying to get every document that

10 defendants have.  We're trying to get every bit of information

11 that still exists, that wasn't thrown in a toilet, that

12 relates to Charlottesville.  And if they wrote about

13 Charlottesville after Charlottesville, it's relevant.  You

14 already said that, Your Honor.  It's not something to dispute.

15      So we will do a motion, but we really think that at a

16 certain point fines have to be implemented of $100 or more a

17 day against each defendant, including Identity Evropa, who has

18 already -- whose counsel has conceded are in contempt for

19 failing to comply with the Court's orders.

20      And I apologize for raising my voice, Your Honor, but

21 it is just shocking to hear this.  Mr. Kolenich is just

22 talking as if he's been cooperating in this case for the past

23 16 months.  We have nothing.

24      THE COURT:  All right.

25      MR. DiNUCCI:  Your Honor, can we go --

 1          MS. KAPLAN:  We take Your Honor's directions and we

 2    will submit a motion.

 3          THE COURT:  Yeah.  Mr. DiNucci, I haven't asked to

 4    hear from you.  Is there anything that you want to weigh in

 5    on?

 6          MR. DiNUCCI:  Yes, Your Honor.  With respect to

 7    compliance about an alleged affair to disclose accounts, this

 8    is the first I heard of this, assuming these remarks were even

 9    addressed to Mr. Spencer.  I haven't heard his name mentioned

10    once.

11          The report I saw this morning only fleetingly, as I

12    was getting ready for an appearance in the Eastern District,

13    didn't indicate any problems with Mr. Spencer.  So I don't

14    know -- I mean, I'm assuming, but I shouldn't do that, that

15    none of these prior remarks have anything to do with my

16    client.  If they do, I'm not aware that anything has not been

17    withheld that was supposed to have been disclosed.  Nobody has

18    said a single thing, let alone a specific thing about my

19    client.

20          THE COURT:  I think the spreadsheet --

21          MR. DiNUCCI:  I'm trying to --

22          THE COURT:  I think the spreadsheet that the

23    plaintiffs submitted, it looked like Mr. Spencer had turned

24    over just about everything, and that I didn't see any problems

25    there.

1          Mr. Bloch, are you aware of any problems with

2    Mr. Spencer's production?

3          MR. BLOCH:  I'm not, Judge.

4          MR. DiNUCCI:  If I may also add, Your Honor, I

5    actually got an e-mail this morning from Ms. Vila in which she

6    indicated that they're having problems doing a search of my

7    client's e-mails because of the breadth of the search on

8    account of one of the search terms provided by plaintiffs'

9    counsel was the name Richard B. Spencer.

10         I've been informed that they have found 153,000

11   e-mails with that, and they're looking for me, but I've got to

12   talk to opposing counsel for guidance on how to narrow that so

13   that we're not going beyond needs proportional to that, or --

14   you know, this is becoming disproportional to the needs of the

15   case.  153,000 e-mails.  God forbid I should have to --

16         MS. KAPLAN:  Your Honor, I'm quite --

17         MR. DiNUCCI:  [Indiscernible].

18         MS. KAPLAN:  I'm quite -- Your Honor, I'm quite

19   confident that with all e-mail productions we gave search

20   terms that are connected, so, obviously, we're not asking for

21   anything -- any e-mail that has "Spencer" on it.  We're

22   looking at e-mails that have "Spencer" with various terms, all

23   of which --

24         MR. DiNUCCI:  All I can say is that's what I was

25   told --

1      MS. KAPLAN:  -- either Mr. Spencer's attorney --

2      MR. DiNUCCI:  I'm sorry.  I'm sorry.

3      MS. KAPLAN:  -- either Mr. Spencer's attorney or the

4  vendor doesn't appreciate.  That, I'm sure, can be cleared up.

5  But that's obviously not what we're asking for.

6      MR. DiNUCCI:  No, I appreciate what you're saying,

7  Ms. Kaplan, but I'm simply relaying what Ms. Vila told me this

8  morning.  I would be happy to forward the e-mail to you.

9      THE COURT:  That's probably something to follow up

10  on, because I can't imagine the plaintiffs would put that as a

11  search term.  That would certainly be overbroad.  All right.

12      MR. STERN:  Your Honor, I have relevant information

13  regarding the discovery.  Since you ordered me on the 1st of

14  March to sign binding -- or IES to be able to be the vendor on

15  the National Socialist Movement, we have actually -- my team

16  has actually went into three social media accounts that I'm

17  sure that wasn't disclosed, that we found shocking

18  information.  You have National Social -- you have NSM88.org,

19  you have NSMradio.org, and you have NSMmedia.org.  And you

20  have Commander@newsects.org, which is the personal e-mail that

21  Jeff -- the former commander was using for the National

22  Socialist Movement.

23      The information that we've gone through and saw in

24  these accounts, some of it clearly identified actions of

25  Charlottesville that was commented on in a very negative way

1  of saying things that were -- I would assume the plaintiff

2  would want.

3          Now, I signed the document as you ordered, Your

4  Honor, for them to be able to get access to stuff, but I have

5  not been in communication with anybody about the other e-mails

6  and the other social media cites that we found that do exist

7  for the National Socialist Movement.  And so the attorney that

8  I hired said he would actually take the time to make sure

9  that, you know, this information is disseminated at the proper

10 time, you know, if he's allowed to be able to substitute in.

11         THE COURT:  All right.  And, Mr. Stern, I didn't see

12 that the plaintiffs' e-mail and the spreadsheet, I don't think

13 it identified anything specific about the National Socialist

14 Movement, so that's why I haven't addressed any issues about

15 it.

16         But in general, without getting too granular on the

17 discovery, you know, I do think that it's certainly time that

18 if there are specific things that are outstanding, that all

19 those be identified, you know, in a formal motion, if

20 they're -- and then have the defendants respond to each item.

21 And, you know, we're going to -- I think we need to bring it

22 to a close.

23         Another thing that I had flagged to discuss today is

24 the case schedule going forward.  And I don't know that it

25 makes as much sense to address that today since some of the

1  discovery is still -- is still somewhat up in the air.  And I

2  don't know whether you all have a good sense for what the new

3  case deadlines would be at this point, how much more time you

4  think you would need for the third-party vendor to complete

5  its process and have the defendants review documents and

6  provide them and schedule depositions.

7       But, Mr. Bloch, do you have a sense of that at this

8  point or is that premature?

9       MR. BLOCH:  Judge, I think I agree with you that it's

10  premature at this point.  I actually did speak to the vendor

11  about 20 minutes before the call, and that was, frankly, her

12  sense too, was that it's difficult for her to even provide a

13  kind of remotely accurate estimate, in part because -- because

14  of the accounts and devices that are still outstanding, and in

15  part because the actual collection of social media accounts in

16  particular I think is particularly cumbersome for them.  So I

17  think I share your sense that it may be premature at this

18  point and maybe makes more sense for us to schedule another

19  call in the next few weeks when we may have a better estimate.

20       THE COURT:  I think that's right, and I don't want

21  this to get too far along before putting a schedule in place,

22  but I also want to get one that's going to work.  So we will

23  take that up at a status conference in the next couple weeks,

24  certainly within a month.

25       All right.  You know, I think there is one lingering

1  issue about attorney status, and that's for the National

2  Socialist Movement.

3        Mr. ReBrook, I understand that you're intending to

4  enter an appearance on behalf of that entity.

5        And, Mr. Stern, I understand that you're in the

6  process of hiring a lawyer, who is on the phone at this time,

7  to enter an appearance behalf of that entity as well.

8        And I just want to say this: that, you know, you

9  all -- it seems like there's some dispute about who controls

10  NSM, and that is just a sideshow to this case.  It doesn't

11  have anything to do with this case, and, you know, I don't

12  want it playing out in this case.

13        The only thing that is -- that we really need for

14  purposes of this case is a person who at this time is entitled

15  to -- you know, to direct operations of NSM, whatever those

16  operations are.  And so whoever that person is, and y'all may

17  be fighting that out in another court, but whoever it is at

18  this time is the person who can hire counsel to have that --

19  have an attorney represent NSM.

20        MR. STERN:  Your Honor, on that -- this is James

21  Stern, Your Honor.  On that note there, for clarity, can we --

22  can both parties who claim to own or have control of the NSM

23  submit to you respectfully any documentation that shows they

24  have control of the organization?  That way you can make a

25  respected decision of saying who you're going to accept

1  decisions from at this point.

2          MR. SCHOEP:  Your Honor, if I may interject.  This is

3  Jeff Schoep.  I'm the incorporator of the National Socialist

4  Movement.  I had been running the organization for the last 27

5  years.  Basically, Mr. Stern is trying to turn this into his

6  15 minutes of fame, and a circus sideshow in the courtroom --

7          THE COURT:  Look, I'm not going to -- I'm not going

8  to have anybody turn it into a sideshow, and that's right

9  where we're going right now.  So, yeah, I'm -- you know, I'm

10  not inclined to, you know, to rule on this issue.  I mean,

11  that is just -- it is a -- that is an issue for a separate

12  court to decide.

13          Neither of you can represent NSM yourselves, so I'm

14  not going to hear from either of you on, you know, who is --

15  who is operating or who is trying to control it.  You can have

16  an attorney enter -- enter an appearance and we'll take it

17  from there.  But, you know, there's no pro se representation

18  of this entity and so --

19          MR. STERN:  Okay.  So we just -- so I can be clear --

20          THE COURT:  -- I think we're done on that.

21          MR. STERN:  So I can be clear, we can have an

22  attorney to enter an appearance, and then you guys -- between

23  you and the attorneys, you guys will discuss it, work that

24  out?  Is that correct, Your Honor?

25          THE COURT:  That will be the first step.  But who

Sines, et al. v. Kessler, et al. - 3/18/19

1  controls this entity is -- I don't see that there's any

2  federal jurisdiction for that, for that issue; it is a side

3  issue.  Now, it may have to be resolved for purposes of this

4  case who is going to, you know, exercise control over it, but

5  that's something I'm going to take up another day if I have

6  to.

7          MR. STERN:  This case is going on right now in state

8  court about that, Your Honor, so you're right.  I agree with

9  you.

10          THE COURT:  All right.  All right.  Is there anything

11  else from the plaintiffs' perspective that we need to take up

12  today?

13          MR. BLOCH:  Judge, just to clarify, because we will

14  be, obviously, needing to reach out to whoever represents NSM,

15  and particularly the accounts that Mr. Schoep -- that

16  Mr. Stern just mentioned I think were not on the original

17  certification, so that will probably be my first order of

18  business with them.  Is there a -- a timeline by which some --

19  some attorney needs to enter a notice of appearance on behalf

20  of NSM, and Nationalist Front for that matter?

21          THE COURT:  Yeah.  It was set out in my order.  It's

22  today.  And that will be, you know, part of the show cause

23  order, if there hasn't been a notice of appearance entered on

24  behalf of Nationalist Front and NSM.  Today is the deadline.

25          MR. BLOCH:  Your Honor --

1    MR. SCHOEP:  Your Honor, this is Jeff Schoep again,

2  and my attorney is on the line.  And I have the state

3  incorporation papers and everything else that's needed, so

4  anything that you guys need as far as, you know, evidence on

5  that, you know, my attorney can outline that.  And it's very

6  clear on the state incorporation web sites and all, and

7  everything else -- you know, web sites and everything else

8  who's --

9    THE COURT:  He can -- he can -- he can file what he

10 needs to after he has noted his appearance.

11    MR. SCHOEP:  Understood.

12    MR. ReBROOK:  Your Honor, this is Edward ReBrook, if

13 I may.

14    THE COURT:  Sure.  Go ahead.

15    MR. ReBROOK:  I have gone through the process to sign

16 up for the ECF within the Western District.  I have not yet

17 received my log-in information for that.  And it's rather late

18 in the day; it's about 5:00 o'clock.  I would absolutely

19 comply with the Court and submit my notice of appearance if I

20 were fittedly able to do so.  But I defer to the Court's

21 judgment on how you wish for me to proceed.

22    THE COURT:  I'll make sure the clerk's office knows

23 about that.

24    MR. ReBROOK:  Thank you, Your Honor.

25    MR. STERN:  Your Honor, one question -- a request.

1  Today is the 18th, the day that you required us to have

2  counsel for the corporation.  The fact that we have -- I have

3  shown good faith that I've been fighting for this

4  organization, and the fact that I have actually spoke to

5  counsel to have counsel to substitute in, can I ask the Court

6  to give me five days to be able to have this attorney to have

7  the certifications to complete?  That way we can -- he can

8  make his appearance?  Can I ask for that, for five days?

9         I do -- Your Honor, just so you know, I have actually

10 stopped my life trying to make sure I comply with the Court,

11 make sure everything that the plaintiffs are asking for.  And,

12 you know, as I said, I would just ask for the consideration of

13 just five days so I can make sure the attorney that we do have

14 that wants to do it can make his appearance properly.

15        THE COURT:  Mr. Stern, the attorney that you've been

16 speaking with, you've obviously made steps towards that, and

17 he's on the phone and hopefully in the process of getting

18 admitted in the district so that he can file a notice of

19 appearance.  So, you know, I'll give you until the end of the

20 week on that.

21        MR. STERN:  Thank you.  And one other quick question.

22 Does the Court want me to submit any of the state attorney

23 general's criminal investigation on this case?

24        THE COURT:  No.  No.  You may not submit anything.

25 You are not representing NSM.  You can have an attorney do

Sines, et al. v. Kessler, et al. - 3/18/19

1  that, and you have until Friday.

2          MR. STERN:  Okay.  Gotcha.  Thank you.

3          THE COURT:  All right.  All right, Mr. Bloch, is

4  there anything else?

5          MR. BLOCH:  Judge, I think that's it.  That's it from

6  the plaintiffs.  Thank you.

7          THE COURT:  Mr. Kolenich?

8          MR. KOLENICH:  Nothing further, Your Honor.

9          THE COURT:  Mr. DiNucci?

10          MR. DiNUCCI:  Nothing further, Your Honor.

11          THE COURT:  Mr. Jones?

12          MR. JONES:  Nothing further, Your Honor.

13          THE COURT:  All right.  Anything from anybody else?

14      (No response.)

15          THE COURT:  Okay.  All right, well thank you and have

16  a good day.

17          UNIDENTIFIED MALE VOICE:  Thank you, Your Honor.

18          UNIDENTIFIED MALE VOICE:  Thank you, Judge.

19      (Court recessed at 5:00 p.m.)

20

21

22

23

24

25

1                          CERTIFICATE

2   I, Judy K. Webb, certify that the foregoing is a

3   correct transcript from the record of proceedings in

4   the above-entitled matter.

5

6   /s/  Judy K. Webb              Date:  3/20/2019

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25