# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, TYLER MAGILL, APRIL
MUNIZ, HANNAH PEARCE, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, and JOHN DOE,

                            Plaintiffs,

v.

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VA, ANDREW
ANGLIN, MOONBASE HOLDINGS, LLC,
ROBERT "AZZMADOR" RAY, NATHAN
DAMIGO, ELLIOT KLINE a/k/a/ ELI
MOSLEY, IDENTITY EVROPA,
MATTHEW HEIMBACH, MATTHEW
PARROTT a/k/a DAVID MATTHEW
PARROTT, TRADITIONALIST WORKER
PARTY, MICHAEL HILL, MICHAEL
TUBBS, LEAGUE OF THE SOUTH, JEFF
SCHOEP, NATIONAL SOCIALIST
MOVEMENT, NATIONALIST FRONT,
AUGUSTUS SOL INVICTUS, FRATERNAL
ORDER OF THE ALT-KNIGHTS,
MICHAEL "ENOCH" PEINOVICH, LOYAL
WHITE KNIGHTS OF THE KU KLUX
KLAN, and EAST COAST KNIGHTS OF
THE KU KLUX KLAN a/k/a EAST COAST
KNIGHTS OF THE TRUE INVISIBLE
EMPIRE,

                            Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT VANGUARD AMERICA

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

I.      Vanguard America Played a Significant Role in the Conspiracy ...................................... 2

II.     Vanguard America has Failed to Meaningfully Participate in Discovery and Flagrantly Disregarded this Court's Orders ........................................................................... 6

ARGUMENT ........................................................................................................ 13

I.      Vanguard America Has Acted in Bad Faith .................................................................. 16

II.     Plaintiffs Have Been Severely Prejudiced by Vanguard America's Failure to Respond to Discovery ................................................................................................... 18

III.    Deterrence Is Required Where, as Here, Multiple Defendants Have Resisted Compliance with Discovery ........................................................................................... 20

IV.     Lesser Sanctions Would Not Be Effective ................................................................... 22

CONCLUSION ....................................................................................................... 24

Case 3:17-cv-00072-NKM-JCH   Document 465   Filed 04/11/19   Page 2 of 30   Pageid#: 4392

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority for sanctions against Defendant Vanguard America ("VA").

## PRELIMINARY STATEMENT

Here we are again: another day, another Defendant flouting discovery obligations. But VA's abject defiance of all Court orders and processes sets it apart from the other non-compliant Defendants: VA's own lawyer finds its conduct in discovery indefensible. Counsel for VA said it best: "Vanguard is a problem." Because of VA's failure to produce its electronic devices to the third-party vendor, this Court issued an order to show cause, affording VA fourteen days to demonstrate "why it should not be held in contempt of court for its failure to obey Fed. R. Civ. P. 37(b)(2)(A)(vii)." In response, VA characteristically thumbed its nose, providing no explanation for its failure to comply with multiple court orders. While contempt is appropriate at this point, given the central role VA played in this conspiracy and thus the amount of important evidence their bad faith defiance might keep from the jury, Plaintiffs will be severely prejudiced without additional case-related remedies.

As a primary organizer of the events in Charlottesville, and the Defendant who marched in lockstep with James Fields on August 12th up to the moment he drove his car through a crowd of people, VA has the most to lose in this case, and therefore the most to hide. Like other Defendants, VA paid lip service to this litigation until it came time to surrender the evidence of the actual communications its members had with others about these events. Once directly ordered by the Court to provide its electronic devices, VA simply disappeared, leaving Plaintiffs significantly prejudiced in their ability to discover and authenticate evidence of critical documents and communications.

Plaintiffs seek a remedy expressly contemplated by the Federal Rules and tailor-made to this particular form of prejudice: that the Court deem certain facts established that Plaintiffs believe they could otherwise prove if VA had simply complied with this Court's orders. Sanctions are additionally needed to restore order to this judicial process and stem the tide of Defendants running from accountability by following each other out the back door, never to be heard from again. Plaintiffs seek the following sanctions under Rule 37 and this Court's inherent authority:

1. That the Court deem the facts listed in the attached Exhibit 1 established for purposes of this action;

2. That the Court deem "authentic" for purposes of satisfying Rule 901 of the Federal Rules of Evidence any documents Plaintiffs have a good faith basis to believe were in fact created by Defendant VA, including, but not limited to, all documents from the social media accounts listed in Exhibit 1;[1]

3. That the Court instruct the jury that Defendant VA chose to intentionally withhold its documents and that the jury may draw adverse inferences from that fact, including that VA chose to withhold such documents because it was aware that such documents contained evidence that Defendant VA conspired to plan racially-motivated violence at the Unite the Right event; and

4. Reasonable expenses, including attorney's fees.

## FACTUAL BACKGROUND

### I. Vanguard America Played a Significant Role in the Conspiracy

VA was one of the early architects of the Defendants' conspiracy to commit racially motivated violence in Charlottesville. Members of VA planned and attended a May 13, 2017 event ("Charlottesville 1.0") in Charlottesville. (First Amended Complaint ("FAC"), ECF No. 175 at ¶¶ 50-53; Ex. 2 at 1 (Vanguard America, *On Charlottesville --Why We Fight*, BLOODANDSOIL.ORG (June 1, 2017).) As VA members would later do on August 11th, on May 13th, they marched to

---

[1] Plaintiffs reserve the right to request that additional facts or documents be deemed established or authentic as additional facts or documents are revealed in discovery.

2

the statue of Robert E. Lee carrying lit torches while chanting racist, anti-Semitic chants. (*See* FAC, ECF No. 175 at ¶¶ 50-53; Ex. 2 at 2.) Buoyed by the perceived success of the May 13th event, Defendant and co-conspirator Jason Kessler sought a permit for the Unite the Right "rally" on the weekend of August 11th. (*Id.* at ¶¶ 53-55.)

VA then coordinated closely with several other Defendants as part of a "joint operation" to plan, promote, and direct the events in Charlottesville on August 11th and 12th. (*Id.* at ¶¶ 319.) VA created an invite-only channel on a private server on Discord, a social media platform, so that its members could privately communicate with one another about their plans for the weekend events in Charlottesville. (*Id.* at ¶¶ 72-81.) Other Defendants, like Defendant Ray, and other "rally" organizers also communicated with VA's members over the group's private server – called "Southern Front" – about their plans for Charlottesville. (*See e.g.*, *id.* at ¶¶ 93, 116; Ex. 3 (Excerpt from Southern Front Discord Server on May 17, 2017.) On its private channel, its private server, and elsewhere, VA's leaders published advertisements for the Unite the Right "rally," offered to bring members to Charlottesville on a "hate bus," and gave members directives about how to dress and arm themselves. (FAC, ECF No. 175 at ¶¶ 114-115; Ex. 4 (Excerpt from @VanguardAm's Twitter Profile on Aug. 11, 2017); (Ex. 5 (First Excerpt from Southern Front Discord Server on Jun. 26, 2017); Ex. 6 (Second Excerpt from Southern Front Discord Server on Jun. 26, 2017).) Indeed, Thomas Ryan Rousseau, a leader of VA, informed his constituents about his understanding of the concealed carry laws in Virginia and how best to bring knives to the "rally." (*See* Ex. 7 at 7 (Anti-Defamation League, *VA*, ADL.ORG, https://www.adl.org/resources/backgrounders/ vanguard-america (last visited April 8, 2019); Ex. 8 at 2-3 (Southern Poverty Law Center, *Thomas Rosseau*, SPLCENTER.ORG, https://www.splcenter.org/fighting-hate/extremist-files/individual/

thomas-rousseau (last visited on April 8, 2019); FAC, ECF No. 175 at ¶¶ 114-115; Ex. 9 (Excerpt from Southern Front Discord Server on Aug. 7, 2017).)  Following Rousseau's lead, VA members posted messages on Southern Front during the events on August 12th encouraging one another to "incite a riot already," and to "[b]eat [Antifa's] shit in."  (Ex. 10 (First Excerpt from Southern Front Discord Server on Aug. 12, 2017); Ex. 11 (Second Excerpt from Southern Front Discord Server on Aug. 12, 2017).)

In addition to planning and promoting the Events, VA played a significant role in Charlottesville on the ground during the weekend of August 11th.  VA leaders and members communicated with one another on Discord throughout the weekend of August 11th, tracking the events in real-time on-line and encouraging its members to behave violently.  (*See e.g.*, FAC, ECF No. 175 at ¶¶ 167, 185, 218; Ex. 12 (E-mail from J. Kolenich to Plaintiffs' Counsel regarding VA's Resp. and Objs. to Pls. First Interrogs. and Reqs. for Prod. of Docs. (Apr. 18, 2018)); Ex. 13 (Third Excerpt from Southern Front Discord Server on Aug. 12, 2017).)[2]  On Friday, August 11th, hordes of white supremacists arrived at Nameless Field wearing the VA uniform—white polo shirt and khaki pants—as planned on Discord.  (*See* FAC, ECF No. 175 at ¶ 153; Ex. 14 (Excerpt from Southern Front Discord Server on Jun. 21, 2017).)  The following day, in addition to showing up in large numbers in matching VA uniforms, many members brought homemade shields and flags bearing VA's logo.  (*Id.* at ¶¶ 153, 197.)  VA members led Defendants and other co-conspirators on a march in formation to Emancipation Park, where they chanted racist and anti-Semitic slogans.  (*Id.* at ¶ 197.)  After Governor McAuliffe declared a state of emergency on August 12th, VA

---

[2] We have omitted the attachment to Exhibits 12, 33, and 26 from this public filing either because counsel for Defendants designated the attachment as Highly Confidential or because the material is designated as Highly Confidential by agreement of the parties pursuant to the Confidentiality Order. Plaintiffs omit these attachments without waiver of any objection to Defendants' designations. Should the Court wish to review the omitted attachments, Plaintiffs are prepared to file them under seal or in another manner the Court prefers.

4

followed Defendants Ray, Cantwell and others to McIntire Park, where Defendants and co-conspirators threatened and assaulted counter-protestors. (*Id.* at ¶¶ 228-229.)

Notably, Defendant James Fields spent much of August 12th with members of VA. (*Id.* at ¶ 197.) Fields was one of the first co-conspirators to arrive at Emancipation Park on August 12th. (*See* Ex. 15 (Hawes Spencer, *Summer of Hate*, photograph insert following 118, (Univ. of VA Press 2018)).) On that morning, as if previously discussed, he arrived fully-clad in the VA uniform and assembled with other VA members. (FAC, ECF No. 175 at ¶¶ 197.) Fields admits to communicating with individuals "wearing white polo shirts with the VA symbol" on August 12th. (Ex. 16 (E-mail from D. Campbell to Counsel regarding Fields' Amended Resps. and Objs. to Pls.' Interrogs. and Reqs. for Prod. of Docs. (April 16, 2018)).)[3] Fields appears to have spent most of the day with VA; throughout the morning and afternoon of the 12th, Fields was seen marching in the VA uniform, with VA members, while carrying a shield decorated with a VA logo. (*See* FAC, ECF No. 175 at ¶ 197; Ex. 17 at 1 (Jason Wilson, *Charlottesville: Man Charged with Murder was Pictured at Neo-Nazi Rally*, THE GUARDIAN (Aug. 13, 2017), https://www.theguardian.com/us-news/2017/aug/13/charlottesville-james-fields-charged-with-was-pictured-at-neo-nazi-rally-vanguard-america).) Months before attending the "rally," Fields made his intentions known when he posted a meme on Instagram depicting a car crashing into a group of protestors. (*See* Ex. 18 (Jasmine Turner, *Fields' Instagram Posts Depicting Car Running Into Crowd to be Shown*, NBC12.COM (Nov. 30, 2018), http://www.nbc12.com/2018/11/30/fields-instagram-posts-depicting-car-running-into-crowd-allowed-trial/.) And on the afternoon of

---

[3] Although counsel for Fields did not designate his Amended Responses and Objections to Plaintiff's First Interrogatories confidential, we have omitted the attachment to Ex. 16 from this public filing because the attachment contains confidential information, such as phone numbers. Should the Court wish to review the omitted attachment, Plaintiffs are prepared to file it under seal or in another manner the Court prefers.

5

August 12th, after spending the day with VA members, Fields acted exactly as planned—he crashed his car into a crowd of counter-protesters and bystanders, killing Heather Heyer and injuring Plaintiffs and many others.  On August 13th, VA members ratified and celebrated Fields' violent rampage from the day before, describing Fields as a "USA Patriot" and suggesting Vanguard America should hand out "dodge challengers instead" of shields.  (*See* FAC, ECF No. 175 at ¶¶ 266, 270; Ex. 19 (First Excerpt from Southern Front Discord Server on Aug. 13, 2017); Ex. 20 (Second Excerpt from Southern Front Discord Server on Aug. 13, 2017)).)  VA also celebrated its own violent conduct, calling August 12th "the biggest victory for our movement history…[w]e gave many people shields, we fought and shed blood for our people today."  (Ex. 21 (Third Excerpt from Southern Front Discord Server on Aug. 13, 2017).  Indeed, its members appeared to measure the organization's success by the extent of the harm they caused, bragging that VA members "fucked up many commies," and "hospitalized dozens."  (Ex. 22 (Fourth Excerpt from Southern Front Discord Server on Aug. 13, 2017).

## II.     Vanguard America has Failed to Meaningfully Participate in Discovery and Flagrantly Disregarded this Court's Orders

Plaintiffs issued an electronic summons in this action to VA on October 19, 2017.  (ECF No. 50.)  Dillon Hopper a/k/a Dillon Irizarry was served with a summons as the representative for VA on November 17, 2017.  (ECF No. 157.)  On January 25, 2018 Plaintiffs served a request for documents on all defendants which sought, generally speaking, all documents related the events described in the complaint, broken down into eight separate categories.  (*See* Pls. [Corrected] First Set of Reqs. for Prod. of Docs., ECF No. 432-1.)  This straightforward request sought electronic documents, including, for example, e-mails, text messages, and content posted on social media, and also instructed VA to preserve all documents and communications relevant to this lawsuit. (*Id.* at 3; 5-6.)  On the same date, Plaintiffs served VA with a set of interrogatories, asking VA to

6

identify, among other things, all means of communication used to communicate about the events listed in the complaint, as well as the electronic devices used for such communication. (*See* Pls. First Set of Interrogs., ECF No. 432-2.) VA did not respond.

On March 3, 2018, Plaintiffs served counsel for VA with a letter regarding Defendants' failure to respond to Plaintiffs' discovery requests and reminding Defendants of their obligation to preserve all documents responsive to Plaintiffs' discovery requests. (*See* Ex. 23 (Letter from J. Fink to E. Woodard & J. Kolenich) (Mar. 9, 2018).) One and a half months later, VA responded to Plaintiffs' requests. (*See* Ex. 12.) In its belated response, VA represented under oath that the "Charlottesville Planning Server" on Discord was the only way VA communicated about the events of this lawsuit. (*Id.* at 1.) With respect to the electronic devices used to communicate concerning the events, VA represented that it used "VA member desktop computers or mobile devices." (*Id.* at 2.) In response to Plaintiffs' request for responsive documents, VA represented it has "none in [its] possession" and that "no special steps were taken" to preserve responsive documents and communications, despite having been served with a summons for this action in October of 2017. (*See id.* at 2-3.)

Plaintiffs followed up on VA's response with a letter to its attorneys two weeks later describing the inadequacy of Defendants' responses. (Letter from G. Tenzer to J. Kolenich and E. Woodard (Apr. 24, 2018), ECF No. 432-4.) Among other things, Plaintiffs requested that by May 1, 2018, VA confirm for each of Plaintiffs' requests for production that VA, in fact, had no responsive documents or communications in its possession. (*See id.* at 2.) Plaintiffs also asked VA (1) to provide the necessary Stored Communications Act ("SCA") consents to Plaintiffs so that Plaintiffs could collect relevant documents from providers of VA's electronic communication services, and (2) to execute Plaintiffs' Proposed Order and Stipulation for the Production of

7

Electronically Stored Information ("ESI") and Proposed Evidence Preservation Stipulation and Order (the "Proposed Orders"). (*See id.* at 2-3; Ex. 24 (E-mail from C. Greene to J. Kolenich (April 24, 2018).) Plaintiffs asked that Defendants provide the SCA consents and execute the orders by May 4, 2018. (ECF No. 432-4 at 2-3.) On May 10, 2018, having received nothing from Defendants, Plaintiffs sent another letter to Defendants again asking them to sign the SCA consents and the Proposed Orders. (Ex. 25 (Letter from G. Tenzer to J. Kolenich (May 10, 2018).) In that letter, Plaintiffs notified VA of various deficiencies in VA's response to Plaintiffs' discovery requests, including VA's "failure to identify the 'Southern Front' Discord server" as a means by which VA communicated about the events at issue in this lawsuit. (*Id.* at Ex. A, 4.) Plaintiffs also asked that VA, in accordance with Plaintiffs' fourth interrogatory, state the nature, type, location, and identity of the person who has custody of the devices used by VA to communicate about the events. (*Id.* at 4.)

Despite numerous letters, e-mails and attempts to negotiate, nine months after Plaintiffs' first document request, Plaintiffs still had not received a single document nor had they received executed versions of the Proposed Orders from VA. Having received nothing from VA – as well as a host of other Defendants – Plaintiffs were forced to file a Motion to Compel Defendants to Permit Inspection and Imaging of Electronic Devices on October 2, 2018. (*See* Mot. to Compel Defs. to Permit Inspection and Imaging of Electronic Devices, ECF No. 354.) Generally speaking, Plaintiffs sought to compel Defendants, including VA, to submit their electronic devices and social media accounts that contained potentially relevant documents to a neutral, third-party vendor (the "third-party vendor") for imaging and preservation of the evidence contained on their electronic devices. VA, through Mr. Kolenich, opposed that motion. (*See* Resp. in Opp. to Mot. to Compel Inspection and Imaging of Electronic Devices, Oct. 16, 2018, ECF No. 356.) After the parties

fully briefed the issue, the Court granted Plaintiffs' motion on November 13, 2018. (*See* Order, Nov. 13, 2018, ECF No. 379.) During argument on the motion, the Court noted that "these discovery requests were issued in January; now it is November. And it is a significant delay." (Tr. of Telephonic Mot. Hrg, Nov. 9, 2018, ECF No. 385 at 8.)

On November 19, 2018, the Court issued the Stipulation and Order for the Imaging, Preservation, and Production of Documents (the "Imaging Order"). (*See* ECF No. 383.) In the Imaging Order, the Court ordered the parties to identify all electronic devices and social media accounts with information responsive to the opposing party's discovery requests on a certification (the "Certification"). (*Id.* at 8.) The Court ordered the parties to provide the Certifications to opposing counsel by December 3, 2018. (*Id.* at 8.) The Court further ordered the Defendants to make their electronic devices and social media accounts available to the third-party vendor by December 17, 2018. (*Id.*) On December 7, 2018, VA provided a Certification to Plaintiffs that Plaintiffs now know is woefully incomplete. (*See* Ex. 26 (E-mail from J. Kolenich to Counsel regarding VA Certification (Dec. 7, 2018)).)

On its Certification, VA, an organization of approximately 200 members, listed a single electronic device – a cell phone. (*See* Ex. 26 at 1; Ex. 7 at 4.) But, in its verified response to Plaintiffs' interrogatories, VA admitted to communicating about the events at issue in this case on "VA member desktop computers or mobile devices." (Ex. 12.)

Likewise, the Certification listed only social media accounts for Dillon Hopper, but Plaintiffs have good reason to suspect VA has numerous other social media accounts with relevant content. (*See* Ex. 26 at 1.) Plaintiffs are aware of at least two separate Twitter accounts, @VanAmOfficial and @VanGuardAm, that published material about the Unite the Right "rally" before and after the "rally." (*See* Ex. 4; Ex. 27 (First Excerpt from @VanAmOfficial's Twitter

9

Profile on Dec. 1, 2017); Ex. 28 (Excerpt from @VanAmOfficial's Twitter Profile on Dec. 14, 2017); Ex. 29 (Second Excerpt from @VanAmOfficial's Twitter Profile on Dec. 1, 2017)). Additionally, VA identified only two Discord accounts on its Certification, both of which seem to belong to Dillon Hopper. But, Hopper appears to have left off numerous other Discord accounts including those of Thomas Rosseau, for example, who were empowered to speak on behalf of VA on Discord. (*See e.g.*, Ex. 30 (Excerpt from TradWorker Discord Server on Feb. 1, 2017); Ex. 31 (Excerpt from Southern Front Discord Server on Jun. 20, 2017).)

Plaintiffs also have good reason to believe that Hopper is not the sole custodian of documents for VA. For one thing, VA's response to Plaintiffs' interrogatories reflects that the group used various members' electronic devices to communicate about the events at issue in this case. (Ex. 26; Ex. 12.) For another, Plaintiffs understand that Thomas Rosseau took over VA's servers prior to the events in Charlottesville and led VA's members in Charlottesville during the Unite the Right "rally." (*See* Ex. 8 at 2-3.) Given these deficiencies in VA's Certification, Plaintiffs have requested, but have not yet received, an updated, complete Certification from each Defendant, including VA. (*See* Tr. of Telephonic Hrg., Mar. 18, 2019, ECF 455 at 20-21).)

As the Court knows, Defendants, including VA, caused substantial delays in discovery by taking months to negotiate and execute the imaging contract with the third-party vendor. (*See* Mot. for Sanctions against Def. Schoep, Feb. 27, 2019, ECF No. 432 at 6-7.) As a result of these delays, the Court moved the fact discovery deadline back to April 17, 2019. (*See* Order, Jan. 4, 2019, ECF No. 397.) During a February 12 telephonic hearing regarding the discovery vendor contract, Plaintiffs specifically requested that the Defendants' electronic devices be turned over and access to social media accounts be provided at the time the contract is executed. (*See* Mot. for Sanctions against Def. Schoep, Feb. 27, 2019, ECF No. 432-7 at 12-13.) The Court asked Mr.

Kolenich whether there was any problem with that. (*Id.*) Mr. Kolenich replied, "No. As I understand it, there's no -- most of my clients are squared away with just sending it in these Faraday bags that the vendors will send. One or two of them, like, if there's a larger device, if there's someplace they can meet near where the client is. . . . I don't foresee it being a problem. All of my people, as best I can tell . . . I understand that they're going to have to turn these devices over and they're prepared to do it." (*Id.* at 13.) With respect to social media accounts, Plaintiffs asked that defense counsel "start pulling those all together to provide to the vendor so that once they get the devices and the account, they can immediately start performing the work that they need." (*Id.* at 14-15.)

The Court held a telephonic hearing on February 21, 2019 regarding an update as to the status of the electronic device collection and production process. Not a single Defendant had yet provided the vendor with a single electronic device and the Defendants were just beginning the process of providing the vendor with their social media account credentials. (Tr. of Telephonic Hrg., Feb. 21, 2019, ECF No. 432-11 at 6.) On March 1, 2019, the Court held another telephonic hearing and again asked about progress on discovery. (Tr. of Telephonic Hrg., Mar. 1, 2019, ECF No. 441 at 18.) Again, Plaintiffs informed the Court that Defendants had turned over no electronic devices. (*Id.* at 18.) Two days later, the Court issued an order requiring all Defendants to "produce their electronic devices and social media account credentials to access" ESI "to the third-party vendor by the end of the day on Friday, March 8, 2019." (Order, March 4, 2019, ECF No. 440 at 3.) March 8th came and went and still VA had not provided any electronic devices to the third-party vendor.

By the next telephonic hearing, several Defendants had sent electronic devices to the third-party vendor. Though VA provided partial account credentials to a few accounts, VA still had not

sent a single device.[4]  (*See* Ex. 32 (E-mail from M. Bloch to the Court (Mar. 18, 2019); Tr. of

Telephonic Hrg., Mar. 18, 2019, ECF No. 455 at 14).)  Counsel for VA candidly admitted that:

> Vanguard is a problem. Vanguard has not turned over the devices they were supposed to turn over and is not listening to counsel on the necessity of hurrying up and providing this stuff, so I really don't have anything to say in regard to them other than it might be useful for the Court to give them sort of a warning shot that, you know, you're not kidding, sanctions possible in this circumstance, and give them one last chance to comply. . . So I think if the Court could send, you know, some sort of -- some sort of warning before actually imposing sanctions or making us go through motion practice, with Vanguard that might be useful to at least bring this to a conclusion that either he is or is not going to cooperate.

(Tr. of Telephonic Hrg., Mar. 18, 2019, ECF No. 455 at 14.)  In response to the Court's statement

that the Court might issue an order to show cause, counsel for VA stated: "the show cause order is

sort of exactly what I was envisioning. I can't – I can't deny that it had not been complied with.

There's been no indication that I can give the Court that there's been any effort to comply on that

one client." (*Id.* at 15.)  Lest there be any doubt as to VA's willful disobedience of this Court's

orders, Counsel continued: "Vanguard richly deserves the order to show cause; I can't say

otherwise." (*Id.* at 23.)

     Two days later, on March 20, 2019, the Court issued an Order to Show Cause.  (*See* Order

to Show Cause, March 20, 2019, ECF No. 452.)  The Court ordered VA to file a written response

showing why it should not be held in contempt for its failure to obey the Court's November 19,

2018 Imaging Order (ECF No. 383) and the Court's March 4, 2019 Order (ECF No. 440) requiring

Defendants to provide their electronic devices to the third-party vendor by March 8, 2019.  (*See*

Order to Show Cause, March 20, 2019, ECF No. 452.)  The Court gave VA fourteen days to file a

---

[4]  In total, VA provided credentials to a single e-mail account for Dillon Hopper and an SCA consent for his Discord posts.  Through third-party discovery, Plaintiffs received content from the Discord server "Southern Front," although it is difficult for Plaintiffs to authenticate the documents without the participation of any members of VA.

written response.  (*See id.* at 2.)  On the fourteenth day, April 3, 2019, counsel for VA affirmed

that he had provided a copy of the Order to Show Cause to VA, spoke to VA on the phone, and

"explained what [the Order] means."  (Resp. to Order to Show Cause, Apr. 3, 2019, ECF No. 458

at 1.)  Unable to defend VA's conduct, counsel for VA honorably admitted: "I have not received

any information, as of April 3, 2019, indicating compliance with pending Court orders or showing

cause why compliance should be excused."  (ECF No. 458-1 at 1.)

Nearly fifteen months have passed since Plaintiffs' initial discovery request to VA.  In that

time, VA provided a Certification that omits electronic devices and social media accounts that

Plaintiffs have reason to believe contain documents and communications that are responsive to

Plaintiffs' discovery requests.  And, as of April 9, 2019 when the parties received the most recent

third-party vendor report, VA had yet to provide the third-party vendor with any electronic devices.

(Ex. 33 (E-mail from Third-Party Vendor to Plaintiffs' Counsel and Defendants' Counsel

regarding iDS Weekly Status Report (April 9, 2019).)[5]

## ARGUMENT

A court has wide discretion to impose sanctions under Rule 37 and its inherent authority

when a party fails to serve its answers, objections, or written response to discovery requests or to

comply with discovery ordered by the court.  *See* Fed. R. Civ. P. 37(b)(2) & (d)(3); *Mut. Fed. Sav.*

*& Loan v. Richards & Ass'n*, 872 F.2d 88, 94 (4th Cir. 1989).  It is generally recognized that

sanctions are intended to: (1) penalize culpable parties; (2) deter others from engaging in similar

conduct; (3) compensate the court and other parties for expense caused; and (4) compel discovery.

*See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse,* § 49 (2013) (citing

---

[5] We have made a redaction to Ex. 33, and omitted the attachment, consistent with the mandates of the Confidentiality Order. Should the Court wish to review the omitted and redacted material, Plaintiffs are prepared to file it under seal or in another manner the Court prefers.

*Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)). Thus, the range of available sanctions "serve both normative—designed to punish culpable conduct and deter it in others—and compensatory—designed to put the party adversely affected by the spoliation in a position that is as close to what it would have been in had the spoliation not occurred—functions." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 534 (D. Md. 2010). "Rule 37 is flexible," and courts are permitted to "use as many and as varied sanctions as are necessary to hold the scales of justice even." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. 06-CV-2662, 2016 WL 1597119, at *4 (D. Md. Apr. 20, 2016) (citation omitted).

Rule 37 specifies a nonexclusive list of substantive, case-related sanctions for failure to obey a discovery order, ranging from an order establishing certain facts to the entry of a default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 517–18 (D. Md. 2000). Rule 37 also provides that the Court *must* order the payment of expenses by the disobedient party, including "the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(d)(3). A court may also award sanctions for discovery violations pursuant to its inherent authority. *See, e.g.*, *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) ("[A] court acting under its inherent authority may impose sanctions for any conduct utterly inconsistent with the orderly administration of justice." (Citation and internal quotation marks omitted)); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 178–79 (D. Md. 2008).

14

The Fourth Circuit has developed a four-part test for determining what sanctions to impose under Rule 37: "(1) whether the noncomplying party acted in bad faith;[6] (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions would be effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The presence or absence of any one of these factors is not dispositive. *See, e.g.*, *Victor Stanley,* 269 F.R.D. at 533.

Additionally, the Court has the power to sanction parties under its inherent authority. The factors courts consider largely mirror those courts apply under Rule 37:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [the court] seldom dismiss[es] claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Projects Mgmt.*, 734 F.3d at 374 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993)).

Each of the four prongs of the Rule 37 test—as well as the factors courts consider under their inherent authority—are easily satisfied here. VA's bad faith here has manifested in two ways—(1) its refusal to provide the third-party vendor with electronic devices, and (2) its failure to fully disclose relevant social media accounts and credentials. VA's willful defiance of its

---

[6] While bad faith is relevant to the analysis and evident in the case of VA, the Fourth Circuit does not require that a court find bad faith in order to impose the type of sanctions being sought here. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001) (holding that dismissal for spoliation is "usually justified only in circumstances of bad faith or other like action. But even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case."); *Sampson*, 251 F.R.D. at 179 ("Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions.").

15

discovery obligations has significantly hindered Plaintiffs' ability to establish vital facts and authenticate critical documents they otherwise would have been able to, had VA simply participated in discovery and complied with this Court's orders. Moreover, VA's bad faith disobedience seems to have encouraged similar behavior from other Defendants—like Defendants Jeff Schoep, Elliot Kline, Matthew Heimbach, and potentially others—who have also flouted this Court's discovery orders. Sanctions are appropriate. Specifically, Plaintiffs seek the following sanctions:

1. That the Court deem the facts listed in the attached Exhibit 1 established for purposes of this action;

2. That the Court deem "authentic" for purposes of satisfying Rule 901 of the Federal Rules of Evidence any document Plaintiffs have a good faith basis to believe was in fact created by Defendant VA, including, but not limited to, all documents from the social media accounts listed in Exhibit 1;[7]

3. That the Court instruct the jury that Defendant VA chose to intentionally withhold its documents and that the jury may draw adverse inferences from that fact, including that VA chose to withhold such documents because it was aware that such documents contained evidence that Defendant VA conspired to plan racially-motivated violence at the Unite the Right event;

4. Reasonable expenses, including attorney's fees.

The requested sanctions are necessary to put Plaintiffs in the position they would have been in had VA complied with its discovery obligations in this case and are designed to deter other Defendants from continuing to defy this Court's orders.

## I.     VA Has Acted in Bad Faith

There is little doubt that VA has acted in bad faith, as statements from its own lawyer make clear. Courts have considered a number of non-exclusive factors in determining whether to

---

[7] Plaintiffs reserve the right to request that additional facts or documents be deemed established or authentic as additional facts or documents are revealed in discovery.

presume bad faith, including, as discussed *infra*, whether a decision not to participate appears to be a conscious one, whether there is a legitimate explanation for the failure to participate, and the length of time a party has failed to participate, among others.

Representations from VA's attorney, who referred to VA as "a problem" and candidly admitted that there's been "no indication . . . that there's been any effort to comply" by VA, firmly establish that VA's decision to cease participation in discovery was willful. *Dusé v. Barnes & Noble, Inc.*, No. 1:11-CV-875, 2011 WL 13192908, at *2 (E.D. Va. Dec. 22, 2011) (finding that where a party "made a conscious decision not to participate" in the case, "[s]uch a refusal amounts to bad faith"), *report and recommendation adopted*, No. 1:11-CV-875, 2012 WL 12973545 (E.D. Va. Jan. 6, 2012), *aff'd*, 473 F. App'x 189 (4th Cir. 2012). Additionally, VA has made "no effort to explain or justify [its] failure to engage in meaningful discovery, and given [its] persistent failure to cooperate, [its] silence leaves the court with no choice but to presume bad faith." *Sawyers v. Big Lots Stores, Inc.*, No. 7:08-CV-258, 2009 WL 55004, at *3 (W.D. Va. Jan. 8, 2009); *Robinson* v. *Yellow Freight Sys.*, 132 F.R.D. 424, 428 (W.D.N.C. 1990) ("Plaintiff has utterly failed to come forward with any legitimate reason that explains his refusal to attend the two (2) scheduled depositions in Kingstree. Thus, the Court concludes that Plaintiff chose to disregard this Court's discovery orders in bad faith.").

In the nearly fifteen months since Plaintiffs served VA with a document request, VA has produced only a fraction of the universe of documents it possesses and has taken affirmative steps to evade court orders and make it more difficult for Plaintiffs to obtain relevant documents, such as omitting social media accounts and electronic devices from its Certification. This substantial delay and substantial non-performance bolsters the otherwise overwhelming evidence of bad faith. *See, e.g.*, *Green* v. *John Chatillon & Sons*, 188 F.R.D. 422, 424 (M.D.N.C. 1998) (noting

17

"[n]oncompliance with discovery orders can serve as a basis for a finding of bad faith," and dismissing plaintiff's claims with prejudice where plaintiff's "complete failure to provide discovery over **eight months** after the original requests and over two months after being ordered by Magistrate Judge Eliason to do so satisfies the four-part test required by *Mutual Federal*." (emphasis added)); *Daye* v. *Gen. Motors Corp.*, 172 F.R.D. 173, 177 (M.D.N.C 1997) ("The failure of Plaintiffs and Colbert to honor the Orders of this Court and Colbert's failure to initiate any contact with Defendant's counsel for over six months constitutes both unjustifiable negligence as well as bad faith.").

## II.    Plaintiffs Have Been Severely Prejudiced by VA's Failure to Respond to Discovery

The prejudice caused by VA's failure to produce any electronic devices and the overwhelming majority of social media accounts used by its members to plan this conspiracy is substantial, particularly in a case where Plaintiffs need to prove a conspiracy.  Courts have consistently found prejudice where parties are hampered in their ability to prove material components of their case due to the opposing party's failure to produce documents.  "The purpose of pre-trial discovery is for a litigating attorney to obtain information from the opposing party, information which in many cases is not otherwise available" and "an absolute lack of discovery results in clear prejudice." *Pruitt v. Bank of Am., N.A.*, No. 8:15-CV-1310, 2016 WL 7033972, at *3 (D. Md. Dec. 2, 2016) (citation omitted); *see also id.* at *2 ("Interrogatories[, document requests,] and depositions are important elements of discovery; [a party] would be hard-pressed to conduct its case without them.  When a [party] refuses to respond to such requests, it can have a debilitating effect on the rest of the litigation.").  Due to Defendants' repeated and ongoing discovery misconduct, "this case has taken up an inordinate amount of judicial resources, and resulted in significant procedural and substantive prejudice to Plaintiff[s]" who have "been stymied at every turn . . . to get the evidence [they] need[] to prosecute [their] claims." *First*

18

*Mariner Bank v. Resolution Law Grp., P.C.*, No. 12-CV-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014); *see also Diamond v. Mohawk Indus., Inc.*, No. 6:12-CV-00057, 2014 WL 1404563, at *5 (W.D. Va. Apr. 10, 2014) (finding defendant was "greatly prejudiced by the inability to . . . communicate with [plaintiff] in any regular fashion about the case, or receive responsive documents from him"). "Significant prejudice" is also present where, as here, "the evidence sought by [Plaintiffs'] discovery requests 'goes to the heart' of [their] claim." *Hendricks*, 2017 WL 2711131, at *4; *see also Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018) ("[P]rejudice arises when a party cannot present evidence essential to its underlying claim." (citation and internal quotation marks omitted)).

Discovery is especially critical in a conspiracy case. There is already an "inherent difficulty in proving conspiracy," *Precision Piping & Instruments, Inc. v. E.I. duPont De Nemours & Co.*, 707 F. Supp. 225, 228 (S.D.W. Va. 1989), and the Fourth Circuit has held that "[a]cknowledging the difficulty of proving the existence of a conspiracy by direct evidence, . . . 'a conspiracy may be proved wholly by circumstantial evidence . . . of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy,'" *United States v. Masi*, 135 F.3d 771, at *6 (4th Cir. 1998) (table decision) (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)). The absence of documents that Plaintiffs can authenticate as having been generated by VA impedes Plaintiffs' ability to prove the manner in which VA's members communicated and conspired with other Defendants, particularly with Defendant Fields, thus jeopardizing Plaintiffs' ability to prove their case against other Defendants as well.

Defendants' failure to participate in discovery has resulted in textbook prejudice here. During the period of this case where VA was participating, VA, through Dillon Hopper, admitted

19

in sworn interrogatory responses to using "VA member desktop computers or mobile devices" to communicate about the events in Charlottesville. Yet VA has refused to produce a single one of those computers and devices. In a conspiracy case, VA is withholding evidence of communications amongst co-conspirators, arguably the most critical category of evidence that exists in this type of case. The prejudice of a nearly wholesale failure to produce such evidence cannot be overstated. Plaintiffs are aware of the existence of damning evidence VA has in its possession – evidence that likely corroborates the substantial circumstantial evidence of planning the critical moments of the events in this case, such as the Fields car attack – and yet VA has intentionally denied Plaintiffs access to a huge volume of that evidence. Even those documents Plaintiffs have obtained through other means become difficult to authenticate without VA's participation in the discovery process. For example, VA created a server on Discord, Southern Front, to organize its members for the Unite the Right event. Plaintiffs have worked diligently to mitigate the prejudice from VA's nearly complete failure to produce by attempting to obtain VA's documents from third parties, like Discord. While that process has yielded a substantial number of Discord posts that purport to be authored by members of VA on the Southern Front server and other servers, Plaintiffs are unable to authenticate these documents or gain any understanding of the volume of documents VA continues to withhold without being able to get discovery from its electronic devices and its additional social media accounts. Yet, without Court intervention, that is exactly where Plaintiffs find themselves.

III. **Deterrence Is Required Where, as Here, Multiple Defendants Have Resisted Compliance with Discovery**

As more and more Defendants continue to defy discovery orders, sanctions become increasingly necessary for deterrence purposes. As the Fourth Circuit has held, "not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such

20

bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Mut. Fed. Sav. & Loan*, 872 F.2d at 92; *see also Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (holding that sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

The discovery disobedience by other Defendants is well-catalogued at this point. There are multiple sanctions motions pending and potentially more on the way. As this motion is filed, multiple Defendants still have not complied with the Court's latest deadline—March 8—to produce their electronic devices and social media credentials to the third-party vendor, and Plaintiffs continue to encounter certain resistance. Unpunished, VA's overt defiance will only further encourage and empower other Defendants to do the same in a discovery process that has a long way to go. The extent of continued non-compliance or late compliance among Defendants underscores the need for stiff sanctions against parties, like VA, whose lawyers chose to move to withdraw from the case, rather than even attempt to justify their behavior. *Silvestri*, 271 F.3d at 590 ("The courts must protect the integrity of the judicial process because, as soon as the process falters . . . the people are then justified in abandoning support for the system." (Alteration, citation, and internal quotation marks omitted)). The need to deter this type of conduct "is manifest. Civil cases simply cannot proceed without participation by all parties in discovery." *Pruitt*, 2016 WL 7033972, at *2. "Continued contumacious behavior and abuse through non-compliance with [a Court's] orders cannot be tolerated. And with discovery's important role in modern litigation, deterrence is greatly needed." *Flame S.A. v. Industrial Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014).

21

## IV.    Lesser Sanctions Would Not Be Effective

Pursuant to Rule 37 and the Court's inherent authority, severe sanctions are warranted for VA's misconduct.[8]  *Butler v. DirectSat USA, LLC*, No. 10-CV-2747, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify this harshest of sanctions."); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 194 (D.S.C. 2008) (finding "harsher sanctions" permitted where "the spoliation was so prejudicial that it prevents the non-spoliating party from maintaining [their] case").  Rule 37(b)(2)(ii) expressly provides for sanctions that both remedy the substantial prejudice Plaintiffs have suffered and constitute the most appropriate disincentive to other Defendants contemplating similar transgressions.

Regarding the first and second requested sanctions, Plaintiffs are asking that the Court deem certain facts established that Plaintiffs have a good faith basis to believe they would in fact establish if VA had produced its documents and devices as required in this case.  Rule 37(b)(2)(A)(i) expressly contemplates this particular sanction for exactly this purpose, allowing a court to "direct[] that . . . designated facts be taken as established for purposes of the action, as the prevailing party claims."  *See*, *e.g.*, *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104 (D.N.J. 2006) (holding that certain facts would "be deemed admitted for all purposes" in light of "the significance of the documents withheld from Plaintiffs, the deliberate and willful nature of the non-disclosure, and the prejudice suffered by Plaintiffs").  If VA turned over its documents and participated in the rest of discovery, Plaintiffs would be able to confront its members with its documents and establish

---

[8]  Plaintiffs believe that VA's failure to comply with discovery and with the Court's orders could warrant the granting of a default judgment, arguably a more severe sanction than what is sought here.  Such a sanction would frankly leave Plaintiffs worse off, however, given the amount of damning evidence VA may possess that may never see the light of day.  In a conspiracy case, such a result would hinder Plaintiffs' ability to prove their case against other Defendants and perversely would therefore constitute somewhat of a windfall for VA.

the authenticity of documents they authored in furtherance of this conspiracy. Any lesser sanction would fail to alleviate the substantial prejudice Plaintiffs have suffered from the inability to obtain and authenticate many of the Defendants' documents and place them before a jury. Moreover, any sanction that does not impose a case-related consequence would allow Defendants to avoid accountability entirely simply by opting out of the process. Defendants should not be rewarded for their disobedience.

As to the third requested sanction—adverse inferences—a failure to preserve and produce documents is, in effect, no different from intentional spoliation. "Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995); *see also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554–55 (6th Cir. 2010) (affirming district court "imposing a non-rebuttable adverse inference after finding that the Defendants' destruction of [evidence] severely compromised the Plaintiffs' case by depriving the Plaintiffs of the most relevant piece of evidence to prove their claims" (internal quotation marks omitted)). "Such an instruction can be critical to assisting the innocent party in establishing the nature of the evidence that has gone missing" and "ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence." *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017) (citation and internal quotation marks omitted).

These remedies are the only way to properly "level[] the evidentiary playing field and . . . sanction[] the improper conduct." *Vodusek*, 71 F.3d at 156. Moreover, given that this Court's "direct, unequivocal order[s] ha[ve] been met with . . . silence", "there is nothing to indicate that a less drastic sanction would lead to different results." *Pruitt*, 2016 WL 7033972, at *3.

23

Because Defendant VA has willfully disobeyed multiple Court orders, withheld social media accounts and electronic devices, and failed to meaningfully participate in discovery in this case, the above-requested sanctions are the minimum necessary and appropriate to remedy the prejudice Plaintiffs have suffered from Defendant's defiance, and to deter other Defendants from following suit.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant their motion for sanctions against Defendant VA in its entirety, order the requested relief, and order such other relief as the Court deems just and proper.

Dated:  April 11, 2019

Respectfully submitted,

/s/_____

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Christopher B. Greene (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
cgreene@kaplanhecker.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

24

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
jphillips@bsfllp.com

Alan Levine (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

*Counsel for Plaintiffs*

**RULE 37 CERTIFICATION**

Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted to meet and confer with VA, as detailed on pages three through thirteen. Plaintiffs certify that they are unable to obtain the requested discovery without court action.

Dated: April 11, 2019                                     Respectfully submitted,


                                                          */s/* _____
                                                          Robert T. Cahill (VSB 38562)
                                                          *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,*
*Michael Tubbs, and League of the South*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

William E. Rebrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, Virginia 22015
edward@ReBrookLaw.com

*Counsel for Jeff Schoep, Nationalist Front,*
*and National Socialist Movement*

Lisa M. Lorish
Federal Public Defenders Office
Western District of Virginia - Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
lisa_lorish@fd.org

*Fifth Amendment Counsel for Defendant*
*James A. Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Matthew Parrott,*
*Robert Ray, Traditionalist Worker Party,*
*Jason Kessler, Vanguard America, Nathan*
*Damigo, Identity Europa, Inc. (Identity*
*Evropa), and Christopher Cantwell*

I further hereby certify that on April 11, 2019, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a : Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
2634 U.S. HWY 158 E
Yanceyville, NC 27379

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

I further hereby certify that on April 11, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

_/s/_____
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*

2