UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE, <br><br> Plaintiffs, <br><br> v. <br><br> JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE, <br><br> Defendants. | Civil Action No. 3:17-cv-00072-NKM |

**PLAINTIFFS' REPLY TO DEFENDANT SPENCER'S OPPOSITION TO MOTION
FOR SANCTIONS AGAINST DEFENDANTS KLINE AND HEIMBACH**

Defendant Richard Spencer ("Spencer") opposes Plaintiffs' motion for sanctions against Defendants Elliot Kline and Matthew Heimbach, arguing the requested sanctions sweep too broadly and hamper his ability to defend himself in this case. In doing so, Spencer both mischaracterizes the requested sanctions and underestimates the breadth of admissible evidence in a conspiracy case such as this one. The requested sanctions are not only necessary to remedy the significant prejudice to Plaintiffs caused by the discovery misconduct, they are little more than a proxy for the type of evidence that would have been admissible at trial anyway had Kline and Heimbach chosen to participate. In his zeal to throw out the requested sanctions entirely—and thereby take advantage of the evidentiary gap left in the wake of Kline's and Heimbach's disappearance—Spencer also overlooks well-established methods of confining any potential spillover effect of evidentiary rulings against his co-defendants, such as a limiting instruction, which is sufficient to accommodate Spencer's concerns here. In claiming some sort of due process violation, Spencer has it exactly backwards—it is Plaintiffs who will be denied due process if Kline and Heimbach are allowed to withhold documents with impunity, hindering Plaintiffs' ability to introduce important evidence and authenticate critical documents.

**I.     The Requested Sanctions Do Not Hinder Spencer's Ability to Defend Himself**

To be clear, Plaintiffs do not believe that Spencer should be punished for the non-compliance of other Defendants. And the sanctions sought against Kline and Heimbach do not punish Spencer or hamper his ability to defend himself.

Spencer wrongly argues that Plaintiffs have sought sanctions "that would apply to all Defendants, including Mr. Spencer." (Def. Spencer's Opp. to Mot. for Sanctions Against Defs. Kline and Heimbach, Apr 17. 2019 ("Spencer Opp."), ECF No. 469 at 2.) The requested sanctions are each limited by their terms to apply exclusively to Kline and Heimbach. And Plaintiffs are not

seeking any Court-imposed fact or inference that suggests that Spencer had any involvement with the behavior ascribed to Kline or Heimbach.

As Judge Moon ruled, to hold any Defendant liable for conspiracy, Plaintiffs must prove that "*each* Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events." (Mem. Op., Jul. 9, 2018, ECF No. 335 at 21 (emphasis added).) To the extent it is established—either through the presentation of evidence or Court-imposed sanction—that Kline and Heimbach agreed to commit racially-motivated violence and withheld evidence that they did so, those particular facts have no impact on whether Spencer—or any other Defendant—entered into, or had any involvement with, any such agreement. Nothing about the requested sanctions hinders Spencer's ability to elicit facts or make arguments that he had nothing to do with any such agreement, or any other behavior that resulted in the violence that occurred in Charlottesville. Spencer is not implicated or punished in any way by the sanctions Plaintiffs are seeking against Kline and Heimbach.

To the extent Spencer believes that the requested facts and inferences would impact him *inferentially* through some sort of spillover effect from the requested sanctions, that belief provides no legal basis to refrain from imposing sanctions otherwise duly earned by Kline and Heimbach. The court considered, and rejected, an identical argument in *Flagg* v. *City of Detroit*, No. 05-cv-74253, 2011 WL 4634245 (E.D. Mich. Oct. 5, 2011), *aff'd*, 715 F.3d 165 (6th Cir. 2013). In *Flagg*, the court imposed an adverse inference on one of the defendants in a multi-defendant case for destroying certain documents in discovery. Another co-defendant, who did not participate in the document destruction that led to the imposition of sanctions, objected, claiming that "any adverse inference against the [other co-defendant] will unfairly prejudice him as a co-defendant at a joint trial." *Id.* at *1. Specifically, the innocent co-defendant argued that "it would

3

be unfairly prejudicial if the trier of fact were permitted to draw inferences against him based on the absence of e-mails from the relevant period." *Id.* at *7.  The court disagreed:

> While this argument has some force, it does not provide a basis for declining to adopt the Magistrate Judge's recommendation as to a proper sanction to impose on the Defendant City.  ***Surely, the Court is not powerless to sanction a defendant for its destruction of evidence, just because this sanction might have a prejudicial "spillover" effect upon a co-defendant.***  There are all manner of mechanisms, running the gamut from limiting instructions to separate trials, that are available to alleviate this possible prejudice.

*Id.* (emphasis added).  If Spencer were correct that the requested sanctions violated his due process rights, courts could never deem facts admitted or impose adverse inferences as sanctions against a single defendant in a multi-defendant case.  To the contrary, these sanctions are specifically contemplated by Federal Rule of Civil Procedure 37 and imposed in precisely these scenarios.  *See, e.g.*, *Cytec Carbon Fibers LLC* v. *Hopkins,* No. 2:11-cv-0217, 2012 WL 6044778, at *2 (D.S.C. Oct. 22, 2012) (imposing sanctions against subset of defendants in civil RICO conspiracy case for spoliating evidence), *report and recommendation adopted,* No. 2:11-cv-0217, 2012 WL 6050595 (D.S.C. Dec. 5, 2012); *Doug's Word Clocks.com Pty Ltd.* v. *Princess Int'l, Inc.*, 323 F.R.D. 167 (S.D.N.Y. 2017) (deeming facts established as to subset of defendants as discovery sanction); *Black* v. *Sheraton Corp. of Am.*, 371 F. Supp. 97 (D.D.C. 1974) (deeming facts established as sanction against government for improperly raising claim of executive privilege); *Ratesi* v. *Sun State Trees & Prop. Maint., Inc.*, No. 6:05-cv-1825, 2007 WL 2566037, at *3 (M.D. Fla. Aug. 31, 2007) (imposing adverse inference instruction as sanction for discovery violation against single non-compliant defendant in multi-defendant case.)

## II.   A Limiting Instruction Is Sufficient to Cure any Potential Spillover Effect

The appropriate mechanism to cure any potential spillover effects as to the other Defendants is for the Court to issue a limiting instruction; it is not to decline to issue the sanctions in the first place.  Courts find limiting instructions to be satisfactory cures to potential spillover

prejudice that may stem from damaging evidence admitted against co-conspirators in both the civil and criminal contexts. *See, e.g.*, *United States* v. *Osuji*, 413 F. App'x 603 (4th Cir. 2011); *Flagg*, 2011 WL 4634245, at *7. In *Osuji*, a criminal conspiracy case, the government called an unindicted co-conspirator to the witness stand to assert her Fifth Amendment privilege in front of the jury, imposing arguably far more damaging inferences on the defendant co-conspirators in that case than Spencer complains of here.[1] The defendants objected, arguing "that the inferences that the jury could have drawn from [the unindicted co-conspirator's] invocation of her Fifth Amendment privilege added critical weight to the prosecution's case." 413 F. App'x at 610. The Fourth Circuit rejected that argument, noting the district court "instructed the jury not to draw any inferences from [the unindicted co-conspirator's] invocation of her Fifth Amendment privilege. We presume that the jury followed that instruction and hold that the instruction sufficiently cured any potential error in allowing [the unindicted co-conspirator] to invoke her privilege before the jury." *Id.* (citation omitted).

Similarly here, to the extent there is any concern that the requested sanctions might impose any prejudicial inferences on any other Defendant, a limiting instruction sufficiently cures any such prejudice. Applying the requested sanctions with an appropriate limiting instruction is the best way to remedy the substantial prejudice Plaintiffs have suffered from Kline's and Heimbach's disappearances, without impeding the other Defendants' abilities to defend themselves.

Spencer has no more basis to object to these facts coming in through Court-imposed sanctions than he would if they were introduced at trial through Kline and Heimbach themselves. Evidence of one co-conspirator's acts or declarations may be admissible in a trial with multiple

---

[1] None of the requested sanctions in this case state or imply that Spencer participated in any behavior attributed to Kline or Heimbach.

5

defendant co-conspirators, even if such acts or declarations were made in the absence of the other co-conspirators, as proof of a single individual's participation in the conspiracy. *See Lutwak* v. *United States*, 344 U.S. 604, 618 (1953). Indeed, one co-conspirator's out-of-court declaration may be admissible as direct evidence against his other co-conspirators, if his statements were made "during the course and in furtherance of the conspiracy." *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987) (citation omitted); *see* Fed. R. Evid. 801(d)(2)(E). Evidence that Kline or Heimbach participated in a racially-motivated conspiracy, for example, is not something that Spencer could keep from the jury simply on the grounds that he believes such facts would be damaging to his defense.

While it may be preferable that a jury hear that evidence through Kline and Heimbach themselves, rather than through Court-imposed sanctions, it is Kline's and Heimbach's willful disobedience that has deprived us all of that possibility. Indeed, Rule 37 expressly allows a Court to deem certain facts established as a sanction, so long as those facts are otherwise admissible and relevant, which the requested sanctions are in this case. Spencer makes no claim that such facts are irrelevant or inadmissible on any other grounds. The requested sanctions simply ensure that Plaintiffs are not prejudiced by Kline and Heimbach's misconduct, and the incidental impact that may have on other Defendants can be addressed, if necessary, through limiting instructions.

### III. A Default Judgment Alone Does Not Remedy the Full Extent of the Prejudice Suffered by Plaintiffs and Provides a Windfall to Defendants

Spencer suggests that the Court impose a default judgment on Kline and Heimbach in lieu of the requested sanctions. (Spencer Opp., at 7.) But a default judgment by itself is insufficient to remedy the harm caused by Kline and Heimbach, and provides a windfall to the other Defendants, because it effectively allows Kline and Heimbach to walk away and take all of their evidence with them.

6

As discussed in the opening brief, Kline and Heimbach played central roles in this conspiracy. (Plaintiffs' Br. ("Pls.' Br."), ECF No. 457, at 3-5, 8-9.) They have withheld hordes of evidence that will be more difficult to place before the jury if they are simply defaulted from the case without a mechanism for Plaintiffs to introduce any of their evidence.[2] In that sense, a default would amount to a windfall for the rest of the Defendants and would seriously prejudice Plaintiffs. It is unsurprising that Spencer would prefer the jury hear nothing of Kline's and Heimbach's involvement in this conspiracy; Spencer admits to communicating with Kline during the planning stages of the Unite the Right event. (Ex. 1 at 5.) In fact, most of the Defendants, including Defendants Ray, Kessler, Schoep, Cantwell, Damigo, and National Socialist Movement, admit to communicating with one or both of Kline and Heimbach concerning the events in Charlottesville. (*See* Ex. 2 at 2; Ex. 3 at 2; Ex. 4 at 1; Ex. 5 at 2; Ex. 6 at 2; Ex. 7 at 2.) Additionally, Defendant Traditionalist Worker Party admits to communicating through Heimbach about the events, and Defendant Identity Evropa admits that Kline managed Identity Evropa's presence and communications in Charlottesville. (Ex. 8 at 2; Ex. 9 at 2.) If the jury is shielded from evidence of Kline's and Heimbach's participation, Plaintiffs will be hindered in their ability to illuminate the full scope of the conspiracy. Plaintiffs would essentially be forced to prove a conspiracy without being able to present evidence of what the ringleaders of the conspiracy did and said. Rule 37(b)(2)(A)(i) allows courts to deem certain facts established precisely so that defendants like Kline and Heimbach cannot whitewash a trial from evidence of their participation.

---

[2] In this litigation, Heimbach has withheld his cell phone and Twitter account credentials, among other things. (*See* Pls.' Br., at 9-13.) Outside this litigation, Heimbach continues to use his cell phone and Twitter account. According to a recent interview he gave to a Chatanooga, Tennessee television station about the dangers of texting while driving, Heimbach has become an advocate for the use of hands-free devices. (Ex. 10.) And of course, after the interview, he tweeted about it. (Ex. 11.)

IV. **Plaintiffs Only Seek Authentication of Specific Documents for which a Foundation Exists for the Belief that they were Authored by Kline or Heimbach**

With respect to the authentication of documents, Spencer mischaracterizes Plaintiffs' request, claiming Plaintiffs "go so far as to ask the Court to treat as authentic **anything they believe** could have been created by those Defendants—without identifying the referenced documents with specificity [and] . . . without setting forth some foundation as to why they believe that Heimbach or Kline created the documents . . . ." (Spencer Opp., at 6-7 (emphasis in original).) Plaintiffs have no intention of seeking the authentication of documents without identifying the documents with specificity, setting forth a foundation for Plaintiffs' belief that they were—not just "could have been" —authored by Kline or Heimbach, and producing any such documents to Defendants, if they have not already been produced.

For example, Plaintiffs request that documents produced by Discord under the handle "Eli Mosley#5269"—each of which were previously produced to all Defendants—be deemed authentic documents authored by Kline, as they purport to be on their face. There is ample evidence that those documents were in fact authored by Kline: "Eli Mosley" is Kline's alias, and the handle Eli Mosley#5269 posted videos of Kline on Discord and then identified Kline as "me" in the videos. (Ex. 12 at 3.) In essence, Plaintiffs seek an inference that if Kline and Heimbach testified in a deposition or at trial, they would admit to having authored such documents. If any Defendant, including Spencer, has evidence that a certain document Plaintiffs ask the Court to authenticate was not, in fact, authored by Kline and Heimbach, nothing prevents the Defendants from offering that contrary evidence, just as they would if Kline and Heimbach testified at trial to having authored a certain document. And, even if the Court deems a document authentic over a Defendant's objection, Plaintiffs would still need to move to admit the document into evidence consistent with the Federal Rules of Evidence, and Defendants would be free to object to a

document's admissibility on other grounds. If the Court imposes Plaintiffs' requested sanction regarding the authentication of certain documents, Plaintiffs and Defendants, including Spencer, would be in the largely the same position they would have been in if Kline and Heimbach had continued to participate in this case.

## V. Conclusion

For the abovementioned reasons, Plaintiffs respectfully submit that the motion should be granted and the requested sanctions be imposed.

| | |
|---|---|
| Dated: April 24, 2019 | Respectfully submitted, |
| | */s/* _____ |
| Roberta A. Kaplan (*pro hac vice*) | Robert T. Cahill (VSB 38562) |
| Julie E. Fink (*pro hac vice*) | COOLEY LLP |
| Gabrielle E. Tenzer (*pro hac vice*) | 11951 Freedom Drive, 14th Floor |
| Michael L. Bloch (*pro hac vice*) | Reston, VA 20190-5656 |
| Christopher B. Greene (*pro hac vice*) | Telephone: (703) 456-8000 |
| KAPLAN HECKER & FINK, LLP | Fax: (703) 456-8100 |
| 350 Fifth Avenue, Suite 7110 | rcahill@cooley.com |
| New York, NY 10118 | |
| Telephone: (212) 763-0883 | |
| rkaplan@kaplanhecker.com | |
| jfink@kaplanhecker.com | |
| gtenzer@kaplanhecker.com | |
| mbloch@kaplanhecker.com | |
| cgreene@kaplanhecker.com | |
| | |
| Yotam Barkai (*pro hac vice*) | Karen L. Dunn (*pro hac vice*) |
| BOIES SCHILLER FLEXNER LLP | William A. Isaacson (*pro hac vice*) |
| 55 Hudson Yards | Jessica Phillips (*pro hac vice*) |
| New York, NY 10001 | BOIES SCHILLER FLEXNER LLP |
| Telephone: (212) 446-2300 | 1401 New York Ave, NW |
| Fax: (212) 446-2350 | Washington, DC 20005 |
| ybarkai@bsfllp.com | Telephone: (202) 237-2727 |
| | Fax: (202) 237-6131 |
| | kdunn@bsfllp.com |
| | wisaacson@bsfllp.com |
| | jphillips@bsfllp.com |
| | |
| Alan Levine (*pro hac vice*) | David E. Mills (*pro hac vice*) |
| COOLEY LLP | COOLEY LLP |
| 1114 Avenue of the Americas, 46th Floor | 1299 Pennsylvania Avenue, NW |
| New York, NY 10036 | Suite 700 |
| Telephone: (212) 479-6260 | Washington, DC 20004 |
| Fax: (212) 479-6275 | Telephone: (202) 842-7800 |
| alevine@cooley.com | Fax: (202) 842-7899 |
| | dmills@cooley.com |
| | |
| | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

William E. Rebrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, Virginia 22015
edward@ReBrookLaw.com

*Counsel for Jeff Schoep, Nationalist Front, and National Socialist Movement*

Lisa M. Lorish
Federal Public Defenders Office
Western District of Virginia - Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
lisa_lorish@fd.org

*Fifth Amendment Counsel for Defendant James A. Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Matthew Parrott, Robert Ray, Traditionalist Worker Party, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

I further hereby certify that on April 24, 2019, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a : Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
2634 U.S. HWY 158 E
Yanceyville, NC 27379

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

I further hereby certify that on April 24, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

*/s/*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*