IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION


ELIZABETH SINES, et al.,          )
                                  )
            Plaintiffs,           )   Civil Case No. 3:17-CV-00072
                                  )
vs.                               )
                                  )
JASON KESSLER, et al.,            )
                                  )
            Defendants.           )

_____

TRANSCRIPT OF TELEPHONIC HEARING
HONORABLE MAGISTRATE JUDGE JOEL C. HOPPE PRESIDING
FRIDAY, APRIL 26, 2019, 2:04 P.M.
_____


Transcriber:              Judy K. Webb, RPR
                          210 Franklin Road, S.W., Room 540
                          Roanoke, Virginia 24011
                          (540)857-5100 Ext. 5333


            Proceedings recorded by FTR and transcribed using
Computer-Aided Transcription

1              **A P P E A R A N C E S**

2         On behalf of Plaintiffs Elizabeth Sines, Seth
   Wispelwey, Marissa Blair, Tyler Magill, April Muniz, Hannah
3  Pearce, Marcus Martin, John Doe, Natalie Romero, and Chelsea
   Alvarado:
4              **Jessica E. Phillips, Esquire**
              Boies Schiller Flexner, LLP
5              1401 New York Avenue, NW
              Washington, DC 20005
6
              **Alan Levine, Esquire**
7              Cooley LLP
              1114 Avenue of the Americas, 46th Floor
8              New York, NY 10036

9              **Michael Low Bloch, Esquire**
              **Roberta Ann Kaplan, Esquire**
10             Kaplan Hecker & Fink LLP
              350 Fifth Avenue, Suite 7110
11             New York, NY 10118

12
   On behalf of Jeff Schoep, National Socialist Movement,
13 Nationalist Front:

14             **William Edward ReBrook, IV, Esquire**
              The Rebrook Law Office
15             6013 Clerkenwell Court
              Burke, VA 22015
16

17 Also Present:

18             **Jeff Schoep**

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al. - 4/26/19

1          (Court convened at 2:04 p.m.)

2          THE COURT:  Hi.  This is Joel Hoppe.  Who is on the

3     line for the plaintiffs?

4          MR. BLOCH:  Judge, this is Michael Bloch from Kaplan

5     Hecker & Fink for the plaintiffs.

6          MR. LEVINE:  And Alan Levine from Cooley for the

7     plaintiffs, Your Honor.

8          MS. PHILLIPS:  Jessica Phillips from Boies Schiller

9     Flexner is also on for the plaintiffs, Your Honor.

10          MS. KAPLAN:  And I'm here, Roberta Kaplan, Your

11     Honor, also from Kaplan Hecker & Fink.

12          THE COURT:  All right.  Good afternoon.

13          And then who is on the line for Mr. Schoep?

14          MR. ReBROOK:  This is Edward ReBrook, Your Honor.

15          THE COURT:  All right.  Good afternoon.

16          And is anyone else on the line?

17          MR. SCHOEP:  This is Jeff Schoep.  I'm here as well.

18          THE COURT:  All right.  Well, counsel, thank you for

19     calling in.  This hearing is on the plaintiffs' motion for

20     sanctions against Mr. Schoep.  And the hearing is being

21     recorded by the court's FTR system, so there is a record of

22     this hearing.

23          Counsel, I have reviewed the plaintiffs' motion, and

24     then there were some e-mails that were forwarded to the Court

25     in the last couple of days that I have reviewed as well.

Sines, et al. v. Kessler, et al. - 4/26/19

1          Mr. Bloch, or whoever is going to speak on behalf of

2     the plaintiffs, what remains at issue in this motion?

3          MR. BLOCH:  Judge, in terms of the actual devices and

4     accounts still outstanding?

5          THE COURT:  Yes.

6          MR. BLOCH:  So the -- in terms of accounts

7     outstanding and devices, Mr. Schoep still withholds a laptop,

8     credentials to all e-mail addresses that he used to

9     communicate about the events, as well as a number of social

10    media accounts.

11         So to date we, in short, we don't have any documents

12    from any electronic device, we don't have any documents from

13    any e-mail accounts.  The only electronic device that has

14    been, I guess, produced in some sense was the cell phone that

15    was produced to the vendor; although, that was reported to

16    have fallen in the toilet and there are no documents

17    recoverable.

18         So the only -- the only, I guess, social media

19    account that has been produced at all is credentials to a

20    single VK account, which has some documents.  But,

21    essentially, there are -- the rest of what Mr. Schoep

22    identified as devices and accounts that he used to communicate

23    about the events are all still outstanding.

24         THE COURT:  All right.  And there's the Twitter

25    account but with, perhaps, a questionable e-mail address; is

1  that right?

2        MR. BLOCH:  That's right.  There is a Twitter account

3  which was disabled.  It's our understanding that the

4  defendants are able to recover documents from disabled Twitter

5  accounts.  I don't believe that process has been undertaken by

6  Mr. Schoep.  But there was a -- there was a Twitter account

7  which we do know the e-mail address associated with.

8        THE COURT:  And is that something that the

9  third-party --

10        MR. BLOCH:  [Inaudible.]

11        THE COURT:  I'm sorry.  Is that something that the

12  third-party vendor is able to access and recover documents

13  from?

14        MR. BLOCH:  It doesn't appear so, Judge.  We tried

15  to -- we asked the vendor to try to do that, and we thought we

16  had gotten a method from Twitter that we proposed to the

17  vendor.  It's my understanding that the vendor now needs some

18  sort of specific permission or effort from the defendants to

19  actually get into disabled accounts.

20        THE COURT:  All right.  And as to the specific e-mail

21  addresses that you're seeking credentials to, is that the Jeff

22  Schoep Gmail account and the commander@newsaxon.org?

23        MR. BLOCH:  I believe that's right, Judge.  Let me

24  just -- let me just double-check the second one.  Right, it's

25  commander@newsaxon.org, as well as jeffschoep@gmail.com.  The

Sines, et al. v. Kessler, et al. - 4/26/19

1   commander account, Judge, I would just note was identified by

2   Mr. Schoep in his interrogatory responses as containing

3   responsive documents.

4           THE COURT:  All right.  And then as to the social

5   media accounts, which ones are you seeking there?

6           MR. BLOCH:  So we haven't gotten any production from

7   any social media account other than the VK account.  What

8   remains outstanding is the web -- is all websites, nsm88.org,

9   nsmradio.org, nsmmedia.org, nsm88records.com, as well as a

10  Bitchute account NSM Media, Twitter account @nsm88, @nsmmedia,

11  as well as a YouTube account identified in Mr. Schoep's

12  interrogatory responses.

13          THE COURT:  All right.

14          MR. BLOCH:  I would note, Judge, we have undertaken

15  to try to recover some -- what we can find on websites that is

16  public; although, particularly the main NSM88 account is --

17  has a massive amount of content.  It's difficult to navigate.

18  It's difficult for us to recover -- to sort of figure out and

19  recover all of what appears to be posted there.  Although, we

20  have tried to recover what we can find as responsive.

21          THE COURT:  But what you're looking for, for those

22  things, are credentials, or are you also looking for

23  Mr. Schoep to produce particular documents?

24          MR. BLOCH:  Well, I think what we believe he ought to

25  do is to go through those websites himself and flag what he

Sines, et al. v. Kessler, et al. - 4/26/19

1   believes to be responsive, which he could do either I believe

2   himself or I think through some process with the vendor, which

3   would require credentials.

4           THE COURT:  Okay.  All right.

5           All right.  Mr. ReBrook, as to those, those items,

6   I've seen your e-mail response to Mr. Bloch, but what else

7   would you -- what else would you say about them?

8           MR. ReBROOK:  I think I've been pretty thorough in

9   the e-mail response, Your Honor.  It's just that a lot of the

10  items he specifically just mentioned, like the Bitchute

11  account, we don't know what that is.

12          THE COURT:  Mr. ReBrook, let me stop you there,

13  because your client, under oath, identified it in

14  interrogatories.  How can you say that you don't even know

15  what they are?

16          MR. ReBROOK:  I'm just telling you what they've told

17  me, Your Honor.

18          THE COURT:  In April of 2018, your client, under

19  oath, identified the Bitchute account.  What is the

20  explanation -- what is the explanation for a year later in

21  saying he doesn't even know what that is?

22          MR. SCHOEP:  If I can answer that, Your Honor, I'll

23  be happy to.  I think the Bitchute has something to do with

24  videos.  I don't know --

25          THE COURT:  Make sure that you identify --

Sines, et al. v. Kessler, et al. - 4/26/19

1          MR. SCHOEP:  -- [inaudible] there or how that works,

2    but I think it has something to do with videos.  But it's not

3    something that I've ever personally had access to or -- I

4    don't know -- I don't even know if you can send messages to

5    there.  But I believe it has something to do with videos, like

6    a YouTube type of channel or something.

7          THE COURT:  All right.  And that's Mr. -- Mr. Schoep,

8    is that you?

9          MR. SCHOEP:  Yes.

10          THE COURT:  Now, do you --

11          MR. BLOCH:  Judge, if I may, that was one of the

12    accounts specifically identified in the interrogatory

13    responses.  This is Mike Bloch.

14          THE COURT:  All right.  I know it was.

15          So, Mr. ReBrook, where are the credentials for that

16    account and when are you going to provide them to the

17    plaintiffs?

18          MR. ReBROOK:  Your Honor, I don't have those

19    credentials, neither does Mr. Schoep.  I acknowledge that

20    there is this thing called Bitchute that may exist, but my

21    client has never had custodianship of this account.

22          THE COURT:  All right.  Well, in his response to

23    Interrogatory Number 1, it says, "Identify all means of

24    communication used by you to communicate about the events,"

25    and one of the things he identifies is Bitchute.

Sines, et al. v. Kessler, et al. - 4/26/19

1          I mean, if he was using it to communicate, how can

2     you -- and he says that under oath, how can you tell me now he

3     doesn't have the ability to access that?

4          MR. SCHOEP:  Your Honor, this is Jeff Schoep again.

5     I don't recall saying that I ever had access to Bitchute,

6     because it's not something that I've ever used to communicate

7     with anybody.  So, I mean, I do understand that it has

8     something to do with videos or something like that, and

9     someone, you know, within NSM may have uploaded videos to that

10    or something of that nature, but I personally do not have

11    access to that.  I've never sent anybody a message through

12    Bitchute.  I'm not even sure that you can send messages

13    through Bitchute.  So I'm not, you know, aware of that.

14          THE COURT:  All right.  So, you know, Mr. ReBrook, I

15    do -- Mr. Schoep, I appreciate your participation in this,

16    but, you know, I think it's appropriate for Mr. ReBrook to be

17    the one who is responding to my requests.

18          And, Mr. ReBrook, you may want to talk to Mr. Schoep

19    about that.

20          But, you know, my concern here is that Mr. Schoep,

21    under oath, has identified Bitchute as something -- a Bitchute

22    account that he used to communicate.  And, Mr. ReBrook, your

23    latest -- you know, a year after that, your statement that he

24    doesn't have access or he doesn't even know what Bitchute is,

25    is -- you know, just contradicts with his sworn statement.

Sines, et al. v. Kessler, et al. - 4/26/19

1           MR. ReBROOK:  [Inaudible], Your Honor.

2           THE COURT:  Could anyone who is not actively talking,

3    can you put your phone on mute, perhaps?  I'm getting some

4    really strange sounds.

5           MS. KAPLAN:  It sounds like a baby, Your Honor.

6           THE COURT:  It does.  I can tell you there are no

7    babies -- there are no babies --

8           MR. ReBROOK:  Your Honor, it is a baby.  I apologize.

9           THE COURT:  Okay.  All right.

10          MR. ReBROOK:  I'm on baby duty.

11          THE COURT:  All right.  All right.  In any event,

12   that's something that, Mr. ReBrook and Mr. Schoep, that I'm

13   going to order, you know, within seven days that you all

14   provide, provide the credentials to the Bitchute account.  And

15   if for some reason, you know, you're contending that you don't

16   have that, then I want you to make that statement to the

17   Court, and it needs to be a signed statement.

18          MR. ReBROOK:  Understood, Your Honor.

19          THE COURT:  Now, there are, of course, other items to

20   address here; one is the laptop.  And, Mr. ReBrook, what's

21   your response?

22          MR. ReBROOK:  The laptop that they're asking for

23   contains a great deal of privileged communication between

24   myself and Mr. Schoep, as well as his previous attorneys.

25   We're arguing that that's protected by privilege.  I also was

Sines, et al. v. Kessler, et al. - 4/26/19

1   just trying to get some sort of -- some sort of bracket on the

2   limit of the discovery that plaintiffs are asking for.  I was

3   not under the belief that suing someone gave a person carte

4   blanche right to anything and everything they have ever

5   produced or owned, that their Fourth Amendment protections are

6   still in place.  But [inaudible] --

7           THE COURT:  I'm not sure -- I'm not sure how the --

8   I'm not sure how the Fourth Amendment factors in in here, but

9   certainly not -- can we not -- the plaintiffs aren't asking

10  for everything that he has ever produced.  And how this

11  whole -- the stipulation and to use a third-party vendor came

12  about is that, you know, the plaintiffs made requests for

13  relevant information and it was, you know, nine months later

14  or ten months later and nothing had been produced, and

15  defendants were arguing that it was overly burdensome and too

16  expensive to make the production and that they couldn't do it

17  themselves.

18          So there was a new method that we've employed to,

19  really, to assist both parties in this production, and how it

20  is designed to come about is that the defendants need to

21  identify devices that contain relevant information, the

22  third-party vendor will extract that information, and then the

23  defendants have to review the information.  Before it goes to

24  the plaintiff, the defendant reviews the information for

25  responsiveness and privilege and turns over that information,

1  so if there are privileged documents on there, that is no

2  objection to withholding the entire device.

3          MR. ReBROOK:  Okay.  I didn't understand that, Your

4  Honor.  Also, Mr. Bloch had told me that due to this being a

5  conspiracy suit, that items before the announcement of the

6  rally and after it already ended were relevant.  Well, before

7  and after equals all of recorded time.  So is there no sort

8  of -- or am I -- after the vendor goes through this stuff, am

9  I supposed to determine what, what is relevant on my own, or

10  is there actually a time frame of communications which this

11  lawsuit applies to?

12          THE COURT:  I think reading the complaint and the

13  defenses raised, that's the -- it sets the parameters for

14  relevance, so I think that's where you would have to start.

15  But, you know, that's a process that you all are going to have

16  to go through after the third-party vendor extracts the

17  information and you review it.  And, you know, there -- I

18  think there's -- it's a discussion that you need to have with

19  plaintiffs' counsel about search terms and things like that,

20  and, you know, to try and produce what is relevant.

21          Of course, it's not just, you know, the few days of

22  the events in Charlottesville.  Relevant information is going

23  to come from before and after, and there are going to be

24  discussions that occurred before and after that are relevant

25  to those days.  There's going to be information not just

Sines, et al. v. Kessler, et al. - 4/26/19

1  during those few days in Charlottesville that are relevant.

2          MR. ReBROOK:  Very well, Your Honor.

3          There were some other areas we had concern with, but

4  I will address them when you ask me to.

5          THE COURT:  Okay.  And, Mr. ReBrook, on the laptop,

6  you know, I'm sensitive to Mr. Schoep being -- needing to have

7  the laptop, but I think that's something that you can work out

8  with the third-party vendor to, you know, get it to the vendor

9  in, you know, in a very -- it's going to need to happen soon.

10  But hopefully the vendor won't need to keep it for very long

11  before -- so that it can create an image and get the laptop

12  back to Mr. Schoep.

13          Do you all -- Mr. Bloch, do you know -- do you know

14  how long that might -- that might take?

15          MR. BLOCH:  Well, my understanding is that even if

16  the defendants are -- if they -- if they go through this

17  process by sending their laptop, that they get it back within

18  a day or two.  It's also been my understanding that the vendor

19  has accommodated other defendants by sending someone out to

20  them and doing some sort of home collection.  So I think the

21  inconvenience is minimal, to say the least.

22          I would also note that it was in February, when

23  Mr. Schoep was represented by Mr. Kolenich, that Mr. Kolenich

24  represented that all of his clients were sort of squared away

25  with Faraday bags and ready to send their devices in.  So it

Sines, et al. v. Kessler, et al. - 4/26/19

1   just feels to me that -- to hear that he can't produce because

2   it's inconvenient two months after the fact these things --

3   two months after these things have been ordered produced is

4   sort of specious at this point.  But in answer to your

5   question, the inconvenience I think is minimal.

6          MR. SCHOEP:  Your Honor, if I might.  This is Jeff

7   Schoep.  I'm sorry.

8          THE COURT:  Mr. Schoep --

9          MR. SCHOEP:  [Inaudible].

10          THE COURT:  -- you may -- I would encourage you to

11   talk to Mr. ReBrook and have him speak for you.

12          MR. SCHOEP:  Okay.

13          THE COURT:  But, you know, any inconvenience can --

14   is going to be minimal, and it can be accommodated, and I

15   think that is something that has been discussed on previous

16   calls, so it certainly isn't a reason to delay providing the

17   laptop, and it hasn't been for the last, you know, number of

18   months.

19          All right.  Mr. ReBrook, as to the credentials for

20   the e-mail addresses, and this is the jeffschoep@gmail and the

21   commander@new -- newsaxon, is Mr. Schoep prepared to provide

22   the disc?

23          MR. ReBROOK:  I believe he can, Your Honor.  Well,

24   the New Saxon, I'm not sure about that one that -- the Gmail

25   one I believe he can.  I'm going through the list right now.

Sines, et al. v. Kessler, et al. - 4/26/19

 1          THE COURT:  Well, the New Saxon one was identified in

 2   Interrogatory 4 as one that he used, so I expect that he will

 3   provide that.

 4          MR. ReBROOK:  Okay.  We will address that, Your

 5   Honor.

 6          THE COURT:  All right.

 7          MR. ReBROOK:  If I may, Your Honor, we do have an

 8   objection to nsm88records.com, turning that over, as, firstly,

 9   it's owned by an entity which is not a named defendant in this

10   case, but also, we're just talking about purchase order

11   information from people.  And we have -- we have concerns that

12   a lot of this lawsuit in general, but particularly this

13   request, that its actual purpose is to elicit information of

14   the overall membership of the NSM, anyone that may have

15   donated to the NSM, anyone that's ever bought a T-shirt off of

16   this website, or whatever they sell, and that the purpose is

17   to dox these people.

18          I don't know -- no communications were done through

19   NSM88records.com.  It's merely a purchase T-shirts and

20   stickers and whatever else they sell kind of website, so I

21   don't see how that could possibly be relevant to this case.

22          MR. BLOCH:  Judge, if I may, the -- as -- this is

23   Mr. Bloch.  As you're aware, there's a protective order in

24   place.  There's no evidence that any lawyer from this side has

25   violated it, intends to violate it.  That's absolutely not our

Sines, et al. v. Kessler, et al. - 4/26/19

1   purpose.

2          The argument that -- which I think sort of runs

3   through a number of these accounts and devices, that

4   Mr. Schoep doesn't have to produce because he doesn't own it,

5   I think is totally belied by the case law which says that if

6   he has actual possession or a legal right to access these

7   documents, that he's got to produce -- he's got to produce it.

8          Obviously, what we are asking for is responsive

9   content to our discovery requests.  And there's absolutely no

10  evidence that anybody intends to violate the protective order

11  in this case.

12         THE COURT:  And, Mr. Bloch, just practically speaking

13  for -- and for this particular, I guess, website, the NSM88

14  Records, are you -- are you asking for the third-party vendor

15  to be involved in that, or is this something that you're

16  asking Mr. Schoep and Mr. ReBrook would identify particular

17  documents or produce particular documents from that website?

18         MR. BLOCH:  Well, what we've been doing is, you know,

19  they provide credentials and then the vendor images everything

20  that exists, sends everything back to the defendants for their

21  review, you know, for, I guess, privilege.  Although, it's

22  hard to imagine that would apply to the website.  I don't see

23  any reason why that process shouldn't apply to the websites as

24  well.

25         THE COURT:  And I'm just -- you know, it's different

Sines, et al. v. Kessler, et al. - 4/26/19

1   than, you know, than a social media account where there's a,

2   you know, a login.  But for the website, you know, what -- I

3   guess what credentials are you expecting for that?  Is there a

4   login --

5           MR. BLOCH:  Yeah, Judge, the -- so I think that's a

6   fair question.  I know, for example, the Bitchute account

7   appears to have a login.  It appeared to us that we were not

8   able to access the entirety of the website ourself.

9           In terms of NSM88, the -- I think the bigger issue

10  for us is it's just a massive amount of content and it -- you

11  know, there are -- it's not clear to us whether there are

12  parts of the website that we don't have access to.

13          The -- which is why I think the sort of cleanest

14  process would be for the vendor to image everything that is

15  either public, or if it's not private -- I mean, if it's

16  private, to get credentials from Mr. Schoep.  But as I

17  mentioned, we are also ourselves trying to get what we can

18  find as responsive content from that particular website.

19          THE COURT:  All right.  And so for the websites,

20  it's -- essentially, what you're asking for is if there is a

21  login for one of the websites, for Mr. Schoep to provide

22  credentials, you know, if he has them for the website.  But

23  the vendor can access the website on its own; it would just

24  need the credentials to possibly access any, you know, any

25  nonpublic information before it could search the --

Sines, et al. v. Kessler, et al. - 4/26/19

1          MR. BLOCH:  Yes, I think that's absolutely right,

2    Judge.

3          THE COURT:  But if there are no credentials, then the

4    vendor or anyone, you all could go ahead and search the --

5    search the website on your own if it's all public?

6          MR. BLOCH:  Yes, I agree with that, Judge.  Right.

7          THE COURT:  Okay.

8          MR. BLOCH:  Agreed.  Like I said, I think that's -- I

9    think that may be true for NSM88 but not for some of the other

10   ones.

11         THE COURT:  All right.

12         MR. ReBROOK:  NSM88 Records, again, it's a

13   merchandise store.  You can look up everything that's on it

14   directly on the website.  But what people are buying off of it

15   is protected by the Preservation of Personal Privacy Act.  Nor

16   do I imagine that a person buying a T-shirt, sticker,

17   necklace, whatever, has any relevance to a conspiracy in

18   Charlottesville.

19         MR. BLOCH:  Judge, we're not seeking to know what

20   people are purchasing off the website.  We want content that's

21   posted that's responsive to the events in this case.

22         MR. ReBROOK:  That's all on -- available to your

23   access through your ISA [phonetic].

24         THE COURT:  Well, and that really is something that

25   can be addressed, you know, in a later step through the

Sines, et al. v. Kessler, et al. - 4/26/19

1   third-party vendor.  And if there's anything that is public,

2   you know, the plaintiffs can access that and search it on

3   their own.  If there's anything that requires a login and that

4   there's private information, if it's not responsive and not

5   relevant, then that does not need to be turned over in

6   discovery.

7         You know, there are separate issues about whether the

8   vendor is going to -- is going to, you know, secure the

9   information for view by the defendants and their counsel.

10  That's separate from what's actually going to necessarily be

11  produced by the defendants.  And, you know, I think we all

12  anticipate that it's going to be a larger amount of

13  information that the vendor would secure than what the

14  defendants actually end up producing as, you know, relevant,

15  relevant information.

16        You know, Mr. Bloch, I don't think that getting,

17  especially people are ordering things off the Internet, that,

18  you know, getting information about their orders, and I think

19  there is a concern about, you know, about people's credit card

20  numbers and things like that.  I mean, that has no role in

21  this litigation for sure.

22        MR. BLOCH:  Judge, we agree with that.

23        THE COURT:  And I didn't think that that was

24  something that you all were interested in.

25        MR. BLOCH:  Right.

Sines, et al. v. Kessler, et al. - 4/26/19

1    THE COURT:  So, Mr. ReBrook, Mr. ReBrook, do you

2    understand that the scope of what the plaintiffs are asking

3    for, for these websites, that it's really if there are

4    credentials that Mr. Schoep has for logging in to, you know,

5    nonpublic parts of these websites, that that is what is being

6    sought?

7    MR. ReBROOK:  Yes, Your Honor.

8    THE COURT:  All right.  Well, I'm going to order that

9    that also -- that information be provided to the plaintiffs

10   within seven days.

11   And then I think the final item is the disabled

12   Twitter account that the plaintiffs -- the vendor just needs

13   permission from Mr. Schoep to be able to access it.

14   Mr. ReBrook, what is the -- your position on that?

15   MR. ReBROOK:  If we have that, we'll give them

16   permission, Your Honor.

17   THE COURT:  All right.  And I'll put that in the

18   order.

19   MR. ReBROOK:  I've been told that -- I'm sorry, I

20   didn't mean to interrupt, Your Honor.

21   THE COURT:  Go ahead.

22   MR. ReBROOK:  What I have been most recently told is

23   that Mr. Schoep was never the custodian of the Twitter

24   account.  But as far as our permission for you to have it, I

25   mean, go at it.  Being that he wasn't the custodian, I don't

Sines, et al. v. Kessler, et al. - 4/26/19

1  know what we could do for you.

2        THE COURT:  But, again -- and I'm going to order that

3  you provide it, because he's -- you know, in his

4  interrogatories, he's identified the Twitter account, the

5  NSM88 account that's suspended, as an account that he used to

6  communicate concerning the events.  That tells me that he has

7  control over it.  So that is a sworn statement and I'm not

8  letting you walk that back.

9        So that is going to be part of the order that -- that

10 Mr. Schoep needs to provide the vendor permission to access

11 that account.  And that's also going to be -- he's going to

12 have to do that in seven days too.  I don't know exactly what

13 sort of permission is required, but that's something that you

14 can work with the vendor about and find out what it needs and

15 you can provide it to them.

16       MR. ReBROOK:  Understood, Your Honor.

17       THE COURT:  All right.  Mr. Bloch, are there any

18 other particular items that the plaintiffs are seeking that we

19 haven't addressed?

20       MR. BLOCH:  I don't believe so, Judge.  Although, I

21 wasn't sure what the final resolution was on the issue of the

22 laptop.

23       THE COURT:  I think the laptop will need to be

24 provided in seven days as well.  And that's something that I

25 think Mr. ReBrook, of course, can work with the vendor on to

Sines, et al. v. Kessler, et al. - 4/26/19

1  figure out the least disruptive way to get that to the vendor

2  and then get it back to Mr. Schoep.

3          MR. BLOCH:  Judge, yeah, so in terms of items

4  outstanding, I think that covers it.  I think it only -- I

5  think that covers it.

6          THE COURT:  Okay.  Mr. Bloch, are you seeking

7  anything additional through this, through this motion?  I know

8  there have been -- there have been requests for attorney's

9  fees.

10          MR. BLOCH:  Judge, I think -- I think we would put

11  that request on hold at this point and wait and see what we

12  get from the defendants in the next seven days.

13          THE COURT:  I think that's appropriate, so I will

14  take the request for attorney's fees under advisement.  And,

15  you know, I'll just say it's -- you know, I don't award

16  attorney's fees often in discovery disputes, but I do view

17  them as a way to compel compliance with the Court's order, and

18  it's -- and there certainly is a need in this case to make

19  sure that folks are complying with their discovery obligations

20  and the Court's order, so there are sanctions of attorney's

21  fees, and other means are certainly on the table.

22          MR. BLOCH:  I appreciate that, Judge.

23          THE COURT:  All right.  Mr. ReBrook, is there

24  anything else that we need to address today?

25          MR. ReBROOK:  I do not think so, Your Honor.

Sines, et al. v. Kessler, et al. - 4/26/19

1          THE COURT:  All right.  All right.  Well, counsel,

2   thank you for calling in, and we'll get an order out if not

3   today then certainly Monday on -- on this, okay?

4          MR. BLOCH:  Thank you, Your Honor.

5          THE COURT:  All right.  Thank you.  Have a good

6   weekend.

7          MR. ReBROOK:  Thank you, Judge.

8          UNIDENTIFIED PERSON:  Thank you, Your Honor.

9          UNIDENTIFIED PERSON:  You too.

10         THE COURT:  All right.  Bye.

11      (Court recessed at 2:40 p.m.)

12

13                      CERTIFICATE

14  I, Judy K. Webb, certify that the foregoing is a

15  correct transcript from the record of proceedings in

16  the above-entitled matter.

17

18  /s/  Judy K. Webb               Date: 5/2/2019

19

20

21

22

23

24

25