IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION


ELIZABETH SINES, et al.,          )
                                  )
              Plaintiffs,         )   Civil Case No. 3:17-CV-00072
                                  )
vs.                               )
                                  )
JASON KESSLER, et al.,            )
                                  )
              Defendants.         )

_____

                 TRANSCRIPT OF MOTION HEARING
      HONORABLE MAGISTRATE JUDGE JOEL C. HOPPE PRESIDING
             MONDAY, JUNE 3, 2019, 11:01 A.M.
_____


Transcriber:              Judy K. Webb, RPR
                          210 Franklin Road, S.W., Room 540
                          Roanoke, Virginia 24011
                          (540)857-5100 Ext. 5333


              Proceedings recorded by FTR and transcribed using
Computer-Aided Transcription

Sines, et al. v. Kessler, et al. - 6/3/19

1                        **A P P E A R A N C E S**

2            On behalf of Plaintiffs Elizabeth Sines, Seth
   Wispelwey, Marissa Blair, Tyler Magill, April Muniz, Hannah
3  Pearce, Marcus Martin, John Doe, Natalie Romero, and Chelsea
   Alvarado:

4
                 **Michael Low Bloch, Esquire**
5                **Gabrielle E. Tenzer, Esquire**
                 Kaplan Hecker & Fink, LLP
6                350 Fifth Avenue, Suite 7110
                 New York, NY 10118

7
                 **Erin Boyd Ashwell, Esquire**
8                Woods Rogers, PLC
                 10 South Jefferson Street, Suite 1400
9                Roanoke, VA 24011

10
   On behalf of Defendants Jason Kessler; Christopher Cantwell;
11 Vanguard America; Robert Azzmador Ray; Nathan Damigo; Elliot
   Kline, also known as Eli Mosely; Identity Evropa; Matthew
12 Heimbach; Matthew Parrott, also known as David Matthew
   Parrott; Traditionalist Worker Party:

13
                 **James Edward Kolenich, Esquire**
14               Kolenich Law Office
                 9435 Waterstone Blvd., Suite 140
15               Cincinnati, OH 45249

16

17 On behalf of Richard Spencer:

18               **John A. DiNucci, Esquire**
                 Law Office of John A. DiNucci
19               8180 Greensboro Drive, Suite 1150
                 McLean, VA 22102
20

21

22

23

24

25

Sines, et al. v. Kessler, et al. - 6/3/19

```
 1        (Court convened at 11:01 a.m.)

 2            THE COURT:  Good morning.

 3            MR. BLOCH:  Good morning, Your Honor.

 4            MR. KOLENICH:  Good morning.

 5            MS. TENZER:  Good morning, Your Honor.

 6            MR. DiNUCCI:  Good morning.

 7            THE COURT:  The clerk will please call the case.

 8            THE CLERK:  Yes, Your Honor.  This is Civil Action

 9   Number 3:17-CV-72, Elizabeth Sines and others verses Jason

10   Kessler and others.

11            THE COURT:  All right.  Why don't we have everyone

12   identify himself or herself here.

13            MR. BLOCH:  Good morning.  Good morning, Judge.

14   Michael Bloch from Kaplan Hecker & Fink on behalf of the

15   plaintiffs.

16            MS. TENZER:  Good morning, Your Honor.  Gabrielle

17   Tenzer on behalf of the plaintiffs, Kaplan Hecker & Fink.

18            MR. KOLENICH:  Good morning, Your Honor.  Jim

19   Kolenich on behalf of Jason Kessler -- do you want all of

20   them?  There are --

21            THE COURT:  Quite a few.  No, that's fine.  Thank

22   you, Mr. Kolenich.

23            MR. DiNUCCI:  Excuse me, Your Honor.  John A. DiNucci

24   for defendant Richard Spencer, Your Honor.

25            THE COURT:  All right.  Let's see.  Do I have anybody
```

Sines, et al. v. Kessler, et al. - 6/3/19

 1  else?

 2          MR. DiNUCCI:  I do not, Your Honor.

 3          THE COURT:  Okay.

 4          MR. DiNUCCI:  Thank God.

 5          THE COURT:  Right.  But anyone else in the gallery

 6  for anyone?

 7          Ms. Ashwell.

 8          MS. ASHWELL:  I'm here as local counsel with the

 9  plaintiffs, from Woods Rogers.

10          This is Martha Fitzgerald, also from Kaplan Hecker.

11          THE COURT:  All right.  Well, counsel, thanks for

12  appearing here today.  There are a few things that we need to

13  take up.  The plaintiffs have two motions for sanctions, a

14  motion for sanctions against defendants Kline and Heimbach,

15  and then there's another motion for sanctions for defendant

16  Vanguard.

17          And then, Mr. Kolenich, your motion to withdraw as

18  attorney for Vanguard.

19          MR. KOLENICH:  Yes, sir.

20          THE COURT:  I think it makes sense to take up your

21  motion first, Mr. Kolenich, and then we can get into the other

22  motions.  So --

23          MR. KOLENICH:  Thank you, Your Honor.  We're moving

24  to withdraw because Vanguard is no longer cooperating in their

25  own defense, and pursuant to Virginia rules at least, that

Sines, et al. v. Kessler, et al. - 6/3/19

1  justifies withdrawal.  Specifically, though, the Court issued

2  a show cause -- discovery orders and then the show cause

3  order.  They have not produced any discovery.  They have told

4  us they don't intend to produce any discovery; instead,

5  they're shutting down their organization and don't intend to

6  participate in the litigation.

7       That being the case, there's nothing I can do for

8  them.  We couldn't respond to the show cause order in my

9  recent pleading because I had no information whatsoever to

10 give a response to it, and I have no information now, just

11 like then.  So whether we're withdrawing or not, there's

12 nothing at all I can do for them.

13      THE COURT:  Right.  So it's just, from your

14 viewpoint, it's just a complete breakdown in communications

15 with your client.

16      MR. KOLENICH:  There is.  Although, they're very

17 personable and we do talk.

18      THE COURT:  All right.  Mr. Bloch, do you have any

19 response or opposition?

20      MR. BLOCH:  Judge, just that we don't have any

21 interest in holding Mr. Kolenich hostage to that client.  We

22 just -- our concern is in having an entity, you know, pro se.

23      THE COURT:  Right.

24      MR. BLOCH:  And so I don't know if it makes sense to

25 line up different counsel or -- I mean, that is our concern,

Sines, et al. v. Kessler, et al. - 6/3/19

1  just having a defendant who is -- an entity that is

2  unrepresented.

3        THE COURT:  Right.  And there is -- is it Dillon

4  Hopper or Irrizay who is the main person who is identified

5  with Vanguard?

6        MR. BLOCH:  That's who has been identified to us,

7  right.

8        THE COURT:  Okay.  All right.  Well, I mean I think,

9  Mr. Kolenich, your motion is well taken.  You are in an

10 impossible position representing a client who is not

11 communicating with you, so I will grant your motion.  But I'll

12 order that Vanguard hire another attorney and do so within 14

13 days.  I don't know what will happen with that, quite frankly.

14 But we do have -- we do have someone identified as Mr. Hopper

15 as representing Vanguard, although not as an attorney, and

16 we'll need to get his contact information from you.

17       MR. KOLENICH:  I'll provide that to Mr. Bloch.

18       THE COURT:  All right.  And the Court; we need that

19 as well.

20       MR. KOLENICH:  Yes, sir.

21       THE COURT:  But as we address the motions for

22 sanctions, we may need to get into how to get ahold of

23 Mr. Hopper as well.

24       So, all right, why don't we move on to those motions

25 for sanctions, Mr. Bloch.

Sines, et al. v. Kessler, et al. - 6/3/19

1          MR. BLOCH:  Thank you, Judge.

2          Judge, I don't think -- I'm speaking with respect to

3   each of the -- I thought I would speak with respect to all

4   three.  They largely sit in the same boat, with some

5   differences that I can get into.

6          THE COURT:  Uh-huh.

7          MR. BLOCH:  But I don't think there's any question

8   that serious case-related sanctions are warranted against

9   defendants Kline, Heimbach, and Vanguard America.  I think the

10  only thing that has been contested by a single defendant is

11  what sanctions those should be.

12          I wanted to highlight three areas.  One is why

13  sanctions are appropriate; two is why the particular sanctions

14  that we are seeking we believe are necessary to remedy the

15  prejudice that plaintiffs have suffered from their

16  disappearance and withholding of all of their documents.

17          THE COURT:  Uh-huh.

18          MR. BLOCH:  And then finally address Mr. Spencer's

19  concerns and speak to why the sanctions we're seeking do not

20  prejudice the other defendants, including Mr. Spencer.

21          THE COURT:  Okay.

22          MR. BLOCH:  I think in terms of why serious

23  case-related sanctions are appropriate, I don't think there's

24  any dispute that we have three defendants who have shown what

25  I think is fairly described as utter contempt for this

1   judicial process.  Mr. Kline, Mr. Heimbach have refused to

2   turn over a single document in this case.  Mr. Kline, in fact,

3   hasn't responded to a single discovery request, including

4   interrogatories response, requests for production.  They have

5   collectively skipped more than seven court conferences.  They

6   have ignored more than 20 communications for the Court, more

7   from counsel.  They have violated multiple court orders, Your

8   Honor's November 13th imaging order, as well as the order on

9   March 1st that everybody turn everything over by March 8th.

10          THE COURT:  Uh-huh.

11          MR. BLOCH:  And I think significantly -- and this

12   goes to, I think, what is clear bad faith -- defendants Kline

13   and Heimbach at least have continued to comment on this

14   litigation, over social media, while at the same time ignoring

15   their responsibilities to turn over documents.  For

16   Mr. Heimbach, he is still constantly commenting on social

17   media.

18          It has been now 17 months since plaintiffs have

19   requested documents from these defendants, which is far longer

20   than any case that I have seen where serious case-related

21   sanctions have been imposed.  I think it is fair to say it is

22   a complete discovery stonewall.

23          Obviously, Your Honor is aware, everybody is aware

24   with respect to Vanguard America that Your Honor issued an

25   order to show cause, which was -- which Mr. Kolenich responded

1  to essentially conceding that they ought to be held in

2  contempt.

3      They also -- the fact that the three of them have

4  stopped participating entirely obviously means that we won't

5  be able, likely, to depose them or to get any discovery in any

6  format.

7      THE COURT:  You know, on that -- and, Mr. Bloch, I

8  agree, I think the four factors -- the first three are

9  abundantly laid out in your filings, and it really is --

10  what's the appropriate sanction is the issue.

11      And, you know, I'm not sure that any of these three

12  individuals, you know, Mr. Hopper for Vanguard, that they're

13  really completely out of reach of the court, and I do think

14  there may be some sanctions that are available, you know, to

15  the Court to coerce compliance with your discovery requests,

16  and to have these people sit for depositions.  And so I'm

17  wondering if those steps are more appropriate this time than

18  having, you know, adverse inferences set and facts deemed

19  admitted and documents authenticated.

20      And, you know, what I'm contemplating, and I want to

21  hear from the parties on this, is -- and each one of these

22  defendants is, while they're mostly in the same boat, I mean,

23  there are some differences.  There was a show cause order

24  issued against Vanguard.  But I would contemplate having

25  similar actions taken against each, and, really, would be, you

Sines, et al. v. Kessler, et al. - 6/3/19

```
 1  know, an order identifying specifically the accounts and
 2  devices that they're to turn over, and also an order telling
 3  them that they have to appear for a deposition in this
 4  district court on a certain, certain date, have the marshals
 5  serve this on them, lay out what could happen to them if they
 6  don't comply with this order, including that, you know, the
 7  Marshals Service -- a bench warrant could be issued for each
 8  one of them, and they could be brought to the court for their
 9  depositions; they could be, you know, held until they
10  essentially, you know, purge the contempt for not complying
11  with this order.
12          You know, it seems that there may be some things that
13  we haven't exhausted yet.  I don't know if that suits, if that
14  suits your -- you know, the plaintiffs' interests and if
15  that's appropriate in the other parties' eyes, or more
16  appropriate at this point or not.
17          MR. BLOCH:  Judge, I would say a number of things.
18  Number one, I would have some concerns about the effectiveness
19  of that in that none of them have responded to anything, court
20  orders.  I understand these sanctions would have sort of more
21  muscle to them, but I would have some concerns about whether
22  it would actually induce any sort of compliance.
23          Secondly, I think that there still is a -- I mean,
24  our primary concern is the prejudice from having three really
25  important defendants in this conspiracy that have withheld all
```

Sines, et al. v. Kessler, et al. - 6/3/19

1  of the evidence of their participation in the conspiracy.

2  It's all evidence that would be admissible against -- in our

3  cases against all the other defendants, and it's evidence that

4  is necessary for us to prove the conspiracy with respect to

5  each of the other defendants.

6           So my concern is that even if they were to comply and

7  come back for a deposition, my concern would be two-fold:

8  Number one, we still don't have a single document from any of

9  them, including communications.

10          THE COURT:  Right.  But you've gotten some documents

11 that seem to have been authored by some of these defendants,

12 or at least attributable to them.  But you've gotten them

13 through other sources; you haven't gotten them directly from

14 these people.

15          MR. BLOCH:  Correct, we have some.

16          THE COURT:  Right.

17          MR. BLOCH:  But what we don't have -- and I should

18 note, each of these defendants in some form or another

19 admitted that they used their electronic devices to

20 communicate about the events.  There are photographs of a

21 number of them, including Mr. Kline, using his cell phone at

22 the rally.

23          You know, communications amongst coconspirators, in

24 our view, is some of the most critical evidence in -- given

25 that that is conspiracy and that we are going to need to show

Sines, et al. v. Kessler, et al. - 6/3/19

1   what they communicated to each other and how they related to

2   each other.  So I don't -- I think that plaintiffs need a

3   remedy that sort of stands as a proxy for what appears to be a

4   great deal of documents in the form of communications between

5   very important coconspirators that even if they were to sit

6   for a deposition, we wouldn't have a remedy for that.  So I

7   would -- and I will also say that even if they were to come

8   back and sit for a deposition, we still -- number one, I don't

9   think there is any confidence whatsoever that they have taken

10  proper steps to preserve anything.

11          THE COURT:  Uh-huh.

12          MR. BLOCH:  And, number two, even if by some what I

13  would think in the unlikely event that they come forward,

14  it's -- we're a year and a half after we asked for these

15  documents.  And I think even if that's where we were, that a

16  year and a half later these defendants produced all their

17  documents, which I think is unlikely, we would still be in a

18  position I think of -- I mean that would still be sanctionable

19  misconduct.

20          So I guess at least as an interim step -- I mean, we

21  don't necessarily object to any incentives Your Honor wants

22  to -- wants to impose, because we do want these defendants

23  back, we do want to depose them, we do want their documents.

24          THE COURT:  Uh-huh.

25          MR. BLOCH:  But I don't think that the -- I guess at

Sines, et al. v. Kessler, et al. - 6/3/19

1  the very least I would -- I would request two particular

2  sanctions at this point.  One is that the documents that we do

3  have be authenticated through a process that we can discuss

4  with Your Honor; and, two, I think there ought to at the very

5  least be some sort of adverse inference because I think they

6  have already withheld documents for a very, very long time.

7           THE COURT:  Uh-huh.

8           MR. BLOCH:  Number two, I don't frankly believe we

9  will ever get them; and, number three, even if we do, I think

10  there is no reason to have any confidence that they have

11  actually preserved the documents that we're seeking, which I

12  think is honestly some of the most critical evidence for

13  plaintiffs in the case, not just against them but against

14  everybody else.

15           THE COURT:  And, you know, you may be right on that.

16  I guess we just don't know at this point because these

17  defendants, really, they haven't been cooperating, haven't

18  been providing discovery as required.

19           So, you know, the relief that you're requesting, when

20  he says "interim," it's really more -- I mean, that's the

21  relief that comes into play at the end of the case, you know,

22  when the case is presented to trial.  So I'm -- and I don't

23  think that at least the concept of any of those have adverse

24  inference.  The facts stand admitted, the authenticating that

25  the documents -- I mean, the concept of those I think could

1   be -- could be appropriate.  I think that we would really have

2   to talk about some of the details of those quite a bit.

3          But, you know, it seems to me that some sort of order

4   that, you know, that required these people to -- you know,

5   again, I know it's not lost on me that I've issued orders

6   telling them to do this before.  So, you know, I'm not -- I'm

7   not trying to tilt at windmills, but I do think that, you

8   know, if there were an order that identified the particular --

9   and you all have information about some of these, you know,

10  accounts and things like that that may have the responsive

11  documents.  You know, if there is an order identifying those

12  particular accounts, identifying any particular devices,

13  telling them that they have to bring their devices to a

14  deposition setting, a particular date for it, if they don't

15  show up, you know, I can certainly recommend to Judge Moon

16  that he would issue a bench warrant for them, bring them here,

17  y'all can ask them, ask them questions.  You can certainly --

18  you know, if you can find out what steps have been taken to

19  preserve information, if it's clear that ESI has been

20  destroyed, then I mean that sets up your evidentiary proof for

21  that, you know, to get to further sanctions.  But at least we

22  know at that point, you know, what the options are.

23         Here I feel like there's -- well, I know this has

24  been going on for some time and there have been a lot of steps

25  taken that have really gotten nowhere.  You know, I'm not

Sines, et al. v. Kessler, et al. - 6/3/19

 1  convinced that having an order, you know, with, really, the

 2  coercive threat of an arrest warrant and having someone go

 3  into custody until they comply with their obligations that

 4  every party has to comply with in every single case, that

 5  something like that isn't -- you know, is that not going to be

 6  enough to get those folks' attention?

 7          And they're not on the lam.  I mean, the marshals

 8  will find them, right?

 9          MR. BLOCH:  Right.  Judge, I guess I would note a

10  couple of things.  Number one, in the event they were to show

11  up for a deposition, we would then be in a position of

12  deposing them without any of their documents, which I think is

13  a different form of prejudice that --

14          THE COURT:  You could certainly ask for, you know, to

15  continue the deposition.  I mean, you can get some

16  information, get what you can out of them once, and if there's

17  a need to continue it, to follow up, I would think that you

18  would be able to make that showing pretty easily.

19          MR. BLOCH:  Fair enough, Judge.

20          I wanted to make one point about the details with

21  respect to the sanctions we're asking for, just for, for what

22  it's worth.

23          With respect to the facts deemed established, what we

24  would -- and I think this actually is relevant to incentives

25  to bringing them back.

1        In terms of the facts deemed established, what we

2    really are envisioning are rebuttable presumptions that -- and

3    the same thing with an adverse inference.  I think what we are

4    envisioning is a permissive adverse inference that, in effect,

5    tells the jury that you can infer that the reason why these

6    defendants withheld their documents is because they were

7    cognizant that it had evidence that, you know, that was

8    unfavorable to them.  And as you stated, we can talk about the

9    details.

10       But I think what that does is it allows the

11   defendants, the other defendants who are still with us, to --

12   they would not be hampered in their ability to defend

13   themselves.  They could rebut the rebuttable presumptions that

14   we would be seeking to the extent they have evidence that

15   Kline, Heimbach, and Vanguard America did not participate in a

16   racially motivated conspiracy.

17       And the reason why I think it's relevant to

18   incentives is I think that may actually be a -- at least an

19   additional incentive for them to come back.  That if it is --

20   if Your Honor rules that there will be, given all of the

21   misconduct that has happened thus far, that at the very least

22   there will be a permissive adverse inference, or, at the very

23   least, there will be facts that are rebuttable presumptions

24   that you all can rebut if you come back with your evidence, I

25   think, number one, that is an appropriate sanction for the

Sines, et al. v. Kessler, et al. - 6/3/19

1   misconduct that has occurred thus far; and, number two, I

2   think that may be an additional incentive for them to come

3   back and bring the evidence that they believe they have to

4   rebut the presumptions or a permissive adverse inference.  So

5   those are the --

6         THE COURT:  Perhaps.  But, you know, it's been -- you

7   know, Mr. DiNucci has said, "Well, why don't you just enter a

8   default judgment against them?"  And if the threat of default

9   judgment can't get these three people to participate, then, I

10  don't know that the opportunity to rebut inferences against

11  them will get them to participate.

12        MR. BLOCH:  I understand the point.  I think the

13  difference is -- well, obviously the reason why a default

14  judgment is not something we want is because it still leaves

15  us the gap in evidence in the case --

16        THE COURT:  Right.  I know that.  I understand that

17  you all, because of the conspiracy claims --

18        MR. BLOCH:  Right.

19        THE COURT:  -- that you all need evidence.

20        MR. BLOCH:  Right.  I just wonder if Mr. Kline or

21  Mr. Heimbach knew that if they don't come back, then what they

22  were -- I believe what they are -- I believe what they are

23  trying to do is avoid this process, they're trying to avoid

24  accountability in every -- they're trying to avoid turning

25  over the evidence of what they did in Charlottesville.  And I

Sines, et al. v. Kessler, et al. - 6/3/19

1  think if there were a remedy that says, "You can't -- you

2  know, you can't avoid that.  What we are going so do is make

3  what I think is actually a logical assumption that if you

4  don't turn anything over, we're going to tell the jury that

5  there's a reason why you didn't turn it over.  You didn't turn

6  over your evidence, you disappeared from this case because you

7  were afraid of what your documents showed.  And that -- and if

8  you -- wherever you guys are, if you want to come back and

9  rebut that, be our guest.  But at the very least, you're not

10  going to get what you want, which is to just disappear from

11  this case and take all of your evidence with you.  There will

12  be a proxy that we will tell the jury that stands in the place

13  of all of the evidence that you have withheld from the

14  plaintiffs in this case."

15          THE COURT:  Yeah.  I think that may be an appropriate

16  sanction at some point.  And I -- I do just -- I think that

17  there's something else that we can do to see if you all can

18  get the information that you're really entitled to.  And, you

19  know, if it turns out that they destroyed documents, or for

20  some reason, you know, the threat of contempt and an arrest

21  warrant isn't enough to get them to participate and show up

22  and for some reason the deposition doesn't go forward, I think

23  that you still have all of these options and the sanctions

24  that you've asked for available to you.

25          MR. BLOCH:  Judge, I would just make two more points.

Sines, et al. v. Kessler, et al. - 6/3/19

1          THE COURT:  Uh-huh.  Yeah.

2          MR. BLOCH:  One is that I would argue that I think

3    these two things are not mutually exclusive.  I think it is --

4    it is reasonable to impose appropriate incentives such as

5    contempt or arrest warrant, however it's fashioned, while at

6    the same time essentially stating, "These are the sanctions

7    that we are going to impose," and perhaps if they come back,

8    they can make an argument for why those sanctions are not

9    appropriate anymore.

10          If they come back and somehow cure the prejudice that

11   we have by volunteering all of their documents and sitting for

12   a deposition, then certainly they could come back and argue

13   that, "We have remedied the (indiscernible).  We took a little

14   long in doing it, but in terms of going into trial, plaintiffs

15   are in the position that they would have been had we turned

16   over the documents a year and a half ago."

17          And I think -- part of the reason why I think that is

18   appropriate is because I, frankly, think the burden should be

19   on them at this point to -- I think it makes sense to impose

20   the sanctions.  Perhaps it's, I mean, I wouldn't say

21   conditional, but with the understanding that if they fix it,

22   that they can come back and say, "We fixed it" and then we can

23   revise it.

24          So I think those things aren't necessarily mutually

25   exclusive.  And I think what that does, it gives them the

Sines, et al. v. Kessler, et al. - 6/3/19

1  appropriate incentive and it allows them in the future, if

2  they can and if they want, to come back, and they can move and

3  they can say, you know, "We're sorry.  Here's the reason.

4  Here's why the prejudice has been alleviated."

5      And then just the second point, which I know is not

6  lost on Your Honor, I think that what has happened thus far is

7  sanctionable, and so I think even if they were to come back,

8  if they show up for depositions, I still think that plaintiffs

9  deserve a remedy for what has happened thus far.

10     THE COURT:  I think you're right that the conduct is

11 clearly sanctionable up to this point, and I certainly intend

12 to award reasonable attorneys' fees.  And, you know, I -- I

13 think that there could be other -- well, figuring out what the

14 appropriate sanction is, I think it really needs to be

15 directed towards what you all are trying to get, and it seems

16 to me that what you really want is information.

17     I think using, you know, the court's authority to

18 issue a bench warrant is a pretty good way to get at that,

19 that information, because it brings these people in, you know,

20 into court.  You will get to see them face-to-face, you'll get

21 to ask them questions and try and coerce them to produce, you

22 know, the documents and things.  I feel like that's -- that's

23 probably the next step that needs -- that needs to happen.

24 And it certainly doesn't distinguish your ability to get the

25 adverse inference and so forth at some point.

Sines, et al. v. Kessler, et al. - 6/3/19

1          And I, you know, I wouldn't have any problem with,

2     you know, with putting that in an opinion or order, just

3     noting, you know, a lot of those remedies, I'm not finding

4     that they aren't appropriate but just that perhaps at this

5     time there's something else that can be done in the interim.

6     But if this isn't effective, then I think that those other --

7     those other sanctions would certainly be -- I think they would

8     be mature at that time.

9          MR. BLOCH:  Fair enough, Judge.  I guess the only

10    thing I would add to that in terms of fixing the hole that we

11    find ourselves in is the ability, in addition to the adverse

12    inference, the ability to authenticate documents --

13         THE COURT:  Right.

14         MR. BLOCH:  -- that we believe are authored by them

15    but we can't authenticate because they're not there.

16         THE COURT:  And on that, I think what you would --

17    the first step on authenticating documents, and maybe you've

18    already done this, but, you know, to show them to defense

19    counsel and, you know, say -- because a lot of times documents

20    are -- the authenticity is stipulated to, and then figure

21    out -- if there's some that can be stipulated to, if there's

22    some where there's a real question about the authenticity,

23    then, you know, that's something to bring in front of me.

24         MR. BLOCH:  I agree, Judge.  We were envisioning a

25    process where we would go to defense counsel, see what we

Sines, et al. v. Kessler, et al. - 6/3/19

1  agree and disagree on, and then present to you, with the

2  understanding that if there are documents that we believe are

3  fairly evidently authored by Kline, Heimbach, or Vanguard

4  America, that we would not be sort of hampered in admitting

5  those documents simply because we cannot ask them, "Isn't it

6  true that you wrote this?"

7          THE COURT:  Right.  Right.

8          MR. BLOCH:  But that we envision that sort of process

9  to try to --

10          THE COURT:  No.  And I think that sort of relief

11  would be appropriate if you're not able to actually, you know,

12  question these defendants.

13          MR. BLOCH:  Thank you, Judge.

14          THE COURT:  All right.  Thank you.

15          Mr. Kolenich, what do you have to say?

16          MR. KOLENICH:  Your Honor, even though I don't

17  represent any of them anymore, the process the Court is

18  envisioning, I can't even believe I'm saying this, but I'm

19  going side with the plaintiffs' lawyers here.  They've been

20  trying very hard when they have the time -- I know they have

21  other cases like everybody else --

22          THE COURT:  Right.

23          MR. KOLENICH:  -- to get these documents.  And it

24  must be very frustrating for them, as it is for me, that these

25  people go through various phases of "I don't care," you know,

Sines, et al. v. Kessler, et al. - 6/3/19

1  disrespect for the judicial process.  There is an element of

2  distrust in the judicial process.

3          THE COURT:  Uh-huh.

4          MR. KOLENICH:  There are a lot of alt-right people,

5  police officers, military members, being what they call doxxed

6  and unable to defend themselves and keep their jobs, much less

7  an ordinary person, school teacher or something like that.

8          THE COURT:  Uh-huh.

9          MR. KOLENICH:  People without union protections.  So

10  there is some of that, and a reason why they don't trust the

11  ESI and they don't want to turn these things over, because

12  they don't believe that persons who aren't maybe part of this

13  lawsuit, who are just maybe friends or whatever, identities

14  will be protected.  I think that's part of what they're

15  saying.

16          The Court has already ruled in this case that people

17  have a First Amendment right to politically participate, and

18  that not everybody who was present in Charlottesville can

19  possibly be a member of the conspiracy, not even every member

20  of these organizations can possibly be members of the

21  conspiracy.  That's part of it.

22          But the other part of it is there is an element of

23  they don't care either.  They don't believe any of those civil

24  sanctions will touch them.  And then we have to get into the

25  three individuals.  You know, the corporation, Vanguard, has

Sines, et al. v. Kessler, et al. - 6/3/19

1   one representative that I've been dealing with.  Mr. Hopper is

2   a regular person, he's a military veteran, he has a job and a

3   family; the marshals will easily find him.  If you issue an

4   order that says, "You will be taken into custody and dragged

5   to Virginia for a deposition," I'll bet that will be effective

6   on Mr. Hopper.

7          Mr. Kline is gone.  Nobody knows where he is.

8          THE COURT:  Uh-huh.

9          MR. KOLENICH:  The former organization, Identity

10  Evropa, cannot reach him, they cannot communicate with him.

11  So I have no idea what effect that's going to have.

12         Mr. Heimbach is sort of where Kline is.

13         THE COURT:  Uh-huh.

14         MR. KOLENICH:  I can reach Heimbach, but he will not

15  participate.  He has made a tactical decision that he would

16  rather just take a default and let that happen.

17         Now, again, there's a distinction in whatever Kline

18  has, if he communicated with anybody else, Nathan Damigo

19  should have, Jason Kessler should have, right?  These are the

20  other big organizers in Charlottesville.  So indirectly we can

21  get at whatever Kline might have, even though nobody knows

22  where he is.

23         Heimbach, whatever he was doing with the clients I

24  still represent should be producible by Mr. Parrott and the

25  Traditionalist Worker Party.

Sines, et al. v. Kessler, et al. - 6/3/19

1        THE COURT:  What is the status of the ESI production

2   at this point?

3        MR. KOLENICH:  They're still producing things.

4   They've produced quite a bit.  And that's a whole separate

5   topic for a different day, the enormous size and the number of

6   these documents and our complete lack of a budget to do doc

7   review with it.  And even if we did, the attorneys still have

8   to represent -- you know, go through it before production.

9   It's a huge job.  We'll talk about that a different day, or

10  we'll touch on it a little bit.

11       So the clients I have left are producing their ESI.

12  It's sometimes a little harder than others.  Sometimes

13  Mr. Bloch has to help my clients remember what emails they

14  used, for instance, and, you know, we're working on it.  They

15  continually say, "No, I don't know what that is" and then a

16  week later, "Oh, yeah, that is it.  Yeah, I remember."  So

17  it's bound to be frustrating, and there's interesting e-mails

18  back and forth between counsel on this.  Maybe that will get

19  in the record some time.

20       They're more than entitled to certain sanctions.  And

21  I don't think that the Court's -- you know, I think it will

22  work on Hopper threatening him with arrest.  I think

23  ultimately it will not work on Heimbach and Kline and it's a

24  waste of time.  You want to skip that step on those two and

25  move on, or at least skip it on Kline.  I'm certain it's going

Sines, et al. v. Kessler, et al. - 6/3/19

 1  to be a waste of time with Kline, maybe on Heimbach.  It will

 2  certainly work on Hopper is my opinion.

 3          The rest of them, you know, the only objection -- I

 4  know Mr. DiNucci is going to get up and go into chapter and

 5  verse on this, is that we don't -- we want to reserve the

 6  ability to object to this idea that they're going to put this

 7  in front of a jury rather than take a default.  We think

 8  that's going to be heavily prejudicial to the clients who are

 9  participating in this litigation if the jury has to hear about

10  people hiding ESI, hiding evidence, when the people that are

11  at trial didn't do that.  So that's just a thought I would

12  like to get into the record now.

13          THE COURT:  Right.

14          MR. KOLENICH:  Mr. DiNucci will speak on it.

15          THE COURT:  All right.

16          MR. DiNUCCI:  Your Honor, I would respectfully

17  suggest that the approach the Court has broached is a wise

18  one.  To put it differently, it's a little bit premature to

19  ask for the kinds of sanctions or to give the kinds of

20  sanctions they're seeking.  Let's see if the sort of mechanism

21  Your Honor suggested, which I alluded to in my oppositions,

22  works.

23          Not withstanding what Mr. Kolenich says about

24  Mr. Kline, people can be found, particularly when the United

25  States marshal is looking for them.  And, hell, I'll

Sines, et al. v. Kessler, et al. - 6/3/19

1    (indiscernible), Your Honor.  I'll do the homework to find

2    them, because my concern is, notwithstanding at some point

3    they may get the sanctions they want, we've got the spillover

4    effect question.  That's huge.  So I would respectfully

5    suggest that what the Court is saying we should do we should

6    try.

7              THE COURT:  Yeah.  In looking at the proposed facts

8    to be deemed admitted, you know, I did have some concern

9    about -- at least about the wording and the breadth.  I think

10   the subject matter, you're certainly going for the relevant

11   information and the things that you would need to prove your

12   case.  I did have some concern about how it was worded and

13   whether we were getting into more legal conclusions rather

14   than just, you know, keeping it straight to facts.  So I think

15   that's one thing that would need to be addressed before we

16   could take that step.

17             Now, I have a feeling that the marshals would be able

18   to locate these fellows, and, you know, that that -- the

19   plaintiffs at this point are really interested in getting the

20   information or at least seeing what information is there, and

21   it seems like -- it seems like that suits all parties'

22   interest as well, because you all don't want it to be -- you

23   don't want to get tagged with sort of an overbroad

24   presentation of the facts.  And the plaintiffs want to figure

25   out what people were saying, what people were doing at that

Sines, et al. v. Kessler, et al. - 6/3/19

1    time.

2          And really -- and I know this has been going on for a

3    while, but I think really just having this as a last push,

4    trying to run it to ground and see where we can get over --

5    hopefully just over the next couple months.  And then -- and

6    then there's the next step of looking at, you know, if this

7    is -- if this step that I'm proposing is not effective, then I

8    think we've kind of run out of options and, you know, that the

9    adverse inference and the facts admitted and things like that,

10   I don't know what else we would be able to do at that point.

11         MR. BLOCH:  Judge, I wonder in light of -- I

12   appreciate Mr. Kolenich's comments.  I wonder if in light of

13   the -- his representation that it would be a waste of time

14   with respect to Kline whether Your Honor would consider

15   imposing some form of these sanctions, which I might propose

16   that plaintiffs could draft some sort of proposed order

17   perhaps working with Mr. Kolenich in terms of what the facts

18   deemed -- and Mr. DiNucci in terms of the facts deemed

19   establish that we think makes sense, it would certainly -- we

20   would pare down the list that we have in Exhibit A, as well

21   as -- and also offer them as rebuttable presumptions --

22         THE COURT:  Uh-huh.

23         MR. BLOCH:  -- craft a process with respect to the

24   authentication of Kline's documents, craft a permissive

25   adverse inference and propose that to Your Honor in light of

Sines, et al. v. Kessler, et al. - 6/3/19

 1  the representation that --

 2          THE COURT:  I think you could certainly do that.  I

 3  mean, any time the parties want to try and narrow the issues

 4  in a case, I'm always going to encourage that.  And I think

 5  whatever you would do, and you've said this, I think you would

 6  leave the door open, you know, for these folks, for Kline and

 7  Heimbach to come into the litigation at some point and say,

 8  "Well, actually, no, we want to participate and we don't want

 9  these adverse inferences and so forth against us."  I don't

10  know that they're going to -- that they would be able to get

11  those stricken or withdrawn, but it at least gives them the

12  option.  And if you all can agree to some of these things, I

13  think that's entirely appropriate.

14          MR. KOLENICH:  It may be that I can authenticate some

15  of what Damigo -- or that Kline had.  I don't (indiscernible).

16          MR. BLOCH:  I should say I understand that there are

17  certain objections to -- strong objections to the sanctions in

18  and of themselves, so I don't know that there would be

19  necessarily agreement with respect to a proposed order.  I

20  guess what I'm really proposing is that we submit to Your

21  Honor for your --

22          THE COURT:  Uh-huh.

23          MR. BLOCH:  -- that Your Honor order at this point

24  that some version of an adverse inference as well as an

25  authentication process would be entered with respect to

Sines, et al. v. Kessler, et al. - 6/3/19

1   defendant Kline, you know, for us to kind of work out the

2   details of the language.  At some point, we could make a

3   proposal in terms of how that would work, as well as taking a

4   shot at trying to find him and do the rest of that.

5          THE COURT:  I'm certainly willing to consider it.  I

6   mean, if you submit it, I'll take a look at it again.  And,

7   you know, whatever opinion and orders that I enter I will -- I

8   am going to note that these other sanctions that you've

9   proposed, you know, I think they certainly could be

10  appropriate at some point too.

11         MR. BLOCH:  Great.  I promise -- well, I guess I

12  can't promise.  This likely will be the last -- my last point,

13  which is --

14      (Laughter.)

15         MR. DiNUCCI:  We've heard that before.

16         MR. BLOCH:  -- which is just with respect to the

17  timing --

18         THE COURT:  Uh-huh.

19         MR. BLOCH:  -- sort of.  We would hope not to have to

20  wait too long to determine that Mr. Kline and Mr. Heimbach

21  are -- and Vanguard America are not in fact going to show up.

22  So I would just propose some sort of relatively short window,

23  at which point we can sort of move on.

24         THE COURT:  And I wanted to get your thoughts on

25  that.  I guess what I would envision the order would say is

Sines, et al. v. Kessler, et al. - 6/3/19

1  that, you know, they would have 21 days to, you know, either

2  produce their devices and account information or produce the

3  documents themselves from service by the marshals of this

4  order, and then also have a certain date set for them to

5  appear for a deposition here in the district court.

6         And, you know, if they don't show up, then that would

7  trigger -- you know, trigger me certifying contempt

8  proceedings to Judge Moon, and identifying different actions

9  that he can take, including recommending that a bench warrant

10 would be issued for their arrest.  And the marshals would

11 serve this order, so, you know, we'll know in pretty short

12 order whether they can find these individuals.

13        MR. BLOCH:  I think 21 days makes sense.

14        THE COURT:  Do you want to confer with counsel and

15 provide the Court with a date for the depositions to put in an

16 order?

17        MR. BLOCH:  Sure.

18        THE COURT:  All right.  Do that.  And one of the

19 sanctions that you have requested that I am -- you know, that

20 I do think is appropriate at this time is for attorney's fees.

21 So if you want to present something on your attorney's fees as

22 well.

23        MR. BLOCH:  Okay.  Okay.  Thanks, Judge.

24        THE COURT:  Do you think you can do that in a week,

25 confer with counsel about a date for the deposition and then

Sines, et al. v. Kessler, et al. - 6/3/19

1   also submit your attorney's fees?

2          MR. BLOCH:  Sure.

3          THE COURT:  Okay.  All right.  Well, we'll be able to

4   get the orders issued pretty shortly after I get that

5   information.

6          MR. BLOCH:  Great.

7          THE COURT:  All right.

8          MR. BLOCH:  Thank you, Judge.

9          MR. KOLENICH:  Thank you, Your Honor.

10         THE COURT:  Is there anything else that we need to

11  take up today, Mr. Kolenich?

12         MR. KOLENICH:  They can't even pay my attorney fees,

13  Your Honor.

14      (Laughter.)

15         MR. KOLENICH:  Nothing else, Your Honor.

16         MR. DiNUCCI:  Nothing, Your Honor.  Thank you.

17         THE COURT:  All right.  Well, thank you all.

18         MR. BLOCH:  Thank you, Judge.

19         THE COURT:  I would ask the marshal to declare court

20  in recess.

21      (Court recessed at 11:43 a.m.)

22

23

24

25

Sines, et al. v. Kessler, et al. - 6/3/19

1

2                              CERTIFICATE

3  I, Judy K. Webb, certify that the foregoing is a

4  correct transcript from the record of proceedings in

5  the above-entitled matter.

6

7  /s/  Judy K. Webb              Date: 6/7/2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25