# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, TYLER MAGILL, APRIL
MUNIZ, HANNAH PEARCE, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, and JOHN DOE,

                    Plaintiffs,

– v –

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VANGUARD
AMERICA, ANDREW ANGLIN,
MOONBASE HOLDINGS, LLC, ROBERT
"AZZMADOR" RAY, NATHAN DAMIGO,
ELLIOT KLINE a/k/a/ ELI MOSELY,
IDENTITY EVROPA, MATTHEW
HEIMBACH, MATTHEW PARROTT a/k/a
DAVID MATTHEW PARROTT,
TRADITIONALIST WORKER PARTY,
MICHAEL HILL, MICHAEL TUBBS,
LEAGUE OF THE SOUTH, JEFF SCHOEP,
NATIONAL SOCIALIST MOVEMENT,
NATIONALIST FRONT, AUGUSTUS SOL
INVICTUS, FRATERNAL ORDER OF THE
ALT-KNIGHTS, MICHAEL "ENOCH"
PEINOVICH, LOYAL WHITE KNIGHTS OF
THE KU KLUX KLAN, and EAST COAST
KNIGHTS OF THE KU KLUX KLAN a/k/a
EAST COAST KNIGHTS OF THE TRUE
INVISIBLE EMPIRE,

                    Defendants.

**Civil Action No.** 3:17-cv-00072-NKM

**JURY TRIAL DEMANDED**

## PLAINTIFFS' MOTION TO ENJOIN DEFENDANT CANTWELL FROM MAKING UNLAWFUL THREATS AGAINST PLAINTIFFS AND PLAINTIFFS' COUNSEL

1

Plaintiffs move this Court pursuant to its inherent authority to issue an Order directing Defendant Cantwell to stop making unlawful threats against Plaintiffs and Plaintiffs' Counsel.

## PRELIMINARY STATEMENT

Before the events in Charlottesville, in August of 2017, Defendant Cantwell urged his followers to join him in a race war and in "gas[sing] kikes." Then, on August 11, 2017, Cantwell marched with his co-conspirators in Charlottesville screaming "Jews will not replace us!" as he terrorized students and employees on the University of Virginia campus. That night, he followed through on his threat and assaulted counter-protestors and passersby with illegal gas. The following day, as he continued to terrorize the residents of Charlottesville, he said to his co-conspirators "We'll f—ing kill these people if we have to." He was subsequently arrested for multiple felonies, including for maliciously causing bodily injury to a counter-protestor by dispensing a caustic substance, in violation of Va. Code Ann. §§ 18.2-52.

Cantwell's rhetoric has only escalated in its vitriol and violence since the events in Charlottesville. He has likened himself to the perpetrators of mass shootings and advocated for the mass murder of those with opposing political views. And recently, he focused his hateful rhetoric on one person in particular—Roberta Kaplan, lead counsel for the Plaintiffs. In response to an article in a Jewish publication about Ms. Kaplan, Cantwell wrote: "After this stupid kike whore loses this fraudulent lawsuit, we're going to have a lot of fucking fun with her."

Cantwell's threat against Ms. Kaplan is troubling, distracting and distressing. And if it goes unaddressed by this Court, Plaintiffs justifiably fear that Cantwell's threatening behavior will escalate, as it has in the past, and jeopardize Plaintiffs' and their counsel's safety, and Plaintiffs' right to a fair trial. Rather than waiting for just such a catastrophe, Plaintiffs ask this Court to issue a prophylactic order prohibiting Cantwell from making unlawful threats against Plaintiffs and their

2

counsel. The proposed order, which is well within this Court's inherent power, would give Plaintiffs and their counsel a necessary, additional layer of protection and peace of mind, and would only require Cantwell to refrain from conduct that is already prohibited by law.

## FACTUAL BACKGROUND

On Tuesday, June 18, Defendant Christopher Cantwell posted a message about Roberta Kaplan, counsel to the Plaintiffs in this action, on Telegram.com, a social media website. *See* Ex. 1. Cantwell posted a link to an article about Ms. Kaplan by the Jewish Telegraphic Agency. *Id.* The article discusses Ms. Kaplan's Jewish identity and her role as lead counsel on a case that overturned a federal ban on gay marriage. *Id*; Ron Kampeas, *This Jewish Lawyer Wants to Break the Back of the Violent White Nationalist Movement*, JEWISH TELEGRAPHIC AGENCY (Jun. 17, 2019) https://www.jta.org/2019/06/17/united-states/this-jewish-lawyer-wants-to-break-the-back-of-violent-white-nationalists. The article also includes excerpts of remarks she made recently at a Manhattan synagogue where she spoke about her wife. *Id.* Above a picture of Ms. Kaplan from the article, Defendant Cantwell wrote: "After this stupid kike whore loses this fraudulent lawsuit, we're going to have a lot of fucking fun with her." Ex. 1. As of this writing, Cantwell's message has been viewed by hundreds of other users on Telegram. *Id.*

This was certainly not the first offensive message Cantwell posted about Plaintiffs' counsel. *See e.g.*, Ex. 2 (describing Plaintiffs' counsel as "the lying kike filth suing me"). Cantwell's post is not even the first menacing post made by a Defendant in this case about Ms. Kaplan and her role in this litigation. *See e.g.*, Ex. 3 (Excerpted post from Jason Kessler's public Twitter profile (Feb. 10, 2018)). But Cantwell's post went beyond menacing and offensive language: it was a thinly-veiled threat to harm Ms. Kaplan in the future and to encourage others to

3

harm her, and one that was linked to her participation as an attorney in this very case. Cantwell's prior statements and actions demonstrate that his threats of violence must be taken seriously.

### A. Cantwell's Escalating Violent Rhetoric

Cantwell speaks and writes about violence frequently. He has called "for the assassination of ordinary law enforcement officers and other government workers." *See Christopher Cantwell*, S. POVERTY L. CTR., https://www.splcenter.org/fighting-hate/extremist-files/individual/christopher-cantwell (last visited Jul. 2, 2019). Just a few months before the violence in Charlottesville, while speaking about Jews in an interview, Cantwell said, "let's fucking gas the kikes and have a race war because once I realized they were responsible for communism...that's a fucking really good reason to fucking genocide a group of people." *Id.* After the violence in Charlottesville while speaking about Heather Heyer, who died after Cantwell's co- Defendant, James Alex Fields Jr. killed her by driving into her with his car, Cantwell ominously warned "Soon these Red motherfuckers are going to be jealous of Heather Heyer." *See* Ex. 4 (Excerpted post from Cantwell's public Gab profile (Aug. 11, 2018)).

In the nearly two years since Heyer's murder, Cantwell's public statements have only become more violent. Recently, Cantwell commented on a mass shooting in a mosque in New Zealand in which fifty people died. In response to that tragedy Cantwell wrote: "I'm pretty sure it would be against the rules for me to say that would be mass shooters should find left wing activists and gun them down instead of random people in mosques and synagogues. So I won't do that. I just really want these people to shut the f\*\*k up, and that seems like the most obvious and enjoyable way of accomplishing this goal." Daniel Moritz-Rabson, *'Crying Nazi' Christopher Cantwell Reportedly Banned from Gab After Post Advocated Shooting Leftists*, NEWSWEEK (Mar. 19, 2019), https://www.newsweek.com/social-media-site-gab-bans-crying-nazi-killing-leftists-1367679.

In addition to general invectives about violence against categories of people Cantwell

hates, including Jews and left-wing activists, Cantwell has resorted to threats of violence to

intimidate and harass particular individuals. Cantwell has made threats of violence against a

reporter covering litigation stemming from the events at issue in this case. During the recent

criminal trial of Defendant James Fields for murder, for example, Cantwell targeted a freelance

reporter, Molly Conger, who was covering the Fields case. In a Gab post, above a link to Conger's

podcast about the Fields trial, Cantwell wrote:

> I beg of Dino Capuzzo and the other FBI agents hovering over my
> social media posts, to take a genuine interest in Justice. You are
> fully aware of the lies of the monsters who commit perjury against
> us. If you will not act upon the information we provide to you, then
> what other choice do we have but to take the law into our own
> hands? How am I any better than Dylann Roof or Robert Bowers,
> if my peaceful and lawful actions produce the catastrophe that
> awaits us all? For America to survive, we must address these issues,
> and if the government will not do so, the private sector will. [1, 2]

*See* Chauncey Alcorn, *"Crying Nazi" Christopher Cantwell Uses Gab to Threaten Reporter*

*Covering Charlottesville Trial*, MIC (Nov. 28, 2018),

https://www.mic.com/articles/192663/crying-nazi-christopher-cantwell-gab-to-threaten-reporter-

charlottesville-trial. In other statements, Cantwell made plain his intentions for Conger. On Gab,

for example, above a link to another episode of Conger's podcast, Cantwell wrote: "Dear Molly

---

[1] Dylann Roof was convicted of killing nine African-Americans inside of a historic African-American church in Charleston, South Carolina. Alan Blinder & Kevin Sack, *Dylann Roof Is Sentenced to Death in Charleston Church Massacre*, N.Y. TIMES (Jan. 10, 2017), https://www.nytimes.com/2017/01/10/us/dylann-roof-trial-charleston.html. Robert Bowers is accused of killing eleven people in a shooting at a Pittsburgh Synagogue and is awaiting trial. Marina Pitofsky, *Accused Gunman in Pittsburgh Shooting Pleads Not Guilty to 19 New Charges*, USA TODAY (Feb. 11, 2019), https://www.usatoday.com/story/news/2019/02/11/pittsburgh-shooting-bowers-pleads-not-guilty-19-new-charges-hate-crimes/2836417002/.

[2] Cantwell has favorably invoked Roof before. On February 2, 2019, Cantwell "posted a picture of himself with a Dylann Roof haircut [a distinctive hair style] and the word soon on his Gab account." Todd Neikirk, *The "Crying Nazi" Christopher Cantwell Posts Picture of Himself with Dylann Roof Haircut and the Word Soon*, HILLREPORTER.COM (Feb. 3, 2019), https://hillreporter.com/the-crying-nazi-christopher-cantwell-posts-picture-of-himself-with-dylann-roof-haircut-and-the-word-soon-23257.

Conger, You will pay for your lies." *Id.* Cantwell has targeted other journalists critical of white supremacy with similar threats in the past. *See* Affidavit of Oren Segal, Ex. 5, ¶ 13.

## B. Cantwell's Recent Prosecution

Cantwell's threats are all-the-more concerning because Cantwell doesn't just talk about and endorse violence—he acts on his threats. During the events in Charlottesville, Cantwell behaved violently towards counter-protestors and was prosecuted for his conduct. *See* Justin Wm. Moyer, *'Crying Nazi' Pleads Guilty to Assault Committed During Charlottesville Rally*, WASH. POST (Jul. 20, 2018), https://www.washingtonpost.com/local/public-safety/crying-nazi-barred-from-virginia-after-pleading-guilty-to-assault-during-charlottesville-rally/2018/ 07/20/164480a4-8c5f-11e8-81bf-28c7cd96bbc2_story.html?utm_term=.7bac 0383cbdb. After telling his followers to "fucking gas the kikes" *supra*, Cantwell followed through, and was arrested for charges stemming from his unlawful dispersal of a caustic substance that injured counter-protestors. *See* Avi Selk, *The Rise and Humiliating Fall of Chris Cantwell, Charlottesville's Starring 'Facist,'* WASH. POST (Aug. 19, 2017), https://www.washingtonpost.com/news/the-intersect/wp/2017/08/18/the-rise-and-humiliating-fall-of-charlottesvilles-starring-fascist/; Ex. 6 (Photograph of Cantwell (Aug. 11, 2017), 3:17-cv-00089, ECF No. 4-13). Cantwell was indicted by a grand jury for two felonies based on his violent conduct during the events at issue in this case. He was indicted for violating Va. Code Ann. § 18.2-312, which makes it a crime to maliciously release pepper spray at a public gathering and cause injury to another, and for violating Va. Code Ann. § 18.2-52, which makes it a crime to maliciously cause injury to another using a caustic substance. *See* Ex. 7 (CR17000784-00 Docket Sheet, Albemarle County Circuit Court – Criminal Division); Ex. 8 (CR17000845-00 Docket Sheet, Albemarle County Circuit Court – Criminal Division).

6

Cantwell was arrested on August 23, 2017, *id.*, and he was held in jail on a $25,000 bond. *See* Elspeth Reeve & Tess Owen, *Crowd-Funding Hate; The Internet Bailed White Supremacist Chris Cantwell out of Jail*, VICE (Dec. 11, 2017), https://news.vice.com/en_us/article/d3xxnq/the-internet-bailed-charlottesville-white-supremacist-chris-cantwell-out-of-jail. But, after launching a fundraising campaign on social media platforms like Hatreon and GoyFundMe, Cantwell's supporters raised money to pay his bond and he was released in December 2017.[3] *Id.*

### 1. Cantwell's Persistent Threats Against and Intimidation of Victims During Recent Prosecution

While released on bond, Cantwell continued to flout the law. Cantwell violated the conditions of his bond by getting arrested for public obscenity and intoxication, and, more troublingly, by making threatening posts on social media regarding the victims of his crime. *See* Ex. 9 (GC18001568-00 Docket Sheet, Loudoun County, General District Court); Lauren Berg, *Cantwell's Bond Restrictions Tightened After Loudoun Arrest*, THE DAILY PROGRESS (Apr. 26, 2018), https://www.dailyprogress.com/news/local/county/cantwell-s-bond-restrictions-tightened-after-loudoun-arrest/article_45a406c4-49c2-11e8-98b2-6be8812ffe9f.html. The prosecutor for the Commonwealth of Virginia brought Cantwell's threats against his victims to the court's attention and moved to revoke Cantwell's bond. In one of the examples the prosecutor brought before the court, Cantwell "reposted a photo that depicted a little girl marching against gun violence with a sign that read, 'Am I next?' The second panel of the post showed a photo of Cantwell that said, 'one can hope.'" *Id.* In another familiar example, Cantwell posted about "gassing 'kikes and trannies'", which appeared to be directed towards one of the people he pepper-

---

[3]   Hatreon and GoyFundMe are "crowdfunding site[s] …meant to give alt-right personalities and others a way to raise money for projects deemed too risqué for mainstream crowdfunding platforms." Kevin Roose, *The Alt-Right Created a Parallel Internet. It's an Unholy Mess*, N.Y. TIMES (Dec. 11, 2017), https://www.nytimes.com/2017/12/11/technology/alt-right-internet.html.

Case 3:17-cv-00072-NKM-JCH   Document 511   Filed 07/02/19   Page 7 of 24   Pageid#: 5361

sprayed on August 11, Emily Gorcenski, a vocal advocate for transgender rights.  *See* Samantha

Baars, *Booze Bracelet: Cantwell's Public Intoxication Charge Violates Terms of Bond*, C-VILLE

(May  1,  2018),  https://www.c-ville.com/booze-bracelet-cantwells-public-intoxication-charge-

violates-terms-bond/; Mihir Zaveri, *Christopher Cantwell, White Nationalist in Vice Video, Is*

*Barred      from      Virginia*,      N.Y.      TIMES      (Jul.      21,      2018),

https://www.nytimes.com/2018/07/21/us/christopher-cantwell-crying-nazi-virginia.html.

These were not Cantwell's first posts designed to intimidate his victims—the prosecutor

had repeatedly asked Cantwell to stop making threats against the victims before moving to revoke

his bond.  Berg, *supra*. Cantwell's torrent of harassment and intimidation against Gorcenski also

included public statements where he called her "a fucking tranny"; a "suicide waiting to happen";

permitted a commenter on his blog to post her home address with the message "someone should

go talk to it," referring to Gorcenski; published a song to his blog with pictures of Gorcenski titled

"Gassing kikes and Trannies"; published a drawing showing a caricature of Gorcenski being hit

by a Dodge Challenger; and threatened Gorcenski on Gab with the post "Hello enemy stalker.

Your entire life is a lie, and you will soon be punished for your sins," among other things.  *See*

Ex. 10, Amended (First) Counterclaims of Defendants Emily Gorcenski and Kristopher Goad

(Mar. 20, 3018), 3:17-CV-00089, ECF No. 25, ¶¶ 27(a)-30(a); Ex. 11 (Post from Cantwell's blog,

(Dec. 10, 2017), 3:17-CV-00089, ECF No. 25-2); Ex. 12 (Excerpted post from Cantwell's blog,

3:17-CV-00089, ECF No. 25-3); Ex. 13at 2 (Excerpted posts from Cantwell's public Gab profile,

3:17-CV-00089, ECF No. 25-4).  Even after Cantwell's own lawyer, Elmer Woodard, directed

him to remove the threatening posts and stop making new ones, Cantwell persisted.  Ex. 14, ¶¶ 8-

11 (Motion to Revoke or Modify Bond, *Commonwealth of Virginia v. Christopher Charles*

*Cantwell*, CR17-784, CR17-845, Albemarle County, Circuit Court (Jul. 6, 2018)).   In his

application to the court to revoke Cantwell's bond, the prosecutor pleaded: "[Cantwell's not taking these [bond] conditions seriously," "[w]e just want the threats to stop." Berg, *supra*. Cantwell's bond conditions were modified and he was ordered not to have contact with or speak publicly about the victims. *Id.*

Despite the court's order, Cantwell continued to identify and refer to his victims in public statements. *See* Ex. 14, ¶ 16. As the prosecutor noted in the Commonwealth's second motion to revoke or modify Cantwell's bond, Cantwell's conduct imperiled "[t]he right of victims in pending cases to prepare for trial free of harassment or intimidation," which is "essential to the administration of justice." *Id.* ¶ 13. On July 20, 2018, Cantwell pled guilty to violating the conditions of his bond, in violation of Va. Code Ann. § 18.2-456. *See* Ex. 15 (CR-17000784-01 Docket Sheet, Albemarle County Circuit Court – Criminal Division).

### 2. Cantwell Admission of Violent Conduct

Cantwell also ultimately pled guilty to multiple crimes in connection with his conduct on August 11, 2017. Specifically, Cantwell pled guilty to two counts of assault and battery in violation of Va. Code Ann. § 18.2-57. *See* Ex. 7; Ex. 8. Cantwell was sentenced to two concurrent sentences of twelve months in jail, with five months suspended. *Id.* As part of his plea, he was required to leave Virginia immediately, not to return to Virginia for five years, not to possess a firearm in Virginia, and not to have contact, direct or indirect, with the victims of the case. *See Cantwell Enters Plea Deal on Charges of Assault and Battery*, NBC29.COM (Jul. 29, 2018), https://www.nbc29.com/story/38694309/chris-cantwell-court-7-20-2018.

### C. Cantwell's Use of Telegram Amplifies the Danger of his Threat

Perhaps of greatest concern here is the fact that Cantwell's threat against Ms. Kaplan is not limited to violent acts to be committed by Cantwell himself. Rather, the manner in which it was published raises the very real specter that those who read the threat may heed his call to behave

9

violently towards Ms. Kaplan. Significantly, Cantwell posted the threat on Telegram, which is a social media platform that has recently become popular with white supremacists, and has been popular with other extremist groups, including ISIS, for several years. *See* Michael Edison Hayden, *Far-Right Extremists Are Calling for Terrorism on the Messaging App Telegram*, S. POVERTY L. CTR. (Jun. 27, 2019), https://www.splcenter.org/hatewatch/2019/06/27/far-right-extremists-are-calling-terrorism-messaging-app-telegram. Telegram has numerous moderated conversation streams, known as channels, where users "promote terror" and "discuss weaponry, including the subject of building guns with 3D printers and homemade methods," and moderators encourage users to "attack synagogues, mosques and other houses of worship." *Id.* Telegram has an active user base and tracks its users' activities. In just forty-eight hours, more than 2,000 users viewed a particular post with instructions on using a 3D printer to print a firearm. *Id.* Prominent white supremacists, including Defendant Andrew Anglin, have encouraged their followers to use Telegram. *Id.*

Cantwell began using Telegram and advocating that his followers use Telegram in March of 2019, after he was banned from Gab. *See* Chris Cantwell, *I Think I've Been Banned from Gab*, ChristopherCantwell.com (Mar. 18, 2019), https://christophercantwell.com/2019/03/18/i-think-ive-been-banned-from-gab/; Chris Cantwell, *Radical Agenda Telegram Group*, ChristopherCantwell.com (Mar. 24, 2019), https://christophercantwell.com/2018/03/24/radical-agenda-telegram-group/. Getting banned from Gab isn't easy—it is a social media platform that was expressly created "as a sanctuary for people who had been kicked off of Twitter for violating its community standards." Joshua Brustein, *Gab, an Online Haven for White Supremacists, Plots Its Future,* BLOOMBERG (Oct. 30, 2018), https://www.bloomberg.com/news/articles/2018-10-30/gab-an-online-haven-for-white-supremacists-plots-its-future. But Telegram has proven to be

an even more welcoming venue for those who violate other social media platforms' community standards. When he started using Telegram, Cantwell hailed Telegram's lack of rules and monitoring, stating "[t]he only people I've ever heard of getting banned from Telegram are literal ISIS accounts." Chris Cantwell, *Radical Agenda Telegram Group*, *supra*. Oren Segal, the Director of the Anti-Defamation League's Center on Extremism and an expert in terrorism, notes that, like Cantwell himself, Telegram users tend to have been banned from mainstream social media platforms for their inflammatory, extremist remarks. *See* Ex. 5, ¶¶ 2-6, 20-21. Consequently, the hundreds of people who viewed Cantwell's threat against Ms. Kaplan may be more likely to share his beliefs and more prepared to act on them than those who use mainstream social media platforms. *Id.* at ¶ 17.

### D. Online Threats like Cantwell's Often Precede Real-Life Violence

Cantwell's threat against Ms. Kaplan is the kind of inflammatory online message that has "significant potential to lead to on-the-ground violence" either from Cantwell or from someone who shares Cantwell's views and sees Cantwell's threat. *Id.* at ¶ 11. White supremacists who regularly use social media often mobilize their followers to aid them in harassing a particular disfavored group or individual. *Id.* at ¶¶ 12-14. Cantwell has successfully used this strategy before, and he has built a strong fanbase on Telegram and through his podcast, "Radical Agenda," that he could easily mobilize now. *Id.* at ¶¶ 12-14; 22-24. Even if Cantwell takes no further steps to marshal his followers against Ms. Kaplan, identifying her as a target has already put a bull's eye on her back. *Id.* at ¶ 17. In the white supremacist online world, particularly on a platform like Telegram, threats from an influential actor "certainly increase the risk that violence will occur." *Id.* at ¶ 19.

Moreover, recent history has taught us that we cannot afford to ignore this type of threat posted by violent extremists on the internet. Before Robert Bowers murdered eleven people in a

synagogue in Pittsburgh, he announced his intentions on Gab: "HIAS [a Jewish nonprofit organization] likes to bring invaders in that kill our people. I can't sit by and watch people get slaughtered. Screw your optics, I'm going in." Kevin Roose, *On Gab, an Extremist-Friendly Site, Pittsburgh Shooting Suspect Aired His Hatred in Full,* N.Y. TIMES (Oct. 28, 2018), https://www.nytimes.com/2018/10/28/us/gab-robert-bowers-pittsburgh-synagogue-shootings.html. Prior to that announcement, Bowers had been sharing his extremist views with other Gab users and speaking frequently of violence. *Id.* "Gab's reputation for accommodating extremism may have been what drew Mr. Bowers to the side." *Id.* Similarly, before Brenton Harrison Tarrant committed New Zealand's deadliest mass murder, Tarrant shared his extremist views, his manifesto, and his intentions online. Kevin Roose, *A Mass Murder of, and for, the Internet,* N.Y. TIMES (Mar. 15, 2019), https://www.nytimes.com/2019/03/15/technology/facebook-youtube-christchurch-shooting.html. He even livestreamed videos of himself committing this massacre in real-time online. *Id.* Tarrant's attack appears to have been designed for and inspired by "distinct internet subcultures" steeped in modern extremism. *Id.* Given this backdrop, Ms. Kaplan took Cantwell's threat seriously and acted accordingly. On June 19, one day after Cantwell's post, Ms. Kaplan took precautionary measures: she contacted law enforcement regarding Cantwell's threat, and notified the Court. *See* Ex. 16 (E-mail from M. Bloch to Judge Hoppe (Jun. 19, 2019)).

### E. Cantwell Has Behaved Violently Before

There is ample reason for the Court to take the proposed prophylactic measure in response to Cantwell's threat. Unrelated to Cantwell's conduct in Charlottesville, he has at least four prior criminal convictions, including a conviction for unlawful possession of a weapon. *See* Ex. 17 (New York State Unified Court System Criminal History Record Search Program results for

Christopher Cantwell).[4]  Cantwell came to Charlottesville armed for a fight.  *Charlottesville: Race and Terror*, VICE News Tonight (Aug. 14, 2017), https://www.youtube.com/watch?v=RIrcB1sAN8I (showing Cantwell in a hotel room with the weapons he brought to Charlottesville including two ak47 assault rifles, a pistol in the front of his waistband, a pistol in the back of his waistband, a pistol strapped to his calf, and a knife strapped to his other leg (19:09-19:43)).  Cantwell has expressed his aim to engage in more violence and he certainly has the means to do so.  In his words, "I'm carrying a pistol.  I go to the gym all the time.  I'm trying to make myself more capable of violence.  I'm here to spread ideas, talk, in the hopes that somebody more capable will come along and do that."  Rachel Janik, *Christopher Cantwell "In the Process" of Turning Himself in to Police*, S. POVERTY L. CTR. (Aug. 23, 2017), https://www.splcenter.org/hatewatch/2017/08/23/christopher-cantwell-process-turning-himself-police.  He has shown himself to be plenty capable of following through on threats of violence. He pleaded guilty to two counts of assault and battery for which he served five months in jail.  And experts have observed a direct connection between threats like the one Cantwell made against Ms. Kaplan and "actual, real world consequences for the targeted individuals and communities."  *See* Ex. 5, ¶ 15.

To fully litigate this case, Plaintiffs and Plaintiffs' counsel will need to depose the Defendants, including Cantwell.  Plaintiffs and Plaintiffs' counsel will need to attend court appearances where Cantwell is present.  Plaintiffs' counsel will need to examine Cantwell in front of a jury.  Plaintiffs' ability to take any of these necessary steps will be impaired if Plaintiffs must worry about violence from Cantwell, other Defendants, or their followers, during the court proceedings.

---

4  Exhibit 17 has been partially redacted to protect Cantwell's personal identifying information and information regarding criminal cases that have been dismissed.

Plaintiffs respectfully request that this Court grant this motion and issue Plaintiffs' proposed order ("Proposed Order"), which would enjoin Cantwell from making unlawful threats against Plaintiffs and Plaintiffs' counsel during the pendency of this case. *See* Proposed Order. The Proposed Order falls squarely within the power of the Court and the bounds of the First Amendment, and granting the Proposed Order provides Plaintiffs with the minimum protection necessary to safely proceed with this case.

## ARGUMENT

This Court has the power to enjoin Defendant Cantwell from making unlawful threats against the Plaintiffs and Plaintiffs' counsel and should do so. Courts are vested with the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962). The Court's "broad power necessarily inheres to the court as a means of 'protecting the due and orderly administration of justice and [of] maintaining the authority and dignity of the court.'" *In re White*, No. 2:07-CV-342, 2013 WL 5295652, at *65 (E.D. Va. Sept. 13, 2013) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)); *see United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993) ("Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers"). If the Court's inherent powers are to mean anything, they must include the authority to impose lawful, prophylactic constraints that permit a party to have a sense

14

of security during the course of litigation in the face of threatening behavior from an opposing party.

Courts routinely exercise their inherent power to sanction litigants for the kind of conduct that Cantwell engaged in here. *See Kilborn v. Bakhir*, No. 01-CV-1123, 2004 WL 2674491, at *4 (E.D. Va. Jan. 9, 2004) (awarding attorney's fees and costs where defendant's attorney made threats against and intimidated plaintiff, plaintiff's counsel, and plaintiff's witnesses, among other types of misconduct), *aff'd,* 102 F. App'x 328 (4th Cir. 2004); *Frumkin v. Mayo Clinic*, 965 F.2d 620, 626-27 (8th Cir. 1992) (finding lower court's decision to issue "restraining order, backed up with assurance that it would dismiss [plaintiff's] suit if he disobeyed the restraining order, adequately protected both [defendant] and the integrity of the court" where plaintiff called defendants and said "[b]efore I die, I'm going to . . . take you with me," and noting that dismissal might also have been appropriate); *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 291-92 (5th Cir. 1997) (upholding financial sanction where defendant threatened and cursed at plaintiff's attorney during deposition); *Cameron v. Lambert*, No. 07-CV-9258, 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008) (dismissing case where plaintiff behaved inappropriately during deposition by, *inter alia*, "threatening [defense counsel with] physical force, disparaging counsel" and "using profanity").

The case of *Richardson v. Cabarrus County Board of Education* is instructive. 151 F.3d 1030, 1998 WL 371999 (4th Cir., Jun. 9, 1998). Richardson, a middle school employee, sued the school board for racial discrimination in connection with a poor job evaluation and repeated failures to promote him. *Id.* at *1. After a mistrial on Richardson's claims, Richardson reached a settlement with the school board. *Id.* But, shortly after the settlement, the district court, after conducting a hearing, determined that Richardson sent several unsigned letters to Jessie

15

Blackwelder, the assistant superintendent of the school board, who had been a central defense witness at trial. *Id.* In his first letter to Ms. Blackwelder, Richardson said "it was time 'to get [her] back,' and referred to 'incriminating evidences' which would be revealed 'to Mr. Richardson's attorney . . . [and] to . . . [the presiding judge at trial], too' unless Mr. Richardson received an administrative position 'immediately.'" *Id.* (citation omitted). The letter also threatened that Ms. Blackwelder would reach "sudden retirement" if she did not satisfy Richardson's demands. *Id.* (citation omitted). In a second letter to Ms. Blackwelder, Richardson referred to her using "a string of sexually-oriented epithets." *Id.* at *2. He warned that she "would be 'SICK, CRAZY, AND RETIRED' if she did not 'READ MY FIRST LETTER, IF YOU KNOW WHAT I MEAN!'" *Id.* (citation omitted). In Richardson's final letter, which was addressed to Ms. Blackwelder's husband, Richardson wrote: "SHE WILL LEARN NOT TO '[expletive deleted]' WITH ME." *Id.* (citation omitted).

The district court found that Richardson's letters amounted to improper intimidation based on the "'threatening' tone of the letters and implicit threats therein." *Id.* at *4. The court dismissed Richardson's action to enforce the settlement agreement with the school board, assessed attorneys' fees and costs against Richardson, and barred Richardson from filing a related action against the school board. *Id.* at *1. While recognizing the severity of the sanctions, the Fourth Circuit affirmed the lower court's decision, reasoning that "a court must be free to protect its integrity, send a message to the public, and prevent a misbehaving litigant from profiting from his own wrongdoing." *Id.* at *6. Cantwell's threat against Ms. Kaplan is no different than the threats Richardson made against his employer. And the need to protect the integrity of this judicial process and to send a message to the other Defendants and the public is even more pressing here

16

where Cantwell has a history of violence, the means to follow through on his threat, and a loyal following from others similarly inclined and equipped.

Plaintiffs ask the Court to exercise its inherent power to enjoin Defendant Cantwell from engaging in conduct that the law already prohibits. Specifically, Plaintiffs ask the Court to order Cantwell not to make unlawful threats against Plaintiffs and Plaintiffs' counsel. *See* (Proposed Order). The Proposed Order would be an effective tool to deter further threatening conduct for several reasons. If granted, the Proposed Order puts Cantwell on notice that such conduct is impermissible. In addition, violating the Proposed Order could subject Cantwell to potential civil and criminal consequences. If this Court issues the Proposed Order and Cantwell violates it, this Court would be empowered to hold Cantwell in contempt. *See* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority" as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"). Cantwell could also be subject to criminal prosecution for contempt if the Court issues the Proposed Order and Cantwell makes an unlawful threat that amounts to a separate criminal offense under a state or federal statute. *See* 18 U.S.C. § 402 ("Any person . . . willfully disobeying any lawful . . . order . . . of any district court of the United States . . . by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt . . . and shall be punished by a fine under this title or imprisonment, or both"). In other words, the Proposed Order brings any future threatening conduct by Cantwell against the Plaintiffs and their counsel squarely

within the jurisdiction of this Court, giving the Court the ability to regulate Cantwell's threatening conduct as it relates to this case and to ensure Plaintiffs' and Plaintiffs' counsel's safety.

Further, granting the Proposed Order protects Plaintiffs and their counsel without infringing on any of Cantwell's rights. Threatening speech is exempted from the First Amendment in order to protect people from the potential threatened violence and because of the harm caused by threats alone—"the fear of violence and the disruption that fear engenders." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 729 (E.D. Va. 2015). Statements that amount to "true threats"—that is, "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual," or "where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death"—are not protected by the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359-60 (2003). Numerous federal and state laws make it a crime to communicate a threat to kill or injure another—in other words, a true threat. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 691–92 (4th Cir. 2018). Because the Proposed Order prospectively prohibits only *unlawful* threats, which by their very nature do not have the benefit of protection under the First Amendment, granting it would not infringe on Cantwell's constitutional right to free speech.[5]

This Court has the power to direct litigants to refrain from conduct already proscribed by law, as an additional layer of protection for parties whose safety is in jeopardy, and that is all the

---

[5]    A former Defendant, Michael Peinovich, previously sought to enjoin Ms. Kaplan from engaging in a "social media and print and television media campaign against Peinovich and the other defendants." Def. Michael Peinovich's Mtn. to Restrain [Plaintiffs] From Further Improper and Unethical Extrajudicial Statements and for Sanctions, ECF No. 258 at 18. The vast majority of the statements that were the subject of Peinovich's motion were negative characterizations of white supremacists and requests for donations in support of Plaintiffs' lawsuit. *Id.* at 1-15. None of the statement made by Plaintiffs' counsel included threats of violence. This Court correctly held that the gag order Peinovich sought would raise First Amendment concerns and that Ms. Kaplan's remarks were not unfairly prejudicial to Defendants. Order, ECF No. 285 at 2-3. In contrast, Plaintiffs are not asking this

Plaintiffs are asking the Court to do here. Under most state laws, courts are empowered to issue protective orders prohibiting a criminal defendant from engaging in unlawful conduct against a particular person, even though such conduct is already prohibited generally by law. *See, e.g.*, Va. Code Ann. § 19.2-152.10 (prohibiting person subject to order from engaging in "acts of violence, force or threat[s]" against the protected party). Indeed, this would not even be the first court in Virginia to order Cantwell to refrain from threatening others involved in litigation concerning his behavior in Charlottesville. Berg, *supra*.

Plaintiffs have a right to a fair trial, but that right will be jeopardized if their counsel continues to be subject to unlawful threats from the Defendants. Indeed, Cantwell may well be making such a threat precisely to imperil that right. The Court need not, and indeed should not, wait for Cantwell to act on his words. This Court has the "inherent" "equitable power" "over [its] own process, to prevent abuse, oppression, and injustice." *Gumbel v. Pitkin*, 124 U.S. 131, 145–46 (1888). Plaintiffs respectfully urge the Court to use its power to protect their safety and the safety of Plaintiffs' counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion enjoining Defendant Cantwell from making unlawful threats against Plaintiffs and Plaintiffs' counsel, enter the proposed order and order such other relief as the court deems necessary and appropriate.

Dated: July 2, 2019
     New York, New York

                                         */s/ Michael L. Bloch*
                                         Roberta A. Kaplan (*pro hac vice*)
                                         Julie E. Fink (*pro hac vice*)
                                         Gabrielle E. Tenzer (*pro hac vice*)

---

Court to stop Cantwell from making derogatory remarks about them or their counsel—just from making unlawful threats of violence against them.

Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com

Of Counsel:

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
jphillips@bsfllp.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB 84796)
Erin Ashwell (VSB 79538)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

eashwell@woodsrogers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Lisa M. Lorish
Federal Public Defenders Office
Western District of Virginia - Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
lisa_lorish@fd.org

*Fifth Amendment Counsel for Defendant
James A. Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Matthew Parrott,
Robert Ray, Traditionalist Worker Party,
Jason Kessler, Nathan Damigo, Identity
Europa, Inc. (Identity Evropa), and
Christopher Cantwell*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,
Michael Tubbs, and League of the South*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

William Edward ReBrook, IV
The Rebrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National
Socialist Movement, and Nationalist Front*

I further hereby certify that on July 2, 2019, I also served the following non-ECF participants, via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a : Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker 2634 U.S.
HWY 158 E
Yanceyville, NC 27379

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

I further hereby certify that on July 2, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

*/s/ Michael L. Bloch*
Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com

2

gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com

*Counsel for Plaintiffs*

3