# EXHIBIT 10

UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF VIRGINIA, CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| Plaintiff/Counter Defendant | ) ) ) ) | |
| v. | ) ) | Case No. 3:17-CV-00089 (NKM/JCH) |
| Emily Gorcenski,<br>Kristopher Goad,<br>Defendants/Counter Claimants | ) ) ) | |

## AMENDED (FIRST) COUNTERCLAIMS OF DEFENDANTS
## EMILY GORCENSKI AND KRISTOPHER GOAD

Defendants/Counter Claimants Emily Gorcenski and Kristopher Goad (collectively, "Defendants"), by counsel, state the following:

### Introductory Statement

Plaintiff Christopher Cantwell initiated this action by filing a complaint in this court on December 28, 2017 (the "Complaint", Dkt. 1).   Defendants filed an answer to the Complaint (the "Answer") on February 12, 2018 (Dkt. 9), and in the Answer asserted a number of counterclaims. (Answer at ¶¶ 140 -182.)   Plaintiff filed a motion to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6) on February 27, 2018.  Defendants herein restate their amended counterclaims, as set forth below, as a matter of course pursuant to Rule 15(a)(1)(B)(the "Amended Counterclaims").[1]

---

[1] To avoid confusion, rather than reference the paragraph numbers in the Answer, Defendants will restart the paragraph numbering in this document at Paragraph 1, rather than carrying over the paragraphs numbers from the initial Answer and Counterclaims.

1

## Parties

1.      Defendant/Counter Claimant Emily Gorcenski is an individual resident of Charlottesville, Virginia.

2.      Defendant/Counter Claimant Kristopher Goad is an individual resident of Richmond, Virginia (together, with Ms. Gorcenski, "Defendants")

3.      Plaintiff/Counter Defendant Christopher Cantwell ("Mr. Cantwell" or "Plaintiff") is the individual Plaintiff in the above-captioned action.

## Facts of the Counterclaims

### Events Prior to August 11, 2017

4.      Prior to August 11, 2017, Ms. Gorcenski and Mr. Goad have been anti-racist/anti-fascist activists and advocates of equal rights for black people, LGBTQ people, immigrants, and other equally vulnerable and marginalized minority groups. The status of Ms. Gorcenski and Mr. Goad as anti-racist and anti-fascist activists promoting equal rights for black people, LGBTQ people, immigrants, and other vulnerable and marginalized minority groups was generally known and was known to the Plaintiff through the online and in-person activism of Ms. Gorcenski and Mr. Goad, to include mobilizing and organizing in support of equal rights and against the rallies organized and planned by the Plaintiff and other racist, fascist organizers throughout the summer of 2017.

5.      Prior to August 11, 2017, the Plaintiff and other persons known and unknown to Ms. Gorcenski and Mr. Goad were hostile specifically toward Ms. Gorcenski and Mr. Goad for their political beliefs, activities, and associations, as well as generally hostile toward anti-racist and anti-fascist organizers and civil rights activists.  Mr. Cantwell and others made public

2

statements and took actions evidencing their hostility toward Ms. Gorcenski and Mr. Goad. The Plaintiff (along with others named throughout this the pleadings in this matter) made numerous public and private statements explicitly demonstrating their desire to harm and kill "communists," leftists, Democrats, and other activists promoting equal rights for black people, people of color, and LGBTQ people.

<u>Events of August 11, 2017</u>

4.     On the night of August 11, 2017, Plaintiff intentionally and knowingly deployed pepper spray into a group of people gathered in a crowd, causing physical injury and emotional injury to both Defendants.  Plaintiff admits to deploying pepper spray in his Complaint (*see* Compl. ¶ 27) and the video and photographic evidence appended to the Plaintiff's Complaint shows Plaintiff deploying pepper spray in the area where both Defendants were present.

5.     Plaintiff has admitted in various other forums that he deployed pepper spray in a crowded area in the immediate vicinity of Defendants. For example, in one blog post Plaintiff states:

> *"I did pepper spray one person, using the pepper spray that I always keep on my keychain. I made no secret of this, in part because I was certain my actions were lawful. I even made one journalist's photo of the spraying my Facebook cover photo."*

6.     In the photo mentioned by Plaintiff, Defendant Goad can be seen clearly in the immediate vicinity of Plaintiff's spray. <u>See</u> Compl. Ex. H.

7.     The video evidence attached to the Complaint, along with the eye witness testimony of Ms. Gorcenski and Mr. Goad, demonstrates that Plaintiff's deployment of pepper spray was unjustified, and was done negligently, willfully, or with reckless disregard for the safety of others in the area.

3

8.      The video evidence appended to the Complaint also shows that, on the night of August 11, on numerous occasions, Plaintiff made menacing, threatening, and/or frightening gestures and acts (including brandishing of pepper spray and making physical contact) combined with threatening comments, towards a number of people, including both Ms. Gorcenski and Mr. Goad, which gestures and comments reasonably put both Defendants in imminent fear of bodily harm. See, e.g., Compl. Exs. MP42, MP48.

9.        The video evidence appended to the Complaint also shows that, on the night of August 11, on numerous occasions, Plaintiff intentionally made physical contact with and caused actual physical harm to numerous individuals, including Ms. Gorcenski and Mr. Goad, by, *inter alia*, deploying pepper spray that made contact with both Defendants, and hitting, shoving, slapping at, and/or intentionally coming into other physical contact with both Defendants. See, e.g., Compl. Exs. MP42, MP48.

### Plaintiff's Arrest and Ongoing Criminal Proceedings Against Plaintiff

10.     Shortly after August 11, Ms. Gorcenski and Mr. Goad each filed police reports with the University of Virginia Police Department related to the conduct described in paragraphs 1 through 5 above.

11.     Subsequently, and at the direction of UVA Police Sergeant Acord, Mr. Goad and Ms. Gorcenski each swore out an affidavit, to the best of their knowledge at the time, to a magistrate complaining of the conduct described in paragraphs 1 through 5.

12.     Upon review of these affidavits, and after conferring with law enforcement and receiving law enforcement authorization pursuant to Virginia Code § 19.2-71, a magistrate determined to issue three felony arrest warrants for Plaintiff.  The warrants included charges alleging Unlawful Bodily Injury by Means of Any Caustic Substance in violation of Virginia

4

Code §18.2-52, and Illegal Use of Gas in violation of Virginia Code § 18.2-312.  Plaintiff was eventually arrested and charged on these warrants, and was held without bail until December 7, 2017.

13.     As noted in the Complaint, Ms. Gorcenski and Mr. Goad each swore out a single affidavit to the magistrate related to Plaintiff's conduct. Compl. ¶ 58.   Because neither Ms. Gorcenski nor Mr. Goad is a magistrate, law enforcement officer, or representative of the Commonwealth's Attorney's office, neither Ms. Gorcenski nor Mr. Goad had any authority to issue the warrants referenced in paragraph 8, nor did the magistrate seek their input or advice about which sections of the Virginia Code the warrants should issue under.  As is customary, Defendants submitted their affidavits of fact to the magistrate, and the magistrate made a decision about which Code sections under which to issue warrants.

14.     Despite Plaintiff's contention to the contrary (Compl. ¶ 58), it is not uncommon or "curious" that the magistrate used the same affidavit to support more than one criminal charge; rather, such is common practice in situations where the magistrate determines that the same affidavit supports a finding of probable cause for more than one criminal charge.

15.     As noted in the Complaint, ¶ 67, on August 31, 2017, the Commonwealth's Attorney sought a superseding indictment and upgraded two of the four charged against Plaintiff, upgrading them from "unlawful" to "malicious."

16.     As noted in Defendants' Answer, at the preliminary hearing on November 9, 2017, the Albemarle County General District Court certified that there was probable cause to charge Plaintiff with felony Illegal Use of Gas, and certified the charge to the Grand Jury.   On December 4, 2017, the Grand Jury indicted Plaintiff for one count of Illegal Use of Gas in violation of Virginia Code § 18.2-312.  That indictment is now pending prosecution in the

5

Circuit Court for Albemarle County. See <u>Commonwealth of Virginia v. Christopher Cantwell</u>, Albemarle Co. Cir. Ct. CR17000784.

17.     Also on December 4, 2017 the Commonwealth sought and obtained a direct indictment for a second charge of Illegal Use of Gas alleged to have occurred on August 11, 2017, <u>Commonwealth of Virginia v. Christopher Cantwell</u>, Albemarle Co. Cir. Ct. CR17000845. Criminal prosecution of both charges are currently ongoing, and Plaintiff's trial on those charges is scheduled for August 13.

18.     Also at the November 9, 2017 preliminary hearing, the General District Court ruled that there was not sufficient probable cause for the Commonwealth to continue with the charges against Plaintiff pursuant to Virginia Code § 18.2-52, and accordingly dismissed those two charges.  In Virginia criminal proceedings, as in other jurisdictions, it is not uncommon for a criminal defendant to be charged under multiple statutes for the same conduct, and for some of those charges to be dismissed while others are not dismissed.

19.     After these charges were dismissed, Plaintiff's attorney moved for a reconsideration of Plaintiff's bail.  Plaintiff was granted bail, and on December 7, 2017 posted bond and was released from Albemarle County Regional Jail.

20.     Despite the ongoing criminal proceedings against him, and Plaintiff's acknowledgment that Ms. Gorcenski and Mr. Goad each swore out only one affidavit regarding the events in question, Plaintiff's Complaint alleges that the criminal proceedings against him have been terminated in a manner not unfavorable to him[2].  Given the ongoing criminal proceedings

---

[2] In Plaintiff's Brief in Support of his 12(b)(6) motion to dismiss the initial Counterclaims, Plaintiff absurdly argues that "[Plaintiff's claims arise out of dismissed actions, not any pending one," apparently referring to the two charges under Virginia Code § 18.2-52 that were dismissed.  However, the fact that two lesser felony charges arising from the same conduct are still currently pending against Plaintiff in the Albemarle County Circuit Court Renders Plaintiff's argument patently false and materially misleading to the Court.

against him in the Albemarle County Circuit Court, there is no factual or legal basis for this claim.

21.     Plaintiff, who is represented by counsel in both his criminal proceedings and in the immediate civil case, is undoubtedly aware that in this case, as in every other criminal case brought by the Commonwealth, complaining witnesses have no authority over or input into the decision about whether a defendant is charged as a result of a complaint, or under which sections of the Virginia Code a defendant is charged.

22.     Similarly, Plaintiff is undoubtedly aware that in this case, as in every other criminal case brought by the Commonwealth, complaining witnesses have no authority over or input into the decision about whether a defendant is held without bail pending trial.

### *Plaintiff's Post-Release Harassment and Witness Intimidation of Defendants*

23.     On information and belief, shortly after his arrest, Plaintiff learned that the two complaining witnesses in his criminal case were Ms. Gorcenski and Mr. Goad.  Upon learning their identities, and particularly upon regaining access to the internet upon his release from jail on bail, Plaintiff began a systematic and relentless campaign—using the media, social media websites, and content posted to his blog—to harass, intimidate, and threaten Defendants, and to encourage others to do so, for the purpose of deterring Defendants from testifying as witnesses or cooperating in the criminal case against him, and to deter other victims from coming forward to cooperate in the criminal case.[3]

---

[3] Video from August 11 demonstrates that a number of anti-racist protesters were injured by pepper spray (both the Plaintiff's spray and that of other white supremacists) and through other means, and the Commonwealth's Attorney has made substantial efforts to try and secure the cooperation of these other victims in the criminal case against Plaintiff, and to encourage them to report crimes committed by other individuals.  Despite these

7

24.     Subsequently, Plaintiff's statements and online conduct have constituted a relentless torrent of harassment, threats, and intimidation designed to intimidate and harass Defendants to deter them from testifying in the criminal proceedings against him, and to deter other victims from coming forward to testify against him.

25.     Although the conditions of Plaintiff's bail in the criminal case prohibit him from having any direct or indirect contact with either Ms. Gorcenski or Mr. Goad, Plaintiff has engaged in a pattern of conduct wherein he identifies, targets, and harasses Defendants on his blog, on social media, and in his podcast, sending clear, if somewhat veiled instructions to his supporters that they should seek out, harass, intimidate, and threaten Defendants in lieu of Plaintiff being able to do so himself. These instructions often facilitate this harassment by providing explicit directions to Defendants' social media profiles.

26.     The following paragraph  27 contains examples of these statements and conduct, each of which was made with the intent to intimidate and harass Defendants, and to place Defendants in reasonable fear of death or bodily injury, or which Plaintiff knew or should have known would intimidate or harass Defendants and place Defendants in reasonable fear of death or bodily injury, and which has in fact placed Defendants in reasonable fear of death or bodily injury.[4]

27.     Each of the following examples was also made to deter, by intimidation or threat,

---

efforts, no additional victims have come forward to cooperate in Plaintiff's case or to report other cases.  On information and belief, this is due in large part to the threat of harassment and intimidation from Plaintiff and his confederates.

[4] Defendants/Counter Claimants Gorcenski and Goad allege herein allege facts demonstrative of an ongoing pattern of behavior by Cantwell and his confederates that is explicitly intended to target and frighten them. The facts alleged speak to the reasonableness of their fear; the reasonableness of their fear need not be separately alleged.  Furthermore, the question of reasonableness is a fact determination to be made by a jury, and not a question of law that can be effectively reduced to writing.

Defendants from testifying in the criminal proceedings against Plaintiff and/or to seek retribution against Defendants for their having attended and testified at the preliminary hearing in the criminal proceedings against Plaintiff:[5]

a) In an interview Plaintiff gave to The Daily Beast, which was recounted in an August 30, 2017 article titled "'Crying Nazi' Says He's Just a 'Goddamn Human Being'" (see **Exhibit A**), Plaintiff claimed that Ms. Gorcenski was not qualified to testify in court because she's "a fucking tranny".

b) In a podcast published on October 19, 2017,[6] Plaintiff made statements again admitting to the intentional physical contact and physical injury he perpetrated against Defendants and other counter-protesters on the evening of August 11. In statements where the context made clear such were directed towards and intended to be heard by  Defendants for the purpose of threatening, harassing, and/or

---

[5] In Plaintiff's brief on his Motion to Dismiss Defendant's initial counterclaims (Dkt. No. 13, Part II), Plaintiff's counsel seems to suggest that because many of the following involve "mere" speech, caricatures, or "parody" songs, they are categorically exempt from being taken seriously as threats.  We would hasten to remind him that the context in which these "mere" statements, sketches, and putatively innocuous songs are being produced is not confined to a world of fantasy or cartoon violence.  Nor are they the kinds of expressive activities clearly sheltering under the protections of the First Amendment.  Rather, each instance of conduct constitutes a credible threat.  Many explicitly invoke actual harm done to each of the counter-plaintiffs and people ideologically aligned with them, calling for copycat attacks and attempting to make a real-world meme of bias-motivated vehicular homicide.  Many of these threats issue from the keyboards and mouths of individuals who derive significant income from the sale of English translations of Adolf Hitler's *Mein Kampf*, and who make their living calling for the creation of a white ethno-state which will grant "licenses" to "Right Wing Death Squads."  Each threat issues not from an animated rabbit with no material presence in the real world, but from people who long for the genocidal episodes of our too-recent past, and who exhort their followers to actual violence, apparently to great effect, given the number of murders committed by members of the so-called Alt Right since 2016.  See Carless, Will and Sankin, Aaron, "The Hate Report:  43 alt-right murders in four years," *Reveal, from the Center for Investigative Reporting*, Feb. 9, 2018, available at https://www.revealnews.org/blog/the-hate-report-43-alt-right-murders-in-four-years/ (accessed March 20, 2018).  To deride as equally unreasonable the fears of Counter Claimants in the face of these threats—however brightly colored or Christmas-themed—and the fear of an imaginary cartoon-viewer for the "life" of Elmer Fudd, brings the universe of false equivalencies to a new low.

[6] On information and belief, Plaintiff was incarcerated at the Albemarle County Regional Jail when he recorded this podcast. During the time when he was incarcerated, Plaintiff recorded podcast episodes via telephone from the jail, which were published to his website under the title "Live from the Inside."

intimidating them, Plaintiff stated[7]:

> *"I let my anger build up. Put me anywhere and I will improve because I'm a white man and not some kike fucking degenerate. Sorry for the f. Lock me up it's not bad, I can handle I wasn't crying because I was afraid of jail.* **I was brought to tears by what's going to happen to my enemies and the fact that I'm going to do it to them.** *I want to be a good person, I don't want to hate. I want to love people, I want peace and nonviolence, but you can tell my defensive instinct. If you attack the people and things I care most about and I feel the monster inside me as the Saxon begins to hate and I become afraid of myself. Do you know the last time I actually hurt somebody was? Before August 11th? Because I don't. It's been years.* **What scares the shit out of me is how much I enjoyed physically removing all your fag ass friends**.*"* (emphasis added)

<u>See</u> Answer (Dkt. 9), Exhibit F, "LIVE from Seg! Ep. 011 - Heteronormative" published on October 19, 2017 by the Plaintiff and his agent Jared Howe, https://radicalagenda.com/2017/10/19/live-seg-ep-011-heteronormative/, accessed on February 9, 2018.

c) In blog posts, podcasts, media interviews, and through social media, Plaintiff has repeatedly referred to, and continues to refer to Ms. Gorcenski using violent, derogatory language that demonstrates a vitriolic, derogatory animus towards her and other transgender people, including referring to Ms. Gorcenski as a "tranny lunatic", and "that tranny fucking fanatic, that suicide waiting to happen."

d) On November 10, 2017, the webmaster for Plaintiff's website (or another person acting at Plaintiff's direction or under his supervision) posted a video of Mr. Goad to Mr. Cantwell's Youtube channel and blog along with Mr. Goad's name, noting

---

[7] Although Ms. Gorcenski, Mr. Goad, and their counsel would prefer not to reproduce or amplify the violence of Plaintiff's bigoted language, in the interest of maximum transparency Plaintiff's language will be reproduced herein verbatim when necessary.

that Mr. Goad was "Cantwell's accuser", for the apparent purpose of encouraging Plaintiff's audience members and followers to harass, threaten, and intimidate Mr. Goad.

e) On a blog post dated August 22, 2017, Plaintiff allowed a commenter to post a comment referring to Ms. Gorcenski by name, in which the commenter called her "a tranny faggot (mentally ill by definition)", posted her home address, and stated that "Someone should go talk to it", in an effort to incite others to harass, threaten, intimidate and/or physically harm Ms. Gorcenski's person or property. Despite having the ability as a moderator to remove it, Plaintiff has allowed the threatening comment to remain on his blog at least up through the date of this filing.

f) In a blog post dated December 10, 2017, Plaintiff published a song to his blog, together with clearly identifiable photos of Mr. Goad and Ms. Gorcenski, titled "Gassing Kikes and Trannies" (See **Exhibit B**), in an effort to harass, threaten, or intimidate and/or encourage others to harass threaten, or intimidate Mr. Goad and Ms. Gorcenski. The song included the following lyrics:

> "A tranny is a fuckin mental patient
> A Jew is born to parasite to whites
> And if you see the both of them a droppin
> You know it's time to really celebrate
>
> Well we're gassing kikes and trannies
> Make the God Emperor proud
> We can laugh with glee, while she stands and pees
> In a caustic OC cloud
> ....
> You might say we're violating rights now
> But trannies aren't human after all
> Jews are victims even if you don't spray
> So might as well have fun and gas them all
>
> Oh we're gassing kikes and trannies

11

> *Cause we'll be prosecuted even if we don't*
> *They always lie, so they deserve to die*
> *The least we can do is make their eyes hurt"*

g) Plaintiff published to social media two drawings depicting apparent caricatures of anti-racist protesters, including one person who was clearly intended to represent Ms. Gorcenski, being run over and dismembered by a Dodge Challenger, in apparent homage and twisted, violent reverence to the white supremacist terrorist car attack that took place in Charlottesville, VA on August 12, 2017, murdering Heather Heyer and leaving dozens severely wounded. See **Exhibit C**. In the drawings, a cartoon frog (a version of the white supremacist meme "Pepe the Frog") leans from the window of the car to deploy a large firearm against counter protesters. A caricature of Ms. Gorcenski, terrified and pleading to livestream viewers for assistance, is depicted being run over by the car.

28.   Plaintiff has also made and published numerous online statements, through his website, his podcast, and on social media, specifically directed towards attempting to harass, threaten, intimidate and/or deter Ms. Gorcenski and/or Mr. Goad from testifying in the pending criminal proceedings. In these postings, publications, and recordings, Plaintiff has directly referenced or alluded to Defendants' roles as witnesses in the criminal proceedings. In some posts, Plaintiff refers to Ms. Gorcenski by name, and in others he clearly refers to Ms. Gorcenski and/or Mr. Goad through use of derogatory slurs (e.g., "tranny", "faggot", "kike", or referring to Ms. Gorcenski's status as a transgender woman as a "mental illness" whose identity is a "lie") or by referring to them as "antifa" or his "enemies". In addition, Plaintiff appears to particularly relish harassing Ms. Gorcenski by referring to her by her former name ("Edward"), knowing that this is not her real name, and that referring to her by her former

12

name is a form of harassment.[8]

29.    Plaintiffs online statements often focus on his false, unfounded, and defamatory accusations that Defendants have committed perjury in testifying against him in his criminal proceeding.  In addition to the defamatory nature of such false accusations, Plaintiffs posts repeatedly allude to threats that Defendants will be prosecuted for perjury if they continue to cooperate with the criminal proceedings against Plaintiff by testifying as witnesses against him.  Such threats are intended to threaten, harass, or intimidate Defendants, and/or to induce others to do so, for the purpose of deterring them from testifying in future court proceedings against Plaintiff.

30.    Examples of such statements and conduct include the following:

a)  A Gab[9] stating: "Hello enemy stalker.  Your entire life is a lie, and you will soon be punished for your sins."  This is an obvious reference to, and threat against, Ms. Gorcenski.

b)  Numerous Gabs where Plaintiff posts screen shots of Ms. Gorcenski's twitter feed, accompanied by derogatory, insulting, and/or threatening commentary.  For example, Plaintiff reposted a Tweet by Ms. Gorcenski (which included her image and Twitter handle) where she states "Nazis lie about everything except their desire and capacity for violence", and added the statement "As opposed to trannies, who

---

[8] See e.g. Clements, KC (medically reviewed by Janet Brito, PhD, LCSW, CST), "What is Deadnaming?", *Healthline*, October, 19, 2017, available at www.healthline.com/health/transgender/deadnaming (accessed on March 15, 2018)(explaining that the act of referring to a transgender person by their former name (often referred to as their "deadname") "can cause stress, it can also subject that person to harassment and discrimination.")

[9] Like Twitter, Gab is an online news and social networking service where users post and interact with messages.  Many white supremacists and white nationalists, including Plaintiff, have begun using the Gab platform in recent months as they are banned from Twitter and Facebook for violations of the policies against hate speech on those platforms.  Posts to the Gab forum are referred to as "Gabs".  Copies of the Gabs reference in Paragraph 36 are provided at **Exhibit D**.

13

lie about everything including their gender, AND their desire and capacity for violence." By reposting Ms. Gorcenski's tweets with harassing commentary, Plaintiff was implicitly directing, and continues to direct, his followers and supporters to visit Ms. Gorcenski's Twitter feed to harass her.

c) A Gab where Plaintiff states: "It's not witness intimidation when we're the witnesses, you lying mental patient. Get your affairs in order now, because it is exceedingly difficult to manage these things from jail when you haven't prepared in advance." This was an obvious reference to Ms. Gorcenski, to whom Cantwell has routinely referred using the words "lying" and mental patient," in retaliation for the witness intimidation counterclaim that was included in Defendants' initial Answer to Plaintiff's Complaint (and is restated in these Amended Counterclaims, below).

d) A Gab where Plaintiff states: "Give it up faggot, it's not a violation of my bail conditions to have opinions. You're going to men's prison for perjury." This was an obvious reference to Ms. Gorcenski, and occurred shortly after Plaintiff had presumably been informed by his attorney that the Commonwealth's Attorney believed Plaintiff's indirect online harassment of her to constitute a violation of Plaintiff's bail conditions.

e) One of the replies to Plaintiff's Gab referenced in subparagraph (d), by user "Nathaniel Wagner" states "That's not enough of a punishment, because we all know Edward is the kind of degenerate who would enjoy having a train run on him in prison by real men." The user's Gab demonstrates that Plaintiff's followers have joined in on his campaign of harassment and intimidation against Defendants.

f) A Gab where Plaintiff re-posted to his followers a statement by a user with the

14

handle "Eric the Awful", where the user stated: "I got a zuck just for using the word "tranny".  I called that Emily tranny that lied about @Cantwell a "tranny fag thing" in a comment in a closed group, and got zucked for it."[10]  This Gab demonstrates that Plaintiff's social media followers have, in fact, taken Plaintiff's thinly veiled cues to target and harass Ms. Gorcenski and Mr. Goad.  Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining in the harassment campaign, by reposting and publicizing their comments to his followers.

g) A Gab where Plaintiff re-posted to his followers a statement made by a user with the handle "Ted Colt", where the user stated: "@Cantwell please ask judge to force genetic testing to ascertain sex & race, & confirm by medical examination that sexual reassignment surgery is complete." The user's Gab demonstrates that Plaintiff's followers have joined in on his campaign of harassment and intimidation against Defendants.  Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining in the harassment campaign, by reposting and publicizing their comments to his followers.

h) In the same Gab reposted by Plaintiff referred to in subparagraph 36 above, Plaintiff also reposted a sub-Gab where a user named "GoDaddy" had highlighted a portion from the Answer in this case where counsel for Defendants requested that this Court honor and enforce the use of gender-appropriate language when referring to Ms. Gorcenski; user "GoDaddy" added the vulgar commentary "These fucking kikes,

---

[10] The term "zuck" is a white supremacist term referring to Facebook's policy of suspending or banning users who violate its policies against engaging in hate speech on the platform.

15

holy shit @cantwell", which was also reposted by Plaintiff.  While it is unclear whether the anti-Semitic slur was in reference to Defendants, their counsel, or both, Plaintiff's approval through re-posting demonstrates anti-Semitic animus.  The user's Gab demonstrates that Plaintiff's followers have overtly joined in on his campaign of harassment and intimidation against Defendants.  Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining in the harassment campaign, by reposting and publicizing their comments to his followers.

i)   A Gab where Plaintiff stated (in reference to a public tweet by Ms. Gorcenski about traveling overseas): "Gorcenski skipping the country again? Could it be that the many inconsistencies in her sworn statements, and testimony are finally coming to light for some prosecutor preparing for a big trial? A prosecutor who has proven willing to charge people with perjury, perhaps? Hrmmm…"  This Gab continues Plaintiff's pattern of inciting his followers and supporters to harass Defendants by propagating the false claim that Defendants have committed perjury.

j)   A Gab where Plaintiff reposted a Tweet from Ms. Gorcenski's account (which included her image and Twitter handle) which stated "A lot of people over the past year oe [sic] so have asked me when the right time to leave the country is.  Now.  It's now."  In his repost, Plaintiff celebrated the fact that white supremacists had so terrorized Ms. Gorcenski into considering leaving the country by adding the commentary "#MAGA" (a popular white supremacist reference to now-President Donald Trump's campaign slogan, "Make America Great Again").  This celebratory Gab demonstrates that Plaintiff is celebrating the fact that the campaign of

16

harassment he and his followers have waged on Ms. Gorcenski has been so effective as to cause her to consider leaving the country.

k)  Plaintiff reposted one of the replies to the Gab referenced in subparagraph (i), by user "Jennifer Scharf," which contained a meme celebrating the idea that Plaintiff and his followers were "Causing [Their] Enemies" to Self-Deport."  This reply further demonstrates that Plaintiff's followers were joining in on, and reveling in the harassment campaign against Defendants.  The user's Gab demonstrates that Plaintiff's followers have overtly joined in on his campaign of harassment and intimidation against Defendants.   Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining in the harassment campaign, by reposting and publicizing their comments to his followers.

l)  A post to Plaintiff's blog, dated February 16, 2018, in which Plaintiff (bizarrely) blames Ms. Gorcenski for the fact that commercial a credit card payment processor, Stripe, began refusing to process payments for the fundraising site Maker Support, because of that site's support for organized neo-Nazis and white supremacists.  See **Exhibit E**.  In the post, Plaintiff refers to Ms. Gorcenski as "Emily Gorcenski, a mentally ill liar who committed perjury to have me arrested for crimes which never occurred," and states that Emily's "real name is Edward, and he is pretending to be a woman."  This post was particularly harmful to Ms. Gorcenski, who works for a financial technology company; the false allegations contained in the blog of dishonesty or improper conduct in relation to the field of financial technology could be potentially damaging to her professional career and employment opportunities.

m) A Gab where Plaintiff re-posted to his followers a Gab from user "CapitalOne" which

17

stated (in apparent reference to the immediate case): "I hope that faggot tranny has some kind of assets to seize or at least if @cantwell wins he can garnish that freak's wages to help fund the creation of the Emily Gorcenski Center of Appreciation for Adolf Hitler." The user's Gab demonstrates that Plaintiff's followers have overtly joined in on his campaign of harassment and intimidation against Defendants. Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining in the harassment campaign, by reposting and publicizing their comments to his followers.

n) A Gab where Plaintiff reposted two tweets from Ms. Gorcenski's account (which included her image and Twitter handle) about Valentine's Day, adding the commentary "Happy VD from Clown World!"

o) One of Ms. Gorcenski's humorous Valentine's Day tweets reposted by Plaintiff, referred to in the preceding subparagraph (n), said "Let 2018 be the year you go gay and minimize your exposure to terrible dudes." In response to Plaintiff's reposting of Ms. Gorcenski's tweet, Gab user "Cryptonazi" posted about Ms. Gorcenski in another Gab, stating:

> *Straight from the horse's mouth, being gay is a choice and one can simply "go gay" if they chose to. Thanks for clarifying that Edward! Of course this means that the converse is also true and fags can simply be made to "go straight" if social pressure to cast out degeneracy increases.*

Plaintiff reposted Cryptonazi's reply to Plaintiff's Gab followers. The user's Gab demonstrates that Plaintiff's followers have overtly joined in on his campaign of harassment and intimidation against Defendants. Plaintiff's reposting of the user's Gab demonstrates that Plaintiff has "rewarded" some of his supporters for joining

18

in the harassment campaign, by reposting and publicizing their comments to his followers.

p) A Gab where Plaintiff posted an image of a noose and a stop watch, containing text (written in a font that resembled blood dripping from the letters) which read "Time is running out antifa.  Tick Tock."  This Gab was an overt threat directed toward, *inter alia*, Ms. Gorcenski and Mr. Goad, whom Plaintiff has stated repeatedly (online and in the Complaint) that he believes to be "ANTIFA" [*sic*].

q) A Gab where Plaintiff stated: "Your twitter accusations don't matter to the FBI, faggot.  You should have kept it local instead of importing your Philly pals.  You're going to a men's prison."[11]  This is a clear reference to Ms. Gorcenski, and yet another example of his pattern of accusing Ms. Gorcenski of perjury, and threatening that she will be sent to "men's prison" and the horrifying reality that transgender inmates face extremely high rates of assault and sexual violence in prison as a way to threaten and intimidate her.  As described below, Plaintiff has even gone so far as to carry the "men's prison" theme of harassment into the papers filed in this Court.  See ¶ 52, below.

r) A Gab where Plaintiff stated (in apparent reference to his expectation of monetary gain from the present case): "Someday soon I will say "And we are coming to you live, from the Eddie Gorcenski studio where...""  This was an overt reference to Plaintiff's intentional and frivolous use of this Court and the case at bar to harass,

---

[11] Plaintiff's reference to "your Philly pals" appears to allude to a theory by Plaintiff that Ms. Gorcenski coordinates or has coordinated with activists from Philadelphia in opposing white supremacy, including on August 11.  At the time Plaintiff posted this Gab, Plaintiff and other white supremacists were particularly incensed by the fact that anti-fascist activists from Philadelphia had recently discovered and disclosed the identity of Plaintiff's friend and fellow white supremacist Daniel W. McMahon of Brandon, FL, who had been operating online under the pseudonym Jack "Pale Horse" Corbin.

intimidate, and threaten Defendants.

s) A Gab where Plaintiff reposted a Tweet from Ms. Gorcenski (which included her image, Twitter handle, and a direct link to her Twitter profile) in which Ms. Gorcenski stated that she was not impressed with the Gab platform, and Plaintiff added the commentary: "Gorcenski made a Gab account, and she apparently doesn't like the interface much. Too bad, I think it would be fun to see her post here often." User "C.B." replied to Plaintiff's post stating: "can we all mass post we are promoting tranny death penalty laws and watch the fun unfold." User "GOY Rodef" replied to Plaintiff's post stating "Should be fun keeping that freak of nature's [Gab] score at -1488."[12] The user's Gab demonstrates that Plaintiff's followers have overtly joined in on his campaign of harassment and intimidation against Defendants, and have celebrated doing so.

t) A Gab where Plaintiff stated: "The thing is, I don't feel any better calling that fuckin freak a man, and I was never able to figure out the gender neutral they/them thing when it came to singular entities. This is why we just need to have them executed at taxpayer expense." This was a clear reference to Ms. Gorcenski, and a threat and/or an attempted incitement to violence against her.

u) A Gab where Plaintiff stated: "I've been doing a lot of thinking about transgender rights lately, and I can only come up with one. Assisted suicide." This was a clear

---

[12] "1488" is an apparent reference to the white supremacist "14 words" slogan ("We must secure the existence of our people and a future for white children.") and the white supremacist code "88" used to refer to "Heil Hitler" (8 representing the letter "H" as the eight letter of the alphabet). The reference to Ms. Gorcenski's "score" refers to Gab's user ranking system, whereby the platform awards a use one "Frog Point" every time someone else upvotes the user's content, and subtracts one point every time someone else downvotes the user's content. Achieving a higher Gab score is seen as desirable by Gab users, and unlocks certain additional functionalities on the platform.

reference to Ms. Gorcenski, and a threat and/or an attempted incitement to violence against her.

v) At one point after Ms. Gorcenski had temporarily changed the privacy settings on her Twitter account to make her Tweets private, due to the influx of white supremacist online harassment she was experiencing, Plaintiff posted a Gab which stated "Day 2 that Emily Gorcenski's tweets are private. What are you hiding, Eddie? (Hint: I already know, and it's not looking good for you)." This Gab was directed toward Ms. Gorcenski with the intent to intimidate her, to make sure she knew that Plaintiff was monitoring her Twitter feed, and served also as a signal to Plaintiff's followers to harass Ms. Gorcenski on Plaintiff's behalf.

w) The replies to Plaintiff's Gab described in subparagraph (v) included a variety of transphobic and vulgar insults and threats against Ms. Gorcenski. One of the replies, from user "Bovine X", stated: "No Idea Who This [Ms. Gorcenski] Is But I'm Game To Learn." Another reply, from user "OffensivelyOpenminded", stated: "They're not private anymore. *I tweeted this video to him, lol" along with a link to a video that the user had tweeted to Ms. Gorcenski. These replies demonstrate that Plaintiff knew or should have known that his followers were interpreting his Gabs about Ms. Gorcenski as a signal or instruction for them to seek out, target, harass, threaten, and intimidate Ms. Gorcenski and/or Mr. Goad online, that Plaintiff's followers were in fact doing so, and that Plaintiff was aware of that fact.

x) A Gab by Plaintiff stating: "When I watch people lie, and I have proof that they are lying, but I have to wait to show the proof while they continue lying, my time preference skyrockets beyond that of a crack crazed negro and I just chimp the fuck

21

out in front of my computer." This Gab was a clear reference to Plaintiff's false accusations that Defendants have committed perjury, and a threat that he is impatiently waiting to retaliate against her for this (entirely imagined) trespass.

y) A Gab by Plaintiff stating that "Trannies need to be extra careful to obey the law. When they commit perjury, or other crimes, they go to the prison they were born for, not the one they wanted." This Gab links to an article about Texas' policies regarding transgender prisoners. This Gab was a clear reference to Ms. Gorcenski, and reiterates Plaintiff's false accusation that she has committed perjury; it is yet another example of Plaintiff's "men's prison" line of harassment.

31.   On or about February 12, 2018, Plaintiff also "followed" Ms. Gorcenski on Gab, to be able to view her Gabs automatically in his feed. As users of the platform know, Ms. Gorcenski received a notification when Plaintiff followed her, thus creating an indirect contact from Mr. Cantwell to Ms. Gorcenski, intending to intimidate her by sending her the message that he was monitoring her Gabs.

32.   Plaintiff has made numerous similar harassing and threatening statements about Defendants on his podcast. Examples include:

a) In Episode 28, Plaintiff stated "I try to monitor a Twitter feed of a certain mental patient" to try and find information useful for his criminal case. This was a clear reference to Ms. Gorcenski, intended to intimidate her, and a signal to Plaintiff's supporters that they should monitor Ms. Gorcenski's Twitter feed as well.

b) In episode 29, Plaintiff referred to Ms. Gorcenski as a "mentally ill degenerate who recently committed perjury", a "man in a dress", and "a tranny degenerate and his lies", and made a statement presumably directed at the Commonwealth's Attorney

22

that "your witnesses are lying and if you put them on the stand you're committing a crime." In Episode 29, Plaintiff also threatened that "I will make everyone involved in this [the criminal case against him] pay," and warned that those cooperating in the criminal case against him: "do not underestimate my willingness to risk life, limb, and liberty," suggesting that he is prepared to violate the law in the service of his vendetta.

c) In Episode 38, a caller into Plaintiff's podcast asked Plaintiff if he was "going to have anybody make sure [Ms. Gorcenski] has a hard time making it to court." Plaintiff instructs the caller and his listeners not to talk "like that" on the show because Plaintiff believes he is being listened to by the FBI. In this Episode, Plaintiff also threatens that he is privy to "information" about Defendants and others that he can't share at this time, "but these guys have some consequences coming to them," and that "a lot of these leftists are gonna be in jail."

33. When Plaintiff has posted these statements, Ms. Gorcenski has documented an immediate noticeable increase of on-line harassment from white supremacists, particularly after the instances in which Plaintiff has posted screen shots from Ms. Gorcenski's own social media feed, which direct Plaintiff's followers to Ms. Gorcenski's social media profiles, and serve as a thinly veiled signal to his followers for them to harass her. On information and belief, to be further documented in discovery, all or most of this additional on-line harassment is from individuals who either know Plaintiff personally or follow him on social media and/or his blog.

34. Plaintiffs harassing, threatening, and intimidating statements and conduct were directed at, variously, Ms. Gorcenski, Mr. Goad, or both. They were made with the intent and

expectation that Defendants would see them (either directly, because it is wise to monitor people who actively call for violence against you, or indirectly, because another concerned person could be expected to alert Defendants to the threatening and harassing nature of the content), and with the intent and expectation that Plaintiff's supporters would take their cues from the content of the posts in order to directly harass, threaten and intimidate Defendants on behalf of Plaintiff.  There is no other plausible explanation for the volume and intensity of Plaintiff's threatening, harassing, and intimidating posts and statements.

35.    Plaintiff's harassing, threatening, and intimidating statements and conduct, and the harassing, threatening, and intimidating statements and conduct of his followers at Plaintiff's suggestion, have had, and continue to have, the effect of putting Defendants in reasonable fear of bodily harm or death.

36.    On October 8, 2017, Ms. Gorcenski was the victim of what is known as a "swatting" attack—a harassment and/or attempted murder tactic where the harasser makes a false police report, usually of an urgent or violent crime, with the intention of luring law enforcement or SWAT to an address to harass, intimidate, injure, or murder the    targeted    individual.    In this instance, an unknown individual called the Charlottesville Police Department and falsely reported a violent domestic disturbance in progress at Ms. Gorcenski's house, prompting an urgent police response. On information and belief, to be further documented in discovery, the person instigating the "swatting" attempt was motivated by Cantwell's online harassment and incitement of his followers to violence against Ms. Gorcenski.

37.    Because Plaintiff admittedly monitors Ms. Gorcenski's Twitter account, and Ms. Gorcenski tweeted about the swatting attempt, Plaintiff was aware of the swatting attempt and that Ms. Gorcenski believed it to be connected to her online harassment by Plaintiff and

24

his followers.  Thus, even if Plaintiff himself was not involved in or connected to the swatting attempt, he knew or reasonably should have known that his continued threatening, harassing, and statements and posts about Ms. Gorcenski after the date of the swatting attempt: a) would put Ms. Gorcenski in reasonable fear of death, or bodily injury to themselves or to their family members or household members; and b) would be reasonably likely to incite his followers to further attempts at violence, threatening conduct, intimidation, and/or harassment against Ms. Gorcenski and Mr. Goad.

38.   For each harassing statement or image that was published to, or intended to drive web traffic to, Plaintiff's website (https://christophercantwell.com ), including the "Gassing Kikes and Trannies" song, published with photographs of Defendants, the publication was made alongside and in connection with multiple links on his website soliciting commercial business from viewers, including solicitations for monetary donations to his site, solicitations for visitors to purchase a paid membership to his website, and solicitations for visitors to purchase merchandise[13] in Plaintiff's online store.  As such, the publication of such statements and the use of Defendants' names and photographs were made for purposes of Plaintiff's advertising or trade, in order to drive more web traffic to Plaintiff's website and/or to solicit monetary donations, paid memberships, and the purchase of Plaintiff's merchandise from his website.

39.   Because of the fear instilled in Ms. Gorcenski by Plaintiff's conduct, prior to the November 9 preliminary hearing in Plaintiff's criminal case, and at Ms. Gorcenski's urging, the Commonwealth's Attorney made a motion for a protective order to prohibit Plaintiff from

---

[13] The merchandise available in Plaintiff's store includes t-shirts and other apparel featuring the logo of Mr. Cantwell's website, bumper stickers with slogans such as "Physically Remove Democrats", "I [heart] Physical Removal", and "It's Okay to Be White," and an English translation of Adolf Hitler's *Mein Kampf*.

25

engaging in harassing, intimidating, or threatening conduct towards Ms. Gorcenski.   Ms. Gorcenski was given no notice that this motion would be decided at the November 9 preliminary hearing, nor was she told that she would be asked to produce evidence of this conduct at that hearing.  Because of this, the motion for a protective order was denied on that date due to lack of evidence of the threat against Ms. Gorcenski.  However, the conditions of Plaintiff's bail prohibit him from having any direct or indirect contact with Ms. Gorcenski or Mr. Goad.

40.   Plaintiff's conduct violates his bond condition forbidding any direct or indirect contact with Ms. Gorcenski or Mr. Goad.  Out of fear for her safety, Ms. Gorcenski has been documenting the above conduct and periodically reporting it to the Albemarle County Commonwealth's Attorney's Office.   Ms. Gorcenski has also reported threats to the Charlottesville Police Department and the Charlottesville Commonwealth's Attorney's Office in order to seek protection from these threats through the proper channels.  On information and belief, on or about March 13, 2018, the Albemarle County Commonwealth's Attorney's Office filed a motion for a modification of Plaintiff's bond conditions and/or for violation of Plaintiff's bond based at least in part on some or all of the conduct described herein.

41.   Plaintiff's conduct was directed towards Defendants in that he: 1) followed Ms. Gorcenski on Gab, which he knew would generate a notice to her; and 2) posted and publicized, or allowed to be posted and publicized, Defendants' names and images to his followers on numerous occasions, thereby signaling to and inciting his followers to engage in harassment and intimidation of Defendants.

42.   In addition to Plaintiff's own conduct, individuals known to be closely associated with Plaintiff, believed to be working in coordination with Plaintiff, have engaged in direct

26

harassment, threatening conduct, and intimidation of Ms. Gorcenski online.  One noteworthy example is David Rotter, who testified as a defense witness at Plaintiff's preliminary hearing in the criminal case, and who is believed to be a close associate of Plaintiff's.  Ever since Plaintiff's arrest, and with increasing frequency after he and Ms. Gorcenski both testified at the preliminary hearing, Mr. Rotter has posted dozens of harassing, threatening, and intimidating messages to Ms. Gorcenski's Twitter timeline, including tweets in which he repeatedly accuses Ms. Gorcenski of making false statements under oath (mirroring Plaintiff's claims).  Notably, one Tweet also uses the phrase "Clown World" to refer to Ms. Gorcenski, which is identical to the phrase used by Plaintiff in the Gab described in Paragraph 30(n), supra. Examples of Mr. Rotter's tweets to Ms. Gorcenski are reproduced in **Exhibit F**.

43.    Jason Kessler, the white supremacist who is credited with having orchestrated the "Unite the Right" rally on August 12, and who is known to be a close associate of Plaintiff's, posted a video of Mr. Goad to Facebook shortly after Plaintiff was arrested.  The post stated "This guy is Cantwell's accuser.  He appears to be a serial harasser of Confederate monument supporters.  Please give me more information on him."  In the replies to Kessler's post, one Facebook user "Chip Breeden" immediately threatened "F##king Punk will get that ass whipped!"  Copies of Kessler's post and this reply are reproduced in **Exhibit G**.

44.    On information and belief, Kessler's post about Mr. Goad was made in coordination and agreement (either explicit or implicit) with Plaintiff for the purpose of seeking out information that could be used to threaten, harass, and intimidate Mr. Goad, and to encourage others to threaten, harass, and intimidate Mr. Goad.

45.    Mr. Rotter's conduct, along with the conduct of the scores of other white supremacists who harass Ms. Gorcenski on Twitter and who are believed to be affiliates and/or

followers of Plaintiff, demonstrates that supporters and confederates have overtly joined in on his campaign of harassment and intimidation against Defendants.

*Plaintiff's Efforts to Abuse the Process of this Court to Further Harass Defendants*

46.   Plaintiff now seeks to enlist this Court in his continued campaign of unlawful harassment against Defendants by filing the Complaint in this Court, notwithstanding  the fact that the claims made against Defendants are utterly without merit because, *inter alia*, the criminal proceedings against Plaintiff are still pending, and, in any event, Plaintiff has not alleged sufficient facts to state a cause of action against Defendants for malicious prosecution or false imprisonment.  <u>See</u> Answer ¶¶ 127 -141; <u>see also</u> ¶¶ 4 – 22, *supra*.

47.   Plaintiff initiated these meritless proceedings while there are active criminal proceedings  pending against him in Albemarle County Circuit Court for the unlawful use of gas.  Ms. Gorcenski and Mr. Goad both testified against Plaintiff at the preliminary hearing on November 9, and have both been subpoenaed to testify against Plaintiff as witnesses for the Commonwealth at the trial on August 13.

48.   Plaintiff's intent in initiating a frivolous lawsuit against Defendants was to harass, threaten, or intimidate Defendants from testifying in the criminal trial against him, and/or to seek retribution against Defendants for filing criminal complaints and for testifying at the preliminary hearing.

49.   Furthermore, the papers filed in this case have contained passages that mirror the harassing, insulting, and threatening statements and conduct described above.  For example, Plaintiff filed the Complaint in this case under Ms. Gorcenski's former name, or "deadname",

28

and repeatedly used masculine pronouns throughout the Complaint, which Plaintiff clearly understands and intends to be a form of transphobic harassment. The transphobic, harassing purpose of deadnaming and misgendering Ms. Gorcenski in the Complaint is particularly evident in light of the fact that the Complaint *acknowledges* that Ms. Gorcenski "has changed [her] name to Emily Florence Gorcenski." The Complaint also makes the harassing, transphobic and materially false statement that Ms. Gorcenski "pretends to be a transgender woman of color."[14] See Compl. ¶ 4.

50.    The Complaint also contains bizarre, false, unfounded, and defamatory accusations against Defendants, including: a) the false and unfounded claim that Ms. Gorcenski is a " "Media relations assistant" to ANTIFA" who "believes that 'Republicans' seek to assassinate [her]" (See Compl. ¶ 4, and Answer ¶ 4); b) the false, unfounded claim that Mr. Goad "is a violent political activist" (See Compl. ¶ 5, and Answer ¶ 5); and c) the bizarre, false, and entirely confusing accusations that each of the entirely consistent statements Defendants have made in the criminal case are somehow inconsistent in a manner that rises to the level of perjury.[15]

---

[14] Ms. Gorcenski is, in fact, a transgender woman of Asian ancestry. The irony that Plaintiff, an avowed white supremacist and white ethno-nationalist, repeatedly insists that she is "white" is not lost on Defendants. It is a remarkable case study in the internal contradictions and logical unsustainability of white supremacist ideology, insomuch as it demonstrates that the construct of "race" does not have a biological basis, but is wholly a social construct that was conceived to justify chattel slavery and the trans-Atlantic slave trade, and which is maintained to justify the pernicious present-day consequences wrought by the legacies of slavery and structural white supremacy.

[15] The one factual error that has been identified in Defendants' prior statements was that, upon reviewing video of the incident with the Commonwealth's Attorney, Mr. Goad learned for the first time that he had, in fact, been affected by the pepper spray deployed by another person *in addition to* having been affected by the pepper spray deployed by Plaintiff. Upon learning of this, the Commonwealth's Attorney immediately took steps to notify Plaintiff's counsel of this new information, consistent with his ethical and prosecutorial obligation. The new information that Mr. Goad was the victim of an additional pepper spray incident on August 11 in no way mitigates Plaintiff's culpability for his own pepper spray discharge; Plaintiff's seeming insistence that it does is puzzling, at best, and materially misleading, at worst.

51.     For example, the Complaint bizarrely claims that the following three statements made by Ms. Gorcenski are inconsistent (See Compl. ¶ 55):

    a) In her initial verbal police report, Ms. Gorcenski stated that she was "sprayed in the eyes with pepper spray"[16];

    b) In her written statement to law enforcement, Ms. Gorcenski stated that she "felt the burning in my eyes of pepper spray or mace.  Soon my mucus membranes burned and I had trouble breathing.";

    c)  In her affidavit to the magistrate, Ms. Gorcenski stated "I inhaled/was affected by a chemical spray" and "the overspray affected me directly.  My eyes and sinuses were burning."

Given that the eyes and sinuses are both locations of major mucus membranes, the three statements above are entirely consistent and in no way contradictory.  See also Answer ¶ 55. Plaintiff's baffling, unfounded accusation that these statements are somehow contradictory further demonstrates that the purpose of the immediate litigation is to harass and intimidate Defendants, rather than to pursue a good faith legal claim.

52.     Similarly, a Motion for Extension of Time to File filed by Plaintiff in this case (See Dkt. No. 18, at ¶ 9) contained transphobic, harassing accusations against Ms. Gorcenski that had no bearing whatsoever on the merits or procedure of the litigation[17], but which mirrored the harassing language used by Plaintiff to describe Ms. Gorcenski on Gab, his blog, and in his

---

[16] It is unclear from the Complaint whether Plaintiff claims that this is a direct quote from Ms. Gorcenski, or a quote from the police report; it appears to be the latter.

[17] As this Court correctly alluded to in its Order denying this Motion (Dkt. No. 19), this harassing paragraph did not even serve the functional purpose of actually opposing Ms. Gorcenski's request to have this case recaptioned under her true name, as the reason not to do so was nowhere actually offered, and no objection to the requested relief was made by counsel.

podcast. The strange, harassing, transphobic paragraph stated:

> Despite his efforts to the contrary, Gorcenski is not in fact a female human being, having been born with and retaining the XY chromosome. If convicted and sent to prison in Virginia, he would go to a male prison, whether he liked it or not... Further, Gorcenski's presenting himself as a female is untruthful, mendacious, and deceptive. He is free to suffer the consequences of his decision, but has no right to force others to condone his lie.[18]

Id.  As above, the use of documents filed in this Court for the sole purpose of propagating Plaintiff's bigoted, transphobic views about Ms. Gorcenski, particularly when such documents serve no functional purpose in the litigation, further demonstrates that the purpose of the case at bar is to harass and intimidate Defendants, rather than to pursue a good faith legal claim.


_Harm to Defendants Resulting from Plaintiff's Harassing and Intimidating Conduct_

53.     As a result of Plaintiff's harassing, threatening, and intimidating conduct, Defendants have been placed in reasonable fear of death, criminal sexual assault, or bodily injury to themselves or to their family members or household members.

54.     As a result of the fear caused by Plaintiff's harassing, threatening, and intimidating conduct, Defendants have both been required to seriously reconsider whether it is safe for them, and to their family members or household members, to continue cooperating in the Commonwealth's criminal case against Plaintiff or to testify at the trial.

55.     Ms. Gorcenski and Mr. Goad have incurred, and continue to incur, substantial

---

[18] As noted by Nell Gaither, President of Trans Pride Initiative, these pseudo-scientific claims are abusive, harassing, and have no basis in human biology or psychology; instead, they are based in bias and transphobia. See Letter from Nell Gaither to Hon. Norman K. Moon and Hon. Joel C. Hoppe, dated March 2, 2018, attached hereto as **Exhibit H**.

31

damages as a result of Plaintiff's harassing and intimidating conduct, including extreme stress, emotional damages and the costs of treatment therefore, the costs of taking reasonable increased security measures to secure their persons and property from harm, the costs of attorneys' fees to advise them of their rights and obligations as victims and witnesses in the criminal trial, and the costs of attorneys' fees to defend the immediate civil action.

56.    Defendants' families and household members have also suffered, and continue to suffer, substantial stress and trauma as a result of Plaintiff's harassing and intimidating conduct, out of fear for their own safety and the safety of Defendants.

57. The stress and trauma resulting from Plaintiff's harassment and intimidation campaign against Ms. Gorcenski has become so severe that Ms. Gorcenski to has sought employment in Germany, and plans to relocate in May.

## **Defendants' Amended (First) Counterclaim Causes of Action**

*First Cause of Action – Assault*

58.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

59.    By his conduct on August 11 of intentionally deploying pepper spray in a crowded area in which Defendants were present, and in physically shoving and making contact with Defendants, Plaintiff engaged in overt acts intended to inflict bodily harm, which had the ability to inflict such harm on Defendants and others present at the statue, or, in the alternative, Plaintiff engaged in overt acts intending to place Defendants and others present at the statue in fear or apprehension of bodily harm, and did in fact create such reasonable

fear and apprehension in both Defendants.

60.    As such, Plaintiff's conduct at the statue on August 11 constituted assault against both Mr. Goad and Ms. Gorcenski, and Plaintiff is liable to both Defendants in tort for that assault. Defendants are entitled to compensatory damages, punitive damages, and reasonable attorney fees and costs.

_Second Cause of Action – Battery_

61.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

62.    By his conduct on August 11 of intentionally deploying pepper spray in a crowded area in which Defendants were present, which pepper spray did actually make unwanted contact with both Mr. Goad and Ms. Gorcenski, and in physically shoving and making contact with Defendants, Plaintiff committed unwanted touching against both Defendants which was neither consented to, excused, nor justified.

63.    As such, Plaintiff's conduct at the statue on August 11 constituted battery against Ms. Gorcenski and Mr. Goad, and Plaintiff is liable to both Defendants in tort for that battery. Defendants are entitled to compensatory damages, punitive damages, and reasonable attorney fees and costs.

_Third Cause of Action – Negligence_

64.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each

33

and every paragraph of their Answer to the Complaint, as if fully restated herein.

65.    By his conduct on August 11 of intentionally deploying pepper spray in a crowded area in which Defendants were actually present, which pepper spray did actually make unwanted contact with both Mr. Goad and Ms. Gorcenski, causing each of them to suffer physical and emotional harm from the effects of the pepper spray and the trauma of the incident, Plaintiff failed to exercise the reasonable care expected of a person of ordinary prudence in such a situation.

66.    As such, Plaintiff was negligent in intentionally deploying the pepper spray in a crowded area, and such negligence was the proximate cause of physical and emotional injury to Defendants.  Plaintiff is liable in tort to Defendants for the injury caused by his negligent conduct.    Defendants are entitled to compensatory damages, punitive damages, and reasonable attorney fees and costs.

_Fourth Cause of Action – Stalking_

67.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

68.    By his conduct in having engaged and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described in the preceding paragraphs, Plaintiff, on more than one occasion has engaged and continues to engage in conduct directed at Defendants with the intent to place, or which he knows or reasonably should know places, Defendants in reasonable fear of death, criminal sexual assault, or bodily injury to Defendants or to their other families or household members in violation of Virginia Code § 18.2-60.3.

69.    Defendants have incurred actual physical, monetary, and emotional damages as a result of Plaintiff's stalking, and are entitled to an injunction, and to compensatory and punitive damages pursuant to Virginia Code § 8.01-42.3.

### *Fifth Cause of Action – Unlawful Use of Names & Photographs*

70.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

71.    By his conduct in having engaged and continuing to engage in the pattern of harassing, threatening, and intimidating conduct described above, Plaintiff has knowingly published and otherwise used the names, photographs, and likenesses of and references to Ms. Gorcenski and Mr. Goad for the purposes of trade—specifically for the purpose of increasing traffic to his website and encouraging visitors to his website to make monetary donations, purchase paid memberships, or purchase merchandise from Plaintiff's website.

72.    This publication and use occurred without the written consent of either Ms. Gorcenski or Mr. Goad and in violation of Virginia Code § 8.01-40.

73.    Defendants have incurred actual damages as a result of Plaintiff's unlawful use of their names, pictures, and likenesses and are entitled to a restraining order as well as compensatory and punitive damages pursuant to Virginia Code § 8.01-40.

### *Sixth Cause of Action – Harassment & Violence Motivated by Cantwell's Racial, Religious, & Ethnic Animus toward Ms. Gorcenski and Mr. Goad*

74.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each

35

and every paragraph of their Answer to the Complaint, as if fully restated herein.

75.     By his conduct in having engaged in violence against Defendants on August 11, and in having engaged in and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described above, Plaintiff has targeted Ms. Gorcenski and Mr. Goad for the violations of law alleged in the previously stated causes of action based on Plaintiff's perception of Defendants' racial, religious, or ethnic backgrounds, and/or based on his perception of Defendants' sympathies and solidarity with people of racial, religious, or ethnic backgrounds which Plaintiff deems to be inferior.  A self-avowed white nationalist, Plaintiff was motivated to engage in this activity by his own racial, religious, ethnic animus in violation of Virginia Code § 8.01-42.1.

76.     In addition, Plaintiff's repeated use of anti-Semitic and racist slurs and language in the course of his harassment campaign (e.g., repeated references to Defendants as "kikes" or as working at the direction of "the Jews") demonstrates that Plaintiff's harassment and intimidation of Defendants has been motivated by Plaintiff's racial, religious, or ethnic animosity, based on either his perception of Defendants' identification with a particular racial, religious, or ethnic group, and/or based on his perception of Defendants' sympathies and solidarity with people with people of racial, religious, or ethnic backgrounds which Plaintiff deems to be inferior.

77.     Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff for this intimidation and harassment, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to Virginia Code § 8.01-42.1.

*Seventh Cause of Action - Conspiracy to Interfere with Civil Rights: Obstruction of Justice,*
*Witness Intimidation*

78.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

79.    The Plaintiff has conspired explicitly and/or tacitly with one or more other persons and entities whose identities are known and unknown to Ms. Gorcenski, including but not limited to Jason Kessler, David Rotter, Daniel McMahon, Corey Mahler, Zyniker Law, William Fears, all persons and entities (known and unknown) acting as agents of the Plaintiff through creation, posting, promotion and/or maintenance of content on the Plaintiff's blog, podcast, social media accounts, and all persons and entities (known and unknown) who support, encourage, and contribute to the Plaintiff's actions against Ms. Gorcenski via fundraising, promotion, donation of money, goods, and labor to deter Ms. Gorcenski from testifying against the Plaintiff in the criminal matter currently pending against the Plaintiff in Albemarle County, Virginia. The agreement between the Plaintiff and his co-conspirators is ongoing.

80.    The object of the agreement between the Plaintiff and his co-conspirators is to retaliate against Ms. Gorcenski for testifying against the Plaintiff and to deter her from testifying and cooperating in the future.

81.    The means used by the Plaintiff and his co-conspirators to deter Ms. Gorcenski from acting as a witness and testifying include (but are not limited to) posting of Ms. Gorcenski's home address, posting pictures of Ms. Gorcenski without her consent or authorization, communication regarding Ms. Gorcenski's whereabouts and activities, posting and endorsement of images depicting Ms. Gorcenski's death, repeated references to "tranny degenerates," disseminations of articles and opinion pieces depicting transwomen such as Ms. Gorcenski as "degenerates," "faggots," and the filing of the complaint in this matter, amongst

other acts.

82.     The Plaintiff and his co-conspirators hold a deep animus toward Ms. Gorcenski because she a queer trans woman of color.

83.     The Plaintiff has conspired explicitly and/or tacitly with one or more other persons and entities whose identities are known and unknown to Mr. Goad, including but not limited to Jason Kessler, David Rotter, Daniel McMahon, Corey Mahler, Zyniker Law, Hannah Zarski, all persons and entities (known and unknown) acting as agents of the Plaintiff through creation, posting, promotion and/or maintenance of content on the Plaintiff's blog, podcast, social media accounts, and all persons and entities (known and unknown) who support, encourage, and contribute to the Plaintiff's actions against Mr. Goad via fundraising, promotion, donation of money, goods, and labor to deter Mr. Goad from testifying against the Plaintiff in the criminal matter currently pending against the Plaintiff in Albemarle County, Virginia. The agreement between the Plaintiff and his co-conspirators is ongoing.

84.     The object of the agreement between the Plaintiff and his co-conspirators is to retaliate against Mr. Goad for testifying against the Plaintiff and to deter him from testifying and cooperating in the future.

85.     The means used by the Plaintiff and his co-conspirators to deter Mr. Goad from acting as a witness and testifying include (but are not limited to) posting Mr. Goad's personal information online without his consent, requesting that others find and disseminate information about Mr. Goad, providing information to the police falsely implicating Mr. Goad in criminal activity, disseminating said false allegations online, posting pictures of Mr. Goad without his consent or authorization, regular harassment of Mr. Goad via multiple anonymous accounts online, repeated references to Mr. Goad as a "kike," and the filing of the complaint

in this matter, amongst other acts.

86.     The Plaintiff and his co-conspirators hold a deep animus toward Mr. Goad because the Plaintiff believes that Mr. Goad is Jewish.

87.     By his conduct in having engaged in and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described above, Plaintiff and others have reached agreement (either explicitly or tacitly) and conspired with one or more others   to deter by intimidation or threat, Mr. Goad and Ms. Gorcenski from appearing in a court of the United States from attending such court, or from testifying to a matter pending therein, freely, fully, and truthfully, in violation of 42 U.S.C. § 1985(2)—specifically, to deter Ms. Gorcenski and Mr. Goad from testifying at the criminal trial against Plaintiff.

88.     Similarly, by his conduct as described above, Plaintiff has conspired with others to injure Defendants on account of, and in retribution for, their having attended and testified in the preliminary hearing against Plaintiff, in violation of 42 U.S.C. § 1985(2).

89.     Defendants have incurred and continue to incur actual damages as a result of the ongoing conspiracy of being targeted by the Plaintiff for witness intimidation, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to 42 U.S.C. § 1985.

_Eighth Cause of Action - Conspiracy to Interfere with Civil Rights: Depriving Persons of Rights or Privileges_

90.     Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

91.     The Plaintiff has conspired explicitly and/or tacitly with one or more other persons

39

and entities whose identities are known and unknown to Ms. Gorcenski, including but not limited to Jason Kessler, David Rotter, Daniel McMahon, Corey Mahler, Zyniker Law, William Fears, all persons and entities (known and unknown) acting as agents of the Plaintiff through creation, posting, promotion and/or maintenance of content on the Plaintiff's blog, podcast, social media accounts, and all persons and entities (known and unknown) who support, encourage, and contribute to the Plaintiff's actions against Ms. Gorcenski via fundraising, promotion, donation of money, goods, and labor to deprive Ms. Gorcenski of her equal rights, to include the right to protection from harassment and assault, the right to equal access to courts in order to seek redress for wrongs done to her by the Plaintiff and his co-conspirators, and the freedoms of speech, association, and assembly as guaranteed by the First Amendment to the United States Constitution. This conspiracy is currently ongoing.

92.    The object of the agreement between the Plaintiff and his co-conspirators is to deprive Ms. Gorcenski from equal protection and privileges under the law, including, without limitation, to deprive her of her right to continue associating and protesting with anti-racist and anti-fascist activists, from seeking redress for harms done to her by the Plaintiff and his co-conspirators, and from exercising the equal right to testify in court in the criminal proceedings against Plaintiff, and to seek retribution against her for having exercised her equal right to testify in court at the preliminary hearing.

93.    The means used by the Plaintiff and his co-conspirators to deprive of the right Ms. Gorcenski to act as a witness and testify include (but are not limited to) posting of Ms. Gorcenski's home address, posting pictures of Ms. Gorcenski without her consent or authorization, communication regarding Ms. Gorcenski's whereabouts and activities, posting and endorsement of images depicting Ms. Gorcenski's death, repeated references to "tranny

40

degenerates," disseminations of articles and opinion pieces depicting transwomen such as Ms. Gorcenski as "degenerates," "faggots," and the filing of the complaint in this matter, amongst other acts.

94.     The Plaintiff and his co-conspirators hold a deep animus toward Ms. Gorcenski because she a queer trans woman of color.

95.     The Plaintiff has conspired explicitly and/or tacitly with one or more other persons and entities whose identities are known and unknown to Mr. Goad, including but not limited to Jason Kessler, David Rotter, Daniel McMahon, Corey Mahler, Zyniker Law, Hannah Zarski, all persons and entities (known and unknown) acting as agents of the Plaintiff through creation, posting, promotion and/or maintenance of content on the Plaintiff's blog, podcast, social media accounts, and all persons and entities (known and unknown) who support, encourage, and contribute to the Plaintiff's actions against Mr. Goad via fundraising, promotion, donation of money, goods, and labor to deprive Mr. Goad of his equal rights, to include the right to protection from harassment and assault, the right to equal access to courts in order to seek redress for wrongs done to him by the Plaintiff and his co-conspirators, and the freedoms of speech, association, and assembly as guaranteed by the First Amendment to the United States Constitution.  This conspiracy is currently ongoing.

96.     The object of the agreement between the Plaintiff and his co-conspirators is to deprive Mr. Goad from equal protection and privileges under the law, including, without limitation, to deprive him of exercising the equal right to testify in court in the criminal proceedings against Plaintiff, and to seek retribution against him from having exercised his right to testify in the preliminary hearing.

97.     The means used by the Plaintiff and his co-conspirators to deprive Mr. Goad of his

41

right to act as a witness and testify include (but are not limited to) posting Mr. Goad's personal information online without his consent, requesting that others find and disseminate information about Mr. Goad, providing information to the police falsely implicating Mr. Goad in criminal activity, disseminating said false allegations online, posting pictures of Mr. Goad without his consent or authorization, regular harassment of Mr. Goad via multiple anonymous accounts online, repeated references to Mr. Goad as a "kike," and the filing of the complaint in this matter, amongst other acts.

98.    The Plaintiff and his co-conspirators hold a deep animus toward Mr. Goad because the Plaintiff believes that Mr. Goad is Jewish.

99.    By his conduct in having engaged in and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described above, Plaintiff and others have reached agreement (either explicitly or tacitly) and conspired with one or more others  for the purpose of depriving, either directly or indirectly, Mr. Goad and Ms. Gorcenski of the equal protection of the laws, or of equal privileges and immunities under the laws, and Mr. Goad and Ms. Gorcenski have, by such conspiracy, been injured in their persons and property, and deprived of exercising the rights and privileges bestowed to them as citizens of the United States, in violation of 42 U.S.C. § 1985(3).

100.    Plaintiff's harassment and intimidation of Defendants has been motivated by Plaintiff's by invidiously discriminatory racial, religious, or ethnic animus, based on either his perception of Defendants' identification with a particular racial, religious, or ethnic group, and/or based on his perception of Defendants' sympathies and solidarity with people with people of racial, religious, or ethnic backgrounds which Plaintiff deems to be inferior, and is motivated.

42

101.    In addition, Plaintiff's virulently transphobic and homophobic harassment and intimidation of Defendants demonstrates that his harassment and intimidation of Defendants is motivated by his specific, invidiously discriminatory animus towards transgender, gay, lesbian, bisexual, and gender non-conforming individuals.

102.    Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff for deprivation of rights and privileges based on his invidiously discriminatory animus, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to 42 U.S.C. § 1985.

_Ninth Cause of Action - Abuse of Process_

103.    Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

104.    By his conduct in having filed the Complaint in this action and having caused the Complaint and summons to be served upon Defendants, despite the Complaint's utter lack of basis in law, and by including statements in the Complaint that are materially misleading and/or harassing, and which do not serve any legitimate purpose to further the litigation, Plaintiff has abused the process of this Court for the improper purpose of threatening, harassing, and intimidating Defendants to deter them from testifying in the criminal case against Plaintiff.

105.    Defendants have incurred and continue to incur actual damages as a result of Plaintiff's abuse of process, and are entitled to dismissal of Plaintiff's Complaint, compensatory damages, punitive damages, and reasonable attorney fees and costs.

43

*Tenth Cause of Action – Malicious Prosecution (Civil)*

106.   Defendants reallege and reincorporate each of the proceeding paragraphs, and each and every paragraph of their Answer to the Complaint, as if fully restated herein.

107.   By his conduct in having filed the Complaint in this action and having caused the Complaint and summons to be served upon Defendants, despite the Complaint's utter lack of basis in law, and by including statements in the Complaint that are materially misleading and/or harassing, and which do not serve any legitimate purpose to further the litigation, Plaintiff has maliciously prosecuted a civil action in this Court for the improper purpose of threatening, harassing, and intimidating Defendants to deter them from testifying in the criminal case against Plaintiff.

108.   Defendants have incurred special injury as a result of Plaintiff's malicious prosecution of his civil action, including the cost of attorneys' fees to defend this action, and the emotional injury and trauma suffered in relation to the harassing, intimidating, and defamatory nature of Plaintiff's civil Complaint and the papers filed with the Court in his prosecution thereof.

109.   Defendants have incurred and continue to incur actual damages as a result of Plaintiff's malicious prosecution of the civil action, and are entitled to dismissal of Plaintiff's Complaint, compensatory damages, punitive damages, and reasonable attorney fees and costs.

**Demand for Relief on Defendants' Amended (First) Counterclaims**

WHEREFORE, for the foregoing reasons and all others that may appear to this Court,

44

Defendants/Counterclaimants Emily Gorcenski and Kristopher Goad respectfully request the following relief:

110.    That this Court issue an injunction enjoining Mr. Cantwell from continuing the pattern of harassment, intimidation, abuse, and threatening conduct described above towards either Mr. Goad or Ms. Gorcenski, and enjoining him from engaging in any conduct that would constitute further violation of the laws referenced above or violation or depravation of Mr. Goad and Ms. Gorcenski's rights;

111.    That Defendant/Counterclaimant Ms. Gorcenski be awarded compensatory damages in the amount of $150,000, or in an amount to be determined at trial;

112.    That Defendant/Counterclaimant Mr. Goad be awarded compensatory damages in the amount of $150,000, or in an amount to be determined at trial;

113.    That Defendant/Counterclaimant Ms. Gorcenski be awarded punitive damages in the amount to $350,000;

114.    That Defendant/Counterclaimant Mr. Goad be awarded punitive damages in the amount $350,000;

115.    That Defendants/Counterclaimants be awarded their costs and attorneys' fees for this action in bringing these counterclaims; and

116.    That this Court grant the Defendants/Counterclaimants such other relief as the Court deems just and proper.


\*\*\*\*\*\*

45

Respectfully submitted,
EMILY GORCENSKI
KRISTOPHER GOAD
*By Counsel*

<u>March 20 2018</u>

<u>/s/ Sandra Freeman</u>
Sandra C. Freeman, Esq.
Virginia State Bar No. 78499
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
<u>sandra.c.freeman@protonmail.com</u>
720-593-9004


<u>/s/ Pamela Starsia</u>
Pamela Starsia, Esq.
Virginia State Bar No. 88657
3006 Maplelawn Circle
Austin, Texas 78723
<u>pamstarsia@starsialaw.com</u>
518-441-2695


<u>/s/ Moira Meltzer-Cohen</u>
Moira Meltzer-Cohen, Esq.
Admitted Pro Hac Vice
277 Broadway, Suite 1501
New York, New York 10007
<u>meltzercohen@gmail.com</u>
718-450-3035


*Counsel for Emily Gorcenski and Kristopher Goad*

46

<u>CERTIFICATE OF SERVICE</u>

I, Pamela Starsia, hereby certify that on March 20, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that counsel for all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: <u>March 20, 2018</u>.

<u>/s/ *Pamela Starsia*</u>
Pamela Starsia
