```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF VIRGINIA
 2                       CHARLOTTESVILLE DIVISION

 3   ELIZABETH SINES, et al,

 4                         Plaintiffs,
                                        No. 3:17-cv-72
 5        vs.                           Harrisonburg, Virginia
                                        July 2, 2019
 6   JASON KESSLER, et al,

 7                         Defendants.

 8            TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING
                 BEFORE THE HONORABLE JOEL C. HOPPE
 9                 UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Plaintiffs:

12   ROBERTA ANN KAPLAN            JESSICA E. PHILLIPS
     MICHAEL LOW BLOCH            Boies Schiller Flexner, LLP
13   Kaplan & Company, LLP         575 Lexington Avenue, 7th Floor
     350 Fifth Avenue, Suite 7110  New York, NY 10022
14   New York, NY 10118            212-446-2300
     212-763-0883
15

16   ALAN LEVINE
     Cooley LLP
17   1114 Avenue of the Americas, 46th Floor
     New York, NY 10037
18   212-479-6260

19

20   Appearances Continued Next Page

21

22   Transcribed by:     Carol Jacobs White
                          Registered Diplomate Reporter
23                        P.O. Box 182
                          Goode, VA 24556
24

25       Proceedings recorded by FTR; computer-assisted transcription.
```

1    For the Defendants:

2    JAMES EDWARD KOLENICH              JOHN A. DINUCCI
     Kolenich Law Office               Law Office of John A. DiNucci
3    9435 Waterstone Blvd., Suite 140  8180 Greensboro Dr., Ste. 1150
     Cincinnati, OH 45249              McLean, VA 22102
4    513-444-2150                      703-821-4232

5    BRYAN JEFFREY JONES               DAVID LEON CAMPBELL
     Bryan J. Jones, Attorney at law   Duane, Hauck, Davis & Gravatt
6    106 W. South Street, Suite 211    100 West Franklin St., Ste. 100
     Charlottesville, VA 22902         Richmond, VA 23220
7    540-623-6952                      804-644-7400 x 221

8    ELLIOTT KLINE, PRO SE             MATTHEW HEIMBACH, PRO SE
     117 Mesa Drive                    3099 Buchanan Road, SE
9    Reading, PA 19608                 #411
                                       Cleveland, TN37323
10
     Vanguard America
11   c/o DILLON HOPPER
     383 Hazzard Street
12   Scottsburg, IN 47170

13              *****************************************

14        (Call to Order of the Court at 12:03 a.m.)

15             THE COURT:  Hi.  This is Joel Hoppe.

16             Who do we have on the line for the plaintiffs?

17             MR. BLOCH:  Hi, Judge.  This is Mike Bloch from Kaplan

18   Hecker & Fink, on behalf of the plaintiffs.

19             MS. KAPLAN:  Your Honor, it is Roberta Kaplan.  I'm here

20   with Michael, but, again, he's in charge.

21             MR. LEVINE:  Alan Levine from Cooley, with Kaplan Hecker

22   for the plaintiffs, Your Honor.

23             MS. PHILLIPS:  And Jessica Phillips from Boies Schiller

24   Flexner, also for the plaintiffs, Your Honor.

25             THE COURT:  All right.  Good afternoon.

1          And, let's see, do we have Mr. Kline on the phone?

2          MR. KLINE:  Yes.  I'm here, Your Honor.

3          THE COURT:  All right.  Good afternoon.

4          And how about Mr. Heimbach?

5          MR. HEIMBACH:  Yes, Your Honor.  I'm here.

6          THE COURT:  Good afternoon to you.

7          And, Mr. Hopper, are you on the phone as well?

8          MR. HOPPER:  Yes, sir, I am.

9          THE COURT:  All right.  Good afternoon.

10         MR. HOPPER:  Good afternoon, sir.

11         THE COURT:  And who else do we have for any defendants?

12         MR. KOLENICH:  Your Honor, Jim Kolenich for Jason Kessler

13  and several others.

14         MR. DINUCCI:  John DiNucci for Mr. Spencer here, Your

15  Honor.

16         MR. CAMPBELL:  Dave Campbell on the phone as well, Your

17  Honor, for James Fields.

18         MR. JONES:  And Bryan Jones here for League of the South

19  and Michael Hill and Michael Tubbs.

20         THE COURT:  All right.  Good afternoon to you-all as

21  well.

22         Now, this -- the purpose of this call is really to

23  address discovery in this case in particular for Mr. Kline and

24  Mr. Heimbach and also Vanguard.

25         Now, this call is being recorded by the Court's FTR

1  system, so there is a record being made of this call.

2          There are a number of other things that I want to address

3  as well.  Since we have a number of pro se defendants on the phone,

4  I just wanted to go over some things with you-all to make sure that

5  you fully understand your responsibilities and obligations in the

6  case.

7          And, Mr. Hopper, I also want to address how Vanguard is

8  going to proceed in this matter.

9          And then, if there's some other issues that we need to

10  take up, we can do that as well.

11          Let's see.  Mr. Bloch, is there anything else that you

12  think we need to address today?

13          MR. BLOCH:  Judge, I don't know if this is included in

14  what you were planning to address, but I do think it is worth

15  briefly addressing the state of discovery generally and

16  specifically the defendants' document production in terms of the

17  documents that have been produced to the vendor.  We have not

18  received any documents yet from that set.  And so I think it is

19  worth discussing that and whether there's a way to expedite that

20  process.

21          THE COURT:  All right.

22          And then, Mr. Kolenich or Mr. DiNucci, Mr. Campbell or

23  Mr. Jones, are there other issues from your point of view that we

24  will need to address today?

25          MR. KOLENICH:  Mr. Kolenich here, Your Honor.

```
1            There aren't any issues other than the sheer size of the
2    document collection.  And I haven't really -- Mr. Bloch and I have
3    been communicating on that issue.  So I think we can continue to do
4    that.  But we're -- on my end, we're slogging through it.  And I
5    think some production could probably be made shortly.  But as far
6    as completing the review, that's sort of a separate subject due to
7    the enormous number of documents that have to be reviewed.
8            MR. DINUCCI:  John DiNucci, Your Honor.
9            I have got the same concerns that Mr. Kolenich does.  So
10   far the volume of documents -- of hits, I believe is the term that
11   has been used -- that my client has would result, based on our
12   preliminary analysis -- we'd take about 1500 to 2,000 hours to
13   review everything we have so far.
14           I have started to get information on some third-party
15   services that may be able to assist in this.  But then there's
16   still the question of cost, which, as I understand it, could be
17   enormous, given the quantity of documents.
18           And the third-party discovery service we're using here
19   hasn't completed its review of everybody's devices yet.  There's
20   going to be more data coming.  So that's a big area of concern.
21           MS. KAPLAN:  Your Honor, this is Ms. Kaplan.  And we can
22   talk about this later, but this is somewhat of a mystery to us,
23   because the hits that Mr. DiNucci just referred to are documents
24   that are responsive to the search terms that the parties agreed to.
25   And those were search terms based on the relevant facts in the
```

1   case.

2         So unless there is privileged materials in there, which

3   can easily be taken out by running more searches for the names of

4   attorneys, we don't understand what possible objection they could

5   have on relevance grounds to any of this.  And the idea that we

6   spent all of this money, we did the vendor, the vendor has

7   processed it all, and we literally still do not have a single

8   document is astounding.

9         I don't -- I have never heard before that you have to

10  review -- I understand they want to review the documents for trial.

11  But for discovery purposes, the only issue is whether they are

12  relevant.  And by definition, given the search terms, they are

13  relevant.

14        THE COURT:  And is there a clawback provision?

15        MS. KAPLAN:  There is, Your Honor.  And we have already

16  agreed to tell them they could claw back anything that they find.

17        THE COURT:  All right.

18        All right.  Let's -- I do want to return to this issue,

19  but let's take it up at the end.

20        Mr. Campbell or Mr. Jones, were there any other issues

21  that you think we need to address today?

22        MR. CAMPBELL:  None for me, Your Honor.  Dave Campbell

23  here.

24        MR. JONES:  None for me, Your Honor.  Bryan Jones.

25        THE COURT:  All right.

```
1              And, Mr. Kline and Mr. Heimbach and Mr. Hopper, if there
2      are things towards the end of this call that you also want to
3      address that we haven't addressed during the call, then, you know,
4      certainly speak up at that time.  Okay?
5              MR. KLINE:  Okay, Your Honor.
6              MR. HEIMBACH:  Yes, sir.
7              THE COURT:  All right.
8              Well, first off, I just want to talk to you-all about
9      your obligations as pro se parties.  You really have the same
10     obligation to act as if you were represented by an attorney.  You
11     need to be familiar with the rules.  You need to keep up with
12     things that happen in the case.  You need to respond to orders.
13     You will have to -- you will have to file your own pleadings in
14     response to motions that other parties, the plaintiff or other
15     defendants, file.  If there are motions that you want to file, you
16     have to file those yourselves.  So, really, you will be acting just
17     as a lawyer.  And you are expected to know the rules and be able to
18     -- you know, to act in accordance with them.
19             Now, of course, as a pro se party, you will be given some
20     leeway.  But, you know, compliance with the rules is going to be
21     expected and compliance with the orders as well.
22             Mr. Hopper, you know, as a -- you are involved not as a
23     named party, but as a representative of Vanguard America.  And you
24     really can't file documents on behalf of Vanguard or appear on your
25     own for Vanguard.
```

```
 1              Now, as a representative of Vanguard, you know, of course
 2     somebody will have to be responsible for producing discovery and
 3     things like that.  And as a representative, I think that
 4     responsibility would fall to you.  And that is something that I
 5     think you can do without a lawyer representing you.  It is the
 6     -- you know, it is the in-court appearances and filing documents,
 7     you know, that you wouldn't be able to do on behalf of Vanguard.
 8              MR. HOPPER:  Yes, sir.
 9              THE COURT:  All right.  Mr. Hopper, do you have any
10     questions about that?
11              MR. HOPPER:  No, no questions.  I'm just, you know,
12     curious as to what I can do moving forward.  You know, I don't have
13     the financial stability to, you know, hire a lawyer to, you know,
14     file anything for Vanguard.  So I'm just -- I'm just curious, you
15     know, what can I do in this situation?  You know, can I -- can I
16     abandon that position as the representative and someone else be
17     appointed?  Or can -- or -- I honestly don't know.  Can I just, you
18     know, somewhat represent myself and, you know, I can maybe file a
19     motion for myself, and then have someone else, you know, take over
20     for the discovery and for everything else in Vanguard?  Is that an
21     option for me?  Or am I kind of, you know, stuck in this kind of
22     situation?
23              THE COURT:  Well, you are not a party, so there aren't
24     filings or pleadings that you can make with the court, you know, on
25     your behalf, because you are not a party.
```

1          You know, if -- if you were involved with Vanguard, you

2    know, during the -- during the times alleged in this lawsuit, then,

3    you know, I think you are responsible for complying with discovery

4    requests, you know, at the very least.

5          But I'll tell you-all that, you know, over the last many,

6    many months the issue about the cost of discovery has been raised.

7    And one of the things that the plaintiffs and counsel for the other

8    defendants, and for a while on your behalf, Mr. Hopper, and also

9    Mr. Heimbach, that the counsel worked out was a way to, at least

10   for the time being, have the plaintiffs assume, you know, the

11   financial burden of going through electronic discovery and going

12   through, you know, devices and things like that, so that relevant

13   documents could be obtained from the social media accounts and

14   things like that and then provided to -- you know, those relevant

15   documents would be culled and then provided to the defendants to

16   search for privilege.

17         And we'll probably hear more about this later on in the

18   call, but it was a way to help the defendants comply with their

19   discovery obligations, but essentially allow the plaintiffs to

20   absorb the costs for the time being.  Now, the plaintiffs, this is

21   without prejudice to them to, you know, seek recovery of the cost

22   to do it.  But it was a way to go forward in the litigation at this

23   time.

24         MR. BLOCH:  Sorry.  Judge, this is Mike Bloch.  If I just

25   may add one thing.

1           I think what would be helpful to us and may address

2    Mr. Hopper's concerns down the road, I think if he acts as the

3    representative of Vanguard America at least for the next few weeks,

4    while he responds to the discovery obligations and the

5    interrogatory responses and the certifications as well as sits as a

6    representative for Vanguard America for the deposition that we have

7    scheduled, we may be able to determine in that process that, you

8    know, there is, in fact, somebody who has more -- sort of more

9    relevant information or additional relevant information and can

10   identify somebody else that can, you know, play that role.  But I

11   think for -- at least for purposes now, in terms of responding to

12   discovery requests and sitting through the deposition, it is our

13   view that Mr. Hopper is as well situated as anyone else at least

14   for that particular purpose.

15           MR. HEIMBACH:  Your Honor, this is Matthew Heimbach.

16           And this might be a bit outside of my wheelhouse, but in

17   regards to the comment in relation to Vanguard if Mr. Hopper was

18   involved, to my understanding, he was not involved with Vanguard at

19   the time being.  He was handling personal affairs he has outlined

20   in one of his filings.  And, in fact, based on, you know, being in

21   Charlottesville on August 12th, Thomas Russo, who took over

22   Vanguard from Mr. Hopper before Charlottesville, during the

23   planning process, and then created the organization Patriot Front,

24   was the one that was there and handling everything on their behalf.

25           So based upon my understanding -- and, again, I apologize

1    if this is out of my wheelhouse for another defendant, but he

2    didn't have anything involved in the organization at the time due

3    to personal affairs.

4           THE COURT:  Well, and that's -- you know, that is

5    something that, as Mr. Bloch noted, may be a subject of an upcoming

6    deposition.

7           MR. HOPPER:  Your Honor, this is Mr. Hopper.

8           And I completely understand the situation, you know.

9    I'm, of course, the individual who took responsibility for the

10   organization and I do find the documents.  I will adhere to the

11   discovery as much as I possibly can.  But I feel that some of the

12   things in the discovery I never had control over, such as the

13   Twitter accounts, the Discord servers, and other information of

14   that sort.  That was all on Thomas Russo.  He had created all of

15   the social media accounts and everything.  And he controlled all of

16   that.  But what I will do is I will provide you with all of the

17   information that I possibly can to attempt to please the court and

18   to aid as much as I possibly can in this matter.

19          MR. BLOCH:  Judge, if I may.  This is Mike Bloch.

20          Obviously, the reason why Mr. Hopper was identified to us

21   as a representative is he is the one that signed the

22   interrogatories under oath; he is the one that filled out the

23   certifications in response to Your Honor's order.  And it is my

24   understanding that he is the one that Mr. Kolenich was

25   communicating with in response to Your Honor's order to show cause,

1    which Vanguard essentially didn't really provide a response to.

2         So I think there's ample basis at this point for us to

3    believe that Mr. Hopper is the representative that we should be

4    dealing with, at least as of right now.

5         THE COURT:  I think that's right.  And that was my

6    perception from the things that had been filed in the case as well.

7         But, you know, Mr. Hopper and Mr. Heimbach and Mr. Kline,

8    you know, litigation and discovery, it is a process.  And, you

9    know, when you are involved in the process and providing

10   information to the other side, if there are different routes that

11   need to be taken by one party to try and obtain information, then,

12   you know, if you are involved in the process and providing feedback

13   and information, then sometimes those things can be determined.

14        So, Mr. Hopper, if it turns out that, you know, somebody

15   else is the -- you know, the proper person to go to -- you know, to

16   get discovery information and, you know, somebody else is a more

17   appropriate representative for Vanguard America, then by

18   participating in this process, that -- the plaintiffs may make that

19   determination and can take a different course.  I don't know that

20   right now.  I don't think that they could know that right now

21   either.  But, you know, your participation is important, you know,

22   to get to that point.

23        MR. HOPPER:  Yes.  No, I completely understand, Your

24   Honor.  And I will participate as much as I possibly can to help

25   move the process forward and to help in any way that I can with the

1    court.  Any information that I have that I can provide, I will.

2              THE COURT:  All right.

3              Mr. Kline, do you have any questions about -- not about,

4    you know, this specific discovery yet at this point, but about your

5    responsibilities as a pro se party?

6              MR. KLINE:  No, I don't, Your Honor.  I -- from my

7    understanding, all I have got to do is proceed with the discovery

8    for now, and then just go from there.

9              THE COURT:  Well, that's certainly, you know, one of the

10   responsibilities.  But, you know, you'll be expected to, you know,

11   appear on your own behalf in any court hearings and to, you know,

12   file any response -- you know, if the plaintiffs file a motion that

13   concerns you, you are expected to -- if you oppose it, to file an

14   opposition.  And, you know, if there are certain motions or things

15   that you want to try and accomplish in your case, of course, you

16   are responsible for filing those on your own, and appearing in

17   court as required.

18             MR. KLINE:  All right.  That makes sense, Your Honor.

19             THE COURT:  All right.  Mr. Heimbach, did you have any

20   questions about that?

21             MR. HEIMBACH:  Yes, Your Honor.  In regards to an email I

22   sent to you and to the plaintiffs, I'm going to have two affidavits

23   that will be submitted to the court hopefully by Friday or the

24   early part of next week in regards to me being able to fulfill

25   discovery.

```
 1              I suppose the biggest issue is going to be in regards to

 2    cell phone and laptops that is requested.  As I explained to the

 3    Court in March of last year, due to an issue with my now ex-wife, I

 4    had to leave my property.  She ended up going to Texas without

 5    informing me.  Obviously, she cannot -- we couldn't communicate

 6    with one another.  And my cell phone, laptop that were older and I

 7    was saving, along with some log-in information that I had written

 8    down to old accounts, but also my passport, birth certificate,

 9    social security card, basically all of my -- all of my things,

10    ended up being thrown in the garbage.  And I was not made aware of

11    this.

12              My ex-wife had given permission to a neighbor, because

13    she wasn't planning to return to the residence in question in

14    Paoli, Indiana, for her neighbors to basically clean out the house.

15    So -- and I wasn't made aware of this for months and months

16    afterwards.  I wasn't allowed to contact her, per the Orange County

17    Sheriff's Department, to tell her to save any of my specific

18    things.

19              So my biggest question for the Court is how can I fully

20    meet all of my obligations when most of these things no longer

21    exist, not through me having a tragic fishing accident or dropping

22    a phone in a toilet, but through a very messy situation?  And I'll

23    have an affidavit from my ex-wife and my former landlord confirming

24    this.

25              So I wanted to go before Your Honor and find out how I
```

1    can fulfill my obligations, given the messiness of that personal

2    situation, where a lot of this stuff isn't available.

3          I would also like to potentially have a call with

4    Mr. Bloch.  For instance, I have the -- some of the forms that were

5    sent to me, but, for instance, the authorization to disclose my

6    Twitter account, I see where the appeal is, but I wasn't sure where

7    I was supposed to send my scanned copy of the document.  But I

8    don't necessarily think that needs to take the Court's time.  If

9    Mr. Bloch would be willing to speak with me later, perhaps we can

10   go over a few of these things.  There's a lot of two dollar words

11   and a lot of lawyering that I don't really have experience in.

12         But -- so the main point, I was curious as to how I can

13   fulfill my obligations, given the problems and -- when it comes to

14   some of the electronic devices.

15         THE COURT:  All right.

16         MR. BLOCH:  Judge --

17         THE COURT:  Sure.  Go ahead, Mr. Bloch.

18         MR. BLOCH:  Sorry, Judge.  This is Mr. Bloch.  I'm happy

19   to wait for you or to chime in.

20         THE COURT:  Well, I was just going to start off and say,

21   you know, that I do think it is important that -- Mr. Heimbach,

22   that, you know, you discuss this with Mr. Bloch.  If you are

23   representing yourself, that is going to have to be -- working

24   through the discovery process is something that I expect the

25   parties to do on their own.  And then, when there is an issue, it

1    comes to the court.  But typically the parties are the ones who are

2    going through the discovery process amongst themselves.

3              Mr. Bloch, go ahead.

4              MR. BLOCH:   Thanks, Judge.

5              I was just going to say that I envision this process that

6    we're engaged in right now as sort of an interim step to gain

7    information relevant to our pending motion for sanctions, including

8    adverse inferences.  And I think, obviously, central to that motion

9    is the fact that we believe, and now have, I think, a lot more

10   reason to believe, that we will be unable to get relevant documents

11   and information that has critical evidence and communication about

12   Charlottesville.

13             Obviously, Mr. Heimbach and the other defendant had an

14   obligation to preserve their documents.  Mr. Heimbach is

15   representing now that certain devices and accounts may not exist or

16   may not be accessible.

17             I think what is important for this part of the process is

18   that, in terms of responding to the document requests that are

19   outstanding and sitting for a deposition, that he, as a threshold

20   matter, identify all of the devices and accounts that once existed

21   that contained relevant communication.  To the extent those things

22   no longer exist, we can discuss, and will discuss in the

23   depositions, among other places, the circumstances under which

24   those things disappeared.

25             But I don't think the fact that those accounts and

1   devices may not exist at this point should absolve him of the

2   obligation to at least make the requisite representations to us

3   about what -- all of the devices and accounts that existed at

4   -- you know, at one point that he used to communicate about

5   Charlottesville.  So I think there's two separate issues in terms

6   of what once existed and what now exists and the circumstances

7   under which those things disappeared.

8          THE COURT:  No, I think that is right.

9          And, Mr. Heimbach, you know, it is important to identify,

10  you know, the devices and the accounts and then to either provide

11  the information or, if it doesn't exist anymore, provide an

12  explanation for why it doesn't exist.

13         And part of this process is going to be figuring out

14  whether -- whether that information exists in a different medium

15  too.  If it can't be recovered from a cell phone, is there some

16  other way to, nonetheless, get that information?  And, you know,

17  the depositions are going to be part of that process as well.

18         And it is -- you know, the motion for sanctions is open.

19  And, really, it is going to -- you know, how that motion turns out

20  is going to depend in large part on what information can be

21  obtained and recovered; and then, if it can't be recovered, why.

22         MR. BLOCH:  Thank you, Judge.

23         The only other thing I wanted to add is I'm happy to

24  speak with Mr. Heimbach this afternoon and answer whatever

25  questions he has about his obligations.

1          THE COURT:  All right.

2          All right.  Why don't -- Mr. Bloch, why don't we just go

3   through the different items of discovery that were -- that you-all

4   are seeking.  And, you know, I have laid them out in general terms

5   in the order from just a couple of weeks ago.

6          But I would anticipate that, Mr. Kline and Mr. Heimbach

7   and Mr. Hopper, that there are certain information and forms that

8   would need to be -- that you-all would need to execute, and that

9   those would be done in a matter of a week or two weeks.  And then,

10  if there's any additional documents or interrogatory responses that

11  are necessary, that those would come in just a little bit more

12  time.

13         But I think it would be helpful to have all of those

14  things laid out with some specificity in an order so that each one

15  of these defendants is very clear as to what the obligations are

16  and then also to provide a deadline.

17         MR. BLOCH:  Thank you, Judge.

18         Judge, the first part of your order regarding discovery

19  stated that the defendants should be prepared to discuss whether

20  they preserved relevant documents.  I think it would be helpful to

21  hear from each defendant what steps they took to preserve devices,

22  email accounts, and social media accounts.

23         THE COURT:  All right.  You know, certainly that can be a

24  topic for more in-depth exploration at a deposition.

25         But, Mr. Kline, let me start off with you on that.

1      MR. KLINE:  So currently, as far as, like, information

2   that I have retained, the only thing I have left from then is my

3   old cell phone.  It is currently not activated.  It is just kind of

4   sitting here.  It should work.  I should just have to put my -- put

5   a SIM card in and it should work.  And that's going to have all of

6   the text messages and things like that.

7      As far as social media accounts, Discord accounts,

8   anything like that, I have been banned from all of those and no

9   longer have access to them.  Discord did send me an email saying,

10  "Hey, do you want to comply with the discovery of this case," yada,

11  yada, yada.  And I did agree to that.  I did send them a message

12  back saying yes.  And then a few weeks later I got basically the

13  same email asking again.  And I responded yes to that again and

14  then got no response on that one.

15     But as far as Twitter or Facebook or anything like that,

16  I was banned from them, from all of the accounts that I used for

17  those services or whatever.  So I no longer have access to any of

18  that stuff.

19     So, really, the only thing I have got access to is my old

20  cell phone text messages.  And that's pretty much the extent of

21  what I would have for documents or discovery goes.

22     THE COURT:  All right.  I think for any social media

23  accounts, whether you yourself are able to access those or not, you

24  would need to identify all of the social media accounts and then

25  allow consents for those to be -- you know, to be --

1          MR. KLINE:   Yeah.   I'm totally -- I'm totally fine with

2    going through that.   The biggest issue, I would say, for Facebook

3    and Twitter would be that both of those I used under, you know,

4    burner emails, I guess you would say, like not real email

5    addresses.   So I don't know if there is a way of verifying who I am

6    or that I was the owner or anything like that.   But I'm more than

7    happy to go through with that process, to get -- you know, to talk

8    to Twitter or Facebook or whatever and, you know, prove that you

9    guys are -- you know, that they can hand over that information to

10   the court.

11         MR. BLOCH:   Judge, this is Mike Bloch.

12         I just want to make clear that your order, your June 21

13   order, specified a number of ways that -- you know, the process

14   that we have all agreed upon to identify a large percentage of the

15   potentially responsive documents.   And so I just -- in terms of

16   -- for Discord, for example, what we need is an FCA consent that

17   allows Discord to produce to us.

18         So I just want it to be clear to each of the defendants,

19   including Mr. Kline, that, you know, the things that we asked for

20   that Your Honor ordered in the June 21st order is the method by

21   which we gain a number of these responsive documents.   And so to

22   the extent there are -- the first part of that process is

23   identifying for us all of the email addresses and the accounts,

24   etc., that were used.   And to the extent there are things that may

25   require follow-up, we can address that later.

1          But I just don't want Mr. Kline or the other defendants

2     to think that the process here is for them to go out and kind of

3     figure out how to get this stuff.  We have a set process in place

4     that will at least give us a great starting point on identifying

5     and generating a number of the documents that we need.

6          THE COURT:  Right.  And that -- the documents -- and,

7     Mr. Bloch, you emailed a whole -- well, a number of documents

8     yesterday.  I think with that email it included that certification.

9          And that is something that -- Mr. Kline and Mr. Heimbach

10    and Mr. Hopper, that's the process that you-all will need to go

11    through, to identify the devices and social media accounts and

12    provide that information to the plaintiffs so that that information

13    can be harvested from the different providers.

14         Did you-all -- Mr. Kline, did you receive that email and

15    were you able -- do you know what I'm talking about with the -- you

16    know, the certification?

17         MR. KLINE:  Yeah.  I received the email.  I'm just -- I'm

18    scanning through it right now, Your Honor, just trying to catch up

19    to speed what it is talking about, what it is asking for.

20         THE COURT:  All right.  And just like with Mr. Heimbach,

21    Mr. Kline, Mr. Hopper, you know, you-all need to help this process

22    go forward.  You-all will need to talk with Mr. Bloch or an

23    attorney from his team, you know, to make sure that the information

24    is being transferred properly.  And if you have questions about

25    -- you know, about what form to use, you can ask him.

1       MR. HOPPER:  Yes, sir.  This is Mr. Hopper.  I'm in

2  contact with Mr. Bloch.  And he sent out an email with about 9 or

3  12 attachments with, you know, all of the forms and stuff on them.

4  And I have been filling what forms I can out, to the best of my

5  abilities.

6       The only issue that I'm going to have is with the Twitter

7  accounts.  I didn't create those and I was never in control of

8  them.  But I can still provide as much information as I possibly

9  can on them.

10       So I will abide by -- of those rules.  And I will get

11  that information back to either Mr. Bloch or yourself here shortly,

12  once I have filled them out.

13       THE COURT:  And it would be to Mr. Bloch.  All of the

14  -- all of the discovery is shared between the parties.  It is not

15  filed with the court.

16       MR. HOPPER:  Okay, sir.

17       MR. HEIMBACH:  Your Honor, I -- this is Matthew Heimbach.

18       I had a question insofar as, for instance, like internal

19  emails and such.  I didn't have control of that system.  That would

20  actually fall under Mr. Kolenich's client, Matt Parrott, or David

21  Parrott, who handled all of the Traditionalist Workers Party kind

22  of backing infrastructure.  So I never had control and I didn't

23  even set up any of the accounts or things that were used for ticket

24  management system and responding to messages and such.

25       So how would that work, given that I'm not -- I'm no

1  longer Mr. Kolenich's client, but that would -- any information in

2  that regard would fall under David Parrott would have access to.

3          And also one final question in regards to the Twitter

4  account that I had, I had sent to Mr. Bloch that that account had

5  been deleted by January 3rd of 2017.  And I included a Washington

6  Post article in regards to that.  So that was many months before

7  Charlottesville, before I had even heard of Charlottesville, before

8  even the first event in and then the Charlottesville (inaudible)

9  handled.  And I'm trying to comply with whatever the Court wishes,

10  but in regards to Twitter, because the account was deleted by

11  Twitter long before there was any organizing for even the first

12  event in Charlottesville, I was just curious as to how that falls

13  under discovery for organizing for Charlottesville, given the

14  account no longer existed long before that process began.

15          THE COURT:  Let me address the first issue that you

16  raised.  And if there are any social media accounts with which you

17  are in some way associated with or that would have relevant

18  information to this lawsuit, I think it is important for you to

19  identify them in the certifications.  And then if you think that

20  there's somebody else who had the credentials for accessing those

21  accounts or had control over them, like, Mr. Heimbach, you said

22  Mr. Parrott did, then you would need to identify that in the

23  certification as well.  And that may be something to explore

24  further at a deposition.

25          Mr. Bloch, do you have anything to add on that?  And then

```
 1   I'll let you address the other issue, which really I raised

 2   questions about relevance for the (inaudible).

 3            MR. BLOCH:  Yeah.  Thanks, Judge.

 4            I would just add a couple of things.  Number one, and I

 5   think that this goes for all defendants, that the communications

 6   about Charlottesville are relevant to this lawsuit whether or not

 7   they occurred before the rally or after the rally, including, you

 8   know, if Mr. Heimbach, for example, had a conversation, a text

 9   message, a social media post about this case or the events at issue

10   in this case like a few weeks ago or a month ago, those are

11   conceivably relevant and at least responsive to discovery.

12            So if there's a social media account that contains

13   potentially relevant communication, which would include

14   communication about the events that took place after the events

15   happened, those are still accounts that need to be disclosed to us.

16            MR. HEIMBACH:  Well, I understand, Mr. Bloch.

17            Matt Heimbach here.

18            But, as I pointed out, we're talking about a Twitter

19   account that was deleted in 2016.  And there was a Washington Post

20   news article on the 3rd of January of 2017.  Therefore, there would

21   be no relevant information in regards to that account.

22            MR. BLOCH:  The only thing I would say to that is that

23   the -- our -- and you should take a look at our document requests

24   which I included in the email to you.  Some of them go broader than

25   just communications specifically about the United the Right rally,
```

1    including communications you had with other defendants, for

2    example, other defendant entities or individuals.

3          So I would encourage -- I would encourage Mr. Heimbach

4    and all defendants to take a look at the document requests that we

5    served, because they go a little bit broader than just the events

6    themselves.

7          To the extent there is an account that does not contain

8    any potentially relevant documents to anything we asked for, then

9    that isn't necessarily something that needs to be disclosed or

10   turned over to us.  But the requests do go beyond simply the, you

11   know, August 11th and August 12th.  It also includes prior rallies.

12   And the relevance of which is laid out in our complaint.

13         The second thing, Judge, I wanted to add is that right

14   now we're focused on Mr. Heimbach as an individual.  I understand

15   that he also is a representative of -- in some respects of

16   Traditionalist Worker Party and may well have relevant documents as

17   a custodian of documents on behalf of Traditionalist Worker Party,

18   which I do think is a separate issue.  And I understand that

19   Mr. Parrott also is a custodian.

20         So for purposes of this particular sanctions motion and

21   the discovery that we are seeking from Mr. Heimbach right now, we

22   are focused on the documents and communications that he had sort of

23   in his individual capacity, which may not -- may not be different.

24   But -- but it may well be that there's somebody else who is more

25   -- sort of better situated to give us access to Traditionalist

 1    Worker Party accounts.

 2             THE COURT:  Yeah.  Mr. Heimbach, were there some

 3    Traditionalist Worker Party accounts that you had access to that,

 4    you know, say, Mr. Parrott wouldn't?

 5             MR. HEIMBACH:  No.  No, Your Honor.  Mr. Parrott designed

 6    all of our backend in terms of internal party communications.  He

 7    created the Twitter account, to the best of my knowledge.  He even

 8    set up the Discord that was utilized.  So -- you know, I'm not

 9    trying to throw Mr. Parrott under the bus here.  I think he would

10    surely admit my knowledge and understanding of technology is on a

11    (inaudible) capacity.  So (inaudible) custodian of information,

12    that would almost exclusively fall in the realm of Mr. Parrott, I

13    believe.

14             THE COURT:  All right.  Well, I think it still would be

15    important for you to identify, you know, those accounts, even if

16    you believe that Mr. Parrott was the one who had that control over

17    them.

18             MR. HEIMBACH:  I understand, Your Honor.

19             I wouldn't have any details in regard to the

20    Traditionalist Worker Party Twitter account or the Facebook account

21    that was set up because I didn't -- (inaudible) not by any of the

22    defendants, but by the platform.  I didn't have any of the

23    information to even go back and place them.  Perhaps Mr. Parrott

24    would.  He is a pack rat, so (inaudible).  But I don't know exactly

25    how to go about doing that.

1          Again, in regards to the Twitter, I didn't really

2     understand from Mr. Bloch -- and I understand he's saying he was

3     going to the Twitter and everything that was in 2016, he said that

4     if it had no relevance (inaudible) given a request for the Twitter.

5     So, obviously, he believes there is.

6          Now, would I file an objection with the court -- again,

7     part of my legal ignorance.  Would I file an objection to the

8     subpoena in order to argue that it is not relevant to the case at

9     large?  Is that how I best would be served in that department?

10          THE COURT:  Well, I think at this point, because it is

11     just -- it is so late and, you know, these requests are -- they are

12     basically a year and a half old, that any relevance objections have

13     long since been waived.  So I'm not going to entertain any

14     relevance objections.

15          But I'll tell you this, that -- you know, in your

16     conversations with Mr. Bloch, if there's some account that, you

17     know, clearly wouldn't have any relevant information, then you will

18     want to have that conversation with him, because I don't think that

19     they want to have -- to have just information that doesn't have

20     anything to do with this case.

21          But you certainly should look at the defendants' *[sic]*

22     request for production of documents, because the information that

23     they are seeking, it may be -- it may cover something that could

24     have been on an account from a number of months before the August

25     2017 incident in Charlottesville.  So, you know, I would just keep

```
1   that in mind.
2            MR. BLOCH:  Judge, if I might -- if I might just add one
3   thing.
4            I just want to stress that in filling out the
5   interrogatory responses and the certifications, the question is
6   accounts and devices that a given defendant used to communicate
7   about the events at issue in this case or our documents request.
8   It is not accounts that they have control of, accounts that they
9   set up.
10           So, for example, if Mr. Heimbach had or communicated on a
11  Traditionalist Worker Party email account, for example, that would
12  be something that he would need to disclose in the certification.
13  If it turns out that he doesn't have access to that or didn't
14  create it or doesn't control it, it may be that we need to go
15  elsewhere to get the credentials for it.  But the tack for him at
16  this point is to disclose to us every account and device that he
17  used to communicate about the relevant issues in this case.
18           THE COURT:  That's right.  And also, even if you-all
19  think that an account has been, you know, deleted or you don't have
20  access to it, you still need to identify that.  You know, any
21  account that you used to communicate or one that you were
22  associated with, you would need to identify, because it may be
23  that, you know, Twitter or Facebook or some other social media
24  group would still have that information.  So you have to identify
25  it.  That is part of your obligation.
```

1        MR. HEIMBACH:  Okay.  I apologize, Your Honor, if it

2   sounds like beating a dead horse.  I just want to make sure that I

3   fully understand.

4        So, in regards to Twitter, like Mr. Bloch was saying that

5   I did not -- I can personally say that I did not communicate about

6   this event on December 4th, so do I not list that, then?  Or just

7   (inaudible) throw everything against the wall and then they can

8   kind of sift through it from there?  (Inaudible.)

9        I can honestly say there was no communication about

10  anything involving Charlottesville.  I didn't speak about

11  Charlottesville on that day.  But I don't want to be in violation

12  of the court by not submitting something.  But at the same time, I

13  just want to say that I just know personally that that particular

14  account would not be relevant.

15        THE COURT:  Well, what I -- what I would suggest is that

16  you talk to Mr. Bloch about it.  And if there are -- Mr. Bloch,

17  there may be -- there may be communications that could be relevant

18  even if the account, you know, was closed well before -- well

19  before the events in Charlottesville.  But it also may be that

20  there wouldn't be.  So I would just -- you-all are going to talk

21  later today.  I would have that conversation.

22        And, you know, if there's -- after you have fleshed it

23  out some more, I'm happy to have just a short call with -- you

24  know, with the two of you to address that, if there's some

25  lingering questions.  Okay?

```
 1            MR. HEIMBACH:  Thank you, Your Honor.  (Inaudible.)
 2            THE COURT:  All right.
 3            All right.  Mr. Bloch, we have heard from Mr. Heimbach
 4   and Mr. Hopper and now Mr. Kline, a bit about what they did and
 5   what they -- as far as preserving evidence and what things they
 6   had.  What else would you want to hear on that topic, recognizing
 7   that it is also going to be something that you can ask them about
 8   in the depositions?
 9            MR. BLOCH:  Right.  Thank you, Judge.  I think -- for
10   purposes of this call, I think we have heard from each regarding
11   the steps they took to preserve.
12            I wanted to make -- I wanted to make one point to
13   Mr. Hopper which relates to something you were saying earlier,
14   Judge, which is that in his capacity as a representative of
15   Vanguard America, his obligations in terms of filling out discovery
16   documents, representing what accounts and devices were used, as
17   well as answering those questions in a deposition, goes beyond just
18   which accounts and devices he personally used.  But there's some
19   -- an obligation for him to make those disclosures with respect to
20   others in Vanguard America.
21            MR. HOPPER:  This is Mr. Hopper.
22            I completely understand what Mr. Bloch is referring to.
23   The only issue that I have is in the email -- give me one moment to
24   pull it up -- in the email, like he said with the Twitter
25   templates, it says I'm a registered account holder and sole
```

1   authorized user of the Twitter account associated with blank.  So

2   if I was not the registered account holder or the Twitter -- or the

3   authorized Twitter user, how do I proceed with providing that

4   information, so that I could address the document and submit it

5   properly?

6           MR. BLOCH:  Judge, I'm happy to have a call with

7   Mr. Hopper after the -- after this and go through that as well.

8           THE COURT:  All right.  Yeah, I think that's the

9   appropriate way to do it.

10          Mr. Hopper, you know, working out those sort of logistics

11  and how to comply I think are things that you-all can discuss.

12          MR. HOPPER:  Absolutely, sir.  Thank you.

13          THE COURT:  All right.  Thank you.

14          All right.  Are we ready to move on to setting some

15  deadlines for the different obligations and -- you know, and

16  providing the consents and certifications and things like that, and

17  then setting a deadline for any additional responses to

18  interrogatories and --

19          MR. BLOCH:  That's fine with me, Judge.

20          This is Mr. Bloch.

21          THE COURT:  All right.

22          All right.  Well, I -- Mr. Kline, I know you were going

23  through some of those documents and -- that you've received from

24  the plaintiffs' counsel.

25          And, Mr. Heimbach and Mr. Hopper, have you-all received

```
 1    those -- the consent forms for Discord and also, you know, the

 2    stipulations about the electronically stored information and the

 3    certification documents for the accounts and devices?  Have you-all

 4    received those documents from plaintiffs' counsel?

 5                (Inaudible).

 6                THE COURT:  I'm sorry.  Mr. Kline?

 7                MR. KLINE:  I was saying, yes, I have received that.

 8                THE COURT:  All right.

 9                And Mr. Heimbach?

10                MR. HEIMBACH:  Yes -- yes, Your Honor.  And in regards

11    to, for instance, the electronically -- the electronic devices and

12    such, I guess I will be talking with Mr. Bloch in regards to those

13    issues.  I -- it is -- it is a bit confusing, but I'm more than

14    happy to work with it -- through it with him, to try and figure all

15    of this out.

16                But I have received substantive amounts of emails with a

17    variety of different documents attached.

18                THE COURT:  Okay.

19                And, Mr. Hopper, it sounds like you have received those

20    as well?

21                MR. HOPPER:  Yes.  I'm -- I have already filled out the

22    Discord document.  I'm just trying to work out the Twitter

23    document.

24                THE COURT:  Okay.  All right.

25                I think that -- you know, if it is a -- because it really
```

```
 1   just concerns a matter of executing some consents and then

 2   identifying, you know, the accounts and devices, I think that a

 3   week is enough time to be able to do that.  Do you-all have any

 4   different thoughts as to the timing for that?

 5            MR. HOPPER:  Your Honor, this is Mr. Hopper.

 6            No, Your Honor.  I believe -- I believe one -- one full

 7   week should be sufficient.

 8            MR. HEIMBACH:  Your Honor, Mr. Heimbach here.

 9            I would only request in that, because I want to make sure

10   that I can do everything properly again, there's a lot of different

11   documents here, I think a week should be more than reasonable.  But

12   within that, can Mr. Bloch perhaps set aside, other than this

13   afternoon, perhaps a follow-up call after I have worked through the

14   initial documents, just to ensure that everything -- that he has

15   everything that he needs?  I don't want to go a week and think I

16   have covered everything and then I miss something and be found

17   -- and, you know, found that I haven't fulfilled all of my

18   obligations.

19            MR. BLOCH:  That's fine, Judge.  Rest assured, if he

20   misses something, we'll point it out to him.

21            MR. HEIMBACH:  Oh, I'm sure.

22            MR. BLOCH:  But I'm happy to have a follow-up call as

23   well.

24            THE COURT:  All right.

25            And, Mr. Kline, is a week -- will a week give you
```

1  sufficient time?

2          MR. KLINE:  Yes, Your Honor.

3          THE COURT:  All right.  Well, what I'll do -- I will get

4  an order out today or tomorrow that will set a week's time for

5  those -- the consents for the different accounts and then also the

6  certification and, you know, other documents as well.

7          The other things that we need a deadline for are, you

8  know, to complete any interrogatory answers.  And then, if there

9  are any documents that are outside of the scope of the stipulation

10 that concerns electronically stored information, I think we also

11 need a deadline for those as well.  And I think that something

12 around, you know, 21 to 30 days is certainly sufficient there.

13         Does anybody have other thoughts on that?

14         MR. BLOCH:  Judge, is that for the interrogatories and

15 requests for production?

16         THE COURT:  Yes.

17         MR. BLOCH:  I think -- Judge, I think that -- I think 21

18 days is fine.  I don't know if you are including in that the

19 certification about accounts and devices?  I think it might be

20 helpful to have a quicker date for that.

21         THE COURT:  Yeah, the certification would be in seven

22 days, along with the consents for any --

23         MR. BLOCH:  Right.

24         THE COURT:  Yeah.  That process will certainly take

25 longer, but it starts with getting the certifications.

```
 1            All right.  Well, we'll set -- for any written discovery

 2   responses and production of documents outside of that stipulation

 3   and the certification process, we'll set that deadline as 21 days.

 4            All right.  And you have -- you-all have agreed to dates

 5   for the depositions.  I think, Mr. Hopper, yours is set for July

 6   30th; and, Mr. Kline, yours is August 7th; and, Mr. Heimbach, yours

 7   is August 9th.

 8            MR. HOPPER:  Yes, Your Honor.  In terms of the corporate

 9   deposition, I believe the original email had stated at the closest

10   federal court house.  And in regards to that, will we pick what

11   exactly the closest location is and the details of that?  Will that

12   be handled between Mr. Bloch and myself as time goes on?  Or will

13   that be coming from the court?

14            THE COURT:  Mr. Bloch, I think that would be something

15   that you-all would agree to as to what location.

16            MR. HOPPER:  Okay.

17            MR. BLOCH:  I agree, Judge.  We're happy to set that out.

18            MR. CAMPBELL:  Your Honor, this is Dave Campbell.

19            I have dates out on my calendar, but I do not have

20   communications firming up who and where or anything like that.  So

21   I would just ask to be included on any of those sorts of

22   communications.

23            MR. DINUCCI:  This is John DiNucci, Your Honor.

24            I would ask for the same as Mr. Campbell is asking for.

25            THE COURT:  All right.  I'm sure that -- I'm sure
```

1    Mr. Bloch can make sure that happens.

2              MR. BLOCH:  Absolutely.

3              THE COURT:  And, Mr. Bloch, as far as any deadlines for

4    the -- you know, after the seven days for the consents and

5    certifications, do you think it makes sense to set some additional

6    deadlines now for turning over devices and so forth?  Or is that

7    something that we need to wait and see what is identified and what

8    the vendor has to say about producing -- about producing them?

9              MR. BLOCH:  I think, Judge, it might make sense to set

10   deadlines for that as well, at least for -- just because that

11   process is a pretty slow process on the vendor's end, at least with

12   respect to devices and account credentials that are disclosed in

13   the certification.  And if there are follow-ups that we need to

14   deal with, we can do that.

15             But I would think it makes sense to set a deadline either

16   the same seven days -- that they turn over credentials and devices

17   at the same time they do the certifications, or maybe a week after

18   that.

19             THE COURT:  Yeah.  I think setting it at a week

20   afterwards makes some sense, because, if I recall, there was some

21   back and forth with the vendors about arranging for -- you know,

22   for devices to be provided and things like that.

23             MR. BLOCH:  That makes sense, Judge.

24             THE COURT:  Okay.  So, Mr. Kline and Mr. Heimbach and

25   Mr. Hopper, you will do the certifications in seven days.  And then

1    seven days after that will be another deadline for you-all to

2    provide any devices or credentials to the third-party vendor.  And

3    you'll be in touch with the third-party vendor.  And they will tell

4    you, you know, where to produce the devices and how to get them to

5    them.

6            And I think that, you know, the third-party vendor has

7    been pretty good about -- you know, when they get those, they can

8    get them back to you, if you need.  Say you have a laptop that you

9    are -- that would have information on it that you are still using,

10   the vendor is able to get that back to you in short order.

11           MR. HEIMBACH:  Your Honor, this is Matthew Heimbach.

12           Again, in regards to my unique situation, you know,

13   unlike Mr. (inaudible), I don't have the phone that they are

14   requesting.  And, you know, I can provide a very ample from people

15   that are unaffiliated in any capacity with the white nationalist

16   movement or whatnot to explain why I don't have that.

17           Now, would I send those explanations, you know, in a

18   proper form to the court?  Because I don't want to be found in

19   contempt.  But I, you know, can't make bricks out of straw when it

20   comes to a phone that I don't have possession of any longer and I

21   did not knowingly get rid of.  I actually had tried to preserve it.

22   But due to the uniqueness of a situation from March of last year,

23   that, along with a bunch of other things of mine, were disposed of

24   by third parties.

25           MR. BLOCH:  Judge, the one thing I would just remind

```
 1    Mr. Heimbach is to the extent there is a phone that he had over the
 2    last year, say, that he was texting others about the topics that
 3    are addressed in our requests for production, those are responsive
 4    as well.  And so if -- even if it is the case that the phone that
 5    he used on August 12th, for example, no longer exists for whatever
 6    reason, if he sent text messages six months ago about
 7    Charlottesville or any of the topics addressed in our request for
 8    production, that phone needs to be disclosed, produced to the
 9    vendor, and imaged for potential production.
10         THE COURT:  And, Mr. Heimbach, certainly any -- you know,
11    any devices that you used at a time but that you don't have now,
12    you know, you still need to identify them.
13         And, Mr. Bloch, I don't remember if the certification has
14    some space on it to indicate where the device is or if that's
15    something that would need to be -- a further explanation would be
16    necessary?
17         MR. BLOCH:  I don't -- there's -- the certification
18    basically just asks for -- to identify the device type and the
19    nature of responsive documents.
20         The process that we had in place for everybody was that
21    those get imaged by the vendor.  Those documents then get put
22    -- you know, then are given to the defendants themselves for review
23    for responsive documents.  But to the extent they contain
24    potentially relevant documents, which would include a text message
25    from three weeks ago, for example, it needs to be imaged -- you
```

```
 1    know, disclosed on the certification and imaged by the vendor.

 2              THE COURT:  Right.

 3              All right.  Mr. Heimbach, do you have any other questions

 4    about that?

 5              MR. HEIMBACH:  No, Your Honor.  I think I understand.

 6              THE COURT:  Okay.

 7              All right.  Mr. Bloch, anything else that you think we

 8    need to address as far as deadlines for -- you know, for providing

 9    information, getting the account information and devices to the

10    vendor so that the vendor can harvest information?  And then, of

11    course, we'll need to address deadlines for actually getting those

12    documents to the plaintiff.  But we should probably hear from

13    Mr. Kolenich and Mr. DiNucci and other folks on that topic as well.

14    And then -- I don't know that we need to set deadlines at this

15    point for Mr. Kline and Mr. Heimbach and Mr. Hopper to produce

16    information from the vendor.  I think I would want to hear more on

17    that.

18              MR. BLOCH:  I agree, Judge.  I think that covers it in

19    terms of Mr. Kline, Heimbach, and Hopper's and Vanguard America's

20    discovery obligations at this point.

21              THE COURT:  Okay.

22              All right.  Mr. Kline or Mr. Heimbach or Mr. Hopper, do

23    you-all have any questions or anything that you wanted to raise?

24              MR. HOPPER:  This is Mr. Hopper, Your Honor.  No, I don't

25    have any questions.
```

```
 1              MR. KLINE:  This is Mr. Kline.  I'm in the same boat.

 2              THE COURT:  Mr. Heimbach, anything else?

 3              MR. HEIMBACH:  No, Your Honor, not at this time.

 4              THE COURT:  All right.  Why don't -- let's move to the

 5    discovery generally and the document production from the other

 6    defendants.

 7              Mr. Bloch --

 8              MR. BLOCH:  Judge, the -- as far as I'm aware in terms of

 9    the reports that we have gotten from the vendor, there are a number

10    of documents that the defendants have -- that have been on the

11    platform ready to be reviewed.  I know that defense counsel is

12    engaged in the process of reviewing, although I think it has been a

13    matter of months now for some of the documents that are -- that are

14    on the platform, ready to be reviewed.  And, you know, as I stated

15    earlier, we don't -- we literally haven't gotten a single document

16    from that production.

17              I would echo Ms. Kaplan's point that, you know, we agreed

18    upon search terms so that the universe of documents that the

19    defendants would be reviewing would presumptively be responsive.

20    So -- and as Your Honor noted, we do have a clawback provision.

21              So we are eager to move this case forward.  We have

22    proposed to some of defense counsel, I think maybe all of them,

23    that if they wanted to produce to us -- if they wanted to screen

24    for privilege, which shouldn't take much time, and produce the

25    rest, understanding that there's a clawback provision, that would
```

1    be the most efficient way to do this.  And I think it is -- I think

2    doing it any other way seems to be taking way too long, in our

3    opinion.

4             THE COURT:  All right.  Mr. Kolenich, what is -- what is

5    your view on this?

6             MR. KOLENICH:  What Mr. Bloch states is accurate.  That

7    is certainly an efficient way of doing it.  But, you know, the

8    normal ESI procedure is review and then production and then

9    vis-a-vis litigation and reviewing for, you know, proprietary

10   information, compensation of officers and directors and that sort

11   of thing.  In this case we have an analogous situation, which are

12   membership lists of the organizational defendants, in my case

13   Identity Evropa and Traditionalist Worker Party.

14            There have, as the Court may be aware, been a number of

15   formerly anonymous individuals who have been docked, many of whom,

16   even though they should have strong union protections, have been

17   fired from their jobs.  And this Court has already ruled that they

18   have First Amendment rights to participate anonymously in these

19   organizations.  So I have to remove their identifying information

20   from these devices.

21            Now, you know, if I fail to do that, am I not subject to

22   a negligence cause of action or even an ethical violation?  And

23   when I am subject to those actions, while I'm sure Ms. Kaplan's

24   opinion of the matter will be given due consideration in the courts

25   of Ohio, I sincerely doubt that's going to carry the day.

1        If the Court orders me to simply turn this stuff over,

2   subject to the clawback provision, subject to the highly

3   confidential designation, what is the remedy if somebody's name

4   leaks out that shouldn't have been turned over?  It is an

5   intractable problem.

6        Now, again, Mr. Bloch is not wrong, the plaintiffs are

7   not wrong, this is taking a long time.  I'm doing the best I can.

8   But these names have to be identified and removed.  I don't see any

9   way around it.  Now, a court order would be a whole lot better than

10  Ms. Kaplan's opinion, nevertheless.

11       MR. BLOCH:  Judge, the issue with membership lists

12  -- this is Mr. Bloch -- is a very discrete issue that applies to a

13  couple of entities.  There are a number of individuals that each

14  defense counsel represents.  And we haven't gotten a single one of

15  their documents either.  So I don't know that the membership issue

16  is any real explanation for not having produced from any

17  individuals.  I also think that's a very specific discrete problem

18  that we can talk about and address.  And it is also -- we have a

19  protective order that would prevent any disclosure of it.

20       So I -- I don't know that that addresses the issue of why

21  we haven't gotten any documents from anybody.

22       MS. KAPLAN:  Your Honor, if I might add -- it is Roberta

23  Kaplan -- as Mr. Bloch just said, we have a protective order in

24  this case.  There's no evidence that anyone on the plaintiffs' side

25  has done anything in violation of the protective order.  I don't

1   understand how Mr. Kolenich would personally be responsible for

2   some documents pursuant to a federal (inaudible).  So that just

3   doesn't make any sense either.

4        MR. KOLENICH:  Your Honor -- Jim Kolenich -- they have

5   got me on the individuals.  That's true.  And I think that I would

6   be willing to say that we can make production very soon, within a

7   week, on the individual defendants, with the possible exception of

8   Mr. Cantwell.  There are separate issues, aside from discovery,

9   with Mr. Cantwell.

10       And then we have -- I'll discuss -- I have discussed some

11   of this with Mr. Bloch, and I'll discuss it further.  There are

12   issues with Mr. Cantwell and Mr. Ray.  And we'll figure out how to

13   work around that and make production.

14       Mr. Kessler is basically ready to go.  Mr. Damigo will be

15   ready to go here in very short order.  And then we have the

16   organizational defendants that if they have some good idea how to

17   get around that or why I can rely on the confidentiality order,

18   then that's great; I'm all ears.  I would like to be rid of this

19   project just as much as they would like to have the production.

20       But, just generally, I agree with Mr. Bloch's point that

21   my original presentation, obviously, does not cover individual

22   defendants.

23       THE COURT:  All right.  I do think that the -- you know,

24   the protective order provides -- should provide protection for

25   those individuals who are not involved in this lawsuit and really

1   should protect their privacy concerns.  That information should not

2   -- and I don't have any reason to think that it would -- be

3   disclosed.

4           So I -- you know, I -- Mr. Kolenich, I understand the

5   -- you know, your concern in protecting those folks and not having

6   their information out for any sort of public use.  But, you know,

7   if all it is is going to the attorneys in this case, the

8   plaintiffs' attorneys, you know, I don't have any reason to think

9   that it is going to be improperly disclosed.

10          MR. KOLENICH:  Your Honor -- Jim Kolenich -- that wasn't

11  my implication.  Nobody on my side suspects the plaintiffs'

12  attorneys or the third-party vendor of being responsible for the

13  release of certain identities.  Nevertheless, I have no good answer

14  to, if there was a leak, you know, from staff, from some sort of

15  negligence in the handling of the electronic information, what is

16  the remedy of the person who then loses their job?  And why is

17  their main remedy not suing the lawyer who shouldn't have turned

18  that information over?

19          Now, the Court is saying "I don't have any reason to

20  suspect."  Ms. Kaplan is saying "This is ridiculous."  I don't

21  disagree on a, you know, level of our profession.  But if something

22  does happen, the obvious litigation target is me or the other

23  defense lawyers.  And, you know, is Ms. Kaplan going to indemnify

24  me?  Is the Court going to indemnify me?  I suspect the answer is

25  no.  And I have no good way to enforce that.

1          So this is the holdup.  And I would like a little bit

2    more time to discuss it with the plaintiffs' attorneys as to how we

3    can get around this.

4          Other than that, they are not wrong.  It has taken a long

5    time for us to get into this issue.  And we should be producing.

6    On the individual level I will assert that I will be producing very

7    soon, on the individual collections.

8          MS. KAPLAN:  Your Honor, we obviously can't indemnify,

9    (inaudible) Mr. Kolenich.  I only can say, having been in

10   commercial matters for a couple of decades now, any such claim

11   would be frivolous, given the federal court order in this case.

12         THE COURT:  Well -- I mean, Mr. Kolenich, if you are

13   required, you know, to produce the information by court order,

14   which you are -- but I -- I understand your -- I understand your

15   concerns.  And I also think that there needs to be an end point

16   too.

17         So, you know, to the extent that you can work out

18   (inaudible) with the plaintiffs and get the documents to them

19   shortly, I'm okay with allowing you-all a little bit more time just

20   to see if you can work that out.  But I do think that those

21   -- regardless, the information needs to be produced like in the

22   next couple of weeks.

23         On the individuals, you said a short time.  Do you think

24   you will have that to them within the week?

25         MR. KOLENICH:  I think I can, Judge.  We have done quite

1    a bit with the individuals.

2            Now, I did mention some side issues with Cantwell and

3    Ray.  But I'll clear that up with Mr. Bloch, so that everybody is

4    clear on what is going on.  And then if there has to be a couple of

5    days' delay while we address those issues, perhaps the Court can

6    -- you know, at least the plaintiffs -- I told them ahead of time

7    what I'm doing.  It won't just be some filing out of the blue.

8            THE COURT:  All right.

9            All right.  Mr. DiNucci, you had some concerns as well.

10   Do you see -- having heard all of this, do you see a bit more of a

11   way forward?

12           MR. DINUCCI:  Well, Judge, I welcome an opportunity too.

13   And I have got to admit, I am sort of remiss in not getting back to

14   Mr. Bloch yet.  But I would like to have -- you know, communicate

15   with Mr. Bloch to see if at least initially we narrow the scope of

16   what I would have to do, if I'm doing the review, as opposed to

17   making all of the documents, except privileged documents, available

18   to the plaintiffs.  I'm concerned about that methodology may -- you

19   know, cull the privileged materials and turn everything else over

20   so the plaintiffs can spend time reviewing them, because, based on

21   the preliminary review we have been doing, there's a fair amount of

22   personal information of Mr. Spencer's that is, you know, within the

23   documents that the third party vendor has identified.  And, yes, I

24   understand there's a protective order in place, but I'm loathe to

25   turn over stuff that is personal and confidential.

1          I mean, for example, there's material that we have seen

2    about Mr. Spencer's divorce.  He has got an ongoing divorce case,

3    which, according to the press, has been pretty acrimonious.  I

4    don't really want to have to turn that over for them to review.

5          The problem -- the underlying problem is the vast

6    quantity of documents that have resulted in hits.  As I said

7    earlier, I think IDS has indicated something like 300,000 documents

8    I may have to deal with.  And that alone means it is going to take

9    a fair amount of time just to cull privileged information.

10          And I -- you know, some of the information I have got

11    indicates some of the documents that have resulted in hits actually

12    go back to 2014 and extend up to 2017.  To be honest, there's a lot

13    of documents that, notwithstanding that search terms may have been

14    determined by the plaintiff just to result in relevant information,

15    that aren't going to be relevant.  Something back in 2014 is going

16    to have nothing to do with this case.

17          So I would like an opportunity -- and, again, it is my

18    fault for not getting something to Mr. Bloch sooner, but I'm not an

19    IT guy and I'm trying to consult with some people on narrowing this

20    thing, you know, some proposed narrowing, so I can actually sit

21    down and review every single document, not -- you know, first, for

22    privilege, but then for relevance.

23          Plus, I need to know what the evidence is.  If we turn

24    everything over to the other side except for the information, I

25    still have to look at this stuff.  And it is -- the rough estimate

1    we have done internally is it can take over a thousand hours to go

2    through this stuff.

3         THE COURT:  Yeah, but, you know, we can't just postpone

4    discovery and have your document production put off for months so

5    that you can review every single -- every single document.  That is

6    part of the reason, you know, for the search terms, so that we can

7    get this moving.

8         MR. DINUCCI:  Well, if I could, Your Honor, I would like

9    to add too, one of the search terms is Mr. Spencer's name, which is

10   a result, I think, according to an email I seem to remember getting

11   from IDS, is part of the reason there's so many hits.  I mean, his

12   name is one of the search terms.  But I understand Your Honor's

13   point.  I mean, I'm not suggesting that I can let this -- that this

14   thing can (inaudible).

15        THE COURT:  Yeah.  Well, why don't --

16        MS. KAPLAN:  And just one (inaudible).  It is not like we

17   just proposed them unilaterally.  They were agreed to.  And that is

18   what was agreed to before we spent all of the money we did to have

19   the vendors do the searches.

20        Number two, there's no excuse for not producing things on

21   a rolling basis.  That's what is typically done in cases.  And,

22   again, we haven't received a single document.

23        THE COURT:  Yeah.  Mr. DiNucci, are there some -- have

24   you gotten through some portion of the documents so that you can

25   turn some over?  And are there others that you are just not in a

```
 1    position to turn over at this point?

 2              MR. DINUCCI:  Your Honor, we have only just scratched the

 3    surface.

 4              THE COURT:  All right.  It sounds like you-all need to

 5    get going on these, then.

 6              I think it would really make sense for you-all to talk

 7    off -- I think it does make sense for you-all to talk off-line, to

 8    see if there's some way, you know, to expedite, but also perhaps to

 9    narrow the -- narrow the search.  But --

10              MR. DINUCCI:  Well, again, Your Honor, one initial

11    narrowing that comes to mind -- Ms. Kaplan mentioned doing things

12    on a rolling basis.  If -- if -- one possibility is an agreement

13    that the temporal scope of the search -- an initial -- that the

14    initial detailed deep search for documents be limited temporally,

15    let's say, to 2017 or maybe late 2016 into '17.  You know, that

16    seems to be, logically at least, where it would be most fertile

17    ground for the plaintiffs.  If we had a mechanism like that so this

18    thing was staged, it would make a lot more sense.

19              One other thought too, Your Honor -- and I was reading

20    the other day that the entity funding this lawsuit has raised $10

21    million to fund it -- I would suggest perhaps that entity can pay

22    for me to hire people to go through these documents with me.  That

23    way I'm not turning over personal information.

24              MS. KAPLAN:  Your Honor, it would be absolutely

25    (inaudible) for us to pay for attorneys' fees (inaudible).
```

1          The fact that we're paying for getting the documents

2    (inaudible).  Obviously, that would be that we pay for attorneys

3    (inaudible) absurd.

4          With respect to the date ranges, the date ranges vary

5    from topic to topic, as Mr. Bloch has so well explained on this

6    call.  We are afraid that if we agree to a narrower date range, we

7    are never going to see anything from outside of that date range.

8          MR. DINUCCI:  That's not what I'm suggesting, Your Honor.

9          I'm sorry, Ms. Kaplan.

10          MS. KAPLAN:  If they want --

11          MR. DINUCCI:  Your Honor, if I may.  What I'm suggesting

12    is if we were to start that way, which would seem logically to be

13    the most relevant time period, and then move on to another time

14    period, or perhaps a conclusion may be drawn by both sides that

15    going to 2015, going to 2014, is not worth it; it is not

16    -- potentially it is not proportional to the needs (inaudible).

17          THE COURT:  All right.  Here is what I want you-all to do

18    on -- it sounds like -- it sounds like, Mr. Kolenich, you are not

19    running into the same problems with just the pure amount of

20    documents.  You-all have had a lot, but I'm not hearing that you

21    are running into the exact same issues as Mr. DiNucci.

22          But why don't --

23          MR. KOLENICH:  Well -- I'm sorry.  Go ahead, Judge.

24          THE COURT:  No.  Go ahead.

25          MR. KOLENICH:  Jim Kolenich.

1           We have an extremely large amount of documents, but my

2    clients are comfortable -- their main concerns are these

3    identities, you know, the membership lists.  So their personal

4    communications from grandma and so forth, they are comfortable that

5    that is not going to get leaked.  And, you know, it will not really

6    be a concern even if it did.  And they don't have any contentious

7    divorces or things like that.  So, I guess, to that extent, no, we

8    don't have those issues.

9           THE COURT:  All right.  What I want you-all to do,

10   Mr. DiNucci and Ms. Kaplan and Mr. Bloch, is just see if there's a

11   way that you-all can come up with to carve out some of these

12   sensitive issues, if you agree that they are not relevant, like,

13   you know, discussions of the divorce case.  And then if there's any

14   additional way to -- you know, to narrow the word search, then do

15   that.

16          But it is going to -- Mr. DiNucci, there is going to be a

17   deadline for the production.  And it may be that you are going to

18   have to rely on the word search and the protective order and

19   clawback and things like that to provide the additional assurance,

20   because these documents do need to be produced, you know, in a

21   reasonable time.

22          I'll let you-all take a crack at figuring out what that

23   is after talking a bit more, but I don't see this as months.  I

24   think in, you know, weeks or, you know, 30 days at the most, unless

25   there's something -- you know, something that I haven't taken into

1  account of that.  But why don't you-all talk first.  And if you

2  can't come to an agreement, we'll have a conference call next week

3  just to discuss, you know, whether -- whether it is appropriate to

4  do any further narrowing and also to have a firm date for the

5  production.

6           MR. DINUCCI:  Understood, Your Honor.

7           MR. BLOCH:  That sounds good to us, Judge.  This is

8  Mr. Bloch.

9           THE COURT:  All right.  Is there anything else that we

10 need to take up as far as discovery generally?

11          MR. BLOCH:  As far as -- did you say discovery, Judge?

12          THE COURT:  Yes.

13          MR. BLOCH:  I don't believe there is anything else from

14 the plaintiffs' side.  I don't know if my colleagues -- any of my

15 colleagues want to jump in.  But I think that's all we have on

16 discovery.

17          Judge, I wanted to just give you a heads-up that we sent

18 Your Honor an email last week attaching a post from Mr. Cantwell

19 that was threatening to Ms. Kaplan.  I wanted to give you a heads-

20 up that we filed a motion today with Judge Moon with respect to

21 that issue.  And we will give Your Honor a court -- a courtesy

22 copy.

23          THE COURT:  Okay.

24          MR. BLOCH:  Generally speaking, Judge, the motion just

25 seeks to enjoin Mr. Cantwell from making additional unlawful

```
 1    threats to the plaintiffs or plaintiffs' counsel.
 2              THE COURT:  All right.
 3              All right.  And I -- that is something that I have been
 4    -- I have been thinking about.
 5              All right.  Mr. Kolenich or Mr. DiNucci or other defense
 6    counsel, are there any other issues to raise today?
 7              MR. KOLENICH:  Mr. Kolenich.  Nothing further, Your
 8    Honor.
 9              MR. DINUCCI:  John DiNucci.  Nothing further, Your Honor.
10              MR. CAMPBELL:  This is Dave Campbell.  Nothing further,
11    Your Honor.
12              MR. JONES:  Nothing further for me, Your Honor.  Bryan
13    Jones.
14              THE COURT:  All right.  Well, then if there's nothing
15    additional to discuss today, I will work on orders for Mr. Kline,
16    Mr. Heimbach, and Vanguard, Mr. Hopper, about the discovery
17    obligations.  And I will try and get those out today, and at the
18    latest tomorrow.
19              All right.  If there's nothing else, then thank you-all
20    for calling in today and for working through these issues with me.
21    And have a good rest of your day.
22              UNIDENTIFIED VOICE:  You too, Your Honor.
23              MR. BLOCH:  Thanks very much, Judge.
24              MS. KAPLAN:  Thank you, Your Honor.
25              THE COURT:  All right.  Bye.
```

1          (Thereupon, these proceedings were adjourned at 1:33 p.m.)

2

3          I, court-approved transcriber, certify that the foregoing is a

4    correct transcript from the official electronic sound recording of

5    the proceedings in the above-entitled matter.

6          /s/ Carol Jacobs White                 July 5, 2019
           Signature of Approved Transcriber              Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25