CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

JUL 11 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE WESTERN DISTRICT COURT OF VIRGINIA

SINES v. KESSLER                    CASE NO.: 3:17-cv-00072

Matthew Heimbach,
                    Respondent.

_____/

## RESPONDENT'S MOTION TO DISMISS

The allegations within the lawsuit known as **SINES v KESSLER** against Respondent Heimbach do not meet the legal standard of evidence or proof, and because of this, Respondent Heimbach humbly asks the court to dismiss the portion of the lawsuit pertaining to him.

Beginning with the very first page of the **NATURE OF THE ACTION** there are blanket allegations that either do not pertain to Respondent Heimbach, or are the opposite of what Respondent Heimbach actually did during those two days in August of 2017.

Beginning with the portion of the complaint which states Respondent Heimbach and others came to Charlottesville "*in order to terrorize its residents, commit acts of violence, and use the town as a backdrop to showcase for the media and the nation a neo-nationalist agenda.*" Respondent Heimbach went to Charlottesville to participate in a rally with one specific purpose, to protest the removal of the statue of Confederate General Robert E. Lee from a Charlottesville city park.

Respondent Heimbach had participated in a prior and peaceful protest in the same location several months prior, with the exact same purpose.

On the accusation of Respondent Heimbach and others trying to "use the town as a backdrop to showcase for the media and the nation a neo-nationalist agenda" Supreme Court case *Snyder v Phelps* speaks to this in upholding the right to picket and demonstrate.

The plaintiff in *Snyder v Phelps* argued against the Westboro Baptist Church being allowed to protest "*as a platform to bring their message to a broader audience.*" The case was decided that "*picketing addressed matters of public concern*" was protected, with Justice Roberts specifically rejecting a civil conspiracy claim based upon the supposed emotional distress of the plaintiff that were alleged to have been caused by the Respondent in this case and stating "*Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and – as it did here – inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course – to protect even hurtful speech on public issues to ensure that we do not stifle public debate.*"

Respondent Heimbach never intended to, and did not, terrorize the residents of Charlottesville with his participation in a legally permitted rally. In fact, following the evidence of a poll from Quinnipiac University of Virginia residents that, "*57 percent oppose removing Confederate monuments from government property across the state*" it is reasonable to assume that the position in regards to the statue of Robert E. Lee was in fact the majority opinion of the residents of Charlottesville, and thus not even a particularly controversial one.

https://www.nbc12.com/story/38512663/poll-majority-of-virginia-voters-support-leaving-confederate-monuments-alone/

As per part three of the **NATURE OF THE ACTION** "*They also brought with them semi-automatic weapons, pistols, mace, rods, armor, shields, and torches*" there are many falsehoods in this declarative statement.

Respondent Heimbach did not bring any weapons to Charlottesville and actively instructed members of his organization and others to not bring any weapons to Charlottesville.

Respondent Heimbach was wearing a helmet in Charlottesville, and members of his organization also had helmets and protective shields, but this was for purely defensive purposes. Media reports in the days and weeks prior to the event stated that law enforcement had been informed that antifascists would use projectile weapons to attempt to injure rally participants.

The Final Report of the independent review into the Charlottesville rally stated "*it was suggested that left-wing counter-protesters, such as Antifa, would attempt to disrupt the event using soda cans filled with cement and balloons or water bottles filled with paint, urine, or fuel.*"

The active danger posed to rally goers by antifascists was confirmed not only with video evidence, but reported by Henry Rodgers of the Daily Caller where he stated on August 16th 2017 that "*The radical left also began throwing a variety of items at the white supremacists, such as balloons filled with urine, paint, or pieces of concrete, as well as soda cans filled with concrete, food, and full water bottles. When they were out of items to throw, the radical left would search the streets for anything they could find to throw.*"

https://dailycaller.com/2017/08/16/brutal-examples-of-violence-that-occurred-by-both-sides-in-charlottesville-video/

Respondent Heimbach was struck by a counter-protester with a club. Had he not been wearing a helmet, this attack could have been fatal or debilitating. On the subject of self defense, the Virginia Court of Appeals has stated that "*the amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat.*" When media reports and law enforcement all were saying in the lead up to the rally in Charlottesville that the opposing side would attempt to utilize potentially lethal projectiles and other weapons the preparation of legal self defense tools such as helmets is common sense and reasonable and thus that is how Respondent Heimbach prepared for the event, the opposite of what the lawsuit alleges.

The complaint then states that "*Starting at least as early as the beginning of 2017 and continuing through today, they have joined together for the purpose of inciting violence and instilling fear within the community of Charlottesville and beyond, wherever their messages are received.*" This statement is a bold-faced lie, based upon the evidence of the political activity taken by Respondent Heimbach throughout his political career.

The Final Report of the Independent Review found that "*CPD officers received some information from outside agencies and groups. For example, one detective spoke with the police chief in Pikeville, Kentucky and an FBI agent in Louisville to discuss how the Traditionalist Worker Party had behaved during a recent event in Pikeville. The Kentucky officials advised the detective that the TWP had arrived in town early to perform their own intelligence ahead of the rally. The FBI agent told the detective that the **TWP was not likely to cause problems, though groups that might show up to oppose them could**.*"

Respondent Heimbach, leading the Traditionalist Worker Party, had recently held an event in Pikeville Kentucky in which several hundred nationalists from multiple organizations came together at a legally permitted event and there was no violence or arrests. The message brought by Respondent Heimbach of community organizing, political action, and cultural pride was received by the people of Pikeville and the surrounding area, without any violence or illegal activity.

The complaint accuses the defendants of conspiring when joining forces, but the event known as "Charlottesville 1.0", the rally in Pikeville Kentucky, and other joint events in 2016 and 2017 in the leadup to "Charlottesville 2.0" were all peaceful events.

After Charlottesville there was a several hundred person nationalist rally in Shelbyville Tennessee in November of 2017. At this event there were many participants of "Charlottesville 2.0" and multiple organizations, once again it was a peaceful demonstration focused only on community organizing and explaining the principles of nationalism to members of the local community.

Respondent Heimbach and his compatriots have a track record both before and after August of 2017 of holding peaceful political demonstrations, so the accusations that there has been a "purpose of inciting violence and instilling fear" simply does not have a link to reality.

Point four of the complaint states "*the violence in Charlottesville was no accident.*" Fundamentally Respondent Heimbach agrees with that sentiment, but the violence was due to the inaction of law enforcement. Officer Lisa Best of CPD stated for the Independent Review that officers "*were not going to go in and break up fights*" because as the Independent Review continued "*Rather than engage the crowd and disperse fights, the CPD plan was to declare the event unlawful and disperse the crowd.*"

The Independent Review flat out admits that the CPD, instead of upholding the law and the Constitution to protect the Freedom of Speech and the Freedom of Assembly of permit holding citizens, their plan was to stand back and allow violence to break out so they could simply cancel

the event. This policy of allowing permit holders to be attacked by non-permit holding counter demonstrators in a justification to shut down the event is a clear violation of the civil rights of the attendees of the "Unite the Right" rally.

As upheld in the ruling of *Yates v. United States* as explained by Justice Hugo Black "*The First Amendment provides the only kind of security system that can preserve a free government – one that leaves the way wide open for people to favor, discuss, advocate, or incite causes and doctrines however obnoxious and antagonistic such views may be to the rest of us.*" The fact that the city of Charlottesville and the CPD had a specific and purposeful strategy to create a situation in which they could then declare an unlawful assembly and restrict the freedom of speech of the attendees is a breach of Respondent Heimbach's First Amendment Rights.

The attendees of the Charlottesville demonstration, Respondent Heimbach included, had a legal permit to attend the demonstration. The ACLU had fought for and a Federal Judge had upheld that permit to hold said event. The CPD and other law enforcement agencies simply sat by and allowed a heckler's veto by the counter demonstrators with bricks, batons, pepper spray, and as reporter Henry Rodgers stated, a "battering ram made out of plywood and reinforced with a metal step ladder." The CPD allowed the counter demonstrators to bring homemade weaponry, along with plenty of modern day weapons, to attack the "Unite the Right" attendees.

Liability lies with the Charlottesville Police Department and violent counter-protesters who sought to use violence, intimidation, and illegal means to block permitted protesters from entering their approved rally space.

One look at the events in Pikeville, Kentucky, Shelbyville, Tennessee, or dozens of other rallies that Respondent Heimbach had participated in would show that he and his comrades had zero violence at these events, the only requirement for no violence is that the police maintain space for both sides to protest, and ensuring that the opposing side is not allowed to bring their weapons to assault Respondent Heimbach and others.

The Independent Review concluded for future events, Charlottesville should "*Direct attendees from secure points of entry into zones within the event dedicated to particular groups, using barricades and buffer zones to promote separation between zones within the perimeter.*" The only reason for violence on August 12th in Charlottesville is because the CPD and city officials allowed disorder to reign, as a method to declare the rally an unlawful assembly as a run-around, on the First Amendment.

The research put forward in the complaint is shoddy, creating a narrative which puts forward a false image of Respondent Heimbach. Point 32 of the complaint states "*In 2013, Heimbach and Defendant Matthew Parrott founded the neo-Nazi Traditionalist Youth Network, a white nationalist group that promotes a racist interpretation of Christianity.*" The Traditionalist Youth Network was not a Christian organization, let alone one that "promotes a racist interpretation of Christianity." The Traditionalist Youth Network had Christian members, atheists, polytheists, both Sunni and Shi'ite Muslims, and Zoroastrians.

The Traditionalist Youth Network also was not an exclusively White organization, let alone a White nationalist organization, having Indigenous individuals and other People of Color as members. The Traditionalist Youth Network believed in community organizing among all communities, and the complaint puts forth a false image of the organization.

The complaint states that "*Heimbach co-chairs the Nationalist Front, an umbrella organization of approximately twenty white supremacist organizations.*" The Nationalist Front, when it was in operation, was simply a loose statement of principles for organizations to belong to.

To have your organization affiliated with the Nationalist Front, the group had to abide by the statement of principles of the Nationalist Front, these principles included "*General Leon Degrelle famously said that 'German racialism meant re-discovering the creative values of their own race, re-discovering their culture. It was a search for excellence, a noble ideal. National Socialist racialism was not against the other races, it was for its own race. It aimed at defending and improving its race, and wished that all other races did the same for themselves.' This is the founding principle of nationalism, loving and improving the lives of our people while wanting each and every race to do the same for themselves in their own Homeland.*

*We as members of the Nationalist Front reject racial supremacy and racial hatred. We acknowledge that each race is unique and has different attributes. While some races might be better in some categories, they might surpass other races in others. Racial differences are a biological reality and should be respected. That is true diversity.*"

The Aryan Nationalist Alliance, a previous organization that the plaintiffs seem to be confusing with the Nationalist Front, had been founded by the National Socialist Movement, included Ku Klux Klan organizations and skinhead organizations such as the Aryan Terror Brigade.

When Respondent Heimbach founded the Nationalist Front, along with other organizations, groups such as the Ku Klux Klan, the Phineas Priesthood, Aryan Strikeforce, Aryan Terror Brigade, and other supremacist organizations were not allowed to join.

To quote from a private letter dated December 17th of 2016 that Respondent Heimbach sent to Joshua Steever, the then leader of the Aryan Strike Force to explain why they could not be members of the Nationalist Front

"*One of the primary ideological foundations of the Nationalist Front is promoting our people and being their advocate, not promoting hatred or disrespect of other ethnic groups.*

*On your personal Twitter feed there are multiple listings that say 'Fuck Niggers', showing photos of severely injured or deformed Africans, making jokes about killing Blacks; all of these are a violation of the NF rules on the rejection of 'racial supremacy and racial hatred.'*

*The most important of violations is the multiple posts and comments that could easily be construed as calls for violence and illegal activity. The purpose of the Nationalist Front is to be a legal, peaceful, and political umbrella for White interests, to give a voice to our people.*

*As we have witnessed with the arrest of the leadership of Golden Dawn, mass arrests of comrades in the Nordic Resistance Movement, and the recent ban of National Action in the UK; the System is steadily upping its harassment and persecution of nationalists. It is imperative that we maintain ourselves as a law abiding movement, to maintain the moral high ground and reject imagery and rhetoric that revolves around illegal activity and violence.*

*From posts on your personal social media that include cocked revolvers pointed at words stating 'unity with race mixing scum, makes you race mixing scum' and frequent posts of ASF members promoting paramilitary activity and outright violence, this becomes a danger to all member organizations of the Nationalist Front.*

*In order to achieve our political objectives and aspirations, we must be radical in our ideas and solutions to the problems facing our people, but that requires us all to work for these objectives through legal channels."*

Inside the Nationalist Front this statement of principles was simply for public consumption, but organizations such as the ones previously listed were not allowed to be members of the Nationalist Front because White supremacy and violent rhetoric were not tolerated.

The complaint states *"Members of TWP voluntarily joined for the common purpose of promoting anti-Semitism."* The Traditionalist Worker Party voluntarily joined together as an organization to be an FEC registered political party that advocated for the best interests of working class White Americans and during the event in Charlottesville Respondent Heimbach and others voluntarily joined for the common purpose of, as Respondent Heimbach wrote in a private Traditionalist Worker Party email prior to the event, opposing our *"cultural genocide through the removal of our monuments and flags."*

Both in public and private, Respondent Heimbach and the Traditionalist Worker Party came to Charlottesville for one purpose, to support the permit filed by Jason Kessler to protest the removal of the Robert E. Lee memorial in Charlottesville. That, and only that, was the motivating reason that Respondent Heimbach came to Charlottesville.

The complaint states that *"Members of the TWP prompted, attended, and fully participated in the events in Charlottesville on August 11 and 12, including by engaging in violence."* This is a clear falsehood put forward by the plaintiffs against Respondent Heimbach.

Firstly, Respondent Heimbach and the Traditionalist Worker Party did not participate in the August 11th "torch march" on the campus of the University of Virginia. Respondent Heimbach specifically instructed members of the Traditionalist Worker Party to not attend the August 11th event because it was not a permitted rally. Respondent Heimbach and the leadership of the Traditionalist Worker Party were in a private cabin, far away from Charlottesville, when the August 11th march took place. To claim that the Traditionalist Worker Party "prompted, attended, and fully participated in the events in Charlottesville on August 11th" is patently false.

The claim that Respondent Heimbach or his compatriots in the Traditionalist Worker Party were "engaging in violence" is also a patently false claim. Neither Respondent Heimbach nor a single member of the Traditionalist Worker Party were charged or even accused with a crime in relation to the events of August 12th.

Inside the section for the "Facts of the Case" it becomes even clearer that the supposed evidence and case against Respondent Heimbach are baseless and thus should result in dismissal from the court.

Once again, the "facts", #51, claim that the Traditionalist Worker Party participated in the torch march; this is a falsehood. Traditionalist Worker Party members were told to not attend said rally, Respondent Heimbach did not attend, and to the knowledge of Respondent Heimbach, no TWP members were at that event.

Point 52 of the "facts" states that the *"event was planned and intended to intimidate, threaten, and harass Charlottesville residents on the basis of race, religion, and ethnicity."* All of the evidence presented to a federal judge about this demonstration in a last minute appeal to reinstate the permit found only that the demonstration existed for one purpose, to protest the removal of the Robert E. Lee statue, and nothing else. Nothing in the actions, public statements or private statements by Respondent Heimbach indicate any desire to "intimidate, threaten, and harass Charlottesville residents on the basis of race, religion, and ethnicity."

A look at Supreme Court case, *Snyder v Phelps* explains that language and beliefs, no matter how controversial are protected speech. To hold a public event to discuss public policy is protected speech, which a permitted rally to take a side on the issue of removing a Confederate monument would surely qualify as a discussion of public policy.

Much like the Westboro Baptist Church in the case which had a proper permit and did not try to get into the funeral in question, it can be shown the fact that Respondent Heimbach only went to the permitted space at Emancipation Park, he did not try to enter the permitted spaces where peaceful counter protesters marched from Jefferson School African American Heritage Center to McGuffey Park, to Congregation Beth Israel where events were being held, or any other space owned/rented/or permitted to those who disagreed with him. Respondent Heimbach only went to speak on a public issue in the space where he had a permit to do so.

Another relevant Supreme Court case would be that of *R.A.V. v. St. Paul.* In the complaint of *Sines v Kessler*, the plaintiffs argue that holding signs and chanting slogans, in public to a totally abandoned park, at a political demonstration such as *"Blood and Soil"* which according to the plaintiffs means "the idealization of a racially defined national body ("blood") unified with a settlement area ("soil") is somehow threatening.

The case of *R.A.V v St. Paul* struck down an ordinance that said *"Whoever places on public or private property, a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or*

*gender commits disorderly conduct and shall be guilty of a misdemeanor."* The Supreme Court found in a unanimous decision that this ordinance was unconstitutional because "*it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses.*" The government and the courts cannot ban speech or expressive activity as a form of speech because it disapproves and disagrees with the things that are being said.

The court wrote that the government cannot "*license one side of a debate to fight freestyle, while requiring the other to follow the Marquis of Queensbury Rules.*" An ordinance could perhaps be crafted to ban slogans from being chanted in Charlottesville parks, but it is unconstitutional for the city or this court to find harm in one side of a public discussion to say "Blood and Soil" but then protect anti-fascist protestors that may chant "Kill your local Nazi."

It is hamfisted for the plaintiffs to claim that saying slogans that have zero threatening messaging, fighting words, or calls for direct and immediate violence such as "You will not replace us" somehow shows a desire or intent to intimidate the citizens of Charlottesville. Everything said at that event is constitutionally protected speech.

A long list of the supposed facts against Respondent Heimbach are based upon the words of Andrew Anglin and other defendants. Respondent Heimbach has long publicly and privately clashed with Andrew Anglin of the Daily Stormer over Mr. Anglin's views on Christianity, women, other races, and political strategy. Respondent Heimbach has always opposed violence, racial hatred, or the view of White supremacy.

An example of the rejection of both political violence and a belief in White supremacy can be found in the actions of Respondent Heimbach following the massacre of innocent Black Bible Study attendees in South Carolina by Dylann Roof in 2015.

After the shooting, Respondent Heimbach traveled at his own expense to South Carolina to purchase a wreath to lay at the site of the massacre, participated in a candlelight vigil for the victims, donated money to a collection for the victims and their families, and attended a rally hosted by the Nation of Islam and other Black community groups.

An ABC news article from June 23rd 2015 that interviewed Respondent Heimbach quoted him as saying he "*condemns the rampage that Dylann Roof, 21, carried out at the historic Emanuel African Methodist Episcopal Church June 17, when Roof walked into a Bible study group and shot and killed nine people. Heimbach said he believes innocent people should never be targeted as a way to advance the white separatist message.*

"*My first gut reaction when I heard about the shooting was, 'Uh no,' because there is no circumstance where taking the lives of civilians, innocent women and children, that's never OK,"* Heimbach said. *"It's very important to show that the white separatists community does not believe in using terrorism against civilians."*

Respondent Heimbach has publicly and privately opposed political violence, as also shown in sections of the book *Everything You Love Will Burn* by Norwegian journalist Vegas Tenold,

where on page 79 Respondent Heimbach is quoted as saying to another White nationalist *"violent resistance doesn't work."* On page 130 of the same book, Respondent Heimbach is quoted as saying *"Violence doesn't work. We know this. Violence doesn't create converts."*

Respondent Heimbach has a long track record in public and private of condemning violence as a political strategy and thus the claim by the plaintiffs that he engaged in conspiracy to commit violence is absurd.

The complaint states that defendants including Respondent Heimbach *"all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others in Charlottesville."* Besides the provable fact that this didn't happen, this claim must be further examined.

In order for Respondent Heimbach to conspire with his fellow defendants, he first would have needed an open line of communication with them and been involved in the planning of the event.

While a Traditionalist Worker Party chat was created in the official organizing group on Discord, it wasn't used by Respondent Heimbach or others in the lead up to the event. Respondent Heimbach was barely on speaking terms with some defendants such as Jason Kessler, and had no communication with many others such as the various Ku Klux Klan and militia organizations named in this complaint.

Fact 71 of the complaint claims *"Individual Defendants, including Heimbach, Parrott, Cantwell, and Ray, were all participants on Discord, and participated in the direction, planning, and inciting of unlawful and violent acts through Discord."* While Respondent Heimbach was involved in that Discord chat and had initially participated in it, Respondent Heimbach withdrew from active participation before the rally.

All of the planning for the event in terms of housing, transportation from the staging area to the park, and others; did not include Respondent Heimbach of his own choice.

Respondent Heimbach and the Traditionalist Worker Party developed their own plan for the event, ignoring Eli Mosley, Richard Spencer, and others; and parked their vehicles in a separate location next door to the CPD station nearby. Respondent Heimbach did not participate in the multi-organization calls for organization just prior to the event because Respondent Heimbach did not know many of the organizers and did not have faith in their organizing ability or political insight.

Respondent Heimbach and other members of the Traditionalist Worker Party notified CPD and other police agencies of where they would be parking, received permission, and planned to attend the rally for the specific purpose of supporting the continued placement of the monument, nothing more.

Fact 93 claims *"Defendants took no steps to prevent any violence"* which is a lie. Respondent Heimbach and the Traditionalist Worker Party did not bring weapons to the event, which when

both sides of the rally were coming heavily armed, was a stark difference from organizations on the "Left" such as Redneck Revolt and on the "Right" such as militias, that patrolled the streets of Charlottesville with semi-automatic rifles and handguns.

Respondent Heimbach repeatedly called for attendees to act in a legal way, not to initiate any violence, and if attacked; use the bare minimum of force to protect life and physical safety, which is the law.

Respondent Heimbach notified CPD and other law enforcement involved in Charlottesville of the parking plans and arrival time of himself and the Traditionalist Worker Party in order to attempt to coordinate a seamless and peaceful entrance into the park for the permitted demonstration.

When the unlawful assembly was declared, Respondent Heimbach organized members of the Traditionalist Worker Party to immediately leave the park in order to prevent violence or conflict, fully following the orders of law enforcement.

Fact 185 claims *"Defendant Heimbach guided the group, wearing a black combat helmet"* which is a lie, Respondent Heimbach was wearing a non-ballistic off the shelf motorcycle helmet.

Fact 187 claims *"Marching down Jefferson Street, Defendants and co-conspirators passed the synagogue where plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3 and Pearce are members."* This claim of conspiracy has nothing to do with Respondent Heimbach because he and the other members of the Traditionalist Worker Party took a different route to the park, from the police station and courthouse parking lot to the park, ensuring neither Respondent Heimbach nor the Traditionalist Worker Party had anything to do with any alleged intimidation of Jewish persons or their house of worship in Charlottesville.

Claims involving Plaintiff Wispelwey also do not apply to Respondent Heimbach, as the complaint indicates that Plaintiff Wispelwey and the other clergy members were not at the park by the time Respondent Heimbach and the Traditionalist Worker Party arrived. However, a Russian Orthodox priest who was in support of the Robert E. Lee monument with Respondent Heimbach was viciously assaulted by counter-protestors and needed medical treatment following the rally.

Claim 198 states *"As they had planned, Defendants used their shields and rods to plow through people and knock them over."* First of all, Respondent Heimbach had planned to attend a legal, permitted, and peaceful political rally. Second of all, Respondent Heimbach can be seen in video filmed by reporter Ford Fischer and others, after being assaulted by counter demonstrators, walking up the steps outside of Emancipation Park without exchanging any blows with counter demonstrators. There was no violence by Respondent Heimbach to reach his spot in the park, where he stayed until the unlawful assembly was declared.

For the remainder of the complaint, Respondent Heimbach isn't even involved. After leaving the park under orders from police, Respondent Heimbach walked to McIntire Park and directed

members of the Traditionalist Worker Party to return to their vehicles and leave the city, in order to be in compliance with the order by the Governor.

By the time the situation involving James Fields occured, Respondent Heimbach was back in his rented cabin and was actively providing first aid to injured members of the Traditionalist Worker Party.

In conclusion, the complaint against Respondent Heimbach is factually incorrect in many places, hyperbolic, and does not meet the legal standard to allow this case to continue against him. There was no conspiracy, and Respondent Heimbach is innocent of all allegations against him.

This lawsuit is politically motivated and was filed against Respondent Heimbach as a knee jerk reaction to his politics as an ardent National Socialist, not because of any actions he took or ordered. There is no evidence that Respondent Heimbach did anything but attempt to attend a legal rally organized by others, worked to keep himself and others safe while following the law and minimizing violence on all sides, and then left Charlottesville when the order by the Governor and law enforcement was given.

To continue this suit against Respondent Heimbach would simply be continuing a show trial based on rich and powerful lawyers who in their own words on the website of Integrity First for America, are *"dedicated to holding those accountable who threaten longstanding principles of our democracy — including our country's commitment to civil rights and equal justice."*

Simply because Respondent Heimbach rejects the supposed "social values" of the plaintiffs and their attorneys, that doesn't mean he committed any acts that infringed upon the plaintiffs civil rights in any way. When evaluated, Respondent Heimbach wasn't even at or involved in most of the alleged events and planning sessions where this alleged conspiracy was hatched, and evidence proves he did nothing to harm the plaintiffs.

An article on the Jewish Telegraphic Agency from June 17 of this year had opposing counsel Roberta Kaplan stating *"One point of this case is to make it clear to anyone considering this, if you do that, there will be very large judgments against you that will follow you until they are paid,"* she said, noting that it is unlikely plaintiffs will be able to collect, in part because some of the defendants are in hiding and others are broke." This is an attempt to chill free speech in the United States because the plaintiffs and opposing counsel do not like the National Socialist views of Respondent Heimbach and the varying views of his co-defendants.

Court cases such as *National Socialist Party of America v. Village of Skokie* make it clear that it is not illegal for National Socialists to speak their minds, promote the ideology of National Socialism in public, or hold a public demonstration in an area where there might be a strong response from members of the local populace.

The case of *Edwards v. South Carolina* in which civil rights organizers were arrested for having a demonstration, it was decided that a State may not *"make criminal the peaceful expression of unpopular views."* There is every indication that Respondent Heimbach acted peacefully, nothing

in the complaint accuses him of participating in or ordering any violence, in which his First Amendment rights, even if he expressed an unpopular opinion, should be protected.

If this lawsuit is able to continue against Respondent Heimbach, it will be going against settled case law in relation to the First Amendment and public demonstrations. In the spirit of justice, this case should be dismissed.

Respondent Heimbach humbly asks the court, in evaluation of this evidence, to dismiss the case against him.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss has been furnished to the Law Offices of Michael Bloch, 350 Fifth Avenue | Suite 7110 New York, New York 10118, this 8th day of July, 2019.

Matthew Heimbach