# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, TYLER MAGILL, APRIL
MUNIZ, HANNAH PEARCE, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, and JOHN DOE,

                             Plaintiffs,

v.

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VANGUARD
AMERICA, ANDREW ANGLIN,
MOONBASE HOLDINGS, LLC, ROBERT
"AZZMADOR" RAY, NATHAN DAMIGO,
ELLIOT KLINE a/k/a/ ELI MOSLEY,
IDENTITY EVROPA, MATTHEW
HEIMBACH, MATTHEW PARROTT a/k/a
DAVID MATTHEW PARROTT,
TRADITIONALIST WORKER PARTY,
MICHAEL HILL, MICHAEL TUBBS,
LEAGUE OF THE SOUTH, JEFF SCHOEP,
NATIONAL SOCIALIST MOVEMENT,
NATIONALIST FRONT, AUGUSTUS SOL
INVICTUS, FRATERNAL ORDER OF THE
ALT-KNIGHTS, MICHAEL "ENOCH"
PEINOVICH, LOYAL WHITE KNIGHTS OF
THE KU KLUX KLAN, and EAST COAST
KNIGHTS OF THE KU KLUX KLAN a/k/a
EAST COAST KNIGHTS OF THE TRUE
INVISIBLE EMPIRE,

                             Defendants.

**Civil Action No. 3:17-cv-00072-NKM**


**JURY TRIAL DEMANDED**


## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD PLAINTIFF THOMAS BAKER

# INTRODUCTION

Plaintiffs respectfully seek leave to file a Second Amended Complaint, attached hereto as Exhibit A, to add Thomas Baker as a plaintiff. Like the other plaintiffs, Mr. Baker is a victim of defendants' conspiracy to engage in racially-motivated violence during the "Unite the Right" ("UTR") events in Charlottesville on August 11 and 12, 2017. Mr. Baker suffered severe injuries when Defendant Fields drove his Dodge Challenger into a crowd of people on the afternoon of August 12, 2017. Mr. Baker's causes of action arise from the same events that are already at issue in this case, and his claims will be exactly the same as the existing claims in the First Amended Complaint.

Plaintiffs recognize that this motion arises after the date originally set for such amendments. However, good cause exists to grant this motion, and the present posture of the suit ensures that the proposed amendment will neither prejudice defendants nor affect the discovery schedule. No trial date has been set, and defendants have so significantly delayed discovery that plaintiffs will not receive all defendants' documents or be able to take their depositions for many months. Moreover, Mr. Baker is prepared to produce the same categories of documents the other plaintiffs have already produced, thus avoiding any delay.

There has been no unjustifiable delay. Mr. Baker suffered debilitating injuries and emotional trauma as a result of Defendant Fields' attack, and he was not prepared to join a lawsuit until this spring. He was thrown several feet into the air by Defendant Fields' car and suffered extensive physical injuries, including – among other things – a torn labrum in his hip that required major surgery. During that surgery, more serious damage was discovered that required even more extensive and complicated surgery, leaving Mr. Baker with permanent sutures and screws in his hip, as well as constant pain and limited functionality. These injuries required a long, challenging

2

recovery. He spent many months in difficult and painful physical therapy, had to avoid certain physical tasks, and can no longer run or jump, which is particularly challenging for a life-long athlete. Mr. Baker also suffered emotional trauma. He has panic attacks, frequent flashbacks and anxiety triggered by formerly normal situations.

In addition, Mr. Baker justifiably feared for the safety of himself and his family if he should bring a public lawsuit. Mr. Baker studiously avoided media attention and did not bring claims against the individuals who openly advocated and committed violence against him and others, because he was fearful of violent retaliation. The only reason Mr. Baker testified at Defendant Fields' criminal trial was that the government subpoenaed him.

The passage of time, his steady physical and emotional recovery, and the fact that he was able to testify without repercussions has convinced Mr. Baker that finally he is physically and emotionally prepared to pursue his legal claims against the defendants who caused his injuries. His delay until that point is more than justified, and comes with no hint of bad faith.

Lastly, granting the motion will not prejudice defendants in any way. The motion will not affect the discovery or trial schedule as there is currently no date set for the close of fact discovery or trial. Mr. Baker is prepared to make immediate disclosure of the same types of documents and information already produced by the other plaintiffs, will timely produce his medical records, and will be prepared for depositions once noticed. Moreover, permitting Mr. Baker to bring his claims in this suit would be far more efficient than requiring him to file a new case alleging the same facts and the same claims. We ask the Court to grant the motion and permit Plaintiffs to amend the First Amended Complaint for this limited purpose.[1]

---

[1]     The only other modifications plaintiffs would include, as shown in comparison between the operative complaint and proposed Second Amended Complaint, attached as Exhibit B, would be to eliminate Tyler Magill as a plaintiff, clarify that Hannah Pearce only asserts claims against defaulted defendants, and remove Michael Peinovich

Case 3:17-cv-00072-NKM-JCH   Document 524   Filed 07/17/19   Page 3 of 22   Pageid#: 5610

# FACTS

## A. Procedural History.

Plaintiffs in this case are victims of defendants' conspiracy to commit racially-motivated violence during the UTR events in Charlottesville, Virginia, on August 11 and 12, 2017. ECF 175, ¶¶ 1-2. The defendants are neo-Nazis, white supremacists, and other racist and anti-Semitic individuals and groups that planned, promoted, and committed violence against innocent citizens, which killed one person and seriously injured scores of others, including plaintiffs.

Plaintiffs filed the initial Complaint on October 11, 2017, and later amended it by right on January 5, 2018 (the "Complaint"). ECF 1; ECF 120; ECF 175. The Complaint asserts causes of action for (a) violations of 42 U.S.C. § 1985(3) (Count I); (b) violations of 42 U.S.C. § 1986 (Count II); (c) civil conspiracy (Count III); (d) negligence per se (Count IV); (e) violations of Virginia Code § 8.01-42.1 (Count V); (f) assault and battery (Count VI); and (g) intentional infliction of emotional distress (Count VII). ECF 175, ¶¶ 336-370.

The Court issued a Pretrial Order that set a December 29, 2017, deadline to add new parties. ECF 101. A trial date was set to begin on July 8, 2019. On April 8, 2019, the Court adjourned that date due to defendants' failures to collect and produce responsive documents. *See* ECF 464.

To date, defendants have conducted little discovery of plaintiffs. They have not taken any depositions nor served requests for admission. Only one defendant – now dismissed – issued any subpoenas. And only five of the twenty-five original defendants have served plaintiffs with any discovery at all.[2]

---

as a defendant, based on prior rulings of this Court, and to make other non-substantive edits to ensure consistency with those Court rulings. Mr. Baker's claims would be the same as the existing claims and would be asserted against only the current, non-defaulted defendants.

[2] Defendants Fields, Spencer, Peinovich (now dismissed), League of the South, and Fraternal Order of Alt-Knights (now defaulted) served plaintiffs with interrogatories and document requests.

At the same time, defendants have largely refused and failed to produce discovery sought by plaintiffs, adding many months to the discovery process, which is far from over. By way of example, as the Court is aware, plaintiffs had to move to compel defendants to comply with their basic obligations to preserve and produce evidence, which the Court granted in November 2018. ECF 354; ECF 379. In the eight months since that Order, Plaintiffs have yet to receive a single page of documents from defendants. Defendant Schoep ignored and then openly disparaged his discovery obligations. *See generally* ECF 432. Defendant Vanguard America failed to produce relevant discovery, requiring the Court to issue a show cause order, orders to explain Vanguard America's preservation efforts, and to command production. *See generally* ECF 452; ECF 508; ECF 517. Defendants Heimbach and Kline have withheld what is likely thousands of pages of documents until threatened with arrest; they are subject to a pending sanctions motion. ECF 457.

In large part because of defendants' substantial delays, the third-party vendor is still weeks, if not months, away from imaging and processing relevant documents from devices and social media accounts, which does not even account for time needed for defense counsel to review and produce the documents or plaintiffs' counsel to review them for use in depositions. Regarding the review and production process, taking a single defendant as an example, Mr. Spencer's attorney has "only just scratched the surface" of the more than 300,000 presumptively responsive documents ready to be reviewed. ECF 519. That set of documents comes from fewer than half of Mr. Spencer's devices and social media accounts, the rest of which are still not even ready to be reviewed.

Defendants' non-compliance with discovery initially forced the Court to extend the discovery deadline, ECF 397, and when it became apparent that defendants still would not produce

discovery in time for depositions and trial, the Court adjourned the trial date. ECF 464. Still today, plaintiffs are forced to seek sanctions and other direct Court intervention to accomplish basic discovery. *E.g.*, ECF 457; ECF 483; ECF 517. Fact discovery – including depositions – will be ongoing well beyond resolution of this motion and the filing of an amended complaint to add Mr. Baker, and will not close until 150 days before the new trial date, which has not yet been scheduled. ECF 329.

### B. Like the Existing Plaintiffs, Mr. Baker was Injured as a Direct Result of Defendants' Actions, and Will Assert the Same Claims and Nearly Identical Facts That are Already at Issue.

Mr. Baker lives in Charlottesville and was present at the UTR event on August 12, 2017. Exhibit C, ¶¶ 1-3. He did not participate in defendants' protests or activities, nor did he participate in counter-protests. *Id.*, ¶ 3. Rather, Mr. Baker was a relatively new Charlottesville resident, and he attended the events of August 12 as a bystander to watch history. *Id.*, ¶¶ 1-3. On the afternoon of August 12, after the UTR rally at Emancipation Park was called off due to violence, Mr. Baker was on Fourth Street walking with a large group of peaceful counter-protesters. *Id.*, ¶¶ 4-5. At approximately 1:40 p.m., Defendant Fields, in furtherance of the defendants' conspiracy to commit racially-motivated violence, sped his Dodge Challenger down the narrow street and plowed into the peaceful crowd. *Id.*, ¶ 6. The car slammed into several people, including Mr. Baker, and sent Mr. Baker flying high into the air over the vehicle. *Id.*, ¶¶ 7-9. Mr. Baker suffered immediate and severe injury. *Id.*, ¶ 10.

Mr. Baker's physical recovery was slow and painful. He went to the hospital immediately after the attack. Doctors determined that Mr. Baker had a concussion, and they put his left wrist in a temporary cast. *Id.*, ¶ 11. However, the bruising and swelling of much of his body was so severe that doctors could not take effective x-rays or complete a diagnostic examination. *Id.* The

doctors told him to return a week later for new x-rays and diagnostic testing after the swelling had reduced. *Id.*, ¶¶ 11-12.

In addition to his concussion, Mr. Baker was eventually diagnosed with a torn labrum in his right hip, a torn ligament in his wrist, and numerous lacerations. *Id.*, ¶ 13. He needed to wear an arm cast for six weeks and required two different hospital visits. *Id.*, ¶ 14. Mr. Baker needed over two months of physical therapy for his hand alone. *Id.*

In addition, Mr. Baker required major surgery to repair the torn labrum in his right hip. *Id.*, ¶¶ 15-16. He tried to recover without surgery, but a month of pre-surgery physical therapy was unsuccessful. *Id.*, ¶ 15. During surgery, the surgeons discovered more damage had been done than was apparent on the x-rays and tests; they had to re-shape his hip socket and femur and implant permanent sutures and screws in his hip. *Id.*, ¶ 16. After the surgery, which lasted several hours, Mr. Baker was restricted to a recliner for more than two weeks because getting in and out of bed was too painful. *Id.*, ¶¶ 16-17. He needed crutches for six weeks, and endured approximately four months of physical therapy. *Id.*, ¶ 17. Even after this extensive recovery period, Mr. Baker has not regained, and never will regain, his full strength or physical capabilities. *Id.*, ¶¶ 18-21. Because of this permanent physical damage, Mr. Baker has had to give up some of his favorite activities and make permanent and substantial adjustments to his lifestyle. *Id.*, ¶¶ 19-20.

Mr. Baker also had to miss approximately three weeks of work for pre-surgery doctor's appointments, physical therapy sessions, pain management, and mental and emotional recovery. *Id.*, ¶ 22. He also could not work for four weeks after the surgery. *Id.* He has missed more than a dozen additional days of work since he returned to attend doctor's appointments, physical therapy, and for mental and emotional recovery. *Id.*, ¶ 23. He still cannot sit or stand in the same position for long stretches without getting painful cramps in his right hip. *Id.*

In addition to the physical recovery that consumed Mr. Baker, he also suffered mental and emotional distress from the attack. He started experiencing panic attacks, one of which sent him to the hospital. *Id.*, ¶ 24. Everyday situations and experiences can and still do trigger anxiety and flashbacks. *Id.* Mr. Baker is still healing from the mental and emotional effects of the attack. *Id.*, ¶¶ 22-24.

The emotional trauma of experiencing firsthand such unprovoked and unexpected violence not only took a toll on Mr. Baker's physical health but also inhibited him from engaging in the emotionally straining process of reliving the violent events and pursuing legal claims. After the car attack, Mr. Baker's focus was on his fight to recover physically and emotionally, not on potential litigation. While Mr. Baker had met a few other individuals who were injured in the car attack, including Plaintiff Muniz, he was otherwise unaware of the names of the plaintiffs or defendants in the case, any of the law firms involved, or the causes of action plaintiffs asserted. *Id.*, ¶ 25.

Even ahead of his own recovery, Mr. Baker's paramount concern was safety for himself and for his family. Mr. Baker was justifiably worried that the individuals who organized, planned, and participated in the UTR events and encouraged the violence, like the car attack, posed a serious threat to anyone who would take a public stand against them, legal or otherwise. *Id.*, ¶¶ 27-28. As a result, Mr. Baker avoided making public comments about the attack, gave no interviews, talked to no reporters, consulted no attorneys, and spoke to law enforcement personnel and government attorneys only when subpoenaed in connection with the criminal trial against Defendant Fields. *Id.*, ¶ 28. Mr. Baker avoided anything that might put his wife in harm's way or further endanger himself, while at the same time tried to focus on recovering from the extensive physical and mental trauma inflicted by the car attack. *Id.*, ¶¶ 27-29.

The Commonwealth of Virginia subpoenaed Mr. Baker in the criminal case against Defendant Fields. Mr. Baker was the first witness to give testimony at the trial pursuant to a subpoena in December 2018. *Id.*, ¶ 30. Giving public testimony about what had happened to him was cathartic and helped Mr. Baker begin to cope emotionally with the attack. *Id.*, ¶ 31.

In April 2019, plaintiffs' counsel located Mr. Baker as a possible witness to the events of August 12, 2017, and arranged to meet with him. *Id.*, ¶ 32. Mr. Baker was reluctant to speak with any lawyers, and had avoided becoming publically known or easily reachable. *Id.*, ¶¶ 27-29 . Mr. Baker eventually expressed a willingness to describe what he had witnessed, and over the course of several conversations, as he described his experience and learned about the claims in this lawsuit, Mr. Baker began to think about the possibility of holding the defendants accountable for the violence and damage they had caused. *Id.*, ¶¶ 33-34. After being required to testify at the Fields trial, which he was able to do without incident or retaliation, the fear that had impeded his ability to share his experience began to dissipate. *Id.*, ¶¶ 31-33. Slowly, over time and with much contemplation, Mr. Baker became willing and able to join this litigation to vindicate his own claims. *Id.*, ¶¶ 34-37.

The proposed amendment would make no substantive changes to the complaint except to add facts specific to Mr. Baker relating to the same car attack already described in detail in the complaint, and to add him as a claimant to the existing causes of action.[3] Exhibit B (showing changes between First Amended Complaint and proposed Second Amended Complaint).

---

[3] As noted above, Mr. Baker's claims would be brought only against the non-defaulted defendants. In addition, the proposed Second Amended Complaint would make appropriate edits to remove Tyler Magill as a plaintiff, clarify that Hannah Pearce only maintains claims against the defaulted defendants, and remove Michael Peinovich as a defendant, consistent with prior Court orders in this case. Dkt. Nos. 336, 468.

## ARGUMENT

Federal Rules of Civil Procedure 15 and 16 govern this motion. Both rules are satisfied here, because granting the motion will not prejudice defendants, there is no bad faith, the amendment will not be futile, and there is good cause for the delay.

## I. THE RULE 15 STANDARD TO AMEND THE COMPLAINT IS SATISFIED.

Rule 15(a) allows a plaintiff to amend the complaint with leave of court. Fed. R. Civ. P. 15(a)(2).[4] Leave to amend "shall be freely given when justice so requires." *Id*. This is a "lenient standard." *AdvanFort Co. v. Int'l Registries, Inc.*, 2015 WL 4254988, *5 (E.D. Va. 2015); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (Rule 15 reflects the "liberal amendment policy" in federal court.). Federal courts must be "liberal" when granting leave to amend because there is a "federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007); *see also* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure favor the administration of cases to secure their just determination.).

As a result, leave will only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426; *Sciolino*, 480 F.3d at 651 (same); *AdvanFort Co.*, 2015 WL 4254988, at *4 (holding Rule 15 "requires the Court to grant leave to amend a pleading unless the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile"). None of these conditions exist here.

---

[4] Rule 15 governs motions to add a party. *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010).

**A.      Amendment Will Not Prejudice Defendants.**

Prejudice typically exists when a plaintiff wants to assert a "new legal theory" or offer facts "shortly before or during trial." *Laber*, 438 F.3d at 427.  There is no prejudice, however, where defendants were "fully aware of the events giving rise to the action," and when there is sufficient time to conduct any additional discovery that must be taken.[5] *E.g.*, *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."); *AdvanFort Co*, 2015 WL 4254988 at *5 (granting leave to amend where, among other things, "no new legal theories have been raised" and "the events giving rise to the action have not been changed").  Indeed, the Fourth Circuit has approved leave to amend even when the case has reached summary judgment.  *Laber*, 438 F.3d at 428 (granting leave to amend even though "the case progressed to summary judgment").

Even when the amendment "would require the gathering and analysis of facts not already considered by the opposing party," that only constitutes prejudice if "the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  When the amendment is made well in advance of trial, and the defendants can still analyze and discover new facts, there is no prejudice. *Id.*

Accordingly, courts allow amendments to add a new plaintiff who "participated in the same" events at issue and asserts claims with "similar principles of law" that "involve[] similar" facts as the original plaintiffs. *E.g.*, *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618–19 (4th Cir. 2001) (granting the motion to add additional plaintiffs because "[t]he joining plaintiffs alleged

---

[5]  There is also no prejudice from an amendment ". . . if it merely adds an additional theory of recovery to the facts already pled and if offered before any discovery has occurred." *Laber*, 438 F.3d at 427.  The amendment here would not add any new theories of recovery, but even if it did, there is ample time for full discovery.

that they participated in the same kind of transaction in which the [original plaintiffs] had participated and that all the transactions involved similar loans. The joining plaintiffs also alleged the same or similar types of violations…"). This is true even if the precise "factual circumstances of each transaction differed" among the plaintiffs. *Id*.

A plaintiff's delay in filing a motion to amend does not constitute prejudice. *Laber*, 438 F.3d at 427 ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend" (citing *Davis*, 615 F.2d at 613).); *Johnson*, 785 F.2d at 509-10 ("The Fourth Circuit has held, as have a number of other circuits, that delay alone is not sufficient reason to deny leave to amend."); *National Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988) ("[D]elay alone is not a sufficient reason to deny a party leave to amend its pleadings, instead, the delay must be accompanied by prejudice, bad faith, or futility.").

Here, defendants will not be prejudiced by the proposed amendment. Mr. Baker will be one of nine already-existing plaintiffs. His causes of action are identical to the other plaintiffs' claims, involve the same legal theories, and rely on the same legal principles. *AdvanFort Co.*, 2015 WL 4254988, at *5 (granting leave where "no new legal theories have been raised").

Mr. Baker would be joining the existing claims based on the same facts and events. Just like the other plaintiffs, Mr. Baker's claims arise from the events of August 11 and 12, 2017, specifically the events on the afternoon of August 12 when Defendant Fields drove his car into the crowd on Fourth Street. Indeed, Mr. Baker was next to or near several of the existing plaintiffs at the time of the car attack. The facts related to his claims, therefore, are almost identical to the current pleadings and have been at issue since the start of this case. Defendants are fully aware of these events and plaintiffs' allegations concerning them. *See Davis*, 615 F.2d at 613 (granting leave where "defendant was from the outset made fully aware of the events giving rise to the

action"); *AdvanFort Co.*, 2015 WL 4254988, at *5 (granting leave where "the events giving rise to the action have not been changed").

Of course, the facts concerning Mr. Baker's injuries will differ, as each plaintiff's injuries are unique, but defendants have ample time to conduct discovery on all plaintiffs' injuries, including those of Mr. Baker. Although discovery began months ago, there remains a great deal of discovery to go, and no deadline for fact discovery is currently in place. Most defendants have failed to produce responsive documents, turn over their electronic devices (as the Court ordered) or provide access to their online activities, and many are openly defying their discovery obligations, forcing plaintiffs to seek sanctions. *E.g.*, ECF 465. More importantly, defendants have not yet begun taking discovery of plaintiffs and their injuries, which means adding Mr. Baker now will not affect the discovery schedule.

The proposed amendment would not prejudice defendants because defendants are fully aware of the events giving rise to Mr. Baker's claims and there is more than sufficient time to conduct relevant discovery. *Laber*, 438 F.3d at 427; *Davis*, 615 F.2d at 613; *AdvanFort Co.*, 2015 WL 4254988 at *4-5.

### B. There is No Bad Faith.

Plaintiffs are not bringing this motion in bad faith, and there is no basis to assert otherwise. *Laber*, 438 F.3d at 428 (granting leave to amend because there was no indication that plaintiff's desire to do so was in bad faith); *AdvanFort Co.*, 2015 WL 4254988 at *5 (holding there was no bad faith in plaintiff's request to amend complaint).

Mr. Baker's initial reluctance to pursue legal action was a consequence of the trauma and fear he experienced as a result of the defendants' own violence. Mr. Baker was recovering physically and emotionally from his extensive and serious physical injuries and he was fearful for

the safety of himself and his wife. Understandably, as time passed after the traumatic events of August 12, 2017, and having testified in the criminal trial of Defendant Fields without repercussion, Mr. Baker now feels emotionally prepared to participate in legal proceedings to hold defendants accountable for their actions. Plaintiffs bring this motion now because Mr. Baker is finally prepared to come forward, and there is no basis to suggest it is brought in bad faith.

### C. Amendment Will Not be Futile.

The proposed amendment will not be futile as a matter of law because the Court has already denied defendants' motions to dismiss based on similar facts and the same causes of action. A court will deny amendment as futile only "if it would not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (holding amendment was futile because it "would still fail to survive a motion to dismiss"). Even then, the proposed amendment must be "clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. When a court has already decided that the existing plaintiffs' claims should not be dismissed, and the proposed amendment asserts the same legal claims and alleges similar facts, the amendment is not futile as a matter of law. *See Flame S.A. v. Industrial Carriers, Inc.*, 2014 WL 4202470, at *2 (E.D. Va. 2014) (holding that a futility analysis "seems irrelevant to the Court's inquiry" because the court already "determined the validity of [the new party's] attachment and Amended Complaint").

Here, Mr. Baker simply would be added to the existing causes of action, and all the claims (including Mr. Baker's) arise from the same facts this Court already held are sufficient to survive the motions to dismiss. *See* ECF 335.[6] The claims suffer from no legal or factual defect, let alone an assertion that they are "insufficient or frivolous on [their] face." *Johnson*, 785 F.2d at 510.

---

[6] Although this Court dismissed one plaintiff's claims, Mr. Baker's allegations and injuries are nearly identical to the plaintiffs whose claims survived defendants' motions to dismiss.

Critically, if the Court grants the motion, all of Mr. Baker's claims will be brought within the statute of limitations periods. The primary events giving rise to the causes of action occurred on August 11 and 12, 2017. *See* ECF 175. Mr. Baker's claims under Count I, Count III, Count IV, Count V, Count VI, and Count VII each have a statute of limitations of more than two years, so his claims are well within their limitation periods.[7]

While Count II has a one-year limitations period, Mr. Baker's claim relates back to the date of the original Complaint. Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Fourth Circuit has held that claims relate back under Rule 15 when adding plaintiffs where, as here, "the substantive allegations in the amended complaint were identical to those contained in the initial complaint." *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218-219 (4th Cir. 2015). Further, because the proposed amendment "concerns the same conduct, transaction, or occurrence set forth in the original pleading," defendants "will not be prejudicially affected if a new plaintiff is added, and the defendant[s] should not be permitted to invoke a limitations defense." *Id.* at 219 (quotations omitted).

## II.    GOOD CAUSE EXISTS UNDER RULE 16 TO GRANT THE MOTION.

When a plaintiff moves to amend the complaint after the deadline in a scheduling order, the Court will allow the amendment if the plaintiff shows good cause. Fed. R. Civ. P. 16(b)(4);

---

[7]  Counts III, IV, V, VI, and VII have a two-year statute of limitations. Va. Code Ann. § 8.01-243 (West 2019) ("Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery [ ] shall be brought within two years after the cause of action accrues."); *Bright v. First Virginia Bank*, 2002 WL 32001425 (Va. Cir. Ct. 2002) (employing a two-year statute of limitations in the civil conspiracy context). Count I borrows this personal injury statute of limitations and is, likewise, two years. *Manion v. N. Carolina Med. Bd.*, 693 F. App'x 178, 182 (4th Cir. 2017) ("It is well settled that § 1983 and § 1985 borrow the state's general personal injury limitations period.").

*Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). This is because scheduling orders are "not set in stone, '[and] may be relaxed for good cause, extraordinary circumstances, or in the interest of justice.'" *SubAir Sys., LLC v. PrecisionAire Sys., Inc.*, 2008 WL 11349780, at *2 (D.S.C. 2008) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 954 (4th Cir. 1984)).

When determining whether good cause or the interest of justice permits amendment, the Court will consider "the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (internal quotes omitted). Ultimately, "the good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission," and therefore, "a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the . . . scheduling order." *United States v. Godwin*, 247 F.R.D. 503, 506 (E.D.N.C. 2007) (internal quotes omitted).

For example, a plaintiffs' initial hesitation to come forward due to embarrassment may serve as good cause to allow them to join the case after the deadline to add parties. *See, e.g.*, *Melvin H. v. Atlanta Indep. Sch. Sys.*, 2009 WL 10674830, at *11 (N.D. Ga. 2009). In *Melvin H.*, plaintiffs sued a school district based on its policy of conducting strip searches of high school students, but despite the seeming ubiquity of these acts, and "although [Plaintiffs] have communicated with a number of students subjected to these searches, it was not until after the deadline to file that they were able to locate any students who were willing and able to serve as named plaintiffs in this action." *Id.* The court found the plaintiffs had shown good cause to add the new plaintiffs. *Id.*

Mr. Baker's reasons for being hesitant to sue defendants are well within the standard of good cause, and it surely is in the interest of justice to permit the proposed amendment. His long

road to physical and emotional recovery caused by defendants' conduct is alone sufficient to explain and justify the delay in this unique case. In addition, as this Court has recognized, "[t]he potential for retaliatory harm or harassment against named parties in this case is particularly pressing." ECF 222. Mr. Baker was understandably concerned that filing or joining a public lawsuit against these defendants, or otherwise going public, would jeopardize the physical safety of himself and his family. Indeed, he is not alone in that concern. Plaintiff John Doe moved to proceed anonymously for precisely the same reasons, and the Court granted that motion. ECF 98 (seeking to proceed under a pseudonym to protect John Doe "from further threats and physical and emotional harm"); ECF 222 (granting motion to proceed under a pseudonym). If embarrassment is legally sufficient good cause to justify a delay in coming forward, justifiable fear of retaliation should be considered more than sufficient.

Moreover, the reason for Mr. Baker's fear (and therefore the basis for his delay) is directly attributable to defendants. Defendants' actions on August 11 and 12, 2017, and subsequently, are what caused Mr. Baker to fear for the safety of himself and his family. And of course, defendants' conduct caused Mr. Baker to suffer the mental and physical anguish that also prevented him from taking legal action sooner. Fearful for his safety, and dealing with a great deal of personal adversity caused by defendants' unlawful conspiracy to commit racially-motivated violence, Mr. Baker only recently felt sufficiently comfortable to come forward to pursue his rights. Defendants should not be permitted to inflict serious physical and emotional injury, and foment fear among those victimized by their conduct, and then object when a victim of such conduct needs time before coming forward publicly as a plaintiff.

The scheduling order is not set in stone for precisely this reason. It can (and should) be modified for good cause in circumstances – like this one – where justice so requires. Plaintiffs

should be permitted to amend the Complaint to add Mr. Baker as a party, and Mr. Baker should be permitted to join this lawsuit, so his (identical) claims can be adjudicated on the merits along with the other plaintiffs.

Based on Mr. Baker's legitimate reasons for delay, and in the absence of prejudice to defendants, the motion should be granted under Rules 15 and 16.

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiffs leave to file the Second Amended Complaint attached as Exhibit A.

Date: July 17, 2019                                 Respectfully submitted,

                                                    s/ Robert T. Cahill
                                                    Robert T. Cahill (VSB 38562)
                                                    COOLEY LLP
                                                    11951 Freedom Drive, 14th Floor
                                                    Reston, VA 20190-5656
                                                    Telephone: (703) 456-8000
                                                    Fax: (703) 456-8100
                                                    Email: rcahill@cooley.com

                                                    *Of Counsel for all Plaintiffs:*

                                                    Roberta A. Kaplan (*pro hac vice*)
                                                    Julie E. Fink (*pro hac vice*)
                                                    Gabrielle E. Tenzer (*pro hac vice*)
                                                    Joshua A. Matz (*pro hac vice*)
                                                    Michael Low Bloch (*pro hac vice*)
                                                    KAPLAN HECKER & FINK, LLP
                                                    350 Fifth Avenue, Suite 7110
                                                    New York, NY 10118
                                                    Telephone: (212) 763-0883
                                                    Email: rkaplan@kaplanhecker.com
                                                    Email: jfink@kaplanhecker.com
                                                    Email: gtenzer@kaplanhecker.com
                                                    Email: jmatz@kaplanhecker.com
                                                    Email: mbloch@kaplanhecker.com

                                                    Alan Levine (*pro hac vice*)
                                                    Philip M. Bowman (*pro hac vice*)
                                                    COOLEY LLP
                                                    55 Hudson Yards
                                                    New York, NY 10001
                                                    Telephone: (212) 479-6000
                                                    Fax: (212) 479-6275
                                                    Email: alevine@cooley.com
                                                    Email: pbowman@cooley.com

                                                    David E. Mills (*pro hac vice*)
                                                    COOLEY LLP
                                                    1299 Pennsylvania Avenue, NW
                                                    Suite 700
                                                    Washington, DC 20004
                                                    Telephone: (202) 842-7800
                                                    Fax: (202) 842-7899
                                                    Email: dmills@cooley.com

19

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
Email: kdunn@bsfllp.com
Email: wisaacson@bsfllp.com
Email: jphillips@bsfllp.com

Joshua J. Libling (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: jlibling@bsfllp.com
Email: ybarkai@bsfllp.com

J. Benjamin Rottenborn (VSB 84796)
Erin B. Ashwell (VSB 79538)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
Email: brottenborn@woodsrogers.com
Email: eashwell@woodsrogers.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2019, the foregoing was filed with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,*
*Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Matthew Parrott,*
*Robert Ray, Traditionalist Worker Party,*
*Jason Kessler, Nathan Damigo, Identity*
*Europa, Inc. (Identity Evropa), and*
*Christopher Cantwell*

Lisa M. Lorish
Federal Public Defenders Office
Western District of Virginia - Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
lisa_lorish@fd.org

*Fifth Amendment Counsel for Defendant*
*James A. Fields, Jr.*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants National Socialist*
*Movement, Nationalist Front and Jeff Schoep*

Case 3:17-cv-00072-NKM-JCH   Document 524   Filed 07/17/19   Page 21 of 22   Pageid#: 5628

I further hereby certify that on July 17, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliott Kline
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

*s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
Email: rcahill@cooley.com

*Counsel for Plaintiffs*
