# EXHIBIT D

**From:** Avani Patel <apatel@idsinc.com>
**Date:** July 23, 2019 at 10:12:07 AM EDT
**Subject:** RE: Sines v. Kessler
**To:** eli.f.mosley@gmail.com
**Cc:** Ken Kim <kkim@idsinc.com>,Michael Bloch <mbloch@kaplanhecker.com>,Jessica Phillips <jphillips@bsfllp.com>,iDS_SINKS-02678 <ids_sinks-02678@idsinc.com>

Dear Mr. Kline,

By way of introduction, my name is Avani Patel and I am a business development/account manager at iDiscovery Solutions(iDS).  I am reaching out to you to follow up on your signature with the attached Supplemental Contract.  It was

emailed to you on July 2nd through DocuSign. All parties except for you have signed the contract. It was emailed to you through DocuSign on July 2, 2019. Please electronically sign this contract through DocuSign as soon as possible as it is set to expire on July 31st.

Please let me know if you have any questions. I look forward to hearing from you.

Thanks and regards,

**Avani Patel, Esq.** 
Business Development Manager
**iDiscovery Solutions**
3000 K Street NW, Suite 330
Washington, DC 20007
Direct:  202.249.7870
Cell: 202.597.2004

 

*Our firm and CEO were ranked **Band 1** on the 2018 updated Chambers and Partners eDiscovery Ranking!*
https://www.chambersandpartners.com/12788/2817/editorial/58/1#22770855_editorial

INFORMATION CLASSIFICATION NOTICE: This electronic communication (including any attachments) is intended to be viewed only by the individual(s) to whom it is addressed. It may contain information that is privileged, proprietary, confidential and/or protected from disclosure by applicable law. Any disclosure, dissemination, distribution, copying, exporting or other use of this communication or any attached document(s) other than for the purpose intended by the sender is strictly prohibited without prior written permission from the sender. If you have received this communication in error, please notify the sender immediately by reply e-mail and promptly destroy all electronic and printed copies of this communication and any attached documents.



July 1, 2019

Matthew Heimbach                                    VIA EMAIL TO:
                                    matthew.w.heimbach@gmail.com

Elliot Kline                                    VIA EMAIL TO:
                                    eli.f.mosley@gmail.com

Dillon Hopper                                    VIA EMAIL TO:
                                    dillon_hopper@protonmail.com

Kaplan Hecker & Fink LLP                                    VIA EMAIL TO:
Attn: Gabrielle Tenzer                                    gtenzer@kaplanhecker.com
350 Fifth Avenue, Suite 7110
New York, NY 10118

   Re: *Sines, et al. v. Kessler, et al., No. 3:17-cv-00072-NKM-JCH*

Dear Parties:

   iDiscovery Solutions ("iDS") has been selected by the parties in the above-referenced litigation to serve as a neutral provider of eDiscovery and forensic services. This engagement letter (this "Engagement") shall confirm that each of Matthew Heimbach, Elliot Kline, and Dillon Hopper have engaged iDS to provide such services in accordance with the Engagement Letter Agreement dated February 15, 2019, including the Terms and Conditions attached as Exhibit A, the Statement of Work attached as Exhibit B, the Pricing Schedule attached as Exhibit C, and the Stipulation and Order for the Imaging, Preservation, and Production of Documents attached as Exhibit D (collectively, the "Services").

   The Parties agree that the terms "Defendants," "Clients," and "Defendant Firms" are revised to include each of Matthew Heimbach, Elliot Kline, and Dillon Hopper.

   If these terms are acceptable to you, please execute this Engagement and return a copy to the Project Lead (as identified in the Statement of Work).

       Sincerely,

       iDISCOVERY SOLUTIONS

       Daniel L. Regard, II, President and CEO



AGREED and ACCEPTED on behalf of itself and Plaintiffs:

KAPLAN HECKER & FINK LLP

X_____
        Gabrielle Tenzer, Partner

Date: _____

AGREED and ACCEPTED by:

X_____
MATTHEW HEIMBACH, Defendant Client and Defendant Firm

Date: _____

X_____
ELLIOT KLINE, Defendant Client and Defendant Firm

Date: _____

X_____
DILLON HOPPER, Defendant Client and Defendant Firm

Date: _____

IDS.Engagement Ltr - Sines v Kessler 070119 Supplemental 02

Matthew Heimbach
Elliot Kline
Dillon Hopper
Kaplan Hecker & Fink LLP
July 1, 2019
Page 2



March 1, 2019


Jeff Schoep                                                    VIA EMAIL TO:
                                                               jeffschoep@gmail.com


Reverend James Stern                                          VIA EMAIL TO:
                                                               jamesstern@thejamesstern.com


Kaplan Hecker & Fink LLP                                      VIA EMAIL TO:
Attn: Gabrielle Tenzer                                        gtenzer@kaplanhecker.com
350 Fifth Avenue, Suite 7110
New York, NY 10118


      *Re:*    *Sines, et al. v. Kessler, et al., No. 3:17-cv-00072-NKM-JCH*

Dear Counsel:

      iDiscovery Solutions ("iDS") has been selected by the parties in the above-referenced litigation to serve as a neutral provider of eDiscovery and forensic services. This engagement letter (this "Engagement") shall confirm that Jeff Schoep, on behalf of himself and Nationalist Front, and Reverend James Stern, on behalf of National Socialist Movement, have engaged iDS to provide such services in accordance with the agreement dated February 15, 2019, including the Terms and Conditions attached as Exhibit A, the Statement of Work attached as Exhibit B, the Pricing Schedule attached as Exhibit C, and the Stipulation and Order for the Imaging, Preservation, and Production of Documents attached as Exhibit D (collectively, the "Services").

      The Parties agree that the term "Defendants" and "Clients" is revised to include Jeff Schoep, Nationalist Front, and National Socialist Movement, and the term "Defendant Firms" is revised to include Jeff Schoep and Reverend James Stern.

      If these terms are acceptable to you, please execute this Engagement and return a copy to the Project Lead (as identified in the Statement of Work).

      Sincerely,

      iDISCOVERY SOLUTIONS

      DocuSigned by:

      *Daniel L. Regard, II*
      75F280ED98744C3...

      Daniel L. Regard, II, President and CEO



iDiscovery Solutions

AGREED and ACCEPTED on behalf of itself and Plaintiffs:

KAPLAN HECKER & FINK LLP

X _Gabrielle Tenzer_____
    331A7896849447B...

      Gabrielle Tenzer, Partner

Date: ___3/1/2019_____

AGREED and ACCEPTED by Defendant Firm on behalf of itself and Defendant Clients Jeff Schoep and Nationalist Front

X _Jeff Schoep_____
    C1CF0954EFD24DA...

    Jeff Schoep

Date: ___3/3/2019_____

AGREED and ACCEPTED by Defendant Firm on behalf of itself and Defendant Client National Socialist Movement

X _James Stern_____
    A59BBCC34A0441E...

      Reverend James Stern

Date: ___3/4/2019_____

IDS.Engagement Ltr - Sines v Kessler 030119 02
  .

DocuSign Envelope ID: 9D7682F9-D7D0-7429-NB2A-7A3148DB9CF9



February 15, 2019

Kaplan Hecker & Fink LLP                                          VIA EMAIL TO:
Attn: Gabrielle Tenzer                                   gtenzer@kaplanhecker.com
350 Fifth Avenue, Suite 7110
New York, NY 10118

Bryan J. Jones                                                    VIA EMAIL TO:
106 W. South Street, Suite 211                          bryan@bjoneslegal.com
Charlottesville, VA 22902

Kolenich Law Office                                              VIA EMAIL TO:
Attn: James Kolenich                                         Jek318@gmail.com
9435 Waterstone Blvd., Suite 140
Cincinnati, OH 45249

Law Offices of John A. DiNucci                                   VIA EMAIL TO:
Attn: John DiNucci                                       dinuccilaw@outlook.com
8180 Greensboro Drive, Suite 1150
McLean, VA 22102

   Re:  *Sines, et al. v. Kessler, et al., No. 3:17-cv-00072-NKM-JCH*

Dear Counsel:

   We are pleased that you have selected iDiscovery Solutions ("iDS") to provide eDiscovery services. This engagement letter (this "Engagement") shall confirm that iDS has been engaged as a neutral provider of forensic services by: (a) Kaplan Hecker & Fink LLP ("KHF") on behalf of "Plaintiffs" (as defined below) and (b) Bryan J. Jones, (c) Law Office of John A. DiNucci, and (d) Kolenich Law Office on behalf of "Defendants" (as defined below) to provide such services in accordance with the Terms and Conditions attached as Exhibit A, the Statement of Work attached as Exhibit B, the Pricing Schedule attached as Exhibit C, and the Stipulation and Order for the Imaging, Preservation, and Production of Documents attached as Exhibit D (collectively, the "Services").

   "Plaintiffs" is defined to be Elizabeth Sines, Seth Wispelwey, Marissa Blair, Tyler Magil, April Muniz Hannah Pierce, Marcus Martin, Natalie Romero, and Chelsea Alvarado. "Defendants" is defined to be Jason Kessler, Richard Spencer, Christopher Cantwell, Vanguard America, Robert "Azzmador" Ray, Nathan Damigo, Identity Evropa, Matthew Parrott a/k/a/ David Matthew Parrott, Traditionalist Worker Party, Michael Hill, Michael Tubbs, and League of the South. Each of the

 3000 K Street NW, Suite 330
Washington, DC 20007

202.249.7880

@iDiscoveryInc

 idiscoverysolutions.com

DocuSign Envelope ID: 9D7682E9-D700-429B-B29C-77348DB9F69



Plaintiffs and each of the Defendants is a "Client" and are collectively the "Clients."  Each of Kaplan Hecker & Fink LLP, Bryan J. Jones, Law Office of John A. NiNucci, and Kolenich Law Office is a "Firm" and are collectively the "Firms."  Bryan J. Jones, Law Office of John A. DiNucci, and Kolenich Law Office are "Defendant Firms."

If these terms are acceptable to you, please execute this Engagement and return a copy to the Project Contact (as identified in the Statement of Work).

Sincerely,
iDISCOVERY SOLUTIONS

*Daniel L. Regard, II*
— 75F280ED98744C3...

Daniel L. Regard, II, President and CEO

Kaplan Hecker & Fink LLP
Bryan J. Jones, Law Office of John A. DiNucci, and Kolenich Law Office
February 15, 2019
Page 2


**iDiscovery Solutions**

AGREED and ACCEPTED on behalf of itself and Plaintiffs:

KAPLAN HECKER & FINK LLP

X _____
331A7896849447B
       Gabrielle Tenzer, Partner

Date: ____2/18/2019_____


AGREED and ACCEPTED by Defendant Firm on behalf of itself and Defendant Clients Jason Kessler, Christopher Cantwell, Vanguard America, Robert "Azzmador" Ray, Identity Evropa, Matthew Parrott a/k/a/ David Matthew Parrott, and Traditionalist Worker Party:


KOLENICH LAW OFFICE

X _____
46FB85661F554AC...
       James E. Kolenich

Date: ____2/18/2019_____



AGREED and ACCEPTED by Defendant Firm on behalf of itself and Michael Hill, League of the South, and Michael Tubbs

BRYAN J. JONES, ATTORNEY AT LAW

X _____
BDA24F882D80457...
       Bryan J. Jones

Date: ____2/18/2019_____


Kaplan Hecker & Fink LLP
Bryan J. Jones, Law Office of John A. DiNucci, and Kolenich Law Office
February 15, 2019
Page 3



AGREED and ACCEPTED by Defendant Firm on behalf of itself and Richard Spencer

LAW OFFICE OF JOHN A. DINUCCI

X _____
   John A. Dinucci

Date: _____
      2/18/2019

IDS.Engagement Ltr - Sines v. Kessler 021519 03

Kaplan Hecker & Fink LLP
Bryan J. Jones, Law Office of John A. DiNucci, and Kolenich Law Office
February 15, 2019
Page 4



**EXHIBIT A**

**Terms and Conditions**

*These Terms and Conditions apply to and form a part of the attached Engagement, and incorporate all capitalized terms defined in the Engagement and its Exhibits. iDS, Firms, and Clients are collectively the "Parties".*

## ARTICLE 1 – SERVICES

1.1    *Provision of Services.* iDS will provide the Services in accordance with these Terms and Conditions. Changes to the Costs (as defined below) and/or the scope of Services requested by Defendants (with the consent of KHF) or by KHF (with the consent of Defendants) can be authorized by KHF in writing or via email, provided that KHF is obligated to pay for all such changes, even if not authorized in writing, if (a) the change in scope was requested by KHF with the consent of Defendants, or (b) iDS provides reasonable notice to KHF of the change in Costs, and KHF does not object to such change before the applicable Services are performed.

1.2    *Consulting and Expert Services.* In any court proceeding, iDS shall be entitled to object to requests by third parties to obtain information concerning material personal to iDS employees, proprietary to iDS, or that is unrelated to the Engagement. Such objections may be required by existing confidentiality agreements or protective orders. iDS shall use best efforts to protect Clients' interests consistent with the need to protect the iDS's personal and proprietary information and comply with all confidentiality obligations.

1.3    *Support Services.* If specific support is required to perform the Services that cannot reasonably be provided by iDS, iDS may employ or contract for additional support, provided that (a) such support does not increase the Costs, without Firm's written consent, and (b) all persons or entities providing such support shall comply with the provisions of this Engagement, where applicable, and the Order (as defined in Exhibit B).

## ARTICLE 2 – COMPENSATION AND PAYMENT

2.1    *Pricing Schedule.* The billing rates for hourly professional fees and expenses as set forth in Exhibit B and Exhibit C shall apply for Services subject to this Engagement ("Costs"), unless otherwise agreed to in writing by KHF and iDS.

2.2    *Retainer.* iDS will hold the retainer identified in the Statement of Work, if any (the "Retainer") until it renders its final Invoice for the Engagement, at which time it will apply the Retainer to any outstanding balance due. Any portion of the Retainer not applied at the conclusion of the Engagement shall be returned to KHF within 30 days.

2.3    *Invoices.* iDS shall submit a monthly invoice of Costs (each, an "Invoice") to the Billing Contact. Invoices may be sent via electronic mail. KHF will review all Invoices upon

receipt and will advise iDS of any objection to, or dispute with, the Costs or Services reflected in the Invoice within 30 days from the Billing Contact's receipt of the Invoice. All Costs are exclusive of any applicable property, excise, sales, use, or similar taxes, all of which are the responsibility of KHF.

2.4    *Payment of Invoices.*

(a)    KHF shall pay the undisputed portion of any Invoice within 30 days of the Billing Contact's receipt.

(b)    In the event any undisputed portion of Invoices remain unpaid after 45 days from the Billing Contact's receipt, iDS may send written notice to KHF, and if such undisputed portion is not paid within 15 days from KHF's receipt of such notice, iDS is entitled to withhold delivery of Services, suspend access to Licensed Software (as defined below), and/or suspend all work, in addition to any other rights iDS may have under the Engagement or applicable law.

2.5    *Payment Instructions.* The Retainer and all Invoices shall be paid as follows:

Retainer and all payments by check to:

    iDiscovery Solutions
    3000 K Street NW, Suite 330
    Washington, DC 20007

All electronic payments:

    Bank:    Revere Bank
    Address:  2101 Gaither Road, Suite 600
              Rockville, MD 20850
    ABA#:    055003528
    For the benefit of iDiscovery Solutions
    Account#  1076942

2.6    *Estimates.* Any estimate of anticipated fees and expenses for the Engagement is based on the information available at the time it is made, and is not a maximum fee or a fixed price.

## ARTICLE 3 – INTELLECTUAL PROPERTY

3.1    *Intellectual Property.*

(a)    "iDS IP" includes all iDS proprietary software or applications, code (source and object code forms), functionality, customizations (and improvement thereto), tools, products, content, URLs, domain names, technology, system or network architecture, topology, scripts, user interfaces, "look and feel," trade secrets, copyright rights, trademarks, patent rights, know-how, inventions and rights of priority as recognized in any country or jurisdiction in the world. iDS IP remains the exclusive property of iDS or its licensors. iDS owns all rights, including, without limitation, all intellectual property rights to any iDS IP developed by iDS.



DocuSign Envelope ID: 9CC682E0-0737-20B4-832C-7044181D0058

*(b)* "Defendant Firm/Client IP" encompasses all information and materials that a Defendant Firm or Defendant Client provides to iDS under this Engagement. Defendant Firm/Client IP remains the exclusive property of the Defendant Firm or Defendant Client (as applicable). Defendant Firm/Client IP shall include any work product that iDS is paid to create under this Engagement, including any derivative work that incorporates Defendant Firm/Client IP.

3.2     *Work Product*. The Services are being done for and under the direction of Defendant Firms and, accordingly, are part of Defendant Firms' work product, and all communications between iDS, Defendant Firms, and Defendant Clients in connection with such Services are confidential.

3.3     *End-User License*. iDS may provide Defendant Firms, Defendant Clients, and/or their respective employees, contractors, and representatives (collectively, "authorized end-users") with access to proprietary or licensed online software (such as kCura's Relativity) designed for, among other things, hosting, file review, searching, coding, work-flow management, and document security (collectively, "Licensed Software") as part of the Services. iDS hereby grants to all authorized end-users a personal, non-exclusive, non-transferable, revocable, and limited end-user license to access and use such Licensed Software to the extent provided in the Engagement. iDS may suspend, terminate, or block access to all or any part of the Licensed Software if (a) iDS notifies Defendant Firm of a demonstrable violation of the terms of this Engagement (other than a violation of Section 3.4) and the violation is not remedied within 15 days of the Defendant Firm's receipt of such notice; (b) iDS reasonably determines that continued use of the Licensed Software will lead to corruption, loss, or a violation of the confidentiality, of Defendant Firm's, Defendant Client's, or a third party's information, or (c) iDS reasonably determines that Defendant Firm or Defendant Client has violated Section 3.4.

3.4     *Access and Use of Licensed Software*. Authorized end-users may assign their own password for purposes of accessing and using the Licensed Software. Each authorized end-user shall be responsible for maintaining the confidentiality and maintenance of all passwords. Each Defendant Firm and Defendant Client hereby accepts full responsibility for, and shall be liable for, all access to the Licensed Software by their authorized end-users, and all expenses or damages incurred by iDS in maintaining the security of a password, including resetting a password or preventing unauthorized access. Each Defendant Firm and Defendant Client shall use reasonable efforts to prevent unauthorized access of the Licensed Software and shall immediately notify iDS of any unauthorized use or other breach of security. Defendant Firms and Defendant Clients

shall not: (a) disassemble, decompile or otherwise reverse engineer the Licensed Software, or otherwise attempt to learn the source code, structure, algorithms or ideas underlying the Licensed Software (except and only to the extent this clause is expressly prohibited by applicable law); (b) rent, lease, sell, transfer or otherwise provide access to the Licensed Software to third parties (except as expressly permitted herein); (c) copy or modify the Licensed Software; (d) remove any names, designations, trademarks or notices from the Licensed Software; or (e) allow any of their authorized end-users or any third party to do any of the foregoing.

3.5     *Firm/Client License*. Subject to Article 4, and solely for the purpose of this Engagement, each Defendant Firm and Defendant Client hereby grants to iDS a royalty-free right to access, store, reproduce, display, handle, perform, transmit, test, or otherwise use all information and materials that Defendant Firms and Defendant Clients provide to iDS; provided, however, that iDS shall not access, store, reproduce, display, handle, perform, transmit, test or otherwise use any electronically stored information ("ESI") or any other information provided by Defendant Firms or Defendant Clients for any purpose other than to provide the Services. By providing information and materials to iDS, each Defendant Firm and Defendant Client (as applicable) warrants that: (a) it has a good faith belief that iDS may access, store, reproduce, display, handle, perform, transmit, test or otherwise use such materials consistent with all applicable laws, regulations, and statutes, including but not limited to the Health Insurance Portability and Accountability Act of 1996 and the Gramm-Leach-Bliley Act; and (b) the provision of such information or materials does not conflict with or result in a breach or default of any term or provision of any agreement, obligation or duty to which Firm or Client is a party or is bound.

3.6     *Acceptance of Risk*. Each Defendant Firm and Defendant Client specifically accepts the risk of loss to or corruption of any ESI that is the subject of the Services.

## ARTICLE 4 – CONFIDENTIAL INFORMATION

4.1     *Confidential Information*. iDS, Defendant Firms, and Defendant Clients acknowledge that during the term of this Engagement each of them (the "Receiving Party") may come into possession of or become acquainted with certain confidential and/or proprietary information ("Confidential Information") of another Party (the "Disclosing Party"), and that the receipt of such Confidential Information is necessary for the performance of the Services hereunder. As to iDS, Confidential Information shall include all iDS IP, business information, marketing and sales information, strategies, and business processes. As to Defendant Firms and Defendant Clients, Confidential Information shall include all Defendant

DocuSign Envelope ID: 9CC092E0C372-2091B2C-70041.18D396FB



Firm/Client IP, all information and materials (including ESI) that Defendant Firms or Defendant Clients provide to iDS, all documents or other materials that contain or are derivative of such information, and all deliverables, evidence and non-public information relating to the Engagement. As to all Parties, Confidential Information shall include the material terms of this Engagement, including the Pricing Schedule (if applicable), and all information not generally known to the public. Defendant Firms' or Defendant Clients' delivery of Confidential Information to iDS does not operate as a waiver of any applicable statutory or common law privileges or protections. Confidential Information does not include information that is generally known to the public or is known by the Receiving Party before the information is delivered under this Engagement. Defendant Firms shall promptly notify and provide iDS with a copy of all protective orders and/or confidentiality agreements that govern information and materials that Defendant Firms or Defendant Clients provide to iDS, and iDS shall comply with the terms of all protective orders and/or confidentiality agreements upon receipt thereof for as long as iDS possesses the subject information or materials.

4.2     *Disclosure and Use*. The Receiving Party shall only disclose the Disclosing Party's Confidential Information to its employees, independent contractors, subcontractors, attorneys, accountants, or agents to the extent that such individuals have a need to know for the purposes described in this Engagement, and the Receiving Party shall be responsible for such recipients' care and use of such Confidential Information. The Receiving Party shall treat such Confidential Information as strictly confidential and with the same or greater standard of care as it uses for its own confidential and proprietary information. Except as permitted by this Engagement, no Receiving Party will: (a) make any use of a Disclosing Party's Confidential Information for its own benefit; or (b) acquire any right in or assert any lien against a Disclosing Party's Confidential Information or permit any third party to do so. The Receiving Party will immediately notify the Disclosing Party in the event of any known disclosure, loss, or use of the Disclosing Party's Confidential Information in violation of this Engagement.

4.3     *Exceptions*. Notwithstanding Section 4.2, the Receiving Party may disclose a Disclosing Party's Confidential Information (a) upon a Disclosing Party's written consent; or (b) to the extent required by law or order of a court or governmental agency, provided that prior to such disclosure the Receiving Party must (i) notify the Disclosing Party immediately of the existence, terms, and circumstances of a request to disclose Confidential Information, (ii) permit the Disclosing Party the opportunity to seek a protective order and/or other appropriate remedy, or waive the Party's compliance with this Article; (iii) provide such cooperation as

the Disclosing Party might reasonably request; and (iv) disclose only the Confidential Information that it is legally required to furnish.

4.3     *Survival of Confidentiality Obligations*. The confidentiality obligations created by this Engagement shall survive the Termination of the Engagement.

## ARTICLE 5 – TERM AND TERMINATION

5.1     *Commencement and Term*. This Engagement shall commence upon full execution of the Engagement and continue until (a) terminated by KHF, for any reason, upon 7 days prior written notice to the other Parties, or (b) the event of bankruptcy of KHF or iDS (collectively, "Termination").

5.2     *Disposition of Confidential Information*.

*(a)*     Upon Termination, each Defendant Firm shall provide iDS written instructions on the disposition of its and/or its Defendant Clients' Confidential Information in iDS's control. Upon request, iDS will send KHF and each Defendant Firm the estimated Costs for such disposal. iDS shall follow Defendant Firm's instructions unless otherwise required by law, subpoena, court order or other legal hold, and KHF shall bear all reasonable costs of disposition. Notwithstanding the foregoing, iDS shall not be obligated to transfer or deliver any Confidential Information unless all undisputed Invoices have been paid. If a Defendant Firm does not provide such written instructions within 60 days after a Termination, iDS may send such Defendant Firm written notice of Defendant Firm's obligation to do so. If such Defendant Firm does not provide such instructions within 30 days of receiving such notice, iDS may dispose of all applicable Confidential Information in a manner that complies with the confidentiality obligations of this Engagement. In such an event, Firms and Clients waive all claims of liability that may be asserted against iDS for such disposal, unless such disposal results in the violation of this Engagement.

*(b)*     iDS may retain its case information related to this Engagement (such as generated reference and research materials) according to its internal retention schedule, provided that iDS will not retain any materials containing, referencing, or derived from Confidential Information without such Defendant Firm's express written consent, which consent shall not be unreasonably withheld.



## ARTICLE 6 – INDEMNIFICATION AND LIABILITY

6.1 _Indemnification._[1] Defendants shall indemnify and hold IDS harmless from and against all losses, liabilities, costs, damages and expenses incurred by IDS as a result of a claim, demand, subpoena, cause of action, or other legal process by a third-party other than Plaintiffs or their legal counsel related to (a) the performance of Services by IDS, or (b) any Confidential Information of Defendant Firms or Defendant Clients, provided, however, as follows:

(a) no Defendant shall be so liable to indemnify or hold harmless IDS other than for said matters that relate to the content of, or the disclosure to IDS of, said Defendant's Confidential Information;

(b) in the event that the project Contact or IDS is requested pursuant to subpoena, court order, or other legal process (issued and/or obtained by a third-party other than Plaintiffs or their legal counsel) to produce any documents or provide testimony related to the performance of the Services (other than as included in the Services), the Defendant that provided such Confidential Information to IDS shall pay for all reasonable professional time and expenses incurred in preparing for and responding to said requests for documents or said providing testimony in accordance with Section 2.1 or applicable statutory rates; and

(c) no Defendant shall be so liable for any losses, liabilities, costs, damages and expenses caused, in whole or in part by (a) any negligent, grossly negligent, reckless or intentional act or omission by IDS and/or any employee, agent and/or subcontractor thereof and/or (b) any act or omission of Plaintiffs, their legal counsel and/or their other agents and/or representatives.

6.2 _Limitation on Indemnification._ Section 6.1 shall not apply to the extent that such losses, liabilities, costs, damages, and expenses incurred by iDS are caused by (a) the negligence or willful misconduct of iDS, or (b) iDS's violation of this Engagement.

6.3 _Limitation on Liability._ The Parties shall not be liable to each other under this Engagement for any consequential, incidental, special or punitive damages, nor shall iDS be liable to any Party, in any form, in excess of $1,000,000.

## ARTICLE 7 – CONFLICTS AND OTHER iDS CLIENTS

7.1 _Determination of Conflicts._ iDS's determination of conflicts is based on the substance of the work performed as opposed to the parties involved. iDS may provide Services to any other party, including parties who have disputes with or

interests adverse to the Firms or the Clients, without notice to the applicable Firms; provided, however, that during this Engagement, iDS shall not provide Services to any other party relating to the subject matter of this Engagement without the applicable Firm's written consent. Should a Defendant no longer be represented by the Defendant Firm identified herein, iDS shall obtain written consent from such Defendant's new counsel or, if such Defendant is unrepresented, the Defendant; provided, however, that if an unrepresented Defendant does not respond to such request within 14 days, iDS may proceed with such engagement absent written consent.

7.2 _Identity of Other Clients._ The Firms shall not use the fact of iDS's current or previous engagements in other matters as a means of enhancing or diminishing iDS's credibility.

7.3 _Ethical Wall._ Should iDS provide Services to any other party, including parties who have disputes with or interests adverse to Clients after the termination of the Engagement, iDS shall establish an ethical wall between the employees who worked on this Engagement and those assigned to the matter involving a party with a dispute or interest adverse to such Clients.

## ARTICLE 8 – GENERAL TERMS AND CONDITIONS

8.1 _Dispute Resolution._ Any controversy, dispute or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this Engagement shall be resolved by confidential and final and binding arbitration administered by and in accordance with the then-existing Rules of Practice and Procedure of Judicial Arbitration & Mediation Services, Inc. (JAMS), or its successor entity, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal court.

8.2 _Choice of Law; Jurisdiction._ This Engagement shall be governed by the laws New York, which shall be the exclusive venue for any arbitration hereunder.

8.3 _Costs of Enforcement._ The prevailing Party in any dispute hereunder shall be entitled to reasonable attorneys' fees and expenses incurred in arbitrating, appealing, and/or enforcing any judgment entered by the arbitrator.

8.4 _Entire Agreement; Amendments._ The Engagement, including all exhibits, constitutes the entire and final agreement between the Parties with respect to its subject matter, and supersedes all prior or contemporaneous written or verbal agreements and communications, and shall not be

---

[1] No representation has been made that Clients represented by the Kolenich Law Office have any ability to pay any funds if called to do so under this Section 6.1.

DocuSign Envelope ID: 9C-632E-00497-20B4882C-704418D301FB



modified, or any of its terms waived, except by a written agreement signed by the Parties.

8.5     _Electronic Signatures._ The Parties agree that this Engagement may be electronically signed.  The Parties agree that the electronic signatures appearing on this Engagement are the same as handwritten signatures for the purpose of validity, enforceability and admissibility.

8.6     _Counterparts._ The Engagement may be executed in one or more counterparts, each of which will be deemed to be an original and all of which, when taken together, will constitute one and the same agreement. The exchange of copies or signature pages by facsimile or electronically shall constitute effective execution and delivery.

8.7     _Force Majeure._ No Party shall be liable for any delay or failure to meet its obligations pursuant to this Engagement due to circumstances beyond its reasonable control, including but not limited to any acts or omissions of any government or governmental authority, acts of terrorism or public enemy, war, riots, insurrection, civil commotion, delays in transportation or deliveries of supplies or materials, power loss, fire, flood, storm or other natural disaster, or any damage or delay which is a direct result of any such event.

8.8     _Authority to Bind._ Each Firm represents and warrants that it is authorized to bind the applicable Clients set forth on the appropriate signature line to this Engagement.

8.9     _Limitation on Obligations._ iDS shall owe no duties to Plaintiffs, KHF, Defendants, or Defendant Firms other than those expressly set forth in this Engagement.

8.10    _No Third Party Beneficiaries._ The provisions of this Engagement are for the sole benefit of Plaintiffs, KHF, Defendants, Defendant Firms, and iDS and their successors and permitted assigns, and they will not be construed as conferring any rights to any third party.

DocuSign Envelope ID: 9FC692E0-CF37-4D04-8R2C-704418D391FB



## EXHIBIT B

## Statement of Work

### SECTION A – iDS CONTACTS

The "Project Contact" on this Engagement shall be:

Rafael Guthartz
3000 K Street NW, Suite 330
Washington, DC 20007
Email: rguthartz@idsinc.com

### SECTION B – FIRM/CLIENT CONTACTS

KHF's main point of contact, and the "Billing Contact", shall be:

Christopher Greene
Kaplan Hecker & Fink LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Email: cgreene@kaplanhecker.com

Defendant Firms' main point of contact shall be:

Bryan J. Jones
106 W. South Street, Suite 211
Charlottesville, VA 22902
Email: bryan@bjoneslegal.com

James Kolenich
Kolenich Law Office
9435 Waterstone Blvd., Suite 140
Cincinnati, OH 45249
Email: jekJohn DiNucci
Law Offices of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
Email:

### SECTION C – SERVICES TO BE PERFORMED

Clients engage iDS as a forensic neutral to provide Services in connection with the litigation captioned *Sines, et al. v. Kessler, et al., No. 3:17-cv-00072-NKM-JCH*, which Services shall include performing the collection and production of ESI from Defendants' Electronic Devices and Social Media Accounts pursuant to the Stipulation and Order for the Imaging, Preservation, and Production of Documents dated November 19, 2018 (the "Order"), a copy of which is attached as Exhibit D. In the event of any conflict between this Engagement and the Order, the Order shall govern.

iDS estimates the Costs below in connection with such Services.  Additional Services shall be billed in accordance with the Pricing Schedule.

DocuSign Envelope ID: 3CC682E0-C472-2081-B2AC-7014418D9163



| COLLECTION | | | | | |
|---|---|---|---|---|---|
| | Unit | $/Unit | Units | Est. Total $ | NOTES |
| Forensic Collection - Computer/Mobile Device/Hard Drive | Device | $399 | 20 | $ 7,980.00 | Assumes devices will be mailed to iDS for imaging in lab. |
| Forensic Collection - Social Media Account | Hour | $200 | 111 | $ 22,200.00 | Assumes 37 accounts at average of 3 hours per account. |
| Forensic Collection of Webmail Account | Account | $399 | 7 | $ 2,793.00 | |
| Other Hourly Data Collection and Project Planning | Hour | $200 | 10 | $ 2,000.00 | |
| Total | | | | $34,973.00 | |

| DATA EXTRACTION, PROCESSING & SEARCHING | | | | | |
|---|---|---|---|---|---|
| | Unit | $/Unit | Estimated Units | Est. Total $ | NOTES |
| Message/Chat Search and Extraction from Mobile Device Image | Hour | $200 | 33 | $ 6,600.00 | 11 devices, ~3 hours per device |
| Data Extraction from Computers | Hour | $200 | 36 | $ 7,200.00 | 9 devices, ~4 hours per device |
| Early Case Assessment | GB | $10 | 100 | $ 1,000.00 | ECA processing of email and edocs for search term application and date/custodian filtering. |
| Processing for Promotion to Review Platform | GB | $100 | 40 | $ 4,000.00 | Full processing and deduplication of culled data for promotion to review platform. |
| Total | | | | $18,800.00 | |

| HOSTING & PRODUCTION | | | | | |
|---|---|---|---|---|---|
| | Unit | $/Unit | Estimated Units | Est. Total $ | NOTES |
| Relativity Review Hosting | GB | $8/month | 50 | $400/Month $2,400 | Monthly Fee for 6 months |
| User Licenses | User | $70/month | 5 | $350/Month $2,100 | Monthly Fee for five users for 6 months. |
| Project Management/Review Support/Productions | Hour | $150 | 25 | $625/Month $3,750 | Assumes some review and batching support, and multiple productions each month requiring ~4 hours billable time for 6 months. |
| Total | | | | $8,250 | Assumes 6 months of hosting and user licenses. |

| ESTIMATE TOTAL | |
|---|---|
| COLLECTION | $ 34,973.00 |
| EXTRACT/ PROCESS/ SEARCH | $18,800.00 |
| HOST/PRODUCE | $ 8,250.00 |
| TOTAL | $62,023.00 |

Plus shipping and media at cost.

Upon completion of the production of ESI pursuant to the Order, iDS shall archive the Relativity workspace(s) at a cost of $500 per workspace. iDS shall maintain and store an archive copy of the Relativity workspace(s) as well as all Confidential

DocuSign Envelope ID: 30C682E0-2C37-20B4-882C-7044418D391CB



Information provided by Defendant Firms or Defendant Clients during the term of this Engagement until the Engagement is terminated and instructions for data disposition pursuant to Section 5.2 are provided.

## SECTION D - REPORTING TO PARTIES

iDS shall provide periodic reports to Defendant Firms and KHF concerning the status of collection, imaging, and processing of Defendants' Electronic Devices and Social Media Accounts (as those terms are defined in the Order) on a weekly basis, starting one week after the date of engagement (the "Periodic Reports"). The Periodic Reports must be in Excel format and must include, at a minimum, whether each Electronic Device or Social Media Account identified on Defendants' Certifications (as defined in the Order) has been collected (and if it has not been collected, the date on which the Electronic Device or Social Media Account will be made available to iDS); the volume of the collection if made (number of collected items and total GB size); the date range of the collected items; and a breakdown of the collected items by file type or other relevant metric. Defendants, Defendant Firms, Plaintiffs, KHF and iDS shall keep confidential the Periodic Reports. Notwithstanding the foregoing, Defendant Firms or KHF may disclose the contents of the Periodic Reports to the Court where necessary for an application of relief.

## SECTION E – RETAINER

A retainer is not required prior to commencement of the Services.

## SECTION F – INVOICING AND PAYMENT

iDS agrees to provide the first $10,000 of Service free of charge. All Services in excess of $10,000 shall be billed in accordance with the Pricing Schedule.

## SECTION G – ADDITIONAL AGREEMENTS

iDS agrees to abide by the terms and conditions of the Protective Order in this litigation dated January 3, 2018 (ECF No 167).



**EXHIBIT C**

**Pricing Schedule**

| Service | Cost | Unit |
|---------|------|------|
| Computer/Mobile Device/Webmail Device Collection/Imaging (in lab) | $399 | Per device/account |
| Other data collections and extractions | $200 | Per hour |
| Early Case Assessment | $10 | Per GB |
| Data Processing | $100 | Per GB |
| Project Management Support and Productions | $150 | Per hour |
| Relativity User License | $70 | Per user/month |
| Relativity Hosting | $ 8 | Per GB/month |
| Relativity Workspace Archive | $500 | Per workspace |
| Data Disposition | $150 | Per hour |
| Engagement-Related Expenses (travel, lodging, meals, parking, delivery/courier services, postage, media, etc.) | | Reasonable expenses at cost |



**EXHIBIT D**

**Stipulation and Order**

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
11/19/2018
JULIA C. DUDLEY, CLERK
BY:  /s/ J. JONES
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>                Plaintiffs,<br><br>  v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSELY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>                Defendants. | **Civil Action No.** 3:17-cv-00072-NKM<br><br><br>**JURY TRIAL DEMANDED** |

## STIPULATION AND ORDER FOR THE
## IMAGING, PRESERVATION, AND PRODUCTION OF DOCUMENTS

1

WHEREAS the Plaintiffs having engaged a discovery vendor to image, preserve, and produce information relevant to the Action in a manner consistent with the Federal Rules of Civil Procedure; and

WHEREAS certain Defendants have expressed an inability to image, preserve, and produce Electronically Stored Information ("ESI") in a manner consistent with the Federal Rules of Civil Procedure; and

WHEREAS the Plaintiffs and Defendants Christopher Cantwell, Nathan Damigo, Matthew Heimbach, Michael Hill, Identity Evropa, Jason Kessler, League of the South, Eli Mosley, Nationalist Front, National Socialist Movement, Matthew Parrott, Robert Ray, Jeff Schoep, Richard Spencer, Traditionalist Worker Party, Michael Tubbs, and Vanguard America (collectively, the "Defendants," and with Plaintiffs, the "Parties") having stipulated and agreed to the terms set forth herein;

IT IS hereby ORDERED as follows:

## I.      **GENERAL PROVISIONS AND DEFINITIONS**

1.      <u>Scope of Order</u>:  This Stipulation and Order governs the Parties' agreement to permit the Third Party Discovery Vendor to collect and preserve evidence from Defendants' Electronic Devices that is potentially relevant to this litigation and/or responsive to Plaintiffs' Discovery Requests.  Plaintiffs have already conducted a collection from Plaintiffs' Electronic Devices and Social Media Accounts of ESI that is potentially relevant to this litigation and/or responsive to Defendants' requests for production, consistent with the terms of this Stipulation and Order.  The purpose of this Stipulation and Order is to ensure that Defendants conduct a collection and production commensurate with their obligations under the Federal Rules of Civil Procedure and Plaintiffs' collection and production.  The Parties understand that their obligation to preserve, collect, and produce Documents relevant to this litigation is mutual and ongoing.

2

2. <u>Definitions</u>: As used herein:

i. "Action" refers to the above-captioned litigation, *Sines, et al. v. Kessler, et al.*, No. 3:17-cv-00072 (W.D. Va.).

ii. "Discovery Requests" refers to Plaintiffs' [Corrected] First Set of Documents Requests, dated January 25, 2018; Plaintiffs First Set of Interrogatories, dated January 25, 2018; and any other discovery requests served by Plaintiffs in this Action.

iii. "Document" shall be construed broadly to include any original, reproduction or copy of written or documentary material, ESI (as defined below), howsoever stored, or drafts thereof, including, but not limited to, correspondence, memoranda, and other communications. The term "Document" shall also encompass the use of the term "Documents" as contemplated by Fed. R. Civ. P. 34(a) including, without limitation, Documents maintained in paper form. The term "Document" as used in this Stipulation and Order is synonymous with "file."

iv. "Electronic Device" shall be construed to include computer networks, mainframe computers, desktop computers, laptop computers, smartphones, tablet computers, gaming devices, hard drives and/or electronic storage systems and/or devices (whether accessed via a network or locally). For purposes of clarification, storage devices include external hard drives, portable jump or thumb drives, CDs, DVDs, and any other electronic data storage device.

3

v.  "Electronically Stored Information" or "ESI" shall be construed to mean all digital or analog electronic files, including 'deleted' files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including phones, tablets, laptops, desktop computers, and any hard drives or backup media used by the Parties (e.g., other external hard drives, backup drives or tapes, flash drives, or any other storage media used for storing backups) or otherwise, whether such files have been reduced to paper printouts or not.  This includes all e-mails, both sent and received; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer aided design) files, including drafts and revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts, and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management and Personal Information Management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of smartphones or any other mobile smart device including Personal Data Assistants ("PDA's"); all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all internet and web-browser-generated  history files, caches and "cookies" files; and any and all other files generated through the use of computers, video, audio recording, image, instant messages, posts to social media, text messages,

gaming and collaboration web services or information and/or

telecommunications, including but not limited to voice mail and cloud

storage.  ESI shall not include any file created by a machine or any files

necessary for the normal operation of a computer system.  The term "ESI"

as used in this Stipulation and Order shall also encompass the meaning of

"electronically stored information" as used in Fed. R. Civ. P. 34(a).

vi.   The act of creating an "image" or "imaging" as used herein refers to

creating an electronic copy that captures all ESI related to that device or

account without the alteration of metadata associated with that account.

vii.   "Metadata" refers to the fields set forth below to the extent that such fields

are available in the source Document.

| Field | Comments |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Bates number of the first page of a family range |
| EndAttach | Bates number of the last page of a family range |
| PageCount | Number of pages in a Document. |
| FileExtension | Original file extension as the Document was maintained in the ordinary course |
| FileSize | File size in bytes |
| DocTitle | Document title as stored in file metadata |
| Custodian | Full name of all applicable custodians |
| Author | Document author information for non-email |
| From | Email FROM |
| To | Email TO |
| Cc | Email CC |
| BCC | Email BCC |
| Subject | Email Subject |
| Attachments | Name of attached file(s) as maintained in the ordinary course of business |
| DateCreated | File date created MM/DD/YYYY |
| DateModified | File date modified MM/DD/YYYY |

| DateSent | Date sent MM/DD/YYYY |
|---|---|
| TimeSent | Time sent HH:MM:SS AM/PM |
| DateReceived | Date received MM/DD/YYYY |
| TimeReceived | Time received HH:MM:SS AM/PM |
| DateStarted | Date started MM/DD/YYYY |
| DateEnded | Date ended MM/DD/YYYY |
| FileName | Name of the file as maintained in the ordinary course of business with extension |
| MD5Hash | The Computer-generated MD5 Hash value for each Document |
| NativePath | The path to the native-format file corresponding to each Document on the delivery media, including the file name (if a native-format file is provided) |
| TextPath | The path to the corresponding text file for each Document on the delivery media, including filename |

viii.   "Producing Party" refers to the Party producing Documents.

ix.   "Protective Order" refers to the "Order for the Production of Documents and Exchange of Confidential Information," ECF No. 167.

x.   "Social Media Account" shall mean an account on any forum, website, application, or other platform on which persons can create, transmit, share, communicate concerning, or comment upon any information, ideas, or opinions, or otherwise engage in social networking.  Without limiting the foregoing in any manner, and by way of example only, the following are social media platforms: email, comment sections of websites, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Twitter, Tumblr, Youtube, and instant messaging services such as Signal, WhatsApp, Messenger, Hangouts, or Skype. Without limiting the foregoing in any manner, and by way of example only, the following are methods of using social media platforms: uploading, posting, commenting, reacting (e.g., "liking" a post), and sharing.

xi. "Third Party Discovery Vendor" shall mean a company capable of undertaking the obligations set forth herein that is in the business of conducting forensic examinations of Electronic Devices for the purposes of collecting and preserving ESI, as well as determining whether any ESI has been deleted or lost.[1]

## II.   COLLECTION AND IMAGING OF DOCUMENTS[2]

3.   _Engagement of a Third Party Discovery Vendor for Plaintiffs_:  Within 21 days of the entry of this Stipulation and Order, to the extent they have not already done so, Plaintiffs shall engage, at their own expense, a Third Party Discovery Vendor to conduct the collection and production of ESI from Plaintiffs' Electronic Devices and Social Media Accounts required by this Stipulation and Order.

4.   _Engagement of a Third Party Discovery Vendor for Defendants_:  Within 21 days of the entry of this Stipulation and Order, the Parties shall engage, at Plaintiffs' expense, a Third Party Discovery Vendor to conduct the collection and production of ESI from Defendants' Electronic Devices and Social Media Accounts required by this Stipulation and Order.  Pursuant to the Court's November 13, 2018 Order, ECF No. 379, such engagement shall be without prejudice to Plaintiffs' ability to seek to recover from Defendants expenses arising from this engagement at a later date.  This Stipulation and Order does not obligate Defendants to pay any fees or costs incurred by the Third Party Discovery Vendor at this time, and does not prejudice

---

[1] Examples of such companies include, but are not limited to:  Epiq Systems, Inc.; RVM Enterprises, Inc.; KLDiscovery; kCura; and FTI Consulting.
[2] Due to his current incarceration, the deadlines in Section II shall not apply to Defendant Fields.  Plaintiffs and Defendant Fields will enter into a separate stipulation and proposed order as to the timing to be applied to Defendant Fields.

Defendants' rights to oppose any request made by Plaintiffs to recover those expenses, any such

obligation to be determined at a later date.

5.  <u>Identification of Sources of Documents:</u>  Within 14 days of the entry of this

Stipulation and Order, the Parties shall complete the Certification attached as Exhibit A (the

"Certification") and provide such Certification to opposing counsel.

6.  <u>Defendants' ESI:</u>  Within 7 days of receipt of the Defendants' Exhibit A's,

Plaintiffs shall identify those Electronic Devices and Social Media Accounts that the Third Party

Discovery Vendor shall image and collect.  Within 28 days of the entry of this Stipulation and

Order, Defendants shall make available to the Third Party Discovery Vendor for imaging and

collection any Electronic Device or Social Media Account identified on Exhibit A and selected

by Plaintiffs pursuant to this paragraph.

7.  <u>Plaintiffs' ESI:</u>  Plaintiffs have already collected and preserved ESI with the

assistance of a Third Party Discovery Vendor and will indicate on the Certification which

Electronic Devices and Social Media Accounts identified on the Certification were imaged and

collected.  Should a particular Electronic Device or Social Media Account identified on the

Certification not have been collected and/or imaged by Plaintiffs, Defendants may, within 7 days

of receipt of the Plaintiffs' Exhibit A's, identify those additional Electronic Devices and Social

Media Accounts that the Third Party Discovery Vendor shall image and collect.  Within 28 days

of the entry of this Stipulation and Order, Plaintiffs shall make available to the Third Party

Discovery Vendor for imaging and collection any Electronic Device or Social Media Account

identified on Exhibit A and selected by Defendants pursuant to this paragraph.

8.  <u>Identification of Responsive Documents by Defendants:</u>  Following the imaging

and collection of the Documents contained on Electronic Devices and Social Media Accounts

DocuSign Envelope ID: 3C682E9C-C972-2081-82AC-7044180D91C8

identified on Exhibit A and selected by Plaintiffs, Defendants shall review the results of the collection and produce to Plaintiffs those non-privileged Documents that are responsive to the Discovery Requests in the manner set forth in Paragraphs 10-18 below. Prior to conducting the review of the results of the collection, Defendants shall disclose to Plaintiffs any search terms or date ranges used to limit the review population. Should Plaintiffs have an objection to the search terms or date ranges applied by Defendants, Plaintiffs shall note such objection by email and the Parties shall confer within one week to attempt to resolve any dispute. In the event that a dispute between the Parties remains following the meet and confer, the Parties shall submit to the Court a joint email setting forth the nature of the dispute for the Court's resolution.

9.     Identification of Responsive Documents by Plaintiffs:  Following the imaging and collection of the Documents contained on Electronic Devices and Social Media Accounts identified on Exhibit A and selected by Defendants pursuant to Paragraph 7, Plaintiffs shall review the results of the collection and produce to Defendants any non-privileged Documents that are responsive to Defendants' discovery requests in the manner set forth in Paragraphs 10-18 below. Prior to conducting the review of the results of the collection, Plaintiffs shall disclose to Defendants search terms or date ranges used to limit the review population. Should Defendants have an objection to the search terms or date ranges applied by Plaintiffs, Defendants shall note such objection by email and the Parties shall confer within one week to attempt to resolve any dispute. In the event that a dispute between the Parties remains following the meet and confer, the Parties shall submit to the Court a joint email setting forth the nature of the dispute for the Court's resolution.

**III.     FORMAT OF PRODUCTION OF DOCUMENTS**

10.     When producing Documents responsive to Parties' discovery requests, Producing Parties shall produce such Documents in the following manner:

9

11.   <u>Production Format</u>:

    i.  For word processing files (e.g., Microsoft Word):  Comments, "tracked changes," and any similar in-line editing or hidden content will be produced.  Such files must be produced in native format with the only alteration being the addition of Bates numbers, unless the file can be produced as a pdf or TIFF file in a manner that preserves the metadata of the original word processing file.

    ii.  For presentation files (e.g., Microsoft PowerPoint):  Speaker notes, comments, and all other hidden content will be produced.  Such files must be produced in native format with the only alteration being the addition of Bates numbers, unless the file can be produced as a pdf or TIFF file in a manner that preserves the metadata of the original presentation file.

    iii.  For spreadsheet files (e.g., Microsoft Excel): Hidden columns, rows, and sheets, comments, "tracked changes," and any similar in-line editing or hidden content will be produced.  Such files must be produced in native format with the only alteration being the addition of a Bates number to the file name.

    iv.  Text messages, instant messages, e-mails, and social media postings (e.g., Facebook activity):  Such files will be produced as pdf or TIFF files with optical character recognition ("OCR").  The Bates number will be affixed at the lower right-hand corner of the PDF or TIFF files.

    v.   Media files, including audio, videos and photographs: Such files may be produced in native format with the only alteration being the addition of a Bates number to the file name.

    vi.   For PDFs: Such files will be produced as PDF or TIFF files with optical character recognition ("OCR") and Bates numbers.

    vii.   For hard-copy Documents:  Such files will be produced as PDF or TIFF files with OCR and Bates numbers.

    viii.   For any and all ESI, Documents shall be produced with all metadata intact to the maximum extent possible.  Where necessary to preserve metadata that cannot be produced as a result of the production formats listed above, or that cannot be produced with the Document for any other reason, the Producing Party will affix as the final page of the Document a description of the metadata.

12.    <u>Segregation of Documents</u>:  Documents to be produced that are segregated or separated from other Documents, whether because the Documents were located in binders, separate files, segregated by dividers, tabs, or clips or otherwise segregated or separated, will be produced in a manner that reflects these divisions.  Without limiting the foregoing, the Parties specifically agree that:

    i.   In scanning paper Documents, distinct Documents should not be merged into a single Document, and single Documents should not be split into multiple Documents (i.e., paper Documents should be logically unitized as found in the source Document).  The Parties will make their best efforts to

11

unitize Documents correctly and agree promptly to address situations where there are improperly unitized Documents.

ii.   Parent-child relationships (the association between an attachment and its parent Document) should be preserved and appropriately reflected in the metadata if identified in the source Document.  Bates numbering of a parent Document and any attachments shall be sequential such that a parent Document has the lowest value Bates number when compared to its attachment(s).

iii.   If any portion of a Document is responsive, the entire Document should be produced.

13.   <u>Bates Numbering</u>:  Documents shall be produced Bates-stamped.  Bates numbers shall be unique IDs with a prefix that can be readily attributed to the Producing Party.  Bates numbering should be sequential.  The Parties agree to use placeholders (e.g., "intentionally left blank" pages), rather than skipping Bates numbers in production.  Bates numbers shall be provided on the lower right-hand of each page.

14.   <u>Treatment of Attachments</u>:  Where attachments to Documents are produced, they shall be attached in the same manner as found in the original Document.  Where Documents are produced and all attachments thereto are not included, the Producing Party shall identify the missing attachments by means of a one-page "place holder" document for each missing Document and assign a Bates number to that page, consistent with the Bates number protocol in this Stipulation and Order.  For each missing attachment, the Producing Party shall provide a description of the attachment, type of document, title, number of pages, and explain the reason for its non-production, with information sufficient to allow the Party requesting the production of

the Document to understand the basis for the non-production and to challenge it in Court, if appropriate.

## IV.   **REDACTION OF DOCUMENTS**

15.     Producing Parties may only redact the content of Documents to the extent the content is: (a) subject to the attorney-client privilege, work-product doctrine, or any other privilege; (b) information that is not responsive to any discovery request.

16.     To the extent that a Document is produced in redacted form, any redactions shall be clearly indicated on the face of the Document and each page of the Document from which information is redacted shall bear a designation that it has been redacted and the reason for the redaction.  As an example, "Redacted for Privilege," "Highly Confidential – Redacted" when producing Documents to Pro Se Parties, or "Redacted as Non-Responsive."  Where a responsive Document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document.  Only where redactable content is predominant in a Document and no potentially relevant unredacted material responsive to a discovery request for production remains in the Document shall a Party be exempted from producing the Document in redacted form (i.e., the Party can withhold the Document in its entirety).

17.     Documents that are to be produced in a native format but require redactions may be produced with the relevant text replaced with "[REDACTED]" or black overlay concealing those portions of the Document.

18.     The production of a Document in redacted form does not affect the Producing Party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log.  Any Party that produces Documents containing redactions for privilege or withholds Documents on the basis of privilege shall create a privilege log that

13

complies with the requirements of Federal Rule of Civil Procedure 26. All redactions must be logged by the Producing Party on the privilege log.

## V. **MISCELLANEOUS**

19.     Except as specifically set forth herein, this Stipulation and Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the Western District of Virginia to this matter. Nor does this Stipulation and Order address, limit, affect, determine, or have any bearing on the relevance, discoverability, or admissibility as evidence of any Document, regardless of whether the Document is to be preserved, is preserved, or is produced pursuant to the terms of this Stipulation and Order.

20.     This Stipulation and Order is without prejudice to any Party's properly made objections to requests for production on any ground permitted by the Federal Rules of Civil Procedure.

21.     All obligations in this Stipulation and Order are continuing obligations. As such, for every new email address, mobile phone device, computer, external storage, social media account, or other communication platform created or obtained during this Action, the relevant obligations in this Stipulation and Order apply and require an updated Certification from each Party confirming that they have completed their obligations under this Stipulation and Order.

22.     This Stipulation and Order does not alter any obligations or rights that may be contained in the Protective Order.

23.     Nothing in this Stipulation and Order shall be deemed a waiver of any Party's right to object to the production of any Document on the basis of relevance, materiality, privilege, overbreadth, burden, proportionality, or any other recognized objection to discovery.

24.     Nothing in this Stipulation and Order shall be deemed to either diminish or eliminate the general obligation to identify and preserve potentially relevant information, nor as a

14

waiver of any Party's right to seek any appropriate relief for spoliation or any failure to preserve or to otherwise seek appropriate relief from this Court.

25.     Any Party may seek a modification to this Stipulation and Order from the Court for good cause shown.

26.     Any obligation to preserve Documents or ESI contained in this Stipulation and Order shall continue throughout the pendency of this litigation, including during the pendency of any appeals or time in which a Party may appeal.

So Ordered:


_____                    11/19/18
Magistrate Judge Hoppe                              _____
                                                    Date

## EXHIBIT A TO STIPULATION AND ORDER FOR THE
## IMAGING, PRESERVATION, AND PRODUCTION OF DOCUMENTS

Consistent with the obligations under the "Stipulation and Order for the Imaging, Preservation, and Production of Documents," I certify that:

1.       The following are all the Social Media Accounts, as defined in ¶ 2(xi) of the Stipulation and Order, that contain potentially relevant Documents:

| Username | Provider/Platform | Nature of Responsive Documents on Account |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

2.       The following are all the Electronic Devices, as defined in ¶ 2(vi) of the Stipulation and Order, that I have possessed since January 1, 2017 that may contain any potentially relevant Documents or ESI:

| Device Type (e.g., iPhone 7) | Size (e.g., 32 GB) | Nature of Responsive Documents on Device |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____.

_____
Party