CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
08/09/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-00072 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| JASON KESSLER et al., | ) | By: Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Motion for Sanctions Against Defendants

Elliot Kline and Matthew Heimbach, ECF No. 457, and Motion for Sanctions Against Defendant

Vanguard America, ECF No. 465. Vanguard America was represented by counsel when the

motion against it was filed, ECF No. 497, but did not file a brief in opposition. Kline and

Heimbach are representing themselves, ECF Nos. 347, 397, and neither filed a brief opposing the

motion within the time allowed, *see* ECF No. 101. The Court held a hearing on June 3, 2019, at

which counsel for Plaintiffs and (now former) counsel for Vanguard America appeared in person.

The Court sent three notices each to Kline and Heimbach, but neither appeared at the hearing or

acknowledged the Court's communications.

Plaintiffs contend that Kline, Heimbach, and Vanguard America (together, "Defendants")

have disobeyed multiple Court orders directing them to provide or permit discovery of materials

and information that go to the heart of this lawsuit. *See* Pls.' Mot. for Sanctions Against Defs.

Kline & Heimbach 3–4; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 3–4.[1] They ask the

Court to impose substantive sanctions that will level the evidentiary playing field at trial and

---

[1] Pinpoint citations to documents electronically filed with this Court, except for transcripts of court
proceedings and depositions, use the footer page numbers generated by CM/ECF and the exhibit labels
assigned by the filing party. Pinpoint citations to transcripts use the page numbers printed on the upper
right-hand corner of the document.

"stem the tide of Defendants running from accountability by following each other out the back door, never to be heard from again." Pls.' Mot. for Sanctions Against Def. Vanguard Am. 3–4; *see also* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 18. Plaintiffs' position is well taken. Indeed, Defendants have continually failed to fulfil even their most basic obligations to this Court, their counsel, and the other parties to this case. *See generally Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640–43 (1976); *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 301–04 (4th Cir. 2011); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525–27 (D. Md. 2010). Their refusal to meaningfully participate in discovery—or in Kline's case to participate at all—despite repeated court orders directing them to do so has shifted everyone's focus "from the merits to the collateral and needless" and stalled the litigation's progress for months on end. *Lee v. Max Int'l*, 638 F.3d 1318, 1321 (10th Cir. 2011) (Gorsuch, J.). This behavior is unacceptable and will be sanctioned. As I explained at the June 3 hearing, however, it would be premature to impose Plaintiffs' requested evidentiary sanctions before making a final attempt to obtain discovery. This Memorandum Opinion further explains my conclusion and sets out the Court's expectations for Defendants' participation in this litigation going forward.

## I. The Legal Framework

"Litigants come to court to have their problems solved" in a fair, efficient, and orderly forum. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (citing Fed. R. Civ. P. 1). The Federal Rules of Civil Procedure are a set of written rules that "for all practical purposes, and with few exceptions, . . . control the procedure in all civil actions in the United States District Courts." 4 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1011 (4th ed. 2013); *see* Fed. R. Civ. P. 1, 81. "They should be construed, administered, and employed

by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. And, although "litigation is not a game," *Bintliff v. United States*, 462 F.2d 403, 407 (5th Cir. 1972), federal courts do expect that everyone will play by the same rules on as level a field as is reasonably possible, *see McNeil v. United States*, 508 U.S. 106, 113 (1993). "Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994).

*

Rules 26 through 37 govern discovery in most civil cases. *See Mancia v. Mayflower Textile Servs.*, 253 F.R.D. 354, 357 (D. Md. 2008). They are rooted in "the unshakable foundation" that "[o]ur adversary system for the resolution of disputes . . . . [is] directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993). *See Victor Stanley*, 269 F.R.D. at 526; *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). "The basic philosophy" driving discovery today is "that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman*, 329 U.S. at 507. "To that end, either party may compel the other to disgorge whatever [relevant] facts he has in his possession." *Id.*; *see Eramo v. Rolling Stone, LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016).

Rules 26 through 36 provide specific devices or procedures—such as interrogatories, document requests, and depositions—for one party to obtain discoverable information from another. *See Pruitt v. Bank of Am., N.A.*, No. 8:15cv1310, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016) ("Interrogatories and depositions are important elements of discovery; a [party] would be hard-pressed to conduct its case without them."); *Middlebrooks v. Sebelius*, Civ. No. 04-2792, 2009 WL 251411, at *3 (D. Md. Aug. 13, 2009) ("The purpose of pre-trial discovery is for a litigating attorney [or party] to obtain information from the opposing party, information which in many cases is not otherwise available."). Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n*, 212 F.R.D. at 181; *see Pack v. S. Car. Wildlife & Marine Res. Dep't*, 92 F.R.D. 22, 25 (D.S.C. 1981) (pro se litigant must make a "good faith attempt to comply with rules of discovery and to be present" for court). When they do not, Rule 37 provides one mechanism for a federal court to compel compliance or to sanction an unacceptable failure to follow the rules.[2] Fed. R. Civ. P. 37(a)–(f). Plaintiffs' motions come under Rule 37(b)(2), which gives the district court where an action is pending broad discretion to impose sanctions when "a party, or a party's officer, director, or managing agent, . . . fails to obey an order to provide or permit discovery,"[3] Fed. R. Civ. P. 37(b)(2)(A). *See Law Funder, L.L.C. v.*

---

[2] Federal courts also have inherent power to sanction conduct that offends the legal process, including a party's "fail[ure] to preserve or produce" discoverable information for another's use in litigation. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *see Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497–99 (D. Md. 2000) (discussing both sources of the court's authority). In this case, Rule 37(b)(A) provides an adequate framework for sanctioning each Defendant's failure to provide or permit court-ordered discovery. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than [its] inherent power. But if in the informed discretion of the court, neither [a] statute or the Rules are up to the task, the court may safely rely on its inherent power.").

[3] "Courts are entitled to interpret broadly what constitutes an order" under this subsection, and "a formal, written order to comply with discovery is not required." *REP MCR Realty, LLC v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005) (internal quotation marks omitted). "[A]n oral directive from the district court

*Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) ("Rule 37(b)(2)(A) allows a district court to impose a sanction when a party fails to comply with a discovery order, and the court has broad discretion in fashioning its sanction when it does so."); *cf. Indep. Productions Corp. v. Loew's, Inc.*, 30 F.R.D. 377, 381 (S.D.N.Y. 1962) (explaining that a prior version of Rule 37(b)(2), which allowed courts to impose "sanctions when 'any party or an officer or managing agent of a party'" failed to obey a discovery order, clearly indicated "that the acts of one determined to be the managing agent of a party are imputed to the party").

"Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The Fourth Circuit has "developed a four-part test for a district court to use when determining what [substantive] sanctions to impose" under this subsection.[4] *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The court must consider: (1) "whether the non-complying party acted in bad faith"; (2) the kind and degree of prejudice that noncompliance caused its adversary; (3) the need to deter the specific sort of noncompliance; and (4) "whether

---

provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discovery," *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir. 1994), or to conduct itself in a manner that will permit anticipated discovery, *see Victor Stanley*, 269 F.R.D. at 519–20 (party's failure to comply with court's oral directive to preserve relevant information provided basis for Rule 37(b)(2) sanctions).

[4] The Rule also directs that "[i]nstead of or in addition to" any substantive sanctions or remedies imposed under this subsection, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Case 3:17-cv-00072-NKM-JCH   Document 539   Filed 08/09/19   Page 5 of 35   Pageid#: 5997

[any] less drastic sanctions" would be effective.[5] *Belk*, 269 F.3d at 348. "Rule 37 sanctions must be applied diligently," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980), "both as a matter of justice in the individual case and 'to deter others who might be tempted to similar conduct,'" *Lee*, 638 F.3d at 1320 (quoting *Nat'l Hockey League*, 427 U.S. at 643 (brackets omitted)). *See Victor Stanley*, 269 F.R.D. at 533–34 (explaining that Rule 37 sanctions serve "both normative . . . and compensatory" functions). The sanctions listed in Rule 37(b)(2)(A) "are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary," 8B Wright & Miller, *Federal Practice & Procedure* § 2284 (3d ed. 2002), to achieve those goals in a particular case. Specific options include an order deeming facts established, allowing or requiring an adverse inference, and entering default judgment against the disobedient party. *See Victor Stanley*, 269 F.R.D. at 533–34 (citing Fed. R. Civ. P. 37(b)(2)(A)).

## II. Background

This section summarizes certain factual allegations in Plaintiffs' Amended Complaint. ECF No. 175. "While the Court does not repeatedly state 'Plaintiffs *allege* that Defendant *X* did *Y*,' this summary should not be taken as the Court's endorsement of one version of the facts" relevant to Plaintiffs' substantive claims for relief against any named defendant. Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 3 ("Mem. Op."), ECF No. 335.

\* \*

---

[5] The Fourth Circuit has not clearly defined the standard of proof on a motion for sanctions under Rule 37(b). *See Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "However, proving misconduct by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices," *id.*, especially when the sanction does not result in dismissal or default judgment against the disobedient party, *see Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504–05 (4th Cir. 1998); *Wilson v. Volkswagen of Am.*, 561 F.2d 494, 503–05 (4th Cir. 1977). Here, Plaintiffs produced enough evidence of each Defendant's misconduct to satisfy either standard.

6

On August 11 and 12, 2017, the "Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." Mem. Op. 1; *see* Am. Compl. ¶¶ 1–7. Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985, and related state laws. Mem. Op. 1–2. "While ultimate resolution of what happened at the rallies awaits another day," this Court has held that Plaintiffs plausibly alleged that certain Defendants—including Kline, Heimbach, and Vanguard America—"formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.* at 1; *see* Order of July 9, 2018 (citing ECF No. 205).

Plaintiffs contend that Kline, Heimbach, and Vanguard America each played a key role in planning the rallies and that they actively communicated with their co-Defendants and others before, during, and after these events. Most of that activity occurred online. Kline and Defendant Jason Kessler "used an online platform called 'Discord' for planning. This 'invite only' platform allowed Defendants and their chosen invitees to engage in private conversations during the lead up to the events." Mem. Op. 7 (citing Am. Compl. ¶¶ 71–73). Kline and Kessler "moderated and managed Discord," while Heimbach, Vanguard America, and others actively participated on the platform. *Id.* "Conversation on Discord included mundane planning details, racist 'jokes,' and concrete threats of violence," *id.* at 8, including running over counter-protestors marching in the streets, *id.* at 42–43.

A.    *Elliot Kline ("Eli Mosley")*

Kline, who also goes by "Eli Mosley," is associated with the white-supremacist group Defendant Identity Evropa, which he led from August to November 2017. Am. Compl. ¶¶ 29, 30.

Kline "has described himself as the 'command soldier major of the 'alt-right,'" *id.* ¶ 29, and once told rally attendees that he "'was in the Army'" and intended to run this event "'as a military operation,'" *id.* ¶ 192 (capitalization corrected).

Kline and Kessler "were the principal coordinators for the Unite the Right rally on August 11 and 12, 2017." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 3, Tr. of Dep. of Jason Kessler 237 (May 16, 2018), ECF No. 457-3; *see also id.* Ex. 2, Tr. of Dep. of Erica Alduino 189 (Dec. 3, 2018) ("Jason Kessler and Eli Mosley were the only ones that I can confirm were planners of it."), ECF No. 457-2. In June 2017, Kline "apparently drafted and circulated" a confidential "intel report," titled "Operation Unite the Right Charlottesville 2.0," laying out Defendants' plans for Saturday, August 12. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 6 (citing *id.* Ex. 4, ECF No. 457-4, at 2–8). As of June 11, the event was "being organized by" Kline and Kessler "with a few others" acting as event coordinators on Discord. *Id.* Ex. 4, at 2, 6. Kline also oversaw "Information Sharing," and he instructed the "group leaders" who received his report to "not discuss the specifics of this event outside of official discussion channels." *Id.* at 5 ("[W]e'd like to keep the info leaks to a minimum on certain things."). He listed his Discord username, cell phone number, and email address, and encouraged recipients to "[f]eel free to msg/call whenever." *Id.* at 6.

Kline, Kessler, and other Defendants organized a "secret" torchlight parade through the University of Virginia's grounds on the night of Friday, August 11, 2017. Am. Compl. ¶ 143. During one planning call on Discord, Kline told participants, "'We are doing a torch light event on Friday. Anyone who doesn't have tiki stuff now should go out and get it tonight or tomorrow morning and if you could get extras that would be great.'" *Id.* ¶ 147 (alteration omitted). On Friday evening, Kline posted on Discord that everyone could "start assembling at Nameless Field

right now with your torches to start staging. We will step off from the field at 10 pm." *Id.* ¶ 152 (capitalization corrected). Kline "would later approvingly tweet [a] picture" of Defendant Christopher Cantwell "spraying pepper spray in a counter-protester's eyes, saying 'He protect / He attack / But most importantly he got your back.'" Mem. Op. 33 (quoting Am. Compl. ¶ 172 (brackets omitted)).

Finally, Kline communicated with others on the ground in Charlottesville on August 12. He and Kessler "exhorted rallygoers to arrive before the park opened to form a 'white bloc barrier . . . around the entire statue + podium. Given that they know we're coming, we'll all need as many people as possible to be there right when the park opens.'" Am. Compl. ¶ 189 (alteration omitted). By 11:22 a.m., local law enforcement declared an unlawful assembly and ordered everyone to leave. *Id.* ¶ 223. Several Defendants went to nearby McIntire Park where they "discussed returning to Emancipation Park in defiance of police orders." *Id.* ¶ 231. Kline went online looking for "people with guns: 'I need shooters,' he said. 'We're gonna send 200 people with long rifles back to that statue.'" *Id.*

B.    *Matthew Heimbach*

Heimbach once chaired "two different white supremacist groups" that sent members to Charlottesville for the rallies: "Defendant Traditionalist Worker Party ('TWP'), a group founded to promote anti-Semitism; and Defendant Nationalist Front, an umbrella organization of approximately twenty white supremacist organizations, including racist skinhead crews, Klan groups, and neo-Nazi groups." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 10–11. "Heimbach posted over 4,000 messages on Discord, including some in the 'Charlottesville 2.0' sever, and led in-person meetings to help other Defendant groups" plan for the rally. *Id.* at 11. "He instructed TWP members on details such as what to wear . . . and provided his followers

with 'official TWP riot shields' and 'a dozen helmets . . . painted black with Party insignia on them'" *Id.* (quoting *Id.* Ex. 13, MattewHeimbach, Discord (July 23, 2017), ECF No. 457-13, at 3–4 (punctuation corrected)). "It'll be solid," he wrote. *Id.* Ex. 13, MattewHeimbach, Discord (July 30, 2017), ECF No. 457-13, at 5 (punctuation corrected). "Alongside our . . . Vanguard America allies, we'll have an unbreakable line." *Id.* (capitalization corrected).

Heimbach also "organized and led marchers from TWP on August 12." Am. Compl. ¶ 200. He and a few other Defendants "allegedly engaged in many of the most specific acts of violence in furtherance of the conspiracy." Mem. Op. 34; *see* Am. Compl. ¶¶ 187–88, 214, 268. Heimbach later deemed the rally a success: "'We achieved all of our objectives. We showed that our movement is not just online, but growing physically. We asserted ourselves as the voice of white America. . . . I think we did an incredibly impressive job.'" Am. Compl. ¶ 268.

C.    *Vanguard America*

Vanguard America is a white nationalist group with twelve chapters across the country. Am. Compl. ¶ 25. Vanguard America had its own Discord server, "Southern Front," where it encouraged members to attend the rallies. *Id.* ¶ 114. A Discord user called "Thomas Ryan" urged other "members to contact him directly if they planned to attend the 'Unite the Right' event and if they wanted to travel together in a 'hate bus,' saying: 'This event is a **BIG DEAL** and offers a chance to link up Vanguard Guys from across the nation.' He also issued orders on the proper Vanguard uniform for the event," which another member described as "'a good fighting uniform.'" *Id.* ¶¶ 114–15. Plaintiffs believe that "Thomas Ryan" is Thomas Ryan Rousseau, one of Vanguard America's leaders. *Id.* ¶ 114. Thomas Ryan knew Vanguard America's members planned to carry concealed weapons at the event, but he instructed them not to openly carry large knives because that would "look[] really dumb." *Id.* ¶ 115. Some members planned to bring

shields with matching logos. *Id.* ¶ 121. Vanguard America made twenty extra shields so its members were prepared to "remove whoever is in [their] way." *See id.* ¶ 191.

Many of Vanguard America's members, including Defendant James Fields, attended the rallies wearing polo shirts and khaki pants and armed with large shields bearing the group's logo. *See* Am. Compl. ¶¶ 24–25, 115, 153, 197. On the morning of August 12, Vanguard America's members led the march to the park "chanting 'Blood and soil!'" *Id.* ¶ 197. That afternoon, Fields intentionally drove his Dodge Challenger into a group of counter-protesters, killing one person and injuring several Plaintiffs. *Id.* ¶ 23. Vanguard America members later used the Southern Front server to share memes celebrating Fields's conduct, including "a picture of Plaintiff Martin flying through the air with the caption 'Can't Dodge This.'" *Id.* ¶ 266. Another member "wrote: 'I don't think we should hand out shields anymore. . . . We should hand out Dodge Challengers instead.'" *Id.* (capitalization corrected). A third member wrote that the Unite the Right rally "was the biggest victory for our movement history. It was glorious. . . . We gave many people shields, we fought and shed blood for our people today." Pls.' Mot. for Sanctions Against Def. Vanguard Am. Ex. 21, ECF No. 465-21.

### III. Procedural History

Plaintiffs filed this lawsuit on October 11, 2017. ECF No. 1. Kline was properly served with a summons and copy of the Complaint at his residence in Pennsylvania on October 27, ECF No. 62, and Heimbach was personally served at his residence in Tennessee on November 6, ECF No. 108. Vanguard America was served through its representative, "Dillon Ulysses Hopper a/k/a Dillon Irizarry, authorized to accept," at a residential street address on November 17. ECF No. 157. All three Defendants retained Elmer Woodard, Esq., and James Kolenich, Esq., to represent

them in this matter beginning on December 1, 2017. ECF No. 131. Plaintiffs filed their Amended Complaint in early January 2018.

A.     *January 2018: Plaintiffs Serve Their Discovery Requests*

On January 25, 2018, Plaintiffs served their First Set of Requests for Production of Documents and First Set of Interrogatories on Kline, Heimbach, and Vanguard America. *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 5–6, 10–11; *id.* Ex. 8, ECF No. 457-8; *id.* Ex. 9, ECF No. 457-9; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 6–7. The requests asked each Defendant to produce "all documents and communications concerning the events" described in the Amended Complaint, including any emails, text messages, recordings, or social media content related to the "preparation, planning, transportation to, or coordination for" those events. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 8, at 9 (capitalization altered). The interrogatories asked each Defendant to "identify, among other things, all means of communication used to discuss the events, . . . as well as the [specific] electronic devices used for such communications." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 8 (citing *id.* Ex. 9, at 9). Defendants' proper responses or objections were due by February 26. *See* Pls.' Mot. for Sanctions Against Def. Vanguard Am. Ex. 23, Letter from J. Fink to J. Kolenich & E. Woodard (Mar. 9, 2018), ECF No. 465-23; Fed. R. Civ. P. 33(b)(2), 34(b)(2).

B.     *March 16, 2018: First Order to Provide or Permit Discovery*

I held my first conference call with the parties on March 16, 2018. *See* Tr. of Mar. 16, 2018 Conf. Call, ECF No. 282. Plaintiffs' counsel explained that they had "not received any written responses to [their] requests for documents or [their] interrogatories from any of the defendants," and "none of the defendants ha[d] produced a single document." *Id.* at 10. Counsel also had "very, very serious concerns" that relevant electronically stored information ("ESI")

would be lost or destroyed unless the Court issued a preservation order. *See id.* at 23. I told

everyone on the call that I expected them "to preserve any potentially relevant evidence" and I

took their "obligation to preserve this evidence very seriously." *Id.* at 24. I also instructed the

parties to meet and confer to see if they could negotiate an ESI protocol for my review. *Id.* at 28;

*see also id.* at 23 (Plaintiffs' counsel noting they were "thinking about [making] a request for an

independent examiner to come in and do . . . an audit of [Defendants'] devices to make sure

nothing has been deleted and, if it has, to try to get it restored"). They said that they would.

C.    *March 26, 2018: Second Order to Provide or Permit Discovery*

On March 26, 2018, I issued an Order denying a pro se defendant's motion to stay

discovery and giving Kline, Heimbach, and Vanguard America (and others) twenty-one days to

answer, respond, or object to Plaintiffs' written discovery requests. *See* Order of Mar. 26, 2018,

ECF No. 287. Each Defendant took a slightly different track in response to that directive.

1.    *Kline*

Kline did not do anything. On April 19, I held a brief discovery hearing with Plaintiffs'

counsel and Mr. Kolenich about some of his clients' failures to comply with the Court's deadline.

*See* Tr. of Apr. 19, 2018 Disc. Hr'g 2–7, ECF No. 308. There was some uncertainty about

whether counsel still represented Kline in his individual capacity. *See id.* at 3–4. Mr. Kolenich,

noting that he did "technically represent" Kline, explained that he had trouble communicating

with Kline since "very early on in this litigation." *Id.* at 4. He had contacted Kline "through

members of the group Identity Evropa," but they also "had difficulty communicating with him."

*Id.* at 5. Neither Mr. Kolenich nor the Identity Evropa members had "been able to get him to

participate in this litigation." *Id.* ("[W]e just have had no communication with him at all. It is not

as if we haven't tried. He's just not participating."). Six weeks later, Mr. Kolenich informed the

Court that Kline "steps in and out of participating in the litigation at his leisure." Tr. of June 5, 2018 Conf. Call 16, ECF No. 327. Kline was "not resisting discovery so much as just not participating at all at [that] point." *Id.*

2.    *Heimbach*

Mr. Kolenich emailed Heimbach's sworn discovery responses to Plaintiffs' counsel on April 13. *See* Pls.' Mot. to Compel Ex. 12, Def. Heimbach's Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of Docs. 2–7, ECF No. 354-13. Heimbach used five different online platforms (Gab.ai, VK, Facebook, Twitter, Discord) and a cell phone to "communicate concerning the Events," *id.* at 3–4, but he did not have any responsive documents or communications in his personal possession, *id.* at 4–5 ("None unless in the possession of Traditionalist Worker Party itself. What I would have had was involuntarily removed by Facebook, Twitter, etc."). Nor could he provide "documents and communications concerning the steps [he had] taken to preserve" any potentially relevant materials or information. *See id.* at 6 ("Answer: N/A."). For its part, Defendant TWP responded that it communicated about the events "through Matthew Heimbach" and at least two other individuals using identified Facebook, Twitter, Mailchimp, and Discord accounts. Decl. of C. Greene, Esq. Ex. 8, Def. TWP's Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of Docs. 2–3 (Apr. 18, 2018), ECF No. 488-8.[6] TWP did not identify any electronic devices that might contain relevant information.

3.    *Vanguard America*

Mr. Kolenich emailed Vanguard America's responses, signed under oath by Dillon Hopper, to Plaintiffs' counsel on April 18. *See* Pls.' Mot. for Sanctions Against Def. Vanguard Am. Ex. 12, Def. Vanguard Am.'s Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of

---

[6] TWP's responses were signed under oath by an individual who is not a party to this action. *See id.* at 6.

Docs. 2, 4–8, ECF Nos. 465-12, 473. Mr. Hopper attested that the "Charlottesville Planning Server" on Discord was "the only way [Vanguard America] communicated regarding planning for Charlottesville," *id.* at 4, and that the group used unidentified Vanguard America "member desktop computers or mobile devices" to communicate about the events, *id.* at 5. Vanguard America did not have any responsive documents in its possession, and "no special steps were taken" to preserve any documents or communications relevant to this lawsuit. *Id.* at 5–6. Plaintiffs' counsel later pointed out that Mr. Hopper did not "identify the 'Southern Front' Discord server" and failed to provide complete account information for each means of communication listed in Vanguard America's "non-Response." Pls.' Mot. for Sanctions Against Def. Vanguard Am. Ex. 25, Letter from G. Tenzer to J. Kolenich 5, 9 (May 10, 2018), ECF No. 465-25; *see* Pls.' Mot. for Sanctions Against Def. Vanguard Am. 10.

D.   *April 2018: Plaintiffs' Deficiency Letter*

On April 24, 2018, Plaintiffs' counsel sent Messrs. Kolenich and Woodard a deficiency letter detailing their clients' inadequate responses to Plaintiffs' interrogatories and requests for production ("RFP") of documents. *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 19, Letter from G. Tenzer to J. Kolenich & E. Woodard 2–5, ECF No. 457-19. They asked Heimbach and Vanguard America to "confirm that for each RFP, there are no responsive Documents or Communications in [their] possession, custody, or control." *See id.* at 3 (citing Fed. R. Civ. P. 34(a)(1)). They also asked Heimbach to confirm he would "provide by no later than May 4, 2018, the necessary [Stored Communications Act ('SCA')] consents to permit the providers of electronic communications services and remote computer services" to comply with Plaintiffs' third-party subpoenas. *Id.*

Finally, Plaintiffs' counsel attached a copy of their proposed ESI protocol for defense counsel's review. They asked counsel to let them know by May 1 whether their clients were prepared to sign this agreement. *See id.* at 4–5. On June 5, Plaintiffs' counsel and Mr. Kolenich were still negotiating the ESI protocol for his clients, some of whom were "resistant to machine imaging" or similar preservation measures. *See* Tr. of June 5, 2018 Conf. Call 10–12. Nonetheless, Mr. Kolenich agreed to produce his clients' electronic devices for inspection and imaging. He also said that he "should be able to turn over" certain responsive documents "very quickly." *Id.* at 12, 16.

E.     *June 2018: The Case is Set for Trial*

In mid-June 2018, the case was scheduled for a four-week jury trial to begin on July 8, 2019. ECF No. 328. Per the parties' Joint Rule 26(f) Report, the deadline to complete fact discovery was 150 days before trial—i.e., February 8, 2019. Order of June 15, 2018, ECF No. 329; *see* Joint Rule 26(f) Report 3, ECF No. 135. The Court later extended the discovery deadline to April 17, 2019. *See* Order of Jan. 4, 2019, ECF No. 397. The July 2019 trial date remained in place. *See id.* In the spring of 2019, however, it became clear that "the complicated nature of discovery . . . and related delays" meant the parties would not meet remaining pretrial deadlines. Order of Apr. 4, 2019, at 1, ECF No. 461. The trial date was continued indefinitely. It has not been rescheduled.

F.     *July 2018: Kline's Counsel Withdraws*

Messrs. Kolenich and Woodard moved to withdraw as Kline's counsel on July 23, 2018. ECF No. 344. They explained that they "very nearly [were] unable to respond to discovery due to Mr. Kline's refusal to answer [their] calls or e-mails,"[7] and that Kline only responded after

---

[7] Kline still had not served his answers, objections, or written responses to Plaintiffs' discovery requests directed to him as an individual defendant. *See* Fed. R. Civ. P. 37(d)(1)(A)(ii). In its discovery responses,

their other clients told Kline that his counsel would withdraw if they did not hear from him. Kolenich & Woodard Br. in Supp. of Mot. to Withdraw as to Def. Kline ¶¶ 2–3, ECF No. 345. At that point, counsel told Kline they "would need to speak with him regularly to defend him in this and other litigation and he had to stay in touch" with his attorneys. Kline agreed. *Id.* ¶ 4. Upon hearing that Plaintiffs' counsel wanted to schedule his deposition, however, Kline stopped communicating with his attorneys altogether. *See id.* ¶¶ 5–7.

On July 25, I issued an Order granting counsel's motion to withdraw and directing Kline to file an Answer to the Amended Complaint on or before August 8, 2018. *See* Order of July 25, 2018, ECF No. 347. The Clerk's Office mailed a copy of this Order to Kline at the same street address in Pennsylvania where he was served with a summons and copy of the Complaint in October 2017. *See* ECF No. 62. Kline never responded.

G.   *October 2018: Plaintiffs Move to Compel*

On October 2, 2018, Plaintiffs filed their Motion to Compel Defendants to Permit Inspection of Imaging of Electronic Devices. ECF No. 354 ("Pls.' Mot. to Compel"). Plaintiffs argued that imaging by a neutral third-party vendor was warranted "because Defendants' document production ha[d] been inadequate—indeed, nearly non-existent—in response to Plaintiffs' multiple attempts over the past five months to facilitate the discovery process" and "several Defendants ha[d] openly admitted that they intend[ed] to delete" nonprivileged ESI relevant to the case. *Id.* at 9–10. Kline did not respond to the motion. Heimbach and Vanguard

---

Defendant Identity Evropa stated that "Eli Mosley aka Elliott [sic] Kline handled" the group's presence in Charlottesville on August 11–12, and that the group used "Mr. Mosley's communication devices" to discuss the events described in Plaintiffs' Amended Complaint. "Specific information" about those devices was "unknown to [Identity Evropa] at [that] time." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 10, Def. Identity Evropa's Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of Docs. 3 (Apr. 6, 2018), ECF No. 457-10. Defendant Nathan Damigo signed the responses on Identity Evropa's behalf. *Id.* at 6.

America (by Mr. Hopper) asserted that they could not afford to pay a third-party vendor to image their devices. *See* Def. Vanguard Am.'s Resp. in Opp'n to Pls.' Mot. to Compel Attach. 2, Decl. of Dillon Hopper, ECF No. 356-2; Def. Heimbach's Resp. in Opp'n to Pls.' Mot. to Compel 1, ECF No. 368.

H.    *November 13, 2018: Third Order to Provide or Permit Discovery*

On November 9, 2018, I held a hearing on Plaintiffs' motion to compel, as well as their request that Kline and Heimbach sign a SCA consent form allowing Discord to respond to Plaintiffs' subpoena duces tecum. *See* Tr. of Hr'g on Pls.' Mot. to Compel, ECF No. 385. Kline did not appear at the hearing. Plaintiffs and the Defendants who appeared by counsel, including Heimbach and Vanguard America, mostly resolved their disagreements over the proposed ESI protocol.

I agreed that "ordering the parties to submit their electronic devices to a third-party vendor for imaging [was] necessary and appropriate to manage discovery in this action." Order of Nov. 13, 2018, at 1, ECF No. 379. As I explained at the November 9 hearing, Plaintiffs had waited almost ten months for Defendants to produce the requested documents, Tr. of Hr'g on Pls.' Mot. to Compel 8 ("[T]hese discovery requests were issued in January; now it is November. And [that] is a significant delay."), and there were still concerns that "some relevant information may have been lost," *id.* at 27. On November 13, I issued an Order granting Plaintiffs' motion to compel and further directing that: (1) within the next seven days, "all Defendants who appeared at the hearing" shall sign an SCA consent form allowing Discord to produce any discoverable documents or ESI in response to Plaintiffs' subpoena; (2) the parties shall submit a new proposed Stipulation and Order reflecting certain agreed-upon terms; and (3) Mr. Kolenich shall provide the Court and Plaintiffs' counsel any contact information that he had for Kline. *See* Order of Nov.

13, 2018, at 1–2. Mr. Kolenich promptly submitted an email address and telephone number he had used to communicate with Kline about the case. *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 18–19 ("At the beginning of the case, Kline was in sporadic communication with his attorney, communicating via the same phone number he used to plan the Unite the Right events."). The Court already had his last known home address.

Again, each Defendant had a slightly different reaction to this Order. Kline and Vanguard America did not do anything. *See* Order of June 21, 2019, at 3, ECF No. 508. Heimbach "submitted a facially defective SCA consent form" that could not be used to access his Discord content. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 14; *see id.* Ex. 21, Email from C. Greene to J. Kolenich (Dec. 4, 2018), ECF No. 457-21. On December 4, 2018, Plaintiffs' counsel contacted Mr. Kolenich asking Heimbach to "identify the e-mail address with which he signed up for his Discord account, as is required." *Id.* Ex. 21, at 2. Heimbach never provided that information. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 14.

I.     *November 19, 2018: Fourth Order to Provide or Permit Discovery*

The Court entered the parties' "Stipulation and Order for the Imaging, Preservation, and Production of Documents" on November 19, 2018. *See* Stip. & Order 1–16, ECF No. 383. This Order binds seventeen Defendants (including Kline, Heimbach, and Vanguard America) and was put in place specifically to help them "collect and preserve" ESI from identified social media accounts and "electronic devices that is potentially relevant to this litigation and/or responsive to Plaintiffs' discovery requests" originally served on January 25, 2018. *Id.* at 2 (punctuation altered). Plaintiffs agreed to front the costs of imaging and collecting this ESI, at least for the time being, to keep the case moving forward. The Order gave each Defendant twenty-eight days—i.e., until December 17—to "make available to the Third Party Discovery Vendor for

19

imaging and collection any Electronic Devices or Social Media Account" credentials identified on the Defendant's sworn Certification form. *Id.* at 8; *see* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 12; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 9.

Kline never responded. *See* Tr. of Jan. 4, 2019 Conf. Call 14, ECF No. 400. "Heimbach's response . . . was to terminate [counsel's] representation." *Id.* Vanguard America submitted a Certification signed by Mr. Hopper, but it only identified "a single electronic device[,] a cell phone," Pls.' Mot. for Sanctions Against Def. Vanguard Am. 9, on its list of "*all* the electronic devices . . . that *may* contain any potentially relevant documents or ESI," Stip. & Order 16 (emphasis added) (capitalization altered). *See* Pls.' Mot. for Sanctions Against Def. Vanguard Am. Ex. 26, Attach. to Email from J. Kolenich to G. Tenzer (Dec. 7, 2018), ECF Nos. 465-26, 473-1. This Certification conflicts with Mr. Hopper's earlier sworn assertion that Vanguard America used "member desktop computers or mobile devices," plural, to communicate about the events. *See* Pls.' Mot. for Sanctions Against Def. Vanguard Am. 11–12. Plaintiffs also have information suggesting that Mr. Hopper provided an incomplete list of social media accounts that may contain potentially relevant information. *See id.* at 11 ("Plaintiffs are aware of at least two separate Twitter accounts, @VanAmOfficial and @VanGuardAm, that published material about the Unite the Right 'rally' both before and after" August 11–12, 2017).

J.    *Fall 2018: Heimbach's Counsel Moves to Withdraw – Twice*

Heimbach stopped paying his attorneys for their work on this case sometime around October 2018. *See* Kolenich & Woodard Br. in Supp. of First Mot. to Withdraw as to Def. Heimbach 1, ECF No. 358. I denied counsel's first motion to withdraw because they filed it "[c]oming on the deadline" for Heimbach to respond to Plaintiffs' motion to compel. Order of Oct. 22, 2018, at 2–3, ECF No. 364. Counsel moved to withdraw again two weeks later. ECF No.

372. On December 12, I held a conference call with Plaintiffs' counsel and Mr. Kolenich. ECF No. 389. I took defense counsel's motion under advisement, noting that I would hold another call with Plaintiffs' counsel, Heimbach, and his counsel to address Heimbach's "compliance with the Stipulation and Order entered on November 19, 2018," and on counsel's second motion to withdraw. Order of Dec. 12, 2018, at 1–2, ECF No. 388. I also planned to address "Kline's compliance with the Stipulation and Order and whether he agrees to sign the Discord consent form." *Id.* at 2; *see* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 7–8; *id.* Ex. 11, Email from C. Greene to E. Kline (Nov. 16, 2018), ECF No. 457-11; *id.* Ex. 12, Email from C. Greene to E. Kline (Nov. 27, 2018), ECF No. 457-12.

That call was held on January 4, 2019. Neither Kline nor Heimbach appeared, although Mr. Kolenich said he had "transmit[ted] the time and call-in information" to Heimbach. Tr. of Jan. 4, 2019 Conf. Call 14. Mr. Kolenich also explained that Heimbach had "fired [him] more than a week" earlier, and that he and Mr. Woodard were "explicitly forbidden from taking any further action on his behalf." *Id.* at 14–15. I granted their motion to withdraw as counsel for Heimbach on the same date. ECF No. 397.

K.    *February 2019: Kline & Heimbach Miss Three (More) Court Conferences*

The Deputy Clerk "called and emailed Elliot Kline . . . and Matthew Heimbach three times" each to reschedule the January conference call. On February 4, 2019, having received "no response from either" pro se Defendant, the Deputy Clerk set the hearing for February 8 at 1:00 p.m. *See* Notice of Hr'g, ECF No. 401. She promptly mailed copies of the written notice, along with the call-in information, to Kline and Heimbach at the street addresses listed on each Defendant's executed summons. She also sent that information to their email addresses of record and left it on their respective voicemails when neither Defendant answered the Court's phone

calls. Heimbach and Kline did not call in for the February 8 hearing. ECF No. 409. The same day, the Court set another discovery hearing for February 12, at 12:30 p.m. *See* ECF No. 407. The Deputy Clerk "emailed and mailed [the] dial in information to Mr. Heimbach and Mr. Kline," but, again, neither Defendant appeared as directed. They also missed the next conference call on February 21, 2019. *See* ECF Nos. 414, 425, 429.

L.      *March 4, 2019: Fifth Order to Provide or Permit Discovery*

On March 1, 2019, I held a hearing on two motions not related to discovery. ECF No. 441. I also addressed "ongoing problems and delays" with certain Defendants' efforts (or lack thereof) to meet their existing discovery obligations. Order of Mar. 4, 2019, at 2, ECF No. 440. On March 4, I entered an Order directing that "[a]ll Defendants covered by the Stipulation & Order, ECF No. 383, shall produce their electronic devices and social media account credentials . . . to the third-party vendor by the end of the day on Friday, March 8, 2019." *Id.* (emphasis omitted). Kline, Heimbach, and Vanguard America all missed that deadline.

On March 13, the Deputy Clerk scheduled a status conference call for March 18 at 4:00 p.m. She emailed the notice and call-in information to all counsel and pro se parties. Neither Kline nor Heimbach appeared on that call. Mr. Kolenich appeared for Vanguard America.

M.      *Spring 2019: "Vanguard is a Problem"*

On March 18, 2019, Mr. Kolenich gave an update on how each of his remaining clients had complied, or were trying to comply, with the Court's prior discovery orders. *See* Tr. of Mar. 18, 2019 Conf. Call 10–15, ECF No. 455. Mr. Kolenich made clear that, despite being on notice of their obligation to do so, Vanguard America's agents or officers had not made "any effort to comply." *Id.* at 15. "Vanguard is a problem," he conceded. *Id.* at 14. They had "not turned over the devices they were supposed to turn over and [were] not listening to counsel on the necessity

of hurrying up" and producing those devices. *Id.* Unnamed Vanguard America "officers [were] hanging on, trying to do their job in defending" against the lawsuit, but the "current guy" Mr. Kolenich had "been dealing with [was] kind of frustrated with it all and [didn't] want to deal with it." *Id.* Mr. Kolenich thought it "might be useful" if the Court issued an order directing Vanguard America's representative to confirm "that either he is or is not going to cooperate." *Id.* at 14–15.

On March 20, I issued an Order giving Vanguard America fourteen days to file a written response showing cause why it should not be held in contempt for its failure to obey this Court's discovery orders entered on November 19, 2018, and March 4, 2019. *See* Order to Show Cause, ECF No. 452. Vanguard America (by Mr. Kolenich) filed its response on the evening of April 3. ECF No. 458. Mr. Kolenich attached a declaration attesting that he provided Vanguard America with a copy of the Order and "communicated with Vanguard by phone on March 20, 2019." Def.'s Resp. to Order to Show Cause Attach. A, Decl. of J. Kolenich, Esq. ¶¶ 3–4 (Apr. 3, 2019), ECF No. 458-1. Despite having been "made aware, on March 20, 2019, of . . . what [the Order] means," Def. Vanguard Am.'s Resp. to Order to Show Cause 1, Vanguard America had not given counsel "any information, as of April 3, 2019, indicating compliance with pending Court orders or showing cause why compliance should be excused," Decl. of J. Kolenich ¶ 6.

Messrs. Kolenich and Woodard also moved to withdraw as counsel for Vanguard America. ECF No. 459. I granted their request primarily because, just as Kline and Heimbach had done months earlier, Vanguard America's representative had stopped communicating with counsel. Order of June 3, 2019, at 1–2, ECF No. 497. Mr. Kolenich was instructed to provide the Court and Plaintiffs' counsel with all available contact information for Mr. Hopper and to deliver a copy of the Order to Mr. Hopper by any means reasonably necessary to ensure that he

personally receives it. *Id.* Vanguard America was directed to retain new counsel and have that attorney enter his or her appearance on Defendant's behalf by June 25, 2019. *Id.*

N.      *April 2019: Plaintiffs Move for Sanctions*

Plaintiffs filed their pending motions in early April. They seek three substantive, case-related sanctions against all three Defendants. *See generally* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 4, 13–24; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 4, 15–26. First, they ask the Court to "deem the facts listed in . . . Exhibit 1 established for purposes of this action." *Id.* at 4; *see* Pls.' Mots. for Sanctions Ex. 1, ECF Nos. 457-1, 465-1. The list includes some facts that Plaintiffs must prove in order to hold each Defendant liable for conspiring to engage in violence against racial or religious minorities and their supporters. *Compare* Pls.' Mots. for Sanctions Ex. 1 (proposed established facts), *with* Mem. Op. 13–14 (essential elements under 42 U.S.C. § 1985(3)); *see, e.g.*, Pls.' Mots. for Sanctions Ex. 1, at 2–3 (asserting that Kline, Heimbach, and Vanguard America each "entered into an agreement with one or more co-conspirators to engage in racially motivated violence" in Charlottesville on August 11–12, 2017, "attended the Unite the Right event on August 12," and "committed acts of intimidation and violence in furtherance of the conspiracy" while at the event). Second, they ask the Court to "deem 'authentic' for purposes of Rule 901 . . . any documents that Plaintiffs have a good faith basis to believe were in fact created by" any of these Defendants, "including . . . all documents from the social media accounts" listed in Exhibit 1 to their motions. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 4 (citing Fed. R. Evid. 901(a)); Pls.' Mot. for Sanctions Against Def. Vanguard Am. 4 (same). That list includes several email accounts, Twitter handles, Facebook usernames, and Discord servers associated with each Defendant. *See* Pls.' Mots. for Sanctions Ex. 1. Finally, Plaintiffs ask the Court to instruct the jury that Defendants

"chose to intentionally withhold" responsive documents "and that the jury may draw adverse inferences from that fact," including that Defendants "chose to withhold such documents because [they were] aware such documents contained evidence that [this Defendant] conspired to plan racially-motivated violence at the United the Right event." *Id.*

Plaintiffs argue that all "four prongs of the Rule 37 test . . . are easily satisfied" on both motions. *Id.* at 17. They contend that Defendants are similarly situated in terms of their apparent intent or disregard for the Court's discovery orders, the kind and degree of prejudice their noncompliance has allegedly caused Plaintiffs, the need to deter this sort of noncompliance, and whether any less drastic sanctions would serve Rule 37's normative and compensatory purposes. *See generally id.* at 18–26. Plaintiffs assert that Defendants' refusal to produce requested materials has hampered their ability to gather evidence that goes to the heart of their civil conspiracy claims against all remaining defendants. *See id.* at 19–21 (discussing the inherent difficulty in proving a conspiracy and the importance of circumstantial evidence). Similarly, Plaintiffs still do not have a single document that they "can authenticate as having been generated by" Kline, Heimbach, or Vanguard America. *Id.* at 21–22. Finally, Plaintiffs argue that their requested evidentiary sanctions are not especially drastic—all three Defendants can still defend on the merits at trial if they want to—and that more severe, claim-dispositive sanctions would be counter-productive. *See id.* at 24–25 & n.8. These Defendants would be out of the case, and Plaintiffs still would not have the evidence they believe necessary to prove their conspiracy claims against the remaining defendants. *Id.* at 25.

Kline, Heimbach, and Vanguard America did not file briefs opposing the motions for sanctions against them within the time allowed by the presiding District Judge's pretrial order. ECF No. 101. Accordingly, the Court considers those motions to be unopposed. *Id.* Defendant

Richard Spencer objected to some of Plaintiffs' proposed sanctions, ECF Nos. 469, 479, and

Plaintiffs filed reply briefs addressing those concerns, ECF Nos. 475, 489.

* * *

On Monday, June 3, 2019, the Court held a hearing on the record, at which counsel for

Plaintiffs and Mr. Kolenich appeared in person.[8] The Court sent three notices each to Kline and

Heimbach, but neither appeared at the hearing or acknowledged the Court's communications. I

first addressed defense counsel's motion to withdraw from representing Vanguard America. Mr.

Kolenich confirmed Vanguard America had "not produced any discovery" and had made clear

that "they don't intend to produce any discovery" or "participate in the litigation." Tr. of Hr'g on

Pls.' Mots. for Sanctions 5, ECF No. 504. I granted the motion to withdraw and directed

Vanguard America to have a new attorney enter an appearance by June 25.

Turning to Plaintiffs' motions, I explained that each Defendant's conduct to date was

"clearly sanctionable" and that I intended to award costs and reasonable attorney's fees caused

by their failure to comply with my discovery orders. *Id.* at 20. The more difficult question was

what substantive sanction(s) were appropriate under the current circumstances. Plaintiffs' filings

consistently gave the impression that they still wanted the *actual* information and tangible things

being withheld by these "three really important" Defendants. *Id.* at 10. Plaintiffs' request that the

Court deem certain facts established or documents authentic, on the other hand, necessarily

assumed that the information would *never* be produced in any form.

In my view, however, production was preferable to evidentiary sanctions at this point in

the litigation. *See id.* at 9–10, 18. I proposed that the Court direct the United States Marshal

Service ("USMS") to personally serve each Defendant with a written order that: (1) identified

---

[8] Spencer's attorney also appeared in person.

specifically the ESI accounts and devices each Defendant must produce; (2) told each Defendant (or Mr. Hopper, in Vanguard America's case) that he must personally appear for a deposition in this federal courthouse on a date certain, and must bring the identified ESI accounts and devices with him to the deposition; and (3) clearly explained that if the Defendant (or Mr. Hopper) failed in any way to comply with the Order, the Court could immediately issue a bench warrant directing the USMS to arrest him, transport him to this judicial district, and hold him in custody until he purged himself of civil contempt. *Id.* at 10. This step appeared necessary because these Defendants had ignored similar "orders telling them to do this before." *Id.* at 14. Having carefully considered the Court's full range of options, however, I explained that issuing one more very specific discovery order—this time under threat of arrest and detention—could provide a way to "get the information that [Plaintiffs were] entitled to" and clearly still wanted. *Id.* at 18; *see id.* at 12, 20, 27–28.

O.    *June 2019: Kline, Heimbach & Vanguard America Resurface*

On Friday, June 7, Plaintiffs' counsel informed the Court that Kline and Heimbach had reached out to Mr. Kolenich after seeing social-media reports about the June 3 motion hearing. Email from M. Bloch to J. Hoppe et al. (June 7, 2019 4:08 PM). Mr. Hopper also commented about the hearing on social media, asserting that he "wasn't even involved in any of the planning for that debacle" on August 11–12, but was now "the sacrificial lamb, obviously." Email from M. Bloch to J. Hoppe et al. Attach. 1–3 (@WhitePowerStroke reply to @jackcorbin). On Tuesday, June 11, Plaintiffs' counsel informed the Court that they had heard from all three Defendants, "each of whom has now (after hearing about the potential consequences of their continued discovery misconduct as articulated by [the Court] during last week's hearing) expressed some inclination to participate in the discovery process." Email from M. Bloch to J. Hoppe et al. 1–2.

Plaintiffs asked the Court to hold a formal discovery conference with Defendants to develop an expedited schedule for them to finally honor their outstanding discovery obligations.

I issued an Order taking Plaintiffs' motions for sanctions under advisement. Order of June 21, 2019, at 1–2. The Order also outlined five discovery-related issues each Defendant (and Mr. Hopper) should be prepared to discuss at an upcoming telephonic hearing with the Court and Plaintiffs' counsel and explained the Court's expectation that each would "appear at this hearing and make a good faith effort to provide or permit prompt and complete discovery responses, as required by the Federal Rules . . . and this Court's prior orders." *Id.* at 2–3.

That hearing occurred on July 2. *See* Tr. of July 2, 2019 Disc. Hr'g, ECF No. 519. Kline, Heimbach, and Mr. Hopper appeared as directed and indicated they were willing to participate in the litigation from now on.[9] *See id.* at 8, 9–15. They also confirmed that they had "received each of the Orders, discovery requests, and Stored Communications Act ('SCA') consent forms that explain [their] outstanding discovery obligations." Order to Def. Heimbach 1, ECF No. 515; Order to Def. Kline 1, ECF No. 516; Order to Def. Vanguard Am. 1, ECF No. 517. The next day, I issued individual orders to Kline, Heimbach, and Vanguard America (by Mr. Hopper) directing each Defendant to comply with certain "steps and deadlines" over the next twenty-one days. *Id.* at 1–2.[10] Each Order also directed its subject to "sit for a [scheduled] deposition by Plaintiffs'

---

[9] Counsel for Plaintiffs and other Defendants also appeared.

[10] More specifically, I gave each Defendant (1) seven days from the Order to "[g]ive Plaintiffs' counsel complete and accurate SCA consent forms" allowing certain social media providers to produce responsive ESI, to execute the Third Party Discovery Vendor contract, and to "[c]omplete and give to Plaintiffs' counsel the Certification Form attached as Exhibit A to the Stipulation and Order; (2) fourteen days from the Order to "[m]ake available to the Third Party Discovery Vendor for imaging and collection any Electronic Devices or Social Media Account credentials" identified on that Defendant's Certification form; and (3) twenty-one days from the Order to "[p]rovide complete and accurate" written answers or responses to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production, and to "produce or permit inspection of any requested documents or ESI that were not collected by the Discovery Vendor." *Id.* at 1–2 (citing Order of June 21, 2019, at 3 & n.2; Order of Mar. 4, 2019, at 2–3; Order of Nov. 13, 2018, at 2; Order of Mar. 26, 2018, at 3).

counsel devoted exclusively to [that Defendant's] conduct in pretrial discovery, including his

efforts to preserve any documents, information, or materials that are potentially relevant to this

litigation." Order to Def. Heimbach 3; Order to Def. Kline 3; *see also* Order to Def. Vanguard

Am. 3. Those depositions "are necessary to address the significant deficiencies to date in these

Defendants' discovery responses." Order of June 21, 2019, at 4. Plaintiffs had already been given

"leave to depose these Defendants in subsequent depositions on the merits of Plaintiffs'

allegations" and remaining claims. *Id.* (citing Fed. R. Civ. P. 30(a)(2)(A)(ii)).

## IV. Discussion

Eighteen months ago, Plaintiffs served Kline, Heimbach, and Vanguard America with

discovery requests for information and materials directly relevant to the claims and defenses in

this case. Defendants' proper responses or objections were due by February 26, 2018. *See* Fed. R.

Civ. P. 33(b)(2), 34(b)(2). They did nothing. Each Defendant then disobeyed not one, but four

"court orders compelling production of the same material in [his] control" while the litigation

slowed and everyone else's costs piled up. *Lee*, 638 F.3d at 1321 ("This is not speedy,

inexpensive, or just. Just the opposite."). In November, the Court entered a Stipulation and Order

specially designed by the parties to help Defendants locate and produce responsive ESI—

something Defendants should have done on their own many months earlier. *Cf. Saria v. Mass.

Mut. Life Ins. Co.*, 228 F.R.D. 536, 540 (S.D. W. Va. 2005) (noting that plaintiff's "'pick-and-

choose' approach to answering" discovery had "waste[d] the parties' own valuable discovery

time and ultimately force[d] the court to clean up a mess which could have been altogether

avoided").

The Court has patiently afforded Defendants six chances during the past eighteen months

"to make good their discovery obligation[s]," *Lee*, 638 F.3d at 1321. *Cf. Nat'l Hockey League*,

427 U.S. at 640–42 (affirming district court's dismissal as a discovery sanction "[a]fter seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at [or beyond] the eleventh hour," the court's admonitions, and plaintiffs' repeated "promises and commitments" to comply); *Lee*, 638 F.3d at 1319 ("No one . . . should count on more than three chances to make good a discovery obligation."). Yet, it has been their consistent "practice from the very beginning to ignore outright the court's orders or to submit chaotically and defectively to them." *Mut. Fed. Savs. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989) (thirteen months). Each Defendant and Mr. Hopper is solely responsible for his own behavior. They cannot "pin the blame on [their] former counsel" given that it was their own "fail[ure] to communicate with their attorney" that forced counsel to withdraw representation. *Young Again Prods.*, 459 F. App'x at 303. And, although federal judges "are sympathetic to the challenges faced by pro se litigants, we cannot exercise that sympathy unless they at least try to participate." *Id.*

Plaintiffs produced evidence showing Kline and Heimbach were active on social media—even commenting about this litigation—when they should have been participating in discovery and other pretrial proceedings.[11] *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach

---

[11] In November 2017, "Eli Mosley" told his Twitter followers, "[W]e still have a lot of legal battles ahead of us so check out IdentityEvropa.com for info on our case. I'll also be on a few podcasts this weekend chatting about this stuff since it is crucial that we continue to win in court for the future of our people." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 6, at 3, @EliMosleyIE, Twitter (Nov. 9, 2017 5:13 PM), ECF No. 457-6. Kline had been served with Plaintiffs' Complaint two weeks earlier. In late May 2018, Twitter user "Sheli Shmosley," who Plaintiffs presume is Kline, contradicted another user's description of the Unite the Right ("UTR") rally, tweeting "[that] is not in anyway [sic] how UTR happened. I can't say much more for obvious reasons but that's just untrue." *Id.* at 5, @Sheli_Shmosley, Twitter (May 27, 2018 7:47 PM). Kline was still represented by counsel at the time.

On February 28, 2019, Heimbach alerted his Twitter followers to a motion filed in this case earlier the same day. Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 25, @HeimbachMatthew, Twitter (Feb. 28, 2019, 2:23 PM), ECF No. 457-25, at 2; *see* ECF No. 433. Additionally, sometime after this lawsuit was filed, Heimbach posted a message online quipping, "What's the proper etiquette when the people suing you make sweet quote graphics of things you said?" The message appears above a graphic

7–10, 14–15. Both Defendants missed numerous court-ordered discovery deadlines and hearings since their attorneys withdrew, and neither acknowledged the Court's or Plaintiffs' counsel's repeated efforts to contact them. *Id.* These actions show that they "only want[ed] to litigate on [their] terms at a time of [their] choosing." *Cf. Dukes v. Cox*, No. 1:09cv1140, 2015 WL 2338664, at *11 (S.D. Ind. May 15, 2015) (dismissing plaintiff's case with prejudice). There is no indication that Mr. Hopper similarly acted out on social media, "but [he] nevertheless manifested an identical posture of resistance," *Young Again Prods.*, 459 F. App'x at 302, and indifference to Vanguard America's obligations.

"Ordinary defendants must participate in the ordinary process of litigation," *Mayfield v. Butler Snow LLP*, 3:17cv514, 2017 WL 5616017, at *3 (S.D. Miss. Nov. 21, 2017), even if they do not want to. They cannot "step[] in and out" of the litigation at their leisure, Tr. of June 5, 2018 Conf. Call 16 (Kline); abandon the case because they are "kind of frustrated" and do not "want to deal with it," Tr. of Mar. 18, 2019 Conf. Call 14 (Vanguard America); or "respon[d] to . . . [a] court order" compelling discovery by firing their attorneys and refusing to show up for court, Tr. of Jan. 4, 2019 Conf. Call 14 (Heimbach). "On these facts, [I] cannot interpret [each Defendant's] continued disregard for" the Court and its orders "as anything other than bad faith." *Young Again Prods.*, 459 F. App'x at 302.

"'[S]talling and ignoring the direct orders of the court with impunity' is 'misconduct' that 'must obviously be deterred.'" *Id.* at 303 (quoting *Mut. Fed. Savs.*, 872 F.2d at 93). "It is important that [anyone] contemplating this type of tactic understand" that he cannot avoid discovery in federal litigation—and especially not in response to a court order. *Progressive*

---

that reads, "'Of course we look up to men like Adolf Hitler.' - Matthew Heimbach, Defendant." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach Ex. 22, Matthew Heimbach, VK.com (undated), ECF No. 457-22.

*Minerals v. Rashid*, No. 5:07cv108, 2009 WL 2761295, at *4 (N.D. W. Va. Aug. 28, 2009); 8B

*Federal Practice & Procedure* § 2281 ("[A]ny party or person who seeks to evade or thwart full

and candid discovery incurs the risk of serious consequences."). Accordingly, the Court will

impose appropriate sanctions to penalize and deter such misconduct. *See Progressive Minerals*,

2009 WL 2761295, at *4–5 (awarding reasonable attorney's fees).

Next, the Court must decide which sanctions are "just" based on all the facts in this case

and the claims at issue in its prior discovery orders. *See Ins. Corp. of Ir.*, 456 U.S. at 707 (citing

Fed. R. Civ. P. 37(b)(2)(A)); *S. New England Tele. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 144

(2d Cir. 2010) ("[T]he district court is free to consider the full record in the case in order to select

the appropriate sanction." (internal quotation marks omitted)). This requires the Court to

consider the kind and degree of prejudice each Defendant's noncompliance caused Plaintiffs and

whether alternative, less drastic sanctions would provide an effective remedy. *See Samsung*

*Elecs. Co. v. NVIDIA Corp.*, 314 F.R.D. 190, 200–04 (E.D. Va. 2016).

Plaintiffs maintain that "Defendants' failure to participate in discovery has resulted in

textbook prejudice" because they have been denied access to myriad communications,

documents, and ESI that go to the heart of their civil conspiracy claims against all remaining

defendants. *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 21–22; Pls.' Mot. for

Sanctions Against Def. Vanguard Am. 21–22. Such information might show a "defendant's

relationship with other members of the [alleged] conspiracy, the length of this association, [and]

the defendant's attitude and conduct," *United States v. Yearwood*, 518 F.3d 200, 226 (4th Cir.

2008) (internal brackets and quotation marks omitted), which Plaintiffs could use to help them

prove that "each Defendant entered into an agreement with a specific co-conspirator to engage in

racially motivated violence at the August 11th and 12th events," Mem. Op. 21. *See* Pls.' Mot. for

Sanctions Against Defs. Kline & Heimbach 21–22; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 20–22. Plaintiffs also assert that they know Vanguard America "has in its possession" potential evidence that "likely corroborates" that group's role in planning "the Fields car attack" on August 12th. *See* Pls.' Mot. for Sanctions Against Def. Vanguard Am. 22. They also have not been able to depose Kline, Heimbach, or Vanguard America's representative on the merits of their allegations. *See* Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 21–22; Pls.' Mot. for Sanctions Against Def. Vanguard Am. 21–22.

Each Defendant's "repeated and ongoing discovery misconduct" so far has caused "significant procedural . . . prejudice" to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner. *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014) ("Plaintiff has been stymied at every turn—written discovery, depositions, subpoenas—to get the evidence it needs to prosecute its claims."). For a long time, they have had to deal with unacceptable delays, obfuscations, and disregard for both their proper discovery requests and this Court's many orders trying to enforce them. *Cf. Diamond v. Mohawk Indus., Inc.*, No. 6:12cv57, 2014 WL 1404563, at *5–6 (W.D. Va. Apr. 10, 2014) (concluding that corporate defendant was "greatly prejudiced by the inability to take [pro se plaintiff's] deposition, communicate with him in any regular fashion about the case, or receive responsive documents from him," and dismissing the case four days before trial).

Kline, Heimbach, and Vanguard America's "[c]ontinued contumacious behavior" and the need to deter future discovery misconduct require imposing some sanction. *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014). Plaintiffs have expended considerable effort and resources in pursuing discovery from these three Defendants. Thus, an appropriate sanction to address these considerations, at this time, is an award of Plaintiffs' reasonable

attorney's fees. Contrary to Plaintiffs' suggestion, however, we are not yet to the point that they "cannot present evidence essential to [their] underlying claim." Pls.' Mot. for Sanctions Against Defs. Kline & Heimbach 21 (quoting *Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018)); Pls.' Mot. for Sanctions Against Def. Vanguard Am. 21 (same). The deadline to complete written discovery has been extended, Defendants' initial depositions have been taken or scheduled, and a new trial date has not been set. *See Diamond*, 2014 WL 1404563, at *5. I have warned Kline, Heimbach, and Mr. Hopper in writing that the Court expects them to appear at their depositions and "participate in good faith as required by the Federal Rules . . . and this Court's prior discovery orders," Order to Def. Heimbach 3; Order to Def. Kline 3; Order to Def. Vanguard Am. 3, and all three stated on the record that they intend to comply. Plaintiffs' requested evidentiary sanctions—including the adverse inference and an order deeming some of their proposed facts established—would be available, and certainly could be appropriate in this case, if Kline, Heimbach, or Vanguard America fail to produce the discovery from this point forward. *See* Tr. of Hr'g on Pls.' Mots. for Sanctions 13–14, 18–21, 29–30.

If Defendants produce the underlying discovery in enough time for Plaintiffs to prepare their case for trial, it would be unjust for the Court to direct that Plaintiffs' version of "designated facts be taken as established for purposes of the action," Fed. R. Civ. P. 37(b)(2)(A)(i). *Cf. Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) (explaining that "[d]istrict courts should not countenance 'purposeful sluggishness' in discovery on the part of parties or attorneys and should be prepared to impose sanctions when they encounter it," even if substantive evidentiary sanctions are not warranted). The Court will also have a better sense of Plaintiffs' request for an adverse-inference instruction after counsel has deposed each Defendant and Mr. Hopper about what steps, if any, he took to preserve potentially relevant evidence. *Victor*

34

*Stanley*, 269 F.R.D. at 525–26; *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (explaining that a party seeking an adverse-inference instruction as a sanction for spoliation must show the responsible party "acted either willfully or in bad faith in failing to preserve relevant evidence" because an adverse inference "is not an appropriate sanction" where the "spoliator's conduct is merely negligent" (citing *Hodge*, 360 F.3d at 450–51)).

Because Kline, Heimbach, and Mr. Hopper (for Vanguard America) have expressed an intention to adhere to the rules of procedure and the Court's orders, more drastic sanctions are not required at this time. Should they not follow through, the Court will likely have run out of options other than to impose significant evidentiary sanctions. This litigation has been stalled while the Court and parties work through unique and complicated challenges in case management and discovery. It is imperative, however, that the Court reschedule the trial date and set deadlines to bring discovery to a completion. I expect the parties' good faith efforts to move this case forward.

## V. Conclusion

Plaintiffs' Motion for Sanctions Against Defendants Elliot Kline and Matthew Heimbach, ECF No. 457, and Motion for Sanctions Against Defendant Vanguard America, ECF No. 465, are **GRANTED in part** in so far as the Court will award reasonable attorney's fees as a sanction. Fed. R. Civ. P. 37(b)(2)(C). The Court will determine the amount of reasonable attorney's fees, *see* ECF Nos. 505, 506, in a separate Order to be issued at a later date. Plaintiffs' requested evidentiary sanctions remain under advisement. ECF No. 508.

ENTER: August 9, 2019

Joel C. Hoppe
U.S. Magistrate Judge