UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | Civil Action No. 3:17-cv-00072-NKM |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT NATIONAL SOCIALIST
MOVEMENT TO DISCLOSE CUSTODIANS OF DISCOVERABLE
DOCUMENTS AND INFORMATION**

Plaintiffs respectfully submit this Motion pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order (a) compelling Defendant National Socialist Movement ("NSM") to identify custodians who have documents or ESI that are discoverable under Rules 26 and 34 of the Federal Rules of Civil Procedure, and to submit certificates in accordance with Exhibit A to the Stipulation and Order for the Imaging, Preservation, and Production of Documents; (b) permitting Plaintiffs to depose a representative of NSM regarding their conduct in pretrial discovery, including their efforts to preserve any documents, information, or materials that are potentially relevant to this litigation without prejudice to Plaintiffs' ability to depose NSM on the merits of the allegations; and (c) requiring NSM to pay Plaintiffs' costs and attorneys' fees with respect to this Motion pursuant to Federal Rule of Civil Procedure 37(a)(5).

## PRELIMINARY STATEMENT

Defendant NSM, like any civil litigant, has an obligation to produce documents in its possession responsive to Plaintiffs' document requests. Like other defendants in this litigation, it has largely refused to do so, causing great prejudice to Plaintiffs. While hundreds of NSM members marched in the streets of Charlottesville, only a single former member – Defendant Jeff Schoep – has given access to a few personal social media accounts, and he did so only after he was facing a sanctions motion. Even then, when Mr. Schoep finally turned over his cell phone, he simultaneously disclosed for the first time that it had "fallen in the toilet" sometime after the litigation started, rendering its contents unrecoverable. Because NSM's attorney refuses to conduct any meaningful investigation to determine which other custodians within NSM possess responsive documents, Plaintiffs have received precious few documents from NSM. The gamesmanship exhibited by NSM's latest attorney is reminiscent of his client's, Mr. Schoep, who resisted discovery himself for more than a year, and then fired his previous attorney at the

1

eleventh hour rather than produce any documents. NSM's new lawyer, Mr. ReBrook, fought hard in recent months to take over the representation of NSM and then fought equally hard to shield the organization from having to produce documents from anyone other than Mr. Schoep. Ultimately, after repeated requests from Plaintiffs, and faced with potentially imminent court intervention for his steadfast refusal to conduct rudimentary discovery, Mr. ReBrook revived a familiar tactic: he sought to "be relieved" as counsel for NSM, mere months after taking on the representation. Because Mr. ReBrook will not take basic steps to investigate who else within NSM possesses responsive documents, Plaintiffs seek the right to do so ourselves. We respectfully request that NSM be compelled to disclose custodians of responsive documents and make a representative available to be deposed on the issue of NSM's conduct in discovery.

## FACTUAL BACKGROUND

Defendant NSM is an unincorporated association under Section 8.01-15 of the Virginia Code. (Am. Compl., ECF No. 175 ¶¶ 38; ECF No. 343 ¶ 38.) At the times relevant to the Complaint, NSM was led by Defendant Schoep. (ECF No. 175 ¶¶ 38.) NSM's purpose is to promote "a 'greater America' that would deny citizenship to Jews, non-whites, and LGBT persons." (*Id*. ¶ 38.) Members of NSM participated in planning the Unite the Right event and the violence that took place in Charlottesville on August 11 and 12, 2017. (*Id*.)

In addition to Mr. Schoep, there are unquestionably others within NSM who generated and possessed documents relevant to the events at issue in this case. NSM's website lists a number of "National Officers & Departments," including at least six individuals and several other people listed by title. (Ex. 1 (screenshot of https://web.archive.org/web/20190809013655/http://www.nsm88.org/contact/index.htm, Aug. 9, 2019).) A quick internet search reveals that one of NSM's leaders at the time of the Unite the Right event was Major Brian Culpepper, a man in

2

charge of "Public Relations" who drafted an "After Action Report" after Unite the Right recounting what occurred at the rally and declaring the event "a huge success for the NF allies." (Ex. 2 at 29 (screenshot of https://www.counterextremism.com/content/guide-white-supremacy-groups, last visited Aug. 28, 2019)); (Ex. 3 at 2–5 (screenshot of https://hocomd.cc/2017/08/18/get-to-know-some-of-the-unite-the-right-rally-participants-and-sympathizers, last visited Aug. 28, 2019).) According to Defendant Matthew Heimbach's recent deposition testimony, NSM members had their own NSM e-mail accounts on which they discussed issues responsive to Plaintiffs' document requests, which were controlled for a time by NSM's current leader, Burt Colucci. (Ex. 4 at 107–08 (Excerpt of Heimbach Depo. Tr.).) Plaintiffs have not received access to any such accounts, or electronic devices from any NSM members other than Defendant Schoep.

Plaintiffs served their First Set of Requests of Production of Documents on NSM on January 25, 2018 as well as their first set of interrogatories. (*See* ECF Nos. 432-2, 432-1.) NSM responded on April 9, 2018, listing some – but not all – of the devices and accounts of Jeff Schoep. (ECF No. 478-6.) In fact, NSM's responses were identical to those of Mr. Schoep, and included hardly any references to NSM accounts and domains, including NSM email accounts. (*Id.*; ECF No. 478-3.) There was plainly no investigation done at that point regarding who else within this organization possessed responsive documents.

On November 19, 2018, this Court entered the Stipulation and Order for the Imaging, Preservation, and Production of Documents (ECF No. 383, the "Stipulation"), finding that it was "necessary and appropriate" to "submit [Defendants'] electronic devices to a third-party vendor for imaging." (ECF No. 379 ¶ 1.) NSM and Nationalist Front ("NF") agreed to the terms of the Stipulation. (Stipulation at 2.) Among other things, the Stipulation required NSM and NF to

3

provide Plaintiffs with certificates identifying the sources of "potentially relevant" documents or ESI. (*Id.* ¶ 5; *id*. Ex. A.) On December 6, 2018, Defendant Schoep executed a certificate that purported to comply with Exhibit A to the Stipulation, and which he purported to submit in his individual capacity as well as on behalf of NSM and NF. (Ex. 5 (Certificate Responses of Jeff Schoep Individually, National Socialist Movement, and Nationalist Front, Dec. 6, 2018).) That certificate, which Mr. Schoep signed under penalty of perjury, identified only two social media accounts and one device as containing potentially relevant documents. (*Id.*) The accounts and the device were all controlled by Mr. Schoep. There was not a single device or account that appeared to contain documents for any other NSM custodian.

On February 16, 2019, Defendant Schoep fired the attorney representing him and NSM, the day after he was ordered to sign the third-party vendor contract to facilitate the production of documents. (ECF No. 432-9.) On March 18, 2019, W. Edward ReBrook IV, esq., emailed the Court *ex parte* asserting, "I am the new attorney for NSM, Jeff Schoep (cc'd), and the National Front." (ECF No. 446.) Mr. ReBrook then proceeded to explain to the Court at length why he was the proper attorney for NSM, and not another individual who claimed ownership over NSM, James Stern. (*Id.*) At a hearing on March 18, 2019, Mr. ReBrook specifically represented to the Court, "I am the new attorney for the National Socialist Movement, the Nationalist Front, and Mr. Jeff Schoep," (ECF No. 455 at 4), and filed a notice of appearance for Mr. Schoep, NSM, and NF the following day. (ECF No. 451.) On April 4, 2019, the Court granted Mr. RebRook's notice of appearance on behalf of NSM after James Stern failed to find another attorney to enter a notice of appearance for the entity. (ECF No. 461.) From that day forward, Plaintiffs and the Court have been interacting solely with Mr. ReBrook as the duly licensed attorney for Mr. Schoep, NSM, and NF.

4

On April 8, 2019, after Plaintiffs were forced to file a motion for sanctions against Mr. Schoep for his failure to sign the third-party vendor contract, counsel for Plaintiffs wrote Mr. ReBrook, and noted (*inter alia*) that "both NSM and NF identified Jeff Schoep as the sole custodian of documents in the possession of each of those entities." (Ex. 6 (Email from M. Bloch to E. ReBrook, Apr. 8, 2019).)[1] Plaintiffs noted that Mr. ReBrook's clients "failed to disclose in [their] certifications numerous social media accounts and electronic devices" that contain responsive information, and requested that NSM and NF disclose any "additional custodians from either of those entities who possess accounts and devices with information responsive to Plaintiffs' discovery requests . . . so that their documents can be produced." (*Id.*) In his response, Mr. ReBrook demurred, claiming that because Mr. Schoep is the "only named defendant for the NSM and the 'Nationalist Front' (which was never a real, functioning entity), only materials within his possession and control are subject to discovery." (Ex. 7 (Email from E. ReBrook to M. Bloch, Apr. 9, 2019).) Counsel for Plaintiffs responded the same day, explaining, with citations to authority, that NSM and NF are "required to turn over all documents in their possession that are relevant and responsive to our document requests, even if those documents are in the possession of custodians other than Mr. Schoep." (Ex. 8 (Email from M. Bloch to E. ReBrook, Apr. 9, 2019).) Plaintiffs included in the letter authority for the general proposition that "[t]he Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests." *Selee Corp.* v. *McDanel Advanced Ceramic Techs., LLC*, No. 1:15-CV-00129-MR, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016).

---

[1] In addition to information from other custodians, that letter requested that Mr. Schoep provide additional individual account credentials and devices which had not been provided to the third-party vendor, to which his counsel objected. It was only after additional Court intervention that certain devices and credentials were ultimately produced to the vendor.

5

When counsel for NSM failed to respond to that letter, counsel for Plaintiffs followed up with another letter on April 23, 2019, reiterating the request that counsel for NSM and NF "let me know whether or not NSM or NF intend to produce documents in the possession of any other custodian." (Ex. 9 (Email from M. Bloch to E. ReBrook, Apr. 23, 2019).) In response, counsel for NSM and NF initially expressed a concern about the Plaintiffs' intentions in the lawsuit generally, stating, "A few things trouble me here – firstly, I don't believe for a second that this lawsuit is about a conspiracy regardless of what the complaint says. If it were, you wouldn't be asking for info from NSM records. It's clear to me that what your plaintiffs want is to expose NSM's members and/or donors so that they can be doxed for all time." (Ex. 10 (Email from E. ReBrook to M. Bloch, Apr. 23, 2019).) Regarding the request that counsel identify additional custodians, counsel stated, "I maintain that I cannot give you what I don't have, even if you really want me to. Mr. Schoep – my only flesh & blood, human client – literally does not control several of the things you are requesting. . . . And entities which are not named defendants in this suit are not subject to your discovery requests." (*Id.*)

After a conference before the Court on April 26, 2019 and a phone call concerning compliance with discovery, Plaintiffs' counsel asked counsel for NSM, for the third time, to "[p]lease let me know at your earliest convenience whether you have made a determination as to whether there are any additional custodians in possession of responsive documents" for NSM and NF. (Ex. 11 (Email from M. Bloch to E. ReBrook, May 3, 2019).) On May 13, 2019, counsel for NSM wrote Plaintiffs' counsel "to verify if we're in compliance[,]" noting, "[w]e've sent the computer for imaging and provided our access to all the accounts we could find." (Ex. 12 (Email from M. Bloch to E. ReBrook, May 13, 2019).) The email concluded, "if anything further is required please do not hesitate to let me know." (*Id.*) Counsel for NSM still had yet to address

6

whether he had done any investigation as to whether there were any individuals – other than Defendant Schoep – within NSM that possessed documents responsive to Plaintiffs' document requests. Plaintiffs' counsel responded that same day, stating for the fourth time, "it remains our position that there must be custodians beyond Mr. Schoep that that possess content responsive to our document requests, particularly with respect to NSM." (*Id*.) Plaintiffs specifically noted, by way of example, that Plaintiffs were aware of an individual, Brian Culpepper, who "was a spokesman for the NSM around the time of the events in Charlottesville and made statements on behalf the organization." (*Id.*) Plaintiffs also reiterated authority to the effect that the Federal Rules of Civil Procedure require entities to conduct reasonable investigations and make reasonable inquiries in order to respond to discovery requests. (*Id*.) Once again, Plaintiffs asked that counsel "let us know whether you will be producing documents from custodians other than Mr. Schoep for NSM and NF." (*Id.*) Counsel for NSM did not respond.

Plaintiffs followed up once again on June 11, 2019, asking for a fifth time "whether there are any custodians beyond Mr. Schoep who will be producing documents on behalf of NSM or NF." (Ex. 13 (Email from M. Bloch to E. ReBrook, June 11, 2019).) Counsel for NSM and NF responded the next day, stating the following: "The only actual human person I have a relationship with is Mr. Schoep. I do not know any of these other people. My relationship with NSM and NF (which I'm not sure is an actual organization) is derivative of my relationship with Mr. Schoep. Am I being asked to develop new relationship's [*sic*] with additional natural persons?" (Ex. 14 (Email from E. ReBrook to M. Bloch, June 12, 2019).) Plaintiffs' counsel reiterated in response, with associated authority, that an organization has a duty to conduct a reasonable investigation, and noted that, "[a]t a minimum, Brian Culpepper, who was a spokesman for the NSM around the time of the events in Charlottesville and made statements on behalf of the organization, would

7

therefore be in possession of responsive documents we believe Plaintiffs are entitled to." (Ex. 15 (Email from M. Bloch to E. ReBrook, June 12, 2019).) Plaintiffs again requested, for the sixth time, that counsel state "whether you will be producing documents for Mr. Culpepper or any other custodians for those two entities that you believe have responsive documents after reasonable investigation." (*Id.*)

In response, Mr. ReBrook asked whether Plaintiffs had a "complete list of persons [he was] expected to query for information." (Ex. 16 (Email from E. ReBrook to M. Bloch, June 13, 2019).) Plaintiffs' counsel responded at that point that, beyond what he had already offered, he could not advise further as to how to conduct an investigation. (Ex. 17 (Email from E. ReBrook to M. Bloch, June 17, 2019).) Mr. ReBrook responded as follows:

> If you have specific, human persons I am expected to query for discoverable information other than my only human client, Jeff Schoep, please let me know. I believe there have been hundreds if not thousands of NSM members over the years, so in order to avoid a vagueness objection, I'm going to need to know who you expect me to contact.

(*Id.*)

Plaintiffs' counsel made one final effort to attempt to ascertain whether other members of NSM or NF possessed responsive documents, which we quote in full:

> With respect to NSM and NF, it remains the case that you have only produced items to the vendor in the possession of Jeff Schoep. As we have noted, we believe there are others within those organizations who possess responsive documents, including, for example, Brian Culpepper, who was a spokesman for NSM at the time of Unite the Right, and Burt Colucci, who, according to recent deposition testimony, apparently set up and controlled an e-mail system for NSM that contained relevant documents. It is our position that you have not fulfilled your obligation to conduct a reasonable investigation of the entities you represent to respond fully to our discovery requests. Please let us know by Wednesday, August 28, whether you intend to produce documents on behalf of NSM or NF for custodians other than Jeff Schoep. If we do not hear from you on this issue prior to Wednesday, August 28, we will presume you do not intend to make any inquiry regarding additional custodians for NF or NSM and we will raise these issues with the Court.

8

(Ex. 18 (Email from M. Bloch to E. ReBrook, Aug. 22, 2019).)

Plaintiffs received no response to the above request.

In an email to the Court of August 28, 2019, Mr. ReBrook asked to be "relieved" of counsel for NSM and NF. (Ex. 19 (Email from E. ReBrook to Court, Aug. 28, 2019).) He claimed, for the first time, that at the time he entered a notice of appearance for Mr. Schoep, NSM, and NF, "I did not fully appreciate or understand that Mr. Schoep had no control of the National Front and would soon be leaving the NSM." (*Id.*) He also noted that he did "not believe that the National Front is a functional entity capable of answering discovery requests," and that he has not "been able to get information from anyone else" at NSM. (*Id.*) Mr. ReBrook did not specify any attempts he has made to contact custodians of NSM or NF, beyond merely asking Mr. Schoep to contact Mr. Culpepper and Mr. Colucci. (*Id.*) Mr. ReBrook then directed Plaintiffs to an NSM.ORG press release authored by Mr. Schoep, dated March 6, 2019. (*Id.*) In the release, Schoep claimed he would "retire [from NSM] and appoint a successor." (Ex. 20 (screenshot of https://web.archive.org/web/20190320005811/http://www.nsm88.org/press/nsm-JS_press-release_march_6_2019.htm, March 6, 2019).) Mr. Schoep also stated that he had "officially appointed former Chief of Staff, Burt Colucci, as Commander of the National Socialist Movement." (*Id.*) There is no evidence that Mr. ReBrook ever personally attempted to contact Mr. Colucci, the current leader of his client, NSM.

At no point did Mr. ReBrook move to withdraw from representing NSM in March 2019; he filed a notice of appearance for the entity on March 19, 2019 (ECF No. 451) and fought hard to represent the entity despite objections from others (*see* ECF Nos. 446, 455, 461). For over five months, Mr. ReBrook has held himself out to the Court as representing NSM and NF. Until the

9

Court rules otherwise, Mr. ReBrook is still obligated to represent NSM and NF and respond appropriately to Plaintiffs' discovery requests.

Despite Mr. ReBrook's representation that NSM has "hundreds" of members, Plaintiffs have received no documents or responsive information from NSM (or NF), beyond a single NSM Bitchute account that Mr. Schoep had previously identified. (Ex. 5; Ex. 17; Ex. 19.) It remains the case that NSM has not identified any custodians of potentially relevant information other than Mr. Schoep, and Plaintiffs have no information that it has conducted any investigation in that regard.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party is entitled to request that another party provide "any designated documents or electronically stored information" that is in the producing party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "'Control' is defined as the legal right, authority or ability to obtain documents upon demand." *U.S. Int'l Trade Comm'n* v. *ASAT, Inc*., 411 F.3d 245, 254 (D.C. Cir. 2005). In responding to a discovery request, "a party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests." *Moore* v. *Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010). In fulfilling this obligation on behalf of a client, counsel must make a "reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." *Poole ex rel. Elliott* v. *Textron, Inc*., 192 F.R.D. 494, 503 (D. Md. 2000) (quoting Advisory Committee Notes to 1983 Amendments to Rule 26(g)); *see also Abadia-Peixoto* v. *U.S. Dep't of Homeland Sec.*, No. 11-cv-04001-RS, 2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) ("In the era of e-discovery, attorneys must take responsibility for ensuring that their clients conduct a comprehensive and

10

appropriate document search."). "The Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests." *Selee Corp.* v. *McDanel Advanced Ceramic Techs., LLC*, No. 1:15-cv-00129-MR, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016) (citation and internal quotation marks omitted); *accord Hickman* v. *Wal-Mart Stores, Inc.*, 152 F.R.D. 216, 223 (M.D. Fla. 1993) (affirming that a company has a duty to make a reasonable search of its business records and a reasonable inquiry of its employees and agents, in order to obtain the information sought in discovery).

## ARGUMENT

Defendant NSM, through its attorney Mr. ReBrook, has failed to take the most basic steps to determine which individuals within the organization possess documents responsive to Plaintiffs' discovery requests, let alone to produce documents from anyone other than Defendant Schoep. Moreover, Defendant Schoep has made a concerted effort to produce primarily *personal* accounts, rather than accounts containing NSM documents such as an email account domain apparently created exclusively for NSM members, to which Plaintiffs have no access. Despite persistent efforts by Plaintiffs over the course of months, counsel for NSM has obstinately refused to even inquire who else within the organization, beyond the former leader, possesses responsive documents. Indeed, Plaintiffs have directed NSM's counsel, at his request, to at least two potential sources of such documents, one of whom is the current leader of the organization, Burt Colucci. Nonetheless, NSM has chosen simply to ignore their obligation to conduct a reasonable investigation and respond fully to Plaintiffs' document request. And when informed that Plaintiffs would bring this issue to the Court, Mr. ReBrook sought at the eleventh hour to withdraw as counsel to NSM and NF, after fighting vigorously to represent them in the first place. To date,

11

Plaintiffs therefore have few documents from NSM beyond what Defendant Schoep has provided to the third-party vendor, which does not, of course, include any documents from Defendant Schoep's cell phone, which was destroyed when it purportedly fell in a toilet.

Courts have long recognized that entity defendants and their attorneys are required by Rule 26 to reasonably investigate the identities of custodians in response to discovery requests. *See, e.g.*, *Selee Corp.*, 2016 WL 4546446, at *3 (noting how the Federal Rules impose a "duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests"); *Terry* v. *Modern Inv. Co.*, No. 3:04-cv-00085, 2006 WL 2434264, at *6 (W.D. Va. Aug. 21, 2006) (Moon, *J.*) (ordering defendants to determine which individuals had responsive information from entity in question because they were "the sole parties who had authority to obtain [entity] records" and chastising Defendants for failing to respond to discovery requests); *Morris* v. *Lowe's Home Ctrs., Inc.*, No. 1:10-cv-388, 2012 WL 5347826, at *4–5 (M.D.N.C. Oct. 26, 2012) (granting motion to compel Defendant to make a "reasonable inquiry" of employees with knowledge relevant to the lawsuit after Defendant made scant effort previously); *see also 3M Innovative Props. Co.* v. *Tomar Elecs.*, No. 05-cv-756-MJD, 2006 WL 2670038, at *6–7 (D. Minn. Sept. 18, 2006) (granting motion for sanctions after President of company "did not inquire into whether other employees within the company had potentially relevant material, but merely looked at his own email and files," and holding that "a reasonable investigation by a company would include an inquiry of a company's employees for relevant information"); *Hickman*, 152 F.R.D. at 223 ("Wal-Mart has a duty to make a reasonable search of its business records and make a reasonable inquiry of its employee and agents in order to obtain the information asked in Plaintiff's interrogatories. Only

after doing such, can the Defendant then aver that it has no knowledge as to the information requested in the interrogatory.")

Here, NSM has fallen at the first hurdle imposed by Rule 26: NSM (and its counsel) has failed to embark on a reasonable search to identify custodians who may have information responsive to Plaintiffs' document requests. *Cf. Terry*, 2006 WL 2434264, at *6; *Morris*, 2012 WL 5347826, at *4–5; *3M Innovative Props. Co.*, 2006 WL 2670038, at *6–7. In response to no fewer than *seven* direct requests from Plaintiffs, the best NSM has done is *to ask Plaintiffs* to identify appropriate custodians. (*See* Ex. 16; Ex. 17.) That is plainly not an adequate response, and betrays that NSM and their counsel have done anything but conduct the reasonable search required by Rule 26. "[C]ommon sense dictates that the party conducting the search must share information regarding the universe of potentially relevant documents being preserved, . . . and the identities of the custodians from whom the documents were retrieved. After all, the party responsible for the search and production has the duty to demonstrate its reasonableness." *Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 4137847, at *8 (S.D.W. Va. July 8, 2015).

Despite NSM's failure to adopt this common-sense approach, Plaintiffs have nonetheless identified potential custodians of responsive documents. As Plaintiffs pointed out, Plaintiffs are aware that a person known as Brian Culpepper has spoken on behalf of NSM (*see* Ex. 12; Ex. 15; Ex. 18), and that a person known as Burt Colucci, the current leader and former chief of staff to Mr. Schoep, has assisted in establishing email accounts for NSM members. (Ex. 4 at 107–08.) One would think that the current leader of the organization that an attorney represents would not only be knowledgeable about the organization's documents but also easy to contact by the organization's lawyer. Mr. ReBrook's half-hearted attempts to even speak to Mr. Colucci – or anyone else in the organization – hardly satisfy his obligations under the federal rules.

13

Finally, Mr. ReBrook's apparent objection to Plaintiffs' requests that he only has a "relationship" with one member of NSM, Mr. Schoep, is beside the point. *See 3M Innovative Props.* Co, 2006 WL 2670038, at *6 ("Discovery requests served on a company solicits information known to the company, not solely information known by the president, CEO, or other person directed to respond to the discovery requests. Accordingly, a reasonable investigation by a company would include an inquiry of a company's employees for relevant information."). Mr. ReBrook, as the attorney to NSM, has an obligation to investigate and inquire with other members of NSM who may have discoverable information. *See Poole*, 192 F.R.D. at 503 (acknowledging counsel's responsibility to ensure client has provided information responsive to discovery demand); *Burnett,* 2015 WL 4137847, at *8 (noting recipient of discovery demand must provide "identities of custodians" responsive to demand); *Morris*, 2012 WL 5347826, at *4–5 (granting motion to compel Defendant to make a "reasonable inquiry" of employees after Defendant made little effort beforehand).[2]

Nor can Mr. ReBrook now seek to evade his obligations by moving for withdrawal of NSM and NF, after representing them for five months, simply because he "did not fully appreciate or understand that Mr. Schoep … would soon be leaving the NSM." (Ex. 19.) Mr. ReBrook fought tirelessly to represent NSM (*see* ECF Nos. 446, 455) and the Court granted his request after his efforts (*see* ECF No. 461). As the duly represented attorney for NSM for months, Mr. ReBrook cannot now claim that he has no documents within his control, after making scant efforts to identify

---

[2] Moreover, the fact that NSM and NF are unincorporated is of no moment: their members are agents of the association in the same way that officers and employees are agents of companies, and share the same duties and liabilities as any other agent. *See Am. Soc'y of Mech. Eng'rs* v. *Hydrolevel Corp.*, 456 U.S. 556, 566–70 (1982) (explaining the liability of an unincorporated association for the acts of its agents).

custodians who would have such information. *See Towns* v. *Morris*, 50 F.3d 8, 8 (4th Cir. 1995) (per curiam) (denying motion to withdraw as an attempt to evade discovery obligations).

As set forth above, Mr. ReBrook and NSM's ongoing refusals to cooperate in discovery should not be countenanced any further by this Court. If NSM is not willing to identify custodians of discoverable documents, then Plaintiffs should be entitled to depose a representative of NSM to identify custodians of the organization's discoverable documents. *See, e.g.*, *Danco, Inc.* v. *Lavelle Indus., Inc.*, No. 5:16-cv-48-CMC, 2017 WL 10154231, at *3 (E.D. Tex. May 4, 2017) (granting motion to compel a "records custodian deposition").

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: September 3, 2019

Respectfully submitted,

*/s/*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

15

<pre>
                                              Of Counsel:

Roberta A. Kaplan (*pro hac vice*)            Karen L. Dunn (*pro hac vice*)
Julie E. Fink (*pro hac vice*)                William A. Isaacson (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)          Jessica Phillips (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)               BOIES SCHILLER FLEXNER LLP
Michael L. Bloch (*pro hac vice*)             1401 New York Ave, NW
KAPLAN HECKER & FINK LLP                      Washington, DC 20005
350 Fifth Avenue, Suite 7110                  Telephone: (202) 237-2727
New York, NY 10118                            Fax: (202) 237-6131
Telephone: (212) 763-0883                     kdunn@bsfllp.com
rkaplan@kaplanhecker.com                      wisaacson@bsfllp.com
jfink@kaplanhecker.com                        jphillips@bsfllp.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com

Yotam Barkai (*pro hac vice*)                 David E. Mills (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP                    COOLEY LLP
55 Hudson Yards                               1299 Pennsylvania Avenue, NW
New York, NY 10001                            Suite 700
Telephone: (212) 446-2300                     Washington, DC 20004
Fax: (212) 446-2350                           Telephone: (202) 842-7800
ybarkai@bsfllp.com                            Fax: (202) 842-7899
                                              dmills@cooley.com

Alan Levine (*pro hac vice*)                  J. Benjamin Rottenborn (VSB 84796)
Philip Bowman (*pro hac vice*)                Erin Ashwell (VSB 79538)
COOLEY LLP                                    WOODS ROGERS PLC
1114 Avenue of the Americas, 46th Floor New   10 South Jefferson St., Suite 1400
York, NY 10036                                Roanoke, VA 24011
Telephone: (212) 479-6260                     Telephone:  (540) 983-7600
Fax: (212) 479-6275                           Fax: (540) 983-7711
alevine@cooley.com                            brottenborn@woodsrogers.com
pbowman@cooley.com                            eashwell@woodsrogers.com

                                              *Counsel for Plaintiffs*
</pre>

## RULE 37 CERTIFICATION

Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted in good faith to meet and confer with NSM about the issues raised by this Motion.

Dated: September 3, 2019                                       Respectfully submitted,

*/s/*_____
Robert T. Cahill (VSB 38562)
*Counsel for Plaintiffs*

17

# CERTIFICATE OF SERVICE

      I hereby certify that on September 3, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Matthew Parrott, Robert Ray, Traditionalist Worker Party, Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

William Edward ReBrook , IV
The Rebrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

I further hereby certify that on September 3, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline  
eli.f.mosley@gmail.com

Matthew Heimbach  
matthew.w.heimbach@gmail.com

Vanguard America  
c/o Dillon Hopper  
dillon_hopper@protonmail.com

    /s/  
Robert T. Cahill (VSB 38562)  
COOLEY LLP  
11951 Freedom Drive, 14th Floor  
Reston, VA 20190-5656  
Telephone: (703) 456-8000  
Fax: (703) 456-8100  
rcahill@cooley.com

*Counsel for Plaintiffs*