## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, TYLER MAGILL,
APRIL MUNIZ, HANNAH PEARCE,
MARCUS MARTIN, NATALIE ROMERO,
CHELSEA ALVARADO, JOHN DOE, and
THOMAS BAKER,

                             Plaintiffs,

v.

JASON KESSLER, et al.,

                             Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

### PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT ELLIOTT KLINE A/K/A ELI MOSLEY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 1

    I.      Kline's Crucial Role in the Conspiracy .....................................................1

    II.     Kline's Pattern of Willful Misconduct.........................................................2

    III.    Kline's Brief Reappearance in This Litigation ...........................................3

    IV.    Kline's Continued Misconduct under Oath .................................................5

           A.     Kline's Testimony Regarding His Electronic Devices and Social Media Accounts ....................................................................5

           B.     Kline's Testimony Regarding His Failure to Comply with Discovery ..................................................................................12

    V.      The Third Order to Kline .........................................................................18

    VI.    Kline's Renewed Disappearance from the Litigation................................19

ARGUMENT .................................................................................................................... 20

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*,
  269 F.3d 305 (4th Cir. 2001) ..................................................................... 21, 22, 23

*ePlus Inc. v. Lawson Software, Inc.*,
  946 F. Supp. 2d 449 (E.D. Va. 2013) ....................................................................... 24

*First Mariner Bank v. Resolution Law Grp.*,
  Civ. No. MJG-12-1133, 2014 WL 1652550 (D. Md. Apr. 22, 2014)..................................... 22

*In re Gen. Motors Corp.*,
  61 F.3d 256 (4th Cir. 1995) ....................................................................................... 24

*In re Reid*,
  No. 15-00195-DD, 2016 WL 6989748 (Bankr. D.S.C. Nov. 28, 2016)................................ 24

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*,
  359 F.3d 699 (4th Cir. 2004) ..................................................................................... 24

*Lee v. Max Int'l, LLC*,
  638 F.3d 1318 (10th Cir. 2011) ................................................................................. 22

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
  734 F.3d 366 (4th Cir. 2013) ..................................................................................... 21

*Reaves v. Rhodes*,
  No. CA 4:10-125-TLW-TER, 2011 WL 826358 (D.S.C. Jan. 26, 2011).............................. 24

*United States v. Carter*,
  No. 316CV00673FDWDCK, 2018 WL 4387635 (W.D.N.C. Sept. 14, 2018)...................... 24

*Young Again Prods., Inc. v. Acord*,
  459 F. App'x 294 (4th Cir. 2011) ......................................................................... 22, 23

**<u>Rules</u>**

Fed. R. Civ. P. 37 ................................................................................................... 1, 24

Fed. R. Evid. 901 ................................................................................................... 1, 25

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Motion for Sanctions against Defendant Elliott Kline a/k/a Eli Mosley ("Kline"). As described below and in Plaintiffs' prior Motion for Sanctions against Defendants Elliot Kline a/k/a Eli Mosley and Matthew Heimbach, *see* ECF Nos. 457 ("First Sanctions Motion" or "First Sanctions Mot."), 528 ("Supp. to First Sanctions Mot."), Plaintiffs respectfully request that the Court immediately impose the following sanctions against Kline under Fed. R. Civ. P. 37 and the Court's inherent authority:

1. A daily fine imposed on Kline for each day that he remains in contempt of the Court's Orders;

2. The issuance of a bench warrant for Kline's immediate arrest and detention until he becomes in full compliance with the Court's Orders;

3. That the Court deem the facts listed in the attached Appendix A established for purposes of this action;

4. That the Court deem "authentic" for purposes of satisfying Rule 901 of the Federal Rules of Evidence any document Plaintiffs have a good-faith basis to believe were in fact created by Kline, including, but not limited to, all documents from the social media accounts listed in Appendix A;

5. That the Court instruct the jury that Kline chose to intentionally withhold his documents and that the jury may draw adverse inferences from that fact, including that Kline chose to withhold such documents because he was aware that such documents contained evidence that Kline conspired to plan racially motivated violence at the Unite the Right event; and

6. Reasonable expenses, including attorneys' fees and costs.

## BACKGROUND

### I. Kline's Crucial Role in the Conspiracy

As the Court has recognized, Kline was one of the two "principal coordinators for the Unite the Right rally on August 11 and 12, 2017." Memorandum Opinion 8, Aug. 9, 2019, ECF No. 539 ("Mem. Op.") (internal quotation marks and citation omitted). Indeed, Kline was a key decisionmaker in nearly every aspect of planning the events in Charlottesville in August 2017,

approving details as specific as the words that attendees chanted that weekend.  *See id.*; First Sanctions Mot. 3.  He influenced and monitored daily communication about Unite the Right through Discord and other social media platforms.  First Sanctions Mot. 4.  Kline, along with other Defendants, also "organized a 'secret' torchlight parade through the University of Virginia's grounds on the night of Friday, August 11, 2017."  Mem. Op. 8.  And "Kline communicated with others on the ground in Charlottesville on August 12," including instructing attendees to "form a 'white bloc barrier'" and seeking "shooters" "with long rifles" to return to Emancipation Park in defiance of police orders.  *Id.* at 9.  Getting discovery from Kline is thus critical to Plaintiffs' case.

## II.     Kline's Pattern of Willful Misconduct

Despite his pivotal role in Unite the Right and his importance to this litigation, Kline has "continually failed to fulfil even [his] most basic obligations to this Court, [his] counsel, and the other parties to this case."  Mem. Op. 2.  Indeed, as the Court has explained, Kline's "continued contumacious behavior," *id.* at 33 (alterations and internal quotation marks omitted), has included the following egregious misconduct over a period of more than a year and a half, despite numerous interventions by the Court, Plaintiffs, and Kline's own prior counsel, James Kolenich:

> 1.      Defying numerous Court Orders, including on March 26, 2018; July 25, 2018; November 13, 2018; November 19, 2018; March 4, 2019; June 21, 2019; July 3, 2019; and August 8, 2019;

> 2.      Failing to appear at numerous Court hearings, including on November 9, 2018; January 4, 2019; February 8, 2019; February 12, 2019; February 21, 2019; March 18, 2019; and June 3, 2019;

> 3.      Simply ignoring numerous communications from Plaintiffs and the Court throughout both 2018 and 2019;

> 4.      Failing to respond to Plaintiffs' Requests for Production of Documents and Interrogatories (collectively, Plaintiffs' "Discovery Requests"), to which responses were first due on February 26, 2018;

5.      Failing to execute consent forms pursuant to the Stored Communications Act ("SCA") allowing Discord and Twitter, among other social media providers, to produce discoverable documents; and

6.      Failing to disclose his electronic devices and social media account credentials or to turn over his devices to the Third-Party Discovery Vendor ("Vendor").

*See id.* at 12–28; Order to Def. Elliot Kline, July 3, 2019, ECF No. 516 ("Order to Kline"); Third Order to Def. Elliot Kline, Aug. 8, 2019, ECF No. 538 ("Third Order to Kline").

On April 3, 2019, Plaintiffs filed the First Sanctions Motion. ECF No. 457. At a June 3, 2019, hearing, the Court found that Kline's pattern of misconduct was "clearly sanctionable," but that "production was preferable to evidentiary sanctions at this point in the litigation." Mem. Op. 26 (internal quotation marks omitted). Accordingly, the Court proposed that "issuing one more very specific discovery order—this time under threat of arrest and detention—could provide a way to 'get the information that [Plaintiffs were] entitled to' and clearly still wanted." *Id.* at 27 (citations omitted). The Court also ordered Kline to appear for a deposition. *Id.* The Court made clear, however, that if Kline "failed in any way to comply" with the Court's forthcoming Order, "the Court could immediately issue a bench warrant directing the [U.S. Marshals Service ('USMS')] to arrest him, transport him to this judicial district, and hold him in custody until he purged himself of civil contempt." *Id.*

### III.    Kline's Brief Reappearance in This Litigation

The Court's threat of arrest proved enough to cause Kline to resurface, however briefly, and to contact his former counsel on or around June 7, 2019. *Id.* at 27; *see* Decl. of Jessica E. Phillips ("Phillips Decl.") ¶ 3 & Ex. A, at 3 (Kolenich Email to Plaintiffs, June 7, 2019, stating, "The word 'arrest' has had a near magical effect on my former clients. . . . [Kline] has been fully informed of the discovery/ESI expectations."). On June 21, 2019, the Court issued an Order outlining discovery-related issues for an upcoming telephonic hearing on July 2. Mem. Op. 28.

3

Kline appeared for the July 2, 2019, hearing. *Id.* He confirmed to the Court that he had

"'received each of the Orders, discovery requests, and Stored Communications Act ("SCA")

consent forms that explain [his] outstanding discovery obligations.'" *Id.* (quoting Order to Kline

1). Kline also made the following representations:

- The only electronic device that he had with relevant documents was an "old cell phone," which was "currently not activated" and "just kind of sitting here";

- He was "totally fine with" consenting to the production of his social media accounts so that his social media providers could "hand over [his] information";

- He had received and was, at that very moment, reading a July 1, 2019, email from Plaintiffs' counsel attaching relevant Orders, Discovery Requests, and forms for Kline to complete; and

- A week would be "sufficient time" for him to complete the SCA consents and Certification Form.

Hr'g Tr. 19:01–06, 19:19–21, 20:01–02, 20:08–10, 21:17–19, 32:03–07, 32:25–33:04, 33:25–

34:02, July 2, 2019, ECF No. 519.

On July 3, 2019, the Court issued an individual Order to Kline—the Order with which the

Court had warned that non-compliance could result in an "immediate[]" bench warrant for Kline's

arrest. *See* Mem. Op. 27. The individual Order directed Kline to comply with certain steps and

deadlines over the next several weeks, including completing the Certification Form, disclosing and

making available his electronic devices and social media accounts, responding to the Discovery

Requests, and sitting for his deposition on August 7. *See id.* 28–29 & n.10; Order to Kline. Also

on July 2, 2019, the Vendor sent Kline the contract via DocuSign that he was ordered to execute

by July 10, 2019. *See* Phillips Decl. ¶ 4 & Ex. B, at 5 (Vendor Email to Kline, July 22, 2019).

Kline failed to timely comply with a single deadline set by the individual Order, which

Plaintiffs brought to the Court's attention in a filing on July 23, 2019. *See* Supp. to First Sanctions

Mot. 5–7. On August 2, 2019, the Court issued another Order, instructing Kline to appear for a

4

telephonic hearing on August 8, and making clear its expectation of "Kline's good-faith participation" at his deposition. Second Order to Def. Elliot Kline, Aug. 2, 2019, ECF No. 533.

On August 1, 2019—three weeks after the Court-ordered deadline—Kline complied with exactly one of his requirements under the Court's July 3 Order:  he executed the Vendor contract, which the Vendor had sent to him nearly a month earlier. *See* Phillips Decl. ¶ 5 & Ex. B, at 2. Otherwise, until the date of his deposition, and despite Plaintiffs' repeated attempts to contact him, Kline ignored all of his other obligations ordered by the Court. *See* Phillips Decl. ¶ 6.

## IV.    Kline's Continued Misconduct under Oath

On August 7, 2019, Kline sat for the Court-ordered discovery-focused deposition.  At his deposition, at Plaintiffs' counsel's direct request, Kline signed an SCA consent form enabling Discord to produce his data and completed portions of the Certification Form and an SCA consent form for Twitter.  With those minimal exceptions, Kline's deposition aggravated the depth of his misconduct.  Kline's testimony was repeatedly internally inconsistent and contradicted by the evidence produced by others in the case.  His explanations for his failure to participate in the litigation ranged from implausible to nonsensical.  Most concerning, Kline's testimony strongly suggested that he has withheld and continues to withhold, if he has not outright destroyed, documents and electronic devices central to this litigation.  In short, Kline's misconduct under oath made even clearer the need for the severest possible sanctions.

### A.    Kline's Testimony Regarding His Electronic Devices and Social Media Accounts

#### 1.    Kline's Phones

Kline testified throughout his deposition that he used only two phones during the relevant period, "over the course of this whole thing":  an iPhone connected to the number 610-406-2229 (the "iPhone"), and a prepaid phone he bought from Walmart (the "Walmart phone") when his

5

iPhone was not working.  *See, e.g.*, Phillips Decl. Ex. C (Tr. 31:19–32:08, 32:23–25).[1]  In particular, Kline testified unequivocally that he had only one phone in 2017, which was the iPhone. Tr. 388:25–389:15.  He testified that he had recently bought a new phone with a new number, which he had not yet activated at the time of the deposition.  Tr. 72:24–73:14.

Kline's testimony conflicted with statements he had previously made on Discord in which he admitted to having multiple phones in 2017.  On March 31, 2017, Kline stated on Discord (under his alias "Eli Mosley") that he had not one phone but *three*:  "I have 3 phones"—"one for work, one for personal shit, and one for the alt right[.]"  Phillips Decl. ¶ 8 & Ex. D, at 3.  Kline did not deny, nor could he credibly, that he had made these posts on Discord.  Tr. 394:11–15.  And he had no explanation as to why he would have made that statement if it was not true:

> I mean, I did – I mean, I said I have three phones, right.  And I said that one for each thing.  But I don't know – I definitely didn't have three phones.  I never had three phones.  I don't know why I would say that.  I don't know if it was – if I was joking.

Tr. 394:11–19; *see id.* at 395:04–07 ("So, it could be that we were joking about something.  I don't know.  I definitely didn't have three phones though.").

On that same day in 2017, Kline advised followers on Discord that they should, like him, "get a seperate [*sic*] phone for alt right stuff, then arm it with a kill password to go off between noon and 1pm each day.  I activate it before I go out and do things."  Phillips Decl. ¶ 9 & Ex. D, at 2.  Kline again admitted to making this statement but had no plausible explanation for his inconsistent testimony:  "Yeah, I don't – I mean, that was – I mean, that was a lie.  I lied to them on Discord.  That is not true."  Tr. 391:13–24.  When asked why he would have made this statement

---

[1]     All cited portions of the Kline deposition transcript ("Tr.") are contained within Exhibit C to the Declaration of Jessica Phillips.

if it were untrue, Kline tossed up his hands, resorting to the assertion that he needed to see the message "in context" to determine whether it was a "joke" or a "lie":

> I don't know the – I don't know the – I could have been joking. There is no – I have no way of knowing, because there is nothing before this. I have to see it in context. . . . I mean, it could have been a joke, could have been a lie. I don't know.

Tr. 392:09–16.

These were not the only ways in which Kline's testimony regarding his phones suggested that he was hiding or withholding something. For example, Kline testified several times (including when asked why he had been non-responsive to Mr. Kolenich for substantial periods of the litigation) that he had told Mr. Kolenich that he was using the Walmart phone, and in fact that he had provided Mr. Kolenich with the number for the Walmart phone. Tr. 41:21–24, 98:18–22, 254:11–14, 263:18–24. This was news to Mr. Kolenich, who informed Plaintiffs that he had "no record of Mr. Kline providing me any other phone number than 610-406-2229."[2] Phillips Decl. ¶ 10 & Ex. E (Kolenich Email to Plaintiffs, Sept. 3, 2019).[3]

Kline's testimony also raised concerns over the integrity of the data on the iPhone he claims was the only phone he utilized in 2017.[4] Kline testified throughout the deposition that his iPhone

---

[2]     Mr. Kolenich noted that Kline had provided Plaintiffs and the Court with a new number in August of 2019 to replace his 610-406-2229 number. Phillips Decl. ¶ 10 & Ex. E.

[3]     Adding further implausibility, Kline testified that, although he had supposedly used the Walmart phone for months, he could not remember the phone number. Tr. 32:08–09, 98:23–25, 155:19–24. In what was a consistent pattern during his deposition, Kline promised to check the number for the Walmart phone during a break in the deposition but then said later that he had been unable to find it. Tr. 155:10–15. Similarly, Kline claimed to have Thomas Ryan Rousseau's phone number and promised to provide it to Plaintiffs; when asked to locate the number, however, Kline was suddenly unable to find it. Tr. 222:12–17, 224:10–12, 262:24–263:02.

[4]     While this motion focuses on Kline's non-compliance with discovery, Plaintiffs reserve all of their rights, in light of the growing body of evidence of spoliation by Kline, to bring a separate motion against Kline regarding spoliation, and intend to seek appropriate evidentiary sanctions, including further jury instructions and adverse inferences, in the future.

7

had been at points nonfunctional due to water damage and other unspecified problems. *See, e.g.*, Tr. 94:07–10. Although Kline testified that he "went through" the phone and "[e]verything was fine," he also admitted that the iPhone is "clearly a broken phone" and "a messed up phone," and contradicted himself by testifying that "stuff might have gotten deleted for all I know." Tr. 94:17–20, 361:13–14. Indeed, at one point during the deposition, Kline represented that he suddenly could not view emails that he had reviewed earlier that day because his phone was only displaying messages from September 21, 2018, to June 11, 2019, purportedly due to a problem Kline was having entering his password. Tr. 357:09–14, 358:13–16, 359:11–15, 359:24–361:02. Bizarrely, Kline testified that although the emails that he had allegedly looked at earlier that day were suddenly not available to be viewed, "I am sure they are still in the inbox. It is not like I went through – I didn't go through and delete the e-mails, or whatever." Tr. 362:05–08.[5]

Kline's testimony was also wildly inconsistent as to when his phone had been nonfunctional or not activated, as well as when he had used the Walmart phone. Kline variously stated that his iPhone did not work (or that he was using the Walmart phone) "somewhere [in] 2017"; in December 2017 or January 2018; in the spring or summer of 2018; in mid-2018 (when his former counsel, Mr. Kolenich, was unable to communicate with him); and in 2019, including when Kline participated in the July 2, 2019, teleconference. Tr. 32:11–22, 70:22–71:06, 95:04–16, 95:24–96:20, 98:01–12, 155:19–22, 253:02-18, 255:18–257:08. When Kline was asked how

---

[5] Taken at face value, Kline's testimony indicates that emails somehow simply disappeared from his Gmail account on his phone during the course of his deposition, whether temporary or permanently, leading at a minimum to a concern regarding the integrity of the data on his phone. Alternatively, it is possible that Kline's phone in fact never had messages from after June 11, 2019, which is a possibility suggested by Kline's testimony that his nonfunctional Identity Evropa email address was somehow preventing him from signing into his personal Gmail account. Tr. 38:23–39:09. If that were the case, however, the only reasonable inference would be that Kline is hiding at least one other device that he has used to access his Gmail account.

8

he had called in for the July 2, 2019, teleconference despite owning a single phone that was not activated at the time, Kline gave an all-too-convenient answer:

> Umm, what phone was that? Might have been my sister's phone. I have to check. I don't know exactly what it was. It might have been – might have been my sister's phone. I am not sure what I was using. . . . Like I said, I don't even know – I don't know if it was my sister's phone. I used some – I used someone else's phone that was in my house. We had family over at the time. . . . I just used – we had family over because it was summer, or whatever. I was, like, hey, can I use someone's phone, or whatever. I just grabbed it. They were all in the pool. I just grabbed the phone. It was just to call you guys, or whatever.

Tr. 101:10–16, 102:01–05, 102:19–103:01.

Kline's testimony regarding his phones was evasive and strongly suggestive of duplicity. And even if Kline were telling the truth that his iPhone is his only device relevant to this litigation (which is hard to believe given his own previous statements), that makes the iPhone all the more important: Kline claimed that he used the iPhone leading up to and "during Unite the Right," including to communicate with other Defendants. Tr. 72:07–21, 73:15–19, 86:25–87:02, 87:17–89:20. Whatever documents exist on the iPhone are therefore, by Kline's admission, crucial to this case. As outlined below, however, Kline failed for weeks to turn over his phone to the Vendor—despite stating that he was ready to send it out "tomorrow or even tonight," Tr. 245:07–09—and, to date, he has refused to provide the Vendor with his phone passcode or his various account passwords so that the Vendor can determine whether any documents exist on it.

### 2. Kline's Computer

Kline's testimony regarding his computer was also contradicted by the evidence in the case, and lacked even the most basic plausibility or credibility. Kline testified that he had no computer in 2017, the period most relevant to the planning of Unite the Right. Tr. 397:07–18. Instead, Kline testified that the only computers he used in all of 2017 belonged to Richard Spencer and Kline's girlfriend's neighbor, as well as that he had used an Internet café to check his email. Tr. 115:08–

17, 116:12–16, 397:10–15. Kline testified that although he had owned a computer in 2016, he left his computer behind when he moved to South Carolina in late 2016 or early 2017 because the computer did not fit in his car. Tr. 112:05–13, 112:18–22, 114:06–09, 395:13–20, 396:24–397:06.

This testimony is also directly contradicted by Kline's repeated statements on Discord, which he admitted making, confirming that Kline had at least one computer in 2017.[6] On March 22, 2017, Kline wrote, "[A]n hour after my video came out with the kike and the sign he commented on it with 'Echo American?' I have the screen cap on my home PC[.]" Phillips Decl. ¶ 11 & Ex. F. Kline did not dispute making the statement on Discord, nor could he, but complained merely that it was "taken without any context." Tr. 400:21–23. In another message that same day, Kline wrote, "if he comes in and i [*sic*] have to defend myself all they have to do is look through my computer and im [*sic*] fucked so not really a good option[.]" Phillips Decl. ¶ 12 & Ex. G; *see* Phillips Decl. ¶ 13 & Ex. H (Kline Discord message referring to "my computer"). Kline admitted posting this message as well but claimed that the references he made to his "computer" were in fact references to "a computer screen that I would – at my girlfriend's house, we didn't have a TV. We used a computer screen to watch Netflix and stuff like that on." Tr. 402:06–16.[7]

Not only did Kline's testimony regarding his computers explicitly contradict statements he had made on Discord, but it was also overtly non-credible, especially in light of his Discord

---

[6]     Kline's testimony regarding his computer lacked credibility in smaller ways as well. For example, Kline testified early in his deposition that his old computer "[p]robably" still works; later in the deposition, he testified that his computer was "broken," that it may have stopped working as early as 2015, and that he was keeping the computer, though broken, "for parts." Tr. 113:08–09, 404:18–19, 408:17–21, 409:22–25, 411:04–12, 20–25.

[7]     On March 31, 2017, Kline wrote on Discord, "well its [*sic*] not a huge deal cause the phone is backed up on my PC[.]" Phillips Decl. ¶ 14 & Ex. I. Kline again did not deny making the statement, but testified that it referred to his old computer that was in Pennsylvania. Tr. 404:08–12. Kline admitted, when confronted with this message, that his earlier testimony that he had never backed up his phone was untrue. *See, e.g.*, Tr. 91:03–09, 216:06–08, 404:25–405:15, 406:18–21.

statements.  For example, Kline admitted that he had created a document integral to the planning

of the Unite the Right, titled "Operation Unite the Right Charlottesville 2.0," which laid out plans

for the event, provided specific instructions to followers, and was circulated on Discord.  Tr.

52:10–53:10, 106:14–107:05, 120:08–25, 175:05–24, 376:15–22.  Kline testified that he had

created and edited at least "five or six" versions of the document, and that it was "really long."  Tr.

175:18–176:08.  He testified that he had distributed the document "frequently"; "the closer we got

to the event, the more frequent [*sic*] I sent them out."  Tr. 371:02–372:03, 373:09–13.[8]  However,

despite making various versions of the "really long" document, Kline testified that he never used

a computer to make this document (or any other documents regarding Unite the Right), and instead

typed and edited it on his phone.  Tr. 107:23–108:02, 120:18–21, 122:10–19, 376:15–22.

### 3.  Kline's Social Media Accounts

As with his testimony concerning his phones and computers, Kline's testimony regarding

his social media accounts and email addresses lacked credibility.  For example, Kline

acknowledged using the email address deplorabletruth@gmail.com, but claimed never to have

used it to communicate regarding Unite the Right.  Tr. 119:09–23.  Yet Kline acknowledged that

he had listed that precise email address on the planning document as a way to make himself

available to numerous Discord followers for the specific purpose of communicating about Unite

the Right.  Tr. 122:23–123:15, 124:03–10, 281:07–13.[9]

---

[8]    Kline testified that after making and revising the document on his phone, either he would
post it on Discord himself, or he would send the document to another individual to "put it in this
format like this" and to post on Discord, though he claimed he could not remember who else would
have posted it.  Tr. 120:18–121:17, 175:09–21.

[9]    At another point, Kline admitted to having used the Twitter account NotEliMosley, but
testified that it had been hacked—and yet was able to unable to provide any detail whatsoever
regarding that supposed hacking.  Tr. 162:19–24.  Kline testified that he could not remember when
the hacking occurred; that he did not report the hacking to Twitter; that he had spoken with others

## B. Kline's Testimony Regarding His Failure to Comply with Discovery

Kline testified throughout the deposition that Plaintiffs and the Court have used the correct email address to contact him, eli.f.mosley@gmail.com (the "Gmail account"), and promised to respond to emails sent to that address going forward. *See, e.g.*, Tr. 38:16–25, 270:24–271:15, 297:24–298:01, 302:23–25.[10] Kline also testified that Plaintiffs and the Court had used the correct phone number to reach him, and that he checks and listens to his voicemails "pretty frequently." Tr. 293:20–24, 294:23–295:09, 297:21–23, 302:17–22. Kline further testified that that he has received documents mailed to him by the Court at his parents' house, and that he has picked up and reviewed that mail. Tr. 35:18–36:10, 269:25–270:02, 270:12–18.

And yet, as further described below, Kline admitted over and over again—as he must—that although Plaintiffs and the Court have consistently contacted him at his correct email address, phone number, and physical address, he has nonetheless failed to comply with his discovery obligations and largely failed to respond at all. Yet Kline repeatedly stated his desire—wholly implausibly, given his pattern of non-compliance throughout this litigation—to comply with his discovery obligations in the future. *See, e.g.*, Tr. 209:01–04, 218:01–07, 218:18–22, 219:19–23, 226:12–14, 227:12–14, 228:09–11, 237:02–06, 239:23–240:07, 245:04–09, 285:17–24. As further described below, Kline's repeated alleged commitment was merely another empty promise.

---

about the hacking, but could not remember who; and that he either had deleted the hacked account or been banned, but could not remember which. Tr. 162:25–163:24, 164:19–166:05.

[10] Although Kline for the most part admitted that he has had access to his Gmail account, he also testified occasionally that he does *not* have access to his Gmail account on his phone because his nonfunctional Identity Evropa address somehow prevents him from signing into his Gmail account. Tr. 38:23–39:09 (Identity Evropa account "will not let me sign in another Gmail account. So, I don't have Gmail on my phone"), 360:03–17. If Kline does *not* have access to his Gmail account on his phone, then that provides further evidence that Kline is hiding additional devices, given that Kline clearly has had access to his Gmail account on *some* device. At a minimum, Kline's conflicting testimony provides yet another example of his evasiveness.

### 1.     Kline's Failure to Appear at Court Hearings

Kline admitted that he failed to appear at Court conferences until July 2, 2019, and that he "didn't start responding to what was going on until . . . Patrick Casey [of Identity Evropa] reached out to me" prior to the July 2 hearing.  Tr. 266:20–23, 295:25–296:11, 297:11–19.  Kline had no plausible explanation as to his failure to appear, testifying that he "didn't know I was requested for any of the conferences or anything like that," and that he "didn't know which ones I was supposed to attend."  Tr. 266:24–267:02, 267:16–17.  Kline also claimed that he had not received phone calls or emails from Plaintiffs or the Court regarding conferences and hearings, despite acknowledging that the phone number and email address that Plaintiffs and the Court had used were correct.  Tr. 144:25–145:15, 290:18–292:12, 293:17–19, 303:01–05.[11]

Kline admitted that the evidence showed that the Court and Plaintiffs had repeatedly contacted him, but had no plausible explanation for not responding, testifying variously that he "didn't receive any of it or read any of that"; that he "didn't answer any of [the Court's] calls"; that he did not "remember reading this or seeing this"; and that he "started receiving messages – or I started noticing these messages were for me, or whatever, for the hearing for me after I talked with Patrick Casey."  Tr. 291:17–20, 292:17–20, 303:06–12, 305:06–07.[12]  Confronted with

---

[11]     Kline similarly testified that he did not know that the First Sanctions Motion had been pending against him, although he admitted that Plaintiffs had emailed him regarding a hearing on the motion and that he "should have received it."  Tr. 299:21–301:13, 305:03–14.

[12]     Kline testified that Mr. Kolenich's description to Plaintiffs of Kline's conversation with Casey was "100 percent" wrong; he then offered to show Plaintiffs evidence of his call with Casey, but was unable to find a record of the call on his phone.  Tr. 306:24–308:01, 309:16–25.  This was not the only time that Kline contradicted Mr. Kolenich's statements to the Court or Plaintiffs.  For example, Kline stated that Mr. Kolenich's description of Kline's non-responsiveness was wrong: "I am 100 percent telling you I told them I could do [a deposition in] Harrisburg whenever is convenient."  Tr. 260:10–18, 261:20–25.  Kline also called Mr. Kolenich's statement that Kline had been "fully informed of the discovery/ESI expectations" "not true."  Tr. 311:24–312:12.  And Kline testified that he had told Mr. Kolenich the number of his Walmart phone, yet Mr. Kolenich informed Plaintiffs he had "no record" of this communication.  Phillips Decl. ¶ 10 & Ex. E.

evidence of these repeated efforts to contact him, Kline essentially tossed up his hands: "I mean, almost all of [the emails] are read right now. I went through and read most of them, or opened them. I just don't know how I would have missed so many of these." Tr. 301:20–25.

In one bizarre episode during the deposition concerning an email from Plaintiffs regarding an upcoming hearing, Kline testified that he had "definitely responded" to the Plaintiffs' email, although in fact Plaintiffs never received a response. Tr. 319:20–320:16. When confronted with a follow-up email from Plaintiffs stating that they had received no response, Kline examined his iPhone during the deposition, claimed that the email was "literally [in] my drafts," and said that he had inadvertently never sent it. Tr. 321:05–16. When asked to share the draft with Plaintiffs, however, Kline was suddenly unable to find the draft, instead presenting Plaintiffs' counsel with what he conceded was a blank email. Tr. 322:11–323:20 ("Q. Are you not able to find the draft that you just told us about 60 seconds ago? . . . A. . . . . No, I couldn't find the draft.").

### 2.     Kline's Failure to Disclose His Electronic Devices and Social Media Accounts and to Submit His Devices for Imaging

Kline admitted that he had failed to complete the Certification Form or otherwise to disclose or make available his electronic devices and social media accounts. Kline's repeated explanation for this deficiency was that he had never received the form and was not given instructions on how to share this information, which was categorically false because Plaintiffs had emailed Kline the Certification Form and instructions for submitting it. *Compare, e.g.*, Tr. 138:17–25 ("I have never received, like – like, a paper in the mail or something that says what's your social media accounts, or I never got any e-mails or anything like that."), 140:15 ("I wasn't given a means to do it."), 141:13–18, 142:06–15, 211:22–25, 264:21–23, 286:04–12, 344:06–15 ("I didn't receive a certification form."), 346:05–06, *with, e.g.*, Tr. 318:16–19 ("Q. . . . [Y]ou received the forms and instructions in an e-mail from Michael Bloch on July 1, right?  A. Correct.").

14

Extraordinarily, Kline even testified that he had "been waiting for the Court or for somebody, the discovery company, to contact me," and that he had "been waiting for . . . something like this explaining what I needed to do with the form, being able to write out my accounts or whatever." Tr. 141:21–23, 317:23–318:02. Even after admitting that Plaintiffs *had* in fact sent him the Certification Form, Kline still claimed ignorance: "I received this, but I did not – I did not know this was what this was in here. . . . I didn't see this specific – these specific attachments or anything like that. This is the kind of thing I have been looking for, as far as just to comply with the Court's Orders." Tr. 318:16–23, 319:10–19.[13]

### 3. Kline's Failure to Respond to Plaintiffs' Discovery Requests

Kline admitted that he never responded to Plaintiffs' Discovery Requests. *See, e.g.*, Tr. 209:01–04, 217:22–218:03, 219:19–21, 226:08–14, 227:12–14, 233:20–22, 242:11–15, 245:04–06, 264:09–15, 346:23–347:04. Kline acknowledged, however, that he had in his possession responsive documents or communications, and that he understood his obligation to produce those documents to Plaintiffs. *See, e.g.*, Tr. 217:17–25, 219:11–18, 220:05–09, 221:07–11, 225:19–25, 226:24–227:11, 244:09–21, 245:14–25. Kline also testified that he understood his preservation obligations and that Mr. Kolenich had discussed those obligations with him, though Kline had never taken steps to preserve his documents such as backing up his emails or the contents of his phone. Tr. 82:03–17, 91:03–09, 92:04–10, 214:08–215:22, 216:06–217:01, 229:20–230:02 ("He said don't delete – you know, don't delete your stuff, or whatever."), 273:13–16 ("[H]e said things, like, don't delete your stuff, it is part of discovery.").

---

[13] Kline even testified that filling out the Certification Form "would have been super easy." Tr. 239:19–22. Kline also claimed, again falsely, that no one had told him how to turn over his phone for imaging. Tr. 274:15–23 ("I have no idea how to get that started or what I need to do.").

Kline's general explanation for his failure to respond to Plaintiffs' Discovery Requests was that he had not received them, or, if he had received them, he had not read them. *See, e.g.*, Tr. 203:02–203:21, 206:09–21 ("I don't think I went through this e-mail. . . . It looks like a PDF I could have just filled out, which I obviously would have done."), 207:14–23 ("I never seen [*sic*] either of these then, yeah."), 207:24–208:02 ("Q. [The Discovery Requests] were e-mailed to your e-mail address? A. I mean, it says they were. But I didn't read it."). Kline did admit that, on July 1, 2019, Plaintiffs had emailed him all outstanding Discovery Requests, as well as the forms that he had been ordered to complete, but he claimed that he was not sure whether he had received the email and in any case had not read it. Tr. 204:09–25, 205:23–206:04 ("Q. So, you did receive this e-mail? A. I don't know. But if I did, I haven't read it."). When questioned about his representation to the Court during the July 2, 2019, hearing that he *had* read the July 1 email and its attachments, Kline testified that he had been "referring to a different e-mail," and that there had been a "misunderstanding" as to which email was under discussion during the hearing. *See, e.g.*, Tr. 205:04–11, 323:23–324:09, 324:25–325:07, 326:14–25, 328:16–19.[14]

Despite his general claims of ignorance, Kline admitted receiving and reading at least some of Plaintiffs' Discovery Requests as early as January 2018, and acknowledged that Mr. Kolenich had informed him of at least certain of his discovery obligations. *See, e.g.*, 139:20–23, 209:19–210:09, 230:25–231:17, 232:19–23, 233:12–19, 235:20–22, 248:17–21. Kline, however, had no satisfactory explanation for his failure to respond. Instead, he testified that he did not know how

---

[14]     When asked which email Kline had read instead of Plaintiffs' July 1, 2019, email, he was noticeably vague. Tr. 324:04–09 ("[The Court] was referring to Exhibit 11, but I was referring to a different e-mail that was a different court form. I don't know what it was. I would have to go back and look. But it was a different thing I had been sent the day before."). Notably, although Kline referred to a "different thing I had been sent the day before," the only email that Plaintiffs had sent Kline the day before the hearing was the email attaching all outstanding discovery requests (although Plaintiffs also copied Kline on an email to the Court attaching the same email).

to respond, and blamed at turns Mr. Kolenich, Plaintiffs, and even the Court for failing to instruct him on exactly what to do. *See, e.g.*, Tr. 141:21–24, 239:04–07 ("[I] don't know, like, where am I sending this to? Am I responding to this e-mail? Am I sending a postcard? Like, how am I supposed to answer the Interrogatory?"), 250:18–24, 251:19–21, 318:16–23.[15]

### 4. Kline's Belated Completion of the SCA Consent Form and Third-Party Vendor Contract

When pressed by Plaintiffs' counsel during his deposition, Kline completed and signed an SCA consent form enabling Discord to produce his documents. *See* Tr. 279:22–283:20. Kline admitted, however, that he had never submitted the form before the deposition (and certainly not by any of the deadlines set by the Court prior to his deposition). Tr. 287:22–288:04, 289:12–18. His only explanation was that he had never received or seen the form before. Tr. 316:13–16.[16] When confronted with evidence that Plaintiffs *had* previously provided the form to him, he claimed nonsensically, "I didn't even see that this e-mail existed, or I don't remember about this e-mail," and that, although he had been provided the form, "it was attached to – it was attached to something else I hadn't seen." Tr. 289:19–22, 317:07–15.

Kline also testified, as he had told the Court on July 2, 2019, that Discord had emailed him and asked him to comply with discovery: "They asked me if they could send the stuff for discovery, and I e-mailed them back and said yes. And they never e-mailed me back anything. They never – they never sent anything to me." Tr. 159:19–23, 160:25–161:06.[17] Kline testified

---

[15]     At the same time, Kline also admitted that the Requests for Production looked "like a PDF I could have just filled out, which I obviously would have done." Tr. 206:09–24.

[16]     Kline's testimony regarding the Twitter consent forms was similar: he admitted that he had not completed the consents, despite being "more than happy" to do so, because he hadn't "been asked anything or given anything." Tr. 169:20–170:12.

[17]     Kline also claimed that Twitter "sent [him] an e-mail like that, too," or that "somebody forwarded me an e-mail from Twitter with the same idea." Tr. 159:24–160:04.

that he still had these emails, and that he would, within 24 hours after the deposition, locate his emails with Discord and forward them to Plaintiffs. Tr. 161:17–19, 278:14–279:18, 290:02–05. (As described below, Kline was, unsurprisingly, later unable to find these emails.)

Prior to the deposition but three weeks after the deadline imposed by the Court's July 3, 2019, Order, Kline finally signed the Vendor contract via DocuSign. Phillips Decl. ¶ 5 & Ex. B, at 2. (During his deposition, Kline falsely claimed that he signed the contract "a couple days" or "maybe five or six days" after the July 1, 2019, hearing. Tr. 334:18–25, 336:04–09, 341:11–18.)[18] Inexplicably, Kline appeared to testify that he understood signing the DocuSign contract to cover all of his discovery obligations. Tr. 332:04–08 ("I thought that was consenting to all my things."). As Kline admitted, however, this conclusion was "weird," as the contract did not actually ask him, among other steps, to disclose his devices and social media accounts. Tr. 332:09–13.

## V.    The Third Order to Kline

On August 8, 2019, the day after the deposition, Kline appeared for the telephonic hearing ordered by the Court. Hr'g Tr., Aug. 8, 2019, ECF No. 543. Kline represented that:

- He "already ha[d] a new phone set up" and would be "ready to hand this [old] phone in tomorrow" (*i.e.*, on August 9);

- He had looked for the emails that he had exchanged with Discord described above but had been unable to find them;

- Responding to Plaintiffs' Discovery Requests by August 16 was "definitely doable";

- Plaintiffs had "a good phone number and a good email address" at which to contact him; and

- He would provide his new phone number to Plaintiffs' counsel and the Court by August 9, 2019.

---

[18]    When confronted with evidence that he had not signed the contract until August 1, 2019 (after multiple follow-up communications from the Vendor), Kline testified that he thought that he had already signed the contract, but "didn't know it wasn't done" until belatedly reading the Vendor's emails, which had been sent on July 22, 25, and 29. Tr. 337:01–340:13, 341:11–342:02.

*Id.* at 7:13–18, 9:16–25, 13:17–18, 15:04–05, 15:13–17.

On August 8, 2019, in yet another Order to Kline, the Court set the following deadlines:

- By August 9, Kline was to provide his new cell phone number to the Court Clerk's Office and Plaintiff's counsel;

- On or before August 14, Kline was to make his electronic devices and social media account credentials available to the Vendor; and

- On or before August 16, Kline was to respond to the Discovery Requests.

Third Order to Kline.

On August 9, 2019, the Court issued the Memorandum Opinion awarding Plaintiffs attorneys' fees as a sanction against Kline, while continuing to take Plaintiffs' requested evidentiary sanctions under advisement. Mem. Op. 35. Also on August 9, the Vendor followed up on Kline's incomplete Certification Form to request the passwords for his social media accounts. Phillips Decl. ¶ 15 & Ex. J, at 3 (Vendor Email to Kline, Aug. 9, 2019).

## VI.    Kline's Renewed Disappearance from the Litigation

Predictably, Kline missed all three deadlines set by the Court's August 8, 2019, Order. On August 14, 2019, five days late, Kline emailed Plaintiffs' counsel stating that he had "just got [his] new phone up and running" and providing his new phone number. Phillips Decl. ¶ 16 & Ex. K, at 3 (Kline Email to Plaintiffs, Aug. 14, 2019). Also on August 14, 2019, Kline emailed the Vendor claiming he had already "sent out the phone this afternoon" and he was "still working on" his computer (which allegedly he had left in Pennsylvania). Phillips Decl. ¶ 17 & Ex. J, at 3 (Kline Email to Vendor, Aug. 14, 2019). Although the Vendor had previously asked Kline for his social media passwords, Kline did not provide the Vendor any passwords. Phillips Decl. ¶ 17 & Ex. J, at 3. The Vendor responded to Kline, asking him to (1) provide a tracking number for the shipment

containing his phone; (2) provide his passwords for his social media accounts; and (3) ship his computer as well. Phillips Decl. ¶ 18 & Ex. J, at 2. Kline never responded. Phillips Decl. ¶ 19.

On August 19, 2019, Plaintiffs' counsel emailed Kline to note deficiencies in the Certification Form that Kline completed during his deposition—including that the form was missing certain social media accounts and email addresses as well as his passwords—and requested a new, complete version of the form. Phillips Decl. ¶ 20 & Ex. K, at 2 (Plaintiffs Email to Kline, Aug. 19, 2019). Kline never responded. Phillips Decl. ¶ 21.

On August 27, 2019—nearly two weeks late, and without Kline having ever provided the Vendor with tracking information—the Vendor received a mobile device from "Bruce Kline." Phillips Decl. ¶ 22 & Ex. L, at 2 (Vendor Email to Kline, Sept. 5, 2019). On September 5, 2019, the Vendor emailed Kline to request confirmation that this was Kline's device, to request that Kline provide the passcode so that the Vendor could access the phone's contents, and for a third time to request the passwords to Kline's social media accounts. Phillips Decl. ¶ 22 & Ex. L, at 2. Kline never responded. Phillips Decl. ¶ 23.

Kline has also failed to provide Plaintiffs with his answers to Plaintiffs' Discovery Requests, which were first served on Kline in January 2018 and to which Kline's responses were due to Plaintiffs under the most recent Order on or before August 16, 2019. Phillips Decl. ¶ 24.

## ARGUMENT

Kline is, yet again, in willful defiance of "his long overdue discovery obligations." *See* Third Order to Kline. Despite the Court's repeated Orders, the Court's imposition of attorneys' fees, and even the Court's warning that Kline's continued misconduct could result in arrest, Kline continues to ignore the Court's Orders and Plaintiffs' communications with impunity. Kline repeatedly promised during his deposition that, despite having complied with essentially none of his discovery obligations (other than executing the Discord consent form), he "would like to"

comply, and that he intended to do so going forward. *See, e.g.*, Tr. 209:04, 218:03, 219:21, 226:14, 227:14, 228:11, 237:02, 239:25–240:01, 242:15, 245:06, 264:12. Yet, in the seven weeks since Kline's deposition, although Kline has given permission to Discord to disclose his data, Plaintiffs have still received not a single document or discovery response from Kline himself. In addition, although the Vendor has apparently received a device from Kline, it has no ability to access the data on that device without Kline's passcode and account passwords, which he has failed to provide despite numerous communications from the Vendor. There is also no sign of the other devices that Kline's Discord messages and his testimony indicate that he has lied about, concealed, or possibly even destroyed. In other words, despite this Court's repeated Orders, Plaintiffs have no greater access to Kline's documents (other than his Discord posts) today than when this case began almost two years ago.

For the reasons given by the Court in its Memorandum Opinion and given in Plaintiffs' First Sanctions Motion, Kline's deliberate disobedience of the Court's Orders and his contempt for the Court require the imposition of sanctions. In assessing the proper sanctions, the "court must consider: (1) 'whether the non-complying party acted in bad faith'; (2) the kind and degree of prejudice that noncompliance caused its adversary; (3) the need to deter the specific sort of noncompliance; and (4) 'whether [any] less drastic sanctions' would be effective." Mem. Op. 5–6 (alterations in original) (quoting *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc)).[19] Plaintiffs respectfully request that the Court (1) impose a daily fine against Kline for every day he remains in contempt of Court; (2) issue a bench warrant for Kline's arrest and detention until he purges himself of his contempt; (3) deem established the facts listed

---

[19] Sanctions are also appropriate under the similar factors considered in determining whether to sanction parties under the Court's inherent authority. *See Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373–74 (4th Cir. 2013).

in Appendix A; (4) deem authentic any document Plaintiffs have a good-faith basis to believe Kline created; (5) instruct the jury that Kline chose to intentionally withhold his documents and that the jury may draw adverse inferences from that fact; and (6) grant Plaintiffs reasonable expenses, including attorneys' fees. It is abundantly clear that nothing less will induce Kline's compliance.

*First*, as the Court has recognized, Kline's "'continued disregard'" for the Court and its Orders cannot be interpreted "'as anything other than bad faith.'" Mem. Op. 31 (quoting *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 302 (4th Cir. 2011)). The Court has, indeed, "patiently afforded" Kline numerous opportunities over the last two years to comply with his obligations. Mem. Op. 29–30. Yet Kline *still* has essentially produced zero documents to Plaintiffs, despite his many (wholly implausible) excuses for his past deficiencies and his repeated empty promises at his deposition to comply with his obligations going forward. "No one . . . should count on more than three chances to make good a discovery obligation." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1319 (10th Cir. 2011) (Gorsuch, J.). And Kline's testimony under oath—riddled with implausible statements, absurdities, and inconsistencies that can only realistically be regarded as lies—makes even clearer the depth of Kline's "bad faith." *Belk*, 269 F.3d at 348.[20]

*Second*, Kline's "'repeated and ongoing discovery misconduct' so far has caused 'significant procedural . . . prejudice' to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner." Mem. Op. 33 (alteration in original) (quoting *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014)).

---

[20]    As the Court observed, Kline was "active on social media—even commenting about this litigation—when [he] should have been participating in discovery and other pretrial proceedings," providing yet further evidence of Kline's bad faith. Mem. Op. 30 & n.11. At his deposition, Kline admitted that he had used each of the Twitter user names that were posting messages during the course of litigation, including "Eli Mosley" and "Sheli Shmosley." Tr. 162:16–20, 166:09–167:10.

This prejudice mounts as, day by day, plaintiffs are forced to expend ever-greater time, effort, and resources in pursuing discovery from Kline.

*Third*, as the Court has also remarked, "[S]talling and ignoring the direct orders of the court with impunity is misconduct that must obviously be deterred." Mem. Op. 31 (quoting *Young Again Prods.*, 459 F. App'x at 303) (internal quotation marks omitted). Clear evidence of the need for deterrence can be found in recent comments by another Defendant in this litigation. In a filing to the Court responding to his counsel's request to withdraw, Defendant Christopher Cantwell asserted: "I've done my best to cooperate with these proceedings, just like I cooperated with law enforcement before and after the events in dispute. Many of my codefendants blew off these proceedings to avoid finding themselves in this position, and ***perhaps they will be proven to have had the better idea.***" ECF No. 560 (emphasis added). To allow Kline to disappear from this litigation without holding him to account would encourage other Defendants to engage in the same outrageous misconduct, and confirm that Kline did, indeed, have the "better idea."

*Fourth*, "less drastic sanctions" than those requested here—Kline's arrest and detention, a daily fine for every day Kline remains in non-compliance with his obligations, evidentiary sanctions, and attorneys' fees—plainly would be ineffective. *See Belk*, 269 F.3d at 348.

Only the Court's previous warning that Kline would be arrested if he failed to comply with the Court's prior Orders was enough to cause Kline to participate, though fleetingly, in the litigation. *See* Mem. Op. 27. Kline has now yet again "failed . . . to comply" with the Court's Orders: he is again entirely ignoring Plaintiffs' communications; he has failed to take any steps to enable Plaintiffs to access his documents on his device; and he has failed to respond to Plaintiffs' Discovery Requests. *See id.* Therefore, the Court should follow through on its prior warning and "immediately issue a bench warrant directing the USMS to arrest [Kline], transport him to this

judicial district, and hold him in custody until he purge[s] himself of civil contempt."[21]  *See id.*;

*see, e.g.*, *United States v. Carter*, No. 3:16-CV-00673-FDW-DCK, 2018 WL 4387635, at *2 (W.D.N.C. Sept. 14, 2018) (bench warrant issued where party failed to appear at hearing); *In re Reid*, No. 15-00195-DD, 2016 WL 6989748, at *1 (Bankr. D.S.C. Nov. 28, 2016) (bench warrant issued where party failed to comply with Court orders); *Reaves v. Rhodes*, No. CA 4:10-125-TLW-TER, 2011 WL 826358, at *2 (D.S.C. Jan. 26, 2011) (bench warrant issued where party failed to respond to Court orders to show cause) (subsequent history omitted).

A daily fine for every day during which Kline continues to disobey the Court's Orders is also appropriate.  *See In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) ("The appropriate remedy for civil contempt is within the court's broad discretion."); *ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 449, 453 (E.D. Va. 2013) (sanctions appropriate "to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance").  Such a fine should be made retroactive to August 16, 2019, the most recent deadline with which Kline has failed to comply.

Plaintiffs further seek the evidentiary sanctions previously requested in the First Sanctions Motion.  As the Court has already found, "evidentiary sanctions—including the adverse inference and an order deeming some of [Plaintiffs'] proposed facts established—would be available, and certainly could be appropriate in this case, if Kline . . . fail[s] to produce the discovery from this point forward. . . .  Should [Kline] not follow through [with adherence to the Court's Orders], the Court will likely have run out of options other than to impose significant evidentiary sanctions." Mem. Op. 34–35.  Specifically, Plaintiffs request that the Court deem the facts listed in Appendix

---

[21]     All of the requirements for the Court to treat Kline's disobedience as contempt of Court pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii) are met.  *See, e.g.*, *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004).

A established for purposes of this action; deem "authentic" for purposes of satisfying Fed. R. Evid. 901 any document Plaintiffs have a good-faith basis to believe were in fact created by Kline, including, but not limited to, all documents from the social media accounts listed in Appendix A; and instruct the jury that Kline chose to intentionally withhold his documents and that the jury may draw adverse inferences from that fact, including that Kline chose to withhold such documents because he was aware that such documents contained evidence that Kline conspired to plan racially motivated violence at the Unite the Right event.

Finally, Plaintiffs request an award of their continued expenses for their ongoing effort to pursue discovery from Kline, including attorneys' fees and costs.

## CONCLUSION

As Kline's misconduct has repeatedly demonstrated, he is not to be trusted to participate in good faith in this litigation. The Court should issue the strongest possible sanctions to make clear, in no uncertain terms, that such behavior cannot and will not be tolerated. For these reasons, Plaintiffs respectfully request that the Court grant this Motion for Sanctions against Kline in its entirety, order the requested relief, and order such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

25

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

J. Benjamin Rottenborn (VSB 84796)
Erin B. Ashwell
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone:  (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
eashwell@woodsrogers.com

*Counsel for Plaintiffs*

## APPENDIX A

I.      **Facts to Be Deemed Established**

Plaintiffs respectfully request that the following facts be established for purposes of this action:

1.      Defendant Kline was a member of Identity Evropa from April 2017 through at least August 2017.

2.      Defendant Kline was one of the leaders of Identity Evropa from April 2017 through at least August 2017.

3.      Defendant Kline entered into an agreement with one or more co-conspirators to plan the Unite the Right event that took place in Charlottesville, Virginia on August 11 and 12, 2017.

4.      Defendant Kline entered into an agreement with one or more co-conspirators to engage in racially motivated violence in Charlottesville, Virginia on August 11, 2017.

5.      Defendant Kline entered into an agreement with one or more co-conspirators to engage in racially motivated violence at the Unite the Right event in Charlottesville, Virginia on August 12, 2017.

6.      Defendant Kline was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017 in Charlottesville, Virginia.

7.      It was reasonably foreseeable to Defendant Kline and intended by him that coconspirators would commit acts of racially motivated violence and intimidation at the torchlight event in Charlottesville, Virginia on August 11, 2017.

8.     It was reasonably foreseeable to Defendant Kline and intended by him that coconspirators would commit acts of racially motivated violence and intimidation at the Unite the Right event in Charlottesville, Virginia on August 12, 2017.

9.     It was reasonably foreseeable to Defendant Kline and intended by him that a coconspirator would engage in racially motivated violence by intentionally driving a car into a crowd of counter-protestors on August 12, 2017.

10.     Defendant Kline committed multiple overt acts in furtherance of the conspiracy he entered into to commit racially motivated violence at the Unite the Right event in Charlottesville.

11.     Defendant Kline attended the torchlight march on August 11, 2017 and committed acts of intimidation and violence in furtherance of the conspiracy.

12.     Defendant Kline attended the Unite the Right event on August 12, 2017 and committed acts of intimidation and violence in furtherance of the conspiracy.

13.     After the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017, Defendant Kline ratified the racially motivated violence that occurred at the event.

## II.     Documents to Be Deemed Authentic

Plaintiffs respectfully request that all documents Plaintiffs have a good-faith basis to believe were in fact created by Defendant Kline be deemed "authentic" for purposes of satisfying Rule 901 of the Federal Rules of Evidence.  In particular, Plaintiffs have a good-faith basis to believe that the following social media accounts, identified by the platform name, followed by the handle (or username), belong to Defendant Kline.  Plaintiffs respectfully request that all documents from the following social media accounts be deemed "authentic" for purposes of satisfying Rule 901 of the Federal Rule of Evidence:

1.     Discord - Eli Mosley#5269

2.      Discord - Sayer

3.      Discord - Sayer#5269

4.      YouTube - Eli Mosley

5.      Facebook - Eli Mosley

6.      Twitter - @EliMosleyIE

7.      Twitter - @ThatEliMosley

8.      Twitter - @EliMosleyOH

9.      Twitter - @EliMosleyIsBack

10.     Twitter - @Sheli_Shmosley

11.     Twitter - @Eli_Mosley_

12.     Gab - @EliMosley

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Christopher Cantwell, Robert Ray, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

I further hereby certify that on September 26, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Elliot Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

/s/ Robert T. Cahill
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*