Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 1 of 78   Pageid#: 7171

Sines, et al. vs. Kessler, et al. - 3:17CV00072      1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF VIRGINIA
 2                     CHARLOTTESVILLE DIVISION


 3     ****************************************************************

 4     ELIZABETH SINES, et al.,      CIVIL CASE NO.: 3:17CV00072
                                     OCTOBER 18, 2019
 5                                   HARRISONBURG, VIRGINIA
              Plaintiffs,            TELEPHONIC STATUS CONFERENCE
 6        vs.

 7     JASON KESSLER, et al.,        Before:
                                     HONORABLE JOEL C. HOPPE
 8                                   UNITED STATES MAGISTRATE JUDGE
              Defendants.            WESTERN DISTRICT OF VIRGINIA
 9
       ****************************************************************
10     APPEARANCES:

11     For the Plaintiffs (By telephone):

12          MICHAEL LOW BLOCH, ESQUIRE
            KAPLAN HECKER & FINK LLP
13          350 Fifth Avenue, Suite 7110
            New York, New York 10118
14          212-763-0883
            mbloch@kaplanhecker.com
15
            JESSICA E. PHILLIPS, ESQUIRE
16          BOIES, SCHILLER FLEXNER, LLP
            1401 New York Avenue, NW
17          Washington, DC  20005
            202-237-2727
18          jphillips@bsfllp.com

19


20     _____
21                    Mary J. Butenschoen, RPR, CRR
                      210 Franklin Road, S.W., Room 540
22                       Roanoke, Virginia  24011
                          540-857-5100, Ext. 5312
23


24     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
       PRODUCED BY COMPUTER.
25
```

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 2 of 78   Pageid#: 7172

Sines, et al. vs. Kessler, et al. - 3:17CV00072          2

```
 1    APPEARANCES (Continued):

 2         ALAN LEVINE, ESQUIRE
           COOLEY LLP
 3         1114 Avenue of The Americas
           46th Floor
 4         New York, New York 10036
           212-479-6260
 5         alevine@cooley.com

 6
           ERIN BOYD ASHWELL, ESQUIRE
 7         WOODS ROGERS PLC
           PO Box 14125
 8         Roanoke, VA 24038-4125
           540-983-7725
 9         eashwell@woodsrogers.com

10    For the Defendants (By Telephone):

11         JAMES EDWARD KOLENICH, ESQUIRE
           KOLENICH LAW OFFICE
12         9435 Waterstone Blvd., Suite 140
           Cincinnati, Ohio  45249
13         513-444-2150
           jek318@gmail.com

14
15         JOHN A. DINUCCI, ESQUIRE
           LAW OFFICE OF JOHN A. DINUCCI
16         8180 Greensboro Drive, Suite 1150
           McLean, Virginia  22102
17         703-821-4232
           dinuccilaw@outlook.com

18
19         BRYAN JEFFREY JONES, ESQUIRE
           BRYAN J. JONES, ATTORNEY AT LAW
20         106 W. South Street, Suite 211
           Charlottesville, Virginia  22902
21         540-623-6952
           bryan@bjoneslegal.com

22
23         DAVID LEON CAMPBELL
           Duane Hauck Davis & Gravatt
24         100 West Franklin Street, Suite 100
           Richmond, Virginia  23220
25         804-644-7400
           dcampbell@dhdglaw.com
```

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 3 of 78   Pageid#: 7173

Sines, et al. vs. Kessler, et al. - 3:17CV00072        3

1    APPEARANCES (Continued):

2         WILLIAM EDWARD REBROOK, IV, ESQUIRE
          The ReBrook Law Office
3         6013 Clerkenwell Court
          Burke, Virginia  22015
4         571-215-9006
          edward@rebrooklaw.com

5

6         VANGUARD AMERICA
          c/o DILLON HOPPER
7         383 Hazzard Street
          Scottsburg, Indiana  47170

8

9         CHRISTOPHER CANTWELL, PRO SE
          103 S. Lincoln Street, #1
10        Keene, New Hampshire  03431

11

12        MATTHEW HEIMBACH, PRO SE
          3099 Buchanan Road, SE
          #411
13        Cleveland, Tennessee 37323
     ///

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 4 of 78   Pageid#: 7174

Sines, et al. vs. Kessler, et al. - 3:17CV00072        4

1    (3:04 p.m.)

2              THE COURT:  Hi, this is Joel Hoppe.  Who is on the

3    line for the plaintiffs?

4              MR. BLOCH:  Judge, this is Michael Bloch from Kaplan

5    Hecker & Fink on behalf of the plaintiffs.

6              MR. LEVINE:  And Allen Levine from Cooley on behalf

7    of the plaintiffs, Your Honor.

8              MS. PHILLIPS:  Your Honor, Jessica Phillips from

9    Boies Schiller Flexner is also on the line for plaintiffs.

10             MS. ASHWELL:  Erin Ashwell from Woods Rogers also

11   for plaintiffs.

12             THE COURT:  Good afternoon, you-all.  And then,

13   let's see, Mr. Kolenich, are you on the phone?

14             MR. KOLENICH:  Yes, I'm here.

15             THE COURT:  All right.  Let's see, and you're here

16   for Mr. Kessler and Damigo, Identity Evropa, Matthew Parrott,

17   and Traditionalist Workers Party, and then there are motions

18   to withdraw for Mr. Cantwell and Mr. Ray?

19             MR. KOLENICH:  Yes, sir.  Mr. Cantwell has actually

20   affirmatively fired me at this point.

21             THE COURT:  I did see that email, all right.  But

22   those are the folks you're here on behalf of; is that right?

23             MR. KOLENICH:  Yes, sir.

24             THE COURT:  Mr. DiNucci, are you here on the phone?

25             MR. DINUCCI:  Yes, I am, Your Honor.

Case 3:17-cv-00072-NKM-JCH  Document 581  Filed 10/23/19  Page 5 of 78  Pageid#: 7175

Sines, et al. vs. Kessler, et al. - 3:17CV00072      5

1          THE COURT:  Good afternoon.  Do we have anybody on

2     the line for Mr. Fields?

3          MR. CAMPBELL:  Yes, Your Honor, Dave Campbell.

4          THE COURT:  Good afternoon.  Mr. Jones, are you on

5     the phone?

6          MR. JONES:  Yes, Your Honor, I am.

7          THE COURT:  All right.  And then Mr. ReBrook?

8          MR. REBROOK:  Yes, sir.

9          THE COURT:  All right.  Good afternoon to you.

10          And then let's see, do we have Elliot Kline on the

11     phone?

12          All right.  How about Matthew Heimbach?

13          MR. HEIMBACH:  Present and accounted for, Your

14     Honor.

15          THE COURT:  All right, good afternoon.  And is

16     anybody else on the line?  I know we have Joyce Jones, is our

17     courtroom deputy who is recording this call, but is anybody

18     else on the line?

19          THE REPORTER:  Your Honor, this is Mary Butenschoen,

20     the stenographer court reporter taking the phone call.

21          MS. ASHWELL:  Your Honor, this is Erin Ashwell.  We

22     have an intern who has been helping on the case, and I was

23     letting him sit in.

24          THE COURT:  Okay, that's fine.  Any other parties on

25     the phone?  All right.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 6 of 78   Pageid#: 7176

Sines, et al. vs. Kessler, et al. - 3:17CV00072        6

1          Well, we have a number of things that I want to take

2     up today.  At the conclusion of addressing all the different

3     motions and things, I do want to hear from you-all about the

4     discovery schedule and setting up some deadlines and -- so

5     this case can have another schedule and it can move forward to

6     its conclusion.

7          But the first thing I wanted to take up are the

8     motions from Mr. Kolenich to withdraw as counsel for Mr. Ray

9     and Mr. Cantwell.  And Mr. Kolenich, I understand that

10    Mr. Cantwell has terminated your representation and also that

11    of Mr. Woodard; is that correct?

12          MR. KOLENICH:  Yes, that's correct.

13          THE COURT:  I think that your motion to withdraw was

14    otherwise well taken for him.  So I -- but it sounds -- I'll

15    grant it, but it also sounds like it may be mooted.  He has

16    terminated your representation anyway.

17          And then for Mr. Ray, it sounds like he just

18    hasn't -- has stopped communicating with you?

19          MR. KOLENICH:  That's correct, Your Honor.

20          THE COURT:  And that's been over some lengthy

21    period?

22          MR. KOLENICH:  Several months at this point.

23          THE COURT:  Well, I also think that that's grounds

24    for withdrawing, too.  If there has just been a complete

25    breakdown of communication between an attorney and his client,

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 7 of 78   Pageid#: 7177

Sines, et al. vs. Kessler, et al. - 3:17CV00072        7

1    that's really a principal reason for withdrawing.

2          Would anyone on the plaintiff's behalf have anything

3    to say as to those motions?

4          MR. BLOCH:  Judge, this is Mike Bloch.  We don't

5    oppose the motions.  The only thing I would ask is that we

6    make sure we have working recent contact information for

7    either or both the defendants that Mr. Kolenich still has.

8    And also, it may be helpful for the Court to notify

9    Mr. Cantwell and Mr. Ray of their obligations to the Court

10   even if they are unrepresented.

11         THE COURT:  Well, I will.  And they are going to be

12   included in subsequent orders that the Court issues, and, of

13   course, those orders will be forwarded to them.  And

14   Mr. Kolenich, I would ask you to pass on contact information

15   for Mr. Ray and Mr. Cantwell to plaintiff's counsel and also

16   to the clerk's office.  And that's something that does not

17   need to be made public on the docket, but the clerk's office

18   needs to have that information so that it can contact Mr. Ray

19   and Mr. Cantwell.

20         MR. KOLENICH:  Will do, Your Honor.  I'll do it

21   today.

22         THE COURT:  And I'm also going to grant the motion

23   to extend the time for Mr. Ray and Mr. Cantwell to answer the

24   amended complaint.  I'll give them 14 days from the date that

25   the order is entered.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 8 of 78   Pageid#: 7178

Sines, et al. vs. Kessler, et al. - 3:17CV00072         8

1              All right.  The plaintiffs have filed, a number of

2      months ago, there's a motion to enjoin Mr. Cantwell from

3      making certain comments, and that motion has been briefed,

4      supplemented, plaintiffs filed today, and that is something

5      I'm going to take up in a written opinion and order.  And

6      counsel, I will try and get that out shortly.

7              MR. BLOCH:  Thank you very much, Judge.

8              THE REPORTER:  Who was that, please?

9              THE COURT:  I think that was Mr. Bloch; is that

10     right?

11             MR. BLOCH:  That is Mr. Bloch.  I don't know if

12     anybody else was trying to chime in.

13             THE COURT:  I think that was the court reporter just

14     asking, and I should remind everybody to identify himself or

15     herself when you speak.

16             THE REPORTER:  Thank you.

17             THE COURT:  What I'd like to do now is just go ahead

18     and take up -- get some idea about each of the status of

19     discovery production from each of the defendants.

20             There is a motion to compel that the plaintiffs have

21     filed regarding NSM.

22             There is also a motion for sanctions regarding

23     Mr. Kline, who is not on the phone.

24             And then Mr. Bloch sent an email to the Court

25     yesterday and cc'd all the parties on it.  And that email

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 9 of 78   Pageid#: 7179

Sines, et al. vs. Kessler, et al. - 3:17CV00072          9

1    outlines where discovery is at this point, where the responses

2    are from the different defendants.

3           And so I want to hear from each of the parties and

4    just go through -- go through the information that Mr. Bloch

5    has outlined and just make sure that everyone is on the same

6    page as to what is outstanding, and then I am going to set

7    some deadlines for -- for those responses.

8           But I want to go ahead and take up the motion to

9    compel NSM.  And Mr. Bloch, is there anything else -- and let

10   me say I'm going to issue written orders on the motion to

11   compel NSM and the motion for sanctions for Mr. Kline.  But

12   Mr. Bloch, is there anything else that the plaintiffs would

13   want to say as to the motion to compel?

14           MR. BLOCH:  Thank you, Judge.  This is Mike Bloch.

15           With respect to the NSM motion, it's my

16   understanding, although, obviously, I'll let Mr. ReBrook speak

17   for himself, that he is in fact consenting to our deposing

18   Mr. Colucci exclusively on the issue of documents and

19   discovery, notwithstanding the motion that -- the response

20   that he filed this morning.  And I just wanted to clarify

21   that.

22           THE COURT:  Mr. ReBrook?

23           MR. REBROOK:  Judge, yes.  This is Edward ReBrook.

24   Mr. Bloch is correct.  I have no problem with any sort of

25   court order ordering Mr. Burt Colucci to do depositions on any

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 10 of 78   Pageid#: 7180

Sines, et al. vs. Kessler, et al. - 3:17CV00072      10

1    subject, really.

2         THE COURT:  All right.  I think there are some other

3    issues that you raised in the motion as well, Mr. Bloch.

4         MR. BLOCH:  Right.  Judge, we did -- we also did

5    request attorney's fees.  I think at this time -- I spoke with

6    Mr. ReBrook this morning.  I do understand he is consenting

7    and willing to make Mr. Colucci available for a deposition,

8    which we appreciate.  I think in light of that and the fact

9    that our interest in this case is primarily to get the

10   information and move this case along to trial, I think we can

11   withdraw our request for attorney's fees on that motion.

12        THE COURT:  Okay.  And do you think at this time

13   that having Mr. Colucci sit for a deposition, that that will

14   address the other concerns that you raised in the motion and,

15   essentially, trying to get more information about NSM accounts

16   and devices?  Are you seeking additional relief on that or do

17   you think that the deposition is where you -- is sufficient at

18   this point?

19        MR. BLOCH:  Judge, I think the deposition will be a

20   good starting point to figure out what is out there.  I do

21   have some concerns that we have no documents at all from NSM.

22   And I understand that Mr. Schoep used to be in charge of NSM

23   and has made some documents available to the vendor, albeit

24   not to us.

25        So as it currently stands two years into the case,

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 11 of 78   Pageid#: 7181

Sines, et al. vs. Kessler, et al. - 3:17CV00072      11

1    we do not have a page of documents from any member of NSM,

2    which I think is a big concern.

3           I think some of the comments that were made in the

4    filing that was filed this morning on behalf of NSM made

5    reference to there likely not being anymore documents and

6    emails out there given -- given how long it's been since the

7    incident.  Obviously, it's our position that that -- those

8    documents should have been preserved, that custodian should

9    have been found, and should have produced documents.

10          So I guess I would say -- I think being able to take

11   Mr. Colucci's deposition will hopefully be illuminating for us

12   in terms of what other custodians may be out there, but I

13   can't say I have high hopes that it will necessarily result in

14   a tremendous amount of documents at this point.  So I think

15   it's conceivable there may be additional litigation over that.

16   But I do think it's a helpful start.

17          THE COURT:  And Mr. Bloch, do you still have

18   concerns about Mr. ReBrook, essentially, focusing on

19   Mr. Schoep in his representation of NSM and not having a

20   broader view of who his client is or is that something that

21   you think that you-all have reached an understanding on?

22          MR. BLOCH:  I -- I don't think we've reached an

23   understanding on that.  I'm not -- other than Mr. Colucci,

24   I -- who I understand is not particularly cooperative with

25   Mr. ReBrook, it's not my impression that there has been anyone

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 12 of 78   Pageid#: 7182

Sines, et al. vs. Kessler, et al. - 3:17CV00072        12

1    within that organization, anyone else has been contacted.

2              So I -- I guess I do still have concerns about

3    whether we will get sufficient cooperation from NSM to be able

4    to get documents from them and have their participation going

5    forward.

6              THE COURT:  All right.  And I know you identified

7    Brian Culpepper as somebody who may have exercised control

8    over NSM.  Is that someone that you're -- that you're

9    interested in trying to depose or get further information

10   from?

11             MR. BLOCH:  Yes, absolutely.

12             THE COURT:  All right.  Mr. ReBrook, are there

13   other -- well, let me say this:  I think that -- I think your

14   view of who the client is for NSM is overly narrow in just

15   focusing on Mr. Schoep.  I think NSM, to the extent that it is

16   an organization, the folks who are acting on behalf of NSM,

17   and that doesn't mean every member, but folks who have some

18   sort of authority over NSM and who had some control over it,

19   those are your clients as well when you're representing NSM.

20   So I do think that you have a responsibility to conduct a

21   reasonable investigation to determine who those folks are,

22   determine what -- what discovery they may have and -- and to

23   provide that information to the plaintiffs.

24             MR. REBROOK:  Your Honor, if I may, this is Edward

25   ReBrook.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 13 of 78   Pageid#: 7183

Sines, et al. vs. Kessler, et al. - 3:17CV00072      13

1              THE COURT:  Please.

2              MR. ReBROOK:  I contacted the vendor, Mr. Ken Kim,

3    back in August to make sure that we were in complete

4    compliance.  And he wrote back to me just yesterday saying

5    that he had apparently missed the email from me.

6              But my client uploaded all of the nonprivileged

7    documents that were imaged from his phone, his computer,

8    whatever else he submitted, on September 18.  But we didn't

9    learn until just yesterday that these documents would be

10   automatically sent to the plaintiffs once they have been

11   marked as reviewed.  All documents have since been marked as

12   reviewed, and it's hundreds if not thousands of documents that

13   have been turned over.

14             THE COURT:  Mr. ReBrook, are these the documents

15   from Mr. Schoep that you talked about?

16             MR. REBROOK:  Yes.

17             THE COURT:  In an email you identified there was a

18   laptop computer and Twitter and websites and so forth?

19             MR. ReBROOK:  That's correct, Your Honor.

20             I mean, If we need to put them in a zip drive, I

21   will do that.  I'm just not sure what else needs to happen.

22   We've talked to Mr. Kim and followed the procedure, and if

23   they are, indeed, automatically sent to the plaintiffs, that

24   should have happened.

25             THE COURT:  All right.  Mr. Bloch, what is your take

1    on this?

2         MR. BLOCH:  Judge, my understanding is that that's

3    with reference to Mr. Schoep's documents exclusively, and it's

4    again my impression that Mr. Schoep actually was careful to

5    only produce documents on behalf of himself and not documents

6    on behalf of NSM, which I think --

7         I -- and I accept fully Mr. ReBrook's representation

8    that those -- that there was a delay on the vendor's end, but

9    I still think that leaves us with nothing with respect to NSM.

10   And -- and I think -- you know, I think it's clear that

11   Mr. ReBrook has an obligation to do a reasonable investigation

12   of NSM to see who within NSM has -- is a custodian of

13   responsive documents, and I don't think that has happened, and

14   I don't think that would be cured by any documents we received

15   from Mr. Schoep's production.

16        MR. REBROOK:  If I may, Your Honor, this is Edward

17   ReBrook again.  I have spent months attempting to reach out to

18   these people, whichever names I was able to find.

19        THE COURT:  Who were they?

20        MR. REBROOK:  I have been unable to reach Mr. Burt

21   Colucci, who is currently the head of the NSM Corporation.

22   The NSM that was an entity during the Charlottesville rally

23   was dissolved earlier this year, and Mr. Colucci is now in

24   charge of the NSM Corporation that's now registered in

25   Florida.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 15 of 78   Pageid#: 7185

Sines, et al. vs. Kessler, et al. - 3:17CV00072      15

1          I completely consent to him being subpoenaed, being

2    deposed, but he has flat out said to me that he will not -- he

3    will not provide anything at all without a court order.  I

4    don't know another way to pressure him to do it.  I mean, he's

5    the only --

6          THE COURT:  Have you passed on -- hold on.

7          Have you passed on any of the orders that I've

8    entered in this case directing the parties to comply with

9    their discovery obligations?  I mean, there have been multiple

10   orders.

11         MR. REBROOK:  Yes, but the position that he has

12   given to me is that because he's not a named plaintiff -- or

13   he's not a named defendant and his organization is different

14   than the NSM who was around during the Charlottesville

15   incident that he would require a subpoena to him personally in

16   order to comply.

17         And I've just -- originally I was given the

18   impression that he would be cooperative with me, but

19   apparently he's not being cooperative.  So I -- I just don't

20   know how else to make the guy do what I want him to do.  It's

21   been very difficult getting him to answer the phone or emails

22   other than to tell me I am not going to give you any

23   information without a court order.

24         THE COURT:  But he's agreeing that he's going to sit

25   for a deposition?

1              MR. REBROOK:  If he is given -- if he is ordered to

2     do so and he is subpoenaed, yes, Your Honor.

3              THE COURT:  All right.  Well, there will be a court

4     order directing that.  That will come from this hearing.

5              MR. BLOCH:  Judge, I'm sorry to interrupt.  This is

6     Mike Bloch.

7              I want to clarify one point, which is that,

8     obviously, we sued NSM in October of 2017.  And somebody at

9     that point had an obligation to reach out to them, direct them

10    to preserve documents, conduct a reasonable investigation.  It

11    probably would have started with Mr. Schoep who was in charge

12    at the time.  Mr. Schoep remained, as I understand it, in

13    charge of the organization until March of 2019.

14             So there was about a year and a half during which

15    time some -- there was an obligation on behalf of that

16    defendant to preserve documents, figure out who had documents,

17    and produce documents.  It appears that that didn't happen,

18    which I think with respect to that particular defendant it's

19    a, frankly, colossal oversight, and it leaves us in a position

20    two years later where maybe we'll turn up some documents.

21    But, frankly, probably we won't, which is why I say that I

22    think starting with Mr. Colucci is a good start.  But I still

23    think -- notwithstanding the fact that this is late, I think

24    it would be likely ineffective.

25             I still think that some attorney, frankly, needs to

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 17 of 78   Pageid#: 7187

Sines, et al. vs. Kessler, et al. - 3:17CV00072      17

1    conduct a reasonable investigation to figure out who within

2    the organization has documents.  And the fact that we're two

3    years into the case and that appears to have never happened is

4    deeply troubling.

5            THE COURT:  Hold on a second, Mr. ReBrook.  Hold on

6    a second.  Have those people been identified in discovery

7    requests or initial disclosures, people who may have documents

8    on behalf of NSM?  It seems like that should have been done

9    some time ago.

10           MR. REBROOK:  I'm sorry, are you asking me, Your

11   Honor?  Edward ReBrook?

12           THE COURT:  Either one of you.

13           MR. REBROOK:  I have attempted to contact everyone

14   that I could find.  Obviously, my main point of contact, the

15   only person who has been consistently cooperating with me

16   answering the phone, answering emails, has been Mr. Schoep.

17           I have had a number of communications with Mr. Burt

18   Colucci, but there haven't been very many.  He doesn't answer

19   the phone or answer emails with nearly the regularity that

20   Mr. Schoep does.  But I have told him what is expected of him,

21   and his reply was, specifically, that he would not provide

22   anything or sit for a deposition unless he was ordered to do

23   so.  But he is aware that he is not to be destroying documents

24   or anything of that kind.

25           MR. BLOCH:  Judge, if I may.  This is Mike Bloch.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 18 of 78   Pageid#: 7188

Sines, et al. vs. Kessler, et al. - 3:17CV00072       18

1          There's no reason that Mr. Schoep can't still be a

2     source of information for who within the NSM has responsive

3     documents.  He was in charge of the organization for, as I

4     understand it, 20-some years and left it in March.

5          So it seems -- his leaving the organization I think

6     doesn't -- certainly doesn't eliminate the information he's

7     got about it, and it doesn't, I think, absolve NSM with the

8     responsibility of figuring out who has documents.  And

9     frankly, Mr. Schoep probably knows pretty well.

10          THE COURT:  I agree with that, and that should have

11     happened sometime last year that that information should have

12     been provided.

13          So Mr. ReBrook, if Mr. Schoep hasn't identified who

14     at NSM would have discoverable information I'm going to order

15     him to do that.  Individually as a party, but also in whatever

16     capacity he served with NSM.  I think that's his obligation,

17     and so that will be part of the order as well.

18          MR. REBROOK:  Understood, Your Honor.  May I ask a

19     question?

20          THE COURT:  Sure.

21          MR. REBROOK:  I know that some of the individuals

22     that are actually named defendants in this lawsuit were at one

23     point or another members of the NSM.  So like Mr. Heimbach,

24     for instance.  Am I now representing him as well?

25          THE COURT:  Well, you need -- you need to do your

1    own research on that.  What I said earlier is that it's not

2    every member of the NSM, but it's really the control group,

3    the people that had authority to act on behalf of NSM.

4           But something that Mr. Bloch identified in their

5    filing is that there's a list of national officers and

6    departments.  That should be something that at least I would

7    think would be a start.  There are a number of people named in

8    there.  Mr. Colucci is one of them.

9           MR. REBROOK:  Mr. Colucci actually has provided -- I

10   believe it was filed yesterday.  He's provided a list of names

11   of persons that are the officers within NSM.  That's been

12   uploaded into the Epic -- the vendor's system.  And I will --

13   I will continue to reach out to these people.

14          THE COURT:  All right.  And Mr. ReBrook, in your

15   filing from I think earlier today you included certification

16   that has maybe 20 or so Gmail accounts that are various

17   derivations of NSM.

18          Is that something, a disclosure, that you made today

19   to the vendor?

20          MR. REBROOK:  I'm sorry, Your Honor.  I didn't

21   understand the question.

22          THE COURT:  It's filed at 575-1.  It's the

23   certification of various social media accounts.  They look

24   like NSM accounts through Gmail.

25          MR. REBROOK:  Yes.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 20 of 78   Pageid#: 7190

Sines, et al. vs. Kessler, et al. - 3:17CV00072      20

1          THE COURT:  Is that a certification that you just

2    made today to the vendor?

3          MR. REBROOK:  It's difficult for me to answer that,

4    Your Honor, because while I fully intended for that to be

5    submitted to the vendor, I did not actually do that.  My -- my

6    paralegal did that.  But yes, that's all information I fully

7    intended on sharing with the plaintiffs.

8          THE COURT:  And were there also credentials passed

9    along or is it your intention to --

10          MR. REBROOK:  I believe that there were.  And if

11    there weren't, I'll get them.

12          THE COURT:  All right.  Mr. Bloch, anything else on

13    the motion to compel for NSM?

14          MR. BLOCH:  No, Judge, I think that's covers it.

15    Thank you.

16          THE COURT:  All right.  The motion for sanctions of

17    Mr. Kline, Mr. Kline is not on the phone today, but I -- but I

18    think that your request for relief has been laid out, and I

19    think the record is pretty clear as to that -- as to that

20    motion.  So I think that's something that I can just address

21    in an order.

22          MR. BLOCH:  Thank you, Judge.  I appreciate that.  I

23    do think it is all laid out in the various submissions on the

24    topic.

25          THE COURT:  All right.  What I'd like to do next is

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 21 of 78   Pageid#: 7191

Sines, et al. vs. Kessler, et al. - 3:17CV00072      21

1   to just -- Mr. Bloch, I think we can use your email from

2   yesterday as a starting point for discussing what discovery is

3   still outstanding.  Then we want to make sure that all of the

4   parties are on the same page about what is required, and we're

5   going to set some deadlines for when this discovery needs to

6   be complete.

7          Mr. Hopper is not on the phone, right?  And there's

8   nobody for Vanguard America?

9          MR. BLOCH:  I think that's right, Judge.

10          THE COURT:  All right.  And Mr. Bloch, is it still

11   your understanding that there's some account credentials that

12   are missing for Vanguard America?

13          MR. BLOCH:  It is still my understanding, Judge.  We

14   still have received nothing from them.  I will say the one

15   update is that we did take the deposition of Thomas Ryan

16   Rousseau this week.  I will note a couple things about that

17   deposition.  Number one, he made clear from the beginning that

18   he was not there as a representative of Vanguard America.  So

19   I -- I do think to the extent the point of that deposition as

20   well as the deposition of Mr. Hopper, that being to discover

21   where Vanguard America keeps its documents, I think was not

22   satisfied because I don't think Mr. Rousseau did anything to

23   contact anyone else within the organization to figure out who

24   had responsive documents.

25          Secondly, he in various ways made fairly clear that

1    he's unlikely to have -- he personally is unlikely to have

2    many, if any, responsive documents, either.  A number of his

3    electronic devices have been destroyed since the litigation

4    began, and he noted that each of his -- immediate counsel were

5    set such that there was an automatic delete function that

6    deleted any content every 12 hours.

7          So I think we have not -- in terms of actually

8    receiving any documents from Vanguard America or discovering

9    where we might find them, I don't think we've made much

10   progress, and I think there's an equally troubling record of

11   spoliation and destruction of documents.

12         THE COURT:  It sounds like there's some background

13   noise.  Whoever is contributing to that, will you put your

14   phone on mute, please?

15         All right.  Mr. Bloch, for Vanguard America, I know

16   there's a question of -- it's an unrepresented entity at this

17   point, and there's some question about who -- who is

18   responsible for Vanguard America.

19         Have you made any headway on that?

20         MR. BLOCH:  Well, Judge, I think Mr. Hopper still

21   believes himself to be the representative for this case.  He

22   is obviously not an attorney and I think has been candid about

23   his I think lack of technical expertise.  So I think

24   Mr. Hopper is still technically in charge, but, frankly, it

25   would be helpful to have a lawyer to deal with Vanguard on

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 23 of 78   Pageid#: 7193

Sines, et al. vs. Kessler, et al. - 3:17CV00072      23

1    this issue.

2          But I feel like the ultimate takeaway is that we did

3    ask for case-related sanctions in our pending motion.  I do

4    think it's fair to assume that we are unlikely to receive

5    many, if any, more responsive documents, in that that motion

6    may well be ripe.

7          That said, there are -- I guess there is still a

8    theoretical possibility that Mr. Hopper may be able to work

9    with a vendor to produce some documents, and, conceivably,

10   Mr. Rousseau may also.  But I think we're coming to -- close

11   to the end of the line in terms of figuring out whether

12   Vanguard has anything substantive to produce.

13         THE COURT:  Okay.

14         MR. HOPPER:  This is Dillon Hopper.  I wanted to say

15   I'm present.  I was taking care of my kid, and he's the reason

16   for the background noise.

17         THE COURT:  All right.  Well, Mr. Hopper, thank you

18   for being on the phone.  Can you tell me a bit more?

19         Mr. Bloch in his email had indicated that there

20   are some -- you identified certain social media accounts to

21   the vendor but that you didn't provide accurate account

22   credentials to the vendor.  What's your --

23         MR. HOPPER:  Well, for those -- for those social

24   media accounts, a lot of those were mostly controlled or held

25   by Thomas Rousseau, and I didn't have or I don't have the

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 24 of 78   Pageid#: 7194

Sines, et al. vs. Kessler, et al. - 3:17CV00072        24

1   password to those.  If I did, I provided the older passwords

2   that I had that probably, you know, more than likely were not

3   valid anymore because they were changed by Mr. Rousseau and

4   his company.

5         So, I mean, I provided what I could.  But, I mean,

6   for -- for me to go about trying to find the actual

7   credentials, the valid credentials for some of those accounts,

8   no.  It would entail me contacting Mr. Rousseau, and he

9   refuses to contact me so -- or acknowledge, you know, any

10  contact that I've tried to make with him.  So that proves

11  unfruitful.

12        THE COURT:  All right.  Do you have any other

13  credentials that you haven't provided to the vendor for those

14  social media accounts?

15        MR. HOPPER:  For the social media accounts, no, I

16  don't believe so.  Unless there are some accounts that I might

17  have forgotten or am unaware of.

18        The only thing that I still need to provide to the

19  vendor is just my newest phone.  I realized what the problem

20  was with the old cell phone.  It is the fact that it was a

21  Samsung Galaxy s7.  And just to let you know, when I actually

22  received that back, I tried charging it and plugging it in and

23  it actually exploded.  The phone itself exploded.  So that was

24  probably the problem with that.

25        THE COURT:  All right.  But your second phone,

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 25 of 78   Pageid#: 7195

Sines, et al. vs. Kessler, et al. - 3:17CV00072        25

1   you're able to send that in to the vendor?

2           MR. HOPPER:  Yes, yeah, I can send that in.  It's

3   just I've been preoccupied lately with, you know, my child and

4   my wife and, you know, life and everything, and giving up my

5   phone, you know, would be extremely hectic.  I know I need to

6   do it, though, and I know it would only take two days or so.

7           So I can do that here shortly, within the next week.

8   It's just, you know, life has been rather hectic lately.

9           THE COURT:  All right.  Well, figure out -- I'll put

10  it in an order and give you a week or two to send that in, but

11  you're going to need to block off some time to do that.

12          MR. HOPPER:  Yeah, definitely.  I will.  I've got

13  most of my business taken care of, and I've got about a week

14  or two to kill right now, so I'll definitely send that in and

15  see what they can do.

16          THE COURT:  All right.  Mr. Bloch, were you able to

17  get some different account credentials from Mr. Rousseau

18  during the deposition?

19          MR. BLOCH:  Judge, we were able to identify some

20  accounts that he believes he might have access to.  It will

21  require follow-up to see whether or not he's got the

22  credentials and whether he's able to provide them, but -- so

23  we have an idea as to additional accounts, but I don't know

24  that we've got any access to any of them.

25          I will say, for what it's worth, there was some

 1  finger pointing going back in the other direction as well, and

 2  so there's some confusion as to who, between Mr. Hopper and

 3  Mr. Rousseau, ultimately have the credentials to various

 4  accounts.

 5          THE COURT:  All right.  Mr. Bloch, will you make

 6  sure that the clerk's office has Mr. Rousseau's contact

 7  information?  Because I think I will include him in the order

 8  as it relates to Vanguard America just to make sure that all

 9  available credentials for the relevant social media accounts

10  are provided.

11          MR. BLOCH:  I will, Judge, and I'd also just note

12  for the record Mr. Rousseau retained an attorney for purposes

13  of the deposition, at least.  So at least as of right now he's

14  represented, and I'll provide that information as well.

15          THE COURT:  All right, thank you.

16          All right.  Anything else as to Vanguard America?

17          MR. BLOCH:  Judge, if I may make one point which is

18  relevant to Vanguard, but I think it's very relevant to

19  everybody, so maybe it's worth addressing right now.  And that

20  is, there are a number of social media accounts that we did

21  not receive documents to or from because the defendants --

22  because the accounts were disabled or suspended or perhaps

23  deleted by the platform itself.  And so a number of

24  defendants, including I believe Mr. Hopper, provided

25  credentials to the vendor, but those credentials were

Case 3:17-cv-00072-NKM-JCH Document 581 Filed 10/23/19 Page 27 of 78 Pageid#: 7197

Sines, et al. vs. Kessler, et al. - 3:17CV00072     27

1    ineffective because the platform had suspended the account and

2    the platform needs consent from the defendants themselves.

3            And so a number of these social media accounts, I

4    think the process that needs to happen is the defendants or

5    their lawyers need to work not just with the vendor but also

6    with the social media platforms, including Facebook.  We

7    created a process for Twitter.  But I think the -- the general

8    point is I -- just because an account was suspended or

9    disabled does not mean that documents are not recoverable from

10   that account.  What it does mean is that the defendants need

11   to work with the social media platforms to give them consent

12   for the platform to give documents to the vendor.

13           And I will just say it's -- it has been a -- an

14   onerous process for plaintiffs to try to help facilitate that

15   process, which we've done.  We have been working with Google

16   and Facebook to try to come up with processes for which the

17   defendants can give consent to have the platforms send

18   documents to the vendor.  But frankly, the -- I think it is

19   the defendant's responsibility to do what they need to do to

20   work with the platforms to recover documents.  And if they

21   have forgotten a password or the account has been suspended

22   there are -- the platforms do have processes in place to

23   recover those documents, but it requires communication with

24   the defendants or their lawyers themselves.

25           So I would just -- my hope is that part of the order

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 28 of 78   Pageid#: 7198

Sines, et al. vs. Kessler, et al. - 3:17CV00072      28

 1   that comes out of this process is that the defendants are

 2   responsible for recovering documents from the platforms even

 3   if they have forgotten the password or the account has been

 4   suspended.  And I think that applies to Vanguard and a number

 5   of other defendants.

 6          THE COURT:  Okay.  Does anyone on behalf of the

 7   defendants want to address that?  Mr. Kolenich or --

 8          MR. KOLENICH:  Yes, sir, thank you.

 9          Again, as we said before, I am nothing but

10   sympathetic to the plaintiffs here and the efforts they have

11   gone through so far.  Nevertheless, there is a little bit of

12   disagreement.  And I believe we've discussed this before,

13   myself and Mr. Bloch, at least.  The large social media

14   companies -- for example, Facebook and Twitter already did

15   it -- are flat refusing to communicate with me for several of

16   the defendants.

17          I was able to communicate with an attorney for Gab,

18   and we got that done in a day, day and a half, getting

19   Mr. Parrott Gab information.  But where they won't communicate

20   with us, what are we supposed to do?  Ordinarily, if somebody

21   doesn't want to make friends with me or answer my requests as

22   a lawyer, I send them a subpoena, I file a lawsuit, do

23   whatever I've got to do.  In this case that's just going to

24   slow things down even more.

25          So it's been my impression and was my understanding

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 29 of 78   Pageid#: 7199

Sines, et al. vs. Kessler, et al. - 3:17CV00072      29

1    that Mr. Bloch at least at one time agreed with this, but it

2    is better for them to spearhead this effort because they are

3    East Coast lawyers, well-heeled, well-staffed.  Cooley LLP is

4    not going to get blown off by Facebook or Twitter or anybody

5    else.  I haven't had any luck except with Gab getting anybody

6    to communicate with me directly at these large social media

7    companies.

8         MR. BLOCH:  Judge, the problem is that, when we are

9    able to make contact with the platforms, inevitably their

10   response is that we need response from the defendants.  So we

11   are in fact unable without the cooperation of the defendants

12   to recover documents from those accounts.

13        We have contact information I believe for some of

14   these platforms -- facebook, I believe, I would have to

15   check -- which we're happy to send along to Mr. Kolenich or

16   even happy to put in a good word for him, I guess, to tell

17   them to work with the defendants.  The fact of the matter is

18   we can't actually do it without their cooperation, and it's

19   incredibly onerous for us to have been trying to do that.

20        MR. KOLENICH:  This is Mr. Kolenich.  I think that's

21   what has to happen.  They have to make the introduction,

22   spearhead the effort, and we will sign -- you know, the

23   clients I have left, there's no problem.  They are fully

24   understanding that they have got to sign these documents, and

25   stop hemming and hawing and complaining about the discovery

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 30 of 78   Pageid#: 7200

Sines, et al. vs. Kessler, et al. - 3:17CV00072        30

1    process.  We're ready to go and we want to move this forward

2    as fast as possible just like the plaintiffs do.

3          So what -- what we're missing, you know, we'll sign

4    whatever documents to be presented.  I will be happy to make

5    the first attempt if Mr. Bloch has contact information, but

6    when that doesn't work I don't want the plaintiffs to bow out

7    of this process because that's going to slow things down.

8    We've got to work together to get these social media companies

9    to cooperate with our effort here.

10         MR. BLOCH:  Judge, we are, as always, happy to do

11   whatever we can to help facilitate the collection and

12   production of documents.  That said, I think it needs to be

13   clear that it is the defendant's responsibility to collect

14   documents within their possession, custody, and control.

15   Documents that a social media platform has are within the

16   defendant's possession, custody, and control, even if,

17   generally speaking, those accounts have been disabled or a

18   defendant forgot a password.

19         So we remain happy to help facilitate, but at the

20   end of the day I think it needs to be clear that it's the

21   defendant's responsibility to recover these documents.  And to

22   the extent they can't, I -- my request of Your Honor,

23   generally speaking, was that whatever deadline you set today,

24   that after that deadline there should be a presumption that

25   the defendant -- to the extent there are social media accounts

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 31 of 78   Pageid#: 7201

Sines, et al. vs. Kessler, et al. - 3:17CV00072      31

1   from which we have no documents that there should be a

2   presumption that those have been willfully withheld, unless

3   the defendants can show some sort of effort to recover it

4   themselves because we can't -- it just can't be the

5   plaintiff's responsibility to recover these documents,

6   notwithstanding the fact that we are happy to help.

7          MR. KOLENICH:  Mr. Kolenich again.  Yes, complete

8   agreement it is and has been our responsibility to recover

9   accounts and get documents from those accounts.  I think we're

10  only talking about accounts that have been locked against our

11  will or deleted without our authorization by social media

12  accounts.  That's all.  We would disagree those are within our

13  custody and control, you know, or that any presumption should

14  arise when the defendants took no action to block those

15  accounts or delete those accounts.

16         And we are -- you know, we are attempting to get

17  those accounts.  We have recovered all passwords that we can

18  recover and provided that to the vendor and/or to the

19  plaintiffs, and we're working on the other ones.  But really,

20  to my knowledge, Facebook and maybe Instagram are the only

21  ones we are talking about at this point because Twitter has

22  been dealt with.

23         THE COURT:  Okay.  Do any other defendants or their

24  counsel want to say anything on this issue, Mr. DiNucci or

25  Mr. --

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 32 of 78   Pageid#: 7202

Sines, et al. vs. Kessler, et al. - 3:17CV00072      32

1          MR. DINUCCI:  Yes, I do, Your Honor.  This is John

2    DiNucci.  A couple observations, not necessarily in a logical

3    order, Your Honor.

4          I concur, by and large, with Mr. Kolenich's

5    comments.  I have had difficulty getting responses from big

6    law firms, too.  I wrote to Perkins Coie, if I recall

7    correctly -- they represent Discord -- back in January.  Never

8    got the courtesy of return phone call.  Never got the courtesy

9    of an email.  -- trying to spring loose everything from

10   Discord.  Discord has been a particular problem.

11         My client has gone ahead and directly communicated

12   with Discord to give them him his consent under the Stored

13   Communications Act.  We run into a glitch with IDS that was

14   supposed to be proactive to some extent on that issue.  We're

15   still working with IDS.  IDS is a factor in this, too, Your

16   Honor.  I wrote to IDS back in August of this year.  They were

17   supposed to get ahold of my client, Mr. Spencer, for something

18   called two factor authentication so that they could access

19   some of the emails.  They never got back to him.  They were

20   going to get back to me to try to spring loose Discord stuff.

21   They did not.  I wrote to them the other day for follow-up.

22   So they --

23         THE COURT:  Without -- without getting totally into

24   the -- into the weeds, you know, I want to look at kind of the

25   bigger picture of this, and it -- it sounds like there's some

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 33 of 78   Pageid#: 7203

Sines, et al. vs. Kessler, et al. - 3:17CV00072        33

1     agreement between plaintiffs and defendants these documents

2     are potentially relevant and need to be recovered.  So it

3     sounds like it's more of a process in figuring out how to

4     approach it to make sure these documents are made available.

5     And that's -- that's really what I want to address right now.

6              Mr. DiNucci, is there disagreement about that?

7              MR. DINUCCI:  I concur.  We have a process.  It may

8     be somewhat haphazard due to that fact that people like me

9     don't know what the heck they are doing when it comes to

10    electronically stored information.  I'm a trial lawyer, not a

11    discovery expert.  I don't know a whole lot about this

12    subject.  I will thank Mr. Bloch.  He has been extremely

13    cooperative in the matter.  He's given me guidance that

14    otherwise I would have had to go pay an awful lot of money

15    for.  And that's an issue.  My client is running out of money.

16             But no, we agree they are entitled to information.

17    There is a process.  I've learned a lot in the process.  My

18    client, for example, now that we know about Stored

19    Communications Act and its impact, he has signed consents that

20    have gone to Discord, to Instagram, to Twitter, to Facebook.

21    We do, however, in that process need cooperation from IDS, and

22    we're going to get it.  I heard back from them yesterday.

23    They are going to be contacting me and/or Mr. Spencer.  So

24    there's a process.  It's just a question, some glitches along

25    the way in the time it's taking.  I'm like Mr. Kolenich.  I'd

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 34 of 78   Pageid#: 7204

Sines, et al. vs. Kessler, et al. - 3:17CV00072        34

1   like to get this over with and get to trial.  We want to get

2   it over with, too.

3           THE COURT:  All right.  Any other defendants want to

4   say anything on this?

5           MR. HEIMBACH:  Your Honor, this is Matthew Heimbach.

6   On this there's a couple things.  But on the first point, I'd

7   like to bring up before the Court the licensed attorney that

8   is willing to represent me pro bono.  He is licensed in both

9   the state court and the federal courts, but he does not have

10  the -- the bar in the Commonwealth of Virginia.  It's been,

11  essentially, impossible to try to find local counsel due to

12  the political nature of this event, and it's prohibitive in

13  terms of the cost, really, even if someone would agree.

14          So I wanted to bring it before the Court to see

15  if -- especially to help move this process along, to assist in

16  discovery.  This lawyer also has experience with social media,

17  which would be helpful in regards to what we're talking about.

18  But whether the Court would consider to help move this process

19  along waiving the local counsel rule so that I would be able

20  to have proper legal counsel.

21          Because the other side, I mean, just as witnessed by

22  this call, has a tremendous amount of legal counsel.  And even

23  Mr. Bloch said earlier in the call it would be helpful to have

24  a lawyer to deal with these issues.  So that would I think

25  apply in my case as well.  So I would ask the Court if he

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 35 of 78   Pageid#: 7205

Sines, et al. vs. Kessler, et al. - 3:17CV00072      35

1    would consider waiving the local counsel rule.

2          THE COURT:  Mr. Heimbach, I think it would be to

3    your benefit to have an attorney, and I think it's important

4    to have an attorney in this case, but there are -- rules about

5    who can appear in court are set by the court as a whole and

6    it's not something that's waived on a case by case basis.

7    That rule applies for every litigant who appears in this

8    district, and it's not something that I'm going to waive or

9    that I think an individual judge would have the authority to

10   waive in a particular case.

11         I understand -- I understand, you know, the

12   difficulty that you're in.  I would just encourage -- if that

13   attorney is going to represent you pro bono, I would just

14   encourage that attorney to try to reach out to, you know,

15   anyone who is admitted in the western district -- I think

16   there are plenty of attorneys who are here -- and see if they

17   could associate.

18         MR. HEIMBACH:  Your Honor, on that I would just say

19   that, first of all, retaining counsel that's not pro bono

20   essentially would be impossible due to being cost prohibitive.

21   But due to the political nature of the event, I mean, just

22   looking back for decades someone who represented a Klansman or

23   something like that in the 1970s gets known for the rest of

24   their career as a, quote, unquote, Klan lawyer.  The attorneys

25   I've talked to have no interest in, I mean, essentially,

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 36 of 78   Pageid#: 7206

Sines, et al. vs. Kessler, et al. - 3:17CV00072        36

1    career suicide.  Regardless of the merits of the case, then

2    there's the prohibitive nature of retaining an attorney.

3            So, I mean, if -- if the Court believes that it

4    would be helpful and reasonable and also help with the entire

5    process to move it along for me to have representation, can

6    the Court appoint an attorney for local counsel that could be

7    utilized or another avenue?  Because as it stands I will not

8    be able to -- I have not been able to find an attorney, and

9    then, even so, most of the attorneys I have spoken to I do not

10   have the financial resources for.  So I would be essentially

11   given second-class justice due to my inability to properly

12   represent myself if the Court can't assist in this or grant

13   some sort of waiver to allow me to be represented.

14           THE COURT:  Mr. Heimbach, I won't go through all the

15   reasons for the rules attorneys be admitted to practice in

16   this district, or at least in a pro hac vice admission and

17   that there be an attorney who is admitted to practice in this

18   district who is associated with that pro hoc attorney, but

19   there are good reasons for it.

20           MR. HEIMBACH:  Well, would the Court be willing to

21   appoint an attorney?

22           THE COURT:  Mr. Heimbach, there is no authority for

23   the Court to appoint an attorney to represent you.  I don't

24   have the authority to do it.  There's no statute, there's no

25   law that -- that allows that in this type of a case.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 37 of 78   Pageid#: 7207

Sines, et al. vs. Kessler, et al. - 3:17CV00072      37

1          MR. HEIMBACH:  I understand, Your Honor.  I was

2     speaking specifically just as local counsel, not for them to

3     really do any of the work.  But if the -- if the bar --

4          THE COURT:  It's the same thing.  I don't have the

5     authority to appoint an attorney to represent you.  I just

6     don't.  And I -- I appreciate your plight, and I understand

7     it's expensive, and I think it's important for you to have an

8     attorney.  And if there was something I could do, believe me,

9     it would -- as everyone has acknowledged already on this phone

10    call, it would make my job smoother to be able to work through

11    these issues if you were represented by an attorney.  I would

12    like you to be represented by an attorney.  It's just I don't

13    have the authority to do it.  And I have to act within my

14    authority.

15         MR. HEIMBACH:  I understand, Your Honor.

16         In terms of, I mean, waiving rules that are not

17    etched in stone, nor the Ten Commandments, the only work

18    around I see is, I mean, given that I have an attorney willing

19    to do this pro bono, especially given his experience with

20    social media and in cases that he has done that would be

21    incredibly helpful not only for myself but potentially for the

22    entire defense team to help work through discovery, get this

23    done, it seems like it's in everyone's best interest for me to

24    be able to have this representation for the sake of the case.

25    I mean, is there no capacity given, economic situation, the

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 38 of 78   Pageid#: 7208

Sines, et al. vs. Kessler, et al. - 3:17CV00072      38

1    process of discovery --

2             THE COURT:  Mr. Heimbach, I'll just say somebody who

3    isn't admitted to practice in this court and who can't

4    associate with a local attorney to be pro hac cannot enter an

5    appearance in this case on your behalf.  Those attorneys can't

6    file anything or can't appear at hearings, things like that.

7             So, you know, if you want to try to get advice from

8    this attorney, if you want to try to comply with your

9    discovery obligations -- I mean, the attorney can't sign

10   discovery responses for you or issue discovery responses for

11   you or anything like that, but you can talk to that attorney

12   and see if he or she is willing to assist you in complying

13   with some of your discovery obligations, but, ultimately, the

14   responsibility is on you.

15            And I think we need to move on.  We have a lot to

16   address today and really the question I was asking was, does

17   anybody else have anything they want to say about some of

18   these social media accounts that have been disabled or deleted

19   by the platform and the defendants providing their consent to

20   have -- to have these documents essentially be recoverable by

21   the platform?  Anybody else have anything to say on that?

22            MR. REBROOK:  Your Honor, this is Edward ReBrook.

23            THE COURT:  Yes, sir.

24            MR. REBROOK:  Your Honor, would it be possible for

25   us to just submit to plaintiffs a blanket agreement that we

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 39 of 78   Pageid#: 7209

Sines, et al. vs. Kessler, et al. - 3:17CV00072        39

1    agree to allow them to access or attempt to access any of

2    these disabled accounts?

3            THE COURT:  I have a feeling -- Mr. Bloch could

4    probably answer that, but I have a feeling that each

5    particular social media account or provider is going to want

6    to have their -- their own consent.  But I -- but I think

7    it's -- I do think it's the defendant's responsibility to

8    provide that consent because this is part and parcel with

9    meeting your discovery responsibilities in providing

10   potentially relevant information.

11           Mr. Bloch, is there a blanket consent that can be

12   provided or is it something that each social media platform

13   provides their own?

14           MR. BLOCH:  Yes, Judge, you are correct.  I don't

15   believe there's a social media platform that would accept that

16   sort of blanket consent.  They each want individual consent

17   from the defendant, and they often each have their own

18   individual consent forms.

19           THE COURT:  I think we've addressed this enough.

20   What I'm going to do is put it in the order that you-all need

21   to work together on this.  The defendants are going to have to

22   provide any consents that are necessary for social media

23   accounts that -- that may have relevant and discoverable

24   information, and it is probably going to require the parties

25   to work together.  It may even require you-all to get on a

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 40 of 78   Pageid#: 7210

Sines, et al. vs. Kessler, et al. - 3:17CV00072      40

1    conference call with one of these providers.  But I think

2    that's something that you-all can do, and I'm going to order

3    that the consents be provided.  Reasonable time I would think

4    would be at the outside 14 days to have that information

5    provided to the -- provided to the social media accounts.

6         All right.  Why don't we continue on with some of

7    these individual discovery status for some of the individual

8    defendants.  And Mr. Bloch, do you want to just take up

9    Mr. Kolenich's clients?  I think we have Mr. Kessler and

10   Damigo and Identity Evropa and Parrott and Traditionalist

11   Worker Party?

12        MR. BLOCH:  Sure.  Judge, my sense with -- sorry, go

13   ahead.

14        THE COURT:  Go ahead, Mr. Bloch.

15        MR. BLOCH:  Well, Judge, with respect to

16   Mr. Kessler, I think the issue is similar as the one that we

17   just discussed.  He has a number of social media accounts that

18   we don't have documents from, and that's -- that the vendor

19   has not collected.  And I think it, frankly, should be on him

20   to figure out the processes by which those platforms will

21   produce documents to the vendor.  I think the issue is the

22   same with respect to Mr. Damigo.

23        THE COURT:  All right.  Mr. Kolenich, what's your

24   view on the production?

25        MR. KOLENICH:  I think it's just basically what we

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 41 of 78   Pageid#: 7211

Sines, et al. vs. Kessler, et al. - 3:17CV00072      41

1   just discussed.  I'm going to have to go over sort of line by

2   line what the plaintiffs' concerns are.  I don't necessarily

3   agree that there's a lot outstanding that we don't have pass

4   codes for or haven't provided.  To the extent that there is

5   Facebook and these others, they have been a problem, we can't

6   communicate with them, you know, we'll deal with that.  We'll

7   get all that done within the confines of a Court order or do

8   the best we can and explain why we haven't been able to if it

9   comes to that.

10          Again, we agree that it is our responsibility on the

11  first instance.  Just when we run into this stone wall from

12  the social media company there is literally nothing else I can

13  do other than sue them or subpoena them, and it seems to work

14  better if we, as said before, get an introduction from the

15  plaintiffs.  So we will go through all that.  I'll work with

16  Mr. Bloch on that and we'll see where we're at, what the

17  deficiencies are and what's left for my men to sign.

18          I just want to stress they will do it and they will

19  do it quickly.  I don't want have any more blowback from these

20  remaining clients.  We've gotten rid of the most reluctant

21  ones, and we're prepared to move with much greater speed than

22  has been the case in the past.

23          THE COURT:  And for Identity Evropa, it looks like

24  Patrick Casey was someone that you have identified.  What is

25  the status there?

1          MR. KOLENICH:  Yes, he is the primary custodian of

2     records, other than Damigo and Elliott Kline.  They are

3     willing to file declarations, but they don't have, you know --

4     not known to them to have anything that they shouldn't have

5     relative to Identity Evropa, or that they don't have.  I do

6     also have a list they have identified as members -- this is a

7     couple dozen -- I believe members of Identity Evropa who were

8     physically present in Charlottesville.  About half of those

9     are not men who have been publicly identified or doxed as they

10    say at this point, so we will negotiate with the plaintiffs on

11    how to get those names to them and proceed with whatever

12    discovery they want to do there.

13         MR. BLOCH:  Judge, if I may with respect to

14    Identity Evropa.  Again, this is Mr. Bloch.  I would say two

15    things.  If I understood -- I'm not sure I understood

16    Mr. Kolenich correctly, but it is not satisfactory to us if

17    this is what you're saying, that Mr. Kline has the same

18    documents that Mr. Casey has access to.

19         Mr. Casey obviously has his own documents that are

20    material and responsive to this case on his cell phone, on his

21    own email accounts, on his own social media accounts, and none

22    of those, as far as I understand it, have been provided to the

23    vendor.

24         With respect to -- the issue with respect to

25    Identity Evropa I think is the same as NSM which is that it

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 43 of 78   Pageid#: 7213

Sines, et al. vs. Kessler, et al. - 3:17CV00072      43

1    doesn't appear that anyone has done a reasonable investigation

2    to determine who within that organization has responsive

3    documents.  We identified Patrick Casey.  It has been a lot of

4    effort, to say the least, to get Mr. Casey even prepared to

5    potentially cooperate, although I don't believe he has

6    provided anything to the vendor.  And he's, as far as I

7    understand, equally important in terms of a custodian as

8    Mr. Damigo or Mr. Kline.  As the Court is well aware of, we

9    have nothing from Mr. Kline.

10           So to say that Mr. Casey is prepared to affirm that

11   he -- Mr. Kline has access to the documents that he has, and,

12   thereby, satisfy the responsibility for Identity Evropa, you

13   know, puts us in the same place, and that is having nothing

14   from Identity Evropa.  So there needs to be that investigation

15   by Mr. Kolenich to figure out who has responsive documents,

16   Mr. Casey clearly being one of those people.  And each of

17   those people need to provide their accounts and devices to the

18   vendor.

19           MR. KOLENICH:  This is Mr. Kolenich.  I think I did

20   perhaps misspeak.  I didn't mean to state that they were

21   relying on Mr. Kline as the only source of information.

22           Without getting into the weeds, as the Court

23   mentioned before, Mr. Casey was not an officer of the

24   corporation or in charge of anything at the relevant dates,

25   and we continue to disagree with the plaintiffs his personal

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 44 of 78   Pageid#: 7214

Sines, et al. vs. Kessler, et al. - 3:17CV00072      44

1   devices, with the exception of his cell phone that he had at

2   the time, would have any responsive documents on it as

3   distinct from devices that he has technical control over now.

4        We'll get this squared with the plaintiffs.  We'll

5   come to an agreement, and we'll produce whatever devices we

6   agree to.  And if we have a disagreement that needs to be

7   adjudicated, we'll do that, again, with more speed than we've

8   been accustomed to in this case.

9        And Mr. Bloch, I'll flesh that out for you outside

10  the confines of this hearing.  Obviously, we're on the record

11  and have a lot to do here.  Thank you.

12       THE COURT:  Mr. Kolenich, have you identified

13  particular people within Identity Evropa who were part of the

14  leadership of this entity that might have responsive

15  documents?

16       MR. KOLENICH:  I'm sorry, Your Honor.  I meant to

17  address that.  Other than Mr. Damigo and Mr. Kline and now

18  Mr. Casey, there is no apparent leadership.  There are no

19  other people who would have had custody of documents other

20  than individuals who were present at Charlottesville and went

21  to the event.  So those are the three who could possibly be

22  considered custodians: Damigo, Casey, and Kline.

23       I do have a list of members that we've been able to

24  identify that they will affirm are members of Identity Evropa

25  and were present in Charlottesville, but those are more in the

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 45 of 78   Pageid#: 7215

Sines, et al. vs. Kessler, et al. - 3:17CV00072      45

1    nature of eyewitnesses rather than document custodians,

2    except, of course, as to their own personal information.

3              THE COURT:  All right.  Mr. Bloch?

4              MR. BLOCH:  Judge, I would just say I'm happy,

5    obviously, to speak and meet with Mr. Kolenich further.  It's

6    my understanding that Mr. Casey was in charge of Identity

7    Evropa until a few months ago.  And some of our document

8    requests asked for documents that concerned, for example,

9    defendants in this case like Identity Evropa.  So -- and I

10   believe -- I'd have to double check.  I believe Mr. Casey was

11   present in Charlottesville.  So the idea that he would have a

12   cell phone that doesn't have responsive documents is hard for

13   me to imagine.  It is an issue.

14             One of the things I'm trying to do is avoid,

15   obviously, issues that we need to bring to the Court, but

16   whether -- you know, Mr. Casey's cell phone and social media

17   accounts are things that we would move to compel to the extent

18   Mr. Kolenich is taking the position that those don't have

19   responsive documents.  So I would love to avoid creating

20   another issue for the Court.

21             THE COURT:  Mr. Kolenich, are you -- are you

22   intending to provide discovery responses from Mr. Casey?  It

23   sounds like that was Mr. Bloch's impression from the email

24   that he sent yesterday, that there are some documents that are

25   forthcoming.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 46 of 78   Pageid#: 7216

Sines, et al. vs. Kessler, et al. - 3:17CV00072      46

1          MR. KOLENICH:  I am going to have to go back and

2     look at the email history with regard to Mr. Casey.  I don't

3     agree that we're staking out a position that we're going to

4     refuse this or refuse that such that would even come near a

5     motion to compel.  I think it's better if Mr. Bloch and I get

6     together on this and see where we're at.  I don't know if

7     we're effectively communicating talking here on the record.

8          But again, Mr. Casey is not -- I know there has been

9     some pushback from Mr. Casey in the past with Mr. Bloch's

10    request, and that's all been resolved.  That's not going to be

11    an issue going forward.

12         I do want to clarify the phone he had -- he was

13    present in Charlottesville.  The phone he had at the time he

14    no longer has and the current phone is a new -- it's not going

15    to have anything on it.  He will send it if you want, but it's

16    not going to have anything on it.

17         We have his entire phone record, though, from the

18    provider service.  All the numbers he called, all the numbers

19    he received calls from, and the text message numbers from his

20    service provider.  I can't remember what that is now.  We

21    already have that.  It was recently received.  I'll pass that

22    on to Mr. Bloch as part of our forthcoming discussion.

23         THE COURT:  All right.  And then how about Matthew

24    Parrott and also Traditionalist Worker Party, Mr. Bloch?

25         MR. BLOCH:  Judge, Mr. Parrott, there are still

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 47 of 78   Pageid#: 7217

Sines, et al. vs. Kessler, et al. - 3:17CV00072        47

1    accounts that have been identified by the vendor that they are

2    not able to access with respect to Mr. Parrott.  I don't know

3    what has gone on between Mr. Parrott and the vendor on that

4    issue, but what I do -- all I have to go by is the vendor

5    report.  They are not able to access those accounts.

6           THE COURT:  Mr. Kolenich, do you know what the

7    problem is there?  Is it that these accounts have been

8    disabled or is it that Mr. Parrott needs to provide better

9    information?

10          MR. KOLENICH:  Some of them are social media

11   disabled and we haven't been able to recover the passwords.

12   In other cases Mr. Parrott has told me that he has given

13   correct information to the vendor more than once and he

14   doesn't know what the problem is.  So the vast majority of

15   what was listed in Mr. Bloch's letter we consider erroneous,

16   and I guess that's another one of the things we have to work

17   through here.

18          But the passcodes that we have provided that

19   apparently the vendor is saying don't work, I personally

20   checked them, and they do work, so we're not sure what the

21   disconnect is here.

22          THE COURT:  All right.  And then from the

23   Traditionalist Worker Party?

24          MR. KOLENICH:  Mr. Parrott's devices and

25   Traditionalist Worker Party's devices are coextensive in this

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 48 of 78   Pageid#: 7218

Sines, et al. vs. Kessler, et al. - 3:17CV00072      48

1    instance.

2          MR. BLOCH:  Judge, the only thing I say with respect

3    to Traditionalist Worker Party is one clear custodian for TWP

4    was Tony Hovater.  We have diligently pursued trying to get

5    documents through Mr. Kolenich from Mr. Hovater.  It was our

6    understanding that he was to going to provide documents.  He's

7    in the same position as Mr. Casey.  He's a clear, obvious,

8    custodian of relevant documents for TWP, and we learned about

9    two weeks ago that he apparently left the organization.

10         Whether or not that puts the onus on us now to get

11   the documents, I'm not sure, and we certainly will pursue him

12   to try to get the documents.  It does not absolve TWP of

13   having had to produce those documents previously.  But,

14   frankly, we would appreciate documents from Tony Hovater.  I

15   don't think his having left the organization two weeks ago

16   gets them out of that obligation, but that's where we stand.

17         THE COURT:  Mr. Kolenich, what --

18         MR. KOLENICH:  Yes, Mr. Hovater did tell me that he

19   would fully cooperate.  He would fill out a declaration of

20   what devices he had and what was responsive.  He told us he

21   would produce -- you know, cooperate with discovery process

22   and get with the vendor.  The very next day he resigned from

23   the organization.  We no longer have control over him or his

24   devices.  We told him either do this -- you have to do this.

25   Either you're an officer of the company and you have to -- you

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 49 of 78   Pageid#: 7219

Sines, et al. vs. Kessler, et al. - 3:17CV00072      49

1   have to act on the company's best interest and have a

2   fiduciary duty, or you're an underling and you have to do what

3   you're told to do.  He chose to resign.  That's where that's

4   at.  Mr. Havater is no longer communicating with Mr. Parrott.

5   He will not communicate with me.

6           We don't disagree that while Mr. Hovater was an

7   officer of the company that he is the custodian of documents.

8   It's just that he no longer has any ability to -- you know,

9   similar to other people that have been involved in this

10  litigation, we don't have any ability to communicate with him

11  at this point.  And we still in trying to get him to

12  cooperate even after his resignation -- I'll provide some

13  contact information I have from Mr. Hovater Mr. Bloch, but

14  he's out of our control at this point.

15          THE COURT:  All right.  Is any -- does anybody have

16  a real beeping noise on their phone?

17          MR. DINUCCI:  I'm hearing it, Your Honor.  This is

18  John DiNucci.  I don't know where it's coming from, though.

19          THE REPORTER:  It's troubling for the court

20  reporter.

21          UNIDENTIFIED SPEAKER:  Yeah, we hear it as well.

22          THE COURT:  Does anybody know whether that's

23  originating from them?  It's getting worse.

24          Well, just to wrap up that one thing.  For Mr.

25  Hovater, what I'm going to do is I'm going to include him in

1    the order concerning Traditionalist Worker Party that he would

2    be required to provide documents.  Mr. Bloch, it means that

3    you're going to have to issue a third party subpoena to him,

4    though

5            MR. BLOCH:  Okay, Judge.  Will do.

6            THE COURT:  All right.  Hold on a second.  Let's see

7    if we can deal with this beeping noise.

8            I'm not sure what that beeping noise is.  Let's just

9    do our best.

10           All right.  Mr. Kolenich, as far as your client, is

11   that -- that you're currently representing; is that right?

12           MR. KOLENICH:  Yes.  I believe we touched all of it,

13   Your Honor.

14           THE COURT:  All right.  I do want to try to get an

15   update from you about Mr. Cantwell and Mr. Ray and where

16   those -- what else is left to do with them.

17           Mr. Bloch, if there's -- you've indicated some

18   things in your email about Mr. Cantwell that we need some

19   additional accurate credentials?

20           MR. BLOCH:  That's right, Judge.  Mr. Cantwell is I

21   think in the same position of having social media accounts

22   that the vendor has not been able to collect from.

23           THE COURT:  And are those because the accounts are

24   disabled or is it the information that he's provided is

25   inadequate?

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 51 of 78   Pageid#: 7221

Sines, et al. vs. Kessler, et al. - 3:17CV00072        51

1          MR. BLOCH:  It appears to be a mix, Judge.  The --

2     some of the -- and I can send the Court -- I think all parties

3     have the vendor report, but I'm happy to send it to the Court

4     after this call, the new vendor report from last night.  There

5     are some accounts that he was -- that the vendor was unable to

6     collect with the credentials that he provided.  And some were

7     the vendor said the password doesn't work.

8          THE COURT:  Okay.  Well, for him I'm just going to

9     include in the order that -- there is going to be a deadline

10    for which to provide accurate information to the vendor, but,

11    also, to provide consents where the -- where the accounts have

12    been disabled.  It sounds like that would cover Mr. Cantwell's

13    issues.

14         MR. BLOCH:  I think that's right, Judge.  Thank you.

15         THE COURT:  And Mr. Kolenich, is that your

16    understanding as well?

17         MR. KOLENICH:  I'm afraid I don't know exactly what

18    Mr. Cantwell's issues might be, but no doubt Mr. Bloch's rate

19    is probably accurate and I'm sure the Court's order is

20    reasonably.

21         THE COURT:  All right.  And then Mr. Ray, I mean,

22    there are a number of things outstanding.  So it looks like a

23    number of accounts have been identified, but there are -- he

24    has not credentialed to be able to access those; is that

25    right?

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 52 of 78   Pageid#: 7222

Sines, et al. vs. Kessler, et al. - 3:17CV00072       52

1          MR. BLOCH:  I believe that's right, Judge, and it's

2    my understanding that he hasn't been cooperative for months.

3    There's also a device I believe he hasn't provided.

4          THE COURT:  All right, the second laptop?

5          MR. BLOCH:  Right.

6          THE COURT:  All right.  Well, we'll include those in

7    the order as well.

8          Mr. Spencer and Mr. DiNucci, it sounds like there

9    are quite a lot of documents.  There may still be a few things

10   that are outstanding; is that right, Mr. Bloch?

11         MR. BLOCH:  I'm sorry, Judge.  With which

12   defendants?  Spencer?  If you're talking about Mr. Spencer,

13   Judge, I think that's right.  I do believe Mr. DiNucci is

14   working with the vendor to work that out.

15         THE COURT:  Okay.  Mr. DiNucci, anything that we

16   need to address on that?  Are you working through things?

17         MR. DiNUCCI:  We are working through things, Your

18   Honor.  For example, the last IDS report I saw which is

19   actually from September the 9th -- I did not get one last

20   night with an update.  They had asked -- said they needed

21   information from us with respect to Twitter, Instagram, and

22   Facebook.  Mr. Spencer over a month ago had actually sent

23   Stored Communication Act consent to those providers.

24   Apparently, there was no communication, nothing sent by the

25   platform to IDS.  I communicated with IDS to make sure that

1    they, IDS, hook up, if you will, with those platforms, for

2    example, so they get the information that -- that the

3    platforms would have.

4            Again, I'm working with Mr. Bloch's kind assistance,

5    about the Stored Communication Act and ESI, we're working with

6    the platforms to get the information available to IDS.

7            THE COURT:  All right.

8            How about Mr. Heimbach?  Mr. Bloch, can you -- looks

9    like there's only a handful of documents turned over and that

10   the third party vendor is having difficulty accessing a number

11   of electronic accounts.

12           MR. HEIMBACH:  Matthew Heimbach, Your Honor.

13           First of all, in Mr. Bloch's email as it was

14   explained to him in the deposition, and Mr. Kolenich can

15   follow this up, that the -- specifically the major part that

16   he is requesting, which is the information from the internal

17   server of PWP, I do not have access to, but Matthew Parrott

18   had the entire server imaged provided to Mr. Kolenich and I

19   believe provided to the vendor.

20           So all the information he's requested he already

21   should have received or is currently in Mr. Kolenich's

22   possession and should be given over then.  So that's --

23           THE COURT:  Mr. Heimbach, hold on a second.  I want

24   to hear from Mr. Bloch so that we know what he thinks is

25   outstanding.  You may be telling us things that he's not

1    disagreeing with.  So let me hear from Mr. Bloch, and then I

2    just want to make sure we're on the same page.  Mr. Bloch?

3         MR. BLOCH:  Judge, to be clear, we have nothing from

4    the vendor from Mr. Heimbach.  So I think the server is one of

5    those, the internal ticket system is one of those items.  I

6    understand Mr. Heimbach is saying that Mr. Parrott has control

7    over that.  I guess we will see when we receive Mr. -- when we

8    go through Mr. Parrott's production whether that's in fact the

9    case.  But there is -- there were seven or eight accounts that

10   Mr. Heimbach disclosed as responsive and we have zero

11   documents from any of them.

12        MR. HEIMBACH:  Okay.  But respectfully, what does

13   that even entail when I provided the vendor the information?

14   Like why hasn't the vendor sent it then?  I don't understand

15   what plaintiffs are paying them for if they have collected the

16   information and it hasn't been sent.

17        THE COURT:  Mr. Bloch, do you know if the

18   information has been collected at this point from these

19   accounts?

20        MR. BLOCH:  It's -- it's not -- I don't believe it's

21   been collected from a number of the accounts.  I think they

22   have collected documents from some accounts.  There were some

23   accounts that the vendor reports the password was not provided

24   to or the password was incorrect.

25        The process that we had worked out, which I thought

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 55 of 78   Pageid#: 7225

Sines, et al. vs. Kessler, et al. - 3:17CV00072        55

1     Mr. Heimbach was aware of, was the vendor images and collects

2     the documents that then go to the defendants for review and

3     the defendants then produce the documents.  It sounds like the

4     review and production part of the process hasn't happened, but

5     there are still some accounts that appear not to have been

6     collected because an accurate password wasn't provided.

7            MR. HEIMBACH:  Well, I can say to the Court -- this

8     is Matthew Heimbach -- that I provided all of the available

9     information that I have in this regard and the most recent

10    passwords I had access to.

11           I have complied with sending my phone in, turning

12    over doing two-step verification over my Gmail in question.

13    The private server, as previously mentioned, would have I

14    would say probably all -- almost all relevant documents have

15    been imaged on behalf of Mr. Parrott and Traditionalist Worker

16    Party.  So I'm not exactly sure what really is being asked

17    here.

18           THE COURT:  Well, you know, I don't know, either.

19           I mean, it sounds like from Mr. Bloch that the

20    vendor has been unable to access some of these accounts

21    because the password didn't work.  Have you been told that,

22    Mr. Heimbach?  Have you had communications with the vendor?

23    Do you know if --

24           MR. HEIMBACH:  Yes, Your Honor.  I believe the

25    majority of the accounts in question have been deleted, and

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 56 of 78   Pageid#: 7226

Sines, et al. vs. Kessler, et al. - 3:17CV00072      56

1    Mr. Bloch should have copies from before my deposition, I

2    believe, of my requests directly to social media companies for

3    information specifically citing *Sines v. Kessler* as to the

4    reason why I wanted access to the information to provide the

5    plaintiffs with discovery.  And I was notified that these

6    accounts were unavailable.  I had done the -- the plaintiffs

7    had requested assigned things for Discord and Twitter which I

8    have provided to them.

9            I really don't know what more they are expecting of

10   me because I've really tried to comply on every step.  I am

11   certainly not an expert in any of this whatsoever.  I'v been

12   trying to muddle through it.  I've tried to be very responsive

13   with Mr. Bloch to ask questions and answer questions to move

14   this along.  So I'm not sure exactly what more he's wanting

15   other than the fact I have already given the vendor the

16   information I have, the devices I have, the accounts I have,

17   my email which I just received verification for and have

18   contacted the social media companies to request this

19   information and have been blown off.

20           I don't know really what more the Court would expect

21   me to be able to --

22           THE COURT:  Here's what I -- Mr. Bloch, has the

23   vendor provided you, you know, in its reports with information

24   about what the status is of its efforts to recover documents

25   from these accounts?  I mean, is there a report that says, you

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 57 of 78   Pageid#: 7227

Sines, et al. vs. Kessler, et al. - 3:17CV00072     57

1    know, we access -- we are able to access this account, we

2    tried to access this account, the credentials didn't work,

3    tried to access this account but it had been deleted?  I mean,

4    is that information available?

5              MR. BLOCH:  It is, Judge.  And I can say the one --

6    there's one account, which is Mr. Heimbach's Gmail account,

7    where the vendor said they had completed the collection.

8    Every other account, they do not appear -- oh, sorry, one

9    other, which is Mr. Heimbach, the cell phone which he provided

10   he conceded actually doesn't have any relevant documents has

11   also been collected.  The rest of them they have not been able

12   to collect from for various reasons.

13             Frankly, Judge, I -- I think what Mr. -- I mean,

14   what we want, obviously, is documents, and we have nothing

15   from anything that he has provided the vendor.  What I would

16   suggest is that Mr. Heimbach get in touch with the vendor and

17   work it out with them in terms of what they need and how to

18   get it to us.

19             MR. HEIMBACH:  Mr. Bloch, I would ask --

20             THE COURT:  Hold on a second, Mr. Heimbach.  The

21   difficulty for me is that I don't know why the -- where things

22   stand with the production, so I don't know how I -- how I

23   order anything and make anything move forward in this

24   discovery process unless I can direct a party to do something.

25   Even something specific.  You know, that Mr. Heimbach needs to

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 58 of 78   Pageid#: 7228

Sines, et al. vs. Kessler, et al. - 3:17CV00072      58

1    provide consent because, you know, the accounts have been

2    deleted; that he's provided, you know, inadequate credentials;

3    or hasn't turned over certain devices.

4          I think that's -- that's pretty granular, but I --

5    but to make sure that there are specific directions to each

6    party and each defendant so that everybody knows what their

7    responsibilities are and folks can be held accountable for

8    falling below that.  I think they probably need that sort of

9    information.

10         MR. HEIMBACH:  Your Honor, Matthew Heimbach.

11         If there are anything in terms of social media

12   companies where the credentials don't match, I am willing to

13   provide to the plaintiffs any signed release necessary so they

14   can turn that information over.  I feel like part of the

15   problem is myself and other defendants may be held accountable

16   for social media companies deleting our accounts, deleting

17   that information, or not storing it properly for an extended

18   period and then that's being held on us.

19         If the plaintiffs had any of these relevant accounts

20   that they can connect us to, I would sign a release as soon as

21   they send it to me and promptly send it back to fulfill any

22   requirements of the Court.  But to send me on an Alice in

23   Wonderland quest to try and track down, you know, Jeff Bezos

24   or Mark Zuckerberg to get documents that I've already

25   requested, I don't know how I could comply with that.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 59 of 78   Pageid#: 7229

Sines, et al. vs. Kessler, et al. - 3:17CV00072      59

1          MR. BLOCH:  Judge, just to -- without me getting

2     into the weeds, just to give an example, Mr. Heimbach

3     disclosed a Skype account that purports to have relevant

4     information and the vendor report reports that the password he

5     provided is incorrect.  So what I would recommend is that he

6     get in touch with the vendor and provide the correct password.

7          MR. HEIMBACH:  Mr. Bloch, the password is correct,

8     and I attempted to set up with the vendor on multiple

9     occasions to do two-step verification access and I had not

10    heard anything in an extended period about -- something I had

11    already done for my Gmail.  So I have already proven myself

12    willing to do this.

13         THE COURT:  So, I mean, does it make sense for the

14    order to direct the defendants to contact the vendor for any

15    accounts or to determine whether there are any accounts the

16    vendor has not been able to access and then to provide --

17    figure out why the vendor hasn't been able to access it and

18    direct the defendants to provide whatever information is

19    necessary to access?  Mr. Bloch, is that what you're asking

20    for?

21         MR. BLOCH:  Judge, I guess I would -- I would make

22    it sort of three parts.  That would be the first line, which

23    is to get in touch with the vendor and provide what is needed

24    to be provided.

25         The second one I would say would be to detail in

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 60 of 78   Pageid#: 7230

Sines, et al. vs. Kessler, et al. - 3:17CV00072      60

1    some sort of declaration what steps the defendant has taken to

2    produce documents from a particular account.  If in fact it's

3    disabled or deleted and they tried and they couldn't, I guess

4    they should lay that out and we can determine down the road

5    whether or not they have met their discovery obligations.

6          And then finally, at least with respect to

7    Mr. Heimbach, it appears based on the vendor report that there

8    are documents waiting for him to review and produce, and I

9    would ask that he be ordered to do that in short order.

10          MR. CANTWELL:  This is Christopher Cantwell.  I just

11    joined the line.

12          THE COURT:  All right.  Mr. Cantwell, this is Joel

13    Hoppe.  We have been going for some time.

14          Well, you know, I think Mr. Bloch, I think having

15    that first step to make sure that all the information has been

16    provided correctly to the vendor, I mean, obviously, that

17    needs to happen.  That needs to happen -- happen real soon.

18          And then, you know, the next step is the

19    actual documents, once they have been turned over to the

20    defendants, and there needs to be a deadline, a deadline

21    there.  And then I think as far as an explanation for what

22    happened to any accounts or documents that don't exist

23    anymore, you know, that's -- I think that's probably something

24    that you would need to raise as soon as the dust has settled

25    or after we've determined that the documents are not

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 61 of 78   Pageid#: 7231

Sines, et al. vs. Kessler, et al. - 3:17CV00072        61

1    recoverable.  I mean, I think that's something that you would

2    need to raise in a motion.

3            MR. HEIMBACH:  Your Honor, Matthew Heimbach.  Just

4    for the record, I don't believe I've received anything from

5    the vendor in terms of giving me access to documents to

6    review.  And to be totally honest with you, I don't even know

7    how to do that.  So perhaps if the plaintiffs would like

8    to prod the vendor along to make contact or resubmit those

9    documents, it would be helpful so I can actually review them

10   and have them sent.

11           THE COURT:  Mr. Heimbach, the way I understand it is

12   that the plaintiffs have facilitated this by agreeing to pay

13   at least at the time for this third party vendor to harvest

14   the documents and then turn them over to you.  And it's -- you

15   know, I don't think you want the plaintiff involved in that

16   process, you know, of this vendor transmitting the documents

17   to you before you have had a chance to review them.  It's your

18   obligation to be in touch with the vendor and to find out

19   everything that you need to do to make sure that you're able

20   to comply with your discovery obligation.  That's what the

21   issue is, is the defendants being able to provide the

22   documents that you're supposed to provide.  So you need to be

23   in touch with the vendor.

24           And I'm going to make it real clear in the order

25   that the defendants have an obligation to -- to make sure that

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 62 of 78   Pageid#: 7232

Sines, et al. vs. Kessler, et al. - 3:17CV00072        62

1   they know what vendor needs to be able to provide these

2   documents.  And then it's -- you know, the defendants are

3   going to have to review them and turn them over to plaintiffs.

4   And that's how it works.

5            MR. HOPPER:  Judge, this is Dillon Hopper.  I have a

6   question.  I communicated some with the vendor.  How is the

7   vendor supposed to give us those documents?  Are they supposed

8   to just email those documents back whatever they discover, or

9   is that submitted to a website that we access to to review?

10           THE COURT:  I'm probably the one person in the room

11  who doesn't have that -- doesn't have that information because

12  you-all have all been in contact with the vendor.  I haven't.

13           Mr. Bloch, do you -- do you know?  Is it provided by

14  email?  Is it downloaded onto a website?

15           MR. BLOCH:  Yes, Judge.  My understanding is that

16  it's uploaded to a platform the defendants are given access to

17  to review, and I can after this call email -- if Mr. Hopper

18  doesn't already have the contact information for the vendor,

19  they are responsive and --

20           MR. HOPPER:  I have the contact information for the

21  vendor.  I've contacted the vendor.  But the issue is, in my

22  communications with the vendor, I was not informed on how that

23  information was to be relayed back to me, and I really haven't

24  heard anything from the vendor even -- I contacted the vendor

25  probably two or three weeks ago about my older cell phone that

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 63 of 78   Pageid#: 7233

Sines, et al. vs. Kessler, et al. - 3:17CV00072        63

1    they promptly mailed back to me within a day or two, but they
2    never emailed me anything about, hey, this is the data
3    collected, this is the website that you need to go to to scan
4    this information to send it.
5            So, I mean, kind of in the same boat as Mr. Heimbach
6    is.  I don't know where the information is to review.  So what
7    I'll do is I'll get in contact with the vendor, and I'll, you
8    know, inform them that we need to review this information so
9    that we can send it to the plaintiff's representation.
10           MR. BLOCH:  I think that makes sense.  I think
11   that's right.
12           MR. HOPPER:  I haven't been informed and I haven't
13   been given any access codes or websites to where this
14   information is held, whether it's on a separate server or it
15   would be mailed back to us.  But I'll -- I'll get in contact
16   with the vendor.  I'll send them an email after we're done
17   with this conversation, and I'll inform them that all the
18   defendants need access to that information so that they can
19   review it and send it to the plaintiff's representation.
20           MR. HEIMBACH:  Matthew Heimbach here.  Question:
21   How is the Court -- especially given, you know, the pro se
22   litigants, such as myself and Mr. Hopper and now Mr Cantwell
23   and such, with no legal framing, how are we expected to know
24   or properly review these documents to be able to provide them?
25   Something to us that might not seem to meet the burden of

1    what's requested, an attorney might disagree with or vice

2    versa to send erroneous documents.  How are we expected to

3    uphold our obligations to the Court when we have no knowledge

4    or training in legal matters?

5             THE COURT:  Well, you have to do your best to get up

6    to speed on it.  There are plenty of cases where there are pro

7    se plaintiffs and pro se defendants, and it's your obligation

8    to read the rules and try and comply with the discovery

9    obligations.

10            You know, it's -- we're far from actually being able

11   to identify particular issues in discovery because it hasn't

12   been -- Mr. Heimbach, it sounds like there just hasn't been

13   anything turned over yet.  If there are particular issues that

14   come up, talk to Mr. Bloch about, you know, you can -- if

15   there is anything you think you need to withhold, you have to

16   say that to him, and then you-all will discuss it and see if

17   there is a real issue.  And if there's a real issue, then you

18   can bring it to me.  But I can't provide discovery 101 lessons

19   right now.  All right.  That's your obligation to do the

20   research.

21            Mr. Cantwell, I do want to bring you up to speed

22   with what has been going on.  Mr. Kolenich has filed a motion

23   to withdraw, and I understand that you had terminated his

24   services as well.

25            MR. CANTWELL:  Yes.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 65 of 78   Pageid#: 7235

Sines, et al. vs. Kessler, et al. - 3:17CV00072      65

1          THE COURT:  All right.  So earlier in the call I
2    said that I would relieve him of his -- any obligation to
3    represent you any further in the case.
4          We did discuss -- Mr. Bloch had sent an email to the
5    Court and cc'ing everyone on it.  I don't know if you received
6    a copy of that.  It went to Mr. Kolenich, but it was sent
7    yesterday and it identified some -- where Mr. Bloch thinks
8    that the discovery is deficient.  Did you receive that?
9          MR. CANTWELL:  I'M not aware of a complaint against
10   the -- of any deficiency in my discovery.  I'm not yet aware
11   of that, no.
12         THE COURT:  It's short.  I'll read you what it says.
13   It says for Christopher Cantwell, "Plaintiffs have received a
14   partial production from Defendant Cantwell.  However, the
15   vendor has not been able to collect content from the following
16   social media accounts and websites identified as containing
17   relevant content because Defendant Cantwell has not provided
18   accurate credentials for Gab, Facebook, YouStream and certain
19   websites, christophercantwell.com and radicalagenda.com."
20         Do you think that you've provided accurate
21   credentials to the vendor for those?
22         MR. CANTWELL:  I'm certain that I have.  And there
23   was a -- and I've been back and forth with Mr. Kolenich about
24   this.  I gave them the credentials that I have.  Those
25   credentials don't -- you know, YouStream I don't even believe

1    is owned by the same company.  I don't even know -- like the

2    air space is completely different.  It is not even there

3    anymore, okay?  IBM bought them out or something.

4          The Gab credentials, I gave them the most recent

5    ones that I have, but as plaintiffs are aware I am banned from

6    Gab.  I'm surprised they can't log in using those credentials.

7    So -- I'm sorry.

8          And as for the websites, I gave them -- I sent to

9    Mr. Kolenich a dump of the sequel database which I hoped would

10   suffice.  You know, giving them images of the entire website I

11   believe is overly broad because I don't think that I should

12   have to provide the names, addresses, telephone numbers, and

13   credit cards of everybody who has purchased a sticker from me

14   in the years that that website has been online.

15         If what I gave them was all of the published posts

16   for six months prior and six months after the events here in

17   dispute, if there's something more that they want, I'm happy

18   to know what it is that they want.  But I think that asking to

19   image the entire website is incredibly overbroad.

20         THE COURT:  And Mr. Cantwell, that's something --

21   the particulars, that's something, now that you're

22   representing yourself, you'll need to take up with Mr. Bloch

23   and the other plaintiff attorneys to see if what you provided

24   is sufficient or if there's some additional information that

25   the plaintiffs want that you would agree to.  If you openly

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 67 of 78   Pageid#: 7237

Sines, et al. vs. Kessler, et al. - 3:17CV00072        67

1    have an disagreement on that, then you-all can bring it to me.

2          Something else that we discussed during the --

3    earlier in the call is that for some of these accounts the --

4    on social media platforms, if those have been disabled, that

5    it's going to require some cooperation between the defendants

6    in providing consents so that those accounts can be

7    essentially reconstituted by the platform.  And I'm going to

8    put in an order that I'm requiring the defendants to provide

9    those consents, but, also, the plaintiffs and defendants are

10   going to have to work together and with each other in trying

11   to recover any information that has been -- has been --

12         MR. CANTWELL:  I'd just like to add here, like I

13   said, I've been through this a couple times with Mr. Kolenich,

14   and I'm not certain how much has been relayed across.

15         I know that I gave the consent that was requested of

16   me to Twitter.  I believe I gave it to Facebook and to

17   Discord.  I don't even know -- I haven't the vaguest idea how

18   I would go about doing that with Gab.  Do you want me to email

19   their -- want me to try to find somebody to talk to over

20   there, I'll do it, but I've followed the instructions I was

21   given thus far.

22         THE COURT:  You missed a lot of this, but, you know,

23   plaintiff has been doing some work to try and set up a

24   process, and so that's just something that you're going to

25   need to talk with Mr. Bloch about, okay?

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 68 of 78   Pageid#: 7238

Sines, et al. vs. Kessler, et al. - 3:17CV00072        68

1          Because I understand Mr. Kolenich had said that it's

2     been difficult to get -- to get some of these companies to

3     provide the information so the defendants can provide a

4     consent.  And that's why I'm saying that you-all are going to

5     need to work together on it, okay?

6          MR. CANTWELL:  Okay, I'm happy to do this.

7          MR. BLOCH:  Judge, this is Mike Bloch.  I'm happy to

8     work with Mr. Cantwell as well.  I just would like to point

9     out that I'm not aware of objections that have been previously

10    made on his behalf to the scope of what needs to be produced,

11    and I just wanted to be clear that it's too late in the game

12    to be making those objections now.  But I'm certainly happy to

13    work with Mr. Cantwell to facilitate his production.

14         MR. CANTWELL:  Well, and I want to state -- like I

15    said, the reason I released Mr. Kolenich is because I realized

16    that even if the Court finds in my favor on that notion that

17    my interests are not being represented, perhaps, due to

18    understandable frustrations with delinquent payments.  I

19    definitely told him about this a long time.  I definitely

20    relayed these concerns especially about the website.

21         Look, the social media I don't care, but I have a

22    contractual obligation not to throw around customer data all

23    willy-nilly, okay?  I have to do that in a precise fashion.

24    For me to give up -- for me to allow the entire website to be

25    imaged by plaintiffs would be a violation of my contractual

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 69 of 78   Pageid#: 7239

Sines, et al. vs. Kessler, et al. - 3:17CV00072      69

1    obligations to my customers, okay?  So trying to -- I'm happy

2    to talk to Mr. Bloch off line and we can see what we could

3    figure out that is a more narrow request.  You know, I want

4    them to have the information they are looking for, but it

5    seems to me that that would put me in dishonor elsewhere.

6        THE COURT:  And I think -- and I think,

7    Mr. Cantwell, that issue was addressed probably over a year

8    ago at this point, and I think Mr. Kolenich was representing

9    your interests on that, and there are other defendants who

10   expressed concerns about providing exactly the kind of

11   information that you're discussing.  So I think that's

12   something you and Mr. Bloch can talk about.  Getting the

13   credit card receipts and stuff like that, you know, that's not

14   relevant, and I don't think the plaintiffs are seeking that.

15       It is -- it is far too late for objections to be

16   raised about particular discovery requests, but when the third

17   party vendor does provide documents to you and to any of the

18   other defendants, I know there are questions or issues about

19   -- and that's something that you-all can work through in

20   making your production to the plaintiffs in that, all right?

21       MR. CANTWELL:  Well, Mr. Bloch, do you have my email

22   address, I take it?

23       MR. BLOCH:  I don't know that I have.  Why don't you

24   give me the most current and working one.

25       MR. CANTWELL:  It's first name dot last name.

1    christopher.cantwell@gmail.com.

2              MR. BLOCH:  Got it.  I will email you --

3              MR. CANTWELL:  Yeah, we'll talk about this.  Like I

4    said, I want you to have the information that you want.  I

5    just want to do this the right way.  And so we'll discuss that

6    further after this, I suppose.

7              THE COURT:  All right.  Mr. Bloch, is there anything

8    as to specific discovery issues that we should discuss so that

9    we're all on the same page at this point or can we move to --

10   in discussing the schedule?

11             MR. BLOCH:  Yes, Judge, I just -- one final

12   overarching point, which is that there is a vendor report.

13   All defendants should have gotten it.  I think maybe

14   Mr. Cantwell might need to get it from Mr. Kolenich if he

15   doesn't have it already.  And it does spell out pretty clearly

16   what accounts have been collected, what accounts are unable to

17   collect, and why.  And just, generally speaking, our request

18   would be that there be a deadline to get documents from each

19   of those accounts and that it be the defendants'

20   responsibility to figure out with respect to each account how

21   to do that.  But it is kind of a roadmap for everybody.

22             MR. HEIMBACH:  Respectfully, Your Honor, this is

23   Matthew Heimbach.  I'm looking at my email account right now.

24   And going back two weeks there is not a single message from

25   the vendor.  So I'm not sure if it was not properly sent out,

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 71 of 78   Pageid#: 7241

Sines, et al. vs. Kessler, et al. - 3:17CV00072       71

1    but I don't know about the other defendants, but I do not have

2    a copy of that.

3           THE COURT:  All right.  Well, you know, I think

4    it's -- everybody is on notice that is out there and that it

5    is something that you need to get.  And so, you know, I think

6    if you don't have the vendor report you need to contact the

7    vendor and get the most recent version of it so that you can

8    fulfill your obligations.

9           All right.  What I envision as far as a schedule,

10   and it probably makes sense for you-all to talk some more and

11   submit a proposed schedule, but, you know, I think that there

12   needs to be some -- some deadlines within -- have a discovery

13   deadline so that things are not being pushed too far.

14          In the forthcoming order I'll put in a deadline for

15   the defendants to make sure all credentials have been provided

16   and are accurate and that all consents have been provided for

17   social media platforms that may have been disabled and those

18   things.

19          But I think that there needs to be, you know, a term

20   deadline for making sure that all the information is to the

21   vendor.  Needs to be some deadlines for the defendants to be

22   providing the documents that they received from the vendor to

23   the plaintiffs.  That's one thing I need to get more input

24   from you-all about how long that process is going to take.

25   But I think that we probably don't want to just have one

1   deadline on that.  We may want to have a status conference or

2   something during the middle of the deadline because I want to

3   make sure that this moves along properly and that the deadline

4   is going to be -- everyone can comply with their obligations

5   by the deadline.

6           I envision having some status conference throughout

7   this period.  And also, you know, need to at some point make

8   sure that depositions are being scheduled and they are being

9   done in a timely way.

10          Have you-all had any discussions about a potential

11  schedule to complete discovery?

12          MR. BLOCH:  We haven't, Judge.

13          THE COURT:  All right.  It makes sense to have that

14  discussion and then you-all circulate some -- circulate a

15  proposal.

16          MR. BLOCH:  I think that does make sense, Judge.

17  This is Mike Bloch.

18          THE COURT:  All right.  Mr. Kolenich, do you think

19  that makes some sense?

20          MR. KOLENICH:  Yes, I do.

21          THE COURT:  All right.  Mr. DiNucci or anybody else

22  want to weigh in on that?

23          MR. DINUCCI:  I concur, Your Honor.  I have a

24  question for the Court if I'm not stepping over the line or

25  out of bounds here.

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 73 of 78   Pageid#: 7243

Sines, et al. vs. Kessler, et al. - 3:17CV00072        73

1          Does the Court have any sense when we'd actually be

2     able to get this set for trial?  I have no idea what Judge

3     Moon's calendar is like and my -- you know, people are

4     asking.

5          THE COURT:  Well, it depends on the discovery.  I

6     mean, I don't want to set a trial date if there's no

7     reasonable chance of getting it to that trial date.

8          What I want to do is to get a schedule in place that

9     you-all think is reasonable and doable.  And then we're going

10    to -- I'm going to keep you on the deadlines and we're going

11    to have some status conferences throughout to make sure that

12    we are going to meet these deadlines, and I'm going to -- I'm

13    going to expect compliance on it.  And if we're not hitting

14    the discovery deadlines, then there are going to be -- it's

15    really -- setting the trial date puts the cart before the

16    horse if we don't have a --

17          (Interruption by the court reporter.)

18          THE COURT:  Does anybody else have anything else

19    that you want to say as to that schedule?  That's really the

20    last thing that I wanted to address today.

21          MR. BLOCH:  Judge, I do think it makes sense for us

22    to get together off line and work out some dates.  I -- and I

23    agree with you that I think it's imperative that we stick to

24    the production deadlines.  We are eager to get the documents.

25    I think, frankly, the deadlines should be sort of the last

1    deadline for them in terms of producing the things that are

2    still outstanding.

3              THE COURT:  All right.  Why don't we do that.

4              You-all -- I want you to confer over the next, you

5    know, week to possibly two weeks and give me a -- get me a

6    schedule.  I'm going to work on an order that we'll get out

7    next week for some of the discovery matters that we have

8    discussed today, and then, you know, probably have to have

9    another conference to kind of firm up the schedule, okay?

10             MR. REBROOK:  Your Honor, this is Edward ReBrook.  I

11   just want to circle back on one thing if I may.

12             THE COURT:  All right.

13             MR. ReBROOK:  If the order for depositions, whatnot,

14   can specifically include the name Burt Colucci and National

15   Socialist Movement Corporation.

16             THE COURT:  All right, it will.

17             Anybody else have anything they want to raise?

18             MR. CANTWELL:  The email that I read immediately

19   before jumping on this call said the motion to enjoin me was

20   being addressed today.  Is that not the case or has that

21   already been addressed?

22             THE COURT:  No, that is something I think I said

23   that I would address on the papers and do a written order on

24   and that I'll try and do that pretty shortly.

25             MR. CANTWELL:  So there's nothing for me to say on

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 75 of 78   Pageid#: 7245

Sines, et al. vs. Kessler, et al. - 3:17CV00072      75

1    that or should I say anything to that?

2              THE COURT:  Well, I've read what you've -- what

3    you've submitted.  Is there something additional that you want

4    to say?  We didn't have any argument on it, though.

5              MR. CANTWELL:  What I would say is what was just

6    sent to me right before I came on here is, you know, another

7    thing that the plaintiffs have pointed out that I said simply

8    stated that I was in a movie theater with a gun, which is not

9    all at unusual for a resident of New Hampshire with concealed

10   carrier license.  And then they added to this something that

11   written by somebody else and I feel like this -- you know, my

12   take on it is that the effort that the plaintiffs are making

13   is to put as much information as they can in front of you and

14   other eyes so as to put me into disfavor that is in no way

15   evidence of an unlawful threat.

16             And I -- I guess that's all I really want to say.

17   Because I haven't threatened anybody.  And the incident with

18   law enforcement coming, the police agreed with me and let me

19   go.  It was a nonissue, that somebody who doesn't even live

20   anywhere near me decided to call a movie theater to create a

21   problem for me, which is kind of becoming a frequent

22   occurrence.

23             THE COURT:  All right.

24             MS. ASHWELL:  Your Honor, this is Erin Ashwell.  May

25   I very briefly respond?

1          THE COURT:  Sure, but it's got to be brief.  This

2     call is --

3          MS ASHWELL:  Your Honor, this is what I would have

4     to say.  The plaintiffs have not come to the Court every time

5     there has been an ugly internet filing.  If we did, we would

6     be in front of you every day.  And we take the safety of our

7     counsel and the plaintiffs very seriously.  This was

8     well-briefed in July, the issue has continued, and it is of

9     utmost importance to us, and we appreciate your attention to

10    it and that you said you would be soon ruling on it.

11         THE COURT:  All right.

12         MR. CANTWELL:  There's clearly no threat to

13    anybody's safety here.  I don't even know who you people are

14    or where you are.  I'm minding my own business in New

15    Hampshire and I got everybody else trying to tear my life

16    apart.  This is not what's going on, and it's obviously --

17    there's very clearly not a threat here.  I haven't threatened

18    anybody.

19         The implication is simply that because my views are

20    so onerous to plaintiffs that every mention I make of somebody

21    is a crime, and it obviously is not the case.  There's no

22    evidence of that, which is why they are trying so hard to

23    insert other things into it.  If they had a threat from me,

24    they wouldn't be bringing a blog post from Mike Peinovich.

25         THE COURT:  Look, I think that -- I mean, I

Case 3:17-cv-00072-NKM-JCH   Document 581   Filed 10/23/19   Page 77 of 78   Pageid#: 7247

Sines, et al. vs. Kessler, et al. - 3:17CV00072      77

1    understand the issue.  It has been laid out, and I'm going to

2    address it in a written order.

3              Is there anything else about discovery or the

4    schedule that we need to address right now?

5              MR. HOPPER:  Your Honor, this is Dillon Hopper.  I

6    just wanted to let you know that I sent an email to the

7    contact I had at IDS, discovery vendor, and I'm just waiting

8    on a reply to see what I need to do to access that information

9    if it has any -- review on myself.  And I'll pass that on to

10   Mr. Heimbach and Mr. Kline and everyone else that I can that

11   this is what you need to do.

12             THE COURT:  All right.  Anything else?

13             All right.  Thank you-all for calling in.  I

14   apologize for this feedback that we've all been dealing with

15   for some time, and I will get an order out sometime early next

16   week.

17             MR. HEIMBACH:  Your Honor, I apologize.  Matt

18   Heimbach.  One final thing.  Mr. Woodard is local counsel for

19   the majority of plaintiffs -- or defendants, and I believe it

20   could be argued that my relationship with the Traditionalist

21   Worker Party is directly related.

22             Would there be any way that the Court would be

23   willing to -- you know, if Mr. Woodard has not been allowed to

24   drop asthmador (phonetic) as a client to have that as local

25   representation?

1           THE COURT:  That's something you can talk to

2     Mr. Woodard about.  If he enters an appearance on your behalf,

3     then that's fine, but I'm not even sure what you're asking.

4     But you need to talk -- talk to him if you want him to

5     represent you, okay?

6           MR. HEIMBACH:  Okay.

7           THE COURT:  All right.  Thank you-all.  Good-bye.

8     (The proceedings concluded 5:08 p.m.)

9                           **CERTIFICATE**

10          I, Mary J. Butenschoen, certify that the foregoing

11    is a correct transcript from the record of proceedings in the

12    above-entitled matter.

13    /S/ Mary J. Butenschoen, RPR, CRR                10/23/2019

14

15

16

17

18

19

20

21

22

23

24

25