Sines v. Kessler 3:17CV72 11/25/19

1                    UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF VIRGINIA
2                     CHARLOTTESVILLE DIVISION

3     ***************************************************************

4     ELIZABETH SINES, et al.,      CIVIL CASE NO.:  3:17-CV-72
                                     Charlottesville, Virginia
5                                    November 25, 2019  12:59 p.m.
              Plaintiffs,            Show Cause Hearing
6     vs.

7     JASON KESSLER, et al.,        Before:
                                     HONORABLE NORMAN K. MOON
8                                    UNITED STATES DISTRICT JUDGE
              Defendants.            WESTERN DISTRICT OF VIRGINIA
9
      ***************************************************************
10
      APPEARANCES:
11

12    For the Plaintiffs:      JESSICA E. PHILLIPS, ESQUIRE
                               KAREN LEAH DUNN, ESQUIRE
13                             Boies Schiller Flexner, LLP
                               575 Lexington Avenue, 7th Floor
14                             New York, New York  10022
                               212.446.2300
15                             jphillips@bsfllp.com
                               kdunn@bsfllp.com
16
                               MICHAEL LOW BLOCH, ESQUIRE
17                             Kaplan & Company, LLP
                               350 Fifth Avenue, Suite 7110
18                             New York, New York  10118
                               212.763.0883
19                             mbloch@kaplanhecker.com

20
      For the Defendants:     ELLIOTT KLINE, PRO SE
21

22
      Court Reporter:  JoRita B. Meyer, RPR, RMR, CRR, FOCR
23                      210 Franklin Road, S.W., Room 540
                        Roanoke, Virginia  24011
24                      540.857.5100, Ext. 5311
              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25    TRANSCRIPT PRODUCED BY COMPUTER.

Sines v. Kessler 3:17CV72 11/25/19

1                          INDEX OF WITNESSES

2      WITNESSES ON BEHALF OF THE PLAINTIFFS:                 PAGE

3      **ELLIOTT KLINE**

4      Examination by Ms. Phillips...........................7
       Examination by Ms. Dunn..............................55
5
       ///
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sines v. Kessler 3:17CV72 11/25/19

1  (Proceedings commenced, 12:59 p.m.)

2        THE COURT:  Good afternoon.

3        MS. PHILLIPS:  Good afternoon, Your Honor.

4        THE COURT:  Call the case, please.

5        THE CLERK:  Yes, Your Honor.  This is Civil Action

6  Number 3:17-CV-72, Elizabeth Sines and others versus Jason

7  Kessler and others.

8        THE COURT:  Plaintiffs ready?

9        MS. PHILLIPS:  We are, Your Honor.

10        THE COURT:  Mr. Kline, are you ready?

11        MR. KLINE:  We are, Your Honor.

12        THE COURT:  All right.  We're here on a contempt

13  hearing for defendant Elliott Kline to show cause why he

14  should not be adjudged in contempt of court by reason of the

15  facts certified by United States Magistrate Joel Hoppe in his

16  order dated October 30, 2019.

17        At the outset let me say, Mr. Kline, I'll give you

18  the opportunity to make any response you have to the facts

19  certified by Judge Hoppe about your noncompliance with

20  numerous court orders he issued, whether you should be held

21  in contempt and on the recommended sanctions Judge Hoppe

22  identified.  You'll have that chance today before I make any

23  determinations.

24        I will note for the record that, though I provided

25  you the opportunity to respond to Judge Hoppe's order and

4

Sines v. Kessler 3:17CV72 11/25/19

1   issues raised therein by last Thursday, November 21, after

2   receiving your e-mail in the early morning hours on November

3   21, in which you indicated you could not attend today's

4   hearing, I provided you another date to submit any response

5   you would like me to consider before today's hearing.  You

6   submitted an e-mail response on Friday, which I have reviewed

7   and considered.

8        I would also note that my chambers inquired with you

9   and plaintiffs' counsel what evidence or testimony you

10  intended to put on today.  Plaintiffs' counsel responded, but

11  I received no response from you.

12       I have considered Judge Hoppe's thorough and

13  well-reasoned October 30 order and certification.  I am not

14  bound by it, but the facts as certified were thoroughly

15  documented.

16       I have also independently reviewed the underlying

17  record, and that includes the numerous prior orders from

18  Judge Hoppe which brought us to this point.

19       And I have reviewed plaintiffs' response from

20  November 21, which this Court invited.  The plaintiffs have

21  said they agree entirely with the facts certified by Judge

22  Hoppe.  Indeed, they note that, if anything, Judge Hoppe

23  undercounted the number of violations of court orders by you,

24  Mr. Kline, because you also failed to answer the first

25  amended complaint, as required.

Sines v. Kessler 3:17CV72 11/25/19

1        At present there's been no direct challenge to any

2   of Judge Hoppe's facts or argument that they do not give rise

3   to civil contempt.

4        Your e-mail of November 22nd addressed a few issues

5   that touched on Judge Hoppe's certified facts; namely, one,

6   why you, Mr. Kline, have not sent your WalMart phone to the

7   discovery vendor; two, that you can't access your social

8   media accounts and so can't turn them over; and three, that

9   you have not, 22 months after plaintiffs served them,

10  received a copy of their discovery requests.

11       As I stated in my order of November 21, I am

12  considering whether Mr. Kline should be found in civil

13  contempt and what sanctions are appropriate, and not any

14  greater than necessary, in order to coerce him into

15  compliance with orders of Judge Hoppe and my own orders.

16       Mr. Kline, I understand at this point you do not

17  have counsel.  Is that correct?

18       MR. KLINE:  Correct, Your Honor.

19       THE COURT:  Okay.

20       Okay.  Directed to the plaintiffs:  It is your

21  burden to establish by clear and convincing evidence the

22  existence of another party's civil contempt.  And let's first

23  take up the issue of whether Mr. Kline should be found in

24  contempt.  We'll address arguments about remedies later.

25       Do you wish to present any evidence?

Sines v. Kessler 3:17CV72 11/25/19

1          MS. PHILLIPS:  I do, Your Honor, if I may.

2          THE COURT:  Okay.  Just a minute.

3          Let me ask you this:  Has Mr. Kline taken any action

4     to comply, to your knowledge, since October 30 and this

5     Court's order of November 14?

6          MS. PHILLIPS:  To my knowledge, he has not.

7          THE COURT:  All right.  Well, are you aware of any

8     steps or actions that Mr. Kline has taken to provide the

9     third-party discovery vendor the imaging and collection of

10    any electronic devices and social media credentials he had

11    identified on the certification form?

12         MS. PHILLIPS:  I am aware that he has submitted a

13    single device to the e-discovery vendor.  That was an iPhone

14    that he testified about at his deposition.  My understanding

15    is he sent that in to the e-discovery vendor on August 14.

16         He also identified on his certification a PC that he

17    had during the operative time period.  He has not sent that

18    in.

19         And as he indicated in his November 22 e-mail to

20    Your Honor, he also has a prepaid WalMart phone that he used

21    during the operative period that was not identified in his

22    certification, but that he did both testify to it having

23    responsive -- potentially responsive documentation, and also

24    again on his November 22 e-mail he indicated a willingness to

25    submit that to the e-discovery vendor as well.  But to my

7

Kline - Examination by Ms. Phillips

1  knowledge, he has not submitted either of those two latter
2  devices to the vendor.
3        THE COURT:  All right.  You may proceed with the
4  evidence.
5        MS. PHILLIPS:  Thank you.  I'd actually like, if I
6  may, to call Mr. Kline to the stand.
7        THE COURT:  All right.  Mr. Kline, you can come
8  around and be sworn.
9        MS. PHILLIPS:  Your Honor, may I approach with a
10  couple of binders, one for Your Honor and one for Mr. Kline?
11        THE COURT:  You may.
12        ELLIOTT KLINE, CALLED BY THE PLAINTIFFS, SWORN
13                      EXAMINATION
14        MS. PHILLIPS:  I'm sorry, Your Honor.  May I
15  approach?
16        THE COURT:  You may.
17        MS. PHILLIPS:  Thank you.
18  BY MS. PHILLIPS:
19  Q   All right.  Good afternoon, Mr. Kline.
20  A   Good afternoon.
21  Q   I'd like to start off with the representations that you
22  made to the Court on Friday, November 22, in your e-mail.
23      And I've given you a binder; and I'm going to be
24  referring to the tabs in the binder.  So if you can turn to
25  tab one, please.

Kline - Examination by Ms. Phillips

1      Do you recognize this e-mail as the e-mail that you sent

2   on November 22 to plaintiffs' counsel and this Court?

3   A    I do.

4   Q    Okay.  Great.  I'll direct your attention to the second

5   point on the first page.

6      Do you see that?

7   A    Yes.

8   Q    And you told the Court, quote, "I asked the plaintiffs at

9   the deposition to please provide me with the form or list of

10  questions for the interrogatories they wish for me to answer,

11  but I have not received those, to my knowledge, via e-mail or

12  mail."

13     Do you see that?

14  A    Yes.

15  Q    You say, quote, "I am in no way trying to avoid answering

16  these questions, but I have not seen them."

17     Correct?

18  A    Correct.

19  Q    Okay.  I'd like you to now to turn to tab two in the

20  binder.  You were deposed in this case on August 7, 2019,

21  correct?

22  A    Yes.

23  Q    And you were under oath during that deposition, correct?

24  A    Correct.

25  Q    Okay.  If you'd please turn to page -- well, first, does

Kline - Examination by Ms. Phillips

1   this look like a transcript of that deposition?

2   A   It does, yes.

3   Q   Please turn to page 415 of the deposition.  And I'll

4   direct your attention, please, sir, to line eight.

5           THE COURT:  You said 415?

6           MS. PHILLIPS:  Correct, page 415.  And, Judge,

7   you'll see that there are four pages on each single page of

8   the document, so you're looking for 415 in the upper

9   right-hand corner, towards the end of the deposition.  It is

10  105 of the larger pages.

11          THE COURT:  The last page I have is -- okay.  I'm

12  with you.

13          MS. PHILLIPS:  Okay.  415, page 415, at line eight.

14  BY MS. PHILLIPS:

15  Q   Do you recall you were asked, question:  "Separate from

16  imaging the cellphone, about the request for production and

17  the interrogatories, you intend to respond to those separate

18  documents, right?"

19      Do you remember being asked that question at your

20  deposition?

21  A   Yes.

22  Q   Do you recall when you answered, quote, "Yes, correct.

23  Yes"?

24  A   I believe this is a reference to at the time we were

25  signing over a list of discovery things, like the cellphone

10

Kline - Examination by Ms. Phillips

1   and things like that.  So I'm thinking here, because this is

2   so far in the deposition, this is what we were going over,

3   the form they handed me to sign, which were the lists of

4   cellphones, the e-mails, social media companies, things like

5   that.  So I believe I was answering yes to that, not

6   realizing that they asked me if I had any interrogatories

7   there, which I did not, and I still have not received.

8   Q   Well, let me read the next question.  The question is --

9   the first question that I just repeated to you references

10   specifically the requests for production and interrogatories.

11  You answered, "Yes, correct.  Yes."

12       The next question to you was:  "You have those documents

13  now?"

14       Your answer was:  "Correct."

15       Do you see that?

16  A   Yes.

17  Q   Okay.  I'd like to go to tab three now, please.  And you

18  might recognize this document as Exhibit 11 to your

19  deposition.  This is a July 1st, 2019 e-mail to you from

20  plaintiffs' counsel Mike Bloch.  Do you see that?

21       Michael Bloch.  Excuse me.

22       Do you see that?

23  A   Yes.

24  Q   And I want to address your attention to the line that

25  says "Attachments" on this e-mail.

Kline - Examination by Ms. Phillips

1      Do you see that?  It's on the first page of the e-mail,

2   sir.

3   A   I see it.

4   Q   And do you see that at the end, the very last two

5   documents listed are "Plaintiffs' First Set of

6   Interrogatories" and "Plaintiffs' First Set" -- "Corrected

7   First Set of Document Requests"?

8      Do you see that?

9   A   Yes.

10  Q   And this e-mail was sent to eli.f.mosley@gmail.com,

11  correct?

12  A   Yes.

13  Q   And you've confirmed multiple times in your deposition

14  that this e-mail, eli.f.mosley@gmail.com, is the correct

15  e-mail address for you, correct?

16  A   Yes.  However, since I turned in my -- the iPhone you

17  spoke of earlier, I have been almost unable to completely get

18  into that e-mail address.  Because I haven't received the

19  phone back, I haven't been able to sign into that e-mail on

20  anything but the WalMart phone that I referenced previously

21  as well.

22  Q   I understand.  We'll get to that.

23     But you understand this e-mail was you sent to you --

24  A   Yes.

25  Q   -- on July 1st --

Kline - Examination by Ms. Phillips

1   A   Yes.

2   Q   -- 2019 --

3   A   Yes.

4   Q   -- correct?

5       And that was before you handed in --

6   A   Yes.

7   Q   -- your iPhone, correct?

8   A   Yes.

9   Q   So you received this e-mail?

10  A   Yes.

11  Q   Okay.  And, again, it had attached to it the First Set of

12  Interrogatories and Plaintiffs' Corrected First Set of

13  Document Requests.

14      Do you see that?

15  A   Yes.

16  Q   I'd like you to turn to tab four now, please.

17      You attended a telephonic hearing with Judge Hoppe

18  presiding on August 8, 2019, the day after your deposition,

19  correct?

20  A   Yes.

21  Q   Great.  I'd like to turn your attention to page 12 of

22  this transcript.

23      Let me ask you first:  Does this appear to be a

24  transcript of that hearing?

25  A   Yes.

Kline - Examination by Ms. Phillips

1    Q    I'll direct your attention again to page 12, specifically

2    line 21.  It begins with the Court says:  "All right.  Now,

3    Mr. Kline, how about the -- your responses to the

4    interrogatories and the requests for production of documents?

5    Are you working on those?"

6         Do you see where that question was asked of you by Judge

7    Hoppe?

8    A    Yes.

9    Q    Okay.  Your response was:  "Oh, sorry, my phone was

10   muted.  Yes, that's one of the things I was given to look

11   through yesterday."

12        Do you see that?

13   A    Yes.

14   Q    Okay.  We'll jump down on page 13 to line 14.  The Court

15   says:  "All right.  Well, you know, I want you to start

16   working on those today, and I'll give you until next Friday

17   to -- you know, to get those responses."

18        Do you see that?

19   A    Yes.

20   Q    And your response to that was:  "That's definitely

21   doable.  That's definitely doable."

22        Do you see that?

23   A    Yes.

24   Q    And, again, this hearing occurred on August 8, correct?

25   A    Yes.

Kline - Examination by Ms. Phillips

1   Q    And the following Friday was August 16, correct?

2   A    Yes.

3   Q    But you did not submit to us the answers to the written

4   interrogatories or the document requests by August 16, did

5   you?

6   A    No.

7   Q    Okay.  Okay.  Let's turn back now to tab one, please,

8   again, your November 22 e-mail to this Court.  In the first

9   paragraph, you noted that the WalMart phone was in a storage

10  lockup that you were unable to get access to until very

11  recently.

12      Do you see where you made that representation on the

13  22nd?

14  A    Yes.

15  Q    Turn back, please, now to your deposition.  That's tab

16  two.  And I'll direct your attention to page 99 of the

17  deposition.

18          MS. PHILLIPS:  And, Your Honor, that is page 26, if

19  you're looking at the numerical numbers at the bottom of that

20  page -- or, excuse me, at the bottom of the deposition.

21          THE COURT:  All right.

22  BY MS. PHILLIPS:

23  Q    And on page 99 I'll direct your attention to line 8.  The

24  question was asked of you:  "That phone is somewhere in your

25  bags or boxes, correct?"

Kline - Examination by Ms. Phillips

1       Do you see that question was posed to you?

2   A   Yes.

3   Q   And your answer was:  "Yeah, yeah.  Like, I have a bunch

4   of moving boxes.  It's just in one of my moving boxes."

5       Do you see that answer?

6   A   Yes.

7   Q   And the next question posed to you was:  "Where are those

8   moving boxes?"

9       And you replied:  "In a storage shed."

10      Do you see that?

11  A   Yes.

12  Q   And then you were asked the next question:  "Where is

13  that storage shed?"

14      And you responded:  "In Reading, where my family is

15  from."

16      Do you see that answer?

17  A   Yes.

18  Q   And then you were asked the question:  "Do you have

19  access to that storage shed?"

20      And you responded:  "Yeah, yeah."

21  A   So this is where I thought the phone was.

22  Q   Let me finish.  Okay?

23      You responded:  "Yeah, yeah."

24  A   Yes.

25  Q   Do you see that?

Kline - Examination by Ms. Phillips

1    A    Uh-huh.

2    Q    Okay.

3    A    So this is where I thought the phone was and that's why I

4    had issues getting it.  I thought this was in the storage

5    shed that my family has, but it was in a storage unit off our

6    property.  I had to get access to that storage unit instead

7    of the one that was on the property, which is the shed I

8    thought my stuff was in.

9    Q    And this is -- again, your deposition took place on

10   August 7 of 2019, correct?

11   A    Correct.

12   Q    When did you get access to this storage shed?

13   A    I want to say three weeks ago, maybe two weeks ago.  Very

14   recently.

15   Q    Okay.

16   A    It was around the time that I sent the first e-mail

17   response to you to -- from the eli.f.mosley account,

18   explaining, please send further e-mails to the

19   deplorabletruth e-mail; so it was the day after -- it was the

20   day before that that I got access to the storage unit.

21   Q    Let's go ahead and jump ahead to that e-mail.  Are you

22   referring to your October 18 e-mail?  If you'd look at tab

23   six, please.

24        Do you recognize --

25   A    Yes.  Yes.

17

Kline - Examination by Ms. Phillips

1   Q   Do you recognize this e-mail as an e-mail that you sent
2   to plaintiffs' counsel as well as Judge Hoppe's chambers?
3   A   Correct.
4   Q   Okay.  And in it you refer to having access to -- excuse
5   me.  You refer to not having access to your e-mail address
6   eli.f.mosley@gmail.com, correct?
7   A   Correct.
8   Q   Okay.  And you indicate that you "finally have been able
9   to log in without Google's security authentication preventing
10  me from accessing the e-mail," correct?
11  A   Correct.
12  Q   Do you anywhere in this e-mail reference the WalMart
13  phone?
14  A   No, I do not, but that's how I was able -- this e-mail is
15  sent from that phone.
16  Q   If you had the WalMart phone as of October 18 of 2019,
17  why were you not able to get into contact with plaintiffs'
18  counsel before that nor access any of these documents,
19  according to you?
20  A   I'm not sure I follow.  I only got this phone the day
21  before this e-mail was sent.  And when I got the phone,
22  that's when I was able to get into the eli.f.mosley account
23  so that I could get your e-mail so that I could respond.
24  Q   Well, let me ask you this.  So my understanding is that
25  now that you have the WalMart phone and your iPhone, you have

Kline - Examination by Ms. Phillips

1   complete access to your e-mail accounts.  Correct?

2   A   No, that is not correct, because the phone has to be

3   turned on.  Minutes -- it's a track phone, so I have to

4   actually buy time to get into it, like, individually by the

5   minute.  So it wasn't fully charged.  Like, it didn't have

6   all the minutes on it to be able to get into the e-mail.

7   Q   But you could add minutes, couldn't you?

8   A   I could what?

9   Q   You could have added minutes, couldn't you have?

10  A   I didn't have any access to any minutes or anything like

11  that, no.

12  Q   Could you have -- let me ask you this.  According to this

13  e-mail you said you do have access to the

14  deplorabletruth@gmail.com on your iPhone, correct?

15  A   Correct.

16  Q   Now, you could have forwarded -- since you did have

17  access at this point, on October 18, access to your

18  eli.f.mosley@gmail.com e-mail, you did have access to court

19  documents that you could have forward to your deplorabletruth

20  e-mail, correct?

21  A   Well, the issue was that I had about, like, five or six

22  minutes left on the phone, so that's when I sent this e-mail.

23  And the next day, when I went to go in to do something like

24  that, I actually went in to get something else not related to

25  the case from that e-mail address, and it immediately asked

Kline - Examination by Ms. Phillips

1   me to put more minutes on so I had service.

2   Q   And did you do that?

3   A   No, because I didn't have the ability to get any more

4   minutes on that.  I didn't have any money to get the track

5   phone recharged or whatever.  It was going to be, like, $60

6   to get the minutes put on a dumb phone.

7   Q   Okay.  But, again, you could have paid money if you had

8   it to get access to --

9   A   Well, this is why --

10   Q   Sir?  Sir?

11   A   -- in this e-mail I asked, Please e-mail me a response

12   back to deplorabletruth.com.  And also I gave you guys my new

13   phone number.

14       And I didn't receive an e-mail at that e-mail address

15   until I e-mailed you guys again on this phone number.  And I

16   never received a call to update me.  From this e-mail, I

17   never got anything back.

18   Q   You never got anything back in response to this, but you

19   knew that you had discovery obligations that were

20   outstanding, correct?

21   A   Correct.

22   Q   And did you take any efforts or any steps -- did you make

23   any efforts or steps to come into compliance with any of

24   those discussions?

25   A   Yeah, the e-mail here on tab six, where I explained to

Kline - Examination by Ms. Phillips

1   you guys that I don't have access to my eli.f.mosley account

2   consistently, and to please forward any of the remaining

3   discovery requests to deplorabletruth.

4   Q   No, but, sir, that is an excuse for why you couldn't

5   participate in the litigation.  I'm asking you whether or not

6   you took any affirmative steps to come into compliance with

7   the nine different discovery orders that you are out of

8   compliance with as of today.

9   A   The reason I'm asking for the -- I'm asking for the

10  e-mails to be sent to deplorabletruth is that's how -- that's

11  the only e-mail address I had consistent access to, and still

12  only have consistent access to.  And the issue was I had

13  still not received the phone that I sent to you guys on

14  August --

15  Q   I understand.  Let's talk about that.  Go back to tab

16  one.

17      So you complained about -- in this e-mail about the

18  third-party vendor that still has your phone, your iPhone,

19  correct?

20  A   Correct.

21  Q   And you sent that iPhone in to the vendor on August 14,

22  2019, correct?

23  A   Correct.

24  Q   Okay.  If you go to tab five, please, do you recognize

25  this as an e-mail exchange that you had with the eDiscovery

Kline - Examination by Ms. Phillips

1    vendor in this case?

2    A    Yes.

3    Q    If you go to the second page of tab five, your e-mail,

4    eli.f.mosley, sent to Barbara Bibas on August 14, 10-14, do

5    you see that?

6    A    Yes.

7    Q    Okay.  And you say here, "I just wanted to let you know

8    that I sent out the phone this afternoon during lunch,"

9    correct?

10   A    Yes.

11   Q    Okay.  And it says, "The PC I'm still working on and I'm

12   not even sure it will still turn on."

13        Do you see that?

14   A    Yes.

15   Q    Okay.  I want to ask you about the first question.  So

16   you had already sent in the phone to the eDiscovery vendor at

17   this point, correct?

18   A    Correct.

19   Q    Okay.  And yet take a look at the e-mail address that

20   you're sending this from.  This is eli.f.mosley@gmail.com;

21   the e-mail address you just represented to the Court that you

22   did not have access to once you got rid of your other phone

23   to the vendor?

24   A    Correct.  I was able to get into a family computer, and I

25   was able to get into the eli.f.mosley account still; but when

Kline - Examination by Ms. Phillips

1   I went back to try to get into it, it gave me the two-factor

2   authentication issue that we talked about earlier.

3   Q    Uh-huh.  Go back to the first page of tab five, please,

4   and I'll direct your attention to Ms. Bibas's response to

5   you, and in particular, the second paragraph.  It reads:

6   "Also, would you please fill in the passwords for each of the

7   accounts listed in the below chart, as well as a pin, if any,

8   for the iPhone."

9        Do you see that?

10  A    Correct.

11  Q    Did you respond to this e-mail from Ms. Bibas?

12  A    I believe I did.  I just don't know if the response is in

13  here or not.

14  Q    Okay.  Well, you were required to bring evidence to

15  establish your alleged compliance with the discovery orders.

16       Do you have that e-mail with you today?

17  A    No.

18  Q    I'd like to ask you to take a look at tab nine, please,

19  sir.  And I'm looking at the first page on tab nine.  This is

20  a Thursday, September 5th, 2019 e-mail from Ken Kim to

21  Barbara Bibas.

22       Do you see that?

23       Or excuse me.  To Barbara Bibas and

24  eli.f.mosley@gmail.com.

25       Do you see that?

Kline - Examination by Ms. Phillips

1    A    Yes.

2    Q    Okay.  And it says:  "Mr. Kline, we received a package

3    last week from a Bruce Kline containing a mobile device.  Can

4    you please confirm that this is your device that you shipped

5    for collections?  And, if so, can you please provide the

6    passcode and iTunes password as well?"

7         Do you see that?

8    A    Yes.

9    Q    Okay.  So at least as of this date, September 5, the

10   eDiscovery vendor did not yet have the passcode to your

11   phone, correct?

12   A    Yes.

13   Q    And, in fact, you didn't actually provide that passcode

14   until October 18, correct?

15   A    Yes.

16   Q    Okay.  So you turned in the phone on August 14th, but did

17   not turn in the passcode until October 18th?

18   A    Yes.

19   Q    Do you understand that?

20   A    However, when we were ending the deposition in, I believe

21   it was August, I had said I was going to be changing the

22   password to all zeroes to make it an easy phone to get in.

23   Q    Well, you've got your deposition transcript.  Please go

24   ahead and find that testimony for me.

25   A    It was at the end, I believe, after the meeting was done.

Kline - Examination by Ms. Phillips

1    Q    You mean it was off the record?

2    A    I believe so.

3    Q    There's no record of your representation?

4    A    I mean, I assume, because I was sending it in and I was

5    in contact with them, they had told me, please let us know if

6    you have any questions or issues, we were -- I was filling

7    out the last part of my signature on the forms for all the

8    required credentials and things like that, and as I signing

9    it in, I was filling in it, that's what I had said to them,

10   yes.

11   Q    Okay.  Do you understand that the passcode to your iPhone

12   was necessary so that the vendor could open and access your

13   iPhone?

14   A    I didn't know that, no.  That's why I made it all zeroes.

15   I assumed they would be able to get into it very easily.

16   Q    Well, do you understand that, without knowing the

17   passcode, the vendor couldn't get into the iPhone?

18   A    Right, but I didn't --

19   Q    Do you understand that?

20   A    I didn't know.  So they sent this e-mail to me asking for

21   the password on September 5.  This is when I did not have --

22   I was having trouble getting access to the eli.f.mosley

23   account.  So I didn't know they were requesting this password

24   until my next response e-mail.

25   Q    Well, go back to tab five, I believe, where again Barbara

25

Kline - Examination by Ms. Phillips

1  Bibas asked you for the passcode, for the pin to your iPhone,

2  if any, on August 14 of 2019.

3  A   Correct.  But what I'm saying is I didn't have -- if you

4  look through this, I had difficulties getting into that

5  e-mail to even respond to them to let me know.  So I didn't

6  know that they didn't have the ability to get into the phone

7  until I eventually did respond -- I'm not sure which e-mail

8  it was -- telling them it was all zeroes.

9  Q   Well, again, if you look at tab five, at the second

10 page -- and you've conceded here under oath that you did have

11 access on August 14 to the eli.f.mosley@gmail.com; you said

12 through some family computer or something.

13     We can move on.  I'd like to ask you about your e-mail

14 passwords.  Have you ever provided your e-mail passwords to

15 the eDiscovery vendor?

16 A   No.

17 Q   Do you understand that Judge Hoppe's orders -- under

18 Judge Hoppe's orders, social media credentials include e-mail

19 account passwords?

20 A   I did not know that.  I thought that the signature that I

21 signed over for Twitter and the various websites, that they

22 could access my accounts information, I thought that included

23 their ability to get into the accounts.  I didn't know you

24 guys needed the passwords for the e-mails specifically.

25 Q   Okay.  Go ahead and look at tab eight, please.  This is

Kline - Examination by Ms. Phillips

1   an August 19, 2019 e-mail from plaintiffs' counsel Yotam

2   Barkai to you.

3        Do you see that, Eli Mosley?

4   A   Yes.

5   Q   And I'll direct your attention to the second point, the

6   second paragraph down.

7        Do you see that?

8   A   Number two?

9   Q   Correct.

10  A   Yes.

11  Q   "When you fill out the form, list all of your e-mail

12  addresses and social media accounts that may contain relevant

13  documents, whether or not you've previously listed them, and

14  list the passwords for each e-mail address and social media

15  account."  And then subparagraph (a) says, "The e-mail

16  addresses that you are required to list include, but may not

17  be limited to, eli.f.mosley@gmail.com and

18  deplorabletruth@gmail.com and eli.mosley@identityevropa.com."

19       Do you see that?

20  A   Yes.

21  Q   I'd like to talk to you about your social media accounts.

22  I understand that you indicated that you do not have access

23  to your social media accounts on Twitter, Facebook, or GAP,

24  or Discord.

25       Is that correct?

Kline - Examination by Ms. Phillips

1    A    Correct.

2    Q    Okay.  And that's because those accounts were banned,

3    correct?

4    A    Correct.

5    Q    Okay.  And I believe you've filled out now some consents

6    to give your permission for Twitter to disclose information

7    from those banned accounts?

8    A    Correct.

9    Q    Okay.  I'd like you to look back at tab three, please.

10   This is Exhibit 11, again, to your deposition, the July 1st

11   e-mail from Michael Bloch to you.

12   A    The front page or the back page?

13   Q    I want you to start at the front page, and go all the way

14   down to the very last open bullet at the bottom of that page.

15       Do you see it?

16   A    Yes.

17   Q    It says, "Please complete the attached consent form.

18   Once the form is complete, please submit a request through

19   the privacy form at," and then it gives a web address.

20       Do you see that?

21   A    Yes.

22   Q    And then it explains, "In the section of the form

23   entitled, 'Please enter the specific information you are

24   requesting,' you must do two things."

25       And then if you turn the page, it explains what those two

Kline - Examination by Ms. Phillips

1    things are.

2        And you haven't completed the privacy form at this

3    website, https://help.twitter.com/forms/privacy, correct?

4    A   Correct.  I thought the form that I filled out at the

5    deposition was this essentially this form.  It was a privacy

6    request.  Was it not the same thing?

7    Q   Well, what you received was consents, the consent form,

8    but this e-mail clearly instructs you that, in addition to

9    the consent form, you also have to submit the privacy form.

10       Do you see that?

11   A   Right.  But this is before the deposition.

12   Q   Correct.  But you received this e-mail, correct?

13   A   Correct.

14   Q   We established that?

15   A   Yes.

16   Q   Okay.  Let's turn to tab seven, please.  You appeared at

17   a July 2nd hearing before Judge Hoppe, correct?

18   A   I don't see that.

19   Q   Excuse me?

20   A   Oh, I see that.  Yeah, here it is.  This is a phone call,

21   so I didn't appear; but I was on the phone, yes.

22   Q   Right.  Okay.  Correct.  And does this -- this appears to

23   be a transcript from that July 5th --

24   A   Yes.

25   Q   Excuse me, July 2nd hearing, correct?

Kline - Examination by Ms. Phillips

1   A   Yes.

2   Q   Great.  I'd like you to turn to page 19 of that

3   transcript, line 22.  And the Court says:  "All right.  I

4   think for any social media accounts, whether you yourself are

5   able to access those or not, you would need to identify all

6   of the social media accounts and then allow consents for

7   those to be -- you know, to be" --

8       And then you say:  "Yeah, I'm totally fine with going

9   through that.  The biggest issue, I would say, for Facebook

10  and Twitter would be both of those I used under, you know,

11  burner e-mails, I guess you would say, like, not real e-mail

12  addresses.  So I don't know if there's a way of verifying who

13  I am or that I was the owner or anything like that, but I'm

14  more than happy to go through with that process to, you know,

15  talk to Twitter or Facebook, or whatever, and, you know,

16  prove that you guys are -- you know, that they can hand over

17  that information to the Court."

18      Do you see your response there?

19  A   Yes.

20  Q   But, again, you have not actually worked with Twitter to

21  get us access?

22  A   Well, I filled out the consent form at the deposition in

23  August.

24  Q   I understand that.  But you did not, in fact, fill out

25  the privacy form.  You've conceded that, correct?

Kline - Examination by Ms. Phillips

1    A    Correct.  I just thought that that -- you understand what

2    I'm saying?  I thought that the form I filled out at the

3    deposition was that privacy form, or was the form I needed to

4    fill out to give Twitter's approval to give it to you guys

5    for discovery.

6    Q    I'd like to ask you a couple more questions about your

7    family computer that you conceded you were able to access the

8    eli.f.mosley account on.  You were able to access that on

9    your family computer despite Google's two-factor

10   authentication, correct?

11   A    Only once or twice.  Then it started kicking me out

12   again, yes.

13   Q    Okay.  And you sent e-mail from that account, correct?

14   A    From the Eli, yes, yes.

15   Q    Okay.  And you received e-mail on that account, correct?

16   A    Yes, once I had access to it on the family computer.  I

17   was just trying to get into it any way I could, so I tried an

18   older computer that I had logged into that account a long

19   time ago, so it didn't kick me off right away.

20   Q    How often did you access that account on your family

21   computer?

22   A    Only the number of times I sent e-mails.  So two or maybe

23   three times, where I'm explaining that I need to have e-mails

24   sent to the deplorabletruth one.

25   Q    Okay.  And who owns that computer?

Kline - Examination by Ms. Phillips

1   A   My family; so my parents.

2   Q   Okay.  And where is it located?

3   A   In their house in Reading.

4   Q   In Reading?

5   A   Yeah.

6   Q   Did you use that particular computer, your family

7   computer, to discuss anything with regard to the planning of

8   Unite the Right?

9   A   No.

10  Q   Is the family computer connected to a printer?

11  A   No.

12  Q   Did you ever print out the interrogatories or the

13  requests for production that you received from us?

14  A   No.

15  Q   When you had access to the eli.f.mosley account on your

16  family computer, did you take any action to comply with Judge

17  Hoppe's orders that you were out of compliance with?

18  A   Yes.  My action was to e-mail them a new contact e-mail

19  to get it to me.  And I sent you guys notice, but I switched

20  from the old iPhone right before I sent it in to a new

21  iPhone.  And when I did that, I was able to log in to the

22  deplorabletruth e-mail address as well as the eli.f.mosley

23  address.  And I was able to be on that phone for a brief time

24  with that eli.f.mosley address, and then it kicked me off

25  because I had a security warning, Google security alert.  And

Kline - Examination by Ms. Phillips

1   I was still able to be on the deplorabletruth e-mail address

2   on that phone.

3       So I had asked -- so I could comply, I asked that

4   anything that had been pertaining to the case discovery be

5   sent to the deplorabletruth e-mail address, so I could comply

6   with the discovery.

7   Q   Okay.  You've received now the various discovery orders

8   that Judge Hoppe has issued, correct?

9   A   Yes, I believe so.

10  Q   Okay.  Just to cover ground that we've already covered

11  again, you have not submitted any answers to the

12  interrogatories served on you, actually 22 months to the day,

13  January 25th, 2018; is that correct?

14  A   Correct.

15  Q   And you have not given any answers to our requests for

16  production, also served 22 months ago today, correct?

17  A   I provided a phone, if that counts for that or if that's

18  part of that form or what --

19  Q   But you haven't you actually answered any of the requests

20  for production, correct?

21  A   Correct.  Although, I'm not sure what the form is that I

22  filled out at the deposition.  I filled out a form explaining

23  all my accounts and what they were, listing them out.  And I

24  had to, like, sign it, like, 11 times or something crazy like

25  that.  I'm not sure what that -- if that was another one of

Kline - Examination by Ms. Phillips

1    the production forms or not, but I did fill that one out as
2    well.
3    Q    The Twitter consents?
4    A    Yes.
5    Q    And we've already established that you've not submitted
6    your e-mail passwords to the plaintiffs or to the vendor,
7    correct?
8    A    Correct.
9    Q    And you have not submitted the privacy form to Twitter,
10   correct?
11   A    Correct.
12   Q    Okay.  And you've not submitted your WalMart -- prepaid
13   WalMart phone to the vendor, correct?
14   A    Correct.
15   Q    And my understanding is you listed as certification -- on
16   your certification the PC that you own, correct?
17   A    Yes.
18   Q    Okay.  But you have not yet submitted that computer to
19   the vendor?
20   A    That computer -- so that was a computer, I explained --
21   it's in the deposition somewhere.  I'd have to go through and
22   look.  But I explained that I didn't know where that computer
23   was or if I even had it still.  That was a computer that I
24   had no communications about Unite the Right on.  That
25   computer was very old.  It was from when I was in the Army.

Kline - Examination by Ms. Phillips

1    And when I had moved to North Carolina for some time, I had

2    done that moving, we had dropped the computer, and it

3    basically fell apart.  This is well before Unite the Right

4    was planned, number one or two, or anything like that.

5         So when I went and looked in the storage shed at my

6    parents', as well as the storage unit off their property, I

7    looked to see if it was in any of those, even in a broken

8    state.  And it wasn't in any of those.  So I assumed when we

9    made that move that we had to throw it out, because it was

10   utterly destroyed.

11        But I did mention it in the deposition because they had

12   asked me if there was anything.  I just wanted to be very

13   honest with all the technology I used even before Unite the

14   Right, and things like that.  But there was no communication

15   about Unite the Right or anything like that on that computer.

16   All that communication was done, as I said in the deposition

17   a lot, on my phone that I already handed over to the Court.

18   Q    Okay.  You posted on the social media platform Discord

19   during 2017, correct?

20   A    Yes.

21   Q    And, in fact, your posts on Discord in 2017 indicated

22   that you had an operative computer at that time, correct?

23   A    I believe that that was brought up during the deposition.

24   I'd have to look over it again to see what the reference was,

25   but I believe what I was referencing was not that I had an

Kline - Examination by Ms. Phillips

1    actual PC, but I was using somebody else's for something

2    else.  But I don't remember.

3    Q   Go ahead and look at it.  Why don't you turn to tab ten,

4    please.

5        You confirmed at your deposition that one of your Discord

6    handles was Eli Mosley hashtag 5269, correct?

7    A   Correct.

8    Q   Okay.  Do you see at the very top there, it's a post

9    dated March 31, 2017, 6:37 p.m.?

10       Do you see that?

11   A   Correct.

12   Q   And you say, quote:  "You should get a separate phone for

13   Alt-Right stuff, then arm with a kill password to go off

14   between noon and 1 p.m. each day.  I activate it before I go

15   out and do things."

16       Do you see that post?

17   A   Correct.

18   Q   Okay.  And then a minute later, 6:38, a few lines down,

19   Eli Mosley 5269 on the same date, you say:  "So if I don't

20   put in the password between noon and 1 p.m. while I'm out

21   trolling Jews, it will erase the phone."

22       Do you see that?

23   A   Yes.

24   Q   Okay.  And then if you'd turn the page, please.  And

25   again at the same time, 6:38 p.m., second down line, Eli

Kline - Examination by Ms. Phillips

1   Mosley posts, quote:  "Well, it's not a huge deal because the
2   phone is backed up on my PC."
3   A   Correct.
4   Q   So you were referencing to your having a PC in March of
5   2017?
6   A   Yes, but --
7   Q   Okay.  I'd like to talk with you about your preservation
8   of your documents.  Your previous counsel in this case was
9   Mr. James Kolenich, correct?
10  A   Yes.
11  Q   Okay.  And Mr. Kolenich told you, while he still
12  represented you, about your discovery obligations, correct?
13  A   Yes.
14  Q   Okay.  But you didn't, in fact, preserve all of your
15  documents and communications, did you?
16  A   I didn't.
17  Q   Okay.  You testified in your deposition that you had an
18  Identity Evropa e-mail address in 2017, correct?
19  A   Correct.
20  Q   And that is eli.mosley@identityevropa.com, correct?
21  A   Yes.
22  Q   And you conceded at your deposition that you used that
23  e-mail address to communicate with defendants about Unite the
24  Right?
25  A   Not defendants, but the press mostly, yes.

Kline - Examination by Ms. Phillips

1    Q    But about Unite the Right?

2    A    Correct.

3    Q    And you also used that to send documents that you had

4    created on Google Docs on your phone to Discord, correct?

5    A    Correct.

6    Q    Okay.  But you don't have access to that e-mail account

7    anymore, do you, the Identity Evropa e-mail address?

8    A    No.  When I stopped being a member of Identity Evropa,

9    the leadership there, which was the -- likely Nathan Damigo,

10   had pulled my e-mail address access from me.  So they had an

11   administrator account for the Identity Evropa domain, I

12   guess, and when they -- when we parted ways, they completely

13   pulled my access.

14   Q    Okay.

15   A    So I wasn't able to get into at all or anything like

16   that, so I have no way of --

17   Q    And that was in either -- I believe you testified in your

18   deposition, in either March or May of 2018, correct?

19   A    Correct.  About that time, yes.

20   Q    And that was after this lawsuit was filed in 2017,

21   correct?

22   A    Yes.

23   Q    Okay.  And you didn't save those Identity Evropa e-mails

24   anywhere, did you?

25   A    Not outside of the e-mail address, the e-mail itself, no,

Kline - Examination by Ms. Phillips

1   because I wasn't anticipating that I'd be removed from access

2   to it.

3   Q   You didn't take screenshots of those e-mails, correct?

4   A   No.

5   Q   You didn't back them up on an external drive, did you?

6   A   No.

7   Q   And you didn't back them up to the cloud, did you?

8   A   Yes.

9   Q   Okay.  And you sent private Discord messages to some of

10  the defendants in this case, correct?

11  A   Yes.

12  Q   Okay.  You sent private Discord messages to Mr. Kessler,

13  correct?

14  A   Yes.

15  Q   You sent private Discord messages to Mr. Robert Ray?

16  A   Is that --

17  Q   Azzmador.

18  A   Azzmador, yes.

19  Q   You sent private Discord messages to Nathan Damigo?

20  A   Yes.

21  Q   You sent private Discord messages to Invictus Soul?

22  A   I don't believe so.  Perhaps.

23  Q   We can take a look at your deposition where you testified

24  you did.

25  A   Okay.

Kline - Examination by Ms. Phillips

1    Q    If you'd take a look at page 156 of your deposition.

2         But you don't have access to Discord today, correct?

3    A    Correct.

4    Q    You don't have access to those private messages that you

5    sent?

6    A    No, I do not.

7    Q    Okay.  And, again, that's because you were banned from

8    Discord?

9    A    Correct.

10   Q    Okay.  And you didn't take screenshots of those Discord

11   messages, did you?

12   A    No.

13   Q    Or save them in any way?

14   A    No.

15   Q    Okay.  Mr. Kline, when was the last time you were

16   employed on a full-time basis?

17   A    Before Unite the Right.  A very long time ago.

18   Q    2016?

19   A    Yes.

20   Q    Okay.  And so you are not employed currently on a

21   full-time basis?

22   A    Not on a full-time basis, no.

23   Q    And do you live with your parents in Reading,

24   Pennsylvania?

25   A    Sometimes.  I know I travel a lot to go do, like, odd

Kline - Examination by Ms. Phillips

1    jobs for people.  People post things like odd jobs to do.

2    That's kind of what I'm doing to make money.  So sometimes

3    I'll spend, like, two weeks at a time there, and then I'll

4    spend a month, two months away.

5           THE COURT:  What do you do to make -- the odd jobs,

6    what do you do to earn money?

7           THE WITNESS:  Like, help people put together, like,

8    sheds and things like that.  Like, manual labor, manual

9    stuff.  Help people, like, fenceposts on their farms, things

10   like that, just in my general area, or all the way up, like,

11   to the New York area, where the rest of my family is from.

12          THE COURT:  Okay.

13   BY MS. PHILLIPS:

14   Q   Mr. Kline, when Google supposedly kicked you out of your

15   eli.f.mosley account, the one that you have testified that

16   you were able to access through a family computer, do you

17   have any documentary evidence to support that happening?  Did

18   you take a screenshot, for example?

19   A   No, I didn't take any screenshots of e-mails or anything

20   like that.  But every time -- like I said, every time I -- so

21   whenever I was logging into the eli.f.mosley address from the

22   family computer, and then the other time on the WalMart

23   account, I was able to get in, and then when I -- when the

24   screen goes dark or when I go away for a second and I come

25   back in, it boots me out and it asks for, like, the

Kline - Examination by Ms. Phillips

1    authentication code sent to the text message, which would go

2    to the phone number from my old account, or my old phone that

3    the eDiscovery still has.

4    Q    You know that you can turn off two-factor authentication,

5    correct?

6    A    I'm not sure how you could turn it off without having

7    access to the original e-mail address.

8    Q    But you just testified that you had access to the

9    original e-mail address at least three separate times on the

10   family computer and on the WalMart phone.

11   A    What I mean is so the -- maybe I would be able to turn

12   off the two-factor authentication.  I'm not sure how to do

13   that, how to go in and do anything like that.

14        However, what I know is that when I went into the

15   settings, security settings, to see if I could stop it from

16   kicking me out every time I went away, it asks for a code

17   again.  And that code doesn't go -- that code wasn't going to

18   the deplorabletruth e-mail address, which is what I thought

19   it should be doing, but it was not going to that e-mail

20   address, which would have made it really easy for me to be

21   able to get back in.

22        It could be -- I don't remember that I did this or not,

23   but it could be that when I'm in the eli.f.mosley account

24   that I had the Identity Evropa e-mail address as the primary

25   e-mail.

Kline - Examination by Ms. Phillips

1    Q    Okay.  I think you just referenced every time you've

2    gotten in to access your eli.f.mosley gmail account since

3    August 14.

4         How many times have you been able to access that account

5    since August 14?

6    A    I'm unsure.  I sent an e-mail each time, though.

7    Q    Okay.  And it just so happens that you sent e-mails on

8    the dates where you had pending court obligations?  It just

9    so happened that you happened to get e-mail access to the

10   eli.f.mosley gmail account on dates, for example, where on

11   October 18 Judge Hoppe held a conference call with all the

12   parties to the case?

13   A    On both those accounts -- on all those accounts I've had

14   other people, other defendants -- I believe one of the times

15   it was Chris Campbell maybe.  Well, other defendants had

16   gotten in touch with me and said, "Hey, you need to be here."

17   Like, I didn't know previously about it.  They got in touch

18   with me on my phone, on my new phone, to get in touch with

19   the Court for whatever was happening.

20   Q    So you've been in contact with a lot of other

21   defendants --

22   A    Only --

23   Q    -- subsequent to turning in your original iPhone to the

24   eDiscovery vendor; is that what you're saying?

25   A    Yes, only insofar as, "Hey, you have this specific

Kline - Examination by Ms. Phillips

1   obligation; I don't know if you know about it or not, but you

2   need to be here at this time, or you need to get something

3   done at this time."

4   Q    Your new iPhone has a different phone number, correct?

5   A    Correct.

6   Q    How did they get your new phone number?

7   A    I actually have no idea.  I think it's because when I

8   sent the e-mail to you guys saying I have a new phone number,

9   I had -- somehow they had gotten it.  Because originally the

10  intention of that phone number was that I would not get phone

11  calls from people on the Alt-Right, because I haven't been a

12  part of that group for two years now; that they wouldn't have

13  my phone number.

14      However, after I e-mailed the Court and the plaintiffs my

15  new phone number, shortly after, like, you know, two or three

16  days later, I believe it was, I was getting phone calls or

17  text messages from people, members of the Alt-Right, again.

18  And there's no way they would have had the phone number other

19  than that.

20  Q    Sounds very convenient.

21      We would like you to produce those communications, so we

22  are going to need you to turn in your new iPhone as well to

23  the discovery vendor so that we can see those documents.

24  A    That's fine, but I need to have some form of

25  communication.  I mean, most of why we're here today, I

Sines v. Kessler 3:17CV72 11/25/19

1    believe, is because I'm having issues with communication

2    because of me not having my phone as the primary access to my

3    e-mail address.  So do you guys know or do we know what is

4    going on with imaging?  Because when I spoke to Mr. Bloch

5    here during deposition, it seemed like it was going to be a

6    relatively quick imaging process.  And that happened in

7    August.  It's now November.  I still haven't received the

8    phone.

9        I understand that they didn't have that password that

10   they needed until October.  However, they still said in the

11   deposition it should take no more than a week or two.

12   Q    Assuming you gave them your passcode.  But, again, we've

13   established that you didn't give them your passcode.

14   A    On October 21st.  It's now well past October 21st.

15   Q    Understood.  And you've received repeated communications

16   from plaintiffs' counsel about also giving access to your

17   e-mail address -- excuse me, your e-mail passwords, so that

18   the vendor can actually get access to the documentation that

19   you allegedly have on your phone.

20       Do you understand that?

21   A    Yes.

22            MS. PHILLIPS:  Okay.  I have nothing further, Your

23   Honor.

24            THE COURT:  All right.  You may step down -- wait

25   just a minute.

Sines v. Kessler 3:17CV72 11/25/19

1          You sent the Court information, e-mail, that you
2    would not likely be here because you could not afford to get
3    here.  How did you get here?
4          THE WITNESS:  I had a family member drive halfway.
5    Then my father picked me up the other half of the way and
6    drove me the rest of the way.  It was a very, very long trip.
7          THE COURT:  Okay.
8          THE WITNESS:  And we worked that out on Sunday.
9          THE COURT:  Okay.  Someone said you were flying in.
10   You didn't fly in?
11         THE WITNESS:  No.
12         THE COURT:  Okay.
13         THE WITNESS:  We drove.  It was a ten- or 11-hour
14   drive.
15         THE COURT:  Okay.  You may step down -- well, remain
16   there just a minute.
17         Are you going to have any other evidence?
18         MS. PHILLIPS:  No, Your Honor.  I would like the
19   opportunity to sort of sum up what we've heard, if I'm
20   permitted to.
21         THE COURT:  Okay.
22         MS. PHILLIPS:  But otherwise, no other evidence.
23         THE COURT:  All right.  While you're on the stand,
24   if you have anything you wish to say concerning this issue --
25         THE WITNESS:  Yeah.  Yes, Your Honor.  I would say

Sines v. Kessler 3:17CV72 11/25/19

1   that, essentially, I've been trying to comply with the

2   discovery since the deposition I gave in August.  I've been

3   trying to comply entirely with discovery.  However, not

4   having my primary phone that I sent them in has been an

5   issue.

6          I understand there's been issues with they still

7   have the phone because they don't have the e-mail passwords.

8   I was not aware of that until just now.  And that's the

9   reason they --

10          THE COURT:  Was it 22 months ago you were to --

11          THE WITNESS:  Well, they were sent to my family's

12   house; and at the time, I wasn't living there.  So when I

13   got -- when I came back to my parents' house, they had a

14   stack of stuff from the Court.  And I went through as much of

15   it as I could, but, you know, I'm representing myself right

16   now, so it's kind of hard.

17          THE COURT:  But when you had attorneys, the

18   attorneys apparently indicated you wouldn't cooperate with

19   them.

20          THE WITNESS:  The communication issues I had with

21   the attorneys were similar to these ones, where they would

22   call me the day before something was due, and I would be

23   working or doing something else, because at the time I was

24   working a third-shift job, so they were calling me on --

25          THE COURT:  Where was that third-shift job?

Sines v. Kessler 3:17CV72 11/25/19

1          THE WITNESS:  It was upstate in New York.

2          THE COURT:  What was the name of the employer?

3          THE WITNESS:  Excuse me?

4          THE COURT:  Who was the employer?

5          THE WITNESS:  It was -- it's not like contract work

6     or anything like that.  It's people on Craigslist asking to

7     come help; hey, can you come help to do this or that or

8     anything like that.

9          THE COURT:  They had three shifts, and you were on

10    the third shift?

11         THE WITNESS:  It was a security-type job, so we were

12    just watching animals late at night.

13         But the overall -- the overall issues I've had with

14    the communication throughout this whole thing, I think,

15    can -- I can easily fix today.  I have the WalMart phone with

16    me.  I have my primary phone with me.  I would prefer to have

17    at least one of my cellphones until the other one can be

18    imaged so I can at least have one thing to use.

19         But the first interrogatories that they asked me to

20    fill out, I'd be more than happy to do that.  I searched

21    everywhere in my e-mails, eli.f.mosley and

22    deplorabletruth@gmail.com, looking for that attachment.  I

23    see it in here, in their documents that they gave us, or they

24    gave me, but I wasn't able to find it when I went through.  I

25    think there's so many e-mails that necessarily don't pertain

Sines v. Kessler 3:17CV72 11/25/19

1    to me or that I'm getting cc'd on that I wasn't able to

2    find --

3              THE COURT:  Why didn't you cooperate with your

4    lawyers?

5              THE WITNESS:  There wasn't any reason that I didn't

6    cooperate with the lawyers.  The lawyers would contact me and

7    ask me for information.  I would send it to them or give it

8    to them, and then they would complain that I hadn't given the

9    right information or something like that.  So I think there

10   was miscommunication on what they needed from me.  And they

11   just -- I guess they were done with it.  They didn't want to

12   deal with it.

13             I am looking at right now -- I think I said on my

14   last e-mail to the Court and to the plaintiffs that I'm

15   trying to find new counsel to represent me.  But that's been

16   kind of an issue as far as looking for someone that's willing

17   to take the case, as well as being able to afford the

18   retainer, things like that, because I have no -- I mean, I'm

19   representing myself.  I'm unsure exactly what my obligations

20   have been other than what we've talked about here today.

21             THE COURT:  You don't know what your obligations

22   were?  How many orders did Judge Hoppe send you?

23             THE WITNESS:  I mean, I knew I had to turn in my

24   cellphone, and then I believe -- and then when I turned in my

25   cellphone --

Sines v. Kessler 3:17CV72 11/25/19

1              THE COURT:  What part of the orders did you not

2      understand?  They were written in English, weren't they?

3              THE WITNESS:  Yes, Your Honor.

4              THE COURT:  It's simple language.  There wasn't

5      anything complicated about it, was there?

6              THE WITNESS:  No, Your Honor, it wasn't complicated.

7      The issues came down to when they were referencing certain

8      forms.  So one thing that came up in the deposition was I

9      believed that I filled out the privacy form for Twitter, but

10     what I actually filled out was a consent form for Twitter.  I

11     didn't realize those two documents were different.

12             THE COURT:  Do you have some sort of disability --

13             THE WITNESS:  No, Your Honor.

14             THE COURT:  -- that prevents from understanding?

15             THE WITNESS:  Other than ADHD, no, Your Honor.

16             THE COURT:  Other than what?

17             THE WITNESS:  ADHD.

18             THE COURT:  That doesn't affect your memory.

19             THE WITNESS:  No, but like I said, the issue is

20     really, like, I would get an e-mail saying, "Here's the" --

21     something like, "Here's the certification for Twitter to

22     access your accounts."

23          I filled it out in the deposition, I gave it back to

24     them, so I thought I was done with that.

25              And then today I learned that I needed to actually

Sines v. Kessler 3:17CV72 11/25/19

1   fill out another privacy form online.

2           THE COURT:  You just found out today?

3           THE WITNESS:  Excuse me?

4           THE COURT:  Wasn't that in the information that was

5   read to you?

6           THE WITNESS:  That's what I said; I just found this

7   out today.

8           THE COURT:  No, I think it was given to you -- the

9   information was given -- what she was reading was what was

10  before you months ago.

11          THE WITNESS:  That form that she had read was from

12  before the deposition.  So I thought that I -- coming here

13  today, I thought that my obligation to Twitter was complete.

14  The only things that I thought that I had still had to do was

15  hand over the WalMart phone, explain what happened with the

16  PC issue; and then as far as the e-mails go, I thought that

17  the Twitter certification also counted for Google.  I did not

18  know -- I didn't necessarily understand that they also need

19  my e-mail address passwords to get into the phone.  So I'm

20  able to give all three.

21          THE COURT:  You know that what you're saying just

22  doesn't make any sense, don't you?

23          THE WITNESS:  It makes sense, Your Honor.

24          THE COURT:  I mean, it's just contemptuous to even

25  sit and tell the stories like you're telling and expect

Sines v. Kessler 3:17CV72 11/25/19

1  somebody to believe it.

2            THE WITNESS:  Your Honor, I'm telling the truth.  I

3  honestly did not know that they didn't have what they needed

4  to fulfill the obligations.

5            THE COURT:  Okay.

6            THE WITNESS:  They said they wanted the e-mail

7  addresses.  I wasn't aware that they hadn't had access.  Like

8  I said, they gave me a form to give -- to tell Google and

9  Twitter and Facebook, yes, you can have access to the

10  accounts.  I filled that form out, not realizing that they

11  still needed my information for that.

12            THE COURT:  You're not unfamiliar with computers,

13  are you?

14            THE WITNESS:  Not really, no.

15            THE COURT:  I'm not so adept with them myself, but I

16  thought your position in this organization or whatever was

17  that you dealt with computers.

18            THE WITNESS:  I dealt with communication and, like,

19  networking, not necessarily computers.

20            THE COURT:  Well, I mean, you knew how to use the

21  computer.

22            THE WITNESS:  I used mostly the phone, Your Honor,

23  not a computer.

24            But to the point that you're saying, the issue isn't

25  a computer issue.  It's that I had filled out a form at the

Sines v. Kessler 3:17CV72 11/25/19

1   deposition giving Facebook, Twitter, and Google the ability

2   to go in and give the discovery team my information.  And I

3   believed that was done.  And then today I just learned that,

4   no, you have to actually provide your password as well.

5          I'm totally able to provide my passwords to them for

6   that.  I did not know.  I thought that --

7          THE COURT:  You know what passwords are for, right?

8          THE WITNESS:  Excuse me, Your Honor?

9          THE COURT:  You don't know what passwords are for?

10         THE WITNESS:  I do, but I thought that the companies

11  would give it to them regardless of having the passwords or

12  not.  I did not know they needed that.  I didn't realize

13  Google needed my password to get into my Google account.  I

14  thought that Google could get into any account they wanted.

15         THE COURT:  Well, Google wasn't under the Court

16  order, was it?  You were.

17         THE WITNESS:  Correct, Your Honor.  However, they've

18  asked me for --

19         THE COURT:  So you told -- you were effectively

20  telling the plaintiffs:  Go find out somewhere else.

21         THE WITNESS:  Well, no.  The form I filled out, I

22  believed or I thought that it was a message to Google saying:

23  "Send us this information."

24         THE COURT:  Well, didn't it tell you to give the

25  passwords?

Sines v. Kessler 3:17CV72 11/25/19

1          THE WITNESS:  They told me -- I realize that now in

2     the document I saw today, but I did not realize that before,

3     no, Your Honor.

4          THE COURT:  What do you mean you didn't realize it?

5     It was in the instructions, was it not?

6          THE WITNESS:  Those instructions that were read out

7     was before the deposition.

8          THE COURT:  Okay.  To finish up, any other

9     justification you have for not complying with the orders?

10          THE WITNESS:  Excuse me, Your Honor?

11          THE COURT:  Just any other justification you might

12     have for not complying with the orders?  I want to give you a

13     full opportunity to explain.

14          THE WITNESS:  The main issue is not having my phone

15     still in the discovery.  So the fact -- like, the fact that I

16     don't have access to the primary e-mail address where

17     communication has been, which is the eli.f.mosley account,

18     has made it very difficult to communicate with the Court and

19     everything else.

20          Now, I started getting e-mails to the

21     deplorabletruth e-mail address, which I currently do have

22     access to, and that's made it very easy for me to communicate

23     because I've been able to send two or three e-mails in the

24     past few days.  But before that, I wasn't getting any e-mails

25     to the deplorabletruth e-mail address, which I believe it's

Sines v. Kessler 3:17CV72 11/25/19

1   on one of these -- I'm sorry, one of these tabs I e-mailed

2   them and asked them, Can you please send -- yes, on number

3   six, I -- on October 18 I asked, Please send all further

4   e-mails to the deplorabletruth e-mail address.

5           I never got any e-mail addressed to that e-mail

6   address until this last week.

7           So I asked the plaintiffs, as well as the Court, to

8   please forward all e-mails pertaining to this case to that

9   e-mail address.  That's the e-mail address that I had.  And I

10  did not receive an e-mail to that e-mail address until this

11  past week, when we started -- when I got back into the e-mail

12  account.

13          So that's the main issue, was communication, I would

14  say.

15          THE COURT:  So the fault is not with you but with

16  the plaintiffs and other people?

17          THE WITNESS:  Well, the fault is that I don't have

18  access to the e-mail address that was the primary

19  communication that you guys were -- the Court, as well as the

20  plaintiffs, were sending e-mails to an e-mail address that I

21  didn't have access to.

22          THE COURT:  You couldn't answer any of the

23  questions?

24          THE WITNESS:  Excuse me, Your Honor?

25          THE COURT:  You could not answer any of the

Kline - Examination by Ms. Dunn

1    discovery without --

2          THE WITNESS:  Well, I wasn't getting any e-mails at

3    all.

4          THE COURT:  Okay.  All right.

5          Does the plaintiff wish to ask him any follow-up

6    questions?  Anything else you wish to ask him?

7          MS. PHILLIPS:  To ask him anything else?  My

8    co-counsel would like to.

9          MS. DUNN:  We have one question.  Karen Dunn for

10   plaintiffs.

11                        EXAMINATION

12   BY MS. DUNN:

13   Q   Mr. Kline, I just want to ask you about something that

14   you said to Judge Moon.  He asked you whether, when you

15   planned the Unite the Right, you were using computers.  And

16   it sounded a lot like you told him no, and you said that you

17   were using communications.

18       What do you mean by that?

19   A   Most of the communication that went out to Unite the

20   Right was done using the phone I've already sent in.

21   Q   Okay.  So the --

22   A   99 percent of it, maybe even a hundred percent.

23   Q   Okay.  So the distinction you're making is between using

24   a phone and not using a desktop?

25   A   Correct.  He had asked me if I knew computers, like, if I

Kline - Examination by Ms. Dunn

1   was computer savvy.  He believed that was my kind of skill

2   set, and I corrected him that, no, I'm not a computer guy, I

3   used primarily cellphones with Unite the Right.

4   Q   Okay.  So when he says to you, Are you -- when the judge

5   asked you a question, which is essentially, Are you computer

6   savvy, your response is, Actually, I planned the rally using

7   a phone.

8       Is that fair?

9   A   Yes.

10  Q   Okay.  And were you savvy with your phone?

11  A   Relatively speaking, yes.

12  Q   And were you savvy with Discord?

13  A   Yes.

14  Q   And were you savvy with chats?

15  A   With?

16  Q   Chats, private chats?

17  A   Sort of, yeah.

18  Q   How about sending e-mail; savvy with that?

19  A   I didn't use e-mail at all.  In the deposition I said

20  that multiple times, that we didn't really e-mail anything in

21  Unite the Right.  There's really no e-mails.

22  Q   Okay.  But are you savvy with e-mail?  That's my

23  question.

24  A   No.

25  Q   Okay.  Savvy with texts?  Are you savvy with texts?

Kline - Examination by Ms. Dunn

```
1    A    Texts?

2    Q    Texts.

3    A    Yes.

4    Q    Okay.  And you used those to plan Unite the Right, right?

5    A    Yes.

6    Q    Okay.  And you wouldn't deny, would you, that you planned

7    the Unite the Right rally using electronic media?  Right?

8    A    Yes.

9    Q    Okay.  And just to knit something else up, you just also

10   told the Court that plaintiffs and the Court should have

11   forwarded e-mails to your e-mail account.

12        Do you remember that?

13   A    To the --

14   Q    To deplorabletruth.

15   A    Right.

16   Q    That was our responsibility as plaintiffs, right?

17   A    Well, I requested that because I didn't have access to

18   the other e-mail because the original e-mail was in

19   discovery.

20   Q    Right.  So you just told the Court -- we're all here; we

21   heard it -- that it was plaintiffs' counsel and the Court's

22   responsibility, because you had said so, to forward e-mails

23   to your e-mail account; is that correct?

24   A    I asked them to change my point-of-contact e-mail

25   address.
```

Kline - Examination by Ms. Dunn

1    Q    Right.  But you admitted on Ms. Phillips'

2    cross-examination of you that you were able to access your

3    eli.f.mosley account.  You remember admitting that, right?

4    A    Only sparingly.  I wasn't able to access it full-time.

5    Q    Right, not full-time, but you accessed the account; is

6    that correct?

7    A    Yes.

8    Q    Yes.  And you're aware that you can forward e-mails,

9    because you asked us to forward them, right?

10   A    I was using that WalMart phone, which I'm not savvy on at

11   all.  I was not able to -- I wasn't able to use it very long.

12   Q    I thought you said you were using a family computer.

13   A    Well, on two of the e-mails I used the WalMart phone, the

14   two newest ones; and before that I was using the family

15   computer.

16   Q    All right.  Focusing your attention, then, on the times

17   when you used the family computer, would you have been able

18   to forward e-mails?

19   A    Yes.  However, I got locked out of that account, the

20   eli.f.mosley account, relatively soon after I was on the

21   computer for family e-mails -- or the family computer.

22   Q    Okay.  But as you said, there was nothing to prevent you

23   from forwarding e-mails from the family computer, and you're

24   aware how e-mail forwarding works, correct?

25   A    Yes.

Sines v. Kessler 3:17CV72 11/25/19

1   Q   Okay.  And just to knit one other thing up, you just said

2   that you were on the family computer -- I think this is what

3   you told Ms. Phillips.  You were on the family computer two

4   times.

5       Those times happen to be represented by e-mails we

6   possess, right?

7   A   I believe so.

8   Q   Okay.  And then you also told the Court that every time

9   you were on the family computer you got kicked off by Google.

10      Do you remember saying that?

11  A   Yes, relatively soon after I was logged in.

12  Q   Okay.  So every time you were on the family computer,

13  when you say that, what you mean by "every time" is just

14  those sole two times of the e-mails we happen to have,

15  correct?

16  A   Yes.

17          MS. DUNN:  Thank you.

18          THE COURT:  Mr. Kline, one of the things the Court

19  has to do is to see what it's going to take to put -- for you

20  to come in compliance with the Court's orders.  We're not

21  starting over.  The history is already here, and you don't

22  get to start over with me like you did with Judge Hoppe.

23          THE WITNESS:  I understand.

24          THE COURT:  I have to determine what to do today to

25  bring you into compliance, and I need -- one of the things we

Sines v. Kessler 3:17CV72 11/25/19

1   can do is fine a person so many dollars per day to get --

2   until they come into compliance.

3        What is your -- so because that's one of the

4   remedies we have or ways we have to get people into

5   compliance.  Another is to put you in jail until you're in

6   compliance.

7        Now, what are your assets, should the Court order

8   you to come into compliance within so many days?

9        THE WITNESS:  I have a car, an Explorer, and I have

10  just my furniture and things like that in my old house.

11  Like, not a lot of stuff, I would say.

12       THE COURT:  So you have no money, basically?

13       THE WITNESS:  Well, I have the money that I make

14  doing the odd jobs, things like that, but it's not a

15  substantial amount of income.  I would say I maybe have

16  1,400, $1,600, in the bank right now.

17       THE COURT:  So it wouldn't be much of an incentive

18  to, say, fine you every day you're --

19       THE WITNESS:  I believe if, like, the fine was,

20  like, $100 a day or something similar to that, I can easily

21  pay that until I come in compliance.  Like I said, I have,

22  like, 1,400, $1,600, in the bank.  If I were fined, you know,

23  tomorrow, the next day, the next day, the next day, and the

24  next day, and then I comply, I would still be able to pay

25  that.

Sines v. Kessler 3:17CV72 11/25/19

1          THE COURT:  But you only have $1,400?  You have no

2    regular employment?

3          THE WITNESS:  It's pretty easy for me to get jobs.

4    Like I said, I've been doing odd jobs on Craigslist, things

5    like that.  But I have money in the bank as well.

6          THE COURT:  How much money -- how much do you earn

7    when you work?

8          THE WITNESS:  It depends.  It's variable.  I can

9    make $800 in a week.  I can make $80 in a week.  Depends on

10   what I'm doing, where I go.

11         But right now, like I said, I have, like, 1,400,

12   $1,600, and I'm ready to comply.  I have all the things that

13   they need at this point.  I have all the passwords they need.

14   I'm able to and ready to answer the interrogatories that they

15   wish, and I have the WalMart phone for the eDiscovery that

16   they didn't image, as well, with all the passwords and things

17   like that.  So it wouldn't take me any time.  I could do it

18   right now, if I wanted to, or if you asked me to, to give

19   them that.

20         THE COURT:  Well, what I'd like for you to do is to

21   deliver everything you've got today.

22         THE WITNESS:  I can definitely do that.

23         THE COURT:  Do it now.  We'll adjourn for about -- I

24   have to be on a conference call in about 20 minutes, but --

25         THE WITNESS:  If the plaintiffs provide me with the

Sines v. Kessler 3:17CV72 11/25/19

1    first list of interrogatories, I can fill it out right now.

2             THE COURT:  No, no.  Well, what I want to you do is

3    produce all this stuff that you say you have, the phones and

4    the passwords; and if they could check and see if those

5    things work.

6             THE WITNESS:  Okay.

7             THE COURT:  You're prepared to do that?

8             THE WITNESS:  (Nods head)

9             THE COURT:  How does that work for the plaintiffs?

10            MS. PHILLIPS:  I mean, yes, certainly, Your Honor,

11   we would like him to come into compliance.  I mean,

12   obviously, we --

13            THE COURT:  I mean, right now, can you sit down

14   together and see what he's got, check out the passwords, see

15   if they work?

16            MS. PHILLIPS:  So we have to get in touch with,

17   obviously, the eDiscovery vendor and see if they can plug in

18   the passwords on his e-mail account to see if that works.  We

19   can try to do that.

20            THE COURT:  Well, try to do that.

21            MS. PHILLIPS:  Certainly we can.

22            THE COURT:  I mean, I doubt that he's going to be in

23   full compliance in the next 20 or 30 minutes.

24            MS. PHILLIPS:  I would agree.  I think that would be

25   impossible.

Sines v. Kessler 3:17CV72 11/25/19

1        THE COURT:  But let's see where we are.

2        THE WITNESS:  Your Honor, the WalMart phone was left

3   with security downstairs.  I wasn't allowed to bring a phone

4   in, so they had said that you guys --

5        THE COURT:  They can get that back and bring it up.

6        THE WITNESS:  Okay.

7        MS. PHILLIPS:  Thank you.

8        THE COURT:  All right.  Okay.  We'll suspend for

9   about 30 minutes.  And let me know what you've resolved, if

10  anything, by that time.

11       MS. PHILLIPS:  Okay.

12       THE COURT:  We're in recess.

13       THE MARSHAL:  All rise.

14       (Recess, 2:12 p.m. to 3:23 p.m.)

15       THE COURT:  I'll ask the plaintiff to what extent

16  the request for discovery has been satisfied?

17       MS. PHILLIPS:  Not at all, Your Honor.  Not at all,

18  Your Honor.

19       We asked Mr. Kline to give us both of the phones

20  that he has here with him today.  He has refused to give us

21  one of those.

22       We asked him to give us correct passwords for his

23  e-mail addresses.  He gave us two out of three.  We checked

24  one of those.  It doesn't work.  We asked him to change that

25  password so that we can get access that e-mail address.  He

Sines v. Kessler 3:17CV72 11/25/19

1    hasn't done so.

2          And in the course of allowing us to review his

3    iPhone that he still maintains in his possession, we

4    discovered a fourth e-mail address that he had never

5    identified for us, and that's new information to us.

6          He also showed us a text from another individual,

7    Dillon Hopper, from October 18, which if Your Honor will

8    recall, he indicated that a message from another defendant is

9    what caused him to send the October 18 e-mail that he sent

10   from the eli.f.mosley account.  It turns out that

11   communication from Mr. Hopper came in at 11:24 a.m., so

12   actually after Mr. Kline sent the October 18 e-mail, which

13   was at 1:25 a.m.

14         And in addition, Judge Hoppe held a teleconference

15   on October 18th, at which Mr. Kline's presence was required,

16   and Mr. Hopper texted Mr. Kline during the teleconference and

17   asked him whether he was going to join.  And as I think Your

18   Honor is aware, Mr. Kline never did join that teleconference.

19         So we don't feel that we've made any progress.

20   Obviously, we don't have the Twitter privacy form.  We don't

21   have any of the interrogatories or the RFPs.  We have

22   committed to provide him an electronic version of those.

23         And my colleague has just reminded me, we also asked

24   him to change -- to delete the two-factor authentication,

25   which seems to have caused some issues for Mr. Kline, but

Sines v. Kessler 3:17CV72 11/25/19

1    he's refused to do that as well.

2              So that's where we are.

3              THE COURT:  All right.  Mr. Kline?

4              MR. KLINE:  Your Honor, I'm not --

5              THE COURT:  If you would, step up to the lectern.

6              MR. KLINE:  Your Honor, I'm not sure what they mean

7    by we haven't made any progress.

8              There's four e-mail addresses now.  The

9    deplorabletruth and eli.f.mosley and the Identity Evropa

10   e-mail address, that we all knew of beforehand, the

11   eli.f.mosley one is the one that the password that I thought

12   it was doesn't work.  However, that's the one that I have to

13   be at my family's computer in order to access at all, and

14   that's because of the passwords that are saved on there.

15             The Identity Evropa e-mail address --

16             THE COURT:  Your passwords are saved on there?

17             MR. KLINE:  Yes.  I thought they were all the same

18   password so --

19             THE COURT:  I thought you said you only used that

20   computer twice.

21             MR. KLINE:  Yes, I have it saved on there.  That's

22   why I thought that it was the same password, on that computer

23   I've only used twice.  But I've never had issues logging in.

24   It's once I get logged in, I get kicked out.

25             And the issue of the password I can easily fix as

Sines v. Kessler 3:17CV72 11/25/19

1    soon as I get home and send it to them.  However --

2              THE COURT:  The problem is you don't do anything

3    when you do go home.  You leave here, you do nothing.  You

4    make promises and you do not comply.

5              MR. KLINE:  I understand, Your Honor.

6              And then the interrogatories, the Twitter form, and

7    the requests for production, I asked them if they could print

8    those out for me, and they said that they can, that they

9    would send them to me tonight.

10             I would rather them just print them off for me now

11   so I wouldn't have to deal with -- I wouldn't have to go home

12   and take care of that there.

13             And then as far as the two phones go, I'm okay with

14   giving them both my phones; however, then I will be without

15   any communication unless I'm in Pennsylvania, any way of

16   getting to my e-mail.

17             I do have this phone that I'm willing to turn in to

18   them today, or turn it over to discovery today.  I've given

19   them the correct password for it.  We tested it, and it

20   works.

21             And then if we do decide that the iPhone that is my

22   only way of communicating, we hand that in, too, I've given

23   them the password for that as well.

24             So they are able to get into everything except for

25   the eli.f.mosley account, which is something that I can get

Sines v. Kessler 3:17CV72 11/25/19

1  into fairly easily and give them a new password for.

2          As far as what they said with the two-factor

3  authentication, they're asking me to turn it off on the

4  eli.f.mosley account.  I can't do that right now, so I --

5          THE COURT:  Why can't you do it right now?

6          MR. KLINE:  Because that's the account that we don't

7  know the password to right now, so I can't turn off the

8  two-factor authentication without being in the account.  I

9  can't get on the account on any of my phones right now.

10         So the only thing I have left to do, if we were to

11 leave here today, would be the request for interrogatories,

12 the Twitter privacy form, and the request for production

13 form, which I would like to fill out today, but they asked to

14 e-mail me tonight.

15         And then the eli.f.mosley account, all I need for

16 that is to change the password, which I can easily do.

17         As far as the two phones go, like I said, I just

18 need to be able to -- if I gave them both phones today, I

19 would have no method of, like, primary communication to give

20 to them.

21         THE COURT:  Can't you use your phone that's --

22         MR. KLINE:  I can when I'm at home.  I can.

23         THE COURT:  What?

24         MR. KLINE:  I can when I'm at my parents' place.

25 But if I'm not at my parents' place, then, no, I will not be

1    able to.

2              THE COURT:  Well, you're going back today, aren't

3    you?

4              MR. KLINE:  Correct, but I'm leaving back to

5    New York shortly after, so --

6              THE COURT:  The more you talk, the less likely you

7    are to leave Charlottesville today.

8              MR. KLINE:  I understand, Your Honor.  I'm just

9    trying to explain.  I'm just trying to explain to the Court

10   that I can do all these things for -- I can fulfill all these

11   things for them today and send them in today.  The only one

12   that would require me to be not in Charlottesville but at

13   home is the --

14             THE COURT:  Why couldn't you cooperate while we took

15   nearly an hour break, then?

16             MR. KLINE:  This is the conversation we had.  That's

17   why I don't understand why they said there was no

18   cooperation.

19             The only outstanding issues are the three forms that

20   I need to fill out, that they said they would e-mail to me

21   instead of printing out today.  And then the e-mail address

22   for the eli.f.mosley account -- I'm sorry, the password for

23   that e-mail address, which I -- like I said, I can reset the

24   password; or when I go into my family computer, I can change

25   it and send it to them right away.  That's the only -- that

Sines v. Kessler 3:17CV72 11/25/19

1   would be the only outstanding issue -- they can give me the

2   other forms today -- would be the password for the

3   eli.f.mosley account.

4           THE COURT:  Well, turn over the phones to them now.

5           MR. KLINE:  Okay.

6           THE COURT:  And the passwords.

7           MR. KLINE:  Okay.  That's fine.  I can turn over --

8           THE COURT:  Do it now.  Now.

9           MR. KLINE:  I don't have the other phone on me.

10          THE COURT:  Where is it?

11          MR. KLINE:  The U.S. Marshal has it.

12          THE COURT:  Okay.  All right.

13          MS. PHILLIPS:  Your Honor, if I may, he's

14  represented that he gave us the passcode for the iPhone.

15  That is not accurate.  He told us it's a face identification

16  and he doesn't know the passcode for it.

17          MR. KLINE:  No, that's not true.  I told her I just

18  turned the face code off and I made it all zeroes.

19          MS. PHILLIPS:  You did not tell that to me.

20          MR. KLINE:  Okay.  Okay.  That's what we had talked

21  about in the room before you went to talk to the discovery --

22          MR. BLOCH:  You said you were going to do that.

23          MR. KLINE:  I did.  Okay.  I did that.

24          MS. PHILLIPS:  So it's now -- okay.

25          MR. KLINE:  I'm just turning it on right now to make

Sines v. Kessler 3:17CV72 11/25/19

1   sure.  I'll show it to you right now.

2          MS. PHILLIPS:  Your Honor, for the record, we have

3   e-mailed to both the deplorabletruth.com address and the

4   eli.f.mosley e-mail address the interrogatories, the requests

5   for production, and the privacy form; so he should have those

6   now.  We were telling him that he had to wait until later for

7   us to send them to him.

8          THE COURT:  What is it that he could produce right

9   now that he hasn't produced?

10          MS. PHILLIPS:  We also need access -- he needs to

11   change his password for the eli.f.mosley e-mail account so

12   that we can get access to it.  The one he gave us did not

13   work.

14          THE COURT:  And you don't know the password?

15          MR. KLINE:  No, Your Honor.  But like I said, it's

16   remembered on my other computer, so I can easily go in --

17          THE COURT:  Haven't you been using that site?

18          MR. KLINE:  What are you --

19          THE COURT:  Aren't you using that Eli Mosley?

20          MR. KLINE:  The eli.f.mosley account?

21          THE COURT:  Right.

22          MR. KLINE:  It's not on any of my phones other than

23   the phone that they currently have for discovery.  It's only

24   on that computer, and it's because the password is saved from

25   when I originally typed it in.  So I can easily go to that

Sines v. Kessler 3:17CV72 11/25/19

1    computer and it would automatically sign in, and then I can

2    just change the password, and e-mail them from that e-mail

3    what the new password is.

4         And then this is set.  I'm going to have to wait

5    until it locks so you can see if the password works.

6         So the only thing that I would need to do, then,

7    like I said earlier, Your Honor, is to give them the

8    interrogatories, the Twitter privacy form, and then the

9    requests for production, which they said they've e-mailed to

10   me so I can fill those out.  I could fill those out

11   immediately if we had them here, but I can also do it when I

12   get home.

13        And then the eli.f.mosley account is the account

14   that I have on my old cellphone.  That's the one I need to

15   change the password to, but I should be able to do that

16   tonight very easily.

17        THE COURT:  Okay.  If you'd step away, have a seat.

18        Anything else?

19        MS. PHILLIPS:  May I, Your Honor?

20        THE COURT:  Yes.

21        MS. PHILLIPS:  I haven't had an opportunity to talk

22   about this yet, but I would like to officially ask the

23   Court -- we, obviously, mentioned this in our November 21st

24   submission to Your Honor, but we'd like to ask for

25   evidentiary sanctions as laid out in that particular

Sines v. Kessler 3:17CV72 11/25/19

1    submission.

2              One of the certified facts, as found by Judge Hoppe,

3    is that Mr. Kline lied under oath at his deposition.

4              He wasn't credible here on the stand today.  He

5    just, you know, wasn't accurate in terms of what was

6    happening behind closed doors here at the podium.  Your Honor

7    found he wasn't credible.  He's still in violation, as we

8    said, of nine different court orders.

9              And our view, plaintiffs' view, is that not only

10   should Mr. Kline be held in civil contempt, but that

11   plaintiffs are entitled to evidentiary sanctions at this

12   point.

13             THE COURT:  You'll get the last word.

14             MR. KLINE:  Your Honor, all I would ask is that I be

15   able to fill out these forms that they've asked me to fill

16   out; and then the only outstanding issue, if I were to leave

17   here today, is the password for the eli.f.mosley account,

18   which I can very, very easily do and send that to them

19   immediately.  So there's only one real issue.

20             THE COURT:  You don't get to redefine what you're

21   ordered to do.  There's plenty of orders; you have to comply

22   with all of them.  You can't say something here today that's

23   something less and say that's enough.  You've got to comply

24   with every order and every discovery request.

25             MR. KLINE:  I understand.

1        THE COURT:  It's not one of these things where you

2   go away and say, Well, I thought I said so-and-so, and going

3   out of the courtroom, I said so-and-so.  That's not going to

4   cut it.

5        Anything else?

6        All right.  I'm going to make a statement here and

7   subject to -- we'll talk about what I say at the end, if you

8   have any objections or changes.

9        First, I intend to write a written opinion, which

10  will be this week, but I can determine now that I find

11  Mr. Kline to be presently in contempt of court.

12       Elements of civil contempt are:  One, the existence

13  of a valid decree of which the alleged contemnor had actual

14  or constructive knowledge; two, the decree was in the

15  movant's favor; three, the alleged contemnor, by its conduct,

16  violated the terms of the decree and had knowledge, at least

17  constructive, of such violations; and four, that the movant

18  suffered harm as a result.  I think it's self-evident what

19  the harm probably is.

20       Is there anything you would like to add that's not

21  in the record concerning the harm?

22       MS. PHILLIPS:  I believe that the record is replete

23  with the harm to plaintiffs, but I'd like to spell it out for

24  Your Honor, if you don't mind.

25       THE COURT:  All right.

Sines v. Kessler 3:17CV72 11/25/19

1            MS. PHILLIPS:  I think the most instructive document

2     on this is Judge Hoppe's August 9 sanctions order granting

3     our motion, in part, where he found that we had suffered

4     severe procedural prejudice to date.  And, again, that was in

5     August, and we are obviously now at the end of November, and

6     nothing has changed with regard to the defendant.

7            We have spent an enormous of time, effort, and

8     resources over the past 22 months trying to get discovery, to

9     which we are entitled.

10           We filed a motion to compel, numerous sanctions

11    motions, prepared for travel to and took the defendant's

12    deposition on discovery issues.  We obviously had to prepare

13    for both the June 3rd sanctions hearing as well as this civil

14    contempt hearing.

15           In addition, the original trial date in this case

16    was set for July 8 of 2019.  It has been held off

17    indefinitely.

18           The plaintiffs and the defendants have tentatively

19    reached an agreement that the trial would hopefully be

20    scheduled for October 26 of 2020, but Judge Hoppe has not yet

21    ruled on that request.  So at the very least, we have been

22    delayed by at least 15 months from when our plaintiffs were

23    hoping and anticipating to get to have their day in court.

24           And, you know, in terms of the most fundamental

25    prejudice that the plaintiffs have suffered, this individual,

Sines v. Kessler 3:17CV72 11/25/19

1    by his own admission, was a key organizer and planner of the

2    Unite the Right.  He organized and had his hand involved in

3    every aspect of the planning for this.  He has critical

4    evidence, and he took the stand today to concede that he did

5    not preserve that critical evidence.  So we're left with this

6    evidentiary gap, and that is obviously a prejudice to the

7    plaintiffs.

8             And I think that's it, Your Honor.

9             THE COURT:  Okay.  Would you like to speak to

10   whether they had harm or not?

11            MR. KLINE:  No, Your Honor.

12            THE COURT:  Okay.  I find all of these elements are

13   met by clear and convincing evidence.  Judge Hoppe's

14   certification, in my view, established a prima facie case of

15   civil contempt; but upon my own review of the record and

16   considering the arguments and facts presented here, there's

17   no question at all there's more than a clear and convincing

18   case that Mr. Kline is in contempt.

19            First, in particular, Mr. Kline has not complied

20   with even a very basic obligation of every party in a civil

21   case to respond to discovery requests.  There are numerous

22   orders that are valid and of which Mr. Kline had actual

23   knowledge requiring him to respond to plaintiffs' first set

24   of interrogatories and requests for production of documents.

25            There are earlier orders but, at a minimum, Judge

Sines v. Kessler 3:17CV72 11/25/19

1   Hoppe's orders of July 3 and August 2 and August 8, as well

2   as this Court's order of November 14, all required Mr. Kline

3   to respond to these discovery requests.  It isn't rocket

4   science.  Every party -- pro se litigants and represented

5   parties alike -- have to respond to discovery requests.

6         These were orders in plaintiffs' favor and would

7   vindicate their right to receive relevant discovery from

8   Mr. Kline.  He simply has not responded.  And by failing to

9   respond, plaintiffs have not received discovery to which they

10  were entitled.  They've had to incur attorneys' fees and

11  costs to vindicate their right to discovery, and the case is

12  stymied as a result.

13        I find Mr. Kline's assertions that he has not

14  received them to date unbelievable.  That said, counsel for

15  plaintiffs will give you a copy today, and you will confirm

16  you have them today.

17        Is that possible?  They can be printed off, I think,

18  easy enough.

19        MS. PHILLIPS:  (Nods head).

20        THE COURT:  Second, Mr. Kline has not turned over

21  all of his electronic devices and social media account

22  credentials for his accounts that were identified on his

23  certification form to the third-party discovery vendor.

24  Again, numerous valid orders establish that Mr. Kline was to

25  do so.

Sines v. Kessler 3:17CV72 11/25/19

1       There are earlier orders but, at a minimum, Judge

2   Hoppe's orders of July 3 and August 8 and this Court's order

3   of November 14 all required Mr. Kline to do so.  These orders

4   were in plaintiffs' favor and were the first and necessary

5   step to ensure the collection and recovery all from

6   Mr. Kline.

7       Mr. Kline ignored the orders.  By ignoring these

8   orders, plaintiffs have had to incur attorneys' fees and

9   costs to vindicate their right to documents relevant to their

10  claims.  The Court therefore finds Mr. Kline in civil

11  contempt.

12      The Court will next address the issue of remedy,

13  which should be no more severe than necessary to coerce

14  Mr. Kline into compliance for these obligation.

15      Judge Hoppe recommended certain sanctions based on

16  his familiarity with the case and Mr. Kline's continued

17  contumacious behavior.  Judge Hoppe recommended that this

18  Court grant, in part, plaintiffs' motion for sanctions and

19  impose graduated sanctions to coerce Mr. Kline's compliance

20  with his, Judge Hoppe's, order and my own discovery order.  I

21  won't go into those because I'm not going to follow those

22  exactly.

23      Judge Hoppe noted that Mr. Kline, because of his

24  civil contempt, will have an opportunity to reduce or afford

25  any indefinite fines and, if necessary, imprisonment by

Sines v. Kessler 3:17CV72 11/25/19

1  completing each affirmative step set out in Judge Hoppe's

2  prior discovery order.

3       It's this Court's intention that beginning on

4  December 1st, that Mr. Kline pay the plaintiffs $200 per day

5  for noncompliance.  The Court would set a hearing date for

6  December 16, if that be available to the parties, for the

7  Court to hear whether he has come in compliance.

8       And at that time, I can tell you that if the Court

9  finds you're not in compliance, I'm going to have you sit in

10  jail until you come in compliance.

11       MR. KLINE:  I understand, Your Honor.

12       THE COURT:  All right.  I intend to impose the

13  remedies -- well, the remedies that I've stated.  I find that

14  imposing these graduated sanctions against Mr. Kline are

15  necessary to coerce his compliance with the Court's and Judge

16  Hoppe's discovery orders.  I find that they are no harsher

17  than necessary to coerce his compliance.

18       As Judge Hoppe said, it is possible that the

19  requested evidentiary sanctions will become the only recourse

20  available to plaintiffs, and he and this Court have taken

21  those under advisement; but at present it is preferable that

22  the facts and evidence be uncovered rather than the case rely

23  on evidentiary presumptions.

24       As I said, I intend to issue a written opinion

25  but -- in the coming days concerning the sanctions, but those

Sines v. Kessler 3:17CV72 11/25/19

1  will start on December the 2nd.  If you can bring yourself

2  into compliance before then, it will save money.  And it will

3  be no later than December 2nd, 2019, at 5 p.m. Eastern

4  Standard Time.

5        You must respond in writing fully and completely to

6  plaintiffs' first set of interrogatories and requests for

7  production of documents.  Plaintiffs will provide you with

8  another copy today.  You will send those to plaintiffs and

9  e-mail them to the Court.

10        Two, you will provide the third-party vendor your

11  computer that you included in your certification form and

12  your WalMart phone to be imaged, i.e., copied.

13        Three, provide the third-party vendor your social

14  media credentials, including your passwords, for each and

15  every account identified on your certification form.

16        A, you will conduct a diligent search of your

17  electronic and any other records to confirm that the list of

18  social media credentials is complete and to uncover your

19  credentials for any of these accounts.

20        B, any and all accounts that you confirm you do not

21  have credentials for, you will submit a declaration, under

22  oath and under penalty of perjury, to that effect.

23        Mr. Kline, you now have the opportunity to reduce or

24  avoid the sanctions by completing those steps.  If you do

25  not, I will impose the sanctions that I mentioned.

Sines v. Kessler 3:17CV72 11/25/19

1              Is December 16, is that a possible date?

2              MS. PHILLIPS:  Yes, Your Honor.

3              THE COURT:  All right.  You're to be back in court

4    on December 16.

5              What time do you have?  11 o'clock, would that be

6    all right?

7              THE CLERK:  That would be good, Your Honor.

8              THE COURT:  All right.  11 o'clock, to determine

9    whether you've come into compliance with the order.

10             MR. KLINE:  I understand, Your Honor.

11             THE COURT:  Is there anything else to come before

12   the Court?

13             (Court and Clerk conferring)

14             THE COURT:  Okay.  My clerk says that I said

15   December 1, but the date is December 2nd.

16             That's a Monday, right?

17             THE CLERK:  Right.

18             MR. KLINE:  And, Your Honor, just to be clear, if I

19   am in compliance before December 2nd, I only have to pay the

20   $200, or is it if I'm not in compliance before that that --

21             THE COURT:  If you can get -- the $200 will begin,

22   if you do not comply, on December 2nd.

23             MR. KLINE:  Okay.  Thank you, Your Honor.

24             THE COURT:  Yes.

25             MS. PHILLIPS:  Your Honor, we would request,

Sines v. Kessler 3:17CV72 11/25/19

1    plaintiffs would request the opportunity to brief the -- to

2    brief the evidentiary sanction issue in the event

3    Mr. Kline -- both including what we learned today, when

4    Mr. Kline was under oath, but also in case he's not in

5    compliance --

6              THE COURT:  All right.

7              MS. PHILLIPS:  -- by December 2nd, that we can then

8    have your ruling on that in the December 16 hearing.

9              THE COURT:  All right.  I would put that off

10   until -- I mean, the briefing will be due -- by what date do

11   you wish the briefing?

12             MS. PHILLIPS:  Your Honor, if we could have our

13   opening brief due to you by December 6.

14             THE COURT:  All right.  I'm going to give Mr. Kline

15   at least until -- well, we'll take it up on December 16

16   whether -- you can answer if you need more time.  I want him

17   to be working -- I don't want him working on a brief; I want

18   him to be complying with the discovery orders.

19             MS. PHILLIPS:  I understand.

20             THE COURT:  So I don't want to give him any -- I

21   don't want him taking up time on something else, but just

22   complete the discovery.

23             All right.  With that, anything else?

24             MS. PHILLIPS:  No, Your Honor.

25             MR. KLINE:  No, Your Honor.

Sines v. Kessler 3:17CV72 11/25/19

1          THE COURT:  Okay.  Thank you all.

2          THE MARSHAL:  All rise.

3    (Proceedings adjourned, 3:51 p.m.)

4                    C E R T I F I C A T E

5        I, JoRita B. Meyer, RMR/CRR, Official Court Reporter for

6    the United States District Court for the Western District of

7    Virginia, appointed pursuant to the provisions of Title 28,

8    United States Code, Section 753, do hereby certify that the

9    foregoing is a correct transcript of the proceedings reported

10   by me using the stenotype reporting method in conjunction

11   with computer-aided transcription, and that same is a true

12   and correct transcript to the best of my ability and

13   understanding.

14       I further certify that the transcript fees and format

15   comply with those prescribed by the Court and the Judicial

16   Conference of the United States.

17       /s/ JoRita B. Meyer          Date: 11/27/2019

18

19

20

21

22

23

24

25