# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUÑIZ,
HANNAH PEARCE, MARCUS MARTIN,
NATALIE ROMERO, CHELSEA
ALVARADO, JOHN DOE, and
THOMAS BAKER,

                      Plaintiffs,

v.

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VANGUARD
AMERICA, ANDREW ANGLIN,
MOONBASE HOLDINGS, LLC, ROBERT
"AZZMADOR" RAY, NATHAN DAMIGO,
ELLIOTT KLINE a/k/a ELI MOSLEY,
IDENTITY EVROPA, MATTHEW
HEIMBACH, MATTHEW PARROTT a/k/a
DAVID MATTHEW PARROTT,
TRADITIONALIST WORKER PARTY,
MICHAEL HILL, MICHAEL TUBBS,
LEAGUE OF THE SOUTH, JEFF SCHOEP,
NATIONAL SOCIALIST MOVEMENT,
NATIONALIST FRONT, AUGUSTUS SOL
INVICTUS, FRATERNAL ORDER OF THE
ALT-KNIGHTS, LOYAL WHITE KNIGHTS
OF THE KU KLUX KLAN, and EAST
COAST KNIGHTS OF THE KU KLUX
KLAN a/k/a EAST COAST KNIGHTS OF
THE TRUE INVISIBLE EMPIRE,

                      Defendants.

Civil Action No. 3:17-cv-00072-NKM

## PLAINTIFFS' MOTION FOR EVIDENTIARY SANCTIONS
## AGAINST DEFENDANT ELLIOTT KLINE A/K/A ELI MOSLEY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.     Kline Was Central to the Conspiracy to Commit Racially-Motivated
          Violence at Unite the Right.................................................................................. 2

    II.    Kline Was Held in Contempt after 22 Months of Stonewalling Plaintiffs
          and the Court.......................................................................................................... 5

    III.   Even if Kline Purges Himself of His Contempt, Plaintiffs Are Unlikely
          Ever to Obtain Full Discovery of Kline's Documents............................................ 6

          A.    Kline Has Admitted That He Failed to Preserve Evidence......................... 6

          B.    The Integrity of the Data on Kline's iPhone 6S Is in Doubt...................... 7

          C.    The Record Strongly Suggests that Kline Has Concealed and
                Continues to Conceal Relevant Communication Devices. ......................... 8

    IV.   As of this Filing, Kline Has Failed to Purge Himself of His Civil
          Contempt................................................................................................................. 13

LEGAL STANDARDS ............................................................................................................ 17

ARGUMENT ........................................................................................................................... 18

    I.     Kline's Misconduct Warrants Evidentiary Sanctions Due to the
          Evidentiary Gap Left by Kline's Failure to Participate in Discovery and
          His Bad Faith. ........................................................................................................ 18

CONCLUSION........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*,
    155 F.3d 500 (4th Cir. 1998) ........................................................................ 18, 19

*Beaven v. U.S. Dep't of Justice*,
    622 F.3d 540 (6th Cir. 2010) ............................................................................. 22

*Butler v. DirectSat USA, LLC*,
    No. 10-CV-2747, 2013 WL 6629240 (D. Md. Dec. 16, 2013) .............................. 18

*Camper v. Home Quality Mgmt. Inc.*,
    200 F.R.D. 516 (D. Md. 2000) ........................................................................... 17

*Nucor Corp. v. Bell*,
    251 F.R.D. 191 (D.S.C. 2008) ........................................................................... 18

*Ottoson v. SMBC Leasing & Fin., Inc.*,
    268 F. Supp. 3d 570 (S.D.N.Y. 2017) ............................................................... 22

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
    734 F.3d 366 (4th Cir. 2013) ....................................................................... 17, 18

*Pruitt v. Bank of Am., N.A.*,
    No. 8:15-cv-01310, 2016 WL 7033972 (D. Md. Dec. 2, 2016) ........................... 20

*Sampson v. City of Cambridge*,
    251 F.R.D. 172 (D. Md. 2008) ........................................................................... 17

*Vodusek v. Bayliner Marine Corp.*,
    71 F.3d 148 (4th Cir. 1995) ......................................................................... 19, 22

*Wachtel v. Health Net, Inc.*,
    239 F.R.D. 81 (D.N.J. 2006) ............................................................................. 21

**Rules**

Fed. R. Civ. P. 37(b)(2)(A) ................................................................... 17, 18, 21

Fed. R. Evid. 901 ........................................................................... 1, 20, 22

Case 3:17-cv-00072-NKM-JCH   Document 601   Filed 12/06/19   Page 3 of 31   Pageid#: 7679

## PRELIMINARY STATEMENT

After 22 months of Defendant Elliott Kline stonewalling Plaintiffs on discovery, receiving and squandering many opportunities to course-correct, violating at least 10 discovery orders issued by two federal judges, being held in civil contempt, and failing to preserve critical evidence in this civil conspiracy case, Plaintiffs respectfully renew their request that the Court enter evidentiary sanctions against Kline. *See* Order Finding Elliott Kline in Civil Contempt 13–14, Nov. 27, 2019, ECF No. 599 ("Contempt Order"); Hr'g Tr. 81, Nov. 25, 2019, ECF No. 600 ("Contempt Hr'g Tr."); *see also* Pls.' Mot. for Sanctions against Defs. Kline and Heimbach 2, Apr. 3, 2019, ECF No. 457 ("First Sanctions Motion"); Pls.' Mot. for Sanctions against Def. Kline 1, Sept. 26, 2019, ECF No. 565 ("Second Sanctions Motion"); Pls.' Resp. to Judge Hoppe's Order & Certification 10 & App. A, Nov. 21, 2019, ECF No. 592 ("Show Cause Response").

Specifically, Plaintiffs request (1) that the Court deem certain facts listed in Appendix A to this Motion established; (2) that the Court deem authentic for purposes of Rule 901 of the Federal Rules of Evidence ("Fed. R. Evid.") any documents that Plaintiffs have a good-faith basis to believe that Kline created, including all documents from the social media accounts listed in Appendix A to this Motion, as well as any photographs taken by or depicting Kline; and (3) that the Court instruct the jury that Kline chose to intentionally withhold his documents, and that the jury may draw adverse inferences from that fact, including that Kline chose to withhold such documents because he was aware that such documents contained evidence that Kline conspired to plan racially-motivated violence at Unite the Right.

## BACKGROUND

### I.   Kline Was Central to the Conspiracy to Commit Racially-Motivated Violence at Unite the Right.

By his own admission, Kline had a central role in the planning and execution of the events known as Unite the Right in Charlottesville, Virginia, in August 2017. *See* Contempt Hr'g Tr. 56–57 (admitting that he planned Unite the Right); Ex. A at 26, Deposition of Elliott Kline ("Kline Dep."), Aug. 7, 2019 ("Q. . . . Were you one of the organizers of Unite the Right?  A. Yes."); *id.* at 106 ("Q. You testified earlier . . . that there was, quote, a plan on how everything was going to happen?  A. Yes."); *see also* First Sanctions Motion, Ex. 3, at 237, Deposition of Jason Kessler, May 16, 2018, ECF No. 457-3 ("Q. Mr. Kessler . . . you and Eli Mosley were the principal coordinators for the Unite the Right rally on August 11 and 12, 2017, correct?  A. Yes."); First Sanctions Motion, Ex. 2, at 158 ("I think Eli was one of the main people, Eli Mosley."), 189, Deposition of Erica Alduino ("Alduino Dep."), Dec. 3, 2018, ECF No. 457-2.[1]

Kline set the goals and tone for the weekend of August 11–12, 2017, and was engaged in the planning at a granular level on a daily basis throughout the spring and summer of 2017.  He, along with Jason Kessler, was responsible for approving details as specific as the words that their coconspirators chanted that weekend, including "You will not replace us."  Alduino Dep. 239–40. He worked on every aspect of the Unite the Right weekend, including the torchlight march on Friday, August 11.  He instructed Defendants and others where to go, when to be there, and what to bring.  Second Am. Compl. ("SAC") ¶¶ 146–47, 151, ECF No. 557.  He was also a member of Defendant and coconspirator Identity Evropa, which participated in and helped organize the events of the weekend.  *Id.* ¶¶ 29–30; *see* Kline Dep. 28–29 ("Q. You were formerly a member of Identity

---

[1] Kline conceded that his alter ego during the relevant period was "Eli Mosley."  Kline Dep. 48.

2

Evropa; is that correct?  A. Yes."), 68 ("Q. The members of Identity Evropa, whether individually or as part of the organization, did work on organizing Unite the Right, correct?  A. Yes."). Photographs of the August 12 event show Kline rushing in, personally ensuring that his and his coconspirators' violent plans would play out at that weekend, and smiling gleefully with the blood of counter-protestors on his clothes.  First Sanctions Motion, Ex. 5, ECF No. 457-5.  It is no exaggeration to say that without Kline, Unite the Right may not have occurred.

The single document that Kline has produced, as well as other versions of that document and other documents that Plaintiffs have received in discovery, confirms Kline's role.  Early in the planning stages of Unite the Right, Kline drafted and circulated to "group leaders" a working document titled "Operation Unite the Right Charlottesville 2.0."  Ex. B (Operation Unite the Right Charlottesville 2.0, June 11, 2017); *see* Kline Dep. 120.  Part battle cry, part playbook, that document laid out rules, guidelines, and roles for coconspirators.  The seeds for the racially-motivated violence Charlottesville ultimately endured were planted in that foundational document, which explicitly attempted to unify white supremacist groups around the concept of aggression toward so-called "anti-white" protestors: "We will send the message that we will not be divided, we will not allow them to erase history without a fight . . . ."  Ex. B at 1.

Kline also influenced and monitored the daily communication about the Charlottesville events on the primary communication platform used to plan the weekend events, the "Charlottesville 2.0" Discord server.  *See* Kline Dep. 66, 85.  In addition to posting thousands of messages himself, Kline was the moderator of the "Charlottesville 2.0" server, and had the ability to invite others to participate, to delete messages from the platform, and to kick people off the server at his discretion.  Alduino Dep. 122, 126.  In other words, Kline was able to control the content of communications surrounding the planning of the weekend events and who had access

3

to those communications. Moreover, Kline made a concerted effort to keep any evidence of his and his coconspirators' plans intensely secret. He told fellow Defendant and coconspirator Jason Kessler, "DO NOT open the discord to the public guys," and told Discord users involved in planning Unite the Right, "Sharing information publicly from this discord or about this event or who is attending outside of closed circles or this discord will get you immediately banned from all future alt right events." Ex. C (Kline Text Message to Kessler and Alduino, June 7, 2017) at 1; Ex. D (Kline Discord Message, July 11, 2017) at 8.

Kline made himself available to communicate with coconspirators through various social media platforms, including Discord and multiple accounts on Twitter, as well as multiple phone numbers and an email account, which he disseminated on the Charlottesville 2.0 server. *See, e.g.*, Kline Dep. 166–67 (listing Twitter accounts); Ex. B at 5 (listing Discord account, phone number, and email address). Kline urged his followers to "[f]eel free to msg/call whenever," Ex. B at 5, posting the same phone number through which Plaintiffs and the Court have repeatedly attempted, largely fruitlessly, to contact him throughout this litigation. *See, e.g.*, Kline Dep. 302, 306–07, 367; Order for Elliot Kline to Show Cause & Certification 6–8, 10, Oct. 30, 2019, ECF No. 584 ("Show Cause Order"); Hr'g Tr. 15, Aug. 8, 2019, ECF No. 543 ("THE COURT: . . . Mr. Kline, do the plaintiffs['] attorneys have – have a good cell phone number and email address for you and one that you will respond to? MR. KLINE: Yes. Yes, Your Honor. They have both a good phone number and a good email address.").[2] Kline also posted a separate phone number, which Plaintiffs recently found through discovery but which Kline has never admitted having, for the express

---

[2] Kline changed his phone number in August 2019. *See* Declaration of Jessica E. Phillips ("Phillips Decl."), Ex. K (Kline Email to Bloch and Kolenich, Aug. 14, 2019), ECF No. 566-11. Kline has never contacted Plaintiffs and, to Plaintiffs' knowledge, Kline has never contacted the Court using that new phone number.

4

purpose of communicating regarding Unite the Right.  Ex. E at 3 (Operation Unite the Right Charlottesville 2.0, Aug. 8, 2017) (listing a (347) area code number at which to contact Kline); Ex. F at 3 (Operation Unite the Right Charlottesville 2.0, Aug. 10, 2017) (same).[3]  In short, Kline was not only deeply involved in planning and executing Unite the Right, but was in frequent communication with coconspirators and easily reachable via multiple different communication channels during the planning process.

## II.     Kline Was Held in Contempt after 22 Months of Stonewalling Plaintiffs and the Court.

At the November 25, 2019, hearing on the Court's Order to Show Cause (the "Contempt Hearing") and in a subsequent November 27, 2019, written order, the Court found Kline in civil contempt of Court based on his "non-compliance with a multitude of court orders."  Contempt Order 2; *see id.* at 4 (describing "pattern of Kline's repeated failures to respond to discovery or discovery orders"); *id.* at 9–10 (identifying that Kline's obligations had been set forth in "[n]umerous valid orders issued by Judge Hoppe, including those dated July 3 and August 8, 2019, and that issued by this Court on November 14, 2019").  Plaintiffs will not recite here the extensive history of Kline's "[c]ontinued contumacious behavior," Show Cause Order 12 (alteration in original, internal marks omitted), that led to the Court's finding of civil contempt but refer back to their prior filings and this Court and Judge Hoppe's multiple orders.  *See generally* First Sanctions Motion; Second Sanctions Motion; Show Cause Response; Mem. Op., Aug. 9, 2019, ECF No. 539 ("Sanctions Order"); Show Cause Order; Contempt Order.

---

[3] The version of the August 10, 2017, planning document produced by Kline in discovery on December 5, 2019, does not include the "Emergency Contact Information/Comms" section containing this (347) number.  *See* Ex. G (Kline Email to Barkai, Dec. 5, 2019) at 7–15. Nor did Kline identify this (347) number in his responses to the Interrogatories that he provided on December 5, 2019.  *See id.* at 16.

5

### III. Even if Kline Purges Himself of His Contempt, Plaintiffs Are Unlikely Ever to Obtain Full Discovery of Kline's Documents.

Kline's utter failure to comply with discovery obligations, more than two years after this case was filed, alone warrants evidentiary sanctions. Even more concerning, however, the record and evidence in the case, as described below, have already made clear that, even if Kline were to finally purge himself of his contempt, Plaintiffs are extremely unlikely ever to obtain anywhere close to full discovery of Kline's critical documents and communications. Moreover, the following evidence must be considered in light of the Court's express findings at the Contempt Hearing that Kline's representations were "not credible" or "unbelievable." Contempt Order 2, 4–6; *see* Contempt Hr'g Tr. 50–51 ("THE COURT: You know that what you're saying just doesn't make any sense, don't you? . . . I mean, it's just contemptuous to even sit and tell the stories like you're telling and expect somebody to believe it.").[4] Plaintiffs are thus left with a severe evidentiary gap of Kline's making: an absence of evidence from one of the most critical members of the conspiracy.

#### A. Kline Has Admitted That He Failed to Preserve Evidence.

Kline admitted under oath at the Contempt Hearing that, although he had been informed of his discovery obligations, he had failed to preserve evidence. *See* Contempt Hr'g Tr. 36 ("Q Okay. And Mr. Kolenich told you, while he still represented you, about your discovery obligations, correct? A Yes. Q Okay. But you didn't, in fact, preserve all of your documents and communications, did you? A I didn't."). For example, although Kline testified that he had sent

---

[4] Judge Hoppe likewise certified facts to the Court providing that Kline's testimony during his deposition was "evasive, internally inconsistent, or simply not believable." Show Cause Order 10. Kline's history of untruthfulness is further established outside of this litigation. *See* Emma Cott, *How Our Reporter Uncovered a Lie That Propelled an Alt-Right Extremist's Rise*, N.Y. Times, Feb. 5, 2018, https://www.nytimes.com/2018/02/05/insider/confronting-a-white-nationalist-eli-mosley.html (detailing Kline's public lies regarding his military service).

6

private Discord messages to other Defendants in the case and that he had used an Identity Evropa email account to communicate regarding Unite the Right, he also conceded that he had failed to preserve the messages in both accounts.  *See id.* at 36–38 (failure to preserve Identity Evropa emails), 38–39 (failure to preserve private Discord messages sent to other Defendants).  Kline made similar concessions at his deposition.  *See, e.g.*, Kline Dep. 215–16.

Furthermore, Kline conceded that he used "burner" email addresses rather than real email addresses to create numerous social media accounts, including his many Twitter accounts, and that he does not remember those "burner" email addresses.  *See* Contempt Hr'g Tr. 29 ("The biggest issue, I would say, for Facebook and Twitter would be both of those I used under, you know, burner e-mails, I guess you would say, like, not real e-mail addresses."); Kline Dep. 283–84 ("But, like I said, I don't know the e-mail addresses . . . ."); Ex. G (Kline Email to Barkai, Dec. 5, 2019) at 2 ("As I've said before, I do not have the email address or know what they were for my Twitter accounts.  I used burner email addresses to set them up that didn't have real inboxes that I could gain access to.").  Plaintiffs will not get access to those accounts because of Kline's actions.

### B. The Integrity of the Data on Kline's iPhone 6S Is in Doubt.

Kline's admissions and conduct at his deposition further called into question the integrity of the data on his iPhone 6S, which he has repeatedly claimed was the only phone he used in 2017.  *See* Second Sanctions Motion 6–8.  For example, Kline testified repeatedly that his iPhone had been at points nonfunctional due to water damage and other unspecified problems.  *See, e.g.*, Kline Dep. 94. Although Kline testified that he "went through" the phone and "[e]verything was fine," he also admitted that the iPhone is "clearly a broken phone" and "a messed up phone," and contradicted himself by testifying that "stuff might have gotten deleted for all I know."  *Id.* at 94, 361.  Indeed, at one point during his deposition, Kline represented that he suddenly could not view emails that he had purportedly reviewed earlier that day because his phone was only displaying

7

messages from September 21, 2018, to June 11, 2019, supposedly due to a problem Kline was having entering his password.[5]  *Id.* at 357–59.

### C.  The Record Strongly Suggests that Kline Has Concealed and Continues to Conceal Relevant Communication Devices.

As described below and in Plaintiffs' prior filings, Plaintiffs have deep, well-founded concerns that Kline has withheld and lied to Plaintiffs and the Court about his possession of relevant communication devices.  *See* Second Sanctions Motion 5–11; Show Cause Response 9–10.  Indeed, as discovery continues (even if at a snail's pace), Plaintiffs continue to discover further evidence that indicates that Kline has withheld, if not outright destroyed or deleted, electronic devices and responsive documents.  Specifically, contrary to his sworn testimony, Kline appears to have had more than one phone during 2017 and a computer.

#### 1.  Kline's Phones

Kline has for months maintained unequivocally that he had only one phone in 2017, which was the iPhone 6S that Kline turned into the third-party discovery vendor in August 2019.  *E.g.*, Kline Dep. 388–89.  Kline testified unequivocally at his deposition and again at the Contempt Hearing that he had only one phone in 2017, which was the iPhone 6S.  *E.g.*, Kline Dep. 389 ("Q. . . . [Y]ou had one phone in 2017?  A. Correct."); Contempt Hr'g Tr. 55 ("A Most of the communication that went out to Unite the Right was done using the phone I've already sent in. . . . 99 percent of it, maybe even a hundred percent."); Ex. G at 16 ("The primary communication device I used before, during and after the event was the 610-406-2229 iPhone that has already been sent in for discovery.").  This testimony is flatly contradicted by a March 31, 2017, post that Kline

---

[5] Kline was aware of the clear implication of this bizarre episode.  He testified that although the emails that he had allegedly looked at earlier that day were suddenly not available to be viewed, "I am sure they are still in the inbox.  It is not like I went through – ***I didn't go through and delete the e-mails, or whatever.***"  Kline Dep. 362 (emphasis added).

concedes that he made on Discord in which he stated that "*I have 3 phones* . . . one for work, one for personal shit, *and one for the alt right*[.]" Phillips Decl., Ex. D, at 3, ECF No. 566-4 (emphasis added). Kline had no explanation as to why he would have made that statement on Discord if it was not true:

> I mean, I did – I mean, I said I have three phones, right. And I said that one for each thing. But I don't know – I definitely didn't have three phones. I never had three phones. I don't know why I would say that. I don't know if it was – if I was joking.

Kline Dep. 384; *see id.* at 395 ("So, it could be that we were joking about something. I don't know. I definitely didn't have three phones though.").

In that same conversation on Discord, Kline advised followers, "You should get a *seperate* [*sic*] *phone for alt right stuff* then arm it with a kill password to go off between noon and 1pm each day. I activate it before I go out and do things. . . . So if I dont [*sic*] put in the password between noon and 1pm while I am out trolling jews [*sic*] it will erase the phone." Phillips Decl., Ex. D, at 2, ECF No. 566-4 (emphasis added).[6] Kline again admitted to making these statements but had no plausible explanation for his inconsistent testimony: "Yeah, I don't – I mean, that was – I mean, that was a lie. I lied to them on Discord. That is not true." Kline Dep. 391. When asked why he would have referred to a "seperate [*sic*] phone for alt right stuff" on Discord if it were

---

[6] In addition to openly acknowledging the existence of a "seperate phone" that Kline has never admitted having and has never turned over, Kline's assertion that he was able to arm his iPhone with a "kill password" that would "erase the phone" also raises self-evident concerns regarding the possibility of spoliation and deletion of relevant documents. This admission also confirms Kline's technical competence and expertise with phones, to which he further testified at the Contempt Hearing. *See* Contempt Hr'g Tr. 55–57 ("Q . . . And were you savvy with your phone? A Relatively speaking, yes."). Accordingly, there can be no question that Kline is now and always has been capable—when he chooses to—of communicating with the Court and Plaintiffs, and of resolving any necessary communications or technical issues in order to comply with his discovery obligations.

untrue, Kline tossed up his hands, resorting to the assertion that he needed to see the message "in context" to determine whether it was a "joke" or a "lie":

> I don't know the – I don't know the – I could have been joking. There is no – I have no way of knowing, because there is nothing before this. I have to see it in context. . . . I mean, it could have been a joke, could have been a lie. I don't know.

*Id.* at 392.

In addition to Kline's "inconsistent" and "not believable" testimony, Show Cause Order 10, Plaintiffs have continued to find evidence in the course of discovery contradicting Kline's repeated claim that he only used the iPhone 6S. For example, the June 11, 2017, version of the "Operation Unite the Right Charlottesville 2.0" document (which Kline has admitted authoring) provided in a section titled "Contact Information" the number for Kline's iPhone 6S (610-406-2229), which was the phone that Kline testified repeatedly was his only phone during the relevant period. Ex. B at 6. However, the August 8 and August 10, 2017, versions of the planning document—though *not* the version that Kline produced to Plaintiffs on December 5, 2019— provided to Discord followers a (347) phone number that Kline has never before admitted using and that does not appear to be associated with any device that Kline has disclosed during discovery. Ex. E at 3 (Operation Unite the Right Charlottesville 2.0, Aug. 8, 2017); Ex. F at 3 (Operation Unite the Right Charlottesville 2.0, Aug. 10, 2017).[7] This strongly suggests that Kline did indeed

---

[7] Plaintiffs also learned of a fourth email address, eli.r.kline@gmail.com, which Kline had never before admitted having, for the first time at the Contempt Hearing. *Compare* Contempt Hr'g Tr. 64–65 ("And in the course of allowing us to review his iPhone that he still maintains in his possession, we discovered a fourth e-mail address that he had never identified for us, and that's new information to us.") *with* Kline Dep. 34, 126–27, 169 ("Q. When you were referring to, quote, real e-mail addresses, are there any others besides the ones we discussed today, Eli.F.Mosley@Gmail.com, DeplorableTruth@Gmail.com, and your Identity Evropa e-mail address? A. No. Q. Those are the only three you have? A. Correct.").

have multiple phones in 2017 and that those undisclosed phones contained responsive material that, even now, Kline does not want Plaintiffs to see.

### 2. Kline's Computer

Kline testified that he had no computer in 2017 and that he never used a computer to communicate or make documents regarding Unite the Right. Kline Dep. 107–10, 395–97. Instead, Kline testified that the only computers he used in 2017 belonged to Richard Spencer and Kline's girlfriend's neighbor. He also testified that on one occasion he had used an Internet café to check his email. *Id.* at 115–17, 397. Kline testified that although he had owned a personal computer in 2016, he left his computer behind when he moved to South Carolina in late 2016 or early 2017 because the computer did not fit in his car. *Id.* at 112, 114, 395–96. The Court has ordered Kline to turn that computer over to the vendor for imaging. Contempt Order 15.

As with his phones, Kline's testimony regarding his use and ownership of computers in 2017 is also directly contradicted by his repeated statements on Discord. On March 22, 2017, Kline referred to having a computer at least three times in three Discord messages: "they share the wall with *my computer*"; "if he comes in and i [sic] have to defend myself all they have to do is look through *my computer* and im [sic] fucked so not really a good option"; and "an hour after my video came out with the kike and the sign he commented on it with 'Echo American?' I have the screen cap on *my home PC*." Phillips Decl., Exs. F–H, ECF Nos. 566-6–566-8 (emphasis added). A week later, Kline wrote on Discord, "[W]ell its [sic] not a huge deal cause the phone is backed up on *my PC*[.]" Phillips Decl., Ex. D, at 3, ECF No. 566-4 (emphasis added).[8]

---

[8] This message—indicating that even if a "kill password" had "erase[d] the phone," the phone's contents would be available on the computer because "the phone is backed up on my PC"—underscores even more conspicuously that Kline's computer likely contains responsive documents.

Kline admitted making these statements on Discord but complained principally that the messages were "taken without any context." Kline Dep. 400. Kline also testified, implausibly, that references he made to his "computer" were in fact references to "a computer screen that I would – at my girlfriend's house, we didn't have a TV. We used a computer screen to watch Netflix and stuff like that on." *Id.* at 402. Needless to say, Kline's attempts to explain away his admissions are unconvincing, particularly in light of Kline's track record of "unbelievable" statements. S*ee* Contempt Order 2.

Adding further implausibility to his story that he did not have a computer in 2017, Kline admitted that he had created at least "five or six" versions of the "Operation Unite the Right Charlottesville 2.0," which he distributed "frequently," and that the document was "really long." Kline Dep. 175–76, 371–73. However, despite admitting to making various versions of the "really long" document, one of which Kline finally produced on December 5, 2019, Kline testified implausibly that he had never used a computer to make this document (or any other documents regarding Unite the Right), and instead that he had typed and edited the document on his phone. Kline Dep. 107–08, 120–22, 376.

As with Kline's phones, recent developments have continued to undermine Kline's testimony. For example, at the Contempt Hearing, Plaintiffs learned, for the first time in this litigation, of a "family computer" to which Kline suddenly admitted having access. Contempt Hr'g Tr. 21–22, 30–31.[9]

---

[9] Conveniently, the first time that Kline ever acknowledged the existence of a "family computer" was in response to being asked how he had been able to send emails from his eli.f.mosley@gmail.com account despite turning his iPhone 6S—supposedly the only phone with access to that account—over to the third-party discovery vendor. *See* Contempt Hr'g Tr. 21–22 ("Q Okay. And yet take a look at the e-mail address that you're sending this from. This is eli.f.mosley@gmail.com; the e-mail address you just represented to the Court that you did not have access to once you got rid of your other phone to the vendor? A Correct. I was able to get into a

12

**IV.** **As of this Filing, Kline Has Failed to Purge Himself of His Civil Contempt.**

Both at the Contempt Hearing and in the following Contempt Order, the Court clearly explained and laid out Kline's unfulfilled discovery obligations, with which Kline was required to comply "in order to purge himself of contempt." Contempt Order 14–15; *see* Contempt Hr'g Tr. 79. However, notwithstanding the clarity of the Court's order, Kline has still not brought himself into compliance with his outstanding discovery obligations and purged himself of contempt.

Plaintiffs set forth the status of each of Kline's current discovery obligations as set forth in the Contempt Order more specifically below.

a. *"Kline must respond in writing fully and completely to Plaintiffs' First Set of Interrogatories and Plaintiffs' Requests for Production of Documents. When those are complete, Kline must send them to Plaintiffs and email them to this Court's Chambers account (moon.ecf@vawd.uscourts.gov) as well as that of Judge Hoppe (hoppe.ecf@vawd.uscourts.gov)."*

On December 5, 2019, Kline produced a single document in response to the Requests for Production: an August 10, 2017, version of the "Operation Unite the Right Charlottesville 2.0." *See* Ex. G at 7–15. Kline did not produce any other version of that document that Plaintiffs have received in discovery. Kline represented to Plaintiffs, "Other than that there were no other documents used as described on the First Set of Document Request form." *Id.* at 2. To Plaintiffs' knowledge, Kline did not serve his responses on the Court or Judge Hoppe.

Also on December 5, 2019, Kline provided, via a Google Documents link, a single page in response to Plaintiffs' First Set of Interrogatories. *Id.* To Plaintiffs' knowledge, Kline did not serve his responses on the Court or Judge Hoppe. Kline's responses to the Interrogatories are deficient in at least the following ways:

---

family computer, and I was able to get into the eli.f.mosley account still; but when I went back to try to get into it, it gave me the two-factor authentication issue that we talked about earlier.").

13

- The responses are unsworn, although the instructions required Kline to answer them "under oath."

- Kline's response to Interrogatory 1 ("Identify all means of communication used by you to communicate concerning the Events, whether before, during, or after the Events . . . .") mentions only Kline's Discord and Twitter accounts. *Id.* at 16. Accordingly, his response lacks at least four email addresses of which Plaintiffs are aware[10] as well as a Facebook account, Gab account, and YouTube account (all three of which Kline included on his certification form).

- In his response to Interrogatory 3 ("Identify all persons (natural or non-natural) with whom you communicated concerning the Events, whether before, during, or after the Events."), Kline appears to have interpreted the question to be limited to "people that I communicated with in the Alt Right" and to excuse him from the obligation to identify anyone with whom he communicated only by pseudonym.[11] *Id.*

  o In addition, Kline's response, which lists only 12 individuals with whom he communicated, *id.*, is not only facially implausible but also lacks certain individuals with whom Kline has already admitted he communicated, including at least a member of Vanguard America, Thomas Ryan Rousseau, and members of the Charlottesville Police Department.[12]

- Kline's response to Interrogatory 4 ("Identify all Electronic Devices used by you to communicate concerning the Events, whether before, during, or after the Events.") states that the only phones he used were his iPhone 6S, Walmart phone, and new iPhone. *Id.* Accordingly, his response lacks at least one phone of which Plaintiffs are aware (the phone associated with the (347) phone number).

  o Additionally, Kline's response to Interrogatory 4 refers to a laptop owned by Defendant Damigo, of which Kline has never informed Plaintiffs or the Court.[13] Kline's response to Interrogatory 4 also does not include his

---

[10] These are eli.f.mosley@gmail.com, deplorabletruth@gmail.com, elimosley@identityevropa.com, and eli.r.kline@gmail.com.

[11] Kline previously testified that he understood his obligations under this Interrogatory to include *all* people with whom he had communicated concerning the events. *See* Kline Dep. 244 ("A. . . . I can make a list of the people I have communicated with concerning the events. I mean, more than half of them I won't even know their real names. Most people operate anonymously. I can give pseudonyms or fake names or whatever they use if I remember them. But – Q. Do you understand Interrogatory No. 3 is asking you to identify all those persons? A. Yes. And I would be fine with doing that. Like I said, it is going to be a difficult task.").

[12] *E.g.*, Kline Dep. 77–78, 220–23.

[13] *Compare* Ex. G at 16 *with* Kline Dep. 397 ("You testified that the only computers that you used in 2017 were Richard Spencer's and your girlfriend's neighbor's computer? A. Correct.").

14

girlfriend's neighbor's computer, which Kline previously testified that he had used.[14] *Id.*

Plaintiffs have received no response to their Second Set of Interrogatories, which were first served on Kline via email at eli.f.mosley@gmail.com on October 30, 2019; of which Plaintiffs provided Kline an additional paper copy on November 25, 2019; and to which responses were due on November 29, 2019.

      b.    *"Kline must provide the Third Party Discovery Vendor his email and social media credentials, including his passwords, for every account he identified on his Certification Form, or that should have been included on such Form originally."*

The following is the known status of Kline's social media credentials:

| Social Media Platform | Status |
|---|---|
| Email – deplorabletruth@gmail.com | Kline provided a working credential at the Contempt Hearing. |
| Email – eli.f.mosley@gmail.com | Kline provided a non-working credential at the Contempt Hearing. Kline provided a working credential on December 4, 2019. |
| Email – elimosley@identityevropa.com | Kline has not provided any credential, instead informing Plaintiffs and the vendor, "I do not know the password for the Identity Evropa email address as my account information was deleted." |
| Email – eli.r.kline@gmail.com (of which Kline did not inform Plaintiffs until the Contempt Hearing on November 25, 2019) | Kline has not provided any credential. |
| Discord | Kline has completed a Discord consent form.[15] |

---

[14] Kline Dep. 115–16, 397.

[15] Although Kline completed a Discord consent form belatedly (at his deposition in August 2019), thus enabling Discord to produce certain of Kline's data to Plaintiffs, Kline has not produced any document himself aside from the planning document that he produced on December 5, 2019.

15

| Social Media Platform | Status |
|---|---|
| Facebook (included on Certification Form) | Kline has not provided any credential, instead informing Plaintiffs and the vendor, "Unknown, Account Deleted."[16] |
| Gab (included on Certification Form) | Kline provided a credential. |
| Twitter (included on Certification Form) – various accounts | Kline has not provided any credentials, instead informing Plaintiffs and the vendor, "Unknown, Account Deleted."[17] |
| YouTube | Kline has not provided any credential. |

     i.     *"Kline must further conduct a diligent search of his electronic and any other records to confirm that the list of credentials he included on his Certification Form is complete, and to uncover his credentials (including passwords), to any of these accounts."*

To Plaintiffs' knowledge, Kline has not conducted such a search.

     ii.     *"For any and all accounts to which Kline confirms he does not have the credentials, he will submit a declaration under oath and under penalty of perjury, to that effect, and which states with specificity the reasons why such credentials are unavailable to Kline."*

To Plaintiffs' knowledge, Kline has submitted no such declaration.

     c.     *"Kline must provide his Walmart phone he described, as well as his home computer that he identified, to the Third Party Discovery Vendor for imaging."*

Kline provided his Walmart phone to Plaintiffs in person at the Contempt Hearing. On December 4, 2019, Kline informed Plaintiffs and the vendor, "PC non recoverable." To Plaintiffs' knowledge, Kline has submitted no declaration regarding the reasons why the computer is "non recoverable."

---

[16] Kline represented that he registered for Facebook with "burner emails" rather than "real email addresses." Hr'g Tr. 20, July 2, 2019, ECF No. 519.

[17] Kline represented that he registered for Twitter with "burner emails" rather than "real email addresses." Hr'g Tr. 20, July 2, 2019, ECF No. 519.

      d.      *"Kline must sign and provide to the Third Party Discovery Vendor the privacy and consent forms required by Twitter, as well as such forms required by the social media companies for the other accounts Kline listed or should have listed on his Certification Form. Plaintiffs' counsel shall promptly re-send any missing forms to Kline for execution, and no later than Friday, November 29, 2019 at 12:00 p.m.*

On December 5, 2019, Kline informed Plaintiffs, "The Twitter Privacy form requires me to enter the email address for the account I am requesting information on. As I've said before, I do not have the email address or know what they were for my Twitter accounts. I used burner email addresses to set them up that didn't have real inboxes that I could gain access to." Ex. G at 2.

## LEGAL STANDARDS

Rule 37 provides a nonexclusive list of substantive, case-related sanctions for failure to obey a discovery order, ranging from an order establishing certain facts to the entry of a default judgment. *See* First Sanctions Motion 14–15; Fed. R. Civ. P. 37(b)(2)(A); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 517–18 (D. Md. 2000). A court may also award sanctions for discovery violations pursuant to its inherent authority. *See, e.g.*, *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) ("[A] court acting under its inherent authority may impose sanctions for any conduct utterly inconsistent with the orderly administration of justice." (citation and internal quotation marks omitted)); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 178–79 (D. Md. 2008).

The Fourth Circuit has developed a four-part test for determining what sanctions to impose under Rule 37: "(1) whether the noncomplying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non–

17

compliance, and (4) whether less drastic sanctions would be effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).[18]

## ARGUMENT

### I. Kline's Misconduct Warrants Evidentiary Sanctions Due to the Evidentiary Gap Left by Kline's Failure to Participate in Discovery and His Bad Faith.

Severe evidentiary sanctions are warranted given not only Kline's "non-compliance with a multitude of court orders," Contempt Order 2—a practice that even now, after two years, has *still* not "come to an end[,]" *id.*—but especially due to the many strong indications that Kline has withheld, lied about, and in all likelihood intends to continue withholding crucial documents and devices central to this litigation. *See Butler v. DirectSat USA, LLC*, No. 10-CV-2747, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify this harshest of sanctions."); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 194 (D.S.C. 2008) ("harsher sanctions" are permitted where "the spoliation was so prejudicial that it prevents the non-spoliating party from maintaining his case"). Rule 37 expressly provides for evidentiary sanctions that both remedy the substantial prejudice Plaintiffs have suffered and constitute the most appropriate disincentive to other Defendants contemplating similar transgressions. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii).

The Court has already made factual findings relevant to the Rule 37 analysis. As to the first factor, "whether the noncomplying party acted in bad faith," *Anderson*, 155 F.3d at 504, the

---

[18] The factors courts consider in exercising their inherent authority largely mirror those courts apply under Rule 37: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [the court] seldom dismiss[es] claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Projects Mgmt.*, 734 F.3d at 373–74 (internal quotation marks and citation omitted).

18

Court has already found Kline to be in contempt precisely because of his "non-compliance with a multitude of court orders" for which his excuses were "unbelievable, contradictory, and at odds with the plain facts in the record[,]" Contempt Order 2.

As to the second factor, "the amount of prejudice that noncompliance caused the adversary," *Anderson*, 155 F.3d at 504, the Court has found, "Plaintiffs-Movants have suffered harm as a result of Kline's continued violation of those Orders. This Court finds the harm Plaintiffs have suffered to be self-evident, but such financial harm and delay to their ability to timely develop and present Plaintiffs' case was ably articulated by Plaintiffs' counsel[,]" Contempt Order 12.

On the third factor, the need to deter the egregious misconduct in which Kline has engaged to date is manifest. *See Anderson*, 155 F.3d at 504. As Plaintiffs explained in the Second Sanctions Motion, sanctions are warranted to deter not only Kline's own further discovery misconduct but other defendants' misconduct as well. In a recent filing, Kline's coconspirator, Christopher Cantwell, noted that "I've done my best to cooperate with these proceedings, just like I cooperated with law enforcement before and after the events in dispute. Many of my codefendants blew off these proceedings to avoid finding themselves in this position, and ***perhaps they will be proven to have had the better idea***." Cantwell Resp. 4, Sept. 24, 2019, ECF No. 560 (emphasis added); *see* Second Sanctions Motion 23.

Finally, on the fourth factor, "whether less drastic sanctions would [be] effective," *Anderson*, 155 F.3d at 504, there can be no question at this point that evidentiary sanctions are the only way to properly "level[] the evidentiary playing field and . . . sanction[] the improper conduct[,]" *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). Plaintiffs first requested evidentiary sanctions in the First Sanctions Motion, filed on April 3, 2019. Judge Hoppe made clear as early as June 3, 2019, that he would be willing to impose evidentiary sanctions if

other intermediary steps were not "effective." Hr'g Tr. 21, June 3, 2019, ECF No. 504; *see also* Sanctions Order 34–35 ("Plaintiffs' requested evidentiary sanctions—including the adverse inference and an order deeming some of their proposed facts established—would be available, and certainly could be appropriate in this case, if Kline . . . fail[s] to produce the discovery from this point forward. . . .  Should [Defendants, including Kline] not follow through, the Court will likely have run out of options other than to impose significant evidentiary sanctions.").  At the Contempt Hearing on November 25, 2019, this Court then agreed that, "[a]s Judge Hoppe said, it is possible that the requested evidentiary sanctions will become the only recourse available to plaintiffs, and he and this Court have taken those under advisement[.]"  Contempt Hr'g Tr. 78.  However, like Judge Hoppe, the Court found that "at present it is preferable that the facts and evidence be uncovered rather than the case rely on evidentiary presumptions."  *Id.*

Unfortunately, it has become abundantly clear that, at least with regard to Kline, there is effectively no chance at this point that "the facts and evidence [will] be uncovered."  *Id.*  Kline has failed to comply with his longstanding obligations even after being held in contempt.  There is nothing to indicate that a less drastic sanction would lead to different results.  *See Pruitt v. Bank of Am., N.A.*, No. 8:15-cv-01310, 2016 WL 7033972, at *3 (D. Md. Dec. 2, 2016) (applying sanctions to party that had been largely absent from the case, despite warnings).  Moreover, the only reasonable inference from Kline's testimony and the evidence in the record is that Kline has withheld and lied about his possession of responsive documents and devices and will continue to do so.  Evidentiary sanctions are warranted now.

Plaintiffs have made three specific requests for evidentiary sanctions: (1) that the Court deem certain facts listed in Appendix A to this Motion established; (2) that the Court deem authentic for purposes of Fed. R. Evid. 901 any documents that Plaintiffs have a good-faith basis

to believe that Kline created, including all documents from the social media accounts listed in Appendix A to this Motion, as well as any photographs taken by or depicting Kline; and (3) that the Court instruct the jury that Kline chose to intentionally withhold his documents, and that the jury may draw adverse inferences from that fact, including that Kline chose to withhold such documents because he was aware that such documents contained evidence that Kline conspired to plan racially-motivated violence at Unite the Right.

Regarding the first and second requested sanctions, Plaintiffs are simply asking that the Court deem certain facts established that Plaintiffs have a good-faith basis to believe they would in fact establish if Kline had produced their documents and continued to participate in this case. Rule 37 expressly contemplates this particular sanction for exactly this purpose, allowing a court to "direct[] that . . . designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i); *see*, *e.g.*, *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104 (D.N.J. 2006) (holding certain facts "deemed admitted for all purposes" in light of "the significance of the documents withheld from Plaintiffs, the deliberate and willful nature of the non-disclosure, and the prejudice suffered by Plaintiffs"). Any lesser sanction would fail to alleviate the substantial prejudice Plaintiffs have suffered from the inability to obtain and authenticate Kline's documents and place them before a jury. Moreover, any sanction that does not impose such a consequence would allow Defendants to avoid accountability entirely simply by opting out of the process. Kline should not be rewarded for his disobedience.

Plaintiffs' request for a jury instruction that the jury may draw adverse inferences from Kline's intentional withholding of documents is warranted because a wholesale failure to preserve and produce documents is, in effect, no different from intentional spoliation. "Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant

21

evidence." *Vodusek*, 71 F.3d at 155; *see also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010) ("The district court did not abuse its discretion in imposing a non-rebuttable adverse inference after finding that the Defendants' destruction of the folder 'severely compromised' the Plaintiffs' case by depriving the Plaintiffs of the most relevant piece of evidence to prove their claims."). "Such an instruction can be 'critical to assisting the innocent party in establishing the nature of the evidence that has gone missing.' An adverse inference instruction 'is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence.'" *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017) (citations omitted). Such a jury instruction is appropriate here.

## CONCLUSION

Accordingly, Plaintiffs renew their prior requests for evidentiary sanctions, including (1) that the Court deem certain facts listed in Appendix A to this Response established; (2) that the Court deem authentic for purposes of Fed. R. Evid. 901 any documents that Plaintiffs have a good-faith basis to believe that Kline created, including all documents from the social media accounts listed in Appendix A, as well as any photographs taken by or depicting Kline; and (3) that the Court instruct the jury that Kline chose to intentionally withhold his documents, and that the jury may draw adverse inferences from that fact, including that Kline chose to withhold such documents because he was aware that such documents contained evidence that Kline conspired to plan racially-motivated violence at Unite the Right. *See* First Sanctions Motion, Ex. 1; Second Sanctions Motion, App. A; Show Cause Response, App. A.

22

Dated: December 6, 2019

Respectfully submitted,

/s/ Robert T. Cahill
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

J. Benjamin Rottenborn (VSB 84796)
Erin B. Ashwell (VSB 79538)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
eashwell@woodsrogers.com

*Counsel for Plaintiffs*

23

**APPENDIX A**

I.      **Facts to Be Deemed Established**

Plaintiffs respectfully request that the following facts be established for purposes of this action:

1.      Defendant Kline was a member of Identity Evropa from April 2017 through at least August 2017.

2.      Defendant Kline was one of the leaders of Identity Evropa from April 2017 through at least August 2017.

3.      Defendant Kline entered into an agreement with one or more coconspirators to plan the Unite the Right event that took place in Charlottesville, Virginia on August 11 and 12, 2017.

4.      Defendant Kline entered into an agreement with one or more coconspirators to engage in racially-motivated violence in Charlottesville, Virginia on August 11, 2017.

5.      Defendant Kline entered into an agreement with one or more coconspirators to engage in racially-motivated violence at the Unite the Right event in Charlottesville, Virginia on August 12, 2017.

6.      Defendant Kline was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017 in Charlottesville, Virginia.

7.      It was reasonably foreseeable to Defendant Kline and intended by him that coconspirators would commit acts of racially-motivated violence and intimidation at the torchlight event in Charlottesville, Virginia on August 11, 2017.

8.      It was reasonably foreseeable to Defendant Kline and intended by him that coconspirators would commit acts of racially-motivated violence and intimidation at the Unite the Right event in Charlottesville, Virginia on August 12, 2017.

9.      It was reasonably foreseeable to Defendant Kline and intended by him that a coconspirator would engage in racially-motivated violence by intentionally driving a car into a crowd of counter-protestors on August 12, 2017.

10.      Defendant Kline committed multiple overt acts in furtherance of the conspiracy he entered into to commit racially-motivated violence at the Unite the Right event in Charlottesville, Virginia on August 12, 2017.

11.      Defendant Kline attended the torchlight march on August 11, 2017 and committed acts of intimidation and violence in furtherance of the conspiracy.

12.      Defendant Kline attended the Unite the Right event on August 12, 2017 and committed acts of intimidation and violence in furtherance of the conspiracy.

13.      After the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017, Defendant Kline ratified the racially-motivated violence that occurred at the event.


## II.      Documents to Be Deemed Authentic

Plaintiffs respectfully request that all documents Plaintiffs have a good-faith basis to believe were in fact created by Defendant Kline be deemed "authentic" for purposes of satisfying Rule 901 of the Federal Rules of Evidence.  In particular, Plaintiffs have a good-faith basis to believe that the following social media accounts, identified by the platform name, followed by the handle (or username), belong to Defendant Kline.  Plaintiffs respectfully request that all documents from the following social media accounts be deemed "authentic" for purposes of satisfying Rule 901 of the Federal Rule of Evidence:

1.      Discord - Eli Mosley

2.      Discord - Eli Mosley#5269

3.      Discord - Sayer

4.      Discord - Sayer#5269

5.      YouTube - Eli Mosley

6.      Facebook - Eli Mosley

7.      Facebook - Elliott Kline

8.      Twitter - @Eli_Mosley_

9.      Twitter - @EliMosley

10.     Twitter - @EliMosleyIE

11.     Twitter - @EliMosleyIsBack

12.     Twitter - @EliMosleyOH

13.     Twitter - @NotEliMosley

14.     Twitter - @Sheli_Shmosley

15.     Twitter - @ThatEliMosley

16.     Gab - @EliMosley

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler,
Nathan Damigo, Identity Europa, Inc.
(Identity Evropa), Matthew Parrott, and
Traditionalist Worker Party*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National
Socialist Movement, and Nationalist Front*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,
Michael Tubbs, and League of the South*

I further hereby certify that on December 6, 2019, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*