IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION


ELIZABETH SINES, et al.,          )
                                  )
                Plaintiffs,       )   Civil Case No. 3:17-CV-00072
                                  )
vs.                               )
                                  )
JASON KESSLER, et al.,            )
                                  )
                Defendants.       )

_____

                        STATUS HEARING
            HONORABLE NORMAN K. MOON PRESIDING
          MONDAY, DECEMBER 16, 2019, 11:57 A.M.
_____










Court Reporter:            Judy K. Webb, RPR
                           210 Franklin Road, S.W., Room 540
                           Roanoke, Virginia 24011
                           (540)857-5100 Ext. 5333


        Proceedings recorded by mechanical stenography.
Transcript produced by computer.

```
 1                  A P P E A R A N C E S

 2          On behalf of Plaintiffs Elizabeth Sines, Seth
    Wispelwey, Marissa Blair, Tyler Magill, April Muniz, Hannah
 3  Pearce, Marcus Martin, John Doe, Natalie Romero, and Chelsea
    Alvarado:
 4          Jessica E. Phillips, Esquire
            Boies Schiller Flexner, LLP
 5          1401 New York Avenue, NW
            Washington, DC 20005
 6

 7          Michael Low Bloch, Esquire
            Kaplan Hecker & Fink LLP
 8          350 Fifth Avenue, Suite 7110
            New York, NY 10118
 9

10          ERIN BOYD ASHWELL, ESQUIRE
            Woods Rogers PLC
11          10 S. Jefferson Street, Suite 1400
            Roanoke, VA 24011
12

13

14
    For Defendant Elliott Kline:
15
            ELLIOTT KLINE, PRO SE
16          117 Mesa Drive
            Reading, PA 19608
17

18

19

20

21

22

23

24

25
```

Sines, et al. v. Kessler, et al. - 12/16/19

1          (Court convened at 2:04 p.m.)

2                THE COURT:  Call the case, please.

3                THE CLERK:  Yes, Your Honor.  This is Civil Action

4    3:18-CV-27, *Elizabeth Sines and others versus Jason Kessler*

5    *and others*.

6                THE COURT:  The plaintiffs ready?

7                MS. PHILLIPS:  Yes, Your Honor.

8                THE COURT:  The defendants ready?

9                DEFENDANT KLINE:  Yes, Your Honor.

10               THE COURT:  All right.  We are here on a second

11   hearing relating to Elliott Kline's civil contempt.  At the

12   last hearing on this issue on November 25, this Court found by

13   clear and convincing evidence that Mr. Kline was in contempt

14   of court for his serious and repeated violations of numerous

15   discovery orders from Judge Hoppe and this Court.

16               Two days later, on November 27, I issued a written

17   order memorializing my findings that Mr. Kline was in civil

18   contempt.  At the hearing and in the written order, I was

19   clear about several things:  One, Mr. Kline's conduct was

20   contemptuous of numerous valid court orders; two, Mr. Kline

21   needed to take certain specific steps to purge himself of that

22   contempt; and, three, for as long as he did not comply, he

23   would be subject to a daily fine of $200.  And if that didn't

24   work, potentially incarceration until he did purge himself of

25   contempt.

1        The follow-up hearing has been scheduled since

2   November 25th to assess the status of Mr. Kline's steps to

3   purge himself of contempt.  I have reviewed numerous filings

4   before today's hearing about this issue.  I received

5   plaintiff's motion for evidentiary sanctions filed against

6   Mr. Kline, and I considered, in particular, those pages

7   relating to Kline's conduct since the last contempt hearing

8   and that he had failed to purge himself of his civil contempt.

9        I directed Mr. Kline to submit by Friday,

10  December 13, a brief or response addressing any and all steps

11  he had taken to purge himself of contempt, and I further

12  directed Mr. Kline to address how and when he had satisfied

13  each of the discovery obligations set forth in paragraph 41 of

14  this Court's order finding Elliott Kline in civil contempt.

15  That part of the order clearly laid out the steps Mr. Kline

16  needed to fulfill to purge himself of contempt.

17        I received and considered Mr. Kline's response on

18  Friday, December 13, in which he contended, among other

19  things, that he has been entirely in compliance with his

20  discovery obligations to the best of his ability, and that he

21  has tried working with plaintiffs to resolve any remaining

22  issues.

23        I directed plaintiffs also to file a supplemental

24  brief on Friday addressing any further steps Mr. Kline had

25  taken to purge himself of civil contempt, and I also directed

 1  plaintiffs to file an update about the status of discovery

 2  collection efforts and what evidence plaintiffs intended to

 3  introduce today.  I have received and considered their

 4  response as well.

 5          Their position remains that Mr. Kline has failed to

 6  purge himself of contempt, and, further, that it appears from

 7  his other conduct, like responding to plaintiffs' second set

 8  of discovery requests, that he is not demonstrating any change

 9  in future behavior to comply with his obligations to

10  plaintiffs and this Court.  That brings us to today.

11          The Court has already found by clear and convincing

12  evidence that Mr. Kline is in contempt of court, and I

13  provided clear steps Mr. Kline can take to purge himself of

14  contempt.  The burden shifts to Mr. Kline at this point to

15  show that he has substantially complied with the Court's

16  orders or that he is unable to do so.

17          I want to hear from both parties today, but we'll

18  start with the plaintiff, plaintiffs' counsel.  Let's work

19  from paragraph 41 of the Court's civil contempt order to

20  Mr. Kline.

21          With regard to each of the obligations this Court

22  stated Mr. Kline needed to undertake to purge himself of

23  contempt, has he satisfied any of those in your view?

24          MS. PHILLIPS:  Thank you, Your Honor.  If I may, it's

25  probably easiest if I go paragraph by paragraph through the

 1  subparagraphs --

 2          THE COURT:  Yeah.

 3          MS. PHILLIPS:  -- of paragraph 41 from your

 4  November 27th order.

 5          Paragraph 41A requires that Mr. Kline respond in

 6  writing fully and completely to plaintiffs' first set of

 7  interrogatories and plaintiffs' request for production of

 8  documents.  When those are complete, Kline must send those to

 9  plaintiffs and e-mail them to the Court's chamber's account,

10  as well as that to Judge Hoppe.

11          Mr. Kline submitted on December 5th, 2019, his

12  responses and answers to plaintiffs' first set of

13  interrogatories.  They were unsigned, they were not under

14  oath, and in plaintiffs' view, all four interrogatory

15  responses were entirely deficient and incomplete, particularly

16  with regard to previous testimony that Mr. Kline gave both

17  here during the November 25th hearing, but also during his

18  August 2019 deposition.

19          And as a minor point, I don't believe that he

20  e-mailed his interrogatory responses to either Your Honor or

21  to Judge Hoppe.

22          Subparagraph B of paragraph 41 requires Kline to

23  provide the third-party discovery vendor his e-mail and social

24  media credentials, including his passwords for every account

25  he identified on his certification form, or that should have

1  been included on such form originally.

2       Romanette I requires him to conduct a diligent search

3  of his electronic and other records to confirm that the list

4  of credentials he included on his certification form is

5  complete, and to uncover his credentials, including passwords

6  to any of these accounts.

7       I don't have any information on whether Mr. Kline has

8  indeed conducted the search required by Romanette I.  I will

9  note that his submission from December 13th says nothing about

10 having conducted such a search.

11      I will note that he did provide on December 4th,

12 2019, to the vendor further confirmation that he does not, in

13 fact, have any account credentials for his eight different

14 Twitter accounts and some other social media accounts.  He did

15 provide on December 13th, in the submission, that he made his

16 e-mail password for the elierkline@gmail.com address, and we

17 confirmed this morning with the vendor that that address does

18 in fact -- or, excuse me, that that password does in fact

19 work.

20      Romanette II of 41b requires Mr. Kline to confirm --

21 for any and all accounts to which he confirms he does not have

22 credentials, he will submit a declaration under oath and under

23 penalty of perjury to that effect, and which states with

24 specificity the reasons why such credentials are unavailable

25 to Mr. Kline.  Mr. Kline has not submitted such a declaration

1   as far as plaintiffs are aware.

2          Romanette C requires Kline to provide his Walmart

3   phone, which he did do on November 25th.  It also requires him

4   to provide his home computer that he identified to the

5   third-party discovery vendor for imaging.  And then Your

6   Honor's order from December 10th, the fourth item in that

7   order also required him to bring that PC here today.

8          I have confirmed with the vendor this morning that

9   they have not received the computer.  Again, I don't know if

10  he showed up with a computer.  I know his assertion to the

11  third-party vendor was that it was, quote/unquote,

12  nonrecoverable.

13         And finally, paragraph D requires Mr. Kline to sign

14  and provide the third-party discovery vendor the privacy and

15  consent forms required by Twitter.  My understanding is that,

16  again, he has represented that he cannot do so because the

17  privacy form required by Twitter asks for the e-mail address

18  that he used to create his Twitter accounts.  Again, there are

19  eight different Twitter accounts, and he represents that he

20  does not have the e-mail address that he used to create any

21  one of those eight.  So in short, I think his allegation is

22  that he is unable to comply with paragraph D.  But, again, we

23  don't have a declaration from him so stating.

24         So in short, plaintiffs' view is that Mr. Kline is

25  most certainly still out of compliance with the November 27th

1  order, but also, in fact, your December 10th order in that his

2  response submitted on December 13th was deficient in that it

3  didn't do, really, any of the four things that you had

4  required him to do.

5       THE COURT:  Okay.  Well, with regard to the social

6  media accounts for which he says he cannot complete his

7  consent forms or that he cannot provide credentials because he

8  used burner e-mail addresses to set them up, if you could

9  identify any other -- if any others fall into that category

10  besides Twitter -- my question is here:  Is there anything

11  Kline can possibly further do with respect to those at this

12  stage with --

13       MS. PHILLIPS:  I -- I'm sorry to interrupt you.

14       THE COURT:  No.  No.

15       MS. PHILLIPS:  My understanding is the only thing

16  left for him to do with regard to that is, in fact, fill out

17  the declaration under oath.  I want to make sure I get the

18  language correct from your November 27th.  "For any and all

19  accounts to which Kline confirms he does not have the

20  credentials, he will submit a declaration under oath and under

21  penalty of perjury to that effect, and state with specificity

22  the reasons why such credentials are unavailable to Kline."

23  That is still outstanding.  But I think with regard to the

24  social media credentials that's the final step he can do since

25  he alleges he has no access to any of them and doesn't recall

Kline - Examination by the Court

1  the e-mail accounts that were used because they were burner

2  e-mails.

3          THE COURT:  Okay.

4          All right.  Mr. Kline, you've heard the plaintiffs'

5  position.  I'll hear any argument or evidence you have to

6  present as to whether you have purged yourself of contempt.

7          DEFENDANT KLINE:  Your Honor, so I believe that I

8  have done to the best of my ability what they've asked me to

9  do after --

10          THE COURT:  Okay.  I think that has to be evidence,

11  so you'll have to be sworn and testify.

12          DEFENDANT KLINE:  That's okay, Your Honor.

13          THE COURT:  All right.

14          DEFENDANT KLINE:  Can I bring my stuff with me?

15          THE COURT:  Be sworn.

16          THE CLERK:  Please raise your right hand.

17              ELLIOTT KLINE, COURT WITNESS, SWORN

18                      EXAMINATION

19  BY THE COURT:

20  Q    If you would come over and take a seat in the witness

21  box.

22  A    Can you hear me?

23  Q    Yes.

24  A    So, Your Honor, like I said, I believe that I have done

25  as much as I can to get the discovery part -- portions done.

Kline - Examination by the Court

1    The plaintiffs mentioned a couple of things that I just

2  wanted to go over.  The first thing was the not having a sworn

3  statement to the Court.  I thought that the e-mail that I had

4  sent with the document was the sworn statement.  I wasn't

5  aware that I had to say anything under oath or anything like

6  that.  But I am prepared to do that here, now, if I need to,

7  or however that works.  I thought that the e-mail that I had

8  sent with the interrogatories answering that was an

9  under-oath --

10  Q    You thought that an e-mail was under oath?

11  A    I thought that that was, like, an official -- an official

12  document by answering those interrogatories, Your Honor.

13    As far as the social media accounts are concerned,

14  they're correct.  I tried to actually go on Twitter's website,

15  like the discovery vendor had asked me to, and complete the

16  privacy information form to release the data to them, but it

17  does ask for the original e-mails.  And as I've said numerous

18  times, I don't have access to of any those e-mails.  And I

19  would be willing to confirm that with the sworn statement

20  under oath as well.

21    As far as the computer goes that was mentioned, that

22  computer, as I had said at the deposition in August, is a

23  computer that I used before I was a member of the Alt-right.

24  The last time I had used it was in 2016, and it wasn't used

25  for any purposes related to Unite the Right or any

Kline - Examination by the Court

1   communication.

2   Q    Well, you were ordered to turn that computer over,

3   correct?

4   A    Correct, Your Honor.

5   Q    Well, you understand the idea was for someone else to

6   check the computer to see?  It was not -- we don't take your

7   word for it, nor anyone else's word in any other case.

8   A    I understand.

9   Q    When you're ordered to turn over something, it is for the

10  purpose of someone else verifying what you might say.  You're

11  not the last word on that.

12  A    I understand, Your Honor.  At the deposition, I described

13  it -- I didn't know if the computer was still even -- if I

14  still had it.  And I thought it was in one of two storage

15  sheds, so I went and checked both those storage sheds and it

16  was no longer there.  So when I moved back in 2016, that

17  computer had been dropped, and it must have been thrown out

18  when we were moving.  So I don't have that computer at all is

19  the reason that I'm not able to provide that computer either.

20  Q    Okay.  Go ahead.

21  A    And then the -- I think the last portion was the sworn

22  statement with all the social media accounts, confirming that

23  I have not -- I don't have access to the credentials for them.

24  I'm ready to do that whenever.  I'm unsure how exactly I would

25  go about doing that, other than doing that here today in

Kline - Examination by Ms. Phillips

1    court.

2        But the information that I have sent the discovery team

3    with my cell phones, everything like that, I've provided

4    everything that they've asked me to provide to the best of my

5    ability.  The only -- the big issue is the release forms,

6    which all ask for the e-mail address for the account that was

7    originally used, which I don't have, and I had said at the

8    deposition in August, as well as at the court -- to the Court

9    last time I was here.

10           THE COURT:  Any questions plaintiff would like to ask

11   him?

12           MS. PHILLIPS:  May I?

13           THE COURT:  Yes.

14           MS. PHILLIPS:  Just a couple.

15           May I give Your Honor and Mr. Kline a binder of

16   documents just to refer to.

17                              EXAMINATION

18   BY MS. PHILLIPS:

19   Q    Okay.  Mr. Kline, the first thing, I'd just like to

20   direct your attention to tab 2, and tab 2 is Judge Moon's

21   November 27th order.  And I'll direct your attention to page

22   14, which includes paragraph 41 that we've been talking about.

23       Actually, you know what, first I'll have to turn to page

24   2 of that order.  Are you at page 2?

25   A    One moment.  Yes.

Kline - Examination by Ms. Phillips

1  Q    Okay.  Look at the third full paragraph down.  And that

2  third full paragraph says:  "To coerce Kline into compliance

3  with court orders, this Court will impose upon Kline (and in

4  favor of plaintiffs) a remedial fine of $200 per day of his

5  noncompliance, which fine will be suspended until

6  December 2nd, 2019, to be incurred at 5:00 p.m. Eastern on

7  that date and on each follow day of noncompliance, until Kline

8  purges himself of contempt."

9        Do you see that?

10 A    Yes.

11 Q    Okay.  And we had a hearing three weeks ago today in this

12 courtroom, correct?  Do you recall that?

13 A    Yes.

14 Q    Between November 25th, that hearing date, and

15 December 2nd, the date on which you would begin to be fined,

16 you didn't take a single one of the steps laid out in

17 paragraph 41 of tab 2 in order to come into compliance with

18 Judge Moon's orders, did you?

19 A    That's when I was doing the -- my diligence search to

20 look for the credentials and things like that.  So I had gone

21 back through thinking maybe the e-mails I do have access to,

22 maybe some of them were used for some of the Twitter accounts

23 and things like that.  So I went through and checked those and

24 a couple of other places; I did not find those at all.

25 Q    But between November 25th and December 2nd, you did not

Kline - Examination by Ms. Phillips

1  submit to plaintiffs or the Court your interrogatory answers,

2  correct?

3  A    Correct.

4  Q    Okay.  And you did not produce any documents to

5  plaintiffs between November 25th and December 2nd, correct?

6  A    Correct.

7  Q    And you did not submit to the Court your declaration

8  under oath with regard to your social media credentials during

9  that time period, correct?

10 A    Correct.

11 Q    Okay.  I will direct your attention to -- go to tab 5,

12 please.  This document is plaintiffs' supplemental brief filed

13 in support of our motion for evidentiary sanctions that the

14 Court asked us to file.  And I'm specifically going to ask you

15 to take a look at Exhibit B to this document.  And I apologize

16 in advance; the writing is very small on the e-mail.

17      But if you take a look at Exhibit B, and go to the second

18 page of Exhibit B to the very first e-mail in a chain of

19 e-mails.  Do you see that?

20 A    You're on tab 5, you said?

21 Q    Correct, tab 5.

22 A    You mean the first e-mail address?

23 Q    Again, are you at tab 5?

24 A    I'm at tab 5.  I'm on page 4, at the very top.

25 Q    Yeah.  Go to Exhibit B.

Kline - Examination by Ms. Phillips

1  A     Oh, I see where you mean.  There was a B up here.

2  Q     Got it.  I apologize.

3        If you could find that second page which begins this

4  e-mail chain.  Are you with me?

5  A     I see it, yes.

6  Q     Okay.  So the first e-mail there is Monday, December 2nd,

7  2019.  Do you see that?

8  A     Yes.

9  Q     And it's from Ken Kim?  Do you see that?

10 A     Yes.

11 Q     And do you understand that Mr. Kim is from the

12 third-party vendor in this case?

13 A     Yes.

14 Q     Okay.  And he says, "Mr. Kline, we are reaching out to

15 you again separately with requests for credentials, additional

16 information to be able to proceed with all pending

17 collections.  Please see below excerpt from the status report

18 e-mailed to you on November 8th."

19       And then at the bottom he says, "Please confirm all the

20 above accounts, user names, and provide credentials to access

21 all the accounts.  Also, please provide us with access to your

22 PC for us to image and complete collection."

23       Do you see that?

24 A     Yes.

25 Q     And you did not respond to this e-mail until after

Kline - Examination by Ms. Phillips

1  December 2nd, correct?

2  A    Yes.

3  Q    Okay.  And then if you look at the next e-mail up, which

4  is a December 3rd e-mail to you, also from Ken Kim.  Do you

5  see that?

6  A    December 3rd?

7  Q    Yeah.  It's on the same page, just immediately above it.

8  A    Okay.  Yes, I see that.

9  Q    So he says, "In addition to the below requests, can you

10 also provide passwords for the following e-mail accounts so

11 our forensic consultants can assess for collection purposes."

12 And then he lays out a couple of e-mail addresses.

13      Now, you didn't respond to Mr. Kim's e-mail here until

14 after December 2nd, correct?

15 A    Correct.  I believe it was December 6th that I responded.

16 Q    Well, if you turn to the first page -- again, we're

17 following this e-mail chain -- you responded on December 4th.

18 Do you see that?

19 A    Yes.

20 Q    And you say at the very bottom of that page, the second

21 sentence, "I will be sending the rest of my discovery

22 documents today as well."  Do you see that?

23 A    Yes.

24 Q    But you didn't send those discovery documents on

25 December 4th, did you?

Kline - Examination by Ms. Phillips

1  A     No.  That was while I was trying to figure out the issue

2  with the password.  The thing I had sent you guys -- the

3  screenshot I sent you guys was when I was trying to get the

4  work -- try to get the Twitter and Facebook -- or the Twitter

5  and Discord release forms done without an e-mail.

6  Q     Okay.

7  A     I wasn't expecting to not be able to do it without the

8  e-mail.

9  Q     But you didn't send in, for example, the answers to your

10  interrogatories on that date, did you?

11  A     No.  I did on the 6th, while I was trying to figure out

12  how to -- how to complete them.

13  Q     Okay.  Let's go ahead and take a look at your

14  interrogatories that you responded.

15        Please turn to tab 3 in the binder and go to the very

16  last page, please.

17        Do you recognize these as the interrogatory answers that

18  you sent to plaintiffs via a Google document link?

19  A     Yes.

20  Q     And we've covered this, but these are not signed,

21  correct?

22  A     Correct.  Like I said, I was under the impression that by

23  me sending it from the e-mail address that I had been using,

24  that that was a signature.  I didn't realize that I would need

25  to, like, print it out and sign it or anything like that.  I

Kline - Examination by Ms. Phillips

1    don't have access to a printer, so the only way I would be

2    able to do this was through a Google sheet or something like

3    that.

4    Q    Okay.  And they're not certified by you either, correct?

5    A    I'm not sure what that means.

6    Q    Okay.  You didn't swear to the truth of these answers

7    under oath, correct?

8    A    Correct.  But I'm prepared to do that whenever.

9    Q    Okay.  And did you serve these interrogatory answers on

10   either Judge Moon or Judge Hoppe?

11   A    I thought I had -- I thought I had done that, and when

12   the next e-mail from you guys came saying that I hadn't done

13   that, I then -- I had then saw you guys had forwarded it to

14   them for me.

15   Q    Okay.  The first interrogatory answer here mentions as

16   methods by which -- that you used to communicate for Unite the

17   Right, Discord, and Twitter.  Do you see that?

18   A    Yes.

19   Q    Okay.  But you didn't include in this particular answer,

20   for example, any of the four e-mail addresses that you've

21   identified, correct?

22   A    Correct.

23   Q    Okay.  And you didn't include a Facebook account in this

24   answer, did you?

25   A    Well, part of the issue with Facebook is, to list the

Kline - Examination by Ms. Phillips

1  Facebook account, I need to know the name of it.  So I should

2  have put in here, "A Facebook account that I don't know the

3  name of," essentially, but I don't have the credentials for

4  the Facebook account as well.

5  Q    Okay.  And you didn't list a Gab account in this answer

6  to this Interrogatory Number 1 either, did you?

7  A    Correct.

8  Q    Okay.  And you did list both the Facebook account and the

9  Gab account in the certification that you filled out on the

10  day of your deposition?

11  A    Correct.

12  Q    So you would agree with me, then, that your answer to

13  Interrogatory Number 1 is not a fulsome answer?

14  A    Like I said, I didn't realize that that wasn't -- that

15  those two things were separate.  So I thought this was

16  something that went with the certification form.  I didn't

17  realize that everything that was on the certification form

18  also had to be on the interrogatories, if that makes sense.

19      I was just trying to list out all the accounts here that

20  I had used, and that wasn't necessarily the account names

21  listed on the certification form.  So the Discord, for

22  example, the Discord name isn't -- it's listed -- it wasn't

23  listed on the certification form either -- or wasn't listed on

24  the certification form with the name of the account with the

25  number.

Kline - Examination by Ms. Phillips

1  Q    So your certification form is also not accurate, or at

2  least not fulsome?

3  A    No -- it was -- that was -- that was on the form that you

4  guys had given me, that I had signed previously saying that I

5  have.  But what I mean is the Excel spreadsheet list of

6  accounts, I was just trying to fill in what was missing from

7  there.

8  Q    Okay.  Understood.  But we can agree that you have other

9  accounts that you used to communicate for Unite the Right that

10  are not listed in your interrogatory answer Number 1, correct?

11  A    Yes.  But I can easily amend the -- all it is, is the Gab

12  account that I had previously given you guys access to, that

13  you guys have access to, and the Facebook account that I don't

14  have access to, that I've already sent that to you guys.

15  Q    If you take a look at Interrogatory Number 3, you were

16  asked to identify all persons, natural and nonnatural, with

17  whom you communicated concerning the events, meaning Unite the

18  Right, whether before, during, or after the events.  And

19  you've listed here, I believe, 12 individuals, correct?

20  A    Correct.

21  Q    Okay.  But, for example, you did not list police

22  officers, Charlottesville police officers with whom you

23  corresponded about Unite the Right, correct?

24  A    Correct.  I don't recall any of their names.

25  Q    But you didn't say "Charlottesville police officers" in

Kline - Examination by Ms. Phillips

1   this answer, did you?

2   A    No.

3   Q    Okay.  And you didn't list, for example, Thomas Ryan

4   Rousseau here, did you?

5   A    No.  I didn't remember that he was someone that I had

6   contacted.  Later I said, he is someone that I had -- during

7   my deposition I described -- I think it was during my

8   deposition -- that he had contacted me.  He's someone I never

9   really had spoken to before that.  And it was him messaging me

10  and me just saying "Okay," and that was it.  So I could amend

11  this to just include him as well.  I just had forgot about him

12  because it was such a brief and -- it was a while back

13  conversation that we had.

14  Q    Okay.  Well, you testified in your deposition, as you

15  just conceded, that you had had conversations with Thomas Ryan

16  Rousseau, but you didn't list him here.

17       And you communicated over Discord with many more people

18  than just the 12 that you listed here, correct?

19  A    Yes.  But I don't know any of their names or anything

20  like that.

21  Q    Okay.  But, again, you would agree with me that your

22  answer here, then, is a deficient response?  This is not a

23  fulsome answer, is it?

24  A    So, like I said, I didn't know that that's what this --

25  that that's what needed to be included in this, was people I

Kline - Examination by Ms. Phillips

1  wouldn't -- I didn't know, right?  So I don't know the

2  officers I spoke to; I don't know, like, most of the people I

3  spoke to on Discord, because they use pseudonyms or fake names

4  and like that.  So I wasn't aware that I needed to put in

5  people that don't have -- that I don't know their names.

6  Q    Well, you know Thomas Ryan Rousseau's name, correct?

7  A    I only knew him as Thomas.  I didn't recognize his whole

8  full name before, but, yes.  He's someone that I just didn't

9  remember, like I said.

10 Q    Okay.  If you take a look at Interrogatory 4, it asks you

11 to identify all electronic devices used by you to communicate

12 concerning the events whether before, during, or after the

13 events.  And this -- your response states that you used the

14 610 iPhone that's already been sent in for discovery; the

15 Walmart phone, your current iPhone, you sent those in.

16     What about the phone that's associated with the phone

17 number (347)868-7023?

18 A    I looked at that.  That was part of what took me a little

19 bit, because I saw that you guys had put that as a number.  I

20 looked for that number in all of my -- in everything I had,

21 and I've never seen that number.  I don't know where it's

22 from.  I don't know if it's somebody else's number that was

23 put next to mine for a contact.  But I've never used a number

24 like that or had a phone number like that.  I never had a 347

25 number linked to me or anything like that.  I looked to try to

Kline - Examination by Ms. Phillips

1  find where that number came from or who it was, and I wasn't

2  able to find it.

3  Q    Take a look at tab 3, please.  And I'm going to direct

4  your attention to Exhibit E.  It's sort of in the middle of

5  this large document.  And at the bottom of the page, you'll

6  see it's page 7771, just to get you to Exhibit E.

7  A    Okay, I'm there.

8  Q    Okay.  And so take a look at the next page.  Do you

9  recognize this as the operational document that you have

10 conceded that you wrote?

11 A    Yes.

12 Q    Okay.  And if you look at the second page of this

13 document, the bottom number is 7773, and I'm going to direct

14 your attention to contact information.  Do you see that?

15 A    Yes.

16 Q    It says, "Leading up to the event, I am releasing my

17 direct contact information to leaders and directors.  I'm in

18 the middle of a move, but feel free to message me directly for

19 anything regarding the event.  Eli Mosley dash Discord, Eli

20 Mosley hash tag 5269 dash phone number (347)868-7023, e-mail

21 deplorabletruth@gmail.com.  Feel free to message, call

22 whenever."  Do you see that?

23 A    Yes.

24 Q    Do you understand that that's where we got this 347

25 number?

Kline - Examination by Ms. Phillips

1   A     Yes.  Like I said, when I went through the documents that

2   you guys had sent me, I found this and I tried to go back to

3   find the number.  On other -- on the older version, the last

4   version, I guess, of this document, it was updated to my 610

5   number.  So I can only assume -- I mean, this is two years

6   ago, so I don't really remember.  I can only assume that this

7   was somebody else's number that I accidentally put here,

8   something like that, because I never used any 347 number or

9   any number during this, other than the (610)406-2229 number.

10  Q     Okay.  Go back to your interrogatory answers, if you

11  will.  Again, that's the very last page of tab 3.  And we're

12  still on your response, your answer to Interrogatory Number 4.

13  You mention there having used a laptop owned by defendant

14  Damigo.  Do you see that?

15  A     What's the tab again?  I'm sorry.

16  Q     Sure.  Tab 3.

17  A     Tab 3.

18  Q     Very last page.

19  A     But, yes, I remember putting that, yes.

20  Q     Okay.  But you've never informed plaintiffs before that

21  you used defendant Damigo's laptop?

22  A     I didn't remember that I used his laptop.  And I got an

23  e-mail -- and you guys can see this in the discovery.  I got

24  an e-mail to my Deplorable Truth e-mail that was while I was

25  trying to find -- meet my discovery obligations, and it was a

Kline - Examination by Ms. Phillips

1  picture of me on Nathan Damigo's laptop, and it was from the

2  piece that's in evidence already, the New York Times' piece

3  about me, with me using Nathan Damigo's laptop.  And they

4  said, "Is this your computer?"  I looked at the laptop and it

5  was definitely Nathan's.  It has a Marine sticker on it -- he

6  was a Marine -- with an Identity Evropa sticker on it, so that

7  reminded me of that.  I did not remember ever using it.  I

8  must have used it for maybe five minutes at most.

9  Q    Who you sent you this e-mail?

10 A    It was an anonymous e-mail, citing someone that was

11 investigating the Unite the Right events privately.  That

12 email is the Deplorable Truth e-mail, so you guys can see that

13 e-mail in discovery, and when I responded.

14 Q    When you say it was an anonymous e-mail, you mean it came

15 from --

16 A    It came from an e-mail address I didn't recognize.  I

17 don't know who it was.

18 Q    Okay.  Do you recall what the e-mail address was?

19 A    No, but like I said, it's in my e-mail inbox.

20 Q    Okay.  Mr. Kline, you have not answered plaintiffs'

21 second set of interrogatories yet, have you?

22 A    No.  But in your motion -- or in the papers that you guys

23 filed for today, you said that it was attached to the e-mail,

24 the e-mail you guys had sent with the first interrogatories

25 after the previous court date.  I went through those

Kline - Examination by Ms. Phillips

1  attachments, and I read through every single attachment,

2  searched the whole thing, and it was not in the attachments.

3  It was not there, the second set.

4  Q   We also handed you a hard copy of that right here in this

5  courtroom.

6  A   I brought with me -- that binder over there is all of the

7  things that you guys gave me, and I looked through that as

8  well and didn't see it.  Now, I could be missing it in that

9  binder, but I know you guys didn't e-mail it to me.  Like I

10 said, I went through all those attachments, and those are in

11 my e-mail as well, and it's not anywhere in there.

12      However, again, I would be more than willing to do the

13 second interrogatories.  I mean, I will do it right now under

14 oath if that's what needs to be done for the interrogatories.

15          THE COURT:  Well, you knew you had to do it.  And

16 when it wasn't there, why didn't you call her and say it

17 wasn't there?

18          THE WITNESS:  The court order said the first set of

19 interrogatories, Your Honor.

20          THE COURT:  Excuse me?

21          THE WITNESS:  The court order that you put forward

22 said the first set of interrogatories.  So when I went through

23 and did the -- like, went through to complete my discovery

24 obligations, I went through the e-mail they sent me with the

25 attachments, and since it wasn't there, it wasn't something

1    like, "Oh, they also didn't do the second set of

2    interrogatories."  Because I went through the court order, I

3    read through the court order to make sure I was doing

4    everything that I needed to do, and it just said the first set

5    of interrogatories.  And then it wasn't also attached to the

6    e-mail.

7              THE COURT:  You knew you had an outstanding

8    obligation not withstanding that order --

9              THE WITNESS:  I knew that there was a second set of

10   interrogatories, I didn't know if they were -- if they were

11   stipulated on the first set being completed.

12             So the first set of interrogatories that I was

13   sending forward, when I was doing that, there was no second

14   set of interrogatories in the e-mail or anything like that.

15             Like I said, Your Honor, I have no issue filling out

16   the second interrogatories, but I didn't even know that they

17   were part of what I had to complete to be in compliance with

18   discovery so far, because they weren't listed in the court

19   order, as well as they weren't in the attachments.

20             If they were in either of those two things, then,

21   yes, I would have went back and said, "Oh, I also need to do

22   the second set of interrogatories because the court order

23   says," or "Oh, there's also a second set of interrogatories in

24   the attachments."  But neither of those things were there, so

25   I didn't realize it was something I needed to do that I hadn't

Kline - Examination by Ms. Phillips

1  done.

2          THE COURT:  Go ahead.

3  BY MS. PHILLIPS:

4  Q    Do you understand that those responses were due to

5  plaintiffs on November 29th, 2019?

6  A    No, I did not.

7  Q    Okay.  If you go back to Judge Moon's order, if you turn

8  to tab 2, please.  And now I'll address to you page 14,

9  please.  And I'm looking at paragraph 41b, and the first

10  Romanette that requires you to conduct a diligent search of

11  your electronic and any other records to confirm that the list

12  of credentials that you included on your certification form is

13  complete, and to uncover your credentials, including passwords

14  to any of these accounts.

15      I would like to you describe for the Court the search

16  that you undertook to become in compliance with that

17  particular provision of the order.

18  A    So the e-mail or the social media accounts that I have

19  were mostly all done through burner e-mail, to my knowledge.

20  So everything was done through me going on a website that

21  makes an e-mail for you so that you can create accounts on

22  websites.  And I did this to avoid bans on Twitter.

23      So I went through my actual e-mail addresses, my real

24  e-mail addresses, the Deplorable Truth one, the Eli F. Mosley

25  one.  All the e-mail addresses that I have listed for you guys

Kline - Examination by Ms. Phillips

1   that I have access to, I went through all of those to see if

2   any of those e-mails were used for any of the account

3   creations, and I didn't see any account creation verification

4   e-mails in those inboxes.

5        So I went through, basically, the e-mails I do have

6   access to, to try to see if I could match one of the user

7   names to one of the e-mail addresses, so I could at least get

8   access to one of the Twitter accounts.  But I wasn't able to

9   find of any those that matched.

10  Q    Okay.  So you can't do the Twitter privacy form, you

11  can't give us credentials for any of your Twitter accounts or

12  your Facebook accounts.  You haven't submitted complete

13  answers to the first set of interrogatories, you haven't

14  submitted any answers to the second set of interrogatories,

15  and you've produced a single document.  Is that all correct?

16  A    The first set of interrogatories I did complete, and I

17  did complete to the best of my ability.  And as we just

18  previously discussed, there are -- there is something I should

19  add because I didn't understand that I needed to put

20  information I did not know in the interrogatories.  So the

21  information that I did not know, things like the police

22  officers' names, I didn't realize I had to put in there

23  Charlottesville police officers whose name I don't know, or

24  people in Discord whose names I don't know, I didn't realize I

25  had to put those types of things in the interrogatories.

Kline - Examination by Ms. Phillips

1     As well as the e-mail addresses, since I've -- I didn't

2 put those in there because I thought that those were something

3 that we already had -- you guys already have access to, you've

4 already confirmed you have access to all of them.  I just

5 didn't put those in there.  I should have put those in there

6 as well.  But I did complete the interrogatories to the best

7 of my ability, to try to get those done for you guys.  Like I

8 said, I just wanted to comply --

9 Q    The first set.

10 A    The first set, right, with the first set of

11 interrogatories.

12     Just to be clear, I still haven't seen the second set of

13 interrogatories.  I went through my e-mail after I saw the

14 form you guys sent out Friday afternoon, so -- that said, you

15 know, I haven't completed the second set of interrogatories.

16 I went through my e-mails and I couldn't find that one either.

17 So I searched for "second set of interrogatories," things like

18 that, and I couldn't find it.  So if I could just get resent

19 those, I would be more than happy to do that.

20     But like I said, that was not attached to -- that was not

21 attached to the e-mail that you guys had sent me after our

22 last court date, the second set of interrogatories, which is

23 where I was going through and making sure I completed all of

24 what I needed to complete; I was going through that e-mail to

25 comply with the Court.

Kline - Examination by Ms. Phillips

1  Q    But you did receive an e-mail on October 30th, receiving

2  service of those second set of interrogatories, correct?

3  A    When I did my search, I did not see that in there.  So I

4  don't have access to e-mail right now, but I can --

5  Q    I just confirmed that you did receive it, so --

6  A    Okay.

7  Q    Do you recall receiving -- well, we can go through your

8  documentation.  But court officials handed you hard copies of

9  both sets of interrogatories when you were here on the 25th.

10 You don't remember that?

11 A    No.  I only -- like I said, everything I was given, I

12 walked out with in that binder; I brought it with me.  And it

13 has two papers.  It has the interrogatories as well as the --

14 I believe it's the request for documents.

15 Q    Okay.  Turn to tab 4, will you, please, in your binder.

16 And this is Judge Moon's December 10th order.  And I'll direct

17 your attention to the second page, please.

18     This required you to file on December 13th with the Court

19 a brief or response addressing any and all steps that you've

20 taken to purge yourself of contempt.  "Kline shall address how

21 and when he had satisfied each of the discovery obligations

22 set forth in paragraph 41."  Do you see that?

23 A    Yes.

24 Q    Okay.  And do you see the sentence directly below that,

25 "Kline shall also advise the Court as to the specific steps he

Kline - Examination by Ms. Phillips

1   has taken in his active efforts to secure counsel over the

2   past several weeks."  Did you do that?

3   A    No.  All I had done was provided the -- my response to

4   the -- how and when the discovery obligations were met.

5   Q    Well, let's go to tab -- go to tab 6, please.  We'll look

6   at your response.  Can you identify anywhere in this response

7   where you indicate when you satisfied any of the discovery

8   obligations from paragraph 41?

9   A    No, but I believe it was done on December 6th, as we had

10  said previously, is when I had sent this in, or sent the first

11  set in.  December 6th would be the date that I sent in the

12  information to complete my discovery.

13  Q    I understand that.  But this is a December 10th order

14  from Judge Moon asking to you provide him with information

15  regarding how and when.  And my question to you is:  You did

16  not provide him information with regard to when you came into

17  compliance with some of your discovery obligations, did you?

18  A    No.  Like I said, I thought that December 6th e-mail was

19  doing that.

20  Q    Okay.  And this -- at tab 6, this e-mail that you sent,

21  did you send it to Judge Moon?

22  A    Now, this is -- no, it doesn't look like I did.  But

23  right now I'm using -- I'm, like, trying to get this done.  I

24  got my old phone back and I was trying to use -- I've been

25  trying to use that to complete the discovery and do the

Kline - Examination by Ms. Phillips

1  e-mails and things like that.  But I still don't have my

2  other -- my other two phones that I had given you, so I've

3  been using that phone.  And I meant to put that in there -- I

4  thought I had -- to send that to the Court.  But I had sent it

5  to just one person; I meant to send it to both.  It usually

6  auto fills when I do that, but it didn't auto fill.  I thought

7  it did.

8          MS. PHILLIPS:  Your Honor, I don't think I have

9  anything further.

10          THE COURT:  Okay.  Mr. Kline, in respect to the

11  plaintiffs' request for you to produce documents, you only

12  produced one document; is that correct?

13          THE WITNESS:  Yes, Your Honor.  It's the planning

14  document that we had used.  That was the only document that I

15  created that we used for the event.

16          THE COURT:  All right.  Where did you look for

17  documents, e-mails, and texts?

18          THE WITNESS:  So I went through the e-mail addresses

19  that I have access to, so the Deplorable Truth one, the Eli F.

20  Mosley one.  I went to the Google drive on those accounts to

21  search for any documents that I had, and the only document

22  that I had was that one document that I had released.  That

23  was the only thing.

24          THE COURT:  With all the correspondence that went on

25  with this, you only have one document?

Kline - Examination by Ms. Phillips

1          THE WITNESS:  I mean, we weren't, like, a

2    professional organization or anything like that, Your Honor,

3    and a lot of things were kind of decentralized, I would say.

4    So, essentially, I just provided the, like, barebones general

5    outline, and then each individual group, each individual

6    defendants' group did their own actual in-depth planning.  So

7    they could possibly have their own planning documents.  But

8    mine was kind of "Be here at this time" and kind of the

9    barebones of what was going on, not the intricate details.

10          THE COURT:  You only have just one document?

11          THE WITNESS:  Yes, Your Honor.  Like I said, all we

12   did was make one document kind of explaining to people what to

13   do.

14          THE COURT:  And there was no correspondence back and

15   forth?

16          THE WITNESS:  When you say "correspondence," do you

17   just mean, like, e-mails and things like that?  Because

18   everything was done -- all the communication was done through

19   Discord.  So the only documentation that would be from the

20   Unite the Right rally would be in Discord -- from myself

21   anyway, would be in Discord, and then that document.

22          THE COURT:  Okay.  Anything else?

23          MS. PHILLIPS:  No, Your Honor.

24          THE COURT:  Step down.

25          Let's take a break for a few minutes.  But does the

Kline - Examination by Ms. Phillips

1  plaintiff have any idea what they can get out of this witness,

2  party witness, and what he could, from jail, purge himself for

3  not supplying?

4       MS. PHILLIPS:  I mean, our view is that he can revise

5  the answers to his first set of interrogatories that we've

6  just established are woefully deficient and not fulsome.  He

7  can answer the second set of interrogatories, which he has not

8  done, and which we absolutely sent him, both over e-mail and

9  gave him hard copies in this courtroom.  And that he can do

10 the declaration under oath with regard to his social media

11 credentials.  Because to the extent that you have required him

12 to provide with specificity why he doesn't have those

13 credentials, we would like to have that under oath.

14      THE COURT:  Okay.  I'm going to take a short recess,

15 and if y'all would stay within a few minutes.

16      (Recess taken from 11:45 a.m. until 11:56 a.m.)

17      THE COURT:  I've considered the arguments and

18 evidence presented today, as well as the parties' previous

19 submissions on the issue.

20      I do not find that Kline has met his burden of

21 showing that he has purged himself of contempt as of today's

22 date.  I continue to find by clear and convincing evidence

23 that Kline remains in contempt of court.

24      Kline has not fulfilled all of the affirmative steps

25 this Court set forth in paragraph 41 of the civil contempt

Kline - Examination by Ms. Phillips

1  order.  There this Court ruled that Kline must complete the

2  following steps in order to purge himself of contempt:  First,

3  there is no dispute Kline did not send his discovery responses

4  to the Court when they were completed, as paragraph 41A

5  requires.  That was simple and it was not done.

6           Second, Kline's answers to plaintiffs' discovery

7  requests were deficient as a matter of form and substance.

8  Kline was required to respond to the interrogatories under

9  oath.  Paragraph 41A required Kline to fully and completely

10  respond to them.  He did not respond under oath as required.

11          Third, plaintiffs have identified numerous respects

12  in which Kline's substantive responses were lacking.  In

13  particular, this Court finds deficient his responses regarding

14  the means of communication regarding the events at issue.  He

15  listed only discovery in Twitter, he did not include his

16  e-mail accounts, Facebook, Gab, or YouTube.  These omissions

17  are significant in their own right, and they further show that

18  Kline did not take seriously his obligation to respond.

19          Fourth, paragraph 41b provided that for any accounts

20  where Kline confirms he no longer has access credentials, he

21  was to submit a declaration under oath and under penalty of

22  perjury to that effect, and which states with specificity the

23  reasons why such credentials are unavailable to Kline.  He did

24  not do so.

25          There are other respects in which Kline did not

Kline - Examination by Ms. Phillips

1  complete his obligations this Court provided to purge himself

2  of contempt.  Those will be set forth in a written order to

3  follow.

4          I'm also troubled by the amount of time Kline took to

5  begin the process of purging himself of contempt.  It appears

6  that he waited nearly two weeks after the hearing, where he

7  was found in contempt until December 5, for him to give

8  plaintiffs those deficient discovery responses.  That was ten

9  days after he was found in contempt and three days after the

10 beginning -- he began incurring $200 per day fines.

11         I am also troubled by his failure to respond to

12 plaintiffs' set of discovery requests.  Those don't form the

13 basis for a contempt, but they do show that he has not turned

14 things around and he has not had a change of heart.

15         A written order will issue, but Kline is still in

16 contempt of court.

17         I will order as a means to coerce Kline to complete

18 his discovery obligations that he pay plaintiffs -- pay $600

19 to plaintiff, representing three days of his noncompliance

20 with this Court's order and failure to purge himself of

21 contempt.

22         Kline will pay that amount to plaintiffs and their

23 counsel, and will have a money order to that effect no later

24 than December 30, 2019.

25         This Court will suspend any further incurring of

Kline - Examination by Ms. Phillips

1   fines between today's date and the issuance of a further

2   written order.

3          And, Mr. Kline, what I'm going to order is that you

4   report to the office of the United States marshal here in this

5   courthouse on January -- Monday, January the 6th, at noon.

6   Have with you everything you need to comply with the Court's

7   previous orders.

8          DEFENDANT KLINE:  I understand.

9          THE COURT:  And that doesn't mean, you know, send a

10  lot of e-mails and come down here and say, "Well, I thought I

11  had done it."

12         You are to report to jail and start sending the

13  responses.  And when the Court is satisfied that you have

14  purged yourself of contempt, you will be allowed to get out of

15  jail.

16         DEFENDANT KLINE:  Okay, Your Honor.

17         THE COURT:  And the order will -- an order setting

18  forth this will follow.

19         DEFENDANT KLINE:  Okay.  Your Honor.  I have some

20  questions.  Can I ask some questions?

21         THE COURT:  Yes.

22         DEFENDANT KLINE:  So that's this building here,

23  January 6th?

24         THE COURT:  Yes.

25         DEFENDANT KLINE:  At noon?

Kline - Examination by Ms. Phillips

1          THE COURT:  At noon.

2          DEFENDANT KLINE:  Okay.  And then for the sworn

3   statements and under oath, things where -- the first set of

4   interrogatories, do I do that here?  Or how exactly do I

5   comply with that order?  I'm not sure I quite fully understand

6   what I need to do to make what I am putting in writing under

7   oath, if that makes sense.

8          THE COURT:  Well, you can verify -- as I suggested,

9   you should have cooperated with your lawyers when you had

10  them.  But you can -- once you have completed it, you can ask

11  to see, possibly, the marshal.  The marshal can refer you to

12  the clerk or Judge Hoppe --

13         DEFENDANT KLINE:  Okay.  Thank you, Your Honor.

14         THE COURT:  -- someone in Judge Hoppe's office to do

15  that.

16         DEFENDANT KLINE:  Okay, Your Honor.  And my other

17  question is, I would like to ask the plaintiffs what the

18  current status of my missing phones were.

19         THE COURT:  I'm not -- I'm aware of the problem, but

20  I cannot bring you up-to-date on that.

21         DEFENDANT KLINE:  Okay.

22         THE COURT:  And if the plaintiff should notify the

23  Court earlier that you have done something to come into

24  compliance -- I'll ask them if they do find that he's in

25  compliance before the 6th, let me know.

Kline - Examination by Ms. Phillips

1          That does not -- you are to be here on the 6th, at

2    noon, at the marshal's office.

3          DEFENDANT KLINE:  I understand.

4          THE COURT:  And the only person who can tell you not

5    to come on that date is me.  And it's no such thing as you

6    thought or something -- you thought something else changed

7    what you were supposed to do.

8          DEFENDANT KLINE:  I understand.

9          THE COURT:  Only a written order from this Court,

10   signed by me, will excuse you from being there.

11         DEFENDANT KLINE:  Okay.  I understand.

12         THE COURT:  Okay.  Anything else we can do today?

13         MS. PHILLIPS:  No, Your Honor.  Thank you.

14         THE COURT:  Anything?  Okay.  Thank you all.  Sorry

15   we held you up.

16         Recess.

17         Did you mean this binder to be an exhibit?

18         MS. PHILLIPS:  No.

19      (Court recessed at 12:04 p.m.)

20

21

22

23

24

25

Kline - Examination by Ms. Phillips

1                           CERTIFICATE

2  I, Judy K. Webb, certify that the foregoing is a

3  correct transcript from the record of proceedings in

4  the above-entitled matter.

5

6  /s/  Judy K. Webb            Date: 12/20/2019

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25