UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER, <br><br> Plaintiffs, <br><br> v. <br><br> JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOTT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE, <br><br> Defendants. | Civil Action No. 3:17-cv-00072-NKM |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR EVIDENTIARY SANCTIONS AGAINST
DEFENDANT ELLIOTT KLINE A/K/A ELI MOSLEY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................. 2

    I.    Plaintiffs Are Entitled to Evidentiary Sanctions against Kline ............................... 2

    II.   Cantwell's Objections to Plaintiffs' Requested Evidentiary Sanctions against Kline Should Be Rejected ........................................................................... 4

          A.    The Requested Evidentiary Sanctions Do Not Hinder Cantwell's Ability to Defend Himself ........................................................................... 5

          B.    A Limiting Instruction Is Sufficient to Cure Any Potential Spillover Effect ........................................................................................ 7

          C.    A Default Judgment Alone Does Not Remedy the Full Extent of the Prejudice Suffered By Plaintiffs and Provides a Windfall to Defendants ................................................................................................ 9

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Black v. Sheraton Corp.*,
  371 F. Supp. 97 (D.D.C. 1974) ............................................................................................. 7

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ............................................................................................................. 8

*Butler v. DirectSat USA, LLC*,
  No. 10-CV-2747, 2013 WL 6629240 (D. Md. Dec. 16, 2013) ............................................. 2

*Cytec Carbon Fibers LLC v. Hopkins*,
  No. 2:11-cv-0217, 2012 WL 6044778 (D.S.C. Oct. 22, 2012) ............................................. 6

*Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*,
  323 F.R.D. 167 (S.D.N.Y. 2017) .......................................................................................... 6

*Flagg v. City of Detroit*,
  No. 05-cv-74253, 2011 WL 4634245 (E.D. Mich. Oct. 5, 2011),
  *aff'd*, 715 F.3d 165 (6th Cir. 2013) ................................................................................... 5, 7

*Lutwak v. United States*,
  344 U.S. 604 (1953) ............................................................................................................. 8

*Nucor Corp. v. Bell*,
  251 F.R.D. 191 (D.S.C. 2008) .............................................................................................. 2

*Ratesi v. Sun State Trees & Prop. Maint., Inc.*,
  No. 6:05-cv-1825, 2007 WL 2566037 (M.D. Fla. Aug. 31, 2007) ....................................... 6

*United States v. Aramony*,
  166 F.3d 655 (4th Cir. 1999) ................................................................................................ 2

*United States v. Osuji*,
  413 F. App'x 603 (4th Cir. 2011) ......................................................................................... 7

**Rules**

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................................... *passim*

Fed. R. Evid. 801(d)(2)(E) .................................................................................................... 8

## PRELIMINARY STATEMENT

Since December 6, 2019, when Plaintiffs filed their renewed request for evidentiary sanctions under Rule 37 of the Federal Rules of Civil Procedure against Defendant Elliott Kline, ECF No. 601 ("Sanctions Motion" or "Sanctions Mot."), the Court has twice found that Kline remains in civil contempt and subjected him to a number of escalating sanctions, including $5,800 in fines payable to Plaintiffs and ultimately incarceration for his continued refusal to provide Plaintiffs the evidence to which they are entitled. Furthermore, as Plaintiffs have made the Court aware, Plaintiffs discovered that despite these sanctions, Kline has continued to deceitfully withhold evidence from Plaintiffs and lie to the Court about it. *See* Pls.' Resp., Jan. 8, 2020, ECF No. 631 (identifying evidence showing that previously undisclosed email account CvilleReports@gmail.com is registered to Kline). Kline's conduct provides further support for Plaintiffs' motion. And, in keeping with his two-year practice of refusing to meaningfully participate in this litigation, Kline has filed no opposition to the Sanctions Motion.

In contrast to Kline's silence, Defendant Christopher Cantwell filed a rambling 103-page submission ostensibly responding to the Sanctions Motion. Obj. to Pls.' Mot. for Evidentiary Sanctions, Jan. 21, 2020, ECF No. 637 ("Cantwell Opp."). In addition to conceding that he does not "mak[e] a legal argument," Cantwell Opp. 1, Cantwell's submission predominantly provides a lengthy and meandering recitation of his version of the "facts" and cites Adolf Hitler in support of his wild accusations that Plaintiffs have somehow engaged in a conspiracy of their own by instituting this litigation, *id.* at 35–37.[1] Cantwell's opposition spends scant space actually

---

[1] Cantwell's submission, which focuses almost exclusively on his views of the veracity of the allegations made in Plaintiffs' Complaint, "moves that this suit be dismissed with prejudice, or at least that he be dismissed from it." Cantwell Opp. 2. Putting aside that Cantwell's "motion" is embedded within his opposition to the Sanctions Motion, any motion to dismiss filed by Cantwell should be denied under the law-of-the-case doctrine and as untimely. "[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes

opposing the Sanctions Motion. Nonetheless, the few arguments he has raised are no bar to the evidentiary sanctions requested by Plaintiffs.

## ARGUMENT

### I.  Plaintiffs Are Entitled to Evidentiary Sanctions against Kline

Over the course of the past two years, Kline has ignored his discovery obligations, withheld from Plaintiffs vital evidence, seemingly lied under oath about that evidence on multiple occasions, failed to preserve his communications with other Defendants, and failed to preserve relevant devices. Kline's actions have ensured that Plaintiffs will be left with an evidentiary gap from one of the most critical members of the conspiracy. There can be no doubt that severe evidentiary sanctions are warranted under these circumstances. *See Butler v. DirectSat USA, LLC*, No. 10-CV-2747, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify" even the "harshest of sanctions"); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 194 (D.S.C. 2008) ("harsher sanctions" are permitted where "the spoliation was so prejudicial that it prevents the non-spoliating party from maintaining his case").

In their opening brief, Plaintiffs explained that Kline's utter failure to comply with discovery obligations, more than two years after this case was filed, alone warrants evidentiary sanctions, especially an adverse inference instruction. Sanctions Mot. 6, 21–22. But Plaintiffs

---

all other codefendants from relitigating the legal issue." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999). Here, Cantwell's first motion to dismiss, filed by his attorneys when he was represented, was denied by the Court. *See* Mem. Op., July 9, 2018, ECF No. 335. Although a court has the power to revisit prior decisions of its own, as a rule courts should be loath to do so in the absence of extraordinary circumstances, and Cantwell has not attempted to show that any such exception applies. In addition, the deadline to file a motion to dismiss was January 26, 2018—two years ago. Order, Jan. 18, 2018, ECF No. 187. Plaintiffs do not respond further to Cantwell's off-topic arguments but reserve the right to do so if Cantwell makes a proper motion and at the appropriate time under the Court's scheduling order.

2

also noted that the record and evidence in the case have made clear that, even if Kline were to suddenly begin cooperating in full, Plaintiffs are extremely unlikely ever to obtain anywhere close to full discovery of Kline's critical documents and communications. *Id.* at 6. Plaintiffs extensively detailed Kline's failure to preserve evidence from one of his primary email accounts, his failure to preserve his personal computer, his failure to preserve his personal Discord messages, his failure to preserve all of the content from his social media accounts as the result of his use of burner email addresses, and his potential use of a telephone number that Kline continues to disclaim. *Id.* at 6–12. After laying out the facts of Kline's misconduct, Plaintiffs expressed their concern that Kline would continue to withhold documents and devices crucial to this litigation. *Id.* at 18. That fear has proven to be prescient.

On January 6, 2020, Plaintiffs notified the Court that they had discovered the existence of a fifth email address used by Kline—CvilleReports@gmail.com—that Kline had not disclosed and that Plaintiffs only recently discovered. Pls.' Supp. Br., Jan. 6, 2020, ECF No. 615. Kline used this email address to communicate regarding Unite the Right, including to actively solicit evidence responsive to Plaintiffs' discovery requests. *Id.* Despite Kline's protestations under oath during the January 6, 2020, hearing held by the Court and in his sworn written submission dated January 7, 2020, ECF No. 625, Plaintiffs produced to the Court compelling evidence that Kline was lying under oath when he strenuously denied knowledge of the existence of this highly relevant email account. S*ee* Pls.' Resp., ECF No. 631. Plaintiffs discovered that the email address was indeed Kline's account: it was registered to his admitted alias, it was associated with his telephone number, and it was associated with one of his primary email accounts. *Id.* at 2–3. Since January 8, 2020, when Plaintiffs disclosed this information to the Court, Kline has again gone silent,

3

refusing to provide his credentials to this email account or respond in any way to Plaintiffs' evidence.

Rule 37 expressly provides for evidentiary sanctions that will remedy the substantial prejudice Plaintiffs have suffered because of Kline's actions. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). As Plaintiffs noted in their opening brief, Plaintiffs have readily met the Rule 37 factors for imposing evidentiary sanctions, including an adverse inference instruction. The Court has already found that Kline's actions amount to bad faith and that Plaintiffs have suffered harm. *See* Order Finding Elliott Kline in Civil Contempt 9–12, Nov. 27, 2019, ECF No. 599. Plaintiffs have explained numerous times that evidentiary sanctions, particularly an adverse inference instruction, are warranted here to deter other Defendants from following in Kline's footsteps. Sanctions Mot. 19. Finally, at this point, it could not be clearer that no less drastic sanctions would be effective. Indeed, the Court has already subjected Kline to a number of escalating sanctions, including $5,800 in fines and over 48 hours spent incarcerated in a local jail. These sanctions have had zero effect on Kline's willingness to engage in this litigation. Since being released from jail, Kline has failed to provide credentials to the CvilleReports@gmail.com account to which Plaintiffs irrefutably connected him, refused to answer email communications from the third-party discovery vendor, and failed to file a responsive submission to two separate filings by Plaintiffs. Absolutely nothing in the history of this case provides any assurance that a less severe sanction will fill the evidentiary gap left by Kline's outrageous conduct.

**II. Cantwell's Objections to Plaintiffs' Requested Evidentiary Sanctions against Kline Should Be Rejected**

Cantwell's opposition seems to demonstrate a fundamental misunderstanding of the requests that Plaintiffs made in the Sanctions Motion. To be clear, Plaintiffs do not believe that

4

Cantwell (or any other Defendant) should be punished for Kline's non-compliance. And the sanctions sought against Kline do not punish Cantwell or hamper his ability to defend himself.

> **A.     The Requested Evidentiary Sanctions Do Not Hinder Cantwell's Ability to Defend Himself**

To the extent that Cantwell is concerned that the sanctions Plaintiffs have sought against Kline would apply to him, he is wrong. The requested sanctions are each limited by their terms to apply exclusively to Kline. And Plaintiffs have not sought any Court-imposed fact or inference that suggests that Cantwell has any involvement with Kline's behavior.

As the Court has ruled, to hold any Defendant liable for conspiracy, Plaintiffs must prove that "***each*** Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events." Mem. Op. 21, Jul. 9, 2018, ECF No. 335 (emphasis added). To the extent it is established—either through the presentation of evidence or by Court-imposed sanction—that Kline agreed to commit racially motivated violence with one or more co-conspirators and withheld evidence that he did so, those particular facts have no impact on whether Cantwell—or any other Defendant—entered into, or had any involvement with, any such agreement. Nothing about the requested sanctions hinders Cantwell's ability to elicit facts or make arguments that he had nothing to do with any such agreement or any other behavior that resulted in the violence that occurred in Charlottesville. The sanctions Plaintiffs seek against Kline do not implicate Cantwell or punish him in any way.

To the extent that Cantwell believes that the requested facts and inferences would impact him inferentially through some sort of spillover effect from the requested sanctions, his belief provides no legal basis to refrain from imposing sanctions otherwise duly earned by Kline. The court considered, and rejected, an identical argument in *Flagg v. City of Detroit*, No. 05-cv-74253, 2011 WL 4634245 (E.D. Mich. Oct. 5, 2011), *aff'd*, 715 F.3d 165 (6th Cir. 2013). In *Flagg*, the

5

court imposed an adverse inference on one of the defendants in a multi-defendant case for destroying certain documents in discovery. Another co-defendant, who did not participate in the document destruction that led to the imposition of sanctions, objected, claiming that "any adverse inference against the [other co-defendant] will unfairly prejudice him as a codefendant at a joint trial." *Id.* at *1. Specifically, the non-spoliating co-defendant argued that "it would be unfairly prejudicial if the trier of fact were permitted to draw inferences against him based on the absence of e-mails from the relevant period." *Id.* at *7. The Court disagreed:

> ***Surely, the Court is not powerless to sanction a defendant for its destruction of evidence, just because this sanction might have a prejudicial "spillover" effect upon a co-defendant***. There are all manner of mechanisms . . . that are available to alleviate this possible prejudice.

*Id.* (emphasis added).

If Cantwell were correct, courts could never impose evidentiary sanctions against a single defendant in a multi-defendant case. To the contrary, these sanctions are specifically contemplated by Rule 37 and imposed in precisely these scenarios. *See, e.g.*, *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017) (deeming facts established as to subset of defendants as discovery sanction); *Cytec Carbon Fibers LLC v. Hopkins*, No. 2:11-cv-0217, 2012 WL 6044778, at *1–4 (D.S.C. Oct. 22, 2012) (imposing sanctions against subset of defendants in civil RICO conspiracy case for spoliating evidence), *report and recommendation adopted*, No. 2:11-cv-0217, 2012 WL 6050595 (D.S.C. Dec. 5, 2012); *Ratesi v. Sun State Trees & Prop. Maint., Inc.*, No. 6:05-cv-1825, 2007 WL 2566037, at *3 (M.D. Fla. Aug. 31, 2007) (imposing adverse inference instruction as sanction for discovery violation against single non-compliant defendant in multi-defendant case); *Black v. Sheraton Corp.*, 371 F. Supp. 97, 102

(D.D.C. 1974) (in action against government and private parties, deeming facts established as sanction against government for improperly raising claim of executive privilege).

### B. A Limiting Instruction Is Sufficient to Cure Any Potential Spillover Effect

Notwithstanding that Plaintiffs' requested sanctions do not implicate Cantwell, to the extent that any lingering concern remains as to potential spillover effects as to other Defendants, the appropriate mechanism to cure any such effect is to issue a limiting instruction. Courts are not required to issue limiting instructions upon giving adverse inferences, but may find limiting instructions to be a satisfactory cure where potential spillover prejudice from damaging evidence admitted against co-conspirators may exist. *See, e.g., United States v. Osuji*, 413 F. App'x 603 (4th Cir. 2011); *Flagg*, 2011 WL 4634245, at *7 (identifying limiting instructions as one of several alternatives for alleviating possible prejudice from adverse inferences). In *Osuji*, a criminal conspiracy case, the government called an unindicted co-conspirator to the witness stand to assert her Fifth Amendment privilege in front of the jury, imposing arguably far more damaging inferences on the defendant co-conspirators in that case than Plaintiffs request here. The defendants objected, arguing "that the inferences that the jury could have drawn from [the unindicted co-conspirator's] invocation of her Fifth Amendment privilege added critical weight to the prosecution's case." 413 F. App'x at 610. The Fourth Circuit rejected that argument, noting the district court "instructed the jury not to draw any inferences from [the unindicted co-conspirator's] invocation of her Fifth Amendment privilege. We presume that the jury followed that instruction and hold that the instruction sufficiently cured any potential error in allowing [the unindicted co-conspirator] to invoke her privilege before the jury." *Id.* (internal citation omitted).

Similarly, here, to the extent there is any concern that the requested sanctions might impose any prejudicial inferences on any other Defendant, a limiting instruction sufficiently cures any such prejudice. Applying the requested sanctions with an appropriate limiting instruction is the

best way to remedy the substantial prejudice Plaintiffs have suffered from Kline's discovery misconduct, without impeding the other Defendants' abilities to defend themselves.

Cantwell has no more basis to object to these facts coming in through Court-imposed sanctions than he would if they were introduced at trial through Kline himself. Evidence of one co-conspirator's acts or declarations may be admissible in a trial with multiple defendant co-conspirators, even if such acts or declarations were made in the absence of the other co-conspirators, as proof of a single individual's participation in the conspiracy. *See Lutwak v. United States*, 344 U.S. 604, 618 (1953). Indeed, one co-conspirator's out-of-court declaration may be admissible as direct evidence against his other co-conspirators, if his statements were made "during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (citation and internal quotation marks omitted); *see* Fed. R. Evid. 801(d)(2)(E). Evidence that Kline participated in a racially motivated conspiracy, for example, is not something that Cantwell could keep from the jury simply because he believes such facts would be damaging to his defense.

While it may be preferable that a jury hear that evidence through Kline rather than through Court-imposed adverse inferences and other sanctions, Kline's willful disobedience has deprived the parties of that possibility. Indeed, Rule 37 expressly allows a Court to deem certain facts established as a sanction, so long as those facts are otherwise admissible and relevant, which the requested sanctions are in this case. Cantwell makes no claim that such facts are irrelevant or inadmissible on any other grounds. The requested sanctions simply ensure that Plaintiffs are not prejudiced by Kline's egregious misconduct, and the incidental impact that may have on other Defendants can be addressed, if necessary, through limiting instructions.

### C.  A Default Judgment Alone Does Not Remedy the Full Extent of the Prejudice Suffered By Plaintiffs and Provides a Windfall to Defendants

Cantwell suggests that "it may be a more reasonable measure to enter a verdict of Default against Kline." Cantwell Opp. 2.  However, a default judgment by itself is insufficient to remedy the harm caused by Kline's failure to preserve his documents and his refusal to participate in discovery in good faith, and provides a windfall to the other Defendants, because it effectively allows Kline to walk away without giving Plaintiffs his evidence.

As discussed in the Sanctions Motion, Kline played a central role in this conspiracy. Sanctions Mot. 2–5.  Kline has withheld evidence that will be more difficult to place before the jury if he is simply defaulted from the case without a mechanism for Plaintiffs to introduce any of his evidence.  In that sense, a default would amount to a windfall for the rest of the Defendants and would seriously prejudice Plaintiffs.  Kline testified that he communicated with Defendant Cantwell during the Unite the Right event, Dep. of Elliott Kline ("Kline Dep.") at 85–87, 89, Aug. 7, 2019, ECF No. 566-3, and Defendant Cantwell has admitted that "[p]reparatory to Charlottesville, [he] spoke to . . . Eli Moseley [*sic*] aka Elliott Kline," Disc. Resp. of Def. Cantwell at 2, ECF No. 475-5.  Kline has admitted to communicating regularly with Defendant Kessler during the planning stages of the Unite the Right event.  Kline Dep. 76–77, Aug. 7, 2019, ECF No. 601-1.  Kline also testified to having planning calls and other communications with Defendant Heimbach, Kline Dep. 88, ECF No. 566-3; Kline Dep. 76–77, ECF No. 601-1, with whom Defendants Schoep, National Socialist Movement ("NSM"), and Traditionalist Worker Party ("TWP") also communicated regarding Unite the Right.  Disc. Resps. for Defs. Schoep, NSM, and TWP. ECF Nos. 475-4, 475-7, 475-8.  In fact, most of the Defendants, including Defendants Spencer, Ray, Kessler, and Damigo, admit to communicating with Kline concerning the events in Charlottesville.  Disc. Resp. for Defs. Spencer, Ray, Kessler, Cantwell, and Damigo, ECF Nos.

9

475-1, 475-2, 475-3, 475-5, 475-6. Defendant Identity Evropa admits that Kline managed Identity Evropa's presence and communications in Charlottesville. Def. Identity Evropa's Resps. to [Pls.'] First Set of Interrogs. and Reqs. for Produc. of Docs. 2, ECF No. 475-9 ("Eli Mosley aka Elliott Kline handled IE's . . . presence in Charlottesville" and "Mr. Mosley's communication devices" were used to communicate about the events). If the jury is shielded from evidence of Kline's participation, Plaintiffs will be hindered in their ability to illuminate the full scope of the conspiracy. Plaintiffs would essentially be forced to prove a conspiracy without being able to present evidence of what one of the two primary ringleaders of the conspiracy did and said. Rule 37 allows for evidentiary sanctions precisely so that defendants like Kline cannot whitewash a trial from evidence of their participation.

## CONCLUSION

Plaintiffs respectfully request that the Court grant the Sanctions Motion.

Dated: January 28, 2020

Respectfully submitted,

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131

rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

J. Benjamin Rottenborn (VSB 84796)
Erin B. Ashwell (VSB 79538)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone:  (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
eashwell@woodsrogers.com

*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on January 28, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

I further hereby certify that on January 28, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

/s/ *Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*