# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUNIZ, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, JOHN DOE, and THOMAS
BAKER,

                                  Plaintiffs,

v.

 JASON KESSLER, et al.,

                                  Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

## PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS
## AGAINST DEFENDANT JAMES FIELDS

**INTRODUCTION**

On the last day of party document discovery, Defendant James Fields admitted he destroyed correspondence between himself and Defendant Vanguard America without producing it.  That plainly and admittedly spoliated evidence was critical to this case because, among other things, it would have directly refuted both Fields's and Vanguard America's claims that they had never communicated, nor been associated with each other – a key element of the conspiracy.

Equally troubling is that, after nearly two years of discovery, Fields has produced <u>zero</u> documents in this case.  He refuses to comply with the Court's discovery orders directing him to produce documents, identify and give access to his social media accounts, and instruct social media companies to release his messages to Plaintiffs.  And, just weeks ago, Fields revealed for the first time that he will not comply with the Court's orders directing all "Defendants" to produce certain discovery, because he claims the Court's orders do not apply to him.

Fields also refuses to comply with Plaintiffs' written discovery requests.  He has failed to answer discovery, has given insufficient answers, and has asserted baseless and nonsensical objections and responses – claiming, for example, that he need not produce documents that are in his attorneys' possession, need not produce documents created by anyone other than himself, and that documents regarding his racial violence and hatred are irrelevant unless they specifically mention the Charlottesville Unite the Right Rally on August 11 and 12, 2017 (the "Rally").

By any measure, Plaintiffs have been extremely patient with Fields.  Because he is incarcerated, they have given him substantial leeway on the timing of his discovery responses and compliance with Court orders. Plaintiffs have indulged his counsel's representations that discovery delays have resulted from the logistical difficulty of communicating from prison, and have tolerated Fields's substantial procrastination in providing any discovery.  In contrast, Fields

1

has used this courtesy as an opportunity to spoliate evidence and stonewall discovery.  His

complete refusal to produce *any* documents or comply with *any* discovery orders illustrates he

has no intention of complying with his legal obligations.  Accordingly, the Court should sanction

Fields and award Plaintiffs the relief requested herein, including:

(1) deem authentic for purposes of Federal Rule of Evidence 901 any documents that Plaintiffs have a good-faith basis to believe Fields created, including all documents that appear to be from his social media accounts; and

(2) instruct the jury that Fields intentionally withheld documents and information and destroyed correspondence, including correspondence with Vanguard America, while he had a legal duty to preserve it, and that the jury may draw adverse inferences from that fact, including that Fields chose to withhold and destroy such documents and information because they contained evidence that Fields conspired to plan racially-motivated violence at the Rally.

While this Motion is filed as both a motion to compel and a motion for sanctions, it is

clear Fields has not and will not produce discovery, and thus, the Court should impose sanctions.

If the Court determines that Fields should be permitted another opportunity to produce, however,

Plaintiffs ask that it be on a very short deadline, that sanctions be imposed when he fails to meet

the deadline, and that Fields be sanctioned for the spoliation to which he has already admitted.

## BACKGROUND

**A.    Fields Refuses to Comply with Plaintiffs' First Set of Discovery.**

On January 25, 2018, Plaintiffs served Fields with a first set of document requests and

interrogatories.  *Exhibits A, B*.  On April 16, 2018, Fields served his responses, in which he

largely objected, did not respond, and/or otherwise failed to produce responsive information.

*Exhibits C, D*.  Fields refused to produce information based on objections that have no merit.

**1.    Fields Refuses to Produce Information Relating to Social Media**.

Fields conceded he has social media accounts that contain relevant information.  He

identified a Twitter account and a Facebook account he used, and acknowledged he "liked and

retweeted and/or reposted the tweets and/or posts of others regarding the Rally." *Exhibit C*, Nos. 3-6; *Exhibit D*, Nos. 1, 3; *Exhibit E*, No. 1.  Fields also admitted he "follow[ed]" other co-defendants on social media (including YouTube and Twitter), recalls "reporting, retweeting, and/or liking items from their accounts," "'tagging' David Duke" and "following Augustus Sol Invictus and Peinovich" on Twitter.  *Exhibit C*, Nos. 5-6.

Despite this, Fields has not produced any documents from social media.  He stated he "does not have the capability to access his social media accounts to provide complete responsive information." *Id.*, Nos. 1-3, 5-6.  During the meet and confer, however, Fields's counsel explained he never asked Fields for his login information.  It was not until February 5, 2020 – the deadline for Fields to produce all discovery material – that counsel asked Fields for his passwords.  *Exhibit F*.  Now, Fields says he cannot remember them, perhaps because he waited two years after Plaintiffs requested this information to try and produce it.  *Id*.

Fields also admitted he has *undisclosed* social media accounts, including a Discord account.  *Exhibit C*, Nos. 1, 5.  But, he refuses to identify the accounts, disclose his user "handle" (*i.e.*, the name he used on the account), or produce documents from them.  *E.g.*, *id.*, No. 5 ("Fields specifically objects to providing information regarding any other Twitter accounts or social media accounts that he maintained or used prior to the summer of 2017 and that were never used to communicate about the Rally.").  Importantly, Fields's undisclosed accounts contain highly relevant and critical information.  Among the social media accounts he failed to disclose (and still has not disclosed) is his Instagram account.  *Id.*, No. 5 (identifying only Twitter and Facebook).  Plaintiffs discovered Fields has an Instagram account because a document used at Fields's criminal trial shows Fields posted a message on Instagram captioned "When I see protesters blocking," with an image of a vehicle striking a crowd of protesters.

*Exhibit G*.  A few months after posting that message, Fields did precisely what he posted – he ran his car into a crowd of protesters, killing one person and injuring scores of others.

> ### 2.      Fields Refuses to Produce Documents He did not "Originally" Create.

In response to several discovery requests, Fields stated he "did not post any original information regarding the rally."  *Exhibit C*, Nos. 3-4.  The requests, however, are not limited to seeking only "original information" Fields created.  Rather, they encompass any responsive information whether "original" or otherwise.  Indeed, Fields admits such information exists.  He concedes he posted information that originated from other people ("he recalls liking or retweeting posts of others") and admits it "related to the August 12 rally" – he just contends he does not need to produce it.  *Id.*, Nos. 5-6.

> ### 3.      Fields Refuses to Produce Documents From Public Sources.

Fields informed Plaintiffs he is "in possession of publicly available documents" that are responsive, including unidentified "newspaper and website articles or blog posts."  *Id.*, No. 1.  Fields, however, has not produced or identified them.

> ### 4.      Fields Refuses to Produce Documents Unless they Specifically Concern the Rally.

Plaintiffs requested Fields produce documents concerning violence, intimidation, or harassment of people on the basis of race, religion, or ethnicity.  *Exhibit A,* No. 4.  Fields answered with respect *only* to documents specifically concerning the Rally.  *Exhibit C*, No. 4.  In other words, if a document shows Fields advocating racial, ethnic, or religiously-motivated violence, but does not explicitly mention the Rally (like Fields's Instagram post about hitting protesters with a car), Fields is withholding it.

5.      **Fields Refuses to Produce Documents Related to his Criminal Case.**

Plaintiffs asked Fields to produce non-privileged documents about any lawsuit or arrest related to alleged racial or ethnically motivated conduct by him or anyone else. *Exhibit A*, No. 7. Fields made the amazing assertion that – despite the fact that he was convicted of murder for such conduct – he does not have any responsive documents. *Exhibit C*, No. 7. That, put simply, cannot be the case. Indeed, Fields later contradicted himself, as he admitted his criminal attorneys have such documents. *Exhibit H*. Yet, Fields refuses to produce them, claiming he does not "have access to documents in the possession of criminal counsel." *Id*. Fields claims "non-disclosure agreements" prevent his criminal lawyers from producing documents in their possession. *Id*. According to Fields's counsel, "[i]t remains our position that neither Mr. Fields nor I have custody or control of those documents." *Id*.

B.      **Fields Failed to Respond to Plaintiffs' Second Set of Interrogatories.**

On October 29, 2019, Plaintiffs served Fields with a second set of interrogatories. *Exhibit I*. His answers were due on November 28, 2019. On February 3, 2020 – more than two months after the deadline – Fields's counsel served interrogatory "answers" that were not signed by Fields, but were answered only by his counsel, who did not discuss the interrogatories with Fields. *See infra*, pp. 23-24.

C.      **Fields Refused to Comply with the Court's Discovery Orders.**

Because of Fields's and the other Defendants' discovery deficiencies, Plaintiffs obtained multiple Court orders directing Defendants, including Fields, to provide discovery. On January 23, 2020, Fields's counsel argued for the first time in this case that the Court's discovery orders do "not apply to Fields." *Exhibit H*. As detailed below, these orders directed all defendants – including Fields – to provide discovery, and Fields has not complied with any of them.

1.      **The ESI Order**.

On November 19, 2018, the Court entered an order ("ESI Order") requiring "Defendants"

to:  (a) provide Plaintiffs with a certification identifying all electronic devices and social media

accounts that contain potentially relevant documents, (b) make those electronic devices and

social media accounts available to a discovery vendor to collect, (c) disclose to plaintiffs any

search terms or date ranges used, and (d) produce to plaintiffs all non-privileged responsive

documents from those electronic devices and social media accounts.  ECF No. 383, pp. 7-9.

The ESI Order included several deadlines for Defendants to complete these tasks, ranging

from 14 to 28 days.  *Id*.  While the Court ruled that those deadlines did not apply to Fields "[d]ue

to his current incarceration," it ordered Fields and Plaintiffs to "enter into a separate stipulation

and proposed order as to the timing to be applied to Defendant Fields."  *Id.*, p. 7 n.2.  Fields has

never submitted such a proposed order or complied with any of these obligations, despite that

party document discovery has now closed.

2.      **The Social Media Order.**

On October 28, 2019, the Court entered an order (the "Social Media Order") requiring

"each Defendant" to (a) contact the ESI vendor "to determine what specific information, if any,

the vendor needs to access that Defendant's identified social media accounts and devices"; (b)

"give the Vendor the last known credentials used to access the identified social media accounts,

regardless of whether the Defendant currently has access to the platform, or whether an account

is active, inactive, or inaccessible"; and (c) "provide information to access any social media

account" and "consent to access stored electronic communications."  ECF No. 582.

The Court ruled "[e]ach Defendant is responsible for providing complete and accurate

credentials (or consent) to access any social media accounts within the Defendant's control that

may contain discoverable information." *Id*. The Court also noted that "all represented Defendants" (*i.e*., including Fields) appeared by telephone to discuss the Social Media Order. *Id*. Fields has not, however, taken any of the steps the Social Media Order requires.

### 3.    The Scheduling Order.

On November 27, 2019, the Court ordered that "[e]ach Defendant" must produce all discovery material by February 5, 2020. ECF No. 597. Fields failed to produce all discovery responses (and produced no documents) by that deadline.

In sum, Fields has not produced a single document to Plaintiffs, despite years of discovery, multiple sets of discovery requests, and multiple orders of the Court.

### D.    Fields Falsely Claimed He Cannot Communicate from Prison.

In November 2019, Plaintiffs reached out to Fields to try to resolve these wholesale discovery deficiencies. On December 10, 2019, Fields's counsel represented to Plaintiffs that he is unable to provide discovery because:

> I remain not able to communicate with my client. He has been transferred from state custody in Virginia to Federal Custody. I am told that he is in a federal penitentiary in West Virginia (I believe Hazelton FCI), however he is en route to his final destination at the Max Facility near Denver, Colorado.

*Exhibit J*. Fields's counsel concluded that "I may need to ask the Court to enter an Order or otherwise facilitate my ability to communicate with my client." *Id.* In the months since, however, he never did so.

On January 23, 2020, Fields's counsel again represented "I remain unable to communicate with my client" despite "repeated attempts to contact him." *Exhibit H*.

On February 3, 2020, Fields's counsel again told Plaintiffs "I remain unable to contact my client at this time." *Exhibit K*.

Fields is incarcerated at USP Hazelton, a federal prison in Bruceton Mills, West Virginia. *Exhibit L.* The prison is an approximately three and a half-hour drive from the Court. USP Hazelton allows inmates to have visitors, including inmates in holdover status (*i.e.*, inmates awaiting transfer). *Exhibit M*, ¶¶ 5, 7. And, inmates awaiting transfer are required to have mail privileges "similar to those of other inmates insofar as practical," which generally means "full correspondence privileges." 28 C.F.R. § 540.16 (2020).

USP Hazelton specifically allows attorneys to visit their clients. *Exhibit M*, ¶ 11. The prison "may not deny correspondence or visiting rights with attorneys generally," and may not limit or deny an inmate's visits or correspondence with his attorney unless the attorney or inmate threatened the security, good order, or discipline of the prison. 28 C.F.R. § 543.14 (2020). And, even then, the prison must give written notice to the attorney. *E.g.*, *id.* § 540.19(c).

At 11:40 a.m. on February 4, 2020 – one day before Fields' deadline to produce all discovery materials – Plaintiffs made one last-ditch effort to resolve the above deficiencies through a meet and confer. Plaintiffs' counsel made clear they were planning to file this Motion and asked Fields's counsel whether he had ever attempted to visit or correspond with Fields in federal prison. Fields's counsel conceded he had not, despite his prior representations that he had "repeatedly" attempted and was "unable" to communicate with Fields. Less than two hours later, at 1:27 p.m., Fields's counsel contacted Plaintiffs' counsel to say that Fields's counsel was able to schedule a telephone call with Fields to take place the following day, February 5.

### E.    Fields Admitted Destroying Critical Evidence.

After Fields's counsel spoke with Fields on February 5, he revealed that Fields had received correspondence, including from Vanguard America (the "Vanguard Correspondence"), but Fields destroyed it while in jail:

> Mr. Fields did receive letters during incarceration that concerned the August 12, 2017, Rally.  To the best of his recollection, the only correspondence he received from any co-Defendants were Christmas cards from Vanguard America.  He has not kept any of those cards.

*Exhibit F*.  He also admitted Fields destroyed the letters relating to the Rally.  *Id*.

The evidence Fields admits he destroyed was critical to the case because, at a minimum, it would have helped establish the connection between Fields and his co-conspirators.  During the Rally, Fields marched with Vanguard America, alongside its acting leader, Thomas Rousseau.  *Exhibit N*; *Exhibit O*, pp. 236-37.  Fields and the others marching for Vanguard America were all wearing the same uniform (a white polo shirt and khaki pants) and carried black shields bearing the Vanguard America logo.  *Exhibit O*, p. 219.  Despite this, Rousseau claimed Fields was neither a member of, nor affiliated with, Vanguard America, and that Rousseau never communicated with him.  *E.g.*, *id.*, p. 139 ("I have never received any information whatsoever which suggest that he was affiliated with the organization in any way."), p. 254 ("I have no recollection of saying a single word to Fields in my 20 years of life.").  Similarly, Dillon Hopper – the current leader of Vanguard America – claimed he has never communicated with Fields.  *Exhibit P*, p. 75.  And Fields claims he never communicated with Vanguard America.  *E.g.*, *Exhibit D*, No. 3.  The cards from Vanguard America alone belie those sworn statements.

### F.    Plaintiffs Have Complied with Fields's Discovery Requests.

In contrast to Fields's refusal to provide virtually any answers or documents in response to Plaintiffs' discovery requests, he expects Plaintiffs to comply fully with his discovery requests – and they have done so.  To date, Plaintiffs have produced more than 80,000 pages of document to Fields and answered dozens of interrogatories he served on them.

**ARGUMENT**

**I.    FIELDS ENGAGED IN SEVERE AND SANCTIONABLE MISCONDUCT.**

**A.    The Court Should Sanction Fields for Spoliating Evidence.**

The Court has the inherent right to impose sanctions for spoliation.  *Silvestri v. Gen.*

*Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The right to impose sanctions for spoliation

arises from a court's inherent power to control the judicial process."); *Suntrust Mortg., Inc. v.*

*AIG United Guar. Corp.*, 2011 WL 1225989, at *14 (E.D. Va. 2011) (explaining that "spoliation

of evidence is an abuse of the judicial process that is sanctionable under the inherent power" of

the court).[1]  "The policy underlying this inherent power of the courts is the need to preserve the

integrity of the judicial process in order to retain confidence that the process works to uncover

the truth."  *Silvestri*, 271 F.3d at 590.

 "Spoliation refers to the destruction or material alteration of evidence or to the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*Id.*  Spoliation exists when a party (a) destroyed or altered evidence, and (b) had a duty to

preserve that evidence.  *E.I. du Pont de Menours & Co. v. Kolon Indust., Inc.*, 803 F. Supp. 2d

469, 496 (E.D. Va. 2011).

There can be no dispute the first element is satisfied because Fields admitted he destroyed

the Vanguard Correspondence and other correspondence about the Rally.  *Supra*, pp. 8-9.

As to the second element, Fields unquestionably had a duty to preserve the documents he

destroyed.  A party must preserve evidence "it knows, or reasonably should know, is relevant in

---

[1] Spoliation sanctions under Rule 37 apply to the destruction of "electronically stored
information" ("ESI").  *See* Fed. R. Civ. P. 37(e).  Thus, "by its plain terms, Rule 37(e) does not
apply to every situation where spoliation occurs, including where the evidence lost or destroyed
is not ESI.  In those situations, a court must determine the sanctions available under its inherent
authority."  *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 496; *Silvestri*, 271 F.3d at 590.  Once a moving party shows such material has been destroyed, "the burden to show otherwise falls on the party charged with spoliation."  *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 499.

Fields had an obligation to preserve his correspondence, including the Vanguard Correspondence, for three independent reasons:  (a) it was likely to be requested during discovery, (b) it was the subject of a pending discovery request, and (c) it was relevant, or at a minimum, was reasonably calculated to lead to the discovery of admissible evidence.

*First*, Fields had an obligation to preserve since at least October 12, 2017 – the date the Complaint was filed.  The Complaint alleged Fields was "a member of Defendant Vanguard America," and coordinated with the other Defendants to commit the unlawful acts that injured Plaintiffs at the Rally.  ECF No. 1, ¶¶ 24, 25, 63, 304.  And, many of the allegations in the Complaint focus on the events at the Rally.  Thus, it was obvious Plaintiffs would request that Fields produce correspondence with Vanguard America and/or about the Rally.

*Second*, Plaintiffs *did* request that Fields produce correspondence with Vanguard America and about the Rally.  Several document requests directed Fields to produce such documents. *E.g.*, *Exhibit A*, Nos. 1, 3, 6.

*Third*, the spoliated evidence was highly relevant.  Fields admitted the destroyed correspondence "concerned the August 12, 2017, Rally" – a key event at issue.  *Supra*, pp. 8-9. And, the destroyed correspondence between Fields and Vanguard America would have been relevant to show an association between them – which both Fields and Vanguard deny.  It also would have directly disproved Fields's and Vanguard America's claims that they never

communicated with each other.  Thus, Fields's spoliation deprived Plaintiffs of evidence relevant to establishing conspiracy, *i.e.,* "circumstantial evidence . . . of a defendant's 'relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *United States v. Masi*, 135 F.3d 771, at *6 (4th Cir. 1998) (table decision) (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)).

Further, the relevance of the destroyed correspondence is presumed because Fields destroyed it in bad faith.  "[B]ad faith destruction occurs when a party engages in destruction 'for the purpose of depriving the adversary of evidence.'" *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 497 (quoting *Powell v. Town of Sharpsburg*, 591 F.Supp.2d 814, 820 (E.D.N.C. 2008)).  "Bad faith" exists, for example, where a party intentionally destroys documents after its duty to preserve arose and it had knowledge of the filing of the Complaint. *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 497; *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010) (finding bad faith where party "intentionally destroyed evidence when they were aware of the lawsuit"). "[I]f the record shows that a party destroyed or materially altered documents or materials in bad faith, that establishes, without more, that the destroyed documents or materials were relevant." *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 499. This is "because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." *Id.* (quoting *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 180 (D. Md. 2008)).[2]

---

[2] While bad faith results in a presumption of relevance, it is not needed for spoliation sanctions. "In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation." *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 497 (citing cases).

There should be no question Fields destroyed his correspondence in bad faith. He destroyed it after his duty to preserve arose, with knowledge of the Complaint, and with knowledge that Plaintiffs requested it. And he knew, at a minimum, the Vanguard Correspondence would have disproved his representations that he never communicated with Vanguard America. *Supra*, p. 9. Yet, he waited two years – until the last day of document discovery – to disclose his spoliation.

### B.   The Court Should Sanction Fields for Violating the Court's Orders.

The Court should also sanction Fields for the separate and independent reason that he refuses to comply with multiple discovery orders. Rule 37 provides the Court may sanction a party if it "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).

Here, there is no question Fields failed to obey orders to provide and permit discovery. He violated the ESI Order by failing to (a) identify all electronic devices and social media accounts that contain potentially relevant documents (for example, by not disclosing his Instagram and Discord accounts, *supra*, p. 3), (b) make his social media accounts available to the discovery vendor to collect, and (c) search and produce the resulting documents to Plaintiffs. *Supra*, pp. 2-3. He also violated the Social Media Order because he never (a) contacted the ESI vendor "to determine what specific information, if any, the vendor needs to access that Defendant's identified social media accounts and devices"; (b) gave the vendor the "last known credentials" to access his social media accounts; or (c) gave consent to disclose stored electronic communications.[3] And Fields violated the Scheduling Order by failing to produce documents by February 5, 2020. There is no excuse for Fields's refusal to comply with these orders.

---

[3] Even if Fields no longer has access to his social media accounts, he still violated this order, which requires him to provide his "last known credentials" to the accounts regardless of whether he "currently has access" to the accounts or they are "inactive, or inaccessible." ECF No. 582.

Putting aside the fact that the Court already ordered Fields to produce discovery, his objections to producing documents have no merit.

### 1.   Fields Cannot Hide his Social Media Accounts and Documents.

Fields's refusal to identify his social media accounts (including Discord, Instagram, and YouTube) in the face of Court orders directing him to do so is improper and sanctionable.  Much of the most important evidence in this case involves social media documents.  Indeed, the one Instagram message from Fields that Plaintiffs have been able to obtain is evidence that Fields already had in his mind the idea of ramming protesters with a car *before the Rally even started*. Such documents are highly relevant – not only for their obvious relevance to claims against Fields – but also to the conspiracy claims, as other Rally participants engaged in communications about running down protesters with a car at the August 11-12 rally.  *E.g*., ECF No. 557, ¶¶ 236-240; ECF No. 335 ("[T]he exact possibility of running over counter-protesters was explicitly mentioned on the invite only Discord platform before the events.").

As for the two accounts Fields has disclosed (Twitter and Facebook), he refuses to provide access to or documents from them or instruct the social media companies to release his messages to Plaintiffs.  *Supra*, pp. 2-3.

### 2.   Fields Cannot Hide Documents Created by Others.

There is no basis for Fields to limit his discovery responses only to "original information" (*i.e*., documents he created, rather than documents created by others or that he received from others).  *Supra*, p. 4.  Indeed, Fields admits some documents include him interacting with other Defendants by "liking" or sharing content the other Defendants created.  *Supra*, p. 4.

### 3.   Fields Must Produce Documents That Do Not Refer to the Rally.

Fields refuses to produce documents under an unreasonably narrow and improper interpretation of relevance and responsiveness, claiming he need not produce documents about violence, intimidation, or harassment on the basis of race, religion, or ethnicity unless they specifically relate to the Rally.  *Supra*, p. 4.  Under Fields's interpretation, a document reflecting his general desire to kill innocent, non-white protesters would be non-responsive simply because it does not specifically mention the Rally.  That is plainly incorrect.  Relevance in discovery "is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Philips v. Pitt Cty. Mem'l Hosp. Inc*., 2005 WL 8159154, at *2 (E.D.N.C. 2005) (quoting *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Documents concerning violence, intimidation, or harassment of people on the basis of race, religion, or ethnicity, for example, directly bear on Plaintiffs' claims regardless of whether they explicitly mention the Rally.

### 4.   Fields Cannot Hide Responsive Documents Merely Because They Are or Might be Available From Other Sources.

Fields's refusal to produce responsive documents that are "public" is improper.  A party cannot withhold documents simply because they are available from another non-party source.  *Attorneys Liab. Prot. Soc'y, Inc. v. Wooddy*, 2013 WL 11328456, at *4 (D.S.C. 2013) (holding that a party must produce public documents "to the extent that the documents are within their 'possession, custody or control'" (quoting Fed. R. Civ. P. 34)); *Susko v. City of Weirton*, 2010 WL 1881933, at *2 (N.D. W. Va. 2010) ("The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable.").  Indeed, Fields does not even identify the "public" responsive document he has, so Plaintiffs have no way of identifying or locating them from a public source.

     **5.**    **Fields Cannot Shield from Discovery Non-Privileged Documents in his Attorneys' Possession.**

Fields has no legal basis to assert that non-privileged documents in the possession of his criminal defense counsel are outside the scope of discovery.  It is well established that documents held by counsel are deemed to be within a party's possession, custody, or control, and thus must be produced.  *Beach Mart, Inc. v. L&L Wings, Inc*., 302 F.R.D. 396, 411 (E.D.N.C. 2014) *aff'd sub nom.* 784 F. App'x 118 (4th Cir. 2019) ("[A] party has control of documents where a party's attorney or former attorney has control, custody, or possession of those documents."); *Poole ex rel. Elliott v. Textron, Inc*., 192 F.R.D. 494, 501 (D. Md. 2000) (Agreeing with plaintiff that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's 'control' for the purposes of Rule 34.").

Even if Fields's criminal counsel signed a "non-disclosure" agreement, such agreements cannot preclude the production of documents for the purpose of discovery.  *E.g*., *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co*., 2012 WL 628493, at *2 (D. Md. 2012) ("There is no privilege for documents merely because they are subject to a confidentiality agreement, and confidentiality agreements do not necessarily bar discovery that is otherwise permissible and relevant.").  And regardless of whether Fields's criminal defense lawyers signed a non-disclosure agreement regarding documents obtained from the prosecution, that is irrelevant to his required disclosure of responsive documents obtained from other sources.

## II.    THE PROPER SANCTION IS AN ADVERSE INFERENCE INSTRUCTION.

This Court has wide discretion under its inherent authority and Rule 37 to sanction a party for destroying or failing to produce evidence.  Fed. R. Civ. P. 37(b)(2), (d)(3); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) ("The trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of

16

evidence, or the destruction of evidence.").  When exercising that authority, the Court may "use as many and as varied sanctions as are necessary to hold the scales of justice even."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2016 WL 1597119, at *4 (D. Md. 2016) (quoting Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2284 (3d ed. 2015).  Indeed, where a party's conduct is "so prejudicial that it substantially denied the aggrieved party the ability to prove its claim," the most severe sanction – entry of default judgment – is proper.  *E.I. du Pont de Menours & Co.*, 803 F. Supp. 2d at 500 (quoting *Silvestri*, 271 F.3d at 593).

When spoliation occurs, "an adverse inference may be drawn against a party who destroys relevant evidence."  *Vodusek*, 71 F.3d at 155.  "Such an instruction can be critical to assisting the innocent party in establishing the nature of the evidence that has gone missing" and "ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence."  *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017) (citation and internal quotation marks omitted).  These remedies are the only way to properly "level[] the evidentiary playing field."  *Vodusek*, 71 F.3d at 156.

An adverse inference is also the proper sanction when a party refuses to produce documents and otherwise completely stonewalls discovery.  *E.g.*, *KBA-Giori, N. Am., Inc. v. Muhlbauer, Inc.*, 2009 WL 10689479, at *5 (E.D. Va. 2009) ("[T]he Court instructed the jury that they could draw an adverse inference on the issues" based on "Defendants' failure to comply with their discovery duties," which included a failure "to answer interrogatories and identify documents in a timely manner."); *see also Lee v. n-Link Corp.*, 2014 WL 3909532, at *6 (D.S.C. 2014) (recommending "an adverse inference instruction to the jury related to plaintiff's failure to provide truthful deposition testimony and responses to written discovery."); *First Mariner Bank v. Resolution Law Grp.*, 2013 WL 5797381, at *14 (D. Md. 2013) (explaining that an adverse

inference would be "appropriate if material evidence was destroyed or entirely withheld" and instructing the jury that they "may draw a negative inference from the failure to produce information.").

The Fourth Circuit applies a four-part test to determine whether to impose sanctions: "(1) whether the noncomplying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of noncompliance, and (4) whether less drastic sanctions would have been effective." [4] *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Consideration of these factors shows the Court should sanction Fields by ordering an adverse inference jury instruction and ruling his documents are admissible.

### 1.   Fields Acted in Bad Faith.

As detailed above, Fields's acted in bad faith when he destroyed evidence. *Supra*, pp. 12-13. He also acted in bad faith in not responding to discovery. Bad faith in discovery "includes willful conduct, where a party clearly understands its duty to the court but nevertheless deliberately disregards it." *Lonewolf v. Garrett*, 2019 WL 2016708, at *3 (W.D. Va. 2019). There is "ample evidence of bad faith" when the Court orders a party to provide discovery, but the party fails to do so. *Id.*; *Dusé v. Barnes & Noble, Inc.*, 2011 WL 13192908, at *2 (E.D. Va. 2011) (where a party "made a conscious decision not to participate" in the case, "[s]uch a refusal amounts to bad faith"), *report and recommendation adopted*, 2012 WL 12973545, at *1 (E.D. Va. 2012), *aff'd*, 473 F. App'x 189 (4th Cir. 2012). When the disobedient party claims it did not comply with a discovery order only because it interpreted it differently than the movant, the

---

[4] Courts consider similar facts under their inherent authority. *See, e.g.*, *Projects Mgmt. Co. v. Dyncorp Intern. LLC*, 734 F.3d 366, 374 (4th Cir. 2013); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993).

Court will still find bad faith if the discovery order "could not reasonably have been interpreted" the way the disobedient party asserts. *Lonewolf*, 2019 WL 2016708 at *3.

Here, Fields's non-compliance with the Court's multiple orders cannot be anything other than bad faith. Each of the orders clearly applied to Fields, yet he wholly disregarded them. *Supra*, pp. 13-14. And none of the Orders could "reasonably have been interpreted" not to apply to him. They explicitly applied to "all defendants" or "each defendant." *Supra*, pp. 5-7. At best, only one of the three orders (the ESI Order) exempted Fields only as to the *deadline* for compliance, but even then it did not exempt him from his ultimate *obligation* to produce the discovery required by the ESI Order. *Supra*, p. 6.

### 2.    Fields's Conduct Prejudices Plaintiffs.

"The rules of discovery are designed to prevent prejudice due to inadequate trial preparation." *Lonewolf*, 2019 WL 2016708 at *4 ("A court must consider how the absence of the unproduced evidence impairs the other party's ability to establish its case and whether the non-complying party's conduct deprives the other party of a fair trial."). Thus, the failure to provide discovery inherently prejudices the opposing party by limiting its ability to prepare its case. *Diamond v. Mohawk Indus. Inc.*, 2014 WL 1404563, at *5 (W.D. Va. 2014) (finding defendant was "greatly prejudiced by the inability to . . . communicate with [plaintiff] in any regular fashion about the case, or receive responsive documents from him."); *Pruitt v. Bank of Am., N.A.*, 2016 WL 7033972, at *2 (D. Md. 2016) ("Interrogatories and depositions are important elements of discovery; [a party] would be hard-pressed to conduct its case without them. When a [party] refuses to respond to such requests, it can have a debilitating effect on the rest of the litigation."); *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226 (D.D.C. 2015)

("[The] failure to abide by discovery deadlines is prejudicial when it prevents the opposing party from timely reviewing relevant evidence.").

Plainly, Fields severely prejudiced Plaintiffs by destroying his correspondence. That evidence was directly related to key issues in the case, including the events at the Rally; and establishing Fields communicated, had a relationship, and associated with Vanguard America, which both Fields and Vanguard America deny. *Supra*, pp. 7-8.

Fields also caused prejudice by not complying with the Court's orders and refusing to produce discovery. Non-compliance with Court's discovery orders causes prejudice because it inhibits the other party's ability to obtain and evaluate the evidence in preparation for expert discovery, dispositive motions, and trial – particularly where, as here, the deadline for party document productions has passed. *E.g.*, *Lonewolf*, 2019 WL 2016708 at *4 (holding movant suffered prejudice from non-movant's discovery violations because "discovery in this case is now closed"); *see also Peek v. Golden Nugget Hotel & Casino*, 1995 WL 309197, at *3 (9th Cir. 1995) (affirming dismissal sanction where movant "will be prejudiced because the discovery deadline has passed and, as a result of [the non-complying party's] noncompliance with many of its requests," it "would have been prejudiced if forced to proceed to trial."); *Carroll v. Allstate Fire & Cas. Ins. Co.*, 2014 WL 859238, at *6 (D. Colo. 2014) (holding party was prejudiced because opposing party violated discovery obligations and now "discovery is closed").

Where, as here, the evidence sought "goes to the heart" of the case, a defendant causes "significant prejudice" by not producing it. *Hendricks v. Quikrete Companies, Inc.*, 2017 WL 2711131, at *4 (D. Md. 2017). This is especially true in a conspiracy case like this one, because there is already an "inherent difficulty in proving conspiracy." *Precision Piping & Instruments, Inc. v. E.I. duPont De Nemours & Co.*, 707 F. Supp. 225, 228 (S.D. W. Va. 1989).

The February 5 deadline for parties to produce documents has come and gone.  Even if Fields completed his discovery obligations promptly, Plaintiffs would have little time to review and evaluate the production, which inhibits their ability to assess whether additional discovery is needed, and to prepare for depositions, expert discovery, third party discovery, dispositive motions, and trial.  Indeed, the Court recognized months ago it is "self-evident" that Defendants' failure to comply with the Court's orders harms Plaintiffs' "ability to timely develop and present Plaintiffs' case."  ECF No. 599, p. 12.  Now, months later, the prejudice has only become worse.

### 3. The Court Should Deter Parties from Destroying Evidence, Ignoring Court Orders, and Stonewalling Discovery.

Sanctions should be severe enough to deter parties from engaging in extreme misconduct like spoliating relevant evidence. *E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 510. Substantial deterrence is also necessary where a party has long ignored the Court's repeated discovery orders because then, "[p]lainly, [the party's] discovery intransigence is undeterred." *Lonewolf*, 2019 WL 2016708 at \*4; *Flame S.A. v. Industrial Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014) ("Continued contumacious behavior and abuse through non-compliance with [a Court's] orders cannot be tolerated. And with discovery's important role in modern litigation, deterrence is greatly needed."); *Green v. John Chatillon & Sons*, 188 F.R.D. 422, 425 (M.D.N.C. 1998) (dismissing action as sanction for plaintiff's failure to provide discovery eight months after the original requests and two months after being ordered to do so); *Young Again Prod., Inc. v. Acord*, 459 F. App'x 294, 303 (4th Cir. 2011) ("'[S]talling and ignoring the direct orders of the court with impunity' is 'misconduct' that 'must obviously be deterred.'" (quoting *Mut. Fed. Sav and Loan Ass'n v. Richards & Assocs., Inc*¸ 872 F.2d 88, 93 (4th Cir. 1989)).  This is because "not only does the noncomplying party jeopardize his or her adversary's case by such

indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Mut. Fed. Sav. & Loan*, 872 F.2d at 92.

Here, the Court should issue sanctions because it would deter parties, like Fields, who destroy relevant evidence requested in discovery, engage in longstanding non-compliance with the Court's orders, and completely fail to produce a single document in discovery. Indeed, many of the Defendants in this case have ignored the Court's discovery orders, but the Court's admonishments and sanctions to date have not deterred such conduct. Rather, multiple Defendants – including Fields – simply continue to flout their legal obligations to Plaintiffs and the Court and abuse the discovery process. *E.g.*, ECF Nos. 483, 539, 582, 610.

**4.   No Less Drastic Sanction Would be Effective**.

An adverse inference is the proper sanction when a party deleted relevant evidence, fails to produce documents, is late with the little discovery it does provide, and otherwise fails to participate in discovery. *E.g.*, *KBA-Giori, N. Am., Inc.*, 2009 WL 10689479 at *6 ("[T]he Court instructed the jury that they could draw an adverse inference on the issues" based on "Defendants' failure to comply with their discovery duties," which included a failure "to answer interrogatories and identify documents in a timely manner."); *see also Lee*, 2014 WL 3909532 at *6 (recommending "an adverse inference instruction to the jury related to Plaintiff's failure to provide truthful deposition testimony and responses to written discovery"); *First Mariner Bank*, 2013 WL 5797381 at *14 (explaining that an adverse inference would be "appropriate if material evidence was destroyed or entirely withheld" and instructing the jury that they "may draw a negative inference from the failure to produce information."); *Butler v. DirectSat USA, LLC*, 2013 WL 6629240, at *1 (D. Md. 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify this harshest of sanctions.").

22

In light of Fields's incarceration, an adverse inference is the only way to remedy his failures. Because he has refused to produce documents from, or give access to, his social media accounts, Plaintiffs have no way to know whether they contain additional highly relevant evidence. And, we already know they contain such evidence –one of Fields's social media messages Plaintiffs have obtained so far is highly relevant because it shows him discussing hitting protesters with a car months before he actually did so.

### 5. Incarceration Does Not Excuse Fields's Discovery Obligations.

Fields's incarceration is no excuse for him to refuse to participate in discovery or comply with the Court's orders. *Corzine v. U.S. Army*, 2011 WL 6130775, at *2 (E.D.N.C. 2011) (rejecting a party's argument that "he is incarcerated in another state and cannot conduct discovery"). Indeed, Fields is represented by counsel in this matter. He has had two years to produce responsive documents and information while in custody. Notwithstanding Fields's transfer to federal incarceration, there has been ample time for counsel to obtain information and documents to produce to Plaintiffs by visiting Fields or corresponding with him through mail. *Supra*, pp. 7-8. Indeed, Fields's incarceration has not prevented him from serving offensive discovery, and he has feasted on discovery from Plaintiffs, who have produced more than 80,000 pages of documents. Fields expects Plaintiffs to give him discovery and comply with the Court's orders, but not the other way around. The Court should not condone such behavior.

## III. THE COURT SHOULD SANCTION FIELDS FOR FAILING TO ANSWER PLAINTIFFS' SECOND SET OF INTERROGATORIES.

The Court can sanction a party if it "fails to serve its answers, objections, or written response" to interrogatories. Fed. R. Civ. P. 37(d)(1)(A)(ii). Sanctions include any of the sanctions available for non-compliance with a Court order. *Supra*, pp. 21-23.

Interrogatories must be answered "by the party to whom they are directed" and "[t]he person who makes the answers must sign them." Fed. R. Civ. P. 33(b). Conversely, the attorney "must sign any objections." *Id.* Here, Fields did not answer Plaintiffs' second interrogatories. They were answered by his counsel, who admitted answering them without communicating with his client. *Supra*, p. 5.[5] Accordingly, for the same reasons described above (*supra*, pp. 16-23), the Court should sanction Fields by ordering an adverse inference jury instruction as to his failure to answer these interrogatories.

## IV.   THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS TO PLAINTIFFS.

When the Court imposes sanctions, Rule 37 requires it to order the non-compliant or non-producing party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless the failure was substantially justified or an award would be unjust. Fed. R. Civ. P. 37(b)(2)(C) (fees for failure to comply with court order); Fed. R. Civ. P. 37(d)(3) (fees for failure to answer interrogatories). Here, there is no substantial justification for Fields's refusal to comply with the Court's orders or provide discovery, and an award of fees would not be unjust. Accordingly, the Court should award Plaintiffs' the reasonable attorney's fees and expenses incurred as a result of Fields's discovery failures.

---

[5] Even putting aside that the interrogatories were answered by Fields's lawyer, not Fields, the substance of the "answers" are glaringly deficient. When asked to describe communications with co-defendants, Fields's lawyer did not disclose the substance of the communications. *Exhibit E*, No. 1. When asked to identify the expenses incurred planning, organizing, and attending the Rally, Fields's lawyer generally referred to "fuel for [Fields's] vehicle," without specifying an amount, and included no other expenses (*e.g.*, food). *Id.*, No. 2. Fields's lawyer also refused to answer multiple interrogatories on the grounds of the Fifth Amendment right against self-incrimination. *Id.*, Nos. 6-7, 10. But because those objections were served months late, they are waived. Fed. R. Civ. P. 33(b)(4). And, in any event, the Fifth Amendment right against self-incrimination does not exempt a party from civil discovery or sanctions for refusing to provide a complete answer. ECF No. 288, pp. 2-3; i*ee Skinner v. Armet Armored Vehicles, Inc.*, 2015 WL 540156, at *3-4 (W.D. Va. 2015).

**CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and order the requested

relief, in addition to any other relief as the Court deems just and proper.

Dated: March 9, 2020                                  Respectfully submitted,

                                                      /s/ David E. Mills
                                                      David E. Mills (*pro hac vice*)
                                                      Joshua M. Siegel (VSB 73416)
                                                      COOLEY LLP
                                                      1299 Pennsylvania Ave., NW
                                                      Suite 700
                                                      Washington, DC 20004
                                                      Telephone: (202) 842-7800
                                                      Fax: (202) 842-7899
                                                      dmills@cooley.com
                                                      jsiegel@cooley.com

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
pbowman@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone:  (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

## RULE 37 CERTIFICATION

Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted in good faith to meet and confer with James Fields about the issues raised by this Motion.


Dated: March 9, 2020                                        Respectfully submitted,



                                                           /s/ David E. Mills
                                                           David E. Mills (*pro hac vice*)
                                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler,*
*Nathan Damigo, Identity Europa, Inc.*
*(Identity Evropa), Matthew Parrott, and*
*Traditionalist Worker Party*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National*
*Socialist Movement, and Nationalist Front*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,*
*Michael Tubbs, and League of the South*

I further hereby certify that on March 9, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

/s/ David E. Mills
David E. Mills (*pro hac vice*)
*Counsel for Plaintiffs*