UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOTT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM
DEFENDANT NATIONAL SOCIALIST MOVEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iv

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 2

I.     Brief History of NSM .................................................................................... 2

II.    NSM's Role at Unite the Right.................................................................... 3

III.   From the Outset, NSM Refused to Comply with Its Discovery Obligations..................... 4

IV.    Schoep's Attempted Scheme to Transfer NSM to James Stern to Avoid This Lawsuit........... 5

V.     Colucci Reincorporated NSM in Florida to Take Control Back from Stern ..................... 7

VI.    NSM Continued Its Failure to Comply with Its Discovery Obligations........................ 9

VII.   Colucci's Deposition Revealed That NSM Has Withheld Numerous Responsive Documents, Accounts, and Devices.................................................................................. 13

       A.     Colucci Confirmed That NSM Conducted No Meaningful Investigation into Custodians or Responsive Documents Despite the Order Requiring It to Do So ................................ 13

       B.     Colucci Confirmed That NSM and Schoep Have Failed to Produce Numerous Responsive Documents ...................................................................... 14

       C.     Colucci Confirmed That NSM Has Withheld Responsive Devices and Accounts ............... 16

VIII.  NSM Has Still Failed to Comply with Its Discovery Obligations................................ 17

LEGAL STANDARDS ............................................................................................. 18

ARGUMENT .......................................................................................................... 19

I.     NSM Is Subject to Plaintiffs' Discovery Requests and This Court's Orders .................. 19

II.    NSM Should Be Compelled to Produce Electronic Devices, Social Media Accounts, and Documents Responsive to Plaintiffs' Discovery Requests ....................... 22

       A.     NSM Should Be Compelled to Produce Colucci's Electronic Devices, Social Media Accounts, and Responsive Documents ............................................. 22

B.     NSM Should Be Compelled to Conduct an Investigation into NSM
       Custodians, Including Collecting and Producing Documents from All
       Individuals Known to be Formerly or Currently Associated with NSM .............. 23

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Tomar Elecs.*,
    No. 05-cv-756-MJD, 2006 WL 2670038 (D. Minn. Sept. 18, 2006) ............................... 24, 25

*Akzo Nobel Coatings, Inc. v. Pearl Ave. USA, Ltd.*,
    No. 2:09CV540, 2010 WL 11564919 (E.D. Va. Oct. 6, 2010) ............................................ 20

*Carrillo v. Borges Constr., LLC*,
    No. GJH-13-641, 2016 WL 5716186 (D. Md. Sept. 30, 2016) ............................................ 20

*Charles Schwab & Co. v. WS Wealth Mgmt., LLC*,
    No. 1:16CV0352 (AJT/IDD), 2016 WL 7033699 (E.D. Va. Dec. 2, 2016).................... 20, 21

*Free Bridge Auto Sales, Inc. v. Focus, Inc.*,
    No. 3:08-CV-00002, 2014 WL 521661 (W.D. Va. Feb. 4, 2014) ......................................... 21

*Halsey v. Urban Telecomms. Corp.*,
    95 F.3d 41 (4th Cir. 1996) .................................................................................................. 20

*Hern v. Telsys Int'l, Inc.*,
    139 F.3d 889 (4th Cir. 1998) .............................................................................................. 20

*Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*,
    123 F.3d 201 (4th Cir. 1997) ......................................................................................... 20, 21

*La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*,
    805 S.E.2d 399 (Va. 2017)................................................................................................... 20

*Moore v. Napolitano*,
    723 F. Supp. 2d 167 (D.D.C. 2010) ......................................................................... 19, 22, 23

*Morris v. Lowe's Home Ctrs., Inc.*,
    No. 1:10-cv-388, 2012 WL 5347826 (M.D.N.C. Oct. 26, 2012) ..................................... 24, 25

*Poole ex rel. Elliott v. Textron, Inc.*,
    192 F.R.D. 494 (D. Md. 2000)........................................................................... 19, 22, 23, 24

*Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*,
    No. 1:15-cv-00129-MR, 2016 WL 4546446 (W.D.N.C. Aug. 31, 2016)........................ 19, 23

*Terry v. Modern Inv. Co.*,
    No. 3:04-cv-00085, 2006 WL 2434264 (W.D. Va. Aug. 21, 2006)...................................... 24

*United States v. Carolina Transformer Co.*,
    978 F.2d 832 (4th Cir. 1992) .............................................................................................. 20

*Waterford Inv. Servs., Inc. v. Bosco*,
   No. 3:10CV548-REP, 2011 WL 3820723 (E.D. Va. July 29, 2011) ...................................... 20

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................... 18, 22

Fed. R. Civ. P. 34(a)(1) ............................................................................................................... 19

Fed. R. Civ. P. 37(a) ................................................................................................................. 1, 25

## PRELIMINARY STATEMENT

For over two years, Defendant National Socialist Movement ("NSM") has repeatedly and willfully refused to comply with countless discovery obligations and Court orders.  Over one month after the Court-ordered deadline for the parties to produce all discoverable material to opposing counsel, ECF No. 597, NSM still has not produced to Plaintiffs a ***single*** document.[1]

For months, NSM's counsel, W. Edward ReBrook IV, repeatedly refused to conduct any investigation into relevant documents or potential NSM custodians, claiming that he has only one "human client," Defendant Jeff Schoep, former "Commander" of NSM.  NSM's recalcitrance forced Plaintiffs to move to compel NSM to produce a witness regarding NSM's misconduct in discovery and potential custodians of NSM's documents.  ECF No. 547.  On December 11, 2019, Burt Colucci, NSM's new "Commander," sat for that deposition.  He confirmed that NSM had done no meaningful investigation; had sat on responsive documents for months without turning them over; and had failed to disclose numerous responsive electronic devices and social media accounts.  When Plaintiffs demanded that Colucci produce the relevant devices, documents, and communications, Colucci categorically refused.  Instead, Colucci posted on the social media website VK that "[m]y advice is to politely tell them to all fuck off as I have, regardless of their threats."  Ex. 1 (Colucci VK post (12/11/2019)).  This has been NSM's strategy throughout this litigation.

Given NSM's refusal to participate in discovery, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that the Court compel NSM to (1) produce all

---

[1] In response to Plaintiffs' motion for sanctions against him, NSM's former "Commander," Defendant Jeff Schoep, produced a mere 100 documents on his own behalf.  Of the 100 documents that Schoep produced, 43 were unreadable gibberish files with no substance.  Declaration of Jessica E. Phillips ¶ 4.  Of the remaining 57 readable files, 27 are Google alert notifications.  *Id.* ¶ 5.  The remaining 30 files are primarily case filings and case-related correspondence, including Plaintiffs' motion for sanctions against Schoep and the 12 exhibits Plaintiffs attached to that motion.  *Id.* ¶ 6.  Additionally, Schoep has claimed that the cellular telephone that he utilized during the operative timeframe was rendered inoperable after it fell into a toilet.  *See* ECF No. 547 at 1.  Plaintiffs reserve all rights with regard to Defendant Schoep's discovery failures.

electronic devices within Colucci's possession to the third-party discovery vendor (the "Vendor") for imaging and collection, including but not limited to all of Colucci's computers and phones; (2) disclose all social media credentials within Colucci's possession to the Vendor for imaging and collection; (3) produce immediately to Plaintiffs without opportunity for Colucci's review every document from his devices and accounts that hits on a search term; (4) conduct an investigation into all potentially relevant custodians, including making a good-faith effort to collect all devices and credentials that may contain responsive materials from all individuals currently or formerly associated with NSM and producing such devices and credentials to the Vendor; and (5) pay Plaintiffs' reasonable expenses, including attorneys' fees and costs, incurred in prosecuting this motion.

Obtaining NSM's documents is a matter of urgency. Plaintiffs have fewer than five months in which to take depositions of more than 20 Defendants, prepare Plaintiffs for their depositions, and take third-party depositions. ECF No. 597. Plaintiffs have already waited for two years for NSM to produce responsive documents. They should not be made to wait any longer while NSM continues its express strategy of intentionally withholding all documents.

## BACKGROUND

### I.    Brief History of NSM

Defendant NSM was founded in 1974 and touts itself as the largest neo-Nazi coalition in the United States. Ex. 2 (NSM website); Second Am. Compl. ¶ 38, ECF No. 557 ("SAC"). Defendant Schoep served as "Commander" of NSM from 1994 to 2019. SAC ¶ 38; ECF No. 547 at 9. Colucci joined NSM in 2001.[2] In 2008, Schoep incorporated NSM in Michigan. Ex. 3 (NSM Articles of Incorporation). In early 2018, Colucci became Chief of Staff and handled "most of the

---

[2] Although Colucci claims to have been periodically inactive, he has testified that he reengaged with the organization no later than November 2017 and has been active since. Colucci Dep. 49–51, 56, 94.

day-to-day operations" of NSM.  Colucci Dep. 35, 38, 41, 45–49, 53–55, 94.  In March 2019, Colucci took over from Schoep as Commander of NSM.  Ex. 4 (NSM Public Release (3/1/2019)).

For at least the past 20 years, NSM has maintained a website at www.nsm88.org.  Ex. 5 (Deposition of Burt Colucci ("Colucci Dep.")) at 72, 194–97.  The website describes NSM as "the largest and most active National Socialist party in America today."  Ex. 2.  NSM uses numerous social media accounts, such as official email addresses at nsm88.org, email newsletters, podcasts, and a voicemail messaging service, many of which NSM has maintained for years.  *E.g.*, Colucci Dep. 17–19, 80–81, 125–28, 135–37, 140, 146–47, 153–58, 230–32, 246–47.

## II.     NSM's Role at Unite the Right

Members of NSM, including its then-Commander, Defendant Schoep, attended Unite the Right in August 2017 and participated in the violence that took place there.  SAC ¶¶ 37–38.  In addition to Schoep, these individuals included PR director Brian Culpepper, members Ken Parker and Peter Tefft, and numerous others who can be identified as NSM members in photographs based on their outfits, shields, and flags.  Colucci Dep. 114–15, 183–86, 189–90, 216; Exs. 6, 7, 8 (Unite the Right photos).  On August 12, 2017, NSM marched with other Defendants to Emancipation Park in formation.  SAC ¶ 195.  NSM joined with other Defendants to "help create two shield walls" for "the fight."  *Id.* ¶ 211.  Along with other Defendants, NSM, led by Schoep, charged through protesters with shields and rods.  *Id.* ¶ 213.  Inside Emancipation Park, Defendants used shields, rods, and flags to assault protesters.  *Id.* ¶ 215.  After authorities declared an unlawful assembly, Defendants moved to McIntire Park.  *Id.* ¶¶ 222, 225.  Schoep marched to McIntire Park, attacking protesters along the way.  *Id.* ¶ 227.  Schoep then led a group of 40 followers back from McIntire Park to Emancipation Park "through Antifa and police interference."  *Id.* ¶ 230.

NSM Media "covered" the events at Unite the Right and put together a program regarding those events that contained reports, observations, and analysis from Culpepper and others who had

attended the rally.  Ex. 9 (NSM Magazine (Fall/Winter 2017)) at 6.  In addition, Culpepper drafted an "After Action Report" declaring the events "a huge success."  ECF No. 547-3 at 7.  After the events of August 11 and 12, Schoep tweeted, "It was an Honor to stand with U all in C'Ville this weekend.  NSM, NF, TWP, LOS, VA, ECK, CHS, and the rest, true warriors!"  SAC ¶ 37.

### III.    From the Outset, NSM Refused to Comply with Its Discovery Obligations

Plaintiffs served their First Set of Requests for Production of Documents and their First Set of Interrogatories on NSM in January 2018.  ECF Nos. 432-1, 432-2.  NSM provided responses in April 2018 but did not produce any documents.  ECF No. 475-7.  NSM's responses, which Schoep signed as NSM's representative, were largely the same as Schoep's individual responses.  ECF Nos. 475-4, 475-7.  NSM's responses, which listed NSM's website, some of Schoep's devices and accounts, and one NSM social media account, made clear to Plaintiffs that NSM had done no investigation regarding additional potential custodians of documents.[3]  ECF No. 475-7.

In November 2018, the Court granted Plaintiffs' Motion to Compel Defendants to Permit Inspection and Imaging of Electronic Devices.  ECF No. 379.  The Court ordered NSM and other Defendants to identify electronic devices and social-media accounts containing potentially relevant documents and to provide relevant devices and account credentials to the Vendor.  ECF No. 383 (the "Imaging Order").  In December 2018, Schoep executed a certification on behalf of himself and NSM, which identified only two social media accounts and one device belonging to Schoep.  NSM still identified no device or account for any other custodian.  ECF No. 547-5 at 1. NSM did not turn over any devices or social media accounts to the Vendor.  ECF No. 432 at 8–9.

---

[3] More than a year after NSM served these responses, NSM's counsel, W. Edward ReBrook IV, "clarif[ied]" in an August 2019 email to the Court that one account listed in both Schoep and NSM's discovery responses—a "Bitchute" account—belonged solely to NSM.  ECF No. 547-19.

**IV.    Schoep's Attempted Scheme to Transfer NSM to James Stern to Avoid This Lawsuit**

In late 2018, as Schoep began looking for a way to avoid the mounting cost and potential liability of this litigation, he met African-American activist James Hart Stern.  Between December 2018 and February 2019, Schoep and Stern had numerous phone calls discussing their plan to transfer control of NSM from Schoep to Stern.  *See* Ex. 10 (Katie Mettler, *The Washington Post*, "The 'race whisperer'" (10/30/2019)).  To execute on the plan, on January 14, 2019, Schoep's girlfriend, Acacia Dietz, filed (as "Resident Agent" of NSM) a "Certificate of Correction" with the Michigan Department of Licensing and Regulatory Affairs ("LARA") reassigning the roles of President, Secretary, and Treasurer to Stern.  Ex. 11 (Certificate of Correction (1/14/2019)).  On January 28, 2019, Schoep stated in a sworn affidavit that he had "personally authorized the changes of the National Socialist Movement Inc. . . . to assure the operation of the organization and the website NSM88.org is under the direction of James Hart Stern."  Ex. 12 (Affidavit (1/28/2019)).

Stern recorded the telephone conversations that he had with Schoep.[4]  Those calls reveal their plan:  after Schoep turned over control of NSM to Stern, Plaintiffs would settle this litigation with Stern and eliminate any further expense and potential liability for Schoep.  Schoep told Stern that "financially, we are in bad shape"; the lawsuit was "gonna kill my business"; and he was frustrated with financially unsupportive NSM members.  Ex. 10; Call 5 at 12:56–14:44; Call 6 at 28:41–30:46; Call 7 at 14:57–15:33.[5]  Stern was equally explicit: "Here's my thing I say to you: whatever it's going to take to save Jeff Schoep's ass, save Jeff Schoep."  Call 6 at 1:00:40–1:01:08.

---

[4] Plaintiffs received ten of these recordings in discovery.  The calls are undated.  Plaintiffs refer to them here by their number, based on the sequence in which Plaintiffs received them.

[5] Schoep told Stern that he "want[ed] to get away from it . . . I think the way the political climate is in this country is right now and the way the court systems are ruling against individuals involved with this stuff, it's a prison sentence waiting to happen."  Call 10 at 17:09–18:31. Colucci likewise testified that Schoep had "signed over the organization and named Stern president in an attempt to get out of this lawsuit," because NSM could only afford the lawsuit for "a few more months at best."  Colucci Dep. 68–69, 258–59.

Schoep also wanted to avoid disclosing his documents to Plaintiffs.  Call 1 at 24:45–25:10 (Stern: "[G]et your name off the case before they serve you subpoenas. . . ." Schoep: "True, yeah."), Call 4 at 17:44–17:50 (Stern: "They're using the civil lawsuit to try to get information."), 27:34–28:07 (Stern: "[T]hey want your electronic devices, they want your emails, your Facebook and Twitters . . . .").  Schoep requested and received reassurance from Stern that it was not unethical or unlawful to "mak[e] these moves to try to attempt to get out of this lawsuit."  Call 5 at 21:36-22:39.

Stern promised Schoep that he, or someone he designated, could take back the organization as soon as several months later.  Call 1 at 5:00–5:35.  Stern informed Schoep, "I'm gonna hold the corporation for you," until Schoep was "dismissed off the lawsuit, where they can't sue you again" and was "safe."  Call 2 at 19:11–19:52; Call 9 at 8:14–9:00.  Stern explained:

> Stern:      Now, at any given time though, between you and I, you can have it back, okay? But just make sure, we agreed, you wait long enough where it don't look like it's a ploy, you follow what I'm saying?
> Schoep:    Right.

Call 2 at 20:05–24:00.[6]

On February 15, 2019, after Schoep had made Stern President of NSM, Stern attempted to substitute himself for NSM's prior counsel, James Kolenich and Elmer Woodard, as NSM's legal representative.  ECF No. 413.  On February 21, 2019, after being fired by Schoep as NSM's attorneys, Kolenich and Woodard moved to withdraw as counsel.  ECF Nos. 420–21.  On February 26, 2019, Schoep signed a "Claim of Facts" stating that he had turned NSM over due to his "desire to be removed from a legal proceeding I feel I have no fault in."  Ex. 13 (Claim of Facts (2/26/2019)).

---

[6] *See* Call 1 at 49:40–50:24 (Stern: "[I]f you say 'I want the thing back,' guess what? I'm not going to argue with you."); Call 2 at 20:05–24:00 (Stern: "[L]et's say once the lawsuit is settled, once everything is done, I have no problem signing you back on as the director, president, CEO, and that's it! It's yours."); Call 9 at 8:14–9:00 (Stern: "[A]nytime you want your NSM corporation back . . . just say 'Stern, it's time for me to have my corporation back.' You can have the damn thing."); Call 9 at 19:25–20:00 (Stern: "[Y]ou can always get it back from me. Ok? Simple as that.").

Schoep claimed that "this is not an un-sincere move to inactivate this group," and that Stern "assured me he will not carry on the organization as it was do [*sic*] to his polar opposite views. . . . I have sincere motives, and this was not just a stunt." *Id.* On February 28, 2019, Stern filed a summary judgment motion requesting that the Court "issue such judgment against [NSM], based on the truth of all statements made in plaintiffs' complaint against [NSM] being true." ECF No. 433.

On March 1, 2019, Schoep stepped down as Commander, and announced that Colucci had taken over his role as the new Commander. Ex. 4. Schoep also stated that he had been "deceived by Mr. James Stern, who convinced me that in order to protect our membership from the ongoing lawsuit, I should sign over NSM's presidency to him." *Id.* Schoep added that Stern had "fraudulently manipulated me for the purposes of gaining control of, and dissolving NSM." *Id.*

## V.      Colucci Reincorporated NSM in Florida to Take Control Back from Stern

Throughout the spring of 2019, a "tug-of-war" occurred for control of NSM. Colucci Dep. 67 ("[Schoep] kept on trying to put the organization in my name; then Stern would turn around and put it back in his name with his non-white people that he has out there in California. And it seemed like it went back and forth, back and forth, and he kept doing it over and over again.").

On March 6, 2019, Dietz filed a Certificate of Change naming herself as resident agent of NSM. Ex. 14 (Certificate of Change (3/6/2019)). Dietz (as Resident Agent) and Schoep (as Incorporator) filed a Certificate of Correction naming Colucci as President and Secretary of NSM, Dietz as Treasurer, and Colucci, Dietz, and Mike Schloar as Directors. Ex. 15 (Certificate of Correction (3/6/2019)). The same day, Stern sued Schoep, Colucci, Dietz, and Schloar in California state court for theft, fraud, and defamation, among other claims. Ex. 16 (*Stern v. Schoep* complaint (3/6/2019)). The next day, Colucci posted a photo of Adolf Hitler on VK with the message, "That face you make when you just legally ousted a nigger from your ranks and took over the largest White Nationalist organization in America…" Ex. 17 (Colucci VK post (3/7/2019)).

Meanwhile, in an *ex parte* email to the Court on March 18, 2019, ReBrook asserted himself as the new attorney for NSM and claimed that Stern "is not, in my legal opinion and in operational fact, in any way affiliated with NSM."  ECF No. 446.  On March 19, 2019, ReBrook entered an appearance for NSM.  ECF No. 451.  On April 4, 2019, the Court barred Stern from further participation in the litigation and accepted ReBrook's appearance for NSM.  ECF No. 461.

On May 22, 2019, Colucci, Schloar, and Dietz decided in a conference call to dissolve NSM.  Ex. 18 (NSM meeting minutes (5/22/2019)).  On May 23, 2019, Stern filed an Annual Report again naming himself as President, Secretary, and Treasurer.  Ex. 19 (Annual Report (5/23/2019)).  The same day, Dietz filed another Certificate of Change naming herself as Resident Agent.  Ex. 20 (Certificate of Change (5/23/2019)).  On May 24, 2019, because he had become "tired of the tug-of-war that was going on up in Michigan," Colucci Dep. 102, Colucci registered the "National Socialist Movement Corporation" in Florida, Ex. 21 (NSM corporate registration).  Colucci named himself as Registered Agent and President, and named himself, Schloar, and Harry Hughes, a longtime NSM member and NSM Region 11 director, as Directors of NSM.  Ex. 21.

On May 30, 2019, Stern filed a Certificate of Change naming himself as Resident Agent.  Ex. 22 (Certificate of Change (5/30/2019)).  On May 31, 2019, Dietz filed a Certificate of Change naming herself as Resident Agent, and on June 17, 2019, filed a Certificate of Dissolution dissolving NSM.  Exs. 23 (Certificate of Change (5/31/2019)), 24 (Certificate of Dissolution (6/17/2019)).  Today, LARA reports that NSM's Resident Agent is Dietz; the President, Treasurer, and Secretary are Stern; and the organization was dissolved on June 18, 2019.  Ex. 25 (LARA summary).

After Colucci became Commander and reincorporated NSM in Florida, NSM's operations continued essentially just as before.  The "inner circle" of NSM after incorporation in Florida remains Colucci, Schloar, and Hughes, who had all been NSM members and officers for years.

Colucci Dep. 70, 73–74, 76, 93–94.  Dietz also remained "[i]nformally" an NSM member, responsible for managing NSM's website.  *Id.* at 195–97, 203–04.  Similarly, NSM's website (www.nsm88.org) continued operating and remained largely the same; only a "few items" were changed on the website when Colucci took over in March 2019.  *Id.* at 121–22.  Specifically, the "Contact Us" page today is identical to the December 2018 version, other than replacing a Detroit mailing address with a Florida mailing address, and replacing Schoep's contact information with Colucci's.  Exs. 27 (current NSM website), 28 (archived NSM website (12/17/2018)).  Even today, the website states that NSM was founded in 1974 and that "the NSM HQ has relocated and has a new address."  Ex. 29 (NSM website).[7]  In October 2019, Stern passed away from cancer.  Ex. 10.

## VI.     NSM Continued Its Failure to Comply with Its Discovery Obligations

As the battle for control of NSM played out, NSM, now represented by ReBrook, steadfastly maintained its noncompliance with its discovery obligations.  Four days after the Court accepted ReBrook's appearance for NSM on April 8, 2019, ECF No. 461, Plaintiffs emailed ReBrook to inform him that NSM had failed to disclose numerous potentially responsive social media accounts and electronic devices (of which Plaintiffs provided examples); requested that NSM complete a supplemental certification listing all potentially responsive accounts and devices; noted that NSM had identified Schoep as "the sole custodian of documents" for NSM; and requested that NSM disclose any additional custodians of responsive documents.  ECF No. 547-8 at 3.

On April 9, 2019, ReBrook responded, claiming that "any request for electronic communications **before** the Unite the Right Rally was announced and **after** the Rally ended are irrelevant," because "one cannot incite violence in the past."  *Id.* at 2.  ReBrook asserted that, because

---

[7] At his deposition, Colucci handed Plaintiffs business cards for NSM that he conceded he had created the week before the deposition.  *Id.* at 247–48.  The business cards list the same nsm88.org URL that has existed for years and the chiefofstaff@nsm88.org email address that Colucci had used prior to taking over as Commander.  Ex. 26 (NSM business cards).

Schoep "is the only named defendant for the NSM, . . . only materials within his possession and control are subject to discovery." *Id.* ReBrook cited no legal authority for either proposition. *Id.* In response, on April 9, 2019, Plaintiffs explained that "documents and communications about the events at issue are highly relevant, whenever they were created," and that NSM is required to turn over all responsive documents to Plaintiffs, "even if those documents are in the possession of custodians other than Mr. Schoep." *Id.* at 1. Receiving no response, Plaintiffs followed up on April 23, 2019, again asking ReBrook whether NSM intended to produce documents from any custodian aside from Schoep. ECF No. 547-11 at 4. ReBrook responded that "[i]t's clear to me that what your plaintiffs want is to expose NSM's members and/or donors so that they can be doxed for all time," and that, while NSM members are "a bunch of racists," Plaintiffs did not have the right to take discovery of NSM members' documents. *Id.* at 2. ReBrook added that he "cannot give you what I don't have, even if you really want me to. Mr. Schoep - my only flesh & blood, human client - literally does not control several of the things you are requesting," and that "entities which are not named defendants in this suit are not subject to your discovery requests." *Id.*

On May 3, 2019, after a conference before the Court, Plaintiffs again asked ReBrook "whether there are any additional custodians in possession of responsive documents" for NSM. *Id.* at 1. On May 13, 2019, ReBrook asked Plaintiffs "to verify if we're in compliance," noting that Schoep had provided the Vendor with his computer for imaging but saying nothing about any further potential NSM custodians. ECF No. 547-17 at 6. The same day, Plaintiffs responded that "it remains our position that there must be custodians beyond Mr. Schoep" who possess responsive content, and cited, for example, Brian Culpepper. *Id.* at 5. Hearing nothing, Plaintiffs yet again followed up on June 11, 2019, citing relevant case law and inquiring "whether there are any custodians beyond Mr. Schoep who will be producing documents on behalf of NSM." *Id.* at 4.

10

On June 12, 2019, ReBrook replied, "The only actual human person I have a relationship with is Mr. Schoep.  I do not know any of these other people.  My relationship with NSM . . . is derivative of my relationship with Mr. Schoep.  Am I being asked to develop new relationship's [*sic*] with additional natural persons? *Id.* at 3.  That same day, Plaintiffs responded and reiterated, citing authority, that an organization has "a duty . . . to conduct a reasonable investigation," again pointing to Culpepper as a likely custodian of documents.  *Id.* at 2–3.  Plaintiffs again asked Re-Brook whether he would produce documents for any custodians aside from Schoep.  *Id.* at 3.

On June 13, 2019, ReBrook asked Plaintiffs, "[d]o you have a complete list of persons I am expected to query for information, or is it up in the air?" *Id.* at 2.  When Plaintiffs informed ReBrook that they could not advise him how to investigate potential custodians, ReBrook replied on June 17, 2019, "If you have specific, human persons I am expected to query for discoverable information other than my only human client, Jeff Schoep, please let me know.  I believe there have been hundreds if not thousands of NSM members over the years, so in order to avoid a vague-ness objection, I'm going to need to know who you expect me to contact." *Id.* at 1.  On August 22, 2019, Plaintiffs again asked ReBrook whether he intended to conduct any investigation.  ECF No. 547-18.  Plaintiffs directed ReBrook to Culpepper as well as to Colucci, whom Plaintiffs had discovered had controlled NSM's email system.  *Id.*  ReBrook did not respond.

On August 28, 2019, ReBrook emailed the Court.  ReBrook first "respectfully remind[ed] the Court that I have only one actual, human client, Mr. Jeff Schoep."  ECF No. 547-19 at 1.  ReBrook stated that when he entered an appearance for NSM, he "did not fully appreciate or un-derstand" that Schoep "would soon be leaving the NSM," and that "in truth, I only have privity of contract with Mr. Schoep."[8]  *Id.*  ReBrook repeated that "the only human client I have is Mr.

---

[8] On August 12, 2019, Schoep purportedly severed ties with the white-supremacist movement.  He wrote on his website:  "I realized many of the principles I had once held so dearly and sacrificed so much for were

Schoep," and claimed that Schoep "has provided everything he's been asked to provide that is within his control.  Obviously he cannot provide things that he does not control or own."  *Id.*  ReBrook claimed that he "attempted to reach [Colucci and Culpepper] through my client without success," but said nothing about any attempts to reach them himself or locate additional custodians. *Id.*  As of that date, Plaintiffs still had received no responsive documents from NSM.

On September 3, 2019, Plaintiffs moved to compel NSM to identify custodians of discoverable documents and to produce a representative for a deposition regarding NSM's conduct in pretrial discovery.  ECF No. 547.  NSM filed a brief in opposition more than six weeks later, well after the deadline, ECF No. 575, but then informed the Court that it in fact consented to the deposition, ECF No. 581.  On October 28, 2019, the Court granted Plaintiffs' motion, and ordered Colucci to appear for a deposition.  ECF No. 582.

As the deposition approached, NSM and ReBrook continued to flout NSM's discovery obligations.  In October 2019, Plaintiffs served a Second Set of Interrogatories on NSM.  Ex. 30 (Plaintiffs' Second Set of Interrogatories (10/29/2019)).  NSM's responses, provided by ReBrook to Plaintiffs, were undated, unsigned, and unsworn by any representative of NSM.  Ex. 31 (NSM Responses).  They were also plainly deficient and absurd on their face.  For example, in response to a request to identify NSM members who had attended Unite the Right (and who would be custodians of relevant documents), NSM stated that it "lacks information or knowledge sufficient to answer . . . .  Due to the time that has transpired since the events described, Defendant NSM has no memory of such incident or events . . . ."  *Id.* at 6.  In fact, NSM responded to no fewer than *eight* interrogatories that it had "no memory" of Unite the Right.  *Id.* at 6–9.

---

wrong.  After wrestling with my conscience, over how to best set things right, I realized that I cannot just sit back while the world continues to burn in the flames of hatred.  Instead of remaining silent, I have decided to speak out and help others.  It is now my mission to be a positive, peaceful influence of change and understanding for all of humanity in these uncertain times."  Ex. 10.

VII.    **Colucci's Deposition Revealed That NSM Has Withheld Numerous Responsive Documents, Accounts, and Devices**

On December 10, 2019, Plaintiffs deposed Colucci.  Colucci confirmed under oath what had already become obvious:  NSM had done no meaningful investigation into potential custodians of record, had withheld copious responsive documents, and had failed to disclose numerous responsive devices and social media accounts.  Indeed, Colucci testified about an abundance of relevant and responsive materials to which NSM has denied Plaintiffs any access.

A.    **Colucci Confirmed That NSM Conducted No Meaningful Investigation into Custodians or Responsive Documents Despite the Order Requiring It to Do So**

Despite being Commander of NSM, Colucci admitted that he—and to his knowledge, Kolenich, ReBrook, and Schoep—had never conducted any investigation or spoken to other NSM members to locate responsive documents.  Colucci Dep. 169–70, 183, 212.  Colucci never searched his own devices or accounts, and neither Kolenich nor ReBrook had ever provided Colucci with Plaintiffs' discovery requests or asked him to produce any documents or devices.  *Id.* at 24–25, 34, 118–19, 163–65, 167–68, 199–200, 248–49.  Similarly, no one, Schoep, Colucci or otherwise, made other NSM members aware of their preservation obligations.  *Id.* at 92–94.  Yet Colucci could easily identify numerous NSM members who should have been asked for documents and made aware of their preservation obligations, including Culpepper, Dietz, Hughes, Parker, Schloar, Tefft, media researcher "Polly Esther," former NSM Media director Kevin James (also known as Scott Hume), assistant chief of staff Aryn Rouse, and former chief of staff Butch Urban.  *E.g.*, *id.* at 31–32, 48, 58–59, 69–74, 114–17, 139, 183–86, 189–90, 198, 216.  Colucci was also unaware of any steps NSM had taken to confirm the accuracy or completeness of its discovery responses. *Id.* at 212–13, 216–18.  On reviewing Plaintiffs' discovery requests, Colucci admitted, "I have no idea whether or not we're in compliance with any of this stuff, to be honest with you."  *Id.* at 172.

**B.   Colucci Confirmed That NSM and Schoep Have Failed to Produce Numerous Responsive Documents**

Colucci's deposition also confirmed that NSM has possessed and withheld numerous responsive documents.  On May 14, 2019, Colucci informed his VK followers that he had possession of NSM documents but intended to refuse to produce them to Plaintiffs:

> White brothers and sisters, your information is not secure.  Any and all individuals have been court ordered to hand over all electronic devices that are named in the Charlottesville lawsuit.  Most of these groups/individuals have already submitted all of their electronic devices, VK login information, and email account logins in order to comply with a federal court order.  This is the entire reason I have insisted on not collecting anybody's information that joins the NSM.  I am not named as a defendant in that lawsuit and do not have to answer to uncle Zog, nor can I at this point because I was not there.

Ex. 32 (Colucci VK post (5/14/2019)).  Colucci told his followers in the same post that "*I and I alone am the only person for the last two years that has had access to any and all NSM sensitive material*."  *Id.*  Colucci testified under oath that this "sensitive material," including information relating to NSM members, had existed in hard copy and electronic form, but that he had destroyed it (without producing it) on June 18, 2019.  Colucci Dep. 98–100.[9]

Colucci testified that NSM members have communicated with each other about Unite the Right and this lawsuit via various means, including phone calls, email, text messages, the encrypted messaging service "Signal," Gab, Facebook, and VK, including "VK Messenger."  *Id.* at 27–28, 30–33, 83–84, 87–88, 95–96, 107–12, 122–23, 126–27, 198, 241–42.  Colucci and Schoep have communicated "extensively"—approximately every day as recently as October 2019—about "everything pretty much," including the litigation, Unite the Right, and NSM's participation.  *Id.* at 25–27, 30, 60–64, 66–67, 244.  Colucci also communicated with Defendants Kessler, Heimbach,

---

[9] Plaintiffs reserve all rights to bring a spoliation motion against NSM for this and other purposeful destruction of evidence.

Hill, and Tubbs. *Id.* at 31–33, 63–64, 77–79, 111–12, 230–32, 236–38, 256–57; *see* Ex. 33 (Colucci email to Kessler (8/17/2018)). And Colucci has been in "daily" communication with Schloar about Unite the Right and the litigation. Colucci Dep. 31–33, 74, 111–12, 256–57.

Certain NSM members and state branches have maintained official email addresses at nsm88.org, including Colucci, Schoep, Heimbach, and Hughes. *Id.* at 80–81, 125–28, 230–32.[10] Colucci has sent a weekly newsletter since at least mid-2018, "probably" discussing Unite the Right, and maintains an archive of newsletters. *Id.* at 155–57, 246.[11] NSM, including Colucci personally, hosts daily podcasts on the platform BlogTalkRadio, including coverage of NSM, Unite the Right, and the litigation; these are also archived. *Id.* at 17–19, 135–37, 146–47, 153–55. NSM also maintains a voicemail hotline service. *Id.* at 140.[12] NSM has produced to Plaintiffs none of these communications among NSM members about topics relevant to this litigation.

At the end of his deposition, Plaintiffs' counsel asked Colucci to produce his responsive devices and messages. Colucci refused. Colucci made clear that he would not produce any communications without Court intervention: "I do not want my Fourth Amendment infringed upon [*sic*]. So I do not want you and your lawyers going through my personal assets without a court order." *Id.* at 267. ReBrook, who was telephonically present at the deposition, refused to instruct Colucci to turn over his documents and devices to Plaintiffs. *Id.* at 265, 270.[13]

---

[10] NSM chose the "ProtonMail" service for its official nsm88.org email addresses because ProtonMail was "encrypted," and because the FBI had previously served a subpoena on Gmail with which Gmail had complied—"one more reason why we got out of Gmail." *Id.* at 81–82.

[11] NSM previously sent newsletters via a Yahoo Groups list with 8,500 members. *Id.* at 157–58.

[12] Colucci also testified about other unproduced documents. For example, at a meeting in April 2016, various organizations, including NSM, "agreed to work together for a common goal" in a signed document last in Schoep's possession. *Id.* at 219, 225. Colucci also sent a letter to Jacob Goodwin—found guilty of malicious wounding for attacking DeAndre Harris in Charlottesville on August 12, 2017—in jail to "show him support." Colucci Dep. 261–63; *see* Ian Shapira, *White supremacist is guilty in Charlottesville parking garage beating of black man*, Wash. Post (May 2, 2018, 9:30 AM), https://tinyurl.com/y9sptvnz.

[13] Colucci's testimony also raised concerns about NSM's preservation of documents. Colucci does not back up his phones; when he upgrades phones, he prefers to "scrap" everything rather than save any data. *Id.* at 84–85, 240–41 ("Usually when I switch phones I just delete everything off of it. . . . I don't generally

Colucci testified about a single occasion on which he attempted to comply with NSM's obligations.  On September 6, 2019, Colucci gave ReBrook the credentials to 30 NSM-affiliated Gmail accounts allegedly containing "thousands of emails."  *Id.* at 35–37, 91–92, 166–69; *see* Ex. 34 (Colucci email to ReBrook (9/6/2019)).   Astoundingly, ReBrook did not disclose them until Plaintiffs specifically asked for them after the deposition—over two months after Colucci had sent them to ReBrook.  Ex. 34 (ReBrook email to Bloch (12/11/2019)).  Plaintiffs provided these credentials to the Vendor, but the Vendor was unable to collect *any* of the accounts due to a combination of incorrect passwords and two-factor authentication and verification code issues (and, in two cases, unrecognized addresses). Ex. 35 (Vendor email to Barkai (2/27/2020)).  Colucci confirmed that he has done nothing further to comply with Plaintiffs' discovery requests.  Colucci Dep. 169.

### C.   Colucci Confirmed That NSM Has Withheld Responsive Devices and Accounts

Colucci's testimony confirmed that NSM's disclosure of devices and accounts through its certification and discovery responses is woefully deficient.  For example, NSM did not disclose numerous accounts identified above, including nsm88.org email addresses and Gmail accounts; various NSM members' accounts on Signal, VK, Facebook, and Gab; and NSM's Yahoo Groups and BlogTalkRadio accounts.  *See supra* Part VII(B).[14]  Similarly, NSM identified only a single responsive device: an iPhone 6 belonging to Schoep.  ECF No. 475-7 at 2; ECF No. 547-5 at 1. However, Colucci has used multiple phones to communicate with Schoep and other members, and

---

back my phones up at all.").  Colucci testified that it was a "strong possibility" that he had text messages with Schoep that "weren't saved."  *Id.* at 112–14.  Colucci deleted Signal messages with Heimbach, as well as Heimbach's and Schoep's nsm88.org email addresses.  *Id.* at 83–84, 128–29, 141–42.

[14] While NSM at least identified a few accounts in its responses to the First Set of Interrogatories, its responses to the Second Set of Interrogatories were even more blatantly deficient by asserting that NSM "lacks information or knowledge sufficient" to "[i]dentify each method of communication used by Members of Your organization from January 2017 to January 2018 to Communicate with each other."  Ex. 31.

Schoep used a new phone to communicate with Colucci regarding Unite the Right as recently as October 2019. *E.g.*, Colucci Dep. 241–42, 251–54. Colucci also used three computers to communicate with members and to create NSM-related documents. *Id.* at 100–02, 118–19, 241, 246.

In light of these obvious deficiencies, Colucci admitted that NSM's discovery responses were incomplete. *See, e.g.*, *id.* at 177–78, 217–18. Similarly, NSM's refusal to identify even a single NSM member who attended Unite the Right, Ex. 31, was facially absurd given Colucci's testimony that several members attended, *id.* 114–15, 183–86, 189–90, 216. Colucci also admitted that NSM's response to an interrogatory asking it to "[i]dentify all persons (natural or non-natural) with whom you communicated concerning" Unite the Right was incomplete. *Id.* at 179–81.[15]

## VIII.   NSM Has Still Failed to Comply with Its Discovery Obligations

After Colucci's deposition, Plaintiffs promptly wrote to ReBrook and requested, *inter alia*, that NSM: 1) produce to the Vendor Colucci's iPhones and computers[16]; 2) provide to Plaintiffs a new certification listing all accounts and devices that may contain any potentially relevant documents; 3) provide the Vendor accurate credentials to each of the accounts listed on the new certification; 4) identify the NSM representative with whom ReBrook consulted to answer Plaintiffs' Second Set of Interrogatories; 5) swear to the contents of the responses to the Second Set of Interrogatories by the NSM authorized representative; 6) provide Plaintiffs updated responses to Plaintiffs' document requests and both sets of interrogatories; 7) provide to the Vendor Schoep's new

---

[15] Colucci's deposition also revealed that Schoep and Dietz have continued to participate in NSM's activities, even as Schoep claims to have left the white-supremacist movement. Ex. 10. For example, on October 13, 2019, Schoep warned Colucci via text message that someone who was calling into Colucci's podcast with death threats was "baiting" him and was actually a federal informant. Colucci Dep. 242–43; *see id.* at 245. Dietz, Schoep's girlfriend, has "[i]nformally" remained a member of NSM and manages NSM's website. As recently as December 2, 2019, Colucci asked Dietz to update the website. *Id.* at 195–99, 203–04. Yet Schoep claims to have renounced white supremacism. Ex. 10.

[16] Colucci testified he owned an "Acer" computer and a "new computer" that he "went out and got" because "people were saying that I was going to have to turn over my electronic devices." Colucci Dep. 100–01.

phone with which he had been messaging Colucci; and 8) conduct immediately an investigation for responsive documents from NSM custodians. Ex. 36 (Phillips email to ReBrook (12/11/2019)).

ReBrook refused to comply with nearly all of Plaintiffs' requests. Ex. 37 (ReBrook email to Bloch (12/17/2019)).[17] ReBrook responded that as to Colucci's devices, "Mr. Colucci respectfully declines to co-operate with Plaintiff's request[s] . . ." *Id.* ReBrook maintained that "neither [Colucci] or his Florida domestic non-profit corporation 'The National Socialist Movement Corporation'" is a party to this litigation. *Id.* On that basis, Colucci refused to "consent to any discovery requests in regards to the now dissolved Michigan Non-Profit Corporation 'National Socialist Movement.'" *Id.* ReBrook claimed that Schoep (though not NSM) "has complied to the best of his ability all that has been asked for by the Plaintiff's [*sic*] and by the Court." *Id.* ReBrook asserted that there was no reason for Schoep to provide his new phone to the Vendor. ReBrook informed Plaintiffs that Dietz was the "current Authorized Representative of the National Socialist Movement, a now dissolved Michigan non-profit corporation," and that Dietz had provided NSM's responses to the Second Set of Interrogatories. *Id.* ReBrook provided Plaintiffs with a new copy of NSM's responses to the Second Set of Interrogatories, now signed by Dietz but otherwise substantively identical to the first version (and still unsworn). Ex. 38 (NSM responses to Second Set of Interrogatories). ReBrook also refused to provide Plaintiffs with a new certification. Ex. 37.

On February 5, 2020, the deadline for Defendants to produce all discoverable material from the Vendor to Plaintiffs passed. ECF No. 597. NSM has produced no documents to Plaintiffs.

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). A

---

[17] ReBrook claimed that, "[d]ue to the change in legal representation," he lacked access to NSM's previously submitted certification and discovery responses, and could not provide updated responses. Ex. 37.

party is entitled to request "any designated documents or electronically stored information" in the producing party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A producing party has "control" where it "has the legal right or ability to obtain the documents from another source on demand." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 501 (D. Md. 2000).[18]

A "party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests." *Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010). Attorneys must make a "reasonable effort to assure that [their] client has provided all the information and documents responsive to the discovery demand." *Poole*, 192 F.R.D. at 503. The Federal Rules "impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests." *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, No. 1:15-cv-00129-MR, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016).

## ARGUMENT

## I.    NSM Is Subject to Plaintiffs' Discovery Requests and This Court's Orders

NSM and Colucci have attempted to evade NSM's discovery obligations by claiming that NSM as incorporated by Colucci in Florida ("NSM Florida") is a separate entity from NSM as operated by Schoep in Detroit ("NSM Detroit"), and that NSM Florida is not a Defendant and not subject to any discovery obligations. *E.g.*, Colucci Dep. 37 (distinguishing "the National Socialist Movement that's based out of Detroit, Michigan, and was ran by Jeff Schoep prior to me taking over" from "the National Socialist Movement Corporation, which is now based out of Florida"); *id.* at 213 ("MR. ReBROOK: . . . I'm just trying to figure out how Mr. Colucci is supposed to answer questions about what a separate organization has or has not done."); *id.* at 264–65 (Colucci

---

[18] All alterations, emphases, citations, internal quotation marks, and subsequent history are omitted.

refusing to abide by preservation obligations that applied to "NSM out of Michigan"); Ex. 32 ("I am not named as a defendant in that lawsuit . . . ."); Ex. 37 (maintaining that Colucci and "his Florida domestic non-profit corporation 'The National Socialist Movement Corporation' are not a party to this litigation" and refusing "to consent to any discovery requests in regards to the now dissolved Michigan Non-Profit Corporation 'National Socialist Movement'"). But the law is clear that NSM cannot escape its discovery obligations simply by reincorporating as a new entity.

A corporation assumes the liabilities of a predecessor where "the successor may be considered a 'mere continuation' of the predecessor[.]" *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992); *see Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 204–05 (4th Cir. 1997); *Akzo Nobel Coatings, Inc. v. Pearl Ave. USA, Ltd.*, No. 2:09CV540, 2010 WL 11564919, at *2–3 (E.D. Va. Oct. 6, 2010).[19] Courts apply the "mere continuation" doctrine to ensure that entities cannot escape liability by reincorporating under a new name. *See, e.g.*, *Hern v. Telsys Int'l, Inc.*, 139 F.3d 889 (4th Cir. 1998); *Carrillo v. Borges Constr., LLC*, No. GJH-13-641, 2016 WL 5716186, at *4 (D. Md. Sept. 30, 2016) ("mere continuation" exception applies to "reincarnation" of corporation). Here, NSM Florida is a "mere continuation" of NSM Detroit and thus subject to NSM's discovery obligations.

*First*, the two organizations have "identity of ownership (the most important factor)." *Charles Schwab & Co. v. WS Wealth Mgmt., LLC*, No. 1:16CV0352 (AJT/IDD), 2016 WL 7033699, at *4–5 (E.D. Va. Dec. 2, 2016).[20] Colucci became Commander of NSM Detroit in March 2019 and remains Commander of NSM Florida; the "inner circle" of NSM management

---

[19] A "mere continuation" may be proven by preponderance of the evidence. *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 407 (Va. 2017).

[20] "[A]bsolute identity" of ownership "is not required." *Halsey v. Urban Telecomms. Corp.*, 95 F.3d 41 (4th Cir. 1996) (per curiam, unpublished). A sufficient "degree of overlap" is enough. *Waterford Inv. Servs., Inc. v. Bosco*, No. 3:10CV548-REP, 2011 WL 3820723, at *17 (E.D. Va. July 29, 2011).

has also remained largely the same.  *See supra* Background, Part V.  Because NSM "appears to have retained the core of its management," notwithstanding Schoep's departure, "the 'key element' in finding a mere continuation is thus satisfied."  *Free Bridge Auto Sales, Inc. v. Focus, Inc.*, No. 3:08-CV-00002, 2014 WL 521661, at *4 (W.D. Va. Feb. 4, 2014) (Moon, J.).

*Second*, "the nature and scope of [the] two businesses," *Charles Schwab*, 2016 WL 7033699, at *5, are identical.  NSM promotes white people's rights.  For example, NSM's website, nsm88.org, today contains exactly the same description of NSM's "core beliefs" that it did prior to reincorporation in Florida in May 2019—"defending the rights of white people everywhere, preservation of our European culture and heritage, strengthening family values, economic self-sufficiency, reform of illegal immigration policies, immediate withdrawal of our national military from an illegal Middle Eastern occupation, and promotion of white separation."  Exs. 2, 39 (archived NSM website (4/16/2019)).

*Third*, "two separate entities" do not "remain."  *Charles Schwab*, 2016 WL 7033699, at *5. NSM Florida was incorporated on May 24, 2019; NSM Detroit was dissolved on June 18, 2019. *Supra* Part V.  The "fact that [NSM Detroit] closed its doors supports [the] conclusion that [NSM Florida] is simply a continuation of the old firm in new clothing."  *Kaiser Found.*, 123 F.3d at 208.

*Fourth*, "the new company continues in the same trappings as the old company," *Charles Schwab*, 2016 WL 7033699, at *5, including the same title, website, and social-media accounts (including podcasting and voicemail hotline service).  *Supra* Part V.  The website has existed for at least 20 years, was materially identical before and after the reincorporation in Florida, and even confirms that NSM "was founded in 1974."  Ex. 2; *Free Bridge Auto Sales*, 2014 WL 521661, at *4 (Moon, J.) ("When Defendant's website trumpets its twenty four years in business, it simply strains credibility to suggest anything other than continuation.").  NSM Florida differs from NSM

Detroit only in the physical location of incorporation—but this distinction is irrelevant given that NSM is a membership organization, not dependent on physical assets. Indeed, NSM's website acknowledges that "the NSM HQ has relocated and has a new address." Ex. 29.

Because NSM Florida is a "mere continuation" of NSM Detroit, NSM and Colucci are subject to this Court's orders and the same discovery obligations as all Defendants in this lawsuit.

## II.   NSM Should Be Compelled to Produce Electronic Devices, Social Media Accounts, and Documents Responsive to Plaintiffs' Discovery Requests

Two years after first serving their discovery requests and nearly a year after ReBrook first appeared on behalf of NSM, Plaintiffs still have zero documents from NSM. After NSM's non-compliance with discovery and ReBrook's continued refusal to conduct a custodial investigation, Plaintiffs were forced to move to compel to seek a deposition of Colucci to identify custodians of NSM's documents. Colucci's deposition confirmed what was already apparent: no good-faith investigation had occurred; NSM had failed to disclose numerous responsive devices and accounts; and NSM has scores of relevant documents it has withheld. Plaintiffs respectfully request that NSM be compelled to produce all responsive documents, devices, and accounts within Colucci's possession and to conduct an investigation into relevant custodians, including collecting and producing devices and credentials from all individuals associated with NSM, as described below.

### A.   NSM Should Be Compelled to Produce Colucci's Electronic Devices, Social Media Accounts, and Responsive Documents

Under the Federal Rules, Plaintiffs are entitled to discovery into all non-privileged documents relevant to their claims and within NSM's control. Fed. R. Civ. P. 26(b)(1), 34(a)(1). Defendants, including NSM, are required to "make a reasonable effort to search for and produce" such documents. *Moore*, 723 F. Supp. 2d at 173. This obligation extends to Defendants' attorneys, including ReBrook. *See Poole*, 192 F.R.D at 503. Furthermore, the Court has repeatedly and

specifically ordered all Defendants, including NSM, to disclose and produce all devices and ac-

counts containing potentially relevant documents so that the Vendor can image those devices and

accounts and collect responsive documents for production to Plaintiffs.  *E.g.*, ECF Nos. 379, 383.

Here, NSM has withheld and steadfastly refused to disclose numerous devices, accounts,

and documents that are non-privileged and relevant to Plaintiffs' claims, including Colucci's three

computers and multiple phones, Schoep's new phone, and other NSM members' devices; numer-

ous nsm88.org email addresses and social-media accounts belonging to Colucci and other NSM

members; and numerous communications exchanged among NSM members, including Colucci,

Schoep, and Dietz, as recently as December 2, 2019.  *See supra* Background, Part VII.  Even after

Colucci's court-ordered deposition, both Colucci and ReBrook explicitly refused to comply with

Plaintiffs' discovery requests.  *E.g.*, Colucci Dep. 265, 267, 270; Ex. 37.

Under such circumstances, there can be no doubt that NSM has failed to "make a reasona-

ble effort to search for and produce" responsive documents, *Moore,* 723 F. Supp. 2d at 173, and

that ReBrook has failed to make a "reasonable effort to assure that [his] client has provided" all

responsive documents, *Poole*, 192 F.R.D. at 503.  The Court should therefore compel NSM to

produce to the Vendor for imaging and collection all electronic devices in Colucci's possession

that may contain responsive material, including Colucci's three computers and phone.  The Court

should also compel NSM to produce to the Vendor the credentials for all email and social media

accounts in Colucci's possession, including for the accounts listed in Appendix A.

B.     **NSM Should Be Compelled to Conduct an Investigation into NSM Custodians, Including Collecting and Producing Documents from All Individuals Known to be Formerly or Currently Associated with NSM**

As Plaintiffs have repeatedly informed ReBrook, the Federal Rules impose a "duty upon

companies responding to discovery to conduct a reasonable investigation, make reasonable inquir-

ies of its employees, and fully respond to interrogatories and document requests."  *Selee Corp.*,

2016 WL 4546446, at *3; *cf. Terry v. Modern Inv. Co.*, No. 3:04-cv-00085, 2006 WL 2434264, at

*6 (W.D. Va. Aug. 21, 2006) (Moon, J.) (sanctioning defendants that were "sole parties who had

authority to obtain [entity] records").  Here, NSM has repeatedly refused to conduct any investi-

gation, other than asking Plaintiffs to identify appropriate custodians and asking Schoep to contact

Culpepper and Colucci.  *E.g.*, ECF No. 547-19 at 1.  Without doing so, NSM cannot claim that it

has satisfied its obligations, and its claims to have "no memory" of Unite the Right, already absurd,

are entitled to no weight.  *Hickman*, 152 F.R.D. at 223 ("Wal-Mart has a duty to make a reasonable

search of its business records and make a reasonable inquiry of its employee and agents in order

to obtain the information asked in Plaintiff's interrogatories.  Only after doing such, can the De-

fendant then aver that it has no knowledge as to the information requested in the interrogatory.").

ReBrook's continued insistence that he only has a "relationship" with one "human client"

should be rejected.  *3M Innovative Props. Co. v. Tomar Elecs.*, No. 05-cv-756-MJD, 2006 WL

2670038, at *6 (D. Minn. Sept. 18, 2006) ("Discovery requests served on a company solicits in-

formation known to the company, not solely information known by the president, CEO, or other

person directed to respond to the discovery requests.  Accordingly, a reasonable investigation by

a company would include an inquiry of a company's employees for relevant information.").  Re-

Brook is required to investigate and inquire with other NSM members who may have discoverable

information and collect documents from those individuals.  *Morris v. Lowe's Home Ctrs., Inc.*,

No. 1:10-cv-388, 2012 WL 5347826, at *4–5 (M.D.N.C. Oct. 26, 2012); *Poole*, 192 F.R.D. at 503.

The Court should compel NSM to conduct an investigation into all individuals currently or

formerly associated with NSM (including but not limited to those individuals listed in Appendix

B); to collect all relevant electronic devices and social-media credentials from those individuals

(including but not limited to the credentials for the accounts identified in Appendix C); and to

24

produce them to the Vendor for imaging and collection. *Morris*, 2012 WL 5347826, at *4–5 (granting motion to compel defendant to make "reasonable inquiry" of employees with relevant knowledge); *3M Innovative Props.*, 2006 WL 2670038, at *6 (granting sanctions after company president "did not inquire into whether other employees within the company had potentially relevant material, but merely looked at his own email and files," among other discovery abuses, and holding that "reasonable investigation by a company would include an inquiry of a company's employees for relevant information").

Finally, the Court should order NSM to pay Plaintiffs' reasonable expenses, including attorneys' fees and costs, incurred in prosecuting this motion. *See* Fed. R. Civ. P. 37(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court compel NSM to:

1.  Produce all electronic devices within Colucci's possession to the Vendor for imaging and collection, including but not limited to all of Colucci's computers and phones.

2.  Disclose all email and social-media accounts and credentials within Colucci's possession (including but not limited to the credentials for the accounts in Appendix A) to the Vendor for imaging and collection.

3.  Produce immediately to Plaintiffs without opportunity for Colucci's review every document from his devices and email and social-media accounts that hits on a search term.

4.  Conduct an investigation into all potentially relevant custodians, including but not limited to the individuals known to be currently or formerly associated with NSM who are listed in Appendix B. Such investigation must include a good-faith effort to collect all electronic devices and social-media credentials that may contain responsive materials from all such individuals, including but not limited to the credentials for the accounts listed in Appendix C, and producing such devices and credentials to the Vendor.

5.  Pay Plaintiffs' reasonable expenses, including attorneys' fees and costs, incurred in prosecuting this motion.

Dated: March 11, 2020

Respectfully submitted,

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

I further hereby certify that on March 11, 2020, I also served the following non-ECF partic-
ipants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Robert Azzmador Ray
azzmador@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com


*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*

2

# APPENDICES

FILED UNDER SEAL