CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

MAR 13 2020

JULIA C. DUDLEY, CLERK
BY: /s/ J. Jones
DEPUTY CLERK

Matthew Heimbach
PO Box 278
Steubenville, OH 43592

Returned from USPS as undeliverable.

Doc. # 610

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
12/23/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JASON KESSLER, *et al.*, <br><br> *Defendants*. | CASE NO. 3:17-cv-00072 <br><br> ORDER FINDING ELLIOTT KLINE REMAINS IN CIVIL CONTEMPT; <br><br> ORDER FOR ELLIOTT KLINE TO SURRENDER TO CUSTODY OF THE U.S. MARSHAL <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court further to this Court's Order Finding Elliott Kline in Civil Contempt issued on November 27, 2019 (Dkt. 599), and the Second Civil Contempt Hearing for Elliot Kline, held on December 16, 2019 (Dkt. 609).

This Court had warned Kline that in the days leading up to his Second Civil Contempt Hearing, his efforts "should demonstrate a single-minded focus on purging himself of contempt." Dkt. 599 at 14 (¶ 39). By any measure, Kline fell far short.

Kline has failed to follow this Court's clear instructions how to purge himself of contempt in various respects. Where Kline did act, he did not do so with haste. In fact, he waited ten days after this Court found him in contempt to serve his long-overdue discovery responses on Plaintiffs. And those responses were woefully deficient. Nearly two years after Plaintiffs served requests for documents and interrogatories on Kline, after months of litigation, motions for sanctions, and this Court's finding Kline in contempt, he answered Plaintiffs' questions in a half-page e-mail, and he turned over *one* document. Moreover, it is readily apparent that Kline's answers omitted material information.

1

At bottom, Kline's halfhearted and sluggish efforts offer little indication that he intends to meaningfully participate in discovery or in this case going forward. Rather, they demonstrate that the sanctions imposed thus far of $200 per day of non-compliance have not been adequate to coerce Kline into complying with the orders of Judge Hoppe and this Court. More stringent sanctions are required.

For the reasons below and as well as those expressed at the Second Civil Contempt hearing, this Court finds that Elliott Kline is and remains in civil contempt of court, and that he has not taken the steps required to purge himself of contempt. This Court finds the following sanctions are warranted and are no greater than necessary to coerce Kline into compliance with Court orders:

To coerce Kline into compliance with court orders, and to begin compensating Plaintiffs now for their losses caused by Kline's contumacy, this Court **ORDERS** Kline to pay $600 to Plaintiffs, which shall be due to Plaintiffs immediately and no later than **December 30, 2019**, at **5:00 P.M. EST**, which sum reflects three days of the remedial fines Kline has incurred to date as a result of his non-compliance.

This Court continues to impose upon Kline (and in favor of Plaintiffs) a remedial fine of $200 per day of his non-compliance, which fines began to be assessed starting December 2, 2019, and have continued to be incurred on each day thereafter—with the exception of the dates between December 16, 2019 and the date of the issuance of this Order.

Finally, this Court **ORDERS** Kline to appear at the United States Courthouse in Charlottesville, Virginia, on **Monday, January 6, 2020**, at **12:00 P.M. EST**, and surrender himself to the custody of the United States Marshals Service. Kline shall bring with him any and all documents, electronic devices, credentials to access e-mail and social media accounts, and materials he would need to purge himself of contempt. Kline will have the opportunity to avoid

additional fines and incarceration if Kline purges himself of contempt beforehand; but, absent further written order from this Court, he shall surrender himself as directed on January 6, 2020.

## Background

1. On November 25, 2019, this Court found by clear and convincing evidence that Elliott Kline was in contempt of court for his pattern of serious, repeated violations of numerous discovery orders issued both by this Court and by U.S. Magistrate Judge Hoppe. Dkt. 600 at 73–77 (First Civil Contempt Hr'g Tr.).

2. At that Civil Contempt Hearing, this Court announced that, in order to bring Kline into compliance with these Orders, it would impose monetary sanctions on Kline of $200 per day of his continued non-compliance, which would be payable to Plaintiffs. Dkt. 600 at 77–78; *see also id.* at 59–60. But this Court suspended the fines until December 2, 2019, giving Kline time to comply before fines were incurred. *Id.* at 78–80.

3. And at that hearing, this Court further explained steps Kline was required to take in order to "bring [himself] into compliance" before December 2, in which case he would be able to avoid the remedial fines. Dkt. 600 at 78–79. These included, in no uncertain terms, that Kline "must respond in writing fully and completely to plaintiffs' first set of interrogatories and requests for production of documents," which Plaintiffs would send him again that day. Once completed, Kline "will send those to plaintiffs and e-mail them to the Court." *Id.*

4. This Court concluded the Civil Contempt Hearing by scheduling a Second Civil Contempt Hearing on December 16, 2019 at 11:00 a.m., "to determine whether [Kline has] come into compliance with the order." *Id.* at 80.

3

5.      On November 27, 2019, this Court issued a written Order Finding Elliott Kline in Civil Contempt ("Civil Contempt Order"), that memorialized and expounded upon this Court's findings at the contempt hearing. Dkt. 599. In that Order, as at the hearing, this Court explained how Kline's conduct was contemptuous of numerous valid court orders. Dkt. 599 at 9–12 (¶¶ 23–34). This Court further ruled that "[t]o coerce Kline into compliance with court orders, this Court will impose upon Kline (and in favor of Plaintiffs) a remedial fine of $200 per day of his non-compliance, which fine will be suspended until December 2, 2019, to be incurred at 5:00 P.M. EST on that date and on each following day of non-compliance, until Kline purges himself of contempt." *Id.* at 2; *see also id.* at 13, 15–16.

6.      Under a heading entitled "Steps to Purge Himself of Contempt," this Court wrote, "[a]s this Court explained to Kline at the Contempt Hearing, he must complete the following steps to purge himself of contempt." *Id.* ¶ 41. These were:

   a. Kline must respond in writing fully and completely to Plaintiffs' First Set of Interrogatories and Plaintiffs' Requests for Production of Documents. When those are complete, Kline must send them to Plaintiffs and email them to this Court's Chambers account (moon.ecf@vawd.uscourts.gov) as well as that of Judge Hoppe (hoppe.ecf@vawd.uscourts.gov).

   b. Kline must provide the Third Party Discovery Vendor his email and social media credentials, including his passwords, for every account he identified on his Certification Form, or that should have been included on such Form originally.

      i. Kline must further conduct a diligent search of his electronic and any other records to confirm that the list of credentials he included on his Certification Form is complete, and to uncover his credentials (including passwords), to any of these accounts.

      ii. For any and all accounts to which Kline confirms he does not have the credentials, he will submit a declaration under oath and under penalty of perjury, to that effect, and which states with specificity the reasons why such credentials are unavailable to Kline.

  c. Kline must provide his Walmart phone he described, as well as his home computer that he identified, to the Third Party Discovery Vendor for imaging.

  d. Kline must sign and provide to the Third Party Discovery Vendor the privacy and consent forms required by Twitter, as well as such forms required by the social media companies for the other accounts Kline listed or should have listed on his Certification Form. Plaintiffs' counsel shall promptly re-send any missing forms to Kline for execution, and no later than Friday, November 29, 2019 at 12:00 p.m.

Dkt. 599 at 14–15 (¶ 41).

  7. In the very next paragraph, this Court wrote that "Kline should promptly inform the Court and Plaintiffs upon completion of each of the aforementioned steps toward purging himself of contempt." Dkt. 599 at 15 (¶ 42).

  8. In the Civil Contempt Order, this Court reiterated that Kline was ordered to appear on December 16, 2019 at 11:00 a.m. for the Second Civil Contempt Hearing, and further warned that "[i]f Kline remains in non-compliance on that date, this Court is prepared to hold him in custody until he purges himself of his contempt." Dkt. 599 at 2.

  9. On December 6, 2019, Plaintiffs filed a renewed motion for evidentiary sanctions against Kline. Dkt. 601. Therein, Plaintiffs wrote that, "[a]s of this filing, Kline has failed to purge himself of his civil contempt." *Id.* at 16. Plaintiffs then parsed each of the requirements set forth in paragraph 41 of this Court's Order Finding Elliott Kline in Civil Contempt and documented how Kline failed to fulfill each of those obligations. *Id.*

  10. On December 10, 2019, this Court issued a Show Cause Order to Kline, which ordered Kline to submit by December 13, 2019, "a brief or response addressing any and all steps Kline has taken to purge himself of contempt. Specifically, Kline shall address **how and when** he satisfied each of the discovery obligations set forth in paragraph 41 of this Court's Order Finding Elliott Kline in Civil Contempt." Dkt. 602 at 2. This Order also required Kline to advise the Court

on the status of his previously-mentioned efforts to secure counsel. *Id.* And, it ordered Kline to bring with him to the Second Civil Contempt Hearing his home computer that he identified, so that it could be turned over to the Third Party Discovery Vendor for imaging. *Id.*

11. On December 10, 2019, this Court also ordered Plaintiffs to file a supplemental brief by December 13, 2019, addressing, among other things, "any further steps Kline has taken (or failed to take) to purge himself of civil contempt." Dkt. 603 at 1.

12. On December 13, 2019, Kline submitted a response to Plaintiffs and Judge Hoppe's Chambers, though not to this Court, as was required. Kline's response did not state "how and when he had satisfied each of the discovery obligations set forth in paragraph 41" of the Civil Contempt Order, as was required, nor did it advise the Court regarding Kline's purported efforts to seek counsel, as was also required. Kline did argue that he "ha[s] been entirely in compliance with [his] discovery obligations to the best of [his] ability." Kline further provided another password to an e-mail account requested by Plaintiffs; responded that he had turned over all other available account information; and explained he could not find his home computer that he disclosed in his deposition. Kline also requested the Second Civil Contempt Hearing be continued from December 16, 2019 to a later date; or that he be allowed to appear telephonically.

13. On December 13, 2019, Plaintiffs also submitted a response as directed by this Court's Order, in which they asserted, among other things, they were "unaware of any further steps that Kline has taken to purge himself of contempt since December 5, 2019, when he produced a single document in response to the Requests for Production and provided deficient responses to Plaintiffs' First Set of Interrogatories." Dkt. 604 at 2.

14. On December 13, 2019, this Court entered an Order denying Kline's request to continue the Second Civil Contempt Hearing, or to permit him to enter a telephonic appearance.

Dkt. 605. On December 16, 2019, this Court held the Second Civil Contempt Hearing, as scheduled. Dkt. 609 (Hr'g Tr.).

### Governing Law

15. "A court may impose sanctions for civil contempt to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004). The "essence" of civil contempt "is to coerce future behavior." *Consol. Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 830 (4th Cir. 1982); *see also* Civil Contempt Order, Dkt. 599 at 7–9 (¶¶ 15–22) (further describing law applicable to civil contempt).

16. Potential remedies for civil contempt include the ability to award damages and attorney's fees to the aggrieved party, or to imprison the contemnor until he purges himself of contempt. *See, e.g., Rainbow School v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010) (citing authorities). But "in selecting sanctions, a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990).

17. Defenses to civil contempt include a present inability to comply with the order in question and substantial compliance with such order. *United States v. Rylander*, 460 U.S. 752, 757 (1983); *SEC v. SBM Inv. Certificates, Inc.*, No. 06-cv-866, 2012 WL 706999, at *10 (D. Md. Mar. 2, 2012). A party raising the former defense must affirmatively produce evidence showing a present inability to comply with the order in question." *United States v. Walden*, No. 1:16-cv-42, 2019 WL 1028529, at *3 (N.D. W. Va. Mar. 4, 2019) (citing *United States v. Butler*, 211 F.3d 826, 831 (4th Cir. 2000)). As to the latter, "[t]o benefit from the substantial compliance defense, the

7

violating party must show that it took all reasonable steps to ensure compliance." *Schwartz v. Rent-a-Wreck of Am.*, 261 F. Supp. 3d 607, 615 (D. Md. 2017); *see also United States v. Darwin Constr. Co., Inc.*, 873 F.2d 750, 755 (4th Cir. 1989).[1]

### Findings of Contempt

18.     This Court has reviewed the record, the parties' submissions to this Court before the Second Civil Contempt Hearing, Kline's testimony at the hearing and the other evidence and argument presented by the parties at such hearing.

19.     Upon such review, this Court continues to find by clear and convincing evidence that Kline remains in contempt of court. *See JTH Tax, Inc. v. H & R Block E. Tax Servs.*, 359 F.3d 699, 705 (4th Cir. 2004).

20.     Separately, this Court finds that Kline has failed to meet his burden of showing that he has purged himself of contempt. *See Butler*, 211 F.3d at 831; *see also Walden*, 2019 WL 1028529, at *3; *First Mariner Bank v. Resolution Law Grp., P.C.*, No. 12-cv-1133, 2014 WL 1681986, at *2 (D. Md. Apr. 28, 2014).

21.     In paragraph 41 of the Civil Contempt Order, this Court set forth steps Kline was required to complete in order to purge himself of contempt. Dkt. 599 at 14–15 (¶ 41). This Court finds by clear and convincing evidence that Kline has not completed the requisite steps.

---

[1] Some courts within the Fourth Circuit have reached differing conclusions on the issue whether a party's good-faith attempt to comply constitutes a defense to civil contempt. *Compare Lambert v. Gift Dev. Grp., LLC*, No. 1:18-cv-215, 2019 WL 177078, at *2 (M.D.N.C. Jan. 11, 2019) (writing that "a good-faith attempt to comply with the court's order" is a defense to civil contempt), *with SBM Inv. Certificates, Inc.*, 2012 WL 706999, at *10 n.21 (writing that the Fourth Circuit has subsequently rejected this defense). But even assuming, without deciding, that good faith is a defense, it would not help Kline here, because he has not demonstrated that he made such a good faith attempt to purge himself of contempt.

8

Failure to Respond to Discovery Requests (Para. 41(a))

22.     Kline was required to "respond in writing *fully and completely* to Plaintiffs' First Ste of Interrogatories and Plaintiffs' Requests for Production of Documents." Dkt. 599 at 14 (¶ 41(a)) (emphasis added). This Court finds Kline's responses materially deficient in both form and substance.

23.     Kline's responses to Plaintiffs' First Set of Interrogatories were required to be under oath—an obligation made clear on page one of the Interrogatories. Fed. R. Civ. P. 33(b)(3); Dkt. 457-9 at 1. Kline's responses were not under oath. Dkt. 601-7 at 16; *see also* Dkt. 609 at 19 (Second Civil Contempt Hr'g Tr.).

24.     Kline was required to email his discovery responses to this Court and to Judge Hoppe when they were completed. Dkt. 599 at 14 (¶¶ 41(a), 42). Kline did not do so. *See, e.g.*, Dkt. 609 at 13–14.

25.     Kline's responses to Plaintiffs' First Set of Interrogatories were also substantively deficient in numerous respects.

26.     Interrogatory 1, for example, asked Kline to "[i]dentify all means of communication used by you to communicate" concerning Unite the Right, and to provide "all names, aliases, e-mail addresses, phone numbers, and Social Media Handles [Kline] used in connection with such communications." Dkt. 457-9 at 8. The Interrogatory specified that "[m]eans of communications include, but are not limited to, telephone calls, in-person meetings, and all means of electronic communication including, for example, Social Media, email, SMS messages, podcasts, and online video." *Id.*

27.     Kline's response to Interrogatory 1 only identified certain accounts on the Discord and Twitter platforms. Dkt. 601-7 at 16.

9

28. Kline did not fully and completely respond to Interrogatory 1. At a minimum, there were four e-mail accounts, and accounts on Facebook and Gab that should have been included in Kline's response. *See* Dkt. 609 at 19–21 (Second Civil Contempt Hr'g Tr.).

29. This Court finds incredible Kline's assertion that he did not know he needed to include such information in his interrogatory response. *Id.* at 20. Kline's e-mail accounts, as well as his Facebook and Gab accounts, were discussed at length in the First Civil Contempt Hearing. *See, e.g.*, Dkt. 600 at 26–27, 29, 51–52 (First Civil Contempt Hr'g Tr.). Moreover, the fact that Plaintiffs sought discovery from Kline's e-mail and social media accounts was also a key issue addressed throughout the Civil Contempt Order. *See, e.g.*, Dkt. 599 at 11–12. It could come as no surprise to Kline that Plaintiffs sought discovery from those sources and that those sources should have been listed in Kline's answer.

30. Kline's answers to other Interrogatories were deficient too. For example, Interrogatory 3 asked Kline to "[i]dentify all persons (natural or non-natural) with whom you communicated concerning" Unite the Right. Dkt. 457-9 at 8. Kline did not fully and completely respond to this Interrogatory. In fact, Kline had already testified that he had communicated with a member of Vanguard America, Thomas Ryan Rousseau, and members of the Charlottesville Police Department, about the events underlying the Complaint. Dkt. 609 at 21–22. However, Kline did not list Rousseau or members of the Charlottesville Police Department in his response to Interrogatory 3. Dkt. 601-7 at 16.

31. Interrogatory 4 asked Kline to "[i]dentify all Electronic Devices used by [him] to communicate concerning the Events, whether before, during, or after the events." Dkt. 457-9 at 8. Kline also failed to fully and completely respond to Interrogatory 4. Kline failed to disclose communication using a phone associated with a (347) area code phone number. Dkt. 601-7 at 16.

Though Kline testified he never had or used that number, Dkt. 609 at 24–25, this Court finds that Kline should have in the interest of completeness included any such explanation in his response to Interrogatory 4, given the documentation linking him with that (347) number.

32. This Court finds those omissions in Kline's responses to Plaintiff's First Set of Interrogatories significant in their own right. In addition, this Court concludes that these omissions, in conjunction with Kline's other omissions and failures to follow court orders, further demonstrate that Kline did not take seriously his obligation to respond to Plaintiffs' first set of discovery requests, raising the substantial prospect that Kline omitted other material information from his discovery responses.

33. This Court also finds incredible that Kline only had one responsive document to Plaintiffs' Requests for Production of Documents. These document requests required Kline to produce any "e-mail, electronic chats, instant messages, text messages, uploads, posts, status updates, comments," and the list goes on (Dkt. 457-8 at 3), that were responsive to their requests. This Court assessed Kline's demeanor in his responses to this Court's questions concerning his search for responsive documents (Dkt. 609 at 34–35), and found unbelievable his explanations why he had only one responsive document. Even assuming most communication was done via Discord as Kline claims, and that he was involved with "decentralized" organizations ((Dkt. 609 at 34–35), the Court does not, at this stage, credit Kline's assertion that he conducted a reasonable and diligent search through all available accounts, electronic devices, and sources of records.[2]

---

[2] In this inquiry, this Court has not faulted Kline for not having access to any electronic devices not currently in his possession because the Third Party Electronic Discovery vendor had them, or that had already been turned over to Plaintiffs. *See, e.g.*, Dkt. 604 at 4 (describing missing Walmart and iPhone).

11

Failure to Document Search for Account Credentials (Para. 41(b))

34. In order to purge himself of contempt, Kline was required to "provide the Third party Discovery Vendor his email and social media credentials, including his passwords, for every account he identified on his Certification Form, or that should have been included on such Form originally." Dkt. 599 at 14 (¶ 41(b)). In so doing, this Court required Kline to conduct a "diligent search" for such credentials. *Id.* (¶ 41(b)(i)). For any accounts for which Kline confirmed he did not have such credentials, this Court required Kline to "submit a declaration under oath and under penalty of perjury, to that effect, and which states with specificity the reasons why such credentials are unavailable to Kline." *Id.* (¶ 41(b)(ii)).

35. Kline failed to comply with his obligations set forth in paragraph 41(b) of the Civil Contempt Order as well. Namely, Kline failed to inform this Court and Plaintiffs upon completion of the search required by paragraph 41(b)(i), as this Court had ordered that "Kline should promptly inform the Court and Plaintiffs upon completion of each of the aforementioned steps toward purging himself of contempt." *Id.* ¶ 42. Moreover, Kline simply failed to submit any declaration under oath stating with specificity the reasons why he had been unable to access credentials for any email and social media accounts. *Id.* ¶ 41(b)(ii).

Other Requirements Satisfied (Para. 41(c), (d))

36. While Plaintiffs will still be able to argue that Kline's failures with respect to Paragraph 41(c) and (d) of the Civil Contempt Order caused them to incur unnecessary fees and costs, and/or impaired their ability to timely make their case, this Court finds that Kline has fulfilled any obligations with respect to these provisions. He testified under oath that his home computer could not be found, and he has already turned over his Walmart phone upon this Court's

12

order. Dkt. 609 at 12; Dkt. 604 at 4. Moreover, it appears from Plaintiffs' response to this Court's inquiry at the Second Civil Contempt Hearing that they agree Kline cannot at this time take any further steps to fill out privacy or consent forms for any other social media companies, since Kline has asserted he has no access to those accounts and does not recall the e-mail addresses associated with such accounts. Dkt. 609 at 9–10.

37. This Court finds that Kline has failed to purge himself of contempt. This Court further finds by clear and convincing evidence that Kline remains in contempt. Notably, nearly two years after they were first served on Kline, he still has failed to fully and completely respond to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents, as paragraph 41(a) of the Civil Contempt Order required. Moreover, Kline failed to satisfy his obligations in paragraph 41(b) of the Civil Contempt Order, to document and explain with specificity why he is unable to access each of the e-mail and social media accounts to which Kline confirms he does not have access. Further still, Kline failed to comply with court orders in numerous (and simple) respects, such as e-mailing the Court and Plaintiffs upon completion of each step set forth to purge himself of contempt. These collective deficiencies were such that this Court cannot conclude that Kline made a real, good-faith effort at purging himself of contempt, or that he "took all reasonable steps to ensure compliance" with this Court's Civil Contempt Order, *Schwartz*, 261 F. Supp. 3d at 615.

### Kline's Other Relevant Conduct

38. This Court further notes and is troubled by the substantial amount of time Kline took to begin purging himself of contempt. Indeed, Kline only turned over his (deficient) discovery responses to Plaintiffs on December 5, 2019—i.e., ten days after this Court found Kline in

13

contempt, and it was three days after Kline begin incurring $200 per day fines. *See, e.g.*, Dkt. 609 at 14–18 (describing Kline's efforts in the interim).

39. This Court further notes and is troubled by Kline's failure to timely respond to Plaintiffs' Second Set of Interrogatories. While Kline's failure to comply with this particular and subsequent discovery obligation did not form a basis for this Court's finding that Kline was in civil contempt, it nonetheless undermines Kline's ability to assert that he has had a change of heart or that he is now acting in good faith to comply with his outstanding discovery obligations. This Court further finds Kline's response that he has not received a copy of Plaintiffs' Second Set of Interrogatories to be spurious. Indeed, at the First Civil Contempt Hearing, a copy of the document was provided to Kline.

40. In short, not only was Kline found in civil contempt, and not only did he fail to take the steps required to purge himself of contempt, but he was slow to act in making the effort to purge himself of contempt, and his other conduct since then indicates he has not changed his contumacious behavior.

## Civil Contempt Sanctions

41. The Court has the power to coerce compliance with its orders, and it may exercise that authority by ordering a defendant to be incarcerated or to pay a fine, or both, until he purges himself of his contempt. *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947). In selecting sanctions, the Court "is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quotation marks and citation omitted).

42. At the Civil Contempt Hearing on November 25, 2019, and as further memorialized in the Civil Contempt Order, this Court has imposed upon Kline a fine of $200 per day of non-

14

compliance, payable to Plaintiffs. This Court suspended the sanctions so that the first $200 fine would be incurred on December 2, 2019, at 5:00 P.M. EST, if Kline remained in non-compliance on that date and time; and each subsequent daily $200 fine would be incurred at 5:00 P.M. EST, on each following day of non-compliance, and continuing until Kline purges himself of contempt. Dkt. 600 at 78–79; Dkt. 599 at 13 (¶ 37).

43. In the Civil Contempt Order, this Court found that the imposition of this monetary sanction was "appropriate and tailored at this time to coerce Kline into complying with this Court's and Judge Hoppe's discovery orders, using the least possible power adequate to the end proposed." Dkt. 599 at 13 (¶ 38) (citation omitted). However, "[s]hould the imposition of such daily fines prove insufficient to achieve this end," this Court warned that it was "prepared to impose a more severe sanction in order to coerce Kline into compliance with these orders, namely, to incarcerate Kline until he purges himself of contempt." *Id.*

44. This Court finds that these sanctions imposed to date have not been sufficient to coerce Kline into compliance with this Court's orders. This Court further finds that more stringent sanctions are therefore appropriate and necessary to achieve this end.

45. Accordingly, this Court has also ordered—as a further means to coerce Kline to complete his discovery obligations—that by **December 30, 2019 at 5:00 p.m. EST**, Kline shall pay $600 to Plaintiffs. This sum represents three days of his non-compliance with this Court's Orders and failure to purge himself of contempt.[3] In addition, this Court continues to impose upon Kline (and in favor of Plaintiffs) a remedial fine of $200 per day of his non-compliance, which fines began to be assessed starting December 2, 2019, and have continued to be incurred on each

---

[3] Kline previously testified that he currently had funds to satisfy a financial obligation of this magnitude. Dkt. 600 at 60.

15

day thereafter with the exception of the dates between December 16, 2019 and the date of the issuance of this Order.

46. Finally, this Court **ORDERS** Kline to appear at the United States Courthouse in Charlottesville, Virginia, on **Monday, January 6, 2020**, at **12:00 P.M. EST**, and surrender himself to the custody of the United States Marshals Service. Kline shall bring with him any and all documents, electronic devices, credentials to access e-mail and social media accounts, and materials he would need to purge himself of contempt.

Steps to Purge Himself of Contempt

47. Kline still has an opportunity to reduce his fines, and if necessary, imprisonment, by purging himself of contempt by completing the steps set forth in paragraph 41(a) and (b) of this Court's Civil Contempt Order. Absent further written order from this Court, he shall surrender himself as directed on January 6, 2020.

It is so **ORDERED**.

The Clerk of the Court is directed to send a certified copy of this Order to the parties. The Clerk of the Court is further directed to send a certified copy of this Order as well as this Court's Order Finding Elliott Kline in Civil Contempt (Dkt. 599) to Elliott Kline at both email addresses he has provided as well as by mail to his address of record.

Entered this __23rd__ day of December, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE