# EXHIBIT A

FILED WITH REDACTIONS

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

Civil Action - Law
No. 3:17-cv-00072-NKM

-------------------------------------x

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,

Plaintiffs,

- vs -

JASON KESSLER, et al.,

Defendants.

-------------------------------------x

---

Deposition of ELLIOTT KLINE

---

228 Walnut Street | Wednesday, August 7, 2019
Harrisburg, PA | 10:05 a.m.

---

IT IS HEREBY STIPULATED and agreed that the sealing of the within transcript is waived.

IT IS FURTHER STIPULATED and agreed that all objections except as to the form of the question are reserved to the time of trial.

---



don't even know where to begin or who it would have been.
Q. Could you name an example?
A. Umm, I know Washington Post, New York Times. I know BBC we talked to at one point. Almost every news organization I can think of. Lots of local ones.
Q. Those organizations sent you e-mails to communicate with you, right?
A. Yes.
Q. And you e-mailed them back?
A. Not always. Depending on who it was. I know, like, Huffington Post sent us an e-mail and we never responded. Things like that. But 50/50 we would respond. It was just them asking us for interviews, or, like, a list of questions in an e-mail.
Q. Did you respond to those questions via e-mail?
A. Yeah.
Q. From your IdentityEvropa.com e-mail address?
A. Yeah.
Q. Using your iPhone?
A. Yes.

Q. Any other devices that you used to respond to those e-mails?
A. No.
Q. Only your iPhone?
A. I only ever used my phone, yeah.
Q. You never used a computer?
A. The only other computer I used was a shitty laptop that at the time was -- I think it was my girlfriend at the time's neighbor. I think it was her laptop. But it was literally to send something from my iPhone to the printer.
So, anything that was -- would be on the computer is something that was on my phone. It was literally just -- because I couldn't send documents from my phone to the printer. That was the only thing.
Q. Who was your girlfriend at the time?
A. Her name was [redacted]
Q. What was her full name?
A. [redacted] I don't know how to spell that last name though.
Q. Do you have her contact information?
A. No. We did not part ways in good terms. So, I don't know. I don't have any of her contact information. I don't know where she

is or anything like that.
Q. Do you know her neighbor's name?
A. No. Like I said, it was just -- that computer -- literally the only thing was it was connected to the internet -- or connected to the printer.
Q. At your girlfriend's neighbor's house, correct?
A. Yes.
Q. Where was this house?
A. South Carolina, in Greenville.
Q. Do you know the address?
A. No.
Q. When was it that you were using your girlfriend's neighbor's laptop?
A. Probably five -- four or five months before Charlottesville. So, pretty ahead of time in Charlottesville. It wasn't, like, in relation to Charlottesville or anything like that.
Q. This was in early 2017?
A. Yeah. This was before Charlottesville was even a thing.
Q. What were the documents that you were using this neighbor's computer to print?

A. Umm, I don't remember. I just remember printing -- I just remember not being able to print off my phone. I don't remember exactly what it was. They weren't -- I don't know what it was. I think I was going on a trip and I needed to -- I was handing out, like, information to somebody. I don't even remember exactly what it was. It wasn't -- it was nothing to do with Charlottesville or anything like that.
I think it was, like, a bullet point list of ideas, or something like that. And I was handing it out at a meeting I was going to.
Q. Was this related to Identity Evropa?
A. Yes.
Q. Did Identity Evropa have a website?
A. Yes.
Q. Was it a public website?
A. What do you mean by that?
Q. Was it available to the public? Or did you need to log in to view it?
A. Umm, yes. It was a public website.
Q. Was there also a private component to it?
A. Umm, not that I know of. I didn't



A. No, I don't think any of it was. The only -- the only document typing or anything like that, creation that I did, was on my Google drive to Google docs, copying it and pasting it and making it into that -- putting it on Discord, was that document explaining the rules and what everyone was doing, the planning document that got leaked.

That is the only documents that I made or created for the event.

Q. Did you make any promotional materials, such as a poster?

A. I didn't make any of that. Somebody else did.

Q. Did you discuss with others who made promotional materials, what those materials were?

A. I believe Jason Kessler handled all that stuff.

Q. When you say somebody else made promotional materials, who would that have been?

A. I have no idea who made -- who made the stuff. Like I said, Jason Kessler handled that kind of thing. The promotion, the promotional stuff, the speakers, things like

that.

Q. Did you write any articles about Unite the Right?

A. Articles for what? For -- no, I didn't produce any -- publish any articles or anything like that.

Q. Did you write any kind of blog post about Unite the Right?

A. Umm, not that I can remember.

Q. Have you used a computer to send e-mails regarding Unite the Right?

A. Other than the court case stuff, no.

Q. But you have used a computer to send e-mails regarding the court case?

A. Just, like, responding -- when the phone wasn't working, I would just use, like, whatever computer I could get. Like, I went to a -- I think I went to -- I don't even know what the hell they are called. One of those internet cafe places just to get to my e-mail once. I don't remember where it was. It was in Lancaster City. But it was just trying to get to my e-mail, to e-mail them back.

Q. When was that?

A. I don't know. Sometime before all the

-- before they filed this. So, before July.

Q. Which e-mail address would that have been?

A. The Eli F. Mosley one.

Q. Did you own a computer in 2017?

A. Umm, in 2017. So, that is the year of the rally and stuff. Yes, I did. But I didn't -- basically what happened with me was I had gotten let go of my job in late 2016 and I moved down to South Carolina with my girlfriend at the time. I wasn't able to bring any of my stuff, which included my computer and lots of other stuff.

Q. What job had you gotten let go of in late 2016?

A. I was an HR manager for a company called JC Ehrlich.

Q. When you moved down to South Carolina, why were you not able to bring your computer?

A. I couldn't fit all my stuff in the car. I just brought my clothes and stuff like that.

Q. So, what happened to your computer then?

A. It was set in my parents' storage

shed, I think. It was -- it was a computer I used for work, for when I had the job at JC Ehrlich.

Q. Where is that computer now?

A. At my parents' place.

Q. Do you use that computer now?

A. No.

Q. Does the computer still work?

A. I think so. Probably.

Q. When did you first get that computer?

A. Probably 2012.

Q. What kind of computer is it?

A. Just a -- I don't know, desktop computer.

Q. Do you know the brand of computer it is?

A. No. I think it is custom -- it is just kind of a Frankenstein machine.

Q. You used that computer in 2017, right?

A. No, no, no. No. Like I said --

Q. Excuse me, you used that computer in 2016, right?

A. Yes. But it was -- like I said, it was before most of the Alt-Right stuff.

Q. When was the last time that you used



that computer?
A. Late 2016.
Q. It has been sitting in the storage shed since then?
A. Yes.
Q. So, when you moved to South Carolina, you testified that you were not able to bring your computer, right?
A. No, which was why I used my phone.
Q. Did you get another computer once you were in South Carolina?
A. No.
Q. Did you use someone else's computer in South Carolina?
A. The only time I used my computer is when I went to print stuff off, which was, like, rarely, because I didn't -- I didn't need paper when I was down there. I didn't need anything printed out for me, or whatever. It wasn't like I was handing it out to anybody down there.
So, the only time I had to print something off was -- I had some sort of meeting where I had to be on the phone and I had to look at what I was looking at. So, I couldn't look at it while I was on the phone.

Q. When was that?
A. Late -- or early 2017. By the spring, summer 2017, I guess.
Q. So, what computer were you using in 2017 then?
A. I wasn't using a computer. What do you mean?
Q. Well, you testified that in 2017 you had some kind of meeting where you had to be on the phone, that you couldn't look at what was on your phone, so you used a computer to print something.
A. That was the neighbor's computer I said I used to print something off. I literally just -- all I did was plug my phone into her computer and send it to the printer, or whatever.
Q. You don't know that neighbor's name?
A. I don't remember her name at all, no. I don't even remember -- I don't remember the address we even lived at or anything.
Q. You don't remember the address that you lived at --
A. No.
Q. -- in South Carolina?

A. I was only there for, like, two or three months, then we moved.
Q. Do you remember anything about where you were living in South Carolina?
A. It was in Greenville. It was on, like, a popular road. I don't know. It was on a busy road. I don't know.
Q. Did you ever use anyone else's computer or your own computer to -- umm, to send e-mails regarding Unite the Right?
A. To send e-mails, no.
Q. You did testify that you used an internet cafe, right, in Lancaster City to send e-mails regarding --
A. That was to check my e-mails, to see if I got anything for this. And I hadn't.
Q. Have you used anyone else's computer, yours or anyone else's, to check your e-mails to see if you had gotten e-mails regarding this case?
A. No. Just that one.
Q. What about your neighbor's computer?
A. Umm, no. That was -- we left there before Unite the Right even happened.
Q. What about Mr. Spencer's computer?

A. Like I said, his computer was always, like, out or whatever, I guess, you can say. Like, I didn't use it for e-mails or anything like that, no. I never signed into my e-mail address on his computer or anything, no.
Q. What about family members' computers?
A. No.
Q. Does your sister have a computer, for example, that you used?
A. No.
Q. What about to send or check social media messages regarding Unite the Right? Did you ever use anyone's computer to do that?
A. No, just my cell phone.
Q. Not a single time you can remember using anyone's computer --
A. No.
Q. -- to check --
A. No.
Q. -- or send messages regarding Unite the Right?
A. No. I always used my phone.
Q. When you used computers to print documents, which documents were those?
A. I don't remember what they were for.



Q. 6:38 p m.
A. Yes, I see.
Q. From Eli Mosley.
A. Which one? There is -- yeah, the PC one? That is not a huge deal. That one?
Q. Do you see a message on March 31, 2017 from Eli Mosley stating one for work, one for personal shit, and one for the Alt-Right?
A. Yeah, I see that. But, like I said, I did not have multiple phones.
Q. Did you make that statement on Discord? Did you write that?
A. Yeah. I mean, I did -- I mean, I said I have three phones, right. And I said that one for each thing. But I don't know -- I definitely didn't have three phones. I never had three phones. I don't know why I would say that. I don't know if it was -- if I was joking.
The guys that were in this chat -- I don't know who deleted user, Unlimited Power, is. But Gray and Wyatt, or whatever, I know we -- we would constantly joke about stuff. I don't know if that is what this is or not.
Q. Why would you say on Discord that you

had three phones if it wasn't true?
A. Like I said, I don't know -- I don't know the context of these -- this conversation. So, it could be that we were joking about something. I don't know.
I definitely didn't have three phones though. The only two phones I have ever had -- I mean, the 610 number I have had since, like, seventh grade. And, like, it has only been on two different phones. The other phone I got is the, umm, the Walmart one. I definitely don't have three phones.
Q. You testified, Mr. Kline, that you had a computer in 2016, right?
A. In 2016, yes.
Q. And, Mr. Kline, you testified that you left that computer at your parents' place in 2016; is that right?
A. In a storage unit, or whatever. I haven't touched it for awhile.
Q. You stated that you moved to South Carolina with your girlfriend in 2016, right?
A. Umm, it wasn't -- it was -- it was 2017, I think. It was the early part of 2017. I think it was the spring of 2017.

Q. Did you testify that you moved to South Carolina with your girlfriend in late 2016?
A. I might have -- it might have been 2017, is what I meant. I think it was 2017 when I moved there. I would have to -- I don't know the exact dates. I think it would be 2017 though. Because late -- maybe it was late 2016 into early 2017. That would make sense. Because I was let go from my job in late 2016, I believe. Which -- and I moved there with her, like, three weeks afterwards. So, that would actually make sense. Like, late -- either the beginning of 2017 or late 2016.
Q. When were you let go from your job?
A. Umm, I don't know the exact date. It was late 2016, I think it was. It was right around Christmas, I think it was.
Q. Who was your employer at that time?
A. JC Ehrlich Rentokil.
Q. And it was after that point that you moved to South Carolina with your girlfriend?
A. Correct.
Q. When you moved to South Carolina, you had testified that you did not bring the

computer with you, right?
A. Right.
Q. And you testified that was because you couldn't store it in the car; is that right?
A. Yeah. It is a huge -- it is, like, a huge, old tower.
Q. So, you did not have a computer in 2017, right?
A. No.
Q. You testified that the only computers that you used in 2017 were Richard Spencer's and your girlfriend's neighbor's computer?
A. Correct. Just to print stuff off.
Q. Only those two computers?
A. Correct.
Q. You did not have a home PC in 2017, correct?
A. No, not in 2017, no. 2016, like I said, I had the big tower thing.
Q. Isn't it true that, in fact, you did have a home PC in 2017?
A. What do you mean? I don't understand.
Q. Isn't it true that you did have a home PC in 2017?
A. I wasn't even -- I don't understand

MAGNA LEGAL SERVICES

Q. This was your Discord chat?
A. Yes.
Q. You made this message on Discord on March 22, 2017 at 5:02 p.m., right?
A. Yes.
Q. And you wrote on Discord, quote -- you wrote, quote, if he comes in and I have to defend myself, all they have to do is look through my computer and I am fucked. So, not really a good option, closed quote.
A. Yeah. So, the only thing I can think of I am referencing there is my computer screen. I had a computer screen that I would -- at my girlfriend's house, we didn't have a TV. We used a computer screen to watch Netflix and stuff like that on.
But I don't know -- I don't know -- you guys gave me -- are giving these to me with no context. So, I don't know what they are about, what it is talking about. It could be talking about something else entirely than what this conversation -- or what this single comment says.
Q. You did make this statement on Discord in March of 2017, right?

A. Correct.
Q. And your testimony is that this message has to do with a computer screen?
A. I don't know, because my -- I can't give a testimony on something when it is literally one sentence. If you want me to look through the entire message, maybe I can get some context what's going on.
Q. You just stated at the beginning of one of your prior answers the only thing I am referencing there is my computer screen.
That is your testimony?
A. I said that is -- I mean, that is probably what I am referencing there. I mean, that is when I am living at the house with my girlfriend. And I know that we had a computer screen as our only screen.
But I don't know what I am referencing here with the if he comes in thing. It might totally be a joke. I don't know what it is talking about. I don't know what I am talking about there. I would need the full -- like I said, I would need the full context.
(Exhibit 36, 3/31/2017 Discord chat, marked for identification.)

BY MR. BARKAI:
Q. You are being handed Exhibit 36. This was also a Discord message that you made, right?
A. Yes, it looks like it.
Q. This Discord chat you posted in -- on March 31, 2017 at 10:38 p.m., right?
A. Correct.
Q. In this chat you wrote, well, it is not a huge deal, cause the phone is backed up on my PC, closed quote, right?
A. I am probably talking about the old PC I left in Pennsylvania when I moved. Because this phone hasn't been backed up for 400-something days, or 600 days, or something like that.
Like I said, I left the -- I left -- I left the computer -- you guys can go through if you want. It is, like, a shitty, like, broken computer.
Q. Did you back up your phone on the computer?
A. Oh, yeah. I mean, way before -- like, in 2016 I backed it up. I haven't backed it up again since, I don't think.
Q. Earlier today when I asked you if you

had backed up your phone onto a computer or any other device and you said you had not done that, that wasn't true, right?
A. Well, what I thought you meant at the time, or what I meant was I haven't backed up the -- I haven't backed up this phone before, like -- 2016 -- 2016, umm, Unite the Right wasn't even a thing yet. We haven't been talking about it. So, it wasn't really in reference to it.
But now -- now that I -- obviously I have had this phone for years. It has been backed up at some point on a computer. But it was backed -- so, yeah, it was backed up on an old computer. But it was forever ago.
Q. Earlier today I asked you if you had backed up your phone onto a computer and you said that you had not done that. That wasn't true, right?
A. Well, not -- right. But when I said that, like I said, I was saying that with the thought of reference to Unite the Right.
The phone was backed up before Unite the Right was even -- Unite the Right one even happened, let alone two. So, what I am talking

MAGNA LEGAL SERVICES

with Discord regarding your attempts to allow your account to be shared with Plaintiffs, correct?

A. Correct.

Q. And you have committed to do that within the next 24 hours, right?

A. Yes.

Q. You understand you are just to forward those e-mails to Plaintiffs' counsel, whether me or Mr. Bloch or anyone else?

A. Yes. If I have Twitter ones, I'll forward those as well. I don't know if I have those or not though.

Q. And you have agreed to finish completing the consents for Twitter and the Exhibit A certification form once this deposition is concluded, right?

A. Correct.

MR. BARKAI: That concludes my questions for today, Mr. Kline. Thank you very much.

THE VIDEOGRAPHER: The time is now 6:03 p m., this is the end of today's deposition.

MR. DiNUCCI: Could I interject? Two

things. I just want to say on the record what I said earlier, I don't have any questions. I was aware that questions to which I objected previously were going to be asked. I would have been ready to do some cross examination.

The second thing, Mr. Barkai, do you want to inform the Deponent of his rights to read or waive the right to read? I'll leave it at that. Thank you.

MR. BARKAI: You have a right under the Federal Rules of Civil Procedure to -- we don't need to do that on the record, Mr. DiNucci.

Is there a reason to do that on the record?

MR. DiNUCCI: No. I think it is only fair that he be informed of that. That is all. I guess we are done.

MR. BARKAI: I think we are done.

MR. DiNUCCI: Thank you.

(At 6:03 p.m., the deposition concluded.)

* * * *

C E R T I F I C A T E

I, Angela N. Kilby, the officer before whom the within deposition(s) was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition(s) was duly sworn by me on said date and that the transcribed deposition of said witness is a true record of the testimony given by said witness;

That the proceeding is herein recorded fully and accurately;

That I am neither attorney nor counsel, nor related to any of the parties to the action in which these depositions were taken, and further that I am not a relative of any attorney or counsel employed by the parties hereto, or financially interested in this action.

Angela N. Kilby, Reporter
Notary Public in and for the Commonwealth of Pennsylvania

My commission expires June 2, 2023

