UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOTT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' BRIEF IN OPPOSITION TO W. EDWARD REBROOK IV'S MOTION TO WITHDRAW AS ATTORNEY FOR NATIONAL SOCIALIST MOVEMENT AND NATIONALIST FRONT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

LEGAL STANDARDS ............................................................................................................ 3

ARGUMENT ............................................................................................................................ 4

I.     ReBrook's Representation of Schoep, NSM, and NF Does Not Involve a "Concurrent Conflict of Interest" ............................................................................... 4

II.    Granting ReBrook's Motion to Withdraw as Counsel Will Enable NSM to Disappear from the Litigation Entirely ..................................................................... 11

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Aetna Casualty & Surety Co. v. United States*,
  570 F.2d 1197 (4th Cir. 1978) ................................................................................................ 9

*Federico v. Lincoln Military Hous., LLC*,
  No. 2:12CV80, 2014 WL 12613388 (E.D. Va. May 23, 2014) .............................................. 6

*Office Parks of Lynchburg, LLC v. Wells Fargo Banks, N.A.*,
  No. 6:12-CV-00034, 2012 WL 4325567 (W.D. Va. Sept. 20, 2012) .................................... 11

*Patterson v. Gemini Org.*,
  238 F.3d 414 (4th Cir. 2000) .................................................................................................. 9

*Richmond Hilton Assocs. v. City of Richmond*,
  690 F.2d 1086 (4th Cir. 1982) ................................................................................................ 5

*Rowland v. Cal. Men's Colony*,
  506 U.S. 194 (1993) ........................................................................................................... 4, 11

*Sanford v. Virginia*,
  687 F. Supp. 2d 591 (E.D. Va. 2009) ................................................................................. 5, 7

*Shaffer v. Farm Fresh, Inc.*,
  966 F.2d 142 (4th Cir. 1992) .............................................................................................. 5, 9

*Tweedy v. RCAM Title Loans, LLC*,
  611 F. Supp. 2d 603 (W.D. Va. 2009) ............................................................................. 4, 11

*Wink, Inc. v. Wink Threading Studio, Inc.*,
  No. 2:10CV450, 2011 WL 3206915 (E.D. Va. July 26, 2011) .............................................. 7

*Wright v. Williamsburg Area Med. Assistance Corp. (WAMAC)*,
  No. 4:12-CV-152, 2013 WL 12184285 (E.D. Va. Apr. 9, 2013) ........................................... 6

**Statutes**

42 U.S.C. § 1985 ............................................................................................................................ 6

42 U.S.C. § 1986 ............................................................................................................................ 6

**Rules**

Va. Rules of Prof'l Conduct R. 1.7(a) ................................................................................. 4, 5, 6

Va. Rules of Prof'l Conduct R. 1.7(b) ........................................................................................... 9

Va. Rules of Prof'l Conduct R. 1.16(a) ......................................................................................... 3

Plaintiffs respectfully file this brief in opposition to W. Edward ReBrook IV's Motion to Withdraw as Attorney for National Socialist Movement ("NSM") and Nationalist Front ("NF") (the "Motion" or "Mot."), filed on March 28, 2020. ECF No. 691. For the reasons set forth below, Plaintiffs respectfully request that the Court deny ReBrook's Motion.

## PRELIMINARY STATEMENT

As alleged in the Second Amended Complaint, Defendants NSM and NF, together with NSM's then-"Commander," Defendant Jeff Schoep, attended Unite the Right in Charlottesville in August 2017 and were key planners of and participants in the racially-motivated violence that occurred there. *See generally* Second Am. Compl., Sept. 17, 2019, ECF No. 557. ReBrook has represented all three Defendants since March 19, 2019—over a year now.[1] Praecipe/Notice of Appearance of Counsel, Mar. 19, 2019, ECF No. 451. The same month that ReBrook began representing all three clients—indeed, two weeks before ReBrook assumed his representation—Schoep stepped down from his position as Commander of NSM and appointed Burt Colucci as NSM's new Commander. *See* Pls.' Mot. to Compel Discovery from Def. Jeff Schoep 4, Mar. 27, 2020, ECF No. 689 ("Mot. to Compel Schoep"). After Schoep departed NSM and for the subsequent year, ReBrook was a key participant in and a facilitator of NSM's steadfast refusal to comply with Court orders and its misconduct in discovery. ReBrook repeatedly refused to conduct any investigation into custodians of relevant documents other than Schoep. He has even asserted

---

[1] Plaintiffs have set forth the factual background relevant to ReBrook's representation of NSM and NF at length in several prior filings, and incorporate the factual recitations in those briefs by reference. *See* Pls.' Mot. to Compel Discovery from Def. Jeff Schoep, Mar. 27, 2020, ECF No. 689 ("Mot. to Compel Schoep"); Pls.' Mot. to Compel Discovery from Def. National Socialist Movement, Mar. 11, 2020, ECF No. 674 ("Mot. to Compel NSM"); Pls.' Mot. to Compel Def. National Socialist Movement to Disclose Custodians of Discoverable Docs. and Information, Sept. 3, 2019, ECF No. 547; Pls.' Mot. for Rule 37 Sanctions Against Def. Jeff Schoep, Feb. 27, 2019, ECF No. 432.

and endorsed the frivolous, bad-faith argument made by NSM's new Commander, Colucci, that NSM, as it exists today, is a separate entity from Defendant NSM that Plaintiffs sued, and therefore not subject to the Court's discovery orders or Plaintiffs' discovery requests. *See* Mot. to Compel Discovery from Def. National Socialist Movement 19, Mar. 11, 2020, ECF No. 674 ("Mot. to Compel NSM").

Last month, Plaintiffs moved to compel discovery from NSM due in large part to the obstruction of Court orders and the discovery process that ReBrook himself helped cause and in which ReBrook was a willing participant. *See id.* In that motion, Plaintiffs set forth the history of NSM's refusal to comply with its discovery obligations (while led by both Schoep and Colucci), which ReBrook facilitated for months by refusing to investigate any custodians of responsive documents and by hewing to the absurd claim that he had only one "human client" whom he could ask to produce documents. *See id.* at 3–18. Plaintiffs explained why NSM is subject to Plaintiffs' discovery requests and why NSM's specious assertion that the organization as reincorporated by Colucci in Florida is not subject to Plaintiffs' discovery requests—an argument promoted by ReBrook—must be rejected, and requested that the Court compel NSM to produce to Plaintiffs numerous responsive documents that NSM had withheld. *See id.* at 19–25.

The deadline to oppose that motion passed on March 25, 2020. ReBrook filed no opposition brief, effectively conceding the strength of Plaintiffs' arguments. Instead, several days later, ReBrook filed the instant Motion moving to withdraw as counsel for both NSM and NF. *See* Mot., Mar. 28, 2020, ECF No. 691.

The Court should reject ReBrook's Motion. The sole basis for ReBrook's request to withdraw is a purported conflict between his representation of NSM and NF and his representation of Schoep given Schoep's departure from NSM—which occurred more than a year ago, two weeks

2

*before* ReBrook began representing NSM—and Schoep's claim, as early as August 2019, that he has renounced the white supremacist movement. As set forth below, however, there is no "concurrent conflict of interest" requiring ReBrook's withdrawal under the Virginia Rules of Professional Conduct. Given that no conflict of interest exists, ReBrook should be precluded from withdrawing from the representation given his own role, for the past year, in obstructing the discovery process—a role that necessitated substantial motion practice, including multiple motions filed against both of ReBrook's clients, NSM and Schoep. Furthermore, the facts of this case—including, among others, that Schoep and Colucci were communicating, and that Schoep was watching out for Colucci's interests, as recently as October 2019, and that Schoep's girlfriend (Acacia Dietz) is currently serving as NSM's legal representative for this litigation as well as ReBrook's legal assistant—further belie the notion that any conflict exists.

Additionally, a corporation cannot represent itself *pro se*, and Colucci has made plain his disdain for Plaintiffs, this litigation, and the Court. If ReBrook is allowed to withdraw as counsel for NSM, this will in all likelihood mean the end of NSM's participation in this lawsuit—and the loss of a trove of responsive documents—that would be deeply prejudicial to Plaintiffs.

## LEGAL STANDARDS

Rule 1.16 of the Virginia Rules of Professional Conduct provides that, in general, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if," among other circumstances, "the representation will result in violation of the Rules of Professional Conduct or other law[.]" Va. Rules of Prof'l Conduct R. 1.16(a).

Rule 1.7 provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the

3

representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.* R. 1.7(a).

An organization that is a party to a lawsuit "cannot appear pro se as an artificial entity in any federal court litigation[.]" *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 605 n.2 (W.D. Va. 2009) (Moon, J.). Rather, an organization cannot "appear in the federal courts otherwise than through a licensed attorney." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993).

## ARGUMENT

### I. ReBrook's Representation of Schoep, NSM, and NF Does Not Involve a "Concurrent Conflict of Interest"

The Court should deny ReBrook's Motion to Withdraw because there is no concurrent conflict of interest within the meaning of the Virginia Rules of Professional Conduct (the "Rules") that would necessitate such a withdrawal. Under Rule 1.7 of the Rules, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Va. Rules of Prof'l Conduct R. 1.7(a). Such a conflict exists if "the representation of one client will be directly adverse to another client," or if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.*

As a basis for the alleged conflict under Rule 1.7, ReBrook asserts:

> Defendant Schoep currently works with several different organizations to promote peace and speaking out against his former organization and the ideology they profess. Since August of 2019, Mr. Schoep continues to speak out against racism, antisemitism and violence, thus creating a conflict of interest between clients. . . . While the NSM/NF espouses antisemitism and racial separation, Defendant Schoep has been speaking out against antisemitism, racism and violence. Thus creating a conflict of interest [*sic*].

Mot. 1–2.² In other words, ReBrook alleges that Schoep has a "conflict" with NSM and NF not in their litigation positions, but in their current ideals and beliefs.³

ReBrook's argument fails. The question under the Rules is not whether ReBrook's clients have a present disagreement or even presently conflicting beliefs. The question is whether ReBrook's *representation* of NSM and NF will be "directly adverse" to his *representation* of Schoep, Va. Rules of Prof'l Conduct R. 1.7(a)(1), or whether ReBrook's *representation* of NSM and NF will be "materially limited" by ReBrook's responsibilities to Schoep, *id.* at R. 1.7(a)(2). In this analysis, courts consider whether the alleged conflict of interest "will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* at cmt. 8; *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992); *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1088–89 (4th Cir. 1982); *Sanford v. Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009) ("The applicable rule requires disqualification when the independent professional judgment of the lawyer is likely to be affected.").

Here, whatever views Schoep may hold of NSM and NF today, Schoep's defenses against Plaintiffs' claims regarding his conduct in 2017 are materially identical to NSM and NF's defenses

---

² ReBrook also claims, with no further elaboration, that he "sought the advice of the Virginia State Bar Ethics Counsel and was advised that defense counsel should move to withdraw." Mot. 1–2. ReBrook does not specify or document, whether through an affidavit, declaration, exhibit, or otherwise, what he allegedly told the Virginia State Bar or the details of the Virginia State Bar's alleged response. The Court should not accept ReBrook's unsupported assertion as a basis to allow him to withdraw as counsel.

³ While the issue is not directly relevant to ReBrook's Motion, Plaintiffs dispute ReBrook's assertion that Schoep "is willing to cooperate with counsel and this court," Mot. 3, in light of Schoep's recalcitrance in discovery, including his recent refusal to produce an electronic device containing responsive documents for four months and his agreement to turn over that device only after Plaintiffs filed their motion to compel discovery from Schoep. *See* Mot. to Compel Schoep; Br. in Opp. to Pls.' Mot. to Compel Discovery from Def. Jeff Schoep, Apr. 1, 2020, ECF No. 694.

against Plaintiffs' claims regarding their conduct in 2017. Plaintiffs allege that all three Defendants formed a conspiracy to commit racially-motivated violence at the Unite the Right rally in 2017. As such, Schoep's departure from NSM in March 2019 and his alleged disavowal of white supremacism in August 2019, two years later, are simply irrelevant. Indeed, all three Defendants were among the thirteen "Moving Defendants" who signed the same joint motion to dismiss making the same legal arguments in defense of their assertion that Plaintiffs had failed to state a claim under 42 U.S.C. §§ 1985 or 1986 or under Virginia state law. *See* Mem. in Supp. of Moving Defs.' Mot. to Dismiss, Jan. 26, 2018, ECF No. 206. Thus, ReBrook's representation of NSM and NF is not "directly adverse" to his representation of Schoep, and his representation of each client is not "materially limited" by his responsibilities to the others, Va. Rules of Prof'l Conduct R. 1.7(a), as all three Defendants share the same defenses against Plaintiffs' claims.

No conflict of interest exists where, as here, one lawyer jointly represents multiple parties with substantially similar—indeed, here, essentially identical—positions against the same adverse party. *See, e.g.*, *Wright v. Williamsburg Area Med. Assistance Corp. (WAMAC)*, No. 4:12-CV-152, 2013 WL 12184285, at *1–2 (E.D. Va. Apr. 9, 2013) (denying motion to disqualify attorney jointly representing multiple defendants that held "substantially similar positions in their respective cases to achieve the same ends – defending against the Plaintiffs' claims"); *see also Federico v. Lincoln Military Hous., LLC*, No. 2:12CV80, 2014 WL 12613388, at *3 (E.D. Va. May 23, 2014) (finding no conflict of interest even where one defendant had discussed possible settlement with plaintiffs because defendant agreed with theory of case held by other defendants); *cf.* Va. Rules of Prof'l Conduct R, 1.7(a) cmt. 27 ("[C]ommon representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them."). By contrast, Virginia courts have found conflicts of interest where, unlike here, there are

6

*substantial* discrepancies in the testimony and positions of various defendants represented by a single attorney. *See Sanford*, 687 F. Supp. 2d at 597–605 (finding unwaivable conflict of interest because of "substantial discrepancy" in parties' testimony and "incompatibility in positions in relation to an opposing party" (citation and internal quotation marks omitted)); *see also Wink, Inc. v. Wink Threading Studio, Inc.*, No. 2:10CV450, 2011 WL 3206915, at *5 (E.D. Va. July 26, 2011) (similar).

ReBrook's prior conduct in this litigation, continuing to represent all three Defendants even as circumstances allegedly changed, further confirms that no conflict of interest exists. On March 6, 2019, Schoep stepped down as Commander of NSM and appointed Colucci as NSM's new Commander. *See* Jeff Schoep, *Setting the Record Straight – Press Release*, NATIONAL SOCIALIST MOVEMENT (Mar. 6, 2019), https://www.nsm88.org/press/nsm-JS_press-release_march_6_2019.htm. Two weeks later, on March 18, 2019, in an *ex parte* email to the Court, ReBrook asserted himself as the new attorney for Schoep, NSM, and NF. *See* ReBrook Email to Court, Mar. 18, 2019, ECF No. 446.[4] On August 12, 2019, Schoep publicly purported to sever his ties with the white-supremacist movement in an announcement on his website that he had "realized many of the principles I had once held so dearly and sacrificed so much for were wrong." *See* Katie Mettler, *The 'race whisperer': A black activist convinced a neo-Nazi he'd save him from legal ruin. Then the real plan began.*, WASH. POST (Oct. 30, 2019), https://www.washingtonpost.com/graphics/2019/local/neo-nazi-group-takeover. Yet even after this point, ReBrook continued representing Schoep, NSM, and NF simultaneously, and in

---

[4] Given this timeline, ReBrook's statement in the Motion that "[a]t the time counsel agreed to represent NSM and NF, it was not known that Mr. Schoep would not only leave the NSM, but would also be speaking out against his former group as well as the White Nationalist movement," Mot. 1, is, at best, misleading.

7

particular, continued furthering NSM's obstruction of Court orders and discovery obligations. In December 2019, ReBrook then appeared for and defended the deposition of Colucci, sitting as the corporate representative of NSM. Dep. of Burt Colucci, Dec. 10, 2019, ECF No. 674-5 ("Colucci Dep"). The relevant circumstances—Schoep's departure from the movement, including NSM, and his alleged disavowal of white supremacism as practiced by NSM—were the same in December 2019 as they are now. Yet ReBrook did not claim a "concurrent conflict of interest" existed at any point until now. That is because such a conflict does not exist. Indeed, the only material difference between then and now is that Plaintiffs have recently filed a motion to compel NSM to produce documents that ReBrook has been aiding NSM in withholding, with no defensible legal basis to do so.

While the clear legal deficiency of ReBrook's claim of a conflict of interest is enough to reject his Motion, the facts belie the notion that any sort of conflict exists between Schoep and NSM. As Plaintiffs have already informed the Court, Schoep and Colucci were still communicating, and Schoep was looking out for Colucci's interests, at least as recently as October 2019. Specifically, in October 2019, Schoep warned Colucci by text message that an individual calling into Colucci's podcast with death threats was an informant who was "baiting" him. *See* Mot. to Compel NSM 17 n.15; Pls.' Mot. to Compel Schoep 6–7; Colucci Dep. 242–45. Meanwhile, Dietz, who was Schoep's girlfriend at least as late as December 2019, remained "[i]nformally" an NSM member who was responsible for updating the NSM website. *See* Mot. to Compel NSM 9 (alteration in original); Colucci Dep. 195–97, 203–04. As recently as December 2, 2019, Dietz updated the NSM website at Colucci's request. *See* Mot. to Compel NSM 17 n.15; Colucci Dep. 195–99, 203–04. Then, on December 17, 2019, after Plaintiffs asked ReBrook to identify the NSM representative responsible for NSM's unsigned interrogatory responses,

8

ReBrook informed Plaintiffs that Dietz was the "current Authorized Representative" of NSM for purposes of this litigation and provided Plaintiffs with a copy of NSM's responses to Plaintiffs' Second Set of Interrogatories that Dietz had signed on NSM's behalf. *See* Mot. to Compel NSM 18; ReBrook Email to Bloch, Dec. 17 2019, ECF No. 674-37. Even more astoundingly, ReBrook revealed to Plaintiffs earlier this month that Dietz is not just Schoep's girlfriend as well as an NSM member and NSM's legal representative in this litigation, but is also the legal assistant for ReBrook's law firm. *See* Dietz Email to Bloch & Phillips, Apr. 6, 2020, ECF No. 695-1.

Given that any claim of a "conflict of interest" is both legally invalid and absolutely contradicted by the facts, ReBrook's claim that a conflict of interest exists based on public comments Schoep has made is, at best, mere conjecture, which is insufficient to find a conflict of interest necessitating withdrawal. The Fourth Circuit has explained that there must be a "*present* conflict between the positions taken by the two groups of defendants in the defense of the lawsuit," *Richmond Hilton Assocs.*, 690 F.2d at 1089 (emphasis added), and "mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur" is insufficient to require withdrawal, *Shaffer*, 966 F.2d at 145; *see also Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197, 1200–01 (4th Cir. 1978) (emphasis added); *see Patterson v. Gemini Org.*, 238 F.3d 414, at *2 (4th Cir. 2000) (per curiam) (unpublished).[5]

Separately, ReBrook argues that he "has privity of contract with only one of the defendants in this civil litigation and that is Defendant Jeff Schoep," and that "it would be unethical for counsel

---

[5] Even if ReBrook's joint representation of Schoep, NSM, and NF involved a "concurrent conflict of interest"—and it does not—ReBrook nonetheless could represent all three clients by obtaining written consent and meeting certain other requirements under Rule 1.7(b) of the Virginia Rules of Professional Conduct. To the extent that the Court finds a conflict of interest to exist, Plaintiffs respectfully submit that the Court should require ReBrook to obtain the consent required under Rule 1.7(b), if at all practicable, and to proceed with the joint representation.

to leave his representation." Mot. 3. ReBrook provides no detail or legal citation supporting this cryptic and unexplained argument. Regardless, the relevant question is simply whether ReBrook formed an attorney-client relationship with NSM and NF. ReBrook evidently formed an attorney-client relationship with both NSM and NF: he held himself out to the Court as such and has represented both entities for the past year. ECF Nos. 446, 451. ReBrook cannot withdraw from representing NSM and NF simply by claiming that "Schoep is the only client that counsel has a privity of contract [*sic*] with" and suggesting that Schoep somehow takes priority over NSM and NF as a result. *See* Mot. 3.

Given that no "concurrent conflict of interest" exists requiring ReBrook's withdrawal, all indications are that ReBrook's motion is merely pretextual. Facing Plaintiffs' motion to compel discovery from NSM and unwilling to oppose Plaintiffs' motion or to perform the work necessary to investigate NSM custodians and produce relevant documents (as he has been for months), ReBrook decided not to oppose Plaintiffs' motion, but simply to move to withdraw as NSM's counsel. The Court should not reward ReBrook's conduct by allowing him to withdraw. Indeed, it was precisely ReBrook's refusal to investigate potential custodians of responsive documents— followed by the legal argument that he made for NSM that NSM as incorporated in Florida by Colucci is a separate entity from NSM as led by Schoep and therefore not subject to Plaintiffs' discovery requests—that compelled Plaintiffs to file the motion to compel in the first place. In other words, ReBrook himself is a principal reason why Plaintiffs were forced to move to compel discovery from NSM. ReBrook, and NSM, should not benefit from this gamesmanship.

10

## II. Granting ReBrook's Motion to Withdraw as Counsel Will Enable NSM to Disappear from the Litigation Entirely

Especially given that no "concurrent conflict of interest" exists under the Virginia Rules of Professional Conduct, the Court should not allow ReBrook to withdraw as counsel because such withdrawal will effectively mean the end of NSM's participation in this lawsuit.

As the Court has recognized, an organization that is a party to a lawsuit "cannot appear pro se as an artificial entity in any federal court litigation[.]" *Tweedy*, 611 F. Supp. 2d at 605 n.2. Rather, an organization can "appear in the federal courts only through licensed counsel." *Rowland*, 506 U.S. at 202; *see Office Parks of Lynchburg, LLC v. Wells Fargo Banks, N.A.*, No. 6:12-CV-00034, 2012 WL 4325567, at *3 (W.D. Va. Sept. 20, 2012) (Moon, J.) ("A business entity or corporation involved in litigation in Virginia must be represented by an attorney licensed to practice in Virginia."); Order, Feb. 22, 2019, ECF No. 427. This Court has previously stricken filings submitted by a defendant organization that was not represented by counsel and instructed it to retain counsel. *See* Order, Jan. 3, 2018, ECF No. 166; Order, Mar. 15, 2018, ECF No. 275. Thus, if ReBrook withdraws as counsel for NSM and NF, they would not be entitled to represent themselves *pro se* and would be required to retain counsel.

Compounding this problem is that, since Schoep stepped down as Commander and appointed Colucci in his stead, Colucci has taken the factually and legally false position—abetted by ReBrook—that NSM as incorporated by Colucci in Florida is a separate entity from the NSM that Plaintiffs sued. *See* Mot. to Compel NSM 7–9, 19–22. Thus, even if NSM were legally able to represent itself *pro se*, it would very likely be unwilling to do so in light of Colucci's specious position. And Colucci has already made clear that he absolutely refuses to participate in this litigation and will similarly refuse to retain counsel. *See, e.g.*, *id.* at 14 (quoting Colucci's statement, "I am not named as a defendant in that lawsuit and do not have to answer to uncle Zog").

11

Thus, the inevitable result of a decision allowing ReBrook to withdraw as counsel will be the disappearance and default of NSM, as has already occurred with all too many Defendants in this lawsuit. *See* Clerk's Entry of Default, Mar. 14, 2018, ECF No. 268 (Andrew Anglin and Moonbase Holdings, LLC); Clerk's Entry of Default, Mar. 14, 2018, ECF No. 269 (East Coast Knights of the Ku Klux Klan); Clerk's Entry of Default, Mar. 14, 2018, ECF No. 270 (Fraternal Order of the Alt-Knights); Clerk's Entry of Default, Mar. 14, 2018, ECF No. 271 (Augustus Sol Invictus); Clerk's Entry of Default, Mar. 16, 2018, ECF No. 280 (Loyal White Knights of the Ku Klux Klan).

At the same time, as Plaintiffs have previously informed the Court, the discovery process (particularly Colucci's deposition) has revealed that NSM is sitting on numerous responsive documents, social-media accounts, and electronic devices that NSM, thanks in large part to ReBrook's refusal to participate in discovery in good faith, has withheld. *See* Mot. to Compel NSM 13–17, 22–25. Moreover, these documents appear to implicate other Defendants, including Schoep himself, Jason Kessler, Matthew Heimbach, Michael Hill, and Michael Tubbs. *See, e.g.*, *id.* at 14–15.

Accordingly, merely allowing NSM to disappear would leave Plaintiffs with a substantial and prejudicial evidentiary gap. Plaintiffs should not be forced to settle for a default judgment against NSM, the inevitable result of granting ReBrook's Motion, without receiving adverse inferences or the NSM documents themselves to remedy the prejudice to Plaintiffs. Especially given that Plaintiffs' allegations in this case center on a conspiracy to commit racially-motivated violence, a default judgment against an alleged key member of the conspiracy, intentionally withholding scores of documents relevant to and implicating other Defendants, would be particularly prejudicial to Plaintiffs' ability to prove their claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny ReBrook's Motion to Withdraw as Attorney for National Socialist Movement and Nationalist Front.

Dated: April 13, 2020

Respectfully submitted,

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com
kcheng@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275

<div style="display: flex;">

alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

</div>

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

I further hereby certify that on April 13, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

| | |
|---|---|
| Christopher Cantwell<br>christopher.cantwell@gmail.com | Vanguard America<br>c/o Dillon Hopper<br>dillon_hopper@protonmail.com |
| Robert Azzmador Ray<br>azzmador@gmail.com | Elliott Kline a/k/a Eli Mosley<br>eli.f.mosley@gmail.com<br>deplorabletruth@gmail.com |
| Matthew Heimbach<br>matthew.w.heimbach@gmail.com | |

/s/ Robert T. Cahill
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*

"