**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

ELIZABETH SINES, SETH
WISPELWEY, MARISSA BLAIR, APRIL
MUNIZ, MARCUS MARTIN, NATALIE
ROMERO, CHELSEA ALVARADO,
JOHN DOE, and THOMAS BAKER,

                        Plaintiffs,

  v.

  JASON KESSLER, et al.,

                        Defendants.

**Civil Action No. 3:17-cv-00072-NKM-JCH**

**PLAINTIFFS' RENEWED MOTION FOR SANCTIONS AGAINST**
**DEFENDANT VANGUARD AMERICA**

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 1

    I.    Vanguard's Pivotal Role in the Conspiracy to Commit Racially Motivated
    Violence at Charlottesville................................................................................... 1

    II.    Vanguard's Repeated Failure to Comply with Its Discovery Obligations
    Throughout this Litigation ................................................................................... 3

    III.    Hopper's Testimony Confirms His Failure to Produce Vanguard's Social Media
    and Email Accounts and His Failure to Preserve Evidence................................. 4

        A.    Hopper's Testimony Concerning Vanguard's Social Media and Email
        Accounts ................................................................................................ 4

        B.    Hopper's Testimony Concerning His Intentional Failure to Preserve
        Evidence, and the Destruction of Evidence Material to This Litigation.............. 5

    IV.    Rousseau's Testimony Likewise Confirms His Failure to Produce Vanguard's
    Social Media and Email Accounts and His Failure to Preserve Material Evidence ......... 6

        A.    Rousseau's Testimony Concerning his Social Media and Email Accounts ........ 6

        B.    Rousseau's Testimony Concerning His Intentional Failure to Preserve
        Evidence and the Destruction of Evidence Material to this Litigation ................ 8

    V.    Hopper and Rousseau Once Again Disappear From this Litigation ................................. 9

ARGUMENT........................................................................................................................ 12

    I.    Adverse Inferences are Warranted in Light of Vanguard's Systemic Spoliation of
    Material Evidence .............................................................................................. 12

    II.    Adverse Inferences are Warranted in Light of Vanguard's Willful Failure to
    Comply with Discovery and Flagrant Violation of Numerous Court Orders ................. 18

CONCLUSION..................................................................................................................... 20

**Table of Authorities**

**Page(s)**

**Cases**

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians,*
    155 F.3d 500 (4th Cir. 1998) ............................................................................ 18

*Buckley v. Mukasey,*
    538 F.3d 306 (4th Cir. 2008) ............................................................................ 12

*Butler v. DirectSat USA, LLC,*
    2013 WL 6629240 (D. Md. Dec. 16, 2013) ...................................................... 20

*Callahan v. Pac. Cycle, Inc.,*
    756 F. App'x 216 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1458 (2019) ...................................... 13, 17

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
    803 F. Supp. 2d 469 (E.D. Va. 2011) ................................................................ 14

*Hodge v. Wal-Mart Stores, Inc.,*
    360 F.3d 446 (4th Cir. 2004) ............................................................................ 13

*King v. Am. Power Conversion Corp.,*
    181 F. App'x 373 (4th Cir. 2006) ...................................................................... 12

*Lee v. Max Int'l, LLC,*
    638 F.3d 1318 (10th Cir. 2011) ........................................................................ 19

*Mut. Fed. Sav. & Loan v. Richards & Ass'n,*
    872 F.2d 88 (4th Cir. 1989) .............................................................................. 18

*Silvestri v. Gen. Motors Corp.,*
    271 F.3d 583 (4th Cir. 2001) ....................................................................*passim*

*Sines v. Kessler,*
    2019 WL 3767475 (W.D. Va. Aug. 9, 2019) .............................................. 18, 19

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
    327 F.R.D. 96 (E.D. Va. 2018) ......................................................................... 12

*Thompson v. Clarke,*
    2019 WL 4039634 (W.D. Va. Aug. 27, 2019) .................................................. 12

*Thompson v. U.S. Dep't of Hous. & Urban Dev.,*
    219 F.R.D. 93 (D. Md. 2003) ........................................................................... 13

*Victor Stanley, Inc. v. Creative Pipe, Inc.,*
    269 F.R.D. 497 (D. Md. 2010) ......................................................... 12, 15, 17, 18

**Table of Authorities**
(continued)

**Page(s)**

*Vodusek v. Bayliner Marine Corp.*,
 71 F.3d 148 (4th Cir. 1995) ....................................................................................................... *passim*

*West v. Goodyear Tire & Rubber Co.*,
 167 F.3d 776 (2d Cir. 1999) ................................................................................................... 12

*Young Again Prod., Inc. v. Acord*,
 459 F. App'x 294 (4th Cir. 2011) .......................................................................................... 18, 19

## Other Authorities

Federal Rule of Civil Procedure
 37 ............................................................................................................................................. 1, 18
 37(b)(2) ................................................................................................................................... 18
 37(d)(3) ................................................................................................................................... 18
 37(e) ......................................................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiffs move for the imposition of sanctions against Defendant Vanguard America ("Vanguard") in light of Vanguard's abject failure to comply with its discovery obligations in this litigation. Party document discovery in this matter closed approximately three months ago, and it is clear that Plaintiffs will **never** be able to obtain the full universe of discovery to which they are entitled based on Vanguard's spoliation of material evidence in this case. For these reasons and others identified in Plaintiffs' prior Motion for Sanctions against Defendant Vanguard America (*see* Dkt. 465 ("First Sanctions Motion")), Plaintiffs respectfully request that the Court impose the following sanction against Vanguard and its authorized representatives, Dillon Ulysses Hopper ("Hopper") and Thomas Ryan Rousseau ("Rousseau"), at the trial in this action pursuant to rule Fed. R. Civ. P. 37 and the Court's own inherent authority:

> 1.     That the Court instruct the jury that Defendant Vanguard intentionally chose to withhold its documents and that the jury may draw adverse inferences from that fact, including that Vanguard chose to withhold such documents because it was aware that such documents contained evidence that Defendant Vanguard conspired to plan racially-motivated violence at the Unite the Right event.

## BACKGROUND

### I.     Vanguard's Pivotal Role in the Conspiracy to Commit Racially Motivated Violence at Charlottesville

Vanguard "is a white nationalist group" that served as "one of the early architects of the Defendants' conspiracy to commit racially motivated violence in Charlottesville." (*See* Dkt. 539 (Memorandum Opinion at 10) ("Mem. Op.")); First Sanctions Motion at 2.) Vanguard members actively participated in planning and promoting Unite the Right on Discord servers entitled, for example, "Southern Front," "Cville Vanguard," and "Charlottesvillse 2.0." (Mem. Op. at 10; Ex. 2 (Rousseau Depo. Ex. 80); Ex. 3 (Hopper Depo. Ex. 30).) On these Discord servers, Rousseau, acting in his capacity as "one of Vanguard's leaders," "urged other members to contact him directly

if they planned to attend the Unite the Right event and if they wanted to travel together in a hate

bus," and further advised members "not to openly carry large knives because that would look[]

really dumb."  (Mem. Op. at 10 (internal quotation marks and citation omitted).)   Hopper also

posted in the Charlottesville 2.0 server, asking participants whether he should "get some shields"

for the rally.   (Ex. 3 (Hopper Depo. Ex. 30).)   In discussions with those responsible for planning,

Hopper provided Kessler with his own suggestion for a "6 word speech, 'Gas the kikes.  Race war

now.'"  (Ex. 4.)

Following that participation in the planning, Vanguard America showed up in significant

numbers in uniform on Saturday, marching and causing violence, including its member Defendant

James Fields.  Indeed, Vanguard members "led the march to the park 'chanting Blood and soil!'"

shortly before Defendant Fields "intentionally drove his Dodge Challenger into a group of counter-

protestors, killing one person and injuring several Plaintiffs." (Mem. Op. at 11.)  Rousseau utilized

Discord to coordinate Vanguard's movements on the ground during Unite the Right, telling

members "[t]oday's the big day.  Head to McCintire [sic] park.  Carpool as much as possible,

spaces are limited.  Bring any gear you plan to have at the rally," and further alerting members that

> "[t]he leadership meeting is compromised, so leadership is going alongside anyone
> wanting to provide security.  There will also be a VA general meeting afterwards,
> before the tiki march. I suggest everyone attend the leadership meeting who can to
> provide security and be present for the general meeting afterwards. Stay tuned for
> times and locations. Leadership meeting is set at 7. Be ready then."

(Ex. 2 (Rousseau Ex. 80); Ex. 5 (Discord Excerpt); *see also* Ex. 6 (Discord Excerpt) ("We aren't

open carrying. We have people who are concealed carrying.").)

After Saturday's morning activities, and Fields' murder of Heather Heyer with his

automobile in the early afternoon, Vanguard members further turned to Discord to celebrate

Fields' actions, including by posting a meme depicting "Plaintiff Martin flying through the air with

the caption 'Can't Dodge This.'"  (Mem. Op. at 11.)  Hopper likewise joked about Fields' slaying

Heather Heyer, posting in Discord that, "[y]ou don't total out a 2010 Dodge Challenger SE for shits and giggles. Even if it's only a bitch V6," while Rousseau in turn asserted that "Fields didnu nuffin tbh" (*i.e.*, "Fields didn't do nothing, to be honest"). (Ex. 7 (Hopper Depo. Ex. 31)); Ex. 8 (Rousseau Depo. Ex. 101).)

## II.   Vanguard's Repeated Failure to Comply with Its Discovery Obligations Throughout this Litigation

As the Court previously recognized, Vanguard has "continually failed to fulfil even [its] most basic obligations to this Court, [its] counsel, and other parties to this case." (Mem. Op. at 2.) Vanguard's calculated "refusal to meaningfully participate in discovery . . . despite repeated court orders directing [it] to do so" effectively "stalled" this litigation for a period of years, to Plaintiffs' severe detriment. (*Id.*) Indeed, Vanguard did not produce a ***single document from its social media and email accounts***, and additionally failed to provide Plaintiffs with complete and accurate responses to their interrogatories. Nor has Vanguard complied with its obligations to preserve evidence in this case. To the contrary, Vanguard has conceded that "[n]o special steps were taken" to preserve relevant documents and communications, even when Vanguard was represented by counsel. (Ex. 9 at 3 (Defendant Vanguard America's Responses to Plaintiffs' First Interrogatories and Request for Production of Documents).)

Faced with such intransigence, Vanguard's (former) counsel went so far as to concede that the organization is "a problem" and confirm that Vanguard has "made clear that 'they don't intend to produce any discovery' or 'participate in the litigation.'" (Mem. Op. at 26.) On April 3, 2019, Vanguard's counsel filed a motion to withdraw on grounds that Vanguard refused to heed counsel's "instructions or requests regarding discovery obligations as to electronically stored information," failed to comply with the Court's Order to Show Cause, and additionally failed to provide counsel with an explanation as to why Vanguard should be excused from the Order to

Show Cause or provided additional time in which to comply with the Court's Orders.  (*See* Dkt. 459, 460.)  On June 3, 2019, the Court granted this motion, finding that good cause existed where Vanguard had chosen to "stop[] communicating" with counsel.  (Dkt. 497.)

**III.  Hopper's Testimony Confirms His Failure to Produce Vanguard's Social Media and Email Accounts and His Failure to Preserve Evidence**

> **A.  Hopper's Testimony Concerning Vanguard's Social Media and Email Accounts**

After Plaintiffs filed their First Sanctions Motion, and following a hearing before the Court on July 2, 2019, the Court issued an Order directing Hopper to fully comply with his discovery obligations, as well as to sit for a deposition concerning "his and Vanguard America's conduct in pretrial discovery, including their efforts to preserve any documents, information, or materials that are potentially relevant to this litigation."  (Dkt. 517 at 3.)  Mr. Hopper sat for his Court ordered deposition on August 13, 2019.  (*See* Ex. 10 (Excerpt of Hopper Deposition Tr.).)  During his deposition, Hopper professed an inability to remember even basic information about Vanguard's Discord servers and other social media accounts.  (*See id.* at 32:10-15 ███████████████

██████████████████████████████████████████████████

██████████████████████████ ); 43:23-25 █████████████████████

████████████████████████████████ ; 175:17-20 █████████████

██████████████████████████████████████████████████

█████████████████████████████ ).)  Hopper likewise maintained that he was unable to provide credentials or passwords for the myriad Vanguard accounts identified by Plaintiffs.  (*Id.* at 107:11-13 ████████████████████████████████████████████

████████████████ Hopper further testified that he could not recall the names of numerous email accounts because they were just █████████████████ that were generated for the sole purpose of creating Discord and other social media accounts.  (*Id.* at 116:18-24.)

**B.      Hopper's Testimony Concerning His Intentional Failure to Preserve Evidence, and the Destruction of Evidence Material to This Litigation**

In his deposition, Hopper conceded that he did not contact Vanguard members to inform of them of their duty to preserve documents (*see id.* at 111:20-24) or endeavor to collect documents and information responsive to Plaintiffs' requests from Vanguard members. Of even greater concern, Hopper testified that the single electronic device that he utilized in the period leading up to and during Unite the Right,[1] a Samsung mobile phone, had alternatively ████████████ ████████████████████████████████████████████ (*Id.* at 73:13-21; 108:22-25.) Hopper further testified that he failed to transfer the vast majority of data from that mobile phone to his current device, and the earliest text message he could now access was conveniently dated October 9, 2017. (*Id.* at 73:13-21; 109:13-19.) Hopper also testified that the phone ████████ ███████████████████████ (*Id.* at 109:4-5.) Indeed, the third party discovery vendor has since confirmed that Hopper's phone is completely inoperable and its data unrecoverable. (Ex. 11 (Email from K. Kim to D. Roy dated December 5, 2019).)

In his defense, Hopper repeatedly offered the same conclusory, and frankly incredible, assertions that he was "confused" or did not understand his discovery obligations, (Ex. 10 at 104:3-8 ████████████████████████████████████████████████"); 122:6-8 (█████ ████████████████████████████████████████████████ even though he was represented by counsel who Hopper admitted had advised him of his responsibilities.[2] (*Id.* at

---

[1] Hopper's testimony squarely contradicts Vanguard's singular response to Plaintiffs' discovery requests, wherein Vanguard identified "VA member desktop computers and mobile devices" as Electronic Devices used to communicate about Unite the Right. (Ex. 7 at p.2.) Moreover, Plaintiffs find it difficult to believe that Hopper limited himself to a mobile phone, particularly where Hopper testified that he authored lengthy documents, including Vanguard's ████████ ██████" (*See* Ex. 10 at 63:7-11

[2] In the alternative, Hopper sought to pin the blame for Vanguard's non-compliance on Rousseau, who had allegedly ousted him from his leadership role in Vanguard America months before Unite



101:13-19 ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████); *see also* Dkt. 460 ("Mr.

Kolenich previously had detailed, though privileged, discussions with Vanguard regarding the

electronic discovery process.").)

## IV. Rousseau's Testimony Likewise Confirms His Failure to Produce Vanguard's Social Media and Email Accounts and His Failure to Preserve Material Evidence

### A. Rousseau's Testimony Concerning his Social Media and Email Accounts

On October 17, 2019, Rousseau sat for his Court-ordered deposition.[3]  (Ex. 12 (Excerpt of

Rousseau Deposition Tr.).)  Rousseau confirmed that he was in charge of Vanguard's social media

accounts, as well as that he served as an "assistant" to Hopper prior to his leave of absence.  (*Id.*

at 123:8-10 ███████████████████████████████████████████

████████████); 116:5-9 (" ███████████████████████████████

███████████████████████████████).)  Rousseau also willingly admitted that

he was active in planning Unite the Right, including by participating in numerous leadership

conference calls orchestrated by Defendant Kessler, and utilizing Discord and Vanguard's other

social media accounts to plan and promote the rally.  (*Id.* at 20:2-4; 25:24-25.)  Rousseau further

---

the Right, and had primary responsibility for creating and operating Vanguard's social media
accounts, including moderating Vanguard's Discord servers.  (*See* Ex. 10 at 114:25-115; 30:18-
20.)

[3] On September 5, 2019, in light of Hopper's sworn testimony that Rousseau was in charge of
Vanguard and its social media accounts in the months leading up to and during Unite the Right,
Plaintiffs petitioned the Court for leave to conduct a discovery deposition of Rousseau as
Vanguard's authorized representative. (Dkt. 551.)  The following day, the Court granted Plaintiffs'
motion.  (Dkt. 553).

testified that he attended Unite the Right with Vanguard, and that he even intended to give a speech at the rally.[4]  (*Id.* at 229:14-16; 230:12-13.)

As with Hopper, Rousseau demonstrated an inability to recall the names of social media accounts associated with Vanguard, even where he simultaneously admitted to creating and controlling those very accounts.  (*Id.* at 40:14-20 ████████████████████████

████████████████████████████████████████████

████████████████ 41:8-12 (" ██████████████████████████████

██████████████████████████████████  The same was true for Vanguard's

email accounts.  (*Id.* at 72:1-18 " ██████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ ).)  Rousseau further testified that he

generally programs his applications to ***automatically delete*** messages after a set period of time.

(*Id.* at 30:23-31:8.)  For example, Rousseau maintained that he currently communicates on his own

internal messaging server, which is programmed to ████████████████████████████

████████████████  (*Id.* at 31:9-11.)

---

[4] Towards the conclusion of his deposition, Rousseau sought to portray his participation in Unite the Right as the product of youthful naiveté.  (Ex. 12 at 247:4-8 ( ████████████████████

████████████████████████████████████████████

████████████████████ ").  This newly professed innocence is absurd in light of Rousseau's prolific record of violent, hate-filled Discord posts, as well as his self-professed experience in far-right activism.  Indeed, Rousseau testified that he continues to engage in such activism at the helm of Patriot Front, an organization he founded after Unite the Right in order to rebrand Vanguard.  *See* Patriot Front (Southern Poverty Law Center), https://www.splcenter.org/fighting-hate/extremist-files/group/patriot-front ("Patriot Front is an image-obsessed organization that rehabilitated the explicitly fascist agenda of Vanguard America with garish patriotism.").  Under Rousseau's leadership, Patriot Front has become one of the most active white-nationalist organizations in the country—in 2019 alone, Patriot Front "was responsible for 66 percent of all propaganda incidents [in the United States] (67 percent of non-campus and 59 percent of on-campus), far more than any other group."  *See* White Supremacists Double Down on Propaganda in 2019, (Anti-Defamation League), https://www.adl.org/blog/white-supremacists-double-down-on-propaganda-in-2019 .

**B. Rousseau's Testimony Concerning His Intentional Failure to Preserve Evidence and the Destruction of Evidence Material to this Litigation**

In yet another echo of Hopper's deposition, Rousseau conceded that he was aware of this litigation from its inception, but nevertheless chose not to comply with his discovery obligations. More specifically, Rousseau confirmed that he received a subpoena from Plaintiffs on November 1, 2018, and that he understood that it required him to produce documents. (Ex. 12 at 76:21-77:4; 78:2-5.) Rousseau further testified that he consulted with an un-named attorney to draft a response to Plaintiffs' subpoena, as well as that this attorney had contacted him via an unspecified online platform even prior to receiving the subpoena. (*Id*. at 79:9-12; 80:8-15.)

Rousseau also testified that two of his electronic devices were conveniently destroyed since the onset of this litigation and are now definitively unavailable to Plaintiffs. For instance, Rousseau informed Plaintiffs that he had previously disposed of a desktop computer he utilized in connection with Unite the Right. (*Id*. at 47:19-21.) When pressed for an explanation, Rousseau maintained that the desktop's data had been "corrupted" after he spontaneously changed the computer's operating system because his ████████████ [5] (*Id*. at 47:5-6; 46:3-16 ████████

████████████████████████████████████████████████████

████████████ ).) Rousseau also confirmed that he never backed up the

desktop's data. (*Id*. at 47:9-12 ████████████████████

████████████████████████████ Rousseau also testified that one of his

Samsung mobile devices, which was likely utilized in connection with Unite the Right,[6] "████

---

[5] Rousseau concedes that any evidence on this desktop is definitively lost to Plaintiffs. (Ex. 12 at 87:4-10 ████████████████████████████████████████████

████████████

[6] Rousseau testified that he had two additional Samsung phones: his current device, which allegedly does not contain any responsive information, and an older device that pre-dated his

(*Id.* at 54:2-6; *see also* 57:6-13

)

## V. Hopper and Rousseau Once Again Disappear From this Litigation

At the conclusion of his deposition, Hopper agreed to fill out and execute consent forms for the social media accounts identified by Plaintiffs, as well as to complete the requisite ESI Certification form. (Ex. 10 at 216:15-20; *see also* Ex. 13 (Hopper Executed Consents); Ex. 14 (Hopper Executed ESI Certification).) Further, Hopper represented that he would send his current mobile device to the Vendor for imagining within                         (Ex. 10 at 216:21-217:10.) Likewise, Rousseau completed and executed a consent for a number of his Twitter accounts, as well as the ESI Certification, and further represented that he would promptly complete and submit Discord authorizations, and submit his electronic devices to the Vendor. (*See* Ex. 15 (Rousseau Executed Consent); Ex. 16 (Rousseau Executed ESI Certification).)

Unfortunately, but perhaps unsurprisingly, Hopper and Rousseau's facial efforts to comply with the Court's Orders lasted only for the length of their respective depositions. Hopper failed to provide responses to Plaintiffs' requests for production and interrogatories, and the Vendor has informed Plaintiffs that they are unable to access any of Hopper's email or private social media

---

"broken" Samsung. (Ex. 12 at 100:13-101:13.) Rousseau professed not to know exactly which Samsung mobile phone he utilized during Unite the Right, but his testimony illustrates that it was likely the "broken" device. (*See id.* at 54:7-16

). Rousseau failed to provide any of these devices to the Vendor for imaging prior to the close of discovery.

accounts due to his failure to provide requisite credentials and/or passwords. (Ex. 11.) Moreover, Hopper only submitted his functional mobile device to the Vendor for imaging on or about January 23, 2020 – over *two years* since he was served with Plaintiffs' discovery requests, *six months* since his deposition, and *one month* since his receipt of yet another deficiency letter sent by Plaintiffs.[7] (Ex. 25 (Email from K. Kim to D. Roy dated January 24, 2020).) Unsurprisingly, the documents culled from this device were primarily irrelevant, blank, or inexplicably contain only standalone numerals. (*See, e.g.*, Ex. 26 (DH00000001) ("90"); Ex. 27 (DH00000002) (blank); Ex. 28 (DH00002352).)

What little substantive content was available from the device only further confirms that Hopper has intentionally stonewalled discovery in bad faith throughout what he refers to as this ▮▮▮▮▮▮▮▮▮▮ (Ex. 21 (DH00004329) (emphasis added).) Indeed, Hopper openly boasted that he had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (Ex. 22 (DH00004275) (emphasis added).) The device's contents additionally confirm that Hopper has perjured himself throughout discovery process, and has engaged in the willful destruction of material evidence. (*See* Ex. 23 (DH00001377) ▮▮▮▮▮▮▮▮

---

[7] Plaintiffs sent Hopper this letter in a final attempt to procure his compliance without the Court's intervention. (Ex. 17 (Ltr. from A. Levine to D. Hopper dated Dec. 9, 2019).) Hopper responded to Plaintiffs by stating: "Yeah, sorry about that. I've been busy and my current phone is my only communication device that I own. I'll try to get to it asap."[7] (Ex. 18 (Email from D. Hopper to D. Roy dated December 9, 2019).) This response is all the more galling considering that Hopper has not been too "busy" to text his co-Defendant Kline *during an October 18, 2019 court conference* to offer Kline his assistance, stating ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Ex. 19 (Text Message from D. Hopper to E. Kline dated October 18, 2019 (emphasis added)).) Hopper even had the free time to reiterate his views to Kline the following day, texting him that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Ex. 20 (Text Message from D. Hopper to E. Kline dated October 19, 2019).)

██████████████████████████); (Ex. 24 (DH00004322) ██████████████████████████

████████████████████████████████ Finally, the documents reveal Hopper's appalling

level of contempt for both the Court and this litigation as a whole.  Hopper maintained, for instance,

that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████ (Exs. 22 and 24.)

Hopper's contumacious behavior is only exacerbated by Rousseau's utter silence.

Rousseau, through counsel, has refused to respond meaningfully to numerous communications

from Plaintiffs seeking his compliance with the Courts' Orders over a period of nearly three

months.  (*See* Ex. 29 (Email from D. Roy to B. Gleason dated October 24, 2019); Ex. 30 (Email

from D. Roy to B. Gleason dated November 4, 2019); Ex. 31 (Email from B. Gleason to D. Roy

dated November 6, 2019); Ex. 32 (Email from D. Roy to B. Gleason dated December 4, 2019).)

Indeed, the third party discovery vendor informed Plaintiffs that they have ***not received a single***

***communication from Rousseau or his counsel***, much less any of his electronic devices or social

media credentials.  (Ex. 11 (Email from K. Kim to D. Roy dated December 5, 2019).)  In response

to  Plaintiffs  demand  that  Rousseau  immediately  comply  with  his  discovery  obligations,

Rousseau's counsel represented that he "spoke to [Rousseau] last week and he's all ready to send

the phone and such.  I'll send you the discord doc this afternoon."  (Ex. 33 (Email from B. Gleason

to D. Roy dated December 9, 2019).)  Not only did Rousseau's counsel fail to produce the promised

Discord authorization, but also he subsequently informed Plaintiffs that he no longer represented

Rousseau and that Rousseau had actually been "radio silent" since November.  (Ex. 34 (Email

from B. Gleason to D. Roy dated December 18, 2019).)

11

## ARGUMENT

### I.  Adverse Inferences are Warranted in Light of Vanguard's Systemic Spoliation of Material Evidence

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  "When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted," the trial court may impose an "appropriate sanction" under both the Federal Rules and its inherent authority.  *See King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376 (4th Cir. 2006); *see also Thompson v. Clarke*, 2019 WL 4039634, at *3 (W.D. Va. Aug. 27, 2019) ("A district court's power to sanction a party for spoliation of [ESI] derives from both Federal Rule of Civil Procedure 37(e) and the court's 'inherent power to control the judicial process and litigation[.]'").  Under either analysis, the court's inquiry essentially "asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve."  *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).  Moreover, "[i]n the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010).  While bad faith is accordingly not a prerequisite to spoliation, a finding of bad faith necessarily implicates the willful intent to deprive because it requires "'destruction for the purpose of depriving the adversary of the evidence[.]'"  *See id.* at 530 (citing *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008)); *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("While a finding of bad faith suffices to permit such an inference, it is not always necessary.").

12

In determining the proper sanction for spoliation, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek*, 71 F.3d at 156. This "broad discretion" extends to "permit[ting] a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence." *Id.*; *see also Callahan v. Pac. Cycle, Inc.,* 756 F. App'x 216, 227 (4th Cir. 2018) ("Before permitting a jury to draw an adverse inference from the absence, loss, or destruction of evidence, a trial court must find that the evidence at issue was relevant such that it 'would naturally have been introduced into evidence' and that the 'intentional conduct' of the party in control of the evidence contributed to its loss or destruction."), *cert. denied*, 139 S. Ct. 1458 (2019); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) ("One sanction that courts have imposed pursuant to their inherent authority upon finding that spoliation of evidence has occurred is to give an adverse inference instruction to the jury."). "Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that 'the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.'" *Vodusek*, 71 F.3d at 156 (alteration in original) (citation omitted); *see also Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) ("The spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence . . . but also against one who fails to preserve or produce evidence[.]").

Here, Plaintiffs request that the Court instruct the jury that Vanguard chose to intentionally withhold its documents and that the jury may draw adverse inferences from that fact, including that Vanguard chose to withhold such documents because it was aware that such documents

contained evidence that Defendant Vanguard conspired to plan racially-motivated violence at the Unite the Right.  The record leaves little doubt that the imposition of this sanction is required in order to "level[] the evidentiary playing field and . . . sanction[] [Vanguard's] improper conduct." *Vodusek*, 71 F.3d at 156.

*First*, there is no question that Vanguard "had a duty to preserve documents or materials that may be relevant to" this litigation.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011).  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *Silvestri*, 271 F.3d at 591. Moreover, even "[i]f a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."  *Id.*  The record demonstrates that Vanguard's authorized representatives anticipated litigation almost immediately following the events of Unite the Right, and certainly by the time Plaintiffs initiated this litigation.  For example, Rousseau testified that he contacted ███████████ ████████████████████████████████████████████████████████████████████████ ████████ (Ex. 12 at 244:7-25.)  Rousseau additionally testified that he received a subpoena from Plaintiffs seeking relevant documents on ***November 1, 2018***, as well as that he had consulted with an attorney even prior to that date.  (*Id*. at 76:21-77:4; 78:2-5; 79:9-12; 80:8-15.)  Hopper likewise testified that he was physically served with Plaintiffs Complaint, and that shortly thereafter he contacted and retained Mr. James Kolenich to represent Vanguard America.  (Ex. 10 at 92:2-20; 93:5-18.)  In light of this sworn testimony, it is clear that Vanguard's representatives anticipated

litigation mere days after Unite the Right, and that Vanguard unquestionably had an obligation to preserve documents by the time they learned Plaintiffs filed their complaint on October 11, 2017.

*Second*, the record is replete with illustrations of Hopper and Rousseau's intentional failure both to preserve and collect relevant evidence,[8] and to produce relevant and material evidence that admittedly remains in their possession.  As an initial matter, Vanguard's sole, albeit drastically inadequate, discovery response affirms that Vanguard took no steps to preserve documents after the initiation of this litigation.  (Ex. 7 at 3 (confirming that "[n]o special steps were taken" to preserve relevant documents or communications).)  Hopper further testified that he failed to notify Vanguard members of their obligation to preserve relevant documents, much less collect relevant documents in other Vanguard members' possession.  (*See* Ex. 10 at 111:20-24.)  Even if Plaintiffs were to assume, *arguendo*, that relevant documents have been miraculously preserved, Plaintiffs have no cause to believe that Vanguard would actually produce them.  Hopper openly concedes that he has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ this litigation, and has otherwise employed a discovery strategy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ (Ex. 22 (emphasis added).)  Indeed, Vanguard ***failed to produce a single document over a nearly two year period***, in flagrant contempt of numerous Court Orders, and has only belatedly produced a limited subset of irrelevant documents.  Hopper and Rousseau have additionally admitted under oath that they currently possess relevant documents and electronic devices, which they nevertheless have declined to produce or turn over to the Vendor as required. (*See* Ex. 12 at 99:7-23 (in possession of text messages and articles relevant to litigation); Ex. 11 (Vendor unable to access any of Hopper's email or social media accounts due to failure to provide

---

[8] There is no serious dispute that the evidence at issue is relevant to this litigation.  In any case, "[w]hen the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit." *Victor Stanley*, 269 F.R.D. at 532.

credentials).)  Vanguard's willful failure to produce these relevant materials alone justifies the imposition of Plaintiffs' requested sanctions.  *See Vodusek*, 71 F.3d at 156 ("Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that 'the party fears [to produce the evidence][.]'"); *Silvestri*, 271 F.3d at 594 (upholding sanction of dismissal, even absent bad faith, where the spoliation was "highly prejudicial" and left party without evidence to prove its claims).

Further, and of even greater import, the record reveals that Vanguard's authorized representatives engaged in the willful destruction of material evidence in this case, which evidence is now irretrievably lost to Plaintiffs.[9]  Rousseau's testimony compels Plaintiffs to believe they will ***never*** be able to access the entirety of Rousseau's communications, even if he were able to miraculously recall these accounts' names and credentials.  Rousseau specifically testified that he affirmatively programs his applications to delete all communications after a set period time, presumably with this very situation in mind.  (Ex. 12 at 30:24-25 ██████████████████

████████████████████████████.)

As to their electronic devices, both Hopper and Rousseau testified that the key devices they utilized in connection with Unite the Right, including their mobile devices and Rousseau's desktop computer, have all miraculously been destroyed since the onset of this litigation.  While Hopper and Rousseau provided shifting narratives as to how these devices met the same grim fate, (*see* Ex. 10 at 73:13-21; 108:22-25 (mobile phone alternatively ████████████████████

████████████; Ex. 12 at 47:5-6; 46:3-16 (██████████████████

████████████████████████); *id.* at 54:2-6 (██████████

---

[9] Rousseau, for example, readily agreed that his desktop is definitively beyond Plaintiffs' reach, testifying that the ████████████████████████████████████

████  (Ex. 12 at 87:6-10.)

███████████████████████████████████████████████), seemingly with the intent to demonstrate happenstance or, at worst, negligence, it is clear that "the circumstances of this case [are] indistinguishable from other cases in which the spoliating party was found to have acted in bad faith." *Victor Stanley*, 269 F.R.D. at 531.

Contrary to their empty protestations of innocence, the record demonstrates that Hopper and Rousseau have repeatedly "lied about their ESI production; obstructed the discovery process; and intentionally destroyed evidence when they were aware of the lawsuit."[10]  *Id.*  Hopper and Rousseau's excuses concerning the destruction of their devices, ranging from the contradictory to the outright absurd, simply provide further evidence of Vanguard's bad faith, which is only "compounded by their failure to comply with numerous court orders."  *Id.*  In sum, Vanguard's bad faith spoliation of material evidence in this case "necessarily flows from [the] set of facts" before the Court and must be properly sanctioned.  *See Callahan*, 756 F. App'x at 227; *Victor Stanley*, 269 F.R.D. at 531 (finding bad faith spoliation where "[d]efendants took repeated, deliberate measures to prevent the discovery of relevant ESI, clearly acting in bad faith, and i[n] affidavits, depositions, and in open court, [Defendant] nonchalantly lied about what he had done.").

---

[10] Evidence of Vanguard's intentional obstruction of discovery continues to mount.  For example, due to an online leak of data in November 2019,  Plaintiffs recently discovered multiple email and social media accounts utilized by Hopper that have ***never*** been disclosed to Plaintiffs.  Plaintiffs specifically learned that Hopper was active on the neo-Nazi platform Iron March utilizing the handle Lauburu88, which was in turn registered with his undisclosed email address duhizzlemanizzle@gmail.com.  (Ex. 35 (Iron March Exposed Excerpt).)  Hopper's messages on Iron March additionally revealed that Hopper utilized yet another Discord handle, UncleBob#6190, which was likewise never disclosed to Plaintiffs.  (Ex. 36 (Iron March Exposed Excerpt dated February 6, 2017).)  Moreover, these messages only confirm that Hopper has perjured himself on numerous occasions, including where he testified that he "didn't communicate with anybody on [his] Tutamail account."  (Ex. 37 (Iron March Exposed Excerpt dated January 17, 2017) ("If you could, please email me directly at Americanvanguardindiana@tutamail.com I would enjoy discussing whatever affairs you previously wanted to talk to me about.").)

## II.  Adverse Inferences are Warranted in Light of Vanguard's Willful Failure to Comply with Discovery and Flagrant Violation of Numerous Court Orders

Under both Rule 37 and its inherent authority, this Court has "wide discretion" to impose sanctions when a party fails to provide discovery or to otherwise comply with discovery ordered by the Court.  *See Mut. Fed. Sav. & Loan v. Richards & Ass'n*, 872 F.2d 88, 92 (4th Cir. 1989); *see also* Fed. R. Civ. P. 37(b)(2) & (d)(3).  The Fourth Circuit has developed a four-part test for determining whether to impose sanctions under Rule 37: "(1) whether the noncomplying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of noncompliance, and (4) whether less drastic sanctions would be effective."  *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).  The presence or absence of any one of these factors is not dispositive. *See, e.g.*, *Victor Stanley,* 269 F.R.D. at 533.

*First*, Vanguard's self-confessed failure to comply with the Court's repeated discovery orders cannot be viewed as "anything other than bad faith."  *Young Again Prod., Inc. v. Acord*, 459 F. App'x 294, 302 (4th Cir. 2011).  Hopper has, moreover, openly admitted to intentionally stonewalling discovery in order to bleed Plaintiffs' financial resources. (*See* Ex. 22.)  Bad faith is all the more evident here where the Court has "patiently afforded" Vanguard's representatives at least half a dozen chances to comply with their obligations, only to be repeatedly met with outright defiance, or facially defective responses.  *Sines v. Kessler*, 2019 WL 3767475, at *14 (W.D. Va. Aug. 9, 2019); *see also Mut. Fed. Sav. & Loan Ass'n.,* 872 F.2d at 93 (finding that "defendants had acted in bad faith by both their noncompliance and their haphazard compliance of three very specific discovery orders").  Simply put, "no one . . . should count on more than three chances to make good a discovery obligation," much less where Defendants' own testimony is littered with

implausible and absurd assertions, if not outright lies.  *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1319 (10th Cir. 2011).

*Second*, Plaintiffs have been severely prejudiced by Vanguard's willful non-compliance, which has effectively "stalled" this litigation (Mem. Op. at 2), and, most importantly, deprived Plaintiffs of evidence relevant to prove their case at trial.  This Court has already found harm where "Plaintiffs' counsel had to spend an enormous amount of time, effort, and resources over the past 22 months trying to get discovery to which they were entitled," and that "[t]he delays in discovery caused by Kline (as well as other Defendants), have contributed to delays in the trial, which had been set for July 8, 2019," and which has been rescheduled for October, 2020.  (Dkt. 599 at 10; *see also* Mem. Op. at 33 ("For a long time, [Plaintiffs] have had to deal with unacceptable delays, obfuscations, and disregard for both their proper discovery requests and this Court's many orders trying to enforce them.").)  Nor does the record demonstrate any likelihood that Plaintiffs will ever receive such discovery based on Vanguard's affirmative testimony that relevant evidence has been lost, destroyed, or is otherwise no longer available to Plaintiffs.  *See Silvestri*, 271 F.3d at 594.

*Third*, Vanguard's repeated "stalling and ignoring the direct orders of the court with impunity is misconduct that must obviously be deterred."  *Young Again Prod., Inc.*, 459 F. App'x at 303 (internal quotation marks and citation omitted).  Vanguard's representatives have shown a shocking disregard for the Court's authority, not only by blithely ignoring the Court's numerous Orders but also by, for example, texting co-Defendants "about this litigation—when they should have been participating in discovery and other pretrial proceedings."  *Sines*, 2019 WL 3767475, at *14.  Rousseau has similarly remained "active on social media" in connection with his leadership of another far-right organization, Patriot Front, while remaining mute to Plaintiffs' repeated requests for compliance.  *Id.*  Vanguard only continues to make it abundantly clear that they view

this litigation and the Court's Orders as " ▓▓▓▓▓▓▓▓ " with which they need not bother themselves. (*See* Ex. 19.)  Moreover, Vanguard's failure to preserve evidence in this case threatens to undermine "the integrity of the judicial process because, '[a]s soon as the process falters . . . the people are then justified in abandoning support for the system." *Silvestri*, 271 F.3d at 590 (citation omitted).

*Fourth*, lesser sanctions are plainly insufficient considering the sheer magnitude of Vanguard's misconduct.  As a threshold matter, Vanguard has failed to meaningfully participate in discovery over a two-year period in violation of numerous Court Orders and over the imposition of lesser sanctions.  Such behavior alone justifies the imposition of the most severe sanctions available.  *See Butler v. DirectSat USA, LLC*, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify this harshest of sanctions.").  The requested sanctions are all the more appropriate because Vanguard has engaged in a pattern of willful misconduct that has permanently deprived Plaintiffs of access to material evidence relevant to prove their case.  Indeed, at this stage of the proceedings, Plaintiffs' requested remedies are the only means to properly "level[] the evidentiary playing field and . . . sanction[] the improper conduct." *Vodusek*, 71 F.3d at 156.

## CONCLUSION

For the reasons discussed above, as well as those identified in Plaintiffs' First Sanctions Motion, Vanguard's spoliation of material evidence, and its ongoing and intentional flouting of the Court's Orders, require the imposition of "more drastic sanctions."  (Mem. Op. at 35.)  The record aptly demonstrates that nothing less will suffice to address, if not cure, Vanguard's egregious behavior in discovery, and to deter other Defendants from acting in a similar fashion. Plaintiffs therefore respectfully respect that the Court grant this Motion for Sanctions against

Vanguard Kline in its entirety and order the requested relief, in addition to any other relief as the Court deems just and proper.


Dated: April 23, 2020                                  Respectfully submitted,

                                                       */s/ Alan Levine*
                                                       Alan Levine (*pro hac vice*)
                                                       COOLEY LLP
                                                       55 Hudson Yards
                                                       New York, NY 10001
                                                       Telephone: (212) 479-6260
                                                       Fax: (212) 479-6275
                                                       alevine@cooley.com

*Of Counsel*:

Roberta A. Kaplan (*pro hac vice*)           Karen L. Dunn (*pro hac vice*)
Julie E. Fink (*pro hac vice*)               Jessica E. Phillips (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)         William A. Isaacson (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)              BOIES SCHILLER FLEXNER LLP
Michael L. Bloch (*pro hac vice*)            1401 New York Ave, NW
KAPLAN HECKER & FINK, LLP                    Washington, DC 20005
350 Fifth Avenue, Suite 7110                 Telephone: (202) 237-2727
New York, NY 10118                           Fax: (202) 237-6131
Telephone: (212) 763-0883                    kdunn@bsfllp.com
rkaplan@kaplanhecker.com                     jphillips@bsfllp.com
jfink@kaplanhecker.com                       wisaacson@bsfllp.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com                       Yotam Barkai (*pro hac vice*)
mbloch@kaplanhecker.com                      BOIES SCHILLER FLEXNER LLP
                                             55 Hudson Yards, 20th Floor
David E. Mills (*pro hac vice*)              New York, NY 10001
Joshua M. Siegel (VSB 73416)                 Telephone: (212) 446-2300
COOLEY LLP                                   Fax: (212) 446-2350
1299 Pennsylvania Avenue, NW                 ybarkai@bsfllp.com
Suite 700
Washington, DC 20004                         Robert T. Cahill (VSB 38562)
Telephone: (202) 842-7800                    COOLEY LLP
Fax: (202) 842-7899                          11951 Freedom Drive, 14th Floor
dmills@cooley.com                            Reston, VA 20190-5656
jsiegel@cooley.com                           Telephone: (703) 456-8000
                                             Fax: (703) 456-8100
                                             rcahill@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel:  (540) 983-7600
Fax:  (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020, the foregoing was filed with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,
Michael Tubbs, and League of the South*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants National Socialist
Movement, Nationalist Front and Jeff Schoep*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Matthew Parrott,
Traditionalist Worker Party, Jason Kessler,
Nathan Damigo, and Identity Europa, Inc.
(Identity Evropa)*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

I further hereby certify that on April 23, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Robert Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Christopher Cantwell
christopher.cantwell@gmail.com

/s/ Alan Levine
Alan Levine (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

*Counsel for Plaintiffs*

24