# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                        Case No. 20-cr-6-1-PB

Christopher Cantwell

**ORDER OF DETENTION PENDING TRIAL**

Christopher Cantwell ("defendant") has been charged with Extortionate Interstate Communications, in violation of 18 U.S.C. § 875(b) and Threatening Interstate Communications, in violation of 18 U.S.C. § 875(c). The government moved to detain the defendant on risk of flight and dangerousness grounds. Doc. no. 14. The defendant seeks release. Doc. nos. 12 and 17.

In accordance with 18 U.S.C. § 3142(f)(1), a detention hearing was conducted on February 20 and 25, 2020. For the reasons explained below, the government's motion for detention (doc. no. 14) is granted in part and the defendant's motion for bail and addendum (doc. nos. 12 and 17) are denied.

**Legal Standards**

Section 3142(f) of the Bail Reform Act, 18 U.S.C. §§ 3141-3156, "does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings" to the circumstances listed in 18 U.S.C. §§ 3142(f)(1) and (f)(2). United States v. Ploof, 851 F.2d 7,

10 (1st Cir. 1988). In this case, the government asserted that a detention hearing was warranted under 18 U.S.C. § 3142(f)(1)(A), which provides authority for the government to seek detention where a defendant is charged with a "crime of violence." Because the defendant is charged with a crime of violence, I find that the detention hearing was authorized under § 3142(f)(1)(A).

Pursuant to § 3142(f), the court must determine whether any condition or combination of conditions set forth in § 3142(c) will reasonably assure the appearance of the defendant ("risk of flight") and the safety of any other person and the safety of the community ("dangerousness"). 18 U.S.C. § 3142(f); United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991). In making this determination, the court must consider the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the accused, including family ties, past history, financial resources, and employment; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g). During the course of a hearing conducted pursuant to 18 U.S.C. § 3142, the government has the burden of persuading the court that no condition or combination of conditions will reasonably assure (1) the defendant's presence at trial, United States v. Perez-

2

Franco, 839 F.2d 867, 870 (1st Cir. 1988); or (2) the safety of another or the community. Patriarca, 948 F.2d at 793. The government is required to prove risk of flight by a preponderance of the evidence and to establish dangerousness by clear and convincing evidence. See id. at 792-93.

### Findings and Rulings

In this case, the government argued that the defendant's release posed a risk of flight and danger to the community. After weighing the evidence - taking into consideration the pretrial services report, the parties' proffers, pleadings, and the testimony of Brett Fernald, FBI Task Force Officer - and balancing the factors laid out in 18 U.S.C. § 3142(g), the court finds that the government met its burden of proof on dangerousness, but failed to show by a preponderance of the evidence that the defendant is a flight risk. The government established by clear and convincing evidence that there are no conditions that will reasonably assure the safety of any other person and the community.

The defendant is charged with crimes that involve threats of violence. The evidence against the defendant, which includes a copy of the threatening communication and defendant's admission that he sent the message, is strong.

The defendant's criminal history, albeit limited, includes a conviction for two counts of assault and battery involving the use of pepper spray. See Gov't. Ex. 4. He also has a record of non-compliance with bail conditions,[1] including but not limited to, direct and indirect contact, harassment, and intimidation of potential victims through online communications, even after warnings from the court and his legal counsel. The defendant was also arrested and charged with public swearing and intoxication - and possessed pepper spray at the time of this arrest - all while on bail. This history does not reflect a

---

[1] The defendant argues that he has a history of complying with bail conditions. See Def. Ex. B. However, in reviewing the defendant's criminal record, the court finds that the defendant violated his bail conditions on multiple occasions. Following his release on bail in December 2017, the court ordered that the defendant be on location monitoring, have no contact with the victims, and not use illegal drugs or alcohol, among other conditions. See Gov't Ex. 1. However, on numerous occasions, the defendant "continued to engage in online communication intended to harass and potentially intimidate victims in this matter." Gov't Ex. 4 at 2-3. Additionally, on March 31, 2018, the defendant was arrested in Leesburg, VA for public drunkenness. Gov't Ex. 9. On July 20, 2018, the defendant pled guilty to violating his bond conditions. In this case, the defendant proposed location monitoring as a condition of release that would reasonably address the court's concerns related to dangerousness. The court finds that under the circumstances of this case, location monitoring would not adequately address the court's concerns. United States v. Martinez-Torres, 181 F.3d 81 (1st Cir. 1998) ("[T]his court has indicated that . . . electronic monitoring . . . [is] less effective in 'dangerousness' cases than in 'flight risk' cases.").

4

willingness to comply with court orders and weighs in favor of detention.

Defendant has a self-reported longstanding history of alcohol and substance abuse.[2] He last used alcohol and marijuana on the day of his arrest. On the date of his initial appearance he tested positive for marijuana. Vials of clear liquid and bags of pills were seized during a search of defendant's residence.[3]

The defendant produces and broadcasts podcasts, posts content online, and operates an online store that sells merchandise such as t-shirts and pens that can record. The earnings from online sales and donations from his followers/listeners[4] are defendant's sources of income. Some of defendant's posts espouse violence or include threats of violence against his perceived adversaries. Gov't Ex. 11-14. The defendant has experience with computer technology, encryption, and cyber-anonymity. Gov't Ex. 10. He understands

---

[2] In addition to the pretrial services report, in 2016, defendant claimed significant methamphetamine and cocaine use in an audio broadcast. Gov't Ex. 17A.

[3] Lab results have not yet confirmed whether these are or are not controlled substances.

[4] The defendant ended an April 29, 2019 post with a solicitation for funds. See Gov't Ex. 13. When law enforcement searched the defendant's home and vehicle on January 23, 2020, officers found boxes of fan mail and donations.

5

online privacy, tradecraft and operational security (OPSEC), use of the Dark Web and Tor browser (the Onion Router), encrypted communications, and the like, which allow for anonymous communications and/or communications difficult to monitor, capture, or subpoena.  The defendant's knowledge of and demonstrated ability to use these applications, coupled with his history of "engag[ing] in online communications intended to harass and potentially intimidate victims" in violation of bond conditions, Gov't Ex. 3, weigh in favor of detention.

The defendant maintains that his actions in cooperating with the FBI in connection with these threatening communications, his cessation of communication with the victim, and his willingness to submit to restrictions on his use of social media and monitoring of his internet use and electronic device(s), will reasonably address concerns of dangerousness to the victim, a witness, or others.  The court disagrees. Practical conditions of release cannot be fashioned to address this aspect of dangerousness given defendant's aforementioned history and experience.  See United States v. Savader, 944 F. Supp. 2d 209, 214 (E.D.N.Y. 2013) (finding that "given the defendant's demonstrated facility with computer technology, it would be all but impossible to fashion terms and conditions that would eliminate defendant's access to" certain electronic files

6

that could be used to threaten victims, and holding that detention was proper under 18 U.S.C. § 3142(f)(2)(B)).

The defendant's history with firearms and other dangerous weapons also weighs in favor of detention. Defendant's criminal history includes convictions for criminal possession of a weapon and two counts of misdemeanor assault and battery. The defendant brought multiple firearms and knives to Virginia in 2017, and he possessed firearms while in North Carolina when he was asked by the FBI to self-surrender following the issuance of an arrest warrant in Charlottesville, VA on August 12, 2017. On January 23, 2020, 17 firearms were seized from the defendant's Keene, NH residence, including a handgun, empty magazine, and ammunition located in an unlocked Pelican box affixed to the rear underside of his vehicle, which was parked across the street from a school.

On October 10, 2019, the defendant posted the following message on Telegram: "I just sat down to see Joker, and I have a gun." Gov't Ex. 15 & 16. Defendant cooperated with the Keene police when they arrived at the theater. He confirmed that he was in fact carrying a firearm and then agreed to leave the premises. The defendant maintains that the post was a joke and that he did not intend to create fear, but he later posted on Telegram that the person who reported him demonstrated that his "enemies are lowlives and liars who phone in bogus threats to

7

law enforcement" and are "adding to [his] growing invincibility." Gov't Ex. 15. While the defendant legally possessed these firearms, the court may consider the defendant's use of lawfully possessed firearms and other weapons in assessing dangerousness. See United States v. Robinson, No. 5:14-CR-00809-JMC-1, 2014 WL 7338961, at *7 (D.S.C. Dec. 23, 2014). These firearm practices by the defendant are relevant to the court's assessment of dangerousness and weigh in favor of detention.

The nature of the offenses charged, combined with the weight of the evidence against the defendant and the demonstrated seriousness of the danger to persons in the community that would be posed by the defendant's release, particularly given his prior criminal history, history of threats of violence, demonstrated facility with computer technology, encryption, and cyber-anonymity, and prior bail violations, weighs against his release and in favor of detention.

For these reasons, the court finds that the government has met its burden of proving that the defendant's release, even on strict conditions, presents too serious a risk of danger. There are no conditions or combination of conditions of release that will reasonably assure the safety of the community.

8

Accordingly, it is **ORDERED** that the defendant be detained pending trial.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correctional facility, to be held separately, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the correctional facility shall deliver the defendant to the United States Marshal for the purpose of appearing in connection with court proceedings.

**SO ORDERED.**

_____
Andrea K. Johnstone
United States Magistrate Judge

February 27, 2020

cc: Anna Z. Krasinski, Esq.
    John S. Davis, Esq.
    Eric Wolpin, Esq.
    Jeffrey S. Levin, Esq.
    U.S. Marshal
    U.S. Probation