CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/26/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-00072 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| JASON KESSLER et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Petition Regarding Recoverable Attorney's Fees. ECF No. 505. The Court previously held that Defendants Elliott Kline, Matthew Heimbach, and Vanguard America (together, "Defendants") disobeyed numerous court orders directing them to provide or permit discovery of materials and information going to the heart of this lawsuit, and that Plaintiffs were entitled to reasonable attorney's fees caused by each Defendant's failure to obey those orders. *See* Mem. Op. of Aug. 9, 2019, at 1–2, 26, 32, 34–35, ECF No. 539.[1] For the reasons explained below, the Court finds that Plaintiffs are entitled to payment of **$41,300.00** in reasonable attorney's fees. Fed. R. Civ. P. 37(b)(2)(C). This amount shall be apportioned among the three Defendants as follows:

| | |
|---|---|
| **Elliott Kline:** | **$12,528.33** |
| **Matthew Heimbach:** | **$12,528.33** |
| **Vanguard America:** | **$16,243.33** |

*See* Pls.' Pet. for Att'y Fees 4, ECF No. 505. Plaintiffs' request for travel and lodging expenses related to the motion hearing held in Charlottesville on June 3, 2019, will be denied.

I. Background

---

[1] Pinpoint citations to documents electronically filed with this Court, except for transcripts of court proceedings and depositions, use the header page numbers generated by CM/ECF. Pinpoint citations to transcripts use the page numbers printed on the upper right-hand corner of the document.

On August 11–12, 2017, the "Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 1, ECF No. 335; *see* Second Am. Compl. ¶¶ 1–7, ECF No. 557. Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985, and related state laws. Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 1–2. "While ultimate resolution of what happened at the rallies awaits another day," the District Court has held the remaining Plaintiffs plausibly alleged that certain Defendants—including Kline, Heimbach, and Vanguard America—"formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.* at 1.

Plaintiffs filed this lawsuit on October 11, 2017. ECF No. 1. Kline was properly served at his residence in Pennsylvania on October 27, ECF No. 62, and Heimbach was personally served at his residence in Tennessee on November 6, ECF No. 108. Vanguard America was served through its representative, "Dillon Ulysses Hopper a/k/a Dillon Irizarry, authorized to accept," at a residential address on November 17.[2] ECF No. 157. All three Defendants retained James

---

[2] Mr. Hopper is not a defendant to this action. He is participating in the litigation solely in his capacity as Defendant Vanguard America's officer or managing agent. *See* Order to Def. Vanguard Am., at 1–3 (July 3, 2019), ECF No. 517; Order of June 21, 2019, at 4, ECF No. 508; Fed. R. Civ. P. 30(b)(6), 37(b)(2)(A). Mr. Hopper's acts or omissions described below and in my prior Memorandum Opinion "are imputed to" Vanguard America as the disobedient party. Mem. Op. of Aug. 9, 2019, at 5 (quoting *Indep. Productions Corp. v. Loew's, Inc.*, 30 F.R.D. 377, 381 (S.D.N.Y. 1962)). Nothing herein shall be construed as holding Mr. Hopper personally liable for any portion of expenses that Vanguard America will be ordered pay to Plaintiffs under Rule 37(b)(2)(C). *Cf. Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 265–66 (4th Cir. 2019) (noting that the district court's "frustration" with non-party corporate officer's "years-long obstructionist behavior" in the litigation was "understandable," but reversing a money judgment against the officer in part because he "was not notified at any point during the litigation . . . that the plaintiff was seeking to impose liability on him personally, or to collect a money judgment from him under a theory that he was the alter ego of the defendant corporation," and he therefore "did not have an opportunity to

Kolenich, Esq., and Elmer Woodard, Esq., to represent them beginning on December 1, 2017. ECF No. 131. The Court later allowed counsel to withdraw their representation because Kline, Heimbach, and Mr. Hopper for Vanguard America stopped communicating with counsel and refused their instructions to cooperate in discovery. Order of July 25, 2018 (Kline), ECF No. 347; Order of Jan. 4, 2019 (Heimbach), ECF No. 397; Order of June 3, 2019 (Vanguard America), ECF No. 459; *see generally* Mem. Op. of Aug. 9, 2019, at 16–17, 20–21, 23, 26, 30.

*

"Plaintiffs contend that Kline, Heimbach, and Vanguard America each played a key role in planning the rallies and that they actively communicated with their co-Defendants and others before, during, and after these events. Most of that activity occurred online." Mem. Op. of Aug. 9, 2019, at 7; *see id.* at 8–11. On January 25, 2018, Plaintiffs served their [Corrected] First Set of Requests for Production of Documents and First Set of Interrogatories on Defendants through their then-counsel. *See id.* at 11–12, 14–16, 29. Those requests sought "information and materials directly relevant to the claims and defenses in this case," *id.* at 29, including copies of any "emails, text messages, recordings, or social media content related to the preparation, planning, transportation to, or coordination for" the August 11–12 events and information identifying "all means of communications used to discuss the events, as well as the specific electronic devices used for such communications," *id.* at 12 (cleaned up). Defendants' proper responses or objections were due by February 26, 2018. *Id.* at 29. They did nothing. *Id.*

My prior Memorandum Opinion details what Kline, Heimbach, and Vanguard America (through Mr. Hopper) did—or, more accurately, did not do—in this case over the next sixteen months. *See generally* Mem. Op. of Aug. 9, 2019, at 1–2, 12–27. For now, it is enough to say

---

defend against personal liability with the array of defenses and procedures afforded to parties in accordance with their due process rights").

that each Defendant disobeyed at least four separate orders to provide or permit discovery of materials within his control "while the litigation slowed and everyone else's costs piled up." *Id.* at 29. Those orders set out clear step-by-step instructions how Defendants could "make good their discovery obligation[s]" by deadlines repeatedly extended, *Lee v. Max, Int'l*, 638 F.3d 1318, 1321 (10th Cir. 2011) (Gorsuch, J.). *See* Mem. Op. of Aug. 9, 2019, at 13–15, 17–20, 22; Order of Mar. 26, 2018, ECF No. 287; Order of Nov. 13, 2018, ECF No. 379; Stip. & Order of Nov. 19, 2018, ECF No. 383; Order of Mar. 4, 2019, ECF No. 440. Yet, their "consistent 'practice from the very beginning [was] to ignore outright the court's orders or submit chaotically and defectively to them.'" Mem. Op. of Aug. 9, 2019, at 30 (quoting *Mut. Fed. Savs. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989)).

Plaintiffs moved for sanctions against Kline, Heimbach, and Vanguard America in April 2019, ECF Nos. 457, 465, and none of those Defendants responded within the time allowed.[3] *See* Mem. Op. of Aug. 9, 2019, at 24–25. On June 3, 2019, I held a hearing in open court at which Mr. Bloch appeared in person for Plaintiffs and Mr. Kolenich appeared for Vanguard America.[4] I first addressed defense counsel's motion to withdraw from representing Vanguard America. Mr. Kolenich confirmed Vanguard America had "not produced any discovery" and had made clear that "they don't intend to produce any discovery" or "participate in the litigation." Tr. of Hr'g on Pls.' Mots. for Sanctions 5, ECF No. 504. I granted the motion and directed Vanguard America to have a new attorney enter an appearance by June 25. Mr. Hopper promptly informed the Court that he cannot personally afford to hire a lawyer to represent Vanguard America. ECF No. 509.

---

[3] Defendant Richard Spencer objected to some of Plaintiffs' proposed evidentiary sanctions, ECF Nos. 469, 479, and Plaintiffs filed reply briefs addressing those concerns, ECF Nos. 475, 489.

[4] Plaintiffs' local counsel and Spencer's counsel also appeared in person. The Court sent three notices each to Kline and Heimbach, but neither appeared at the hearing or acknowledged the Court's communications. Mem. Op. of Aug. 9, 2019, at 26.

Turning to Plaintiffs' motions, I explained that Kline's, Heimbach's, and Vanguard America's misconduct to date was "clearly sanctionable" and that I intended to award costs and reasonable attorney's fees caused by their failure to comply with my discovery orders. Mem. Op. of Aug. 9, 2019, at 26; *see id.* at 33–36; Order of Aug. 9, 2019, ECF No. 540; Fed. R. Civ. P. 37(b)(2)(C). "The more difficult question was what substantive sanction(s) were appropriate under the current circumstances. Plaintiffs' filings consistently gave the impression that they still wanted the *actual* information and tangible things being withheld by these 'three really important' Defendants." Mem. Op. of Aug. 9, 2019, at 26 (quoting Tr. of Hr'g on Pls.' Mots. for Sanctions 10). Their "request that the Court deem certain facts established or documents authentic, on the other hand, necessarily assumed that the information would never be produced in any form." *Id.* (emphasis omitted). "Having carefully considered the Court's full range of options . . . , I explained that issuing one more very specific discovery order—this time under threat of arrest and detention—could provide a way to 'get the information that Plaintiffs were entitled to' and clearly still wanted." *Id.* at 27 (brackets omitted) (quoting Tr. of Hr'g on Pls.' Mots. for Sanctions 18). If that did not work, then "the Court likely will have run out of options other than to impose significant evidentiary sanctions." *Id.* at 35; *see* Tr. of Hr'g on Pls.' Mots. for Sanctions 13–14, 18–21, 29–30.

Plaintiffs filed their fee petition and supporting exhibits on June 10, 2019. ECF Nos. 505, 506. I took the petition under advisement and directed Kline, Heimbach, and Mr. Hopper for Vanguard America each to file a written response on or before July 5. *See* Order of June 21, 2019, at 1–2, ECF No. 508. Kline never responded or attempted to show good cause for his failure to do so. I therefore "consider Plaintiffs' petition to be unopposed" by him. *Id.* at 2 (citing ECF No. 101). Mr. Hopper filed a letter response explaining his "leadership" position in

5

Vanguard America, apologizing to the Court for his role in the organization's failure to cooperate in discovery, and describing in some detail the significant medical and financial stressors that Mr. Hopper and his family have dealt with since March 2017.[5] ECF No. 509.

The Court received Heimbach's response, labeled "Respondent's Motion to Appeal Sanction," on July 19, 2019. Heimbach asks the Court to "withhold its judgment of sanctions" against him and lists several reasons why he shouldn't have to compensate Plaintiffs for fees or expenses caused by his failure to comply with prior discovery orders. Def. Heimbach's Resp. 1–2, ECF No. 527. Plaintiffs filed a reply brief responding to Heimbach's assertions on July 15. ECF No. 522. Accordingly, I construe Heimbach's pro se "Motion to Appeal Sanction" as his brief in opposition to Plaintiffs' fee petition, *see Castro v. United States*, 540 U.S. 375, 381–82 (2003), and deem the response timely filed.

## II. The Legal Framework

"When a litigant files suit in a court in the United States, he or she will typically pay the costs associated with hiring an attorney. This is the 'American Rule' and it governs litigation in federal courts 'absent explicit congressional authorization' to the contrary." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15 (1994)). Rule 37 of the Federal Rules of Civil Procedure "partially abrogate[s] the American Rule," *id.*, by shifting fees when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See* Fed. R. Civ. P. 37(b)(2)(C). Indeed, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of

---

[5] *See supra* n.2.

expenses unjust." *Id.* (emphasis added). The party seeking fees always "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13cv658, 2014 WL 7185199, at *3 (E.D. Va. Dec. 16, 2014) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008)). Under Rule 37(b)(2)(C), however, "the burden [is] on the disobedient party to avoid expenses by showing that his failure [was] justified or that special circumstances make an award of expenses unjust." *Porter v. Johnson*, Civ. No. 04-2121, 2008 WL 2566749, at *1 (D.D.C. June 25, 2008) (quoting Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment).

### III. Discussion

#### A.   *Lodestar Figure*

A fee award under "Rule 37 is calculated using the lodestar method, in which the court multiples a reasonable hourly rate by a reasonable number of hours expended" dealing with the disobedient party's failure to obey a discovery order. *Smith v. Dist. of Columbia*, 249 F. Supp. 3d 106, 110 (D.D.C. 2017); *see also Broccoli v. Echostar Comm'ns Corp.*, 229 F.R.D. 506, 512 (D. Md. 2005). The court's decision about "what constitutes a 'reasonable' number of hours and rate," *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009), is guided by twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (citing *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)). The attorneys' experience and ability, "the time and labor expended, the novelty and difficulty of the questions raised, [and] the skill required to properly perform the legal services rendered" are the "most relevant" factors in determining a reasonable fee award for a discovery violation. *Victor Stanley, Inc. v. SCH Enter.*, No. RDB-06-2662, 2019 WL 3841932, at *2 (D. Md. Aug. 14, 2019) (quotation marks omitted); *see also Flame S.A.*, 2014 WL 7185199, at *3. When the applicant carries its "burden of showing that the claimed rate and number of hours are reasonable, the resulting [lodestar amount] is presumed to be the reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citing 42 U.S.C. § 1988); *see McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013) ("The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010))); *Davis v. Uhh Wee, We Care Inc.*, Civ. No. ELH-17-494, 2019 WL 3457609, at *10 (D. Md. July 31, 2019) (awarding fees under Rule 37(b)(2)(C)); *Scott v. Clarke*, No. 3:12cv36, 2014 WL 1463755, at *5–6 (W.D. Va. Apr. 15, 2014) (Moon, J.) (awarding fees under Rule 37(a)(5)(A)).

Here, Plaintiffs seek **$67,735.65** in attorney's fees for **247.30** hours expended by one experienced counsel, two associate attorneys, and one paralegal:

| Name | Total Hours Claimed | Hourly Rate Claimed | Total Fee Claimed |
|---|---|---|---|
| Michael Bloch, Esq. | 111.90 | $400 | $44,760.00 |
| Alexandra Conlon, Esq. | 41.50 | $225 | $6,425.50 |

| | | | |
|---|---|---|---|
| Martha Fitzgerald, Esq. | 24.50 | $225 | $5,512.50 |
| Emma Buckland Young | 69.40 | $100 | $6,940.00 |

*See* Pls.' Pet. for Att'y Fees 4; Decl. of Michael L. Bloch, Esq. ¶¶ 9–11, ECF No. 506; Bloch Decl. Ex. A, at 3, ECF No. 506-1; *id.* Ex. B, at 3, ECF No. 506-2; *id.* Ex. C, at 3, ECF No. ECF No. 506-3. Mr. Bloch, Plaintiffs' lead counsel on the sanctions motions, attests that the time claimed reflects an accurate contemporaneous accounting of the hours each timekeeper spent "researching, drafting, and filing" both motions with briefs and supporting exhibits and preparing for or participating in the June 3 hearing, excluding "further" duplicative or excessive hours that his law firm typically would not "charge[] to a client for this kind of work," Bloch Decl. ¶¶ 9–11, 13.[6] *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.").

More specifically, Plaintiffs seek:

- $27,565.00 for 96.8 total hours spent on their combined Motion for Sanctions Against Defendants Kline and Heimbach, ECF No. 457. *See* Bloch Decl. Ex. A, at 2–3.

- $16,372.50 for 72.6 total hours spent on their Motion for Sanctions Against Vanguard America, ECF No. 465. Bloch Decl. Ex. B, at 2–3; and

---

[6] Plaintiffs also excluded "all of the time and expenses" counsel and support staff spent on (1) their repeated attempts to obtain discovery from Kline, Heimbach, and Vanguard America "in the nearly 18 months" it took for Defendants to respond; (2) their successful motion to compel Defendants to permit inspection and imaging of electronic devices; (3) their repeated efforts to induce Defendants' compliance with the November 2018 order granting the motion to compel before Plaintiffs filed their motions for sanctions; (4) preparing Plaintiffs' fee petition; and (5) the depositions of Kline, Heimbach, and Mr. Hopper held in July and August 2019. *See id.* ¶¶ 14–16.

- $23,798.15 for 77.9 total hours spent preparing for, traveling to, and participating in the June 3 oral argument on both motions. Bloch Decl. Ex. C, at 2–3.

*See also* Pls.' Pet. for Att'y Fees 4. They ask that the fees related to the Kline/Heimbach motion "be apportioned equally between those two Defendants" and the fees and Mr. Bloch's travel expenses ($1,185.65) related to the June 3 hearing "be allocated pro rata among the three Defendants." *Id.*

| Defendant | Motion Hours Claimed | Motion Fee Claimed | Hearing Hours Claimed | Hearing Fee claimed | Total Hours per Defendant | Requested Fee per Defendant |
|---|---|---|---|---|---|---|
| Kline | 48.4 | $13,782.50 | 25.96 | $7,932.72 | 74.36 | $21,715.21 |
| Heimbach | 48.4 | $13,782.50 | 25.96 | $7,932.72 | 74.36 | $21,715.21 |
| Vanguard America | 72.6 | $16,372.50 | 25.96 | $7,932.71 | 98.56 | $24,305.21 |

*Id.* at 5; *see* Bloch Decl. ¶¶ 9–13.

  *1. Hourly Rates*

  Plaintiffs seek recompense at $400.00 per hour for senior-level counsel Michael Bloch, Esq.; $225.00 per hour for mid-level associates Alexandra Conlon, Esq., and Martha Fitzgerald, Esq.; and $100.00 per hour for paralegal/case manager Emma Buckland Young. Pls.' Pet. for Att'y Fees 8; Bloch Decl. ¶¶ 4–7. They bear the burden "to show that the requested hourly rates are consistent with the prevailing market rates" for this type of work "in the relevant community." *McAfee*, 738 F.3d at 91 (quotation marks omitted). "The relevant market . . . is ordinarily the community" where the district court sits. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Prevailing hourly rates can "be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing *Spell v. McDaniel*, 824

F.2d 1380, 1402 (4th Cir. 1987)); *see Depaoli v. Vacation Sales Assocs.*, 489 F.3d 615, 622–23 (4th Cir. 2007). The court may also rely on its "own familiarity with the rates prevailing in the district." *Rogers v. Summit Receivables*, No. 3:17cv69, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018) (quoting *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005)); *see Davis*, 2019 WL 3457609, at *10–11 (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)); *Scott*, 2014 WL 1463755, at *5–6.

* *

The legal market in central Virginia provides the benchmark for establishing reasonable hourly rates in this case, even though the four individuals seeking fees all work for a boutique law firm in New York City. Pls.' Pet. for Att'y Fees 8–9; *see Scott*, 2014 WL 1463755, at *5–6. Mr. Bloch submitted a declaration describing his and his associates' exceptional qualifications and notable legal experience. Bloch Decl. ¶¶ 3–7; *see* Pls.' Pet. for Att'y Fees 9–10. While this information alone "is insufficient to establish that the rates sought are commensurate with the prevailing market rates" for attorneys with "similar skill and . . . experience" handling discovery disputes in this judicial district, *Two Men & A Truck Int'l, Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 927 (E.D. Va. 2015), Plaintiffs also cited cases where judges in in the Eastern and Western Districts of Virginia awarded roughly $400 per hour for "experienced attorneys" like Mr. Bloch, and $225 per hour for "less experienced attorneys" like Ms. Conlon and Ms. Fitzgerald, for work performed on successful discovery disputes. Pls.' Pet. for Att'y Fees 8–9 (collecting cases). *See, e.g.*, *Scott*, 2014 WL 1463755, at *6 (concluding that class counsel were entitled to $400 per hour for senior partner's work, and $230 per hour for a third-year associate's work, performed on a discovery motion in late 2013). I find Plaintiffs' proposed rates are reasonable considering their attorneys' qualifications, the skill and professionalism required to represent their interests while dealing with the "unique and complicated [discovery] challenges" in this case, Mem. Op. of Aug.

9, 2019, at 35, and the presiding District Judge's fee awards for similar work in *Scott v. Clarke*, No. 3:12cv36 (W.D. Va.) (Moon, J.).

Plaintiffs' requested rate of $100 per hour for Ms. Buckland Young's paralegal services, Bloch Decl. ¶ 7, is also in line with prevailing rates for similar work in this judicial district and the surrounding area. *See, e.g.*, *Holmes v. Gen. Dynamics Ordinance & Tactical Sys., Inc.*, No. 1:18cv19, 2019 WL 5704291, at *3, *5–6 (W.D. Va. June 17, 2019) (awarding $75 per hour for paralegal's work on a discovery dispute in Abingdon); *CX Reins. Co. Ltd. v. Homewood Realty*, Civ. No. JKB-15-3136, 2018 WL 2118547, at *1–2 (D. Md. Mar. 9, 2018) (awarding $100 per hour for paralegal's work on a discovery dispute in Maryland); *Flame S.A.*, 2014 WL 4809842, at *7–8 (awarding $125 per hour for paralegal's work on a discovery dispute in Virginia Beach); *cf. Stultz v. Virginia*, No. 7:13cv589, 2019 WL 4741315, at *3–5 (W.D. Va. Aug. 15, 2019) (Ballou, J.) (recommending $125 per hour for paralegal's work on a civil-rights case filed in Roanoke), *adopted as modified on other grounds by* 2019 WL 4740231 (W.D. Va. Sept. 27, 2019) (Moon, J.); *Berthiaume v. Doremus*, No. 6:13cv37, 2014 WL 2616990, at *6–7 (W.D. Va. June 12, 2014) (Moon, J.) (awarding $75 per hour for paralegal's work on a disability-rights case filed in Lynchburg).

　　　2.　　*Hours Claimed*

Next, Plaintiffs must "document[] the appropriate hours" their legal team spent dealing with Defendants' failure to obey the discovery orders. *See Project Vote*, 887 F. Supp. 2d at 709 (citing *Hensley*, 461 U.S. at 437). This requires "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity" so the court can "weigh the hours claimed and exclude hours that were not reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (cleaned up). Plaintiffs' counsel also "should make a good

12

faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434. *See Lopez v. XTEL Contr. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) ("The party seeking fees 'must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary.'" (quoting *Travis v. Prime Lending*, No. 3:07cv65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (Moon, J.))).

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. It may do so "by identifying and disallowing specific hours that are not adequately documented, . . . by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved," *Guidry*, 442 F. Supp. 2d at 294, or by some reasoned combination of the two, *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016) ("There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors."). Plaintiffs' billing records are not voluminous, but they do contain enough vague and combined time entries that it would be difficult to set out a line-by-line summary deleting every unreasonable hour. Accordingly, the following discussion strikes a balance between eliminating or reducing facially excessive entries where feasible and relying on my informed judgment to make reasonable, across-the-board reductions in other instances. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (noting that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," insofar as the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection").

       *a.*     *Excessive Hours for the June 3 Hearing*

Mr. Bloch billed 6.5 hours to "[t]ravel to Charlottesville and prep for June 3 hearing" on June 2, plus 9.8 hours to "[p]rep for hearing, participate in hearing, and follow up re same [and] return travel from Charlottesville" on June 3. Bloch Decl. Ex. C, at 2. The hearing itself lasted 42 minutes, ECF No. 494, which means counsel spent about 15.5 hours traveling, preparing, and following up, Bloch Decl. Ex. C, at 2. Mr. Bloch did not say how much time he spent on those distinct activities. *See Two Men & A Truck*, 128 F. Supp. 3d at 928–29; *Project Vote*, 887 F. Supp. 2d at 715–16; *Abusamhadaneh v. Taylor*, No. 1:11cv939, 2013 WL 193778, at *32–33 (E.D. Va. Jan. 17, 2013). The Court will not "labor to dissect" these entries "to hypothesize if the different" legal tasks and travel lumped together "could reasonably result in the requested time." *Abusamhadaneh*, 2013 WL 193778, at *22; *see id.* at 32–33; *Two Men & A Truck*, 128 F. Supp. 3d at 929; *Project Vote*, 887 F. Supp. 2d at 716.

More importantly, claiming 16.3 is excessive because Mr. Bloch need not have come to Charlottesville for this hearing. Plaintiffs' thorough briefs and supporting exhibits persuasively established they were entitled to sanctions under Rule 37(b)(2), *see* Pls.' Pet. for Att'y Fees 3, and Plaintiffs' counsel knew several weeks before the hearing that neither Kline, Heimbach, nor Vanguard America responded to their motions within the time allowed. Counsel had ably represented Plaintiffs' interests on other motions and discovery problems in numerous telephonic hearings before June 3. *See, e.g.*, Min. Entry of Mar. 16, 2018, ECF No. 279; Min. Entry of Apr. 19, 2018, ECF No. 303; Min. Entry of Nov. 9, 2018, ECF No. 377; Min. Entry of Jan. 4, 2019, ECF No. 396; Min. Entry of Feb. 12, 2019, ECF No. 411; Min. Entry of Apr. 26, 2019, ECF No. 481. Mr. Bloch easily could have done the same here. *See Nichols v. Ill. Dep't of Transp.*, No. 12cv1789, 2019 WL 157915, at *7, *9 (N.D. Ill. Jan. 10, 2019) (concluding that hours billed for

14

counsel's in-person court appearances were "particularly excessive" because the Court allowed counsel to appear by phone for routine motion hearings).

Accordingly, I will **allow 2.0** hours on June 3 for Mr. Bloch to prepare for and participate in that day's hearing. The remaining 14.3 hours billed over June 2–3 will be excluded. *Cf. Nichols*, 2019 WL 157915, at *11 (reducing attorney's hours by 20% to account "excessive, redundant, or unnecessary work," including time spent attending in-person motion hearings that could have been held by telephone); *Congregation Rabbinical Coll.*, 188 F. Supp. 3d at 345–46 & n.6 (concluding there was "no reason why Defendants should incur greater liability simply because" Plaintiffs insisted their out-of-state attorneys attend a sanctions hearing "despite the fact that Plaintiffs had retained competent local counsel," and excluding all travel time and expenses claimed by the out-of-state attorneys); *SunTrust Mortg., Inc. v. AIG United Guar. Grp.*, 933 F. Supp. 2d 762, 776, 778–79 (E.D. Va. 2013) (concluding it was "not reasonable" to make an adversary "pay the travel time necessary for lawyers" from Washington, D.C., Los Angeles, and New York "to travel to Richmond [for a spoliation hearing] when the services provided were available in Richmond," and excluding "all travel time" and expenses related to the hearing claimed by those attorneys). This leaves **63.6 total hours** related to the hearing billed by Mr. Bloch (24.9), Ms. Fitzgerald (24.5), and Ms. Buckland Young (14.2), *see* Bloch Decl. Ex. C, at 2–3, and **233.0 total hours** billed overall.

### b.    *Block Billing, Vague Entries & Clerical Tasks*

Plaintiffs' billing records must "provide some guidance in identifying" the time spent on compensable tasks. *Denton v. PennyMac Loan Servs.*, 252 F. Supp. 3d 504, 523 (quoting *Buffington v. Balt. Cty.*, 913 F.2d 113, 128 (4th Cir. 1990)). Block billing, the practice of grouping "several tasks together under a single entry, without specifying the amount of time

spent on each particular task," is not sufficient. *Guidry*, 442 F. Supp. 2d at 294. Vague descriptions also are inadequate when the court cannot independently determine whether the time claimed is reasonable. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 675 (E.D. Va. 2015). "Courts faced with excessively vague or inadequate descriptions of tasks" in fee petitions have reduced hours "by percentages ranging from 20% to 90%," while block billing typically warrants a reduction "ranging from 10% to 20%." *Route Triple Seven Ltd. v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015) (collecting cases).

Plaintiffs' records reflect some unacceptable block billing. For example, Ms. Buckland Young routinely grouped different tasks—like fact checking, gathering exhibits, formatting, and filing documents—into single entries without specifying how much time she spent on each task. *See* Bloch Decl. Ex. A, at 2–3; *id.* Ex. B, at 2–3; *id.* Ex. C, at 2–3.[7] Some of these combined entries are also problematic because they contain "purely clerical tasks" like filing documents with the court, organizing exhibits, assembling binders, and pulling cases for oral argument. *LaMonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 521 (W.D. Va. 2016); *see, e.g.*, Bloch Decl. Ex. A, at 2–3 (entries of Apr. 2–3, Apr. 5, Apr. 24); *id.* Ex. B, at 2–3 (entries of Apr. 9, Apr. 11, May 2); *id.* Ex. C, at 2–3 (entries of May 20, May 29, May 31). Such tasks "should not be compensated at all" under a fee-shifting scheme, even if billed at a lower hourly rate, because they "are ordinarily part of a law office's overhead" costs. *Two Men & A Truck*, 128 F. Supp. 3d at 929. Fees for traditional legal "tasks [like] 'factual investigation[;] . . . assistance with depositions, interrogatories, and document production; . . . checking legal citations; and drafting correspondence,'" on the other hand, are recoverable at reasonable hourly rates. *Id.* (quoting

---

[7] The three attorneys, on the other hand, typically listed one task or activity per entry. *See id. But see* Bloch Decl. Ex. A, at 2 (Ms. Conlon billing 10 hours on April 24 for "[r]evisions to, finalization of, and filing of reply to Heimbach/Kline sanctions motions").

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)); *cf. Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002) (explaining that "fees for paralegal time" are permitted under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), but "such fees are only recoverable to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client"). Ms. Buckland Young's pervasive block billing makes it difficult to determine how much time she spent on clerical tasks versus compensable paralegal work. *See, e.g.*, Bloch Decl. Ex. A, at 2 (billing 6.2 hours on March 27 to "[m]anage formatting of proposed order," "fact check and gather research," and "gather exhibits for Heimbach/Kline sanctions motion"); *id.* (billing 6.6 hours on April 2 to "[r]eview factual support and exhibits," do "exhibit work," and "prepare documents for filing"); *id.* at 3 (billing 3.1 hours on April 3 to "[r]eview factual support and exhibits," do "exhibit work," "prepare documents for filing" and "file Heimbach/Kline sanctions motion"); *id.* Ex. B, at 2 (billing 7.1 hours on April 11 to "[f]actual cite check and research additional documentation" for Vanguard America motion, "manage formatting issues in and prepare and organize exhibits for filing," "input edits," and "prepare to file, and file . . . sanctions motion"); *id.* Ex. C, at 3 (billing 7.0 total hours on May 20 and May 29–30 to "[p]ull cases," "prepare and organize binders," and "prepare materials," "sources," and "exhibits for oral argument").

The slightly bigger flaw in Plaintiffs' billing records is that "many of the entries appear excessive on their face because they are too vague to understand." *Stultz*, 2019 WL 4741315, at *6. "Too many tasks . . . are vaguely described as 'preparation.'" *Id.* Ms. Fitzgerald billed 20.3 hours to "[p]rep for [the] June 3 oral argument on sanctions motions, including legal research," over four days in late May, plus another 4.2 hours to do "[f]inal prep for . . . oral argument" on June 2, without explaining how she "prepared" or what her post-briefing "legal research"

involved. Bloch Decl. Ex. C, at 2; *see also* Bloch Decl. ¶ 8. Mr. Bloch billed 19.9 hours between May 27 and June 1 to "[p]reparation for June 3 hearing," Bloch Decl. Ex. C, at 2, but he did not identify "the particular tasks performed beyond preparing" or "indicate the specific reasons for such time spent," *Stultz*, 2019 WL 4741315, at *6. Ms. Buckland Young regularly billed for "prepar[ing]" documents and hearing materials, Bloch Decl. Ex. A, at 2–3; *id.* Ex. B, at 2–3; *id.* Ex. C, at 2, without describing "the nature, volume, or relevance of the documents," *Route Triple Seven*, 127 F. Supp. 3d at 621. Such entries "frustrate any attempt to assess the reasonableness" of the many hours she apparently devoted to those tasks. *Route Triple Seven*, 127 F. Supp. 3d at 621.

"Other entries are just plain confusing." *Stultz*, 2019 WL 4741315, at *6. For example, Mr. Bloch billed 22.45 total hours spent giving "[a]ttention to" the two motions, Defendant Spencer's response and Plaintiffs' reply briefs, and the hearing. *See* Bloch Decl. Ex. A, at 2 (15.95 hours); *id.* Ex. B, at 2 (3.5 hours); *id.* Ex. C, at 2 (3.0 hours). "These entries provide no insight as to the particular tasks performed, nor do they indicate the specific reasons for such time spent." *Stultz*, 2019 WL 4741315, at *6. Plaintiffs also do not explain why their lead counsel billed more than 20 hours for giving "attention to" this work on top of the nearly 130 hours he and two associate attorneys already billed for "drafting," "revising," "reviewing," and "finalizing" their filings and "preparing" for the uncontested hearing. *See* Bloch Decl. Ex. A, at 2 (Mr. Bloch and Ms. Conlon billing 48.25 total hours on March 27–29, March 31–April 3, and April 24 for Kline/Heimbach motion); *id.* Ex. B, at 2 (Mr. Bloch and Ms. Conlon billing 37.0 hours on April 7–11 and April 30 for Vanguard America motion); *id.* Ex. C, at 2 (Mr. Bloch and Ms. Fitzgerald billing 44.4 total hours on May 25–30 and May 31–June 1 to prepare for hearing). *Cf. Crump v. U.S. Dep't of Navy ex rel. Mabus*, 245 F. Supp. 3d 692, 713 (E.D. Va. 2017) ("[I]f

multiple attorneys bill for completing the same work product and each contribution of each attorney is not justified, the billed hours should be reduced for excessiveness." (citing *Rum Creek Coal*, 31 F.3d at 180)).

A payment order under Rule 37(b)(2) extends only to such "reasonable" expenses, including attorney's fees, as were caused by the disobedient party's failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(C); *see Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 801 & n.7 (4th Cir. 1975) (citing Fed. R. Civ. P. 37(b)); *Diversified Lending, LLC v. Hotz*, No. 1:12mc10, 2019 WL 149557, at *2–3 (E.D. Va. Jan. 9, 2019) (citing Fed. R. Civ. P. 37(b)(2)(C)); *In re Ethicon Pelvic Repair Sys Prods. Liability Litig.*, MDL No. 2327, 2015 WL 3767729, at *2 (S.D. W. Va. June 16, 2015) (same). Without more information about how Plaintiffs' legal team "prepared for" or gave "attention to" Defendants' noncompliance, it is nearly "impossible for the court to verify . . . the reasonableness of the billings, either as to the necessity of the particular service or the total amount of time expended" thereon, *In re Meese*, 907 F.2d 1192, 1204 (D.D.C. 1990) (cleaned up). *See Kizer v. Abercrombie & Fitch Co.*, No. CV 12-5387, 2017 WL 9512408, at *9–13 (E.D.N.Y. July 24, 2017) (awarding fees under Rule 37(b)(2)(C), and reducing claimed hours by 25% to account for pervasive block billing, insufficiently detailed entries, and facially excessive time spent on straight-forward discovery problems); *cf. Stultz*, 2019 WL 4741315, at *6 ("The vague and confusing descriptions weigh in favor of reducing the fee request because the Court cannot determine what the attorneys were billing for."); *Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 814–15 (E.D. Va. 2008) (excluding entries that did "not adequately describe the work performed or the effort involved," and therefore provided "no basis on which" the court could "identify whether such time entries [were] 'reasonable'"). Accordingly, I will further deduct the 22.45 hours that Mr. Bloch spent

19

giving "attention to" each motion and the hearing, and then reduce Plaintiffs' remaining **210.55** hours claimed **by 20% overall** to account for excessively vague entries, block billing, and noncompensable clerical tasks that should not have been included in their fee petition. *See Wyatt v. Owens*, No. 7:14cv492, 2018 WL 10613184, at *11–12 (W.D. Va. Jan. 23, 2018) (proposing a 20% to 30% reduction in paralegal's hours to account for "routine block billing" and clerical tasks), *att'y fee pet. dismissed as moot by* 2018 WL 10613185 (W.D. Va. Mar. 5, 2018); *cf. LaMonaca*, 157 F. Supp. 3d at 521 (reducing attorney's hours by 20% to account for vague entries, block billing, and clerical tasks, including time spent "preparing notebooks, organizing files, [and] 'pulling' documents"). This leaves **168.44** total hours overall.

      c.    *Other* Johnson *Factors*

The above analyses takes into account the time and labor expended having to deal with Defendants' noncompliance (first *Johnson* factor); the skill required to properly perform the legal services rendered (third factor); the customary fees for like work (fifth factor); and the experience, reputation, and ability of the attorneys seeking reimbursement (ninth factor). Plaintiffs also argue that the extreme nature and extent of Defendants' noncompliance presented "novel and difficult" issues because "there was little 'off the shelf' research that could be brought to bear" in proposing appropriate sanctions. Pls.' Pet. for Att'y Fees 12. I agree. While "the issues related to Defendants' noncompliance . . . were not particularly novel, they also were not routine." *Victor Stanley*, 2019 WL 3841932, at *4; *cf. Baker v. Key*, No. 2:15cv565, 2016 WL 11672047, at *5 (E.D. Va. Nov. 16, 2016) ("Sanctions for walking out of a deposition present neither novel nor complex issues, and the law is quite straight-forward regarding a party's obligation to cooperate in discovery."); *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-2292-DCN, 2013 WL 436217, at *3 (D.S.C. Feb. 5, 2013) ("[T]he matter underlying this fee

petition—Lloyd's delay in producing discovery responses—is neither particularly novel nor difficult."). Kline, Heimbach, and Vanguard America "flaunted their obligations under the Federal Rules," *Victor Stanley*, 2019 WL 3841932, at *4, and disobeyed at least four separate discovery orders before they finally resurfaced after the June 2019 hearing, *see* Mem. Op. of Aug. 9, 2019, at 13–27, 29–34. Plaintiffs expended considerable effort and resources while dealing with each Defendant's unacceptable delays, obfuscations, and blatant disregard for their proper discovery requests and this Court's orders trying to enforce them. Mem. Op. of Aug. 9, 2019, at 33. Plaintiffs are also correct that the "unique and complicated challenges" in this case, *id.* at 35, meant there was very little clear-cut guidance on how to craft just and appropriate sanctions, *see id.* at 25–26, 31–34. *See* Pls.' Pet. for Att'y Fees 12.

Accordingly, this *Johnson* factor weighs in favor of finding Plaintiffs' attorneys did not spend an unreasonable or excessive number of hours working on their motions for sanctions, even though the underlying discovery misconduct was clear and Kline, Heimbach, and Vanguard America did not contest them. *Compare* Bloch Decl. Exs. A & B (claiming 114.2 total attorney hours to research, draft, and file motions and supporting briefs), *with Kizer*, 2017 WL 9512408, at *12 (concluding that 49.7 attorney hours spent on largely unopposed motion for sanctions was excessive because the work "did not involve the analysis of novel or complex legal issues" or present "matters of first impression [that] might otherwise justify the hours expended"), *and Shammas v. Focarino*, 990 F. Supp. 2d 587, 593–94 (E.D. Va. 2014) (concluding that 29 hours for experienced attorneys to prepare and file a motion for sanctions and supporting briefs was "clearly excessive and unreasonable" where the "discovery order was clear and unambiguous, . . . the plaintiff's violation of that order was equally clear," and "no novel legal issue was presented" by plaintiff's "uncontested" conduct), *aff'd*, 784 F.3d 219 (4th Cir. 2015).

3.    *Adjusted Lodestar Figure*

Plaintiffs bear the burden of documenting the appropriate hourly rates for their attorneys and support staff and the number of hours expended dealing with each Defendant's noncompliance considering the facts and circumstances of this case. While Plaintiffs' counsel excluded from their fee request some hours that were excessive, redundant, or otherwise unnecessary, their billing records do not fully justify the 247.30 total hours originally claimed—despite achieving excellent results for their clients. Rather, after deducting 36.75 hours from Mr. Bloch's total time billed and further reducing by 20% overall the total hours claimed by all four timekeepers to account for defects in their billing records, the Court finds that Plaintiffs' legal team reasonably expended **168.44** hours overall and that **$41,300.00** is a reasonable fee for their work. The Court's lodestar figure (rounded to the nearest .10) breaks down accordingly:

| Name | Hourly Rate | Motions: Reasonable Hours (K&H \|VA) | | Hearing: Reasonable Hours | Motions: Lodestar Figures (K&H \|VA) | | Hearing: Lodestar Figures | |
|---|---|---|---|---|---|---|---|---|
| Bloch | $400 | 30.6 | 12.0 | 17.5 | $12,240 | $4,800 | $7,000 | |
| Buckland Young | $100 | 23.7 | 20.5 | 11.4 | $2,370 | $2,050 | $1,140 | |
| Conlon | $225 | 10.4 | 22.8 | N/A | $2,340 | $5,210 | N/A | |
| Fitzgerald | $225 | N/A | N/A | 19.6 | N/A | N/A | $4,410 | |
| **Total Hours & Fees Allowed** | | **64.7** | **55.3** | **48.5** | **$16,690** | **$12,060** | **$12,550** | **$41,300** |

B.    *Travel Expenses*

Rule 37 requires a disobedient party to pay "reasonable expenses" caused by the failure to obey a discovery order, Fed. R. Civ. P. 37(b)(2)(C), including "out-of-pocket expenses incurred by the [prevailing] attorney" that would normally be charged to a fee-paying client, *see Spell*, 852 F.2d at 771. Such costs may "include necessary travel" and lodging. *Singleton v.*

*Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689–90 (D. Md. 2013). In this case, Plaintiffs'

expenses related to the June 3 hearing "must be deducted" because there was no reason for Mr.

Bloch appear in person at the Charlottesville courthouse. *SunTrust Mortg.*, 933 F. Supp. 2d at

779–80. Moreover, "the law is clear that no litigation costs should be awarded in the absence of

adequate documentation." *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995). Plaintiffs

report that Mr. Bloch's "[a]irfare for travel" to and from Charlottesville and "[o]ne night stay in

standard hotel room" cost $1,185.65, Bloch Decl. Ex. C, at 2, but they did not provide any

receipts to substantiate this amount. I cannot rely on Plaintiffs' "unverified [c]hart" to determine

whether these expenses should be reimbursed under Rule 37. *Cf. Haught v. Louis Berkman, LLC*,

No. 5:03cv109, 2006 WL 344917, at *4 (N.D. W. Va. Feb. 13, 2006) (denying travel and

lodging expenses where plaintiffs inexplicably failed to produce the "four of five receipts" to

verify the amount sought (citing *Trimper*, 58 F.3d at 77)).

Accordingly, Plaintiffs' request to be reimbursed for Mr. Bloch's travel and lodging

expenses will be denied. *See SunTrust Mortg.*, 933 F. Supp. 2d at 779–80; *Haught*, 2006 WL

344917, at *4.

C.      *Rule 37(b)(2)(C)'s Safe Harbors*

Having determined that an award of $48,680.00 reflects Plaintiffs' reasonable expenses

caused by Kline's, Heimbach's, and Vanguard America's failures to obey multiple discovery

orders, I "must order the disobedient party" to pay those expenses unless "the failure was

substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P.

37(b)(2)(C). Rule 37 "places the burden on the disobedient party to avoid expenses by showing"

either that the failure was justified or "special circumstances" exist that would make the award

unjust. Fed. R. Civ. P. 37(b)(2) advisory committee note to 1970 amendment. This provision

"ensures that the disobeying party, rather than the innocent party, bears those costs." *In re Boston Sci. Corp.*, MDL No. 2326, 2015 WL 6043795, at *2 (S.D. W. Va. Oct. 15, 2015).

Generally, "a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness" of that party's position or conduct. *Peterson v. Hantman*, 277 F.R.D. 13, 16 (D.D.C. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *accord* Fed. R. Civ. P. 37 advisory committee note to 1970 amendment (explaining that a party "is substantially justified" in taking a discovery dispute to court if the dispute "is genuine"). The "position can be justified even though it is not correct" and "it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2. The court has "broad discretion to determine" whether a party's discovery failure was "substantially justified," starting with the party's explanation for its noncompliance. *Cf. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (explaining that the district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless" under Rule 37(c)(1), and that the imposition of sanctions "should be guided by . . . factors" including the evidence's importance and "the nondisclosing party's explanation for its failure").

Kline did not respond to the fee petition by the extended deadline and therefore gave up his chance to mitigate his share of the bill. *See Kemp v. Harris*, 263 F.R.D. 293, 297 (D. Md. 2009) (awarding fees under Rule 37(a)(5)(A)); *Porter*, 2008 WL 2566749, at *1–2 (discussing fee awards under Rule 37(b)(2)(C)). Mr. Hopper's letter response contained "no evidence that [Vanguard America's] noncompliance was substantially justified," *Fosselman v. Gibbs*, No. CV 06-375, 2010 WL 1446661, at *1 (N.D. Cal. Apr. 7, 2010), and did not identify any reason why

it would be "unjust" to make Vanguard America pay its share of the resulting expenses. As noted, Mr. Hopper is not a defendant to this action and has not otherwise been placed on notice that he could be held personally liable to pay any portion of the fees herein assessed against Vanguard America. *See Life Techs. Corp.*, 931 F.3d at 265–66.

Heimbach claimed that he did not know "how to participate in these ongoing matters, what was expected, or how to proceed" because he lacked "legal training and knowledge"; he was "operating under an improper legal understanding in regards to the discovery process"; and he has been "forced to represent himself" because he does not have the "funds to hire counsel." Def. Heimbach's Resp. 1–2. He also alleged that having to pay "[a]ny economic sanction, no matter how mild, would likely result in . . . [his] homelessness" and unemployment, and make it impossible for him to financially support his disabled wife and two children. *Id.* The children live with Heimbach's ex-wife, who is unemployed. *Id.* Heimbach did not produce any evidence to support his unsworn statements.

Heimbach's arguments are not persuasive. To start, Heimbach was still represented by counsel when he disobeyed three separate discovery orders issued in 2018. If he had questions about discovery, then "he should have asked his attorneys" for help. *Best Payphones, Inc. v. City of New York*, Nos. 1cv3924, 1cv8506, 3cv192, 2016 WL 792396, at *8 (E.D.N.Y. Feb. 26, 2016). Instead, his "response to the [November 19, 2018] court order was to terminate [their] representation . . . . and forbid [them] to take any actions on his behalf." Tr. of Jan. 4, 2019 Conf. Call 14, ECF No. 400; *see* Mem. Op. of Aug. 9, 2019, at 19–20. Heimbach "cannot 'pin the blame on [his] former counsel'" or his pro se status when he has steadfastly refused to participate in the case. Mem. Op. of Aug. 9, 2019, at 30 (quoting *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 303 (4th Cir. 2011) (other brackets omitted)); *see LeGrande v. Adecco*, 233 F.R.D.

253, 257 (N.D.N.Y. 2005) ("There is no exception to honoring and respecting discovery orders. All litigants . . . must comply and when they flout their obligation, they must suffer the consequences of such action.").

Moreover, Heimbach told the Court on July 2, 2019, that he had "received each of the Orders" and discovery requests that clearly "explain[ed] his outstanding discovery obligations." Order to Def. Heimbach 1, ECF No. 515. He still did not comply with any of them. *See* Mem. Op. of Aug. 9, 2019, at 22, 28–29 & n.10; *cf. Ins. Recovery Grp., Inc. v. Connolly*, 977 F. Supp. 2d 16, 27 (D. Mass. 2013) (concluding that a party's failure to follow discovery order's "clear" instructions was not substantially justified). "'On these facts, [I] cannot interpret [Heimbach's] continued disregard' for the Court and its orders 'as anything other than bad faith.'" Mem. Op. of Aug. 9, 2019, at 31 (quoting *Young Again Prods.*, 459 F. App'x at 302). "[T]he Court does not find culpable conduct to be substantial justification" for such disobedience. *Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 382 (D.D.C. 2013); *accord Toner v. Wilson*, 102 F.R.D. 275, 276 (M.D. Pa. 1984) ("Toner's violation of the discovery order was willful and in bad faith and clearly was not 'substantially justified.'").

Heimbach's response also did not identify any "special circumstances" that would make an award unjust in his case. First, "[t]here is no rule prohibiting the imposition of monetary sanctions against an impecunious party." *French v. M&T Bank*, 315 F.R.D. 695, 697 (N.D. Ga. 2016) (quotation marks omitted); *accord* Fed. R. Civ. P. 37(a) advisory committee's note to 1970 amendment ("[I]t is not contemplated that expenses will be imposed upon the attorney merely because the [disobedient] party is indigent."). Such a policy would be inconsistent with Rule 37's dual purposes, *see* Mem. Op. of Aug. 9, 2019, at 6, 31–33, and "open the door to many possible abuses," *Bosworth v. Record Data of Md.*, 102 F.R.D. 518, 521 (D. Md. 1984); *see Toner*, 102

26

F.R.D. at 279. ("Toner's poverty should not absolutely preclude an award of expenses for disobedience to a court order, particularly where such disobedience was willful and in bad faith."). Second, even assuming there might "be situations in which financial indigency will tilt against" ordering the disobedient party to pay otherwise reasonable expenses, "this is not such a case." *Bosworth*, 102 F.R.D. at 521. Heimbach will be required to pay his share of Plaintiffs' reasonable expenses because his repeated and ongoing discovery misconduct, especially in response to multiple court orders, must be penalized and deterred. Mem. Op. of Aug. 9, 2019, at 29–34; *see, e.g.*, *Bosworth*, 102 F.R.D. at 521 (finding "every reason" to make plaintiff pay attorney's fees under Rule 37, and "no reason not to" impose monetary sanctions, where plaintiff's "totally unjustified" failure to attend her deposition was just the latest example of her "repeated[]" failures to comply with discovery obligations).

## IV. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs are entitled to payment of **$41,300.00** in reasonable attorney's fees caused by Kline's, Heimbach's, and Vanguard America's failure to obey discovery orders. Fed. R. Civ. P. 37(b)(2)(C). Specifically, the Court awards **$16,690.00** in fees related to the Kline/Heimbach motion; **$12,060.00** in fees related to the Vanguard America motion; and **$12,550.00** in fees related to the June 3, 2019 motion hearing. Plaintiffs request that their fees for the Kline/Heimbach motion "be apportioned equally between those two Defendants" and their fees for the hearing "be allocated pro rata among the three Defendants." Pls.' Pet. for Att'y Fees 4. Finding it appropriate to do so, the Court hereby ORDERS that each Defendant shall pay the following amounts to Plaintiffs:

**Elliott Kline:**               **$12,528.33**[8]

**Matthew Heimbach:**       **$12,528.33**[9]

**Vanguard America:**       **$16,243.33**[10]

A separate Order shall enter.

ENTERED: May 26, 2020

Joel C. Hoppe
United States Magistrate Judge

---

[8] $[(16,690 \div 2) = 8,345] + [(12,550 \div 3) = 4,183.33] = 12,528.33$. Kline shall pay this amount in addition to any fines or fees that the Honorable Norman K. Moon, presiding District Judge, has assessed, or may yet assess, in connection with Kline's contempt proceedings. *See, e.g.*, ECF Nos. 599, 610.

[9] $[(16,690 \div 2) = 8,345] + [(12,550 \div 3) = 4,183.33] = 12,528.33$.

[10] $12,060 + 4,183. 33 = 16,243.33$.