CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/28/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:17-cv-00072 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JASON KESSLER et al., | ) | By:  Joel C. Hoppe |
|     Defendants. | ) |        United States Magistrate Judge |

This matter is before the Court on a motion filed by Edward ReBrook IV, Esq., to withdraw as counsel of record for Defendant National Socialist Movement ("NSM") and Defendant Nationalist Front ("NF"). ReBrook Mot. to Withdraw, ECF No. 691. Mr. ReBrook claims he must terminate his representation of Defendants NSM and NF primarily because a "concurrent conflict of interest has arisen" between those entities and Mr. ReBrook's third client in this case, Defendant Jeff Schoep. *Id.* at 1.[1] The motion has been fully briefed, ECF Nos. 691, 706, 712, and may be decided without oral argument. Tr. of Disc. Status Conf. 9–10 (Apr. 27, 2020), ECF No. 721; *see* Fed. R. Civ. P. 78(b); W.D. Va. Gen. R. 4(c)(2).

I. Background

Plaintiffs filed this lawsuit on October 11, 2017. Compl., ECF No. 1. Their original complaint named as Defendants numerous individuals and artificial entities, *see generally id.* ¶¶ 21–45, including: (1) Jeff Schoep, a resident of Michigan and "leader of Defendant NSM, the largest neo-Nazi coalition in the United States," *id.* ¶ 38; (2) NSM, an unincorporated association[2] located in Michigan and led by Schoep "as its 'Commander' since 1994," *id.* ¶ 39;

---

[1] Pinpoint citations to documents electronically filed with this Court, except for transcripts of court proceedings and depositions, use the header page numbers generated by CM/ECF. Pinpoint citations to transcripts use the page numbers printed on the upper right-hand corner of the document.

[2] An unincorporated association's capacity to sue or be sued in federal court is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). In Virginia, "[a]ll unincorporated associations or orders may sue and be sued under the name by which they are commonly known and

1

and (3) NF, an unincorporated association "led by Defendants Schoep, [Matthew] Heimbach, . . . and [Michael] Hill," *id.* ¶ 40; *see id.* ¶¶ 32, 35. Later that month, Schoep personally accepted service of process on behalf of himself, ECF No. 109; "National Socialist Movement c/o Jeff Schoep" as the entity's "Resident Agent, authorized to accept service," ECF No. 110; and "Nationalist Front . . . c/o Jeff Schoep" as a person "authorized to accept," ECF No. 60. All three Defendants retained James Kolenich, Esq., and Elmer Woodard, Esq., to represent them beginning on December 1, 2017. ECF No. 131.

Plaintiffs amended their complaint in January 2018, again naming Schoep, NSM, and NF as Defendants to the action. Am. Compl. ¶¶ 37–39, ECF No. 175. All three moved to dismiss the pleading under Rule 12(b)(6). ECF No. 207. NF also filed its own motion to dismiss, *see* ECF Nos. 105, 205, and an affidavit from Schoep asserting that NF is "not an entity that can be sued" because it "is merely a website that advertises the existence of certain 'Alt-Right' groups" and lists goals or "aspirations for interested groups" to follow, ECF No. 105, at 1. *See* Fed. R. Civ. P. 17(b). The Honorable Norman K. Moon, presiding District Judge, denied Defendants' Rule 12(b)(6) motion on the merits, *Sines v. Kessler*, 324 F. Supp. 3d 765, 793–94 (W.D. Va. 2018), ECF No. 335, and denied NF's separate motion to dismiss as premature because it relied on an affidavit that was "not properly before the Court" at the pleading stage, *id.* at 806–07 & n.8.[3] *See* Order of July 9, 2018, ECF No. 336.

---

called . . . and judgments and executions against any such association or order shall bind its real and personal property in like manner as if it were incorporated." Va. Code § 8.01-15. A corporation's capacity to sue or be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2).

[3] Judge Moon also explained that "the Court will eventually need to consider the [legal capacity] question in order to determine what alleged actions and statements of individuals are attributable to the purported unincorporated associations," *id.* at 806, and noted the "parties may seek leave to brief this issue on an expedited basis," *id.* at 807 n.8. No one has filed such a brief.

Messrs. Kolenich and Woodard represented Schoep, NSM, and NF in the litigation through early 2019. *See, e.g.*, ECF Nos. 343, 356, 359, 383. That February, Schoep moved to represent himself, ECF No. 418, and the attorneys moved to withdraw as counsel for Schoep, NSM, and NF after the clients terminated their services, ECF No. 420. *See* Tr. of Mar. 1, 2019 Mot. Hr'g 5, ECF No. 441. On March 4, I granted the motions and directed NSM and NF each to retain a licensed attorney and "have that attorney enter his or her appearance on the Defendant entity's behalf in this matter" within two weeks. Order of Mar. 4, 2019, at 2 ("Unlike individuals, artificial entities may 'appear in the federal courts only through licensed counsel.' This 'rule applies equally to all artificial entities,' including unincorporated associations." (quoting *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 202–03 (1993)), ECF No. 440.[4]

Around the same time, Schoep announced that he was stepping down as NSM's long-time leader, and that "Burt Colucci, Chief of Staff of the National Socialist Movement, w[ould] be taking over operations as the new Commander effective immediately." Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 4, Public Release, Nat'l Socialist Movement, Announcement (Mar. 1, 2019), ECF No. 674-4; *see also id.* Ex. 15, Mich. Dep't of Licensing & Reg. Affairs, Certificate of Corr. (Mar. 6, 2019) (naming Burt Colucci President and Secretary of NSM effective November 13, 2018), ECF No. 674-15. Mr. Colucci "ha[d] been handling most of the day to day operations" for NSM, and Schoep assured supporters that he had "full faith and confidence" in Mr. Colucci as the group's new leader.[5] Pls.' Second Mot. to Compel Disc. from

---

[4] I gave Schoep the same deadline by which to retain new counsel to represent him individually, if he chose to do so. *Id.* at 1; *see* 28 U.S.C. § 1654. Contrary to Mr. ReBrook's prior assertion, this Court has never "decided" that Schoep "was responsible for finding an attorney for . . . the NSM[] and the National[ist] Front," Email from E. ReBrook to J. Hoppe et al. (Aug. 28, 2019, 11:20 AM). *See* Order of Mar. 4, 2019, at 1–3.

[5] As the parties know, a messy dispute over who controlled NSM was also playing out in late 2018 and early 2019. In April 2019, I barred James Hart Stern from further participating in the case on NSM's behalf because Mr. Stern was not an attorney and "the Court cannot have two people, who apparently

Def. NSM Ex. 4, at 2. Schoep also told supporters that "NSM as an organization" was "actively in the process of retaining new attorneys" to replace its former counsel. *See id.* Mr. ReBrook formally noted his appearance on behalf of Defendants Schoep, NSM, and NF on March 19, 2019. ReBrook Notice of Att'y Appearance, ECF No. 451; *see also* Tr. of Mar. 18, 2019 Status Conf. Call 4, 6; Order of Apr. 4, 2019, at 1–2. Since that time, Mr. ReBrook has consistently described Schoep as his only "real" or "human" client and, for reasons that still are not clear, construed the scope of his attorney-client relationship with NSM and NF to be limited by Schoep's personal involvement with or control over those two distinct entities.[6] *See generally*

---

hold opposing goals, claiming to act on behalf of the same defendant entity in this litigation." Order of Apr. 4, 2019, at 2, ECF No. 461; *see* Tr. of Mar. 18, 2019 Status Conf. Call 32–33, ECF No. 455; Tr. of Mar. 1, 2019 Mot. Hr'g 5–8, 14–17. I also accepted Mr. ReBrook's notice of appearance as NSM's counsel of record. Order of Apr. 4, 2019, at 2. Schoep has acted as NF's officer or authorized agent throughout the litigation. *See* Tr. of Mar. 1, 2019 Mot. Hr'g 6–9; Decl. of Nationalist Front (Oct. 16, 2018), ECF No. 359-1; Pls.' First Mot. to Compel Disc. from Def. NSM 4–10 (citing correspondence and discovery responses), ECF No. 547.

[6] *See, e.g.*, Email from E. ReBrook to M. Bloch (Dec. 17, 2019, 8:48 AM) ("Please keep in mind that my control over my client(s), especially Mr. Colucci is quite limited, especially now that a conflict has arisen between him and my real client, Mr. Schoep."), ECF No. 712-2; Email from E. ReBrook to J. Hoppe et al. (Aug. 28, 2019, 11:20 AM) ("I have only one actual, human client, Mr. Jeff Schoep. . . . I was told I had to submit a [notice of appearance] for all three defendants, (Schoep, NSM, and NF), but in truth I only have privity of contract with Mr. Schoep. . . . [T]he only human client I have is Mr. Schoep, and he has provided everything he's been asked to provide that is within his control."), ECF No. 547-19; Email from E. ReBrook to M. Bloch (June 17, 2019, 12:50 PM) ("If you have specific, human persons I am expected to query for discoverable information other than my only human client, Jeff Schoep, please let me know. I believe there have been hundreds if not thousands of NSM members over the years, so in order to avoid a vagueness objection, I'm going to need to know who you expect me to contact."), ECF No. 547-17; Email from E. ReBrook to M. Bloch (June 12, 2019, 3:07 PM) ("The only actual human person I have a relationship with is Mr. Schoep. I do not know any of these other people [named in Plaintiffs' May 13 email]. My relationship with NSM . . . is derivative of my relationship with Mr. Schoep. Am I being asked to develop new relationship[s] with additional natural persons?"), ECF No. 547-15; Email from M. Bloch to E. ReBrook (May 13, 2019, 1:47 PM) ("With respect to NSM and NF, it remains [Plaintiffs'] position that there must be custodians beyond Mr. Schoep that . . . possess content responsive to our document requests, particularly with respect to NSM." (citing cases)), ECF No. 547-12; Email from E. ReBrook to M. Bloch (Apr. 23, 2019, 12:33 PM) ("I maintain that I cannot give you what I don't have, even if you really want me to. Mr. Schoep – my only flesh & blood, human client – literally does not control several of the things you are requesting . . . ."), ECF No. 547-10; Email from E. ReBrook to M. Bloch (Apr. 9, 2019, 11:17 AM) ("Since Mr. Schoep is the only named defendant for the NSM . . . only materials within his possession and control are subject to discovery."), ECF No. 547-7.

Va. R. Prof'l Conduct 1.13(a)–(e) ("Organization as Client"); *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, No. 1:15cv129, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016) ("The Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its [agents], and fully respond to interrogatories and document requests." (quotation marks omitted)).

On May 22, 2019, NSM directors Burt Colucci, Mike Scholar, and Acacia Dietz agreed to dissolve NSM as a Michigan corporation.[7] Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 18, ECF No. 674-18; *see id.* Ex. 15, at 2. Two days later, Mr. Colucci filed papers to "'reincorporate[]' the NSM in Florida," *see* ReBrook Reply in Supp. of Mot. to Withdraw Ex. 1, Email from A. Dietz to B. Colucci (Apr. 17, 2020, 12:28 AM), ECF No. 712-1, at 3, under the name "National Socialist Movement Corporation," Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 21, ECF No. 674-21. *See also* ReBrook Reply in Supp. of Mot. to Withdraw Ex. 2, at 2, ECF No. 712-2. He also announced in a blog post on the organization's longtime website, www.nsm88.org, that "the NSM HQ ha[d] relocated" to Kissimmee, Florida. Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 29, at 2–3, ECF No. 674-29. Mr. ReBrook appears to concede that Mr. Colucci's Florida-based "NSM Corporation" is merely a continuation of the "now dissolved" Michigan-based NSM that has been a Defendant to this lawsuit since October 2017. *See, e.g.*, ReBrook Reply in Supp. of Mot. to Withdraw 2 (noting counsel's "efforts to persuade Mr. Colucci that [his contrary] argument was not legally plausible and thus the Florida NSM would be required to participate and cooperate with discovery"), ECF No. 712; *id.* Ex. 1, at

---

[7] The Michigan Department of Licensing and Regulatory Affairs issued a Certificate of Dissolution for NSM on June 19, 2019. *See* Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 24, at 4, ECF No. 674-24. Under Michigan law, a dissolved "corporation may sue and be sued in its corporate name[,] . . . process may issue by and against the corporation in the same manner as if dissolution had not occurred," and a legal "action brought against the corporation before its dissolution does not abate because of the dissolution." Mich. Stat. §§ 450.1834(e), (f), 450.2834(e), (f).

3 ("Given that by your own admission the Florida NSM is a reincorporation of the Michigan NSM, the judge will most likely hold that the Florida nonprofit NSM [i]s the same NSM named in this current litigation. Therefore you/NSM will be required to cooperate/participate in this discovery process."); *cf. Fuisz v. Lynch*, 147 F. App'x 319, 322–23 (4th Cir. 2005) (discussing the "mere continuation exception" to Virginia's rule that a corporation that purchases or otherwise receives the assets of another company is generally not responsible for the debts and liabilities of its predecessor); *Johnson v. RAC Corp.*, 491 F.2d 510, 514 (4th Cir. 1974) (allowing plaintiff in a products liability case against defendant corporation to complete fact discovery even though the corporation allegedly dissolved under Delaware law more than three years earlier); *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2013 WL 608742, at *6 (D. Minn. Feb. 19, 2013) ("If a dissolved Wisconsin corporation may still be a party in a civil lawsuit, which Versa has not disputed here, then it has a duty under the Federal Rules of Civil Procedure to respond to discovery that is properly served on it.").

According to Mr. ReBrook, Schoep walked away from the white nationalist movement sometime after he appointed Mr. Colucci as NSM's new commander. *See* ReBrook Mot. to Withdraw 1–2; ReBrook Reply in Supp. of Mot. to Withdraw 2, 4. On August 12, 2019, Schoep wrote on his website that he "realized many of the principles [he] . . . once held so dearly and sacrificed so much for were wrong." *See* Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 10, Katie Mettler, *The 'race whisperer': A black activist convinced a neo-Nazi he'd save him from legal ruin. Then the real plan began*, Wash. Post, Oct. 30, 2019, ECF No. 674-10, at 31. His new "mission [was] to be a positive, peaceful influence of change and understanding in these uncertain times." *Id.* That fall, Schoep gave his first public speech describing "the best ways of pulling people out of hate groups." *Id.* "He titled it 'American Nazi: Radical to Redemption.'"

*Id.* Schoep still "actively works to counter the ideology that his former organization espouses." ReBrook Reply in Supp. of Mot. to Withdraw 2 (citing Def. Schoep's Br. in Opp'n to Pls.' Mot. to Compel 11–12, ECF No. 694).

*

In October 2019, I granted Plaintiffs' first motion to compel discovery from NSM and ordered Mr. Colucci to sit for a Rule 30(b)(6) deposition by Plaintiffs' counsel "devoted exclusively to Mr. Colucci's and/or Defendant NSM's conduct in pretrial discovery, including their efforts to locate and preserve any documents, information, or materials that are potentially relevant to this lawsuit." Disc. Order of Oct. 28, 2019, at 1–2, ECF No. 582. The Order acknowledged Mr. Colucci's claim that he controls "non-party 'National Socialist Movement Corporation'" based in Florida, but also made clear that the Court considered Mr. Colucci to be an officer, director, or managing agent of Defendant NSM, the organization formerly based in Michigan. *See id.* at 1, 2 (citing Fed. R. Civ. P. 30(b)(6)); Tr. of Oct. 18, 2019 Status Conf. 14, 74, ECF No. 581. Thus, Mr. Colucci "is responsible for providing complete and accurate credentials (or consent) to access any social media accounts within [Defendant NSM's] control that may contain discoverable information" in response to Plaintiffs' proper discovery requests. Disc. Order of Oct. 28, 2019, at 2 ("The parties and any Rule 30(b)(6) representatives[, ]including Burt Colucci for Defendant NSM . . . [,] shall work together to provide information to access any social media account and to provide any Defendant's or its representative's consent to access stored electronic communications and other account information to a social media provider." (emphasis omitted)).

I also explained to Mr. ReBrook that his "view of who the client is for NSM [was] overly narrow in just focusing on Mr. Schoep." Tr. of Oct. 18, 2019 Status Conf. 12. While Mr. ReBrook was not obligated to represent "every member" of NSM, he should consider all persons

7

"acting on behalf of NSM," or who have had "some sort of authority" or "exercise[] control over" the organization to be his "clients as well when [he's] representing NSM." *Id.*; *see also id.* at 18–19. Thus, it was Mr. ReBrook's "responsibility to conduct a reasonable investigation to determine who those [people] are," to figure out "what discovery they may have," and "to provide that information to the [P]laintiffs," *id.* at 12, in accordance with the "multiple orders" I had already entered directing NSM to comply with its discovery obligations, *id.* at 15. *See also id.* at 17–18.

Mr. ReBrook defended Mr. Colucci's Rule 30(b)(6) deposition in December 2019. *See generally* Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 5, Tr. of Dep. of B. Colucci 1–273 (Dec. 10, 2019), ECF No. 708-15. Broadly speaking, Mr. Colucci testified to his leadership role in the Michigan-based NSM from late 2017 through early 2019, explained why he reincorporated NSM in Florida, and reiterated that he will not provide or permit any discovery of NSM-related materials in his possession or control without another court order because in his view Defendant NSM and NSM in Florida are wholly separate entities. *See generally id.* at 22–29, 34–37, 46–57, 65–69, 74–77, 81–85, 90–93, 95–126, 163–73, 210–13, 262–72. Mr. ReBrook had not discussed Plaintiffs' discovery requests with Mr. Colucci, *see id.* at 34–35, 163–72, 175–77, 199–218, and at one point he seemed to endorse Mr. Colucci's belief that NSM in Florida was a "separate organization" than Defendant NSM, *id.* at 213.

On December 17, 2019, Mr. ReBrook informed Plaintiffs' counsel that his "control over [his] client(s), especially Mr. Colucci, is quite limited, especially now that a conflict ha[d] arisen between him and [Mr. ReBrook's] real client, Mr. Schoep." Email from E. ReBrook to M. Bloch (Dec. 17, 2019, 8:48 AM). He reiterated that Mr. Colucci "refuses to consent to any discovery" regarding the "now dissolved" Defendant NSM because neither Mr. Colucci nor his Florida-

based "National Socialist Movement Corporation" are named parties to this litigation. *Id.* Each Defendant in this case was supposed to "produce all discoverable material," including any relevant electronically stored information ("ESI") collected from that Defendant's designated electronic devices, to Plaintiffs' counsel on or before February 5, 2020. Order of Nov. 27, 2019, at 1, ECF No. 597; *see also* Disc. Order of Oct. 28, 2019, at 2–3; Order of Mar. 4, 2019, at 3; Stip. & Order of Nov. 19, 2018, at 2, 8–9, 16, ECF No. 383; Order of Nov. 13, 2018, at 1–2, ECF No. 379. Defendant NSM missed that deadline.

At some point, Mr. ReBrook "sought the advice of the Virginia State Bar Ethics Counsel and was advised that [he] should move to withdraw as NSM and NF's counsel of record." ReBrook Reply in Supp. of Mot. to Withdraw 2; *see also* ReBrook Mot. to Withdraw 1–2 ("In this instance, counsel sought the advice of the Virginia State Bar Ethics Counsel and was advised that defense counsel should move to withdraw."). Mr. ReBrook has not provided any information about the substance of his inquiry, the VSB counsel's response, or the rationale underlying the VSB counsel's purported conclusion "that there exists a concurrent conflict of interest." ReBrook Reply in Supp. of Mot. to Withdraw 4.

Mr. ReBrook moved to withdraw on March 28, 2020. He argues that "the interests of [his] clients" are "clearly and directly adverse" primarily because "NSM/NF espouses antisemitism and racial separation" and Schoep "has been speaking out against antisemitism, racism[,] and violence[, t]hus creating a conflict of interest." ReBrook Mot. to Withdraw 2–3; *see also* ReBrook Reply in Supp. of Mot. to Withdraw 2, 4, 6 (citing Mr. Colucci's purported deposition testimony that NSM "considers [Schoep] to be a traitor," and asserting that both "NSM and NF view[] Mr. Schoep as a traitor"). Mr. ReBrook also asserts that it is in Schoep's "best interests . . . to cooperate with discovery and the court, whereas NSM/NF consider Schoep

9

a traitor and have no interest in cooperating with counsel or this Court." ReBrook Reply in Supp. of Mot. to Withdraw 4. Mr. Colucci in particular "refuses to participate and cooperate with the Court," *id.*, despite Mr. ReBrook's purported "efforts to persuade [him] that . . . the Florida NSM would be required to participate and cooperate in discovery," *id.* at 2.[8]

## II. The Legal Framework

Counsel of record shall not withdraw from any cause pending in the U.S. District Court for the Western District of Virginia, except with the Court's consent for good cause shown. W.D. Va. Gen. R. 6(i). This Court generally looks to the Virginia State Bar's Rules of Professional Conduct both to govern attorneys who are admitted to practice before it, *see* Order In Re: Local Rule IV(B) Federal Rules of Disciplinary Enforcement (W.D. Va. Nov. 6, 1998), and to decide whether an attorney of record should be allowed to withdraw from a pending case, *Schock*, 2007 WL 2405730, at *2; *see also United States v. Bryant*, No. 3:04cr47-7, 2005 WL 8160794 (W.D. Va. Nov. 4, 2005) (Moon, J.); *cf. Advanced Training Grp. Worldwide, Inc. v. ProActive Techs., Inc.*, --- F. Supp. 3d ---, 2020 WL 902535, at *3 n.5 (E.D. Va. Jan. 29, 2020) ("Although the

---

[8] Mr. ReBrook also accuses his "client NSM/NF" of "threatening violence," *id.* at 3, and cites to an unsigned blog post describing a March 24, 2020 incident in Belton, Missouri, where law enforcement officers killed an individual who "allegedly planned to use a car bomb to blow up a local hospital [that was] coping with the coronavirus outbreak," ReBrook Mot. to Withdraw Ex. 1, at 1, ECF No. 691-1. The blog post notes that another media outlet identified this individual's "apparent Telegram handle," or online username, which included the acronym "'NSM' in [its] bio – a reference to the longstanding neo-Nazi group, National Socialist Movement." *Id.* at 2–3. The post does not suggest that Defendant NSM's leadership had any role in its alleged member's plot to blow up the hospital, and it does not mention Defendant NF at all. Thus, there is no reason to believe that "NSM/NF" is "threatening violence," ReBrook Mot. to Withdraw 3, or that either entity "has acted or intends to act illegally or unjustly in this matter," *Schock v. S.C. Johnson & Son, Inc.*, No. 6:06cv20, 2007 WL 2405730, at *2 (W.D. Va. Aug. 2, 2007) (citing Va. R. Prof'l Conduct 1.16(b)(1)). Additionally. Virginia's rules do not allow counsel to withdraw from representation whenever a client persists in *any* "course of action that the lawyer reasonably believes is illegal or unjust," ReBrook Mot. to Withdraw 3. The client must "persist[] in a course of action *involving the lawyer's services* that the lawyer reasonably believes is illegal or unjust." Va. R. Prof'l Conduct 1.16(b)(1)) (emphasis added). Mr. ReBrook does not suggest that NSM or NF are so abusing their attorney-client relationship in this matter. *See Schock*, 2007 WL 2405730, at *2; Va. R. Prof'l Conduct 1.16 cmt. 7.

Virginia Rules of Professional Conduct establish appropriate guidelines for the professional conduct of attorneys [in federal court], a violation of those Rules does not automatically result in disqualification of counsel."). The Court also "may consider the disruptive impact the withdrawal would have" on the client and the litigation generally, as well as whether the attorney continued to represent a party even though counsel "knew of [an] alleged potential conflict" of interest. *Patterson v. Gemini Org., Ltd.*, No. 99-1537, 2000 WL 1718542, at *2 (4th Cir. Nov. 17, 2000) (citing *Whiting v. Lacara*, 197 F.3d 317, 320 (2d Cir. 1999)); *cf. Advanced Training Grp.*, 2020 WL 902535, at *3 ("Courts have sensibly held that a party's failure to file a motion to disqualify [opposing] counsel in a timely manner may result in waiver of the issue.").

In Virginia, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" unless certain criteria are met. Va. R. Prof'l Conduct 1.7(a). As relevant here, "[a] concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." *Id.* Subsection (a)(1) "prohibits representation of opposing parties in litigation," whereas subsection (a)(2) governs "[s]imultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants . . . ." Va. R. Prof'l Conduct 1.7 cmt. 23. "An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party[,] or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.* However, "common representation is permissible where clients are generally aligned in interest even though there is some difference of interest among them." *Id.* cmt. 27. An attorney facing an actual concurrent conflict of interest among clients should move to withdraw from representation

11

entirely. *Id.* cmt. 4 (citing Va. R. Prof'l Conduct 1.16(a)(1)); *see also id.* cmt. 29 ("Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails.").

### III. Discussion

"Virginia's professional rules define conflicts of interest based on adversity of position in a legal matter." *Rivers v. United States*, No. 6:18cv61, 2020 WL 1480834, at *2 (W.D. Va. Feb. 26, 2020) (cleaned up) (citing *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982)). Courts have found concurrent conflicts where one client "want[ed] to point the finger of fault towards" his attorney's other clients in defending a lawsuit, *Sandford v. Commonwealth of Va.*, 687 F. Supp. 2d 591, 600 (E.D. Va. 2009) (citing Va. R. Prof'l Conduct 1.7 cmts. 8 & 23); *see also Wink, Inc. v. Wink Threading Studio*, No. 2:10cv450, 2011 WL 3206915, at *2, *5 (E.D. Va. July 26, 2011), but not where jointly represented clients took the same or compatible legal position against an opposing party, *see, e.g.*, *Richmond Hilton Assocs.*, 690 F.2d at 1089; *Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1200–01 (4th Cir. 1978); *Federico v. Lincoln Military Hous., LLC*, No. 2:12cv80, 2014 WL 12613388, at *3 (E.D. Va. May 23, 2014) (citing *Aetna*, 570 F.2d at 1201). Mr. ReBrook asserts that his clients now champion adverse *ideological* positions, ReBrook Mot. to Withdraw 2; ReBrook Reply in Supp. of Mot. to Withdraw 2, 4, and that "NSM/NF consider Schoep [to be] a traitor," ReBrook Reply in Supp. of Mot. to Withdraw 4. But, he does not point to any conflict in his clients' *legal* positions or "theory of the[ir] case," *Federico*, 2014 WL 12613388, at *3, against Plaintiffs' claims that they and other Defendants conspired to commit racially-motivated violence at the Unite the Right rally in August 2017. *See, e.g.*, *Richmond Hilton Assocs.*, 690 F.2d at 1089 (reversing order disqualifying defense counsel where the "district court mistook a political

12

conflict" among clients "for a conflict between [their] positions" in the case); *Wright v. Williamsburg Area Med. Assistance Corp.*, No. 4:12cv152, 2013 WL 12184285, at *1 (E.D. Va. Apr. 9, 2013) (noting that jointly represented defendants' interests were "mutually aligned, not adverse" where they held "substantially similar positions . . . to achieve the same ends— defending against the Plaintiff's claims"). Evidence that Schoep apparently had a change of heart two years later, or that some NSM and NF supporters resent his decision, has no bearing on whether Mr. ReBrook's clients are liable to Plaintiffs for the misconduct alleged in this lawsuit.

Moreover, the fact that Mr. Colucci has no *desire* to voluntarily participate in this case as Defendant NSM's Rule 30(b)(6) representative does not mean that Defendants "NSM/NF . . . have *no interest* in cooperating with counsel or this Court," ReBrook Reply in Supp. of Mot. to Withdraw 4 (emphasis added). *See generally Sines v. Kessler*, No. 3:17cv72, 2019 WL 3767475, at *1–2, *10–16 (W.D. Va. Aug. 9, 2019), ECF No. 539; *Burris*, 2013 WL 608742, at *7 (citing Fed. R. Civ. P. 37). Defendant Schoep has acted as NF's authorized agent throughout this litigation, and there is no indication that Mr. Colucci has any responsibility for that association. Mr. ReBrook can still protect his organizational clients' interests by, for example, explaining to Mr. Colucci and Schoep their roles as Rule 30(b)(6) representatives for each entity and that NSM and NF face serious consequences if they keep stonewalling Plaintiffs' efforts to gather relevant discovery. *See generally Sines*, 2019 WL 3767475, at *1–2, *10–16; Fed. R. Civ. P. 37. And, contrary to Mr. ReBrook's assertions, Mr. Colucci indicated in his deposition testimony that he will comply with a court order directing him to provide or permit discovery of any NSM-related ESI within his possession or control. Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 5, at 264–73; *see also* Tr. of Oct. 18, 2019 Hr'g 17 (Mr. ReBrook: "I have told [Mr. Colucci] what is expected of him, and his reply was, specifically, that he would not provide anything or sit for a

deposition *unless he was ordered to do so.* (emphasis added)). On this record, there is no risk that Mr. ReBrook's continued representation of NSM and NF will be materially limited by his responsibilities to Schoep.[9]

Mr. ReBrook also has known about this perceived conflict for some time. Even if counsel "did not fully appreciate or understand" Schoep's plans to break ties with the white nationalist movement when he entered his appearance for Schoep, NSM, and NF in March 2019, *see* Email from E. ReBrook to J. Hoppe (Aug. 28, 2019, 11:20 AM), he should have known by mid-August that Schoep had publicly renounced the movement's ideology and embarked on a new mission to promote peace and understanding, *see* ReBrook Mot. to Withdraw 1; ReBrook Reply in Supp. of Mot. to Withdraw 2, 4–5; Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 10, at 31. Mr. ReBrook spent the next seven months representing all three of his clients in discovery matters, and he alerted Plaintiffs' counsel to an alleged conflict between Defendant Schoep and Mr. Colucci, acting as Defendant NSM's Rule 30(b)(6) representative, in December 2019. Mr. ReBrook offers no explanation why he waited another three months—and more than seven weeks after the (most recent) deadline expired for his clients to produce all ESI and written discovery—to bring this perceived problem to the Court's attention.[10] *Cf. Patterson*, 2000 WL 1718542, at *2 (affirming denial of motion to withdraw where counsel waited for one year, and until after a "court-ordered discovery deadline had already passed" and "serious motions were

---

[9] Mr. Colucci's willingness to comply with a court order also undercuts Mr. ReBrook's concerns that "Defendants NSM and NF wish to pursue an approach [that] Counsel believes to be imprudent and with which Counsel disagrees," that their "attorney-client relationship has broken down," and that "significant differences of opinion with respect to several key issues affecting the case" have made it "unreasonably difficult for Counsel to effectively represent" NSM. ReBrook Reply in Supp. of Mot. to Withdraw 5–6.

[10] Mr. ReBrook also failed to file a response in opposition to Plaintiffs' second Motion to Compel Discovery from Defendant NSM, ECF No. 674 (Mar. 11, 2020), within the fourteen days allowed by the presiding District Judge's pretrial order, ECF No. 101. He moved to withdraw three days after NSM's response deadline expired.

14

pending" against his client, to seek withdrawal); *Advanced Training Grp.*, 2020 WL 902535, at *3–4 (denying motion to disqualify opposing counsel filed "after the close of discovery" and more than seven months after the movant "should have" known about the alleged conflict).

Finally, allowing Mr. ReBrook to withdraw from representing NSM and NF now would only further disrupt this case's "exceptionally protracted" march towards trial. Order of Mar. 4, 2019, at 2; *see generally Sines*, 2019 WL 3767475, at *6–16. More than a year ago, I directed Defendant NSM and Defendant NF each to have an licensed attorney "enter his or her appearance on the Defendant entity's behalf in this matter" because, "[u]nlike individuals, artificial entities may 'appear in federal courts only through licensed counsel.'" Order of Mar. 4, 2019, at 2 (quoting *Rowland*, 506 U.S. at 202). The Court accepted Mr. ReBrook's notice of appearance on behalf of both entities in April 2019. Now, finally, the parties are relatively close to wrapping up discovery and the case is set for a four-week jury trial beginning on October 26, 2020. ECF No. 598. Plaintiffs correctly point out that NSM and NF will not be permitted to represent their own interests without counsel and that Mr. Colucci likely will not retain a new attorney to represent NSM going forward. *See* Pls.' Br. in Opp'n to ReBrook Mot. to Withdraw 3, 8, 15–16. "Plaintiffs have expended considerable effort and resources in pursuing discovery" from these two Defendants, and they have spent a long time dealing "with unacceptable delays, obfuscations, and [apparent] disregard for both their proper discovery requests and this Court's many orders trying to enforce them," *Sines*, 2019 WL 3767475, at *15. *See, e.g.*, Disc. Order of Oct. 28, 2019, at 2–3; Order of Mar. 4, 2019, at 3; Stip. & Order of Nov. 19, 2018, at 2, 8–9, 16; Order of Nov. 13, 2018, at 1–2. I share Plaintiffs' concerns that allowing Mr. ReBrook to withdraw from representing these entities, and Defendant NSM in particular, will further impair

15

the Court's and the parties' mutual responsibility to resolve this case "in a just, speedy, and inexpensive manner." *Sines*, 2019 WL 3767475, at *15; Fed. R. Civ. P. 1.

Mr. ReBrook's cryptic statement that, "[i]n addition to the [alleged] conflict of interest, counsel has privity of contract with only one of the defendants in this civil litigation," i.e., Jeff Schoep, "and it would be unethical for counsel to leave his representation," ReBrook Mot. to Withdraw 3, is not persuasive. *See* Pls.' Br. in Opp'n to ReBrook Mot. to Withdraw 13–14. Presumably, Mr. ReBrook means that Schoep was the one who "retained" him and agreed to pay any legal fees on behalf of himself, NSM, and NF. *See* Email from E. ReBrook to J. Hoppe et al. ¶ 1 (Aug. 28, 2019, 11:20 AM); ReBrook Mot. to Withdraw 3. But, the "Virginia Supreme Court has long held that 'an attorney may be employed without formalities of any kind,'" and that a contract for legal services "'is often largely implied from'" the conduct of the attorney and his or her client(s). *Atlas Partners II Ltd. P'Ship v. Brumberg, Mackey & Wall, PLC*, No. 4:05cv1, 2006 WL 42332, at *5 (W.D. Va. Jan. 6, 2006) (quoting *Glenn v. Haynes*, 55 S.E.2d 509, 512 (Va. 1951)). "Neither is the relation[ship] dependent upon the payment of fees." *Glenn*, 55 S.E.2d at 512 (internal quotation marks omitted). Instead, "[w]hether an agreement employing an attorney to handle a particular matter is express or implied, there must be 'some indication that the advice and assistance of the attorney was sought and received.'" *Umphreyville v. Gittins*, 662 F. Supp. 2d 501, 510 (W.D. Va. 2009) (quoting *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 668 (Va. 1994)). Mr. ReBrook has held himself out as counsel of record for Schoep, NSM, and NF in this case for more than a year now, and he defended Mr. Colucci's Rule 30(b)(6) deposition for NSM in December 2019. *Cf. Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 622–23 (E.D. Va. 2008) (finding attorney-client relationship existed, even though defendants argued the attorney "was not 'retained' as 'litigation' counsel," where the attorney

16

"actually worked on" the case, "understood the significance of the Complaint and [d]efendants' duty to answer it," and later entered an appearance on defendants' behalf). Accordingly, "counsel is required to see it through" for his clients.[11] *Schock*, 2007 WL 2405730, at *2 (citing *Patterson*, 2000 WL 1718542, at *2).

Mr. ReBrook's motion to withdraw as counsel of record for Defendant National Socialist Movement and Defendant Nationalist Front, ECF No. 691, is hereby **DENIED**.

ENTER: May 28, 2020

Joel C. Hoppe
U.S. Magistrate Judge

---

[11] Mr. ReBrook also does not explain why Defendants NSM and NF—who *must* have a licensed attorney represent their interests in federal court—are somehow less deserving of their attorney's loyal service than is Defendant Schoep. "[A] lawyer has an equal duty of loyalty" and "diligent representation" to each client. Va. R. Prof'l Conduct 1.7 cmts. 31 & 33. This is why counsel ordinarily "will be forced to withdraw from representing all of the clients if the common representation fails." *Id.* cmt. 29.