IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES et al., ) | |
|     Plaintiffs, ) | Civil Action No. 3:17-cv-00072 |
| ) | |
| v. ) | MEMORANDUM OPINION & ORDER |
| ) | |
| JASON KESSLER et al., ) | By:   Joel C. Hoppe |
|     Defendants. ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Motion to Enjoin Defendant Cantwell from Making Unlawful Threats Against Plaintiffs and Plaintiffs' Counsel. ECF No. 511 ("Pls.' Mot. to Enjoin"). Defendant Christopher Cantwell was still represented by counsel in this case when Plaintiffs filed their motion, ECF No. 530, but he did not file a response in opposition within the fourteen days allowed by the Scheduling Order, ECF No. 101. *See* Pls.' Req. to Deem Mot. Unopposed, ECF No. 549 (citing W.D. Va. Civ. R. 11(c)(1)). On September 23, 2019, the Court gave Cantwell another seven days to respond to several pending motions, ECF No. 559, which he did, ECF Nos. 560, 564. The Court held a hearing on October 18, at which counsel for Plaintiffs and (now former) counsel for Cantwell appeared by telephone. Cantwell joined the conference call about ninety minutes late, but he had an opportunity to address Plaintiffs' motion and other matters. *See* Tr. of Oct. 18, 2019 Status Conf. 60, 64–76, ECF No. 579. Both parties also filed supplemental responses after Cantwell was arrested and detained on federal criminal charges in January 2020. *See* Pls.' Third Supp'l Resp. in Supp. of Mot. to Enjoin, ECF No. 640; Def. Cantwell's Second Supp'l Resp. in Opp'n to Pls.' Mot. to Enjoin, ECF No. 664; Pls.' Fourth Supp'l Resp. in Supp. of Mot. to Enjoin, ECF No. 725.

*

"Plaintiffs ask the Court to order Cantwell not to make unlawful threats against Plaintiffs and Plaintiffs' counsel." Pls.' Mot. to Enjoin 17. They argue that this prophylactic measure is necessary because Cantwell, who has a history of criminally violent behavior, threatened Roberta Kaplan, Esq., one of Plaintiffs' lead attorneys. *Id.* at 3, 9, 12–13. On June 17, 2019, Ms. Kaplan and her work on this lawsuit were featured in an article published by the Jewish Telegraphic Agency. *Id.* at 3 (citing Ron Kampeas, *This Jewish Lawyer Wants to Break the Back of the Violent White Nationalist Movement*, Jewish Tel. Agency https://www.jta.org/2019/06/17/united-states/this-jewish-lawyer-wants-to-break-the-back-of-violent-white-nationalists). The article also discussed Ms. Kaplan's role as lead counsel on a case that overturned the federal ban on same-sex marriage and included excerpts of remarks Ms. Kaplan had made at a Manhattan synagogue where she spoke about her wife. *Id.* On June 18, Cantwell shared a link to the article on Telegram.com, a social media website. Pls.' Mot. to Enjoin Ex. 1, ECF No. 511-2. Cantwell posted the following message, which appears directly above Ms. Kaplan's photograph, with the link to the article:

> After this stupid kike whore loses this fraudulent lawsuit, we're going to have a lot of fucking fun with her.

*Id.* As of July 2, 2019, Cantwell's message had been seen 226 times and "OK'd" by four Telegram.com users. *Id.* ("👌4").

"This was certainly not the first offensive message Cantwell posted about Plaintiffs' counsel." Pls.' Mot. to Enjoin 3 (citing Pls.' Mot. to Enjoin Ex. 2, ECF No. 511-3). This time, however, Plaintiffs maintain that "Cantwell's post went beyond menacing and offensive language: it was a thinly-veiled threat to harm Ms. Kaplan . . . and to encourage others to harm her" because of her role in this lawsuit. *Id.* at 3–4; *see also* Pls.' Reply in Supp. of Mot. to Enjoin 2–3, ECF No. 523; Pls.' First Supp'l Resp. in Supp. of Mot. to Enjoin 2, ECF No. 532; Pls.'

Second Supp'l Resp. in Supp. of Mot. to Enjoin 2–3, ECF No. 576. They believe Cantwell's rhetoric and "threatening behavior will escalate, as it has in the past, and jeopardize Plaintiffs' and their counsel's safety and Plaintiffs' right to a fair trial." *Id.* at 2; *see, e.g.*, Pls.' Mot. to Enjoin Ex. 14, Commw.'s Mot. to Revoke or Modify Bond Conditions ¶¶ 8–17, *Commonwealth v. Cantwell*, Nos. CR17-784, 17-845 (Albemarle Cty. Cir. Ct. July 6, 2018), ECF No. 511-15. Thus, Plaintiffs seek an order directing Cantwell to "stop making unlawful threats against Plaintiffs and Plaintiffs' counsel," Pls.' Mot. to Enjoin 2, and to "refrain from making unlawful threats against [them] and [their] counsel during the course of this litigation," Pls.' Mot. to Enjoin Attach. 1 (proposed order), ECF No. 511-1.[1] *See also* Pls.' Mot. to Enjoin 2–3, 12, 14.

Cantwell is detained pending trial on charges that he sent "extortionate" or "threatening" communications over the internet, in violation of 18 U.S.C. § 875(b), (c). *See* Pls.' Third Supp'l Resp. in Supp. of Mot. to Enjoin Ex. 1, Indictment, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. Jan. 22, 2020), ECF No. 640-1; Pls.' Fourth Supp'l Resp. in Supp. of Mot. to Enjoin Ex. 3, Order of Detention Pending Trial, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. Feb. 27, 2020), ECF No. 725-3. His trial was set to begin in early June 2020, but now has been continued indefinitely and will not begin until the U.S. District Court for the District of New Hampshire resumes holding grand jury proceedings and criminal jury trials. *See* Def.'s Mot. for Bail 2–3, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. May 22, 2020), ECF No. 28; Standing Order 20-

---

[1] Plaintiffs do not seek sanctions against Cantwell for his past speech about this lawsuit. *Compare Reddick v. White*, 456 F. App'x 191, 193–94 (4th Cir. 2011) (per curiam) (magistrate judge's order denying motion for sanctions against a non-party who allegedly threatened plaintiffs' counsel, "issued pursuant to a district court's inherent authority and after the underlying litigation had ended[] was 'dispositive' and required *de novo* review"), *with United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 568 (E.D. Va. 2010) (magistrate judge "appropriately denied" defendants' request for "a protective order prohibiting the parties from making any extrajudicial statements" about the case), *and Affeldt v. Carr*, 628 F. Supp. 1097, 1099, 1101 (S.D. Ohio 1985) (magistrate judge overseeing pretrial matters, 28 U.S.C. § 636(b)(1)(A), had authority to issue "gag order" directing new class counsel not to speak to or associate with disqualified class counsel).

19, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. May 26, 2020), ECF No. 29. The jury trial in this civil action will begin on October 26, 2020. Order of Nov. 27, 2019, ECF No. 598.

\* \*

All speech "is presumptively protected under the First Amendment unless it falls within 'certain well-defined and narrowly limited classes of speech,'" *In re White*, No. 2:07cv342, 2013 WL 5295652, at \*38 (E.D. Va. Sept. 13, 2013) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)). *See United States v. Alvarez*, 617 F.3d 1198, 1217 (9th Cir. 2010), *aff'd*, 576 U.S. 709 (2012). "[V]irulent ethnic and religious epithets," *United States v. Eichman*, 496 U.S. 310, 318 (1990), "sophomoric and offensive" statements, *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 388 (4th Cir. 1993), and "'vulgar repudiations . . . [or] scurrilous caricatures'" are all "typically protected," *Draego v. City of Charlottesville*, No. 3:16cv57, 2016 WL 6834025, at \*10–11 (W.D. Va. Nov. 18, 2016) (Moon J.) (quoting *Eichman*, 496 U.S. at 318–19). Even speech "advocating violence is protected," *Planned Parenthood of Columbia/Williamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1072 (9th Cir. 2002) (en banc), unless "the expression is judicially determined to be a 'true threat' or an incitement to imminent lawlessness," *In re White*, 2013 WL 5295652, at \*37. *See White v. United States*, 670 F.3d 498, 508–10, 513–14 (4th Cir. 2012), *abrogated on other grounds by Elonis v. United States*, 135 S. Ct. 2001, 2011–12 (2015))).

Plaintiffs ask the Court to curb Cantwell's future out-of-court speech about, or "against," them and their attorneys while this case is pending. *See* Pls.' Mot. to Enjoin 2–3, 13–19; Pls.' Mot. to Enjoin Attach. 1. They assert that their proposed order would restrict Cantwell only "from making unlawful threats," Pls. Mot. to Enjoin Attach. 1, or "[s]tatements that amount to 'true threats,'" which are not protected by the First Amendment, Pls.' Mot. to Enjoin 18 (citing *Virginia v. Black*, 538 U.S. 343, 359–60 (2003)). "'True threats' [are] . . . statements where the

4

speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. "Intimidation in the constitutionally proscribeable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death," *id.* at 360, "or with knowledge that the communication will be viewed as a threat," *Elonis*, 135 S. Ct. at 2012 (citing 18 U.S.C. § 875(c)). *See also Feminist Majority Found. v. Hurley*, 911 F.3d 674, 682 n.3, 692 (4th Cir. 2018) (concluding that online messages threatening to "kill," "euthanize," and "[g]rape"—slang for "gang rape"—members of a student organization were "true threats" under the Fourth Circuit's "reasonable person" standard); *United States v. White*, 810 F.3d 212, 220 (4th Cir. 2016) ("*Elonis* does not affect our constitutional rule that a 'true threat' is one that a reasonable recipient familiar with the context would interpret as a serious expression of an intent to do harm."). In determining whether a communication rises to the level of a true threat, courts consider "whether 'a *reasonable recipient familiar with the context*' would understand the statement to be 'a "serious expression of an intent to do harm" to the recipient.'" *In re White*, 2013 WL 5295652, at *43 (quoting *White*, 670 F.3d at 509 (emphasis in original) (quoting *Black*, 538 U.S. at 359)). "[P]rotecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur' are fundamental concerns about the security and safety of individual citizens that place [true] 'threats of violence . . . outside the First Amendment.'" *White*, 670 F.3d at 507 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)); *see also Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 729 (E.D. Va. 2015) (citing *White*, 670 F.3d at 507). Here, Plaintiffs assert that Cantwell's online comment about Ms. Kaplan—that he and unidentified others are "going to have a lot of fucking fun with her" after she "loses this fraudulent

5

lawsuit"—was a "true threat" of violence against her. *See* Pls.' Mot. to Enjoin 2, 18–19 & n.5; Pls.' Reply in Supp. of Mot. to Enjoin 2–3. Thus, they seek a court order to put Cantwell "on notice that such conduct is impermissible," Pls.' Mot. to Enjoin 17, and to "give Plaintiffs and their counsel a necessary, additional layer of protection and peace of mind," *id.* at 2, while they litigate this closely-watched case. *See id.* at 3–4, 14–15, 16, 19; Pls.' Reply in Supp. of Mot. to Enjoin.

Cantwell's statements are reprehensible, but Plaintiffs' arguments are not persuasive. Cantwell is already "on notice" that "engaging in conduct that the law prohibits," including making "unlawful threats" against another person, "is impermissible," Pls.' Mot. to Enjoin 17. *See* Pls.' Reply in Supp. of Mot. to Enjoin 2; Def. Cantwell's Resp. in Opp'n to Pls.' Mot. to Enjoin 1, ECF No. 560; Indictment, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. Jan. 22, 2020); Order of Detention Pending Trial 3–9, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. Feb. 27, 2020). There is no reason for this Court to issue an order telling him the same thing— particularly considering that Cantwell is incarcerated and likely will have extremely limited, if any, opportunity to use social media during the next several months. *See, e.g.*, Def. Cantwell's Second Supp'l Resp. in Opp'n to Pls.' Mot. to Enjoin 1 (noting that federal law enforcement officials "seized [his] electronic devices" on January 23, 2020, and that he is detained at the Stafford County Correctional Facility in Dover, New Hampshire, where the "'law library' consists of little more than a word processor"); Order of Detention Pending Trial 6, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. Feb. 27, 2020) (concluding that Cantwell should be detained pending trial notwithstanding his "willingness to submit to restrictions on his use of social media and monitoring of his internet use and electronic device(s)" if released).

Plaintiffs also point out that their proposed order would allow this Court to "regulate Cantwell's threatening conduct" occurring fully outside legal proceedings, which they believe will continue or escalate absent a court order, by treating such conduct as criminal or civil contempt. Pls.' Mot. to Enjoin 17–18. This argument is more persuasive, particularly considering Cantwell has acted "inconsistent[ly] with" at least one state-court order that he have "'[n]o contact direct or indirect with the victims'" of his assault on August 11, 2017, including by "repeatedly refer[ring] to one victim by identifying characteristics on social media" and mentioning another victim "by name on a radio broadcast." Pls.' Mot. to Enjoin Ex. 14, at ¶¶ 15–17. Even so, the Court concludes that Plaintiffs' proposed order is not proper—at this point in the litigation—unless Plaintiffs can show either that Cantwell's Telegram.com post itself was a "true threat" of violence, *see In re White*, 2013 WL 5295652, at *36–61, or that "the fear of violence" attributed to Cantwell's comment has disrupted Plaintiffs' ability to prosecute this case, *see id.* at *63–69, *71. This is because "[t]he preferred place" of free speech and expression "in our constitutional scheme 'gives these liberties a sanctity and a sanction not permitting dubious intrusions.'" *Id.* at *38 (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)).

Having carefully reviewed the evidence before the Court, I am constrained to conclude that Cantwell's repugnant Telegram.com comment comes close to—but does not cross—the line between protected speech and a true threat of physical violence. *See In re White*, 2013 WL 5295652, at *39–40. First, the comment did not expressly (or even explicitly) portend Cantwell's intent to kill or physically injure anyone. *See United States v. Carmichael*, 326 F. Supp. 2d 1267, 1281–82 (M.D. Ala. 2004) (finding no true threat where defendant's prosecution-related "website contain[ed] no references to killing, execution, or blood" and "photographs on the website [were] not disfigured"). In his response opposing Plaintiffs' motion, Cantwell explained that he "'said . .

7

. we're going to have fun with her'" because he knew he should "not . . . say everything I want about this asshole while I'm in the process of this legal proceeding,'" Def. Cantwell's Supp'l Resp. in Opp'n to Pls.' Mot. to Enjoin 3 (quoting comments on radio show). He acknowledges making religious and sexual epithets, but denies the statement was an explicit threat of violence. *See id.* Still, Cantwell's statement that he and others are "going to have a lot of fucking fun with" Ms. Kaplan could be understood by a reasonable recipient as implicitly promising violent retribution against her. *Cf. Feminist Majority Found.*, 911 F.3d at 692 ("A reasonable person would not be assuaged by the fact that a threat of violence included a popular culture reference" in addition to express threats to "kill" and "euthanize" individuals); *Hill v. Gaetz*, No. 13cv202, 2013 WL 1196986, at *2 (S.D. Ill. Mar. 25, 2013) (prisoner's allegation that defendant-correctional officer told plaintiff "'we're going to have fun with you tomorrow,'" among other allegations, stated a plausible excessive-force claim); *Garcia v. Haws*, No. 1:10cv273, 2011 WL 2197942, at *18 (E.D. Cal. June 6, 2011) (evidence that defendant told his victim that "he would have fun with her," among other things, could have persuaded a reasonable jury that defendant "formed the intent to commit forcible sexual acts on the victim when he transported her" to another town). The statement could also be taken as a threat to denigrate Ms. Kaplan more vehemently on social media, which does not involve physical violence.

Second, Cantwell's veiled threat was expressly predicated on Plaintiffs "los[ing] this . . . lawsuit," Pls.' Mot. to Enjoin Ex. 1, which shows that any action was conditional and not imminent. *Compare Watts v. United States*, 394 U.S. 705, 707 (1969) (war protestor's statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," was protected speech in part because it was "expressly made conditional upon an event . . . [that he] vowed would never occur"), *with United States v. Lockhart*, 382 F.3d 447, 449, 452 (4th Cir.

8

2004) (defendant's statement, "'If George Bush refuses to see the truth and uphold the Constitution I will personally put a bullet in his head,'" was a true threat in part because it did "not indicate what events or circumstances would prevent the threat from being carried out"). That factor is not dispositive, however, particularly considering Cantwell clearly *wants* Plaintiffs to lose the case so he and his cohorts can have "fun" with their attorney "[a]fter" his side prevails, Pls.' Mot. to Enjoin Ex. 1; *see* Def. Cantwell's Resp. in Opp'n to Pls.' Mot. to Enjoin 1, 4, ECF No. 560. *Cf. United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) ("Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, *so that he won't have to carry out* the threats. They are threats nonetheless." (citation omitted) (second emphasis added)).

Third, there is no evidence that Cantwell "communicated any threats directly" to Ms. Kaplan. *In re White*, 2013 WL 5295652, at *39. That fact does distinguish this case from all of the cases Plaintiffs cited in their motion, *see* Pls.' Mot. to Enjoin 15–16, and all other "cases of which the Court [i]s aware on this topic," *In re White*, 2013 WL 5295652, at *39 (quotation marks omitted). *See, e.g.*, *Richardson v. Cabarrus Cty. Bd. of Educ.*, No. 97-2313, 1998 WL 371999, at *1–3 (4th Cir. June 9, 1998) (per curiam) (affirming district court's order dismissing case, and barring plaintiff from filing the same or related claims against defendant, where plaintiff sent three threatening letters to a key defense witness and then "perjured himself repeatedly and extensively" in denying he wrote the letters); *Carroll v. Jacques Admiralty Law Firm*, 110 F.3d 290, 292, 294 (5th Cir. 1997) (affirming district court's award of attorney's fees as a sanction after defendant, who was also a practicing attorney, repeatedly "threatened and cursed at [plaintiff's] counsel" during his deposition in part because defendant "knew better" than to behave in such an "abusive, profane, and pugnacious" manner); *Frumkin v. Mayo Clinic*,

9

965 F.2d 620, 626–27 (8th Cir. 1992) (affirming district court's decision to issue a restraining order directing plaintiff not to contact defendant as a sanction after the plaintiff, who was also an attorney, repeatedly telephoned one defense witness and "threatened to kill [the witness] before killing himself" and told another defense witnesses, "'before I die, I'm going to take . . . you with me'"); *Cameron v. Lambert*, No. 07cv9258, 2008 WL 4823596, at *4–5 (S.D.N.Y. Nov. 7, 2008) (dismissing plaintiff's case with prejudice as a sanction after he "threatened defense counsel with physical violence" and "used profanity" to "disparage[]" defense counsel during his deposition); *Kilborn v. Bakhir*, No. 01cv1123, 2004 WL 2674491, at *4 (E.D. Va. Jan. 9, 2004) (awarding sanctions to defendant where pro se plaintiff, who was also an attorney, personally emailed defendant, his counsel, and a potential witness threatening to have them prosecuted or deported for their conduct in the lawsuit, among other things), *aff'd*, 102 F. App'x 328 (4th Cir. 2004); *cf.* Def.'s Mot. for Bail 7, *United States v. Cantwell*, No. 1:20cr6 (D.N.H. May 22, 2020) (noting the prosecution's theory that Cantwell and the alleged victim "had a private back-and-forth communication over social media app," during which Cantwell allegedly told the man, "'So if you don't want me to come and fuck your wife in front of your kids, then you should make yourself scarce.'").

Fourth, no evidence suggests either that Cantwell "had some control over" the roughly 200 Telegram.com users who had seen his post as of July 2, 2019, or that Cantwell's past rhetoric "had predictably been carried out" by his followers. *White*, 607 F.3d at 513; *see In re White*, 2013 WL 5295652, at *58. "The only information the Court can glean about [Cantwell's] general audience is derived from the content of [his] writings," *In re White*, 2013 WL 5295652, at *58, and his radio show and podcast, "Radical Agenda," Supp'l Resp. in Opp'n to Pls.' Mot. to Enjoin 1, 3; Pls.' Mot. to Enjoin Ex. 5, Aff. of Oren Segal ¶¶ 22–23, ECF No. 511-6. Cantwell describes

Radical Agenda as a "live, uncensored, open phones Nazi themed entertainment program" where he "talk[s] shit about people who put themselves in the news." Def. Cantwell's Supp'l Resp. in Opp'n to Pls.' Mot. to Enjoin 1, 3. On one episode, a "fellow white supremacist . . . called for murder of Jews, stating: 'there is only one thing absent free speech that we can do to express our dissent and that's to slaughter you like dogs, and you're gonna have it coming and your children will deserve to die.'" Segal Aff. ¶ 23. Plaintiffs do not allege that Cantwell expressly endorsed his guest's vile message. According to Plaintiffs' consultant on extremists, Telegram.com, the platform where Cantwell posted his message about Ms. Kaplan "tends to draw social media users" whose extremist views have gotten them "banded from other more mainstream social media platforms." *Id.* ¶ 20. Further, Cantwell's following on that website "which appear[s] to number in the hundreds," likely includes "precisely those individuals who are most dangerously committed to the white supremacist ideology and capable of violence." *Id.* ¶ 24. "[T]his may be an accurate characterization" of Cantwell's fanbase, but "there is little before the Court to support" a conclusion that Cantwell's vulgar criticism of Ms. Kaplan "to such people necessarily constitutes a threat of bodily harm" to her. *In re White*, 2013 WL 5295652, at *58. And, while "neither direct communication nor personal or group involvement in the threat is an essential component to finding a true threat, the lack of both," *White*, 670 F.3d at 513, along with the fact that Cantwell did not expressly threaten to kill or physically injure his putative target, compels the conclusion that Cantwell's Telegram.com post was not a "true threat," *see In re White*, 2013 WL 5295652, at *60–61; *Carmichael*, 326 F. Supp. 2d at 1281–89. Cantwell's "manner of discourse . . . is certainly 'a very crude offensive method of stating' his opinions" about this litigation and his adversaries. *In re White*, 2013 WL 5295652, at *57 (quoting *White*, 670 F.3d at 509). "[B]ut when such discourse does not include a 'serious expression of intent to do harm,'

11

from the perspective of a reasonable" person familiar with this lawsuit, "it is not 'a true threat' beyond the ambit of First Amendment protection." *Id.* (quoting *White*, 670 F.3d at 509).

\* \* \*

"[T]he Court does not minimize the real fear of harm and intimidation," *In re White*, 2013 WL 5295652, at \*63, that Cantwell's inflammatory comment caused Ms. Kaplan and her co-counsel, *see* Pls.' Mot. to Enjoin 2, 12. At this point, however, there is no indication that Cantwell's posting has had any measurable impact on the case. *In re White*, 2013 WL 5295652, at \*68; Pls.' Mot. to Enjoin 13 (describing the potential impact on deposition and trial testimony). Indeed, the Court commends Plaintiffs' counsel's willingness to work with Cantwell to meet his remaining discovery obligations, *see* Tr. of Oct. 18, 2019 Status Conf. 68, even after Cantwell posted a "troubling, distracting, and distressing" comment about their colleague, Pls. Mot. to Enjoin 2. Plaintiffs' counsel's measured response is a testament to their professionalism and respect for our judicial process. *See Sines v. Kessler*, No. 3:17cv72, 2020 WL 2736434, at \*5 (W.D. Va. May 26, 2020). In commending counsel's dedication to their clients, "the Court does not mean to suggest" that it is penalizing their "resilience" by denying relief to which Plaintiffs might otherwise be entitled. *In re White*, 2013 WL 5295652, at \*67. Rather, the Court finds Plaintiffs are not entitled to a protective order, at this time, because the available record shows that Cantwell's online comment about Ms. Kaplan was constitutionally protected and has not interfered with this litigation. *Compare In re White*, 2013 WL 5295652, at \*67, *with Richardson*, 1998 WL 371999, at \*1–2 (district court dismissed case and barred refiling where plaintiff committed perjury and defrauded the court in falsely denying he wrote intimidating letters to a key defense witness), *and Aaron v. Durrani*, No. 1:13cv202, 2013 WL 12121516 (S.D. Ohio Oct. 1, 2013) (district court entered gag order after plaintiffs' counsel used a "racially inflammatory

12

and prejudicial" moniker to refer to one defendant and wrote letters to defense counsel threatening to "'continue the public pounding'" until "'every judge in every case grant[ed] a gag order'" forbidding him to "utilize the press to prosecute his cases").

"In recognizing that constitutional protection extends even to such 'vituperative, abusive, and inexact' speech" as Cantwell tends to post about this lawsuit, *Watts*, 294 U.S. at 708, the Court emphasizes there is a line that, if crossed, "exposes the speaker to lawful sanctions without regard to his otherwise robust First Amendment interest in expressing himself," *In re White*, 2013 WL 5295652, at *57. Cantwell should know "that his conduct going forward [will] be of significant interest and concern to the Court" *Id.* at *4. The Court requires that Cantwell conduct himself with the same decorum, common courtesy, and professionalism expected from everyone who comes before it, *see In re Paige*, 738 F. App'x 85, 85–86 (3d Cir. 2016) (emphasizing "the importance [the court] place[s] on proper decorum and professionalism for all advocates who appear before [it], whether they are pro se, or licensed attorneys"); *Areizaga v. ADW Corp.*, No. 3:14cv2899, 2016 WL 3511788, at *8 (N.D. Tex. June 7, 2016) (citing *Petito v. Brewster*, 562 F.3d 761, 763 (5th Cir. 2009)); *Lopez v. United States*, 133 F. Supp. 2d 1231, 1232 (D.N.M. 2001), even when Cantwell is discussing this case and its participants outside the Court's presence. Plaintiffs' counsel should promptly notify the Court if they are ever concerned that Cantwell's speech activities cross the line into unlawful threats of violence against them or their clients, *In re White*, 2013 WL 5295652, at *63, or meaningfully impair their ability to prepare and prosecute their case against him, *see, e.g.*, *Carroll*, 110 F.3d at 294 (upholding monetary sanction against defendant "for abusive, profane, and pugnacious behavior in his deposition" in part because "[s]uch conduct . . . mocks the search for truth that is at the heart of the litigation process"); *Frumkin*, 965 F.2d at 627 (explaining that a restraining order prohibiting plaintiff from

13

contacting defendant's agents, witnesses, and consultants "was well within the district court's discretion to craft an appropriate remedy" after plaintiff called two defense witnesses and threatened to kill them).

For the foregoing reasons, Plaintiffs Motion to Enjoin Defendant Cantwell from Making Unlawful Threats Against Plaintiffs and Plaintiffs' Counsel, ECF No. 511, is hereby **DENIED**.

IT IS SO ORDERED.

ENTER: May 29, 2020

Joel C. Hoppe
U.S. Magistrate Judge

14