CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
06/11/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | Civil Action No. 3:17-cv-00072 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| JASON KESSLER et al., | ) | |
| Defendants. | ) | By:   Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Motion to Compel and for Sanctions

Against Defendant James Fields. ECF No. 671 ("Pls.' Mot."). Plaintiffs contend that Fields has

refused to obey multiple court orders "directing him to produce documents, identify and give

access to his social media accounts, and instruct social media companies to release his messages

to Plaintiffs" and recently admitted he did not keep Christmas cards that Defendant Vanguard

America sent to him while he has been incarcerated. Pls.' Mot. 2; *see id.* at 10.[1] They ask the

Court to impose evidentiary sanctions to help level the playing field at trial and deter similar

misconduct. *See id.* at 2–3, 17–22, 23–25; Fed. R. Civ. P. 37(b)(2). The motion has been fully

briefed, ECF Nos. 671, 686, 693, and may be decided without oral argument. Tr. of Disc. Status

Conf. 7–9 (Apr. 27, 2020), ECF No. 721; *see* Fed. R. Civ. P. 78(b); W.D. Va. Gen. R. 4(c)(2).

For the reasons explained below, Plaintiffs' motion to compel will be granted in part and denied

in part, and their motion for sanctions will be denied without prejudice. The parties shall bear

their own expenses incurred in litigating the motion to compel. Fed. R. Civ. P. 37(a)(5)(C).

I. Background

---

[1] Pinpoint citations to documents filed electronically with this Court use the "page X of Y" numbers
generated by CM/ECF.

On August 11–12, 2017, "Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." *Sines v. Kessler*, 324 F. Supp. 3d 765, 773 (W.D. Va. 2018) (Moon, J.); *see* Second Am. Compl. ¶¶ 1–7, ECF No. 557. Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege the Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985, and related state laws. *Sines*, 324 F. Supp. 3d at 773. Six allegedly were injured when Fields drove his car into a crowd of counter-protesters after the main "Unite the Right" event on Saturday, August 12th. *See id.* at 774–75. "While ultimate resolution of what happened at the rallies awaits another day," the District Court has held the remaining Plaintiffs plausibly alleged that the remaining Defendants, Fields included, "formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.* at 773; *see generally id.* at 775, 778–79, 788, 796–98, 803, 807 n.10.

\*

Plaintiffs filed this lawsuit on October 11, 2017. ECF No. 1. On October 24, Fields was personally served with a summons and copy of Plaintiffs' Complaint at a local jail, ECF No. 65, where he had been detained on state-court charges since his arrest on August 12, *see* Def. Fields's Br. in Opp'n to Pls.' Mot. 2, ECF No. 686. Fields hired David Campbell, Esq., David Hauck, Esq., and Justin Gravatt, Esq., to represent him in this matter. ECF Nos. 135, 156. Mr. Gravatt participated in the parties' Rule 26(f) planning meeting on November 29, 2017. *See* Joint R. 26(f) Rep. 1, 6, ECF No. 135. The parties did not agree upon any changes to the normal discovery rules or procedures. *See id.* at 3–4.

Plaintiffs filed their Amended Complaint in early January 2018. ECF No. 175. On January 25, Plaintiffs served on Fields's counsel their [Corrected] First Set of Requests for Production of Documents and First Set of Interrogatories. *See* Pls.' Mot. Exs. A & B, ECF Nos. 671-1, 671-2. Plaintiffs' interrogatories asked Fields to identify "all means of communication" that he used "to communicate concerning the [August 11–12, 2017] Events," including email accounts, social media usernames, or Discord channels, and to identify the specific "Electronic Devices" he used to communicate about those Events. *Id.* Ex. B, at 9. Their requests for production ("RFP") generally sought copies of "[a]ll Documents and Communications concerning the Events" and other relevant topics like racially or religiously motivated violence. *Id.* Ex. A, at 9–11. Fields's responses or objections were due by February 26. *See Sines v. Kessler*, No. 3:17cv72, 2019 WL 3757475, at *6 (W.D. Va. Aug. 9, 2019); Fed. R. Civ. P. 33(b)(2), 34(b)(2). His counsel missed that deadline.

I held my first conference call with counsel for the parties on March 16, 2018. *See* Tr. of Mar. 16, 2018 Conf. Call, ECF No. 282. Plaintiffs' counsel explained they had "not received any written responses to [their] requests for documents or [their] interrogatories from any of the defendants," and "none of the defendants ha[d] produced a single document." *Id.* at 10. They also had "very, very serious concerns" that relevant electronically stored information ("ESI") would be lost or destroyed unless the Court issued a preservation order. *See id.* at 23. I told everyone on the call that I expected them "to preserve any potentially relevant evidence" and I took their "obligation to preserve this evidence very seriously." *Id.* at 24. I also instructed the parties to meet and confer to see if they could negotiate an ESI protocol for my review. *Id.* at 28; *see also id.* at 23 (Plaintiffs' counsel noting they were "thinking about [making] a request for an

independent examiner to come in and do . . . an audit of [Defendants'] devices to make sure nothing has been deleted and, if it has, to try to get it restored"). They said that they would.

On March 26, I denied Fields's motion to stay discovery until his "criminal cases arising from the same incidents as alleged in the Amended Complaint" were resolved. Order of Mar. 26, 2018, at 1 (internal quotation marks omitted), ECF No. 288; *see* Tr. of Mar. 16, 2018 Conf. Call 16–21, 34, 41. I also ordered Fields to respond to Plaintiffs' first set of written discovery requests within twenty-one days. *See* Order of Mar. 26, 2018, at 5. Counsel served his responses on April 16, 2018. *See* Pls.' Mot. Exs. C & D, ECF Nos. 671-3, 671-4. In their motion, Plaintiffs assert that Fields "largely objected, did not respond, and/or otherwise failed to produce responsive information . . . . based on objections that have no merit," Pls.' Mot. 3, including that he could not access his social media accounts from jail, he "did not post any original information regarding the rally," and he did not possess "any responsive, nonprivileged documents" about any lawsuits, claims of violence, or arrests relating to or arising out of his own racially, ethnically, or religiously motivated conduct, *id.* at 4, 5, 6. It appears that Plaintiffs' counsel first wrote to Fields's attorneys about these problems on November 20, 2019. Def. Fields's Br. in Opp'n to Pls.' Mot. 3; *see* Pls.' Mot. Ex. H, Letter from D. Campbell to M. Bloch 2–3 (Jan. 23, 2020), ECF No. 671-8; Pls.' Reply Br. in Supp. of Mot. 5, ECF No. 693; *Sines*, 2019 WL 3757475, at *7 (summarizing Plaintiffs' deficiency letter sent to other defense counsel on April 24, 2018).

In June 2018, I held a conference call to discuss the parties' progress towards negotiating an ESI protocol. Tr. of June 5, 2018 Conf. Call, ECF No. 327. Mr. Campbell indicated that Fields could not comply with an imaging order because counsel couldn't "make the agencies that ha[d] responsive devices . . . turn them over." *Id.* at 12–13. Plaintiffs' lead attorney responded,

"We certainly understand, Your Honor. If Mr. Fields'[s] devices are in the possession of the government, we'll have to work that out separately." *Id.* On October 2, Plaintiffs filed their Motion to Compel Defendants to Permit Inspection & Imaging of Electronic Devices. ECF No. 354 ("Pls.' Mot. to Compel Imaging"). They asked the Court "to compel Defendants, with the exception of Defendant Fields, to submit electronic devices and social media that contain potentially relevant information to a neutral, third-party vendor for imaging and preservation of evidence" and to enter their proposed protocol for those Defendants to produce any relevant non-privileged ESI responsive to Plaintiffs' discovery requests. *Id.* at 2. Plaintiffs made clear that their "motion [did] not apply" to Fields, *id.*, and they did not raise any concerns about Fields's responses to their written discovery requests, *see id.* at 2–5 & n.1 (discussing other Defendants' deficient responses and improper objections). Plaintiffs' counsel later confirmed on the record that they were not pursuing anything from Fields through their motion to compel imaging. *See* Tr. of Hr'g on Pls.' Mot. to Compel Imaging 4 (Nov. 9, 2018), ECF No. 385. On November 13, I granted Plaintiffs' motion and directed the parties to file a final proposed ESI protocol for the Court's signature. Order of Nov. 13, 2018, ECF No. 379. This laid the groundwork for the Court on November 19, 2018, to enter the Stipulation and Order for the Imaging, Preservation, and Production of Documents. ECF No. 383 ("ESI Order").

Plaintiffs and seventeen named Defendants "stipulated and agreed to the terms set forth" in that Order. ESI Order 2.[2] Fields is not one of "the 'Defendants,'" *id.*, and he is mentioned only once in the Order: "Due to his current incarceration, the deadlines in Section II shall not apply to

---

[2] "Plaintiffs and Defendants Christopher Cantwell, Nathan Damigo, Matthew Heimbach, Michael Hill, Identity Ervopa, Jason Kessler, League of the South, Eli Mosely [a.k.a. Elliott Kline], Nationalist Front, National Socialist Movement, Matthew Parrott, Robert ['Azzmador'] Ray, Jeff Schoep, Richard Spencer, Traditionalist Worker Party, Michael Tubbs, and Vanguard America (collectively, the 'Defendants,' and with Plaintiffs, the 'Parties') hav[e] stipulated and agreed to the terms set forth herein[.]" *Id.*

Defendant Fields. Plaintiffs and Defendant Fields will enter into a separate stipulation and proposed order as to the timing to be applied to Defendant Fields." *Id.* at 7 n.2. Section II, captioned "Collection and Imaging of Documents," *id.* at 7 (n.2 omitted), sets out specific steps that "the 'Defendants,'" *id.* at 2, needed to complete by certain deadlines, including giving Plaintiffs' counsel a certification form listing electronic devices and social media accounts that may contain relevant information (14 days), making available to the Vendor for imaging any selected electronic devices and social media accounts (28 days), and reviewing the results of the collection and producing to Plaintiffs' counsel any non-privileged ESI responsive to their discovery requests, *see id.* at 3, 8–9, 16. Most of the Defendants bound by the ESI Order belated complied with it. *See generally Sines*, 2019 WL 3767475, at *9–12.

Plaintiffs' counsel and Mr. Campbell appeared together on multiple conference calls with me throughout 2019. *See, e.g.*, Min. Entry of Feb. 12, 2019, ECF No. 411; Min. Entry of Feb. 21, 2019, ECF No. 425; Min. Entry of July 2, 2019, ECF No. 512; Min. Entry of Oct. 18, 2019, ECF No. 579. On February 12, during a hearing to discuss how the Court should enforce the ESI Order, I told Mr. Campbell that he probably did not need to participate in the next conference on that subject. *See* Tr. of Feb. 12, 2019 Disc. Conf. Call 20–21, ECF No. 419. I asked Plaintiffs' counsel if she had "a different view," to which she responded, "No, Your Honor, I don't believe that Mr. Fields is part of the [S]tipulation." *Id.* at 21. The parties were "about two months away from the close of discovery," *id.* at 5, and had five months to prepare for a four-week jury trial scheduled to begin on July 8, 2019, *see* Notice of Hr'g-Jury Trial (June 12, 2018), ECF No. 328. On February 21, Mr. Campbell expressed concern that the parties could not complete discovery in time for trial. *See* Tr. of Feb. 21, 2019 Conf. Call 17–18, ECF No. 429.

On March 1, 2019, I held a motion hearing at which I also briefly addressed certain ongoing discovery problems and delays that Plaintiffs' counsel raised in a letter sent to the Court and to all Defendants or their counsel on February 27. Tr. of Mar. 1, 2019 Mot. Hr'g 18–23, ECF No. 441; Letter from M. Bloch to J. Hoppe et al. 1–3 (Feb. 27, 2019) (on file with Chambers). On March 4, I ordered "[a]ll Defendants covered by the [ESI] Stipulation & Order, ECF No. 383, [to] produce their electronic devices and social media account credentials . . . to the third-party vendor by the end of the day on Friday, March 8, 2019." Order of Mar. 4, 2019, at 3 (emphasis omitted), ECF No. 440. Four weeks later, I continued the trial date because "the complicated nature of discovery" and repeated delays had made it impossible for the parties to meet remaining case deadlines. Order of Apr. 4, 2019, at 1, ECF No. 461. Many of those problems continued through the summer and fall of 2019. *See, e.g.*, *Sines*, 2019 WL 3757475, at *11–13; Order of June 21, 2019, at 3–4, ECF No. 508; Social Media Order of Oct. 28, 2019, at 1–3, ECF No. 582 ("Social Media Order").

In July, a Virginia state-court judge sentenced Fields to life plus 419 years' imprisonment after a jury convicted him of second-degree murder and multiple counts of malicious wounding arising out of the August 12 car attack. The Honorable Michael F. Urbanski, Chief United States District Judge, had already sentenced Fields to two consecutive terms of life imprisonment after he pleaded guilty to federal hate crimes arising out of the same event. *See* Am. J. in a Crim. Case, *United States v. Fields*, No. 3:18cr11 (W.D. Va. filed Oct. 1, 2019), ECF No. 63. Fields's Fifth Amendment right against compelled self-incrimination should not have been a significant barrier to civil discovery after he was sentenced in the criminal cases. Order of Mar. 26, 2018, at 2–5; *see N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 487 (4th Cir. 1987).

On October 16, Plaintiffs' counsel emailed me and all defense counsel expressing concern that "despite Plaintiffs' persistent inquires and multiple Court orders, Defendants individually and collectively have a long way to go to achieve anything close to full compliance with their discovery obligations." Email from M. Bloch to J. Hoppe et al. 1 (Oct. 16, 2019 11:16 PM). While Plaintiffs had "received partial production from certain Defendants" in the preceding four weeks, "not a single Defendant ha[d] provided all outstanding electronic devices and account credentials that contain relevant content to the third-party vendor, . . . and some Defendants still ha[d] not produced a single document." *Id.* Plaintiffs' email summarized sixteen named "Defendants' document discovery deficiencies,"[3] *id.*, as well as their counsel's efforts to confer with certain defense attorneys. *See generally id.* at 1–3. It did not mention Fields or his attorneys. Later that week, I held a two-hour conference call with counsel for the parties, including Plaintiffs and Fields, to discuss several Defendants' outstanding discovery obligations and to set a detailed timeline for the parties to complete discovery. *See generally* Min. Entry of Oct. 18, 2019; Tr. of Oct. 18, 2019 Disc. Status Conf. 4–78, ECF No. 581. Plaintiffs' counsel did not raise any concerns about Fields's discovery responses or production. *See* Tr. of Oct. 18, 2019 Disc. Status Conf. 26–34, 38–49, 50–74.

On October 28, I gave "each Defendant" seven days to contact the Vendor "to determine what specific information, if any, the Vendor needs to access that Defendant's identified social media accounts and [electronic] devices" and fourteen days to "give the Vendor the last known credentials used to access the identified social media accounts, regardless of whether the

---

[3] The sixteen Defendants were: Elliott Kline (a.k.a. Eli Mosley); Vanguard America; Jeff Schoep; National Socialist Movement; Matthew Heimbach; Christopher Cantwell; Jason Kessler; Nathan Damigo; Identity Ervopa; Matthew Parrott; Michael Hill, Michael Tubbs, and League of the South; Robert "Azzmador" Ray; Traditionalist Worker Party; and Richard Spencer. Each is also included in the definition of "the 'Defendants'" on page 2 of the ESI Order.

Defendant currently has access to the platform, or whether an account is active, inactive, or inaccessible." Social Media Order 2. I expected "[t]he parties . . . [would] work together to provide information to access any social media account and provide any Defendant's . . . consent to access stored electronic communications and other account information to a social media provider." *Id.* "Each Defendant [was] responsible for providing complete and accurate credentials (or consent) to access any social media accounts within the Defendant's control that may contain discoverable information." *Id.* The Order also directed the parties to jointly submit a proposed schedule for completing discovery that included specific deadlines for "the Vendor to provide each Defendant access to that Defendant's imaged" ESI and for "each Defendant to review the imaged information and produce all discoverable material to Plaintiffs' counsel in accordance with the [ESI] Stipulation and Order" entered nearly a year earlier. *Id.* at 3.

On November 27, I entered an amended scheduling order directing the Vendor to "provide each Defendant with a complete copy of that Defendant's [ESI] . . . by January 15, 2020," and giving "[e]ach Defendant" twenty-one days after the Vendor provides that material to produce to Plaintiffs' counsel "any nonprivileged responsive ESI, along with a privilege log fully explaining why any responsive ESI was withheld." Am. Sched. Order of Nov. 27, 2019, at 1 (emphasis omitted), ECF No. 597. "Each party [must] produce all discoverable material to opposing counsel . . . by 5:00 p.m. EST on February 5, 2020," and party depositions should be complete on or before July 17, 2020. *Id.* (emphasis omitted). A four-week jury trial starts on October 26, 2020. *Id.* at 2; Notice of Hr'g-Jury Trial (Nov. 27, 2019), ECF No. 598.

Plaintiffs served their Second Set of Interrogatories on October 29, 2019. *See* Pls.' Mot. Ex. I, at 3–14, ECF No. 671-9. They asked Fields to describe in detail any "[c]ontact or [c]ommunication" he had with any of "the other Defendants between January 2017 and August

13, 2017," as well as for information about his "relationship" with any of the organizational Defendants and his involvement in any lawsuits and criminal proceedings or investigations related to the rallies. *See id.* at 11–14. Mr. Campbell served responses and objections on February 3, 2020, *see* Pls.' Mot. Ex. E, at 2–11, ECF No. 671-5, followed two days later by a letter supplementing those responses, *id.* Ex. F, at 2, ECF No. 671-6. Mr. Campbell answered the interrogatories on Fields's behalf and invoked his client's Fifth Amendment right against compelled self-incrimination in response to several questions about Fields's post-Rally communications with law enforcement and other government officials, as well as about "any Act of Violence in which he was allegedly involved." *See id.* at 6–8. The letter noted that Fields did "not recall any additional social media accounts other than those previously identified in discovery" and could not remember "the passwords to any of his accounts." *Id.* Ex. F, at 2 ("Unlike some other Defendants, Fields has had no access to any social media or his phone or computer since at least August 12, 2017."). Fields also received "Christmas cards from Vanguard America" during his incarceration, but he did not keep any of them. *Id.*

## II. The Legal Framework

"The basic philosophy" driving discovery in civil litigation today is "that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). "To that end, either party may compel the other to disgorge whatever [relevant] facts he has in his possession." *Hickman*, 329 U.S. at 507; *see Eramo v. Rolling Stone*, 314 F.R.D. 205, 209 (W.D. Va. 2016).

Rules 26 through 36 of the Federal Rules of Civil Procedure provide specific devices or procedures—such as interrogatories, document requests, and depositions—for parties to obtain discoverable information. *See Pruitt v. Bank of Am., N.A.*, No. 8:15cv1310, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016); *Middlebrooks v. Sebelius*, Civ. No. 04-2792, 2009 WL 251411, at *3 (D. Md. Aug. 13, 2009). Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). When they do not, Rule 37 provides one mechanism for a court to compel compliance, Fed. R. Civ. P. 37(a), or to sanction an unacceptable failure to follow the rules, *see* Fed. R. Civ. P. 37(b)–(f).[4]

Under Rule 37(a), the "party seeking discovery may move for an order compelling an answer, . . . production, or inspection" from another party who "fails to answer an interrogatory summitted under Rule 33," or "fails to produce documents, or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."[5] Fed. R. Civ. P.

---

[4] Federal courts also have inherent power to sanction conduct that offends the legal process, including a party's "fail[ure] to preserve or produce" discoverable information for another's use in litigation. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *see Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497–99 (D. Md. 2000) (discussing both sources of the court's authority). In this case, Rule 37(b)(2) provides an adequate framework to determine whether Fields failed to obey court orders to provide or permit discovery and, if so, whether Plaintiffs' requested evidentiary sanctions are appropriate. *See Sines*, 2019 WL 3757475, at *2 n.2 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

[5] Rule 34 applies only to documents, ESI, or tangible things within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control" in this context means "actual possession" or "the legal right to obtain" the requested material "on demand." *Terry v. Modern Inv. Co.*, No. 3:04cv85, 2006 WL 2434264, at *6 n.15 (W.D. Va. Aug. 21, 2006) (Moon, J.) (internal quotation marks omitted); *see, e.g.*, *Poole*, 192 F.R.D. at 501 (explaining it "is well established" that Rule 34 should be "broadly construed" so a party may be required to produce requested materials "even though it may not actually possess" them, and adopting the movant's position that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's 'control' for the purposes of Rule 34"). There is no such limitation on a party's obligation to answer interrogatories. *Bonumose Biochem, LLC v. Zhang*, No. 3:17cv33, 2018 WL 10068638, at *6 (W.D. Va. Oct. 31, 2018) (citing Fed. R. Civ. P. 33(b)(3)).

37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Generally, "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both" will be required to pay some portion of "the movant's reasonable expenses," including attorney's fees, incurred in bringing a successful motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A).

Separately, Rule 37(b)(2) gives the district court where an action is pending broad discretion to impose sanctions when a party "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) ("Rule 37(b)(2)(A) allows a district court to impose a sanction when a party fails to comply with a discovery order, and the court has broad discretion in fashioning its sanction when it does so."). "The rule's language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991); *see also Carriage Hill Mgmt., LLC v. Bos. Lobster Feast, Inc.*, No. GJH-17-2208, 2018 WL 3329588, at *5 (D. Md. July 6, 2018); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 518–20 (D. Md. 2010). "Courts are entitled to interpret broadly what constitutes an order," *REP MCR Realty v. Lynch*, 383 F. Supp. 2d 984, 998 (N.D. Ill. 2005), to provide or permit discovery under Rule 37(b)(2), *see Carriage Hill Mgmt.*, 2018 WL 3329588, at *5 (district court's oral order noting the parties' agreement to provide discovery by an extended deadline did not provide grounds for relief under Rule 37(b)(2) because the oral "[o]rder did not mandate any particular action" and "did not explicitly direct any action from either party"). *Cf. Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 324

(4th Cir. 2001) (en banc) (acknowledging "the rule in this circuit that a district court . . . is best able to interpret its own orders" (quotation marks omitted)).

Rule 37(b)(2)(A) "contains two standards—one general and one specific—that limit a district court's discretion" in choosing sanctions.[6] *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* "Rule 37 sanctions must be applied diligently," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980), "both as a matter of justice in the individual case and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) (Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (brackets omitted)). Sanctions include orders deeming facts established, prohibiting the disobedient party from entering designated matters in evidence, and entering default judgment. *See* Fed. R. Civ. 37(b)(2)(A). These options "are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary," 8B Wright & Miller, *Federal Practice & Procedure* § 2284 (3d ed. 2002), to achieve the Rule's dual goals in the particular case, *see Victor Stanley*, 269 F.R.D. at 533–34 (noting that Rule 37 sanctions serve "both normative . . . and compensatory" functions).

The Fourth Circuit has "developed a four-part test for a district court to use when determining what sanctions to impose" under Rule 37(b)(2)(A). *Belk*, 269 F.3d at 348; *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The

---

[6] "Instead of or in addition to" any orders issued under this subsection, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

court must consider: (1) "whether the non-complying party acted in bad faith"; (2) the kind and degree of prejudice that noncompliance caused its adversary; (3) the need to deter the specific sort of noncompliance; and (4) "whether [any] less drastic sanctions" would be effective. *Belk*, 269 F.3d at 348. Certain sanctions, such as giving an adverse inference instruction against a party who lost or destroyed material that should have been preserved for another's use in the litigation, *see* Pls.' Mot. 3, 11–14, further require the moving party to show the person "acted either willfully or in bad faith in failing to preserve relevant evidence" because an adverse inference "is not an appropriate sanction" where the "spoliator's conduct is merely negligent," *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (citing *Hodge*, 360 F.3d at 450–51). *See generally Ackerson v. Rector & Visitors of the Univ. of Va.*, No. 3:17cv11, 2018 WL 3097346, at *5–12 (W.D. Va. Apr. 11, 2018), *adopted by* 2018 WL 3097334, at *4–6 (W.D. Va. June 22, 2018) (Moon, J.).

## III. Discussion

Plaintiffs argue that Fields failed to fully answer the two sets of interrogatories submitted to him under Rule 33, failed to produce documents or permit inspection of his social media accounts and ESI as requested under Rule 34, and failed to obey three court orders directing "the Defendants" or "each Defendant"—i.e., Fields included—to provide or permit discovery of relevant ESI stored online or on their identified electronic devices. Pls.' Mot. 2–3, 3–6, 7–8; Fed. R. Civ. P. 37(a)–(b); *see also* Pls.' Reply Br. in Supp. of Mot. 2 (clarifying that Plaintiffs are not asking Fields to produce any electronic devices in the government's custody because they "understand [he] cannot produce what he does not have"). While Plaintiffs filed their motion "as both a motion to compel and a motion for sanctions," their primary concern is that the Court give an adverse-inference instruction and impose evidentiary sanctions because, in their view, "it is

clear Fields has not and will not produce discovery." Pls.' Mot. 3. I disagree that such sanctions are warranted at this point. *See generally Sines*, 2019 WL 3757475, at *12–13, *16.

A.    *Written Discovery Requests*

The Court's Orders of March 26, 2018, and November 27, 2019, required Fields to fully answer or respond to Plaintiffs' written discovery requests properly served on him at least thirty days before written discovery closed on February 5, 2020. *See* Pretrial Order ¶ 16, ECF No. 101; Am. Sched. Order of Nov. 27, 2019, at 1; Order of Mar. 26, 2018, at 5; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Mr. Campbell served responses to Plaintiffs' first set of RFPs and interrogatories on April 16, 2018, and to Plaintiffs' second set of interrogatories on February 3, 2020. *See* Pls.' Mot. 3, 6. Many of those responses are deficient in form or substance. *See* Fed. R. Civ. P. 37(a)(4).

To start, Rule 33 requires that interrogatories "must be answered . . . by the party to whom they are directed," that each interrogatory must "be answered . . . fully in writing under oath," and that the "person who makes the answers must sign them." Fed. R. Civ. P. 33(b)(1)–(3), (5). Plaintiffs' interrogatories were "directed" to Fields, which means he is the only person who may "answer" and sign them.[7] *See Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238–39 (W.D.N.C. 2010); *Saria v. Mass. Mut. Life Ins. Co.*, 228 F.R.D. 536, 538–39 (S.D. W. Va. 2005); *Garguilo v. MGI Comm'ns*, Civ. A. No. 91-3885, 1992 WL 22242, at *2 (E.D. Pa. Feb. 5, 1992) ("While it is common practice for an attorney to prepare interrogatory answers, it is his client who must read and sign them . . . . under oath." (citation omitted)). Fields did not sign any of the interrogatory responses that Mr. Campbell served on

---

[7] Mr. Campbell must also sign the responses and objections, Fed. R. Civ. P. 26(g)(1)(B), but he cannot answer interrogatories directed to his individual client, Fed. R. Civ. P. 33(b)(1)(A).

Plaintiffs' counsel, and there is no indication that any of Fields's purported answers were made under oath. *See generally* Pls.' Mot. Ex. D, at 2–6; *id.* Ex. E, at 2–8. Accordingly, Fields must cure those defects. Fed. R. Civ. P. 37(a)(3); *see Saria*, 228 F.R.D. at 540–41.

Some of Fields's responses are evasive or incomplete. Fed. R. Civ. P. 37(a)(4). For example, the fact that Fields cannot personally "access his social media accounts" from jail, Pls.' Mot. Ex. C, at 4, 5, 6, does not negate his obligation to provide the requested records of his online communications. Any responsive document held by Fields's criminal-defense attorneys would also be within Fields's "'control' for the purposes of Rule 34," *Poole*, 192 F.R.D. at 501, if he has "the legal right to obtain the document on demand," *Terry*, 2006 WL 2434264, at *6 n.15, or to authorize counsel to release it. *See* Va. R. Prof'l Conduct 1.6(a), 1.16(e); *cf. Warren v. Sessoms & Rogers, P.A.*, No. 7:09cv159, 2012 WL 13024154, at *4–5 (E.D.N.C. Nov. 26, 2012) (citing N.C. R. Prof'l Conduct 1.16(d)). Fields also must fully answer each of Plaintiffs' interrogatories asking about relevant documents or communications, even if he does not possess or control the actual records. *See Bonumose Biochem*, 2018 WL 10068638, at *6; *Nat'l Fire Ins. Co.*, 264 F.R.D. at 239; *Saria*, 228 F.R.D. at 540 n.2. This obligation covers instances where Fields "liked," shared, or reposted relevant online content originally created by other internet users. *See, e.g.*, Pls.' Mot. 5. Finally, when "the answering party lacks necessary information to make a full, fair[,] and specific answer to an interrogatory, [he] should so state under oath and should set forth in detail the efforts made to obtain the information." *Nat'l Fire Ins. Co.*, 264 F.R.D. at 238. Fields must supplement his interrogatory answers to cure these defects. *See, e.g.*, Pls.' Mot. Ex. D, at 3–4 (answer to Interrogatory No. 2); *id.* Ex. E, at 2–4, 6 (answers to Interrogatory Nos. 1, 3, and 5); *see also id.* Ex. C, at 6–7 (response to RFP No. 5).

16

Next, Plaintiffs assert that Fields refuses to "identify and give access to his social media accounts," Pls.' Mot. 1, even though their original discovery requests sought his "login information" and "passwords," *see id.* at 4 ("Now, Fields says he cannot remember them, perhaps because he waited two years after Plaintiffs requested this information to try to produce it."). As far as I can tell, however, Plaintiffs have never asked Fields either "under Rule 33" or "under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv), to disclose any social media account credentials or otherwise give Plaintiffs direct access to those accounts. *See, e.g.*, Pls.' Mot. Ex. B, at 9 (first interrogatories asking Defendants to identify electronic devices and social media accounts with usernames, but not their passwords or other credentials, that may contain requested materials); *id.* Ex. A, at 9–11 (requesting copies of documents and communications, social media activity referencing the Events or other Defendants, and "'friends' and/or 'social connections'" lists). Additionally, as explained below, Plaintiffs have not shown that either the ESI Order or the Social Media Order applied to Fields. Thus, Fields's failure to disclose his social media credentials or to give Plaintiffs direct access to those online accounts is not grounds for compelling him to do so under Rule 37(a), or for imposing sanctions under Rule 37(b).

Conversely, Plaintiffs' RFPs do instruct all Defendants that, to the extent they or their representatives (including attorneys) do not have copies of responsive online communications that they made or received, then the Defendant "must provide the consent necessary under the Stored Communications Act to permit the providers of electronic communications services and remote computing services to produce the [underlying] documents." Pls.' Mot. Ex. A, at 7 (citing 18 U.S.C. § 2702); *see, e.g.*, Pls.' Mot. 2, 15 (noting Fields's failure "to instruct social media companies to release his messages to Plaintiffs"). Fields maintains that he is unable to obtain documents and information from his accounts that may be relevant to this case. Although it is

Fields's obligation in the first instance to obtain relevant information within his control, because he has not produced the information at this point in the case, the Court will require him to provide CSA consent forms for any requested social media accounts so that Plaintiffs may nonetheless be able to obtain that information. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(4).

B.      *Discovery Orders*

Plaintiffs have not shown that the ESI Order (ECF No. 383) or the Social Media Order (ECF No. 582) required Fields to provide or permit the specific discovery at issue in this motion, Pls.' Mot. 6–8, 14–15. *See R.W. Int'l Corp.*, 937 F.2d at 15; *Carriage Hill Mgmt.*, 2018 WL 3329588, at *5. The ESI Order—"drafted jointly by the parties and entered at their request," *Scott v. Clarke*, 355 F. Supp. 3d 472, 492 (W.D. Va. 2019) (Moon, J.)—does not list Fields among the seventeen Defendants who "stipulated and agreed to the terms" of that Order. ESI Order 2. Plaintiffs correctly point out that, "[d]ue to his current incarceration, the *deadlines* in Section II shall not apply to Defendant Fields," and that "Plaintiffs and Defendant Fields will enter into a separate stipulation and proposed order *as to the timing* to be applied to Defendant Fields," *id.* at 7 n.2 (emphasis added).[8] *See* Pls.' Mot. 2, 7. The problem for Plaintiffs' Rule 37 argument, however, is that Fields is explicitly excluded from Section II's *substantive* requirements that "the 'Defendants,'" ESI Order 2, give Plaintiffs a certification form identifying all electronic devices and social media accounts that contain potentially relevant information, make those devices and accounts available to the Vendor for imaging and collection, and produce to Plaintiffs' counsel all non-privileged ESI recovered therefrom, *see id.* at 7–9. Plaintiffs' counsel also consistently represented to the Court that Fields was not one of the

---

[8] There is no indication that counsel for Plaintiffs and Fields made any effort to negotiate  this separate agreement before fact discovery closed on February 5, 2020, or before Plaintiffs filed their Rule 37 motion to compel and for sanctions on March 9, 2020. *See* Pls.' Mot. 7.

"Defendants covered by" the ESI Order's substantive provisions, Order of Mar. 4, 2019, at 3. *See, e.g.*, Pls.' Mot. to Compel Imaging 2–3; Tr. of Hr'g on Pls.' Mot. to Compel Imaging 4; Tr. of Feb. 12, 2019 Disc. Conf. Call 21; Tr. of June 5, 2018 Conf. Call 12–13. If Plaintiffs thought those requirements should apply to Fields, then it was their attorneys' responsibility to negotiate with Mr. Campbell and make sure Fields was on the list of "the 'Defendants'" who "stipulated and agreed to the terms [t]herein," ESI Order 2. *Cf. Bentley Fund. Grp. v. SK & R Grp.*, 609 S.E. 2d 49, 56–57 (Va. 2005) (explaining that a "court may not add to the terms of the contracts of parties by construction, in order to meet the circumstances of a particular case," and reversing the trial court's construction of the term "Property" to include assets that were not "specifically defined" as such in the parties' contract); *Rutledge v. Rutledge*, 608 S.E. 2d 504, 508–09 (Va. Ct. App. 2005) (applying principle of *expression unius est exclusion alterius* to a contract between private parties, and holding that the trial court did not err in refusing to award attorney's fees for a proceeding not listed in the contract). At the very least, they should have brought to the Court's attention Fields's purported noncompliance before written discovery closed on February 5, 2020. *Cf. Reed v. Beverly Hills Porsche*, No. 6:17cv59, 2018 WL 10396252, at *2 (W.D. Va. Jan. 26, 2018) (Moon, J.) ("Simply put, the law does not require a trial judge to indulge discovery motions filed after a court-imposed deadline when the party had a fair opportunity to pursue the matter before the deadline."). The Court will not add Fields's name to the ESI Order now.

The Social Media Order entered on October 28, 2019, was the Court's then-most recent effort to enforce the ESI Order's terms. *See* Social Media Order 2–3 (directing the parties to submit proposed deadlines for each Defendant to review imaged ESI and produce discoverable material to Plaintiffs' counsel "in accordance with" the ESI Order); Order of Mar 4, 2019, at 3 ("All Defendants covered by the [ESI] Stipulation & Order, ECF No. 383, must produce their

electronic devices and social media account credentials . . . to the third-party vendor" by an extended deadline).[9] The Social Media Order directed "each Defendant" to: (1) contact the Vendor to "determine what specific information, if any," the Vendor needed in order "to access that Defendant's identified social media accounts and devices"; (2) give the Vendor "the last known credentials used to access the identified social media accounts, regardless of whether the Defendant currently ha[d] access to the platform, or whether the account [was] active, inactive, or inaccessible"; and (3) provide "complete and accurate credentials (or consent) to access any social media accounts within the Defendant's control that may contain discoverable information." Social Media Order 2.

As noted, this Order was entered after Plaintiffs' counsel wrote to the Court detailing sixteen named "Defendants' document discovery deficiencies," Email from M. Bloch to J. Hoppe et al. 1–3 (Oct. 16, 2019 11:16 PM), and I held a two-hour conference call with counsel for the parties, including Mr. Campbell and Plaintiffs' attorneys, to discuss both those problems and the discovery schedule more generally. At the hearing, Plaintiffs' counsel explained that "a number of defendants . . . provided credentials to the vendor, but those credentials were ineffective because the platform had suspended the account and the platform needs consent from the defendants themselves" to release the contents of their online communications. Tr. of Oct. 18, 2019 Disc. Status Conf. 26–27; *see also id.* at 28–34, 38–40. Later, counsel addressed Plaintiffs' concerns about each Defendant named in their October 16 email to the Court. *See generally id.* at 38–74. Unlike Fields, those Defendants are also listed among "the Defendants" who "stipulated and agreed to the terms" in the ESI Order. *See* ESI Order 2; Email from M. Bloch to J. Hoppe et al. 1–3 (Oct. 16, 2019 11:16 PM). Plaintiffs' counsel never mentioned any

---

[9] Notably, Plaintiffs do not argue that Fields violated the March 4 Order.

problems with Fields's discovery responses or his purported failure to comply with the ESI Order during the preceding eleven months. *See generally id.*; Tr. of Oct. 18, 2019 Disc. Status Conf. 4–78. They now assert, for the first time, that Fields was bound by the Social Media Order's "credentials" and "consent" provisions because the Order refers to "'each Defendant'" and "'all represented Defendants' (*i.e.*, including Fields) who appeared by telephone to discuss the Social Media Order." *See* Pls.' Mot. 6 (quoting Social Media Order 2).[10]

Viewing the Social Media Order in context of my other Orders and extensive discussions with counsel, I conclude that the Order did not apply to Fields. *See, e.g.*, Order of Mar 4, 2019, at 3; Order of Nov. 13, 2018, at 2; Tr. of Hr'g on Pls.' Mot. to Compel Imaging 3–4, 29–34; ESI Order, at 2, 7–9; *cf. Belk*, 269 F.3d at 324 (acknowledging "the rule in this circuit that a district court . . . is best able to interpret its own orders"). It was not unreasonable for Mr. Campbell to reach the same conclusion. *Cf. Belk*, 269 F.3d at 348 (explaining that the district court acted within its discretion to sanction a party under Rule 37 where pretrial order's provision instructing parties to file witness lists on the first day of trial was "clearly for the court's convenience and could not reasonably be interpreted to apply to disclosures to the other parties"); *Sines v. Kessler*, No. 3:17cv72, 2020 WL 2736434, at *11 (W.D. Va. May 26, 2020) ("Generally, a party meets the substantially justified standard [in Rule 37(b)(2)(C)] when there is a genuine dispute or if reasonable people could differ as to the appropriateness of that party's position or conduct."

---

[10] Plaintiffs overlook that the Order granting their Motion to Compel Imaging similarly directed "all Defendants who appeared at the hearing" on November 9, 2018, except for Defendant Richard Spencer, to "sign the consent form allowing Discord to produce any discoverable documents or electronically stored information in response to Plaintiffs' subpoena dues tecum." Order of Nov. 13, 2018, at 2. The Order excluded Spencer because his attorney was not prepared to discuss the matter at that hearing. *See* Tr. of Hr'g on Pls.' Mot. to Compel Imaging 29–34. Mr. Campbell did not have an opportunity to address the Discord consent issue because the Court understood Plaintiffs were not seeking any discovery from Fields at that time. *See id.* at 3–4, 29–34. Plaintiffs do not assert that Fields was bound by the November 13 discovery order simply because Mr. Campbell appeared on the phone call. *See* Pls.' Mot. 6–8.

(quotation marks omitted)). Accordingly, neither the ESI Order nor the Social Media Order authorizes the Court to sanction Fields under Rule 37(b)(2). *See R.W. Int'l Corp.*, 937 F.2d at 15.

C.      *Spoliation*

Finally, Plaintiffs argue Fields should be sanctioned for spoliating evidence, specifically a few Christmas cards that Fields received from Vanguard America during the two-plus years he has been incarcerated. Pls.' Mot. 11–14, 17–19; *see* Def. Fields's Br. in Opp'n to Pls.' Mot. 6 (noting that Fields received "two Christmas cards" from Vanguard America). Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A party seeking spoliation sanctions must show spoliation occurred and their requested sanctions are warranted under the governing law. *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015). Spoliation has three elements:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Walker v. Owens*, No. 7:13cv425, 2016 WL 320998, at *2 n.3 (W.D. Va. Jan. 26, 2016) (Moon, J.) (alteration in original) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)). "[A]ny level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence" satisfies the second element, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011), whereas "the nuanced, fact-specific differences among these states of mind become significant in determining" any appropriate remedy or sanction for spoliation, *Victor Stanley*, 269 F.R.D. at 529. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). Culpability also bears on the determination

whether the lost materials were in fact "relevant" to the claims or defenses of the party who sought those materials, as required to meet the third element. *See Sampson*, 251 F.R.D. at 179–80 (citing *Vodusek*, 71 F.3d at 156).

"The broad contours of the duty to preserve are relatively clear," *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), and flow logically from a civil litigant's obligation to disclose and produce discoverable documents relevant to any party's claim or defense after a complaint is filed, *E.I. du Pont*, 803 F. Supp. 2d at 496. *See generally* Fed. R. Civ. P. 26(b)(1), 33(a)(2), 34(a)(1), 37(d)–(e). Once the duty is triggered, a party must preserve documents that he knows or should know are, "or could be, relevant to the parties' dispute." *Blue Sky Travel*, 606 F. App'x at 698 (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)). Fields's duty to preserve potentially relevant correspondence or communications he received from any co-Defendant in this case arose, at the latest, when Plaintiffs served him with their Complaint in October 2017. *See id.* He certainly should have known that he needed to preserve such correspondence by the time Plaintiffs served their first set of written discovery on his attorney in January 2018. *E.I. du Pont*, 803 F. Supp. 2d at 496; *see, e.g.*, Pls.' Mot. Ex. C, at 5–7 (RFP Nos. 3, 6); *id.* Ex. D, at 4–5 (First Interrogatory No. 3). Thus, Fields should have saved the Christmas cards he received from Vanguard America in late 2017, 2018, or 2019. *See* Tr. of Mar. 16, 2018 Conf. Call 24 (The Court: "[I]t is incumbent upon everyone to preserve any potentially relevant evidence. . . . I do take everyone's obligation to preserve this evidence very seriously."). Fields admits he threw away two cards. Def. Fields's Br. in Opp'n to Pls.' Mot. 6.

The next question is whether Fields discarded the Christmas cards "with a culpable state of mind." *E.I. du Pont*, 803 F. Supp. 2d at 497. "[A]ny level of fault," whether ordinary

negligence, gross negligence, willfulness, or bad faith, satisfies this element.[11] *Id.* Plaintiffs maintain "[t]here should be no question that Fields destroyed [t]his correspondence in bad faith" because he threw away the Christmas cards "after his duty to preserve arose, with knowledge of the Complaint," Plaintiffs' discovery requests, Pls.' Mot. 14, and his "sworn statements" that "he never communicated with Vanguard America," *id.* at 9, 14, and "he waited two years—until the last day of document discovery—to disclose his spoliation," *id.* at 14. I cannot reach the same conclusion based on the information available to the Court.

Fields's failure to save Vanguard America's cards was negligent, "perhaps even grossly negligent," *Ackerson*, 2018 WL 3097346, at *9, considering that he received them after being arrested for his conduct at the Rally, and possibly many months after Mr. Campbell responded on Fields's behalf to Plaintiffs' discovery requests in April 2018. *Cf. id.* (finding the same where defendant's former employee threw away notes from meetings he had with plaintiff after he received in-house counsel's preservation order, even though he insisted the notes would not have contained relevant information). "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *In re Ethicon*, 299 F.R.D. at 519. At this point, all the Court knows about Vanguard America's cards is that Fields received them sometime after August 2017.

---

[11] "Negligence is a lack of due care, the failure to exercise the level of care expected of a reasonably prudent person acting under like circumstances." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D. W. Va. 2014). "Gross negligence is the same as ordinary negligence, except in degree." *Id.* "In contrast, willfulness and bad faith require 'intentional, purposeful, or deliberate conduct,'" *id.* (quoting *Victor Stanley*, 269 F.R.D. at 530), undertaken with the knowledge that the evidence was relevant to some issue in the litigation, *see Hodge*, 360 F.3d at 450. "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *In re Ethicon*, 299 F.R.D. at 519 (quoting *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011)). Willfulness requires a slightly lesser showing "that the actor intended to destroy the evidence," *Victor Stanley*, 269 F.R.D. at 530, when he "knew the evidence was relevant to some issue" in litigation, *see Hodge*, 360 F.3d at 450.

There's no information about their message or contents, other than Mr. Campbell's suggestion that they probably were not "hate mail." *See* Def. Fields's Br. in Opp'n to Pls.' Mot. 5–6. While it is possible the lost Christmas cards would have supported Plaintiffs' claim that Fields conspired with other alleged Vanguard America members to commit racially motivated violence, *see* Pls.' Mot. 2–3, 10, 13, neither party has presented any evidence suggesting Fields feared their contents would "expose relevant, unfavorable facts" about their alleged association, *Sampson*, 251 F.R.D. at 179. *See Ackerson*, 2018 WL 3097346, at *10–11 (discussing evidence necessary to show relevance and intent). Thus, even assuming spoliation occurred, the Court cannot yet conclude Fields threw away the Christmas cards "for the purpose of depriving [his] adversary of evidence," *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008). Giving an adverse-inference instruction on this record would be inappropriate. *Sampson*, 251 F.R.D. at 181.

## IV. Conclusion

For the foregoing reasons, I find that Fields failed to properly answer interrogatories that Plaintiffs submitted to him under Rule 33 and failed to produce relevant documents as requested under Rule 34. Accordingly, Plaintiffs' motion to compel will be **GRANTED IN PART** and Fields shall have twenty-one (21) days to cure the defects discussed in Section III.A. Plaintiffs' motion will be **DENIED** in all other respects. The parties shall bear their own expenses incurred in litigating the motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(C).

Plaintiffs failed to show that either the ESI Order or the Social Media Order required Fields to provide or permit discovery beyond the materials or information that Plaintiffs properly requested from him under Rule 33 or Rule 34—which did not include requests to disclose any social media credentials or to give Plaintiffs direct access to any online accounts. Accordingly,

their motion for sanctions under Rule 37(b)(2) will be **DENIED** in its entirety. Their request for an adverse-inference instruction related to the Christmas cards from Vanguard America will be **DENIED without prejudice**.

      A separate Order shall enter. The Clerk shall send a copy of this Memorandum Opinion to the parties.

ENTER: June 11, 2020

Joel C. Hoppe
U.S. Magistrate Judge