CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
06/23/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES et al., )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>JASON KESSLER et al., )<br>    Defendants. )<br>) | Civil Action No. 3:17-cv-00072<br><br>MEMORANDUM OPINION & ORDER<br><br><br>By:   Joel C. Hoppe<br>       United States Magistrate Judge |

This matter is before the Court on Plaintiffs' second Motion to Compel Discovery from Defendant National Socialist Movement ("NSM"). ECF No. 674 ("Pls.' Second Mot. to Compel"). Although represented by counsel, ECF Nos. 451, 742, NSM did not file a brief in opposition within the fourteen days allowed by the presiding District Judge's pretrial order, ECF No. 101. NSM's counsel also failed to appear for a telephonic status and discovery conference held on April 27, 2020. ECF No. 721. Accordingly, the Court considers Plaintiffs' motion to be unopposed by Defendant NSM.

The "basic philosophy" driving discovery today is "that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman*, 329 U.S. at 507. "To that end, either party may compel the other to disgorge whatever [relevant] facts he has in his possession." *Id.*; *see Eramo v. Rolling Stone*, LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016); Fed. R. Civ. P. 37(a)(1).

1

Rules 26 through 36 of the Federal Rules of Civil Procedure provide specific devices or procedures—such as interrogatories, document requests, and depositions—for parties to obtain discoverable information. *See Pruitt v. Bank of Am., N.A.*, No. 8:15cv1310, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016); *Middlebrooks v. Sebelius*, Civ. No. 04-2792, 2009 WL 251411, at *3 (D. Md. Aug. 13, 2009). Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). When they do not, Rule 37 provides one mechanism for a court to compel compliance, Fed. R. Civ. P. 37(a), or to sanction an unacceptable failure to follow the rules, *see* Fed. R. Civ. P. 37(b)–(f). Here, Plaintiffs moved to compel on grounds that Defendant NSM failed to produce electronically stored information ("ESI") and failed to permit inspection of electronic devices within its control as Plaintiffs requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv); *see generally* Pls.' Second Mot. to Compel 6–9, 14–30.[1]

Rule 34 allows one party to ask another party "to produce and permit the requesting party or its representative to inspect [or] copy . . . any designated documents or electronically stored information" or "any designated tangible things" within "the responding party's possession, custody, or control,"[2] Fed. R. Civ. P. 34(a)(1)(A)–(B), in order to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). When the responding party is an artificial entity, like

---

[1] Pinpoint citations to documents filed electronically with this Court, except transcripts of depositions and court proceedings, use the "page X of Y" numbers generated by CM/ECF. Pinpoint citations to transcripts use the page number printed in the upper righthand corner of the cited page.

[2] "Control" in this context means "actual possession" or "the legal right to obtain" the requested document, ESI, or tangible thing "on demand." *Terry v. Modern Inv. Co.*, No. 3:04cv85, 2006 WL 2434264, at *6 n.15 (W.D. Va. Aug. 21, 2006) (Moon, J.) (internal quotation marks omitted).

Defendant NSM in this case, that party must rely on its officers, directors, or managing agents to fulfill the party's discovery obligations.[3] *See, e.g.*, Fed. R. Civ. P. 37(b)(2); *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, No. 1:15cv129, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016); *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 759 (E.D. Va. 2014); *In re Honda Am. Motor Co. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996).

\*

Plaintiffs' second motion to compel focuses on non-party Burt Colucci's relationship with Defendant NSM. *See generally* Pls.' Second Mot. to Compel 6–7, 12–14, 17–28. Mr. Colucci joined NSM around 2001. Pls.' Second Mot. to Compel Ex. 5, Tr. of Dep. of B. Colucci 38–39, 49 (Dec. 10, 2019), ECF No. 708-15. His involvement with the group fluctuated over the years until early 2018, when Defendant Jeff Schoep appointed Mr. Colucci to serve as NSM's chief of staff. *See id.* at 47–49, 50–57. Mr. Colucci handled "day-to-day operations" for NSM, which he described as doing "everything" the other leaders "were supposed to be doing," *id.* at 53, including managing emails and overseeing "propaganda," *id.* at 54. He also had authority to set up email accounts through the organization's website, www.NSM88.org. *Id.* at 80–81. Schoep told Mr. Colucci that he "may have to take over the organization at some point if he can't run it anymore." *Id.* at 67. Schoep and Mr. Colucci spoke often about this lawsuit after he became chief of staff. Schoep once asked "how much longer could [they] afford to pay the lawyer," to which Mr. Colucci responded, "maybe a few more months at best" because they

---

[3] The Second Amended Complaint describes NSM as an unincorporated association located in Michigan and led by Defendant Jeff Schoep "as its 'Commander' since 1994." Second Am. Compl. ¶ 38, ECF No. 557. An unincorporated association's capacity to sue or be sued in federal court is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). In Virginia, "[a]ll unincorporated associations or orders may sue and be sued under the name by which they are commonly known and called . . . and judgments and executions against any such association or order shall bind its real and personal property in like manner as if it were incorporated." Va. Code § 8.01-15. A corporation's capacity to sue or be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2).

"were putting too much burden on the members." *Id.* at 69. Their conversation referred to the attorney who represented Defendant NSM in this lawsuit until March 2019. *See id.*

In late 2018, Schoep "sign[ed] the organization over" to James Hart Stern, who was black, in an apparent attempt "to get out of this lawsuit." *Id.* at 68; *see, e.g.*, Pls.' Second Mot. to Compel Ex. 11, Mich. Dep't of Licensing & Reg. Affairs, Certificate of Corr. (Jan. 14, 2019) (stating that the president, treasurer, secretary, and "all Directors" listed in the 2018 Nonprofit Corporation Annual Report "were incorrect" and naming James Stern as NSM's President, Treasurer, and Secretary effective November 13, 2018), ECF No. 674-11. Schoep did not notify "the NSM"—i.e., Mr. Colucci "as chief of staff and anybody that was under [him] in rank"— before he took this action. Tr. of Colucci Dep. 67. At the same time, Schoep "kept on trying to put the [Michigan-based] organization in [Mr. Colucci's] name; then Stern would turn around and put it back in his name with his non-white people that he ha[d] out there in California." *Id.* at 68; *see, e.g.*, Pls.' Second Mot. to Compel Ex. 15, Mich. Dep't of Licensing & Reg. Affairs, Certificate of Corr. (Mar. 6, 2019) (stating that the president, treasurer, and secretary and all directors listed on the Certificate of Correction filed January 14, 2019, were "incorrect and an inaccurate record of corporate action," and naming Burt Colucci as President, Secretary, and Director of NSM effective November 13, 2018), ECF No. 674-15. The "tug-of-war" between Schoep and Stern for control over Defendant NSM continued into the spring of 2019.[4] *See* Tr. of Colucci Dep. 47, 67, 102. Mr. Colucci had exclusive "access to any and all NSM sensitive material" during this time. *See id.* at 96.

---

[4] In April, I barred Mr. Stern from further participating in the case on NSM's behalf because he was not an attorney, he had not hired an attorney to represent NSM despite the Court's admonitions, and "the Court cannot have two people, who apparently hold opposing goals, claiming to act on behalf of the same defendant entity in this litigation." Order of Apr. 4, 2019, at 2, ECF No. 461; *see* Tr. of Mar. 18, 2019 Status Conf. Call 32–33, ECF No. 455.

In March 2019, Schoep announced that he was stepping down as Defendant NSM's long-time leader and that Mr. Colucci "w[ould] be taking over operations as the new Commander effective immediately." Pls.' Second Mot. to Compel Ex. 4, Public Release, Nat'l Socialist Movement, Announcement (Mar. 1, 2019), ECF No. 674-4. Schoep assured supporters that he had "full faith and confidence" in Mr. Colucci as the group's new leader. Pls.' Second Mot. to Compel Ex. 4, at 2. He also told supporters that "NSM as an organization" was "actively in the process of retaining new attorneys" to replace its former counsel. *See id.* On March 19, Edward ReBrook, Esq., formally noted his appearance as counsel of record for Schoep and NSM. ReBrook Notice of Att'y Appearance, ECF No. 451; *see also* Tr. of Mar. 18, 2019 Status Conf. Call 4, 6; Order of Apr. 4, 2019, at 1–2.

On May 22, 2019, Mr. Colucci and fellow NSM Directors Mike Scholar and Acacia Dietz agreed to "immediately" dissolve NSM as a Michigan corporation. Pls.' Second Mot. to Compel Ex. 18, ECF No. 674-18; *see id.* Ex. 15, at 2. The next day, Mr. Stern filed an "amendment" to NSM's 2018 Annual Report naming himself as the organization's registered agent, *id.* Ex. 19, ECF No. 674-19, ostensibly displacing Ms. Dietz, who had substituted herself for Mr. Stern as NSM's registered agent in early March, *see id.* Ex. 15. On May 24, Mr. Colucci filed paperwork to "reincorporate" Defendant NSM in Florida, Tr. of Colucci Dep. 102, under the name "National Socialist Movement Corporation," Pls.' Second Mot. to Compel Ex. 21, ECF No. 674-21. He also announced in a blog post on www.NSM88.org that "the NSM HQ ha[d] relocated" to a "new address" in Kissimmee, Florida. Pls.' Second Mot. to Compel Ex. 29, at 2–3, ECF No. 674-29. Mr. Colucci "reincorporated in Florida because [he] was tired of the tug-of-war that was going on [between Schoep and Stern] up in Michigan." Tr. of Colucci Dep. 102; *see also id.* at 47, 67. The Michigan Department of Licensing and Regulatory Affairs issued a

5

Certificate of Dissolution for NSM on June 19, 2019. *See* Pls.' Second Mot. to Compel Ex. 24, at 4, ECF No. 674-24. Under Michigan law, a dissolved nonprofit "corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred." Mich. Stat. § 450.2834(e). A legal "action brought against the corporation before its dissolution does not abate because of the dissolution." *Id.* § 450.2834(f).

In October 2019, I granted Plaintiffs' first motion to compel discovery from Defendant NSM and ordered Mr. Colucci to sit for a Rule 30(b)(6) deposition by Plaintiffs' counsel "devoted exclusively to Mr. Colucci's and/or Defendant NSM's conduct in pretrial discovery, including their efforts to locate and preserve any documents, information, or materials that are potentially relevant to this lawsuit." Disc. Order of Oct. 28, 2019, at 1–2, ECF No. 582. The Order acknowledged Mr. Colucci's claim that he controls "non-party 'National Socialist Movement Corporation'" based in Florida, but also made clear that the Court considered him to be a director, officer, or managing agent of Defendant NSM, the organization formerly based in Michigan. *See id.* at 1, 2 (citing Fed. R. Civ. P. 30(b)(6)); Tr. of Oct. 18, 2019 Status Conf. 14, 74, ECF No. 581. Thus, Mr. Colucci was "responsible for providing complete and accurate credentials (or consent) to access any social media accounts within [Defendant NSM's] control that may contain discoverable information" in response to Plaintiffs' proper discovery requests. Disc. Order of Oct. 28, 2019, at 2–3 ("The parties and any Rule 30(b)(6) representatives[,] including Burt Colucci for Defendant NSM . . . [,] shall work together to provide information to access any social media account and to provide any Defendant's or its representative's consent to access stored electronic communications and other account information to a social media provider." (emphasis omitted)).

6

Mr. ReBrook defended Mr. Colucci's Rule 30(b)(6) deposition in December 2019. Broadly speaking, Mr. Colucci testified to his leadership role in the Michigan-based NSM from early 2018 through the spring of 2019, explained why he "reincorporated" NSM in Florida, and reiterated that he will not provide or permit any discovery of NSM-related materials in his possession or control without another court order because, in his view, Defendant NSM and NSM in Florida are wholly separate entities. *See generally* Tr. of Colucci Dep. 22–29, 34–37, 46–57, 65–69, 74–77, 81–85, 90–93, 95–126, 163–73, 210–13, 262–72. Mr. ReBrook had not discussed Plaintiffs' discovery requests with Mr. Colucci, *see id.* at 34–35, 163–72, 175–77, 199–218, and at one point he seemed to endorse Mr. Colucci's belief that NSM in Florida was a "separate organization" than Defendant NSM, *id.* at 213. On December 17, Mr. ReBrook informed Plaintiffs' counsel that his "control over [his] client(s), especially Mr. Colucci, [was] quite limited." Email from E. ReBrook to M. Bloch (Dec. 17, 2019, 8:48 AM), ECF No. 712-2. He reiterated that Mr. Colucci "refuses to consent to any discovery" regarding the "now dissolved" Defendant NSM because neither Mr. Colucci nor his "National Socialist Movement Corporation" are parties to this litigation. *Id.* In filings with this Court, however, Mr. ReBrook appeared to concede that Mr. Colucci's Florida-based "NSM Corporation" is merely a continuation of the "now dissolved" Michigan-based NSM that has been a Defendant to this lawsuit since October 2017. *See, e.g.*, ReBrook Reply in Supp. of Mot. to Withdraw 2 (noting counsel's "efforts to persuade Mr. Colucci that [his contrary] argument was not legally plausible and thus the Florida NSM would be required to participate and cooperate with discovery"), ECF No. 712; *id.* Ex. 1, Email from A. Dietz to B. Colucci (Apr. 17, 2020, 12:28 AM) ("Given that by your own admission the Florida NSM is a reincorporation of the Michigan NSM, the judge will most likely hold that the Florida nonprofit NSM [i]s the same NSM named in this current

litigation. Therefore you/NSM will be required to cooperate/participate in this discovery process."), ECF No. 712-1.

Plaintiffs point out that Defendant "NSM's operations continued essentially just as before" once the Michigan-based organization closed its doors, including that the Florida-based NSM is led by Mr. Colucci and two other men who have "all been NSM members and officers" for years, promotes the same White Nationalist ideas that have defined NSM since it was founded in 1974, and uses the same website, featuring essentially the same content, that Defendant NSM used for twenty years. Pls.' Second Mot. to Compel 13–14. Mr. Colucci's business cards, which he made one week before Plaintiffs' counsel deposed him in December 2019, even list "the chiefofstaff@nsm88.org email address that [he] had used prior to taking over as Commander" in March of that year. *Id.* at 14 n.7 (citing Tr. of Colucci Dep. 247–48). Plaintiffs mention this evidence in the context of discussing the "mere continuation" exception to Virginia's rule that generally a buying successor does not assume the corporate liabilities of the selling predecessor, which exists to "ensure that entities cannot escape liability by reincorporating under a new name." *See id.* at 25–27. Whether that exception might come into play at trial "is not an issue currently before the Court, but [Defendant NSM's] obligation to comply with the discovery rules is." *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2013 WL 608742, at *6 (D. Minn. Feb. 19, 2013). In October 2019, the Court concluded that Mr. Colucci is Defendant NSM's director, officer, or managing agent under Rule 30(b)(6). Disc. Order of Oct. 28, 2019, at 2. Mr. Colucci's testimony and other statements confirm he "can be expected to identify" with Defendant NSM's interests in the litigation "as opposed to the interests of the adverse party," which is the "paramount test" in determining whether an individual is a corporate party's "managing agent," *In re Honda Am. Motor Corp.*, 168 F.R.D. at 540. *See, e.g.*, Tr. of

8

Colucci Dep. 67; Pls.' Second Mot. to Compel Ex 1, at 2, ECF No. 674-1; *id.* Ex. 4, at 2–3; *id.* Ex. 17, at 2, Burt Colucci, VK.com (Mar. 7, 2019, 3:15 AM), ECF No. 674-17. And if a dissolved Michigan "corporation may still be a party in a civil lawsuit, which [Defendant NSM] has not disputed here, then it has a duty under the Federal Rules of Civil Procedure to respond to discovery that is properly served on it." *Burris*, 2013 WL 608742, at *6. What Mr. Colucci and NSM "cannot do, free of consequences, is tell Plaintiffs that they are just out of luck." *Id.*

\*\*

Each Defendant in this case was supposed to "produce all discoverable material," including any relevant ESI collected from that Defendant's designated electronic devices and social-media accounts, to Plaintiffs' counsel on or before February 5, 2020. Order of Nov. 27, 2019, at 1, ECF No. 597; *see also* Disc. Order of Oct. 28, 2019, at 2–3; Order of Mar. 4, 2019, at 3, ECF No. 440; Stip. & Order of Nov. 19, 2018, at 2, 8–9, 16, ECF No. 383; Order of Nov. 13, 2018, at 1–2, ECF No. 379. Defendant NSM missed that deadline. Accordingly, Plaintiffs moved to compel NSM and Mr. Colucci to:

1. Produce all electronic devices within Mr. Colucci's possession to the Third-Party Discovery Vendor ("the Vendor") for imaging and collection, including but not limited to all of Mr. Colucci's computers and phones;

2. Disclose all email and social-media account and credentials within Mr. Colucci's possession (including but not limited to the credentials for the accounts in Appendix A) to the Vendor for imaging and collection; and

3. Conduct an investigation into all potentially relevant custodians, including but not limited to the individuals known to be currently or formerly associated with NSM who are listed in Appendix B. Such investigation must include a good-faith effort to collect all

9

> electronic devices and social media credentials that may contain responsive materials
> from all such individuals, including but not limited to the credentials for the accounts
> listed in Appendix C, and producing all such devices and credentials to the Vendor.

Pls.' Second Mot. to Compel 30. Plaintiffs also seek a court order directing the Vendor to produce immediately to Plaintiffs' counsel, "without opportunity for [Mr.] Colucci's review," every document collected from his imaged "devices and accounts that hits on a search term" the parties agree upon. *See id.*

\*\*\*

The Court has already held Plaintiffs are entitled to the requested material because it is directly relevant to their surviving claims and proportional to the needs of the case, considering the parties' relative access to such information, the parties' resources, the importance of the discovery in resolving the issues, and most Defendants' (including Defendant NSM) apparent inability to locate and produce responsive documents and electronic information. *See generally Sines v. Kessler*, No. 3:17cv72, 2019 WL 3767475, at \*13–14 (W.D. Va. Aug. 9, 2019); Order of Nov. 13, 2018, at 1–2 (granting Plaintiffs' motion to compel inspection and imaging of Defendant NSM's and other Defendants' online accounts and electronic devices); Order Stip. & Order of Nov. 19, 2018, at 2, 8–9, 16 (identified electronic devices, social media credentials); Order of Mar. 4, 2019, at 3 (same); Order of Nov. 27, 2019, at 1 (all requested discovery). The Court also has ordered Mr. Colucci, acting as Defendant NSM's Rule 30(b)(6) representative, to provide or permit discovery "of the same material in [his] control," *Sines*, 2019 WL 3767475, at \*13 (quoting *Lee v. Max Int'l*, 638 F.3d 1318, 1321 (10th Cir. 2011) (Gorsuch, J.)), by a date certain, Disc. Order of Oct. 28, 2019, at 2–3 (identified electronic devices, last-known social media credentials, consent); Order of Nov. 27, 2019, at 1.

10

Yet, Mr. Colucci "ignore[d] outright" the Court's first order directing him to cooperate with Plaintiffs' counsel, *Sines*, 2019 WL 3767475, at *14 (quoting *Mut. Fed. Savs. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989)), and insisted that he will not comply unless the Court directs him to do so for a second time. Clearly, Mr. Colucci's "track-record of failing to fulfil his discovery obligations in a timely manner . . . makes him [especially] ill-suited to participate in a discovery process that is predicated upon one's prompt and good faith compliance with discovery obligations." Order of Jan. 22, 2020, at 3, ECF No. 638; *see also Sines*, 2019 WL 3767475, at *2, *14–15. He leaves the Court no choice but to impose yet another special discovery procedure that will move this case forward to trial. *See Sines*, 2019 WL 3767475, at *13–14; Mem. Op. & Order of May 27, 2020, at 6–7, ECF No. 741; Order of May 18, 2020, at 3, ECF No. 728; Order of Jan. 22, 2020, at 2.

Accordingly, it is hereby **ORDERED** that:

1. Plaintiffs' second Motion to Compel Discovery from Defendant National Socialist Movement, ECF No. 674, is **GRANTED in its entirety**. Plaintiffs are directed to file a petition setting out their reasonable expenses, including attorney's fees, incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A).

2. On or before **June 24, 2020**, Plaintiffs' counsel shall provide Defendant NSM's attorney of record and Burt Colucci, in his capacity as Defendant NSM's Rule 30(b)(6) representative, with a blank copy of the Certification form attached as Exhibit A to the Stipulation & Order for the Imaging, Preservation, and Production of Documents, ECF No. 383, at 16. Plaintiffs' counsel may modify the Certification form's text or fields to request specific information consistent with this Memorandum Opinion & Order.

3. On or before **June 29, 2020**, Mr. Colucci shall complete and return to the Vendor and Plaintiffs' counsel a Certification form that:

   a. identifies *all* Social Media Accounts, as defined in ¶ 2(xi) of the Stipulation & Order and regardless of whether Mr. Colucci has already disclosed them, within Mr. Colucci's possession that *may* contain potentially relevant documents or files, including ESI such as video or audio recordings, photographs or digital images, and private or public messages, posts, and comments;

   b. lists the complete and accurate last known credentials that Mr. Colucci used to access *each* identified Social Media Account (including but not limited to the credentials for the accounts in Appendix A, ECF No. 708-14, at 2), regardless of whether Mr. Colucci currently has access to the platform or whether an account is active, inactive, or inaccessible;

   c. for any Social Media Account for which Mr. Colucci cannot remember or otherwise access such credentials, contains a statement describing all the steps Mr. Colucci took to recover the information and stating why he was not successful;

   d. identifies *all* the Electronic Devices, as defined in ¶ 2(vi) of the Stipulation & Order, Mr. Colucci has possessed from January 1, 2017, to present that *may* contain potentially relevant documents, files, or ESI; *and*

   e. is signed by Mr. Colucci under penalty of perjury certifying that the information contained therein is true, correct, and complete to the best of his knowledge after he made a reasonable effort to search for and produce all requested information.

4. On or before **July 1, 2020**, Burt Colucci shall send to the Vendor *all* identified Electronic Devices that he identifies on the Certification form. Mr. Colucci and/or Defendant NSM's attorney of record shall promptly provide any tracking information to the Vendor and to Plaintiffs' counsel.

5. On or before **July 3, 2020**, Defendant NSM's attorney of record shall give the Vendor and Plaintiffs' counsel a complete list of all potentially relevant custodians (including but not limited to the individuals known to be currently or formerly associated with Defendant NSM who are listed in Appendix B, ECF No. 708-14, at 3) as well as the last known credentials to access any social media accounts that may contain responsive materials from all such individuals, including but not limited to the credentials for the accounts listed in Appendix C, ECF No. 708-14, at 4–5.

6. On or before **July 10, 2020**, the Vendor shall provide directly to Plaintiffs' counsel any and all ESI collected from Defendant NSM's social media accounts and devices that contain the agreed-upon search terms within the applicable date range. *See* Mem. Op. & Order of May 27, 2020, at 6–7; Order of May 18, 2020, at 3; Order of Jan. 22, 2020, at 2.

**Finally, Defendant NSM and Burt Colucci are hereby warned that Mr. Colucci's failure to fully comply with this Order may result in the Court imposing sanctions against Defendant NSM under Rule 37(b)(2) of the Federal Rules of Civil Procedure and/or directing Mr. Colucci to show cause why he should not be held in contempt of court.**

**IT IS SO ORDERED.**

The Clerk shall send a copy of this Order to the parties.

ENTER: June 23, 2020

*/s/ Joel C. Hoppe*

                                                          Joel C. Hoppe
                                                          U.S. Magistrate Judge