Sines, et al. v. Kessler, et al. - 6/25/2020

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF VIRGINIA
2               CHARLOTTESVILLE DIVISION

3    _____

4    ELIZABETH SINES, et al.,

5         Plaintiffs,              CIVIL ACTION 3:17-CV-00072

6    vs.

7

8    JASON KESSLER, et al.,

9
          Defendants.
10   _____

11

12        TRANSCRIPT OF TELEPHONIC MOTION HEARING

13   HONORABLE MAGISTRATE JUDGE JOEL C. HOPPE PRESIDING

14            JUNE 25, 2020, 1:14 P.M.

15   _____

16

17

18

19       Court Reporter: JoRita B. Meyer, RPR, RMR, CRR

20            210 Franklin Road, S.W., Room 540

21               Roanoke, Virginia 24011

22               (540)857-5100 Ext. 5133

23    Proceedings recorded by electronic recording; transcript

24   produced by computer.

25

2

```
 1                    A P P E A R A N C E S

 2              On behalf of Plaintiffs Elizabeth Sines, Seth

 3    Wispelwey, Marissa Blair, Tyler Magill, April Muniz, Hannah

 4    Pearce, Marcus Martin, John Doe, Natalie Romero, and Chelsea

 5    Alvarado:

 6                    JOSHUA MICHAEL SIEGEL, ESQUIRE
                      Cooley LLP
 7                    1299 Pennsylvania Avenue, NW, Suite 700
                      Washington, DC 20004
 8                    202-842-7800
                      jsiegel@cooley.com
 9

10                    MICHAEL LOW BLOCH, ESQUIRE
                      Kaplan Hecker & Fink LLP
11                    350 Fifth Avenue, Suite 7110
                      New York, NY 10118
12                    212-763-0883
                      mbloch@kaplanhecker.com
13

14              On behalf of James Fields:

15                    DENISE Y. LUNSFORD, ESQUIRE
                      Denise Y. Lunsford, LLC
16                    414 E. Market Street, Suite C
                      Charlottesville, Virginia 22902
17                    434-328-8798

18                    JOHN IRVING HILL, ESQUIRE
                      PoindexterHill, P.C.
19                    404 S. Wayne Ave.
                      P.O. Box 1067
20                    Waynesboro, VA 22980
                      540-943-1118
21

22              Also Present:

23                    JONATHAN KENNETH ZWERLING, ESQUIRE

24

25
```

3

1    (Proceedings commenced, 1:14 p.m.)

2                (Prior proceedings held, not recorded; hearing

3    continued as follows:)

4                MS. LUNSFORD:  ...would add that in one of the

5    documents that I filed, there was an agreed motion and order

6    for discovery entered by Judge Downer in the Charlottesville

7    General District Court.  I had wanted to file that, Judge,

8    with the motion to reconsider, but I didn't have a copy of it

9    as entered by the judge and had to obtain that from the

10   court.  It is under seal, as the Court can see, and so it was

11   not available online; and I had some difficulty obtaining it,

12   the signed copy of it.

13               It does provide on -- in paragraph number five, on

14   the first page, that we agree not to allow additional

15   materials provided by the Commonwealth to leave our

16   possession or control.

17               And on the second page, where the judge has signed

18   it, it indicates that the judge is ordering that the

19   discovery in this case be handled in the manner described in

20   the agreed motion and order regarding discovery.

21               So we're actually prohibited by this order -- which

22   has never been amended, has never been withdrawn, has never

23   been addressed by the Circuit Court -- prohibited from

24   providing that material; so anything that came from the

25   Commonwealth.

1          And we would request that the discovery that we

2     received from the Commonwealth be treated the same as the

3     federal material that we received from the U.S. Attorney's

4     Office because of this order, and also suggest that another

5     source of that material, which is more convenient, less

6     burdensome, and less expensive, as set forth in Rule 26, is

7     the Commonwealth Attorney himself.  They have access to the

8     material and they don't have to cull it for privileged

9     information or work-product, as we would have to do, which

10    would take an extensive amount of time.

11          Moving on, Your Honor -- I'm sorry.  Go ahead.

12          THE COURT:  Well, I think that argument that they

13    should get it from the Commonwealth Attorney, I don't know

14    that I've seen that argument before in either your motion

15    that was filed back in February or even your motion to

16    reconsider.

17          But what materials do you think are covered by this

18    General District Court order?

19          MS. LUNSFORD:  So what the order provides is, under

20    state Rule 3A:11 and 7C:5, that were in existence at that

21    time -- I think the rules change in July -- is that

22    correct? -- but they haven't changed yet.  Basically what we

23    are entitled to under those rules is exculpatory evidence,

24    basically *Brady* and *Giglio*, if any such evidence exists;

25    statements of our clients.  Statements of witnesses we're not

1    entitled to.  We're not entitled to police reports.  We're

2    entitled to certificates of analysis.  So there were some DNA

3    certificates in this case; we are entitled to that.

4         The bulk of information that is provided by the

5    Commonwealth around here, pursuant to open files, to include

6    witness statements, police reports, videos of the scene,

7    anything -- any photographs taken of the car, information

8    that is not specifically exculpatory, or the statement of my

9    client to law enforcement, not a statement made to someone

10   else, but to law enforcement, anything else they're not

11   required to provide to us, and so that would be protected

12   under this order.  Basically, it's anything that we couldn't

13   get pursuant to Rule 3A:11 or 7C:5, we are not allowed to

14   leave our possession.

15        The Commonwealth -- and the order -- or, I'm sorry,

16   the open file agreement that the Court has previously seen,

17   which the Commonwealth waived privilege on, is attached to

18   this order.  One of the documents I filed this afternoon was

19   an e-mail exchange between Mr. Platania as Commonwealth

20   Attorney and Mr. Zwerling, and he agreed that it does not

21   nullify the court's -- (inaudible).

22        THE COURT:  Ms. Lunsford, you're -- Ms. Lunsford, I

23   can't hear you.  You're breaking up.

24        MS. LUNSFORD:  (Inaudible).

25        THE COURT:  I still can't.  I still can't hear you.

1          Can the deputy clerk hear?  Is that my phone or is

2    it --

3          THE CLERK:  Your Honor, this is Karen, and she's

4    staticy on my end as well.

5          THE COURT:  Okay.

6          MS. LUNSFORD:  Is this better?  I picked up the

7    handset.

8          THE COURT:  No, it's still pretty -- still pretty

9    staticy.

10         MS. LUNSFORD:  I apologize, Judge.  I don't hear any

11   static on my end at this point.

12         THE COURT:  Okay.  I can hear you now.

13         MS. LUNSFORD:  Okay.  The e-mail exchange between

14   Mr. Zwerling and Mr. Platania indicates that obviously the

15   Commonwealth cannot agree away the Court's order that was

16   entered in late October of 2017.

17         THE COURT:  A number of questions.  The order refers

18   to "this case."  What is your view of "this case"?  I mean,

19   this is a General District Court order.  Does it just apply

20   to the General District Court preliminary hearing and so

21   forth in that case, or is it your contention that this order

22   governs discovery in the Circuit Court as well?

23         MS. LUNSFORD:  It's my contention that the term

24   "this case" and, as a result, "this order," pertains to that

25   case until it is concluded at some point in the future.

1            And to let the Court know, I am still counsel for

2    Mr. Fields.  I've done a notice of appeal, and our petition

3    for appeal to the Court of Appeals of Virginia is not yet due

4    but I expect will be due before the end of the summer.

5            And traditionally around here, in the City of

6    Charlottesville and Albemarle County, orders of the General

7    District Court follow through the Circuit Court unless and

8    until amended or vacated by the Circuit Court; and that would

9    include things like appointment of counsel.

10           There was never a new appointment of counsel in

11   Circuit Court for either Mr. Hill or me.  We never moved to

12   withdraw.  And so because of the General District Court's

13   orders appointing us, we continued.

14           The same applies for experts that were appointed in

15   the General District Court and who followed the case through

16   the end.  There were new orders for payment of one of those

17   experts, but never a new order appointing the expert.

18           THE COURT:  All right.  And so any subsequent

19   orders -- your view is any subsequent orders by the Circuit

20   Court that might have addressed, might have addressed

21   discovery -- were there any, or your contention is there

22   weren't any?

23           MS. LUNSFORD:  I have -- my recollection is there

24   were not.  My recollection is not the best at this point.

25   And there were so many orders and going back and forth that I

1    did a search of my computer records, my pleadings file, and

2    then also asked the clerk to see if they were aware of

3    anything else, and couldn't find anything else.  So I do not

4    believe there's an additional order with regard to discovery.

5            And I will tell the Court -- I mean, the Court

6    addressed the order pertaining to exhibits from Judge Moore

7    in the Charlottesville Circuit Court, and I understand the

8    Court's ruling and obviously accept that, but I will say that

9    the judge never intended that the attorneys in this case

10   release exhibits, either.  And I think the spirit, if not, I

11   would argue, the letter of that order, indicates that the

12   exhibits were not to be released by anyone, but the --

13           THE COURT:  Well, then the order is, but not that if

14   you were given an exhibit from the Court that you could then

15   release; it was -- I think it was clear, in my opinion, that

16   if these were materials that you had and other -- that you

17   had from a source other than receiving them from the Court as

18   an exhibit, that they weren't covered by that, that order.

19           MS. LUNSFORD:  I understand that that's the Court's

20   reading of the order.  And I don't mean any disrespect when I

21   say that, having been in front of Judge Moore on motions and

22   hearings with regard to this case for over a year and a half,

23   almost two years, that he would not have hesitated to hold me

24   in contempt had I released an exhibit that was presented at

25   the trial even if I said, "But, Judge, I got it from another

1    source."

2           The Commonwealth is the one that released those

3    exhibits, and the Court ordered that we provide them if we

4    got them from another source.  So obviously, you know,

5    there's a bit of a conflict, but I'll take that up with Judge

6    Moore.

7           But anyway, having said that --

8           THE COURT:  Ms. Lunsford, so if this was -- if this

9    order from the General District Court that was entered three

10   years ago, this was always governing your conduct in handling

11   discovery in this case, and you filed a motion to quash in

12   February, over four months ago, why is this just being filed?

13   I mean, it was filed 21 minutes before this hearing.

14          MS. LUNSFORD:  I appreciate the Court's question,

15   and I apologize.  The only explanation -- and it's not an

16   excuse -- that I can offer is, as I indicated, I thought

17   there was an order, I had looked through my file, I expected

18   that if there was an order pertaining to discovery, it would

19   be in my pleadings file.  It was not in my pleadings file.  I

20   found it when I was -- or I didn't find it, the endorsed

21   order.  I found a draft of the order in an e-mail from Nina

22   Anthony, who is an Assistant Commonwealth Attorney for the

23   City of Charlottesville and worked on this case.  I found it

24   in an e-mail attachment while I was preparing the motion to

25   reconsider, and then started trying to find out if it had, in

1    fact, been entered.

2           Mr. Hill and I, and, frankly, the Commonwealth,

3    treated all the documents, unless we entered them as exhibits

4    at trial or submitted them in our case to experts or had the

5    experts review them, treated them consistent with the terms

6    of this order.

7           We had law students who acted as interns on this

8    case, who the Court required to sign confidentiality

9    agreements with regard not only to the documents but anything

10   they touched with respect to this case.

11          So, you know, we were highly sensitive during the

12   course of the trial, and even until today, about what we

13   released in this case.

14          I did not have a copy of the order, and that's the

15   only explanation that I can give to this Court with respect

16   to why I didn't attach it originally.

17          By the same token, you know, thinking about

18   Mr. Platania, he had obviously forgotten about it, too, or I

19   don't think that he would have waived the provisions of the

20   open file agreement, which is attached to this order.

21          THE COURT:  Did you receive -- every bit of

22   discovery received from the Commonwealth in your

23   representation of Mr. Fields, did you receive it while the

24   case was in General District Court, or did you receive some

25   after it moved to Circuit Court?  And do you think that makes

1  a difference?  I mean, do you think that, regardless of the

2  timing of the disclosure, that it's all covered by the

3  General District Court order?

4          MS. LUNSFORD:  To answer your second question, yes,

5  I think, regardless of the timing, it's covered by the order.

6  And this may be, you know, a matter of practice around here

7  and a matter of understanding, but our view, as I said, even

8  with respect to appointments and other orders, is that they

9  followed to Circuit Court unless they were amended or

10  modified in some way.

11          To answer your first question about did we receive

12  everything from the Commonwealth prior to the time that it

13  left General District Court, we did not.  We received

14  information from the Commonwealth, pursuant to their open

15  file and discovery policies, you know, I would guess as late

16  as -- trial was in November 2018.  You know, I -- I don't

17  know exactly when we received stuff, but I wouldn't be

18  surprised to go back and discover that we received stuff in

19  November of 2018.  It was constant.

20          THE COURT:  All right.  I want to wrap up the issue

21  of the General District Court's order here, everything you

22  have to say on that, and if Mr. Hill has anything else to

23  add, and then I'd like to hear from plaintiffs on that issue

24  before we move on to anything else.

25          MS. LUNSFORD:  Other than that it is more

1    convenient, less burdensome, and less expensive for the

2    plaintiffs to receive it from the Commonwealth.  And they

3    were -- they did discuss it with the Commonwealth.  I'm not

4    sure why the Commonwealth elected not to provide it and,

5    rather, directed that it be received from us.  The

6    Commonwealth, as I said, does not have the issue of privilege

7    with respect to Mr. Fields that would require us to go

8    through and create the privilege log.  They can produce

9    everything as they see fit.  But, frankly, I think they are

10   still bound by the terms of this order as well.

11           THE COURT:  All right.

12           MS. LUNSFORD:  Actually, they are not.  I'm sorry.

13   Paragraph five talks about counsel for the defendant.

14           MR. ZWERLING:  Judge, this is John Zwerling.  Could

15   I add one thing to this?

16           THE COURT:  Well, Mr. Zwerling, you haven't -- are

17   you -- have you made an appearance in the case?

18           MR. ZWERLING:  Well, Ms. Lunsford is not a party.

19           THE COURT:  Well, she's a movant.

20           MR. ZWERLING:  Let me speak to her and see if she

21   wants to say it.  Okay?

22           THE COURT:  Okay.  I can hear somebody else's

23   conversation in the background.  So if everybody else can put

24   their phones on mute, perhaps.

25           MS. LUNSFORD:  Your Honor, I would just say, in

1    addition to what I've already argued, the Commonwealth must

2    have contemplated that we continued to be bound by this

3    agreement, because they did continue to provide us discovery

4    throughout the course of this, this case, up through and

5    including at least through trial, if not through sentencing.

6    And it was actually -- as I said, I received this order, the

7    draft of the order, from the Commonwealth.  It was -- it was

8    not a document that I created.  It was something that they

9    had created and used in other cases and they were adamant

10   that we abide by.  And as the Court can see in number five,

11   it applies to the defendant, counsel for the defendant.  It

12   doesn't apply to the Commonwealth.

13        THE COURT:  All right.  Mr. Hill, is there anything

14   that you wanted to add to that argument?

15        MR. HILL:  No, Judge.

16        I will, however, say one thing about our -- I guess

17   our memory of that order and its existence, in that about two

18   weeks ago I supplied two documents to Mr. Siegel in response

19   to the subpoena that clearly, now that we look at it, were in

20   violation of that order.  And so, you know, when we

21   discussed -- when Denise and I discussed, you know, what we

22   could send to Mr. Siegel in an attempt to comply with the

23   Court order, we talked about items we received directly from

24   the Commonwealth, and only from the Commonwealth.  We sent

25   two items that belonged in that category.  But now, in

1    retrospect, in looking at this order, it seems that those

2    items that we provided were probably protected by the General

3    District Court order.

4            So I'm sorry that I didn't remember it.  I know that

5    Denise is accurate in that there were a lot of orders entered

6    in this case, and I apologize that we didn't find it sooner.

7            THE COURT:  All right.  All right.

8            Well, Mr. Siegel or Mr. Bloch, I know that

9    neither -- the time to respond to the motion to reconsider or

10   the motion to stay hasn't been passed, and y'all may not have

11   even had a chance to read what was just filed shortly before

12   the hearing, so I certainly want to make sure that y'all have

13   time to address these issues.  And not just here today, but

14   if you need time to research them and consider them more

15   fully or to confer with the movants or the Commonwealth, you

16   know, I'm not trying to short-circuit that.  I do think that

17   it was important to try and -- try and do this hearing on the

18   motion to reconsider, as it was written, and to address the

19   issues raised in the motion, to do that quickly so this case

20   could continue to move, move forward, on this issue.

21           But what do either one of y'all have to say about

22   the arguments presented today?

23           MR. SIEGEL:  Your Honor, this is Joshua Siegel.  And

24   thank you.  I do have some thoughts and I think some things

25   that are important to keep in mind.

1          I think it's important to view the requested relief

2    and the scope of the legal standard that applies to the

3    motion.  So we're here on a motion to reconsider.  And the

4    law is very clear that those motions are strongly disfavored.

5    They are to not be used as a vehicle to relitigate issues,

6    give parties a chance to craft new or better arguments, to

7    present facts that were previously available or already

8    existed, or allow them a second bite at the apple.  The law

9    is very clear in this court and the Fourth Circuit on that.

10         And as it relates to the timing, the timeline of

11   events that got us here today is, Ms. Hill -- I'm sorry,

12   Mr. Hill and Ms. Lunsford have a client that is a party in

13   this case and in, I think, three years of litigation, have

14   produced zero documents to us.  We've issued a subpoena to

15   Mr. Hill and Ms. Lunsford in January.  They filed their

16   motion to quash in February.  We then briefed it and we filed

17   our opposition in March.  They chose not to file a reply.  We

18   filed a supplemental brief in May, advising the Court of

19   precisely this issue: that the Commonwealth Attorney had

20   agreed to waive the open file agreement.  Mr. Hill and

21   Ms. Lunsford chose not to respond.

22         On June 12, the Court issued the order, in large

23   part denying the motions to quash.

24         On June 18, they filed a motion to reconsider.

25         This order is two and a half years old.  Just

1    looking at it -- like you said, Your Honor, it was filed a

2    few minutes before the hearing.  I'm looking at it while

3    we're talking.  This order was not raised in the motion to

4    quash.  It wasn't raised in the motion to reconsider.  I

5    spoke with Mr. Hill on the phone a week ago about the

6    document production.  He didn't raise this order.  I spoke

7    with Mr. Hill on the phone just this week about this

8    teleconference; he didn't raise it.  Mr. Hill sent me a

9    letter yesterday about his document production and didn't

10   raise it.

11          Now they file it 20 minutes before the hearing.

12   There's no reason this couldn't have been raised in January

13   or in February, when Mr. Hill and Ms. Lunsford filed their

14   motions to quash.

15          And I think Ms. Lunsford said that she thought it

16   existed, she just couldn't find it.  To me, that does not

17   meet the standard of the disfavored and

18   only-granted-sparingly remedy of a motion to reconsider.

19          As it relates to the order -- again, I'm just

20   looking at it right now, Your Honor, so apologies if this is

21   going to be incomplete, but I think a couple things to note.

22   I think the Court was exactly right when you said this is a

23   General District Court order.  I think it's a fundamental

24   principle that one cannot control the treatment of evidence

25   in a different court.  Again, that issue is being raised for

1  the first time right now, so we haven't had a chance to

2  address that.

3        Even if the order did apply, it appears -- again

4  just reading what it says in paragraph five, it simply

5  memorializes the open file agreement that the Commonwealth

6  Attorney has already waived; and he waived that months ago.

7        On top of that, on its face, it doesn't apply to

8  documents that are in the scope of Rule 3A:11(b) or Rule

9  7C:5.  And I think Ms. Lunsford spoke a bit about that.

10        And we addressed this also in our opposition to the

11  motion to quash, laying out the categories of documents.  For

12  example, written statements from Mr. Fields, any confessions

13  he made, written reports of autopsies, expert reports,

14  fingerprint analyses, all those things are acknowledged in

15  the scope of this order.  So there is a large volume of

16  material that, even if this order did apply, are encumbered

17  by it.

18        And on top of that, they said a few minutes ago that

19  those rules don't apply to the police reports.  They've

20  already provided us with police reports.

21        So, Your Honor, I don't think that this order should

22  be used as an eleventh hour -- frankly, we're well past the

23  eleventh hour now.  It shouldn't be used in regards to these

24  documents, that we could have dealt with this order in

25  January, but we are three weeks from the deposition deadline.

1    We're a few weeks away from the end of third-party discovery

2    after years of discovery.  And I know Your Honor is very

3    familiar with the difficulties we've had getting discovery

4    from virtually any of the defendants and now, you know,

5    virtually any of these third parties.

6          And so our view is that the Court should not

7    consider this, the newly filed order.  However, I will say

8    that if the Court is inclined, it seems to me that there's a

9    simple solution if the Court does decide that this order

10   applies in that this order appears to be an agreed order

11   between Ms. Hill -- I'm sorry, Ms. Lunsford and the

12   Commonwealth's Attorney's Office.

13         The Commonwealth's Attorney's Office has already

14   agreed to waive the open file agreement.  Ms. Lunsford is

15   already under an order from this Court to produce those

16   documents.  They asked for a very short extension of ten days

17   in the motion to stay.  And if Your Honor wants to give any

18   weight to this order at all, I think, at most, it would be

19   they have a ten-day extension and in that time it is

20   incumbent on Ms. Lunsford to submit an agreed order modifying

21   this order, an agreed order, because the Commonwealth

22   Attorney has already agreed to it.  She already has a court

23   order.  She hasn't produced these documents.  And, frankly,

24   at this point, Your Honor, I think the burden is on them.  We

25   believe we could have dealt this issue six or seven months

1   ago, and it is being raised for the very first time minutes

2   before this hearing.

3          THE COURT:  It's interesting.  As Ms. Lunsford

4   acknowledges, this order is really for the -- it's drafted by

5   the Commonwealth.  It's -- sounds like it's for the

6   Commonwealth's benefit.  It's not -- you know, something that

7   Ms. Lunsford notes Mr. Fields agreed to, but it wasn't

8   necessarily what he would have done from his choosing.  It's

9   really at the Commonwealth's instigation, and now the

10  Commonwealth hasn't waived those protections, but it's not

11  just an agreement between the parties.  It's essentially a

12  protective order of another court regarding those documents.

13         MS. LUNSFORD:  Could I speak to that briefly, Your

14  Honor?

15         THE COURT:  Sure.

16         MS. LUNSFORD:  I mean, the order on its face talks

17  about the agreement extending to Mr. Fields, who we could not

18  provide copies of materials that we got from the Commonwealth

19  even to our client, and it was not -- in paragraph seven, we

20  had to agree that it would not be made part of his file, so

21  that if we were relieved as counsel in some manner, we could

22  not transmit it to new counsel.  And while that's incredibly

23  unusual, it was something that the Commonwealth asked for in

24  order to provide us with discovery, and so we were willing to

25  enter into it to get the discovery, number one; but secondly,

1   Charlottesville is where this trial was going to take place,

2   ultimately did take place.  It's a very small community.

3   Defense was concerned that information from the file, the

4   Commonwealth's open file, if that got out in any way prior to

5   trial and we did not get a change of venue, which we did not,

6   we would be extremely hampered, even more than we already

7   were, in picking a jury.

8           So while it was provided to us by the Commonwealth,

9   and ordered us to make disclosure, it was something that we

10  wanted both to get the additional discovery and also to sort

11  of use as a shield in the event other people, our client,

12  experts, people that we didn't feel needed access to

13  information, and this notwithstanding, but that we -- so that

14  we could get the information in a manner that made the

15  Commonwealth comfortable, but also that we would not be

16  required to produce any information, we could require

17  confidentiality agreements from people that don't ordinarily

18  sign such things, and have access to all that information.

19  Otherwise --

20          MR. SIEGEL:  Your Honor --

21          MS. LUNSFORD:  Go ahead.  Sorry, Josh.

22          MR. SIEGEL:  Your Honor, this is Mr. Siegel, if I

23  could respond to that.

24          THE COURT:  Sure.

25          MR. SIEGEL:  So, again, Your Honor, we're just

1   rehashing old ground here.  These are more, frankly,

2   roadblocks that is not entitling us to discovery here,

3   because what I just heard is it was important that the

4   Commonwealth's Attorney -- it is important to the

5   Commonwealth's Attorney that Ms. Lunsford and Mr. Hill don't

6   give this to Mr. Fields.

7           We're not asking that it be given to Mr. Fields.

8   That's a nonissue here.

9           I also heard Ms. Lunsford say that, well, the

10  Commonwealth's Attorney wanted to be very careful about what

11  happened to this, what happened to this evidence.

12          The Commonwealth's Attorney has already agreed they

13  can disclose it.  These are not reasons not to produce it.

14  These are artificial reasons to keep it away and got give us

15  these documents that we've been trying to get for years from

16  both their client, and then we've been litigating this for

17  six, almost seven, months on this one issue and we still

18  don't have documents.

19          Even the documents we do have -- I think they

20  produced two documents to us out of the categories that they

21  admit in their briefs are on their face not privileged.  They

22  say they have a whole bunch of e-mails from third parties,

23  that were unsolicited e-mails from third parties about

24  Fields, about the car attack, about the rally.  We don't have

25  any of those.  They say they got records about Mr. Fields

1  from the military service.  We don't have those.  The stuff

2  that they say they will give us, they're not giving us, and

3  the stuff that they don't want to give us, they're inventing

4  these new arguments that have already been litigated.  The

5  Commonwealth Attorney has already agreed none of the

6  arguments make any difference and nothing changes the order,

7  even if it was raised in the first instance on the motion to

8  quash, which it wasn't.

9          MR. HILL:  Can I ask a question of Mr. Siegel,

10  Judge?

11          THE COURT:  Who is that?

12          MR. HILL:  Why haven't you received these documents

13  from the Commonwealth Attorney?

14          THE COURT:  Who's speaking?  Is this Mr. Hill?

15          MR. HILL:  Yeah.

16          THE COURT:  Yeah, for the -- because this is being

17  recorded, I do need you to --

18          MR. HILL:  I'm sorry.  Yes.

19          THE COURT:  I do need you to identify yourself.

20          MR. HILL:  This is Mr. Hill.  I'm just curious --

21          THE COURT:  Mr. Hill, hold on.  I think that's a

22  good question, but rather than you posing it, how about if I

23  ask it?

24          Mr. Siegel, are there other ways that the plaintiff

25  has explored to try and obtain this information so that it

1    would be less burdensome on Ms. Lunsford and Mr. Hill?

2              MR. SIEGEL:  I'm happy to address that, Your Honor.

3              First, on the issue of burden, again, burden has

4    never been raised until the motion to reconsider.  They

5    certainly could have argued burden in a motion to quash, and

6    they didn't.

7              As far as quantifying the burden, they never tell

8    you anywhere in their papers any sort of definition about

9    why -- what sort of burden this imposes.  They say they have

10   a hard drive and three thumb drives that contain discovery

11   from the Commonwealth.  There's no burden to produce that

12   because it doesn't have to be reviewed.  It's responsive and

13   cannot be privileged because they received it from the

14   Commonwealth.  That is no burden.

15             They say they have two other thumb drives they're

16   trying to figure out where they received it.  They say they

17   have third-party -- unsolicited e-mails from third parties.

18   Those are not privileged.  And they said that they relate to

19   the rally and the car attack; so they're responsive.

20             So they have yet to articulate any specific burdens

21   here, to begin with, other than just saying: it's burdensome.

22   That's not any -- that's not a description of burden that

23   contains any specificity and does not meet the standard to

24   raise an objection.

25             As to --

1          THE COURT:  You're not seeking any -- and you're

2     clear in the subpoena you're not seeking anything that's

3     work-product, you're not seeking anything that is

4     attorney-client communications.  Really anything that

5     Ms. Lunsford or Mr. Hill would have created in their defense,

6     you're not seeking that?

7          MR. SIEGEL:  That's correct, Your Honor.  We've said

8     that multiple times.  And despite us saying that, they keep

9     responding -- they keep kind of ignoring the fact that we're

10    limiting it and still saying it's burdensome.

11         A great example is in the motion to reconsider, I

12    think they have a whole page about jury information.  We said

13    in our opposition to the motion to quash we're not seeking

14    information about jurors.

15         You wrote in your opinion, we're not seeking

16    information about jurors.  There again, throwing it out there

17    as another reason not to produce these documents.

18         But you're exactly right.  We're not seeking

19    attorney-client privileged information.  We're not seeking

20    work-product information.  Most of the stuff -- when they

21    describe it in their brief, most of the stuff is, by

22    definition, not privileged and not work-product and doesn't

23    even need to be reviewed.

24         And on that note, I know there are multiple

25    decisions from this Court -- and I can cite some of them if

1    you'd like, Your Honor -- that talk about the situation where

2    a party says -- makes the argument that it can be very

3    burdensome to review all these documents and identify which

4    ones are privileged and which ones are not.  And this Court

5    has repeatedly said, that's not really a valid excuse because

6    most of the time, and certainly in this case, there's a

7    protective order with a claw back.

8            So when you're producing a giant tranche, for

9    example, of third-party e-mails, that are these unsolicited

10   third-party e-mails, or a hard drive that you got from the

11   Commonwealth, and if for some reason there happens to be a

12   privileged document in there, we're not allowed to use it,

13   we're not allowed to read it, we have to destroy it, we can't

14   give it to anybody.  These are standard provisions.  This is

15   the same standard the plaintiffs and defendants are under,

16   the same protective order that exists in this case.

17           So, again, there's no -- there's no burden here and

18   they have not articulated a burden.  I think the most

19   specific they got was that there are four boxes of documents,

20   other than the electronic documents, which again I said can

21   largely be produced without review.

22           On the issue of getting these documents from another

23   source other than the Commonwealth's Attorney, we've gotten

24   some documents from them, but there's two kind of fundamental

25   issues that don't allow us -- won't allow us to get the

1 documents we're seeking from Mr. Hill and Ms. Lunsford.  One

2 is some of the documents Ms. Lunsford and Mr. Hill have, the

3 Commonwealth's Attorney does not have.

4    For example, they told you in the motion to

5 reconsider they have all these e-mails from third parties

6 about the attack, about Fields.  The Commonwealth Attorney

7 doesn't have those.

8    I think it's not unreasonable to assume that some

9 documents they got independently of the Commonwealth's

10 Attorney.  For example, they talk about their client's armed

11 services records.  I don't know if they got those from the

12 Commonwealth's Attorney or not, but if they got it as part of

13 their investigation, which I'm sure they undertook some

14 investigation in the representation of their client on a

15 murder case, to the extent they didn't create them and those

16 are pre-existing records, or whatever materials they

17 obtained, those are not privileged, those are not

18 work-product.  They can be produced.  The Commonwealth's

19 Attorney doesn't have them.

20    They also have things -- they called during their

21 case a crash reconstruction expert.  They have his report.

22 They didn't get that -- I don't believe they got that from

23 the Commonwealth's Attorney.

24    Other evidence they may have collected -- his social

25 media accounts, as Your Honor knows, that's a very big deal

1   in this case.  Mr. Fields has refused to produce any.  Again,

2   not privileged, no need to review.

3        As far as documents that they received from the

4   Commonwealth's Attorney, as Ms. Lunsford explained to you, it

5   was kind of -- and as I understand it from the Commonwealth's

6   Attorney, the way Ms. Lunsford and Mr. Hill obtained

7   documents was on a rolling basis, and they were allowed to go

8   in and inspect the file and copy specific documents.  So the

9   Commonwealth's Attorney doesn't have a record of -- I don't

10  think they can tell exactly what was given to Ms. Lunsford

11  and Mr. Hill.  And as a result of that, they would have --

12  the Commonwealth's Attorney can't just say, Oh, here's a hard

13  drive that we exchanged with the other side, so we know it's

14  not privileged, it doesn't have to be reviewed, because they

15  don't know what Ms. Lunsford and Mr. Hill have.

16       Ms. Lunsford and Mr. Hill can do that.  They do have

17  a hard drive and three thumb drives that they got from the

18  Commonwealth's Attorney.  It doesn't have to be reviewed.

19  The Commonwealth Attorney would have to do that.  It's not as

20  easy for the Commonwealth's Attorney to produce as it would

21  be for Mr. Hill and Ms. Lunsford, because the Commonwealth's

22  Attorney does generate work-product.

23       THE COURT:  And really all that is is just seeking

24  discovery from another third party.  I don't know, the

25  federal rules would say -- well, it's one thing to say you

1    have to -- you have to try and obtain this information from

2    the party rather -- rather than a third party, but I don't

3    know of any decision saying, rather than trying to obtain

4    documents from one third party, where that could be

5    burdensome, you really have to go and try and get them from

6    another third party.

7         MR. SIEGEL:  And that was actually my next point,

8    Your Honor, because what happens --

9         MS. LUNSFORD:  Your Honor, I --

10        MR. SIEGEL:  -- is when you go to one third party,

11   they point the finger at another third party.  Then you go to

12   that third party, then we're having another hearing and that

13   third party is pointing to another third party.

14        And it's not my obligation to obtain evidence from

15   who Ms. Lunsford and Mr. Hill think I should obtain it from.

16   We issued them valid subpoenas.  Those subpoenas are the

17   subject of multiple briefs at this point.  They filed their

18   motion to quash.  They had their bite at the apple.  The

19   Court ruled on it.

20        This is not an extraordinary request, Your Honor.

21   This is basic discovery.  We're not asking the Court to waive

22   privilege.  We're not asking the Court to give us

23   work-product because we have substantial need.  We're asking

24   for basic documents that they obtained from third parties or

25   that are -- that relate to their client, that are critical

1    evidence in this case, critical evidence in the criminal case

2    that they've already had.  This is not an extraordinary

3    request.  This is basic document discovery.  Because for

4    three years we've been denied that from Mr. Fields.

5           MS. LUNSFORD:  Your Honor, if I can speak to this, I

6    think Mr. Siegel -- I understand Mr. Siegel's points, and I

7    understand the Court's familiarity with the civil litigation,

8    which neither Mr. Hill nor I are.  Mr. Hill and I are not

9    civil attorneys.  We don't practice civil cases in federal

10   court.  We're not parties to the proceeding.  Mr. Fields has

11   an attorney who represents him in this.

12          These -- the subpoenas came in late January, so not

13   knowing civil procedure, not having -- we were appointed in

14   the underlying case.  I am a sole practitioner.  I have no

15   support staff currently; it's just me in the office.

16   Mr. Hill has two attorneys in his practice, one of which I

17   think is part-time, and a very small support staff.  We do

18   not have substantial funds and are trying to -- in addition

19   to responding to this discovery and protect our client's

20   interests, the person who is still our client, we're also

21   trying to make a living.  So I just want to put that out

22   there, because I think it's important when the Court is

23   considering undue burden.

24          We were not aware and were not noticed, as we put in

25   the motion to reconsider, that there would be any

1    consideration of our motion to quash in the hearing heard in

2    April, a time at which our courts were closed and our offices

3    were severely --

4              THE COURT:  Ms. Lunsford, let me cut you off there.

5    That hearing, it was just a status conference, and what

6    happened at that hearing -- you may know this, you may not --

7    was that I just asked if any of the motions had been

8    resolved.  Some of them had; some of them hadn't.  And then I

9    asked if anybody wanted a hearing.  There wasn't any

10   substantive discussion of the motions.

11             And, you know, the Court's local rules, the

12   scheduling order, it puts the burden on the parties -- or a

13   movant in your case -- to request a hearing.  It's not the

14   Court's job to track down anyone who files something in the

15   case to find out if they want a hearing.  I took that extra

16   step because I was trying to give everybody the maximum

17   opportunity to weigh in on these motions.

18             MS. LUNSFORD:  Yes, sir.

19             THE COURT:  There was an opposition filed to your

20   motion, and under the rules you have an opportunity to reply.

21   Y'all didn't reply.  You know --

22             MS. LUNSFORD:  I agree and I apologize.

23             THE COURT:  -- we really expect everybody, even pro

24   se litigants, to familiarize himself or herself with the

25   rules of the court and the federal civil or criminal

1   procedural rules.  So, you know, I just -- I don't think that

2   any of those arguments provide any reason for me to

3   reconsider.

4          Now, I --

5          MS. LUNSFORD:  Well --

6          THE COURT:  But at the same time, but the one thing

7   that you did say -- and let me just amend what I just said a

8   little bit.  One thing that you did say that I do think

9   warrants some consideration is that if this -- is that the

10  rules, Rule 45(d)(2)(B)(ii), allows for basically shifting of

11  costs to produce the records.

12         And from Mr. Siegel's viewpoint, the four banker's

13  boxes that you referred to, that's not going to require a

14  real thorough privileged review for a number of reasons; one,

15  given they're not asking for any sort of documents that could

16  be privileged, they're just asking for what y'all received

17  from the Commonwealth; and then, you know, third-party

18  e-mails, things like that.  Now, maybe that requires a bit of

19  a review, but you certainly could ask for your copying costs

20  for those documents.  If it does require some review, you

21  certainly can ask for fees on that.

22         Now, I'm not sure what the plaintiffs' position is

23  on it, but that's -- you know, that's something that I think

24  it's an argument you could have made earlier, but it's

25  something that I am sensitive to as well.

1    MS. LUNSFORD:  Could I -- I don't want to cut the

2    Court off, but I do think it's important for the Court to

3    understand the volume of documents that we have, what we have

4    and what Mr. Siegel thinks we have, but we don't actually

5    have, because I think what is going to happen in terms of

6    what we can resolve today versus what we're going to have to

7    resolve at some point in the future is privileged

8    information, work-product information, and other sealed

9    documents.

10   And I will tell you, if the -- I will say that we

11   have e-mails from third parties, unsolicited e-mails from

12   third parties.  I'll tell the Court that in preparation for

13   this -- and I apologize I didn't put it in the motion.  I was

14   trying to pay attention to my other court obligations and my

15   other clients, while also filing a motion to reconsider

16   within a certain period of time, and I was not familiar with

17   the federal rules of court.  I've tried to become more

18   familiar with them with respect to civil procedure.  And

19   that's why we didn't do it earlier.

20   But back to e-mails, I'm not computer literate, but

21   I did figure out how to find out how much information I have

22   on e-mails related solely to Mr. Fields.  And my e-mails

23   related to him, which I kept in a separate folder, are 537

24   megabytes of information.

25   Now, I'll tell the Court that means absolutely

1    nothing to me, but I did do some internet research and

2    according to -- I think LexisNexis is one of the sites that

3    talks about how much -- how many e-mails, for example, can be

4    stored on 537 megabytes of whatever.  It would consist,

5    according to this site, of about 5500 e-mails and 1600

6    attachments.

7           Those are not all from third parties that were

8    unsolicited.  Some of them are -- and it will require me to

9    go through however much 537 megabytes of information is to

10   isolate those and provide those as opposed to the e-mails

11   between me and Mr. Hill, between me and the Commonwealth,

12   between Mr. Hill and I and mental health experts, for

13   example.  So that's just with respect to e-mails.

14          I do have four boxes, one of which is jury

15   questionnaires, which I understand the plaintiffs aren't

16   seeking but are responsive; and as I read Rule 45, I would

17   have to create a log indicating what I'm not providing but I

18   do have that is responsive.  So I have three --

19          THE COURT:  Well, we can -- if I haven't already

20   amended the -- the subpoena, it can be -- it can be amended

21   so that that information is excluded.  And plaintiffs have

22   said on the record they don't want --

23          MS. LUNSFORD:  I understand that.

24          THE COURT:  So, I mean, that's not something you

25   would need to put in.

1          Also, if privilege is really, you know, a concern,

2     sometimes you can do categories rather than each individual

3     document.

4          MS. LUNSFORD:  We can try to do that.  I will tell

5     the Court that the bulk of the information that is in those

6     three boxes -- at least one of them is trial materials.  And

7     when I say "trial materials," those are my handwritten notes.

8     There are witness outlines.  There are things of that nature.

9     But there are at least two other boxes of information that I

10    would need to go through.  And I suspect much of that is

11    privileged.

12         And at some point we're probably going to have to be

13    before the Court on what is privileged, what is work-product,

14    and what I am saying is privileged versus what Mr. Siegel

15    thinks of as privileged, on things like Army records.

16         And Mr. Hill sent a letter to Mr. Siegel asking:

17    You know, these are the kinds of documents that we have, what

18    do you want?

19         And one of the kinds of documents that I have is

20    what I refer to as historical information about our client.

21    These are records that would not -- records that our client

22    had to sign a release for us to get.  They are largely

23    protected by privilege.  The bulk of them, I will say, I

24    expect were created before January 1, 2015.  But I need to go

25    through all of them -- and they're not -- it's not a small

1    amount of paper records -- to see what is before January 2015
2    and what's after.
3            I would argue even the stuff that's after January 1,
4    2015 that are school records -- which might be very small
5    after that date -- medical records, mental health records,
6    Army records, are certainly work-product, because they were
7    obtained by me during the course of this litigation for this
8    criminal case for purposes of providing to or use by --
9            THE COURT:  Did you create the documents?
10           MS. LUNSFORD:  I didn't create them.  I requested
11   them from third parties.  They're protected by --
12           THE COURT:  Well, I don't see how they would be
13   work-product.  And there is a protective order in this case
14   that I think would protect the medical records.
15           MS. LUNSFORD:  They're protected by HIPAA, and I
16   would argue that they're also privileged.
17           And I discussed with Mr. Zwerling, who, again, is
18   acting as a volunteer, but has also done some research on
19   work-product, and I think there's an argument that they are
20   work-product.
21           With respect to pleadings, Mr. Siegel --
22           THE COURT:  Well, but, Ms. Lunsford, I mean, why on
23   earth are you asserting that now?  You know, your motion was
24   filed in February, and I -- I have to agree with Mr. Siegel
25   that almost all this is entirely inappropriate to be raising

1    it in a motion to reconsider and then now, in this hearing,

2    because just about every argument that you're asserting you

3    knew of at the time, or at least you should have known of at

4    the time, and it is not newly discovered.  You know, it

5    really is a quintessential second bite at the apple.

6            Now, I'm sympathetic to some things, you know, like

7    the costs it would put on you, but the rest of it is -- you

8    know, you're --

9            MS. LUNSFORD:  Well, that's why I stated to the

10   Court that I felt like we needed to talk about it now,

11   because I would argue that most of this is either privileged

12   or work-product, if it's not covered by HIPAA, or outside the

13   time.

14           THE COURT:  Well, I mean, is the -- are you talking

15   about the information that you received from the Commonwealth

16   as well?  Do you think that's privileged?

17           MS. LUNSFORD:  I don't think it's privileged.  The

18   problem with the information that was obtained from the

19   Commonwealth -- and I do think the Court needs to weigh in on

20   this, because Mr. Siegel has indicated that if it came -- if

21   the United States Attorney provided a document, for example,

22   to the Commonwealth, and the Commonwealth then provided that

23   document to us, we should turn it over because we got it from

24   the Commonwealth.

25           I don't care if it's discovery when I turn it over

1    or not if it came from the Commonwealth or the U.S. Attorney,

2    but there are some documents that the U.S. Attorney gave to

3    the Commonwealth that the Commonwealth then gave to us.  And

4    I don't know if the Court considers that discovery from the

5    Commonwealth or something that we're prohibited from

6    providing under --

7          THE COURT:  I think it's from -- if you got it from

8    the Commonwealth, then I think it came to you from the

9    Commonwealth.  It's not -- you know, it's not -- unless

10   there's some -- something that would tie that to a federal

11   court's order limiting dissemination, then it didn't come

12   from the U.S. Attorney's Office to you, it came from the

13   Commonwealth.

14         MS. LUNSFORD:  The U.S. Attorney's Office takes a

15   different view, but obviously that falls in their court.

16         In terms of, you know, Mr. Siegel's assertion that

17   the Commonwealth doesn't know what it gave us, that we were

18   allowed to copy documents, we were not.  We were provided

19   with discs.  And the subpoena seeks original documents, but

20   I'm still representing Mr. Fields on the appeal, and I cannot

21   simply turn over the discs.  I can -- once I determine what

22   source they came from, I can perhaps clone them at the

23   expense of the plaintiff.

24         We did not request information from social media

25   accounts.  We -- whatever we got was, in some ways, provided

1    by -- a lot of it was provided by the U.S. government in

2    terms of social media accounts.

3           There are pleadings and information that we obtained

4    from the clerk's office that are under seal that -- for

5    example, every search warrant that was obtained by the City

6    of Charlottesville police department in this matter -- and

7    when I say "this matter," as it relates to the prosecution of

8    Mr. Fields in the Commonwealth of Virginia, every search

9    warrant was placed under seal.

10          In order to access those search warrants, I had to

11   have the Court enter an order allowing me to access those

12   documents and providing that I would not release them.  Those

13   are all documents that I got from the clerk's office that --

14   and the Commonwealth's Attorney has copies of the search

15   warrants from the officers that were never placed under seal.

16   They're not under any obligation to keep those, I mean, if

17   they have them -- under the Court's theory, this Court's

18   theory that it's from a different source, they got them from

19   the police department.

20          The -- I'm trying to look at the different

21   categories of information.  The electronic files that are on

22   my computer, that I would need to go through to determine

23   whether it was something that I created, something I received

24   from a third source, third party, or something I received

25   from the Commonwealth, my electronic files are 24.5 gigabytes

1    of information, much of which will be work-product or

2    privileged.

3          And I'm assuming that the plaintiffs and the Court,

4    if I'm claiming that something on my computer or in my files

5    that I received from a third source is privileged,

6    work-product, protected by HIPAA, or under seal, that,

7    pursuant to the rules, I'm going to need to create a log

8    indicating what there is.

9          And I agree with the Court, some of it can be rather

10   broad, but some of it is not going to be -- some of the

11   information on the log is not going to be that broad.

12         THE COURT:  So, Ms. Lunsford, I think there are some

13   things that sounds like there's nothing -- I think there's

14   nothing prohibiting you from turning it over.  I mean, the

15   materials from the Commonwealth that are -- that are outside

16   of the protective order -- so exculpatory materials, things

17   like that -- that should all be turned over.  Anything that

18   you or Mr. Fields under the criminal discovery rules in

19   Virginia are entitled to receive, I think that's outside of

20   the scope of Judge Downer's order.

21         Do you agree with that?

22         MS. LUNSFORD:  I agree.

23         THE COURT:  Okay.  So I think that needs to be

24   turned over.  And there are some things that I think should

25   just be -- you need to just go ahead and you need to get

1  those to the plaintiffs.  And then there's some other

2  categories that maybe are a little more difficult.

3          The third-party e-mails to you that are unsolicited,

4  where people are just reaching out to you, I have trouble

5  seeing how that would be, you know, work-product because

6  it --

7          MS. LUNSFORD:  I agree.  My concern with that is the

8  amount of time that it's going to take me to go through the

9  e-mails to find those, as opposed to the ones from Mr. Hill.

10 And some of them will be easy.  Some of them may not be so

11 easy.

12         THE COURT:  Yeah.

13         MS. LUNSFORD:  And I agree.  Ones that I received

14 from third parties unsolicited, I have not had the

15 opportunity to go through them.  I can tell the Court that

16 I'm concerned about the amount of time that it will take and

17 my ability to pay my mortgage and rent.

18         THE COURT:  Well, and I -- and, Ms. Lunsford, you

19 know, like I said earlier, I think there is a provision in

20 the federal rules to allow for payments to cover, you know,

21 the costs of producing these documents, and so I think that's

22 something that we'll certainly have to consider here.

23         All right.

24         THE CLERK:  Your Honor, can you wait just a minute?

25 My recording has stopped.

1          THE COURT:  Okay.

2          (Pause in proceedings)

3          THE CLERK:  Okay.  It's recording, Your Honor.

4          THE COURT:  All right.

5          MR. SIEGEL:  Your Honor, this is Joshua Siegel.  If

6    I -- Ms. Lunsford had quit.  If I could just have a minute or

7    two to make a few very brief comments.

8          THE COURT:  Sure.

9          MR. SIEGEL:  So, you know, on the issue of burden,

10   we're trying -- we're really trying everything we can think

11   of to help move this along.  You know, not once have

12   Ms. Lunsford and Mr. Hill met and conferred before any of

13   their motions.  But we have told them -- you know, Mr. Hill

14   sent me a letter yesterday about certain categories, and I

15   responded to him this morning and said, you know, some of

16   these categories, you don't have to even review.  He asked

17   me, for example, you know, pleadings that were filed, did he

18   have to produce all the pleadings that were filed.  We said

19   no, you don't have to produce those.  Other categories we've

20   told him multiple times, like the jury questionnaires, jury

21   information, no, don't produce that.  Let's narrow the scope,

22   let's make it easier.  You don't have to produce those

23   pleadings; that's not what we're looking for.  Don't produce

24   the jury questionnaires.

25          Things that they mentioned in their brief, like

1    communications with the court clerk or communications with

2    the federal public defenders, obviously, again, we're not

3    looking for public documents.  The e-mails, you know, to the

4    clerk filing things, we don't need that.  We don't have to

5    review that kind of stuff.  We're trying to narrow this as

6    much as we possibly can.

7            On the issue of what is easy for them to produce

8    now, there are certain categories that they can literally

9    press a few buttons and get documents to us.  They have

10   electronic devices, a hard drive, and three thumb drives.

11   They know none of it is privileged.  They know it is all

12   responsive.  There's no reason they can't give that to us

13   right now.

14           They have other documents, like the e-mails.  Your

15   Honor, one of the things I do quite a bit in my practice is

16   electronic discovery.  I'm happy to work with Ms. Lunsford

17   and make suggestions on ways she can search through her

18   e-mail to make it less burdensome.  I'm happy to do that,

19   Your Honor.

20           But the bottom line is:  As you just heard her say,

21   Your Honor, I think Ms. Lunsford and Mr. Hill have a bit of a

22   broad understanding of the work-product doctrine, and she is

23   planning on asserting things like Mr. Fields' school records

24   are somehow work-product.  And so if we're going to be back

25   here having a fight over that, that's all the more reason we

1  need these documents now.  We've been waiting for -- we're

2  pushing seven months on the subpoena right now.  There are

3  things that they can get us quickly and easily, and they

4  should have to give it to us right now, without delay.

5        And as relates to the documents that they got from

6  the Commonwealth's Attorney, again, we're not obligated to

7  have to try and get them from the Commonwealth's Attorney.  I

8  just believe it's easier for them to produce it, because they

9  literally have it segregated already on a hard drive and on

10  three thumb drives, and the Commonwealth's Attorney doesn't

11  have to recreate it.  Ms. Lunsford and Mr. Hill can just

12  produce it.

13        And, again, as relates to that Court order, Your

14  Honor, frankly, from my perspective, it's too little too late

15  on this motion.  Again, this is a motion to reconsider.  This

16  is not new evidence.  That order has been here for two years.

17  And, frankly, I think the Court is right, it doesn't apply

18  for a few of the other reasons I mentioned.  And if

19  Ms. Lunsford and Mr. Hill think it does, then, again, I think

20  they've already got consent from the Commonwealth's

21  Attorney's Office; they can produce these documents.  They

22  have an order, Your Honor.  It would be very easy for them,

23  if they want to make sure they're not violating the Court's

24  order, just to submit an agreed order to the judge, allowing

25  them to produce the documents.  Again, they already have

1    agreement from all the parties.  That takes care of that

2    order.  There's no reason that they can't be held to the

3    standard in this Court's order to produce those documents.

4              THE COURT:  And, you know, I certainly want to make

5    sure that I'm affording all respect to the Charlottesville

6    General District Court's order and discovery practices, too.

7    So while this order was presented to me at such a late time,

8    I also -- it's something I think I have to consider and make

9    sure that this Court is -- is properly taking into account.

10   You know, what I had said in the previous order on the

11   motions to quash as to the federal court, that really the

12   federal court's criminal discovery order is really a matter

13   that needed to be raised, and in that case, you know, I'm

14   just wondering if it's something that if the Commonwealth

15   isn't -- has essentially waived their -- waived the

16   protections that they sought for discovery, then, of course,

17   the plaintiffs and y'all want this information.

18             And, Ms. Lunsford, is this something that y'all can

19   present an agreed-upon order to the General District Court

20   just saying that it would be -- you know, that under this

21   Court's order, that --

22             MS. LUNSFORD:  I'd be happy to do that.

23             THE COURT:  -- they can be relieved of that order,

24   with the understanding that anything that's produced, you

25   know, if it's sensitive material, there's a protective order

1    in this case as well, so it's not that this information is

2    all of a sudden just going to be splashed about?

3          MS. LUNSFORD:  Yeah, I would request that the

4    plaintiff draft that.  You know, I -- I don't mean to be

5    disrespectful to the Court.  I actually have -- it's just me,

6    so in order to start going through the documents, copying

7    discs and thumb drives, going through e-mails, preparing

8    orders for the Court, I'm the only one that can go through my

9    e-mails.  The Commonwealth -- or Mr. Siegel can prepare an

10   order for the Court that can be sent to me electronically,

11   and I'll walk it over to the Court or send it to the

12   Commonwealth and ask that they get it entered.

13         MR. SIEGEL:  Your Honor, I'm happy to draft that and

14   have it to Ms. Lunsford tomorrow.

15         THE COURT:  Certainly, Ms. Lunsford, I think that's

16   an appropriate request.  I do think it should be something

17   that could come from the -- you know, from the plaintiffs.

18   And on that -- again, on the electronic discovery, you know,

19   I would encourage to take up Mr. Siegel's offer about how

20   to -- either how to search or, you know, whether there can

21   be, you know, some -- some sort of a third-party vendor who

22   could harvest the e-mails; but do that.  And, again, there's

23   a cost-shifting provision in Rule 45 that if this is

24   something that's going to be substantial, that you can

25   certainly talk to Mr. Siegel about it.  It's something that I

1  would certainly entertain.

2           MR. SIEGEL:  Your Honor, this is Mr. Siegel.  Can I

3  make a suggestion?

4           THE COURT:  Sure.

5           MR. SIEGEL:  You know, one way to structure the

6  order here is to require production of documents that fall

7  outside the scope of that District Court order, including

8  things under Rule 3A, the other documents from third parties,

9  things like that, within -- you know, within -- I think they

10 asked for ten days from the date of this hearing.  I think we

11 would be okay with that if they really need that much time,

12 Your Honor.

13          And then insofar as it relates to the documents

14 within the scope, order they submit that agreed order within,

15 you know, a day or two; and then within 24 hours of the Court

16 granting that order, to produce those documents to us.

17          Because what I don't want to have happen, Judge, is

18 the District Court enters the agreed order, two weeks from

19 now, and then we're back here, Oh, we haven't started

20 reviewing the stuff yet, and we don't know where it is, we've

21 got to find all of it.  And it's just going to cause more and

22 more delay.

23          Again, we have just a few weeks left of deposition

24 time here.  We just really can't afford to keep litigating

25 this, especially, again, if we have to litigate issues about

1    whether a school record is work-product.

2              MS. LUNSFORD:  Well, you know, I -- I will -- in

3    terms of what we can and can't afford to do, Mr. Hill and I

4    cannot afford to shut down our practices for the next two

5    weeks in order to respond to the discovery.  I will make

6    every effort to do it quickly, and if the plaintiff wants to

7    talk about some sort of compensation for time, I'm happy to

8    keep time.

9              With respect to school records, I will tell

10   Mr. Siegel, and so the Court knows, the vast majority of his

11   school records are prior to January 1, 2015.  That does not

12   necessarily hold true with respect to his medical records.

13   But I would assert that his medical records and what are his

14   school records, Army records, are protected by HIPAA.  And I

15   understand the confidentiality, you know, and the expert

16   confidential designation that can be applied, but I would

17   also argue that they're privileged, and I do think they're

18   work-product.  And they were obtained -- they were never used

19   in this litigation except to allow an expert to review them

20   for purposes of mitigation in a murder case.

21             MR. SIEGEL:  Again, Your Honor, that was kind of

22   exactly my point, is, you know, none of the documents she

23   described did she create in anticipation of litigation.  You

24   know, these are squarely not work-product, but it sounds like

25   we're going to have to have that fight, and that's why we

1    really need to get this over with the sooner the better.

2           MS. LUNSFORD:  And I would argue, also, that the

3    subpoena is overbroad if -- if it is -- if it is -- when it

4    relates to all documents that were obtained from any third

5    party, which would include medical care providers, with no

6    limitation except the date, that they're not relevant to any

7    matter that's in dispute in the civil proceeding, as far as

8    Mr. Campbell has explained it to me.

9           MR. SIEGEL:  Your Honor, any relevancy or overly

10   broad objections we could have heard on the motion to quash.

11   There's no need --

12          THE COURT:  I agree.  I agree with that.

13          And, Ms. Lunsford, if y'all want to confer further

14   and see if the plaintiffs are willing to -- you know, to not

15   require certain documents to be produced, you know, there may

16   be some that they would agree are not relevant, but I really

17   think that that -- you know, that that argument, really it's

18   way beyond time to raise that.

19          On the privilege -- and you can -- you can

20   certainly -- with the work-product, I really have trouble

21   seeing how that can be work-product.  I understand that you

22   obtained it, but you didn't create these documents and it

23   doesn't have anything with -- with your mental impressions on

24   them.  I think, at most, it would be, in fact, work-product.

25   And at this point, I think that I could very easily find that

1  the plaintiffs don't have any other ability, any other way to

2  obtain that information, and that there is a substantial need

3  for it.  So if I had to -- if I had to make that ruling, I

4  think that's how I would come down; that even if it is

5  work-product, it would have to be produced.  But I think

6  there probably is some good argument that it's been waived at

7  this point.

8        Look, I think that -- I think that what has to

9  happen on this motion to reconsider is -- is that there are

10  some categories of documents that I think clearly are not

11  covered by the General District Court's protective order or

12  criminal discovery order, and also the Federal District

13  Court's discovery order and that would need to be produced.

14  I'll put that in an order, but it would be the exculpatory

15  documents, third-party e-mails.  And I'll set forth the other

16  ones in a written order, but I think those do need to be

17  produced as soon as possible.

18        Again, Ms. Lunsford, I think that you have a good

19  argument for shifting the costs to the plaintiffs in this

20  case.  You know, I would hope you and Mr. Siegel can talk

21  about that, any reasonable expense that you have to incur in

22  reviewing and producing documents; and then anything that --

23  any costs for copying, you know, I think that those would be

24  compensable.

25        And if the plaintiffs have a counter or contrary

1     argument, you can certainly make that, but that's -- that's

2     how I'm viewing this at this time.

3              As to the Charlottesville General District Court

4     order, I do think that that's -- it's an order that deserves

5     respect from this Court, and I certainly intend to accord it

6     that respect.  And there may be some arguments that not

7     everything is covered, but it sounds -- but I also do think

8     that the best approach is for -- if the Commonwealth isn't

9     opposing it -- and it sounds like, Ms. Lunsford and perhaps

10    Mr. Hill, that you aren't opposing being relieved of that

11    order, either -- you know, a joint motion be presented to the

12    General District Court and ask that that order limiting any

13    dissemination from defense counsel's possession or control of

14    the documents be lifted to allow -- but in a limited

15    circumstance, I think, to be produced pursuant to, you know,

16    a lawful Court order, like from this Court, directing that

17    the information be produced.

18             And anything that should be -- that should be

19    confidential under the protective order that this Court has

20    entered in this case would certainly be protected from

21    further dissemination.

22             So I really -- I think that's probably how this

23    would have to go.

24             MS. LUNSFORD:  And am I to understand -- because the

25    U.S. Attorney has e-mailed me today wanting to know the

1    Court's order -- that if a document that was produced, for

2    example, created by an FBI agent was provided to the

3    Commonwealth, and then from the Commonwealth to the defense,

4    that that is something that we need to turn over despite this

5    Court's earlier order in the criminal case?

6            I'm not arguing; I'm just asking for clarification.

7            THE COURT:  Well, I mean, my order, I think,

8    recognized the scope of the order that was entered by the

9    Federal District Court in the criminal case in federal court

10   and it talks about, I think, the materials provided by the

11   U.S. Attorney's Office to defense counsel.  My view is if it

12   comes from the Commonwealth's Attorney's office, that's not

13   the U.S. Attorney's Office.

14           MS. LUNSFORD:  Yes, sir.

15           THE COURT:  Mr. Siegel, Ms. Lunsford, you know, if

16   the U.S. Attorney's Office takes a different view, it's

17   probably a good idea for y'all to have some contact with them

18   and see if there can be an order presented in the Federal

19   District Court as well, again, that would allow any

20   dissemination.  That's certainly something that she can look

21   into.

22           MR. SIEGEL:  All right.  Thank you.

23           THE COURT:  Mr. Siegel, does that cover everything?

24           MR. SIEGEL:  I think it does, Your Honor.  My only

25   question is, as far as deadlines and the dates, so we can

1    kind of know the ball is moving forward on this, if Your

2    Honor wants to get those now or if those are going to be a

3    forthcoming order.

4            THE COURT:  Well, I think it needs to be in a --

5    just a pretty short written order, but it's going to be up to

6    the General District Court about how quickly it moves on the

7    order.  I certainly can't require that but I -- Ms. Lunsford,

8    sounds like you think that you will be able to get that

9    order -- once you receive it from plaintiffs' counsel, get

10   that submitted pretty quickly?

11           MS. LUNSFORD:  I'll transmit it to the Commonwealth

12   and see if Mr. Platania will take it up with either the

13   General District Court or the Circuit Court, as he thinks

14   appropriate.

15           My concern is I also need to focus on the other

16   information.  So to the extent to which Mr. Siegel can

17   communicate directly with Mr. Platania, it would be helpful.

18   If he doesn't want to do that, I'll certainly make it happen

19   as soon as I can.

20           MR. SIEGEL:  All right.  Your Honor, on behalf of

21   the plaintiffs, I'm happy to do what I can to coordinate with

22   the Commonwealth's Attorney and Ms. Lunsford.  I only ask

23   that -- I know we can't know when the District Court is going

24   to move on that, but we ask that you put a deadline actually

25   running from the date that the District Court enters that

1     agreed order, as far as a deadline, you know, for documents.

2            THE COURT:  Yeah, I will.  I will do that.

3            And, Ms. Lunsford, is it accurate that some of

4     the -- some of the information received, that you received

5     from the Commonwealth, that it's on thumb drives and things

6     like that?

7            MS. LUNSFORD:  It -- it is.  It's not all that way.

8            THE COURT:  All right.  I would certainly think that

9     things like that, they could be copied very quickly, in

10    either a day or two, and turned over, if the state court

11    agrees to enter the proposed order.  So some things like

12    that, I think, can certainly be turned over, they can be

13    turned over very quickly.  There may be some other things

14    that would take a little bit longer to go through and

15    assemble, but --

16           MR. SIEGEL:  Your Honor, actually, I'm not sure if

17    Ms. Lunsford is aware, but we've provided Mr. Hill with an

18    electronic link where he can actually -- you can actually

19    just upload documents.  You don't need to copy them or

20    anything.  You can just upload them to our secure firewalled

21    website, and there's a secure encrypted link where you don't

22    even need to copy it if it's electronic.  You just upload

23    them and they instantly get sent to us.  So I'm happy to send

24    that link to Ms. Lunsford as well.

25           THE COURT:  Okay.  All right.  Well, I will put in

1    some deadlines and, you know, I'll certainly -- you know,

2    I'll try and be reasonable with those, but I definitely

3    recognize that, you know, time is running out in the civil

4    case.  And, you know, a lot of these arguments are things

5    that I think could have been raised and dealt with sooner,

6    so --

7        MS. LUNSFORD:  I don't disagree.  Your Honor, and

8    everyone, I apologize to the Court for not doing that.  In

9    light of our small practice, our unfamiliarity with civil

10   rules of procedure and what was required, you know, frankly,

11   we were expecting the plaintiffs to request a hearing.

12       I will point out that I did raise the issue of the

13   plaintiffs' ability to get information from other sources in

14   the motion to quash.  I understand it was not addressed.  We

15   didn't brief it.  And I apologize for that.

16       THE COURT:  All right.  Well, yeah, I'll encourage

17   you all to just confer further because I think -- Mr. Hill

18   and Ms. Lunsford, I do think that that's another way to

19   really ease some of the burden that is placed on y'all to

20   make this production.  And I will try and just get the order

21   out either today or tomorrow on this.  Okay?

22       And to be clear, I think -- I think that the

23   discovery order from the General District Court, even though

24   it was raised really late, I think because of the importance

25   of showing respect to another Court's order, I think that is

1  something that I have to consider and it gives reason to

2  reconsider the order.

3        I think that most of the other reasons raised by

4  Ms. Lunsford and Mr. Hill don't warrant reconsideration, but

5  I do think that some sort of cost-shifting is appropriate.

6  And it seems to me that you all can discuss the scope of the

7  production and confer, and I really think that that's going

8  to be in everyone's interest to do.

9        Okay?

10        MR. SIEGEL:  Thank you, Your Honor.

11        THE COURT:  All right.  Is there anything else we

12  need to address today?

13        MR. SIEGEL:  Your Honor, this is Mr. Siegel.  Just

14  one thing.  I don't think it really requires the Court to

15  address it, but I just wanted to make the Court aware.

16        Obviously because of some of these delays in getting

17  documents, I think the parties might end up having to agree

18  to shuffle some of the deadlines around depositions and

19  things like that, just to make sure certain people get

20  deposed with documents, and not having to do it twice.  And

21  to the extent that's necessary, the parties will endeavor to

22  reach an agreement on that.  So I just want to make the Court

23  aware that that might be necessary.

24        THE COURT:  Okay.  All right.  All right.  Well, I

25  appreciate y'all working on those, and we definitely want to

1   keep -- try and keep things on track to get the case tried in

2   October.

3           MR. SIEGEL:  Agreed.

4           THE COURT:  All right.  All right.  Thank you all.

5   Take care.

6           MS. LUNSFORD:  Thank you.

7           MR. SIEGEL:  Thank you, Your Honor.

8   (Proceedings adjourned, 2:38 p.m.)

9                   C E R T I F I C A T E

10      I, JoRita B. Meyer, RMR/CRR, Official Court Reporter for

11  the United States District Court for the Western District of

12  Virginia, appointed pursuant to the provisions of Title 28,

13  United States Code, Section 753, do hereby certify that the

14  foregoing is a correct transcript of the proceedings reported

15  by me using the stenotype reporting method in conjunction

16  with computer-aided transcription, and that same is a

17  true and correct transcript to the best of my ability and

18  understanding.

19      I further certify that the transcript fees and format

20  comply with those prescribed by the Court and the Judicial

21  Conference of the United States.

22      /s/ JoRita B. Meyer            Date: 6/29/2020

23

24

25