**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER, | |
| Plaintiffs, | **Civil Action No. 3:17-cv-00072-NKM** |
| v. | **JURY TRIAL DEMANDED** |
| JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDEROF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Plaintiffs move pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure to quash deposition subpoenas that Defendants Jason Kessler, Nathan Damigo, Matthew Parrott, Identity Evropa, and Traditionalist Workers Party (the "Defendants") have served or intend to serve on non-parties Hutton Marshall and Joshua Lefebvre, or, in the alternative, for a protective order under Rule 26(c) forbidding or limiting the scope of the depositions of Messrs. Marshall and Lefebvre.

## PRELIMINARY STATEMENT

On July 22, 2020, the Defendants plan to depose two of this Court's *sitting* law clerks. The extraordinary request to invade the inner workings of this Court's chambers is just the latest step in a string of discovery abuses that have characterized the defendants' general approach to this case. *See* Dkt. 483, 539, 584, 599, 738, 759. Of course, the Defendants have no need to depose the Court's law clerks. To the extent they once had some remotely plausible basis to do so—*i.e.*, to find support for a far-fetched effort to disqualify the Court on the back of conspiracy theories and innuendo—this Court undercut that basis in its entirety by issuing a detailed order making clear that the law clerks have never conducted any work on this case, and they never will. Any eleventh-hour attempts by the Defendants to conjure up some other basis to proceed with the depositions—such as one of the law clerks being a marginal fact witness—would be disingenuous, and, regardless, insufficient to authorize such invasive discovery.

## BACKGROUND

On February 26, 2020, in a fourteen-thread Twitter rant, Defendant Jason Kessler ("Kessler") publicly announced that he had come across "evidence" that two of this Court's sitting law clerks—Hutton Marshall ("Marshall") and Jason Lefebvre ("Lefebvre," and with Marshall,

the "Law Clerks")—were intolerably biased in favor of the Plaintiffs in this action. *See* Ex. 1. The supposed "evidence" was as follows:

As to Marshall, according to Kessler: (i) Marshall's LinkedIn page showed that Marshall had a summer internship in 2017 at the Office of the New York State Attorney General, where he supposedly "worked with Amy Spitalnick, Executive Director of Integrity First for America," which Kessler claims "is the organization founded by Roberta Kaplan behind the lawsuits against UTR attendees"; (ii) Plaintiff Elizabeth Sines is one in a group of fourteen individuals posing with their dogs in a photograph that Marshall posted to Facebook and as to which Sines commented "The BEST OF FRIENDS";[1] (iii) because Marshall was in a September 6, 2017 Facebook post that said "I Stand With Dreamers," Marshall is a "left-wing activist who advocates for illegal immigration while ostensibly serving the law"; (iv) Marshall supposedly "wrote at a social justice publication for gay rights and culture"; and (v) Marshall purportedly "has ties to Antifa" because one of Marshall's Facebook friends "signified [their] affiliation with . . . three downward facing arrows" in his Facebook photo. Ex. 1.

As to Lefebvre, while acknowledging that the "information . . . is a little more scarce," Kessler cited the following: (i) an August 16, 2017 article on the University of Virginia School of Law website ("UVA.edu") that noted that, after Sines and a friend saw Defendant James Alex Fields, Jr. drive his car into a crowd of protestors at the Unite the Right rally ("UTR") on August 12, 2017, "the pair retreated to the home of law student Josh Lefebvre '19 to begin to understand what had happened"; and (ii) Lefebvre is also one of the fourteen individuals depicted in the Facebook photograph referenced above.

---

[1] The post makes clear that Marshall "updated his cover photo" to include this photograph on February 10, 2019, but that Sines posted her "BEST OF FRIENDS" comment at least one year prior (which means that the photo was taken, uploaded to Facebook, and commented on by Sines, all well before the Law Clerks began their clerkships with Judge Moon). *See* Dkt. 771 at 2 (confirming that the Law Clerks began working in chambers in September 2019).

According to Kessler's ill-supported conspiracy theory, the above information constituted "damaging evidence of bias in the Norman Moon courtroom," and he thus announced that he had "instructed [his] attorneys to put this in the court record & file a motion for recusal of Norman Moon." Ex. 1. Weeks later, however, Kessler, along with Defendants Parrott and Damigo (the "Moving Defendants"), filed a motion not to recuse Judge Moon, but to recuse the Law Clerks themselves, *i.e.*, "to disqualify [them] from further involvement in any 'Unite the Right' related litigation . . . pursuant to 28 U.S.C. §455(a) and §455(b)(1)."[2] Dkt. 687 at 1. The Moving Defendants argued that recusal of the Law Clerks was required because both were "personal friend[s] of one of the party plaintiffs in this case," and because Lefebvre "appears to be a fact witness to certain events relevant to 'Unite the Right' related litigation." Dkt. 687 at 1-2. The Moving Defendants appeared to concede, however, that any supposed conflict could not be imputed to the Court because "[i]n the <u>Fourth Circuit</u> a 'clerk's conflict of interest requires disqualification of [the] clerk not [the] judge." Dkt. 687 at 2 (quoting *U.S. v. Detemple*, 162 F.3d 279, 286 n.2 (4th Cir. 1998)). Despite Kessler's public representation that the information regarding the Law Clerks mandated this Court's recusal, *see* Ex. 1, the Moving Defendants made no mention of such a request in their motion.

Despite having elected not to seek third-party discovery from nearly any other witnesses throughout this case (including, for example, from those specifically identified in interrogatory responses as having potentially relevant information to the events at UTR), on June 15, 2020, while the Moving Defendants recusal motion was *sub judice*,[3] the Defendants served the Plaintiffs with

---

[2] On the same day, Defendants Kessler and Parrott also filed a motion to recuse the Law Clerks in a case they filed against the City of Charlottesville that also involves the Unite the Right rally. *See Kessler v. City of Charlottesville*, No. 19-cv-00044, Dkt. 55 (W.D. Va. Mar. 23, 2010) (NKM) (litigation referred to hereinafter as "*Kessler*").

[3] The Plaintiffs took no position on the motion. *See* Dkt. 688.

notices of their intent to issue deposition subpoenas to the Law Clerks (the "Law Clerk Subpoenas"). Ex. 2. (Plaintiffs provided the Court notice of the Subpoenas on June 18, 2020. *See* Dkt. 768.) The Law Clerk Subpoenas noticed depositions for July 22, 2020, with Marshall's at 9:30 a.m. and Lefebvre's at 1:30 p.m., and each attached a "Subpoena for Documents," that demanded the following:

1. All documents concerning the above-captioned litigation.

2. All documents and communications concerning any rally or event on August 11 or 12, 2017 in Charlottesville, Virginia.

3. All documents concerning and all communications concerning or with any Plaintiff or Defendant in this litigation from January 1, 2017 to the present.

4. Documents and communications sufficient to identify (a) your accommodations on the nights of August 11 and 12, 2017; (b) your transportation to and from any rally or event on August 11 and 12, 2017, in Charlottesville, Virginia; and (c) who arranged for or paid for such accommodation and transportation.

Exs. 3 (Marshall), 4 (Lefebvre).

On June 18, 2020, the Court denied as moot the Moving Defendants' motion to recuse the Law Clerks. In short, the Moving Defendants were "push[ing] on an open door," because the Court was fully aware of the potential conflict from the start of the Law Clerks' tenure, and the Law Clerks "ha[d] not been working on this case, and they would not have done so during their term, even absent this motion." Dkt. 771 at 3. Due to the Court's ruling that the Law Clerks were already recused due to their relationship with Sines, the Court had "[no] need to address moving defendants' alternative argument that one of [the Court's] term clerks should also be disqualified from participating in this case because he saw and provided shelter to Ms. Sines from the violence of the Unite the Right rally, and thus is an alleged 'material witness.'" Dkt. 771 at 3 n.1.

Also on June 18, the Court granted Kessler and Parrott's motion for the Law Clerks' recusal in *Kessler*. *See* No. 19-cv-00044, Dkt. 61 (W.D. Va. June 18, 2020); *see also supra* at 3 n.2. Although the Court noted that Kessler and Parrott had not met their burden of showing that such

recusal was required (principally because Sines is not a party to that action), the Court recused the Law Clerks regardless because it had "no desire to further delay resolution of this case," which had already been dismissed, "or to perpetuate any ancillary matters to the merits of Plaintiffs' lawsuit." *Id.* at 5.[4]

That same day, Kessler issued a celebratory "Press Release" announcing that the Law Clerks "have just been removed from a lawsuit by Unite the Right organizers Jason Kessler and Mattew [*sic*] Parrott against the Charlottesville government for civil rights abuse and First Amendment violations from the police stand down." Ex. 5. Kessler made plain his "Next steps." Ex. 5. "Now that we have successfully argued for the law clerks recusal, courtroom bias will be one of the issues we bring up when we take Kessler v Charlottesville to the Virginia Court of Appeals next year." Ex. 5.[5]

## ARGUMENT

The Defendants should not be allowed to proceed with the highly unusual and invasive step of deposing this Court's sitting law clerks. It would impose an exceedingly high burden and for no benefit. The Law Clerks have already been recused and there is no basis in law to impute the Law Clerks' supposed conflict to the Court. Further, the Court should lend no credence to any contention that the depositions are warranted because one of the Law Clerks might offer some marginally relevant fact testimony. That argument would be nothing but pretext since the Defendants have sought discovery from almost *no* other potential fact witnesses, even though the Plaintiffs have identified several other individuals throughout discovery that would have far more

---

[4] The Court acknowledged that the Law Clerks had each worked on *Kessler*. *See*, No. 19-cv-00044, Dkt. 61 at 2.

[5] Following the Court's decision on the Moving Defendants' motion to recuse the Law Clerks, Plaintiffs' counsel reached out to the Defendants' counsel to meet-and-confer regarding whether they planned to proceed with the Law Clerk Subpoenas in light of the ruling. Defendants' counsel confirmed that they would move forward with the discovery request in some form, and Plaintiffs' counsel confirmed they would be filing the instant motion.

relevant information and that would be far less burdensome to depose. It's obvious why the Defendants want to depose the Law Clerks: to probe into inner workings of the Court. The Court shouldn't allow it.

## I.     Applicable Legal Standards

Pursuant to Rule 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . [or] subjects a person to undue burden."[6] "Whether an 'undue burden' exists 'encompasses situations where the subpoena seeks information irrelevant to the case.'" *77 Const. Co. v. UXB Int'l, Inc.*, No. 7:13-cv-340, 2013 WL 6073176, at *3 (W.D. Va. Nov. 18, 2013) (quoting *Cook v. Howard*, 484 F. App'x 805, 812 & n.7 (4th Cir. 2012)); *see also id.* ("relevance remains an appropriate factor for the Court to consider even where a subpoena is issued to a non-party"). Indeed, "[t]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Brown v. Mountainview*

---

[6] The Fourth Circuit has opined that "[o]rdinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *U.S. v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (unpublished). But, as Judge Hoppe has noted in this case, a "party 'need only have *some* personal right or privilege in the information sought to have standing to challenge a subpoena to a third party,'" and thus can proceed under Rule 45 "even if the claimed interest is 'minimal or exceedingly small.'" Dkt. 304 (quoting *Third Degree Films, Inc. v. Does 1-18*, No. 11-cv-3007, 2012 WL 669055, at *2 (D. Md. Feb. 28, 2012)); *see also* Dkt. 415 (overruling objections to Judge Hoppe's opinion). Here, the Law Clerk Subpoenas make plain that their principal targets are communications the Law Clerks have had with the Plaintiffs, and especially Sines, and therefore Plaintiffs "have some personal right in the information held by" the Law Clerks. Dkt. 304 at 4.

Regardless, as this Court has done in this case, *see* Dkt. 304 at 1-2, "[c]ourts in the Fourth Circuit have ruled that motions to quash subpoenas directed at third parties can be viewed as motions for protective orders under Federal Rule of Civil Procedure 26(c)(1)." *Wheeler v. Virginia*, No. 7:17-cv-337, 2018 WL 10611666, at *1 (W.D. Va. Sept. 18, 2018) (collecting cases); *see also Brown v. Mountainview Cutters, LLC*, No. 7:15-cv-00204, 2016 WL 3045349, at *2 (W.D. Va. May 27, 2016) (collecting cases and concluding that "even if the court could find that [Plaintiffs do] not have standing to move to quash the subpoenas under Rule 45 . . ., [they] would still have standing under Rule 26 to challenge the subpoenas as irrelevant and overbroad"); *77 Const. Co. v. UXB Int'l, Inc.*, No. 7:14-cv-230, 2013 WL 6073176, at *2 (W.D. Va. Nov. 18, 2013).

Finally, even if Plaintiffs cannot move pursuant to Rule 45 or 26, this Court always retains the power to quash the Law Clerk Subpoenas *sua sponte*. *See Headhunter, LLC v. Does 1-9*, No. 5:17-cv-00069, 2018 WL 4550450, at *7 (W.D. Va. Sept. 21, 2018) ("Although the court is not granting any motion to quash, . . . the court will, *sua sponte*, quash the current subpoena"); *U.S. v. Roebuck*, 271 F. Supp.2d 712, 717 (D.V.I. 2003) (noting that Judge had earlier in the case "*sua sponte* quashed the subpoenas served on the law clerks as being unreasonable and unduly oppressive").

*Cutters, LLC*, No. 7:15-cv-00204, 2016 WL 3045349, at *3 (W.D. Va. May 27, 2016) (citing *Cook*, 484 F. App'x at 812); *see also Va. Dep't of Corrs. v. Jordan*, 2017 WL 5075252, at * 5 (E.D. Va. Nov. 3, 2017), *aff'd* 912 F.3d 180 (4th Cir. 2019) ("[i]n order to avoid imposing an undue burden, third-party subpoenas . . . must be narrowly crafted to relevant subject matter in the underlying litigation" (quotation marks omitted)).  Common objections to discovery requests under Rule 26(b)(1) (and thus Rule 45) are that the request "will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or interposed for an improper purpose." *Mills v. East Gulf Coal Preparation Co.*, 259 F.R.D. 118, 132 (S.D. W. Va. Aug. 4, 2009).

Similarly, Rule 26(c)(1) provides that a "party . . . may move for a protective order in the court where the action is pending," and that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  As relevant here, a protective order allows the court to "forbid[] the disclosure or discovery" or to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(A), (D).  The factors going to whether "good cause" exists for a protective order include whether the discovery request seeks irrelevant or unnecessary materials, is unreasonable, or was issued for an improper purpose.  *See Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2018 WL 10068639, at *2 (W.D. Va. Sept. 10, 2018) (Hoppe, M.J.) (quotation marks omitted) ("[A] protective order may issue under Rule 26(c) if . . . the information sought is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad discovery."); *see also* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2036 (3d ed. Apr. 2020) ("even very slight inconvenience may be unreasonable [thus justifying a protective order] if there is no occasion for the inquiry and

it cannot benefit the party making it"); *ESG Capital Partners LP v. Stratos*, 2014 WL 12588637, at \*1 (C.D. Cal. May 16, 2014) (quashing "subpoenas [that] were . . . served for an improper purpose").

## II.   Taking the "Extreme Step" of Allowing Discovery from the Court's Law Clerks Would be Exceedingly Burdensome and Totally Unnecessary

"[L]aw clerk[s] . . . [are] equally protected" by the same "[l]egal and policy considerations [that] prevent a judge who is presiding over a trial from being called as a witness or subjected to discovery." *Wolters Kluwer Fin. Servs. Inc. v. Scivantage, et al.*, 525 F. Supp.2d 448, 533 (S.D.N.Y. 2007) (quotation marks omitted), *rev'd in part on irrelevant grounds*, 564 F.3d 110 (2d Cir. 2010); *see also Terrazas v. Slagle*, 142 F.R.D. 136, 139 (W.D. Tex. 1992) (quashing deposition subpoenas served on law clerks in light of the "sanctity of communications between the judges and their law clerks").   Generally, because a law clerk is "privy to the thought processes employed by [the] Judge . . . "[a] deposition of [a judge's] law clerk . . . would be unreasonably burdensome." *In re Hubbard*, No. 12-cv-1975, 2012 WL 5286927, at \*4 (S.D. Cal. Oct. 24, 2012). That burden is hard to overstate: "[p]ublic inquiries by the litigants as to the internal operations and communications of the Court will, not may, destroy the integrity of our present legal system." *Wolters Kluwer Fin. Servs. Inc.*, 525 F. Supp 2d. at 534 n.316 (quoting *Terrazas v. Slagle*, 142 F.R.D. 136, 139 (W.D. Tex. 1992)).   Consequently, "[o]ral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a strong showing of bad faith or improper behavior." *Cobell v. Norton*, 237 F. Supp. 2d 71, 100 (D.D.C. 2003) (quoting *U.S. v. Ianniello*, 740 F. Supp. 171, 187 (S.D.N.Y. 1990)).   In sum, "authorizing discovery of judicial officers," including law clerks, is an "extreme step."   *Id.*

This is not one of the rare cases in which depositions of the Court's law clerks would be appropriate.   To start, it is apparent that were the Law Clerks' depositions to go forward as noticed,

it would entail a deep invasion into the Court's inner operations.   Specifically, Defendants command the Law Clerks to produce at their depositions, "[a]ll documents and communications concerning any rally or event on August 11 or August 12, 2017 in Charlottesville, Virginia," as well as "[a]ll documents concerning and all communications concerning or with any Plaintiff or Defendant in this litigation from January 1, 2017, to the present."  Exs. 3, 4.  These requests, on their face, would require the Law Clerks to produce documents and communications between and among themselves and the Court regarding the deliberative process.  For example, they would require the Law Clerks to produce any communication they had with the Court regarding either this matter or *Kessler*—which of course both "concern any rally or event on August 11 or 12, 2017 in Charlottesville, Virginia" and certainly "concern . . . any Plaintiff or Defendant in this litigation."[7]  Exs. 3, 4.

Thus, allowing the discovery to proceed would be an "extreme step," *Cobell*, 237 F. Supp. 2d at 100, yet there is absolutely no justification for such a measure here.  For one, the Defendants have made no showing, let alone a strong one, of any "bad faith or improper behavior" on the part of the Law Clerks.  *Id*.  Further, deposing the Law Clerks would be a fruitless exercise.  *See Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 983 (4th Cir. 1985) (parties may "seek a protective order . . . to avoid the 'undue burden or expense . . . associated with unnecessary discovery" (quoting Fed. R. Civ. P. 26(c)).  Most obviously, the Court's order explaining that the Law Clerks have not worked, and will not work, on this case, means that any effort by Defendants to seek testimony further to the Law Clerks' recusal would be another "push[] on an open door."  Dkt. 771 at 3.

---

[7] The Law Clerk Subpoenas would be particularly invasive as to materials related to *Kessler*.  As the Court recognized, unlike here, the Law Clerks have assisted the Court in that matter, *see* No. 19-cv-00044, Dkt. 61 at 2, meaning that the Law Clerk Subpoenas demand communications between the Law Clerks and the Court regarding the Court's substantive work on that matter.

Nor can Defendants credibly justify deposing the Law Clerks on the ground that their testimony might be relevant to the potential disqualification of *the Court*.[8]  Most fundamentally, the Court's order on the Moving Defendants' recusal motion has also undercut any basis to disqualify the Court on the basis of the Law Clerk's supposed conflict.  As the Defendants have themselves acknowledged—and with which the Court agreed—"[i]n the <u>Fourth Circuit</u>, a 'clerk's conflict of interest requires disqualification of [the] clerk not [the] judge.'"  Dkt. 687 at 2 (quoting *Detemple*, 162 F.3d at 286 n.2).

To be sure, a law clerk's conflict can be imputed to the Court in rare instances, but only in extreme circumstances not even remotely present here.  *See Doe v. Cabrera*, 134 F. Supp.3d 439, 448-50 (D.D.C. 2015) (collecting examples and then noting a "common theme": "any bias of a law clerk is imputed to the Court only when the clerk substantively participates in a case where that bias can potentially manifest itself"); *cf. Hall v. Small Bus. Ass'n*, 695 F.2d 175, 176-77 (5th Cir. 1983) (recusal of the court required where current law clerk was actively handling a class action discrimination case before the court even though she was not only a member of the plaintiffs' class and had accepted post-clerkship employment with plaintiffs' counsel's firm, but she also had previously been employed by the defendant and had resigned due to allegations of discrimination).  Here, because the Court has explained in its June 18th order that the Law Clerks

---

[8] For one, any subsequent effort to recuse the Court on the basis of the Law Clerks' conduct would be untimely. "Recusal motions must be filed by the earliest moment after the petitioner becomes aware of the applicable facts supporting disqualification." *U.S. v. Blackwell*, No. 34-cr-00040, 2008 WL 4222026, at *2 (W.D. Va. Sept. 15, 2008) (Moon, J.) (citing *Satterfield v. Edenton-Chowan Bd. of Ed.*, 530 F.2d 567, 574-75 (4th Cir. 1975)); *see also Schurz Comm'cns, Inc. v. F.C.C.*, 982 F.2d 1057, 1060 (7th Cir. 1992) (Posner, J.) ("Litigants cannot take the heads-I-win-tails-you-lose position of waiting to see whether they win and if they lose moving to disqualify a judge who voted against them"). Indeed, in *Blackwell*, Your Honor collected authority for the proposition that "courts may dismiss untimely recusal motions" where they were brought four months, two months, seven weeks, and even twelve days too late. 2008 WL 422026, at *2. Here, the Defendants knew at least by February 26, 2020, *i.e.*, more than four months ago, that the Law Clerks had some previous interaction with Sines and that Lefebvre was a "possible MATERIAL WITNESS," but they have never sought the Court's recusal. Ex. 1. *See also* Dkt. 771 at 3 (the Court noting that the Moving Defendants did "not ask for any relief that is different than the status quo").

have done no work on this case, the Law Clerks' supposed conflict cannot be imputed to the Court. On these facts, no further inquiry is required, and invasive discovery on the issue should not be allowed.

*Doe v. Cabrera* demonstrates this point. There, the court's law clerk had a close relationship with two attorneys at the firm representing the defendant in a case before her judge. One, an associate who had appeared in the case, became a friend to the clerk after serving as her personal attorney during her clerkship tenure and the other was her father, a partner. The conflict centered on a series of improper text messages that the clerk sent to the two attorneys on the same day that the judge issued the defendant a favorable ruling. Specifically, before the ruling was issued, the clerk texted the associate "stating that he was going to 'owe' her an alcoholic beverage." *Id.* at 444. And then, after the ruling came out (at 3:34 p.m.), she texted the associate again stating that "as of 3:34 [p.m.] today," he "owe[d] [her] a beer [(or wine!)]." *Id.* The clerk also sent a similar message to her father. When the plaintiffs learned of these text messages, they quickly moved to recuse the judge and subsequently sought discovery from the clerk.

Despite the obvious misconduct raising an issue of a perceived law clerk impartiality, however, the *Doe* court nevertheless denied the plaintiffs' recusal motion. The judge found no reason to disqualify himself because, like here, he had walled off the clerk from all cases involving the defendant's firm, meaning that the clerk had no role working on the case (her text messages notwithstanding). *See id.* at 448 (the clerk's "possible bias never had an opportunity to impact the case, as the Court screened her from working on it"). More to the point, the court also rejected the plaintiffs' attempts to get discovery from the clerk because, the court concluded, it had sufficiently shown why there was no conflict.[9] *Id.* at 456-57 ("discovery is unnecessary, as the Court is

---

[9] To be sure, in a subsequent ruling by a different judge in the same case, the Court concluded that the previous ruling barring discovery was "dicta." *Doe v. Cabrera*, 139 F. Supp.3d 472, 478 (D.D.C. Oct. 20, 2015). Nevertheless, that

confident that Law Clerk I did nothing that influenced the Court or Law Clerk II [the clerk that worked on the case] on any substantive matters concerning the case"). Indeed, citing nine different cases from around the country, the court concluded that '[i]n similar circumstances, courts . . . have denied discovery." *Id.* at 456; *see also Terrazas*, 142 F.R.D. at 139 ("deposing the law clerks will not achieve the stated purpose of aiding counsel in reversing the Court's orders based on improper decisionmaking by the Court," because, "[t]he judges, with full knowledge of the facts, have already determined there is no basis to require their recusal").

Here, the Court's careful consideration of the potential conflict, and explanation on the public record that any conceivable appearance of bias was obviated in full by scrupulously walling off the Law Clerks from this matter from the start, obviates any need for discovery from the Law Clerks.

## III.   Lefebvre's Role as a Potential Fact Witness Would be an Insufficient—and Plainly Pretextual—Basis for Deposing the Law Clerks

As the Court acknowledged, the Defendants referred in passing to an "alternative argument" for the Law Clerks' recusal based on the fact that Lefebvre supposedly "saw and provided shelter to Ms. Sines from the violence of the Unite the Right rally, and thus is an alleged 'material witness.'" Dkt. 771 at 3 n.1. The Court should lend no credence, however, to any argument that discovery remains proper as to the Law Clerks in light of Lefebvre's supposed interaction with Sines at UTR, for three reasons.

---

judge ultimately concluded that the earlier decision was correct in precluding the substantial majority of the requested discovery—and indeed quashed it. *Id.* It did conclude, however, that in light of the "serious issues involving the conduct of a judicial law clerk," that the law clerk—whose tenure in chambers had then ended, *see* 134 F. Supp.3d at 442, n.2—should submit for *in camera* review the entirety of her communications with the defense counsel's firm. 139 F. Supp.3d at 479.

*First*, the issue has no bearing whatsoever on the subpoena issued to Marshall given that the Defendants have identified no basis to believe that he might be a fact witness.  Proceeding with Marshall's deposition would thus be entirely without basis.

*Second*, even if Lefebvre had some contact with Sines during the UTR event, that marginal relevance to the case would in no way overcome the burdens associated with deposing the Court's sitting law clerk, especially where there are myriad other available sources for the relevant information.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit . . . discovery . . . [if it] can be obtained from some other source that is more convenient, less burdensome, or less expensive.").  Indeed, there are several other potentially far more fruitful—and far less burdensome—avenues that are available to the Defendants if they are truly interested in developing the factual record as to Sines' actions during UTR.  For one, the Defendants could seek (but have not sought) discovery from any of the seven individuals that Sines identified in her responses to interrogatories that she asserted have first-hand knowledge of the facts and damages alleged in the complaint as they relate to Sines.  Given Lefebvre's "marginal relevance," the "potential harm occasioned by" Defendants' requests to depose the Law Clerks should strongly "outweigh the ordinary presumption of broad discovery."  *Bonumose*, No. 3:17-cv-00033, 2018 WL 10068639, at *2.

*Finally*, and relatedly, the Court need not venture down this rabbit hole at all because any contention that Defendants' goal with respect to the Law Clerks' depositions is to develop the factual record in this case would plainly be contrived.  *See ESG Capital Partners LP*, No. 2:13-cv-01639, 2014 WL 12588637, at *2 (upholding magistrate judge's ruling quashing a subpoena and issuing a protective order barring third-party discovery because, even though the subpoenas sought some minimally relevant information, it was clear that the "subpoenas were . . . served for an improper purpose").  Kessler has acknowledged for months that he aims to rely on what he

learned about the Law Clerks—*including* Lefebvre's status as a potential fact witness—solely to seek the Court's recusal, both in this case and in *Kessler*.    Defendants have consistently represented that the Law Clerks' previous interactions with Sines—both at UTR and otherwise—raises an issue as to the Court's impartiality. Dkt. 687; *see also* Exs. 1, 5.  Specifically, Kessler's initial reaction was to contend that this "damaging evidence of bias" requires the "recusal of Norman Moon," Ex. 1, and Kessler has just recently confirmed that his "[n]ext step" with the information as to the Law Clerks will be to argue "courtroom bias" before the Fourth Circuit in the appeal of Your Honor's decision in *Kessler*, Ex. 5, an entirely separate litigation.  *See ESG Capital Partners*, No. 2:13-cv-01639, 2014 WL 12588637, at *4 (upholding magistrate judge's quashing of a subpoena where plaintiff's "real purpose was to seek discovery against [non-parties] for potential later litigation").  And the Defendants' effort to depose the Law Clerks—efforts which were initiated before the Court ruled on the motion to recuse them—seems plainly aimed at that goal alone.  *See* Exs. 1, 5.  But that goal is not attainable, *see supra* at 10-12, and thus to allow Defendants to proceed with depositions of the Law Clerks on the sole ground that Lefebvre (again, not Marshall) is a supposed fact witness would be to endorse an invasive, unnecessary, and pretextual fishing expedition inside the Court's chambers.

To be clear, deposing the Law Clerks on the ground that Lefebvre is a supposed fact witness would be nothing but pretextual.  Throughout discovery, the Defendants have chosen not to subpoena *a single* other purported fact witnesses that, like Lefebvre, may have come into contact with any of the plaintiffs during the weekend of UTR.  Again, they sought no discovery from any of the myriad individuals that Sines identified to the Defendants in discovery responses *more than two years ago* as having information relevant to Sines' allegations of what occurred at UTR.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).  Moreover, the Defendants have sought no discovery from anyone

else identified in the UVA.edu article in which Lefebvre was mentioned, even though others feature much more prominently than Lefebvre and at least one interacted with Sines much more closely during UTR. *See id.*[10]

That Kessler and his co-Defendants reviewed the UVA.edu article in February 2020 and chose to seek discovery from *Lefebvre*—who is barely referenced in the article yet just happens to be the Court's law clerk—speaks volumes. As does Defendants outright ignoring the individuals identified in Sines' interrogatory responses. Finally, that Defendants subpoenaed Lefebvre together with Marshall—indeed, that they seek to depose the two on the very same day—plainly shows that the Defendants' decision to depose Lefebvre is wholly tied to, if anything, his position inside the Court's chambers. Any attempt to justify deposing Lefebvre as a purported fact witness should be seen for what it is: a backdoor and improper attempt to depose the Court's law clerks to fish for any evidence that this Court has acted impartially (either here or in *Kessler*). The Court should not condone such an abusive, pretextual, and unnecessary intrusion into its chambers.

## CONCLUSION

In light of the foregoing, this Court should prohibit the forthcoming depositions of the Law Clerks, either under Rule 45 or Rule 26.[11]

Dated: July 7, 2020                    Respectfully submitted,

                                       */s/ Robert T. Cahill*

---

[10] For example, Defendants conspicuously chose not to seek any discovery from Leanne Chia, Sines' roommate and the other subject of the UVA.edu article (who was also identified in Sines' interrogatory responses). This is even though, per the article, Sines and Chia were together at all relevant times on both Friday and Saturday during the weekend of UTR and both went to Lefebvre's house together after they were nearly hit by Fields' car. *See* https://www.law.virginia.edu/news/201708/standing-charlottesville.

[11] At the very least, the Court should limit any questioning of the Law Clerks to events unrelated and occurring prior to their clerkships.

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
bwhite@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
jphillips@bsfllp.com
wisaacson@bsfllp.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro Drive, Suite 1150
McLean, VA 22102
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

I further hereby certify that on July 7, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

*/s/ Robert T. Cahill*
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*