UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO THIRD PARTY JOHN HILL AND DENISE LUNSFORD'S REQUEST FOR COST-SHIFTING**

## INTRODUCTION

Third parties John Hill and Denise Lunsford, following the Court's direction, have demanded Plaintiffs pay them for complying with Plaintiffs' subpoenas *duces tecum*. The Court granted Hill and Lunsford's original request before Plaintiffs had the opportunity to file a written response, but the Court has allowed Plaintiffs to file an objection to that preliminary ruling. As detailed below, the facts and law show that it would be extremely inequitable, unfair, and contrary to the Federal Rules of Civil Procedure to require Plaintiffs to pay Hill and Lunsford for their compliance.

Despite multiple orders requiring them to produce documents responsive to Plaintiffs' subpoenas, Hill and Lunsford are still withholding some responsive, non-privileged documents. They have rejected or ignored Plaintiffs' efforts to assist with and lessen the burden of reviewing and producing documents. They have had other non-parties review documents for them. They have spent weeks objecting to producing documents they received from the Commonwealth's Attorney on the grounds that those documents included documents the Commonwealth received from the federal government – an issue Plaintiffs had to litigate – which, it turns out, was not true. And the basis of their alleged extreme hardship in complying with the subpoenas – *i.e.*, having to shut down their law firms for several weeks and being unable to pay their mortgages – turned out to be overblown and unnecessary. Despite this, Lunsford demands Plaintiffs pay her a windfall of nearly $10,000, when her only out-of-pocket expenses were $430.13.[1]

Moreover, Plaintiffs seek evidence from Lunsford and Hill because their client, James Fields, refuses to provide it, even though the Court ordered him to produce documents and held that responsive documents held by his criminal defense attorneys are within his "control" for the

---

[1] Hill has not yet claimed any specific amount for his compliance.

purposes of Rule 34.  Dkt. 759, p. 16.  If anyone should pay Hill and Lunsford for having to comply with the Subpoenas, it should be Fields, whose refusal to comply with discovery necessitated the Subpoenas in the first place.

In short, there is no basis to make Plaintiffs pay for Hill and Lunsford to comply with the subpoenas, and the Court should not reward Hill and Lunsford with a cost-shifting order for their six-month (and continuing) failure to produce documents, repeated baseless motions (each of which requires Plaintiffs to spend the time, effort and cost of preparing a response), and refusal to take steps to lessen whatever minimal burden they had to comply with the subpoenas.

## FACTS

### A.  The Court Ordered Hill and Lunsford (Repeatedly) to Produce Documents Responsive to Plaintiffs' Subpoenas.

Hill and Lunsford are criminal defense attorneys who represent defendant James Fields in connection with his criminal cases in the Circuit Court for the City of Charlottesville.  On January 27, 2020, Plaintiffs served John Hill and Denise Lunsford with subpoenas to produce documents (the "Subpoenas").

On February 10, 2020, Hill and Lunsford filed largely identical motions to quash the Subpoenas.  Dkts. 647-48.

On March 9, 2020, Plaintiffs filed an opposition to the motions to quash.  Dkt. 672.

On June 12, 2020, the Court denied the motions to quash, and ordered Hill and Lunsford to produce responsive documents to Plaintiffs.[2]  Dkt. 765.

On June 18, 2020, Hill and Lunsford filed motions to reconsider the Court's June 12 Order.  Dkt. 770.  Rather than raise permissible grounds for a motion to reconsider, such as a

---

[2] The Court denied Mr. Hill's motion to quash in its entirety, and denied Ms. Lunsford's motion to quash except as to documents she received directly from the U.S. Attorney.

2

change in law or newly discovered evidence that was not previously available, Hill and Lunsford asserted a litany of arguments – virtually all of which were baseless or untimely objections.[3]

On June 25, 2020 the Court held a "lengthy hearing" on the motion to reconsider, during which plaintiff's counsel addressed Hill and Lunsford's motions. *See* Dkt. 783.

The Court held the motions to reconsider "are the quintessential second bite at the apple." Dkt. 783, p. 3. As for Hill and Lunsford's arguments, the Court rejected them, explaining: "I don't think that any of those arguments provide any reason for me to reconsider." Dkt. 793 ("Tr.") at 31:1-3. The Court rejected also Hill and Lunsford's arguments concerning over breadth, burden, and that responsive documents might be protected by HIPAA:

> Well, but, Ms. Lunsford, I mean, why on earth are you asserting that now? You know, your motion was filed in February, and I -- I have to agree with Mr. Siegel that almost all this is entirely inappropriate to be raising it in a motion to reconsider and then now, in this hearing, because just about every argument that you're asserting you knew of at the time, or at least you should have known of at the time, and it is not newly discovered. You know, it really is a quintessential second bite at the apple.

Tr. at 35:22-36:5.

Hill and Lunsford even presented years-old evidence they could have presented when they briefed their motions to quash in February 2020. Just "minutes before" the hearing, Hill and Lunsford filed with the Court a copy of an Agreed Motion and Order for Discovery, a 2017 order from Judge Downer of the Charlottesville General District Court purporting to prohibit Hill and Lunsford from producing certain documents to Plaintiffs. Dkt. 783, p. 2. The Court ruled that Hill and Lunsford "have not offered any good reason for their failure to mention Judge Downer's Order in their motions to quash – much less in their motion asking the Court to reconsider its

---

[3] They claimed, for example, they never had an opportunity to brief the motions to quash. Dkt. 770, p. 3-4. The Court explained that was incorrect: "There was an opposition filed to your motion, and under the rules you have an opportunity to reply. Y'all didn't reply." Tr. at 30:19-21.

3

Case 3:17-cv-00072-NKM-JCH   Document 801   Filed 07/10/20   Page 5 of 19   Pageid#: 11771

decision denying those motions." Dkt. 783, pp. 3-4. The Court ordered Hill and Lunsford to enter into an order with the Commonwealth Attorney, lifting the prohibition in Judge Downer's order, and directing them (again) to produce responsive documents.

### B. The Court's Ruling on Cost-Shifting.

Hill and Lunsford also raised for the first time the prospect of cost-shifting, telling the Court compliance would interfere with their "ability to pay [their] mortgage and rent" and would require they "shut down our practices for the next two weeks." Tr. at 40:17, 47:4-5.

Apparently in reliance on those representations, the Court ordered Plaintiffs to pay Hill and Lunsford's "time and reasonable expenses related to producing the requested materials," but allowed Plaintiffs to file a motion asking the Court to reconsider that ruling within 14 days. Dkt. 783, pp. 4-5.[4]

### C. Hill and Lunsford's Efforts to Comply with the Subpoena.

As detailed below, the facts since the June 25 hearing show Hill and Lunsford (a) created their own obstacles to producing documents, which had no basis in fact, (b) continue to object to producing documents the Court told them to produce, which will likely require Plaintiffs to engage in additional motions practice, (c) needed to perform only a minimal review of paper documents, (d) had the Commonwealth Attorney (not Lunsford and Hill) review documents, and (e) ignored Plaintiffs' attempts to lessen and ease any remaining burden on Hill and Lunsford.

---

[4] While the Court wrote plaintiffs could "ask the Court to reconsider" its ruling, the Court should not treat this motion as a motion to reconsider or apply the legal standard that applies to motions to reconsider, because plaintiffs never had the opportunity to file a written response to Hill and Lunsford's request for cost-shifting in the first instance. Rather, Hill and Lunsford filed their motion to reconsider on June 18, and the Court held a hearing on June 25, which was before Plaintiffs' response was due. Accordingly, plaintiffs submit that the Court should treat this as an opposition to Hill and Lunsford's request for cost-shifting rather than a motion to reconsider.

1. **Lunsford and Hill *Created* Obstacles to their Document Production.**

Hill and Lunsford, acting on their own accord, created issues they claimed had to be resolved by the Court, but which had no basis in fact. For example, the Court ordered Hill and Lunsford to produce all documents they received from the Commonwealth of Virginia. Dkt. 789, p. 4. The Court made no distinction between documents the Commonwealth had obtained on its own, or documents the Commonwealth had obtained from the federal government. *Id*. Rather, the ruling was simple: If the Commonwealth provided it to Hill and Lunsford, then Hill and Lunsford had to produce it. *Id.*

Despite this, Hill and Lunsford chose to involve the U.S. Attorney's Office, and spent a huge amount of time talking with the federal government to raise the *possibility* that some of the documents Hill and Lunsford received from the Commonwealth were originally obtained by the federal government. *Exhibit 1*. They then argued about this extensively at the June 25 hearing, claiming they should not have to turn over documents the federal government gave to the Commonwealth, and that the Commonwealth then gave to Hill and Lunsford. The Court again rejected their argument, explaining "My view is if it comes from the Commonwealth's Attorney's office, that's not the U.S. Attorney's Office." Tr. at 51:11-13.

As it turns out, however, the Commonwealth *did not* provide Hill and Lunsford with documents from the federal government. On July 6, 2020, the Commonwealth's Attorney informed Plaintiffs, Hill, and Lunsford that none of the documents the Commonwealth provided to Hill and Lunsford came from the federal government. *Exhibit 2*.[5] The time and effort Hill and

---

[5] The only exception is a single document the Commonwealth inadvertently turned over the Hill and Lunsford, which plaintiffs agreed to address directly with the U.S. Attorney's office.

5

Lunsford spent raising this issue with the U.S. Attorney's Office, the Commonwealth's Attorney, Plaintiffs, and the Court was a complete waste of time.

Nevertheless, Lunsford demands Plaintiffs pay her for that time, even though it was an issue Hill and Lunsford created, it contradicted the Court's order, and – as the Commonwealth Attorney has now confirmed – was a baseless objection because the Commonwealth did not provide Hill and Lunsford with documents from the federal government in the first place.

### 2. Lunsford and Hill Needed to do a Minimal Document Review.

The Motion to reconsider detailed three categories of information Hill and Lunsford had to review. Each category required no, or very minimal, review.

*First*, Hill and Lunsford originally said there were four boxes of paper documents that needed to be searched. Dkt. 770, p. 7. The Court explained the review of those boxes would be minimal. Tr. at 31:12-14 ("[T]he four banker's boxes that you referred to, that's not going to require a real thorough privileged review for a number of reasons."). Lunsford then agreed two of the boxes would barely require any review because they were her notes and were all privileged, and there were really only two boxes "I would need to go through. And I suspect much of that is privileged." Tr. at 34:10-11.

*Second*, there is a hard drive and several thumb drives that contain documents Hill and Lunsford received from the Commonwealth's Attorney. Those documents are not privileged, so they required no review. Nevertheless, those documents were reviewed by the *Commonwealth's Attorney* – not Lunsford and Hill – who agreed to go to Lunsford's office and review them. There was no need for Lunsford and Hill to spend time reviewing them.

*Third*, Hill and Lunsford claimed to have a large volume of electronic documents. But, they failed to take advantage of Plaintiffs' expertise in electronic discovery, which could have

6

minimized the effort and time required to review those documents.  At the June 25 hearing, Lunsford explained "I'm not computer literate," and so she was "concerned about the amount of time that it will take" to review her electronic documents.  Tr. at 32:20, 40:16.  Plaintiffs' counsel immediately offered their extensive expertise in electronic discovery to work with her on ways to narrow the documents she had to review and lessen the time and cost involved:

> Your Honor, one of the things I do quite a bit in my practice is electronic discovery.  I'm happy to work with Ms.  Lunsford and make suggestions on ways she can search through her e-mail to make it less burdensome.  I'm happy to do that, Your Honor.

Tr. at 42:14-19.  The Court agreed, and encouraged Lunsford to take Plaintiffs' counsel up on that offer:

> I would encourage [you] to take up Mr. Siegel's offer about how to -- either how to search or, you know, whether there can be, you know, some -- some sort of a third-party vendor who could harvest the e-mails; but do that.

Tr. at 45:19-22.  Accordingly, the next day, Plaintiffs' counsel emailed both Hill and Lunsford, offering electronic discovery expertise to lessen the burden and cost of their search and review of electronic documents:

> As I mentioned during the hearing yesterday, we are available to coordinate with you and offer advice about different methods and techniques to search for electronic documents, which might make it easier and faster for you to do so.  If you'd like to discuss, please let me know some times that work for you.

*Exhibit 3*.

> Neither Hill nor Lunsford took us up on that offer, and never responded to that email.

### 3. Hill and Lunsford Largely Ignored Plaintiffs' Efforts to Narrow the Subpoena.

Hill and Lunsford never met and conferred with Plaintiffs on their motions to quash.  They also never met and conferred with Plaintiffs on their motions to reconsider.  They never

7

suggested ways to narrow the subpoena, identified easily-produced sub-categories of documents, or took any other substantial effort to lessen the burden of their compliance.

Conversely, Plaintiffs have been continuously trying to narrow the scope of documents Hill and Lunsford would be required to review and/or produce – often while Hill and Lunsford ignored or contradicted these efforts. For example, the subpoenas each state they do not seek documents covered by the attorney-client privilege or work product doctrine. Dkt. 765, p. 6. Yet Hill and Lunsford ignored that, and argued the subpoenas seek attorney-client privileged documents – an argument the Court quickly and correctly rejected. Dkt. 765, pp. 5-6 (explaining Hill and Lunsford argued the subpoenas contain "'no exception' for attorney-client privileged communications," but then pointing out "Plaintiffs' subpoenas explicitly instructed defense counsel *not to produce* documents protected by the attorney-client privilege or the work product doctrine."). Similarly, when Hill and Lunsford argued in their motions to quash that they did not want to produce certain jury information, the Court rejected that argument, noting Plaintiffs agreed Hill and Lunsford did not have to produce those documents. Dkt. 765, p. 7 (noting Hill and Lunsford argued the subpoenas seek "federal grand jury materials [and], petit juror information," but that "Plaintiffs respond that their subpoenas do not request any information about jurors . . . ."). Yet, Hill and Lunsford then filed their motions to reconsider, in which they again argued about "grand jury testimony" and "juror questionnaires" being responsive – ignoring that Plaintiffs and the Court already explained those documents were *not* responsive. *E.g.*, Dkt. 770, p. 9. Plaintiffs summarized these efforts during the June 25 hearing:

> You know, not once have Ms. Lunsford and Mr. Hill met and conferred before any of their motions. But we have told them -- you know, Mr. Hill sent me a letter yesterday about certain categories, and I responded to him this morning and said, you know, some of these categories, you don't have to even review. He asked me, for example, you know, pleadings that were filed, did he have to produce all the pleadings that were filed. We said no, you don't have to produce

8

those. Other categories we've told him multiple times, like the jury questionnaires, jury information, no, don't produce that. Let's narrow the scope, let's make it easier. You don't have to produce those pleadings; that's not what we're looking for. Don't produce the jury questionnaires.

Things that they mentioned in their brief, like communications with the court clerk or communications with the federal public defenders, obviously, again, we're not looking for public documents. The e-mails, you know, to the clerk filing things, we don't need that. We don't have to review that kind of stuff. We're trying to narrow this as much as we possibly can.

Tr. at 41:11-42:6.

### 4. Lunsford Refuses to Produce Certain Documents, Which May Require Plaintiffs to Continue to Litigate These Subpoenas.

At the June 25 hearing, Lunsford asserted that certain documents about Mr. Fields, such as his school records and military records, where somehow "work product," and that his medical records were exempt from discovery by HIPAA – a position the Court rightly rejected:

> THE COURT: Did you create the documents?
>
> MS. LUNSFORD: I didn't create them. I requested them from third parties. They're protected by --
>
> THE COURT: Well, I don't see how they would be work-product. And there is a protective order in this case that I think would protect the medical records.

Tr. at 35:9-14, 48:20-21 ("I really have trouble seeing how that can be work-product.").

Lunsford, however, has refused to produce those documents, and continues to assert they are somehow protected from discovery by "HIPAA" or some unidentified "federal statute or regulation." *Exhibit 4*. Accordingly, it appears Lunsford is again giving Plaintiffs no choice but to again spend the time necessary to draft, file, and argue yet another motion to get documents from Lunsford that are responsive to the Subpoenas.

9

### D. Lunsford's Invoice.

On July 1, 2020, Lunsford submitted an invoice to Plaintiffs for $9,915 for 31.9 hours to respond to the subpoenas. *Exhibit 1*. That includes 28.4 of Lunsford's time billed at $350 per hour, 3.5 hours for an intern billed at $20 per hour, and $430.13 paid to Staples for scanning. *Id*.

Lunsford charged $350 per hour for all her tasks, including administrative tasks like "copy electronic files and paper files for production" and "upload electronic files," despite that she has an intern who could have done those administrative tasks for $20 per hour. *Id*.

The invoice largely does not identify what time Lunsford spent working on what task, includes time Hill and Lunsford spent talking to each other, lists unidentified conference calls, and includes time spent communicating with the U.S. Attorney's office and Commonwealth's Attorney about issues of Hill and Lunsford's own making that turned out to be irrelevant (*supra*, pp. 5-6). For example, one entry reads: "Review and copy electronic files and paper files for production, comm with Hill re: production, communication with counsel re: CW v. AUSA documents, conf call[.]" *Exhibit 1*.

Hill as not submitted any invoice to Plaintiffs.

## ARGUMENT

### I. Legal Standard.

Third parties are entitled to reimbursement for costs of complying with a subpoena only when those costs constitute a "significant expense." Fed. R. Civ. P. 45(d)(2)(B)(ii).

Typically, when this Court is faced with "costly discovery disputes," it has "shifted the costs of production (but not of privilege review), limited the scope of the requested discovery, and ordered production under clawback provisions of a protective order." *Jeune v. Westport Axle Corp.*, 2016 WL 1430065, at *2 (W.D. Va. 2016). This is because "courts in the Western

10

District of Virginia and elsewhere have 'found it untenable for a party to insist on individually reviewing all documents for privilege and responsiveness rather than producing documents under a protective order with a clawback provision.'" *Id.* (citing cases).

When deciding whether to award costs for a third party's compliance with a subpoena, the Court will consider "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty's financial status allows it to more easily bear the costs than the requesting party; and (3) whether the litigation is of public importance." *Id.* Here, these factors show cost-shifting is not warranted.

### A. Hill and Lunsford Have an Interest in the Outcome of the Case.

"When the nonparty producing materials has a potential interest in the underlying litigation, courts have weighed that interest against shifting costs." *Id.* An "interested party" is a party who "has a recognizable stake (and therefore standing) in a matter." *Id.* In particular, this Court held that a nonparty was an interested party when it had a "desire to protect reputational interests, along with [the third party's] interests in avoiding future litigation." *Bell Inc. v. GE Lighting, LLC*, 2014 WL 1630754, at *14 (W.D. Va. 2014) (Moon, J.).

Here, Hill and Lunsford currently represent James Fields in his criminal proceedings and pending appeal of his criminal convictions. As his attorneys, they obviously have an interest in limiting Fields' legal liability in any context, and not disclosing documents that could hurt his legal position, damage his credibility, or serve as evidence by an adverse party. Lunsford herself emphasized her interest in the case when arguing against disclosing the documents at the hearing on her Motion to Reconsider: "in addition to responding to this discovery and protect our client's interests, the person who is still our client . . . ." Tr. at 29:18-20. Thus, this factor weighs against shifting costs. *Jeune*, 2016 WL 1430065, at *2; *In re First Am. Corp.*, 184 F.R.D. 234,

11

242 (S.D.N.Y. 1998) (when interested parties are subpoenaed, "expenses should not be awarded").

### B.   Hill and Lunsford Can Bear the Costs of Compliance.

Hill and Lunsford are two successful attorneys who have each been practicing law for 30 years.  Hill is a partner at PoindexterHill, P.C., representing businesses and individuals in criminal cases, including capital offenses, personal injury, commercial real estate transactions, business entity formation, estate planning, and civil litigation.  He is past president of the Blue Ridge Area Food Bank, Waynesboro Jaycees, and the Augusta County Bar Association; a past board member of the Waynesboro Family YMCA and the LHRC for the Commonwealth Center for Children and Adolescents; and a current board member of the Augusta County SPCA and the ARC of Augusta.

Lunsford operates her own law firm, Denise Y. Lunsford, LLC.  She has practiced criminal law extensively both in private practice and as the Albemarle County Commonwealth's Attorney from 2007 to 2015.  She co-founded the Virginia Mitigation Project and worked with attorneys to develop mitigation theories in capital cases, and serves on the Bench-Bar Relations Committee of the Charlottesville Albemarle Bar Association.

Hill and Lunsford presented no evidence that they or their law practices would be harmed by complying with the Subpoenas.  *Jeune*, 2016 WL 1430065, at *2 (denying cost-shifting because third party "provided the court with no evidence, and in fact did not know, the extent to which complying with the subpoena would affect its business, how long it would take to comply or the likely cost of compliance").  Their conclusory assertions that compliance would harm their "ability to pay [their] mortgage and rent," and would require they "shut down our practices for the next two weeks," turned out to not true.  Lunsford billed 28.4 hours conducting this review.

12

*Exhibit 1*. Most of that time occurred over the course of just a handful of days, and she completed nearly a third of that on the weekend of June 27-28. Lunsford has not shown, much less proven with evidence, that less than a week's worth of work – much of which could have been done by an intern – ruined her solo practice. Nor did it ruin her financially. Indeed, her only out-of-pocket cost was $430.13 to Staples. *Id.*

Plaintiffs do not know what time Hill spent, but it clearly was not a substantial financial detriment that caused him to not pay his mortgage or rent, because he has not even asked Plaintiffs for payment or sent them a billing statement.

And, even if compliance did impose a dire financial loss on Hill and Lunsford (it did not), this factor is not dispositive. Given strong showings of the other two factors, even a third-party's dire financial situations will not require cost shifting. *See Bell Inc.*, 2014 WL 1630754, at *2 (finding that despite a third party was in such a dire financial situation that it operated at a loss, the other two factors in the common law analysis weighed *against* shifting costs to the requesting party except for copying fees).

Accordingly, Hill and Lunsford can burden the minimal expense of complying with the Subpoenas, and this factor weighs against cost-shifting.

### C. This Litigation is of Public Importance.

This litigation is of public importance. It was brought against neo-Nazi and white supremacist individuals and organizations that conspired to plan and carry out violence at a well-publicized racist and anti-Semitic rally in Charlottesville, which culminated in a horrific vehicle attack in which James Fields killed one person and injured scores more. Defendants' conduct instilled fear in small Virginia town, which lingered well afterwards, and was widely circulated

13

on national news. Plaintiffs seek, among other things, injunctive relief to prevent defendants from such conduct in the future, as well as compensatory, statutory, and punitive damages.

Moreover, the public has an interest in ensuring that parties comply with their discovery obligations. Plaintiffs issued the subpoenas to Hill and Lunsford because Fields refused (and continues to refuse) to produce responsive documents. Any burden of compliance, therefore, should be borne by Fields, not Plaintiffs.

### D. Lunsford's Invoice is Excessive.

Lunsford asks to be paid $9,915.13. But that number is inflated and does not accurately represent the costs she incurred. Courts do not award attorney's fees or costs for administrative or ministerial tasks. *Chapman v. Astrue*, 2009 WL 3764009, at *1 (W.D. Va. 2009) ("Conversely, it is not proper to award a full attorney rate for activities that should more effectively be performed by nonlawyers. Moreover, purely clerical tasks are ordinarily a part of a law office's overhead and *should not be compensated for at all*.") (citations omitted) (emphasis added). Yet, Lunsford asks to be compensated at $350 per hour for ministerial tasks like "copy electronic files and paper files for production" and "upload electronic files," despite having a $20-per-hour intern who could have done that work. *Exhibit 1*. It would be improper to shift costs to Plaintiff for these tasks—let alone at Lunsford's attorney rate.

When deciding if cost shifting under Rule 45 is necessary, the Court will also consider whether the third party mitigated their costs. In particular, the Court will not award cost-shifting for a document-by-document review where, as here, the protective order has a clawback provision that prevents any waiver of privileged materials. *See Adair v. EQT Prod. Co.*, 2012 WL 2526982, at *5 (W.D. Va. 2012) ("[T]he magistrate judge was correct in her conclusion that cost-shifting was unnecessary in this case because those costs could be mitigated by the use of

14

electronic searching and production, together with the protections of the Protective and Clawback Orders."); *Jeune*, 2016 WL 1430065, at *2 ("[C]ourts in the Western District of Virginia and elsewhere have 'found it untenable for a party to insist on individually reviewing all documents for privilege and responsiveness rather than producing documents under a protective order with a clawback provision.'"). For that reason alone, the Court should not award costs for document review.

Moreover, Hill and Lunsford refused the Court's suggestion that she work with Plaintiffs' counsel, who are experts in e-discovery. Doing so would have allowed her to implement methods of streamlining her review and reduce the time took to review and produce documents – thereby reducing her costs.

**II.     Alternatively, the Court Should Reserve its Ruling on Cost-Shifting Until Hill and Lunsford Complete Their Document Production.**

In the unlikely event the Court nevertheless decides that Plaintiffs should pay some costs to Hill or Lunsford, it should reserve that ruling, because there are still a number of additional factors that could result in the Court ruling that such a payment would be improper. Hill and Lunsford have not yet completed their document production. And, they have continued to refuse to produce non-privileged and responsive documents – such as Fields' military and medical records – which the Court already explained are not protected from discovery. *Supra*, p. 9. This will likely require plaintiff to incur even more time and effort with additional motions practice (yet again) to litigate Hill and Lunsford's non-compliance with the Subpoenas – an issue that has been before the Court since early 2020, and in which the Court has already ruled (twice) that Hill and Lunsford must comply. And, the Plaintiffs have no idea of the amount of fees Hill might claim for whatever review efforts he supposedly undertook.

15

## CONCLUSION

For the foregoing reasons, the Court should deny Hill and Lunsford's request for cost-shifting and deny their motions.

Dated: July 10, 2020

Respectfully submitted,

*/s/ David E. Mills*
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
rtolentino@kaplanhecker.com

Robert T. Cahill (VSB 38562)
Scott W. Stemetzki (VSB 86246)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com
sstemetzki@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel:  (540) 983-7600
Fax:  (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro se*)
William A. Isaacson (*pro se*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com

Jessica E. Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
jphillips@bsfllp.com

Yotam Barkai (*pro hac vice*)
Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com
kcheng@bsfllp.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 10, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Defendants National Socialist Movement, Nationalist Front and Jeff Schoep*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party, Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

      I further hereby certify that on July 10, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Richard Spencer
richardbspencer@gmail.com

      */s/ David E. Mills*
      David E. Mills (*pro hac vice*)
      *Counsel for Plaintiffs*

229132290