**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUNIZ, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, JOHN DOE, and THOMAS
BAKER,

         Plaintiffs,

Vs.

  JASON KESSLER, et al.,

         Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

**PLAINTIFFS' MOTION TO COMPEL DOCUMENTS FROM THE**
**UNITED STATES DEPARTMENT OF JUSTICE**

## INTRODUCTION

At the Unite the Right rally on August 12, 2017, as part of a weekend of violence and intimidation based on racial and ethnic animus, James Fields drove his Dodge Challenger into a crowd of peaceful counter-protesters, killing one and injuring many others.  The Commonwealth's Attorney prosecuted and convicted Fields for murder in the Circuit Court for the City of Charlottesville, Virginia, and the U.S. Attorney's Office indicted and obtained a guilty plea from him in this Court.  Much of the evidence gathered against Fields -- for example, documents obtained from his phone and computer -- remains in the exclusive possession of the Department of Justice ("DOJ"), even though their case is now closed.

In this motion, Plaintiffs seek a very specific and limited set of documents in the sole possession of the DOJ that Plaintiffs need to adjudicate their claims against Fields for violating their civil rights.  Plaintiffs have followed federal regulations, worked with the U.S. Attorney's Office to limit their request to essential information, and attempted to obtain the evidence from every other possible source.  None of the evidence Plaintiffs seek constitutes grand jury material, violates the criminal investigative privilege, implicates confidential sources, or jeopardizes federal institutional concerns.  This unique case is limited to its own facts, and the material is plainly relevant and important to a significant pending civil rights case.  Nevertheless, the DOJ has summarily (without explanation) denied Plaintiffs' request.

Plaintiffs understand the government's apparent hesitation to release evidence it has collected in a criminal investigation.  But it cannot arbitrarily refuse to comply with a lawful request for documents, and this is neither a routine case nor a generalized request.  Plaintiffs seek specific evidence that is highly relevant to a pending civil rights case of paramount importance, the DOJ is the only source of that evidence, the DOJ no longer needs it, and the evidence no longer needs to remain locked away in federal files.  Plaintiffs also seek testimony limited to the

authentication of that evidence.  Plaintiffs have tried everything to avoid the need to file this motion, but there are no other avenues available.

## FACTS

### I.   THE FBI AND THE DOJ OBTAINED EVIDENCE FROM FIELDS DURING THE LAW ENFORCEMENT INVESTIGATION THAT IS RELEVANT TO THIS CASE.

On August 12, 2017, James Fields drove his Dodge Challenger into a crowd of pedestrians and peaceful counter-protestors, killing one person and injuring scores of others, including seven of the Plaintiffs.  *E.g.*, Docket Entry ("DE") 557, ¶¶ 241-259.  He was arrested and convicted of murder, aggravated malicious wounding, and malicious wounding in Virginia state court, and he later pled guilty to 29 federal hate crimes in this Court.  Fields is now serving life sentences in federal prison.

In its investigation of Fields, the FBI gathered evidence from Fields's social media accounts (including Twitter, Instagram, and Facebook), and confiscated Fields's electronic devices, including his cell phone and computer.  *Exhibit 1* at 2345:1-25; DE 686 at p. 2.  FBI Staff Operations Specialist Brant Meyer assisted in obtaining those documents, analyzed that data, and authenticated some of that evidence at Fields's state criminal trial.  *Exhibit 1* at 2343:4-2355:12.

### II.   PLAINTIFFS ISSUED THE DOJ A TOUHY REQUEST AND SUBPOENAS SEEKING DOCUMENTS AND TESTIMONY, BUT THE DOJ REFUSED TO COMPLY.

On September 16, 2019, Plaintiffs issued a document subpoena to U.S. Attorney Thomas Cullen seeking certain categories of documents in the possession, custody, or control of the DOJ concerning James Fields and other defendants.  *Exhibit 2* (the "Document Subpoena").  On the same day, Plaintiffs also issued a deposition subpoena to Meyer.  *Exhibit 3* (the "Meyer Subpoena," and together with the Document Subpoena, the "Subpoenas").  Plaintiffs expressly

2

offered to work with the DOJ to obtain the documents and testimony in the "most efficient and least disruptive way to handle this process." *Exhibit 4.*

As required by federal regulations, the Subpoenas were accompanied by a Touhy Request, which is a letter that outlined the case background, summarized the document requests and requested testimony, and explained why the information is relevant to this proceeding. *Exhibit 5.*

On September 25, 2019, the DOJ acknowledged service of the Subpoenas and Touhy Request, and requested more time to respond. *Exhibit 6.* Plaintiffs agreed, indicated their willingness to grant additional extensions, and offered to "discuss[] the scope of the subpoena." *Id.*

On October 16, 2019, the DOJ sent Plaintiffs a one-page letter stating:

> Your requests have been carefully reviewed by the appropriate Department of Justice officials in accordance with 28 C.F.R. §§ 16.21, et seq. As a result of that review, it was determined that it would not be in the best interests of the United States to provide the requested information in this case. Accordingly, by copy of this letter, this office and the FBI are respectfully declining to comply with the subpoenas.

*Exhibit 7* ("October Letter"). The DOJ provided Plaintiffs with no explanation or detail about why it was refusing to comply with the Subpoenas, who or how it evaluated the Subpoenas, or whether there were any alternative or narrowed categories of information it was willing to provide.

On October 31, 2019, counsel for Plaintiffs spoke to the DOJ about the reason it issued the October letter. *See Exhibit 8.* The DOJ again refused to provide any detail about why it would not comply with the Subpoenas but suggested it "might" reconsider its decision if there was specific and highly relevant information Plaintiffs could not obtain from other sources.

### III.    DESPITE MULTIPLE EFFORTS, PLAINTIFFS CANNOT OBTAIN THE INFORMATION FROM OTHER SOURCES.

After the DOJ's refusal, Plaintiffs continued to try to obtain the documents they need from other sources.  They subpoenaed documents from the City of Charlottesville for evidence they collected during their investigation.  *Exhibit 9*.  They subpoenaed the Commonwealth's Attorney's Office for documents.  *Exhibit 10*.  They subpoenaed social media companies, including Facebook, Twitter, and Instagram.  *Exhibits 11-13*.  They subpoenaed Fields's phone company.  *Exhibit 14*.  They subpoenaed Fields's criminal defense attorneys and had to engage in motions practice to get them to comply with the subpoenas.  *Exhibits 15, 16*; DE 765; DE 783. They requested the documents from Fields directly.  *Exhibit 17*.  When Fields refused to produce documents, Plaintiffs had to engage in more motions practice, and obtained an order from the Court compelling Fields to produce documents and authorize the social media companies to release his documents -- which he has continued to refuse to do.  DE 759.

Plaintiffs have been able to obtain a handful of these documents because, for example, a few of them were used as exhibits in Fields's criminal trial.  They show Fields's electronic documents are highly relevant to this case, and that many more exist.  Fields posted on Instagram, for example, about striking a crowd of peaceful protests with a car months before he actually did it.  DE 671.  He posted about his hateful beliefs towards minorities and non-whites. He also concedes his social media accounts contain documents showing he "liked and retweeted and/or reposted the tweets and/or posts of others regarding the [Unite the Right] Rally," and that he "follow[ed]" other codefendants on social media.  DE 671.  Plaintiffs have only obtained a small fraction of Fields's social media documents -- some only in redacted form.  And, the third parties from whom Plaintiffs obtained this small sample of Fields's documents have all stated they obtained them from the DOJ.

IV.     **PLAINTIFFS SEEK A NARROWED SET OF DOCUMENTS THEY CAN ONLY
        GET FROM THE DOJ, BUT THE DOJ STILL REFUSES TO COMPLY WITH
        THE SUBPOENAS.**

Plaintiffs informed the DOJ that there were certain categories of highly relevant

information requested by the Subpoenas that Plaintiffs could not obtain elsewhere, namely:

1.      Documents on Fields's computer(s) and phone(s), which the DOJ confiscated
        after Fields's arrest, and thus it has sole possession, custody, and control of any
        documents on those devices;

2.      Documents from Fields's social media accounts (*i.e.*, Twitter, Instagram,
        Facebook, etc.) and email, which Fields refuses to produce, provide access to, or
        consent to third parties producing;

3.      Recordings of Fields's phone calls made while in federal custody.  The Bureau of
        Prisons, a component of the DOJ, is the only source for these calls; and

4.      Deposition testimony of Meyer.  Plaintiffs would limit their questioning to Meyer
        to authenticating documents and to topics on which he testified at Fields's
        criminal trial.

On June 29, 2020, the DOJ again refused to comply with the Subpoenas, writing that "we

understand that you are still requesting" the above categories of documents, and that,"[a]s

discussed, with respect to [those documents], the FBI responded to your 2019 subpoena by

denying the request."[1] *Exhibit 18*.  During related meet and confer calls between Plaintiffs and

the DOJ, the DOJ also claimed, for the first time, that the recordings of calls Fields made from

federal prison are outside the scope of the Subpoenas and Touhy Request.  And, the DOJ

speculated that "some" of the documents Plaintiffs requested "might" be protected by the grand

jury privilege in Rule 6 of the Federal Rules of Criminal Procedure, or the criminal investigative

privilege.  It did not assert any other privileges or grounds that would allow it not to produce the

information Plaintiffs requested.

---

[1] The DOJ agreed to "continue to discuss" with the FBI, Plaintiffs' request for other documents
in response to a different subpoena, which are not the subject of this Motion.

## ARGUMENT

## I.     LEGAL STANDARD.

Federal agencies may "prescribe regulations for . . . the custody, use, and preservation of its records, papers, and property."  5 U.S.C. § 301.  These regulations are called Touhy Regulations.[2]  The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, permits a federal court to order a federal agency to comply with a subpoena if (a) the party seeking discovery has complied with the agency's Touhy Regulations, (b) the agency made a final decision, and (c) the agency refused to comply with the subpoena in an arbitrary, capricious, or otherwise unlawful manner.  *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d at 274-77.  Here, all of these elements are met.

## II.    PLAINTIFFS COMPLIED WITH THE DOJ'S TOUHY REGULATIONS.

The DOJ's Touhy Regulations require that a party seeking testimony from a DOJ employee or documents through a subpoena provide "a summary of the information sought and its relevance to the proceeding."  28 C.F.R. § 16.22(c)-(d).  Plaintiffs satisfied this requirement for both Subpoenas.  Their Touhy Request informed the DOJ what documents and testimony they seek, and explained the information's relevance to this case.  *Exhibit 5*.  The DOJ has never claimed this letter was insufficient.

## III.   THE DOJ'S REFUSAL WAS A FINAL DECISION.

An agency action is "final" when it "signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences."  *COMSAT*, 190 F.3d at 274.  A decision not to respond to a subpoena is a final decision.  *Id.* at 275; *Yousuf v. Samantar*,

---

[2] Touhy Regulations are named after the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which recognized employees of federal agencies may refuse to answer a subpoena if such refusal was consistent with valid agency regulations.  *Id.* at 468-70; *see also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 272 n.3 (1999).

451 F.3d 248, 251 (D.C. Cir. 2006) (holding letter indicating agency would not produce documents was final action, even though agency was not finished processing related document requests).

Here, the DOJ has made its final agency decision. Its October 2019 letter informed Plaintiffs that the DOJ was "respectfully declining to comply with the subpoenas." *Exhibit 7*. Then, in June 2020, the DOJ acknowledged that Plaintiffs had narrowed the categories of documents they are seeking, but reiterated that the DOJ already responded "by denying the request." *Exhibit 18*. Thus, the DOJ's decision is ripe for judicial review.

## IV. THE DOJ'S REFUSAL TO PRODUCE DOCUMENTS WAS ARBITRARY AND CAPRICIOUS.

### A. The DOJ Failed to Provide an Explanation Showing It Engaged in Rational Decisionmaking.

An agency decision is arbitrary and capricious if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The DOJ fails to meet this standard if it did not give Plaintiffs enough of an explanation for its decision to demonstrate the decision was the "product of reasoned decisionmaking." *Id.* at 52. This means the DOJ must have "articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). It cannot rely on boilerplate objections or responses that are "devoid of any individualized factual analysis." *Ceroni v. 4Front Engineered Sols., Inc.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011).

The DOJ must also explain to Plaintiffs how it considered the factors in its own regulations. *Lamb v. Wallace*, 2018 WL 847242, at *6 (E.D.N.C. 2018) (compelling production because FBI did not consider factors in DOJ's Touhy Regulations).  This individualized analysis requires the DOJ to consider all parts of a Touhy Request and possible alternatives to rejection. *Ceroni*, 793 F. Supp. 2d at 1279 (Rejecting agency's refusal to respond to a subpoena based on interference with employees' duties because "[t]here is no analysis concerning the possibility that the depositions could occur before or after the deponents' normal working hours or on their scheduled days off" and "[t]here is no analysis concerning the possibility of conducting the inspection of premises at a time when the dock is not in use or is out of service for maintenance."); *see also DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1910-13 (2020) (finding agency action arbitrary and capricious because the Department of Homeland Security failed to analyze all the components of a rule when only one part was deemed unlawful).

The DOJ's Touhy Regulations spell out the factors the DOJ must consider when deciding whether to comply with a subpoena.  "It is Department policy that the [U.S. Attorney] shall . . . authorize . . . the production of material from Department files without further authorization from Department officials whenever possible . . . ."  28 C.F.R. § 16.24(c).  And, the regulations specifically authorize disclosure when the "administration of justice require disclosure."  28 C.F.R. § 16.26(c).

The scope of the court's review is limited to "the grounds that the agency invoked when it took the action." *DHS*, 140 S. Ct. at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (courts must judge the propriety of an agency's action solely by the grounds invoked by the agency).  Thus, the Court cannot consider any reasons for the DOJ's decision beyond the reasons the DOJ gave to Plaintiffs when it made

its final agency action. *Lamb*, 2018 WL 847242, at \*3 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)). While the DOJ "may elaborate later on that reason (or reasons) [it] may not provide new ones." *DHS*, 140 S. Ct. at 1908.

Here, the DOJ failed to even come close to meeting this standard. It simply told Plaintiffs it "carefully reviewed" the Subpoenas and "determined that it would not be in the best interest of the United States to provide the requested information." *Exhibit 7*. The DOJ provided no "rational connection between the facts found and the choice made," no individualized analysis, no alternatives to its wholesale rejection of the Subpoenas, and no mention (let alone analysis) of the factors the DOJ is required to consider under its own regulations -- such as whether disclosure would violate the law, reveal a confidential source, or interfere with law enforcement proceedings. *Supra*, pp. 7-8. Nor did the DOJ explain how it analyzed whether "the administration of justice requires disclosure," as is required. *Supra*, p. 8. Rather, the DOJ's responses were completely "devoid of any individualized factual analysis," and thus, arbitrary and capricious as a matter of law. *E.g.*, *Ceroni*, 793 F. Supp. 2d at 1278. The Court should order the DOJ to produce the documents and provide the testimony Plaintiffs requested.

Moreover, even if the DOJ had explained how it considered the relevant factors and the evidence (it did not), that would have only shown that the DOJ should produce documents to Plaintiffs and authorize Meyer's deposition. The production of the documents Plaintiffs seek would not violate any law, reveal a confidential source, interfere with enforcement proceedings, or disclose investigative techniques and procedures such that their effectiveness would be impaired. *Supra*, p. 5. And the Plaintiffs only intend to ask Meyer to authenticate the materials provided by the DOJ.

Similarly, "the administration of justice requires disclosure." *Supra*, p. 8. This case was brought against neo-Nazi and white supremacist individuals and organizations that conspired to plan and carry out violence at a well-publicized racist and anti-Semitic rally in Charlottesville, which culminated in a horrific vehicle attack by James Fields -- for which he was convicted of murder in Virginia state court and pled guilty to 29 hate crimes under federal law. Fields refuses to produce the documents Plaintiffs seek from the DOJ, and he refuses to sign any Stored Communications Act consent forms, which means Plaintiffs cannot compel any social media providers to produce those documents. And, Fields does not have his electronic devices because they were confiscated by law enforcement when he was arrested. Plaintiffs are unable to obtain Fields's social media, electronic devices, and phone calls from other sources. They have already subpoenaed Fields's defense attorneys, the Commonwealth's Attorney, and local law enforcement. The DOJ, however, has Fields's documents from his social media accounts, electronic devices, and recordings of Fields's telephone calls from federal prison.

Not only are these documents available only from the DOJ, but they are crucial to Plaintiffs' case. These documents contain critical evidence that would aid Plaintiffs in proving their claims in this litigation. For example, Fields admits the social media accounts contain documents showing that he "liked and retweeted and/or reposted the tweets and/or posts of others regarding the Rally," and "follow[ed]" other codefendants on social media. DE 671. And, Plaintiffs were able to obtain from a third party one of Fields's social media messages that shows him talking about striking a crowd of peaceful protests with a car months before he actually did it. DE 671.

**B.**      **The DOJ Ignored Its Regulations by Refusing to Produce Recordings of Fields's Prison Phone Calls.**

The DOJ's refusal to even consider producing recordings of Fields's phone calls from federal prison was arbitrary and capricious, because the DOJ ignored its own regulations by claiming Plaintiffs needed to issue a new and separate subpoena to the Bureau of Prisons ("BOP").

DOJ's Touhy Regulations cover "all officers and employees of the United States appointed by or subject to the supervision of the Attorney General of the United States."  28 C.F.R. § 16.21(b).  This includes the BOP.  *See* 28 C.F.R., part 16, Appendix 1 (listing BOP as a component of the DOJ).  As detailed above, Plaintiffs' Touhy Request complied with those regulations.  *Supra*, p. 6.

The Bureau of Prisons requires that a subpoena be sent to a U.S. Attorney, who then notifies the "official in charge of the bureau, division, office, or agency" from which disclosure will be required (the "originating component").  *Id.* § 16.24(a).  The U.S. Attorney may then authorize the production of documents after consultation with the originating component.  *Id.* § 16.24(b), (c).  Indeed, the regulations expressly require the U.S. Attorney (or other designated official) to "advise" the originating component that the Touhy Request seeks their information.  *Id.* § 16.24.  Again, Plaintiffs sent their Touhy Request to the U.S. Attorney, as required.  *Supra*, p. 3.

Furthermore, the BOP's regulations expressly spell out when a request must be served on BOP directly -- rather than, as here, the U.S. Attorney.  For example, FOIA requests must be "made in writing and addressed to the Director, Federal Bureau of Prisons."  28 C.F.R. § 513.60.  The fact that the regulations do not spell out a similar requirement for serving a subpoena show that service on BOP separately from the U.S. Attorney is not required.

Recordings of Fields's prison phone calls are also explicitly within the scope of Plaintiffs' Document Subpoena.  It requested "All recordings and transcripts of telephone calls concerning any Defendant, the Car Attack, or any Unite the Right Event, including calls or communications to or from James Fields during his detention after his arrest in August 2017." *Exhibit 5*.  This request unambiguously called for the recordings in the DOJ's possession.  This includes the recordings held by the BOP.  *See* 28 C.F.R., part 16, Appendix 1.

In short, the DOJ has no basis in law or fact to claim that recordings of Fields's prison phone calls are somehow outside the purview of the DOJ or the scope of Plaintiffs' Touhy Request, and its decision is arbitrary and capricious.  The Court should order the DOJ to produce those documents without delay.

### C.     The DOJ's Verbal Speculation that Some Documents "Might" Be Privileged Runs Counter to the Evidence.

If an agency refuses to comply with a subpoena based on the incorrect or improper assertion of a privilege, its decision is arbitrary and capricious.  *SEC v. Chakrapani*, 2010 WL 2605819, at *10 (S.D.N.Y. 2010) ("Despite the deference the standard gives to the government, the Court finds that the government's decision not to produce the [documents] is unsupported by the law-enforcement privilege and is arbitrary and capricious."); *In re Subpoena to Nat'l Sci. Found.*, 2018 WL 5017612, *3-4 (E.D. Va. 2018) (finding denial based on improper invocation of law enforcement privilege and due process privilege arbitrary and capricious); *Lamb*, 2018 WL 847242, at *5 (refusal to produce based on wrongful invocation of law enforcement privilege was arbitrary and capricious).

Here, the DOJ's speculation that "some" documents Plaintiffs requested "might" be covered by the grand jury privilege or criminal investigative privilege has no basis in law or fact.

### 1.    The Grant Jury Privilege Cannot Apply.

The grand jury privilege is set out in Federal Rule of Criminal Procedure 6(e), and prohibits government attorneys from disclosing "a matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B).[3]  That rule, however, only protects materials that reveal what the grand jury considered, the grand jury's tactics, or the future direction of a grand jury.  *In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 427-28 (D. Md. 2011) (citing cases). Information such as business records obtained by the government from third parties, which do not reveal whether they were presented to a grand jury, are not protected under Rule 6(e). *E.g.*, *United States v. Reiners*, 934 F. Supp. 721, 723-24 (E.D. Va. 1996) (Ellis, J.) (Bank records created before the grand jury but obtained through grand jury subpoena not subject to Rule 6(e) because, "by their nature, would not reveal any secret aspect of the grand jury investigation."); *United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007); *see also In re Grand Jury Proceedings*, 503 F. Supp. 2d 800, 808 (E.D. Va. 2007) ("When documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings . . . .") (citation omitted).  Thus, even when a document is shown to a grand jury, Rule 6(e) does not protect "the information itself," but only protects "the fact that the grand jury was considering that information."  *Id.* (citation omitted); *Rosen*, 471 F. Supp. 2d at 655 ("'[T]he disclosure of information coincidentally before the grand jury which can be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited' by Rule 6(e).") (citation omitted).

The government has the burden to show "that the release of the documents sought would compromise the secrecy of the grand jury proceedings."  *In re Search of 14416 Coral Gables*

---

[3] Rule 6(e) applies to other persons too, but none are relevant here.

*Way*, 946 F. Supp. 2d at 428 (citation omitted).  But, even if the government meets that burden, Rule 6 nevertheless permits the Court to authorize disclosure of grand jury matters "in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E).  Courts authorize disclosure of grand jury materials when the requesting party shows a "particularized need" by demonstrating that (1) the materials are needed to avoid an injustice in a different proceeding than before the grand jury; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only needed materials. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).  The need for secrecy is greatly reduced after the grand jury's proceedings end.  *Id.* at 223; *Gilbert v. United States*, 203 F.3d 820, at *3 (4th Cir. 2000) ("Once the proceeding of the grand jury ends, the interests of secrecy are reduced, but not eliminated.").

Here, Plaintiffs do not seek any documents covered by Rule 6(e).  They do not seek any testimony given to a grand jury, documents created by or for a grand jury, or exhibit lists or planning documents that would reveal the inner workings of any grand jury.  Rather, Plaintiffs merely seek documents the government obtained from Fields's electronic devices, social media accounts, and telephone calls.  To the extent the grand jury reviewed any of those documents they constitute "information coincidentally before the grand jury," and can be produced without any reference to grand jury proceedings so their disclosure will not "elucidate the inner workings of the grand jury."  *Rosen*, 471 F. Supp. 2d at 655 (citation omitted).

Even if the documents Plaintiffs seek were covered by the grand jury privilege (they are not), the Court should still order the DOJ to produce them because Plaintiffs' need outweighs the DOJ's interest in secrecy.  *See* Fed. R. Crim. P. 6(e)(3)(E).  Fields refuses to produce these documents, Plaintiffs cannot obtain them elsewhere, and they include critical evidence that

14

would aid Plaintiffs in proving their claims in this litigation.  *Supra*, p. 4.  The DOJ no longer has any interest in keeping Fields's documents secret (to the extent it ever had such an interest), because Fields already pled guilty to his federal charges.  And, Plaintiffs' requests are narrowly tailored to address Plaintiffs' specific needs in this case, and exclude any internal, government-created documents.  These needs outweigh the DOJ's limited interest in secrecy, and the Court should order the DOJ to produce the requested documents.

> ### 2.       The Criminal Investigative Privilege Does Not Apply.

The criminal investigative privilege protects internal police opinions and the anonymity of non-public suspects and witnesses -- for example, documents created by investigators or other law enforcement officials, documents created at their direction, and documents related to ongoing grand jury proceedings.  *Harrington v. Roessle*r, 89 Va. Cir. 366, 2014 WL 10520410, at *3 (2014); *Maki v. United States*, 2008 WL 1756330, at *6 (W.D. Va. 2008) (holding law enforcement investigative privilege did not apply because, among other things, there was no concern about disclosing the identify of "confidential sources" or "individuals who provided information" to law enforcement).

The privilege does not apply, however, to "purely factual data."  *Johnson v. Rankin*, 2011 WL 5358056, at *2 (E.D. Va. 2011); *Maki*, 2008 WL 1756330, at *6 (refusing to apply the law enforcement investigative privilege to report "because the information in the report is factual").  Examples of "purely factual data" not covered by the investigative privilege include, among other things, pre-existing documents created by the suspect, audio recordings, "video evidence," photographs and images, witness statements, statements given by a defendant, and summaries of information obtained from government agencies.  *Johnson*, 2011 WL 5358056, at *4-6 (ordering the Virginia State Police to produce such documents).

And, in any event, once an investigation is concluded, the privilege no longer applies.[4]
*Maki*, 2008 WL 1756330, at *6 (holding investigative privilege did not apply in part because the investigation was complete, and further criminal proceedings were not "reasonably likely to follow") (citation omitted); *Wheeler v. Gabbay*, 40 Va. Cir. 551, 1994 WL 1031214, at *4 (1994) (holding investigative privilege applied to "details of an on-going criminal investigation prior to disclosure of evidence in a public trial").

The law enforcement privilege does not protect the documents Plaintiffs seek from the DOJ. As discussed above, Plaintiffs seek documents that were in the possession of or created by Fields – not by any law enforcement personnel. The documents are purely factual because they show what Fields said, who he communicated with, and what he knew at the time of his attack. Such "purely factual" information is not covered by the law enforcement privilege. *Johnson*, 2011 WL 5358056, at *1; *Maki*, 2008 WL 1756330, at *6. And, even if the law enforcement privilege could have applied in the past, Fields has already pled guilty to his federal charges. His federal case is over, so any law enforcement privilege over his documents no longer exists.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and order the requested relief, in addition to any other relief as the Court deems just and proper.

---

[4] The privilege may be applied after an investigation ends if "'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information' is revealed to the public." *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (citation omitted). Those concerns are not present here. Plaintiffs only seek documents created by Fields, statements made by Fields, and recordings of calls made on prison phones. The documents were obtained by standard law enforcement methods, about which DOJ personnel have testified publicly. The disclosure of these documents will not impair future investigations.

Dated: July 24, 2020

Respectfully submitted,

/s/ *David E. Mills*
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
rtolentino@kaplanhecker.com

Robert T. Cahill (VSB 38562)
Scott W. Stemetzki (VSB 86246)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com
sstemetzki@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel:  (540) 983-7600
Fax:  (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro se*)
William A. Isaacson (*pro se*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com

Jessica E. Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
jphillips@bsfllp.com

Yotam Barkai (*pro hac vice*)
Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com
kcheng@bsfllp.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

*Counsel for Plaintiffs*

18

## RULE 37 CERTIFICATION

Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted in good faith to meet and confer with James Fields about the issues raised by this Motion.

Dated: July 24, 2020                                  Respectfully submitted,


                                                     /s/ *David E. Mills*
                                                     David E. Mills (*pro hac vice*)
                                                     *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2020, I served a true and correct copy of the foregoing by Federal Express upon:

> WD Va. US Attorney's Office
> C/o AUSA Dan P. Bubar
> U.S. Courthouse and Federal Building
> 255 West Main Street, Room 130
> Charlottesville, Virginia 22902
>
> Attorney General of the United States
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

Further, I hereby certify that on July 24, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler,*
*Nathan Damigo, Identity Europa, Inc.*
*(Identity Evropa), Matthew Parrott, and*
*Traditionalist Worker Party*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National*
*Socialist Movement, and Nationalist Front*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,*
*Michael Tubbs, and League of the South*

I further hereby certify that on July 24, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Richard Spencer
richardbspencer@gmail.com

/s/ *David E. Mills*
David E. Mills (*pro hac vice*)
*Counsel for Plaintiffs*