# EXHIBIT 62

1                    R. (Ike) ████ Redacted for PII ████

2    UNITED STATES DISTRICT COURT

3    FOR THE WESTERN DISTRICT OF VIRGINIA

4    CHARLOTTESVILLE DIVISION

5    ----------------------------x

6    ELIZABETH SINES, et al.,

7              Plaintiffs,          Civil Action No.

8         v.                        3:17-cv-00072-NKM

9    JASON KESSLER, et al.,

10             Defendants.

11   ----------------------------x

12

13

14              VIDEOCONFERENCE DEPOSITION OF

15         ROBERT (IKE) ████ Redacted for PII ████

16                  McKee, Kentucky

17              Friday, June 12, 2020

18

19   Reported by:

20   DEBORAH C. FUREY, RPR, CLR, CRI

21   JOB NO. 180541

22

23

24

25

Case 3:17-cv-00072-NKM-JCH Document 863-91 Filed 09/05/20 Page 3 of 31 Pageid#: 13946

1                   R. (Ike) **Redacted for PII**

2

3

4

5                    June 12, 2020

6                     9:36 a.m.

7

8

9           Videoconference Deposition of ROBERT (IKE)

10    **Redacted for PII**, held remotely, before Deborah C.

11   Furey, a Registered Professional Reporter, Certified

12   LiveNote Reporter, and Notary Public of the states of

13   Ohio and Kentucky.

14

15

16

17

18

19

20

21

22

23

24

25

1              R. (Ike)  **Redacted for PII**

2       Q.    We can go up to the top e-mail.

3       A.    I'm sorry.  What?

4       Q.    Scroll up to the top e-mail.

5       A.    Okay.

6       Q.    This is from Mark Thomey?

7       A.    Yes.

8       Q.    To the same group of individuals,

9   including yourself.

10            Do you see that?

11      A.    I do.

12      Q.    Second line, he says, "I did some

13  checking online about Virginia's concealed carry

14  laws.  They honor the CC permits of all states."

15      A.    Yes.

16      Q.    Did you intend to lawfully bring a

17  concealed weapon to Charlottesville?

18      A.    Yes.

19      Q.    And did you bring, lawfully, a concealed

20  weapon?

21      A.    Are you asking me individually?

22      Q.    Yes, you personally.

23      A.    Yes, I did.

24      Q.    Are you aware if any other individuals

25  in the League did?

```
 1                    R.  (Ike) [Redacted for PII]

 2   undertaken on Friday evening.

 3        Q.    Did you discuss the next day?

 4        A.    We did discuss the next day, but the

 5   planning was long concluded by that point.

 6        Q.    What was the nature of your

 7   conversations about the next day?

 8        A.    Briefing our people about what to

 9   expect; discussing the laws of Virginia;

10   emphasizing that we expected all of our people to

11   follow every law of the State of Virginia, the

12   City of Charlottesville, cautions about measures

13   of self-defense; forgive me if I already said

14   this, we discussed the route in.

15              It was simply informing our people how

16   to stay safe and get in and out of

17   Charlottesville.  At that time, we still hoped

18   that it would be without incident.

19        Q.    Did your briefing include any type of

20   warning that there might be a violent clash with

21   counter-protestors?

22        A.    No, we didn't discuss a potential clash

23   with violent protestors.

24        Q.    You just said that you discussed

25   self-defense.
```

```
1                    R.  (Ike)  Redacted for PII

2    Movement of?

3         A.    Yes.

4         Q.    And did they, in fact, show up there?

5         A.    Yes.

6         Q.    Were you in contact with the police on

7    Saturday morning at all?

8         A.    No.

9         Q.    What was the initial assembly point?

10        A.    We had found a parking lot on the main

11   road out of Charlottesville -- I can't recall what

12   the highway number was -- a plaza where it seemed

13   like none of the businesses would be open early in

14   the morning, so we could assemble peacefully and

15   leave in an orderly manner which, frankly, we did

16   accomplish.

17             MS. LIVERZANI:  Can you pull up Tab 32,

18        please?

19        Q.    This is an audio file that was produced

20   by Mr. Kessler in this litigation.

21        A.    Okay.

22        Q.    I'm going to ask you to listen to it.

23             MS. RUSE:  Tab 32 will be Exhibit 29.

24                  (Exhibit 29 Plaintiffs,

25                  Audio recording played into the
```

Case 3:17-cv-00072-NKM-JCH Document 863-23-11 Filed 09/05/20 Page 7 of 85 Pageid#:
Page 13941 13141

1               R.  (Ike)   Redacted for PII

2    who would have passed it.

3         Q.     Did you inform Jeff Schoep?

4         A.     Not personally, no.

5         Q.     Are you aware of anyone at the League

6    informing Jeff Schoep?

7         A.     I don't know who might have done that.

8    As I say, I don't know exactly what the path was

9    for the word to be passed.  But I know once I

10   found the parking garage unobstructed, no

11   police barricades set up in front of it and, for

12   what it's worth, no Antifa on Market Street, we

13   proceeded to the parking garage.

14            I don't recall how the word was passed.

15        Q.     But the word was, in fact passed,

16   correct?

17        A.     Well, everyone got there.  So, yes, I

18   think that's a fair answer.

19        Q.     Once you left the garage, the objective

20   was to get to Lee Park, correct?

21        A.     Yes.  But I want to clarify.  Once we

22   were together -- once -- once I had determined

23   that the parking garage was available to us, my

24   responsibility was fulfilled.  So I wouldn't be

25   able to answer any specific questions about

```
 1                R. (Ike)    Redacted for PII

 2              C E R T I F I C A T E

 3   STATE OF KENTUCKY,    )
                          ) SS:
 4   COUNTY OF CAMPBELL.   )

 5        I, Deborah C. Furey, a Notary Public within and

 6   for the State of Kentucky, duly commissioned and

 7   qualified, do hereby certify that the foregoing

 8   witness was first duly sworn to testify the truth, the

 9   whole truth, and nothing but the truth; that the

10   testimony given by the witness was reduced to writing

11   by me by means of stenotype; that I subsequently

12   transcribed my stenographic notes with the aid of a

13   computer, out of the presence of the witness; that the

14   foregoing is a true and correct transcript of my said

15   stenographic notes; that I am not a relative,

16   attorney, or counsel of any party or otherwise

17   financially interested in the events of this action;

18   nor is the court reporting firm with which I am

19   affiliated under a contract as defined in Civil Rule

20   28(D).

21        IN WITNESS WHEREOF, I have hereunto set my hand
     and affixed my official seal of office this 18th
22   day of June, 2020.       Deborah Furey

23                            _____

24                            Deborah C. Furey, RPR
                              Notary Public in and for the
25                            State of Kentucky  9-10-22
```