```
 1                 IN THE UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF VIRGINIA
 2                      CHARLOTTESVILLE DIVISION

 3     ****************************************************************
       ELIZABETH SINES, et al.,        CIVIL CASE NO.: 3:17-CV-00072
 4                                      September 14, 2020
                                        CHARLOTTESVILLE, VIRGINIA
 5             Plaintiffs,              VIDEO SHOW CAUSE AND STATUS
                                        HEARING
 6        vs.

 7     JASON KESSLER, et al.,           Before:
                                        HONORABLE NORMAN K. MOON
 8                                      UNITED STATES DISTRICT JUDGE
               Defendants.              WESTERN DISTRICT OF VIRGINIA
 9
       ****************************************************************
10     APPEARANCES:

11     For the Plaintiffs:

12          MICHAEL LOW BLOCH, ESQUIRE
            ROBERTA ANN KAPLAN, ESQUIRE
13          JONATHAN KAY, ESQUIRE
            KAPLAN HECKER & FINK LLP
14          350 Fifth Avenue, Suite 7110
            New York, New York 10118
15          212-763-0883
            mbloch@kaplanhecker.com
16
            JESSICA E. PHILLIPS, ESQUIRE
17          PAUL WEISS RIFKIND WHARTON GARRISON LLP
            2001 K Street, NW
18          Washington, DC 20006-1047
            202-223-7300
19          jphillips@paulweiss.com

20

21     _____
                      Mary J. Butenschoen, RPR, CRR
22                    210 Franklin Road, S.W., Room 540
                         Roanoke, Virginia  24011
23                        540-857-5100, Ext. 5312

24
       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25     PRODUCED BY COMPUTER.
```

1    APPEARANCES (Continued):

2        ALAN LEVINE, ESQUIRE
         DAVID E. MILLS, ESQUIRE
3        COOLEY LLP
         1114 Avenue of The Americas
4        46th Floor
         New York, New York 10036
5        212-479-6260
         alevine@cooley.com

6
         SCOTT WILLIAM STEMETZKI, ESQUIRE
7        COOLEY LLP
         11951 Freedom Drive, 14th Floor
8        Reston, VA 20190
         703-456-8000
9        sstemetzki@cooley.com

10       YOTAM BARKAI, ESQUIRE
         BOIES SCHILLER FLEXNER, LLP
11       55 Hudson Yards
         New York, NY 10001
12       212-763-0883
         ybarkai@kaplanhecker.com

13

14   For the Defendants:

15       JAMES EDWARD KOLENICH, ESQUIRE
         KOLENICH LAW OFFICE
16       9435 Waterstone Blvd., Suite 140
         Cincinnati, Ohio  45249
17       513-444-2150
         jek318@gmail.com

18
         BRYAN JEFFREY JONES, ESQUIRE
19       BRYAN J. JONES, ATTORNEY AT LAW
         106 W. South Street, Suite 211
20       Charlottesville, Virginia  22902
         540-623-6952
21       bryan@bjoneslegal.com

22       DAVID LEON CAMPBELL
         DUANE HAUCK DAVIS & GRAVATT
23       100 West Franklin Street, Suite 100
         Richmond, Virginia  23220
24       804-644-7400
         dcampbell@dhdglaw.com

25

1    APPEARANCES (Continued):

2         VANGUARD AMERICA
          c/o DILLON HOPPER
3         383 Hazzard Street
          Scottsburg, Indiana  47170
4
          CHRISTOPHER CANTWELL, PRO SE
5         20-00348
          Stafford County Dept. of Corrections
6         266 County Farm Road
          Dover, NH 03820
7         PRO SE

8         MATTHEW HEIMBACH, PRO SE
          P.O. Box 278
9         Steubenville, OH 43592
          301-525-1474
10
          RICHARD SPENCER, PRO SE
11        PO Box 1676
          Whitefish, MT 59937
12    ///

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings commenced 2:10 p.m.)

2         THE COURT:  Good afternoon.  Call the case,

3    please.

4         THE CLERK:  Yes, Your Honor.  This is Civil Action

5    Number 3:17-cv-72, *Sines* and others *v. Kessler* and others.

6         THE COURT:  Are the plaintiffs ready?

7         MS. PHILLIPS:  We are, Your Honor.

8         THE COURT:  Are the defendants ready?

9         COUNSEL:  Yes.  We are, Your Honor.

10        THE COURT:  All right.  Before we begin I will

11   remind everyone that under Standing Order 2020-12, the Court's

12   prohibition against recording and broadcasting court

13   proceedings remains in force.  Attorneys' staff and any

14   members of the public accessing this hearing may not record or

15   broadcast it.

16        We are here today on two separate matters.  First I

17   will take up the show cause hearing involving Defendant Robert

18   Ray.  I will ask plaintiffs about the status of any steps

19   Mr. Ray may have taken toward compliance with Court Orders and

20   I would give him -- I would give him, if he were here, any

21   opportunity to respond.

22        Second, we have scheduled a status conference after

23   the Court Ordered the postponement of the trial and to have

24   some discussion regarding potential dates for proceeding

25   later.

1      Now, first, we're here on the contempt hearing for

2   Defendant Robert Ray, show cause why he should not be adjudged

3   in contempt of court.  Let me start by recapping the main

4   background on this issue.

5      Plaintiffs filed a motion for a Court Order

6   requiring Mr. Ray to sit for deposition by videoconference

7   after he had failed to appear for a properly noticed

8   deposition on July 13, 2020.

9      On July 23, 2020, Judge Hoppe issued an order to Ray

10  to appear by videoconference for deposition by plaintiffs'

11  counsel on July 29, 2020.  Judge Hoppe further warned Ray that

12  failure to comply with that order may result in a bench

13  warrant being issued for his arrest and transportation to this

14  judicial district to appear and show cause why he should not

15  be held in contempt of court.  Nonetheless, on August 5,

16  plaintiffs advised the Court that Ray had failed to appear for

17  his deposition as Judge Hoppe had required.

18      On August 27, 2020, I issued an order directing Ray

19  to appear at this contempt hearing scheduled this date and

20  time to show cause why he should not be adjudged in contempt

21  of court on account of his failure to comply (internet

22  distortion) dated July 23, 2020.  I ordered Mr. Ray to attend

23  this show cause hearing.

24      I also ordered Mr. Ray to do the following concrete

25  actions before this contempt hearing this afternoon:

1          One, I ordered him to contact the Clerk's Office by

2    September 7, 2020, to get log-in or dial-in information to

3    participate in this hearing.

4          Two, I ordered him to contact plaintiffs' counsel by

5    September 9, 2020, to get log-in or dial-in information to

6    participate in a rescheduled deposition that was set to take

7    place this morning, September 24, 2020, at 9:30 a.m. Eastern

8    Time.  And I ordered him to appear by videoconference for that

9    rescheduled deposition by videoconference by plaintiffs'

10   counsel this morning, September 14, 2020.

11         I have been informed by the Clerk of the Court that

12   Mr. Ray did not contact the clerk by September 7 as required

13   to get log-in information to participate in this afternoon's

14   contempt hearing.  Nonetheless, on September 10, the Clerk's

15   Office emailed him the information to participate in this

16   videoconference at his email address on file.  He has not

17   appeared today, either; is that correct, Heidi?

18              THE CLERK:  That is correct, Your Honor.

19              THE COURT:  All right.  I will also give the

20   plaintiffs an opportunity to present any arguments and

21   evidence in a moment.  But am I correct that Mr. Ray neither

22   contacted you by September 9 to get log-in information for his

23   deposition, nor did you have the deposition this morning?

24   Asking plaintiffs' counsel.

25              MS. PHILLIPS:  Yes.  Thank you, Your Honor.  This is

1    Jessica Phillips from Paul Weiss Rifkind Wharton & Garrison on

2    behalf of the plaintiffs.  I will be handling the show cause

3    hearing on behalf of plaintiffs today and my colleague and

4    co-counsel Mike Bloch will handle the status conference.

5         And you are correct that Mr. Ray neither contacted

6    us as ordered on September 9, nor did he appear this morning

7    at 9:30 a.m. Eastern Time for his deposition.  And, of course,

8    this is the third time now that Mr. Ray has failed to appear

9    for a noticed deposition, and the second time he's failed to

10   appear for a Court-ordered deposition.

11        THE COURT:  Okay, thank you.

12        I will also note for the record that this Court's

13   August 27 order, Mr. Ray was provided the opportunity to file

14   any brief or response or information he would like this Court

15   to consider by September 9.  He has not done so.

16        Accordingly, I am considering whether Mr. Ray should

17   be found in civil contempt in which sanctions are appropriate

18   and not any greater than necessary in order to coerce him to

19   compliance with the Court's orders.  Namely, the July 23,

20   2020, order from Judge Hoppe, as well as my August 27, 2020,

21   order, which both have directed Mr. Ray to sit for a

22   deposition, among other things.

23        It would appear that, notwithstanding certain

24   earlier participation by Mr. Ray in this case, he has over the

25   past year increasingly decided to ignore his responsibilities

1    to plaintiffs and the Court.

2          With all that said, let's proceed since we have

3    plaintiffs and everyone else here, except Mr. Ray.  Generally

4    it is the plaintiffs' burden to establish by clear and

5    convincing evidence another party's civil contempt.

6          Do you have any evidence you wish to present?

7          MS. PHILLIPS:  Thank you, Judge Moon.  Yes.  We

8    would like to -- I'd like to present argument on each of the

9    prongs of the civil contempt standard, if I may.

10          THE COURT:  Okay.

11          MS. PHILLIPS:  Thank you.  Of course, this is -- as

12    I said earlier, this is the third time now that Mr. Ray has

13    failed to appear for his noticed deposition in this

14    litigation.  And in doing so, as you noted, he has yet again

15    flouted the Court's orders and shown no disregard for the

16    plaintiffs' time and resources and efforts.  He has shown

17    absolutely no regard for his responsibilities as a civil

18    litigant.

19          And to be clear, Mr. Ray's deficiencies do not end

20    or begin with his failure to show up now three times for his

21    deposition.  He is, in fact, in violation of at least four

22    Court Orders:  ECF 379; ECF 728; the previous order on July

23    23, 2020, that Your Honor mentioned, which is ECF 814, the

24    order that Judge Hoppe issued requiring Mr. Ray to appear for

25    videoconference on the 29th of July; and then, obviously, most

1    recently, your order of August 27, 2020, ECF 848, Mr. Ray, as

2    you just noted, Judge Moon, failed to comply with each and

3    every provision of that particular order.

4            I'd like to spend a little bit of time talking to

5    you about his violation of ECF 329 and, in particular, ECF

6    728.  Both of those were orders in response to two separate

7    motions to compel that the plaintiffs were required to file

8    because of Mr. Ray's discovery deficiencies.  He did respond

9    to ECF 379, which was a November 13, 2018, order, although his

10   response to that order was entirely deficient.  He responded

11   in no way to ECF 728.  Judge Hoppe granted that motion on May

12   18, 2020, and set out a number of deadlines by which Mr. Ray

13   was supposed to provide plaintiffs with a second ESI

14   certification and a second deadline by which he was required

15   to provide our third party vendor in this case with all of his

16   devices and credentials for his social media accounts.  He

17   failed to -- he failed to meet either of those deadlines.  And

18   in response, plaintiffs filed a June 1, 2020, motion for

19   evidentiary sanctions and for the Court to issue a show cause

20   hearing.  That particular motion for evidentiary sanctions is

21   still pending.

22           So again, plaintiffs believe that Mr. Ray is now in

23   violation of at least four distinct Court Orders.  Mr. Ray has

24   had actual knowledge of the discovery orders that he violated.

25   Plaintiffs have repeatedly emailed Mr. Ray at the email

Sines, et al. v. Kessler, et al. - 9/14/2020      10

1   address that is on file for him and that was disclosed in the

2   responses that he submitted to plaintiffs' first set of

3   interrogatories.  That email address is azzmador@gmail.com.

4   Plaintiffs have repeatedly served him with numerous copies of

5   Court Orders and also reached out to him at this address

6   numerous times regarding his failure to sit for his

7   depositions and with regard to his failures in discovery.

8           We have also called Mr. Ray numerous times at the

9   phone number that he disclosed in his interrogatory responses.

10  We've also reached out to him on a second phone number that

11  was revealed through discovery that he did not disclose to us,

12  and that was in part the subject of our March 11, 2020, motion

13  to compel.

14          Mr. Ray simply refused to respond.  And what is so

15  unbelievably galling with regard to his failure to respond to

16  his responsibilities in this civil litigation is that he has

17  been active on social media using accounts that he failed to

18  disclose in the litigation.  In particular, he's been

19  recording episodes of his podcast which is called the Crypto

20  Report and posting them on a website called DLive.  And for

21  the record, that site is dlive.ev\azzmador.

22          Mr. Ray has also been posting archived episodes of

23  his podcast on the BitChute website, and he also has an

24  account called The Official Crypto Report on the social

25  networking website Telegram.  So he is actively posting and

Case 3:17-cv-00072-NKM-JCH   Document 881   Filed 09/18/20   Page 11 of 33   Pageid#:
14351
Sines, et al. v. Kessler, et al. - 9/14/2020        11

1    engaging on social media while refusing to abide by the

2    Court's Orders in this litigation.  I don't think there can be

3    any doubt about plaintiffs' prejudice in this case.

4            Excuse me, Your Honor.  You know, at the most basic

5    level, we've put an enormous amount of time, effort, and

6    resources on additional motion practice.  As I mentioned, we

7    filed two separate motions to compel Mr. Ray to sit for his

8    deposition.  We filed two motions to compel various other

9    forms of discovery.  We have now had to file an evidentiary

10   sanctions motion, and, of course, we've engaged court

11   reporters and videographers to sit for Mr. Ray's deposition

12   each time to no avail, of course.

13           And, you know, this leads me to the -- arguably, the

14   largest prejudice for plaintiffs, which is that Mr. Ray is

15   still withholding a trove of documents that are responsive to

16   this litigation that are relevant to the conspiracy that

17   plaintiffs have alleged and have been developing evidence to

18   prove at trial over the course of the last two years.  Mr. Ray

19   played a critical role in that conspiracy.

20           At the time of Unite the Right, Mr. Ray was a writer

21   for The Daily Stormer.  It was the most visited and

22   influential hate website on the Internet at the time.  Through

23   articles that he posted on Daily Stormer, Mr. Ray promoted and

24   facilitated the events in Charlottesville, he encouraged

25   followers to attend Unite the Right and to bring with them

Sines, et al. v. Kessler, et al. - 9/14/2020      12

1    torches, pepper spray, and shields.  He was an active

2    participant on Discord.  He told people of the events, that he

3    would be there gassing the counterprotesters, and he referred

4    to UTR as a war and not a party.  And then, of course, he did

5    attend UTR and marched in the torch march, and, as he openly

6    admitted, on August 12 of 2017 used pepper spray to attack

7    counterprotesters, among other violent actions that he took.

8            In short, plaintiffs believe that Mr. Ray should be

9    held in civil contempt, and we believe he should be

10    sanctioned.  In terms of the appropriate sanction, we would

11    request that the Court issue a bench warrant for Mr. Ray's

12    arrest.  Your Honor's August 27, 2020, order indicated that

13    Mr. Ray's failure to comply with that order could result in

14    additional grounds of contempt, could result in escalating

15    monetary penalties, or could result in a bench warrant

16    directing the marshals to arrest Mr. Ray and hold him in

17    custody until he purges himself of contempt.

18            Respectfully, we believe that the final of those

19    sanctions is the most appropriate and necessary to actually

20    engage Mr. Ray and get him to participate in the litigation.

21    We just simply don't believe that there is any reason to think

22    that escalating monetary penalties will have any impact on his

23    willingness to engage in the litigation, and this is for a

24    couple of reasons.

25            First and foremost, we've already received monetary

1    penalties that has done nothing to encourage his involvement.

2    And there is also already a warrant out for his arrest in

3    Virginia on criminal charges relating to his conduct and his

4    actions at Unite the Right.  Specifically, on June 4 of 2018,

5    a grand jury indicted him for maliciously releasing gas at

6    Unite the Right, and a capias warrant was issued for his

7    arrest on June 7 of 2018.  He's actually listed in Albemarle

8    County as a fugitive.  So plaintiffs' view is, given that

9    Mr. Ray is already determined to be a fugitive in Virginia,

10   escalating monetary penalties are not going to get him to

11   engage in the litigation.  So we would respectfully request

12   that Your Honor direct the marshals to arrest Mr. Ray and to

13   hold him in custody until he purges himself of contempt.

14        And one final thing I'd just like to say is that we

15   do have an evidentiary sanctions motion pending against

16   Mr. Ray.  We would respectfully submit that that motion is

17   ripe and should be ruled upon.  Mr. Ray's egregious

18   behavior -- absolutely egregious -- even with regard to

19   comparable behavior from some of his codefendants and

20   coconspirators, you know, I think plaintiffs' view is that

21   Mr. Ray's behavior is even worse than what we've seen in other

22   civil contempt hearings, for example.  But we believe that

23   evidentiary sanctions are warranted to fill the gap that has

24   existed as a result of Mr. Ray's refusal to provide us with

25   the documents and the accounts, the videos, and photographs to

Sines, et al. v. Kessler, et al. - 9/14/2020      14

1     which we are entitled.

2             And also, I'm very happy to answer any questions

3     that Your Honor may have about plaintiffs' position.  But

4     again, since this is now the third time that Mr. Ray has

5     refused to show up for a Court-Ordered deposition, I think

6     nothing less than actually going and physically finding him

7     will work in this case.

8             THE COURT:  Okay, thank you.  I don't have any

9     questions.

10            MS. PHILLIPS:  Okay.

11            THE COURT:  I intend to issue a written opinion, but

12    I can determine now that I find Mr. Ray to be presently in

13    contempt of court.

14            The elements of civil contempt are:

15            1, The existence of a valid decree of which the

16    alleged contemnor had actual or constructive knowledge;

17            2, That the decree was in the movant's favor;

18            3, That the alleged contemnor by its conduct

19    violated the terms of the decree, and had knowledge (at least

20    constructive) of such violations; and

21            4, That the movant suffered harm as a result.

22            I find that all of his elements have been met by

23    clear and convincing evidence.

24            Upon my own review of the record and considering the

25    argument and facts presented here, there is no question at all

1    and more than a clear and convincing case that Mr. Ray is in

2    contempt.

3            First, Mr. Ray has not complied to the very basic

4    obligations of every party in a civil case to respond to

5    discovery requests, and, namely here, the obligation to sit

6    for a deposition.

7            There are two Court Orders of which Mr. Ray had

8    actual or constructive knowledge that were unequivocal and

9    directed clearly to Mr. Ray -- from Judge Hoppe on July 23,

10   2020, and from this Court on August 27, 2020 -- which ordered

11   Mr. Ray to sit for a deposition upon oral examination.

12           While he was previously represented by counsel, Ray

13   is a pro se litigant at this point, but that is no excuse.

14   All parties have an obligation to respond to discovery

15   requests as well as to comply with Court Orders.

16           Second, these were Orders in Plaintiffs' favor that

17   would vindicate their right to receive relevant discovery from

18   Mr. Ray.

19           Third, there is no dispute Mr. Ray did not appear

20   for either Court-Ordered deposition.  He did not contact

21   opposing counsel as required, nor did he contact the Clerk's

22   Office to get information to participate in this hearing,

23   which is also required.

24           Mr. Ray has not attempted to tender any defense

25   either in writing or at this hearing today, and he is not here

 1    today at his show cause hearing as ordered.

 2           Fourth, by failing to appear at his deposition and

 3    failing these other obligations, plaintiffs have not received

 4    discovery to which they were entitled.  Their ability to

 5    develop and prosecute their case has been stymied.  They have

 6    also had to incur attorney's fees and costs to vindicate their

 7    right to discovery.

 8           I, therefore, find Mr. Ray in civil contempt of

 9    court.

10           I will next address the issue of remedy.

11           Had Mr. Ray appeared or taken some steps to begin to

12    comply with the Court's and Judge Hoppe's orders, I would have

13    considered lesser measures to secure his full compliance, such

14    as monetary obligations, but Mr. Ray still (internet

15    distortion) case and this proceeding and in total disregard of

16    the Court's Orders.

17           Do plaintiffs have anything else you would like to

18    add on the issue of remedy, anything you haven't said?

19           MS. PHILLIPS:  No, Your Honor, thank you.

20           (Interruption by the court reporter.)

21           THE COURT:  Let me see.  I'll start that paragraph

22    over.

23           Had Mr. Ray appeared or taken some steps to begin to

24    comply with the Court's and Judge Hoppe's orders, I would have

25    considered lesser measures to secure his full compliance, such

1   as monetary sanctions, but Mr. Ray is still absent from the

2   case and this proceeding and in total disregard of the Court's

3   Orders.

4           And I then asked plaintiffs' counsel if she had

5   anything else to say, which she now has responded that she

6   does not.

7           Unfortunately, as Mr. Ray has not seen fit to appear

8   today as ordered or to take any steps at all to comply, I see

9   no alternative but to issue a bench warrant for Mr. Ray's

10  arrest and have him transported to this district to be

11  detained until he purges himself of contempt by giving his

12  deposition.

13          That will issue shortly, along with a Civil Contempt

14  Order providing, again, the specific steps Mr. Ray can take

15  himself to purge himself of contempt.

16          All right.  Next we'll take up the status conference

17  in the case.

18          On August 25, 2020, the Court removed the jury trial

19  from the Court's calendar in October in view of the health

20  risks presented by COVID-19 and the anticipated expansive

21  breadth and scope of the trial.  In my order, I identified a

22  few preliminary issues that could assist the Court in

23  rescheduling the trial that I wanted the parties to be

24  prepared to discuss.

25          I will start with plaintiffs and then go around and

1    ask each of the defendant's counsel or defendants of any

2    input.

3            There are increasing numbers of in-person

4    proceedings in court, and jury trials are beginning to be

5    attempted in this district, although we have not had any, to

6    my knowledge.  But COVID-19 still appears a significant

7    threat.  Even though this trial will be postponed for months

8    and maybe closer to a year, the Court must plan to the extent

9    possible so that it would be held in the safest way possible.

10           Let's start with the non-COVID (internet distortion)

11   projected length of the trial.  I would like first to hear

12   from the plaintiffs how many weeks you think you really need.

13   You had previously -- I think the case was previously set for

14   three weeks; is that correct?  But I understand now you're

15   saying we need four weeks?  Is it the plaintiffs' position you

16   need four weeks?

17           MR. BLOCH:  Thank you, Judge.  This is Michael Bloch

18   on behalf of the plaintiffs from Kaplan Hecker & Fink.  That's

19   correct.  We did go back and check our potential witness

20   lists, and we do think that four weeks would be an appropriate

21   projection for the length of the trial.

22           THE COURT:  Okay.  Are you basing that on the number

23   of witnesses, or how do you come to the four weeks?  I just

24   had a trial that had 30-some witnesses, but it was a bench

25   trial, it was for two weeks, and we were through in about four

```
 1    days.
 2            MR. BLOCH:  Judge, to preview the answer to one of
 3    your later questions, we do all told project about 50
 4    witnesses.  And so that -- assuming that we will have a jury
 5    trial, we assumed somewhere in the nature of two to four days
 6    or so to pick a jury and about three weeks to move through the
 7    witnesses.
 8            THE COURT:  Okay.  Do the defendants have any
 9    different ideas about that?
10            MR. KOLENICH:  Your Honor, this is Jim Kolenich for
11    certain defendants.  I guess I'm unclear.  Are the plaintiffs
12    estimating four weeks just for their case in chief and jury
13    selection or is that an attempt to encompass defendants' case
14    in chief as well?
15            MR. BLOCH:  That was our impression of the entire
16    case.  Of our potential 50 witnesses, we assume some amount of
17    overlap in terms of the number of witnesses.  So let me just
18    start with, in terms of our projection number of witnesses,
19    that includes all parties, plaintiffs and defendants, which we
20    assume will likely testify either in our case in chief or in
21    the defendants' case in chief.  And so all told, parties plus
22    third parties, plus experts, we believe amounts to
23    approximately 50 witnesses in which case the four-week
24    projection was for everybody.
25            MR. KOLENICH:  Understood.  Thanks, Mike.
```

 1          In that case, I think I'm comfortable with the

 2   four-week estimate as well.

 3          THE COURT:  Okay, thank you.

 4          It looks like the case will have to be delayed at

 5   least until August or September of next year.  And Heidi, did

 6   you -- have you given them dates, possible dates for that?

 7          THE CLERK:  Yes, Your Honor.  I gave some dates.

 8          THE COURT:  But you haven't agreed on any dates; is

 9   that correct?

10          THE CLERK:  No, sir.  Nothing has come back as

11   agreed upon yet.

12          THE COURT:  Okay.  Well, I think it will have to be

13   that far off because, as you know, we haven't had any criminal

14   trials, either, and criminal cases have priority on the

15   docket.  But I think if we can set this a year off and the

16   COVID situation is improved, maybe we can get it done.

17          But we calculated about 50 possible persons being in

18   the court, just parties and attorneys, if they are all there

19   at one time.  And it would be helpful if you-all could figure

20   some way to stagger counsel or the parties being there, or

21   possibly even to appear by Zoom.  The case that I recently

22   tried, a good number of the witnesses appeared by Zoom, and it

23   seemed to work -- I thought it worked out well.  Of course, it

24   was not with a -- we were not dealing with a jury.  But you

25   might give that some thought.

1          There -- there are some discovery issues still

2     outstanding.  We haven't heard any motions for summary

3     judgment yet, and I know, although we're putting the case off

4     for a long ways, it seems to me it would be good to take up

5     motions since discovery should have been completed by now.  We

6     ought to take up motions for summary judgement not too far

7     from now because, if there are parties that should be

8     dismissed from the case, it would be helpful to get them out

9     of the case so that we would know what we were planning for by

10    way of a trial.  So I don't want to put the motions for

11    summary judgement off up until just near the date of trial

12    like it might be in just a normal case.  So you might think of

13    that once -- yes.

14          MR. BLOCH:  Judge, I'm sorry.

15          THE COURT:  Go ahead.

16          MR. BLOCH:  I didn't mean to interrupt.  This is

17    Michael Bloch.

18          THE COURT:  I think you may be muted.

19          MR. BLOCH:  Can you hear me now, Your Honor?

20          THE COURT:  Yes.

21          MR. BLOCH:  Can you hear me, Your Honor?

22          THE COURT:  I hear you when you're speaking, I hear

23    you, but then I don't hear anything after that.

24          MR. BLOCH:  Got it.  Thank you, Judge.

25          With respect to summary judgement, the prior

 1    scheduling order had a date of August 7 for summary judgement,

 2    which was prior to Your Honor's continuing the case.  One

 3    defendant -- well, three defendants represented by Bryan

 4    Jones -- League of the South, Michael Hill, and Michael

 5    Tubbs -- moved for summary judgement.  The rest of the

 6    defendants elected not to file summary judgement motions.  We

 7    have responded to the League of the South motion.  I believe

 8    they are contemplating filing a reply as well as setting a

 9    date for oral argument.  But it's my understanding that the

10    date for summary judgement has passed, and I think we've

11    actually completed that stage, other than the resolution of

12    the motion by --

13              MR. HEIMBACH:  Your Honor, this is Matthew Heimbach.

14    As a pro se litigant, I suppose I had missed the time stamp,

15    and that's actually one thing I wanted to bring before the

16    Court.  I was going to file my motion for summary judgment and

17    then had noticed in the motion, as Mr. Bloch had announced on

18    August 7, if there's a continuance where I could file it now I

19    could file that with the Court because I believe it would be

20    appropriate given my involvement in the case to have a motion

21    of summary judgement.

22              MR. SPENCER:  Your Honor, I would like to second

23    that sentiment.  Throughout August I was responding to the

24    requested admissions from plaintiffs as well, and I feel like

25    we are now in a position where these summary judgement motions

1    can be filed.  So if you could give us a reasonable deadline,

2    I can certainly meet that.

3              MR. BLOCH:  Judge, this is Mike Bloch.  From the

4    plaintiffs' perspective, we would oppose that.  There is --

5    there was ample time to file summary judgement up until August

6    7.  There was no indication that the trial date would be moved

7    at that point, other than defendants did file summary

8    judgement motions, and these defendants didn't.  So this to me

9    feels opportunistic, and at this point all the defendants are

10   out of time to file summary judgement motions, as are

11   plaintiffs, for that matter.

12             MR. CANTWELL:  If I could chime in on the motion for

13   summary judgment, I've been completely in the dark about

14   what's happening in this case.  I'm at a correctional facility

15   in the middle of the COVID lockdown, and nobody has been

16   serving me with anything, despite the fact that I notified the

17   Court of my presence here back in February.

18             The first thing I got from the plaintiffs in this

19   case was the request for admissions which they sent me in the

20   middle of August.  I only started getting court documents

21   towards the end of June, and so this is -- the deadline for

22   summary judgement is completely news to me.  I've been in the

23   dark about this case since January.

24             THE COURT:  Let me say for all the requests now for

25   summary judgement, those matters have been referred to Judge

1    Hoppe, and you'll take those up with Judge Hoppe.  And if he

2    allows it, then he'll give you the time.  He'll give you the

3    times within which you must file any motion.  And I think

4    that's the best way to handle that.  And of course -- well,

5    I'll just say previously these matters were referred to Judge

6    Hoppe, and so it's still in his hands.  So that would be -- if

7    you wish to make a motion to file a summary judgement late,

8    you may take it up with him.  All right.

9            But even so, what I was saying is I'd like to

10   resolve all motions like that as early as reasonably possible

11   without -- you know, there's no need to be in such a rush, but

12   I'd like to get it done so that we have all of that out of the

13   way and know what to plan on by way of trial.

14           One of the things that's really concerned the Court

15   is the size of the courtroom to handle a case of this size.

16   As I said, we think there will be at least 50 participants,

17   including lawyers and parties, and that's then, of course, we

18   have usually ten or so people connected with the Court that

19   would likely be in the courtroom.  I mean, we do have the

20   potential for the public in a civil case to be moved down --

21   down to another court, another room in the building.  So if

22   there's any public interest, which I would imagine there would

23   be, they could watch the proceedings from another space.  But

24   if the COVID-19 is still a problem at that time, it's going to

25   be awfully difficult to maintain any six-feet distance and

1    practically impossible to try a case unless we find another

2    venue.  And but we'll have to take that up as we get there.

3           Have the plaintiffs picked their counsel, selected

4    one of you to sort of be a point contact to assist in ensuring

5    compliance with health precautions going forward?

6           MR. BLOCH:  Yes, Judge, this is Michael Bloch, and

7    I'm happy to serve that role for plaintiffs.

8           THE COURT:  All right.

9           MR. BLOCH:  I did have additional thoughts with

10   respect to the trial date if it would be appropriate for me to

11   chime in on that now, Your Honor.

12          THE COURT:  Yes, go ahead.

13          MR. BLOCH:  Judge, one of the -- one of the dates

14   that Ms. Wheeler had suggested as potential trial dates was

15   April 26 as a start date.  We -- we discussed that internally.

16   That date works for all plaintiffs' counsel.  I also spoke

17   with each defense counsel, and I believe that date works for

18   each defense counsel.  I spoke individually with Mr. Spencer,

19   who I believe also has no objection to that.  I haven't heard

20   from Mr. Heimbach or Mr. Campbell on that point.

21          But if that date is potentially agreeable with Your

22   Honor, that is a date that I think works for at least the

23   overwhelming majority, if not all of the parties, at this

24   point.

25          I also think with respect to the length of trial, I

Sines, et al. v. Kessler, et al. - 9/14/2020      26

1    will say that plaintiffs and defense counsel have throughout

2    this case worked well together in term of streamlining things.

3    I do expect that -- and I hope that will continue with respect

4    to streamlining this trial process.  I think everybody here

5    shares the interest in getting this trial completed as swiftly

6    and efficiently as possible.

7          So if Your Honor is amenable to a potential April 26

8    trial date, that does work with the parties, and I do think

9    with respect to the length of trial and number of witnesses we

10   will be working together to streamline it as much as humanly

11   possible.

12         THE COURT:  Well, you know, I personally don't have

13   much of any problem with the April date.  My concern is, is

14   whether this pandemic is going to be abated enough to, you

15   know, try the case safely.  That's the biggest problem.  I

16   mean, we obviously -- we couldn't get 60 people in the

17   courtroom and maintain any distance, and it would just --

18   there would be 60 people, plus now we're talking about we

19   would have ten or so jurors I think to start out with.  There

20   will certainly be a number of alternates.

21         The biggest problem for the Court is we set a case

22   like that for a month and we -- and it affects all the other

23   cases on the docket, too, hearings and that sort of thing, and

24   then we end up not being able to use, you know, that month.

25   And so it's really backed the calendar up.  And if we are able

1      to try cases by April, we have to give the criminal cases some

2      priority.  And that's -- that's the problem I have.  I mean, I

3      would like to accommodate you, in particular, if you can do

4      it.

5               Heidi, I guess one thing we could do is set the case

6      in April and make a decision about sometime in January or

7      February.  We would know sort of how the pandemic is going.

8      If we have a vaccine by then, we may be able -- may be able to

9      do something.  We could tentatively --

10              THE CLERK:  And we could also set it and do a second

11     position out further to hold for a second position, Judge.

12              MR. BLOCH:  Judge, that sounds like -- that works

13     well for plaintiffs.

14              MR. SPENCER:  I have no objection to that.  I, too,

15     am fairly pessimistic about the notion that this pandemic will

16     be solved by the spring, to be honest, but I certainly don't

17     have any -- due to the pandemic, I don't have any major plans,

18     so I have no objection to a trial in the spring, or if you

19     have to do it a year from now.

20              THE COURT:  Okay.

21              MR. HEIMBACH:  Your Honor, this is Matthew Heimbach.

22     According to Dr. Fauci, or at CNN just yesterday, he estimated

23     that we won't see a reduction in the pandemic until the end of

24     next year.  Now, like everyone else, I'd like to see this

25     resolved as quickly as possible, but if the experts in the

 1    field are saying we're a year out, at least, from a

 2    resolution, I'm more curious about safety precautions, as you

 3    mentioned, for us, how many days defendants are to be there or

 4    witnesses, or what we're going to be doing to make sure that

 5    social distancing is taken into account and everyone is kept

 6    safe on both sides.

 7                THE COURT:  Well, I think that major concern.

 8                MR. BLOCH:  Judge, this is Michael Bloch, and I

 9    absolutely share everybody's concern with a time and manner

10    when it can be safe and healthy for everybody.

11                With respect to courtroom spacing, we have a number

12    of ideas and are happy to work with the Court and defendants

13    to achieve that.

14                In terms of time, one of the things that we're

15    obviously balancing from the plaintiffs' side is that this --

16    it's been over -- we're coming up on three years since this

17    case has been filed, and we'll be working into our fourth,

18    which is, obviously, a long time for everybody, but,

19    particularly, our clients who are hoping for a resolution as

20    soon as possible.

21                Just from experience having scheduled this

22    particular trial previously, it's been our experience that if

23    we don't -- if we aren't able to lock down dates, you know,

24    well ahead of time, given the number of parties and witnesses

25    and logistics that needs to go into scheduling the trial, then

1   we end up looking at a date much, much further down the road.

2            So I think your idea and Ms. Wheeler's idea of

3   setting an April date with a backup date later on in the fall,

4   as well as a status conference in January or February to see

5   if we're really on target for that date, makes a lot of sense.

6   If we are in a position to try it in April, and hopefully

7   we'll have more information about that in January or February,

8   I think everybody shares interest in getting it over with as

9   soon as possible.

10           THE COURT:  Okay.  Mr. Kolenich, did you have

11  anything to say?

12           MR. KOLENICH:  I think I'm largely in agreement with

13  setting the date in April, understanding there might be a

14  backup date, a second position date, whatever, and, of course,

15  criminal cases take precedence.  But I agree with plaintiffs

16  that the April date is best and that -- for a variety of

17  reasons, not the least of which this has gone on now for quite

18  some time and party defendants are also anxious to get full

19  resolution.

20           THE COURT:  Well, okay.  I'm willing to do that,

21  but, I mean, still I'm pessimistic that we're going to be able

22  to safely do it.  And safety is going to have to be the

23  greatest concern here.  So we'll do that and have a backup

24  date, too, Heidi, if you can work that out.

25           THE CLERK:  Yes, sir.  The first -- Mr. Bloch, I'm

1    looking through my email, too.  My first date preference

2    was -- I think the April date was not the first date

3    preference.  The first date preference, I can't remember what

4    it was, but I'll find it and we'll go back over that and see

5    if that works for everyone.  It was further out than April.

6    April was the second date.  I missed it in the email.  The

7    first date was either August or November.  So we'll look at

8    those dates again.

9            MR. BLOCH:  Thanks very much.  I think the dates

10   that I saw were April 26, August 2, and November 1.

11           THE CLERK:  Yeah.

12           MR. BLOCH:  The August 2 date did present a conflict

13   with some plaintiffs' counsel, which is why we ended up at the

14   April date.

15           THE COURT:  Okay.  Well, we'll do that.

16           Let me see if I have anything else.

17           Do any of the individual defendants who are not

18   represented have anything they would like to add, or is there

19   any defendants' counsel that hasn't spoken that would like to?

20           MR. SPENCER:  Your Honor, I would personally prefer

21   the November dates to the August dates, but I'm willing to do

22   the April date, although I -- I simply don't -- I think it's

23   unlikely that the pandemic will be resolved by then.

24           THE COURT:  Right.

25           MR. CAMPBELL:  Your Honor, this is Dave Campbell on

1    behalf of Defendant Fields, and I agree with, if the Court

2    will permit us, putting the April date on the calendar and

3    having another backup one farther off.

4         THE COURT:  Okay.  All right.  Well, we'll try the

5    April date but have the backup date, also.

6         MR. CAMPBELL:  And I also have a conflict in August,

7    so if we do the backup date, perhaps, if we could avoid

8    August, at least the second week of August, that would be

9    preferable to me.

10        THE COURT:  I think the backup date further -- as

11   far as possible would be best, because I think that's probably

12   going to be the one that we end up with.

13        THE CLERK:  Yes, Your Honor.

14        THE COURT:  So the November date would be good.

15        All right.  Is there anything else that anyone would

16   like to bring up at this time?

17        MR. CANTWELL:  Yes, Judge.  This is Christopher

18   Cantwell.

19        I had written both to the plaintiffs and to the

20   Court seeking more time to respond to their request for

21   admission.  I have jury selection tomorrow in my federal

22   criminal case here in New Hampshire, and the timing of that

23   was pretty inconvenient, as I had noted in my request.

24        THE COURT:  All right.  Can plaintiffs agree on a

25   little more time for him?

```
 1              MR. BLOCH:  This is Michael Bloch, Judge.  We do

 2     agree.

 3              THE COURT:  Okay.  How much time do you need, three

 4     weeks?

 5              MR. CANTWELL:  My trial is going to take about three

 6     weeks.  If we could do four, that would probably be better.

 7              THE COURT:  Okay.  Say 30 days from today.

 8              MR. CANTWELL:  Excellent.  Thank you very much, both

 9     of you.

10              THE COURT:  All right.  I don't believe I have

11     anything else right now.  If any of you do, you're welcome to

12     bring it up.

13              MR. BLOCH:  Judge, this is Michael Bloch from the

14     plaintiffs.  I have nothing else, unless any of my colleagues

15     have anything.  I think that's it from our side.

16              THE COURT:  All right.  Anyone else?

17              MR. SPENCER:  No.

18              THE COURT:  All right.  Thank you all for

19     participating today.  I appreciate it, your cooperation.  So

20     we'll recess now.  Thank you.

21              (The proceedings concluded at 3:00 p.m.)

22     ///

23

24

25
```

Sines, et al. v. Kessler, et al. - 9/14/2020          33

1               **CERTIFICATE**

2            I, Mary J. Butenschoen, certify that the foregoing

3    is a correct transcript from the record of proceedings in the

4    above-entitled matter.

5    /s/ Mary J. Butenschoen, RPR, CRR                  9/18/2020

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25