UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUÑIZ,
MARCUS MARTIN, NATALIE ROMERO,
CHELSEA ALVARADO, JOHN DOE, and
THOMAS BAKER,

                     Plaintiffs,

v.

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VANGUARD
AMERICA, ANDREW ANGLIN,
MOONBASE HOLDINGS, LLC, ROBERT
"AZZMADOR" RAY, NATHAN DAMIGO,
ELLIOTT KLINE a/k/a ELI MOSLEY,
IDENTITY EVROPA, MATTHEW
HEIMBACH, MATTHEW PARROTT a/k/a
DAVID MATTHEW PARROTT,
TRADITIONALIST WORKER PARTY,
MICHAEL HILL, MICHAEL TUBBS,
LEAGUE OF THE SOUTH, JEFF SCHOEP,
NATIONAL SOCIALIST MOVEMENT,
NATIONALIST FRONT, AUGUSTUS SOL
INVICTUS, FRATERNAL ORDER OF THE
ALT-KNIGHTS, LOYAL WHITE KNIGHTS
OF THE KU KLUX KLAN, and EAST
COAST KNIGHTS OF THE KU KLUX
KLAN a/k/a EAST COAST KNIGHTS OF
THE TRUE INVISIBLE EMPIRE,

                     Defendants.

Civil Action No. 3:17-cv-00072-NKM

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
DEFENDANT NATIONAL SOCIALIST MOVEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

      I.      Brief History of NSM ......................................................................................... 2

      II.     NSM's Role at Unite the Right......................................................................... 2

      III.   From the Outset, NSM Has Refused to Comply with Its Discovery
            Obligations, Forcing Plaintiffs to File Multiple Motions to Compel................... 3

      IV.   NSM's Refusal to Comply with the Court's June 23, 2020 Order ........................ 7

LEGAL STANDARDS ....................................................................................................... 10

ARGUMENT ...................................................................................................................... 11

      I.      NSM's Failure to Comply with Discovery Warrants Adverse Inferences ........... 11

            A.    NSM Has Acted in Bad Faith ................................................................. 12

            B.    NSM's Non-Compliance Has Severely Prejudiced Plaintiffs ................. 14

            C.    Deterrence Is Required Because Many Defendants Have Defied
                Court Orders and Resisted Complying with Their Obligations in
                This Case............................................................................................... 15

            D.    Lesser Sanctions than Adverse Inferences Would Not Be Effective........ 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*,
   155 F.3d 500 (4th Cir. 1998) ................................................................... 10

*Beaven v. U.S. Dep't of Justice*,
   622 F.3d 540 (6th Cir. 2010) ................................................................... 18

*Butler v. DirectSat USA, LLC*,
   No. 10-CV-2747, 2013 WL 6629240 (D. Md. Dec. 16, 2013) ................. 11

*Camper v. Home Quality Mgmt. Inc.*,
   200 F.R.D. 516 (D. Md. 2000) ................................................................. 10

*Daye v. Gen. Motors Corp.*,
   172 F.R.D. 173 (M.D.N.C 1997) ......................................................... 12, 13

*Diamond v. Mohawk Indus., Inc.*,
   No. 6:12-CV-00057, 2014 WL 1404563 (W.D. Va. Apr. 10, 2014) ........ 14

*Dusé v. Barnes & Noble, Inc.*,
   No. 1:11-CV-875, 2011 WL 13192908 (E.D. Va. Dec. 22, 2011) ........... 12

*First Mariner Bank v. Resolution Law Grp., P.C.*,
   No. 12-CV-1133, 2014 WL 1652550 (D. Md. Apr. 22, 2014) ................. 14

*Flame S.A. v. Indus. Carriers, Inc.*,
   39 F. Supp. 3d 752 (E.D. Va. 2014) ........................................................ 11

*Gardendance, Inc. v. Woodstock Copperworks, Ltd.*,
   230 F.R.D. 438 (M.D.N.C. 2005) ............................................................ 12

*Green v. John Chatillon & Sons*,
   188 F.R.D. 422 (M.D.N.C. 1998) ........................................................ 12, 13

*Hendricks v. Quikrete Cos.*,
   No. 14-CV-2695, 2017 WL 2711131 (D. Md. June 21, 2017) ................. 14

*Knight v. Boehringer Ingelheim Pharm., Inc.*,
   323 F. Supp. 3d 837 (S.D.W. Va. 2018) .................................................. 14

*Middlebrooks v. Sebelius*,
   No. 04-CV-2792, 2009 WL 2514111 (D. Md. Aug. 13, 2009) ................. 14

*Mut. Fed. Sav. & Loan v. Richards & Assocs.*,
872 F.2d 88 (4th Cir. 1989) .............................................................................. 10, 15

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) ............................................................................................. 15

*Nucor Corp. v. Bell*,
251 F.R.D. 191 (D.S.C. 2008) .............................................................................. 11

*Ottoson v. SMBC Leasing & Fin., Inc.*,
268 F. Supp. 3d 570 (S.D.N.Y. 2017) ................................................................. 17

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
734 F.3d 366 (4th Cir. 2013) ............................................................................... 10

*Pruitt v. Bank of Am., N.A.*,
No. 15-cv-01310, 2016 WL 7033972 (D. Md. Dec. 2, 2016) ................... 14, 16, 19

*Sampson v. City of Cambridge*,
251 F.R.D. 172 (D. Md. 2008) .............................................................................. 10

*Sawyers v. Big Lots Stores, Inc.*,
No. 7:08-CV-258, 2009 WL 55004 (W.D. Va. Jan. 8, 2009) ................................ 12

*Silvestri v. Gen. Motors Corp.*,
271 F.3d 583 (4th Cir 2001) ................................................................................. 15

*United States v. Burgos*,
94 F.3d 849 (4th Cir. 1996) .................................................................................. 14

*United States v. Masi*,
135 F.3d 771 (4th Cir. 1998) ................................................................................ 14

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
269 F.R.D. 497 (D. Md. 2010) .............................................................................. 10

*Vodusek v. Bayliner Marine Corp.*,
71 F.3d 148 (4th Cir. 1995) ............................................................................. 17, 18

**Federal Rules**

Fed. R. Civ. P. 37 ............................................................................................. 10, 11

**Other Authorities**

2 Wigmore on Evidence, § 285 (Chadbourn rev. 1979) .............................................. 18

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Motion for Sanctions Against Defendant National Socialist Movement ("NSM").  NSM has had ample opportunities throughout an extended, years-long discovery period to conduct a meaningful investigation into potentially relevant custodians, accounts, and devices, and to produce responsive documents.  Identifying relevant custodians is a preliminary step that is necessary in order to begin the discovery process, and Plaintiffs have now been asking NSM's current counsel, W. Edward ReBrook IV, for a list of NSM custodians for almost 18 months.  However, notwithstanding Plaintiffs' efforts and a court order specifically directing ReBrook to supply this basic information, he has continuously refused to do so.  Indeed, ReBrook has outright ignored Plaintiffs' attempts to contact him regarding his failure to comply with the Court's order for months.  Now, eight months after the document production deadline and nearly three months after the close of discovery, Plaintiffs still do not have information necessary to even begin discovery into responsive documents and relevant accounts and devices held by relevant NSM custodians.

Moreover, of the relatively few documents NSM has produced to date, the vast majority are non-responsive or unreadable.  NSM has also delayed investigation into other potentially responsive social media and email accounts and impeded access to those accounts by belatedly providing incorrect credentials, changing passwords without notice, and failing to resolve two-factor authentication issues.  And critically, NSM's current leader, Burt Colucci, has admitted on multiple occasions to ***destroying potentially responsive documents***.  NSM, its former "Commander" Jeff Schoep, current "Commander" Colucci, and ReBrook have also repeatedly offered unjustified excuses for NSM's violations of its discovery obligations, only to seemingly capitulate at the last minute after Plaintiffs have been forced to seek court intervention.  NSM is plainly not acting in good faith and instead is actively looking for opportunities to deny Plaintiffs

documents to which they are entitled.  This has been NSM's strategy throughout this litigation, and it has not wavered.  Any further orders to attempt to compel compliance would be futile, and adverse inferences are the only way to remedy the prejudice Plaintiffs have suffered and deter future contumacious conduct by NSM and the other Defendants.

Accordingly, Plaintiffs request that the Court instruct the jury that NSM chose to intentionally withhold its documents, and that the jury may draw adverse inferences from that fact, including that NSM chose to withhold such documents because it was aware that such documents contained evidence that NSM conspired to plan racially-motivated violence at Unite the Right.

## BACKGROUND[1]

### I.   Brief History of NSM

Defendant NSM was founded in 1974 and touts itself as the largest neo-Nazi coalition in the United States.  Motion to Compel Discovery from Defendant NSM 2, ECF No. 674 ("Second Mot. to Compel").  In 2008, Schoep incorporated NSM in Michigan.  *Id.*  In early 2018, Colucci became Chief of Staff and handled most of the day-to-day operations for NSM.  *Id.* at 2-3.  In March 2019, Colucci took over from Schoep as Commander of NSM.  *Id.* at 3.  NSM's website, which it has maintained for the past 20 years, describes NSM as "the largest and most active National Socialist party in America today."  *Id.* (marks and citation omitted).  NSM uses numerous social media accounts and email addresses, many of which NSM has maintained for years.  *Id.*

### II.   NSM's Role at Unite the Right

Various members of NSM, including then-Commander Jeff Schoep attended Unite the Right in August 2017 and participated in the violence that took place there.  *Id.*  In addition to Schoep, NSM members who attended include PR director Brian Culpepper, Ken Parker, and Peter

---

[1] Plaintiffs incorporate by the reference the Background sections of their prior motions to compel against NSM, ECF Nos. 547, 674.

Tefft.  *Id.*  On August 12, 2017, NSM marched in formation with other Defendants to Emancipation Park and helped create "two shield walls" for "the fight."  *Id.* (marks and citation omitted).  Along with other Defendants, NSM, led by Schoep, charged through protestors with rods and shields.  *Id.* Once inside Emancipation Park, Defendants used shields, rods, and flags to assault protestors.  *Id.* After authorities declared an unlawful assembly, Defendants moved to McIntire Park, and Schoep attacked protestors along the way.  *Id.*  Schoep later led a group of 40 followers from McIntire Park back to Emancipation Park "through Antifa and police interference."  *Id.* (marks and citation omitted).

NSM covered the events of Unite the Right and put together a program regarding those events that contained reports, observations and analysis from Culpepper and others who had attended the rally.  *Id.*  Culpepper drafted an "After Action Report" declaring the events a "huge success."  *Id.* at 4. (marks and citation omitted).  Schoep also tweeted after the events of August 11-12, 2017 that "It was an Honor to stand with U all in C'Ville this weekend.  NSM, NF, TWP, LOS, VA, ECK, CHS, and the rest, true warriors!"  *Id.* (marks and citation omitted).

## III.   From the Outset, NSM Has Refused to Comply with Its Discovery Obligations, Forcing Plaintiffs to File Multiple Motions to Compel

As the Court is well aware, NSM has a long history of failing to comply with its discovery obligations in this case.  Plaintiffs served initial discovery requests on NSM in January 2018, and NSM's April 9, 2018 responses plainly showed that at that point no investigation had been done regarding custodians of potentially responsive information.  *Id.* at 4.  On November 19, 2018, this Court entered the Stipulation and Order for the Imaging, Preservation, and Production of Documents, which required NSM to execute certificates identifying sources of potentially relevant documents.  ECF No. 383.  NSM's certification only identified sources controlled by Defendant

Jeff Schoep; there was not a single device or account that appeared to contain documents for any other NSM custodian.  Second Mot to Compel 4.

Around this same time in late 2018, as Schoep began looking for a way to avoid the mounting cost and potential liability of this litigation, he met African-American activist James Hart Stern, and they discussed their plan to transfer control of NSM from Schoep to Stern.  *Id.* at 5.  As part of that plan and with Schoep's approval, Schoep's girlfriend Acacia Dietz filed documents as the resident agent of NSM, reassigning the roles of President, Secretary, and Treasurer of NSM to Stern.  *Id.*  On March 1, 2019, Schoep stepped down as Commander of NSM, announced that Colucci had taken over as the new Commander, and claimed Stern had fraudulently manipulated him into turning over NSM.  *Id.* at 7.  Then began a tug-of-war for control over NSM between Stern on one side and Colucci, Dietz, and other NSM members on the other.  *Id.* at 7-8.  In May 2019, tired of this tug-of-war, Colucci registered the "National Socialist Movement Corporation" in Florida.  *Id.* at 8.  Under Colucci's leadership, NSM's operations continued essentially just as before, with the "inner circle" continuing to include Colucci, Mike Schloar, and Harry Hughes and using largely the same website.  *Id.* at 8-9.

In the midst of this battle for control over NSM, on February 16, 2019, the day after Schoep was ordered to sign the third-party vendor contract to facilitate the production of documents, Schoep fired the attorney representing him and NSM.  Mot. to Compel Defendant NSM to Disclose Custodians of Discoverable Documents and Information 4, ECF No. 547 ("First Mot. to Compel").  On March 18, 2019, ReBrook identified himself as counsel for Schoep, NSM, and Nationalist Front.  *Id.*  On April 8, 2019, after Plaintiffs were forced to file a motion for sanctions against Schoep for failing to sign the third-party vendor contract, Plaintiffs noted to ReBrook that NSM had failed to disclose numerous social media accounts and electronic devices and requested that

NSM disclose any additional custodians who possess devices and accounts with responsive information. *Id.* at 5. By August 22, 2019, Plaintiffs had made no fewer than seven separate inquiries to ReBrook as to whether there were any other NSM custodians besides Schoep. *See id.* at 5-8. ReBrook repeatedly took the position that his "only human client" was Schoep and attempted to place the burden on Plaintiffs to identify NSM custodians and verify compliance. *See* First Mot. to Compel 6-8; Second Mot. to Compel 10-11.

On September 3, 2019, Plaintiffs moved to compel NSM to disclose custodians of discoverable information. *See generally* First Mot. to Compel. As discussed in that motion, ReBrook had refused to conduct any meaningful investigation to determine which custodians for NSM possessed responsive documents, despite Plaintiffs' months-long efforts. *Id.* at 5-10, 13-15. ReBrook also went so far as to try to withdraw as counsel for NSM. *See* ECF No. 547-19 (Ex. 19 to First Mot. to Compel). In doing so, Rebrook did not specify any attempts he had made to contact custodians of NSM, beyond asking Schoep to contact Culpepper and Colucci. First Mot. to Compel 9. The Court granted Plaintiffs' First Motion to Compel and ordered Colucci to sit for a deposition regarding NSM's discovery efforts, explicitly noting the "expect[ation] that Mr. Colucci will appear and participate in good faith as required by the Federal Rules of Civil Procedure and this Court's prior discovery orders." Order 1-2, ECF No. 582.

Plaintiffs deposed Colucci on December 10, 2019, which revealed that NSM had done no meaningful investigation into potential custodians, had withheld responsive documents, and had failed to disclose numerous response devices and social media accounts. Second Mot. to Compel 13-17. Colucci also admitted that he had destroyed unproduced information relating to NSM members on June 18, 2019, *id.* at 14, and that NSM's discovery responses were incomplete, *id.* at 17. Plaintiffs asked Colucci at his deposition to produce his responsive devices and documents,

and Colucci refused to do so without Court intervention, stating that he "d[id] not want [his] Fourth Amendment infringed upon." *Id.* at 15 (marks and citation omitted).

Plaintiffs then made several specific requests to ReBrook to correct various discovery deficiencies, to no avail.  Per ReBrook, "Mr. Colucci respectfully declines to co-operate with Plaintiff's request[s]. . . ." *Id.* at 18 (marks citation omitted).  Colucci also tried to rely on the fiction that his organization, National Socialist Movement Corporation in Florida, is distinct from NSM in Michigan, and the former was not required to respond because it is not a party to this litigation.[2]  *Id.*  In addition, NSM failed to produce any documents prior to the expiration of the deadline for Defendants to produce all discoverable material on February 5, 2020.  *Id.*  Plaintiffs then filed another motion to compel, requesting *inter alia* that NSM be compelled to produce electronic devices, disclose social media credentials, produce documents for review, and conduct an investigation into potentially relevant custodians.  *Id.* at 1-2, 25.

On June 23, 2020, the Court granted Plaintiffs' Second Motion to Compel Discovery from NSM in its entirety.  Mem. Op. & Order 11, ECF No. 774.  The Court noted that it had "already held Plaintiffs are entitled to the requested material" and that Colucci had "ignored outright the Court's first order directing him to cooperate with Plaintiffs' counsel[.]"  *Id.* at 10-11 (internal marks and alteration omitted).  The Court determined that Colucci's "track-record of failing to fulfill his obligations in a timely manner" had "le[ft] the Court no choice but to impose another special discovery procedure that will move this case forward to trial."  *Id.* (internal marks omitted).  Among other steps, the Court specifically ordered that:

---

[2] As discussed in Plaintiffs' Second Motion to Compel, there is ample evidence that National Socialist Movement Corporation in Florida is a mere continuation of NSM in Michigan.  Second Mot. to Compel 19-22.

- By June 29, 2020, Colucci, the "Commander" of NSM, must complete a revised certification form identifying all potentially relevant social media accounts and electronic devices;

- By July 1, 2020, Colucci must send to the third-party discovery vendor ("Vendor") all of the potentially relevant electronic devices that Colucci had identified;

- By July 3, 2020, "Defendant NSM's attorney of record shall give the Vendor and Plaintiffs' counsel a complete list of all potentially relevant custodians . . . as well as the last known credentials to access any social media accounts that may contain responsive materials from all such individuals[.]"

*Id.* at 12-13.

## IV.   NSM's Refusal to Comply with the Court's June 23, 2020 Order

After the Court issued its June 23 Order, Colucci provided to Plaintiffs a certification form identifying certain social media accounts, credentials, and electronic devices and turned in a laptop and a cellphone to the Vendor for imaging and production.

On July 30, 2020, Plaintiffs contacted ReBrook regarding three issues with Colucci's disclosures and production.  *See* Ex. A (July 30, 2020 Email from Y. Barkai to E. ReBrook, cc: J. Phillips).  First, the 935 documents produced from Colucci's Aspire 3 laptop consisted of largely unreadable and entirely unresponsive files, and the approximately 100 text messages produced from Colucci's iPhone 11 Pro Max were blank.  *Id.*  Second, the Vendor was not able to access any of the approximately 50 social media and email accounts Colucci disclosed, and Colucci failed to explain his attempts to reset or recover the credentials for the vast majority of the accounts. Incredibly, Colucci provided incorrect credentials for an email account he had used to contact Plaintiffs' counsel on July 1, 2020.  *Id.*  Third, Plaintiffs identified various accounts and devices

that Colucci had failed to disclose. *Id.* Plaintiffs requested a response by August 4, 2020. *Id.* Not having received a response, Plaintiffs followed-up with ReBrook on August 7, 2020. Ex. B (Aug. 7, 2020 Email from Y. Barkai to E. ReBrook, cc: J. Phillips).

ReBrook finally responded on August 10, 2020, forwarding an email from his legal assistant (and Schoep's girlfriend) Acacia Dietz. Ex. C (Aug. 10 Email from E. ReBrook to Y. Barkai). Among other things, Dietz stated that she was:

> currently attempting to get Mr. Colucci to coordinate with IDS regarding the emails that need the 2FA bypassed . . . and I am also trying to reach Mr. Colucci to retrieve current passwords [for four accounts] and to have him do an amended Certification form. I previously spoke with Mr. Colucci after receiving the email from Mr. Barkai and according to the Order dated 6/23/2020 iDS was to have all data collected and given to Plaintiffs "on or before July 10, 2020", so according to Mr. Colucci all the passwords for the above accounts were changed on July 11, 2020 with the understanding that iDS had already collected whatever was needed etc. However, according to iDS, collection for these accounts was attempted on July 10, 2020 with no success.

*Id.* In other words, according to Dietz, Colucci provided the Vendor with non-working credentials. Then, without verifying whether the Vendor was able to access the accounts or working with the Vendor to resolve two-factor authentication issues, Colucci immediately logged on to these accounts (presumably with the then-correct credentials) on July 11, 2020, changed the passwords, and did not provide the new passwords to the Vendor.

Plaintiffs responded to ReBrook on the same day, August 10, 2020, requesting a status update as to Dietz's efforts to retrieve the passwords for the social media accounts and to work with Colucci and the Vendor to bypass two-factor authentication. Ex. D (Aug. 10, 2020 Email from Y. Barkai to E. ReBrook, cc: J. Phillips). Plaintiffs also raised a separate issue—the Court's Order that ReBrook provide a list of all potentially relevant NSM custodians and credentials by July 3, 2020—because ReBrook had failed to provide any such list. Plaintiffs asked ReBrook to advise as to the status of his investigation of custodians and credentials. *Id.*

On August 11, 2020, Colucci sat for another deposition.  Colucci admitted for the first time that on July 11, 2020, not only did he change passwords (as Dietz had explained), but Colucci had in fact ***deleted*** two email addresses he had used for responsive communications.  In Colucci's words, there was "no reason for those accounts to exist anymore" once he had provided the (incorrect) credentials to the Vendor.  And when asked, "Did you do anything to save the contents of the . . . email addresses before you deleted them?," Colucci unequivocally replied, "Absolutely not."  Ex. E (Aug. 11, 2020 Deposition of B. Colucci at 88-89).

On August 17, 2020, not having received a response to their August 10 email, Plaintiffs again wrote to ReBrook requesting status updates as to the issues identified in their August 10 email.  Ex. F (Aug. 17, 2020 Email from Y. Barkai to E. ReBrook, cc: J. Phillips and M. Bloch). ReBrook did not respond.

On August 31, 2020, Plaintiffs wrote to ReBrook requesting to meet-and-confer regarding NSM's discovery deficiencies.  Ex. G (Aug. 31, 2020 Email from Y. Barkai to E. ReBrook, cc: J. Phillips and M. Bloch).  ReBrook did not respond.

On September 1, 2020, Plaintiffs sent ReBrook a letter regarding NSM's discovery deficiencies and Plaintiffs' sustained efforts to contact ReBrook to resolve the deficiencies.  Ex. H (Sept. 1, 2020 Ltr. from J. Phillips to E. ReBrook).  In the letter, Plaintiffs requested that ReBrook provide a status update by September 4, 2020, as to: (1) resolution of all remaining credential or two-factor authentication issues relating to Colucci and NSM's email and social media accounts; (2) ReBrook's investigation of all potentially relevant NSM custodians and credentials; and (3) a date certain by which ReBrook would commit to complete each of the foregoing.  *Id.* at 4-5.  To date, ReBrook has not responded.

## LEGAL STANDARDS

A court has wide discretion to impose sanctions when a party fails to respond to discovery requests or to comply with discovery ordered by the court. *See* Fed. R. Civ. P. 37; *Mut. Fed. Sav. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989). Rule 37 provides a nonexclusive list of substantive, case-related sanctions for failure to obey a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 517–18 (D. Md. 2000). A court may also award sanctions for discovery violations pursuant to its inherent authority. *See, e.g.*, *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 178–79 (D. Md. 2008).

The Fourth Circuit uses a four-part test for determining what sanctions to impose under Rule 37: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non–compliance, and (4) whether less drastic sanctions would be effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). The presence or absence of any one of these factors is not dispositive. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010).[3]

---

[3] The factors courts consider in exercising their inherent authority largely mirror those courts apply under Rule 37: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [the court] seldom dismiss[es] claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Projects Mgmt.*, 734 F.3d at 373–74 (quotation marks and citation omitted).

## ARGUMENT

### I.    NSM's Failure to Comply with Discovery Warrants Adverse Inferences

Throughout the course of this case, NSM has consistently and repeatedly failed to comply with court orders, attempted to mislead Plaintiffs and the Court about various issues, stonewalled Plaintiffs' discovery efforts, and destroyed and failed to preserve documents and sources of potentially responsive information.  From the beginning of this case, Schoep, the former Commander of NSM, resisted complying with Plaintiffs' discovery requests.  After taking over as Commander from Schoep, Colucci has followed suit and also refused to cooperate in discovery, doing his utmost to delay compliance as long as possible and only do the bare minimum required by an unreasonably narrow interpretation of the Court's specific orders.

NSM's counsel, ReBrook, has made no apparent effort to comply with the Court's order directing him to investigate NSM's custodians, even though Plaintiffs have been inquiring about that issue for almost a year and a half.  And despite Plaintiffs' efforts to contact ReBrook on multiple occasions regarding his and NSM's deficiencies with respect to the Court's June 23 Order and to attempt to meet-and-confer, Plaintiffs have been waiting to no avail on a response from ReBrook for three months.

Rule 37(b)(2)(A)(ii) provides for sanctions to remedy the prejudice to Plaintiffs and deter other Defendants contemplating similar transgressions.  *E.g.*, *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014) ("Continued contumacious behavior and abuse through non-compliance with [a Court's] orders cannot be tolerated."); *Butler v. DirectSat USA, LLC*, No. 10-CV-2747, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("A party's total failure to comply with the mandates of discovery, with no explanation for that failure, can certainly justify [the] harshest of sanctions."); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 194 (D.S.C. 2008).

Plaintiffs request that the Court instruct the jury that Defendant NSM chose to intentionally withhold and destroy documents and that the jury may draw adverse inferences from that fact, including that NSM chose to withhold and destroy such documents because they were aware that such documents contained evidence that they conspired to plan racially motivated violence at Unite the Right.

### A.      NSM Has Acted in Bad Faith

It is abundantly clear that NSM has acted in bad faith.  Relevant factors in this analysis include whether a decision not to participate is conscious, whether there is a legitimate explanation for the failure to participate, and the length of time a party has failed to participate.  *E.g.*, *Dusé v. Barnes & Noble, Inc.*, No. 1:11-CV-875, 2011 WL 13192908, at *2 (E.D. Va. Dec. 22, 2011) (subsequent history omitted); *Sawyers v. Big Lots Stores, Inc.*, No. 7:08-CV-258, 2009 WL 55004, at *3 (W.D. Va. Jan. 8, 2009); *Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, 230 F.R.D. 438, 452 (M.D.N.C. 2005); *Green v. John Chatillon & Sons*, 188 F.R.D. 422, 424 (M.D.N.C. 1998); *Daye v. Gen. Motors Corp.*, 172 F.R.D. 173, 177 (M.D.N.C 1997).

Here, NSM has "made a conscious decision not to participate" in this litigation, and this "refusal amounts to bad faith[.]"  *Dusé*, 2011 WL 13192908, at *2.  Plaintiffs have been attempting to obtain a list of email and social media accounts and credentials for NSM and to identify all potentially relevant NSM custodians since at least April 2019.  Now, almost 18 months and two motions to compel later, Plaintiffs still do not have that information.  At the start of the case when he was still Commander of NSM, Schoep refused to conduct an initial investigation of custodians and resisted Plaintiffs' discovery efforts.  *See* First Mot. to Compel 3-4.  After taking the helm of NSM, Colucci has followed Schoep's lead and likewise refused to cooperate in discovery.  The Court found in its order on Plaintiffs' Second Motion to Compel that Colucci "ignore[d] outright" its first order directing him to cooperate, Order at 11, ECF No. 774 (marks omitted).  Although

Colucci purported to identify some social media and email accounts that he had not previously disclosed, he provided incorrect credentials to the Vendor, changed the credentials without notifying the Vendor, deleted certain accounts, and (as far as Plaintiffs are aware) failed to resolve two-factor authentication issues.

Additionally, ReBrook, an officer of the Court, has failed repeatedly to provide a complete list of all potentially relevant custodians for NSM, in violation of this Court's June 23 Order, despite Plaintiffs' numerous requests in 2019 and following the Court's order. As Plaintiffs have explained time and again, it is NSM's responsibility to meaningfully investigate relevant custodians and sources of responsive information, whether by asking Schoep, Colucci, or otherwise. The delay and recalcitrance that NSM and ReBrook have exhibited alone demonstrates bad faith. *See Green*, 188 F.R.D. at 424; *Daye*, 172 F.R.D. at 177. Over eight months after the deadline to produce documents passed and almost three months after the close of fact discovery, Plaintiffs still do not even have a complete list of custodians, email and social media accounts, and working credentials for NSM. To put it plainly, NSM should have completed discovery long ago, and instead it has failed to complete even basic steps to start that process.

Moreover, NSM, through Schoep, Colucci, and ReBrook, has offered only unjustified excuses and unfounded arguments to avoid cooperating in discovery and complying with this Court's orders in good faith, including that ReBrook's "only human client" is Schoep, that Plaintiffs should be the ones identifying NSM custodians, and that the Fourth Amendment protects Colucci from discovery. *See supra* Section III. NSM and Colucci have also tried to rely on the fiction that the NSM run by Colucci in Florida is separate from Defendant NSM and thus is immune from discovery. And most recently, Colucci obstructed access to email and social media accounts by providing incorrect credentials and failing to resolve two-factor authentication issues,

and he deleted email accounts notwithstanding NSM's obligations to preserve. The Court should not permit NSM to escape liability through delay, defiance, and deceit. NSM has refused to cooperate in discovery, and the evidence unequivocally establishes that NSM, through Schoep, Colucci, and Rebrook, has acted in bad faith.

**B.     NSM's Non-Compliance Has Severely Prejudiced Plaintiffs**

"The purpose of pre-trial discovery is for a litigating attorney to obtain information from the opposing party, information which in many cases is not otherwise available"; therefore, "an absolute lack of discovery results in clear prejudice." *Middlebrooks v. Sebelius*, No. 04-CV-2792, 2009 WL 2514111, at *3 (D. Md. Aug. 13, 2009); *accord Pruitt v. Bank of Am., N.A.*, No. 15-cv-01310, 2016 WL 7033972, at *3 (D. Md. Dec. 2, 2016). Here, NSM, Schoep, and Colucci's repeated and ongoing discovery misconduct has caused "significant procedural and substantive prejudice" to Plaintiffs, who have "been stymied at every turn . . . to get the evidence [they] need[] to prosecute [their] claims." *First Mariner Bank v. Resolution Law Grp., P.C.*, No. 12-CV-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014); *accord Diamond v. Mohawk Indus., Inc.*, No. 6:12-CV-00057, 2014 WL 1404563, at *5 (W.D. Va. Apr. 10, 2014).

The prejudice is even more striking here because "the evidence sought by [Plaintiffs'] discovery requests 'goes to the heart'" of Plaintiffs' conspiracy claim. *See Hendricks v. Quikrete Cos.*, 14-CV-2695, 2017 WL 2711131, at *4 (D. Md. June 21, 2017); *see also Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018) ("[P]rejudice arises when a party 'cannot present evidence essential to its underlying claim.'"). Plaintiffs may prove a conspiracy "'by circumstantial evidence . . . of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *United States v. Masi*, 135 F.3d 771, at *6 (4th Cir. 1998) (table decision) (alteration in original) (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)).

However, the dearth of documents from NSM impedes Plaintiffs' ability to prove the manner in which they communicated and conspired with other Defendants and jeopardizes Plaintiffs' ability to prove their case against other Defendants as well. NSM has produced relatively few documents, and the vast majority of what it is has produced to date is non-responsive and/or unreadable. Discovery is now closed, and Plaintiffs still do not have a full list of the relevant NSM custodians or what devices, accounts, and documents they may have. Plaintiffs are also unable to access the social media and email accounts that NSM has now disclosed and has not yet deleted. With each passing day it becomes more certain that Plaintiffs will never be able to discover responsive documents from these unknown custodians and accounts. Furthermore, NSM and ReBrook's discovery misconduct, along with that of other Defendants, has prejudiced Plaintiffs by delaying their day in court and their attempt to vindicate their rights. *See* ECF Nos. 461, 597.

## C. Deterrence Is Required Because Many Defendants Have Defied Court Orders and Resisted Complying with Their Obligations in This Case

Sanctions are required not only to remedy the prejudice to Plaintiffs but also to deter other Defendants from ignoring court orders, resisting compliance with their obligations, and running out the clock on deadlines in this case. *Mut. Fed. Sav. & Loan*, 872 F.2d at 93 (affirming default judgment sanction where trial court found noncompliance included "stalling and ignoring the direct orders of the court with impunity" and concluded "such misconduct must obviously be deterred"). "[T]o ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." *Id.* at 92; *see Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (sanctions appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir 2001) ("The courts must protect the integrity of the judicial process because, '[a]s

soon as the process falters . . . the people are then justified in abandoning support for the system.'" (alteration in original)); *Pruitt*, 2016 WL 7033972, at *2 ("[T]he need to deter this type of conduct is manifest. Civil cases simply cannot proceed without participation by all parties in discovery.").

As the Court is well aware, NSM is far from the only Defendant to have violated Court orders, ignored deadlines, and resisted case deadlines. Several Defendants have defaulted from the litigation entirely. ECF Nos. 268–71, 280. Nearly all Defendants who remain dragged their heels and missed discovery deadlines, forcing Plaintiffs and the Court to expend countless hours pursuing the discovery to which they are entitled. The Court postponed trial by more than a year because Defendants refused to comply with their obligations. ECF No. 461. Defendants Schoep, Kline, Heimbach, Vanguard America, Fields, and Ray have all been the subjects of motions for sanctions due to their own noncompliance with discovery. ECF Nos. 432, 457, 465, 565, 601, 671, 713, 750.

Nor is NSM's behavior new. To the contrary, this has been NSM's strategy all along. From the beginning of this case, Schoep tried to avoid his discovery obligations both for himself and for NSM, was subject to a motion for sanctions, and then turned the organization over to Colucci. When Colucci's first deposition revealed additional discovery deficiencies by NSM, Plaintiffs demanded Colucci produce relevant devices and documents. Colucci refused and then posted on the social media website VK that "[m]y advice is to politely tell them to all fuck off as I have, regardless of their threats." Second Mot. to Compel 1 (marks and citation omitted). Despite NSM's change in leadership and despite losing multiple discovery motions, NSM has not wavered from its course of contumacious and disobedient conduct.

Even more concerning, NSM's counsel ReBrook has failed for more than ***three*** months to comply with the Court's June 23 Order to provide a list of all potentially relevant NSM custodians

by July 3, 2020.  Following the Court's Order and not having heard from ReBrook, Plaintiffs contacted ReBrook regarding his failure to investigate custodians, in violation of the Court's Order.  For over three months now, ReBrook has refused to respond to Plaintiffs' email communications or letters, acknowledge the Court's Order, or provide Plaintiffs with a status update as to his efforts.  Indeed, since the Court's June 23 Order, ReBrook has sent precisely one communication to Plaintiffs regarding that Order.  That email was sent over two months ago and did not address the issue of NSM custodians.  ReBrook has wholly ignored Plaintiffs' attempts to schedule a meet and confer to discuss NSM's and ReBrook's failure to comply with the June 23 Order.  If NSM's own counsel is permitted to baldly ignore the Court's orders, Plaintiffs' communications, and his obligations as an officer of the Court, NSM—and the other Defendants— will only be encouraged to further defy Court orders and obstruct progress in this case.  Indeed, the parties' preparation for trial will require more coordination among the parties, not less, and ReBrook's conduct on behalf of NSM only encourages further disobedience and delay.

### D.       Lesser Sanctions than Adverse Inferences Would Not Be Effective

"As a general proposition, the trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence.   While a finding of bad faith suffices to permit such an inference, it is not always necessary."  *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).  "Such an instruction can be 'critical to assisting the innocent party in establishing the nature of the evidence that has gone missing'" and "'ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence.'"  *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017) (citation omitted).

NSM's conduct has left Plaintiffs with a significant evidentiary gap.  NSM has failed to produce a list of potentially relevant custodians and correctly identify email and social media

accounts and credentials—impeding Plaintiffs' ability to obtain any documents from those custodians and accounts.  Plaintiffs have been attempting to obtain this information for years, and this Court has imposed multiple special discovery procedures, to no avail.  Moreover, Colucci admitted in his first deposition to ***destroying*** responsive documents containing information relating to NSM members and in his second deposition to ***deleting*** email accounts—evidence that Plaintiffs will never be able to recover due to Colucci's actions.  There can be no question that the documents withheld by NSM—including communications among NSM members—"would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Vodusek*, 71 F.3d at 156.

Adverse inferences are tailor-made for this situation.  "Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that 'the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.'"  *Id.* (quoting 2 Wigmore on Evidence, § 285 (Chadbourn rev. 1979)); *see Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554–55 (6th Cir. 2010).  Adverse inferences are the only way to "level[] the evidentiary playing field and . . . sanction[] the improper conduct" in this case.  *Vodusek*, 71 F.3d at 156. Accordingly, Plaintiffs ask the Court to fill the evidentiary gap by instructing the jury that NSM chose to intentionally withhold their documents.  Plaintiffs further ask the Court to instruct the jury that it may draw adverse inferences from the fact that NSM withheld its documents, including that NSM chose to withhold its documents because it was aware that such documents contained evidence that they conspired to plan racially motivated violence at Unite the Right.

Moreover, because NSM has refused to participate in discovery for years after numerous communications and Court orders—and given that NSM, Schoep, and Colucci have attempted to

distance themselves from the litigation expressly to avoid any further disclosure or liability— "there is nothing to indicate that a less drastic sanction would lead to different results." *Pruitt*, 2016 WL 7033972, at *3. There is little doubt that ordering NSM and ReBrook once again to comply with NSM's discovery obligations, conduct meaningful investigation into custodians, and produce responsive electronic devices and social media accounts would be futile. NSM has had ample chances and the benefit of multiple court orders over the course of years—including many months after the document production deadline—to come into compliance with its discovery obligations, but it has plainly refused to do so. Enough is enough. NSM should not be permitted to withhold documents and avoid discovery without allowing Plaintiffs a mechanism—adverse inferences—to close the evidentiary gap NSM created.

## CONCLUSION

Accordingly, Plaintiffs request that the Court instruct the jury that NSM chose to intentionally withhold its documents, and that the jury may draw adverse inferences from that fact, including that NSM chose to withhold such documents because it was aware that such documents contained evidence that NSM conspired to plan racially motivated violence at Unite the Right.

Dated: October 15, 2020                  Respectfully submitted,

                                         */s/ Robert T. Cahill*
                                         Robert T. Cahill (VSB 38562)
                                         COOLEY LLP
                                         11951 Freedom Drive, 14th Floor
                                         Reston, VA 20190-5656
                                         Telephone: (703) 456-8000
                                         Fax: (703) 456-8100
                                         rcahill@cooley.com

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 70005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kcheng@bsfllp.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 70006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Alexandra Eber (*pro hac vice*)
Caitlin B. Munley (*pro hac vice*)
Samantha A. Strauss (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
aeber@cooley.com
cmunley@cooley.com
sastrauss@cooley.com

Alan Levine (pro hac vice)
Philip Bowman (pro hac vice)
Amanda L. Liverzani (pro hac vice)
Daniel P. Roy III (pro hac vice)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
aliverzani@cooley.com
droy@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Justin Saunders Gravatt
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

I further hereby certify that on October 15, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert Azzmador Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

_/s/ Robert T. Cahill_
Robert T. Cahill (VSB 38562)
COOLEY LLP

_Counsel for Plaintiffs_