UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOTT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 3:17-cv-00072-NKM |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS
AGAINST DEFENDANT NATIONAL SOCIALIST MOVEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    I.    NSM Has Failed to Comply with Its Discovery Obligations and the June 23 Order ..................................................................................................... 2

        A.    NSM's Failure to Provide Valid Credentials for Accounts in Colucci's Custody or Control ........................................................... 2

        B.    NSM's Failure to Investigate Potentially Relevant Custodians ................. 5

    II.    Plaintiffs Are Entitled to Adverse Inferences as a Sanction for NSM's Bad-Faith Conduct in Discovery ............................................................. 8

    III.    NSM's Other Arguments Are Irrelevant or Meritless ......................................... 11

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Colonies Partners, L.P. v. Cty. of San Bernardino*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*,
  No.518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) .............................. 11

*d'Amico Dry d.a.c. v. Nikka Fin., Inc.*,
  429 F. Supp. 3d 1290 (S.D. Ala. 2019), *appeal dismissed,* No. 19-11189-GG, 2020 WL
  5498487(11th Cir. May 19, 2020) ............................................................................................. 10

*Hadidi v. Intracoastal Land Sales, Inc.*,
  No. 4:12-CV-00535-RBH, 2013 WL 12148457 (D.S.C. Aug. 29, 2013) ................................ 10

*In re Reifler, No. 18-CV-4*,
  711 (KMK), 2019 WL 396525 (S.D.N.Y. Jan. 31, 2019) ............................................................ 11

*OmniGen Research v. Yongqiang Wang*,
  321 F.R.D. 367 (D. Or. 2017) .................................................................................................. 11

*Sines v. Kessler*,
  No. 3:17-CV-00072, 2019 WL 3767475 (W.D. Va. Aug. 9, 2019) ............................................. 9

*Stevenson v. Union Pac. R.R.*,
  354 F.3d 739 (8th Cir. 2004) ..................................................................................................... 10

*Tholen v. Assist Am., Inc.*,
  2019 WL 3293709 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*,
  No. CV 17-3919 (DWF/SER), 2019 WL 2387109 (D. Minn. June 6, 2019) ............................ 9

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  269 F.R.D. 497 (D. Md. 2010) ................................................................................................. 10

*Vodusek v. Bayliner Marine Corp.*,
  71 F.3d 148 (4th Cir. 1995) ...................................................................................................... 10

**Rules**

Fed. R. Civ. P. 37(b) ..................................................................................................... 8, 9, 10, 11

Fed. R. Civ. P. 37(e) .............................................................................................................. 10, 11

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Sanctions ("Motion" or "Mot.") explained the lengthy history of discovery deficiencies by NSM,[1] including its failure to comply with express Court orders (most notably, the June 23 Order) or to engage in discovery in good faith, and why those deficiencies merit evidentiary sanctions. *See* ECF No. 894. NSM's Response in Opposition ("Resp.") fails to address the core reasons why adverse inferences are justified as set forth in the Motion. *See* ECF No. 899. Instead, NSM attempts to distract the Court with misrepresentations, falsehoods, references to irrelevant side issues, inflammatory rhetoric, and arguments about the merits of Plaintiffs' conspiracy claims. NSM also accuses Plaintiffs of relying on the incorrect legal standard, apparently misunderstanding that Plaintiffs' motion seeks evidentiary sanctions under Rule 37(b)(2)(a) for NSM's failure to obey a discovery order, and instead refers the Court to the standard for spoliation under Rule 37(e). Perhaps most gallingly, NSM "certifies," in what is merely self-serving say-so and *ipse dixit*, that it "acted in good faith to resolve any discovery dispute relevant to the Plaintiffs' Motion for Sanctions, . . . prior to the filing of Plaintiffs' motion." Resp. 12.  Yet NSM does not dispute that Plaintiffs made at least four separate attempts to meet and confer with NSM about the discovery disputes at issue in Plaintiffs' motion for sanctions and NSM failed to respond to a single one of Plaintiffs' communications. Moreover, the factual record, as confirmed by NSM's own filings, proves that NSM is still not in compliance with its discovery obligations. Plaintiffs' Motion for Sanctions should be granted.

---

[1] Defined terms used in this brief have the meanings given to them in the Motion.

# ARGUMENT

**I.     NSM Has Failed to Comply with Its Discovery Obligations and the June 23 Order**

After months of Plaintiffs' fruitless attempts to work with NSM in good faith to obtain the discovery to which they are entitled under the Federal Rules and this Court's Orders, the Court's June 23 Order required NSM to take several specific actions, including: (1) to disclose (by July 1, 2020) the social media credentials and electronic devices in the control of Burt Colucci, NSM's current "Commander," and submit those devices to the Vendor for imaging; and (2) to conduct an investigation into other potentially relevant NSM custodians and (by July 3, 2020) provide Plaintiffs with a list of those custodians and their social media credentials. *See* ECF No. 774 at 13; Mot. 6–7. NSM now claims that it complied with the June 23 Order by "submitt[ing] all devices, accounts and custodians within their control to both opposing counsel and the Vendor." Resp. 4. NSM's conclusory assertion is belied by the factual record and in any event does not satisfy its obligations under the June 23 Order. The record shows that (1) Colucci *did not* provide the Vendor access to all email and social media accounts in his control, (2) NSM's counsel, Edward ReBrook, *did not* conduct a meaningful investigation of all potentially relevant NSM custodians, and (3) NSM *did not* provide Plaintiffs with a list of all potential NSM custodians and their social media credentials.

    **A.     NSM's Failure to Provide Valid Credentials for Accounts in Colucci's Custody or Control**

Colucci has not provided the Vendor with access to all social media accounts in his control. While NSM claims that all password and two-factor authentication issues have been resolved and all responsive documents produced, Resp. 6–7, Plaintiffs and the Vendor are still unable to access *26* email and social-media accounts in NSM's custody or control due to missing credentials, two-factor authentication problems, or other technical issues. Indeed, the Vendor's most recent report

2

(filed by NSM as Exhibit 7 to its own Response) confirms this. *See* ECF No. 899-7 at 5–6. Specifically, the Vendor has been unable to access chiefofstaff@nsm88.org and commanderburt@nsm88.org (both email accounts used by Colucci) because Colucci provided incorrect or no credentials and then deleted the accounts entirely; the Vendor has been unable to access commander@nsm88.org (also used by Colucci) because Colucci provided no password and claimed the account was inactive; and it has been unable to access 13 other NSM email accounts as well as NSM's two podcasting services, Facebook account, three newsletter services, Twitter account, two VK accounts, and YouTube account due to missing credentials or other problems. *See* ECF No. 899-7 at 5–6. NSM's filings also indicate that Colucci is now using a previously undisclosed email address, commandercolucci@nsm88.org, *see* ECF No. 899-4 at 3–4, for which Colucci has not provided credentials, *see* ECF No. 899-7 at 5–6. Moreover, several of the accounts that Plaintiffs have been unable to access are accounts that Plaintiffs specifically identified in Appendix A to Plaintiffs' Motion to Compel and for which the Court specifically instructed Colucci to provide valid credentials. *See* ECF No. 708-14 at 2; ECF No. 774 at 12 (instructing Colucci to disclose, among other credentials, "the credentials for the accounts in Appendix A . . . )").

NSM concedes, as it must, that there "were indeed issues of two factor authentication," yet asserts that "these minimal issues were resolved almost immediately when brought to defense counsel's attention" and that these issues are now "resolved with the Vendor." Resp. 7. That is plainly false given that Plaintiffs today remain unable to access *26* NSM accounts due to invalid credentials, Colucci's deletion, two-factor authentication problems, or some combination of those issues. *See* ECF No. 899-7 at 5–6.

3

NSM's failure to comply in good faith with the Court's June 23 Order is further highlighted by Colucci's decision to delete two of his email accounts: chiefofstaff@nsm88.org and commanderburt@nsm88.org. NSM has been on notice of its preservation obligations as early as January 2018, when it was first served with document requests. Colucci was again warned in his December 10, 2019, deposition on NSM's behalf that he and NSM were "under an obligation not to delete anything that you have either in hard copy or electronically." ECF No. 674-5 at 264. Even at that time, Colucci looked for ways to evade his obligations, suggesting that he would not comply with those obligations without a Court order and asserting the fiction, rejected by the Court, that the NSM that is a Defendant in this lawsuit is different from his organization, the National Socialist Movement Corporation in Florida.[2] *See, e.g.*, *id.* at 264–67 (Colucci deposition testimony).

Notwithstanding a Court order requiring Colucci to certify credentials for all accounts in his custody or control, Colucci then provided the Vendor with an incorrect password to commanderburt@nsm88.org and no password to chiefofstaff@nsm88.org, and then, the day after the Vendor was supposed to have completed collection, changed his passwords, and deleted the accounts. *See* Mot 9. In defending this misconduct, NSM does not dispute these basic facts. *See* Resp. 6. Rather, NSM claims that "[t]here was no reason for those accounts to exist anymore" and "there would have been no logical reason for Mr. Colucci to believe all responsive ESI had not been collected and given to the Plaintiffs" after that date. *Id.* NSM's argument that "[t]here was no reason for those accounts to exist anymore," even assuming that the Vendor had been able to collect the responsive data from those accounts, is of course a complete misunderstanding of a

---

[2] The Court rejected this defense in the June 23 Order granting Plaintiffs' Second Motion to Compel, which reaffirmed that "Mr. Colucci is Defendant NSM's director, officer, or managing agent under Rule 30(b)(6)" and that he therefore had a duty to respond to properly served discovery requests on behalf of NSM. ECF No. 774 at 8–9.

4

litigant's preservation obligations. In any case, the Vendor was *not* able to collect responsive data specifically because Colucci failed to provide valid credentials, after which he affirmatively deleted the accounts. NSM's attempt to place the blame for Colucci's misconduct on the *Vendor*, *see id.* ("I guess apparently IDS dropped the ball on that"), is thus simply not believable. The fact that Colucci provided the Vendor with incorrect credentials and then accessed those accounts shortly thereafter to delete them strongly suggests that he had the correct passwords all along—he just refused to provide them to the Vendor, in clear violation of the Court's June 23 Order.

### B. NSM's Failure to Investigate Potentially Relevant Custodians

NSM has similarly meager excuses for its failure to conduct the Court-ordered investigation into potentially relevant NSM custodians and their social media credentials. NSM claims that it "repeatedly inquired about any other possibly responsive custodians." Resp. 4. To support that proposition, however, NSM relies on an email from ReBrook to Colucci dated May 28, 2020. That email predates the Court's June 23 Order, and in any event simply shows that the "investigation" consisted merely of asking Colucci (yet again) for custodians. *See* ECF No. 899-4 at 2. That effort does not comply with the June 23 Order. NSM also relies on an email in which Colucci informed ReBrook's assistant (and Jeff Schoep's girlfriend) Acacia Dietz that he spoke to "current members" of NSM who "have never been to Charlottesville" and claim to "have no responsive documents pertaining to Unite the Right." *Id.* at 3. However, that too reflects no attempt to create a list of potential NSM custodians or their social-media credentials. *See id.*[3] While Colucci himself disclosed about 35 email addresses purportedly used by other NSM custodians,

---

[3] Colucci's email also relies on the same fallacy that NSM has repeatedly relied on in this litigation: "Since I have never been to Charlottesville in my life either, nor was I a member of the NSM at that time [of Unite the Right], it is impossible for me to have an responsive documents [*sic*] or information." ECF No. 899-4 at 3.

5

the Vendor has been unable to access 13 of those email accounts due to issues with credentials and two-factor authentication, as described above, *see* ECF No. 899-7 at 5–6,[4] and NSM's claim that these credentials were resolved, Resp. 7, is contradicted by the record, including NSM's own exhibits.

In short, NSM has still taken no concrete steps toward completing the Court-ordered investigation into potential NSM custodians. In fact, it appears as though NSM has not taken the basic step of asking Schoep or any other individual who attended Unite the Right about potential NSM custodians. NSM also has not undertaken any investigation into the other potential NSM custodians previously identified by Colucci and Plaintiffs, including individuals in NSM's "inner circle," including Mike Schloar and Harry Hughes, and individuals who were present at Unite the Right, including Ken Parker and Peter Tefft. *See* ECF No. 708-14 at 3–5 (identifying potential custodians and social-media accounts in Appendices B and C).

Instead of investigating these (or any other) potentially relevant custodians, NSM contends that there simply are no NSM custodians aside from Colucci and Schoep: "Plaintiffs' counsel is convinced there are other NSM responsive custodians, however, defense counsel, Defendant Schoep or Mr. Colucci cannot provide that which simply does not exist." Resp. 4. Yet NSM immediately contradicts itself by claiming that it has produced the documents of one other custodian, Brian Culpepper, while arguing that this meager production satisfies its burden under the June 23 Order. *Id.* And setting aside this inconsistency in NSM's position, the Court ordered NSM not only to "give the Vendor and Plaintiffs' counsel a complete list of *all potentially relevant*

---

[4] The email account of Mike Schloar, one of the individuals identified by Colucci as a member of NSM's "inner circle" (nsmssdivision@gmail.com) and included on Appendix C, is one of the accounts that the Vendor has been unable to access due to incorrect credentials. *See* ECF No. 899-7 at 6.

6

*custodians*" but also to provide their social-media credentials, "including but not limited to the credentials for the *accounts listed in Appendix C*." ECF No. 774 at 13 (emphasis added). NSM entirely ignores that it has failed to provide a list of custodians or valid credentials for the individuals and accounts listed in Appendix C, or even to attempt to do so.

Unable to seriously dispute that NSM has failed to satisfy its obligations under the June 23 Order, NSM's Response largely offers up conclusory assertions that are belied by the facts. *See, e.g.*, Resp. 1 ("[A]ll of the reasonably relevant documents, electronically stored information, and custodians to which the Plaintiffs would be entitled have been produced or offered for production."); *id.* ("To date, Defendant NSM has turned over all possibly discoverable materials within its control."); *id.* at 2 ("It is defense counsel's position that both Defendant NSM and Defendant Schoep have complied with the discovery order to the full extent of their ability to do so."); *id.* at 3 ("[A]ll parties in question have done everything humanly possible and within their control to remedy all discovery requests and issues."); *id.* at 5 ("All possible custodians, accounts and devices that were within Defendant NSM, Schoep and Mr. Colucci's control were released to the Vendor . . . .").

Shockingly, NSM even asserts that "defense counsel was surprised to learn that Plaintiffs' counsel felt it necessary to file the motion that is now before the Court," *id.* at 5, notwithstanding the fact that Plaintiffs had been *for months* attempting to meet and confer regarding NSM's discovery deficiencies, *see* Mot. 7–9. For the same reason, NSM's "certification" that it "has acted in good faith to resolve any discovery dispute relevant to the Plaintiffs' Motion for Sanctions," Resp. 12, is plainly contradicted by the record. Plaintiffs contacted ReBrook on ***four separate occasions*** regarding NSM's discovery deficiencies, including issues accessing Colucci's accounts and credentials and NSM's failure to comply with the Court's Order on custodians and their

7

accounts and credentials. *See* Mot. 9. NSM does not and cannot dispute that ReBrook ***did not respond to a single one*** of these communications before Plaintiffs filed their Motion. *Id.* NSM's accusations that *Plaintiffs* have attempted to distort the record, *see, e.g.*, Resp. 8 (accusing Plaintiffs of "misrepresentation" of "material fact"), must be rejected.

II. **Plaintiffs Are Entitled to Adverse Inferences as a Sanction for NSM's Bad-Faith Conduct in Discovery**

Despite explicitly acknowledging that Plaintiffs brought their Motion under Rule 37(b)(2)(A), *see* Resp. 9, NSM nonetheless inexplicably treats the Motion as if it were one concerning spoliation of evidence.[5] The Court should reject NSM's attempt to recharacterize Plaintiffs' Motion. Plaintiffs moved for adverse inferences pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) based on NSM's failure to comply with Court orders permitting discovery. *See* Mot. 11. Not only is the Motion clear on its face, but Plaintiffs' requested adverse inference seeks an instruction that NSM chose to "intentionally withhold" documents, not that documents were destroyed or lost. *Id.* at 2. This request is firmly supported by the factual record and applicable law.

As discussed in the Motion and above, NSM failed to obey discovery orders issued by this Court and is still out of compliance with the June 23 Order. Among other things, NSM has not provided valid credentials for accounts in Colucci's control or conducted a meaningful investigation of potentially relevant custodians for NSM. *See* Mot. 7–9, 12–14. This is part of a long-running strategy by NSM to avoid compliance with discovery orders in this case. *See id.* at 18. Following the Stipulation and Order for the Imaging, Preservation, and Production of Documents, which required NSM to identify sources of potentially relevant documents, NSM only

---

[5] Plaintiffs reserve all rights to bring a separate spoliation motion against NSM.

8

identified sources controlled by Schoep. *See id.* at 3–4. But when Schoep turned over his cell phone to the Vendor for imaging, he simultaneously disclosed for the first time that it had "fallen in the toilet" after the litigation started, rendering its contents unrecoverable. *See* First Mot. to Compel 1. The loss of that valuable source of documents made it all the more important to identify other NSM custodians and sources of documents. But instead of doing so, Schoep fired Kolenich and turned control of NSM over to Colucci. *See* Mot. 3–4. Plaintiffs then had to start over with ReBrook and Colucci in March 2019. Only after months of effort and a Court order were Plaintiffs able to depose Colucci in December 2019—almost two years after discovery requests were first served—and learned that NSM had failed to disclose responsive devices and accounts and that no meaningful investigation of custodians had occurred. *See id.* at 5. Plaintiffs then expended further time and resources to obtain another Court order in an attempt to correct these longstanding deficiencies, and yet now, 20 months after ReBrook first entered the litigation and almost three years after being served with discovery requests, NSM still is out of compliance with the Court's discovery orders.

Because of NSM's bad-faith conduct in discovery, Plaintiffs moved for adverse inferences—an available sanction under Rule 37(b)(2)(A). *See Sines v. Kessler*, No. 3:17-CV-00072, 2019 WL 3767475, at *3 (W.D. Va. Aug. 9, 2019) ("The sanctions listed in Rule 37(b)(2)(A) are not exclusive and arbitrary but flexible, selective, and plural . . . . Specific options include an order deeming facts established, allowing or requiring an adverse inference, and entering default judgment against the disobedient party." (internal marks and citation omitted)); *see also Tholen v. Assist Am., Inc.*, No. 17-CV-3919 (DWF/SER), 2019 WL 3293709, at *4-5 (D. Minn. Apr. 18, 2019) (imposing adverse inference sanction where failure to engage in reasonable search for discovery and failure to produce relevant documents deprived the other side of a

9

meaningful inquiry), *report and recommendation adopted,* No. CV 17-3919 (DWF/SER), 2019 WL 2387109 (D. Minn. June 6, 2019); *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, 429 F. Supp. 3d 1290, 1297 (S.D. Ala. 2019) (granting adverse inference where defendant failed to comply with discovery order and explanation for failure to retrieve records was not credible), *appeal dismissed,* No. 19-11189-GG, 2020 WL 5498487 (11th Cir. May 19, 2020); *Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-CV-00535-RBH, 2013 WL 12148457, at *1 (D.S.C. Aug. 29, 2013) (noting that sanctions under Rule 37(b)(A) for withholding evidence in violation of court order could include drawing adverse inferences); *see also* Fed. R. Civ. P. 37(b)(2) (sanctions "may include" certain specified actions). The fact that NSM, through its current leader Colucci and former leader Schoep, has destroyed responsive documents, accounts, and devices only further underscores NSM's bad faith and why lesser sanctions would not be appropriate. Mot. 18.

Rather than address its refusal to comply with court orders and the Rule 37(b)(2)(A) factors, NSM instead criticizes Plaintiffs for citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995), which NSM claims predates a 2015 amendment to Rule 37(e), which governs spoliation. *See* Resp 10. But Plaintiffs did not bring their Motion under Rule 37(e).[6] And pursuant

---

[6] In any event, NSM's discussion of the law and facts related to Rule 37(e) are wrong. In order to impose adverse inferences under Rule 37(e), there must be a "finding that the party acted with intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). NSM implies that *Vodusek* is irrelevant or outdated because it impermissibly allowed a negligence or gross negligence standard for spoliation. That is incorrect: *Vodusek* explicitly found that a showing of intentional or willful conduct was required to impose an adverse inference sanction. *See* 71 F.3d at 156. Moreover, the case that NSM itself proffers for the purported standard under Rule 37(e), *see* Resp. 8 (citing *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 746 (8th Cir. 2004)), is an out-of-circuit case imposing a bad-faith standard that has never been adopted in the Fourth Circuit. *See Vodusek*, 71 F.3d at 156 ("While a finding of bad faith suffices to permit [an adverse] inference, it is not always necessary."); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 536 (D. Md. 2010) (explicitly noting bad-faith standard in *Stevenson* and rejecting it as inconsistent with Fourth Circuit law). And nothing in the text or advisory notes of Rule 37(e) requires a finding of bad faith.

to Rule 37(b)(2)(A), NSM's bad-faith conduct and failure to comply with discovery orders in this case justifies the imposition of adverse inferences.

### III. NSM's Other Arguments Are Irrelevant or Meritless

NSM makes several other irrelevant or meritless arguments that serve only to distract from NSM's failure to comply with the June 23 Order. First, NSM repeatedly argues that Plaintiffs' case fails on the merits. *See, e.g.*, Resp. 1 ("Defendant NSM has maintained since the beginning of this litigation that they were not part of any conspiracy to commit racially-motivated violence."); *see id.* at 5. Of course, such assertions are irrelevant. NSM will have the opportunity to mount its defenses on the merits at trial. The question at issue in this Motion is whether NSM has lived up to its discovery obligations under the Federal Rules and this Court's express orders. It has not.

NSM also relies on inflammatory rhetoric and discussion of irrelevant side issues, neither of which bolsters NSM's substantive arguments. *See, e.g., id.* at 1 ("[Plaintiffs'] motion reads as though it is holy scripture."); *id.* at 5 ("Plaintiffs' motions are impressively thick and filled with attachments . . . ."). NSM even attempts to relitigate Plaintiffs' First Motion to Compel, which the

---

Moreover, even if Plaintiffs *were* required to show intentionality or bad faith under Rule 37(e), Plaintiffs would satisfy that requirement. While NSM suggests that its deletion of email accounts was at most negligent, not intentional, that assertion is simply not believable. As discussed *supra* at 4–5, Colucci was on notice of his preservation obligations and *still* deleted email accounts. Colucci's effort to blame the Vendor is not credible since Colucci failed to provide the Vendor the necessary credentials to access the accounts yet a day later managed to use accurate credentials to delete those accounts. These facts lead to the inescapable conclusion that Colucci acted willfully. *See Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020) (granting adverse inferences for spoliation where defendant deleted texts and email account long after litigation had begun), *report and recommendation adopted,* No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020); *In re Reifler*, No. 18-CV-4711 (KMK), 2019 WL 396525, at *8–9 (S.D.N.Y. Jan. 31, 2019) (defendant engaged in "campaign of intentional spoliation" where he deleted emails and documents, failed to comply with court orders, and refused to identify or provide access to electronic devices); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 373 (D. Or. 2017) (intentional deletion of files constitutes intentional spoliation for purposes of Rule 37(e)(2)).

11

Court granted over NSM's opposition, *see* ECF No. 582, and complains about the conduct of NSM's prior counsel, James Kolenich. *See* Resp. 2–3.

Finally, NSM asserts that Plaintiffs have suffered no prejudice because they requested that the trial be postponed from October 26, 2020, due to the COVID-19 pandemic. Resp. 12. But trial was originally scheduled for July 8, 2019, *see* ECF No. 329, and the Court was forced to continue the trial date due to Defendants' failures to comply with discovery, *see* ECF No. 461. If NSM (like other Defendants) had not attempted at every turn to duck its discovery obligations, then trial would have occurred long before COVID-19 had become an issue. Moreover, Plaintiffs have also been significantly prejudiced because NSM has continued to deny them access to the discovery to which Plaintiffs are entitled. *See* Mot. 14–15.

## CONCLUSION

For the reasons above, Plaintiffs request that the Court instruct the jury that NSM chose to intentionally withhold its documents, and that the jury may draw adverse inferences from that fact, including that NSM chose to withhold such documents because it was aware that such documents contained evidence that NSM conspired to plan racially motivated violence at Unite the Right.

Dated: November 5, 2020            Respectfully submitted,

                                                 */s/ Robert T. Cahill*
                                                 Robert T. Cahill (VSB 38562)
                                                 COOLEY LLP
                                                 11951 Freedom Drive, 14th Floor
                                                 Reston, VA 20190-5656
                                                 Telephone: (703) 456-8000
                                                 Fax: (703) 456-8100
                                                 rcahill@cooley.com

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Alexandra Eber (*pro hac vice*)
Caitlin B. Munley (*pro hac vice*)
Samantha A. Strauss (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
aeber@cooley.com
cmunley@cooley.com
sastrauss@cooley.com

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
aliverzani@cooley.com
droy@cooley.com

Katherine M. Cheng (pro hac vice)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kcheng@bsfllp.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

      I hereby certify that on November 5, 2020, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

      I further hereby certify that on November 5, 2020, I also served the following non-ECF participants, via electronic mail, as follows:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Christopher Cantwell
christopher.cantwell@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

/s/ Robert T. Cahill
Robert T. Cahill (VSB 38562)
COOLEY LLP

*Counsel for Plaintiffs*

14