IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES, et al., | ) | Civil Action No. 3:17-cv-00072 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JASON KESSLER, et al., | ) | |
| Defendants. | ) | By:  Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' "Renewed Motion for Sanctions Against Defendant Vanguard America." ECF No. 713 ("Pls.' Renewed Mot. for Evid. Sanctions"); *see* Pretrial Order ¶ 13 (citing 28 U.S.C. § 636(b)(1)(A)), ECF No. 101. Plaintiffs ask the Court to instruct the jury that Defendant Vanguard America ("Vanguard") intentionally withheld discoverable documents "and that the jury may draw adverse inferences from that fact," including that Vanguard's agents "chose to withhold such documents because [they were] aware that such documents contained evidence that Defendant Vanguard conspired to plan racially-motivated violence at the Unite the Right" rallies in August 2017. *See* Pls.' Renewed Mot. for Evid. Sanctions 5.[1] Vanguard did not respond within the time allowed. Accordingly, I consider Plaintiffs' motion to be unopposed, Pretrial Order ¶ 7, and can resolve it without holding another hearing, *see* ECF No. 504; Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b). Plaintiffs' request for a permissive adverse-inference instruction against Defendant Vanguard America will be granted

---

[1] Pinpoint citations to documents electronically filed on the case docket, except for transcripts of court proceedings and depositions, typically use the header page numbers generated by CM/ECF. Pinpoint citations to transcripts use the number printed on the upper right-hand corner of the cited page.

subject to the presiding District Judge's final approval.[2] *See* Mem. Op. & Order of Mar. 24, 2021, at 24, ECF No. 933; Mem. Op. & Order of Nov. 30, 2020, at 42, ECF No. 910.

## I. The Legal Framework

"Litigants come to court to have their problems solved" in a fair, efficient, and orderly forum. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (citing Fed. R. Civ. P. 1). The Federal Rules of Civil Procedure are a set of written rules that "for all practical purposes, and with few exceptions, . . . control the procedure in all civil actions in the United States District Courts." 4 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1011 (4th ed. 2013); *see* Fed. R. Civ. P. 1, 81. "They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. And, although "litigation is not a game," *Bintliff v. United States*, 462 F.2d 403, 407 (5th Cir. 1972), federal courts do expect that everyone will play by the same rules on as level a field as is reasonably possible, *see McNeil v. United States*, 508 U.S. 106, 113 (1993). "Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 663

---

[2] Plaintiffs' original motion for evidentiary sanctions against Vanguard America, ECF No. 465 (Apr. 11, 2019), sought an adverse inference as well as a court order deeming their proposed facts established and certain documents authentic for purposes of this action. In the summer of 2019, I took those requests under advisement, ECF No. 508, because they were premature. *See generally* Mem. Op. of Aug. 9, 2019, at 29–35, ECF No. 539; Order of Aug. 9, 2019, at 1, ECF No. 540. Plaintiffs' pending motion expressly renews their request for an adverse inference, but, unlike their renewed motion for evidentiary sanctions against another Defendant, it does not mention their prior requests for a court order deeming any facts established or documents authentic for purposes of the action. *Compare* Pls.' Renewed Mot. for Evid. Sanctions 5, 16–25, *with* Pls.' Renewed Mot. for Evid. Sanctions Against Def. Elliott Kline 4, 20–25 (renewing requests for all three sanctions), ECF No. 601 (Dec. 6, 2019), *and* Mem. Op. & Order of Nov. 30, 2020, at 39–42 (granting in part Plaintiffs' request to deem proposed facts established as to Kline, imposing a rebuttable presumption that documents believed to be from Kline's identified social media accounts are authentic for purposes of this action, and allowing a permissive adverse-inference instruction against Kline subject to the presiding District Judge's final approval). Accordingly, this Memorandum Opinion and Order addresses only Plaintiffs' renewed request for a permissive adverse-inference instruction against Vanguard America. *See* Mem. Op. & Order of Nov. 30, 2020, at 3 n.4.

(7th Cir. 1994); *see, e.g.*, Mem. Op. & Order of Nov. 30, 2020, at 26–42 (imposing evidentiary sanctions against pro se Defendant who violated multiple discovery orders and failed to preserve relevant evidence); Mem. Op. of May 26, 2020, at 1–7, 23–28 (ordering Vanguard America to pay Plaintiffs $16,243.33 for expenses and attorney's fees caused by Vanguard's failure to obey multiple discovery orders), ECF No. 538.

Rules 26 through 37 of the Federal Rules of Civil Procedure govern discovery in most civil cases. *See Mancia v. Mayflower Textile Servs.*, 253 F.R.D. 354, 357 (D. Md. 2008). They are rooted in "the unshakable foundation" that "[o]ur adversary system for the resolution of disputes . . . . [is] directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993). *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 526 (D. Md. 2010; *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). "The basic philosophy" driving discovery today is "that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman*, 329 U.S. at 507. "To that end, either party may compel the other to disgorge whatever [relevant] facts he has in his possession." *Id.*; *see Eramo v. Rolling Stone, LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016).

Rules 26 through 36 provide specific devices or procedures—such as interrogatories, document requests, and depositions—for one party to obtain discoverable information from another. *See Pruitt v. Bank of Am., N.A.*, No. 8:15cv1310, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016). Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n*, 212 F.R.D. at 181. When they do not, Rule 37 provides one mechanism for a federal court to compel compliance or to sanction an unacceptable failure to follow the rules.[3] Fed. R. Civ. P. 37(a)–(f). Plaintiffs ask the Court to sanction Vanguard's misconduct under Rule 37(b)(2) and (e). *See* Pls.' Renewed Mot. for Evid. Sanctions 2, 5, 16–25.

Rule 37(b)(2) grants the district court where an action is pending broad discretion to impose sanctions whenever "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). "The rule's language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before . . . sanctions can be imposed." *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991); *see also Carriage Hill Mgmt., LLC v. Bos. Lobster Feast, Inc.*, No. GJH-17-2208, 2018 WL 3329588, at *5 (D. Md. July 6,

---

[3] Federal courts also have inherent power to sanction conduct that offends the legal process, including a party's "fail[ure] to preserve or produce" discoverable information for another's use in litigation. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *see Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497–99 (D. Md. 2000) (discussing both sources of the court's authority). In this case, Rule 37 provides an adequate framework for sanctioning Vanguard America's refusal to produce discoverable materials as ordered, Fed. R. Civ. P. 37(b)(2), and failure to preserve electronically stored information that should have been saved for Plaintiffs' use in the litigation, Fed. R. Civ. P. 37(e). Pls.' Renewed Mot. for Evid. Sanctions 2, 5, 16–25 (citing Fed. R. Civ. P. 37(b), (e)). *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than [its] inherent power. But if in the informed discretion of the court, neither [a] statute or the Rules are up to the task, the court may safely rely on its inherent power.").

2018); *Victor Stanley*, 269 F.R.D. at 518–20. Subsection (b)(2)(A) in turn "contains two standards—one general and one specific—that limit a district court's discretion" in choosing what substantive sanction(s) to impose.[4] *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* (citing Fed. R. Civ. P. 37(b)(2)(A)). The Fourth Circuit has "developed a four-part test for a district court to use when" making this determination.[5] *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The court must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *S. States*

---

[4] Substantive sanctions include orders deeming certain facts established, permitting or requiring an adverse inference, and entering default judgment against the disobedient party. *Victor Stanley*, 269 F.R.D. at 533–34. "Instead of or in addition to" any orders issued under Rule 37(b)(2)(A), "the court *must* order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). I previously ordered Vanguard America to pay Plaintiffs $16,243.33 in reasonable attorney's fees caused by Hopper's failure to obey multiple discovery orders. Order of May 26, 2020, ECF No. 539.

[5] The Fourth Circuit has not clearly defined the movant's burden of proof on a motion for sanctions under Rule 37(b). *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488024, at *11 (E.D. Va. Nov. 30, 2018), *adopted by* 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "However, proving misconduct by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices," *Glynn*, 2010 WL 3294347, at *2, especially when the sanction imposed does not result in dismissal or default judgment against the disobedient party, *see Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504–05 (4th Cir. 1998). Here, the result is the same under either standard because Plaintiffs produced clear and convincing evidence that Hopper intentionally disregarded multiple court orders compelling him to provide or permit discovery of relevant materials within Vanguard's possession or control. Mem. Op. of Aug. 9, 2019, at 6 n.5, 26, 28–31; *see, e.g.*, Pls.' Renewed Mot. for Evid. Sanctions Ex. 22, Messages from D. Hopper to V. Mackey (VM: "How's the civil suit going?" DM: "Lol dude it's literal fucking chaos. . . . But that's fine. I've been dragging my feet with their bullshit so much that they're literally starting to run low on [m]oney. . . . I completely disregarded that lawsuit shit until about 6 months ago.") (Oct. 26, 2019), ECF No. 716-7.

*Rack & Fixture*, 318 F.3d at 597; *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118,

123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)). Some sanctions, including an

adverse inference, require the court to find that the disobedient party acted willfully or in bad

faith. *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (citing *Hodge v. Wal-*

*Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004)).

Rule 37(e) provides the legal framework for evaluating claims that a party failed to

preserve electronically stored information ("ESI") for another's use in litigation. *See Jenkins v.*

*Woody*, No. 3:15cv355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017). Under this

subsection,

> a movant must satisfy four threshold requirements before a court decides if any
> spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was
> lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the
> ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); Fed. R. Civ. P.

37(e). While "Rule 37(e) displaces reliance" on the traditional spoliation framework where the

lost information was stored electronically, "it is grounded in the common law 'duty to preserve

relevant information when litigation is reasonably foreseeable.'" *Johns v. Gwinn*, --- F. Supp. 3d

---, ---, 2020 WL 7138635, at *5 (W.D. Va. Nov. 30, 2020) (Moon, J.) (quoting Fed. R. Civ. P.

37 advisory committee's note to 2015 amendment); *accord Steves & Sons.*, 327 F.R.D. at 104

("This [traditional spoliation] analysis is similar to the Rule 37(e) framework, as it asks whether

the responsible party had a duty to preserve, and breached that duty by failing to take reasonable

steps to preserve."). "Thus, whether ESI should have been preserved . . . under Rule 37(e) turns

chiefly on two questions underlying the duty to preserve: 1) whether the party should have

reasonably anticipated litigation, and 2) whether the party reasonably should have known that the

6

evidence at issue might be relevant to such litigation." *Johns*, 2020 WL 7138635, at *5 (citing *Steves & Sons*, 327 F.R.D. at 105).

If the movant makes this threshold showing, the "court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018); *see* Fed. R. Civ. P. 37(e)(1)–(2). "First 'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Thompson v. Clarke*, No. 7:11cv111, 2019 WL 4039634, at *3 (W.D. Va. Aug. 27, 2019) (Moon, J.) (quoting Fed. R. Civ. P. 37(e)(1)). "Generally, courts find prejudice when spoliation compromises" the other party's "ability to present its case" using relevant evidence. *Knight*, 323 F. Supp. 3d at 845 (noting that Rule 37(e)(1) does not define the term "prejudice," but that "determining whether prejudice exists given a set of facts 'necessarily [requires] an evaluation of the information's importance in the litigation'" (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment)); *see Thompson*, 2019 WL 4039634, at *5–6 ("In the spoliation context, a party must establish relevance by offering probative evidence, not the hyperbole of argument, that the lost materials were likely to have been favorable to its case. . . . The lack of relevance translates into a lack of prejudice." (cleaned up)). "Second, and 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Thompson*, 2019 WL 4039634, at *3 (quoting Fed. R. Civ. P. 37(e)(2)).

## II. Background[6]

---

[6] This section summarizes certain factual allegations in Plaintiffs' Second Amended Complaint. ECF No. 557. "While the Court does not repeatedly state 'Plaintiffs *allege* that Defendant *X* did *Y*,' this summary

On August 11–12, 2017, the "Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 1; *see* Second Am. Compl. ¶¶ 1–7. These rallies are now known as "Unite the Right." Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"— rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985, and related state laws. Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 1–2. "While ultimate resolution of what happened at the rallies awaits another day," the District Court has held the remaining Plaintiffs plausibly alleged that certain Defendants, Vanguard America included, "formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.* at 1; *see id.* at 27–29.

\*

Vanguard America is a white nationalist group with twelve chapters across the country. Second Am. Compl. ¶ 24 (alleging that Vanguard is an "unincorporated association" subject to suit under Virginia Code § 8.01-15). Plaintiffs contend that Vanguard played a key role in planning the rallies and that the group's leaders actively communicated with co-Defendants and others before, during, and after these events. Most of that activity occurred online. For example, Defendants Jason Kessler and Elliott Kline (a.k.a. Eli Mosley) "used an online platform called 'Discord' for planning. This 'invite only' platform allowed Defendants and their chosen invitees to engage in private conversations during the lead up to the events." Mem. Op. on Defs.' Mots.

---

should not be taken as the Court's endorsement of one version of the facts." Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 3 (July 9, 2018), ECF No. 335.

to Dismiss Am. Compl. 7 (citing Am. Compl. ¶¶ 71–73); *see* Second Am. Compl. ¶¶ 70–74. Kline and Kessler "moderated and managed Discord," while Vanguard and others actively participated on the platform. Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 7; *see* Second Am. Compl. ¶¶ 72, 76. "Conversation on Discord included mundane planning details, racist 'jokes,' and concrete threats of violence," Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 8, including running over counter-protestors marching in the streets, *id.* at 42–43.

Vanguard America also had its own Discord server where its representatives helped plan the rallies and encouraged members to attend. Second Am. Compl. ¶¶ 113–14. Vanguard leaders Dillon Hopper and Thomas Ryan Rousseau posted on Discord under their respective screen names, "White-PowerStroke" and "Thomas Ryan." *See* Pls.' Renewed Mot. for Evid. Sanctions Ex. 10, D. Hopper Dep. Tr. 30–32, 90, 62–63, 187–88, 193 (Aug. 13, 2019), ECF No. 716-1; *id.* Ex. 12, T. Rousseau Dep. Tr. 76, 244 (Oct. 16, 2019), ECF No. 716-2. Rousseau urged Vanguard "members to contact him directly if they planned to attend the 'Unite the Right' event and if they wanted to travel together in a 'hate bus,' saying: 'This event is a **BIG DEAL** and offers a chance to link up Vanguard Guys from across the nation.' He also issued orders on the proper Vanguard uniform for the event," khaki pants and white polo shirts, which another Vanguard member described as "'a good fighting uniform.'" Second Am. Compl. ¶¶ 114–15. Rousseau knew some people would carry concealed weapons at the event. He noted that openly carrying a knife was not illegal in Virginia, but told his followers that "it looks really dumb to carry an open large knife so we're not doing that." *Id.* ¶ 114. In June 2017, Hopper asked other users on Discord's "Charlottesville 2.0" planning server, "You guys want me to get some shields." Pls.' Renewed Mot. for Evid. Sanctions Ex. 3, Dillon Hopper (White-PowerStroke(Dillon)#6190), Discord (June 16, 2017, 1:09 AM). Vanguard made twenty extra shields so its members would

be prepared to "remove whoever is in [their] way." *See* Second Am. Compl. ¶ 190. Hopper

played some role in creating the shields. Hopper Dep. Tr. 193. He also "threw in [his] two cents"

on other plans, *id.* at 90, but he did not come to Charlottesville for Unite the Right, *id.* at 188. *But*

*see* Letter from D. Hopper to J. Hoppe 2 ("I wasn't involved in any planning for the Unite the

Right rally. . . . I was never even at the event, nor was I in any way part of the planning or

organization of the rally.") (June 24, 2019), ECF No. 509.

Many of Vanguard America's members, including Defendant James Fields, attended the

August 12 rally wearing matching uniforms and armed with large shields bearing the group's

logo. *See* Second Am. Compl. ¶¶ 24, 153, 196. At the time, "Rousseau would have been the

senior guy in charge of Vanguard, so he would have been the [group's] head representative" on

the ground in Charlottesville. Hopper Dep. Tr. 207; *see also id.* at 30–32 (testifying that

Rousseau "took over" Vanguard from Hopper in June 2017). That morning, Vanguard's

members led the march to the park "chanting 'Blood and soil!'" Second Am. Compl. ¶ 197. That

afternoon, Fields intentionally drove his Dodge Challenger into a group of counter-protesters,

killing one person and injuring several Plaintiffs. *Id.* ¶ 23. Within hours, Rousseau posted a

message on Discord telling Vanguard's followers that he was "safe, with a dozen or so guys

hanging out at a hotel sharing stories of the day." *Id.* ¶ 270. Other Vanguard members posted

memes celebrating Fields's conduct, including "a picture of Plaintiff Martin flying through the

air with the caption 'Can't Dodge This.'" *Id.* ¶ 266. Another member "wrote: 'I don't think we

should hand out shields anymore []everyone. . . . We should hand out Dodge Challengers

instead.'" *Id.* (capitalization corrected). A third member wrote that Unite the Right "was the

biggest victory for our movement history. It was glorious. . . . We gave many people shields, we

fought and shed blood for our people today." Pls.' First Mot. for Evid. Sanctions Ex. 21, ECF No. 465-21.

### III. Procedural History

Plaintiffs filed this lawsuit on October 11, 2017. ECF No. 1. Vanguard America was served with a summons and copy of the complaint through its representative "Dillon Ulysses Hopper a/k/a Dillon Irizarry, authorized to accept," at a residential street address on November 17. ECF No. 157. Hopper reached out to James Kolenich, Esq., and personally hired the Ohio-based attorney to represent Vanguard in this matter.[7] Hopper Dep. Tr. 93. Mr. Kolenich entered his appearance in December 2017. ECF No. 131.

On January 25, 2018, Plaintiffs served their Corrected First Set of Requests for Production of Documents and First Set of Interrogatories on Vanguard America through Mr. Kolenich. Those requests sought "information and materials directly relevant to the claims and defenses in this case," Mem. Op. of Aug. 9, 2019, at 29, including copies of any "emails, text messages, recordings, or social media content related to the preparation, planning, transportation to, or coordination for" the August 11–12 events and information identifying "all means of communications used to discuss the events, as well as the specific electronic devices used for such communications," *id.* at 12 (cleaned up). Vanguard's proper responses or objections were due by February 26. *Id.* at 12 (citing Fed. R. Civ. P. 33(b)(2), 34(b)(2)). Mr. Kolenich emailed Vanguard's responses, signed under oath by Hopper on the entity's behalf, to Plaintiffs' counsel

---

[7] In June 2019, I allowed Mr. Kolenich and his local co-counsel to withdraw from representing Vanguard primarily because Hopper, who had been acting as Vanguard's authorized agent in this litigation, stopped communicating with them. *See* Order of June 3, 2019, at 1, ECF No. 497. At the same time, I warned Vanguard that it could "appear in the federal courts only through licensed counsel," and that Hopper could not represent the entity because he is not a licensed attorney. *Id.* at 2 (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202–03 (1993)). Accordingly, I directed Vanguard to retain a licensed attorney and ensure that the attorney entered his or her appearance on or before June 25, 2019. *Id.* Vanguard still has not complied with that order.

on April 18, 2018. *Id.* at 14; *see* Order of Mar. 26, 2018, ECF No. 287. Hopper's responses were

vague, evasive, and materially incomplete. Mem. Op. of Aug. 9, 2019, at 2, 14–15, 20, 26; *see,*

*e.g.*, Pls.' Renewed Mot. for Evid. Sanctions Ex. 9, Def. Vanguard Am.'s Resps. to Pls.' First

Interrogs. & Reqs. for Prod. of Docs. 2–4, ECF No. 713-9; Hopper Dep. Tr. 103–11, 114–16,

122, 126, 136, 162–63, 175, 205–06. He also admitted that he took "no special steps" to preserve

any potentially relevant responsive materials within Vanguard's possession, custody, or control.

*See* Def. Vanguard Am.'s Resps. to Pls.' First Interrogs. & Reqs. for Prod. of Docs. 4.

Vanguard America's discovery misconduct in this case over the next eighteen months is

well documented. *See generally* Mem. Op. of Aug. 9, 2019, at 1–2, 12–20, 22–24, 26, 29–31

(April 2018 to July 2019). In short, Hopper, acting in his capacity as Vanguard's officer or

managing agent, disobeyed numerous court orders to provide or permit discovery of relevant

materials within Vanguard's control "while the litigation slowed and everyone else's costs piled

up." Mem. Op. of Aug. 9, 2019, at 29; *see also* Mem. Op. of May 26, 2020, at 2 n.2. The first

order, given at my initial conference call with the parties on March 16, 2018, was an oral

directive that I expected everyone on the call, Vanguard's counsel included, "to preserve any

potentially relevant evidence" and that I took their "obligation to preserve this evidence very

seriously," Tr. of Mar. 16, 2018 Conf. Call 24, ECF No. 282. *See* Mem. Op. of Aug. 9, 2019, at 4

n.3, 12–13; Mem. Op. & Order of Nov. 30, 2020, at 2–3, 10–11. The others were written orders

setting out clear step-by-step instructions how Vanguard could "make good [its] discovery

obligation" by deadlines repeatedly extended, *Lee*, 638 F.3d at 1321. Mem. Op. & Order of Nov.

30, 2020, at 11; *see* Order to Def. Vanguard Am., ECF No. 517 (July 3, 2019); Order of Mar. 4,

2019, ECF No. 440; Stip. & Order, ECF No. 383 (Nov. 19, 2018); Order of Nov. 13, 2018, ECF

No. 379. In July 2019, Hopper confirmed on the record that he had "received each of the Orders,

discovery requests, and Stored Communications Act ('SCA') consent forms that explain[ed] Vanguard America's outstanding discovery obligations." Order to Def. Vanguard Am. 1. Yet, his "consistent 'practice from the very beginning'" of this litigation was "'to ignore outright the court's orders or submit chaotically and defectively to them.'" Mem. Op. of Aug. 9, 2019, at 30 (quoting *Mut. Fed. Savs. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989)).

That August, I found that Hopper acted in bad faith by stonewalling and ignoring the Court's orders over the previous eighteen months—and that such misconduct must obviously be deterred lest anyone else think he or she can behave this way in federal court. *See* Mem. Op. of Aug. 9, 2019, at 4, 29–32. I also found that Vanguard's "repeated and ongoing misconduct so far ha[d] caused significant procedural prejudice to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner." *Id.* at 33 (cleaned up). Plaintiffs expended enormous resources dealing with Vanguard's "unacceptable delays, obfuscations, and disregard for both their proper discovery requests and this Court's many orders trying to enforce them." *Id.* But, "we [were] not yet to the point" where Plaintiffs could not "'present evidence essential to [their] underlying claim'" against the group. *Id.* (quoting Pls.' Mot. for Sanctions Against Def. Vanguard Am. 21, ECF No. 465); *see also id.* at 26, 32–33. Written discovery was still open, the parties were conducting oral depositions, and the trial date had been continued indefinitely. *See id.* at 16, 34. Moreover, Hopper recently assured the Court and Plaintiffs that he understood Vanguard's discovery obligations and he intended to comply with the Court's orders going forward. *Id.* at 27–29, 34–35; *see also* Letter from D. Hopper to J. Hoppe 1, 3 (apologizing for the time that he "may have wasted in these last several weeks or months by overlooking" the case or letting it "slip from [his] memory," asserting he did not intend or want "to be blatantly belligerent or contentious" towards the Court or its orders, and promising to "work as diligently as possible" to "comply with all orders" going forward). In my view, "production was preferable to evidentiary sanctions

13

at th[at] point in the litigation." Mem. Op. of Aug. 9, 2019, at 26. I would also have a better sense of Plaintiffs' request for an adverse-inference instruction against Vanguard after counsel deposed Hopper and Rousseau about what steps, if any, they took to preserve potentially relevant evidence. *Id.* at 34–35; *see also* Order of Sept. 6, 2019 (giving Plaintiffs leave to depose Rousseau, in his capacity as Vanguard's authorized representative, about "his and Vanguard America's conduct in pretrial discovery, including their efforts to preserve any documents, information, or materials that are potentially relevant to this litigation"), ECF No. 553. But, I recognized that "the Court will likely have run out of options other than to impose significant evidentiary sanctions" if Vanguard did "not follow through" on its promises. Mem. Op. of Aug. 9, 2019, at 35; *see also id.* at 34 ("Plaintiffs' requested evidentiary sanctions—including the adverse inference and an order deeming some of their proposed facts established—would be available, and certainly could be appropriate in this case, if . . . Vanguard America fail[s] to produce the discovery from this point forward.").

**

Hopper sat for his court-ordered deposition on August 13, 2019. He confirmed that he led Vanguard America from at least April through June 2017 and that he controlled Vanguard's Discord servers or channels during this time. Hopper Dep. Tr. 30, 32, 43. He did not remember what the servers were called, however. *See, e.g.*, *id.* at 32 ("Oh, goodness. I can't remember the exact name. It was probably something like Vanguard something. I have no idea."); *id.* at 43 ("No, I can't remember any of the server names."). In April 2017, Hopper appointed Rousseau to moderate many of the Discord channels because Rousseau "knew what he was doing" and was "very intelligent." *Id.* at 30. Rousseau admitted that he was Vanguard's "social media manager" and "online content producer" during the relevant time. *Id.* at 26; *see also id.* at 41, 47, 72, 123.

He did not remember any of the group's online usernames or accounts. *See generally id.* at 40–41, 72, 76, 87–88. Sometime after UTR, Rousseau threw away his desktop computer that stored the log-in information for Vanguard's email accounts. *Id.* at 46–47, 72. The computer was not backed up anywhere. *Id.* at 47.

Hopper testified that he accepted service of process on Vanguard America's behalf in November 2017. *See* Hopper Dep. Tr. 30, 92. He also confirmed that Mr. Kolenich told him that he needed to collect and produce documents, including ESI, responsive to Plaintiffs' first set of written discovery requests. *Id.* at 101, 105. Hopper insisted that he was "confused," *id.* at 104, and never understood the requests, but he did not say whether he ever asked Mr. Kolenich for help, *see id.* at 104–07, 116, 122, 136. Hopper also made conflicting statements about whether he tried to identify or contact other Vanguard officers who might have responsive materials in their possession. *See id.* at 107. On one hand, Hopper admitted that he did not tell Mr. Kolenich about Thomas Rousseau until April 2019, and he made no effort to contact Rousseau or other group leaders about the lawsuit. *See id.* at 101, 103–04, 107, 111. On the other, Hopper testified that he tried many times to contact Rousseau, but Rousseau never acknowledged Hopper's calls, texts messages, or online messages.[8] *Id.* at 107–08. Hopper could not produce the messages during his deposition, *id.*, but he promised Plaintiffs' counsel that he would send his current phone to the Vendor for imaging within the week, *id.* at 216–17. Hopper waited another five months to submit his phone, Pls.' Renewed Mot. for Evid. Sanctions 14; *see id.* Ex. 17, Letter from A. Levine to D. Hopper (Dec. 9, 2019), ECF No. 716-3; *id.* Ex. 25, Email from K. Kim to D. Roy (Jan. 24, 2020), ECF No. 713-25, because, in his words, he'd "been dragging [his] feet . . . so much," *id.*

---

[8] Rousseau later testified that he had not discussed the lawsuit with Hopper and he did not remember receiving any calls or messages from him. *See* Rousseau Dep. Tr. 26.

Ex. 22 (Oct. 26, 2019).[9] The Vendor could not collect any relevant ESI from Hopper's electronic devices. Pls.' Renewed Mot. for Evid. Sanctions 9, 14.

Shortly after Unite the Right, Rousseau started to worry that he or Vanguard might face legal consequences for their involvement in the rallies. *See* Rousseau Dep. Tr. 244, 247. On August 14, 2017, he mentioned in a Discord post that "[l]egally, we have been in contact with . . . folks with legal experience, and we're fine." *Id.* Rousseau later testified that he sought advice from "an attorney on Discord" two days after UTR because "people were making claims and [he] was worried." *Id.*[10] On November 1, 2018, Plaintiffs served Rousseau with a subpoena to produce categories of relevant documents in this case. *See id.* at 76–78. Rousseau contacted the attorney on Discord whom he "was working with at the time" for "suggestions on what to do" about the subpoena. *Id.* at 77–80. The attorney ghostwrote a "Motion to Quash Subpoena" and "brief in support of a motion to quash and movant's objections," *id.* at 78–79, which Rousseau mailed to "the civil process, LLC people," *id.* at 77. He also sent the response to Plaintiffs' attorney at one, possibly two, email address(es) listed on the subpoena, but "it got returned to sender, and [he] wasn't sure after that." *See id.* at 77–79. Apparently, Rousseau objected that it would be "unduly burdensome and very expensive" for him to comply with the subpoena

---

[9] Hopper also sent messages warning one pro se Defendant "to tread lightly," Pls.' Renewed Mot. for Evid. Sanctions Ex. 19, Text Messages from D. Hopper to E. Kline (Oct. 18, 2019), ECF No. 716-4, and telling another individual that Plaintiffs' counsel was "trying to pull you into" some "[d]iscovery bullshit," *id.* Ex. 24, Message from D. Hopper to T. Hovator (Oct. 18, 2019). Hopper was on a conference call with the Court and the parties in this case when he sent those messages. *See id.*; Min. Entry of Oct. 18, 2019, ECF No. 579.

[10] Rousseau testified that this person reached out to him on social media "at some point in time" and asked if he "wanted to work together" on "networking and activism." *Id.*; *see also id.* at 80 (testifying that the person contacted Rousseau sometime before November 2018 because "he believed in the same things" and "wanted to help" with Rousseau's "activism networking"). Rousseau "never knew his real name," where he lived, which law firm he worked for, or even if he was a lawyer. *Id.* at 80 ("Q. Do you know if he was a lawyer? A. Well, he said he was and he seems to be, you know, credible enough. Just trusted him.").

because he did not remember some relevant information or no longer had access to the requested documents. *See generally id.* at 87–88, 92–93. Rousseau did not take any steps to preserve information relevant to this litigation. On the contrary, he testified that he "usually" set up social media applications "so that messages [automatically] delete after a while of existing on the platform." *Id.* at 30–31 ("Q. Is that every app you use, you set up that way? A. The ones that I can."); *see also id.* at 230 (noting that relevant ESI could "have gotten swept away in something . . . like the automatic server deletions"). Rousseau managed Vanguard's social media presence on Twitter, Discord, and possibly Gab.ai. *See id.* at 31, 40–41, 47, 57, 88, 123. In December 2019, the attorney who represented Rousseau in his deposition told Plaintiffs' counsel that he had not heard from Rousseau since late November. *See* Pls.' Renewed Mot. for Evid. Sanctions Ex. 34, Email from B. Gleason to M. Bloch et al. (Dec. 18, 2019, 4:55 PM), ECF No. 713-34, at 2–3. The attorney had reached out to Rousseau several times, but it was just "radio silence on his end." *Id.* at 2.

## IV. Discussion

Plaintiffs ask the Court to give the jury a permissive adverse-inference instruction grounded in Hopper's and Rousseau's failure to preserve and produce documents going to the heart of Plaintiffs' conspiracy claims against Vanguard America. More specifically, they ask the Court to instruct the jury that Vanguard intentionally withheld discoverable documents "and that the jury may draw adverse inferences from that fact," including that Vanguard's agents "chose to withhold such documents because [they were] aware that such documents contained evidence that Defendant Vanguard conspired to plan racially-motivated violence at the Unite the Right" rallies in August 2017. *See* Pls.' Renewed Mot. for Evid. Sanctions 5. Vanguard did not oppose this request.

17

\*

A permissive adverse-inference instruction helps "level[] the evidentiary playing field" at trial by allowing the jury to presume missing evidence was unfavorable to a party who, knowing it was relevant to some issue in the case, intentionally lost, destroyed, or otherwise failed to produce the evidence. *Voduesk v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *see Hodge*, 360 F.3d at 450. In August 2019, I found that an adverse inference "certainly could be appropriate in this case" if Vanguard "fail[ed] to produce the discovery from this point forward." Mem. Op. of Aug. 9, 2019, at 34; *see First Mariner Bank v. Resolution Law Grp.*, No. Civ. No. MJG-12-1133, 2013 WL 5797381, at \*14 (D. Md. Oct. 24, 2013). But, I delayed imposing that sanction until Plaintiffs could depose Vanguard's officers about what steps, if any, they took to preserve potentially relevant evidence. *See* Mem. Op. & Order of Nov. 30, 2020, at 31–33, 37–39. The officers' statements, as well as their "continued disregard for th[is] Court and its orders" to provide or permit discovery of relevant materials within their control, Mem. Op. of Aug. 9, 2019, at 31, leaves no doubt that a permissive adverse-inference instruction against Vanguard is warranted under either Rule 37(b)(2) or Rule 37(e). *See* Mem. Op. & Order of Nov. 30, 2020, at 37–39.

First, Vanguard had a duty to preserve the requested ESI and other materials when they were lost or destroyed. *See* Mem. Op. of Aug. 9, 2019, at 4 n.3, 12–13; Fed. R. Civ. P. 37(e). The duty to preserve potentially relevant evidence "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). "The broad contours of the duty to preserve are relatively clear," *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), and flow logically from a civil litigant's

18

obligation to disclose and produce discoverable material relevant to any party's claim or defense after a complaint is filed, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (noting that a party that "anticipates litigation" must "preserve what it knows, or reasonably should know, . . . is reasonably likely to be requested during discovery"). *See generally* Fed. R. Civ. P. 26(b)(1), 33(a)(2), 34(a)(1), 37(a)–(e). Once that duty is triggered, the party must "implement a 'litigation hold' to ensure the preservation," *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009), of materials that the party knows or should know are, "or could be, relevant to the parties' dispute," *Blue Sky Travel & Tours LLC v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015) (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)). The hold should "encompass[] any documents or tangible items authored or made by individuals likely to have discoverable information," *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005), even if those individuals are not party to the litigation, *see Zubulake*, 220 F.R.D. at 218 ("[T]he duty to preserve extends to those employees likely to have relevant information—the 'key players' in the case."). Moreover, "[i]f a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591.

Vanguard America's duty to preserve potentially relevant ESI and other materials arose, at the absolute latest, when Hopper was served with a summons and copy of Plaintiffs' complaint on November 17, 2017. *Nucor Corp. v. Bell*, 251 F.R.D. 191, 197 (D.S.C. 2008). Yet, Hopper took "no special steps" to preserve these materials—even though Vanguard's attorney told him to do so—and he made little, if any, effort to identify other "key players" within Vanguard's

leadership who might have discoverable information. *See* Def. Vanguard Am.'s Resps. to Pls.'
First Interrogs. & Reqs. for Prod. of Docs. 4; Hopper Dep. Tr. 101, 103–05, 107–08, 111; Pls.'
Renewed Mot. for Evid. Sanctions Ex. 22; *cf.* Mem. Op. & Order of Nov. 30, 2020, at 37
("Kline's admission that he did not even try to preserve any relevant information—despite the
fact his attorneys told him to do so—warrants an adverse-inference instruction under either Rule
37(e)(2) or the traditional 'spoliation' standard."). Rousseau continued to use the "automatic
server deletion[]" function on social media applications and did not back up the desktop
computer that stored the log-in information for Vanguard's email accounts before he threw it
away. Rousseau Dep. Tr. 30–31, 46–47, 72, 230; *cf.* Mem. Op. & Order of Nov. 30, 2020, at 12
(Kline "never took any steps to preserve [relevant] information, such as backing up his emails or
the contents of his phones"). Hopper and Rousseau both testified that they could not recall basic
details about Vanguard's social media accounts from the relevant time, even though they
personally created or controlled those accounts. *See* Hopper Dep. Tr. 30, 32, 43; Rousseau Dep.
Tr. 40–41, 72, 76, 87–88. Thus, the ESI and other relevant materials were lost—and cannot be
restored or replaced through additional discovery, Fed. R. Civ. P. 37—because Vanguard did not
make a "reasonable and good-faith effort" to "identify, locate, and maintain" them. *Victor
Stanley*, 269 F.R.D. at 522 (internal quotation marks omitted).

Second, Vanguard America's failure to preserve and produce materials that its agents
have admitted under oath contain potentially relevant information, and which this Court
repeatedly said are discoverable under Rule 26(b), has harmed Plaintiffs' substantive ability to
prove their conspiracy claim against the entity. *See* Mem. Op. & Order of Nov. 30, 2020, at 35.
"[D]iscovery was especially critical in this case because it is inherently difficult to prove a
conspiracy." *Id.* "Even in criminal prosecutions, 'a conspiracy is usually proven by

20

circumstantial evidence' such as 'a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *Id.* at 36 (quoting *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (cleaned up)). Thus, Plaintiffs reasonably sought "myriad communications, documents, and ESI" that could "help them prove that 'each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events.'" Mem. Op. of Aug. 9, 2019, at 32 (quoting Mem. Op. on Defs.' Mots. to Dismiss Am. Compl. 21). Hopper and Rousseau's failure to preserve and produce those materials potentially leaves an evidentiary gap justifying an "appropriately tailored sanction" against Vanguard, *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017). *Cf.* Mem. Op. & Order of Nov. 30, 2020, at 35–39 (pro se Defendant's "failure to produce much of the requested discovery, or to give believable [deposition] answers why the discovery did not exist," warranted a permissive adverse-inference instruction at trial).

Third, an adverse inference is appropriate because Vanguard's agents "acted with the intent to deprive [Plaintiffs] of the information's use in th[is] litigation." Fed. R. Civ. P. 37(e)(2). In August 2019, I found that Hopper acted in bad faith by stonewalling and ignoring the Court's discovery orders over the previous eighteen months even though, unlike other Defendants, there was "no indication" that Hopper had "acted out on social media" when he should have been participating in discovery. Mem. Op. of Aug. 9, 2019, at 30–31; *see Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 643 (1976) (district court did not abuse discretion in finding "flagrant" bad faith "[a]fter seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour" and the court's repeated warnings that the party's failure to

provide certain information could result in Rule 37 sanctions); *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 302 (4th Cir. 2011) (finding bad faith where the "record reflect[ed] a pattern of noncompliance," including that the "district court was repeatedly compelled to admonish" sanctioned defendants "even after it warned them that it was going to take pretrial process 'very seriously'" and defendants "made no effort to acknowledge their obligations"). We now know that Hopper *did* discuss the litigation online and, contrary to his representations to this Court in June 2019, Hopper did not simply "overlook[] or let[] slip from [his] memory," Letter from D. Hopper to J. Hoppe 1, Vanguard America's discovery obligations. Mem. Op. of Aug. 9, 2019, at 2 (noting that Plaintiffs' request for Rule 37 sanctions against Vanguard and two individuals was "well taken" because those Defendants had "continually failed to fulfil even their most basic obligations to this Court, their counsel, and the other parties to this case"); *see, e.g.*, Pls.' Renewed Mot. for Evid. Sanctions Ex. 20, Text Messages from D. Hopper to E. Kline (Oct. 19, 2019), ECF No. 716-5; *id.* Ex. 21, Messages from D. Hopper to N. Higgerston (Oct. 3, 2019), ECF No. 716-6; *id.* Ex. 24, Messages from D. Hopper to T. Hovator (June 7, June 28, Aug. 13, Aug. 14, and Oct. 18, 2019), ECF No. 716-9. Instead, Hopper "completely disregarded th[is] lawsuit" for nearly two years and continued "dragging [his] feet," *id.* Ex. 22, even after promising that he would "work as diligently as possible" to "comply with all orders" going forward, Letter from D. Hopper to J. Hoppe 2. Rousseau's evasive deposition testimony and halfhearted response to Plaintiffs' subpoena shows that he "'manifested an identical posture of resistance,' *Young Again Prods.*, 459 F. App'x at 302, and indifference to Vanguard America's obligations." Mem. Op. of Aug. 9, 2019, at 31. *Cf.* Mem. Op. & Order of Nov. 30, 2020, at 32–33 ("Kline did not follow through. In fact, Kline responded to two federal judges' patient indulgence with broken promises, halfhearted steps towards compliance, and countless sworn

statements that were evasive, internally inconsistent, or simply not believable." (quotation marks omitted)). Again, I "cannot interpret [Vanguard's] continued disregard" for this Court and its orders "as anything other than bad faith." Mem. Op. of Aug. 9, 2019, at 31 (quoting *Young Again Prods.*, 459 F. App'x at 302). On this record, Hopper's and Rousseau's failure to preserve and produce materials that "naturally would have elucidated a fact at issue permits an inference" that they knew giving such information to Plaintiffs "would have exposed facts unfavorable" to Vanguard or its case. *Vodusek*, 71 F.3d at 156; *see Sampson*, 251 F.R.D. at 179 ("The reason relevance [of missing evidence] is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." (citing *Vodusek*, 71 F.3d at 156)).

Finally, sanctions less severe than a permissive adverse-inference instruction against Vanguard America would not be effective in this situation. I already awarded $16,243.33 in attorney's fees "to sanction [Vanguard] for the procedural prejudice—namely evasiveness, delay, and obfuscation—[Hopper] caused Plaintiffs' ability to develop their case in a just, speedy, and inexpensive manner." Mem. Op. & Order Nov. 30, 2020, at 35 (cleaned up); *see* Mem. Op. of May 2020, at 1–7, 23–28. Hopper and Rousseau still failed to produce much of Plaintiffs' requested discovery, and they did not always "give believable answers why [other] discovery did not exist." Mem. Op. & Order Nov. 30, 2020, at 35; *see, e.g.*, *id.* at 18 ("Judge Moon found incredible Kline's assertion that he did not know how to fully and completely respond to Plaintiffs' discovery requests." (internal quotation marks omitted)). Vanguard America clearly is unwilling to obey this Court's orders even under threat of severe Rule 37 sanctions. *Cf.* Mem. Op. & Order of Mar. 24, 2021, at 23–24 (finding that sanctions less severe than a permissive adverse-inference instruction would not be effective against individual defendant where "I already imposed monetary

sanctions to no effect" and the defendant had "demonstrated that he will not obey this Court's orders even under threat of civil contempt, arrest, and detention").

V. Conclusion

Plaintiffs' Renewed Motion for Sanctions Against Defendant Vanguard America," ECF No. 713, is hereby **GRANTED**. Plaintiffs' request for a permissive adverse-inference instruction against Defendant Vanguard America is hereby **GRANTED** subject to the presiding District Judge's final approval. Plaintiffs should submit their proposed language to the presiding District Judge in their proposed jury instructions.

**IT IS SO ORDERED.**

ENTER: March 30, 2021

Joel C. Hoppe
U.S. Magistrate Judge