# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF

# VIRGINIA

## Charlottesville Division

Elizabeth Sines et al Plaintiffs

v.

Jason Kessler et al Defendants

### Civil Action No. 3:17-cv-00072-NKM

### DEFENDANT'S MOTION TO SANCTION PLAINTIFFS

### Preliminary Statement

Defendant Christopher Cantwell respectfully requests the Court impose sanctions on Plaintiffs for failure to properly serve him with documents or communicate with him for the fourteen months he has been incarcerated, with the conspicuous exception of those times they actually needed him to respond.

As will be illustrated in greater detail below, the Plaintiffs have admitted that they have not served me with motions and other filings while I have been incarcerated, and claim to have only just now realized this. The credibility of this claim is dubious, since the Plaintiffs have had no trouble serving me when it suited their purposes. The most charitable explanation for this is inexcusable negligence, but the circumstances I do not believe warrant charitable interpretation.

### Factual Background

In Plaintiffs' recent opposition to my objection to deposition, Plaintiffs confess that they have been sending documents to my Gmail account while I have been incarcerated at the Strafford House of Corrections in Dover, New Hampshire. Plaintiffs claim to have only just now realized this, and have

1

offered to send along the documents I have been deprived of for the last fourteen months.

Shortly after my arrest in January of 2020, I was told by phone of a report in the media that the Plaintiffs had once again asked the Court to reconsider a meritless motion for sanctions against me for saying that I would "have fun" with Plaintiffs' Counsel after this abuse of process had been disposed of. The supposed cause to reconsider the motion was the arrest that had me incarcerated at the time. This was presumably sent to my Gmail account, but correctional facilities are not known for their free and open Internet access, and I was never served with this motion at the jail.

Promptly after becoming aware of this motion, I sent a "Letter of Status" to this Court via postal mail. In that letter, I stated that I could only be reached via postal mail clearly marked as "Legal Mail" at 226 County Farm Road in Dover, New Hampshire. The address of the correction facility.

After sending that letter to this Court, I began receiving mail from this Court pertaining to this case.

The Plaintiffs cite this letter in their opposition to my objection to deposition, and the Plaintiffs have had no trouble contacting me when it served their purposes to do so.

In late summer of 2020, Plaintiffs served me at the jail via postal mail, a document titled "Plaintiffs First Requests for Admissions to Christopher Cantwell". I received this mailing without issue, and promptly responded with my "Motion for Accommodations" which the Plaintiffs note in their opposition to my objection to deposition. In that response, I noted that the Plaintiffs requested for Defendant Traditionalist Worker Party answer the requests under oath, and that I, not being a member of that organization, was in no position to fulfill such a demand.

I promptly received another document with an identical title, but with a completely different set of requests. This time, the document demanded that I answer them.

My motion for accommodations requested more time to respond, and this portion of my request had gone unanswered before a video conference was scheduled with Judge Moon. I brought up my request for more time in Judge Moon's presence, and Plaintiffs' counsel consented. I subsequently

2

met my obligation by mailing the response in before that extension expired.

The next filing I received from the Plaintiffs was the notice of deposition I recently objected to.

When I objected to this deposition as being untimely, Plaintiffs confessed in their opposition that they served "certain documents, correspondence and filings" including the motion seeking leave to depose me, and the "unopposed" motion to extend discovery deadlines, to my Gmail account. They claim to have only just realized this, as they were preparing said opposition.

## Argument

It strains credibility to claim that the Plaintiffs' conveniently selective failure to properly serve me was a mere clerical error.

Plaintiffs' counsel show meticulous attention to detail when it serves their purposes. They have diligently listened to my podcasts, read my social media posts, and even made bizarre attempts to blame me for the words of other people on Internet websites I have no control over. Attorney Roberta Kaplan (I am told) submitted a 100+ page document to the prosecutors and my public defenders in my criminal case in the District of New Hampshire, indicating her desire to see me sentenced far more harshly than Judge Barbadoro ultimately saw fit. In their opposition to my motion for a Guardian ad Litem, they picked from my 255 page answer to their second amended complaint, sent some time in 2019, a single line where I brag about my talent as a linguist, to argue this proves I am competent to play at lawyering. The idea that they just happened to miss the part where I entered into the public record of this case that I was in jail and couldn't check my email, does not warrant serious consideration by intelligent minds.

When the Plaintiffs' heard of my arrest, they asked the Court to reconsider their motion to enjoin me based upon that arrest. They filed a motion with the Court informing the Court that I had been incarcerated. Unless they expect the Court to believe they thought I was going to check my Gmail account from jail, which breaches the borders of absurdity, it seems conspicuous that they did not

3

mail this filing to me. We can surely expect they would have done so if it was in their interests for me to respond.

When they wanted to ask me questions, they sent mail to the Strafford House of Corrections. I received their requests for admissions, and when I wrote to the Court saying there was a problem with the requests, I got a corrected set of admissions. They contacted me, saw what I said about what I had received, and acted accordingly. When they wanted to depose me, they sent me a notice of intent to depose me.

In contrast, when they wanted the Court to act without my input, they sent me emails they knew full well I could not read. The motion for leave to depose me, and the motion to extend discovery deadlines are unlikely to be the only things I would have objected to in the fourteen months I've been intentionally left out of the loop.

This is hardly surprising to those of us familiar with the facts of this case. The Plaintiffs planned and executed a violent criminal conspiracy to silence their political opponents. Before the bodies were cold, they were lying to reporters with a carefully rehearsed narrative that was part of the plan all along. That narrative makes up the subject matter of this fraud upon the Court. As their profoundly intrusive investigation has served only to disprove these lies, the Plaintiffs have sought to gain advantage through trickery.

It is the obligation of a Just Court to see that they do not obtain it.

By choosing not to deliver vital documents to me while Plaintiffs knew I was incarcerated, they have deprived me of the opportunity to be heard on every decision this Court has made for the last fourteen months. In the most charitable interpretation, they have done so with inexcusable negligence, and to those of us familiar with the facts of the case, it is obvious that this was intentional. In either case, they have caused irreparable harm to my defense.

**A Note About Credibility**

When this suit was filed in 2017, a man could be forgiven for not understanding the nature of the Antifa movement, which Plaintiff Wispelwey, his co-conspirators, and others near to this case so vocally support. This lawsuit survived a motion to dismiss because the Plaintiffs had "plausibly alleged" that a bunch of complete strangers got together with the plan to commit a bunch of felonies on camera, just because they harbor inexplicable and irrational hatred for a favored handful of demographics. To the Defendants, this cartoonish depiction of us is not at all credible, and the conspiracy theory is absurd on its face, but we are not a dominant force in the culture of the United States, yet. Keeping it that way, was the aim of Plaintiffs' conspiracy.

While the facts of this case must be what decide it, what we deem to be "plausible" necessarily depends on certain cultural norms and our common understandings as a society. When the Plaintiffs came to this Court claiming that the KKK and Nazis showed up to terrorize innocent people, it is understandable that one sees the accused holding views associated with those groups, and then applies our cultural understanding of what the KKK and Nazis do.

In the wake of the George Floyd riots, informed people may hope that we can begin applying our improved cultural understanding of what postmodern Antifa communists do. Such as murdering their political opponents, burning down police stations, assaulting police officers with explosives, and setting occupied Federal Court houses on fire. When these examples of their patterns and practices are prominently on display, the violence that they brag about using to silence their political opponents is easier to grasp.

As soon as we do that, we stop assuming that the Plaintiffs in this case are the hapless innocent victims of White Supremacist cis-heteropatriarchy that they claim to be, and give closer inspection to their stories when they don't make sense.

The Plaintiffs' claim that a mere clerical error caused them to serve me at the jail when they needed me to respond, and sent emails I could not read when they benefited from my silence, does not pass the "Shoe on the Other Foot" test. If Defendant Kline, as an example, had such selective memory,

5

the Court would not hesitate to interpret he was lying, and it should interpret precisely this when the Plaintiffs make such an implausible claim.

## Dismissal Is The Appropriate Sanction

### My Minor Role In This Case

In the Plaintiffs opposition to my objection to deposition, they claim that "Cantwell is not just a named Defendant in this case, he was also one of the more prominent purveyors of violence at the event itself". If I was so central to this case, it would stand to reason that they would have properly served me, and not waited until 2021 to depose me.

They go on quickly to cite my completely unrelated conviction in the District of New Hampshire.

Just as conspicuous is what I have not been charged with or convicted of, which is to say, anything that would confirm the claims of the Plaintiffs.

I have been under FBI investigation for years, doubtlessly in no small part due to the calumnies before this Court. The Joint Terrorism Task Force broke my door down in a pre dawn raid and took all of my electronics. My computers were on, my hard drives were connected and unencrypted, I even had my password list open at the time of the raid. My cell phone was decrypted and its contents extracted. Prior to this, the FBI had obtained access to my Gmail account, my EZPass records, my banking records, even my cryptocurrency exchange records from China. In discovery, I gave the Plaintiffs body camera video, and recordings of my phone calls, I invite the reader to imagine what might have been on my now decrypted hard drives that totaled more than 40 terabytes of data. I have no secrets from the United States Federal Government.

If I had participated in some conspiracy to commit acts of terrorism in Charlottesville, Virginia in August of 2017, I would not have been out of prison to catch the case I am currently serving time on.

The two misdemeanors I pleaded guilty to in Albemarle County may have made me "prominent" in the sense that the media obsessed over it, but what I pleaded guilty to was hardly so infamous as the coverage in the press. Hence the misdemeanor convictions with a sentence of time served, down from the original 60 year threat. I pepper sprayed a violent criminal, a grown White man, who was involved in a gang assault. I attempted to spray another of the same demographic profile, but my can was empty. After this, a Jewish man, Kristopher Goad, and a "transgender woman of color", Emily Gorcenski, took a photograph of me pepper spraying the one criminal, and claimed that my "overspray" had "affected" them. When their statements didn't match up with the video evidence (Gorcenski was sprayed by one of Plaintiffs' co-conspirators), two of the charges were dropped.

In italics below, I will paste a snippet of the District Court Judge's decision in my preliminary hearing transcript for those charges.

*What Mr. Tracci told Mr. Woodard yesterday in this email which is part of our record, is that Mr. Goad is no longer certain that the direct deployment of gel pepper spray as he describes in his complaint resulted from action by Mr. Cantwell. In fact, it was indicated it was the result of action by another individual. This warrant that, one of the three that I'm trying, a violation of 18.2-312 is based on a statement signed by Mr. Goad where he told the magistrate, Cantwell used a gel mace pepper spray at my face and caused me to lose my vision temporarily. In his testimony this morning he talked about four deployments. He said the last two didn't affect him. The first two did and he identified Mr. Cantwell. The Court has concern that there's been a case pending here for two and a half months based on the testimony of Mr. Goad that Cantwell sprayed him at his face and there is nothing about overspray and the Commonwealth relies on overspray in this case. In the Court's opinion it does two things. It raises into question what Mr. Goad's recollections are. And the other one is a concern that Mr. Cantwell should be forced to stand trial on a warrant where the complainant says he did it, he did it at my face where he could identify somebody and then there is a representation a day before the preliminary hearing that he's not certain about it. I don't think Mr.*

7

*Cantwell should stand trial on that. The Court is going to dismiss that charge.*

*In regard to the other two charges, the case of violation of 18.2-52 which is a charge of maliciously injuring Emily Gorcenski by release of a caustic substance. In the Court's view of the Court found significant and, in fact, the Court asked Ms. Gorcenski the question itself. The only verbal communication between Mr. Cantwell and Ms. Gorcenski for the entire day was when she approached him at No Name Field and asked him about an incident at Walmart. Other than that there is no evidence that Mr. Cantwell did or said anything to Ms. Gorcenski. The incident that she describes, she said it was most---she was sprayed most likely by Mr. Cantwell based upon their vicinity. The testimony that's unchallenged, that there was someone else there who was described as dragon man that was releasing a spray. She says that she was affected by the overspray. There is no way for the Court to determine that Mr. Cantwell maliciously caused bodily injury to Ms. Gorcenski. When the Court hears a malicious bodily injury case, the testimony generally isn't, was well I was affected by what the defendant did. And here in close proximity, again the unquestioned evidence is that there was another person who was releasing a spray. The Court can't find from that evidence that there's probable cause for Mr. Cantwell to stand trial on that charge.*

*The third charge is under the same code section as Mr. Goad's, the one that Mr. Goad obtained which is maliciously releasing a caustic substance. There's been various descriptions in regard to what the substance was. It's been described as mace primarily in questions. It's been described as pepper spray. Mr. Cantwell describes it as pepper spray. It is a caustic substance whatever it was and that part of the statute is met. There isn't any issue that Mr. Cantwell deployed the pepper spray a number of times in a crowd. He doesn't challenge that. It's not an issue of controversy for the Court. The issue of controversy is whether or not Mr. Cantwell deploying the pepper spray was done in self-defense. That's part of the statute, but ultimately it's up to the trier of fact.*

I promptly sued my accusers for abuse of process and malicious prosecution.

Tracci direct indicted me on a second count of malicious release, and 11 months later, I pleaded

8

guilty to the misdemeanors. One count of assault on Kristopher Goad, and one count of assault on Emily Gorcenski. I took this plea agreement despite the fact that a District Court Judge already said there was no evidence that I did anything to either one of them, for the same reason I have contemplated defaulting on this lawsuit, abuse of process is an effective means of wearing down a man's resistance. My accusers subsequently signed a mutual release of all claims and I left the Commonwealth of Virginia to go home and lick my wounds.

The whole entire thing is on video, it is obviously not the product of a planned conspiracy on my part, and the Plaintiffs know this all too well. More to the point, neither man that I did engage, nor either of my accusers in the Albemarle County matter, are party to this suit. My accusers in Albemarle have signed a mutual release of all claims to avoid liability for malicious prosecution, and the one man I fought who has been identified, Thomas Massey, is facing trial for robbery and ethnic intimidation in Philadelphia.

None of the Plaintiffs in this case even accuse me of doing anything to them. If they did, they would open themselves up to perjury charges. Although, I'm starting to think we don't prosecute Democrats for perjury anymore in America.

To my understanding, I am accused of participating in a conspiracy. This conspiracy was supposedly hatched on Discord and at a meeting on August 11th at McIntyre Park. As it so happens, we have the Discord logs, and I have provided the Plaintiffs with a complete video of the meeting where this conspiracy was supposedly hatched.

*I think we could save ourselves a lot of time by playing that video for the Court, and by reviewing my dozen or so Discord messages, which began on or about August 1st 2017.*

I sadly do not have the document with me, but I recall that in Judge Moon's decision denying my first motion to dismiss for failure to state a claim, that I was "lower in the pecking order" but more connected to "overt acts of violence". The overt acts of violence referenced are described above,

9

and do not amount to confirmation of the Plaintiffs' claims, nor do they amount to a dime's worth of damages to anyone party to this suit. My near non existent place in the pecking order can be confirmed by my dozen or so Discord messages which did not begin until mere days before the events. I was a media personality who was invited to speak and promote the thing, I was not a planner or organizer, and I certainly didn't meet up with a bunch of complete strangers and plan to commit a felony on camera. The Plaintiffs know this, and they are only keeping me in this suit to punish a political opponent.

**I Have Nothing To Take**

Even if the Plaintiffs were to prevail over law and fact through sheer force of their budget and manpower, I am so broke I can't even afford bankruptcy. I am in jail awaiting transport to prison. I have nothing to give these people if I wanted to. There is no monetary loss involved if I am dismissed from the case. In fact, they can save themselves attorney fees by not harassing me anymore.

Of course, this is not about money for them anymore than it is about justice. This is purely an exercise of power over the weak for them, but I still thought this worth pointing out.

**My Defense Has Been Irreparably Harmed**

When my attorneys sought to withdraw in 2019, I thought it would be an insurmountable challenge to represent myself in this case. When they refused to defend me against the bogus threat allegations from Plaintiffs' counsel, apparently due to my failure to pay them more than the dubious allegation of threatening, I was left with no choice but to defend myself, and I put a great deal of work into getting up to speed on things. The Court will recall that I prevailed over the allegation of threatening Plaintiffs' counsel, as a pro se defendant.

The day after I submitted my objection to evidentiary sanctions against Defendant Kline, my door

10

got acquainted with an FBI battering ram, and I was held without bail in a correctional facility.

The "law library" at this jail consists of a single laptop computer which is shared by over 100 inmates. At the time I am writing this paragraph, it is the fourth day I have been working on this document. I asked to use the law library before breakfast at 5:30 am. It is now 10:37pm, and I was allowed access to this computer just 35 minutes ago. I have to stop before 10:45 for lights out.

The commissary here no longer sells pens. After the 3 I have left run out of ink, I will be reduced to writing with pencils. Pencils have to be sharpened by staff members who are outside of the housing unit, and depending on how busy they are, this can take hours.

Representing myself in this case from this correction facility would be completely impossible, even if I was totally up to speed and the Plaintiffs played by the rules. Trying to catch up on 14 months that I have not been served is simply not going to happen.

Even if I were to get up to speed, all of the Court's decisions in that time have already been made. I doubt I'd even be heard on most of them, and the Court would necessarily be extra hesitant to overturn decisions already made. Doubtlessly, parties on all sides have invested time and other resources to act on those decisions, and revisiting them would be viewed with hostility to say the least of it.

There is simply no way to fix this problem. The damage is done and it is irreparable. Only dismissing me from the suit can prevent this from unfairly impacting the ultimate verdict.

**This Damage Is The Result of Intentional Misconduct by Plaintiffs' Counsel**

The Plaintiffs will claim that dismissal is an extreme measure. An extreme measure is in order since this was clearly intentional, and the Plaintiffs have misrepresented the nature of their actions to the Court.

**Short of Dismissal**

11

While dismissal is the only way to prevent the Plaintiffs' misconduct from unfairly impacting the ultimate outcome of this case, I have a sense that I should provide some alternatives in this motion in case my arguments for dismissal are unsuccessful.

**Guardian ad Litem**

In my objection to deposition, I requested the Court appoint a Guardian ad Litem at Plaintiffs expense. Plaintiffs argue otherwise, predictably.

Most notably, the Plaintiffs claim that the Court would be rewarding criminal behavior by appointing me a GAL at their expense, since I am only in need of one due to my incarceration on an unrelated charge.

This is not about rewarding the conduct that led to my incarceration. It is about making sure that my completely unrelated incarceration does not unfairly impact the outcome of this case. Justice is not done if a bunch of millionaires go around suing indigent inmates in correctional facilities and obtaining default judgments just because the inmates cannot afford representation and lack adequate resources for a pro se defense. The Plaintiffs are spending money that they have no hope of recovering by suing me, either way. If they want to use their multi-million dollar budget to sue poor people, they should pay their own way.

Moreover, the Plaintiffs' recent disclosure that they have been selectively serving or not serving me depending on their desired outcome, drives home the point that I need somebody to protect my interests from their willful misconduct.

**Attorneys Fees**

Although I am a pro se Defendant, it is my understanding that Attorneys fees can still be awarded as sanctions for misconduct by the Plaintiffs. Short of dismissal, this would be the closest thing to a solution imaginable. If I were to be awarded attorneys fees, I could hire an attorney, and trouble like we are facing now could be avoided going forward.

12

Since the Plaintiffs have been selectively serving me for fourteen months, I propose $28,000 in attorneys fees. This is based upon a quote I got for representation early in these proceedings, of $1,000/month, for the fourteen months they have failed to serve me, multiplied by two, since whoever joined the case at this juncture would obviously have a tremendous amount of work to do in a prohibitively short period of time, to get up to speed.

**Stop Plaintiffs' Discovery Demands and Deposition of Defendant Cantwell**

Among the motions the Plaintiffs admit to not serving me with are the "unopposed" motion to extend discovery deadlines, and the motion seeking leave to depose me. I would have surely objected to both of these, if for no other reason, because I believe that the discovery powers are being misused by the Plaintiffs to spy on their political opponents. I do not believe they have any intention of winning this lawsuit on the merits of the case, the whole point was to drag us through the system, bankrupt us, and obtain information.

This well warranted suspicion stems from the glaring falsehoods in their complaints, many of which the Plaintiffs had to know before they filed the suit, and others which were surely disproven by material provided in discovery.

The two most notable examples of this are the Discord logs, and the body camera video I provided to the Plaintiffs voluntarily as soon as my then attorneys made the first discovery requests of me in late 2017 or early 2018.

The Discord logs were leaked before the lawsuit was filed. The Plaintiffs thusly had to know of my very limited Discord use, which consisted of roughly a dozen messages between August 1st and August 12th. None of these indicate I was central to the planning of the events and certainly none of which implicate me in a criminal conspiracy. I do not have their initial complaint, first amended complaint, or second amended complaint handy from which to quote, but I noted in my objection to evidentiary sanctions against Defendant Kline that the Plaintiffs made specific and plainly false

13

claims about my Discord usage.

The Plaintiffs also claimed that this supposed criminal conspiracy was hatched at a meeting at McIntyre Park on August 11th for which I was present. I provided a complete video of that meeting to the Plaintiffs in discovery. While their imaginations may have run wild about what was discussed before that video was provided to them, they had absolutely no excuse for continuing this obviously false claim in their second amended complaint. I also provided this body camera video to FBI investigators, and if it contained what the Plaintiffs' allege it contains, then I would surely have been indicted for those crimes years ago.

One partial remedy to Plaintiffs' misconduct would be to deny them any further discovery demands from me, and to deny them the deposition, since their "unopposed" motions to do extend deadlines and depose me were only unopposed on account of their misconduct. They should lose any motion they had originally won due to misconduct.

I must stress, that I do not believe that even this will fairly address the trouble created by Plaintiffs' misconduct, but it is the best I can come up with as an alternative to dismissal.

## In Conclusion

The Plaintiffs have been watching the narrative on which this lawsuit is based, unravel for the four years it has unjustifiably stolen this Court's valuable time. They have been undeterred from their course nonetheless, and have attempted to obtain an unfair benefit through trickery. Specifically, they have selectively served me with only those documents they thought they would benefit from me receiving, while sending those documents they did not want me to see to an email address they knew I could not check. This misconduct cries out for the Court's remedy.

I would love nothing more than to present evidence to the Court which plainly disproves the Plaintiffs claims in the suit. My lack of training as an attorney leaves me puzzled as to how so much time could pass without the opportunity to do so arising. The time for these games, however, is

14

running out, and as the moment of truth nears, the Plaintiffs actions become more and more desperate. Unless a clear signal is sent, we can expect more, and increasingly brazen misconduct.

Possible signals this Court may send are,

- ☐ Dismissing the Plaintiffs' claims against Defendant Cantwell
- ☐ Appointing a Guardian ad Litem at Plaintiffs' expense for Defendant Cantwell
- ☐ Attorneys fees in the amount of $28,000
- ☐ Halting further discovery demands against Defendant Cantwell
- ☐ What other relief the Court may see fit.

Defendant Cantwell requests the Court conduct a hearing on all of the above, and instruct the Strafford Department of Corrections to arrange for him to appear at that hearing via video conference.

Respectfully Submitted,

Christopher Cantwell, March 26th 2021

X_____

Christopher Cantwell
Booking #20-00348
226 County Farm Rd
Strafford County Doc
Dover, NH 03820



Office of the Clerk
US District Court
for the Western District of (
Charlottesville Division
255 West Main Street
Room 304
Charlottesville, VA 2290



Office of the Clerk
District Court
the Western District of Virginia
ottesville Division
West Main Street
Room 304
lottesville, VA 22902