Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1                    UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF VIRGINIA
2                      CHARLOTTESVILLE DIVISION

3    ****************************************************************

4    ELIZABETH SINES, ET AL.,   CIVIL CASE NO.:  3:17CV72
                                JUNE 4, 2021, 2:02 P.M.
5                               STATUS CONFERENCE VIA ZOOM

          Plaintiffs,
6    vs.

7                               Before:
                                HONORABLE NORMAN K. MOON
8    JASON KESSLER, ET AL.,     UNITED STATES DISTRICT JUDGE
                                WESTERN DISTRICT OF VIRGINIA
9
          Defendants.
10
     ****************************************************************
11
     APPEARANCES:
12

13   For the Plaintiffs:        ROBERTA A. KAPLAN, ESQUIRE
                                MICHAEL L. BLOCH, ESQUIRE
14                              Kaplan Hecker & Fink LLP
                                350 Fifth Avenue, Suite 7110
15                              New York, NY  10118
                                212.763.0883
16
                                KAREN L. DUNN, ESQUIRE
17                              JESSICA E. PHILLIPS, ESQUIRE
                                Paul, Weiss, Rifkind, Wharton &
18                              Garrison LLP
                                2001 K Street, NW
19                              Washington, DC  20006
                                202.223.7300
20

21   Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                       255 West Main Street, Suite 304
22                     Charlottesville, Virginia  22902
                       434.296.9284
23

24   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
     TRANSCRIPT PRODUCED BY COMPUTER.
25

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

```
 1   APPEARANCES CONTINUED:

 2   For the Defendants:          JAMES E. KOLENICH, ESQUIRE
                                  Kolenich Law Office
 3                                9435 Waterstone Blvd., Suite 140
                                  Cincinnati, OH  45249
 4                                513.444.2150

 5                                DAVID L. CAMPBELL, ESQUIRE
                                  Duane, Hauck, Davis, Gravatt &
 6                                Campbell
                                  100 West Franklin Street, Suite 100
 7                                Richmond, VA  23220
                                  804.644.7400
 8
                                  RICHARD SPENCER, Pro Se
 9                                P.O. Box 1676
                                  Whitefish, MT  59937
10
                                  MATTHEW HEIMBACH, Pro Se
11                                P.O. Box 278
                                  Steubenville, OH  43592
12                                301.525.1474

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   (Proceedings commenced, 2:02 p.m.)

2           THE COURT:  Go ahead and call the case.

3           THE CLERK:  This is the case of Elizabeth Sines and

4   others versus Jason Kessler and others, Case Number 3:17-cv-72.

5           THE COURT:  Okay.  Are those of you who are present

6   ready?

7           MR. KOLENICH:  Yes.

8           MS. KAPLAN:  We are, Your Honor.

9           THE COURT:  Before we begin, I will remind everyone

10  that under Standing Order 2020-12, the Court's prohibition

11  against recording and broadcasting court proceedings remains in

12  force.  Attorneys, staff, and any members of the public

13  accessing this hearing today may not record or broadcast it.

14          I have convened this conference today to discuss a

15  matter which the Court has been assessing; and that is the

16  feasibility of conducting the jury trial in this case in the

17  federal courthouse in Charlottesville from October 25th to

18  November 19, 2021, as presently scheduled.  That's, of course,

19  you know, about five months away.  It's, you know, time to

20  be -- at least to be planning seriously what we're going to do.

21  I plan to raise for the parties' consideration, and we'll begin

22  to solicit input on four topics that I think will be relevant

23  to that assessment for the trial.  I'll list them now, and then

24  we can get preliminary comments the parties might have.

25          First, the number of parties and lawyers in this case

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  raises a significant logistical concern of how to make sure

2  each side is represented at trial, given space limitations in

3  even a large courtroom such as that in Charlottesville.  Space

4  limitations would be of concern regardless, but I expect we

5  could continue to see risk from COVID-19 in October.  What is

6  an optimal and manageable footprint for each side in the

7  courtroom at trial?  How many plaintiffs and plaintiffs'

8  counsel could you do with in the courtroom at trial?  And a

9  similar question for the defendants, though I know there are

10  separate lawyers for groups of defendants, and also I think

11  four pro se defendants.

12          Second, this trial will, by necessity, involve not

13  just the courtroom itself.  The footprint of the parties in the

14  trial in the courthouse is also a factor.  During breaks in

15  trial, there could be the need for a breakout room or rooms.

16  There won't be enough for each individual party to have his own

17  space, but could all the defendants predominantly use one

18  shared space for a breakout room, given the number of parties

19  and counsel in the courtroom itself?  I expect there may be

20  some, but limited, space for the public or press in the

21  courtroom.  And so I have given some thought to having video

22  feed linked to another room in the courthouse just for any

23  overflow public or press.

24          Those two points are relevant to a third issue that I

25  have been considering; that is, whether the federal courthouse

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  in Charlottesville is best equipped to handle the trial, or any

2  trial of this scope and magnitude.  The jury room is quite

3  small.  The hallways are narrow.  Getting jurors and everyone

4  up and down the stairs and the elevators to the courtroom will

5  take a good deal of time that we will need to build into the

6  trial schedule.  And there are some, but limited, other rooms

7  for use by the litigants and public.  Security considerations

8  also must factor into this.  Frankly, the courthouse in

9  Charlottesville is woefully inadequate with regard to any kind

10  of normal security and just ordinary needs for moving jurors

11  and parties around.

12       I welcome the parties' thoughts today, and it would

13  be helpful -- and if it would be helpful in written summations

14  whether the courthouse in Lynchburg, or even possibly Roanoke,

15  might offer the parties a more suitable venue for the trial.

16  For instance, the courthouse in Lynchburg would likely have

17  substantially more space for the parties and jurors' use,

18  including three courtrooms and numerous conference rooms and

19  areas for public and press viewing.  And it would well be that

20  the entirety of the courthouse could be utilized for the trial.

21       Fourth, and finally, as this case goes to trial, it

22  is in the interest of all parties and the Court to ensure that

23  the actual issues in dispute are narrowed as much as possible.

24  This is currently set for -- the trial is currently set for

25  four weeks.  I would ask the parties whether the expectation

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   remains that it will take that long.  To that end, in several

2   cases, my pretrial order generally asks the parties to seek

3   agreement on stipulated facts on issues where there can be no

4   reasonable disagreement.

5        Also encourage mediation before the magistrate judge.

6   I guess you might think that's overly optimistic about settling

7   this case.  I think this is an unusual case, but there are

8   other things that can be mediated other than settlement.  And

9   the magistrate could possibly help that out -- help out with

10  that.  And it's also for the purposes of narrowing specific

11  issues and disputes at trial.  I would like to hear from

12  counsel whether a referral order to mediation before the

13  magistrate judge could assist the parties in preparing the

14  trial.

15       There are a number of other matters, but they're the

16  four main issues.  Of course, also I think it would be very

17  difficult to select a jury in Charlottesville.

18       I know I've given the parties a lot to consider.  Why

19  don't we just begin with plaintiffs' counsel addressing the

20  issues I've brought up, and whether there are points that would

21  benefit from a meet and confer between the parties following

22  this conference, or followed by written summations.

23       MS. KAPLAN:  Sure, Your Honor.  Would you like me to

24  speak?  This is Roberta Kaplan.

25       THE COURT:  Yes.

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1        MS. KAPLAN:  So Your Honor, we thought -- I thought

2   that you might raise some of the issues that you raised today,

3   and we've been thinking long and hard about how to practically

4   do this given COVID and given the large number of people

5   involved.  So we had a couple of thoughts for Your Honor's

6   consideration and obviously for the defense consideration.

7   First of all, and most importantly, we are able and we are

8   willing to limit the number of plaintiffs in the courtroom at

9   one time to one or two max.  We have our plaintiffs' consent

10  for that limitation, and that limitation should obviously be a

11  big help in terms of limiting the number of people who will be

12  in the courtroom at any one time.  We can make similar

13  limitations with respect to the lawyers.  Obviously, we're not

14  going to have huge teams of lawyers from each firm.  We'd have

15  very small teams of one or two from the three firms involved.

16  So we thought about that, and we would hope that that would at

17  least go partway to solving the problem.

18        The other thing that we thought about, Your Honor --

19  which you have already raised, and I think makes a lot of

20  sense -- is a video link that could be used both so that the

21  plaintiffs who are not in the courtroom could watch in

22  realtime, and to maybe deal with some of the issues about press

23  and public knowledge about what's going on.  In that regard,

24  Your Honor, I have an old friend who does this work who has

25  been working for a long time, and he has graciously honored --

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  agreed to do it for free, to wire the courtroom and the

2  courthouse so that the trial could be broadcast in realtime via

3  Zoom.gov, which is the platform we're using today, which has

4  been established to be the security requirements by the federal

5  government.  We could do that either to breakout rooms in the

6  courthouse, or we could do it, Your Honor -- if Your Honor

7  wants to think about that -- we have rented the very large

8  conference room at the hotel, the Omni, across the street.  And

9  we could also broadcast it as kind of an overflow room in there

10 as well.

11        In short, Your Honor, there's lots of different ways

12 we could do this, and we have thought about that very hard.

13 The company that we'd be using -- it's called Impact

14 Reporting -- is very experienced and adept at it.

15        (Audio interruption.)

16        THE COURT:  I'm sorry?

17        THE CLERK:  I had to mute someone.  Go ahead.

18        MS. KAPLAN:  I'm sorry.  So just to summarize, Your

19 Honor, we could limit -- we think there would be nine people,

20 somewhere like that, on the plaintiffs' side.  Based on our

21 current sense of things, probably around the same number on the

22 defendants' side.  If we left the courtroom -- so anything for

23 the press was broadcast somewhere else, either to another room

24 in the courthouse or to YouTube, which is possible as well, or

25 to the conference room at the hotel across the street, we think

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   we could satisfy the public safety requirements of COVID,

2   because we could have people sitting in the rows of the

3   audience section on each side.  And it may also help out with

4   any breakout room concerns.  We wouldn't need a breakout room,

5   Your Honor, at least for lunch, because again, we'll have a

6   room at the hotel room across the street to try to save space

7   for Your Honor.

8           I think this is all a long way of saying that we

9   would -- our clients would greatly, greatly prefer to try this

10  case in Charlottesville.  That's where it happened.  That's

11  where many of them are from.  Among other things, Your Honor,

12  just practically speaking, the not-for-profit that has been

13  funding the out-of-pocket expenses on this case has already put

14  a very large deposit down on hotel room space in

15  Charlottesville.  And I'm told that they stand to lose

16  somewhere in the range of $100,000 if the trial gets moved.

17          So for all those reasons, we would prefer to do it in

18  Charlottesville.  We know it's not simple.  We would agree to

19  very strict limitations on who could be in the courtroom at any

20  one time, and we would use the gracious and very generous

21  services of Impact Reporting to help us broadcast the trial in

22  realtime wherever and whenever the Court chooses.  We could

23  meet and confer with the defendants about that, and we could

24  also meet and confer with court personnel about that.

25          THE COURT:  Okay.  Obviously raises a lot of issues

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   about private persons broadcasting from the courthouse.  I

2   mean, it may be worth considering.  I was thinking more in

3   terms of trying to find someplace within the courthouse to

4   broadcast to.  Of course, we have got IT people who can handle

5   anything like that, but I'm not sure they would go off -- you

6   know, I'm not sure they could legally do anything off the

7   courthouse property.  But anyway, I'll just keep that in mind.

8   I'm not sure the feasibility of that.

9          All right.  Let's see.  Did you wish to speak to any

10  of the other issues I raised?

11         MS. KAPLAN:  On the other issues -- and my colleague,

12  Karen Dunn, is on the phone, and she should definitely speak up

13  about anything I missed.

14         On the other issues, we obviously agree that issues

15  should be narrowed to the maximum extent before trial.  We've

16  been working on a pretrial order that we intend to submit to

17  Your Honor for -- with the various dates which things would be

18  due, but we think we should be able to make substantial

19  progress on that before trial.  We're, of course, Your Honor,

20  happy to talk with a mediator, but -- with a magistrate as a

21  mediator, but I have to say that there have been sporadic

22  conversations with at least some of the individual defendants

23  separately, and none of that has panned out.  So I'm not very

24  optimistic about the chances of any real settlements here.

25         THE COURT:  Okay.  Well, I still might send an order

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  to Judge Hoppe, and he would be available if at least one of

2  the parties on the other side would want to mediate some

3  particular issue.

4          Anything else you would like to add?

5          MS. KAPLAN:  I don't think so, Your Honor, unless

6  Karen -- I think I heard Karen start to speak.  So go ahead,

7  Karen.

8          MS. DUNN:  Sure.  Good afternoon, Your Honor.  Karen

9  Dunn for the plaintiffs.

10         The only thing that I have to add is I -- and also

11 Ms. Phillips, who is also plaintiffs' counsel -- just got out

12 of a trial in federal court that did have public access, press

13 access, and restricted limits on the number of lawyers and

14 other folks in the courtroom.  It was a bench trial, not a jury

15 trial; but frankly, there were people in the courtroom that

16 could have, you know -- numbers-wise could have amounted to a

17 jury.  It was extremely successful with regard to the COVID

18 protocols, including masks and face shields for witnesses and

19 examining lawyers, including media access which was provided

20 for the reporters and also streaming access outside the

21 courthouse.  And that was all accomplished, my understanding,

22 is by the Court itself and by the staff there.  So if at any

23 point it's helpful to you, or to your court clerk, or to

24 anybody else for us to tell you about our experience and all

25 the protocols that were put in place, we would be happy to do

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  that.  But it was -- it was absolutely seamless.  And

2  everybody, you know, cooperated with these protocols.

3         THE COURT:  Well, we're having success here in the

4  Western District with the trials we've had, but they didn't

5  present the problems that this one presents.  And I'm hoping by

6  October that we will not have to worry about distancing,

7  because if we do, I don't know how we're going to get along

8  with this.

9         All right.  Thank you.  Let's see.  Mr. Kolenich?

10        MR. KOLENICH:  Yes, Your Honor.

11        THE COURT:  Do you have any comment?

12        MR. KOLENICH:  We did confer, most of the defense

13  attorneys.  We don't object to moving the trial outside of

14  Charlottesville; however, we didn't specifically discuss what

15  courthouse it might go to.  And I, of course, am the worst

16  possible choice to opine on the different courthouses around

17  Virginia.  I've only ever been in the one.  So I think that

18  will have to wait for written submission.  I understand the

19  plaintiffs want to keep it in Charlottesville, and that there

20  are significant financial considerations at this point.  So

21  we'll talk about all that with the plaintiffs.

22        The space limitations I think are going to be all

23  right with at least the represented defendants.  Obviously the

24  attorneys have to be in the room, and we do not have anywhere

25  near the large number of attorneys that the plaintiffs do.  But

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  we are able to limit the number of parties, or at least only

2  call them in on the days when their testimony is necessary.  We

3  also wouldn't object to the parties testifying from -- over

4  electronic means, such as Zoom.  I know that's happening in

5  various hearings and courthouses around the country.  So if

6  it's acceptable to everybody, we wouldn't object to that.

7         The Charlottesville courthouse is not ideally located

8  for ingress and egress if there's going to be crowds.  So we

9  did have some discussion about securely getting people in and

10 out of the courthouse, not just the logistics of it, but from a

11 safety perspective.  But we are all okay with waiting to see

12 what develops, as opposed to having a plan in place ahead of

13 time.  So we'd probably like to discuss that with the

14 plaintiffs as well about perhaps some side access for attorneys

15 or high-value parties, infamous parties that might be coming in

16 and out of the courthouse is something we discussed, but we

17 don't have any particulars to offer the Court today.

18        THE COURT:  Okay.  Let's see.  Mr. Campbell?

19        MR. CAMPBELL:  Yes, good afternoon.  Thank you, Your

20 Honor.  Dave Campbell for Defendant Fields.

21        I share the Court's concern with the use of a private

22 company with no compensation handling the video access.  And I

23 did speak with Mr. Kolenich as well in regard to the defense

24 kind of positioning everything.  So I won't rehash it.

25        Out of that, one of our thoughts was if the courtroom

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   was -- if essentially all or the vast majority of the courtroom

2   was limited just to counsel and the parties, that would

3   probably help us spread out -- as it sounded like the Court was

4   kind of indicating -- in the gallery, and then just come up

5   kind of whenever it's your turn to speak and whatnot.

6           I will unfortunately have to be asking the Court for

7   leave to bring my client.  I'm aware that he doesn't have a

8   constitutional right and that the Court may not grant that, but

9   just to make the Court aware that we'll be making a motion

10  along those lines.

11          But yeah, I think limiting the number of parties is a

12  good idea.  And other than that, I think everyone covered it.

13  Thank you, Your Honor.

14          THE COURT:  Where is your client located now?

15          MR. CAMPBELL:  He is in a correctional facility in

16  Pennsylvania.

17          THE COURT:  Okay.  All right.  Mr. Jones, is he

18  present?  Is anyone here representing Michael Hill, Michael

19  Tubbs, or the League of the South?

20          Okay.  Mr. ReBrook representing Kevin Schoep, the

21  National Socialist Movement, Nationalist Front, anyone

22  representing those defendants?

23          All right.  Mr. Spencer, did you have any comment?

24          MR. SPENCER:  Yes.  Good afternoon.

25          Not only do I not object to moving the trial to

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   Lynchburg, I think your instincts are sound on this; and I

2   would support that move for matters of feasibility, but also

3   matters of public spectacle and the media.  I, too, am

4   concerned when I hear about spending $100,000 on hotel rooms

5   and having a third-party broadcast service that is titled

6   "Impact Broadcasting."  I don't think that serves justice.

7   That seems to be promoting a public spectacle, which is what we

8   would like to avoid.

9        I would also just like to suggest some -- or mention

10  some security concerns, which I think were already mentioned by

11  some of the defendants' counsel.  I have been in the past -- a

12  few years ago -- attacked by activists, and so on.  That is a

13  concern to me.  So I think we should be -- and I think these

14  are your instincts on this and your instincts are sound -- I

15  think we should be trying to lower the temperature and removing

16  any kind of public spectacle aspect to this and just stick to

17  the facts.  But also, even with that, I think there are some

18  serious security concerns.  I'm, of course, speaking for

19  myself.  That might also be applicable to other defendants, but

20  I definitely have some security concerns in terms of moving in

21  and out of the courtroom.

22        Also, just as a quick addition, I'm more than happy

23  to engage in some kind of mediation with the magistrate judge.

24  That's it.

25        THE COURT:  All right.  Thank you.

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1              THE CLERK:  Judge Moon, Bryan Jones, he has been

2     trying to join, and he must be having connection issues.  He's

3     joined twice and been kicked off.

4              THE COURT:  Okay.

5              THE CLERK:  He's currently not on, but he has been

6     trying.

7              THE COURT:  All right.  Is Dylan Harper signed on?

8              THE CLERK:  No, I don't see his name.

9              THE COURT:  How about Matthew Heimbach?

10             MR. HEIMBACH:  Yes, Your Honor, I'm here.

11             THE COURT:  Would you like to speak?

12             MR. HEIMBACH:  I would, Your Honor.

13             I would just like to echo the sentiment held by

14    Mr. Spencer and defense counsel.  I think that there is a true

15    danger to not just our physical health, but possibly our lives,

16    in Charlottesville.  Logistical concerns are also big,

17    considering the fact that we're seeing additional lockdowns

18    being reestablished in places like China with the new Indian

19    variant of COVID.  We might not be out of the woods yet when it

20    comes to this issue, and it could get worse.  It looks like it

21    is at least in some places.  So having more space.

22             Then also the security concerns would be important in

23    terms of also moving -- one of the issues is just even housing,

24    because Airbnb and other rental services for homes have --

25    folks like myself can't utilize them anymore.  So especially in

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1    a place like Charlottesville, I think it would be an undue

2    hardship and incredibly expensive, which as a working class

3    father of two that has -- I'm the breadwinner for my wife.  I

4    have child support for my kids.  I live paycheck to paycheck.

5    Being out of work for a month and being in a very expensive

6    place like Charlottesville where I might not even be able to

7    find a place to rent would be an undue hardship for me to be

8    able to properly defend myself, and I think that would apply to

9    a lot of my fellow defendants.

10          So I would support moving.  I also support being

11   willing to meet, as Mr. Spencer said he was willing, to talk

12   with plaintiffs to try and mediate this.

13          And also I was curious in terms of the Court's

14   thoughts -- I don't know if this is the proper venue -- but in

15   terms of time spent for the trial, as best I can read the

16   plaintiffs' complaint, there are no allegations I had any

17   connection with James Fields, and I was not at the torch march

18   the night before the rally.  So a full two-thirds of what I

19   think we could say is the pretty distinct parts of the

20   plaintiffs' accusations, I'm not even included in tangentially.

21          THE COURT:  Okay.  Well, I don't want to get into --

22          MR. HEIMBACH:  Sure.

23          THE COURT:  -- that argument now, but I am curious

24   about one of the things I did want you to comment on, is the

25   length of the trial.

18

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1          MR. HEIMBACH:  Yes, Your Honor.  I mean, for me, I'm

2    almost certainly going to lose my job.  I live in an at-will

3    work state.  So I don't have enough vacation time to take a

4    full month off.  So for me, I'd like it to be as short as

5    possible, or if there would be some way for parts of the trial

6    for me to join remotely for things that perhaps don't directly

7    involve me, because it's not just going to be a hardship for

8    myself, but for my wife, for my ex-wife, and for my two

9    children that rely on me -- all of them -- you know, to be able

10   to work.  I'll almost certainly lose my job, not being there

11   for a month.

12          THE COURT:  Well, we can certainly look into some

13   sort of Zoom presence.  And maybe, if necessary, you might come

14   for a day or two.  But I don't think that -- I think that's

15   something that could be worked out.

16          MR. HEIMBACH:  Thank you, Your Honor.

17          THE COURT:  I think -- actually, I think Mr. Kolenich

18   said that he might have other defendants appear by Zoom, I

19   believe.

20          Okay.  Is there any party that's represented now that

21   hasn't spoken, or a representative of any party that hasn't

22   spoken?

23          Ms. Kaplan, what is your idea of the length of the

24   trial now?

25          MS. KAPLAN:  So Your Honor, let me start with that.

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  We think that given some of the adverse inference rulings that

2  the Court has made, that there is a significant possibility

3  that the trial won't take as long as we originally expected.

4  This obviously depends on both sides.  And we don't have a good

5  sense of how many witnesses the defendants intend to put on,

6  but we are hopeful that it could be reduced to closer to two

7  weeks, is our current hope.

8           THE COURT:  Is that your evidence, or the whole trial

9  are you estimating maybe two weeks?

10          MS. KAPLAN:  The hope is the whole trial, Your Honor.

11  But again, you know, the parties will work very hard about

12  stipulations to stipulate to facts and make the evidence

13  presentation as efficient as possible.  And again, we have a

14  pretrial order that will force the parties to do that, but we

15  would anyway start meeting and conferring with counsel for the

16  defendants and the defendants about that.  But again, I think

17  the adverse inference rulings could really help to expedite

18  things in terms of the length of the trial.

19          In terms of Mr. Heimbach's concern about not having

20  to be there the whole time, that's exactly what we -- why we

21  suggested Impact.  They have no connection to any party, other

22  than they recently did -- I think it was the first ever hybrid

23  COVID trial before Judge Schofield in the SDNY where they had

24  witnesses testifying from India, counsel from Italy and France,

25  and over 60 remote participants.  And they were able to do that

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  in a socially-distanced courtroom.  So that's why we

2  recommended them.  But, of course, if the Court is not

3  interested, you know, that's -- that was just to try to be

4  helpful.

5          THE COURT:  Well, thank you.  It's not that I'm not

6  interested, but it just takes some investigation.  It's not

7  something we can just say it's okay, because there are rules of

8  court about broadcasting, and also getting private persons

9  involved in any phase of the proceedings.

10          MS. KAPLAN:  Of course.

11          THE COURT:  And I know they're not participating in

12  the trial, but still it's --

13          MS. KAPLAN:  We're happy to get the Court and the

14  defense more information.  We're also obviously happy to put

15  you in touch with Judge Schofield herself up in New York, who

16  may be able to shed some light on this.

17          THE COURT:  What court was Judge Schofield in?

18          MS. KAPLAN:  Southern District of New York, Your

19  Honor.

20          THE COURT:  Okay.

21          MS. KAPLAN:  In terms of venue, it sounds like we're

22  going to need to brief this.  I'm not sure the parties are

23  going to agree.  But let me just say one thing for the record,

24  Your Honor:  It will be almost four years ago to the day when

25  this trial resumes when the events at issue in this case

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  happened in Charlottesville.  When the defendants came to

2  Charlottesville after weeks of organization and planning in

3  August 2017, they weren't worried about security.  They weren't

4  worried --

5          THE COURT:  Well, wait, wait, wait.  Now, don't start

6  that, because we're starting this case out even, as far as the

7  Court is concerned.  I'm not going to let one side, you know --

8          MS. KAPLAN:  No, but --

9          THE COURT:  -- say we're the white hats and they're

10  the black hats.

11          MS. KAPLAN:  No, but my point is they could do this

12  in Charlottesville, terrorize the town that way, and now say

13  that they're worried about the expense and security when they

14  did this to Charlottesville themselves back in August 2017

15  sounds --

16          THE COURT:  Okay.  I'm not --

17          (Unreportable crosstalk.)

18          Ms. Kaplan, excuse me.  Do you think -- do you want

19  to go down to the Fourth Circuit and defend a ruling that I

20  make that incorporates what you just said?  Do you think the

21  Fourth Circuit is going to allow me to make a decision -- an

22  important decision in this case because I think one party is

23  more innocent than the other?

24          MS. KAPLAN:  No, Your Honor, I'm not saying that.

25          THE COURT:  But I don't --

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1          MS. KAPLAN:  I'm not saying they're more innocent or

2   not.

3          THE COURT:  I think you're being provocative.  And I

4   didn't call this meeting to get into an argument, and I don't

5   want the defendants to feel they've got to answer this.

6          MS. KAPLAN:  No, no.  I understand, Your Honor.  Let

7   me try to be as neutral as possible.  I'm saying we're willing

8   to wire the courtroom.  We're willing to deal with security

9   concerns.  Those were issues that have always existed.  They

10  existed four years ago.  It just sounds a little ironic for the

11  defendants to be complaining --

12         THE COURT:  Well, I'm not thinking only of -- it's

13  not only the defendants.  I mean, we will have all the

14  participants in the event -- a lot of the participants in the

15  event that brought about this trial congregated back at the

16  scene where it all took place.  And there will be people that

17  we have no control over possibly attending, and we don't know

18  exactly what to expect.  And if we get away from that area,

19  that could reduce that tension.

20         MS. KAPLAN:  The concern I think that we have, Your

21  Honor, among other things -- and again, we're happy to brief

22  this, but I think the concern we have is that the security

23  concerns would be just as high, if not higher.  It's not like

24  people aren't going to know where this trial is taking place.

25  We have social media and the Internet today.  It will be known

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  to adherents of both sides where this trial is taking place.

2  So we have spent a lot of time working out security in

3  Charlottesville.  We believe it will be secure.  But if we have

4  to switch venues now and try to plan that in a different town,

5  it raises concerns for plaintiffs, as well, about security,

6  which are not insubstantial.

7          MR. HEIMBACH:  Your Honor -- I'm sorry, Richard, do

8  you want to go?

9          MR. SPENCER:  No, you can go ahead.

10          MR. HEIMBACH:  Okay.  Your Honor, I would just like

11  to bring up the plaintiffs discussing security concerns.  I

12  have not had them reach out to me about security for myself, so

13  I would assume that is a one-sided security plan.  Based upon

14  the bias of the plaintiffs, it seems very passionate and like

15  they're trying to set up by having this in Charlottesville to

16  be a hanging court, that they are going in from day one to try

17  and specifically not prove their allegations, but to try and

18  create a spectacle through affiliated media companies, to be

19  able to put us potentially in danger, and to try and drag us in

20  some sort of ritualistic manner back to Charlottesville.

21          When Ms. Kaplan said that we came to Charlottesville,

22  I worked with the Charlottesville Police Department on a plan

23  to follow the law, which I did, which of course we'll discuss

24  at trial.  I'm not going to litigate here.  But I worked with

25  the authorities the entire way --

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1          THE COURT:  All right.  I understand.  That's what I

2     was trying -- Ms. Kaplan, that's why I wanted you to stop.  I

3     don't want to get into this type of conversation about the

4     case.  The security of everyone is -- the Court has to consider

5     everyone's security in this case.

6          MS. KAPLAN:  We understand, Your Honor.

7          THE COURT:  Plus the public's.

8          MS. KAPLAN:  We understand, Your Honor.  Our concern

9     is honestly that the security concerns -- and we can brief

10    this, Your Honor -- would arguably be even worse for us and for

11    the plaintiffs if we were moved to Lynchburg or Roanoke.

12    That's our concern, and we've spent a lot of time thinking

13    about this.  So we're happy to brief it.  We're happy to

14    discuss it with Your Honor.  This is not something we take

15    lightly.  Months of planning have gone into this, including the

16    hotel arrangements to make sure that things would be secure.

17    And that would all have to start all over again in Lynchburg.

18    And again, I think the idea that people on both sides in the

19    public aren't going to gravitate to this, knowing where it is,

20    it's going to be just the same in Lynchburg or Roanoke as it is

21    in Charlottesville.

22          MR. SPENCER:  Your Honor, I agree with your

23    instincts.  I mean, clearly the temperature is going to be

24    lowered in Lynchburg than it would be in Charlottesville.  I

25    mean, of course we live in a social media age, but that just

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  seems to be a fact.

2           Ms. Kaplan is throwing out really outrageous

3  accusations.  She actually referred to the defendants as

4  terrorists.  And then she's also claiming that she wants to --

5  you literally did that verbatim -- and she's also claiming that

6  she wants to be neutral and that this is a security concern.

7  The only concern --

8           THE COURT:  Well, I don't want to make this about

9  anyone -- any person.

10          MR. SPENCER:  Okay.

11          THE COURT:  Let's stick to what's a good plan for the

12 trial.

13          MR. SPENCER:  Fair enough.

14          MS. DUNN:  Your Honor, may I just say two things --

15          THE COURT:  Yes.

16          MS. DUNN:  -- in the service of pragmatics.  One

17 thing I think that we need to put on the agenda to be

18 considered is that we have, you know, for prior hearings at the

19 courthouse interfaced with the marshals in Charlottesville.

20 And, you know, part of what we have done in order to get

21 prepared for this, and what we've been doing is specifically to

22 address the issues that the Court is now addressing with the

23 marshals there.  And obviously, you know, as Ms. Kaplan said, I

24 do think we need to take into account the work and planning

25 that has been done with regard to security already with the

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1  specific people already.  So I think, you know, as Your Honor

2  said, when we brief this -- I think, you know, we'd be happy to

3  brief it.  But one of the things that I think we'd like to take

4  into account is all the work that has already been done, but

5  including working with the folks on the ground at the

6  Charlottesville courthouse, because we've had to do that for

7  prior hearings.

8       And then the second thing I would just offer the

9  judge -- you know, I do think there is this judge in New York

10 who has done something similar.  The trial that I just did in

11 the Northern District of California was extraordinarily high

12 profile, so the press and the public concerns were very real.

13 It was probably one of the most-watched trials.  Obviously, you

14 know, there have been other very high-profile trials this year

15 conducted in the place where the conduct took place, which as

16 Your Honor knows, has its own value of having a trial where the

17 conduct took place.

18      So I raise all of this to say that this is an

19 extremely multifaceted issue.  And there is a lot that we would

20 need to brief and talk about with Your Honor in order to give

21 it its full hearing.

22      THE COURT:  All right.  Anyone else have any comment?

23      MR. CAMPBELL:  Judge, this is Dave Campbell.  My only

24 comment is limited to the length of the trial.  As the Court

25 indicated, I don't see this ever getting done in two weeks.  I

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1   can't recall the exact length of time, but I think it took an

2   awfully long time to pick a jury in my client's criminal trial,

3   and I anticipate it's going to be similar.  I'm not entirely

4   aware of the Court's constraints on written voir dire and all

5   that sort of thing, but I would imagine it's going to take more

6   than one day to pick a jury in this case, I'm sure, with this

7   many parties.  So I think two weeks -- I'm hopeful.  That would

8   be great.  I'm not saying that in any manner that I hope the

9   trial goes longer.  It just seems that merely given the number

10   of plaintiffs and the number of defendants, two weeks seems

11   overly optimistic to me in order to seat a jury and try this

12   case.  I would think three would be great.  I mean, I think

13   that would be efficient, stipulating everything we could, and

14   moving on through this quickly without duplicating evidence.

15   That would -- in my humble opinion, that would seem to be as

16   short as we could make it.

17           MS. KAPLAN:  Your Honor, our goal would be two, but I

18   agree with Mr. Campbell; it's entirely conceivable it takes up

19   to three.

20           THE COURT:  All right.  Well, that's one of the

21   concerns I have is picking the jury.  And the length of time,

22   of course, is one consideration, but just -- well, that's just

23   something that has to be dealt with.

24           Is there anything else that we need to talk about at

25   this time?

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1          If anyone has any contact with Mr. Jones -- well,

2     Carmen, you can have Mr. Jones -- he can file submissions, but

3     we'll allow any of you to file any submissions within -- do it

4     within seven days, by next Friday.

5          MS. KAPLAN:  Will do, Your Honor.

6          THE COURT:  And then include Mr. Jones and any other

7     person that's not present today.

8          MR. CAMPBELL:  Your Honor, just to be clear, is that

9     in general we're limited to the four topics, kind of what we've

10    been discussing here today?

11         THE COURT:  Well, don't -- don't get into the merits

12    of the case at this point, okay?

13         MS. KAPLAN:  We understand, Your Honor.

14         THE COURT:  All right.  Thank you all for joining

15    this afternoon.  We'll try to work something out equitably to

16    everyone.  Thank you.

17    (Proceedings concluded, 2:42 p.m.)

18

19

20

21

22

23

24

25

Sines, et al., v. Kessler, et al., 3:17CV72, 6/4/2021

1                      C E R T I F I C A T E

2        I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3   the United States District Court for the Western District of

4   Virginia, appointed pursuant to the provisions of Title 28,

5   United States Code, Section 753, do hereby certify that the

6   foregoing is a correct transcript of the proceedings reported

7   by me using the stenotype reporting method in conjunction

8   with computer-aided transcription, and that same is a

9   true and correct transcript to the best of my ability and

10  understanding.

11       I further certify that the transcript fees and format

12  comply with those prescribed by the Court and the Judicial

13  Conference of the United States.

14       /s/ Lisa M. Blair              Date: June 7, 2021

15

16

17

18

19

20

21

22

23

24

25