IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | Civil Action No. 3:17-cv-00072 |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| JASON KESSLER et al., | ) | |
|     Defendants. | ) | By:   Joel C. Hoppe |
| | ) |         United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Unopposed Motion for Entry of Default Against Defendant Nationalist Front ("NF") Pursuant to Rules 37 and 55 of the Federal Rules of Civil Procedure. ECF No. 918 ("Pls.' Mot."); *see* Order of Jan. 15, 2021 (citing 28 U.S.C. § 636(b)(1)(B)), ECF No. 922. I respectfully recommend that the presiding District Judge grant Plaintiffs' motion and enter Defendant Nationalist Front's default under Rule 55(a) because it has abandoned this lawsuit. *See* Fed. R. Civ. P. 55(a). Plaintiffs' alternative request that the Court render default judgment against NF is an appropriate discovery sanction under Rule 37(d) because NF twice failed, after being served with proper notice of a Rule 30(b)(6) deposition, to designate a person to appear and answer questions on the association's behalf. *See* Fed. R. Civ. P. 37(d)(1)–(3).

I. Background

Plaintiffs filed this lawsuit on October 11, 2017. Compl., ECF No. 1. Their original complaint named as Defendants numerous individuals and artificial entities, *see generally id.* ¶¶ 21–45, including Jeff Schoep, a resident of Michigan and leader of Defendant National Socialist Movement ("NSM"), allegedly "the largest neo-Nazi coalition in the United States," *id.* ¶ 38, and NF, an unincorporated association allegedly "led by Defendants Schoep, [Matthew] Heimbach, . . . and [Michael] Hill," *id.* ¶ 40. Later that month, Schoep personally accepted service of process

1

on behalf of himself, ECF No. 109, and "Nationalist Front . . . c/o Jeff Schoep" as a person "authorized to accept," ECF No. 60. Schoep and NF were among several Defendants who retained James Kolenich, Esq., and Elmer Woodard, Esq., to represent them in this matter beginning in December 2017. ECF No. 131.

Plaintiffs amended their complaint in January 2018, again naming Schoep and NF as Defendants to the action. Am. Compl. ¶¶ 37, 39, ECF No. 175. Schoep, NF, and several other Defendants filed a joint Rule 12(b)(6) motion to dismiss the amended complaint. ECF No. 207. NF also filed its own motion to dismiss, *see* ECF Nos. 105, 205, and an affidavit from Schoep asserting that NF is "not an entity that can be sued" because it "is merely a website that advertises the existence of certain 'Alt-Right' groups" and lists goals or "aspirations for interested groups" to follow, ECF No. 105, at 1. *See* Fed. R. Civ. P. 17(b). The Honorable Norman K. Moon, presiding District Judge, denied the joint Rule 12(b)(6) motion on the merits, *Sines v. Kessler*, 324 F. Supp. 3d 765, 793–94 (W.D. Va. 2018) ("*Sines I*"), ECF No. 335, and denied NF's separate motion as premature because it relied on an affidavit "not properly before the Court" at the pleading stage, *id.* at 806–07 & n.8.[1] *See* Order of July 9, 2018, ECF No. 336.

Messrs. Kolenich and Woodard represented NF in the litigation through early 2019. *See, e.g.*, ECF Nos. 343, 356, 359, 383. That February, Schoep moved to represent himself, ECF No. 418, and the attorneys moved to withdraw as counsel for Schoep, NSM, and NF after the clients terminated their services, ECF No. 420. *See* Tr. of Mar. 1, 2019 Mot. Hr'g 5, ECF No. 441. On March 4, I granted the motions and directed NSM and NF each to retain a licensed attorney and

---

[1] Judge Moon also explained that "the Court will eventually need to consider the [legal capacity] question in order to determine what alleged actions and statements of individuals are attributable to the purported unincorporated associations," *id.* at 806, and noted that the "parties may seek leave to brief this issue on an expedited basis," *id.* n.8. *See id.* at 806–07. No party sought leave to brief that issue, *see* Mem. Op. & Order of May 28, 2020, at 2 n.3, ECF No. 742, and NF did not file a motion for summary judgment.

"have that attorney enter his or her appearance on the Defendant entity's behalf in this matter" within two weeks. Order of Mar. 4, 2019, at 2, ECF No. 440. Mr. ReBrook timely noted his appearance on behalf of Schoep, NSM, and NF.[2] ReBrook Notice of Att'y Appearance (Mar. 19, 2019), ECF No. 451; *see also* Tr. of Mar. 18, 2019 Status Conf. Call 4, 6, ECF No. 455; Order of Apr. 4, 2019, at 1–2, ECF No. 461.

On March 28, 2020, Mr. ReBrook moved to withdraw as counsel for NSM and NF, which he referred to as "NSM/NF," while continuing to represent Schoep in this matter. *See generally* Mem. Op. & Order of May 27, 2020, at 3–10 & n.8. Mr. ReBrook argued that "the interests of [his] clients" were "clearly and directly adverse" because "NSM/NF espouses antisemitism and racial separation" and Schoep "has been speaking out against antisemitism, racism[,] and violence[, t]hus creating a conflict of interest." ReBrook Mot. to Withdraw 2–3; *see also* ReBrook Reply in Supp. of Mot. to Withdraw 2, 4, 6 (citing purported deposition testimony by NSM Rule 30(b)(6) designee Burt Colucci that NSM "considers [Schoep] to be a traitor," and asserting that both "NSM and NF view[] Mr. Schoep as a traitor"). He also asserted that it was in Schoep's "best interests . . . to cooperate with discovery and the court, whereas NSM/NF consider Schoep a traitor and have no interest in cooperating with counsel or this Court." ReBrook Reply in Supp. of Mot. to Withdraw 4. I rejected Mr. ReBrook's arguments and denied his motion to withdraw in May 2020. *See generally* Mem. Op. & Order of May 27, 2020,

---

[2] Nonetheless, Mr. ReBrook "consistently described Schoep as his only 'real' or 'human' client and, for reasons that still are not clear, construed the scope of his attorney-client relationship with NSM and NF to be limited by Schoep's personal involvement with or control over those two distinct entities." Mem. Op. & Order of May 28, 2020, at 4–5 (footnote omitted); *see generally* Va. R. Prof'l Conduct 1.13(a)–(e) ("Organization as Client"); *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, No. 1:15cv129, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016) ("The Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to conduct a reasonable investigation, make reasonable inquiries of its [agents], and fully respond to interrogatories and document requests." (quotation marks omitted)); Tr. of Oct. 18, 2019 Status Conf. 12, 15, 17–19, ECF No. 581.

3

at 12–17 & n.11.

On June 25, Plaintiffs noticed NF's deposition, pursuant to Rule 30(b)(6), to be held on July 24, 2020. *See* Pls.' Mot. Ex. 7, ECF No. 918-7. The Notice, which was properly served on Mr. ReBrook, directed NF to "designate one or more officers, directors, or managing agents, or other persons to testify on its behalf with respect to" twenty enumerated topics. *Id.*; *see* Fed. R. Civ. P. 30(b)(6). Those topics included NF's litigation conduct and responses to Plaintiffs' written discovery requests; the association's organizational, governance, and membership structures; its use of social media generally during the relevant time; and the association's and its members' preparation for, participation in, and communications about the Unite the Right rallies. *See* Pls.' Mot. Ex. 7.

During Schoep's individual deposition on July 23, 2020, Mr. ReBrook told Plaintiffs' counsel, "I don't know who we're supposed to get" to appear for NF's Rule 30(b)(6) deposition because Schoep did not speak for the association anymore and, "I can't just create a person out of thin air." Pls.' Mot. Ex. 9, Tr. of J. Schoep Dep. 271–72, ECF No. 918-9. He pressed them to give him "an actual name" of a person they wanted to depose. *Id.* at 272. Plaintiffs' counsel said it was NF and defense "counsel's responsibility to designate a representative to be deposed" under Rule 30(b)(6) and suggested that Mr. ReBrook should "send some sort of objection . . . if you're not going to have someone appear." *Id.* Mr. ReBrook responded, "Yeah, I get that. That's helpful." *Id.* "How about this," he continued. *Id.* "You get someone to appear for United Telephone & Telegraph Company tomorrow. Can you do that for me? You can't, right, because it's not a functioning organization." *Id.* (Mr. Isaacson: "I don't think this is productive right no[w]." Mr. ReBrook: "Maybe not, but you're being unreasonable if you don't hear how reasonable I'm being."). That evening, Mr. ReBrook emailed Plaintiffs' counsel to explain his

4

position that NF was "a temporary alliance that is no longer in existence" and that he could not "generate a human witness for a defunct, temporary alliance for organizations that have no ongoing relationship." Pls.' Mot. Ex. 10, Email from E. ReBrook to Y. Barkai (July 21, 2020 6:04 PM) ("If this were anything more than a paper entity, it would have a board of directors, or a CEO, or some sort of registration and contact information."), ECF No. 918-10. Plaintiffs canceled NF's deposition scheduled for the following morning. Pls.' Mot. 10.

On October 16, Plaintiffs sent NF a second notice for a Rule 30(b)(6) deposition to be held on November 2, 2020. Pls.' Mot. Ex. 11, ECF No. 918-11. Mr. ReBrook responded that "no one will be there" because he had no point of contact "for the Nationalist Front, never have[,] and likely never will." *See* Pls.' Mot. Ex. 12, Email from E. ReBrook to Y. Barkai (Oct. 30, 2020, 5:29 PM) ("You all pretend like you don't understand this extremely basic concept, but I'm sure with your combined educations and intellect, somebody will be able to figure it out. . . . Email me directly if there's something within the realm of possibility I can do for you."), ECF No. 918-12. NF did not appear for its scheduled deposition. Pls.' Mot. Ex. 13 (Nov. 2, 2020), ECF No. 918-13.

Plaintiffs filed this motion on January 13, 2021. They ask the Court to enter NF's default under Rule 55(a) because the association essentially disappeared from the litigation after answering the Amended Complaint in July 2018, ECF No. 343, and has made clear that it will not defend against Plaintiffs' claims. *See* Pls.' Mot. 12–13. Plaintiffs note, for example, that NF's responses to their written discovery requests were defective or inadequate and that NF still has not disclosed any social media accounts or electronic devices that may contain discoverable information. *See id.* at 8–9. Alternatively, Plaintiffs seek default judgment as a discovery sanction under Rule 37 because they assert "NF has failed to comply with numerous discovery

5

orders," *id.* at 6; *see id.* at 11–17 (citing Fed. R. Civ. P. 37(b)(2)(A)(vi)), and twice failed to appear at its properly noticed deposition, *id.* at 9–10, 14–16. Plaintiffs represent that Mr. ReBrook consents to entry of default against his client. *See id.* at 6, 10. NF did not respond to the motion. Accordingly, I consider Plaintiffs' requests for entry of default and default judgment against NF to be unopposed. Pretrial Order 2–3, ECF No. 101.

## II. The Legal Framework

*A.*     Rule 55 Default

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Defaults often occur when a properly served defendant fails to respond to a complaint—i.e., to serve a responsive pleading or motion to dismiss—within the time allowed. *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 129 (2d Cir. 2011); *see, e.g.*, *Bank of Am. N.A. v. Kluge*, No. 3:11cv1, 2011 WL 1750310, at *1–2 (W.D. Va. May 9, 2011) (clerk entered defendant's default under Rule 55(a) after the deadline to file a responsive pleading expired); *Tweedy v. RCAM Title Loans*, 611 F. Supp. 2d 603, 605 (W.D. Va. 2009) (same). Defaults also may be entered later in litigation when a defendant "fail[s] to . . . otherwise defend," Fed. R. Civ. P. 55(a), after answering the complaint. *See, e.g.*, *Mickalis Pawn Shop*, 645 F.3d at 129–30 (noting that the Second Circuit "embrace[s] a broad understanding of the phrase 'otherwise defend'" in Rule 55(a) and finding default where defendant "affirmatively signaled to the district court its intention to cease participating in its own defense" after repeatedly moving to dismiss, eventually filing an answer, and vigorously defending itself in discovery "over the course of several years"); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917–18 (3d Cir. 1992) (entry of default under Rule 55(a) was proper where

corporate defendant "filed an answer and actively litigated during pretrial discovery," but later failed to comply with court order directing it to retain counsel and appear at trial); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (individual defendant's "actions failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial were sufficient to support a finding that he had 'failed to plead or otherwise defend'" under Rule 55(a)).

A defendant who defaults during litigation "is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *J&J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6)) (discussing default by failing to file responsive pleading); *see Mickalis Pawn Shop*, 645 F.3d at 137 (discussing default by failing to otherwise defend after answering complaint); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (discussing defaults by failing to comply with discovery orders or to attend pretrial conference). Because the defendant is not held to admit legal conclusions drawn from those facts, however, "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780; *cf. Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (vacating default judgment "resting on the district court's flawed view that liability against Hoover Universal had been reliably established by the entry of default"). Thus, before entering default judgment, the court must find that the facts alleged in the complaint show the plaintiff is entitled to the relief sought therein, Fed. R. Civ. P. 8(a), 54(c). *See Ryan*, 253 F.3d at 780–71 (default judgment under Rule 55(b)(2)); *Anderson v. Found. for Advancement, Educ. & Empt. of Am. Indians*, 155 F.3d 500, 504–05, 506 (4th Cir. 1998) ("Anderson's complaint does not state a claim for civil RICO

and the district court therefore erred to the extent it entered default judgment [under Rule 37(b)(2)] on that basis.").

B.      Rule 37 Discovery Sanctions

"The basic philosophy" driving discovery today is "that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2001 (3d ed. 2002); *accord Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."). Rules 26 through 36 provide specific devices or procedures—such as interrogatories, document requests, and depositions—for one party to obtain discoverable information from another. *See Pruitt v. Bank of Am., N.A.*, No. 8:15cv1310, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016). Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100 Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). When they do not, Rule 37 provides one mechanism for a federal court to compel compliance or to sanction an unacceptable failure to follow the rules. Fed. R. Civ. P. 37(a)–(f).

Plaintiffs ask the Court to sanction NF under Rule 37(b)(2)(A) because they claim "NF has failed to comply with numerous discovery orders, including refusing to sit for a Rule 30(b)(6) deposition." Pl.'s Mot. 6; *see generally id.* at 6, 11–14, 17 (citing Fed. R. Civ. P. 37(b)(2)(A)(vi)). Rule 37(b)(2)(A) grants the district court where an action is pending broad discretion to impose sanctions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See Law*

8

*Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). This "language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before . . . sanctions can be imposed." *Sines v. Kessler*, No. 3:17cv72, 2020 WL 3106318, at *6 (W.D. Va. June 11, 2020) (quoting *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991)) ("*Sines II*"), ECF No. 759. Subsection (b)(2)(A) "contains two standards—one general and one specific—that limit a district court's discretion" in choosing what substantive sanction(s) to impose.[3] *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* (citing Fed. R. Civ. P. 37(b)(2)(A)).

Plaintiffs' motion does not identify which of this Court's "numerous" discovery orders NF allegedly violated or failed to obey. *See generally* Pls.' Mot. 6–17. There is no court order directing NF to designate a Rule 30(b)(6) representative or to appear for a properly noticed deposition in this case because Plaintiffs never moved under Rule 37(a) to compel NF to fulfil those discovery obligations. *See, e.g.*, Order of Oct. 28, 2019, at 1–2 (finding that non-party Burt Colucci was NSM's director, officer, or managing agent and granting Plaintiffs' motion to compel Mr. Colucci to sit for a Rule 30(b)(6) deposition devoted to his and/or NSM's conduct in pretrial discovery), ECF No. 582. Nevertheless, Rule 37(d)(1)(A) allows the court where an action is pending to "order sanctions if . . . a party or party's officer, director, or managing

---

[3] Substantive sanctions include orders deeming certain facts established, prohibiting the disobedient party from introducing designated matters in evidence, dismissing the case, and entering default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii), (v)–(vi). "Instead of or in addition to" any orders issued under Rule 37(b)(2)(A), "the court *must order* the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

9

agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)," including rendering default judgment against that party, Fed. R. Civ. P. 37(b)(2)(A)(vi). Despite twice being served with proper notice, NF did not designate anyone to testify on its behalf and failed to appear for its scheduled Rule 30(b)(6) depositions in July and October 2020. *See* Fed. R. Civ. P. 30(b)(6), 37(d)(1)(A)(i). Accordingly, the Court may order substantive sanctions under Rule 37(d).[4] *See Unifi Export Sales, LLC v. Mekfir Int'l Corp.*, 233 F.R.D. 443, 445–46 (M.D.N.C. 2005).

  The Fourth Circuit has developed a four-part test for district courts to use when determining what sanctions to impose under Rule 37. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The court should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." *S. States Rack & Fixture*, 318 F.3d at 597; *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)). While "some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). Extreme sanctions, such as dismissal and default judgment, are appropriate "where

---

[4] "Instead of or in addition to these sanctions, the court *must require* the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

the party's noncompliance represents a bad faith and callous disregard for the authority of the district court and the Rules" governing discovery. *Mut. Fed. Sav. & Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

III. Discussion

Each Defendant in this case was supposed to "produce all discoverable material," including any relevant ESI collected from that Defendant's designated electronic devices or social media accounts, to Plaintiffs' counsel on or before February 5, 2020. Order of Nov. 27, 2019, at 1, ECF No. 597; *see* Mem. Op. & Order of May 27, 2020, at 6. Plaintiffs have shown that NF's responses to their written discovery requests were defective and inadequate and that NF still has not disclosed any social media accounts or electronic devices that it was using during the relevant time. Pls.' Mot. 8–9 ("On April 6, 2018, NF responded to Plaintiffs' [first set of] interrogatories and document requests. NF's responses were signed and verified by Schoep. NF's responses identified no social media accounts or electronic devices associated with NF and no responsive documents or communications of any kind. . . . On December 7, 2018, . . . Schoep submitted a certification of his electronic devices and social media accounts that he signed on behalf of himself in his individual capacity, NSM, and NF. That certification identified just three devices and accounts belonging to Schoep individually or to NSM . . . but no device or account that appeared to be associated specifically with NF. . . . On November 29, 2019, NF served its responses to Plaintiffs' [second set of] interrogatories, which were unsigned and unsworn, and which identified no existing representative of NF." (exhibit citations omitted)). NF's prolonged history of non-compliance with its discovery obligations, combined with its failure to appear for two properly noticed Rule 30(b)(6) depositions, "affirmatively signal[s] . . . its intention to cease participating in its own defense." *Mickalis Pawn Shop*, 645 F.3d at 129–30. Accordingly, the

11

association has "failed to . . . otherwise defend" within the meaning of Rule 55(a). *See id.*; *Au Bon Pain Corp.*, 653 F.2d at 65. Default should be entered against NF. Fed. R. Civ. P. 55(a).

\*

In July 2018, Judge Moon concluded that the facts alleged in Plaintiffs' First Amended Complaint, accepted as true, supported a reasonable inference that NF joined with other named Defendants to "form[] a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Sines I*, 324 F. Supp. 3d at 772 (denying motions to dismiss); *see generally id.* at 793–800, 806–07 & n.8. Although Plaintiffs amended their complaint again after Judge Moon denied NF's motions to dismiss, ECF No. 557, the facts alleged against NF in the operative Second Amended Complaint are the same as in the prior pleading. Accordingly, the Court may render default judgment against NF if it concludes that is an appropriate sanction for failing to appear for its properly noticed Rule 30(b)(6) depositions. *See Sweepmasters Prof'l Chimney Servs. v. Vanessa Servs.*, No. 1:16cv439, 2017 WL 3927626, at \*1, \*3–6 (E.D. Va. July 5, 2017), *adopted by* 2017 WL 3927602 (E.D. Va. Sept. 7, 2017); *Opportunities Dev. Grp. v. Andruss*, No. 1:14cv62, 2015 WL 2089841, at \*3, \*6–8 (E.D. Va. Apr. 30, 2015) (citing *Anderson*, 155 F.3d at 506).

Entering default judgment against NF is an appropriate discovery sanction in this case. "In the Fourth Circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Brooks Sports, Inc. v. Anta (China) Co.*, No. 1:17cv1458, 2018 WL 7488924, at \*16 (E.D. Va. Nov. 30, 2018) (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)). Here, Mr. ReBrook knew that NF needed to designate at least one person who agreed to testify about information known or reasonably available to the association, Fed. R. Civ. P. 30(b)(6), and to make sure that person

12

appeared on NF's behalf at the first deposition in July 2020, Fed. R. Civ. P. 37(d)(1)(A)(i); Pl.'s Mot. 7. *See* Email from E. ReBrook to Y. Barkai (July 21, 2020 6:04 PM) ("I know what the Federal Rules say, so please let's skip the recitations."). He clearly should have understood that NF could not refuse to participate simply because, in counsel's view, there was no one to testify for the association. *See* Fed. R. Civ. P. 37(d)(2) ("A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought is objectionable, unless the party failing to act has a pending motion for protective order under Rule 26(c)."). But NF did not move for a protective order or otherwise give the Court an opportunity to consider its counsel's objections. Instead, Mr. ReBrook responded to opposing counsel with sarcasm and derision, and NF, through its counsel, refused to cooperate in their legitimate discovery request. Tr. of J. Schoep Dep. 271–72; Email from E. ReBrook to Y. Barkai (July 21, 2020 6:04 PM); Email from E. ReBrook to Y. Barkai (Oct. 30, 2020, 5:29 PM). NF essentially disappeared from the litigation, and its attorney showed no inclination to bring it into compliance. "On these facts, [I] cannot interpret [NF's] continued disregard" for its obligations under the Federal Rules of Civil Procedure "as anything other than bad faith." *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 302 (4th Cir. 2011).

       The other factors also favor rendering default judgment against NF for failing to appear at its depositions, identify devices that may contain responsive materials, or produce any documents. *Cf. Sines v. Kessler*, No. 3:17cv72, 2021 WL 1208924, at *8–10 (W.D. Va. Mar. 30, 2021) (conditionally granting Plaintiffs' request for an adverse inference sanction against Defendant Vanguard America) ("*Sines VI*"), ECF No. 936. First, such discovery misconduct must be deterred, lest any other litigant think that it or its attorney can behave this way in federal court. If Mr. ReBrook objected to Plaintiffs' deposing NF, which he clearly did, then he should

have moved for a protective order under Rule 26(c). *See* Fed. R. Civ. P. 37(d)(2). Simply not showing up for a properly noticed deposition was not an acceptable choice. *See* Fed. R. Civ. P. 37(d)(1)(A); *Frierson v. Parke*, Civ. No. 3:06-1892, 2007 WL 1032438, at *3 (D.S.C. Mar. 2, 2007); *cf. Nw. Nat'l Ins. Co. v. Batles*, 15 F.3d 660, 663 (7th Cir. 1994) ("Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.").

Second, NF's failure to appear for its depositions "caused significant procedural prejudice to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner." *Sines VI*, 2021 WL 1208924, at *7. Plaintiffs "had to deal with unacceptable delays, obfuscations, and disregard," *id.*, and "their attorneys have expended time and resources 'well beyond that which [are] expected of a party to secure' discovery to which it is clearly entitled,'" *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1143291, at *10 (W.D. Va. Mar. 24, 2021) (quoting ECF No. 877, at 7) ("*Sines III*"), ECF No. 933. NF's failure to appear also harmed Plaintiffs' substantive ability to prove their conspiracy claims. *Sines IV*, 2021 WL 1208924, at *9 ("Discovery was especially critical in this case because it is inherently difficult to prove a conspiracy."). "Even in criminal prosecutions, 'a conspiracy is usually proven by circumstantial evidence' such as 'a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *Id.* (quoting *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (cleaned up)). Plaintiffs reasonably sought NF's testimony on those topics to "help them prove that 'each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated at the August 11th and 12th events.'" *Id.* (quoting *Sines I*, 324 F. Supp. 3d at 784); *see* Pls.' Mot. 7. NF's unexcused failure to appear at two properly noticed Rule 30(b)(6) depositions,

14

especially after failing to identify any devices containing responsive materials or to produce any responsive documents, "potentially leaves an evidentiary gap justifying an 'appropriately tailored sanction' against" the association. *Sines III*, 2021 WL 1143291, at *10 (quoting *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017)).

Finally, sanctions less severe than default judgment would not be effective to sanction NF's repeated failures to appear at its depositions and to deter other litigants who might "flirt with similar misconduct." *Mut. Fed. Sav. & Loan*, 872 F.2d at 92 (explaining that entering default judgment against defendants as a discovery sanction sends "an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never fully remedied in the future"). A four-week jury trial in this case is set to begin, after numerous discovery-related delays, in October 2021. NF has made clear that the association stopped defending itself and will not comply with its obligations to this Court or the other parties in the case. *See Young Again Prods.*, 459 F. App'x at 303 (finding there was "no effective lesser sanction" than default judgment where defendants "showed no interest in taking the steps necessary to defend th[e] case"). Accordingly, rendering default judgment against NF is an appropriate sanction under Rule 37(d)(2).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** Plaintiffs' Unopposed Motion for Entry of Default Against Defendant Nationalist Front Pursuant to Rules 37 and 55 of the Federal Rules of Civil Procedure, ECF No. 918, and enter Defendant Nationalist Front's default under Rule 55(a). Plaintiffs' request that the Court render default judgment against Defendant Nationalist Front is also an appropriate discovery sanction under Rule 37(d) because Defendant twice failed, after being served with proper notice of a Rule

30(b)(6) deposition, to designate a person to appear and answer questions on the association's behalf. Fed. R. Civ. P. 37(d)(1)–(3). Accordingly, I recommend that the presiding District Judge enter default judgment as to liability on Plaintiffs' claims against NF and hold a hearing to determine the amount of Plaintiffs' damages for which NF should be held liable. *See* Fed. R. Civ. P. 55(b)(2).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTER: June 7, 2021

Joel C. Hoppe
United States Magistrate Judge