**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **ELIZABETH SINES** | : | **Case No.  3:17-cv-00072** |
| Plaintiff | : | **Judge MOON**<br>**Mag. Judge Hoppe** |
| | : | |
| -v- | | |
| **JASON KESSLER et al.** | : | |
| | : | |
| Defendants | | |

---

**MOTION FOR INTER DISTRICT TRANSFER AND RESPONSE**
**TO COURT'S REQUEST FOR BRIEFING ON TRIAL FEASIBILITY**

---

Defendants Kessler, Damigo, Parrott, Traditionalist Worker's Party and Identity Evropa ("Defendants") move the Court to transfer this case to a different division within the Western District of Virginia, and otherwise respond to the Court's request for briefing on trial feasibility as follows:

A.  Transfer of trial within the Western District of Virginia

The local rules of this Court, at Local R. 2(b), provide that "Civil actions for which venue is proper in this district must be brought in the proper division as well. The venue rules for United States district courts contained in the United States Code also apply in determining the proper division in which an action must be filed, so that such venue rules are construed as if the terms "judicial district" and "district" were replaced with the word "division."

1

28 U.S.C. § 1404 provides, in relevant part, "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district.

"Intradivisional transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under § 1404(a) but apparently judged by a less rigorous standard."   Hanning v. New England Mutual Life Ins. Co., 710 F. Supp. 213, 215 (S.D. Ohio 1989); Johnson v. Burlington-Northern, Inc., 480 F. Supp. 259, 260 (W.D. Mo. 1979).

Under § 1404(a), "a district court should consider the plaintiff's choice of forum, the convenience [*3] for witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious and economical. At least some courts have held that intra-district transfers are subject to a less rigorous standard than inter-district transfers, because the courts consider them less cumbersome." White v. ABCO Engineering Corp., 199 F.3d 140, 144 (3rd Cir. 1999) (addressing the appropriate level of analysis for an inter-district transfer under § 1404(a) and an intra-district transfer under § 1404(b)" cited by Whitehead v. Pepsi Bottling Grp., Inc., No. WMN-07-3478, 2008 U.S. Dist. LEXIS 132980, at *3 (D. Md. Apr. 24, 2008); Ramani v. Genesis Healthcare, Inc., No. GJH-19-3342, 2021 U.S. Dist. LEXIS 11255, at *3 (D. Md. Jan. 21, 2021).

District Courts in the Fourth Circuit appear comfortable applying the following factors to the issue of transferring a case: 1) Plaintiff's Choice of Venue; 2) Witness Convenience and Access; 3) Convenience of Parties; and 4) Interest of Justice. Ramani at *3.

a. <u>Plaintiff's Choice of Venue</u>

Plaintiffs certainly chose the correct district and division to file their lawsuit. Nevertheless, plaintiffs' choice of forum "is not entitled to great weight if the balance of conveniences is strongly in favor of (transferring the case)." <u>Cunningham v. Ford Motor Co., 413 F.Supp. 1101, 1106 (D.S.C. 1976); Ruff v. Strategic Contract Brands, Inc., Civil Action No. 6:15-cv-5004-BHH, 2016 U.S. Dist. LEXIS 106749, at *21 (D.S.C. Aug. 12, 2016)</u>. In addition, it appears to defendants that at least some of the party plaintiffs no longer live in or near Charlottesville VA.

b.  <u>Witness Convenience and Access</u>

"The convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." <u>Ramani  at *5.</u> "[i]nconvenience of non-party witnesses has more weight than inconvenience of party witnesses, who are presumed willing to travel to another forum." <u>Atl. City Assocs. No. 2, LLC v. Reale, No. CCB-11-0078, 2011 U.S. Dist. LEXIS 49296 at *3 (D. Md. May 9, 2011).</u>

In this case, it appears that the Court is willing to permit at least some witnesses to appear via "zoom" or other electronic means. Given that testimony via "zoom" has become well established and accepted in federal civil litigation since the advent of Covid lockdowns, it does not appear to the Defendants that witness convenience, despite its usual status as "the most important factor", adds anything one way or the other to the issue of transfer within the District.

c. <u>Convenience of the Parties</u>

"The convenience of the parties supports transferring a suit when travel to the original venue for extended time will cause hardship on [a party]." <u>Ramani at *7 (D. Md. Jan. 21, 2021).</u>  For the same reason as stated above, the "convenience of the parties" does not appear to have any particular relevance to the issue at hand.

d. Interest of Justice

"The interest of justice 'is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'" Cross v. Fleet Reserve Ass'n Pension Plan, 383 F. Supp. 2d 852, 857 (D. Md. 2005). Among the commonly considered interest of justice factors are the relative advantage and obstacles to a fair trial; the other practical problems that make a trial easy, expeditious, and inexpensive; and the administrative difficulties of court congestion. Ramani at *8 (D. Md. Jan. 21, 2021).

The underlying facts of this matter were among the most publicized news stories of August 12, 2017 all around the county. [1] While the years long slog through this litigation has removed "Charlottesville" from the nation's front page, it will no doubt re-acquire that status as trial commences. As such, the physical security of participants in this trial should be the main consideration as to the interests of justice.

It is undeniably a matter of speculation whether or not a "circus atmosphere" will materialize once trial begins. Moreover, at the recent "feasibility" hearing, plaintiffs argued that persons wishing to physically protest at the trial can just as easily travel anywhere in the Western District as they can to Charlottesville. While true, this observation of the plaintiffs misses the point.

Local authorities, in January 2017, publicly identified Charlottesville as the "capital of the resistance" to the Defendants' political speech.[2] It does not appear, since that designation was made, that anyone with authority in Charlottesville has made any attempt to walk back or clarify that statement. It is widely believed, and not just by the defendants to this case, that Charlottesville authorities failed to intervene in criminal activity on August 12, 2017 until the

---

[1] https://www.nytimes.com/2017/08/12/us/charlottesville-protest-white-nationalist.html;
https://www.cbsnews.com/news/1-dead-19-injured-after-car-plows-into-protesters-in-charlottesville/;
https://www.washingtonpost.com/news/the-fix/wp/2017/08/12/trump-responds-to-charlottesville-protests/;
https://www.cnn.com/2017/08/12/us/charlottesville-white-nationalists-rally/index.html
[2] https://www.wvtf.org/post/mayor-calls-charlottesville-capital-resistance#stream/0

public disorder was so out of hand that the planned "Unite the Right" rally was shut down by the police. [3]

There does not appear to have been any public clarification of the "capital of the resistance" comment since it was made in January 2017. Neither have Charlottesville authorities seen fit to issue one of those "make no mistake" statements politicians are so fond of regarding the certainty of even-handed arrests and prosecutions for misconduct surrounding the trial. Indeed, Charlottesville authorities have remained silent even though the Charlottesville community is aware that the possibility of moving the trial was recently discussed in open court.[4]

Whatever Charlottesville authorities subjectively intend by their statements and their silence, what they have objectively done is roll out a red carpet to anyone, especially anyone of a "punch a nazi" persuasion, to come to Charlottesville for this trial with the confidence that they are very unlikely to face any serious consequence for even criminal misbehavior in "the capital of the resistance".

Plaintiffs have expressed their own security concerns regarding trial. Defendants do not call into question the legitimacy of those concerns. Rather, defendants' position is that it strains credibility to state that it is burdensome to re-tool the security plans for a different courthouse given the several months between now and the scheduled start of the trial.

If the trial is indeed to be moved, that leaves the question of where to move it? As to the physical security issue, Defendants don't have any position on what other division may be able to handle the trial as any other location will not suffer from the same security concerns as

---

[3] https://www.usatoday.com/story/opinion/2017/12/04/charlottesville-report-tells-us-what-happens-when-police-fail-do-their-job-glenn-reynolds-column/917521001/
[4] https://www.cvilleclergycollective.org/   front page post of the organization's open letter to Judge Moon regarding "venue" of this trial.

5

the Charlottesville division. Thus, the issue of specifically where to send the trial likely devolves to secondary issues such as available space and technological capacity.

According to the website of the United States District Court for the Western District of Virginia, each division in the Western District has at least one technologically capable courtroom.[5] However, only two, Roanoke and Lynchburg, have more than one technologically competent courtroom. Having more than one courtroom available would allow that courthouse to conduct another matter requiring modern technology at the same time as this trial thereby meeting the legal requirement regarding "court congestion." As between the two, it appears than Lynchburg is about 60 miles closer to Charlottesville than Roanoke and as such, is the superior choice for transferee division.

Accordingly, defendants move the court to transfer trial of this matter to the Lynchburg division of the Western District of Virginia.

B. Covid

Defendants are unable to do more than speculate as to what the public health situation will be in October 2021. Nevertheless, defendants observe that vaccines have been distributed and America has grown at least familiar with, if not accepting of, the public health measures that were imposed. The defendant's strong preference, and we believe the plaintiffs agree with this preference, is that trial go forward as scheduled if it is at all possible to do so in October 2021. Defendants prefer that the trial proceed even in the face of renewed lockdowns by the observance of whatever reasonable public safety measures are then in force.

C. Electronic communication

Defendants take no position on the issue of retaining private vendors to provide technological services during trial except that Defendants reserve the right to make their own arrangements with regard to strictly inter defendant communications during trial.

---

[5] http://www.vawd.uscourts.gov/programs-services/courtroom-technology.aspx

Respectfully Submitted,

s/   James E. Kolenich_____
James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
JEK318@gmail.com


_s/ Elmer Woodard_____
Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

Trial Attorneys for Jason Kessler,
Matthew Parrott, Nathan Damigo,
Traditionalist Worker Party, and
Identity Evropa

## CERTIFICATE OF SERVICE

I certify the above was served on June 11, 2021 on all ECF participants and that parties
requiring service by other means were served as follows:


**Robert Ray**
*azzmador@gmail.com*
**Vanguard America c/o Dillon Hopper**
*dillon_hopper@protonmail.com*
**Elliott Kline** *eli.f.mosley@gmail.com deplorabletruth@gmail.com*
**Matthew Heimbach** *matthew.w.heimbach@gmail.com*
**Christopher Cantwell**
*#00991-509*
*USP Marion*
*4500 Prison Rd.*
*PO Box 2000*
*Marion IL 62959*