**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JASON KESSLER, *et al.*, <br><br> *Defendants.* | CASE NO. 3:17-cv-00072 <br><br> MEMORANDUM OPINION <br> & ORDER <br><br> JUDGE NORMAN K. MOON |

On June 4, 2021, the Court held a status conference to address the feasibility of conducting the trial in this case between October 25 and November 19, 2021, at the federal courthouse in Charlottesville. The Court invited initial comments at the status conference and allowed written submissions. The Court sought input on the trial's anticipated footprint in the courthouse and courtroom to ensure each side's representation while bearing in mind space limitations and potential risks presented by COVID-19. The Court also invited comments on whether the Charlottesville federal courthouse was the best equipped and the most suitable courthouse at which to hold the trial, or whether the Lynchburg or Roanoke federal courthouses offered more suitable facilities. And the Court asked the parties to address steps that could be taken before trial to narrow the issues in genuine dispute. Upon consideration of the parties' arguments and submissions—and noting the parties' pragmatic concessions limiting the number of parties and attorneys at trial and other steps reducing the footprint of the trial—the Court finds Charlottesville remains the proper and appropriate venue for trial.

Plaintiffs have objected to moving the trial to another federal courthouse in the Western District of Virginia. Dkt. 978. Plaintiffs argue that venue is not proper in Lynchburg or Roanoke, id. at 3–6; and that the factors courts consider in addressing transfer of venue requests weigh in favor of keeping the case in Charlottesville, id. at 6–16. After the status conference at which the Court raised the possibility of holding the trial at another courthouse, Defendants filed motions and briefs supporting transfer of the trial to another division in the District, namely Lynchburg or Roanoke. Dkt. 973 (Defendant Heimbach); Dkt. 974 at 1–6 (Defendants Kessler, Damigo, Parrott, Traditionalist Worker's Party and Identity Evropa); Dkt. 975 at 3 (Defendant Fields); Dkt. 976 (Defendant Spencer); Dkt. 977 at 1–7 (Defendant Schoep).

28 U.S.C. § 1404(b), upon which Defendants principally rely, does not authorize a transfer of the trial to another division in the District. Dkt. 974 at 1–2; Dkt. 977 at 2–3. Section 1404(b) provides, in relevant part: "Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." However, "any transfer under Section 1404(b) must be based upon 'motion, consent or stipulation of all parties,'" and therefore "all parties must agree to the transfer." Charles Alan Wright & Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3809 (4th ed. Apr. 2021 update); In re Gibson, 423 F. App'x 385, 390 (5th Cir. 2011) (explaining that Section 1404(b) "authorizes intra-district transfers of proceedings only when all of the parties agree"). Since Plaintiffs have objected to a transfer, Dkt. 978, Section 1404(b) does not authorize moving the trial to another courthouse in the District.[1]

---

[1] Another subsection of this statute provides that "[a] district court may order any civil action to be tried at any place within the division in which it is pending." (Emphasis added). By its terms, that provision authorizes a court to move a trial to another venue within a division, but

Nor would 28 U.S.C. § 1404(a) support a request to transfer the trial. Dkt. 974 at 1–2; Dkt. 977 at 2–3. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." (Emphasis added). In applying Section 1404(a), the Court must first decide whether the claims might have been brought in the transferee forum. Russell v. Wright, No. 3:11-cv-75, 2012 WL 868773, at *4 (W.D. Va. Mar. 13, 2012) (citing Finmeccanica S.P.A. v. Gen. Motors Corp., No. 1:07-cv-794, 2007 WL 4143074, at *2 (E.D. Va. Nov. 19, 2007)). Pursuant to the general venue statute, a civil case must be properly brought in the District, 28 U.S.C. § 1391(b), and under Rule 2(b) of the Local Rules of the Western District of Virginia, a civil action also "must be brought in the proper division as well." W.D. Va. Gen. R. 2(b). "In determining whether divisional venue is proper, the court applies the statutory venue rules for federal district courts, and substitutes the word 'division' for the terms 'judicial district' and 'district.'" Doe v. Bd. of Visitors of Va. Military Inst., No. 7:20-cv-58, 2020 WL 2563289, at *2 (W.D. Va. May 20, 2020) (citing W.D. Va. Gen. R. 2(b)). Where "divisional venue is improper, venue is also improper." Tusha v. Edge Mission Critical Sys., LLC, No. 1:20-cv-726, 2020 WL 6595211, at *4 (E.D. Va. Aug. 10, 2020).

The Court cannot conclude that divisional venue would have been proper in Lynchburg or Roanoke were this action filed in either division in the first instance. It does not appear any defendant has resided in either division, and in any event, not all defendants reside in Virginia. See 28 U.S.C. § 1391(b)(1); e.g., Dkts. 18–32, 42–50, 52–65, 127–30, 147–52, 157–58, 171–73,

---

not to transfer the case for trial to another division. Thus, it too is inapplicable to the questions now before the Court.

188–95, 197–200, 215–19. Therefore, there would only be venue in either the Lynchburg or

Roanoke divisions if a "substantial part of the events or omissions giving rise to the claim[s]

occurred" in either division. 28 U.S.C. § 1391(b)(2); Doe, 2020 WL 2563289, at *2. The record

before the Court does not establish that a "substantial part of the events or omissions giving rise

to the claim[s] occurred" in Lynchburg or Roanoke, so as to support divisional venue there. See

28 U.S.C. § 1391(b)(2); Dkts. 973–77 (defendants' submissions). The vast majority of the events

at issue in, and conduct underlying, Plaintiffs' claims occurred in Charlottesville. See Second

Am. Compl., Dkt. 557 ¶¶ 44–306. And to the extent preparatory steps alleged to have been taken

by certain defendants occurred elsewhere, those do not specifically support divisional venue in

Lynchburg or Roanoke. E.g., id. ¶¶ 59–84 (describing coordination online). Because the record

does not establish that divisional venue would have been proper in Lynchburg or Roanoke in the

first instance, 28 U.S.C. § 1404(a) also does not support a transfer of venue to either division for

trial. Accordingly, no statutory authority supports a transfer of venue from Charlottesville to

Lynchburg or Roanoke.[2]

Even assuming venue were proper in Lynchburg or Roanoke, the factors that guide

courts' decisions on requests to transfer venue do not weigh in favor of such a transfer. The

decision whether to transfer a case under § 1404(a) is committed to a district court's discretion.

Brock v. Entre Comp. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). The parties' filings focus

on four factors relevant to the decision whether to transfer: Plaintiffs' choice of forum, witness

---

[2] There is, and can be, no disagreement that the Charlottesville division of the Western
District of Virginia was the proper venue in which to bring this suit initially. Dkt. 974 at 3
(certain defendants' brief conceding "Plaintiffs certainly chose the correct district and division to
file their lawsuit," but arguing that transfer is appropriate); Dkt. 977 at 3 (same). Therefore, 28
U.S.C. § 1391(b)(3)—which would support venue in cases where there is no district (or division)
in which an action could otherwise be brought—would also not support divisional venue in
either Lynchburg or Roanoke.

convenience, convenience for the parties, and the interests of justice. See Dkt. 974 at 2; Dkt. 977 at 3; Dkt. 978 at 6–16; see also Gen. Creation LLC v. Leapfrog Enters., Inc., 192 F. Supp. 2d 503, 504 (W.D. Va. 2002) ("In deciding a motion to transfer venue, the court should consider the plaintiff's choice of venue, convenience to the witnesses and parties, and the interest of justice.").

A plaintiff's choice of forum ordinarily is entitled to deference. Russell, 2012 WL 868773, at *3. Indeed, "the plaintiff's chosen forum is entitled to substantial weight unless (1) the plaintiff chooses a foreign forum, and (2) the chosen venue has little connection to the cause of action." Leapfrog Enters., Inc., 192 F. Supp. 2d at 505 (citations omitted). Neither is implicated here. Plaintiffs' chosen venue of Charlottesville has a substantial connection to the claims in this case. And, for purposes of the pending venue motions, the record also shows that Plaintiffs filed suit in Charlottesville—the division of the District where many of them lived and a number still live; where they worked and studied; and where they assert that they were injured.[3] Accordingly, Plaintiffs' choice of venue in Charlottesville is entitled to substantial deference. Defendants "shoulder[] the burden to show that the balance of equities is in [their]

---

[3] See, e.g., Decl. of Thomas Baker, Dkt. 978-1 ¶ 4 (resident of Charlottesville and has lived there since May 2017); Decl. of April Muñiz, Dkt. 978-2 ¶ 4 (resident of Albemarle County, which is part of the Charlottesville Division, and has lived in and around Charlottesville since 1990); Decl. of Natalie Romero, Dkt. 978-3 ¶ 4 (resident of Charlottesville who has lived there for the last five years); Decl. of Marcus Martin, Dkt. 978-4 ¶¶ 4–6 (resident of Shipman who works and stays overnight in Charlottesville from Monday to Friday every week); Decl. of Devin Willis, Dkt. 978-5 ¶¶ 4–6 (undergraduate student at UVA in August 2017 when the events of this case took place, who since 2020 has been living abroad); Decl. of Elizabeth Sines, Dkt. 978-6 ¶¶ 4–6 (student at UVA Law School in August 2017, now resident of Baltimore); Decl. of Marissa Blair, Dkt. 978-12 ¶¶ 4–5 (presently lives and works in Charlottesville); Decl. of Seth Wispelwey, Dkt. 978-13 ¶¶ 4–6 (prior resident of Charlottesville for 24 years; currently resident of Tucson, Arizona).

favor and that judicial economy and convenience to all parties favor suit in another forum."

Russell, 2012 WL 868773, at *3 (cleaned up).

The record further establishes that the factors of convenience to the parties and to the witnesses also weigh in favor of keeping the trial in Charlottesville. Defendants largely assert that the convenience-to-the-parties factor "does not appear to have any particular relevance" in this case. Dkt. 974 at 3, Dkt. 977 at 4. One defendant argued that it would be difficult for him to get hotel accommodations for trial. Dkt. 965 at 16 (Tr. of June 4, 2021 Hr'g). However, the Court considers the convenience of "all of the parties to the action," and "if the effect of a change of venue would be merely to shift the inconvenience from one party to the other," transfer will generally be refused. See Charles Alan Wright & Arthur R. Miller, 15 Fed. Prac. & Proc. Juris. § 3849 (4th ed. Apr. 2021 update). Several of the plaintiffs have moved from the Charlottesville area, but many still live, work, and have family there, all of which make Charlottesville a more convenient forum for them. See footnote 3; Dkt. 978 at 8–9; e.g., Decl. of Thomas Baker, Dkt. 978-1 ¶¶ 4–11; Decl. of April Muñiz, Dkt. 978-2 ¶¶ 4–10 Decl. of Natalie Romero, Dkt. 978-3 ¶¶ 4–16. Upon consideration of the parties' submissions, it does not appear any other division in the District would be more convenient to all parties collectively than Charlottesville, or indeed that Lynchburg or Roanoke would be more convenient to any party.[4]

Similarly, the convenience to the witnesses factor also supports holding the trial in Charlottesville. Plaintiffs state that all named Plaintiffs intend to testify—many of which live in Charlottesville or the surrounding area. Dkt. 978 at 17. Furthermore, Plaintiffs attest that they

---

[4] To the extent there is any greater inconvenience upon Defendants by holding the trial in Charlottesville rather than Lynchburg or Roanoke, a transfer would at most "shift the balance of inconvenience" from Defendants to Plaintiffs. Rockingham Precast, Inc. v. Am. Infrastructure-Md., Inc., No. 5:11-cv-24, 2011 WL 5526092, *6 (W.D. Va. Nov. 14, 2011) ("Transfers of venue are not available merely to shift inconvenience from one side to another.") (cleaned up).

6

intend to call numerous third-party witnesses "who reside in and around Charlottesville," including several University of Virginia professors, an administrator, and a photographer, whose "testimony is material and necessary," and for whom "a trial held in Lynchburg or Roanoke would be less convenient than a trial held in Charlottesville." Decl. of Michael Bloch, Dkt. 978-8 ¶ 4. Defendants have not identified any witnesses located in Lynchburg or Roanoke or who would be inconvenienced by traveling to Charlottesville. See Dkt. 974 at 3; Dkt. 977 at 2–3. To be sure, some witnesses may testify remotely by videoconference—a pragmatic step the parties have identified as one way to reduce the number of people at trial and in the courthouse. See id.; Dkt. 978 at 18; Dkt. 965 at 12–13. Nonetheless, on this record the convenience to the witnesses factor also supports Charlottesville as the venue for trial.

Finally, as part of the "interests of justice" inquiry, Defendants raise concerns about substantial trial publicity and they also argue that "the physical security of all participants in this trial should be the main consideration" and warrants transfer from Charlottesville. See Dkt. 974 at 4–5; Dkt. 977 at 5; see also Dkt. 973 at 1; Dkt. 975 at 3; Dkt. 965 at 15. For their part, Plaintiffs argue that "the Charlottesville community clearly has a strong interest in adjudicating the issues posed by this case in Charlottesville," and that "a trial in Charlottesville will be meaningful to the local community." Dkt. 978 at 12. Plaintiffs further assert that Defendants' concerns about a media "spectacle" are unsubstantiated, and even if there were "prejudicial press coverage that is localized in nature," the Court could ensure there is no actual prejudice by conducting a thorough *voir dire* of prospective jurors. Id. at 14–15. Plaintiffs also identify numerous steps that they are willing to take to "minimize the footprint of the trial" and to reduce potential risks on account of COVID-19 or other security concerns. See id. at 18–22. Lastly, Plaintiffs also contend that Defendants' security concerns are "unsubstantiated," and note that

almost every case arising out of Unite the Right has been adjudicated in the Charlottesville

Division of the Western District, including a number filed by Defendants. See id. at 22–24; see

also Cantwell v. Gorcenski, No. 3:17-cv-89 (Dec. 28, 2017); Kessler v. City of Charlottesville,

No. 3:19-cv-44 (Aug. 12, 2019).

   The Court finds that the interests of justice factor continues to support holding this trial in

Charlottesville rather than transferring it, so that the trial may take place in the community most

directly affected by the Unite the Right rally. See Terry v. Walker, 369 F. Supp. 2d 818, 822

(W.D. Va. 2005) (explaining the public interest factor includes considering a "preference for

holding a trial in the community most affected"). The pretrial and any trial publicity counsels in

favor of the parties engaging in early discussions regarding how to ensure a thorough and

effective *voir dire* of potential jurors, which the Court expects will likely include, with input

from the parties, sending a tailored questionnaire to potential jurors.

   In response to this Court's Order, Dkt. 966, the parties submitted constructive proposals

regarding how the trial in this case can be conducted in a safe, manageable and effective way,

including: setting limits on the number of parties and counsel in the courtroom, reserving break-

out room space near the courthouse, willingness to take certain witness testimony by remote

means, and having discussions regarding stipulations in order to narrow the issues that are

actually in dispute. See, e.g., Dkt. 975; Dkt. 978 at 18–22. Raising such important but largely

logistical issues for the parties' consideration prompted the Court to hold the status conference

on June 6. Taking steps such as those identified in the parties' submissions would not only lessen

any continuing risks that may be presented by COVID-19 in October, but also would minimize

the footprint of the trial, and further support the safety considerations raised by the parties.

Such logistical considerations regarding the conduct of this trial will be addressed and resolved in future status conferences and orders of Court. However, the record before the Court demonstrates that such considerations warrant early and thorough planning for the trial, rather than moving it to another division. Thus, the Court finds that the public interest factor likewise weighs in favor of keeping the case in Charlottesville.

For these reasons, the Court concludes that the trial shall remain in Charlottesville, both because there is no venue in another division of the District, and because the factors relevant to such requests to transfer venue weigh in favor of holding the trial in Charlottesville. The Court will therefore **DENY** Defendants' motions to transfer venue. <u>See</u> Dkts. 973, 974, 975, 976, and 977.

It is so **ORDERED**.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion & Order to the parties.

Entered this __18th__ day of June, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE