IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES, et al., | ) | Civil Action No. 3:17-cv-00072 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JASON KESSLER, et al., | ) | |
| Defendants. | ) | By:   Joel C. Hoppe |
| | ) | United States Magistrate Judge |

     This matter is before the Court on Plaintiffs' Motion for Sanctions Against Defendant National Socialist Movement, ECF No. 894 ("Pls.' Mot."), under Rule 37(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs ask the Court to find that Defendant National Socialist Movement ("NSM") disobeyed a court order directing NSM's agents to produce relevant documents within their control and to instruct the jury that it "may draw adverse inferences from th[is] fact," including that NSM's agents "chose to withhold such documents because [they were] aware that such documents contained evidence that NSM conspired to plan racially-motivated violence at [the] Unite the Right" rallies in August 2017. Pls.' Mot. 6; *see generally id.* at 10–12, 15–17, 20–21 (discussing Mem. Op. & Order of June 23, 2020, ECF No. 774); Pls.' Reply 4–11, 14 (same), ECF No. 904.[1] The motion has been fully briefed, ECF Nos. 894, 899, 904, and may be resolved without a hearing, Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b). Plaintiffs' request for a permissive adverse-inference instruction against Defendant NSM will be granted subject to the presiding District Judge's final approval.

I. The Legal Framework

---

[1] Pinpoint citations to documents electronically filed on the case docket, except for transcripts of court proceedings and depositions, use the header page numbers generated by CM/ECF. Pinpoint citations to transcripts use the number printed on the upper right-hand corner of the cited page.

Rule 37(b)(2) authorizes the district court where an action is pending to impose sanctions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). "Once a court makes the threshold determination under Rule 37(b)" that a prior discovery order has been violated, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what substantive sanction(s) to impose, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[2] "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)). In making this determination, the court should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc)); *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)). Some sanctions, including an adverse inference,

---

[2] Substantive sanctions "may include" orders deeming facts established, permitting or requiring an adverse inference, or entering default judgment against the disobedient party. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533–34 (D. Md. 2010) (quoting Fed. R. Civ. P. 37(b)(2)(A)); *see Thompson*, 219 F.R.D. at 102 ( "Rule 37(b)(2) provides a non-exclusive list of possible sanctions[.]"); 8B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2289 (3d ed. 2018) (explaining that Rule 37(b)(2) gives courts "broad discretion to make whatever disposition is just" in the particular case and that available sanctions are "not limited to the kinds of orders specified" in subsection (b)(2)(A)(i)–(vi)). "Instead of or in addition to" any orders issued under Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

require the court to find that the disobedient party acted willfully or in bad faith. *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004)).

## II. Background & Procedural History

Plaintiffs allege that Defendant NSM is "the largest neo-Nazi coalition in the United States" and has been led by Defendant Jeff Schoep "as its 'Commander' since 1994." Second Am. Compl. ¶ 37, ECF No. 557.[3] Schoep attended the Unite the Right rallies on August 11–12, 2017, and later "tweeted that it was an 'honor' to stand with [NSM and] the other 'warriors'" in Charlottesville. *Sines v. Kessler*, 324 F. Supp. 3d 765, 776 (W.D. Va. 2018) ("*Sines I*") (quoting Am. Compl. ¶ 37, ECF No. 175); *accord* Second Am. Compl. ¶ 38 ("Schoep participated actively in the events of August 11 and 12 and tweeted afterwards that, 'It was an Honor to stand with U all in C'Ville this weekend. NSM . . . and the rest, true warriors!'"). Members of NSM allegedly planned and participated in the violence that caused Plaintiffs' varied injuries. *See Sines I*, 324 F. Supp. 3d at 778, 791–94 (denying Rule 12(b)(6) motion to dismiss).

Plaintiffs filed this lawsuit in October 2017. Compl., ECF No. 1. Their complaint named as Defendants numerous individuals and artificial entities, *see generally id.* ¶¶ 21–45, including Schoep, NSM, and Nationalist Front ("NF"), another group allegedly led by Schoep, *id.* ¶¶ 38–40. Later that month, Schoep personally accepted service of process on behalf of himself and both organizations. ECF Nos. 60, 109, 110. James Kolenich, Esq., and Elmer Woodard, Esq., represented Schoep, NSM, and NF in this litigation from December 2017 through February

---

[3] The Second Amended Complaint describes NSM as an unincorporated association located in Michigan Second Am. Compl. ¶ 38. An unincorporated association's capacity to sue or be sued in federal court is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). In Virginia, "[a]ll unincorporated associations or orders may sue and be sued under the name by which they are commonly known and called . . . and judgments and executions against any such association or order shall bind its real and personal property in like manner as if it were incorporated." Va. Code § 8.01-15.

2019. *See* Order of Mar. 4, 2019 (granting motion to withdraw as counsel), ECF No. 440. Schoep was NSM's sole officer, director, or managing agent participating in the litigation during this time. *See, e.g.*, Pls.' First Mot. to Compel Disc. from Def. NSM 4–10 (discussing NSM's discovery responses), ECF No. 547.

In early March 2019, Schoep announced that he was stepping down as NSM's leader, and that "Burt Colucci, Chief of Staff of the National Socialist Movement, w[ould] be taking over operations as the new Commander effective immediately." Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 4, Public Release, Nat'l Socialist Movement, Announcement (Mar. 1, 2019), ECF No. 674-4. Mr. Colucci "ha[d] been handling most of the day to day operations" for NSM, and Schoep assured supporters that he had "full faith and confidence" in Mr. Colucci as the group's new leader. *Id.* Schoep also told supporters that "NSM as an organization" was "actively in the process of retaining new attorneys" to represent it in this case. *Id.* On March 19, Edward ReBrook IV, Esq., formally noted his appearance as counsel of record on behalf of Schoep, NSM, and NF. *See Sines v. Kessler*, 3:17cv72, 2020 WL 7214201, at *2 (W.D. Va. May 28, 2020) ("*Sines III*") (denying Mr. ReBrook's motion to withdraw as counsel for NSM and NF), ECF No. 742. From the beginning, Mr. ReBrook "consistently described Schoep as his only 'real' or 'human' client" and "construed the scope of his attorney-client relationship with NSM and NF to be limited by Schoep's personal involvement with or control over those two distinct entities." *Id.*; *see generally id.* n.6 (citing examples).

On May 22, 2019, Mr. Colucci and fellow NSM directors Acacia Dietz[4] and Mike Scholar agreed to dissolve NSM as a Michigan corporation. Pls.' Second Mot. to Compel Disc.

---

[4] Ms. Dietz is also Mr. ReBrook's legal assistant. *See, e.g.*, Email from A. Dietz to B. Colucci (Apr. 17, 2020, 12:28 AM), ECF No. 712-1, at 3.

from Def. NSM Ex. 18, ECF No. 674-18. Two days later, Mr. Colucci filed papers to

"'reincorporate[]' the NSM in Florida," Email from A. Dietz to B. Colucci (Apr. 17, 2020, 12:28

AM), under the name "National Socialist Movement Corporation," Pls.' Second Mot. to Compel

Disc. from Def. NSM Ex. 21, ECF No. 674-21. He also announced in a blog post on the NSM's

longtime website, www.nsm88.org, that "the NSM HQ ha[d] relocated" to Kissimmee, Florida.

Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 29, at 2–3, ECF No. 674-29. Michigan's

Department of Licensing & Regulatory Affairs issued a Certificate of Dissolution for NSM in

June 2019.[5] *See id.* Ex. 24, at 4, ECF No. 674-24.

In October 2019, I granted Plaintiffs' first motion to compel discovery from Defendant

NSM, which sought an order: (1) directing NSM to identify individuals, besides Schoep, who

had documents or ESI responsive to Plaintiffs' discovery requests; (2) requiring NSM to submit

updated certificates in accordance with the parties' ESI protocol; and (3) allowing Plaintiffs to

depose NSM's Rule 30(b)(6) designee about the designee's and the organization's conduct in

pretrial discovery. Disc. Order of Oct. 28, 2019, ECF No. 582; *see* Pls.' First Mot. to Compel

Disc. from Def. NSM 2; Stip. & Order for the Imaging, Preservation & Prod. of Docs. ("ESI

Protocol") (Nov. 19, 2018), ECF No. 383. Plaintiffs filed that motion in part because Mr.

ReBrook had repeatedly put the onus on Plaintiffs' attorneys to tell Mr. ReBrook who else within

NSM he should contact to respond to Plaintiffs' discovery requests. *See Sines III*, 2020 WL

7214201, at *2 & n.6 (May 28, 2020). Before granting the motion, I explained to Mr. ReBrook

that his "view of who the client is for NSM [was] overly narrow in just focusing on Mr. Schoep."

---

[5] A corporation's capacity to sue or be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Under Michigan law, a dissolved "corporation may sue and be sued in its corporate name[,] . . . process may issue by and against the corporation in the same manner as if dissolution had not occurred," and a legal "action brought against the corporation before its dissolution does not abate because of the dissolution." Mich. Stat. §§ 450.1834(e), (f), 450.2834(e), (f).

Tr. of Oct. 18, 2019 Status Conf. 12, ECF No. 581. While Mr. ReBrook did not "represent 'every member' of NSM, he should consider all persons 'acting on behalf of NSM,' or who have had 'some sort of authority' or 'exercise[] control over' the organization to be his 'clients as well when [he is] representing NSM.'" *Sines III*, 2020 WL 7214201, at \*4 (quoting Tr. of Oct. 18, 2019 Status Conf. 12). Thus, it was his "responsibility to conduct a reasonable investigation to determine who those [people] are," to figure out "what discovery they may have," and "to provide that information to the plaintiffs," Tr. of Oct. 18, 2019 Status Conf. 12, "in accordance with the 'multiple orders' I had already entered directing NSM to comply with its discovery obligations," *Sines III*, 2020 WL 7214201, at \*4 (quoting Tr. of Oct. 18, 2019 Status Conf. 15).

The Order granting Plaintiffs' first motion to compel directed Mr. Colucci, in his capacity as Defendant NSM's Rule 30(b)(6) designee, to (1) sit for depositions by Plaintiffs' counsel devoted to his and/or NSM's conduct in pretrial discovery and, separately, on the merits of Plaintiffs' allegations against Defendant NSM; and (2) give the Vendor "complete and accurate credentials (or consent) to access any social media accounts" within NSM's "control that may contain discoverable information." Disc. Order of Oct. 28, 2019, at 1–2. The Order acknowledged Mr. Colucci's claim that he controls "non-party 'National Socialist Movement Corporation'" based in Florida, but also made clear that the Court considered Mr. Colucci to be a director, officer, or managing agent of Defendant NSM, the organization formerly based in Michigan. *Id.* at 1, 2 (citing Fed. R. Civ. P. 30(b)(6)). Thus, the Court expected Mr. Colucci to "work together" with counsel for the parties "to provide information to access any social media account" within Defendant NSM's control and, if that was not possible, to give his "consent to access stored electronic communications and other account information" maintained by a social media provider. Disc. Order of Oct. 28, 2019, at 2; *see Sines v. Kessler*, 3:17cv72, 2020 WL

6

3428988, at *4 (W.D. Va. June 23, 2020) ("*Sines V*") (Mem. Op. & Order of June 23, 2020, ECF

No. 774).

Mr. Colucci sat for his first Rule 30(b)(6) deposition in December 2019. Pls.' Second

Mot. to Compel Disc. from Def. NSM Ex. 5, B. Colucci Dep. Tr. 34–35, 163–72, 175–77, 199–

218 (Dec. 10, 2019) ("Dec. 2019 Colucci Dep. Tr."), ECF No. 708-15. Mr. ReBrook defended

the deposition for Defendant NSM, but he did not discuss Plaintiffs' discovery requests with Mr.

Colucci beforehand, and Mr. Colucci did not know that he was expected to answer questions on

Defendant NSM's behalf. *See id.* at 34–35, 91–92, 163–72, 175–77, 199–218; Fed. R. Civ. P.

30(b)(6) ("The persons designated must testify about information known or reasonably available

to the organization."). Broadly speaking, Mr. Colucci testified to his leadership role in the

Michigan-based NSM from early 2018 through the spring of 2019, *see* Dec. 2019 Colucci Dep.

Tr. 47–49, 50–57, 67–69, 80–81, 96, 102, and explained that he "reincorporated in Florida

because [he] was tired of the tug-of-war that was going on [between Schoep and James Hart

Stern] up in Michigan,"[6] *id.* at 96. *See generally Sines V*, 2020 WL 3428988, at *2–3. He also

confirmed that in May 2019 he posted a message on social media, Dec. 2019 Colucci Dep. Tr.

97, warning "White brothers and sisters" that their "information" may be subject to court-ordered

discovery in this litigation, but assuring NSM's followers that he was "the only person for the

---

[6] As the parties know, there was a dispute over who controlled Defendant NSM in late 2018 and early
2019. *See Sines III*, 2020 WL 7214201, at *3 & n.5. In April 2019, I barred Mr. Stern from participating
in the case on NSM's behalf because Mr. Stern was not an attorney and "the Court cannot have two
people, who apparently hold opposing goals, claiming to act on behalf of the same defendant entity in this
litigation." Order of Apr. 4, 2019, at 2, ECF No. 461. That October, I found that Mr. Colucci was
Defendant NSM's officer, director, or managing agent under Rule 30(b)(6). Disc. Order of Oct. 28, 2019,
at 2. "Mr. Colucci's testimony and other statements confirm he 'can be expected to identify' with
Defendant NSM's interests in the litigation 'as opposed to the interests of the adverse party,' which is the
'paramount test' in determining whether an individual is a corporate party's 'managing agent[.]'" *Sines V*,
2020 WL 3428988, at *4 (June 23, 2020) (quoting *In re Honda Am. Motor Co. Dealership Relations
Litig.*, 168 F.R.D. 535, 541 (D. Md. 1996)).

last two years that has had access to any and all NSM sensitive material" and that he did "not have to answer to uncle Zog" because he was not a named defendant in the "Charlottesville lawsuit," *id.* at 96. Mr. Colucci "vaguely remember[ed]" that the phrase "NSM sensitive material" referred to "membership information" that "would have been passed along" by Schoep when Mr. Colucci took over Defendant NSM. *Id.* at 98. He received this information in "both hard copy and electronic" formats, but he destroyed or deleted all of it in mid-June 2019 "because most of it was no good." *Id.* at 99–101. Finally, Mr. Colucci refused to permit discovery of responsive NSM-related materials in his possession or control without *another* court order because, in his view, Defendant NSM and NSM in Florida were wholly separate entities. *See, e.g.*, *id.* at 81–84, 90–95, 163–73, 210–13, 262–72. He indicated that he would comply if ordered to do so, however. *Id.* at 270 ("[Mr. Colucci]: Okay. Well, let's stick with the judge's decision then."). On December 17, Mr. ReBrook informed Plaintiffs' counsel that Mr. Colucci "refuses to consent to any discovery" regarding the "now dissolved" Defendant NSM because neither he nor his "National Socialist Movement Corporation" were parties to this litigation. Email from E. ReBrook to M. Bloch (Dec. 17, 2019, 8:48 AM), ECF No. 712-2. *Contra* Disc. Order of Oct. 28, 2019, at 1–2 (rejecting this rationale and ordering Mr. Colucci to provide or permit discovery of materials within Defendant NSM's possession or control).

*

"Each Defendant in this case was supposed to produce all discoverable material, including any relevant ESI collected from that Defendant's designated electronic devices and social-media accounts, to Plaintiffs' counsel on or before February 5, 2020." *Sines V*, 2020 WL 3428988, at *4 (June 23, 2020) (citing Order of Nov. 27, 2019, at 1, ECF No. 597; Disc. Order of Oct. 28, 2019, at 2–3; Order of Mar. 4, 2019, at 3, ECF No. 440; ESI Protocol 2, 8–9, 16;

Order of Nov. 13, 2018, at 1–2, ECF No. 379). When Defendant NSM missed that deadline, Plaintiffs filed a second motion to compel, ECF No. 674, focusing on NSM's failure to produce relevant ESI and to permit inspection of electronic devices within its control as Plaintiffs requested under Rule 34, *see Sines V*, 2020 WL 3428988, at \*2–5. On June 23, 2020, I granted Plaintiffs' motion in a Memorandum Opinion & Order, ECF No. 774, giving Mr. Colucci and Mr. ReBrook step-by-step instructions how to fulfil Defendant NSM's outstanding discovery obligations within the next two weeks. *Sines V*, 2020 WL 3428988, at \*5.

"The Court ha[d] already held Plaintiffs [were] entitled to the requested material because it is . . . relevant to their surviving claims and proportional to the needs of the case, considering the parties' relative access to such information, . . . the importance of the discovery in resolving the issues, and most Defendants' (including Defendant NSM) apparent inability to locate and produce responsive" materials. *Id.* at \*4 (citing *Sines v. Kessler*, No. 3:17cv72, 2019 WL 3767475, at \*15 (W.D. Va. Aug. 9, 2019) ("*Sines II*")); ESI Protocol 2, 8–9, 16; Order of Mar. 4, 2019, at 3; Order of Nov. 27, 2019, at 1). The Court had also ordered Mr. Colucci "to provide or permit discovery of the same material within his control by a date certain." *Id.* (cleaned up). Yet, he "ignored outright the Court's first order directing him to cooperate with Plaintiffs' counsel and insisted that he will not comply unless the Court directs him to do so for a second time." *Id.* at \*5 (cleaned up). I was also concerned that Mr. Colucci, acting as Defendant NSM's managing agent, still resisted court-ordered discovery based on his apparent belief that he should not be responsible for the "now-dissolved" organization's discovery obligations. *See id.* at \*4 ("[I]f a dissolved Michigan 'corporation may still be a party in a civil lawsuit, which [Defendant NSM] has not disputed here, then it has a duty . . . to respond to discovery that is properly served on it.' What Mr. Colucci and NSM 'cannot do, free of consequences, is tell Plaintiffs that they are just

9

out of luck.'" (quoting *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2013 WL 608742, at *6 (D. Minn. Feb. 19, 2013)). Thus, Mr. Colucci's failures to act promptly and in good faith left "the Court no choice but to impose yet another special discovery procedure that [would] move this case forward to trial." *Id.* at *5.

First, on or before June 29, 2020, Mr. Colucci needed to "complete and return to the Vendor and Plaintiffs' counsel a Certification form" that:

    a. identified all Social Media Accounts and Electronic Devices within Mr. Colucci's possession that may contain potentially relevant materials;

    b. listed the complete and accurate last known credentials that Mr. Colucci used to access each Social Media Account (including but not limited to the credentials for the nsm88.org email account and phone numbers listed in Appendix A to Plaintiffs' second motion to compel, ECF No. 708-14, at 2);

    c. for any Social Media Account for which Mr. Colucci could not remember or otherwise access such credentials, contained a statement describing all the steps Mr. Colucci took to recover the information and stating why he was not successful; and

    d. was signed by Mr. Colucci under penalty of perjury certifying that the information contained therein was true, correct, and complete to the best of his knowledge after he made a reasonable effort to search for and produce all requested information.

*See id.* at *5. Second, Mr. Colucci needed to send all Electronic Devices that he identified on the Certification to the Vendor on or before July 1, 2020. *Id.* I also reiterated that Mr. Colucci was a "managing agent" of Defendant NSM, *id.* at *4, and, as such, his failure to obey this Order may result in sanctions under Rule 37(b)(2) and/or Mr. Colucci being required "to show cause why he should not be held in contempt of court," *id.* at *6. Separately, the Order required Mr. ReBrook, on or before July 3, 2020, to give the Vendor and Plaintiffs' counsel

a complete list of all potentially relevant custodians (including but not limited to the individuals known to be currently or formerly associated with Defendant NSM who are listed in Appendix B [to Plaintiffs' second motion to compel], ECF No. 708-14, at 3) as well as the last known credentials to access any social media accounts that may contain responsive materials from all such individuals, including but not limited to the credentials for the accounts listed in Appendix C, ECF No. 708-14, at 4–5.

*Id.*[7] The Order gave the Vendor until July 10, 2020, to grant Plaintiffs' counsel direct access to "any and all ESI collected from Defendant NSM's social media accounts and devices that contain[ed] the agreed-upon search terms within the applicable date range." *Id.* These search parameters mirrored Plaintiffs' original discovery requests from January 2018 and defined the "documents or information [that] must be produced in accordance with Rule 26(b)(1) and the Court's prior discovery orders." Mem. Op. & Order of May 27, 2020, at 4 (granting Plaintiffs' motion to compel ESI from Schoep), ECF No. 741; *see Sines V*, 2020 WL 3428988, at *4. The July 10, 2020 deadline gave the Vendor at least seven days to access, image, and upload all relevant ESI from the accounts and electronic devices identified on Mr. Colucci's certification form (due June 29) and Mr. ReBrook's supplemental list (due July 3). *See Sines V*, 2020 WL 3428988, at *5–6.

**

The Vendor received Mr. Colucci's signed certification form on Tuesday, July 7, 2020. *See* Def. NSM's Br. in Opp'n Ex. 1, Email from K. Kim to A. Dietz (Aug. 3, 2020 9:08 AM) ("We were provided with NSM's certificate from Mr. Colucci on July 7, 2020"), ECF No. 899-1, at 9; *id.* Ex. 2, Certification (signed June 29, 2020), ECF No. 899-2, at 2–9. It listed nearly 50

---

[7] Appendix B listed twelve individuals including Ms. Dietz, Mr. Scholar, Harry Hughes, and Brian Culpepper. ECF No. 708-14, at 3. Ms. Dietz and Mr. Scholar are named as Directors on Defendant NSM's statement of dissolution. Pls.' Second Mot. to Compel Disc. from Def. NSM Ex. 18. Plaintiffs have repeatedly identified Mr. Hughes and Mr. Culpepper as individuals who are likely to have responsive NSM-related materials within their possession or control. *See, e.g.*, Pls.' Second Mot. to Compel Disc. from Def. NSM 13–14.

social media accounts, including more than two dozen "active" gmail.com accounts belonging to local NSM chapters and three email addresses tied to NSM's website: chiefofstaff@nsm88.org; commander@nsm88.org; and commanderburt@nsm88.org. Certification, ECF No. 899-2, at 2–4. Mr. Colucci explained that he did not have credentials for commander@nsm88.org because "the account was deleted at the same time that Jeff Schoep signed the NSM Detroit organization over to James Hart Stern." *Id.* at 7 ("I would have never had access to the emails in the account, only option was to delete it at the time."). He provided credentials for the chapters' gmail.com accounts and two "active" nsm88.org email accounts that he had used to communicate. *Id.* at 2; *see Sines V*, 2020 WL 3428988, at *4 (June 23, 2020) (noting that Mr. Colucci listed chiefofstaff@nsm88.org as his email address on business cards printed in December 2019); Pls.' Mot. Ex. 1, Email from Y. Barkai to E. ReBrook (July 30, 2020, 9:37 AM) (noting that Mr. Colucci emailed Plaintiffs' counsel from commanderburt@nsm88.org on July 1, 2020), ECF No. 894-1, at 3.

Very early on Friday, July 10, Ms. Dietz emailed the Vendor to ask when they would finish collecting data from Mr. Colucci's accounts. Def. NSM's Br. in Opp'n Ex. 1, Email from A. Dietz to K. Kim (July 10, 2020, 3:14 AM) (noting that Mr. Colucci "inquired about when [the Vendor] would be done collecting ESI from the accounts/devices"), ECF No. 899-1, at 20–21. Shortly before 9:00 a.m., the Vendor's representative responded that they would "have a better idea on timing of completion of the collections early next week" and would send an update at that time. Email from K. Kim to A. Dietz (July 10, 2020, 8:57 AM), ECF No. 899-1, at 19–20. The following Wednesday, the representative sent Ms. Dietz a chart showing the "status of all the devices and accounts listed for NSM as provided in Mr. Colucci's certificate." Email from K. Kim to A. Dietz (July 15, 2020, 9:17 AM), ECF No. 899-1, at 17. The Vendor could not access

"most" of the accounts—including chiefofstaff@nsm88.org and commanderburt@nsm88.org—because Mr. Colucci listed "incorrect" passwords or did not provide credentials at all. *Id.*; *see generally id.* Ex. 5, Email from K. Kim Re: Project Status Report (Aug. 20, 2020 2:29 PM), ECF No. 899-5, at 5–6 (noting "[Vendor] Cannot Proceed Further" on NSM accounts for which "Credentials not provided" or "Password incorrect"). Most of the local chapters' gmail.com accounts had working passwords, but they also required the custodian to grant access using two-factor authentication. *See* Email from K. Kim to A. Dietz (July 15, 2020, 9:17 AM). The Vendor still needed to try signing in to a "handful" of accounts using the credentials Mr. Colucci listed. *Id.* Two days later, Ms. Dietz responded that Mr. Colucci provided "the only passwords" he had for the accounts where "the password was 'incorrect'" and that he could not help the Vendor bypass two-factor authentication because he did not know who "owned" those email accounts. Def. NSM's Br. in Opp'n Ex. 1, Email from A. Dietz to K. Kim (July 17, 2020, 4:07 AM), ECF No. 899-1, at 16. *But see* Email from K. Kim Re: Project Status Report (Aug. 20, 2020, 2:29 PM) (noting "Collection in Progress; Download initiated during 2FA call with Defendant" for twenty-four chapter gmail.com accounts listed on NSM's certification form); Def. NSM's Br. in Opp'n Ex. 7, Email from K. Kim Re: Project Status Report (Oct. 13, 2020, 7:06 PM) (noting "Collection Complete" and "Documents Produced" for seventeen of the twenty-four gmail.com accounts), ECF No. 899-7, at 5–6; Dec. 2019 Colucci Dep. Tr. 35–36 (testifying that he gained access to "about a dozen or two" local chapter gmail.com accounts when he "became chief of staff" of NSM and that those accounts contained "thousands of emails . . . that had not been answered"). Mr. Colucci did not describe any "steps [he] took to recover" the correct passwords or explain "why he was not successful[.]" *Sines V*, 2020 WL 3428988, at *5 (June 23, 2020).

Mr. Colucci later told Ms. Dietz that "all the passwords for" certain accounts, including the two nsm88.org email addresses for which Mr. Colucci provided non-working credentials, "were changed on July 11, 2020 with the understanding that [the Vendor] had already collected whatever was needed" by the Court's July 10, 2020 deadline. *See* Pls.' Mot. Ex. 3, Email from A. Dietz to E. ReBrook (Aug. 5, 2020, 5:33 PM), ECF No. 894-3, at 4. On August 3, Ms. Dietz emailed the Vendor to confirm "collection on those [accounts] was started before" July 10. Def. NSM's Br. in Opp'n Ex. 1, Email from A. Dietz to K. Kim (Aug. 3, 2020, 2:47 PM), ECF No. 899-1, at 8. The Vendor's representative responded that they tried to access the accounts "on or around 7/10/2020, albeit without success." Email from K. Kim to A. Dietz (Aug. 4, 2020, 12:12 PM); *accord* Email from A. Dietz to E. ReBrook (Aug. 5, 2020, 5:33 PM) ("[A]ccording to [the Vendor], collection for those accounts was attempted on July 10, 2020 with no success."). Mr. Colucci did not send the new passwords to the Vendor after he changed them. *See* Email from K. Kim Re: Project Status Report (Oct. 13, 2020, 7:06 PM) (noting Vendor "Cannot Proceed Further" because working "Credentials [were] not provided" for chiefofstaff@nsm88.org and "Password [was] incorrect" for commanderburt@nsm88.org).

Mr. Colucci sat for a second Rule 30(b)(6) deposition on August 11, 2020. *See* Pls.' Mot. Ex. E, B. Colucci Dep. Tr. 1, 88–89, 415 ("Aug. 2020 Colucci Dep. Tr."), ECF No. 894-5. He testified that he deleted the two "active" nsm88.org email accounts on or after July 11, 2020, because he believed the Vendor "had a legal responsibility per the [June 23, 2020] court order to give that information to the plaintiffs" before July 10. *Id.* at 88 Thus, in Mr. Colucci's view, "[t]here was no reason for those accounts to exist anymore because the plaintiff[s] should have had that information, whatever nonresponsive material would have been in those accounts, in their possession." *Id.* Mr. Colucci chose to delete the email accounts. *Id.* ("Q. And who made the

decision to delete those? A. I did."). He did not save the contents of those email accounts before deleting them. *Id.* at 88–89 ("Q. Did you do anything to save the contents of the nsm88.org email addresses before you deleted them? A. Absolutely not."). Mr. Colucci also blamed the Vendor for "dropp[ing] the ball" by not imaging the accounts before the Court's deadline. *Id.* ("So I guess apparently [the Vendor] dropped the ball on that."). When Plaintiffs' counsel asked if "'dropped the ball'" meant that the Vendor was "not able to log in with the password[s] that [he] provided to them," Mr. Colucci responded that counsel was correct. *Id.* "That's my understanding of it, all these weeks later, yes," he said. *Id.*

Plaintiffs' counsel repeatedly asked Mr. ReBrook to address these issues beginning in late July 2020. *See* Pls.' Mot. 11–12; *id.* Ex. A, Email from Y. Barkai to E. ReBrook (July 30, 2020, 9:37 AM), ECF No. 894-1, at 2–4; *id.* Ex. B, Email from Y. Barkai to E. ReBrook (Aug. 7, 2020, 3:34 PM) ("Mr. ReBrook: You have not replied to my [July 30] email below concerning the various discovery issues with respect to Mr. Colucci and the NSM."), ECF No. 894-2, at 2–4; *id.* Ex. D, Email from Y. Barkai to E. ReBrook (Aug. 10, 2020, 9:05 AM) ("You have not provided with any . . . list of custodians and credentials. Please advise us of the status of your investigation into NSM's custodians and your preparation of the list that was ordered by the Court."), ECF No. 894-4, at 2; *id.* Ex. F, Email from Y. Barkai to E. ReBrook (Aug. 17, 2020, 5:32 PM) ("Mr. ReBrook: Could you please provide us with an update on the discovery issues below concerning the NSM and Mr. Colucci?"), ECF No. 894-6, at 2; *id.* Ex. H, Letter from J. Phillips to E. ReBrook (Sept. 1, 2020), ECF No. 894-8, at 1–6. On July 30, Mr. ReBrook forwarded Plaintiffs' first email, which set out a detailed list of problems with Mr. Colucci's ESI production, to Ms. Dietz for her review. *See id.* Ex. C, Email from E. ReBrook to A. Dietz (July 30, 2020 10:22 PM) ("Acacia: See below. Best regards"), ECF No. 894-3, at 4. On August 5,

15

Ms. Dietz responded to Mr. ReBrook's email, noting that she had "been doing all that [she] can to find the answers to [Plaintiffs'] inquiries and concerns" and was still talking to Mr. Colucci and the Vendor's representative about those issues. Email from A. Dietz to E. ReBrook (Aug. 5, 2020, 5:33 PM). Mr. ReBrook forwarded that email, without comment, to Plaintiffs' counsel on August 10, 2020. *Id.* Ex. C, Email from E. ReBrook to Y. Barkai (Aug. 10, 2020, 12:50 AM) ("Mr. Barkai: See below. Best regards"), ECF No. 894-3, at 2. He did not respond to their many requests for updates or additional information. Pl.'s Mot. 12–13. Plaintiffs filed this motion for sanctions On October 15, 2020.

A week later, Ms. Dietz emailed Mr. Colucci to ask if he had "any updated information regarding any additional custodians for NSM email or social media" accounts. Def. NSM's Br. in Opp'n Ex. 4, Email from A. Dietz to B. Colucci (Oct. 21, 2020, 12:03 AM), ECF No. 899-4, at 4–5, ECF No. 899-4, at 2. She acknowledged that counsel had "asked for this before with no response," but noted that Defendant NSM needed "an answer . . . to bring before the court on this matter." Email from A. Dietz to B. Colucci (Oct. 21, 2020, 12:03 AM); *see, e.g.*, *id.* Ex. 4, Email from E. ReBrook to B. Colucci (May 28, 2020, 5:08 PM) ("I must urge you to provide the . . . [t]he names, titles, addresses, and phone numbers of all of NSM's officers. . . . Please discuss with Ms. Dietz and come up with a plan to get all this to the Vendor by next week."), ECF No. 899-4, at 2. The next day, Mr. Colucci told Ms. Dietz:

> I have questioned all of the current members I could reach. The ones I did question regarding Charlottesville stated they didn't even know what the NSM or Charlottesville was at that time. As for the very few members that continued to be active after the NSM Florida was incorporated, they . . . . state that they have never been to Charlottesville in their lives and have no responsive documents pertaining to Unite the Right.

*Id.* Ex. 4, Email from B. Colucci to A. Dietz (Oct. 22, 2020, 1:41 AM), ECF No. 899-4, at 3. He did not identify any of those individuals or describe the substance of their conversations. *See id.*

16

Nevertheless, Mr. Colucci reiterated his belief that it was "impossible for [him] to have an [*sic*] responsive documents or information" because, like the other "current" NSM members that Mr. Colucci supposedly questioned, he had "never been to Charlottesville in [his] life either, nor was [he] a member of the NSM at that time." *Id.* He also told Ms. Dietz that if Plaintiffs argued that such information "was forwarded to [him] after the fact," then he "would gladly go on the record and state that is a lie." *Id. But see* Aug. 2020 Colucci Dep. Tr. 96–101 (testifying that "NSM sensitive material" referred to paper and electronic records containing "membership information" that Jeff Schoep "would have . . . passed along" to Mr. Colucci when he took over Defendant NSM, and that he destroyed or deleted all such material in mid-June 2019).

## IV. Discussion

Plaintiffs ask the Court to find that NSM disobeyed the June 23, 2020 Order directing NSM's agents to produce relevant documents and information within their control, *see* Fed. R. Civ. P. 37(b)(2), and to instruct the jury that it "may draw adverse inferences from th[is] fact," including that NSM's agents "chose to withhold such documents because [they were] aware that such documents contained evidence that NSM conspired to plan racially-motivated violence at Unite the Right" in August 2017.[8] Pls.' Mot. 6. NSM timely filed a brief in opposition stating that it "has turned over all possibly discoverable materials within its control" and "cannot

---

[8] The Fourth Circuit has not clearly defined the movant's burden of proof on a motion for sanctions under Rule 37(b). *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488924, at *11 (E.D. Va. Nov. 30, 2018), *adopted by* 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "However, proving misconduct by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices," *Glynn*, 2010 WL 3294347, at *2, especially when the sanction imposed does not result in dismissal or default judgment against the disobedient party, *see Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504–05 (4th Cir. 1998). Here, the result is the same under either standard because Plaintiffs produced clear and convincing evidence that Defendant NSM's agents intentionally withheld requested materials knowing that they were relevant to an issue in the case. *Sines v. Kessler*, 3:17cv72, 2021 WL 1143291, at *9 (W.D. Va. Mar. 24, 2021) ("*Sines VT*").

produce discovery for items or custodians of which it has no control or plainly do not exist," and, as such, "both Defendant NSM and Defendant Schoep have complied with the discovery order to the full extent of their ability to do so." Def. NSM's Br. in Opp'n 5–6; *see id.* at 7–11, 13, 15. NSM also argues that, even if its agents did violate the June 23 Order, this Court "does not have the authority" to impose an adverse-inference sanction "[b]ecause the evidence in question is, or would have been, electronic information" governed by Rule 37(e)(2). *Id.* at 13; *see generally id.* at 13–15. Defendant's arguments are not persuasive.

The parties produced ample evidence that Mr. Colucci, acting as Defendant NSM's managing agent, *Sines V*, 2020 WL 3428988, at *4, violated my June 23 discovery order because he did not provide complete and accurate credentials for each Social Media Account listed on NSM's certification form, *id.* at *5, including his two "active" nsm88.org email addresses. *See, e.g.*, Email from Y. Barkai to E. ReBrook (July 30, 2020, 9:37 AM); Email from K. Kim Re: Project Status Report (Aug. 20, 2020, 2:29 PM); Email from K. Kim to A. Dietz (Aug. 4, 2020, 12:12 PM); Email from A. Dietz to K. Kim (July 17, 2020, 4:07 AM); Email from K. Kim to A. Dietz (July 15, 2020, 9:17 AM). On the contrary, Mr. Colucci gave the Vendor incorrect passwords for both accounts—one of which he used to email Plaintiffs' counsel just two days later—despite certifying under penalty of perjury that this information was "true, correct, and complete to the best of his knowledge after he made a reasonable effort to search for and produce all requested information." *Sines V*, 2020 WL 3428988, at *5. He quickly deleted those accounts before the Vendor could image them and then blamed the Vendor for its inability to access the accounts that he personally controlled, when questioned under oath about his conduct. Aug. 2020 Colucci Dep. Tr. 88–89; *see also Sines V*, 2020 WL 3428988, at *2 (summarizing Mr. Colucci's testimony that he "had authority to set up email accounts" through nsm88.org and was

responsible for "managing emails and overseeing 'propaganda'" in his role as Defendant NSM's Chief of Staff (citing Dec. 2019 Colucci Dep. Tr. 54, 80–81)).

NSM takes issue with Plaintiffs' suggestion that "Mr. Colucci *purposefully* gave the Vendor 'incorrect passwords'" because he wanted "to conceal any adverse information" stored on those accounts. Def. NSM's Br. in Opp'n 10. Mr. Colucci's intent is not relevant to "the threshold determination under Rule 37(b) that a party" or its managing agent "failed to obey a prior discovery order," *Thompson*, 219 F.R.D. at 102. *See S. States Rack & Fixture,* 318 F.3d at 597; *Sines v. Kessler*, No. 3:17cv72, 2020 WL 3106318, at *6, *8–9 (W.D. Va. June 11, 2020) ("*Sines IV*") (collecting cases). Rather, intent is one factor that courts consider "in determining which sanction(s) to impose" for such a failure. *S. States Rack & Fixture,* 318 F.3d at 597; *see Sampson*, 251 F.R.D. at 179 (noting that the "Fourth Circuit requires only a showing of fault" before the court can impose sanctions under Rule 37, "with the degree of fault impacting the severity of sanctions"). Here, the fact that Mr. Colucci produced incomplete credentials for most of the local chapters' gmail.com accounts and unusable passwords for two "active" organizational email accounts is enough to show that he "failed to obey," Fed. R. Civ. P. 37(b)(2), the Court's orders directing him to take specific steps that were designed to give Plaintiffs' counsel access to any and all relevant ESI stored on those accounts, *Sines V*, 2020 WL 3428988, at *4–5 (June 23, 2020). *See JTH Tax, Inc. v. H&R Block E. Tax. Servs.*, 359 F.3d 699, 705 (4th Cir. 2004) ("[D]istrict courts are in the best position to interpret their own orders."); *cf. TBC, Inc. v. DEI Sales, Inc.*, Civ. No. CCB-14-3644, 2017 WL 4151261, at *7–8 (D. Md. Sept. 19, 2017) (finding that a party who produced ESI in non-native format failed to obey an order directing it to produce those records in native format, and noting the party "appear[ed] to have

substituted its own judgment for the court's as to whether" its non-complying production was "an appropriate substitute").

NSM's reliance on Rule 37(e)'s spoliation framework also misses the mark. *See* Pls.' Reply 4, 13–14. While Rule 37(e)(2) establishes "a uniform standard for the issuance of adverse inference instructions to remedy the *loss or destruction*" of ESI that should have been preserved for litigation and cannot be reproduced or replaced, it does not "govern[] the *non-production* of evidence," including ESI, in violation of a prior court order. *Kortright Capital Partners v. Investcorp Inv. Advisors Ltd.*, 330 F.R.D. 134, 138 (S.D.N.Y. 2019) (emphasis added); *see, e.g.*, *TBC, Inc.*, 2017 WL 4151261, at *7–8 (imposing sanctions under Rule 37(b)(2) where party produced ESI in a format other than the one specified in discovery order); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 237 (D. Minn. 2019) (imposing sanctions under Rule 37(b) against defendants who "violated the Court's pretrial scheduling orders, all of which directed them to preserve [ESI]," and noting that plaintiffs' request for an adverse-inference instruction "may well be justified" after discovery closed); *Johnson v. Ital. Shoemakers, Inc.*, No. 3:17cv740, 2018 WL 5269849, at *1 (W.D.N.C. Sept. 10, 2018) (recommending sanctions under Rule 37(b)(2) where plaintiffs failed to obey district judge's "Standing Order on Protocol for [ESI] Discovery"), *adopted by* 2018 WL 5266853, at *1–4 (W.D.N.C. Oct. 23, 2018). Moreover, Rule 37(e) does not apply at all when the information that NSM failed to produce was *not* stored electronically, *see Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018), such as the list of potential custodians that Mr. ReBrook was supposed to submit to Plaintiffs' counsel and the Vendor by July 3, 2020, *Sines V*, 2020 WL 3428988, at *5 (June 23, 2020); *see* Email from Y. Barkai to E. ReBrook (Aug. 10, 2020, 9:05 AM) ("Please advise us of the status of your investigation into NSM's custodians and your preparation of the list that was ordered by

the Court."). NSM does not dispute that its attorney never submitted this list. Def. NSM's Br. in Opp'n 6, 8–9, 11, 15; Pls.' Reply Br. 4–5, 8–10. Defendant NSM, acting through its counsel of record Mr. ReBrook and its managing agent Mr. Colucci, failed to comply with my June 23, 2020 Order directing NSM to provide or permit discovery of relevant materials within the organization's control. Thus, this Court "may issue further just orders," Fed. R. Civ. P. 37(b)(2)(A), to sanction NSM's failure "both as a matter of justice in [this] . . . case and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) (Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). *See Sines VI*, 2021 WL 1143291, at *9 (Mar. 24, 2021).

Choosing an appropriate sanction requires me to consider whether NSM's agents acted in bad faith, the kind and degree of prejudice their failure caused Plaintiffs, and whether alternative sanctions would provide an effective remedy and deterrent. *S. States Rack & Fixture*, 318 F.3d at 597. Additionally, because Plaintiffs seek an adverse inference, they must show that NSM's agents knew the materials or information described in my June 23 Order "were relevant to some issue in the case and intentionally failed to produce them." *Sines VI*, 2021 WL 1143291, at *9; *see Hodge*, 360 F.3d at 450 (explaining that a court may impose "an adverse inference against a party whose intentional conduct causes not just the destruction of evidence, . . . but also against one who fails to preserve or produce evidence" relevant to the movant's case); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995) (noting that a party's decision to withhold documents "that naturally would have elucidated a fact at issue" may justify an adverse inference). "[S]uch an inference cannot be drawn merely from [a] negligent' failure to produce discovery." *Sines VI*, 2021 WL 1143291, at *9 (quoting *Hodge*, 360 F.3d at 450).

Mr. ReBrook and Mr. Colucci knew the information and materials described in my June 23 Order were relevant to the remaining claims in this case and that the Court had repeatedly held Plaintiffs were entitled to that information under Rule 26(b)(1). *Sines V*, 2020 WL 3428988, at *5 (June 23, 2020). NSM never produced the list of potentially relevant custodians (including Ms. Dietz, Mr. Scholar, Mr. Hughes, Mr. Culpepper, and others) or all last known credentials to access social media accounts that may contain responsive materials from all such individuals. *Id.* Mr. Colucci produced some of the required information, but he did not provide "complete and accurate" credentials for his two "active" nsm88.org email addresses, among other social media accounts. *Id.* Thus, the only remaining questions are whether NSM's agents intentionally (or in bad faith) failed to produce this information and, if so, whether a permissive adverse inference is an appropriate sanction under Rule 37(b)(2).

"In the Fourth Circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Brooks Sports*, 2018 WL 7488924, at *16 (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)). As an attorney, Mr. ReBrook clearly should have understood that NSM could not refuse a court's order to produce a list of potential custodians merely because, in counsel's view, that information "does not exist," Def. NSM's Br. in Opp'n 8. If Mr. ReBrook thought that his client could not comply with the June 23 Order, then he should have asked the Court to reconsider. *See* Order of June 12, 2020 (denying Schoep's motion to reconsider order granting Plaintiffs' motion to compel), ECF No. 776; Fed. R. Civ. P. 54(b). NSM did not give the Court an opportunity to consider its objections to producing the list of custodians, *see Sines V*, 2020 WL 3428988, at *1 (brief in opposition untimely filed), and its counsel did not ask the Court to reconsider that decision. Additionally, during his deposition, Mr. Colucci was unable to identify "all of NSM's

officers," Email from E. ReBrook to B. Colucci (May 28, 2020, 5:08 PM), or "custodians for NSM email or social media" accounts, Email from A. Dietz to B. Colucci (Oct. 21, 2020, 12:03 AM). *See* Def. NSM's Br. in Opp'n 8 ("Counsel for Defendant NSM has repeatedly inquired about any other possibly responsive custodians or any other social media, email or website accounts, albeit much to no avail." (citing *id.* Ex. 4, Emails to B. Colucci, ECF No. 899-4)). NSM also ignored Plaintiffs' repeated requests for missing information and maintained, without adequate support, that "Defendant NSM and its counsel of record ha[ve] submitted all devices, accounts[,] and devices within their control to both opposing counsel and the Vendor" in accordance with the Court's June 23 Order. *Id.*

Mr. Colucci, while not an attorney, clearly should have understood his duty to conduct himself honestly and cooperate fully with the discovery process. *Sines V*, 2020 WL 3428988, at *1, *4–6. Mr. Colucci gave the Vendor incorrect passwords for many accounts, including the two active nsm88.org email accounts, *see* Def. NSM's Br. in Opp'n 10, it was not his prerogative to change those accounts' credentials and then permanently delete their contents simply because, in his view, the Vendor should have imaged the contents by the Court's stated deadline, *see* Aug. 2020 Colucci Dep. Tr. 88–89. *Cf. TBC*, 2017 WL 4151261, at *7–8 (imposing discovery sanctions where party "appear[ed] to have substituted its own judgment for the court's as to whether" its noncomplying production was "an appropriate substitute"). Providing account credentials, even if they were correct, to the Vendor would not have extinguished Mr. Colucci and NSM's duty to preserve discoverable materials. Moreover, NSM's own exhibits show Mr. Colucci asked when the Vendor "would be done collecting ESI from the accounts," Email from A. Dietz to K. Kim (July 10, 2020, 3:14 AM), and that NSM knew the Vendor would not have completed the collection by July 10, *see* Email from K. Kim to A. Dietz (July 10, 2020, 8:57).

23

Nonetheless, Mr. Colucci almost immediately changed the accounts' passwords, and he did not inform the Vendor or Plaintiff's counsel before permanently deleting their contents. *See* Aug. 2020 Colucci Dep. Tr. 88–89. Mr. Colucci's comments during his August 2020 deposition that those accounts contained only "nonresponsive material," plus his continued insistence that it is "impossible" for him to have responsive information because he was not a member of Defendant NSM in August 2017, also raise concerns that Mr. Colucci does not respect this Court's repeated rulings to the contrary. *Cf. Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1298 (D.N.M. 2016) ("[I]t is . . . not up to Defendants to decide what evidence is or is not relevant to Plaintiffs' case.").

"'Ordinary defendants must participate in the ordinary process of litigation,' *Mayfield v. Butler Snow LLP*, 3:17cv514, 2017 WL 5616017, at *3 (S.D. Miss. Nov. 21, 2017), even if they do not want to." *Sines VI*, 2021 WL 1143291, at *9. "They cannot pick which discovery requests they respond to, refuse to acknowledge opposing counsel's efforts to obtain the discovery to which their client is entitled, or ignore court orders directing them to provide or permit discovery of the same material within [their] control." *Id.* (cleaned up). "On this record, [I] cannot interpret [NSM's] continued disregard" for this Court's orders "as anything other than bad faith." *Id.* (quoting *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 303 (4th Cir. 2011)) (collecting cases); *see, e.g.*, *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1208924, at *9 (W.D. Va. Mar. 30, 2021) ("*Sines VII*") (finding non-party Rule 30(b)(6) designee's "evasive deposition testimony and halfhearted response to Plaintiffs' subpoena" demonstrated bad-faith "resistance" and "indifference" to court orders and organizational party's discovery obligations); *cf. In re Derivium Capital*, 372 B.R. 777, 784–86 (Bankr. D.S.C. 2007) (finding that plaintiff acted in bad faith where, despite being given "a clear and fair warning that he must fulfill" discovery

24

obligations or face "drastic" Rule 37 sanctions, plaintiff failed to respond to court-ordered discovery and "did not offer substantial excuses" for his noncompliance).

Defendant NSM's "repeated and ongoing discovery misconduct" throughout this litigation, including its agents' failures to obey the June 23 Order, "resulted in significant procedural . . . prejudice," *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014), to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner. Plaintiffs "had to deal with unacceptable delays, obfuscations, and disregard," *Sines II*, 2019 WL 3767475, at *15 (Aug. 9, 2019), and "their attorneys have expended time and resources 'well beyond that which [are] expected of a party to secure' discovery to which it is clearly entitled,'" *Sines VI*, 2021 WL 1143291, at *10 (quoting ECF No. 877, at 7). NSM's failure to produce materials that its agents have admitted under oath contain potentially relevant information, and which this Court repeatedly said are discoverable under Rule 26(b), has also harmed Plaintiffs' substantive ability to prove their conspiracy claim against the entity. *Sines VII*, 2021 WL 1208924, at *9 ("Discovery was especially critical in this case because it is inherently difficult to prove a conspiracy."). "Even in criminal prosecutions, 'a conspiracy is usually proven by circumstantial evidence' such as 'a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *Id.* (quoting *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (cleaned up)). Thus, Plaintiffs reasonably sought from NSM and its custodians "myriad communications, documents, and ESI" that could "help them prove that 'each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events.'" *Sines II*, 2019 WL 3767475, at *15 (quoting *Sines I*, 324 F. Supp. 3d at 784); *see* Pls.' Mot. 7–11. NSM's failure to produce all such

materials within its possession or control, and to identify other individuals who might have responsive information, "potentially leaves an evidentiary gap justifying an 'appropriately tailored sanction' against" the organization. *See Sines VII*, 2021 WL 1208924, at \*9 (quoting *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017)).

A permissive adverse-inference instruction helps "level[] the evidentiary playing field" at trial by allowing the jury to presume missing evidence was unfavorable to a party who, knowing it was relevant to some issue in the case, intentionally lost, destroyed, or otherwise failed to produce it. *Vodusek*, 71 F.3d at 156. NSM's decision, through its agents, to withhold materials that "naturally would have elucidated a fact at issue permits an inference" that the agents knew giving this information to Plaintiffs "would have exposed facts unfavorable" to the organization or its case. *Vodusek*, 71 F.3d at 156; *see Sampson*, 251 F.R.D. at 179 ("The reason relevance [of missing evidence] is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." (citing *Vodusek*, 71 F.3d at 156)); *Sines VII*, 2021 WL 1208924, at \*9.

Finally, sanctions less severe than a permissive adverse-inference instruction against Defendant NSM would not be effective in this situation. A multi-week jury trial in this case is set to begin, after numerous discovery-related delays, in October 2021. Defendant NSM has made clear that it will not fulfill its discovery obligations even under threat of Rule 37 sanctions, including contempt of court. A permissive adverse-inference instruction also will allow NSM to defend itself at trial if it wants to and will not have an impermissible "spillover" effect on any Defendant who did not disobey a discovery order. *Sines VI*, 2021 WL 1143291, at \*11 (Mar. 24, 2021).

26

V. Conclusion

Plaintiffs' Motion for Sanctions Against Defendant National Socialist Movement, ECF No. 894, is hereby **GRANTED**. Plaintiffs' request for a permissive adverse-inference instruction against Defendant National Socialist Movement is **GRANTED** subject to the presiding District Judge's final approval. Plaintiffs should submit their proposed language to the presiding District Judge in their proposed jury instructions.

**IT IS SO ORDERED.**

ENTER: June 23, 2021

Joel C. Hoppe
U.S. Magistrate Judge

27