**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

|  |  |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>                              Plaintiffs,<br><br>v.<br><br>  JASON KESSLER, et al.,<br><br>                              Defendants. | **Civil Action No. 3:17-cv-00072-NKM** |

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST**
**DEFENDANT JAMES ALEX FIELDS, JR.**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.    Fields Attacked Plaintiffs at the Unite the Right Rally ........................................ 2

    B.    Fields Has Repeatedly Disregarded the Court's Discovery Orders and Refused to Provide Routine Discovery ................................................................ 2

        1.    Fields Refuses to Provide Substantial Written Discovery. ...................... 3

        2.    Fields Destroys Evidence ........................................................................ 4

        3.    The Court Orders Fields to Provide Discovery ....................................... 4

        4.    Fields Refuses to Comply with the Court's June 2020 Order. ................ 5

        5.    Fields Refuses to Answer More Written Discovery. ................................ 6

        6.    Fields Refuses to Testify in a Deposition. ............................................... 6

ARGUMENT ....................................................................................................................... 8

I.    THE COURT SHOULD SANCTION FIELDS FOR REFUSING TO PROVIDE DISCOVERY AND VIOLATING DISCOVERY ORDERS. ........................................... 8

    A.    Legal Standard. ..................................................................................................... 8

    B.    Fields Violated the Court's June 2020 Order Directing Him to Provide Written Discovery ................................................................................................ 10

    C.    Fields Violated the Court's August 2020 Order and Rule 37(d) by Refusing to Testify in a Deposition. ................................................................... 10

II.    DEEMING FACTS ESTABLISHED, PRECLUDING FIELDS FROM TESTIFYING AT TRIAL, AND ISSUING AN ADVERSE INFERENCE JURY INSTRUCTION ARE THE PROPER SANCTIONS FOR FIELDS'S MISCONDUCT. ................................................................................................... 11

    A.    Legal Standard. ................................................................................................... 11

    B.    Fields Acted in Bad Faith. .................................................................................. 12

    C.    Fields's Misconduct Prejudices Plaintiffs ........................................................... 13

    D.    The Court Should Deter Parties from Refusing to Comply with Court Orders and Refusing to Provide Discovery. ...................................................... 17

    E.    Lesser Sanctions Would Be Ineffective. ............................................................. 18

III.    THE COURT SHOULD ORDER AN ADVERSE INFERENCE AND ORDER THAT CERTAIN FACTS BE TAKEN AS ESTABLISHED AS A REMEDY FOR FIELDS INVOKING THE FIFTH AMENDMENT. ............................................. 20

CONCLUSION .................................................................................................................. 24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*,
    155 F.3d 500 (4th Cir. 1998) ...............................................................11, 12, 13, 17

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976)...................................................................................................21

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*,
    269 F.3d 305 (4th Cir. 2001) (en banc) ...................................................................11

*Butler v. DirectSat USA, LLC*,
    2013 WL 6629240 (D. Md. Dec. 16, 2013)...............................................................16

*Deakins v. Pack*,
    957 F. Supp. 2d 703 (S.D. W.Va. 2013)..............................................................20, 21

*Poole ex rel. Elliott v. Textron, Inc.*,
    192 F.R.D. 494 (D. Md. 2000)..................................................................................10

*ePlus Tech., Inc. v. Aboud*,
    313 F.3d 166 (4th Cir. 2002) ...................................................................................21

*First Mariner Bank v. Resolution Law Grp.*,
    2013 WL 5797381 (D. Md. Oct. 24, 2013) .......................................................11, 12, 13, 14

*Fitzwater v. Nichols*,
    2007 WL 411956 (W.D. Ark. Feb. 5, 2007)...............................................................9

*Gilmore v. Jones*,
    No. 3:18-cv-00017 (W.D. Va.) ...................................................................................7

*Hodge v. Wal-Mart Stores, Inc.*,
    360 F.3d 446 (4th Cir. 2004) ...................................................................................10

*Johnson v. United Parcel Servs., Inc.*,
    127 F.R.D. 464 (D. Md. 1989)..................................................................................21

*LaFleur v. Dollar Tree Stores, Inc.*,
    2013 WL 12181782 (E.D. Va. Oct. 7, 2013)..........................................................8, 9

*Montanile v. Botticelli*,
    2009 WL 2378684 (E.D. Va. Jul. 28, 2009).............................................................18

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*,
    872 F.2d 88 (4th Cir. 1989) .....................................................................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Naseer v. Racine Cnty.*,
   2011 WL 5180941 (E.D. Wis. Oct. 28, 2011) .......................................................................9

*Pritchard v. Auto. Ins. Co. of Hartford Conn.*,
   2017 WL 474101 (W.D.N.C. Feb. 2, 2017) .......................................................................19

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
   734 F.3d 366 (4th Cir. 2013) ............................................................................................10

*Pruitt v. Bank of Am., N.A.*,
   2016 WL 7033972 (D. Md. Dec. 2, 2016) .......................................................................16

*Ramos v. Town of E. Hartford*,
   2016 WL 7340282 (D. Conn. Dec. 19, 2016) ..................................................................22

*Steel v. ARI Mut. Ins. Co.*,
   2015 WL 4429258 (E.D. La. Jul. 20, 2015) ....................................................................18

*Stewart v. Wachowski*,
   2005 WL 618374 (C.D. Cal. Jun. 14, 2005) ...................................................................18

*United States ex rel. DRC, Inc. v. Custer Battles, LLC*,
   415 F. Supp. 2d 628 (E.D. Va. 2006) ...............................................................20, 21, 22, 23

*United States v. Barker*,
   2010 WL 2650885 (W.D.N.C. July 1, 2010)................................................... *passim*

*United States v. Fulcher*,
   250 F.3d 244 (4th Cir. 2001) ............................................................................................23

*United States v. Kennedy*,
   372 F.3d 686 (4th Cir. 2004) ............................................................................................22

*United States v. Kizeart*,
   102 F.3d 320 (7th Cir.1996) .............................................................................................24

*United States v. Sasscer*,
   2000 WL 1683465 (D. Md. Nov. 8, 2000) ......................................................................21

*Varner v. Roane*,
   2018 WL 3244108 (W.D. Va. July 3, 2018)................................................................20, 21

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   269 F.R.D. 497 (D. Md. 2010)....................................................................................8, 10, 11

*Zajac v. Red Wing, LLC*,
   2018 WL 9989661 (D.S.C. July 13, 2018) ......................................................................21

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

**Statutes**

18 U.S.C.
§ 2702(b)(3) ............................................................................................5
§ 2702(c)(2) ............................................................................................5

42 U.S.C.
§ 1985 ....................................................................................................2
§ 1986 ....................................................................................................2

Stored Communications Act ................................................................ *passim*

**Other Authorities**

U.S. Const. Amend. V ........................................................................ *passim*

Fed. R. Civ. P.
30(b)(3)(A) .............................................................................................7
34 ...........................................................................................................3
36(a)(6) .................................................................................................23
37 ....................................................................................8, 12, 15, 20
37(b) .......................................................................8, 9, 10, 11
37(b)(2)(A) ........................................................................................8, 9
37(b)(2)(A)(vi) ....................................................................................19
37(b)-(e) ................................................................................................8
37(d) ....................................................................................9, 10, 11
37(d)(1)(A)(i) ........................................................................................9

## INTRODUCTION

Defendant James Alex Fields, Jr. has persistently failed and refused to provide routine discovery in this case, disobeyed Court orders, destroyed documents, and, most recently, refused to testify in a deposition after seeking multiple extensions.  While his counsel has been professional and cooperative with Plaintiffs' counsel in attempting to obtain compliance with discovery obligations and Court orders, neither his counsel nor Plaintiffs' counsel—nor this Court—has been able to secure such compliance.  This has deprived Plaintiffs of basic discovery to which all parties are entitled.  If not remedied, Fields's discovery misconduct will severely prejudice Plaintiffs' ability to prosecute their case.

Plaintiffs are left with no alternative but to seek assistance from this Court.  Plaintiffs propose three remedies.  First, Plaintiffs ask the Court to deem established certain facts listed in Appendix A.  These are facts Plaintiffs would have been able to establish but for Fields's misconduct based on the discovery Fields has refused to answer and the Court orders he has disobeyed, and they are strongly supported by corroborating evidence.  Second, Plaintiffs ask the Court to preclude Fields from testifying at trial because Plaintiffs would suffer prejudice if Fields were allowed to testify at trial when he has refused to give testimony during discovery.  Third, Plaintiffs ask for a jury instruction that (a) Fields intentionally withheld documents and information from Plaintiffs, destroyed documents while under an obligation to preserve them, including correspondence between himself and Vanguard America, and refused to testify in a deposition; and (b) that the jury may draw adverse inferences from these facts, including that Fields chose to withhold such information and documents because he was aware they contained evidence that supported Plaintiffs' claims that he conspired to engage in racially-motivated violence at the Unite the Right event.

Awarding these remedies is necessary and appropriate, as the only way for the Court to level the evidentiary playing field and put the Plaintiffs in the position they would have held had Fields participated properly in discovery.

## BACKGROUND

### A.      Fields Attacked Plaintiffs at the Unite the Right Rally.

On August 11-12, 2017, Fields attended the Unite the Right Rally ("Rally") organized by his co-Defendants.  After marching and chanting racist slogans with some of his co-Defendants, Fields got in his car, found a group of peaceful counter protesters, rammed his car into the crowd, and sped off to evade capture.  He killed one person and injured dozens more, including several Plaintiffs.

On December 11, 2018, Fields was convicted in Virginia state court of murder and 8 counts of malicious wounding as a result of his attack at the Rally.  Fields has appealed that conviction, and the appeal is currently pending.

On March 27, 2019, Fields pled guilty in this Court to 29 hate crimes arising from his car attack.  He did not appeal his federal conviction.

Plaintiffs brought this lawsuit against Fields and his co-Defendants to hold them accountable for conspiring to engage in violence against racial and ethnic minorities and their supporters in violation of the Civil Rights Act of 1871, 42 U.S.C. §§ 1985 and 1986, and related state laws.

### B.      Fields Has Repeatedly Disregarded the Court's Discovery Orders and Refused to Provide Routine Discovery.

Fields's evidentiary violations are flagrant, repeated, uncured, and inexcusable.  He has failed to provide routine discovery and has refused to comply with the Court's orders to do so. Indeed, more than three years into this case, Fields has not produced a single document to

Plaintiffs, refuses to answer many of the interrogatories or requests for admission issued to him long ago, and has refused to testify in a deposition.

### 1.   Fields Refuses to Provide Substantial Written Discovery.

On January 25, 2018, Plaintiffs served Fields with a first set of document requests and interrogatories.  *Exhibit 1*.  Fields's responses and objections were due on February 26, but he did not respond.  *See* ECF No. 759, p. 3.

On March 26, 2018, the Court ordered Fields to answer Plaintiffs' first set of discovery requests.  ECF No. 288, p. 5.

On April 16, 2018, Fields served responses to Plaintiffs' discovery requests, in which he largely objected, did not respond, and otherwise failed to produce responsive information. *Exhibit 2*.  For example, Fields refused to authorize his attorneys to produce documents.  *Cf.* ECF No. 759 ("Any responsive document held by Fields's criminal-defense attorneys would also be within Fields's 'control' for the purposes of Rule 34.") (internal citation omitted).  He also failed to identify all of his social media accounts, including a Discord account and an Instagram account, despite the fact that social media is a highly relevant source of evidence in this case. *Exhibit 2, Nos. 1-2*.

On October 29, 2019, Plaintiffs served a second set of interrogatories on Fields. *Exhibit 3*.

On November 27, 2019, the Court ordered "Fields to fully answer or respond to Plaintiffs' written discovery requests."  ECF No. 759.

On February 3, 2020, and supplemented on February 5, Fields's counsel (not Fields) answered Plaintiffs' second set of interrogatories.  *Exhibits 4, 5*.  The "answers" were unsworn and unsigned by Fields, and Fields refused to answer on Fifth Amendment grounds questions about (a) Fields's post-Rally communications with law enforcement and other government

officials, and (b) acts of violence perpetrated by Fields and other Defendants during the Rally. *Exhibit 4, Nos. 6-7, 10.*

### 2.    Fields Destroys Evidence.

On February 5, 2020, Fields's counsel informed Plaintiffs that, after this case was filed and during his incarceration, Fields received correspondence "that concerned the August 12, 2017, Rally," and correspondence from a co-defendant, Vanguard America. *Exhibit 5.* Fields destroyed those documents. *Id.*

### 3.    The Court Orders Fields to Provide Discovery.

On March 9, 2020, Plaintiffs filed a motion to compel and for sanctions against Fields for, among other things, failing to answer interrogatories, failing to produce documents, failing to obey discovery orders, and destroying evidence. ECF No. 671.

On June 11, 2020, the Court held "Fields failed to properly answer interrogatories" and "failed to produce relevant documents as requested," and that his discovery responses were "deficient in form or substance" and "evasive or incomplete." ECF No. 759, pp. 15-16.

The Court also recognized Fields destroyed evidence and, in doing so, he was at least "negligent, 'perhaps even grossly negligent.'" *Id.*, p. 24 (internal citation omitted). However, because Fields destroyed the evidence, the Court explained that "[a]t this point, all the Court knows about Vanguard America's cards is that Fields received them sometime after August 2017. There's no information about their message or contents." *Id.*, pp. 24-25. Thus, the Court ruled it "cannot *yet* conclude" Fields destroyed the documents to deprive Plaintiffs of evidence, so it declined to issue an adverse inference instruction "at this point." *Id.*, pp. 15, 25 (emphasis added). It denied that portion of the motion without prejudice. *Id.*, p. 26.

Instead, the Court ordered Fields to (a) cure the defects in his discovery responses, including "fully answer[ing] each of Plaintiffs' interrogatories asking about relevant documents

or communications"; and (b) sign consent forms under the Stored Communications Act ("SCA") so Plaintiffs could obtain his social media from third-party social media companies. *Id.*, pp. 17-18.[1]

### 4.   Fields Refuses to Comply with the Court's June 2020 Order.

On September 11, 2020, Fields served his responses to Plaintiffs third set of interrogatories,[2] which were served on him on July 21, 2020. *Exhibit 6*. He continued, however, to refuse to answer interrogatories about his communications on Fifth Amendment grounds, including his communications with law enforcement. *Id., Nos. 2-3, 7.*

On July 6, 2020, Fields advised Plaintiffs that he would not sign an SCA consent as ordered by the Court. As a result—despite Plaintiffs' efforts—they cannot obtain all Fields's social media documents and communications from the social media companies. As this Court is aware, social media use is critical in this case because Defendants used social media, and Discord in particular, as the main form of communication to plan and organize the Rally.

Fields's refusal to produce or provide access to his social media necessitated a host of side litigation. For example, because Fields refused to authorize his criminal defense counsel (John Hill and Denise Lunsford) to produce documents in response to Plaintiffs' document requests, Plaintiffs had to serve Hill and Lunsford with subpoenas. This resulted in substantial motions practice. Hill and Lunsford filed motions to quash, a motion to reconsider (when the Court denied the motions to quash), and a request for cost-shifting—all of which Plaintiffs had to litigate by researching, drafting and filing multiple briefs and arguing at what the Court recognized was a "lengthy hearing." *See, e.g*., ECF Nos. 647-48, 672, 765, 770, 783, 801.

---

[1] Fields's consent under the SCA was necessary for Plaintiffs to obtain his social media communications from the social media companies. *See* 18 U.S.C. §§ 2702(b)(3), (c)(2).

[2] On September 17, 2020, Fields verified his responses to Plaintiffs' first, second and third set of interrogatories before a notary.

Plaintiffs also served the Department of Justice ("DOJ") with a subpoena seeking documents concerning Fields, including his social media—that Plaintiffs could not obtain elsewhere because Fields refused to sign the SCA consent form in violation of the Court's June 2020 order—which again required litigation to resolve. *See, e.g.*, ECF No. 816.

Plaintiffs obtained documents from the DOJ showing that Fields lied about his social media accounts in his partial discovery responses and has more accounts that he refused to disclose. Specifically, Plaintiffs' discovery requests asked Fields to identify all social media accounts he had used or created. *See Exhibit 6, No. 1*. Fields responded that he "had a Discord account" but claimed he could not recall the account name. *Id.* On September 30, 2020, DOJ produced documents that show ███████████████████████████████████████████ ███████████████████████████████████████████ *Exhibit 7, Exhibit 8*. Plaintiffs cannot obtain further information from Discord about those accounts because Fields refused to sign the SCA consent, and Plaintiffs cannot cross-examine Fields about them because he refuses to testify in a deposition. *Infra*, pp. 6-8.

### 5.   Fields Refuses to Answer More Written Discovery.

On July 21, 2020, Plaintiffs served Fields with requests for admission ("RFAs").

On August 19, 2020, Fields responded to certain RFAs, but refused to respond to 42 of them by asserting his Fifth Amendment privilege against self-incrimination. *Exhibit 9*. The RFAs to which Fields refused to respond addressed key issues in this case, including (a) the details about Fields's car attack at the Rally; (b) his motivation and state of mind when doing so; and (c) his history of espousing violence against members of racial, ethnic, and religious minorities. *Id., Nos. 38-71, 74, 77-79, 122, 123, 136, 137*.

### 6.   Fields Refuses to Testify in a Deposition.

On July 24, 2020, Plaintiffs noticed Fields's deposition to take place on August 25, 2020.

*Exhibit 10.*

On August 6, 2020, Plaintiffs filed a motion for leave to proceed with the deposition of Fields, which was required because he was (and is) incarcerated.  *See* ECF No. 820.  On August 10, 2020, the Court issued an order granting Plaintiffs leave to depose Fields.  ECF No. 829.

At the request of Fields's counsel, Plaintiffs postponed the deposition for five months to January 20, 2021.  *Exhibit 11.*  When Fields's counsel again requested postponement, Plaintiffs again accommodated the request to delay the deposition, and Plaintiffs rescheduled it for February 25, 2021.  *Exhibit 12.*

Shortly thereafter, Fields's counsel informed Plaintiffs that Fields refused to give testimony in a deposition.[3]

On February 22, 2021, Fields filed a motion to stay the deposition and appoint a guardian *ad litem*.  ECF No. 926.

On February 23, 2021, Plaintiffs filed an opposition to Fields's motion to stay, wherein Plaintiffs explained that Fields's counsel had advised Plaintiffs that Fields was refusing to testify and that Plaintiffs would seek appropriate sanctions "for this and other discovery failures" at a later date.  ECF No. 927, p. 1.

On March 3, 2021, the Court denied Fields's motion to stay, holding "Fields's stated intention to refuse to testify does not provide proper grounds staying his deposition," and noting Plaintiffs had cancelled arrangements to appear at the deposition because, "[r]ecognizing that Fields will refuse to testify, they acknowledge that deposing him would be futile."  ECF No. 928,

---

[3] Fields's counsel suggested Fields might testify in a deposition but would refuse to be recorded by video.  But Plaintiffs have the right to record the deposition by video.  *See* Fed. R. Civ. P. 30(b)(3)(A) (deposition "testimony may be recorded by audio, audiovisual, or stenographic means").  And regardless, when Fields was deposed in a related case, he refused to be sworn in or answer questions.  *Exhibit 13.*

p. 1.

On April 16, 2020, a party in the related matter of *Gilmore v. Jones*, No. 3:18-cv-00017 (W.D. Va.), pending in this Court, attempted to depose Fields.  Fields "refused to be sworn in for his testimony" and "refused to answer nearly all questions."  *Exhibit 13*.[4]

## ARGUMENT

## I.   THE COURT SHOULD SANCTION FIELDS FOR REFUSING TO PROVIDE DISCOVERY AND VIOLATING DISCOVERY ORDERS.

The Court should sanction Fields for his repeated and knowing failure to comply with the Court's discovery orders.  He has been given numerous opportunities, and there is no reason to believe anything short of sanctions would be effective.

### A.   Legal Standard.

It a fundamental tenet of discovery that "every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged."  ECF No. 936, p. 3 (internal citation omitted).  The Court has reiterated that it "expects that everyone will play by the same rules on as level a field as is reasonably possible," and it warned the Defendants in this case that "[l]awyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won."  *Id.*, p. 1 (internal citation omitted).

Rule 37 addresses sanctions for discovery misconduct.  *See* Fed. R. Civ. P. 37(b)-(e). The purpose of Rule 37 is "to punish deliberate noncompliance with the federal rules of discovery and to deter such conduct in the future."  *LaFleur v. Dollar Tree Stores, Inc.*, 2013 WL 12181782, at *2 (E.D. Va. Oct. 7, 2013) (internal citations omitted).  Relevant here, two independent provisions of Rule 37 authorize the Court to impose sanctions against Fields.

---

[4] Exhibit 13 has been excerpted to include only the communications relevant to this Motion.

Rule 37(b) provides that the Court may order sanctions, including an order establishing certain facts, when "a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 519 (D. Md. 2010) (noting it is "clear" that a district court has "authority pursuant to Rule 37(b)(2)(A) to impose sanctions" for violations of discovery orders). An order granting leave to depose a prisoner constitutes an order to provide or permit discovery. *See, e.g.*, *United States v. Barker*, 2010 WL 2650885, at *2 (W.D.N.C. July 1, 2010) (ordering sanctions "for failing to obey an order to permit discovery" where court issued an order granting plaintiff leave to depose prisoner, but the prisoner refused to participate in his deposition).

Rule 37(d) provides that the Court may also sanction a party if the party "fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i); *see LaFleur*, 2013 WL 12181782, at *3-10 (sanctioning parties under Rule 37(d) for failing to appear for their deposition, unilaterally terminating the deposition, and/or refusing to be deposed); *see also Naseer v. Racine Cnty.*, 2011 WL 5180941, at *1 (E.D. Wis. Oct. 28, 2011) (dismissing case as sanction under Rule 37(d) where party "refused to be sworn in and/or otherwise provide testimony"); *cf. Fitzwater v. Nichols*, 2007 WL 411956, at *4 (W.D. Ark. Feb. 5, 2007) (ordering dismissal sanctions where plaintiffs would not appear for deposition, and noting "it would be unduly burdensome and unjust" to require defendant to make an "apparently futile trip" to take a deposition).

When the Court has issued an order granting leave to depose a prisoner, but the prisoner refuses to be deposed, the Court can issue sanctions under ***both*** Rule 37(b) and Rule 37(d) because the prisoner has both violated a Court order and failed to participate in his deposition. *See, e.g.*, *Barker*, 2010 WL 2650885, at *2 (invoking both Rule 37(b)(2)(A) and Rule

9

37(d)(1)(A)(i) to hold the court had "discretion to sanction Defendant as appropriate" because he was incarcerated, the court issued an order granting leave to depose him, but he refused to participate in the deposition).

The Court also has the inherent power to sanction conduct that offends the legal process, including a party's "fail[ure] to preserve or produce" evidence.  ECF No. 759, p. 11 n.4 (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) and *Poole ex rel. Elliott v. Textron, Inc*., 192 F.R.D. 494, 497-99 (D. Md. 2000)). "[A] court acting under its inherent authority may impose sanctions for any conduct utterly inconsistent with the orderly administration of justice."  *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) (internal quotation marks and citation omitted); *Victor Stanley*, 269 F.R.D. at 533 (holding a court's inherent authority arises "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process") (internal citation omitted).

### B. Fields Violated the Court's June 2020 Order Directing Him to Provide Written Discovery.

It is undisputed that Fields failed to obey the Court's June 2020 order to cure his deficient written discovery responses by "fully answering each of Plaintiffs' interrogatories asking about relevant documents or communications," and providing Plaintiffs with signed SCA consents, which were needed to obtain Fields's complete communications from the social media companies.  *Supra*, pp. 5-6.  The Court should issue sanctions against Fields under Rule 37(b) and its inherent power for failing to obey an order to provide discovery.

### C. Fields Violated the Court's August 2020 Order and Rule 37(d) by Refusing to Testify in a Deposition.

It is also undisputed that Fields refused to testify in a deposition.  While his lawyer was obviously willing to "schedule" the deposition, Fields has clearly and repeatedly refused to

testify, not only in this litigation but in at least one other case.  His refusal triggers sanctions under both Rules 37(b) and 37(d).  Despite the Court ordering that Plaintiffs could proceed with his deposition, Fields made clear that he refused to actually testify, which is (a) a violation of the Court's August 2020 order and thus sanctionable under Rule 37(b); (b) a refusal to testify at his deposition, which is sanctionable under Rule 37(d); and (c) sanctionable under the Court's inherent power.

## II. DEEMING FACTS ESTABLISHED, PRECLUDING FIELDS FROM TESTIFYING AT TRIAL, AND ISSUING AN ADVERSE INFERENCE JURY INSTRUCTION ARE THE PROPER SANCTIONS FOR FIELDS'S MISCONDUCT.

Fields's repeated misconduct and refusal to provide discovery warrants an adverse inference jury instruction, an order that the facts in Appendix A be taken as established and an order precluding Fields from testifying at trial.

### A. Legal Standard.

The Court uses a four-part test to determine what sanctions to impose.  It considers:  "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."  *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (internal citation omitted); *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc) (same).  "The presence or absence of any one of these factors is generally not decisive: '[t]he harshest of sanctions' may be imposed 'when . . . culpability is minimally present, if there is a considerable showing of prejudice, or, alternatively, the prejudice is minimal but the culpability is great.'"  *First Mariner Bank v. Resolution Law Grp.*, 2013 WL 5797381, at *4 (D. Md. Oct. 24, 2013) (quoting *Victor Stanley*, 269 F.R.D. at 533).

11

This Court has already concluded in this case that if Defendants "fail to produce the discovery" after being ordered to do so, an "adverse inference and an order deeming [] proposed facts established—would be available, and certainly could be appropriate."  ECF No. 539, p. 34.

**B.      Fields Acted in Bad Faith.**

Bad faith exists where a defendant has "sidestepped plaintiff's requests, ignored orders of the Court, and delayed proceedings," where he "engaged in delay and half measures in responding to the key discovery inquiry," and "there was no substantive justification for defendants' discovery failures." *First Mariner*, 2013 WL 5797381, at *4, *7-8, *11 (ordering Rule 37 sanctions because "defendants chose to stonewall, obfuscate and finally provided marginally satisfactory answers to the majority of discovery requests") (internal citation omitted).  A party's "continued failure" to provide discovery also supports a conclusion of bad faith.  *Anderson*, 155 F.3d at 504 ("The district court's opinion adequately supports a conclusion that the Foundation acted in bad faith. The Foundation stonewalled on discovery from the inception of the lawsuit.").  And, a "non-complying party has acted in bad faith where he has failed to comply with a court ordered deposition of which he had actual notice and where his failure to comply was 'willful' and not due to his inability to be present." *Barker*, 2010 WL 2650885, at *3.  When a defendant obstructs these basic rights to discovery, it is "defiant of the ordered and essential precepts of discovery and resolution of disputes in our civil justice system." *First Mariner*, 2013 WL 5797381, at *5.

Here, Fields willfully ignored this Court's orders, delayed proceedings, gave incomplete discovery responses, and obfuscated discovery.  There is no excuse for his misconduct:

> 1.  The Court's order directing Fields to sign the SCA consents was explicit and unequivocal. *See* ECF No. 759, p. 18 ("[B]ecause [Fields] has not produced the information at this point in the case, the Court will require him to provide [SCA]

consent forms for any requested social media accounts."). Yet Fields flatly refused to comply with it. *Supra*, pp. 5-6.

2. Fields refused to explain communications he had with others, including law enforcement, about the Rally and the car attack, and he has no basis for asserting a Fifth Amendment privilege as to such communications. *See infra*, Section III.

3. Fields's refusal to testify in a deposition ignores the Court's order directing his deposition can be taken, and the Court already ruled that Fields's objections to being deposed do not constitute a proper basis for staying his deposition. ECF No. 928, p. 1 ("Fields's stated intention to refuse to testify does not provide proper grounds [for] staying his deposition.").

4. Fields had largely ignored Plaintiffs' discovery from the outset, not responding to the first set of discovery until he was ordered to do so (and then giving deficient responses). *Supra*, p. 3.

5. Fields gave interrogatory answers the Court recognized as "deficient in form or substance" and "evasive or incomplete," and that were not signed by Fields, as required, until the Court ordered him to sign them. *Supra*, p. 4.

6. Fields destroyed correspondence relevant to his co-conspirator, Vanguard America, during the pendency of discovery in this case while he had a duty to preserve it. *Supra*, p. 4.

Fields has offered and can offer no rational justification for his delay and obfuscation or for his disregard for this Court's rules and explicit orders. The plain explanation for his conduct is bad faith.

### C. Fields's Misconduct Prejudices Plaintiffs.

Prejudice can be both substantive and procedural. *First Mariner*, 2013 WL 5797381, at *10. Substantive prejudice exists when a party's discovery misconduct inhibits his opponent's ability to gather evidence and present the most compelling case possible. *Id.* "If a party refuses to produce requested evidence despite a court order, its opponent is obviously hindered in its ability to prosecute a claim or present evidence at trial." *Id.* And, when a defendant refuses to testify at a deposition, his "non-compliance has caused prejudice" because it deprives the

plaintiffs of "the tools of discovery" to which they are entitled and means plaintiffs have "limited means" to discover evidence. *Barker*, 2010 WL 2650885, at *3.

Procedural prejudice is no less severe. It includes "the expense, annoyance, and delay of prosecuting [the plaintiff's] case." *Anderson*, 155 F.3d at 505. A party's "[e]vasiveness, delay and obfuscation" in discovery causes prejudice because it "may hinder the opposing party's ability to develop their case." *First Mariner*, 2013 WL 5797381, at *10 (finding prejudice and imposing sanctions where defendant's discovery stonewalling and delays "diverted [plaintiff] from the prosecution of the case, to unnecessary side issues, and obviously 'bought time' for the defendants"). The "less than complete and slow production [of evidence] takes a toll and inflicts a disadvantage on the requesting party." *Id.* (internal citation omitted). "Seasoned practitioners and judges recognize this 'death by a thousand cuts' approach to legitimate discovery requests. It is wearing, counter-productive, wholly unacceptable and sanctionable." *Id.*

Here, Fields's misconduct has caused both substantive and procedural prejudice to Plaintiffs. His purposeful non-compliance and near complete failure to provide discovery hinders Plaintiffs' ability to gather evidence relating to Fields's conduct, motivation, and conspiracy with his co-Defendants, and thus, hinders their ability to put forth the strongest case possible. Indeed, the Court has already recognized that "discovery [is] especially critical in this case because it is inherently difficult to prove a conspiracy." ECF No. 910, p. 35. Fields's refusal to allow discovery hinders Plaintiffs from securing evidence relevant to communications with his co-conspirators, among other things.

This includes the correspondence that Fields destroyed. The Court previously declined to award sanctions for Fields destroying correspondence and cards from Vanguard America (one of Fields's co-conspirators), because the evidence "[a]t [that] point" did not show his spoliation was

intentional and there was no evidence of the content of the cards.  *Supra*, p. 4.  Thus, Plaintiffs were entitled to take Fields's testimony to establish that his spoliation was intentional and that the spoliated evidence was relevant.  Indeed, the Court has previously delayed ordering sanctions against other Defendants until Plaintiffs could depose them about their spoliation and discovery misconduct, and warned Defendants that their refusal would result in "significant evidentiary sanctions" including an adverse inference and that facts would be deemed be established:

> I have warned Kline, Heimbach, and Mr. Hopper in writing that the Court expects them to appear at their depositions . . . . The Court will also have a better sense of Plaintiffs' request for an adverse-inference instruction after counsel has deposed each Defendant and Mr. Hopper . . . .

ECF No. 539, pp. 34-35.  And, when Plaintiffs deposed those Defendants, they obtained evidence that showed the Defendants' spoliation and other discovery misconduct warranted severe sanctions.  *See* ECF No. 910 (ordering certain facts be established against defendant Kline as Rule 37 sanctions); ECF No. 936 (granting adverse inference instruction as Rule 37 sanctions against defendant Vanguard America).  Fields's refusal to testify at a deposition has deprived Plaintiffs of that opportunity.  Because Fields refuses to testify in a deposition, Plaintiffs cannot cross-examine him on the content of the correspondence Fields destroyed, or Fields's intentions in doing so.

Similarly, Plaintiffs cannot cross-examine Fields on his second Discord account.  That information is critical and highly relevant to the facts in dispute.  Discord is the messaging platform Defendants used to plan and coordinate the Rally, and several key pieces of evidence in this case are Discord communications between and among the Defendants—indeed, some pre-Rally Discord messages explicitly discuss the idea of using a car to run down counter-protesters. E.g., ECF No. 557 ¶¶ 235-40.  And Fields failed to disclose in his interrogatory answers that he had at least two Discord accounts.  *Supra*, p. 3.  But because Fields has refused to sign the SCA

consent and refuses to testify at a deposition, Plaintiffs are unable to obtain evidence about his accounts from Discord, how he used them, and with whom he communicated.  In other words, Fields has rendered Plaintiffs unable to gather evidence about Fields's accounts on the same messaging platform Plaintiffs know the other Defendants used to conspire about the Rally.

Fields's refusal to testify at a deposition also deprives Plaintiffs of a critical tool to discover facts about the details and motivations behind his car attack, which was a pivotal event—if not *the* pivotal event—at the Rally.  Depositions are an incredibly useful tool at eliciting evidence and are "important elements of discovery" such that "a [party] would be hard-pressed to conduct its case without them."  *Butler v. DirectSat USA, LLC*, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013); *Pruitt v. Bank of Am., N.A.*, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016) (noting a party's "failure to attend a deposition can derail the discovery process").  Although Plaintiffs have been able to obtain circumstantial evidence from other sources, Fields's testimony likely would be the best—and certainly the most direct—source of evidence concerning his conduct before the Rally and interactions with other Defendants (i.e., evidence of conspiracy); his actions at the Rally and during the car attack (i.e., evidence of his acts of violence); and his reasons for attending the Rally and motivation for attacking innocent pedestrians (i.e., opinions and prejudices related to race and religion).  Plaintiffs should not be deprived of a crucial discovery tool or forced to rely solely on non-testimonial evidence without sanctions.

Fields's repeated delay in providing discovery has also likely resulted in the loss of evidence.  Plaintiffs needed the SCA consent because Fields claimed he did not remember the passwords to his social media accounts.  Plaintiffs served document requests as early as January 25, 2018, but Fields waited until February 5, 2020 even to mention his social media, and it was

16

only then that he claimed he could not remember his passwords.  *Exhibit 5*.  Had Fields timely

provided discovery, perhaps he would have remembered his passwords.

Fields's misconduct has prejudiced Plaintiffs in other ways, as well, including forcing

Plaintiffs to litigate with third parties, driving up costs, and distracting Plaintiffs from focusing

on the merits of this case.  This case has been pending for nearly four years and is just months

from trial.  Discovery is closed.  Depositions are concluded.  Expert reports have been drafted

and served.  The parties have moved past discovery and are focused on preparing for trial.

> **D.    The Court Should Deter Parties from Refusing to Comply with Court Orders and Refusing to Provide Discovery.**

"There is a compelling need to deter [defendants] from simply refusing to participate in

Court-ordered discovery."  *Barker*, 2010 WL 2650885, at *3 (noting the "offenses committed by

Defendant produce[d] numerous victims").  In particular, "continued abuses" in discovery

"demand[] some form of punishment."  *Anderson*, 155 F.3d at 505; *Mut. Fed. Sav. & Loan Ass'n*

*v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989) (entry of default judgment "unmistakable

message to them and others that the judicial system will not tolerate repeated misconduct never

wholly remedied in the future").

Fields's discovery misconduct is substantial, deliberate, impactful and prejudicial—

precisely the type of misconduct the Court should deter.  In fact, the Court has already

sanctioned other Defendants for similar misconduct and repeatedly admonished Defendants that

they must be active participants in discovery or face sanctions.  It is important for the Court to

deter similar non-compliance by other Defendants and other parties in cases before this Court.

This Court has already had to issue multiple sanctions orders against Defendants.  *See, e.g.*, ECF

Nos. 483, 540, 599, 910, 933, 936.  And Defendants continue to flout the Court's orders and

rulings, including by openly questioning whether they should recognize the Court's authority at

all.  Indeed, Defendant Cantwell, considering the consequences faced by other Defendants who "blew off these proceedings," concluded that "perhaps they will be proven to have had the better idea."  ECF No. 560, p. 4.  Issuing substantial sanctions will send a message to Fields, to the other non-compliant Defendants, and to future parties that compliance with discovery is the only proper and reasonable path and that parties cannot avoid bad evidence by refusing to provide it.

### E.   Lesser Sanctions Would Be Ineffective.

An adverse-inference instruction is effective at curing prejudice because it helps "level[] the evidentiary playing field" at trial by allowing the jury to presume the missing evidence was unfavorable to the non-producing party who, knowing it was relevant, intentionally "failed to produce" it.  ECF No. 936, p. 18 (internal citation omitted); ECF No. 936 (ordering an adverse inference instruction with respect to Defendant Vanguard America).  Ordering that facts be taken as established is appropriate when a party has deprived its adversary of evidence that could be used to prove those facts.  *See* ECF No. 910 (ordering an adverse inference instruction and that facts be taken as established with respect to Defendant Kline).  Similarly, precluding a party from testifying at trial is appropriate where the party has deprived its adversary of the opportunity to cross-examine them during discovery.  *Montanile v. Botticelli*, 2009 WL 2378684 (E.D. Va. Jul. 28, 2009) (precluding plaintiff from testifying at trial where she failed to respond to discovery requests and to sit for a court-ordered deposition); *Steel v. ARI Mut. Ins. Co.*, 2015 WL 4429258 (E.D. La. Jul. 20, 2015) (precluding defendant from testifying at trial where court determined scheduling deposition was futile); *Stewart v. Wachowski*, 2005 WL 618374 (C.D. Cal. Jun. 14, 2005) (precluding plaintiff from testifying at trial).

Here, an adverse inference jury instruction, ordering that certain facts be deemed established, and precluding Fields from testifying at trial are the only sanctions that could effectively remedy the prejudice Plaintiffs have suffered, adequately punish Fields for his

misconduct in this case, and deter similar misconduct.  No lesser sanction would be effective to "level[] the evidentiary playing field" because Fields has withheld (and destroyed) important documentary evidence, deprived Plaintiffs of deposition testimony, caused significant delay, and increased the costs in these proceedings, frustrating Plaintiffs' ability adequately to prepare and present their case.  ECF No. 936, p. 18 (internal citation omitted).

Lesser sanctions would be ineffective, in particular because of Fields's incarceration.  *See Barker*, 2010 WL 2650885, at *3 (holding lesser sanctions are often "inapplicable and ineffective against a defendant who is already incarcerated and whose criminal case has been concluded").  He is already serving multiple life sentences, so attempting to jail Fields for contempt would have no effect.  Similarly, monetary penalties or awards of legal fees would be ineffective.  Despite whatever assets he might have, he is already obligated to pay over $550,000 in fines and restitution from his criminal cases alone.  *Exhibits 14, 15*.  Indeed, several courts have issued more drastic sanctions, like dismissing claims, when a party refuses to be deposed. E.g., *Pritchard v. Auto. Ins. Co. of Hartford Conn.*, 2017 WL 474101, at *6-8 (W.D.N.C. Feb. 2, 2017) (dismissing case with prejudice based on the party's "continued refusal to appear at a deposition").  But Plaintiffs are not seeking the most drastic sanctions against Fields.  They are not, for example, asking the Court to enter default judgment against Fields.  *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).  Nor are they asking the Court to prohibit Fields from opposing Plaintiffs' claims or from supporting his defenses.  *See id.* 37(b)(2)(A)(ii).  And they do not ask the Court to strike his pleadings.  *See id.* 37(b)(2)(A)(iii).

Plaintiffs seek significant but measured sanctions, and respectfully suggest that it would be futile and unfair to allow Fields third, fourth and fifth chances here.  An adverse inference, an order that facts be taken as established, and an order precluding Fields from testifying at trial, are

appropriate but restrained and tailored to the circumstances of Fields's discovery violations. Each fact in Appendix A that Plaintiffs ask this Court to deem established relates only to facts and evidence of which Fields deprived Plaintiffs. Each one is also supported and corroborated by other evidence. *See* Appendix B.

> **Facts Nos. 38-39** ask the Court to deem admitted facts related to Fields's Discord accounts and his refusal to provide Plaintiffs with access to them. The facts are supported by the discussion at Section I.B., *supra*, and *Exhibits 7, 8.*

> **Fact No. 40** asks the Court to deem admitted the fact that Mr. Fields refused to testify at a deposition by Plaintiffs' counsel. *See supra* at Section I.C.

> **Facts Nos. 41-47** ask the Court to deem admitted facts about which Plaintiffs would have been able to ask Mr. Fields if he had not refused to be deposed. These facts are extensively corroborated by other evidence in this case. *See, e.g.*, *Exhibits 7, 8, 18-24.*

They are the only sanctions available that will both level the field for Plaintiffs and properly sanction Fields.

## III.  THE COURT SHOULD ORDER AN ADVERSE INFERENCE AND ORDER THAT CERTAIN FACTS BE TAKEN AS ESTABLISHED AS A REMEDY FOR FIELDS INVOKING THE FIFTH AMENDMENT.

Fields's invocation of the Fifth Amendment to avoid discovery severely impedes Plaintiffs' ability to gather evidence. The Court should independently order an adverse inference and that facts be taken as established to level the playing field on this ground alone.

To decide whether a remedy is appropriate for a party's refusal to provide discovery on Fifth Amendment grounds, the Court will first "determine whether there was a valid basis" to assert the privilege. *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633-34 (E.D. Va. 2006). If the assertion was not valid, the Court can sanction the failure to provide discovery under Rule 37. *Varner v. Roane*, 2018 WL 3244108, at *4 (W.D. Va. July 3, 2018).

Even if the assertion is valid, the party's "decision to assert his Fifth Amendment privilege in [a] civil action 'does not come without consequences.'" *Id.* (internal citation omitted). The Court must ensure the opposing party "is not unduly disadvantaged." *Id.* (internal citation omitted); *Deakins v. Pack*, 957 F. Supp. 2d 703 (S.D. W.Va. 2013) (holding the court "must ensure that the opposing party is not unduly disadvantaged" by assertion of Fifth Amendment privilege) (internal citations omitted). Thus, "the court may fashion an appropriate remedy to level the playing field where a plaintiff refuses on Fifth Amendment grounds to provide discovery on matters relevant to the issues in the lawsuit." *Varner*, 2018 WL 3244108, at *4.

Ordering an adverse inference is a common remedy when a party invokes the Fifth Amendment to avoid providing discovery.[5] "In a civil proceeding, a fact-finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions."). Thus, "a district court may constitutionally permit a jury to draw an adverse inference from the refusal to testify on Fifth Amendment grounds by either a witness or party in a civil suit." *Custer Battles*, 415 F. Supp. 2d at 633-34; *Zajac v. Red Wing, LLC*, 2018 WL 9989661, at *5 (D.S.C. July 13, 2018) (ordering "adverse inferences at trial based on [a party's] invocation of the Fifth Amendment privilege"); *United States v.*

---

[5] Courts have also precluded testimony, entered judgment, and dismissed the silent party's claims. *See Deakins*, 957 F. Supp. 2d at 773; *Varner*, 2018 WL 3244108, at *5 (Hoppe, Mag. J.) (prohibiting party from testifying as to certain issues at trial because he refused to answer discovery based on Fifth Amendment); *Johnson v. United Parcel Servs., Inc*., 127 F.R.D. 464, 466 (D. Md. 1989) (striking claims for party's refusal to provide discovery on Fifth Amendment grounds).

*Sasscer*, 2000 WL 1683465, at *3 (D. Md. Nov. 8, 2000) ("In a civil case, a negative inference may be drawn based on an assertion of Fifth Amendment privilege . . . ."). An "adverse inference based on a refusal to answer in a civil case is an appropriate remedy" because "it provides some relief for the civil litigant whose case is unfairly prejudiced by a witness' assertion of the Fifth Amendment privilege without placing the witness in the cruel trilemma of choosing among incrimination, perjury, or contempt." *Custer Battles*, 415 F. Supp. 2d at 633-34 (internal quotation marks and citation omitted).

**Fields's Interrogatory Answers.** Fields's continued assertion of the Fifth Amendment in response to Plaintiffs' interrogatories is improper. Plaintiffs' sanctions motion argued that Fields improperly asserted the Fifth Amendment in response to the interrogatories (ECF No. 671, p. 24 n.5), and the Court ruled that "Fields also must fully answer each of Plaintiffs' interrogatories asking about relevant documents or communications" and his "right against compelled self-incrimination should not have been a significant barrier to civil discovery." ECF No. 759, pp. 7, 16.

And the Court's ruling was correct. Plaintiffs asked Fields for statements he made to law enforcement and other government officials. *Exhibit 4, Nos. 6, 7.* "Because law enforcement officials are already in possession of the information Plaintiff seeks, disclosure of this information to the Plaintiff cannot expose [the defendant] to a greater risk of prosecution. His Fifth Amendment right against self-incrimination therefore does not entitle him to withhold it." *Ramos v. Town of E. Hartford*, 2016 WL 7340282, at *3 (D. Conn. Dec. 19, 2016).

**Fields's Responses to the RFAs.** As to the RFA responses, Plaintiffs concede Fields validly asserted his Fifth Amendment rights. *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004) ("[A] defendant's right to invoke the Fifth Amendment as to events for which he has

been convicted extends to the period during which the conviction is pending appeal."). Nevertheless, while Fields may assert that right, it should not be "without consequences" in this civil case.  It is plain as a matter of law that the Court may and should "level the playing field" by ordering that the facts in Appendix A be established.  Alternatively, the Court should order that each RFA Fields refused to answer based on his invocation of the Fifth Amendment is deemed admitted.  *See* Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order . . . that the matter is admitted").

The facts Plaintiffs request to be deemed established closely mirror the RFAs that Fields refused to answer.  *See* Appendix B (comparing facts to RFAs.)  Almost all of these facts are also supported and corroborated by the Statement of Offense.  The Statement of Offense was part of Fields's guilty plea to 29 hate crimes in this Court for the same violent acts that underlie Plaintiffs' claims against Fields in this case.  *Exhibits 14, 15*.  Fields initialed every page of the Statement of Offense and signed it.  *Exhibit 15*.  These facts are:

> **RFA Nos. 38-43 and 74 (Facts Nos. 1-6, 32)** asked Fields to admit that he committed specific acts detailed in the Statement of Offense.  *Exhibit 18.*
>
> **RFA Nos. 44-60 (Facts Nos. 7-20)** asked Fields to admit he drove towards, into, and struck a group of pedestrians, including Plaintiffs.  *Id.*
>
> **RFA Nos. 61-68 (Facts Nos. 21-28)** asked Fields to admit he caused injury to the Plaintiffs.  *Id.*
>
> **RFA Nos. 77-79 (Facts Nos. 33-35)** asked Fields to admit he espoused violence against African Americans, Jewish people and members of groups Fields perceived to be non-white.  *Id.*
>
> Finally, **Requests for Admission 69-71, 123 and 137 (Facts Nos. 29-31, 36, 37)** asked Fields to admit statements relevant to his motivation for driving into the Plaintiffs, including his state of mind when he did so.  Independent evidence in this case supports that these statements are true.  *See, e.g.*, *Exhibits 16, 17, 18*.

The facts to be admitted are not unfairly prejudicial, confusing, cumulative, or needlessly inflammatory—rather, they directly support Plaintiffs' claims against Fields, and they are

supported by other independent documentary evidence.  *See Custer Battles*, 415 F. Supp. 2d at 636 (allowing evidence that "is not prejudicial in the sense of being inflammatory, but, rather, is prejudicial in the sense of giving support to a party's position, i.e., it is damning" (internal quotation marks and citations omitted)); *United States v. Fulcher*, 250 F.3d 244, 250 (4th Cir. 2001) ("[E]vidence is only cumulative 'when it adds very little to the probative force of the other evidence in the case so that if it were admitted its contribution to the determination of truth would be out-weighed by its contribution to the length of trial.'" (quoting *United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir.1996))).

Because these statements are relevant, reliable, and corroborated by independent evidence, the Court should order an adverse inference jury instruction and order that the facts in Appendix A are deemed established.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and order the requested relief, in addition to any other relief as the Court deems just and proper.

Dated: August 11, 2021                               Respectfully submitted,

*/s/ David E. Mills*
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com

24

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
ybarkai@kaplanhecker.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com

Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
kcheng@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

## RULE 37 CERTIFICATION

Plaintiffs hereby certify pursuant to Rule 37(a)(1) that they have attempted in good faith to meet and confer with James Fields about the issues raised by this Motion.

Dated: August 11, 2021                                  Respectfully submitted,


                                                        /s/ David E. Mills
                                                        David E. Mills (*pro hac vice*)
                                                        *Counsel for Plaintiffs*

26

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Defendants National Socialist Movement, Nationalist Front and Jeff Schoep*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party, Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

I hereby certify that on August 11, 2021, I also served the foregoing upon following *pro se* defendants, via electronic mail, as follows:

Matthew Heimbach
matthew.w heimbach@gmail.com

Richard Spencer
richardbspencer@gmail.com
richardbspencer@icloud.com

Robert Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline
eli.f mosley@gmail.com
deplorabletruth@gmail.com
eli.r kline@gmail.com

I hereby certify that on August 11, 2021, I also served the foregoing upon following *pro se* defendant, via first class mail, as follows:

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion
U.S. Penitentiary
P.O. Box 1000
Marion, IL 62959

*/s/ David E. Mills*

David E. Mills (*pro hac vice*)