# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, THOMAS BAKER and JOHN DOE,<br><br>                           Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>                           Defendants. | **Civil Action No. 3:17-cv-00072-NKM** |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT MATTHEW HEIMBACH

# TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

I.      Heimbach Created Countless Documents Relevant to This Litigation. ............................ 2

II.     Heimbach Acted in Bad Faith in Discovery. ....................................................... 5

III.    Many of Heimbach's Relevant Documents Are Now Deleted, Destroyed, or Lost, and He Made No Meaningful Effort to Recover Them.................................................... 8

      A.      Heimbach Made no Meaningful Effort to Preserve his Cell Phone, Laptop and Hard Copy Documents and then Blamed his First Wife (and his Neighbors) for their Ultimate Disappearance. ................................................................ 9

      B.      Heimbach Blamed His Current Wife and Others for the Disappearance of Additional Accounts and Devices..................................................... 10

ARGUMENT ...................................................................................................... 12

I.      Heimbach's Duty to Preserve Relevant Evidence Began on October 12, 2017. ................. 14

II.     Due To Heimbach's Preservation Failures, Vast Amounts of Heimbach's Relevant Evidence Have Been Irretrievably Lost........................................................... 15

      A.      Android Cell Phone, Laptop and Relevant Hard Copy Documents .................... 16

      B.      Blackview BV 800 Pro Cell Phone.................................................... 19

      C.      @MatthewWHeimbach Gab Account ................................................ 20

      D.      MatthewHeimbach VK Account....................................................... 21

      E.      MatthewHeimbach Daily Stormer Account........................................... 22

III.    Heimbach Sought to Deprive Plaintiffs of Relevant Evidence, Warranting Adverse Inferences Under Rule 37(e)(2) and the Court's Inherent Authority.............................. 22

CONCLUSION.................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Brown v. Certain Underwriters at Lloyds, London*,
No. 16-CV-02737, 2017 WL 2536419 ................................................................. 23

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
803 F. Supp. 2d 469 (E.D. Va. 2011) ................................................................. 13

*In re Abell*,
No. 13-13847, 2016 WL 1556024 (Bankr. D. Md. Apr. 14, 2016) ........................ 13

*Internmatch, Inc. v. Nxtbigthing, LLC*,
No. 14-cv-05438, 2016 WL 491483 (N.D. Cal. Feb. 8, 2016) .................... 18, 20, 23

*Jenkins v. Woody*,
No. 3:15-cv-355, 2017 WL 362475 (E.D. Va. Jan. 21, 2017) ......................... 13, 18

*Knight v. Boehringer Ingelheim Pharms., Inc.*,
323 F. Supp. 3d 837 (S.D.W. Va. 2018) ......................................................... 12, 13

*Mcqueen v. Aramark Corp.*,
No. 2:15-cv-492, 2016 WL 6988820 (D. Utah Nov. 29, 2016) ............................. 16

*NuVasive, Inc. v. Kormanis*,
No. 1:18-cv-282, 2019 WL 1171486 (M.D.N.C. Mar. 13, 2019) .......................... 15

*O'Berry v. Turner*,
No. 7:15-cv-00064, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) ............. 17, 24, 26

*Ottoson v. SMBC Leasing & Fin., Inc.*,
268 F. Supp. 3d 570 (S.D.N.Y. 2017) ................................................................. 23

*Paisley Park Enters., Inc. v. Boxill*,
330 F.R.D. 226 (D. Minn. 2019) ......................................................................... 16

*Silvestri v. Gen. Motors Corp.*,
271 F.3d 583 (4th Cir. 2001) ........................................................................ 12, 14

*Steves & Sons, Inc. v. JELD–WEN, Inc.*,
327 F.R.D. 96 (E.D. Va. 2018) ..................................................................... passim

*Sys. Spray-Cooled, Inc. v. FCH Tech, LLC*,
No. 1:16-cv-01085, 2017 WL 10154221 (W.D. Ark. Feb. 22, 2017) .................... 16

iii

*Trigon Ins. Co. v. United States*,
    204 F.R.D. 277 (E.D. Va. 2001) ............................................................. 14

*Turner v. United States*,
    736 F.3d 274 (4th Cir. 2013) ................................................................ 12

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010) ................................................ 13, 14, 26

*Vodusek v. Bayliner Marine Corp.*,
    71 F.3d 148 (4th Cir. 1995) ................................................................. 14

Rules

Fed. R. Civ. P. 37 ...................................................... 1, 12, 14, 22, 26

Plaintiffs respectfully submit this supplemental memorandum of law in support of their motion pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority for sanctions against Defendant Matthew Heimbach. *See* ECF 457, 539.

## PRELIMINARY STATEMENT

Defendant Matthew Heimbach ignored discovery requests and disobeyed Court orders for more than a year, which resulted in a preliminary round of Court-ordered sanctions. The sanctions, premised on a finding that Heimbach had acted in bad faith, included an order that Heimbach sit for a deposition focused on his extensive discovery misconduct. At that deposition, Heimbach revealed the systematic destruction of much of the evidence he possessed concerning this litigation. Specifically, Heimbach testified that every single electronic device and hard copy document, along with many of his social media accounts that once contained content relevant to this litigation, has since been destroyed, deleted, or lost.

It is now plain that despite being represented by counsel for more than a year of discovery, Heimbach made no meaningful effort to preserve potentially relevant documents and information, and the vast majority of it simply disappeared. For this extensive spoliation, Heimbach offered little more than excuses that border on the absurd, often blaming his family members for destroying critical evidence, while claiming not to recall details that might have aided Plaintiffs in recovering it. Heimbach also made no meaningful effort to recover the evidence once he "realized" it was lost, underscoring that he never took care to preserve it in the first place, and in fact, likely intentionally destroyed it.

Plaintiffs have gone to great lengths over the course of discovery to obtain through other measures or other Defendants what Heimbach failed to provide, while the Court took under advisement Plaintiffs requested evidentiary sanctions in their initial sanctions motion against

Heimbach. With fact discovery now concluded as it relates to Mr. Heimbach, Plaintiffs can confidently assert that much of what was destroyed cannot be recovered and that Plaintiffs have been prejudiced by Heimbach's misconduct. Accordingly, adverse inferences are now warranted.

## BACKGROUND

### I. Heimbach Created Countless Documents Relevant to This Litigation.

Heimbach was a "prolific" writer in the white nationalist community and a central organizer of co-Defendant Traditionalist Worker Party's ("TWP") attendance at Unite the Right. *See* Ex. 1 (Heimbach Dep. Tr., Aug. 9, 2019 ("Heimbach Dep. Tr."), 257:7-58:3; 404:5-17); Pls.' Mot. for Sanctions Against Defs. Elliot Kline a/k/a Eli Mosley and Matthew Heimbach, Apr. 3, 2019, ECF 457 ("First Heimbach Sanctions Mot."), at 8-9. He used electronic devices, social media accounts, online forums, and letters to coordinate Unite the Right, communicate with co-conspirators, or comment on other relevant topics requested by Plaintiffs in discovery. At various times during this litigation, Heimbach had three cell phones, one computer, at least nine social media accounts, and a "tub" of hard copy files that each contained relevant documents. Nearly all have either disappeared or become completely inaccessible.[1]

With respect to his electronic devices, Heimbach created relevant electronically stored information ("ESI") on several cell phones and computers. He used an Android cell phone to discuss the events in Charlottesville (the "Events") and to text with co-Defendants before, during, and after Unite the Right. Ex. 1 at 304:24-05:7; 305:23-07:23; 312:6-14; 64:10-12; 67:6-9; 68:21-25; 70:25-71:6; 307:24-08:3; 309:2-7; *see also* Ex. 2. Months after Plaintiffs sued Heimbach, he

---

[1] As described below, of these accounts, devices, and documents, Heimbach has produced only from his Google Drive/Gmail account, his Skype account, his Signal account, and one of his Twitter accounts. He also belatedly provided an SCA consent to his Discord account, after multiple court orders that he do so. Plaintiffs have not received any documents from his numerous other social media and online accounts, his devices (including text messages), or any of his hard-copy documents.

replaced the Android[2] with a new cell phone, a Blackview BV 800 Pro (the "BV 800 Pro"), Ex. 1 at 332:5-12, and continued using it to send text messages concerning the Events, *id.* at 332:13-18; *see* Ex. 2. He also generated relevant ESI on an Asus laptop. Ex. 1 at 206:22-7:4; 344:16-45:3. Heimbach possessed each of these devices after he had retained counsel and received Plaintiffs' discovery requests. ***Yet every single device is now gone.*** *Id.* at 348:2-6. Overlooking his own careless handling of the devices, Heimbach blames his first wife for the loss of his first phone and laptop and his second wife for the loss of his second phone. *See id.* at 92:18-20; 333:3-13. Plaintiffs never received ESI from any of those devices. The only text messages Plaintiffs received that were sent or received by Heimbach, one of the key organizers of UTR, were those relatively few that Plaintiffs managed to recover from other co-Defendants who did not themselves throw their phones in the toilet or delete the data after they were sued in this case. *See, e.g.*, ECF 689 at 1, 3; ECF 601 at 7; Ex. 3 (Parrott Dep. Tr.) at 285:9-289:10.

Heimbach also used social media to plan or discuss Unite the Right, including the Daily Stormer ("DS"), Discord, Facebook, Gab, Google Drive/Gmail, therightstuff.biz, Twitter, the TWP email and ticketing system, and VK. Ex. 1 at 150:7-52:8; 76:16-19; 131:15-32:14; 254:6-21; 161:14-66:4; 179:6-82:25; 217:2-24; 111:5-16:9; Ex. 4. He also maintained accounts on GoyFundMe, Hatreon, Iron March, Occidental Dissent, PayPal, and YouTube, but purportedly could not recall whether they contained relevant ESI. Ex. 1 at 176:15-77:2; 176:10-11; 168:7-71:4; 303:3-7; 172:6-75:4; 157:3-7. Although expressly instructed to, *see infra* Background Section II, Heimbach "didn't take any steps to preserve anything [he] posted on any social media account," and "every single social media account . . . that concerns the Unite the Right has been either

---

[2] Heimbach indicated to the Court that this phone was broken during Unite the Right. *See* Ex. 5. Yet at his deposition, he claimed he replaced the Android because he made the "stupid mistake" of leaving his phone out for his two-year-old son, who cracked its screen sometime late in 2017. Ex. 1 at 312:12-13:8. Heimbach told others that his son wrecked his phone in *February* of 2017. *See* Ex. 6 (MWH00019169).

disabled or deleted since [he was] sued in this case," Ex. 1 at 292:17-21; 373:3-8; *see also infra* Background Section III.

Plaintiffs obtained a handful of posts from Heimbach's missing social media accounts through independent investigation, which show that he used those accounts to create highly relevant ESI. *See* Ex. 1. On Gab, Heimbach posted photos of himself and other TWP members at Charlottesville, and he proposed that his followers write to co-Defendant Chris Cantwell in the Charlottesville jail where he was held on charges for violence at Unite the Right. Ex. 7; Ex. 1 at 135:15-36:11. On VK, Heimbach posted about "legal filings" in this case by co-Defendant National Socialist Movement. Ex. 8; Ex. 1 115:17-16:9. On the DS forum, Heimbach speculated who would attend the Events and whether they would be "standing with" TWP or other "100% racial nationalists." Ex. 9; *see also* Ex. 1 at 151:21-52:8. Heimbach produced none of the content from these accounts, each of which conveniently vanished after Heimbach was sued. Heimbach claims his wife intentionally deleted the Gab, and VK accounts, and he suspects (but has not checked) that the DS account is also gone. Ex. 1 at 184:14-85:7; 136:19-44:14; 117:2-24; 153:6-54:25.

Heimbach also stored important hard copy documents. He wrote letters to individuals incarcerated for violence they committed during Unite the Right, including Jacob Goodwin, Alex Ramos, and Daniel Borden, each of whom were convicted of maliciously wounding an African-American counter-protester at Unite the Right. *Id.* at 91:22-93:23; 96:8-97:10. Although Heimbach admits he received hard-copy replies to his letters, *id.* at 102:15-05:23, those potentially critical responses were never produced to Plaintiffs. Heimbach kept those responses, along with documents that listed login credentials to his online accounts, *id.* at 124:16-27:17, in a plastic "tub" in his home during early 2018. *Id.* at 102:15-05:23; 315:16-16:23. Those documents are now gone.

*Id.* at 318:11-16.

## II.     Heimbach Acted in Bad Faith in Discovery.

Plaintiffs filed this action on October 11, 2017. Heimbach knew he was a Defendant the following day, when he mentioned it on a podcast, *see* Ex. 1 at 34:4-36:13. He knew the suit concerned his conduct related to Unite the Right, *see id.* at 35:4-20 ("Not one, but two, lawsuits is what I woke up to this morning pertaining to Charlottesville."), and he referred to Plaintiffs' counsel as "fucking kikes," *id.* at 414:22-16:14. Heimbach was personally served with process on November 6. *See* ECF 108. By December 1, 2017, he had retained attorneys who represented him through January 4, 2019. *See* ECF 132; ECF 397.

Plaintiffs served Heimbach discovery requests on January 25, 2018. *See* Ex. 10. The requests made his preservation obligations explicit. *See* Ex. 11, Instr. G ("You must preserve all Documents and Communications relevant to the lawsuit . . . personal computers . . . [and] mobile telephones . . . . This includes . . . maintaining all . . . pertinent information and tools needed to access, review, and reconstruct all requested or potentially relevant [ESI] and data."). Heimbach's response was due February 26, 2018. *See id.* at 1. He provided untimely responses on April 13, 2018, *see* Ex. 12, and for nearly seventeen months did not produce a single document, *see* Ex. 13 (Heimbach's first production to Plaintiffs on July 7, 2019). Heimbach later admitted that his sworn responses were not just untimely, they were incomplete and inaccurate. When he completed them, he knew "that [he] had responsive documents in [his] possession" but nonetheless "affirmed . . . under oath" that he had "none." Ex. 1 at 366:2-371:2. He "miss[ed] things" in his interrogatory responses and failed to disclose at least five relevant social media accounts and at least one relevant device. *See id.* at 355:21-66:8; *see also* Ex. 4; Ex. 1 at 151:21-52:8; 237:3-23; 240:12-41:9; 165:3-66:4; 180:25-82:25; 305:19-07:12; 332:5-23.

Because Heimbach had not produced any documents, Plaintiffs moved to compel him (and

others) to identify in a sworn statement all electronic devices and social media accounts that stored potentially relevant ESI (the "ESI Certification"), turn over those devices and accounts to a third-party discovery vendor for collection and preservation, and produce relevant, non-privileged ESI to Plaintiffs. ECF 354 at 6-7. The Court granted Plaintiffs' motion. ECF 379 at 1. Defendants, including Heimbach, were ordered, in part, to (1) submit an SCA consent form to Discord to permit the production of responsive content to Plaintiffs, *see id.* at 2, and (2) complete an ESI Certification identifying all accounts and devices that may contain responsive content by December 3, 2018, for eventual production, *see* ECF 383 at 8. In response to these Orders, on November 20, 2018, Heimbach sent an incomplete SCA consent to Discord that inaccurately identified his Discord account, hindering Plaintiffs' ability to obtain his Discord documents. *See* Ex. 1 at 380:3-82:17. Plaintiffs informed him that his consent was defective, *see* Ex. 14, but Heimbach failed to correct it until threatened with arrest months later.[3] Heimbach then fired his attorneys and ceased participating in discovery altogether. *See* ECF 400 at 14:8-13 (Heimbach's "response to the last court order was to terminate . . . myself [Kolenich] and Mr. Woodard and forbid us to take any actions on his behalf. The Court will also note that he hasn't called in [to the conference] today, even though I did transmit the time and call-in information.").

Heimbach disappeared from the litigation for months. He stopped responding to communications from Plaintiffs and the Court. *See* First Heimbach Sanctions Mot. at 12-13. He failed to appear at six telephonic Court conferences. *Id.* Meanwhile, he continued to use social media to comment on the litigation—reflecting his purposeful avoidance of discovery. *See id.* at 13. In April, after more than a year of failing to produce documents, Plaintiffs moved to sanction

---

[3] On July 7, 2019, under threat of arrest for discovery misconduct, Heimbach finally submitted an accurate SCA consent form to Discord, which allowed Plaintiffs to recover relevant content he generated on Discord.

Heimbach. *See generally id.* Plaintiffs requested certain trial-related sanctions, including adverse inferences, as well as reasonable fees and expenses. The Court held a hearing on June 3, 2019, *see* ECF 494. Heimbach failed to appear. His former counsel informed the Court that he could "reach Heimbach, but he will not participate" in discovery, because "[h]e has made a tactical decision that he would rather just take a default and let that happen." ECF 504 at 24. The Court noted that sanctions against Heimbach were "abundantly" justified, *id.* at 9, and indicated it would consider issuing a bench warrant for Heimbach's arrest if he continued to ignore discovery orders. *Id.* at 10.

The Court detailed how Heimbach had willfully and repeatedly ignored this Court's orders and spurned his discovery obligations, Mem. Op., Aug. 9, 2019, (the "Memorandum Opinion" or "Mem. Op."), ECF 539 at 11-29, and ultimately concluded that Heimbach's "continued disregard for the Court and its orders" could not be viewed "as anything other than bad faith." *Id.* at 31 (citation omitted). The Court thus granted interim sanctions. *Id.* at 31-32 ("[S]talling and ignoring the direct orders of the court with impunity is misconduct that must obviously be deterred." (citation omitted)). As part of the sanctions, to aid Plaintiffs in obtaining long-sought evidence, the Court ordered Heimbach to sit for a deposition "devoted exclusively to [his] conduct in pretrial discovery, including [his] efforts to preserve any . . . materials that are potentially relevant to this litigation." ECF 508 at 4. This deposition was "necessary to address the significant deficiencies to date in [Heimbach's] discovery responses." *Id.* The Court noted that "Plaintiffs' requested evidentiary sanctions remain under advisement." ECF 540.

The Court additionally ordered Heimbach to complete the ESI Certification by July 10, 2019. ECF 515 at 1-2. While Heimbach completed the Certification on July 6, *see* Ex. 2, he later admitted that the document is inaccurate and misleading. He "listed at least two [social media] accounts that [he did] not believe have anything relevant, but [he] left off about ten accounts that

do have responsive documents." Ex. 1 at 353:24-55:12. Heimbach never corrected the Certification. Heimbach was further ordered by July 10, 2019, to "[g]ive Plaintiffs' counsel a complete and accurate SCA consent form(s) allowing . . . Twitter . . . to produce any discoverable documents . . . ." and by July 24, 2019, to "[p]rovide complete and accurate written answers to Plaintiffs' First Set of Interrogatories." ECF 515 at 1-2. To date, Heimbach has produced neither corrected interrogatory responses nor an SCA consent for his @HeimbachMatthew Twitter account.[4]

This Court warned Heimbach that if he "fail[s] to produce" to Plaintiffs "from this point forward," "evidentiary sanctions—including the adverse inference and an order deeming some of [Plaintiffs'] proposed facts established—would be available, and certainly could be appropriate in this case . . . ." Mem. Op. at 34-35. "[S]hould [Heimbach] not follow through [in adhering to the rules of procedure and this Court's orders], the Court will likely have run out of options other than to impose significant evidentiary sanctions." *Id.* at 35.

### III.   Many of Heimbach's Relevant Documents Are Now Deleted, Destroyed, or Lost, and He Made No Meaningful Effort to Recover Them.

Under threat of arrest, Heimbach resurfaced. In a June 10, 2019, email to Plaintiffs, which he later sent to the Court, Heimbach offered his "deepest apologies" and asserted for the first time that his electronic devices, social media accounts, and "almost all of [his] worldly possessions" had "been disposed of." Ex. 5; Ex. 1 at 330:21-31:4. He wrote that he did not "believe [he had] anything else to provide." Ex. 5. Heimbach sat for his Court-ordered deposition on August 9, 2019, during which he offered a story for the disappearance of each device and account. In nearly every instance, someone else was to blame.

---

[4] Heimbach provided an SCA consent to Twitter for a wholly separate Twitter account, @MatthewHeimbach, which does not afford Plaintiffs access to the @HeimbachMatthew account, an account with its own unique content concerning Unite the Right. *See* Ex. 15.

A.   **Heimbach Made no Meaningful Effort to Preserve his Cell Phone, Laptop and Hard Copy Documents and then Blamed his First Wife (and his Neighbors) for their Ultimate Disappearance.**

Heimbach maintains his singular effort to "preserve" evidence was to put his Android, laptop, and hard copy documents in an unlabeled, uncovered plastic tub in his home. *See* Ex. 1 at 105:21-06:13; 316:8-24. He told no one about the tub and was never advised this was an appropriate way to preserve evidence. *Id.* at 317:6-9, 318:7-10. He did nothing else to preserve these critical materials: he never sent copies to his attorney, forensically imaged them, or otherwise backed them up. *See id.* at 317:10-18:6. Predictably, leaving evidence in an unlabeled, uncovered tub did not preserve it for production. On March 13, 2018, Heimbach was arrested for domestic battery against his then-wife, Brooke. *Id.* at 318:17-20:2. He claims he was then unable to contact her or return home, *id.*, though he never informed his attorney, the Court, or Plaintiffs that he believed he could not access the evidence he supposedly stored in the tub. He also made no effort to retrieve these items: he never tried to discuss with his landlord, his neighbors, his lawyer, or the police whether he might pick up his belongings. *Id.* at 326:9-31:4; 323:17-24:25; 327:25-30:11; *see also id.* at 314:16-15:19 (never checked with Android service provider to recover content).

The plastic tub and its contents went missing. *See id.* at 102:22-03:18. Heimbach claims not to know what happened to it, or to have tried to figure it out. He claims he cannot even remember when or how he learned his belongings disappeared. *Id.* at 325:2-27:24. But once threatened with arrest by this Court – more than a year after the supposed plastic tub disappeared – he helped his ex-wife Brooke craft an affidavit that speculates as to what might have happened. *See* ECF 520-1. The affidavit asserted that Brooke decided to leave town after the domestic violence incident, but there was too little room in the car to take much with her, including, apparently, Heimbach's Android cell phone. She claims she "notified [her] neighbors . . . that they had permission to clean out the home" when she left, apparently abandoning hundreds (if not

9

thousands) of dollars' worth of electronics. *Id.* ¶ 7. Brooke, too, disclaims knowledge of what happened to the plastic tub, but she guesses it was "thrown out by third parties who also had no knowledge of the lawsuit." *Id.* Although Heimbach knew these neighbors, he never bothered to call them (or anyone) to ask about the plastic tub. Ex. 1 at 326:18-31:4. Nor did he mention this seemingly notable event during discovery. Although he signed his interrogatory responses on April 11, 2018, a month after he supposedly lost access to the tub and all its contents, those sworn responses do not mention the plastic tub and its disappearance. *See* Ex. 4. For more than year, he told no one about the inaccessibility and eventual destruction of this key evidence. He first raised it in his email to Plaintiffs' counsel on June 10, 2019, *see* Ex. 1 at 330:21-31:4; Ex. 5—days after the Court indicated that Heimbach could face arrest. Heimbach later flippantly testified that his devices are probably now "somewhere in, like, Indonesia being pulled apart." Ex. 1 at 313:11-18.[5]

### B. Heimbach Blamed His Current Wife and Others for the Disappearance of Additional Accounts and Devices.

Relevant ESI from Heimbach's social media accounts is likewise destroyed, deleted, or lost. Heimbach conceded during his deposition that he did not attempt "to preserve any of [his] communications in this case" or "take any steps to preserve anything [he] posted on any social media account." Ex. 1 at 371:5-73:8. In some cases, the social media platforms deleted his social media accounts. Because he had never preserved the content, the deletion rendered the accounts unrecoverable. That includes at least his Facebook, GoyFundMe, Hatreon, Iron March, PayPal, and therightstuff.biz accounts.[6] It may also include parts of his DS account. *Id.* at 150:11-17,

---

[5] Heimbach also initially suggested that he could not identify or access relevant social media accounts because the paper with all his login credentials was gone. *See* Ex. 5. But he later admitted that the accounts were linked to his phone number or email address, *see, e.g.*, Ex. 1 at 130:20-132:25, through which he could have recovered lost credentials.

[6] *See*, Ex. 1. at 126:13-16 ("A: . . . I probably had—I don't know—three Facebooks that Facebook has shut down."); *id.* at 176:20-23 ("A: . . . Both Hatreon and GoyFundMe . . . [were] shut down, had their credit card processing

153:9-54:2. In other cases, he claims his current wife and fellow white nationalist, Jessica, intentionally deleted his relevant social media accounts.

Heimbach blamed Jessica for deleting his Gab and VK accounts. He initially claimed she deleted them as an "odd[]" form of revenge during a marital spat. *Id.* at 136:19-37:10 (Gab); *id.* at 116:15-17:24 (VK). Yet when pressed, he could not remember what arguments they had or when they took place. *Id.* at 117:2-14; 137:18-38:7; 139:24-40:9. He could not explain why Jessica would have deleted his accounts in response to an argument other than to snidely remark, "Love's a messy thing." *Id.* at 142:14. He also acknowledged that Jessica—co-Defendant Matt Parrott's ex-wife—was not only aware that Heimbach was involved in this litigation, she had notarized the discovery responses that identified his Gab and VK accounts as relevant. *Id.* at 117:25-19:16. He then backtracked, conceding that he was not certain Jessica deleted the Gab account, only that it was deleted at some point by someone. *Id.* at 140:10-42:14. And though he admitted that he "invested a lot of time and energy" into his VK account, he "made no efforts, ever, to recover the contents from [that] VK account." *Id.* at 117:18-24. 122:18-21.

Heimbach also blamed Jessica for the destruction of his second cell phone, the BV Pro 800. According to Heimbach, in March or April of 2019 Jessica supposedly disposed of this cell phone and replaced it with a new one, without notifying anyone or attempting to preserve its contents. *Id.* at 333:3-34:11. The only cell phone Heimbach ever submitted to the third-party vendor in this case was one he acquired only recently that he believes contains nothing relevant. *Id.* at 334:12-35:6.

---

blocked, very flash in the pan sort of things."); *id.* at 171:7-9 ("A: . . . [T]he individual who created Iron March deleted everything and is off living his best life somewhere in the Russian Federation."); *id.* at 175:8-10 ("A: The—any of the PayPal accounts, I believe, were shut down by PayPal themselves. . . ."); *id.* at 166:5-18 ("Q: Do you still have access to your rightstuff.biz account? A: I don't believe so, because the mobs of therightstuff deleted all the Action podcasts, their forum and associated accounts, I believe . . . ."). Mr. Heimbach has also indicated that several of his YouTube videos have been taken down. *See id.* at 158:16-22 ("Q: Are there still videos on your YouTube account? A: A lot of them got taken down, I believe, by YouTube.").

In other words, Heimbach concedes his only surviving device has nothing relevant on it.

To date, over three and a half years since this litigation began, Heimbach has only produced a limited set of documents from a handful of select accounts,[7] out of at least nine social media accounts, at least three devices, and unknown numbers of hard copy documents.

## ARGUMENT

The scope of the destruction of Heimbach's documents, as set forth above, is so staggering that it is almost hard to imagine a more egregious situation justifying the most severe sanctions. As detailed below, each of the factors courts consider in determining whether evidentiary sanctions are warranted weigh heavily in favor of awarding Plaintiffs adverse inferences for Heimbach's systematic spoliation.

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted); *see also Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 844 (S.D.W. Va. 2018) (same). A district court's power to impose sanctions for spoliation stems from both "(1) Federal Rule of Civil Procedure 37(e), and (2) its inherent power . . . to redress conduct which abuses the judicial process." *Id.* (quoting *Steves & Sons, Inc. v. JELD–WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018)). In either case, Courts have broad discretion to impose spoliation sanctions. *Id.*; *see also Turner v. United States*, 736 F.3d 274, 281-82 (4th Cir. 2013).

Federal Rule of Civil Procedure 37(e) governs sanctions for ESI spoliation. A party moving for sanctions must establish four elements: "(1) the information should have been preserved, (2)

---

[7] Mr. Heimbach has produced documents from his Google drive, Gmail, Signal and Skype accounts, as well as from one of his Twitter accounts, @MatthewHeimbach.  As noted, he also belatedly provided an SCA consent for his Discord content.

the information was lost, (3) the loss occurred because a party failed to take reasonable steps to preserve it, and (4) the information cannot be restored or recovered through additional discovery." *Knight*, 323 F. Supp. 3d at 845 (citation omitted); *see also Steves & Sons*, 327 F.R.D. at 104. "[A] party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary," including "what it knows, or reasonably should know, is relevant in the action, . . . is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Jenkins v. Woody*, No. 3:15-cv-355, 2017 WL 362475, at *15 (E.D. Va. Jan. 21, 2017) (quotation omitted). If a "party destroyed or materially altered documents or materials in bad faith, that establishes, without more, that the destroyed documents or materials were relevant" and ought to have been preserved. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 499 (E.D. Va. 2011). ESI is "lost" if it is "irretrievable from another source," such as another device or custodian. *Steves & Sons*, 327 F.R.D. at 108 (further noting this test sets a "low bar"). To show the ESI cannot be recovered, the movant must make "some good-faith attempt to explore its alternatives before pursuing spoliation sanctions"—but need not have "pursue[d] every possible avenue for replacing or restoring the [lost] ESI." *Id.* at 109.

If these four elements are satisfied, the Court may impose adverse inferences upon finding that the spoliator "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see also Knight*, 323 F. Supp. 3d at 845. This intent to deprive can be established by "both direct and . . . circumstantial evidence." *In re Abell*, No. 13-13847, 2016 WL 1556024, at *20 (Bankr. D. Md. Apr. 14, 2016). An intent to deprive is inherent in a finding of bad faith, because "bad faith" requires "destruction for the purpose of depriving the adversary of the evidence." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 530 (D. Md. 2010) (citation omitted). In considering whether a spoliator acted in bad faith, "the volume

and timing of [the] spoliation is telling." *See id.* at 531 (quotation marks omitted).

Further, the Court may impose sanctions for non-ESI spoliation pursuant to its inherent authority. *See, e.g.*, *Steves & Sons,* 327 F.R.D. at 104. "This analysis is similar to the Rule 37(e) framework[:]" "the party seeking sanctions must show "(1) [t]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) [t]he destruction or loss was accompanied by a culpable state of mind; and (3) [t]he evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery." *Id.* (citation omitted). "[D]istrict courts have considerable discretion, including . . . permitting an adverse inference to be drawn against the party as a means of leveling the playing field and sanctioning [spoliation]." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (citation omitted). These rationales include "(1) deterring parties from engaging in spoliation; (2) placing the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party," *Steves & Sons*, 327 F.R.D. at 103 (citations and alterations omitted).

## I.     Heimbach's Duty to Preserve Relevant Evidence Began on October 12, 2017.

A duty to preserve "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. Heimbach's duty to preserve was triggered at the latest by October 12, 2017, when he knew of his status as a Defendant in this litigation, and that the litigation involved Unite the Right. *See supra* Background Section II.

## II.     Due To Heimbach's Preservation Failures, Vast Amounts of Heimbach's Relevant Evidence Have Been Irretrievably Lost.

After forcing Plaintiffs to expend substantial resources simply to induce the bare minimum level of participation, Heimbach ultimately admitted to a virtually wholesale failure to preserve relevant documents, despite being represented by counsel for nearly a year after receiving Plaintiffs' document requests. He conceded he did not attempt "to preserve any of [his] communications in this case," "take any steps to preserve anything [he] posted on any social media account," or "image a single electronic device." Ex. 1 at 371:5-73:8. This behavior falls well short of "reasonable steps to preserve" relevant evidence. *See, e.g.*, *NuVasive, Inc. v. Kormanis*, No. 1:18-cv-282, 2019 WL 1171486, at *11 (M.D.N.C. Mar. 13, 2019), at *7, (no reasonable steps when for seven months a party allowed his phone to continue automatically deleting texts, failed to back up the phone, and made no effort to retrieve deleted texts); *Steves & Sons*, 327 F.R.D. at 108 (no reasonable steps where the party "undertook no preservation efforts whatsoever"). By the summer of 2019, "[e]very single device that [Heimbach] used to generate documents concerning the events at issue in this case [was] gone," along with all his relevant hard copy documents. Ex. 1 at 348:2-6. Relevant content from his social media and online accounts also disappeared.

As described in the attached Declaration of Michael L. Bloch, Plaintiffs have worked diligently to obtain Heimbach's lost content, including searching party and third-party productions, subpoenaing additional third parties, and searching the internet, but those efforts have not come close to recovering all that Heimbach lost. *See generally* Decl. of Michael Bloch. Because Heimbach claimed not to recall the contents of his own relevant documents and ESI,[8] deposing

---

[8] Heimbach testified that his memory is "certainly not reliable." Ex. 1 at 273:10-17. He claimed at various points that he could not recall what relevant ESI he generated using his cell phones. *See, e.g., id.* at 70:8-13 (not recalling whether he exchanged texts with co-Defendant Richard Spencer); *id.* at 73:10-15 (not recalling whether he exchanged texts with co-Defendant Michael Hill); *id.* at 73:20-23 (not recalling whether he exchanged texts with co-Defendant Michael

him again would be fruitless. *See, e.g.*, *Mcqueen v. Aramark Corp.*, No. 2:15-cv-492, 2016 WL 6988820, at *4 (D. Utah Nov. 29, 2016) (holding lost documents are irrecoverable where individual who could testify as to their contents is unlikely to remember). And Heimbach has "not offered any alternative methods for providing the information." *Sys. Spray-Cooled, Inc. v. FCH Tech, LLC*, No. 1:16-cv-01085, 2017 WL 10154221, at *4 (W.D. Ark. Feb. 22, 2017). Therefore, the "spoliated evidence at issue cannot be replaced or restored through additional discovery." *Id.*; *see also Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235-36 (D. Minn. 2019) (finding evidence irreplaceable where "[a]t most, Plaintiffs now can obtain only scattershot texts and [e-mails], rather than a complete record of defendants' written communications from defendants themselves" (citation omitted)).

Heimbach's treatment of certain lost devices, accounts, and documents, as discussed further below, was particularly egregious. These materials were relevant to the litigation, Heimbach never preserved them, and they were deleted or destroyed long after Heimbach was obligated to produce them. Moreover, the suspicious circumstances under which Heimbach claims his devices and documents were destroyed betrays an intent to deprive Plaintiffs of that evidence. Plaintiffs are entitled to adverse inferences to remedy this evidentiary gap.

### A. Android Cell Phone, Laptop and Relevant Hard Copy Documents

It is beyond dispute that Heimbach was obligated to preserve the devices and documents he claims he kept in the tub in his former home, which consisted of his Android cell phone, a laptop and certain hard copy documents. *See Steves & Sons*, 327 F.R.D. at 107. His Android contained critical ESI; among other things, he used it to text co-Defendants relating to Unite the

---

Tubbs); *id.* at 61:2-5 (not recalling whether he sent a text message concerning Unite the Right on August 12, 2017); *id.* at 311:8-25 (not recalling whether he took photos on August 12, 2017). He also claimed he could not recall what relevant ESI he created on Twitter, *see id.* at 180:4-15; 180:25-84:7, Gab, *id.* at 133:14-34:12; 137:5-17, VK, *id.* at 111:20-14:9, or DS, *id.* at 150:18-52:11.

Right. Ex. 1 at 307:16-07:23; *see also* Ex. 4; Ex. 2. His laptop, which he owned for "all of 2017" was used "to generate documents about Charlottesville." Ex. 1 at 344:16-345:7. The hard copy documents were also material. They included his social media account credentials as well as letters he received from prison written by other white nationalists incarcerated for violence they committed at Unite the Right. *Id.* at 124:16-27:17, 102:15-05:23, 315:20-16:19; *see also supra* Background Section I.

Yet because Heimbach failed to preserve them, all ESI from the Android and laptop and all his relevant hard copy documents were lost. Even if Heimbach's convenient tale of the "disappearing plastic tub" could be credited, Heimbach still took no meaningful steps to preserve the highly relevant devices and documents inside. Although he was represented when he received Plaintiffs' discovery requests, aided by counsel in completing his responses, defended by counsel against Plaintiffs' motion to compel, and represented when ordered by the Court to produce, he never sent his devices or documents to his attorney, imaged them, or otherwise backed them up. Ex. 1 317:6-18:10. At best, Heimbach was grossly negligent, which is far from the "reasonable steps" required to preserve his relevant material. *See, e.g.*, *O'Berry v. Turner*, No. 7:15-cv-00064, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) ("[I]t is simply irresponsible to print a single paper copy of information which one has a duty to preserve . . . .").

But more realistically, Heimbach's account of what happened to the Android, laptop, and hard copy documents is simply not credible. Though he purportedly placed significant personal documents in the tub—including his birth certificate and Social Security card—he claims he made no effort to recover any of it. He claims not to have discussed the issue with his ex-wife, his landlord, his lawyer, his neighbors, or the police. Ex. 1 at 326:4-31:4. And though he now maintains he could not access any relevant documents or devices at the time he completed his

17

interrogatory responses, *id.* at 318:17-19:22, his responses conspicuously made no mention of that. Ex. 4. Indeed, for over a year, he told *no one* about the purported plastic tub, its contents, or that it had all been supposedly disposed of. Ex. 1 at 330:25-31:4. He first mentioned this days after learning he was facing arrest and severe sanctions for his failure to produce responsive materials in discovery, *see* ECF 504 at 31, and thus needed some explanation for the disappearance of nearly all his evidence. His sole witness to the plastic tub's disappearance is his ex-wife, Brooke, who disclaimed personal knowledge of the details, and whose declaration Heimbach helped to craft. Ex. 1 at 335:22-37:13. Had this episode truly taken place, one would expect *some* contemporaneous evidence, or *some* effort by Heimbach to retrieve the critical items he lost. More likely, it is a story he manufactured *post hoc* to avoid sanctions, and one this Court simply should not credit.

Further, although Heimbach repeatedly identified the Android as relevant, *see* Ex. 4, Ex. 2; Ex. 1 at 307:20-23, he claimed to remember *nothing* about how he used it relating to the Events, *id.* at 307:24-10:11. He could not recall any text messages he sent during or about Unite the Right, *id.*, nor whether he took photos during the Events, *id.* at 311:18-12:5. His incredible narrative and recalcitrant testimony suggest that he sought to deprive Plaintiffs of his Android and hard copy documents. *See Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-05438, 2016 WL 491483, at *11 (N.D. Cal. Feb. 8, 2016) (finding intent to deprive where Defendants' "alleged chronology of events [is] highly improbable" and "story is filled with inconsistencies").

Unfortunately, at this point in time, these discarded items cannot be obtained through additional discovery. *See, e.g.*, *Jenkins*, 2017 WL 362475, at *14, *16 (holding lost video data cannot be restored when no party disputes it has been overwritten). The hard copy documents were never copied. Heimbach has no access to the content of the Android. Ex. 1 at 313:19-14:8. He had

no backup system, for example through the phone's service provider or a cloud-based storage system. *Id.* at 310:12-11:4. While Plaintiffs have obtained from other parties' productions select text messages Heimbach exchanged with Kessler, Kline and Cantwell, there are text messages from other co-Defendants that are lost forever. For example, Heimbach testified that he exchanged relevant text messages with his best friend and co-Defendant Matthew Parrott, *id.* at 64:10-12, as well as with co-Defendant Jeff Schoep, *id.* at 68:21-25.  But Mr. Schoep's cell phone allegedly fell in the toilet, *see* ECF 689 at 1, 3, and Mr. Parrott testified that he "may have deleted all text messages between [himself] and Mr. Heimbach" prior to having his phone imaged by the third-party vendor in this case. Ex. 3 (Parrott Dep. Tr.) at 285:9-289:10. Plaintiffs know of no other mechanism to obtain this critical lost data and Heimbach certainly has not offered any other options. *See* Decl. of Michael Bloch, ¶¶ 11-19 (describing Plaintiffs' efforts to retrieve ESI from Heimbach's cell phones).

### B.  Blackview BV 800 Pro Cell Phone

Heimbach was also obligated to preserve his BV 800 Pro, as he swore under oath that it contained relevant ESI, Ex. 2, including text messages he sent concerning Unite the Right, Ex. 1 at 332:11-24. Heimbach testified that, had he timely complied with the Court's November 13, 2018, Order to produce his electronic devices for imaging, he could have produced the relevant ESI from the BV 800 Pro. The device "was functioning" then, and the relevant ESI had not yet been lost. *Id.* at 376:7-77:8. But he did not comply with that Order, and the ESI was irretrievably lost when, according to Heimbach, his wife Jessica, intentionally discarded the device and replaced it with a new cell phone in March or April of 2019. *Id.* at 332:24-34:11. At the time, Jessica knew of Heimbach's status as a Defendant in this case. *See supra* Background Section III.b. Heimbach took no steps to preserve the ESI before his wife supposedly disposed of the phone. Ex. 1 at 372:14-73:8. The ESI was therefore lost because of Heimbach's failure to preserve it—and to comply with

this Court's orders. Plaintiffs know of no mechanism to obtain this lost data. *See* Decl. of Michael

Bloch, ¶¶ 11-19 (describing Plaintiffs' efforts to retrieve ESI from Heimbach's cell phones).

### C.  @MatthewWHeimbach Gab Account

Heimbach conceded that his @MatthewWHeimbach Gab account contained relevant ESI.

Ex. 1 at 134:18-36:11. He was therefore obligated to preserve its content. But he agreed he did not

take "any step at all to preserve the content of [his] Gab account before it was deleted," including

screenshotting relevant posts or identifying the account to the third-party discovery vendor. *Id.* at

145:11-46:5 (suggesting screenshots would be "arduous" and he did not "know what form" other

preservation efforts would take); *see also Steves & Sons*, 327 F.R.D. at 108-09.

Heimbach's incredible and contradictory testimony regarding the disappearance of the Gab

account again reflects an intent to deprive Plaintiffs of its contents. *See Internmatch*, 2016 WL

491483, at *11. First, the circumstances of its deletion are suspicious—Heimbach himself agreed

they were "odd[]," Ex. 1 at 136:19-42:22—and he cannot keep his stories straight about what

happened. At first, he blamed his current wife, Jessica, claiming she purposely deleted his Gab

account during an argument. *See supra* Background Section III.b. Yet he could not remember any

details about that argument. *Id*. He then conceded he was not certain she deleted the Gab account,

only that it was deleted at some point by someone. *Id*. Meanwhile, he acknowledged that Jessica

was aware he was involved in this litigation, and had notarized the interrogatory responses that

identified his Gab account as relevant. *Id*. So if she did delete the Gab account, she knew she was

tampering with relevant evidence. Second, Heimbach was cagey about the contents of the account.

He said that he "invested a lot of time in Gab." Ex. 1 at 137:5-13. But he claimed to remember

nothing about it, such as how he used it, the content he posted, or how many followers he had. *Id*.

at 133:14-37:17 (testifying he could not "recall a single post [I] ever posted on Gab . . . [b]esides

the ones you're showing me").

Plaintiffs were only able to recover a small fraction of the ESI from Heimbach's Gab account through additional discovery. The account was deleted and cannot be restored. *Id.* at 140:6-20, 149:11-25. Plaintiffs attempted to retrieve the ESI through independent searches and a third-party subpoena on Gab, but much of that ESI appears to still be missing. *See* Decl. of Michael Bloch, ¶¶ 4-8.

### D.     MatthewHeimbach VK Account

Heimbach's VK account also contained relevant content that he was required to preserve. *See Steves & Sons*, 327 F.R.D. at 107; Ex. 4; Ex. 1 at 115:17-16:9 (testifying he posted on VK commentary on this litigation). At a minimum, Heimbach failed to preserve anything from that account. *See Steves & Sons*, 327 F.R.D. at 108-09. Though he knew in early 2018 that it contained relevant ESI, *see* Ex. 4, he did not take steps to preserve it before it was deleted in April 2019. He did not forensically image the account, identify it for the third-party discovery vendor, or take screenshots of relevant posts. Ex. 1 121:20-22:17.

Of course, it is very likely that Heimbach intentionally caused his VK account to be deleted. The account was active at least as of February 2019, Ex. 8, and he admitted he "invested a lot of time and energy in social media and networking," including on VK, Ex. 1 at 117:15-24. Yet, as with his Gab account, he could not remember *any* content he posted, *id.* at 114:23-15:6, or whether he was friends with anyone connected to Unite the Right, *id.* at 111:20-25. And as with his Gab account, he claimed that Jessica—who knew he was a Defendant in this litigation, *see id.* at 117:25-19:16—deleted the account as recently as April 2019 because she was angry with him, but he could not recall any details of the argument that supposedly let to the deletion of that account, *id.* at 117:2-14. Further, Heimbach told no one that the account had been deleted, *id.* at 119:17-21:6, and made no effort to recover it, *id.* at 122:18-21.

Plaintiffs cannot obtain relevant ESI from Heimbach's VK account through additional

discovery. Heimbach believes it is not publicly available. *Id.* at 122:6-13. Plaintiffs attempted to retrieve it through independent searches, but those efforts have largely failed. *See* Decl. of Michael Bloch, ¶¶ 4-8.

### E.     MatthewHeimbach Daily Stormer Account

Although Heimbach never disclosed his DS account, *see, e.g.*, Ex. 4, Ex. 2, he has conceded he used it to post relevant content, Ex. 1 at 151:21-152:8, and he was obligated to preserve it as a result. *See Steves & Sons*, 327 F.R.D. at 107. This content was lost because of Heimbach's failure to satisfy that obligation. *See id.* at 108-09. He did not take "any steps at all to preserve the content of what [he] posted on [DS] about United the Right." Ex. 1 at 154:21-25. Plaintiffs are unable to recover it through additional discovery. Heimbach does not know whether he can log into his DS account, as the website has "changed formats several different times." *Id. at* 153:9-20; *see also id.* at 150:11-14. Though he offered to "check the Daily Stormer account . . . to see if there [is] any responsive content in relation to this case" "going forward, if it's still available," *id.* at 154:13-25, to date he has not done so. Despite Plaintiffs' attempts to obtain it through our own independent searches, much of it is still missing. *See* Decl. of Michael Bloch, ¶¶ 4-8.

### III.    Heimbach Sought to Deprive Plaintiffs of Relevant Evidence, Warranting Adverse Inferences Under Rule 37(e)(2) and the Court's Inherent Authority.

There can be no doubt that Heimbach acted with the intent to deprive Plaintiffs of discovery. This Court already found that he acted in bad faith by ignoring his discovery obligations throughout this litigation. Mem. Op. at 31. He had multiple opportunities during the lengthy discovery process in this case—during much of which he was represented—to preserve and produce the information that is now destroyed. He could have worked with his attorney or Plaintiffs to preserve and produce evidence appropriately. He could have complied with multiple Court Orders and identified relevant accounts and devices for the third-party vendor Plaintiffs provided

at their own expense. Yet he did none of that, while his relevant information was destroyed, by him and those around him, under suspicious circumstances. The reason is the most obvious one: that is what Heimbach intended to happen.

Heimbach's evasive testimony reinforces the conclusion that he intended to deprive Plaintiffs of relevant information. *See Internmatch, Inc.*, 2016 WL 491483, at *11. His claimed inability to recall basic facts during his deposition underscores his unwillingness to provide Plaintiffs with any information at all. Heimbach said he could "not recall" over *four hundred times* during his seven-hour deposition, averaging nearly one "I don't recall" per minute. His memory failed him on topics ranging from whether he had *ever* spoken to a close friend about anything relating to Charlottesville, Ex. 1 at 195:8-23, to whether he texted *anyone* anything in the entirety of 2018 concerning Charlottesville, *id.* at 310:5-11. He could recall neither very recent and relevant exchanges with former counsel, *see id.* at 338:6-25, nor recent and important personal events, including when he moved in with his new wife, *see id.* at 138:20-139:23. At one point, he agreed that his memory was "certainly not reliable," though he has no diagnosed medical condition and was aware of no other reason why he could not to testify truthfully and accurately. *Id.* at 14:3-12, 273:10-14. This purported total failure of Heimbach's short- and long-term memory evinces an intent to deprive Plaintiffs of relevant information. *See, e.g.*, *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 575-77, 584 (S.D.N.Y. 2017) (finding intent to deprive, in part, from deponent's claimed inability to "recall" her email deletion practices); *Brown v. Certain Underwriters at Lloyds, London*, No. 16-CV-02737, 2017 WL 2536419, at *3-4 (E.D. Pa. June 12, 2017 (finding "Plaintiff engaged in spoliation by failing to preserve his cell phone and the evidence contained therein" in part because Plaintiff's "account of losing his phone is not credible and that, rather than innocently losing his phone, Mr. Brown made a deliberate choice to withhold

23

it from production. . . .").

Heimbach's inconsistent testimony is part of a pattern of misleading, inaccurate responses that demonstrate his intent to purposely thwart Plaintiffs' discovery efforts. As noted above, his interrogatory responses failed to disclose at least five relevant social media accounts and at least one relevant cell phone. *See* Ex. 4. To date, Heimbach's discovery responses remain incorrect, despite at least two Court orders instructing him to be accurate. *See* ECF 515 at 2 (instructing Heimbach to "provide complete and accurate" documents); ECF 508 at 2-3 (same). He testified that his July 6, 2019, ESI Certification "listed at least two [social media] accounts that [he did] not believe have anything relevant, but [he] left off about ten accounts that do have responsive documents." Ex. 1 at 353:16-55:10; *see also id.* at 349:12-55:12 (testifying he "forgot" to list his VK, DS, PayPal, therightstuff.biz, Iron March, and Hatreon accounts—though he included two other accounts he believed were irrelevant, because he "thought better safe than sorry").

Heimbach repeatedly acknowledged he took no meaningful steps (and more often no steps at all) to identify and preserve relevant evidence. *See, e.g.*, *id.* at 371:5-73:8 (testifying he took no steps to preserve relevant documents or social media posts and never imaged a single electronic device). His purported attempt to "preserve" some devices and documents by putting them in an unlabeled, uncovered plastic tub makes no legal difference. In *O'Berry*, a defendant who printed out one hard copy version of critical ESI, allowed the ESI to be deleted, then ultimately lost the hard copy in an office move was held to have "acted with the intent to deprive Plaintiffs" of that evidence. *See* 2016 WL 1700403, at *1-2, *4. Even if one credits the plastic tub story, as in *O'Berry*, it was "simply irresponsible" for Heimbach to have left only one copy of all his relevant evidence in a tub that was not stored safely; he "should have made additional efforts to ensure the preservation of these materials." *Id.* At *4.

Heimbach's feigned ignorance about his discovery obligations could hardly ring more hollow. *See, e.g.*, ECF 527, at 1 ("Due to a lack of legal training and knowledge . . . Heimbach was unaware how to participate in these ongoing matters, what was expected, or how to proceed."); Ex. 1 at 368:22-71:2 (attributing his inaccurate interrogatory responses to a "breakdown of communication" with his lawyer)). His account of a well-meaning but unsophisticated litigant with a terrible memory strains credulity. And Heimbach was represented for much of discovery, so his claim that he is not a lawyer does not excuse his prolonged inability to comply with basic civil litigation demands. Heimbach "is solely responsible for his own behavior. [He] cannot pin the blame on [his] former counsel given that it was [his] own fail[ure] to communicate with [his] attorney that forced counsel to withdraw representation." Mem. Op. at 30 (citation omitted). Even Heimbach's former counsel informed the Court that Heimbach would "not participate" because "[h]e has made *a tactical decision* that he would rather just take a default and let that happen." ECF 504 at 24:14-16 (emphasis added). Heimbach's co-Defendant Chris Cantwell likewise noted, "Many of my codefendants blew off these proceedings to avoid finding themselves in this position, and perhaps they will be proven to have had the better idea." ECF 560 at 3.

Heimbach certainly has a reason to deprive Plaintiffs of critical evidence. Civil conspiracy is a central claim in this action. Depriving Plaintiffs of his "myriad communications, documents, and ESI that go to the heart of" that claim hinders Plaintiffs' ability to make our case against Heimbach and his co-conspirators. *See* Mem. Op. at 32-33. Thus, his failure to provide evidence is only to his and his co-Defendants' benefit. It would be the height of unfairness to allow Heimbach to destroy much of his evidence concerning the alleged conspiracy without allowing Plaintiffs a mechanism—namely, adverse inferences—to close that yawning evidentiary gap.

In sum, Heimbach has acted in bad faith for years and deprived Plaintiffs of much of the

material information he once possessed about the Events. He utterly failed to preserve and produce relevant evidence. He took little and often no action while those closest to him allegedly intentionally deleted his most relevant ESI and threw away his most relevant documents and devices. After this vast amount of evidence was destroyed, he did little to nothing to restore any of it. Then, in his deposition, he tried to cover up his scheme by denying any recollection of even the most basic and recent facts. "Such irresponsible and shiftless behavior can only lead to one conclusion"—that Heimbach "acted with the intent to deprive Plaintiff[s] of the use of this information at trial." *O'Berry*, 2016 WL 1700403, at *4; *see also Victor Stanley*, 269 F.R.D. at 502, 531 (finding intent to deprive where "[f]or years, [Defendant] engaged in a cat and mouse game to hide harmful ESI from production during discovery, repeatedly trying to stall or prevent [Plaintiff] from discovering evidence").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for sanctions and impose mandatory adverse inferences at trial that Heimbach intentionally spoliated his Android and BV 800 Pro cell phones, his laptop, his Gab, VK, and DS social media accounts, and hard copy documents, and that he did so because he was aware that each device, account, and document contained damaging information against Heimbach relating to Plaintiff's claims.[9]

---

[9] Heimbach also remains noncompliant with multiple Court orders. He still has not produced (1) an SCA consent for his @HeimbachMatthew Twitter account, (2) complete and accurate written answers to Plaintiffs' First Set of Interrogatories, or (3) an accurate ESI Certification. *See supra* Background Section II. These failures—which are sanctionable with adverse inferences in themselves, *see* Fed. R. Civ. P. 37(b)(2)(A)—underscore the need for serious, trial-related sanctions.

Date: August 12, 2021

Respectfully submitted,

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

*Counsel for Plaintiffs*

Of Counsel:

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor New
York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, and Nationalist Front*

I hereby certify that on August 12, 2021, I also served the following non-ECF participants via mail and electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Matthew Heimbach
matthew.w.heimbach@gmail.com

Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP

Counsel for Plaintiffs