UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, THOMAS BAKER and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | **Civil Action No. 3:17-cv-00072-NKM** |

**DECLARATION OF MICHAEL L. BLOCH**

I, Michael L. Bloch, on this 12th day of August, 2021, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am Counsel at the law firm Kaplan, Hecker & Fink LLP ("KHF"), one of the law firms representing the Plaintiffs in this action.

2. I am a member in good standing of the Washington, D.C. and New York State Bars. I am also admitted to practice before the U.S. District Court for the Southern District of New York. I have been admitted to appear *pro hac vice* before this Court for and on behalf of the Plaintiffs in the above-captioned action.

3. I submit this Declaration in support of Plaintiffs' Motion for Sanctions Against Defendant Matthew Heimbach. ECF 457, 539, 1005. Except to the extent otherwise expressly indicated, I have personal knowledge of the matters set forth in this Declaration.

I. **Attempts to Obtain Relevant ESI from Heimbach's Deleted Social Media Accounts**

4. I am informed by KHF staff with whom I worked on Plaintiffs' Motion for Sanctions Against Defendant Matthew Heimbach that Plaintiffs attempted to recover relevant ESI[1] from Heimbach's deleted @MatthewWHeimbach Gab account, MatthewHeimbach VK account, and MatthewHeimbach DS account (collectively, the "Content") through various means.

5. I am informed that staff at KHF searched the internet for any available Content using the following processes:

    a. <u>Internet Archival Searches:</u> Each Gab, and VK account handle was entered into the search engine of the internet archival services Archive.org, The WayBack Machine, and Archive.is. All Content recovered was saved for review. However, I am informed that these

---

[1] All abbreviations and short form citations in this Declaration share the same meaning as set out in Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Sanctions Against Defendant Matthew Heimbach, ECF 1005.

1

internet archival services do not provide a complete record of the social media platforms they archive. Instead, they take periodic snapshots of the platforms. If any data is posted to and deleted from the platform between two snapshots, that data is not archived. Nor is any metadata retained on these platforms.

        b.    <u>Reverse-Image Searches:</u> The profile pictures contained in the Gab and VK Content KHF found using the internet archival services were run through reverse-image search engines on Google, Tineye, and Yandex. I am informed that such a reverse-image search could potentially locate screenshots of Content taken by third parties and reposted elsewhere online. However, third-party screenshots of posts to a social media platform are imperfect: by their nature, they do not capture metadata and embedded video or audio data from the underlying post. All Content recovered through these reverse-image searches was saved for review.

        c.    <u>Web Crawls:</u> Lastly, for Gab and VK, KHF staff used a web crawler,[2] Octoparse, to search for mentions of Heimbach on each platform. Octoparse can only locate information that is publicly available. All Content recovered through these web crawls was saved for review.

        d.    <u>TOR Hidden Service Searches:</u> Because DS is hosted on a TOR Hidden Service, for security reasons, KHF staff undertook a different process to search for DS Content. A KHF staff member installed TOR in order to access the DS forum, then searched the forum for all posts made by the account @MatthewHeimbach and collected any results for review. However, DS apparently removed several functions from its forum, including private messaging and public-

---

[2] I am informed that a web crawler is a program that iteratively and automatically accesses all pages from a website (with some exceptions, including any pages that require authentication) and returns any pages that hit on a specified search.

2

facing profile pages, on October 28, 2018. KHF's searches thus could not recover any of this Content from Heimbach's DS account.

6. I am informed that staff at KHF also searched all document productions by parties to this litigation and by subpoenaed third parties:

a. Staff searched for documents containing "MatthewHeimbach" or "@MatthewHeimbach." I am informed that this returned 671 results, only one of which contained a screenshot of Content Heimbach posted to VK on July 20, 2017 and one of which indicated that Heimbach had accepted a friend request from the League of the South's VK account on August 24, 2017, and one of which contained a screenshot of Content Heimbach posted to DS on an unknown date. The first and third of these documents were produced by co-Defendant Jason Kessler. The second was produced by co-Defendant League of the South. The other documents containing Heimbach's VK or DS Content that hit on this search were located by Plaintiffs through the independent searches above.

b. Staff searched for documents containing "@MatthewWHeimbach." This returned 177 results, only one of which contained the text of a repost by Heimbach on December 13, 2017, of an Occidental Dissent's post, one of which indicated that Heimbach started following the League of the South Gab account on September 9, 2017, and one of which indicated that Heimbach started following Matthew Parrott's Gab account on August 31, 2017. The first two of these documents were produced by co-Defendant League of the South, and the third was produced by co-Defendant Matthew Parrott. The other documents containing Heimbach's Gab Content that hit on this search were located by Plaintiffs through the independent searches above.

7. Plaintiffs also attempted to subpoena certain social media platforms to obtain Heimbach's Content.

3

      a.      Plaintiffs subpoenaed Gab for Heimbach's Content, among other things, on January 3, 2019. Gab would not agree to produce any Content from Heimbach's Gab account, in part objecting to Plaintiffs' request on the basis of the Stored Communications Act.

8.      I am informed that Plaintiffs' efforts to recover all deleted Content from Heimbach's Gab, VK, and DS accounts were unsuccessful. Some Content is still missing.

      a.      For the @MatthewWHeimbach Gab account, Plaintiffs recovered third-party screenshots of 49 posts by Heimbach, from October 20 and December 3, 2017 and unknown other dates. But Heimbach posted at least 1,005 times to his Gab account. *See* Ex. 16. Further, these third-party screenshots do not provide all data and metadata from Heimbach's underlying post; for example, they often do not show the date of the post, which users liked or replied to the post, or any replies Heimbach posted in response. Plaintiffs also could not recover Content from Heimbach's Gab account that was never accessible to the public, such as direct messages.

      b.      For the MatthewHeimbach VK account, Plaintiffs recovered 14 posts by third parties re-posting Heimbach Content and two Heimbach replies to third-party posts, dated August 20, 2017, and September 16 through December 2, 2018. Plaintiffs also recovered screenshots of stray posts from November 25, 2018 through February 16, 2019. However, Plaintiffs were informed by a third party that monitored the account that it was deleted on April 24, 2019. Plaintiffs did not recover Content from the account between August 21, 2017 and September 16, 2018, or February 16 through April 24, 2019. Nor did Plaintiffs recover Content that was never accessible to the public, such as direct messages. *See, e.g.*, Ex. 1 at 122:10-13 (indicating Heimbach used VK to send private messages). Further, the third-party reposts and screenshots do not provide all data from Heimbach's underlying post; for example, they often do not show how many or which users liked or viewed the post.

4

    c. For the MatthewHeimbach Daily Stormer account, Plaintiffs recovered 15 posts by Heimbach from July 2016 to February 2018. However, Plaintiffs' searches did not recover any posts Heimbach "liked." Some embedded data, including images or videos, from threads Heimbach participated in is also lost. As noted above, Plaintiffs could not recover Content from Heimbach's since-deleted profile page—which would have included information on how long his account had existed, how recently he had posted, how many posts he wrote, how many likes he received, and how many days he visited the website—as well as any private messages he sent or received. There may be additional Content still saved on the website's forum that Plaintiffs' searches did not uncover.

**II. Attempts to Obtain Relevant ESI from Heimbach's Discarded Devices**

  9. Plaintiffs attempted to recover any surviving, relevant ESI sent to or from Heimbach's discarded Android and Blackview BV 800 Pro cell phones through various means.

  10. I am informed that staff at KHF searched all productions by parties to this litigation and by subpoenaed third parties for documents containing the last seven digits of Heimbach's phone number. This returned 474 results as of June 1, 2020. The search revealed some – but not necessarily all – text messages between Heimbach and co-Defendant Jason Kessler, Heimbach and co-Defendant Chris Cantwell, and Heimbach and co-Defendant Kline.

  11. Plaintiffs subpoenaed Heimbach's cell phone providers, AT&T and Verizon, on June 25 and July 5, 2019, respectively, for data they maintained relating to Heimbach's cell phone usage. However, neither provider collects and stores the substantive content from its customer's cell phones such as text messages, photos, or notes.

  12. Plaintiffs' efforts to recover all relevant ESI from Heimbach's cell phones were unsuccessful. Some relevant ESI is still missing.

5

13. Heimbach testified that he did not use any system to back up data from his cell phones. Thus any relevant data he saved to the devices locally, such as notes or photos, are now permanently lost.

14. Many of Heimbach's relevant texts are also permanently lost.

15. Heimbach testified that he exchanged relevant texts with co-Defendants Matthew Parrott, Ex. 1 at 64:10-12, and Jeff Schoep, *id.* at 68:21-25, and he claimed he could not recall whether he also exchanged relevant texts with co-Defendants Richard Spencer, *id.* at 70:8-13, Michael Hill, *id.* at 73:10-15, and Michael Tubbs, *id.* at 73:20-23.

16. Documents Plaintiffs obtained via third-party subpoena on T-Mobile for Tubbs' phone records show that Heimbach texted with Tubbs at least in August 2017. *See* Ex. 17 at 14 (showing texts exchanged with Heimbach's phone number).

17. I am informed that Plaintiffs have no texts exchanged between Heimbach and co-Defendants Parrott, Schoep, Spencer, Hill, and Tubbs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 12, 2021
New York, New York

Michael L. Bloch