Exhibit – A

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
255 WEST MAIN STREET
ROOM 304
CHARLOTTESVILLE, VIRGINIA 22902

OFFICIAL BUSINESS

RICHMOND VA 230
17 AUG 2021 PM 5 1

Mail to be Opened in
Presence of Inmate

LEGAL MAIL

$0.51 0
US POSTAGE
FIRST-CLASS
062S001126323 4
22902

B18171.08

United States District Court for
the Western District of Virginia
Charlottesville Division
Civil Case NO. 3:17-CV-000

Sines et al Plaintiffs.

Kessler et al Defendants

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

08/18/2021

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
    DEPUTY CLERK

Defendants Motion Requesting Transport
for Trial of Incarcerated
Defendant Christopher Cantwell

Today is August 17th, and I have
just received Judge Moon's August
6th Order stating that if I wish
to be transported for trial, I must
file a motion requesting so by
August 11th at noon.

The Envelope the order was delivered
to me in was postmarked August
12th. See Exhibit A

Judge Moon's permission to let
me file electronically is thus of limited
utility in meeting the deadline, since
the deadline expired before I got
word of the order.

For these reasons, I respectfully
request this late response be accepted,
and since I am rushed
by the aforementioned
circumstances, I request
that if this  > Next Page



motion is in any way deficient, that I be granted a reasonable amount of time to correct any such deficiencies. I am writing this rushed reply without doing any research because I have only received the order 6 days after my answer was due. Even the order only gave 50 days from its issue, and I understand it customary to allow two weeks.

This sadly fits a pattern I have repeatedly complained about with Plaintiffs' counsel, now emulated in the behavior of the court itself. If the court or the Plaintiffs do not want my input, I'll be glad to be dismissed from this suit. If the aforementioned team mates insist on my continued involvement, then the only way to even pretend this process has any legitimacy, is to make sure correspondence is sent to me in a timely, honest, and reliable manner I can actually be expected to receive, and then allow enough time for me to respond. Thus far the Plaintiffs have made precisely zero effort to meet this obligation during my incarceration. They left me completely in the dark for fourteen months, and after they got caught, claimed it was an accident caused by four law firms working on the case. This failed to explain the behavior of Michael Bloch and Roberta Kaplan themselves, but holes



in the Plaintiffs stories have become a fairly standard feature in these proceedings and are conveniently ignored by the Court. Subsequently, two new pro hac vice motions were granted, as if Mr. Bloch had not just presented a "too many cooks in the kitchen" defense.

I objected to Plaintiffs' proposed timeline in June, due in part to having received it after their self imposed deadline for response ~~had~~ had expired.

In my August 11th letter to the court, I noted that I was left out of a conference call in this case, in clear contradiction of Judge Hoppe's order.

These issues are raised not only to excuse my late filing, but as examples of why I should be present for trial. There is a demonstrated pattern of me being excluded from vital parts of this process for as long as circumstances have made it possible, and this pattern continues even now, by the Court's own hand. I cannot have confidence in this process with the variables a remote link will introduce. The Court and the Plaintiffs both treat my participation as optional unless they want something from me.



Generally, any witness in this case should be in the courtroom if any potential for their testimony to be contradicted exists. Witness credibility will be key to this case, especially given Plaintiffs' supposed "experts" who will make absurd claims about coded messages inherent in "White Supremacist" humor. The jury will need to make judgement calls about who to believe, and facial expressions, body language, and other non-verbal cues will play a role in making those judgements. Witnesses themselves are ~~little~~ more likely to physically manifest signs of deception if they lie in a courtroom than if they lie to a distant camera, and a jury can be reasonably expected to infer this, granting a potentially unfair advantage to witnesses who are present over witnesses who are distant, or vice versa. Given the media coverage and political climate surrounding this case, the Defendants can be expected to "lose every coin toss" due to unfair prejudices which will precede a decision on this motion. I must have the opportunity to confront witnesses against me, and to present myself fully and transparently to the jury.

P5/12

The Albemarle Charlottesville Regional Jail is quite capable of housing Defendants Cantwell and Fields, as they ~~have~~ capably demonstrated during our months of residency. Local authorities likewise proved capable of transporting us to our court dates, and there is no reason to doubt equal or superior capacity by the U.S. Marshalls. To the extent any security concerns may exist, they were raised as cause for change of venue by Defendants, and unceremoniously disregarded as unworthy of consideration by the Court and the Plaintiffs.

Unlike the case of Defendant Fields, this case could conceivably be continued until after my release, which is currently scheduled for December of 2022. This date means I should be on home confinement or a halfway house by August of 2022, at which point I could provide my own lodging and transportation. This case is an obvious fraud which has continued for too long already. It is overdue that we ~~put to~~ end this charade and see the Plaintiffs' bad faith exposed in open court. I am not asking for a continuance, but inability to wait cannot weigh against my being transported, because the possibility exists.



Transportation for trial provides no undue benefit to Defendant Cantwell outside of these proceedings. At USP Marion I have the property I have accumulated, access to the commissary, access to electronic messaging, and what passes for friends in prison. After I return from being transported, I will have lost my cell assignment, my reserved phone and telephone times, and I will have to spend two weeks in quarantine with no fan, no air conditioning, and no extra food beyond provided meals. All else equal, I would far prefer ✗NOT✗ to be transported for this or any other purpose. The only reason I seek to be transported is because I am being forced to participate against my will, and I wish to avoid being unfairly prejudiced in this already unfair process.

At some point, the Democrat Party will have to find something they cannot blame on COVID-19. Delta variant or none. This case seems as good a candidate as any. I have already had COVID-19, as Strafford County D.O.C. can confirm, and am thus endowed with immunity superior to that of vaccination. I will gladly consent to taking hydroxychloroquine as prophylaxis if the court desires. COVID did not prevent me from being punt

on trial in New Hampshire. It did not prevent me from being transported to a privately owned correctional facility in Tallahatchie, MS. It did not prevent my transport to U.S.P. Marion. If the government wanted me to appear somewhere, COVID would not suffice as an objection by me. If the Plaintiffs wanted me to be present, no serious person doubts their request would be granted by this Court. Their desire to continue decieving this Court, the jury, and the public ought not be granted the chance to hide ~~behind~~ behind COVID-19.

Plaintiffs' objection to Defendant Fields's presence on the grounds he may attempt to argue he has been punished enough does not apply to me because I have not been convicted of any crime pertaining to the Plaintiffs' ~~allegations~~ allegations. I would far prefer my incarceration not be disclosed to the jury, and intend to file motions in limine to prevent the Plaintiffs from distracting the jury with such irrelevant and prejudicial detail.

Plaintiffs' objection to Fields's being transported on the grounds that he refused deposition does not apply to me because I have complied with the deposition and other court orders.

P 8/12

I have not had the chance to conduct depositions or discovery because the Plaintiffs' misconduct prevented me from knowing what was going on in this case until after the discovery deadlines had expired. My request to have the discovery deadlines extended was ignored. My motion to sanction Plaintiffs for this misconduct was denied. My objection to the future timeline was overruled. My only chance to confront witnesses will be at trial, and video link hinders this process unfairly. Plaintiffs understand the benefits of questioning witnesses in person, as evidenced by Plaintiffs' counsel Michael Bloch travelling from New York to Illinois to depose me in person.

At the time of this writing, I have just been informed by Case Manager Simpkins that U.S.P. Marion lacks the technological capacity to allow me to play videos and show images and documents and present other digital evidence at the August 20th settlement conference, per Judge Hoppes order. It is impossible to imagine this trial proceding in a credible manner absent this capacity. The Plaintiffs' false claims are quickly disproven by video and photo evidence, and any hindrance of this capacity will unduly prejudice all defendants in this case.

On the subject of visual evidence, its close examination is vital to this case, and a remote Defendant cannot conceivably have equal benefit of this to those present. The brightness and placement of the screen may impact how the jury sees subtle details in very busy fast moving video, taken, sometimes, in poor lighting conditions, or with low quality equipment. A remote defendant is meaningfully disadvantaged if he cannot see what the jury sees first hand. Some video relevant to this case is edited deceptively by biased media outlets and Plaintiffs' co-conspirators, and any disparity in visibility between the Defendant and the jury would prove unfairly beneficial to the Plaintiffs' deceptions.

Defendant Cantwell is not housed in a common correctional setting. The Communication Management Unit—CMU—presents unique challenges which may be unpredictable. As a noteworthy example of this units unusual behavior, the Court has been stamping mail sent to me with the instruction "Legal Mail—Mail to be opened in Presence of Inmate". Despite the envelope's clear indication that it comes from a Federal Coy'lt, the CMU staff routinely ignore this Court's instructions by unsealing and inspecting the mail outside of my presence, handing me the unsealed parcel days later.

p 10/12

The CMU is operated by the Counter Terrorism Unit -CTU- and under the guise of countering terrorism, routinely engages in bizarre acts of deception, and censorship of communications. They behave more as espionage than law enforcement, and cannot be trusted not to interfere in this trial. As a few examples, newspapers are routinely held back for up to a week or more. Staff have lied to me and other inmates claiming not to have recieved outside correspondence by mail, and have continue these false denials after the sender has repeatedly re-sent the correspondence. It took over a week for my contact with this court to be approved for printing of mailing labels. Were I to go beyond what I can personally confirm and repeat stories told by other inmates, this filing would quickly exceed my supplies of ink and paper. For more than two months I have been unable to purchase a "typing wheel" necessary for using the typewriter, hence my abominable penmanship. The copy machine, which charges $0.15/page is routinely out of paper, and I am not alone in suspecting these deficiencies are intentional means of putting their thumbs on the scales of pro se litigation by inmates who rightly and routinely claim that our rights are being violated in this secretive prison within a prison. Three inmates are currently on hunger strike, and are



being force fed as a result. At least two inmates have pro se litigation in process at the time of this writing against this facility. Several others are at various stages of administrative procedure, which is ordinarily a prerequisite of litigation.

These reasons, though legally sufficient, are not factually exhaustive. Time pressure created by untimely delivery of the court's order, and my incapacity to file electronically, have forced me to rush this motion to include only the facts and arguments I can jot down off the top of my head in a day. If the court deems this motion insufficient, I would request time to correct deficiencies, cite caselaw, and provide sworn declarations and other evidence.

To the extent applicable I hereby incorporate the arguments offered by Defendant Fields for his transportation, and note that if I am to be transported, the logistics of my transportation need not be multiplied to facilitate the transport of Defendant Fields.

In conclusion, I must be transported for this trial. If the Plaintiffs prevail over law and fact it will be because the process was unfair, and failure to facilitate my presence will be grounds for appeal.

Video link presents challenges which are unique to this case, and other challenges which are unique to Defendant Cantwell. Facilitating my presence, though a nominal burden on the taxpayer, cannot concievably provide the Plaintiffs with any grounds for objection, beyond their justified perception that they would gain unfair ~~advantage in~~ advantage in this case thereby.

Should such an objection be raised, the Court and the public should take note of its obviously illegitimate motives.

Transport ~~me~~ or dismiss me, please.

Respectfully Submitted
Christopher Cantwell

C Cantwell  8-17-2021