## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

---

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUNIZ, MARCUS
MARTIN, NATALIE ROMERO, CHELSEA
ALVARADO, JOHN DOE, and THOMAS
BAKER,

                              Plaintiffs,

v.

  JASON KESSLER, et al.,

                            Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

---

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT JAMES ALEX FIELDS, JR.

## ARGUMENT

Without citing a single rule, statute or case to support his opposition to sanctions, Fields argues his misconduct should be excused entirely.  Fields concedes that he knowingly violated the Court's order directing him to sign an SCA consent, admits he refused to testify in a court-ordered deposition recorded and under oath, and does not deny that he failed and refused to provide other relevant discovery, in some cases asserting the Fifth Amendment.  Nevertheless, he characterizes these refusals and failures as either irrelevant or justified.

None of Fields's arguments hold water.  The simple facts remain that Fields has almost entirely failed to provide discovery, much of which was specifically ordered by the Court and all of which was proper and relevant; that this failure—unless remedied—will prejudice Plaintiffs' ability to present their case; and that the relief requested is necessary and proportional to the discovery misconduct and the needs of the case.

The remedies requested are well supported by the law and the facts, and Plaintiffs respectfully request that the Court grant their Motion.

## I.     PLAINTIFFS ARE ENTITLED TO DISCOVERY SANCTIONS.

### A.     Fields Admits He Knowingly Violated Court Orders and Refused to Provide Discovery.

Fields's Opposition attempts to rewrite history.  Fields erroneously claims he "timely answered Plaintiff's First and Second Interrogatories and Requests for Production of Documents." ECF 1022 ("Opposition" or "Opp'n"), p. 3.  The deadline to respond to Plaintiffs' first set of document requests and interrogatories was February 26, 2018.  ECF 1003 ("Motion" or "Mot."), p. 3.  Fields missed that deadline by nearly three months.  *Id*.  And even then his responses were so deficient Plaintiffs had to file a motion to compel, and the Court ordered him to correct them. Mot., pp. 4-5; ECF 759.  As for the second set of interrogatories, Fields again responded months

late and served incomplete answers that were unsworn and unsigned.  Mot., p. 3.  Again, the Court

had to order him to serve complete responses.  Mot., pp. 4-5; ECF 759.

Fields concedes he violated the Court's June 2020 Order.  He admits he refused to provide

an SCA consent as ordered by the Court, Opp'n, p. 3, and does not dispute that he refused to

instruct his criminal attorneys to provide Plaintiffs with discoverable information in their

possession.  He offers no excuse for his violations, nor can he.

Fields suggests he did not violate the Court's March 3, 2021 Order because, according to

Fields, he has not refused to sit for an "in-person" deposition and has only refused to participate

in a remote deposition.  Opp'n, pp. 4-5.  As this argument illustrates, Fields continues to move

the goalposts regarding how and whether he will participate in discovery.  Since Plaintiffs first

noticed Fields's deposition a year ago, his story has changed repeatedly regarding whether,

when, and under what terms he would sit for a deposition.  Plaintiffs assented to Fields's

repeated requests to postpone his deposition, pushing it a total of six months from the initial date

for which it was noticed.  *See Exhibits 10-12.*[1]  At this time, Fields never mentioned that he had

concerns about being deposed remotely.  Finally, six months after Plaintiffs noticed his

deposition, Fields filed a motion to stay the deposition (not to quash, as he claims), stating that

he refused to testify.  ECF 926.  It was not until Fields's counsel represented that Fields would

not testify that Plaintiffs cancelled their noticed deposition.  ECF 927, p. 1 ("Plaintiffs' counsel is

suspending the deposition of Defendant Fields based on counsel's representation to avoid

unnecessary cost and inconvenience to many parties, without waiving the right to seek

---

[1] Unless otherwise noted, all referenced exhibits are attached to Plaintiffs' Motion for Sanctions
Against Defendant James Alex Fields, Jr., ECF 1003.

appropriate sanctions, and has so informed Defendant Fields' counsel."). Plaintiffs have not rescheduled as Fields's counsel suggests because Field's Motion to Stay made it clear that any attempt to depose him would be futile.

Counsel for Fields now gamely tries to cure Fields's refusal by suggesting that Plaintiffs should "attempt" again to depose Fields in person, even though Fields has previously refused to testify at all and still flatly refuses to testify if it is recorded. This argument fails for multiple reasons.

*First*, requiring Plaintiffs' counsel and all the other personnel required to conduct an in-person deposition to travel across the country to "attempt" to depose Fields—even if there were reason to believe he would testify (which there is not)—would be an additional and monumental waste of time and resources. It would also present substantial health risks that cannot be justified, an issue Fields's counsel has not attempted to address. COVID persists as a worldwide risk, and infection rates are actually increasing with the latest variant, including in Missouri. *E.g.*, *Exhibit 25,* https://www.stltoday.com/lifestyles/health-med-fit/coronavirus/southeast-missouri-seeing-big-uptick-in-covid-19-cases/article_7bc45cbf-4e82-51c3-8b5c-eb80ff3e72ad.html (attached hereto). Counsel, staff and others should not have to risk their health on a gamble that Fields will suddenly decide—contrary to all his prior conduct—that he will comply with a Court order to provide testimony, recorded under oath, when he repeatedly violated the Court's discovery orders and flatly refused to testify in a video deposition.

*Second,* even if Plaintiffs attempt (again) to depose Fields, this time in person, there is *still* no reason to believe Fields actually would testify. Fields already flatly refuses to be

3

recorded, sought to "stay" his deposition in its entirety, and previously refused to be sworn in during a deposition in another case related to his car attack. *See* Mot., pp. 7-8.  Indeed, even his counsel cannot represent Fields will testify, which is why he can only suggest Plaintiffs should "*attempt*" to take the deposition.

And there should be no question that Plaintiffs are entitled to record the deposition.  The Federal Rules of Civil Procedure plainly provide that Plaintiffs may do so.  *See* Fed. R. Civ. P. 30(b)(3)(A) ("testimony may be recorded by audio, audiovisual, or stenographic means").  Of course, video recording deposition testimony plays a critical role at trial, including for impeachment so a jury can see and hear the deponent and assess his credibility.  For this reason, "a party noticing a deposition has no burden to justify the decision to videotape the deposition." *See Rowley v. City of N. Myrtle Beach*, 2008 WL 11348728, at *4 (D.S.C. 2008) (internal quotations omitted).  Fields does not explain how being recorded during an in-person deposition will be any different than being recorded during a remote deposition.  And Plaintiffs are not required to relinquish their rights to such evidence merely because Fields does not want his testimony videotaped.  As this Court has already cautioned in this case: The Court "expect[s] that everyone will play by the same rules on as level a field as is reasonably possible," and "[l]awyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won."  ECF 936., p. 2 (internal citation omitted).

*Third*, even if Plaintiffs were to "attempt" to depose Fields in-person in Missouri, if and when he refuses to testify, invokes the Fifth Amendment, or refuses to be sworn in (as he did in his last deposition "attempt"), Plaintiffs will have no remedy.  Fields is incarcerated.  He has ignored and violated several Court discovery orders—including an order that he be deposed.

4

There is little the Court can do to ensure compliance or compensation for Plaintiffs' wasted time and resources.

*Fourth*, a deposition now would be too little too late. Plaintiffs have attempted to depose Fields several times already. It is more than a year after the close of discovery and just weeks before trial begins. Neither Plaintiffs nor the Court should give Fields a *fourth* chance to comply with his obligation to testify in a deposition. Fields has had multiple opportunities to comply and has elected not to do so. Plaintiffs are now preparing for trial.

Fields also argues that asserting the Fifth Amendment is not a "refusal to answer." Opp'n, p. 2 ("Fields asserting his constitutional right cannot be fairly characterized as a refusal to answer interrogatories or requests for admission."). This misses the point. As described in the Motion, of course Fields may elect to assert the Fifth Amendment, but that has evidentiary consequences in a civil case. Mot., pp. 20-24. When this occurs, "the court may fashion an appropriate remedy to level the playing field." *Varner v. Roane*, 2018 WL 3244108, at *4 (W.D. Va. July 3, 2018). Here, the remedy requested in the Motion is fair and appropriate. *See* Mot., pp. 20-24.[2]

Lastly, Fields suggests the Motion is simply a rehash of an earlier motion to compel and request for sanctions. Opp'n, pp. 1-3, 5-6. That is simply incorrect. Plaintiffs' previous motion sought to compel Fields to answer interrogatories, produce documents, and supplement his deficient discovery responses and sought sanctions based on Fields's destruction of evidence. ECF 671. The Court ordered Fields to produce discovery but denied sanctions *at that time*

---

[2] Fields argues that because he is incarcerated and lacks access to his documents, computer, or phone, he had limited ability to provide discovery. Opp'n, pp. 3-4. That, too, misses the point. An SCA consent and deposition are two types of discovery Fields *could have* provided—but he refused to provide them despite Court orders directing him to do so.

because he had not yet violated a Court order.  ECF 759.  After that ruling, however, Fields has intentionally violated two Court orders: (1) by refusing to sign the SCA consents and to instruct his criminal attorneys to release his documents, *see id.*; and (2) by refusing to testify at a deposition, *see* ECF 829.  Naturally, the present Motion seeks sanctions as result of Fields's *subsequent* discovery misconduct and refusal to comply with Court orders.  The two motions address sanctions on separate grounds and for separate misconduct.

**B.     Fields's Discovery Violations Substantially Prejudice Plaintiffs.**

Fields claims his refusal to provide an SCA consent did not prejudice Plaintiffs because they ultimately obtained documents from the DOJ and Fields's criminal counsel.  Opp'n, pp. 3-4.  This ignores the facts and law.

Prejudice can be substantive when a party is limited by what it can obtain as evidence, or procedural when it disadvantages a party by causing delay and distraction.  *See First Mariner Bank v. Resolution Law Grp.*, 2013 WL 5797381, at *10 (D. Md. Oct. 24, 2013); *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998).  As Plaintiffs have explained, Fields's misconduct caused both forms of prejudice here.

Fields's refusal to give an SCA consent caused substantive prejudice because it limited Plaintiffs' ability to obtain complete discovery of Fields's social media and email accounts.  While Plaintiffs obtained *some* of this evidence from the DOJ and Fields's criminal counsel, it was not comprehensive.  Crucially, Plaintiffs were not able to access any of the documents they obtained from their source—they did not receive access to Fields's phone, computer or social media accounts.  Rather, Plaintiffs received documents that the DOJ, the City of Charlottesville and Fields's defense attorneys collected as evidence to support claims that are different from the claims

6

in this case.  In fact, Plaintiffs do not even know the extent of what they are missing because the government only agreed to produce a select set of documents.

Fields's refusal to give SCA consents also caused procedural prejudice, because it forced Plaintiffs into protracted, expensive, and time-consuming litigation with both the DOJ and Fields's criminal counsel—which included multiple hearing and motions litigating objections and motions to quash.  *See* Mot., pp. 5-6.  This redirected resources Plaintiffs otherwise could have used to prosecute their case.

Fields also claims Plaintiffs were not prejudiced by his refusal to testify.  Opp'n, pp. 2-5. This hardly merits a response.  Plainly, a party suffers substantial prejudice when deprived of the opposing party's deposition testimony.  Depositions provide critical discovery and potential evidence at trial to which all litigants are entitled.  *Butler v. DirectSat USA, LLC*, 2013 WL 6629240, at *1 (D. Md. Dec. 16, 2013) ("depositions are important elements of discovery; a defendant would be hard-pressed to conduct its case without them"); *Pruitt v. Bank of Am., N.A.*, 2016 WL 7033972, at *2 (D. Md. Dec. 2, 2016) ("failure to attend a deposition can derail the discovery process").  *See also generally* Fed. R. Civ. P. 30.  Fields's refusal has caused both substantive prejudice (deprived Plaintiffs of evidence), and procedural prejudice (requiring litigation ad nauseum).[3]

Sanctions are imposed not only based on prejudice, but also based on bad faith, i.e., the need to deter similar non-compliance when less drastic sanctions would be ineffective.

---

[3] Plaintiffs have noticed Fields's deposition three times, filed a motion for leave to take his deposition (ECF 820), responded to Fields's motion to stay (ECF 926), and negotiated repeatedly with Fields's counsel, including granting multiple extensions, about a deposition that never took place.  *See* Mot., p. 7.

*Anderson*, 155 F.3d at 504 (internal citation omitted); *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc) (same).  Fields focuses his opposition only on whether Plaintiffs have suffered prejudiced.  Prejudice, although ample here, is neither the only nor the decisive factor when a court is determining whether to issue sanctions.  *First Mariner Bank*, 2013 WL 5797381, at *4 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)).  Indeed, a key purpose of sanctions is "to punish deliberate noncompliance with the federal rules of discovery and to deter such conduct in the future." *LaFleur v. Dollar Tree Stores, Inc*., 2013 WL 12181782, at *2 (E.D. Va. Oct. 7, 2013) (citations omitted).   Tellingly, nowhere in Fields's Opposition does he deny that he violated the Court's orders in bad faith, that there is no need to deter non-compliance, or that some lesser sanction is appropriate.

## II.   PLAINTIFFS ARE ENTITLED TO A REMEDY FOR FIELDS'S ASSERTION OF THE FIFTH AMENDMENT.

### A.   Fields's Assertion of the Fifth Amendment.

It is inaccurate to characterize the Motion as seeking sanctions for Fields's assertion of the Fifth Amendment.[4]  Opp'n, p. 4.  The Motion asks the Court to impose an adverse inference and, in some cases, to rule that facts be taken as established as a remedy for the assertion of the Fifth Amendment.  Mot., pp. 20-22.  But while the remedy resembles a discovery sanction, it has a separate and independent legal basis.  *See id.*

---

[4] Fields does not dispute that he had no right to assert the Fifth Amendment in response to interrogatories that asked him for statements he made to law enforcement.  *See* Mot., p. 22 (explaining a party has no Fifth Amendment right to withhold communications with law enforcement).  Thus, the Court may grant remedies for that refusal alone.  *See* Mot., pp. 20-24.

8

Fields asserted the Fifth Amendment in response to requests for admission, and he does not dispute that "[i]n a civil proceeding, a fact-finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). Nor does he dispute that the Court "may fashion an appropriate remedy to level the playing field where a [party] refuses on Fifth Amendment grounds to provide discovery on matters relevant to the issues in the lawsuit." *Varner*, 2018 WL 3244108, at *4. Thus, it is undisputed the Court should grant a remedy for Fields's invocation of the Fifth Amendment.

### B.     Prejudice to Plaintiffs.

Fields does not contest that his assertion of the Fifth Amendment has prejudiced Plaintiffs. And the prejudice is obvious. Being deprived of discovery is "unduly disadvantage[ous]" to the party seeking discovery. *Varner*, 2018 WL 3244108, at *4. This is particularly true here, where Fields invoked the Fifth Amendment to avoid answering discovery on key facts, including details of the car attack and the motivation and intent behind the attack; injury he caused to Plaintiffs; and whether he has espoused violence against African Americans, Jewish people and members of groups he perceives to be non-white. *See* Mot., p. 23.

### III.   PLAINTIFFS ARE ENTITLED TO THE SANCTIONS AND REMEDIES REQUESTED.

Plaintiffs are entitled to the specific sanctions and remedies requested in the Motion.

**Adverse Inference**. Fields does not dispute that an adverse inference is proper here. He does not argue against an adverse inference instruction either as a discovery sanction or as a

remedy for his assertion of the Fifth Amendment.  Thus, this request for relief is unopposed and the Court should issue the adverse inference requested in the Motion.

**Facts Nos. 1-6, 8-14, 16-21, 29-30, 33-41, and 46**.  Fields concedes that Facts Nos. 1-6, 8-14, 16-21, 30, 33-36, 38, 39, and 46 are consistent with his federal guilty plea and his conduct in this case, and he does not object to Facts Nos. 29, 37, 40, or 41.  Thus, the Court should order those facts be taken as established.

**Facts Nos. 7, 15, 31, 32**.  Fields argues that Facts Nos. 7, 15, 31, and 32—which largely state that Fields acted intentionally when he rammed his car into pedestrians—are improper because they "ascribe a state of mind to Fields" and "invade the province of the jury."[5]  Fields cites no law whatsoever to support that assertion.  In fact, multiple courts have held that a court does not invade the province of the jury by deciding questions of intent and motive.  *See, e.g.*, *Bradford v. Sch. Dist. No. 20, Charleston, S.C.*, 364 F.2d 185, 187 (4th Cir. 1966) (summary judgment is appropriate even if the court has to decide motive and intent); *Edwards v. Norfolk S. Corp.*, 872 F. Supp. 277, 280 (W.D. Va. 1994), *aff'd*, 42 F.3d 1385 (4th Cir. 1994) ("Summary judgment is not inappropriate in age and gender discrimination cases merely because they involve issues of intent and motive."); *see also Ali v. Univ. of Mass. Med. Ctr.*, 76 F. App'x 342, 343 (1st Cir. 2003) ("Ali's contention that the district court invaded the province of the jury by deciding questions of intent and motive has no merit.").

---

[5] Fact No. 32 does not concern state of mind or intent.  It states that Fields pled guilty to his crimes because he actually committed those crimes.  Mot., App'x B, p. 12.  Thus, Fields's argument that this fact concerns "state of mind" is misplaced.  In any event, this is corroborated by evidence, including Fields's guilty plea.  *E.g.*, *Exhibit 16* ("I am pleading guilty . . . because I am in fact guilty")

10

Indeed, these are exactly the types of facts the Court should deem established.  Fields has refused to testify regarding his state of mind, depriving the jury of that evidence or the ability to weigh his credibility on that issue.  Moreover, these facts are well established by corroborating evidence.  Fields admitted in his guilty plea, for example, that when he "drove into the crowd," his "actions in doing so were willful."  *Exhibit 18*.

**Facts Nos. 22-28**.  Fields argues that Facts Nos. 22-28—which state that Fields caused injury to each of the Plaintiffs—"contain improper speculation and further attempt to shift Plaintiffs' burden of proof and seek expert opinions Fields is not qualified to render."  This argument should be rejected.  There is nothing speculative about Fields causing injury to Plaintiffs.  Evidence of their injuries is substantial, as is the fact that Fields deliberately drove his car into them.  Indeed, Fields has already pled guilty to causing bodily injury to Plaintiffs. *Exhibit 18*, pp. 2-3.[6]

Fields never explains how these facts would shift the burden of proof, or why facts cannot be taken as established if they might also be susceptible to expert testimony.  And, regardless, injury does not require expert testimony.  *See, e.g.*, *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251-52 (4th Cir. 1996) (award of emotional distress can be supported by plaintiff's testimony alone).

**Facts Nos. 42-45, 47.**  Fields argues that Facts Nos. 42-45 and 47—which relate to

---

[6] Fields was not criminally charged with injuring Plaintiff Elizabeth Sines, but she has suffered extreme emotional distress and shock as a result of the car attack, including nightmares, inability to focus, and an inability to perform academically.  ECF 557 ¶ 293.  This is supported by her sworn deposition testimony.  This supports deeming this fact established as to her as well.

Fields's motive and intent in entering into a conspiracy—are improper because they are "untrue" and unsupported by evidence.  This argument fails for at least three reasons.

*First*, Fields's argument is circular.  Fields refused to sign the SCA consents, refused to testify at a deposition and failed to provide other discovery, which deprived Plaintiffs of the opportunity to obtain certain evidence.  Then Fields uses the absence of such evidence to argue there is no corroborating evidence to justify taking these facts as established.  The Court should reject this reasoning.

*Second*, these facts *are* supported by substantial evidence.  Plaintiffs do not ask the Court to deem established that Fields conspired with any particular Defendant, only that he conspired with others, and there is substantial evidence that he did.  For example, before the Unite the Right Rally Fields posted to social media tagging Defendants, *Exhibit 6*, and posted memes about running down protesters with his car that were similar to posts on the Discord server used by Defendant Vanguard America, among others, to plan the rally, ECF 557 ¶¶ 70-82.  He also lied about creating two Discord accounts and refused to sign the SCA consents that would allow Plaintiffs to inspect his Discord records. Mot., pp. 5, 6, 12; *Exhibits 7-8*.  At the Unite the Right Rally, Fields showed up wearing the Vanguard America uniform, marched with the leaders of Vanguard America, carried a Vanguard America shield, and chanted Vanguard America slogans. *Exhibits 22, 23, 24*.  And, after the Rally, he received correspondence from Vanguard America that he destroyed.  Mot., p. 4; *Exhibit 5*.[7]

---

[7] Fields suggests—without evidence—that the FBI determined Fields did not conspire with anyone concerning the Unite the Right Rally.  Opp'n, p. 6.  That is false, and Fields cites no evidence to support it.

*Third*, Fields guesses that Plaintiffs "might attempt" to use these statements as evidence against the co-Defendants.  First, no other Defendant has objected to these sanctions.  Second, Plaintiffs do not ask the Court to deem established that Fields conspired with any of the Defendants in this case—only that Fields conspired with one or more "other people."  *See* Mot., App'x A, p. 4.  This avoids prejudice to the co-Defendants.  Indeed, this Court has already issued similar sanctions that do not name co-Defendants as the co-conspirators.  *E.g.*, ECF 910, p. 40, ¶¶ 3-5 (granting adverse inferences that "Defendant Kline entered into an agreement with one or more coconspirators to plan the Unite the Right event that took place in Charlottesville, Virginia on August 11 and 12, 2017"; "Defendant Kline entered into an agreement with one or more coconspirators to engage in racially-motivated violence in Charlottesville, Virginia on August 11, 2017"; and "Defendant Kline entered into an agreement with one or more coconspirators to engage in racially-motivated violence at the Unite the Right even in Charlottesville, Virginia on August 12, 2017").

Moreover, even if there were a "spillover" effect, that is not a sufficient reason to deny sanctions.  *See, e.g.*, *Flagg v. City of Detroit*, 2011 WL 4634245, at *7 (E.D. Mich. Oct. 5, 2011), *aff'd*, 715 F.3d 165 (6th Cir. 2013) ("Surely the Court is not powerless to sanction a defendant for its destruction of evidence, just because this sanction might have a prejudicial 'spillover' effect upon a co-defendant.  There are all manner of mechanisms . . . that are available to alleviate this possible prejudice.").  To the extent this Court is concerned about spillover prejudice to other defendants, it can issue a limiting instruction to the jury.  *See id.* (identifying limiting instructions as one of several alternatives for alleviating possible prejudice from adverse inferences).

13

As a final argument, Fields suggests the Court deny sanctions because "counsel are in negotiations" about them. Opp'n, p. 4. That is incorrect. Plaintiffs' counsel worked for years to try to get Fields to produce written discovery, worked with his counsel for more than a year trying to get Fields to agree to be deposed, filed multiple motions, obtained multiple Court orders (which Fields admits he violated), and spent months trying to negotiate a remedy. Plaintiffs have exhausted all reasonable options, and no negotiations are still pending. Discovery is long closed. Trial is around the corner. And Plaintiffs have no choice but to seek Court intervention.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Sanctions Against Defendant James Alex Fields, Jr., which are entirely fair, appropriate, and proportional to the circumstances of this case.

Dated: August 27, 2021

Respectfully submitted,

*/s/ David E. Mills*
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

14

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
ybarkai@kaplanhecker.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com
alawyer@paulweiss.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
kcheng@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Defendants National Socialist Movement, Nationalist Front, Jeff Schoep, Matthew Heimbach, Matthew Parrott and Traditionalist Worker Party*

Joshua Smith Esq.
Smith LLC
807 Crane Ave.
Pittsburgh, PA 15216
joshsmith2020@gmail.com

*Counsel for Matthew Heimbach, Matthew Parrott and Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

I hereby certify that on August 27, 2021, I also served the foregoing upon following *pro se* defendants, via electronic mail, as follows:

Richard Spencer
richardbspencer@gmail.com
richardbspencer@icloud.com

Robert Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline
eli.f mosley@gmail.com
deplorabletruth@gmail.com
eli.r kline@gmail.com

16

I hereby certify that on August 27, 2021, I also served the foregoing upon following *pro se* defendant, via first class mail, as follows:

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion
U.S. Penitentiary
P.O. Box 2000
Marion, IL 62959

*/s/ David E. Mills*

David E. Mills (*pro hac vice*)

255729167