IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| Elizabeth Sines, et al | [ |
| Plaintiff | [ |
| v | [ Case No:3:17-cv-072-NKM |
| Jason Kessler, et al | [ |
| Defendants | [ |

MOTION IN LIMINE FOR A DETERMINATION THAT ANIMUS AGAINST THE DOMESTIC TERROR ORGANIZATION ANTIFA AND OTHER MEMBERS OF THE WOKE PROGRESSIVE LEFT IS NOT A FORM OF "CLASS BASED INVIDIOUSLY DISCRIMINATORY ANIMUS" PROHIBITED BY 42 USC §1985(3)

---

Comes Now the Defendant, Christopher Cantwell, and, he Moves this Court In Limine For A Determination That Animus Against The Domestic Terror Organization And Other Members Of The Woke Progressive Left Is Not A Form of "Class Based Invidiously Discriminatory Animus" Prohibited By 42 USC §1983(5). In support, he states as follows:

1) In this matter, Plaintiffs are a group of members, supporters, or affiliates of the Antifa domestic terror organization who have appropriated the identity of "Negroes and Republicans", the only groups ever protected by US Const Amend XIII and 42 USC §1985(3), as a mask, similar to the masks that they wear during their terror attacks, in which to wage legal warfare as a continuation of the physical warfare they engaged in on the streets of Charlottesville August 11 and 12, 2017. The Court, relying on two overruled precedents, <u>Vietnamese Fishermen's Association v Knights of the Ku Klux Klan</u> 518 F Supp 993 (SD Tx: 1981) <u>abrogated by United Brotherhood of Carpenters and Joiners Of America v Scott</u> ("United Brotherhood")

-1-

463 US 825 (1983) and <u>Waller v Butkovich</u> 584 F Supp 909 (4th Cir 1984) <u>abrogated by</u> <u>Harrison v HVAT Food Management</u> 766 F 2d 155 (4th Cir 1985), has allowed the Plaintiff's theory that, as Communists who have taken upon themselves the mantle of the Negro they are a "protected class". However, the time has come to remove this veil and to find that the Plaintiffs are not heirs to the 1870s or 1960s Republicans or Civil Rights movement and that animus against them is not invidious.

2) Cantwell has previously, in his Response To Plaintiffs' Motion For Sanctions Against Defendant Matthew Heimbach ("<u>Heimbach response</u>") and elsewhere laid out what he believes the facts will be at trial. Particularly as regards the August 11, 2017, event, the evidence will show that Plaintiffs Romero and Doe knowingly associated with a group of armed men and women whom they knew to be in part constituted of convicted felons and other criminals and whom they knew to use the name "Philly Antifa" and "SURJ Charlottesville" and whom they knew to affiliate with the Antifa domestic terror organization.

3) Cantwell has also laid out previously much of the current state of the law as regards 42 USC §1985(3) in his Motion In Limine For A Determination That Bias Against Those Who Identify As "Jews" Is Not A Form Of "Class Based Invidiously Discriminatory Animus" Prohibited By 42 USC §1985(3), and, Cantwell incorporates that argument here by reference.

4) The Supreme Court has, in the modern era, only once approved an action under 42 USC §1985(3), and, that was in <u>Griffin v Breckenridge</u> 403 US 88 (1971). There, the Plaintiffs were a group of Negroes, who, while travelling on the highways, were stopped by a group of men who blocked the road, forced them from the car at gunpoint,

and whipped them because they believed that they were Civil Rights activists, i.e., that they were seeking equality of rights for Negroes under the law. Then, in <u>United Brotherhood</u>, the Supreme Court clarified who exactly was protected under 42 USC §1985(3), stating:

> "It is a close question whether §1985(3) was intended to reach any class based animus other than animus against Negroes and those who championed their cause, most notably Republicans ... The predominant purpose of §1985(3) was to combat the prevailing animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro."

<u>United Brotherhood</u> then went on to specifically exclude private conspiracies against US Const Amend I protected rights and conspiracies motivated by economic resentments or class from 42 USC §1985(3)'s ambit.

5) Since deciding <u>United Brotherhood</u>, the Supreme Court has consistently ruled that the civil rights laws passed during Reconstruction have to be interpreted in the social context of the 1870s and not in a modern social context to determine whether or not a person is part of a protected class. see, eg, <u>Saint Francis College v Al-Khazraj</u> 481 US 604 (1987) (interpreting 42 USC §1981, which is not dependent on US Const Amend XIII as here); <u>Shaare Tefila Congregation v Cobb</u> 481 US 615 (1987) (interpreting 42 USC §1982, also not dependent on US Const Amend XIII). This is part of a two part inquiry required to establish liability under 42 USC §1985(3), first, an objective inquiry into whether or not the "class" involved is one protected under US Const Amend XIII, and, second, the subjective inquiry into whether or not the actual animus displayed was invidious and disc-

riminatory towards that class.

6) The Supreme Court clarified its understanding of the social context of Reconstruction in <u>Briscoe v LaHue</u> 466 US 325 (1983):

> "The Ku Klux Klan Act,. 17 Stat 13, was enacted April 20, 1871, less than a month after President Grant sent a message to Congress describing the breakdown of law and order in the Southern States. <u>Cong Globe</u> 42d Cong 1st Sess 236, 244 (1871). During the debate, supporters of the bill repeatedly described the reign of terror imposed by the Klan ... arson, robbery, whippings, shootings, murders ... These acts of lawlessness went unpunished ... because Klan members and sympathizers controlled or influenced the administration of justice."

The Court went on to described how members of the Klan took an oath to serve on juries and acquit fellow Klansmen and to serve as witnesses to acquit fellow Klansmen. It then found that "racist" police officer and prosecutors lying on the stand to convict Negroes was not the modern equivalent of this kind of lawless vigilante behavior and refused to extend 42 USC §1985(3) to witnesses who lie to obtain convictions.

7) Similarly, Justice Blackmun, in his dissent in <u>United Brotherhood</u>, stated that 42 USC §1985(3) could only be extended to "class[es] of persons" who do not enjoy "the possibility of effective state enforcement of their rights", a statement that the Fourth Circuit took to heart in <u>Buschi v Klein</u> 775 F 2d 1240 (4th Cir 1985). There the Court ruled that "the class protected [by 42 USC §1985(3) and US Const Amend XIII] can etend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in ... circumstances similar to the victims of Klan violence.'"

8) The Fourth Circuit then went on in <u>Harrison v HVAT Food Management</u> 706 F 2d 155 (4th Cir 1985), to explain that social conditions have changed so that the "Republicans" protected by 42 USC §1985(3) no longer include actual Republicans. It found that: the reason that Republicans had been included in the protected classes under US Const Amend XIII and 42 USC §1985(3) was that:

> "The failure or inability on the part of local southern governments to control the Klan was particularly troubling to Republican Congressmen ... Republicans were discriminated [against] by the apparent alliance between the Klan and Southern Democrats, which Republicans viewed as a conspiracy to establish Democratic hegemony in the South ..."

<u>Harrison</u> citing Randall, <u>The Civil War And Reconstruction</u> (1937) p 854-858; Comment, <u>A Construction Of Section 1985(c) In Light Of Its Original Purpose</u> 46 Univ of Chi L Rev 402 (1979); Note <u>Federalism And Federal Questions: Protecting Civil Rights Under The Regime Of Swift v Tyson</u> 70 Va L Rev 267 (1984).

9) In sum, <u>Briscoe</u>, <u>Buschi</u> and <u>Harrison</u> state that, in order for a class of people who are not Negroes to fall under the protection of US Const Amend XIII, and, by extension, 42 USC §1985(3), they cannot be the "woke" victims of "oppression" of the moment de jure. This class of persons has to show that they are unable to avail themselves of their rights because of a conspiracy between private vigilantes and the state, or, at least, some segment of state authority. This does not mean that the state has to participate in a US Const Amend XIII conspiracy, as all conspiracies to impose slavery are prohibited. But, for a political association, such as Antifa or woke progressives generally, to enjoy protection, they have to do more than claim to represent the interests of the Negro; they also

   have to be subjected to lawlessness as a result of the state and society's refusal to protect their legal rights.

10) The two cases that the Court has cited to protect the Antifa Plaintiffs as "Republicans" and "supporters of the Negro" are <u>Vietnamese Fishermen's Assoc v Knights of the Ku Klux Klan</u> 518 F Supp 993 (5th Cir 1981) and <u>Waller v Butkovich</u> 584 F Supp 909 (4th Cir 1984). <u>Vietnamese Fishermen's Association</u> used a pre-<u>United Brotherhood</u> definition of protected class to find that "immigrants and their supporters" were a protected class; the Court's approach of separating national origin from race in <u>Al-Khazraj</u> makes it doubly certain that "immigrants" would not be found to be protected under US Const Amend XIII today, while "their supporters" would certainly not qualify. <u>Waller</u> is remarkably similar to the instant factual circumstances; there, the Communist Workers Party organzied a "Death to the Klan" rally, appeared armed, and, brandished firearms when a group of Klan demonstrators, organized by federal informants, appeared to counter them. Local and state police refused to intervene, and, the Klansmen were forced to defend themselves with long guns; the gun battle ended in a slaughter of the Communist demonstrators. The key factual difference here is that state and local police withdrew police protection from the Charlottesville events in support of the Antifa terror organization in the hopes that they would murder the Defendants here, and, it was only by good fortune that the outcome was avoided. Legally, however, <u>Waller</u> is on a weak foundation. The Court explained the reasoning it used to sustain the action in greater detail in <u>Waller v Butkovich</u> 605 F Supp 1137 (4th Cir 1985), where it found that "Communists" and "anti-Communists" were both protected classes using a logic specifically rejected in <u>Harrison</u>.

-6-

11) Looking at the actual social situation in the United States today, the Ku Klux Klan Act is more appropriately used against Antifa and members of the woke progressive left to protect white working people and their supporters than it is used to protect the Antifa domestic terror organization. Here, the Plaintiffs appeared at the Thomas Jefferson statue (and, the next day, near Lee Park) armed, in battle uniforms, intending to prevent the Defendants, who were peacefully demonstrating, from travelling in a public right of way. They attacked the Defendants, and, then, they have falsely come into this Court claiming to have been attacked, expecting that witnesses will commit perjury and a jury will enter judgment in their favor based upon fear of their vigilante-ism protected by the state. Cantwell, in his deposition (which he still does not have a copy of), described the Plaintiffs as the "militia of the Democratic Party", which is essentially the role played by the Klan in the 1870s. One only has to look over to the Plaintiff's table to see how the power structure has lined up to protect the violence of the Plaintiffs; $10 million dollars has been raised on their behalf with the hastag #SueANazi. This case is not only supported by the state power structure, it is big business for that power structure, while the Defendants are largely marginalized and powerless people who, like Negroes in the 1870s South, cannot rely on law enforcement to protect their rights. How many rifle-wielding Antifa have been arrested after these rallies? How many federal agents were sent in to infiltrate Antifa groups and arrest them for their conspiracies to riot on August 11 and 12, 2017? The answer is none, while federal and state authorities have poured criminal charges on the white nationalist protestors. US Const Amend XIII was enacted to protect the powerless from being enslaved by

-7-

the powerful, not to protect those who wish to impose Soviet-style slavery on every man, woman, and, child in the United States from those who would resist them.

12) Further, the Antifa and woke-progressive Plaintiffs cannot reasonably claim to be similarly situated to the Plaintiffs in <u>Griffin</u>, because the Plaintiffs in <u>Griffin</u> were perceived to be civil rights activists, seeking Negro equality. The Antifa and woke-progressive Plaintiffs openly state that they do not wish to see equality, but, that they wish to use violence to harm white people; their claim that this somehow advances the position of the Negro is not the kind of "support" for the Negro that §1985(3) envisions as protected. If these Plaintiffs had been part of a peaceful unarmed crowd calling for all to enjoy equal rights, then, perhaps they could claim the mantle of the 1870s Republicans or 1960s civil rights activists. But, their ideology of actively suppressing white identity through violence and their tactics of using physical violence, as well as their actually having appeared armed and looking for a fight put them beyond the law's protection.

13) Lastly, because of the social evil that Antifa and the woke progressive represent, animus against them, even if they might otherwise constitute a protected class, cannot be considered "invidious"; it is a social good. As will be developed at trial, the Plaintiffs in this matter believe in stripping whites of their civil rights, nominally to advance the Negro, actually to advance the kind of wealthy elite interests that have volunteered to appear in this matter to represent them. This kind of movement, because it is anathema to the principles of America's Founding, as many of its members will openly admit, is not the kind of movement to ad-

vance those principles against whom animus might be "invidious". Thus, as there are good and rational reasons for opposing a movement that spent all of 2020 burning and looting American cities and trying to topple the lawfully elected, animus against the Plaintiffs is nopt prohibited by 42 USC §1985(3).

Respectfully Submitted,

*[signature]*

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of the Clerk, 1st Class Postage Prepaid, for posting upon the ECF, to which all other parties are subscribed; and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court, this 13th day of September, 2021.

*[signature]*

Christopher Cantwell