IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
SEP 20 2021
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

Elizabeth Sines, et al [
 [
  Plaintiffs [
 [
v [ Case No: 3:17-cv-072-NKM
 [
Jason Kessler, et al [
 [
  Defendants [
 [

MOTION IN LIMINE FOR A DETERMINATION THAT PLAINTIFFS'
CLAIMS AROSE EX TURPI CAUSA AND THUS ARE BARRED IN PARI DELICTO
--------------------------------------------------------------

Comes Now the Defendant, Christopher Cantwell, and, he Moves This Court In Limine For A Determination That Plaintiffs' Claims Arose Ex Turpi Causa And Thus Are Barred In Pari Delicto. In support, Cantwell states as follows:

Standards
---------

1) The Commonwealth of Virginia prohibits a party from recovering damages for any tort arising ex turpi causa from the Plaintiff's conscious actions under the doctrine of in pari delicto. <u>Lee v Nationwide Mut Ins Co</u> 255 Va 279 (Va 1998). This doctrine was explained in <u>Miller v Bennett</u> 190 Va 162 (Va 1949) as follows:

> "'Ex dolo malo no oritur actio'. No court shall lend its aid to a man who founds his cause of action on immoral or illegal acts. If, from the Plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa or from the transgression of a positive law of the country, there the court says he has no right to be assisted. It is upon that ground that the Court goes; not for the sake of the Defendant, but, because they will not lend their aid to such a Plaintiff."
> citing <u>Holman v Johnson</u> 98 Eng Rep 1120 (KB 1775) (Eng).

-1-

"This principle applies to civil actions whether based in tort or contract. When applied to actions in tort, it is said that consent or participation in any immoral or unlawful act by a Plaintiff precludes recovery for injuries as a result of that act, on the maxim volenti non fiat injuria."

Miller

This doctrine, the tort equivalent of unclean hands, is also recognized by federal common law. see, eg, <u>Bateman Eizhler Hill Richards Inc v Berner</u> 472 US 299 (1985); <u>Pinter v Dahl</u> 486 US 622 (1985).

### Prior Assertion

2) In his Answer to the Second Amended Complaint, a copy of which is still not available to Cantwell, Cantwell stated that, on August 11, 2017, Plaintiffs Romero and Doe appeared in the company of unlawfully armed members of the Antifa terror organization, all weapons be barred on the University of Virginia campus, who brandished their weapons and assaulted him. WBhile Cantwell did not describe this affirmative defense in Latin, as a pro se Plaintiff he was not required to. see, eg, <u>Erickson v Pardus</u> 551 US 89 (2007) ("A document filed pro se is liberally construed.") An affirmative defense is merely "a response to a Plaintiff's claim", and, thus, as long as Cantwell presented the factual basis for the defense, a defense of in pari delicto may be construed from his Answer. see, eg, <u>Willner v Dimon</u> 849 F 3d 93 (4th Cir 2017) (asking that an affirmative defense be construed from a counter claim) citing <u>Am First Fed Inc v Lake Forest Park, Inc</u> 198 F 3d 1259 (11th Cir 1999).

### August 11 Claims

3) In his Response to Plaintiff's Motion For Sanctions Against Defend-

-2-

ant Matthew Heimbach, Cantwell laid out the facts that he believes the evidence presented at trial will show; he is still without the ability to print exhibits to share with the Court. Cantwell now incorporates by reference this exposition of the expected factual showing regarding the August 11, 2017, torchlit march at the Thomas Jefferson statue.

4) Cantwell is charged with substantive acts in violation of Va Ann Code §8.01-42.1 as well as conspiracy and substantive assault for the events of August 11, 2017. Va Ann Code §8.01-42.1 prohibits both "intimidation and harassment" and "violence against [the] person" "motivated by racial, religious, or ethnic animosity."

5) The evidence at trial will show that the Plaintiffs, knowing that the Defendants were holding a march at which racially, religiously, and ethnically charged statements were made, voluntarily attended that march with the intent of exposing themselves to what they now call "harassment and intimidation" in order to oppose those statements. Because the Plaintiffs voluntarily participated in and sought out exposure to Defendants' racially, religiously, and ethnically charged statements, the Plaintiffs cannot claim a cause of action for "harassment and intimidation" related to speech the voluntarily sought to receive, volunti non fiat injuria.

6) The Plaintiffs also knowingly and willingly appeared in the company of unlawfully armed members of the Antifa domestic terror organization for the common purpose of "confronting" Cantwell and his fellow peaceful demonstrators, then unlawfully conducted an aggravated armed mob assault on Cantwell and his fellow Defendants. Even if some individual Plaintiff may claim -- and many can't -- that they did not know their fellow terrorists' intent was to commit armed

-3-

mob assault, or, that the Antifa are a vigilante terror organization, each Plaintiff knew that a substantial number of their fellow mob members were brandishing or carrying unlawful weapons, and, that their presence was aiding and abetting whatever purpose those weapons had been produced for. This is not a case where the Plaintiffs showed up peacefully planning to sing Kumbaya. The acts that followed August 11, 2017, were the direct result of the Plaintiffs associating with an unlawfully armed vigilante terror group, much like the Ku Klux Klan of the 1870s is alleged to have been, and, thus, those acts now complained of Ex Turpi Causa. Because the law does not assist those who go masked upon the highways with the intent to rob or obstruct fellow travellers, Plaintiff's claims are barred in pari delicto.

## August 12 Wispelwey

7) Cantwell does not believe that the Plaintiffs can in any way link him to the alleged torts committed on August 12th, either against Seth Wispelwey or by James Fields. However, he also believes that these claims, too, arise ex turpi causa, and, thus, that the Court should not lend these claims its assistance. As to the alleged assault on Wispelwey, Cantwell believes that the evidence will show that:

   a) Wispelwey is a self-appointed pastor in Charlottesville, Virginia;
   b) on August 11, 2021, prior the events at the Thomas Jefferson statue on the University of Virginia campus, Wispelwey hosted a "delegation" from the Antifa terror organization at his church which informed Wispelwey of their intent to commit armed criminal acts of terrorism and which received Wispelwey's blessing to do so;

    c) On August 11, 2017, Wispelwey stated to the above delegation that he "embraced the diversity of tactics", meaning that he endorsed their use of armed vigilante violence;

    d) On August 12, 2017, Wispelwey appeared in the middle of a public roadway in Charlottesville, Virginia, with what he terms a "battalion of Antifa", many of whom were unlawfully brandishing clubs, shields, and, pepper spray, items that Wispelwey later described as "community defense tools";

    e) Wispelwey's purpose of appearing in the midst of a public roadway with members of an armed terror organization whom he knew planned to use arms to commit acts of vigilante terrorism was to aid and abet that terrorism and to waylay the Defendants as they travelled on the public roads;

    f) the events that followed on August 12, 2017, arise ex turpi cause of the criminal intent of Wispelwey to aid and abet felony aggravated felony mob violence against the Defendants.

8) Wispelwey is really one of the least sympathetic characters among this crop of Plaintiffs. He is an outright violent criminal and felon; who uses the woke elements of the American power structure as a cloak for his crimes. Because any assault on Wispelwey arose from his unlawful act of joining an armed mob which he knew planned to commit acts of vigilante violence, his claims for having been assaulted to subjected to violence against his person arise ex turpi causa and must not receive assistance from this court.

August 12 Fields Car Accident
--------------------------------

9) Cantwell understands that James Fields has been wrongfully convicted in both state and federal court as regards his car accident of

-5-

accident of August 12, 2017. However, Cantwell was not a party to Fields' prosecutions and did not have a "full and fair opportunity" to contest Fields' guilt. Thus, Fields' prosecutions have no preclusive effect on a claim of in pari delicto arising in these civil proceedings. see, eg, <u>Duckett v Fuller</u> 819 F 3d 740 (4th Cir 2016) (elements of claim preclusion require identity or privity of actors); <u>Collins v Pond Creek Mining Co</u> 468 F 3d 213 (4th Cir 2006) (elements of issue preclusion require that the party against whom the doctrine is invoked have had a "full and fair" chance to litigate the issue in prior litigation).

10) Cantwell believes that the following facts will be established at trial regarding the Field's car accident:
   a) Dwayne Dixon is a member of the Antifa domestic terror affiliate Redneck Revolt, based in North Carolina;
   b) Dixon travelled in interstate commerce from North Carolina to Charlottesville, Virginia, with an AR-15 assault weapon for the purpose of committing acts of terrorism;
   c) On August 12, 2017, James Fields was travelling in interstate commerce with his GPS set on his home address in Ohio, having just dropped off a number of his fellow protestors at their cars;
   d) Fields was unaware that Dixon and others, including the Plaintiffs were laying in wait on a public highway unlawfully armed and planning to waylay travellers;
   e) There is a video of Dwayne Dixon confessing to armed assault on Fields by pointing an AR-15 rifle at Fields just prior to Fields' car accident;
   f) There is a video showing that Fields was fleeing Dixon when he encountered the Plaintiffs as part of an armed mob whose

members were brandishing baseball bats, blocking public right of ways, and, chanting "Whose streets? Our streets;"

    g) There is video showing that members of the armed mob, unlawfully brandishing baseball bats, unlawfully began to strike Fields' car with baseball bats as part an effort to deny Fields his right to travel on the public roads;

    h) There is video showing that Fields initially hit his brakes when he encountered the mob, but, when his car was unlawfully struck by members of the unlawfully armed mob, he panicked and hit his accelerator, striking the Plaintiffs;

    i) That the unlawfully brandished weapons and the intent of the mob to commit unlawful acts was obvious to the Plaintiffs and that voluntarily aided and abetted such crimes when they chose to join the criminal mob.

11) Apparently, some Republicans had introduced proposals in various legislatures to de-criminalize striking a mob with your car when it was blocking a public roadway, and, the Plaintiffs intend to make much of discussions spurred among some of the Defendants regarding this law. The law does not permit someone to deliberately drive a vehicle into a mob because the state has an interest in protecting order and escalating violence is contrary to that interest. However, a private party who chooses to join an armed mob, one that is unlawfully brandishing weapons and whose members are using those weapons to waylay travellers on the public roads, does not have recourse under tort law in pari delicto against a party who strikes them with their car. Plaintiffs' claims as to the Fields' car accident were the natural result of their aiding and abetting criminal activity and they have no recourse to the Courts for their injuries.

Thus, for good cause shown, and, for an evidentiary showing that Cantwell hopes to make at trial or at a hearing, given his current circumstances, Cantwell asks that this Court determine in limine that Plaintiffs' claims arise ex turpi causa and are thus barred in pari delicto.

                                      Respectfully Submitted,

                                      *[signature]*

                                      Christopher Cantwell
                                      USP-Marion
                                      PO Box 1000
                                      Marion, IL 62959

### CERTIFICATE OF SERVICE

I herbey certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage Prepaid, for posting on the ECF, to which all parties are subscribed, and, was handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court this 20th day of September, 2021.

                                      *[signature]*
                                      Christopher Cantwell