IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, et al., ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JASON KESSLER, et al., ) <br>     Defendants. ) <br> ) | Civil Action No. 3:17-cv-00072 <br><br> MEMORANDUM OPINION & ORDER <br><br> By:   Joel C. Hoppe <br>          United States Magistrate Judge |

This matter is before the Court on Plaintiffs' Second Motion for Evidentiary Sanctions Against Defendant Robert "Azzmador" Ray under Rule 37(b)(2) of the Federal Rules of Civil Procedure. ECF No. 1028 ("Pls.' Mot."). Plaintiffs seek sanctions that will level the evidentiary playing field at trial after Ray repeatedly failed to attend his court-ordered deposition. *See generally* Pls.' Mot. 4–5, 7, 9–14. Ray did not respond within fourteen days. Pretrial Order ¶ 7, ECF No. 101.[1] Accordingly, I consider Plaintiffs' motion to be unopposed by Ray, *id.*, and can resolve it without another hearing. Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b); *see* Order Finding Robert "Azzmador" Ray in Civil Contempt 4 ("Ray did not appear at the contempt hearing on September 14, 2020 at 2:00 p.m. ET, as ordered.") (Sept. 16, 2020) (Moon, J.), ECF No. 877 ("Ray Contempt Order"). The motion will be GRANTED in part and DENIED without prejudice in part as detailed below.

I. The Legal Framework

Rule 37(b)(2) authorizes the district court where an action is pending to impose evidentiary sanctions when a party "fails to obey an order to provide or permit discovery," Fed.

---

[1] Defendant Christopher Cantwell, appearing pro se, filed a response opposing Plaintiffs' request for evidentiary sanctions. ECF No. 1057 ("While Ray's disregard for the Court's orders is thoroughly indefensible, Plaintiffs are asking the Court to draw conclusions which are unsupported by any other evidence, and are in fact contradicted by their own exhibits.").

1

R. Civ. P. 37(b)(2)(A), including an order directing the party to participate in his own deposition, *see Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390, 393–95 (M.D.N.C. 2014). "Once a court makes the threshold determination under Rule 37(b)" that a prior discovery order has been violated, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[2] "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)). In making this determination, the district court should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc)); *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)). Some sanctions require the court to find that the disobedient party acted willfully or in bad faith. *See, e.g.*, *Young Again Prods. v. Acord*, 459 F. App'x 294, 305–06 (4th Cir. 2011) (civil contempt); *Hodge v. Wal-Mart Stores, Inc.*, 360

---

[2] Such sanctions "may include" orders deeming facts established, permitting or requiring an adverse inference, entering default judgment against the disobedient party, or holding the party in civil contempt. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533–34 (D. Md. 2010) (quoting Fed. R. Civ. P. 37(b)(2)(A)); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi); *Thompson*, 219 F.R.D. at 102 ("Rule 37(b)(2) provides a non-exclusive list of possible sanctions[.]"); 8B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2289 (3d ed. 2018) (explaining that Rule 37(b)(2) gives courts "broad discretion to make whatever disposition is just" in the particular case and that available sanctions are "not limited to the kinds of orders specified" in subsection (b)(2)(A)(i)–(vi)).

F.3d 446, 450 (4th Cir. 2004) (adverse inference); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (default judgment).[3]

## II. Background

On August 11–12, 2017, "the Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." *Sines v. Kessler*, 324 F. Supp. 3d 765, 773 (W.D. Va. 2018) ("*Sines I*"); *see* Second Am. Compl. ¶¶ 1–7, ECF No. 557. These rallies are now known as "Unite the Right." Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985, and related state laws. *Sines I*, 324 F. Supp. 3d at 773. "While ultimate resolution of what happened at the rallies awaits another day," the presiding District Judge has held the remaining Plaintiffs plausibly alleged that certain Defendants, Ray included, "formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.*; *see generally id.* at 775, 777–79, 785, 789, 796, 800–01.

Plaintiffs allege that Ray is a neo-Nazi who lives in Texas. *See* Second Am. Compl. ¶ 27. In 2017, Ray and co-Defendant Andrew Anglin ran the Daily Stormer, a website Ray and Anglin describe "'as a hardcore front for the conversion of masses into a pro-white, Anti-Semitic ideology,' to 'sell global white supremacy,' and to 'make a racist army.'" *Id.* ¶ 25 (alterations

---

[3] The Fourth Circuit has not clearly defined the movant's burden of proof on a motion for sanctions under Rule 37(b). *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488924, at *11 (E.D. Va. Nov. 30, 2018), *adopted by* 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "However, proving misconduct by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices." *Glynn*, 2010 WL 3294347, at *2. The result here is the same under either standard because Plaintiffs produced clear and convincing evidence that Ray willfully failed to appear for his court-ordered deposition on July 29, 2020. *See* Ray Contempt Order 6.

omitted); *see id.* ¶ 27. Ray wrote and published articles for the Daily Stormer. He also led the "Dallas Fort Worth Stormer Book Club," one of many local Daily Stormer groups across the country. *Id.* ¶ 27; *see id.* ¶ 25 ("Stormers have formed local chapters, called 'Stormer Book Clubs,' as part of Anglin's plan to 'build an invisible empire.'"); *id.* ¶ 92. ("Ray told Vanguard [America] members in July 2017, 'You don't think the [Daily Stormer Book Clubs] have anything to do with books, do you? . . . Think boots, not books.'").

Unite the Right featured prominently on the Daily Stormer website. Staff produced their own poster advertising the event, urging followers to "Join Azzmador and The Daily Stormer" in Charlottesville on August 12 "to end Jewish influence in America." Second Am. Compl. ¶ 90; *see also id.* ¶ 91 ("Using Daily Stormer's website, Defendants Anglin and Ray commanded the Daily Stormer community to attend ('You must make it there!')."); Pls.' Mot. Ex. B (image of poster embedded in Daily Stormer article posted Aug. 8, 2017), ECF No. 1028-2. Anglin and Ray told Daily Stormer readers,

> We need to do everything we can to get as many people to attend this rally as possible. . . . There is a rising nationalist movement in America and it is not going away. Having thousands of nationalists come out for this rally will put the fear of god into the hearts and minds of our enemies.

*Id.* ¶ 91. Two articles posted on the Daily Stormer website instructed followers to bring tiki torches, pepper spray, flag poles, flags, and shields. *See, e.g.*, Pls.' Mot. Ex. B, Azzmador & A. Anglin, *Charlottesville: Why You Must Attend and What to Bring and Not to Bring!*, Daily Stormer (Aug. 8, 2017). On August 8, 2017, Ray shared a link to one of those articles on Discord's "Southern Front" server. Second Am. Compl. ¶ 115 (noting that Defendant Vanguard America controlled the Southern Front server and that a "Vanguard America member responded to Ray's post with a violent drawing of Defendant [Matthew] Heimbach wearing a shirt bearing Nazi . . . symbols and the words 'nigger killer' above a tally of 'communists killed,' smiling in

4

front of decapitated black men wearing logos associated with anti-fascist movements"). Ray "wrote on Discord: 'Well I also come barehanded and barefisted bc officers don't duck lol. But my guys will be ready with lots of nifty equipment." *Id.* ¶ 109. Ray and Anglin also "established 'meet ups' and chat rooms" on the Daily Stormer's website for rally attendees to "use throughout the weekend to coordinate their actions" once they were in Charlottesville. *Id.* ¶ 83. *See generally Sines I*, 324 F. Supp. 3d at 789.

Ray and other Defendants organized a "secret" torchlight march through the University of Virginia's grounds on the night of Friday, August 11, 2017. Second Am. Compl. ¶¶ 142–43. A message on the Daily Stormer website told rally attendees they were "required" to have tiki torches for a "torchlight ceremony," and instructed them to buy tiki torches and oil before coming to Charlottesville. *Id.* ¶ 145. "These torches were supposed to invoke the Ku Klux Klan's and Nazi's similar use of torches" to terrorize their victims. *Sines I*, 324 F. Supp. 3d at 777 (citing Am. Compl. ¶ 150); *see* Second Am. Compl. ¶ 149. As night fell on August 11, Ray and roughly "300 [other] neo-Nazis and white supremacists," Second Am. Compl. ¶ 152, "marched two-by-two up the Lawn, around the Rotunda, and towards a Thomas Jefferson statue on the far side of the Rotunda," *Sines I*, 324 F. Supp. 3d at 777 (citing Am. Compl. ¶¶ 159, 169). *See* Second Am. Compl. ¶¶ 149, 151–52, 158. They chanted racist slogans, "barked like dogs[,] and performed Nazi salutes." *See id.* ¶¶ 160–61. During the march, Ray stated,

> We are stepping off the Internet in a big way. . . . We have been organizing on the Internet. And so now they are coming out. We have greatly outnumbered the anti-white, anti-American filth. At some point we will have enough power that we will clear them from the streets forever . . . you ain't seen nothing yet.

*Id.* ¶ 87 (omissions in original). He explained that they held the torchlight march because, "Our country is being usurped by a foreign tribe[] called the Jews. We are going to stop it." *Id.* ¶ 149. Ray and others gave orders to marchers, "telling them to get in specific formations and assigning

5

people either to march with a torch or on the side as 'security.'" *Id.* ¶ 156. *See generally Sines I*, 324 F. Supp. 3d at 789.

Although the march was supposed to be secret, about thirty counter-protesters, including two remaining Plaintiffs, reached the Jefferson statue before the marchers. *See* Second Am. Compl. ¶¶ 155, 163–66. "The counter-protestors linked arms and surrounded the statue, facing away from it." *Sines I*, 324 F. Supp. 3d at 778 (citing Am. Compl. ¶ 164); *see* Second Am. Compl. ¶ 163. Marchers charged towards the counter-protestors, trapping them where they stood. Second Am. Compl. ¶¶ 165, 172. They kicked and punched the counter-protestors and, using their burning tiki torches as weapons, beat individuals to the ground. *Id.* ¶ 167. At one point, "Ray shouted, 'The heat here is nothing compared to what you're going to get in the ovens!'" *Id.* ¶ 168. He later proclaimed that the marchers "went through [the counter-protestors] like shit through a goose!" *Id.* ¶ 167. *See generally Sines I*, 324 F. Supp. 3d at 789.

Most of the remaining Defendants, including Ray, attended the main Unite the Right rally on Saturday, August 12, 2017. Second Am. Compl. ¶ 186. Ray carried a banner that read "Gas the kikes, race war now!" *Id.* ¶ 201. He also brought a "personal cameraman" with him to Charlottesville to record and broadcast the rally via a livestream on the Daily Stormer's website. Pls.' First Mot. to Compel 4, ECF No. 673; *see* Second Am. Compl. ¶ 201; Pls.' First Mot. to Compel Ex. 6, Azzmador, *The Battle of Charlottesville FULL VIDEO!*, Daily Stormer (Aug. 19, 2017) (print out of webpage with blank images of embedded media players), ECF No. 673-6. By 11:22 a.m., local law enforcement declared an unlawful assembly and ordered everyone to leave the small downtown park where the rally was supposed to be held. Second Am. Compl. ¶ 222. Ray went to nearby McIntire Park with several other Defendants. *Id.* ¶ 225. About an hour later, the Daily Stormer told readers to "go to McIntire Park now," to "find Azzmador" or two other

6

organizers, and to "not separate once [they were] behind one of these three men." *Id.* ¶ 226 (emphasis omitted). The same day, Ray told a reporter, "We're showing to this parasitic class of anti-white vermin that this is our country. This country was built by our forefathers. It was sustained by us. It's going to remain our country." *Id.* ¶ 225.

In June 2018, a grand jury in Albemarle County indicted Ray on one count of maliciously releasing a gas during the August 11 torchlight march. *See* Pls.' First Mot. for Evid. Sanctions Ex. E, Docket, *Commonwealth v. Ray*, No. CR-18-597 (Albemarle Cir. Ct. filed June 4, 2018), ECF No. 750-5. As of September 2021, Ray was still listed as a fugitive in publicly available Virginia court records.

### III. Procedural History[4]

The parties were supposed to complete most depositions by July 17, 2020. *See* Order of July 1, 2020, ECF No. 791. On May 7, 2020, Plaintiffs' counsel emailed Ray to ask about his availability for an oral deposition in June. *See* Pls.' Second Mot. to Compel Ex. B, Email from Y. Barkai to Azzmador@gmail.com (May 7, 2020 3:22 PM), ECF No. 803-2.[5] When counsel did not hear back by June 5, they emailed Ray again to tell him that they would pick a date to depose

---

[4] The parties are familiar Ray's failure to comply with numerous court orders directing him to provide or permit discovery of relevant documents and electronically stored information ("ESI") within his control. *See generally* Mem. Op. & Order of Mar. 24, 2021, at 4–18, ECF No. 933. I have already sanctioned Ray's failure to obey my May 18, 2020 Order, ECF No. 728, by directing him to pay Plaintiffs' reasonable expenses and granting, subject to Judge Moon's final approval, Plaintiffs' request for a permissive adverse inference jury instruction. *See* Mem. Op. & Order of Mar. 24, 2021, at 1–2, 18–24. Accordingly, this section focuses on Ray's failure to comply with more recent court orders directing him to appear for scheduled depositions. *See* Pls.' Mot. 4–5, 11–14.

[5] Ray used this account to communicate about Unite the Right and this litigation in 2017–2018, and it has been on file with the court as his email address of record since November 2018. *See* Mem. Op. & Order of Mar. 24, 2021, at 15 n.4; Ray Contempt Order 6 n.2 ("Ray had actual as well as constructive notice [of] these Orders and deposition notices which were sent to him at this email address, as well as on account of their being filed on the public docket in this action."). The Clerk's Office has advised that emails sent to Ray at this address have not been returned as undeliverable. *See* Ray Contempt Order 6 n.2; Staff Note of May 18, 2020.

him before the July 17 deadline and circulate a notice of his deposition. *Id.* Ex. C, Email from Y. Barkai to Azzmador@gmail.com (June 5, 2020 10:47 AM), ECF No. 803-3. On June 8, Plaintiffs properly noticed Ray's deposition to be held by videoconference beginning at 9:30 a.m. ET on July 13, 2020. *See* Ray Contempt Order 2; Order of July 23, 2020, at 1, ECF No. 814; Pls.' Second Mot. to Compel Ex. E, Email from Y. Barkai to J. Kolenich, et al. (June 8, 2020 6:19 AM), ECF No. 803-5; Fed. R. Civ. P. 30(b)(1). Ray did not appear as required. *See* Fed. R. Civ. P. 30(a)(1), 37(d)(1)(A)(i).

On July 22, Plaintiffs served Ray with a notice rescheduling his video deposition for July 29, 2020, at 9:30 a.m. ET. *See* Ray Contempt Order 2 (citing ECF Nos. 818, 818-1). The next day, I granted Plaintiffs' second motion to compel, ECF No. 803, and issued an order directing Ray to appear by videoconference for this deposition. *See* Order of July 23, 2020, at 1. I warned Ray that the Court expected him to "appear and participate in good faith" and that "his failure to comply with this Order may result in a bench warrant being issued for his arrest and the United States Marshal taking him into custody and transporting him to this judicial district to appear and show cause why he should not be held in contempt of court." *Id.* at 1 (emphasis omitted). Again, Ray did not appear for his video deposition, and he did not tell Plaintiffs' counsel beforehand that he would not attend. Mem. Op. & Order of Mar. 24, 2021, at 16 (citing Show Cause Order 1, ECF No. 848 (Moon, J.)).

On August 27, Judge Moon issued yet another order directing Ray to appear by video for his deposition, which had been rescheduled for 9:30 a.m. ET on September 14, 2020. Show Cause Order 3. Judge Moon also ordered Ray to appear by video at 2:00 p.m. on September 14 to show cause why he should not be held in contempt of court for violating my July 23 Order compelling his attendance at the July 29 deposition. *Id.* at 2. Judge Moon's Show Cause Order

8

further provided step-by-step instructions (with clear deadlines) for Ray to participate in both his deposition and the contempt hearing and invited the parties to offer argument or evidence as to "whether Ray should be adjudged in contempt of court, and regarding any appropriate sanction(s) to compel [his] compliance with court orders." *Id.*; *see id.* at 2–4; Ray Contempt Order 3–4; Order of Sept. 3, 2020, ECF No. 861. Judge Moon warned Ray that his failure to comply with the Order could result in the Court "issuing a bench warrant directing the United States Marshal's Service to arrest Ray and to transport him to Charlottesville, and to hold him in custody until he purges himself of contempt." Show Cause Order 4.

Neither the Court nor Plaintiffs' counsel ever heard from Ray, and he did not appear for either video proceeding on September 14. *See* Ray Contempt Order 1, 4. Thus, "[b]ecause Ray ha[d] repeatedly ignored and continue[d] to ignore court orders in this case," Judge Moon found him in contempt of court. *Id.*; *see also id.* at 6 n.2 (finding by clear and convincing evidence that "Ray had actual as well constructive knowledge" of the Court's orders and Plaintiffs' three deposition notices, which were sent to him at his email address of record and "filed on the public docket in this action"). "In view of Ray's continued refusal to comply" with court orders, *id.* at 8, trying to enforce Plaintiffs' diligent efforts "to get discovery to which they are entitled," *id.* at 7, Judge Moon found that issuing a bench warrant for Ray's arrest was the least severe tool left to secure his full compliance. *Id.* at 7–8; *see also id.* at 6 ("Plaintiffs are entitled to conduct a deposition upon oral examination of Ray, and to get truthful and fulsome responses as part of discovery in this case, and to do so without needless expense or burden imposed on account of Ray's failure to appear at a scheduled deposition."). Indeed, I had already imposed "monetary sanctions to no effect." *Id.* at 8; *see* Order of July 23, 2020, at 1 (ordering Ray to reimburse Plaintiffs' reasonable fees and expenses caused by his failure to attend the July 13 deposition)

9

(citing Fed. R. Civ. P. 37(d)(3)). A warrant was issued for Ray's arrest on September 16, 2020. *In re Robert Azzmador Ray*, No. 3:20mc10 (W.D. Va. filed Sept. 16, 2020). As of today, "Ray is still absent from this case and proceeding in total disregard of court orders." Ray Contempt Order 8.

## IV. Discussion

Plaintiffs' pending Rule 37 motion seeks two evidentiary sanctions to supplement the permissive adverse inference instruction that I allowed, subject to Judge Moon's final approval, to sanction Ray's failure to obey the May 18, 2020 Order directing him to permit discovery of relevant documents and ESI. *See generally* Pls.' Mot. 4–5, 11–14. First, Plaintiffs ask the Court to "deem established [the] facts listed in Exhibit A" to their motion. *Id.* at 4. This "list includes certain factual issues that Plaintiffs must prove at trial to hold [Ray] liable for conspiring to engage in violence against racial or religious minorities and their supporters," *Sines v. Kessler*, No. 3:17cv72, 2020 WL 7028710, at *11 (W.D. Va. Nov. 30, 2020) ("*Sines II*"), as well as for any "reasonably foreseeable acts of [his] co-conspirators," *Sines I*, 324 F. Supp. 3d at 795–97. *See, e.g.*, Pls.' Mot. 8; Pls.' Mot. Ex. A § I ¶¶ 3–12, ECF No. 1028-1. Second, they ask the Court to "deem authentic" all "documents, photographs, and videos" obtained from any of eight social media accounts listed in Exhibit A, "as well as any [other] photographs and/or videos taken by or depicting Ray," Pls.' Mot. 14. *See id.* at 4, 7, 11. "This proposed sanction would establish a factual presumption, subject to rebuttal by any Defendant, that certain documents or photographs Plaintiffs might offer into evidence at trial are 'what the proponent claims' them to be, Fed. R. Evid. 901(a)." *Sines II*, 2020 WL 7028710, at *12 (citing *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009); *Orr v. Bank of Am.*, 285 F.3d 764, 776 (9th Cir. 2002)). Plaintiffs argue that these "appropriately tailored" sanctions are necessary because Ray's refusal to appear for his court-ordered deposition denied Plaintiffs the opportunity to question him under oath about "key

10

facts that Plaintiffs have a good-faith basis to believe" they could have established at trial and to "authenticat[e] key evidentiary materials that they have a good-faith basis to believe are authentic." Pls.' Mot. 11; *see also id.* at 4–5, 11–13.

*

Ray violated my July 23, 2020 Order directing him to appear by videoconference for his deposition on July 29, 2020. *See* Ray Contempt Order 6–7. Thus, there is no question that the Court should sanction Ray under Rule 37(b) "both as a matter of justice" in this case "and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) (Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). *Accord Sines II*, 2020 WL 7028710, at *11–17 (granting in part Plaintiffs' Rule 37(b) motion for evidentiary sanctions against another pro se Defendant who had been held in contempt for violating court orders). Choosing the appropriate sanction(s) requires me to consider whether Ray acted in bad faith, the kind and degree of prejudice his conduct caused Plaintiffs, and whether alternative, less severe sanctions would provide an effective remedy and deterrent. *See S. States Rack & Fixture*, 318 F.3d at 597.

I have already found that Ray's failure to obey orders to provide written discovery, after being warned that the Court would impose Rule 37 sanctions for his continued noncompliance, amounted to "bad faith" conduct. *See generally* Mem. Op. & Order of Mar. 24, 2021, at 19–21 (collecting cases finding bad faith). Ray's failure to obey the July 23 Order compelling him to appear by videoconference for his rescheduled deposition on July 29 was also in bad faith. *See id.* at 23. "'Ray had actual and constructive knowledge'" of this Order "because the Court sent [it] to his email address of record, and [it was] not returned as undeliverable." *Id.* at 20 (quoting Ray Contempt Order 6 & n.2). Yet, he "made no effort to acknowledge [his] obligations," *Young*

11

*Again Prods.*, 459 F. App'x at 303, with respect to that directive—even after having been ordered to reimburse Plaintiffs for the July 13 deposition and warned that he may be arrested and held in contempt if he did not appear and participate in good faith on July 29. *See generally* Mem. Op. & Order of Mar. 24, 2021, at 16–17, 19–23; Ray Contempt Order 6–8. Such flagrant disregard for a party's discovery obligations and the judicial process must obviously be deterred. *See, e.g.*, *Middlebrooks v. Sebelius*, Civ. No. PJM-2792, 2009 WL 2514111, at *3 (D. Md. Aug. 13, 2009) ("Violating court orders to appear for deposition . . . without even attempting to offer justification or excuse go to the heart of the court process and totally inhibits a just resolution of disputes. Emphatically, this type of behavior needs to be deterred.").

"Ray's 'repeated and ongoing discovery misconduct' throughout this litigation," including his failure to obey the July 23 Order, has caused "significant" procedural and substantive prejudice to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner. Mem. Op. & Order of Mar. 24, 2021, at 21 (quoting *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014)). As Judge Moon already noted, Plaintiffs' counsel "diligently tried to schedule Ray's deposition" beginning in May 2020 and "appeared at, and made all necessary arrangements for, no less than three properly-noticed depositions for Ray at considerable expense and effort—well beyond that which is expected of a party to secure a deposition." Ray Contempt Order 7. Ray's failure to appear "unacceptably forestalled Plaintiffs' ability to get discovery to which they are entitled," *id.*, including Ray's "truthful and fulsome" answers to oral questions posed by Plaintiffs' attorneys, *id.* at 6. *See Sines II*, 2020 WL 7028710, at *14 (collecting cases). "[D]iscovery was especially critical in this case because it is inherently difficult to prove a conspiracy." *Id.* "Even in criminal prosecutions, 'a conspiracy is usually proven by

12

circumstantial evidence' such as 'a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *Id.* (quoting *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (cleaned up)). Ray's willful failure to be deposed on those and other relevant topics "leaves an evidentiary gap justifying an 'appropriately tailored sanction' against him." Mem. Op. & Order of Mar. 24, 2021, at 22 (quoting *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017)); *see Sines II*, 2020 WL 7028710, at *14.

Finally, Plaintiffs' request for evidentiary sanctions is appropriate. *Sines II*, 2020 WL 7028710, at *16–17; *see* Fed. R. Civ. P. 37(b)(2)(A)(i); *cf. GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13cv1081, 2015 WL 12942202, at *2 (N.D. Cal. Oct. 23, 2015) ("Because the 30(b)(6) witnesses were plainly unprepared to testify knowledgeably about the Hardee document in violation of the court's order, discovery sanctions under Rule 37(b)(2)(A)(i) are warranted and the court orders the Hardee document deemed authenticated."). A multi-week jury trial in this case is set to begin, after numerous discovery-related delays, in late October 2021. Ray has made clear that he will not comply with this Court's discovery orders even under threat of monetary sanctions, civil contempt, arrest, and detention. Appropriately tailored evidentiary sanctions will still allow Ray to defend himself at the upcoming civil trial if he wants to and will not have an impermissible "spillover" effect on any Defendant who did not disobey a discovery order. *Sines II*, 2020 WL 7028710, at *16 (citing *Peltz v. Moretti*, 292 F. App'x 475, 477–78 (6th Cir. 2008)); *cf. Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (recognizing "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *Brice v. Nkaru*, 220

13

F.3d 233, 240 (4th Cir. 2000) ("[A] party in a civil suit cannot generally refuse to testify if called by the opposing party.").

V. Conclusion

Plaintiffs' Second Motion for Evidentiary Sanctions Against Defendant Robert "Azzmador" Ray, ECF No. 1028, is hereby **GRANTED in part** and **DENIED in part** as follows:

1. All documents, photographs, and videos from the following social media accounts ("platform, username") will be deemed authentic, subject to rebuttal by any Defendant, for purposes of Rule 901 of the Federal Rules of Evidence:

    a. Discord, Azzmador

    b. Discord, Azzmador#6970

    c. Skype, azzmador.returns

    d. Twitter, The Azzmador

    e. Twitter, Azzmador1488

    f. Gab.ai, Azzmador

    g. The Krypto Report, Azzmador

    h. The Daily Stormer, Azzmador

Pls.' Mot. Ex. A § II ¶¶ 1–8; *see Sines II*, 2020 WL 7028710, at *17.

2. Plaintiffs' additional request that "any photographs or videos that Plaintiffs have a good-faith basis to believe were either taken by Ray, or depict Ray," be deemed authentic, Pls.' Mot. § II, is **DENIED without prejudice.** The proper vehicle to make this request is a motion in limine asking the presiding District Judge to determine whether Plaintiffs made a prima facie showing that a *specific* photograph or video "is what the proponent claims it

is." Fed. R. Evid. 901(a); *see United States v. Habteyes*, 356 F. Supp. 3d 573, 581 (E.D. Va. 2018). Motions in limine shall be filed on or before October 4, 2021. Am. Sched. Order, ECF No. 991.

3. The following facts will be taken as established against Defendant Robert "Azzmador" Ray for purposes of this civil action only:

   a. Ray was a writer for *The Daily Stormer* from at least July 2016 through at least March 2020 (Pls.' Mot. Ex. A § I ¶ 1);

   b. Ray entered into an agreement with one or more coconspirators to plan the Unite the Right event that took place in Charlottesville, Virginia on August 11 and 12, 2017 (*id.* ¶ 2);

   c. Ray entered into an agreement with one or more coconspirators to engage in racially motivated violence in Charlottesville, Virginia on August 11, 2017 (*id.* ¶ 3);

   d. Ray entered into an agreement with one or more coconspirators to engage in racially motivated violence in Charlottesville, Virginia on August 12, 2017 (*id.* ¶ 4);

   e. Ray was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017, in Charlottesville, Virginia (*id.* ¶ 5);

   f. It was reasonably foreseeable to Ray and intended by him that coconspirators would commit acts of racially motivated violence and intimidation at the torchlight event in Charlottesville, Virginia on August 11, 2017 (*id.* ¶ 6);

   g. It was reasonably foreseeable to Ray and intended by him that coconspirators would commit acts of racially motivated violence and intimidation at the Unite the Right event in Charlottesville, Virginia on August 12, 2017 (*id.* ¶ 7);

   h. Ray attended the torchlight march on August 11, 2017 (*id.* ¶ 10, cl. 1);

   i. Ray attended the Unite the Right event on August 12, 2017 (*id.* ¶ 11, cl. 1); and

    j.    After the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017, Ray ratified the racially motivated violence that occurred at Unite the Right (*id.* ¶ 12).

*See generally Sines I*, 324 F. Supp. 3d at 775, 789, 795–97; Pls. Mot. Ex. B (Daily Stormer article instructing attendees to bring tiki torches, pepper spray, shields, and flagpoles); *id.* Ex. C, Azzmador#6970, Response to andrewanglin#3674 on Latveria #general, Discord (Aug. 8, 2017) ("I've been in chats all evening getting everything coordinated to get our guys []supplied, updated, and secured with a ride to the event, then another logistics chat with the organizers."), ECF No. 1028-3; *id.* Ex. D, Azzmador#6970, Comment on Thunderdome #events, Discord (July 28, 2017) ("I just got done with an hours long chat with some of the event organizers and I feel better about the thing. The plan is the same, gas the kikes, pr war now, plenty of trolling and lolz."), ECF No. 1028-4.

4.    The Court **DENIES without prejudice** Plaintiffs' request for an order taking as established the proposed facts that:

    a.    "It was reasonably foreseeable to Defendant Ray and intended by him that a coconspirator would engage in racially motivated violence by intentionally driving a car into a crowd of counter-protestors on August 12, 2017" (Pls.' Mot. Ex. A § I ¶ 8);

    b.    Ray "committed multiple overt acts in furtherance of the conspiracy he entered into to commit racially motivated violence at the Unite the Right event in Charlottesville, Virginia on August 12, 2017" (*id.* ¶ 9);

    c.    Ray "committed acts of intimidation and violence in furtherance of the conspiracy" while attending the torchlight march on August 11, 2017 (*id.* ¶ 10, cl. 2); and

    d.    Ray "committed acts of intimidation and violence in furtherance of the conspiracy" while attending the Unite the Right event on August 12, 2017 (*id.* ¶ 11, cl. 2).

*See generally Sines II*, 2020 WL 7028710, at *17. I previously denied Plaintiffs' request to deem these facts established against another Unite the Right organizer because the proposed language "either [was] not supported by the record . . . or [was] too vague to justify the requested evidentiary sanction" under Rule 37(b)(2)(A). *Id.* The same result is warranted here. The facts alleged in Plaintiffs' complaint focus on Ray's conduct in promoting Unite the Right generally, as well as his leadership and statements at the torchlight march on August 11. *See Sines I*, 324 F. Supp. 3d at 789, 796; Second Am Compl. ¶¶ 25, 27, 83, 87, 90–92, 109, 115, 142–43, 145, 149, 151–52, 156, 158, 168, 186, 201, 225–26. While Plaintiffs plausibly alleged that Ray "used violent language and demonstrated signs of planning for violence" in the lead up to Unite the Right, *Sines I*, 324 F. Supp. 3d at 789, the record before the Court does not support a finding that establishes Ray reasonably foresaw or intended that "a coconspirator would engage in racially motivated violence by intentionally driving a car into counter-protestors on August 12,"[6] Pls.' Mot. Ex. A § I ¶ 8. *Compare* Pls.' Mot. Ex. B (Daily Stormer article instructing attendees, "Do no attack or start fights under any circumstances! We do not start fights, but if attacked, we will defend ourselves with ruthless efficiency!" (emphasis omitted)), *and* Second Am. Compl. ¶ 115 (alleging that Ray shared a link to this Daily Stormer article Discord's "Southern Front" server), *with Sines v. Kessler*, --- F. Supp. 3d. ---, ---, 2021 WL 4037402, at *26 (W.D. Va. Sept. 3, 2021) (finding a genuine dispute of material fact as to whether Defendant James Fields's car attack was "reasonably foreseeable" to certain other Defendants where Plaintiffs "identified numerous statements on the Discord Charlottesville 2.0 channel[] describing the possibility of running over counter-protestors at Unite the Right" and produced "substantial evidence" showing those Defendants' agents "actively used Discord in their preparations for Unite the Right").

---

[6] My determination, of course, does not preclude a factfinder from determining that Plaintiffs have established this fact upon consideration of all the evidence presented at trial.

17

**IT IS SO ORDERED.**

                                          ENTER: September 22, 2021

                                          Joel C. Hoppe
                                          U.S. Magistrate Judge