IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et. al

    Plaintiffs

v                         Case No:  3:17-cv-072-NKM

Jason Kessler, et al

    Defendants

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 27 2021

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

## MOTION IN LIMINE TO BAR PLAINTIFFS FROM ARGUING OR PRESENTING EVIDENCE IN SUPPORT OF THEORIES OF AIDING OR ABETTING OR CONTRIBUTORY NEGLIGENCE TOWARDS VIOLATIONS OF VA ANN CODE §8.01-42.1, ASSAULT, OR ANY OTHER TORT

Comes Now the Defendant, Christopher Cantwell, and, he Moves this Court in Limine to Bar the Plaintiffs From Arguing Or Presenting Evidence At Trial In Support Of Theories Of Aiding And Abetting Or Contributory Negligence Towards Violations Of Va Ann Code §8.01-42.1, Assault, Or Any Other Tort. In support, he states as follows:

## Summary

1) The Plaintiffs here, in their Second Amended Complaint, have accused Cantwell and the other Defendants of conspiring to violate Va Ann Code §8.01-42.1, conspiring to commit assault, and, conspiring to commit other acts, many of which Cantwell will argue separately are not torts, even if they may be criminal violations. However, it appears that, at trial, Plaintiffs are not intending to present evidence of a conspiracy, but, evidence that Cantwell and his fellow Defendants aided and abetted others, not Defendants, in the commission of torts by soliciting, inciting, or, otherwise inducing the commis-

-1-

sion of those torts. Because the Second Amended Complaint does not provide Cantwell and the other Defendants notice of an intent to proceed on an aiding and abetting theory of liability pursuant to Fed.R.Civ. P. 8, Cantwell asks that the Plaintiffs be barred at trial from arguing or presenting evidence in favor of such a theory of liability.

The Alleged Conspiracy
----------------------

2) Cantwell has previously presented to the Court a 45 page transcript ("lead trans") of the alleged "leadership meeting" where the Second Amended Complaint states that he agreed to enter into a conspiracy with Kessler, Kline and Ray to engage in assault and violations of Va Ann Code §8.01-42.1. A review of this alleged agreement illustrates the problem that Plaintiffs now face.

3) Lead trans p 1-6 begins with Jason Kessler's appeareance. As Kessler discusses the torchlit march which is to begin in about two hours, Cantwell states:

> "I'm going to tell you from my perspective, if we're going to do it at all, I want the cops involved ... [M]y suggestion would be let's, if they are, for whatever reason, unwilling or unable to escort us through this, I would suggest calling that part of it off ..."

lead trans p 2.

Does someone conspiring to commit racial assault ask that the police escort him and be present when the assault is suppoed to occur? Does he suggest cancelling the event if the police will not provide an escort?

4) Cantwell does say, "If these guys fucking attack us, we're going to fucking hurt them," but; Kessler doesn't agree to that; he immediat-

-2-

ely steps in to calm Cantwell and the crowd down, stating:

"We really want to look like the good guys ... So the best thing we can do is act like civilized white people ... If you know, if you wanna argue with somebody, by all means, argue with them, try to keep a civil debate, don't use ethnic slurs, that kinda stuff. That is going to get us into trouble ...for this format its not appropriate."

lead trans p 2-3.

Here's Kesller saying don't even use ethnic slurs during this march. Do the Plaintiffs have some expert on "Nazi double talk" who can say that this is evidence of "public face / private face" where Kessler is secretly signalling that this group should commit racially motivated violence? This is the "private face", this is the private meeting. Where's the conspiracy?

5) Now, the next speaker is one "Kurt Vandal", a man who is conspicuosly absent from the list of Defendants in this case, and, who does try to involve Cantwell and others in an agreement to commit acts of violence, an agreement that Cantwell ultimately declines to join. lead trans p 6-19. First, no one really seems to know who this "Vandal" is or why he's speaking. He calls himself the "logistics operations director" and he pitches a scenario where the police stand down, a "kill zone" develops, and, the white nationalist demonstrators need to seize Lee Park. lead trans p 6-10. He then tells "all the security forces, all the people who want to be boots on the ground tomorrow" to appear at MacIntire Park for a "shuttle service" that, had it occurred, would have likely taken them directly to the Charlottesville Jail where eager FBI agents and Asssitant US Attorneys, like the wife of Plaintiff's counsel, would have been waiting to process them for conspiracy. lead trans p 12-14.

-3-

6) On page 15, "Vandal" tries to bring Cantwell into the conspiracy. Cantwell, however, is so disinterested that he asks:

> "If I were to forget everything else here, where should I be as a speaker?"

<u>lead trans</u> p 15.

This obviously annoys "Vandal" who states:

> "Ya wanna get down, rough and dirty, Chris?"

<u>lead trans</u> p 15.

Cantwell then deflects "Vandal" with a joke, "there's a temptation," and, the conversation is then interrupted by the arrival of Kline. <u>lead trans</u> p 15.

7) "Vandal" then goes on to discuss "Scenarios Green, Yellow and Red". <u>lead trans</u> p 16-18. This is where he discusses even more explicit fantasy violence:

> "Basically, we're being overrun by hostiles. That is case red. This most likely will turn into a gun fight. ... If the vehicle is there ... you need to get behind that vehicle because that vehicle is going 'truck of peace'. ... Its going to clear a path for you."

<u>lead trans</u> p 18.

This is still far from an ISIS-style terror attack; "Vandal" is discussing a contingency plan to respond to an attack with a fantasy of a gun battle in downtown Charlottesville followed by using a truck to force a path out and away from the way. However, Cantwell has no idea what Vandal is talking about:

> "Truck a piece? ... truck for each piece of what?"

<u>lead trans</u> p 18.

And, Cantwell never figures it out or agrees to the "Code Red" plan.

-4-

8) Vandal then, lastly, suggests yet another way the white nationalist demonstrators can get themselves mass arrested for no good reason. <u>lead trans</u> p 19. And, it is clear that federal authorities, like, say, Plaintiff's counsel's wife, were prepared and hoping for a mass arrest of white nationalists on August 12, 2017. Again, however, Cantwell does not agree to this plan for peaceful civil disobedience.

9) Kline now enters the conversation, <u>lead trans</u> p 19-21, and, gives the plan that Cantwell agrees to:

> "So, I just got off the phone with the police. They are going to be protecting us and letting us do the torchlight march tonight. They are going to be sending almost all of their police officers that they have on duty and giving some people overtime, having them stand on the outside of us, and, basically, like, try to stay there in case counterprotesters could show up, and,if counterprotesters do show up, essentially what I explained to them our plan and she essentially said that if they see like a bloc or black bloc or whatever, coming towards us, the police are going to move in to stop it. So, we should be okay and we are going to announce on the Discord that this is still going on. Nameless Field, torchlight rally, okay?"

<u>lead trans</u> p 19-21.

Where's the plan for racially motivated violence? A plan is stated to keep the Antifa domestic terror organization away from the torches, not to throw torches at them. If an attack was planned, would these be insisting that the police be present? Their concern is that someone, the Antifa vigilante terror organization, might attack them. And, unlike the "public face" of chatter on these Discord servers, there is no mention here of "Jews", "Negroes", or any racial or religious minority.

-5-

10) After this first "leadership meeting", in which Ray has played no part, Cantwell then attends a second "PSO meeting", though he is not a "PSO" and doesn't know what a "PSO" is. lead trans p 25-34. (The term apparently means "Personal Security Organization.") This meeting is led by one "Ajax", real name unknown to Cantwell, who is also conspicuously not a Defendant here. Ajax then discusses the plan that has been entered into with the Charlottesville Police Department to bring demonstrators to and from Lee Park. Some clown in the audience again discusses the "truck of peace", but, again, Cantwell is neither involved in the conversation nor agrees to it. lead trans p 29. Ajax tells "PSDs", Personal Security Detail members, to wear "khakis, white polos, um, whatever boots you can run in," and blazers if they are carrying guns, a convenient way for law enforcement to identify them, and, potentially transforming a legal permitless "open carry" in Virginia into an unlawful unpermitted "concealed carry", giving law enforcement an excuse to make an arrest. lead trans p 31. Cantwell, however, doesn't appear August 12th in this uniform, and, again, he's not "PSD". lead trans p 25. Ajax discusses "gel pepper spray", which Cantwell neither has nor uses. lead trans p 32. And, when confronted about his camera, Cantwell says that he's using it because he's doing nothing wrong. lead trans p 33. Again, there's no conspiracy, there's no "public face / private face" duplicity, there's nothing here.

11) After Ajax' talk, Cantwell specifically divests himself of his lawfully carried guns and bulletproof vest before attending the torchlight parade. lead trans p 34. If he was plotting violence, would have not gone to get weapons instead of to put them away? Ray now appears for the first time to talk to Cantwell. lead trans p 35-37. And, then, Kessler notifies the group that an injunction

has been granted, prompting Kline to give the final plan. <u>lead trans</u> p 37-45. They cancel "Vandal's" plan to seize Lee Park at 6 AM. <u>lead trans</u> p 40-42. And, they discuss how to comply with the Charlottesville Police Department's instructions. <u>lead trans</u> p 42-45.

12) So, this is the problem that the Plaintiffs and their counsel have: right now, the FBI should be investigating them for fraud for raising $10 million dollars with #SueANazi without telling the sucker donors that there's no case. This is why Plaintiffs want to segwey away from a "conspiracy" and into "aiding and abetting" liability at trial, and, why the Court needs to be vigilant to prevent this.

Conspiracy v Aiding And Abetting
--------------------------------

13) Solicitation and incitement are acts that can, under certain circumstances, be made the objects of criminal liability. see, eg, <u>United States v Miselis</u> 972 F 3d 518 (4th Cir 2020) citing <u>Brandenburg v Ohio</u> 395 US 447 (1969). However, as long as they remain inchoate, they are not privately actionable; for their to be a private action based upon a solicitation or incitement theory, there has to be an injury, which essentially means that the solicitation or incitement has to rise to the level of aiding and abetting; the controlling case on this is <u>Rice v Paladin Enters</u> 128 F 3d 233 (4th Cir 1997). In <u>Rice</u>, the defendant, Paladin Press Enterprises, published a book, <u>Hit Man: A Technical Manual For Independent Contractors</u>, which was used as a guide by a man who murdered Rice's family. Rice sued, and, Paladin Press stipulated that it did intend <u>Hit Man</u> as a solicitation to commit murder. The Fourth Circuit then found that when a solicitatoin or incitement leads to the commission of a tort, the solicitor or inciter may be liable as an aider and

-7-

abetter (under Maryland law, though Cantwell is aware of no substantive difference with Virginia law.) <u>Rice</u>.

14) Conspiracy, however, is a very different creature. As the Court has noted in its Order denying the Motion to Dismiss, <u>Sines v Kessler</u> 324 F Supp 765 (WD Va 2018), conspiracy requires that "Plaintiffs must allege that each Defendant entered into an agreement with a specific co-conspirator to engage ... in racially motivated violence at the August 11th and 12th events. The plausibility of these factual allegations increases as Plaintiffs add specificity about the method of agreement, the time or place of the agreement, and, the scope of the agreement."

15) The Defendants have pled that the agreement involving Cantwell occurred August 11 at the meeting, a transcript of which is attached, where no such agreement occurred, and, no reasonable jury could find that such a meeting occurred. Further, Cantwell is somewhat unique here in that he doesn't really know the other Defendants in this matter. He doesn't socialize with them. He has little contact with them. And, he's only at the meeting because "Vandal", the Code Red provocateur, has invited him at the last minute to attend.

16) Cantwell has just begun to review what turns out to be thousands of poorly labelled electronic documents that the Plaintiffs dumped on him in April 2021, and, which he was prohibited from reviewing until September 15, 2021. However, it is clear from the so-called "expert" reports, which Cantwell has also addressed in his Motion regarding bias against Judaism and which he will also likely address in another Motion in Limine, that what the Plaintiffs are trying to do is introduce inflammatory statements that Cantwell has made on his podcast much prior to the instant event, statement that

will likely be also offered out of context, and, use the "experts" to take what is really an aiding and abetting argument and twist it into a "conspiracy."

17) For example, in its ruling of <u>Sines v Kessler</u> 2021 US Dist LEXIS 72553 (WD Va 2021), this Court ruled that Blee and Simi would be permitted to opine that "To organize [Unite the Right], Defendants used the cultural symbols, rituals, slogans;- language, and, references to historical figures that are the hallmarks of the WSM [the so-called White Supremacist Movement]", "Defendants shaped and made use of WSM culture and networks to recruit participants and to plan and execute [Unite the Right].", "The coordinated race-based violence facilitated and committed by the Defendants at [Unite the Right] is emblematic of WSM tactics." At the time that the Court made this ruling, the Plaintiffs were misrepresenting to the Court that they could make a case that the Defendants engaged in a conspiracy on Discord, and, that they would have language that was ambiguous and which could be helpful interpreted by two woke ḍaḍḍḍes⁞ opining for money that "Defendants used WSM tactics, principally the reliance on racial animus as a motivator, the intentional use of violence to achieve their goals, and, a coordinated strategy to obfuscate their aims through the use of 'double-speak', 'front stage / back stage behavior' and a discrete and new age communications platform." <u>Sines</u>.

18) Certain defendants objected to Blee's and Simi's proposed testimony because it is absurd and demonstrably false as well improperly opines on an ultimate question; unfortunately, absurd and demon-

-9-

strably false testimony is something of a staple of the federal judicial system, as the law permits a jury to judge all credibility issues, and, experts in a civil case may opine on an ultimate issue, unlike in a criminal matter. Fed.R.Evid. 601, 701-702, 704. Cantwell isn't challenging this here. However, the proposed expert testimony and all testimony regarding Cantwell's or others prior statements, whether on podcasts or Discord or anywhere else, still require foundation and relevance, and, that's what's challenged here.

19) If the Plaintiffs had any basis to argue that Cantwell engaged in a conspiracy that led to the specific torts suffered by the Plaintiffs, an alleged violent charge at the Thomas Jefferson statue, the alleged throwing of a torch at Romero, whatever it is that "John Doe" is complaing of, then, this testimony about prior statements that comprised the formation of that conspiracy and their meaning would be relevant. Further, if this expert testimony was intended to interpret the remarks that the video recording shows Cantwell made August 11, 2021, when he allegedly entered the conspiracy, this testimony could be relevant. For example, if Cantwell had made some statement like "okay, I guess I'll have to lead the attack on those Negroes when we go to lynch them at the Jefferson statue", and, he was arguing this was a "joke", his prior podcast statements like "boy, I'd like to lynch me some Negroes", would be relevant to show motive, and, these experts could contextualize that. But, there is nothing here on this video that could possibly give this expert testimony on the meaning of Cantwell's prior podcast statements or even the introduction of those statements any relevance. What statement on this tape of the alleged agreement to engage in racial violence needs this contextualization?

-10-

20) What the Plaintiff's actual theory is is that Cantwell made racially violent or arguably racially violent statements months prior to these rallies, and, that somehow this, perhaps by osmosis, infected the demonstrators and caused them to commit torts such as assault or violations of Va Ann Code §8.01-42.1. That's what experts like Lipstedt, Blee, and Simi are for, and, that is what these prior statements are for. If the Plaintiffs wanted to pursue that line of reasoning, which is an aiding and abetting theory and not conspiracy and not conspiracy, they had to plea it. They didn't. And, because they didn't, they must now be barred from presenting that theory of liability and any evidence that solely supports it.

21) And, while its not clear that one can conspire to commit negligence, the same arguments made in favor of aiding and abetting can be made in favor of contributory negligence, i.e., that Cantwell knew that people listening to his show might take his statements about racial violence a certain way and he was thus negligent in contributing to, say, a torch being thrown at Romero. These arguments, for the same reasons given above, should be barred because the Plaintiffs have not given Cantwell notice in their pleading of their intent to pursue such a theory.

Thus, for good cause shown, Cantwell Moves this Court In Limine To Bar Arguing Or Presenting Evidence In Support Of Theories Of Aiding And Abetting Or Contributory Negligence.

Respectfully Submitted,

*/s/ Christopher Cantwell*
Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

-11-

## CERTIFICATE OF SERVICE

I herbey certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class postage prepaid, for posting upon the ECF system to which all parties are subscribed, as well as handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court, this 27th day of September, 2021.

*Christopher Cantwell*

-12-