IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

Elizabeth Sines, et al [
[
    Plaintiffs [
[
v [ Case No: 3:17-cv-072-NKM
[
Jason Kessler, et al [
[
    Defendants [
[

## CANTWELL'S REPLY TO Doc 1080

Comes Now the Defendant, Christopher Cantwell, and, he makes the following Reply to the "Plaintiff's Position On Trans portation Costs Of Defendant Christopher Cantwell," Doc 1080:

1) Cantwell has previously responded to the Court's Order directing parties to address the question of paying for his transportation costs, noting that the Court lacks statutory authority to assess these costs, or, if it has such authority, that it can only assess such costs against the party against whom judgment is taken.

2) The Plaintiffs agree that the Court may generally not assess costs against Cantwell, and, certainly cannot make payment of such costs a condition of his transportation. Doc 1080 p 2 citing Hawks v Timms 35 F Supp 2d 464 (D Md 1999); Ballard v Spradley 557 F 2d 476 (5th Cir 1977); Rivera v Santirocco 814 F 2d 859 (2nd Cir 1987); Story v Robinson 684 F 2d 1076 (3rd Cir 1982).

3) The Plaintiffs also mis-cite Muhammed v Warden, Baltimore City Jail 849 F 2d 107 (4th Cir 1988), for the mistaken propositions that the Court can assess costs against Cantwell for his transportation and that the Court can bring Cantwell to this District solely to testify.

-1-

4) In reality, <u>Muhammad</u> states only that the Court can consider the costs of transporting Cantwell, not assess them. What is says that is more important is that:

> "Ideally, ... such a plaintiff [a prisoner] should be present at the trial of his action, particularly if, as will ordinarily be true, his own testimony is potentially critical. Not only the appearance, but, the reality of justice is obviously threatened by his absence."

<u>Muhammad</u>.

The Fourth Circuit also noted that appearance at trial is a Due Process right, and, while it may be limited, it may not be "arbitrarily denied" and that there is a presumption that the prisoner should be present. <u>Muhammad</u>.

5) Cantwell also notes that talking about him paying the costs of transportation or housing is incorrect. 18 USC §4007-4008 require that these expenses be paid out of the Treasury, so, one can only talk about recouping those expenses.

6) The Plaintiffs here suggest that it would somehow be less expensive for the US Marshals Service ("USMS") to bring Cantwell here for his testimony and then return him than it would be to allow him to participate in the entire trial. This is false. First, the USMS transports prisoners by plane from pickup locations to the central hub at the Federal Transfer Center ("FTC") Oklahoma City, then transports them from that hub to the hub here in West Virginia, from which they are taken on a bus to the local jail. The USMS contract with the local jail pays $50-$80 a night to house a prisoner, and, pays certain fees associated with transporting prisoners to the courthouse, about $30 a trip, or, $60 a day. The transports to the

-2-

courthouse are already scheduled, involve multiple prisoners, and, there is no additional cost in placing Cantwell on the van going there. So, the total cost of housing Cantwell at the local jail for a month is about $1500-$2400, much less than the alleged almost $16,000 the USMS is claiming. Second, the cost of setting up a special transport, whether a van or a plane ride, for Cantwell from Southern Illinois on the ten hour drive to Charlottesville is more than placing him in the regular transit. The regular transit is already staffed and scheduled; a special van will require two dedicated Marshals to spend a day bringing just him. So, this argument by the Plaintiffs is nonsense, and, again, Cantwell wants discovery as to the costs of transportation, housing, and the like, because the USMS is exaggerating their expenses and likely giving a per-prisoner average cost of transporation after including all of their operating expenses, including the bloated bureaucracy that runs the JPATS (Joint Prisoner and Transport System).

7) The Plaintiffs don't want Cantwell at the trial because he intends to cross-examine witnesses, present video, and, confront their case. They have spent the past several years shutting him out of discovery and preparing to use his ignorance of the law to railroad him into a judgment, and, now that they see that threatened, they want Cantwell out of the trial, far away where his ability to examine and cross-examine witnesses will be limited. How will he present evidence such as videos by video conference? USP-Marion doesn't support that feature. How will he hand witnesses exhibits of their own writings calling for violence against him and his co-defendants by video conference? The human element, when a liar is confronted by their lies on the stand is powerful and makes an impression on the jury, but, that element is watered down when the cross-examiner is

not physically present, and, the liar doesn't have to look into the eyes of the person they are trying to condemn.

Thus, this Court should Order Cantwell produced for the entire trial and acknowledge that it has no authority to assess costs against him.

Respectfully Submitted,

*[signature]*

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

### CERTIFICATE OF SERVICE

I hereby certify that this Reply was mailed to the Clerk of the Court, 1st Class Postage prepaid, for posting on the ECF, to which all parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transfer to the Court this 27th day of Septemebr, 2021.

*[signature]*

Christopher Cantwell