IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 29 2021

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| Elizabeth Sines, et al | [ |
| Plaintiffs | [ |
| v | [ Case No: 3:17-cv-072-NKM |
| Jason Kessler, et al | [ |
| Defendants | [ |

**MOTION TO ORDER THE UNITED STATES TO PROVIDE CANTWELL WITH REASONABLE ACCESS TO THE COURT AND THE RECORD**

---

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court To Order The United States to Provide him Reasonable Access To The Court And The Record by ordering the Warden of USP-Marion, Daniel Sproul, and his staff to provide Cantwell with unrestricted access to paper copies of the Second Amended Complaint and other record documents and discovery. In support, Cantwell states as follows:

1) Cantwell has previously averred to his conditions of confinement at USP-Marion, his limited access to discovery and record materials, his need for legal assistance, and, other difficulties, and, has presented case law and asked that this Court Order the United States to appear and answer these allegations. He incorporates all of this material herein by reference.

2) As per the attached declaration, USP-Marion staff members Nathan Simpkins and Kathy Hill have informed Cantwell that, after consultation with BOP counsel Katherine Seireveld, they will not comply with the Court's Order of Doc 1067 by, among other things, allowing Cantwell to possess a physical copy of the Second Amended Complaint.

-1-

3) As previously pled, the Department of Justice has an interest in this proceeding and obstructing this proceeding, while a brief review of a legal database such as LEXIS NEXIS or WestLaw will quickly show that the USP-Marion CMU is essentially the BOP's "obstruction of justice unit", a unit where the BOP places prisoners involved in legal proceedings where the DOJ wants to put its finger on the scale by denying access to the Courts or otherwise coercing prisoners into behaving before the Courts as directed.

4) Given the conduct of USP-Marion staff, who are certainly at the direction of Warden Daniel Sproul, as well as BOP Counter Terrorism Unit ("CTU") Director J Simmons and likely BOP Intelligence Analyst Michael Collis as well, intervention by the Court is needed to ensure that Cantwell can fully and fairly litigate this matter. Sproul should be ordered under penalty of contempt to provide Cantwell with unrestricted access to public record documents in this matter as well as the discovery.

Thus, for good cause shown, Cantwell moves this Court to Order the United States to provide him with reasonable access to the Court and the record.

Respectfully Submitted,

*Christopher Cantwell*
Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

## CERTIFICATE OF SERVICE

I herbey certify that this Motion to Order the United States to Provide Cantwell With Reasonable Access To The Court And The Record was mailed

to the Clerk of the Court, 1st Class Postage prepaid, for posting upon the ECF, to which all parties are subscribed, as well as handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court this 23rd day of September, 2021.

                                                                                      _____
                                                                                      Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

| | |
|---|---|
| Elizabeth Sines, et al | [ |
| Plaintiffs | [ |
| v | [ Case No: 3:17-cv-072-NKM |
| Jason Kessler, et al | [ |
| Defendants | [ |

SWORN DECLARATION OF CHRISTOPHER CANTWELL AS TO THE
OBSTRUCTION OF THESE PROCEEDINGS BY BUREAU OF PRISONS ("BOP")
STAFF
-------------------------------------------------------------------

I, Christopher Cantwell, do hereby aver under penalty of perjury this 22nd day of September, 2021, that the following is true and correct:

1) I am over the age of 18 and have personal knowledge of the following.

2) On September 13, 2021, I asked opposing counsel, Michael Bloch, to send to me by postal mail a physical copy of the Second Amended Complaint to review because I do not have access to a printer to produce a physical copy of the electronic copy in my possession.

3) On September 20, 2021, USP-Marion Communications Management Unit ("CMU") Case Manager Nathan Simpkins stated to me that the physical copy of the Second Amended Complaint referenced <u>para</u> 2, supra, had arrived in the mail but he did not know if he would be permitted to have it.

4) On September 21, 2021, Simpkins told me that the Second Amended Complaint was "sensitive material" and that USP-Marion staff were still trying to determine if he could view it.

-1-

5) On September 22, 2021, I asked about the status of the Second Amended Complaint to Kathy Hill, the Intelligence Research Specialist ("IRS") for the USP-Marion CMU.  Hill stated that to me she had conferred with her "legal department," which I understood to mean Bureau of Prisons ("BOP") staff attorney Katherine Seireveld, and that USP-Marion staff had decided that "we're not going to help you with the civil case," contra the Court's Order of Doc 1067, meaning that I will not be able to possess the Second Amended Complaint Having so averred, I sayeth no more under oath.

_C. Cantwell_
Christopher Cantwell

-2-

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

Elizabeth Sines, et al,
    Plaintiffs
v.                                    Civil Action No. 3:17-cv-00072
Jason Kessler, et al,
    Defendants

DEFENDANT CHRISTOPHER CANTWELL'S

SEPTEMBER 22nd 2021 LETTER TO THE COURT

With some assistance I have submitted various motions and declarations in recent weeks, seeking this Court's assistance in correcting a series of wrongs which threaten to hinder the Court's efforts to justly handle this matter. At the risk of offering some repetition, I beg the Court's patience in this attempt to "tie it all in" using this format, which is more in tune with my talents.

My efforts to prepare for trial have been crippled, and it is now clear that I will not be ready to go to trial on October 25th, no matter what I do. Whatever blame may rightly be assigned to me in this, it is beyond dispute that elements entirely beyond my control have, in the last 18+ months, made my preparation impossible.

Last week I asked Plaintiffs' counsel, Michael Bloch, to send me a printed copy of the Second Amended Complaint. He promptly did so, and I was informed by Case Manager Simpkins on Monday September 20th that he had received the document, but that there was some debate among USP Marion staff as to whether or not I could have this document. He said "Let me see".

I asked again on Tuesday, and Mr. Simpkins again said "Let me see."

Today, September 22nd, a Wednesday, I made copies of Judge Hoppe's September 14th order denying my motion to enjoin the BOP. I underlined the portion where he said "The Court requests the assistance of staff at USP Marion in facilitating Cantwell's participation 'in pretrial proceedings in anticipation of trial and while he is being transported to this District for trial.'"

I handed one copy to Case Manager Simpkins. I handed the other copy to Intelligence Research Specialist Kathy Hill at mail call today, which is about the only time I get to interact with either of them on most days. Ms. Hill promptly told me "We spoke to our legal team, and we're not helping you with the civil case."

I asked Ms. Hill if she would put this in writing, and she denied the request. I asked Mr. simpkins for a "BP-8" which is a form used in the Prison's "Administrative Remedy" process to appeal

-1-

staff decisions. The BP-8 is the "Informal" resolution, and if this is unsuccessful, I can appeal that decision with a form BP-9. Then I can file a BP-10. Then a BP-11. Only then is "Administrative procedure exhausted" which is typically a prerequisite of an inmate filing a lawsuit against the BOP.

Mr. Simpkins agreed to get me the form, then promptly left the unit without doing so.

On Wednesdays here at USP Marion, there is a ritual called the "Walk Through" in which we lock in our cells and senior staff including the Warden tour the facility. I took this opportunity to bring the Court's 9/14 order and Ms. Hill's quote to Mr. Sproul's attention.

Mr. Sproul appeared to take a genuine interest in my problem, and indicated he would see what he could do. I have no reason to doubt his sincerity, personally, but my experience with the Communications Management Unit, which I understand is far from unique, is that they specialize in wasting time by dragging out administrative procedure with little intent of actually solving problems. The aim appears to be privision of the illusion of due process while making all but certain that inmates realize the futility and accept that they are powerless to do anything to correct the injustices that are routinely imposed on them.

Given the October 25th trial date and the fact that I have to be transported to Virginia before that date arrives, I obviously do not have months to traverse this process.

To simply describe this as "unfair" would not do justice to the situation, as it would fail to capture the bad faith and malice which is clearly being exhibited. I have a stack of legal documents in my cell several feet high. When the Plaintiffs send me documents I do not request, they are delivered to me faster than the Wall Street Journal. It was not until I requested the document because I specifically needed it to prepare that this problem appeared. Moreover, I am being singled out as a pro se Defendant in a way a representred Defendant would need not concern himself with. Were I represented by Counsel, I would have the documents I seek delivered under Attorney Client Privilege, and the CMU staff would not have the vaguest idea as to their contents.

The digital discovery the Plaintiffs have sent me was held for more than three weeks before it was delivered to me by Case Manager Simpkins. Doubtless a team of analysts have poured over this material, much of which is covered by a Confidentiality order. An order which, by the way, I also lack access to.

This Court has the power to administer Justice in this case. It also has the power to force me to trial on October 25th. Unfortunately, the fact that Plaintiffs' sent nearly all correspondence in this case to my email address while I was incarcerated until April of this year, and the subsequent actions of the US Government beginning less than 3 weeks later, have made it impossible for the Court to do both.

In my motion to be transported for trial, I specifically stated that I did not want a continuance. In my prior motion to sanction Plaintiffs for keeping me in the dark, I noted that I did not want their conduct to result in them gaining more time to abuse process in this matter. I have no interest in dragging this out.

Were it not for Plaintiffs' "experts" on the "White Supremacy Movement" I'd still be content to let this matter play out without much participation from me. The last update I got from James Kolenich before he moved to withdraw as Counsel was "They don't have shit." That seemed a reasonable enough assessment, since I am certain I did not participate in a criminal conspiracy, and was smart enough to wear a body camera just in case the violent criminals who assaulted me in 2017 turned out to be as dishonest as they were violent. A good bet, it turned out.

But I only found out about these "experts" when I received the Court's decision on my co-defendants' motion to exclude their testimony. That decision came mere days before the conclusion of discovery deadlines, and the moment the US Marshalls would separate me from all of my papers and data to move me out of the Strafford Department of Corrections.

My understanding of the "badges and incidents of slavery" central to the Plaintiffs' claims is that, at the time of the law's passage, "Negroes and Republicans" could not avail themselves of the law in ways their KKK Democrat opponents could, hence necessitating this decidedly alternative process. In 2017, my associates and I applied for a permit to hold a demonstration, as we had done countless times before. Our permit was revoked, we sued, and we won, as we had countless times before. We were threatened with violence by the Plaintiffs' co-conspirators, as we had been countless times before. But we relied on the police to keep us separate, as we had countless times before, and were left with little choice but to defend ourselves when the promised protection failed to materialize.

Now, an army of Jewish lawyers with an 8 figure budget bully us in court and defame us in the press and on social media platforms we have all been banned from. The people who assaulted us on camera brag about their crimes in public and have no fear of prosecution. Most of us cannot afford lawyers, and those of us who have representation, don't seem to be getting much for their money.

To call this a reversal of the circumstances under which this law was passed would not be accurate. At least then "Negroes and Republicans" had enough power to get this law passed. We dare not ask a public figure to say a word in our defense publicly, lest he risk losing his position and any capacity to help in the future. Nobody who perpetuates something so outrageous as this state of affairs can call themselves an advocate of tolerance, peace, law, or order.

I beg the Court delay this trial, and act on the motions I have recently submitted, and those I will be submitting. Specifically, that the Court order USP Marion to stop obstructing my trial preparation.

Failing this, I beg of you, Dear Reader, to take note of this moment in our history. A moment when the President of the United States says that "White Supremacy" is a greater threat to our country than al Qeada and the Chinese Communist Party. It is the same moment when it became de facto legal to assault someone who dares to utter the words "White Lives Matter" at a permitted demonstration, and these "White Supremacists" who are supposedly perpetuating "systemic racism" get thrown in prison and denied access to the very documents accusing them of the crimes they must answer for in Court.

"To find out who rules over you, simply find out who you are not allowed to criticize."

Respectfully Submitted
Christopher Cantwell

*C. Cantwell* 9-22-2021

Charlottesville Division
255 West Main Street
Room 304
Charlottesville, VA 22902




Christopher Cantwell
Inmate #00991-509
USP Marion
4500 Prison Rd
PO Box 2000
Marion, IL 62959

Office of the Clerk
U.S. District Court for the
Western District of Virginia