# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a ELI MOSLEY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,<br><br>Defendants. | Civil Action No. 3:17-cv-00072-NKM |

## PLAINTIFFS' SECOND SET OF INTERROGATORIES
## TO ALL INDIVIDUAL DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs, by their undersigned counsel, hereby request that Defendants answer under oath the Interrogatories set forth below within the time specified in Rule 33, unless otherwise agreed by the parties or required by any scheduling order entered by the Court in this action.

The Definitions and Instructions that appear below form an integral part of the Interrogatories that follow and must be read in conjunction with them and followed when responding to the Interrogatories.

**DEFINITIONS**

In each Definition, the singular shall include the plural and the plural shall include the singular. Terms used herein shall have the following meanings:

1. "Act of Violence" means, in addition to its customary and usual meaning, any act of threatening, intimidating, provoking, striking, shooting, or assaulting another person or persons in any manner, or attempts to do the same, including but not limited to punching, kicking, pushing, shooting, stabbing, burning, throwing objects or fluid or fire at or toward, or driving a car toward or into another person or persons.

2. "Advertise" means, in addition to its customary and usual meaning, to Communicate in any manner designed to encourage any behavior such as attendance, including but not limited to posting a message, poster, billboard, banner, flyer, article or other Document in any public place, whether online or in any physical space (an "Advertisement").

3. "Affiliate," in addition to its customary and usual meaning, means to associate with, connect to, relate to, partner with, ally with, identify with, share with, derive from, be a member of, or be a participant of.

1

4.     "Amended Complaint" means the amended complaint filed in the above-captioned litigation as ECF docket entry number 175.

5.     "Communication" or "to Communicate" means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to letters, memoranda, reports, emails, text messages, instant messages, social media postings, gaming consoles or platforms, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of correspondence, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all other correspondence on Social Media. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a response (such as a social media posting, "likes," "shares," or any other form of reacting to another's use of Social Media), are forms of Communication.

6.     "Concerning" means, in addition to its customary and usual meaning, alluding to, confirming, constituting, comprising, containing, commenting upon, discussing, describing, embodying, evaluating, evidencing, identifying, in connection with, involving, mentioning, noting, pertaining to, probative of, related to, relating to, reflecting, referring to, regarding, setting forth, supporting, stating, showing, touching upon, dealing with, assessing, recording, bearing upon, connected with, in respect of, about, indicating, memorializing, proving,

2

suggesting, having anything to do with, contradicting, and/or summarizing in any way, directly or indirectly, in whole or in part, the subject matter referred to in the Interrogatory.

7. "Contact" means, in addition to its customary and usual meaning, to meet, touch, or Communicate with another person in any manner, (written, verbal, or non-verbal) including in person, on the telephone or mobile device, or online, whether or not You personally exchanged words with the other person or whether you used an intermediary.

8. "Criminal Proceeding" means without limitation any federal or state action involving an infraction, violation, misdemeanor, felony or other offense.

9. "Describe in Detail" means, in addition to its customary and usual meaning, to provide a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to the subject matter of a specific Interrogatory.

10. "Document" or "Documents" means documents broadly defined in FRCP Rule 34, and includes (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, handwritten notes, notebooks, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, Advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements, and (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files (including "bookmarks" and browser history), online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, "likes", "shares", direct messages, or any other use of Social Media, and (iii) any other writings, records, or tangible objects produced or reproduced

mechanically, electronically, or photographically. Without limiting the foregoing in any way, every Communication is also a Document.

11. "Entity Defendants" means any of Defendants in the above-captioned matter who are not natural persons, including Vanguard America; Moonbase Holdings, LLC; Identity Evropa; Traditionalist Worker Party; League of the South; National Socialist Movement; Nationalist Front; Fraternal Order of the Alt-Knights; Loyal White Knights of the Ku Klux Klan; and East Coast Knights of the Ku Klux Klan, a/k/a East Coast Knights of the True Invisible Empire.

12. "Events" means the occurrences and activities described in Paragraphs 45 to 335 of the Amended Complaint.

13. "Government Official" means, in addition to its customary and usual meaning, any employee, agent, representative, or member, of any governmental agency, body, or office, whether local, municipal, state or federal, including but not limited to any elected official and his or her representatives or designees.

14. "School Official" means, in addition to its customary and usual meaning, any employee, agent, or representative of any school or university, at any level of education, whether or public of private, including but not limited to any employee, agent, or representative of the University of Virginia.

15. "Law Enforcement" means, in addition to its customary and usual meaning, any police officer, detective, agent, security officer, prosecutor or any other representative of any private, municipal, local, state, federal or university police or security department.

16. "Promotional Material" means, in addition to its customary and usual meaning, any Document that Advertises, promotes, or encourages any sort of behavior, such as attendance at an event.

17. "Social Media" means any forum, website, application, or other platform on which persons can create, transmit, share, Communicate concerning, or comment upon any information, ideas, or opinions, or otherwise engage in social networking. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media platforms: comment sections of websites, Facebook, Discord, Gab, Reddit, Imgur, Snapchat, Instagram, Google+, 4chan, 8chan, Twitter, Tumblr, YouTube, VK (also known as VKontakte or ВКонта́кте), Stormfront, Minds, WrongThink, Voat, BitChute, PewTube, and instant messaging services such as Signal, WhatsApp, Messenger, Hangouts, Telegram, or Skype.  Without limiting the foregoing in any manner, and by way of example only, the following are methods of using Social Media platforms: uploading, posting, commenting, reacting (e.g., "liking" a post), and sharing.

18. "Unite the Right" means the events described in Paragraphs 133 to 254 of the Amended Complaint, namely the marches, protests, demonstrations, rallies, gatherings, associations, meetings, congregations, celebrations, conventions, or assemblies that occurred the weekend of August 11, 2017 through August 12, 2017 in Charlottesville, Virginia.

19. "You," "Your," "Yours," "Defendant," and "Defendants" refer to the Defendants in the above-captioned matter and includes any persons or entities acting for them or on their behalf, including but not limited to all representatives, agents, employees, officers, affiliates, subsidiaries, parent companies, third parties, and attorneys, as well as any entities over which any of the Defendants have control.

20. "Weapon" means any object designed for or with the potential to be intentionally used for inflicting bodily harm or physical damage or to attempt or threaten to do the same, including but not limited to a firearm, Tiki Torch, lighter fluid or other flammable liquid, pepper spray, knife, baton, bat, rod, explosive, grenade, tear gas, armor, helmet, flagpole, pipe, earpiece, or radio.

21. Any other term used in these Interrogatories shall be given its broadest meaning(s), as defined in accordance with standard American use or as shown in a dictionary of the English language.

## INSTRUCTIONS

A. Where an Interrogatory requests knowledge or information are requested, such Interrogatory encompasses knowledge and information in your possession, custody, or control, or in the possession, custody, or control of your staff, agents, employees, representatives, and, unless privileged, attorneys, or any other person who has possession, custody, or control of your proprietary knowledge or information.

B. When the term "identify" is used in these Interrogatories, please supply the following information:

   i. when used in reference to a natural person, state the person's full name, present or last known business and residential addresses, present or last known telephone numbers or other contact information, and present or last known employment position or business affiliation;

   ii. when used in reference to any person who is not a natural person, state the full name, present or last known address, and present or last known telephone number or other contact information;

6

      iii.    when used in reference to an object, state the nature, type, and location of the object and identify the person (natural or non-natural) who has custody or control over the object.

C.    If, in responding to any of the following Interrogatories, you encounter any ambiguity or confusion in construing either an Interrogatory or a Definition or Instruction relevant to an Interrogatory, set forth the matter deemed ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the Interrogatory using that interpretation, and explain with particularity the construction or interpretation selected by you in responding to the Interrogatory.

D.    References to any natural person shall be deemed to include that natural person's agents, representatives, current and former employees, and successors.

E.    References to any non-natural person (e.g., corporation, partnership, entity, membership organizations) shall be deemed to include that non-natural person's predecessors, successors, divisions, subsidiaries, parents, assigns, partners, members, and affiliates, foreign or domestic, each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them, and any others acting or purporting to act on their behalf for any reason, and the present and former officers, directors, partners, consultants, representatives, employees, assigns, attorneys, and agents of any of them.

F.    The use of the singular form of any word includes the plural and vice versa.

G.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope. Whenever a term is used herein in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods.

H. The terms "and" and "or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

I. The term "each" means "each, any, or all" as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

J. The obligation to respond to these Interrogatories is continuing in nature and requires further response if additional information is obtained or located by you after the time of your initial answer.

K. If you believe that an Interrogatory calls for production of a Document or Communication, or requires disclosure of information, claimed by you to be protected by privilege or as attorney work product, or subject to non-disclosure on any other basis, furnish a list identifying the Documents, Communications, or information for which the protection is claimed together with the following (if applicable): the type of Document or Communication; the date or dates of the Document or Communication; the name, position, and address of each person who participated in the Document or Communication, to whom the Document or Communication was addressed, or to whom the Document or Communication or the contents thereof have been Communicated by any means; the general subject matter of the Document, Communication, or information; the specific basis for nonproduction or non-disclosure; and a description that you contend is adequate to support your contention that the Document, Communication, or information may be withheld from production and/or disclosure. If a Document or Communication is withheld on the ground of attorney work product, also specify

8

whether the Document or Communication was prepared in anticipation of litigation and, if so, identify the anticipated litigation(s) upon which the assertion is based.

L. If the answer to all or part of an Interrogatory is that you lack knowledge of the requested information, set forth such remaining information as is known to you and describe all efforts made by you or by your attorneys, accountants, agents, representatives, or experts, or by any professional employed or retained by you, to obtain the information necessary to answer the interrogatory. If any approximation can reasonably be made in place of unknown information, also set forth your best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

M. In answering each Interrogatory, you shall identify each Document relied upon that forms the basis for your answer or in any way corroborates your answer or the substance of your answer.

N. A response identifying Documents falling within the scope of these Interrogatories shall state that the Documents have or will be produced, unless the Interrogatory is objected to, in which event the reasons for objection shall be specifically stated.

O. To the extent you object to any of the following Interrogatories, state each ground for your objection in detail. If you consider only a portion of the Interrogatory objectionable, respond to the remainder of the Interrogatory, and separately state the part of each Interrogatory to which you object and specify in detail the grounds for each objection.

## INTERROGATORIES

1. Identify and Describe in Detail each Contact or Communication of any kind you had with each one of the other Defendants between January 2017 and August 13, 2017, including

the nature or content of the Contact or Communication, where and when the Contact or Communication took place, and anyone else who participated in the Contact or Communication.

**I already gave you all my emails, text messages, and recorded phone calls in discovery, and when that didn't give you any evidence of this ridiculous conspiracy theory, you demanded access to my email, phone, etc… You literally know more about this than I do at this point.**

2. Identify all expenses You incurred in planning, organizing, or attending the Unite the Right rally and the sources of funding and method of payment used to satisfy those expenses.

**I already gave you all of my financial records in discovery. You know more about this than I do right now. I drove to VA and stayed in a couple of different hotels. There really wasn't much to it, but again, you already know that.**

3. Identify and Describe in Detail each case in which You were charged in a Criminal Proceeding that resulted in a conviction, whether state or federal, including for each such case: the full title of the action, court, docket number, a description of the allegations, the disposition, and the sentence.

**I don't know why you are wasting my time asking questions you already know the answer to. Emily Gorcenski framed me for unlawful injury by caustic agent. Gorcenski then induced Goad to similarly perjure himself, and in the same trip to the magistrate, they tacked on a charge of unlawful release of gasses. Albemarle CA Robert Tracci, acting like a cuck and trying to show his constituents how hard he would go on those evil racists, upgraded the charges to malicious all the way around. I spent 107 days in jail without bond, and at my preliminary hearing, the allegations of injuring Goad & Gorcenski were shown to be complete nonsense. Since there was no dispute as to whether or not I deployed the pepper spray, the malicious release charge remained. Tracci then direct indicted me on a second**

10

**count of malicious release, using the same debunked lies as the cases which were just dismissed. He spent the next 7 months making bogus threats against my bond, and after 11 months of this idiocy, he said, essentially, "Plead guilty to two counts of assault and you can go home today" so I pleaded guilty to two misdemeanor assaults. Tracci went on to lose the election, because caving to your schemes never pays.**

4. Identify each legal matter, whether federal, state, criminal, civil, administrative, or otherwise, concerning the Events in which You have been or participated as a party or a witness, including but not limited to giving any testimony in depositions, hearings, trials, or any other legal proceeding.

**Just this scam lawsuit, and the scam criminal matter I just described. Though I stress, calling any of this "legal" is kind of a stretch, and you know it.**

5. Describe in Detail any instance in which You Advertised or promoted the Unite the Right rally, whether online or otherwise, including where, when, how, and for what period of time You displayed any Advertisement or Promotional Material and the content of such Advertisement or Promotional Material.

**This was almost three years ago at this point. I have no recollection of the details. We talked about it on the show, I posted about it on Facebook.**

6. Identify each Communication concerning the Events that You had with each member of Law Enforcement, whether before, after, or during the Events, including the name of the member of Law Enforcement, when, where, and how each Communication took place, and the nature or content of that Communication.

**I spoke to a CPD Detective before coming to Charlottesville. The name sounded like "Detective Right" but I am uncertain of the spelling. It was a female, I suspect a black woman. You should have the recording of that call in discovery. I was questioned by**

11

**Albemarle PD at the Walmart meetup on August 11th after your co-conspirators tried to frame me for brandishing. Thankfully, the body camera video you were given in discovery, saved me from jail that afternoon. While recovering from being pepper sprayed by your co-conspirator, I exchanged a few words with a police officer at UVA, but I couldn't pick him out of a lineup. I was contacted by Phil Christiana of the FBI's Joint Terrorist Task Force out of Boston after the events in dispute. He wanted my help preventing violence at an upcoming Boston demonstration, and wanted to meet me in person. I informed Phil that I would love to help him, but that I was still trying to confirm a rumor that I had a warrant to answer for in VA. Phil checked me through his system and said I had a warrant from the UVA police, and I told him that I had to find a lawyer and then I would turn myself in, and if I made bail, I'd be happy to help him however I could. Bail was not forthcoming. I also spoke to Sgt Accord of the UVA Police while I was in custody at the ACRJ, repeatedly. I told him everything I knew, and asked him to find my body camera at the scene of your co-conspirators' assault on our lawful demonstration. He said they had already combed the scene and did not find it, so I'm pretty sure your clients stole my camera. I regularly talked to the guards at the ACRJ, but I don't know any of their names, and the details of those conversation are nothing you haven't already heard on my podcast. Upon my release, I met with Special Agent Dino Capuzzo of the FBI and another FBI agent whose name I fail to recall. I gave them the same information I gave you in discovery. I also went to Charlottesville PD after identifying the man who pepper sprayed me on August 12th, and I believe the Detective's name was Oberhauser, or something to that effect.**

7. Identify each Communication concerning the Events You had with any Government Official, whether before, after, or during the Events, including the name of the

12

Government Official, when, where, and how each Communication took place, and the nature or content of each Communication.

**See above. I wasn't talking to politicians and bureaucrats, if that's what you're getting at. Just law enforcement.**

8. Identify each Communication concerning the Events You had with any School Official, whether before, after, or during the Events, including the name of the School Official, when, where, and how each Communication took place, and the nature or content of that Communication.

**I did not speak to any school official.**

9. Describe any relationship You have had from January 2017 to the present with any of the Entity Defendants, including any titles, affiliations, positions, or roles You have held within any of those organizations, the responsibilities associated with each such title, affiliation, position, or role, and any responsibilities You had within any of those organizations that were not associated with any title, affiliation, position, or role

**I am not a member of any organization involved in this suit.**

10. For each Act of Violence perpetrated by or against a Defendant or a Plaintiff, identify and Describe in Detail each such Act of Violence, where and when such Act of Violence took place, who was involved in such Act of Violence, the nature of the Act of Violence, and any person known to You to have firsthand knowledge of such Act of Violence.

**At UVA on August 11th, I saw a co-conspirator of yours who we've been calling "Beanyman" participate in a gang assault right in front of me, and when got back up with the clear intent to punch me, I pepper sprayed him. I then saw another co-conspirator of your named Thomas Massey, of Philadelphia, kick somebody in the head, and jump into a pile on someone I thought was a fellow rallygoer, so I tried to pepper spray him, but my**

13

pepper spray was out, so I beat the shit out of him with my hands until the pile was broken up. I then saw your co-conspirator Lindsay Elizabeth Moers, also of Philadelphia, trying to crack skulls open with an expandable baton. So, I rushed in trying to disarm her, but Beanyman pepper sprayed me before I got the chance.

On August 12th, as I walked from the van that dropped me off to Lee Park, I was ambushed with pepper spray by your co-conspirator Mike Longo Jr. of Philadelphia. It was a completely unprovoked ambush assault with a weapon. I had to be dragged to the park and spent the remaining time we had the park washing my face with milk and water until the police announced an unlawful assembly, and we left the park. As we walked away, your co-conspirators threw all types of shit at us and there were fights and I smelled pepper spray, but I was not directly impacted by any of that.

If you're dumb enough to take this to a jury, I'm going to show them this, and you're going to look like retards, and I am going to laugh my ass off.

11.     Identify and Describe in Detail any Weapon You possessed or carried at any point during Unite the Right, including the kind of Weapon You possessed or carried, and when, where, why, and how You acquired that Weapon; if You did not possess or carry any Weapon during Unite the Right, you should so state instead.

At the Walmart meetup on August 11th and later at Macyntire Park, I carried my Glock 19 and my KelTec P3AT, in keeping with my New Hampshire issued, and Virginia reciprocated, pistol license. Even though your scumbag friends tried to provoke a fight with me, I never drew them from my waist. This did not stop them from filing a false report, but you already know that from the Heaphy report. I have kept pepper spray on my keychain since I'm a teenager. I used that at UVA on August 11th. I did not have a pistol at UVA

14

**because it is a gun free zone, and unlike your clients, I obey the law. On August 12th, I carried a 9mm Ruger LC9 pistol. Even though some of them definitely deserved it, I didn't shoot any of your scumbag friends with it, nor did I take it out of my waistband. I also had two rifles back at my hotel room, which were brought for the purpose of target shooting. All of them were brought from a collection which I have been building for years, I couldn't tell you where each individual weapon came from, but only because their acquisition was wholly unremarkable. I live in New Hampshire, and I'm not a Democrat. Guns are normal here.**

12. Identify and Describe in Detail any direction or encouragement You gave for any other person to bring a Weapon to Unite the Right, including the kind of Weapon, the time, place, and manner in which You Communicated the direction or encouragement to bring a

Weapon, and the person to whom You Communicated the direction or encouragement; if You did not provide such direction or encouragement, You should so state instead.

**As you know from your laughably deceptive mutilation of a quote from me, I told my listeners that if they were going to carry a gun, they should conceal it, and only if they had a license to do so. I warned them against open carry because of the heated environment. This was in a blog post on my site titled "Unite the Right updates". I do not recall making any other mention of weapons, though it is possible callers brought it up on the show.**

Dated: October 29, 2019

*[signature]*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com

Of Counsel:

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com
jphillips@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Yotam Barkai (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
ybarkai@bsfllp.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com

J. Benjamin Rottenborn (VSB 84796)
Erin Ashwell (VSB 79538)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
eashwell@woodsrogers.com

*Counsel for Plaintiffs*