UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,

Plaintiffs,

v.

JASON KESSLER, et al.,

Defendants.

Civil Action No. 3:17-cv-00072-NKM

### PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE CERTAIN EVIDENCE CONCERNING DEFENDANT JAMES FIELDS'S COMMUNICATIONS

Plaintiffs respectfully submit this Motion *in Limine* to preclude Defendants from introducing evidence, or advancing arguments, that Detective Steven Young (or any other law enforcement officers) did not find any communications between Defendant James Fields and other individuals who attended or organized Unite the Right in Charlottesville, Virginia, in August 2017.

### PRELIMINARY STATEMENT

Defendants intend to advance the unfounded and highly misleading theory that James Fields had no communications with any individual who attended or organized Unite the Right. In support of that baseless assertion, Defendants will likely try to elicit testimony that Detective Young—the detective who oversaw Charlottesville's investigation into Field's car attack—reviewed the contents of Fields's phone and found no communications with any of the event organizers or rally attendees. But that anticipated trial testimony, which is a form of "negative

evidence" offered to prove the non-existence of a fact, should be excluded for at least two independently sufficient reasons.

*First*, Defendants do not and cannot establish the requisite foundation for that negative evidence. Detective Young could not and did not know the names, aliases, identifying contact information, or usernames of *all* (or even most) of the relevant persons. That is especially true since Fields was a member of, and conspired with, an organization whose *modus operandi* was to conceal the identity of its members. Thus, Young's anticipated testimony regarding Fields's communications necessarily rests on a faulty foundation and provides no support for Defendants' sweeping claim that Fields did not communicate with any of the Defendants or anyone else involved in the Battle of Charlottesville.

*Second*, Detective Young's anticipated testimony would also run afoul of Federal Rule of Evidence 403. For one, negative evidence starts with a low probative value, which is further diminished by the glaring foundational defects in Detective Young's anticipated testimony. For another, permitting Defendants to introduce Young's testimony would create a serious risk of unfair prejudice. It would invite the jury to speculate based on evidence that has a veneer of authority and conclusiveness that is completely divorced from its substance. To make matters worse, as a result of Defendants' flagrant discovery misconduct, Plaintiffs will be severely hampered in their ability to effectively cross-examine Young. Defendants should not be permitted to capitalize on the misconduct of their confederates, especially when they can attempt to elicit the pertinent testimony from persons who possess actual firsthand knowledge, including themselves and other persons who were present at Unite the Right.

Accordingly, the Court should preclude Defendants from eliciting testimony that Detective Young and other law enforcement personnel found no communications between Fields and other individuals who attended or organized Unite the Right.

## BACKGROUND

On August 12, 2017, James Fields marched with Defendant Vanguard America ("Vanguard"); he wore Vanguard America's uniform, he carried Vanguard's custom-made shield, and he stood by Vanguard's leadership. *See Sines v. Kessler*, No. 3:17-cv-00072, 2021 U.S. Dist. LEXIS 168130, at *56-*57 (W.D. Va. Sept. 3, 2021). As this Court has recognized, Vanguard goes to great lengths to protect the identities of its members, including "purposefully avoid[ing] learning any identifying information about the identity of its members in interests of 'security and anonymity.'" *Id.* at 80 (quoting Hopper Dep. 77:11-78:16). Fields shares that *modus operandi*: he, too, has gone to great lengths to shroud his membership in Vanguard and his participation in Unite the Right in secrecy. He refused to testify under oath at a deposition, refused to provide Plaintiffs with access to his social media accounts (including a Discord account he created weeks before the Battle of Charlottesville), and admittedly destroyed correspondence he received from Vanguard during the pendency of discovery in this case. *See generally* Plaintiffs' Mot. for Sanctions, ECF No. 1003. Because of Fields's flagrant discovery misconduct, Plaintiffs have been severely prejudiced in their ability to collect evidence about Fields's communications with his co-Defendants, including Vanguard and its members.

Corporal Steven Young is a detective with the Charlottesville Police Department Homicide and Major Case Unit. Ex. 1, at 9:8-19. He arrested Fields after Fields rammed his car into a crowd of peaceful counter-protesters (including several Plaintiffs), murdering Heather Heyer and badly injuring many others. Detective Young led the investigation into Fields's car attack. *Id.* at 21:6-

3

22:10. At the scene, Young seized Fields's phone, which was later provided to the FBI. *Id*. at 29:8-9, 29:17-30:7. The FBI extracted data from the phone and prepared a "spreadsheet," "this huge document of what's on that phone." *Id*. at 29:24-25. Young executed a search warrant to obtain that spreadsheet and reviewed it. *Id*. at 30:2-5, 35:8-14. Young also obtained a search warrant for Fields's Facebook account, but not for Fields's Discord accounts (including the account Fields created in the weeks leading up to the Battle of Charlottesville). Discord, of course, was the primary platform Defendants used to communicate about and plan the conspiracy.

On July 15, 2020, Fields's counsel in this litigation deposed Detective Young. During the deposition, counsel for Fields asked Young whether he found any communications Fields had with another "event organizer or rally attendee":

> Q: Did you—at any point in your investigation were you looking for communications Fields may have had with any other event organizer or rally attendee?
>
> A: Yes.
>
> Q: Did you find any such communications?
>
> A: No.

Ex. 1, at 30:12-18.

But Young never testified (nor could he) that he knows the identities—let alone the aliases, usernames, or identifying contact information (*e.g.*, phone number or email address)—of every "event organizer" or "rally attendee" of the thousands of people who were present in Charlottesville on August 11 and 12, 2017. Young also did not testify (nor could he) that he examined every communication method and identifier (*e.g.*, every Discord username, Twitter handle, email address) and device (*e.g.*, every cell phone, home phone, laptop, computer) that each of those thousands of people might have used. And finally, Detective Young did not testify (nor

4

could he) that he knows all the possible ways Fields communicated with his co-conspirators, fellow Vanguard America members, or rally attendees because Fields failed to provide critical discovery in violation of court orders. *See generally* Plaintiffs' Mot. for Sanctions, ECF No. 1003.

## ARGUMENT

Detective Young's anticipated testimony is a form of "negative evidence." Unlike affirmative evidence—such as first-hand testimony by a witness that he or she did or did not communicate with another party—negative evidence is evidence that the witness is unaware of a fact, and is used to argue the non-existence of that fact. *See United States v. Ebert*, No. 96-4871, 1999 U.S. App. LEXIS 8453, at *46 (4th Cir. May 3, 1999).[1] The Fourth Circuit has held that negative evidence is inadmissible unless "the proponent first lays a proper foundation to show that the witness *would have been aware of the fact if it did exist*." *Id.* (emphasis added) (citation omitted). Because Detective Young lacked knowledge about facts necessary for him to determine whether Fields actually communicated with other co-conspirators and rally attendees, Defendants cannot satisfy that requirement. Moreover, because Defendants are incapable of establishing an adequate foundation for Detective Young's testimony, that evidence must also be excluded under Federal Rule of Evidence 403, for its minimal probative value is substantially outweighed by the risk of unfair prejudice and misleading the jury. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 357 (3d Cir. 2005) ("The importance of the foundation requirement is underscored by the potential for unfair prejudice that may result from such evidence."); *see also* Fed. R. Evid. 403.

---

[1] Plaintiffs do not seek to limit direct testimony by any Defendant that any of them did or did not communicate with Fields.

5

### I. There Is No Proper Foundation For Law Enforcement Officers To Testify To The Absence Of Communications Between Fields And Rally Attendees Or Organizers.

Testimony by Young or any other law enforcement personnel that they did not find—or that their investigation files do not contain—communications between Fields and any "event organizer" or "rally attendee" is negative evidence. *Cf. Ebert*, 1999 U.S. App. LEXIS 8453, at *46. To the extent defense counsel intends to elicit such testimony, it would only be to argue that such evidence proves no such communications occurred. Thus, to be admissible, Defendants must be able to establish a "proper foundation"—*i.e.*, that Young has sufficient personal knowledge that, if such a communication existed, he would know about it. *Id.*

It is axiomatic that, in satisfying the requirement of showing a proper foundation, a witness cannot rely on speculation. *See* Fed. R. Evid. 602. Testimony that rests on a faulty foundation raises a serious risk of misleading the jury, as it invites jurors to "engage in rank speculation concerning the 'probative value'" of the evidence. *Forrest*, 424 F.3d at 359. For that reason, courts routinely hold that negative evidence lacking a proper foundation is inadmissible. *See, e.g.*, *Ebert*, 1999 U.S. App. LEXIS 8453, at *46; *Forrest*, 424 F.3d at 359; *Jones v. Pak-Mor Mfg. Co.*, 700 P.2d 819, 823-824 (Ariz. 1985).

That principle is dispositive here. Defendants have failed to establish a proper foundation for Detective Young's negative evidence testimony because it was impossible for him—or really anyone outside the conspiracy—to have sufficient personal knowledge to support the ***sweeping assertion*** that Defendants intend to advance: namely, that Fields *never* communicated with any rally attendee or event organizer of the Battle of Charlottesville. Nor could Defendants lay the proper foundation if they tried. Simply put, Detective Young's lack of the requisite facts is glaring and incurable. A few questions illustrate the point: Given that Charlottesville law enforcement failed to issue a warrant for all of Fields's social media accounts, how could Detective Young

6

know all of the individuals Fields did or did not communicate with? And even if Young had access to the full universe of Fields's social media communications, how could he possibly know the name of all (or even some) of the aliases or usernames of Fields's fellow Vanguard members, a group whose *modus operandi* is to conceal one another's identities? Beyond Vanguard, how could Young know the names, aliases, usernames, or identifying contact information of *all* (or even most) of the hundreds of neo-Nazis and white supremacists that marched with Fields at Unite the Right? At best, Defendants can invite the jury to speculate that, if Fields had communicated with anyone of interest, Detective Young would have found it. But the Federal Rules do not permit such rank speculation.

## II. In Addition To A Lack Of Foundation, The Testimony's Probative Value Is Outweighed By The Risk Of Unfair Prejudice, And Misleading The Jury.

Because Defendants have not and cannot establish a proper foundation for Detective Young's negative testimony, the Court should preclude its introduction at trial. But even setting aside these foundational defects, Young's anticipated testimony should be excluded on the separate ground that it would present an "unfair prejudice" that "substantially outweigh[s]" any probative value it might have. Fed. R. Evid. 403.

As to its probative value, there can be little doubt that Young's testimony is minimally probative. Indeed, in the ordinary course, an "absence of evidence of a thing is not evidence of its absence," and an "argument to the contrary is an appeal to ignorance, a logical fallacy." *Yates v. Sec'y of Health & Hum. Servs.*, 150 Fed. Cl. 575, 587 (2020). As a result, negative evidence "starts out with a low degree of probative value." *Wilson v. Clancy*, 747 F. Supp. 1154, 1159 (D. Md. 1990) (discussing silence, which is a type of negative evidence); *see also Ebert*, 1999 U.S. App. LEXIS 8453, at *46 ("Negative evidence lacks probative value unless the proponent first lays a

7

proper foundation."). And that "low degree of probative value" is even lower where, as here, Defendants cannot lay the proper foundation for the proffered testimony. *See* Part I, *supra*.

As to prejudice, it is well-established that negative evidence (like Detective Young's anticipated testimony) has an inherent tendency to cause jurors to make their decision on the basis of speculation. *See Wilson*, 747 F. Supp. at 1159. Such evidence also has a tendency to mislead the jury into perceiving that it is substantially more concrete and reliable than it actually is. Courts thus frequently exclude negative evidence, under Rule 403, "because its probative value, if any, is far outweighed by [its] prejudicial effect." *Blue Circle Atl., Inc. v. Falcon Materials, Inc.*, 760 F. Supp. 516, 522 (D. Md. 1991) (citation omitted); *see also Wilson*, 747 F. Supp. at 1159 (citing Fed. R. Evid. 403).

The Third Circuit's holding in *Forrest v. Beloit Corp.*, 424 F.3d 344 (2005), is illustrative. In that case, the manufacturer of a machine used at a paper mill was sued for injuries caused by the machine. *Id.* at 347. The defendant called as witnesses long-time employees of the paper mill, who testified they were not aware of any prior similar accidents with the machine at the paper mill. *Id.* at 354. They did not testify about the safety of the machine generally or whether any safety problems occurred with the same model of machine in other papers mills. *Id.* at 358. Their testimony was limited to their personal knowledge of the specific machine at one paper mill. *Id.* The court held their testimony was inadmissible under Rule 403, because any probative value was "so diluted" that it was "inadmissible in light of the potential for unfair prejudice that inheres in all such testimony." *Id.* Indeed, the employees' "anecdotal testimony" shed no light on whether safety incidents existed outside their knowledge, and their seemingly "concrete testimony" before a jury about the same type of machine was unfairly prejudicial. *Id.* at 359. Notably, the court held that the testimony was especially prejudicial to the plaintiff because the defendant had "fail[ed] to

8

maintain records" that could have proven safety incidents did exist, thus hampering the plaintiff's ability to cross-examine the witnesses. *Id.*

The same reasoning applies here. Young's testimony would appear to the jury as concrete and reliable. But, in reality, it is anecdotal and incomplete. As explained above, Young could not plausibly be aware of all, or even most, of the relevant facts necessary to lay the necessary foundation for the breathtaking assertion that Fields *never* communicated with any attendees or organizers of Unite the Right.

By the same token, Young's testimony would cause significant unfair prejudice for at least three separate reasons. *First*, due to its inadequate foundation, Young's testimony would "lead the jury to generalize" and make inferences "based on either false assumptions, unsupported speculation, or both." *Forrest*, 424 F.3d at 360. That is reason enough to preclude its introduction. *See id.*; *see also Wilson*, 747 F. Supp. at 1159. *Second*, and relatedly, as the lead detective who oversaw Charlottesville's investigation into Fields's car attack, Young's testimony will carry a veneer of authoritativeness that its substance does not support. Admitting Young's negative testimony thus compounds the risk that the jury will afford that testimony undue (and undeserved) weight. *Third*, because of Defendants' flagrant discovery misconduct in this case, Plaintiffs have been significantly and prejudicially hampered in their ability to effectively cross-examine Young. *See generally* Plaintiffs' Mot. for Sanctions, ECF No. 1003; *cf. Forrest*, 424 F.3d at 359 (explaining that lack of records undercut plaintiff's ability to cross-examine the negative-evidence testimony). As Plaintiffs have explained more extensively in other filings, Fields's refusal to sit for a deposition or grant Plaintiffs access to all his social media accounts deprived Plaintiffs of prime sources of evidence to test the claim that he did not communicate with any other rally

9

attendee before his arrival in Charlottesville.[2] *See generally* Plaintiffs' Mot. for Sanctions, ECF No. 1003.

Notwithstanding Defendants' relentless campaign of obstructionism during discovery, Plaintiffs were able to collect some evidence that calls into question Young's anticipated testimony about Fields's communications with others involved in Unite the Right. For example, Fields has already admitted that he sent social media posts and messages to Defendant Spencer; that he read messages from other Rally attendees and organizers on YouTube and Twitter; and that he read social media posts that discussed the planning of the event. *See* Ex. 2, Fields Ans. to 3d Interrog. Nos. 4-5, 8. Tellingly, however, Detective Young was unable to testify about those communications and interactions. That is no surprise, given his lack of knowledge about the underlying facts. Despite all this, Defendants seek to capitalize on Young's inadequately supported testimony, knowing that the jury will likely afford that testimony a presumption of reliability solely by virtue of Detective Young's status as the lead investigator in the Fields investigation. Rule 403 was designed to prevent precisely that sort of minimally probative yet highly misleading evidence.

Rather than try to confuse the jury by introducing highly prejudicial testimony that lacks adequate foundation, Defendants can and should offer their own testimony and the testimony of other persons with actual firsthand knowledge of the relevant facts.

---

[2] Of course, even assuming that fact is true—a decidedly dubious proposition—it does not prevent Fields from being a co-conspirator, as co-conspirators need not join a conspiracy from its inception nor play a major role in planning the conspiracy. *See United States v. Burgos*, 94 F.3d 849, 861 (4th Cir. 1996) (en banc).

**CONCLUSION**

For the foregoing reasons, the Court should preclude Defendants from presenting testimony, or advancing arguments, that Corporal Young or other law enforcement personnel did not find communications between Fields and other rally attendees or organizers.

Dated: October 4, 2021

Respectfully submitted,

*/s/ Jessica Phillips*
Jessica Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

Jessica Phillips (*pro hac vice*)
Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Agbeko Petty (*pro hac vice*)
Giovanni Sanchez (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
jphillips@paulweiss.com
kdunn@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
apetty@paulweiss.com
gsanchez@paulweiss.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990

11

mhiromi@paulweiss.com
nbutto@paulweiss.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), Matthew Parrott, and Traditionalist Worker Party*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, Matthew Heimbach, Matthew Parrott, Traditionalist Worker Party, National Socialist Movement, and Nationalist Front*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, Pennsylvania 15216
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Matthew Heimbach, and Traditionalist Worker Party*

I hereby certify that on October 4, 2021, I also served the following non-ECF participants via mail or electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

Robert "Azzmador" Ray
azzmador@gmail.com

Dated: October 4, 2021

/s/ Jessica Phillips
Jessica Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP

*Counsel for Plaintiffs*