Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

```
                    UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF VIRGINIA
                        CHARLOTTESVILLE DIVISION

***************************************************************

 ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                             OCTOBER 8, 2021, 9:05 A.M.
                             STATUS CONFERENCE VIA TELEPHONE
          Plaintiffs,
vs.

                             Before:
                             HONORABLE NORMAN K. MOON
                             UNITED STATES DISTRICT JUDGE
JASON KESSLER, ET AL.,       WESTERN DISTRICT OF VIRGINIA

          Defendants.

***************************************************************

APPEARANCES:

For the Plaintiffs:        ROBERTA A. KAPLAN, ESQUIRE
                           Kaplan Hecker & Fink LLP
                           350 Fifth Avenue, Suite 7110
                           New York, NY  10118
                           212.763.0883

                           KAREN L. DUNN, ESQUIRE
                           WILLIAM A. ISAACSON, ESQUIRE
                           Paul, Weiss, Rifkind, Wharton &
                           Garrison LLP
                           2001 K Street, NW
                           Washington, DC  20006
                           202.223.7300




Court Reporter:   Lisa M. Blair, RPR, RMR, CRR, FOCR
                  255 West Main Street, Suite 304
                  Charlottesville, Virginia  22902
                  434.296.9284

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER.
```

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

APPEARANCES CONTINUED:

For the Defendants:  JAMES E. KOLENICH, ESQUIRE
Kolenich Law Office
9435 Waterstone Blvd., Suite 140
Cincinnati, OH  45249
513.444.2150

MATTHEW PARROTT, Pro Se

RICHARD SPENCER, Pro Se
P.O. Box 1676
Whitefish, MT  59937

MATTHEW HEIMBACH, Pro Se
P.O. Box 278
Steubenville, OH  43592
301.525.1474

1  (Proceedings commenced, 9:05 AM)

2           THE COURT:  The public line is not open, correct?

3           THE CLERK:  That's correct.

4           I'll remind everyone when you speak, please remember
5  to identify yourself each time you speak for the court
6  reporter.

7           THE COURT:  We'll start.  If there is anyone who has
8  not identified themselves on the call, please do so now.

9           MR. MILLS:  This is Josh Mills with the Marshal
10 Service.  I'm sitting here in a conference room with two
11 others.

12          THE CLERK:  Thank you.

13          THE COURT:  Call the case, please.

14          THE CLERK:  Yes, Your Honor.  This is Civil Action
15 Number 3:17CV72, Elizabeth Sines and others versus Jason
16 Kessler and others.

17          THE COURT:  Is the plaintiff ready?

18          MS. KAPLAN:  We are, Your Honor.

19          THE COURT:  Are the defendants who have identified
20 themselves ready?

21          MR. SPENCER:  I'm ready, yes.

22          MR. KOLENICH:  Yes, Your Honor.

23          THE COURT:  Before we begin, I will remind everyone
24 that under Standing Order 2020-12, the Court's prohibition
25 against recording and broadcasting court proceedings remains in

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 force. Attorneys, parties, or staff accessing this hearing
2 today may not record or broadcast it.
3 Plaintiffs' counsel have asked for a nonpublic
4 meeting to raise issues related to security of the courthouse
5 and courtroom during trial. I find that a discussion including
6 the Marshal Service limited to issues of security can and
7 should be raised in a nonpublic manner, at least at this stage,
8 so that any specific preparations being undertaken to ensure
9 security at this trial will not be jeopardized by making them
10 public.
11 To ensure that no further discussion is a
12 nonpublic -- in a nonpublic format, I've scheduled a follow-up
13 Zoom hearing to discuss all other non-security-related matters
14 concerning pretrial and trial logistics and other preparations.
15 Plaintiffs' counsel asked for a conference in that regard, and
16 so we will try to divide these conferences in that manner.
17 Once this nonpublic call is done, we will proceed to get into
18 the next call regarding more general trial preparations.
19 I will just say one matter at the outset regarding
20 security-related preparations. In consultation with the
21 Marshal Service, the Court intends to have the litigants and
22 counsel in this case separated around the courthouse as
23 follows: The courtroom staff, as stated in my recent order,
24 will be limited to parties -- strike that. I said "courtroom
25 staff." I should have said the courtroom itself, as stated in

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 my recent order, will be limited to parties, lawyers,
2 witnesses, court staff, and court security.
3     On the third floor, defendants will be able to use
4 the jury assembly room and a suite of at least two conference
5 rooms as breakout rooms.  This should allow for both individual
6 discussion and collective discussions between defendants.  The
7 jury will also be on the third floor separated out from
8 defendants and the parties.
9     Plaintiffs' counsel will have the second floor
10 bankruptcy courtroom for a breakout room.  Only plaintiffs'
11 counsel, plaintiffs, and support staff will be on the second
12 floor from this case.
13     Lastly, any members of the public and press will be
14 on the first floor of the courthouse in the grand jury suite.
15     With that, I'll ask plaintiffs' counsel to begin with
16 any other security-related matters.  I've asked the Marshal
17 Service to be on this call as well.
18     All right.  Counsel?
19     MS. KAPLAN:  Good morning, Your Honor.  This is
20 Roberta Kaplan for the plaintiff.  We have two issues that we'd
21 like to discuss.  Let me tell you what they are, Your Honor.
22 The first has to do with the jury and potential jury
23 anonymization, and the second has to do with access to the
24 courtroom.  I was going to -- or to the courthouse, more
25 specifically.  I was going to address the first; and my

1 colleague, Karen Dunn, plans to address the second.

2 Before we begin, Your Honor, I do want to say that we
3 did have the ability to speak to Mr. Kolenich about these two
4 issues I believe yesterday, and he is generally in agreement
5 with us. I apologize; I don't think we were able to reach
6 other parties or counsel on the defense side.

7 THE COURT: All right.

8 MS. KAPLAN: Okay to begin, Your Honor?

9 THE COURT: Yes.

10 MS. KAPLAN: So we have been thinking a lot about the
11 jury here, as Your Honor may have assumed. And we are
12 concerned a bit that jurors will be concerned about serving on
13 this case. And so we have been looking at potential ways of
14 dealing with that. We saw that Your Honor has ordered that
15 Your Honor will conduct all questioning, which we think is a
16 good thing here. The other measure that we think would be
17 prudent, Your Honor, would be an anonymization process for the
18 jurors, which I can outline; and if Your Honor wishes, we can
19 submit papers on it. We think we meet the Fourth Circuit
20 standard, but let me tell you the procedure.

21 What we have in mind is that only the parties and the
22 Court would be informed of the names and addresses of jurors
23 and prospective jurors. All parties and counsel, Your Honor,
24 of course would be ordered not to disclose those names,
25 addresses, or any other information about jurors or potential

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 jurors to anyone else. Jurors who are seated would receive
2 numbers, and they would be referred to by those numbers
3 throughout the rest of the case. We propose that the
4 questionnaires for prospective jurors, that the names and
5 identifying information be redacted from those questionnaires
6 before they're turned over to parties and counsel, and that
7 there be a separate sheet that identifies the name with the
8 number, just for an added security measure.
9     And then finally, Your Honor, we think it would be
10 prudent for Your Honor to instruct the jurors that we are doing
11 it this way to reduce any unwanted publicity to them
12 individually as a result of serving as jurors in this case.
13     THE COURT: All right. Would any defendants' counsel
14 or defendants wish to speak to that now?
15     MR. KOLENICH: This is Jim Kolenich for Kessler,
16 Damigo, and Identity Evropa.
17     I don't have any objection or anything additional to
18 add to the presentation laid out by the plaintiff.
19     THE COURT: All right. Well, it seems like a
20 reasonable request. I think since you both agree on it, we
21 have a proposed -- would you all wish to send us a proposed
22 order? We issued an order yesterday, which would need to be
23 probably changed. But anyway, did you see the order that came
24 out yesterday?
25     MS. KAPLAN: We did, Your Honor. If you would like

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 us to submit a proposed order including any possible
2 modifications to do that, we'd be happy to do so.
3       THE COURT: Okay. Yeah, I would like you to do so.
4 I think that I would agree with everything you've suggested, in
5 particular now that both sides seem to agree with it. I think
6 it's a very good idea.
7       All right. Was there anything else?
8       MS. KAPLAN: Yeah, I think the next issue is for my
9 colleague, Karen Dunn.
10       MS. DUNN: Good morning, Your Honor. At the outset,
11 I want to say we appreciate the time and attention the Court is
12 paying to these issues, and also the efforts that have already
13 been put in by the Marshal Service. I personally have spoken
14 to members of the Marshal Service, and we know how many people
15 are working on this. So I think it's important that we
16 recognize that.
17       We also have spoken to Mr. Kolenich on the issues
18 that I'm going to discuss. And I believe that we are aligned,
19 although he can speak for himself, certainly.
20       So we read the Court's order that proposes that there
21 be an overflow room in the courthouse for 15 people to watch
22 each day on a first-come-first-serve basis. And we have two
23 sort of overlapping related concerns. The first is that the
24 announcement that 15 people can come watch in the courthouse
25 every day may draw a crowd to the courthouse, which could

1 create security risk and inefficiencies. And I think that is
2 our first concern about having the overflow room there. I do
3 want to note for the Court I had a trial earlier this year,
4 very high-profile trial where they did have a public phone
5 line, as this Court plans to do. And the only other people who
6 could come to the courthouse for the trial were two members of
7 the press for a press pool. And that worked quite well.
8     So our first question for the Court will be: Is
9 there a way to reconsider an announcement that draws a crowd
10 each morning, or potentially draws a crowd each morning to the
11 courthouse, because, you know, different people each day can
12 create some security risk.
13     The second related concern, if the Court does not
14 wish to reconsider the first issue --
15     THE COURT: Let me say, look, I will reconsider any
16 suggestion. So don't mind suggesting anything.
17     MS. DUNN: Your Honor, thank you so much. We really
18 appreciate that. And I do think these are hard issues,
19 especially in these times, particularly with COVID. So we may
20 need some creative thinking on behalf of the parties.
21     The second issue, which is related, is our
22 understanding is that the doors to the courthouse open at 8:30
23 and court begins at 9.
24     THE COURT: I think -- taking care of that, I think
25 the marshals now propose to open the court at 8. Will that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1  take care of that?

2          MS. DUNN:  It may in a sense.  I think the issue is
3  on behalf of the parties -- and we spoke to Mr. Kolenich --
4  both for time issues and for security issues, we are concerned
5  about trying to get into the courthouse alongside whoever shows
6  up every day.  And so I guess our first preference would be to
7  reconsider the overflow room entirely, and take care of public
8  access through a phone line and perhaps a press pool.  But if
9  that is not possible, the alternative would perhaps be to
10 sequence the entry into the courthouse to resolve the issue
11 with the 15 people first, and make sure that any crowd has been
12 completely dispersed -- although the question remains whether
13 that would be possible -- before the parties try to get into
14 the courthouse.

15         I do think we have a strong preference for the first
16 option, but are interested to hear what others have to say.  I
17 know Mr. Kolenich has also given thought to these issues.

18         THE COURT:  All right.  Thank you.

19         MR. KOLENICH:  This is Jim Kolenich, Your Honor.  I
20 don't have, again, any issues whatsoever with what the
21 plaintiff has -- the plaintiffs have presented.

22         The only thing I did discuss that they -- I think the
23 marshals are opposed to, or unable to accommodate, is there's
24 separate doors in the courthouse, particularly one next to the
25 break room on the bottom floor that I wondered if that might

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 not be an option for attorneys, at least, to enter the
2 courthouse and avoid the front door area.  However, that's just
3 a question.  It's not even a suggestion or a critique of the
4 marshals or the plaintiffs in any way.  That was my only
5 observation, Your Honor.
6         THE COURT:  Okay.
7         MR. SYMS:  Judge, this is Bill Syms with the
8 marshals.
9         The rear door entry wouldn't be sufficient due to
10 screening and security issues, and also it's access to other
11 courthouse employees.
12         As far as the front entrance goes, you know, we can't
13 control when people show up out front, whether they're here for
14 the trial or other reasons.  Opening the doors at 8:00 will
15 give us a sufficient amount of time to screen everybody and get
16 everybody upstairs to court.  We'll have security measures in
17 place to ensure that everyone is safe and secure and able to
18 enter the courthouse appropriately.  And we have also gone over
19 that with the plaintiffs' personal security team as well, and
20 they were in agreement at the time.
21         THE COURT:  Okay.
22         MS. DUNN:  One clarification, if I may.  This is
23 Ms. Dunn.
24         I do think the security people who we are working
25 with are trying very hard to work cooperatively with the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1  marshals, but they do share the concern that we raised.  And I
2  think particularly in light of -- which makes sense that it's
3  impossible to control when people show up -- I do think we
4  would ask the Court to reconsider the idea of an overflow room
5  in the courthouse, because we think that if only 15 people can
6  get in every day, and there's a first-come-first-serve desire
7  to get there, you could easily imagine for this case that there
8  would be crowds of different people every day.
9              THE COURT:  Well, I will reconsider that, because we
10 considered it a problem not to have public -- the public having
11 an opportunity to view the case.  But we'll -- I will take that
12 under advisement.
13             Are there any of the unrepresented defendants present
14 who would like to comment on this matter?
15             MR. SPENCER:  Yes, Your Honor, I can comment.  Yes, I
16 generally concur with the suggestions of the plaintiff in terms
17 of the problematic nature of having a 15-person
18 first-come-first-serve pool.  I could imagine that would just
19 attract a huge crowd.  So if you could reconsider that, that
20 would be wonderful.
21             My central concern is simply entering the courthouse.
22 I will not have a security team or anything like that.  So I
23 would like to also be in touch with the -- either the
24 Charlottesville police or the marshals, if someone could pass
25 on some contact information to me so that I could -- we could

1 schedule some kind of entry. I mean, I have legitimate
2 reasonable concerns of, at the very least, some kind of
3 protest, and at the very worst some kind of brazen attack. And
4 I think that problem could probably be solved in a reasonable
5 fashion.
6         THE COURT: State your name, please.
7         MR. SPENCER: This is Richard Spencer.
8         THE COURT: Okay. Anyone else?
9         MR. PARROTT: Yes, this is Matt Parrott. Can
10 everybody hear me?
11         THE COURT: Yes. Just a minute.
12         Could the marshal get Mr. -- can you give Mr. Spencer
13 a contact number? Can he call you?
14         MR. SYMS: Yes, this is Bill Syms. He can give me a
15 call at 434-295-3852.
16         MR. SPENCER: 3852. You said your name is Mr. Syms?
17         MR. SYMS: Yeah, S-Y-M-S. And I think everybody
18 hears your concerns, and we're doing everything we can to
19 mitigate it. You're not the only one raising these issues.
20 And so we're doing everything on our end to ensure everyone is
21 able to enter the courthouse safely, just so you're aware.
22 We'll have resources.
23         MR. SPENCER: Excellent. I will definitely be in
24 contact with you. Thank you.
25         MR. PARROTT: This is Mr. Parrott. I accidentally

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1 clicked on the Zoom link instead of the toll-free number and
2 was waiting for 15 minutes.  Is there any urgent thing that I
3 need to know from before I hopped onto the call on behalf of
4 Parrott, Trad Worker, and Heimbach?
5           THE COURT:  I don't think there's anything you need
6 to know right now that you can't find out after the call.
7           MR. PARROTT:  Yes, Your Honor.
8           THE COURT:  Okay.  All right.  The next issue?
9           MS. DUNN:  Your Honor, this is Ms. Dunn.
10          I just want to address one last thing on this issue,
11 because the point about public access is very well taken.  And
12 if it is useful to the Court, I'm very happy to pass along
13 information about the protocol that was used in this other case
14 which literally was covered by every media outlet in America.
15 So I think the circumstance is not dissimilar.
16          The Court had public lines for everybody and allowed
17 two pool reporters from the media to be in the courtroom
18 itself.  And that was sufficient for public access.  And there
19 was, frankly, never a complaint that that was insufficient.  So
20 I don't want to overburden this phone call.  But if it's at all
21 useful, you know, we went through this in May when COVID was a
22 concern, and, you know, some of the concerns that we have here.
23 And I'm happy to help share the protocols with the Court.
24          THE COURT:  All right.  I would like for you to do
25 that.  And you could also send a proposed order by email on the

1  public access too.
2          MS. DUNN:  We will do so, Your Honor.  Thanks very
3  much.
4          THE COURT:  All right.  Any other security issues?
5          MS. KAPLAN:  Not that I'm aware of for the
6  plaintiffs, Your Honor.
7          THE COURT:  All right. Well, I'll take the issues
8  you've raised under advisement.  They're good suggestions.  I'm
9  in sympathy with you.  As far as I'm concerned, I would like to
10 see as few people at the courthouse and in the courthouse as
11 possible.  So as long as we have agreement on that, I think
12 we're in pretty good shape to accommodate that suggestion.
13         MS. DUNN:  Your Honor, we're deeply appreciative.
14         THE COURT:  We'll take a few minutes.  I've got 9:25.
15 I think I can probably be online on the Zoom call at 9:30.  Is
16 that okay?  I'll see you then.
17         MS. KAPLAN:  Your Honor, this is Roberta Kaplan.  Is
18 there anything in specific that you want to address on the Zoom
19 call?  We were wondering.
20         THE COURT:  Just a minute.  Maybe the order we
21 entered yesterday clarifies everything.  We thought that
22 actually you had requested the conference.
23         MS. KAPLAN:  We did, Your Honor, but I think we've
24 covered -- this is again Roberta Kaplan.
25         I think we've covered everything that we wanted to

1  raise, at least from the plaintiffs' side.
2          THE COURT: Did any other party have any other matter
3  that they needed to bring up?
4          MR. KOLENICH: Jim Kolenich.
5          No, Your Honor.
6          THE COURT: Okay. I think that will be fine. Yes,
7  sir?
8          MR. SPENCER: Your Honor, this is Richard Spencer.
9  Yes, I would -- I am genuinely curious about scheduling. It
10 would be -- it doesn't necessarily need to be a large
11 conference call, but I would greatly appreciate it if someone
12 could walk me through scheduling. And I do have some questions
13 and issues involving COVID protocol and also how we're going to
14 be using Zoom. I don't necessarily need to bring them up with
15 you, but I would like to bring them up with someone.
16         THE COURT: Okay. Did you receive the health
17 precautions order that I think was filed on October 4?
18         MR. SPENCER: I read that, yes.
19         THE COURT: And also yesterday I filed a pretrial
20 order which gave the Court's scheduling.
21         MR. SPENCER: Okay. I actually haven't read what you
22 filed yesterday, but I can read that. I might still have some
23 issues, but I will look at that scheduling right away.
24         THE COURT: Well, if you have any, just email --
25 email, and copy the other parties on your email.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

1    MR. SPENCER:  Okay.
2    THE COURT:  All right.  Anything else from anyone?
3    MS. KAPLAN:  Not from the plaintiffs, Your Honor.
4    THE COURT:  Okay.  Thank you all very much.  I
5 appreciate your cooperation, and I hope we can move this along
6 safely.  Goodbye.
7 (Proceedings concluded, 9:28 AM)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/8/2021

C E R T I F I C A T E

I, Lisa M. Blair, RMR/CRR, Official Court Reporter for the United States District Court for the Western District of Virginia, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/s/ Lisa M. Blair                    Date: October 8, 2021