These should already have been filed
electronically, by or before the dates
indicated on their certificates of
service, per the Court's 9/07/21 order,
Doc #1041. Hence the prior and
diverse dates on said certificates.

I am only sending the hard copies for
good measure and in case any of
those electronic filings have failed
to appear, as I am unable to
verify that they appeared for lack of
access to the docket.

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 08 2021

JULIA C. DUDLEY, CLERK
BY: _____ CLERK

— Christopher Cantwell   9-30-2021

L Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

# 1158

Elizabeth Sines, et al        [
                              [
    Plaintiffs                [
                              [
v                             [      Case No:  3:17-cv-072-NKM
                              [
Jason Kessler, et al          [
                              [
    Defendants                [
                              [

MOTION IN LIMINE TO LIMIT THE TESTIMONY OF PLAINTIFFS'
EXPERTS PETER SIMI AND KATHLEEN BLEE AND TO BAR ARGUMENT AND
TESTIMONY REGARDING DEFENDANTS' ALLEGED ANIMUS TOWARDS "IMMI-
GRANTS, SOCIAL MINORITIES AND FEMINISM" AS IRRELEVANT AND
INTENDED TO CONFUSE AND MISLEAD THE JURY PURSUANT TO FED.R.

EVID 401-403

-----------------------------------------------------------------

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court
In Limine To Limit The Testimony Of Plaintiffs' Experts Peter Simi And
Kathleen Blee And To Bar Argument And Testimony Regarding Defendants'
Alleged Animus Towards "Immigrants, Social Minorities And Feminism"
As Irrelevant And Intended To Confuse And Mislead The Jury Pursuant
To Fed.R.Evid. 401-403.  In support, he states as follows:

1) In mid-September, 2021, Cantwell was able to begin reviewing the
   report of Plaintiff's experts Simi and Blee,

                            Cantwell has previously moved to bar
   any testimony relating to an incitement or aiding and abetting
   theory of liability, as opposed to a conspiracy theory, and, some
   of Simi and Blee's proposed testimony seems to be directed towards
   such a theory.  Further, this Court previously disposed of a motion

-1-

to exclude aspects of Simi and Blee's testimony other than those
contested here and invited further objection in said order. Sines
v Kessler 2021 US Dist LEXIS 72553 (WD Va 2021).

2) Simi and Blee are two left wing university professors who were each
paid $30,000 out of Plaintiff's #SueANazi funds to take woke pro-
gressive and neo-Marxist tropes and compile them into a "report"
giving the Plaintiff's political motives in bringing this case a
veneer of academic respectability. Simi and Blee's claim is that
they have previously studied some entity that they call the "white
supremacist movement" and that this study has given them special
insight into secret Nazi codes that were used on the Discord serv-
ers used in the organization of the Unite the Right rallies of
August 11 and 12, 2017, much as if they were human Enigma machines.
This Court previousy ruled that Simi and/or Blee may testify to
the "coded" meanings of Defendants' Discord posting but that "De-
fendants may later raise specific objections when the experts
testify at trial." Sines (WD Va Apr 15, 2021).

3) A review of Simi and Blee's report, however, indicates that Simi
and Blee intend to testify way outside that limited bounds in which
their testimony as to Nazi secret codes may be relevant. Aristotle,
in the fifth book of his Politics, states that a tyrant overturns
a republic by building a coalition of immigrants, women, and, slaves,
unites them with socially marginal elements, and, turns them against
the polis' proper citizens, and, it seems that Simi and Blee's
purpose in this litigation is to bring all of Aristotle's coalition
of tyranny to bear against the Defendants by testifying about alleg-
ed animus the Defendants bear towards "immigrants, social minorities,
and feminism."

4)  As previously briefed, 42 USC §1985(3) and US Const Amend XIII pro-
    scribe private conspiracies to bring the Negro back into slavery;
    they do not extend to private conspiracies against "Jews", Antifa,
    the woke progressive left, or, as here, "immigrants", "social min-
    orities" (whatever those are, as the Defendants here, being white
    working people struggling to build a nation in which they and their
    families may live at peace, are the most oppressed and marginalized
    "social minority" in the United States), and, "feminism." Griffin
    v Breckenridge 403 US 88 (1971); United Brotherhood of Carpenters
    and Joiners v Scott 463 US 825 (1983); Shaare Tefile Congregation
    v Cobb 785 F 2d 523 (4th Cir 1986); Harrison v HVAT Food Manage-
    ment 706 F 2d 155 (4th Cir 1985).  To these cases, Cantwell also
    adds Bray v Alexandria Clinic 506 US 263 (1993), where the Supreme
    Court found that animus against feminists and the women they dupe
    is not proscribed by 42 USC §1985(3) because such animus is not
    invidious, and, he reminds the Court of St Francis v al-Kharaj 481
    US 604 (1987), which found that national origin is not protected
    as a "race" under      42 USC §1981, et seq.

5)  Similarly, Va Ann Code §8.01-42.1 provides a civil cause of action
    for racially and religiously motivated assault, not assault moti-
    vated by animus against immigrants, feminists, or, so-called "social
    minorities."

6)  For the same reason that evidence of animus against those who id-
    entify as "Jews" should be barred, evidence of animus against im-
    migrants, feminists and so-called "social minorities" should also
    be barred.  Here, the Plaintiffs are part of the socially dominant
    majority culture of this country's liberal internationalist elite.
    Part of this dominant culture is the tactic of "crying out in pain

-3-

as you slap someone", the pretense that you, a member of this country's chosen, socially dominant elite, are, in fact, an "oppressed" person, and, the people that you have actually enslaved and tyrannize over are somehow "oppressing" you by even speaking out against the harm they are experiencing.  Their sole purpose in bringing in irrelevant testimony from Simi and Blee is to try to build a coalition within the jury based on identity that will enter a verdict against the Defendants because they are white males, and, thus, not part of Aristotle's tyrannical coalition of the "oppressed".  This is not a proper purpose of testimony, and, this courtroom is not hosting a Maoist struggle session.  If the jury wants to be brainwashed, they can attend a university or turn on CNN;  they shouldn't be subject to this pap here.

7)  As to the supposed coded messages within the Discord testimony, which is the only proper scope of Simi and Blee's testimony, it appears that Simi and Blee want to talk about "the Defendants" without specifying which Defendant and what specific evidence they used to incorporate that Defendant into their conspiracy theory.  Cantwell particularly objects to this because there is no foundation to find that he was on the "Southern Front" Discord server, and, he had very little interaction with the "Charlottesville 2.0" Discord server. It is not expected that Simi or Blee are going to testify about coded messages Cantwell made on Discord or at the August 11 2017, meeting where he allegedly joined the conspiracy (a transcript of which has been tendered to the Court).  Simi and Blee do appear to have reviewed some podcasts Cantwell was involved in, but, those podcasts should be excluded as evidence towards an aiding and abetting theory as described in Cantwell's prior motion.

-4-

8) Because there is essentially no Discord evidence against Cantwell, Simi and Blee should not be permitted to generalize about him as if he were similarly situated to the other "Defendants", or, as if there was some generic "Defendants" on trial, and, specific persons who have to be specifically linked to this conspiracy.  To avoid spill-over from this intentionally highly prejudicial, not very probative, testimony, Cantwell asks that Simi and Blee be barred from  testifying generally about "the Defendants", and, that their testimony be limited to Defendants who were on the Discord server whose communications on Discord are the subject of their scrutiny.

And, thus, Cantwell Moves this Court in Limine to enter an appropriate Order Limiting the Testimony of Simi and Blee And Barring All Argument Or Evidence About Alleged Animus Towards "Immigrants, Social Minorities, And Feminism."

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
-----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage prepaid, for posting on the ECF, to which all other parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and Kathy Hill for electronic transfer to the Court this 1st day of October, 2021.

Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

#1157

Charlottesville Division

Elizabeth Sines, et al          [

    Plaintiffs                 [
                          [

v                                [   Case No:  3:17-cv-072-NKM
                           [
Jason Kessler, et al             [

    Defendants                 [
                           [

MOTION IN LIMINE TO BAR PLAINTIFFS FROM INTRODUCING EVIDENCE ABOUT THE SUPPOSED HOLOCAUST® AS IRRELEVANT AND INFLAMMATORY PURSUANT TO FED.R.EVID. 401-403

---

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court In Limine To Bar Plaintiffs From Introducing  Evidence, including the pseudo-"expert" testimony of Deborah Lipstadt and/or any substitute About The Supposed Holocaust® As Irrelevant And Inflammatory Pursuant To Fed.R.Evid. 401-403.  In support, he states as follows:

1) On September 22, 2021, Cantwell was the for the first time able to review the "expert" report of Deborah Lipstadt, an "expert" retained to pontificate on the subject of "anti-Semitism" and who apparently wants to link the Defendants to the

   Holocaust®.  Cantwell has made several previous objections to the introduction of Lipstadt's testimony, including that animus against those who identify as "Jews" is not proscribed by US Const Amend XIII and 42 USC §1985(3) (see, eg, Shaare Tefila Congregation v Cobb 606 F Supp 1504 (4th Cir 1985) reversed on other grounds by Shaare Tefila Congregation v Cobb 481 US 615 (1987)), that Lipstadt's testimony was not previously disclosed to Cantwell pursuant to Fed.R.Civ.P. 26(a)(2) and is inadmissible pursuant to Fed.R.Civ.P. 37

-1-

(a)(4), and, that Lipstadt's proposed testimony goes towards an aiding and abetting theory at best and is thus both irrelevant and without foundation vis-a-vis the pled conspiracy theory.  Now, as it appears that this testimony has no purpose except to inject the "Holocaust" into the proceedings and to thereby confuse and mislead the jury, Cantwell moves that it and any similar evidence be excluded on this ground as irrelevant and inflammatory.

2) "Under [Federal] Rule [of Evidence] 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." <u>United States v Smith</u> 919 F 3d 825 (4th Cir 2019) citing <u>Daubert v Merrell Dow Pharms Inc</u> 509 US 579 (1993).  The Fourth Circuit "has explained that whether testimony 'assist[s] the trier of fact' is the 'touchstone' of Rule 702." <u>United States v Campbell</u> 963 F 3d 309 (4th Cir 2020).  "[E]ven if an expert witness opinion is inadmissible under Rule 702, Rule 403 permits the district court to exclude relevant opinion testimony if its probative value is substantially outweighed by a danger of ... unfair prejudice." <u>Campbell</u>.  Further, expert testimony must be "not only relevant, but, reliable." <u>Daubert</u>;  <u>United States v Mallory</u> 989 F 3d 730 (4th Cir 2020).  "To be reliable, the testimony must be based on scientific, technical, or other specialized knowledge and not on belief or speculation and inferences must be derived using scientific or other valid methods." <u>Belville v Ford Motor Co</u> 919 F 3d 224 (4th Cir 2019) citing <u>Oglesby v Gen Motors Corp</u> 190 F 3d 244 (4th Cir 1999).  Experts may not testify on matters "obviously ... within the common knowledge of jurors." <u>United States v Fuertas</u> 805 F 3d 485 (4th Cir 2015).  These standards apply to "all expert testimony." <u>Kumho Tire Co v Carmichael</u> 526 US

137 (1999).

3) Fed.R.Evid. 403 bars the admission of unfairly prejudicial testimony
even if that testimony is also relevant. "Unfair prejudice is the
possibility that evidence will excite the jury to make a decision
on the basis of a factor unrelated to the issue properly before it."
Mullen v Princess Anne Volunteer Fire Co. 853 F 2d 1130 (4th Cir
1988); see also Morgan v Furetich 846 F 2d 941 (4th Cir 1988)
(unfair prejudice is that "genuine risk that the ... jury will be
excited to irrational behavior ..."). The proposed evidence here
is also very much like conduct evidence, except that, instead of
having their own conduct introduced, the Defendants are to have
introduced against them the alleged conduct of men who died in
most cases decades before they were born. "Conduct evidence is
inadmissible when "it inflames the jury or encourages them to draw
an inference against the defendant based solely on a judgment about
the defendants' criminal character or wicked disposition." United
Sterling 869 F 3d 233 (4th Cir 2017).

4) First, the Holocaust® is just not relevant to this case, and, a
comparison to the proposed testimony of Peter Simi and Kathleen
Blee shows why. Simi and Blee claim to be experts on something they
call the "White Supremacist Movement". They claim that the Defend-
ants are members of this movement, and, thus, their knowledge of
this movement can be used to contextualize and "de-code" specific
comments attributed to the Defendants on Discord to show a conspir-
acy. Cantwell has objections to this testimony and particularly
its scope, but, this kind of expert testimony is at least admiss-
ible: it addresses real facts relating to this case and probative
of whether or not there was a conspiracy. What role, however, does
the supposed Holocaust® play in this case? The Defendants here

-3-

are not accused of playing any role in the Second World War or in

the German government prior to 1945.  They are not accused of

knowing anyone involved in the German government prior to 1945.

The Discord channels used by some of the Defendants may have in-

cluded references to the Holocaust®, but, Lipstadt is not appear-

ing to try to contextualize these memes for the jury, who should

already understand them from common knowledge.  Lipstadt's purpose

here is to tell the jury that refusing to enter a verdict in the

Plaintiff's favor is the moral equivalent of genocide against the

"Jewish people", which it is not, and, which is a completely in-

appropriate argument for Plaintiffs to be making.

5) Lipstadt's testimony is nothing but an irrelevant effort to confuse

the jury and mislead them into entering a verdict that has nothing

to do with whether or not the Defendants conspired to engage in

assault.  The Defendants here were not only not proponents of geno-

cide, the entire purpose of their peaceful political protest was

to oppose the physical and cultural genocide that

extremists such as Lipstadt have been carrying out against America's

white working class population.  Somewhere, persons like Lipstadt

have gotten the idea that the Holocaust® is an unlimit-

ed license for them to commit crimes against the world's peoples,

whether the people of Palestine

,or, American and European whites, whose lands are being stolen

from them as we speak.  This Court should not allow the idea that

the Holocaust® is an excuse for the violence that the Plaintiffs

visited upon the Defendants to be presented in this courtroom.

It is irrelevant, it is a distraction, and, it detracts from the

dignity of these proceedings.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

## CERTIFICATE OF SERVICE

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage prepaid, for posting on the ECF to which all parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court, this 30th day of September, 2021.

Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

1132

Charlottesville Division

Elizabeth Sines, et al              [
                                    [
    Plaintiffs                      [
                                    [
v                                   [   Case No:  3:17-cv-072-NKM
                                    [
Jason Kessler, et al                [
                                    [
    Defendants                      [
                                    [

MOTION IN LIMINE AND NOTICE OF INTENT TO INTRODUCE STATEMENTS
AGAINST INTERST AND PRIOR TESTIMONY OF UNAVAILABLE WITNESS "EMILY"
GORCENSKI PURSUANT TO FED.R.EVID. 804(b)(3) AND 807
-------------------------------------------------------------------

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court
In Limine and gives Notice of Intent to Introduce Statements Against
Interest Of Unavailable Witness "Emily" Gorcenski Pursuant To Fed.R.Evid.
804(b)(3) And 807.  In support, he states as follows:

1)  "Emily" Gorcenski is a biological male who styles himself a woman
    and who is a member of the Antifa domestic terrorist organization.
    Gorcenski was present at the August 11 and 12, 2017, violence that
    is the subject of this litigation, video taped the events extens-
    ively, and, was also present at various events prior to this liti-
    gation, including                a false report that Cantwell
    had brandished a firearm      at a Walmart parking lot and a
    meeting                with Plaintiff Seth Wispelwey where the
    violence of August 11, 2017, was agreed to and planned.  After the
    instant events, Gorcenski also ratified the violence that occurred
    through numerous social media posts.

2)  Cantwell is trying to locate and subpoena Gorcenski, but, believes

-1-

Gorcenski is in Germany and actively avoiding service of process. As such, Cantwell anticipates that Gorcenski will be unavailable to testify in this matter.

3) Cantwell would like to introduce the following statements against interest and/or prior testimonial statements of Gorcenski:

a) screenshots from Gorcenski's Twitter feed previously appended to Cantwell's Objection To Evidentiary Sanctions Against Defendant Kline;

b) transcripts of testimony Gorcenski gave during Cantwell's Virginia state criminal proceedings;

c) <u>Exhibits 121-124 & 126-131</u> of Cantwell's exhibit list, these being videos of the August 11, 2017, violence at the Thomas Jefferson statue at the University of Virginia ("UVa"), most downloaded from Gorcenski's Periscope account, Periscope being a livestreaming service. As Cantwell was also present for the events depicted in most of this video, these videos are also admissible from his personal knowledge under Fed.R.Evid. 1007 and 602;

d) <u>Exhibit 137</u>, a video Gorcenski has stated best depicts his involvement in the violence of August 11, 2017, along with his statements;

e) <u>Exhibit 13</u>, a collection of statements from Gorcenski's Twitter feed generally advocating violence against persons like the Defendants;

f) <u>Exhibit 20</u>, the release of claims against Cantwell signed by Gorcenski, also admissible pursuant to Fed.R.Evid. 602 from Cantwell's personal knowledge, and, Fed.R.Evid. 201;

g) <u>Exhibit 44</u>, a letter from attorney Pam Starsis threatening police not to interfere with Gorcenski's and other's plans for

violence August 11 and 12, 2017;

h) Exhibit 45, screenshots of Gorcenski doxxing white nationalist participants in the demonstrations of August 11 and 12, 2017, and soliciting violence against them as part of Gorcenski's involvement in the Antifa domestic terror organization;

i) Exhibit 48-49, livestream videos of Gorcenski recording acts of violence on behalf of the Antifa domestic terror organization July 8, 2017;

j) Exhibit 51, "Who Are The Antifa", an article by Antifa domestic terrorist Mark Bray glorifying and ratifying the violence committed by Gorcenski and other members of the Antifa domestic terror organization August 11 and 12, 2017. Had Gorcenski been available to testify, he would have testified that he had endorsed the views contained in this article and shared it with other members and supporters of the Antifa domestic terror organization;

k) Exhibit 55-56, posts from Its Going Down, an Antifa domestic terror website, urging Antifa to resist Grand Jury subpoenas;

l) Exhibits 55(2) and 56(2) and 71, posts on Its Going Down and Unicorn Collective websites calling for the Antifa domestic terror organization to commit acts of criminal violence on August 11 and 12, 2017;

m) Exhibits 99-101 and 129, a compilation of videos livestreamed by Gorcenski showing Gorcenski identifying white nationalist demonstrators to be attacked by the Plaintiffs and their Antifa domestic terror associates;

n) Exhibits 102-103, material from the group Showing Up For Racial Justice ("SURJ"), an Antifa domestic terror affiliate, raising bond money in advance of the August 11 and 12, 2017, protests

raising money for the Plaintiffs and their associates in the
expectation that Plaintiffs and their associates would commit
crimes;

o) Exhibit 118, a 302 given by Gorcenski to the FBI, also admis-
sible pursuant to Fed.R.Evid. 803(8);

p) Exhibit 119 a sworn affidavit given by Gorcenski to obtain a
warrant against Cantwell.  The statements made in Exhibits
118-119 and Gorcenski's testimony in Cantwell's Virginia crim-
inal cases are inconsistent;

q) Exhibits 128 and 130-131, which are compilations of videos of
Gorcenski mocking and engaging demonstrators,        and then
feigning panic or fear and claiming to be under assault for
Antifa filmographers.

4) The relevance of the above exhibits should be obvious.  First, we
have videos of the violence of August 11, 2021, shot by Gorcenski,
depicting Gorcenski's involvement in violence.  We then have a large
amount of material which Gorcenski, as a member of the domestic ter-
ror organization Antifa, would have been familiar with detailing
Antifa's plan to engage in criminal violence August 11 and 12, 2021.
And, there is a large amount of material showing Gorcenski feigning
victimization and swearing falsely under oath to bring legal process
against Cantwell, illustrating the Antifa tactic of engaging in
vigilante violence, as the 1870s Ku Klux Klan was alleged to have
done, and, then, utilizing legal process to attack those they have
just victimized, also like the Klan was alleged to have done and as
Plaintiffs are doing here.  All of these are statements against int-
erest admissible under Fed.R.Evid. 804(b)(3).

5) Similarly, equity demands that this material be admitted even if

-4-

Gorcenski cannot be found to provide foundation. The authenticity and trustworthiness of this video is not in dispute, and, can be attested to in part by numerous witnesses, including Cantwell. And, this all goes to the heart of the question here, which is who started the violence August 11 and 12, 2017, and, was it the Defendants acting from racial animus, or, the Plaintiffs acting from anti-white and Judaic supremacist racial animus against the Defendants. As such, this material should be admitted under Fed.R.Evid. 807(a).

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage Prepaid, for posting upon the ECF system, to which all other parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transfer to the Court this 29th day of September, 2021.

Christopher Cantwell

-5-

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA          1133

Charlottesville Division

Elizabeth Sines, et al          [
                                [
     Plaintiffs                 [
                                [
v                               [     Case No:  3:17-cv-072-NKM
                                [
Jason Kessler, et al            [
                                [
     Defendants                 [
                                [

MOTION FOR SERVICE BY THE US MARSHALS SERVICE ("USMS") OF

SUBPOENAS TO APPEAR AND TESTIFY UPON DWAYNE DIXON, THOMAS MASSEY,

PAUL MINTON AND LINDSEY MOERS
--------------------------------------------------------------------

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court
to order the attached Subpoenas to be issued by the Clerk for Dwayne
Dixon, Thomas Massey,Paul Minton, and, Lindsey Moers to be served upon
them by the US Marshals Service ("USMS").  In support, he states as fol-
lows:

1)  Cantwell has previously sought in forma pauperis status from this
    Court and is without resources to serve these subpoenas.

2)  Each of the witnesses whose testimony is sought in this matter is a
    hostile witness, a member of the domestic terror group Antifa, and,
    is expected to resist the subpoena, potentially with violence:

    a)  Dwayne Dixon brandished a rifle at James Fields on August 12,
        2017, prompting Fields' car accident, and, otherwise participated
        in the armed vigilante mob whose activities prompted these pro-
        ceedings;

    b)  Thomas Massey initiated the violence August 11, 2021, by assault-
        ing the peaceful group of white nationalist demonstrators that
        included Cantwell as they marched towards the Thomas Jefferson

-1-

statute at the University of Virginia ("UVa");

c) Paul Minton was involved with a group of Antifa that fabricated a story to police that Cantwell had brandished a firearm at them on August 11, 2021, and, is material to the tactics of Antifa, including the tactic of committing violent crimes against perceived enemies and then fabricating legal process against them;

d) Lindsey Moers appeared at the UVa event with an ASP baton which she used to assault Cantwell and others, and, then, also appeared at the August 12, 2017, events with another ASP baton which she used to commit assaults.

3) Because Cantwell is in forma pauperis and these witnesses are dangerous violent felons, convicted or unconvicted, and, members of a dangerout violent terror organization, Cantwell asks this Court to grant him the assistance of the US Marshals Service in the service of the attached subpoenas.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion for Service by the US Marshals Service was mailed to the Clerk of the Court, 1st Class postage prepaid, for posting upon the ECF, to which all other parties are subscribed, and, was handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court  this 29th day of September, 2021.

Christopher Cantwell

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Elizabeth Sines, et al | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  3:17-cv-072-NKM |
| Jason Kessler, et al | ) | |
| *Defendant* | ) | |

### SUBPOENA TO APPEAR AND TESTIFY
### AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Lindsey Moers
5111 Fitchburg Dr Holiday, FL 34690
*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United States District Court  255 W Main St  Charlottesville, VA 22902 | Courtroom No.: TBD |
|---|---|
| | Date and Time: 10/26-11/22/21 9:00 AM  each morning |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

[intentionally blank]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Christopher Cantwell    , who issues or requests this subpoena, are:
Christopher Cantwell USP-Marion PO Box 1000 Marion, IL 62959

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No.  3:17-cv-072-NKM

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Lindsey Moers

on *(date)*

☐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)* ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                for travel and $                for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
## WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Elizabeth Sines, et al | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 3:17-cv-072-NKM |
| Jason Kessler, et al | ) |
| *Defendant* | ) |

### SUBPOENA TO APPEAR AND TESTIFY
### AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Paul Minton
714 Belgrade St Philadelphia, PA 19125
*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United States District Court 255 W Main St Charlottesville, VA 22902 | Courtroom No.: TBD |
|---|---|
| | Date and Time: 10/26-11/22/21 9:00 AM each morning |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

[intentionally blank]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____           _____
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Christopher Cantwell , who issues or requests this subpoena, are:
Christopher Cantwell USP-Marion PO Box 1000 Marion, IL 62959

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No.: 3:17-cv-072-NKM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Paul Minton

on *(date)*

☐ I served the subpoena by delivering a copy to the named person as follows:

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $        0.00

I declare under penalty of perjury that this information is true.

Date:

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc.:

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Elizabeth Sines, et al | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  3:17-cv-072-NKM |
| Jason Kessler, et al | ) |
| _Defendant_ | ) |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Thomas Massey
5342 Baltimore Ave Philadelphia, PA 19143
_(Name of person to whom this subpoena is directed)_

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United States District Court 255 W Main St Charlottesville, VA 22902 | Courtroom No.: TBD |
|---|---|
| | Date and Time: 10/26-11/22/21 9:00 AM each morning |

You must also bring with you the following documents, electronically stored information, or objects _(leave blank if not applicable)_:

[intentionally blank]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Christopher Cantwell , who issues or requests this subpoena, are:
Christopher Cantwell USP-Marion PO Box 1000 Marion, IL 62959

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No. 3:17-cv-072-NKM

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Thomas Massey

on *(date)*  _____

☐ I served the subpoena by delivering a copy to the named person as follows:

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00

I declare under penalty of perjury that this information is true.

Date: _____                      _____
                                                    *Server's signature*

                                           _____
                                                    *Printed name and title*

                                           _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
## WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Elizabeth Sines, et al | ) |
| *Plaintiff* | ) |
| v. | ) |
| Jason Kessler, et al | ) |
| *Defendant* | ) |

Civil Action No.   3:17-cv-072-NKM

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Dwayne Dixon
     214 W Trinity Ave Durham, NC 27701
                    *(Name of person to whom this subpoena is directed)*

   **YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United States District Court | Courtroom No.: TBD |
|---|---|
| 255 W Main St | Date and Time: 10/26–11/22/21 9:00 AM |
| Charlottesville, VA 22902 | each morning |

   You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

   [intentionally blank]

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

          *CLERK OF COURT*
                                          OR

   _____          _____
      *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Christopher Cantwell                , who issues or requests this subpoena, are:
Christopher Cantwell USP-Marion PO Box 1000 Marion, IL 62959

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No. **3:17-cv-072-NKM**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  **Dwayne Dixon**

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows:

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

---

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al                  [
                                        [
    Plaintiffs                          [
                                        [
v                                       [    Case No:  3:17-cv-072-NKM
                                        [
Jason Kessler, et al                    [
                                        [
    Defendants                          [
                                        [

MOTION IN LIMINE TO PROVIDE CANTWELL WITH ACCESS TO THE

DISCOVERY AND NECESSARY LEGAL MATERIALS AT TRIAL
------------------------------------------------------------

Comes Now the Defendant, Christopher Cantwell, and, he Moves this Court
In Limine To Provide him With Access To The Discovery And Necessary
Legal Materials At Trial.  In support, he states as follows:

1)  Writ of Habeas Corpus Ad Testificandum has been granted ordering
    the US Marshals Service ("USMS") to transport Cantwell to this
    District to defend himself at trial in this matter.  Though in theory
    the USMS allows a person to transport legal materials with them in
    some cases, in practice, this never actually occurs.  Further, as
    Cantwell has previously averred, he has been separated from much
    of his legal material and/or has inadequate facilities with which
    to access it while at USP-Marion.

2)  Because Cantwell intends to present certain videos, related trans-
    scripts, and/or, other evidence at trial during examination or cross-
    examination of the witnesses, and, because he will not be able as
    a practical matter to transport that material to the Court, he asks
    that this Court make arrangements for all of the discovery material
    in this matter to be made available to him along with any equipment

-1-

necessary to present such exhibits to the jury. Cantwell will gladly work with the Clerk and/or Plaintiffs to try to predict what materials will be needed for any given day of trial if the Plaintiffs have some idea in what order they will call their witnesses and how much time they will need.

3) Cantwell also requests that the Federal Rules of Evidence and of Civil Procedure be made available to him at the Defendants' table at trial.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage Prepaid, for posting upon the ECF, to which all parties are subscribed, and, was handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court this 27th day of September, 2021.

Christopher Cantwell

-2-

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

1123

Elizabeth Sines, et al      [

     Plaintiffs      [

v      [    Case No: 3:17-cv-072-NKM

Jason Kessler, et al      [

     Defendants      [

MOTION IN LIMINE FOR A DETERMINATION THAT NO PRIVATE RIGHT
OF ACTION LIES FOR CONSPIRACY TO VIOLATE A VIRGINIA STATE STATUTE
ABSENT ENFORCEMENT PROVISIONS, TO BAR PAINTIFFS FROM ARGUING THE
SAME, AND, TO CLARIFY WHETHER PLAINTIFFS HAVE PLED A VALID CLAIM
FOR CONSPIRACY TO COMMIT FALSE IMPRISONMENT
-------------------------------------------------------------------

Comes Now the Defendant Christopher Cantwell, and, he Moves this Court
In Limine For A Determination That No Private Right Of Action Lies For
Conspiracy to Violate A Virginia State Statute Absent Enforcement Pro-
visions, To Bar Plaintiffs From Arguing The Same, And, to Clarify
Whether Plaintiffs Have Pled A Valid Claim for Conspiracy To Commit
False Imprisonment. In support, he states as follows:

1) Count Three of the instant Second Amended Complaint states that
   Cantwell and his co-Defendants conspired civilly to commit a variety
   of acts, including twelves acts of conspiracy to violate ten Virginia
   state statutes ranging from the severe,conspiracy to riot in viol-
   ation of Va Ann Code §18.2-408, to the petty, conspiracy to commit
   disorderly conduct in violation of Va Ann Code §18.2-415, to the
   bizarre, conspiracy to violate a Virginia statute requiring thirty
   days notice of intent to introduce evidence of prior bad acts, Va
   Ann Cod §19.2-297.1.

-1-

2)  In Doe v Broderick 225 F 3d 440 (4th Cir 2000), the Fourth Circuit addressed the circumstances under which a statute carries an implied right of private action. Following Cort v Ash 422 US 66 (1975), California v Sierra Club 451 US 287 (1981), and, Cannon v Univ of Chicago 441 US 677 (1979), the Fourth Circuit found that there is generally no right of private action to enforce a statute carrying criminal penalties unless the statute specifically provides for a private right of action. As such, the only statute that Plaintiffs have listed that provides for a private right of action is Va Ann Code §8.01-42.1, and, Cantwell asks that the Court bar the Plaintiffs at trial from arguing that Cantwell is liable for conspiring to violate any other state statute.

3)  Further, in its order granting in part and denying in part the Motion to Dismiss, Sines v Kessler 324 F Supp 765 (WD Va 2018), the Court found that Count Three raised claims for conspiracy to violate Va Ann Code §8.01-42.1 and to commit assault. It did not address the claims for conspiracy to commit battery or false imprisonment. Cantwell still does not have adequate access to the Second Amended Complaint to determine exactly what acts these allegations are based on, but, it does not appear that Plaintiffs Romero or Doe are claiming battery; they do not appear to claim that anyone offensively touched them. Assuming that the battery claims apply to Wispelwey and the persons struck by Fields' car, Cantwell sees no basis for a claim of conspiracy to commit false imprisonment and would like the Court to clarify whether or not he will have to defend against such a claim at trial.

Respectfully Submitted,

Christopher Cantwell

-2-

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class Postage Prepaid, for posting on the ECF, to which all parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to this Court, 1st Class Postage Prepaid, this 27th day of September, 2021.

Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

1124

Elizabeth Sines, et al          [
                                [
    Plaintiffs                  [
                                [
v                               [   Case No:  3:17-cv-072-NKM
                                [
Jason Kessler, et al            [
                                [
    Defendants                  [
                                [

MOTION IN LIMINE TO EXCLUDE EVIDENCE OF CANTWELL'S

PRIOR ALLEGED FELONIOUS CONDUCT
-----------------------------------------------------

Comes now the Defendant, Christopher Cantwell,  and, he Moves this
Court To Exclude Evidence Of His Prior Alleged Felonious Conduct in
United States v Cantwell D NH Case No:  20-cr-006.  In support, he
states as follows:

1)  Cantwell was convicted of transmission of extortionate threats in
    interstate commerce in violation of 18 USC §875(b) and (d) in
    United States v Cantwell D NH Case No:  20-cr-006.  This conviction
    is currently on appeal.

2)  Cantwell's status as a felon is admissible to impeach him because
    "one who has transgressed society's norms by committing a felony
    is less likely than most to be deterred from lying under oath,"
    at least in judicial theory, if not in the actual reality of fede-
    ral courtrooms.  Henslee v Singleton 714 Fed Appx 271 (4th Cir 2018)
    citing Walden v Georgia-Pacific Corp 126 F 3d 506 (3rd Cir 1997),
    Knight ex rel Kerr v Miami-Dade City 856 F 3d 795 (11th Cir 2017).
    The conduct of which he was convicted, however, is not intrinsica-
    lly related to the instant proceedings nor is it relevant to some
    material issue at stake here.  As such, this conduct is likely to

-1-

inflame the emotions of or confuse the jury, and, should be ex-
cluded pursuant to Fed.R.Evid. 401-403, especially Fed.R.Evid.
403.

3)   What Cantwell proposes is that the jury may be told that he has
been convicted of a non-violent felony not involving an act of dis-
honesty.

And, thus, Cantwell moves in limine for this Court to grant such an
instruction and to exclude evidence of Cantwell's alleged felonious
conduct.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Motion in Limine was mailed to the Clerk of
the Court, 1st Class  Postage prepaid, for posting upon the ECF system,
to which all parties are subscribed, and, was handed to USP-Marion
staff members Nathan Simpkins and/or Kathy Hill for electronic trans-
mission to the Court this 27th day of September, 2021.

Christopher Cantwell

-2-

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al          [
                                [
    Plaintiffs                  [
                                [
v                               [    Case No:  3:17-cv-072-NKM
                                [
Jason Kessler, et al            [
                                [
    Defendants                  [
                                [

CANTWELL'S REPLY TO Doc 1080

Comes Now the Defendant, Christopher Cantwell, and, he makes the follow-
ing Reply to the "Plaintiff's Position On Trans portation Costs Of Def-
endant Christopher Cantwell," Doc 1080:

1)  Cantwell has previously responded to the Court's Order directing
    parties to address the question of paying for his transportation
    costs, noting that the Court lacks statutory authority to assess
    these costs, or, if it has such authority, that it can only assess
    such costs against the party against whom  judgment is taken.

2)  The Plaintiffs agree that the Court may generally not assess costs
    against Cantwell, and, certainly cannot make payment of such costs
    a condition of his transportation.  Doc 1080 p 2 citing Hawks v
    Timms 35 F Supp 2d 464 (D Md 1999);  Ballard v Spradley 557 F 2d
    476 (5th Cir 1977);  Rivera v Santirocco 814 F 2d 859 (2nd Cir 1987);
    Story v Robinson 684 F 2d 1076 (3rd Cir 1982).

3)  The Plaintiffs also mis-cite Muhammed v Warden, Baltimore City
    Jail 849 F 2d 107 (4th Cir 1988),  for the mistaken propositions
    that the Court can assess costs against Cantwell for his transport-
    ation and that the Court can bring Cantwell to this District solely
    to testify.

-1-

4) In reality, <u>Muhammad</u> states that the Court can consider the cost of transporting Cantwell, not assess them.  What is says that is more important is that:

> "Ideally, ... such a plaintiff [a prisoner] should be present at the trial of his action, particularly if, as will ordinarily be true, his own testimony is potentially critical.  Not only the appearance, but, the reality of justice is obviously threatened by his absence."

<u>Muhammad</u>.

The Fourth Circuit also noted that appearance at trial is a Due Process right, and, while it may be limited, it may not be "arbitrarily denied" and that there is a presumption that the prisoner should be present.  <u>Muhammad</u>.

5) Cantwell also notes that talking about him paying the costs of transportation or housing is incorrect.  18 USC §4007-4008 require that these expenses be paid out of the Treasury, so, one can only talk about recouping those expenses.

6) The Plaintiffs here suggest that it would somehow be less expensive for the US Marshals Service ("USMS") to bring Cantwell here for his testimony and then return him than it would be to allow him to participate in the entire trial.  This is false.  First, the USMS transports prisoners by plane from pickup locations to the central hub at the Federal Transfer Center ("FTC") Oklahoma City, then transports them from that hub to the hub here in West Virginia, from which they are taken on a bus to the local jail.  The USMS contract with the local jail pays $50-$80 a night to house a prisoner, and, pays certain fees associated with transporting prisoners to the courthouse, about $30 a trip, or, $60 a day.  The transports to the

courthouse are already scheduled, involve multiple prisoners, and, there is no additional cost in placing Cantwell on the van going there.  So, the total cost of housing Cantwell at the local jail for a month is about $1500-$2400, much less than the alleged almost $16,000 the USMS is claiming.  Second, the cost of setting up a special transport, whether a van or a plane ride, for Cantwell from Southern Illinois on the ten hour drive to Charlottesville is more than placing him in the regular transit.  The regular transit is already staffed and scheduled; a special van will require two dedicated Marshals to spend a day bringing just him.  So, this argument by the Plaintiffs  is nonsense, and, again, Cantwell wants discovery as to the costs of transportation, housing, and the like, because the USMS is  exaggerating their expenses and likely giving a per-prisoner average cost of transporation after including all of their operating expenses, including the bloated bureaucracy that runs the JPATS (Joint Prisoner and Transport System).

7) The Plaintiffs don't want Cantwell at the trial because he intends to cross-examine witnesses, present video, and, confront their case. They have spent the past several years shutting him out of discovery and preparing to use his ignorance of the law to railroad him into a judgment, and, now that they see that threatened, they want Cant- well out of the trial, far away where his ability to examine and cross-examine witnesses will be limited.  How will he present evi- dence such as videos by video conference?  USP-Marion doesn't support that feature.  How will he hand witnesses exhibits of their own writings calling for violence against him and his co-defendants by video conference?  The human element, when a liar is confronted by their lies on the stand is powerful and makes an impression on the jury, but, that element is watered down when the cross-examiner is

-3-

not physically present, and, the liar doesn't have to look into the eyes of the person they are trying to condemn.

Thus, this Court should Order Cantwell produced for the entire trial and acknowledge that it has no authority to assess costs against him.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
----------------------

I hereby certify that this Reply was mailed to the Clerk of the Court, 1st Class Postage prepaid, for posting on the ECF, to which all parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transfer to the Court this 27th day of Septemebr, 2021.

Christopher Cantwell

-4-

IN THE UNITED STATES DISTRICT COURT FOR THE

1121

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al                    [
                                          [
    Plaintiffs                            [
                                          [
v                                         [    Case No:  3:17-cv-072-NKM
                                          [
Jason Kessler, et al                      [
                                          [
    Defendants                            [
                                          [

MOTION IN LIMINE TO BAR PLAINTIFFS FROM ARGUING OR PRESENTING

EVIDENCE IN SUPPORT OF THEORIES OF AIDING OR ABETTING OR CONTRIBUTORY

NEGLIGENCE TOWARDS VIOLATIONS OF VA ANN CODE §8.01-42.1,

ASSAULT, OR ANY OTHER TORT
-----------------------------------------------------------------------

Comes Now the Defendant, Christopher Cantwell, and, he Moves this Court
in Limine to Bar the Plaintiffs From Arguing Or Presenting Evidence At
Trial In Support Of Theories Of Aiding And Abetting Or Contributory
Negligence Towards Violations Of Va  Ann Code §8.01-42.1, Assault, Or
Any Other Tort.  In support, he states as follows:

Summary
-------

1)  The Plaintiffs here, in their Second Amended Complaint, have accused
    Cantwell and the other Defendants of conspiring to violate Va Ann
    Code §8.01-42.1, conspiring to commit assault, and, conspiring to
    commit other acts¦ many of which Cantwell will argue separately are
    not torts, even if they may be criminal violations. However, it ap-
    pears that, at trial, Plaintiffs are not intending to present evi-
    dence of a conspiracy, but, evidence that Cantwell and his fellow
    Defendants aided and abetted others, not Defendants, in the commission
    of torts by soliciting,inciting¦ or, otherwise inducing the commis-

-1-

sion of those torts.  Because the Second Amended Complaint does not provide Cantwell and the other Defendants notice of an intent to proceed
on an aiding and abetting theory of liability pursuant to Fed.R.Civ. P. 8, Cantwell asks that the Plaintiffs be barred at trial from arguing or presenting evidence in favor of such a theory of liability.

The Alleged Conspiracy
----------------------

2)  Cantwell has previously presented to the Court a 45 page transcript ("lead trans") of the alleged "leadership meeting" where the Second Amended Complaint states that he agreed to enter into a conspiracy with Kessler, Kline and Ray to engage in assault and violations of Va Ann Code §8.01-42.1.  A review of this alleged agreement illustrates the problem that Plaintiffs now face.

3)  Lead trans p 1-6 begins with Jason Kessler's appeareance.  As Kessler discusses the torchlit march which is to begin in about two hours, Cantwell states:

> "I'm going to tell you from my perspective, if we're going to do it at all, I want the cops involved ... [M]y suggestion would be let's, if they are, for whatever reason, unwilling or unable to escort us through this, I would suggest calling that part of it off ..."

lead trans p 2.

Does someone conspiring to commit racial assault ask that the police escort him and be present when the assault is suppoed to occur? Does he suggest cancelling the event if the police will not provide an escort?

4)  Cantwell does say, "If these guys fucking attack us, we're going to fucking hurt them," but, Kessler doesn't agree to that;  he immediat-

-2-

ely steps in to calm Cantwell and the crowd down, stating:

> "We really want to look like the good guys ... So the best thing
> we can do is act like civilized white people ... If you know,
> if you wanna argue with somebody, by all means, argue with them,
> try to keep a civil debate, don't use ethnic slurs, that kinda
> stuff.  That is going to get us into trouble ...for this format
> its not appropriate."

lead trans p 2-3.

Here's Kessler saying don't even use ethnic slurs during this march.
Do the Plaintiffs have some expert on "Nazi double talk" who can
say that this is evidence of "public face / private face" where
Kessler is secretly signalling that this group should commit racially
motivated violence?  This is the "private face", this is the private
meeting.  Where's the conspiracy?

5)  Now, the next speaker is one "Kurt Vandal", a man who is conspicuosly
    absent from the list of Defendants in this case, and, who does try
    to involve Cantwell and others in an agreement to commit acts of
    violence, an agreement that Cantwell ultimately declines to join.
    lead trans p 6-19.  First, no one really seems to know who this
    "Vandal" is or why he's speaking.  He calls himself the "logistics
    operations director" and he pitches a scenario where the police
    stand down, a "kill zone" develops, and, the white nationalist dem-
    onstrators need to seize Lee Park.  lead trans p 6-10.  He then
    tells "all the security forces, all the people who want to be boots
    on the ground tomorrow" to appear at MacIntire ·Park for a "shuttle
    service" that, had it occurred, would have likely taken them directly
    to the Charlottesville Jail where eager FBI agents and Asssitant
    US Attorneys, like the wife of Plaintiff's counsel, would have been
    waiting to process them for conspiracy.  lead trans p 12-14.

6)  On page 15, "Vandal" tries to bring Cantwell into the conspiracy.

Cantwell, however, is so disinterested that he asks:

"If I were to forget everything else here, where should I be as

a speaker?"

lead trans p 15.

This obviously annoys "Vandal" who states:

"Ya wanna get down, rough and dirty, Chris?"

lead trans p 15.

Cantwell then deflects "Vandal" with a joke, "there's a temptation,"

and, the conversation is then interrupted by the arrival of Kline.

lead trans p 15.


7) "Vandal" then goes on to discuss "Scenarios Green, Yellow and Red".

lead trans p 16-18.  This is where he discusses even more explicit

fantasy violence:

"Basically, we're being overrun by hostiles.  That is case red.

This most likely will turn into a gun fight. ... If the vehicle

is there ... you need to get behind that vehicle because that

vehicle is going 'truck of peace'. ... Its going to clear a path

for you."

lead trans p 18.

This is still far from an ISIS-style terror attack; "Vandal" is dis-

cussing a contingency plan to respond to an attack with a fantasy

of a gun battle in downtown Charlottesville followed by using a

truck to force a path out and away from the way.  However, Cantwell

has no idea what Vandal is talking about:

"Truck a piece? ... truck for each piece of what?"

lead trans p 18.

And, Cantwell never figures it out or agrees to the "Code Red" plan.

8)   Vandal then, lastly, suggests yet another way the white nationalist
     demonstrators can get themselves mass arrested for no good reason.
     lead trans p 19.  And, it is clear that federal authorities, like,
     say, Plaintiff's counsel's wife, were prepared and hoping for a mass
     arrest of white nationalists on August 12, 2017.  Again, however,
     Cantwell does not agree to this plan for peaceful civil disobedience.

9)   Kline now enters the conversation, lead trans p 19-21, and, gives
     the plan that Cantwell agrees to:

     "So, I just got off the phone with the police.  They are going to
     be protecting us and letting us do the torchlight march tonight.
     They are going to be sending almost all of their police officers
     that they have on duty and giving some people overtime, having them
     stand on the outside of us, and, basically, like, try to stay there
     in case counterprotesters could show up, and, if counterprotesters
     do show up, essentially what I explained to them our plan and she
     essentially said that if they see like a bloc or black bloc or
     whatever, coming towards us, the police are going to move in to
     stop it.  So, we should be okay and we are going to announce on
     the Discord that this is still going on.  Nameless Field, torchlight
     rally, okay?"

     lead trans p 19-21.

     Where's the plan for racially motivated violence?  A plan is stated
     to keep the Antifa domestic terror organization away from the torches,
     not to throw torches at them.  If an attack was planned, would these
     be insisting that the police be present?  Their concern is that some-
     one, the Antifa vigilante terror organization, might attack them.
     And, unlike the "public face" of chatter on these Discord servers,
     there is no mention here of "Jews", "Negroes", or any racial or rel-
     igious minority.

                                    -5-

10) After this first "leadership meeting", in which Ray has played no
   part, Cantwell then attends a second "PSO meeting", though he is
   not a "PSO" and doesn't know what a "PSO" is. lead trans p 25-34.
   (The term apparently means "Personal Security Organization!")  This
   meeting is led by one "Ajax", real name unknown to Cantwell, who is
   also conspicuously not a Defendant here.  Ajax then discusses the
   plan that has been entered into with the Charlottesville Police
   Department to bring demonstrators to and from Lee Park.  Some clown
   in the audience again discusses the "truck of peace", but, again,
   Cantwell is neither involved in the conversation nor agrees to it.
   lead trans p 29.  Ajax tells "PSDs", Personal Security Detail memb-
   ers, to wear "khakis, white polos, um, whatever boots you can run
   in," and blazers if they are carrying guns, a convenient way for
   law enforcement to identify them, and, potentially transforming a
   legal permitless "open carry" in Virginia into an unlawful unperm-
   itted "concealed carry", giving law enforcement an excuse to make
   an arrest.  lead trans p 31.  Cantwell however, doesn't appear
   August 12th in this uniform, and, again, he's not "PSD". lead trans
   p 25.  Ajax discusses "gel pepper spray", which Cantwell neither has
   nor uses.  lead trans p 32.  And, when confronted about his camera,
   Cantwell says that he's using it because he's doing nothing wrong.
   lead trans p 33.  Again, there's no conspiracy, there's no "public
   face / private face" duplicity, there's nothing here.

11) After Ajax' talk, Cantwell specifically divests himself of his
   lawfully carried guns and bulletproof vest before attending the
   torchlight parade.  lead trans p 34.  If he was plotting violence,
   would have not gone to get weapons instead of to put them away?
   Ray now appears for the first time to talk to Cantwell. lead trans
   p 35-37.  And, then, Kessler notifies the group that an injunction

has been granted, prompting one to give the final plan. lead
trans p 37-45.  They cancel "Vandal's" plan to seize Lee Park at
6 AM.  lead trans p 40-42.  And, they discuss how to comply with
the Charlottesville Police Department's instructions.  lead trans
p 42-45.

12)   So, this is the problem that the Plaintiffs and their counsel have:
right now, the FBI should be investigating them for fraud for rais-
ing $10 million dollars with #SueANazi without telling the sucker
donors that there's no case.  This is why Plaintiffs want to segwey
away from a "conspiracy" and into "aiding and abetting" liability
at trial, and, why the Court needs to be vigilent to prevent this.

Conspiracy v Aiding And Abetting
---------------------------------

13)   Solicitation and incitement are acts that can, under certain cir-
cumstances, be made the objects of criminal liability.  see, eg,
United States v Miselis 972 F 3d 518 (4th Cir 2020) citing Branden-
burg v Ohio 395 US 447 (1969).  However, as long as they remain
inchoate, they are not privately actionable;  for their to be a
private action based upon a solicitation or incitement theory, there
has to be an injury, which essentially means that the solicitation
or incitement has to rise to the level of aiding and abetting;
the controlling case on this is Rice v Paladin Enters 128 F 3d 233
(4th Cir 1997).  In Rice, the defendant, Paladin Press Enterprises,
published a book, Hit Man: A Technical Manual For Independent Con-
tractors, which was used as a guide by a man who murdered Rice's
family.  Rice sued, and, Paladin Press stipulated that it did intend
Hit Man as a solicitation to commit murder.  The Fourth Circuit then
found that when a solicitatoin or incitement leads to the commission
of a tort, the solicitor or inciter may be liable as an aider and

-7-

abetter (under Maryland law, though Cantwell is aware of no sub-
stantive difference with Virginia law.)  Rice.

14)  Conspiracy, however, is a very different creature.  As the Court
     has noted in its Order denying the Motion to Dismiss, Sines v Kess-
     ler 324 F Supp 765 (WD Va 2018), conspiracy requires that "Plaint-
     iffs must allege that each Defendant entered into an agreement with
     a specific co-conspirator to engage ... in racially motivated viol-
     ence at the August 11th and 12th events.  The plausibility of these
     factual allegations increases as Plaintiffs add specificity about
     the method of agreement, the time or place of the agreement, and,
     the scope of the agreement."

15)  The Defendants have pled that the agreement involving Cantwell oc-
     curred August 11 at the meeting, a transcript of which is attached,
     where no such agreement occurred, and, no reasonable jury could find
     that such a meeting occurred.  Further, Cantwell is somewhat unique
     here in that he doesn't really know the other Defendants in this
     matter.  He doesn't socialize with them.  He has little contact
     with them.  And, he's only at the meeting because "Vandal", the Code
     Red provocateur, has invited him at the last minute to attend.

16)  Cantwell has just begun to review what turns out to be thousands
     of poorly labelled electronic documents that the Plaintiffs dumped
     on him in April 2021, and, which he was prohibited from reviewing
     until September 15, 2021.  However, it is clear from the so-called
     "expert" reports, which Cantwell has also addressed in his Motion
     regarding bias against Judaism and which he will also likely ad-
     dress in another Motion in Limine, that what the Plaintiffs are
     trying to do is introduce inflammatory statements that Cantwell has
     made on his podcast much prior to the instant event, statement that

will likely be also offered out of context, and, use the "experts"
to take what is really an aiding and abetting argument and twist
it into a "conspiracy."

17) For example, in its ruling of <u>Sines v Kessler</u> 2021 US Dist LEXIS
72553 (WD Va 2021), this Court ruled that Blee and Simi would be
permitted to opine that "To organize [Unite the Right], Defendants
used the cultural symbols, rituals, slogans, language, and, ref-
erences to historical figures that are the hallmarks of the WSM
[the so-called White Supremacist Movement]", "Defendants shaped
and made use of WSM culture and networks to recruit participants
and to plan and execute [Unite the Right].", "The coordinated
race-based violence facilitated and committed by the Defendants
at [Unite the Right] is emblematic of WSM tactics." At the time
that the Court made this ruling, the Plaintiffs were misrepresent-
ing to the Court that they could make a case that the Defendants
engaged in a conspiracy on Discord, and, that they would have lang-
uage that was ambiguous and which could be helpful interpreted
by two woke _allies_ opining for money that "Defendants used WSM
tactics, principally the reliance on racial animus as a motivator,
the intentional use of violence to achieve their goals, and, a co-
ordinated strategy to obfuscate their aims through the use of
'double-speak', 'front stage / back stage behavior' and a discrete
and new age communications platform." <u>Sines</u>.

18) Certain defendants objected to Blee's and Simi's proposed testimony
because it is absurd and demonstrably false as well improperly
opines on an ultimate question; unfortunately, absurd and demon-

-9-

strably false testimony is something of a staple of the federal
judicial system, as the law permits a jury to judge all credibility
issues, and, experts in a civil case may opine on an ultimate issue,
unlike in a criminal matter. Fed.R.Evid. 601, 701-702, 704. Cant-
well isn't challenging this here. However, the proposed expert
testimony and all testimony regarding Cantwell's or others prior
statements, whether on podcasts or Discord or anywhere else, still
require foundation and relevance, and, that's what's challenged
here.

19) If the Plaintiffs had any basis to argue that Cantwell engaged in
a conspiracy that led to the specific torts suffered by the Plaint-
iffs, an alleged violent charge at the Thomas Jefferson statue,
the alleged throwing of a torch at Romero, whatever it is that
"John Doe" is complaing of, then, this testimony about prior state-
ments that comprised the formation of that conspiracy and their
meaning would be relevant. Further, if this expert testimony was
intended to interpret the remarks that the video recording shows
Cantwell made August 11, 2021, when he allegedly entered the con-
spiracy, this testimony could be relevant. For example, if Cant-
well had made some statement like "okay, I guess I'll have to lead
the attack on those Negroes when we go to lynch them at the Jeffer-
son statue", and, he was arguing this was a "joke", his prior pod-
cast statements like "boy, I'd like to lynch me some Negroes", would
be relevant to show motive, and, these experts could contextualize
that. But, there is nothing here on this video that could possibly
give this expert testimony on the meaning of Cantwell's prior pod-
cast statements or even the introduction of those statements any
relevance. What statement on this tape of the alleged agreement
to engage in racial violence needs this contextualization?

-10-

20)   What the Plaintiff's actual theory is is that Cantwell made racially violent or arguably racially violent statements months prior to these rallies, and, that somehow this, perhaps by osmosis, infected the demonstrators and caused them to commit torts such as assault or violations of Va Ann Code §8.01-42.1.  That's what experts like Lipstedt, Blee, and Simi are for, and, that is what these  prior statements are for.  If the Plaintiffs wanted to pursue that line of reasoning, which is an aiding and abetting theory and not conspiracy and not conspiracy, they had to plea it.  They didn't. And, because they didn't, they must now be barred from presenting that theory of liability and any evidence that solely supports it.

21)   And, while its not clear that one can conspire to commit negligence, the same arguments made in favor of aiding and abetting can be made in favor of contributory negligence, i.e., that Cantwell knew that people listening to his show might take his statements about racial violence a certain way and he was thus negligent in contrib- uting to, say, a torch being thrown at Romero.  These arguments, for the same reasons given above, should be barred because the Plaintiffs have not given Cantwell notice in their pleading of their intent to pursue such a theory.

Thus, for good cause shown, Cantwell Moves this Court In Limine To Bar Arguing Or Presenting Evidence In Support Of Theories Of Aiding And Abet- ting Or Contributory Negligence.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

-11-

CERTIFICATE OF SERVICE
----------------------

I herbey certify that this Motion in Limine was mailed to the Clerk of the Court, 1st Class postage prepaid, for posting upon the ECF system to which all parties are subscribed, as well as handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court, this 27th day of September, 2021.

Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al            [
                                  [
      Plaintiffs                  [
                                  [
v                                 [   Case No:  3:17-cv-072-NKM
                                  [
Jason Kessler, et al              [
                                  [
      Defendants                  [
                                  [

MOTION FOR LEAVE TO SUPPLEMENT DEFENDANT'S EXHIBIT LIST
AND DISCLOSURE OF THE TRANSCRIPT OF THE AUGUST 11, 2017, LEADERSHIP
MEETING

-------------------------------------------------------------------

Comes Now the Defendant, Christopher Cantwell, and, he Moves this Court
for Leave to Supplement his Exhibit List with the attached transcript
of the August 11, 2017, "Leadership Meeting"    and, also Discloses
this Transcript to all parties pursuant to Fed.R.Civ.P. 26.  In support,
Cantwell states as follows:

1)  The Second Amended Compliant in this matter alleges that, on August
    11, 2017, Cantwell entered into the charged conspiracies by reaching
    an agreement with Defendants Ray and Kline to commit acts of violence
    at a meeting at MacIntire Park.

2)  Cantwell has indicated in several of his previous filings that he
    intends to introduce at trial a video of that meeting which he made
    using a body camera, and, that this video will show that he reached
    no such agreement with Ray, Kline, or, any other person.

3)  In August of                              2021, Cantwell for the first
    time gained access from USP-Marion to the video of the August 11,
    2017 "leadership meeting."    Today, September 24, 2021, Cantwell

-1-

has produced the attached transcript of the relevant portion of the body camera video. He avers that this transcript is true and correct, and now discloses this transcript to all other parties pursuant to Fed.R.Civ.P. 26.

4) The transcript is an admissible summary document pursuant to Fed.R. Evid. 1006. The Plaintiffs and all other parties have a copy of the original video recording, and, Cantwell anticiptes testifying from personal knowledge at the trial as to the truth and correctness of the underlying video.

Thus, Cantwell moves this Court for leave to supplement his exhibit list with this transcript, which he anticipates will be used to examine and cross-examine witnesses and which he will move into evidence with the video of the August 11, 2017, meeting.

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE
-----------------------

I hereby certify that this Motion for Leave to Supplement was mailed to the Clerk of the Court, 1st Class Postage prepaid, for posting upon the ECF system to which al other parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transmission to the Court this 27th day of September, 2021.

Christopher Cantwell

-2-



**FROM:**

Christopher Cantwell
Inmate # 00991-509
USP Marion
P.O. Box 1000
Marion, IL 62959

**TO:**

⇔00991-509⇔
Clerk Us District Court
Western District Virginia
255 W MAIN ST
Room 304
Charlottesville, VA 22902
United States

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misusss may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.



# UNITED STATES
## POSTAL SERVICE ®

- Expected delivery ~ ~stic use.
- Most domest~
- USPS T~
- Lim~

...of insurance (restrictions apply).*

...any international destinations.

...orm is required.

...exclusions see the

...limitations of coverage.

**Retail**

UNITED STATES POSTAL SERVICE

US POSTAGE PAID
$0.00

Origin: 62959
10/04/21
1648600059-12

**P**

PRIORITY MAIL 2-DAY®

1 Lb 2.60 Oz    1004

EXPECTED DELIVERY DAY: 10/07/21    C008

SHIP
TO:  255 W MAIN ST
     STE 304
     Charlottesville VA 22902-5058

USPS TRACKING® #

9505 5116 0902 1277 5428 01

USPS.COM/PICKUP

TRAC~

PS0000100001

FOREVER USA PURPLE HEART (×3)

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al                  [
                                        [
      Plaintiffs                        [
                                        [
v                                       [   Case No:  3:17-cv-072-NKM
                                        [
Jason Kessler, et al                    [
                                        [
      Defendants                        [
                                        [

MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY THAT IS UN-

DISCLOSED OR DERIVED FROM UNDISCLOSED AND / OR HEARSAY MATERIAL

-----------------------------------------------------------------

Comes now the Defendant, Christopher Cantwell, and, he Moves this Court
In LImine To Exclude any and all Expert Testimony which is Derived
From Undisclosed And/Or Hearsay Material.  In support, he states as
follows:

1)  Cantwell gained access to the expert reports of Deborah Lipstadt
    and Peter Simi and Kathleen Blee on September 15 2021, and, can
    now aver that these reports were not disclosed to him prior to
    the closure of discovery, preventing him from deposing these wit-
    nesses.  Sworn Declaration Of Christopher Cantwell As To The Expert
    Reports of Simi, Blee and Lipstadt ("Cantwell Expert Decl") para
    2-5.

2)  Cantwell has previously objected to Lipstadt's report as irrelevant
    because animus against those who identify as "Jews" is irrelevant
    to this matter, as undisclosed, as irrelevant because it goes to-
    wards an aiding and abetting / incitement theory and doesn't have
    foundation in a conspiracy theory of liability, and, inflammatory
    and irrelevant because it attempts to link Cantwell to the Holocaust®,
    a    historical event that     occurred three generations

-1-

ago, and, decades before Cantwell was born.  Cantwell has also

objected to the testimony of Simi and Blee as irrelevant because

animus against Judaism is irrelevant, animus against "immigrants,

social minorities and feminism" is irrelevant, because it goes

towards an aiding and abetting / incitement and doesn't have

foundation in a conspiracy theory of liability, and, irrelevant

because its only legitimate purpose is to contextualize Defendants'

comments on Discord, and, Cantwell was not active or only minimally

active on the Discord servers in question.

3)  Cantwell can now aver that the expert reports of Lipstadt, Simi,

and Blee were not disclosed during discovery.  Fed.R.Civ.P. 26(a)

(2) required their disclosure, and, Fed.R.Civ.p. 37(c)(1) requires

their exclusion if not disclosed.  Because they were not timely

disclosed, Lipstadt, Blee and Simi cannot testify.

4)  Further examination of Lipstadt's, Simi's and Blee's reports also

indicate that they are largely based upon hearsay material, undis-

closed and "redacted" material, and/or, depositions of which Cant-

well was not noticed.  As such, these portions of the report and

any opinions derived from this material are inadmissible.

5)  Much of Simi and Blee's report as regards Cantwell cites to blog

posts authored by the Southern Poverty Law Center ("SPLC") on

their Hatewatch blog.  The SPLC is a well known Democrat parti-

san    organization that has been widely criticized for filing

lawsuits like the instant lawsuit as a fundraising tool, exagger-

ating the size and importance of so-called "white supremacist"

and similar groups, often in coordination with the FBI's Domestic

Terrorism Operations Units, to make it seem that its work is much

more socially relevant and important than it is.  Beyond this

partisanship, these Hatewatch blogs have not been disclosed to
Cantwell,                                    and, do
not appear to fit into any exception to the hearsay rules, Fed.
R.Evid. 801, et seq.  Hearsay is generally not admissible.  Fed.
R.Evid. 802.  And, material derivative of inadmissible hearsay
is also not admissible.  Fed.R.Evid. 805.  Thus, any opinion that
Simi or Blee has derived from material published by the SPLC's
Hatewatch blog or any similar hearsay source must be excluded at
trial.

6): Further, both the Lipstadt report and Blee and Simi's reports are
based in large part upon material identified as "redacted".  Fed.
R.Civ.P. 26(a)(2)(B)(ii) requires the disclosure of all "facts or
data considered by the witness," and, Fed.R.Civ.P. 37(c)(1) re-
quires the exclusion of all undisclosed material.  Because the
Plaintiffs have never disclosed this "redacted" material, neither
Lipstadt nor Simi and Blee not any other expert may testify as to
any opinion derived from this material.

7) Lastly, Cantwell was only ever timely noticed of two depositions,
his own and a member of the Rise Above Movement's.  He has objected
to the use of all other deposition testimony pursuant to Fed.R.Civ.
P. 32(a)(1)(A) and 37(c)(1).  Much of Lipstadts's and Simi and Blee's
reports are derivative of this deposition testimony of which
Cantwell received no notice.  As such, any opinion that Lipstadt,
Simi and Blee, or, any other expert witness derived as a result of
this testimony must be excluded at trial.

Thus, for good cause shown, Cantwell Moves in Limine to Exclude Expert
Testimony That was not properly Disclosed or which is Derived From
Undisclosed And/Or Hearsay Material.

-3-

Respectfully Submitted,

Christopher Cantwell
USP-Marion
PO Box 1000
Marion, IL 62959

## CERTIFICATE OF SERVICE

I hereby certify  that this Motion in Limine was mailed to the Clerk
of the Court, 1st Class Postage Prepaid, for posting upon the ECF, to
which all other parties are subscribed, and, handed to USP-Marion staff
members Nathan Simpkinss and/or Kathy Hill for electronic transmission
to the Court, this 4th day of October, 2021.

Christopher Cantwell

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

Elizabeth Sines, et al          [
                                [
        Plaintiffs              [
                                [
v                               [   Case No: 3:17-cv-072-NKM
                                [
Jason Kessler, et al            [
                                [
        Defendants              [
                                [

SWORN DECLARATION OF CHRISTOPHER CANTWELL AS TO THE

EXPERT REPORTS OF SIMI, BLEE, AND LIPSTADT
-----------------------------------------------------

I, Christopher Cantwell, do hereby aver under penalty of perjury this
2nd day of October, 2021, that the following is true and correct:

1)  I am over 18 years of age and have personal knowledge of the fol-
    lowing.

2)  I previously averred as to having received a hard drive from the
    Plaintiffs between April 6 and 13, 2021, containing over 400 files
    and the restrictions on my access to that device.

3)  Beginning September 15 , 2021, I have been able to review the hard
    drives of para 2, supra;  these drives actually contain thousands
    of files, not all of which I have yet been able  to review.

4)  The drives of para 2, supra, contain the expert reports of Deborah
    Lipstadt and of Peter Simi and Kathleen Blee;  my receipt of the
    drive mark Plaintiff's first disclosure of this information.

5)  Because Plaintiffs did not disclose these reports to me until
    April 2021, after the close of discovery.  I was unable to depose
    Lipstadt, Simi, or Blee.

-1-

Having so averred, I sayeth no more, under oath.

Christopher Cantwell

FOREVER USA

PURPLE HEART

Energy Awareness Month

SAINT LOUIS MO  630

5 OCT 2021   PM 10 L

Christopher Cantwell
Inmate #00991-509
USP Marion
4500 Prison Rd
P.O. Box 2000
Marion, IL 62959

00991-509
Clerk Us District Court
Western District Virginia
255 W MAIN ST
Room 304
Charlottesville, VA 22902
United States

22902-505075

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

| | |
|---|---|
| Elizabeth Sines, et al | [ |
| Plaintiffs | [ |
| | [  Case No: 3:17-cv-072 |
| v. | [ |
| Jason Kessler, et al | [ |
| Defendants | [ |

MOTION IN LIMINE TO PERMIT CANTWELL COURT CLOTHES AND BAR

EVIDENCE, TESTIMONY, OR ARGUMENT OF HIS CURRENT INCARCERATION

Comes now the Defendant, Christopher Cantwell, and, he Moves this

Court in Limine to Permit him Court Clothes and Bar Evidence,

Testimony, or Argument of His Current Incarceration. In support,

he states as follows:

1) Cantwell is currently incarcerated on charges which are so

far in time, geography, and subject matter from the matter before

this Court, that exposure of the jury to the facts surrounding

that case can only confuse and distract the Jury from the facts

at issue here. On those grounds, Cantwell has moved separately to

exclude evidence of his "prior alleged felonious conduct".

2) The Court granted Cantwell's earlier motion to be transported

to this District for trial, and assuming he is to be housed at

the Albemarle Charlottesville Regional Jail, he will likely be

taken to and from the Courthouse in a cartoonish black and white

striped jumpsuit, or similarly conspicuous attire if housed elsewhere.

3) Loudly advertising Cantwell's current incarceration will have

an unduly prejudicial effect on the Jury, even more so than information

about his conviction, by inserting in their minds the idea that

he has already been convicted of the facts they are tasked to

-1-

decide in this case.

4) Cantwell's release is scheduled for December of 2022, which should have him in a halfway house or home confinement by or before August of 2022. Cantwell is neither a fool nor a flight risk.

5) To avoid undue prejudice to Cantwell and his codefendants, the Court should allow Cantwell to have Courtroom appropriate attire delivered either to the Courthouse, or wherever he is to be housed, and permit him to change into such clothing before being seen by the Jury.

6) The Court should also instruct the proper authorities to remove Cantwell's handcuffs before the Jury enters the Courtroom, and wait until the Jury has left before putting them back on.

7) Separately from, and indeed, more importantly than, the question of Cantwell's allged felonious conduct, the Court should exclude evidence, testimony or argument about Cantwell's current incarceration.

Respectfully Submitted
Christopher Cantwell

10-4-2021

CERTIFICATE OF SERVICE

I hereby certify that this Motion in Limine was mailed to the Clerk of the Court, and/or handed to USP Marion staff members for electronic transmission to the Court, on this 4th day of October 2021.

Christopher Cantwell

-2-

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Charlottesville Division

1159

Elizabeth Sines, et al          [
                                [
        Plaintiffs              [
                                [
v                               [   Case No:  3:17-cv-072-NKM
                                [
Jason Kessler, et al            [
                                [
        Defendants              [
                                [

### OBJECTION TO PLAINTIFF'S EXHIBIT LIST
----------------------------------------

Comes Now the Defendant, Christopher Cantwell, and, he makes the follow-
ing Objection to the Plaintiff's Exhibit List and the introduction of
their exhibits at trial:

1)  The Court ordered the parties to exchange xhibit lists by September
    14, 2021.

2)  I, Christopher Cantwell, do herbey aver under penalty of perjury
    this 4th day of October, 2021, that as of this morning at 9:00 AM
    Plaintiffs have not provided me with an exhibit list.

3)  Because Plaintiffs have not disclosed to Cantwell the exhibtis that
    they intend to introduce at trial pursuant to Fed.R.Civ.P. 26(a),
    Cantwell asks that all of their exhibits be excluded from trial
    pursuant to Fed.R.Civ.P. 37(c)(1).

                              Respectfully Submitted,


                              Christopher Cantwell
                              USP-Marion
                              PO Box 1000
                              Marion, IL 62959

-1-

I hereby certify that this Objection was mailed to the Clerk of the Court, 1st Class postage prepaid, for posting upon the ECF to which all other parties are subscribed, and, handed to USP-Marion staff members Nathan Simpkins and/or Kathy Hill for electronic transfer to the Court, this 4th day of October, 2021.

Christopher Cantwell

FOREVER USA
PURPLE HEART

Energy-Awar

SAINT LOUIS MO 630
5 OCT 2021 PM 10 L

Office of the Clerk
United States District Court
Western District of VA
Charlottesville Division
255 West Main Street Rm 304
Charlottesville, VA 22902

Christopher Cantwell
Inmate #00991-509
USP Marion
4500 Prison Rd
P.O. Box 1000
Marion, IL 62959