UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,

    Plaintiffs,

v.

JASON KESSLER, et al.,

    Defendants.

Civil Action No. 3:17-cv-00072-NKM

JURY TRIAL DEMANDED

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISTOPHER CANTWELL'S MOTIONS IN LIMINE ECF NO. 1157, 1158, 1160

In yet another series of apparently ghostwritten Motions *in Limine*,[1] Defendant Christopher Cantwell moves the Court to limit the testimony of experts Deborah Lipstadt, Ph.D., Peter Simi, Ph.D., and Kathleen Blee, Ph.D. *See* ECF No. 1157, 1158, 1160. For the most part, this trio of motions hurls (largely incomprehensible) invective at Plaintiffs and their experts. Cantwell, for instance, complains about the "supposed Holocaust®" and bemoans what he describes as "Aristotle's tyrannical coalition of the 'oppressed.'" ECF No. 1157, 1158. At bottom, though, Cantwell's motions amount to belated attacks on Plaintiffs' experts that this Court has already considered and rejected. These recycled arguments fare no better this time around, and Cantwell's motions should be denied.

---

[1] As Plaintiffs have explained in previous submissions to the Court, Cantwell's motions can and should independently be denied because they appear to be ghostwritten in violation of legal rules. *See* ECF No. 1108, 1134. Ghostwriting by *pro se* litigants "unfairly exploits the Fourth Circuit's mandate that the pleadings of *pro se* parties be held to a less stringent standard than pleadings drafted by lawyers." *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078 (E.D. Va. 1997). For that reason, Cantwell should not benefit from the typical rule that filings by *pro se* litigants should be liberally construed. *See id.*

## BACKGROUND

As the Court is aware, Cantwell was represented by counsel, James Kolenich, from the start of this case until Mr. Kolenich was permitted to withdraw as Cantwell's attorney on October 28, 2019.[2] *See* ECF No. 583. Following Mr. Kolenich's withdrawal, Cantwell proceeded *pro se*. During this period, Cantwell communicated with Plaintiffs' counsel via his email address. Cantwell was then arrested on January 23, 2020, and subsequently convicted and sentenced to 41 months' incarceration in March 2021. *See* Judgment, *United States v. Cantwell*, No. 20-cr-00006, ECF No. 132 (D.N.H. Mar. 5, 2021). On February 14, 2020, Cantwell filed a status letter that included notice that he should be served at his place of incarceration. *See* ECF No. 664; ECF No. 945 at 3-4. Due to an inadvertent administrative oversight, Plaintiffs' counsel (along with Defendants and their counsel) mistakenly continued to serve Cantwell at his previously identified email account until March 2021. *See* ECF No. 945 at 3-4. Every document erroneously served to Cantwell's email address was simultaneously served to every other Defendant in the case. *See id.* In March 2021, Plaintiffs became fully aware of the administrative error and promptly informed Cantwell and the Court. *See id.* at 2. On April 5, 2021, Plaintiffs re-served Cantwell at his place of incarceration with all legal filings to which he was entitled—all of which were previously sent to his email address—including all expert reports. *See id.* at 5.

Several expert reports, including the Expert Report of Deborah E. Lipstadt, Ph.D., and the Expert Report of Peter Simi, Ph.D., and Kathleen Blee, Ph.D., were served on all Defendants, including Cantwell at his email address, on July 20, 2020. *See* ECF No. 832-1, 832-2. Motions to exclude proposed expert testimony were due on August 7, 2020. *See* ECF No. 597. On August 7,

---

[2] On July 25, 2019, Mr. Kolenich filed a motion to withdraw. ECF No. 530. On October 18, 2019, Mr. Kolenich informed the Court and counsel that Cantwell had fired both him and Mr. Woodward while Mr. Kolenich's motion to withdraw remained *sub judice*. ECF No. 945-1. The Court granted Mr. Kolenich's motion on October 28, 2019. ECF No. 583.

2

2020, Defendants Jason Kessler, Nathan Damigo, Matthew Parrott, Identity Evropa, and Traditionalist Worker Party moved to exclude both expert reports under Rules 403 and 702 of the Federal Rules of Evidence. *See* ECF No. 826. After Plaintiffs filed their opposition brief on September 11, 2020, *see* ECF No. 871, Defendants withdrew their motion to exclude the report of Dr. Lipstadt, *see* ECF No. 880. On March 31, 2021, the Court denied Defendants' motion as to the Drs. Blee and Simi, finding that "Plaintiffs' proposed expert testimony falls well within the types of testimony courts routinely hold admissible; that such proposed testimony will be relevant and helpful to a jury in this case; and that no unfair prejudice will result from its introduction." ECF No. 937 at 1. A couple of weeks later, on April 15, the Court issued a full opinion, explaining why Drs. Blee's and Simi's proposed expert testimony is "proper" and "fits well within the types of specialized knowledge that courts have regularly found helpful to a jury." ECF No. 941 at 2; *see also id.* at 18 ("Blee and Simi's challenged testimony is undoubtedly relevant and helpful to a jury considering the merit of Plaintiffs' claims on these facts."); *id.* at 22 ("[T]hat Plaintiffs would seek to introduce expert testimony addressing certain common beliefs, strategies, and violent tactics of various white supremacist groups is not only unsurprising but would also be uniquely helpful evidence to a jury in a conspiracy case that involves ten white supremacist organizations and fourteen individuals as defendants.").

On April 12, 2021, a week after Plaintiffs re-served Cantwell with all legal filings, Cantwell moved for sanctions against Plaintiffs based on the administrative oversight regarding email service. *See* ECF No. 939. On May 14, 2021, the Court denied Cantwell's motion to sanction Plaintiffs for "inadvertently" sending "some motions and discovery papers to his personal email address," concluding that Cantwell had "not suffered any prejudice because of Plaintiffs' mistake." ECF No. 951 at 2.

Cantwell did not move to exclude or limit either expert report until October 4, 2021, when he filed the motions at issue here. *See* ECF No. 1157, 1158, 1160.

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. As a general matter, an expert witness "may testify in the form of an opinion" if she "is qualified as an expert by knowledge, skill, experience, training, or education," and her "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). The court serves a "basic gatekeeping" function for expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), meaning that it has a "responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand,'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (emphasis omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

Expert testimony is "reliable" where "it is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 590 & n.9); *see also id.* at 261 ("In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved.").

Expert testimony is "relevant" if it "will aid the trier of fact to understand or resolve a fact at issue." *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (citing *Daubert*, 509 U.S. at 592); *see also Kristensen ex rel. Kristensen v. Spotnitz*, No. 3:09-CV-00084, 2011 WL 4380893, at *1 (W.D. Va. Sept. 21, 2011) (Moon, J.) ("'Relevant evidence' is liberally defined to include evidence which has 'any tendency to make the existence of any fact that is of consequence to the

Cantwell did not move to exclude or limit either expert report until October 4, 2021, when he filed the motions at issue here. *See* ECF No. 1157, 1158, 1160.

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. As a general matter, an expert witness "may testify in the form of an opinion" if she "is qualified as an expert by knowledge, skill, experience, training, or education," and her "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). The court serves a "basic gatekeeping" function for expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), meaning that it has a "responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand,'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (emphasis omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

Expert testimony is "reliable" where "it is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 590 & n.9); *see also id.* at 261 ("In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved.").

Expert testimony is "relevant" if it "will aid the trier of fact to understand or resolve a fact at issue." *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (citing *Daubert*, 509 U.S. at 592); *see also Kristensen ex rel. Kristensen v. Spotnitz*, No. 3:09-CV-00084, 2011 WL 4380893, at *1 (W.D. Va. Sept. 21, 2011) (Moon, J.) ("'Relevant evidence' is liberally defined to include evidence which has 'any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence.'" (quoting Fed. R. Evid. 401 and citing *Daubert*, 509 U.S. at 587); 4 Weinstein's Fed. Evid. § 702.03 (2020) ("trial courts ought to approach exclusion [of expert testimony] gingerly, and should admit the testimony if there is any chance at all that it will be beneficial to the trier of fact").

Expert testimony that would otherwise be properly admitted under Rule 702 may also be challenged under Rule 403 if "'unfair prejudice *substantially* outweigh[s]' the testimony's probative value." *United States v. Campbell*, 963 F.3d 309, 314 n.1 (4th Cir. 2020) (quoting *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008)); *see also Daubert*, 509 U.S. at 595; *United States v. Benkahla*, 530 F.3d 300, 310 (4th Cir. 2008) ("Rule 403 is not an injunction to exclude prejudicial evidence but a mandate, entrusted mainly to the trial court, to weigh prejudice against probative value. . . . 'The mere fact that the [expert] evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence.'" (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004)). In conducting this analysis, "the court must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1135 (4th Cir. 1988) (internal quotation marks omitted); *see also United States v. Tillmon*, 954 F.3d 628, 643 (4th Cir. 2019) ("Rule 403 is a rule of inclusion, generally favoring admissibility." (internal quotation marks omitted)).

## ARGUMENT

**I.     Cantwell's Motions Are Time-Barred and Seek To Relitigate Issues that This Court Has Already Decided**

As a threshold matter, all three of Cantwell's motions should be rejected because they were all filed far too late and, at least in part, seek to relitigate issues this Court already decided. The

deadline for Defendants to move to exclude expert testimony was more than a year ago, on August 7, 2020. Every single other Defendant in this case received Plaintiffs' expert reports and had the opportunity to move to exclude and depose Drs. Lipstadt, Blee, and Simi. Several Defendants— represented by Mr. Kolenich (Cantwell's former lawyer)—in fact moved to exclude Drs. Lipstadt, Blee, and Simi. After Plaintiffs filed their opposition, Defendants withdrew their motion to exclude Dr. Lipstadt. The Court then denied Defendants' motion to exclude Drs. Blee and Simi. No Defendant chose to depose any expert. Cantwell's motions are too little, too late.

To the extent that Cantwell's motions can be read to seek reconsideration of the Court's prior rulings on the admissibility of Drs. Blee and Simi's expert testimony, Cantwell fails to satisfy the Fourth Circuit's exacting standard for granting such reconsideration. As this Court has explained, "courts generally do not depart from a previous ruling unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Blick v. Shapiro & Brown, LLP*, No. 3:16-cv-00070, 2017 WL 8777361, at *1 (W.D. Va. Nov. 8, 2017) (Moon, J.) (internal quotation marks and citation omitted). And "[s]uch motions are disfavored and should be granted sparingly." *Id.* (internal quotation marks omitted). Cantwell comes nowhere near to clearing that threshold.[3]

Cantwell appears to seek special dispensation for his out-of-time motion based on the argument that he "gained access to the expert reports of Deborah Lipstadt and Peter Simi and Kathleen Blee on September 15 2021," ECF No. 1160 at 1; see ECF No. 1157 at 1 (claiming that he could not review Lipstadt report until "September 22, 2021"); ECF No. 1158 at 1 (similar).

---

[3] Cantwell likewise effectively seeks reconsideration of the Court's prior orders in another of his motions *in limine*, ECF No. 1121, which fails for similar reasons. *See* Pls.' Opp. to Def. Christopher Cantwell's Mot. *in Limine* to Bar Pls. from Arguing or Presenting Evidence in Supp. of Theories of Aiding or Abetting or Contributory Negligence.

That is false: Plaintiffs served Cantwell with these documents several months ago, on April 5, 2021. *See* ECF No. 945 at 5. Moreover, Cantwell was sent notice, by mail, of the hearing on his co-Defendants' motion to exclude Plaintiffs' experts on November 12, 2020. *See* ECF No. 907 ("Notice mailed to Pro Se Parties via US Mail"). Cantwell fails to explain why he remained silent while he knew this issue was being litigated nearly one year ago, nor why, after gaining access to the expert reports, he waited nearly half a year (until one month before trial) to file a motion to exclude or limit Plaintiffs' witnesses.

In any case, Cantwell effectively seeks the preclusion of expert witnesses who were properly disclosed to all other Defendants and of whom he alone received delayed disclosure, due to Plaintiffs' inadvertently failing to update his service address when he went to prison. The Court has already found that Cantwell had "not suffered any prejudice because of Plaintiffs' mistake" leading to the late disclosure. ECF No. 951 at 2. Given that prior determination, there is no reason for this Court to entertain Cantwell's eleventh-hour motion to exclude Plaintiffs' experts. Every other Defendant unquestionably received proper notice of those experts, several Defendants moved to exclude those experts, the Court already issued a well-reasoned opinion explaining why the expert testimony of Drs. Blee and Simi is admissible, and Cantwell (like all other Defendants) will have an opportunity to cross-examine Plaintiffs' expert witnesses at trial. Under these circumstances, Cantwell has once again failed to demonstrate that he would suffer any prejudice if Plaintiffs' expert witnesses are allowed to testify at trial. If anything, granting Cantwell's belated motion to exclude Plaintiffs' expert testimony on the eve of trial would severely prejudice Plaintiffs.

## II. Cantwell's Motion to Bar Plaintiffs from Introducing Evidence About the "Supposed Holocaust®" (ECF No. 1157) Should Be Denied

Cantwell's motions are not only procedurally barred, they are meritless and deeply offensive. Specifically, Cantwell's first motion asks the Court to bar Plaintiffs from introducing evidence on what he dubs the "Supposed Holocaust®." ECF No. 1157 at 1. In support of that request, Cantwell asserts that Dr. Lipstadt—a renowned historian whose academic credentials are beyond reproach—is an "extremist[]" who has been carrying out a "physical and cultural genocide . . . against America's white working class population"; that "persons like Lipstadt have gotten the idea that the Holocaust® is an unlimited license for them to commit crimes against the world's peoples"; and that the "Court should not allow the idea that the Holocaust® is an excuse for the violence that the Plaintiffs visited upon the Defendants to be presented in this courtroom." *Id.* at 4. Cantwell's motion is not only shameful and antisemitic, it is also baseless.

Cantwell's argument hinges on the (misguided) premise that "the Holocaust® is just not relevant to this case." ECF No. 1157 at 3; *see id.* ("What role, however, does the supposed Holocaust® play in this case?").[4] But that contention fails. The law is clear: Animus against Jewish persons "falls within the ambit of [42 U.S.C. §] 1985[3]." *Ward v. Connor*, 657 F.2d 45, 48 (4th Cir. 1981);[5] *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) (finding that "Jews and Arabs were among the peoples then considered to be distinct races and hence within

---

[4] Cantwell also makes passing references to arguments he has made in other motions, including his motion to bar Plaintiffs from arguing or presenting evidence in support of theories of aiding or abetting or contributory negligence (ECF No. 1121) as well as his objections on the grounds that Dr. Lipstadt must be precluded as not previously disclosed (ECF No. 1097). *See* ECF No. 1157 at 1-2. Plaintiffs incorporate by reference their responses to those separate motions.

[5] Cantwell raises these same arguments in two other frivolous motions asking the Court "for a Determination That Bias Against Those Who Identify as 'Jews' Is Not a Form of 'Class Based Invidiously Discriminatory Animus' Prohibited by 42 U.S.C. § 1985(3)" and "to Exclude All Evidence of Defendants' Perceived Biases Against Those who Identify as 'Jews.'" ECF No. 1085, 1088. As set forth in Plaintiffs' separate response to those motions, this argument lacks merit. *See* ECF No. 1108.

8

the protection of" 42 U.S.C. § 1982). Indeed, this Court specifically considered evidence of Defendants Hill, Tubbs, and League of the South's animus and violent intentions toward Jewish people in denying their Motion for Summary Judgment on Plaintiffs' § 1985(3) claims. *See* ECF 1040 at 48-51. There can be no serious doubt that animus against Jews is relevant to this case.

Thus, and as Plaintiffs have previously explained, *see* ECF No. 871 at 24-25, Dr. Lipstadt's discussion of antisemitism (*i.e.*, animus against Jewish people)—including her explanations of traditional references to, invocations of, and denial of the Holocaust—is plainly relevant to this trial and would aid the jury, *see Moreland*, 437 F.3d at 431 (citing *Daubert*, 509 U.S. at 592). As Dr. Lipstadt explains, the Holocaust—whose very purpose was the genocide of Jews based on the premise that "Jews were *racially* different and inherently evil"—is the most prominent antisemitic event in history. *See* ECF No. 832-1 at 14-15. References to the Holocaust through rhetoric and symbols—such as praising Hitler; using the swastika; chanting "Sieg Heil," "Heil Hitler," and "blood and soil"; and referring to "gassing" the "kikes" or the Jews, to "ovens," or explicitly to "Auschwitz"—are traditional antisemitic tropes used to this day, including at Unite the Right. *See id.* at 25-30, 36-40, 41-46. Dr. Lipstadt also explains the ways in which antisemitism bears a close relationship with racism against people of color, such as through the "white replacement" theory, which posits that people of color such as African-Americans serve as Jews' accomplices or "lackeys" in their effort to destroy white Christian civilization. *See id.* at 15-16.

Although Cantwell admits that Defendants "included references to the Holocaust®" in their communications, he claims that "Lipstadt is not appearing to try to contextualize these memes for the jury." ECF No. 1157 at 4. That assertion misses the mark. Dr. Lipstadt's expert opinion provides clear context to Defendants' "references to the Holocaust." As she explains, the

9

"ideologies, symbols, and rhetoric" on display at Unite the Right (and reflected in the "memes" in question) bore the "hallmark[s] of age-old antisemitism." ECF No. 832-1 at 15.

In short, even if Cantwell's motion were not procedurally barred, he has no basis for asserting the irrelevance of Dr. Lipstadt's report and testimony.

### III. Cantwell's Motion to Limit Professors Simi and Blee's Testimony (ECF No. 1158) Should Be Denied

Cantwell's motion to limit the testimony of Drs. Simi and Blee, ECF No. 1158, should be denied for similar reasons. For starters, this motion, too, is procedurally barred: the deadline to move to exclude proposed expert testimony has long passed, *see* ECF No. 597 at 2 (noting August 7, 2020 deadline), and this Court already considered—and rejected—similar motions to exclude and limit Drs. Blee and Simi's testimony under Rules 702 and 403 that other Defendants filed, *see* ECF No. 937, 941.

On the merits, Cantwell's motion is borderline incomprehensible. For example, he intimates that Plaintiffs are trying to invite this Court to "host[] a Maoist struggle session" in the courtroom, and claims that Drs. Simi and Blee may testify about "bring[ing] all of Aristotle's coalition of tyranny" against Defendants. ECF No. 1158 at 2, 4. Needless to say, Plaintiffs have no intention of eliciting such testimony. To the extent the Court construes Cantwell's motion as raising an argument about the admissibility of the expert testimony under Rules 702 and 403, any such argument would fail for the reasons articulated in Plaintiffs' previous filings and this Court's

opinion on the admissibility of Dr. Simi and Blee's expert testimony and report, *see* ECF No. 871, 937, 941.[6]

## IV. Cantwell's Motion to Exclude Expert Testimony that Is Allegedly Undisclosed or Derived from Hearsay Material (ECF No. 1160) Should Be Denied

Equally unavailing is Cantwell's motion to exclude expert testimony based on inadmissible material. *See* ECF No. 1160 at 2-3. Under Rule 703, an expert may rely on inadmissible facts and data in formulating an opinion. As the Fourth Circuit has explained, "Rule 703 exists so that scientific standards may be admitted as trustworthy and reliable exceptions to the hearsay rule, thereby negating the need to parade into court each and every individual either remotely or intimately involved in the creation of a particular standard." *See United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). Thus, even if Dr. Lipstadt, Dr. Simi, and Dr. Blee cited hearsay statements and otherwise inadmissible information in their expert reports, their reliance on such material reflects the everyday, social scientific "practice of the experts themselves when not in court" and offers no basis for precluding their testimony. *See* Fed. R. Evid. 703 advisory committee's notes.

Rule 703 permits an expert to base an opinion on inadmissible facts (including hearsay) if "experts in the particular field would reasonably rely on those kinds of facts or data." Fed. R. Evid. 703. And, here, Cantwell makes no argument that Plaintiffs' experts deviated from the norms of their respective fields. Nor could he, as the expert reports here plainly satisfy the reasonable-reliance requirement. *See, e.g.*, ECF No. 832-2 at 3 ("The methodological steps in our analysis follow the research protocols that are standard in rigorous qualitative analyses in the social

---

[6] While not a model of clarity, Cantwell's motion also seems to incorporate several arguments he has previously made in his other recent motions, including in his motions asking the Court "for a Determination That Bias Against Those Who Identify as 'Jews' Is Not a Form of 'Class Based Invidiously Discriminatory Animus' Prohibited by 42 U.S.C. § 1985(3)," "to Exclude All Evidence of Defendants' Perceived Biases Against Those who Identify as 'Jews,'" and "to Bar Plaintiffs from Arguing or Presenting Evidence in Support of Theories of Aiding or abetting or Contributory Negligence Towards Violations of Va. Ann. Code § 8.01-42.1, Assault, or Any Other Tort." ECF Nos. 1085, 1088, 1121. Plaintiffs respectfully refer the Court to their opposition briefs to those respective motions.

11

sciences, as codified in a report by the National Science Foundation for which one of the authors of this report (Blee) was a principal author." (footnote omitted)).

Cantwell is incorrect that the Plaintiffs' expert reports fail to disclose the "facts or data considered by the [experts] in forming" their opinions, *see* Fed. R. Civ. P. 26(a)(2)(B)(ii). Plaintiffs initially served Cantwell with versions of the expert reports redacting the material that had been designated (largely by Defendants and nonparties) as "highly confidential," which the protective order entered by the Court barred Plaintiffs from providing to Cantwell as a *pro se* Defendant. However, now that portions of this material have recently been undesignated as "highly confidential," Plaintiffs intend to serve Cantwell with substantially unredacted versions of the reports. Otherwise, to the extent that Cantwell still maintains that the reports are "based upon" "undisclosed or 'redacted' material," Cantwell neglects to specify the material that, in his view, was "undisclosed or 'redacted'" in violation of Rule 26. *See* ECF No. 1160 at 2-3. This Court should reject his contention for that reason alone. *See Funderburk v. S.C. Elec. & Gas Co.*, 2019 WL 3406814, at *8 (D.S.C. July 9, 2019) (rejecting conclusory Rule 26(a)(2)(B)(ii) challenge).

In any event, Cantwell misconstrues the purpose of Rule 26's expert-disclosure requirement: to afford the opposing party a "reasonable opportunity to prepare for effective cross examination." Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment. The reports here disclose, in painstaking detail and with copious citations and source footnotes, the materials that the experts considered. *See, e.g.*, ECF No. 832-1 at 2 ("All facts or data I considered while forming these opinions are referenced in this report or else contained in Appendix B."); ECF No. 832-2 at 3-6 (detailing methodology and sources for opinions). Because the reports' level of disclosure is more than sufficient to enable Cantwell to challenge the empirical and analytical bases of the opinions therein and prepare for cross examination, the reports easily suffice under Rule 26. *See,*

12

*e.g.*, *Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, in Nelson Cnty.*, 396 F. Supp. 3d 628, 639-40 (W.D. Va. 2019) (holding that report satisfied Rule 26, despite allegedly incomplete disclosure); *Durr Sys., Inc. v. EFC Sys. Inc.*, No. GJH-18-2597, 2021 WL 351175, at *9 (D. Md. Feb. 2, 2021) (same, despite failure to list all materials considered); *Est. of Welsh v. Michaels Stores, Inc.*, No. CCB-19-988, 2020 WL 7384730, at *4 (D. Md. Dec. 16, 2020) (same, despite failure to produce all materials considered).

Even if the expert disclosures violated Rule 26 (and they did not), the *Southern States* factors strongly militate for finding that the purported violation was substantially justified and harmless. Accordingly, precluding Dr. Lipstadt, Dr. Simi, and Dr. Blee from testifying at trial would be an unwarranted sanction. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); Fed. R. Civ. P. 37(c)(1). As Plaintiffs have explained in prior motions, Cantwell was not prejudiced by any alleged "surprise" or delayed disclosure, because even assuming that he was unaware of the three expert witnesses until April 2021, the seventeen other Defendants (who are similarly situated to Cantwell and several of whom are represented by Cantwell's former lawyer) were timely informed of the experts' identities and had full opportunity to investigate and depose them. *See* ECF No. 1154 at 8-11. Moreover, given the crucial importance of the experts' testimony to Plaintiffs' case, precluding these experts from testifying at trial—based on an inadvertently delayed disclosure to *one* of seventeen other Defendants—would be unduly draconian. *See id.*

## CONCLUSION

For the foregoing reasons, the Court should deny Cantwell's motions *in limine* seeking to limit the testimony of Drs. Lipstadt, Simi, and Blee (ECF No. 1157, 1158, 1160).

Date: October 12, 2021

                                                Respectfully submitted,

*/s/ Michael L. Bloch*

Roberta A. Kaplan (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com

*Counsel for Plaintiffs*

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

Karen L. Dunn (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahil@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700

<div style="display:flex">
<div>

pbowman@cooley.com


J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

</div>
<div>

Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com



*Counsel for Plaintiffs*

</div>
</div>

## CERTIFICATE OF SERVICE

      I hereby certify that on October 12, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, Nationalist Front, Matthew Parrott, Traditionalist Worker Party and Matthew Heimbach*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party and Matthew Heimbach*

I hereby certify that on October 12, 2021, I also served the following non-ECF participants via mail and electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Christopher Cantwell 00991-509
Grady County Law Enforcement Center
215 N. 3rd St.
Chickasha, OK 73018

and

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Michael L Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP

Counsel for Plaintiffs