UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>JASON KESSLER, et al.,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CANTWELL'S MOTION IN LIMINE TO INTRODUCE STATEMENTS AGAINST INTEREST OF UNAVAILABLE WITNESS DWAYNE DIXON PURSUANT TO FED. R. EVID. 804(b)(3) AND 807**

**INTRODUCTION**

Defendant Christopher Cantwell filed a Motion in Limine and Notice of Intent to Introduce Statement Against Interest of Unavailable Witness Dwayne Dixon ("Dixon") Pursuant to Fed. R. Evid. 804(b)(3) and 807 (ECF No. 1119, or the "Motion"), seeking to admit into evidence statements made in an unauthenticated video that purports to show a third-party, Dwayne Dixon, reading hearsay statements from an unknown document written by an unknown author at an unknown time.

The statements should be excluded for several reasons. Neither the video itself nor the statements within it are authenticated, which is a prerequisite for admission of such evidence under FRE 901. In addition, the statements are double hearsay, and Cantwell has not and cannot establish

an exception for either layer of hearsay. Cantwell's argument that they are admissible as statements against penal interest under FRE 804(b)(3) is wrong as a matter of law because they plainly do not subject the speaker to criminal or civil liability under any logical interpretation. The video and the statements within it are also not admissible under FRE 807, as Cantwell argues, because they are unreliable on their face, having no corroborating evidence, no attributed declarant, no basis for authentication, and no other attributes that might demonstrate reliability, and they are not probative of any fact in issue in this case.

## FACTS

Cantwell alleges that Dixon is a non-party who was present in Charlottesville, Virginia on August 12, 2017 during Unite the Right. Cantwell seeks to introduce into evidence statements from an undated, unexplained, and unauthenticated video that he claims shows Dixon in what appears to be a classroom reading from a document, stating:

> So, James Fields, driving his Charger, slow rolled our western perimeter, so, that was Fourth Street, several times. One time he paused right in front of me and I waved him off with my rifle. In his last pass, he accelerated and, a block away, he killed Heather.

*Exhibit 1*.

## ARGUMENT

### I.  THE STATEMENTS ARE INADMISSIBLE AS UNAUTHENTICATED

As a preliminary matter, Cantwell has provided no basis to authenticate either the video or the statements within it as required under Fed. R. Evid. 901. *See* Fed. R. Evid. 901(a) (proponent must "produce evidence sufficient to support a finding that the item is what the proponent claims it is"). There is no indication that the video is what Cantwell purports it to be, that it has not been altered, that the speaker is in fact Dwayne Dixon, or even the time and place the video was made. *See Stokes v. Harris*, No. 1:10CV935, 2014 WL 5149222, at *4 (M.D.N.C. Oct. 14, 2014)

(excluding video evidence where a party "has not explained the origins of the video or otherwise offered any method of authentication of the video"); *United States v. Ivery*, No. 2:16-cr-00158, 2017 WL 728309, at *7 (S.D. W. Va. Feb. 24, 2017) ("The admission of a video recording requires a showing of authenticity and accuracy because a video recording cannot be entirely self-authenticating.").

Moreover, because the video contains a separate hearsay document, i.e., a person reading a statement from a paper, Cantwell also must authenticate and establish admissibility for that statement as well. *See* Fed. R. Evid. 805 (requiring that each instance of hearsay meet one of the exceptions to the hearsay rule to be admissible); *In re Thistle*, No. 96-17127, 1998 WL 35412015, at *5 (Bankr. E.D. Va. July 7, 1998) ("[H]earsay which comes within a recognized exception to the hearsay rule is not inadmissible simply because it contains other hearsay. . . However, the included hearsay must itself fall within an exception to the hearsay rule.") (citing Fed. R. Evid. 805). Cantwell offers no basis to identify what that paper is, who wrote it, or when it was written.

For these reasons alone, the video and the statements within it must be excluded.

## II.     THE OUT-OF-COURT STATEMENTS ARE INADMISSIBLE HEARSAY

Cantwell acknowledges the statements within the video are hearsay but argues they are admissible as "statements against interest" under Rule 804 of the Federal Rules of Evidence. Mot., ¶ 4. Cantwell's argument fails as a matter of law.

Rule 804(b)(3)(A) provides that hearsay can be admissible if "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability[.]" A party seeking to satisfy this exception to the hearsay rule has a "formidable burden." *Smith v. Lusk*, No. 3:10-0781, 2012 WL 1806817, at *1 (S.D. W. Va. May 17, 2012) (quoting

*United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995)).  This high standard is not satisfied unless the statement is "almost a direct, outright statement that the person was legally at fault." *United States v. Martino*, 648 F.2d 367, 391 (5th Cir. 1981).  It "must have 'so great' a tendency to subject the declarant to penal liability–not just *any* tendency to support penal liability." *Smith*, 2012 WL 1806817, at *3.  And it must subject the declarant to a "real and tangible threat of criminal prosecution."  *Id.*[1]

The exception is not satisfied if the statement "possibly could" or "might" lead to liability. *Id.*  Nor is a statement admissible if it "merely subjects the declarant to a criminal reputation, or to a remote possibility of prosecution."  *Id.*; *United States v. Funt*, 896 F.2d 1288, 1298 (11th Cir. 1990) (applying the rule in a criminal context, holding statement inadmissible where declarant did not expect it to be used against him, even where statement was "somewhat facially inculpatory"). "Hypothetical, attenuated, or improbable bases for criminal liability are not grounds for admission."  *Smith*, 2012 WL 1806817, at *3 (collecting cases).  Statements that are only "tangentially related to the required elements of the crime," for example, do not satisfy the exception and are inadmissible.  *Id.*, at *4.  And where there is only a remote possibility of civil liability, statements are not sufficiently against one's interest to be admissible under Rule 804(b)(3).  *See Meadow Gold Dairies*, 875 F. Supp. at 347-48; *In re Indus. Silicon Antitrust Litig.*, 1998 U.S. Dist. LEXIS 20459, at * 6-7.

---

[1] While many cases speak in terms of requiring a threat of criminal prosecution, the same analysis applies where a threat of civil liability is raised. *See West Virginia ex rel. McGraw v. Meadow Gold Dairies*, 875 F. Supp. 340, 347-48 (W.D. Va. 1994) (The testimony of a witness in a criminal antitrust trial under a grant of use immunity was not against his civil interest because the testimony was actually in his interest, and at the time it was "highly unlikely that he was aware, or if aware, that he cared, that a theoretical possibility of a civil lawsuit existed."); *In re Indus. Silicon Antitrust Litig.*, Nos. 95-2104, 96-1131, 96-2003, 96-2111, and 96-2338, 1998 U.S. Dist. LEXIS 20459, at *7 (W.D. Pa. Oct. 13, 1998) (holding grand jury testimony was not admissible under Rule 804(b)(3) as testimony against interest because while civil liability did exist in theory, likelihood of civil suit against witnesses was remote and circumstances did not show declarants were aware at the time of testifying that the statements could have been against their interest).

The context of the statement is also critical because "the declarant must be aware at the time of making the statement that it is against his interest." *Meadow Gold Dairies, Inc.*, 875 F. Supp. at 347; *Smith*, 2012 WL 1806817, at *2 ("The extent to which a statement must expose a declarant to criminal liability in order to qualify for admission under Rule 804(b)(3) is context-specific . . . .").

Here, none of the statements within the video come close to meeting the high standard under Rule 804.

**"Our western perimeter."** Cantwell argues that the statement "James Fields, driving his Charger, slow rolled our western perimeter" is "material to this case and probative" because it allegedly "associates" Dixon with an "armed vigilante terror mob." Mot., ¶¶ 1-2. Cantwell's interpretation of this statement is illogical. There is no context or explanation for what the "western perimeter" means or who "our" refers to. It certainly does not follow that a person referring to "our western perimeter" necessarily refers to a person who is part of or associated with an "armed vigilante terror mob." Mot., ¶ 2.

Moreover, Cantwell does not explain how this might satisfy the high standard for a statement against interest. Nor could he. Cantwell has provided the Court with nothing but his own speculation to associate Dixon with an "armed vigilante terror mob" and has cited no authority to support his assertion that such a statement has *any* tendency – let alone a "great" tendency – to subject Dixon to civil or criminal liability. Cantwell cannot meet his formidable burden. *See Smith*, 2012 WL 1806817, at *1.

**"I waved him off with my rifle."** Cantwell also claims that the statement "I waved [James Fields] off with my rifle" is a statement against interest because it constitutes an admission that

the speaker was committing the crime of brandishing. Mot., ¶¶ 2, 4. This, too, is wrong as a matter of law.

First, this statement itself is hearsay because the speaker is reading from a document (one out-of-court statement) and then speaking in front of the camera (another out-of-court statement). *United States v. Osorio*, No. 88-5523, 1988 U.S. App. LEXIS 12608, at * 2-3 (4th Cir. July 26, 1988) (explaining statement describing content of document was double hearsay). Thus, to be admissible, both the written and spoken statements must fall within a hearsay exception. *See* Fed. R. Evid. 805 (requiring that each instance of hearsay meet one of the exceptions to the hearsay rule to be admissible); *In re Thistle*, 1998 WL 35412015, at *5.

As detailed above, the paper from which the speaker is reading is unauthenticated and unexplained (and unproduced), and there is no clear indication of the declarant for the statement on that paper. Cantwell offers no basis to admit this written statement at all, so there is no basis to admit into evidence someone reading that same statement.

Second, the statement does not remotely subject the speaker to liability for brandishing, let alone hold a "great" tendency to subject the speaker to a "real and tangible" threat of criminal prosecution for brandishing. Virginia Code 18.2-282 makes it "unlawful for any person to point, hold or brandish any firearm . . . in such manner as to reasonably induce fear in the mind of another." "'Brandish' means 'to exhibit or expose in an ostentatious, shameless, or aggressive manner.'" *Morris v. Commonwealth*, 269 Va. 127, 129 (2005) (internal citation omitted). Thus, the evidence must show both "(1) pointing or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." *Dezfuli v. Commonwealth*, 58 Va. App. 1, 9 (2011) (quoting *Kelsoe v. Commonwealth*, 226 Va. 197, 198 (1983)).

Here, even assuming the speaker is reading his own words, the statement in the video does not describe conduct constituting the crime of brandishing. There is no indication that anyone pointed or "brandished" a rifle at Fields. While the speaker in the video appears to state that Fields was "waved off" with a rifle, that does not constitute brandishing. *Crewe v. Commonwealth*, No. 2709-95-2, 1996 WL 621639, at *2 (Va. Ct. App. 1996) (pointing gun "straight up" is not brandishing). There is also no evidence that Fields even saw a rifle—let alone that it caused Fields to fear an attack, as would be required to constitute brandishing. *Dezfuli*, 58 Va. App. at 9. The statement is far from a "direct, outright statement" that Dixon (or the unknown author of the document) "was legally at fault," which is the minimum required to satisfy Rule 804. *Supra*, p. 4. The mere "remote possibility" that the statement could lead to criminal prosecution would be insufficient. *Supra*, p. 4. Consequently, the statement could not have had a "great" tendency to subject the speaker to the "real and tangible" threat of criminal prosecution.

### III. THE HEARSAY STATEMENTS ARE NOT ADMISSIBLE UNDER RULE 807 BECAUSE THEY CARRY NO GUARANTEES OF TRUSTWORTHINESS AND ARE NOT PROBATIVE OF ANY FACT IN ISSUE.

Cantwell's alternative argument under Rule 807 fares no better. Rule 807 allows hearsay only if: (1) it is "supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). This is a "narrow exception" to the hearsay rule "that should not be construed broadly," because to construe it broadly "would easily cause the exception to swallow the rule." *United States v. Dunford*, 148 F.3d 385, 394 (4th Cir. 1998).

To satisfy Rule 807, the proponent of the evidence must show that the evidence provides "particularized guarantees of trustworthiness." *United States v. Clarke*, 2 F.3d 81, 84 (4th Cir. 1993) (quoting *Idaho v. Wright*, 497 U.S. 805, 822 (1990)) (applying prior version of Rule 807).[2] Court have found that this high burden is not satisfied even if the hearsay is, for example, a sworn affidavit, a statement made in a prior court proceeding, or testimony by well-respected individuals. *United States v. Brothers Contr. of Ohio*, 219 F.3d 300, 310 (4th Cir. 2000) (noting courts have "rejected the idea that grand jury testimony is sufficiently reliable per se"); *United States v. McCall*, 740 F.2d 1331, 1342 (4th Cir. 1984) (rejecting admissibility because "a non-judicial affidavit is accompanied by no symbol or procedure protective of the truth-finding process").; *United States v. Mandel*, 591 F.2d 1347, 1368-69 (4th Cir. 1979) (holding consistent testimony by multiple senators as to hearsay was not sufficiently reliable).

Here, Cantwell offers no "particularized guarantees of trustworthiness" as to the video or the statements made in the video. *See Clarke*, 2 F.3d at 84. In fact, the context shows the statements are particularly *unreliable*. They are unsworn. There is no corroborating evidence. The speaker appears to be reading from a piece of paper, so it unclear whether the statements are his or those of someone speculating about Dixon's (or someone else's) conduct. And the video appears to be an excerpt from a longer discussion, so we have no idea if, for example, immediately before or after the video was taken the speaker disclaimed the statements.

Cantwell also fails to show how the video "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). In fact, Cantwell never explains how the video is probative of any fact in issue

---

[2] Prior to 1997, Courts interpreted this hearsay exception under Rule 804(b)(5). In 1997, Rule 804(b)(5) was consolidated with the other residual hearsay exception, Rule 803(24), in Federal Rule of Evidence 807. The text was not altered in any material way because "[n]o change in meaning [wa]s intended." Fed. R. Evid. 807 advisory committee's note.

in this case. While he alleges that it shows Dixon "associate[d] with the armed vigilante terror mob," he never explains how that association, even if true, would have any tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401.

Cantwell also claims the video "supports the argument that Fields responded to being attacked and threatened at gunpoint by an armed mob." Mot., ¶ 2. Not only is such speculation unwarranted – nothing in the video even suggests an armed mob or a threat to Fields – but also it is entirely unfounded. Fields has not claimed self-defense and, in fact, admitted that he "drove into the crowd because of the actual or perceived race, color, religion, and/or national origin of individuals in the crowd, and his actions in doing so were willful and included an attempt to kill." *Exhibit 2*, p. 3.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion and exclude the video and the statements in the video.

Dated: October 12, 2021 Respectfully submitted,

/s/ David E. Mills
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
ybarkai@kaplanhecker.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Giovanni J Sanchez (*pro hac vice*)
Agbeko C. Petty (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com
alawyer@paulweiss.com
gsanchez@paulweiss.com
apetty@paulweiss.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
kcheng@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Defendants National Socialist Movement, Nationalist Front, Jeff Schoep, Matthew Heimbach, Matthew Parrott and Traditionalist Worker Party*

Joshua Smith Esq.
Smith LLC
807 Crane Ave.
Pittsburgh, PA 15216
joshsmith2020@gmail.com

*Counsel for Matthew Heimbach, Matthew Parrott and Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

I hereby certify that on October 12, 2021, I also served the foregoing upon following *pro se* defendants, via electronic mail, as follows:

Richard Spencer
richardbspencer@gmail.com
richardbspencer@icloud.com

Robert Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline
eli.f mosley@gmail.com
deplorabletruth@gmail.com
eli.r kline@gmail.com

- 13 -

      I hereby certify that on October 12, 2021, I also served the foregoing upon following *pro se* defendant, via U.S. mail, as follows:

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion
U.S. Penitentiary
P.O. Box 2000
Marion, IL 62959

and

Christopher Cantwell
Christopher Cantwell - Inmate: 00991-509
Grady County Law Enforcement Center (Oklahoma)
215 N. 3rd Street
Chickasha, OK 73018

                                                  */s/ David E. Mills*
                                                  David E. Mills (*pro hac vice*)