**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>                    Plaintiffs,<br><br>    v.<br><br>JASON KESSLER, et al.,<br><br>                    Defendants. | **Civil Action No. 3:17-cv-00072-NKM**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS**
**LEAGUE OF THE SOUTH, MICHAEL HILL, AND MICHAEL TUBBS'S**
**MOTION *IN LIMINE* AND MOTION TO TAKE JUDICIAL NOTICE (ECF NO. 1147)**

Plaintiffs respectfully submit this Opposition to Defendants League of the South, Michael Hill, and Michael Tubbs's (the "LOS Defendants") Motion *in Limine* and Motion to Take Judicial Notice ("Mot."). *See* ECF No. 1147. In their Motion, Defendants ask the Court to: (I) admit the Heaphy Report into evidence; (II) prohibit the introduction of Michael Tubbs's felony conviction; and (III) take judicial notice of certain facts related to the permit that Defendant Jason Kessler obtained from the City of Charlottesville in 2017. For the reasons explained below, each of these requests should be denied.

**ARGUMENT**

**I.    The Heaphy Report Should Be Excluded**

The LOS Defendants seek to admit the Heaphy Report—a 207-page written report prepared by a private law firm based on, and rife with, second- and third-hand statements from "hundreds of witnesses" (many of whom are unnamed or anonymous). *See* Heaphy Report, ECF

No. 1145-1, at 10, 71, 136.[1] The LOS Defendants do not limit their request to certain portions of the Report. Instead, they seek admission of the 207-page Report in its *entirety*. That sweeping request should be denied. Plaintiffs have already addressed many of the LOS Defendants' arguments in detail in their Motion *in Limine* to Preclude the Heaphy Report and the Testimony of Timothy J. Heaphy at Trial. *See* ECF No. 1145. As previously explained, the Report is inadmissible hearsay, and, even if it were not, any limited probative value of the Report is outweighed by a serious risk of misleading and confusing the jury. *See id*.

The LOS Defendants do not dispute that the Report is textbook hearsay. And rightly so: the Report is an out-of-court statement—written by over twenty non-government contributors based on interviews of "hundreds of witnesses" and "hundreds of thousands of documents," Heaphy Report at 10—that the LOS Defendants seek to rely on as "a trustworthy, independent source of relevant information on the events" of Unite the Right. Mot. 2. In fact, the Report is a layer cake of hearsay—in addition to being hearsay itself, it contains within it innumerable second and third-hand statements (often from unspecified sources) about the events that took place at Unite the Right. *See* ECF No. 1145 at 3-6 (providing examples of hearsay statements in the Report). The LOS Defendants nevertheless contend that the whole Report and all its contents and findings should be admitted under the public records exception to the hearsay rule because it is a "self-authenticating official publication" that was "prepared at the request of the City of Charlottesville." Mot. 2 (citing Fed. R. Evid. 803[8] and 902). That contention is unavailing. *See also* ECF No. 1145 at 8-10.

---

[1] For a full recitation of the factual background on the Heaphy Report, Plaintiffs refer back to their Motion *in Limine* to Preclude the Heaphy Report and the Testimony of Timothy J. Heaphy at Trial.  ECF No. 1145 at 1-7.  All abbreviations in this section are consistent with those used in Plaintiffs' prior Motion *in Limine*.

**A.** **The Heaphy Report Is Not Admissible Under the Public Records Exception**

The LOS Defendants, citing zero case law, take the position that the Report qualifies under the public records exception to the hearsay rule simply because it was prepared by a private law firm retained by a city. That position is mistaken for multiple reasons.

To begin, the public records exception applies only to "[a] record or statement *of a public office* if it sets out . . . factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(iii) (emphasis added). That limited exception "is premised on 'the assumption that *a public official* will perform his duty properly.'" *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984) (emphasis added) (quoting Fed. R. Evid. 803(8) advisory committee's note to 1972 proposed rules); *see also Jones v. Ford Motor Co.*, 204 F. App'x 280, 284 (4th Cir. 2006) (same). "Thus, to fit the exception the record must have been authored by a public office or agency." *In re Harmony Holdings, LLC*, 393 B.R. 409, 414-15 (Bankr. D.S.C. 2008) (citing *Ellis*, 745 F.2d 292). As the LOS Defendants concede, the Report was not written by any public agency or official; it is a self-described "Independent Review" authored by law firm personnel, including numerous attorneys, and affiliated "consultants"—none of whom was "directed in any way by any person or agency within City government." Heaphy Report at *ix.* Thus, by design, the Heaphy Report is the opposite of a public record; it is a *private* report prepared by *private* actors who were not acting in an official capacity. The fact that Timothy Heaphy and his law firm were retained by the City to produce the Heaphy Report does not "render [the law firm] a 'public agency.'" *Watts v. City of Hartford*, No. 00-cv-0681, 2004 WL 717132, at *4 n.9 (D. Conn. Mar. 31, 2004) (holding that public records exception did not apply to a study even though it was "commissioned" by the City "pursuant to a municipal ordinance"); *see also Ricciuti v. N.Y.C. Transit Auth.*, 754 F. Supp. 980, 985 (S.D.N.Y. 1990) ("While this entity's services were requested by a public office or agency, the St. Germain

Group is not a public office or agency itself . . . ."), *vacated on other grounds*, 941 F.2d 119 (2d Cir. 1991).

That straightforward result is further confirmed by the fact that the City of Charlottesville has never adopted the Heaphy Report as an official public report. *See United States v. Gray*, 852 F.2d 136, 139 (4th Cir. 1988) (holding that a "tentative" report "not purporting to contain agency factual findings" fell outside public records exception); *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (finding memoranda not admissible under public records exception where agency "declined to accept" positions expressed in memoranda and did not reflect "factual findings" of agency); *Figures v. Bd. of Pub. Utils. of Kansas City*, 967 F.2d 357, 360 (10th Cir. 1992) (rejecting applicability of public records exception to document where conclusions "were never endorsed by the United States Department of Labor"). To the contrary, as Plaintiffs have explained, the Heaphy Report was criticized by many City officials, including City Councilor Bob Fenwick and Vice Mayor Wes Bellamy.[2] Given that the Heaphy Report has been criticized by many City and Government officials, it makes no sense to say that the Heaphy Report "purport[s] to contain [the] factual findings" of the City, its agencies, or its officials. *Gray*, 852 F.2d at 139.

Finally, contrary to the LOS Defendants' conclusory assertions, the Report is far from "trustworthy." Mot. 2. The LOS Defendants argue that the Report's trustworthiness can be gleaned from "the manner in which it was prepared." *Id.* That argument is self-defeating. The LOS Defendants tout the fact that the Report is based on "hundreds of thousands of documents," "countless hours of video and audio recordings," and interviews of "hundreds of witnesses." *Id.*

---

[2] *See, e.g.*, NewsRadio WINA, *Fenwick: Heaphy Report is "biased", a "political whitewash,"* https://wina.com/news/064460-fenwick-heaphy-report-is-biased-a-political-whitewash/ (last accessed Oct. 1, 2021) (Democratic City Councilor Bob Fenwick calls Report "political whitewash"); Ellie Silverman, *'It falls woefully short': Charlottesville residents criticize report on white supremacist rally,* WASHINGTON POST (Dec. 5, 2017), https://www.washingtonpost.com/local/public-safety/it-falls-woefully-short-charlottesville-residents-criticize-report-on-white-supremacist-rally/2017/12/05/cb8abb18-d963-11e7-b859-fb0995360725_story.html (detailing Vice Mayor Wes Bellamy's criticisms of Report).

(quoting Heaphy Report at 23). But the LOS Defendants conveniently fail to mention that the Report does not provide a comprehensive list of those documents, videos, recordings, or witnesses; rather, it simply asks the reader to take the authors—a private law firm partner and several associates—at their word as to the veracity and reliability of the "narrative" they "tried to assemble" based on a host of unnamed and unspecified sources. Heaphy Report at *ix*. Furthermore, many of the documents, recordings, and interview statements referenced in the Report themselves constitute hearsay that lack any indicia of reliability or trustworthiness. *See, e.g.*, *id.* at 81 ("Signer told us that members of City Council were uniform in their interest . . . ."); *id.* at 98 ("Sergeant Robert Haney described the instructions he received as 'do not interrupt mutual combat' unless someone is seriously injured."); *id.* at 142 ("Dan Haig, who was with the group from Justice Park, told us that when they arrived someone from the community ran out to tell them that the [sic] everything was safe and they should stop shouting."); *see also* ECF No. 1145 at 3-6; *Landis v. Jarden Corp.*, 5 F. Supp. 3d 808, 815 (N.D.W. Va. 2014) ("Even if these materials qualified as public records based merely upon their inclusion in the investigative file—a dubious proposition … —they present a double hearsay problem.").  Accordingly, it would be an abuse of discretion to admit a 207-page report that is rife with hearsay and lacks any ascertainable "[]adequate foundation for [its] conclusions." *Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108, 111 (4th Cir. 1993); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 263-64 (4th Cir. 2005).[3]

---

[3] Even if the Court accepted LOS Defendants' invitation to dramatically expand the scope of the public records exception (which would be reversible legal error), that would not give LOS Defendants free rein to admit every statement within the Heaphy Report. LOS Defendants still bear the burden of showing that each and every statement on which they rely falls within an exception to the hearsay rules. *See* Fed. R. Evid. 805; *United States v. Wylie*, 705 F.2d 1388, 1390 (4th Cir. 1983). For that reason, LOS Defendants' naked assertion, Mot. 3, that permitting the Report will somehow "significantly shorten the length of trial" is meritless. In fact, admitting a 207-page Report filled with layer upon layer of hearsay would invite repeated disruptions and objections at trial. *Cf. Holley v. N.C. Dep't of Admin.*, 846 F. Supp. 2d 416, 434 (E.D.N.C. 2012). The more efficient course—and the only one supported by law—is to grant

To make matters worse, the Report contains numerous factual findings about the events of August 11 and August 12 that are in dispute in this action (and were never adopted by the City or its officials), thus disqualifying it from admission under Rule 803(8). To take one illustrative example on which the LOS Defendants will undoubtedly seize to confuse the jury, the Report asserts that "the City of Charlottesville protected neither free expression nor public safety on August 12." Heaphy Report at 7. Admitting the Heaphy Report would intrude on "the jury's province" to resolve such factual disputes, *Distaff*, 984 F.2d at 111, and would also likely "confuse the jury and encourage a decision on an improper basis" by leading the jurors "to deliberate on the correctness of the previous fact finding, rather than retaining the open-minded, first impression approach to the issues our system prefers," *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. 08-cv-02764, 2011 WL 862729, at *2 (D. Md. Mar. 10, 2011) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101, 110 (E.D. Va. 2004)). For all these reasons, and those more fully set forth in Plaintiffs' Motion *in Limine*, ECF No. 1145, the Report does not fall within the public records exception to the hearsay rule.[4]

### B.      The Heaphy Report Is Not a Self-Authenticating Official Publication

The LOS Defendants also seek to admit the Heaphy Report as a "self-authenticating official publication" under Rule 902.  Mot. 2-3. The Court need not reach this question because, as explained above, the Heaphy Report is inadmissible hearsay. Regardless, the LOS Defendants are

---

Plaintiffs' motion to preclude the Heaphy Report, its contents, and any related testimony from Mr. Heaphy. In any event, Plaintiffs are unaware of any "efficiency" exception to the hearsay rule.

[4] Even if the Heaphy Report could somehow overcome these insurmountable barriers under the hearsay rules, it would still be inadmissible under Rule 403. As Plaintiffs explained in their Motion *in Limine*, ECF No. 1145 at 12-13, the Report and any testimony from Mr. Heaphy have no independent probative value, especially given the unreliability and untrustworthiness of such testimony. To the extent the LOS Defendants could proffer anything probative from the Report, this would be far outweighed by the risk that the jury might be confused and misled into accepting the Report's untested assertions as gospel on the basis of some imprimatur of reliability to which the Report is not entitled. *See Coryn Grp. II, LLC*, 2011 WL 862729, at *2; *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 714 (4th Cir. 2021).

wrong that the Report is self-authenticating under Rule 902, for many of the same reasons the Report is not a public record under Rule 803(8).

Rule 902(5) only permits self-authentication of official publications that have been "issued by a *public* authority." Fed. R. Evid. 902(5) (emphasis added). As explained above, the "Independent Review" conducted by Mr. Heaphy and his private law firm was neither "issued" nor adopted by a public authority, and thus does not qualify as an official publication under Rule 902(5). *See* 31 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 7139 (1st ed.) ("[P]ublications issued by private persons or entities are not included under Rule 902(5), even when those private publications cite, quote, or discuss the contents of publications issued by a public authority."); *Williams v. Long*, 585 F. Supp. 2d 679, 686 (D. Md. 2008) (describing various "governmental bodies" that would qualify as "public authorit[ies]" under Rule 902(5)); *Candela-Rios v. Lynch*, No. 16-cv-00220, 2017 WL 11046200, at *7 (W.D. Tex. Jan. 9, 2017) (finding "National Comprehensive Report" issued by private company could not be self-authenticating under Rule 902(5)), *aff'd sub nom. Candela-Rios v. Sessions*, 737 F. App'x 187 (5th Cir. 2018).

## II.     The Court Should Not Exclude Mr. Tubbs's Prior Felony Conviction and Underlying Facts

The LOS Defendants also seek to bar Plaintiffs from introducing evidence or making mention at trial of Michael Tubbs's felony conviction under Rule 609. Mot. 3. The Court should not heed this request. Plaintiffs will offer Mr. Tubbs's conviction and the related facts under Rule 404(b)(2) as evidence of his motive and intent to commit racially motivated violence at Unite the Right. In the alternative, Mr. Tubbs's conviction is admissible under Rule 609(b) to impeach Mr. Tubbs's credibility.

Mr. Tubbs's conviction and the surrounding facts demonstrate his desire to achieve a white nationalist America by violent means, which has been a part of his life's work, from stealing

weapons from the United States military as a member of the Green Berets, to joining the League of the South (the "League" or "LOS") upon his release from prison, to his violent conduct as a member of the League at Unite the Right. Accordingly, evidence of these prior acts is relevant and necessary to Plaintiffs' case against Mr. Tubbs and permissible under the Federal Rules.

### A.    Background on Mr. Tubbs's Felony Conviction

In 1990, Mr. Tubbs was indicted for his role in the theft and transportation across state lines of a large cache of military weapons and explosives. Mr. Tubbs, who at the time was serving in the United States Army as a Green Beret, was charged with three offenses: stealing two M-16 rifles from the military, committing assault with intent to commit robbery by pointing firearms at individuals and firing a silenced Uzi submachine gun during the robbery, and using and carrying a firearm during a crime of violence. (Ex. 1). Contemporaneous news articles by the New York Times reported that Mr. Tubbs and another man had obtained the M-16 rifles in an armed robbery of two soldiers at Fort Bragg, North Carolina. (Ex. 2; Ex. 3). Mr. Tubbs and the second man told the victims they were stealing weapons for the Ku Klux Klan. (Ex. 2). The articles also reported that in addition to the weapons uncovered pursuant to a search warrant, federal investigators found literature focused on hate against Jewish and Black people and a handwritten charter for a new white supremacist group called the Knights of the New Order.[5] *Id.*

Mr. Tubbs pled guilty in 1991 to the crime of knowingly stealing M-16 rifles, which were the property of the United States, and aiding and abetting this offense. *See* Ex. 1; 18 U.S.C. § 641; 18 U.S.C. § 2. Mr. Tubbs was released in 1995 after serving approximately four years. *See* Mark

---

[5] One of the co-defendants in the 1991 case was Michael Tubbs's brother, John Tubbs. The 1991 *New York Times* article reported that "[i]n searches of the homes of the Tubbses and others suspected in the conspiracy, investigators found white supremacist literature, a handwritten charter stating the purpose of the new group, plastic explosives, blasting caps, machine guns, silencers, a anti-personnel mine and grenades." *See* Ex. 2.

Potok, *C-4 and the Confederacy*, Southern Poverty Law Center (Oct. 12, 2004), https://www.splcenter.org/fighting-hate/intelligence-report/2015/c-4-and-confederacy.

In 2000, Mr. Tubbs joined the League because, according to him, it was an organization that best represented his views. (Ex. 4 [Tubbs Tr. 23:7-24:7]). Founded in 1994, the League is a white nationalist organization dedicated to preserving the white race by fighting its enemies, Jewish people, and Black people. Mr. Tubbs has since ascended the ranks of the League to become second in command to his co-defendant, Michael Hill. Mr. Tubbs holds the titles of Chief of Staff of the LOS and President of the Florida Chapter.

In the lead up to Unite the Right, Mr. Hill relied on Mr. Tubbs to coordinate the League's attendance. Mr. Hill put Mr. Tubbs in charge of general operations, assigning him other League members to serve as "lieutenants" and assist with specific operational planning assignments. (Ex. 5). While planning for the event, Mr. Tubbs expressed an expectation to Mr. Hill that there would be violence at Unite the Right and that he "maybe even hoped for it[.]" (Ex. 6). Videos and photos of Mr. Tubbs and LOS at Unite the Right depict the violence that Mr. Tubbs hoped for. Videos of August 12, 2017 show Mr. Tubbs leading a column of Nationalist Front co-conspirators into a physical confrontation with counter-protestors, and shortly thereafter leading fellow League members into further violence. *See* ECF No. 862 at 2, 6, 23, 36-37. Later that afternoon, Mr. Tubbs stood watch over the brutal beating of DeAndre Harris at the hands of League members and others. *Id.*

### B. Mr. Tubbs's Conviction and Underlying Facts are Admissible Under Rule 404(b)(2)

Rule 404(b)(2) allows evidence of a crime, wrong, or act to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Fourth Circuit has held that Rule 404(b)(2) is a rule of inclusion and "[t]hese

exceptions to inadmissibility of prior bad acts evidence are not to be construed narrowly." *United States v. Russell*, 971 F.2d 1098, 1106 (4th Cir. 1992), *as amended* (Aug. 12, 1992). Evidence of a prior bad act should be admitted unless it is put forth only for proving criminal disposition. *Id.*

The Fourth Circuit has set out a four-part test to determine whether evidence of prior acts is admissible. Evidence may be admitted if it is: (1) relevant to an issue other than the general character of the defendant, (2) necessary, (3) reliable, and (4) if the probative value of the evidence is not substantially outweighed by confusion or unfair prejudice. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

### i. Mr. Tubbs's Conviction and Underlying Conduct Are Relevant to His Motive and Intent in the Commission of the Instant Offenses

Relevance "derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense." *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *Johnson v. Holmes*, 2018 WL 1404410, at *8 (W.D. Va. 2018) (quoting *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017), *as amended* (June 21, 2017)); *see also United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) ("Indeed, the high degree of similarity between prior acts and the act with which [the defendant] was charged supports the finding that the acts were relevant to intent."). Evidence of prior bad acts is also relevant "where those acts establish motive[,]" meaning "the impulse or desire that induces the criminal action." *United States v. Adair*, 227 F. Supp. 2d 586, 589 (W.D. Va. 2002).

The Fourth Circuit has found prior acts relevant to motive and intent in a number of circumstances. For example, in *Johnson v. Hugo's Skateway*, the court found that evidence of Hugo's Skateway's prior discrimination against Black customers was relevant to its motive and

intent to discriminate against the plaintiff. 949 F.2d 1338, 1346 (4th Cir. 1991), *on reh'g,* 974 F.2d 1408 (4th Cir. 1992); *see also Johnson v. Holmes*, 2018 WL 1404410, at *8 ("Fourth Circuit authority favors the admission of other acts of discrimination to prove a defendant's discriminatory intent in the present case."); *Russell*, 971 F.2d at 1107-08 (explaining that "[h]ostility is a paradigmatic motive for committing a crime" so evidence of defendant's prior hostility to his wife bore directly on his motive for her murder).

Here, Mr. Tubbs's conviction and the underlying facts are relevant to establishing his motive and intent to conspire with his co-defendants to commit racial violence against Plaintiffs at Unite the Right. Between 1987 and 1990, Mr. Tubbs stole firearms and stockpiled explosives, machine guns, silencers, and grenades, with the goal of using these weapons to destroy Jewish and Black-owned businesses. His conviction for these acts demonstrates his desire to use violence to achieve his white nationalist objectives and his hostility towards those he deems enemies of the Aryan race. Thirty years later, Mr. Tubbs repeated this pattern. Mr. Tubbs specifically hoped and planned for violence at Unite the Right, an event the League had promoted as an opportunity to "defend the South … from the Jew and his dark-skinned allies." (Ex. 7). Mr. Tubbs headed the column of the Nationalist Front, brutally knocking counter-protestors to the ground on his way to the park. He later led League members out of the park and into additional battles with counter-protestors. *See* ECF No. 862 at 2, 6, 23, 36-37. The similarities between Mr. Tubbs's violent and racists acts in 1991 and his conduct at Unite the Right are undeniable and chilling, making this prior act evidence relevant to Plaintiffs' claims.

The fact that Mr. Tubbs was convicted thirty years ago does little to diminish the relevance of his prior acts. While in some cases the passage of time may make evidence less relevant to new charges, that is not true here. The underlying facts of Mr. Tubbs's conviction reflect strongly held

beliefs of racial animus and a commitment to use violence to achieve them that has endured to present day. *See United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007) (finding that where "prior conviction was 22 years prior to the crimes charged, this fact alone, given the factual similarities in the offenses, does not render the conviction inadmissible"); *United States v. Fenn*, 2014 WL 1338672, at *6 (E.D. Va. 2014), *aff'd,* 584 F. App'x 114 (4th Cir. 2014) (finding that "40 years is not an unreasonable lapse in time" where the prior acts are sufficiently similar in nature to the charged offense).

### ii.      Evidence of Mr. Tubbs's Prior Conviction and Underlying Facts Is Necessary

This Court has defined evidence of prior acts as "necessary" where "it is an essential part of the crime or furnishes part of the context of the crime." *Adair*, 227 F. Supp. at 590 (internal quotations omitted).

Section 1985(3) requires Plaintiffs to prove five elements: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Mr. Tubbs's prior acts targeting Jewish and Black people with violence presents important—and necessary—context for jury to fully comprehend Mr. Tubbs's "invidiously discriminatory animus" and his desire to "deprive the [P]laintiff[s] of equal enjoyment of rights" by committing violence against them. *See id.*   Evidence purporting to show Mr. Tubbs's longstanding motives and repeated patterns of violence and animus will provide the jury with a complete and essential framework to evaluate Mr. Tubbs's intent and conduct at issue here: namely *how* and *why* Mr. Tubbs acted the way that he did at Unite the Right. *See Queen*, 132 F.3d at 998

(holding prior acts "necessary" when they provided context on intent to commit crime); *Adair*, 227 F. Supp. at 590 (noting how prior acts provide necessary "context of the crime" because they explain the defendant's present knowledge and reasons for committing the crime). This is true even if Mr. Tubbs's contests what his true intent and motives were at trial. *Cf. United States v. Cowden*, 882 F.3d 464, 472-73 (4th Cir. 2018) (finding prior act evidence "necessary" where there was conflicting testimony concerning intent).

### iii. Evidence of Mr. Tubbs's Prior Conviction and Underlying Facts Is Reliable

Evidence is reliable and should be submitted to the jury unless it is "so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). "In assessing this 'minimal standard of proof,' the court must consider all potential evidence, as 'the sum of an evidentiary presentation may well be greater than its constituent parts.'" *United States v. Mussmacher*, 2010 WL 2292214, at *5 (D. Md. 2010) (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).

Here, the proof of Mr. Tubbs's prior acts is represented by Mr. Tubbs's certified court records and two contemporaneous news articles. The Fourth Circuit has held certified court records to be reliable. *United States v. Martin*, 657 F. App'x 193, 197 (4th Cir. 2016) ("[T]he evidence was reliable, as it consisted of certified court records and statements of fact agreed to by Martin at the time of those convictions."). The two articles,[6] published by the *New York Times* in 1990 and 1991, also meet the Fourth Circuit's standard for reliability as they are not so preposterous that they could not be believed by a rational juror. The articles were published by a reputable news

---

[6] The articles are not hearsay under Federal Rule of Evidence 803(16) because they were prepared before January 1, 1998 and are self-authenticating under Rule 902(6). *See Kirksey v. Schindler Elevator Corp.*, 2016 WL 7116223, at *9 (S.D. Ala. 2016) (holding that a *Toronto Star* article from 1966 was properly admitted because "Rule 803(16) has been held applicable in the context of newspaper articles."); *HSM Portfolio LLC & Tech. Props. Ltd. LLC v. Elpida Memory Inc.*, 2016 WL 696022, at *1 (D. Del. 2016) ("All of the newspaper articles are over twenty years old, however, and thus qualify as ancient documents under Fed. R. Evid. 803(16).").

source and their content is corroborated by at least three other articles published by the Associated Press, the Southern Poverty Law Center, and NBC News. [7] While Mr. Tubbs may refute the facts in these articles, evidence is not unreliable simply because it could be contradicted. *See United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993).

### iv.     The Probative Value of Mr. Tubbs's Prior Conviction and Underlying Facts Is Not Substantially Outweighed by Confusion or Unfair Prejudice

The Fourth Circuit has held "that there is no unfair prejudice under Rule 403 when the extrinsic act is no more sensational or disturbing than the crimes with which the defendant was charged." *United States v. McLean*, 182 F. App'x 165, 166 (4th Cir. 2006). As detailed above, evidence of Mr. Tubbs's prior conviction is highly probative of Mr. Tubbs's motive and intent to commit racially-motivated violence at Unite the Right because of the similarities between Mr. Tubbs's violent and racists acts in 1991 and the conduct at issue in this case. This probative value is not substantially outweighed by unfair prejudice because Mr. Tubbs's prior conviction is "no more sensational or disturbing than" his actions at Unite the Right. *McLean*, 182 F. App'x at 166. Stealing firearms from the military, while not admirable by any means, pales in comparison to the clear videos and photos of Mr. Tubbs plowing through counter-protestors at Unite the Right (or his watch over the brutal beating by League members on DeAndre Harris). *See* ECF No. 862 at 2, 6, 23, 36-37.

---

[7]   Mark Potok, *C-4 and the Confederacy*, SOUTHERN POVERTY LAW CENTER (Oct. 12, 2004), https://www.splcenter.org/fighting-hate/intelligence-report/2015/c-4-and-confederacy; *Desert Shield Soldier, 3 Others Arrested in Military Weapons Theft*, AP NEWS (Nov. 18, 1990), https://apnews.com/article/e2c5656e3db01dde8596d273b555ebed; Trymain Lee, *The Other Michael Tubbs: Two Men. Two Radically Different Paths*, NBC NEWS (Aug. 29, 2017), https://www.nbcnews.com/news/nbcblk/other-michael-tubbs-two-men-two-radically-different-paths-n794901.

**C.      In the Alternative, Mr. Tubbs's Conviction Is Admissible Under Rule 609(b) To Impeach Mr. Tubbs's Credibility**

Plaintiffs expect Mr. Tubbs will deny that he initiated the violence at Unite the Right, as he did in his deposition testimony. Under these circumstances, Plaintiffs should be entitled to challenge Mr. Tubbs's credibility with evidence of his prior conviction.

Under Rule 609(b), evidence of a conviction older than 10 years is admissible if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so the party has a fair opportunity to contest its use." Fed. R. Evid. 609. Plaintiffs can satisfy both prongs of this Rule.

*First*, while Mr. Tubbs's conviction did occur more than ten years ago, the probative value of his felony conviction substantially outweighs the prejudicial effect of introducing this evidence. *See Salmons, Inc. v. First Citizens Bank & Tr. Co.*, 2011 WL 4828838, at *2 (E.D. Va. 2011) (finding a witness's twenty-three-year-old conviction admissible under Rule 609(b) because "although there is always a risk of prejudice involved with admitting a prior conviction, we find that [the witness's] testimony and credibility are essential to Plaintiff's ability to prove its case"). Mr. Tubbs's credibility is important because he will claim that he only acted in self-defense at Unite the Right. Evidence of his prior firearms conviction will demonstrate that such testimony is not credible. Mr. Tubbs did not commit a simple robbery—he abused his access to weapons as a trusted member of the military and violated federal law by stealing weapons from the United States. Mr. Tubbs's conviction evinces a willingness to violate the trust placed in him and therefore is relevant to his character for honesty and truthfulness. The jury is entitled to assess his credibility in light of this conviction. *See Kartman v. Markle*, 2015 WL 3952639, at *6 (N.D.W. Va. 2015) (allowing the parties to comment on plaintiff's first degree robbery conviction in accordance with

Rule 609); *United States v. Givens*, 767 F.2d 574, 580 (9th Cir. 1985) ("[P]rior convictions for robbery are probative of veracity."); *United States v. Mercado*, 2020 WL 999842, at \*5 (N.D. Cal. 2020) (holding that although grand theft is not a *per se* crime involving a dishonest act, given the context of the case where the witness's testimony was crucial to proving the defendant's guilt, such convictions were admissible under Rule 609(b)). Furthermore, the risk of prejudice to Mr. Tubbs is low. *See Salmons, Inc.*, 2011 WL 4828838, at \*2 ("[T]he risk of unfair prejudice is lower in a civil case than in a criminal case.").

And *second*, contrary to Defendants' assertion, Plaintiffs have provided Defendants with written notice: Plaintiffs included two exhibits detailing Mr. Tubbs's conviction on their exhibit list, which was filed with the Court on September 14. ECF No. 1071 at PX-1926, PX-2866. *See Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 435 (2d Cir. 1993) ("The purpose of the notice requirement is to prevent 'unfair surprise' and to give the adverse party the opportunity to prepare for trial.").

## III.    The Court Should Not Take Judicial Notice of Facts Related to Defendant Jason Kessler's Demonstration Permit

The LOS Defendants request the Court to take judicial notice of three facts concerning Defendant Jason Kessler's demonstration permit ("Permit Facts"):

- On June 13, 2017, Jason Kessler obtained a permit from the City of Charlottesville to conduct a demonstration at Emancipation Park on August 12, 2017.

- On August 7, 2017, the City of Charlottesville attempted to revoke Kessler's permit to conduct a demonstration at Emancipation Park on August 12, 2017.

- On August 11, 2017, this Court enjoined the City from revoking Kessler's permit to hold a demonstration at Emancipation Park on August 12, 2017.

Mot. 4.

That request should be denied.  First, the LOS Defendants fall woefully short of satisfying their burden of proving that the Court could or should take judicial notice of the Permit Facts. Second, taking judicial notice of the Permit Facts would result in unfair prejudice to Plaintiffs, would mislead the jury into giving exaggerated weight to those facts without allowing Plaintiffs to subject the evidence to cross-examination and rebuttal, which would provide important context about the Permit Facts. *See* Fed. R. Evid. 403. The LOS Defendants should not be permitted to stamp their defense with the imprimatur of Court authority when they are able to attempt to introduce the same facts into evidence via witness testimony without substantial risk of unfair prejudice or misleading the jury.

A.      **Legal Standard**

Federal Rule of Evidence 201 permits judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The party requesting judicial notice bears the burden of proving that Rule 201(b)'s standard is satisfied. *Farmer v. United States*, No. 5:10-CR-271-FL-3, 2015 WL 12911626, at *2 (E.D.N.C. Aug. 31, 2015), *aff'd,* 633 F. App'x 182 (4th Cir. 2016).

Taking judicial notice of facts has serious consequences because under Federal Rule of Evidence 201(f) "[w]here the trial court has taken judicial notice of a fact in a civil matter, the judge *must* instruct the jury to accept the fact as conclusive." *Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490 (D.S.C. 2013) (citing the predecessor to Fed. R. Evid. 201(f)) (emphasis added).  Further, a "court taking judicial notice may also preclude the introduction of evidence to disprove the noticed fact." *Id.*  Given these high stakes, courts must exercise caution before taking judicial notice.  As the advisory committee notes to Rule 201(b) state, "This tradition of circumspection

appears to be soundly based" because the "key to a fair trial is opportunity to use the appropriate weapons (rebuttal, evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention."  Fed. R. Evid. 201(b) advisory committee note.

### B.     The LOS Defendants Have Failed to Meet Their Burden of Showing that the Court Should Take Judicial Notice of the Permit Facts

The LOS Defendants have failed to meet their burden to show that the Permit Facts are either "generally known within the territorial jurisdiction of the court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Farmer v. United States*, 2015 WL 12911626, at *2. Tellingly, the legal standard for judicial notice does not even appear in the LOS Defendants' Motion, which devotes a single sentence of argument in support of their request for judicial notice (and cites no case law). Mot. 4.

To be "generally known" for purposes of Rule 201(b), a fact must "exist in the unaided memory of the populace." *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999); *see also* 21B Fed. Prac. & Proc. Evid. § 5105 (2d ed.) (the "generally known" standard captures "the notion that this category relates to the type of fact that any person would reasonably know or ought to know without prompting"). Rulings or legal conclusions reached during the course of a lawsuit are not "generally known."  *Hunter v. Palmer*, No. 1:17-cv-109, 2020 WL 998661, at *1 (W.D. Mich. Mar. 2, 2020) (denying motion for judicial notice of rulings or legal conclusions reached during course of lawsuit because they were "not generally known to anyone outside of th[e] litigation."). Here, the Permit Facts, which related to Mr. Kessler's lawsuit over the City of Charlottesville's attempt to revoke a demonstration permit previously granted, are not the kinds of facts that individuals generally would remember without prompting or assistance. Nor have the LOS Defendants made any attempt to claim that the Permit Facts are generally known.

The LOS Defendants' sole "argument" for judicial notice is a passing and unexplained reference to an order in a different case that Mr. Kessler brought against the City of Charlottesville. Mot. 4 & ECF No. 1147-2. The LOS Defendants seek judicial notice of the fact that "this Court enjoined the City from revoking Mr. Kessler's permit." But that injunction was only preliminary and required only a showing a "likelihood of success on the merits." ECF No. 1147-2. That case never reached a decision on the merits because Mr. Kessler later voluntarily dismissed the case. *Kessler v. City of Charlottesville*, No. 3:17-cv-00056, ECF No. 25 (Notice of Voluntary Dismissal), ECF No. 27 (Dismissal Order). And even if the case had proceeded, the Court could not take judicial notice of findings of fact from such a case because those facts were disputed. *Hughes v. Freightliner, LLC*, No. 7:04-cv-00309, 2006 WL 1842997, at *1 (W.D. Va. June 29, 2006) ("the court cannot take judicial notice of another court's findings of fact for the truth asserted therein because such facts are usually disputed."). The LOS Defendants have thus failed to meet their burden to show why judicial notice is appropriate. *In re Esquerra*, No. BAP CC-18-1257-LSTA, 2019 WL 2762938, at *6 (B.A.P. 9th Cir. June 28, 2019) (affirming finding that party had failed to meet its burden to show why judicial notice was appropriate).

### C.  Taking Judicial Notice of the Permit Facts Would Result in Unfair Prejudice to Plaintiffs and Would Mislead the Jury

The Court should also decline to take judicial notice due to the substantial risk of unfair prejudice and misleading the jury. "[O]n a motion for judicial notice, relevant facts are subject to the exclusionary rules of evidence, including Rule 403. *Deakle v. Westbank Fishing, LLC*, No. 20-cv-1554, 2021 WL 4133512, at *2 (E.D. La. Sept. 10, 2021) (collecting cases and Federal Practice & Procedure § 5104 (2d ed. 2021)); *see also Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993); *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-cv-00845-SKO, 2013 WL 2182864, at *7 n.8 (E.D. Cal. May 20, 2013); *Hughes*, 2006 WL 1842997, at *1. Accordingly, the Court

should "decline to take judicial notice of relevant evidence, 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Deakle*, 2021 WL 4133512, at \*2 (quoting Fed. R. Evid. 403).

Taking judicial notice of a previous court order presents an especially acute danger of unfair prejudice and undue influence because there is heightened risk that the jury will attribute exaggerated weight due to facts that enjoy judicial imprimatur. *See Nipper*, 7 F.3d at 418 ("judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" (internal marks and citation omitted)); *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir.1987) ("A practical reason for denying [judgments] evidentiary effect is ... the difficulty of weighing a judgment, considered as evidence, against whatever contrary evidence a party to the current suit might want to present. The difficulty must be especially great for a jury, which is apt to give exaggerated weight to a judgment."); *Hughes*, 2006 WL 1842997, at \*1 (declining judicial notice of ALJ decision because it would be improperly and unduly prejudice and influence the jury).

That holds true here. If this Court takes judicial notice of the Permit Facts, there is a substantial risk that the jury will attach undue weight to those facts and inappropriately infer that the Court already determined that Unite the Right was legally proper or that the City of Charlottesville acted wrongly attempting to revoke Mr. Kessler's permit.[8] And because Rule 201(f) requires the Court to "instruct the jury to accept the noticed fact as conclusive," Plaintiffs would be entirely precluded from offering any facts seeking to disprove the Permit Facts. That

---

[8] The LOS Defendants' framing of the injunction as being issued by this Court is additionally misleading because the jury will almost certainly interpret it to mean Judge Moon when it was in fact Judge Conrad.

result would be manifestly unfair. At a minimum, Plaintiffs should be able to introduce evidence to contextualize and rebut the Permit Facts, including the fact that the injunction was only a preliminary decision made in the course of single day, the City of Charlottesville's reasons for attempting to revoke the permit, the letter in which the City explained to Mr. Kessler how the circumstances regarding his permit had changed due to the size of the event and the interest in public safety, and that the City of Charlottesville sought to modify the permit to allow Unite the Right to occur at a different location that would be more appropriate in view of the number of attendees and security concerns.

Finally, by opposing the LOS Defendants' request for judicial notice of the Permit Facts, Plaintiffs are not attempting to preclude the LOS Defendants from introducing this evidence at trial.  They do not need judicial notice in order to do so. Plaintiffs merely seek to ensure that if such evidence is put before the jury, it is presented fairly. Taking judicial notice of the Permit Facts will obstruct a fair proceeding due to unfair prejudice, misleading the jury, exaggerated weight as to a preliminary decision made by another judge—all without the benefit of context, cross-examination, or rebuttal. The LOS Defendants' request for judicial notice should be denied.

Date: October 12, 2021

Respectfully submitted,

Roberta A. Kaplan (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com

*Counsel for Plaintiffs*

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
jphillips@paulweiss.com
kdunn@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com

gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahil@cooley.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler,*
*Nathan Damigo, and Identity Europa, Inc.*
*(Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill,*
*Michael Tubbs, and League of the South*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott,*
*Traditionalist Worker Party and Matthew*
*Heimbach*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National*
*Socialist Movement, Nationalist Front,*
*Matthew Parrott, Traditionalist Worker Party*
*and Matthew Heimbach*

I hereby certify that on October 12, 2021, I also served the following non-ECF participants via mail and electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Christopher Cantwell

Christopher Cantwell 00991-509
Grady County Law Enforcement Center
215 N. 3rd St. '
Chickasha, OK 73018

*And*

Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Michael L Bloch (*pro hac vice*)
KAPLAN HECKER & FINK LLP

*Counsel for Plaintiffs*