UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,

    Plaintiffs,

v.

JASON KESSLER, et al.,

    Defendants.

Civil Action No. 3:17-cv-00072-NKM

## PLAINTIFFS' OPPOSITION TO DEFENDANTS KESSLER'S, DAMIGO'S, AND IDENTITY EVROPA'S MOTIONS IN LIMINE AND REQUEST FOR JUDICIAL NOTICE

### INTRODUCTION

Plaintiffs respectfully submit this Opposition to Defendants Jason Kessler, Nathan Damigo, and Identity Evropa's Motion in Limine and Request for Judicial Notice. *See* ECF No. 1148 ("Mot."). In their Motion, Defendants ask the Court to: (I) take judicial notice of search warrants and their supporting affidavits; and (II) prohibit Plaintiffs, their attorneys, and their witnesses from directly or indirectly mentioning, referring to, questioning concerning, or attempting to convey to the jury in any manner, the following facts: (A) evidence linking defendants Kessler, Damigo, and Identity Evropa to the misconduct that led to adverse inferences being granted against other defendants in this case; (B) evidence regarding the emotional distress of non-plaintiffs; (C) evidence regarding legal conclusions and definitions; and (D) testimony by

Plaintiffs' experts Kathleen Blee and Peter Simi that there was a conspiracy or any other opinion that could constitute legal conclusions. Plaintiffs address each of these requests in turn. As explained fully below, Defendants' motion should be denied.

## ARGUMENT

### I. THE COURT SHOULD DENY THE REQUEST FOR JUDICIAL NOTICE OF SEARCH WARRANT AFFIDAVITS AND SEARCH WARRANTS

Defendants Kessler, Damigo, and IE request that the Court take judicial notice of three search warrants and three search warrant affidavits that were issued in 2019 to individuals who are not parties in this case and who do not appear on any party's witness list. This request should be denied for at least two reasons. *First*, insofar as Defendants request that the Court take judicial notice of the facts underlying the affidavits, that request must be denied because the underlying facts are a) not admissible at trial and b) not indisputable. Indeed, it would raise serious constitutional issues for the Court to take judicial notice of the underlying facts in the affidavits. *Second*, to the extent that Defendants' motion seeks to have the Court take judicial notice of the fact that, in 2019, three search warrant affidavits were sworn by an affiant and three search warrants were issued by a magistrate judge in the Western District of Virginia, that request should be denied as well because Defendants have not established the relevance of those facts. At bottom, Defendants should not be permitted to introduce through judicial notice inadmissible, unreliable, and irrelevant facts and upend the bedrock, threshold requirements for admitting courtroom evidence.

#### A. Legal Standard

Federal Rule of Evidence 201 permits judicial notice of adjudicative facts that are "not subject to reasonable dispute" so long as they either are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy

2

cannot reasonably be questioned." Fed. R. Evid. 201(b). The party requesting judicial notice bears the burden of proving that Rule 201(b)'s standard is satisfied. *Farmer v. United States*, No. 5:10-cr-271, 2015 WL 12911626, at *2 (E.D.N.C. Aug. 31, 2015), *aff'd*, 633 F. App'x 182 (4th Cir. 2016).

Taking judicial notice of facts has serious consequences because under Federal Rule of Evidence 201(f), "[w]here the trial court has taken judicial notice of a fact in a civil matter, the judge *must* instruct the jury to accept the fact as conclusive." *Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490 (D.S.C. 2013) (citing the predecessor to Fed. R. Evid. 201(f) (emphasis added)). Further, a "court taking judicial notice may also preclude the introduction of evidence to disprove the noticed fact." *Id.* Given these high stakes, courts must exercise caution before taking judicial notice. As the advisory committee notes to Rule 201(b) state, "[a] high degree of indisputability is the essential prerequisite" for judicial notice, and "[t]his tradition of circumspection appears to be soundly based" because the "key to a fair trial is opportunity to use the appropriate weapons (rebuttal, evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention." Fed. R. Evid. 201(b) advisory committee notes.

### B. The Court May Not Take Judicial Notice of the Facts Underlying the Affidavits

To the extent that Defendants request that the Court take judicial notice of the facts underlying the search warrant affidavits, the Court must deny that request for at least two reasons.

*First*, it is black-letter law that courts may not take judicial notice of documents for use by a party for the truth of their contents when they do not otherwise satisfy the admissibility rules of evidence. *See*; *McLean v. Leonard*, 2016 WL 3448574, at *3 (E.D.N.C. June 17, 2016); *United States v. Schley-Cole*, 2013 WL 6073550, at *2 (N.D. W.Va. Nov. 18, 2013); *Sher v. Luxury Mortg. Corp.*, 2012 WL 5869303, at *7 (D.Md. Nov. 19, 2012); *Marsh v. San Diego Cnty.*, 432

3

F.Supp.2d 1035, 1043 (S.D. Cal. 2006); *see also* 21B Wright & Miller, *Federal Practice & Procedure* § 5106.4 (2d ed. 2017) ("[A] court cannot take judicial notice of a fact that would not be admissible if it were offered as evidence.").

Here, Defendants have made no attempt to demonstrate that the "facts" underlying the affidavits are otherwise admissible at trial. Nor could they. The affidavits are replete with admissibility issues. *First*, not only is each affidavit itself an out-of-court statement that the defendants are improperly attempting to offer for the truth of the "facts" included in it, but the numerous additional out-of-court statements within each affidavit constitute hearsay within hearsay. *See McLean*, 2016 WL 3448574, at *3 (denying motion for judicial notice of exhibits that contained hearsay within hearsay); *Elliott v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 12965955, at *2 (N.D. Cal. Dec. 7, 2012) ("[A] court . . . cannot take judicial notice of inadmissible hearsay, *i.e.* the factual matters stated [in a certain document]."). *Second*, the single affiant who authored all three of the affidavits has not established personal knowledge of the "facts," which are ardently contested in this case. The affiant purports to characterize these "facts" as accurate, including in one affidavit a background section on Unite the Right that does not contain a single citation for any of the alleged "facts." *Third,* each affidavit relies on sources—including photographs, videos, social media posts, websites, and email communications—that are entirely unauthenticated.

In short, the affidavits are a conglomeration of numerous alleged "facts" that not only include multiple layers of hearsay, but also rely on many different kinds of unauthenticated sources—all of which are improperly characterized by a single individual with no established personal knowledge. Defendants' attempt to end-run the Federal Rules of Evidence is outrageous, and their motion should be denied for this reason alone.

4

*Second,* the Federal Rules of Evidence authorize courts to take judicial notice only of facts the accuracy of which "is not subject to reasonable dispute." Fed. R. Evid. 201(b). Indeed, in order for a fact to be judicially noticed under Rule 201(b), a high degree of indisputability is a fundamental prerequisite. *See* 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5104 at 485 (1977 & Supp. 1994). Since the effect of taking judicial notice would be to preclude Plaintiffs from introducing contrary evidence as to the fact noticed, "the fact must be one that only an unreasonable person would insist on disputing." *United States* v. *Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Here, Plaintiffs vigorously dispute the "facts" in the affidavits, which have not been subject to cross-examination, rebuttal, or argument. For this reason, too, Defendants' motion should be denied. *See Scotty's Contracting & Stone, Inc. v. United States*, 326 F.3d 785, 790 n.1 (6th Cir. 2003) ("[J]udicial notice of a fact is generally only appropriate when there is no dispute regarding the fact.").

Defendants appear to rely on an implicit argument that facts within a search warrant must be accurate. *See* Mot. at 2-3. But courts regularly recognize that the "accuracy" of search warrants *can* "reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, "despite best efforts, inaccurate information . . . may get into the affidavits for search warrants and into the warrants themselves." *United States v. Johnson*, 558 F. Supp. 2d 807, 812 (E.D. Tenn. 2008). That is because "search warrant affidavits are prepared in the heat of an investigation and are not required to be 100% accurate in all respects." *United States v. Jabero*, 368 F. Supp. 2d 702, 717 (E.D. Mich. 2005). Accordingly, it is not unusual for courts to determine "that [a] search warrant affidavit was false and inaccurate in [multiple] respects." *United States v. Ross*, 400 F. App'x 730, 736 (4th Cir. 2010); *see United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003) (noting how a search warrant affidavit "contained information that is either inaccurate or illegally obtained").

5

Taking judicial notice of "facts" that may well be inaccurate (if not outright false) is plainly not permissible under the Federal Rules of Evidence.

The reason why nothing short of "[a] high degree of indisputability" is required is simple: the key to a fair trial is the opportunity to use the appropriate weapons (rebuttal, evidence cross-examination, and argument) to meet adverse materials that come to the tribunal's attention. Where the facts in the affidavits are not indisputable, instructing the jury to accept those facts would deprive Plaintiffs of the right to go to the jury with evidence to disprove those facts, *see Loftus*, 989 F. Supp. 2d at 490, thereby raising serious constitutional concerns, *see* 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5104 at 485 (1977 & Supp. 1994); *accord Jones*, 29 F. 3d at 1553; *United States v. Aluminum Co. of America*, 148 F.2d 416, 446 (2d Cir. 1945) (L. Hand, J.).

### C. The Existence of the Search Warrants and Affidavits is Not Relevant.

Insofar as Defendants' motion seeks only to have the Court take judicial notice of the fact that, in 2019, three search warrant affidavits were sworn by an affiant and three search warrants were issued by a magistrate judge in the Western District of Virginia, that request should be denied as well. For a court to take judicial notice of a matter, "that matter must be relevant." *Ebersole* v. *Kline-Perry*, 2021 WL 2673150, at *6 (E.D. Va. July 5, 2012); *see also Deakle v. Westbank Fishing, LLC*, 2021 WL 4133512, at *2 (E.D. La. Sept. 10, 2021) ("Courts should not take judicial notice of irrelevant facts."); *United States v. Lumiguid*, 499 F. App'x 689, 691 (9th Cir. 2012) (refusing to take judicial notice of irrelevant evidence). In other words, facts whose "relevance has not been established" are "not appropriate for judicial notice." *United States v. LaRouche*, 4 F. 3d 987 (4th Cir. 1993). Consistent with the Federal Rules of Evidence, to be relevant, evidence must have the "tendency to make the existence of a[] fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence."

*Chalifa* v. *Mayor and City Council of Baltimore*, 986 F.2d 1412 (4th Cir. 1993) (emphasis added). The proponent of evidence bears the burden of establishing its relevance. *See United States v. Shah*, 125 F. Supp. 3d 570, 574 (E.D.N.C. 2015).

Here, the fact that these search warrants were issued and that the search warrant affidavits were filed is not relevant to the question of whether the Defendants conspired to commit racially-motivated violence in Charlottesville, Virginia on August 11 and 12, 2017. And Defendants' conclusory, one-sentence suggestion that the search warrants and affidavits are relevant to what "the defendants did and with what motive or intent," Mot. at 3, falls woefully short of meeting their burden to establish that judicial notice is appropriate. Indeed, it has hard to divine how the existence of a search warrant could say anything about Defendants' intent or motive. In sum, Defendants' request for judicial notice should be denied.

## II. THE COURT SHOULD DENY DEFENDANTS' REQUEST TO PROHIBIT PLAINTIFFS FROM REFERRING TO CERTAIN EVIDENCE

### A. Plaintiffs' Response to Defendants' Request to Exclude Evidence Linking Defendants to Misconduct That Led to Adverse Inferences

During the course of this litigation, Plaintiffs have successfully sought evidentiary sanctions against four Defendants for their various discovery misconduct. *See Sines v. Kessler*, 2020 WL 702871 0 (W.D. Va. Nov. 30, 2020) (as to Defendant Kline); *Sines v. Kessler*, Civ. Action No. 3:17-00072, 2021 WL 1143291 (W.D. Va. Mar. 24, 2021) (as to Defendant Ray); *Sines v. Kessler*, Civ. Action No. 3:17-00072, 2021 WL 1208924 (W.D. Va. Mar. 30, 2021) (as to Defendant Vanguard America); *Sines v. Kessler*, Civ. Action No. 3:17-00072, 2021 WL 2584807 (W.D. Va. June 23, 2021) (as to Defendant National Socialist Movement). Defendants Kessler, Damigo, and IE seek to exclude "evidence and argument that states, implies, or attempts in any way to link defendants to the misconduct that led to adverse inferences being granted against other parties to this litigation." Mot. at 1.

To the extent Defendants Kessler, Damigo, and IE seek to exclude "evidence and argument that states, implies, or attempts in any way to link defendants to the misconduct that led to adverse inferences being granted against other parties to this litigation," Mot. at 1, Plaintiffs do not intend to argue or present evidence to link Defendants Kessler, Damigo, or IE to the discovery misconduct committed by other defendants in this litigation. Plaintiffs reserve the right, however, to present evidence and argument about any and all misconduct engaged in by Defendants Kessler, Damigo, and IE.

If, by contrast, Kessler, Damigo, and IE are seeking an order precluding Plaintiffs from offering arguments or evidence related to the inferences and facts granted that might *inferentially* have some spillover effect, that relief must be denied. *Cf*. Mot. 4 (requesting an order "prohibiting the plaintiffs from using any evidence or argument that states, implies, or in any other way attempts to link the defendants to sanctions imposed on other parties."). That sweeping request, which Defendants have not mustered a single citation to support, goes far beyond the modest mechanism this Court has already recognized as the appropriate cure for any potential spillover effects: A limiting jury instruction. *See, e.g.*, ECF No. 910 at 28 ("Defendants' concerns about the 'spillover effect of evidentiary rulings' against Kline . . . can be addressed with an appropriate limiting instruction.").

Following the Court's guidance on that point, Plaintiffs' proposed jury instructions include a limiting instruction which makes clear that the sanctions granted against co-Defendants does "not relieve Plaintiffs of their burden to prove by a preponderance of the evidence the conduct committed by" other Defendants. Pls.' Proposed Jury Instructions, at 23. No more is required. *See* Pls. Reply to Def. Spencer's Opposition to Motion For Sanctions Against Defs. Kline and Heimbach, ECF No. 475 at 3-6 (collecting cases). As Plaintiffs have previously explained,

8

evidence about the relevant conduct of their co-Defendants, such as the fact that Defendants Kline and Ray entered into an agreement with one or more coconspirators to engage in racially motivated violence, is not something Defendants Kessler, Damigo, or IE may keep from the jury simply on the grounds that they believe such facts would be damaging to their defense. *See id.* at 3.

      **B.**      **The Court Should Not Prohibit Non-Party Witness Testimony About Their Emotions or Reactions**

Defendants argue the Court "should exclude evidence regarding the emotional distress of . . . non-parties" because (a) the "emotional distress of nonplaintiffs is not recoverable" and thus irrelevant under Rule 402, and (b) any emotional distress suffered by non-parties "due to witnessing or being aware of plaintiffs' injuries is prejudicial" under Rule 403. (Mot. at 4.)

Plaintiffs do not seek recovery for the emotional distress of non-parties and do not intend to argue or present evidence on that non-issue. Non-party testimony is admissible as to the Plaintiffs' emotional distress, however, and a third party may testify about the emotional distress they witnessed in a Plaintiff as a result of Defendants' conduct. *See Clehm v. BAE Sys. Ordnance Sys., Inc.*, 2018 WL 6594612, at *7-*8 (W.D. Va. Dec. 14, 2018) (trial including "detailed testimony from [plaintiff's] family, friends, and former coworkers regarding her emotional injuries, protracted anxiety, and the deterioration of her physical and mental health" was "fully and fairly tried."); *see also M.B.A.F.B. Federal Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (testimony is admissible under Fed. R. Evid. 602 where the witness "actually perceived or observed that which he testifies to"); 1 Damages in Tort Actions § 4.03 (2021) (lay witnesses "may testify as to expressions of present pain made by an injured person at the time of the accident or at some point thereafter."). Defendants' Motion does not seek to exclude such evidence.

9

Further, Defendants' Motion to exclude *any* evidence whatsoever of a non-party's emotions or reactions is patently overbroad and should be denied. Blanket prohibitions on broad categories of evidence are rarely proper, *see In re Peanut Famers Antitrust Litig.*, 2021 WL 1141260, at *2 ("Orders in limine which exclude broad categories of evidence should rarely be employed."), and Defendants have not even attempted to justify such a sweeping prohibition in this case. They argue only that the witnesses' emotional distress is not "recoverable" and that their emotional reactions would be prejudicial.

In fact, Defendants have it exactly backward: non-party witnesses' testimony about how they felt or reacted to events they witnessed – which Plaintiffs do plan to introduce – can be highly relevant and probative, even central to their firsthand experience. *U.S. v. Brice*, 2010 WL 750081, at *1 (4th Cir. 2010) (per curiam) (affirming the district court's allowance of witness testimony about their reactions during a bank robbery, including that "they were 'scared,' 'nervous,' and 'shocked,' and a customer appeared 'terrified,'" because the testimony was probative of intimidation). The jury is entitled to hear the reaction of non-party witnesses to events they witnessed, which may lend credibility to their testimony. This case is a perfect example. This Court has already held, for example, that whether Defendants engaged in or agreed to engage in intimidating behavior is a relevant fact at issue. *E.g.*, *Sines v. Kessler*, 324 F. Supp. 3d 765 (W.D. Va. 2018) (holding Plaintiffs' adequately alleged Defendants entered into a conspiracy "for the purpose of . . . intimidating" people opposed to white supremacy, and to violate Virginia's hate crime statute, which makes acts of racial "intimidation" unlawful). Naturally, Plaintiffs may testify that they felt intimidated by Defendants' conduct, but it is also relevant and probative whether non-parties who witnessed the same conduct perceived it the same way and had similar reactions. Their testimony is entirely proper and admissible to corroborate Plaintiffs' testimony.

Defendants are also incorrect that evidence of a non-party's emotional distress should be excluded as prejudicial (Mot. at 4.) As the Fourth Circuit has explained, "[e]vidence that is highly probative invariably will be prejudicial to the defense," but "damage to a defendant's case is not a basis for excluding probative evidence." *Grimmond*, 137 F.3d at 833; *U.S. v. Williams*, 445 F.3d 724 (4th Cir. 2006) ("[A]ll evidence suggesting guilt is prejudicial to a defendant."). Instead, "the touchstone for excluding evidence under Rule 403 is not prejudice, but 'unfair' prejudice." *U.S. v. Williams*, 445 F.3d 724 (4th Cir. 2006). This means "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *U.S. v. Hammoud*, 381 F.3d 316 (4th Cir. 2004).

Defendants' only argument is the bare conclusion that non-party witnesses' "emotional distress" would have an "emotional impact on the jury." (Mot. at 4.) Defendants cite no cases excluding relevant evidence on this basis, however, and they do not and cannot explain how such evidence would cause the jury to be "excited to irrational behavior" or that such a risk outweighs the substantial corroborative and evidentiary value of non-party witnesses' testimony.

### C. The Court Should Not Prohibit Counsel or Witnesses From Using Words Like "Conspiracy" or "Racial Animus"

Defendants seek to prohibit any "questioning or testimony" that uses the terms "conspiracy," "racial animus," or "any similar term or concept." (Mot. at 4-5.) Defendants' request is nonsensical on its face. The defense would bar Plaintiffs' counsel and witnesses from using words like *conspiracy* and *racial animus* in a trial seeking to establish a *conspiracy* motivated by *racial animus*. Apart from the farcical nature of the request, Defendants' motion finds no support in the law.

A blanket prohibition on a broad category of communication and testimony is completely unwarranted in this case. *See In re Peanut Famers Antitrust Litig.*, 2021 WL 1141260, at *2

11

(denying motion in limine because the request sought a "blanket bar on…a broad category of information" and noting that "[o]rders in limine which exclude broad categories of evidence should rarely be employed"). As Defendants concede, terms like "conspiracy" and "racial animus" are "used in everyday interactions." (Mot. at 5.) When words are commonly used – even if they also have a specific legal meaning – they can be used in argument, questioning and testimony. *U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (explaining that terms used in testimony are not rendered legal conclusions unless "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular").

Courts routinely permit testimony that uses words that have both legal and commonly understood meanings, even if it relates to the ultimate issue. *See, e.g., U.S. v. Campbell*, 963 F.3d 309, 313-14 (4th Cir. 2020) ("The commonly understood meaning of 'but for' and 'results from' do not diverge from their legal meaning. So we have no trouble finding that the jury would understand those terms," and permitting such testimony); *U.S. v. Chikvashvili*, 859 F.3d 285, 292−94 (4th Cir. 2017) (affirming admission of testimony on "causation" of death); *McIver*, 470 F.3d at 562 (upholding trial court's decision to allow testimony that doctor's treatment was "illegitimate or inappropriate" even though terms he used were "similar to that which . . . the court has employed to express the underlying issues" because the language used "falls within the limited vernacular that is available to express" the issue); *U.S. v. Jefferson*, 623 F. Supp. 2d 683, 687 (E.D. Va. 2009) ("[A]lthough words such as 'decision' or 'matter' are also used in the bribery statute's definition of 'official act' . . . and those words' legal meanings are not so distinct as to render Mr. McHugh's proposed testimony unhelpful to the jury.").

In *U.S. v. Hobbs*, Nos. 05–4744, 05–4745, 2006 WL 2038757 (4th Cir. 2006), Defendants were convicted of conspiring to threaten and intimidate an African-American family in violation

12

of 18 U.S.C. § 241. On appeal, the defendants argued a witness's testimony that he had had an "understanding" with defendants "that things should be done to try and scare the [African-American] family" was an inadmissible legal conclusion. *Id.* at *3. The Fourth Circuit disagreed, holding that the argument had "no merit" and finding testimony about defendants' "understanding" was "highly relevant and [] admissible" in a conspiracy case. *Id*.

It would be impractical to conduct this trial without the ability of counsel and witnesses to utter the words *conspiracy* or *racial animus*, two terms that not only are commonly understood but also embody two of the key elements of the civil rights conspiracy claim in this case. In fact, Defendants do not and cannot explain how the legal meaning of "conspiracy" or "racial animus" differ from their common definitions in any meaningful way. The legal meaning of conspiracy is an agreement, or meeting of the minds, by two or more persons to join together to commit an unlawful act and, "[b]y its very nature, a conspiracy is clandestine and covert." *U.S. v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996). The dictionary definition of conspiracy is "the activity of secretly planning with other people to do something bad or illegal." *Conspiracy*, Cambridge Dictionary (10th ed. 2007). Similarly, the legal meaning of "discriminatory animus" is that Defendants acted "because the plaintiff belonged to or was somehow associated with a group of people . . . that the defendant disliked or hated." 5 Modern Federal Jury Instructions, Instruction No. 87-106 (2021). The dictionary definition of "animus" is "a feeling of hate or anger toward someone or something." *Animus*, Cambridge Dictionary (10th ed. 2007). In short, the legal and common definitions of these terms have the same or similar meanings, and it is entirely appropriate for counsel and witnesses to use them during trial.

Defendants also argue the Court should exclude words like *conspiracy* and *racial animus* because those concepts are "part of what the jury will be responsible for determining." (Mot. at

13

5.) Again, that argument contradicts the law, because witnesses can testify on the ultimate issue. *See* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."); *U.S. v. Melvin*, No. 12–4195, 2013 WL 323286, at * 2 (4th Cir. 2013) (citations omitted) ("An expert is permitted to give testimony that embraces an ultimate issue to be decided by a jury.")*; e.g.*, *Campbell*, 963 F.3d at 313-14 (affirming admission of testimony on ultimate issue of causation); *McIver*, 470 F.3d at 562-63 (affirming admission of testimony on ultimate issue of whether treatment of patients was outside of bounds of medical practice); *Jefferson*, 623 F. Supp. 2d at 687-88 (admitting testimony on ultimate issue of whether defendant engaged in "official acts" under bribery statute).

Defendants' further and vague request to prohibit the use of "any similar term or concept" is so overbroad and imprecise that the Court should reject it outright. *See U.S. v. Bradford*, 905 F.3d at 497, 505 (7th Cir. 2018) (affirming trial court's admission of evidence and explaining that defendant's "motion in limine did not satisfy Rule 103(a)'s specificity requirement" because it "did not identify the specific evidence [defendant] feared would be admitted or explain why it was inadmissible"). Would Defendants prohibit counsel from using words like "agreement" and "understanding" (terms or concepts similar to "conspiracy") or "racism" (a concept similar to "racial animus")? Defendants do not identify the words they would prohibit as "similar," so it is impossible for Plaintiffs or the Court to know the bounds of the testimony Defendants seek to exclude or the argument they seek to ban.[1]

---

[1] At a minimum, because Defendants are unable to articulate what exactly they seek to exclude and why, Defendants' objections are premature. If they have objections to Plaintiffs' questions, they can raise those objections at trial, and the Court can resolve them with the benefit of the context in which those objections arise. *Melvin*, 2013 WL 323286, at * 2 (explaining that, whether "ultimate issue testimony is helpful to the jury" will "often turn on the precise wording of counsel's questions and responses provided by the witness.") (citations omitted).

Finally, Defendants argue that "conspiracy," "racial animus" and "similar" words would be prejudicial under Rule 403 because they suggest the terms are applicable to the Defendants. (Mot. at 5.) This is illogical. It is the substance of the testimony, not the use of the words, that would make them applicable to Defendants. Regardless, as the Fourth Circuit has explained, "[e]vidence that is highly probative invariably will be prejudicial to the defense," but "damage to a defendant's case is not a basis for excluding probative evidence." *U.S. v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). Indeed, "all evidence suggesting guilt is prejudicial to a defendant." *U.S. v. Williams*, 445 F.3d 724 (4th Cir. 2006). Instead, "the touchstone for excluding evidence under Rule 403 is not prejudice, but unfair prejudice." *U.S. v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006). This means "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *U.S. v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004) (en banc) (citations omitted), *vacated on other grounds* 543 U.S. 1097 (2005), *relevant part of prior opinion reinstated*, 405 F.3d 1034 (4th Cir. 2004).

Here, there is nothing to suggest the jury would be "excited to irrational behavior" by counsel or witnesses using common words like *conspiracy* or *racial animus*, or that such a risk outweighs the substantial corroborative and evidentiary value of testimony about Defendants' conduct actually engaging in a conspiracy motivated by racial animus – key issues in this case. The Court should deny the Motion.

### D. Plaintiffs' Response to Defendants' Motion to Impose Limitation on Expert Testimony

Finally, Defendants Kessler, Damigo, and IE move to "exclude or limit the testimony of proffered experts Simi and Blee." ECF No. 1148 at 5. In particular, Defendants seek an order prohibiting Plaintiffs from introducing expert testimony from Drs. Simi and Blee "opin[ing] that

15

there's a conspiracy" or rendering opinions on "legal conclusions." *Id*. Plaintiffs submit that such an order is unnecessary in light of governing precedent, Plaintiffs' prior representations to the Court, the scope of the report itself, and the Court's prior ruling denying Defendants' motion to exclude certain aspects of Drs. Simi and Blee's testimony. *See* ECF Nos. 826, 937, 941.

As an initial matter, it is settled law that an "expert is permitted to give testimony that 'embraces an ultimate issue' to be decided by the jury." *United States v. Melvin*, 508 F. App'x 209, 211 (4th Cir. 2013) (quoting Fed. R. Evid. 704(a)). At any rate, Plaintiffs have already represented to the Court that they have no intention of asking Drs. Simi and Blee to draw any legal conclusions about the existence of a conspiracy. *See, e.g.*, ECF No. 916 at 15 (Mr. Bloch: "[T]hey do not state any sort of legal conclusion."); *id.* at 36 (Mr. Bloch: "[T]hey will not say that there's a conspiracy. What they do say . . . is that there is a distinctive culture; it does include these tactics."); *id.* at 37 (Mr. Bloch: "They won't say there's a conspiracy. They interpret language. They contextualize conduct within the culture of the White Supremacist Movement."). Consistent with those prior representations, Plaintiffs *do* intend "to introduce expert testimony addressing certain common beliefs, strategies, and violent tactics of various white supremacist groups." ECF No. 941 at 22-24. As this Court held in denying Defendants' motion to exclude Plaintiffs' experts, such expert testimony is "uniquely helpful evidence to a jury in a conspiracy case that involves ten white supremacist organizations and fourteen individuals as defendants." *Id.* at 22.

Not only is Defendants' motion unnecessary, it is also premature. In its prior ruling regarding the testimony of Drs. Simi and Blee, the Court explained that, although "the Court has found no basis in Movant-Defendants' arguments to preclude or limit Blee and Simi's proffered expert testimony" and thus "denied their motion to exclude," "[t]his does not preclude Defendants from later raising *specific* objections *in the course of* the experts' testimony." ECF No. 941 at 26

16

(emphases added); *see also* ECF No. 937 at 1; ECF No. 916 at 34-39 (Plaintiffs' counsel explaining, "The answer to many of the concerns that Mr. Kolenich is raising is to cross-examine, to object at trial . . . ."). Accordingly, Plaintiffs submit that any concerns Defendants may have with Drs. Simi and Blee's expert testimony are more appropriately raised and resolved through specific objections at trial.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request that the court take judicial notice and deny Defendants' second, third, and fourth motions in limine.

Dated: October 12, 2021

Of Counsel:

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Respectfully submitted,

*/s/ Jessica Phillips*
Jessica Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

Jessica Phillips (*pro hac vice*)
Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Agbeko C. Petty (*pro hac vice*)
Giovanni Sanchez (*pro hac vice*)
Matteo Godi (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
jphillips@paulweiss.com
kdunn@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
apetty@paulweiss.com
gsanchez@paulweiss.com

17

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice* pending)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
rtolentino@kaplanhecker.com
bwhite@kaplanhecker.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahil@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
Allegra K. Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary J. Anderson (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 12, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, Matthew Heimbach, Matthew Parrott, Traditionalist Worker Party, National Socialist Movement, and Nationalist Front*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, Pennsylvania 15216
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Matthew Heimbach, and Traditionalist Worker Party*

I hereby certify that on October 12, 2021, I also served the following non-ECF participants via mail or electronic mail:

| | |
|---|---|
| Richard Spencer<br>richardbspencer@icloud.com<br>richardbspencer@gmail.com<br><br>Vanguard America<br>c/o Dillon Hopper<br>dillon_hopper@protonmail.com<br><br>Elliott Kline a/k/a Eli Mosley<br>eli.f.mosley@gmail.com<br>deplorabletruth@gmail.com<br>eli.r.kline@gmail.com | Christopher Cantwell<br>Christopher Cantwell 00991-509<br>USP Marion, 4500 Prison Rd.<br>P.O. Box 2000<br>Marion, IL 62959<br><br>*and*<br><br>Christopher Cantwell 00991-509<br>Grady County Law Enforcement Center<br>215 N. 3rd St.<br>Chickasha, OK 73018<br><br>Robert "Azzmador" Ray<br>azzmador@gmail.com |

Dated: October 12, 2021

/s/ Jessica Phillips
Jessica Phillips (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP

*Counsel for Plaintiffs*

- 2 -