IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES, et al., | ) | Civil Action No. 3:17-cv-00072 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JASON KESSLER, et al., | ) | |
| Defendants. | ) | By:  Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' second Motion for Sanctions Against Defendant James Alex Fields Jr. under Rule 37 of the Federal Rules of Civil Procedure. ECF No. 1003 ("Pls.' Mot."). Plaintiffs contend that Fields "has persistently failed and refused to provide routine discovery in this case, disobeyed Court orders, destroyed documents, and, most recently, refused to testify in a deposition after seeking multiple extensions." *Id.* at 6.[1] They ask the Court to impose three types of sanctions at the upcoming jury trial, *see id.*, "to level the evidentiary playing field and put the Plaintiffs in the position they would have held had Fields participated properly in discovery," *id.* at 7. The motion has been fully briefed, *see* ECF Nos. 1011, 1022, 1037, 1055, and may be resolved without a hearing, Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b). Plaintiffs' motion will be GRANTED in part and DENIED in part as detailed below.

I. The Legal Framework

Rules 26 through 36 of the Federal Rules of Civil Procedure provide specific devices or procedures—such as interrogatories, requests for admission, and depositions—for parties to obtain discoverable information before trial. Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and

---

[1] Pinpoint citations to documents filed on CM/ECF use the "page X of Y" numbers printed in the header.

1

their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). When they do not, Rule 37 provides one mechanism for a district court to compel compliance, Fed. R. Civ. P. 37(a), or to sanction an unacceptable failure to follow the rules, *see* Fed. R. Civ. P. 37(b)–(f).[2] Plaintiffs' pending motion primarily relies on Rule 37(b)(2)(A). *See generally* Pls.' Mot. 10–12, 15–16 (citing Mem. Op. & Order of June 11, 2020, ECF Nos. 759, 760; Order of Aug. 10, 2020, ECF No. 829).

Rule 37(b) authorizes the district court where an action is pending to impose appropriate sanctions when a party "fails to obey an order to provide or permit discovery."[3] Fed. R. Civ. P. 37(b)(2)(A); *see R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991) ("The rule's language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before . . . sanctions can be imposed."). "Once a court makes the threshold determination under Rule 37(b)"

---

[2] "Federal courts also have inherent power to sanction conduct that offends the legal process, including a party's 'fail[ure] to preserve or produce' discoverable information for another's use in litigation." Mem. Op. of June 11, 2020, at 11 n.4 (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004)). "In this case, Rule 37(b)(2)(A) provides an adequate framework to determine whether Fields failed obey" the relevant discovery orders "and, if so, whether Plaintiffs' requested evidentiary sanctions are appropriate." *Id.*

[3] The phrase "order to provide or permit discovery" explicitly includes "an order . . . under Rule 37(a)," Fed. R. Civ. P. 37(b)(2)(A), related to motions for an order "compelling an answer . . . production, or inspection" in response to the moving party's written discovery requests, Fed. R. Civ. P. 37(a). Beyond this, "[c]ourts are entitled to interpret broadly what constitutes an order" within the meaning of Rule 37(b)(2). *REP MCR Realty v. Lynch*, 383 F. Supp. 2d 984, 998 (N.D. Ill. 2005); *see Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir. 1994) ("[A]n oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discovery."); *Carriage Hill Mgmt. v. Bos. Lobster Feast, Inc.*, No. GJH-17-2208, 2018 WL 3329588, at *5 (D. Md. July 6, 2018) (district court's oral order noting the parties' agreement to produce discovery by extended deadline did not provide grounds for relief under Rule 37(b)(2) because the "[o]rder did not mandate any particular action" and "did not explicitly direct any action from either party"); *United States v. Barker*, No. 3:06cr373, 2010 WL 2650885, at *1–2 (W.D.N.C. July 1, 2010) (order granting plaintiff leave to depose incarcerated defendant, entered under Rule 30(a)(2)(B), was an order to provide or permit discovery within the meaning of Rule 37(b)(2)); *cf. Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 324 (4th Cir. 2001) (en banc) (acknowledging "the rule in this circuit that a district court . . . is best able to interpret its own orders").

that a prior discovery order has been violated, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[4] "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)).

In making this determination, the district court should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk*, 269 F.3d at 348); *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)). "The presence or absence of any one of these factors is generally not decisive," *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2013 WL 5797381, at *4 (D. Md. Oct. 24, 2013), as the district court has broad discretion to "'make whatever disposition is just in light of the facts of the particular case,'" *id.* (quoting *Bethesda Softworks, LLC v.*

---

[4] Such sanctions "may include" orders deeming facts established, permitting or requiring an adverse inference, entering default judgment against the disobedient party, or holding the party in civil contempt. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533–34 (D. Md. 2010) (quoting Fed. R. Civ. P. 37(b)(2)(A)); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii); *Thompson*, 219 F.R.D. at 102 ("Rule 37(b)(2) provides a non-exclusive list of possible sanctions[.]"); 8B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2289 (3d ed. 2018) (explaining that Rule 37(b)(2) gives courts "broad discretion to make whatever disposition is just" in the particular case and that available sanctions are "not limited to the kinds of orders specified" in subsection (b)(2)(A)(i)–(vii)). Separately, Rule 37(d) permits a court, on motion, to impose the sanctions "listed in Rule 37(b)(2)(A)(i)–(vi)" if the court finds that an individual party failed, "after being served with proper notice, to appear for that person's deposition." *See* Fed. R. Civ. P. 37(d)(1)(A)(i), (d)(3).

*Interplay Enter. Corp.* Civ. No. DKC-09-2357, 2011 WL 1559308, at *2 (D. Md. Apr. 25, 2011)). Some sanctions, however, do require the court to find that the disobedient party acted willfully or in bad faith before the sanction may be imposed. *See, e.g.*, *Young Again Prods. v. Acord*, 459 F. App'x 294, 305–06 (4th Cir. 2011) (civil contempt); *Hodge*, 360 F.3d at 450 (adverse inference); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (default judgment).

The Fourth Circuit has not clearly defined the movant's burden of proof on a Rule 37 motion for sanctions. *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488924, at *11 (E.D. Va. Nov. 30, 2018), *adopted by* 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "Some courts have applied the preponderance of the evidence standard. Other courts have required clear and convincing proof of misconduct, especially when imposing severe sanctions." *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017) (internal citation omitted). For the reasons explained below, I conclude that Plaintiffs have, for the most part, failed to show that (a) Fields's challenged conduct violated the cited discovery orders, and (b) the proposed evidentiary sanctions are appropriate to remedy Fields's actual violations of those orders and deter similar misconduct. My "decision would remain the same under either standard." *Id. Cf. Glynn*, 2010 WL 3294347, at *2 ("[T]he precise burden of proof in a motion for sanctions is unclear in the Fourth Circuit. However, proving misconduct occurred by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices.").

## II. Background

On August 11–12, 2017, "the Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in

4

Charlottesville, Virginia. Violence erupted." *Sines v. Kessler*, 324 F. Supp. 3d 765, 773 (W.D. Va. 2018) ("*Sines I*"); *see* Second Am. Compl. ¶¶ 1–7, ECF No. 557. Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of 42 U.S.C. § 1985, and related state laws. *Sines I*, 324 F. Supp. 3d at 773. Six remaining Plaintiffs allegedly were injured when Fields drove his car into a crowd of counter-protesters after the main "Unite the Right" event ended on Saturday, August 12. *See id.* at 774–75; Second Am. Compl. ¶¶ 11, 14–17, 19.[5] "While ultimate resolution of what happened at the rallies awaits another day," the presiding District Judge has held that these Plaintiffs plausibly alleged certain Defendants "formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries," *Sines I*, 324 F. Supp. 3d at 773; *see id.* at 787–88 (discussing allegations against Defendant Vanguard America), and that those "co-conspirator Defendants may be held liable for the overt act Fields[] took in furtherance of the conspiracy," *id.* at 797; *see id.* at 796–97. Plaintiffs also alleged that Fields "wore Defendant Vanguard America's uniform and marched with other Vanguard America members" on August 12. *See id.* at 778 (citing Am. Compl. ¶ 197).[6] They did not allege Fields had any role in planning Unite the Right.

In his Answer to Plaintiffs' Second Amended Complaint, Fields admitted that "he attended the event in Charlottesville" on August 12, wore "a white polo shirt (that did not have the Vanguard [America] logo on it) and khakis," and carried "an object with the Vanguard logo

---

[5] Those plaintiffs are: Elizabeth Sines, Marissa Blair, April Muñiz, Marcus Martin, Natalie Romero, and Thomas Baker. Plaintiff Chelsea Alvarado also was allegedly injured in this collision, *id.* ¶ 18, but she has voluntarily dismissed her claims against Fields, *see* Oral Order of Sept. 9, 2021, ECF No. 1053.

[6] Fields did not move to dismiss any of Plaintiffs' claims. *See Sines I*, 324 F. Supp. 3d at 807 n.10; Def. Fields's Answer to Am. Compl., ECF No. 197 (Jan. 18, 2018); Def. Fields's Answer to Second Am. Compl., ECF No. 569 (Oct. 1, 2019).

for some portions of the event." Def. Fields's Answer to Second Am. Compl. ¶ 331; *see Sines I*,

324 F. Supp. 3d at 777–78 (noting Plaintiffs' allegations that "Defendant Vanguard America

instructed its members 'to arrive at the rally in matching khaki pants and white polos,'" Am.

Compl. ¶ 115; that "[s]ome chapters planned to bring shields with matching logos," *id.* ¶ 121;

and that "Vanguard America made twenty extra shields for attendees who were unprepared," *id.*

¶ 191). Fields denied (or invoked his Fifth Amendment privilege in response to) Plaintiffs'

allegations that he conspired to commit, or committed, any acts of violence at Unite the Right.

*See generally* Def. Fields's Answer to Second Am. Compl. ¶¶ 335–72; Second Am. Compl. ¶¶

335–43 (Count I, § 1985 conspiracy); *id.* ¶¶ 344–50 (Count II, 42 U.S.C. § 1986); *id.* ¶¶ 351–55

(Count III, civil conspiracy); *id.* ¶¶ 356–63 (Count IV, negligence per se); *id.* ¶¶ 364–67 (Count

V, Va. Code § 8.01-42.1); *id.* ¶¶ 368–69 (Count VI, assault and battery); *id.* ¶¶ 370–72 (Count

VII, intentional infliction of emotional distress).

## III. Procedural History[7]

This is Plaintiffs' second Rule 37 motion against Fields. *See* Pls.' Mot. to Compel &

Sanctions, ECF No. 671 (Mar. 9, 2020). In their first motion, "Plaintiffs argue[d] that Fields

failed to fully answer the two sets of interrogatories submitted to him under Rule 33, failed to

produce documents or permit inspection of his social media accounts and ESI as requested under

Rule 34, and failed to obey [two] court orders directing 'the Defendants' or 'each Defendant'—

i.e., Fields included—to provide or permit discovery of relevant ESI stored online or on [that

Defendant's] identified electronic devices." Mem. Op. of June 11, 2020, at 14; *see id.* at 18

---

[7]In a previous opinion the Court discussed this case's relevant procedural history from October 2017 through May 2020. *See generally* Mem. Op. of June 11, 2020, at 2–10, 14–25. Accordingly, this section focuses on Fields's more recent conduct in pretrial discovery. *See* Pls.' Mot. 9–13; Pls.' Reply Br. 6–7, ECF No. 1037.

("Plaintiffs have not shown that the ESI Order (ECF No. 383) or the Social Media Order (ECF No. 582) required Fields to provide or permit the specific discovery at issue in this motion."). While Plaintiffs filed that "motion 'as both a motion to compel and a motion for sanctions,' their primary concern [was] that the Court [should] give an adverse-inference instruction and impose evidentiary sanctions because, in their view, 'it [was] clear Fields has not and will not produce discovery.'" *Id.* at 14–15. Plaintiffs' request for an adverse inference related to two Christmas cards that Fields received from Defendant Vanguard America sometime after August 12, 2017. *See id.* at 1, 10, 22–25. Fields admitted that he threw those cards away.

On June 11, 2020, I granted in part and denied in part Plaintiffs' motion to compel and issued an order under Rule 37(a) directing Fields to cure specific defects in his responses to Plaintiffs' first RFPs and first and second sets of interrogatories. Order of June 11, 2020 ("Fields shall have twenty-one (21) days from the date of this Order to cure the defects discussed in Section III.A of the [accompanying] Memorandum Opinion."); Mem. Op. of June 11, 2020, at 15–18 (Section III.A, discussing specific "responses to Plaintiffs' first set of RFPs and interrogatories . . . and to Plaintiffs' second set of interrogatories," many of which "are deficient in form or substance") (citing Fed. R. Civ. P. 37(a)(3)–(4)). As relevant here, the June 11 Order required Fields to do two things: (1) supplement his answers to Plaintiffs' first and second sets of interrogatories so that they conformed with Rule 33(b); and (2) provide a Stored Communications Act ("SCA") consent form "for *any requested* social media accounts," *id.* at 18 (emphasis added), which Plaintiffs previously sought under Rule 34, *see id.* at 17–18. *See* Pls.' Mot. 9–10.[8] It appears that Plaintiffs asked Fields to provide an SCA consent form only for

---

[8] Following the June 11, 2020 Order, it appears that Plaintiffs asked Fields to provide an SCA consent form only for Discord, *see* Pls.' Mot. 10–11, 20–21, 25; *id.* App'x A ¶¶ 38–39, ECF No. 1003-1, an online messaging platform that Plaintiffs have alleged "Defendants" used to plan racially motivated violence at Unite the Right, *id.* App'x A ¶ 39; *see generally Sines I*, 324 F. Supp. 3d at 776–77, 784–87,

Discord, *see* Pls.' Mot. 10–11, 20–21, 25; *id.* App'x A ¶¶ 38–39, ECF No. 1003-1, an online messaging platform that Plaintiffs have alleged "Defendants" used to plan racially motivated violence at Unite the Right, *id.* App'x A ¶ 39; *see generally Sines I*, 324 F. Supp. 3d at 776–77, 784–87, 789–92. Fields concedes that he did not provide an SCA form for Discord. Def. Fields's Br. in Opp'n 3, 6 ECF No. 1022.

I denied Plaintiffs' motion for Rule 37(b) sanctions, for two reasons. *See generally* Mem. Op. of June 11, 2020, at 18–25. First, Plaintiffs failed to show that either "the ESI Order (ECF No. 383) or the Social Media Order (ECF No. 582) required Fields to provide or permit the specific discovery at issue" in that motion. *Id.* at 18. Thus, those orders could not provide the basis for sanctioning Fields under Rule 37(b)(2)(A). *See id* at 22. Second, Plaintiffs did not show that Fields threw away Vanguard America's Christmas cards "for the purpose of depriving [his] adversary of evidence" that he knew was relevant to some issue in this case. *See id.* at 25 (quotation marks omitted). Fourth Circuit caselaw requires proof of such knowledge before the district court can impose an adverse inference to sanction a party's intentional destruction of material that should have been preserved for discovery. *See id.* at 14, 24 n.11 (citing *Hodge*, 360 F.3d at 450). The record in June 2020 showed that Fields threw away the cards, but there was "no information about their message or contents, other than [defense counsel's] suggestion that they probably were not 'hate mail.'" *Id.* at 25. Thus, "[g]iving an adverse-inference instruction on this record would be inappropriate." *Id.* I denied Plaintiffs' request without prejudice. *Id.*

\*

The parties were supposed to complete most fact discovery—with the relevant exceptions of "additional interrogatories and/or requests for admission" and party depositions—in this case

---

789–92. Fields concedes that he did not provide an SCA form for Discord. Def. Fields's Br. in Opp'n 3, 6 ECF No. 1022.

by February 5, 2020. Am. Sched. Order of Nov. 27, 2019, at 1, ECF No. 597; Mem. Op. of June 11, 2020, at 9, 15, 19. Plaintiffs timely served their third set of interrogatories and first set of requests for admission ("RFAs") on Fields in late July 2020, *see* Pls.' Mot. 10–11; Am. Sched. Order of Nov. 27, 2019, at 1, and Fields responded to the requests in writing, Pls.' Mot. Ex. 6, ECF No. 1003-8; *id.* Ex. 9, ECF No. 1003-11. *See* Fed. R. Civ. P. 33(b), 36(a)(3)–(5). Fields asserted the Fifth Amendment privilege against compelled self-incrimination in response to aspects of interrogatories asking him to "describe in detail" certain conduct and the substance of any communications that he had on August 12, 2017, as well as "the substance of all communications . . . between [himself] and any other person or entity concerning the Unite the Right rally." Pls.' Mot. Ex. 6, ¶¶ 2–3, 7. More specifically, Fields declined on Fifth Amendment grounds to describe: (a) his conduct on August 12, 2017, beyond the time that he entered "Maumee, Ohio into his GPS" and started to drive home, *id.* ¶ 7; (b) the substance of his "communications with law enforcement" on this date, *id.* ¶ 3; and (c) the specific details of any conversations that he had "with other Rally attendees who were [also] incarcerated in the weeks after August 12," 2017, *id.* ¶ 2.[9]

---

[9] Fields previously invoked his Fifth Amendment privilege in response to similar questions included in Plaintiffs' second set of interrogatories. *See* Mem. Op. of June 11, 2020, at 9–10; Pls.' Mot. to Compel & Sanctions 25 n.5 (citing *id.* Ex. E ¶¶ 6–7, 10); Pls.' Mot. 27 (citing *id.* Ex. 4, ¶¶ 6–7 (asking Fields to "[i]dentify . . . the nature or content of each Communication" concerning the Events that he had with a "member of Law Enforcement" or "any Government Official, whether before, after or during the Events")). In their prior Rule 37 motion, Plaintiffs argued that Fields waived his right to object on Fifth Amendment grounds because his objections to their second set of interrogatories were not timely served under Rule 33(b). *See* Pls.' Mot. to Compel & Impose Sanctions 25 n.5 (citing Fed. R. Civ. P. 33(b)(4)). That argument is now moot. Plaintiffs' decision to include the substance of those questions in their third set of interrogatories gave Fields a new opportunity to properly invoke his Fifth Amendment right against compelled self-incrimination. *See* Fed. R. Civ. P. 26(b)(5)(A), 33(b)(4), 37(a)(3)(B)(ii); *Skinner v. Armet Armored Vehicles, Inc.*, No. 4:12cv45, 2015 WL 540156, at *3 (W.D. Va. Feb. 10, 2015) (citing *N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987)). Plaintiffs do not argue that Fields waived the privilege as it relates to their third set of interrogatories or first set of RFAs. *See* Pls.' Mot. 25–27.

Plaintiffs served Fields with 377 requests for admission.[10] Pls.' Mot. Ex. 9. Fields admitted the truth of most matters, including the facts that, prior to August 12, 2017, he knew that "the uniform of Vanguard America was [a] white polo shirt and khaki pants," *id.* ¶¶ 9–10; that he "participated in" the Unite the Right rally on August 12 while wearing a white polo shirt and khaki pants, *see id.* ¶¶ 7–8, 11–32[11]; and that during this rally he "communicated with members of Vanguard America," *id.* ¶ 147, "engaged in chants promoting or expressing white-supremacist and other racist and anti-Semitic views," *id.* ¶ 5, and "held a shield that displa[y]ed a symbol of Vanguard America," *id.* ¶ 6. Nevertheless, Fields denied that, "prior to the Unite the Right rally that took place on August 12, 2017, [he] communicated with members of Vanguard America," *id.* ¶ 148; that "as of or prior to August 12, 2017, [he was] a member of Vanguard America," *id.* ¶ 124; that he was "aware that violence was planned against counter-protestors at the Unite the Right rally," *id.* ¶ 132; that he personally "planned to commit violence" at the rally, *id.* ¶ 133, or that he "agreed with Vanguard America to commit violence" at the rally, *id.* ¶ 134. He similarly denied that he was "a member of" any other Defendant organization on or before

---

[10] Rule 36(a)(1) allows a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either[,] and the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A)–(B). Put differently, the requesting party can ask another party to admit the truth of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and the responding party can "withhold[] information otherwise discoverable by claiming that the information is privileged," Fed. R. Civ. P. 26(b)(5). *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."); *cf. Varner v. Roane*, No. 5:17cv80, 2018 WL 3244108, at *3 (W.D. Va. July 3, 2018) (explaining the Fifth Amendment privilege against compelled self-incrimination in the context of a plaintiff's refusal to answer deposition questions).

[11] RFAs 11 through 32 asked Fields to admit that he participated in the rally "with" other individual Defendants or "with members of" certain Defendant entities. *See generally id.* ¶¶ 11–32. Fields admitted that he "participated in the rally" and that the other individuals or group members "*also* participated in the rally," but not that he participated in the rally "with" them. *See generally id.* (emphasis added).

August 12, 2017, *id.* ¶¶ 125–31, or that he "agreed with the other defendants in this lawsuit to commit violence at the Unite the Right rally," *id.* ¶ 135.

Fields also admitted facts about his Facebook, Instagram, and Twitter accounts and activity before August 12, 2017, as well as to the authenticity of specific online communications linked to those social media accounts. *See, e.g.*, *id.* ¶¶ 140–42 (admitting that he "liked" and "re-tweeted" Twitter posts about the rally and "communicated on Twitter about the Unite the Right rally" prior to August 12, 2017); *id.* ¶ 144 (admitting that he "communicated on Instagram about the Unite the Right rally" before August 12, 2017); *id.* ¶¶ 190–91, 301–02, 308–09, 321–24, 367, 375–77 (admitting the authenticity of records relating to specific Instagram, Twitter, and Facebook accounts and activity). Fields admitted creating a Discord account sometime in 2017, *see* Pls.' Mot. Ex. 2, ¶ 2, ECF No. 1003-4, but he denied that he "communicated on Discord about the Unite the Right rally" prior to August 12, 2017, Pls.' Mot. Ex. 9, ¶ 145, and that he either "posted" or "viewed posts" on "the Discord server named 'Charlottesville 2.0'" prior to August 13, 2017, *id.* ¶¶ 138–39. In September 2020, Plaintiffs obtained records from the U.S. Department of Justice indicating that Fields registered two separate Discord accounts in July 2017. *See* Pls.' Mot. 11 (citing Pls.' Mot. Ex. 7, ECF No. 1011-2; *id.* Ex. 8, ECF No. 1011-3).

Plaintiffs assert that Fields "refused to respond to 42" of their RFAs on Fifth Amendment grounds. Pls.' Mot. 11. Most of those RFAs relate to facts concerning Fields's conduct, motive, and state of mind on August 12, *see id.* Ex. 9, ¶¶ 38–71, 122–23, 136–37, and whether he "has espoused violence against" African Americans, Jewish people, or "members of racial, ethnic, and religious groups that [he] perceived to be non-white," *see id.* ¶¶ 77–79. For example, Fields declined on Fifth Amendment grounds to admit or deny that he "intentionally drove [his] Dodge Challenger towards," "struck," and "caused injury to" Plaintiffs Sines, Blair, Muñiz, Martin,

Romero, Alvarado, and/or Baker, *id.* ¶¶ 45–51, 54–59, 62–69, and that he was "not in reasonable apprehension of death or great bodily harm" when he drove his car into a crowd of people gathered at the intersection of Fourth Street and East Water Street, *see id.* ¶ 69. He also declined on Fifth Amendment grounds to admit or deny that he acted "because of the actual or perceived race, color, religion, and/or national origin[] of individuals in the crow[d]." *Id.* ¶ 43.

Fields served his responses to the RFAs on August 19, 2020, and his verified responses to the third set of interrogatories on September 17, 2020. *See* Pls.' Mot. 10–11 & n. 2. Plaintiffs filed this motion for Rule 37 sanctions on August 11, 2021. They did not move to compel Fields's answer to any interrogatory in their third set, *see* Fed. R. Civ. P. 37(a)(3)–(4), or "move to determine the sufficiency of an[y] answer or objection" to their RFAs, Fed. R. Civ. P. 36(a)(6), before doing so. A four-week jury trial starts on October 25, 2021.

**

On July 24, 2020, Plaintiffs noticed Fields's deposition to take place via videoconference on August 25, 2020. Pls.' Mot. 11; *see id.* Ex. 10, Dep. Notice (July 24, 2020), ECF No. 1003-12. On August 6, Plaintiffs sought the Court's leave to depose Fields, ECF No. 820, as any party must do before it may depose a person who is confined in prison, Fed. R. Civ. P. 30(a)(2)(B). I granted Plaintiffs' motion because they had not yet had the opportunity to depose Fields by oral questions, and they were entitled to do so under Rule 26(b)(1). Order of Aug. 10, 2020. Plaintiffs' counsel twice agreed to postpone the deposition into early 2021. *See* Pls.' Mot. 12; *id.* Ex. 11, Am. Dep. Notice (served Dec. 16, 2020), ECF No. 1003-13; *id.* Ex. 12, Third Dep. Notice (served Jan. 5, 2021), ECF No. 1003-14. All three notices stated that Fields's "deposition will take place via videoconference, as agreed upon by the parties, . . . . The deposition will be recorded by stenographic means, and will be recorded by video means and through the instant visual display of the testimony." Pls.' Mot. Exs. 10, 11, 12; *see* Fed. R. Civ. P. 30(b)(3)–(4).

On February 22, 2021, Fields's counsel moved to stay Fields's upcoming deposition, citing his concerns that Fields was not mentally competent to prepare for oral examination. *See* Def. Fields's Br. in Supp. Mot. to Stay Dep. 2–3, ECF No. 926-1. Counsel also noted, "Fields will refuse to testify via a video deposition because of a concern that software will be used to manipulate his testimony making his face on the video appear to say things that he is not saying." *Id.* The next day, Plaintiffs' counsel responded that they had canceled the deposition scheduled for February 25, 2021, but that they reserved their "right to seek appropriate sanctions" based on Fields's clear "refus[al] to testify." Pls.' Resp. in Opp'n to Mot. to Stay Dep. 2, ECF No. 927. I denied Fields's motion to stay as moot. Order of Mar. 2, 2021, at 1 ("No deposition is currently scheduled; thus, there is nothing to stay. Moreover, Fields's stated intention to refuse to testify does not provide proper grounds [for] staying his deposition."), ECF No. 928.

On April 14, 2021, Fields's attorney informed Plaintiffs' counsel that he had "received an email from an attorney, John Burns[,] who advised that he has served James Fields with a non-party witness deposition subpoena for [another] case arising from events related to August 12, 2017."[12] Pls.' Mot. Ex. 13, Email from D. Campbell to S. Strauss et al. (Apr. 14, 2021 5:02 PM), ECF No. 1003-15, at 3. Fields's attorney agreed to participate in the deposition via Zoom on April 16. *Id.* A few days later, he reported to Plaintiffs' counsel that Fields was present at the deposition and "converse[d] with counsel for nearly an hour," but that he "refused to be sworn in for his testimony" during "the attempted questioning. He refused to answer nearly all questions and focused on . . . his perceived mistreatment" at the federal prison where he was housed at that

---

[12] Mr. Burns represents an individual defendant in *Gilmore v. Jones*, No. 3:18cv17 (W.D. Va. filed Mar. 13, 2018).

time. *Id.* at 2. Fields also "demand[ed] to be removed from the prison to a medical facility for treatment and that all legal questioning/testimony be in person." *Id.*

## IV. Discussion

Plaintiffs' pending Rule 37 motion seeks to impose several evidentiary sanctions against Fields at the upcoming jury trial. Pls.' Mot. 6. Their requests come under Rule 37(b)(2)(A), which requires a showing that a party violated a prior discovery order before the court can impose appropriate sanctions, and under Rule 37(d)(1)(A), which permits such sanctions if a party failed to appear for a properly noticed deposition. *See id.* at 13–16. Plaintiffs argue that "significant but measured sanctions," *id.* at 24, are necessary to "level the evidentiary playing field and put the Plaintiffs in the position they would have held had Fields participated properly in discovery," *id.* at 7. *See id.* at 19, 23–25, 27–29.

First, Plaintiffs ask the Court to deem established the forty-seven facts listed in Appendix A to their motion. *Id.* at 6 (citing *id.* App'x A ¶¶ 1–47). Plaintiffs explain that Facts 1 through 37 "closely mirror the RFAs that Fields refused to answer" on Fifth Amendment grounds. *See id.* at 27–28 (citing *id.* App'x A ¶¶ 1–37; *id.* Ex. 9 (RFA Nos. 38–71, 74, 77–79, 123, 137)). They further explain that Facts 38 and 39 "ask the Court to deem admitted facts related to Fields's Discord accounts and his refusal to provide Plaintiffs with access to them," while Facts 41 through 47 take as established "facts about which Plaintiffs would have been able to ask Mr. Fields if he had not refused to be deposed." *Id.* at 25 (citing *id.* App'x A ¶¶ 38–39, 41–47).[13] Fact

---

[13] This subset "includes certain factual issues that Plaintiffs must prove at trial to hold [Fields] liable for conspiring to engage in violence against racial or religious minorities and their supporters," *Sines v. Kessler*, 2020 WL 7028710, at *11 (W.D. Va. Nov. 30, 2020) (*Sines II*), as well as for injuries sustained "as a consequence of an overt act committed by the [D]efendants in connection with the conspiracy," *Sines I*, 324 F. Supp. 3d at 780 (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). *See, e.g.*, Pls.' Mot. App'x A ¶ 39 ("Mr. Fields refused to provide Plaintiffs with access to his communications from [his] Discord accounts . . . and he did so knowing that Plaintiffs have alleged Defendants used Discord to plan racially motivated violence at the Unite the Right [r]ally."); *id.* ¶ 41

40 states that "Fields refused to testify at a deposition by Plaintiffs' counsel." *Id.* (citing *id.* App'x A ¶ 40). None of Plaintiffs' proposed facts relate to the interrogatories asking Fields to describe the substance of his communications with law enforcement or other government officials. *See* Pls.' Mot. 27 (arguing that Fields improperly asserted the Fifth Amendment privilege in response to such interrogatories). Rather, Plaintiffs ask the Court to "order an adverse inference jury instruction," *id.* at 29, so that their case is not "'unfairly prejudiced by [Fields's] assertion of the Fifth Amendment privilege,'" *see id.* at 27 (quoting *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633–34 (E.D. Va. 2006)). Plaintiffs did not propose any language for the requested instruction. *See generally id.* at 6–7, 25–28; Pls.' Reply Br. 9–11.

---

("Mr. Fields anticipated that there would be violence at the Unite the Right [r]ally."); *id.* ¶ 42 ("Mr. Fields entered into an agreement with one or more co-conspirators to engage in racially motivated violence in Charlottesville, Virginia on August 11 and 12, 2017."); *id.* ¶ 45 ("It was reasonably foreseeable to Mr. Fields and intended by [him] that co-conspirators would commit acts of racially motivated violence and intimidation on August 12, 2017."); *id.* ¶ 47 ("Mr. Fields committed his car attack in furtherance of the conspiracy to engage in racially motivated violence in Charlottesville, Virginia on August 11 and 12, 2017."). Fields denied many of these (or legally related) facts in his answers to Plaintiffs' RFAs. *See, e.g.*, *id.* Ex. 9 ¶¶ 124, 125–31 (denying that he was "a member of" Vanguard America or of any other Defendant organization on or before August 12, 2017); *id.* ¶¶ 132–34 (denying that he was "aware that violence was planned against counter-protestors at the Unite the Right rally," he "planned to commit violence" at the rally, or he "agreed with Vanguard America" or with any of the "other defendants in this lawsuit to commit violence" at the rally); *id.* ¶¶ 138–39 (denying that he either "posted" or "viewed posts" on "the Discord server named 'Charlottesville 2.0'" before August 13, 2017); *id.* ¶ 145 (denying that he "communicated on Discord about the Unite the Right rally" prior to August 12); *id.* ¶ 148 (denying that "prior to the Unite the Right rally . . . [he] communicated with members of Vanguard America"). Plaintiffs do not point to any reliable, uncontested evidence in the record corroborating these elements of their conspiracy claim. *See* Def. Fields's Br. in Opp'n 5 ("Plaintiffs seek[] sanctions asking this Court to advise the jury of facts that have no basis in fact and remain disproven or unproven despite years of discovery and hundreds of thousands of documents," and that would allow Plaintiffs to "avoid the burden of proof" on the conspiracy claims against Fields and other Defendants). Thus, given that Fields expressly denied these facts in response to Plaintiffs' RFAs, it would not be appropriate to deem them admitted simply because he failed to appear for a properly noticed deposition. *Cf. Custer Battles*, 415 F. Supp. 2d at 634 (explaining that the court may order an appropriately tailored adverse inference when a defendant in a civil action validly invokes the Fifth Amendment privilege in response to specific deposition questions, but that "any adverse inferences must be relevant, reliable, and not unfairly prejudicial, confusing, or cumulative").

Second, Plaintiffs ask the Court to preclude Fields from testifying at trial because "he refused to give testimony during discovery." Pls.' Mot. 6; *see also id.* at 23 (collecting cases). Finally, Plaintiffs seek a multipart jury instruction relating to Fields's alleged misconduct in pretrial discovery. *See id.* at 6. They ask the Court to instruct the jury that:

> (a) Fields intentionally [(i)] withheld documents and information from Plaintiffs, [(ii)] destroyed documents while under an obligation to preserve them, including correspondence between himself and Vanguard America, [(iii)] and refused to testify in a deposition; and (b) that the jury may draw adverse inferences from these facts, including that Fields chose to withhold such information and documents because he was aware they contained evidence that supported Plaintiffs' claims that he conspired to engage in racially-motivated violence at the Unite the Right event.

*Id.* at 6. The "correspondence between [Fields] and Vanguard America" refers to the two Christmas cards that Fields received from Vanguard America sometime after August 12, 2017, which he admits throwing away without notifying Plaintiffs' counsel. *See id.* at 9, 19–20 (citing Mem. Op. of June 11, 2020, at 24–26). Plaintiffs do not identify any other documents that Fields allegedly destroyed or withheld.

A.   *The June 11, 2020 Order*

According to Plaintiffs, "[i]t is undisputed that Fields failed to obey the Court's June 2020 order to cure his deficient written discovery responses by 'fully answer[ing] each of Plaintiffs' interrogatories asking about relevant documents or communications,' and providing Plaintiffs with signed SCA consents[.]" Pls.' Mot. 15 (quoting Mem. Op. of June 11, 2020, at 16).[14] Fields concedes that he failed to provide an SCA consent form for Discord. Def. Fields's

---

[14] In their reply brief, Plaintiffs also assert that Fields violated the June 2020 Order "by refusing . . . to instruct his criminal [defense] attorneys to release his documents." Pls.' Reply Br. 7. Neither that Order nor the accompanying Memorandum Opinion directed Fields to instruct the attorneys representing him in a parallel state-court prosecution to "release his documents" to Plaintiffs' counsel in this case. It merely mentioned Fields's criminal-defense counsel in the context of explaining that "[a]ny responsive document held by" those attorneys "would also be within Fields's control for the purposes of Rule 34, *if* he has the legal right to obtain the document on demand or to authorize counsel to release it." Mem. Op. of June 11, 2020, at 16 (cleaned up) (emphasis added). Later that month, I largely overruled the attorneys' motions to

Br. in Opp'n 3, 6. Accordingly, Rule 37(b)(2) permits the Court to "enter further just orders," Fed. R. Civ. P. 37(b)(2)(A), specifically related to that violation, *Ins. Corp. of Ir.*, 456 U.S. at 707. *See R.W. Int'l Corp.*, 937 F.2d at 15.

Plaintiffs' argument as to why Fields failed to obey the June 11, 2020 Order with respect to written discovery is difficult to follow. For one, Plaintiffs frequently refer to written discovery generally without consistently distinguishing between requests and/or responses served before June 11, 2020, and those served after that date. *See, e.g.*, Pls.' Mot. 7–8 (asserting that Fields "refuses to answer many of the interrogatories or requests for admission issued to him long ago"); *id.* at 10 (arguing, under the heading "Fields Refuses to Comply with the Court's June 2020 Order," that Fields "continued . . . to refuse to answer interrogatories about his communications on Fifth Amendment grounds, including his communications with law enforcement," in Plaintiffs' third set of interrogatories) (citing *id.* Ex. 6, ¶ 3); *id.* at 18 ("Fields refused to explain communications he had with others, including law enforcement, about the [r]ally and the car attack, and he has no basis for asserting a Fifth Amendment privilege as to such communications."); *id.* at 27 ("Fields's continued assertion of the Fifth Amendment in response to Plaintiffs' interrogatories is improper."). The June 11, 2020 Order did direct Fields to fix certain defects in his responses to Plaintiffs' first and second sets of interrogatories that his attorney served in April 2018 and February 2020, respectively. *See* Mem. Op. of June 11, 2020, at 15–16. It did not extend to the first set of RFAs and third set of interrogatories that Plaintiffs

---

quash Plaintiffs' subpoenas duces tecum to produce any relevant, nonprivileged information in Fields's criminal case files. *See generally* Mem. Op. & Order of June 12, 2020, at 3–11, ECF No. 765; Order of June 26, 2020, at 1–5, ECF No. 783. Plaintiffs do not suggest that the attorneys failed to comply with those orders. *See* Pls.' Reply Br. 7–8 ("Plaintiffs received documents that the DOJ, the City of Charlottesville[,] and Fields's defense attorneys collected as evidence to support [criminal] claims that are different from the claims in this case. In fact, Plaintiffs do not even know the extent of what they are missing because *the government* only agreed to produce a select set of documents." (emphasis added)).

served on Fields in late July 2020. Thus, the Order does not authorize *any* sanctions under Rule 37(b)(2)(A) related to Plaintiffs' later-served discovery requests or Fields's answers thereto. *Cf.* Mem. Op. of June 11, 2020, at 18 (concluding that Plaintiffs' first motion for Rule 37(b) sanctions failed to show that either of the court orders they cited actually "required Fields to provide or permit the specific discovery at issue in th[at] motion").

Second, contrary to Plaintiffs' assertion, this pending Rule 37(b) motion is the first time Plaintiffs have "argued that Fields improperly asserted the Fifth Amendment in response to the interrogatories." Pls.' Mot. 27 (citing Pls.' Mot. to Compel & Impose Sanctions 25 n.5). Their previous Rule 37(b) motion simply noted that, even if Fields had not waived the privilege with respect to Plaintiffs' second set of interrogatories, "the Fifth Amendment right against self-incrimination does not exempt a party from civil discovery or sanctions for refusing to provide a complete answer." Pls.' Mot. to Compel & Impose Sanctions 25 n.5. That motion did not ask the Court to address Fields's claims of privilege in response to specific interrogatories in the second set, and, as such, the accompanying Memorandum Opinion & Order did not determine the merits of those claims. *See, e.g.*, Mem. Op. of June 11, 2020, at 7 (noting in the "Background" section that "Fields's Fifth Amendment right against compelled self-incrimination should not have been a significant barrier to civil discovery after he was sentenced" on related convictions in mid-2019). Moreover, Plaintiffs' decision to include questions about Fields's communications with law enforcement and other government officials in their *third* set of interrogatories provided another opportunity for Fields to claim the Fifth Amendment privilege in response to those renewed questions. *See* Fed. R. Civ. P. 26(b)(5)(A), 33(b)(4), 37(a)(3)(B)(ii).

Plaintiffs, appearing to recognize these procedural realities, spend a significant part of their pending Rule 37(b) motion and reply brief urging the Court to evaluate Fields's claims of

privilege in the first instance, *see generally* Pls.' Mot. 25–29; Pls.' Reply Br. 9–15, and to sanction (or remedy) his "refusal" on those grounds to answer certain written discovery. For example, Plaintiffs assert that Fields cannot rely on the Fifth Amendment privilege to avoid answering interrogatories about his communications with law enforcement and other government officials because those third parties "are already in possession of the information" sought. Pls.' Mot. 27 (quoting *Ramos v. Town of E. Hartford*, No. 3:16cv166, 2016 WL 7340282, at *3 (D. Conn. Dec. 19, 2016)). Thus, requiring Fields to describe the substance of these communications would not expose him to any "greater risk of prosecution." *Ramos*, 2016 WL 7340282, at *3. Plaintiffs ask the Court to sanction Fields's failure to answer those interrogatories by giving "an adverse inference jury instruction," Pls.' Mot. 29, but they did not propose any language for this specific instruction. *See generally id.* at 6–7, 25–28; Pls.' Reply Br. 9–11.

Unlike in criminal proceedings, where the judge and prosecutor should not "suggest[] to the jury that it may treat the defendant's silence as substantive evidence of guilt," the prevailing rule in civil actions is that "the Fifth Amendment does not forbid adverse inferences against parties . . . when they refuse to testify in response to probative evidence offered against them," *Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976). *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("[S]ilence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause.") (quoting *Baxter*, 425 U.S. at 319)). Some district courts within the Fourth Circuit follow a two-step inquiry to determine "whether an adverse inference is an appropriate and constitutionally permissible remedy for a civil defendant's assertion of his privilege against [compelled] self-incrimination." *See Custer Battles*, 415 F. Supp. 2d at 632–33. First, the court considers "whether there was a valid basis" for the defendant's refusal to answer a discovery request on Fifth Amendment grounds. *See id.* at 633 & n.7; *see generally Hiibel v.*

19

*Sixth Judicial Dist. Ct. of Nev., Humbolt Cnty.*, 542 U.S. 177, 190 (2004) ("[T]he Fifth Amendment privilege against compulsory self-incrimination protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."). "Illegitimate assertions of the privilege serve no constitutional purpose," and adverse inferences can be used in "appropriate" circumstances "to ensure that courts, parties, and juries are not deprived of relevant evidence and to prevent the mischief and unfairness that might flow from an invalid invocation of the privilege." *Custer Battles*, 415 F. Supp. 2d at 633. Second, even if the privilege was validly invoked, the court must "assess[] whether the requested inferences, which are a form of evidence, comply with the Federal Rules of Evidence. . . . [A]ny adverse inferences must be relevant, reliable, and not unfairly prejudicial, confusing, or cumulative." *Id.* at 634 (citing Fed. R. Evid. 101, 402, 403, 602, 1101). The latter assessment requires the court to evaluate the substance of *both* the underlying evidence originally sought by the moving party and the proposed adverse inference that may be drawn from a party's silence in response that request. *See, e.g.*, *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 464 (D. Md. 2012) (granting plaintiff's request for an adverse inference where defendant's "refusal to answer basic questions about his knowledge corroborate[d] the reasonable inference that he had knowledge of the relevant . . . regulations through his extensive campaign experience"); *Custer Battles*, 415 F. Supp. 2d at 632–36 (evaluating separately movant's requested adverse inferences for witness's refusal to answer six deposition questions and "reduc[ing] the number of requested inferences to those few that relate to the heart of the alleged fraud, and which have the most reliable basis").

Plaintiffs did not request an adverse inference specific to their interrogatories asking Fields to describe the substance of his communications with law enforcement and government

officials on August 12, 2017. Their proposed language for a catch-all adverse-inference jury instruction—i.e., that "Fields intentionally withheld documents and information from Plaintiffs . . . because he was *aware they contained evidence that supported Plaintiffs' claims that he conspired to engage in racially-motivated violence* at the Unite the Right event," Pls.' Mot. 6 (emphasis added)—goes well beyond the information Plaintiffs sought in those interrogatories. Thus, while Fields's invocation of the Fifth Amendment privilege in response to those questions appears contrary to law, *see Ramos*, 2016 WL 7340282, at *3, I find that Plaintiffs' request for an adverse-inference instruction is not an appropriate remedy in this case.

Plaintiffs concede that Fields "validly asserted his Fifth Amendment right" in response to the RFAs while his related state-court convictions are pending appeal. *See* Pls.' Mot. 27–28 (citing *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004)). Nonetheless, they argue— for the first time in this litigation—that "the Court may and should 'level the playing field' by ordering" that their proposed facts be established, *id.* at 28, or that each of those RFAs be "deemed admitted," *id.* (citing Fed. R. Civ. P. 36(a)(6)). Rules 36(a) and 37(a) explicitly allow the party requesting discovery to seek a court ruling as to whether a responding party properly invoked a recognized privilege, including the Fifth Amendment, in response to the requesting party's timely served RFAs and interrogatories. *See* Fed. R. Civ. P. 36(a)(6), 37(a)(3)(B)(iii). Plaintiffs knew about Fields's claim of privilege, at the very latest, when Fields served his responses to the first RFAs and third set of interrogatories in August and September 2020, respectively. Yet, they waited almost a full year—and two months before the jury trial is finally set to begin—to raise the issue in a Rule 37 motion for sanctions. Plaintiffs offer no persuasive explanation why they did not first move for an appropriate order under Rules 36(a) and 37(a), or why they did not bring Fields's allegedly insufficient answers to the Court's attention earlier. *Cf.*

21

*Reed v. Beverly Hills Porsche*, No. 6:17cv59, 2018 WL 10396252, at *2 (W.D. Va. Jan. 26, 2018) (Moon, J.) ("Simply put, the law does not require a trial judge to indulge discovery motions filed after a court-imposed deadline when the party had a fair opportunity to pursue the matter before the deadline.")); Mem. Op. of June 11, 2020, at 19 (declining to "add Fields's name to the ESI Order," which explicitly excluded him, in part because Plaintiffs did not bring "to the Court's attention Fields's purported noncompliance before written discovery closed on February 5, 2020").

Accordingly, Plaintiffs' Rule 37(b) motion will be granted only with respect to Fields's failure to provide an SCA consent form for his Discord accounts. Nonetheless, because Fields concedes that "Plaintiffs can fairly seek a sanction for some of the underlying statements" in RFAs to which he invoked the Fifth Amendment privilege, Def. Fields's Br. in Opp'n 4, I will consider whether an order deeming Fields to have admitted Plaintiffs' corresponding proposed facts would be appropriate in this case, *see* Fed. R. Civ. P. 36(a)(6). *Cf. Custer Battles*, 415 F. Supp. 2d at 633 ("When the [Fifth Amendment] privilege is invoked during discovery, th[e] validity issue is typically resolved via a motion to compel. Although this did not occur here, the parties do not seriously dispute that Morris had a valid basis for asserting the privilege." (footnote omitted)); *Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, No. 2:17cv597, 2018 WL 10470916, at *5 (E.D. Va. Apr. 13, 2018) (explaining that the court could not rule on plaintiff's motion for sanctions, which included a "request to deem facts admitted" where witness invoked the Fifth Amendment privilege, because fact discovery was still open).

B.   *Fields's Deposition*

Plaintiffs' request for evidentiary sanctions related to Fields's deposition comes under Rule 37(b)(2)(A) and Rule 37(d)(3). *See* Pls.' Mot. 14–16 (citing *Barker*, 2010 WL 2650885, at

22

*1–2 (finding that an order granting plaintiff leave to depose incarcerated defendant, entered under Rule 30(a)(2)(B), was an order to provide or permit discovery within the meaning of Rule 37(b)(2)). Rule 37(d) permits a court to impose appropriate sanctions, including those "listed in Rule 37(b)(2)(A)(i)–(vi)," when a party fails, after being served with proper notice, to appear for his own deposition. Fed. R. Civ. P. 37(d)(1)(A)(i), (d)(3). This rule applies either when the person is not present for his properly noticed deposition, Fed. R. Civ. P. 37(d)(1)(A)(i), or when he is present but refuses, without an acceptable excuse, to be examined under oath, *see* Fed. R. Civ. P. 30(b)(3)(A), (c)(1). *See, e.g.*, *Steel v. ARI Mut. Ins. Co.*, Civ. Act. No. 14-27, 2015 WL 4429258, at *1–2, *4 (E.D. La. July 20, 2015) (imposing sanctions under Rule 37(d) where parties agreed to cancel defendant's deposition as futile after his attorney could not contact him); *Naseer v. Racine Cnty.*, Civ. No. 09-C-788, 2011 WL 5180941, at *1 (E.D. Wis. Oct. 28, 2011) (dismissing case under Rule 37(d)(3) where incarcerated plaintiff "refused to be sworn in and/or otherwise provide testimony in a properly noticed videotape deposition") (citing *Collins v. Illinois*, 554 F.3d 693, 694 (7th Cir. 2009)); *Stewart v. Wachowski*, No. CV 03-2873, 2005 WL 6186374, at *5 (C.D. Cal. June 14, 2005) ("[A] party fails to appear for her deposition, within the meaning of Rule 37(d), where, as here, the party unilaterally cancels the deposition immediately prior to the date on which it is noticed."); *Bray v. Memphis State Univ.*, 88 F.R.D. 90, 91 (W.D. Tenn. 1980) (awarding reasonable costs under Rule 37(d)(3) where plaintiff appeared at the designated time, but "refused to be deposed"); *Bourne, Inc. v. Romero*, 23 F.R.D. 292, 296–97 (E.D. La. 1959) (defendants' "physical presence at the site selected [for oral deposition] did not constitute 'appearances' in the sense required by the Federal Rules of Civil Procedure" where defendants "refused to take oath in order that they could be examined properly"); *cf. Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir.

2000) ("In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it."); *LaFluer v. Dollar Tree Stores*, No. 2:12cv363, 2013 WL 12181782, at *7 (E.D. Va. Oct. 7, 2013) (awarding reasonable costs under Rule 37(d)(3) where plaintiff "unilaterally terminated and walked out of the deposition") (citing *Bray*, 88 F.R.D. at 91).

Plaintiffs first served Fields with proper notice of oral deposition on July 24, 2020. Pls.' Mot. Ex. 10. That deposition was to "take place via videoconference, as agreed upon by the parties," and would be recorded by stenographic means and "by video means and through the instant visual display of the testimony." *Id.* On August 10, I granted Plaintiffs' Rule 30(a)(2) motion because they had not yet had the opportunity to depose Fields by oral questions, and they were entitled to do so under Rule 26(b)(1). Plaintiffs' counsel twice agreed to postpone the deposition into early 2021. That January, they served Fields with proper notice of oral deposition to be held on February 25, 2021. The notice again stated that the deposition would "take place via videoconference, as agreed upon by the parties," and would be recorded by both stenographic and "video means and through the instant visual display of the testimony." Pls.' Mot. Ex. 12. Three days beforehand, Fields's counsel moved to stay this deposition based on counsel's concerns that Fields was not mentally competent to prepare for oral examination. *See* Def. Fields's Br. in Supp. Mot. to Stay Dep. 2–3. He also noted, "Fields will refuse to testify via a video deposition because of a concern that software will be used to manipulate his testimony making his face on the video appear to say things that he is not saying." *Id.* Plaintiffs canceled the deposition as futile. I denied Fields's motion to stay as moot, but I made clear that his "stated intention to refuse to testify [did] not provide proper grounds [for] staying his deposition" had Plaintiffs' counsel decided to go forward. Order of Mar. 2, 2021, at 1; *cf. Rowley v. City of N.*

24

*Myrtle Beach*, Civ. No. 4:06-1873, 2008 WL 11348728, at *4 (D.S.C. May 30, 2008) ("There appears to be no limitation on Defendants' right to record Plaintiff's deposition on videotape. A party noticing a deposition has no burden to justify the decision to videotape the deposition." (internal quotation marks omitted)).

Fields suggests that, after I denied his motion to stay, Plaintiffs should have moved to compel his attendance at another deposition before they moved for Rule 37 sanctions. *See* Def. Fields's Br. in Opp'n 4. I disagree. Such sanctions were authorized under the plain text of Rule 37(d)(1)(A)(i) when Fields, after being served with proper notice under Rule 30(b), stated he would refuse to appear via videoconference or testify on video tape at the deposition scheduled for February 25, 2021. *Cf. Steel*, 2015 WL 4429258, at *1–2, *4 (imposing sanctions under Rule 37(d) where the parties agreed to cancel defendant's deposition as futile after his attorney could not contact him); *Naseer*, 2011 WL 5180941, at *1–2 (dismissing case under Rule 37(d) where incarcerated plaintiff "refused to be sworn in and/or otherwise provide testimony in a properly noticed videotape deposition"); *Stewart*, 2005 WL 6186374, at *5 ("[A] party fails to appear for her deposition, within the meaning of Rule 37(d), where, as here, the party unilaterally cancels the deposition immediately prior to the date on which it is noticed."). Plaintiffs' counsel "was authorized to use multiple recording methods, including videography, as long as proper notice was provided," *Naseer*, 2011 WL 5180941, at *2; *see* Fed. R. Civ. P. 30(b)(3), and Fields repeatedly agreed that his deposition could be taken by remote means and videorecorded, *see* Fed. R. Civ. P. 30(b)(3)–(4). Now, Fields has made clear that he will refuse to be sworn and/or testify on recorded video. *See* Pls.' Ex. 13, Email from D. Campbell to S. Strauss et al. (Apr. 14, 2021 5:02 PM), ECF No. 1003-15, at 2–3; Def. Fields's Br. in Supp. Mot. to Stay Dep. 2–3. Making Plaintiffs file an unnecessary motion to compel under these circumstances would have

25

only further forestalled their "ability to get discovery to which they are entitled," Order of Sept. 16, 2020, at 7, ECF No. 877 (Moon, J.). *See* Fed. R. Civ. P. 1 ("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Accordingly, the Court will impose an appropriate sanction under Rule 37(d)(3).[15]

## C.    *Vanguard America's Christmas Cards*

Next, Plaintiffs renew their request for an order instructing the jury that Fields "destroyed documents while under an obligation to preserve them, including correspondence between himself and Vanguard America," and that the jury may draw an adverse inference that Fields destroyed those documents "because he was aware they contained evidence that supported Plaintiffs' claims that he conspired to engage in racially motivated violence at the Unite the Right event." Pls.' Mot. 6. As noted, the broad references to "documents" and "correspondence *between* [Fields] and Vanguard America," *id.* (emphasis added), in this proposed instruction refer to the two Christmas cards that Fields *received from* Vanguard America sometime after August 12, 2017. *See id.* at 9, 19–20 (citing Mem. Op. of June 11, 2020, at 24–26). There is no indication that Fields solicited or responded to the cards he received. *See* Pls.' Mot. to Compel & Impose Sanctions 9; Def. Fields's Br. in Opp'n to Pls.' Mot. to Compel & Impose Sanctions 6, ECF No. 686. Because Fields had a duty to preserve those documents for another party's use in this litigation, however, Plaintiffs may be able to show that their requested adverse-inference

---

[15] I do not find that the order granting Plaintiffs leave to depose Fields, entered under Rule 30(a)(2)(B), was "an order to provide or permit discovery" within the meaning of Rule 37(b)(2)(A). The order merely allowed Plaintiffs' counsel access to a person confined in a penal institution, *see Ashby v. McKenna*, 331 F.3d 1148, 1150 (10th Cir. 2003) (suggesting that the Rule's apparent purpose is to prevent disruptions in prison administration), and did not impose any additional obligation beyond the requirements in Rule 30 for Fields "to submit to deposition," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), or require him to take any other particular action, *Carriage Hill Mgmt.*, 2018 WL 3329588, at *5.

instruction is an appropriate sanction for his failure to do so. *See* Mem. Op. of June 11, 2020, at 22–25; *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015).

I previously found that "Fields's failure to save Vanguard America's cards was negligent, 'perhaps even grossly negligent,' considering that he received them after being arrested for his conduct at the [r]ally, and possibly" even after his attorney responded on his behalf to Plaintiffs' first set of discovery requests in April 2018. *See* Mem. Op. of June 11, 2020, at 24 (quoting *Ackerson v. Rector & Visitors of the Univ. of Va.*, No. 3:17cv11, 2018 WL 3097346, at *9 (W.D. Va. Apr. 11, 2018), *adopted by* 2018 WL 3097334, at *4–6 (W.D. Va. June 22, 2018) (Moon, J.)). In the Fourth Circuit, negligence is not a sufficiently "culpable state of mind" to support an adverse-inference sanction against the person who lost or destroyed relevant evidence. *See id.* at 14, 24 & n.11 (citing *Hodge*, 360 F.3d at 450). Thus, Plaintiffs must demonstrate that the greeting cards were "relevant" insofar as "a reasonable factfinder could conclude that the lost evidence would have supported" their claims, *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008), and that Fields knew the cards were relevant when he threw them away, *see id.* (citing *Hodge*, 360 F.3d at 450–51). *See* Mem. Op. of June 11, 2020, at 22–25.

In June 2020, I denied Plaintiffs' request without prejudice because neither party had produced any concrete "information about [the cards'] message or contents." *See* Mem. Op. of June 11, 2020, at 24–25 ("At this point, all the Court knows about Vanguard America's cards is that Fields received them sometime after August 2017. There's no information about their message or contents, other than Mr. Campbell's suggestion that they probably were not 'hate mail.'"). "While it [was] *possible* the lost Christmas cards would have supported Plaintiffs' claim that Fields conspired with other alleged Vanguard America members to commit racially motivated violence" at Unite the Right, *id.* at 25 (emphasis added), that possibility was not

grounded in any record evidence. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 498 (E.D. Va. 2011) (noting that the movant must establish relevance "by offering probative evidence, not the hyperbole of argument," that the lost materials were "likely to have been favorable to its case"); *Sampson*, 251 F.R.D. at 181 (noting that the movant must show "a reasonable possibility, based on concrete evidence rather than fertile imagination, that access to the lost material would have produced evidence favorable to [its] cause" (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996)). Put differently, Plaintiffs' request for an adverse-inference sanction relies upon speculation and "hyperbole of argument," *E.I. du Pont de Nemours*, 803 F. Supp. 2d at 498, to show that Fields knew the cards from Vanguard America "would 'expose relevant, unfavorable facts' about their alleged association," Mem. Op. of June 11, 2020, at 25 (quoting *Sampson*, 251 F.R.D. at 181). "Thus, even assuming spoliation occurred, the Court [could not] yet conclude Fields threw away the Christmas cards 'for the purpose of depriving [his] adversary of evidence'" favorable to their cause. *Id.* (quoting *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008)). More than a year later, Plaintiffs still have not produced any concrete information that would authorize an adverse-inference instruction under Fourth Circuit caselaw. *See id.* (citing *Sampson*, 251 F.R.D. at 181).

Plaintiffs assert that Fields's failure to appear for his deposition prevented them from securing the evidence they need to show that Vanguard America's greeting cards were relevant, and that Fields destroyed them in bad faith. *See* Pls.' Mot. 19–20 (citing Mem. Op. of Aug. 9, 2019, ECF No. 539; Mem. Op. & Order of Nov. 30, 2020, ECF No. 910; Mem. Op. & Order of Mar. 30, 2021, ECF No. 936). I disagree. First, while Plaintiffs could have asked Fields to answer these specific questions in their RFAs or third set of interrogatories, they did not do so.

Indeed, they asked other questions about the greeting cards, which Fields answered. *See, e.g.*, Pls.' Mot. Ex. 6, ¶ 2 ("Describe in detail the substance of all communications, whether oral or written, between you and any other person or entity concerning the Unite the Right rally. ANSWER: Fields recalls receiving correspondence in jail that can predominately be described as hate mail. Fields did receive a small percentage of supportive letters from various unknown sympathizers or members of organizations that attended or supported the [r]ally. Fields did not know these people prior to Unite the Right. . . . Fields recalls receiving two Christmas cards from Vanguard America while incarcerated."); *id*. Ex. 9, ¶ 150 ("Admit that you received Christmas cards from Vanguard America. RESPONSE: Admitted that Fields received Christmas cards from Vanguard America in prison."); *id.* ¶ 151 ("Admit that, after you became aware of this lawsuit, you destroyed Christmas cards you received from Vanguard America without producing them to Plaintiffs. RESPONSE: Admitted.").

Second, the nature of the greeting cards undercuts Plaintiffs' assertions about their contents. The information before the Court shows that sometime—presumably at least several months—after the events of the Unite the Right rally, an unknown person purporting to be associated with Vanguard America sent unsolicited Christmas cards to Fields, who was incarcerated in a secure facility. Nothing about these circumstances suggests that the contents of the cards, which Fields did not author, were likely to contain any statements from which a reasonable factfinder could conclude that Fields "conspired with other alleged Vanguard America members to commit racially motivated violence" on August 12, 2017. *See* Mem. Op. of June 11, 2020, at 25 (assuming without deciding that the documents were relevant). Accordingly, the Court will deny Plaintiffs' request for an adverse-inference instruction. *See* Pls.' Mot. 6. The

appropriate sanction to fit Fields's refusal to testify at his deposition it to preclude him from testifying in his own defense at trial.

D.      *Appropriate Sanctions*

Fields violated the June 11, 2020 Order insofar as he failed to provide an SCA consent form for his Discord accounts. Thus, the Court may sanction him under Rule 37(b)(2) for this failure, "both as a matter of justice" in this case "and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) (Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Choosing the appropriate sanction, if any, requires me to consider whether Fields acted in bad faith, the kind and degree of prejudice that his failure to obey the June 11 Order caused Plaintiffs, and whether alternative, less severe sanctions would provide an effective remedy and deterrent. *See S. States Rack & Fixture*, 318 F.3d at 597. As noted, "[t]he presence or absence of any one of these factors is generally not decisive," *First Mariner Bank*, 2013 WL 5797381, at *4, because the court has broad discretion to "make whatever disposition is just in light of the facts of the particular case," *id.* (internal quotation marks omitted). The court "is free to consider the full record" and its own familiarity with the case in exercising such discretion. *S. New England Tele. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

In the Fourth Circuit, "[b]ad faith can be established by 'noncompliance [or] haphazard compliance . . . [with] discovery orders.'" *LeCompte v. Manekin Constr., LLC*, 573 B.R. 187, 195 (D. Md.), *aff'd* 706 F. App'x 811 (4th Cir. 2017) (quoting *Mut. Fed. Sav. & Loan*, 872 F.3d at 93)). A "party's failure to provide a 'satisfactory reason,'" *id.* (quoting *Aerodyne Sys. Eng'g, Ltd. v. Heritage Int'l Bank*, 115 F.R.D. 281, 290 (D. Md. 1987)), why he did not comply "is further evidence of bad faith," *id. See Woodbury v. Victory Van Lines*, No. TDC-16-2532, 2019

30

WL 2135649, at *4 (D. Md. May 16, 2019). I issued a "very specific discovery order[]," *Mut. Fed. Sav. & Loan*, 872 F.2d at 93, clearly directing Fields to provide an SCA consent form for any requested social media platform. Fields admits that he did not provide a form for Discord, *see* Def. Fields's Br. in Opp'n 3, 6, and he offers no explanation for that failure. This tends to suggest that Fields disobeyed my order in bad faith. *See Woodbury*, 2019 WL 2135649, at *4.

Even assuming bad faith, however, Plaintiffs have not shown that Fields's failure to provide an SCA consent form allowing Discord to respond to Plaintiffs' subpoena in this case caused the kind and degree of prejudice that would justify their requested evidentiary sanctions under Rule 37(b)(2)(A). *See generally* Mem. Op. of Aug. 9, 2019, at 32–34 (discussing procedural and substantive prejudice). Fields's noncompliance required Plaintiffs to divert some time and resources towards obtaining the relevant information from the U.S. Department of Justice[16], *see* Pls.' Mot. 11 (citing Pls.' Mot. to Compel, ECF No. 816 (July 24, 2020)), which prejudiced their ability complete discovery in a just, speedy, and inexpensive manner, *see* Mem. Op. of Aug. 9, 2019, at 33. Granting Plaintiffs their reasonable expenses caused by Fields's failure to provide the SCA consent form is an appropriate sanction to penalize Fields's disobedience and deter future discovery misconduct. *See, e.g.*, Mem. Op. of Aug. 9, 2019, at 31–34 (citing Fed. R. Civ. P. 37(b)(2)(C)); *Progressive Minerals v. Rashid*, No. 5:07cv108, 2009 WL 2761295, at *4 (N.D. W. Va. Aug. 28, 2009).

---

[16] Plaintiffs assert that "Fields's refusal to give SCA consents . . . forced Plaintiffs into protracted, expensive, and time-consuming litigation with *both* the DOJ and Fields's criminal [defense] counsel—which included multiple hearing[s] and motions litigating objections and motions to quash." Pls.' Reply Br. 8 (emphasis added). The defense attorneys' motions to quash Plaintiffs' subpoenas duces tecum for information contained in Fields's client file had been fully briefed and argued when I issued the relevant discovery order to Fields on June 11, 2020. Thus, Plaintiffs' decision to subpoena defense counsel was not the result of Fields's failure to obey my order directing him to provide SCA consent forms for Discord.

Plaintiffs maintain that Fields's failure to provide an SCA consent form for his Discord accounts also caused substantive prejudice insofar as it "hinder[ed] their ability to put forth the strongest case possible," Pls.' Mot. 19, against Fields and his purported co-conspirators. *See generally id.* at 10–11, 18–22; Pls.' Reply Br. 7–8. For example, they explain Discord was the primary platform that "Defendants" used to plan the Unite the Right rally and that Fields's refusal to give consent renders Plaintiffs "unable to obtain evidence about his accounts from Discord, how he used them, and with whom he communicated." Pls.' Mot. 21. I disagree that Fields's failure caused substantive prejudice to the extent justifying an order deeming established the fact that he "refused to provide Plaintiffs with access to his communications for the Discord accounts . . . knowing that Plaintiffs have alleged Defendants used Discord to plan racially motivated violence," Pls. Mot. 25 (citing *id.* Pls.' Mot. App'x A, ¶ 39). The Court has awarded similar sanctions against other Defendants for whom Plaintiffs (1) specifically alleged had some role in planning the Unite the Right rally, and (2) already had evidence indicating that the Defendant or its officer(s) discussed those plans on Discord. *See generally Sines II*, 2020 WL 7028710, at *3–4, *8, *11–12, *16 (Elliott Kline); *Sines v. Kessler*, 2021 WL 1208924, at *5–7 (W.D. Va. Mar. 30, 2021) (Vanguard America officers Dillon Hopper and Thomas Ryan Rosseau); *Sines v. Kessler*, 2021 WL 4314590, at *2, *8 (W.D. Va. Sept. 22, 2021) (Robert "Azzmador" Ray). Plaintiffs do not allege that Fields was one of the rally's organizers, and Fields has specifically denied that he "communicated on Discord about the Unite the Right rally" prior to August 12, 2017. Pls.' Mot. Ex. 9, ¶ 145. Fields further denied that he either "viewed posts on" or "posted on the Discord server named 'Charlottesville 2.0,'" *id.* ¶¶ 138–39, which was the primary Discord server or channel that Kline and others used to plan the rally.

Moreover, while Plaintiffs have substantial evidence of other Defendants' Discord activity, no evidence presented to date indicates than any of those Defendants or their agents communicated with Fields on Discord. If Fields did use his Discord accounts to communicate about the rally with other Defendants, then one would expect to find such evidence in some other Defendant's messages. Without such evidence, Plaintiffs' speculative belief that additional relevant communications might exist does not justify their requested evidentiary sanction. Their proposed language that Fields refused to provide access to his Discord accounts knowing that Plaintiffs have alleged *other* Defendants used the platform to plan racially motivated violence at Unite the Right also risks "blur[ring] into a single inference," *Custer Battles*, 415 F. Supp. 2d at 636, Fields's discovery intransigency with evidence bearing on the other Defendants' actions.

*

An order prohibiting Fields from testifying in his own defense at trial, *see* Fed. R. Civ. P. 37(b)(2)(A)(ii), is an appropriately tailored sanction for Fields's failure to appear for his properly noticed deposition. *See, e.g.*, *Steel*, 2015 WL 4429258, at *4 (order precluding defendant from testifying at trial was appropriate sanction under Rule 37(d) "because plaintiff was not able to depose him" during discovery); *cf. Montanile v. Botticelli*, No. 1:08cv716, 2009 WL 2378684, at *1, *4–6 (E.D. Va. July 28, 2009) (order precluding plaintiff from testifying at trial, both in support of her own claims and in defense of counterclaims, was appropriate sanction under Rule 37(b) where plaintiff disobeyed court order requiring her to reappear for deposition and to fully answer defendant's interrogatories); *Stewart*, 2005 WL 6186374, at *8 (order precluding plaintiff from testifying was "appropriate sanction for her repeated failure to appear for deposition and make discovery responses"). It is not anticipated that Fields will testify at the jury trial. *See, e.g.*, Def. Fields's Witness List, ECF No. 1042; Pls.' Prelim. Witness List 2–3, ECF No. 1047. *But see*

33

Def. Cantwell's Witness List 1 (listing Fields among the witnesses who Cantwell "may call in his case in main"), ECF No. 1086; Def. Cantwell's Obj. to Pls.' Mot. 1 ("I have a limited number of questions I would like my co-defendant [James Fields] to answer, such as if he ever listened to my podcast, and what went through his mind when Dwayne Dixon pointed an AR-15 at him just before the car crash."), ECF No. 1055. Nonetheless, Fields's failure to appear for his deposition "had the practical effect of keeping [Plaintiffs] in the dark about what []he knew, what []he did, and what []he would testify to [if] called to the stand." *Montanile*, 2009 WL 2378684, at *6. Accordingly, it would be unfair to allow Fields to testify in his defense for the first time at trial.

**

Plaintiffs concede that Fields validly asserted his Fifth Amendment privilege in response to their RFAs while his convictions for first-degree murder and malicious wounding are pending appeal in state court. *See* Pls.' Mot. 27–28 (citing *Kennedy*, 372 F.3d at 691). "[L]ike the assertion of any privilege," Fields's refusal on Fifth Amendment grounds to admit or deny relevant facts sought in these RFAs "stands in stark opposition to the otherwise liberal discovery rules, and undermines to some degree the trial system's capacity to ascertain the truth." *Custer Battles*, 415 F. Supp. 2d at 632 (cleaned up). "And, while there is no doubt that a [party] is entitled to assert the privilege in a civil case, it is also clear that an adverse inference based on a refusal to answer [specific questions] in a civil case is an appropriate remedy as it provides some relief for the civil litigant whose case is unfairly prejudiced" by his adversary's assertion of the Fifth Amendment. *Id.* at 632–33 (cleaned up). Rather than seeking an adverse-inference instruction appropriately tailored to each RFA, however, Plaintiffs primarily seek an order deeming the underlying facts established. Pls.' Mot. 27–29 (citing *id.* App'x A ¶¶ 1–37); *see Custer Battles*, 415 F. Supp. 2d at 632–36 (considering whether each requested adverse inference

34

was relevant, reliable, and not unfairly prejudicial, confusing, or cumulative, and concluding that some of the requested inferences were cumulative or risked misleading the jury to the detriment of all defendants). Plaintiffs do not cite any law, and I can find none, that supports allowing such an order to remedy a civil defendant's valid assertion of the Fifth Amendment privilege. *See* Pls.' Mot. 28 ("[W]hile Fields may assert that right, it should not be 'without consequences' in this civil case. It is plain as a matter of law that the Court should 'level the playing field' by ordering that the facts in Appendix A be established."). Accordingly, the Court will deny Plaintiffs' request to deem these facts established, either as a sanction or as a remedy for Fields's reliance on the Fifth Amendment privilege.

Plaintiffs correctly note that many of their proposed facts are corroborated by, if not directly drawn from, written statements that Fields made under oath when he pleaded guilty to federal hate crimes arising out of the August 12 car attack. Pls.' Mot. 28–29; *see, e.g.*, Pls.' Mot. App'x A ¶ 7 ("Mr. Fields intentionally drove his Dodge Challenger towards a group of pedestrians in Charlottesville, Virginia."); *id.* ¶ 15 ("Mr. Fields intentionally drove his Dodge Challenger into a group of pedestrians in Charlottesville, Virginia."); *id.* ¶ 32 ("Mr. Fields pled guilty to twenty-nine (29) counts of violating 18 U.S.C. § 249(a)(1) because he is, in fact, guilty of what was charged in those counts."). *But see id.* ¶¶ 22–28 (proposed facts that Fields "caused physical and emotional injury" to certain plaintiffs); *id.* ¶¶ 42–47 (proposed facts related to conspiracy claims). Fields concedes that Plaintiffs' list contains facts that are consistent with his plea agreement and that he cannot contradict the truth of those matters at trial in this case. *See* Def. Fields's Br. in Opp'n 5–7. Although this concession does not warrant deeming facts admitted, Plaintiffs and Fields should stipulate to any undisputed facts that will promote a just and more efficient resolution at trial. Fed. R. Civ. P. 1.

## V. Conclusion

For the foregoing reasons, Plaintiffs' second Motion for Sanctions Against Defendant James Alex Fields Jr. under Rule 37 of the Federal Rules of Civil Procedure, ECF No. 1003, is hereby **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiffs' request for an order precluding Fields from testifying at trial is **GRANTED AS MODIFIED** to preclude Fields from testifying in his own defense. Fed. R. Civ. P. 37(d). Whether any other party may call Fields as a witness is a decision reserved to the presiding District Judge.

2. Plaintiffs' request for sanctions related to Fields's failure to obey the June 11, 2020 Order directing him to provide an SCA consent form for his Discord accounts, Fed. R. Civ. P. 37(b)(2), is **GRANTED AS MODIFIED**. Plaintiffs may file a petition setting out their reasonable expenses, including attorney's fees, caused by Fields's failure to obey this directive. Fed. R. Civ. P. 37(b)(2)(C).

3. The Motion is **DENIED WITHOUT PREJUDICE** in all other respects.

   **IT IS SO ORDERED.**

ENTER: October 15, 2021

Joel C. Hoppe
U.S. Magistrate Judge