**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,

Plaintiffs,

v.

JASON KESSLER, et al.,

Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF DARYL DAVIS AND TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE ABOUT JEFFREY SCHOEP'S ALLEGED DE-RADICALIZATION**

Plaintiffs respectfully submit this Motion *in Limine* to preclude Defendants Schoep and National Socialist Movement from presenting the trial testimony of previously undisclosed witness Daryl Davis. Plaintiffs further request that the Court preclude Defendants from introducing impermissible, irrelevant, and unduly prejudicial evidence relating to Jeffrey Schoep's alleged de-radicalization from, and renunciation of, white supremacy and the white supremacist movement.

## PRELIMINARY STATEMENT

Defendant Schoep is a well-known white supremacist and former head of the National Socialist Movement (NSM) who has spent virtually all of his adult life at the vanguard of the white nationalist and neo-nazi movement. He played a central role in planning and executing the racially motivated violence perpetrated against Plaintiffs at Unite the Right in Charlottesville, Virginia. He now seeks to escape accountability for his illegal conduct and any responsibility for the pain and suffering he and his co-defendants have caused. In support of that maneuver, Defendants Schoep

and NSM intend to introduce evidence and advance arguments at trial establishing Schoep's purported renunciation of white supremacy after the events in Charlottesville. This Court should preclude him (and any other Defendants) from doing so, in this case through the testimony of the proposed witness Daryl Davis.

*First*, this Court should preclude Defendant Schoep from presenting the trial testimony of Daryl Davis. As an initial matter, Mr. Davis was not properly disclosed as required by Federal Rule of Civil Procedure 26 and must therefore be excluded as a witness at trial. Moreover, after a meet and confer, Plaintiffs agreed to depose Mr. Davis and learned of his proposed testimony. Mr. Davis's anticipated testimony about Schoep's alleged renunciation of his past and de-radicalization should be excluded because such testimony lacks foundation and would constitute inadmissible hearsay that should not be allowed at trial. Mr. Davis even intends to provide improper expert testimony. For these reasons, Mr. Davis has no relevant admissible testimony to offer and the sideshow of the character testimony he would seek to offer would be prejudicial because it would ask the jury to ignore the law in determining Mr. Schoep's liability in this action.

*Second*, this Court should preclude Defendants from introducing any evidence of, or arguments about, Schoep's alleged renunciation of white supremacy because such evidence is irrelevant, misleading, confusing, and unfairly prejudicial. This case does not turn on Defendants' current support for white supremacy; it turns on the acts that they committed in 2017, when they planned, organized, and participated in a violent, hate-fueled riot that resulted in injury and death. Whether Schoep now sees the error of his ways is up to others, it is wholly irrelevant to any issues in this litigation. Admitting such evidence at trial would risk misleading and confusing the jury, and would invite needless mini-trials on Schoep's current views about white supremacy.

## BACKGROUND

### I. Defendant Jeffrey Schoep

For over a quarter century, Jeffrey Schoep was the leader and self-proclaimed "Commander" of the National Socialist Movement ("NSM" ), one of the nation's largest and most active neo-Nazi organizations. July 21, 2020 Dep. of J. Schoep ("Schoep Dep.") at 17:10-19:5, 35:2-5, 248:7-249:2 (excerpts attached hereto as Exhibit A). Schoep was also a founder of the Nationalist Front ("NF"), an umbrella organization consisting of an alliance of white supremacist and white nationalist groups, including skinhead crews, Klan groups, and neo-Nazi groups. Schoep Dep. 58:18-63:13, 64:25-68:7.

As Commander of NSM and a leader of NF, Schoep played an active role in planning "Unite the Right." Schoep Dep. 141:12-142:11. In the immediate aftermath of Unite the Right, Schoep proudly boasted that he and fellow white supremacists in NSM "battled [their] way thru the streets." *Id.* On August 13, 2017, the day after his co-conspirator and co-Defendant James Fields murdered Heather Heyer, Schoep declared that Unite the Right was "a glorious day for white solidarity." Schoep Dep. Ex. 29, 143:13-18. That same day, he exclaimed that, "It was an Honor to stand with U all in C'Ville this weekend. NSM, NF, TWP, LOS, VA, ECK, CHS, and the rest, true warriors!" [1] Schoep Dep. 139:3-141:9.

After several years of litigation, during which he repeatedly stonewalled Plaintiffs' discovery efforts and destroyed evidence, *see generally* ECF Nos. 689, 741, Schoep purportedly had a change of heart about the white supremacist beliefs that he championed for over 25 years. On March 1, 2019, Schoep issued a press release announcing that he was stepping down as NSM's

[1] The alphabet soup of white supremacist organizations mentioned in Schoep's tweet includes several co-Defendants, including the National Socialist Movement ("NSM"), the Nationalist Front ("NF"), the Traditionalist Worker Party ("TWP"), League of the South ("LOS"), Vanguard America ("VA"), and East Coast Knights ("ECK"). *See* Schoep Dep. 139:9-141:9.

Commander, explaining that it was time to "allow new blood to further [NSM's] interests." NSM Press Release, Mar. 1, 2019 (ECF No. 674-4 at 2). In his announcement, Schoep did not condemn or disavow white supremacy. He did not denounce the actions of any of the "warriors" that fought alongside him in Charlottesville. And he did not express any remorse for his involvement in planning and participating in a riot that left dozens injured, and one dead. To the contrary, Schoep insisted that NSM was "guilty of nothing." ECF No. 674-4 at 3. Schoep also urged his followers to maintain trust in him despite any "confusion" about his actions, as "ongoing legal matters prevent[ed]" him from offering "more thorough" explanations. ECF No. 674-4 at 3. He reassured his followers that his "actions are always done for a reason and [that he] would never purposefully damage the organization [he] . . . spent so many years serving." ECF No. 674-4 at 3. And, as this case edged closer and closer to trial, Schoep founded "Beyond Barriers," a non-profit which he claims helps "people walk away from various forms of extremism." Schoep Dep. 12:4-13:4.

But even as Schoep professed to have put NSM and the white supremacist movement behind him, he remained in steady communication with Burt Colucci—the man who he hand-picked to replace him as NSM's new Commander. ECF No. 674-4 at 3 (assuring NSM members that Colucci had Schoep's "full faith and confidence"). Plaintiffs learned of this only after deposing Colucci, who testified, under oath, that he and Schoep communicated "extensively" with one another about NSM and this litigation, including for months after Schoep's alleged conversion. Dec. 10, 2019, Dep. of B. Colucci at 25:18-30:13 (excerpt attached hereto as Exhibit B).[2]

[2] When Plaintiffs sought these communications, Schoep refused, insisting that the ESI was "irrelevant" because the text messages and calls occurred long after Charlottesville. ECF No. 689 at 7. Despite the existence of a protective order, Schoep also claimed that handing over the ESI might undermine the privacy of individuals with whom he is allegedly working to help them leave "extremism." ECF No. 694 at 13. After rejecting Schoep's protests and recounting his long history of disobeying his discovery obligations, the Court ordered Schoep to produce the new phone he used to communicate with Colucci. ECF No. 741.

## II. Daryl Davis

In recent months, Defendant Schoep has attempted to enlist various witnesses as part of his ongoing gambit to prove his alleged conversion. On September 7, 2021, well over a year after the deadlines to submit expert reports expired, Schoep (along with NSM) filed a pre-trial witness list, disclosing (for the first time) that he planned on calling a man named Rick Eaton to testify at trial as an expert witness. ECF No. 1046. According to Schoep, Mr. Eaton would be offered as "a leading expert on both domestic and international extremist groups and online hate and terrorism," and would serve as "an expert witness to the activities of the defendants and how they operated." *Id.* at 1. Because Defendants had never mentioned Mr. Eaton's name during discovery (or provided an expert report from him), counsel for Plaintiffs e-mailed Mr. Eaton on September 14, 2021 to inquire whether he had been retained by Schoep or any other party to testify as an expert at trial. Declaration of Michael L. Bloch dated October 17, 2021 ¶ 4 ("Bloch Decl.") (attached hereto as Exhibit C). On September 20, Mr. Eaton responded: "No, I have not been retained and have no plans to be involved." *Id.* ¶ 5. Upon receiving that response, counsel for Plaintiffs promptly reached out to counsel for Schoep to notify him of Mr. Eaton's response and confirm whether counsel he would withdraw Mr. Eaton as a witness. *Id.* ¶ 6. On September 22, 2021, counsel for Schoep filed an amended witness list, in which Mr. Eaton was not listed. ECF No.1107.

That should have ended the matter. But Schoep gave it a second try. Schoep's amended witness list replaced Mr. Eaton with a man named Daryl Davis. *Id*. Schoep's amended witness list provided no information about Mr. Davis or his anticipated testimony, nor did the amended witness list clarify whether Mr. Davis was being called as an expert or lay witness at trial. *Id*. On October 1, 2021, Plaintiffs met and conferred with counsel for Schoep, and informed him that they would move to preclude Mr. Davis unless he was made available for a deposition. Declaration of

Jessica Phillips dated October 4, 2021 ¶¶ 3-4 (ECF No. 1152-2). Counsel for Schoep agreed to try to make Mr. Davis available. *Id*. ¶ 5.

In his October 12, 2021 deposition, Mr. Davis averred that he has testimony to offer at trial about three topics: 1) his opinion based on an hour long meeting with Schoep and Mr. Davis's own expertise in race relations and white supremacy that, in 2016 and 2017, Schoep was someone who would consider a "better path" if one was shown to him in the right way; 2) Schoep's beliefs since his public departure from the white supremacist movement in 2019 and who he is today; and 3) the work that Schoep has been doing with Mr. Davis in the years since. October 12, 2021 Deposition of D. Davis ("Davis Dep.") at 10:25-17:14 (excerpts attached hereto as Exhibit D).

## ARGUMENT

### I. The Court Should Preclude the Trial Testimony of Daryl Davis.

#### A. Mr. Davis Was Not Properly Disclosed as Required by Rule 26.

As a threshold matter, the Court should preclude Mr. Davis from testifying at trial because he was not previously disclosed during discovery.[3] The Federal Rules of Civil Procedure provide a clear framework governing the disclosure of witnesses: if a party wishes to present a witness at trial, he must disclose that witness to the other side during discovery. Fed. R. Civ. P. 26(a)(1), (e). If a party fails to timely disclose a witness, then as a general rule, the undisclosed witness not testify at trial. Fed. R. Civ. P. 37.

Here, Schoep patently failed to disclose Mr. Davis as a witness at any point during discovery. Plaintiffs learned of Mr. Davis's identity as a witness only three weeks ago, when Schoep belatedly added his name to an amended witness list (after agreeing to withdraw a different witness who was not previously disclosed). ECF. No. 1107. Accordingly, this Court "must apply

[3] Plaintiffs provide an extended discussion of the witness disclosure requirements and related precedent in their Motion *In Limine* to Exclude Trial Witnesses Not Previously Disclosed in Discovery (ECF No. 1152).

the automatic sanction" of excluding Mr. Davis from testifying at trial, unless Schoep can show that his "procedural default was either 'substantially justified' or is 'harmless.'" *Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 5386882, at *6 (W.D. Va. Oct. 22, 2014) (Moon, J.) (cleaned up); *see also Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021).

In determining whether Schoep can make that showing, the Court considers "five [non-exhaustive] factors": "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Sparks*, 986 F.3d at 343 (internal quotation marks omitted); *see Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Schoep cannot meet his burden, because, on balance, these factors weigh in favor of preclusion.

For starters, the last-minute disclosure of Mr. Davis is not just a surprise, it is an incurable one. Mr. Davis was added to Schoep's witness list only 1 month before trial, in a case that has been pending for 4 years and where third-party fact discovery has been closed for over a year. *See* ECF No. 597. Plaintiffs have had no opportunity to investigate the veracity of his deposition testimony, made only two weeks before trial, or to prepare a rebuttal expert. For similar reasons, allowing Mr. Davis to testimony would be highly disruptive to Plaintiffs' trial preparation and to the trial. *See id.*; *Swimways Corp. & Vap Creative, Ltd. v. Zuru, Inc.*, No. 2:13-CV-334, 2014 WL 12573390, at *4 (E.D. Va. July 10, 2014) (undisclosed evidence, if allowed in, would "disrupt the trial in the form of objections and additional motions in limine"). As this Court has rightly acknowledged, "allowing such an untimely disclosure would be disruptive to the trial . . . because it would condone the strategy of last-minute disclosures, behavior that flies in the face of the

Federal Rules of Civil Procedure." *Slaughter v. Barton*, No. 6:02-CV-060, 2003 WL 24100297, at *3 (W.D. Va. June 25, 2003) (Moon, J.).

Moreover, Schoep has offered no explanation or excuse whatsoever for his blatant disregard for the disclosure rules. *See Webber v. Virmani*, No. 5:18-CV-0042, 2019 WL 1030546, at *3 (W.D. Va. Mar. 4, 2019). Schoep had nearly four years since this case was first filed to disclose the identity of Mr. Davis, and indeed had confirmed Mr. Davis's willingness to appear as a witness as early as six months ago. *See* Davis Dep. at 8:25-9:19. His failure to then disclose Mr. Davis until mere weeks before trial is inexcusable and warrants exclusion of Mr. Davis's trial testimony.

**B. Mr. Davis's Anticipated Testimony about Mr. Schoep's State of Mind at the time of Unite the Right Is Inadmissible.**

At his deposition, Mr. Davis said that he would offer the opinion that, in 2016 and 2017, Schoep was someone who would have considered a "better path" if one was shown to him in the right way. Davis Dep. 16:24-17:14. To the extent that Mr. Davis would testify about the events that occurred on August 11 and 12 and Mr. Schoep's state of mind at the time, such testimony would be inadmissible. The testimony that Mr. Schoep could have considered a different path is irrelevant to any issue in the case. Further, prior to August 2017, Mr. Davis' communications with Schoep consisted of a one hour meeting in 2016, plus a few minutes before and after that meeting with Schoep. Davis Dep. 51:2-8; 57:2-7. Mr. Davis did not speak to Schoep again until later 2017 or 2018. Davis Dep 42:12-19. Mr. Davis also was not present during Unite the Right and has no firsthand knowledge about any of the events that took place on August 11 and 12, 2017. Davis Dep. at 20:24-22:14, 26:24-27:9. [4]

[4], Plaintiffs' questioning of Mr. Davis regarding his knowledge of Unite the Right and what he has learned from Defendants was interrupted by inappropriate objections from Mr. ReBrook, counsel for Schoep and NSM. Davis Dep.

Mr. Davis has acknowledged that his knowledge of Unite the Right is limited to what he learned from media and other public sources, and from speaking in later years with Schoep and other Defendants. *Id*. at 17:3-13. As such, any testimony from Mr. Davis regarding those events would constitute inadmissible hearsay. Fed. R. Evid. 802. Nor is there any foundation on which Mr. Davis could opine on Mr. Schoep's state of mind at the time of Unite the Right, based only on a one hour meeting in 2016.

At his deposition, Mr. Davis also indicated that he considers himself an expert in the area of white supremacy and that he would be able to provide testimony about Schoep's past frame of mind, including in the years before they met, based on his expertise in race relations. Davis Dep. 13:5-14:12. Mr. Davis has not been designated as an expert witness, but to the extent Mr. Davis is being offered as an *expert* witness, Rule 26 requires that a party disclose the identity of any expert witness "at the times and in the sequence that the Court requires." Fed. R. Civ. P. 26(a)(2)(D). Here, the latest deadline for submission of expert reports was July 13, 2020. *See* ECF. No. 597. In addition, Rule 26 further requires expert witnesses to provide "a written report—prepared and signed by the witness" containing certain information specified in the Rule. Fed. R. Civ. P. 26(a)(2)(B). Because Schoep contravened both these rules, Mr. Davis cannot testify as an expert. *Slaughter*, 2003 WL 24100297, at *3 (excluding experts because disclosures were made "nearly two months after the deadline"); *Scott*, 2014 WL 5386882, at *7 (three and a half months after deadline).

24:24-25:8 ("I'd also appreciate it if you didn't make me explain what I'm saying since you absolutely know what I'm fucking saying.")

### C. Mr. Davis's Anticipated Testimony about Schoep's Alleged De-radicalization Is Irrelevant, Misleading, and Unduly Prejudicial.

Mr. Davis has stated that he expects to be a "character witness" for Mr. Schoep, and will testify regarding Schoep's purported renunciation of white supremacy. Davis Dep. at 8:25-9:5, 10:25-12:2. As explained further below, any evidence related to Schoep's after-the-fact conversion (including Mr. Davis's testimony) is not relevant, risks misleading and confusing the jury, and would derail the trial by instigating mini-trials on collateral issues.

## II. The Court Should Preclude Evidence about the Alleged De-radicalization of Schoep.

### A. Evidence of the Defendants' Alleged "Conversion" Is Irrelevant.

Evidence of Schoep's alleged de-radicalization after 2017 is entirely irrelevant to his liability for his conduct leading to the events of August 2017. The alleged renunciation occurred more than a year and a half *after* the events at issue in this case and therefore have no probative value. Moreover, evidence about a Defendant' change of heart neither *disproves* any of the elements related to Plaintiffs' claims nor *proves* any of fact relevant to Defendants' affirmative defenses. Even accepting the dubious assertion that Schoep changed his ways and beliefs years after the fact, that would not have any bearing on their motive, state of mind, or purpose when he participated in the planning and execution of Defendants' violent conspiracy in 2017.

### B. Evidence of Defendants' Alleged Conversions Would Invite Mini-Trials on Collateral Issues, Confuse and Mislead the Jury, and Unfairly Prejudice Plaintiffs.

Applying Fed. R. Evid. 403, courts have excluded even relevant evidence when it has the potential to cause the jury to render a decision on the basis of facts unrelated to the issues before it, *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990); when it might cause the jury to decide an issue based on an improper basis, *United States v. Blackwood*, 913 F.2d 139, 144 (4th Cir. 1990); *Sines v. Kessler*, No. 3:17-cv-00072, 2021 U.S. Dist. LEXIS 72553, at *18 (W.D. Va.

Apr. 15, 2021); or when its introduction risks derailing the case into mini-trials on collateral issues. *United States v. Myers*, 589 F.3d 117, 124 (4th Cir. 2009); *United States v. Rubio*, 87 F.3d 1309 (4th Cir. 1996) (table affirmance).

Here the proposed evidence risks misleading and confusing the jury. As the Court has explained many times, Schoep and his co-defendants are not on trial for their advocacy of, or involvement in, the white supremacist movement; instead, they are on trial for conspiring to commit violence and engaging in other acts which "transcend the bounds" of constitutionally protected expression or activity. *Sines v. Kessler*, No. 3:17-cv-00072, 2021 U.S. Dist. LEXIS 168130, at *97 (W.D. Va. Sep. 3, 2021). The Court should not be permit Schoep to "misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994). Nor should the Court allow the Defendants to coax the jury into basing its "decision on an improper basis," *Sines*, 2021 U.S. Dist. LEXIS 72553, at *18, such as sympathy or compassion for the Defendants' alleged renunciation of white supremacy.

In addition, evidence of Schoep's alleged departure from white supremacy would invite wasteful, irrelevant, and confusing "mini-trials" on his current beliefs. If Schoep attempts to invoke his alleged disavowal of white supremacy as a potential defense, Plaintiffs would be required to expend time and energy litigating an extraneous sideshow. Forcing Plaintiffs to divert the jury's focus in this manner would be especially inefficient given that there is every reason to doubt the sincerity of Schoep's opportunistic about-face. For instance, despite his professed renunciation of white supremacy, Schoep assured his NSM members—with a wink and a nod—that even if his public actions might cause "a lot of confusion," they should know that his "actions are always done for a reason" and that he "would never purposefully damage the organization [he] . . . spent so many years serving." ECF No. 674-4 at 3. That statement has proven prophetic of his

behavior in this litigation. Even as he publicly claimed to have renounced white supremacy, Schoep maintained close contact with his hand-picked successor at NSM, engaged in a campaign of obstructionism during discovery, and insisted that NSM and its members were "guilty of nothing" despite the violence it unleashed at Charlottesville.

## CONCLUSION

For these reasons, the Court should preclude Defendants from introducing any evidence relating to Schoep's alleged de-radicalization from, and renunciation of, white supremacy, and should preclude the trial testimony of Daryl Davis.

Dated: October 17, 2021

Respectfully submitted,

*/s/ William A. Isaacson*
William A. Isaacson (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice* pending)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
mbloch@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Agbeko Petty (*pro hac vice*)
Giovanni Sanchez (*pro hac vice*)
Matteo Godi (*pro hac vice* pending)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
jphillips@paulweiss.com
kdunn@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
apetty@paulweiss.com
gsanchez@paulweiss.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
Allegra K. Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary J. Anderson (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, Matthew Heimbach, Matthew Parrott, Traditionalist Worker Party, National Socialist Movement, and Nationalist Front*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, Pennsylvania 15216
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Matthew Heimbach, and Traditionalist Worker Party*

      I hereby certify that on October 17, 2021, I also served the following non-ECF participants via mail or electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

*and*

Christopher Cantwell 00991-509
Grady County Law Enforcement Center
215 N. 3rd St.
Chickasha, OK 73018

Robert "Azzmador" Ray
azzmador@gmail.com

Dated: October 17, 2021

*/s/ William A. Issacson*

William A. Isaacson (*pro hac vice*)

PAUL WEISS RIFKIND WHARTON & GARRISON LLP

*Counsel for Plaintiffs*