# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,

                               Plaintiffs,

v.

JASON KESSLER, et al.,

                               Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

## [PROPOSED] INTEGRATED PRETRIAL ORDER

Come now the Plaintiffs, along with Defendants Jason Kessler, Nathan Damigo, Identity Evropa, Michael Hill, Michael Tubbs, and League of the South, pursuant to the Court's Amended Pretrial Order (ECF No. 991), and jointly submit this Integrated Pretrial Order.[1]

## I.  CONTESTED ISSUES OF LAW THAT REQUIRE A RULING BEFORE TRIAL.

### A.  Jury Instructions.

The parties have submitted differing jury instructions.  *See* ECF Nos. 1200, 1201, 1209, 1222, 1224.  Plaintiffs also request the Court give the preliminary jury instructions identified in Plaintiffs' proposed jury instructions.  *See* ECF No. 1224, pp. 3-23.

---

[1] Defendants James Fields, Matthew Heimbach, Matthew Parrott, Traditionalist Worker Party, and Richard Spencer have submitted the statements noted below.  Plaintiffs did not receive a response from Defendants National Socialist Movement, Nationalist Front, Jeff Schoep, Robert Ray, Vanguard America, Elliott Kline, or Christopher Cantwell with respect to this filing.

**B.     Motions by Plaintiffs.**

1.      Whether the Court should impose sanctions against Defendant Matthew Heimbach. ECF Nos. 457; 463; 469; 475; 527; 528; 529; 645; 649; 679; 1006; 1054; 1079; 1083; 1087.

2.      Whether the Court should deem authentic certain photographs and videos depicting Defendant Robert "Azzmador" Ray.  ECF No. 1149.

3.      Whether the Court should exclude several of Defendant Christopher Cantwell's trial witnesses not previously disclosed in discovery.  ECF No. 1152.

4.      Whether the Court should de-designate certain documents designated as Confidential or Highly Confidential.  ECF No. 1215

5.      Whether the Court should dismiss Count IV of the Second Amended Complaint. ECF No. 1238.

6.      Whether the Court should preclude the testimony of Daryl Davis and evidence about Defendant Jeffrey Schoep's alleged de-radicalization.  ECF No. 1242.

7.      Whether the Court should preclude argumentative file names and allow parties to exceed the file size limitation of 50MB.  ECF No. 1243.

8.      Whether the Court should modify the order regarding Plaintiffs' motion for sanctions against Defendant James Fields.  (Forthcoming)

**C.     Motions by Defendants Hill, Tubb, and League of the South.**

9.      Whether the Court should admit or preclude evidence of Defendant Michael Tubbs's conviction.  ECF Nos. 1147; 1213; 1214.

10.     Whether the Court should take judicial notice of Defendant Jason Kessler's permit and associated facts.  ECF Nos. 1147; 1213; 1214.

D.     **Motions by Defendants Heimbach, Parrott, and Traditionalist Worker Party.**

11.     Whether the Court should issue a protective order restricting extrajudicial statements by parties, their counsel, and any organization funding this litigation. ECF No. 1114; 1211.

E.     **Motions by Defendant Cantwell.**

12.     Whether to sustain or overrule Defendant Cantwell's objections to Plaintiffs' witness list.  ECF No. 1097; 1185.

13.     Whether the Court should determine that animus against Antifa and other members of the progressive left is not a form of "class based invidiously discriminatory animus" prohibited by 42 U.S.C. § 1985(3). ECF Nos. 1066; 1108; 1134; 1185.

14.     Whether the Court should bar Plaintiffs from introducing evidence about the Holocaust as irrelevant and inflammatory. ECF Nos. 1157; 1199.

15.     Whether the Court should extend pretrial and trial schedules by twelve months and reopen discovery.  ECF Nos. 1162; 1196; 1110; 1113.

16.     Whether the Court should permit Defendant Cantwell court clothes and bar evidence, testimony, or argument about his current incarceration.  ECF Nos. 1124; 1161; 1193.

17.     Whether the Court should exclude expert testimony that is undisclosed or derived from undisclosed and hearsay material.  ECF Nos. 1160; 1199.

18.     Whether the Court should limit the testimony of Plaintiffs' experts, Peter Simi and Kathleen Blee, and whether the Court should bar argument regarding Defendants' animus towards certain groups as irrelevant and intended to confuse and mislead the jury. ECF Nos. 1158; 1199.

19.     Whether the Court should allow Defendant Cantwell to introduce statements against interest of unavailable witness, Emily Gorcenski.  ECF Nos. 1132; 1217.

20.     Whether the Court should determine that there is no private right of action for conspiracy to violate a Virginia state statute and therefore bar Plaintiffs from making this argument, and whether Plaintiffs have pled a valid claim for conspiracy to commit false imprisonment.  ECF Nos. 1123; 1192

21.     Whether the Court should allow Defendant Cantwell to introduce statements against interest of unavailable witness Dwayne Dixon. ECF Nos. 1119; 1212.

22.     Whether the Court should exclude deposition testimony of Robert Isaacs "Baker," Bradley Griffin, Dillon "Hopper" Izarry, and Thomas Rosseau. ECF Nos. 1102; 1103; 1150; 1108; 1134; 1185.

23.     Whether the Court should sanction Plaintiffs for failing to serve Defendant Christopher Cantwell with filings, failing to timely disclose the "Discord Production," and whether the Court should sanction Plaintiff Thomas Baker for failure to make initial disclosures. ECF Nos. 1096; 1098; 1099; 1108; 1134; 1185.

24.     Whether the Court should exclude all evidence of Defendants' perceived biases against those who identify as "Jews." ECF Nos. 1088, 1108; 1134; 1185.

25.     Whether the Court should determine that bias against those who identify as "Jews" is not a form of "class based invidiously discriminatory animus" prohibited by 42 U.S.C. § 1985(3). ECF Nos. 1085; 1108; 1134; 1185

26.     Whether the Court should compel co-Defendants to provide Defendant Christopher Cantwell with their Rule 26(a) disclosures, whether the court should compel Plaintiffs to disclose the transcript of the deposition of Defendant Christopher Cantwell, and whether the court should compel Plaintiffs to provide paper copies of all filings and discovery previously provided in electronic format. ECF Nos. 1084, 1108; 1134; 1185

27.    Whether the Court should determine that simple assault, simple battery, and other any other act incapable of causing bodily harm but involving the use of force is not a "badge or incident of slavery" proscribed by the Thirteenth Amendment to the United States Constitution. ECF Nos. 1077; 1108; 1134; 1185.

28.    Whether the Court should grant Defendant Christopher Cantwell's motion for leave to file instanter. ECF Nos. 1062; 1108; 1134; 1185.

29.    Whether the Court should make a determination that Plaintiffs claim arose ex turpi causa and thus are barred in pari delicto. ECF Nos. 1090; 1108; 1134; 1185

30.    Whether the Court should grant Defendant Christopher Cantwell's motion for leave to supplement his exhibit list and disclose transcript of August 11, 2017 leadership meeting. ECF Nos. 1126; 1187.

31.    Whether the Court should sustain Defendant Christopher Cantwell's objections to the facts to be taken as established against Defendant Robert "Azzmador" Ray as outlined in Magistrate Judge Hoppe's Opinion and Order regarding Evidentiary Sanctions Against Robert "Azzmador" Ray. ECF Nos. 1028, 1106, 1120.

## II.    ESSENTIAL ELEMENTS A PARTY MUST PROVE TO ESTABLISH ANY CLAIMS AND RELIEF SOUGHT.

Plaintiffs' Statement.

The elements of Plaintiffs' claims are as follows:

**Count I:  Violation of 42 U.S.C. § 1985(3).**  All Plaintiffs assert a claim for violations of 42 U.S.C. § 1985(3) against all Defendants; except that Plaintiff Baker asserts this claim only against Defendants Kessler, Spencer, Cantwell, Fields, Vanguard America, Ray, Damigo, Kline, Identity Evropa, Heimbach, Parrott, Traditionalist Worker Party, Hill, Tubbs, League of the South, Schoep, National Socialist Movement, and Nationalist Front.  To prove their claim, Plaintiffs must

prove:  (1) Defendants conspired with one or more persons; (2) the persons involved in that conspiracy were motivated, in whole or part, by animus against Black or Jewish individuals, or motivated, in whole or part, because Plaintiffs were advocates or supporters of Black and Jewish individuals; (3) the purpose of the conspiracy was to engage in racially motivated violence;  (4) at least one person involved in the conspiracy took an overt act in furtherance of the conspiracy; and (5) as a result of the conspiracy, Plaintiffs were injured.

  **Count II:  Violation of 42 U.S.C. § 1986.**  All Plaintiffs assert a claim for violations of 42 U.S.C. § 1986 against all Defendants; except that Plaintiff Baker asserts this claim only against Defendants Kessler, Spencer, Cantwell, Fields, Vanguard America, Ray, Damigo, Kline, Identity Evropa, Heimbach, Parrott, Traditionalist Worker Party, Hill, Tubbs, League of the South, Schoep, National Socialist Movement, and Nationalist Front.  To prove their claim, Plaintiffs must prove: (1) the existence of a Section 1985(3) conspiracy; (2) that the Defendant knew about the wrongs conspired to be done in the Section 1985(3) conspiracy, even if he was not involved with the conspiracy; (3) that the Defendant had the power to prevent or aid in preventing the wrongs committed as part of such conspiracy; and (4) that the Defendant either neglected or refused to prevent such wrongs.

  **Count III:  Civil Conspiracy.**  All Plaintiffs assert a claim for civil conspiracy against all Defendants; except that Plaintiff Baker asserts this claim only against Defendants Kessler, Spencer, Cantwell, Fields, Vanguard America, Ray, Damigo, Kline, Identity Evropa, Heimbach, Parrott, Traditionalist Worker Party, Hill, Tubbs, League of the South, Schoep, National Socialist Movement, and Nationalist Front.  To prove their claim, Plaintiffs must prove Defendants conspired with one or more persons to commit one or more of the following unlawful acts:  (1) subjecting persons to acts of intimidation or harassment, motivated by racial, religious, or ethnic

animosity in violation of Virginia Code § 8.01-42.1; (2) directing violence at another person, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1; (3) directing vandalism at a person's real or personal property, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1; (4) committing an unwanted touching that was neither consented to, excused, or justified (battery); (5) engaging in an overt act intended to inflict bodily harm, or intended to place the victim in fear or apprehension of bodily harm (assault); or (6) causing a reasonable apprehension that force will be used unless a person willingly submits and causing him to submit to the extent that he is denied freedom of action (false imprisonment).

Count IV:  **Negligence per se.**  Plaintiffs filed a motion to voluntarily dismiss Count IV. *See* ECF No. 1238.

**Count V:  Violation of Va. Code § 8.01-42.1.**  Plaintiffs Wispelwey, Muñiz, Willis, Sines, Blair, Martin, and Romero bring a claim against Defendants Fields, Kline, Spencer, Kessler, Ray, Cantwell, and Invictus under Virginia Code § 8.01-42.1.  Plaintiff Alvarado brings the same claim against the same Defendants, other than Defendant Fields.  To prove their claim, Plaintiffs must prove: (1) Defendants subjected them to acts of intimidation and/or harassment, violence directed at their persons, and/or vandalism directed against their property; and (2) Defendants' actions were motivated by racial, religious, or ethnic animosity.

**Count VI:  Assault and Battery.**  Plaintiffs Muñiz, Sines, Blair, Martin, Baker, and Romero bring a claim for assault and battery under Virginia state law against Defendant Fields. To prove their claim, Plaintiffs must prove:  (1) Defendant Fields engaged in an act intended to inflict bodily harm on Plaintiffs; (2) as a result of Defendant Fields's actions, Plaintiffs experienced apprehension of harmful and/or offensive bodily contact or experienced such contact; and (3) any bodily contact that Plaintiffs experienced was not consented to, justified, or excused.

**Count VII:  Intentional Infliction of Emotional Distress.**  Plaintiffs Muñiz, Sines, Blair, Martin, Baker, and Romero bring a claim for intentional infliction of emotional distress against Defendant Fields.   To prove their claim, Plaintiffs must prove:  (1) Defendant Fields had the specific purpose of inflicting emotional distress upon the plaintiff; intended specific conduct and knew, or should have known that his conduct would likely result in emotional distress; (2) Defendant Fields's conduct was outrageous or intolerable in that it offends generally accepted standards of decency and morality; (3) that the Plaintiffs suffered emotional distress so severe that no reasonable person could be expected to endure it; and (4) that the Plaintiffs' emotional distress was proximately caused by the defendant's conduct.

**Damages and Other Relief.**  To recover compensatory damages, Plaintiffs must prove their compensatory damages were caused by Defendants, and sufficient facts and circumstances to make a reasonable estimate of those damages.  To recover punitive damages, Plaintiffs must prove the acts or omissions of a Defendant were done maliciously or wantonly.  Plaintiffs also seek a declaratory judgment and injunctive relief.

Statement of Defendants Jason Kessler, Nathan Damigo, and Identity Evropa.

Defendants absolutely and without exception deny any legal responsibility for the injuries claimed by the Plaintiffs.

Defendants deny there was any legally wrongful conspiracy of any kind.

Defendants deny there was any individual wrongful conduct of any kind.

Identity Evropa denies it authorized or commanded any wrongful conduct of any kind by any of its members either explicitly, implicitly, apparently, or by ratification.

Statement of Defendants Michael Hill, Michael Tubbs, and League of the South.

Defendants absolutely and without exception deny any legal responsibility for the injuries claimed by the Plaintiffs.

Defendants deny there was any legally wrongful conspiracy of any kind.

Defendants deny there was any individual wrongful conduct of any kind.

League of the South denies it authorized or commanded any wrongful conduct of any kind by any of its members either explicitly, implicitly, apparently, or by ratification.

Statement of Defendants Matthew Heimbach, Matthew Parrott, and Traditionalist Worker Party.

Defendants absolutely and without exception deny any legal responsibility for the injuries claimed by Plaintiffs.

Defendants deny that they participated in any wrongful conspiracy of any kind.

Defendants deny there was any individual wrongful conduct of any kind.

Traditionalist Worker Party denies it authorized or commanded any wrongful conduct of any kind by any of its members either explicitly, implicitly, apparently, or by ratification.

Statement of Defendant Richard Spencer.

Mr. Spencer absolutely and without exception denies any legal responsibility for the injuries claimed by the Plaintiffs.

Mr. Spencer denies there was any legally wrongful conspiracy of any kind.

Mr. Spencer dies there was any individual wrongful conduct of any kind.

## C.   ESSENTIAL ELEMENTS A PARTY MUST PROVE TO ESTABLISH ANY DEFENSES.

Plaintiffs' Statement.

The following affirmative defenses are at issue:

**Self Defense.**  Nathan Damigo, Identity Evropa, Jason Kessler, Matthew Parrott, and Traditionalist Worker Party asserted self-defense as an affirmative defense.  To prove self-defense, Defendants bear the burden of proving by a preponderance of evidence that:  (1) a Plaintiff, unprovoked, threatened the Defendant with assault or battery such that the Defendant reasonably believed that the Plaintiff was going to inflict bodily injury on him; (2) the Defendant, in order to avoid bodily injury, used force; (3) the amount of force the Defendant used was no greater than the amount he believed was necessary to prevent bodily injury; and (4) the amount of force the Defendant used was no greater than the amount or means a reasonable person would have used in like circumstances in order to prevent bodily injury.

## D.   THE MATERIAL FACTS AND THEORIES OF LIABILITY AND DEFENSE.

Plaintiffs' Statement.

The following is a summary of the primary material facts and theories that, while not exhaustive, encompass the primary facts that Plaintiffs intend to prove against each Defendant:

**Jason Kessler.**  Jason Kessler believes the United States should be reserved exclusively for white people, and openly calls for African Americans, Jews, and members of other racial, ethnic, and religious minorities—including their supporters—to be expelled from the United States.

Kessler was active in the Alt-Right movement and attended multiple rallies, including a "Charlottesville 1.0" rally in May 2017.  After meeting several prominent white nationalist and neo-Nazi leaders at these events, Kessler organized the Unite the Right rally ("Unite the Right"),

in Charlottesville, Virginia on August 11-12, 2017 with co-Defendants. Defendants' shared objective for Unite the Right was to engage in and incite violence against racial and religious minorities, and their supporters.

While Kessler claimed Unite the Right was about the removal of a Robert E. Lee statute, his true intention was to take the violence that occurred at other Alt-Right rallies and bring it to Charlottesville. He used social media (including Discord, Twitter, and Facebook) to promote and organize Unite the Right and attract attendees who he knew would be willing to commit violence to further his goal, and he encouraged white supremacists and neo-Nazis to join Unite the Right and bring objects like flag poles that could be used as weapons.

On August 11, 2017, Kessler, along with his co-Defendants, led a column of torch-wielding white nationalists and neo-Nazis through the University of Virginia campus to the statue of Thomas Jefferson in front of the campus Rotunda. Once there, he and other Defendants unleashed hundreds of their followers on a small group of counter-protesters who had assembled to peacefully counter-protest the white supremacists. The attack resulted in multiple injuries to the counter-protesters, many of whom were hit with fists, pepper spray, and lit torches.

Thrilled by this initial confrontation, Kessler attended Unite the Right on August 12 and helped organize the assembly of protesters in downtown Charlottesville. The violence on that day unfolded exactly as he and his co-Defendants had planned. After Unite the Right, Kessler ratified the violence, including James Fields's car attack that killed one women and injured dozens of others, including several Plaintiffs.

**Vanguard America.** Vanguard America ("Vanguard") is a fascist, white nationalist organization, formed to combat the alleged influence of a "rootless group of international Jews"

and their "liberal Shabbos goyim." Members of Vanguard believe the United States is reserved only for white persons.

In 2017, Vanguard participated in the planning and promotion of Unite the Right, both among themselves and with other co-Defendants, for example, by coordinating logistics, planning speeches, and arranging for transportation. Much of Vanguard's planning was done using an online messaging service, Discord, which Vanguard specifically instructed its members to use anonymously. Vanguard openly discussed and advocated violence at Unite the Right, and expected violence to occur.

Vanguard planned and attended a torchlit march on August 11, 2017, in which many of the Defendants marched through the University of Virginia campus carrying torches. Vanguard also planned and participated in Unite the Right on August 12, 2017, and met with other Defendants to coordinate their march into Lee Park. Vanguard engaged in violence at Unite the Right, carrying weapons, chanting racist and anti-Semitic slogans such as "Jews will not replace us" and "Blood and Soil." That day, one of Vanguard's co-conspirators, Defendant James Fields, who shared the ideals and goals of Vanguard and marched and chanted with them earlier in the day, advanced the objectives of the conspiracy by driving his vehicle into a crowd of peaceful counter protesters, killing Heather Heyer and grievously injuring multiple Plaintiffs.

Following Unite the Right, Vanguard's members openly celebrated the day's violence, attended an after-party, and cheered and defended Fields's attack on innocent counter-protesters.

**James Fields.** James Fields believes that white people are superior to other races and peoples, and supports the social and racial policies of Adolf Hitler and Nazi-era Germany, including the Holocaust. He has espoused violence against African Americans, Jewish people,

and members of other racial, ethnic, and religious groups he perceived to be non-white—including their supporters—making clear that they are enemies against whom violence should be brought.

Prior to August 11, 2017, Fields engaged in, advocated, and incited hatred and violent action against religious and racial minorities and their supporters; coordinated and communicated with others, including initial organizers of Unite the Right, for the purpose of coordinating and promoting the event; and, along with his co-Defendants, Fields planned violence and expected violence to occur at Unite the Right.

On August 11, Fields left Ohio, driving a Dodge Challenger, and arrived in Charlottesville in the early morning of August 12, 2017. During the day on August 12, Fields attended Unite the Right, and joined Vanguard (wearing the Vanguard uniform and carrying a Vanguard shield) and other Defendants and groups espousing and chanting white supremacist and anti-Semitic and racist views, slogans, and insults designed to intimidate peaceful counter-protesters.

That afternoon, Fields returned to his Dodge Challenger, and drove slowly down Fourth Street toward a racially and ethnically diverse crowd that had gathered peacefully at the intersection of Fourth and Water Streets. Fields stopped and observed the crowd while idling his vehicle. Then Fields slowly reversed his vehicle back up Fourth Street near the intersection of Fourth and Market Streets. As the crowd began walking up Fourth Street, Fields rapidly accelerated down Fourth Street and drove directly into the crowd, killing Heather Heyer and injuring many others, including Plaintiffs. He was later arrested and pled guilty to one count of committing a hate crime resulting in death and 28 counts of committing a hate crime involving an attempt to kill.

**League of the South, Michael Hill, and Michael Tubbs.** Michael Hill is a self-declared white supremacist, racist, anti-Semite, homophobe, xenophobe, and Islamophobe. He is also the

founder, president, and leader of the League of the South ("LOS"), a white nationalist organization and hate group with a mission of ensuring the survival of the white race against Jewish and Black people.  Defendant Michael Tubbs is second in command and Chief of Staff of LOS, and President of the Florida chapter, and shares the same views as Hill and LOS.

Hill, Tubbs, and LOS (the "LOS Defendants") coordinated with their co-Defendants to plan, promote, and organize Unite the Right; engaged in, advocated, and incited violent action against religious and racial minorities; and formed the Nationalist Front with Defendants National Socialist Movement ("NSM"), Parrott, Traditionalist Workers Party ("TWP"), and Vanguard.  As late as August 11, they participated in a planning meeting with other Defendants to finalize plans for their arrival, marching formations, and departure from Unite the Right.

On the evening of August 11, LOS attended the torch march at the University of Virginia carrying kerosene torches, chanting racially-charged slogans like "Jews will not replace us" and assaulting counter-protestors.  Hill and LOS described it as "very impressive," "successful" and "good optics."

On August 12, the LOS Defendants met with the other white supremacist groups, including NSM, TWP, and Vanguard to march on Lee Park, declaring "We are going to take that park." Once in Charlottesville, the LOS Defendants repeatedly led groups of white supremacists to attack peaceful counter-protestors, including a group that was shielding clergy members; and engaged in a brutal attack of DeAndre Harris, a black counter-protester, beating him with a club and leaving him with severe cranial trauma, a spinal injury, and a broken arm.

After Unite the Right, co-Defendants praised the actions of the LOS Defendants, who described August 12 as a "great day" and lauded the "warriors" who "acquitted themselves as men."

**Richard Spencer.**  Richard Spencer has publicly stated that his goal is the establishment of a white ethnostate in North America.

Spencer coordinated with his co-Defendants to plan, promote, and organize Unite the Right; and engaged in, advocated, and incited violent action against religious and racial minorities. Along with Defendant Kessler, Spencer was one of the organizers of Unite the Right.  He participated in a torchlit march on August 11 at his alma mater, the University of Virginia, planning it so that he and his co-conspirators would march through campus and carry torches symbolic of hate, so as to intimidate racial and religious minorities.  After the torchlit march, Spencer gave a speech to the crowd celebrating the violence that occurred and stating "we own these streets, we own these streets.  We occupy this ground.  We won."  He also actively promoted the August 12 event on social media and attended as one of the planned speakers.

**Christopher Cantwell.**  Christopher Cantwell is a white nationalist who hosts a call-in talk show, "Radical Agenda."  He argues for the creation of a white ethnostate that excludes Black and Jewish people and non-white immigrants.  He advocates violence on his radio show.

Cantwell coordinated with his co-Defendants to plan Unite the Right, and actively promoted it on his radio show.  And, in preparation for Unite the Right, Cantwell planned a meeting on August 11 with his Radical Agenda listeners and some of his other co-Defendants.  Cantwell also brought several weapons with him, including five guns, when he travelled to Charlottesville for Unite the Right.

During the torchlit march on August 11, Cantwell pepper sprayed counter-protestors, and was subsequently arrested and convicted for use of pepper spray and tear gas on counter-protestors. Cantwell celebrated and ratified the violence that occurred at Unite the Right in a number of respects.

**Robert Azzmador Ray.**  Robert "Azzmador" Ray is a writer and podcast host for The Daily Stormer, the leading website of the alt-right.  He is a self-proclaimed Nazi and white supremacist.  Ray participated in organizing the events of August 11 and 12, including through coordinating with Vanguard America.  He was a scheduled speaker and promoted the event to his readers and listeners, at one point estimating that over 100 members of his Daily Stormer Book Clubs would be in attendance.  In the lead-up to Unite the Right, Ray made posts on Discord advocating "gassing" or "getting rid of" Jewish people and stated that he intended to make Jewish people cry and instill fear in Black people. He told his followers to leave their guns at home so that they could get in fights, and advised on what kind of pepper spray was most "devastating."

On August 11, Ray attended a "leadership" planning meeting in Charlottesville with certain other Defendants.  He also attended the torchlight march, where he pepper-sprayed counter-protesters.  On August 12, he was involved in the violence against counter-protestors, initiated chants of "Jews will not replace us," bragged on camera about "gassing" Jewish people, and appeared in a Vice News documentary espousing racist views.  On the evening of August 12, after the car attack, Ray delivered a "victory" speech from the Daily Stormer's founder at an after party.

The Court has already found facts deemed established against Ray, including that he entered into an agreement with one or more co-conspirators to engage in racially-motivated violence in Charlottesville, Virginia on August 11 and 12, 2017; that he was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017 in Charlottesville, Virginia; and that it was reasonably foreseeable to and intended by him that coconspirators would commit acts of racially-motivated violence and intimidation at the torchlight event and at the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017.

**Identity Evropa, Nathan Damigo, and Elliot Kline a/k/a Eli Mosley.**  Nathan Damigo is the founder of white supremacist organization, Identity Evropa, which focuses on recruiting college-aged white men to promote "white interests" and popularized the slogan "You will not replace us" that Defendants and co-conspirators chanted as they marched on August 11 and 12. Elliot Kline a/k/a Eli Mosley is a white supremacist and was the leader of Identity Evropa from August to November 2017.

Damigo, Kline, and Identity Evropa planned Unite the Right in coordination with their co-Defendants and others.  Damigo and Kline held weekly calls with Kessler and Spencer to plan Unite the Right.  Kline, who called himself the "judenjager" (or Jew hunter), was one of the primary organizers of Unite the Right and told everyone that planning the event was his "full time job."  He authored the "General Orders" document instructing participants about the weekend's plans.  Kline predicted that there would be "some serious brawls at cville" and that "we'll see blood on some of these white polos."

The Court has already found facts deemed established against Kline, including that he entered into an agreement with one or more co-conspirators to engage in racially-motivated violence in Charlottesville, Virginia on August 11 and 12, 2017; that he was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017 in Charlottesville, Virginia; and that it was reasonably foreseeable to and intended by him that coconspirators would commit acts of racially-motivated violence and intimidation at the torchlight event and at the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017.

**Traditionalist Worker Party, Matthew Heimbach, and Matthew Parrott.**  Matthew Heimbach and Matthew Parrott are virulent anti-Semites and racists who are co-founders of the

TWP, a national political party committee that models itself after the Nazi party in Germany. Heimbach is also co-chair of Defendant Nationalist Front.

Heimbach, Parrott, and TWP coordinated with their co-Defendants to plan, promote and organize Unite the Right; engaged in, advocated, and incited violent action against religious and racial minorities; and formed the Nationalist Front with Defendants NSM, TWP, Vanguard, and the LOS Defendants.  Both before and after Unite the Right, TWP worked to sanitize discussions and communications around the event and to reframe violent actions as self-defense.  On August 12, the TWP Defendants led the column with the LOS and NSM Defendants that marched into counter-protestors on Heimbach's call of "Shields up!"  A member of TWP described their actions as "plowing through a human wall of communists."

After Unite the Right, Heimbach and Parrott both publicly stated that they supported and sympathized with James Fields, calling him a "prisoner of war," and stating that he would be a "TWP member for life."

**Nationalist Socialist Movement and Jeff Schoep.**  Defendant Jeff Schoep was the "Commander" of Defendant National Socialist Movement from 1994 to 2018 and co-founder of Nationalist Front.  National Socialist Movement ("NSM") exists to promote a "greater America" that would deny citizenship to Jews, non-whites and LGBTQ persons, and under Schoep's leadership, used Nazi symbolism including the swastika.

Schoep and NSM formed the Nationalist Front with Defendants LOS, Parrott, TWP, Vanguard, and Heimbach, and worked with other Nationalist Front members on street activism, rallies, and protests, several of which resulted in violence.  Schoep and NSM coordinated with their co-Defendants to plan, promote and organize Unite the Right, and engaged in, advocated, and incited violent action against religious and racial minorities.  In particular, Schoep told Kessler

that NSM had "men who are battle tested in the streets" to offer, and NSM members were instructed bring shields, flagpoles, and flags to Unite the Right, and to dress in all black "battle dress uniforms." On August 12, NSM members including Schoep engaged in physical confrontations with counter-protesters, causing injury to many. In the days that followed, Schoep celebrated praised Nationalist Front co-Defendants for being "true warriors" and stated that they were "finally winning."

**Andrew Anglin; Moonbase Holdings, LLC; Nationalist Front; Augustus Sol Invictus; Fraternal Order of the Alt-Knights; Loyal White Knights of the Ku Klux Klan; East Coast Knights of the Ku Klux Clan.** The Court has entered default against these Defendants.

## E.     ISSUES OF CONTESTED FACT

Plaintiffs' Statement.

Plaintiffs submit that the issues of contested fact are as follows:

1.     Whether Defendants conspired to participate in, plan, promote, organize, or carry out violence in Charlottesville on August 11-12, 2017, including against Plaintiffs.

2.     Whether any conspirator took an overt act in furtherance of Defendants' conspiracy.

3.     Whether the acts of any conspirator were reasonably foreseeable.

4.     Whether Defendants' conspiracy and acts were motivated by a discriminatory animus towards Black or Jewish individuals or their supporters.

5.     Whether Defendants were aware of the conspiracy, had the power to prevent or aid in preventing wrongful acts committed as part of the conspiracy, but failed to do so.

6.     Whether Defendants subjected Plaintiffs to acts of intimidation, harassment, vandalism, or violence, which were motivated by racial, religious, or ethnic animosity.

7.     Whether Defendants committed an unwanted touching against Plaintiffs; placed the Plaintiffs in fear or apprehension of bodily harm, or reasonable apprehension that force would be used unless Plaintiffs willingly submitted; and caused them to submit to the extent they were denied freedom of action.

8.     Whether, by virtue of driving his Dodge Challenger into a crowd on August 12, 2017, Defendant Fields had the specific purpose of inflicting emotional distress upon Plaintiffs; intended specific conduct that he knew, or should have known, would likely result in emotional distress; and whether his conduct was outrageous or intolerable in that it offends generally accepted standards of decency and morality.

9.     Whether, by virtue of driving his Dodge Challenger into a crowd on August 12, 2017, Defendant Fields did commit or conspire to commit an act of violence in Virginia, and committed that act with the intent to intimidate the civilian population.

10.     Whether Defendants conspired with one or more persons to do any of the above.

11.     Whether Defendants participated in, caused, or approved of actions that caused injury to Plaintiffs.

12.     The cause and extent of the Plaintiffs' physical, emotional, and monetary harm.


Statement of Defendants Jason Kessler, Nathan Damigo, and Identity Evropa.

Issues of Fact and Law

1. Did Jason Kessler agree with any possible co-conspirator to commit any wrongful act whatsoever?

2. Did Nathan Damigo agree with any possible co-conspirator to commit any wrongful act whatsoever?

3. Did Identity Evropa agree with any possible co-conspirator to commit any wrongful act whatsoever?

4. Did any member of Identity Evropa agree with any possible co-conspirator to commit any wrongful act whatsoever?

5. If any member of Identity Evropa did so, did Identity Evropa authorize the member's wrongful conduct either explicitly, implicitly, or apparently?

6. Can Jason Kessler, Nathan Damigo, or Identity Evropa be legally liable to any plaintiff based on post-event ratification of any wrongful conduct?

<u>Statement of Defendants Michael Hill, Michael Tubbs, and League of the South.</u>

Issues of Law and Fact

1. Did Michael Hill agree with any possible co-conspirator to commit any wrongful act whatsoever?

2. Did Michael Tubbs agree with any possible co-conspirator to commit any wrongful act whatsoever?

3. Did League of the South agree with any possible co-conspirator to commit any wrongful act whatsoever?

4. Did any member of League of the South agree with any possible co-conspirator to commit any wrongful act whatsoever?

5. If any member of League of the South did so, did League of the South authorize the member's wrongful conduct either explicitly, implicitly, or apparently?

6. Can Michael Hill, Michael Tubbs, or League of the South be legally liable to any plaintiff based on post-event ratification of any wrongful conduct?

<u>Statement of Defendants Matthew Heimbach, Matthew Parrott, and Traditionalist Worker Party.</u>

Issues of Fact and Law

1.  Did David Matthew Parrott agree with any possible co-conspirator to commit any wrongful act whatsoever?

2.  Did Matthew Heimbach agree with any possible co-conspirator to commit any wrongful act whatsoever?

3.  Did Traditionalist Worker Party agree with any possible co-conspirator to commit any wrongful act whatsoever?

4.  Did any member of Traditionalist Worker Party agree with any possible co-conspirator to commit any wrongful act whatsoever?

5.  If any member of Traditionalist Worker Party did so, did Traditionalist Worker Party authorize the member's wrongful conduct either explicitly, implicitly, or apparently?

6.  Can Matthew Parrott, Matthew Heimbach, or Traditionalist Worker Party be legally liable to any plaintiff based on post-event ratification of any wrongful conduct?


Witnesses

David Matthew Parrott

Matthew Heimbach

Any party or witness called by any other party

Rebuttal witnesses


Expert Witnesses

N/A


Exhibits

Heaphy Report (selected pages)

Series of e-mails from David Matthew Parrott to Traditionalist Worker Party members regarding

expectations of its members who would be attending the rally together

Brooke Heimbach Affidavit

Rebuttal exhibits

(Defendants reserve the right to amend or supplement this list before and/or during trial.)


Depositions

Portions of any deposition used by any party in order to present an accurate picture of testimony

read.

Any deposition or part thereof taken by any party for use in rebuttal.

(Defendants reserve the right to amend or supplement this list before and/or during trial.)


Statement of Defendant Fields.

Issues of Fact and Law

1.  Did James Fields agree with any alleged co-conspirator to commit any wrongful act?

2.  Did James Fields participate in any planning or organizing for the Unite the Right Rally?


Exhibit

Certified copy of James Fields Amended Judgment in Criminal Case – listed on Exhibit List as Fields' Sentencing Order.


Depositions

Portions of any deposition used by any party in order to present an accurate picture of the testimony read.

Any deposition or part thereof taken by any party for use as rebuttal evidence.

## F.   CONTESTED ISSUES OF LAW THAT DO NOT REQUIRE A RULING BEFORE TRIAL

1.      Whether third-party Denise Lunsford is entitled to cost-shifting for compliance with Plaintiffs' subpoena duces tecum and, if so, the amount of costs to which she is entitled. *See* ECF No. 801, 808, 909.

## G.   STIPULATIONS

Plaintiffs and Defendant Fields have stipulated to certain facts and the authentication of certain documents.  *See* ECF No. 983.

Plaintiffs and Defendants are working together in good faith on additional stipulations and will inform the Court promptly once an agreement has been reached.

## H.   OTHER

<u>Plaintiffs' Statement.</u>

Plaintiffs intend to call certain Defendants in their case-in-chief, but understand that not all of the Defendants plan to attend trial for its entire duration.  To ensure Defendants are available to testify on the day they are called as witnesses, Plaintiffs propose the Court implement a formal notification process, whereby Plaintiffs provide notice to each Defendant of the day(s) Plaintiffs intend to call that Defendant, such notice to be provided at least 24 hours

before the Defendant's anticipated testimony, and the Defendant so notified is required to attend trial on that day.

Statement of Defendants Jason Kessler, Nathan Damigo, and Identity Evropa.

Mr. Kolenich is unable to be present, in court or via zoom, on November 1, 2021. Plaintiffs agree to make a good faith effort not to call witnesses Simi, Blee, Lipstadt, Wispelwey, Sines, or Baker on that day. To the extent that plaintiffs are unable to avoid calling one or more of said witnesses on November 1, Defense has the right to recall the witness or witnesses for cross examination by Mr. Kolenich.

Certain participants have not been vaccinated against COVID 19 and are therefore required to undergo periodic antigen testing. These participants are permitted to participate by zoom if the antigen testing is not negative for COVID.

Statement of Defendant Matthew Heimbach.

Matthew Heimbach has agreed to testify live (in-person) during Plaintiffs' case-in-chief. However, because Mr. Heimbach is the sole custodian of his children, should Mr. Heimbach choose to testify during his case-in-chief – in addition to his testimony during Plaintiffs' case-in-chief – he will only be available to testify via Zoom during his case-in-chief (including any cross-examination therein).

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Norman K. Moon

Dated: October 18, 2021

Respectfully submitted,

/s/ David E. Mills
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com

*Of Counsel:*

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Joshua A. Matz (*pro hac vice*)
Michael L. Bloch (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
Benjamin D. White (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
KAPLAN HECKER & FINK, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
mbloch@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com
bwhite@kaplanhecker.com
ybarkai@kaplanhecker.com

Alan Levine (*pro hac vice*)
Daniel P. Roy III (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
droy@cooley.com
aliverzani@cooley.com

J. Benjamin Rottenborn (VSB No. 84796)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, Va. 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Giovanni J Sanchez (*pro hac vice*)
Agbeko C. Petty (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com
alawyer@paulweiss.com
gsanchez@paulweiss.com
apetty@paulweiss.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Katherine M. Cheng (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
kcheng@bsfllp.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

W. Edward ReBrook
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Defendants National Socialist Movement, Nationalist Front, Jeff Schoep,*

Joshua Smith Esq.
Smith LLC
807 Crane Ave.
Pittsburgh, PA 15216
joshsmith2020@gmail.com

*Counsel for Matthew Heimbach, Matthew Parrott and Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

I hereby certify that on October 18, 2021, I also served the foregoing upon following *pro se* defendants, via electronic mail, as follows:

Richard Spencer
richardbspencer@gmail.com
richardbspencer@icloud.com

Robert Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

I hereby certify that on October 18, 2021, I also served the foregoing upon following *pro se* defendant, via U.S. mail, as follows:

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion
U.S. Penitentiary
P.O. Box 2000
Marion, IL 62959

and

Christopher Cantwell
Christopher Cantwell - Inmate: 00991-509
Grady County Law Enforcement Center (Oklahoma)
215 N. 3rd Street
Chickasha, OK 73018


/s/ David E. Mills
David E. Mills (*pro hac vice*)