Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1                    UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF VIRGINIA
2                     CHARLOTTESVILLE DIVISION

3   ****************************************************************

4    ELIZABETH SINES, ET AL.,   CIVIL CASE NO.:  3:17CV72
                                OCTOBER 18, 2021, 9:30 AM
5                               PRETRIAL CONFERENCE VIA ZOOM
           Plaintiffs,
6   vs.

7                               Before:
                                HONORABLE NORMAN K. MOON
8                               UNITED STATES DISTRICT JUDGE
    JASON KESSLER, ET AL.,      WESTERN DISTRICT OF VIRGINIA
9
           Defendants.
10
    ****************************************************************
11
    APPEARANCES:
12

13  For the Plaintiffs:        ALAN LEVINE, ESQUIRE
                               COOLEY LLP
14                             1114 Avenue of the Americas, 46th
                               Floor
15                             New York, NY  10036
                               212.479.6260
16
                               DAVID E. MILLS, ESQUIRE
17                             CAITLIN B. MUNLEY, ESQUIRE
                               COOLEY LLP
18                             1299 Pennsylvania Avenue, NW,
                               Suite  700
19                             Washington, DC  20004
                               202.842.7800
20

21

22  Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                       255 West Main Street, Suite 304
23                     Charlottesville, Virginia  22902
                       434.296.9284
24
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25  TRANSCRIPT PRODUCED BY COMPUTER.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

 1   APPEARANCES CONTINUED:

 2   For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                  EMILY C. COLE, ESQUIRE
 3                                JONATHAN R. KAY, ESQUIRE
                                  Kaplan Hecker & Fink LLP
 4                                350 Fifth Avenue, Suite 7110
                                  New York, NY  10118
 5                                212.763.0883

 6                                KAREN L. DUNN, ESQUIRE
                                  WILLIAM A. ISAACSON, ESQUIRE
 7                                JESSICA E. PHILLIPS, ESQUIRE
                                  GIOVANNI SANCHEZ, ESQUIRE
 8                                Paul, Weiss, Rifkind, Wharton &
                                  Garrison LLP
 9                                2001 K Street, NW
                                  Washington, DC  20006
10                                202.223.7300

11   For the Defendants:          JAMES E. KOLENICH, ESQUIRE
                                  Kolenich Law Office
12                                9435 Waterstone Blvd., Suite 140
                                  Cincinnati, OH  45249
13                                513.444.2150

14                                JOSHUA SMITH, ESQUIRE
                                  Smith LLC
15                                807 Crane Avenue
                                  Pittsburgh, PA  15216
16                                917.567.3168

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  (Proceedings commenced, 9:30 AM)

2          THE COURT:  All right.  You may call the case, if

3  you're ready.

4          THE CLERK:  Yes, Your Honor.  This is Civil Action

5  Number 3:17CV72; Sines and others versus Kessler and others.

6          THE COURT:  Are the plaintiffs ready?

7          MS. DUNN:  We are, Your Honor.

8          THE COURT:  Are the defendants ready?

9          MR. KOLENICH:  Yes, Your Honor.

10          THE COURT:  Okay.

11          MR. SMITH:  Yes, Your Honor.

12          THE COURT:  Of course, all of them are not here.  But

13  before we begin, I will remind everyone that under Standing

14  Order 2020-12, the Court's prohibition against recording and

15  broadcasting court proceedings remains in force.  Attorneys,

16  parties, or staff, or members of the public or press accessing

17  this hearing today may not record or broadcast it.

18          We're here today to hear argument on several motions

19  in limine.  The Court has resolved several that were previously

20  set for argument today, but several remain.  I would suggest we

21  proceed with any argument in the following order:  First

22  hearing argument from the movant, then responses before

23  proceeding to the next motion.

24          First we'll here Defendants Kessler, Damigo, and

25  Identity Evropa's motion in limine and request for judicial

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  notice, that's Docket 1148; secondly, plaintiffs' motion in

2  limine to preclude certain evidence of James Fields's

3  communication, Docket 1153; and three, plaintiffs' motion to

4  deem authentic certain photos or videos pertaining to Robert

5  Azzmador Ray, Docket 1149.

6         Two other motions previously scheduled will not be

7  heard today.  The Court has been informed by the U.S. Marshal

8  Service that Mr. Cantwell is still in transit; therefore, it

9  would make sense to hold off on any argument until later this

10 week on plaintiffs' motions to exclude several of

11 Mr. Cantwell's trial witnesses.

12         The Court has also been informed this morning that

13 Bryan Jones, representing League of the South, will not attend

14 today's hearing due to scheduling conflicts with other cases.

15 The Court will not hear argument today, therefore, on the

16 League of the South defendant's motion in limine and request

17 for judicial notice.  Mr. Jones has said he's willing to rest

18 on his briefing on that issue -- on the issue.

19         Once we are done with argument on the outstanding

20 motions, the Court would like to ask the parties whether they

21 think holding an extra Zoom hearing this week, perhaps

22 Wednesday, could be productive before the final pretrial

23 conference on Friday.

24         All right.  We'll hear from -- on Motion 1,

25 Defendants Kessler, Damigo, and IE motion in limine.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          MR. KOLENICH:  Thank you, Your Honor.  Jim Kolenich

2   for those defendants.

3          THE COURT:  Okay.

4          MR. KOLENICH:  The motion in limine requests that the

5   Court take judicial notice of search warrant affidavits and the

6   accompanying search warrants that we only recently became aware

7   of for the reason that these warrants were sealed, and the case

8   number is listed in the motion.  These warrants were issued

9   relative to two named individuals, Miles and Moores -- I

10  believe that's Lindsey Moores and Sarah Miles -- who are known

11  to Defendant Kessler from prior political events to be what are

12  called the anti-fascists.  The search warrant affidavits filed

13  by FBI agents indicate that the agents reviewed video and

14  requested search warrants because they believed there was

15  probable cause to believe that these two individuals, these two

16  anti-fascists, had committed criminal offenses in

17  Charlottesville on August -- I believe it's the 12th, limited

18  to August 12th, 2017.

19          Now, the defense -- or I'm sorry, the plaintiffs have

20  objected on the grounds that police reports ordinarily are

21  excluded -- the contents of the reports -- on hearsay grounds;

22  however, in order to be hearsay, of course, the statement has

23  to be introduced for the truth of the matter asserted.  And

24  that isn't what defense seeks to use these warrants for.

25  Rather, we simply seek to show that an information was provided

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  to the government -- in this case, Magistrate Judge Hoppe --

2  and the magistrate judge found it demonstrated probable cause

3  under the law to believe the criminal activity may have been

4  committed by these two people.  Therefore, it is not entirely

5  unreasonable the jury shouldn't be denied this information that

6  it was -- that the defendants believed the criminal activity

7  was being engaged in by a certain class of counter protesters

8  on August 12, 2017.

9          So that's the motion for judicial notice, Your Honor.

10         THE COURT:  All right.

11         MR. KOLENICH:  Sorry.  Go ahead, sir.

12         THE COURT:  Yes.

13         MR. KOLENICH:  Moving on, there are several other

14  parts of the motion.

15         The second motion in limine is brought under federal

16  Rule of Evidence 105, and it deals with the various sanctions

17  that have been issued by the Court on motion of the plaintiffs.

18  And we've -- there are at least three different parties that

19  have been sanctioned.  I believe the Court recently issued some

20  sort of sanction against Defendant James Fields.

21         THE COURT:  Let me ask you a question:  Why isn't

22  that something that's taken care of by a jury instruction?

23         MR. KOLENICH:  Sorry, the Evidence Rule 105, Your

24  Honor?

25         THE COURT:  Well, I mean, in order to protect the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1    parties who were not sanctioned from having evidence of the

2    sanction prejudicing the unsanctioned party, why wouldn't --

3              (Unreportable crosstalk).

4              THE COURT:  Excuse me?

5              MR. KOLENICH:  I think the entire trial is going to

6    be -- you know, as in the complaint, the plaintiffs are given

7    to saying co-conspirator, co-conspirator about just about

8    everybody.  They're going to say conspired.  You know, I think

9    there is a very realistic danger the jury is going to be left

10   with an incorrect impression that these sanctions -- that the

11   sanctionable misconduct of these parties indicates that they

12   conspired with the particular other defendant.

13             And so this motion -- this part of the motion in

14   limine is an effort to avoid the defense having to object

15   repeatedly every day during the trial to any plaintiff

16   questions or implications regarding the sanctions establishing

17   any facts against the non-sanctioned party.  It may be -- I

18   think we do have a proffered jury instruction.  And it may be

19   that the plaintiffs don't actually do that, and no objections

20   will be made.  But we -- the defense view is that this motion

21   in limine to preclude them would be useful in focusing how they

22   ask their questions and put in their case.

23             THE COURT:  Well, it would be a normal procedure for

24   the Court -- when any type of evidence like that is offered,

25   for the Court to immediately instruct the jury that it can only

8

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  be used against the party who was sanctioned.  I mean, that's

2  not -- that's unusual in trial.

3          MR. KOLENICH:  I think the defense would be okay with

4  that, Your Honor.

5          THE COURT:  All right.  I think that --

6          MR. MILLS:  Your Honor, this is David Mills.  Sorry,

7  my video is not working.

8          We did, as plaintiffs, propose a jury instruction on

9  this.  I do not think actually that Mr. Kolenich's jury

10  instruction proposal included anything for the spillover

11  effect, but we certainly did.  The plaintiffs do not oppose

12  that, and actually propose a very specific jury instruction to

13  address this exact issue.  So that should resolve this problem.

14          THE COURT:  I'm sorry.  What's your --

15          MR. MILLS:  I'm sorry, this is David Mills for the

16  plaintiffs.

17          THE COURT:  Excuse me, but it's not your turn to

18  speak.

19          MR. MILLS:  I'm sorry, Your Honor.

20          THE COURT:  No, I was trying to cut argument on that

21  issue off.  I thought the jury instruction probably resolved

22  it.  And if it didn't, I'll allow the plaintiff to speak to it.

23          Go ahead, Mr. Kolenich.

24          MR. KOLENICH:  Pursuant to Mr. Mills's

25  representation -- I'm not sure I reviewed that particular jury

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   instruction -- but if that is accurate, the defense doesn't

2   have any big objection, as long as the Court is making

3   instructions as we go along, as you indicated, and the

4   plaintiffs have proposed an even better jury instruction than

5   defense did.  I think that issue would be adequately addressed,

6   Your Honor.

7           THE COURT:  All right.  Okay.  Go ahead with any

8   other argument you're making now.

9           MR. KOLENICH:  Thank you, Your Honor.

10           Moving on in the defense motion, we have moved under

11   various evidence -- Rules 401, 402, and 403 -- regarding

12   relatives and friends of the party plaintiffs testifying.  I

13   think that the defense responsive pleading was directed at

14   things that this motion doesn't actually ask for.  All we're

15   asking for is that the emotional effect on those witnesses of

16   seeing the damages to the plaintiffs be excluded as evidence.

17   I think that the witnesses would just sort of naturally talk

18   about how they felt seeing their family members suffer as a

19   result of the damages.  This motion -- this part of the motion

20   seeks to exclude that testimony.

21           THE COURT:  Okay.  All right.  Anything else?

22           MR. KOLENICH:  We have terms.  We have a motion

23   directed against terms.  There are some example terms:

24   "Conspiracy, racial animus," and so forth.  The motion is

25   directed at the sort of terms resulting in an emotional

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1    reaction in the jury.  So if they're constantly calling the

2    plaintiffs Nazi, racists, and so forth prior to that becoming

3    an established fact in the trial, we -- the defense asserts

4    that that would be prejudicial under 403 to the defendants.

5            So we're just seeking a motion ahead of time to --

6    and then the plaintiffs have a similar motion regarding file

7    names and titles that they filed recently.  We're just seeking

8    to restrict the rhetoric coming I guess from counsel, but also

9    from the party plaintiffs.  If they're going to constantly say

10   racist, racist, racist before it's actually been established

11   that there's a racial animus in any particular defendant, it's

12   our assertion that that is prejudicial.

13           And I believe the last part of my motion, Your Honor,

14   is directed to the testimony of the experts.  It's a motion in

15   limine seeking an order that the plaintiffs will observe the

16   restrictions that were discussed at the motion hearing

17   regarding these experts on December 17th, 2021.  I'm sorry --

18           THE COURT:  Didn't we resolve that at that time?

19           MR. KOLENICH:  I think we did, Your Honor.  It just

20   seemed to me the better procedure was to bring it in a motion

21   in limine that -- more or less that the Court is aware of what

22   we resolved in December of 2020, and will enforce it upon the

23   plaintiffs.

24           THE COURT:  I assume the plaintiffs will follow the

25   previous order and do what it said.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1        All right.  Anything else?

2        MR. KOLENICH:  No, Your Honor.  I think that covers

3   it.  Thank you.

4        THE COURT:  All right.  Who is going to respond for

5   the plaintiff?

6        MR. ISAACSON:  Your Honor, this is Bill Isaacson from

7   Paul Weiss for the plaintiffs.  I can begin with the issue that

8   Mr. Kolenich began with, the judicial notice of the search

9   warrants and search warrant affidavits.

10       They're seeking that the Court tell the jury that

11  there is a search warrant based on probable cause, and also

12  that the Court tell the jury they are to take judicial notice

13  of long affidavits about three individuals who these search

14  warrants are two years after the events of Charlottesville.

15  And they want to argue that probable cause and the facts in

16  those affidavits are a basis for their state of mind two years

17  prior to the search warrants.

18       These don't meet the standards for judicial notice.

19  Judicial notice is obviously different from evidence because

20  the Court is telling the jury what has been determined by the

21  Court.  It is extraordinary for search warrants all over

22  America to all of a sudden be read to juries to say -- in cases

23  where people want to say there is probable cause for something.

24       That is against the standards for judicial notice

25  because, first, the search warrant affidavits themselves are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  inadmissible evidence.  Both the affidavits and the information

2  within them that are hearsay and otherwise don't meet the rules

3  of evidence, including authentication of photos and materials

4  in them.  Judicial notice is not an excuse for evading the

5  rules of evidence and bringing in what otherwise couldn't be

6  brought in.

7          The second is in order to have judicial notice is the

8  facts have to be subject to no reasonable dispute.  And by

9  definition, an affidavit in a search warrant is subject to

10 reasonable dispute because the people on the other side would

11 dispute those facts.  And plaintiffs in this case would also

12 subject them, if they were to be brought into evidence, to

13 cross-examination and to whatever replies with evidence that we

14 thought were appropriate.  It's not appropriate for the

15 defendants to be asking for the Court to tip the scales by

16 declaring certain things to have been found, and therefore that

17 the jury is supposed to take judicial notice.

18         THE COURT:  Well, let's -- you can stop.  The search

19 warrants are not -- the Court cannot take judicial notice of

20 those.  It's not proper.  I think that would be in the realm of

21 almost black letter law.  I mean, it's just not -- it just

22 wouldn't be -- it just doesn't fit the criteria.

23         MR. ISAACSON:  Then I will pass the argument on to my

24 colleagues.

25         THE COURT:  All right.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          MR. MILLS:  Your Honor, this is David Mills.  I can

2  address the issue -- although I think it may be resolved -- the

3  issue of the spillover effect instruction.  I think I heard

4  Mr. Kolenich say that he would be fine with the instruction.

5  And I would just read to you the instruction we proposed, which

6  is to instruct the jury that:  You are cautioned, however, that

7  each party is entitled to have the case decided solely on the

8  evidence that applies to that party.  The facts being

9  established which I just listed are admitted only as to

10 Defendants Elliott Kline and Robert Azzmador Ray respectively;

11 thus, taking those facts as true for this case as to Elliott

12 Kline and Robert Azzmador Ray does not relieve plaintiffs of

13 their burden to prove by a preponderance of the evidence the

14 conduct committed by the other defendants in this case.

15         That's the instruction that we propose, which is

16 consistent with the Fourth Circuit's decision in *United States*

17 *versus Osuji.*

18         THE COURT:  Mr. Kolenich, any problem with that?

19         MR. KOLENICH:  Not necessarily, Your Honor.  I

20 think -- I think we may have some language in our proposed

21 instructions, which I apologize, I don't have before me this

22 morning.

23         THE COURT:  Well, you can let us know, and I'll -- I

24 mean, it seems to be in the right direction.

25         MR. KOLENICH:  It's a very strong instruction, Your

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1    Honor.  Yeah, I don't have any problem with what he just read

2    in and of itself.

3             THE COURT:  Okay.  Next?  Mr. Mills, are you

4    finished?

5             MR. MILLS:  Yes, I am finished with that, and I pass

6    the torch to Caitlin Munley.

7             THE COURT:  Any further argument, then, on the

8    defendants' motion?

9             MS. MUNLEY:  Yes, Your Honor.

10            MS. DUNN:  Yes, Your Honor.  I think the plaintiffs'

11   counsel who is speaking is on mute.

12            MS. MUNLEY:  I apologize.  I was on mute.

13            Good morning, Your Honor.  I will be addressing the

14   two remaining issues in the motion regarding the introduction

15   of emotional distress of non-witnesses [sic], and the use of

16   the terms "conspiracy" and "racial animus."

17            It sounds like defendants agree with us that we don't

18   intend to introduce any evidence of emotional distress of

19   non-parties, except we do want to point out that we think

20   defendants' motion is overly broad, and it places due intent to

21   introduce non-party testimony regarding two things:

22   Plaintiffs' emotional distress as a result of defendants'

23   conduct and nonparty witnesses' testimony about how they felt

24   or reacted to events they witnessed firsthand.  We think both

25   of these are probative and relevant and not unduly prejudicial.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          THE COURT:  You'll need to repeat that.  I'm having a

2   little trouble hearing -- understanding you.

3          MS. MUNLEY:  I apologize.

4          So plaintiffs do intend to introduce non-party

5   testimony regarding the emotional distress that plaintiffs

6   experienced as a result of defendants' conduct.  It sounds like

7   defendants are trying to limit those non-party witnesses

8   from -- from testifying at all about their personal reactions

9   to plaintiffs' injuries.  These are -- these are plaintiffs'

10  family members.  They are plaintiffs' friends.  It would

11  undermine their credibility if they were not able to discuss at

12  all the way that this affected plaintiffs and kind of the

13  emotional distress.  The other thing is that this testimony is

14  corroborative of plaintiffs' injuries, and it has evidentiary

15  value for plaintiffs' emotional distress claims and damages.

16  So we would say that this -- the type of testimony that it

17  seems like the defendants are trying to preclude is actually

18  both relevant and probative.

19         THE COURT:  Well, what I heard them objecting to was

20  the witness saying -- the witness whom you would call to

21  testify as to the plaintiffs' emotional distress telling -- the

22  witness relating how the witness was distressed emotionally, as

23  opposed to --

24         MS. MUNLEY:  No, Your Honor.

25         THE COURT:  I don't see that there is any

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  disagreement.  I don't see why -- say if one of the plaintiffs'

2  sisters were to say, I was very distressed when I heard about

3  my sister being in the accident, I don't think that's

4  particularly -- I don't see why that would be relevant or

5  admissible.

6         MS. MUNLEY:  That's correct.  We just don't want

7  defendants to attempt to exclude any emotional reaction from

8  plaintiffs' family or friends from witnessing either

9  plaintiffs' injuries, or, if they were present, any kind of

10  emotional reaction that they had to defendants' conduct.

11         THE COURT:  Well, let me get this straight now.  Say

12  if you call one of the plaintiffs' mothers, you would -- do you

13  anticipate that the mother would testify as to her -- the

14  mother's distress?

15         MS. MUNLEY:  No.  But we would assume that the mother

16  would have a visible emotional reaction that the jury would be

17  able to see.  And it is --

18         THE COURT:  Okay.  Well, that's -- I mean, as long as

19  it's not obviously feigned, I would -- I don't know how -- the

20  Court can't limit people's emotional reactions.  But as I

21  understood, what the defendant would be objecting to is the

22  mother hypothetically -- the hypothetical mother saying how she

23  was distressed at her daughter's experience, which I think

24  would be inadmissible.

25         MS. MUNLEY:  Correct.  And we don't intend to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1    introduce that testimony.

2            THE COURT:  All right.  Are you satisfied with that,

3    Mr. Kolenich?

4            MR. KOLENICH:  Yes, Your Honor.

5            THE COURT:  Okay.  All right.  Was there anything

6    else, then?

7            MS. MUNLEY:  Yes, Your Honor.

8            I believe Mr. Kolenich also moved to preclude

9    plaintiffs from using the terms "conspiracy, racial animus," or

10   any similar term or concept in either testimony, argument, or

11   questioning.  Plaintiffs believe that this request is wildly

12   overbroad; it would be incredibly impractical; and it's

13   premature for a motion in limine.

14           First, defendants seek to limit the use of the terms

15   "conspiracy, racial animus," and any similar term or concept,

16   which would make questioning and testimony almost impossible in

17   this case.  Mr. Kolenich demonstrated the issues with this

18   motion in his argument in that he talked about a number of

19   terms that were not even mentioned in his motion.  Because the

20   defendants do not define what they mean by "any similar term or

21   concept," there would be an enormous waste of judicial

22   resources and the parties' time and energy in trying to figure

23   out what language they were allowed to use at any point in the

24   trial.  It would be extremely inefficient and it would be

25   extremely confusing for the jury.  Plaintiffs are seeking to

18

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  prove a conspiracy motivated by racial animus, and it would be

2  absurd for them to have to try to do so without using any words

3  relevant to conspiracy or racial animus.

4          THE COURT:  I think the limitation would be you may

5  not call one of the defendants a racist in maybe the opening

6  statement or during the witness's testimony.  You may not refer

7  to the person as a racist.  Now, what you can certainly in your

8  opening statement say that you intend to prove that racial

9  animus was a motivating factor.  I mean, that -- I don't see

10  any way you get around that.  You have to talk about -- I mean,

11  if it is -- the main count is a conspiracy.  So you have to

12  talk about -- use the term "conspiracy" when you discuss the

13  issues in the case.

14          I think the -- sort of like in a criminal case, you

15  don't start out -- it's argumentive to stand -- you know, for

16  the prosecutor to start out pointing to the defendant:  Now,

17  the defendant is your rapist.  I mean, generally you don't --

18  you know, that's -- you have to prove -- that's a matter of

19  proof.  And it's argumentive to start out calling -- I mean,

20  plaintiffs shouldn't call the defendants racist in their

21  opening statement.  I mean, they can say what they're seeking

22  to prove, but not the term -- pejorative terms themselves are

23  not normally appropriate in an opening statement or when you

24  have the witness on the stand.

25          MS. MUNLEY:  And Your Honor, we don't disagree with

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   that.  We just think this motion in itself is a premature

2   motion.  The more workable solution to the issues the

3   defendants raise is for --

4            THE COURT:  Mr. Kolenich, I mean, you heard what I

5   said.  It's hard to rule on something like that.  I told the

6   plaintiffs what my opinion is.  And, of course, if you have to

7   object to it, I'll try to see to it you don't have to object

8   but once.  And I will try to police any ruling that I make so

9   that you're not having to hop up and down all the time, but I

10  don't see how you avoid the terms coming in at appropriate

11  times.

12           MR. KOLENICH:  Thank you, Your Honor.  Yes, as

13  modified by plaintiffs' argument and the Court's observation, I

14  guess the motion as written is just a little bit overbroad and

15  unworkable.  So I understand what the Court is saying and have

16  no objection.

17           THE COURT:  All right.  Thank you.

18           Okay.  Were there any other defendants -- are those

19  defendants' motions?

20           MR. SMITH:  Your Honor, Josh Smith.  I represent

21  David Matthew Parrott, Matthew Heimbach, and Traditionalist

22  Worker Party.

23           I know it's, I suppose, not my turn to speak.  I just

24  wanted to sort of point out that one of the reasons why I

25  attended the hearing this morning was that I wanted to bring up

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   several matters with the Court that I haven't had an

2   opportunity to bring up with the Court yet because I'm fairly

3   new to the case.

4           THE COURT:  Well, why don't we go through the agenda.

5           MR. SMITH:  Of course.  I only said that just

6   because --

7           THE COURT:  I'll allow you to speak at the end,

8   afterwards.

9           MR. SMITH:  Fantastic.  That's great.

10          THE COURT:  All right.  We have plaintiffs' motion in

11  limine to preclude James Fields -- certain of James Fields's

12  communications, 1153.  Who is --

13          MR. SANCHEZ:  Good morning, Your Honor.  Giovanni

14  Sanchez, Paul Weiss, on behalf of the plaintiffs.  I will be

15  addressing that motion.

16          THE COURT:  All right.

17          MR. SANCHEZ:  Your Honor, as you know, in that motion

18  we seek to preclude defendants from offering evidence that

19  Detective Young or any other law enforcement officers did not

20  find communications between Defendant Fields and other people

21  who attended or organized UTR.  Now, in their response to that

22  motion, defendants did not dispute that that's a form of

23  negative evidence.  They also did not dispute that it would be

24  inadmissible if they could not establish the proper foundation.

25  Their only main argument is that at this time it's premature

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  for the Court to rule on that issue.  And we respectfully

2  submit, Your Honor, that the record, as it stands today, is

3  more than clear that they will be unable to establish a proper

4  foundation for that testimony.  And in particular, I want to

5  focus on three aspects why that's true.

6         The first reason that's true is that no law

7  enforcement officer, including Young, could have known the

8  identity of all the relevant people.  Now, we know that must be

9  true because not only would it be infeasible for them to know

10 all the people who attended the rally; but more specifically,

11 they wouldn't even know particular subgroups that are very

12 important and central to the case.  For example, and probably

13 most notably, they wouldn't know the identity of the membership

14 of Vanguard.  And we know that must be the case because the

15 leadership of Vanguard, such as Hopper, testified under oath

16 that he himself did not know the identity of the members.  And

17 that was, as the Court has previously recognized, a deliberate

18 tactic they use to shroud their membership's secrecy.  Now,

19 that's notable because we know that Defendant Fields marched

20 with Vanguard.  He carried their shield.  He wore their

21 uniform.  That's the first reason.

22        The second reason is that even assuming Detective

23 Young knew some of the relevant identities, there is nothing

24 beyond a speculative chance that he would know all of the

25 aliases and user names.  Now, this is a very important point

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   because the record is peppered with examples of how multiple

2   defendants and conspirators in the case used an array of

3   different aliases as they were engaging one another on

4   different digital media platforms.  As just one example, Fields

5   himself had half a dozen different aliases that he was using

6   online.  And often those aliases were not tied in any obvious

7   way to their legal or given name.  For example, Fields's

8   Instagram handle was BigBoss1337.

9         Now, this issue, this issue about the aliases is

10  further compounded by the problem we have that we became aware

11  of through the testimony of Rousseau, another leader of

12  Vanguard.  And that's that often they would use digital

13  profiles that would expire within weeks.  Now, they did this

14  often to evade a lot of the bands they would get on certain

15  platforms.  So it's very possible that not only would he not

16  know the different aliases because he couldn't tie them to

17  particular identities, but also because the identities just

18  might have expired after a given time.  That's the second

19  reason.

20        The third reason is that even assuming Detective

21  Young might have become aware of some of the identities and

22  might have been able to tie those identities to some of the

23  aliases, there's a problem about the use of auto-delete

24  features.  And this is again coming from sworn testimony from

25  Vanguard's leadership, and that we know that it was a practice

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   of Vanguard -- and perhaps of other defendants -- that when

2   they would use certain messaging platforms, they would engage

3   what's called an auto-delete feature.  And the auto-delete

4   feature would just make messages go away, would erase messages

5   sometimes within a period as short as 12 hours.  And so for

6   spans of weeks and months of when messages were exchanged on

7   certain platforms, they would have been erased and no one would

8   access to them, not even law enforcement, as far as we're

9   aware.

10         Now, each of those three reasons we think is

11  sufficient to show that as the record stands today, they have

12  not established a proper foundation.  But there's one more

13  point that I think kind of underscores all of this, is that

14  each of those points assumes that a focus of law enforcement's

15  investigation was tying Fields to the conspirators in this

16  case.  And plaintiffs have reason to believe that that was

17  never a central focus of the investigation.  Based on my

18  colleagues' interactions with law enforcement, we believe it's

19  fair to say that those connections were never fully explored to

20  the extent that they would have been explored in this case.

21  And so in some sense there's just a fundamental misalignment

22  between the investigation that law enforcement officials

23  conducted and the facts that are relevant to establish the

24  foundation for that testimony in this case.

25         So for each of those reasons, we think they cannot

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   establish a proper foundation.  Now, even assuming they

2   establish -- they are able to establish some minimal foundation

3   for some limited testimony, we think in that case they should

4   still be precluded under Rule 403.  The most illuminating case

5   on that issue is the *Forrest* case in the Third Circuit, which

6   we cited in our brief.  And because I think it will be helpful,

7   I'd like to dive into the facts of that case just a little bit,

8   if Your Honor would allow it.

9        So in that case, in the *Forrest* case, the key issue

10  was whether or not there was a design defect that injured the

11  plaintiffs.  And the witnesses that the defendants intended to

12  use in that case had decades of experience with the machine

13  that injured the plaintiff.  They knew its ins and outs.  They

14  worked with it every day for over 30 years.  They had more than

15  sufficient knowledge about that one particular machine so that

16  they could speak on it with -- you know, consistent with the

17  rules of evidence.  But what the Court in *Forrest* recognized is

18  that one machine was just a small part of the relevant universe

19  of evidence.  The relevant universe of evidence included all of

20  the machines that had been designed.  And so the problem with

21  that testimony is that it would appear to the jury very

22  concrete, very tangible, highly probative; but really that was

23  misleading and that was confusing, and it would cause them to

24  generalize and speculate in a way the rules of evidence do not

25  permit them.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1      And we think there's a similar problem here, because

2 to the extent they can establish some minimal foundation for

3 the evidence that came from the phone, that phone is just one

4 small piece of all of the relevant communications that might

5 tie Fields to the conspiracy.  Obviously, there is other

6 devices.  There is the possibility of digital burner phones,

7 which I talked about earlier.  There is the possibility of

8 messages being erased.  And even putting all of the digital

9 aspects aside, there is the ample communication that happened

10 in person at UTR that there is no dispute that law enforcement

11 officers do not have the full array of evidence regarding those

12 communications.

13      So in the same way that the machine -- the testimony

14 in *Forrest* would have been about a single machine, and would

15 have led the jury to be misled based on that single small part

16 of the evidence, the same applies here.  The jury would be

17 confused about Detective Young's testimony about one specific

18 device when there's a host of other communications that are

19 relevant, including communications that happened at UTR itself

20 where Fields very likely might have joined the conspiracy.

21      So for all those reasons, Your Honor, we think this

22 evidence should be excluded both because defendants cannot

23 offer -- and I invite them to proffer some reason where they

24 could establish foundation; I don't think they will be able

25 to -- proper foundation for this testimony.  But again, even if

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   they could, Your Honor, we think it should be precluded under

2   403.

3            THE COURT:  All right, sir.

4            Who will respond?

5            MR. KOLENICH:  Your Honor, Jim Kolenich for the

6   defendants -- well, for my clients, Your Honor.

7            All right.  So the plaintiffs -- this motion is

8   seeking to exclude, as I understand it, Detective Young in

9   total, that we won't even be able to present him as a witness

10  at all.  The case that plaintiff relies on that was just

11  discussed ably by counsel didn't mention the fact that the

12  *Forrest* case did not exclude this testimony pretrial, but

13  allowed the parties in that action to try to establish the

14  foundation at trial.  And that, as noted, is our entire

15  presentation and response --

16           THE COURT:  Okay.  Well, I think we can sort of stop

17  the argument on it.  At this point, I have -- it does not

18  appear that the foundation has been laid, but what I would rule

19  is that this shouldn't be mentioned in opening statement unless

20  you present something to the Court that you can lay a proper

21  foundation, or if you proceed -- if you intend to call a

22  witness to testify, that you take it up with the Court first,

23  that there be -- and show that the foundation can be laid.

24           What is the question -- ultimate question you would

25  ask the witness?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1       MR. KOLENICH:  Your Honor, Detective Young testified

2   that he found no evidence linking James Fields to anybody

3   else -- anybody else, whether defendants in this case or not,

4   as to his criminal act.

5       Now, the plaintiffs well observed that he -- this

6   argument about the universe of possible evidence is not a

7   completely off-base argument.  I believe Detective Young did

8   testify at deposition that other electronic devices were

9   acquired by other law enforcement agencies, specifically

10  federal law enforcement.  The detective also testified that

11  federal law enforcement never told him that they found any

12  evidence of a conspiracy on those other devices.

13      So we would be calling him for the limited purpose of

14  the stuff he did look at.  Did you find any conspiracy?  And it

15  is a fact of the case, and it is the defense position, that it

16  is prejudicial to the defense to deny the jury access to this

17  fact, that the police did not charge anybody else in connection

18  with James Fields's criminal act.  Now, admittedly, that's

19  potentially a little bit more negative evidence.  Ordinarily

20  law enforcement inaction would not be admissible as to effect,

21  but in this case law enforcement took action, both sovereigns,

22  both state and federal charged Fields with murder, convicted

23  him.  If memory served, he's sentenced to more than 400 years

24  in prison.  And they didn't charge anybody else.  This is a

25  fact that is relevant and should be admissible in this case.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          So no, we're not calling Detective Young to say that

2    there is no evidence, and that his investigation establishes

3    there is no evidence of communication or conspiratorial

4    communications with anybody else or any other defendant in this

5    case.  We are calling him for the limited purpose of what he

6    certainly observed and can testify to.  He didn't find any.

7    The FBI told him they didn't find any, or at least never told

8    him that they found any.  And neither of these prosecutorial

9    authorities ever charged anybody else with a crime, not so much

10   as littering, in relation to James Fields's actions.  I think

11   the jury should be able to hear that, Your Honor, at some

12   point.

13          Certainly it's absolutely inaccurate that there is no

14   foundation for that right now as we speak in the wake of the

15   deposition.  The fact of the matter is plaintiffs didn't ask

16   any of these questions to this witness.  They wanted to rely on

17   this argument instead.  However, I understand the Court wants a

18   proffer, and that's all the proffer we can make.  I think we

19   should be allowed to mention at opening that there is nobody

20   else charged with a crime.  We object to a court order that

21   precludes us from doing that.  But the remainder of it I think

22   is understood and sort of ordinary procedure that --

23          THE COURT:  All right.  Well, okay.  The ruling at

24   this time, though, is that there is no proper foundation laid.

25   An opinion that based on what other people may have told him or

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  what other people didn't tell him, I don't -- I don't see any

2  way that that is admissible.

3        MR. KOLENICH:  Well, can we at least say, Your Honor,

4  that no one else was charged with a crime at opening?

5        THE COURT:  Well, that's not the issue in this

6  particular case.  I mean, a crime, of course, the burden of

7  proof is beyond a reasonable doubt.  And there are lots of

8  decisions that go into whether to prosecute someone or not.

9  And I think you're getting into the realm of speculation and

10  all sorts of reasons why someone was or was not prosecuted.

11  Fields was sort of the obvious person to be prosecuted, but I

12  don't -- I think it's sort of going down a rabbit trail when

13  you start talking about no one else was prosecuted.  Then we

14  have to get into why, and speculating on why or why not.  And

15  so I don't think it's -- I don't think it's proper, and I rule

16  that it would not be admissible.

17        MR. SMITH:  Isn't it okay for the jury to speculate,

18  Your Honor, on that, just by saying -- you know, isn't it

19  proper for the jury to say, well, there was no one else

20  charged, so there must not have been any kind of conspiracy,

21  because if -- if the police would have found evidence of it,

22  they would have charged somebody.  I think in a case like this

23  with this much publicity --

24        THE COURT:  Well, I --

25        MR. KOLENICH:  I'm sorry, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

 1          THE COURT:  I'm sorry, who's speaking?

 2          MR. SMITH:  Oh, Josh Smith.  I don't -- I have --

 3          THE COURT:  You know, I mean, what the jury does in

 4   its own mind, God only knows.  I don't think it's proper

 5   evidence.

 6          MR. SMITH:  It's a high publicity case.

 7          THE COURT:  If it comes in, then you can -- I mean,

 8   you certainly can argue, well, no one else was charged with a

 9   crime in this particular case, and therefore there was no

10   conspiracy.  That would -- that doesn't follow.  I mean, a

11   criminal conspiracy is entirely a different matter.

12          MR. SMITH:  Well, it's a very high publicity case.

13          THE COURT:  You have to prove it beyond a reasonable

14   doubt.  And there are charging decisions made by prosecutors

15   all the time that -- you know, we have situations that come up

16   and prosecutors don't charge everyone.  And we get -- we would

17   get off -- off into left field trying to handle why the

18   prosecutors may not have charged someone else.

19          MR. SMITH:  Your Honor, in a case like this with this

20   much publicity, it seems like if there was any even inkling --

21          THE COURT:  Well, there's just no legal merit to that

22   argument, sir, that a case with this much publicity.  That has

23   nothing to do with whether this is admissible.  I just have to

24   rule that it's not admissible, okay?

25          All right.  Anything else?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1            MR. SANCHEZ:  That's all for this motion, Your Honor.

2    I'm also presenting argument on the motion regarding Ray, the

3    motion to authenticate the photos and videos regarding

4    Defendant Ray.  If you want, I can move on to that motion.

5            THE COURT:  All right.  Go ahead.

6            MR. SANCHEZ:  As to that motion, Your Honor, we

7    just --

8            THE COURT:  Is there any opposition to that motion,

9    though, at this point?

10           MR. SANCHEZ:  That's the point I was just about to

11   make, that it's unopposed; and for that reason, we're willing

12   to rest on our brief, unless the Court has any specific

13   questions we'd be more than happy to address.

14           THE COURT:  Okay.  I felt it was not opposed.

15           MR. SANCHEZ:  That's correct.

16           THE COURT:  Okay.  Anything else, then, from the

17   plaintiff?

18           MR. SANCHEZ:  That's all for me, Your Honor.  I think

19   my colleagues may have more arguments, but that's all for me.

20           THE COURT:  Okay.  Did the plaintiff have any other

21   argument?

22           All right.  If not, Mr. Smith, I'll entertain

23   anything you wanted to bring up.

24           MR. SMITH:  Yes, thank you, Your Honor.  So there

25   were -- so I'm fairly new to the case.  I've only been on for

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   about six weeks.  So I'm in the process of catching up.  It's

2   been -- you know, it's been a lot of work to get up to speed

3   with -- at least, you know, to the degree that I would like to

4   be.  So I may be running behind on a few things.  I'll make the

5   necessary motions to file certain things late, if -- but --

6   which brings me to my first point, actually.  I was going to

7   ask the Court if it would be okay if David Matthew Parrott,

8   Matthew Heimbach, and Traditionalist Worker Party presented

9   their case in chief last in the order of defendants.

10          THE COURT:  What I would say normally, if the

11  defendants can get together and decide the order in which they

12  wish to present their case and their argument, that's fine with

13  the Court; however, there being no agreement, I would normally

14  take the list of defendants in the order that they are sued and

15  let it proceed that way, if I were making the decision.

16          MS. DUNN:  Your Honor, this is Ms. Dunn for the

17  plaintiffs.  I have something to say that might inform this

18  discussion and reorient it in an important way, if I may.

19          THE COURT:  All right.

20          MS. DUNN:  Your Honor and Mr. Smith, I think as

21  Mr. Smith is aware, plaintiffs plan to call his clients in our

22  case in chief, because in order to prove our case, we need to

23  call the defendants adversely.  And so I think Mr. Smith's

24  question begs a different question, which is whether he will

25  put on his direct examination of his clients when we call his

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  clients in our case in chief.  It doesn't matter to us whether

2  Mr. Heimbach and Mr. Parrott appear twice, once in our case in

3  chief and once in Mr. Smith's.  And, of course, that order is

4  up to Mr. Smith and the defendants and the Court.  But just so

5  everyone is aware, we do, and we must, in order to prove our

6  case, have to call his clients adversely.

7           THE COURT:  All right.  Okay.  Mr. Smith?

8           MR. SMITH:  You know, that sounds like an excellent

9  time-saving idea.  And I think under normal circumstances if I

10 had been on the case longer, that might be something that would

11 be beneficial.  Here I think it's probably best if the

12 plaintiffs call my clients adversely, and then I still examine

13 them -- conduct direct examination of them in my clients' case

14 in chief so that they can tell their story in an appropriate

15 way at an appropriate time for the jury.

16          THE COURT:  All right.  I mean, that's --

17          MR. SMITH:  As Your Honor said, I can talk to the

18 other defendants about it.  I didn't know if the Court was --

19 if the Court wanted something like that or if it was just going

20 to set the order.

21          THE COURT:  I try to let you try your case.  If

22 there's no objection to anything, I don't interfere.

23          MR. SMITH:  So of course this is premature anyway.

24 So I'm sorry about that.  That does take care of that.

25          THE COURT:  All right.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1           MR. SMITH:  So there was an emergency motion that we

2    put before the Court asking for a protective order to preclude

3    extrajudicial statements by parties, their counsel, and a

4    particular organization that's funding this litigation.  Now, I

5    suppose it's possible that the motion got lost in the slew of

6    motions that Christopher Cantwell filed on the docket and -- or

7    something.  I think that the thing that we had feared in that

8    motion, that there was going to be this online rally that IFA

9    --

10          THE COURT:  Excuse me.  On the motion you just spoke

11   of, I think that was referred to Judge Hoppe.  That may be

12   something -- I don't know whether he's ruled on it or not.

13          MR. SMITH:  Yeah, I don't think there's been a ruling

14   on it yet, Your Honor.  I was just sort of updating the Court.

15   They had this rally.  My clients -- IFA committed defamation

16   per se against my clients.  She said that they were continuing

17   to -- that the defendants were, quote, continuing to threaten

18   or continued to threaten their team, meaning I assume

19   plaintiffs' counsel or somebody.  What they alleged was a

20   crime.  It's completely untrue.  It's defamation per se.  And

21   it's exactly what we had feared.  It contaminates the jury

22   pool.  It's wildly inappropriate.  It's actionable legally.

23   This organization, again, funds this litigation.  They

24   shouldn't be making statements like that and attempting to

25   prejudice potential jurors, especially with a trial of -- you

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

 1 │ know, so much has gone into this trial, it's been going on for

 2 │ so long, to endanger it like that --

 3 │          THE COURT:  What's the plaintiffs' position

 4 │ regarding --

 5 │          MR. SMITH:  Well, IFA has put in --

 6 │          MS. DUNN:  Your Honor --

 7 │          THE COURT:  Hold on.  Let me see if there is any

 8 │ argument about it first.  Who's speaking for the plaintiff?

 9 │          MS. DUNN:  Your Honor, this is Karen Dunn for the

10 │ plaintiffs.  There was an opposition to Mr. Smith's motion

11 │ filed by attorneys for IFA, who are not on this phone call.

12 │ IFA is a separate organization that has its own counsel.  Their

13 │ counsel's name is Mr. Andrew Celli.  He has filed with the

14 │ Court.  I presume that opposition went to Judge Hoppe.  And my

15 │ recommendation would be to put this over until that counsel can

16 │ be on the phone and properly handle the opposition.

17 │          THE COURT:  All right.  Well, it does -- if the

18 │ plaintiffs are being threatened by anyone, they should be

19 │ reporting it to the FBI or the Marshals.  It shouldn't be --

20 │ they shouldn't be calling someone else and someone else putting

21 │ out a press release on it.  It ought to be handled.

22 │          MR. SMITH:  That's why we asked for a protective

23 │ order.

24 │          MS. DUNN:  We agree, Your Honor.

25 │          THE COURT:  With Mr. Smith, it would be highly

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  inappropriate for those kind of -- and if someone is involved

2  heavily in the case, whether they are a party or not, they

3  shouldn't be -- shouldn't be doing that.

4         MS. DUNN:  We understand and agree, Your Honor.

5         THE COURT:  All right.  Mr. Smith, anything else?

6         MR. SMITH:  So I think that another issue that I had

7  written down here was that the Court recently made a decision

8  on the Heaphy reports.  And I was going to ask the Court if it

9  would like to reconsider that in light of the residual

10 exception to the hearsay rule, which doesn't appear to have

11 been discussed in the Court's opinion.  I'm not sure if it was

12 raised by other -- if it was raised by other defendants, but I

13 would like the opportunity to raise it with the Court.

14        The residual -- this really seems like a case where

15 the residual exception fits quite well.  This is the only --

16 the Heaphy report is the only independent report of these

17 events conducted by anyone ever.  These are -- this is an

18 extraordinary case, Your Honor, in many ways.  And the

19 plaintiffs, of course, admit this all the time.  They say this

20 case is extraordinary.  The residual --

21        THE COURT:  Mr. Smith, look, almost all rulings are

22 susceptible to motions to reconsider.  And I think probably

23 what you need to do -- should do is file a short motion and

24 state your position and the Court can rule on it.

25        MR. SMITH:  Thank you, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1       THE COURT:  I don't particularly want to get into the

2   argument at this point because I doubt that others are prepared

3   to respond.

4       MR. SMITH:  I do know that the plaintiffs had briefed

5   the issue.  I believe, if I'm not mistaken, they had included

6   that in their brief on it, which was -- because obviously they

7   had been planning to file that for a while.  It was like 15

8   pages or something.

9       I'm trying to -- I'm trying to -- given that there's

10  so little time before trial and I'm really working to get up to

11  speed on everything, I'm trying to limit the number of things I

12  have to write or the length of those things.  So I apologize in

13  advance if the things that I end up filing with the Court

14  aren't as lengthy as the Court is used to.

15      THE COURT:  Well, lengthiness is not the virtue I'm

16  concerned about.  It's just, you know, we have I think by now

17  probably hundreds of motions in this case.  And we're trying to

18  move on and take care of them as we can.  I note what you're

19  saying.  If you want to file a motion to reconsider, it doesn't

20  have to be long.

21      MR. SMITH:  Of course, Your Honor.

22      Another thing -- this actually goes to what

23  Mr. Kolenich was saying before -- I don't think that -- there

24  are certain terms that we're talking about -- I believe

25  Mr. Kolenich wanted to limit certain terms like "conspiracy" or

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  "racial animus" or something like that.  There's only --

2  there's a couple -- a couple of terms that -- sort of

3  pejoratives that I'm hearing a lot in this case, and I don't

4  think that they -- they're subjective terms without any kind of

5  coherent, agreed-upon definition.  And I don't think they

6  should be used to refer to, well, any of the defendants, but

7  particularly my clients.  Those terms are "white supremacist"

8  and "neo-Nazi."  It's hard to even understand what those terms

9  mean.  But my clients don't identify themselves that way, and I

10  don't think that we should be referring to people by things

11  they don't refer to themselves as.

12          THE COURT:  Well, they are pejorative terms.

13          MR. SMITH:  They're also inaccurate.

14          THE COURT:  I've said that, you know, the plaintiffs

15  should not be referring to these people -- you know, calling

16  someone names.  And I think they agreed to that.  It's not

17  something in the opening statement you would call somebody a

18  white supremacist or some other -- racist, or anything like

19  that.  But it's hard to say you can't bring up a term in a case

20  like this when --

21          MR. SMITH:  Yeah, obviously the no conspiracy thing,

22  well, that seems like -- you know, how would you do that in a

23  case where there is allegations of conspiracy?  But --

24          THE COURT:  I mean, maybe you can correct me, but

25  there are persons who do not take the term -- if they were

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  called a white supremacist, they wouldn't take that as an

2  insult.

3          MR. SMITH:  Well, it's just generally not accurate.

4  I mean, if they refer to themselves that way --

5          THE COURT:  But everyone doesn't necessarily take --

6  you know, I mean, I'm reminded of a case that we had where the

7  lawyer told him -- this is a true story -- the lawyer told the

8  a jury, Insulting words depends on who says them, and to whom,

9  and the circumstances.  And he said, For instance, you may call

10  me a name I would take as a grievous insult, whereas His Honor

11  would take it as a compliment.

12          You know, that's the way things are.  Different

13  people may be proud -- people are proud of their beliefs.

14          MR. SMITH:  I mean, usually --

15          THE COURT:  What I'm saying, though -- I mean, I've

16  already said it's not appropriate to call somebody a name -- a

17  pejorative name.

18          MR. SMITH:  Right.  Exactly.

19          THE COURT:  That type of thing.  And if it happens,

20  you know, object to it.  And I will try to police the

21  objections so that you won't be jumping up and down.  I don't

22  think the plaintiff intends to do that, or at least they

23  indicate they don't.  I think it's not appropriate and --

24          MR. SMITH:  Thank you.  I'm satisfied with that, Your

25  Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          THE COURT:  You can't rule out the use of certain

2   words during the trial in all circumstances.  It's not

3   appropriate in every circumstance to call somebody a certain

4   name, even though other people wouldn't -- some people wouldn't

5   think it's insulting.

6          Who was trying to speak?

7          MS. DUNN:  Sorry, Your Honor.  This is Ms. Dunn.  I

8   just -- for clarity, because I don't think we want openings --

9   anybody's openings in this case interrupted by many objections,

10  I think we just should bring some clarity to the situation.

11         I don't think anybody expects to jump up in court and

12  say in opening statement, Matthew Heimbach is a Nazi.  I do

13  think it is impossible, given the evidence in this case, not to

14  say that you will see evidence of Nazi imagery, that you will

15  see evidence that white nationalists came to Charlottesville.

16  And I think that we very much will say what we intend to prove.

17  And then, you know, I think the jury will see the evidence, and

18  the witnesses will be on the stand for direct and cross.  But I

19  think, you know, I just want to bring some clarity to the

20  situation, because part of our responsibility in this case is

21  to prove that the defendants acted with racial animus.  So we

22  have to tell the jury that we plan to prove that, and to say

23  you're going to see evidence, and to show them what they're

24  going to see in the case.  So that's --

25         THE COURT:  Well, I think I've said that that's

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1   appropriate --

2          MS. DUNN:  I just want to make sure.

3          THE COURT:  -- that you don't say Joe Smith here is a

4   Nazi or some other -- or a neo-Nazi or whatever.  I mean, you

5   can say you're going to present evidence of those symbols.  I

6   think certain symbols are Nazi symbols.  And I don't know how

7   you try the case without --

8          MR. SMITH:  I'm fine with what Ms. Dunn said.  And I

9   don't mind the term "white nationalist."  I don't care about

10  that.  It's more the white supremacist, neo-Nazi, or those

11  kinds of terms.

12         THE COURT:  I think you're all on the same page here.

13  It just has to be handled at trial if there is any infraction.

14         MS. DUNN:  Thank you, Your Honor.

15         MR. SMITH:  I just have one more thing, Your Honor,

16  and thank you for being so patient --

17         THE COURT:  All right.

18         MR. SMITH:  -- with all this stuff.  I'm trying to

19  get it all on a list to tell you all at once.

20         THE COURT:  Go ahead.

21         MR. SMITH:  I was wondering -- and Mr. Bloch is on

22  this call, so I can just ask anyway.  I just need to ask:  Is

23  it possible that the Court can -- well, I don't know if the

24  Court needs to order it, or if I can just make this request of

25  Mr. Bloch, but I need to get copies of plaintiffs' -- all the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1  exhibits on plaintiffs' exhibit list, most recent exhibit list.

2  Having not been with this case for a very long time, I'm sure

3  those exhibits are spread all over the case, and I just don't

4  have them.  And I really would like to be able to review them

5  so I know what to object to.

6        MR. BLOCH:  Judge, this is Michael Bloch for the

7  plaintiffs.  I'm happy to call Mr. Smith offline and work this

8  out.  I know he's new to the case and getting up to speed, and

9  there's a huge volume of evidence.  And I'm happy to --

10        MR. SMITH:  Thanks.  I appreciate it.

11        MR. BLOCH:  -- point him in the right direction.

12        THE COURT:  All right.  Thank you.

13        MR. SMITH:  That's everything, Your Honor.  Thank you

14  very much.

15        THE COURT:  Anything else?

16        MR. SMITH:  That's all.  Thank you, Your Honor.  I

17  appreciate it.

18        MS. DUNN:  Your Honor, from the plaintiffs there are

19  a couple of housekeeping items we just wanted to flag for the

20  Court.

21        THE COURT:  All right.

22        MS. DUNN:  One is that we're hoping, prior to the

23  start of trial, to get a ruling on the sanctions motion against

24  Mr. Heimbach.  So we just wanted to mention that.

25        We wanted to flag for the Court that we -- we have

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

 1  filed I think yesterday two other motions.  One is to exclude

 2  Daryl Davis as a witness.  And the other, as was mentioned

 3  earlier, is a motion to preclude argumentive file names of

 4  evidence, since the file names will go to the jury; and also,

 5  in that same motion, to exceed the megabyte limit of Box,

 6  because some of the exhibits in this case are very big.

 7          So we just wanted to flag those for the Court.

 8          THE COURT:  All right.  Okay.  We'll -- I'll see if

 9  my clerk got that down.

10          MS. DUNN:  Then two other things, but I know the

11  Court mentioned at the beginning of this hearing that you may

12  set another Zoom for this week.  So we can wait, or happy to

13  bring up those few things now, if there is not going to be a

14  Zoom later this week.

15          THE COURT:  Okay.  What's the general feeling about

16  another conference during the week?  It looks like Wednesday

17  would be the best day for us.

18          MR. SMITH:  I think that sounds great, Your Honor.

19          MS. DUNN:  Yeah, for the plaintiffs that sounds

20  wonderful, and we appreciate Your Honor's willingness to do it.

21          THE COURT:  Okay.  Let me check to see what would be

22  a good time.  Excuse me just a minute.

23          Okay.  Would 9:30 Wednesday be okay?

24          MS. DUNN:  Yes for the plaintiffs, Your Honor.

25          MR. SMITH:  Yes, Your Honor, that's great.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1          THE COURT:  We may have -- we may be able to take up

2    some of the motions on Wednesday that --

3          MR. KOLENICH:  Your Honor, it's Jim Kolenich.  I'm

4    not available Wednesday at 9:30.

5          THE COURT:  You're not?

6          MR. KOLENICH:  No, sir.

7          THE COURT:  Are you available any time Wednesday?

8          MR. KOLENICH:  Yes, sir, any time from 11:30 forward.

9          THE COURT:  All right.  How about 1:00 with everyone

10   else?

11         MR. SMITH:  That's great, Your Honor.

12         MS. DUNN:  Yes, Your Honor, for the plaintiffs that

13   works.  Thank you.

14         MR. LEVINE:  Your Honor, Wednesday at 1 p.m?

15         THE COURT:  Yes.  Is that okay?

16         MR. LEVINE:  I think Mr. Bloch should check with

17   Ms. Kaplan.  I'm not sure Wednesday afternoon works for her or

18   for me.  I don't have to be in attendance unless Your Honor

19   proposes that we argue the motion as to --

20         THE COURT:  I'm sorry, I'm not sure who's speaking,

21   and you're breaking up.

22         THE REPORTER:  This is the court reporter.  I'm

23   having trouble hearing you as well.

24         MR. SANCHEZ:  Your Honor, it was Alan Levine

25   speaking.  He was saying he may not be able to attend on

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1    Wednesday, but his presence is not needed unless Your Honor

2    wants argument on Tubbs's conviction, which we did not argue

3    today because Jones was not present.

4            THE COURT:  Okay.  All right.  We will not hear

5    argument on the conviction.

6            MS. DUNN:  Thank you, Your Honor.

7            THE COURT:  All right.  Heidi, is there anything we

8    can do -- have a bigger file size for the Box?

9            THE CLERK:  Your Honor, they simply need to say

10   Exhibit 1 exceeds 50 megabytes.  They just need to do Exhibit

11   1A, 1B, 1C until it meets the requirements.  Box cannot take an

12   exhibit over 50 megabytes.  It won't -- it will not upload

13   properly after the fact.  But you just need to break it down in

14   manageable portions, 1A, B, C.  Does that make sense?

15           MS. DUNN:  Yes.  Thank you, Ms. Wheeler.

16           THE CLERK:  You're welcome.

17           THE COURT:  Okay.  Is there anything else this

18   morning?

19           Okay.  If not, we'll meet again on Wednesday at

20   1 p.m.  Thank you all.  I appreciate you being here.  We'll

21   recess now.

22   (Proceedings concluded, 10:39 AM)

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/18/2021

1                    C E R T I F I C A T E

2        I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3   the United States District Court for the Western District of

4   Virginia, appointed pursuant to the provisions of Title 28,

5   United States Code, Section 753, do hereby certify that the

6   foregoing is a correct transcript of the proceedings reported

7   by me using the stenotype reporting method in conjunction

8   with computer-aided transcription, and that same is a

9   true and correct transcript to the best of my ability and

10  understanding.

11       I further certify that the transcript fees and format

12  comply with those prescribed by the Court and the Judicial

13  Conference of the United States.

14       /s/ Lisa M. Blair                Date: October 19, 2021

15

16

17

18

19

20

21

22

23

24

25