Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

```
 1                     UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF VIRGINIA
 2                      CHARLOTTESVILLE DIVISION

 3   ****************************************************************

 4    ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                                  OCTOBER 20, 2021, 3:00 PM
 5                                PRETRIAL CONFERENCE VIA ZOOM
             Plaintiffs,
 6   vs.

 7                                Before:
                                  HONORABLE NORMAN K. MOON
 8   JASON KESSLER, ET AL.,       UNITED STATES DISTRICT JUDGE
                                  WESTERN DISTRICT OF VIRGINIA
 9
             Defendants.
10
     ****************************************************************
11
     APPEARANCES:
12

13   For the Plaintiffs:       ALAN LEVINE, ESQUIRE
                               COOLEY LLP
14                             1114 Avenue of the Americas, 46th
                               Floor
15                             New York, NY  10036
                               212.479.6260
16
                               DAVID E. MILLS, ESQUIRE
17                             COOLEY LLP
                               1299 Pennsylvania Avenue, NW,
18                             Suite  700
                               Washington, DC  20004
19                             202.842.7800

20

21

22   Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                       255 West Main Street, Suite 304
23                     Charlottesville, Virginia  22902
                       434.296.9284
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25   TRANSCRIPT PRODUCED BY COMPUTER.
```

          Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

 1   APPEARANCES CONTINUED:

 2   For the Plaintiffs:          YOTAM BARKAI, ESQUIRE
                                  MICHAEL L. BLOCH, ESQUIRE
 3                                ROBERTA A. KAPLAN, ESQUIRE
                                  JONATHAN R. KAY, ESQUIRE
 4                                RAYMOND P. TOLENTINO, ESQUIRE
                                  Kaplan Hecker & Fink LLP
 5                                350 Fifth Avenue, Suite 7110
                                  New York, NY  10118
 6                                212.763.0883

 7                                KAREN L. DUNN, ESQUIRE
                                  JESSICA E. PHILLIPS, ESQUIRE
 8                                GIOVANNI SANCHEZ, ESQUIRE
                                  Paul, Weiss, Rifkind, Wharton &
 9                                Garrison LLP
                                  2001 K Street, NW
10                                Washington, DC  20006
                                  202.223.7300
11
                                  MAKIKO HIROMI, ESQUIRE
12                                Paul, Weiss, Rifkind, Wharton &
                                  Garrison LLP
13                                1285 6th Avenue
                                  New York, NY  10019
14                                212.373.3000

15

16   For the Defendants:         DAVID L. CAMPBELL, ESQUIRE
                                  Duane, Hauck, Davis, Gravatt &
17                                Campbell, P.C.
                                  100 West Franklin Street, Suite 100
18                                Richmond, VA  23220
                                  804.644.7400
19
                                  JAMES E. KOLENICH, ESQUIRE
20                                Kolenich Law Office
                                  9435 Waterstone Blvd., Suite 140
21                                Cincinnati, OH  45249
                                  513.444.2150
22
                                  WILLIAM E. REBROOK, IV, ESQUIRE
23                                The ReBrook Law Office
                                  6013 Clerkenwell Court
24                                Burke, VA  22015
                                  571.215.9006
25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

```
 1  APPEARANCES CONTINUED:

 2  For the Defendants:          JOSHUA SMITH, ESQUIRE
                                 Smith LLC
 3                               807 Crane Avenue
                                 Pittsburgh, PA  15216
 4                               917.567.3168

 5                               RICHARD SPENCER, PRO SE
                                 P.O. Box 1676
 6                               Whitefish, MT  59937

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  (Proceedings commenced, 3:00 PM)

2          THE COURT:  Heidi, you may call the case.

3          THE CLERK:  Yes, Your Honor.  This is Civil Action

4  Number 3:17CV72; Elizabeth Sines and others versus Jason

5  Kessler and others.

6          THE COURT:  Okay.  Are the plaintiffs ready?

7          MS. DUNN:  Yes, we are, Your Honor.

8          THE COURT:  Defendants ready?

9          MR. KOLENICH:  Yes, Your Honor.

10         MR. CANTWELL:  No.  I'm not sure exactly what's

11  happening here.

12         THE COURT:  Who is speaking?

13         MR. CANTWELL:  Mr. Cantwell.  This is Christopher

14  Cantwell.

15         THE COURT:  Okay.  Well, we're having another

16  pretrial hearing, and we're just going to discuss the issues

17  I'm going to refer to in a few minutes.

18         I will remind everyone that under Standing Order

19  2020-12, the Court's prohibition against recording and

20  broadcasting court proceedings remains in force.  Attorneys,

21  parties, or staff or members of the public or press accessing

22  this hearing today may not record or broadcast it.

23         I plan to raise the following issues:  One, some

24  reminders --

25             (Technical interruption.)

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1         I plan to raise the following issues:  Some reminders

2   about limited access to the courthouse during trial and updates

3   regarding jury questionnaires; and a time to potentially

4   resolve some for-cause strikes; and three, a number of

5   Mr. Cantwell's outstanding motions in limine and other matters

6   he has raised.

7         Before we move into other aspects of the hearing --

8   all right.  Whoever is talking, please mute your sound.

9         Before we move into other aspects of the hearing, let

10  me remind the parties here and their counsel and for the

11  benefit of any members of the public that are interested in

12  this case, that the Court has ruled that for the upcoming

13  trial -- and this is because of the space limitations

14  primarily -- members of the public will not be permitted in the

15  courthouse during this trial.  And if you show up thinking you

16  can come in, you'll be disappointed.  Instead -- and it's more

17  convenient -- any interested members of the public will be able

18  to listen to live audio by calling into a dial-in line that

19  will be on the court's public website.  Courthouse access is

20  limited to the parties, litigants themselves, their counsel of

21  record, witnesses, jurors, courthouse staff and security, and

22  those members of the press who have submitted applications for

23  press credentials that have been approved.  And that's it.  The

24  Court has issued orders so limiting physical entry into the

25  courthouse and facilitating public access by these other means,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  audio dial-in and press access, so as to ensure that the case

2  can proceed to trial in these extraordinary circumstances given

3  the still ongoing COVID-19 pandemic, among other reasons

4  described in my orders.

5          I should say -- and I intend to issue a written order

6  to this effect -- that the pretrial conference on Friday,

7  October 22nd, will also be limited to these groups.

8          Next I wanted to provide an update on the jury

9  questionnaires.  Yesterday the clerk's office received requests

10  from four defense counsel to get access to redacted jury

11  questionnaires.  I understand these are Bryan Jones, Elmer

12  Woodard, David Campbell, and Mr. ReBrook.  Are there any other

13  lawyers from the defense side who should be designated as

14  getting access to those, subject to the Court orders on

15  maintaining their confidentiality?

16          MR. SPENCER:  This is Richard Spencer.  I would like

17  access to those.

18          THE COURT:  Well, we have issued other instructions

19  so that anyone who is not represented by counsel will have

20  access to them through the clerk's office.

21          A question for plaintiffs' counsel:  I'm informed by

22  the clerk we haven't gotten any designated counsel or third

23  parties from you who will be getting access to the redacted

24  questionnaires.  The Court entered an order yesterday which

25  should have clarified the question raised about potential

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  third-party access.  Who from plaintiff's side should get

2  electronic access to these?

3         MS. DUNN:  Your Honor, we will get you our list of

4  six right after this hearing, and we appreciated the Court's

5  order yesterday.

6         THE COURT:  All right.  If you would let the clerk

7  have that.

8         Those approved designated should now have access to a

9  large amount of the redacted jury questionnaires.  I anticipate

10 the remaining questionnaires we receive will be made available

11 by tomorrow morning.  We get a few more each day.  The clerk's

12 office is doing a great job making them available.  The juror

13 occupation list, a separate confidential document, will be made

14 available as well.

15        For our *pro se* defendants, the Court will make

16 available hard copies of the redacted questionnaires and a

17 juror occupation list at the pretrial conference, and then

18 again for use at the trial.  The Court has required, and will

19 require, any *pro se* party to sign a declaration under penalty

20 of perjury that the information contained in those

21 questionnaires will not be disclosed to anyone else.

22        I did want to raise the issue about excusal requests

23 and to discuss potentially setting a time to consider any

24 strikes for cause before Monday, because there are some on the

25 questionnaires I think that obviously we could get rid of.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          Now, regarding excusal requests, the Court has

2    received --

3          (Technical interruption.)

4          MR. SPENCER:  Does that indicate that someone is

5    recording this call using the voice system?

6          THE COURT:  Can you silence that, Heidi?

7          THE CLERK:  Yes, Your Honor, I muted it.  It appeared

8    that someone was trying to dial in.

9          THE COURT:  All right.  The Court intends to excuse

10   them all based on the circumstances present in those requests,

11   as they have amply presumed a showing of undue hardship or

12   extreme inconvenience.  Four of those requests -- I mean, we're

13   of course maintaining the jury questionnaires.  Four of those

14   requests were from doctors or medical professionals.  Two would

15   not have been able to sit for personal health reasons.  Four of

16   those requests were for people having active care and custody

17   of a child under 10 who could not serve without jeopardizing

18   the child's health, or were essential to care of an aged or

19   infirmed person.  And six were from persons who were essential

20   to their businesses, such that their absence would mean it

21   would close or cease to function or otherwise cause extreme

22   inconvenience.  And all of those are reasons that persons are

23   entitled to be excused.  Unless I am mistaken, I do not believe

24   that any questionnaires coming along with those excusal

25   requests were included in the lists of questionnaires that may

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   have been made available to the parties.  I believe we now have

2   about 110 returned questionnaires, and we'll get more every

3   day, and others jurors may show up with theirs in hand on

4   Monday.

5           The Court plans to have a jury of 12.  I thought we

6   could raise -- or allot some time at Friday's pretrial

7   conference to the issue of any strikes for cause that you may

8   wish to raise at that time.  If any are raised at that time, we

9   could go through by juror number and raise potential strikes

10  for cause so as to reduce the number of prospective jurors

11  actually showing up, as they would otherwise perhaps be

12  disqualified.  And I'm just talking now about some people who

13  are obviously not qualified, or I think that we could all

14  excuse that should be excused.

15          Plaintiffs' counsel, any comments with regard to that

16  matter?

17          MS. DUNN:  No, Your Honor.

18          THE COURT:  All right.  Any of the defendants?

19          MR. CAMPBELL:  Judge, very briefly, Dave Campbell for

20  Defendant Fields.  I just want to make sure if we don't raise a

21  number on Friday, does that waive the right --

22          THE COURT:  No.

23          MR. CAMPBELL:  -- to raise numbers for cause on

24  Monday?

25          THE COURT:  No, absolutely not.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1            MR. CAMPBELL:  Thank you, Your Honor.

2            THE COURT:  Any *pro se* --

3            MR. SPENCER:  I have no problem.

4            THE COURT:  Okay.  Mr. Campbell, you will be in the

5    courtroom on Friday for the pretrial conference.

6            Lastly on my agenda, I'll turn to a number of motions

7    filed by Mr. Cantwell.  Mr. Cantwell, you have filed -- you

8    have been prolific in your filings over the past month.  By my

9    count, I think 24 motions were filed that remain pending.  The

10   plaintiffs point out in your briefing and motions you write

11   that you got help from others who were not lawyers, not counsel

12   of record for you in this case.  It appears that most of these

13   were ghost written, a practice that is at a minimum

14   inappropriate, and some courts might impose sanctions for those

15   engaging in that practice.  The Court is inclined, and will

16   endeavor to address these motions, even if ghost written, on

17   their merits.  But given the massive volume of filings from you

18   alone in a short amount of time, and given the circumstances

19   under which they were submitted, the Court will, by necessity,

20   need to address these motions and requests in a quicker fashion

21   than would otherwise be the case.  There were a number of

22   specific motions by you I was going to raise, give you a chance

23   to say anything on your behalf on them, and then give

24   plaintiffs a chance to respond.

25           First I'd like to address three related motions filed

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   by Mr. Cantwell.  These are docket numbers 1066, 1085, and

2   1088.  They broadly raise -- relate to different arguments.

3   Mr. Cantwell advances that discrimination against those who are

4   Jewish is not a form of class-based, invidiously discriminatory

5   animus prohibited by 1985(3), the statute at issue.  For that

6   view, Mr. Cantwell relies on a Fourth Circuit decision that was

7   reversed and vacated by the Supreme Court.  But I note the

8   prior published Fourth Circuit precedent like *Ward v. Connor*

9   concluded that religious discrimination being akin to invidious

10  racial bias falls within the ambit of 1985(3).  Subsequent

11  cases of the Fourth Circuit have continued to cite *Ward v.*

12  *Connor* for the proposition that the Fourth Circuit has

13  determined that 1985 -- Section 1985 extends to religious

14  discrimination, as well as race.

15       My question to you, Mr. Cantwell:  Is there any

16  opinion you can point to in the Fourth Circuit that is still

17  good law and hasn't been reversed?

18       MR. CANTWELL:  Well, you know, unfortunately I'm

19  completely unprepared for this.  Nobody told me that this was

20  happening.  I haven't even been able to look at my own motion

21  in some period of time.

22       My understanding of the -- I don't have the case law

23  to cite you.  My understanding of 1985(3) is that it's -- at

24  least the legislative intent of it, and as it was practiced for

25  some period of time, is to prevent the -- the -- the incidence

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  of slavery, and the idea behind it --

2          THE COURT:  Well --

3          MR. CANTWELL:  If I could just get out what my

4  understanding of it is, and then you can tell me I'm wrong.

5  It's fine.

6          THE COURT:  Well, no, I don't have to tell you you're

7  wrong.  I'm telling you the Fourth Circuit said you're wrong.

8  And, you know, that's the -- that's really the end of it.

9  There's nothing -- even if I totally agreed with you, I can't

10  disagree with the Fourth Circuit.  So that's -- you know,

11  there's no need, you know, for us to argue those things,

12  really.

13          Next we have your objections to the witness list.

14  You seek to preclude testimony of 47 of plaintiffs' witnesses

15  under Federal Rule 37 because the plaintiffs did not disclose

16  the witnesses in a timely manner.  I have reviewed the

17  pleadings and plan to rule that most of the witnesses do not

18  need to be excluded because the plaintiffs disclosed them in

19  accordance with the Court's deadlines; however, the plaintiffs

20  have admitted they did not disclose ten of these witnesses on

21  time.  They have agreed to remove six of them from the witness

22  list.  And I plan to hold that the plaintiffs' late disclosure

23  for one of them was harmless because they only planned to call

24  the witness as an authenticating witness.

25          However, there are three witnesses who the plaintiffs

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  did not disclose on time, but who the plaintiffs say they have

2  made available for deposition.  These witnesses are Melissa

3  Elliott, Larry Sabato, and Sean Webster.  I would like to hear

4  argument on those witnesses.

5       MR. CANTWELL:  From my perspective, I don't know when

6  these witnesses were disclosed to everybody else, but as I

7  think you're aware, I was left completely in the dark for 14

8  months.

9       THE COURT:  Well, Mr. Cantwell, we're aware of your

10  circumstances.  We're doing the best we can to work with you,

11  work with your problem.  And anything the Court has been able

12  to do, we've done.  And we are where we are, and the facts are

13  what they are.

14       So does the plaintiff wish to speak to these three

15  witnesses?

16       MR. BARKAI:  Your Honor, this is Yotam Barkai of

17  Kaplan Hecker & Fink.  I'd like to briefly address these three

18  witnesses.  Your Honor, plaintiffs have made witnesses Elliott,

19  Sabato, and Webster available for deposition, which under the

20  Fourth Circuit case law cures the prejudice, insofar as any

21  prejudice might exist from the timing of the disclosure.  It

22  cures that prejudice by enabling Mr. Cantwell to take the

23  deposition of those witnesses at this time.  So while we did

24  disclose those witnesses, once we became aware that we may want

25  to seek their testimony at trial, we also believe that, insofar

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   as any prejudice might exist, we have cured that prejudice by

2   making those witnesses available for deposition now.  We --

3            Yes, Your Honor?

4            THE COURT:  I'm sorry.  Go ahead.  Finish.  I didn't

5   mean to interrupt.

6            MR. BARKAI:  I was just going to add, Your Honor,

7   that as the Court observed, we have been doing everything that

8   we possibly can to get Mr. Cantwell notice of every witness as

9   soon as we can.  We have been doing everything in our power to

10  serve him with all documents and all notices as soon as we can.

11  And no other defendant has objected to any of our witnesses on

12  our list, any of our deponents, any of the designations on our

13  list.  Mr. Cantwell is the only one.

14           MR. CANTWELL:  Mr. Cantwell is the only one who was

15  left in the dark for 14 months.  I got -- at the Grady County

16  Jail, I received -- from the postal mail from the Grady County

17  jail staff -- this list of witnesses that they would make

18  available for deposition.  I had mailed a response to that to

19  the Court.  And I don't remember the precise dates because,

20  again, I was stripped of all my papers for the fourth time in a

21  year.  What I got was a printed email from Michael Bloch

22  saying, Get back to me by this date if you want to depose these

23  witnesses.  And by the time I had gotten that notice, the time

24  had already passed.  And then immediately after that, Grady

25  County sticks a cotton swab up my nose and tells me I'm

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  leaving.  And here I am.  So the idea that I had a chance to

2  depose these witnesses -- I don't even know what these

3  witnesses are testifying to.  What question would I ask them,

4  were I to depose them, because this comes completely out of the

5  blue?

6            THE COURT:  Okay.  I'll ask plaintiffs' counsel

7  again:  What is the general nature of the testimony of these

8  three witnesses?

9            I think counsel disappeared from my screen.  I'm not

10  hearing anything.  What I hear is garbled.

11            MR. LEVINE:  Can you hear me now?  Is that better?

12            THE COURT:  Somewhat.

13            MR. LEVINE:  I'm sorry, I'm not sure what the

14  technology issue is, but I'll try to speak as clearly as I can.

15            MS. DUNN:  Your Honor, given the technological

16  difficulties, would it be okay to table this issue?  And I

17  think we -- it would enable us to discuss this issue

18  internally.

19            THE COURT:  Table it like till tomorrow, you mean?

20            MS. DUNN:  Yeah, until tomorrow.

21            THE COURT:  Okay.

22            MR. BARKAI:  Your Honor, I apologize for the

23  technical difficulties.

24            THE COURT:  Well, okay.  All right.  Mr. Cantwell has

25  also moved for an order barring historical evidence about the

16

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  Holocaust especially, the expert testimony of Dr. Lipstadt,

2  citing Rules 403 and 702.

3         I anticipate denying this motion.  The plaintiffs

4  have -- will have to prove that defendants were motivated by

5  racial animus, and that defendants entered into an agreement

6  with one or more specific co-conspirators to engage in racially

7  motivated violation.  Much of plaintiffs' evidence must

8  necessarily take the form of communications between defendants,

9  as well as evidence of what those communications were meant to

10  convey and how they were received.  As the Court explained in

11  its memorandum opinion at docket 941, historical context is

12  admissible to aid the jury in deciding the rhetoric and symbols

13  used by defendants.  Of course, defendants remain free to

14  object at trial should the usefulness of such testimony become

15  eclipsed by the risk that it will induce jurors to make a

16  decision that is on an improper basis.

17         Okay.  I wanted to just say a few words about how I

18  normally handle court.  You know, we're planning to open at

19  9:30 for the days we're picking the jury.  And just as a matter

20  of protocol, I generally have sort of a formal opening of court

21  where everyone rises and stands and the bailiff does the

22  opening one time at the opening of trial.  But after breaks and

23  lunch, generally I just ask the bailiff to call court to order

24  and ask people to take their seats.  In particular, this many

25  people it's going to require that you take your seat promptly

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  so we don't waste a lot of time.

2        I will say if you have any matters you need to take

3  up with the Court that the jury shouldn't hear, let me know

4  before we go back into court so we can hold the jury up and not

5  have them come in until they're ready to hear whatever is going

6  on in the court.

7        I stop court generally at 5:00 or a few minutes

8  before.  I usually tell the jurors when they come that they can

9  count on leaving by 5:00 so that -- most of them have family

10  responsibilities, and they like to know generally when they're

11  going to be able to go home and have their families know when

12  to expect them.  So don't put witnesses on and expect that

13  we're going to stay till 5:30 or 6:00 or later to finish with a

14  particular witness.  If you have a witness who has to get out

15  of town by a certain time, be sure to call the witness in time

16  for the witness to complete his or her cross-examination --

17  examination and cross-examination.

18        All right.  Are there any other matters you wish to

19  take up now?  Plaintiffs?

20        MR. CANTWELL:  Judge --

21        THE COURT:  Mr. Cantwell, is that you?

22        MR. CANTWELL:  That's me.  I started speaking and you

23  said "plaintiffs," so I stopped.

24        THE COURT:  You may speak.

25        MR. CANTWELL:  Well, one of those motions in limine

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   that I had is to permit me to have court clothes; and to bar

2   argument, evidence, and testimony about my current incarcerated

3   status.  And I don't know if this is an appropriate time to

4   address that.

5          THE COURT:  Well, yeah, we can address it now.  I

6   don't know that your status is relevant.  I understand you need

7   access to some civilian clothing.

8          MR. CANTWELL:  Well, I can have clothing delivered.

9   I'm sorry, I didn't mean to interrupt you.  I thought you were

10  done.

11         I can have clothing brought about.  I can have that

12  done.  I just need to have it shipped to the jail, if that's

13  okay.  And then, of course, when I'm in the courtroom, I know

14  for my criminal trial there was some question that we had to

15  deliberate about my handcuffs and that sort of thing.

16         THE COURT:  Well, we'll take that up with the

17  marshals.  I mean, we'll try to be circumspect and not show

18  that to the jury.  But I'll have to take that up with the

19  marshal, that particular situation.

20         MR. CANTWELL:  Okay.

21         MR. BLOCH:  Judge, this is Michael Bloch from the

22  plaintiffs.  May I respond to that -- on that issue?

23         THE COURT:  Yes.

24         MR. BLOCH:  Thank you, Judge.

25         As we noted in our papers, we have no issue at the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  outset as to not mentioning Mr. Cantwell's incarceration or his

2  wearing court clothes.  We agree that, all things being equal,

3  those particular issues shouldn't be relevant, and we have no

4  intention of raising it.

5       The one point I wanted to note is that there is at

6  least one way in which we believe Mr. Cantwell could

7  theoretically open the door to that issue.  And if, in fact --

8  Mr. Cantwell, as you know, has raised a number of issues

9  regarding the manner in which his incarceration has, in fact,

10  impacted his ability to litigate this case; including many,

11  many motions about not having received documents from

12  plaintiffs and from defendants, which, of course, is primarily

13  a function of the fact that he was incarcerated.  We believe

14  that issue is similarly irrelevant to the issues at trial, and

15  so should be precluded in any event; but just wanted to raise

16  for the Court that to the extent Mr. Cantwell wants to raise

17  issues about the manner in which his incarceration have

18  negatively impacted his ability to raise the case, and should

19  Your Honor permit that sort of evidence and testimony, it would

20  be our position that in that event his incarceration would

21  become relevant to the issues at trial, and we would -- and we

22  would like to raise them.

23       THE COURT:  Well, I mean, I wouldn't anticipate,

24  Mr. Cantwell, that you're going to be telling the jury that

25  you're in jail and that's why you're not well prepared, are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   you?

2          MR. CANTWELL:  Yeah, I don't imagine that that would

3   be -- I don't imagine that those particular words would fall

4   out of my mouth.  I imagine that it could become conspicuous

5   that I have no idea what's happening, because I don't.  And

6   that could absolutely, you know --

7          THE COURT:  Early on, didn't you have a lawyer in

8   this case?

9          MR. CANTWELL:  Yeah.  As I said in prior filings, you

10  know, during the time I was represented by counsel, I left this

11  in capable hands.  And I never expected this thing to get to

12  trial, frankly.  When my separation from them occurred, I was

13  not debriefed in any sense.  And I don't know how much I want

14  to say about that, because I've been warned if I say too much

15  about it, then I'm waiving my attorney-client privilege.

16         THE COURT:  Okay.  Well, no, I'm just saying I don't

17  know how you would bring it up or why you would bring it up;

18  but if you do, the Court would allow whatever is appropriate by

19  way of response from the plaintiffs.  I just can't anticipate

20  now what the situation will be.  It's just you're forewarned

21  that if you start bringing up those issues, it's very well that

22  your present incarceration may come out legitimately in the

23  case.

24         MR. CANTWELL:  I understand the concept of opening

25  the door.  I get that, yes.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          THE COURT:  Right.

2          Okay.  Anyone else?  Let's go back to the plaintiff.

3    Do the plaintiffs have any -- any other issues they'd like to

4    take up today?

5          MS. DUNN:  Yes, Your Honor.  We have two issues.  One

6    is further to Mr. Cantwell's earlier request to exclude the

7    three witnesses on the plaintiffs' list that have not yet been

8    deposed:  Witnesses Elliott, Sabato, and Webster.  We tend to

9    agree that because these witnesses have not been deposed and

10   we're five days from trial, that they ought not be able to

11   testify.  So we will withdraw those witnesses.

12         THE COURT:  All right.  Thank you.

13         MS. DUNN:  You're welcome.

14         And then our second issue is -- this is concerning

15   only opening statement -- somewhere between seven to nine of

16   the plaintiffs would like to attend the opening statement.  And

17   so we would ask the Court's dispensation only for the opening

18   for us to be able to have between 12 and 14 people in the

19   Court, which includes four counsel, the trial tech, and the

20   plaintiffs who wish to attend.  And then they would leave

21   immediately after the openings.

22         THE COURT:  Okay.  I'll take a look at that, because

23   we -- you know, we're being very careful to have the proper

24   social distancing.  You know, we'll have to take a look at that

25   and talk maybe Friday when we're there.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          How many did you agree that you would have in the

2   courtroom, lawyers and parties, to begin with?

3          MS. DUNN:  So we affirmatively suggested nine for the

4   plaintiffs' side.  I don't know that there has been a precise

5   limit on the defense side.

6          THE COURT:  Well, it's pretty hard on the defense

7   side because --

8          MS. DUNN:  Right.  We understand.  So Your Honor, we

9   appreciate your consideration of this request.  It is important

10  to the plaintiffs to be able to attend.  And this, again, just

11  concerns only the opening statement, and I guess perhaps the

12  closing argument, but would concern no other time during this

13  trial.

14         THE COURT:  Okay.  All right.  Any other matter?

15         MR. SMITH:  I'm sorry, Your Honor.  Your Honor, this

16  is Josh Smith.

17         THE COURT:  Yes, sir.

18         MR. SMITH:  Yes.  I just wanted to say I know that

19  Your Honor said you wanted to table that for tomorrow, and of

20  course I'm sure it will get discussed tomorrow.  If the

21  Court -- if the Court is okay with that, I'm not opposed to the

22  plaintiffs doing that if the Court -- if it's acceptable to the

23  Court.

24         THE COURT:  Okay.  Well, the only concern we have, of

25  course, is we have a limited courtroom, limited air, and that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   sort of thing.  As long as we don't get too far out of line

2   regarding COVID, we'll do what we can.  But we have tried

3   cases, and it's always an exception after exception.  And after

4   awhile, the Court can fill up.  We can't do that, because we do

5   promise the jury that we're going to, you know, follow

6   protocol.

7             MR. SPENCER:  Your Honor, will we be making

8   vaccination statuses public of the plaintiffs?  I mean, I think

9   that's relevant in the sense of packing them in during the

10  opening statements.

11            THE COURT:  Well, we have the -- we have, you know,

12  that vaccination thing worked out, and that applies to

13  everyone.

14            MR. SPENCER:  I'm just around people who are older,

15  and I take COVID very seriously.

16            THE COURT:  Well, I'm older myself.  I take it very

17  seriously.  Okay.  We sent out -- for anyone attending in

18  person on Friday, please get in COVID attestation forms

19  submitted to the Court.

20            MR. SPENCER:  Okay.  I am fully vaccinated and I can

21  prove that.  I will be participating via Zoom on Friday, but I

22  will be in person on Monday, and I've sent that information to

23  Heidi Wheeler.  It is simply a matter of travel and logistics,

24  but I will be there on Monday.

25            THE COURT:  All right.  But anyway, to answer your

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  question, I mean, everyone has to comply with the attestation,

2  okay?

3          All right.  Anything else?  I'm not trying to rush

4  anybody.

5          MR. CANTWELL:  I am completely unfamiliar with what

6  we're talking about.  I'm not sure what word you're using,

7  COVID attestation, is that what -- I don't know what you're

8  talking about.

9          THE COURT:  Well, you don't have to worry about it.

10  I think the marshal service is handling whatever you need to

11  do.

12          MR. CANTWELL:  You know, I realize there's probably a

13  limited time here.  I don't know how much I should go into.  I

14  still haven't seen an exhibits list from anybody, my

15  co-defendants nor the plaintiffs.

16          THE COURT:  Well, can anyone help him out with that?

17          MR. SPENCER:  Mine is on Box.com, and I'd be happy to

18  give him a hard copy in person.  I don't know if he can accept

19  email in prison, but I would be more than happy to send him an

20  email.

21          THE COURT:  Okay.  Who is speaking?

22          MR. BARKAI:  Your Honor, Yotam Barkai for plaintiffs.

23  We're happy to communicate with Mr. Cantwell and give him

24  whatever he needs.  Again, we've been serving him throughout

25  this period at each of the various facilities that he's been

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   transferred between.  We understand that there have been some

2   logistical complications, and we've actually been making an

3   effort to serve multiple times.  So we served on him a large

4   volume of material for a second time after he was moved the

5   first time.  We served him a large set of material that we

6   thought -- that may not have made it to his former facility in

7   Marion.  We served that to him again.  We're going to do the

8   same thing here, which is serve him with all of the material

9   that we have served him before, but just in an abundance of

10  caution, we just want to make sure that we serve it on him

11  again.  We're going to do that this week.  Otherwise, we're

12  happy to meet with Mr. Cantwell to discuss the exhibit list

13  issue.

14          And we understand that Mr. Cantwell has filed a set

15  of motions recently that has been docketed over the last couple

16  of days.  And if the Court would be amenable, we'd also like to

17  file just a short response addressing that set of motions.

18          THE COURT:  All right.

19          MR. CANTWELL:  For whatever it's worth, I understand

20  that the plaintiffs have gone to some degree of effort to get

21  these things to me, but my understanding of the procedural need

22  for me to have them is that I have them in advance of the

23  trial.  And now we're talking about me maybe getting an

24  exhibits list as we walk into the courtroom.  And it seems to

25  me that this is both in favor of my repeated request to delay

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  the trial because I'm not prepared, and I can't be expected to

2  be prepared if the United States government is preventing me

3  from preparing for trial.

4         THE COURT:  Well, like I said, we're doing the best

5  we can with what we've got.  The facts are what they are.

6  We've got over 25 parties, I think, in this case.  We do -- we

7  do -- have ordered, Mr. Cantwell, a computer for you in the

8  courtroom.  So you will have access to the exhibits there.  I

9  know you're saying you need them before, and it sounds as if

10 counsel for plaintiff is trying to do what he can to help you

11 with that.

12        MR. CANTWELL:  And I appreciate the effort of

13 plaintiffs' counsel.  I genuinely do.  Mr. Bloch and I have

14 actually been pretty cooperative on this.  The problem that

15 we're having now is that my trial preparation has been

16 obstructed by the government of the United States and the

17 United States Penitentiary in Marion, Illinois.  They gave me

18 this hard drive with thousands of files on it in April.  Two

19 weeks later the marshals took it away from me, and I didn't get

20 it back until September.  And now we're talking about walking

21 into a courtroom where in the courtroom as we're at trial, then

22 I get to figure out what the evidence is.  And that's

23 definitely not fair.  You know, I don't have the case law in

24 front of me here.

25        THE COURT:  Well, it's certainly not -- not the way

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   things ought to be.  But, you know, you had counsel.  I take it

2   you discharged counsel.  And as I say, there are ten

3   plaintiffs -- ten or more plaintiffs in the case.  I think

4   there are probably -- as many as 20 named defendants,

5   organizations and persons.  There's never going to be a good

6   time to try this case, and somebody is always going to be

7   having a problem.

8           Mr. Fields, he's still in -- he's the principal

9   defendant in the case, it appears to me, and he's locked up

10  somewhere in Illinois, I believe.  But he does have counsel.  I

11  mean, we're just going to have to do the best we can with

12  the --

13          MR. CANTWELL:  He has counsel.

14          THE COURT:  Well, I mean, I assume you could have

15  counsel, too, or you had counsel.

16          MR. CANTWELL:  You think I can have counsel?

17          THE COURT:  Well, you had counsel and you discharged

18  him, I thought.

19          MR. CANTWELL:  Well, the details of that are pretty

20  well documented.  I was bankrupted by this process a long time

21  ago.  They moved to withdraw.  And this was -- you know, I

22  think that was the subject of some controversy back in the

23  summer of 2019.  If I had been kept in the loop from the summer

24  of 2019 until April of 2021, we wouldn't be having this

25  conversation.  The problem is that while I was incarcerated,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   the plaintiffs were sending everything to my email address that

2   I couldn't check.  And this was -- they kept updating the Court

3   on the progress of my case.  When I was denied bail, they made

4   filings with the Court.  When I was convicted, they made

5   filings with the Court.  When I was sentenced, they made

6   filings with the Court.  And the whole time they were saying,

7   Oh, we didn't realize that we were sending all the

8   correspondence to a Gmail address to a man who is incarcerated.

9   They were the first ones to notify the Court when I got

10  arrested.  The same day I got arrested, they told the Court

11  that I was arrested.  And the whole time they knew I was in

12  jail and they were sending it to my email address.  And then

13  when I object to a deposition they say, Oh, well, he should

14  have known this, except that we didn't send it to him.  So

15  we'll send a two terabyte encrypted hard drive to an

16  incarcerated man, and that will solve the problem.  And I said

17  at the time that that didn't solve the problem.  It doesn't

18  solve the problem that you give me two terabytes of data.  It

19  doesn't solve the problem that you give me thousands and

20  thousands of files when I'm in jail and I can't look at them.

21  And then less than three weeks later, the marshals take it away

22  from me.  That's what happened.  So this is not a situation

23  where I could have done something that would have fixed this

24  problem.  That's not what happened.  For --

25              THE COURT:  Well, some of the problems resulted from

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   the Court granting your motion for transportation to

2   Charlottesville.  I suppose if you had stayed where you were,

3   you may have received more of these pleadings.  But you will

4   have access to the computer and the exhibits Friday -- at

5   Friday's pretrial conference when we're in court in

6   Charlottesville.

7         MR. CANTWELL:  I suppose I'm fortunate to have that

8   much.  My objection that I still have -- and I don't know what

9   that means, but I'll stop talking now.  Thank you.

10        THE COURT:  Okay.  Thank you.

11        All right.  Does anyone have any other matter they

12  would like to bring up at this time?

13        MR. SMITH:  Just a real quick question, Your Honor.

14  Josh Smith again.  Just wondering if for the Friday -- for the

15  Friday pretrial conference, are we able to attend that by Zoom,

16  if it's necessary?

17        THE COURT:  Well, I have no objection.  It would be

18  helpful -- just a minute.

19        It would be helpful I think to you, if you haven't

20  been in the courthouse --

21        MR. SMITH:  Of course.  I was -- you know, I wanted

22  to familiarize myself with everything, you know, a couple of

23  days before.  I just -- it seems like -- I'm not saying that

24  I'm sure that I won't be there, but it's possible I might not

25  be able to make it.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          THE COURT:  That will be fine.

2          MR. SMITH:  Thank you, Your Honor.

3          THE COURT:  Anyone else have any matter they would

4    like to discuss now before Friday?

5          MR. SANCHEZ:  Your Honor, Giovanni Sanchez on behalf

6    of the plaintiffs, Paul Weiss.  One thing I wanted to raise in

7    the interest of potentially streamlining things at trial is our

8    motion, ECF 1238.  In that motion we asked the Court to

9    voluntarily dismiss certain plaintiffs' claim against Defendant

10   Fields.  That's the claim for negligence per se.  As we say in

11   that motion, we obtained consent of every defendant who has

12   responded, and we reached out to every -- every defendant in

13   the case.  We think the factors weigh in favor of granting that

14   motion, and that it would really streamline things at trial.

15         THE COURT:  Okay.  If no one has an objection --

16         MR. SMITH:  No, Your Honor.

17         MR. SPENCER:  No.  No objection.

18         THE COURT:  Okay.  It will be -- the motion will be

19   granted.

20         MR. SANCHEZ:  Thank you, Your Honor.

21         THE COURT:  Okay.  Anything else?

22         MR. CAMPBELL:  Your Honor, David Campbell.

23         THE COURT:  All right.  Mr. Campbell?

24         MR. CAMPBELL:  Your Honor, there was some mention --

25   I'm aware of Friday's hearing, but then there was some talk of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  passing something over till tomorrow.  Is there --

2          THE COURT:  No, there's nothing tomorrow.  Someone

3  misspoke, I think.

4          MR. CAMPBELL:  Great, Your Honor.

5          And then the only other thing we could either take up

6  today or possibly Friday, but just to kind of let us prepare

7  better on the defense side, I was wondering what the Court's

8  pleasure was as far as the order of openings or cross, that

9  kind of stuff, for all of the defendants.

10          THE COURT:  Well, unless the defendants get together

11  and agree to another procedure, my procedure would be to go

12  down the list in the order in which the defendants are listed

13  in the complaint.

14          MR. CAMPBELL:  That was my thought as well, Judge.

15  Okay.  Just wanted to make sure, absent something else, we were

16  going to go in the order of the pleading.

17          THE COURT:  Okay.  Anything else?

18          MR. BARKAI:  Your Honor, the Court had previously --

19  argument to be held on ECF 1152, which was plaintiffs' motion

20  to exclude trial witnesses now previously disclosed in

21  discovery.  We're happy to rest on our papers as to that

22  motion, or to address that now or on Friday, as the Court would

23  like.

24          THE COURT:  Wait a minute.  I'm sorry.  Ms. Dunn, are

25  we on the same page here?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          MS. DUNN:  Yes, Your Honor.  As to the witnesses that

2   have not been deposed at this time, those are withdrawn,

3   because we are five days from trial.  So if there is a witness

4   that has not been deposed, they should not testify.

5          MR. BARKAI:  I'm sorry, Your Honor.  I was referring

6   to plaintiffs' motion, not Mr. Cantwell's motion.  It's

7   plaintiffs' motion to exclude Mr. Cantwell's witnesses.  As I

8   said, plaintiffs --

9          THE COURT:  Oh, well, I mean, which witnesses are

10  they?  I mean, some of the witnesses he asked for were beyond

11  the jurisdiction of the Court, and could not be -- I mean, we

12  have no jurisdiction to order them here.

13         MR. BARKAI:  This is a motion involving six witnesses

14  on Mr. Cantwell's witness list who were not disclosed during

15  discovery.  It's ECF 1152.  And this is Frey, Platania, Shular,

16  Wolf, Minton, and Pleasants.

17         THE COURT:  Have they been subpoenaed?

18         MR. BARKAI:  I am not aware of that, Your Honor.  So

19  it may be that it's a moot point, depending on whether that's

20  the case or not.

21         THE COURT:  I don't think -- we requested subpoenas

22  for three witnesses, but they were beyond the jurisdiction of

23  the Court.

24         Mr. Cantwell, are there any witnesses that you

25  anticipate would appear at the trial?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1    MR. CANTWELL:  Well, you know, I don't know, sir.

2  And I haven't seen the motion that we're talking about, so I'm

3  not in any position to respond to it.  I understand that some

4  of the witnesses are beyond the 100-mile radius.  Again, the

5  issue here is that I mentioned these people when I found out

6  that I had been left in the dark for 14 months.  I said, this

7  completely changes things.  I want to depose these people.  The

8  discovery deadlines have ended.  And then I was picked up by

9  the marshals and trucked around by the United States government

10  and deprived of all my papers.  So that's where I am.

11    THE COURT:  Okay.  Well, I mean, any witness who has

12  not been properly disclosed, we'll take it up at the time,

13  whether there's -- you know, whether there is some excuse and

14  exception that would allow them to testify.  But I don't think

15  we need to go into it now, because it doesn't appear likely

16  that any such witnesses will appear.

17    All right.  Anyone else have any matter?

18    MR. CANTWELL:  If I could clarify something from

19  earlier, sir.  You mentioned three motions by their ECF

20  numbers.  I'm not privy to those once I send them off to the

21  Court.  You said, I think, 1066, 1085, and 1088.  Were those

22  the three that you mentioned earlier when you mentioned the

23  invidious discriminatory animus against Jews?

24    THE COURT:  I'll have to look again.

25    MR. CAMPBELL:  Judge, this is Dave Campbell.  That's

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  correct from my notes.  1066, 1085, and 1088 were the docket

2  numbers.

3          THE COURT:  1066, 1085, and 1088.

4          MR. CANTWELL:  Okay.  Now, again, the ECF numbers,

5  maybe not having access to the electronic system, I'm not privy

6  to those.  So I don't know what the headlines of each of those

7  are.  Is 1066, I understood from what you said to be a ruling

8  that invidious -- it is not invidious discriminatory animus

9  against Jews.  Is 1085 Antifa and 1088 social minorities?

10          THE COURT:  1085 is bias against those who identify

11  as Jews.  Well, wait a minute.  1066 is animus -- the motion

12  for a determination that animus against the domestic terror

13  organization Antifa and other members of the woke, progressive

14  left is not a form of class-based invidiously discriminatory

15  animus prohibited by 42 U.S.C. 1985(3).  Now, that's 1066.

16          And 1088 is a motion to exclude all evidence of

17  defendants' perceived biases against those who identify as Jews

18  pursuant to Federal Rules of Evidence 401, 402, and 403.

19          MR. CANTWELL:  So that's 1066 and 1085.  1088 is?

20          THE COURT:  A motion to exclude evidence of

21  defendants' perceived bias against --

22          MR. CANTWELL:  Oh, that's 1088.  Okay.  So, you know,

23  I'd just like to point out I think that when you responded to

24  this, you told me that this Fourth Circuit rule that a

25  religious bias is included under 1985(3), but that doesn't seem

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1    to extend to left-wing political activists who make a habit of

2    burning and looting.  And I wonder if lumping these things all

3    together into the same decision is entirely appropriate.

4          THE COURT:  Well, I mean, your characterization I'm

5    not necessarily agreeing with.  I mean, we rule on motions as

6    they come in separately.  And every motion has to stand on its

7    own feet.

8          MR. CANTWELL:  Well, that's sort of what I'm getting

9    at.  So you told me about these three motions.  And what you

10   addressed when you addressed me was that the Fourth Circuit had

11   ruled that bias against Jews is covered under this statute.

12   And okay, I understand what you're saying.  If you're telling

13   me that this is a matter of religious discrimination, that does

14   not apply to left-wing political activists --

15         THE COURT:  Well, Mr. Cantwell, what I'm going to do

16   is file a written order responding to those motions.  I was

17   not -- I only responded to the one regarding the motion that

18   Jewish persons were not covered by the statute.

19         Okay.  Anything else?

20         MR. JONES:  Your Honor, Bryan Jones.  I'm counsel for

21   Michael Hill, Michael Tubbs, and League of the South.  There

22   are still some outstanding issues in a motion in limine that I

23   filed.  It's ECF 1147.  I'm happy to address those on Friday,

24   if you'd like, or we can submit additional written argument.

25         THE COURT:  I'll address them right now, if

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  plaintiffs are prepared to respond.

2  MS. DUNN:  I'm sorry, Your Honor.  Which motions are

3  these, just so we can get ourselves in order?

4  MR. JONES:  League of the South, Michael Hill,

5  Michael Tubbs.  The filing number was 1147, a motion in limine

6  regarding the Court taking judicial notice of Mr. Kessler

7  securing a permit, and then a motion to exclude reference to

8  Michael Tubbs's felony conviction.

9  MS. DUNN:  I believe Mr. Levine is arguing these

10  motions.  So Mr. Levine, are you ready?

11  THE COURT:  Mr. Levine, are you --

12  MR. LEVINE:  I'm ready to argue the motion.

13  THE COURT:  Let Mr. Jones speak to the motion, and

14  then you respond.

15  Go ahead, Mr. Jones.

16  MR. JONES:  Thank you, Your Honor.

17  I'm requesting that the Court take judicial notice of

18  three adjudicative facts relating to Mr. Kessler's obtaining a

19  permit in advance of the rally.  That would be based on Federal

20  Rule of Evidence 201.  I'm relying on subsection A -- sorry,

21  subsection (b)(2) which says the facts that can be accurately

22  and readily determined from sources whose accuracy cannot

23  reasonably be questioned.  The sources I submitted for those

24  facts are this Court's order from August 11th, 2017, subsection

25  (c) of that rule, subsection (2) says, The Court must take

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   judicial notice if a party requests it and the Court is

2   supplied with the necessary information.

3         It's our position that based on that court order,

4   which establishes those three facts outlined in my motion, that

5   the Court can take judicial notice because they are not facts

6   that are -- whose accuracy can be reasonably questioned.

7         THE COURT:  What's the relevance of the fact that --

8   well, particularly that the city opposed -- that the city

9   sought to withdraw the permit and the Court ordered that the

10  permit be restored?

11        MR. JONES:  Your Honor, it's my clients' position

12  that they were attempting to act in a legal and lawful manner

13  in appearing in Charlottesville.  And so --

14        THE COURT:  Well, but if it were admissible that he

15  had a permit, what difference does it make?  At the end of the

16  day he still had the permit and he still was able to have his,

17  you know, demonstration?

18        MR. JONES:  Well, Your Honor, it would be agreeable

19  if the judicial notice was simply limited to the fact that

20  there was a permit -- a valid permit issued to Jason Kessler to

21  demonstrate in the park.

22        THE COURT:  Okay.  I mean, aside from anything else,

23  I don't see any relevance to why we need to get into the side

24  issues regarding the withdrawal of the permit and then the

25  Court's action.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1      Mr. Levine, would you speak to what would be

2  objectionable about the Court taking notice that Mr. Kessler

3  obtained a permit for the function?

4      MR. LEVINE:  Your Honor, I'm not -- I don't think I

5  was designated to argue that motion, but I would -- we have

6  submitted a brief on the issue of the Court taking judicial

7  notice of other facts.  And I think we would rely on the case

8  law in that brief as to the significance of judicial notice.  I

9  don't know why judicial -- of the Court taking judicial notice

10  should apply to Mr. Kessler getting a permit.  He can testify

11  to getting that permit, and then the plaintiffs can cross

12  examine him about that permit.  But it changes the jury's

13  understanding, I would suggest, when the Court takes judicial

14  notice of it.

15      THE COURT:  Okay.  Well --

16      MR. LEVINE:  One of my co-counsel may want to expand

17  on that, Your Honor.

18      THE COURT:  All right.

19      MS. DUNN:  My understanding of this motion is that we

20  have not yet had an opportunity to respond --

21      THE COURT:  Okay.

22      MS. DUNN:  -- in writing.  So if we need to, Your

23  Honor, we can certainly respond in writing.

24      THE COURT:  Well, there's no question that he did get

25  a permit.  No one questions that, I take it.  I mean, it's a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   question of relevance, maybe.  But there's no issue about him

2   obtaining a permit, correct?

3          MR. JONES:  That's correct, Your Honor.

4          THE COURT:  It appears to be relevant.  I'll look

5   into whether it's subject to judicial notice or otherwise.  But

6   I don't think the other two matters are relevant.

7          MR. JONES:  There was one more issue in that motion

8   related to Mr. Tubbs's prior felony.

9          THE COURT:  Excuse me just a minute.

10         Okay.  Go ahead, sir.  I'm sorry.

11         MS. DUNN:  Your Honor, this is Ms. Dunn for the

12  plaintiffs.  So I'm told that we have filed a response on this

13  issue of judicial notice, and that it is important because we

14  would like to cross examine Mr. Kessler about the permit.  And

15  so with the Court's permission, you know, if we need to have

16  more argument on this, we'd like to do that on Friday.

17         THE COURT:  Okay.  Anyway, we'll pass that and go to

18  the other motion.

19         MR. JONES:  Thank you, Your Honor.

20         THE COURT:  I will say to the plaintiff I have before

21  me you filed a response to League of the South's and Mr. Hill's

22  and Tubbs's motions in limine.  And there was the Heaphy

23  report, Mr. Tubbs's felony conviction, and then the facts

24  regarding Mr. Kessler's report -- permit.

25         Go ahead.  I'm sorry.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1        MR. JONES:  Thank you.  The other issue in the motion

2   was the admissibility of Michael Tubbs's felony conviction from

3   1990, from 30 years ago.  The two rules that plaintiffs argue

4   it would be admissible under are for impeachment purposes under

5   609; however, the conviction is over 30 years ago.  So I argue

6   that plaintiffs haven't provided sufficient written notice of

7   their intent to do that.  The first notice I received was just

8   several weeks ago.  And it is a significantly old conviction.

9        The other rule is 404(b).  Plaintiffs argue that it

10  shows motive or some other issue.  My response to that is that

11  plaintiffs have only provided one certified court record

12  showing that the conviction was for some firearm-related

13  offense.  And all of the facts that would make it relevant for

14  some of those exceptions in 404(b) are not admissible, would

15  not be able to be presented to the jury based on a 30-year-old

16  newspaper article, and they are contested in any respect.  And

17  the fact that it is a 30-year-old conviction, the probative

18  value of whatever that would be, would be outweighed by

19  prejudice to my client.

20        THE COURT:  All right.  Okay.  I will say I have

21  the -- I've read your memo on that, as well as the defendants'.

22        Anything else the defendant would like to say about

23  the conviction?

24        MR. JONES:  No, Your Honor.  Thank you.

25        MR. CANTWELL:  If I could, I had a similar motion.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1          THE COURT:  Mr. Cantwell, this one -- these are all

2    fact-specific.  So what might apply to one doesn't necessarily

3    apply to the other.

4          Any other -- I misspoke.  Does the plaintiff have any

5    response to defendants' argument?

6          MR. LEVINE:  Yes, Your Honor.

7          We seek to offer the prior conviction and the

8    underlying facts under 404(b) primarily, which demonstrate

9    Defendant Tubbs's intent to use violent means and achieve his

10   southern nationalist, racist, antisemitic agenda at Unite the

11   Right.  In Mr. Tubbs's deposition, Your Honor, Tubbs denied any

12   plan or desire for violence.  He testified he had no intent to

13   commit such violence, and he also testified that any violence

14   was self-defense.  He also equivocated on his racial animus of

15   Jews and blacks.  So Mr. Tubbs's intent to commit violence to

16   achieve his white nationalist agenda against Jews and blacks is

17   going to be squarely an issue in this case.  Squarely an issue.

18          And in 1991, Your Honor, he was arrested, indicted,

19   and ultimately pled guilty.  It was a four-count indictment.

20   He was in the Army at the time.  He was charged with theft of

21   two M16 government rifles from another soldier, and assault in

22   connection with that theft, and possession of a variety of

23   weapons and explosives.  In a search warrant executed at or

24   about the time of the arrest, there were explosives, armaments,

25   and all kinds of literature, magazines described by the Bureau

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   of ATF as describing how to engage and wage urban warfare.  The

2   literature was described as focused on a litany of hate against

3   Jews, blacks, and other minorities.  And at the time of the

4   theft, the United States attorney announced at the time of the

5   indictment at the time of the theft the defendants, including

6   Mr. Tubbs, when they robbed this other soldier, they ran away

7   with the weapon saying, This is for the KKK.

8          Now, Your Honor, this case is from the Eastern

9   District of North Carolina.  It was transferred to the Middle

10  District of Florida where Mr. Tubbs's guilty plea was taken.

11  The archives in both federal courthouses have been closed

12  during the entire pandemic.  We have been unable to get a copy

13  of the indictment.  We have been unable to get a copy of any

14  plea allocution.  And in the deposition, Mr. Tubbs would not

15  answer basic questions about what that allocution involved.

16         So the articles that we're offering to identify and

17  prove the underlying facts, Your Honor, are a 1990 article from

18  the *New York Times* reporting on the arrest, which is

19  Plaintiffs' Exhibit 1926; a *New York Times* article from January

20  of 1991 reporting on the filing of the indictment, and that's

21  Plaintiffs' Exhibit 3464; and then the docket sheet which

22  reflects the number of counts and some of the basic facts,

23  which is Plaintiffs' Exhibit 3463.

24         And Mr. Tubbs pled guilty.  He was sentenced to

25  four-some odd years.  He got out in 1995.  He joined League of

43

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   the South shortly thereafter.  And the rest Your Honor is

2   familiar with from the motion practice in this case.  He

3   becomes second in command of League of the South.  He leads the

4   march that initiates all the violence on Saturday morning.

5          So we believe this earlier conviction and the

6   underlying facts demonstrate that Mr. Tubbs's racial animus for

7   blacks and Jews and his intent to use violence to achieve those

8   ends in society is essentially what the Unite the Right case is

9   all about here.

10          THE COURT:  Well --

11          MR. LEVINE:  And Your Honor had the *Johnson v. Holmes*

12   case where Your Honor talked about the issues of relevance and

13   necessity under 404(b), and pointed out that the Fourth Circuit

14   has -- favors the admission of other evidence.  I would submit,

15   Your Honor, that the -- I would submit that the age here of the

16   conviction actually proves the relevance and necessity of -- of

17   those underlying facts and conviction to Unite the Right.  This

18   age, Your Honor, eclipses his adult life.  It demonstrates that

19   he has been involved in these issues, dedicated to achieving

20   his racial superiority and the white nationalist movement

21   through violent means his entire adult life.  Those newspaper

22   articles report from ATF what was found in the executing of the

23   search warrant in his house and brother's house.  And it's

24   exactly the kind of literature that these defendants in our

25   case exchanged with one another.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1           So I would submit to Your Honor that the prior act

2    evidence here is relevant.  In fact, it's closely related to

3    the charge in our case here.  And in *Skateway* in the Fourth

4    Circuit, and Your Honor recognized in *Johnson*, that this kind

5    of evidence in a discrimination kind of case is very relevant.

6           It's also necessary, Your Honor, because the evidence

7    of this underlying conduct and the conviction is very relevant

8    to prove this case, which is that this defendant and his

9    co-conspirators sought to use violence to achieve their white

10   nationalist agenda.

11          We also have to show that this evidence is reliable.

12   As to the conviction, he's admitted the conviction and we have

13   a document for that.  As far as the underlying facts go, Your

14   Honor, under hearsay rule of ancient documents, both of these

15   news articles are ancient documents under that exception, and

16   they would come in for the truth.  They both quote statements

17   of responsible government people, the U.S. attorney, the agent

18   in charge of ATF.  So those portions of those articles, Your

19   Honor, we would propose to confront Mr. Tubbs with.  And if he

20   doesn't admit them, to offer them, Your Honor.

21          As far as the probative value goes, I think I made

22   that point, the relevance argument.  The probative value of

23   this evidence is very significant because of Mr. Tubbs's

24   equivocating on each of these issues.  And it demonstrates what

25   some of the cases talk about, Your Honor, to the lack of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  mistake, to the fact that Mr. Tubbs can't say, Oh, I was just

2  engaged in this violence because somebody hit me.  Your Honor,

3  the facts underlying the earlier conviction demonstrate that

4  Unite the Right was simply a step in the direction of

5  Mr. Tubbs's life.  And we would submit that the probative value

6  of that outweighs any prejudicial -- all incriminatory evidence

7  is prejudicial, Your Honor.  The question is whether this is

8  unduly prejudicial.  And the underlying material demonstrating

9  the hatred and the desire to use violence to achieve that

10  hatred is no different than what's on Discord, Your Honor, and

11  what the plaintiffs will prove throughout the trial as to

12  Mr. Hill, Mr. Tubbs, League of the South, and all of the other

13  defendants.

14       So Your Honor, that's the theory of our admissibility

15  of 404(b).  These exhibits are all on the exhibit list.  The

16  1990 document, Your Honor, was on the first iteration of the

17  exhibit list, some over a month ago.  And Mr. Tubbs has been on

18  notice of our interest in these facts because we asked

19  Mr. Tubbs about these events in his deposition in June of 2020.

20  So that would take in the 609 argument, as well as the 404(b)

21  argument.

22       THE COURT:  All right.  Mr. Jones, anything else?

23       MR. JONES:  No, Your Honor.  Thank you.

24       THE COURT:  Okay.  Well, I think the -- where in the

25  Court record are the -- I mean, there's nothing that he pled

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1   guilty to or was convicted of that necessarily shows the

2   animus.  It's all in the newspaper articles and affidavits for

3   search warrants?

4          MR. LEVINE:  Exactly.  That's the problem.  We do not

5   have access to the indictment, but the news articles --

6          THE COURT:  Don't you have -- you have ample evidence

7   of his animus now toward Jews and African Americans, don't you?

8          MR. LEVINE:  Your Honor, we have ample evidence

9   generally.  Actually, Mr. Tubbs equivocated on that issue for a

10  considerable amount of time in his deposition.  And he

11  certainly denied an intention to use violence at Unite the

12  Right in order to accomplish the means.  So his intent to use

13  violence to achieve this nationalist agenda is squarely an

14  issue in this case, Your Honor.  And he denies that the

15  violence was intended on his part.  He claims that his words in

16  documents and communications where he is hoping for violence --

17  which Your Honor quoted in the motion, in the summary judgment

18  decision -- Mr. Tubbs actually --

19         THE COURT:  Well, there's information -- I mean,

20  that's -- I mean, it seemed there was ample evidence in that

21  summary judgment motion to support your position.

22         MR. LEVINE:  If Your Honor may, at trial, Mr. Tubbs

23  is going to testify, if he does similar to his deposition --

24         THE COURT:  All right.  Let me put it this way:  My

25  inclination is that this is too old and could be unfairly

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1    prejudicial, that the prejudice would outweigh the probative

2    value because what you have -- in this case I don't think there

3    is much question -- there's likely to be much question but that

4    this organization and his participation in it would indicate

5    that there was an animus toward Jews and African Americans.

6    But the question is:  Did they conspire?  And that's the real

7    issue of what has to be proven.  And when you go back and load

8    a lot of this in, the conviction itself doesn't prove anything

9    with regard to the issues in this case.  And so I think -- I

10   think it's going to be pretty hard for me to rule on this until

11   you cross examine him.  And depending on what he says on

12   cross-examination, if he denies, you know, the animus and so

13   forth, I'll take it up then and rule whether you can proceed to

14   ask -- to bring this up.

15          MR. LEVINE:  Your Honor, that's exactly what I was

16   going to ask the Court for leave to do, given what Your Honor

17   has said.  And if the record presents itself as I expect it

18   will, then I'll approach side bar and ask the Court for a

19   ruling at that time.

20          THE COURT:  Right.  Okay.  Well, that's what I intend

21   to do, because I think it's a real stringent test here that you

22   have to -- you have to pass to get that evidence admissible.

23          All right.

24          MR. LEVINE:  I will point out, Your Honor, on the age

25   issue, the Fourth Circuit has admitted this kind of evidence in

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  a case that's 22 years old and a case that was 40 years old.

2  And those cases are in the brief that we filed, Your Honor.

3         THE COURT:  All right.  Okay.  Well, we'll handle it

4  the way I suggested.

5         MR. LEVINE:  Thank you.

6         THE COURT:  All right.  Any other matters?

7         MR. CANTWELL:  Judge, I also submitted a motion in

8  limine to exclude evidence of my prior alleged felonious

9  conduct.  The charge that I'm serving time on right now is a

10 separate motion from the issue of my incarceration.  As I

11 mentioned, though, it's time, subject matter and distance

12 geographically, and I don't think it's relevant to the issues

13 here.  My understanding is that they can bring up the fact that

14 I'm a convicted felon, but I don't want to distract the jury

15 with irrelevant information about conduct that has no bearing

16 on this case -- in my case.

17        THE COURT:  Okay.  I haven't gotten to that motion

18 yet.  So I'll have to rule on that later.

19        Anything else?

20        MS. DUNN:  Your Honor, one small quick question from

21 the plaintiffs, which is:  The parties, as I take it, have

22 submitted preliminary instructions to the Court per the Court's

23 request.

24        THE COURT:  Yes.

25        MS. DUNN:  The question is when the Court is thinking

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1  about issuing its preliminary instructions to the parties ahead

2  of trial?

3          THE COURT:  Certainly before.  I would say

4  sometime -- I'd like to get the preliminary instruction

5  regarding -- that I will read to the jury before the

6  prospective jurors, probably Friday.  I've looked at yours, and

7  I would make some changes to it.  I have one that I normally

8  give.  And then, of course, any preliminary instruction before

9  the trial begins, I'll have that to you before.

10          MS. DUNN:  Thank you.  We can be prepared, then, to

11  talk about it on Friday, if there is anything to discuss at

12  all.

13          THE COURT:  All right.  Okay.  Anything else?

14          All right.  I appreciate you all getting together

15  today, and we'll soldier on and try to get this case resolved

16  in our lifetime.

17  (Proceedings concluded, 4:24 PM)

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/20/2021

1                 C E R T I F I C A T E

2       I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3    the United States District Court for the Western District of

4    Virginia, appointed pursuant to the provisions of Title 28,

5    United States Code, Section 753, do hereby certify that the

6    foregoing is a correct transcript of the proceedings reported

7    by me using the stenotype reporting method in conjunction

8    with computer-aided transcription, and that same is a

9    true and correct transcript to the best of my ability and

10   understanding.

11      I further certify that the transcript fees and format

12   comply with those prescribed by the Court and the Judicial

13   Conference of the United States.

14       /s/ Lisa M. Blair              Date: October 21, 2021

15

16

17

18

19

20

21

22

23

24

25