Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1              UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF VIRGINIA
2                CHARLOTTESVILLE DIVISION

3  ************************************************************

4   ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                                OCTOBER 22, 2021, 10:12 AM
5                               FINAL PRETRIAL CONFERENCE
            Plaintiffs,
6  vs.

7                               Before:
                                HONORABLE NORMAN K. MOON
8  JASON KESSLER, ET AL.,       UNITED STATES DISTRICT JUDGE
                                WESTERN DISTRICT OF VIRGINIA
9
            Defendants.
10
   ************************************************************
11
   APPEARANCES:
12

13 For the Plaintiffs:        ALAN LEVINE, ESQUIRE
                              COOLEY LLP
14                            1114 Avenue of the Americas, 46th
                              Floor
15                            New York, NY  10036
                              212.479.6260
16
                              DAVID E. MILLS, ESQUIRE
17                            COOLEY LLP
                              1299 Pennsylvania Avenue, NW,
18                            Suite  700
                              Washington, DC  20004
19                            202.842.7800

20

21

22 Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                    255 West Main Street, Suite 304
23                  Charlottesville, Virginia  22902
                    434.296.9284
24
   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25 TRANSCRIPT PRODUCED BY COMPUTER.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

 1  APPEARANCES CONTINUED:

 2  For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                 ROBERTA A. KAPLAN, ESQUIRE
 3                               RAYMOND P. TOLENTINO, ESQUIRE
                                 Kaplan Hecker & Fink LLP
 4                               350 Fifth Avenue, Suite 7110
                                 New York, NY  10118
 5                               212.763.0883

 6                               KAREN L. DUNN, ESQUIRE
                                 JESSICA E. PHILLIPS, ESQUIRE
 7                               GIOVANNI SANCHEZ, ESQUIRE
                                 Paul, Weiss, Rifkind, Wharton &
 8                               Garrison LLP
                                 2001 K Street, NW
 9                               Washington, DC  20006
                                 202.223.7300
10
                                 MAKIKO HIROMI, ESQUIRE
11                               NICHOLAS A. BUTTO, ESQUIRE
                                 (both appearing via Zoom)
12                               Paul, Weiss, Rifkind, Wharton &
                                 Garrison LLP
13                               1285 6th Avenue
                                 New York, NY  10019
14                               212.373.3000

15  For the Defendants:          DAVID L. CAMPBELL, ESQUIRE
                                 (appearing via Zoom)
16                               Duane, Hauck, Davis, Gravatt &
                                 Campbell, P.C.
17                               100 West Franklin Street, Suite 100
                                 Richmond, VA  23220
18                               804.644.7400

19                               CHRISTOPHER CANTWELL, PRO SE
                                 #00991-509
20                               USP Marion
                                 4500 Prison Road, PO Box 2000
21                               Marion, IL  62959

22                               BRYAN J. JONES, ESQUIRE
                                 (appearing via Zoom)
23                               Bryan J. Jones, Attorney at law
                                 106 W. South Street, Suite 211
24                               Charlottesville, VA  22902
                                 540.623.6952

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

 1  APPEARANCES CONTINUED:

 2  For the Defendants:          JAMES E. KOLENICH, ESQUIRE
                                 (appearing via Zoom)
 3                               Kolenich Law Office
                                 9435 Waterstone Blvd., Suite 140
 4                               Cincinnati, OH  45249
                                 513.444.2150
 5
                                 WILLIAM E. REBROOK, IV, ESQUIRE
 6                               (appearing via Zoom)
                                 The ReBrook Law Office
 7                               6013 Clerkenwell Court
                                 Burke, VA  22015
 8                               571.215.9006

 9                               JOSHUA SMITH, ESQUIRE
                                 (appearing via Zoom)
10                               Smith LLC
                                 807 Crane Avenue
11                               Pittsburgh, PA  15216
                                 917.567.3168
12
                                 RICHARD SPENCER, PRO SE
13                               (appearing via Zoom)
                                 P.O. Box 1676
14                               Whitefish, MT  59937

15

16

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  (Proceedings commenced, 10:12 a.m.)

2           THE COURT:  Good morning.  Call the case, please.

3           THE CLERK:  Yes, Your Honor.  This is Civil Action

4  Number 3:17-cv-00072, Elizabeth Sines and others versus Jason

5  Kessler and others.

6           THE COURT:  All right.  Plaintiffs ready?

7           MS. DUNN:  Yes, Your Honor.

8           THE COURT:  Defendants ready, such as --

9           MR. CANTWELL:  As ready as I'm going to be.

10           THE COURT:  Excuse me?

11           MR. CANTWELL:  As ready as I'm going to be, Judge.

12           THE COURT:  All right.  Thank you.

13           I'll remind everyone that under Standing Order

14  2020-12, the Court's prohibition against recording and

15  broadcasting court proceedings remains in force.  Attorneys,

16  parties or staff or members of the public or press accessing

17  this hearing today may not record or broadcast it.

18           Thank you for being here today.

19           I will ask at this time any defense counsel who are

20  participating remotely to note your appearance.

21           MR. KOLENICH:  Your Honor, this is Jim Kolenich for

22  defendants Kessler, Damigo, and Identity Evropa.

23           THE COURT:  Okay.

24           MR. SMITH:  Your Honor, this is Joshua Smith for

25  David Matthew Parrott, Matthew Heimbach, and Traditionalist

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  Worker Party.

2           MR. CAMPBELL:  Good morning, Your Honor.  This is

3  Dave Campbell for Defendant James Fields.

4           MR. ReBROOK:  Your Honor, this is William ReBrook for

5  the National Socialist Movement and Jeff Schoep.

6           MR. JONES:  This is Bryan Jones for League of the

7  South, Michael Hill, and Michael Tubbs.

8           THE COURT:  All right.  Anyone else?  Any other

9  attorney?

10          All right.  Are there any defendants proceeding

11  *pro se* who are participating by videoconference?

12          MR. SPENCER:  Yes.  This is Richard Spencer.

13          THE COURT:  All right.  Anyone else?

14          All right.  Mr. Cantwell is here in the courtroom.

15          Plaintiffs' counsel, if anyone is going to argue

16  today, would you note your appearance at this time?

17          MS. DUNN:  Good morning, Your Honor.  Karen Dunn for

18  the plaintiffs.

19          MS. KAPLAN:  Roberta Kaplan for the plaintiffs.

20          MR. BLOCH:  Good morning, Your Honor.  Michael Bloch

21  for the plaintiffs.

22          THE COURT:  Thank you.

23          MR. SANCHEZ:  Good morning, Your Honor.  Giovanni

24  Sanchez for the plaintiffs.

25          MS. PHILLIPS:  Good morning, Your Honor.  Jessica

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  Phillips for the plaintiffs.

2          MR. MILLS:  Good morning.  David Mills for the

3  plaintiffs.

4          MR. LEVINE:  Good morning.  Alan Levine for the

5  plaintiffs.

6          THE COURT:  All right.

7          MR. TOLENTINO:  Good morning, Your Honor.  Raymond

8  Tolentino for the plaintiffs.

9          THE COURT:  Thank you.

10          Let me say a few words about the COVID-19

11  precautions.

12          For those here in person, I'll remind you about a few

13  points concerning the Court's COVID-19 precautions.  Everyone

14  should wear a mask over their nose and mouth at all times,

15  although if you are vaccinated and you are speaking on the

16  record it may be difficult to hear you, and I may ask you to

17  remove your mask or speak up.

18          Please remain socially distant and remember to

19  conduct the required daily self -- health self-assessment to

20  see if you have any symptoms that preclude you from coming in.

21  If so, you can always participate remotely by videoconference.

22          That's it for the COVID precautions.  Please just

23  make sure that you are familiar with and compliant with the

24  COVID-19 health precautions order.  If you don't have it, we'll

25  get a copy for you.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          All right.  We all know this case is set to start on

2    Monday.  I'd like to make a few comments, though, regarding

3    what I perceive to be the agenda for today.

4          I'll give each lawyer or *pro se* defendant a chance to

5    speak on this before the day is over.

6          I would propose we proceed as follows:  If we're

7    going too long past noon we'll take a break and have lunch, but

8    we may be finished before then.

9          First, I thought we might take up any obvious

10   for-cause strikes that have been revealed to you in the

11   questionnaires that we received.

12         Secondly, I wanted to discuss the nuts and bolts of

13   the voir dire jury selection process and how we will be

14   proceeding through the trial, witnesses, any objections, and

15   the like, as a logistical matter on a daily basis.  Perhaps

16   then would be a good time to take a break, but we'll see at the

17   time.

18         We can take up any remaining motions upon which any

19   party would like to be heard.  You may have seen the Court

20   issued a number of orders this morning resolving various

21   outstanding motions, and there are more to come.

22         On the matter of the strikes, I know we don't

23   normally do this, but my experience is we spend a lot of time

24   listening to people in voir dire telling us things that

25   obviously they are going to be excused from.  I was just hoping

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   if we could get rid of some of those people and avoid just

2   going -- spending all that unnecessary time, it would be a good

3   time to do it.  And I don't know whether you've had an

4   opportunity or not to go through these questionnaires so that

5   we -- we have a few that we thought might fit the category.

6   And if we can do that, I'd like to do it now.

7            First of all, we have a number -- during this

8   process -- let me say this:  Under the Court's order, each

9   side, plaintiffs and defendants represented by counsel, were

10  able to designate a limited number of lawyers to get access to

11  two types of documents and the redacted jury questionnaires,

12  which are responses to questionnaires we sent to prospective

13  jurors, and a jury occupation list, which is a document

14  compiled by the Court which assists in making their choices

15  regarding selecting the jury.  We have, I believe, 110-plus

16  redacted jury questionnaires that were made available to the

17  parties electronically.  Each contained responses to about 70

18  questions.

19           Now, Mr. Cantwell, I note, as a *pro se* party under

20  the Court's orders, you may also get access.  Any *pro se* party

21  may get access to those two types of documents while you're in

22  the courthouse for personal use, but the Court is requiring any

23  *pro se* litigant to file a declaration under penalty of perjury

24  that they will not make any unauthorized disclosure.  So you

25  can participate today on this issue.  I will allow you to

9

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  declare orally under penalty of perjury you won't disclose

2  anything unauthorized, and then you can fill out a declaration

3  later.

4          The bottom line for everyone is:  You may only refer

5  to any prospective juror by number.  Each questionnaire has

6  been redacted so that it has a number on the front.  Use that.

7  That's for today and going forward Monday and Tuesday on jury

8  selection.

9          Mr. Cantwell, did you want access to these?

10         MR. CANTWELL:  I'm sorry.  Did you say "Campbell" or

11 "Cantwell"?

12         THE COURT:  Cantwell.

13         MR. CANTWELL:  Yes, I'd like access, please.

14         THE COURT:  Have you read the orders that were

15 provided to you -- that's Dockets 1172 and 1204 -- regarding

16 jury questionnaires, and do you agree to follow those under

17 penalty of perjury and other court sanctions?

18         MR. CANTWELL:  Judge, I'm not sure I received those

19 orders.

20         THE COURT:  Well, I don't know whether you have or

21 not, but anyway, we will -- we will proceed and maybe you can

22 print them out.  Can you print them out?

23         The clerk's office has a binder in person for you to

24 use.  The Court has done this to shield the jurors from the

25 substantial publicity of the case to the extent possible and to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   shield the prospective jurors from the limelight, which is an

2   important step to ensure fair and impartial jurors can remain

3   so.  If for some reason something specifically requires you

4   somehow -- something with regard to a name, you can approach

5   the bench, but it will be -- no name of any prospective juror

6   will be mentioned so that it's public.

7            MS. DUNN:  Your Honor?

8            THE COURT:  Yes.

9            MS. DUNN:  I apologize for interrupting you.  At

10  least speaking for myself and a couple others, we're having a

11  very hard time hearing, and so I don't know if there's any

12  way -- we want very much to hear what you're saying.

13           THE COURT:  Okay.  I'll tell you what:  The acoustics

14  are not -- very bad.  And when -- I have trouble even hearing

15  you.  When you're speaking, you may remove your mask, but try

16  to socially distance.  I'll leave it up to you all to look out

17  for your own health on that side -- but only when you're

18  speaking.

19           MS. DUNN:  Thank you, Your Honor.

20           THE COURT:  I know I'm hard to understand sometimes.

21           All right.  If you have access to Juror Number 182,

22  I'm looking at a number of jurors here, too, that we have --

23  have work-related issues.  One is a nurse, and we've been

24  very -- Number 182, she's a nurse and -- part of a team of two

25  nurses.  We've been very -- trying to do what we can to excuse

                 Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   medical people during the trial.  Lots of these people work at

2   the University hospital, and they are really strained.

3           MR. CANTWELL:  I'm sorry, Judge.  What juror number

4   did you say?

5           THE COURT:  182.

6           MR. CANTWELL:  182?

7           THE COURT:  Right.

8           MR. CANTWELL:  My juror list seems to stop at 98.

9   I'm looking at a list here, but I have --

10          THE COURT:  Well, Juror 182, I'll just say this:  It

11  would be very likely that I would excuse her if we went through

12  the voir dire process.  Is there any objection to excusing her

13  now?

14          MS. DUNN:  No objection, Your Honor.

15          MR. CANTWELL:  No objection, Judge.

16          THE COURT:  Okay.  Anyone on video?

17          MR. SMITH:  No objection, Your Honor.

18          THE COURT:  We're going to excuse Juror 182.

19          All right.  156 is -- this lady has --

20          MR. SMITH:  Your Honor, you said 182 for that last

21  one?

22          THE COURT:  Yes.

23          MR. SMITH:  Okay.  Thank you.

24          THE COURT:  Now I'm looking at 156.  It's a lady --

25  she talks about having a dog that's going to give puppies

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   sometime in the middle of the trial.  I mean, that's -- I know

2   that's a serious thing, but she does have a child with special

3   needs that's homeschooled, and I would -- I think that's the

4   kind of hardship that would justify the Court excusing her.

5           MS. DUNN:  No objection, Your Honor.

6           THE COURT:  Any objection?

7           MR. KOLENICH:  No objection.

8           MR. SMITH:  No objection.

9           THE COURT:  All right.

10          This is one that's sort of unusual.  This is 236.

11  It's a person who is a student at UVA and participating in an

12  NCAA tournament that's coming up at this time.  Generally I

13  would excuse anyone -- any student from a trial this long.  I

14  can't imagine that it wouldn't disrupt their whole semester,

15  even if they weren't an athlete, but I would think this is a

16  good excuse.

17          MR. SMITH:  No objection.

18          MR. CANTWELL:  What number?

19          THE COURT:  236.

20          MS. DUNN:  Your Honor, we would raise only that we

21  may get other students, and it could be that there are students

22  whose class schedule is such that they could sit on this jury.

23  So we would only ask that maybe we have the opportunity to

24  question this juror.

25          THE COURT:  I'm sorry?  Take your mask down.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  I'm sorry.  I apologize.

2          Given where we are, there may be students in this

3     venire, and we would just request to ask these students what

4     their class schedule is like because they may be able to serve

5     based on their current class schedule.

6          MR. SMITH:  Your Honor said this student was an

7     athlete, correct?

8          THE COURT:  Yes.

9          MR. SMITH:  That's the reason why --

10         THE COURT:  I think this student creates a special

11    situation above and beyond the average student.  If there's no

12    objection with regard to this one student, I would excuse her.

13         MS. DUNN:  We understand, Your Honor.

14         MR. KOLENICH:  No objection.

15         THE COURT:  All right.

16         Now, there are a number of prospective jurors who

17    have indicated bias beyond the likelihood of redemption.  And

18    I'm looking at -- well, let me say one other thing right now.

19         There was one juror that I have taken because of

20    sensitive information, being that the juror had been on the

21    grand jury that indicted Mr. Fields.  I removed him.  I didn't

22    want to take any chance on his name coming out, and I didn't

23    think there would be any possible way he could be qualified to

24    serve.

25         MS. DUNN:  Understood.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        THE COURT:  I'm looking now at one of those that I

2   pulled out.  It was Number 150.  Just the comments that are

3   made in there, it would just seem to me it would be hard for

4   him to be rehabilitated as a juror.

5        Any argument about that?  I'm just saying on the face

6   of it, I would think he would have to be excused for cause.

7        MS. DUNN:  Yes.

8        MR. CAMPBELL:  Judge, this is Dave Campbell.  I would

9   agree.  That's a juror I was going to bring up with the Court.

10  I think his responses clearly indicate a predilection.

11       THE COURT:  All right.  With no objection, I'm

12  excusing Number 150.

13       The next one is 156 -- correction:  175.  He's

14  56 years old.  175.  And he has -- he has problems with COPD,

15  will not wear a mask, and he has -- seems to have a rather

16  confirmed opinion about the case.

17       MS. DUNN:  No objection.

18       THE COURT:  Any objection from the defendants?  I

19  think he would go out for cause.

20       MR. SMITH:  No objection.

21       MR. CAMPBELL:  No objection.

22       THE COURT:  We'll excuse, then, 175.

23       All right.  Do we have any others in that stack?

24       MR. CANTWELL:  I'm sorry, real quick.  I'm trying to

25  find -- I understand the issue with the mask.  I'm trying to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  find the confirmed view of this.  I understand there's several

2  pages there, but this is the first time I've ever seen these

3  documents.

4          THE COURT:  I know it's the first time.  Go ahead.

5          Okay.  They are the ones that we have pulled that we

6  thought were fairly obvious, but there may be others we can

7  agree on.  And if so, you may bring them up.

8          MR. CANTWELL:  I mean, if somebody wants to -- I

9  understand there's several pages to this.  I can try to be

10  quicker about it if I understand what it is --

11          THE COURT:  Well, he has COPD.  Just turn to the last

12  page and you'll see some of the answers there would just

13  indicate that he's pretty well-set.  He has COPD.  He's not

14  going to wear a mask.  Can't -- says he has a medical reason

15  not to wear a mask.

16          MR. CANTWELL:  Are we concerned that he thinks Antifa

17  are useless criminals?

18          THE COURT:  What?

19          MR. CANTWELL:  Are we concerned that he has the view

20  that Antifa are useless criminals?

21          THE COURT:  I would --

22          MR. SMITH:  Your Honor, I haven't seen the jury

23  questionnaires yet.  Did he say that?

24          MR. CANTWELL:  Yes.  He said -- Question 34:  "Are

25  you familiar with Antifa?"

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          "Yes."

2          "If yes, how would you describe Antifa?"

3          He called them "useless criminals."

4          And I'm not sure if that's something that is

5    disqualifying in here.  I mean, I understand the COPD and mask

6    issue --

7          THE COURT:  I'm just saying that we have so many

8    jurors we have to go through.  If it's obvious that at the end

9    of the voir dire a juror is going to be struck for cause, and

10   if we can agree on that now, it will save us going through all

11   that time with those jurors.

12         Now, this person not only, you know -- he has, you

13   know, some pretty strong feelings here which I -- they're not

14   real clear, but he -- my greatest concern is that he has COPD

15   and he cannot, will not, wear a mask.

16         MS. DUNN:  There are several people in this pool who

17   say they won't be masked; they can't function under the COVID

18   protocols.  We marked some of those as well.  And I don't

19   think, given the situation in the Court, that we can have

20   people who refuse to cooperate with the protocols.

21         THE COURT:  That's the issue.

22         MR. CANTWELL:  Just so we're clear, are we going to

23   adopt the position that everybody who refuses to wear a mask is

24   going to be excluded from jury service?  Is that the standard

25   that we're going to go by?

17

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  I would like to do that.

2          MS. DUNN:  That would be our position.

3          MR. SMITH:  I feel like that's going to somehow work

4  out to the benefit of the plaintiffs in this case, but it's

5  pretty hard to object considering that, like, if they don't

6  want to wear a mask, either they get to not wear a mask or the

7  proceeding doesn't go on.  And this trial is happening.  So,

8  you know, it just seems like that's really the only way to go

9  with it.

10         MS. DUNN:  Your Honor, I tend to agree with that.  I

11  think it's good for nobody if this trial gets shut down because

12  we get COVID.

13         THE COURT:  Right.  This person, I thought, was --

14  that's the reason I thought he was a particular case, because

15  he may have a medical excuse not to wear a mask.

16         MR. CANTWELL:  All right.  So if we run into somebody

17  who says --

18             (Overlapping speakers.)

19         THE REPORTER:  I'm sorry, Mr. Cantwell.  Can you

20  repeat that?

21         MR. CANTWELL:  If we come across a juror who says "I

22  am familiar with Antifa and I think they're saving the

23  country," we're going to exclude them, too, right?

24         MR. SMITH:  Yes, Cantwell.  Of course.  Of course.

25         MR. CANTWELL:  Okay.  Fantastic.  Then no objection.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        THE COURT:  Well, if we can agree that anyone who

2   will not wear a mask, we will -- but this one I pulled out, he

3   is not only -- he won't wear them -- he says he won't wear a

4   mask, but he has a medical reason not to wear a mask, which is

5   COPD.  And it's hard to breathe with that.

6        All right.  Do you all have any other -- plaintiffs

7   can start, if you have any jurors you would like to bring up.

8        MS. DUNN:  Your Honor, we do have a number of them.

9   One thing that it might help the parties to understand before

10  we start is whether these jurors are called into the box, as it

11  were, by numerical questionnaire order or if they're called in

12  some other fashion, because we started our review --

13       THE COURT:  It's a random jury and there is a

14  fixed -- when we start taking strikes, it will be the random

15  list.

16       Heidi, would you speak to that, maybe?  I'm not sure

17  how --

18       THE CLERK:  So are you asking, when you get to take

19  your peremptory challenges, how they're going to be?

20       MS. DUNN:  Let me ask it so I make sure I'm asking

21  the right question.

22       My question is:  When the first set of jurors are

23  called into the box -- I understand they won't be in the actual

24  box, but into the gallery --

25       THE CLERK:  They'll be seated by that pool sequence

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   number.

2          MS. DUNN:  Right.  So they're seated in sequence,

3   start by questionnaire number?

4          THE CLERK:  Correct.

5          MS. DUNN:  Okay.  So we started our review at the

6   beginning of the questionnaires and we got through as much as

7   we could, and so we can do those today.  But we didn't

8   necessarily get to the very end of the list.

9          THE CLERK:  In essence, the pool sequence is their

10  name.  And they'll be seated in the courtroom by that pool

11  sequence number.  It's their alphabetical name.

12          But when we start doing your peremptory challenges,

13  it's going to be a whole different random numbering, numbers

14  that they don't know.  They will no longer be referred to by

15  their name number.  So they won't know who we're referring to

16  when you're doing your peremptory strikes.

17          MS. DUNN:  Okay.  Got it.  That makes sense.  But

18  just -- so basically --

19          THE CLERK:  But just them sitting in the courtroom,

20  they'll be by that full sequence number.

21          MS. DUNN:  Right.  And it goes in order -- number

22  order by whoever is left after people go for cause?

23          THE CLERK:  Correct.

24          MS. DUNN:  And then when they're replaced, they're

25  replaced by whoever is sequentially next?

                  Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021


1              THE CLERK:  Correct.  The number won't change.  They

2    will keep that number.  Like, 175 will be up, and then we'll go

3    to 176.  You know what I'm saying?

4              MS. DUNN:  Yeah.  That makes sense.

5              THE CLERK:  No number changes.

6              MR. CANTWELL:  If I could ask for a point of

7    clarification here.  This process that we're going through with

8    the jury -- I received a document when I was in Grady County,

9    Oklahoma that -- the title of it was something to the effect of

10   "Joint Proposal for a Partially Anonymized Jury."  Does that

11   ring a bell, the protocol that we're going by here?

12             So I just wanted to point out that that document that

13   I received said that I had agreed to it, and I sent a response

14   to that to the Court saying that I don't have any recollection

15   of agreeing to anything of the sort.

16             Now, I see the merits in protecting the jury from

17   unwanted attention, but I'm troubled by several things I've

18   seen that say that I agreed to them, that I have not, in fact,

19   agreed to.

20             THE COURT:  Okay.

21             MR. CANTWELL:  I just wanted to add that to the

22   record.

23             THE COURT:  You can bring that up at the time.  As

24   far as the jury is concerned, I mean, it was agreed among those

25   who considered it.  And the Court would order it anyway.  I

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  mean --

2              MR. CANTWELL:  I'm sorry.  It was agreed -- those who

3  what?

4              THE COURT:  Well, I'm saying -- of those who spoke to

5  the issue, those who considered it, who were available to speak

6  to it, that they agreed.  But what I'm saying, whether they had

7  agreed or not, it would have been the Court's order.  So you

8  didn't miss anything by not -- not agreeing to it, on that

9  issue.  And you can bring that up on anything -- you know, when

10 it comes up.

11             MR. CANTWELL:  Okay.

12             THE COURT:  All right.  Do you want to bring up any

13 particular number?

14             MS. DUNN:  I think we can just start at the -- in the

15 early numbers and go through it.

16             THE COURT:  I'm going to have my clerk sit here and

17 hand me -- all right.  Which number?

18             MS. KAPLAN:  We're just moving around here because

19 Mr. Bloch has access to the questionnaires and I don't.

20             MS. DUNN:  This is actually a question we had.  Are

21 counsel, including Ms. Kaplan, able to see the redacted

22 questionnaire?  So no names and no occupations, but is she able

23 to see -- and others similarly situated, are they able to see

24 the questionnaires that are redacted?

25             THE COURT:  Well, as long as they are in the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  courtroom -- I mean, I issued orders on this.  I don't want to

2  be getting off-base, but we're here now.  I don't see any

3  problem with anyone in the courtroom looking at it.

4        MS. DUNN:  Thank you, Your Honor.

5        MS. KAPLAN:  Thank you, Your Honor.  We acted in an

6  abundance of caution, of course, but thank you.

7        MS. DUNN:  Our first person is Juror 153.  There are

8  two issues we think are cause challenges.  One is his -- he

9  says he can't abide by court rules because he can't wear a mask

10 for a long time.  So similar to the earlier individual.

11       And then the second issue had to do with -- there are

12 people who have scheduling conflicts.  Some of them are

13 particularly disqualifying.  And this person says that they

14 have an immovable conflict.  He works for -- he or she works

15 for himself and are the only employee.

16       THE COURT:  Well, do the defendants have any comment

17 on that?

18       MR. SMITH:  Could you tell me what he said about the

19 mask situation again?  He said -- he didn't say he wouldn't

20 wear it, but that he can't wear it for a long time?

21       THE COURT:  He said he can't wear it for a long time.

22       MS. DUNN:  It says:  "Are you willing to abide by any

23 rules that the Court institutes regarding social distancing and

24 wearing masks during trial if you're selected as a juror?"

25       And he answers:  "No," and then explains:  "Can't

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  wear a mask for a long time."

2          MR. CANTWELL:  I'm sorry, what page is this on?

3          MS. DUNN:  It's on page 15 of Questionnaire 153.

4          MR. CANTWELL:  Your Honor --

5          MR. SMITH:  Go ahead, Chris.

6          MR. CANTWELL:  I'm having -- I mean, it's still early

7  in the process, clearly, but I'm noticing a pattern here that

8  people who get their news from The Drudge Report and Dan

9  Bongino --

10          THE COURT:  Well, there's no pattern quite yet.  One

11  doesn't create a pattern.

12          MR. CANTWELL:  This is two.

13          THE COURT:  If we don't agree, we're not going to

14  stand here and debate it.  We can bring him in and ask him

15  about the mask.  I mean, what's "a long time"?  We don't know.

16          MR. CANTWELL:  Good point.

17          THE COURT:  But if we can't agree, we don't agree,

18  and so -- at this point.

19          MR. SMITH:  Your Honor, I haven't had a chance to

20  review the juror questionnaires yet, and I would like to sort

21  of hear more or see more about what the responses were before

22  we make a decision on it, if that's okay with the Court.

23          MR. SPENCER:  Saying that you can't wear a mask for a

24  long time, that seems to be a reasonable comment to me.

25          THE COURT:  Okay.  I've found that some who are

24

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  not -- they don't like masks, and maybe they'll change their

2  mind.  I mean, when they get here, they'll do what they're

3  supposed to.

4          MR. SPENCER:  I totally agree.

5          MS. DUNN:  Your Honor, two things:  One is this

6  person answers the question whether they can follow the Court's

7  rules by saying no, and we just established that when

8  Mr. Cantwell asked for equity, that we would apply equity.  So

9  I think the defendants right now are doing what they're

10 accusing us of doing.  That's the first thing.

11         The second thing I would say --

12         THE COURT:  All right.  Well, let's take each -- let

13 each situation stand on its own feet.

14         MR. SMITH:  Your Honor, we --

15         THE COURT:  We're not going to agree on this one, so

16 I'm not going to rule right now as a matter of law that he

17 couldn't --

18         MS. DUNN:  Your Honor, I would like just for the

19 record to make one other point.  One of the first people that

20 you struck, you struck for their extreme views because they

21 used words like "these people are terrorists."  This 153 uses

22 this same language about people being terrorists.  So we --

23 just like Mr. Cantwell, we're looking for equity.  So if 150

24 was struck because of his strong language, that would apply

25 equally to 153 and other people who are in this pile.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. CANTWELL:  It's my understanding that the prior

2     juror was struck because he refused to wear a mask at all

3     because he had COPD.  And I'm not sure that thinking of Antifa

4     as terrorists after they spent 2020 looting and burning is a

5     controversial point of view.

6          MS. DUNN:  Your Honor, Mr. Cantwell is talking about

7     a different person.  We're talking about Juror 150, who the

8     Court has --

9          THE COURT:  Let me check 150 again.

10          MR. SMITH:  I mean, if they say Antifa are

11     terrorists, are any of the plaintiffs Antifa?

12          MR. CANTWELL:  I think they deny that allegation.

13          MR. SMITH:  So I'm not exactly seeing why that would

14     be prejudicial towards the plaintiff.

15          MR. SPENCER:  I concur.

16          MS. DUNN:  Your Honor, this is -- first of all, the

17     numerosity of voices feels a little bit like ganging up.

18          MR. CANTWELL:  Oh, my God.

19          MR. SMITH:  Is that a joke?  I'm sorry.  Is that a

20     joke?

21          THE COURT:  Let's address your remarks to the Court,

22     not to each other.  That doesn't work out very well.

23          Okay.  We're going to -- 150, there was no way to

24     redeem him and everybody agreed.  There's no agreement on this,

25     the one that we're now speaking of.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Your Honor, I -- I think the same logic

2     applies from 150.

3          THE COURT:  Well, it may be, but everybody agreed on

4     the other one.  They don't agree now.  So we're not sitting him

5     on the jury.  The question is:  Can we -- are there people we

6     can agree who obviously will have to be struck for cause?

7          MS. DUNN:  Then, Your Honor, we would ask -- I didn't

8     realize that.  And therefore, we object on 150.  I mean, this

9     is the -- it's the same thing.

10          THE COURT:  Well, I'm trying to -- I was trying to

11     get somewhere with this.  If you think -- I mean, as an

12     attorney, you're telling me you think 150 is redeemable?

13          MS. DUNN:  Your Honor, what I'm saying is --

14          THE COURT:  Okay.

15          MS. DUNN:  It's the same situation.  There are people

16     here who use extremely strong language.

17          THE COURT:  Okay.  I understand that.  But Antifa is

18     not a party to the case.

19          MS. DUNN:  I agree with that, Your Honor, but core to

20     the defendants' argument is going to be talk about Antifa.  So

21     there are a number of people here who are bringing very extreme

22     views.

23          THE COURT:  Aside from -- are there any on the jury

24     list that, other than for bias --

25          MS. DUNN:  Yes.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  -- that you think should be removed?

2          MS. DUNN:  Yes.

3          THE COURT:  Then 150 will be back on the list.

4          MS. DUNN:  Thank you, Your Honor.

5          MR. SMITH:  Is 150 -- you said that there was a

6  Fields juror for his state trial.  Was that 150?

7          THE COURT:  150 is 150.  I don't -- I haven't

8  committed them to memory.

9          MR. SMITH:  Of course not, Your Honor.

10          THE COURT:  Okay.

11          MR. SMITH:  Does anyone know that?

12          MR. CANTWELL:  150 -- I don't recall the reason that

13  he was taken off, but --

14          THE COURT:  Well, he's back on.  So let's pass that.

15          MR. CANTWELL:  Okay.

16          MR. SMITH:  Okay.  All right.  Fair enough.

17          MS. DUNN:  All right.  May I, Your Honor?

18          THE COURT:  Yes.

19          MS. DUNN:  All right.  Juror 160, also in response to

20  the question --

21          THE COURT:  Why are we back on 150?

22          MS. DUNN:  160.

23          THE COURT:  160.  Okay.

24          MS. DUNN:  His answer to Question 68:  "Are you

25  willing to abide by court rules with regard to COVID?"  He says

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   "No.  It's against my belief as a Christian."

2              MR. SMITH:  No, Your Honor.  He can come in.  He or

3   she.

4              THE COURT:  Maybe our rules on COVID can fit his

5   Christian beliefs.  I mean, we can see what --

6              MR. SMITH:  Vaccines I would be fine with, Your

7   Honor.  The mask is against -- no, absolutely not.  He can come

8   in.

9              THE COURT:  I think -- let's go to the economic

10  hardship cases.

11             MS. DUNN:  This person also has economic hardship.

12  He says, "I lost a lot of work for being sick for two weeks and

13  I'm self-employed."

14             MR. SMITH:  Is there anything else?

15             THE COURT:  That's sort of -- that type of thing, we

16  don't know quite enough about him.

17             MR. SMITH:  What juror number was that?

18             MR. CANTWELL:  We're on 160.

19             MR. SMITH:  I thought 160 was the person with the

20  Christianity won't let me wear the mask.  I thought that was

21  160.

22             THE COURT:  That's 160.  We're going to have 160

23  come.  You're not agreeing to it, right?

24             MR. CANTWELL:  Right.

25             THE COURT:  At this point I don't think the Court

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  can -- unless it's something that the Court -- there are legal

2  reasons the Court -- we normally tell jurors they don't have to

3  come when it's obvious.  But if it's someone that I can't

4  strike without bringing it up to the parties, I don't think --

5  I'm not going to take them off the list now.

6              I was thinking maybe we could come to some agreement

7  about some of them, then we don't have to listen to their

8  speeches and we can get rid of them today.  That would be

9  helpful.

10             MS. DUNN:  Your Honor, there are a number of people

11 who when they're asked if they could follow the Court's COVID

12 rules say no.  And so the reason we've raised those --

13             THE COURT:  Well, okay.  I understand, but like you

14 say, sometimes they say that and they get here -- I mean, I had

15 to try a case a couple of weeks ago and a number of them had

16 answered that question and then they -- when they got here,

17 they didn't -- they did what they were supposed to do.

18             MR. CANTWELL:  It's been my understanding from what

19 media coverage I've seen of this that some people initially

20 raise --

21             THE COURT:  Let's go on with this case.

22             MR. CANTWELL:  Okay.  Fine.

23             MR. SMITH:  Your Honor, you were saying that there

24 was -- one of the jurors after 160, there was somebody that was

25 saying that they were self-employed and they needed -- and they

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    couldn't take -- or they couldn't afford to take the time off

2    of work or something?

3              THE COURT:  Yes.

4              MR. SMITH:  That was after 160?  So what number was

5    that one?

6              MS. DUNN:  That is 160.

7              THE COURT:  Well, you're not going to find anybody

8    who says they can take a month off of work.

9              MR. SMITH:  Oh, of course.  I was --

10             THE COURT:  But there are certain people you can tell

11   that you're probably going to excuse because they can't -- it's

12   going to be a real hardship beyond that which is common to all

13   persons.

14             MR. SMITH:  Absolutely.

15             THE COURT:  And that's what I was asking, if you see

16   anybody like that you'd like to bring up as a possibility.

17             MS. DUNN:  Just to explain, the reason we flagged --

18   he's a self-employed person who does not think he could take

19   off work.  But the main thing with that individual is his

20   refusal to follow the COVID protocol.

21             THE COURT:  Well, I mean, we'll have to get him in

22   here and ask him.  We may have to tell him he's got to do it.

23   He doesn't have any reason not to, other than -- I forget now

24   whether he's a religious guy.  But anyway, let's go on to

25   another one.  Have you got anybody else?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1             MS. DUNN:  So number -- well, Number 161 says that

2    they were exposed to somebody with COVID.  So I don't know --

3             THE COURT:  Well, it would be long gone --

4             MS. DUNN:  -- if we care about that.

5             THE COURT:  -- by the time he gets here Monday.

6             MS. DUNN:  I mean, Your Honor, our understanding was

7    that the reason these questionnaires are so detailed is to

8    streamline the process.  So 161 is a teacher.  She lives an

9    hour and a half away.  She says many things on her

10   questionnaire designed to not serve on this jury.  She has an

11   autoimmune disease.  She's been exposed to someone with COVID.

12   I mean, plaintiffs would strongly favor streamlining this

13   because what's going to happen is people will just come in and

14   then they'll get excused.

15            MR. SMITH:  No objection to that one, Your Honor.

16            MR. SPENCER:  No objection.

17            THE COURT:  No objection to 161?

18            MR. CANTWELL:  I have an objection to it because this

19   is what we're seeing.  Turn to page 4 of the questionnaire.

20   Who do you admire most?  George Bush, Ronald Reagan.  What do

21   you watch?  Fox News.  Right?  So what I think is happening

22   here, and it's predictable, is that we're finding people that

23   the plaintiffs don't want on the jury and looking for an

24   excuse --

25            THE COURT:  Well, you haven't had your chance yet,

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   sir.

2           MR. CANTWELL:  I'm sorry?

3           THE COURT:  After we finish with the plaintiff, which

4   is the normal procedure in court, the plaintiff goes first,

5   then we'll go to you.  And I would expect that you all will

6   find people in this pool that don't favor you.

7           MR. CANTWELL:  Right.  And then the plaintiffs will

8   object.

9           THE COURT:  I'm not surprised that the plaintiff is

10  probably bringing up people that they may otherwise not want on

11  the jury.  But my point is:  Just think about the day we

12  pick -- start doing the voir dire of this jury.  If at the end

13  of the voir dire the lady is still a teacher, has some other

14  problem, the fact that she's biased is not -- she may be so

15  biased that she can't sit.  But the bias is not going to change

16  the fact that she may be otherwise unqualified, or may have an

17  excuse.  If it's obvious the person has an excuse, that's what

18  I'm trying to get rid of today.

19          MR. CANTWELL:  And I agree with you, which is why I

20  agreed to the gentleman with the COPD problem.  What we're

21  describing here is somebody who says I have at some point been

22  exposed to somebody with COVID-19, which I think describes the

23  entire population of the United States and most of the world.

24          THE COURT:  Well, she wouldn't be excused for that

25  reason.

33

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        MR. CANTWELL:  Well, precisely.  That's why I'm

2   objecting to it.

3        THE COURT:  I mean, if she would be excused, it may

4   be for the fact that she is a teacher and -- I don't know what

5   else her problem would be.

6        MS. DUNN:  Your Honor --

7        THE COURT:  We would not be able to excuse all

8   teachers.

9        MR. CANTWELL:  She's a history teacher and she's very

10  upset about the historical monuments being taken down, I think

11  is the real issue.

12        MS. DUNN:  Your Honor, just to be clear about what

13  the issue is, there are people who have filled out these

14  questionnaires who -- sorry, Your Honor.

15        THE COURT:  161 I'm not excusing as of yet.

16        MS. DUNN:  All right.  Your Honor, 171 is an

17  individual who says he needs hearing aids but can't afford

18  them.  He also says that he has economic hardship, and he also

19  says he can't decide this case based on the evidence.

20        And just for the record, we looked at -- some of

21  these questionnaires are filled out with so many cause bases

22  that these people likely do not want to serve, and will try to

23  get off this jury in any event.  So rather than waste

24  everyone's time -- but even if all we knew is that he needed

25  hearing aids but couldn't afford them, that would be

                34

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021


1   sufficient.

2           MR. CANTWELL:  I'm sorry, which page did he say I

3   can't judge this case based on the evidence?

4           THE COURT:  It's Number 171.  He cannot hear and

5   cannot afford hearing aids.

6           MR. SMITH:  We don't object to excusing that juror,

7   Your Honor.  Josh Smith again.

8           MR. CANTWELL:  I would say based on his answer to

9   question 43, that he's heard things that make it difficult to

10  be fair and impartial, then that's something that he has to be

11  excused for, yeah.

12          THE COURT:  With no objection, I'm excusing 171.

13          MS. DUNN:  Moving with all alacrity to 172, this

14  individual says that he or she is unvaccinated and would be

15  uncomfortable around people he doesn't know.  And so we flagged

16  this for the COVID issues.

17          MR. SMITH:  No, Your Honor, I don't think that meets

18  the standard we agreed on.  So I think we should bring them in

19  and inquire further.

20          MR. CANTWELL:  I agree with Mr. Smith.

21          MS. DUNN:  For the record, just so we're clear, Your

22  Honor, the defendants have accused us of, you know, not liking

23  people of a certain profile.  And at the beginning of this

24  hearing we agreed that we would apply an equitable standard to

25  people who couldn't -- who were not -- who would not wear a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  mask.  This person is unvaccinated and doesn't want to be

2  around other people.  The Court has made everybody attest to

3  come in here, even today.

4         MR. SMITH:  I'd like to know more about them before

5  we make a decision.  I'm not saying that we won't decide that

6  they should ultimately be excused, but I don't have enough

7  information to make a decision at this time.

8         MR. CANTWELL:  I know that I have not agreed to

9  anything that says all the jurors in this case have to be

10 vaccinated.

11        MR. SMITH:  Cantwell is right.

12        THE COURT:  All right.  At this point we'll leave 172

13 on.

14        MR. SMITH:  I'd just like to say --

15        THE COURT:  We didn't hear that.

16        MR. SMITH:  I just want to say I think we're doing

17 great so far.  I think we agreed on five or six of them, four

18 or five.  I think that's great.

19        THE COURT:  Okay.  I'll let the plaintiff continue if

20 you have any others.

21        MS. DUNN:  Thank you, Your Honor.

22        Juror 188.  There are a number of cause issues with

23 this individual.  The first is -- hold on.  Let me make sure

24 I'm at the right questionnaire.  I am not.

25        So he says he's doing training for his new job out of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  town in Boston through the end of November.  His training dates

2  are set and he already has airline tickets.  He also says in

3  question 73 that the absence from his job is already weighing

4  on his mind and he won't be able to focus on trial.

5          And so I think -- oh, and then on question 70 he says

6  he can't -- he might not be able to follow the law in this

7  case.  But leaving that reason aside, I think the other two

8  reasons are sufficient cause bases.

9          THE COURT:  Okay.  Any objection to this one?  It

10  seems to me that he does have an unusual hardship that other

11  jurors don't share.

12          MR. SMITH:  Your Honor, she cut out a little bit

13  there.  So I didn't get the -- I got the one -- the reason, he

14  might not be able to apply the law, but like the first reason

15  she was saying, I didn't hear that exactly.

16          THE COURT:  This is the man that has -- he's training

17  for a new job out of town in Boston through the end of November

18  and this would interfere with that training.

19          MR. SMITH:  I don't have any objection to that.  We

20  can excuse him.

21          MR. CANTWELL:  No objection.

22          THE COURT:  Okay.

23          MS. DUNN:  Your Honor, Juror 189 --

24          THE COURT:  All right.  Let me be sure it's on the

25  record that we stated 188 is excused.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          Okay.

2          MS. DUNN:  I apologize, Your Honor.  Is it my turn?

3          Juror 189, this was an issue that I think we had

4    agreement on earlier.  He says he cannot set aside his

5    preconceived notions to decide this case.  The second problem

6    that's cause basis is his answer to 70, which is he says "the

7    reason for a jury is to decide if a law itself is just."  And

8    so our concern here is jury nullification.  He's basically said

9    he's willing to do that on his form, and that would be his job.

10   I don't think any of us would favor such a juror.

11         But the second reason is one that I think we agreed

12   to earlier, which is he says clearly he can't set aside his

13   preconceived notions to decide on the evidence.

14         MR. SMITH:  Does he know what the case is about yet?

15         THE COURT:  Mr. Smith, I didn't understand that.

16         MR. SMITH:  Oh, he can't set aside his preconceived

17   notions.  Does he know what the case is about?

18         MS. DUNN:  Your Honor, if I may, his questionnaire

19   does reflect that he knows what the case is about.  He says he

20   can't decide it on the evidence, and he believes his job as the

21   juror is to decide whether the law itself is just.

22         MR. SMITH:  I'd like to know more about him before we

23   make a decision on him.  I don't know yet.

24         THE COURT:  I would just say if he persists in that

25   belief, he's someone I would excuse for cause.

 1            MR. SMITH:  Yes, of course, Your Honor.

 2            THE COURT:  But if you want to bring him in, we'll do

 3  that.

 4            MR. SMITH:  Yes, Your Honor.

 5            THE COURT:  189 is not excused at this point.

 6            MS. DUNN:  Juror 221 asks -- two things.  One is

 7  similar to the gentleman with the COPD.  This person says he

 8  has A-fib and high blood pressure, but I think also very

 9  critically says he cannot decide the case on the evidence.

10            MR. CANTWELL:  What question number is this where he

11  said he can't decide on the evidence?

12            MS. DUNN:  72.  He says he can't --

13            MS. KAPLAN:  No, 221.

14            MS. DUNN:  Oh, I'm sorry, 221.  I thought

15  Mr. Cantwell asked --

16            MR. CANTWELL:  I am looking for the question number.

17  I know the juror number is 221.

18            MS. KAPLAN:  I apologize.

19            MR. CANTWELL:  You know, this is question 72 you're

20  referring to?  We're talking about the same thing?

21            MS. DUNN:  It's 61 and 72.

22            MR. CANTWELL:  61 and 72.

23            MS. DUNN:  Correct.

24            MR. CANTWELL:  All right.  Well, if it's the A-fib

25  and high blood pressure, I don't know that these are --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  I don't think that's a big deal.

2          MR. CANTWELL:  Question 72, the juror says:  "I would

3  try.  Very against protests and riots."  I think probably most

4  people are against riots.  And so if she has a preconceived

5  idea that riots are a bad idea, I think that's someone we could

6  probably work with.

7          MS. DUNN:  Your Honor, I think the issue is if

8  somebody checks off no, that they couldn't put aside their

9  preconceived notions -- and I thought we had agreed on this on

10  an earlier case -- that they can't decide the case solely on

11  the evidence and the law as instructed by the Court, this is

12  not a juror that anybody here should want.

13          MR. SMITH:  I don't think that, Your Honor.  We

14  should at least inquire further to make sure those beliefs are

15  sincere and that they're not a product of not really

16  understanding what they're saying.

17          THE COURT:  All right.  The juror will not be excused

18  at this time.

19          MS. DUNN:  Thank you, Your Honor.

20          THE COURT:  How about number -- let me bring up one.

21  Number 224.  "I have to get my kids off the bus.  I do not have

22  child care.  I live on" -- 224.

23          MS. DUNN:  Your Honor, we would want to ask this

24  person more questions.  They're 58 years old.  And given the

25  standard that's been applied to other people in this case, we

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  would not agree to excuse this person.

2        MR. CANTWELL:  I'm sorry, which juror number?

3        MS. DUNN:  224.

4        MR. CANTWELL:  You said 224 is 58 years old?

5        MS. DUNN:  Oh, I apologize.  I'm wrong about that.

6  Thank you, Mr. Cantwell.

7        But in any event, I think given the standard that's

8  been applied to other jurors that we have discussed, we would

9  request to ask this person more questions.

10       MR. SMITH:  I'm fine with that, Your Honor.

11       THE COURT:  This person does say are you a

12  healthcare -- look at 60.  "I'm a medical assistant at an

13  urgent care.  I have direct contact with positive" -- then she

14  has to get her kids off the bus.

15       All right.  With no agreement on it, we will pass

16  224.

17       MS. DUNN:  Your Honor, I think we were at juror 234.

18  Again, this is another questionnaire that seems like it's

19  trying to offer many cause bases.  This person says that they

20  have an inability to concentrate because of COVID.  They can't

21  abide by the Court rules because they refuse to wear a mask,

22  like the prior individual.  And they say that they would have a

23  difficulty being impartial because they're sick of all of this.

24       MR. SMITH:  They said they refuse to wear a mask?

25       MS. DUNN:  Correct.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. SMITH:  Sorry, got to go.  I don't have any

2    objection, Your Honor.

3          MR. CANTWELL:  Isn't it -- I mean, my understanding

4    of where this is -- is just refusing to wear a mask, is that

5    something that is okay?  I mean, can they do that?

6          THE COURT:  Well, I'm going to order them to wear a

7    mask.  If they don't wear a mask --

8          MR. CANTWELL:  I don't want to strike this juror.  I

9    want him in.  I want to question him about his mask beliefs.

10         MR. SMITH:  Fair enough.

11         MS. DUNN:  Your Honor, this is very -- I mean, this

12   is -- earlier we all agreed if somebody refuses to wear a mask,

13   they would be excused.

14         MR. CANTWELL:  We did not agree to that, actually,

15   Judge.  What we agreed to is that man had COPD and had a

16   medical condition which prohibited him from wearing a mask, so

17   I was not going to interrogate him about his mask -- about his

18   medical condition.

19         If somebody says -- this is something that should be

20   familiar to everybody in this room by now.  The mask issue has

21   become a politicized point.  People resent it because they feel

22   like it's being imposed upon them by the Democratic party.  So

23   this is going to result in a very favorable situation for the

24   plaintiffs, in which they will strike Republican after

25   Republican after Republican --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  Look, look, we don't need that.

2          MR. SMITH:  Cantwell, do you know what else people

3  resent --

4          THE COURT:  234 is passed for the time, this time.

5          MS. DUNN:  Your Honor, just for the record, let me

6  point out to Mr. Cantwell, this person says his wife has

7  Crohn's disease and her immune system is compromised.  The odds

8  that this person makes it onto this jury is zero.  We're just

9  trying to streamline the situation so we're not here till

10  Christmas.

11          MR. SMITH:  Cantwell, does this sound like somebody

12  you want to force to sit on a jury for four weeks?  They don't

13  sound like they're going to be very happy about the experience.

14  That's really not good for anybody.

15          MR. CANTWELL:  Judge, my view of it is I think that

16  once we get people in here and question them about their mask

17  beliefs, I think in a lot of cases these things are going to

18  turn out to be less than sincere.  They're making fashionable

19  political statements in their questionnaires --

20          THE COURT:  Look at this man.  He's got the wife with

21  whatever all of her problems are.  There are people -- good

22  people and bad people that have things in their lives that have

23  nothing to do with how they behave in a particular situation.

24          MR. SMITH:  Chris, if they're equivocal about the

25  masks, then we'll bring them in.  This states very clearly, if

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    they're bold enough to state right to the Court "I'm not going

2    to wear a mask even though you're ordering it," that's probably

3    a line we can draw and say, you know what?  Let's just --

4    let's -- they'll be resentful if they're on the jury.

5            MR. CANTWELL:  And if that turns out to be the case,

6    then he won't be on the jury.  The issue here --

7            THE COURT:  Okay.  We'll take 15 or 20 minutes on

8    Monday to get to the same point we could get to today if -- you

9    know -- you know what the result is probably going to be on

10   this particular juror.  But be that as it may, we'll bring him

11   in.

12           All right.  Who is next?

13           MS. DUNN:  All right.  Juror Number 234 -- I

14   apologize.  235.  And Your Honor, we might ask Mr. Cantwell to

15   reconsider on 234 given the obviousness, but we can let it go

16   for the moment and maybe return to it.

17           On Juror Number 235, he says COVID, high risk.  "My

18   wife is a vulnerable person due to underlying medical

19   conditions and I provide direct care for her, cooking,

20   cleaning, driving her to appointments."  Under COVID concerns

21   he says, "Because of my wife's medical conditions I would be

22   concerned about her coming into contact with someone who is a

23   carrier of the disease.  On her doctors' advice we are not

24   vaccinated because of her conditions and my family's medical

25   history."

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        MR. SMITH:  I think we should bring him in.  I don't

2   think that's sufficient.

3        THE COURT:  Okay.  We'll pass on 235.

4        MS. DUNN:  Juror Number 237, I don't know Your

5   Honor's policy on these kinds of issues, but this person had

6   their knee replaced and can't sit or stand for very long, they

7   say.

8        So again, I just want to reiterate on the last two

9   jurors --

10        THE COURT:  Well, we can -- on somebody like that, we

11   usually tell them they can -- in particular here, they're going

12   to be in the gallery.  They can stand if they need to.

13        MS. DUNN:  Understood, Your Honor.

14        MR. SMITH:  Your Honor, I think we should probably

15   ask further questions about that.  But if it's genuine, if it

16   seems genuine, I'm inclined to agree to excuse.  But I don't

17   know yet.  The description is a little vague.  Like, when did

18   it happen exactly?  How long has it been?  It's possible that

19   the person might be sort of using it as an excuse, even though

20   they had the procedure several years ago, for example.

21        MS. DUNN:  Your Honor, I apologize.  This person -- I

22   misread the questionnaire.  Thank you to Mr. Bloch.  His knee

23   replacement is scheduled for during this trial.  So

24   November 17th, 2021.

25        MR. CANTWELL:  What page is that?  I'm sorry.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Excuse me?

2          MR. CANTWELL:  What page or answer to what number

3  question?  It's Juror 237, right?

4          MS. DUNN:  Correct, Juror 237, Question 6.

5          THE COURT:  On Question 6, she says total knee left

6  replacement will be November 17th, '21.

7          MR. SMITH:  Cantwell, can you tell me what reason we

8  would want to keep this person on the jury?  I don't have them

9  in front of me.  Do you see anything?  Look for Fox News.

10          MR. CANTWELL:  It fits the pattern of everybody

11  they're trying to strike.

12          THE COURT:  Well, that's the nature of the thing.

13  You will get to try to strike everybody that they would not

14  want you to strike.  But this lady has surgery set for

15  November 17th and it's to correct a condition that's going to

16  be uncomfortable for her to be on the jury.

17          MR. CANTWELL:  And I'm about to agree with you that

18  he -- this person has -- I'm sorry, she has an appointment for

19  11/17.  The trial is scheduled for November 19th.  I think that

20  that is actually a good reason to strike a juror.  And so, like

21  several other jurors that they've attempted to strike, I'm

22  perfectly okay with this one because there is an actual reason.

23          THE COURT:  All right.  We'll strike --

24          MR. SMITH:  No objection.

25          THE COURT:  -- 237.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Your Honor, at this point I must say on

2    the record that we have not moved to strike for cause --

3          THE COURT:  Wait a minute.  I don't think it's

4    necessary to answer everything because the record of this trial

5    is not -- no one is going to care after today what's said here.

6    I mean, as far as -- I mean, legal objections could go to the

7    Fourth Circuit.  But I don't think you have to answer every

8    perceived slight or insult.

9          Go ahead.

10          MS. DUNN:  I appreciate that, Your Honor.

11          If you would turn, please, to Juror 254.  254, we do

12    have -- we have a number of bases for cause.  This is the kind

13    of questionnaire where this person is not going to make it onto

14    the jury.  We think it is highly inappropriate to seat somebody

15    on this jury who says they're unable to follow these

16    instructions and say "these people are only in it for the

17    attention and the money."

18          There are numerous other disqualifying features of

19    this questionnaire, but that --

20          MR. SMITH:  What number?

21          MS. DUNN:  I would hope we could all agree that

22    someone who in their questionnaire says "I can't follow the

23    Court's instructions because these people are only in it for

24    attention and money" should be removed for cause.

25          MR. SMITH:  Your Honor, what number is this?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  254.

2          MR. CANTWELL:  And what question number are you

3  referencing?

4          MS. DUNN:  70.

5          MR. SMITH:  So he or she said -- she can't -- tell me

6  that one more time.  I'd really like to hear that just once

7  again, if you don't mind.

8          MR. CANTWELL:  Question 70.  Under the law, the facts

9  at issue in the trial or for the jury to determine the law

10  applicable to the allegations is something on which you will

11  be -- the Court will instruct you.

12          This is the question you're referencing, right?

13          MS. DUNN:  I have to --

14          MR. CANTWELL:  It's Question 70.  The answer is:

15  "Honestly, these people are only in it for the" -- something

16  "and money."

17          THE COURT:  "Attention and money."

18          MR. CANTWELL:  "Attention and money."

19          MR. SMITH:  Did they specify who they mean by "those

20  people"?

21          MS. DUNN:  Sorry.  Your Honor, the question is:

22  "Would you have any difficulty following the instructions if it

23  was at odds with your own views of what the law should be?"

24  And they check "Yes."  "Honestly, these people are only in it

25  attention and money."

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. SMITH:  We'd like to inquire further, Your Honor.

2  I don't know if those beliefs are really sincere yet.

3          MR. CANTWELL:  And --

4          THE COURT:  Wait.  Let me hear from Mr. Smith.

5  Mr. Smith --

6          MR. SMITH:  Of course, Your Honor.  I said I'd like

7  to inquire further.  I'm not sure if those beliefs are sincere

8  yet.  I'd like to sort of question them about that and see what

9  they might really mean.

10          THE COURT:  Do you object -- are you objecting to

11  striking the juror at this time?

12          MR. SMITH:  Well, Your Honor, I'm not sure.  I know

13  that we're on Juror 254, and they have -- I'm sorry -- the

14  plaintiffs have suggested that this juror be excused.  I don't

15  think that -- I'm not quite ready to excuse them yet.  I'd like

16  to inquire a little further of them.

17          So, yes, I think that we should -- I think Your Honor

18  was saying pass.  We should pass on them and come back to them.

19          THE COURT:  All right.  We'll pass.

20          MS. DUNN:  Your Honor, we strenuously object.  This

21  person has said -- has already prejudged the plaintiffs in this

22  case and has said they can't follow --

23          THE COURT:  I'm not saying the juror will not be

24  stricken for cause.

25          MS. DUNN:  Okay.  That's helpful to understand.  So

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   jurors that we pass on may still be struck for cause?

2           THE COURT:  Of course.

3           MS. DUNN:  Great.  Okay.

4           THE COURT:  I mean, this is just hopeful to get rid

5   of the obvious ones that -- I mean, even though there are

6   jurors in here who obviously can't -- are for your side and

7   can't -- wouldn't go the other way for anything they say, but

8   sometimes, you know, people get in and -- and of course on the

9   opposite side.  There are people when they get here, they take

10  the oath and they --

11          MR. SMITH:  There are people who see a question like

12  that as a golden ticket to getting out of jury duty and they'll

13  just put "yes" because they think that it will be an automatic

14  excuse.

15          THE COURT:  There are things -- some of these people

16  are beyond redemption insofar as being rehabilitated to be a

17  juror.

18          MS. DUNN:  Thank you, Your Honor.

19          THE COURT:  Let's take a break now for about

20  ten minutes and we'll come back.

21          (Recess.)

22          THE COURT:  Why don't we switch horses a minute?  And

23  I'll let the defendants bring up any jurors that the defendant

24  wishes to bring up at this time.

25          MR. CANTWELL:  Judge, for me personally, this is the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  first time I've ever seen these documents.  I'd like to spend

2  some time with them.

3        THE COURT:  Well, obviously you don't have any.

4  Mr. Smith might, or some of the others.

5        MR. SMITH:  Your Honor, I haven't had an opportunity

6  to access the questionnaires yet, either.  I know that Heidi

7  and I emailed about that earlier at the end of the day

8  yesterday.  And I haven't had access to them yet, but I will

9  have a list for the Court on Monday morning so that we have

10  them ready to go through at least.  I'm sorry I don't have

11  anything right now.

12        THE COURT:  Well, if you have any -- if you have

13  anyone, you might send the names to plaintiffs' counsel.

14        MR. SMITH:  Oh, sure.

15        THE COURT:  And if the plaintiffs -- if you both

16  agree, then you can let us know, let the Court know, and we can

17  stop the jurors.

18        MR. SMITH:  Of course, Your Honor.  That sounds good.

19  I will do that.  Absolutely.  Thank you.

20        THE COURT:  Any of the *pro se* defendants have any

21  questionnaires they wish to bring up?

22        MR. CANTWELL:  Not yet, Judge.

23        THE COURT:  Okay.  Well, we'll go back to the

24  plaintiff.

25        MR. KOLENICH:  Your Honor, Jim Kolenich for Defendant

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    Kessler.  If it's defendants' turn, I'd like to bring up a few.

2              THE COURT:  Did you say you have no --

3              MR. KOLENICH:  I have one or two questionnaires I'd

4    like to bring to the Court's attention this morning.

5              THE COURT:  Okay.  You may.

6              MR. KOLENICH:  Thank you, Judge.

7              Juror 186, the questionnaire states they were present

8    at the event, they were a counterprotester, and that they are a

9    personal friend of the Wispelwey family.

10             THE COURT:  All right.  Does the plaintiff have any

11   objection to excusing that juror?

12             MS. DUNN:  Your Honor, we would like to talk to this

13   person.  We looked into the law in the Fourth Circuit and this

14   wouldn't be basis for cause, but we're happy to just have a

15   conversation with this juror when he gets here.

16             THE COURT:  All right.  We'll pass that juror.

17             MR. KOLENICH:  Thank you, Your Honor.

18             Juror Number 314 is a financial donor to Black Lives

19   Matter and states they cannot be impartial.

20             MR. SMITH:  Which number is that, Jim?

21             MR. KOLENICH:  314.

22             THE COURT:  All right.  Does the plaintiff object to

23   that?

24             MS. DUNN:  Your Honor, we do think that because we

25   passed over so many people who said they could not be

1  impartial, we think we need to pass over this individual as

2  well.

3          MR. CANTWELL:  I'd just also point out that she says

4  she has a doctor's appointment on November 9th, which is during

5  the trial.

6          MR. SMITH:  Your Honor, we'd obviously want to

7  ultimately challenge them for cause, but if the plaintiffs want

8  to call them in to ask them questions, I have no problem with

9  that.

10          THE COURT:  Okay.  She didn't ask to be excused, did

11  she?  We'll bring her in.

12          MR. KOLENICH:  Thank you, Your Honor.  The remainder

13  of mine would have been for asserted impartiality that, as

14  plaintiffs pointed out, we passed on previously today.  So,

15  since my co-defendants seem to want to bring in everybody under

16  the sun for questioning on Monday, that's all I have.

17          MR. SMITH:  I feel like those -- you know, "Can you

18  be impartial in this case?"  I don't know.  Sometimes those are

19  the golden ticket questions, like, real easy out for people.

20  Sometimes it's good to just get into that a little further.

21          THE COURT:  Okay.  I'll ask the plaintiff if you have

22  any others that you think there's any -- worthwhile going into

23  for cause.

24          MS. DUNN:  We do, Your Honor.

25          MR. SMITH:  While nobody is talking, David Campbell,

53

                 Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    I sent you a Zoom message on the chat, just so you know.  I

2    didn't know if you saw it or not.  But it's there.

3               Sorry about that, Your Honor.

4               THE COURT:  What did he say?

5               MR. SMITH:  I'm just telling Attorney Campbell that I

6    sent him a Zoom message in the chat, the remote chat.  I don't

7    know if he saw it or not.

8               THE COURT:  All right.

9               MS. DUNN:  Thank you, Your Honor.

10              Juror Number 268 says they would be moderately

11   concerned in returning an acquittal for fear of repercussions

12   on behalf of the plaintiffs or their sympathizers.  We would

13   ask that this person who would fear reprisal, if it would

14   impede their ability to decide the case, be excused.

15              MR. SMITH:  Your Honor, we'd like to bring them in

16   for questioning a little further on that.  They may not realize

17   that the jury is anonymous.

18              THE COURT:  Okay.  We'll pass on that one.

19              MS. DUNN:  Your Honor, Juror Number 280 says they

20   have extreme trouble understanding the questionnaire and

21   trouble with the English language.  Separately, they say they

22   couldn't solely consider courtroom evidence.  But we think

23   that, you know, having trouble with English and not being able

24   to understand the questionnaire is cause.

25              MR. SMITH:  We have no objection to that, Your Honor.

1      THE COURT:  All right.  Any objection?

2      MR. SMITH:  Josh Smith.

3      THE COURT:  Okay.  We'll excuse 280.

4      MS. DUNN:  Your Honor, Juror 281 has some very

5  extreme statements in this questionnaire.

6      73, he writes:  "I expect this case to be an example

7  of a kangaroo court case.  I'm unconvinced the defendants will

8  be treated or sentenced fairly."  He goes on, but he uses the

9  phrase "kangaroo court" and "rigged jury" numerous times.

10      I think this is -- he writes a fairly long

11  explanation about -- about the kangaroo court.

12      MR. CANTWELL:  Well, we have the chance to prove him

13  wrong, then.  I object to striking the juror.

14      THE COURT:  All right.  We'll pass.

15      MS. DUNN:  Your Honor, Juror 282 says she's the only

16  assistant to a solo surgery practice and that her boss needs to

17  take off when she takes off.

18      MR. SMITH:  Which number is this again?

19      MR. CANTWELL:  This is 282.  I have no objection to

20  it.

21      MR. SMITH:  No objection, Your Honor.

22      THE COURT:  All right.  We'll excuse 282.

23      MS. DUNN:  Your Honor, Juror 283, again, is a

24  questionnaire that raises so many objections it's hard to

25  believe this person would ever sit on a jury, but the basis for

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  cause is answer 70.  She says she would be unable to follow the

2  Court's instructions because depending -- "some laws, I

3  believe, are outdated and should be changed."  So again, we'd

4  have a jury nullification issue with this.

5          MR. CANTWELL:  No objection from me.

6          MR. SMITH:  No objection, Your Honor.

7          THE COURT:  All right.  Excuse 283.

8          MS. DUNN:  289, there are a couple of bases for

9  cause.  One is -- we discussed earlier, and I think defendants

10  agreed to this -- people who say -- are categorical they don't

11  wear masks and are not vaccinated should be excused.

12          This person also has trouble with English; has

13  trouble reading, he says.

14          MR. CANTWELL:  I'm not sure that we agreed to what --

15          MR. SMITH:  He says he doesn't wear a mask, or

16  wouldn't wear a mask?

17          MS. DUNN:  He says "I am not vaccinated" and doesn't

18  wear a mask.

19          MR. SMITH:  That doesn't bother me.

20          MR. CANTWELL:  It's a fashionable political statement

21  on the right these days.  I object to striking the juror.

22          MR. SMITH:  We also object, Your Honor.

23          THE COURT:  All right.  Pass 289.

24          MS. DUNN:  Your Honor, Juror 310 says he only has one

25  kidney and has extreme COVID concerns.  He says, "Other than go

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   to work, I stay home and away from gatherings and do not feel

2   comfortable in a room with people I don't know and all the

3   people in their household.  This sort of setting is where COVID

4   spreads.  All the people in the courtroom, an indoor setting,

5   is where COVID spreads."

6          MR. SMITH:  Not with this mask rule.  No way.  Not

7   with the Court's mask order.  I don't believe that COVID will

8   be spreading here.  So let's bring him in.  There was someone

9   else who had very similar comments and we said we wanted to

10  question them further.

11         THE COURT:  All right.  We'll pass 310.

12         MS. DUNN:  Your Honor, Juror 316 has two issues.  And

13  his medical issue -- her medical issue is I believe distinct

14  from some of these others.  This person has Crohn's disease,

15  which is very -- a very difficult disease -- and also has an

16  economic problem, which is she says, "I own my own company and

17  can't be away from it this long."

18         MR. CANTWELL:  I'm sorry, I just don't -- if anybody

19  cares to inform me, what is Crohn's disease?

20         MR. SMITH:  It's an autoimmune disease, Chris.

21         MS. KAPLAN:  It's one of the worst of the autoimmune

22  diseases like rheumatoid arthritis, etc., but Crohn's affects

23  your inner organs.

24         MR. CANTWELL:  No objection.

25         MR. SMITH:  It's pretty painful, Chris.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          No objection, Your Honor.

2          THE COURT:  She's excused, 316.

3          MS. DUNN:  Your Honor, Juror 319, also health issues

4  that she flags.  She says, "I had major back surgery.  My

5  healing time is six months.  I'm on pain medication every day.

6  I have to stay home."  Then she flags herself as COVID high

7  risk due to blood clots on lungs from her surgery.

8          MR. CANTWELL:  No objection.

9          MR. SMITH:  No objection, Your Honor.

10          THE COURT:  All right.  Excused, 319.

11          MS. DUNN:  Juror Number 331, Your Honor, also flags

12  himself as COVID high risk.  He says he had COVID-19, which

13  causes brain fog.  In addition, he's concerned about his wife.

14  But it's a pretty standard cause basis to have a brain issue

15  that you can't -- makes you believe you can't focus on the

16  evidence.

17          MR. CANTWELL:  Sorry, just a second.

18          MR. SMITH:  Did you say brain fog?

19          MS. DUNN:  Correct.

20          MR. SMITH:  Is that a thing?

21          MR. CANTWELL:  331, you said?

22          MS. DUNN:  Yes, Mr. Cantwell.

23          MR. SPENCER:  What is the cause of his ailment?

24  Brain fog seems to be a casual word of:  I have difficulty

25  concentrating.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Your Honor, this individual had COVID, and

2    that's what's caused his brain fog, according to his

3    questionnaire.

4          MR. SPENCER:  So it's long COVID.

5          MR. SMITH:  We can bring him in, I think.

6          THE COURT:  All right.  Pass 331.

7          MS. DUNN:  Your Honor, Juror 354 says she can't

8    decide the case on the evidence because she doesn't trust

9    anyone and that the judicial system is corrupt because of this

10   questionnaire.

11         THE COURT:  Yes, she was very interesting.

12         MS. DUNN:  There are many -- excuse me.  Your Honor,

13   there are many, many, other comments in the questionnaire that

14   I'm not reading out loud, but are of a similar vein.

15         MR. SMITH:  She said because of the questionnaire the

16   courts are corrupt?

17         THE COURT:  She said the court system was corrupt, as

18   I recall, because she had to answer the questionnaire.  But she

19   had a lot of other issues, too.

20         MR. CANTWELL:  I object to striking the juror.

21         THE COURT:  All right.  We'll pass her.

22         MR. SPENCER:  I don't object, just for the record.

23         THE COURT:  What was that?

24         MR. SPENCER:  I don't object to striking jurors who

25   are flagrantly attempting to disrespect the Court and the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   process, just for the record.

2          THE COURT:  All right.  Thank you.

3          MS. DUNN:  Your Honor, Juror 376, there are two

4   issues that I would think we might be able to agree upon, which

5   is she is the only income and caregiver to a special needs

6   child.  She says four weeks would not be financially feasible

7   for her.  She also has an autoimmune disease and she says she's

8   a caregiver with CP plus epilepsy and she's very high risk.

9          MR. CANTWELL:  No objection.

10          MR. SMITH:  No objection, Your Honor.

11          MR. SPENCER:  That seems reasonable.

12          THE COURT:  Repeat the number.

13          MS. DUNN:  Thank you, Your Honor.  Juror 376.

14          THE COURT:  376 will be excused.

15          MS. DUNN:  Your Honor, Juror 386, similar to the

16   nurse of the beginning of this hearing, this person says he

17   works at a hospital admission unit which is considered to be in

18   quarantine constantly while accepting new admissions per VDH

19   guidelines.  His wife in primary care at a hospital is in

20   contact with new admissions.  He's concerned about being away

21   from work because patient care demands are high and hospital

22   staffing is in crisis.  No one can easily do his job for four

23   weeks.  We think that's obvious cause.

24          MR. CANTWELL:  I think that most people would

25   consider it pretty troublesome to be away from work for four

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   weeks, right?

2          THE COURT:  Well, but this hurts the community for

3   this person to be away, a medical --

4          MR. SMITH:  Remember, Chris, there's only going to be

5   12 ultimately we select.

6          MR. CANTWELL:  I get that.  Can you point me -- his

7   position is somehow -- what was his exact position?  I'm sorry.

8          MS. DUNN:  Are you addressing me, Mr. Cantwell?

9          MR. CANTWELL:  I'm sorry.

10          THE COURT:  Continue to address the Court.  What was

11   the medical --

12          MS. DUNN:  He works at a hospital where he says the

13   staffing is in crisis.  He's in the hospital admissions unit

14   which is in quarantine constantly.  So --

15          THE COURT:  I mean, that's -- I mean, if he comes in

16   here and tells me that and I believe him, I'm going to excuse

17   him because of the crisis we're having and the demand.

18          MR. SMITH:  That's fine, Your Honor.

19          MR. CANTWELL:  Then I guess that settles it.

20          MR. SMITH:  I don't have any objection, Your Honor.

21          THE COURT:  Then we'll excuse that juror.

22          MS. DUNN:  Your Honor, if I may have a moment just to

23   confer with my colleagues, make sure we didn't miss anything.

24          THE COURT:  You may.

25          MR. CAMPBELL:  Your Honor, this is Dave Campbell for

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    Defendant Fields.  What was the number of the last juror

2    excused?  I apologize.

3              THE COURT:  What was the number?

4              MR. CANTWELL:  386, Judge.

5              THE COURT:  386.

6              MR. CAMPBELL:  Thank you.  And I do have a couple to

7    bring up, Your Honor, whenever plaintiffs' counsel are done.

8              THE COURT:  All right.

9              MS. DUNN:  Your Honor, we'll be happy to pass.

10             THE COURT:  Go ahead.

11             MR. CAMPBELL:  Thank you, Your Honor.  Dave Campbell

12   for Mr. Fields.

13             Juror Number 303, in response to number 42 and 43,

14   thinks Unite the Right stirred up and instigated violence, but

15   more importantly, number 73, "daughter was a friend of Heather

16   Heyer and attended vigil on the Downtown Mall."

17             I would -- with Mr. Fields being a defendant in the

18   case, I would think that's cause, Judge.

19             MR. SMITH:  I agree, Judge.  That sounds like cause

20   to me.

21             THE COURT:  Any objection?

22             MS. DUNN:  Your Honor, given the standard that's been

23   applied, we would like to talk to this person.  Heather Heyer

24   is not a party.

25             THE COURT:  Well, the prospect is very dim of being

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  rehabilitated.

2          MS. DUNN:  Your Honor, we understand.

3          THE COURT:  Wait --

4          MR. SMITH:  Sorry.

5          THE COURT:  It's -- we're not -- I mean, I don't care

6  what you say or what he says, that's not going to determine.

7  The fact that you all think he's unfair, he thinks you're

8  unfair, so be it.  It doesn't make any difference.  When the

9  issue is presented to me, I'm not going to care which one of

10 you were fair.  I'm going to look at what the witness says and

11 decide it.

12         Now, intelligently, you all can look at this thing

13 and say am I likely to have -- be correct if I excuse this

14 juror?  I mean, I can understand that you think it would be

15 error for me to strike the juror, but don't bring somebody in

16 here just so we can be -- hear his prospective jurors say why

17 they're for them and yours can counter.

18         It just seems to me that anyone obvious is probably

19 going to be struck.  And I would think that would be a very

20 hard -- hard thing for this gentleman to be very sympathetic to

21 Mr. Fields.

22         MS. DUNN:  Your Honor, we understand.  We consent.

23         THE COURT:  Okay.  Do you object to 303 being

24 excused?

25         MS. DUNN:  No, we do not object.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  Okay.  303 is excused.

2          MR. CAMPBELL:  Thank you, Your Honor.  And thank you,

3   Counsel.

4          Your Honor, I would point to, Number 269 on the jury

5   questionnaire responded that:  "Yes, it would be difficult to

6   be fair to both sides.  Additionally, worried because of COVID

7   to be in a crowded room," and then wrote, "anybody involved is

8   guilty."  So for those reasons, would ask the Court to strike

9   269 for cause.

10          THE COURT:  Any objection?

11          MS. DUNN:  Your Honor, on this we do object because

12   we raised precisely the same objections and were passed over.

13   We would like to talk to this person.

14          MR. SMITH:  I don't have a problem with that, Your

15   Honor.

16          THE COURT:  All right.  Pass 269.

17          MR. CAMPBELL:  Your Honor, I would also raise Juror

18   Number 250.  In response to question 43 indicate they can't be

19   fair and find actions of these individuals heinous and perceive

20   them as guilty.  Then number 73, find them guilty.

21          I certainly understand plaintiffs' position as it

22   relates to some other defendants' position on their reasons,

23   but I would just ask the Court for Number 250 to remove for

24   cause.

25          THE COURT:  All right.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        MS. DUNN:  Your Honor, truly, we raised the same

2   objections and defendants objected.  So I do feel like we need

3   to be even-handed in this.

4        MR. SMITH:  No problem, Your Honor.  We have no

5   problem with that.

6        THE COURT:  Pass 250.

7        MR. CAMPBELL:  Last one, Judge.  Number 186.  I think

8   this is a little bit different because this person actually

9   hones directly in on the case in their responses.  In response

10  to number 43, indicates he holds deep regret and sorrow for

11  what Unite the Right did to his community.  He holds alt-right

12  organizers responsible for the death of Heather Heyer.

13  Further, he works with Seth Wispelwey's father, one of the

14  plaintiffs in this case, and has heard him lecture on the

15  effects of the incident on his son.  So, Judge, I think

16  Number 186 I would ask the Court to strike for cause.

17       MR. SMITH:  That sounds pretty -- that sounds pretty

18  substantial, Your Honor.  I definitely agree with that.

19       THE COURT:  Any objection to 186?

20       MS. DUNN:  Your Honor, same objection as before.

21  These are all --

22       MR. SMITH:  I don't know.  I'm not sure.  This one

23  is -- there is like -- this one is like he's really close to a

24  lot of this case.  I mean, come on.  He put on -- who is that?

25       THE COURT:  Excuse me.  I want to hear from

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   plaintiffs' counsel.

2          MS. DUNN:  Your Honor, I apologize.  Thank you to

3   Mr. Bloch.  We already discussed 186.  And Your Honor already

4   decided to pass him over because under the Fourth Circuit law

5   this does not meet the standard.  So we already -- we already

6   considered Juror 186.

7          MR. CAMPBELL:  My apologies, Judge.  That's the last

8   one I have.

9          THE COURT:  You object to striking 186, am I correct?

10         MS. DUNN:  Yes, Your Honor.

11         THE COURT:  All right.  Any others?  Anyone else?

12         MR. SMITH:  I just wanted to confirm, David, that was

13   186, the last one, one-eight-six?

14         MR. CAMPBELL:  It was.

15         MR. SMITH:  Thank you.

16         MR. CAMPBELL:  Sorry about that.

17         THE COURT:  All right.  Are there any -- does the

18   plaintiff have any motions that need to be heard this morning?

19         MS. DUNN:  Your Honor, there are outstanding motions.

20   I should probably confer with co-counsel to see which of the

21   motions need to be brought up affirmatively, if any, or whether

22   we should just flag these for the Court.  So with the Court's

23   indulgence, if I may have a moment to do that.

24         (Pause.)

25         THE COURT:  All right.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Your Honor, there are two motions that

2     we've brought affirmatively that if the Court would like to do

3     it today, we would be available and prepared to argue.

4          THE COURT:  All right.

5          MS. DUNN:  One is a motion that we brought seeking

6     modification of Judge Hoppe's order related to Defendant

7     Fields.  And Mr. Tolentino is here and can handle that motion.

8          The second motion is we brought a motion to preclude

9     witness Daryl Davis, who is being proposed as a witness related

10    to Mr. Schoep's deradicalization.  And Ms. Hiromi, who is on

11    the Zoom, is prepared to argue that.  So if the Court would

12    like to do either, we are prepared to do those.

13         THE COURT:  On the second motion, who for the

14    defendant is here to argue that?  Anyone?  Is there anyone for

15    the defendant on that latter motion regarding Mr. Davis?

16         MS. HIROMI:  Your Honor, Mr. ReBrook was on earlier,

17    but appears to have dropped off.

18         Mr. ReBrook, who proposed Mr. Davis, was on the Zoom

19    earlier, but he appears to have since dropped off.  I'm not

20    seeing him on the participants list at the moment.

21         THE COURT:  I'm sorry, are you counsel?

22         MS. HIROMI:  Yes.  This is Makiko Hiromi from Paul

23    Weiss for plaintiffs.

24         THE COURT:  All right.  We'll take up the first

25    motion first.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MS. DUNN:  Your Honor, Mr. Tolentino will be handling

2   the first motion.

3          MR. TOLENTINO:  Your Honor, is it okay if I stand at

4   this podium, Judge?

5          MR. CAMPBELL:  Your Honor, this is Dave Campbell.

6   I'm not certain I'm prepared to respond to this motion, but I

7   can try my best if the Court wants to go ahead.

8          THE COURT:  Well, I'd like to go ahead and get it on

9   the floor.  And you can tell me if you need more time to

10  respond.

11         MR. CAMPBELL:  Yes, Your Honor.  Thank you, Judge.

12         MR. TOLENTINO:  Your Honor, if I may proceed.  Ray

13  Tolentino on behalf of the plaintiffs.

14         We filed a motion to modify Judge Hoppe's order

15  granting in part our sanctions motion against Defendant James

16  Fields.  For the Court's reference, our motion is at ECF 1266

17  and the underlying order is ECF 1237.  Mr. Campbell hasn't

18  filed an opposition and we haven't received one from the other

19  side, just to sort of set the landscape.

20         We asked for two discrete modifications to Judge

21  Hoppe's order.  The first pertains to whether Mr. Fields can

22  testify at trial.  Judge Hoppe correctly determined that as a

23  result of Mr. Fields's refusal to testify at his duly noticed

24  deposition, that he should be prohibited from testifying in his

25  own defense.  He held in particular that the discovery

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  misconduct, quote, "had the practical effect of keeping

2  plaintiffs in the dark about what he knew, what he did, and

3  what he would testify if called to the stand."

4       But Judge Hoppe left it to Your Honor to decide

5  whether Mr. Fields should also be prohibited from testifying on

6  behalf of any other parties, including his co-defendants.

7       Respectfully, Your Honor, we think that there is no

8  question that Mr. Fields should be prohibited from testifying

9  on behalf of his co-defendants.  And as we explained in our

10 briefs, that's so for two reasons.

11      The first is that Judge Hoppe's reasoning applies

12 with equal force to the question that Your Honor has before

13 you, which is can he testify on behalf of his co-defendants?

14 The answer is unambiguously no because doing so would enable

15 him to avoid the sanctions order Judge Hoppe imposed, which is

16 when you don't testify at your deposition, you can't testify at

17 trial.

18      And the second reason is allowing him to testify, if

19 called by his co-defendants, would effectively be allowing him

20 to testify in his own defense.  So it would effectively render

21 nugatory the sanctions that Judge Hoppe imposed on him, and it

22 would just make no sense and be internally inconsistent if Your

23 Honor were to allow his co-defendants to call him to the stand.

24 And that's particularly true and particularly dangerous in a

25 conspiracy case where any testimony that could be elicited by

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   the co-defendants would redound to the benefit of Mr. Fields

2   himself.

3         So our position is a fairly modest one, which is to

4   extend Judge Hoppe's order and prohibition all the way to

5   prohibit him from testifying not only in his own defense, but

6   also if called by his co-defendants.

7         And if Your Honor would indulge us, if you agree with

8   us that he's not allowed to testify at trial, we would also

9   propose -- and we propose in our brief -- a jury instruction to

10  explain his absence, that the reason he's not testifying is

11  because he engaged in blatant discovery misconduct and repeated

12  refusals to sit for a deposition, and that's why he's not here.

13        So that's the first modification, Your Honor.  And

14  I'm happy to answer any questions about that before turning to

15  the second.

16        THE COURT:  What is the second?

17        MR. TOLENTINO:  So the second modification, Your

18  Honor, is that -- it has to do with Judge Hoppe's ruling on the

19  Fifth Amendment invocations and the adverse inferences that we

20  proposed with respect to those invocations.

21        So Judge Hoppe acknowledged in his order that

22  narrowly tailored adverse inference instructions were a proper

23  remedy for Mr. Fields's invocation of his Fifth Amendment right

24  against self-incrimination.  And so consistent with that

25  guidance, we have narrowed and proposed adverse inferences that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  are directly tethered to the requests for admissions that he

2  refused to answer.  And of the many, many RFAs that we had

3  proposed, we've actually pared it down to sort of four key RFAs

4  that we've explained and set forth on page 9 of our brief.  And

5  I'm happy to walk through those, but Your Honor has the

6  proposals before -- they're before you in our brief.

7          So just a couple of points to make with respect to

8  that, which is under the governing case law, that type of

9  modest proposal has routinely been accepted by courts.  Those

10 types of modifications have routinely been granted so long as

11 they're narrowly tailored and uniquely connected to the RFAs.

12 Which if you look at the text of our proposed adverse inference

13 instructions, they certainly are here.  And they're not

14 unfairly prejudicial in any respect or confusing or

15 inflammatory.

16         So for those reasons and those set forth in our

17 brief, Your Honor, we'd ask that you make -- Your Honor make

18 those two modifications to Judge Hoppe's order.  Happy to

19 answer the Court's questions.

20         THE COURT:  All right.  No questions.

21         What's your position, sir?

22         MR. CAMPBELL:  Thank you, your Honor.  Dave Campbell

23 for Mr. Fields.

24         I don't oppose the first part of the motion.  I agree

25 it would be internally inconsistent to permit Mr. Fields to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   testify if called by a co-defendant.  I don't think the

2   instruction is necessary to the jury to pile on.  The sanction

3   that Judge Hoppe granted is not testifying.  So I think that's

4   sufficient, but I don't oppose the Court indicating that that

5   stands for anyone.

6        The second one, Judge, I really would ask the Court

7   for some more time to respond.  I have not seen the four RFAs

8   and I'm concerned they may contradict the text of Judge

9   Hoppe's -- the rest of his order largely denied many of the

10  sanctions sought by counsel.  So I would ask the Court for some

11  more time to look at those RFAs, and I can provide the Court a

12  written response this afternoon.

13        THE COURT:  Okay.  Well, I'll give you time till --

14  Monday will be okay.  I won't be looking at it this afternoon.

15  But Mr. Fields, if he's called, won't be until the defendants'

16  case.  So we've got a few days before.  But I would say --

17        MR. SMITH:  Yes, sir, Your Honor.

18        THE COURT:  I would say that -- yes?

19        MR. SMITH:  My understanding is the plaintiffs were

20  planning on calling most or all of the defense witnesses

21  adversely during their case in chief.

22        MS. DUNN:  Your Honor?

23        THE COURT:  Yes.

24        MS. DUNN:  We don't intend to call Mr. Fields because

25  our position is that, because he was not deposed, he should not

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  testify.

2          THE COURT:  All right.

3          They don't plan to call Mr. Fields.

4          MR. SMITH:  Thanks, Your Honor.

5          THE COURT:  Okay.  Mr. Campbell, how about having

6  that brief to us by Sunday, okay?

7          MR. CAMPBELL:  Yes, sir.  No problem.  I anticipate

8  it will go out this afternoon, regardless of the Court's time.

9          THE COURT:  Fine.  Thank you.

10          With regard to the second motion, is the person who

11 is going to argue that back?  I didn't understand.

12          MS. DUNN:  Your Honor, the person who is going to

13 argue it is here, but the person who is needed to respond to

14 it, we believe --

15          THE COURT:  No, I meant for the defendant.  Is the

16 person who was going to respond to the Davis --

17          THE CLERK:  He's dropped off the Zoom call and we

18 were trying to get him back on, Your Honor.

19          MR. SMITH:  That's ReBrook, isn't it?  I can try to

20 call him.  I'll try to get him on the phone, Your Honor, and

21 see where he is.

22          THE COURT:  Has he filed an opposition to the motion?

23          MR. SMITH:  Yes, Your Honor, I think that he has.

24 He's calling back right now.  I just got on the phone with him.

25 He's calling in right now.  I don't think he realized that he

73

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   dropped off.

2          That sounds weird now that I say it, but -- well, I'm

3   not saying that he wasn't listening or anything.  He's calling

4   back in.  So that's good.

5          I don't know what the deal is.

6          ReBrook, you're on.

7          MR. ReBROOK:  Oh.  Thank you.  My phone died.  Now

8   I'm back on.

9          THE COURT:  Okay.  Plaintiff is going to argue the

10  motion, and you may respond after plaintiff completes their

11  argument.  All right?

12         MS. HIROMI:  Thank you, Your Honor.

13         Plaintiffs move to exclude the testimony of Mr. Davis

14  because he has no relevant or admissible evidence or testimony

15  that he can provide.

16         We note that plaintiffs could have moved to preclude

17  Mr. Davis earlier based purely on his late disclosure.

18  Mr. Davis was placed on Mr. Schoep's witness list on

19  September 22nd, which was more than two weeks after the witness

20  lists were due.  Counsel for Mr. Schoep has noted that the

21  disclosure was delayed because counsel only became a lawyer of

22  Mr. Davis a day before the supplemental -- or, excuse me,

23  amended disclosure was provided to us.

24         But whether the attorney knew of Mr. Davis is

25  irrelevant.  Mr. Schoep, the party in question, clearly knew of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   Mr. Davis for years.  He has worked very close with him for a

2   number of years.  And, in fact, Mr. Davis testified at his

3   deposition that Mr. Schoep approached him as early as

4   six months ago with respect to participating in the case in

5   some way.

6        This Court has previously found in *Scott v. Clarke*

7   that it would be unfair to require a party to divert time and

8   resources away from preparing for a trial to depose witnesses

9   even two months before trial.  And in this case, a disclosure

10  was made a mere month before trial; however, despite the lack

11  of time, plaintiffs went out of our way to accommodate

12  Mr. Schoep by attempting to depose Davis so that we could

13  potentially agree to his testifying.  However, once we deposed

14  Mr. Davis, it became clear to us that he had no admissible or

15  relevant evidence to provide.

16       To the extent that Mr. Schoep has argued that our

17  motion in limine to preclude Mr. Davis is late and therefore

18  should be denied, plaintiffs believe that we should not be

19  penalized for attempting to accommodate the defendant in this

20  case and allow his witness to testify.

21       As we noted, based on Mr. Davis's deposition, he has

22  no relevant testimony to offer in this matter.  Counsel for

23  Mr. Schoep has suggested that we are seeking to preclude his

24  testimony because we would like to exclude any testimony

25  suggesting that Mr. Schoep is a violent -- sorry, is not a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  violent white supremacist, but that is not our position.

2          Mr. Schoep is free to testify as to his own state of

3  mind during the time leading up to and during the events in

4  question; however, counsel for Mr. Schoep has acknowledged that

5  he does not intend to call Mr. Davis to speak about Unite the

6  Right in any capacity.  Instead, his testimony would be limited

7  to Mr. Schoep's state of mind.

8          The state of mind can be broken up into two time

9  periods.  One is 2016 and 2017, in the time period leading up

10  to and at Unite the Right, but Mr. Davis lacks any foundation

11  to testify as to Mr. Schoep's state of mind during this time

12  period.

13          Mr. Davis and Mr. Schoep interacted during one

14  meeting in 2016, where he met Mr. Schoep for a documentary film

15  that was being filmed and they spoke for approximately one

16  hour.  A one-hour conversation in 2016 is certainly not

17  sufficient foundation to testify as a lay witness for --

18          THE COURT:  Well, what -- he's testifying to his

19  state of mind after the incident.  I mean, I'd like to ask --

20  why don't we maybe short-circuit this and ask defense counsel:

21  Why is that relevant?

22          MR. ReBROOK:  Your Honor, I believe it's relevant

23  because plaintiffs have argued that Mr. Schoep's current world

24  view is merely a disguise, is a ruse that he is attempting to

25  play on the Court, whereas Mr. Davis will -- as a character

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    witness, will explain how Mr. Schoep has actually gone through

2    a tremendous personal transformation since this matter

3    occurred, which I think is relevant.

4            THE COURT:  Why?  Why is it relevant?  I don't see

5    the relevance of a change of heart after an incident.

6            MR. ReBROOK:  I think --

7            THE COURT:  It's not a defense.

8            MR. ReBROOK:  I'm sorry?

9            THE COURT:  It's not -- what is it a defense to?

10           MR. ReBROOK:  It's character testimony, Your Honor,

11   is what it is.  It's not -- it's not, per se, a defense to the

12   claim of a conspiracy to commit violence in Charlottesville.

13           THE COURT:  But I just don't -- I don't see why it's

14   relevant to this case.

15           MR. SMITH:  Edward --

16           MR. SPENCER:  Can I jump in here?

17           MR. ReBROOK:  Yes, please.

18           MR. SPENCER:  This is Mr. Spencer.  I strongly take

19   the side of the plaintiffs in this matter in terms of excluding

20   his testimony.  I have seen --

21           THE COURT:  Wait.  Wait.  There are two people -- I

22   cut the plaintiff off.  I just wanted to ask defense counsel

23   the relevance of it.  And I didn't see it.  I don't --

24           MR. SPENCER:  There is no relevance.  That's why he

25   can't answer you.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE COURT:  Okay.  But let plaintiff finish her

2   argument.

3          MR. ReBROOK:  Well, it will show my client's

4   propensity or lack thereof for violence.

5          THE COURT:  Well, not likely.  But let plaintiff

6   continue to argue the motion.  Then I'll allow you to come back

7   and respond.  I thought I could cut this off.

8          Plaintiffs' counsel, would you?

9          MS. HIROMI:  Thank you, Your Honor.

10          Plaintiffs would note that we do not intend to

11   discuss Mr. Schoep's change of heart after Unite the Right at

12   trial.  Our focus is on Mr. Schoep's state of mind and

13   character at the time of the planning of Unite the Right.

14          THE COURT:  Okay.  I think I understand your point

15   and your position.

16          MS. HIROMI:  Thank you, Your Honor.

17          THE COURT:  Would defendant like to say anything

18   else?

19          MR. ReBROOK:  I would, Your Honor.  If I'm to

20   understand the current lay of the land, plaintiffs argue that

21   they have an expert who is going to come in and testify to the

22   true meaning of the words and ideas expressed by the

23   defendants, and that is somehow relevant, as if it's not, you

24   know, voodoo.  But if I have a witness come in that supports --

25   that tries to humanize my client and show him as something a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    little more nuanced than a Nazi, then that is not relevant?  It

2    seems a little biased to me.  By "a little," I mean it seems

3    extremely biased to me.

4                    (Stenographer clarification.)

5                    THE COURT:  Repeat the last part of your statement.

6                    MR. ReBROOK:  The relevant evidence is inherently

7    prejudicial, but it is only unfair prejudice if it stands to

8    outweighing probative value, which permits exclusion of

9    relevant matter under Rule 403.  Why is it plaintiffs are

10   allowed to bring in a witch doctor to talk about the true

11   meaning of things that defendants may or may not have typed in

12   Discord or on Facebook, and that's somehow admissible

13   evidence -- I guess he's an expert in reading peoples' minds,

14   whereas here I was thinking that was God's gift alone -- and

15   then my expert, or my learned witness, who plans on testifying

16   to show that Mr. Schoep is a human being and not a swastika,

17   that's somehow not relevant?  It's only not relevant because it

18   doesn't work to the advantage of the plaintiffs.

19                   THE COURT:  Well --

20                   MS. HIROMI:  Your Honor, if I may?

21                   THE COURT:  Yes.

22                   MS. HIROMI:  In Mr. ReBrook's opposition to our

23   motion he specifically stated that he would not be calling

24   Mr. Davis as an expert.  An expert --

25                   MR. ReBROOK:  I'm not.

79

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1        THE COURT:  Okay.

2        MS. HIROMI:  But he's just noted that he would like

3   to produce him as a witness to testify in opposition to our

4   expert and that his testimony would be based on his long

5   experience and expertise.

6        THE COURT:  Okay.  Mr. ReBrook, the difference is

7   that the experts that the Court has allowed to testify were

8   properly allowed to -- being allowed under the rules of

9   evidence.  The rules of evidence your client -- your witness is

10  not an expert and is testifying about an irrelevant matter.

11  The fact that someone has changed their character after the

12  event in question is not relevant.  And so I'm granting the

13  motion that Mr. Davis may not testify.

14        Anything else on -- they are all the plaintiffs'

15  motions, I believe, right, that you were asking for today?

16        All right.  Do the defendants have any motions they

17  wish to bring up?

18        MR. SMITH:  Yes, Your Honor.  So there was -- I guess

19  the first -- okay.  So here's one that I wanted to go on record

20  about, Your Honor.

21        Mr. Cantwell -- this is the easy one to start things

22  off, I guess.  Mr. Cantwell put in a motion in limine to

23  preclude references or any kind of mention of what -- I think

24  the motion was styled, what is in popular culture referred to

25  as "the Holocaust."  I think he said "the supposed Holocaust"

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   or something.

2          You know, I'm not going to join his motion or, you

3   know, file one of my own in this regard.  And it's because

4   there is this -- this is this rather ugly, you know, sort of --

5   there's this stereotype, Jewish stereotype, that, basically,

6   it's like they can't go an hour without talking about the

7   Holocaust.  I don't want to perpetuate a stereotype like that.

8          So I'm going to give plaintiffs' counsel the benefit

9   of the doubt that they won't mention that word or reference it

10  in any way because it's so utterly irrelevant to the

11  proceedings and infinitely prejudicial and that they would just

12  sort of know better.  So I'm not going to file my own motion in

13  that regard or join Mr. Cantwell's, but I do -- I would want to

14  make clear that if they even mention a syllable of it, I'm

15  going to object vehemently.

16          MR. ReBROOK:  This is Edward ReBrook.  I must agree.

17          MS. KAPLAN:  Your Honor, I think you may have already

18  denied this motion.

19          This is Roberta Kaplan for plaintiffs.

20          References to the Holocaust in this case are going to

21  come in primarily through the words of the defendants

22  themselves who repeatedly, multiple times, in their messages,

23  in their messages, in videos, talked about burning the kikes,

24  putting the kikes in the oven, and gassing the kikes, all of

25  which, Your Honor, you obviously know, are references to the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

 1  Holocaust.  So there's no way to exclude that from the case.

 2          And it's already part of Deborah Lipstadt's report,

 3  which Your Honor -- which they actually withdrew their

 4  objection to and will be part of the expert testimony in this

 5  case, to explain to the jury what those phrases mean.

 6          THE COURT:  All right.  I --

 7          MR. SMITH:  Your Honor --

 8          THE COURT:  Yes.

 9          MR. SMITH:  Sorry, Your Honor.  You were already

10  starting to say something.

11          MR. CANTWELL:  If I may, I have not withdrawn my

12  objection to any of this.  And that's all I wanted to add to

13  that point.

14          THE COURT:  Okay.

15          MR. SMITH:  You know, if you want to introduce

16  statements that the defendants made that have that word in it,

17  okay, but --

18          THE COURT:  Well, no, you can't exclude -- these are

19  things that might come up in trial, and objections can be made

20  at trial, but I think I've ruled on these matters.

21          MR. SMITH:  I'm not sure, Your Honor.  There were so

22  many -- Mr. Cantwell filed a lot of motions, and some of them

23  the Court got to and I think some of them it hadn't yet.

24          I didn't see that the Court had gotten to this one in

25  particular, so it might actually be.  I just wanted to sort of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  put that out there on the record that I would find that, you

2  know, the use of that, other than when we're talking about

3  statements by the defendants themselves, I would find it

4  objectionable, and I plan to object at trial.

5        THE COURT:  Well, certainly if they're statements by

6  the defendants, they would not be excluded.

7        MR. SMITH:  I'm concerned.  I would like the

8  proceedings not to be turned into some sort of, you know --

9        THE COURT:  All right.  I understand.  The motion was

10  denied.  And this was no blanket ruling that it --

11        MR. SMITH:  Thank you, Your Honor.

12        THE COURT:  -- could not be mentioned.

13        MR. SMITH:  I appreciate it.  Thank you.

14        THE COURT:  Okay.

15        MR. SMITH:  That was one thing.  The other -- I also

16  wanted to ask the Court, will there be -- will there be a

17  conference room for defense counsel and *pro se* defendants,

18  perhaps, to caucus in the mornings before proceedings start, so

19  that, for example, we don't have to speak about sort of joint

20  defense matters, if you will, right in front of plaintiffs'

21  counsel?  Is that something that the Court is able to make

22  available?

23        THE COURT:  There will be -- you'll have a place on

24  the third floor to conference.  And when you take breaks --

25        MR. SMITH:  That's great.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1      THE COURT:  -- there will be a place for the

2  defendants to go, separate from -- as will the plaintiffs have

3  a place to go.

4      MR. SMITH:  Of course.  That's perfect.  Thank you,

5  Your Honor.

6      The other -- the only other motion that I have --

7  this one is actually a motion.  The Court -- I asked the Court

8  if it would be willing to reconsider its ruling on the Heaphy

9  report in light of the Rule 807 residual exception, which was

10  not argued by any other defense counsel, apparently.

11      The plaintiffs did brief it, but it just wasn't

12  argued by anyone else.  And this is an extremely important

13  piece of evidence, Your Honor.  It's really a key piece of

14  evidence.  Really, it's an extraordinary document, made under

15  extraordinary circumstances, and it possesses extraordinary

16  indicia of reliability.

17      And the Court should absolutely consider the Rule 807

18  residual exception because, as far as the potential exceptions

19  this could be admitted under, I think 807 is the most fitting

20  here.  I didn't think that the public records exception was

21  quite on point, but 807, it definitely fits, and for a lot of

22  reasons that I'd like to explain to the Court.

23      THE COURT:  Well, I mean, I ruled that the report is

24  not admissible.  And I'm prepared -- I'll allow you to say

25  something, but I'm prepared to rule -- to actually file a short

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   order regarding --

2          MR. SMITH:  I understand, Your Honor.  I understand,

3   Your Honor, but there are statements by one of the plaintiffs

4   in this report which are admissions by a party opponent.  For

5   example, those might be worthy of the Court's consideration for

6   admission.  They're very damaging statements to that plaintiff.

7          Also, there are -- we're not looking to get the

8   conclusions of the report admitted into evidence, but rather

9   just the factual matters in the report.  And I'm not

10  necessarily interested in seeking admission of any hearsay

11  beyond -- you know, any hearsay beyond what somebody told

12  Heaphy.  So in other words, if somebody is saying -- you know,

13  if somebody else is -- or, I'm sorry, if Heaphy -- if we're

14  talking about what -- what somebody else told Heaphy that

15  somebody said, so if it's just somebody telling Heaphy

16  something, I'm -- you know, the reason why I think that the

17  Court should admit that kind of thing here is because Timothy

18  Heaphy -- I mean, the circumstances surrounding this report,

19  contrary to what the plaintiffs would have you believe, are --

20  it's just -- it's an extraordinarily credible document.

21         The City of Charlottesville paid Mr. Heaphy's firm a

22  good amount of money, $250,000 or something, in order to do a

23  truly independent report.  And they said, "You have" -- "You

24  will have unfettered discretion here.  You'll have unfettered

25  access to everything.  You will have full, 100 percent

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   cooperation."  And in the report it's verified that, yes,

2   that's exactly what happened.  They had 100 percent

3   cooperation.  They had unfettered access.  And there's this

4   212-page report that came out.  And of course the report itself

5   is a model of -- for any independent investigation.  It's an

6   excellent report.  It's just extremely well-done.

7            And, you know, Your Honor, Mr. Heaphy was formerly a

8   United States attorney for this district --

9            THE COURT:  I know.  I know all about him.  He was --

10   but --

11           MR. SMITH:  Yeah --

12           THE COURT:  But that doesn't alter the -- no matter

13   how distinguished he might be, that doesn't alter the

14   admissibility of the report as evidence.

15           MR. SMITH:  Well, but plaintiffs are not -- I

16   understand, but plaintiffs are not trying to -- really, the

17   question about the residual exception turns on credibility,

18   Your Honor.  It turns on trustworthiness and the extraordinary

19   nature of the trustworthiness of the evidence that's sought to

20   be admitted.

21           And here we have somebody who is a United States

22   attorney and is currently the chief investigative counsel for

23   the January 6th Commission on -- I don't know exactly what the

24   full name of it is.  But, you know, this is after he released a

25   report that the media really didn't like that much because it

                     8.6

            Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  didn't blame -- it didn't sort of blame the Nazis enough.  And

2  so -- you know, it didn't --

3          THE COURT:  But that's not why it's not admissible.

4  I mean, I really -- we considered this.  And I would agree

5  with -- I could agree that it would be maybe good for the

6  report to be admissible, but it's not.  I mean, and there's

7  nothing I can change.

8          MR. SMITH:  But, Your Honor, there is something

9  you --

10          THE COURT:  That's the decision I've reached, and

11  I -- sir?

12          MR. SMITH:  There is something you can do, Your

13  Honor.  The residual exception wasn't considered by the Court.

14          THE COURT:  Well, I have considered it since you

15  brought it up, and I'm prepared to file a supplemental order

16  which I think will cover it.

17          MR. SMITH:  Perhaps I could make an argument first,

18  before --

19          THE COURT:  Well, I thought you were making the

20  argument, but...

21          MR. SMITH:  Well, I was.  You know, I still had more

22  to say about it.

23          So -- and this is -- so, of course, Mr. Heaphy was

24  hired for this position, which was Democratically appointed,

25  after he put out a report that, you know, was not -- was

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1    critical of lots of people, but not the rally held.  And they

2    still wanted to hire him to be the chief investigative counsel

3    for this January 6 Commission, a Democratically-appointed

4    commission.

5            I think that tells you that what people think, what

6    people seem to believe about him, is that when it comes to this

7    sort of political -- these sort of political violence-type

8    events, right, that he's the guy that gets --

9            THE COURT:  Well, that doesn't change the rules of

10   evidence.  I mean, the rules tend to be objective.  There's no

11   Heaphy exception.

12           MR. SMITH:  But there is a residual exception.  And

13   this is the only independent report of these events in

14   existence ever.  Ever.  And the thing is --

15           THE COURT:  You can call the witnesses.  People that

16   talked to Mr. Heaphy, you can call.

17           MR. SMITH:  No, Your Honor.  A lot of these people

18   only talked to Mr. Heaphy because they were allowed to by

19   their --

20           THE COURT:  Well, you don't know.  You could depose

21   them and --

22           MR. SMITH:  Well, there's not really any time to do

23   that, Your Honor.  Mr. Heaphy's firm took a lot of time to do

24   that report.

25           See, the thing about the Heaphy report, Your Honor,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   is it's the great leveler.  The reason plaintiffs want to keep

2   it out so bad is because it represents the investigation that

3   the defendants might have been able to do if they had

4   $20 million to spend on the case.  Now, Mr. Heaphy did it for

5   about $250,000.  I'd say that's quite a deal.

6          But it really is what makes -- it's the document that

7   will make this case fair.  To pretend that it doesn't exist is

8   to do a huge disservice to the jury.  This is an exceptional

9   report in exceptional circumstances, and the credibility has

10  never been questioned except by the plaintiffs now.

11         Even when the media sort of buried it because they

12  didn't really like what it said, nobody ever said that Heaphy

13  report isn't true.  Nobody.

14         THE COURT:  Well, okay, but do you have any case

15  law -- any case law that would back you up on this particular

16  point?

17         MR. SMITH:  Your Honor, I'll do a search for

18  something that comes close to this.  But the thing is, this is

19  ultimately -- it meets the standards that the Courts have set

20  out for when the residual exception is appropriate.  It's

21  really just -- this is truly left to the Court's discretion in

22  a lot of ways.

23         The thing is, Your Honor, that -- the thing about

24  is -- sorry, my voice was going a little bit.

25         The thing about it, Your Honor, is that, you know,

89

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  we're not seeking to get the whole report admitted.  We're not

2  seeking to admit -- get the conclusions of the report admitted,

3  just the facts which Mr. Heaphy was able to get at, which the

4  defendants would never have been able to get at, including

5  through compulsory process.

6        The only reason Mr. Heaphy was able to get these

7  kinds of statements is because the City of Charlottesville

8  promised 100 percent full cooperation and unfettered access,

9  which defendants would never have had.  That's why it's

10  evidence that couldn't really reasonably be obtained through

11  other means.  And it's the best evidence that the defendants

12  could have obtained of a lot of things.

13        You know, the sheer number of people who would have

14  to be interviewed to get a lot of these facts, or to be

15  deposed, is just off the charts.  We'd have to have, well,

16  plaintiffs' team of lawyers in order to do something like that.

17        THE COURT:  Well, I don't want to cut you off, but I

18  don't want to --

19        MR. SMITH:  Your Honor, it's so probative.  It's such

20  a probative piece of evidence.  There has to be -- I mean, if

21  the residual exception doesn't apply here, then where would it

22  apply?  The fact that there probably aren't any cases about any

23  residual exceptions --

24        THE COURT:  I don't want to cut you off, but I don't

25  want to be patronizing.  I have ruled that it's inadmissible.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  And if you have law that could change my mind, that would be

2  okay.  But just the idea that this is the greatest one that was

3  ever done is not --

4           MR. SMITH:  I'm not saying that, Your Honor.

5           THE COURT:  It's not really admissible unless it's

6  otherwise admissible under the rule.

7           MR. SMITH:  I understand, Your Honor.

8           THE COURT:  And in the opinion, it's my recollection

9  we set forth that there were discrete facts that you wish to

10  take out of the report, but you had to file those with the

11  Court and justify why they were admissible.  Not --

12          MR. SMITH:  I think the Court --

13          THE COURT:  -- just the fact that they were not in

14  the report is not -- they're not admissible.

15          MR. SMITH:  I think the Court was referring to the

16  state of mind aspect.

17          THE COURT:  No.  I was referring to a previous

18  decision.

19          I will file, as I said, a supplemental order

20  regarding the report.  But you'll just have to take exception

21  to the ruling or object to the ruling.

22          MR. SMITH:  Of course, Your Honor.

23          THE COURT:  But that's the ruling.

24          MR. SMITH:  Your Honor, if there are admissions by a

25  party opponent in there, is that going to be sufficient for the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  Court to admit them if they're -- for example, Plaintiff Seth

2  Wispelwey is quoted in the Heaphy report several times.

3          THE COURT:  Mr. Smith, I'm not going to rule about,

4  if so-and-so said so-and-so, will we -- I mean, you're not even

5  suggesting to me what it is.

6          MR. SMITH:  I can point to -- I'm happy to point the

7  Court specifically to it if it would like.  I'm just going to

8  pull it up and do a quick search for Wispelwey.  It comes up

9  several times.

10          THE COURT:  All right.  Moving on --

11          MR. TOLENTINO:  Your Honor, can I put one thing on

12  the record to make something clear?  We don't think Mr. Smith

13  should be able to submit anything else on this issue.  And with

14  respect, he had an opportunity to file a motion for

15  reconsideration.  The reconsideration standard is exceptionally

16  high.  He also, by dint of your order, had an opportunity to

17  identify specific aspects of the Heaphy report that he thought

18  were admissible.  He missed that deadline.

19          So I think it's unfair to let this go on any longer,

20  Your Honor.  I think you should issue your opinion, which is

21  absolutely correct.

22          THE COURT:  Well, I was going on till you interrupted

23  me.

24          MR. TOLENTINO:  Sorry, Your Honor.  I just wanted to

25  be clear because Mr. Smith --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. SMITH:  Is plaintiffs' counsel serious?  I've

2    been on this case for six weeks, Your Honor.  I've had to catch

3    up with four years of litigation.  I don't like plaintiffs'

4    counsel's attitude or --

5          THE COURT:  Okay.  Thank you.

6          MR. TOLENTINO:  Yes, Your Honor.  I'll sit down.

7          THE COURT:  We're moving on.  We could go to lunch

8    now.  I do have some other issues.  Do you all have any other

9    issues you want to bring up?

10         MS. DUNN:  We have a couple very brief issues.

11         THE COURT:  All right.  I don't know -- this, what

12   I've got, is going to take probably about 15, 20 minutes.

13         MS. DUNN:  I think what we have would take that or

14   less.

15         THE COURT:  Do you all prefer to go on and then

16   adjourn and not come back after lunch?  Everybody can do that?

17         MR. SMITH:  Yes, Your Honor.  We'd prefer it.

18         MR. SPENCER:  I'd prefer to push through.

19         Your Honor, I have one small issue I would like to

20   raise.  And I will keep that to be very brief.

21         THE COURT:  Yes, sir.

22         MR. SPENCER:  Would you like me to go on this now?

23         THE COURT:  Okay.  Well --

24         MR. SPENCER:  I can.

25         THE COURT:  Go ahead if you can.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. SPENCER:  This is an issue that regards the

2     exhibit list.  And I can file a limine motion.  I've been

3     avoiding doing that because the plaintiffs, when I've spoken to

4     them privately, they've given me -- I appreciate the fact that

5     they don't plan on raising these issues, but they have not

6     really given me a hard guarantee.  And so I would prefer not to

7     waste the Court's time by issuing additional motions.  But if

8     they could simply give me a guarantee or we could handle this

9     matter now.

10          The issue involves an exhibit list which, you know,

11     huge exhibit list by the plaintiffs, and it includes some

12     messages between myself and my then wife that were published in

13     I believe the *Huffington Post*.  These were published at a time

14     in which we were going through a divorce.  The messages are

15     very unpleasant.

16          Hold on one moment.

17          THE COURT:  Do you all agree not to --

18          MR. BLOCH:  Yes, Judge.

19          THE COURT:  Plaintiffs agree not to bring that up.

20          MR. SPENCER:  Excellent.  I have nothing more to say

21     then.  Thank you.

22          MR. SMITH:  Your Honor, about the exhibit list, the

23     other day, on Monday, I had asked about receiving a copy of the

24     exhibits on plaintiffs' -- let's see -- 3,791-exhibit exhibit

25     list.  And I was told by Michael Bloch at the time and he said

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   we could go offline and take care of that.  It's been four days

2   and I haven't received anything yet except for one exhibit and

3   a video, which I'm not even sure what that one is.  So I've

4   received one of 3,791.

5        I feel like it's three days before trial now.  I'd

6   like to see the exhibits the plaintiffs plan to present.

7        THE COURT:  Let -- Mr. Bloch is going to respond.

8        MR. BLOCH:  Judge, this is Michael Bloch.  We did

9   agree as a matter of courtesy that we would give Mr. Smith our

10  actual exhibits.  The last correspondence I recall on this is I

11  emailed Mr. Smith asking him the format in which he would like

12  the exhibits.  I don't believe we've heard back.  We are ready

13  to send those immediately.  Happy to discuss this further with

14  Mr. Smith offline.

15       MR. SMITH:  Thank you, Michael.

16       THE COURT:  Does that take care of that?

17       MR. SMITH:  Yes, Your Honor.  Thank you.

18       THE COURT:  All right.  You may.

19       MS. DUNN:  Your Honor, we had earlier this week at

20  one of the court conferences, the Court had suggested he would

21  give the parties the draft preliminary instructions or the

22  Court's preliminary instructions.  Do you plan to do that today

23  or how would you like to handle it, Your Honor?

24       THE COURT:  From me to you, you're talking about?

25  The preliminary instructions to the jury after we've selected

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  the jury?

2         MS. DUNN:  Correct.

3         THE COURT:  Okay.  I'll get those to you before --

4  before Wednesday.

5         MS. DUNN:  Thank you, Your Honor.  There are

6  instructions that, if Your Honor is open to this, Mr. Sanchez

7  is prepared to address the Court, that we are hoping will be

8  given to the jury.  We can also address this at a later date

9  because obviously you won't be instructing the jury on Monday.

10         THE COURT:  This is the worst acoustics in the

11  country.  I bought hearing aids just for this court.

12         MS. DUNN:  Your Honor, I join you in difficulty

13  hearing.  So I'm very sympathetic.  I'll try to be louder.

14         We would like to present argument or some advocacy to

15  the Court about certain instructions that we are hoping will be

16  given preliminarily to the jury because of the complexity of

17  this case.

18         And so my question at this point is:  Would Your

19  Honor like to hear that today or should we put that over to a

20  different time?

21         THE COURT:  Well, can you just send me a general

22  list?  You sent me a packet of instructions.  Are the

23  instructions included in that packet?

24         MS. DUNN:  Yes, Your Honor.  And if it would help the

25  Court, we can send a list of instructions that we think are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   particularly important.

2           THE COURT:  The ones you particularly want.  I'm not

3   inclined to read 60 or so pages to the jury preliminarily.

4           MS. DUNN:  Understood, Your Honor.  We will submit

5   that to the Court.  Additionally, we had a procedural question,

6   which is:  Does Your Honor plan, once jury selection is

7   concluded, to roll right into opening statements, or if, for

8   example, we conclude jury selection at, you know, late in the

9   day, will Your Honor start the next morning?

10          THE COURT:  Well, once we -- we don't anticipate all

11  the jurors will be in the courthouse when we complete it.  So

12  it will of necessity take some time to get the jury here,

13  probably.  I hate to confine myself to something like we come

14  in at 9 o'clock or 9:30 and get the last juror, I'd like to

15  maybe start in the afternoon, but I would say most likely we

16  would end up starting in the morning.

17          MS. DUNN:  Thank you, Your Honor.  That's very

18  helpful.  Let me just consult with my colleagues to make sure

19  there's nothing else that we need to bring up at this time.

20          Your Honor, Mr. Bloch would like to close the loop

21  with the Court on the delivery to Mr. Cantwell of the

22  documents.  If he could do that, we'd appreciate it.

23          THE COURT:  All right.

24          MR. BLOCH:  Thank you, Judge.  Judge, you have issued

25  two orders to plaintiffs to provide certain documents to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  Mr. Cantwell.  One concerned the actual exhibits that are on

2  our exhibit list.  We have delivered that today to Mr. Cantwell

3  in a thumb drive.

4       Secondly, yesterday you told us to meet and confer

5  with Mr. Cantwell regarding which documents he would like from

6  the docket sheet to be provided.  Mr. Cantwell and I spoke a

7  number of times yesterday.  By the time -- the last time we

8  spoke, he had still not received the docket sheet.  What we

9  have done today is we have given Mr. Cantwell a box that

10 includes the transcripts of all the depositions that we have

11 designated for testimony at trial.  It includes a docket sheet

12 so that Mr. Cantwell can go through and choose if there are

13 additional documents that he would like.  We've provided the

14 responses to the motions that Mr. Cantwell filed.  And we're

15 ready to, when appropriate, to meet with Mr. Cantwell and

16 discuss if there's anything else from the docket sheet that he

17 would like to be provided.

18      One last thing:  We had discussed and I believe

19 agreed to a set of stipulations that we have with us today.

20 And at some point I would like to ask if Mr. Cantwell would

21 sign the stipulation.  But those are the three issues.

22      MR. CANTWELL:  So I was actually going to ask about

23 this.  I received this document yesterday, the joint

24 evidentiary stipulations, and I am certainly not prepared to

25 agree to them.  Mr. Bloch and I spoke about something called

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  Impact Software that the plaintiffs had hired somebody to

2  develop so that the Discord data could be human readable in a

3  courtroom.

4          The use of that software I've said I'm happy to

5  stipulate to, having seen it at the deposition of Mr. Daly.  I

6  have not seen the Discord data yet.  I have not seen the

7  Facebook data.  I have not seen these documents which are

8  produced pursuant to a government agency.  And a lot of this

9  stuff here I haven't seen is the moral of the story.  And I'm

10 not in a position to stipulate to the authenticity, much less

11 the admissibility, of something I have not yet seen.

12         I'm not going to trouble the Court with too much

13 today because it's all on the record.  I've had tremendous

14 trouble preparing.  I've been obstructed by the United States

15 government.  I would like to add to the record today I've

16 written a sworn declaration about the state of those

17 preparation attempts, running up till this morning.

18         And Mr. Bloch, to his credit, him and I have been

19 able to speak amicably about these things.  He definitely tried

20 to get me the docket yesterday.  The fax machine received his

21 fax but the jail staff wouldn't deliver it to me.  I'm getting

22 the docket today, which is helpful to do.  I've also received

23 the plaintiffs' third amended trial exhibit list today.  This

24 is the first exhibits list I've received from anybody in this

25 case.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          And so I sort of still have a lot to catch up on with

2    trial approaching Monday.  And so I'm not in a position to

3    stipulate to the stipulations that were handed to me last

4    night.

5          THE COURT:  All right.  Do you have any estimate of

6    when you might be able to --

7          MR. CANTWELL:  Judge, I'd move to extend everything

8    by 12 months.  I think we know I'm not going to get a positive

9    answer to that today, but my trial preparations were delayed by

10   14 months by being kept in the dark by plaintiffs' counsel.

11   And then immediately after they provided me with a 2 terabyte

12   encrypted hard drive in jail.  Less than three weeks later, it

13   was taken from me by the U.S. marshals.  I got that drive back

14   September 15th, and on October 4th I was separated from that

15   drive again.

16         So I have no idea what's going on here.  I don't know

17   what this pile of documents next to me is.  I know I saw -- one

18   of the things the plaintiffs gave to me yesterday were their

19   deposition designations.  And so there's some number of

20   depositions there that they want from this moment to this

21   moment in.  I don't have the context that they're cutting out.

22   I believe that what they have -- if I understand correctly what

23   Mr. Bloch told me yesterday he would provide me today was the

24   portions that he wants to admit, but not the portions that he

25   does not want to admit.  So I have no idea -- I'm sorry, I'm

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  wrong?

2          MR. BLOCH:  That's not correct.  We've given you full

3  transcripts of --

4          MR. CANTWELL:  These are the full depositions?

5          MR. BLOCH:  Correct.

6          MR. CANTWELL:  I stand corrected.  But at that, the

7  idea that I would be able to read all of these things and

8  understand them prior to Monday seems pretty -- a pretty

9  extreme challenge to me.

10          I don't even -- at the Central Virginia Regional Jail

11  the plaintiffs yesterday sent me a USB drive of some sort.  The

12  jail staff put that in my property, a separate container for

13  valuables, is my understanding.  It's my only valuable there.

14  And I have written to the captain requesting computer access so

15  that I can review digital evidence in this case.  I have not

16  heard back from the captain yet.  I don't know when I will or

17  what his answer will be.

18          The hard drive that the plaintiffs gave me on April

19  6th, 2021 that was supposed to catch me up on the 14 months I

20  had been previously left in the dark, that to the best of my

21  knowledge is at the United States Penitentiary in Marion,

22  Illinois.  When I was told to pack up, they told me to hurry

23  up.  They told me I had to rush.  And I asked about getting my

24  legal documents and the hard drive sent to me down here.  They

25  said that I had to leave -- write a request to intelligence

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   research specialist Kathy Hill.  I did submit that request

2   electronically as of this morning.  Nobody has delivered those

3   documents to me.  Nobody has delivered the hard drive to me.

4   I'm completely in the dark.

5          THE COURT:  Okay.  Have the other defendants

6   stipulated to these documents?  You might talk to the lawyers.

7   I mean, the authenticity of the documents, I'm sure the lawyers

8   for the other defendants could fill you in on without you --

9          MR. CANTWELL:  I mean, I understand the reasoning

10  behind what you're saying.  The situation that I'm met with

11  here is that I don't know the other attorneys in this matter,

12  save for Mr. Kolenich, who I departed ways with in 2019, right?

13  And so I'm not -- I have no reason to put any faith in the

14  contents of the Discord material, for example, which was leaked

15  onto the Internet, which I believe -- my personal belief is --

16  I can't prove it in this courtroom -- is that it had to have

17  been a Discord employee who did that.

18          So for all I know, the Discord material could produce

19  a chat between me and Richard Spencer that says things that we

20  didn't say.  And since I have no -- I have no way of looking at

21  this, right --

22          THE COURT:  If hypothetically Mr. Spencer should have

23  agreed to it, would you have any reason --

24          MR. CANTWELL:  Mr. Spencer is not my friend.  I don't

25  know these people.  That's part of my defense.  And so what I'm

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   met with here is a bunch of people I don't know stipulating to

2   the authenticity of things I haven't seen.

3          THE COURT:  Okay.  Well, you've answered my question.

4   Anything else?

5          MS. DUNN:  No, Your Honor.  Thank you.

6          THE COURT:  I mean, you all will continue to confer

7   and reach any agreement you can.

8          Anything else?

9          MR. SPENCER:  I would simply -- this might help

10  Mr. Cantwell in his current state.  I did not participate at

11  all in that Discord, and that is represented in the Discord

12  that was leaked to Unicorn Riot, and which has also been given

13  to the plaintiffs by Discord itself.  So at least in that one

14  case, in terms of my total nonparticipation in the

15  Charlottesville Discord, it actually does seem to me to be

16  accurate.

17         So I would offer that.  Maybe that will help clear

18  your mind a little bit just in a limited way, perhaps.

19         MR. CANTWELL:  I'm certainly glad to know that no

20  false representation of conversations between me and Defendant

21  Spencer will be produced.  It seems to me that I have

22  procedural rights that are being trampled on, is my concern

23  here.  That I'm being asked -- over and over again I say I

24  haven't been able to see this material, and people keep saying

25  are you ready to stipulate to it yet?  And this is making --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   it's making my antennas itch.

2          MR. SMITH:  Your Honor, as much as I really want this

3   trial to happen on Monday, Cantwell, he's making some

4   reasonable points.  I can't imagine that this trial could

5   possibly be rescheduled at all.  I just can't -- it just can't

6   happen.  But he's making some totally valid points.

7          MR. SPENCER:  I agree with that.

8          MR. CANTWELL:  It's completely beyond my control.  My

9   understanding --

10          THE COURT:  Okay.  I understand that.

11          Anything else, Mr. Bloch?

12          MS. DUNN:  No, Your Honor.

13          THE COURT:  Go back on the jurors.  There were a

14   number of jurors who requested before, when they got the

15   questionnaire, they requested that they be excused.  One of

16   those -- and I excused them.  And I told you the other day

17   about the groups of people I had excused, doctors and people

18   with -- that I thought had valid reasons.

19          One was Juror Number 310, whose questionnaire was

20   discussed here today.  And I think, because there was an

21   objection, I left it in.  But that was before I realized it was

22   a juror that I had already excused.  I stand by the ruling that

23   I have excused him, and so that juror will not appear.

24          MS. DUNN:  310, Your Honor?

25          THE COURT:  310.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          MR. SMITH:  That's fine, Your Honor.  We have no

2   objection to that.

3          THE COURT:  I don't recall anything about his

4   partiality toward one side or the other.  It may appear, but

5   that was not the reason for the excuse -- he was excused.

6          Okay.  Just let me say a few things and I will move

7   on.  During the voir dire days, Monday and Tuesday, we

8   anticipate four panels each day.  Potentially we expect 25 on

9   each panel of prospective jurors.  The Court will conduct

10   questioning of prospective jurors.

11          Afterwards, the parties may submit suggested

12   follow-up questions to the Court.  It would make sense that

13   they send them on paper rather than -- we've got to avoid

14   sidebars as much as possible.  But try to limit that.  But I

15   will entertain those -- any follow-up questions.

16          We will then discuss potential for-cause strikes

17   outside of the presence of the jury, then call the jury back

18   when we take peremptory strikes.  Prospective jurors will have

19   random numbers.  Each side gets six peremptory strikes, six for

20   the defendants to be collectively used, not individually.

21          When we start trying the case -- I mean, court will

22   start at 9:30 Monday because the jurors come in at 8:30, report

23   in.  But we'll start at 9:30 Monday and Tuesday.  Now, when we

24   start the trial, we'll start at 9 o'clock.

25          Now, regarding the witnesses, can -- first of all,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   can the plaintiffs -- the marshals would like to know who your

2   witnesses are so they can be identified when they come in.  Can

3   you give them a list?

4              MS. DUNN:  Of course, Your Honor.

5              THE COURT:  All right.  If anybody is appearing by

6   Zoom, any party or lawyer, and you have need to object, you

7   will have to flag the clerk, Ms. Moody, who will alert the

8   Court to the potential objection.

9              Also, Veterans Day comes up on November the 12th, I

10  think it's Thursday, November the 12th.  And we would take that

11  holiday.

12             Heidi, would you like to explain how you will conduct

13  the peremptory challenges?

14             First we will decide on the strikes for cause.  And

15  then we'll go into the peremptory challenges at that time.

16  I'll let Ms. Wheeler tell you.

17             THE CLERK:  You will get what traditionally would

18  have been counsel's list, which would have been the alpha list,

19  which in this case will be a numeric list, which will just have

20  their numbers on it, the pool sequence numbers, which is how

21  we'll have them seated in the courtroom.  So you'll have that

22  number when we come in while you're getting a chance to hear

23  the judge do voir dire, and you'll see where they are as they

24  respond, and we can take notes as we normally would.

25             Then when we go to your time to do your peremptory

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   challenges, we'll also have what we will have marked as the

2   random list.  And that will have on the left-hand column

3   numbers 1 through however many are in the courtroom.  And

4   beside that will be their full sequence number, their name, as

5   you will -- that's what we refer to it as we've been doing it.

6   Their name is that number.  And I will look at you and we'll

7   start with plaintiff and go to the defendant.  And what we will

8   do is I will simply say, plaintiffs, Juror Number 1, pass or

9   challenge?  And you say -- take as long as you want and decide.

10  Tell me.

11         If you say pass, I'll go to defense, Juror Number 1,

12  pass or challenge?  If you both pass, that is a juror that will

13  be seated.  If you challenge, I go to the next juror.  Then we

14  go down the list until everybody has used their challenges or

15  peremptory challenges, or we have our 12 jurors, whichever

16  comes first.  You don't have to use them all; but when we get

17  our 12, we have our 12.

18         MS. DUNN:  Your Honor, may I ask Ms. Wheeler a

19  question?

20         THE COURT:  Yes.

21         MS. DUNN:  Thank you.  That was very helpful.  I just

22  want to make sure we understand there is one column that's 1,

23  2, 3, 4, 5.

24         THE CLERK:  And beside that is the sequence number.

25  So you look at that sequence number to match who you're

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   visually seeing.

2            MS. DUNN:  Right.  And then -- but the way that we

3   know whose questionnaire it is, is next to that number is the

4   number of the questionnaire, which is their name for these

5   purposes?

6            THE CLERK:  Yeah, that sequence number that you're

7   looking at -- like today we talked about 268.  They're going to

8   have a number.  We're going to assign them a number when they

9   check in.  They'll have a tag on, 268.

10           MS. DUNN:  Thank you very much.

11           THE COURT:  So the jurors will be given -- those

12  jurors who are to serve who are not stricken, they will be

13  given instructions, tentative instructions when to return.

14           THE CLERK:  As we move from one pool to the next.

15           THE COURT:  And they will be excused to come back.

16           MS. DUNN:  Understood.

17           THE CLERK:  If I wasn't clear, once I go plaintiff

18  and defendant, then the next round I'll go defendant, Juror

19  Number 2, pass or challenge?  So we switch back and forth.

20           MS. DUNN:  Thank you.

21           THE COURT:  Is there anything else that anyone would

22  like to bring up?

23           MR. SMITH:  Your Honor, that procedure, that's not --

24  is that -- does that happen to be written down anywhere?  Is

25  there like -- does the Court have like a guide for that, that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1   it uses?

2          THE COURT:  I have not used the procedure except

3   since COVID because we've had to go to -- we can't bring in the

4   whole venire at one time.  We've had to go --

5          MR. SMITH:  No.  I didn't mean like -- I meant in

6   terms of like -- so I was listening to what was being said.  I

7   can't say that I was completely following it.  I was just

8   wondering if there was a resource that I could go to that has

9   that stuff written down on it that I could, you know, at least

10  take a second --

11         THE COURT:  I think we have written instructions

12  somewhere, don't we, Heidi?

13         THE CLERK:  I can get some to -- I think we have

14  something written down.

15         MR. SMITH:  Yeah, I'm sure like Monday morning if I

16  saw it, I'd probably get it pretty quickly.

17         THE COURT:  I think after we do all the strikes for

18  cause, we'll have to get all -- let all the defendants confer

19  and agree on who they want to use their peremptory strikes on.

20  And, of course, plaintiff, too.  We'll take some time between

21  strikes for cause and the peremptory challenges.

22             All right.

23         MR. CANTWELL:  If I may, two brief things.  These

24  juror questionnaires, I'm only allowed to see these at this

25  building, right?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1          THE CLERK:  That is correct.

2          MR. CANTWELL:  Is there any chance I could have some

3    time with them today before I'm taken back to the -- I'm being

4    told by the marshals yes.  Okay.  That is excellent news.

5          May I hand some papers to the clerk to be added to

6    the record?

7          THE COURT:  Yes.

8          MR. CANTWELL:  I don't have any stamps yet at the

9    ACRJ.  I apologize for the formatting.  I haven't been able to

10   purchase lined paper yet since I have gotten there.

11         THE COURT:  Yes.

12         MS. DUNN:  Your Honor, one thing I want to make sure

13   I understand, and also I've gotten several questions about this

14   from my colleagues, which is given the strong feelings on all

15   sides of these issues, there is concern about adjudicating some

16   of these issues in front of the entire venire.  So I know Your

17   Honor does not want to do very much at sidebar, but the

18   question is whether we can have these conversations with the

19   jurors, or Your Honor can have the conversations with the

20   jurors at sidebar so that we don't infect the entire panel.

21         THE COURT:  On questions that -- particular follow-up

22   questions, maybe.  We'll sort of play it by ear.  I'm aware of

23   what can happen if asked a general question.  We'll try to take

24   care of it.

25         MS. DUNN:  Thank you, Your Honor.  We appreciate it.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1      THE COURT:  Anything else?

2      MR. CANTWELL:  I have just one more very brief thing.

3  I've been trying to see about getting court-appropriate attire

4  delivered to the jail.  That's another thing that I'm waiting

5  for a response for from the captain.

6      THE COURT:  I've written an order that you have -- do

7  you have -- I take it you mentioned -- I brought it up the

8  other day and you said you could have --

9      MR. CANTWELL:  All I was going to say is I wonder if

10 maybe I could have them delivered to the Court because I

11 haven't gotten an answer from the jail yet.

12      The marshal's telling me he'll take care of it.

13 Thank you.

14      THE COURT:  But you have access to clothing?

15      MR. CANTWELL:  Yes, I have access to the clothing.  I

16 just have to figure out where to get it.  The marshal is saying

17 I can receive it here.  Thank you.

18      THE COURT:  It's not going to be feasible, obviously,

19 to have the sidebar and everybody gather round.  So it may

20 be -- it will probably be necessary to excuse the jury in that

21 time.  I'd just ask everybody to try to limit the number of

22 those incidents because it just takes so much time to take the

23 jury in and out.

24      MS. DUNN:  I think, Your Honor, we want to be very

25 respectful of what you just said.  Having gone through all the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  questionnaires at this point, there are many people who say

2  that they can't be impartial because of strong feelings.  They

3  have very extreme feelings.  So I want to flag this now, rather

4  than have a catastrophe on Monday.

5          THE COURT:  I understand that.  I mean, there are

6  ways we've done it -- like in capital murder cases we've had to

7  do individual voir dire in many cases.

8          MS. DUNN:  It is possible that in this case that may

9  be a suggestion.  Obviously, we defer to the Court, but I would

10  rather flag it now than wait until we have the jurors here.

11          THE COURT:  There are general questions that apply

12  that are fairly innocuous but reveal general qualifications to

13  serve.  We can do all those at one time.

14          MS. DUNN:  Thank you, Your Honor.

15          THE COURT:  All right.  Anything else today?

16          MR. SMITH:  Your Honor, I'd probably be -- I think I

17  want to be careful about when plaintiffs are complaining about

18  jurors potentially being -- having extreme views about this.

19  You know, the plaintiffs --

20          THE COURT:  Well, they're on both sides.  I mean, if

21  you read these questionnaires, you know, this is not -- I mean,

22  this is --

23          MR. SMITH:  Yeah, I understand, Your Honor.

24          THE COURT:  There's extreme views on both sides.

25          MR. SMITH:  I'm not sure that -- you know, I'm not

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1  sure that that alone should be something that excludes them.

2  But, I mean, plaintiffs, I did point out in my emergency motion

3  for a protective order that plaintiffs have been engaging in

4  extreme rhetoric online about this case and about the

5  defendants, and it's perfectly -- you know, it seems to me, and

6  I suggested --

7           THE COURT:  Mr. Smith, I don't -- you know, what

8  you're doing is inviting another response from the plaintiffs.

9  If you've got any problem, file a motion, if you want me to

10  take some action.  But just for us to sit here and talk back

11  and forth is not going to be productive.

12           Okay.  Anything else?

13           MS. DUNN:  No, Your Honor.

14           THE COURT:  Okay.  We'll recess and I'll see you all

15  Monday morning at 9:30.

16  (Proceedings adjourned, 1:26 p.m.)

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/22/2021

1                    C E R T I F I C A T E

2        I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3   the United States District Court for the Western District of

4   Virginia, appointed pursuant to the provisions of Title 28,

5   United States Code, Section 753, do hereby certify that the

6   foregoing is a correct transcript of the proceedings reported

7   by me using the stenotype reporting method in conjunction

8   with computer-aided transcription, and that same is a

9   true and correct transcript to the best of my ability and

10  understanding.

11       I further certify that the transcript fees and format

12  comply with those prescribed by the Court and the Judicial

13  Conference of the United States.

14       /s/ Lisa M. Blair                Date: October 22, 2021

15

16

17

18

19

20

21

22

23

24

25