IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES, et al., | ) | Civil Action No. 3:17-cv-00072 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JASON KESSLER, et al., | ) | |
| Defendants. | ) | By:  Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' renewed request for evidentiary sanctions

against Defendant Matthew Heimbach under Rule 37 of the Federal Rules of Civil Procedure.

Pls.' Supp'l Br., ECF No. 1006; Pls.' Mot. Evid. Sanctions, ECF No. 457; *see* Mem. Op. of Aug.

9, 2019, ECF No. 539; Order of June 21, 2019, ECF No. 508. In April 2019, Plaintiffs asked the

Court "to instruct the jury that [Heimbach] 'chose to intentionally withhold' responsive

documents" in violation of multiple court orders directing him to provide or permit discovery

"'and that the jury may draw adverse inferences from that fact,' including that [Heimbach]

'chose to withhold such documents because [he was] aware such documents contained evidence

that [he] conspired to plan racially motivated violence at the Unite[] the Right event'" in August

2017. Mem. Op. of Aug. 9, 2019, at 24–25 (quoting Pls.' Mot. Evid. Sanctions Ex. 1, ECF No.

457-1); *see id.* at 4–6, 32–34 (evaluating the motion under Rule 37(b)(2)(A)).[1] That June, I took

the request under advisement to give Plaintiffs the opportunity to depose Heimbach about his

efforts to preserve and produce any information and materials that are potentially relevant to this

---

[1] Pinpoint citations to documents electronically filed on the case docket, except for transcripts of court proceedings and depositions, use the header page numbers generated by CM/ECF. Pinpoint citations to transcripts use the number printed on the upper right-hand corner of the cited page.

1x

litigation. *See id.* at 2, 27–28, 33–35; Order of June 21, 2019, at 1, 4. Plaintiffs' counsel deposed

Heimbach on August 9, 2019, and June 3, 2020. Pls.' Supp'l Reply 2, ECF No. 1079.

Plaintiffs now renew part of their original motion for evidentiary sanctions.[2] They ask the

Court to "impose mandatory adverse inferences at trial that Heimbach intentionally spoliated"

one laptop, two cell phones, and three social media accounts, "and that he did so because he was

aware that each device, account, and document contained damaging information against

Heimbach relating to Plaintiff[s'] claims" generally. Pls.' Supp'l Br. 30 (citing Fed. R. Civ. P.

37(e)(2)(B)). The motion has been fully briefed, ECF Nos. 457, 463, 475, 1006, 1054, 1079,

1087, and may be resolved without another hearing, ECF No. 504; *see* Fed. R. Civ. P. 78(b);

W.D. Va. Civ. R. 11(b). Plaintiffs' request for adverse inferences against Heimbach will be

GRANTED AS MODIFIED, and subject to the presiding District Judge's final approval, as

detailed below. *See* Mem. Op. & Order of June 23, 2021, at 1, 17–18, 26–27 (conditionally

granting Plaintiffs' request for permissive adverse-inference instruction tailored to § 1985(3)

conspiracy claim against Defendant National Socialist Movement), ECF No. 982; Mem. Op. &

Order of Mar. 30, 2021, at 1–2, 23–24 (same, Defendant Vanguard America), ECF No. 936;

Mem. Op. & Order of Mar. 24, 2021, at 1–2, 18, 22–24 (same, Defendant Robert "Azzmador"

Ray), ECF No. 933; Mem. Op. & Order of Nov. 30, 2020, at 30, 37–39, 42 (same, Defendant

Elliott Kline), ECF No. 910.

## I. The Legal Framework

---

[2] Plaintiffs' original motion for evidentiary sanctions against Heimbach and Defendant Elliott Kline sought a permissive adverse-inference instruction as well as a court order deeming their proposed facts established and certain documents authentic for purposes of this action. *See* Mem. Op. of Aug. 9, 2019, at 24–25. Plaintiffs' supplemental brief relating to Heimbach expressly seeks adverse inferences under Rule 37(e), but, unlike their supplemental brief relating to Kline, it does not mention their other proposed evidentiary sanctions. *See* Mem. Op. & Order of Mar. 30, 2021, at 2 n.2. Accordingly, the Court assumes that Plaintiffs have abandoned those requests as to Heimbach. *See id.*

Rules 26 through 36 of the Federal Rules of Civil Procedure provide specific devices or procedures—such as interrogatories, requests for production and inspection, and depositions— for parties to obtain discoverable information before trial. Courts rely "in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). When they do not, Rule 37 provides one mechanism for a district court to compel compliance, Fed. R. Civ. P. 37(a), or to sanction an unacceptable failure to follow the rules, *see* Fed. R. Civ. P. 37(b)–(f).[3] Plaintiffs' renewed request for adverse inferences relies on Rule 37(e)(2)(B). *See* Pls.' Supp'l Br. 16–27.

Rule 37(e) provides the legal framework for evaluating claims that a party failed to preserve electronically stored information ("ESI") for another's use in litigation. *See Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017). Under this subsection,

> a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); Fed. R. Civ. P. 37(e). While "Rule 37(e) displaces reliance" on the traditional spoliation framework where the lost information was stored electronically, "it is grounded in the common law 'duty to preserve

---

[3] "Federal courts also have inherent power to sanction conduct that offends the legal process, including a party's 'fail[ure] to preserve or produce' discoverable information for another's use in litigation." Mem. Op. of Aug. 9, 2019, at 4 n.2 (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004)). In this case, Rule 37(e) provides an adequate framework to determine whether Heimbach's conduct warrants the requested evidentiary sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than [its] inherent power. But if in the informed discretion of the court, neither [a] statute or the Rules are up to the task, the court may safely rely on its inherent power.").

relevant information when litigation is reasonably foreseeable.'" *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020) (Moon, J.) (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *accord Steves & Sons.*, 327 F.R.D. at 104 ("This [traditional spoliation] analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve."). "Thus, whether ESI should have been preserved . . . under Rule 37(e) turns chiefly on two questions underlying the duty to preserve: 1) whether the party should have reasonably anticipated litigation, and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation." *Johns*, 503 F. Supp. 3d at 462 (citing *Steves & Sons*, 327 F.R.D. at 105). "Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons*, 327 F.R.D. at 107; *accord* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."). Finally, "the 'standard reasonableness framework' require[s] a party to suspend its routine" practices "and put in place a 'litigation hold' to ensure the preservation of relevant documents" and information. *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) (quoting *Steves & Sons*, 327 F.R.D. at 108). Whether a party reasonably should have taken additional or specific steps to preserve lost ESI may depend on the party's resources, technological sophistication, or familiarity with litigation generally. *See generally* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment ("The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts," and may "need to assess the extent to which a party knew of and protected against" unintentional or third-party loss).

If the movant makes the threshold showing under Rule 37(e), the "court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018); *see* Fed. R. Civ. P. 37(e)(1)–(2). "First 'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Thompson v. Clarke*, No. 7:11cv111, 2019 WL 4039634, at *3 (W.D. Va. Aug. 27, 2019) (Moon, J.) (quoting Fed. R. Civ. P. 37(e)(1)). "Second, and 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment."[4] *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). "The Fourth Circuit, like most circuits, has yet to interpret the new Rule 37(e)" and the "standard for proving intent under that rule is not settled." *Jenkins*, 2017 WL 362475, at *17. What is clear, however, is that "[n]egligent or even grossly negligent behavior does not suffice." *Brittney Gobble Photography, LLC v. Sinclair Broadcasting Grp., Inc.*, No. SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020) (internal quotation marks omitted). Rather, it is the party's failure to take reasonable steps to preserve ESI *with the intent* to deprive another party from using it in litigation that supports a logical inference that the

---

[4] The Fourth Circuit has not clearly defined the movant's burden of proof on a Rule 37 motion for sanctions. *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, No. 1:17cv1458, 2018 WL 7488924, at *11 (E.D. Va. Nov. 30, 2018), *adopted by* 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019); *Glynn v. EDO Corp.*, Civ. No. 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). "Some courts have applied the preponderance of the evidence standard. Other courts have required clear and convincing proof of misconduct, especially when imposing severe sanctions." *Jenkins*, 2017 WL 362475, at *12 (internal citation omitted). Here, the result is the same under either standard because the record contains clear and convincing evidence that Heimbach did not take reasonable steps to preserve ESI that he should have preserved for Plaintiffs' use in this litigation and that he acted with intent to deprive Plaintiffs of that information. *Glynn*, 2010 WL 3294347, at *2 (concluding that "proving misconduct occurred by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices" to support sanctions imposed under either Rule 37(b)(2) or the court's inherent authority).

"lost information was unfavorable to the party who lost it," Fed. R. Civ. P. 37(e)(2). *Cf. Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (explaining that a party seeking an adverse-inference instruction as a sanction for spoliation must show that the responsible party "acted either willfully or in bad faith in failing to preserve relevant evidence" because "merely negligent" conduct does not support a logical inference that the evidence was unfavorable to the responsible party's case). The court may consider the entirety of the responsible party's "actions, or lack thereof," in determining whether he had the requisite intent to deprive. *See, e.g.*, *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15cv2926, 2019 WL 5694256, at \*11 (E.D.N.Y. July 22, 2019) (finding intent to deprive where corporate plaintiff waited three years to implement litigation hold, officer admitted corporation "was in fact aware of [its] duty" to preserve ESI during that time, and officer "joke[d] during his deposition about throwing out and burning computer backup tapes"), *adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020).

## II. Background & Procedural History

On August 11–12, 2017, "the Defendants in this lawsuit, including the Ku Klux Klan, various neo-Nazi organizations, and associated white supremacists, held rallies in Charlottesville, Virginia. Violence erupted." *Sines v. Kessler*, 324 F. Supp. 3d 765, 773 (W.D. Va. 2018); *see* Second Am. Compl. ¶¶ 1–7, ECF No. 557. Plaintiffs, several residents who were injured that weekend, contend that "this violence was no accident"—rather, they allege that Defendants "conspir[ed] to engage in violence against racial minorities and their supporters" in violation of 42 U.S.C. § 1985, and related state laws. *Sines*, 324 F. Supp. 3d at 773. "While ultimate resolution of what happened at the rallies awaits another day," the presiding District Judge has held these Plaintiffs plausibly alleged that certain Defendants, Heimbach included, "formed a conspiracy to commit the racial violence that led to the Plaintiffs' varied injuries." *Id.*;

*see generally id.* at 776–77, 788, 791–93, 796 (summarizing Plaintiffs' factual allegations against Heimbach).

Plaintiffs contend that Heimbach played a key role in planning the rallies and actively communicated with his co-Defendants and others before, during, and after these events. For example, "Heimbach posted over 4,000 messages on Discord, including some in the 'Charlottesville 2.0' sever, and led in-person meetings to help other Defendant groups" plan for the rally. Pls.' Mot. Evid. Sanctions 11. He instructed members of Defendant Traditionalist Worker Party ("TWP"), a group he once chaired, "on details such as what to wear . . . and provided his followers with 'official TWP riot shields' and 'a dozen helmets . . . painted black with Party insignia on them'" *Id.* (quoting *id.* Ex. 13, MattewHeimbach, Discord (July 23, 2017), ECF No. 457-13, at 3–4 (punctuation corrected)). "It'll be solid," he wrote in late July 2017. *Id.* Ex. 13, MattewHeimbach, Discord (July 30, 2017), ECF No. 457-13, at 5 (punctuation corrected). "Alongside our . . . Vanguard America allies, we'll have an unbreakable line." *Id.* (capitalization corrected).

Heimbach also organized and led marchers from TWP on August 12. *See* Second Am. Compl. ¶¶ 195, 199. He and a few other Defendants "allegedly engaged in many of the most specific acts of violence in furtherance of the conspiracy." *Sines*, 324 F. Supp. 3d at 791; *see, e.g.*, Second Am. Compl. ¶¶ 186, 213. Heimbach later deemed the rally a success: "'We achieved all of our objectives. We showed that our movement is not just online, but growing physically. We asserted ourselves as the voice of white America. . . . I think we did an incredibly impressive job.'" Second Am. Compl. ¶ 268.

\*

Plaintiffs filed this lawsuit on October 11, 2017. ECF No. 1. The next day, Heimbach stated on the "Daily Traditionalist" podcast, "unfortunately . . . there has been a very interesting sort of development today. Not one, but two lawsuits is what I woke up to this morning pertaining to Charlottesville. And there's a lot of interesting stuff to talk about on this that I think is very interesting." *See* Pls.' Supp'l Br. Ex. 1, Heimbach Dep. Tr. 35 (Aug. 9, 2019), ECF No. 1006-2.[5] Heimbach said this knowing he was "a defendant in a suit that concerned [his] participation in the Unite the Right rally." *See id.* at 37. Heimbach was personally served with a summons and copy of the original complaint at his residence in Tennessee on November 6, 2017. ECF No. 108. He and other Defendants hired James Kolenich, Esq., and Elmer Woodard, Esq., to represent them in this matter beginning on December 1, 2017. ECF No. 131.

Plaintiffs filed their Amended Complaint in early January 2018. ECF No. 175. Their first requests for production of documents ("RFPs"), served on January 25, 2018, asked Defendants to produce "all documents and communications concerning the events" described in the Amended Complaint, including any emails, text messages, recordings, or social media content related to the "preparation, planning, transportation to, or coordination for" those events. *See* Pls.' Mot. Evid. Sanctions Ex. 8, at 9, ECF No. 457-8. The RFPs further explained that Defendants "must take every reasonable step to preserve" any electronically stored information (e.g., text messages, emails) and storage devices (e.g., cell phones, laptop computers) "until the final resolution of this matter" even if they objected to producing the materials themselves. *Id.* at 6–7. Heimbach's

---

[5] During Heimbach's first deposition on August 9, 2019, Plaintiffs' counsel played a recorded clip of the Daily Traditionalist podcast that aired on October 12, 2017. *See id.* at 34–35. Heimbach testified that it was his "voice on the podcast talking about this lawsuit," *id.* at 36, but he was not sure whether he made those statements on October 12, 2017.

proper responses or objections to Plaintiffs' written discovery requests were due by February 26, 2018. *See* Mem. Op. of Aug. 9, 2019, at 12 (citing Fed. R. Civ. P. 34(b)(2)).

On March 26, I issued an order denying a pro se defendant's motion to stay discovery and giving Heimbach (and other Defendants) twenty-one days to answer, respond, or object to Plaintiffs' written discovery requests. *See* Order of Mar. 26, 2018, ECF No. 287. Mr. Kolenich emailed Heimbach's sworn discovery responses to Plaintiffs' counsel on April 13, 2018. *See* Pls.' Supp'l Br. Ex. 4, Def. Heimbach's Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of Docs. 2–7, ECF No. 1006-5.[6] Heimbach stated that he used five online platforms (Gab.ai, VK, Facebook, Twitter, Discord) and one cell phone with a (301) area code to "communicate concerning the Events," *id.* at 2–3, but he did not have any responsive documents or communications in his personal possession, *id.* at 3–4 ("None unless in the possession of Traditionalist Worker Party itself. What I would have had was involuntarily removed by Facebook, Twitter, etc.").[7] Nor could he provide "documents and communications concerning the steps [he had] taken to preserve" any potentially relevant materials or information. *See id.* at 5 ("Answer: N/A."). Heimbach later testified that he believed "[n]ot available . . . [o]r not

---

[6] The signed "Acknowledgement" page attached to Heimbach's responses states that on April 11, 2018, Heimbach personally appeared before a notary public in Indiana and "did swear that the above responses . . . are true and correct to the best of his knowledge" as of that date. *Id.* at 6.

[7] Heimbach later testified that he "knew when [he] signed the certification in April of 2018 that [he] had responsive documents in [his] possession" and he "listed" those documents on his responses to Plaintiffs' RFPs. *See* Heimbach Dep. Tr. 366 ("Q: In April of 2018, you knew that you had documents in your possession that were responsive to these documents requests, right? A: Which I had listed, yes."). When confronted with his sworn response stating "None, unless in the possession of Traditionalist Worker Party itself," *id.* at 367, Heimbach said that this answer "was true to [his] understanding at the time" and blamed Mr. Kolenich for failing "to ask the questions to get the information to properly represent" him, *id.* at 368. *See also id.* at 370–71 ("Again, I was relying upon counsel, who I don't necessarily believe explored these in the fullness to properly represent my best interests, and that was a breakdown of communication."). Heimbach could not recall whether he told Mr. Kolenich about any of his other electronic devices or social-media accounts that contained responsive information. *See generally id.* at 364–68.

applicable," was the "proper answer" in response to that RFP in April 2018 because, "this is a

moment where, honestly, I should have been representing myself pro se from the get-go at least,

perhaps, be able to better represent my interests. And I'd answered as truthfully as I could at the

time." Heimbach Dep. Tr. 371–72.

*

Heimbach's actions in this case over the next year are well documented. *See generally id.*

at 1–2, 12–22, 26, 29–31 (April 2018 to June 2019). In short, he disobeyed numerous court

orders to provide or permit discovery of relevant materials within his control "while the litigation

slowed and everyone else's costs piled up." Mem. Op. of Aug. 9, 2019, at 29. The first order,

issued at my initial conference call with the parties on March 16, 2018, was an oral directive that

I expected everyone on the call, Heimbach's counsel included, "to preserve any potentially

relevant evidence" and that I took their "obligation to preserve this evidence very seriously." Tr.

of Mar. 16, 2018 Conf. Call 24, ECF No. 282; *see* Mem. Op. of Aug. 9, 2019, at 12–13. The

others were written orders setting out clear step-by-step instructions how Heimbach could "make

good [his] discovery obligation" by deadlines repeatedly extended, *Lee v. Max Int'l*, 638 F.3d

1318, 1321 (10th Cir. 2011) (Gorsuch, J.). *See* Mem. Op. of Aug. 9, 2019, at 18–20, 22 (citing

ECF Nos. 379, 383, 440). Yet, Heimbach's "consistent 'practice from the very beginning [was]

to ignore outright the court's orders or submit chaotically and defectively to them.'" Mem. Op.

of Aug. 9, 2019, at 30 (quoting *Mut. Fed. Savs. & Loan v. Richards & Assocs.*, 872 F.2d 88, 94

(4th Cir. 1989)). For example, Heimbach's "response" to the Court's entry of the parties'

stipulated ESI protocol, ECF No. 383 (Nov. 19, 2018), was to fire his attorneys and stop

participating in the litigation. *See* Tr. of Jan. 4, 2019 Mot. Hr'g (Mr. Kolenich: "Mr. Heimbach's

response to the last [discovery] order was to terminate my representation. So he has fired myself

10

and Mr. Woodard and forbid us to take any actions on his behalf."), ECF No. 400; *see also* Tr. of June 3, 2019 Mot. Hr'g 24 ("Mr. Kolenich: I can reach Heimbach, but he will not participate. He has made a tactical decision that he would rather just take a default and let that happen."), ECF No. 504. Plaintiffs also produced evidence showing that Heimbach was active on social media— even commenting about ongoing litigation—when he should have been participating in discovery and other pretrial proceedings.[8]

On Monday, June 3, 2019, I held a hearing on Plaintiffs' original motion for sanctions against Heimbach and two other Defendants. ECF No. 504. Heimbach did not acknowledge the Courts' repeated efforts to notify him, and he did not appear at the hearing. I explained that Heimbach's conduct to date was "clearly sanctionable" and that I intended to award costs and reasonable attorney's fees caused by his failures to comply with my prior discovery orders. *See* Mem. Op. of Aug. 9, 2019, at 26. The more difficult question was what substantive sanction(s) were appropriate under the circumstances. Having carefully considered the Court's full range of options, I found that issuing one more very specific discovery order—this time under threat of arrest and detention—could provide a way to "get the information that [Plaintiffs were] entitled to" and clearly still wanted from Heimbach.[9]

---

[8] On February 28, 2019, Heimbach alerted his Twitter followers to a motion filed in this case earlier the same day. Pls.' Mot. Evid. Sanctions Ex. 25, @HeimbachMatthew, Twitter (Feb. 28, 2019, 2:23 PM), ECF No. 457-25, at 2; *see* ECF No. 433. Additionally, sometime after this lawsuit was filed, Heimbach posted a message online quipping, "What's the proper etiquette when the people suing you make sweet quote graphics of things you said?" The message appears above a graphic that reads, "'Of course we look up to men like Adolf Hitler.' - Matthew Heimbach, Defendant." Pls.' Mot. Evid. Sanctions Ex. 22, Matthew Heimbach, VK.com (undated), ECF No. 457-22.

[9] More specifically, I proposed that the Court direct the United States Marshals Service ("USMS") to personally serve Heimbach with a written order that: (1) identified specifically the ESI accounts and devices he must produce; (2) told him that he must personally appear for a deposition in this federal courthouse on a date certain, and must bring the identified ESI accounts and devices with him to the deposition; and (3) clearly explained that if Heimbach failed in any way to comply with the Order, the Court could immediately issue a bench warrant directing the USMS to arrest him, transport him to this judicial district, and hold him in custody until he purged himself of civil contempt. This step appeared

On Friday, June 7, Plaintiffs' counsel informed me that Heimbach had reached out to Mr. Kolenich after seeing social-media reports about the motion hearing. Email from M. Bloch to J. Hoppe et al. (June 7, 2019 4:08 PM). On June 13, Heimbach wrote in an email to my Chambers, "[u]ntil this point I had been provided an incomplete and incorrect view of the proceedings by those who perhaps did not have my best interests at heart, and [for] this I can only apologize and work to rectify any errors up to this point." *See* Pls.' Supp'l Br. Ex. 5, Email from M. Heimbach to J. Hoppe 3 (June 13, 2019), ECF No. 1006-6. Heimbach also mentioned for the first time that the cell phone he had with him in Charlottesville on August 11–12, 2017, had been thrown away by his neighbors when he was arrested on domestic-violence charges "in March of 2018." *See id.* at 4 ("[T]he landlord was unable to preserve any of my possessions. This would include . . . my cell phone that I had in Charlottesville that had been damaged in that event, but I had kept in a box of old electronics due to the expectation of discovery in this civil litigation, and other personal effects. By the time I was able to legally contact my ex-wife, . . . almost all of my worldly possession had long since been disposed of by neighbors[.]"). During a hearing on July 2, Heimbach stated that his neighbors had thrown away an "older" cell phone and a laptop that he had been saving and he "wasn't made aware of this for months and months afterwards." Tr. of July 2, 2019 Disc. Hr'g 14, ECF No. 519.

In August 2019, I found that Heimbach acted in bad faith by stonewalling and ignoring the Court's discovery orders, and that awarding Plaintiffs their reasonable expenses caused by his failures to obey was an appropriate sanction under Rule 37(b)(2). *See generally* Mem. Op. of Aug. 9, 2019, at 29–34. At the time, however, I could not determine whether Heimbach's

---

necessary because Heimbach had ignored similar "orders telling [him] to do this before." Mem. Op. of Aug. 9, 2019, at 26–27.

conduct permitted a jury instruction that he "'chose to intentionally withhold' responsive documents 'and that the jury may draw adverse inferences from that fact,' including that [Heimbach] 'chose to withhold such documents because [he was] aware such documents contained evidence that [he] conspired to plan racially motivated violence at the Unite[] the Right event," *id.* at 24–25. *See id.* at 34–35. Both Rule 37(e)(2) and Fourth Circuit precedent require a finding that the responsible party intended to deprive his adversary of relevant information before the court may allow an adverse inference against that party. *See* Fed. R. Civ. P. 37(e)(2)(A)–(B); *Hodge*, 360 F.3d at 450–51. Thus, Plaintiffs deserved to depose Heimbach about his conduct in pretrial discovery and to determine whether any lost ESI could be adequately recovered or reproduced. *See* Tr. of July 2, 2019 Disc. Hr'g 17; Order of June 21, 2019, at 4 (noting that this deposition devoted exclusively to this topic was "necessary to address the significant deficiencies to date in [Heimbach's] discovery responses"). Moreover, Heimbach had recently "expressed an intention to adhere to the rules of procedure," Mem. Op. of Aug. 9, 2019, at 35, and to participate in good faith in the ordinary processes of litigation, *see id.* at 3, 31–32. *See* Order of July 3, 2019, at 3, ECF No. 515. I had previously issued an order directing that Heimbach "should be prepared" at this deposition "to answer questions about [his] respective electronic devices and social media accounts listed in Exhibit 1" to Plaintiff's original motion for sanctions. Order of June 21, 2019, at 4 (capitalization altered). That list included one VK account and two Gab accounts.

Heimbach sat for this deposition on August 9, 2019. *See generally* Heimbach Dep. Tr., ECF No. 1006-2. He said repeatedly that he could not remember facts about his conduct in pretrial discovery, *see, e.g.*, *id.* at 48–50, 54, including the fact that he personally signed his responses to Plaintiffs' written discovery requests in April 2018, *id.* at 58–59 ("I don't even

recall doing this, but it's in front of me."). He also "assume[d]" that Mr. Kolenich had sent him Plaintiffs' first set of interrogatories and RFPs, but he could not recall one way or the other. *See id.* at 47–50, 55–56.[10] He gave the same exact answer—"I don't recall"—to least 180 distinct questions. *See, e.g., id.* at 38, 56, 73, 78, 81, 99, 112–13, 199, 132–35, 138, 140, 142–44, 146–47, 153, 157, 163–66, 169, 173–78, 188–89, 194, 196, 198–99, 204–05, 213–16, 218, 221, 226, 231–33, 235, 240, 243–45, 247, 250–53, 262, 268.

Relevant to the ESI at issue in Plaintiffs' request for adverse inferences under Rule 37(e)(2), Heimbach testified that he was the only person who used his Android phone and that he sent and received text messages concerning Unite the Right on the phone. Asked "what sorts of things" he recalled "texting people about Unite the Right on that phone," Heimbach responded, "Looking forward to an exciting walk in the park." *Id.* at 307–08. *But see id.* at 308 ("Q: Do you recall actually saying to somebody, Looking forward to a walk in the park? A: No, I said that in Charlottesville on August 12th."). He could not remember whether this was "the only thing [he] recall[ed] texting on that phone" or whether he "text[ed] people about planning related to Unite the Right." *Id.* at 308. He was "sure" that he used the phone to text people about Unite the Right on August 11–12, 2017, but he could not "recall, generally speaking, what [he] texted to anybody" on those dates. *Id.* at 309. Heimbach stated that he stopped using the Android phone sometime in December 2017, after he left it unattended and his two-year-old son "busted it." *Id.* at 312. He put the phone in the uncovered plastic tub with the rest of his personal belongings, including his birth certificate and passport. *See id.* at 313. Heimbach also stored his Asus laptop in this tub. *Id.* at 344–45. He used the laptop to access Gmail and Google Docs, where he wrote and shared relevant documents and communications. *See id.* at 89–90, 207, 240–21, 254, 258,

---

[10] Heimbach later admitted that he received the RFPs. *Id.* at 365–66.

352–53. Heimbach again explained that, sometime after March 13, 2018, his wife at the time, Brooke, allowed their neighbors to discard the plastic tub and all its contents. Heimbach did not know where the Android phone and Asus laptop were located, *see id.* at 313, 347, but he agreed both devices are now "gone," *id.* at 207, 313, 344, 348.

In late 2017 or early 2018, Heimbach starting using a Blackview BV800 Pro cell phone. *Id.* at 332–33. He sent text messages on the phone about the Unite the Right rally. *Id.* But the BV800 Pro "kept shorting out and factory resetting itself," so Heimbach's current wife, Jessica, got "a new phone and replaced it" for her husband as "an early birthday present" in March or April 2019. *Id.* at 333–34. Heimbach indicated that Jessica did this on her own, without talking to him, and "was unaware of any discovery requirements as to preserving it." *Id.* at 333. The BV800 Pro cell phone is also "gone." *See id.* at 344, 348; Pls.' Supp'l Br. Ex. 3, Certification Form ¶ 2 ("Blackview BV 800 Pro . . . Communications device gone.") (July 2019), ECF No. 1006-3. Heimbach testified that someone other than himself, possibly Jessica, deleted his VK and Gab accounts at some point in 2018 or 2019. *See* Heimbach Dep. Tr. 116–17, 136–42. He was not sure whether he could still access his Daily Stormer account. *See id.* at 153–54.

Heimbach testified that relevant documents on his laptop were saved to Google Docs or his Gmail account. *See, e.g.*, Heimbach Dep. Tr. 241 ("Q: Is it possible that you created this on Microsoft Word? . . . . A: No, if I wrote it on a computer, it's going to be on Google Docs."). Heimbach had not backed up his cell phones or social-media accounts in any way, *see, e.g.*, *id.* at 310–11, 317–18, and he did not try to recover the devices, accounts, or their contents after he realized they were missing, *see, e.g.*, *id.* at 314–15, 323–31, 345–46.

\*\*\*

15

Plaintiffs now renew their request for evidentiary sanctions, this time relying on Rule 37(e)(2). They ask the Court to "impose *mandatory* adverse inferences at trial that Heimbach intentionally spoliated" one laptop, two cell phones, and three social media accounts, "and that he did so because he was aware that each device, account, and document contained damaging information against Heimbach relating to Plaintiff[s'] claims" generally. Pls.' Supp'l Br. 30 (emphasis added) (citing Fed. R. Civ. P. 37(e)(2)(B)). Heimbach opposes the request, arguing that he fulfilled his obligations to preserve information stored on these devices and accounts "because he did not delete it or seek its deletion." Def. Heimbach's Br. in Opp'n 13 (emphasis omitted).[11] Instead, "his ex-wife basically threw out" the Android phone and laptop, *see id.* at 4– 5 & n.3, and "officious intermeddlers sharing the very same political views and objectives of Plaintiffs and their counsel . . . got [the ESI] deleted" from one social-media account, *id.* at 13. *See id.* at 12 (Daily Stormer).

## IV. Discussion

An adverse-inference instruction helps "level[] the evidentiary playing field" at trial by allowing or requiring the jury to presume missing evidence was unfavorable to a party who, knowing it was relevant to some issue in the case, intentionally lost, destroyed, or otherwise

---

[11] Heimbach devotes most of his merits discussion to arguing that the lost ESI was not "centrally relevant," *id.* at 6, and, even if it was, losing that information did not prejudice Plaintiffs' case. *See generally id.* at 7–16 (cell phones, laptop, Gab, VK). Heimbach already admitted under oath that these devices and accounts contained relevant ESI, *see, e.g.*, Pls.' Supp'l Br. Ex. 4, Def. Heimbach's Resps. to Pls.' First Set of Interrogs. & Reqs. for Prod. of Docs. 2–3 (listing Gab and VK accounts and cell phone with (301) area code) (Apr. 2018); Pls.' Supp'l Br. Ex. 3, Certification Form ¶¶ 1–2 (listing Android, BV 800 Pro, and Gab) (July 2019), ECF No. 1006-3; Heimbach Dep. Tr. 64, 67–68, 70–71, 304–09, 312, 332 (testifying that the two cell phones and three social-media accounts contained relevant ESI), and the Court has repeatedly held that Plaintiffs are entitled to the ESI at issue in this motion, *see, e.g.*, ECF Nos. 379, 383, 440. The "prejudice from loss" factor is relevant to a motion under Rule 37(e)(1), which does not require a finding that the responsible party "intend[ed] to deprive another party of the information's use in litigation," Fed. R. Civ. P. 37(e)(2). Plaintiffs seek an adverse inference under Rule 37(e)(2). "Once an intent to deprive has been established, Rule 37(e)(2) does not require an additional finding of prejudice." *Capricorn Mgmt. Sys.*, 2019 WL 5694256, at *12 (citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment).

failed to preserve the evidence. *Voduesk v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *see Hodge*, 360 F.3d at 450. In August 2019, I found that a *permissive* adverse inference tailored to Plaintiffs' § 1985(3) conspiracy claim "certainly could be appropriate in this case" if Heimbach "fail[ed] to produce the discovery from this point forward." Mem. Op. of Aug. 9, 2019, at 34; *see First Mariner Bank v. Resolution Law Grp.*, No. Civ. No. MJG-12-1133, 2013 WL 5797381, at *14 (D. Md. Oct. 24, 2013). I also recognized that the Court "will likely have run out of options other than to impose significant evidentiary sanctions" against Heimbach should he not follow through on his expressed "intention to adhere to the rules of procedure and the Court's orders." Mem. Op. of Aug. 9, 2019, at 35.

Heimbach's testimony describing his conduct in pretrial discovery was at times evasive, internally inconsistent, or simply not believable. At bottom, however, he admitted under oath that he took minimal, if any, steps to preserve the ESI at issue in Plaintiffs' motion and that he made no effort to recover that information once he realized it was lost. I have previously granted, subject to the presiding District Judge's final approval, Plaintiffs' requests for permissive adverse inference instructions against four other Defendants who likewise took no special steps to preserve or recover lost text messages, emails, and social-media content relevant to Plaintiffs' § 1985(3) conspiracy claims. Mem. Op. & Order of June 23, 2021, at 1, 17–18, 26–27 (National Socialist Movement); Mem. Op. & Order of Mar. 30, 2021, at 1–2, 23–24 (Vanguard America); Mem. Op. & Order of Mar. 24, 2021, at 1–2, 18, 22–24 (Ray); Mem. Op. & Order of Nov. 30, 2020, at 30, 37–39, 42 (Kline). Consistent with those rulings, Plaintiffs' proposed jury instructions ask the presiding District Judge to instruct jurors that they:

> are permitted, but not required, to infer that Defendants Elliott Kline, Robert "Azzmador" Ray, Nationalist Socialis[t] Movement, and Vanguard America intentionally withheld or destroyed documents and electronically stored information they were required to produce to Plaintiffs because they were aware

that such documents and electronically stored information contained evidence that they each conspired to plan racially motivated violence at Unite the Right.

ECF No. 1224, at 21 (citing ECF Nos. 910, 933, 936, 982). Plaintiffs' request that the Court "impose *mandatory* adverse inferences at trial that Heimbach intentionally spoliated" the ESI at issue "and that he did so because he was aware" the devices and accounts "contained damaging information against Heimbach relating to Plaintiff[s'] claims" generally, Pls.' Supp'l Br. 30 (emphasis added), is overly broad and risks confusing the jury. *See United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633–34 (E.D. Va. 2006); Mem. Op. & Order of Oct. 15, 2021, at 20, 33, ECF No. 1237. Accordingly, subject to the presiding District Judge's final approval, Plaintiffs' request for adverse inferences against Heimbach under Rule 37(e)(2) will be granted as modified to the extent consistent with their proposed jury instruction.

A.      *Rule 37(e) Threshold Findings*

Plaintiffs must first show that the specific ESI at issue in their Rule 37(e) motion: (1) should have been preserved; (2) was lost; (3) due to Heimbach's failure to take reasonable steps to preserve it; and (4) cannot be restored or replaced through additional discovery. Heimbach appears to concede that Plaintiffs satisfied the first and second elements with respect to relevant content stored on his Android cell phone and Asus laptop (lost March 2018); his Blackview BV800 Pro cell phone (lost early 2019); and his Gab, VK, and Daily Stormer accounts (presumably deleted by third parties in 2018 or 2019). *See generally* Def. Heimbach's Br. in Opp'n 3–6, 8–9, 13–14.

1.      *Duty to Preserve*

Heimbach's duty to preserve *potentially* relevant ESI arose, at the latest, on October 12, 2017, when he knew he was named as a Defendant in this lawsuit. *See Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) ("Generally, it is the filing of a lawsuit that triggers the duty to

preserve evidence."); *Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 679 (D. Md. 2012) (distinguishing between a party's duty to preserve "potentially relevant" materials and the "separate analysis taken up under part three of the [traditional] spoliation doctrine" of whether lost materials were in fact "relevant" to the requesting party's case). At that point, Rule 37(e) imposed on Heimbach a continuing duty "to ensure [he was] taking reasonable steps to preserve" potentially relevant information that was stored electronically and within his custody or control. *Paisley Park Enters.*, 330 F.R.D. at 234. It did not require Plaintiffs to "issue a document preservation letter identifying all types of ESI that [they] might seek in the future." *Id.*; *cf.* Def. Heimbach's Br. in Opp'n 6 (faulting Plaintiffs for asking Heimbach "to produce generally relevant information, without making any extremely specific request" for individual documents). Nonetheless, the written discovery requests that Plaintiffs served on Heimbach through his attorney in late January 2018, *see* Fed. R. Civ. P. 5(a)–(b) (discovery papers must be served on represented party's attorney), expressly identified specific categories of ESI (e.g., text messages, emails, social-media posts) and electronic devices or storage (e.g., cell phones, laptops, social-media accounts) that Plaintiffs expected Heimbach to preserve and produce for their use in this litigation. *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, . . . is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."); *cf. In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 299 F.R.D. 502, 518 (S.D. W. Va. 2014) (declining to decide whether Ethicon had a duty to preserve certain deleted emails "because the scope of the preservation was established by Ethicon's in-house counsel in the document preservation notices," which clearly instructed employees to keep all emails "relating to the

19

[medical] device at issue and pertaining to" broad categories of information). Whether Heimbach bothered to read Plaintiffs' discovery requests is immaterial. *Cf.* Mem. Op. & Order of Nov. 30, 2020, at 12 (pro se Defendant's statements indicating that he "never bothered to do anything" with Plaintiffs' discovery requests did not excuse his failure to preserve potentially relevant information in his possession). Given the requests' broad scope and specific instructions about what to save, Heimbach certainly "*should* have known" that the ESI at issue in Plaintiffs' sanctions motion "*could* be relevant in the case." *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 698 (4th Cir. 2015) (emphasis added).

> ## 2. Loss & Replaceability

Heimbach testified that he used his Asus laptop, which he owned for "all of 2017," to "generate documents about Charlottesville." *See* Heimbach Dep. Tr. 344–45. It appears that those documents were also uploaded to Google Drive or connected to Heimbach's "active" Gmail account, *id.* at 206–07, and Plaintiffs obtained responsive documents from this provider, Pls.' Supp'l Br. 16 n.7. Thus, Plaintiffs have not shown that ESI stored on the missing Asus laptop is "lost" and "cannot be restored or replaced." Fed. R. Civ. P. 37(e)(1). Nevertheless, Plaintiffs easily satisfied these criteria with respect to ESI stored on the Android cell phone, the BV800 Pro cell phone, and the Gab, VK, and Daily Stormer accounts. Heimbach testified that his Android and BV800 Pro phones are "gone," that his Gab and VK (and possibly Daily Stormer) accounts were deleted, and that he did not try to restore or recover their contents. *See generally* Heimbach Dep. Tr. 117, 184–85, 136–44, 153–54, 313–14, 328–29, 348. A sworn declaration by Plaintiffs' counsel, ECF No. 1006-1, shows that Plaintiffs "made some good-faith attempt to explore . . . alternatives" for replacing or restoring this lost ESI before moving for sanctions under Rule 37(e), *Steves & Sons*, 327 F.R.D. at 109. They obtained some of this ESI

from other Defendants and third-party providers, but they do not have a "complete record of [Heimbach's] written communications from" Heimbach himself. *Paisley Park Enters.*, 330 F.R.D. at 236. This is sufficient to show that ESI stored on the two cell phones and three social-media accounts is both lost and irreplaceable. *See, e.g.*, *id.*

3.      *Failure to Take Reasonable Steps to Preserve ESI*

Finally, ESI stored on Heimbach's cell phones and social-media accounts was lost because he failed to take reasonable steps to preserve it. Heimbach's statements to the Court and in his August 2019 deposition indicate that he fully understood his obligation to preserve the Android cell phone. *See* Email from M. Heimbach to J. Hoppe (noting he kept his cell phone "in a box of old electronics due to the expectation of discovery in this civil litigation"); Heimbach Dep. Tr. 315–16 (testifying he saved the broken Android "[b]ecause I would need it . . . [f]or the lawsuit"). Yet, the *only* step he took to preserve its content was to put the phone in an unlabeled plastic tub that he used to store "all [his] assorted odds and ends," *id.* at 315, including his birth certificate and passport, *id.* at 316. Heimbach kept the tub, without a lid, in the home he shared with his wife and two small children, and he did not tell anyone (including his attorney) that it contained evidence Heimbach knew needed to be saved for this lawsuit. *See generally id.* at 312–18. In his brief, Heimbach asserts (without providing any evidence) that this "is actually a very standard protocol amongst the hoi polloi for staying organized" and that, "when it comes to trailer folk and ESI security/preservation, a heavy-duty plastic tub is really about as good as it's ever going to get." Def. Heimbach's Br. in Opp'n 4. He maintains that it would be unreasonable to expect someone like Heimbach—"a nonlawyer with an income at or below the poverty line and two children to feed"—to have "immediately isolated all relevant ESI in his trailer's Secure

Document Repository Trailer [sic], then contacted his private banker to ready the funds needed to hire an e-discovery forensic device imaging service." *Id.*

Both assertions miss the mark. First, assessing whether Heimbach took reasonable steps to preserve this ESI turns on whether *he* changed *his* routine practices and put in place some sort of "litigation hold" to reasonably ensure its protection from loss. *See, e.g.*, *O'Berry v. Turner*, No. 7:15cv64, 2016 WL 1700403, at *2–3 (M.D. Ga. Apr. 27, 2016) (corporate defendant failed to take reasonable steps to preserve ESI where employee simply followed his regular job duties in printing a copy of driver's log and putting it in a manila folder stored on his desk or in an unlocked filing cabinet). Heimbach's unsupported assertions about how people of lesser means usually store their belongings are irrelevant. Heimbach admits that he did not change his ordinary behavior; he put the phone in an unprotected tub with all his other belongings and assumed that would be good enough. Heimbach Dep. Tr. 317 ("Q: Did you ask anybody whether there was anything you could do to preserve the contents of that phone? A: I assumed it just existing would be sufficient."). This was not reasonable under *any* circumstances. *Cf. AXIS Ins. Co. v. Terry*, No. 2:16cv1021, 2018 WL 9943825, at *7 (N.D. Ala. Apr. 23, 2018) (pro se defendant who left audio recordings in her brother's possession for six months, knowing she was required to produce them in discovery, did not take reasonable steps to preserve ESI). Storing the "busted" phone in a locked drawer or giving it to his attorney for safe keeping would have been cheap and easy steps to ensure the device itself would not be lost, discarded, or destroyed. Similarly, Heimbach could have backed up the phone's contents online or on an external hard drive to guard against the risk of loss or destruction. Second, whether one believes Heimbach's story about *how* the Android phone was lost in the spring of 2018, *see* Def. Heimbach's Br. in Opp'n 4–5, his admitted failure to take *any* commonsense, inexpensive measures to protect the

22

phone's contents *before* it was lost "is sufficient to show that [he] acted unreasonably." *Paisley Park Enters.*, 330 F.R.D. at 233. The same is true for Heimbach's BV800 Pro cell phone that his wife replaced and discarded, supposedly without telling him, in the spring of 2019, *cf. AXIS Ins. Co. v*, 2018 WL 9943825, at *7, and the three social-media accounts that have been deleted.

B.     *Rule 37(e)(2) Sanctions*

Plaintiffs made the threshold showings that relevant ESI stored on Heimbach's two cell phones and three social-media accounts was lost because he failed to take reasonable steps to preserve it and that this ESI cannot be restored or replaced through additional discovery. The only remaining question is whether the record supports a finding that Heimbach acted with intent to deprive another party of this information's use in litigation. Fed. R. Civ. P. 37(e)(2). If so, then the court may "instruct the jury that it may or must presume the information was unfavorable" to Heimbach. Fed. R. Civ. P. 37(e)(2)(B). Heimbach concedes that he was "grossly negligent" in failing to preserve the lost ESI, but he argues that an adverse inference is unwarranted because his "conduct was *not* in bad faith," Def. Heimbach's Br. in Opp'n 5, insofar as "he did not delete [the ESI] or seek its deletion," *id.* at 13 (emphasis omitted). *See also id.* at 2–3 (asserting that Heimbach has "ma[de] comparatively significant efforts to comply with his discovery obligations and the Court's orders" since June 2019 and that while his conduct "may not be perfect, it is still not *bad* faith"). This argument misunderstands the scope of Rule 37(e)(2).

The Rule's plain text makes clear that it is the party's "fail[ure] to reasonable steps to preserve" ESI, Fed. R. Civ. P. 37(e), *with the intent* to deprive another party from using it in litigation that supports a logical inference that the "lost information was unfavorable to the party who lost it," Fed. R. Civ. P. 37(e)(2). *See, e.g., Ungar v. City of N.Y.*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) ("Whether the spoliator *affirmatively* destroys the data, or *passively* allows it to be lost, is

irrelevant; it is the spoliator's *state of mind* that logically supports the adverse inference."). Thus, a party's "conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2)." *Capricorn Mgmt. Sys.*, 2019 WL 5694256, at *11 (internal quotation marks omitted); *see Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017) ("[D]efendants' repeated failure over a period of years to confirm that the data had been properly preserved despite its ongoing and affirmative . . . obligations, particularly before discarding [key employee's] laptop, is so stunningly derelict as to evince intentionality.").

Heimbach's testimony describing his "actions, or lack thereof, demonstrate an intent to deprive [Plaintiffs] of information," *Capricorn Mgmt. Sys.*, 2019 WL 5694256, at *11, at issue in their motion. He admits that he simply put his Android cell phone in an uncovered, unlabeled plastic tub after his toddler son allegedly "busted" it in December 2017. This effort was "minimal," *O'Berry*, 2016 WL 1700403, at *3, and did nothing to guard against the known risk that the phone or its contents might be lost or destroyed, *cf. id.* at *4 (finding intent to deprive where "individuals unaware of [the document's] importance had access to control over the information"). "At the very least, [Heimbach] should have made additional efforts to ensure the preservation of [those] materials," *id.* at *4, once Plaintiffs served their discovery requests and preservation instructions on him in late January 2018. *Cf. id.* at *3–4 (finding intent to deprive where party's employee followed regular job duties in "printing a single copy of the information and putting it in a manila folder" stored on his desk or in an unlocked filing cabinet, and made no "additional efforts to ensure the preservation of these materials once the spoliation letter was received" from opposing counsel). And, despite being aware of his preservation obligations,

24

Heimbach took no steps at all to protect ESI stored on his BV800 Pro cell phone and three social-media accounts. *See Ottoson v. SMBC Leasing & Finance, Inc.*, 268 F. Supp. 3d 570, 582–83 (S.D.N.Y. 2017) (party's conscious failure "to take any reasonable steps to preserve" relevant communications satisfies Rule 37(e)(2)'s intent requirement). Heimbach's "repeated failure over a period of years to confirm that the data had been properly preserved," both while he was represented by counsel and after he decided to litigate on his own, "is so stunning derelict as to evince intentionality." *Moody*, 271 F. Supp. 3d at 432.

Heimbach's professed inability to recall almost *any* fact about the steps he took (or did not take) to preserve or recover this ESI, combined with his occasionally flippant or dismissive answers to opposing counsel's questions at his court-ordered deposition, "demonstrates a contempt" for his discovery obligations, *Capricorn Mgmt. Sys.*, 2019 WL 5694256, at *11, that further reinforces this conclusion. *Cf.* Mem. Op. & Order of Nov. 30, 2020, at 32–33 ("Kline did not follow through. In fact, Kline responded to two federal judges' patient indulgence with broken promises, halfhearted steps towards compliance, and countless sworn statements that were evasive, internally inconsistent, or simply not believable."); *id.* at 35–39 (Kline's "failure to produce much of the requested discovery, or to give believable [deposition] answers why the discovery did not exist," warranted permissive adverse-inference instruction at trial). Accordingly, I find that Heimbach intentionally deprived Plaintiffs of the use of ESI from his cell phones and three social media accounts. Considering Heimbach's discovery misconduct over several years and the resulting loss of relevant information to Plaintiffs, an adverse inference instruction is warranted.

## V. Conclusion

Plaintiffs' request for evidentiary sanctions against Defendant Matthew Heimbach under Rule 37(e)(2) of the Federal Rules of Civil Procedure, ECF No. 1006, is hereby **GRANTED in part.** Subject the presiding District Judge's final approval, Plaintiffs' request for adverse inferences against Heimbach under Rule 37(e)(2) will be granted as modified to the extent consistent with their proposed jury instruction relating to Defendants Kline, Ray, National Socialist Movement, and Vanguard America.

      **IT IS SO ORDERED.**

ENTER: October 22, 2021

Joel C. Hoppe
U.S. Magistrate Judge