UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, CHELSEA ALVARADO, JOHN DOE, and THOMAS BAKER,<br><br>       Plaintiffs,<br><br> v.<br><br>JASON KESSLER, et al.,<br><br>       Defendants. | Civil Action No. 3:17-cv-00072-NKM<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' TRIAL BRIEF REGARDING *VOIR DIRE*
AND JUROR EXCUSALS FOR CAUSE**

  Plaintiffs respectfully submit this brief in advance of *voir dire* to assist the Court in streamlining the jury selection process. Written juror questionnaires "elicit frank answers that a juror might be reluctant to voice in the presence of other jurors." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 880 (2017) (Alito, J., dissenting). For the reasons explained below, and consistent with longstanding precedent and practice in the federal courts, the Court should, prior to the commencement of jury selection on Monday, excuse the following prospective jurors for cause: (1) any prospective jurors who have disclosed on their questionnaire that they would refuse to follow the law or this Court's instructions on the law; (2) any prospective jurors who have disclosed on their questionnaire that they would refuse to abide by this Court's COVID-19 health precautions; and (3) any prospective jurors who have disclosed on their questionnaire that they hold extreme views about "Antifa" or its members.

**ARGUMENT**

**I.  THE COURT SHOULD EXCUSE ANY PROSPECTIVE JURORS WHO REFUSE TO FOLLOW THE LAW**

It is axiomatic that jurors are duty bound to "apply the law as instructed by the court." *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997); *see also United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006). Consistent with that duty, a juror must follow the applicable law, regardless of "the identity of the party, [the juror's] disapprobation of the particular prosecution at issue, or a more general opposition to the applicable criminal law or laws." *Thomas*, 116 F.3d at 614. Potential jurors who make clear that they cannot or will not comply with the governing law are "no less subject to dismissal than is a juror" who is "biased or otherwise unable to render a fair and impartial verdict." *Id.*; *see also United States v. Tinker*, No. 96-4917, 1998 U.S. App. LEXIS 1233, at *4-5 (4th Cir. Jan. 28, 1998); *United States v. Lynch*, 903 F.3d 1061, 1079 (9th Cir. 2018). Consistent with these principles, "every day in courtrooms across the length and breadth of this country, jurors are dismissed from the venire 'for cause' precisely because they are unwilling or unable to follow the applicable law." *Thomas*, 116 F.3d at 616.

In the ordinary case, courts can often resolve questions about a juror's qualifications by asking a few questions that clarify whether a juror can be fair and impartial. This, however, is no ordinary case. It is a high-profile trial, which, for some potential jurors, involves sensitive and polarizing issues. In such cases, courts, as this Court has done here, often employ an important and useful tool for jury selection: written jury questionnaires. The written questionnaires here have resulted in certain jurors stating that they would not follow the law in this case.

Defendants have indicated their belief that the individuals who have given disqualifying answers on a questionnaire may be rehabilitated by oral *voir dire*. But oral *voir dire* should not be a basis for seating jurors (regardless of their political background) who have already made

2

absolutely clear, in a written questionnaire, that they should be disqualified for cause and are beyond rehabilitation. There can be little doubt that written questionnaires "elicit frank answers that a juror might be reluctant to voice in the presence of other jurors." *Pena-Rodriguez*, 137 S. Ct. at 880 (Alito, J., dissenting); *see* Lin Lilley, *Let Jurors Speak the Truth, in Writing: Some Jurors Aren't Fully Candid during Oral Voir Dire. When You Hand Them a Supplemental Juror Questionnaire and a Pen, Many Will Feel Free to Open Up*, 7 TRIAL J. FOR THE AM. ASS'N FOR JUST. 41, 64-69 (2005). Further, written questionnaires allow jurors more time to think through the questions and give complete answers when compared to responding orally to unexpected questions. Because of the highly charged nature of this case, the distinct advantages of a written questionnaire are even greater. Identifying individuals' deeply held beliefs here is necessary for meaningful jury selection. Conclusory or revised answers during oral *voir dire* cannot achieve that objective and provide no basis to seat a juror who has already clearly indicated that he will not follow the law or the Court's instructions.[1] Unambiguous answers in jury questionnaires constitute grounds for striking jurors for cause regardless of how hard the Court and counsel work to achieve an effective oral *voir dire* process.

A corollary principle is that jurors who have made disqualifying statements in their questionnaire should not be considered to be rehabilitated by revised views in oral *voir dire*. In those circumstances of conflicting statements, no one can be assured that the juror can offer a fair trial. In *United States v. Christensen*, a juror told other jurors during deliberations that he disagreed with the law at issue and refused to deliberate; the court held that it "makes no sense to let" a

---

[1] For example, one former Assistant U.S. Attorney has explained, "It is not uncommon . . . to have reviewed juror questionnaires where prospective jurors have written racist comments or expressed views showing the prospective juror is prejudiced against some group, but when asked in open court by the trial judge whether the defendant's race would affect any of the prospective jurors' ability to be fair and impartial, the same prospective jurors have sat silently, hands fixed at their sides." C.J. William, *To Tell You the Truth, Federal Rule of Criminal Procedure 24(A) Should Be Amended to Permit Attorneys to Conduct Voir Dire of Prospective Jurors*, 67 S.C. L. REV. 35, 56 n.156 (2015).

3

potential juror's statements that he can "'follow the law' serve as an automatic free pass, if other evidence supports findings to the contrary." 828 F.3d 763, 813 (9th Cir. 2015) (Clifton, J.) (amended opinion); *see also United States v. Binh Duy Pham*, 79 F. App'x 566, 569-70 (4th Cir. 2003) (a juror may be dismissed if she volunteers concerns about her ability to be impartial). The same should be true here if a potential juror flips flops on the issue of whether they can follow the law. To permit such potential jurors to be seated would be to "encourage or permit" juror misconduct that is "within [the Court's] authority to prevent." *Thomas*, 116 F.3d at 615.

## II. THE COURT SHOULD EXCUSE ANY PROSPECTIVE JURORS WHO REFUSE TO ABIDE BY THE COURT'S COVID-19 HEALTH PRECAUTIONS

Recognizing the "current state of the COVID-19 pandemic in Virginia, the Western District and in the Charlottesville Division in particular," this Court issued a comprehensive order instituting "necessary and appropriate measure[s] to protect the parties, attorneys, court staff, and potential jurors and to decrease risk of exposure to COVID-19." ECF No. 1146 at 3, COVID-19 Health Precautions Order ("Order" or "Health Precautions Order"). The Order: (1) requires all persons to wear masks in the courtroom regardless of vaccination status; (2) requires social distancing whenever possible throughout the courthouse; (3) restricts the total number of persons in the courtroom; and (4) requires anyone entering the courtroom to conduct a health self-assessment.[2] *Id.* at 2-5. Failure to abide by the Health Precautions Order increases "the risk of exposure to COVID-19" and endangers the health and safety of all trial participants—including

---

[2] The Order also states: "If counsel becomes aware of any counsel of record, litigant, witness, or any other necessary case participant, who had visited or intended to attend in person a pre-trial hearing or trial in this case at the Charlottesville federal courthouse, who (i) has tested positive for COVID-19, (ii) has been in 'close contact' with someone with COVID-19 within the meaning of CDC Guidance, or (iii) on account of conducting the health self-assessment described above, concludes they should not come to the Courthouse, counsel shall promptly advise the Court." ECF No. 1146 at 5.

4

the jury, court staff, the parties, and counsel. *Id.* at 3. Failure to abide by the Order also increases the risk that the trial may be disrupted or halted.

To avoid these risks, the Court should excuse any potential juror who indicates a refusal to follow any part of the Health Precautions Order. That approach is warranted for at least three independent reasons.

*First*, and foremost, this Court has inherent, plenary power to manage the administration and safety of its courtroom, and "to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). The Court may exercise that authority to excuse for cause any prospective jurors who refuse to follow court-imposed rules. *United States v. McKinney*, No. 92-50619, 1994 U.S. App. LEXIS 1941, at *4-5 (9th Cir. Jan. 28, 1994) ("We have upheld district court decisions to dismiss jurors when the decisions had some demonstrable relation to a legitimate administrative interest of the court."); *United States v. Seal*, 165 F. App'x 975, 978 (3d Cir. 2006) (district court did not abuse its discretion in removing a juror after finding that the juror disregarded the court's instructions by smuggling in outside documents to the deliberation room); *United States v. James*, 203 F. 3d 836, at *4 (10th Cir. 2000) (table opinion) (district court did not abuse its discretion in *sua sponte* dismissing a prospective juror because a "person who is either unwilling or unable to follow the court's instructions is not qualified to be a juror").

Consistent with that broad authority, federal courts have routinely excused potential jurors who pose a risk of spreading COVID-19 to others. For example, a federal district court in New York recently held that excusing all unvaccinated prospective jurors for cause was appropriate and consistent with the Sixth Amendment. *United States v. Moses*, No. 6:19-cr-6074, 2021 WL 4739789, at *2-5 (W.D.N.Y. Oct. 12, 2021) (*per se* excusal of unvaccinated prospective jurors to

prevent disruption "given the anticipated length of th[e] trial and high levels of community transmission"). At least one federal court in Virginia has done the same. *See United States v. Muhammad*, No. 3:21-cr-34, 2021 U.S. Dist. LEXIS 187578, at *8 (E.D. Va. Sep. 29, 2021) (unvaccinated prospective jurors stricken for cause). Taking a similar approach, another federal district court in Illinois determined, over a defendant's objection, that it would first pull from a pool of vaccinated jurors before pulling from a pool of unvaccinated jurors. *United States v. Berrios*, No. 20-cr-30048, Minute Entry Proceeding (C.D. Ill. May 24, 2021).

If courts have the power to strike prospective jurors for cause (or to narrow the venire pool) based on their COVID-19 vaccination status in criminal cases, then it follows that this Court possesses the authority to excuse for cause prospective jurors who refuse to follow the Court's COVID-19 protocols in this civil case. That is especially true since a juror who refuses to follow the Court's basic rules on health and safety is more likely to flout *other* rules and instructions of the Court, including the Court's instructions on evidence and law. *See supra* Part I.

*Second*, the Court has authority, under 28 U.S.C. § 1866(c)(1), to excuse prospective jurors on the grounds that seating them "would increase *their* risk of contracting COVID-19 and thereby constitute an 'undue hardship' on them." *United States v. Elder*, No. 18-cr-92, 2021 U.S. Dist. LEXIS 175476, at *4 (E.D.N.Y. Sep. 3, 2021) (emphasis added). In *Elder*, the Court found that requiring unvaccinated persons to serve on the jury would cause undue hardship because the trial would "be held in a single room for approximately three weeks, five days a week," and would involve "at least 12 jurors" plus several lawyers, support staff, the court reporter, United States Marshals, and the Court, all of which would increase "the risk of transmission." *Id.* That logic applies with force here to those prospective jurors unwilling to follow the Court's Health Precautions Order.

*Third*, excluding prospective jurors who refuse to follow the Court's COVID-19 health and safety precautions is necessary to avoid disrupting the trial proceedings. Under 28 U.S.C. § 1866, courts also have the authority to excuse a juror "on the ground that … his service as a juror would be likely to disrupt the proceedings." Empaneling a juror who refuses to adhere to this Court's COVID rules would be highly disruptive: it would increase the chance of COVID-19 outbreak, endanger the lives of those in the courtroom, and risk significant delays in the trial proceedings. *See Moses*, 2021 WL 4739789, at *4-5 (listing numerous potential disruptions under § 1866 due to an outbreak of COVID-19); *Elder*, 2021 U.S. Dist. LEXIS 175476, at *4-5 (same).

Courts have similarly dismissed jurors—even *after* they have been empaneled—when their actions compromise the safety of other jurors and trial participants. *E.g.*, *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-cv-1400, 2018 WL 1203102, at *2-3 (M.D. Fla. Mar. 8, 2018), *aff'd*, 774 F. App'x 600 (11th Cir. 2019) ("After carefully listening to each juror, the Court ultimately determined that it was absolutely necessary to excuse Mr. Samelton for the safety of the jurors. The Court determined that even the Court Security [Officers'] presence could not ensure the physical safety of each juror"); *cf. United States v. Barnes*, 604 F.2d 121, 140 (2d Cir. 1979) (recognizing "jurors will be less than willing to serve" if their privacy and safety are compromised).

And those are not the only risks of disruption. A juror who refuses to wear masks or follow the Court's Health Precautions Order could affect the willingness of *other* venire members (who do take precautions seriously and/or may be at greater risk for COVID-related illness) to carry out their duty as jurors. It would have the disruptive effect of tainting the decision-making of other jurors, once empaneled, who fear being around a juror indoors for any extended time-period. *See Muhammad*, 2021 U.S. Dist. LEXIS 187578, at *8. Even a juror who may be disgruntled at

7

COVID protocols could have an adverse effect on other jurors and disrupt the entirety of the trial proceedings. *See United States v. Shelton*, 669 F.2d 446, 460 (7th Cir. 1982) (upholding removal of a juror because the district court was "concerned about the effect of a potentially impatient and disgruntled juror on the jury in the context of a lengthy trial"); *see also United States v. Lloyd*, No. 17-cr-119, 2021 WL 3908434, at *7 (W.D.N.Y. Sept. 1, 2021) ("The COVID-19 safety precautions that were followed during the trial were cumbersome, but they did not compromise the fairness of the trial or the jury's deliberations and verdicts.").[3]

This Court's authority to excuse jurors for cause is at its apex when issues of health and safety are at stake. This Court should not hesitate to exercise that power and strike any prospective juror who indicates a refusal or unwillingness to abide by the Court's Health Precautions Order.

### III. THE COURT SHOULD EXCUSE ANY PROSPECTIVE JURORS WHO HOLD EXTREME VIEWS ABOUT "ANTIFA" AND ITS MEMBERS

A prospective juror may be dismissed for cause if he harbors bias, which is "'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Porter v. Gilmore*, 479 F. Supp. 3d 252, 284 (E.D. Va. Aug. 14, 2020) (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). "'[A] juror is not impartial if his experiences, opinions, predispositions, biases, prejudices, interests, or relationships would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions under oath." *Id.* at 285 (quoting *United States v. Sampson*, 820 F. Supp. 2d 151, 162 (D. Mass. 2011)).

Defendants have repeatedly tried to inject "Antifa" into this litigation. In particular, they have tried to pin the blame of their violent conspiracy on "Antifa"; they have accused Plaintiffs of

---

[3] For example, if a juror (who is unwilling to follow the Court's COVID-19 rules) refuses to wear a mask, even if for just part of the day, it will require the Court to interrupt the proceedings to instruct the juror to wear the mask. Not only would that be incredibly disruptive to the proceedings, it would risk embarrassing the juror, alienating him from his fellow jury members, and fostering resentment that he has to follow rules with which he disagrees.

being members of or associated with "Antifa"; and they have alleged that the violence they perpetrated at Unite the Right was carried out in anticipation of and response to "Antifa" violence. Defs.' Mot. for Summ. J., ECF No. 823 at 44 ("After learning that Antifa adherents planned to use violence to disrupt the Unite the Right rally, movant-defendants prepared to defend themselves and others out of a concern for safety."); *id.* at 45 (arguing that Defendants did not target a protected class because "violence—such as that plotted by Antifa adherents and used by oppositionists on August 12th—is not unique to any class"); Mem. in Supp. of Mot. to Dismiss of Def. Richard Spencer, ECF No. 209 at 17 ("[T]he presence of firearms at the United the Right rally must be understood in its proper context . . . Violence and threats thereof have begun to appear – as well as resultant efforts at self-protection – at events controversial political events associated with Spencer due to the rise of so-called 'Antifa'"); Movant-Defs.' Reply to Pls. Resp. to Mot. for Summ. J., ECF No. 878 at 9 ("Movant-defendants simply argue that Plaintiffs have failed to provide evidence that speech and violence directed at Antifa is racially, rather than politically, motivated."); Def. Christopher Cantwell's Mot. in Limine, ECF No. 1066 at 1 ("Plaintiffs are a group of members, supporters, or affiliates of the Antifa domestic terror organization ….").

In their jury questionnaires, several prospective jurors have demonstrated *extreme* bias—if not outright animosity towards—"Antifa" and its members. For example, many prospective jurors referred to members of "Antifa" as "useless criminals" and "terrorists." Tr. of Pretrial Hr'g at 15-16, 24, *Sines v. Kessler*, No. 3:17-cv-72 (W.D. Va. Oct. 22, 2021). Such predetermined and highly prejudicial views towards "Antifa" should be disqualifying in this case, for they indicate that the prospective juror is incapable of "be[ing] fair and impartial and decid[ing] the case on the facts and law presented." *United States v. Peterson*, 378 F. App'x 335, 337 (4th Cir. 2010); *see Godfrey v. Faulkner*, No. 7:13-cv-454, Final Jury Instructions, ECF No. 234 at 2 (W.D. Va. July

9

31, 2015) (Moon, J.) (instructing jurors to "perform [their duties as jurors] without bias or prejudice as to any party").

As a result of Defendants' repeated invocation of "Antifa" (and their anticipated attempt to connect Plaintiffs to that group), a juror's strong preconceived biases directly relating to that defense will prevent them from considering the case in a fair and impartial manner. Courts often excuse jurors for cause where (as here) they harbor prejudices relating to a central issue in the case. *Cf. United States v. Nell*, 526 F.2d 1223, 1230 (5th Cir. 1976) (district court should have dismissed a juror for cause where the defendant was on trial for embezzling union funds and the juror had expressed strong anti-union animus); *United States v. Abdulla*, 632 F. App'x 98, 100 (4th Cir. 2015) (upholding trial court's decision to strike a juror who believed that food stamp fraud was an everyday occurrence in case against defendants charged with food stamp fraud because even though "juror stated she could be fair and impartial, there was a real possibility of partiality based on her preconceived impression and opinion"). If jurors enter this case with the extreme beliefs, such as that Antifa members are "useless criminals" and "terrorists," they will be impeded from deciding the central issue in this case—responsibility for the violence on August 11 and 12—because they are likely to make determinations that are crucial to the outcome of this case based on their preexisting biases, rather than "decid[ing] the case solely on the evidence before [them]." *Porter*, 479 F. Supp. 3d at 284.

In addition, any extreme bias against Antifa will impermissibly taint the juror's perception of Plaintiffs. *See, e.g.*, Def. Christopher Cantwell's Mot. in Limine, ECF No. 1066 at 1 ("Plaintiffs are a group of members, supporters, or affiliates of the Antifa domestic terror organization …."); Mem. in Supp. of Mot. to Dismiss of Def. Richard Spencer, ECF No. 209 at 20 (suggesting that Plaintiffs, who were surrounded at the Thomas Jefferson statue on August 11, 2020, were "antifa").

To be sure, Plaintiffs are not members of Antifa. But that is immaterial given Defendants' anticipated assertion (borne out by their conduct throughout this litigation) that Plaintiffs are members of or associated with Antifa.

Courts regularly excuse jurors for cause under similar circumstances. For example, jurors who have preconceived prejudices against people who have been convicted of certain crimes have been dismissed from juries where the defendant is on trial for allegedly committing the same or similar crime. *Torres*, 128 F.3d at 44-45 (2d Cir. 1997) (upholding district court's decision to strike a juror from sitting on a case alleging a heroin-trafficking scheme where juror said he thinks drug dealers are "the worst people on earth and [he] wouldn't believe them no matter what they said"); *United States v. Shepard*, 739 F.3d 286, 293 (6th Cir. 2014) (trial court abused its discretion when it refused to strike a juror in a child pornography case because, in part, the juror stated that "child pornography was evidence of the 'lowest part of humanity' and is 'just disturbing'"). The same should hold true here. Any prospective juror with an extreme bias against Antifa cannot be expected to act as an impartial factfinder in a trial where Plaintiffs are being accused by Defendants of being "Antifa." *Porter*, 479 F. Supp. 3d at 284 (citing *Torres*, 128 F.3d at 43); *see also United States v. Paradies*, 98 F.3d 1266, 1279 (11th Cir. 1996), *as amended* (Nov. 6, 1996) (affirming a district court who dismissed potential jurors who professed, in their questionnaire, "that they were badly prejudiced against one side").

For these reasons, the Court should exclude any prospective jurors who express extreme views regarding "Antifa" and its members.

## CONCLUSION

The Court should excuse for cause: (1) any jurors who make clear in their questionnaire that they refuse to follow the law, (2) any jurors who make clear in their questionnaire that they

11

refuse to follow COVID rules and protocols, and (3) any jurors who make clear in their questionnaire that they harbor extreme views on "Antifa" and its members.

Date: October 24, 2021                               Respectfully submitted,

*/s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

*Counsel for Plaintiffs*

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Michael L. Bloch (pro hac vice)
Raymond P. Tolentino (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
Jonathan R. Kay (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
mbloch@kaplanhecker.com
rtolentino@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
jkay@kaplanhecker.com

Karen L. Dunn (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Giovanni Sanchez (*pro hac vice*)
Matteo Godi (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
gsanchez@paulweiss.com
mgodi@paulweiss.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
Agbeko Petty (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com
apetty@paulweiss.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahil@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com

Caitlin B. Munley (*pro hac vice*)
Samantha A Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
Daniel Philip Roy, III (*pro hac vice*)
Allegra Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary Anderson (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com
droy@cooley.com
aflamm@cooley.com
gseidita@cooley.com
kjanderson@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2021, I served the following via electronic mail:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party and Matthew Heimbach*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, Nationalist Front, Matthew Parrott, Traditionalist Worker Party and Matthew Heimbach*

I hereby certify that on October 24**,** 2021, I also served the following via mail and electronic mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Christopher Cantwell
Christopher Cantwell 00991-509
Central Virginia Regional Jail
13021 James Madison Hwy
Orange, VA 22960

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

*/s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP

Counsel for Plaintiffs

16