Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

```
 1                    UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF VIRGINIA
 2                      CHARLOTTESVILLE DIVISION


 3   *************************************************************

 4    ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                                  OCTOBER 25, 2021, 9:25 AM
 5                                JURY TRIAL, DAY 1
             Plaintiffs,
 6   vs.

 7                                Before:
                                  HONORABLE NORMAN K. MOON
 8   JASON KESSLER, ET AL.,       UNITED STATES DISTRICT JUDGE
                                  WESTERN DISTRICT OF VIRGINIA
 9
             Defendants.
10
     *************************************************************
11
     APPEARANCES:
12

13   For the Plaintiffs:      ALAN LEVINE, ESQUIRE
                              COOLEY LLP
14                            1114 Avenue of the Americas, 46th
                              Floor
15                            New York, NY  10036
                              212.479.6260
16
                              DAVID E. MILLS, ESQUIRE
17                            COOLEY LLP
                              1299 Pennsylvania Avenue, NW,
18                            Suite  700
                              Washington, DC  20004
19                            202.842.7800

20

21

22   Court Reporter:   Lisa M. Blair, RPR, RMR, CRR, FOCR
                        255 West Main Street, Suite 304
23                      Charlottesville, Virginia  22902
                        434.296.9284
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25   TRANSCRIPT PRODUCED BY COMPUTER.
```

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   APPEARANCES CONTINUED:

2   For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                 ROBERTA A. KAPLAN, ESQUIRE
3                                RAYMOND P. TOLENTINO, ESQUIRE
                                 Kaplan Hecker & Fink LLP
4                                350 Fifth Avenue, Suite 7110
                                 New York, NY  10118
5                                212.763.0883

6                                KAREN L. DUNN, ESQUIRE
                                 WILLIAM A. ISAACSON, ESQUIRE
7                                JESSICA E. PHILLIPS, ESQUIRE
                                 GIOVANNI SANCHEZ, ESQUIRE
8                                Paul, Weiss, Rifkind, Wharton &
                                 Garrison LLP
9                                2001 K Street, NW
                                 Washington, DC  20006
10                               202.223.7300

11
    For the Defendants:          DAVID L. CAMPBELL, ESQUIRE
12                               Duane, Hauck, Davis, Gravatt &
                                 Campbell, P.C.
13                               100 West Franklin Street, Suite 100
                                 Richmond, VA  23220
14                               804.644.7400

15                               CHRISTOPHER CANTWELL, PRO SE
                                 #00991-509
16                               USP Marion
                                 4500 Prison Road, PO Box 2000
17                               Marion, IL  62959

18                               BRYAN J. JONES, ESQUIRE
                                 Bryan J. Jones, Attorney at law
19                               106 W. South Street, Suite 211
                                 Charlottesville, VA  22902
20                               540.623.6952

21                               JAMES E. KOLENICH, ESQUIRE
                                 Kolenich Law Office
22                               9435 Waterstone Blvd., Suite 140
                                 Cincinnati, OH  45249
23                               513.444.2150

24

25

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021


 1  APPEARANCES CONTINUED:

 2  For the Defendant:          WILLIAM E. REBROOK, IV, ESQUIRE
                                The ReBrook Law Office
 3                              6013 Clerkenwell Court
                                Burke, VA  22015
 4                              571.215.9006

 5                              JOSHUA SMITH, ESQUIRE
                                Smith LLC
 6                              807 Crane Avenue
                                Pittsburgh, PA  15216
 7                              917.567.3168

 8                              RICHARD SPENCER, PRO SE
                                P.O. Box 1676
 9                              Whitefish, MT  59937

10  ALSO PRESENT:

11  Renato Stabile, Esq.

12  Faye Honig

13

14

15

16

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  (Proceedings commenced, 9:25 a.m.)

2          THE COURT:  All right.  Good morning.  I'm going to

3  remove my mask when I speak, and anyone else who is speaking

4  may remove theirs.

5          If you would call the case, please.

6          THE CLERK:  Yes, Your Honor.  This is Civil Action

7  Number 3:17-CV-72, Elizabeth Sines and others versus Jason

8  Kessler and others.

9          THE COURT:  Are the plaintiffs ready?

10          MS. DUNN:  We are, Your Honor.

11          THE COURT:  Defendants ready?

12          MR. KOLENICH:  Yes, Your Honor.

13          MR. JONES:  Yes, Your Honor.

14          THE COURT:  All right.  Before we begin, I will

15  remind everyone that under Standing Order 2020-12 and 2013-8,

16  the Court's prohibition against recording and broadcasting

17  court proceedings remains in force.  Attorneys, parties, and

18  their staff and members of the public or press accessing this

19  proceeding today may not record or broadcast it.  That means no

20  photography, no using of video or audio recording device, no

21  rebroadcasting, live streaming or otherwise disseminating any

22  live or recorded video or audio of this proceeding.

23          Given the number of parties and counsel in this case,

24  I will ask any counsel or *pro se* litigant who is speaking to

25  first state who they are, and if they are counsel, who they

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   represent before speaking.  We have litigants and counsel in

2   the courtroom, and we may have some who are accessing this

3   trial remotely by videoconference.

4           First I will ask plaintiffs' counsel who will be

5   speaking today to note their appearance -- not all day, but on

6   the Cantwell matter.

7           MS. KAPLAN:  Your Honor, Roberta Kaplan for

8   plaintiffs from Kaplan Hecker & Fink.  I will be speaking on

9   the Cantwell matter.

10          THE COURT:  Defense counsel, who in the courtroom?

11  If you choose to speak, identify yourself at the time.

12          Next, any defense counsel who are participating

13  remotely by Zoom or videoconference, if you speak, identify

14  yourself at the time.

15          Lastly, do we have any defendants representing

16  themselves *pro se* in the courtroom?  Mr. Cantwell?

17          MR. CANTWELL:  We do.  Christopher Cantwell, *pro se*.

18          MR. SPENCER:  Also Mr. Spencer, *pro se*.

19          THE COURT:  For those participating remotely, you

20  will need to identify yourself before you say anything.  You

21  should plan on messaging, flagging the clerk responsible for

22  the remote proceedings, Ms. Moody, who will be able to alert

23  the Court if you have something to say.

24          Finally, one brief statement about the Court's

25  COVID-19 precautions.  I will go into more detail with the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   prospective jurors so they are aware of the steps the Court has

2   taken to mitigate any risk of COVID-19.  But for now we'll say

3   everyone should wear a mask over their nose and mouth when they

4   are not speaking.  If you are speaking on the record, you may

5   need to temporarily remove your mask or speak up to the

6   microphone so you can be heard.

7          Stay socially distant whenever possible throughout

8   the courthouse.  Read and familiarize yourself with the Court's

9   COVID-19 health precautions order.

10          We have at least one substantive issue that arose

11  over the weekend to take up before the prospective jurors are

12  called in.  I will give everyone the chance to be heard, but

13  let me lay out the issue first.

14          Plaintiffs have filed a letter requesting the Court

15  sever plaintiffs' claims against Mr. Cantwell from their claims

16  against the other defendants in this case for a separate trial

17  pursuant to 42 of the Federal Rules of Civil Procedure.  They

18  cite Mr. Cantwell's continuing issue about having his lack of

19  access to documents and proceeding -- and pleadings in this

20  case as a result of his incarceration, including those stated

21  on Friday, as a basis for their request.

22          I have considered plaintiffs' letter.  I have also

23  considered Mr. Kolenich's response on behalf of Mr. Kessler and

24  Mr. Damigo and Identity Evropa, which opposes severance.  And

25  late last night Defendants Heimbach, Parrott and Traditionalist

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   Worker Party filed in opposition.

2          The Court has been informed Mr. Cantwell has at least

3   read a copy of the plaintiffs' letter on Saturday.

4          Mr. Cantwell, let me first confirm, is that correct?

5   Have you seen the papers?

6          MR. CANTWELL:  I have seen the plaintiffs' second

7   letter to Your Honor, and I've also seen Mr. Kolenich's letter.

8   I have not seen Mr. Smith's letter yet.

9          THE COURT:  What is your position on this, since

10  you're principally involved?

11         MR. CANTWELL:  In brief, I can say I oppose it.  I

12  have a prepared statement that I can read, if you like.

13         THE COURT:  All right.  You may.

14         MR. CANTWELL:  The plaintiffs called the Central

15  Virginia Regional Jail on Saturday to summon me to call them.

16  I did so and Mr. Bloch read his amended letter to me out loud,

17  as well as Mr. Kolenich's letter in opposition, and as noted in

18  an accompanying declaration which I intend to give to the clerk

19  before we're done here -- I'll also note -- it's not written

20  down here, but I was delivered copies of each of those letters

21  by the US marshals last night at the CVRJ.

22         I myself had considered filing such a motion, as I

23  disclosed to Mr. Bloch in a subsequent phone call.  But as this

24  Court is certainly aware, I ultimately decided against it, as

25  that was not amongst the motions I filed.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          On the one hand, plaintiffs raise a very legitimate

2    point, that their conduct and that of their good friends in the

3    United States government have given me ample grounds for appeal

4    in the unlikely event that they can con 12 registered voters

5    into believing their falsehoods.  On the other hand, words and

6    phrases such as "untimely" and "11th hour" seem to have found

7    their way into many of plaintiffs' recent filings.  And one is

8    left with the distinct impression that they, to borrow a

9    cliche, cry out in pain as they strike you.

10          I move this Court to sanction the plaintiffs.  In

11   April of 2020 --

12          THE COURT:  Mr. Cantwell, there's one issue before

13   the Court right now.  Nothing else.  Do you want to be severed

14   or not?

15          MR. CANTWELL:  I do not.

16          THE COURT:  Okay.  That being said, what is the

17   plaintiffs' position?

18          MS. KAPLAN:  Your Honor, may I go to the podium?

19          THE COURT:  Yes.

20          MS. KAPLAN:  Your Honor, I'll be brief.  This is not

21   about any jury questionnaire, juror questionnaires that have

22   come in, as I think Mr. Smith says in his papers.  It's not

23   about any newfound empathy for Mr. Cantwell, especially from

24   me, Your Honor.  But there does appear -- what prompted us to

25   do this is that there does appear to be an issue with respect

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    to Mr. Cantwell getting pleadings in this case, exhibits in

2    this case, documents in this case.  And there are going to be

3    filings throughout the trial in real time.

4          And we proposed what we did because we did not want

5    to complicate an issue in this case with a due process argument

6    by Mr. Cantwell -- not that we agree with that, but one he

7    would surely make.  And due process of course does attach to

8    civil litigation.

9          As to the question, Your Honor, as to why we're

10   raising it now, Mr. Cantwell, as Your Honor is well aware, has

11   filed motion after motion after motion about this.  Just to

12   give you a couple of examples, ECF 1301, ECF 1303, ECF 1084,

13   ECF 1099, 1162, and 1255.

14         The reason why we've done it just now is because we

15   were here together on Friday for the first time with

16   Mr. Cantwell and we saw with our own eyes how Mr. Cantwell was

17   given documents such as exhibit lists and other things like

18   that and he had never seen them before.  That's what prompted

19   us to do this.  It's not something we want to do.  We're trying

20   to balance two very competing and important values:  One,

21   obviously, the need to go forward with this trial, given where

22   we are, given the desire, and I would say, Your Honor, right

23   for our plaintiffs to have this case tried after four years.

24   On the other hand, Mr. Cantwell's legitimate rights to have

25   documents in real time or in as real time as possible as he can

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  to prepare.

2           I think most of it -- I don't want to get involved in

3  the blame game here.  You know, obviously there have been

4  problems with the prison system.  I think those have been

5  exacerbated by his travel, from what we can see.  But that's

6  the only reason we've done this, Your Honor.  We were just

7  trying to come up with the best possible solution under the

8  circumstances.

9           I will say that as a matter of law, I believe, if

10 Mr. Cantwell is now saying he does not want severance, we

11 believe that he has then thereby waived any due process

12 argument for appeal.

13          I don't think there's anything further, Your Honor,

14 unless you have questions.

15          THE COURT:  Mr. Cantwell, the Court is willing to

16 sever the case and allow you the time you want for your case.

17 I will not continue any other case.  We're going forward with

18 this case today as set.  I am willing to sever this case as to

19 you.

20          Now, to make it perfectly clear:  You're asking the

21 Court not to sever you.  You prefer to stay in this case as it

22 is?

23          MR. CANTWELL:  Given the choice between those two

24 things, I'll stay in the case as it is.  I don't prefer either

25 of those things, but given that binary choice, we'll go

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

```
 1  forward.

 2            THE COURT:  Okay.  I will deny the motion.

 3            Do we have a jury ready yet?

 4            THE CLERK:  I believe we have the first group.

 5            THE COURT:  Let me see if I need to read anything

 6  first.

 7            MR. CANTWELL:  May I please hand some documents to

 8  the clerk to be added to the record?

 9            THE COURT:  You may.

10            MS. KAPLAN:  Would it be possible if we could just

11  look at them before the Court gets them so we don't have to

12  wait?

13            THE COURT:  Excuse me.

14            MS. KAPLAN:  I apologize, Your Honor.

15            THE COURT:  Go ahead.

16            MS. KAPLAN:  I was just wondering if we could see

17  Mr. Cantwell's filings before they file them, because there's

18  always a delay.  Just if we could just glance at them very

19  quickly.

20            THE COURT:  Well, the clerk -- you may look at them

21  now.

22            MS. KAPLAN:  May I approach, Your Honor?

23            THE COURT:  You may, yes.

24            (Pause.)

25            We're going to have a couple of minutes before the
```

12

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   jury comes in.  Are there any other issues that we need to take

2   up at this time?

3           MS. DUNN:  Nothing from the plaintiffs, Your Honor.

4           THE COURT:  Heidi, I'm wondering, should we take a

5   break?

6           THE CLERK:  Yes.  Do you mind if we take a break?

7           THE COURT:  I don't want to have the jury coming --

8           THE CLERK:  I think that would be a good idea, if we

9   take a quick break.  I think we have some audio problems, too.

10          THE COURT:  We're going to just be in recess a few

11  minutes until the jury comes.  Don't go far.  I want everyone

12  in the courtroom when the jury arrives.

13          (Recess.)

14          THE COURT:  These are questionnaires that -- some of

15  the jurors who did not file them earlier filled them out this

16  morning.

17          THE CLERK:  Actually, we did not have any more.  One

18  gentleman who did not have a questionnaire, he did say he

19  filled one out and would not fill out one when he came in

20  today, but we don't appear to have it.

21          THE COURT:  Okay.

22          THE CLERK:  That's Number 158.

23          THE COURT:  All right.  While that's going on, I'm

24  going to just tell you all the Court intends to inform the

25  panel as a whole about the COVID-19 health precautions the

13

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   Court has taken so that the list of measures doesn't need to be

2   repeated dozens of times.  To be clear, the Court will

3   separately take up specific questions regarding COVID-19 issues

4   on an individual basis.

5           Counsel from both sides should be aware at this point

6   that the Court will ask counsel representing parties to state

7   the names of their prospective witnesses to see if any members

8   of the panel knows any of the prospective witnesses.  I'll

9   start with plaintiff and then defense counsel.

10          Mr. Spencer, if you have any witness list I will ask

11  you to read the name of that list, too.  If you don't have such

12  a list, that's fine.

13          I want to be clear about this:  While the Court will

14  be asking counsel and *pro se* defendants to read their witness

15  list, then if any prospective juror says they know any of your

16  witnesses, the Court will conduct any follow-up.  This won't be

17  a time for making any statements.  The Court simply needs

18  counsel to read their prospective witnesses.  That's about the

19  extent of the collective voir dire.

20          Then the Court intends to individually examine each

21  prospective juror.  The jurors will be called in one at a time.

22  Prospective jurors will only be identified by their juror

23  number, not name.  During the jury selection process, the Court

24  is conducting the questioning itself.  Again, counsel and the

25  parties will not be addressing the prospective jurors directly.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1       After the Court has finished any questions it may

2   have, the parties may submit questions for the Court.  For some

3   prospective jurors, the Court may have a number of questions;

4   for others, few.  Those in the courtroom may submit any further

5   requested questions in paper form, but put your name and who

6   you represent on the paper and hand the questions in on this

7   side.  The plaintiffs hand it to the marshal, and over here,

8   you can hand it to one of the clerks on the end and they'll

9   pass it up to me.  I may or may not ask the question.

10      If there are *pro se* defendants or defense counsel who

11  could not be present in the courtroom, the Court will ask if

12  there are any other questions for prospective jurors by such

13  persons on Zoom.  If you do, please identify yourself and say

14  you wish to submit a question to the Court for the Court's

15  consideration.  Do not say the question.  Just flag that you

16  have one.  The Court will direct the prospective juror leave

17  the courtroom -- the Court may direct the prospective juror to

18  leave the courtroom temporarily and we'll alert you when you

19  may pose your question.  For those on Zoom, you may also flag

20  or message Ms. Moody, the clerk, if you have questions.  She

21  will alert the Court that you have a question.

22      Remember, jurors are referred to by juror number.

23  See this Court's order of October 12, 2021, Docket 1204.  Given

24  the highly unlikely event that discussion of personal

25  identifying information about the prospective juror must be

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    addressed, you must flag that fact for the Court, but do not

2    divulge anything else.  The Court will address the relevant

3    inquiry in a sealed format only accessible to the parties and

4    counsel of record.

5            After the Court finishes conducting individual voir

6    dire with each of the prospective jurors for the first panel,

7    the Court will then, outside the presence of the jurors, take

8    up strikes for cause for any members of the first panel.  The

9    Court will go down the list of prospective jurors, ask if there

10   are any asserted strikes for cause.  If the Court will -- hears

11   none for an individual juror, the Court will proceed to the

12   next prospective juror.  If the Court hears an asserted strike

13   for cause, that party so states succinctly the basis therefor,

14   both the grounds for strike and any objectionable answer in the

15   question they have in voir dire.  Then the Court will hear any

16   opposition to the strike and then make a ruling.

17           Upon conclusion of the strikes for cause for the

18   panel, the Court will then go through the peremptory strikes

19   procedure discussed at the final pretrial conference.

20           All right.  We can bring the jury in now.

21           MR. STABILE:  Your Honor, first let me introduce

22   myself.  I'm Renato Stabile.  Your Honor just granted my

23   pro hac vice application.  I'm going to be assisting the

24   plaintiffs with jury selection.  So thank you for having me.

25   But just one housekeeping matter, if I may.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Take your mask down.

2          MR. STABILE:  One housekeeping matter, if I may, Your

3   Honor.  I'm sure, as Your Honor appreciates in reviewing the

4   questionnaires, some jurors have particularly strong views

5   about the issues in this case, sometimes even parties that are

6   involved in this case.  When it comes to the potential

7   follow-up questions about those types of more sensitive issues,

8   I'm just inquiring as to the procedure for if we believe the

9   juror should not be questioned in front of everybody else.

10         THE COURT:  Well, no juror is going to be

11   individually questioned in front of everybody else.  The jurors

12   will be brought in and sit in the jury box individually.

13         MR. STABILE:  But if a juror is uncomfortable

14   speaking about a particular issue, I'm just inquiring as to

15   what the procedure will be if they ask to discuss --

16         THE COURT:  Well, if they're uncomfortable, they're

17   uncomfortable.  I mean, if they refuse to answer, we'll deal

18   with that, but I don't know how to make people comfortable.

19         MR. STABILE:  Well, the suggestion from the

20   plaintiffs would be that we do question jurors individually

21   when it comes to --

22         THE COURT:  Well, that's what I just said we're going

23   to do.

24         MR. STABILE:  Oh, okay.  I'm sorry.  I misunderstood.

25         THE COURT:  That's why I take my mask off.  I hope

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   I'm clearer.  Maybe I need to put it back on.

2           When we get to the individual juror questioning, I'm

3   going to have my judicial assistant come up and hand me the

4   papers for that particular juror so I won't be fumbling through

5   everything.

6           MR. STABILE:  Your Honor, can we flag for you

7   questions that we believe are sensitive and require --

8           THE COURT:  Right.  And you can pass them up before

9   the jury gets here, if you have them.

10          MR. STABILE:  Thank you.

11  **(Jury in, 10:01 a.m.)**

12          THE CLERK:  Dan, are they bringing them in and

13  seating them by number?  I don't think they are.

14          THE COURT:  The jurors should be seated by number.

15          THE CLERK:  Mo, they need to be seated by their

16  number.

17          THE COURT:  Are the numbers in order?

18          THE CLERK:  Yes, by their badge number.  So 150

19  should be in the front left corner.  150 up front, then 151.

20          THE COURT:  The clerk will let you know where your

21  seat is.

22          All right.  The clerk will call the jury.

23          THE CLERK:  Ladies and gentlemen, this is Civil

24  Action Number 3:17-cv-00072, Elizabeth Sines and others versus

25  Jason Kessler and others.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    I'm now going to call the roll, which we basically

2 just did.  But as I call your number, please stand and remain

3 standing until I call the next number.

4    150, 151 -- you can sit back down, sir -- 153, 158,

5 159, 160, 164, 166, 168, 172, 176, and 177.

6    Thank you.  And once again, ladies and gentlemen -- I

7 do apologize -- if you would please stand and be sworn.

8    Please raise your hands.

9    Do you and each of you solemnly swear that you will

10 make true questions to such -- true answers to such questions

11 as may be propounded to you testing your qualifications to

12 serve as a juror in this Court?

13    You do?

14    You may be seated.

15    Ladies and gentlemen, in order to serve as a juror in

16 this Court, you must be a citizen of the United States who has

17 attained the age of 18 years and has resided in the Western

18 District of Virginia for one year.  You must not be under

19 charge or have been convicted in any court, state or federal,

20 of a crime punishable by imprisonment for a period of more than

21 one year, unless your civil rights have been restored.  You

22 must be able to read, write, and understand the English

23 language and must be able, both physically and mentally, to

24 render efficient jury service.  Do you and each of you qualify

25 on these grounds?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        You do.

2        I will now ask you several questions concerning the

3   case which is to be tried today for the purpose of ascertaining

4   whether you can hear the facts fairly and impartially and

5   render a just verdict.

6        The plaintiffs in this case are Elizabeth Sines, Seth

7   Wispelwey, Marissa Blair, April Muniz, Marcus Martin, John Doe,

8   Natalie Romero, Chelsea Alvarado, and Thomas Baker.  The

9   plaintiffs are represented by counsel, seated to my right.

10        Counsel will now identify themselves by name and firm

11   for the record.

12        MS. DUNN:  Good morning.  Karen Dunn from Paul Weiss

13   for the plaintiffs.

14        MR. STABILE:  Good morning.  Renato Stabile for the

15   plaintiffs.

16        THE CLERK:  Counsel, could you also identify the city

17   that you're --

18        MR. STABILE:  Oh.  New York.

19        MS. DUNN:  Apologies.  Karen Dunn from Chevy Chase,

20   Maryland.

21        MR. ISAACSON:  Bill Isaacson from Washington, D.C.

22        MS. KAPLAN:  Roberta Kaplan for the plaintiffs from

23   Kaplan Hecker & Fink from New York City.

24        MR. MILLS:  David Mills, Cooley.  I'm in Bethesda,

25   Maryland.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MR. LEVINE:  Alan Levine from Cooley, from New York

2     City.

3          MS. PHILLIPS:  Jessica Phillips from Paul Weiss,

4     Arlington, Virginia.

5          MR. BLOCH:  Michael Bloch from Kaplan Hecker & Fink,

6     New York City.

7          MS. HONIG:  Faye Honig, New York City.

8          THE CLERK:  The defendants in this case are Jason

9     Kessler, Richard Spencer, Christopher Cantwell, James Alex

10    Fields, Jr., Vanguard America, Andrew Anglin, Moonbase

11    Holdings, LLC, Robert "Azzmador" Ray, Nathan Damigo, Elliott

12    Kline, Identity Evropa, Matthew Heimbach, Matthew Parrott,

13    Traditionalist Worker Party, Michael Hill, Michael Tubbs,

14    League of the South, Jeff Schoep, National Socialist Movement,

15    Nationalist Front, Augustus Sol Invictus, Fraternal Order of

16    the Alt-Knights, Loyal White Knights of the Ku Klux Klan, and

17    East Coast Knights of the Ku Klux Klan.

18          Defendants are appearing both with counsel or on

19    their own behalf.  They are seated to my left or appearing by

20    Zoom.

21          Counsel and defendants will now identify themselves

22    for the record.

23          MR. KOLENICH:  Jim Kolenich, Kolenich Law Office,

24    Cincinnati, Ohio.

25          THE CLERK:  And who are you representing,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   Mr. Kolenich?

2          MR. KOLENICH:  Representing Jason Kessler, Nathan

3   Damigo, and Identity Evropa.

4          MR. SPENCER:  I am Richard Spencer.  I am on my own

5   behalf, and I am from Whitefish, Montana.

6          MR. SMITH:  Joshua Smith, Smith LLC, Pittsburgh,

7   Pennsylvania.  I represent David Matthew Parrott, Matthew

8   Heimbach, and the Traditionalist Worker Party.

9          MR. JONES:  Bryan Jones, Charlottesville, Virginia.

10  I represent Michael Hill, Michael Tubbs, and the League of the

11  South.

12         MR. CAMPBELL:  David Campbell.  I represent James

13  Fields.  From Richmond, Virginia.

14         MR. REBROOK:  Edward ReBrook of Burke, Virginia.  I

15  represent the National Socialist Movement, Jeff Schoep, and the

16  Nationalist Front, although I don't know if that's still a

17  thing.

18         MR. CANTWELL:  My name is Christopher Cantwell.  I'm

19  proceeding *pro se*.

20         THE CLERK:  The purpose of my mentioning this is to

21  ask each of you whether you are related by blood or marriage to

22  the plaintiffs, defendants, or any of the attorneys in this

23  action.  If you are, please state so to the judge.

24         You are not.

25         Your Honor, do you have additional questions?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      THE COURT:  Yes.

2          Members of the jury, as you know, everyone is

3  required to keep their mask on in court, except if you're

4  speaking.  And I'm removing my mask.  Hopefully it will be

5  better to understand me and anyone else.  If you have to speak,

6  you may remove your mask while speaking, and the attorneys and

7  other parties may also.

8          Before I ask any further questions, I want to just

9  say -- give you a statement about the steps the Court has

10 taken, and is taking, to minimize the risk of the spread of

11 COVID-19.

12         First, the Standing Orders of this Court require

13 everyone to wear a mask that covers their nose and mouth while

14 in public areas in the courthouse, unless a court official

15 specifically directs otherwise.  That applies to everyone,

16 whether vaccinated or unvaccinated.

17         Second, access to the courthouse has been limited to

18 persons involved in this case.  That includes court staff,

19 litigants, attorneys, witnesses, and limited media.

20         Third, the Court has ordered all persons in the

21 courtroom to practice social distancing, except counsel,

22 litigants, and court staff.

23         Fourth, pursuant to the Court's Standing Orders, all

24 court employees, including judges, chambers staff, and staff of

25 the clerk's office, must either be vaccinated or conduct a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    COVID-19 test at least weekly.

2              Fifth, this Court has specifically ordered all

3    litigants, lawyers, witnesses, and court staff in this case to

4    attest before coming into the courthouse that they are either

5    vaccinated or have tested negative within three days of their

6    appearance.  They will have a continuing duty to do so

7    throughout the trial, if they are appearing based on negative

8    COVID tests.  If there are any witnesses, parties, or attorneys

9    who can't meet those rules, they will testify by Zoom.

10             Sixth, the Court has ordered extra cleaning of touch

11   points, frequently touched surfaces, and bathrooms during this

12   trial.

13             And lastly, specifically for jurors, the Court will

14   require all jurors, of which the Court expects there will be

15   12, to always be masked.  Jurors will also be socially

16   distanced in the gallery, as you are now.

17             I really believe that, probably, during this trial,

18   you will be as safe as you would be anywhere else in the

19   community from having a problem with the COVID-19 virus.  I

20   know we are being much more careful than if one shops or

21   attends church or other events in the community.  They would be

22   much safer here than about anywhere else.

23             Before we begin the process of juror selection, I

24   will give you a general overview of this case so you know what

25   it is about and can better answer my questions.

24

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

 1          This is a civil lawsuit brought by a number of

 2   plaintiffs against a number of defendants, including

 3   individuals and organizations, based on events that occurred in

 4   Charlottesville, Virginia in August 2017.  The plaintiffs in

 5   this case claim the defendants and others conspired to commit

 6   racially motivated violence at an event the defendants called

 7   Unite the Right, which was held in Charlottesville on August 11

 8   and 12, 2017.

 9          Plaintiffs allege that the defendants helped to plan,

10   promote, and carry out racially motivated violent acts during

11   that event, and in so doing, caused plaintiffs' physical,

12   emotional, and monetary harm.  Such acts include a torch march

13   on August 11 and various alleged acts of violence on August 12,

14   including a car attack that -- a car that drove through a large

15   crowd of people, injuring seven of the nine plaintiffs in this

16   case.

17          Defendants deny that they conspired with anyone to

18   commit any violence or that they are responsible for any injury

19   or damages suffered by plaintiffs.

20          If you are selected as a juror in this case, you will

21   be asked to decide whether the plaintiffs proved that the

22   defendants engaged in a conspiracy to commit racially violence

23   and harm plaintiffs as a result.

24          Plaintiffs have also asserted under federal -- other

25   federal and state law claims against the defendants.  Later, I

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  will explain the elements of each of the plaintiffs' claims in

2  greater detail to those of you who serve on the jury.

3          It is estimated that this case will last four weeks,

4  including this week.  The trial will take place from Monday

5  through Friday, with the final scheduled date being Friday,

6  November 19.  Court will start at 9 o'clock, and it's my custom

7  to do everything in my power to stop by 5:00 each day so that

8  you will know -- you can count on when you'll be leaving and

9  getting home.

10          The clerk has asked you some questions concerning

11  your potential service as jurors in this case.  This process of

12  questioning jurors is referred to as voir dire.  There are

13  several questions -- reasons for these questions.

14          First, it may be that, although otherwise qualified,

15  some of you may not be eligible to sit in this particular case

16  for any variety of reasons.  We need to ask questions to

17  determine your eligibility.

18          Also, under the rules that govern jury selection in

19  this Court and others, the parties play a role in choosing the

20  jury that is to try their case.  That is why we have more of

21  you here than we really need to sit on the jury:  Under the

22  rules, the parties are entitled to take strikes to eliminate

23  persons from the jury panel, and then the remaining jurors will

24  hear the case.  The parties need to know more about you in

25  order to make intelligent decisions about who to strike.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          The Court will be conducting jury selection in the

2     following manner:  The Court will ask some general questions.

3     The Court will call each prospective juror for any specific

4     follow-up questions, if any, the Court may have.  Throughout

5     this process, the clerk and Court will only refer to you by

6     juror number, not your name.  This step -- this is a step we

7     sometimes take for the sake of our prospective jurors and

8     jurors' privacy.

9          We need to ask questions to determine your

10    eligibility.  So if you could, at any time you're called on, do

11    not state your name, but state your number.

12          For these preliminary questions, if the Court asks

13    you a question and you have a response to the question asked,

14    please raise your hand and you will be called on.  So if the

15    Court asks you:  "Are you here today to be considered to serve

16    as a juror in the case," you would all raise your hand.  If you

17    feel your answer to any question is particularly personal in

18    nature, you may ask to speak to me and the attorneys privately;

19    however, just so you are aware, for the most part I do plan to

20    mostly conduct specific questions with each prospective juror

21    individually, without other prospective jurors in the

22    courtroom.  In a minute, you will all return to your jury area

23    and then each juror will come in separately, and we will

24    proceed with the questions.

25          Now we will begin the process of selecting a jury to

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   hear this case.  You have heard the clerk read the names of the

2   plaintiffs and the plaintiffs' counsel in the courtroom,

3   introduce themselves.  At this time I will ask plaintiffs'

4   counsel to state the names of any new counsel who entered an

5   appearance in this case since the Court circulated the jury

6   questionnaire.  I think everyone has been...

7            MS. DUNN:  I believe so, Your Honor.

8            THE COURT:  Anyone on the defense side new to the

9   case?

10           MR. KOLENICH:  No, sir.

11           THE COURT:  Okay.  Now that all -- you've heard all

12  the names -- and the clerk asked you this too -- but you've

13  heard the names of the defendants, the plaintiffs, and the

14  attorneys.  Do any of you recognize or know now any of those

15  persons named?  If so, please raise your hand.

16           Yes, sir?  Your jury number?

17           MALE JUROR:  153.

18           THE COURT:  And whom do you know?

19           MALE JUROR:  From news outlets and stuff like that, I

20  mean, I pretty much know a little bit about everybody.

21           THE COURT:  Well, do you know any of the persons?

22  I'm not asking you about the events, but do you know the

23  persons personally?

24           MALE JUROR:  Personally, no.

25           THE COURT:  Okay.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        We'll follow up later about anything else you might

2    know.

3        I'll ask plaintiff to read your witness list.  This

4    is a long list.  So listen carefully.  And if you know anyone's

5    name, I'm going to ask you at the end of reading the list if

6    you recognize any name.

7        You may proceed.

8        MS. DUNN:  Thank you, Your Honor.

9        Chelsea Alvarado, Jessica Alvarado, Thomas Baker,

10   Marissa Blair, Julie Convisser, Diane D'Costa, Stephen Fenton,

11   Allen Groves, Deborah Lipstadt, Marcus Martin, April Muñiz,

12   Sharon Reavis, Natalie Romero, Peter Simi, Elizabeth Sines,

13   Devin Willis, Seth Wispelwey, Nadia Webb, and David Weiss.

14       Your Honor, that's the list of live witnesses.  There

15   is also deposition testimony.  Would you like me to proceed?

16       THE COURT:  Yes.

17       MS. DUNN:  Erica Alduino, Robert "Ike" Baker, Patrick

18   Casey, Michael Chesny, Burt Colucci, Ben Daley, Shane Duffy,

19   Samantha Froelich, Bradley Griffin, Dillon Hopper, Vasilios

20   Pistolis, and Thomas Rousseau.  Andrea Roberts, Angela Tabler.

21   That's all, Your Honor.

22       THE COURT:  Members of the jury, do you recognize the

23   names of any of those persons as someone you know?  If so,

24   please raise your hand.

25       All right.  Mr. Campbell, do you have any witnesses?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MR. CAMPBELL:  Not other than have already been

2    mentioned, Your Honor.  Thank you.

3          THE COURT:  Do any of the counsel for any of the

4    defendants have any witnesses they wish to -- that were not on

5    the list read by plaintiff?

6          MR. KOLENICH:  No, Your Honor.

7          MR. SMITH:  No, Your Honor.

8          MR. KOLENICH:  I have one, Your Honor.

9          THE COURT:  Yes.

10         MR. KOLENICH:  Wesley Bellamy.

11         MR. JONES:  Your Honor, I'll read two, if that's

12   okay.

13         THE COURT:  Yes.

14         MR. JONES:  Richard Hamblin and Charlottesville

15   Police Department Sergeant William Newberry.

16         THE COURT:  Do any of you know any of those persons?

17         MR. CANTWELL:  Judge, I don't have my witness list.

18         THE COURT:  Who's speaking?

19         MR. CANTWELL:  It's Christopher Cantwell, *pro se*.  I

20   don't have my witness list.

21         THE COURT:  Okay.  From here on out, the Court will

22   conduct the further examination of the jurors here in the

23   courtroom individually.  So I'll ask you to go with the marshal

24   at this time back to the jury assembly area that you came into.

25   And when you come -- are brought back, of course, take the seat

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  that you are sitting in at this time.

2            All right.  Which juror?  Is this number 1?

3            MR. STABILE:  Your Honor, if I may, we just

4  checked --

5            THE COURT:  Take your mask down.

6            MR. STABILE:  We just checked our questionnaires

7  against the juror list we were provided.  We do not have

8  questionnaires for juror 158, 168 and 176.

9            THE CLERK:  158 was the juror who said he had

10  previously supplied it and would not fill one out when he came

11  in today.  They have searched and we do not have a record of

12  having received one from him.

13            MR. STABILE:  That would leave 168 and 176 we don't

14  have a questionnaire.

15            THE COURT:  Are they the two that we did not have?

16  158 and --

17            THE CLERK:  What was it?

18            MR. STABILE:  168 and 176.

19            MR. SMITH:  You said 158 and 176?

20            MR. SPENCER:  I have the exact same problem.

21            THE COURT:  Well, Heidi, which ones do we know we

22  don't have questionnaires --

23            THE CLERK:  The one we knew we did not have is 158.

24  I'll reach out to the office and see if they have any record of

25  the other two.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  In the meantime, call in the first juror.

2    What's the first?

3          THE CLERK:  150.

4          THE COURT:  All right.  Bring in Juror Number 150.

5          Are the jurors back here?

6          They are assembled still across the hall?  Okay.

7          Sir, come on up.

8          THE CLERK:  I'm told we have one for 168.  I'm asking

9    for it.  And I'm asking to see if we can get 176 filled out.

10         THE COURT:  All right, sir.  Thank you.  Thank you

11   for being here.  You heard me state that this case is going to

12   last for four weeks, starting today.  Recognizing the not

13   insubstantial burden this case would place on you or any other

14   juror, but recognizing jury service is a vital civic duty, does

15   this timing pose a particular problem for you that it wouldn't

16   for most people?

17         MALE JUROR:  I work on a farm.  My wife works at

18   home, and I think this is going to cause her a lot more work,

19   but that's the way it goes.

20         THE COURT:  Right.  Thank you.  You've also expressed

21   some concern about COVID, which all of us have.

22         MALE JUROR:  I'm sorry, about what?

23         THE COURT:  You've expressed concern about the COVID

24   issues, which all of us have.  You've heard what we are trying

25   to do regarding COVID.  Would you be comfortable regarding

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  COVID, knowing that the Court has taken the steps it has taken

2  to mitigate any problems?

3          MALE JUROR:  I think you've done a fine job.  I don't

4  have a concern with COVID.

5          THE COURT:  You do not.  Okay.  Thank you.

6          MALE JUROR:  I apologize.  I have profound hearing

7  loss.  It's difficult to understand you.

8          THE COURT:  Do you have any physical or medical

9  limitations that would prevent you from serving on a jury?

10          MALE JUROR:  No, sir.

11          THE COURT:  I noticed you seem to have maybe a

12  hearing problem.  Can you hear with that device okay?

13          MALE JUROR:  It's one extreme or the other.

14          THE COURT:  All right.  You also expressed an opinion

15  in questions 42 through 44 concerning your feelings about some

16  of the parties to the case.  Now, you recognize if you are

17  called as a juror in the case you're going to have to say that

18  you can be fair, you can consider the issues in the case and

19  decide the case based solely on the evidence in the case and

20  the law as the Court instructs you.

21          Are you going to be able to set aside any

22  preconceived bias or feelings about any of the parties to the

23  case and be able to decide the case solely on the law and the

24  evidence, and render a verdict fair to both the defendant and

25  the plaintiffs in the case?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      MALE JUROR:  I'd like to think that I could.  I'm

2  fairly aware of what's been going on.  I read the papers.  I'm

3  a news junkie.  I am fairly opinionated.  I'd like to think

4  that I could separate it, though.

5      THE COURT:  All right.

6      MALE JUROR:  If you have initial core beliefs in

7  something, it's kind of hard to change your opinion, but that's

8  what you do.  So...

9      THE COURT:  Do you recall seeing or hearing anything

10  in recent news or stories about Unite the Right, the rally, as

11  in the past year?

12      MALE JUROR:  I'm sorry, have I heard something new in

13  the last year?

14      THE COURT:  Yes.

15      MALE JUROR:  There's so many people involved in this

16  thing.  It keeps revolving.  I don't think there's anything new

17  that's coming up.  We've been just waiting and waiting for this

18  day to show up, I think.  I know that a couple of the people

19  involved have been reluctant to show up and they've been held

20  in contempt for not doing so.  Any other questions?  I'm sorry.

21      THE COURT:  Okay.  That's fine.  Thank you.

22      Any other matters?

23      Excuse me.  Any questions that are going to be handed

24  up?  Is anyone writing down a question?

25      MR. STABILE:  No questions from plaintiffs, Your

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  Honor.

2          MR. KOLENICH:  Your Honor, we have one or two

3  questions.

4          THE COURT:  All right.  If you would write them down,

5  please.

6          All right.  Put the name of the person you're

7  representing on the questions.

8          Okay.  I'll ask you:  You said, I believe, we have

9  been waiting for this day.  What do you mean by that?

10         MALE JUROR:  This whole town was turned on its head

11 by this whole affair.  You can't avoid it.  Look at what's

12 happened in the last couple of years, up to as recently as the

13 statue removals.

14         THE COURT:  Okay:  You can take your mask down.

15         MALE JUROR:  Excuse me?

16         THE COURT:  Take your mask down.  I was asking you

17 what you meant by that particular statement that we've been

18 waiting -- we've been waiting for this -- we have been waiting

19 for this day?

20         MALE JUROR:  I think as a community we want to get it

21 behind us and see justice done.

22         THE COURT:  Thank you.  I understand.

23         In your questionnaire you stated that -- in answer to

24 72 -- that you would not be able to set aside -- well, the

25 question was:  Would you be able to set aside preconceived

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  opinions, if any, you may have about the Unite the Right

2  rally? -- this case is about the parties therein -- and reach a

3  conclusion based solely on the evidence you hear at trial in

4  accordance with the law as instructed by the Court?  And you

5  answered "no" at that time, and stated that "these people are

6  terrorists."  Do you think you can set aside that opinion?

7           MALE JUROR:  I'm sorry, but I don't think I can.

8           THE COURT:  Okay.  Thank you.  Thank you.  You may go

9  back to the jury room.

10          All right.  Who's next?

11          THE CLERK:  151.

12          THE COURT:  We need juror 151.  Go out there and get

13  151.

14          I intend to strike 151 for cause.

15          THE CLERK:  150?

16          THE COURT:  I'm sorry, 150.  The gentleman who was

17 just here.

18          Good morning.  Thank you for coming back in.  Would

19 you state your jury number?

20          FEMALE JUROR:  151.

21          THE COURT:  All right.  Your heard me state that this

22 case is set for trial for four weeks, starting today.  Now,

23 recognizing that jury service is a vital civic duty, does this

24 timing pose a particular problem for you that you could not

25 serve for the four weeks?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          FEMALE JUROR:  I think I can do it.

2          THE COURT:  All right.  Thank you.  There may be

3     times during the trial you will be sitting for as much as an

4     hour or an hour and a half or longer without a break.  Do you

5     have any physical or medical limitation that would prevent you

6     from doing so?

7          FEMALE JUROR:  I have some health issues, but I think

8     I can get through it.

9          THE COURT:  All right.  Thank you.  Do you know of

10    any reason you could not serve as a juror in this case and

11    render a verdict fair to both the plaintiffs and the

12    defendants?

13         FEMALE JUROR:  No.

14         THE COURT:  All right.  Are there any -- going to be

15    any questions passed up?

16         MR. KOLENICH:  I will.

17         THE COURT:  Are we getting any questions back?

18         MR. KOLENICH:  Yes, Your Honor.

19         THE COURT:  You stated in an answer in your

20    questionnaire that white supremacists and racists came to

21    Charlottesville and -- I'm not sure I can read that -- on

22    August 2017.  Do you understand that in this case that the

23    plaintiffs are claiming that the defendants were racially

24    motivated and conspired to come to Charlottesville and cause

25    damage or injury?  Can you set aside any opinion you might have

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   and decide whether the individual defendants conspired to do so

2   based on the law and the evidence you hear in the courtroom,

3   and set aside any preconceived notion you might have from what

4   you heard, read, or saw before today?

5           FEMALE JUROR:  Yes, I can set aside that -- what you

6   explained.

7           THE COURT:  All right.  Do you have any concerns of

8   any repercussions that might come to you if someone were to

9   know that you were on the jury and decided the case a certain

10  way?

11          FEMALE JUROR:  No.

12          THE COURT:  Do you have any belief or have any

13  opinion already that the defendants are racists and white

14  supremacists?

15          FEMALE JUROR:  No opinion.

16          THE COURT:  And do you blame the defendants in this

17  case for the events of August 11 and 12 in 2017?

18          FEMALE JUROR:  No.

19          THE COURT:  Okay.  Thank you.  All right.  Thank you

20  very much, and I'll let you -- if you would go with the

21  marshal.

22          I'd like to -- I'd ask the jurors, when you're back

23  with other jurors, do not discuss anything that was said in the

24  courtroom, or do not discuss anything about the case.

25          Which juror is next?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        THE CLERK:  153.

2        THE COURT:  153.

3        MS. DUNN:  Your Honor?

4        THE COURT:  Yes.

5        MS. DUNN:  Before the next juror is brought in, may

6   we ask a question?

7        THE COURT:  Yes.

8        MS. DUNN:  One of the questions you asked is about

9   repercussions against the jurors if they decide the case in a

10  certain way.  First of all, I'm not --

11       THE COURT:  That was a prompted question.

12       Come on up here, sir, if you would.

13       All right, sir.  Would you state your number as a

14  juror?

15       MALE JUROR:  153.

16       THE COURT:  All right.  You heard me state that this

17  case is set for trial for four weeks starting today.

18  Recognizing that jury service is a vital civic duty, does this

19  timing pose a particular problem for you beyond what it would

20  for anyone else who might be called to jury service?

21       MALE JUROR:  Yes, sir.

22       THE COURT:  All right.  Can you explain that?

23       MALE JUROR:  I run my own business.  So taking off

24  for four weeks would be pretty hard for me.

25       THE COURT:  What type of business are you in?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  Lawn care.

2          THE COURT:  Do you have anyone working for you?

3          MALE JUROR:  No.  It's a one-man show.

4          THE COURT:  Does your family have other income?

5          MALE JUROR:  No, sir.

6          THE COURT:  Would you -- would it be a real financial

7   hardship on you if you had to serve for this time?

8          MALE JUROR:  Yes, sir.

9          THE COURT:  Are you telling me that the business

10  would either close down or otherwise cease to function if you

11  were on the jury?

12          MALE JUROR:  Yeah, because I'd only be able to work

13  on the weekends, so I'd be backed up like crazy.

14          THE COURT:  Okay.  Any questions?

15          MR. KOLENICH:  No, Your Honor.

16          THE COURT:  Any from your side?

17          MS. DUNN:  Your Honor, we may have a couple of

18  questions.

19          THE COURT:  In your questionnaire you stated that you

20  could not abide by the Court's rule about wearing a mask.  Is

21  there any particular medical problem you have?

22          MALE JUROR:  I'm asthmatic.

23          THE COURT:  You're what?

24          MALE JUROR:  Asthmatic.

25          THE COURT:  Okay.  And you said in Question 72 that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  you would not be able to decide this case based on the

2  evidence, and that you could not follow the law.

3          MALE JUROR:  What's that, now?

4          THE COURT:  Okay.  Let me read the question to you.

5          The question was:  "Would you be able to set aside

6  preconceived opinions, if any, you may have about the Unite the

7  Right rally, this case, and the parties therein, and reach a

8  decision based solely on the evidence you hear at trial in

9  accordance with the law as instructed by the Court?"

10         And you answered that question:  "No."

11         MALE JUROR:  Right.  I have opinions on the matter,

12 yeah.  I'm not sure that, you know, I could be convinced

13 otherwise, but that's...

14         THE COURT:  All right.  But are you able to state

15 that you could approach this case with an open mind, and, if

16 the plaintiffs do not prove whatever your preconceived notion

17 is and you hear the law of the case, could you try the case on

18 what you hear in the courtroom?

19         MALE JUROR:  Yes, that's possible, yes.

20         THE COURT:  And would you follow the law as the judge

21 instructs you?

22         MALE JUROR:  Yes, sir.

23         THE COURT:  Okay.  Any other questions?  Anything

24 from -- all right, sir.  I'm going to ask you to go back and go

25 with the marshal.  When you get with the other jurors, do not

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   discuss anything about --

2           MALE JUROR:  Okay.

3           THE COURT:  -- the case or what went on in the

4   courtroom.

5           MALE JUROR:  Okay.

6           THE CLERK:  158.

7           MR. STABILE:  Your Honor, before 158 comes in, this

8   is the juror for whom we don't have a questionnaire.  Is Your

9   Honor going to ask him the questions on the questionnaire?

10          THE COURT:  Well, we're going to have to ask him a

11  lot of questions, I guess.

12          Is he the one that said he filled one out?

13          THE CLERK:  Correct.  And they asked him to fill

14  another one out and he did not want to fill out another one.

15  Dylan could not find one.

16          (Pause.)

17          THE COURT:  State your juror number.

18          MALE JUROR:  158.

19          THE COURT:  All right.  You heard me state that this

20  case is set for trial for four weeks starting today.

21  Recognizing that jury service is a vital civic duty, does that

22  much time pose a particular problem for you that wouldn't be a

23  problem for anyone else who might be called for jury service?

24          MALE JUROR:  It would be a very serious problem for

25  me.

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021


 1              THE COURT:  It would be what?

 2              MALE JUROR:  I said it would be a very serious

 3   problem for me.

 4              THE COURT:  Please, if you don't mind, drop your

 5   mask.

 6              MALE JUROR:  Okay.  Yes, sir.

 7              I said it would be a very serious problem for me.

 8              THE COURT:  All right.  Can you tell -- we did not

 9   receive a questionnaire from you.  So I'll have to ask you --

10   we don't know that much about you.  So we'll have to ask you

11   more questions.

12              MALE JUROR:  Yes, sir.  They asked me -- I sent that

13   questionnaire in, but it was late.

14              I'm a heart patient, triple bypass heart patient, and

15   I take medication that it just -- it makes me drowsy.

16              THE COURT:  What is your age?

17              MALE JUROR:  I'm 74.

18              THE COURT:  74.

19              Do you -- Heidi?

20              Anyone who's 74 does not have to serve on this jury

21   if you choose not to.

22              MALE JUROR:  Well, I choose not to.  I didn't know.

23              THE COURT:  Okay.

24              MALE JUROR:  I just knew I had to report.

25              THE COURT:  All right.  I'm going to excuse you,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    then.

2              MALE JUROR:  Okay.  Thank you.

3              THE COURT:  Sir, I'm going to let you leave.  You

4    don't need to stay here any longer.

5              Which is the next number?

6              THE CLERK:  159.

7              MS. DUNN:  Your Honor, prior to Juror 159, may I just

8    finish?

9              THE COURT:  Yeah, before the juror comes in, let her

10   finish.

11             Go ahead.

12             MS. DUNN:  Thank you, Your Honor.

13             You were submitted a question which asked the juror

14   whether, if they decided the case a certain way, they would

15   fear repercussions.  I don't mean to restate the question; I

16   just don't have the verbatim transcript in front of me, so if

17   you want to repeat what the question was --

18             MR. SMITH:  I can read the question, if you like.

19             THE COURT:  Wait.  Look.  Now, don't talk to each

20   other.  No colloquy.

21             MS. DUNN:  Our concern, Your Honor --

22             THE COURT:  Talk to the Court.  You'll get your

23   chance.

24             MR. SMITH:  I understand, Judge.  Sorry about that.

25             THE COURT:  Go ahead.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MS. DUNN:  Our concern, Your Honor, is asking jurors

2     if they fear repercussion if they decide the case a certain way

3     may be experienced by the jury as threatening or potentially

4     retaliatory.  Your Honor plans to empanel an anonymous jury

5     specifically to make jurors not feel that way.  So we just --

6     if a question like that is to be asked, we'd ask to discuss it

7     ahead of time.

8          THE COURT:  Okay.

9          MS. DUNN:  Thank you, Your Honor.

10          THE COURT:  I would not normally ask that question

11     unless a specific juror -- is that -- I know one juror stated

12     that she was worried.  Is that the juror?

13          MR. SMITH:  I don't believe that was the juror, Your

14     Honor.  That was just sort of a question that came to mind with

15     this particular juror.  It wasn't sort of a general question.

16     There was that one, Your Honor --

17          THE COURT:  I may not ask the question of every...

18          MS. DUNN:  Thank you, Your Honor.

19          THE COURT:  All right.  You may have a seat.

20          All right.  Would you state your jury number, please?

21          FEMALE JUROR:  159.

22          THE COURT:  All right.  And you heard me say that

23     this case is set to be tried for the next four weeks, starting

24     today.  Now, recognizing that jury service is a vital civic

25     duty, does the timing pose a particular problem for you that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

 1  wouldn't be common for almost anyone who would serve on a jury?

 2  I mean, would it be a real hardship if you had to serve for

 3  four weeks?

 4          FEMALE JUROR:  Kind of, sort of, to the fact that I

 5  am a school bus driver and there is a national shortage.  And I

 6  know in my county, to be gone a month, it's taxing for them to

 7  find a replacement.  That's the only major thing that I have,

 8  is what I do.

 9          THE COURT:  Okay.  All right.

10          You expressed the opinion that it would be hard for

11  you to set aside your preconceived opinions and try this case

12  solely on the evidence and the law in the case, and that you

13  had feelings of a certain kind of way toward hate groups that

14  disrupt peace.  Of course, there will be allegations in this

15  case that that would -- is an issue.

16          Can you set aside -- do you feel like you can try

17  this case based solely according to what you hear in the

18  courtroom, and, if plaintiff does not prove issues regarding

19  the defendants that the Court tells you they must prove by a

20  preponderance of the evidence, do you feel that you could

21  return a verdict in favor of the defendants?  Would it be a

22  tough time -- tough for you to do so?

23          FEMALE JUROR:  You're asking if the plaintiff

24  couldn't prove --

25          THE COURT:  Does not prove.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          FEMALE JUROR:  Does not prove, could I make a
2    judgment --
3          THE COURT:  Yes.  I mean, the Court will instruct you
4    on the law, and I'll tell you what the plaintiff has to prove
5    by a preponderance of the evidence.  Now --
6          FEMALE JUROR:  Basically putting aside my personal
7    opinions?
8          THE COURT:  Yeah.  Can you put aside your personal
9    beliefs that you might have had about this case or the Unite
10   the Right rally and be --
11         FEMALE JUROR:  Kind of what I said is I hope that I
12   could be fair, but I -- to push aside my personal opinions --
13         THE COURT:  I take it you know -- you've followed the
14   case and know right much about it?
15         FEMALE JUROR:  On the news.  So I kind of know what I
16   see from the news.
17         THE COURT:  Well, it's all right if you know about
18   it, but you have to be able -- you have to be able to set aside
19   what you already know and try the case according to what you
20   hear only in the courtroom and follow the law as the Court will
21   instruct you.
22         FEMALE JUROR:  I think I could if the evidence was
23   presented -- I know this is not helping.
24         THE COURT:  Okay.
25         FEMALE JUROR:  Well --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Well, I know it's a tough question.

2          FEMALE JUROR:  I would say I would think I could, but

3    I don't know.  I have so much personal opinion.  I mean, I

4    wouldn't want to -- I know how to be fair, and wanted to, you

5    know, put aside that and listen to -- I don't know why that's

6    difficult for me to explain.

7          THE COURT:  Okay.  Any questions --

8          FEMALE JUROR:  I would want to think that I could,

9    but...

10          THE COURT:  Okay.

11          FEMALE JUROR:  But 100 percent, I don't know.

12          THE COURT:  All right.  Thank you.  Any questions?

13          MR. KOLENICH:  No, Your Honor.

14          THE COURT:  Further questions?

15          MS. DUNN:  No, Your Honor.

16          THE COURT:  All right.  I'm going to allow you to go

17    back with the marshal.  When you go back, do not discuss the

18    case with anyone or what was brought up here in the courtroom.

19          FEMALE JUROR:  Okay.

20          THE CLERK:  160.

21          THE COURT:  Do you all need a break yet?

22          MR. KOLENICH:  We're okay, Your Honor.

23          THE COURT:  All right.

24          The fact that I have let -- didn't say anything about

25    this lady or the other doesn't -- or the gentleman, lawn care

48

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  fellow, doesn't mean I've decided anything about them.

2          Come on up.

3          All right, sir.  State your number as a juror.

4          MALE JUROR:  160.

5          THE COURT:  You heard me state this case is likely to

6  last four weeks, starting today.  Does that -- knowing that

7  jury service is a vital civic duty, does this timing impose a

8  particular hardship on you that might not be common to every

9  other juror?

10          MALE JUROR:  Yes, Your Honor.

11          THE COURT:  All right.  Would you describe that?

12          MALE JUROR:  So I am a company owner, and I run a

13  small business, and it's very vital that I work every day to

14  support my family.  So losing up to four weeks' worth of work

15  would be very, very bad for my business.

16          THE COURT:  And what type of business are you in?

17          MALE JUROR:  So I'm in a stonemasonry company.

18          THE COURT:  And are you the sole owner of the

19  company?

20          MALE JUROR:  Yes, Your Honor, I am.

21          THE COURT:  Do you have other employees that could

22  substitute for you?

23          MALE JUROR:  No.  I have just one other employee that

24  works with me.

25          THE COURT:  And how large a family do you have?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  I have three kids -- one son, two

2     daughters -- and my wife.

3          THE COURT:  You also said that you would have trouble

4     wearing the mask.  The Court, of course, would require you to

5     wear a mask.

6          MALE JUROR:  Yes, Your Honor.

7          THE COURT:  I mean, do you have a medical problem

8     with wearing the mask?

9          MALE JUROR:  Yeah.  Well, one, I have ADHD; two, I

10    suffer from a severe anxiety disorder, and sitting in a room

11    for that long with a mask on my face, this is going to trigger

12    my anxiety constantly throughout the day, which is going to

13    affect my ability to think logically about things throughout a

14    day.

15         THE COURT:  All right.  You also answered one of the

16    questions that you were asked, would you be able to set aside

17    your preconceived notions, if any, you may have about the Unite

18    the Right rally, this case, and the parties therein, and reach

19    a decision based solely upon the evidence here at trial in

20    accordance with the laws as instructed by the Court, and you

21    answered that question no.  Is that still your answer?

22         MALE JUROR:  Yes, Your Honor.

23         THE COURT:  And can you explain?

24         MALE JUROR:  Well, there are certain support groups

25    that I do not stand -- or am kind of prejudiced against, I

50

                    Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   should say.  So I guess that would probably affect my judgment

2   in this case.

3              THE COURT:  All right.  Are there any questions from

4   either side?

5              All right.  I understand your reason for being

6   opposed to wearing the mask is that -- it's your health issues;

7   is that correct?

8              MALE JUROR:  Yes, Your Honor.

9              THE COURT:  And it's not just that you don't want to

10  wear the mask?  Well, none of us want to wear a mask, but --

11  okay.

12             All right.  Any other questions?

13             All right.  I'll let this gentleman go in with the

14  first...

15             THE CLERK:  164.

16             THE COURT:  I didn't ask this question because, I

17  mean, his reason for not wearing the mask wasn't that it was

18  political, I don't believe.

19             MR. CANTWELL:  This was 160, right?  This is 160?

20             What he had on his questionnaire was:  "It's against

21  my beliefs as a Christian."

22             THE COURT:  Okay.

23             MR. CANTWELL:  And, having read the Bible, I know

24  there's nothing in there about masks.  So...

25             THE COURT:  All right.  Anyway, thank you.  There are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  other more significant issues with him.

2          MR. CANTWELL:  I understand.

3          THE COURT:  When you pass up a question, write the

4  name of the person who is asking the question.

5          All right.  Ma'am, would you give us your jury

6  number?

7          FEMALE JUROR:  Are you talking to me?

8          THE COURT:  Yes.

9          FEMALE JUROR:  I'm sorry.

10         THE COURT:  You may take your mask off.

11         FEMALE JUROR:  164.

12         THE COURT:  All right.  You heard me state earlier

13  that this trial is set to last four weeks, starting today.

14  Now, recognizing that jury service is a vital civic duty, does

15  this pose a problem for you that would be a real hardship, more

16  so on you than most other persons who might be called to serve?

17         FEMALE JUROR:  No, sir.

18         THE COURT:  All right.  You answered that it would be

19  difficult for you to set aside your own -- that you would not

20  be able to set aside your own opinions you have and decide this

21  case based solely upon the evidence you hear at trial in

22  accordance with the law as instructed by the Court.

23         Is that your -- is that still your opinion?

24         FEMALE JUROR:  That I would have problems setting

25  aside my opinion?  I don't recall ever saying that.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1            THE COURT:  Okay.  You will be instructed that the

2  only evidence you may consider in arriving at a verdict is what

3  you hear here in the courtroom, and you have to apply -- the

4  Court will tell you what the law is, and your verdict has to be

5  in accordance with the evidence you believe has been proven in

6  the courtroom and the law as I state it to you.

7            FEMALE JUROR:  Yes.  I understand that.

8            THE COURT:  Would you have any problem --

9            FEMALE JUROR:  No.

10           THE COURT:  -- doing that?

11           FEMALE JUROR:  If that's on my questionnaire, then I

12  guess I misunderstood the question, because I've been on juries

13  before.  I don't have a problem.  I understand that.

14           THE COURT:  Okay.  Do you know of any reason you

15  could not be fair to both the plaintiffs and the defendants in

16  this case, if you are called to serve?

17           FEMALE JUROR:  No, sir.

18           THE COURT:  You are not sensible of any bias or

19  prejudice against any of the parties to the case?

20           FEMALE JUROR:  I really don't know a lot about any of

21  them, anyway, as far as the different affiliations.  I don't

22  know enough about them to make a strong opinion.

23           I do know that I would have no involvement with any

24  of them, every one of them that you all named on there, but I

25  don't know them enough to make a big opinion about any of the

                    Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   specifics.

2              THE COURT:  Well, the plaintiffs will have the burden

3   of proving what it claims against the defendants.  And if the

4   plaintiff does not prove what they have the burden to prove,

5   can you render a verdict based solely --

6              FEMALE JUROR:  Yes.

7              THE COURT:  -- that is fair --

8              FEMALE JUROR:  Yes, sir.

9              THE COURT:  -- and based on the law?

10             FEMALE JUROR:  Yes, sir.

11             THE COURT:  Does anyone else have a -- go ahead.

12             MS. DUNN:  With the Court's indulgence, Your Honor,

13   one moment.

14             THE COURT:  All right.

15             MS. DUNN:  Thank you, Your Honor.

16             THE COURT:  All right.  You said you heard about the

17   case.  Can you sort of give us generally what you've heard?

18             FEMALE JUROR:  Just what's been on the news when it

19   first happened and all the craziness that went on.

20             THE COURT:  Did you form any opinion about who was at

21   fault?

22             FEMALE JUROR:  I just thought the whole thing was a

23   tragic nightmare.  I really -- you know, I mean, I didn't make

24   it a part of my life or anything.  It was just something that

25   was on the news.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  All right.

2          All right.  The Court is going to tell you that you

3   have to try -- the jury will have to try this case and look at

4   the evidence against each defendant.  And the fact that you may

5   decide one defendant is guilty -- or not guilty but is liable

6   in the case, can you look at the other defendants and still

7   hold the plaintiff to the burden of proof and decide for them

8   if the plaintiff has not proven that they are liable?

9          FEMALE JUROR:  I'm not sure I understand your

10  question.

11         THE COURT:  I don't blame you.  Each defendant is

12  here representing himself.  And the fact that one defendant --

13  you think the plaintiff proved the case as to one defendant,

14  but not as to the other, will you be willing -- can you decide

15  the case for the one the plaintiff has not proven is liable?

16         FEMALE JUROR:  Yes.  Yes.

17         THE COURT:  Okay.  Thank you.  Anything else?

18         All right.  When you go back, don't discuss the case

19  or allow anyone to discuss it with you or don't talk about what

20  went on in the courtroom.

21         FEMALE JUROR:  Thank you.

22         THE COURT:  We're going to take a short recess now,

23  about ten minutes.  And try to get back in about ten minutes,

24  if you can.

25         (Recess.)

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  What's the next juror number?

2          THE CLERK:  The next juror is 166.

3          THE COURT:  Ma'am, you may remove your mask and state

4    your jury number.

5          FEMALE JUROR:  166.

6          THE COURT:  You heard me state this case is set for

7    trial for four weeks, starting today.  Recognizing the not

8    insubstantial burden this case would place on you, but

9    recognizing jury service is a vital civic duty, does this

10   timing pose any particular hardship for you that wouldn't be

11   common to most persons who are called to serve?

12         FEMALE JUROR:  Where I work, it's only a two-person

13   office.  So it's just me and my supervisor that runs the whole

14   building.  So that's the only thing.

15         THE COURT:  All right.  I think you expressed some

16   concern about being in crowds because of COVID.  Having heard

17   the various steps that the Court has taken to reduce the risk

18   of COVID-19 in the courthouse and courtroom, which are really

19   more stringent than you would find in stores, for example, do

20   you believe that you would be able to set aside your concerns

21   about COVID-19 and focus your attention on the case?

22         FEMALE JUROR:  Yes.

23         THE COURT:  You noted that you heard about this case

24   every day, I think, for a long time.  Can you set aside any

25   preconceived notion you might have about the case and try the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  case solely according to the law and the evidence?

2          FEMALE JUROR:  Yes.

3          THE COURT:  Are you sensible of any bias or prejudice

4  against any party in the case?

5          FEMALE JUROR:  No.

6          THE COURT:  Do you know of any reason you could not

7  serve as a juror in this case and render a verdict that's fair

8  to both the plaintiffs and to the defendants?

9          FEMALE JUROR:  No.

10          THE COURT:  All right.  If there are any questions,

11  please pass them up.

12          FEMALE JUROR:  I don't have any questions.

13          THE COURT:  No, I'm sorry, I was talking to the

14  lawyers.

15          FEMALE JUROR:  Oh, sorry.

16          THE COURT:  Are there going to be any?

17          MS. DUNN:  Yes, Your Honor.

18          THE COURT:  All right.  In your questionnaire you

19  mentioned that you have unfavorable views against Antifa, and

20  that it's an organization created to promote fear or violence

21  or social disorder.  The question is:  Where do those views

22  come from?

23          FEMALE JUROR:  Honestly, I feel like they're all a

24  terrorist organization.  They are trying to hurt people.

25  That's how my views are, honestly.  I try not to listen to the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  news and just worry about my family.

2          THE COURT:  Okay.  Realizing that all the plaintiffs

3  will say they're not members of that organization, do you think

4  that you can give the plaintiffs a fair hearing and try -- and

5  make a decision based solely on the law and the evidence if the

6  Court -- and follow the Court's instructions?

7          FEMALE JUROR:  Yes.

8          THE COURT:  All right.  If you are out of work for

9  four weeks, what happens in your office?

10         FEMALE JUROR:  Well, it's hard to find coverage,

11 since it's -- you know, there are not a lot of people working

12 right now.  And where I work it's a pretty big organization.

13 So it does put a little burden on it.

14         THE COURT:  Okay.  All right.  Thank you.  Just a

15 minute.

16         All right.  You may -- if there are no further

17 questions, you may go with the marshal back to -- and do not

18 discuss the case with anyone or let anyone in the jury room

19 discuss it with you until you leave today.

20         THE CLERK:  168.

21         MR. STABILE:  Your Honor, 168 we do not have a

22 questionnaire.

23         THE COURT:  We have one.  It's real small.  It's hard

24 to read.

25         All right.  Ma'am, would you state your jury number?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          FEMALE JUROR:  168.

2          THE COURT:  You heard me state that this case is set

3    for trial for four weeks starting today.  Recognizing the not

4    insubstantial burden this case would place on you, but

5    recognizing also that jury service is a vital civic duty, does

6    the fact that it's going to maybe last four weeks pose a

7    hardship on you that would not be a hardship for most persons?

8          FEMALE JUROR:  No, it does not.

9          THE COURT:  Having heard the Court tell you what

10   we're doing to mitigate the problems with COVID, would that

11   alleviate any of your concerns or most of your concerns

12   concerning the COVID situation?

13         FEMALE JUROR:  Well, I don't think anything would

14   totally eliminate my concerns, because I really have been

15   avoiding public places and stores, restaurants, even my own

16   family's homes, but it's the best we can do.  I understand

17   that.

18         THE COURT:  All right.  Thank you.

19         One of the questions asked you, "Under the law, the

20   facts at issue in this trial are for the jury to determine.

21   The law applicable to the allegations in the case is something

22   on which the Court will instruct you.  You are required to

23   accept the law as the judge explains it to you, regardless of

24   any opinions you might have as to what the law is or should be.

25   Would you have any difficulty following that instruction, if it

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   was at odds with your view of what the law should be?"

2          And you answered "no."

3          FEMALE JUROR:  Well, I would try to keep all my

4   personal views out of it, but that would be hard to do.

5          THE COURT:  Oh, I'm sorry.  You answered "no."  I'm

6   sorry.  You answered "no."

7          I mean, if the Court -- could you follow the

8   instructions of the Court?

9          FEMALE JUROR:  I believe I could.

10          THE COURT:  And could you set aside any preconceived

11   notion you have about this case and try the case based solely

12   upon the law and the evidence in the case?

13          FEMALE JUROR:  I would do my best.

14          THE COURT:  Do you feel that it's likely -- I mean,

15   do you feel you could do it?

16          FEMALE JUROR:  Yes.

17          THE COURT:  Are there any questions anyone has?

18          MR. STABILE:  Your Honor, could we just have a couple

19   of extra minutes to look over her questionnaire?

20          THE COURT:  You'll have to speak up.

21          MR. STABILE:  Could we have a couple of extra minutes

22   to look at her questionnaire?  We just received that.

23          THE COURT:  All right.

24          MS. DUNN:  Your Honor, unfortunately, the way the

25   questionnaire was photocopied, it is not readable.  And so

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   we're wondering if we could either see the original copy or a

2   legible copy.

3           THE CLERK:  That is how it was received in the

4   clerk's office.

5           MS. DUNN:  Oh, really?

6           THE CLERK:  Yes.

7           (Pause.)

8           THE COURT:  I'm sorry.  We were not able to read the

9   questionnaire.  That's why it's taking a little extra time.

10          (Pause.)

11          THE COURT:  Yes?

12          MR. STABILE:  Your Honor, we have been trying hard to

13  read the questionnaire.  I was wondering if maybe the Court

14  could review --

15          THE COURT:  All right.

16          MR. STABILE:  -- or give the juror her questionnaire.

17  Maybe she could read her answers.

18          THE COURT:  Ma'am, I'm going to let you go back to

19  the jury room, and we may call you back for some additional

20  questions.  Sorry to inconvenience you.

21          MR. STABILE:  Thank you.  Or, Your Honor, one

22  alternative is while she's waiting, maybe she could fill it out

23  again and just give us something that we can read.

24          THE COURT:  Well, we might do that, too.  Do you have

25  another -- can't you make it out?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MR. STABILE:  I can make out some things, but I can't

2    make out --

3          MR. SMITH:  Some of it's very difficult, Your Honor.

4          THE COURT:  It was hard, but we made it out.

5          MR. SMITH:  You have to sort of stare at it for a

6    second or two.  Sometimes you can see it.  Sometimes you can

7    make it out.  Sometimes it's too blurry.

8          THE COURT:  I can't tell you.

9          MR. CANTWELL:  I have a technical question, if I

10   could.  I have a computer here with something that says "Juror

11   Information" on it.  Is that supposed to be the same thing as

12   these binders?  And, if so, I'm double-clicking on it and

13   nothing is happening.

14         THE COURT:  I have a real hard time with the mask up.

15   I don't know -- didn't understand that question.

16         MR. CANTWELL:  Is there any way other than the

17   binders that I can look at these surveys?  No?

18         THE CLERK:  Only the binders.

19         MR. CANTWELL:  Have the attorneys all had a chance to

20   look at these things already?

21         MR. SPENCER:  Well, yes.

22         MR. CANTWELL:  Could we evenly distribute the

23   binders, then?  Because we have one that we're sharing between

24   us, and -- well, the challenge is that there are three binders

25   with all different jurors in them.  And so you have those

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   jurors, I have these jurors, and when we get to the other

2   jurors will be the problem.  And so I'm wondering if it might

3   be appropriate if either Richard could switch seats with

4   Mr. ReBrook or I could come over there.

5          Would the marshals -- no?  Okay.

6          MR. SPENCER:  So I want to see -- how can we fix

7   this?

8          MR. CANTWELL:  I've got notes up until Juror 210.

9   After that, I'm S.O.L.

10          THE COURT:  Who is the next juror?

11          THE CLERK:  The next juror is 172.

12          THE COURT:  Let's get that juror in.

13          MS. DUNN:  Your Honor, did you already call the

14   juror?

15          THE COURT:  Yes.

16          MS. DUNN:  Your Honor, if we could have a brief

17   discussion just before the lunch break, we would be grateful.

18          THE COURT:  Discussion with the Court?

19          MS. DUNN:  Discussion with the Court.

20          THE COURT:  All right, sir.  Would you -- you may

21   remove the mask and state your jury number.

22          You may state your number.

23          MALE JUROR:  172.

24          THE COURT:  All right.  Recognizing the burden that

25   this case would place on you, but recognizing also that jury

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   service is a vital civic duty, does the fact that this case is

2   likely to last for four weeks present a hardship to you that

3   wouldn't be common to most other persons who would be called to

4   serve that long?  I know it's a long time.

5        MALE JUROR:  No.

6        THE COURT:  Okay.  You expressed some concerns about

7   the COVID situation.  Having heard what the Court is doing to

8   try to mitigate the COVID situation, do you think that you

9   could sit on this jury and give good attention to what goes on

10  in the trial, despite the COVID lurking in the background?

11       MALE JUROR:  Yes.

12       THE COURT:  Do you know of any reason that you could

13  not hear the evidence in this case and render a verdict that's

14  fair to both the defendant and the plaintiffs in the case?

15       MALE JUROR:  No.

16       THE COURT:  All right.  Any questions of this juror?

17       Just a minute.

18       (Pause.)

19       THE COURT:  All right.  In your questionnaire you

20  referred -- you thought of the -- you answered that "Antifa is

21  a group of extreme left-wing members who have used violence

22  during their protests."  If you hear that Antifa was present,

23  would you believe that they were responsible for the violence

24  at the -- or part of the violence at the Unite the Right rally?

25       MALE JUROR:  I believe it would be most likely.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        THE COURT:  The plaintiffs in this case will say that

2   they were not members of Antifa, but they were just there as

3   local protesters.  Can you listen to the evidence in the case

4   and, aside from what you might think of Antifa, give the

5   plaintiffs a fair trial if, under the law, the evidence that

6   you hear in the courtroom dictates that you should return a

7   verdict for the plaintiffs?

8        MALE JUROR:  Yes.

9        THE COURT:  All right.  You did say in your

10  questionnaire that you could set aside any preconceived

11  opinions about the rally and reach a decision based solely upon

12  the evidence you hear at trial in accordance with the law as

13  instructed by the Court.  Do you still stand by -- you answered

14  "yes" to that.  Do you still stand by that?

15       MALE JUROR:  Yes.

16       THE COURT:  Thank you.  All right.  That's all the

17  questions I have for this witness.  You may -- when you go back

18  with the other jurors, do not discuss the case with anyone or

19  allow anyone to discuss it with you.

20       We're going to try to get you all out of here soon.

21       MS. DUNN:  Your Honor, I apologize.  There are a

22  couple of additional questions for this juror, if we could ask

23  the Court's indulgence.

24       THE COURT:  What?

25       MS. DUNN:  We have a few additional questions.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Okay.

2          MS. DUNN:  If we may.

3          (Pause.)

4          THE COURT:  Have you heard that Antifa was violent at

5   the Unite the Right rally?

6          MALE JUROR:  I can't -- four years ago, I can't

7   recall if there were any news articles that specifically said

8   that or not.  I don't know.

9          THE COURT:  The issue in this case is that the

10  plaintiffs have charged these defendants with having conspired

11  to come to the rally and create violent acts, whether anyone

12  else such as Antifa came or not.  If the plaintiffs proved by a

13  preponderance of the evidence that these defendants conspired

14  to come to Charlottesville and conspired to take violent action

15  while they were here, even though other groups might have

16  committed violent acts, can you try the case between these

17  plaintiffs and these defendants, disregarding what others might

18  have done?

19          MALE JUROR:  Yes.

20          THE COURT:  Okay.  All right.  We'll let him go with

21  the other jurors, then.

22          What is the number for the --

23          THE CLERK:  176.

24          MR. STABILE:  Your Honor, this is another juror with

25  no questionnaire.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          (Pause.)

2          THE COURT:  Thank you, sir.  You may remove your

3  mask, if you like.  You may remove the mask.

4          Please state your jury number.

5          MALE JUROR:  172.

6          THE COURT:  You heard me tell --

7          THE CLERK:  That's incorrect.  I believe this is 176.

8          MALE JUROR:  176.  You're right.  176.

9          THE COURT:  You heard me tell you and the other

10  jurors this morning that the case is set for trial four weeks,

11  starting today.  Now, recognizing that this is a substantial

12  hardship for you, but is the hardship that's placed on you

13  greater than you think it might be for other jurors, other

14  persons who might be subpoenaed to serve?

15          MALE JUROR:  Do I think it is?

16          THE COURT:  Yeah.  Do you have some particular --

17          MALE JUROR:  The only hardship it's going to be is a

18  little bit financial.

19          THE COURT:  All right.  Would that -- you say it's "a

20  little bit," but it --

21          MALE JUROR:  I mean, I'm retired.  I have a pension,

22  but also work.  That would be completely in the dark.

23          THE COURT:  All right.  Okay.  Do you have any

24  physical or medical limitation that would prevent you from

25  sitting from an hour to an hour and a half without taking a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    break?

2              MALE JUROR:  No, sir.

3              THE COURT:  Okay.  Do you have any physical or

4    medical limitation that would prevent you from -- you think

5    might prevent you from serving on the jury?

6              MALE JUROR:  No, sir.

7              THE COURT:  Okay.  Did you fill out a questionnaire?

8              MALE JUROR:  Yes, I did.

9              THE COURT:  And apparently the clerk's office didn't

10   receive it.

11             MALE JUROR:  They didn't receive it?  I faxed it and

12   I got -- from the county library, and I got a statement saying

13   that it was successfully faxed.

14             THE COURT:  Okay.  Well, we'll just ask you a few

15   questions now.

16             MALE JUROR:  Okay.

17             THE COURT:  You know this case is about the Unite the

18   Right rally.  Have you heard of that before?

19             MALE JUROR:  Is it about the right to rally?

20             THE COURT:  Well, it's about the Unite the Right

21   rally that took place.

22             MALE JUROR:  Oh, that's the name of the rally.

23             THE COURT:  Yes.

24             MALE JUROR:  I mean, I remember when it happened, but

25   I'm not a news person.  I didn't pay much attention to it.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Do you know who was involved and what it

2     was about?

3          MALE JUROR:  No.

4          THE COURT:  Okay.  You heard the names of the

5     defendants here today and the names of the plaintiffs.  Are you

6     sensible of any bias --

7          MALE JUROR:  No.

8          THE COURT:  -- or prejudice against either party?

9          MALE JUROR:  No, not for any of them.

10          THE COURT:  Okay.  Do you know of any reason you

11     could not serve on a jury and render a verdict fair to both the

12     plaintiffs and the defendants?

13          MALE JUROR:  No, sir.

14          THE COURT:  Under the law, the facts at issue in the

15     trial are for the jury to determine.  The law applicable to the

16     allegations in the case is something which I will instruct you.

17     You are required to accept the law as I explain it to you,

18     regardless of any opinion you might have as to what the law is

19     or ought to be.  Would you have any difficulty following that

20     instruction if it was at odds with your views on what the law

21     should be?

22          MALE JUROR:  No, I wouldn't take my opinion into it.

23     The law is the law.

24          THE COURT:  All right.  If there are any questions

25     you all would like to ask, you may.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MS. DUNN:  Yes, Your Honor.

2          THE COURT:  Are you aware of any preconceived notions

3    about the case, this case?  Like, have you formed any

4    opinion --

5          MALE JUROR:  No.

6          THE COURT:  -- in favor of the plaintiffs or the

7    defendants in the case?

8          MALE JUROR:  No, because I don't know either side

9    right now.

10          THE COURT:  So...

11          (Pause.)

12          MR. SPENCER:  Your Honor, since we don't have the

13    questionnaire that he filled out, would it be appropriate for

14    him to answer one of the questions that was on the

15    questionnaire live?

16          THE COURT:  Pass it up.

17          MR. SPENCER:  Okay.

18          THE COURT:  Just give me the number.

19          MS. DUNN:  Your Honor, we have a similar suggestion.

20    If this potential juror would be able to fill out the

21    questionnaire over lunch and then perhaps we can --

22          MALE JUROR:  It's in my car.  It's in my car.

23          THE COURT:  Well, we'll let you go get it.  Could you

24    go now and get it and bring it back?

25          MALE JUROR:  Right now?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Yes.  We'll take up another juror while

2     you're gone, but it will save -- it will expedite you.

3          All right.  Who is the next number?

4          THE CLERK:  Juror 177.

5          MS. DUNN:  Your Honor, may we raise something before

6     the next juror is called in?

7          THE COURT:  Yes.

8          MS. DUNN:  Because it may pertain to the next juror?

9          Your Honor, I can't see you, so -- okay.

10         With regard to jurors who have expressed extreme

11    views about Antifa, in our view, we do not think the questions

12    about plaintiffs being not Antifa is sufficient to determine

13    partiality, because the question in the case will be are these

14    defendants responsible for violence at the Unite the Right.

15    And so people with extreme views of Antifa may be less

16    inclined, because of their preconceived notions, to believe

17    that defendants could be responsible, and they may be more

18    inclined to believe defendants' claims of self-defense.

19         So we flag this because we -- while we do agree the

20    plaintiffs in this case are not Antifa, we don't think that

21    that cures the issue.

22         THE COURT:  Well, as I said, the evidence is very

23    likely to be that Antifa committed acts -- certain acts at this

24    Unite the Right rally.  I'm not saying that I know what -- that

25    they did or did not.  But the fact that persons who were not

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  one of these defendants committed acts, I mean, I think that's

2  just one of the things you have to -- if the jury says they

3  will follow the law and the evidence, I don't know --

4         MS. DUNN:  But the questions that we have submitted

5  to the Court are not about whether plaintiffs are Antifa or

6  not, because that's not relevant to the jury's ability to

7  determine the questions in the case.  The question in the case

8  will be about, as you said, responsibility for the violence at

9  Unite the Right.  So the concern is that people who have

10 extreme views about Antifa, if defendants say, well, Antifa was

11 responsible, that those extreme views would cloud the ability

12 for the jurors to be impartial.  So asking them about the

13 plaintiffs doesn't illuminate that for us.

14        And so we would ask that the questions be phrased to

15 get at the issue of whether the jurors would be more likely to

16 attribute violence not to the defendants, and to others instead

17 based on preconceived notions.

18        MR. JONES:  Your Honor, in one of the submitted

19 questions to Juror Number 172, Your Honor's question was

20 whether -- and I think it was one that had been submitted by

21 plaintiffs -- was that the allegations in the case are the

22 defendants came to Charlottesville to commit violence.  I think

23 a correct statement of the allegations is that they came to

24 Charlottesville to commit racially motivated violence, not just

25 violence in general.  I think that cures the issue with Antifa.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   I don't think it's proper for plaintiffs to be able to ask

2   questions about whether plaintiffs caused violence or

3   defendants caused violence.  The theory of the case is racially

4   motivated violence.

5           THE COURT:  All right.

6           MR. KOLENICH:  Your Honor, there is one other

7   observation on this Antifa.  When the Court was questioning 172

8   you, in clarifying his position, stated are you able to

9   disregard what others might have done?  And we think that's

10  potentially problematic.  The question should be more like are

11  you able to find the defendants -- if the evidence shows that

12  the defendants conspired to commit violence or racially

13  motivated violence, even if others also did violence, rather

14  than just saying disregard what others have done.

15          THE COURT:  All right.  Okay.

16          MR. SPENCER:  Additionally, Your Honor, to address

17  what the plaintiffs just suggested, although it's died down

18  now, I think the talk of Antifa on news and websites and cable

19  news was very high, maybe overblown, I think it's too much to

20  ask that someone doesn't have a preconceived notion of Antifa.

21  They've probably heard it on talk radio at some point.

22          THE COURT:  Well, I'll do the best I can to --

23          MS. DUNN:  Your Honor, while we're on this pause --

24  and for the record, we did submit a brief on this issue.  So we

25  also would flag that for the Court.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      THE COURT:  I think both sides could look at some of

2  these jurors and maybe decide that they should have been -- I

3  mean, maybe it's too much to ask, but you could look at the

4  other jurors who are very much for you, but have answered

5  similarly to the jurors you complain of and favor the plaintiff

6  or the defendants.  And maybe you all could agree on getting

7  rid of some of them.

8      MS. DUNN:  We're happy to speak with defense counsel

9  at the break.

10      THE COURT:  If you all could do that, it would

11  certainly shorten things, because right now I'm planning --

12  I've already stopped the third panel today and asked them to

13  come tomorrow.  It is important that we keep the panels in

14  order because of the randomness of the jury.

15      MS. DUNN:  Understood, Your Honor.  We will get

16  together with defense counsel at the break and see if any

17  agreement can be found.

18      THE COURT:  I think I misspoke.  I moved the fourth

19  panel, not the third panel.

20      MS. DUNN:  Thank you, Your Honor.  The second issue

21  we wanted to raise at this break is we did submit a question to

22  Your Honor -- I believe it was for juror 166, although I'll

23  verify that -- who said that she was not concerned -- who said

24  on her questionnaire she was not concerned about racial

25  discrimination with regard to blacks or Hispanics or Jews.  And

74

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   our question was to ask her to elaborate on why she said she

2   wasn't at all concerned.

3            We do think in this case, where racial animus is an

4   element that we need to prove and an important aspect --

5            THE COURT:  I didn't see that question.  Did you pass

6   the question up?

7            MS. DUNN:  Yes, Your Honor.  I believe it was for

8   juror 166, Your Honor.

9            THE COURT:  Okay.  Well, you also wrote stuff in

10  script, and I think I just overlooked what was typed.

11           MS. DUNN:  Understandable, Your Honor.  And our

12  penmanship could be better, certainly.

13           THE COURT:  She's number 166?

14           MS. DUNN:  Yes.  We would seek the opportunity to

15  question her further, or to have the Court question her further

16  on that question.

17           THE COURT:  All right.  I would have asked the

18  question if I was aware.

19           Where is the juror?

20           THE CLERK:  Are we ready for them?

21           THE COURT:  Yes.

22           All right.  Sir, you may remove your mask while

23  you're speaking.  Would you state your jury number, please?

24           MALE JUROR:  12.

25           THE CLERK:  177.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1       MALE JUROR:  Oh, 177.  I was sitting in 12 back

2   there.

3       THE COURT:  You heard me state this case is set for

4   trial for four weeks, starting today.  Now, recognizing that

5   that is a substantial burden on you, does it present a hardship

6   for you that would be uncommon to other persons who might be

7   called for jury service?

8       MALE JUROR:  No, sir.

9       THE COURT:  All right.  There may be times during the

10  trial when you would be sitting for an hour and a half or

11  longer without a break.  Do you have any physical or medical

12  limitation that would prevent you from sitting that long?

13      MALE JUROR:  No, sir.

14      THE COURT:  Okay.  On this questionnaire you filled

15  out, the question was asked:  Would you be able to set aside

16  preconceived opinions, if any you may have, about the Unite the

17  Right rally, this case and the parties therein, and reach a

18  decision based solely upon the evidence you hear at trial in

19  accordance with the law as instructed by the Court?  And you

20  answered no to that.  Can you explain.

21      MALE JUROR:  I'm sorry.  I didn't understand the

22  first part of that.  You said that I checked no.  Can you read

23  it to me again?

24      THE COURT:  Yes.  Let me hand you down the -- you can

25  just look at it.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  So you want me to explain my answer, is

2     that what you're after?

3          THE COURT:  Yes.  Do you have the questionnaire?

4          MALE JUROR:  To be honest with you, no, I don't know

5     why I checked no, and then I in turn did not give an

6     explanation for that.  So actually, I don't know why I marked

7     no on that.

8          THE COURT:  Okay.

9          MALE JUROR:  Should have been yes.

10         THE COURT:  To that question today, then, you would

11    say yes?

12         MALE JUROR:  Yes, sir.  I'm sorry.

13         THE COURT:  If you all have any questions...

14         Are you sensible of any bias or prejudice against

15    either party in the case?

16         MALE JUROR:  No.  I don't know anybody in the case.

17         THE COURT:  Well, do you know of any reason you could

18    not serve as a juror in the case and render a verdict fair to

19    both the plaintiff and the defendant based solely according to

20    the law and the evidence?

21         MALE JUROR:  No.

22         THE COURT:  All right.

23         MS. DUNN:  Your Honor, may I hand this up?

24         THE COURT:  Yes.

25         What was your profession before you retired, sir?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        MALE JUROR:  I worked in the maintenance department

2   at State Farm Insurance on Pantops.

3        THE COURT:  I'm not sure we read this earlier, but

4   are you requesting to be excused from jury service or are you

5   willing to serve?

6        MALE JUROR:  I'd be willing to serve, if you want me

7   to.

8        THE COURT:  Okay.  Given your views on Antifa as

9   troublemakers, do you think that would make it less likely for

10  you to find the defendants were also responsible for racially

11  motivated violence at the Unite the Right?

12       MALE JUROR:  Antifa, all I know about them is what I

13  hear on TV, and it seems like to me that they're always

14  involving themselves into racial riots and stuff and causing a

15  lot of problems with that, through their political beliefs, I

16  feel.  But here again, they don't make any difference to me.  I

17  don't know any of them and they don't bother me.

18       THE COURT:  If the evidence were to show that Antifa

19  and other counter-protesters engaged in violence at the Unite

20  the Right rally, would you still be open -- could you still try

21  the case between the defendants and the plaintiff in this case

22  and not be influenced by what others might have done, but only

23  by what the plaintiffs prove that the defendants in this case

24  did?

25       MALE JUROR:  Yeah, I'm not going -- I'm not going --

78

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   I was told that if I want to be on the jury, that you got to be

2   open-minded about stuff, and I feel like I am.  So that comment

3   about Antifa was the way I felt and how I do feel.  Whether --

4              THE COURT:  All right.  Well, you understand there's

5   no Antifa.  No one is claiming that any member of Antifa is a

6   party to this case.

7              MALE JUROR:  Yeah, I know.  That's the reason -- I

8   just answered the question.

9              THE COURT:  Yes, sir.  All right.  Thank you.  I'll

10  let you go outside, then.

11             All right.  Do you want to call juror 166 back.

12             MR. CANTWELL:  Judge, if I may, before we go to the

13  next juror -- it's Christopher Cantwell -- it's actually my

14  understanding that at the minimum Plaintiff Wispelwey is an

15  adherent or at least a sympathizer of Antifa, and that is my

16  view of it, just so that we're precise going forward.

17             THE COURT:  Well, I don't know the structure of

18  Antifa.  Do they have members sign up?

19             MR. CANTWELL:  It is not something that one carries a

20  membership card for, but neither is white nationalism.  What

21  you said to that juror was that nobody is saying that the

22  plaintiffs are Antifa.  I would certainly be -- I'm certainly

23  of the view that at least Plaintiff Wispelwey is.  I have yet

24  to find out about the other plaintiffs.

25             MS. DUNN:  Your Honor, if I may, Mr. Cantwell's

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   argument actually underscores why it would be wrong to have

2   people with extreme views about Antifa on the jury.  So I just

3   want to emphasize that because we have put a brief before the

4   Court on this issue, and I think that comment underscored that

5   what we're talking about is a real concern.

6          MR. SPENCER:  Your Honor, in the words of Joe Biden,

7   Antifa is a cause and not an organization, and I agree with

8   that assessment.  As Christopher Cantwell said, you can't have

9   a membership card.  It's a kind of general feeling about being

10  anti authority or anti fascism or whatever they would like.  So

11  I think the way we're proceeding is entirely appropriate.

12         MR. SMITH:  Also, Your Honor -- Josh Smith.

13  Plaintiffs have said in that brief that they said they

14  submitted that no member of plaintiffs -- none of the

15  plaintiffs are Antifa.  So for them now to claim that, well,

16  Christopher Cantwell thought that someone is, so then they must

17  be so then we can't ask these questions, that's disingenuous.

18         MR. CANTWELL:  The other thing I would say is calling

19  Antifa troublemakers or noting that they've been responsible

20  for a great deal of violence is hardly an extreme view.  It's a

21  fact.

22         THE COURT:  Ma'am, thank you for coming back.  There

23  was one follow-up question that I missed earlier.

24         Question number 41 asked were you not at all

25  concerned about prejudice against -- you checked that you were

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   not at all concerned about prejudice against Jews, racism and

2   blacks, racism against Hispanics.  Have you had any experiences

3   that caused you to have those views?

4           FEMALE JUROR:  No.  I mean, I care, but it's just I

5   try not to really listen to the news or anything.  So I don't

6   really have an opinion on either -- any of the matter.  That's

7   kind of what I wanted to get across.

8           THE COURT:  All right.  Thank you.  You may go back.

9   Thank you.

10          All right.  Regarding the first juror for cause, he's

11  the fellow who was I think trying to -- he had the earpiece.

12  Any objection to that juror?

13          MR. JONES:  Which juror was that, Your Honor?

14          THE COURT:  151.

15          MR. STABILE:  I'm sorry, Your Honor.  To clarify, 150

16  has already been excused?

17          THE COURT:  Yeah.  151.  We're speaking of 151, who

18  was the lady.

19          MR. SPENCER:  151 is a woman.  150 has already been

20  struck; is that correct?

21          THE COURT:  Yes.  That was the gentleman --

22          MR. SPENCER:  That has the hearing loss issue.  That

23  seems reasonable.

24          THE COURT:  Any objection to 151 for cause?

25          MR. JONES:  What's the cause basis for 151?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1            THE COURT:  I have no cause.

2            MR. JONES:  Oh, I see what you mean.  No objection.

3            MR. STABILE:  Your Honor, can we have a couple of

4    moments to confer?  I'm sorry.

5            THE COURT:  All right.

6            MS. DUNN:  Your Honor, a proposal, because it may be

7    more efficient for us to confer for ten minutes or so now on --

8            THE COURT:  Okay.

9            MS. DUNN:  All the jurors we just talked about, and

10   also to confer with the defense.  So if you want to give us

11   more time for that.

12           THE COURT:  We're going to go back and forth.  So you

13   all might think about your peremptories, too, in the meantime.

14   But go ahead and take a few minutes.  Don't -- please try not

15   to argue anybody that's obvious.

16           MS. DUNN:  We understand, Your Honor.  We also want

17   to note we're waiting for juror 176 to retrieve his

18   questionnaire from his car.  Oh, 168 and 176, we're waiting on

19   questionnaires for those two.

20           THE COURT:  Let's deal with the car -- when he gets

21   back -- is he back?  Check and see if he's back.  I told him to

22   come back.  Did we have somebody else that was doing a

23   questionnaire?

24           THE CLERK:  The woman was going to fix hers or do

25   another one.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  That one that was small?

2          THE CLERK:  Yes.

3          COURT SECURITY OFFICER:  He's back.

4          THE COURT:  Okay.  Call him in.

5          (Pause.)

6          Who else was doing a questionnaire?  168.  If she's

7     finished, take it to Heidi.

8          THE CLERK:  Judge, she'll bring us some copies in a

9     second.

10         THE COURT:  All right.  Sir, I'm going to let you go

11    back -- when the marshal comes back, I'm going to let you step

12    out for a minute and then we'll take up something else while

13    they have an opportunity to read the questionnaire.

14         MALE JUROR:  Okay.  Go back out?

15         THE COURT:  No.  Just wait here right now.  When he

16    comes back, I'll...

17         (Pause.)

18         Was she finished?

19         COURT SECURITY OFFICER:  Yes.

20         THE COURT:  Let this gentleman go back with the jury

21    until we get the questionnaires copied, and then we'll call him

22    back.

23         Okay.  In the order that we have them, Juror

24    Number -- would it be 153?

25         THE CLERK:  153 would be next, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  153.  Any objection for cause?

2          MR. KOLENICH:  Your Honor, I think we missed our

3    presentation for cause on 151, if I could go back to 151.

4          THE COURT:  All right.

5          MR. KOLENICH:  She had stated "racists came to

6    Charlottesville" and so forth in her answers, and we don't

7    think she came off of that particularly strong label while

8    questioned on the stand.

9          THE COURT:  All right.

10          MS. DUNN:  Your Honor, we disagree.  Out of all the

11    jurors we saw this morning, she was the most direct and to the

12    point about her answers on impartiality.  There were other

13    jurors, you know, who we can talk about later, but she had

14    answered, very simply and very clearly, every one of the

15    questions.

16          She was also asked direct questions about the

17    defendants in particular and whether she blamed them, whether

18    she could be impartial, and she specifically said that she

19    didn't blame the defendants, could be impartial, and said that

20    she could set aside preconceived notions.

21          THE COURT:  She did answer Question Number 72 yes,

22    but she -- as I recall, she's the one who explained that.

23          MS. DUNN:  Your Honor, just to be clear, on

24    Juror 151, her answer to 72 is she can make her decision based

25    on the evidence.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        THE COURT:  I think she -- I'm going to deny the

2   motion for cause.  I think she sufficiently explained her

3   answers.

4        All right.  Number -- which one is next?

5        THE CLERK:  153.

6        THE COURT:  153.  That was the young guy who said his

7   business would have to shut down.  I think he has an excuse.

8   So I'm going to excuse him.

9        All right.  What's next?  Number 158.

10       THE CLERK:  We excused 158.  That was the

11  74-year-old.

12       THE COURT:  Excuse me.  I'm sorry.  Who's the next

13  one?

14       THE CLERK:  159.

15       MS. DUNN:  Your Honor, before we get to 159, you had

16  asked -- 158, this gentleman, you told him that he was not

17  statutorily required to serve at age 70.  There's no problem

18  with that, obviously.  The later juror who was also 70 was not

19  told he was not statutorily required to serve.  He was just

20  asked --

21       THE COURT:  I wasn't trying to kick him off the jury.

22  The first gentleman appeared to not want to be on the jury, and

23  he didn't seem to know that he had an out.  It seemed we were

24  going nowhere with him.

25       MS. DUNN:  Understood, Your Honor.

                   Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1              THE COURT:  That's why I told him that.

2              I mean, I don't think we need to try to make -- I

3    mean, and I think I asked him if he wanted -- the second one if

4    he wanted to serve.

5              MS. DUNN:  The only point I'm making, just for

6    future, because there may be additional 70-year-olds, and the

7    second 70-year-old, is --

8              THE COURT:  Well, unless I've got a reason, I'm

9    not -- that I think they're too old to serve or that they seem

10   not to want to serve, they don't -- that they don't have to

11   serve.

12             MS. DUNN:  Understood, Your Honor.

13             (Pause.)

14             MS. DUNN:  Your Honor, would the Court be amenable to

15   the lunch break so that we might look at these questionnaires

16   and get organized?

17             THE COURT:  No.  I want to get rid of these.  We

18   don't have enough room for the people that are congregating in

19   the courthouse.  But, on the other hand, the jury is about to

20   mutiny, too.

21             MS. DUNN:  Your Honor, given your last comment, the

22   reason we raise it is I do think we could be more efficient

23   because we will work through the lunch break.  Obviously, we

24   defer to the Court, but if the jury has to have a break, too,

25   now may be a good time.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Okay.  We'll break, then, till 2 o'clock.

2          Bring all the jurors back.  Just have -- bring them

3    around.  I don't need for them to sit down anywhere.

4          Do you all object to me just telling the jury to go

5    to lunch?

6          MS. DUNN:  No, Your Honor.

7          MR. KOLENICH:  Not at all, Your Honor.

8          (Pause.)

9          THE COURT:  I think everyone should go to lunch and

10   be back at 2.  If you all want to wait a few minutes until we

11   get the jury out.

12          (Recess.)

13          THE COURT:  All right.  Good afternoon.  We have a

14   juror, a gentleman whose questionnaire is being copied, coming

15   up.

16          THE CLERK:  Number 176?

17          THE COURT:  176.

18          (Pause.)

19          THE COURT:  All right.  Sir, would you state again

20   your jury number?

21          MALE JUROR:  176.

22          THE COURT:  Okay.  I want to ask you -- looking at

23   Question 72, if I haven't before, it says, "Would you be able

24   to set aside preconceived opinions, if any, you may have about

25   the Unite the Right rally, this case, and the parties therein

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   and reach a decision based solely upon the evidence you hear at

2   trial in accordance with the law as instructed by the Court?"

3   And you answered yes to that.

4           You were asked if there was anything that might

5   influence your ability for a fair and impartial -- judge the

6   evidence presented in this case and apply the law.  You

7   answered no.

8           Are there any questions that the parties have?

9           MS. DUNN:  Yes, Your Honor.

10          THE COURT:  Do you have views on white supremacy?

11          MALE JUROR:  I'm not sure exactly what that is.

12          THE COURT:  Okay.  I'm hesitant to give a definition.

13  I would take it:  Do you have opinions regarding whether the

14  white race should be superior over any other race?

15          MALE JUROR:  No.  I believe everybody is equal.

16          THE COURT:  Are there any other questions?

17          (Pause.)

18          THE COURT:  If you found the plaintiffs had met their

19  burden of proof with regard to one or more defendants, but not

20  for other defendants, could you separate your views on each

21  individual's guilt or innocence?  That is, could you -- it's

22  not guilt for -- not for --

23          MALE JUROR:  Yes.  Everybody is an individual.

24          THE COURT:  Okay.  But you understand that each

25  defendant is to be treated separately in this case, and the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  plaintiff has to prove the case as to each defendant

2  separately?

3         MALE JUROR:  Okay.  Sounds fair.

4         THE COURT:  You have no problem with that?

5         MALE JUROR:  No.

6         THE COURT:  And do you believe that both white and

7  black persons could be subject to racism?

8         MALE JUROR:  There's racism on both sides, yes, if

9  that's what you're saying.

10        THE COURT:  Okay.  All right.  Thank you, sir.  You

11  may go out and let the lady come in.

12        COURT SECURITY OFFICER:  She hasn't come back yet.

13        THE COURT:  All right.  We'll have to include her in

14  the next panel, I think.

15        Let's go ahead and talk about the for cause.

16        Which number is the next juror?  Where are we on the

17  list?  159?

18        MR. KOLENICH:  Yes, Your Honor.  As to 159, this was

19  the lady who took quite a long time to answer whether she could

20  set aside her preconceived notions in the case.  From the

21  context, it was clear that she meant, could she set aside her

22  preconceived notions about the defendants or the guilt of the

23  defendants.  We believe that's sufficient cause for a strike.

24        THE COURT:  Okay.

25        MS. DUNN:  Your Honor, at the end of the questioning

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  her exact quote when asked if she could set aside her views

2  was, "I could.  I know how to be fair."

3          You know, the other thing, Your Honor, that we feel

4  we must point out is this woman is the only minority juror on

5  this panel.

6          THE COURT:  Now, that doesn't mean that you still

7  don't have to be qualified.

8          MS. DUNN:  Agree completely, Your Honor, which is why

9  my first point is that we believe her answers qualify her.  She

10  said -- when asked if she could set aside her views, she said,

11  "I could.  I know how to be fair."

12          And similarly, on her questionnaire, she said, you

13  know, that she would hope that she could be fair.  So I think

14  at the end of the day, that was her answer under questioning,

15  including repeated questioning from the Court.

16          MR. CANTWELL:  If I may, this is Christopher

17  Cantwell.  I'd like to note this juror also seems to have

18  extreme views about race.  She seems to be very concerned about

19  racism in all categories except for against white people.

20          MR. SPENCER:  Your Honor, this is Richard Spencer.

21  If someone asks me could you set aside preconceived notions and

22  be fair, I would answer that without hesitation.  She required

23  repeated questioning for five minutes.

24          THE COURT:  I thought I went as far as I could to

25  rehabilitate her, to get her to say she could set aside, and

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  she did not.  And I appreciate the situation.  So I'm going to

2  excuse her for cause.

3          Okay.  Next?

4          THE CLERK:  160.

5          THE COURT:  160.  Any objections for cause?

6          MS. DUNN:  No objection.  I apologize.  I'm being

7  told I am incorrect.

8          I apologize, Your Honor.  I thought the Court was

9  asking whether there were any objections to the Court's

10  dismissing for cause.

11          To clarify, are you asking whether the parties have

12  an objection?

13          THE COURT:  Yes.

14          MS. DUNN:  A cause objection?

15          THE COURT:  Yes.

16          MS. DUNN:  Yes, we do.

17          THE COURT:  Okay.

18          MS. DUNN:  This juror should be dismissed for cause

19  on three independent bases.  The first is that he says he has

20  ADHD, severe anxiety disorder, and will constantly be triggered

21  under -- having to wear a mask, which will affect his ability

22  to think logically.  That's the first reason.

23          The second reason, he said, is that he can't decide

24  the case on the evidence.  He said, in fact, that there are

25  certain groups where he himself is prejudiced.  And there was

                Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  no rehabilitation of that.

2           And then the third independent basis, Your Honor, is

3  that he says he is a company owner with a small business where

4  he has to -- it's vital for him to work all day to support his

5  family of three children and his spouse.

6           THE COURT:  All right.  I'm going to excuse him for

7  cause.

8           MS. DUNN:  Thank you, Your Honor.

9           THE CLERK:  164.

10          THE COURT:  164.  Anyone challenge for cause?  She

11  cleared up question 72, as I recall.  She said she

12  misunderstood.

13          Okay.  There being no objection for cause, we'll

14  pass.

15          THE CLERK:  166.

16          MS. DUNN:  Your Honor, plaintiffs do have a cause

17  objection to this individual.  Again, here there are several

18  bases.  The first basis is that she called Antifa a terrorist

19  organization, which is really the most possible -- the most

20  extreme possible language, saying they are trying to hurt

21  people.  Mr. Cantwell put on the record that in fact he does

22  plan to argue that one of our clients is a member of Antifa or

23  associated with Antifa.

24          THE COURT:  Well, I thought it was in the record that

25  you denied that anyone was a member of Antifa?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MS. DUNN:  It is correct that plaintiffs do deny

2    that, but Mr. Cantwell put on the record today that he plans to

3    argue that one of the plaintiffs is a member of Antifa.  And

4    that's core to his argument.  He said that.  And so this is a

5    woman who doesn't just have a view or some disapproval.

6          THE COURT:  Well, I mean, Mr. Cantwell is going to

7    argue that he's not liable in this case, I assume.

8          MS. DUNN:  That's right.  And if somebody came in

9    here and said that they believe Mr. Cantwell was a terrorist,

10   that would be a very compelling argument for him to make for

11   cause.  But he has said he's going to argue that one of our

12   clients is part of what this woman considers to be a terrorist

13   organization.

14         MR. CANTWELL:  Judge, if I may, Christopher Cantwell.

15   I don't know that I said it was core to my defense.  And I

16   don't think I used the word "member."  I think I said something

17   to the effect of adherent; it's a viewpoint.

18         MS. DUNN:  Your Honor, we can check the transcript.

19   I do believe that's what Mr. Cantwell said.  But it's

20   immaterial.  This woman is coming in believing that this is a

21   terrorist organization.  That's her strongly held view as

22   disclosed in her questionnaire.

23         THE COURT:  Okay.  But could you believe that they

24   are a terrorist on the left and your clients are not in that

25   group?  Like there could be terrorists on the right and persons

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   not on the right, but not as far as the terrorists?

2          MS. DUNN:  But Your Honor, that might be true in a

3   case where one of the defendants had not said that is what he

4   plans to argue.

5          THE COURT:  Well, I won't let him argue that.  How

6   about that?  If you don't have any evidence that a person is a

7   member of Antifa -- if you have evidence now, say so and we'll

8   take it up.

9          MR. SPENCER:  That seems very reasonable, Your Honor.

10  I will not be arguing that about the defendants.

11         MR. CANTWELL:  I intend to ask Mr. Wispelwey if he

12  tweeted, "Jesus is Antifa."  I intend to ask him that question,

13  because he did.

14         MS. DUNN:  Your Honor, respectfully, we request this

15  juror be dismissed for cause.

16         MR. JONES:  Your Honor, she was expressly asked if

17  she could be fair, if she could set aside, and she said yes to

18  that question.

19         THE COURT:  The objection is overruled.  I'm passing.

20  That juror will pass.

21         MS. DUNN:  Your Honor, I began on this juror by

22  saying that there are two other bases to strike her for cause,

23  so I'd like to put those before the Court as well.

24         On her questionnaire she says she's not vaccinated

25  and that she and her son both have a severe autoimmune disease.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   In court today she said she works in a two-person office, which

2   is just her and her supervisor.  So we believe that those are

3   additional bases for cause.

4          THE COURT:  Well, they may be reasons for her to ask

5   to be excused, but I asked her and she didn't.  I mean, if you

6   don't claim -- it's not -- the Court can't excuse people

7   because they have a right to be excused as opposed to have a

8   reason that they should not serve.

9          MS. DUNN:  Your Honor, I understand, and obviously we

10  defer to the Court, but she was not asked if she wanted to be

11  excused.  So we --

12         THE COURT:  Okay.

13         MS. DUNN:  I understand.

14         THE COURT:  Well, that's not -- if I asked all the

15  jurors every day if they wanted to be excused, I doubt that

16  we'd ever pick a jury in several days, probably.

17         MS. DUNN:  I mean, you did ask one of the jurors.

18         THE COURT:  I know you think -- and I explained that,

19  okay?

20         MS. DUNN:  I understand, Your Honor.

21         THE COURT:  All right.  Next juror.

22         THE CLERK:  166.

23         THE COURT:  Okay.  Any objection to number 166 for

24  cause?

25         MS. DUNN:  Your Honor, we just covered 166.  I

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  apologize.

2       THE CLERK:  Oh, I'm so sorry.  168.  I think that's

3  the juror we're waiting to come back in.

4       COURT SECURITY OFFICER:  She's here.

5       THE CLERK:  Pass her?

6       172.

7       THE COURT:  All right.  Any objection to number 172

8  for cause?

9       MS. DUNN:  Yes, Your Honor.

10       THE COURT:  All right.

11       MS. DUNN:  Your Honor, this juror was expressly

12  asked, if he heard that if Antifa were present at Unite the

13  Right, would he believe that they were responsible for the

14  violence, and he responded that yes, he would believe it would

15  be most likely.

16       The issue -- there are two issues here.  One is that

17  we covered with the last juror that's not present about the

18  plaintiffs.  Here one of -- the literal core of this case is

19  responsibility for the violence of the Unite the Right.  And

20  when he was asked if just the presence of Antifa would make him

21  believe that they were responsible, he said it would be most

22  likely.  And that is a basis to strike him for cause.

23       MR. KOLENICH:  Your Honor, the Court rehabilitated

24  172 by asking him would he disregard whatever others might have

25  done, whatever third parties might have done, and he responded

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    yes, he would.

2              THE COURT:  Okay.  I deny the motion as to him and

3    pass him.  Let's let the lady come in -- the other lady that's

4    here.

5              THE CLERK:  168.

6              THE COURT:  All right.  Thank you.  Are there any

7    questions now that you wish to ask for this juror?

8              MR. SPENCER:  I'm sorry, we don't have the

9    questionnaire for her.  Should we -- is that correct or am I

10   mistaken?

11             THE CLERK:  We gave it to counsel at lunch.

12             THE COURT:  On the questionnaire, I'm looking at

13   Question Number 72, which was not answered.  Would you be able

14   to set aside preconceived opinions, if any, you may have about

15   the Unite the Right rally, this case, and the parties therein,

16   and reach a decision based solely upon the evidence you hear at

17   trial in accordance with the law as instructed by the Court?

18             FEMALE JUROR:  I believe so, sir.

19             THE COURT:  All right.  How sure are you that you

20   can?

21             FEMALE JUROR:  Excuse me?

22             THE COURT:  You may take your mask off.

23             You say you believe you can.

24             FEMALE JUROR:  I believe so, yes.

25             THE COURT:  All right.  Is there anything the Court

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    should know that might influence your ability to fairly and

2    impartially judge the evidence presented in this case and apply

3    the law as instructed by the Court?

4              FEMALE JUROR:  I don't believe so, sir.

5              THE COURT:  Are there any other questions?

6              MS. DUNN:  No, Your Honor.

7              THE COURT:  All right.  You may step down.

8              (Juror out.)

9              All right.  Let's take her up right now.  Any

10   objection as to her for cause?

11             Okay.  Hearing none, we'll pass.

12             Next?

13             THE CLERK:  176.

14             THE COURT:  Any objection as to 176?

15             MR. SPENCER:  176?

16             THE COURT:  Yes.

17             MR. SPENCER:  No objection.

18             THE COURT:  No objection?

19             MS. DUNN:  No objection.

20             THE COURT:  All right.  We'll pass.

21             THE CLERK:  177.

22             MS. DUNN:  No objection.

23             MR. SPENCER:  No objection.

24             THE COURT:  Okay.  Who's next?

25             THE CLERK:  That's all on this list, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Okay.  That's all on the first panel?

2          THE CLERK:  Yes, sir.

3          THE COURT:  Okay.  Are you all ready to go into the

4   peremptory strikes?

5          MR. SPENCER:  Could we have a few minutes to confer?

6          THE COURT:  Can we take ten minutes, agree on ten

7   minutes?

8          THE CLERK:  Your Honor, would you like me to confirm

9   for everybody to mark on their judge's random list what I have?

10          THE COURT:  Yes.

11          THE CLERK:  Because that's the list we will be

12  working from.

13          Can you hear me now?  Sorry.  I had my microphone

14  off.

15          I had for cause marked off on the judge's random list

16  Juror 1, which is 159; Juror 2, which is 158; Juror 6, which is

17  153; Juror 8, which is 160; and Juror 10, which is 150.

18          THE COURT:  Is everyone in agreement with the clerk?

19          MR. JONES:  Yes.

20          MS. DUNN:  Yes.

21          THE COURT:  Heidi, when you're ready --

22          THE CLERK:  Are you going to give them that break?

23          THE COURT:  Yes.  We already started.  We'll be in

24  recess about eight more minutes.

25          (Recess.)

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE CLERK:  Do you want me to go over the Kiser

2   strike method?

3          So, counsel, as we discussed the other day about the

4   strike method we're going to use, you're going to each have six

5   strikes -- the plaintiffs will have six strikes, the defendants

6   will have six strikes -- which they can exercise jointly after

7   consultation.  And I will start with the plaintiffs' side.  I

8   will ask plaintiffs:  Juror Number, in this instance, 3, pass

9   or challenge?  If a pass is selected, the opposing party will

10  be asked:  Juror Number 3, pass or challenge?  If both parties

11  select pass, that prospective juror will become a member of the

12  panel.

13          Twelve jurors will be impaneled for this trial.  The

14  process is repeated, alternating terms of selection, until all

15  members are considered.

16          Attorneys -- I don't think I need to read that part.

17          Once all jurors are considered or all strikes are

18  used or the requisite number of jurors have been selected,

19  we'll check our list to make sure we're in concurrence with who

20  is remaining, and we will ask the jurors who are selected, once

21  we have verified our list, to stand.  They'll remain standing.

22  The Court will excuse the jurors who are seated, and they will

23  get direction from the Court at that point.

24          (Pause.)

25          THE CLERK:  They'll be given directions from the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   clerk's office.  We'll send them to the clerk's office to get

2   direction.

3          THE COURT:  All right.  Bring the jury back in.

4          MS. DUNN:  Your Honor?

5          THE COURT:  Yes.

6          MS. DUNN:  Is it the intention to bring the jury back

7   in for this part?

8          THE COURT:  Yes.

9          THE CLERK:  Judge, do you want me to excuse

10  immediately the ones that we have already excused during --

11         THE COURT:  No.  I think we'll go through it fast

12  enough that we can let those go all at one time.

13         THE CLERK:  Just immediately skip to Juror Number 3?

14         THE COURT:  I think we'll take the ones who are going

15  to serve and ask them to go to the -- remain.

16  **(Jury in, 2:53 PM)**

17         THE COURT:  Members of the jury, we're going to

18  complete the process now.  Within about 20 minutes, I think

19  I'll be able to excuse you all for the day and tell you who of

20  your group is going to be on the jury.

21         We have a number of groups coming after you until we

22  pick a jury.  But you may have -- everybody have a seat.

23         You may proceed.

24         THE CLERK:  Jurors, I want to remind you you've been

25  referred to by your numbers up until this point.  During this

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   process we will now be using a different number for a random

2   process.  So you will no longer be hearing the number you've

3   been being called.  I just wanted to let you know.

4            THE COURT:  All right.

5            THE CLERK:  Plaintiffs, Juror Number 3, pass or

6   challenge?

7            MS. DUNN:  Pass.

8            THE CLERK:  Defendants, Juror Number 3, pass or

9   challenge?

10           MR. KOLENICH:  Pass.

11           THE CLERK:  Defendants, Juror Number 4, pass or

12   challenge?

13           MR. CAMPBELL:  Ms. Wheeler, would it be possible to

14   also list the other number?

15           THE CLERK:  It's supposed to be random.  So we're not

16   supposed to call that number out.

17           MR. CAMPBELL:  Yes, ma'am.

18           MR. SPENCER:  So you were asking the defendants on

19   Number 4?

20           THE CLERK:  Correct, off the judge's random list,

21   Number 4.

22           MR. SPENCER:  Pass.

23           THE CLERK:  Plaintiffs, Juror Number 4, pass or

24   challenge?

25           MS. DUNN:  Pass.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1            THE CLERK:  Plaintiffs, Juror Number 5, pass or

2    challenge?

3            MS. DUNN:  Pass.

4            THE CLERK:  Defendants, Juror Number 5, pass or

5    challenge?

6            MR. SPENCER:  Pass.

7            THE CLERK:  Defendants, Juror Number 7, pass or

8    challenge?

9            MR. SPENCER:  Challenge.

10           THE CLERK:  Plaintiffs, Juror Number 9, pass or

11   challenge?

12           MS. DUNN:  Challenge.

13           THE CLERK:  Defendants, Juror Number 11, pass or

14   challenge?

15           MR. SPENCER:  Pass.

16           THE CLERK:  Plaintiffs, Juror Number 11, pass or

17   challenge?

18           MS. DUNN:  Challenge.

19           THE CLERK:  Defendants, Juror Number 11, pass or

20   challenge?

21           MR. SPENCER:  I think you mean 12.

22           THE CLERK:  I'm sorry.  Number 12.  Thank you.

23           MR. SPENCER:  Pass.

24           THE CLERK:  Actually, that was -- I apologize.  That

25   should have been:  Plaintiffs, Juror Number 12, pass or

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    challenge?

2              MS. DUNN:  Challenge.

3              THE CLERK:  Jurors, as I call your name, please stand

4    and remain standing.

5              THE COURT:  You mean number.

6              THE CLERK:  Yes, I'm sorry.  Number.  I don't have

7    any names on my list.

8              164, 168, 177.

9              THE COURT:  All right.  You three will remain in the

10   courtroom.

11             THE CLERK:  I'm sorry.  I'm not seeing three

12   standing.

13             164, 168, 177.

14             THE COURT:  Where is the other one?

15             You jurors who are seated, I'm going to excuse you at

16   this time.  We appreciate very much you being here today.  We

17   could not have reached -- been able to select the number of

18   jurors we did without your presence.  You've done a great

19   service to your community by serving -- being here today to

20   help us pick this jury.  And so I'm going to excuse you now.

21             The two of you who are standing, please remain.

22             Oh, here's the other lady.  Okay.  All right.  Which

23   lady is the one?

24             THE CLERK:  Number 164.

25             THE COURT:  164.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          All right.  You are to remain with the other two

2   jurors standing.  And I'm excusing everyone else.  And thank

3   you very much for your service.  So you all may leave now.

4          Ma'am, you may leave.  Thank you for being here.

5          All right.  You three will be on the jury.  And we'll

6   try to give you -- you keep in touch and use that phone number

7   to tell you when the case will start.  We would hope to get --

8   you know, we plan to start with the trial on Wednesday, but I

9   can't guarantee you that will be the case.  But unless you hear

10  to the contrary, be back at 9 a.m. Wednesday morning.

11         Now, during this time, do not discuss the case with

12  anyone.  Do not allow anyone to discuss the case with you.  Do

13  not remain within hearing of anyone discussing the case, and do

14  not do any research about or read, listen, or in any way

15  acquire any information about the case.  You're just simply not

16  to talk about the case with anyone; friends, family, or anyone.

17         So I'm going to excuse you and ask you to be back

18  9 a.m. Wednesday morning unless you hear to the contrary.

19         You may leave at this time.

20  **(Jury out, 3:04 p.m.)**

21         THE COURT:  All right.  Are you ready to call the

22  third -- second panel?

23         THE CLERK:  We have new paperwork.

24  **(Jury in, 3:08 p.m.)**

25         (Pause.)

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Members of the jury, before we begin, I

2    want to read this to you.  I wish to give you a statement of a

3    brief overview of some of the steps the Court has taken, and is

4    taking, to minimize the risk of the spread of COVID-19.

5          First, the Standing Orders of this Court require

6    everyone to wear a mask that covers their nose and mouth while

7    in public areas of the courthouse unless a court official

8    specifically directs otherwise.  That applies to everyone,

9    whether vaccinated or unvaccinated.

10          Second, access to the courthouse has been limited to

11   persons involved in this case.  That includes court staff,

12   litigants, attorneys, witnesses, and limited media.

13          Third, the Court has ordered all persons in the

14   courtroom to practice social distancing, except counsel,

15   litigants, and court staff.

16          Fourth, pursuant to the Court's Standing Order, all

17   court employees, including judges, chamber staff, and staff in

18   the clerk's office, must either be vaccinated or conduct a

19   COVID-19 test at least weekly.

20          Fifth, this Court has specifically ordered all

21   litigants, lawyers, witnesses, and staff -- court staff in this

22   case to attest before coming into the courthouse that they are

23   either vaccinated or have tested negative within three days of

24   their appearance.  They will have a continuing duty to do so

25   throughout the trial if they are appearing based on negative

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   COVID tests.  If there are any witnesses, parties, or attorneys

2   who can't meet these rules, they will be -- they will testify

3   by Zoom.

4           Sixth, the Court has ordered extra cleaning of touch

5   points, frequently touched surfaces, and bathrooms during the

6   trial.

7           And lastly, specifically for jurors, the Court will

8   require all jurors, of which the Court expects there will be

9   12, to be -- to always be masked.  Jurors will also be socially

10  distanced in the gallery.

11          Now, frankly, I believe that the conditions that we

12  are creating in the courthouse make it as safe to be here as

13  anywhere you might go in the public, such as stores or church

14  or any other event such as that, because we are really trying

15  to be as careful as we can concerning COVID.

16          Before we begin the process of jury selection, I wish

17  to give you a general overview of this case so that you know

18  what it is about and can better answer my questions.

19          This is a civil lawsuit brought by multiple

20  plaintiffs against multiple defendants, including individuals

21  and organizations, based on events that occurred in

22  Charlottesville, Virginia in August 2017.  The plaintiffs in

23  this case claim that the defendants and others conspired to

24  commit racially motivated violence at an event the defendants

25  called Unite the Right, which was held in Charlottesville on

107

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  August 11 and 12, 2017.

2         Plaintiffs allege that the defendants helped to plan,

3  promote, or carry out racially motivated violent acts during

4  that event, and in doing so caused plaintiffs physical,

5  emotional, and monetary harm.  Such acts include a torch march

6  on August 11 and various acts of violence on August 12,

7  including a car attack that drove through a large crowd of

8  people, injuring seven of nine plaintiffs in this case.

9         Defendants deny that they conspired with anyone to

10 commit violence, or that they are responsible for any injury or

11 damages suffered by plaintiffs.

12        If you are selected to serve as a juror in this case,

13 you will be asked to decide whether the plaintiffs proved that

14 the defendants engaged in a conspiracy to commit racially

15 motivated violence and harmed plaintiffs as a result.

16        Plaintiffs have also asserted other federal and state

17 claims against the defendants.  Later, I will explain the

18 elements of each of plaintiffs' claims in greater detail to

19 those of you who serve on the jury.

20        It is estimated that this case will last four weeks,

21 including this week.  Trial will take place Monday through

22 Friday, with the final scheduled trial date being Friday,

23 November 19.  I will start court once the jury trial begins at

24 9 o'clock in the morning, and we will stop court, as best

25 possible, by 5 p.m. in the afternoon.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        Soon, the clerk and the Court are going to ask you

2   some questions concerning your potential service as a juror in

3   this case.  This process is referred to as voir dire.  There

4   are several reasons for the questions we will ask you.

5        First, it may be that, although otherwise qualified,

6   some of you may not be eligible to sit in this particular case

7   for a variety of reasons.  We need to ask questions to

8   determine your eligibility.

9        Also, under the rules that govern jury selection in

10  this Court, the parties play a role by choosing the jury that

11  is to try the case.  That is why we have more of you here than

12  we really need to sit on the jury.  Under the rules, the

13  parties are entitled to exercise strikes to eliminate persons

14  from the jury panel, and then the remaining jurors will hear

15  the case.  The parties need to know more about you in order to

16  make intelligent decisions about who to strike.

17       The Court will be conducting jury selection in the

18  following manner:  First, the clerk will ask you collectively

19  some very general questions to establish your qualifications to

20  serve.  Second, the Court will ask you some general questions.

21  And third, the Court will call each prospective juror for any

22  specific follow-up questions the Court may have.

23       Throughout this process, the clerk and the Court will

24  refer to you by juror number, not your name.  This is a step we

25  sometimes take for the sake of our prospective jurors and

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    jurors' privacy.

2            We need to ask questions to determine your

3    eligibility.  Also, under the rules that govern jury selection

4    in this Court, the parties play a role in choosing the jury

5    that is to try the case.  That is why we have more of you

6    here -- wait a minute.  Strike that.

7            So if you could, please also refer to yourself

8    whenever needed by juror number.

9            For these preliminary questions, if the clerk or the

10   Court asks you a question and you have a response to the

11   question asked, please raise your hand and you will be called

12   on, so that if the Court asks are you here today to be

13   considered to serve as a juror in this case, you would all

14   raise your hand.

15           If you feel your answer to any question is

16   particularly personal in nature, you may ask to speak with me

17   and the attorneys privately; however, just so you are aware,

18   for the most part I do plan to mostly conduct any specific

19   questioning with each prospective juror individually without

20   other prospective jurors in the courtroom.

21           Now we will begin the process of selecting the jury

22   to hear the case.  Would you swear the jury?

23           THE CLERK:  Yes, Your Honor.

24           This is Civil Action Number 3:17-cv-72, Elizabeth

25   Sines and others versus Jason Kessler and others.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    I will call your number and if you would stand and

2 remain standing until I call the next number, and then you may

3 sit down.

4    Number 183, 185, 186, 189, 190, 194, 196, 197, 203,

5 206, 207, 210, 212, 213.

6    Ladies and gentlemen, if you would, please stand

7 again.  Would you please raise your right hands and be sworn?

8    Do you and each of you solemnly swear that you will

9 make true answers to such questions as may be propounded to you

10 testing your qualifications to serve as a juror in this court?

11    You do.

12    You may be seated.

13    Ladies and gentlemen, in order to serve as a juror in

14 this court, you must be a citizen of the United States who has

15 attained the age of 18 years and has resided in the Western

16 District of Virginia for one year.  You must not be under

17 charge or have been convicted in any court, state or federal,

18 of a crime punishable by imprisonment for a period of more than

19 one year, unless your civil rights have been restored.

20    You must be able to read, write, and understand the

21 English language and must be able both physically and mentally

22 to render efficient jury service.  Do you and each of you

23 qualify on these grounds?

24    You do.

25    Ladies and gentlemen, I will now ask several

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  questions concerning the case which is to be tried today for

2  the purpose of ascertaining whether you can hear the facts

3  fairly and impartially and render a just verdict.

4          The plaintiffs in this case are Elizabeth Sines, Seth

5  Wispelwey, Marissa Blair, April Muniz, Marcus Martin, John Doe,

6  Natalie Romero, Chelsea Alvarado, and Thomas Baker.  The

7  plaintiffs are represented by counsel seated to my right.

8          Counsel will now identify themselves by name and firm

9  for the record.

10          MS. DUNN:  Good morning.  Karen Dunn, Washington,

11  D.C.

12          MR. ISAACSON:  Bill Isaacson, Paul Weiss, Washington

13  D.C.

14          MR. STABILE:  Renato Stabile, New York.

15          MS. KAPLAN:  Roberta Kaplan from the law firm of

16  Kaplan Hecker & Fink, New York.

17          MR. MILLS:  David Mills, Cooley.  I'm in Bethesda,

18  Maryland.

19          MR. LEVINE:  Alan Levine from Cooley, New York, New

20  York.

21          MS. PHILLIPS:  Jessica Phillips, Paul Weiss,

22  Washington D.C.

23          MR. BLOCH:  Michael Bloch from Kaplan Hecker & Fink,

24  New York City.

25          MS. HONIG:  Faye Honig, New York City.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE CLERK:  The defendants in this case are Jason

2     Kessler, Richard Spencer, Christopher Cantwell, James Alex

3     Fields, Jr., Vanguard America, Andrew Anglin, Moonbase Holdings

4     LLC, Robert Azzmador Ray, Nathan Damigo, Elliott Kline,

5     Identity Evropa, Matthew Heimbach, Matthew Parrott,

6     Traditionalist Worker Party, Michael Hill, Michael Tubbs,

7     League of the South, Jeff Schoep, National Socialist Movement,

8     Nationalist Front, Augustus Sol Invictus, Fraternal Order of

9     the Alt-Knights, Loyal White Knights of the Ku Klux Klan and

10    East Coast Knights of the Ku Klux Klan.

11         The defendants are appearing both with counsel or on

12    their own behalf.  They are seated to my left or appearing by

13    Zoom.  Counsel and the defendants will now identify themselves

14    for the record.

15         MR. SPENCER:  My name is Richard Spencer.  I'm acting

16    on my own behalf.  I live in Whitefish, Montana.

17         MR. SMITH:  Josh Smith, Smith LLC, Pittsburgh,

18    Pennsylvania.  I represent David Matthew Parrott, Matthew

19    Heimbach, and Traditionalist Worker Party.

20         MR. KOLENICH:  Jim Kolenich, Kolenich Law Office,

21    Cincinnati, Ohio.  I represent Jason Kessler, Nathan Damigo,

22    and Identity Evropa.

23         MR. JONES:  Bryan Jones, Charlottesville, Virginia.

24    I represent Michael Hill, Michael Tubbs, and the League of the

25    South.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      MR. CAMPBELL:  David Campbell.  I represent James

2  Fields, and I'm from Richmond, Virginia.

3      MR. REBROOK:  Edward ReBrook.  I'm from Burke,

4  Virginia.  I represent the National Socialist Movement, Jeff

5  Schoep, and Nationalist Front.

6      MR. CANTWELL:  My name is Christopher Cantwell.  I'm

7  proceeding *pro se*.

8      THE CLERK:  The purpose of my mentioning this is to

9  ask each of you whether you are related by blood or marriage to

10  the plaintiffs, defendants, or any of the attorneys in this

11  action.  If you are, please state so to the judge.

12      Your Honor, do you have additional questions?

13      THE COURT:  Members of the jury, you've heard the

14  clerk read the names of the plaintiffs and you've heard counsel

15  in the courtroom introduce themselves.  At this time I will ask

16  plaintiffs' counsel to state the names of any new counsel who

17  entered an appearance in this case since the Court circulated

18  the jury questionnaire, other than those who are in the

19  courtroom.

20      MS. DUNN:  No new counsel, Your Honor.

21      THE COURT:  Same for the defendants:  Are there any

22  new counsel?

23      MR. KOLENICH:  None, Your Honor.

24      THE COURT:  For the prospective jurors, upon hearing

25  the names and seeing plaintiffs and plaintiffs' counsel, as are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   present in the courtroom, do you recognize them or realize that

2   you know them?  If so, please raise your hand.

3            You also heard the clerk read the names of the

4   defendants and you heard defense counsel in the courtroom

5   introduce themselves.  Upon hearing those names, do you

6   recognize them or realize that you know them?

7            Yes, sir?

8            MALE JUROR:  I recognize the name Richard Spencer.

9            THE COURT:  Do you know Mr. Spencer?

10           MALE JUROR:  Not personally, but I just knew his

11   name.  I don't recognize him personally.

12           THE COURT:  And your number, sir?

13           MALE JUROR:  190.

14           THE COURT:  Okay.  I'm now going to ask plaintiffs'

15   counsel -- was there anyone else that knew -- yes, sir?

16           MALE JUROR:  Yes.  I recognize Richard Spencer and

17   Christopher Cantwell.

18           THE COURT:  What is your number?

19           MALE JUROR:  196.

20           THE COURT:  And you knew?

21           MALE JUROR:  Richard Spencer and Christopher

22   Cantwell.

23           THE COURT:  All right.  Thank you.

24           THE CLERK:  There was one other gentleman.

25           THE COURT:  Yes, sir.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  Same answer.  I know those two names.

2          THE COURT:  What is your number, sir?

3          MALE JUROR:  206.

4          THE COURT:  And you personally know someone?

5          MALE JUROR:  No, I don't know them personally.  I

6     just know the names.

7          THE COURT:  Okay.  And who is it that you know?

8          MALE JUROR:  Christopher Cantwell and Richard

9     Spencer.

10         THE COURT:  All right.  I'm going to ask the

11    plaintiff to read the names of any witnesses --

12         THE CLERK:  There was another hand, Judge.

13         THE COURT:  Yes, sir.

14         MALE JUROR:  I have the same recognition of

15    Mr. Kessler and Mr. Cantwell.

16         THE CLERK:  Your number?

17         MALE JUROR:  186.

18         THE COURT:  Okay.  Thank you.  I'm going to ask

19    plaintiffs' counsel to read the names of any witnesses that

20    they may be calling, and I'll ask you to listen carefully to

21    the names.  And if you recognize someone you know, say so.

22         MS. DUNN:  Thank you, Your Honor.

23         Chelsea Alvarado, Jessica Alvarado, Thomas Baker,

24    Marissa Blair, Julie Convisser, Diane D'Costa, Stephen Fenton,

25    Allen Groves, Deborah Lipstadt, Marcus Martin, April Muniz,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   Winston Gwathmey, Sharon Reavis, Natalie Romero, Peter Simi,

2   Elizabeth Sines, Devin Willis, Seth Wispelwey, Nadia Webb, and

3   David Weiss.

4           There is a second list that I'll also read.  Erica

5   Alduino, Robert "Ike" Baker, Patrick Casey, Michael Chesny,

6   Burt Colucci, Benjamin Daley, Shane Duffy, Samantha Froelich,

7   Bradley Griffin, Dillon Hopper, Vasilios Pistolis, and Thomas

8   Rousseau.

9           THE COURT:  Did anyone recognize a name among that

10  group who you know?

11          All right.  I'll ask the defendants if they have

12  witnesses other than those on the plaintiffs' list.

13          MR. KOLENICH:  Wes Bellamy, Detective Steven Young.

14          THE COURT:  Does anyone know those two persons?

15          MALE JUROR:  Just heard of the name Wes Bellamy.  My

16  number is 197.

17          THE COURT:  Yes, sir.

18          MALE JUROR:  I've heard the name Wes Bellamy.  My

19  number is 197.  Don't know him personally.

20          THE COURT:  Okay.  Thank you.

21          MR. JONES:  Richard Hamblin, Charlottesville Police

22  Department Sergeant William Newberry.

23          THE COURT:  Anyone know those two persons?

24          Does any other defendant wish to read the names of

25  witnesses they intend to call?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           All right.  That concludes the portion of the voir

2    dire that the Court intends to conduct on the panel as a whole.

3    In a minute I'll ask the CSOs to guide this panel out of the

4    courtroom to the waiting room.  Then I will ask each -- to

5    bring in each member of the panel, starting with the lowest

6    juror pool number for this panel, back into the courtroom

7    individually.

8           All right.  Let the jury follow the marshal, if you

9    will.

10   **(Jury out, 3:34 p.m.)**

11          MS. DUNN:  Your Honor, I think, if it's okay, could

12   we have a two-minute break to use the restroom?

13          THE COURT:  I apologize.

14          MS. DUNN:  I'm sorry.  I wanted to ask if it's okay

15   to ask just for a quick restroom break.

16          THE COURT:  You all would like to take a break now?

17          MS. DUNN:  Just two minutes.

18          THE COURT:  Take ten.

19          (Recess.)

20          THE COURT:  Okay.  Which juror?

21          THE CLERK:  Juror 183.

22          THE COURT:  183.  All right.  Good afternoon.  You

23   may remove your mask, if you like.  Thank you.

24          Would you state your juror number?

25          FEMALE JUROR:  183.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  All right.  You heard me tell the jury

2    that this case is set for four weeks, including today.  Now,

3    recognizing that it is a substantial burden on you, probably,

4    to serve, do you have a hardship in serving that would be one

5    much greater than anyone else who might be called to serve?

6          FEMALE JUROR:  Well, I don't know how hardship it is,

7    but I just got finished with having COVID, and I was out of

8    work 16 days.  That's why my throat is like it is.  Excuse me.

9    I was out 16 days, and I'm the only one that works in the

10   facility that I am in.  And I've just went back to work this

11   past week.  And I don't get paid if I don't work.  And I'm

12   taking care of a grandson.  So it's pretty hard.

13         THE COURT:  Okay.  All right.  I'm going to excuse

14   you.  I think you have a sufficient excuse.  Thank you for

15   coming, and you may leave.

16         FEMALE JUROR:  Okay.  Thank you.

17         THE COURT:  Who is the next one?

18         THE CLERK:  185.

19         THE COURT:  All right.  Sir, you may remove your

20   mask, if you like.

21         You heard me tell the jury that this case is

22   scheduled to last four weeks, including today.  Now,

23   recognizing that that's a burden on everyone, and would be on

24   you, but would it cause a hardship for you that is -- you feel

25   is much greater than it might be for the average person who is

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  called to serve?

2          MALE JUROR:  No, sir.

3          THE COURT:  Okay.  You expressed some concerns about

4  the COVID situation.  And I outlined for you, for the jury when

5  they came in, what we were doing to ensure -- we can't ensure

6  anything, but what we're trying to do to mitigate the risk of

7  anyone being exposed to COVID while they're serving.  Does that

8  alleviate any of your concerns?

9          MALE JUROR:  Yes, sir.

10         THE COURT:  Do you think you could serve and not be

11  distracted by a concern about COVID as long as we comply with

12  what we have agreed to?

13         MALE JUROR:  Yes, sir.

14         THE COURT:  All right.  In one of the questions, you

15  were asked, "Under the law, the facts at issue in the trial are

16  for the jury" -- "the facts at issue in trial are for the jury

17  to determine.  The law applicable to the allegations in the

18  case is something which the Court will instruct you.  You are

19  required to accept the law as the judge explains it to you,

20  regardless of any opinions you might have as to what the law

21  ought to be.  Would you have any difficulty following

22  instructions if it was at odds with your own views of what the

23  law should be?"  And you answered "yes" to that.

24          I'd like to find out how you feel about -- if you

25  could -- if you could set aside any preconceived notions and

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   opinions you might already have.

2          MALE JUROR:  Yes, sir, I would try, but being from

3   the surrounding area, I am aware of the Charlottesville riots

4   and what took place.  And I have formed my own opinions of it,

5   but I would try to keep a clear mind about it.

6          THE COURT:  All right.  How sure are you that you

7   could set aside any preconceived feeling or --

8          MALE JUROR:  I would find it difficult, but I would

9   try within every means I have.  But I would find it very

10  difficult.  I use the expression it's sort of like having an

11  anti-vaxxer on a jury about giving shots.  It would be hard to

12  change my mind.

13         THE COURT:  Okay.  Any questions?

14         MR. KOLENICH:  Yes, Your Honor.

15         THE COURT:  In one of your questions you say that

16  you're very concerned about prejudice against Jewish persons,

17  black persons, and Hispanics, but not against white persons.

18  Can you explain why that is?

19         MALE JUROR:  Because I don't consider being white a

20  minority.  I do not consider white as a victim.

21         THE COURT:  Were there any more questions?

22         Let me ask you this:  Do you believe that all persons

23  have a right to demonstrate, irrespective of their beliefs?

24  That would be, say, on one end white nationalists, and on the

25  other side persons having diametrically opposed views?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  Truthfully, I don't believe in any

2   demonstrations toward hate as acceptable.

3          THE COURT:  What groups particularly do you associate

4   with hate?

5          MALE JUROR:  KKK, white nationalists.

6          THE COURT:  Anything else?

7          MS. DUNN:  Yes, Your Honor.

8          THE COURT:  Do you understand that if you are

9   selected to serve on the jury, as a member of the jury, you

10  would be required to follow the law as I instruct you and apply

11  it to the evidence in the case?

12         MALE JUROR:  Yes, sir.

13         THE COURT:  If the plaintiffs fail to prove their

14  case and do not prove the defendants violated the law, will you

15  follow the law as the Court instructs you?

16         MALE JUROR:  Yes, sir, I will.

17         THE COURT:  Do you know of any reason you could not

18  serve on this jury and render a verdict fair to both the

19  defendant and the plaintiff?

20         MALE JUROR:  I would try with all my means and heart

21  to judge fairly.

22         THE COURT:  All right.  Nothing else.  Thank you,

23  sir.  You may go back with the marshal.

24         And give him the number for the next one.

25         THE CLERK:  186.

                  Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           THE COURT:  All right, sir.  Would you give us your

2    jury number?

3           MALE JUROR:  186.

4           THE COURT:  You heard me state that the case will

5    last for four weeks, including today.  Now, we know that's a

6    burden on anyone, but is the hardship that it might cause you

7    one that you think is greater than it would cause the average

8    person called to serve?

9           MALE JUROR:  I can't say it is.

10          THE COURT:  All right.  You made reference to knowing

11   several of the -- or recognizing several of the names.  What do

12   you know -- how do you associate their names?

13          First, who did you say you knew?

14          MALE JUROR:  Yes, sir.  I think I identified --

15   Mr. Cantrell [sic] and Mr. Spencer were the two that stuck out.

16   I think if you consume the modern media and the news, those

17   names do make their appearances in the press.

18          THE COURT:  Okay.  You actually participated in the

19   Unite the Right; is that correct?

20          MALE JUROR:  Absolutely not, no.

21          THE COURT:  Sir?

22          MALE JUROR:  No, I did not.

23          THE COURT:  You did not.

24          MALE JUROR:  No, sir.  That might be a handwriting

25   error.  May I explain?

123

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Yeah.  I mean, you were there?  I don't

2   mean you --

3          MALE JUROR:  No, sir, I was not.  If I can explain --

4          THE COURT:  Yes.

5          MALE JUROR:  So I think if you're reading off my

6   questionnaire -- is that what that is?

7          THE COURT:  Yes.

8          MALE JUROR:  So there was a -- I would probably say a

9   peace and wellness response to the Unite the Right march at UVA

10  about two or three days afterwards, and I participated in that.

11  So if anything, it would be a counter to the -- to Unite the

12  Right.

13         THE COURT:  All right.

14         MALE JUROR:  Does that make sense?

15         THE COURT:  Yes.

16         All right.  Do you know of any reason you could not

17  serve on a jury in this case and render a verdict that is fair

18  to both the plaintiffs and the defendants based solely

19  according to the law and the evidence?

20         MALE JUROR:  Yeah, I -- I anticipated having a

21  question something like that.  It's weighted on me quite a bit,

22  and even now I may not be able to answer that in a way that's

23  satisfactory to you, sir.

24         I guess I can only say that I want to be very fair

25  and respectful to the law and to justice to the plaintiffs and

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  the defendants, but I think in my heart of hearts I'd have to

2  acknowledge that, as a member of this community, the events in

3  August really left me with some emotional scar tissue.  I'm

4  not -- as much as I would like to be able to say I can overcome

5  that, I honestly can't look you in the eye and say that I can.

6          THE COURT:  Right.  Thank you.  Any questions from

7  the plaintiff?

8          All right.  I don't feel that I need to read these

9  questions to him.  I'm going to excuse him for cause.

10         Thank you, sir.  You may leave.  Appreciate you being

11 here.

12         MALE JUROR:  Thank you, sir.

13         THE COURT:  What's the next number?

14         THE CLERK:  189.

15         THE COURT:  All right, sir, you may take your mask

16 off if you like.  You may remove your mask.

17         State your juror number.

18         MALE JUROR:  Sir?

19         THE COURT:  Your number.

20         THE CLERK:  Your juror number.

21         MALE JUROR:  Oh, 189.

22         THE COURT:  You heard me state that this case is set

23 for four weeks starting today.  I know that might be a burden

24 on you, to serve for four weeks, but would it be a burden on

25 you that would be greater than any other person who might be

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    called to serve?

2              MALE JUROR:  Not that I can see.

3              THE COURT:  All right.  In your questionnaire, the

4    question was asked, under -- "the facts at issue in this trial

5    are for the jury to determine.  The law applicable to the

6    allegations in the case is something to which the Court will

7    instruct you.  You are required to accept the law as the judge

8    explains it to you, regardless of any opinions you might have

9    as to what the law is or should be.  Would you have any

10   difficulty following that instruction if it was at odds with

11   your own views as to what the law should be?"  You answered

12   that question "yes."

13             And you state:  "It is for a jury to decide if the

14   law itself is just."  Is that your belief?

15             MALE JUROR:  That's what I was taught in criminal

16   justice class.

17             THE COURT:  Well, if I were to tell you that when

18   you're a juror in a case, you get the law from the judge who is

19   telling you what the law is -- not the judge's opinion, but

20   what the law is -- and it's your duty to follow the law, would

21   you do that, even though it ran counter to your beliefs?

22             MALE JUROR:  Yes, sir.  I guess I wouldn't have any

23   choice.

24             THE COURT:  All right.  You also said that the

25   counter-protesters should have stayed home, I believe.  Is

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   that --

2           MALE JUROR:  Yes, sir.

3           THE COURT:  Is that opinion so strong that you would

4   be unable to set it aside and render an impartial judgment

5   based solely on the evidence and the law in the case?

6           MALE JUROR:  I was just stating it.  I think that

7   they were trying to cause trouble.

8           THE COURT:  All right.  Okay.  Any questions?

9           MR. CANTWELL:  I do.  Just a moment.

10          Never mind.

11          THE COURT:  Plaintiff have any questions?

12          MS. DUNN:  Yes, Your Honor.

13          (Pause.)

14          THE COURT:  All right, sir.  I'm going to excuse you

15   for cause.  Thank you.  You may leave.

16          THE CLERK:  190.

17          THE COURT:  Have we told all of the jurors we're only

18   to go through this panel today, hopefully, and we'll only have

19   two panels tomorrow, three and four?

20          I hope we can get through.  I'm not sure we will.

21          Sir, you may remove your mask, if you like.

22          State your number, your juror number.

23          MALE JUROR:  190.

24          THE COURT:  Okay.  You heard me state that this case

25   is set for trial for four weeks, starting today.  Now, that may

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  be a hardship on you, but would your hardship be any greater

2  than the average person who would be called to serve?

3          MALE JUROR:  No.

4          THE COURT:  Okay.  Do you know of any reason you

5  could not serve as a juror in the case and render a verdict

6  fair to both the plaintiffs and the defendants?

7          MALE JUROR:  No.

8          THE COURT:  Are there any questions?

9          You stated that you knew Richard Spencer, as he was

10 the leading figure at the rally.  Do you feel that you have any

11 bias for or against Mr. Spencer?

12         MALE JUROR:  I don't have any bias because I've only

13 heard things from random people.  I've never really done any of

14 my own research on him.

15         THE COURT:  Are the things you heard flattering or

16 unflattering?

17         MALE JUROR:  I would say both flattering and

18 unflattering.  Again, I didn't really do any research of my own

19 to confirm or --

20         THE COURT:  If you are selected to serve on the jury,

21 you will be asked, as will the other jurors, to judge the

22 facts.  I will give you -- tell you what the law is.  You will

23 have to apply the law and the facts --

24         MALE JUROR:  Yes.

25         THE COURT:  -- to the facts.  Are you capable of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  doing that?

2          MALE JUROR:  I am.

3          THE COURT:  Can you set aside anything someone has

4  told you about Mr. Spencer and decide the case solely on what

5  you hear that he may or may not have done here in the

6  courtroom?

7          MALE JUROR:  Yes.

8          THE COURT:  All right.  Do you have any opinion about

9  who was responsible for any violence at the Unite the Right

10 rally?

11         MALE JUROR:  I do not have any opinion on it.

12         THE COURT:  In your questionnaire, you answered that

13 you were concerned about racism, but not racism against white

14 people.  Is it your view that white people cannot be victims of

15 racism?

16         MALE JUROR:  It's my view that white people cannot be

17 victims of racism as we've seen in this country in the past, if

18 that makes sense.

19         THE COURT:  All right.

20         MR. CANTWELL:  Judge, I gave you a question for the

21 wrong juror.  I apologize.

22         MR. SPENCER:  Your Honor, Mr. Cantwell made a

23 mistake.  He sent up a question for the next juror.

24         MR. CANTWELL:  It's the one in the blue ink.  That's

25 mine.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  The blue ink?

2          MR. CANTWELL:  That's mine.  It's for the next one.

3          THE COURT:  Okay.

4          Have you talked to anyone in Charlottesville who

5     knows Mr. Spencer personally?

6          MALE JUROR:  No.

7          THE COURT:  All right.  Any other questions?

8          MS. DUNN:  No, Your Honor.

9          THE COURT:  All right.  You may retire back to the

10    jury room.

11         Is anyone going to raise a for-cause challenge for

12    this juror?

13         MR. CANTWELL:  I will if nobody else is going to.

14    Christopher Cantwell.

15         MR. SMITH:  What was the question?

16         MR. CANTWELL:  A cause challenge.

17         I'd like to raise a cause challenge for that juror.

18    He said that he doesn't believe that whites can be victims of

19    racism, and I think that's a pretty extreme view on race.

20         THE COURT:  Well, that's -- in spite of that, I don't

21    think that disqualifies --

22         MR. SMITH:  Your Honor, that's classic critical race

23    theory talk, which is just an -- that is an anti-white academic

24    discipline that should not be entertained.

25         THE COURT:  Okay --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MR. CANTWELL:  The juror was also missing large

2    portions of his survey, I believe.

3          THE COURT:  I think he's qualified to serve.

4          MR. SPENCER:  I would offer just one concern.  His

5    representation of the Antifa movement was they fight a

6    far-right movement.  It seemed to be a kind of endorsement of

7    Antifa.

8          Now, again, I'm not going to bring up Antifa

9    regarding the plaintiffs, as I've said, but it struck me as not

10   a balanced perception of Antifa, certainly not one that most

11   people share.  He seemed to be almost kind of leaning towards

12   their side.

13         THE COURT:  Well, he said that he could try the case

14   according to the law and evidence.  I don't think that he's

15   disqualified.

16         MR. SPENCER:  Okay.

17         THE COURT:  Do we have the next one coming?

18         THE CLERK:  194.

19         THE COURT:  All right, sir.  You may take your mask

20   off, if you like.

21         You heard me state this case was going to last four

22   weeks.  I know that's maybe a hardship for some people, but

23   would it be a hardship on you that would be probably more

24   extreme than it might be for the average juror?

25         MALE JUROR:  No, it would not be.  I'm retired.

131

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  All right.  Do you have any health

2   condition that would prevent you from serving as a juror or

3   something that would keep you from being able to sit for an

4   hour or hour and a half without a break?

5          MALE JUROR:  No.

6          THE COURT:  And the last question on the

7   questionnaire, I've got 70 here, was not answered, but under

8   the law, the facts at issue in the trial are for the jury to

9   determine.  The law applicable to the allegations in the case

10  is something to which the Court will instruct you.  You are

11  required to accept the law as the judge explains it to you

12  regardless of any opinions you might have as to what the law

13  should be.  Would you have any difficulty following that

14  instruction if it's at odds with your own views of what the law

15  should be?

16         MALE JUROR:  No.

17         THE COURT:  All right.  In question 72 you said you

18  would not be able to set aside preconceived opinions you might

19  have about the Unite the Right rally and base your decision

20  solely on the evidence in the case.  Is that still your view?

21         MALE JUROR:  Yes, it is.

22         THE COURT:  All right.  Are there any questions?

23         All right, sir.  I'm going to excuse you.  You may

24  leave.  Thank you.

25         THE CLERK:  196.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  For the record, I think the views he

2     expressed were so strong there would be no way that he could be

3     rehabilitated.

4          Would you state your jury number?

5          MALE JUROR:  196.

6          THE COURT:  Okay.  You heard me tell you and the

7     other jurors that the case would last for four weeks, and that

8     could be a hardship on anyone.  But is there any reason that it

9     would be a greater hardship on you than the average person

10    called to serve on a jury?

11         MALE JUROR:  Yes, Your Honor.  There is --

12         THE COURT:  Take your mask off, if you don't mind.

13         MALE JUROR:  Okay, sure.  So I'm part of a two-person

14    architecture firm and we have a number of projects.  We each

15    handle our own projects and do virtually all the work for those

16    projects including client contact, drawings, design, so forth.

17    I've currently got five projects going right now that every day

18    I'm not in the office is a day the project gets delayed.  We've

19    got time commitments for each of those projects.  So it's a

20    hardship for me to be away for that length of time for sure.

21         THE COURT:  All right.  It says that you -- you have

22    attended a number of rallies to protest the Unite the Right

23    rally in August of 2017, and that your daughter participated in

24    Black Lives Matter protests in New Haven.  Do you think that it

25    would be hard for you to serve as a juror in this case, and if

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    the defendants -- if the plaintiffs failed to prove beyond a

2    reasonable doubt -- I'm sorry, strike that -- by a

3    preponderance of the evidence that the defendants conspired to

4    come to Charlottesville and commit racially motivated

5    violence --

6            MALE JUROR:  Yeah, just to clarify, I wouldn't say I

7    participated in a number of rallies, but I've participated in

8    some.  I've been to political rallies.  We had a practice

9    downtown and were pretty seriously impacted by everything that

10   happened leading up to August 11th and 12th, and the things

11   that followed.  I knew people, had friends that were in the

12   crowd that was hit by the rampaging car, and one was seriously,

13   seriously hurt.  So I can't say it's easy for me to forget

14   that, to -- but I would do my best.

15           THE COURT:  All right.  Any questions?

16           All right, sir, I'm going to excuse you.

17           MR. CANTWELL:  Oh, never mind.

18           THE COURT:  Yes.

19           MR. SMITH:  Nothing, Your Honor.  Sorry about that.

20   Nothing.

21           THE COURT:  Who was --

22           MR. SMITH:  Mr. Cantwell.  It's nothing, Your Honor.

23           THE COURT:  I thought Ms. Moody had her arm up.

24           MR. KOLENICH:  No questions, Your Honor.

25           THE COURT:  All right.  Thank you, sir, for being

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   here.

2           THE CLERK:  197.

3           THE COURT:  I'm going to -- he's excused for cause

4   and economic necessity.

5           All right, sir.  You may remove your mask, if you

6   would, and state your juror number.

7           MALE JUROR:  197.

8           THE COURT:  All right.  You heard me tell all the

9   jurors that this trial is set for four weeks, starting today.

10  Now, recognizing that it's a hardship on most people, would the

11  hardship on you be more extreme than it would be for the

12  average juror?

13          MALE JUROR:  It would probably be the same.

14          THE COURT:  You say it would probably be the same?

15          MALE JUROR:  It would be the same, yes, sir.

16          THE COURT:  All right.  And do you know of any reason

17  you could not serve on the jury and render a verdict fair to

18  both the plaintiff and the defendants --

19          MALE JUROR:  No, sir.

20          THE COURT:  -- based solely according to the law and

21  the evidence?

22          MALE JUROR:  No, sir.

23          THE COURT:  All right.  Question number 42 on the

24  questionnaire that we sent out was that this case involves

25  allegations against the defendants identified as organizers and

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   promoters of the Unite the Right rally in Charlottesville on

2   August 11 through 12, 2017.  Plaintiffs identified as private

3   citizens who attended the Unite the Right rally as

4   counter-protesters, that the defendants were responsible for

5   the injuries that the plaintiffs suffered during Unite the

6   Right.  Have you heard or read anything about this case?  And

7   you said you had heard the news reports.

8           Based upon what you might have heard or seen, have

9   you come to any conclusion about any of the issues that might

10  be involved in this case?

11          MALE JUROR:  I haven't came to any conclusions.

12          THE COURT:  There were several questions that were

13  apparently left off your questionnaire.  It says:  Would you be

14  able to set aside preconceived opinions, if any, you may have

15  about the Unite the Right rally, this case, and the parties

16  therein, and reach a decision based solely upon the evidence

17  you hear at trial in accordance with the law as instructed by

18  the Court?  And you answered "yes" -- I'm sorry.  I don't have

19  your answer.  I'm reading another form.

20          Can you -- can you set aside any preconceived notions

21  or opinions you have?

22          MALE JUROR:  I really didn't have any opinions, to be

23  honest, just because everyone see situations in their own eyes

24  their own way.  So to me, to each and everyone's choices, what

25  they want to do is their choice.  So I didn't really have an

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  opinion for that question.

2        THE COURT:  Is there anything you think the Court

3  should know that might influence your ability to fairly and

4  impartially judge the evidence presented in this case and apply

5  the law as instructed by the Court?  And you -- I mean, could

6  you do that?

7        MALE JUROR:  Could you repeat that, please?

8        THE COURT:  Is there anything you think the Court

9  should know that might influence your ability to fairly and

10  impartially judge the evidence presented in this case and apply

11  the law as instructed by the Court?

12        MALE JUROR:  No, sir.

13        THE COURT:  Are you sensible of any bias or prejudice

14  against either the plaintiffs or the defendants in the case?

15        MALE JUROR:  No, sir.

16        THE COURT:  All right.  Are there any questions?

17        MR. CANTWELL:  I have questions.

18        THE COURT:  All right.  Do you believe that white

19  nationalists should be allowed to hold public demonstrations?

20        MALE JUROR:  I think any group that want to hold

21  something that get a legal -- get legal -- what do I want to

22  say?  Anyone that get legal written permission from any state

23  or government body to do something, they are able to do it.

24        THE COURT:  All right.  In your survey you indicated

25  you were very concerned about racism, but not racism against

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   white people.  Is it your view that white people cannot be the

2   victims of racism, or that they deserve to be?

3          MALE JUROR:  Well, I think everyone can be a victim

4   of racism, no matter the color.  And it happens every single

5   day.

6          THE COURT:  All right.  Thank you.  Any other

7   questions?  Is that all?

8          Okay.  Thank you, sir.  Appreciate it.

9          All right.  That juror is qualified, or not

10   discharged for cause.

11          THE CLERK:  203.

12          THE COURT:  All right.  You may take your mask off,

13   please.  Would you state your number as a juror?  State your

14   number -- juror number.

15          MALE JUROR:  What was that?

16          THE COURT:  The jury number, the number they --

17          MALE JUROR:  Oh, 203.

18          THE COURT:  203.  Okay.  You heard me state that the

19   case is supposed to last four weeks.  And we know it's a

20   hardship for anyone to be away that long, but is it a

21   particular serious hardship for you to serve four weeks?

22          MALE JUROR:  I have a problem hearing you.  What was

23   that?

24          THE COURT:  Would it be extremely hard for you to

25   serve four weeks?  Would it be extremely hard for you to serve

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   as a juror for four weeks?

2           MALE JUROR:  I think so.  I'm self-employed and so I

3   wouldn't be able to have, you know, my workers wouldn't be able

4   to work and I wouldn't be able to, you know, have an income.

5           THE COURT:  What is your business?

6           MALE JUROR:  I'm -- construction.

7           THE COURT:  And how many employees do you have?

8           MALE JUROR:  Just one.

9           THE COURT:  Can that person work without you?

10          MALE JUROR:  No.

11          THE COURT:  What are you, in general --

12          MALE JUROR:  Handyman type general construction.  I'm

13  the only -- that's my helper.  I do all the work.

14          THE COURT:  Okay.  How large is your family?

15          MALE JUROR:  It's my wife and me and my daughter and

16  her son.  She's a stay-at-home mom.  She lives with us.

17          THE COURT:  Are they all dependent upon you?

18          MALE JUROR:  Right, at this point, because she

19  doesn't have a job, yeah.

20          THE COURT:  Okay.

21          Have you formed any opinion about any of the issues

22  that might come up in this case about the Unite the Right

23  rally?

24          MALE JUROR:  I guess I have.  I've watched all the

25  news.  I was here when it happened in town.  So I sort of have

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  come to some conclusions of what happened.

2           THE COURT:  In one of your questions you were asked

3  could you set aside any preconceived opinions, if any, you may

4  have about the Unite the Right rally, and this case and the

5  parties therein, and reach a decision based solely on the

6  evidence you hear at trial in accordance with the law as

7  instructed by the Court.  And you answered that no, you could

8  not set aside your preconceived opinions.

9           MALE JUROR:  Yeah, I just feel that, you know, that

10 it just was a horrible incident, you know, and that I think

11 that -- I just think that -- that they were wrong, you know --

12 you know and --

13          THE COURT:  Who do you think was wrong?

14          MALE JUROR:  The protesters, you know, the Unite the

15 Right guys, to even be there.  I just felt that they did

16 violate Charlottesville, you know.  They just took advantage of

17 the situation, and I just don't know if it was all handled

18 right.  It just all felt bad, the whole setup.

19          THE COURT:  All right.  And you think it would be

20 hard to set aside that opinion?

21          MALE JUROR:  Well, it's the opinion I have.  And it's

22 what I -- because I watched all the news and things and what

23 was going on.  There were friends that were there, and what

24 they told me, it just -- I just -- that's the opinion that I

25 developed.  I don't know if I could set it aside because it was

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   pretty engrained.

2         THE COURT:  If you were selected to serve on a jury,

3   you would be required -- you would be told, instructed that you

4   must follow the law whether you agree with it or not, and then

5   you would have to find the facts from the evidence only that

6   you heard in the courtroom.  Could you do that?

7         MALE JUROR:  I believe I could do that, yes.  I would

8   go by what I -- what I heard and what's presented to me.

9         THE COURT:  Okay.  All right.  Any questions?

10        MR. SPENCER:  Yes, Judge.

11        THE COURT:  All right.  On Questions 16 and 17 you

12   did not state who you admired most and least.  Since that time,

13   have you decided?

14        MALE JUROR:  No.  I don't seem to have an opinion on

15   that.

16        THE COURT:  Okay.  In your questionnaire you

17   indicated you were concerned about racism, but not racism

18   against white people.  Can you explain your view on that?

19        MALE JUROR:  What was that again?

20        THE COURT:  I think in the questionnaire one of the

21   questions was:  Are you concerned about racism?  And it listed

22   groups of persons --

23        MS. DUNN:  Your Honor --

24        MR. SMITH:  I think you may have the wrong -- I have

25   the wrong --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           MR. CANTWELL:  Did I make a mistake?  That was my

2    question.

3           THE COURT:  All right.  That's the wrong question.

4           MR. SMITH:  Let me double-check.

5           MR. CANTWELL:  206?

6           MR. SMITH:  No.  It's 203.

7           MR. CANTWELL:  Oh, I'm very sorry.  I have made a

8    mistake.  I'm very sorry.  And the other question that you have

9    from me is also wrong.  I apologize.

10          THE COURT:  The question in this case is whether

11   these defendants conspired to commit racially motivated

12   violence.  Can you judge that question based on the evidence

13   and the law as I instruct?

14          MALE JUROR:  Yes.

15          THE COURT:  All right.  What I want to go back to,

16   the hardship that it might be for you to serve on the jury.  I

17   mean, how critical would it be for you to serve?

18          MALE JUROR:  Well, because I just got over COVID

19   three weeks ago, but I was sick for over a month.  So I didn't

20   work that entire time.  And then I since then even hardly

21   worked, because I've been very fatigued and tired from having

22   COVID for almost 20 days.  I haven't really worked in the last

23   two months.  So another month would really -- really hurt

24   pretty bad.

25          THE COURT:  Okay.  All right.  Thank you.  You may go

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  back.

2          THE CLERK:  It will be 206.

3          THE COURT:  All right.  I think his hardship is a

4  real problem here.  It's marginal -- his feelings about the

5  case are pretty strong, but I think he has a genuine hardship,

6  and I'm going to excuse him based on the hardship.

7          All right, sir, if you would remove your mask.

8          MALE JUROR:  Okay.

9          THE COURT:  All right, sir.  As I told you earlier,

10 this case is set to be tried for four weeks, starting today.

11 Now, does that present any hardship for you that wouldn't be

12 common for most people who are called upon to serve?

13         MALE JUROR:  I could make it work, but I am a small

14 business owner.  So it would be difficult, but I could do it.

15         THE COURT:  What is your business?

16         MALE JUROR:  It's a software development company.

17         THE COURT:  Do you know of any reason you could not

18 serve as a juror in the case and render a verdict fair to both

19 the plaintiffs and the defendants based solely according to the

20 law and the evidence?

21         MALE JUROR:  Yes, I think I could do that.

22         THE COURT:  In this case, the main case is the

23 plaintiffs' claim that the defendants conspired by coming to

24 Charlottesville to engage in racially motivated violence.

25 That's the issue; irrespective of what people might believe,

143

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  that is the main question.

2          Can you set aside any other feelings you might have

3  and try the case and reach a decision on that issue, setting

4  aside any preconceived opinions?

5          MALE JUROR:  I think I could.  I feel like I have

6  been influenced by the media.  I've read things.  I've seen

7  things.  So obviously I've got that baggage.  But I think,

8  depending on how the case is presented, I would consider things

9  objectively.

10          THE COURT:  Would you have any hesitation about

11  finding for one of the parties if -- say, if the plaintiffs

12  fails to prove by a preponderance of the evidence that the

13  defendants are -- did the acts they're accused of, could you

14  find for the defendants?  And, vice versa, if they prove by a

15  preponderance of the evidence that the defendants did commit

16  the acts claimed, could you find in favor of the plaintiffs?

17          MALE JUROR:  In favor of the defendants or the

18  plaintiffs?

19          THE COURT:  Well, did I misspeak?

20          MALE JUROR:  I feel like if the plaintiffs don't do a

21  good enough job presenting the evidence, I'd have to be -- to

22  be fair, I think I would have to go with the defense.  I hope

23  that they wouldn't do that, though.

24          THE COURT:  Okay.  Are you saying -- what do you

25  mean, you hope that they wouldn't do that?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        MALE JUROR:  I would think that the plaintiffs would

2   present the case fairly well and that I wouldn't have to be in

3   a difficult position to make a decision, but if they didn't and

4   the defense did a good job making their case, to be fair, I'd

5   have to go with the defense.

6        That's what you want us to do, right?

7        THE COURT:  Right.  But I want to be sure that --

8        MALE JUROR:  Yes.

9        THE COURT:  -- you're not favoring one over the

10  other, and hoping one is going to win and not the other.

11       MALE JUROR:  I am.  But I'm saying that if the

12  plaintiffs don't do a good enough job making their case, to be

13  fair, I would have to go with the defense.

14       THE COURT:  All right.  Thank you.  Any questions?

15       At this point, have you formed an opinion as to who

16  was responsible for the violence at the events?

17       MALE JUROR:  Totally.

18       THE COURT:  All right.  Do you believe white

19  nationalists should be allowed to hold public demonstrations?

20       MALE JUROR:  I suppose they have a right to.  I don't

21  believe in that at all, but it is a right and I do believe in

22  sticking up for people's rights.

23       THE COURT:  In your opinion, you indicated that you

24  were very concerned about racism, but not racism against white

25  people.  Can you explain that?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      MALE JUROR:  I really don't even know what that is,

2   racism against white people.

3      THE COURT:  All right.  Do you feel that your

4   daughter's concerns over racial justice might affect your

5   opinion?

6      MALE JUROR:  I think they're consistent with my

7   beliefs, but again, like I said, I feel like fair is fair.  And

8   if this is a poorly presented case, then I'm not going to -- I

9   can't -- I can't in my conscience vote just because I believe a

10   certain group did what they did.

11      THE COURT:  One final question, I think probably

12   covered, but:  If the plaintiffs don't meet their burden of

13   proof, will you follow the law and find for the defendants,

14   regardless of what you hold?

15      MALE JUROR:  Yes.

16      THE COURT:  All right.  Thank you, sir.

17      Are they all the questions?

18      MS. DUNN:  Sorry, Your Honor.

19      THE COURT:  Thank you.  You may go back.

20      THE CLERK:  207, Dan.

21      THE COURT:  We'll hear argument on that juror later.

22      MR. SMITH:  Later?  Is that what you said?

23      THE COURT:  Yes.

24      Have the next one come in.

25      When you hand up a question, please write the name of

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   the party who is proposing the question.

2              All right, sir, you may take your mask down.

3              State your number as a juror.

4              MALE JUROR:  207.

5              THE COURT:  You heard me state that this case is set

6   for trial for four weeks, starting today.  I know this might be

7   a burden on you, but would the burden on you be any greater

8   than it would be for any other juror?

9              MALE JUROR:  I didn't get that, sir.

10             THE COURT:  Would it be any greater hardship for you

11  to serve than it would be for somebody else?

12             MALE JUROR:  No, it wouldn't.

13             THE COURT:  Okay.  On your questionnaire, the

14  question asked at Number 70, you did not answer.

15             MALE JUROR:  What was that?

16             THE COURT:  There are a number of questions you

17  didn't answer, but the question is:  Under the law, the facts

18  at issue in the trial are for the jury to determine.  The law

19  is for the judge to tell you what it is.  You are required to

20  accept the law as the judge explains it to you, regardless of

21  any opinions you might have on what the law is or should be.

22  Would you have any difficulty following that instruction if it

23  was at odds with your own views of what the law should be?

24             MALE JUROR:  No, I wouldn't have no difficulties.

25             THE COURT:  All right.  Question 71:  Do you have any

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   moral, religious, or personal beliefs which would prevent you

2   from rendering a fair and impartial verdict in this case based

3   solely on the evidence you will hear in the courtroom and the

4   Court's instructions on the law?

5          MALE JUROR:  Based solely on the evidence, I wouldn't

6   have, no.

7          THE COURT:  All right.  Would you be able to set

8   aside preconceived opinions, if any, you may have about the

9   Unite the Right rally, this case, and the parties therein, and

10  reach a decision based solely on the evidence you hear at trial

11  in accordance with the law as instructed by the Court?

12         MALE JUROR:  No.  Because I don't attend no rallies.

13         THE COURT:  Okay.  Is there anything you think the

14  Court should know that might influence your ability to fairly

15  and impartially judge the evidence presented in this case and

16  apply the law as instructed by the Court?

17         MALE JUROR:  No.  I have none.

18         THE COURT:  All right.  Are there any questions?

19         MR. CANTWELL:  I have one, Judge.

20         THE COURT:  There was a question about, who are three

21  public known people you admire most, and then three that you

22  admire least.  Is there any person that you particularly

23  admire?

24         MALE JUROR:  Is there any person who I particularly

25  admire?  Mostly was my mother and father.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1            THE COURT:  All right.  What about anyone you don't

2    admire?

3            MALE JUROR:  No.

4            THE COURT:  All right.

5            MALE JUROR:  I don't judge nobody.

6            THE COURT:  Any other questions?

7            All right.  Can you judge this case fairly according

8    to the law and to the evidence?

9            MALE JUROR:  Yes, I could.

10           THE COURT:  All right.  Thank you, then.  You may

11   retire.

12           THE CLERK:  Dan, 210.

13           THE COURT:  Would there be any challenge for cause

14   for that juror that just left?  Anyone challenge him for cause?

15           MR. CANTWELL:  I'm not challenging him for cause, but

16   I just wonder -- I was under the impression I had handed you a

17   question, and I'm wondering if you intentionally declined to

18   ask it or if something happened.

19           THE COURT:  What was the question?

20           MR. CANTWELL:  I wanted to ask:  Do you believe white

21   nationalists should be allowed to hold public demonstrations?

22           THE COURT:  All right, sir.  State your juror number.

23           MALE JUROR:  210.

24           THE COURT:  All right, sir.  I have told you and the

25   other jurors that the case is expected to last four weeks,

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    starting today.  Recognizing that that might be a burden on you

2    as well as other people, would the burden on you be any greater

3    than it might be on the average person who is called to serve

4    on a jury?

5            MALE JUROR:  No, sir.

6            THE COURT:  Okay.  Do you have any physical problem

7    that would prevent you from sitting for an hour, hour and a

8    half, if that was required as a juror?

9            MALE JUROR:  No, sir.

10           THE COURT:  Do you have any other physical limitation

11   that might prevent you from serving?

12           MALE JUROR:  No, sir.

13           THE COURT:  You indicated you have -- of course,

14   don't want to wear a mask, and none of us do, but the Court is

15   going to obviously require at this point that all jurors wear a

16   mask.  Are you willing to abide by the Court's order and wear a

17   mask covering your nose and mouth while you're serving?

18           MALE JUROR:  I've done okay today, sir.  As long as I

19   can suck on a peppermint or something, it's been helping.

20           THE COURT:  Okay.  Were there any other matters we

21   need to bring up?

22           All right.  Do you know of any reason you couldn't

23   serve as a juror in this case and render a verdict that's fair

24   to both the plaintiffs and the defendants?

25           MALE JUROR:  No, sir.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  Okay.  Any questions?

2          MS. DUNN:  Yes, Your Honor.

3          (Pause.)

4          THE COURT:  With regard to the wearing of the mask,

5    do you think -- you'll have to wear it over your nose -- I

6    don't want you to wear it now --

7          MALE JUROR:  Oh.  Okay.

8          THE COURT:  -- but you will be asked to wear it over

9    your nose and mouth.  Now, can you do that?

10         MALE JUROR:  I've been able to do it today as long as

11   I was able to take some regular breaks and it's open.  And it's

12   more the confinement.  If I feel that there's a lot of people

13   around me in waiting rooms and such, that's when I've had panic

14   attacks.

15         THE COURT:  Apparently, in Question 29 you said you

16   were mistreated on account of your race, referring to an

17   incident while you were in high school.  You were assaulted by

18   a Samoan football player?

19         MALE JUROR:  Yes, sir, I was.

20         THE COURT:  Can you tell us any more about that?

21         MALE JUROR:  Just in Hawaii, being in the military

22   and so forth, there was a lot of resentment from some of the

23   natives, the islanders there; the locals, we called them.  We

24   learned really quickly that you had to kind of watch out, keep

25   your distance and not offend people, but the football players

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   especially liked to beat up on skinny white kids like myself.

2             And they -- come to find out, they had an official

3   "hit a haole" day, which is what they refer to non-locals, and

4   on that day I was walking through the hall and one of the big

5   offensive linemen clock me in the jaw and so forth.  Of course,

6   I ran off, and he got in trouble, but, you know, I was -- that

7   was kind of a common thing.  You would get hit if you weren't

8   paying attention.

9             THE COURT:  Okay.  Is there anything about that

10  experience you think would influence your ability to serve as

11  an impartial juror in this case?

12            MALE JUROR:  No.

13            THE COURT:  All right.  And you state that you view

14  Black Lives Matter extremely unfavorably.  Can you say why?

15            MALE JUROR:  The leader, the founder of that movement

16  is quoted as saying that they are all trained Marxists, and so

17  while I don't disagree with the sentiment, and in fact I

18  support the meaning of those words, the organization itself, I

19  think there is a distinction to be made.  So if the leader is

20  saying they're trained Marxists, then as an American and

21  somebody who believes in our Constitution and freedom, I am

22  diametrically opposed to Marxism.  So that's why I would say

23  that about Black Lives Matter.

24            THE COURT:  All right.  Thank you.  Any other

25  questions?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MS. DUNN:  Your Honor, we may have another question.

2          THE COURT:  Do you already have a view about who was

3   responsible for violence at the Unite the Right rally, given

4   your views about Antifa?

5          MALE JUROR:  As I think I said on there, all I kind

6   of remember from that was that there were two sets of extremist

7   groups.  And I didn't really pay attention to, or at this point

8   I don't even remember the details.  All I know is that there

9   was some violence and that there were two distinct groups of

10  actors, if you would, and bad things happened.

11         THE COURT:  What are your views on white supremacy?

12         MALE JUROR:  It's wrong.  But you have a right to be

13  a white supremacist in this country.  We may not agree with

14  everything that everybody does or thinks, but that's just the

15  way our country -- if you want to be a fool, you can be a fool.

16  So personally, no, I don't agree with that, but there's a right

17  to be a white supremacist.

18         THE COURT:  Okay.  Thank you.

19         If the plaintiffs prove by a preponderance of the

20  evidence that the defendants conspired to commit racially

21  motivated violence, could you find for the plaintiffs?

22         MALE JUROR:  Absolutely.

23         THE COURT:  If you found the plaintiffs had met their

24  burden with regard to one or more defendants, could you

25  separate that view from the other defendants for whom the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  burden has not been met?

2          MALE JUROR:  Absolutely.

3          THE COURT:  Okay.  Thank you.

4          MS. DUNN:  Your Honor, I have just one.

5          THE COURT:  If you hear counter-protesters merely

6  described as Marxists or communists, would you hold a negative

7  view of the counter-protesters, given your views on Marxism?

8          MALE JUROR:  I believe in the rule of law.  If

9  somebody is breaking the law, it doesn't matter what they're

10 doing.  So that's all I would say about that.  I don't -- if

11 somebody says somebody was doing something wrong or breaking

12 the law or what have you, then that's what I would follow.  It

13 wouldn't matter to me what they were.

14         THE COURT:  All right.  Given your problem with some

15 anxiety, do you think you would be able to -- if selected, you

16 would be able to serve as a juror in the case throughout the

17 four weeks without difficulty?

18         MALE JUROR:  I hope so.

19         THE COURT:  All right.  Thank you.

20         THE CLERK:  212.

21         (Pause.)

22         THE COURT:  All right.  Ma'am, you may take your mask

23 off.

24         What number are you?

25         FEMALE JUROR:  212.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  212?

2          FEMALE JUROR:  Yes, sir.

3          THE COURT:  All right.  You've heard me say that this

4    case is scheduled to last for four weeks, starting today.  Does

5    that present any substantial hardship for you?

6          FEMALE JUROR:  No, sir.

7          THE COURT:  All right.  Do you know of any reason you

8    could not serve as a juror in the case and render a verdict

9    fair to both the plaintiffs and the defendants based solely

10   upon the evidence you hear here in the courtroom and the law as

11   I instruct you?

12         FEMALE JUROR:  No, sir.

13         THE COURT:  All right.  Have you formed or expressed

14   any opinion about any issue in the case already?

15         FEMALE JUROR:  No, sir.

16         THE COURT:  Are there any questions from the

17   jurors -- I mean, from the parties?

18         MR. SPENCER:  Could you please give us a moment?  I

19   just am now reading the questionnaire.

20         (Pause.)

21         I have no questions.

22         THE COURT:  All right.  Any questions?

23         MS. DUNN:  No, Your Honor.

24         THE COURT:  Okay.  Thank you.  You may retire.

25         THE CLERK:  213.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE COURT:  After this I will have to call that

2     gentleman back.  I failed to ask Mr. Cantwell's question.

3          MR. CANTWELL:  Thank you, Judge.

4          THE COURT:  All right.  You may remove your mask.

5     Sir, you may remove your mask.

6          Okay.  You heard me say that this trial is going to

7     last four weeks.  Does that create any sort of a problem for

8     you?

9          MALE JUROR:  Well, I have to check with my doctor

10    because I have such bad arthritis in my knee and my hand.  And

11    I'm taking blood thinners and high blood pressure pills.  So I

12    have to check with my doctor to see.

13         THE COURT:  Are you able to sit for an hour, hour and

14    a half without taking a break?

15         MALE JUROR:  I'm going to tell you the truth:  It's

16    hard because of my knee.  I have to kind of stretch it a little

17    bit and just walk around.  I can only sit for a short period of

18    time.

19         THE COURT:  Do you -- are you retired?

20         MALE JUROR:  Kind of.  They let me help out every now

21    and then, part-time.

22         THE COURT:  What sort of -- you say you have to check

23    with your doctor.

24         MALE JUROR:  Well, I mean -- well, to tell the truth,

25    I go back and forth to her, Dr. Dame in Orange.  I just don't

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  want to miss my appointments because they help me on my

2  medication and stuff.

3          THE COURT:  How often do you go to the doctor?

4          MALE JUROR:  Well, it's every -- once a month at

5  first, now it's every three months, something like that; every

6  three months to get a checkup.

7          THE COURT:  Okay.  You said you'd have to ask your

8  doctor about serving on the jury.  Is that --

9          MALE JUROR:  No.  No.  No.  No, sir.  I just don't

10  want to miss my appointments with them.  That's what I was

11  saying, sir.

12          THE COURT:  When is your next appointment?

13          MALE JUROR:  I went -- I think it was a couple months

14  ago, something like that.

15          THE COURT:  Well, it's not during this jury trial?

16          MALE JUROR:  No, sir.

17          THE COURT:  Okay.  You know, of course, that this

18  trial is about Unite the Right.  And one of the questions you

19  didn't answer on this jury was that under the law the facts at

20  issue are for the jury to determine.  The judge tells you what

21  the law is, and you are required to accept the law as the judge

22  explains it to you, regardless of any opinions you might have

23  as to what the law should be.  Would you have any difficulty

24  following those instructions, even if it was at odds with your

25  own view as to what the law should be?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          MALE JUROR:  I really didn't understand.

2          THE COURT:  All right.  You have to follow the law,

3    whether you agree with it or not.

4          MALE JUROR:  Right.

5          THE COURT:  Would you -- if I instructed you on some

6    issue of law and told you you had to follow it, could you do

7    so, or would you do so, even if it runs contrary to your own

8    belief?

9          MALE JUROR:  Yes, sir.

10          THE COURT:  All right.  Do you all have any

11    questions?

12          MR. CANTWELL:  I do.  Just a moment, Judge.

13          THE COURT:  Would you be able to set aside any

14    preconceived opinions you may have about Unite the Right rally,

15    this case, and the parties therein, and reach a decision based

16    solely on the evidence you hear in court and the law as

17    instructed by the Court?

18          MALE JUROR:  Do I have any trouble with it, sir?

19          THE COURT:  Yes, could you -- first, let me ask you

20    this:  Have you formed any opinion about the issues involved in

21    the Unite the Right rally as it may involve this case?

22          MALE JUROR:  No, sir.  I wouldn't do that.

23          THE COURT:  You're saying that you have no opinion

24    about who might be at fault insofar as this case is concerned?

25          MALE JUROR:  No, sir.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        THE COURT:  Did you have any opinion about who was at

2   fault in the violence that occurred at the rally?

3        MALE JUROR:  No, sir.

4        THE COURT:  There were a number of questions that you

5   didn't answer.  Was there any particular reason you did not

6   answer those questions?

7        MALE JUROR:  Well, I really didn't understand, sir,

8   at the time.

9        THE COURT:  All right.  You will be told that you

10  will have to decide this case separately as to each defendant,

11  and as, of course, to each plaintiff.  Would the fact that you

12  believe the plaintiffs found one person at fault, one defendant

13  at fault in the case, would that make you automatically find

14  others -- other defendants at fault?

15       MALE JUROR:  No, sir.

16       THE COURT:  All right.  Any other questions?

17       MALE JUROR:  No, sir.

18       THE COURT:  Thank you.  All right.  He may go back.

19       He's the last one, Heidi?

20       THE CLERK:  Yes, Judge.

21       THE COURT:  We need to bring back Number 207.

22       MS. DUNN:  We have one issue after we're done with

23  the next juror to raise.

24       THE COURT:  What?

25       MS. DUNN:  We have one issue to raise with the Court

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  when we're in between jurors.

2           THE COURT:  Sir, I neglected to ask you one of the

3  questions when you were here before.  And the question is this:

4  Do you believe that white nationalists have a right to hold a

5  public demonstration?

6           MALE JUROR:  Yes.

7           THE COURT:  All right.  Thank you, sir.  That's all.

8           What's the issue?

9           MS. DUNN:  Court's indulgence, Your Honor.  You know,

10  I can raise it later in the context of that juror when we

11  discuss.

12           MR. CANTWELL:  Judge, if I may, Christopher Cantwell.

13  With regard to 213, I had handed you a question geared at

14  checking -- you know what I'm talking about?

15           THE COURT:  I know, and I deliberately didn't ask it

16  because I thought it was humiliating, and I just didn't want to

17  embarrass the gentleman.

18           MR. CANTWELL:  It wasn't my intent.  I hope you

19  understand.  I think I have reason to have concerns about it.

20  He said he doesn't understand the questions.

21           THE COURT:  Well, I understand that, but I just felt

22  like it was --

23           MR. CANTWELL:  I'm sympathetic to that view.

24           THE COURT:  I mean, no offense to you over the

25  question, but I think you can judge that from what you saw.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           MR. CANTWELL:  Okay.

2           THE COURT:  All right.  Call the first one on the

3  list --

4           MS. DUNN:  Your Honor -- sorry, Your Honor.

5  Apologies.

6           THE COURT:  The first one on the list.

7           THE CLERK:  185.

8           THE COURT:  185?

9           MR. KOLENICH:  Your Honor, Juror 185 stated that he

10  strongly approved of statue removals, he was concerned about

11  all other racial prejudice except against whites, and he

12  actually wrote "white supremacy" on a line that wasn't asking

13  that question as something he was deeply concerned about.  Most

14  importantly, when he was asked could he -- could he render a

15  verdict despite these personal opinions, he said he would try

16  his best.  He hoped he could.  Things like that.  He never

17  really got around to saying yes, he could.

18           Most of the other jurors we passed today and examined

19  said "yes, sir, I can," or "no, sir, I can't."  This guy, no

20  doubt due to inherent honesty, said "I can try."  It's our

21  position that that's insufficient and that he's not a competent

22  witness.

23           THE COURT:  Yes.

24           MS. DUNN:  Your Honor, contrary to what defense

25  counsel just said, this person was expressly asked whether he

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   could follow the law as the Court instructs and apply it to the

2   evidence and his response was, verbatim, "Yes, sir."  And if

3   plaintiffs fail to prove our case, will you be able to follow

4   the law as the Court instructs?  And he answered, "Yes, sir."

5   So those questions were asked directly to him by the Court and

6   those were his exact responses.

7          MR. KOLENICH:  Admittedly, Your Honor, those were his

8   responses, but after giving those responses he went back to

9   saying "I'd try my best, I'd try my best."

10          MR. SPENCER:  We're speaking about 185, correct?

11          I found it very concerning that he claims in his own

12   words that demonstrations about hate are unacceptable.  That

13   seems to be a strong, unconditional idea, that a white

14   nationalist or any other controversial group, in his mind, does

15   not have a right to demonstrate.

16          THE COURT:  All right.

17          MS. DUNN:  Your Honor, that is not at issue in this

18   case.  This individual is asked expressly by the Court whether

19   he could follow the law and the facts and have that solely

20   dictate his judgment, and he said that repeatedly.

21          THE COURT:  Well, saying it doesn't necessarily

22   answer the question of whether he stands indifferent to the

23   cause so that he could be fair.

24          MS. DUNN:  Your Honor, I think that there have been

25   jurors that have been qualified who are very similarly situated

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  to this individual.  I can look back at the last panel, but

2  there was one woman in particular, her views were very extreme;

3  Your Honor questioned her, and she said that she could follow

4  the law and the facts.  This is not a different case than that.

5          And so, you know, the defendants can use their

6  strikes on this person, but there is no reason not to qualify

7  him.

8          THE COURT:  Well, it's my opinion after hearing him

9  that I do not think he stands -- approaches the case in a

10 manner that he could not be -- find it very difficult to -- I

11 think it would be very difficult for him to set aside his idea

12 about what took place, unlike most of the jurors that I've

13 seen.  He has a very strong view.  So I'm going to excuse him

14 for cause.

15         Who is the next one?

16         THE CLERK:  190.

17         THE COURT:  190?

18         MS. DUNN:  Your Honor, I believe we discussed cause

19 challenges to 190 already.

20         THE COURT:  What?

21         MS. DUNN:  Your Honor, I think at the time of when

22 juror 190 came to the Court, you asked the parties already

23 about cause, and I believe this has been decided already.

24         THE CLERK:  I thought it was overruled.  I marked it

25 as overruled.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        MR. KOLENICH:  We concur with that.

2        THE COURT:  Who is next that we haven't taken up for

3   cause?

4        THE CLERK:  197.

5        MR. CANTWELL:  Did we get to 194?

6        MR. SPENCER:  He's already been struck.

7        THE COURT:  Anyone challenging 194 for cause?

8        MR. SPENCER:  197, you mean?

9        THE COURT:  194 we've already excused.

10        THE CLERK:  It's 197.

11        THE COURT:  197.  Anyone challenging 197 for cause?

12        MR. CANTWELL:  I will if nobody else is.  He has --

13   he's indicated he was very concerned about racism, but not

14   racism against whites.  He did not answer the impartiality

15   questions on the survey, even though he said he had read a lot

16   about the event and about the death of Heather Heyer.  If he

17   has read that much about it, I think he should answer the

18   impartiality questions, and I think it's suspect that he didn't

19   on the survey.

20        THE COURT:  All right.  I think he's qualified and

21   deny the motion for cause.

22        THE CLERK:  206.

23        MR. KOLENICH:  Your Honor, we believe 206 is not a

24   competent juror.  He's expressly and openly hoping that the

25   plaintiffs win the case.  He also states that he doesn't have

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   the vaguest idea what racism against white people is.  This

2   individual is pulling for the plaintiffs and as much as told

3   the Court that he's going to explicitly make a race-based

4   decision.

5          THE COURT:  Would you like to respond?

6          MS. DUNN:  Yes, Your Honor.  This juror is qualified.

7   And I'm just going to read his responses because, on every

8   question that he was asked, he gave an answer that is textbook

9   impartiality.  He said he could render a verdict that's fair to

10  both plaintiffs and defendants.  He was asked, can he set aside

11  any feelings he might have.  He said, "I think I could.  I

12  would consider things objectively."  He was asked, if the

13  plaintiffs failed to prove their case by a preponderance, can

14  you find for the defendants?  He said to be fair, he would go

15  with the defense if we did not prove our case.

16         He was then asked if the white nationalists had a

17  right to rally.  He said they do have a right.  He believes in

18  standing by rights.  And so, you know, again -- Your Honor,

19  somebody sent me a note asking if you could hear me.

20         THE COURT:  I was hearing you okay.

21         MS. DUNN:  Okay.  Great.  Thank you.

22         I mean, 166, who was retained in the last panel, said

23  that she would try to follow the law.  She would try to get

24  past her extreme views that she had where she talked about

25  Antifa being a terrorist organization.  And she didn't say that

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  she could be fair.  This juror was much stronger than she was,

2  and she was deemed qualified.

3          THE COURT:  You know, we take up each juror

4  separately.  Going back -- you know, if we've got to go through

5  all the jurors, I mean, I hear the juror speaking, I examine

6  the juror's demeanor, and all of that goes into it.  And then

7  you bring up a few things one juror said and say, therefore,

8  any juror ought to be qualified, and it doesn't work that way.

9  Every juror has to meet the qualification.

10          And I know, you know, the insinuation here.  But I'm

11  trying to do the best I can to get a fair and impartial jury,

12  one that will pass muster.

13          MS. DUNN:  I understand, Your Honor, and we are

14  aligned in that goal.  I think we've been here all day

15  listening to people say their views, and all we're doing is

16  raising the comparison point.

17          But taking this individual juror on his own, his

18  answers very much were very expressly that he could render a

19  fair verdict either for the plaintiff or defense.

20          THE COURT:  All right.  I think the juror is

21  qualified.  I will not strike him for cause.

22          Yes.

23          MR. SPENCER:  Have you reached a final decision or

24  could I speak on this?

25          THE COURT:  Yes.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        MR. SPENCER:  Thank you.  I was very concerned about

2   his discussion of his daughter.  And describing your daughter

3   as very concerned about racial justice, that seems to be a kind

4   of identity for her, which is of course okay.  But the idea of

5   going against your own daughter just seems too difficult a

6   burden for anyone to achieve.

7        The other aspect that concerned me, just to put a

8   finer point on it, yes, people can say the right things

9   sometimes, but you have to look underneath that.  He said that

10  I won't find for the plaintiffs if they put their case together

11  correctly or something, almost in a performative manner.  I

12  think he was clearly messaging that he knows they're going to

13  have a good case, as I know they will.

14       THE COURT:  Wait a minute.  I've got this juror at

15  the time, he's the one that said the plaintiff -- he hoped the

16  plaintiff would put their case together --

17       MR. SPENCER:  Yes.  He said I'm hoping they're going

18  to do a good job.

19       MR. SMITH:  It was excruciating to watch, Your Honor.

20       THE COURT:  I think he shows an undue bias toward the

21  plaintiffs' side of the case and I don't think he's qualified

22  to serve.  And I don't think there's any other juror that is

23  equal to him on those comments.  I don't think you can come

24  into court and say, well, I'm pulling for the plaintiff.

25       MS. DUNN:  Your Honor, we understand.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

```
1          THE COURT:  Thank you.  All right.  Next?
2          THE CLERK:  207.
3          THE COURT:  Who is 207?  Any objection for cause?
4          Any objection for cause?
5          MR. SPENCER:  I have no objection.
6          MR. CANTWELL:  Still on 207, right?  No objection for
7  207.
8          THE COURT:  No objection?
9          MR. SPENCER:  No objection.
10         MR. CANTWELL:  No objection.
11         THE CLERK:  210.
12         THE COURT:  Mr. Cantwell, is this the one we had the
13 question about?
14         MR. CANTWELL:  No, the cognitive question, that was
15 213, Judge.
16         THE COURT:  Okay.  213.
17         MS. DUNN:  Your Honor, we'd like to address 210.
18 210.
19         THE COURT:  210, all right.
20         MS. DUNN:  So 210 at no point today was wearing his
21 mask properly over his nose and mouth despite the Court's
22 instruction.  And I know he was asked a little bit about this.
23 On his questionnaire he says he has anxiety and discomfort and
24 that if he has to wear the mask the full time, he won't be able
25 to do that.  I -- he never definitively said that he could.  He
```

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  said, I was okay today.  And so just based on what we saw, this

2  individual at no point today wore his mask properly, and I

3  think there's real reason to be concerned and to doubt that

4  he's going to be able to do this.

5         I also think there's a problem for him.  He said that

6  when he's with other people, I think he could very well have a

7  problem, not just day-to-day in the trial, but in

8  deliberations.  So we had sent a question of that nature to be

9  asked and I think he just kept saying, "Well, I'm okay today."

10  I think there's genuine reason to be very worried about him.

11         THE COURT:  Okay.  I felt he's qualified.  I deny the

12  motion for cause.

13         Who else?

14         THE CLERK:  212.  Any objection to 212?  Any

15  challenge to 212?

16         MR. SPENCER:  Your Honor, I found it difficult to

17  really understand potential Juror 212.  She didn't answer her

18  questions either on the -- on the questionnaire or before the

19  Court with any thoroughness.  It just seems to be a rather

20  dubious case of -- I can't really explain to you -- I can't

21  articulate a cause against her, but I -- I feel like this is

22  someone who might not really want to be in this and want to

23  participate.

24         THE COURT:  I think I saw here that she had been on a

25  jury and had been foreperson, not that that makes -- oh.  She

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   was not the foreperson.

2           Well, I don't think there's any legal excuse.  She's

3   qualified.

4           THE CLERK:  The last is 213.

5           MR. SPENCER:  Your Honor, this man did not answer the

6   vast majority of his questionnaire.  He answered your own

7   questions, which were presented perfectly.  He answered them

8   incoherently, to be frank.  Along with his serious health

9   concerns which he expressed about arthritis, I don't see this

10  person as competent in the sense that he can see facts and

11  evidence in the law and formulate his own opinion.

12          THE COURT:  All right.  Any objection?

13          MS. DUNN:  Response to defense:  We disagree.  With

14  regard to the arthritis, the Court asked him whether he had

15  appointments during this trial.  He said no.  He understood and

16  answered whether he could follow the law, whether he agreed or

17  not.  You asked him whether he formed any opinions.  He said

18  no.  He had no opinion, and was asked directly, about who was

19  at fault, and he was also asked whether he could make

20  individual determinations as among defendants.  He said yes.  I

21  think he understood all those questions and gave --

22          THE COURT:  All right.

23          MS. DUNN:  -- understandable answers.

24          THE COURT:  I'm sorry.  I didn't mean to cut you off.

25          MS. DUNN:  No, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1        THE COURT:  I think I should have probably asked the

2   question I didn't ask, but what's his number?

3        MR. SPENCER:  213.

4        THE COURT:  Ask 213 to come back.

5        All right.  Sir, the question I overlooked asking

6   you:  This case contains numerous defendants and numerous

7   plaintiffs and complex facts and evidence.  Are you confident

8   you can keep track of complex information over a

9   four-weeks-long trial?

10        MALE JUROR:  Yes, I can.

11        THE COURT:  Thank you.  That's all I needed to ask.

12        All right.  I find the juror qualified.  I deny the

13   motion --

14        MR. CANTWELL:  Judge, may I speak on this very quick,

15   please?  Christopher Cantwell.

16        THE COURT:  Sir?

17        MR. CANTWELL:  I may, or no?

18        THE COURT:  I'm sorry?

19        MR. CANTWELL:  I'm asking if I may speak on this

20   before you make your final decision.

21        THE COURT:  Okay.

22        MR. CANTWELL:  I think you had it right the first

23   time, Judge.  The man said he did not understand the questions,

24   which is why he didn't answer them on the sheet of paper.  I

25   asked you to ask the question before, and you considered it so

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   obvious that it wasn't necessary to ask him the question.

2           THE COURT:  No, that wasn't it.  I just thought it

3   was insulting, and I thought it -- and that's what I felt I

4   would feel, is insulted, if somebody asked me that question.

5           MR. CANTWELL:  I can understand.

6           THE COURT:  And I really just didn't want to

7   embarrass the man.

8           MR. CANTWELL:  Understood, Judge.  Thank you.

9           MR. SPENCER:  Your Honor, the issue that the

10  plaintiffs raised of, he has no preconceived views on Unite the

11  Right, I think this speaks to my broader point.  The idea that

12  one lived in Charlottesville and there was a media saturation

13  of the event -- it was all that anyone talked about.  In the

14  subsequent months whenever a politician would mention Unite the

15  Right or "both sides" or a Trump rally, everyone who have an

16  opinion.  The fact that he has no preconceived opinion is very

17  disturbing.  It strikes me as someone who doesn't participate

18  in the public sector in any way.

19          That's of course his right.  That's fine.  But that's

20  not someone who will ever conceive of any opinion.  And they

21  ultimately are going to have to reach a conclusion on this

22  case.  I don't feel he's a competent and someone who can look

23  at facts, look at the law, and say, "This is what's right.

24  That's what's wrong."

25          THE COURT:  Thank you.  I think he's qualified.  And

172

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1    he's on the panel.

2             Okay.  How many do we have?

3             All right.  We have six we'll take up now for

4    peremptory strikes.

5             THE CLERK:  Would you like me to call the numbers to

6    verify?

7             THE COURT:  Yes.

8             THE CLERK:  I'll call out the numbers that I have

9    marked.  Ready?

10            I have 183, 185, 206 -- I'm sorry.  Let me call from

11   the right list so you're not jumping all over the place.  I'm

12   sorry.

13            MS. DUNN:  Sorry, Ms. Wheeler.  Are these jurors that

14   have been excused --

15            THE CLERK:  Yes.

16            MS. DUNN:  -- or remain?

17            THE CLERK:  Correct.

18            MS. DUNN:  Excused.

19            THE CLERK:  I have 183, 185, 186, 189, 194, 196, 203,

20   206.

21            THE COURT:  Would you all like ten minutes?

22            MS. DUNN:  Yes.  Yes, please.

23            THE COURT:  Then we'll adjourn.

24            (Recess.)

25            THE COURT:  Call the -- are you all ready?

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          THE CLERK:  Yes, Judge.

2          THE COURT:  Okay.  We'll call the jury in.

3  **(Jury in, 6:11 PM)**

4          THE COURT:  All right.  Members of the jury, I'm

5  sorry you've had to stay here so long, but it's a question of

6  staying a little longer or coming back tomorrow morning.

7          I know it sounds like it's a deluge out there.  I

8  think we're going to try to work to let you all go down to the

9  lower level in the garage, and maybe we can give you a ride to

10  wherever your car is so you won't get so wet trying to get back

11  to your car.

12          We're now ready to proceed with the final part of

13  this exercise.

14          You may proceed.

15          THE CLERK:  Ladies and gentlemen, I just want to

16  mention at this point in the procedure -- you've been going by

17  your juror number.  At this point, we're going to be

18  referencing a different number and a random procedure.  So you

19  will not hear your number at this point right now.

20          Plaintiffs, Juror Number 1, pass or challenge?

21          MS. DUNN:  Pass.

22          THE CLERK:  Defendants, Juror Number 1 --

23          MR. SPENCER:  Hold on.  I don't have the numbers of

24  the jurors on my sheet -- you know, on the judge's list.  So we

25  just want to make sure that we're doing this right.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           MR. JONES:  Jim has got them.

2           MR. SPENCER:  All right.  I'm satisfied.

3           THE CLERK:  Defendants, Juror Number 1, pass or

4    challenge?

5           MR. KOLENICH:  Challenge.

6           MS. DUNN:  Your Honor, may we approach?

7           THE COURT:  Yes.

8           MS. DUNN:  Thank you.

9           (Side bar.)

10          MS. DUNN:  First of all, under the Fourth Circuit

11   law, we do not have to wait until there is a pattern because

12   once there's a pattern, it's too late, and that's particularly

13   true when there aren't that many minority jurors.

14          The case on that is Thigpen v. Shields, as I'm sure

15   you know.  So this juror's answers -- oh, you can't hear?

16          So to say it one more time, you don't have to wait

17   until there as a pattern under Fourth Circuit law.  The case is

18   Thigpen v. Shields, and that's particularly the case --

19          THE COURT:  Which juror is this?

20          MS. DUNN:  This is the juror --

21          MR. KOLENICH:  Black male, shaved head, beard.

22          MS. DUNN:  He's the one -- I can tell you the

23   questions he was asked.  Have you come to any conclusions?  Can

24   you be fair to both plaintiffs and defendants?  Can you decide

25   the case solely upon the evidence and the law?  He gave the

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   most impartial answers to all of these.  It was textbook

2   impartiality.

3          You said, "Do you have preconceived notions?"  He

4   said, "Everyone makes their own choices about what they want to

5   do."  You say -- and he says, "I have no prejudice or bias."

6          He was asked a question from the defendants, "Can

7   white nationalists demonstrate?"  He said any group that gets

8   legal written permission are able to do it, which is

9   essentially part of the defendants' defense in this case.

10          Then he was asked, "Can white people be victims of

11   racism?"  And he said, "Everyone can be victims of racism."

12          There is no race-neutral reason to dismiss this

13   juror.

14          MR. SPENCER:  We're not asking to dismiss him due to

15   race.

16          THE COURT:  Anything else?

17          MS. DUNN:  Well, Your Honor, under the law in the

18   Fourth Circuit, it does ask you to compare answers from jurors,

19   but I know that Your Honor did not appreciate that.  So --

20          THE COURT:  Well, I do appreciate it, but --

21          MS. DUNN:  -- I don't want to upset you.

22          THE COURT:  -- this is a different situation.

23          MS. DUNN:  Okay.  So the three jurors who have

24   already been seated gave answers that evinced slightly, or more

25   than slightly, less impartiality than this juror.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          So Juror 177 said he had formed views about Antifa,

2   said he had views on the evidence already, whereas Juror 197,

3   this juror, said he had no views on the case.

4          Juror 168, who has also been seated, said they did

5   have personal views, but would try to keep their views out of

6   it, whereas this juror, 197, said he had no preconceived views

7   at all.

8          Juror 164 expressed unfavorable views of Black Lives

9   Matter and unfavorable views of Antifa, and said that she had

10  heard about the case and described it as a nightmare, whereas

11  this juror had no views at all, said no preconceived views at

12  all, and said that everyone has a right to protest if they have

13  legal authorization.

14         His answers could not have been more impartial.

15         MR. REBROOK:  If I may, Your Honor, Edward ReBrook.

16  Would it be possible -- Edward ReBrook.  Would it be possible

17  to revisit this exact issue after, say, the next three jurors,

18  and I think that will perhaps put a different spin on this

19  entire topic?

20         THE COURT:  What I anticipated was telling -- if this

21  issue came up was to wait until the end of the panel, bring any

22  juror that was in question, bring them back to the Court and

23  make the final selections and swear the jury in.

24         MS. DUNN:  Your Honor, the -- here's the problem with

25  that.  Your Honor already said --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          (Stenographer interruption.)

2          THE COURT:  Okay.  What I said was that my intention

3    would be -- I mean, I've been concerned about this issue all

4    along, given the way we're picking the jury, that if there were

5    a potential Batson issue, I would have the juror who was the

6    subject of the Batson challenge come in and be here when the

7    last panel was completed and look at the jury at that time and

8    see if there was a pattern, and then why.

9          MS. DUNN:  I think, Your Honor, the problem with that

10   is that there doesn't have to be a pattern.  There can be a

11   Batson challenge to this individual juror.  And he is a

12   textbook Batson challenge.  You don't need a pattern with that.

13         THE COURT:  Okay.

14         MS. DUNN:  What's happening here is that the

15   defendants have already raised with one of --

16         THE COURT:  All right.  Well, okay.  Let's hear it.

17         MR. SPENCER:  It's hard for me to believe that a

18   pattern exists at this point, when we're actually going to be

19   challenging a white potential jurist, and we support the other

20   African American jurist.  We're actually behind them.  So this

21   idea that there is some kind of a Batson challenge based on

22   racial bias is -- doesn't hold -- what?

23         THE COURT:  There's not but one other African

24   American.

25         MR. SPENCER:  There are two others, actually.  We --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           THE COURT:  Two?

2           MR. SPENCER:  There are three African American men in

3   this jury pool.

4           THE COURT:  You mean later?

5           MR. SPENCER:  Yes.  And we actually supported the

6   other two.  So the notion that we're engaging on a decision

7   based on race doesn't hold water.  Claiming the pattern is

8   unnecessary.  I mean, give me a break.

9           MS. DUNN:  Your Honor, that -- let me -- okay --

10          THE COURT:  What is it?

11          MS. DUNN:  This is not the law.  The law is this is a

12   challenge to this juror who came up first.  And what's

13   happening here, just to be plain about it, is defendants think,

14   out of the pool of black people, this is the black person who

15   would be the worst for them, but it's still -- they have to

16   show that they have a race-neutral explanation for this.  And

17   they don't, and they can't --

18          MR. SPENCER:  I just did.

19          MS. DUNN:  -- based on his answers.

20          MR. SPENCER:  I just did.  We don't need to express

21   to you our entire thinking.  We can make decisions.  Do you

22   want to write a dissertation on every jurist you challenge?

23   You challenged the last two.

24          THE COURT:  What is your cited case?

25          MS. DUNN:  So the case that says you don't need a

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  pattern is Thigpen v. Shields, Thigpen,

2  T-H-I-G-P-E-N, v. Shields.

3          Also, another good case to look at that says you

4  should compare the questions of jurors asked and not asked is

5  US v. Gradison, another CA4 case.

6          THE COURT:  Have you ever gone through a process of

7  selecting a jury like this --

8          MS. DUNN:  In a case --

9          THE COURT:  -- where the Batson was raised in the

10  middle of the selection?

11          MS. DUNN:  Another case I would point Your Honor to

12  is that --

13          THE COURT:  Well --

14          MS. DUNN:  -- United States v. Joe in the Fourth

15  Circuit.  This is the problem with the way that this --

16          MR. REBROOK:  If his answers are so perfect, then why

17  are we challenging him and not the other members of the jury?

18          MS. DUNN:  Your Honor, it's -- the defendants have to

19  put forward a race-neutral explanation.

20          THE COURT:  At this time, do you wish to put forward

21  a race-neutral --

22          MR. KOLENICH:  Your Honor, the defense, unlike the

23  plaintiffs, has been cobbled together from multiple different

24  and sometimes contradictory points of view.  So we're limited

25  in what we can do --

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1           (Overlapping speakers.)

2           MR. KOLENICH:  One second, Mr. Spencer.  One second.

3           This juror, in the opinion of some of the defendants,

4    had an openly anti-defendant attitude evident from the looks on

5    his face while he was answering the questions.  That's the best

6    explanation that I can give for what I was told.  So there was

7    an independent-of-his-race reason for them to question him

8    because, at first -- it's not even worth saying.  It doesn't go

9    to the legal issues, but this was not a strictly race-based

10   decision that was being expressed among the defendants as to

11   this juror.

12          MS. DUNN:  This, by the way, is even worse for the

13   defendants' case, because there is case law that the look on

14   somebody's face who happens to be a black man is not a -- does

15   not survive a Batson challenge.  So they don't have a

16   race-neutral explanation and their only explanation is actually

17   bad for them.

18          MR. SPENCER:  I would like to see case law on what

19   you just said, but putting that aside, the look on someone's

20   face has no implication in my mind for what it was.  His

21   answers were too perfect.  And you can't just go by the exact

22   words that someone uses.  You have to look beneath them and

23   look at messaging that they're giving and the general

24   sentiment.  And that is what I went by.

25          And also, I had a very different opinion on the other

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  two African American gentlemen who were potential jurors.  I

2  thought they are absolutely competent and I would support them.

3          THE COURT:  Okay.

4          MS. DUNN:  This is deeply ironic, given --

5          THE COURT:  I'm --

6          MS. DUNN:  Your Honor, I have other cases if you want

7  me to --

8          THE COURT:  What did you have to say, Mr. Cantwell?

9          MR. CANTWELL:  They're asking for a race-neutral

10  reason.  I believe the man is lying.  I feel the same way about

11  a white man who is on here.  That's why I moved to strike.  It

12  has nothing to do with his race.  I just want to be on the

13  record saying it.

14          (Pause.)

15          THE COURT:  Point to the language in the opinion.

16          MS. DUNN:  I will need to get the case.  I don't have

17  it in front of me.

18          THE COURT:  You didn't expect this would happen?

19          MS. DUNN:  Your Honor, can I have a moment, please?

20          (Discussion off the record.)

21          MS. DUNN:  Hi, Your Honor.  So this case says a

22  Batson challenge involves three steps, and then it talks about,

23  first, the party contesting the strikes must make a prima facie

24  case of discriminatory use of peremptory challenges, citing

25  Gradison and Batson.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1          "In determining whether the party has established a

2    prima facie case, the trial court considers all relevant

3    circumstances.  Those circumstances include, but are not

4    limited to, the pattern of strikes and statements made during

5    voir dire."

6          And then after that, after the objecting party makes

7    a prima facie case, the burden is supposed to shift to the

8    striking party to provide a race-neutral explanation for the

9    challenge.

10          THE COURT:  I don't see anything in that that says my

11   suggestion or my idea of doing it was wrong, which is bring the

12   jury back at the end, and if I decide that it was not

13   properly -- it was an improper strike, I'll restore him to the

14   jury.

15          MS. DUNN:  Your Honor, this issue is so important

16   that, I mean, if we could have a few moments because I think

17   that it is proper to do it on an individual basis.  And I

18   think --

19          THE COURT:  Well, if you think it's that important,

20   you bring me a bunch of cases, and what you show me, they don't

21   say that.  Now, why didn't you bring me the case that says what

22   you --

23          MS. DUNN:  Well, this just happened.

24          THE COURT:  Well, this just happened, but you were

25   prepared for it because you brought me authority and said it

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   said something, and it doesn't.

2               MS. DUNN:  Okay.

3               THE COURT:  Okay?  I mean, I don't know what you're

4   going to do to get other authority.

5               MR. KOLENICH:  Judge, we don't object to giving them

6   ten minutes to look into Lexis.

7               MS. DUNN:  I mean, this is an important issue.

8               THE COURT:  You think I don't know this is important?

9               MS. DUNN:  I know that.

10              THE COURT:  I mean, fortunately, I'll probably be

11  dead when it's retried.

12              MR. KOLENICH:  We'd appreciate the time to come up

13  with some kind of effective defense here.

14              MS. DUNN:  The question is whether it's appropriate

15  to take the juror individually or whether you have to wait for

16  a pattern.

17              MR. TOLENTINO:  Your Honor, we submit that Thigpen

18  versus Shields stands for the proposition --

19              THE COURT:  Show me the language.

20              MR. TOLENTINO:  Yes, sure.

21              THE COURT:  You and I can talk all day.

22              MR. TOLENTINO:  Sure.  I can read it for you, Your

23  Honor.  It says, quote, "In determining whether that party has

24  established a prima facie case, the trial court considers all

25  relevant circumstances.  Those circumstances include, but are

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1  not limited to, the pattern of strikes and statements made

2  during voir dire."

3          The "including but not limited to" is key here

4  because it suggests that you don't require that for --

5          THE COURT:  All the circumstances.  It may not

6  require it, but it says you look at all circumstances --

7          MR. TOLENTINO:  Yes, Your Honor.

8          THE COURT:  -- and if there is a pattern.  You're

9  asking me to decide something on one -- not to look at all

10  circumstances and not determine whether there is a pattern.

11  So.

12          I'm going to adhere to what I said.  I will call the

13  juror back, and if at the end I decide there's been a violation

14  of Batson, he goes back on the jury, and the next -- we'll pick

15  somebody else.

16          MR. TOLENTINO:  Understood, Your Honor.  Thank you.

17          MS. DUNN:  Thank you.

18          (Sidebar concludes.)

19          THE COURT:  All right.  Go to number 2.

20          THE CLERK:  Defendant, Juror Number 2, pass or

21  challenge?

22          MR. KOLENICH:  Pass.

23          THE COURT:  Plaintiffs, Juror Number 2, pass or

24  challenge?

25          MS. DUNN:  Pass.

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1      THE CLERK:  Plaintiffs, Juror Number 3, pass or

2  challenge?

3      MS. DUNN:  Pass.

4      THE CLERK:  Defendant, Juror Number 3, pass or

5  challenge?

6      MR. KOLENICH:  Pass.

7      THE CLERK:  Defendants, Juror Number 5, pass or

8  challenge?

9      MR. KOLENICH:  Pass.

10      THE CLERK:  Plaintiffs, Juror Number 5, pass or

11  challenge?

12      MS. DUNN:  Pass.

13      THE CLERK:  Plaintiffs, Juror Number 7, pass or

14  challenge?

15      MS. DUNN:  Pass.

16      THE CLERK:  Defendants, Juror Number 7, pass or

17  challenge?

18      MR. KOLENICH:  Challenge.

19      THE CLERK:  Defendants, Juror Number 14, pass or

20  challenge?

21      MR. KOLENICH:  Pass.

22      THE CLERK:  Plaintiffs, Juror Number 14, pass or

23  challenge?

24      MS. DUNN:  Pass.

25      (Pause.)

                    186

          Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1              THE CLERK:  Ladies and gentlemen, if I call your

2    name, please stand.  If I don't call your name, remain seated

3    until you receive --

4              MR. SPENCER:  Name?

5              THE CLERK:  Number.  I'm so sorry.  It's so easy to

6    say that.

7              197, 207, 213, 212, and 210.

8              Do you want me just to advise them to go?

9              THE COURT:  Yes.

10             THE CLERK:  If you're standing, please go on across

11   the hall to the clerk's office and they will advise you what to

12   do.

13             THE COURT:  You're going to be called back.  You will

14   be called back for potential jury service, and you are not to

15   discuss the case with anyone.  You're not to allow anyone to

16   discuss it with you.  Do not remain within hearing of anyone

17   discussing the case.  And do not read, investigate, or do

18   anything pertaining to the case until you're sworn in as

19   jurors.  And then you'll be told not to discuss the case until

20   you've heard all the evidence.

21             So you may be excused at this time, and I think we

22   have been able to arrange a ride for you to your car.

23             Go ahead.

24             All right.  Thank you, jurors who are not serving in

25   the case.  We could not have gotten where we are without you

187

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   and it was essential that we have you here in order to pick the

2   jury.  So you have performed a great service to your community

3   merely by coming in and participating in the jury selection.

4   You're excused at this time.  Again, I'm very sorry you had to

5   wait so late and I hope you don't get wet.

6   **(Jury out, 6:44 p.m.)**

7            THE COURT:  All right.  Tomorrow I'm only calling in

8   two panels.  I don't believe, given the time it's taken,

9   there's any way we would get past two panels tomorrow.  And so

10  we may have to pick five or six jurors tomorrow and see.  But

11  we'll -- so the earliest we could possibly start the trial now

12  is Friday morning -- Wednesday morning.  But it could be -- I

13  would assume that we would probably be able, if things go like

14  they are, at least by noon on Wednesday we should have enough

15  for a jury.  And if we do, I would like to start with opening

16  statements in the afternoon.

17           And I know you're waiting for that preliminary

18  instruction.

19           Do you have something?

20           MS. KAPLAN:  Your Honor, just one thing.  Juror 210,

21  maybe I'm a bit paranoid about COVID, but Juror 210 again, just

22  when he was sitting here, was again wearing his mask under his

23  nose.  Perhaps he could be given some instruction.  That way --

24  after having --

25           THE COURT:  I'll ask the marshals to take -- keep an

188

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1   eye on him.  I don't watch him.  You know, I mean, other things

2   going on.

3          MS. KAPLAN:  Of course, Your Honor.  I just happened

4   to look.

5          THE COURT:  I'm sure you're probably right, but

6   there's always one or more that slack up.

7          MS. KAPLAN:  Our concern is just that it disturbs --

8   when we start, the other jurors get disturbed by it, obviously,

9   and we don't want that to happen.

10          THE COURT:  We'll start at 9:30 tomorrow morning.

11          Anything before we leave for the evening?

12          MR. KOLENICH:  No, Your Honor.

13          MS. DUNN:  No, Your Honor.

14          THE COURT:  Okay.  Thank you.

15   (Proceedings adjourned, 6:46 p.m.)

16

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 10/25/2021

1                    C E R T I F I C A T E

2          I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3    the United States District Court for the Western District of

4    Virginia, appointed pursuant to the provisions of Title 28,

5    United States Code, Section 753, do hereby certify that the

6    foregoing is a correct transcript of the proceedings reported

7    by me using the stenotype reporting method in conjunction

8    with computer-aided transcription, and that same is a

9    true and correct transcript to the best of my ability and

10   understanding.

11         I further certify that the transcript fees and format

12   comply with those prescribed by the Court and the Judicial

13   Conference of the United States.

14         /s/ Lisa M. Blair                Date: October 25, 2021

15

16

17

18

19

20

21

22

23

24

25