```
 1                    UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF VIRGINIA
 2                       CHARLOTTESVILLE DIVISION

 3    ************************************************************

 4    ELIZABETH SINES, ET AL.,     CIVIL CASE NO.:  3:17CV72
                                   OCTOBER 26, 2021, 9:33 AM
 5                                 JURY TRIAL, DAY 2
              Plaintiffs,
 6    vs.

 7                                 Before:
                                   HONORABLE NORMAN K. MOON
 8    JASON KESSLER, ET AL.,       UNITED STATES DISTRICT JUDGE
                                   WESTERN DISTRICT OF VIRGINIA
 9
              Defendants.
10
      ************************************************************
11
      APPEARANCES:
12

13    For the Plaintiffs:      ALAN LEVINE, ESQUIRE
                               COOLEY LLP
14                             1114 Avenue of the Americas, 46th
                               Floor
15                             New York, NY  10036
                               212.479.6260
16
                               DAVID E. MILLS, ESQUIRE
17                             COOLEY LLP
                               1299 Pennsylvania Avenue, NW,
18                             Suite  700
                               Washington, DC  20004
19                             202.842.7800

20

21

22    Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                        255 West Main Street, Suite 304
23                      Charlottesville, Virginia  22902
                        434.296.9284
24
      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25    TRANSCRIPT PRODUCED BY COMPUTER.
```

```
 1   APPEARANCES CONTINUED:

 2   For the Plaintiffs:        MICHAEL L. BLOCH, ESQUIRE
                                ROBERTA A. KAPLAN, ESQUIRE
 3                              Kaplan Hecker & Fink LLP
                                350 Fifth Avenue, Suite 7110
 4                              New York, NY  10118
                                212.763.0883
 5
                                KAREN L. DUNN, ESQUIRE
 6                              WILLIAM A. ISAACSON, ESQUIRE
                                Paul, Weiss, Rifkind, Wharton &
 7                              Garrison LLP
                                2001 K Street, NW
 8                              Washington, DC  20006
                                202.223.7300
 9

10   For the Defendants:        DAVID L. CAMPBELL, ESQUIRE
                                Duane, Hauck, Davis, Gravatt &
11                              Campbell, P.C.
                                100 West Franklin Street, Suite 100
12                              Richmond, VA  23220
                                804.644.7400
13
                                CHRISTOPHER CANTWELL, PRO SE
14                              #00991-509
                                USP Marion
15                              4500 Prison Road, PO Box 2000
                                Marion, IL  62959
16
                                BRYAN J. JONES, ESQUIRE
17                              Bryan J. Jones, Attorney at law
                                106 W. South Street, Suite 211
18                              Charlottesville, VA  22902
                                540.623.6952
19
                                JAMES E. KOLENICH, ESQUIRE
20                              Kolenich Law Office
                                9435 Waterstone Blvd., Suite 140
21                              Cincinnati, OH  45249
                                513.444.2150
22
                                JOSHUA SMITH, ESQUIRE
23                              Smith LLC
                                807 Crane Avenue
24                              Pittsburgh, PA  15216
                                917.567.3168
25
```

```
 1   APPEARANCES CONTINUED:

 2
     For the Defendants:          RICHARD SPENCER, PRO SE
 3                                P.O. Box 1676
                                  Whitefish, MT  59937
 4

 5   ALSO PRESENT:

 6   Renato Stabile, Esquire

 7   Dillon Hopper (appearing via Zoom)

 8   David Matthew Parrott

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   (Proceedings commenced, 9:33 a.m.)

2           THE COURT:  Good morning.  Before we begin, I will

3   remind everyone that under Standing Order 2020-12 and 2013-8,

4   the Court's prohibition against recording and broadcasting

5   court proceedings remains in force.  Attorneys, parties or

6   their staff, and any members of the public or press accessing

7   this proceeding today may not record or broadcast it.  That

8   means no photography, no using of any video or audio recording

9   device, no rebroadcasting, live streaming, or otherwise

10  disseminating any live or recorded video or audio in this

11  proceeding.

12          All right.  You may call the case.

13          THE CLERK:  Yes, Your Honor.

14          This is Civil Action Number 3:17-cv-00072, Elizabeth

15  Sines and others and Jason Kessler and others.

16          THE COURT:  One matter before we begin.  Mr. ReBrook,

17  we understand, went to the emergency room, but he's been in

18  contact with Mr. Kolenich.  And Mr. Kolenich, are you satisfied

19  that he's okay with you --

20          MR. KOLENICH:  Yes, Your Honor.

21          THE COURT:  -- taking care of his clients' interest

22  in this proceeding?

23          MR. KOLENICH:  Yes, Your Honor.  Mr. ReBrook did

24  authorize me to complete jury selection on behalf of his

25  clients.

1          THE COURT:  Thank you, sir.

2          All right.  Anything before we call the jury?

3          MS. DUNN:  Yes, Your Honor.  One thing:  On the

4    plaintiffs' side, we did extensive research overnight into the

5    issue that we discussed yesterday.  We have a letter for the

6    Court.  We'd like to hand up copies for Your Honor and for the

7    clerks -- of course, we also have copies for defense counsel --

8    and at some point would like to discuss the issue; in any

9    event, at some point prior the finalization of the venire,

10   obviously.

11         THE COURT:  At some point prior to the finalization?

12   Okay.  Well, I mean, that was my intention.

13         MS. DUNN:  Right.  I agree.  I think we would need to

14   discuss it prior to -- at the latest, after the selection of

15   Juror 11, but we want Your Honor to have a chance to review the

16   letter that we wrote, and for us to discuss the controlling

17   law.

18         THE COURT:  All right.  Thank you.

19         MS. DUNN:  Thank you.

20         THE COURT:  All right.  We'll call the jury.

21   **(Jury in, 9:38 a.m.)**

22         THE COURT:  Good morning, ladies and gentlemen.

23   Thank you for being here today, and I'm sorry we've caused as

24   much inconvenience to you as we already have, but nevertheless,

25   it's been necessary, brought about because of just -- the

1   process just takes longer.

2            I'm going to remove my mask, because I think -- when

3   I speak, and anyone who speaks may remove their mask while

4   speaking, but otherwise we're required to leave our mask on,

5   covering both our nose and mouth.

6            I want to tell you the steps we've taken to minimize

7   the risk of the spread of COVID-19.

8            First, the Standing Orders of this Court require

9   everyone to wear a mask that covers their nose and mouth while

10  in public areas of the courthouse unless a court official

11  specifically directs otherwise.  That applies to everyone,

12  whether vaccinated or unvaccinated.

13           Second, access to the courthouse has been limited to

14  persons involved in this case.  That includes court staff,

15  litigants, attorneys, witnesses, and limited media.

16           Third, the Court has ordered all persons in the

17  courtroom to practice social distancing, except counsel,

18  litigants, and court staff.

19           Fourth, pursuant to the Court's Standing Orders, all

20  court employees, including judges, chambers staff, and staff of

21  the clerk's office, must either be vaccinated or conduct a

22  COVID-19 test at least weekly.

23           Fifth, this Court has specifically ordered all

24  litigants, lawyers, witnesses, and court staff in this case to

25  attest before coming into the courthouse that they are either

1    vaccinated or have tested negative within three days of their

2    appearance.  They will have a continuing duty to do so

3    throughout the trial if they are appearing based on negative

4    COVID tests.  If there are any witnesses, parties, or attorneys

5    who can't meet these rules, they will testify by Zoom.

6                Sixth, the Court has ordered extra cleaning of touch

7    points, frequently touched surfaces, and bathrooms during this

8    trial.

9                And lastly, specifically for jurors, the Court will

10   require all jurors, of which the Court expects there will be 12

11   jurors, to be always masked.  The jurors will also be socially

12   distanced in the gallery.

13               My own personal opinion is that being here serving on

14   this jury will be as low-risk to you from COVID as anywhere you

15   might be.  I don't think any stores, public arenas, churches,

16   or anything will have the procedures to minimize the risk of

17   COVID that we are exercising here.  We've tried many cases now

18   throughout the Western District, and we really haven't, to my

19   knowledge, had any problem yet from COVID.  So we've done

20   everything we can to alleviate the situation.  And I feel that

21   we've done all we can for the safety of the prospective jurors.

22               Before we begin -- well, Heidi, I'll ask you to swear

23   the jury.

24               THE CLERK:  This is Civil Action Number

25   3:17-cv-00072, Elizabeth Sines and others versus Jason Kessler

8

1   and others.

2          Ladies and gentlemen, I will now call you by number.

3   If you would please stand when I call your number and remain

4   standing until I call the next number.

5          215, 218, 220 -- you can sit down now -- 221, 230,

6   233, 234, 235, and 241.

7          Thank you.

8          Ladies and gentlemen, if you would please stand and

9   be sworn.  Would you please raise your right hands?

10          Do you and each of you solemnly swear that you will

11  make true answers to such questions as may be propounded to you

12  testing your qualifications to serve as a juror in this Court?

13          You may be seated.

14          Ladies and gentlemen, in order to serve as a juror in

15  this Court, you must be a citizen of the United States who has

16  attained the age of 18 years and has resided in the Western

17  District of Virginia for one year.  You must not be under

18  charge or have been convicted in any court, state or federal,

19  of a crime punishable of imprisonment of a period of more than

20  one year, unless your civil rights have been restored.  You

21  must be able to read, write, and understand the English

22  language, and must be both physically and mentally able to

23  render efficient jury service.

24          Do you and each of you qualify on these grounds?

25          You do.

1           I will now ask several questions concerning the case

2     which is to be tried today for the purpose of ascertaining

3     whether you can hear the facts fairly and impartially and

4     render a just verdict.

5           The plaintiffs in this case are Elizabeth Sines, Seth

6     Wispelwey, Marissa Blair, April Muñiz, Marcus Martin, John Doe,

7     Natalie Romero, Chelsea Alvarado, and Thomas Baker.  The

8     plaintiffs are represented by counsel seated to my right.

9           Counsel will now identify themselves by name and firm

10    for the record.

11          MS. DUNN:  Good morning.  Karen Dunn from Paul Weiss.

12          MS. KAPLAN:  Roberta Kaplan from Kaplan

13    Hecker & Fink.

14          MR. STABILE:  Renato Stabile, New York, New York.

15          MR. ISAACSON:  Bill Isaacson from the law firm of

16    Paul Weiss.

17          MR. MILLS:  David Mills, Cooley, Washington, D.C.

18          MR. LEVINE:  Alan Levine from Cooley.

19          MR. BLOCH:  Michael Bloch from Kaplan Hecker & Fink,

20    New York, New York.

21          THE CLERK:  The defendants in this case are Jason

22    Kessler, Richard Spencer, Christopher Cantwell, James Alex

23    Fields, Jr., Vanguard America, Andrew Anglin, Moonbase

24    Holdings, LLC, Robert "Azzmador" Ray, Nathan Damigo, Elliott

25    Kline, Identity Evropa, Matthew Heimbach, Matthew Parrott,

1    Traditionalist Worker Party, Michael Hill, Michael Tubbs,

2    League of the South, Jeff Schoep, National Socialist Movement,

3    Nationalist Front, Augustus Sol Invictus, Fraternal Order of

4    the Alt-Knights, Loyal White Knights of the Ku Klux Klan, and

5    East Coast Knights of the Ku Klux Klan.

6            The defendants are appearing both with counsel or on

7    their own behalf.  They are seated to my left or appearing by

8    Zoom.  Counsel and defendants will now identify themselves for

9    the record.

10           MR. KOLENICH:  Jim Kolenich, Kolenich Law Office,

11   Cincinnati, Ohio.  I represent Jason Kessler, Nathan Damigo,

12   and Identity Evropa.

13           MR. JONES:  Bryan Jones, Charlottesville, Virginia.

14   I represent Michael Hill, Michael Tubbs, and the League of the

15   South.

16           MR. SMITH:  Joshua Smith, Smith LLC, Pittsburgh,

17   Pennsylvania.  I represent David Matthew Parrott, Matthew

18   Heimbach, and Traditionalist Worker Party.

19           MR. CANTWELL:  My name is Christopher Cantwell.  I'm

20   representing myself today.

21           MR. HAUCK:  My name is Richard Hauck from Columbus,

22   Ohio with Smith LLC, representing David Matthew Parrott,

23   Matthew Heimbach, and Traditionalist Worker Party.

24           MR. SPENCER:  My name is Richard Spencer.  I am from

25   Whitefish, Montana, and I am acting on my own behalf.

11

 1            MR. CAMPBELL:  I'm David Campbell, representing James

 2   Fields, from Richmond, Virginia.

 3            THE COURT:  Heidi, tell the jury also Mr. Kolenich's

 4   name and who he represents -- I mean Mr. ReBrook.  I'm sorry.

 5            MR. KOLENICH:  Forgive me, Your Honor.  I am also

 6   substituting for Attorney ReBrook today on behalf of his

 7   clients, National Socialist Movement, Nationalist Front, and

 8   Jeff Schoep.

 9            THE CLERK:  The purpose of my mentioning this is to

10   ask each of you whether you are related by blood or marriage to

11   the plaintiffs, defendants, or any of the attorneys in this

12   action.  If you are, please state so to the judge.

13            Your Honor, do you have additional questions?

14            THE COURT:  Before we begin the process of jury

15   selection, I wish to give you a general overview of this case

16   so that you know what it is about and can better answer my

17   questions.

18            This is a civil lawsuit brought by multiple

19   plaintiffs against multiple defendants, including individuals

20   and organizations, based on events that occurred in

21   Charlottesville, Virginia in August 2017.

22            The plaintiffs in this case claim that the defendants

23   and others conspired to commit racially motivated violence at

24   an event the defendants called Unite the Right, which was held

25   in Charlottesville on August 11 and 12, 2017.

1        Plaintiffs allege that the defendants helped to plan,

2   promote, or carry out racially motivated violent acts during

3   that event, and in doing so caused plaintiffs physical,

4   emotional, and monetary harm.  Such acts include a torch march

5   on August 11 and various acts of violence that occurred on

6   August 12, including a car attack that drove through a crowd of

7   people, injuring seven of the named plaintiffs in this case.

8        Defendants deny that they conspired with anyone to

9   commit violence or that they are responsible for any injury or

10  damages suffered by the plaintiffs.

11       If you are selected to serve as a juror in this case,

12  you will be asked to decide whether the plaintiffs proved that

13  the defendants engaged in a conspiracy to commit racially

14  motivated violence and harm plaintiffs as a result.

15       Plaintiffs have also asserted other claims under

16  federal and state law against the defendants.  Later, I will

17  explain the elements of each of those claims in greater detail

18  to those of you who actually serve on the jury.

19       It is estimated this case will last four weeks,

20  including this week.  Trial will take place Monday through

21  Friday, the final scheduled trial date now being November 19.

22  I will start court at 9 o'clock.  I will stop court at

23  5 o'clock.  That's the goal, and usually you can pretty much

24  count on, if you're serving, you will be released by 5 in the

25  evening.

13

1            Soon I will ask you some questions concerning your

2    potential service as a juror in this case.  This process of

3    questioning has several reasons.

4            First, it may be that, although otherwise qualified,

5    some of you may not be eligible to sit in this particular case

6    for a variety of reasons.  We need to ask questions to

7    determine your eligibility.

8            Also, under the rules that govern jury selection in

9    this Court, the parties play a role in choosing the jury that

10   is to try their case.  That is why we have more of you here

11   than we really need to sit on the jury.  Under the rules, the

12   parties are entitled to exercise strikes to eliminate persons

13   from the jury panel, and then the remaining jurors will hear

14   the case.  The parties need to know more about you in order to

15   make intelligent decisions about who to strike.

16           The Court will be conducting jury selection in the

17   following manner:  I will ask you some general questions and

18   then will call each prospective juror with any specific

19   follow-up questions.

20           Throughout this process, the clerk and the Court will

21   only refer to you by juror number, not your name.  This is a

22   step we sometimes take for the sake of our prospective jurors

23   and jurors' privacy.  We need to -- so I'm asking you as

24   jurors:  Never refer to yourself by name.  If you are asked to

25   identify yourself here in the courtroom, only do so by number.

1          For these preliminary questions, if the Court may ask

2     you a question and you have to respond to the question asked,

3     please raise your hand and you will be called on.  So if the

4     Court asks, "Are you here today to be considered to serve as a

5     juror in this case," you would all raise your hand.

6          If you feel your answer to any question is

7     particularly personal in nature, you may ask to speak to me and

8     the attorneys privately.  However, just so you are aware, for

9     the most part I do plan to mostly conduct any specific question

10    with each prospective juror individually and without other

11    prospective jurors being in the courtroom.

12         Now we will begin the process of selecting a jury to

13    hear the case.

14         You have heard the names of the plaintiffs' counsel,

15    and I'm now going to ask plaintiffs' counsel to state the names

16    of any other counsel who may have entered the case since the

17    questionnaire.

18         MS. DUNN:  Your Honor, no additional counsel since

19    the questionnaire.

20         THE COURT:  Any for the defendants' side that you

21    know of?

22         MR. KOLENICH:  No, Your Honor.

23         THE COURT:  All right.  I will ask the plaintiffs'

24    counsel to read the names of the plaintiffs' witnesses.  If you

25    know any of these witnesses, you will be -- you need to tell us

15

1    after she has read the list.

2              MS. DUNN:  Thank you, Your Honor.

3              THE COURT:  You may proceed.

4              MS. DUNN:  Chelsea Alvarado, Jessica Alvarado, Thomas

5    Baker, Marissa Blair, Julie Convisser, Diane D'Costa, Stephen

6    Fenton, Allen Groves, Deborah Lipstadt, Marcus Martin, April

7    Muñiz, Sharon Reavis, Natalie Romero, Peter Simi, Elizabeth

8    Sines, Devin Willis, Nadia Webb, Seth Wispelwey, David Weiss,

9    Erica Alduino, Robert "Ike" Baker, Patrick Casey, Michael

10   Chesny, Burt Colucci, Benjamin Daley, Shane Duffy, Samantha

11   Froelich, Bradley Griffin, Dillon Hopper, Vasilios Pistolis,

12   and Thomas Rousseau.

13             THE COURT:  Members of the jury, did you recognize

14   any name that was called as being a person you personally know

15   or know anything about?

16             All right.  I will ask defense counsel to call the

17   names of any witness.

18             Mr. Kolenich?

19             MR. KOLENICH:  Thank you, Your Honor.  Wes Bellamy

20   and Police Detective Steve Young.

21             THE COURT:  All right.  Any of the other defendants?

22   I know some of the witnesses are on the plaintiffs' list, but

23   do you have any who are not on the list?

24             MR. JONES:  I do, Your Honor.  Richard Hamblin,

25   Charlottesville Police Department Sergeant William Newberry.

16

```
 1              THE COURT:  Anyone else who has witnesses whose names
 2   have not been stated?  Mr. Cantwell?
 3              MR. CANTWELL:  No.
 4              THE COURT:  Oh, okay.
 5         All right.  Thank you.  That concludes this first
 6   portion of the jury selection process.  I'm going to ask you to
 7   return to the jury room.  Follow the marshal, and then each of
 8   you will be called back individually for follow-up questioning.
 9              You may follow the marshal.
10   (Jury out, 9:58 a.m.)
11              THE COURT:  All right.  Which number is the first?
12              THE CLERK:  215.
13              (Pause.)
14              THE COURT:  Would you state your name, please -- I
15   mean your number.  I'm sorry.
16              FEMALE JUROR:  215.
17              THE COURT:  You heard me say that this trial is
18   scheduled to last for four weeks, starting today.  Now, I know
19   that maybe it would be a burden on you, but is it a greater
20   burden on you, do you think, than it might be on the average
21   person who might be called to serve?
22              FEMALE JUROR:  No, sir.
23              THE COURT:  Do you have any problem physically with
24   sitting for an hour and 30 minutes without taking a break?
25              FEMALE JUROR:  No.
```

17

```
1            THE COURT:  Do you have any other physical or medical
2   limitation that would prevent you from sitting on this jury and
3   being able to render a verdict?
4            FEMALE JUROR:  I do not.
5            THE COURT:  Are there any questions that -- do you
6   know of any reason you could not serve as a juror in the case
7   and render a verdict fair to both the plaintiffs and the
8   defendants?
9            FEMALE JUROR:  No, sir.
10           THE COURT:  Have you formed any opinions as to any
11  issues in the case?
12           FEMALE JUROR:  I'm sorry.  Can you repeat that?
13           THE COURT:  Have you formed any opinion as to any
14  issues in the case?
15           FEMALE JUROR:  No, sir.
16           THE COURT:  Have you -- you say that you work
17  downtown.
18           FEMALE JUROR:  I do.
19           THE COURT:  Were you downtown on the day of these
20  events?
21           FEMALE JUROR:  No.  We shut our office down.
22           THE COURT:  Okay.  And do you have any feeling that
23  one side is more at fault in this case than the other?
24           FEMALE JUROR:  No.  No, sir.
25           THE COURT:  Are you sensible of any bias or prejudice
```

18

1  against either side?

2          FEMALE JUROR:  No, sir.

3          THE COURT:  Are there any questions?

4          MS. DUNN:  Yes, Your Honor.

5          THE COURT:  On Question Number 72, the question was:

6  Would you be able to set aside preconceived opinions, if any,

7  you may have about the Unite the Right rally, this case, and

8  the parties therein, and reach a decision based solely upon the

9  evidence you hear at trial in accordance with the law as

10 instructed by the Court?  And you said yes, that you would have

11 a -- indicating that you might not be -- you would not be able

12 to set aside preconceived opinions.

13         FEMALE JUROR:  I meant how I feel -- I think both

14 parties --

15         THE COURT:  You may take your mask off.

16         FEMALE JUROR:  From my point of view, both parties

17 are absolutely wrong.  That's what I was thinking.

18         MR. JONES:  Your Honor, and that question -- she

19 actually said that she could set aside -- she marked "yes" to

20 that question.

21         THE COURT:  I'm sorry.  You're correct.

22         So you could set aside --

23         FEMALE JUROR:  Yes, sir.

24         THE COURT:  -- any preconceived notion, try the case

25 solely according to the law and the evidence?

19

1                  FEMALE JUROR:  Yes, sir.

2                  THE COURT:  All right.  Thank you.

3            You said in Question 33 that you had an extremely

4      unfavorable view of Black Lives Matter.  Can you speak -- tell

5      us why?

6                  FEMALE JUROR:  Why I was disfavorable?  I've worked

7      down here in Charlottesville for the last ten years, and ever

8      since this rally and this movement, me personally, I feel as

9      though it has caused a lot of chaos, more than it has been.

10     And it's disrupted a lot of businesses.  It's disrupted a lot

11     of people socializing.  It's -- everyone has their own opinion,

12     but the way that you force it upon, I think it has gone in a

13     wrong direction.

14                 THE COURT:  All right.  In response to Questions 35

15     through 36, you strongly disapprove of the removal of the

16     statues of Confederate leaders, partly because of the southern

17     pride.  Is there anything else you might say about that?

18                 FEMALE JUROR:  No, sir.

19                 THE COURT:  All right.  In Question 41, you said in

20     your questionnaire that you were somewhat concerned about

21     prejudice against Jewish and white people, but not at all

22     concerned about discrimination against black and Hispanic

23     people.  Can you tell us the reason for that?

24                 FEMALE JUROR:  Again, with this whole movement coming

25     out, I believe it's -- went the complete wrong way, and now

1  there's more of -- you know, if you were to say "all lives"

2  versus "black lives" -- it's discriminating against, you know,

3  one race and not the other.  And I just don't feel as though it

4  was that big of an issue until this whole Unite the Right rally

5  came in and disrupted all of the peace in Charlottesville

6  regarding race.

7          THE COURT:  Do you have any particular feeling about

8  Unite the Right?

9          FEMALE JUROR:  I do.  I was very frustrated that it

10  went down in our town of Charlottesville the way that it did.

11  It made national news.  It made a joke out of our city at the

12  time, and I don't support it at all.

13          THE COURT:  On Question 65 you said that you work in

14  senior living, I believe, and that the residents that you work

15  with are extremely vulnerable.  How, if at all, will that

16  impact your ability to serve as a juror?

17          FEMALE JUROR:  I was just stating if there was a case

18  that came out, we do have Senior Livings all through

19  Charlottesville.  It's Commonwealth Senior Living, and we are

20  down here.  And it would be a case, if that were to happen,

21  that could quickly go through the communities or our corporate

22  area.

23          THE COURT:  And in Question 72, which asks, as a

24  juror, if you could reach a decision based solely on the

25  evidence, you wrote:  "I think they were all" --

1          FEMALE JUROR:  Wrong.

2          THE COURT:  -- "all wrong," both parties.  Having

3  that feeling, you'll have to decide sort of discrete issues

4  here.  You have -- one of the main issues is what I've said,

5  that the plaintiffs have to prove in their case that the

6  defendants conspired to come to Charlottesville for the purpose

7  of committing racially motivated violence.

8          Now, if the plaintiffs prove that, could you find in

9  favor of the plaintiffs?

10          FEMALE JUROR:  Yes, if that is proven, absolutely.

11          THE COURT:  All right.  If the plaintiffs do not

12  prove that by a preponderance of the evidence, would you have

13  any trouble finding in favor of the defendants?

14          FEMALE JUROR:  No, sir.

15          THE COURT:  In Question 70, apparently at first you

16  checked that you might have trouble following the judge's

17  instructions, but you changed that to no.  Is anything --

18          FEMALE JUROR:  No, sir.  I was in a hurry.  I got the

19  questionnaire late.  I was trying to fill it out as fast as I

20  could for everyone.

21          THE COURT:  Okay.  Fine.  Thank you.

22          Were there any other questions?

23          When you said both sides are wrong, who do you think

24  both sides are?

25          FEMALE JUROR:  The Black Lives Matter movement and

1   the Antifa movement, both of them knew what they were coming to

2   Charlottesville to do.  Everyone knew that there was a state of

3   emergency to come in and not be around this area, not to

4   provoke anything.  Both parties still chose to continue to do

5   so, which led to violence, chaos, and still to this year, we're

6   still dealing with this.

7             THE COURT:  You said that Antifa and Black Lives

8   Matter.  Were there any other parties that you think --

9             FEMALE JUROR:  I'm not aware of the other -- those

10  are the two main ones that I followed and was hearing about.

11            THE COURT:  You heard the names of the persons here.

12  The plaintiffs in this case do not necessarily identify

13  themselves --

14            FEMALE JUROR:  No, sir, I cannot identify them.

15            THE COURT:  -- with any -- either group.  I say that.

16  It may come out in evidence that they are.  But the defendants

17  over here, you heard their names mentioned.

18            FEMALE JUROR:  Correct.

19            THE COURT:  Did you -- have you reached any opinion

20  about whether they are also at fault?  When you said both

21  parties are at fault, were you including the defendants also?

22            FEMALE JUROR:  I don't know particular names.  I

23  tried to stay away from the case as much as possible.

24            Like I said, I work down here.  I have to hear about

25  it, see about it enough.  So the less I could be involved, the

1   better off I was with how I felt about the whole situation.  I

2   really didn't want to know what all went on, what took place.

3   I knew it was a lot of chaos, and that's how I felt.

4              THE COURT:  Okay.  But I just wanted to get it clear.

5   When you said both sides were at fault -- is that the words you

6   used?

7              FEMALE JUROR:  Both parties.

8              THE COURT:  Both parties.  I wanted to be sure who

9   you include in both parties.

10             FEMALE JUROR:  Those are the only parties that I'm

11  aware of that I mentioned.

12             THE COURT:  You think Antifa and Black Lives

13  Matter --

14             FEMALE JUROR:  Correct.

15             THE COURT:  -- were at fault.

16             Would you be more or less inclined to find in favor

17  of one side or the other if evidence comes out that Black Lives

18  Matter and Antifa were among counter-protesters on one side?

19             FEMALE JUROR:  No.  I don't know that I'm

20  understanding your question.

21             THE COURT:  Well, what I'm saying is, I think Black

22  Lives Matter and Antifa would probably have been on the same

23  side.

24             FEMALE JUROR:  Okay.  So, then, I'm thinking of -- I

25  don't want to say this the bad way.  The white side that came

24

1    in, the white activists, KKKs, that's the party that I'm

2    thinking of that is wrong.  They went against each other and

3    created a race war in Charlottesville in our city.

4           THE COURT:  All right.  So --

5           FEMALE JUROR:  Does that make more sense?  I'm sorry.

6           THE COURT:  Well, what I'm saying is I think

7    Antifa -- the evidence will be Antifa and Black Lives Matter

8    would be on one side, likely, and the groups you just mentioned

9    would be on the other side.

10          FEMALE JUROR:  Correct.

11          THE COURT:  All right.  Do you include all of those

12    when you say both sides --

13          FEMALE JUROR:  Absolutely.

14          THE COURT:  -- are at fault?

15          FEMALE JUROR:  Yes, sir.

16          THE COURT:  Okay.  That's clear.  Thank you.

17          All right.  Any other questions?

18          Do you believe that all persons have a right to

19    demonstrate publicly as long as they are not violating the law?

20          FEMALE JUROR:  I do.

21          THE COURT:  Would that include radical communists and

22    atheists?

23          FEMALE JUROR:  No.

24          THE COURT:  You don't think they would have a right

25    to --

```
1              FEMALE JUROR:  It's my personal -- everyone does have
2    the right.  It's not what I would prefer.
3              THE COURT:  Well, could you -- if there would be a
4    fight -- hypothetically, if there were to be an altercation and
5    these people -- would you have any trouble finding in favor of
6    the, say, communists and atheists, that they didn't cause the
7    problem, somebody attacked them?
8              FEMALE JUROR:  I would not find that an issue, if
9    that could be proved.  That's absolutely correct.  They
10   wouldn't necessarily be at fault at all.
11             THE COURT:  What if they were injured and they proved
12   by a preponderance of the evidence that someone else caused the
13   injury?  Could you find in their favor?
14             FEMALE JUROR:  Absolutely.  If they were provoked and
15   attacked, that's not -- that's not right.
16             THE COURT:  Okay.
17             FEMALE JUROR:  Regardless of what they were doing.
18             THE COURT:  Okay.  Is there any particular public
19   figure whom you admire?
20             FEMALE JUROR:  I didn't have anyone listed on either
21   side.  I didn't have anyone on the top of my list at all.
22             THE COURT:  All right.  Is there anyone you could
23   particularly -- you are particularly critical of?
24             FEMALE JUROR:  No, sir.
25             THE COURT:  All right.  In this case, each defendant
```

1    has to be considered separately.  The mere fact that you

2    find -- would find that the evidence shows by a preponderance

3    of the evidence that one is liable does not necessarily mean

4    that the other is liable.  If you should, in the deliberations,

5    come to the conclusion that the plaintiff has found one of the

6    defendants liable, could you still find another defendant not

7    liable --

8              FEMALE JUROR:  Absolutely.

9              THE COURT:  -- if the plaintiff had not proven?

10             FEMALE JUROR:  If it was not proven, absolutely.

11             THE COURT:  All right.  Thank you.

12             What did you learn prior to Unite the Right that led

13   you to shut your office down?

14             FEMALE JUROR:  There was multiple threats that went

15   through.  The office just decided it was best for us to not be

16   involved, especially because there was a state of emergency.

17   There were rumors about the violence that was going to take

18   place.  So we thought it would be best to not be involved at

19   all in the situation for the safety of all of our employees.

20             THE COURT:  All right.  You said the community of

21   Charlottesville is still dealing with this.  Can you explain

22   what you mean?

23             FEMALE JUROR:  On my lunch break yesterday there was

24   a man chased down in the parking lot at Staples over this.

25   That happens all the time on the Downtown Mall.  You hear this

27

1  or that, or if there's someone who doesn't like what they're

2  doing, it turns into -- nothing to:  You're black or you're

3  white.  It's been a never-ending race war since that date, in

4  my opinion.

5           THE COURT:  All right.  Well, the incident yesterday,

6  does that -- would that in any way affect your ability to be

7  fair in this case today?

8           FEMALE JUROR:  No, sir.

9           THE COURT:  Did you hear any particular rumors about

10  violence before Unite the Right?

11          FEMALE JUROR:  Yes.  Being on the Downtown Mall, a

12  lot of bickering or say-so was going on outside the Freedom

13  Wall.  It was just best that no one was involved from my side.

14          THE COURT:  All right.  I'm going to let you take

15  your mask down.  I'm sorry.

16          Have you heard -- did you hear anything about who was

17  responsible?

18          FEMALE JUROR:  For starting the violence or -- I did

19  not.

20          THE COURT:  All right.  Anything else?

21          All right.  Thank you.  You may go back to the jury

22  room.  And when you go back, do not discuss the case with

23  anyone.  Do not let anyone discuss it with you.

24          FEMALE JUROR:  Yes, sir.  Absolutely.

25          THE CLERK:  218.  Wait.

```
 1              THE COURT:  Let's take up this juror now while it's
 2    on my mind.  Any objection to this juror for cause?
 3              MS. DUNN:  Yes, Your Honor.
 4              THE COURT:  All right.  Speak to it, please.
 5              MS. DUNN:  The first point is that she clearly has a
 6    wealth of personal experience with the evidence in this case.
 7    She has a lot of opinions.  She says herself she's been living
 8    with it every day as recently as yesterday at lunch.  It shut
 9    down her business.  It is very hard, if not impossible, to
10    believe she can put that on the shelf for this case.  And she
11    repeatedly, under questioning of the Court, until the Court led
12    her to a different conclusion, said that --
13              THE COURT:  Wait, I didn't -- how did I lead her
14    to --
15              MS. DUNN:  I apologize.  I apologize.
16              THE COURT:  All right.  I mean --
17              MS. DUNN:  I apologize.
18              THE COURT:  Okay.
19              MS. DUNN:  But prior to conversation with the Court,
20    when she was asked about both sides, she believed both sides
21    are Antifa and Black Lives Matter.
22              THE COURT:  Right.
23              MS. DUNN:  And that is an opinion based on her
24    personal experience, and it is -- it requires a level of
25    thought in this case where she's exclusively focused, with
```

1  regard to the question in this case regarding responsibility,

2  on two groups.  And those groups are going to come up in this

3  case, as we've heard.  And that is -- this is a person who --

4  her immediate answer was BLM and Antifa.  That was her frame of

5  reference for responsibility.

6         So I will look at the rest of my notes.  She also

7  said -- this is very important -- radical communists and

8  atheists, do they have a right to demonstrate?  Her immediate

9  and quick answer to that was "no."

10         And then further questioning, you know, she walked it

11  back a little bit.  But her immediate answers to all of these

12  questions are extremely concerning.

13         The other --

14         THE COURT:  Do we have any -- I'm sure -- was anyone

15  here identifying themselves as a radical communist or an

16  atheist?

17         MS. DUNN:  That term is going to come up in this

18  trial.  That is part of what we've seen already being argued by

19  the defense side in this case.  So there are going to be terms

20  like "radical communist."  This question didn't originate --

21  it's possible that the defense doesn't want this juror, either,

22  because that question came from them.

23         The last point I'll make, Your Honor, is that because

24  of her insider knowledge, this is a juror that other jurors may

25  look to.  Our view is this is a huge risk to take right now

1  when there are other jurors who could be empaneled.

2          THE COURT:  All right.  Anyone on the defendants'

3  side?  Any challenge for cause on the other side?

4          MR. JONES:  Not from me, Your Honor.  Bryan Jones.

5          MR. SPENCER:  I must be honest.  I tend to agree with

6  the plaintiffs.

7          THE COURT:  All right.  Well, I don't think the juror

8  stands.  I think, just given her closeness to the situation,

9  she's obviously pretty significantly influenced by what's -- by

10 what has happened.  I don't think -- I think I'm going to

11 strike her for cause.  I will strike her for cause.

12         All right.  Call the next juror.

13         Oh, before we go, she spoke of an incident yesterday.

14 Is anyone aware of what that could be?

15         MS. KAPLAN:  Sorry for the noise, Your Honor.  I'm

16 not familiar, other than I did see some social media reporting

17 about it.  There apparently was some kind of altercation in

18 town about racial issues that people believe was sparked by

19 this trial.

20         You know, obviously we don't intend to -- on our

21 side, we're not going to say anything on social media about any

22 of that, and maybe an instruction like that would be

23 appropriate to all the parties.

24         THE COURT:  Well, I'll just say:  If any of you see

25 anything out of the way like that, please report it to the

1   marshal's service.

2          THE CLERK:  218.

3          THE COURT:  When questions are handed up, they'll

4   pretty much know they're coming from the plaintiff.  We're

5   trying to keep these questions together and would like for the

6   defendants' -- particularly to know who is asking them.  So --

7   but the plaintiffs should state "plaintiffs" on their

8   questions.

9          MS. DUNN:  Understood.

10         THE COURT:  Ma'am, you may remove your mask.  Thank

11  you.  Would you state your jury number?

12         FEMALE JUROR:  218.

13         THE COURT:  You heard me state that this case is set

14  for four weeks starting today.  Recognizing that is a burden on

15  anyone, does it create a problem for you that would be greater

16  than it would be for the average person?

17         FEMALE JUROR:  Yes and no.  I'm going through a

18  pretty difficult separation right now, and I'm dealing with a

19  lot in terms of trying to sort out stuff with -- related to

20  that.

21         THE COURT:  All right.  Okay.  There are times when

22  you might have to sit for an hour, hour and a half without

23  taking a break.  Do you have any physical or medical

24  limitations that would prevent you from doing that, should you

25  be selected as a juror?

1         FEMALE JUROR:  No.

2         THE COURT:  If you were selected as a juror in this

3    case, do you -- have you formed any opinion as to any issue

4    that might be involved in the case?

5         FEMALE JUROR:  I have a lot of friends that were a

6    part of the events on August 12th that are suffering from the

7    aftermath.  So I would say that I do have a pretty -- an

8    already sort of formulated feeling about what happened that

9    day.

10         THE COURT:  Do you feel you could -- in your

11   questionnaire you said -- you answered Question 72 that you

12   would be able to set aside preconceived opinions you may have

13   about the Unite the Right rally, this case, and the parties

14   therein, and reach a decision based solely upon the evidence

15   you hear at trial in accordance with the law as instructed by

16   the Court.  Could you do that?  I mean --

17         FEMALE JUROR:  I think by nature I'm a pretty

18   bird's-eye-view person.  I like to think that I'm constantly

19   looking at things from all angles and formulating balanced

20   responses to information, if that answers the question.

21         THE COURT:  All right.  The fact that you've had

22   friends who may be suffering from -- or suffered from some of

23   the effects of the altercation, do you think that would make it

24   difficult for you to find in favor of the defendants in the

25   case if the plaintiff failed to prove that these defendants

33

1  came to Charlottesville with the intention of creating racially

2  motivated violence?

3          FEMALE JUROR:  I've given a lot of thought to

4  everything that happened over the years, and I honestly

5  don't -- I don't have a formulated opinion.  I feel like

6  there's a lot of missing information.  As someone that wasn't a

7  part of any organization, I wasn't a part of the activist

8  community on either side.  I've always been pretty neutral.

9  I'm just definitely very anti-violence.

10          THE COURT:  All right.  If you were selected to serve

11  on a jury, do you feel that you could render a verdict fair to

12  both the plaintiffs and the defendants based solely according

13  to the law and the evidence in the case?

14          FEMALE JUROR:  Yes.

15          THE COURT:  All right.  Are there any questions?

16          FEMALE JUROR:  No.

17          THE COURT:  Regarding your friends who might have

18  been injured or affected in some way, do you have any -- have

19  you formed any opinion as to who might have been responsible

20  for their suffering?

21          FEMALE JUROR:  No, I don't.  One of the people is my

22  son's after-school teacher, who I admired and was such an

23  incredible person.  He worked so well with the kids.  His life

24  has been altered forever because he was, you know, severely

25  beaten.  But to this day I don't understand what happened or

34

```
 1   why it happened.  Obviously, it's just -- the loss of him is
 2   what's, you know, the most -- but no, I don't.  I don't really
 3   understand any of it.
 4        And then I also had multiple friends that were on the
 5   road when Heather Heyer was hit.  So -- but, again, I wasn't
 6   here.  I was in a different -- I was actually staying up in
 7   Baltimore at the time.  And I don't -- as I said, to this day,
 8   I don't really understand any of it.
 9        THE COURT:  You said you have a lot of friends who
10   were part of the event.  Could you set aside what you have
11   heard from your friends and not allow it to affect you?
12        FEMALE JUROR:  I actually haven't talked with them.
13   I was firmly in a place of not getting involved and encouraging
14   other people to not get involved.  So that event actually
15   caused me to stop communicating with a lot of the people that I
16   know.  So I actually haven't talked to them since.
17        THE COURT:  In your questionnaire you said that you
18   had suffered injuries from being struck by a car.  Given that
19   many of the plaintiffs were struck by Mr. Fields's car, can you
20   set aside your experience and try this case only by what you
21   hear about the injuries and the events from the witnesses here
22   in the courtroom?
23        FEMALE JUROR:  You know, with the James Fields
24   situation, it seems like -- I mean, it's something that
25   definitely happened, and it was definitely wrong.  So I don't
```

1   quite know how to answer that, because I don't see what there

2   is to set aside.

3            THE COURT:  Well, I don't think you would be asked

4   not to believe that happened.  Just the fact that you were in

5   an accident yourself and were seriously injured, do you think

6   that that is likely to influence your -- any decision you have

7   in this case?

8            FEMALE JUROR:  I honestly don't know how to answer

9   that.

10           THE COURT:  Okay.  Did you have a friend who was

11   injured, beaten in the case?

12           FEMALE JUROR:  Would you repeat that question,

13   please?

14           THE COURT:  Did he tell you who had beat him?

15           FEMALE JUROR:  No.  I've never -- I only knew -- we

16   called him Mr. Dre through Jackson Via and his work with my

17   son.  I never spoke to him again after that incident.  I just

18   heard it was him.

19           THE COURT:  Is he a plaintiff in the case?

20           FEMALE JUROR:  I did not hear his name come up, no.

21           THE COURT:  Okay.  Any other questions?

22           MR. KOLENICH:  Yes, Your Honor.

23           THE COURT:  Was his last name Harris, your friend?

24           FEMALE JUROR:  I don't think so.  I'm not sure.  As I

25   said, he always went by Mr. Dre.  I don't know what that -- if

1   that was related to his last name or his first name, but that's

2   what the kids called him.

3             THE COURT:  Is his name DeAndre?

4             FEMALE JUROR:  Yes.

5             THE COURT:  Is that him?

6             FEMALE JUROR:  Yes.  DeAndre.  That's right.  That's

7   what the "Dre" is.

8             THE COURT:  And you do not know him that well, then?

9             FEMALE JUROR:  As I said, he was -- he worked for

10  Jackson Via Elementary School, and I knew him in the context of

11  a teacher's assistant for an after-school program.  I didn't

12  know him as a friend or personally.  I just knew him because of

13  his work there and what a positive influence he was on my son

14  and all the other kids there.

15            THE COURT:  If you're selected to serve on the jury

16  do you feel that, given your personal circumstances, you will

17  be able to devote the amount of attention required to sit and

18  hear the issues in the case and render a verdict fair to

19  both -- to all parties, and the verdict being based solely

20  according to the law and to the evidence?

21            FEMALE JUROR:  You know, when I initially got that

22  survey, I felt that I could.  Now that I'm here, I'm realizing

23  this is bringing up a lot of stuff for me.  So I really don't

24  know.

25            THE COURT:  All right.  Thank you.  I'm going to let

37

1  you go back to the jury room.

2          All right.  With regards to this juror, my concern is

3  that with her personal situation, she just doesn't seem --

4  she's obviously not someone affected by this case, but her

5  personal problems are pretty bad, I think, to have to sit

6  through a four-week jury trial.

7          MR. JONES:  Agreed, Your Honor.

8          MR. SMITH:  We agree.

9          MS. DUNN:  Your Honor, this is a difficult situation,

10  particularly because I'm trying to heed the Court's warning

11  about not comparing jurors.

12          THE COURT:  Well, I'm not -- tell me about this

13  juror.  I mean, I don't recall anyone else going through a

14  difficult divorce and having a lot of experience with these

15  things.  I know it's pretty tough on people.

16          MR. SMITH:  She looks depressed, Your Honor.  She

17  looks seriously depressed.

18          THE COURT:  Sir, will you please not interfere?

19          MR. SMITH:  I'm sorry.  I understand.

20          MS. DUNN:  I understand, Your Honor.  I think this

21  juror is a hard circumstance.  I think this is -- honestly, I

22  think this is a difficult call.  There are people who may come

23  through here who -- I don't know how to have this conversation

24  without talking about a comparison.  There are --

25          THE COURT:  I don't think there's a matter of law or

38

 1    anything.  I'm just concerned about her.  I'm going to make the

 2    decision with regard to her at the end.

 3            MS. DUNN:  The point I'm trying to make is not -- I

 4    agree with you it's not a matter of law.  What I'm trying to

 5    say is that people handle things differently.  Yesterday we saw

 6    a gentleman that said he had severe anxiety on a daily basis,

 7    and that person, notwithstanding the fact that he said it

 8    multiple times, was qualified.

 9            Some people cry.  Some people don't cry.  I think

10    this is a hard --

11            THE COURT:  Well, we could let them come in and not

12    have a voir dire, just pick them off the list and --

13            MS. DUNN:  No, Your Honor.  I --

14            THE COURT:  -- if we can't rely upon what we see and

15    hear in the courtroom.

16            MS. DUNN:  I'm agreeing with you, this is within the

17    Court's discretion.  But the single point that we are making is

18    that I think people exhibit their circumstances differently.

19            THE COURT:  I know they do.  My mother used to laugh

20    when everybody else would cry.

21            MS. DUNN:  Right.

22            THE COURT:  But that's -- you know, I'm not a

23    psychiatrist and I can't immediately tell who's distressed and

24    who is not.  It seems to me the lady was pretty --

25            MS. DUNN:  Your Honor, I'm not disagreeing this is

1   within the Court's discretion.  I think you're correct under

2   the law.  There is law on close relationships.  I think she's

3   qualified from that perspective under the law.

4          I think when it comes to issues of demeanor and other

5   things, you know, it's obviously within the Court's discretion,

6   and I'm trying to be very respectful, but I think we've seen

7   jurors in this case who have said "I have severe anxiety

8   issues" and have been open about that, and said "I'm okay

9   today" without any promise about any other day, and that person

10  was deemed qualified over our objection.  So I just want to ask

11  the Court to consider it, which is within -- obviously, we

12  acknowledge, completely within Your Honor's discretion.

13          THE COURT:  Well --

14          MR. KOLENICH:  Thank you, Your Honor.  As to that,

15  referencing Juror 210, who was having trouble with his mask and

16  stated he had anxiety, but he's more or less the opposite of

17  what this prospective juror is.  He said he didn't feel he

18  could do it before he got here, but now that he's here, he sees

19  how big the room is, he felt he could do it.

20          This witness just broke down live on the stand

21  remembering what happened to her good friend who is very

22  probably DeAndre Harris, who was severely beaten in a parking

23  garage, resulting in multiple convictions of persons connected

24  with this event.  It seems to us that that disqualifies her as

25  a juror, on top of all her other problems.

1              Now, I wouldn't say that of someone going through a

2    divorce, per se, but she's obviously struggling with it.  She

3    referenced it in her questionnaire.  Not only is she going

4    through a divorce, but her questionnaire says she's unemployed

5    or was laid off.  She's got issues, and she's too closely

6    connected to the case.  Essentially, she's an eye witness to

7    after-event damages.

8              THE COURT:  Okay.

9              MR. SPENCER:  I have a lot of empathy for that woman

10   going through a divorce.  Also, she has a 12-year-old son, and

11   I assume there's going to be some kind of custody battle.  That

12   son is the person who knew Mr. Dre.  I think it would be a

13   deeply personal thing and it would be very painful for her.

14             MR. CAMPBELL:  Your Honor, if I could, very briefly.

15   Mr. Campbell on behalf of Fields.

16             Judge, as you know, I haven't weighed in on any of

17   the for-cause, but I think in this case that -- the so

18   factually similar incident where she was severely injured,

19   being struck by a car, in addition to her response, at least as

20   to my client, makes clear that she can't be indifferent to the

21   cause, Judge.

22             Of course we're not going to take the position that

23   the incident did not happen.  Your Honor is correct in that

24   regard; however, as to the damages, she still has to be fair.

25             Thank you, Your Honor.

```
 1            THE COURT:  All right.  Well, I -- I'm going to

 2  excuse her.  The last thing she said -- I mean, she broke down.

 3  And I just think she's -- it's too much to ask her to serve on

 4  the jury.  So I'm striking her for cause.

 5            Okay.  Call the next juror.

 6            THE CLERK:  220.

 7            THE COURT:  All right.  You may take your mask off,

 8  if you will.

 9            State your number, jury number.

10            MALE JUROR:  220.

11            THE COURT:  Okay.  You heard me say this morning that

12  the trial is scheduled to last four weeks.  And that would be

13  starting -- it would be including this week.  Now, recognizing

14  that it's a substantial burden on anyone to serve on the jury,

15  would the burden on you be so hard and tough that it's beyond

16  what the average juror would face?

17            MALE JUROR:  No, sir.

18            THE COURT:  Okay.  There may be times that you will

19  be required to sit for an hour, hour and a half without taking

20  a break.  Are you -- do you have any reason, physically or

21  medically, that you could not do so?

22            MALE JUROR:  No, sir.

23            THE COURT:  Okay.  You stated that you live about

24  three blocks from where this occurred?

25            MALE JUROR:  Yes, sir.  Maybe more like a
```

1    quarter-mile.

2            THE COURT:  Have you formed any opinions regarding

3    any of the issues that might come up in this case?

4            MALE JUROR:  No, sir.  I'm not even quite sure what

5    the issues are in this case at this point.

6            THE COURT:  The plaintiffs will have to prove their

7    case by a preponderance of the evidence.  They'll have -- that

8    is, they will have to prove that the defendants -- one of the

9    main things is that the defendants came to Charlottesville with

10   the -- had conspired to come to Charlottesville with the notion

11   of conducting racially motivated violence here.  And the

12   plaintiffs have to prove that by a preponderance of the

13   evidence.

14           If the plaintiff should prove that, could you find in

15   favor of the plaintiffs against the defendants?

16           MALE JUROR:  Yes, sir.

17           THE COURT:  If the plaintiffs do not prove that there

18   was a conspiracy to come here and conduct racially motivated

19   violence, could you find in favor of the defendants?

20           MALE JUROR:  Yes, sir.

21           THE COURT:  Are you sensible of any bias or prejudice

22   against either side of this case?

23           MALE JUROR:  In all honesty, I'd probably class

24   myself as central -- or center-left in my political beliefs,

25   but -- so -- but I don't think it would bias me in my

1   interpretation of the case.

2          THE COURT:  All right.  If you were selected as a

3   juror to serve in the case, do you know of any reason you could

4   not return a verdict that's fair to both the plaintiffs and the

5   defendant, a verdict based solely according to the law and the

6   evidence you hear in the courtroom?

7          MALE JUROR:  That wouldn't be a problem.

8          THE COURT:  Are there any questions anyone has?

9          You describe your view on Antifa as being extremely

10   favorable.  Could you tell us about that, and if you have heard

11   anything about Antifa's connection with the Unite the Right

12   rally?

13          MALE JUROR:  I don't know anything about that

14   connection.  I guess favorably, I sort of view Antifa as being

15   abbreviated "anti-fascist."  I would consider myself an

16   anti-fascist, in that sense, just like a GI in World War II is

17   an anti-fascist.  That's what I mean by that.

18          THE COURT:  You indicated you were concerned about

19   racism, but not racism against white people.  Can you elaborate

20   on that?

21          MALE JUROR:  I feel like I probably have been pretty

22   privileged in my life.  Being a white male, I've had a lot of

23   things easier than other people have.  So I've never personally

24   experienced race working against me.  I'm just speaking from my

25   own perspective.

44

```
 1              THE COURT:  You also said you were extremely
 2   favorable to the Black Lives Matter movement, as well as
 3   Antifa, but could you set aside personal opinions about those
 4   groups and not allow them to affect you in reaching a verdict
 5   in the case and base your verdict solely on the evidence you
 6   hear in the case?
 7              MALE JUROR:  I believe I could.
 8              THE COURT:  All right.  If there should be evidence
 9   that Antifa was somehow involved in violence in the case, would
10   you be able to set aside its violence and then consider, if
11   anyone else was violent separately from Antifa, and if that
12   person be one of the defendants, could you still find in
13   favor -- could you find in favor of the plaintiffs against the
14   defendant?
15              I mean, I'm -- that's a bad question.
16              If you find from the evidence that the defendants
17   were at fault in the case, but Antifa was also at fault in the
18   case -- not in this case, but that Antifa committed acts of
19   violence, could you follow the Court's instructions -- and I
20   will tell you that you must -- the plaintiff must prove by a
21   preponderance of the evidence that these defendants came to
22   Charlottesville and had conspired to commit racially motivated
23   violence.  Could you -- if the plaintiffs prove that, are you
24   able to find a verdict for the defendants?
25              MALE JUROR:  Yeah, according to how you lay the case
```

45

 1   out and what the Court is asking us to decide on.  If it's --

 2            THE COURT:  What if the evidence also shows that

 3   Antifa committed acts of violence, but Antifa is not a party to

 4   the case?  Would that influence you in any respect?

 5            MALE JUROR:  If that was something we were to take

 6   under deliberation during the case, then yeah, I would

 7   deliberate it.  If I just heard about that and wasn't asked to

 8   deliberate on it, I'm not sure what effect it would have on me.

 9            I don't think -- I don't think I really fully

10   understand the question you're asking me.

11            THE COURT:  Let me put it this way:  Irrespective of

12   your opinion as to Black Lives Matter and Antifa, could you set

13   aside your personal opinions about those groups and not allow

14   it to affect you in reaching a verdict in this case?

15            MALE JUROR:  I could.

16            THE COURT:  All right.

17            You stated that you think Antifa is on the left,

18   where -- I mean, that your views are center-left.  Where would

19   you place Antifa on the scale?

20            MALE JUROR:  All the way left.

21            THE COURT:  All the way to the left.  Okay.

22            And I don't understand the second question on this.

23            MR. CANTWELL:  The Daily Kos.

24            THE COURT:  Do you know anything about Daily Kos?

25            MALE JUROR:  Yeah.  It's a news source like Fox or

1  CNN or MSNBC -- just a regular page you can read about.  I

2  think they post journals on there.  People can submit journals

3  about things.

4        THE COURT:  Would you say that is -- on the scale of

5  far right to far left, where would you place it?

6        MALE JUROR:  It's definitely left.  I don't think

7  it's is as far left as Antifa or one of those things, but I

8  think it's definitely to the left.  I find it -- when I look at

9  it, I feel like mostly what they're reporting on is factual

10 stuff.

11        THE COURT:  Let me ask you:  Have you formed any

12 opinion as to whether the defendants are fascists?

13        MALE JUROR:  Opinion, no.  I mean, sitting here today

14 and what I -- the little I do know of them, I would say that

15 they lean far to the right.  That's my opinion of them.

16        THE COURT:  Okay.  All right.  Thank you.  Is that

17 all the questions?

18        Do you believe that every organization has a right to

19 demonstrate and march in a city, assuming they are obeying the

20 law?

21        MALE JUROR:  I do.

22        THE COURT:  Would that include white nationalists?

23        MALE JUROR:  Yeah, if it's lawful and they've filled

24 out the permits and done all those things.  I do have some

25 problems with these gatherings when they become so heavily

1  armed, like you see with some of the right groups.  I don't

2  think you see it with the other groups, and that concerns me.

3  But if they're doing it within the boundaries of what the

4  permits allow them to do, then everyone -- that's an amendment

5  to the Constitution, the right to assemble.  I believe in that.

6            MR. CANTWELL:  Judge, if he could speak towards the

7  microphone, it would probably be helpful.  I'm having a little

8  trouble hearing the juror.

9            THE COURT:  Yeah, I'm straining a little myself.

10            Steer closer to the mic.

11            MALE JUROR:  Say the answer again?  Are you waiting

12  on me?

13            THE COURT:  I heard your answer.

14            On the Thom Hartmann Program, have you ever heard him

15  interview or speak about Richard Spencer?

16            MALE JUROR:  I've heard Richard Spencer talked about

17  on some of these shows.  I can't remember if it's on Thom

18  Hartmann.  Maybe, but I don't know for sure.

19            THE COURT:  You said that you oppose fascism.  Could

20  you tell us what you understand fascism to be?

21            MALE JUROR:  Yeah.  I mean, I don't know if it's a

22  perfect definition, but an authoritarian, sort of nondemocratic

23  government; one leader, one person calling all the shots, that

24  type of thing.  Adolf Hitler is an example of a fascist.

25  Mussolini is an example of a fascist, and so -- yeah, I like

1   the democracy we're living in.  I want to keep living in it.

2   So I'm all about pushing back against those forces that are

3   rising.

4              THE COURT:  All right.  Irrespective of any

5   preconceived opinions you might have about any organization,

6   can you set aside those preconceived opinions and try this case

7   solely according to the law and the evidence you hear in the

8   courtroom?

9              MALE JUROR:  I believe I can, yes.

10             THE COURT:  All right.  Is that all the questions?

11             All right.  Thank you, sir.  When you go back to the

12  jury room, do not discuss the case with anyone or allow anyone

13  to discuss it with you or remain within hearing of anyone

14  discussing it.

15             MALE JUROR:  Thank you, Your Honor.

16             THE COURT:  All right.  Any motions for cause on this

17  juror?

18             MR. CANTWELL:  I'll move to strike the juror for

19  cause, Judge.  I think the gentleman has what he describes as

20  an extreme view about Antifa.  He describes himself as

21  extremely favorable to a group which became notorious for

22  looting and burning throughout the latter half of 2020.

23  There's no dispute that Antifa committed acts of violence in

24  Charlottesville that weekend.  And whatever bearing that has on

25  this case, somebody who has an extremely favorable view of a

1   group that hunts the defendants like dogs in the street, I

2   think, is going to be a problem as a juror.

3          THE COURT:  All right.  I think the juror has

4   expressed that he can set aside any of his opinions and be a

5   fair jurist.

6          MR. KOLENICH:  Your Honor, if I could, this juror

7   walked right up to the line of identifying himself as an

8   Antifa.  In Question 46 of his questionnaire, he states he

9   lives three blocks from where Heather Heyer was killed.  He

10  further states:  "I was very aware of what happened and saw the

11  whole day/weekend unfold before me."  Makes him an eyewitness

12  to the events.

13         He also testified he knows what the Daily Kos is, but

14  then testified he doesn't really know much about the

15  defendants, which isn't especially credible testimony.

16         I believe this is not a competent juror.

17         MS. DUNN:  Your Honor, if you require a response, I

18  can give one, but I don't know that the Court requires that,

19  having already said he's qualified.

20         MR. SMITH:  Your Honor, Mr. Smith.  If I could.

21         THE COURT:  Wait just a minute.

22         Let me hear your point.

23         MS. DUNN:  If Your Honor is at all inclined to strike

24  for cause, we can respond, but otherwise --

25         THE COURT:  Well, let me see what you have to say.

1          MR. SPENCER:  The idea that he's a Daily Kos reader

2    and he listens to Thom Hartmann Program and he's -- doesn't

3    know -- he vaguely heard something about Richard Spencer is --

4    that's incredible, to be frank.  I really think he is lying in

5    order to get on the jury.

6          MR. SMITH:  Saying "I watched the events unfold over

7    the weekend before my eyes" -- I mean, aside from the fact

8    that, yes, that makes him an eyewitness by his own testimony,

9    but more to the point, he already has a very clear idea in his

10   head of what happened, and it's hard to imagine that anybody is

11   going to be able to tell him differently if he watched the

12   events unfold himself in front of his very own eyes.  It just

13   seems like maybe it's too much.

14         THE COURT:  I think based on his -- his answers that

15   he could set aside any preconceived notions and try the case

16   solely according to the law and evidence is sufficient.  And I

17   accept him -- that, and I do not feel that he's disqualified

18   for cause.  So -- all right.

19         Let's take a break now.

20         MS. DUNN:  Thank you, Your Honor.

21         THE COURT:  Take about 15 minutes.

22         (Recess.)

23         THE COURT:  What's the next juror?

24         THE CLERK:  221.

25         THE COURT:  All right.

51

1          Ma'am, would you state your jury number?

2          FEMALE JUROR:  221.

3          THE COURT:  You heard me say that this case will last

4    for four weeks starting this week, including this week.  Now,

5    recognizing that this would be a burden on anyone, do you feel

6    that there is any burden on you that would be greater and

7    harsher than the burden on the average person who would be

8    called to serve on the jury?

9          FEMALE JUROR:  No.

10         THE COURT:  All right.  There may be times at trial

11   where we would be sitting for an hour or an hour and a half

12   without taking a break.  Do you have any physical or medical

13   limitation that would prevent you from doing so?

14         FEMALE JUROR:  From sitting?  No.

15         THE COURT:  All right.  From what you know about the

16   case already, are you sensible of any bias or prejudice against

17   either side in the case?

18         FEMALE JUROR:  Not that I know of.

19         THE COURT:  All right.  In your questionnaire you

20   said you would be -- when asked, would you be able to set aside

21   preconceived notion -- opinions, if any, you may have about the

22   Unite the Right rally, this case, and the parties therein, and

23   reach a decision based solely on the evidence you hear in the

24   trial in accordance with the law as instructed by the Court,

25   you answered that question "no."

52

1             Can you -- and you said "I would try," but you are

2    very against protests and riots?

3             FEMALE JUROR:  I have never liked protests.  I think

4    everybody should stay at home.  I have never felt that there

5    was a need for a protest.  You can vote or you can write your

6    Congressman or Senator.  I have never felt there was a need for

7    a protest.  I've always felt protests led to more violent acts

8    and, like, tore up the town or city and just cost taxpayers

9    more money.

10            THE COURT:  All right.  This Unite the Right rally

11   has already occurred, and the plaintiffs are claiming that they

12   received injuries in the -- as a result of violent events that

13   took place, and they're seeking damages against these

14   defendants.  They are blaming these defendants and claim that

15   these defendants conspired to come to Charlottesville and

16   commit racially motivated violence, which resulted in their

17   injuries.

18            If the plaintiff fails to prove that by a

19   preponderance of the evidence, would you find it difficult to

20   find in favor of the defendants?

21            FEMALE JUROR:  No.

22            THE COURT:  All right.  If the plaintiffs proved by a

23   preponderance of the evidence that the defendants came to

24   Charlottesville having conspired to commit racially motivated

25   violence, and that they sustained injuries, would you have

53

1  trouble finding in favor of the plaintiffs?

2          FEMALE JUROR:  No.  I don't see how they could say

3  that they came to do racially motivated things, because I don't

4  think they would plan on that.

5          THE COURT:  All right.  The plaintiffs will present

6  evidence to that effect, and if the plaintiffs present evidence

7  that is believable, could you find in favor of the plaintiffs?

8          FEMALE JUROR:  If I thought they did, yes.

9          THE COURT:  All right.  Any questions?

10         You've said in your questionnaire that your

11  brother-in-law had been murdered.  Would that affect your

12  ability to consider the evidence in a case like this?

13         FEMALE JUROR:  No.

14         THE COURT:  All right.  You also said that you had

15  been hit by a truck.  Would that affect your ability to

16  consider the evidence in this case?

17         FEMALE JUROR:  No.  That was a long time ago.

18         THE COURT:  All right.  You said that you strongly

19  disapprove of the removal of the Confederate statues because of

20  southern pride.  What do you mean by that?

21         FEMALE JUROR:  I think it's wrong to change the

22  history.  That's our history.  I think it's wrong.

23         THE COURT:  In response to Question 43, you were

24  asked whether it would be difficult for you to be fair and

25  impartial.  You wrote you have never felt people should tear up

```
 1  a city or a town by protests.  They should stay home and be

 2  safe and be heard in other ways.  That's what you said earlier,

 3  too.

 4          FEMALE JUROR:  Right.  I've never thought people

 5  should protest.  It just leads to more trouble.

 6          THE COURT:  Have you formed any opinion as to who was

 7  at fault for the violence that took place in August of 2017?

 8          FEMALE JUROR:  No.

 9          THE COURT:  Do you believe that one side was more at

10  fault than the other?

11          FEMALE JUROR:  No.

12          THE COURT:  And in response to Question 41 you said

13  that the only prejudice, racism, you were concerned about was

14  racism against white people.  What do you mean by that?

15          FEMALE JUROR:  I don't think anybody -- I think -- I

16  don't like when they have the Black Lives Matter signs up.  It

17  should be all lives matter.  So I just don't go along with any

18  of it.  If they don't want to stand for everybody, I just don't

19  go along with any of it.

20          THE COURT:  All right.  You said you had heard about

21  the case.  What have you heard about the case?

22          FEMALE JUROR:  What's on the news, and the little bit

23  that was in the paper.

24          THE COURT:  Do you recall anything in particular

25  about the -- what you heard on the news?
```

1          FEMALE JUROR:  Just the fighting and somebody got --

2    somebody got run over.  There was a driving into the crowd.

3    Just a lot of different groups.  There was never a whole lot,

4    actually.

5          THE COURT:  Okay.  You said you're high-risk from

6    COVID and you are very concerned about COVID.

7          FEMALE JUROR:  Oh, you explained everything about

8    COVID earlier.  It seemed really good.

9          THE COURT:  Are you satisfied, then, that your

10   concerns about COVID wouldn't affect you serving as a juror in

11   the case?

12         FEMALE JUROR:  Yes.

13         THE COURT:  Okay.  You said -- you answered "no" to

14   the question -- I think maybe I brought this up before -- you

15   answered "no" to the question whether you would be able to make

16   a decision based on the evidence, although you would try.

17         Why did you say "no," and can you explain the

18   difficulty you would face?

19         FEMALE JUROR:  Because I wasn't sure.

20         THE COURT:  Given your position here today, can you

21   sit and hear the evidence in the case, following --

22         FEMALE JUROR:  Yeah, I would try.

23         THE COURT:  Excuse me.

24         FEMALE JUROR:  Pardon me?

25         THE COURT:  Can you make a decision, after hearing

1  the evidence in the case, following the judge's instructions,

2  and render a verdict fair to the plaintiffs and to the

3  defendants that's based solely according to the law and the

4  evidence?

5          FEMALE JUROR:  I think so.  I would say yes.

6          THE COURT:  All right.  You will be asked --

7  witnesses will testify to a certain fact, and you will be

8  required to decide whether to believe that fact is true or not.

9  Are you sensible of any bias or prejudice that would prevent

10  you from deciding that fact if you favored, say, one side or

11  the other in the case?

12          Let me put it this way first:  Do you find yourself

13  favoring one side or the other in this case as you sit here

14  today?

15          FEMALE JUROR:  Not right now, because I really don't

16  know any of the facts.

17          THE COURT:  Well, do you have any opinion as to who

18  caused the violence?

19          FEMALE JUROR:  No.

20          THE COURT:  Each defendant in this case has to -- has

21  a right to have the case decided against them separately.  The

22  fact that you may believe that one of the defendants is at

23  fault or liable to the plaintiffs, but that the plaintiff has

24  not proven by a preponderance of the evidence that another

25  defendant is also liable in the case, could you find a verdict

1   for that defendant who was not proven to be liable just

2   because -- and not hold the fact that you had decided another

3   defendant was liable?

4            I know that was a convoluted question.

5            The fact that you find one -- can you hear the

6   evidence in this case and decide maybe that the evidence proves

7   some defendants liable and others not liable?  Can you return a

8   verdict only against those who are liable?

9            FEMALE JUROR:  Yes.

10           THE COURT:  All right.  You said that you have always

11  felt that protests lead to more violence.  In this case, the

12  evidence will be that all of the parties were protesting.  And

13  protests are lawful -- you didn't say that, but I'm telling you

14  that now:  Protests are lawful, whether we agree with them or

15  think they're a good idea or not.

16           Have you decided in this case -- or would it affect

17  you in this case if the plaintiffs were protesters?

18           FEMALE JUROR:  I have to say I don't like protesters.

19           THE COURT:  Right.  But there are protesters on both

20  sides of this case.

21           FEMALE JUROR:  I just don't like protesters.  I never

22  have, neither way.  I just don't think it's right.

23           THE COURT:  Okay.  I'm going to ask you again:  If

24  you were selected to serve as a juror in the case, are you

25  satisfied that you could set aside your notions about --

1    preconceived notions about protesting and other things and

2    return a verdict based solely according to the law that the

3    Court gives you and the evidence in the case?

4              FEMALE JUROR:  I would try.

5              THE COURT:  How sure are you that you could do so?

6              FEMALE JUROR:  About 75 percent.

7              THE COURT:  Okay.  All right.  Thank you.

8              Any questions?

9              You said that you could not -- you did not believe

10   that people could plan to commit racially motivated violence.

11   Can you explain why you believe that they could not?

12             FEMALE JUROR:  I don't think they have that in their

13   minds, starting that.  I think they just get in a group

14   together with people that they're socially in the same group,

15   motivated together with, but they don't start planning anything

16   together to do.  They just end up doing something, but I don't

17   think they started out planning anything.

18             They just -- it just happens.  But I don't think they

19   had planned it out.  It just happens because they just got kind

20   of riled up.

21             THE COURT:  All right.  You said that you were only

22   concerned about racism against white people because you don't

23   like Black Lives Matter signs.  What about the signs makes you

24   not concerned at all about racism against black people?

25             FEMALE JUROR:  Because it's -- it's just irritating

1   because it shouldn't be just Black Lives Matter.  If they're

2   going to put all those posters up and mark up the street,

3   especially down in D.C., it should be all lives matter.  If

4   they're going to protest anything, it should be for everyone.

5           THE COURT:  Do you believe that free speech is an

6   essential right for all Americans?

7           FEMALE JUROR:  Yes.

8           THE COURT:  If you heard that Black Lives Matter and

9   Antifa supporters were some of the counter-protesters at the

10  Unite the Right rally, would you be inclined to believe they

11  caused some of the violence?

12          FEMALE JUROR:  I knew Antifa would.

13          THE COURT:  Even though you don't like protesting, do

14  you believe that organizations such as Black Lives Matter have

15  a right to legally protest?

16          FEMALE JUROR:  I think they have the right, but I

17  don't agree with it.

18          THE COURT:  If you believed that the plaintiffs

19  proved by a preponderance of the evidence that the defendants

20  conspired to commit racially motivated violence, could you find

21  for the plaintiffs?

22          FEMALE JUROR:  Probably.

23          THE COURT:  All right.  Okay.  Thank you.  You may go

24  back to the jury room.  Do not discuss the case with anyone or

25  allow anyone to discuss it with you in the jury room.

1          All right.  Any motion for cause there?

2          MS. DUNN:  Yes, Your Honor.  There are multiple

3  independent strong bases for cause with this juror.

4          THE COURT:  Just a minute.

5          Any on your side?  Do you oppose her being struck for

6  cause?

7          MR. SPENCER:  No.  There's no reason, no.

8          MR. JONES:  Your Honor, we do oppose her being struck

9  for cause.

10          I think that's what you're trying to say, right?

11          MR. SPENCER:  Oh, I'm sorry.  I missed -- yes.

12          We absolutely do oppose that.

13          THE COURT:  I'm going to strike her for cause.  I

14  just think she was -- I mean, she said she's 75 percent sure

15  she could be fair and render a verdict in the case.  I don't

16  think that -- just her preconceived notions she's so strong in,

17  I just don't think that she could -- that's all right.  Come

18  on.  She can come in.

19          You may come in.  Thank you.

20          All right.  Would you state your jury number?

21          FEMALE JUROR:  I'm sorry?

22          THE COURT:  The number.

23          FEMALE JUROR:  Oh.  230.

24          THE COURT:  Thank you.  You heard me say this morning

25  that this trial was scheduled to last for four weeks, starting

1  today.  Recognizing that's a burden on you, but also would be a

2  burned on everyone else, would the burden on you be so severe

3  and harsh that you think it's -- you know, that your situation

4  is different from other -- the average juror?

5           FEMALE JUROR:  I do.

6           THE COURT:  And could you explain?

7           FEMALE JUROR:  I'm a private practice -- I'm a

8  therapist in private practice, and I don't have anybody to

9  cover my clients if I'm out.  I'm a sole proprietor.

10          I see -- I have a case load of about 40 people.  I

11 see about 20 each week, and I don't know who would cover for

12 them.  Some of them are in crisis, and I have a couple of

13 people who are suicidal -- they have suicidal ideation.  So

14 we're struggling with that.

15          I just don't know what I would do.  I guess I could

16 see them on the weekends.

17          THE COURT:  Do you see patients that you --

18 regularly?

19          FEMALE JUROR:  Yeah, I do.  I see people every other

20 week.  Right now it's been so busy I can't fit new people in.

21 These are all people I've seen in the past coming back in for

22 crisis.

23          THE COURT:  All right.  Would it affect your

24 patients?

25          FEMALE JUROR:  Not all of them, but definitely some

1  of them.

2        THE COURT:  Is there anyone to fill in for you while

3  you're gone?

4        FEMALE JUROR:  No.  I'm the only person.  I'm a sole

5  owner, so it's just me.  I could refer them to, I guess,

6  Region Ten or 9-1-1, but I don't have anybody that could see

7  them regularly.

8        THE COURT:  I'm going to ask you to step into the

9  hall.  Would you step to the door for a minute?

10        (Juror out.)

11        THE COURT:  She's similarly situated to a number of

12  persons I've already excused.  If she had asked to be excused

13  before, I would have.  So I think she has a genuine hardship.

14        MS. DUNN:  We agree, Your Honor.

15        THE COURT:  Any objection?

16        Ask her to step back in.  I'm going to let her leave.

17        (Juror in.)

18        THE COURT:  Ma'am, I'm going to excuse you, and you

19  don't have to come back.  Appreciate it.  If this ever happens

20  again, if you call or write, you know, as soon as you get

21  notified, we can --

22        FEMALE JUROR:  I filled out a lot of paperwork, and I

23  tried to do the online.  Thank you.  I appreciate that.

24        THE COURT:  All right.  Thank you.

25        Who's next?

```
 1              THE CLERK:  233.

 2              THE COURT:  All right, sir.  You may remove your

 3  mask.

 4              What is your juror number?

 5              MALE JUROR:  It is 233.

 6              THE COURT:  All right.  You heard me state that this

 7  case is set for trial for four weeks starting today.

 8  Recognizing the not insubstantial burden this case would place

 9  on you, but recognizing that jury service is a valid civic

10  duty, does this timing pose a particular problem for you that

11  wouldn't be common to every other juror?

12              MALE JUROR:  The only thing:  I work for the City of

13  Charlottesville, and I go on an emergency call group that's

14  24 hours from the end of my work schedule till the beginning of

15  my next work schedule, but I believe -- we can have people

16  cover our calls.  So I don't see that it can be an issue.

17              THE COURT:  All right.  Thank you.

18              There may be times during the trial where we'll be

19  sitting for an hour, hour and a half, or longer without a

20  break.  Do you have any physical or medical limitations that

21  would prevent you from doing so?

22              MALE JUROR:  No, sir.

23              THE COURT:  Okay.  All right.  Do you know of any

24  reason you could not sit as a juror in this case and render a

25  verdict solely according to the evidence you hear in the
```

1   courtroom and the instructions on the law that you hear in the

2   courtroom?

3           MALE JUROR:  No, sir.

4           THE COURT:  Are you have sensible of any bias or

5   prejudice against either party in the case?

6           MALE JUROR:  Yeah, I have no bias or no prejudice to

7   either side.

8           THE COURT:  Have you expressed or formed any opinion

9   as to any issue in the case?

10          MALE JUROR:  No, sir.

11          THE COURT:  Okay.  Any questions?

12          No questions?

13          MR. CANTWELL:  Just a moment, if you could, Judge.

14          (Pause.)

15          MR. CANTWELL:  No questions, Judge.

16          THE COURT:  All right.  Sir, you may go back to the

17   jury room.  And do not discuss the case with anyone or let

18   anyone discuss it with you until you --

19          MR. CANTWELL:  Oh.  Somebody does.

20          THE CLERK:  Wait a minute.

21          THE COURT:  All right.

22          Do you believe that everyone has a right to legally

23   march and parade in a city if they do so lawfully?

24          MALE JUROR:  Yeah, I believe either side -- I mean,

25   if it's done lawfully, I guess full permits, do what they need

65

1  to do, either side has a right to demonstrate their beliefs.

2          THE COURT:  All right.  Thank you.  Would that

3  include white nationalists and other organizations?

4          MALE JUROR:  Yeah.  Like I said, there are instances

5  in other cities I've seen before that -- I mean, your opinion

6  is your opinion.  Whether it's -- whether you believe it's

7  right or wrong, each side is entitled to their beliefs.

8          THE COURT:  All right.  You may go back with the

9  marshal.  Thank you.

10         All right.  Is there another one?  234?

11         THE CLERK:  Yes, Your Honor.

12         THE COURT:  234.

13         The last one will not be struck for cause, I take it?

14         Everybody is agreeing.

15         (Pause.)

16         THE COURT:  All right, sir.  You may take your mask

17  off.

18         Would you state your juror number, please?

19         MALE JUROR:  234.

20         THE COURT:  All right.  You heard me say this morning

21  that the trial will take four weeks, starting today.

22  Recognizing that this is not an insubstantial burden for you,

23  but recognizing also that jury service is a valid civic duty,

24  does this timing pose a particular problem for you as opposed

25  to other persons who might be called to serve?

1          MALE JUROR:  Yes.  I'm a self-employed contractor,

2    and I'm -- if I'm not there, the jobs are just completely shut

3    down.

4          THE COURT:  All right.  And how many employees do you

5    have?

6          MALE JUROR:  I don't have any employees.  I do most

7    of the work myself.  I have a lot of subcontractors.  So if I'm

8    not there, the subs can't work or anything.

9          THE COURT:  What type of --

10         MALE JUROR:  I'm a Class A contractor.  I build spec

11   homes and I remodel them.

12         THE COURT:  All right.  Would you suffer any losses?

13   And I know -- in addition to income?

14         MALE JUROR:  Yes.

15         THE COURT:  Do you have projects underway?

16         MALE JUROR:  Yes.  I'm in the middle of two projects

17   right now.  I was supposed to start at one today.

18         THE COURT:  What would happen if you had to serve for

19   a month on the jury?

20         MALE JUROR:  I mean, those jobs wouldn't get

21   completed.  And I've already got one job that, you know,

22   they're waiting to get their basement finished.  And I have a

23   customer who has a liver transplant, and he's supposed to come

24   back here from Cincinnati, and I've got to finish a bathroom

25   that's for handicapped people.

```
1              THE COURT:  Okay.  Thank you.  All right.  I'm going
2   to ask you to step outside with the marshal for a minute.
3              (Juror out.)
4              THE COURT:  All right.  Under the jury plan, I think
5   he's a person with a substantial hardship that could be -- has
6   a right to be excused.  So I'm going to excuse him.
7              MR. SPENCER:  Agreed.
8              MS. DUNN:  No objection.
9              THE COURT:  Which number is next?
10             THE CLERK:  235.
11             THE COURT:  All right, sir.  You may take off your
12  mask.  You may take off your mask, if you like.
13             MALE JUROR:  Thank you.
14             THE COURT:  You heard me say this morning that --
15  first of all, what is your jury number?
16             MALE JUROR:  235.
17             THE COURT:  All right.  You heard me say this morning
18  the case will -- is set for four weeks, starting -- including
19  this week.  Recognizing the substantial burden this case would
20  place on you, but recognizing that jury service is a vital
21  civic duty, does this timing pose a particular problem for you?
22             MALE JUROR:  Not at the present time, no.  My
23  employment situation has changed, but it's a part-time
24  position.  And they understand that I may be called for
25  four weeks.
```

1           THE COURT:  Okay.  There may be times at this trial

2     when you will be sitting for an hour or an hour and a half,

3     possibly without a break.  Do you have any physical or medical

4     limitations that would prevent you from sitting that long?

5           MALE JUROR:  No.

6           THE COURT:  Okay.  Do you know of any reason you

7     could not serve as a juror in this case and render a verdict

8     solely according to the law and to the evidence and a verdict

9     that's fair to both the plaintiff and the defendants?

10          MALE JUROR:  I may have trouble being impartial in

11    this trial, Your Honor.  I find it impossible to believe that

12    this many people and that many organizations could come

13    together in one geographical location at a very specific time

14    without conspiring to do so ahead of time.

15          THE COURT:  Well, that is a large issue in this case,

16    is the claim that these defendants all conspired to come to

17    Charlottesville for the purpose -- well, to protest, but also

18    that they would indulge in racially motivated violence.  And

19    you have an opinion about that.

20          Could you set aside that notion and listen to the

21    evidence and try the case solely according to what you hear in

22    the courtroom, and if the jury -- if the plaintiff should prove

23    by a preponderance of the evidence that they did so conspire,

24    could you set aside those preconceived notions and find in

25    favor of the plaintiff on that issue?

1           MALE JUROR:  I could find in favor of the plaintiff

2    on that issue.

3           THE COURT:  All right.  Are you sensible of any bias

4    against one side or the other?

5           MALE JUROR:  I am biased against the defense.  I

6    believe they're evil, I believe their organizations are evil,

7    and I would find it difficult to set that aside.

8           THE COURT:  All right.  Any -- I'm going to let you

9    step outside a minute with the marshal.

10          (Juror out.)

11          THE COURT:  I don't see how that juror could be

12   redeemed, so I'm going to excuse him.

13          MR. CANTWELL:  I think that my co-defendants are

14   going to think I'm crazy, but I'd like to ask him a couple of

15   questions, if that's all right, because I think he cites people

16   he admires are Ben Carson and Walter Williams.  I think those

17   are exceedingly fair men.  If we could give him a chance to

18   answer a couple of questions, I'd appreciate it.

19          MR. SPENCER:  Your Honor, it wouldn't be the first

20   time that someone has called me evil before, and I -- I feel

21   like he's a bit confused about the nature of the trial, and

22   that's okay.  We're here to talk about the facts.  So I think

23   it's okay.

24          THE COURT:  You think it's okay for him to serve?

25          MR. SPENCER:  I think he has a preconceived notion,

70

1    but we've already established that to live in Charlottesville,

2    it's almost impossible not to have some kind of opinion.  The

3    question is:  Can you put that aside and really look at the

4    facts and the law?  And I think he can.  So despite the fact

5    that he's used very strong language, I feel like he could be of

6    benefit.

7              THE COURT:  Well --

8              MR. CANTWELL:  I'm just interested to find out my

9    questions.

10             MR. KOLENICH:  The juror, you excused him just a

11   moment ago.

12             THE COURT:  I'm sorry, Mr. Kolenich.  I can't hear

13   you.

14             MR. KOLENICH:  I'm sorry, Your Honor.  It seemed to

15   us you had excused the juror.

16             At some point -- and I think this is an excellent

17   time to raise this issue -- we're going to have to take

18   cognizance of the fact that it's difficult for the counsel to

19   work next to *pro se* litigants and it is prejudicial to

20   represented parties to have *pro se* litigants making a mistake

21   like this.

22             That juror is nowhere near competent.  I have no idea

23   what these two think they're doing.  He should be excused.

24             THE COURT:  Well, just -- I don't see any reason to

25   go beyond -- things he's said is just -- I mean, you may not be

1    offended, but other defendants he's called evil.  And I just

2    don't see that -- and he basically said he can't set it aside.

3              MR. SPENCER:  That's fair, Your Honor.

4              THE COURT:  Anybody else?

5              Okay.  Call him back.

6              (Juror in.)

7              THE COURT:  Sir, I'm going to excuse you.  Appreciate

8    you coming, appreciate you being here, but you are excused.

9              (Juror out.)

10             THE COURT:  This is the last one, Juror 241.

11             Ma'am, you may take off your mask.  State your number

12   as a juror.

13             FEMALE JUROR:  241.

14             THE COURT:  All right.  You heard me state the case

15   is set for four weeks, including this week.

16             FEMALE JUROR:  Yes.

17             THE COURT:  Recognizing the not insubstantial burden

18   this case would place on you, but recognizing also that jury

19   service is a vital civic duty, does this timing pose a

20   particular problem for you?

21             FEMALE JUROR:  Yes.

22             THE COURT:  And could you elaborate?

23             FEMALE JUROR:  I'm self-employed, so if I don't work,

24   I'll lose my clients that I work with.

25             THE COURT:  And your business is?

72

1                FEMALE JUROR:  I'm an engineer.

2                THE COURT:  And who -- I mean, what type of

3     engineering are you involved in?

4                FEMALE JUROR:  Structural engineering.

5                THE COURT:  Are you involved in projects, ongoing

6     projects?

7                FEMALE JUROR:  Yes.  I have projects under

8     construction, and so contractors are calling me with questions.

9                THE COURT:  Is there anyone who could fill in for

10    you?

11               FEMALE JUROR:  I'm the only one.

12               THE COURT:  When you say you have ongoing projects,

13    what -- these are houses?  Buildings?

14               FEMALE JUROR:  The category is high-end residential

15    construction.

16               THE COURT:  Okay.  All right.  I'm going to let you

17    step into the hall.  Don't go back in the jury room.  Just step

18    into the hall.

19               (Juror out.)

20               THE COURT:  All right.  It seems to me she has a

21    hardship similar to those that we've excused people for

22    previously.  And I'm inclined to excuse her.

23               MS. DUNN:  Understood, Your Honor.

24               THE COURT:  Okay.  Just let her step back in.

25               (Juror in.)

73

1          THE COURT:  Ma'am, you may stay where you are.  I'm

2    going to excuse you.  Thank you for coming.  Sorry for the

3    inconvenience, but you are excused.

4          Okay.  Let's go through the jurors that have not been

5    excused -- have not been stricken for cause or have been

6    excused.  Is there anybody we need to decide on?

7          THE CLERK:  I am showing just two remaining, 233 and

8    220.  Those are the two left for peremptory.

9          (Pause.)

10          THE COURT:  All right.  Let's read the numbers of

11    those jurors who are left.

12          THE CLERK:  Juror Number 233 and Juror Number 220.

13          THE COURT:  All right.  Call the whole panel back.

14          Do we know how many showed up for the afternoon

15    panel?

16          THE CLERK:  I asked.  Let me see, Judge.

17          THE COURT:  I've told the other jurors to come back

18    at 2 o'clock for the next panel.

19    **(Jury in, 12:25 p.m.)**

20          THE COURT:  Members of the jury, we're going to

21    complete the process now, and the clerk is going to -- you will

22    just be here while this is going on, and shortly we'll be able

23    to tell you whether to come back or not, but the clerk is going

24    to explain the numbers situation here to you.

25          THE CLERK:  Up until this point you've been referred

74

```
 1  to by your numbers.  During this phase of the selection

 2  process, we're going to be using a randomized list, so they'll

 3  be numbers that you're not familiar with.

 4             Plaintiffs, Juror Number 4, pass or challenge?

 5             MS. DUNN:  Pass.

 6             THE CLERK:  Defendants, Juror Number 4, pass or

 7  challenge?

 8             MR. KOLENICH:  Pass.

 9             THE CLERK:  Defendants, Juror Number 8, pass or

10  challenge?

11             MR. KOLENICH:  I'm sorry.  Challenge.

12             THE CLERK:  If I call your name, please stand and

13  report to the clerk's office for further instructions:  Juror

14  Number 233.

15             THE COURT:  All right.  Members of -- those of you

16  whose names have not been called, I want to take this

17  opportunity to express the Court's appreciation to you for your

18  presence here today.  I know it was an inconvenience to you to

19  be present and all the other -- and what went on yesterday

20  also.  But despite those things, you have performed a valuable

21  service to your community.  We could not have gotten this far

22  with the process of selecting a jury if you had not been here

23  and cooperated, and you've done a great service for your

24  community doing so.

25             Again, I regret the inconvenience to you, but you're
```

1   excused today and will not have to come back.  So you may

2   leave.

3           Thank you.

4   **(Jury out, 12:29 p.m.)**

5           THE COURT:  All right.  I have told the next panel to

6   come back at 2 o'clock.  So we'll recess until 2 p.m.

7           (Recess.)

8           THE COURT:  Have any matters come up before the jury

9   is called?

10          Bring the jury in.

11  **(Jury in, 2:07 p.m.)**

12          THE COURT:  All right.  You may be seated.

13          Call the case, please.

14          THE CLERK:  Yes, Your Honor.  Ladies and gentlemen,

15  this is Civil Action Number 3:17-cv-00072, Elizabeth Sines and

16  others versus Jason Kessler and others.

17          As I call your number, please stand and remain

18  standing until the next number is called:  243, 245 -- you may

19  sit back down -- 250, 252, 254, 255, 257, 258, 261, 262, 265,

20  266, 267, 268, 269, 272, and 274.  And you may remain standing.

21          Ladies and gentlemen, if you would all rise.

22          Please raise your right hands and be sworn.

23          Do you and each of you solemnly swear that you will

24  make true answers to such questions as may be propounded to you

25  testing your qualifications to serve as a juror in this Court?

1           You do.

2           You may be seated.

3           Ladies and gentlemen, in order to serve as a juror in

4   this Court, you must be a citizen of the United States who has

5   attained the age of 18 years and has resided in the Western

6   District of Virginia for one year.  You must not be under

7   charge or have been convicted in any court, state or federal,

8   of a crime punishable by imprisonment for a period of more than

9   one year, unless your civil rights have been restored.  You

10  must be able to read, write, and understand the English

11  language, and must be able, both physically and mentally, to

12  render efficient jury service.

13          Do you and each of you qualify on these grounds?

14          You do.

15          I will now ask several questions concerning the case

16  which is to be tried today for the purpose of ascertaining

17  whether you can hear the facts fairly and impartially and

18  render a just verdict.

19          The plaintiffs in this case are Elizabeth Sines, Seth

20  Wispelwey, Marissa Blair, April Muñiz, Marcus Martin, John Doe,

21  Natalie Romero, Chelsea Alvarado, and Thomas Baker.

22          Plaintiffs are represented by counsel seated at the

23  table to my left.

24          Counsel will now identify themselves by name and firm

25  for the record.

77

1          MS. DUNN:  Good afternoon.  Karen Dunn from the law

2     firm of Paul Weiss.

3          MS. KAPLAN:  Good afternoon.  Roberta Kaplan from

4     Kaplan Hecker & Fink.

5          MR. STABILE:  Renato Stabile, New York, New York.

6          MR. ISAACSON:  Bill Isaacson from the law firm of

7     Paul Weiss.

8          MR. MILLS:  David Mills from the law firm of Cooley,

9     Washington, D.C.

10          MR. LEVINE:  Alan Levine from the law firm of Cooley.

11          MR. BLOCH:  Michael Bloch from the law firm of Kaplan

12     Hecker & Fink, New York, New York.

13          MS. HONIG:  Faye Honig, New York.

14          THE COURT:  The defendants in this case are Jason

15     Kessler, Richard Spencer, Christopher Cantwell, James Alex

16     Fields, Jr., Vanguard America, Andrew Anglin, Moonbase

17     Holdings, LLC, Robert "Azzmador" Ray, Nathan Damigo, Elliott

18     Kline, Identity Evropa, Matthew Heimbach, Matthew Parrott,

19     Traditionalist Worker Party, Michael Hill, Michael Tubbs,

20     League of the South, Jeff Schoep, National Socialist Movement,

21     Nationalist Front, Augustus Sol Invictus, Fraternal Order of

22     the Alt-Knights, Loyal White Knights of the Ku Klux Klan, and

23     East Coast Knights of the Ku Klux Klan.

24          The defendants are appearing both with counsel or on

25     their own behalf.  They're seated at the table to my right or

1   appearing by Zoom.

2           Counsel and defendants will now identify themselves

3   for the record.

4           MR. KOLENICH:  Jim Kolenich, Kolenich Law Offices,

5   Cincinnati, Ohio.  I represent Jason Kessler, Nathan Damigo,

6   and Identity Evropa.

7           In addition, I'm filling in for an attorney who

8   couldn't be here today, Mr. ReBrook, whose clients are National

9   Socialist Movement, Nationalist Front, and Jeffrey Schoep.

10          MR. JONES:  I'm Bryan Jones, Charlottesville,

11  Virginia.  I represent Michael Hill, Michael Tubbs, and the

12  League of the South.

13          MR. SMITH:  Joshua Smith, Smith LLC, Pittsburgh,

14  Pennsylvania.  I represent David Matthew Parrott, Matthew

15  Heimbach, and Traditionalist Worker Party.

16          MR. SPENCER:  My name is Richard Spencer.  I'm from

17  Whitefish, Montana, and I'm acting on my own behalf.

18          MR. CANTWELL:  My name is Christopher Cantwell.  I'm

19  representing myself.

20          MR. CAMPBELL:  David Campbell for James Fields, from

21  Richmond, Virginia.

22          THE CLERK:  The purpose of my mentioning this is to

23  ask each of you whether you're related by blood or marriage to

24  the plaintiffs, defendants, or any of the attorneys in this

25  action.

1          You are not.

2          Your Honor, do you have additional questions?

3          THE COURT:  I think we've established that there are

4    no other counsel new to the case.

5          MS. DUNN:  Yes, Your Honor.

6          THE COURT:  All right.  Good afternoon, ladies and

7    gentlemen.  I'm going to remove my mask when I'm talking, and

8    any of you or anyone who is speaking may remove their mask,

9    because we have difficulty understanding each other in this

10   courtroom if we do not.

11         Before we begin the process of jury selection, I

12   first wish to read a quick statement giving you a brief

13   overview of some of the steps the Court has taken and is taking

14   to minimize the risk of the spread of COVID-19.

15         First, the Standing Orders of this Court require

16   everyone to wear a mask that covers their nose and mouth while

17   in public areas of the courthouse unless a court official

18   specifically directs you otherwise.  That applies to everyone,

19   whether vaccinated or unvaccinated.

20         Second, access to the courthouse has been limited to

21   persons involved in this case.  That includes court staff,

22   litigants, attorneys, witnesses, and limited media.

23         Third, the Court has ordered all persons in the

24   courtroom to practice social distancing, except counsel,

25   litigants, and court staff.

1          Fourth, pursuant to the Court's Standing Orders, all

2     court employees, including judges, chamber staff, and staff of

3     the clerk's office, must either be vaccinated or conduct a

4     COVID-19 test at least weekly.

5          Fifth, this Court has specifically ordered all

6     litigants, lawyers, witnesses, and staff in this case to attest

7     before coming into the courthouse that they're either

8     vaccinated or have tested negatively within three days of their

9     appearance.  They will have a continuing duty to do so

10    throughout the trial if they are appearing based on negative

11    COVID tests.  If there are any witnesses, parties, or attorneys

12    who can't meet those rules, they will testify by Zoom.

13         Sixth, the Court has ordered extra cleaning of touch

14    points, frequently touched surfaces, and bathrooms during this

15    trial.

16         And lastly, specifically for jurors, the Court will

17    require all jurors, of which the Court expects there will be 12

18    jurors, to always be masked, and also to always practice social

19    distancing.  And you will be socially distanced in the gallery.

20         So all in all, I think we've made the situation as

21    safe as it can be from COVID, and probably you are safer here

22    than you would be in any store, shopping, or probably going to

23    church or any other organization or meeting, or being on,

24    probably -- well, I won't say on the street, but we've done

25    everything we can to minimize the chance of anyone being

1  affected by COVID.

2         Before we begin the process of jury selection, I wish

3  to give you a general overview of this case so that you know

4  what it is about and can better answer my questions.

5         This is a civil lawsuit brought by multiple

6  plaintiffs against multiple defendants, including individuals

7  and organizations, based on events that occurred in

8  Charlottesville, Virginia in August 2017.

9         The plaintiffs in this case claim that the defendants

10 and others conspired to commit racially motivated violence at

11 an event the defendants call Unite the Right, which was held in

12 Charlottesville on August 11 and 12, 2017.

13        Plaintiffs allege that the defendants helped to plan,

14 promote, or carry out racially motivated violent acts during

15 that event, and in doing so caused plaintiffs physical,

16 emotional, and monetary harm.  Such acts included a torch march

17 on August 11th and various acts of violence that occurred on

18 August 12th, including a car attack that drove through a large

19 crowd of people, injuring seven of the nine plaintiffs in this

20 case.

21        Defendants deny that they conspired with anyone to

22 commit violence, or that they are responsible for any injury or

23 damages suffered by plaintiffs.

24        If you are selected to serve as a juror in this case,

25 you will be asked to decide whether the plaintiffs proved that

1   the defendants engaged in a conspiracy to commit racially

2   motivated violence and harmed plaintiffs as a result.

3          Plaintiffs have also asserted under federal and state

4   law claims -- strike that.

5          Plaintiffs have also asserted other federal and state

6   law claims against the defendants.  Later, I will explain the

7   elements of each of plaintiffs' claims in greater detail to

8   those who serve on the jury.

9          It is estimated that this case will last four weeks,

10  including this week.  Trial will take place on Monday through

11  Friday, with the final scheduled trial date beginning Friday,

12  November 19.  I will start court at 9 o'clock.  I also will

13  stop court at 5 p.m.

14         In a few minutes I will be asking you questions.

15  There are several reasons for these questions.

16         First, it may be that, although otherwise qualified,

17  some of you may not be eligible to sit in this particular case

18  for a variety of reasons.  We need to ask questions to

19  determine your eligibility.

20         Also, under the rules that govern jury selection in

21  this Court, the parties play a role in choosing the jury that

22  is to try their case.  That is why we have more of you here

23  than we really need to sit on the jury.  Under the rules, the

24  parties are entitled to exercise strikes to eliminate persons

25  from the jury panel, and then the remaining jurors will hear

1    the case.   The parties need to know more about you in order to

2    make intelligent decisions about who to strike.

3            The Court will be conducting jury selection in the

4    following manner:   The Court will ask some general questions.

5    The Court will then call each prospective juror into the

6    courtroom for any specific follow-up questions the Court may

7    have.

8            Although this process -- throughout this process, the

9    Court will only refer to you by juror number, not your name.

10   That is a step we sometimes take for the sake of our jurors --

11   prospective jurors and their privacy.

12           We need to ask questions to determine your

13   eligibility.   So at any time, if you are asked to identify

14   yourself -- did the microphone go off?

15           THE CLERK:   It's on.

16           THE COURT:   So if you -- if at any time you're asked

17   to identify yourself, please just refer to yourself by juror

18   number.

19           For these preliminary questions, if the Court asks

20   you a question, and you will have a response -- you have a

21   response to the question asked, please raise your hand and you

22   will be called on.   So if the Court -- if the Court asks, "Are

23   you here today to be considered to serve as a juror in this

24   case," you would all raise your hand.

25           If you feel your answer to any question is

1    particularly personal in nature, you may ask to speak to me and

2    the attorneys privately; however, so you are aware, for the

3    most part I do plan to mostly conduct any specific questioning

4    with each prospective juror individually without prospective

5    jurors in the courtroom.

6              And we will now be -- let's see.

7              I'm going to ask the plaintiffs' counsel to read the

8    names of their witnesses.

9         MS. DUNN:  Thank you, Your Honor.  Chelsea Alvarado,

10   Jessica Alvarado, Thomas Baker, Marissa Blair, Julie Convisser,

11   Diane D'Costa, Stephen Fenton, Allen Groves, Deborah Lipstadt,

12   Marcus Martin, April Muñiz, Sharon Reavis, Natalie Romero,

13   Peter Simi, Elizabeth Sines, Devin Willis, Seth Wispelwey,

14   Nadia Webb, David Weiss, Erica Alduino, Robert "Ike" Baker,

15   Patrick Casey, Michael Chesny, Burt Colucci, Benjamin Daley,

16   Shane Duffy, Samantha Froelich, Bradley Griffin, Dillon Hopper,

17   Vasilios Pistolis, and Thomas Rousseau.

18             THE COURT:  I'm going to ask you now:  Did any of you

19   hear a name -- the name read of a person whom you personally

20   know or know anything about?

21             I assume no -- no hands are raised, so no one of you

22   know any of those witnesses.

23             I'll ask any of the defendants who have --

24             MR. KOLENICH:  Wes Bellamy and Police Detective Steve

25   young.

85

 1            MR. JONES:  Richard Hamblin and Charlottesville

 2   Police Sergeant William Newberry.

 3            THE COURT:  Do any of you know any of those persons

 4   whose names were just mentioned?

 5            All right.  Anyone else have any witnesses whose

 6   names of which to read?

 7            All right.  Thank you.

 8            All right.  At this point I'm going to ask you to

 9   follow the marshal back to the jury room and I will call each

10   of you out separately to ask you follow-up questions.

11            And I will caution you now, when you're in the room,

12   do not discuss the case.  If a juror comes back, do not discuss

13   questions that might have been asked.  Simply just try not to

14   discuss the case with anyone until you're told you may do so by

15   the Court.

16            You may follow the marshal.

17   **(Jury out, 2:26 p.m.)**

18            THE COURT:  All right.  Who's first?  Who's the first

19   juror?

20            THE CLERK:  243.

21            THE COURT:  Sir, you may remove your mask.

22            Would you state your number?

23            MALE JUROR:  243.

24            THE COURT:  All right, sir.  You heard me say a

25   little while ago that this trial is set to last four weeks,

```
 1  starting today.  Recognizing that -- the not unsubstantial
 2  burden this case would place on you, but recognizing also that
 3  jury service is a vital civic duty, does this timing pose a
 4  particular problem for you?
 5          MALE JUROR:  I can't hear.  I'm kind of weak on this
 6  ear.
 7          THE COURT:  All right.  I'm saying, would serving on
 8  the jury for four weeks be --
 9          MALE JUROR:  It's making noise in my ear.
10          THE COURT:  Okay.
11          MALE JUROR:  It's making noise in my ear.
12          (Pause.)
13          THE COURT:  Would serving on the jury pose any
14  particular problem for you?
15          MALE JUROR:  No.
16          THE COURT:  There may be times during the trial where
17  you have to sit for an hour or hour and a half without a break.
18  Would that -- do you have any physical or medical limitation
19  that would prevent you from doing so?
20          MALE JUROR:  No, I do not.
21          THE COURT:  All right.  Are you aware of any bias or
22  prejudice you would have against either party -- either of the
23  groups, the parties in this case?
24          MALE JUROR:  None whatsoever.
25          THE COURT:  All right.  Have you formed any opinion
```

```
1    already about the case?

2              MALE JUROR:  No, I haven't.

3              THE COURT:  All right.  Do you know of any reason you

4    could not serve as a juror in the case and render a verdict

5    fair to both the plaintiffs and the defendants?

6              MALE JUROR:  No, I do not.

7              THE COURT:  Okay.  If you all have any questions,

8    please pass them up.

9              If you found the plaintiffs had not met their burden

10   with regard to one or more defendants, could you separate that

11   view from other defendants for whom the burden of proof had not

12   been met?

13             MALE JUROR:  Yes, I can.

14             (Pause.)

15             THE COURT:  Do you think that all organizations

16   should be able to -- allowed to hold public demonstrations,

17   regardless of their opinion?

18             MALE JUROR:  Yes, I do.

19             THE COURT:  All right.  Do you believe that white

20   nationalists also have that right?

21             MALE JUROR:  Repeat that.

22             THE COURT:  Do you believe that white nationalists

23   also have that right?

24             MALE JUROR:  Yes, I do.

25             THE COURT:  All right.  You said you served as a
```

88

1   juror on a civil case and that you felt that justice was

2   served.  What do you exactly mean by that?

3          MALE JUROR:  That I served on a civil case and what?

4   What did you say?

5          THE COURT:  On your questionnaire you said you served

6   as a juror on a civil case.

7          MALE JUROR:  Yes, I did.

8          THE COURT:  And you said you thought justice was

9   served.  What did you exactly mean by that?

10          MALE JUROR:  Yeah, justice was served because the

11   person was -- that committed the crime, he was guilty of it.

12          THE COURT:  All right.  One of your children attended

13   the University of Virginia.  Does that affect your feelings in

14   any way towards this case?

15          MALE JUROR:  None whatsoever.

16          THE COURT:  That's all the questions I have.

17          Any other questions?

18          Sir, I'll just ask you again:  Do you know of any

19   reason you could not sit on this case and render a verdict

20   that's fair to both the plaintiff and the defendant, a verdict

21   based solely upon the evidence you hear in the courtroom and

22   the law as I instruct you?

23          MALE JUROR:  No, I don't have no reason.

24          THE COURT:  All right, sir.  You may go back to the

25   jury room.

1          We're trying to reconnect to the public line.

2          Was there any objection for cause to that juror?

3          MR. SMITH:  We don't have any challenges for cause,

4    Your Honor.

5          (Pause.)

6          THE CLERK:  245.

7          THE COURT:  All right, sir.  You may take off the

8    mask and state your number.

9          MALE JUROR:  Number 245.

10         THE COURT:  All right.  You heard me say this morning

11   that this trial is scheduled to last four weeks, starting --

12   counting this week.  Now, recognizing the not unsubstantial

13   burden this case would place on you, but recognizing that jury

14   service is a vital civic duty, does this present any particular

15   problem for you?

16         MALE JUROR:  I just had a vacation scheduled on the

17   15th.

18         THE COURT:  Can you reschedule the vacation?

19         MALE JUROR:  I think so.

20         THE COURT:  Okay.  There may be times in this trial

21   when you will be sitting for an hour or hour and a half without

22   a break.  Do you have any physical or medical limitation that

23   would present you from sitting that long?

24         MALE JUROR:  No, sir.

25         THE COURT:  All right.  On your questionnaire -- it

1    was Question 72.  The question said:  Would you be able to set

2    aside preconceived opinions, if any, you may have about the

3    Unite the Right rally, this case, and the parties therein, and

4    reach a decision based solely upon the evidence you hear at

5    trial in accordance with the law as instructed by the Court.

6    And you answered "no" to that.

7              Could you explain?

8              MALE JUROR:  I think I circled the wrong answer there

9    by mistake.

10             THE COURT:  Then do you believe -- are you saying

11   that you believe you could set aside any preconceived notion?

12             MALE JUROR:  Yes, sir.

13             THE COURT:  And you would follow the instructions of

14   the Court?

15             MALE JUROR:  Yes, sir.

16             THE COURT:  Have you formed any opinion already about

17   the issues that are involved in this trial?

18             MALE JUROR:  No, sir.

19             THE COURT:  Are you sensible of any bias or prejudice

20   against either side in the case?

21             MALE JUROR:  No, sir.

22             THE COURT:  Are there any -- do you know of any

23   reason you could not serve as a juror in the case and render a

24   verdict that's fair to both the plaintiffs and the defendants?

25             MALE JUROR:  No, sir.

1          THE COURT:  All right.  Thank you.

2          All right.  Any questions?

3          MR. CANTWELL:  Could we just have a minute, Judge?

4    We didn't have his survey over here.

5          MR. SPENCER:  No questions.

6          THE COURT:  Any questions?

7          You stated in your questionnaire, Number 33, that you

8    have an extremely unfavorable view of the Black Lives Matter

9    movement.  Can you elaborate and say why?

10          MALE JUROR:  I want to word this correctly.  I

11    believe in the message, but I'm not sure about the

12    organization.  I've seen some things that I don't believe were

13    correct.

14          THE COURT:  Okay.  Anything in particular?

15          MALE JUROR:  Well, just like the building that got

16    destroyed in Lynchburg, I believe -- I believe -- I may be

17    mistaken, but I believe it was by the BLM people when they were

18    rioting in Lynchburg.

19          THE COURT:  When was that?

20          MALE JUROR:  I'm not sure of the date.

21          THE COURT:  Okay.  You stated that you were

22    extremely -- you had an extremely unfavorable view of Antifa

23    and describe them as domestic terrorists.  Can you say why you

24    have that view of Antifa?

25          MALE JUROR:  Just what I've seen on television and

1    the internet of rioting and destroying personal property.  I'm

2    all for people's right to protest, but not for people's right

3    to destroy other people's property.

4            THE COURT:  And on Question 37 you say that

5    antisemitism is not much of a problem.  Can you say more about

6    that, why you don't think it's much of a problem?

7            MALE JUROR:  I just don't believe that today we have

8    that problem.  Maybe -- maybe we do in parts of the world.

9    Where I live, it doesn't seem to be a problem.  I'm not aware

10   of it.

11           THE COURT:  You said that you heard that the victims

12   were suing for the injuries.  Can you say what you might have

13   heard?

14           MALE JUROR:  I just thought I had heard that -- my

15   wife had told me that she had saw on TV where there was going

16   to be a lawsuit for injuries.  That's really all I've heard.

17           THE COURT:  All right.  Do you have any feeling

18   whether, if they were injured and can prove who injured them,

19   would you have any problem with them recovering what they're

20   legally entitled to?

21           MALE JUROR:  No, I would not.

22           THE COURT:  And I think you also said a family member

23   had been in a car accident.  Of course, this involves more than

24   just an accident, but would that in any way affect you?

25           MALE JUROR:  No.

93

```
 1              THE COURT:  And you say your brother is in law
 2  enforcement?
 3              MALE JUROR:  He has been previously.
 4              THE COURT:  Sir?
 5              MALE JUROR:  He has been.  He's not currently.
 6              THE COURT:  You may hear some things critical of the
 7  police.  Would that -- any experience your brother had might
 8  affect you in deciding issues in this case?
 9              MALE JUROR:  Perhaps.
10              THE COURT:  All right.  Well, do you feel that you
11  can weigh the evidence and make a decision based on the
12  evidence in the case and what the law is?  And if the Court
13  tells you that certain things cannot be considered, are you
14  willing to follow that law?
15              MALE JUROR:  Yes, sir.
16              THE COURT:  All right.  Any other questions?
17              (Pause.)
18              THE COURT:  All right.  Are there any other
19  questions?
20              In your questionnaire, I think you said that you were
21  slightly concerned about racism against whites.  Can you say
22  what it is?  Can you explain that any further?
23              MALE JUROR:  Well, I just think the world right now
24  is -- it's a lot of anger on both sides, and I -- or at least
25  it appears that way in the news.  And it's concerning on both
```

94

1    sides.

2          THE COURT:  All right.  Going back, when you say that

3    your brother's role as a police captain -- as a police officer,

4    you said perhaps it might affect you.  I asked you a few

5    questions after that, but can you explain what you might have

6    meant by when you said "perhaps"?

7          MALE JUROR:  Well, just hearing him talk, and he

8    pointed out how it seemed like the police were not doing their

9    job to keep the violence at bay.

10          THE COURT:  All right.  Well, the police are not on

11    trial in this case.  It's all between -- the plaintiffs have to

12    prove that the defendants traveled to Charlottesville and had

13    conspired, and conspired to commit racially animused violence

14    while here.  So I think you said that you thought, under the

15    instructions of the Court, that the Court would tell you that

16    you could not consider your brother's --

17          MALE JUROR:  Yes, sir.

18          THE COURT:  -- it would not be proper --

19          MALE JUROR:  Right.

20          THE COURT:  -- for you to consider your brother's

21    experience.

22          MALE JUROR:  Yes, sir.  And I believe I can leave

23    that out of my decision-making process.

24          THE COURT:  All right.  Okay.

25          If violence occurred at the rally and Antifa was

1  present, would you be more likely to think that Antifa caused,

2  I would say, some of the violence?

3          MALE JUROR:  Could you repeat that?

4          THE COURT:  All right.  If violence occurred at the

5  rally and Antifa was present, would you be more likely to think

6  that Antifa caused the violence or was involved in the

7  violence?

8          MALE JUROR:  I would be suspicious, but I'd want to

9  see the evidence.

10          THE COURT:  All right.

11          You said that there was anger on both sides.  Can you

12  tell us, when you say "both sides," who are you referring to?

13          MALE JUROR:  The protesters and the anti-protesters,

14  I guess.

15          THE COURT:  And is there anything specific your

16  brother might have told you about the police not doing their

17  job or the accusations?

18          MALE JUROR:  I don't recall right now, no, sir.

19          THE COURT:  Okay.  If the plaintiffs meet their

20  burden of proof with regard to one or more of the defendants,

21  could you separate that view from other defendants for whom the

22  burden was not met?

23          MALE JUROR:  Yes, sir.

24          THE COURT:  Thank you.

25          All right.  Thank you, sir.  We'll ask you to go back

1   to the jury room and wait.

2         MALE JUROR:  Thank you.

3         THE COURT:  All right.  Any question of cause for

4   this juror?

5         MS. DUNN:  Your Honor, we just want to raise two

6   concerns.

7         THE COURT:  Are you objecting for cause?

8         MS. DUNN:  I would like to raise a concern and speak

9   with the Court first, because it was about one of the questions

10  that we handed up.

11        THE COURT:  What was that?

12        MS. DUNN:  So the question was whether -- if there

13  were arguments in this case attributing the violence to the

14  police activity, whether he would give more weight to his

15  brother's opinion.

16        I believe that the juror was told --

17        THE COURT:  Well, he said he didn't remember anything

18  his brother had told him.

19        MS. DUNN:  Right, except he also said earlier that

20  his brother told him that the police were not doing their job.

21        THE COURT:  No, he said I think there was -- someone

22  was critical of the police not doing their job.

23        MS. DUNN:  What he said was -- we'll check, but I

24  believe he said that his brother told him that the police --

25  we'll check the record, because I could be wrong.

1              THE COURT:  Well, if there's a question I didn't ask,

2    I can bring him back and ask the question and that will clear

3    it up.

4              MS. DUNN:  Yes, Your Honor.  So here's -- to be

5    clear, he said, "Just hearing him talk" -- his brother -- "he

6    pointed out how it seemed like the police were not doing their

7    job to keep the violence at bay."  And then the Court

8    responded, "The police are not on trial in this case," which is

9    true; the police are not a party.

10             But the police -- exactly what this man said is what

11   the defendants' argument is going to be, that the police did

12   not keep the violence at bay.  And this is something his

13   brother has already told him.  So I think we should probe that

14   further, because it's firsthand information he got from his

15   brother, who is a police officer, that goes directly to a key

16   issue in this case.

17             THE COURT:  You're saying that he's told you that the

18   brother told him that the police were not doing their job?

19             MS. DUNN:  Correct.  The Court asked him:  "When you

20   say that your brother's role as a police captain -- as a police

21   officer, you said perhaps it might affect you.  I asked you a

22   few questions after that, but can you explain what you might

23   have meant when you said 'perhaps'?"

24             And he said, "Well, just hearing him talk, and he

25   pointed out how it seemed like the police were not doing their

98

 1  job to keep the violence at bay."

 2          So we do want to flag that issue, and we think he

 3  should be asked additionally because he has received firsthand

 4  information from a relative about the police potentially being

 5  responsible for the violence.

 6          THE COURT:  Well, I asked him, "Can you tell us what

 7  your brother told you about the police not doing their job?"

 8  And he said he couldn't remember.

 9          MS. DUNN:  I realize he said that the second time.

10  The first time, what he said was that his brother told him the

11  police didn't do their job in keeping the violence at bay.

12          THE COURT:  Okay.  Call him back in.

13          MR. SMITH:  Your Honor, Josh Smith.  If we could

14  respond briefly to that.  I believe what the witness was trying

15  to say was that his brother told him that generally --

16          THE COURT:  You know, I think it's harder to

17  understand when your mouth is stuffed with the mask than when

18  it's off.

19          MR. SMITH:  I'm sorry.  So I think what the witness

20  was trying to get across is that his brother told him this sort

21  of generally, but didn't elaborate on it, or he doesn't

22  remember the details.

23          (Juror in.)

24          THE COURT:  Yes, sir.  Come back in.  I need to

25  ask -- I need to be clearer about what it is your brother told

1  you concerning the police doing their job.

2          Did he tell you that they did not do their job?

3          MALE JUROR:  Correct.

4          THE COURT:  Your brother told you that?

5          MALE JUROR:  Correct.  In his opinion.

6          THE COURT:  The fact that he told you that, will that

7  influence you or would it prevent you from trying a case

8  between these plaintiffs -- the plaintiffs and these

9  defendants?

10          MALE JUROR:  No, sir.

11          THE COURT:  All right.  If it should develop that the

12  police were not doing their job, if that's the evidence in the

13  case -- or let's say if the evidence in the case is that the

14  police were doing their job, doing it or not doing their job,

15  can you still render a verdict between these parties, these

16  plaintiffs and these defendants?

17          MALE JUROR:  Yes, sir.

18          THE COURT:  And can you be fair to both sides?

19          MALE JUROR:  Yes, sir.

20          THE COURT:  And can you set aside what your brother

21  told you and hear this case solely according to what you hear

22  in the courtroom?

23          MALE JUROR:  Yes, sir.

24          THE COURT:  All right.  You can go back again,

25  please.

```
 1              (Juror out.)

 2              THE COURT:  All right.  Any objection for cause on

 3  this --

 4              MS. DUNN:  No.  Thank you, Your Honor.

 5              THE COURT:  Sir -- I'm sorry.  Ma'am.

 6              MS. DUNN:  We're all going to make mistakes.

 7              No, Your Honor.

 8              THE COURT:  Okay.  All right.  That juror is passed.

 9              Which number?

10              THE CLERK:  250.

11              THE COURT:  Sir, you may remove your mask.

12              You heard me -- first of all, state your number.

13              MALE JUROR:  250.

14              THE COURT:  You heard me state this morning -- well,

15  a few minutes ago that this case will last four weeks,

16  including this week.  Recognizing the not insubstantial burden

17  this case would place on you, but recognizing also that jury

18  service is a vital civic duty, does this timing pose a

19  particular problem for you?

20              MALE JUROR:  No, sir.

21              THE COURT:  All right.  There may be times when you

22  will be sitting for an hour or hour and a half without a break.

23  Do you have any physical or medical limitation that would

24  prevent you from so sitting?

25              MALE JUROR:  No, sir.
```

```
 1              THE COURT:  All right.  In your questionnaire you

 2    stated on Question 72 that you -- well, the question was:

 3    Could you set aside your preconceived opinions you have, if

 4    any, about the Unite the Right rally, this case, and the

 5    parties therein, and reach a decision based solely upon the

 6    evidence here at trial in accordance with the law as instructed

 7    by the Court?  And your answer was "no."

 8              And you went on to say:  "I do find it hard to push

 9    aside preconceived opinions because I personally find these

10    individuals guilty and heinous for their actions."

11              As you sit here today, do you believe that you

12    could -- if called upon to serve on the jury, you could render

13    a verdict that's fair to both the plaintiffs and the defendants

14    based solely on what you hear in the courtroom and the law as

15    the Court reads it to you?

16              MALE JUROR:  I think I do.

17              THE COURT:  You do?

18              MALE JUROR:  Yes, sir.

19              THE COURT:  That obviously is different than your

20    answer.

21              MALE JUROR:  Right.

22              THE COURT:  Can you explain that?

23              MALE JUROR:  Right.  I guess at first when thinking

24    about the action, it was tough for me to kind of push aside

25    those notions, but then being here today and thinking about --
```

1    just thinking strictly based upon the case and the specifics of

2    what it could be, I think I could do that and just be able to

3    do my duty with that.

4              THE COURT:  Okay.  You also indicated you were

5    concerned about exposure to COVID.  You did -- you heard what I

6    said about the matters -- things we're doing to prevent the

7    spread.

8              MALE JUROR:  Right.  Yes, sir.

9              THE COURT:  Does that alleviate any of your concerns?

10             MALE JUROR:  Yes, sir.

11             THE COURT:  All right.  Any questions?

12             I'm going to ask some questions here, and some of

13   them may seem to be duplicates, but I need to ask all of them.

14             First, do you understand that jury members are

15   required to follow the law, even if they dislike the beliefs of

16   a party to the case?

17             MALE JUROR:  Yes, sir.

18             THE COURT:  And the Court will instruct you on the

19   law in this case.  Can you follow the law, even if you dislike

20   the beliefs of a party to this case?

21             MALE JUROR:  I can.

22             THE COURT:  If the plaintiffs do not prove that

23   defendants violated the law, will you follow the law as the

24   Court instructs you, even if you do not like the beliefs of the

25   defendants?

```
 1                 MALE JUROR:  Yes, I will.

 2                 THE COURT:  Can you say now why you think the

 3     defendants are guilty?

 4                 MALE JUROR:  I guess it's based off the coverage and

 5     what I've seen and talking with people that I associate myself

 6     with, and based off of just what we have discussed on our own,

 7     is kind of why I would come to that conclusion.

 8                 THE COURT:  Do you know any of the persons who were

 9     engaged in the Unite the Right rally --

10                 MALE JUROR:  No, sir.

11                 THE COURT:  -- either one side or the other?

12                 MALE JUROR:  No, sir.

13                 THE COURT:  Can you be more specific about what

14     changed your mind about being able to disregard your bias?

15                 MALE JUROR:  I think it was more so with -- well,

16     especially because I'm a schoolteacher, and I'm a civics

17     teacher.  Nonetheless, in talking with my class about me coming

18     to jury duty, and I guess in some self-reflection, being able

19     to go by the law and the specifics of the case more so than any

20     bias or preconceived notions that I have beforehand.  So just

21     some self-reflection to change that.

22                 THE COURT:  Okay.  Anything else?

23                 Can you tell us why you think Antifa are white

24     supremacists?

25                 MALE JUROR:  Say that again, please?
```

104

```
 1              THE COURT:  Why do you think Antifa -- the question
 2    was:  Are you familiar with Antifa?  You answered "yes."
 3              If yes, how would you describe Antifa?  And your
 4    answer was "white supremacists."
 5              Can you explain why you think they're white
 6    supremacists?
 7              MALE JUROR:  I don't recall, I guess, specifically
 8    with that answer.  I guess I may have gotten confused with what
 9    was going on with the questionnaire, with that specific
10    question.
11              THE COURT:  If you found -- if you were on the jury
12    and found the plaintiffs had met their burden of proof with
13    regard to one or more defendants, could you separate that view
14    from other defendants for whom the burden has not been met?
15              MALE JUROR:  Yes.
16              THE COURT:  Are the people you associate yourself
17    with anti-fascists?
18              MALE JUROR:  No, sir.
19              THE COURT:  All right.  Are they all the questions?
20              All right, sir.  I'm going to ask you to go back to
21    the jury room.
22              MALE JUROR:  Thank you.
23              THE COURT:  All right.  Any motion for cause?
24              MR. JONES:  Your Honor, we would make a motion for
25    cause.  He wrote in his questionnaire, I think in two separate
```

1    places, that he thought the defendants were heinous.

2              I know on the stand, after some self-reflection, he

3    says that he can be fair and impartial, but I think that's too

4    big of a jump, to go all the way from "heinous" to able to be

5    fair and impartial.

6              MR. SMITH:  I must say, Your Honor, I am suspect of

7    his "they're completely heinous and guilty" to "I'm totally

8    okay with analyzing this case based on the facts and the

9    evidence that I'm presented."  Just a "whoops, okay, yeah, I'm

10   fine with this now," that seems totally implausible.

11             Also, in order for him to be even -- at least

12   remotely capable of being rehabilitated here, in a situation

13   like that, we would need to be very clear on what his views

14   are.  And he answers questions in a way that really don't allow

15   us to assess that at all.

16             For example, Question 34.  He says --

17             (Stenographer clarification.)

18             MR. SMITH:  Are you familiar with Antifa?  He says

19   "yes."

20             He says -- If yes, how would you describe Antifa?  He

21   says "white supremacists."  Aside from the fact that's a silly

22   phrase, we don't even know why he would put that there.  And

23   then it says, if yes, how would you rate your overall opinion

24   on Antifa?  He puts "extremely unfavorable," which, if -- if he

25   doesn't like the defendants who are apparently white

1    supremacists, thinks they're guilty, he thinks Antifa is white

2    supremacists, too, and he has a very unfavorable view of them.

3          I don't understand how that all -- there's just --

4    it's weird, and his about-face up here is weird, and I think

5    that the Court should excuse him.

6          MS. DUNN:  We disagree, Your Honor.  We think he was

7    asked, directly, repeatedly, all of the questions about

8    impartiality by the Court.  He answered them repeatedly, and

9    sometimes with explanation.  He also was asked specifically the

10   question about "these defendants" which the Court has asked,

11   and I think defendants sent to the Court.  And he said these

12   particular defendants are people that he could give a fair

13   shake.

14         I don't -- you know, I don't see what rises to the

15   level of cause on this record at all.

16         The only other thing I'll point out is that we've had

17   a number of witnesses confused by the questionnaire.  And that

18   alone is not a basis to discredit.

19         THE COURT:  Well --

20         MR. SMITH:  Your Honor, if I may.  If he was confused

21   by the questionnaire, then it would seem that the plaintiffs

22   would be upset with his question -- his answer to 34(b), where

23   he says he has a very unfavorable opinion of Antifa.  They're

24   obviously very happy with this --

25         THE COURT:  Please.  It is not necessary for you to

1    comment about the plaintiffs.  I've tried to say we'll try the

2    case, we'll consider each issue on its own merits, and it

3    doesn't make any difference to you, and when we're doing that,

4    what the motive of someone on the plaintiffs' side might be.

5    It just provokes some need for somebody to respond and defend

6    themselves.  And it's not --

7              MR. SMITH:  I understand what you're saying, Your

8    Honor.  Of course.

9              THE COURT:  Did you have anything?

10             MR. SMITH:  I don't think there was anything else.

11             MS. DUNN:  Your Honor, the one point to add, which I

12   think was -- actually, he did go on at some length -- was about

13   his being a civics teacher and about speaking to his class

14   about this case, and he said specifically that he believed he

15   could do his civic duty.

16             THE COURT:  Well, the relevant test for determining

17   whether a juror is biased is whether the juror has a fixed

18   opinion, that he or she could not judge impartially the -- this

19   was a criminal case -- guilt of the defendant.  That was

20   Patton v. Yount, a Supreme Court case.  And he said --

21             (Pause.)

22             The question that bothers me the most is 72, where he

23   said he couldn't set aside the opinion because he found it hard

24   to push aside preconceived opinions.

25             Some of the jurors who answered those questions were

1    confused by the question.  He was not.  I find that I'm not

2    satisfied that he is -- the Court should accept his statement

3    that he can change that easily from what he said.  He was a

4    civics teacher when he answered this question, and so I think

5    I'm going to discharge him for cause.

6              All right.  Call the next one.

7              THE CLERK:  252.

8              THE COURT:  272 will not be appearing.

9              MS. KAPLAN:  272, Your Honor?

10             THE COURT:  272 has to be -- she's ill.

11             All right.  You may take your mask off.

12             FEMALE JUROR:  Okay.

13             THE COURT:  What is your juror number?

14             FEMALE JUROR:  252.

15             THE COURT:  You heard me say this morning that this

16   trial is set to last for four weeks, starting today.

17   Recognizing the not insubstantial burden this case would place

18   on you, but recognizing also that jury service is a vital civic

19   duty, does this timing pose a particular problem for you?

20             FEMALE JUROR:  It does.

21             THE COURT:  What is your problem?

22             FEMALE JUROR:  I work at Western State Hospital, and

23   currently there is a critical staffing shortage, as we have had

24   to cut capacity down because of chronic shortage of staff.  And

25   I play a vital role in that.

1          I admit the patients that come into the hospital.

2    And if I'm out for three weeks, it's going to pose quite a

3    hindrance to us getting our work done at Western State

4    admitting patients.

5          THE COURT:  All right.  I mean, if you're generally

6    away, do they have somebody that replaces you?

7          FEMALE JUROR:  There are two of us that cover the

8    admissions office, two psychiatric nurse practitioners, and we

9    are there five days a week, 7 a.m. to 7 p.m.  If I am not able

10   to perform my duties by being here for three weeks or

11   four weeks, it would really --

12         THE COURT:  Can you get closer to the mic?

13         FEMALE JUROR:  It would really -- it would really

14   impact the care that we're able to provide to our patients

15   because, if I'm away, another provider would have to be the one

16   to cover.  That person would be taking on additional duties in

17   addition to what they have to do on a day-to-day basis.

18         THE COURT:  And what do you actually do with the

19   patients?

20         FEMALE JUROR:  I admit the patients when they come to

21   the hospital.  So once they arrive, I interview them.  I do a

22   physical assessment on them and then get them on their way

23   upstairs.

24         I also process paperwork that come in for the

25   patients when they're issued a temporary detention order.  And

1    I cooperate with outside providers at the hospitals, at the

2    emergency rooms, when our mental ill patients present to

3    whatever facilities.  I review the paperwork and get them

4    processed before the patients actually arrive at the hospital;

5    then I admit them and send them upstairs to the units.

6              I also take call.  Like, for example, tomorrow I am

7    on call covering the hospital from 7 a.m. to 7 p.m.  In

8    addition to doing my regular duties, I'm on call tomorrow, and

9    I have to take call at least maybe three to four times per

10   month.

11             THE COURT:  Is that unusual, that you have this much

12   work, or is it all because of the --

13             FEMALE JUROR:  It's standard.

14             THE COURT:  All right.  I'm going to let you, first

15   of all, step out into the hall.  Just stay -- just outside the

16   door.

17             FEMALE JUROR:  Okay.

18             THE COURT:  Just stay outside the door.  Don't go

19   back to the jury room.

20             (Juror out.)

21             THE COURT:  All right.  It seems to me that she's got

22   a critical job that, given this day and time, we need to excuse

23   her.  So I'm going to excuse her.

24             Call her back in.

25             (Juror in.)

```
 1              THE COURT:  Just stand right there.  Thank you for

 2    coming.  I'm going to excuse you because your job is so

 3    critical.

 4              FEMALE JUROR:  Thank you, Judge.

 5              THE COURT:  Anyway, thank you.  Sorry for the

 6    inconvenience.

 7              FEMALE JUROR:  Thank you, Judge.

 8              THE COURT:  Okay.

 9              THE CLERK:  254.

10              (Pause.)

11              THE COURT:  All right.  You can take your mask off.

12              Would you state your juror number?

13              FEMALE JUROR:  254.

14              THE COURT:  You heard me state that this case is set

15    for trial for four weeks, starting today, or starting this

16    week.  Recognizing the not insubstantial burden this case would

17    place on you, but recognizing also that jury service is a vital

18    civic duty, does this timing pose a particular problem for you?

19              FEMALE JUROR:  Yes, it does.  I'm a home care

20    companion and I take care of two people, and one of them, I'm

21    their only caregiver.  So being away for a month is not going

22    to go well.

23              THE COURT:  Do you work for an agency?

24              FEMALE JUROR:  I do.

25              THE COURT:  If you're not there, do they send
```

1   other -- do they send other people?

2           FEMALE JUROR:  Not for one of the families.  I'm the

3   only person they requested.  I had to interview with this

4   family before they even allowed me to come to their home.

5           THE COURT:  Are you the only caretaker that goes

6   there?

7           FEMALE JUROR:  Yes, that's correct.

8           THE COURT:  And are the persons you take care of

9   adults?

10          FEMALE JUROR:  Yeah, it's one elderly lady with brain

11  cancer.

12          THE COURT:  In your questionnaire on Question 72 you

13  were asked:  Would you be able to set aside preconceived

14  opinions, if any, you may have about the Unite the Right rally,

15  this case, and the parties therein, and reach a decision based

16  solely upon the evidence you hear at trial in accordance with

17  the law as instructed by the Court?  And you answered "no,"

18  that if the private citizens had not created the violence, the

19  rally would not have ended the way it did.

20          Is that the way you feel still today?

21          FEMALE JUROR:  Yes.  That hasn't changed.

22          THE COURT:  Okay.  I'm going to let you go outside.

23  Just stand outside the door here.

24          (Juror out.)

25          THE COURT:  All right.  I think she's disqualified

113

 1    based on her job, and I don't think we'd get anywhere if we

 2    pursued it.  She does work for an agency, but circumstances

 3    don't appear that, in the long run, we'd have a qualified

 4    jurist.  So I'm striking her for cause.

 5             Who is the next?

 6             THE CLERK:  255.

 7             THE COURT:  255?

 8             THE CLERK:  Yes, Your Honor.

 9             THE COURT:  Bring her back.  I'm just going to let

10    her go.

11             (Juror in.)

12             THE COURT:  I'm going to excuse you, and you do not

13    have to come back.  Thank you very much.  Sorry for the

14    inconvenience.

15             We'll take a break after this one.

16             All right, sir.  Come on up.  You may take your mask

17    off.

18             State your juror number.

19             MALE JUROR:  It is 255.

20             THE COURT:  You heard me say that this case will last

21    four weeks, including this week.  Of course, that will be a

22    burden on you, but recognizing also that jury service is a

23    vital civic duty, does this timing pose a particular problem

24    for you?

25             MALE JUROR:  It does for working, yes, sir.  I work

1    at a very small business in which I am the only technician, a

2    company that services and repairs emergency standby generators.

3              THE COURT:  I'm sorry.  Emergency generators?

4              MALE JUROR:  Generators, yes, sir.

5              THE COURT:  Who is your company?

6              MALE JUROR:  It's called Generator Service Company.

7              THE COURT:  And there's no one else that can do your

8    job?

9              MALE JUROR:  No, sir, there is not.

10             THE COURT:  What happens when you are away?

11             MALE JUROR:  Nothing can get done.  There is but one

12   other employee that does bookkeeping and billing and so forth,

13   but I am the only technician.

14             THE COURT:  All right.  Step outside just for a

15   moment.

16             (Juror out.)

17             THE COURT:  All right.  Under our jury plan, he seems

18   to be a person whose services are so essential to the operation

19   of a business, commercial, or agricultural enterprise that it

20   must close or cease to function if he's required to serve.  So

21   I think I have to excuse him.

22             Okay.  Call him back in.

23             (Juror in.)

24             THE COURT:  All right, sir, just stand right there.

25             You're going to be excused.  You do not have to come

```
 1   back.  Thank you.  Sorry for the inconvenience to you, but
 2   thank you for coming.
 3            MALE JUROR:  Yes, sir.  Thank you.
 4            THE COURT:  Thank you.
 5            All right.  Let's take about a -- ten minutes okay?
 6            MS. DUNN:  Yes, Your Honor.
 7            (Recess.)
 8            THE COURT:  All right.  Call the next juror.
 9            THE CLERK:  257.
10            (Pause.)
11            THE COURT:  All right.  You may take your mask off
12   and tell us your jury number.
13            If you would tell us your juror number.
14            FEMALE JUROR:  Pardon?
15            THE COURT:  The juror number.
16            FEMALE JUROR:  Well, I was Juror Number 7.  257 is
17   this one, yeah.
18            (Pause.)
19            THE COURT:  You heard me earlier state that this
20   trial is set for four weeks, beginning this week.  Recognizing
21   the not insubstantial burden this would place on you, but
22   recognizing also that jury service is a vital civic duty, does
23   this timing pose a particular problem for you?
24            FEMALE JUROR:  I don't think so.  I work in human
25   services and take care of disabled people, but they'll just
```

```
 1   have to adjust to my being off.

 2          THE COURT:  All right.  Are you a full-time employee?

 3          FEMALE JUROR:  Yes.

 4          THE COURT:  Okay.  There may be times during the

 5   trial when you will have to sit for an hour to an hour and a

 6   half without taking a break.  Do you have any physical or

 7   medical limitations that would prevent you from sitting that

 8   long?

 9          FEMALE JUROR:  No.  I mean, I broke my foot, but

10   sitting is not an issue.

11          THE COURT:  Okay.  You said in answers to your

12   question -- the questionnaire that you were acquainted with the

13   girl who was killed, and you would have a hard time being

14   objective, since this was so unnecessary.  Do you think you

15   could set aside your feelings there and decide this case

16   fairly?

17          FEMALE JUROR:  I don't know that I can.  Just --

18   yeah, I don't know how objective I could be.

19          THE COURT:  All right.  Have you formed any opinion

20   as to who was at fault in the case?

21          FEMALE JUROR:  Excuse me?

22          THE COURT:  Have you formed any opinion already as to

23   who was at fault?

24          FEMALE JUROR:  Yeah, I probably have.

25          THE COURT:  All right.  Who do you believe was at
```

 1  fault?

 2          FEMALE JUROR:  The racists and the people that

 3  started the riot.

 4          THE COURT:  In this case, do you know who the -- do

 5  you recognize who the plaintiffs are and the defendants are?

 6  Would you say you're more for the plaintiffs or more for the

 7  defendants?

 8          FEMALE JUROR:  The plaintiffs.

 9          THE COURT:  And you think you'd have a hard time --

10          FEMALE JUROR:  Yeah.

11          THE COURT:  Okay.  All right.  I'm going to allow you

12  to just step outside the door a minute.

13          (Juror out.)

14          THE COURT:  Anyone think it would help to

15  rehabilitate her?

16          Ask her to step back in.

17          (Juror in.)

18          THE COURT:  Ma'am, you don't have to come back up

19  here.

20          Thank you for coming.  We're going to excuse you at

21  this time.  You do not have to come back.  Thank you very much.

22          She's excused for cause.

23          Who's next?

24          THE CLERK:  258.

25          (Pause.)

```
 1              THE COURT:  All right, sir.  You may remove your
 2   mask, if you would.
 3              State your juror number.
 4              MALE JUROR:  My juror number is Juror 8.  Is that
 5   what you mean?  Where I sat?
 6              THE CLERK:  No, your number on your badge.
 7              MALE JUROR:  Sorry.  Excuse me.
 8              My jury number is 258.
 9              THE COURT:  All right, sir.  You heard me state this
10   case is set for trial for four weeks, starting this --
11   including this week.  Now, recognizing the not insubstantial
12   burden this case would place on you, but recognizing also that
13   jury service is a valid -- a vital civic duty, does this timing
14   pose a particular problem for you to serve for four weeks?
15              MALE JUROR:  No.  I should be able to do it, yes,
16   sir.
17              THE COURT:  All right.  You did say that you were
18   taking care of -- scheduled caregiving for a single parent, but
19   you have that taken care of?
20              MALE JUROR:  I am a single parent, and I also am a
21   caregiver at a life sharing community for adults with
22   disabilities.  It would put stress on the community, but if
23   necessary, I can make accommodations.
24              THE COURT:  Okay.  Thank you.
25              Okay.  I'm going to ask you:  There may be times when
```

1    you would be sitting for an hour to an hour and a half without

2    a break.  Do you have any physical or medical limitations that

3    would prevent you from sitting that long?

4              MALE JUROR:  No, sir.

5              THE COURT:  Okay.  You also expressed some concerns

6    about the COVID situation and the length of the trial

7    increasing that risk.  You heard what the Court is doing to

8    mitigate the chances of COVID being -- does that alleviate

9    those concerns to any extent?

10             MALE JUROR:  It alleviates it some; not completely,

11   no.

12             THE COURT:  Do you think your fear of COVID will

13   interfere with being a juror if you're selected to serve?

14             MALE JUROR:  No, sir.

15             THE COURT:  You said in answer to Question

16   Number 43 -- it asks:  Is there anything about the nature of

17   the allegations or the parties involved that would make it

18   difficult for you to be fair and impartial in the case?  And

19   you answered "yes," that -- "lack of empathy for the case and

20   total disinterest in the case, strong distrust in the legal

21   system."

22             Can you explain more about how that would affect your

23   service?

24             MALE JUROR:  I was living in the City of

25   Charlottesville at the time of this incident.  I remember it

1    vividly.  I was and am still a single parent, and I was anxious

2    enough that I took my son and we left the city for the day, for

3    that Saturday.

4           My lack of empathy for the case is -- my opinion is

5    that both sides showing up that day were assuming a risk.

6    Folks got hurt and that's wrong, and that should be made right,

7    but I have a lack of empathy for folks showing up that day to

8    protest, and counter-protest, if I'm honest.  Yes.

9           THE COURT:  Okay.  Question Number 72 asks:  Would

10   you be able to set aside preconceived opinions, if any, you may

11   have about the Unite the Right rally, this case, and the

12   parties therein, and reach a decision based solely upon the

13   evidence you hear at trial in accordance with the law as

14   instructed by the Court?  And you had no -- said "no," and

15   that -- that you do have preexisting opinions.

16          Have they changed?

17          MALE JUROR:  No, sir.

18          THE COURT:  And you do think that those preexisting

19   opinions still exist so that it would influence you in arriving

20   at a verdict in the case?

21          MALE JUROR:  I would find it hard to divorce my

22   opinions from my original opinions.  I have the same opinions,

23   and I have not changed them, sir.

24          THE COURT:  But you did understand the question?

25   When it asked, were you able to set aside your preconceived

1   opinions, you answered "no"?

2          MALE JUROR:  I do understand, and I don't believe I

3   would be able to.

4          THE COURT:  All right.  Thank you.

5          Would you step outside the door?

6          (Juror out.)

7          THE COURT:  All right.  Is there any need to try to

8   rehabilitate him?

9          I'm going to excuse him for cause.

10          (Juror in.)

11          THE COURT:  Just stand right there, sir.

12          You're going to be excused.  You do not have to come

13   back.

14          All right.  Which number is next?

15          THE CLERK:  261.

16          (Pause.)

17          THE COURT:  All right.  Sir, you -- you may take your

18   mask off and give us the -- state your juror number.

19          MALE JUROR:  Juror Number 261.

20          THE COURT:  Thank you.

21          You heard me say that this case is set for trial for

22   four weeks, starting today, or starting this week.  Recognizing

23   the not unsubstantial burden that this case would place on you,

24   but recognizing also that jury service is a vital civic duty,

25   does this timing pose a difficult problem for you?

1              MALE JUROR:  Actually, I work up at the FBI academy

2    in Quantico, and I'm essential personnel up there.  And I have

3    to fill out a task sheet every week for things that I need to

4    get done for that week.  So that would put me behind four

5    weeks, and I don't know if I'd be able to catch up.

6              THE COURT:  Okay.  Is there anyone else that can do

7    your job for you when you're not there?

8              MALE JUROR:  At this point, no.  They're hiring right

9    now, as a matter of fact.

10             THE COURT:  All right.  There may be times during the

11   trial is that you would be sitting for an hour or an hour and a

12   half without a break.  Do you have any physical or medical

13   limitations that would prevent you from sitting that long?

14             MALE JUROR:  No.

15             THE COURT:  Okay.  Are you sensible of any bias or

16   prejudice against either party in the case?

17             MALE JUROR:  Not right now.

18             THE COURT:  What do you mean?  I mean, do you know

19   who -- generally, who the defendants are and the plaintiffs?

20             MALE JUROR:  Yeah, I do.

21             THE COURT:  And you're not sensible of any bias?  I

22   mean, do you feel more favorable toward one side than the

23   other?

24             MALE JUROR:  Yeah.

25             THE COURT:  All right.  Have you made up your mind as

1   to who might be at fault in the violence that took place at the

2   Unite the Right rally?

3            MALE JUROR:  No.

4            THE COURT:  In Question Number 43 you indicated it

5   would be difficult to be impartial and stated your political

6   party and what you thought of the president -- former President

7   Trump.  Do you think it would be difficult in this case to be

8   impartial?

9            MALE JUROR:  I think so.

10           THE COURT:  In Question 72 you were asked:  Could you

11   set aside preconceived opinions, if any, you have about the

12   Unite the Right rally, this case, and the parties therein, and

13   reach a decision based solely on the evidence you hear at trial

14   in accordance with the law as instructed by the Court?  And you

15   answered "yes."

16           Do you have any question about that, in view of your

17   other answers?

18           MALE JUROR:  No.

19           THE COURT:  I mean, could you set aside any

20   preconceived notions you have?

21           MALE JUROR:  I don't know that I could.

22           THE COURT:  Okay.  I'm going to ask you to step

23   outside the door for a minute.  Just follow the marshal.

24           (Juror out.)

25           THE COURT:  All right.  I'm asking:  Does anyone

1    think he can be rehabilitated, beyond breaking bones?

2             MS. DUNN:  Your Honor, I think the answer to the

3    question that you asked, whether he can be rehabilitated, I

4    think the honest answer is:  We don't know at this point.

5             I think it might help if the Court were to ask him

6    about whether he can give these defendants in this case a fair

7    shake.  I think these were very -- you know, his -- I think,

8    you know, we have recognized in other circumstances where the

9    answer was obvious.  Here, I don't think it's incredibly

10   clear-cut.

11            THE COURT:  Well, I just thought that last question I

12   asked him, can you set aside your preconceived notions, and he

13   says, "I don't know that I could."

14            MS. DUNN:  Yeah.  I mean, we defer to the Court.  His

15   answers seemed a little all over the place to us.

16            THE COURT:  I think he's too set and his answer is --

17   his questionnaire --

18            MS. DUNN:  Understood, Your Honor.

19            THE COURT:  Open the door and let him pop back in.

20            (Juror in.)

21            THE COURT:  All right, sir.  Just stand right there.

22   I'm going to excuse you.  You do not have to come back.  Thank

23   you.  We're sorry for the inconvenience.

24            THE CLERK:  262.

25            THE COURT:  All right, sir.  You may take off your

1    mask and tell us your jury number.

2              Your number.

3              MALE JUROR:  262.

4              THE COURT:  Okay.  You heard me say this morning, or

5    a little earlier, that the trial will take four weeks,

6    including this week.  Now, recognizing the not insubstantial

7    burden this case would place on you, but recognizing also that

8    jury service is a vital civic duty, does this timing pose a

9    particular problem for you?

10             MALE JUROR:  Yes, Your Honor, it certainly does.  I'm

11   self-employed.  There's only me in my office.  I involve --

12   I've got clients that rely on me on a daily basis for

13   investment decisions, and I have a wife at home who has lost

14   her vision in the last couple of years.  So I help care for

15   her.

16             THE COURT:  You said, I think, that you were in the

17   process of selling your business.  Do you have clerical help?

18             MALE JUROR:  I do not have any clerical help at all,

19   sir.

20             THE COURT:  All right.  Well, are you still regularly

21   advising clients?

22             MALE JUROR:  I advise them on an ongoing basis, yes,

23   sir, until I have somebody else to take over.  And even then,

24   we'll be working together to make a smooth transition.

25             THE COURT:  How -- how does your wife's situation

1    affect you?  What do you have to do regarding her care?

2              MALE JUROR:  I'm sorry, Your Honor.  Could you say

3    that again?

4              THE COURT:  How does your wife's circumstances affect

5    you?

6              MALE JUROR:  She lost a lot of her vision and she is

7    tremendously depressed.  I have to take her to counseling

8    appointments once a week and other doctor's appointments from

9    time to time.

10             THE COURT:  Do you have anybody else that can do

11   those things for you for four weeks?

12             MALE JUROR:  I don't.  I could call Uber and have

13   them take her back and forth.  Certainly that would work.  That

14   would be an expense.  I'd love to serve if you can wait a

15   couple of months, postpone all of this.

16             THE COURT:  Well, you're in the process now of

17   turning your business over to somebody else?

18             MALE JUROR:  I'm still negotiating with three

19   different people, trying to find the best bid I can get on the

20   business.  And at that point, then I'll have to introduce these

21   new people to my clients, and at that point I need to wrap it

22   up by the end of the year to avoid additional expenses that

23   would start January 1st.

24             (Pause.)

25             THE COURT:  If you were to serve on the jury, would

```
 1   you necessarily be involved in trying to make this transaction

 2   go on during the jury service?

 3          MALE JUROR:  The sooner I'm involved in the

 4   transition, the better off it will be.  Part of the

 5   compensation usually involves waiting six months to see what

 6   client retention looks like, and if I'm able to retain the

 7   clients for the person I'm transferring the business to, then I

 8   would receive a higher payment.

 9          THE COURT:  All right.

10          MALE JUROR:  In other words, if we lose clients in

11   the process, then I'd be paid less.  And this is part of my

12   retirement.

13          THE COURT:  Okay.  If you would step outside for a

14   minute.  Follow the marshal.

15          (Juror out.)

16          THE COURT:  All right.  I think this gentleman has a

17   situation that, under our jury plan, he would be excused as a

18   person whose services are essential to the operation of his

19   business and so forth.  So I'm going to excuse him.

20          All right.  Call him.

21          (Juror in.)

22          THE COURT:  All right, sir.  You don't have to --

23   just stand right there.

24          I'm going to excuse you, and you do not have to come

25   back.  Thank you.
```

```
 1              MALE JUROR:  Thank you, Your Honor.

 2              THE COURT:  All right.  Next.

 3              THE CLERK:  265.

 4              (Pause.)

 5              THE COURT:  Ma'am, you heard me -- first of all,

 6     state, what is your juror number?

 7              FEMALE JUROR:  265.

 8              THE COURT:  You heard me say earlier that this trial

 9     is set to last four weeks, starting tomorrow -- I'm sorry,

10     starting this week.  But, recognizing that jury service is a

11     vital civic duty, can you do this without any great hardship to

12     you?

13              FEMALE JUROR:  Yes, I can.

14              THE COURT:  There may be times during the trial when

15     you will be sitting for an hour or hour and a half.  Do you

16     have any -- without taking a break.  Would you have any

17     physical or medical limitations that would prevent you from

18     sitting that long?

19              FEMALE JUROR:  No, I do not.

20              THE COURT:  Are you sensible of any bias either

21     against the plaintiff or the defendants in the case?

22              FEMALE JUROR:  No, I'm not.

23              THE COURT:  All right.  If you are selected to serve

24     as a juror in this case, could you render a verdict that's

25     based solely according to the law and the evidence and is fair
```

129

1  to both the plaintiffs and the defendants?

2           FEMALE JUROR:  Yes, I can.

3           THE COURT:  All right.  Are there any questions?

4           MR. CANTWELL:  Can we have a moment, Judge?  I just

5  got the survey.

6           (Pause.)

7           THE COURT:  I'm going to read this question to you,

8  ma'am.  If you found the plaintiffs had met their burden of

9  proof with regard to one or more defendants, could you separate

10 that view from other defendants for whom the burden of proof

11 had not been met?

12          FEMALE JUROR:  Yes, I can.

13          THE COURT:  Thank you.  You wrote that you have not

14 heard about the Unite the Right rally.  Can you confirm that

15 you have heard nothing about the rally?

16          FEMALE JUROR:  The only thing I've heard of it was

17 what I've seen on TV, but anything else, I really don't know.

18 I don't follow stuff like that, to be honest.

19          THE COURT:  What did you mean that you had not heard

20 of it?

21          FEMALE JUROR:  Meaning I don't really know anything

22 about it other than what comes on TV, and the majority of time

23 when stuff like that comes on TV, I just change the channel,

24 because a lot of times there's a lot of negative, and I just

25 don't -- and I just choose not to look at it like that.  I have

130

 1   other things I focus on.

 2          THE COURT:  Do you live close to where the incident

 3   occurred?

 4          FEMALE JUROR:  No.  I'm in Louisa.

 5          THE COURT:  You live where?

 6          FEMALE JUROR:  I live in Louisa.

 7          THE COURT:  Right.  Do you believe that all parties

 8   and organizations have a right to participate --

 9          FEMALE JUROR:  I do.

10          THE COURT:  -- I'm sorry -- to demonstrate and

11   parade, as long as they do so lawfully?

12          FEMALE JUROR:  Yeah, I do believe that.  I don't have

13   a problem with that.

14          THE COURT:  Do you believe that with regard -- that

15   that same right would apply to white nationalists and fascists,

16   as long as they do so lawfully?

17          FEMALE JUROR:  Yes, I do.

18          THE COURT:  There were two questions on the survey,

19   one about persons you might admire and the other about persons

20   you do not admire, and you did not answer that.

21          Upon further reflection, are there any figures that

22   you particularly admire?

23          FEMALE JUROR:  Honestly, there is nobody that I

24   actually admire at all, other than my parents.  That's it.  I

25   don't really admire anybody else.

1          THE COURT:  All right.  Have you ever referred to

2    anyone as a white supremacist?

3          FEMALE JUROR:  No, I have not.

4          THE COURT:  Okay.  Thank you.

5          All right.  Are they all the questions?

6          All right.  You may go back to the jury room.

7          THE COURT:  Is there anyone that would strike that

8    juror for cause?  Any motion for cause?

9          MR. JONES:  No.

10         MR. SMITH:  No, Your Honor.

11         THE COURT:  Okay.  That juror has passed and will be

12   left on the list.

13         Next?

14         THE CLERK:  266.

15         (Pause.)

16         THE COURT:  All right.  Ma'am, you may remove your

17   mask and state your juror number.

18         FEMALE JUROR:  266.

19         THE COURT:  You heard me state that this case is set

20   for trial for four weeks beginning this week.  Recognizing that

21   jury service is a vital civic duty, does this timing pose a

22   particular problem for you, as opposed to what you would assume

23   other persons in the community might have?

24         FEMALE JUROR:  Not really, no.  I have doctor's

25   appointments tomorrow.  Other than that, nothing.

```
 1              THE COURT:  Okay.  There may be times during the

 2    trial when you will be sitting for an hour and a half or longer

 3    without a break.  Do you have any physical or medical

 4    limitation that would prevent you from sitting that long?

 5              FEMALE JUROR:  I have back problems.  I can't sit for

 6    long, long periods of time, and can't stand for long periods of

 7    time.

 8              THE COURT:  All right.  If you were selected to serve

 9    as a juror, you would be seated out in the gallery, where you

10    were seated when you first came in today.  And if you -- would

11    you be able to say -- if I would say you would be allowed to

12    stand if your back hurt you and sit down there --

13              FEMALE JUROR:  Yes.

14              THE COURT:  Even if, you know, you were in the same

15    place for an hour, an hour and a half?

16              FEMALE JUROR:  Yes.

17              THE COURT:  Okay.  You said you had an appointment

18    tomorrow.  If the case should -- could the appointment be

19    rescheduled if it was necessary?

20              FEMALE JUROR:  I don't know.  I've rescheduled it

21    before and I haven't seen my doctor since COVID hit.  So I

22    don't know if they'll continue to prescribe my medications

23    without me being seen.

24              THE COURT:  What time is your appointment tomorrow?

25              FEMALE JUROR:  3 o'clock.
```

1           THE COURT:  All right.  We'll see what we can do to

2    consider that.

3           Are you sensible of any bias or prejudice against the

4    plaintiffs or the defendants in the case?

5           FEMALE JUROR:  No.

6           THE COURT:  Have you formed an opinion about what

7    might have happened with regard to the injuries the plaintiffs

8    sustained -- that is, have you formed any opinion as to who is

9    at fault with regard to injuries they sustained?

10          FEMALE JUROR:  No, I have not formed an opinion to

11   who was at fault.

12          THE COURT:  All right.  Do you know of any reason you

13   couldn't sit and render a verdict fair to both the plaintiffs

14   and the defendant?

15          FEMALE JUROR:  I'm sorry.  Could you repeat that?

16          THE COURT:  Do you know of any reason you could not

17   sit and serve as a juror and render a verdict that is fair to

18   both the plaintiffs and the defendants, a verdict that's based

19   solely according to the law as the judge reads it to you and

20   the evidence you hear in the courtroom?

21          FEMALE JUROR:  I can do that.

22          THE COURT:  All right.  Are there any questions?

23          In your questionnaire, you indicated that you had no

24   concern about prejudice against Jewish people.  Can you explain

25   that?

```
1              FEMALE JUROR:  I've never heard or seen any

2    discrimination against Jewish people.

3              THE COURT:  All right.  You said you've heard about

4    the case.  What have you heard about this case?

5              FEMALE JUROR:  I heard where the gentleman drove a

6    car into the crowd and hit pedestrians, and the one is now

7    deceased.

8              THE COURT:  Have you heard who was responsible for

9    her death?

10             FEMALE JUROR:  I don't remember his name.

11             THE COURT:  All right.  You said you were moderately

12   concerned about racism against white people.  Can you explain

13   your concern?

14             THE WITNESS:  Just everything that's going on with

15   the statues and all of that.  I mean, it's not just against the

16   whites.  It's against the blacks, minorities, everybody.  I

17   just think it's really more now than what it was when I was

18   growing up.

19             THE COURT:  Okay.  You say you have a somewhat

20   unfavorable view of Black Lives Matter.  Can you explain why?

21             THE WITNESS:  Because not just black lives matter.

22   All lives matter.  We're all humans.

23             THE COURT:  All right.  If you hear that one or more

24   of the plaintiffs is affiliated with Black Lives Matter, would

25   you be more inclined to believe that plaintiffs caused the
```

1    violence at Unite the Right?

2              FEMALE JUROR:  No.  I would have to see evidence to

3    prove that that's the case.

4              THE COURT:  Okay.  Any further questions?

5              All right.  In this case, the defendants have a right

6    to have their case decided as to each individually.  If the

7    plaintiffs meet their burden of proof against some of the

8    defendants, but not all of the defendants, could you separate

9    that view from other defendants for whom the burden has not

10   been met?

11             FEMALE JUROR:  Yes.

12             THE COURT:  As you have said here today, are you

13   confident that you could be fair in the case?

14             FEMALE JUROR:  Yes.

15             THE COURT:  All right.  If the plaintiffs proved

16   their case against all of the defendants, can you find for the

17   plaintiffs?

18             FEMALE JUROR:  Yes, if the evidence is there.

19             THE COURT:  All right.  Thank you.  You may step

20   down, then, and go back to the jury room.

21             Anyone move for cause against that last juror?

22             Hearing nothing, I think she will not be excused for

23   cause.

24             THE CLERK:  267.

25             (Pause.)

1          THE COURT:  You may remove your mask and state your

2     juror number.

3          FEMALE JUROR:  267.

4          THE COURT:  All right.  Thank you.

5          You heard me say today that the case is to last

6     four weeks, including this week.  Does that present any

7     particular problem for you, to serve that long?

8          FEMALE JUROR:  Not necessarily.  Only if it would

9     interfere with child care, I guess.  But I think the hours you

10    stated would be fine.

11         THE COURT:  All right.  Of course, if you're selected

12    to serve, it's every day that the trial goes on that you must

13    be here.  You have no problem; you can make those arrangements?

14         FEMALE JUROR:  Yes.

15         THE COURT:  All right.  There may be times during the

16    trial when you will be sitting for an hour to an hour and a

17    half or longer without a break.  Do you have a physical or

18    medical limitation that would prevent you from sitting that

19    long?

20         FEMALE JUROR:  No.

21         THE COURT:  You've expressed some concerns about

22    COVID.  You heard me explain what we are trying to do to

23    mitigate any possibility of COVID affecting any of the jurors.

24    Does that help you feel better about the COVID situation?

25         FEMALE JUROR:  Yeah.

137

```
 1              THE COURT:  All right.  Thank you.

 2              Are you sensible of any bias or prejudice against

 3    either party to the case, the plaintiffs --

 4              FEMALE JUROR:  No.

 5              THE COURT:  -- or the defendants?

 6              Have you made up your mind about anything that

 7    happened at Unite the Right, who was at fault or anything like

 8    that?

 9              FEMALE JUROR:  No.

10              THE COURT:  Thank you.

11              Any questions?

12              Do you believe that every organization, no matter

13    what their political beliefs, would have a right to march and

14    parade in this city if they do so lawfully?

15              FEMALE JUROR:  Yes.

16              THE COURT:  Would you believe that even radical

17    racists might have that right, if they do so lawfully?

18              FEMALE JUROR:  Yes.

19              THE COURT:  Okay.  Thank you.  Having no other

20    questions, I'm going to allow you to go back to the jury room.

21              Next.

22              THE CLERK:  268.

23              THE COURT:  Any motion for cause on that last juror?

24              MS. DUNN:  No, Your Honor.

25              MR. SMITH:  No, Your Honor.
```

1          THE COURT:  Okay.  She passes.

2          You may remove your mask.

3          You heard me say this morning earlier that this case

4   is set to last four weeks, including this week.  Does that

5   present any particular problem for you, given the fact that

6   jury service is a vital civic duty?

7          MALE JUROR:  It's not the most convenient, as I have

8   an operation that I manage about 240 employees at, but I can

9   make it work, in truth.

10         THE COURT:  All right.  And in spite of having that

11  many employees, I take it there are other supervisors and

12  people that help run your company?

13         MALE JUROR:  Yes, sir.

14         THE COURT:  The business would not have to shut down

15  or anything if you were on the jury for that long, would it?

16         MALE JUROR:  No, sir.

17         THE COURT:  Okay.  There may be times during the

18  trial that you will be sitting for an hour or an hour and a

19  half or longer without a break.  Do you have any physical or

20  medical limitation that would prevent you from sitting that

21  long?

22         MALE JUROR:  No, I do not.

23         THE COURT:  Okay.  On Question 73, you said you would

24  be moderately concerned in returning an acquittal for fear of

25  repercussions on behalf of the plaintiffs or their

1    sympathizers.  Do you understand -- I mean, this is a civil

2    case, and the verdict would be -- money damages is what they're

3    seeking, and that you would be denying compensation to the

4    plaintiffs, not convicting the defendants of any crime?

5            MALE JUROR:  I understand.

6            THE COURT:  How concerned -- I mean, you say

7    "moderately."  Can you expand on that?

8            MALE JUROR:  I would say -- given today's political

9    climate, I would say I fear the left is what I would call

10   slightly unhinged and a little bit extremist.  Not that the

11   right side isn't extremist.  I'm saying we have -- we have a

12   climate of extremes.

13           THE COURT:  You said that you would be able to set

14   aside preconceived opinions you may have about the Unite the

15   Right rally in this case and reach a decision based solely upon

16   the evidence you hear at trial in accordance with the law as

17   instructed by the Court.  You answered "yes."  Do you still

18   adhere to that view?

19           MALE JUROR:  Yes, I do.

20           THE COURT:  If you were selected to serve on the

21   jury, could you try this case solely based on the facts proven

22   here in the courtroom and not let any outside influence affect

23   you in arriving at a factual decision and follow the law of the

24   case?

25           MALE JUROR:  Yes, sir.  Fair.

140

```
1                THE COURT:  All right.  Any questions?

2                MS. DUNN:  Yes, Your Honor.

3                THE COURT:  Do you understand that we are attempting

4     to see that the jurors' identity remains anonymous?

5                MALE JUROR:  Sure.

6                THE COURT:  I mean, we can't guarantee anything, but

7     anyway, we're going to make an effort.

8                MALE JUROR:  That's fine.

9                THE COURT:  In response to Questions 42 and 45

10    concerning what you have heard about the case, you wrote:  "I

11    have read or heard mainstream media coverage, most of which is

12    biased, so I didn't consider it a reliable account of what

13    happened."

14                In what way was the mainstream media biased?  Can you

15    explain?

16                MALE JUROR:  I would say that they're sympathetic

17    with the plaintiffs'-side point of view.

18                THE COURT:  Okay.  In response to Question 43, which

19    asked whether there is anything about the nature of the

20    allegations or parties that would make it difficult for you to

21    be a fair and impartial juror, and you checked "yes," and you

22    wrote:  "The premise that the counter-protesters were acting

23    peacefully and lawfully is false," why do you feel that way?

24                MALE JUROR:  I believe the counter-protesters were

25    armed.  I believe they were looking for confrontation, if the
```

1    event -- if it posed -- if the opportunity presented itself.  I

2    think they were not averse to confrontation.

3              THE COURT:  If the plaintiffs were able to prove that

4    they were not armed, and that they did not engage in any

5    violent activity themselves, and that they prove the

6    allegations against the defendants, could you render a verdict

7    to the plaintiffs?

8              MALE JUROR:  I could.

9              THE COURT:  Okay.  I asked you about the question

10   about you appeared moderately concerned about repercussions on

11   behalf of the plaintiffs.  Can you say what kind of

12   repercussions you were speaking of?

13             MALE JUROR:  I would fear someone showing up at my

14   residence, more than anything, if my identity was known.

15             THE COURT:  In response to Question 34 you described

16   Antifa as "militant left-wing extremists."  If the defendants

17   in this case assert that one or more of the plaintiffs are

18   associated with Antifa, would that color your view of their

19   testimony?

20             MALE JUROR:  Would you repeat the question, please?

21   Sorry.

22             THE COURT:  In response to Question 34 you described

23   Antifa as "militant left-wing extremists."  If the defendants

24   in this case assert that one or more of the plaintiffs are

25   associated with Antifa, would that color your view of their

1    testimony?

2              MALE JUROR:  In certain contexts, it could.

3              THE COURT:  Well, I'm asking you if the defendants in

4    this case assert that one or more of the plaintiffs are

5    associated with Antifa, I mean, and the plaintiffs deny that

6    they are associated with Antifa.

7              MALE JUROR:  The evidence proves what the evidence

8    proves.  So I'll follow the evidence.  You make an argument,

9    show me the proof, I'm willing to go there with you.

10             THE COURT:  Do you have any view about white

11   supremacy or believing that the white race is better than other

12   races?

13             MALE JUROR:  No, sir.  I think that line of

14   thinking -- that line of thinking is not in line with my

15   personal values.

16             THE COURT:  All right.  We need to take a break right

17   now.  And I'll ask you, sir, to go back to the jury room and

18   follow the marshal to the jury room.

19             We're going to take a break.

20             (Recess.)

21             THE COURT:  Do you believe that free speech is a

22   right of all Americans, including Marxists?

23             MALE JUROR:  Yes, I do.

24             THE COURT:  You said that you believe the

25   counter-protesters were armed and ready to engage in violence.

143

```
1   Do you -- can you tell us what you base that belief on?

2            MALE JUROR:  I have friends and family who were in

3   the emergency room at the University of Virginia on that day,

4   on August 12.

5            THE COURT:  How did that inform you that the

6   counter-protesters were armed?

7            MALE JUROR:  Firsthand account.

8            THE COURT:  You mean someone at the University

9   hospital told you they saw a counter-protester armed?  Is that

10  what you're saying?

11           MALE JUROR:  Yes, sir.

12           THE COURT:  Did it have anything to do with being at

13  the University hospital?

14           MALE JUROR:  They were being treated at the

15  University hospital.

16           THE COURT:  Okay.  You mean a counter-protester was

17  being treated?

18           MALE JUROR:  Yes, sir.

19           THE COURT:  All right.  Are you of the opinion that

20  the plaintiffs -- one or more of the plaintiffs was armed?

21           MALE JUROR:  I believe they probably were.

22           THE COURT:  Okay.  If you heard evidence that the

23  parties to this case were counter-protesters, would you be

24  likely to assume they were looking for confrontation?

25           MALE JUROR:  I don't know that they were specifically
```

1    looking for confrontation, but I don't think they would have

2    shied away from confrontation.

3            THE COURT:  Okay.  Well -- all right.

4            If left-wing protesters other than the plaintiffs

5    were present at the rally, would you be more likely to believe

6    the defendants were not responsible?

7            MALE JUROR:  Honestly, I have no opinion as to who

8    was responsible.

9            THE COURT:  If the plaintiffs meet their burden of

10   proof with regard to one or more defendants, could you separate

11   that view from other defendants for whom the plaintiff had not

12   met their burden?

13           MALE JUROR:  Yes, I could.

14           THE COURT:  And do you believe that all lives matter?

15           MALE JUROR:  Yes, I do.

16           THE COURT:  All right.  Are they all the questions?

17           All right, sir.  Thank you.  You may go back to the

18   jury room.

19           THE COURT:  All right.  Any motion for cause on the

20   juror?

21           MS. DUNN:  Yes, Your Honor.

22           THE COURT:  All right.

23           MS. DUNN:  This juror is not competent to serve.

24           It's a long list of reasons, but I will begin with

25   something he said himself in his questionnaire, which is he

145

1    said it was false that the counter-protesters were acting

2    lawfully and peacefully.  When he was asked about this

3    question, he could not be rehabilitated.  He said he believes

4    the counter-protesters were armed, that they were looking for

5    confrontation.  Then he explained that that was based on --

6    this is a quote from him -- his "firsthand knowledge" based on

7    hearing from friends and family in the ER on August 12th.

8           Compounding the issues, he said that plaintiffs,

9    people he has never met or heard of, were probably armed.

10          He also said that the plaintiffs and the

11   counter-protesters, he did not think they would have shied away

12   from confrontation.  He said the mainstream media is

13   sympathetic with the plaintiffs' side and that's why he thinks

14   that they are biased, and he checked on his questionnaire that

15   he could not be impartial.

16          If we need more, Your Honor, which we do not, he

17   talked about how the left is unhinged and extreme and he fears

18   somebody coming to his residence.

19          So, Your Honor, this juror, we submit, must be struck

20   for cause.

21          THE COURT:  All right.  Any response?

22          MR. CANTWELL:  I'd like to respond, Judge.  Chris

23   Cantwell.

24          I don't think it's actually in dispute that the

25   counter-protesters were armed.  That's, to the best of my

1    knowledge, an undisputed fact.  The people sympathetic to the

2    counter-protesters frequently call what they do "mostly

3    peaceful protest," which means that there's some violence

4    involved.  It's not something that's in dispute.

5            We've heard juror after juror pass through this

6    process after telling us that they've heard news reports of

7    what happened there, which means that they heard about people

8    being armed, people being violent, people getting hurt.  He's

9    giving us a little bit more detail than somebody saying that

10   they saw about it on CNN, but he's not really stating disputed

11   facts.

12           If he's concerned about retaliation, that's the whole

13   entire point of the juror anonymization process, and we're

14   fortunate to have it.

15           That's what I have to say about it.

16           THE COURT:  All right.

17           MR. SPENCER:  Your Honor, the issue really isn't

18   whether someone has a preconceived notion about the

19   Charlottesville rally.  If they lived in Charlottesville or

20   they, really, were a US citizen at the time, they most likely

21   heard something about it.

22           Secondly, he has opinions that are mainstream

23   opinions that are probably held by millions of Americans who

24   tend to be of a conservative bent.  The real issue is whether

25   he can suspend any notions that he had beforehand and make a

1    considered, serious, deliberative decision.  And I think when

2    pressed on issues like, do you support free speech, can you

3    have look at the facts, can you weigh the defendants

4    individually and not as a collective, he answered all of those

5    in a thoughtful and serious manner.

6             So that's really the issue, is whether he can take

7    part in this process, not whether he might have some

8    preconceived notions, which, again, he probably shares with

9    millions of Americans.

10            MR. KOLENICH:  Thank you, Your Honor.

11            The potential witness did state various things, as

12   the plaintiffs stated, but he said he would follow the evidence

13   wherever it took him.

14            He stated he understood the various distinctions;

15   some defendants could be guilty, some not.

16            When the Court questioned him about his concerns

17   about his residence, he did not press those concerns when it

18   was explained that an anonymization effort was underway here at

19   the Court.

20            We admit that this is more of a close call than some

21   of the prior jurors, but he did say he would do his job, he

22   would follow his oath, and he would follow the evidence.

23            Thank you.

24            MS. DUNN:  Your Honor, let's be clear:  This juror

25   said that the plaintiffs, people who he attested he had never

1  met and never heard of, were probably armed.  He talked about

2  his firsthand knowledge, not just things he saw in the news.

3       We have not objected to people just based on their

4  conservative beliefs.  This juror goes well beyond that, and

5  repeatedly.  He fears repercussions from the plaintiffs, people

6  he thinks were armed based on no evidence, and said nothing

7  about any repercussions from the defense side.

8       THE COURT:  He said on behalf of the plaintiffs.

9       MS. DUNN:  In his questionnaire he says "by

10 plaintiffs or their supporters."  And he said he believes that

11 the plaintiffs were armed.  This is a clear case for cause.

12      THE COURT:  Okay.  All right.  I think his positions

13 are ambiguous enough that it leads the Court -- I'm not certain

14 that he can sit and render a verdict fair to both sides.  So

15 I'm going to discharge him for cause.

16      All right.  Next?

17      THE CLERK:  269.

18      (Pause.)

19      THE COURT:  All right.  Sir, you may remove your

20 mask.  And would you state your juror number?

21      MALE JUROR:  269.

22      THE COURT:  All right, sir.  I said this morning this

23 case is likely to last four weeks, including this week.  That

24 being the case, if you were to serve on the jury, would that

25 create a problem for you that wouldn't be common to other

1   jurors?  I mean, would it be a particular problem for you to

2   serve four weeks?

3           MALE JUROR:  Well, I mean, being an older gentleman

4   and having a little bit of physical pain, yeah.  I mean,

5   sitting in one spot for a long period of time, I tend to, you

6   know --

7           THE COURT:  If you might sit for an hour to an hour

8   and a half without taking a break, would that be a problem for

9   you?

10          MALE JUROR:  Maybe not.

11          THE COURT:  All right.  And you're going to be

12  sitting out there where you came in this morning.

13          MALE JUROR:  Gotcha.

14          THE COURT:  And I can tell you that it wouldn't be

15  disruptive if you stood up.  If you felt like you needed to

16  stand, stand in place, you could do that.

17          MALE JUROR:  Okay.

18          THE COURT:  Do you have any other physical or medical

19  limitation that would prevent you from sitting?

20          MALE JUROR:  No, sir, not really.

21          THE COURT:  Okay.  All right.

22          You also -- in your questionnaire you said you might

23  have to put in some time at your job.  Can you work that out?

24          MALE JUROR:  Maybe.  The way it's set up, if they're

25  calling me in, I'm the only person in that store that can run

1   it to open and close.  There won't be anybody else but me.

2                THE COURT:  What kind of business is that?

3                MALE JUROR:  Retail.

4                THE COURT:  Are you the owner of the business?

5                MALE JUROR:  No, I'm not.

6                THE COURT:  You're not a full-time employee?

7                MALE JUROR:  No, I'm not.

8                THE COURT:  Well, the business wouldn't have to close

9   down, would it?

10               MALE JUROR:  Not necessarily, because if they're

11  calling me, that means that they are hard up and they need me

12  to be there.

13               THE COURT:  Who owns the business?  Anybody locally?

14               MALE JUROR:  Yes.  It's a local business.

15               THE COURT:  It's what?

16               MALE JUROR:  It is a local business.

17               THE COURT:  Local ownership?

18               MALE JUROR:  Yes, sir.

19               THE COURT:  So the owner could take care --

20               MALE JUROR:  Actually, no, because he doesn't live in

21  town.

22               THE COURT:  What?

23               MALE JUROR:  He doesn't live in town, sir.

24               THE COURT:  All right.

25               MALE JUROR:  I'm not going to say that that's -- you

151

 1  know, it might happen.

 2              THE COURT:  How often are you called in?

 3              MALE JUROR:  Lately, quite often.

 4              THE COURT:  How many employees are in the store?

 5              MALE JUROR:  Three.

 6              THE COURT:  And the store, what does it sell?

 7              MALE JUROR:  Excuse me?  Repeat that.

 8              THE COURT:  I said, what does the store sell?  What's

 9  the product?

10              MALE JUROR:  Musical equipment.  And we also give

11  lessons.

12              THE COURT:  You don't give lessons, do you?

13              MALE JUROR:  No.  I run the store part of it.

14              THE COURT:  If they were to call you and you were on

15  jury service -- what time does the store open?

16              MALE JUROR:  11:00.

17              THE COURT:  Oh.  If they were --

18              MALE JUROR:  And we --

19              THE COURT:  Excuse me.  I'm sorry.

20              MALE JUROR:  We close at 7.

21              THE COURT:  Okay.  I mean, what happens if you are

22  not available when they call?

23              MALE JUROR:  They aren't going to like it.  I guess

24  the store won't be open.

25              THE COURT:  Well, they do have somebody else to open

1   the store generally, right?

2          MALE JUROR:  Usually, yes, sir.

3          THE COURT:  Okay.  On Question Number 72 it says --

4   the question was:  Would you be able to set aside preconceived

5   opinions, if any, you may have about the Unite the Right rally,

6   this case, and the parties therein, and reach a decision based

7   solely upon the evidence you hear at trial in accordance with

8   the law as instructed by the Court?  And the answer is yes or

9   no.  And you answered -- you answered "no."

10          MALE JUROR:  Absolutely no.  Can I speak?

11          THE COURT:  Yes.  Yes, sir.

12          MALE JUROR:  I pretty much have already made up my

13   mind.  I live here in this town.  I know people that were

14   assaulted.  I mean, people were hurt.  That poor girl is dead.

15   I mean, come on, man.  No.  No.  I've made up my mind pretty

16   much how I feel about that.  I'm just being honest.  That's

17   all.

18          THE COURT:  All right.  Are you telling me that you

19   could not sit as a juror and listen to the evidence, listen to

20   the law as I instruct you, and render a verdict based on what

21   you hear in the courtroom as opposed to what you might have

22   heard outside?

23          MALE JUROR:  I can sit here and I can listen to it,

24   but I've already made up my mind.

25          THE COURT:  All right.  Thank you, sir.

153

```
 1              MALE JUROR:  Just being honest.

 2              THE COURT:  Any other questions?

 3              Any questions?

 4              MR. SPENCER:  No questions.

 5              MS. DUNN:  No, Your Honor.

 6              THE COURT:  Thank you, sir.  You can go back to the

 7  jury room.

 8              MALE JUROR:  Go back to the jury room?

 9              THE COURT:  Yes, sir.  He'll show you.

10              Who's next?

11              THE CLERK:  274.

12              MR. JONES:  Your Honor, we would have a for-cause

13  challenge for that juror.

14              THE COURT:  You would have a what?

15              MR. JONES:  A for-cause challenge for that juror.

16              THE COURT:  The last juror?  Well, yes.  I'm sorry.

17  I was looking at something else.  He's excused for cause.

18              MS. DUNN:  We applaud his honesty.

19              THE COURT:  All right, sir.  You may remove your

20  mask.

21              State your jury number, please.

22              MALE JUROR:  Juror Number 274.

23              THE COURT:  You heard me earlier tell you that this

24  case is to last four weeks.  Recognizing that this is a

25  substantial burden on most -- would be on most people, but
```

1   recognizing also that it's a vital civic duty, does that pose a

2   particular problem for you?

3            MALE JUROR:  No, sir.

4            THE COURT:  There are times when you may have to sit

5   for more than an hour or an hour and a half without a break.

6   Do you have any physical or medical limitation that would

7   prevent you from sitting that long?

8            MALE JUROR:  No, sir.

9            THE COURT:  In Question Number 43, you answered the

10  question "yes" to:  Is there anything about the nature of the

11  allegations or the parties involved that would make it

12  difficult for you to be a fair and impartial juror in such a

13  case?  And you answered "Yes, the defendants were not at

14  fault."  Can you elaborate on that?

15           I mean, the question is:  The plaintiffs will contend

16  that they did not do anything to the defendants, and that the

17  defendants came to Charlottesville having conspired to commit

18  racially motivated bias -- I mean, racially motivated violence,

19  and that the plaintiffs were injured as a result of the

20  violence that was perpetrated, they allege, by the defendants.

21  And you have reached an opinion -- have you reached an opinion

22  on that issue?

23           MALE JUROR:  The wording is going to stand, Your

24  Honor.  I've seen no evidence that would show the defendant is

25  at fault.

155

1        THE COURT:  Okay.  But that's what the purpose of the

2    trial is, to put on evidence.

3        MALE JUROR:  I understand.

4        THE COURT:  And the plaintiffs will put on evidence.

5    And I'm not prejudging the evidence, either, but could you sit

6    as a juror and render a verdict fair to both sides and base

7    your verdict solely on what you hear in court and set aside

8    what you might have heard outside the Court?

9        MALE JUROR:  Yes, Your Honor.  I think I responded to

10   that question in the affirmative.

11       THE COURT:  You did.  And you are satisfied here

12   today that you could set aside your preconceived notions and

13   hear this case solely based on the evidence you hear in the

14   courtroom during the trial and follow the law the judge will

15   give you and reach a verdict that is fair to both sides?

16       MALE JUROR:  Yes, Your Honor.

17       THE COURT:  All right.  Any questions?

18       I think I asked this question.  Maybe not the exact

19   words, but --

20       MS. DUNN:  I think the second part was --

21       THE COURT:  I'm sorry?

22       MS. DUNN:  I think the second part was not asked,

23   Your Honor.

24       THE COURT:  Okay.  What are your views based on that

25   the defendants were not at fault?

1              MALE JUROR:  I don't have any views.  It's just a

2    lack of evidence that I've seen that would say otherwise.

3              THE COURT:  Just a lack of evidence?

4              MALE JUROR:  Yes, sir.

5              THE COURT:  All right.  If the plaintiffs prove --

6    meet their burden of proof for one or more of the defendants,

7    can you separate that view from other defendants for whom the

8    burden has not been met?

9              MALE JUROR:  Yes, Your Honor.

10             THE COURT:  When you say that you've seen a lot of

11   the evidence, what are you speaking of?

12             MALE JUROR:  I'm not sure that I did say that I've

13   seen a lot of evidence.

14             MS. DUNN:  Your Honor, our apologies.  That was the

15   wrong question.  That was our fault.  Wrong question.

16             THE COURT:  In your response to Question 41 you said

17   you were not concerned about discrimination against black,

18   Jewish, and white [sic] people, but extremely concerned about

19   prejudice against white people.  Can you say why you feel that

20   way?

21             MALE JUROR:  My values on that have nothing to do

22   with this particular case specifically.

23             Let me make that part clear, if I could.  I do

24   believe that white folks are more discriminated against than

25   other races.  I think it's very obvious on a day-to-day basis.

1    If you look at any different news sources, there will be some

2    type of biased angle against Caucasian white people.  I see it

3    every day.

4            THE COURT:  You're talking about -- so basically what

5    you're saying is, the prejudice and bias that you pick up from

6    the media, you think things are slanted --

7            MALE JUROR:  Against white people.

8            THE COURT:  -- against white people?

9            MALE JUROR:  That's the position, yes.

10           THE COURT:  Do you believe that there is

11   discrimination against black people, Hispanic people, and

12   Jewish people?

13           MALE JUROR:  To the degree that I'm not saying that

14   there is not.  I don't see that as often.

15           THE COURT:  You described Antifa as "terrorists."  If

16   defendants argue that one or more plaintiffs are affiliated

17   with Antifa -- and they may argue that, but if they are --

18   if -- the mere fact that someone argues that they are

19   associated with Antifa, would that color your views of their

20   testimony?

21           MALE JUROR:  I don't believe it would.

22           THE COURT:  All right.  You said you had extremely

23   unfavorable views of Black Lives Matter.  Can you elaborate on

24   that?

25           MALE JUROR:  If I elaborate, I'm stating my beliefs.

158

 1          As long as we understand I'm stating what I believe:

 2   I believe the organization to be a sham.  I believe it to be

 3   lie-filled.  I believe it to be strictly motivated towards

 4   unclear goals, and nothing more than a bunch of people trying

 5   to take advantage.

 6          THE COURT:  If one or more of the plaintiffs

 7   supported Black Lives Matter, would that impact your views as

 8   to their credibility?

 9          MALE JUROR:  No.

10          THE COURT:  You say you saw a moderate amount of

11   coverage about Unite the Right.  Can you elaborate on what you

12   saw?

13          MALE JUROR:  Sure.  I think it was probably the

14   evening of the day of the 12th that I first found out about it,

15   knew about it.  I think I first saw it possibly come into some

16   news feeds on my personal Facebook pages later on during the

17   day.  I remember seeing possibly Channel 12 from here in town,

18   but I don't remember it to be -- it could have been Channel 6;

19   I don't know -- but anyway, it was with video coverage of

20   things that happened that day.

21          I'm not sure I recall what was in the video, but I do

22   remember Terry McAuliffe getting up and giving a lot of

23   speculative commentary about what was happening and what may

24   not be happening.

25          After that, I just saw the articles in the newspaper,

1    when I still got the local Charlottesville newspaper.

2            THE COURT:  In this case, the plaintiffs allege that

3    the defendants came to Charlottesville having conspired to come

4    here and commit racially motivated violence.  And you have

5    indicated that you're not -- you're not greatly concerned about

6    discrimination against blacks and Jewish -- I guess that may be

7    Hispanics and Jewish persons.

8            If the Court instructs you that it is unlawful to

9    discriminate against persons on account of their race and

10   religion, and that if people travel from one state to another

11   to commit an act of violence because of someone's race, can you

12   do so, if it's proven, that they came to discriminate against

13   black persons and Jewish persons and other persons on account

14   of their race?

15           MALE JUROR:  Yes, Your Honor.

16           THE COURT:  I think I asked you about -- you said you

17   had not seen any evidence of fault on the part of the

18   defendants.  And did you say how you reached that conclusion?

19           MALE JUROR:  I don't know if I was asked how I

20   reached the conclusion or if I would offer one.  It's just I

21   haven't seen any evidence that would show them at fault.

22           THE COURT:  Okay.  Well, I would just ask you again:

23   If you sit as a juror in this case, can you weigh the evidence

24   as it comes in and, setting aside any preconceived notions,

25   follow the instruction and reach a verdict that the law and the

1    evidence dictate that you should reach?

2              MALE JUROR:  Most certainly.

3              THE COURT:  All right.  Are you sensible of any bias

4    or prejudice against either the plaintiffs --

5              MALE JUROR:  Can you start that one over, please?

6              THE COURT:  Yes.  Are you sensible of any bias or

7    prejudice against the defendants or the plaintiffs in this

8    case?

9              MALE JUROR:  I'm going to ask you to repeat it one

10   more time.  I'm not sure I'm understanding the question.  I

11   apologize.  Am I sensitive?

12             THE COURT:  Are you sensible of any bias or prejudice

13   you might have against the plaintiffs or the defendants?

14             MALE JUROR:  No, sir.

15             THE COURT:  Okay.  Thank you.  Those are all the

16   questions.  I'll ask you to step outside and go back to the

17   jury room.

18             (Juror out.)

19             THE COURT:  All right.  Any motion regarding that

20   juror?

21             MS. DUNN:  Yes, Your Honor.

22             To begin with, with this juror, his questionnaire

23   takes the position that the defendants were not at fault.  He

24   said he could not be impartial.  When he was asked about that,

25   he says:  "The wording is going to stand."

1              THE COURT:  He said what?

2              MS. DUNN:  He said:  "The wording is going to stand."

3              THE COURT:  "The wording is going" --

4              MS. DUNN:  When Your Honor asked him about the answer

5    to 43 when he said:  "Yes, difficult to be fair or impartial.

6    Defendants were not at fault."

7              More distressing than that, although that's bad, is

8    that when he was asked the basis for that belief, he said he

9    hadn't seen the evidence in this case, but the belief was

10   already established in his questionnaire such that he said he

11   could not be impartial.

12             He did not answer the question.  He just kept saying,

13   "Well, I haven't seen the evidence in this case."  I think we

14   all saw with our eyes how vehement he was when he was asked

15   about Black Lives Matter.  He said it is a sham, it is

16   lie-filled and motivated towards unclear goals.  But what

17   really came across was how vehement and exercised he was about

18   that.  And as Your Honor said to him, there will be discussion

19   of plaintiffs being part of Black Lives Matter in this case.

20             Obviously, we've had this conversation before -- and

21   maybe if it were the only thing, but it is combined with

22   everything else -- he describes Antifa as "terrorists."  It's

23   one thing to be unfavorable, to not like them -- somebody

24   earlier used the word "troublemaker."  "Terrorist" is a very

25   strong word.  So all of this combined, Your Honor, but most

1    especially his declaration that the defendants were not at

2    fault on his questionnaire, which he refused to explain, is

3    reason for cause.

4              MR. JONES:  Your Honor, as far as that question about

5    the defense, whether they were at fault, he was simply

6    answering the question to his knowledge, basing it on the

7    evidence that he had seen.  When Your Honor asked him multiple

8    times about whether he was able to weigh the evidence in this

9    case, he always answered in the affirmative.

10             Antifa and Black Lives Matter are not parties in this

11   lawsuit.  He has unfavorable views of them, but when asked

12   specifically whether an allegation that somebody was a part of

13   BLM or Antifa, whether that would affect him, he said no, it

14   wouldn't.  So, Your Honor, we think he's an acceptable juror.

15             MR. SMITH:  Your Honor, if I could.  Josh Smith,

16   defendants.  If I could very quickly.

17             Your Honor asked him several very direct, hard to

18   misinterpret questions regarding his ability to be impartial,

19   and he aced those questions, Judge.  He is absolutely

20   qualified.  Any kind of claims of potential bias are clearly

21   outweighed by the rehabilitation that's occurred here today.

22             Your Honor asked -- he's probably taken more

23   questions than any other juror, certainly more pointed

24   questions, and he absolutely understood the situation here and

25   that he needs to be impartial, and he was happy to tell the

1   Judge that he is able to do so.

2            MS. DUNN:  Your Honor --

3            MR. SPENCER:  If I may --

4            MS. DUNN:  Oh, I apologize, Mr. Spencer.

5            MR. CANTWELL:  If I may very quickly -- Christopher

6   Cantwell.  I asked him one of my signature questions about

7   separating verdicts between defendants, and he said very

8   quickly that he could answer that he could return a mixed

9   verdict.  So if he's thinking clearly enough to find some

10  people liable and not others, you know, he's obviously talking

11  about weighing the evidence fairly.

12           MS. DUNN:  Your Honor, the only --

13           THE COURT:  Anyone else on the defendants?

14           MR. SPENCER:  Your Honor, his opinions are very

15  common among millions of Americans who are Republican and like

16  Fox News and so on, and I think that's where he got them.

17           Again, we can't expect people not to have these

18  preconceived notions.  The real question is:  Can they use

19  their mind and address the facts and reach a conclusion?  And

20  he seemed like a very competent, intelligent man.

21           MS. DUNN:  Your Honor, the only point that I want to

22  make is to just put a very fine point on this.  If somebody had

23  said in their questionnaire that the defendants were at fault,

24  that juror would be struck for cause.  And rightfully.

25           Anybody that says -- has prejudged the case to the

164

1   extent that they say, in writing, defendants were or were not

2   at fault should be struck.  In fact, the last juror said on

3   his -- I apologize.  This is comparing, but -- I won't do that.

4   The point is:  I can really only imagine, if this person had

5   come in and said the defendants are at fault, what would

6   happen.

7           MR. SMITH:  Well, Your Honor said to him -- if Your

8   Honor said to him --

9           THE COURT:  Let's not --

10          MR. SMITH:  Your Honor said to him that if he were to

11  find the defendants weren't -- I'm sorry, if you were to find

12  that the -- find -- if you were to find that the evidence

13  points to the defendants being at fault, would you be able to

14  do that, he said "yes."  He understands.  He was saying that

15  the defendants are not at fault in the sense that -- the same

16  sense a juror would, where the plaintiff has to produce a

17  quantum of evidence.  They didn't meet their burden of proof.

18  He wasn't saying this as though he's made up his mind because

19  he hasn't seen any evidence.

20          THE COURT:  The relevant test, and I've read this

21  before, as to whether a juror is biased is -- attesting whether

22  a juror is biased is whether the juror has a fixed opinion that

23  he or she could not judge impartially the guilt of a defendant.

24  That's the Patton case.

25          He stated that he had these opinions.  He answered

1    Question 72:  Would you be able to set aside preconceived

2    opinions, if any, you have may have about the Unite the Right

3    rally, and this case, and the parties therein, and reach a

4    decision based upon the evidence at trial?  And he answered

5    "yes" to that question and he confirmed that he had these

6    opinions, and I would agree that a lot of people do in our

7    society have opinions on both sides of these issues and they're

8    influenced by the media.  But he has said that he could set

9    aside those -- his preconceived notions and render a verdict

10   fair to both parties based solely upon the law and the

11   evidence.  So he is passed.

12            All right.  Any other jurors back there?

13            THE CLERK:  No, Your Honor.

14            THE COURT:  All right.  Let's see how many we have

15   left that are on the list.

16            All right.  We'll give you all a ten-minute break.

17            MS. DUNN:  Your Honor, I think we would appreciate a

18   break.  We also are -- I assume both sides are likely to have

19   questions for the Court about what happens after this,

20   including, you know, if we end the day with 11 jurors, will

21   that be sufficient, which we should discuss whether there's

22   another panel to be had.  The Batson challenge -- or, you know,

23   other issues -- there are a number of issues for the Court.

24            THE COURT:  Can we take that up at the -- see what we

25   do here.  I don't know how -- what do we have, six jurors left?

1              THE CLERK:  Yes.

2              THE COURT:  We have six.  We need at least four,

3    maybe five, depending on the outcome --

4              THE CLERK:  Three, maybe four.

5              THE COURT:  Three, maybe four?

6              THE CLERK:  Yes, sir.  It depends on the challenge.

7    We have eight or nine, depending on the challenge.

8              MS. DUNN:  That is our understanding as well.  I

9    think -- so this may extend the day, but I think it would be

10   good --

11             THE COURT:  Well, okay.  But I need -- I want to

12   hear -- I want to see the jury panel before I take up the

13   issue.  And I think that if we end up -- go ahead and pick 12

14   and I sustain your challenge, we remove number 12 and put the

15   other gentleman back on the panel, is there any problem with

16   that?

17             MS. DUNN:  No, Your Honor.  I think the question is

18   whether the math will work out with the remaining peremptory

19   strikes to get to 12.

20             THE COURT:  Well, I know it may not.  And we may not

21   reach that point.

22             MS. DUNN:  Right.

23             MS. KAPLAN:  Your Honor, if I may, the question is

24   whether Your Honor would, in that situation, want to go with a

25   jury of 11 or 10.

167

1           THE COURT:  Well, we'll talk about that.  I mean --

2           MS. KAPLAN:  But that obviously influences how we

3   exercise our peremptories, Your Honor.  That's why we're asking

4   it now, whether we need to --

5           THE COURT:  I'm sorry?

6           MS. KAPLAN:  Whether we need to reserve peremptories

7   for possible new jurors coming in tomorrow.  That's what we're

8   trying to figure out.

9           THE COURT:  Well, I have told everyone it would be 12

10  jurors -- I mean, and it affects only the parties in the case.

11  If we get to a point where we could -- may do it with 11, I

12  don't think that we necessarily have to get to 12.  But I'm not

13  going to -- I will hear whether or not you think that 11 -- I

14  mean, I think 11 might cover it.  We have to have six at the

15  end of the -- by the time the jury deliberates.  I can live

16  with 11, but I would ask you all what any objection to --

17          MR. SMITH:  Well, Your Honor, they say the 12 jurors

18  was a historical accident anyway, and so, you know, it's sort

19  of arbitrary, but --

20          THE COURT:  Well, no, I say 12 because this is --

21  there are no alternates.

22          MR. SMITH:  I understand.  We probably should confer

23  about it.  Do we need to give the Court an answer right now?

24          THE COURT:  Take ten minutes and then we'll come

25  back.

168

```
 1              (Recess.)

 2              THE COURT:  All right.  We have how many persons on

 3  the list?

 4              THE CLERK:  I have six.  Would you like me to confirm

 5  the numbers, Your Honor?

 6              THE COURT:  Yes.

 7              THE CLERK:  I have Juror 265, 243, 266, 274, 245 --

 8  oh, I'm so sorry; I'm reading from the random list.  I'm so

 9  sorry.  I've got it all marked and ready to go.

10              Let me read from the numerical list.

11              I have Juror 243, 245, 265, 266, 267, and 274.

12              THE COURT:  That's six.

13              How many jurors do we already have?

14              THE CLERK:  We have eight jurors with the one under

15  question.

16              THE COURT:  We have eight jurors.  I'd think we'd

17  need at least ten jurors, or 11.

18              What I would propose is that we go ahead and

19  select -- get through this panel.

20              Do I have any objections from anybody -- if I get to

21  ten jurors, it will be that number.  And if I have to restore a

22  juror to the panel, it will be 11, or, if I get 11, it will be

23  12.

24              MR. SMITH:  I'm not sure what Your Honor -- is Your

25  Honor asking --
```

1              THE COURT:  We have eight jurors.  I assume you all

2    were prepared for 12.  I don't know to what extent it might

3    have affected how people use their peremptory challenges, but

4    I'm prepared to stop if I can get ten jurors out of this group.

5              Now, regarding the motion that's under consideration,

6    that will be under consideration, if that person is restored to

7    the jury, there will be 11.

8              MR. SMITH:  So I think amongst the defendants we have

9    conferred about going with less than 12 jurors.  Unfortunately,

10   it doesn't seem to be the case that we can get unanimous

11   consent to go with less than 12 jurors.  In fact, very few of

12   the defendants are actually in favor of going with anything

13   less than 12, Your Honor.  I'm sorry.

14             THE COURT:  All right.  Well, we then need how many

15   jurors to add up to get to 11 -- I mean, to 12.

16             Forget the one under.  We need four.

17             THE CLERK:  Four.  If we're not considering the one,

18   we need four.

19             THE COURT:  If we get four jurors, we'll -- then we

20   will take up the motion.  We will not swear the jury in,

21   obviously.  We don't even have them here.  We'll take up the

22   matter that's been raised, and if that is sustained, whoever

23   the 12th juror is will be eliminated, and the challenge will

24   take his place.

25             MS. DUNN:  Your Honor, in order to determine how to

1    exercise our strikes, we need to know whether the Court will go

2    with a ten- or 11-person jury.  That matter is within the

3    Court's discretion to do.  So we would just ask that the Court

4    rule on that and let us know so that we can know how to

5    exercise our strikes.

6           Of course, we don't need a jury of 12.  That's a

7    number the Court elected and can change.

8           THE COURT:  All right.

9           MS. DUNN:  And I think we'd like to get a jury set.

10          THE COURT:  Okay.  I am prepared to go with 11

11   jurors, okay?  I understand that we need, out of this group,

12   four -- three.  Three.

13          MS. DUNN:  If everyone uses their strikes, my

14   understanding is we end today with either ten or 11, depending

15   on whether the juror is instated and empaneled.  So if Your

16   Honor is comfortable with ten or 11, depending, then I think

17   that gives the parties the knowledge that they need to exercise

18   their strikes this afternoon.

19          THE COURT:  All right.  We're going with 11 jurors,

20   not considering the one that's under consideration.  If I

21   sustain your motion, grant your motion, we'll have 12.

22          MS. DUNN:  Hold on, Your Honor.  I'm getting a lot of

23   incoming over here.

24          MR. KOLENICH:  Your Honor, we're slightly confused as

25   well.  If we end up with ten and then you consider the Batson

1    and grant it, then we'll have 11.

2              THE COURT:  Right.

3              MR. KOLENICH:  If we end up with nine and you grant

4    the Batson, then we'll have ten; is that it?  We'll go with

5    ten?

6              THE COURT:  No.  We're going with 11.  If we end

7    up --

8              MR. SMITH:  12 is possible?  Is that what you're

9    saying?

10             THE COURT:  We'll try the case with 11.  It would be

11   12 if I grant plaintiffs' motion.

12             MR. KOLENICH:  Okay.  Thank you, Your Honor.

13             MR. CANTWELL:  Excuse me, but then don't we get our

14   peremptory strike back if you grant the Batson motion, which

15   we'd be striking off of the existing jury pool then?

16             THE COURT:  Well, you're using it now.  I mean, the

17   next -- the juror will already be selected because we have a

18   random list.  It's not just, you know, picking somebody at

19   random.  You will have already exercised --

20             MR. SPENCER:  But if you sustain their motion,

21   wouldn't we then be allowed to strike another potential juror

22   because --

23             THE COURT:  Well, theoretically.

24             MR. SPENCER:  Right.

25             THE COURT:  We're not picking an alternate.

```
 1              MR. SPENCER:  I understand that, but it seems like if
 2    you do not grant their motion, then that strike would remain.
 3    If you do grant their motion, then it seems to be only fair
 4    that you would give us another strike.
 5              THE COURT:  Well, we'll have to take up your motion
 6    first, if we're going to do that.
 7              MR. SPENCER:  Okay.
 8              MS. DUNN:  Your Honor, there's some confusion over
 9    here on the math.  So is there somebody on the defense side or
10    in this courtroom who --
11              THE COURT:  Well, look, I have to -- I want to see
12    the jury panel before I decide the motion.
13              MS. DUNN:  I understand that.  I understand that.
14    The question that --
15              THE COURT:  Okay.
16              MS. DUNN:  -- that people are struggling with, Your
17    Honor, is in order to exercise peremptory strikes with
18    knowledge and in an informed way, we need to know whether there
19    is a possibility that we're coming back tomorrow.  And if
20    there's a possibility that we're coming back tomorrow, we would
21    also need to know whether the Court is granting more strikes.
22    And without knowing that, we can't really know how to exercise
23    the strikes this afternoon.
24              THE COURT:  All right.  If I go with ten jurors, say,
25    today, we'll have four more than six.  We will have to come
```

1   back tomorrow to give everyone another peremptory challenge, to

2   give --

3              MR. SPENCER:  If we reach ten, we would come back

4   tomorrow and continue to select the jury; is that what you just

5   said?

6              THE COURT:  Yes.

7              MS. DUNN:  And Your Honor just said, to confirm, that

8   everybody gets another peremptory challenge tomorrow?

9              THE COURT:  No.  I can't confirm that.  I have to

10  look and see if the plaintiff gets one, gets another one, and

11  should I sustain your motion.

12             MR. CANTWELL:  I'm sorry.  If the motion is

13  sustained, we get our strike that we used back, right?  And

14  then -- so that seems to bear on the calculation of -- of our

15  value calculation in strikes as well.

16             MS. DUNN:  Just for the Court's understanding, we

17  looked into this.  It's not clear.  It's in the Court's

18  discretion whether defendants get it back or not.  There is

19  authority in the Eleventh Circuit where the party did not get

20  the challenge back because the Court did not want to reward

21  discriminatory conduct.  I can read the case name into the

22  record and hand it up, but for clarity, this is in the Court's

23  discretion.

24             THE COURT:  You know, one case -- I have to consider

25  what the law is.

1            Okay.  We're going to go through this process and see
2    how many jurors we select.  And then I'll -- if I have a motion
3    pending after that, I will take that up and then I will decide
4    if I have to come back tomorrow.  And then I will decide if the
5    plaintiff gets another strike.

6            MR. CANTWELL:  The plaintiff?

7            THE COURT:  I mean, if the defendant gets another
8    strike, and if the plaintiff gets another strike.

9            MR. SMITH:  I understand, Your Honor.

10           Your Honor, might I suggest just -- I understand that
11   everyone wants to act in the interest of judicial economy, and
12   if it's not necessary to bring jurors back, then it's not
13   necessary, but, you know, the litigation has been going on for
14   a while now, and everyone --

15           THE COURT:  Oh, come on.  Don't -- don't.  Don't.  I
16   don't want to hear that kind of --

17           MR. SMITH:  No, Your Honor.  I was saying everyone
18   wants to have --

19           THE COURT:  Well, I'm trying to give you everything
20   you possibly can have.

21           MR. SMITH:  Of course, Your Honor.  Of course.

22           THE COURT:  I'm not trying to deny anybody anything.
23   That's part of the problem.

24           MR. SMITH:  Of course, Your Honor.  I don't think
25   that, Your Honor.  But if we all came back tomorrow and just

1   did another day of jury selection, would that be the worst

2   thing?

3           THE COURT:  Well, I told you we're going to go

4   through right now and pick the jury with the idea we want 12

5   jurors.  And I will decide how many jurors we have after we

6   make the selections today and then decide whether we're coming

7   back tomorrow.  And I will decide before the lawyers leave,

8   maybe, whether you get another strike tomorrow.

9           MR. SMITH:  I understand.

10          THE COURT:  And you may not -- let's go.

11          Can we call the jury back now?

12          Are you all able to get in touch with Mr. ReBrook?

13          MR. SMITH:  I have called him twice today, Your

14   Honor.  I'll call him again this evening, but I haven't heard

15   any -- nobody picked up and nobody has called me back.

16          THE COURT:  The hospital may take your phones up

17   there.  I'm not sure.

18          MR. SMITH:  That's possible.  That's possible.  I'm

19   hoping that he's okay.  I will continue to try to get in touch

20   with him this evening, Your Honor.

21          THE COURT:  All right.  Well, maybe -- maybe they'll

22   tell the marshals whether he's been admitted to the hospital

23   and make we can get someone to go talk to him, if he's mended.

24   **(Jury in, 6:25 p.m.)**

25          THE COURT:  All right.  You all may have a seat.

```
 1                We are about to finish this process as far as you all
 2   are concerned, and the lawyers at this time will be taking
 3   their strikes.  The clerk will tell you that you may disregard
 4   the numbers as they're called.
 5                You might explain to them, Heidi.
 6                THE CLERK:  Yes.  So far today you have been referred
 7   to by your juror number we gave you.  During this process,
 8   we're going to be using a randomized list.  So you'll hear some
 9   numbers, but they will not reflect the number on your badge.
10                THE COURT:  All right.  You may proceed.
11                THE CLERK:  Plaintiffs, Juror Number 2, pass or
12   challenge?
13                MS. DUNN:  Pass.
14                THE CLERK:  Defendants, Juror Number 2, pass or
15   challenge?
16                MR. JONES:  Pass.
17                THE COURT:  Defendants, Juror Number 3, pass or
18   challenge?
19                MR. JONES:  Pass.
20                THE CLERK:  Plaintiffs, Juror Number 3, pass or
21   challenge?
22                MS. DUNN:  Pass.
23                THE CLERK:  Plaintiffs, Juror Number 6, pass or
24   challenge?
25                MS. DUNN:  Challenge.
```

177

```
1              THE CLERK:  Defendants, Juror Number 8, pass or

2   challenge?

3              MR. JONES:  Pass.

4              THE COURT:  Plaintiffs, Juror Number 15, pass or

5   challenge?

6              MS. DUNN:  Challenge.

7              THE COURT:  I'm sorry.  Did you say challenge?

8              MS. KAPLAN:  You meant 8, right?

9              THE CLERK:  Yes.  I'm sorry.  Pass or challenge?

10             MS. DUNN:  Challenge to Juror Number 8.

11             THE CLERK:  Thank you.

12             Plaintiffs, Juror Number 15, you said challenge,

13   correct?

14             MS. KAPLAN:  Hold on a second, please.

15             THE CLERK:  Or were you going by Number 8?

16             MS. DUNN:  I was going by Number 8.

17             THE CLERK:  I'm sorry I confused you.

18             Plaintiffs, Juror Number 15, pass or challenge?

19             MS. DUNN:  Your Honor, with the Court's indulgence,

20   we need a moment.

21             (Pause.)

22             MS. DUNN:  Thank you, Your Honor.

23             Juror Number 15, challenge.

24             THE CLERK:  Defendants, Juror Number 15, pass or

25   challenge -- well, never mind.
```

1              Defendants, Juror Number 16, pass or challenge?

2              MR. JONES:  Challenge.

3              (Pause.)

4              THE CLERK:  Jurors, if I call your number, please

5    stand.

6              265, 243.

7              THE COURT:  All right.

8              THE CLERK:  If I have not called your name, just

9    remain seated at the moment.

10             THE COURT:  Those two jurors are to go across the

11   hall to the clerk's office.

12             All right.  We only have ten jurors?

13             THE CLERK:  Correct, Your Honor.

14             THE COURT:  You members of the jury panel who are not

15   serving now are excused.  If your name was not called, you are

16   excused and you will not have to return.

17             Thank you very much for being here.  We couldn't have

18   gotten along without you, and we couldn't have picked a jury,

19   of course, without you.  Even though you're not serving, you

20   have performed a service to your community, and we appreciate

21   it very much and regret the inconvenience that was caused to

22   you.

23             You may leave now.

24   **(Jury out, 6:35 p.m.)**

25             THE COURT:  All right.  Having seen -- well, it seems

179

1    to me we need to call in a jury panel in the morning.

2           I don't think we can really start until we know

3    something about Mr. ReBrook, anyway.

4           THE CLERK:  We have two already on call for tomorrow.

5           THE COURT:  You have what?

6           THE CLERK:  Two on call for tomorrow.

7           THE COURT:  Two panels?

8           THE CLERK:  Yes, sir.

9           THE COURT:  I'm hoping we can get the panel, get to a

10   full jury by noon, but we don't know whether we can start or

11   not if we don't know about him.

12          Okay.  Is that all?

13          MR. CANTWELL:  Judge, will the defendants have an

14   opportunity to respond in writing to plaintiffs' Batson

15   challenge on the one juror before you decide?  Should we take

16   that up verbally?

17          THE COURT:  I mean, you will have a right to respond

18   after we -- but I'm not saying you have a right to respond in

19   writing.

20          MR. CANTWELL:  So --

21          THE COURT:  You can file --

22          MR. CANTWELL:  I can say something right now or I

23   could write something when I get back to my cell later.

24          THE COURT:  Write something and bring it up tomorrow.

25          MR. CANTWELL:  Tomorrow?

1          MR. SMITH:  We're happy to argue it orally.

2          THE COURT:  We don't have the final panel yet.

3          MR. SMITH:  Thank you.

4          THE COURT:  Okay.  All right.  I think we can adjourn

5    court for the case matters.  I do have an administrative matter

6    that I need to bring up, but it doesn't have any case.  So if

7    we can shut down all the outside lines --

8          MS. DUNN:  Your Honor, before we do that, we wanted

9    to raise with the Court a request for additional strikes for

10   tomorrow for the parties because the Court's original order was

11   two days of jury selection and six strikes.  So if we're going

12   into another day in order to get 12, we seek additional strikes

13   from the Court.

14         MR. SMITH:  Your Honor, I sort of interpreted that as

15   two days of jury selection, meaning the Court thinks that that

16   will be the whole jury selection, and then you get six

17   strikes --

18         THE COURT:  I don't think the fact that it's

19   three days means anything.

20         MS. DUNN:  No, but I think the sensitive nature of

21   this case and the fact that we have had such a difficult time

22   over the course of two days finding qualified jurors --

23         THE COURT:  Well, I understand that.  And I will put

24   that off until tomorrow because want to research and be sure

25   regarding whether the plaintiff might be entitled to another

```
 1    strike.  And if -- you know, I don't -- I don't have any
 2    problem giving each side equal strikes, but I want to check to
 3    be sure that the plaintiff -- if the plaintiff is entitled to
 4    an extra strike.  Should I sustain the motion?  I do want to
 5    know -- research that.
 6             MS. DUNN:  Understood, Your Honor.
 7             THE COURT:  So we'll do that in the morning.
 8             MS. DUNN:  I think Your Honor means if the defendant
 9    is entitled to another strike.  But if that's the case, then I
10    understand.
11             (Off the record.)
12             THE COURT:  Do you have a person on your staff by
13    this name of Morgan Awner?
14             MR. DERISE:  Morgan Awner, A-W-N-E-R?
15             MS. KAPLAN:  Yes.
16             THE COURT:  Is that person here in the courthouse?
17             MS. KAPLAN:  She's a paralegal.  Yes, Your Honor.
18             THE COURT:  This person is reported to be asking
19    questions concerning where we have the jurors placed and this
20    sort of thing, prying into information which we believe that
21    you have no right to.
22             MS. KAPLAN:  Your Honor, I'm speaking in a vacuum.
23    She's probably worried about not passing by jurors, is my best
24    assumption.  I don't think it's anything other than that.
25             THE COURT:  Take your mask off, please.
```

1              MS. KAPLAN:  Sorry, Your Honor.

2              THE COURT:  Why would she be going up and talking to

3    someone in the hall about where the jurors are and where --

4              MS. KAPLAN:  So we have instructed people, as is

5    customary, to make sure when they travel in the hallways to

6    avoid jurors.  I assume that's what she was asking.

7              THE COURT:  Well, why -- that doesn't sound like --

8    she wanted to know where they were, where they were taking

9    breaks, and this sort of thing.

10             MS. KAPLAN:  I have no idea why she did that.  If she

11   did, no one here told her to do that, I can't imagine, your

12   Honor.

13             THE COURT:  We have another issue that one of your

14   attorneys apparently went into the Court's network and shut it

15   down for a while.  Is that correct?

16             Plugged into a docking station that caused problems

17   for our court network.

18             MS. KAPLAN:  Again, Your Honor, I have absolutely no

19   idea.  I've been here all day.  I'm low-tech myself, but we can

20   certainly figure out what, in fact, happened.

21             THE COURT:  Well, instruct the people they are not to

22   fish around for any information concerning where people --

23   certain people are located, because this is not the first

24   instance we've had with this.  And the marshals have been

25   reporting it's actually caused disruption.  It's caused us to

183

1   have to move people from different locations because this

2   information has gotten out.  And it's considered a security

3   breach.

4           MS. KAPLAN:  Of course, Your Honor.  We will

5   absolutely make sure that -- I am quite confident that wasn't

6   the intent, but we will absolutely make sure.

7           MR. SPENCER:  Your Honor, am I correct in

8   understanding that she gained access or attempted to gain

9   access?

10          THE COURT:  No.  No.  That's not -- no.  The only

11  reason I leave all of you in here, I don't want to do

12  anything -- you know, I don't want to be having *ex parte*

13  communications.  That's all.  We don't know there was any

14  nefarious purpose regarding the recharging.  Could have been an

15  accident.  The person may not have known what was going on.

16          MS. KAPLAN:  As an officer of the court, Your Honor,

17  I'm quite confident there was no nefarious purpose, but we will

18  certainly inquire and figure out what happened.

19          THE COURT:  All right.  And instruct the people not

20  to ask court staff questions about where other persons are

21  located.

22          MS. KAPLAN:  You can be 100 percent confident, Your

23  Honor, that I will do that.

24          THE COURT:  Is there anything else you think we need

25  to take up?

1           All right.  Thank you all.

2           MS. DUNN:  Your Honor --

3           THE COURT:  We'll recess again until 9:30 tomorrow.

4           MS. DUNN:  Your Honor -- I'm sorry.  I don't want to

5    hold everyone up after a long day, I promise, but it is very

6    important that we say the following, you know, on the record:

7    Our position on the challenge that we've made, the Batson

8    challenge, is that the law says that it needs to be decided as

9    soon as possible and right away for a variety of reasons.

10          So I understand the desire of the Court to recess.  I

11   don't want to waive that argument.  And so if the Court --

12          THE COURT:  Okay.  But I could decide it right away

13   against you.  Now, I want to --

14          MS. DUNN:  I'm not asking for that.

15          THE COURT:  What I'm saying is, I think you did not

16   state everything that the Court needs to do.  The law is the

17   Court should consider all of the circumstances, and one of

18   those circumstances is of necessity -- I think; it may not be

19   so relevant, but whether there is a pattern of -- which it's

20   not -- but the Court has to consider all of the circumstances.

21          MS. DUNN:  So --

22          THE COURT:  And they're not all in.

23          MS. DUNN:  I understand, Your Honor.

24          THE COURT:  I know you're not waiving anything.

25   Don't worry about that.  I know.  The Fourth Circuit doesn't

1    let this sort of thing pass by on some waiver.

2            MR. SMITH:  Your Honor, we're happy to argue this

3    first thing tomorrow morning, if you'd like.

4            MS. DUNN:  Please.

5            Two things, Your Honor:  One is we are asking the

6    Court to take this up right away in the morning; obviously not

7    now.  And the only point that I'll make is just to refer Your

8    Honor to our letter and the argument about the right running to

9    the juror, which is a very important body of law that

10   originated with the Supreme Court.

11           THE COURT:  Okay.  Anything else that has to be said

12   this evening?

13           MS. DUNN:  One related question that we have is, Your

14   Honor earlier said that if you take up the challenge and we

15   have 11, that that would be sufficient, and we just want to get

16   clarity from the Court about this.

17           THE COURT:  Well, I think I'll have to clarify that

18   in the morning.

19           MS. DUNN:  Thank you, Your Honor.  We appreciate it.

20           MR. SPENCER:  Is it reasonable to assume that the

21   trial proper will begin on Thursday?

22           THE COURT:  It seems very -- it's going to be very

23   difficult to get all the jury back in here by Wednesday -- by

24   tomorrow.

25           MS. DUNN:  I think the parties would agree, based on

186

1    Mr. Spencer's question and a conversation I've had with other

2    counsel, that if we're back here tomorrow morning, we would

3    probably like to start Thursday morning.

4              THE COURT:  All right.  I think you can count on not

5    calling witnesses.

6    (Proceedings adjourned,  6:50 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Lisa M. Blair, RMR/CRR, Official Court Reporter for the United States District Court for the Western District of Virginia, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/s/ Lisa M. Blair                    Date: October 26, 2021