Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1               UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF VIRGINIA
2               CHARLOTTESVILLE DIVISION

3 **************************************************************

4 ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                        OCTOBER 27, 2021, 9:39 AM
5                        JURY TRIAL, DAY 3
        Plaintiffs,
6 vs.

7                        Before:
                        HONORABLE NORMAN K. MOON
8                        UNITED STATES DISTRICT JUDGE
  JASON KESSLER, ET AL.,     WESTERN DISTRICT OF VIRGINIA
9

        Defendants.
10

11 **************************************************************

12 APPEARANCES:

13 For the Plaintiffs:      ALAN LEVINE, ESQUIRE
                        COOLEY LLP
14                     1114 Avenue of the Americas, 46th
                     Floor
15                     New York, NY  10036
                     212.479.6260
16

                     DAVID E. MILLS, ESQUIRE
17                     COOLEY LLP
                     1299 Pennsylvania Avenue, NW,
18                     Suite  700
                     Washington, DC  20004
19                     202.842.7800

20

21

22 Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                 255 West Main Street, Suite 304
23                Charlottesville, Virginia  22902
                 434.296.9284
24

  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25 TRANSCRIPT PRODUCED BY COMPUTER.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  APPEARANCES CONTINUED:

2  For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                ROBERTA A. KAPLAN, ESQUIRE
3                               Kaplan Hecker & Fink LLP
                                350 Fifth Avenue, Suite 7110
4                               New York, NY  10118
                                212.763.0883
5
                                KAREN L. DUNN, ESQUIRE
6                               WILLIAM A. ISAACSON, ESQUIRE
                                JESSICA E. PHILLIPS, ESQUIRE
7                               Paul, Weiss, Rifkind, Wharton &
                                Garrison LLP
8                               2001 K Street, NW
                                Washington, DC  20006
9                               202.223.7300

10
    For the Defendants:         DAVID L. CAMPBELL, ESQUIRE
11                              Duane, Hauck, Davis, Gravatt &
                                Campbell, P.C.
12                              100 West Franklin Street, Suite 100
                                Richmond, VA  23220
13                              804.644.7400

14                              CHRISTOPHER CANTWELL, PRO SE
                                #00991-509
15                              USP Marion
                                4500 Prison Road, PO Box 2000
16                              Marion, IL  62959

17                              BRYAN J. JONES, ESQUIRE
                                Bryan J. Jones, Attorney at law
18                              106 W. South Street, Suite 211
                                Charlottesville, VA  22902
19                              540.623.6952

20                              JAMES E. KOLENICH, ESQUIRE
                                Kolenich Law Office
21                              9435 Waterstone Blvd., Suite 140
                                Cincinnati, OH  45249
22                              513.444.2150

23                              JOSHUA SMITH, ESQUIRE
                                Smith LLC
24                              807 Crane Avenue
                                Pittsburgh, PA  15216
25                              917.567.3168

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   APPEARANCES CONTINUED:

2

For the Defendants:        RICHARD SPENCER, PRO SE
3                          P.O. Box 1676
                           Whitefish, MT  59937
4

5   ALSO PRESENT:

6   Renato Stabile, Esquire

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  (Proceedings commenced, 9:39 a.m.)

2          THE COURT:  Good morning.  Call the case, please.

3          THE CLERK:  Yes, Your Honor.  This is Civil Action

4  Number 3:17-cv-00072, Elizabeth Sines and others versus Jason

5  Kessler and others.

6          THE COURT:  Plaintiffs ready?

7          MS. DUNN:  Yes, we are.

8          THE COURT:  I don't see Mr. Smith.

9          MR. SPENCER:  We are ready.

10          THE COURT:  Now, it's 9:39.  Court was to start at

11  9:30.

12          Before we begin, I will remind everyone that under

13  Standing Order 2020-12 and 2020-13, the Court's prohibition

14  against recording and broadcasting court proceedings remains in

15  force.  Attorneys, parties, or their staff and any members of

16  the public or press accessing this proceeding today may not

17  record or broadcast it.  This means no photography, no using

18  any video or audio recording device, no rebroadcasting, live

19  streaming, or otherwise disseminating any live or recorded

20  video or audio of this proceeding.

21          There are several matters that we need to begin with

22  in the next panel -- before we begin with the next panel.

23  There was a request yesterday by the plaintiff for additional

24  peremptory challenges.  I have decided against anyone obtaining

25  additional peremptory challenge in the economy of trying to get

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   this thing selected.

2          Under Rule 47(b) of 28 U.S.C. 1870, it requires the

3   court to allow the parties in a civil case at least peremptory

4   challenges -- strikes for each side.  And Section 1870 also

5   states that in cases where there are multiple defendants or

6   plaintiffs the Court may allow additional peremptory challenges

7   and permit them to be exercised separately or jointly.

8          In this case before we began selection the Court in

9   its pretrial order of October 7 stated each side is entitled to

10  six strikes, and that plaintiffs have six and defendants have

11  six to be exercised jointly following consultation among the

12  defendants.  Each side is already given double the default

13  number in a civil case.  And although the Court did say it

14  expected jury selection to take two days, the Court does not

15  believe that in any way the number of strikes was necessarily

16  tied to the number of days of jury selection.

17         We started out with the notion that we would have

18  six -- six panels.  We've had four.  And I know that jury

19  selection has been difficult in this case, but just based on

20  the additional information now available to the Court in light

21  of the experience of jury selection, the Court is, in an effort

22  to get this case done, the Court is not going to grant an

23  additional peremptory challenge to each party.

24         Furthermore, there was a question if a *Batson*

25  challenge is granted, whether the non-moving party would get an

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  additional jury -- or get their strike back.  And that -- the

2  Court answered that question no because that would not be very

3  good policy.  There would be no disincentive for violation of

4  *Batson*.  You could just throw it out and see what happens and

5  there would be no -- as I say, no disincentive just to give a

6  violation at trial.

7          The plaintiffs have made a *Batson* challenge, and

8  there could be more at the end of the selection before the jury

9  is empaneled.  And the Court has held in its pretrial order of

10 October 7 that defendants were to exercise their peremptory

11 challenges jointly upon consultation among the defendants and

12 *pro se* defendants.  It would appear most sensible following

13 from that -- but let me know if defendant has any objection --

14 that defendants speak with one voice on this issue.  Can the

15 defendants agree on one voice to speak on their behalf?

16          MR. JONES:  I don't know if we can agree, but I

17 haven't been able to address the Court yet on this issue.

18 There was a sidebar over there, so I would like the chance to

19 address the Court.

20          THE COURT:  Okay.  We're not going to do it right

21 now.  But anyway, on Monday the defendants began offering

22 their -- some reasons concerning the striking of a particular

23 juror.  And while I cannot ignore what has already been said, I

24 want to give the defendants the opportunity to state their

25 collective reasoning.  There are probably, what, 20 defendants?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  So I do want to give them the opportunity to state their

2  collective reasoning.  In light of that posture, I'm not going

3  to take up this issue right now, but when we have a break, you

4  all can start thinking about what you're going to do.

5              I think we're ready to call the jury.  Call the jury.

6              (Pause.)

7              All right.  Are we ready to call the jury?

8              THE CLERK:  Yes, Your Honor.

9              THE COURT:  Is the jury on the way?

10             Am I correct that the plaintiff has no peremptory

11 strikes left, and the defendant one?  So if we get three people

12 qualified, we will potentially have enough.

13             MS. DUNN:  Yes, Your Honor.

14             THE COURT:  Or four.

15             We will take up the -- take up the *Batson* motion

16 before the final strike after we can see who the potential --

17 depending on who the last juror is.

18             MS. DUNN:  Understood, Your Honor.

19             MS. KAPLAN:  Your Honor, can I bring up one

20 housekeeping matter?  So Your Honor may be surprised to hear

21 this, but I think there was unanimous agreement among the

22 parties that we would like to start opening arguments tomorrow

23 morning just for scheduling purposes if Your Honor -- if it

24 would be okay with Your Honor?

25             THE COURT:  Yes.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        MS. KAPLAN:  Thank you, Your Honor.

2   **(Jury in, 9:50 a.m.)**

3        THE CLERK:  I'd remind counsel you may want to hit

4   your buttons when you're speaking amongst yourselves on both

5   sides.

6        MR. SMITH:  Right.  Of course.

7        THE COURT:  Good morning, ladies and gentlemen.

8   Everyone will keep their mask on covering their nose and mouth

9   while they're in the courtroom, except when speaking.  If

10  you're called upon to speak, we'll ask you to remove your mask

11  so that we can understand better what is being said.

12        I'll ask the clerk to swear the jury.

13        THE CLERK:  Ladies and gentlemen, this is Civil

14  Action Number 3:17-cv-00072, Elizabeth Sines and others versus

15  Jason Kessler and others.  As I call your number, please stand

16  and remain standing until I call the next number:  275, 277,

17  278 -- you may sit back down -- 281, 288, 289, 291, 294, 299,

18  301, 304.

19        Ladies and gentlemen, if you would please stand and

20  be sworn.

21        Please raise your right hand.

22        Do you and each of you solemnly swear that you will

23  make true answers to such questions as may be propounded to you

24  touching your qualifications to serve as a juror in this Court?

25        You do.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          You may be seated.

2          Ladies and gentlemen, in order to serve as a juror in

3 this Court, you must be a citizen of the United States who has

4 attained the age of 18 years and has resided in the Western

5 District of Virginia for one year.  You must not be under

6 charge or have been convicted in any court, state or federal,

7 of a crime punishable by imprisonment for a period of more than

8 one year, unless your civil rights have been restored.  You

9 must be able to read, write, and understand the English

10 language and must be most physically and mentally able to

11 render efficient jury service.

12          Do you and each of you qualify on these grounds?

13          You do.

14          I will now ask you several questions concerning the

15 case which is to be tried today for the purpose of ascertaining

16 whether you can hear the facts fairly and impartially and

17 render a just verdict.

18          The plaintiffs in this case are Elizabeth Sines, Seth

19 Wispelwey, Marissa Blair, April Muñiz, Marcus Martin, John Doe,

20 Natalie Romero, Chelsea Alvarado, and Thomas Baker.

21          The plaintiffs are represented by counsel seated to

22 my left.  Counsel will now identify themselves by name and firm

23 for the record.

24          MS. DUNN:  Good morning.  Karen Dunn from the law

25 firm of Paul Weiss.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MR. STABILE:  Renato Stabile from New York, New York.

2          MS. KAPLAN:  Roberta Kaplan from Kaplan

3    Hecker & Fink.

4          MR. ISAACSON:  Bill Isaacson from the law firm of

5    Paul Weiss.

6          MR. MILLS:  David Mills from the law firm of Cooley,

7    New York.

8          MR. LEVINE:  Alan Levine from the law firm of Cooley,

9    New York.

10         MR. BLOCH:  Good morning.  Michael Bloch from Kaplan

11   Hecker & Fink, New York, New York.

12         MS. HONIG:  Faye Honig, New York, New York.

13         THE CLERK:  The defendants in this case are Jason

14   Kessler, Richard Spencer, Christopher Cantwell, James Alex

15   Fields, Jr., Vanguard America, Andrew Anglin, Moonbase

16   Holdings, LLC, Robert "Azzmador" Ray, Nathan Damigo, Elliott

17   Kline, Identity Evropa, Matthew Heimbach, Matthew Parrott,

18   Traditionalist Worker Party, Michael Hill, Michael Tubbs,

19   League of the South, Jeff Schoep, National Socialist Movement,

20   Nationalist Front, Augustus Sol Invictus, Fraternal Order of

21   the Alt-Knights, Loyal White Knights of the Ku Klux Klan, and

22   East Coast Knights of the Ku Klux Klan.

23         Defendants are appearing both with counsel or on

24   their own behalf, and they're seated to my right or appearing

25   by Zoom.  Counsel and defendants will now identify themselves

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  for the record.

2          MR. KOLENICH:  Good morning.  I'm Jim Kolenich,

3  Kolenich, Kolenich Law Offices in Cincinnati, Ohio.  I

4  represent Jason Kessler, Nathan Damigo, and Identity Evropa.

5          Also, this morning I'm filling in for an attorney who

6  cannot be present.  That attorney's name is William ReBrook.

7  His clients are National Socialist Movement, Nationalist Front,

8  and Jeff Schoep.

9          MR. JONES:  Bryan Jones, Charlottesville, Virginia.

10  I represent Michael Hill, Michael Tubbs, and League of the

11  South.

12          MR. SMITH:  Good morning.  Joshua Smith, Smith LLC,

13  Pittsburgh, Pennsylvania.  I represent David Matthew Parrott,

14  Matthew Heimbach, and Traditionalist Worker Party.

15          MR. SPENCER:  My name is Richard Spencer.  I am from

16  Whitefish, Montana, and I am acting on by own behalf.

17          MR. CANTWELL:  My name is Christopher Cantwell and

18  I'm representing myself.

19          MR. CAMPBELL:  I'm David Campbell for James Fields,

20  from Richmond, Virginia.

21          THE CLERK:  The purpose of my mentioning this is to

22  ask each of you whether you are related by blood or marriage to

23  the plaintiffs, defendants, or any of the attorneys in this

24  action.  If you are, please state so to the judge.

25          You are not.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        Your Honor, do you have additional questions?

2        THE COURT:  Before we begin the process of jury

3   selection, I first wish to read a quick statement giving you a

4   brief overview of what steps the Court has taken, and is

5   taking, to minimize the risk of spread of COVID-19.

6        First, the Standing Order of this Court -- Standing

7   Orders of this Court require everyone to wear a mask that

8   covers their nose and mouth while in public areas of the

9   courthouse unless a court official specifically directs you

10  otherwise.  That applies to everyone, whether vaccinated or

11  unvaccinated.

12       Second, access to the courthouse has been limited to

13  persons involved in this case.  That includes court staff,

14  litigants, attorneys, witnesses, and limited media.

15       Third, the Court has ordered all persons in the

16  courtroom to practice social distancing, except counsel,

17  litigants, and court staff.

18       Fourth, pursuant to the Court's Standing Orders, all

19  court employees, including judges, chamber staff, and staff of

20  the clerk's office, must either be vaccinated or have conducted

21  a COVID-19 test at least weekly.

22       Fifth, this Court has specifically ordered all

23  litigants, lawyers, witnesses, and court staff in this case to

24  attest before coming into the courthouse that they are either

25  vaccinated or have tested negative within three days of their

13

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  appearance.  They will have a continuing duty to do so

2  throughout the trial.  And if they are appearing based on

3  negative -- strike that.

4        They will have a continuing duty to do so throughout

5  trial if they are appearing based on negative COVID tests.  If

6  there are any witnesses, parties, or attorneys who can't meet

7  those rules, they will testify by Zoom.

8        Sixth, the Court has ordered extra cleaning of touch

9  points, frequently touched surfaces, and bathrooms during this

10  trial.

11        And lastly, specifically for jurors, the Court will

12  require all jurors, of which the Court expects there will be 12

13  jurors, to be always masked.  Jurors will also be socially

14  distanced in the gallery.  When you're sitting to hear the

15  case, you will be in the general area you are sitting in now.

16        Before we begin the process of jury selection, I wish

17  to give you a general overview of this case so that you know

18  what it is about and can better answer my questions.

19        This is a civil lawsuit brought by multiple

20  plaintiffs against multiple defendants, including individuals

21  and organizations, based on events that occurred in

22  Charlottesville, Virginia in August of 2017.

23        The plaintiffs in this case claim that the defendants

24  and others conspired to commit socially motivated violence at

25  an event the defendants -- I'm sorry.  I misspoke.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          The plaintiffs claim that the defendants and others

2    conspired to commit racially motivated violations at an event

3    the defendants called Unite the Right, which was held in

4    Charlottesville on August 11 and 12, 2017.  Plaintiffs allege

5    that the defendants helped to plan, promote, or carry out

6    racially motivated violent acts during that event, and in doing

7    so caused plaintiffs physical, emotional, and monetary harm.

8    Such acts include a violent torch march on August 11 and

9    various acts of violence on August 12, including a car attack

10   that drove through a large crowd of people, injuring seven of

11   the nine plaintiffs in this case.

12          Defendants deny that they conspired with anyone to

13   commit violence, or that they are responsible for the injury or

14   damages suffered by plaintiffs.

15          If you are selected to serve as a juror in this case,

16   you will be asked to decide whether the plaintiffs proved that

17   the defendants engaged in a conspiracy to commit racially

18   motivated violence and harmed plaintiffs as a result.

19          The plaintiffs have also asserted other federal and

20   state law claims against the defendants.  Later, I will explain

21   the elements of each of plaintiffs' claims in greater detail to

22   those of you who serve on the jury.

23          It is estimated that this case will last four weeks,

24   including this week.  The trial will take place Monday through

25   Friday, and the final scheduled trial date being Friday,

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   November 19.  I will start court at 9 o'clock and intend to

2   stop every day by 5 o'clock.

3          Soon, the Court will ask you some questions

4   concerning your potential service as a juror in this case.

5   This process of questioning jurors is referred to as voir dire.

6   There are several reasons for these questions.

7          First, it may be that, although otherwise qualified,

8   some of you may not be able to sit in this particular case for

9   any variety of reasons.  We need to ask questions to determine

10  your eligibility.

11         Also, under the rules that govern jury selection in

12  this Court, the parties play a role in choosing the jury that

13  is to try their case.  That is why we have more of you here

14  than we really need to sit on the jury.  Under the rules, the

15  parties are entitled to exercise strikes to eliminate persons

16  from the jury panel, and then the remaining jurors will hear

17  the case.  The parties need to know more about you in order to

18  make intelligent decisions about who to strike.

19         The Court will be proceeding with this -- conducting

20  jury selection in the following manner:  I will call each

21  prospective juror in for specific follow-up questions, if any,

22  that I might have.  Throughout this process the clerk and court

23  will refer to you by juror number, not your name.  That is a

24  step we sometimes take for the sake of our prospective jurors

25  and their privacy, particularly so members of the media would

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  not be tempted to ask them questions.  So, if you could, please

2  also refer to yourself whenever needed by juror number.

3         For preliminary questions, if the clerk or the Court

4  asks you a question and you have a response to the question,

5  please raise your hand and you will be called on.  So if the

6  Court asks "are you here today to be considered to serve as a

7  juror in this case," you would all raise your hand.

8         If you feel your answer to any question is

9  particularly personal in nature, you may ask to speak with me

10 and the attorneys privately; however, just so you are aware,

11 for the most part, I do plan to mostly conduct any specific

12 questioning with each prospective juror individually without

13 the prospective jurors -- other prospective jurors in the

14 courtroom.

15        We will now begin the process of selecting the jury

16 to hear this case.

17        You have heard the clerk read the names of the

18 attorneys involved in the case.  I will now ask the plaintiffs'

19 counsel to read for you a list of all the witnesses they may

20 call in the case.  And if you know any of these witnesses,

21 recognize their names as persons you know, I'll ask you after

22 she's called their names to raise your hand and let me know

23 who, if any, you know.

24        MS. DUNN:  Thank you, Your Honor.

25        Chelsea Alvarado, Jessica Alvarado, Thomas Baker,

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  Marissa Blair, Julie Convisser, Diane D'Costa, Stephen Fenton,

2  Allen Groves, Deborah Lipstadt, Marcus Martin, April Muñiz,

3  Sharon Reavis, Natalie Romero, Peter Simi, Elizabeth Sines,

4  Devin Willis, Seth Wispelwey, Nadia Webb, David Weiss, Erica

5  Alduino, Robert "Ike" Baker, Patrick Casey, Michael Chesny,

6  Burt Colucci, Benjamin Daley, Shane Duffy, Samantha Froelich,

7  Bradley Griffin, Dillon Hopper, Vasilios Pistolis, and Thomas

8  Rousseau.

9          THE COURT:  All right.  Does any prospective juror

10  know any of the persons who were named on that list?  If so,

11  raise your hand.

12          All right.  I'll ask -- did someone -- the

13  gentleman -- or lady; I can't see.  I'm sorry.

14          Would you tell us the name of the person you might

15  know?

16          MALE JUROR:  Thank you, sir.  Can you hear me?  I can

17  just speak loudly.

18          I'm just not sure that I wouldn't recognize someone,

19  just know their face and know them from being in the community

20  and have a relationship with them, but not recognize their

21  name.

22          THE COURT:  Well -- well, did you recognize --

23          MALE JUROR:  If it's just that we just -- as long as

24  we can't identify the person by name, I'm fine.

25          THE COURT:  Well, is there anybody -- I suppose

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  that's -- everybody, probably, would run that risk, but you'll

2  have to tell -- if you serve on the jury, and you recognize

3  somebody that you know, you can bring it up to the Court at

4  that time, but at this point there's not much we can do about

5  that.

6          Defense counsel?

7          MR. KOLENICH:  Thank you, Your Honor.

8          Wes Bellamy and Police Detective Steve Young.

9          THE COURT:  Do any of you know those two persons?

10         Yes?

11         MALE JUROR:  I'm familiar with Wes Bellamy.

12         THE COURT:  All right.  Thank you.  We'll take that

13 up -- we'll go in more detail about that later.

14         MR. JONES:  Richard Hamblin and Charlottesville

15 Police Sergeant William Newberry.

16         THE COURT:  Does anyone know either of those persons?

17         Okay.  Anyone else?

18         MR. KOLENICH:  Your Honor, I think one of the jurors

19 had something for the last group of names.

20         MALE JUROR:  I'm familiar with Wes Bellamy.

21         THE COURT:  Okay.  Thank you.  We'll take that up

22 later.

23         All right.  Did any of the other defendants wish to

24 have any witnesses they wish to name?

25         Apparently not.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          All right.  That concludes this portion of the

2     selection process, and the Court intends to conduct now the

3     individual questioning of the jurors.

4          In a minute I will ask the CSOs to take you back --

5     back out of the courtroom.  Then I will bring each member of

6     the panel, starting with the lowest juror pool number for this

7     panel, back into the courtroom individually.

8          All right.

9          But I will caution all of you now:  When you come in,

10    from now on do not discuss the case with anyone.  Do not

11    discuss anything about the jury selection process or the

12    questionnaires.  Do not -- if you come into the courtroom and

13    answer questions, do not discuss those questions with anyone

14    and your answers with anyone when you go back to join the other

15    jurors.

16         So I'll let them follow the marshal at this time.

17    **(Jury out, 10:12 a.m.)**

18              THE COURT:  All right.  Call the first --

19              MS. DUNN:  Your Honor, we are missing a questionnaire

20    for Juror 294.  The defense may also be missing that

21    questionnaire.

22              MR. CANTWELL:  I am, Judge.

23              MR. JONES:  I'm missing 278, 288, 299, and 301.

24              MR. CANTWELL:  I stand corrected, actually.  I've got

25    294 here.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  Who are the first three jurors we're

2   going to call?

3          THE CLERK:  275.

4          THE COURT:  Does everyone have 275?

5          MS. DUNN:  Yes, Your Honor.

6          MR. CANTWELL:  Yes.

7          MR. JONES:  Yes.

8          THE COURT:  Who's the next one?

9          THE CLERK:  277.

10          THE COURT:  277?

11          MR. JONES:  Yes.  We have that one.

12          MS. DUNN:  Yes, Your Honor.

13          THE COURT:  And who's next?

14          THE CLERK:  278.

15          MR. JONES:  I don't have 278.

16          MR. SPENCER:  I don't have that, either, apparently.

17          THE COURT:  All right.  Do we know if we have a

18   questionnaire for 278?

19          THE CLERK:  Checking.

20          (Pause.)

21          THE COURT:  Well, while they're looking for that, we

22   can call 275 in and move on.  But if 278 has not filed -- not

23   brought in a questionnaire, he should have filled one out this

24   morning.

25          None of you have 278; is that correct?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MR. SMITH:  That's correct, Your Honor.

2          THE COURT:  All right.

3          You may take your mask off.

4          State your jury number.

5          MALE JUROR:  275.

6          THE COURT:  All right.  You heard me say this morning

7    that this trial is set for four weeks, including this week.

8    Recognizing the not insubstantial burden this case would place

9    on you, but recognizing also that jury service is a vital civic

10   duty, does this particular timing, a four-week trial, present a

11   real hardship to you that wouldn't be common to other persons?

12         MALE JUROR:  No.

13         THE COURT:  There may be times during the trial that

14   you would be sitting for an hour or hour and a half without a

15   break.  Do you have any physical or medical limitation that

16   would prevent you from sitting that long?

17         MALE JUROR:  No.

18         THE COURT:  Are you sensible of any bias or prejudice

19   as you sit here against the plaintiffs or the defendants, any

20   that you could not set -- are you sensible of any bias or

21   prejudice against either side?

22         MALE JUROR:  I don't understand the question.

23         THE COURT:  As you sit here today, are you prejudiced

24   against the plaintiffs or prejudiced against the --

25         MALE JUROR:  No.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1              THE COURT:  -- defendants?

2              Okay.  Do you know of any reason you could not serve

3  as a juror in this case and render a verdict that is based

4  solely according to the law and to the evidence?

5              MALE JUROR:  No.

6              THE COURT:  Okay.  Any questions?

7              No questions?

8              All right.  Sir, thank you.  You may go back to the

9  jury room with the other jurors.

10             We'll bring in 277.

11             THE CLERK:  Yes, 277.

12             THE COURT:  Do we know about 278?

13             THE CLERK:  Unfortunately, I do not know.  I know who

14 did fill one out today, but I have not been able to reach

15 Mr. Gaddes, so I don't know about 278.  They're looking for

16 Mr. Gaddes at the moment.

17             THE COURT:  Come on up, sir.

18             All right.  Good morning.

19             Would you state your jury number, please?

20             MALE JUROR:  277.

21             THE COURT:  All right.  You heard me say this morning

22 that the trial would last four weeks, including this week.

23 Now, recognizing that jury service is a vital civic duty, does

24 the fact that the case will last that long pose a real hardship

25 on you that might not be common to other jurors?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        MALE JUROR:  Yes, I know that it's going to last for

2  four weeks.  And what's your question, sir?

3        THE COURT:  Well, the question -- yes, the case is

4  set to last for four weeks.  And I'm asking:  Can you serve for

5  the four-week term without it being a tremendous hardship on

6  you?

7        It's going to be a hardship on everyone who serves,

8  but jury service is a vital civic duty.  Does it pose a

9  hardship for you that wouldn't be a hardship for other people?

10        MALE JUROR:  Yeah, it's going to be really a hardship

11  for me, sir.

12        THE COURT:  All right.  Could you explain that?

13        MALE JUROR:  Well, I have two full-time jobs, one at

14  the Omni and at the -- taking care of family back home and --

15        THE COURT:  You say taking --

16        MALE JUROR:  Care of family back home.

17        THE COURT:  You say taking care of your family back

18  home.  You mean in another country?

19        MALE JUROR:  Yes, sir.

20        THE COURT:  And are you married?

21        MALE JUROR:  I'm divorced, sir.

22        THE COURT:  Okay.  Do you have obligations -- or do

23  you have enough income to live on for four weeks without

24  working?

25        MALE JUROR:  No, sir.  I depend on the two jobs that

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  I'm doing.

2        THE COURT:  All right.  Just a minute.  Step outside

3  with the deputy a minute.

4        (Juror out.)

5        THE COURT:  Hardship.

6        MS. DUNN:  Yes, Your Honor.  No objection.

7        THE COURT:  I'm going to excuse him based on his

8  hardship.

9        (Juror in.)

10        THE COURT:  I'm going to excuse you.  You do not have

11  to come back.  Thank you for coming today.  Good luck to you.

12  Thank you very much.  Sorry for the inconvenience.

13        Have we resolved 278?

14        THE CLERK:  278 is being printed.

15        THE COURT:  Who is next after 278?

16        THE CLERK:  281.

17        (Pause.)

18        THE COURT:  All right.  Sir, you may remove your

19  mask.

20        State your jury number.

21        MALE JUROR:  281.

22        THE COURT:  All right.  I told you this morning this

23  case will last four weeks, including this week.  Realizing that

24  jury service is a vital civic duty, will it be any great

25  hardship on you if you have to serve that long?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    MALE JUROR:  I will admit that it would.  I work as a
2  nurse in a long-term care facility full-time.  I mainly state
3  that out of consideration for the residents that I take care
4  of.
5    THE COURT:  All right.  Aside -- I take it you would
6  not be paid, or would you be paid?
7    MALE JUROR:  I believe so, but I can't -- I can't
8  recall for certain.
9    THE COURT:  What is the situation with the facility
10 you're working in?
11   MALE JUROR:  We are short-staffed currently.
12   THE COURT:  All right.  Would it be difficult for
13 anyone else to come in and find a replacement?
14   MALE JUROR:  Yes.
15   THE COURT:  All right.  I'm going to let you step
16 outside for a minute, then.
17   (Juror out.)
18   THE COURT:  I feel it's a matter of common knowledge
19 how understaffed these places are.  They have no way of
20 replacing people right now.
21   MS. DUNN:  No objection.
22   THE COURT:  So I'm going to excuse him for the
23 hardship.
24   MS. DUNN:  No objection, Your Honor.  And also we
25 just received the questionnaire for 278.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        THE COURT:  All right.  Tell him to step right in.

2            (Juror in.)

3        THE COURT:  Sir, I'm going to excuse you because of

4   the essential nature of your work.  Thank you for coming.

5   Sorry that you were inconvenienced, but thank you for being

6   here.

7        MALE JUROR:  Thank you.

8        THE COURT:  What's the next -- do we want to take

9   up -- we'll take up another juror.

10       THE CLERK:  288.

11       MR. CANTWELL:  I'm missing 288.

12       MR. SPENCER:  We have one copy here.  If we could get

13  another copy, that would be wonderful.  Otherwise, we can pass

14  it around.

15       THE COURT:  Is this 288?

16       MS. DUNN:  Your Honor, I don't know if --

17       THE COURT:  This is 288.  Ask him to step out.  Step

18  out just a minute.

19       All right.  Did you have something?

20       MS. DUNN:  Your Honor, I'm just trying to make sure

21  we have the questionnaire.  Let me just take stock.

22       Yes, Your Honor, we have questionnaires for both 288

23  and 278 and just would like a second to review.

24       THE COURT:  Well, 288, do you need more time for 288?

25       MS. DUNN:  Your Honor, I do think we need a second to

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    review 288, but we've reviewed 278.

2              (Court speaking with the clerk.)

3              THE CLERK:  Your Honor, it's my understanding that

4    four were filled out when they came today.  So they did get

5    copies from Mr. Gaddes of four on top of 278.  So they have

6    gotten, to be clear, five copies of questionnaires to look at.

7              THE COURT:  Who was the number -- 288.  Do you need

8    time on 288?

9              MS. DUNN:  No, Your Honor.

10             THE COURT:  Okay.  Let's talk to 288, then.  We will

11   have to go back.  We'll take a break, and as soon as you all

12   are ready.

13             All right, sir.  You may remove your mask.  Sir, you

14   may remove your mask.

15             State your jury number, please.

16             MALE JUROR:  288.

17             THE COURT:  All right.  I told you this morning this

18   case would be -- take four weeks.  And recognizing that this is

19   certainly going to be some hardship and inconvenience to you,

20   but also that it is a civic duty one has to answer the call

21   for, is there any reason you could not serve, if selected to

22   serve on the jury for the four weeks?

23             MALE JUROR:  I have already checked with my employer,

24   and they support my serving on the jury.  And I -- and there

25   will be no hardship.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  Okay.  There may be times during this

2    trial that you will be sitting for an hour or longer, hour and

3    a half without a break.  Do you have any physical or medical

4    limitation that would prevent you from sitting that long?

5          MALE JUROR:  I believe Netflix has probably prepared

6    me to sit for more than one hour at one time.  Yes, Your Honor.

7    So that should be no hardship.

8          THE COURT:  Are you aware of any bias or prejudice

9    you have against either side on this case right now?

10          MALE JUROR:  None that I am aware of, no.

11          THE COURT:  Could you sit here and try this case

12    based solely on the evidence you hear in the courtroom and

13    disregard what you might have heard --

14          MALE JUROR:  Once I swear the oath I'll just do

15    whatever you tell me to do.

16          THE COURT:  I think you said in answer to question

17    number 42 that you did read where this case was brought to

18    court this week, but you have not followed the details.

19          MALE JUROR:  No.  I mean, I think I was more aware of

20    the case when the event first happened four years ago, but it's

21    not something that I, you know, tend to follow on a day-to-day

22    basis or anything like that.

23          THE COURT:  All right.  Are there any questions?

24          In your questionnaire there was a section dealing

25    with racism against certain groups.  And you were concerned

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   about racism, but not so much about whites.  Do you have any

2   view about white people, whether white people could be victims

3   of racism?

4           MALE JUROR:  It could happen, but I think that

5   proportionally speaking the historical and the incidence of

6   racism against minorities and other minority groups is much --

7   significantly greater than what may happen to white people.

8   But, I mean, I don't necessarily categorically believe that it

9   can't happen.

10          THE COURT:  All right.  Thank you.

11          Do you stand for the belief that all lives matter?

12          MALE JUROR:  All lives matter?  Yes, I do believe

13   that all lives matter.

14          THE COURT:  All right.  You said you had a favorable

15   view of Antifa.  What is --

16          MALE JUROR:  I think I said it was somewhat as

17   opposed to extremely -- just favorable.  I think I recall our

18   nation fighting against totalitarianism during World War II.

19   Do I agree with some of their philosophical aims of standing

20   against totalitarianism taking root in America?  Yes.  But I

21   think there are ways we can all express our beliefs that are --

22   that are -- that are legal and just, and, you know, resorting

23   to violence or other sorts of things, regardless of what your

24   beliefs are, just typically --

25          THE COURT:  What are your views regarding political

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   violence, violence motivated for political reasons?

2          MALE JUROR:  I mean, it's sort of -- I mean, it

3   depends.  I mean, if -- I mean, because it's -- in some cases

4   it's very justified and in other cases it may not be.  I think

5   you just have to look at the evidence in the particular case

6   and, you know, make your best decision.

7          THE COURT:  You stated that you have a very favorable

8   view of Black Lives Matter.  If the defendants are very

9   critical of Black Lives Matter, would that affect your ability

10  to view the defendants' case impartially based solely on the

11  law and the evidence in the case in reaching a decision as to

12  what actually happened?  Could you still reach a decision as to

13  what actually happened?

14         MALE JUROR:  I don't think the jury process can work

15  unless jurors have the ability to put their own viewpoints and

16  perspectives to the side and fairly judge a case based on the

17  evidence on one hand and whatever instructions the Court

18  provides us, and restrictions or parameters that we have to go

19  by to judge that evidence.

20         So I -- there will be no problem with me -- I mean,

21  this case is not about me.  It has nothing to do about me and

22  what I believe in.  So no, from my perspective, I don't think

23  what I think really has much to do with this process at all.

24         THE COURT:  You stated that you are in favor of

25  removing monuments.  Do you have an unfavorable opinion of

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  people who are against removing monuments?

2        MALE JUROR:  I think that monuments can stay as long

3  as there are perhaps additional monuments in celebration,

4  whatever you want to call them, to various viewpoints.  And if

5  you want to celebrate somebody's history, then be prepared to

6  understand all sides of it.

7        THE COURT:  You stated that you have -- that you know

8  of the League of the South.  What do you know about them?

9        MALE JUROR:  Nothing, really.  I mean, they sounded

10 familiar.  I went down the list and I think I noted that I've

11 heard of the Klan and I've heard of the Ku Klux Klan or KKK,

12 this or that, just nationalist this or front that.

13 Specifically if you ask me what I know about those, it's hard

14 to say.  But, I mean, I kind of like -- yeah, you know, it

15 sounds familiar.

16        THE COURT:  Do you think that all organizations that

17 have points of view, from the left to the right, far left to

18 the far right, have a right to hold public demonstrations, as

19 long as they're lawfully done?

20        MALE JUROR:  Yes.

21        THE COURT:  The plaintiffs have the burden of proof

22 in this case.  They have to prove by a preponderance of the

23 evidence that the defendants conspired to promote and carry out

24 racially motivated violence.  And so it's going to be critical

25 in the case -- there will be evidence about -- from which --

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    may be a lack of evidence that does not prove something.

2          But if the plaintiffs do not prove that there was a

3    conspiracy, that these happened without a conspiracy on their

4    part to commit racial violence -- racially motivated violence,

5    would you have a problem returning a verdict for the

6    defendants?

7          MALE JUROR:  No.  I presume them to be totally

8    innocent unless proven otherwise in this particular court of

9    law in this particular case.

10         THE COURT:  Given what you know now today, can you

11   say that you are confident that you can sit and hear the case,

12   try it solely according to the law, the evidence that's

13   presented here in the courtroom, set aside any preconceived

14   notions, and render a verdict that's fair to both the

15   plaintiffs and the defendant?

16         MALE JUROR:  So help me God, yes.

17         THE COURT:  All right.  Thank you.

18         Are you any more or less likely to believe one side

19   or the other if evidence of Black Lives or Antifa is present?

20         MALE JUROR:  No.

21         THE COURT:  All right.  Thank you, sir.  I'm going to

22   let you go back to the jury room.

23         There was a question there that had a religious

24   overtone to it that I thought was not appropriate and I thought

25   was actually sort of snarky.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1      MR. SPENCER:  It wasn't at all snarky, but I respect

2  your decision.

3      THE COURT:  Okay.

4      MR. CANTWELL:  Judge, I submitted a question about if

5  political violence is acceptable in fighting fascism, why not

6  deception.  Did you not see that or did you choose not to?

7      THE COURT:  Well, I think that's covered in other --

8  I mean, I'm conducting the voir dire, and I think I've asked

9  enough questions about that --

10      MR. CANTWELL:  Okay.

11      THE COURT:  -- for you all to know --

12      MR. CANTWELL:  I just wanted to know if it was

13  intentional.

14      THE COURT:  You have enough evidence to know whether

15  you oppose him or enough certainly to exercise your peremptory

16  strike if you care to.

17      All right.  Any motion regarding him for cause?

18      MR. CANTWELL:  I'll move to strike the juror for

19  cause, Your Honor.  He said -- he hesitated on political

20  violence.  He said it depends.  He said sometimes it's -- in

21  some cases it's very justified.  And as I just noted, I wanted

22  to follow up that if violence is justified in pursuit of his

23  political goals, why not deception?  And so we don't know the

24  answer to that question, but we know that he thinks violence is

25  justified, and so I think that disqualifies him as a juror.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  All right.  Anything else?

2          MR. CANTWELL:  No, Judge.

3          THE COURT:  Okay.  I think he demonstrated he could

4    be a fair juror and set aside -- he obviously has -- he's

5    honest about his opinions, and I think he said he could set

6    them aside and render a verdict fair to both sides.  So I'm

7    going to pass him.

8          MS. DUNN:  No objection, Your Honor.  Plaintiffs are

9    ready for 278.

10         THE COURT:  I'm sorry?

11         MS. DUNN:  Plaintiffs are ready for 278.

12         THE COURT:  Are the defendants ready for 278?

13         MR. JONES:  Yes, Your Honor.

14         THE COURT:  Okay.  Call 278.

15         MR. CANTWELL:  I don't have 278.  Does somebody have

16   that?

17         MS. DUNN:  Your Honor, may we take a break for the

18   restroom?  I apologize, Your Honor.

19         THE COURT:  Can it wait until after?

20         MS. DUNN:  Yes, Your Honor.  I apologize.

21         THE COURT:  We'll take a break immediately after

22   this.

23         MS. DUNN:  Thank you, Your Honor.

24         THE COURT:  Yes, sir.  You may remove your mask.

25   State your juror number.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1              MALE JUROR:  278.

2              THE COURT:  Okay.  This morning I told you earlier

3    that this case is going to last four weeks, and we know that's

4    a hardship on anyone, but does it pose a particular hardship

5    for you that wouldn't be common for most other people?

6              MALE JUROR:  It's going to affect my finances.

7              THE COURT:  All right.  What sort of work are you in?

8              MALE JUROR:  I work three different jobs.  I have --

9    I work for an AV company.  I help manage a night club.  And I

10   also have a small business that books bars, music.

11             THE COURT:  All right.  You work for an AV company.

12   Okay.  If you are not at the AV company, could someone replace

13   you?

14             MALE JUROR:  My boss told me that I'm one of two

15   essential workers for that.

16             THE COURT:  How many employees are there?

17             MALE JUROR:  In the entire business?

18             THE COURT:  Yeah.

19             MALE JUROR:  20.

20             THE COURT:  Okay.  You have a small business

21   yourself?

22             MALE JUROR:  I do.

23             THE COURT:  And what type of business is that?

24             MALE JUROR:  I book bands for local bars.  That could

25   actually be done in the evenings.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  Does anyone else work for you in that?

2          MALE JUROR:  That's just me.

3          THE COURT:  Do we have any questions?

4          MR. CANTWELL:  Yes, Your Honor.

5          THE COURT:  All right.  I'm going to let you step

6     outside.

7          (Juror out.)

8          THE COURT:  I'm a little ambivalent about his work.

9     I mean, he's -- I hate to be prejudiced against him because

10    what he does and how essential.  It's not like nursing.

11         MS. DUNN:  I agree.

12         THE COURT:  I think that's my call.

13         MS. DUNN:  Your Honor, we agree.  It is your call.

14    And he also did say his work is evening work.  So, understood.

15         THE COURT:  Okay.  I'm going to keep him on and --

16    I've tried to avoid looking at what they do to make the

17    decision, but I'm going to leave him on the list and we'll take

18    up any questions regarding him.

19         You may bring him back.

20         (Juror in.)

21         THE COURT:  You stated you're very favorable to Black

22    Lives Matter.  If the defendants are very critical of Black

23    Lives Matter, could that affect your ability to view defendants

24    impartially?

25         MALE JUROR:  No.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        THE COURT:  You stated you're in favor of removing

2   the monuments.  Do you have an unfavorable opinion of people

3   who are against removing monuments?

4        MALE JUROR:  Yes.  It depends on the monument.

5        THE COURT:  Sir?

6        MALE JUROR:  It depends on the monument.

7        THE COURT:  Would that -- of course, in this case you

8   know that -- do you know whether Unite the Right had anything

9   to do with the monument removal issue?

10        MALE JUROR:  I am familiar with that.

11        THE COURT:  Okay.  Your survey indicated you are

12   extremely concerned about forms of racism except Antifa racism.

13   Is it your -- I'm sorry, anti-white racism.  Is it your view

14   that white people can't be victims of racism?

15        MALE JUROR:  It is not.

16        THE COURT:  When it comes to fighting fascism, does

17   the end sometimes justify the means?

18        MALE JUROR:  I don't believe so.

19        MR. SPENCER:  Could you repeat that answer?

20        MALE JUROR:  I don't believe so.

21        THE COURT:  Are you sensible of any bias or prejudice

22   against either party in the case?

23        Are you sensible of any bias or prejudice against

24   either party to the case?

25        MALE JUROR:  I am.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    THE COURT:  All right.  Do you think it would be

2  difficult for you to render a verdict fair to both sides?

3    MALE JUROR:  I do.

4    THE COURT:  Okay.  If you were called to serve as a

5  juror, could you set aside your views or impressions and render

6  a verdict fair to both sides based solely according to the law

7  and the evidence you hear in the courtroom?

8    MALE JUROR:  I would.

9    THE COURT:  Anything else?

10    (Pause.)

11    THE COURT:  Do you think -- I asked you the question;

12  I want to be sure you understood.

13    Do you think it would be difficult for you to render

14  a verdict -- because of your bias or prejudice, do you think

15  that it would be difficult for you to render a verdict fair to

16  both sides, a verdict based solely according to the law and the

17  evidence?

18    MALE JUROR:  I do not.

19    THE COURT:  Let me ask you this, because I'm not sure

20  that I'm asking the question -- that you and I are on the same

21  page.

22    Are you aware of any bias or prejudice you may have

23  against either party to the case?

24    MALE JUROR:  I am.

25    THE COURT:  All right.  Could you set aside that

39

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  opinion and try the case --

2          MALE JUROR:  I could.

3          THE COURT:  -- and be fair?

4          Okay.  Do you own a business on the Downtown Mall?

5          MALE JUROR:  I do not.

6          THE COURT:  And are you friends with Wes Bellamy?

7          MALE JUROR:  I worked with him once.

8          THE COURT:  Could you tell us the nature of your bias

9  against the parties?

10         MALE JUROR:  I didn't agree with why they felt the

11 statue should stay.

12         THE COURT:  Okay.  Anything else?

13         (Pause.)

14         THE COURT:  Wes Bellamy may be a witness in this

15 case, or he's been designated as a witness in the case.  Does

16 the fact that you have had some past relationship with

17 Mr. Bellamy, would that in any way affect your ability to serve

18 as a juror in the case?

19         MALE JUROR:  I don't believe so.

20         THE COURT:  The question in this case concerns

21 whether these defendants committed -- or conspired to commit

22 racially motivated violence.  Can you decide that question

23 fairly?

24         MALE JUROR:  Yes.

25         THE COURT:  You said that you dealt with Mr. Bellamy

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  one time.  Do you consider him a friend?

2            MALE JUROR:  An acquaintance.

3            THE COURT:  Do you have any opinion -- if his

4  testimony was important in the case, do you have -- do you have

5  any preconceived notion as to whether he would be truthful or

6  not?

7            MALE JUROR:  I would think he'd be truthful.

8            THE COURT:  Okay.  Do you know any of these names:

9  DeAndre Harris, Donald Blakney, Corey Long, Emily -- it looks

10 like G-O-R-C-E-N-S-K-I.

11            MR. SMITH:  Gorcenski, Your Honor.

12            THE COURT:  -- and Christopher Goad?

13            MALE JUROR:  I'm only familiar with DeAndre Harris

14 and what I saw in the news.

15            THE COURT:  Is he a person that you know of?

16            MALE JUROR:  I've never interacted with him, no.

17            THE COURT:  All right.  Anything else?

18            MR. KOLENICH:  Yes, Your Honor.

19            THE COURT:  I think you said you did not own a

20 business on the Mall?

21            MALE JUROR:  Correct.

22            THE COURT:  And you have not; is that correct?

23            MALE JUROR:  I have before, yes.

24            THE COURT:  When did you last own a business on the

25 mall?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MALE JUROR:  It concluded in -- April 1st of 2018.

2          THE COURT:  2018?

3          MALE JUROR:  Correct.

4          THE COURT:  So you did own a business when this

5   occurred?

6          MALE JUROR:  I sure did.

7          THE COURT:  Were you down there at the time?

8          MALE JUROR:  I was out of state.  I was at my

9   sister-in-law's wedding.

10         THE COURT:  Did it affect your business in any way?

11         MALE JUROR:  That weekend sure did.

12         THE COURT:  If Wes Bellamy's testimony -- if the

13  credibility of Wes Bellamy's testimony should become an issue

14  in the case, would you be able to set aside your opinion of his

15  truthfulness and decide that he was not telling the truth, if

16  the evidence proved that he was not telling the truth?

17         MALE JUROR:  If the evidence proved that he was not

18  telling the truth, then, yes, I could set aside my

19  acquaintance -- my knowledge of him, yes.

20         THE COURT:  Could you set aside your preconceived

21  notion and decide that based solely upon what you hear in the

22  courtroom?

23         MALE JUROR:  I believe I could.

24         THE COURT:  To what extent was your business affected

25  by the events on the Mall?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MALE JUROR:  We had to close.

2          THE COURT:  For how long?  Just the day?

3          MALE JUROR:  We had to close that Friday -- if

4   August 11th was a Friday, we had to close that Friday, we had

5   to close that Saturday, and money was lost.

6          THE COURT:  Another question:  What would happen to

7   the AV business you work for if you were required to serve on

8   the jury?

9          MALE JUROR:  They would stay open.

10          THE COURT:  Would the effect the weekend had on your

11   business affect the way you would decide the issues in this

12   case?

13          MALE JUROR:  I don't think so.

14          THE COURT:  Have you formed any opinion as to who was

15   responsible for the violence at the event?

16          MALE JUROR:  In terms of one individual or a party of

17   people or --

18          THE COURT:  Yes.

19          MALE JUROR:  Well, it would have been formed by what

20   I saw on the news and read afterwards, but -- I don't know who

21   threw the first punch.

22          THE COURT:  If you are selected to serve on this

23   jury, could you render a verdict that's fair to both sides

24   and -- base your verdict solely upon what you hear in the

25   courtroom and the law as I instruct you it is, and render a

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  verdict fair to both sides?

2              MALE JUROR:  I would do my best to do that, yes.

3              THE COURT:  Well, I'd like to ask you:  As you sit
4  here today, can you do it?

5              MALE JUROR:  Yes, I can.

6              THE COURT:  Okay.  You may retire to the jury room.

7              Anyone want to raise cause objections to this one?

8              MR. JONES:  Yes, Your Honor.  His answers were
9  conflicting on the point of whether he could be fair and
10  unbiased.  He did admit bias against the defendants, said it
11  would be difficult to render a fair verdict, although he said
12  "I would do my best."

13              I would also point out that he actually suffered
14  monetary loss as a result of the rally.  And so he may think
15  that he can set aside that concern, and he may believe that he
16  can, but when sits on the jury and sees the evidence, maybe an
17  image of his business, if he's watching one of the videos, I
18  believe it's -- there's too much of a risk that that will
19  affect him.

20              There's also the issue of his work situation.  We
21  don't know how --

22              THE COURT:  Well, I've passed on the work.  I think
23  that -- I've been trying to get that out of the way first.  I
24  thought he was a close case, but from the work I left him on.

25              Would you like to respond?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1         MS. DUNN:  Sure, Your Honor.

2         Under the legal standard that the Court articulated

3  yesterday and that controls, this juror is qualified.  He

4  repeatedly answered questions about his impartiality.  He

5  looked at Your Honor in the eye.  He said he could decide the

6  case fairly, he could be fair to both sides.

7         THE COURT:  My main concern now is he actually -- he

8  suffered loss as a result -- in the --

9         MS. DUNN:  Your Honor, I think the operative issue is

10 the question he was asked about who bears responsibility.  And

11 there is no question there was an event here, but first of all,

12 he said he could set it aside.  He was asked that directly.

13 And second of all, he said he could decide the question about

14 responsibility fairly.

15        So we've had -- you know, as you know, there are

16 people who blame one side or the other.  That is not a problem

17 we're going to have with this juror.  He expressly answered

18 those questions.

19        THE COURT:  Okay.  I think he -- I'm a little

20 concerned.  I'm going to look some law up.  I think he -- I

21 felt like his answers to the questions were okay.  The question

22 is if he has such a fixed opinion that he would not judge

23 impartially the issue in the case.  I'm a little concerned

24 about the fact that -- whether anyone who was actually

25 injured -- I mean, he wasn't injured personally, but he was

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  injured financially in the case -- I mean, about the events.
2  And that concerns me.
3         MS. DUNN:  Your Honor, there are plenty of people who
4  have attributed the violence not to the defendants.  So that
5  should not be an issue.  I think he was very equitable on that
6  question.
7         He also said his business is now closed.  This was
8  four years ago.  He specifically --
9         THE COURT:  Well, I'm talking about that weekend, he
10 lost money.  I mean, he had three days shut down that weekend.
11        MS. DUNN:  I understand, Your Honor.
12        I would say two things.
13        One is, he expressly said that would not influence
14 him.
15        The second thing, though, is that the key thing is
16 about responsibility in this case.
17        THE COURT:  Okay.  But my issue was what -- there
18 might be some law that we need to check into.
19        Did you have something, sir?
20        MR. JONES:  Your Honor, he's basically in the same
21 position as the plaintiffs who are coming before this Court
22 saying that they suffered injury based on the events.  He's
23 going to have that in common with them.  It's clear who he
24 blames for that injury, Your Honor.  I simply don't think that
25 he can be fair and impartial.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        THE COURT:  Okay.  Well, we'll decide that.  I'll

2   take that after we take a recess.

3        When we come back, I would like -- let's see.  How

4   many jurors have we interviewed?

5        THE CLERK:  That would be five, Your Honor.

6        (Pause.)

7        THE COURT:  All right.  We'll hear -- when we get

8   back, I want you all -- I think I have to interview one more

9   juror, probably, before we take up the *Batson* matter.

10        MR. CAMPBELL:  Your Honor, if I can briefly be heard

11   on that:  If the intent of the Court is to follow the random

12   judge's list, I think you have to complete the panel.  They're

13   significantly different in order.

14        THE COURT:  I can't hear you with the mask.  I'm

15   sorry.

16        MR. CAMPBELL:  My apologies, Judge.

17        I think if we're going to follow the precedent the

18   Court has set in all the other panels, you have to finish the

19   panel, because going in the random order that the Court was

20   concerned with maintaining, the judge's list is --

21        THE COURT:  We need to take -- need to know how

22   many -- what jurors are in the random list.

23        MR. CAMPBELL:  That would be the last -- the

24   second-to-last would be the first in the random list.

25        (Pause.)

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  We'll recess now.

2          (Recess.)

3          THE COURT:  All right.  Call the next juror.

4          THE CLERK:  301.

5          (Pause.)

6          THE COURT:  All right, sir.  You may remove your

7   mask.

8          We told you this morning the case is scheduled to

9   last four weeks, including this week.  And I know that's a

10  problem for most people, but is it a problem, such a hardship

11  on you that you think your hardship would be greater than

12  anyone else who might be called to serve?  It's a job somebody

13  has to do.

14         MALE JUROR:  I know.  I take it very seriously.  My

15  work responsibilities are, you know, busy just like everybody

16  else, I'm sure.  But last week I sustained an injury, head,

17  neck, and back.  And so my hesitation is to -- you know, will I

18  be able to sit comfortably?  Will I be able to concentrate?

19  That's just really sort of the main concern.

20         Busy -- like I said, everybody else is busy.  I'm

21  teaching.  So I won't have any sort of backfill for the

22  teaching.  I'm also opening a shared work environment at the

23  CODE building next door.  So that's all happening here in the

24  next few days.

25         THE COURT:  All right.  With regard to your injury,

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  are you still under treatment for the injury?

2          MALE JUROR:  Yes.

3          THE COURT:  What does that -- if you had to sit, say,

4  for an hour, hour and a half without taking a break, would that

5  create a problem for you?

6          MALE JUROR:  I'm not sure.  I haven't had to sit that

7  long since then, right?  It would just be a little

8  uncomfortable.

9          THE COURT:  I mean, you would be able, if you needed

10  to, to stand in place, but we wouldn't take an actual break.

11          MALE JUROR:  The question -- some of it is I don't

12  know just because the stiffness has gotten worse over the days.

13  And I'm receiving treatment.  I'm just in the position where I

14  can -- at work I can get on a foam roller.  I can go get

15  treatment, that kind of thing.  While I would say my

16  inclination is to just tough it out, I just don't -- I don't

17  know.

18          THE COURT:  You don't -- excuse me?

19          MALE JUROR:  I'm not sure.  If I'm able to stand and

20  sort of stretch, you know, maybe that will be fine.  I would

21  not -- I'd like to be able to get treatment as scheduled.

22          THE COURT:  Well, it wouldn't be convenient, say, for

23  you to, you know, leave -- stop the case and go get treatment.

24          MALE JUROR:  My pause is really like the torn between

25  trying to serve and just tough it out, right?  So this is --

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          THE COURT:  Well, I'm going to just ask you if you

2    believe you're able to serve.  It will be your call.  I mean,

3    you know your condition better than anybody else.  We're not

4    going to be able to be -- you know, take off or anything like

5    that.

6          MALE JUROR:  I don't think I'd be able to serve fully

7    to my capacity.

8          THE COURT:  All right.  Thank you, sir.  I'm going to

9    excuse you.

10          MALE JUROR:  Thank you.

11          THE COURT:  All right.  Next?

12          THE CLERK:  294.

13          (Pause.)

14          THE COURT:  All right, sir.  You may take your mask

15    off.

16          Would you state the number juror you are.

17          MALE JUROR:  294.

18          THE COURT:  All right.  I told you this morning this

19    case is scheduled to last four weeks, including this week.  And

20    I know it could be a hardship on you, but it is -- jury service

21    is a public responsibility, and, you know, we have a duty to

22    serve when called to serve.  Does this present a hardship for

23    you that wouldn't be likely to be as bad on other people?

24          MALE JUROR:  Yes.

25          THE COURT:  Can you tell us about that?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MALE JUROR:  I own an auto repair shop and towing

2  business, and due to the help, I just don't have the staff.

3          THE COURT:  If you were not there, what would happen

4  to your business?

5          MALE JUROR:  I'd have to close it down because my

6  daughter is the only one there now answering the phone.

7          THE COURT:  Okay.  I'm going to excuse you, then.

8  Thank you.

9          MALE JUROR:  Thank you.

10          THE COURT:  Who is the next?

11          Oh, in that -- the juror that we were discussing

12  before the break, I was concerned, as I said, about the fact

13  that he suffered losses that weekend.  It was 278.

14          THE CLERK:  He is the next juror also, Judge.

15          THE COURT:  Just reviewing the situation, it seemed

16  to me that he did not -- he did not attribute the loss to

17  anyone particular in the case.  His business was closed because

18  of the Unite the Right rally, not, I mean, because Mr. Fields

19  may have driven down the road.  His loss was not for that

20  reason.

21          So in his questionnaire he had said that he was able

22  to set aside preconceived opinions about how the -- about the

23  Unite the Right rally.  That was 72.  So I'm passing that

24  juror.

25          MS. DUNN:  Your Honor, at this time we have three

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  qualified jurors and we would ask the Court to take up the

2  *Batson* issue.

3          THE COURT:  It's not the matter of three qualified

4  jurors.  It's they have to be three -- the next three on the

5  random list.

6          MS. DUNN:  Okay.  All these lists are randomized that

7  we have.

8          THE COURT:  Okay.  Well, maybe.  I haven't looked at

9  this -- do we have three now, Heidi?

10          THE CLERK:  We do have three qualified, yes, Your

11  Honor.

12          THE COURT:  All right.  So we need to take up the

13  *Batson* issue before.

14          MS. DUNN:  Your Honor, may I use the podium for this

15  issue?

16          THE COURT:  As I said earlier, the defendants took a

17  collective strike in this matter, and I want -- they gave some

18  reasons Monday night, and so they're really at a point where

19  the Court has to take -- consider the matter as a whole, not --

20  we don't go through the three steps.  We go to step number

21  three, since reasons were already offered.

22          You can elaborate on the reasons, explain the

23  reasons, but you can't come up with new reasons.  You can tell

24  us why you arrived at the strike.

25          Just a minute.  I want to be certain -- Heidi says

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  we've got the random three.

2          THE CLERK:  We have three on the random list, but

3  they're not sequential.

4          THE COURT:  They're not sequential.

5          MS. DUNN:  Your Honor, the requirement is that -- all

6  these lists are random.  They're randomly generated.  Your

7  Honor said this morning that we would qualify --

8          THE COURT:  Look --

9          MS. DUNN:  -- three jurors, and we have three

10  qualified jurors at this time.

11          THE COURT:  No, I didn't change the law of the case.

12  Frankly, I thought we were on the random list.  My mistake.  As

13  our criminal defendants say, I accept full responsibility.  But

14  the random list is generated by a computer.  And if I go pick

15  out -- go down off that and pick somebody off the random list,

16  it's no longer random, if I take them out of turn.

17          MS. DUNN:  Your Honor, our position is that both

18  lists are random.  They're both --

19          THE COURT:  Well, no, they're not -- they're not

20  random insofar as this Court's plan is the way we do this.  We

21  have a random list, and that list are these jurors, and it has

22  to be in that order.

23          MS. DUNN:  Thank you, Your Honor.

24          MR. KOLENICH:  Your Honor, I don't know if it will --

25          THE COURT:  No, we're going to call -- I need

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   three --

2            MR. KOLENICH:  We believe there are multiple

3   qualified jurors now, and we're just taking them in the order

4   that those jurors occur on the list, as opposed to the list as

5   a whole.  And Mr. Campbell is willing to withdraw whatever

6   objection he had to that earlier.  So it might not be necessary

7   to question anyone else.

8            THE COURT:  All right.  I want all -- if all the

9   defendants agree.

10           MR. CAMPBELL:  Agreed, Your Honor.

11           THE COURT:  All right.

12           MR. SPENCER:  Agreed.

13           MR. SMITH:  Agreed.

14           MR. CANTWELL:  Okay.

15           THE COURT:  I'm very happy we agree.

16           MS. DUNN:  I think we should all cherish this moment.

17           MS. KAPLAN:  It's the second time today, Your Honor.

18           THE COURT:  I think we're doing better than the

19   general public.

20           All right.  We're ready to proceed.

21           Well, first I want the defendants to present their

22   answer.

23           MS. DUNN:  Your Honor, understood.  Over the break,

24   we handed out a letter, we handed up to the Court and --

25           THE COURT:  I read it.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MS. DUNN:  Thank you, Your Honor.

2          MR. JONES:  Your Honor, on behalf of the defendants,

3    I'm at a disadvantage because I wasn't able -- there was not

4    sufficient room for me to participate in the caucus.

5          THE COURT:  Well, let me just say what happened.  The

6    plaintiff -- I had a plan that had considered what might happen

7    with *Batson*.  It was my idea that if we had anyone that -- any

8    question about *Batson*, that -- of a particular juror, that that

9    juror would be told to come back before we selected or swore in

10   the panel, and we'd take up *Batson* challenges at that time.

11         But plaintiff raised an objection to a particular

12   juror -- I mean, not to the juror, but made a *Batson* motion to

13   one specific juror early on.  We came to sidebar and she told

14   us what her motion was.  And one of the defendants started

15   speaking about why it was not -- started offering a reason

16   seeking to explain why it was not a random -- I'm sorry, why it

17   was not a violation of *Batson*.

18         Well, when that happens, that means you skip to --

19   you get past the prima facie case and go right to the -- the

20   Court has to determine the reasons.

21         MR. JONES:  What I mean is I didn't hear what reasons

22   were offered by any particular defendant.  I was simply going

23   to rely on --

24         THE COURT:  Are you speaking now for the group of

25   defendants?  Or just yourself?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1            MR. JONES:  Just for my clients, Your Honor.

2            THE COURT:  Okay.  But what I'd asked for is the

3    collective reasoning of the -- I mean, there are 20 or so

4    defendants.  And it seemed to me that I need to know the

5    collective reasoning of all, if there be one.

6            MR. KOLENICH:  Your Honor, it's been an endless

7    problem during this jury selection that we're stuck being the

8    collective defendants.  We're already hampered with six

9    collective strikes that we have to negotiate with the group.

10   Now, some members of the defense did posit reasons, thereby

11   blowing by the first parts of the *Batson* challenge, and I was

12   one of them.  But Mr. Jones did not.  He has his own separate

13   clients.  So I believe he should be allowed to start from step

14   one if he wants, or at least posit his own reasons and not be

15   hampered by what was already given.

16           THE COURT:  But it's --

17           MR. CANTWELL:  If I may very briefly also.

18   Christopher Cantwell.  I'm stuck in this corner.  I can't move

19   around the room.  When the other attorneys and the other

20   defendants move in other places, I don't even know what they're

21   talking about half the time.  So my reasoning is largely

22   independent.  I have things I want to say about the issue as

23   well.

24           THE COURT:  I think you did speak on Monday night,

25   though, to the issue.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MR. CANTWELL:  What I told you, Judge, is that I

2    thought the man was lying.  That's conspicuously absent from

3    the plaintiffs' filing.

4          THE COURT:  Yeah, that's what I say, you did speak on

5    Monday night.

6          All right.  Mr. Jones, sorry, go ahead.

7          MR. JONES:  Anyway, Your Honor, the reason for

8    striking that prospective juror was clear based on his answers

9    to the questionnaire.  He noted that he was extremely favorably

10   positioned towards Black Lives Matter.  That's a difficult

11   position for my clients because my clients are in the opposite

12   position.  Black Lives Matter was in a group of people of the

13   counter-protesters.  That's why the plaintiffs are worried

14   about prospective jurors that have very antagonistic views

15   towards Antifa.  We're in the same position with the Black

16   Lives Matter question.

17         He also put he strongly approves the removal of

18   Confederate statues because they're symbols of racism.  This

19   whole case is based on a rally against the removal of a

20   Confederate statue.  My clients League of the South are a

21   neo-Confederate organization, so they would be in a difficult

22   position if somebody on the jury thought those statues were

23   symbols of racism and didn't approve of their removal.

24         Further, there were six qualified jurors on that

25   panel.  This was the second panel of the day.  Three of them

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   were African American.  Defendants struck one white juror and

2   one African American juror, leaving two others.  There are

3   currently four total on the jury.

4          And as far as plaintiffs' arguments about comparing

5   how we exercise our strikes on the first panel versus the

6   second panel versus the third panel, you can't do that because

7   you exercise your strikes differently.  On the first panel you

8   have to save your strikes for later.  So maybe if we could go

9   back we would strike somebody who was on the first panel, but

10  we were trying to judiciously use our strikes.  So you can't

11  compare panels and how strikes are used.

12         Finally, I'll say that plaintiffs have struck six

13  jurors.  Juror number 172 was white, 176 was white, 166 was

14  white, 266 was white, 274 was white, and 245 was white.

15         THE COURT:  Okay.  Is there any other defendant that

16  wishes to elaborate on the reason?

17         MR. CANTWELL:  I would, Judge.  Christopher Cantwell.

18  I have here my notes that I was taking during --

19         THE COURT:  You may take your mask off.

20         MR. CANTWELL:  Okay.  I have here my notes that I was

21  taking during the process.  And I'd happily offer them to the

22  Court.  I have here "BLM attendee slash favorite.  Didn't

23  answer impartiality questions.  Anti-white race nut.  He read a

24  lot about the event and about Heather Heyer's death."  I wrote

25  nothing about his race, only his views on race.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          I also have here a sworn declaration I'd like to add

2    to the record.  I'm a professional talk show host.  I take

3    calls from people on the radio.  I talk and I listen for a

4    living.  And I detected deception in the man's voice.  I'd have

5    detected it if I was on the phone and didn't have the benefit

6    of sight.  Specifically, him and the other juror that we struck

7    from that panel, they answered certain questions as though they

8    were telling a sarcastic joke.  It's analogous to the times

9    plaintiffs' counsel Michael Bloch would call me in prison and

10   say, "Chris, how are you doing?"  And I'd say, "I'm doing

11   fantastic, Mike.  Thanks for asking," when, in fact, I don't

12   particularly enjoy prison and have for years admonished radio

13   callers for using an inquiry of well-being as a greeting.

14         And so I think that they were answering the questions

15   dishonestly and sarcastically, hoping to get their way onto the

16   jury because they wanted to be here, and that made me nervous.

17   And that's why I consented to the strikes, both of them, the

18   black one and the white one.

19         THE COURT:  Does anyone else have anything to

20   elaborate on that?

21         MR. SPENCER:  I concur with what the defendants'

22   other lawyers have said.  That was well-spoken.

23         I think my -- as I remember, my reasoning was similar

24   to Mr. Cantwell's, although I enveloped it in Straussian

25   language.  But yes, I did not trust that he was speaking in a

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  genuine manner, and that distrust was continued and even got

2  amplified throughout his speech.  It had absolutely nothing to

3  do with race, and it had everything to do with whether I could

4  trust that this man could use reason and reach a conclusion.

5  And that's why I concurred with the other defendants in

6  striking him.

7          MR. SMITH:  Your Honor, if I could be heard?  Thank

8  you.

9          First of all, I was not in court at the time that

10 there was a sidebar, and other explanations for striking this

11 juror were apparently put on the record, but I personally know

12 that I wanted him struck for four reasons, any of which, by the

13 way, are independently sufficient to justify a peremptory

14 challenge of a juror.  And those have nothing whatsoever to do

15 with the juror's race.

16         First of all, the juror had a highly favorable

17 opinion of Black Lives Matter.  This is obviously a valid

18 reason for a peremptory challenge in and of itself.  That's why

19 it's asked in the juror questionnaire.

20         The juror stated that he strongly approves of the

21 removal of the Lee statue.  This is a central issue in this

22 case.  It helps create the factual context for both sides of

23 the litigation.  This is obviously a valid reason in and of

24 itself to peremptorily strike a juror.  That's why it's asked

25 in the jury questionnaire.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        The juror stated that he was not at all concerned

2   about racism or discrimination against white people, yet he was

3   extremely concerned about that for each of the other races in

4   that question.  In our view, this is prima facie evidence of

5   explicit anti-white bias, and that kind of extreme disparity in

6   those answers should be a virtually automatic basis for

7   granting a cause challenge.  But since it was not in this

8   particular instance, it certainly qualifies as a reason to

9   exercise a peremptory strike.  That's why the question is on

10  the jury questionnaire.

11       There are only two questions that are asked on that

12  jury questionnaire that, under *Batson* and its progeny, are not

13  a valid basis for a peremptory strike:  What is your race and

14  What is your sex?  Responses to anything else are fair game.

15  The juror can say that they'll still be impartial, but I don't

16  have to believe them if I wish to exercise the peremptory

17  strike.  Accordingly, plaintiffs' reliance on any

18  rehabilitative statements in the peremptory context is entirely

19  misplaced.

20       Finally, I didn't like the juror's attitude.  I

21  believe that the juror could, during deliberations, potentially

22  commandeer other jurors' attention away from issues to which

23  the defendants want the jurors to give their focus.  There was

24  at least one black juror that went entirely unchallenged by the

25  defendants, and that's because we're not basing our decisions

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  here on race, but rather on world view.  Indeed, black jurors

2  that have what I would consider to be a proper world view for

3  this type of subject matter in this case would be quite

4  desirable for defendants for a number of reasons, although they

5  are, unfortunately, very rare.  However, this juror was simply

6  the polar opposite of that.  And for that reason, he was

7  stricken.

8          Thank you.

9          THE COURT:  All right.  Anyone else?

10         All right.  Would you like to speak to your motion?

11         MS. DUNN:  Yes, Your Honor.

12         Your Honor, to begin with, we've submitted to the

13 Court Supreme Court and other authority that says that when a

14 *Batson* challenge is at stake, the striking party must give

15 their reasons and stand by those reasons, and that, actually,

16 coming up with new reasons later that were not placed on the

17 record at the time --

18         THE COURT:  Well, what are the new reasons?

19         MS. DUNN:  Supports that --

20         THE COURT:  I mean, we had 20 defendants and only

21 three were at that -- were able to speak at that time.

22         MS. DUNN:  Your Honor, as you've pointed out --

23         THE COURT:  I'm just asking:  What are the new

24 reasons?

25         MS. DUNN:  Anything having to do with this juror's

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   questionnaire.  We can -- I think we should go through it.  I

2   think we should go through what reasons were put on the record

3   at the time.

4          So what Mr. Kolenich said -- speaking for multiple

5   defendants, not just his own -- he said:  "The defendant had an

6   openly anti-defendant attitude, evident from the looks on his

7   face while he was answering the questions.  That's the best

8   explanation that I can give for what I was told."

9          And that's what he said as his independent-of-race

10  reason.

11         He goes on to say:  "It doesn't go to the legal

12  issues, but this was not a strictly race-based decision that

13  was being expressed."

14         So just taking that reason, Your Honor, is that --

15  first of all, it concedes that there was a race-based

16  motivation; but the second thing, more concerning, is that

17  courts have uniformly found -- and we cite multiple courts in

18  our brief -- that looking at the look on somebody's face

19  actually makes the case for pretext stronger.

20         Demeanor-based explanations are -- bolster our

21  position, and not the defense position.  And we've cited

22  Supreme Court cases, and additionally a Fourth Circuit case, a

23  Second Circuit case, a Ninth Circuit case, a Tenth Circuit

24  case, and a Third Circuit case.

25         Those cases also implicate the reason that

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  Mr. Spencer gave.  And Mr. Spencer said:  "This juror's answers

2  were too perfect.  You can't go by the exact words that someone

3  uses.  You have to look beneath them and look at the messaging

4  that they're giving and the general sentiment."  And that is --

5  again, these demeanor-based abstractions are what the Courts

6  have found expressly support a *Batson* challenge.  And that's

7  what we have here.

8          And as you -- as we discussed at sidebar, so I know

9  that the Court knows this, comparison is appropriate with

10  regard to *Batson*.  And so let us not forget that these are the

11  same defendants who wanted to call back for additional

12  questioning a white juror who said that they were evil.  This

13  is a white juror who put on the record he could not be unbiased

14  in this case because he already believed the defendants in this

15  case were evil.  And multiple defendants said we should call

16  that person back because perhaps they could be unbiased.

17          The contrast, Your Honor, is stark.

18          Mr. Cantwell, again, based on observing this person,

19  believed he was lying.  Again, this falls into the exact same

20  category.  This is not permissible.  It's not a permissible

21  basis.

22          Let's talk about what Juror 197 actually said,

23  because some of his answers were actually quite favorable to

24  the defendants, and we all observed this at the time.  He said

25  he hadn't come to any conclusions about issues in the case.  He

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    confirmed when asked one of the defendants' questions that

2    everyone has a right to protest as long as they have a legal

3    permit.  That's going to be one of the defendants' defenses in

4    this case.  He confirmed that he could follow the law and rule

5    impartially in this case, and that he had no bias and prejudice

6    against either the defendants or the plaintiffs.  When asked

7    about whether all people could experience racism, he said,

8    "Yes.  People of all colors can experience racism."  We heard

9    that answer again this morning.  No problem with that.  And he

10   also confirmed for the Court that he had no preconceived

11   beliefs or views of the case.

12         We saw white jurors yesterday who are going to sit on

13   this jury.  They are -- nobody struck them.  They expressed

14   more personal views than Juror 197.

15         Juror 164 said this case is a tragic nightmare, and

16   she would never be involved with anyone in the organizations at

17   issue of the case.  Many of them are the defendants'

18   organizations.  "Every one of them that you all named on

19   there," she said.

20         Juror 168, she said that she would try her best to

21   keep her personal views out of it, but that would be hard to

22   do.  She is going to be a juror on this case.

23         So, Your Honor, this is one of the reasons the

24   Courts, including the Fourth Circuit -- and Judge Wilkinson

25   wrote this opinion -- said that there's a general rule of

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   timeliness that's pertinent to *Batson* challenges because it

2   allows the Court to rule on what has -- only what has been

3   recently observed.  And we all know what we observed.  So we

4   should reject any post hoc explanations.

5          The defendants, it has been clear from the beginning,

6   collectively exercised challenges and have gotten together, and

7   they've done that.  And so now, conveniently, there are all

8   these new explanations popping up this morning.  And so that's

9   not right, particularly when constitutional issues are at

10  stake, Your Honor.

11         The other point I would make is that this is not just

12  an issue for the panel.  And this is something that's come up

13  in some of these discussions, which is that seating other black

14  jurors, and defense argument that some of the black jurors,

15  they didn't object to, does not remedy the problem.

16         We'd point the Court to the case of *US v. Lane*, where

17  the Fourth Circuit squarely held that striking one black juror

18  for a discriminatory purpose violates that juror's equal

19  protection rights, even when other black jurors are seated.  So

20  the right is not just a systemic right; it's a right that the

21  juror possesses as well, to not have his own equal protection

22  rights violated.  We also in our letter cite the Third Circuit,

23  making a similar point.

24         This principle that *Batson* safeguards the individual

25  rights is recognized by the Supreme Court in numerous cases,

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   and we would direct the Court to Justice Stevens' opinion in

2   *Johnson v. California* and Justice Blackmun's decision in

3   *Georgia v. McCollum.*  And I think it's worth noting what is

4   said there.  In that case, the Supreme Court said that:  "This

5   Court has long recognized that denying a person participation

6   in jury service on account of his race unconstitutionally

7   discrimination discriminates against the individual juror.

8   While an individual juror does not have a right to sit on any

9   particular petit jury, he or she does possess the right not to

10  be excluded from one on account of race.  Regardless of who

11  invokes the discriminatory challenge, there can be no doubt

12  that the harm is the same.  In all cases, the juror is subject

13  to open and public racial discrimination."  And that is what

14  would happen here if Juror 197 was struck.

15       I want to make sure also that the Court takes note of

16  another thing that was said at our sidebar.  Mr. Kolenich said

17  that delay would be helpful for the defense so they could

18  figure out -- and I'm looking for the exact language -- "We'd

19  appreciate the time to come up with some kind of effective

20  defense here."  And so multiple days have passed.  The defense

21  has tried, as promised, to come up with some sort of effective

22  defense for a discriminatory strike, but they did not -- they

23  have not come up with one.

24       And so, Your Honor, we're happy to respond to any

25  questions, but this is -- this feels -- or this is, on the

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1    record, a textbook -- and I hear the scoffing over here.  So,

2    Your Honor, I'd just ask --

3              MR. SMITH:  Sorry, Your Honor.

4              MS. DUNN:  -- the Court to instruct the defense

5    counsel not to guffaw or make noises.  I mean, it's very

6    distracting.

7              MR. SMITH:  I'm sorry.

8              MR. KOLENICH:  Your Honor, the transcripts -- she

9    says defense counsel, but it would be nice to specify what

10   counsel for purposes of this being reviewed in the transcripts

11   later.  The counsel she's referring to is Mr. Smith.

12             MR. SMITH:  Yes, I was the one who chuckled, Your

13   Honor.  I apologize.

14             THE COURT:  We'll hear from you later.  I'm not

15   following.

16             Go ahead.

17             MS. DUNN:  Your Honor, for clarity, the transcript

18   attributes this comment to Mr. Kolenich:  "We'd appreciate the

19   time to come up with some kind of effective defense here."

20             Your Honor, we also saw in this courtroom this juror

21   could not have answered the questions more impartially.  Some

22   of the answers were even good for the defense.  He was the

23   first black juror.  They moved to strike him.

24             He should not be struck, in consideration of all the

25   controlling law that we've handed to the Court that we've

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  mentioned today, but in particular because we are mindful of

2  this juror's constitutional rights and the integrity of the

3  system as mentioned in the Supreme Court cases we've submitted.

4          THE COURT:  All right.  You may respond.

5          MR. KOLENICH:  Your Honor, I am delimited by the

6  presentation the other night on behalf of my own clients.  I

7  only rise to address the issue of treating the defendants

8  collectively for purposes of this *Batson* challenge.

9          We have been required to work collectively for

10 purposes of issuing the strikes.

11          I think, for absolute clarity, I should specify that

12 I voted in favor of this juror and objected to the defense

13 striking this juror.

14          Nevertheless -- and I don't claim legal relevance to

15 that, but just so we're all perfectly clear about to what's

16 going on here.  I did not specify in making my comments at

17 sidebar any particular defendant.  I said this was a group, and

18 there were members of the group who dissented.  There were no

19 specification of what parties or what lawyers said what.

20 Therefore, the lawyers who did not get to address the issue --

21 and that is specifically Mr. Jones and Mr. Smith -- should be

22 permitted to speak and raise their objections now.  They should

23 not be told, "You're stuck with what the other lawyers said and

24 the other parties said."  If they choose to, they will rise and

25 address the merits of the *Batson* challenge.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          That was my only point, Your Honor.  Thank you.

2          THE COURT:  All right.  Mr. Spencer?

3          MR. SPENCER:  Your Honor, I understand the

4    grounding --

5          THE COURT:  For the record, Mr. Spencer?

6          MR. SPENCER:  Yes, this is Mr. Spencer.

7          I understand the reasoning that acts as a grounding

8    for a *Batson* challenge.  Although no one has a right to serve

9    on a jury, they do have a right not to be discriminated against

10   unfairly in the jury selection process.  I understand that

11   reasoning, but there is an overall good of allowing a defendant

12   who is facing a serious legal challenge to use some kind of

13   reasoning and discretion in terms of selecting a juror.

14         As I mentioned during the sidebar, I don't think that

15   every defendant needs to write a dissertation on his

16   decision-making.  Sometimes you have a background for

17   decision-making and you can make a decision on someone.  You

18   can make a call.

19         Mr. Kolenich is speaking for himself when he

20   mentioned facial expressions.  My statements, which were

21   accurately represented by the plaintiffs, are a paraphrase of

22   Leo Strauss.  I don't expect them to have caught that, but it

23   is that, and that is my reasoning.

24         I believe -- I am convinced that he was, in his own

25   mind, nobly lying in order to serve on the jury.  That was my

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   opinion.  I might be wrong or I might be right about that.

2   But, though he has rights, and I agree with those rights, to

3   not be discriminated against, I also have a right to make a

4   discretionary decision.  And I will stand by my decision as not

5   at all race-based.  And it is one that is -- comes out of my

6   own reasoning on this matter.  Thank you.

7          THE COURT:  Can you say why -- articulate on why you

8   thought he was lying?

9          MR. SPENCER:  As I said earlier, I thought his

10  answers were too perfect and by the book.  I felt that he was

11  answering what you wanted to hear in the way that he

12  articulated it.  In other words, he was speaking under certain

13  limitations.  And there are other jurors, some of whom I liked,

14  some of whom I didn't like, that I could tell the honesty in

15  their presentation.  It didn't always serve a purpose.

16         I felt that all of his language was serving a

17  particular purpose, and that's why I made that decision, which

18  had nothing to do with his race.

19         THE COURT:  Okay.

20         MR. SMITH:  Your Honor, if I may.  Just one moment.

21         Those four reasons that I gave to Your Honor -- Josh

22  Smith, by the way, for the defendants.  Those four reasons that

23  I gave to Your Honor, those -- I came up with those instantly.

24  As soon as somebody told me there was a *Batson* challenge, I

25  said, "Well, we have four reasons for doing that."

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        Here's what mine were.  It's -- this particular juror

2   had nothing to do with race, Your Honor.  It just didn't.  I

3   think it's kind of offensive that plaintiffs are even bringing

4   a *Batson* challenge in these circumstances in this particular

5   case, especially considering, again, that all of their

6   peremptory strikes are of white people.  I don't really think

7   they have clean hands here and should be commenting in this way

8   on discretionary decisions that are being made in this

9   litigation.

10        But also, what's going on here, this is the epitome

11   of a reason for a peremptory challenge.  There's just too many

12   things here that the defendants didn't like about this

13   particular juror.  It's -- it transcends race.  Simple as that.

14        THE COURT:  Anything from Mr. Jones?

15        MR. JONES:  I'll just note that the reasons I gave

16   are not fabricated.  They're right in the juror's

17   questionnaire.  The questions that I pointed are literally the

18   most important questions on the questionnaire.  And literally

19   for every juror, Antifa, Black Lives Matter, and historical

20   monuments is what I make note of.  Literally, down the line,

21   every juror.

22        THE COURT:  All right.  Okay.  Anything else on this

23   issue?

24        Okay.

25        MR. CANTWELL:  Judge, real quick, I had mentioned

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   that I have notes that I could offer the Court as proof of my

2   thought-making process.  Would you like me to hand these to the

3   clerk?

4             THE COURT:  Well, I can't -- you can tell me.

5             MR. CANTWELL:  I've already done that.  I just don't

6   know if you want the notes or not.

7             Never mind.

8             THE COURT:  I don't know what the notes would do for

9   me.

10            MR. CANTWELL:  I've already told you.  It's fine.

11  Never mind.

12            THE COURT:  All right.

13            We'll take about a ten-minute recess.

14            (Recess.)

15            THE COURT:  All right.  Back on this issue.

16            I delayed ruling on plaintiffs' *Batson* issue on

17  Monday night, contrary to plaintiffs' argument the Court had to

18  take it up immediately, because I found that I needed to

19  consider all the relevant circumstances, and that those

20  circumstances were far from sufficiently developed at the time.

21            It was too early in the jury selection process to

22  resolve the challenge.  This was the first strike of the second

23  panel of five panels the Court would be considering --

24  actually, we had planned for six -- and it was on the first day

25  of what would be three days of jury selection.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          Upon repeated questioning for specific authorities

2    supporting the plaintiffs' argument, the authority cited by

3    plaintiffs at the time did not support the proposition that the

4    challenge needed to be heard immediately, but as -- reasonably

5    as soon as possible.

6          Anyway, plaintiff has not identified such authority

7    for the proposition.  The objecting party must provide proof of

8    discriminatory selection, notwithstanding the neutral reason

9    advanced by the striking parties at the *Batson* step three.

10         Upon considering the defense, the statements of the

11   reasons they advanced for their strike, the Court finds the

12   defendants have successfully stated a race-neutral reason for

13   their strike, considering all the circumstances, including this

14   Court's own observations.  But I also find plaintiffs have met

15   their burden to show the defendants proffered race-neutral

16   reasons as -- I also find that plaintiffs have not -- have not

17   met their burden to show the defendants proffered race-neutral

18   reasons or potential.

19         Specifically, I find persuasive Defendant Spencer's

20   assertion that the strike was not motivated by race, but rather

21   by his assessment of the juror's honesty.  I find the same as

22   Defendant Cantwell and his assertion that the strike was not

23   motivated by race, but rather by his assessment that the juror

24   was not forthcoming in his answers at voir dire.

25         And I will say Mr. Spencer gave his reasons for his

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   assessment of the juror's credibility, and they did somewhat

2   dovetail with Mr. Cantwell's, but I do not find, and probably

3   would not find, that the juror was being dishonest or evasive.

4   But from Mr. Spencer's and Mr. Cantwell's standpoint, I could

5   see how they could reasonably arrive at the opinion they had.

6         I also find Mr. Kolenich's assertion that the strike

7   was based on defendants' belief that the juror had an

8   anti-defendant attitude based on his facial expressions during

9   voir dire and how he was looking at the defendants during voir

10  dire.  I note for the record plaintiffs' own authority in this

11  issue, an unpublished Fourth Circuit case, *Thigpen v. Shields*,

12  states, and I quote, quote:  "It is entirely legitimate to

13  strike jurors on the grounds of their general appearance and

14  demeanor," quoting from an earlier Fourth Circuit decision,

15  *Grandison*.

16        I also considered Mr. Kolenich's Monday night

17  statement which -- in which he said the defendants' strike was

18  not, quote, "a strictly race-based decision that was being

19  expressed among the defendants."

20        I find that, though this statement was maybe unartful

21  and was not -- it's insufficient to justify any inference that

22  Mr. Kolenich was saying the strike was race-based.  He was

23  merely reporting the -- pretty much the observations backed up

24  by what Mr. Spencer and Mr. Cantwell had to say.  Mr. Kolenich

25  had just earlier stated that the strikes were independent of

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   race reason for the strike.

2          The Court also relies in part on -- strike that.

3          The Court notes that there were no -- there is no

4   fact pattern of -- the fact that there is no pattern of

5   discriminatory strikes having been shown.  Though the

6   defendants had strikes exercised, they subsequently allowed

7   four black jurors to be seated without trying to strike them.

8          To be clear, a discriminatory pattern is not a

9   prerequisite to find that the defendants exercised a strike in

10  a discriminatory manner.  All circumstances must be considered,

11  but plaintiffs have not pointed to sufficient facts to justify

12  an inference that defendants' reasons are pretext.

13         The Court also notes that it has considered the

14  specific comparisons with other prospective jurors cited by

15  plaintiffs, and those comparisons, alongside with other

16  arguments and evidence, still do not satisfy their burden on

17  the *Batson* step three.

18         So the *Batson* motion is denied.

19         Okay.  We'll call the jury back in.

20         MR. KOLENICH:  Your Honor, I apologize.  During the

21  break it's come to our attention that we did not ever get a

22  questionnaire on Juror 304.

23         Now, we have a *pro se* litigant who insists that he

24  saw one and that 304 is very favorable to the defense.  We

25  can't find it.  We've inquired of the plaintiffs; they don't

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  have one.  We'd request that Juror 304's questionnaire be

2  provided to us so that we could examine it before -- we would

3  like to consider withdrawing our earlier assertion that we had

4  enough jurors qualified to proceed, in other words.

5          MR. CANTWELL:  I think Your Honor was right before.

6  The judge's randomized list serves an important function, and

7  we've sort of been going in numeric order and just stopped

8  when -- at a point where we had -- I mean, I don't even know

9  how many --

10          THE COURT:  Who is speaking?

11          MR. CANTWELL:  I'm sorry.  Christopher Cantwell,

12  defendant.

13          THE COURT:  Well, take your mask off.

14          MR. CANTWELL:  I was a little bit confused by what

15  happened before, actually.  But I think that Your Honor was

16  right before when you said that the judge's randomized list

17  served an important function here for the anonymization.

18          THE COURT:  Look, look.  A decision was made, and I

19  stopped and took up a process that I thought could not be taken

20  up until we had sufficient jurors.  And that was the agreement

21  that was made among both sides, and everybody patted themselves

22  on the back, having reached an agreement.  So at this point I'm

23  not going to reopen that process, okay?

24          Call the jury back.

25          All right.  We have one strike to be made, and then

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  the jury will be in place.

2          I want all the jurors in the courtroom.

3  **(Jury in, 1:07 p.m.)**

4          THE COURT:  There are more jurors back here.

5          You all may have a seat.

6          All right.  Members of the jury, I apologize for

7  keeping you so long, but it's just a few more minutes and

8  you'll be through for the day.

9          I'll ask the clerk to proceed.

10          THE CLERK:  Ladies and gentlemen, at this point you

11  all have been referred to by your juror number.  During this

12  pre-selection process you'll be on a randomized list -- so

13  you'll hear two numbers called out that have nothing to do with

14  your juror number.

15          Plaintiffs, you have no strikes remaining.

16          I will move on to defendants.

17          Juror Number 4, pass or challenge?

18          MR. KOLENICH:  Challenge.

19          THE CLERK:  Defendants, Juror Number 7, pass or

20  challenge?

21          MR. KOLENICH:  Pass.

22          THE COURT:  Well, they have no choice.

23          THE CLERK:  I just wanted it on the record.

24          THE COURT:  Okay.  Well, go ahead.  I'm sorry.

25          MR. CANTWELL:  What about Juror Number 5?

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1              THE COURT:  I don't think that he was excused for

2    cause, right?

3              (Off the record.)

4              THE COURT:  Mr. Cantwell, the clerk is correct.

5              THE CLERK:  If I call your number, please stand.

6              288.

7              You may go to the clerk's office for further

8    instructions.

9              MR. DERISE:  Just a second.  Just a second, sir.

10             (Off the record.)

11             THE CLERK:  And Juror Number 275.

12             288 and 275, you may go to the clerk's office --

13             THE COURT:  Just one minute.

14             THE CLERK:  I'm so sorry.

15             That's correct.  You can go to the clerk's office.

16             THE COURT:  Let me say one thing, though, before you

17   go.

18             Do not discuss the case with anyone or let anyone

19   discuss it with you.  Do not remain within hearing of anyone

20   discussing the case.  Do not read, listen, or in any way do any

21   research or anything concerning this case.  Simply don't

22   discuss it with friends, family, or anyone.

23             And you'll probably be told to come back tomorrow

24   morning at 9 o'clock, and be here before 9.  I don't know what

25   time, but before 9 o'clock.  Actually, they'll give you

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  instructions outside of where to report, but you may proceed

2  out.

3        All right.  You members of the jury who are not

4  serving are going to be excused at this time.  You do not have

5  to come back.

6        We appreciate you being here.  We could never have

7  gotten this jury selected without your presence and your

8  cooperation, and you've performed a great service to your

9  community by participating in the process.

10        So you're excused at this time.  Thank you.

11  **(Jury out, 1:14 p.m.)**

12        THE COURT:  All right.  Tomorrow morning we'll start

13  at 9 o'clock, and I will give the jury a preliminary

14  instruction, which you'll get copies of.  Sorry that we're

15  delayed, but we've had a number of things come up that had to

16  be taken care of before we finalized that.

17        I'll tell you, it will be a generic opening -- I

18  mean, preliminary instruction.  It will not be exactly couched

19  in the terms plaintiffs suggested, but it will cover the issues

20  necessary in the preliminary instruction.

21        Are there any matters to come up now before the

22  morning?

23        MR. JONES:  Your Honor, I have submitted a

24  preliminary instruction related to the Court taking judicial

25  notice of the fact that there was a permit to hold a rally that

80

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  day.  Would Your Honor consider including that as part of the

2  preliminary instruction?

3          THE COURT:  All right.  I ruled that the fact that

4  there is a -- was a permit may be admitted into evidence, but

5  not the fact that there was a court -- any history concerning

6  the permit thereafter.

7          MR. JONES:  Unless the door is opened, yes.

8  That's --

9          THE COURT:  Well, even if the door is opened, I'm

10 going to try to slam it, because I don't think it's relevant.

11 Well, I can't -- of course, if something becomes relevant,

12 obviously I'm going to try to -- but at this point --

13         MR. JONES:  It's our position we think plaintiffs are

14 going to say the permit wasn't valid, and if that happens, then

15 I think it would be relevant that --

16         THE COURT:  Well, if they say the -- is there any

17 intention of saying that it was not a valid permit?

18         MS. KAPLAN:  I don't think so, Your Honor.

19         THE COURT:  Okay.  No need to -- I don't think they

20 intend to bring that up.

21         Is there any objection to the Court just taking

22 notice that a permit was issued to Mr. Kessler?

23         MR. ISAACSON:  Your Honor, it's Bill Isaacson.  Yes,

24 because it's appropriate that evidence be heard, but not that

25 the Court announce what evidence is through judicial notice.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   And there could be context around a legal permit which would be

2   subject to cross-examination and other evidence, and so --

3            THE COURT:  Why would there be context?

4            MR. ISAACSON:  Depending on how they use it.  For

5   example, if they didn't follow the permit, or if they made

6   representations --

7            THE COURT:  No.  It would just be that they had a

8   permit to perform, not --

9            MR. ISAACSON:  There are licenses and permits issued

10  every day.  They come into evidence.  The Court doesn't

11  announce "I'm taking judicial notice" and put the weight behind

12  it.

13           THE COURT:  Okay.  Well, someone can testify, a clerk

14  or something, and authenticate the permit.

15           MR. ISAACSON:  Right.  We are not --

16           MR. JONES:  The legal standard in --

17           THE COURT:  If the people witness -- can the

18  plaintiff offer the permit as an exhibit?

19           MR. ISAACSON:  Yes.

20           THE COURT:  And you agree to it?

21           MR. ISAACSON:  Yes.

22           THE COURT:  Okay.  I don't have to take judicial

23  notice.  Judicial notice just gets it --

24           MR. JONES:  So if there is a stipulation, then we're

25  satisfied with that.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1        MR. ISAACSON:  We're not objecting to the admission

2    of the permit as an exhibit.

3        THE COURT:  Okay.  Anything else?

4        MR. CANTWELL:  Judge, if I may.  Christopher

5    Cantwell.  As you were all discussing this, it occurs to me

6    that there's a substantial length of my body camera video from

7    the so-called leadership meeting where we're discussing the

8    possibility of getting an injunction to see the permit honored.

9    And I think that's actually a substantially important part of

10   my case, because it goes to show that we went to some lengths

11   to attempt to obey the law here.

12       We're accused of participating in a violent criminal

13   conspiracy.  There's a celebration on that video when we get

14   the permit honored, because of our dedication to obeying the

15   law and avoiding violence and cooperating with law enforcement

16   in carrying out this event.

17       I'm sorry that I haven't followed this issue quite as

18   closely as I probably should have, but this is troubling to me

19   because the injunction is a pretty substantial part of my case,

20   I think.

21       THE COURT:  Well, I mean, I think that's sort of

22   going down a rabbit trail that we don't need to go.  At this

23   point I don't see the relevance of that to the issues in this

24   case.  So, I mean, you can offer it at the time --

25       MR. CANTWELL:  I don't mean to argue with you, Judge,

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   of course --

2           THE COURT:  I know you don't.  But I think -- you can

3   offer it at the time, but it seems to me that that's something

4   collateral that just doesn't go to any --

5           MR. CANTWELL:  My goal would be to play that entire

6   video in a courtroom.  I think it's about two hours long, and

7   there's a substantial -- there's a discussion of the planning

8   of the event for August 12th, what we're going to do.  And

9   there's -- several different plans are discussed.  And all of

10  the plans hinge on whether or not we get this injunction.  And

11  it's impossible not to discuss that injunction in showing that

12  evidence to the jury.

13          And I have to imagine that the plaintiffs are going

14  to want to play this video as well, because they showed, even,

15  a clip of it at my deposition.  And I'm really confused about

16  how we're going to do any of this without that coming up.

17          MS. KAPLAN:  Your Honor, with respect to individual

18  pieces of evidence, let me just explain where we are.  On the

19  Discord posts, we have a stipulation from every defendant, I

20  believe, now, other than Mr. Cantwell, as to authenticity.  So

21  those are almost ready, if we could get Mr. Cantwell's

22  agreement.

23          With respect to this particular video, we're

24  certainly more than willing to have a discussion with

25  Mr. Cantwell, as parties do in litigation, about authenticity

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  and admissibility, though I don't think we need to do that in

2  front of the Court.

3           MR. CANTWELL:  Well, I think that I'll be able to

4  testify to the authenticity of the video that I shot.  It's a

5  body camera video, so I don't think I'm going to need a

6  stipulation from the plaintiffs as to the authenticity of that

7  video.  So I think if they have a problem with their Discord

8  material, we might have to find another horse to trade.

9           THE COURT:  Well, I'll have to know why -- assuming

10  it's authentic, do you know of any objection now you have to

11  the video?

12          MS. KAPLAN:  Yeah, it's a two-hour video, Your Honor.

13  There may be admissibility issues with respect to Mr. Cantwell.

14          I don't -- let me just respectfully say, I don't

15  think the parties should be having negotiations about

16  individual pieces of evidence like this.

17          MR. CANTWELL:  If I'm improper procedurally, I

18  apologize.  I'm sorry, Judge.

19          THE COURT:  If there's anything in the video that is

20  relevant to any of the issues in the case, but just a two and a

21  half hour video, that's --

22          MR. CANTWELL:  If I could, Judge, it's specifically

23  alleged that we conspired to commit racially motivated violence

24  at an August 11 planning meeting.  Now, when the plaintiffs

25  filed their complaint, I think they were unaware that I had

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  recorded that entire meeting, and so, unfortunately, when you

2  accuse us of doing something and there is a video of the

3  distinct absence of that thing happening, I don't know how to

4  show the jury the absence of it without showing them the entire

5  video.

6          THE COURT:  Have the plaintiffs seen the video?

7          MS. KAPLAN:  We have, Your Honor.  There's going to

8  be lots of video testimony in this case.

9          THE COURT:  All right.  The Court will have -- I

10  mean, it's too early for the Court to tell you -- I haven't

11  seen it, and it's too early for the Court to be trying to take

12  that up now.

13          MS. KAPLAN:  So, Your Honor, I have two things.

14          One, with respect to opening arguments, we intend to

15  show certain pieces of evidence during our arguments, including

16  videos.  We have put -- we can put -- we have put defendants on

17  notice of all of those, I think two days ago.  We've gotten

18  some responses from defendants of what they intend to do in

19  opening, but I just wanted to let the Court know and be aware.

20          And two, Your Honor, Mr. Cantwell filed an

21  affidavit -- I think it was this morning or last night -- about

22  the conditions where he's currently incarcerated.  Our current

23  view, unless Your Honor disagrees, is we're not going to --

24  it's ECF 1333.  Our current position is, given the severance

25  issues, we're not going to respond to any of those unless Your

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   Honor would like us to, but we think that issue has been dealt

2   with as a result of the severance.

3          THE COURT:  Well, I'll have to look at them.  If we

4   need a response, we'll have one.

5          What do you know today about Mr. ReBrook?

6          MR. KOLENICH:  Your Honor, I don't know anything

7   directly.  Mr. Smith reported that he communicated with him,

8   and Mr. ReBrook had a common medical issue and it's going to

9   take him a few days to recover.

10         Do you want me to be explicit about it?

11         THE COURT:  If he cannot be here during the opening

12   statement, we can let him do it from Zoom.

13         MR. KOLENICH:  I will attempt to advise him of that

14   fact, Your Honor.

15         THE COURT:  I imagine the opening statements are

16   going to be pretty long?

17         MS. KAPLAN:  They may end up being shorter than you

18   think, Your Honor, but they're not going to be ten minutes for

19   sure.  Our estimate for plaintiffs is somewhere on the range of

20   90 minutes.

21         MR. KOLENICH:  Your Honor, since they did provide us

22   with their proffer or their planned exhibits for opening, there

23   are one or two that there would be objections regarding the

24   content of the video or the exhibit.  I don't know when the

25   Court wants us to take those up.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1          MS. DUNN:  Your Honor, we would propose that we meet

2     and confer with the defense, which is usually the process post

3     disclosure.  Then if there's an issue, we can bring it to Your

4     Honor.

5          THE COURT:  If there's any objection to the video

6     that you think would not be admissible -- generally if it's

7     going to be admissible in the case, I would allow you to use

8     it, but if it's not -- if you think it's not going to be

9     admissible...

10         MR. KOLENICH:  That's -- just a couple discrete

11    issues.  The vast majority of them are not objectionable.

12         THE COURT:  Maybe you all can get together on that.

13         MR. KOLENICH:  I did not in fact attempt to meet and

14    confer, Your Honor.  Sorry.

15         MS. DUNN:  Your Honor, we would like to meet and

16    confer with the defense.  Thanks.

17         THE COURT:  Okay.  Anything else?

18         All right.  See you all --

19         MR. CANTWELL:  Actually, I'm sorry, if I could

20    briefly, Judge.  I was going through some of the Court's orders

21    that were just recently given to me, and I recalled from a

22    pretrial conference I was brought to via Zoom meeting from the

23    CVRJ, the Central Virginia Regional Jail -- this is Chris

24    Cantwell for the defense.  And at that conference you had

25    mentioned to me three ECF numbers of motions in limine that I

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1  had -- that I had submitted that you were deciding on

2  imminently.

3          And I have your order on two of those.  One was the

4  motion in limine for a determination that bias against those

5  who identify as Jews is not a form of class-based invidiously

6  discriminatory animus, and the motion in limine to exclude all

7  evidence of defendants' perceived biases against those who

8  identify as Jews.

9          During the pretrial conference, you had also included

10  in this another similar motion for a motion in limine that --

11  determination that bias against Antifa and the woke progressive

12  left is not a form of class-based invidiously discriminatory

13  animus.

14          So when I saw this with just the two, I wonder if I'm

15  missing something, if the similar motion for Antifa had been

16  decided on, and if that's something that we want to pursue

17  before the trial gets underway.

18          THE COURT:  That's on the way.

19          MR. CANTWELL:  Excellent.  Thank you, Judge.

20          THE COURT:  Anything else?

21          MS. KAPLAN:  Not from us, Your Honor.

22          THE COURT:  All right.  I appreciate you all's

23  cooperation in getting to this point in the case.  It took a

24  little longer than we expected, but that's all right.

25          I'll see you tomorrow morning, then, at 9 o'clock.

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1   I'll be here well before then.  If you all are meeting and

2   conferring, have some issue you think needs to be taken up, let

3   us know and we'll try to come in a few minutes early.

4            MS. KAPLAN:  Thank you, Your Honor.  We appreciate

5   that.

6   (Proceedings adjourned, 1:28 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17-cv-72, 10/27/2021

1                    C E R T I F I C A T E

2        I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3    the United States District Court for the Western District of

4    Virginia, appointed pursuant to the provisions of Title 28,

5    United States Code, Section 753, do hereby certify that the

6    foregoing is a correct transcript of the proceedings reported

7    by me using the stenotype reporting method in conjunction

8    with computer-aided transcription, and that same is a

9    true and correct transcript to the best of my ability and

10   understanding.

11       I further certify that the transcript fees and format

12   comply with those prescribed by the Court and the Judicial

13   Conference of the United States.

14       /s/ Lisa M. Blair                Date: October 27, 2021

15

16

17

18

19

20

21

22

23

24

25