IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES et al., )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>JASON KESSLER et al., )<br>    Defendants. ) | Civil Action No. 3:17-cv-00072<br><br>MEMORANDUM OPINION & ORDER<br><br>By:   Joel C. Hoppe<br>         United States Magistrate Judge |

This matter is before the Court on three Defendants' nondispositive "Emergency Motion for Protective Order Temporarily Restricting Extrajudicial Statements By Parties, Their Counsel, and Any Organization Funding This Litigation," ECF No. 1114. *See* Pretrial Order, ECF No. 101. Defendants Matthew Heimbach, Matthew Parrott, and Traditionalist Worker Party ("Movant-Defendants") ask the Court to direct all the parties, their counsel, and any "organization funding this litigation—specifically, a tax-exempt 501(c)(3) entity that calls itself 'Integrity First for America'"—not to make any "extrajudicial public statements" about this litigation "until the end of trial." *Id.* at 1 (punctuation corrected). Non-party Integrity First for America ("IFA") opposes the request. ECF No. 1211. Movant-Defendants' motion, ECF No. 1114, is DENIED for the reasons stated below.

In the United States, all speech "is presumptively protected under the First Amendment unless it falls within 'certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem.'" *In re White*, No. 2:07cv342, 2013 WL 5295652, at *38 (E.D. Va. Sept. 13, 2013) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)). "These categorial exceptions from First Amendment protection include 'the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those by which their very utterance inflict injury or tend to incite an

1

immediate breach of the peace." *Id.* (quoting *Chaplinsky*, 315 U.S. at 572). "They also include 'true threats'" of physical violence "and speech that incites imminent lawless action." *Id.*; *see* Mem. Op. & Order of May 29, 2020, at 4–12 (denying Plaintiffs' motion to enjoin pro se Defendant from making certain remarks about Plaintiffs' counsel because Defendant's past comments, "while reprehensible," did not rise to the level of a "true threat"), ECF No. 747.

Movant-Defendants essentially seek a gag order prohibiting the parties, their attorneys, and non-party benefactors from discussing this case in public until the four-week jury trial is over. *See* Mot. 1, 3, 6. "Even among first amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two" presumptively unconstitutional "forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). "In light of these twin presumptions, gag orders must survive strict scrutiny." *Id.* at 797. This means that such orders must *both* "serve a 'compelling' public interest," *id.*, *and* "be 'narrowly tailored' to serve their intended purpose," *id.* at 799 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)).

In the Fourth Circuit, a gag order imposed by a trial court must be supported by an adequate factual record and reasoning "specific enough to enable the reviewing court to determine whether the order survives rigorous scrutiny." *Id.* at 797; *see, e.g.*, *id.* at 798 ("The district court—without adequate factual findings or development of a record—found that a 'significant increase in trial publicity' supported the gag order. But the fact of publicity is hardly dispositive. Publicity often accompanies trials, including trials in which the public has a keen and understandable interest. The judicial process does not run and hide at those moments when public appraisal of its workings is most intense."). While "[o]ur system of justice properly requires that civil litigants be assured the right to a fair trial," using a gag order to ensure that

right could serve "a compelling public interest . . . only when there is a 'reasonable likelihood' that a party would be denied a fair trial without [an] order" restricting extrajudicial speech about the litigation. *Id.* at 797 (quoting *In re Russell*, 726 F.3d 1007, 1010 (4th Cir. 1984)). And, "[e]ven when a gag order furthers a compelling interest, it must be the least restrictive means of furthering that interest." *Id.* at 799 (internal quotation marks omitted). Generally, the trial court must "explain if and why [less restrictive] alternatives had proven ineffective" before resorting to a gag order. *Id.*; *see also id.* at 800 ("Gag orders should be a last resort, not a first impulse."). For example, even in cases where there is a reasonable likelihood that a party will not receive a fair trial, the trial court can employ "tools short of gag orders," such as "enlarged jury pools, *voir dire*, changes to a trial's location or schedule, or cautionary jury instructions," to safeguard that right. *Id.* at 799. The presiding District Judge has already found that the "pretrial and any trial publicity" around this case did not justify moving the jury trial outside of Charlottesville, Mem. Op. & Order of June 18, 2021, at 7–8, ECF No. 980, and taken steps to ensure a thorough and effective *voir dire* of potential jurors from the city and several surrounding counties, *see, e.g.*, ECF Nos. 1167, 1172, 1279.

Movant-Defendants ask the Court to issue a blanket gag order "eliminating any further potential for any prejudicial, extrajudicial public statements until trial concludes." Mot. 6. Embedded in the motion's text (and attached as exhibits) are screenshots of an IFA fundraising email advertising a "virtual rally" held on September 30, 2021; an IFA email summarizing recent press coverage and pretrial rulings in this case; and a tweet sent by IFA's director stating that Movant-Defendants' counsel of record is a "white supremacist . . . who's spoken approvingly of race war." *Id.* at 2, 4–5; Mot. Exs. 1–3. Based on these three examples, Movant-Defendants assert "it is possible that additional contamination of the jury pool prior to *voir dire* could

3

become substantial enough that it may no longer constitute an adequate safeguard for seating a proper jury." Mot. 3. But, Movant-Defendants make no effort to show either a "reasonable likelihood" that they will be denied a fair trial without an order restricting case participants' extrajudicial comments about the litigation until end of trial, *In re Murphy-Brown*, 907 F.3d at 797, or that their proposed order forbidding *all* such speech is "the least restrictive means" of furthering a compelling public interest, *id.* at 799. Accordingly, the motion, ECF No. 1114, is hereby **DENIED**.

The Court expects all persons and organizations directly involved in this litigation to conduct themselves with the same decorum, common courtesy, and professionalism expected from everyone who comes before it, *see In re Paige*, 738 F. App'x 85, 85–86 (3d Cir. 2016), even when they are discussing this case and its participants outside the Court's presence. *See* Mem. Op. & Order of May 29, 2020, at 13 (recognizing that "constitutional protection extend[ed] even to such vituperative, abusive, and inexact speech" about this lawsuit as pro se Defendant tended to post online, *Watts v. United States*, 394 U.S. 705, 707 (1969), but "emphasiz[ing] there is a line that, if crossed," may expose case participants "to lawful sanctions without regard to [their] otherwise robust First Amendment interests," *In re White*, 2013 WL 5295652, at *57).

IT IS SO ORDERED.

ENTER: October 28, 2021

*[signature]*

Joel C. Hoppe
U.S. Magistrate Judge

4