**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **ELIZABETH SINES et al.** | : | **Case No. 3:17-cv-00072** |
| Plaintiff | : | **Judge MOON** |
| -v- | : | |
| **JASON KESSLER et al.** | : | |
| Defendants | : | |

**MOTION FOR JUDGMENT AS A MATTER OF LAW FRCP 50(a)**

Defendants Kessler, Damigo, and Identity Evropa each move, per Civ. R. 50 for judgment as a matter of law as to their own cases.

**Legal Standard**

If, after a party has been fully heard on an issue, and the court determines "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the Court may enter judgment against that party. Fed. R. Civ. P. 50 (a)(1). A litigant may move for judgment as a matter of law “at any time before the case is submitted to the jury," and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

The Court must view the evidence "in the light most favorable to the non-moving

party," *id.*, "without weighing [its] credibility," *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 (4th Cir. 1999). The Court may only grant the motion if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party on the issues raised in a R.50 motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct 2097, 147 L. Ed. 2d 105 (2000).

**Conspiracy Claims**

Plaintiffs are required to prove, *inter alia*, "an **agreement** or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."(emphasis added) *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Plaintiffs have failed to do so within the meaning of Civ. R. 50 as more fully discussed below.

Nathan Damigo/Identity Evropa

Plaintiffs evidence that Damigo entered an agreement to commit racial violence consists primarily of evidence that Mr. Damigo knew many Unite the Right attendees[1], and that he was an admitted racist. [2] Plaintiffs also go on at length about events that did not occur during the Unite the Right event and that therefore could not possibly have injured the plaintiffs.[3]

Plaintiffs are also enamored of the fact that Damigo and other IE members engaged in physical exercise with members of the "Rise Above Movement" or "RAM". Members of RAM were later criminally convicted of violent conspiracies for activities at Unite the Right. However, the content of the communications with RAM and Damigo/IE are not established or even attempted to be established by plaintiffs. It is, therefore, a matter of speculation what Damigo/IE agreed with RAM to do at Unite the Right, if anything. Further, there is no evidence at all indicating that Damigo/IE intended to or agreed use any excessive or over the

[1] See Trial Day 13 pgs. 174-175
[2] Id. at pg. 160.
[3] Id. at pg. 167-240 referencing the so called "Battle of Berkeley"

top violence in response to any Antifa provocation. Importantly, there is no evidence in the record of any agreement of any kind between Damigo/IE and any Nationalist Front group. There is therefore no means at all by which plaintiffs can demonstrate an agreement between Damigo/IE and James Fields.

Richard Spencer and Elliott Kline

Plaintiffs other line of attack as to Damigo/IE is to use the misconduct of sanctioned defendant Elliott Kline as proof of Identity Evropa culpability since Kline was an officer of IE be assigned to an organization when its officer has "an independent, personal stake in the conspiracy". Buffalo Wings Factory Inc. v. Mohd, 622 F. Supp 2d 325, 335 (E.D. VA 2007).

The evidence in this case shows that Elliott Kline was working for defendant Richard Spencer or attempting to position himself to do so, and that Kline was not acting for the interests of or with the authorization of IE. [4] As such the actions of Elliott Kline cannot establish any agreement by Damigo or IE as to the alleged conspiracy.

Jason Kessler

While it is true that Kessler knew and communicated with just about every important person or group that attended Unite the Right it is equally true that there is no evidence that said persons or groups agreed with Mr. Kessler to do anything regarding the political rallies at all much less engage in a race based violent conspiracy.[5]

Plaintiffs showed Kessler a series of exhibits during his direct examination with which they attempt to show that Kessler plotted unjustified violence against at least the Antifa. However, each of the exhibits shows Kessler merely expecting Antifa to make the first

[4] See Trial day 9 at p. 133 and pgs. 193-206 wherein defendant Spencer describes his knowledge of IE's hierarchy then later denies such knowledge, and admits that IE members had responsibilities to report to Spencer and that E. Kline did in fact work for Spencer at least as a bodyguard.

[5] See Day 10 p. 127 witness Dr. Hill states League of the South had no agreement with Kessler or anyone outside the Nationalist front groups regarding entering or exiting the park on August 12; Trial Day 12 p. 209 defendant Parrott confirms Hill's testimony regarding no agreement with Kessler.

unlawful move since "they always do that"[6] Kessler, moreover, testified that it was up to Antifa to start something or they could be no fight between the Alt-Right and Antifa.[7]

Plaintiffs signally failed to put in any evidence rebutting Kessler's testimony that there could be no fight unless Antifa started one.

In addition, there is zero evidence that Kessler had any understanding or intent to respond to Antifa pushing and shoving and rock and bottle throwing with over the top or even lethal force. At most, Kessler agreed to things such as the use of makeshift flagpoles as self defense weapons and then only where there was what Kessler understood as legal right to use them as such. There is, moreover, no evidence of an existing agreement between Kessler and any Nationalist front group at the time of the rally on August 12, 2017 and therefore no means by which plaintiffs can establish an agreement encompassing Kessler and James Fields.

As a last ditch effort, plaintiffs introduced evidence that Kessler issued a single tweet approving of the murder of Heather Heyer and that Kessler requested that Elliott Kline delete the relevant Discord channel in the aftermath of the murder of Ms. Heyer. Kessler, however, was not a member of any group whose actions he could legally ratify.[8] As to the Discord server request, this fact merely demonstrates that Kessler did not have authority over the Discord as he had to ask Richard Spencer's associate Elliott Kline to delete it. Further, the entire Discord was produced to the plaintiffs and available in this litigation and its contents signally fail to prove a wrongful conspiracy by Kessler, Damigo, or IE.

Abandonment/end of conspiracy

---

[6] Trial Day 16 at p. 54:16.
[7] Id. at pgs 86-87.
[8] NAACP v. Claiborne Hardware 458 US 886 (1982).

"coconspirators may be held vicariously liable for those independent acts until the object of the conspiracy has been achieved or the coconspirators effectively withdraw from or abandon the conspiracy, Hengle v. Asner, 433 F. Supp. 3d 825, 893 (E.D. Va. 2020)

Plaintiffs have alleged a conspiracy to harm them at the unite the right events. However, the great majority of the plaintiffs were injured by the James Fields car attack which occurred about 2 hours after the Unite the Right event had ended. As such, the car attack was outside the scope of any conspiracy the plaintiffs evidence could possibly prove existed.

Moreover, Kessler, Damigo, and IE had all abandoned the area physically by the time Fields perpetrated his criminal act. They had therefore, physically abandoned the conspiracy.

**§ 1986 claims**

Defendants need not be participants in conspiracy under 42 USCS § 1985(3) for liability to attach under 42 USCS § 1986; if defendants knew of conspiracy, were in position to prevent its implementation, and neglected or refused to prevent it, they would be liable under § 1986. Park v. City of Atlanta 130 F.3d 1157 (11th Cir. 1997).

Here there is no evidence Damigo or IE knew of any conspiracy and therefore they cannot be liable under §1986. Plaintiffs appear to rely on the fact that Damigo and Kline were officers of IE and therefore could have at least notified the police of the wrongful conspiracy. However, for the same reasons adduced above, Damigo was unaware of any conspiracy and IE is not responsible for any misconduct by Elliott Kline.

In addition to being unaware of any conspiracy, Kessler was questioned on the subject of stopping the violence, especially as to the August 11 torch rally. The record evidence, however, demonstrates that Richard Spencer and Elliott Kline were leading the events on August 11, not Kessler. Moreover, Kessler's unrefuted testimony was that he tried, but failed,

to stop the tiki torch marchers from surrounding the counterprotestors at the relevant statue.[9] Accordingly, there is insufficient record evidence to show that Kessler failed to try to stop the violence on August 11. Rather, the evidence shows Kessler tried but failed. Plaintiffs made no effort to show that Kessler or Damigo/IE could have stopped the situation on August 12.

**Plaintiff Wispelwey**

Rev. Wispelwey claims he was damaged when an unidentified "Nazi" pushed him to the ground and verbally abused him on August 12, 2017. Admitted video evidence demonstrates that this event did not occur as Wispelwey claims. More to the point, there is no evidence at all that Kessler, Damigo, or IE ever agreed with anyone to engage in any unprovoked assaults or that they ever planned to target clergymen.

**August 11 claim against Kessler only**

This claim is not brought as a conspiracy claim. Plaintiffs Willis and Romero each testified and neither stated they saw or heard Mr. Kessler do a single thing to personally victimize either one of them. No other competent evidence demonstrates that Kessler engaged in any individual misconduct that injured the relevant plaintiffs.

**CONCLUSION**

For the reasons stated as well as those stated in open Court, the defendants are ntitled to judgment as a matter of law as to all claims against them. Each of the claims against Jason Kessler, Nathan Damigo, and/or Identity Evropa must be dismissed and not submitted to the jury.

Respectfully Submitted,

[9] Trial day 16 at p. 126.

s/ James E. Kolenich
James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
JEK318@gmail.com

s/ Elmer Woodard
Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net
Trial Attorneys for Jason Kessler, Nathan Damigo, and Identity Evropa

CERTIFICATE OF SERVICE

I certify the above was served on NOVEMBER 17, 2021 on all ECF participants and that parties requiring service by other means were served as follows: Robert Ray azzmador@gmail.com Vanguard America c/o Dillon Hopper dillon_hopper@protonmail.com Elliott Kline eli.f.mosley@gmail.com deplorabletruth@gmail.com Richardspencer@gmail.com
Christopher Cantwell delivered in person while in the courtroom

Respectfully Submitted,

s/ James E. Kolenich