# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> JASON KESSLER, *et al.*, <br><br> *Defendants.* | CASE No. 3:17-cv-00072 <br><br><br> NOTICE <br><br><br> JUDGE NORMAN K. MOON |

## FINAL JURY INSTRUCTIONS & VERDICT FORM

## Final Jury Instruction # 1

### General Instructions

Members of the jury:

Now that you have heard all of the evidence in the case, it becomes my duty to instruct you on the rules of law that you must follow and apply in arriving at your decision. You will follow and apply these rules of law after you have heard the final arguments of the lawyers for the parties.

It is your duty as jurors to follow the law as stated in my instructions and to apply the rules of law, so given, to the facts as you find them from the evidence in this case, and solely the evidence presented to you.

Counsel may quite properly refer to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by me in these instructions, you are governed by the instructions I am about to give you. You must follow all of the rules as I explain them to you. You may not follow some and ignore others.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to

2

be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case. You must not base your verdict on prejudice, sympathy, guesswork or speculation, but on the evidence and on the rules of law I have given you.

Justice through trial by jury must always depend on the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors and to arrive at a verdict by applying the same rules of law, as given in the instructions of the Court.

**Final Jury Instruction # 2**

**Role of the Jury & Evidence**

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The evidence in the case includes the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; all depositions read or played into the record, regardless of who may have introduced them; and all facts which may have been admitted or stipulated.

Remember that statements, objections, or arguments made by the lawyers are not evidence in the case, and you may not consider any question which contained any statement of fact as evidence of that fact, unless it was agreed to by the witness. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

4

Also, during the course of the trial, I occasionally made comments to the lawyers, or asked questions of a witness, or admonished a witness concerning the manner in which he or she should have responded to the questions of counsel. Do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for my instructions on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

## Final Jury Instruction # 3

## Jury as Judges of the Facts, Credibility, and Weight of Evidence

You are the judges of the facts, the credibility of the witnesses, and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.

You may not arbitrarily disregard believable testimony of a witness. However, after you have considered all the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper.

You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

## Final Jury Instruction # 4

### Direct & Circumstantial Evidence

While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you may feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence.

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of events and circumstances indicating that something is or is not a fact.

The law makes no distinction between the weight you may give to either direct or circumstantial evidence. It only requires that you weigh all of the evidence in reaching your verdict.

7

## Final Jury Instruction # 5

### Credibility

It is your job to decide if a party with the burden of proof on an issue has proven that issue by a preponderance of the evidence. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all the evidence as true or accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In making that decision you should consider:

- Did the witness impress you as honest?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness have any relationship with either the plaintiff or the defense?

- Did the witness seem to have a good memory?

- Did the witness clearly see or hear the things about which the witness testified?

8

- Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from the testimony of other witnesses or other evidence in the case?

These are a few of the considerations that will help you determine the accuracy of what each witness said.

Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say. In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than the other. Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.

## Final Jury Instruction # 6

### Impeachment

The testimony of a witness may be discredited or "impeached" by showing that the witness testified falsely, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with the testimony the witness gave at this trial.

### Final Jury Instruction # 6-A

**Testimony of Government Officials**

During this trial you have heard the testimony of a number of witnesses, some of whom are employees of the state, law enforcement officers, and ordinary civilians. The testimony of a government employee, or a law enforcement officer, is not necessarily deserving of more or less consideration, or greater or lesser weight, than that of an ordinary civilian witness.

11

## Final Jury Instruction # 7

### Burden of Proof

As I explained to you at the beginning of the trial, unless otherwise instructed, Plaintiffs bear the burden of proving their claims against each Defendant by what is called a "preponderance of the evidence." This burden applies to all of Plaintiffs' claims except their claims for intentional infliction of emotional distress, which will be discussed later. In the same vein, each Defendant has the burden to prove any affirmative defenses that they may advance by a preponderance of the evidence.

The term "preponderance of the evidence" means evidence which, as a whole, shows that the fact sought to be proven is more probable than not. In other words, a preponderance of the evidence means such evidence that persuades you that a fact is more likely true than not true. In your mind, you may think of this as 51%—more likely than not.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that is applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

In determining whether any fact in issue has been proven by a preponderance of the evidence, you may—unless otherwise instructed—consider the testimony of all witnesses, regardless of who may have called them, all exhibits

12

received in evidence, regardless of who may have produced them, and all depositions read into the record, regardless of who may have introduced them.

If you conclude that a party who has the burden of proof on an issue establishes his or her position by a preponderance of the evidence, you must decide that issue for the party.

## Final Jury Instruction # 8

### Expert Opinions

The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify and state his or her opinion concerning such matters. During the trial, you heard from four expert witnesses, including Dr. Deborah Lipstadt, who was qualified as an expert on antisemitism, including the history, rhetoric, language, and symbols of antisemitism; Dr. Peter Simi, who was qualified as an expert in the white supremacist movement and the culture of the white supremacist movement; Ms. Sharon Reavis, who was qualified as an expert in the fields of rehabilitation counseling and life care planning; and Dr. Nadia Webb, who was qualified as an expert in the fields of neuropsychology and medical psychology.

You should consider each expert opinion received in this case and give it such weighs as you might think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound,

14

or that the opinion is outweighed by other evidence, then you may disregard the opinion.

## Final Jury Instruction # 9

### Matters Stricken by the Court

You must not consider any matter that was stricken by the Court. It is not evidence and should be disregarded.

## Final Jury Instruction # 10

### Deposition Testimony

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

During trial, you heard the deposition testimony of various witnesses. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it the same way as if the witness was testifying in court.

Some of the deposition testimony that you heard was a video recording of the deposition. Other deposition testimony that you heard may have been read out loud by an attorney. If the deposition testimony was read out loud, you should not place any significance on the behavior or tone of voice of any person reading the questions or answers.

17

## Final Jury Instruction # 11

## Invocation of Fifth Amendment Privilege by Non-Party Witness

As I just noted, under the Fifth Amendment of the United States Constitution, a person has the right to refuse to answer questions that may tend to incriminate him in criminal activity. During this case, you heard deposition testimony from certain non-party witnesses, including Benjamin Daley and Vasillios Pistolis, who refused to testify or answer questions by exercising their Fifth Amendment privilege against self-incrimination.

With respect to each witness's refusal to testify, you may, but are not required to, infer that their testimony would have been unfavorable to a Defendant associated with that witness if you find that the witness is sufficiently associated with that Defendant so as to justify the adverse inference. Where the witness is sufficiently associated with a party to justify an adverse inference depends upon all the circumstances of the case. For example, a witness who is a past or present employee, officer or agent of a party may be, but is not necessarily, sufficiently associated with that party to justify an adverse inference. Likewise, a coconspirator may be sufficiently associated with a party to permit the drawing of an adverse inference to the party if the coconspirator refuses to testify.

19

If, however, you find that the witness is not sufficiently associated with the party, you are instructed that you are not to attach any significance to that witness's refusal to testify. In other words, you should not make any assumption or speculate why the witness chose to exercise his constitutional privilege. In addition, if the witness is not sufficiently associated with either of the parties, you are not to infer anything adverse or unfavorable to either party in the case because the witness refused to testify.

**Final Jury Instruction # 12**

**Conspiracy to Commit Racially Motivated Violence – 42 U.S.C. § 1985(3)**

Plaintiffs claim that Defendants conspired to commit racially motivated violence in violation of 42 U.S.C. § 1985(3). All Plaintiffs except Chelsea Alvarado bring this claim against all Defendants. Plaintiff Alvarado brings this same claim against all Defendants except James Fields.

To prove this claim, Plaintiffs must prove:

*First*:       The existence of a conspiracy of two or more persons;

*Second*:    The persons involved in the conspiracy were motivated, in whole or part, by animus against Black or Jewish individuals, or motivated, in whole or part, because Plaintiffs were advocates of supporters of Black and Jewish individuals;

*Third*:      A purpose of the conspiracy was to deprive Plaintiffs of their right to be free from racially motivated violence;

*Fourth*:    At least one person involved in the conspiracy took an overt act in furtherance of the conspiracy; and

*Fifth*:       As a result of the conspiracy, Plaintiffs were injured.

I will take these elements in turn.

2

## Final Jury Instruction # 13

### 42 U.S.C. § 1985(3) - Existence of a Conspiracy

The **first** element is the existence of a conspiracy. A conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of unlawful partnership in which each member becomes the agent of every other member. While the Plaintiffs must prove that the conspiracy had an unlawful objective, Plaintiffs need not prove that the conspiracy had only an unlawful purpose. Co-conspirators may have legal as well as unlawful objectives. A conspiracy may have several objectives, but if any one of them, even if it is only a secondary objective, is to violate the law, then the conspiracy is unlawful.

Plaintiffs do not need to prove that the alleged conspirators entered into any formal agreement or that they directly stated between themselves all of the details of the scheme. Plaintiffs are not required to produce a written contract or even produce evidence of an express oral agreement spelling out all the details of the understanding. An informal agreement may be sufficient. All Plaintiffs must show is an agreement to cause racially motivated violence.

Plaintiffs are also not required to show that all the Defendants they alleged as members of the conspiracy were, in fact, parties to the alleged agreement, or that

3

all of the members of the alleged conspiracy were named or alleged in this lawsuit, or that all of the people whom the evidence shows were actually members of the conspiracy agreed to all of the means or methods set out in the complaint.

By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little evidence of such an agreement. Therefore, Plaintiffs may prove a conspiracy by circumstantial evidence. Circumstantial evidence tending to prove a conspiracy may include evidence of a Defendant's relationship with other members of the alleged conspiracy, the length of any such association, the Defendant's attitude and conduct, and the nature of the alleged conspiracy.

Simply put, to find that an agreement existed between conspirators, you must be convinced, by a preponderance of the evidence, that there was a mutual understanding, either spoken or unspoken, between the conspirators to commit at least one unlawful act. A conspiracy can be made up of persons from allegedly rival groups, and that does not disprove the conspiracy's existence. The law holds co-conspirators liable for all the reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy.

**Final Jury Instruction # 14**

**Membership in a Conspiracy**

Because there are multiple defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators. If a person understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to prove him as being a member of the conspiracy even though the person had not participated before and even though he played only a minor part.

The extent of a Defendant's participation, if any, has no bearing on the issue of a Defendant's membership, if any. A conspirator's membership is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

Moreover, once a conspiracy is established, even a slight connection between the defendant and the conspiracy could be sufficient to include him in the

5

plan. To be clear, that does not mean that Plaintiffs' burden of proof is "slight." Before the jury may find that a defendant, or any other person, became a member of the conspiracy, the evidence in the case must show by a preponderance of the evidence that the defendant knew the purpose or goal of the agreement or understanding of that conspiracy and then deliberately entered into the agreement, intending in some way to accomplish the goal or purpose by this common plan or joint action.

In attempting to prove a Defendant's membership in the alleged conspiracy, Plaintiffs may rely on all direct and circumstantial evidence, including the nature of the alleged conspiracy, the Defendant's association to other members of the alleged conspiracy, if any, the Defendant's conduct before, during, and after the relevant events, and the Defendant's presence at the scene of events, if applicable.

6

## Final Jury Instruction # 15

### Withdrawal from Conspiracy

To find that a Defendant has withdrawn from or abandoned a conspiracy, the Defendant must prove that he:

(1)     Undertook affirmative steps, inconsistent with the object of the conspiracy, to disavow or defeat the goal or purposes of the conspiracy; and

(2)     Either acted in a manner reasonably calculated to notify co-conspirators that he was no longer participating in the conspiracy, or disclosed the conspiracy to law enforcement authorities.

Mere inactivity is not proof of withdrawal. Furthermore, even if a Defendant tells others of his intention to withdraw, he has not withdrawn if he continues to act in furtherance of the object of the conspiracy.

If you have concluded that a Defendant was a member of a conspiracy, that Defendant bears the burden of proving, by a preponderance of the evidence, that he withdrew from the conspiracy; there must be evidence of some affirmative act of withdrawal.

## Final Jury Instruction # 16

### 42 U.S.C. § 1985(3) – Racial Animus

The **second** element is that Plaintiffs must prove that the Defendants were motivated by some discriminatory animus. In this case, that means that Plaintiffs must prove that Defendants were motivated either by dislike or hate for Black or Jewish people, or by hatred or dislike towards persons because of their advocacy or support for Black or Jewish people.

This discriminatory reason does not have to be the sole basis for the Defendant's asserted dislike or hate of the Plaintiffs. As long as the dislike or hatred is not wholly personal to a specific individual, that is, as long as there is some intent to discriminate against Black people, Jewish people, or their supporters, as a class, you may find that the Defendants acted with sufficient discriminatory animus.

If you find that the Defendants acted, at least in part, with at least one of these types of discriminatory animus, you must find for the Plaintiffs on this element even if Defendants also possessed some other motive, such as a desire to join together for mutual protection. That is because, as mentioned above, co-conspirators may have legal as well as unlawful objectives.

8

**Final Jury Instruction # 17**

**42 U.S.C. § 1985(3) – Purpose of the Conspiracy**

The purpose of 42 U.S.C. § 1985(3) is to deter two or more people from conspiring to deprive persons of their rights because they are members of a racial group or supporters of the rights of racial minorities. In this case, Plaintiffs allege that the Defendants interfered with their Thirteenth Amendment right to be free from racially motivated violence. If you find that Plaintiffs have shown by a preponderance of the evidence that this right has been violated, you must find for the Plaintiffs on the third element of their claim, which requires that they prove that a purpose of the conspiracy was to deprive them of their right to be free from racially motivated violence.

9

## Final Jury Instruction # 18

## 42 U.S.C. § 1985(3) – Overt Act

The **fourth** element is that at least one of the Defendants took an overt act in furtherance of the alleged conspiracy. An "overt act" means some type of outward objective action performed by one of the members of the conspiracy which evidences that agreement. An overt act may be an act which is entirely innocent when considered alone, but which is knowingly done in furtherance of some object or purpose of the conspiracy. All Plaintiffs must prove is a single overt act by just one of the alleged conspirators.

## Final Jury Instruction # 19

## 42 U.S.C. § 1985(3) – Injuries Sustained

The **fifth** element is that the Plaintiffs show that they suffered injuries as a consequence of the alleged conspiracy. Injuries in this context include physical injuries, pain and suffering, and demonstrable emotional harms, and any economic losses resulting therefrom.

Plaintiffs may satisfy this element by showing that a member of the conspiracy did, or caused to be done, the acts which injured Plaintiffs. To make this showing, Plaintiffs need not identify a particular person who caused their injuries. Instead, it is sufficient if Plaintiffs offer specific evidence which shows that their injuries were proximately caused by the Defendants' overt and unlawful actions. An act is a proximate cause of an injury if it was a substantial factor in bringing about that injury, and if the injury was a reasonably foreseeable consequence of the defendant's act. Moreover, a defendant need not have foreseen the precise nature of an injury in order to be held liable for it; the Defendant can be liable so long as the injury was "of the same general nature as foreseeable risk created by" his conduct.

In making this showing, each Plaintiff need not be able to point to an injury caused by each member of the conspiracy. Instead, the law holds conspirators

11

liable for all the reasonably foreseeable acts of their co-conspirators. In other words, a Defendant may be held liable even if he did not personally participate in the acts or plans of his co-conspirators or even if the defendant did not have actual knowledge of those acts or plans, so long as those acts or plans were reasonably foreseeable to the Defendant. The reason for this is simply that a co-conspirator is deemed to be the agent of all other members of the conspiracy. Therefore, all of the co-conspirators bear responsibility for acts or plans that are undertaken to further the goals of the conspiracy.

Recall also that Plaintiffs are not required to show that all of the members of the alleged conspiracy were named or alleged in this lawsuit. Regardless whether a person was named in this lawsuit, if you find by a preponderance of the evidence that he was a member of the conspiracy, then any acts done or statements made in furtherance of the conspiracy by that person may also be considered against the Defendants.

## Final Jury Instruction # 20

### Organizational Defendants – Unincorporated Associations

Some of the Defendants that Plaintiffs seek to hold liable may be organizations called "unincorporated associations." An "unincorporated association" is a voluntary group of persons joined together by mutual consent for the purpose of promoting some stated object. Generally, unincorporated associations have the ability to prescribe the conditions or qualifications of their membership or their duties, to enlarge or reduce their membership, to enlarge or decrease the scope of their activities, and to dissolve the association. Thus, to find that one of theses Defendants was an unincorporated association, you must find that it was an organized group made up of persons who became members of it voluntarily, and who were subject to certain rules or bylaws.

Any Defendant who you find qualifies as an unincorporated association may be held liable for the actions of any of its leaders or members who took part in and joined in the conspiracy, if that person acted with the authorization of the association and to promote the association's purpose. But an unincorporated association cannot be held liable for the acts of a member which it did not control or authorize, unless the association subsequently ratified the member's actions. An intention to ratify may be inferred by words, conduct or silence on the part of the

13

association, through its officers or members, which reasonably indicates the association's desire to affirm the unauthorized actions.  Ratification can only occur if the ratifier has full knowledge of the material facts surrounding the act in question.

In addition, if you find an organizational Defendant liable, a Defendant who is a member of that organization may also be held liable if the Defendant personally participated in the unlawful acts or if the Defendant set proceedings in motion or agreed to a course of action which culminated in the wrongful conduct. Mere membership in an unincorporated association is insufficient, however. Rather, Plaintiffs must show that the association possessed unlawful goals and that the Defendant held a specific intent to further those unlawful aims.

14

## Final Jury Instruction # 21

### Organizational Defendants – Incorporated Entities

Some of the Defendants that Plaintiffs seek to hold liable may be corporations.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

An "agent" is a person who performs services for a corporation under an express or implied agreement and who is subject to the corporation's control or right to control the manner and means of performing the services. A corporation may be liable for the acts of its agents even if the agent does not receive compensation for his services.

For you to find a corporate Defendant liable, Plaintiffs must prove three elements by a preponderance of the evidence:

*First*:    That the unlawful conduct was committed by an employee or agent of the corporation;

*Second*:    That, in committing the unlawful conduct, the employee or agent was acting within the scope of his employment or within his apparent authority; and

15

***Third***:          That, in committing the unlawful conduct, the employee or agent was acting on behalf of or for the benefit of the corporation.

The term "scope of employment" is defined to include all those acts falling within the employee's or agent's general line of work, when they are motivated, at least in part, by an intent to benefit the corporation.  An agent may act for his own benefit while also acting for the benefit of the corporation.

While the act of an employee or agent is within the scope of his employment or within the scope of his apparent authority, the corporation is held legally responsible for it.  This is true even though the actions of the employee or agent may be unlawful, and contrary to the corporation's actual instruction.  A corporation may be responsible for the action of its agents done or made within the scope of their authority, even though the conduct of the agents may be contrary to the corporation's actual instruction, or contrary to the corporation's stated position.

In addition, a corporation that ratifies the acts of someone who was purporting to act as the corporation's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

16

### Final Jury Instruction # 21-A

### Further Instruction on Organizations and Conspiracy

It is possible for an organization to conspire with its agent, officer, or employee, if that person had an independent, personal stake in the conspiracy. However, the organization must have acted through a different agent, officer, or employee than the one with an independent, personal stake in the conspiracy in order to so conspire.

It is also possible for the agent, officer, or employee who has an independent, personal stake in the conspiracy to conspire with other persons besides his own organization.

17

## Final Jury Instruction # 22

## Failure to Stop Conspiracy -- 42 U.S.C. § 1986

All Plaintiffs except Chelsea Alvarado bring a claim under 42 U.S.C. § 1986 against all Defendants.  Plaintiff Alvarado brings this same claim against all Defendants except James Fields.

A Defendant may be liable under Section 1986 for failing to prevent a conspiracy to commit racially motivated violence even if he was not involved in that conspiracy.  Defendants charged under Section 1986 with neglecting to intervene in a Section 1985(3) conspiracy do not have to personally share the same discriminatory animus.

To prevail on their Section 1986 claim against any given Defendant, a Plaintiff must prove the existence of a Section 1985(3) conspiracy, and prove each of the following three elements by a preponderance of the evidence:

*First*:   That the Defendant knew about the wrongs conspired to be done in the Section 1985(3) conspiracy, even if he was not involved with the conspiracy;

*Second*:   That the Defendant had the power to prevent or aid in preventing the wrongs committed as part of such conspiracy; and

*Third*:   That the Defendant either neglected or refused to prevent such wrongs.

18

In other words, this claim does not require Plaintiffs to prove that a Defendant actually was involved in the conspiracy.  It only requires Plaintiffs to prove that a Defendant *knew* of the conspiracy, had the power to prevent the wrongs to be done, and either neglected or refused to prevent those wrongs.

19

## Final Jury Instruction # 23

## Civil Conspiracy – Under Virginia Law

In addition to Plaintiffs' claim that Defendants conspired to commit racially motivated violence in violation of Section 1985(3), which is a claim under federal law, Plaintiffs also bring a claim that Defendants violated Virginia state law by conspiring to commit a variety of unlawful and tortious actions against them. All Plaintiffs except Chelsea Alvarado bring this claim against all defendants. Plaintiff Alvarado brings this same claim against all Defendants except James Fields.

Under Virginia law, persons who conspired together to commit one or more unlawful acts may be held liable for the injuries that result from that conspiracy. Plaintiffs allege that the Defendants conspired with one or more persons to commit one or more of the following unlawful acts:

- Subjecting persons to actions of intimidation or harassment, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1 (often referred to as Virginia's hate crimes statute);

- Directing violence at another person, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1;

- Committing an unwanted touching that was neither consented to, excused, or justified (battery);

20

- Engaging in an overt act intended to inflict bodily harm, or intended to place the victim in fear or apprehension of bodily harm (assault); and

- Causing a reasonable apprehension that force will be used unless a person willingly submits and causing him to submit to the extent that he is denied freedom of action (false imprisonment).

Each of these alleged unlawful or tortious acts has its own specific elements that Plaintiffs must prove. For example, false imprisonment is an intentional restriction of a person's freedom of movement without legal right. A false imprisonment results from the intentional use of force, words, or acts which the person restrained is afraid to ignore or to which he reasonably believes he must submit. It is not a legal defense to a claim of false imprisonment that one had an honest or a reasonable belief that he was acting lawfully in restricting another's freedom. Any intentional restriction of a person's freedom that is without legal right is a false imprisonment.

Importantly, Plaintiffs need only prove that Defendants conspired to commit *one* of these underlying acts to impose liability. And, unlike Plaintiffs' § 1985(3) claim, Plaintiffs' Virginia law conspiracy claim only requires Plaintiffs to prove that Defendants harbored discriminatory animus if that is an element of the underlying unlawful or tortious act. For example, discriminatory animus is not

21

required to prove assault or battery and is thus not required to prove a conspiracy to commit assault and battery.

Soon, I will instruct you on the elements that Plaintiffs must prove for the other unlawful or tortious acts alleged by Plaintiffs, which include assault and battery, and violations of the Virginia hate crimes statute.

Plaintiffs must prove by a preponderance of the evidence that an agreement to commit any one of these objects of the alleged conspiracy existed. It would be sufficient if Plaintiffs prove by a preponderance of the evidence that the alleged conspiracy existed to commit one of those offenses. I previously instructed you as to the law governing the existence of a conspiracy and membership therein including in Instructions 13-15, and those principles are applicable here.

## Final Jury Instruction # 24

### Violation of Virginia Code § 8.01-42.1

As previously mentioned, Plaintiffs allege that Defendants engaged in a civil conspiracy to violate Virginia Code § 8.01-42.1 (often referred to as Virginia's hate crimes statute). Plaintiffs Romero and Willis also bring a standalone claim against Defendants Kline, Spencer, Kessler, Ray, and Cantwell under Virginia Code § 8.01-42.1 for racial, religious or ethnic harassment, or violence. Additionally, Plaintiffs Romero, Muniz, Wispelwey, Sines, Blair, Martin, and Willis, bring a standalone claim against Defendant Fields under Virginia Code § 8.01-42.1.

To prove this claim, Plaintiffs must prove, by a preponderance of the evidence, that:

1. Defendants subjected them to acts of intimidation and/or harassment, or violence directed at their persons. Only one of these acts (intimidation or harassment) need be shown.

2. Defendants' actions were motivated by racial, religious, or ethnic animosity.

23

Acts of intimidation need not involve violence in order to satisfy the first element of the statute.  For example, an act of intimidation or harassment can include the use of slurs, threats, or other intimidation tactics.

The term "violence" has its ordinary meaning, and can also include (but is not limited to), an assault and/or a battery by Defendants against Plaintiffs as will be defined in one minute.

24

## Final Jury Instruction # 25

## Assault and Battery – Under Virginia Law

As previously mentioned, Plaintiffs claim that Defendants engaged in a civil conspiracy to commit assault and battery.  Plaintiffs Muñiz, Sines, Blair, Martin, Baker, and Romero also bring a standalone claim for assault and battery under Virginia state law against Defendant Fields.

"Battery" means an intentional and unwanted touching of another without justification, excuse, or the consent of the other.

"Assault" means any threatening act that is intended to put another person in reasonable fear of imminent physical injury.  Words alone are never assault.  To succeed on their claim of assault and battery, Plaintiffs Muñiz, Sines, Blair, Martin, Baker, and Romero, must prove by a preponderance of the evidence that:

1.  A defendant engaged in an act intended to inflict bodily harm on Plaintiffs;

2.  As a result of the defendant's actions, Plaintiffs experienced apprehension of harmful and/of offensive bodily contact or experienced such contact; and

3.  If Plaintiffs did, in fact, experience bodily contact, it was not consented to, justified, or excused.

25

Under Virginia law, it is not necessary for Plaintiffs to prove that the unwanted touching resulted in injury to their bodily persons.  For the purposes of assault and battery, it is sufficient to establish that the bodily contact harmed their mind or feelings.

### Final Jury Instruction # 26

### Intentional Infliction of Emotional Distress – Under Virginia Law

Plaintiffs Muñiz, Sines, Blair, Martin, Baker, and Romero also bring a claim for intentional infliction of emotional distress against Defendant Fields.

As I mentioned earlier, to prove this claim, Plaintiffs must meet a different standard of proof than the "preponderance of the evidence" standard, which applies to all of Plaintiffs' other claims. Plaintiffs must prove this claim by "clear and convincing evidence." Clear and convincing evidence is the measure of proof that will produce in the mind of a juror a firm belief or conviction that he has proved the issue. It is an intermediate standard, requiring more than a preponderance of the evidence, but not requiring the extent of such certainty as is required beyond a reasonable doubt in criminal cases. It does not mean clear and unequivocal; it simply means that you are convinced that it is highly probable that it is true.

Thus, to prove a claim for intentional infliction of emotional distress, Plaintiffs must show by clear and convincing evidence each of the following four things:

1. That the defendant had the specific purpose of inflicting emotional distress upon the plaintiff; intended specific conduct and knew, or should have known, that his conduct would likely result in emotional distress;

27

2. The defendant's conduct was outrageous or intolerable in that it offenders generally accepted standards of decency and morality;

3. That the plaintiff suffered severe emotional distress. Severe emotional distress is emotional distress so severe that no reasonable person could be expected to endure it; and

4. That the plaintiff's emotional distress was proximately caused by the defendant's conduct.

No physical injury is needed to establish a claim for emotional distress. Again, this standard of proof applies only to this claim. In proving emotional injuries resulting from any other claim in this case, Plaintiffs need only prove those injuries by a preponderance of the evidence.

28

**Final Jury Instruction # 27**

**Evidentiary Sanctions against Defendants Elliott Kline and Robert Ray**

**– Facts Deemed Found**

In a federal civil action like this case, parties are entitled to the disclosure of all relevant, non-privileged evidence the other side possesses or controls, including relevant documents and electronically stored information.  This pre-trial process is known as "discovery."  During the discovery process in this case, the Court has found that Defendants Elliott Kline and Robert "Azzmador" Ray failed to comply with their discovery obligations.

On account of Defendant Elliott Kline's failure to comply with his discovery obligations in this case, I have imposed as a sanction that the following facts are to be deemed established as true against Defendant Elliott Kline for purposes of this case:

1. Defendant Kline was one of the leaders of Identity Evropa from April 2017 through at least August 2017.

2. Defendant Kline entered into an agreement with one or more coconspirators to engage in racially motivated violence in Charlottesville, Virginia on August 11 and 12, 2017. Whether such coconspirator or

29

coconspirators are, or are not, a Defendant or Defendants, is a question for the jury.

3. Defendant Kline was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017, in Charlottesville, Virginia.

4. It was reasonably foreseeable to Defendant Kline and intended by him that coconspirators would commit acts of racially-motivated violence and intimidation at the events in Charlottesville on August 11 and 12, 2017. Whether such coconspirator or coconspirators are, or are not, a Defendant or Defendants, is a question for the jury.

5. After the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017, Defendant Kline ratified the racially-motivated violence at the event.

On account of Defendant Robert Azzmador Ray's failure to comply with his discovery obligations in this case, I have imposed as a sanction that the following facts are to be deemed established as true against Defendant Robert Ray for purposes of this case:

1. Defendant Ray was a writer for *The Daily Stormer* from at least July 2016 through at least March 2020.

30

2. Defendant Ray entered into an agreement with one or more coconspirators to commit racially motivated violence in Charlottesville, Virginia on August 11 and 12, 2017. Whether such coconspirator or coconspirators are, or are not, a Defendant or Defendants, is a question for the jury.

3. Defendant Ray was motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence on August 11 and 12, 2017, in Charlottesville, Virginia.

4. It was reasonably foreseeable to Defendant Ray and intended by him that the coconspirators would commit acts of racially motivated violence and intimidation at the events in Charlottesville, Virginia on August 11 and 12, 2017. Whether such coconspirator or coconspirators are, or are not, a Defendant or Defendants, is a question for the jury.

5. After the Unite the Right event in Charlottesville, Virginia on August 11 and 12, 2017, Defendant Ray ratified the racially motivated violence that occurred at Unite the Right.

You are cautioned, however, that each party is entitled to have the case decided solely on the evidence that applies to that party. The facts deemed established, which I just listed, are admitted only as to Defendants Elliott Kline and

31

Robert "Azzmador" Ray, respectively. Thus, taking those facts as true for this case against Elliott Kline and Robert "Azzmador" Ray does not relieve Plaintiffs of their burden to prove by a preponderance of the evidence the conduct committed by the other Defendants in the case. Nor does taking those facts as true as against Elliott Kline, specifically, have any bearing on Plaintiffs' burden of proof as against Defendant Identity Evropa.

## Final Jury Instruction # 28

**Evidentiary Sanctions against Defendants Elliott Kline, Robert Ray, Matthew Heimbach, Vanguard America, and Nationalist Socialist Movement – Permissive Adverse Inference**

During the discovery process in this case, the Court found that Defendants Elliott Kline, Robert "Azzmador" Ray, Matthew Heimbach, Vanguard America, and Nationalist Socialist Movement, failed to comply with their discovery obligations, specifically in that they intentionally withheld or destroyed documents and electronically stored information they were required to produce to Plaintiffs.

On account of Defendant Elliott Kline, Robert "Azzmador" Ray, Matthew Heimbach, Vanguard America, and Nationalist Socialist Movement's failures to abide by their discovery obligations in this case, I have imposed as a sanction that you are permitted, but not required, to infer that they intentionally withheld or destroyed documents and electronically stored information because they were aware that such documents and electronically stored information contained evidence that they each conspired to plan racially-motivated violence at Unite the Right.

You are cautioned, however, that each party is entitled to have the case decided solely on the evidence that applies to that party. Sanctions against these parties have no bearing on other parties.

33

## Final Jury Instruction # 29

### Limited Use of Depositions as Against Defendant Cantwell

As I instructed you throughout the trial, and I will remind you again that each party is entitled to have the case decided solely on the evidence that applies to that party, and some of the evidence in this case is limited under the rules of evidence to some of the parties and cannot be considered against the others. Plaintiffs introduced deposition testimony from Robert Isaacs a/k/a Ike Baker, Samantha Froelich, Bradley Griffin, Dillon Hopper, Vasillios Pistolis, and Thomas Rousseau, which may not considered by you in connection with Defendant Christopher Cantwell, because of his inability to be at the deposition and lack of notice thereof. However, it may be considered by you in connection with the other Defendants.

**Final Jury Instruction # 30**

**First Amendment**

Certain Defendants make the claim that their activities constituted free speech and assembly protected by the First Amendment to the United States Constitution.

The abstract advocacy of lawlessness, or mere advocacy of the use of force, is protected speech. However, if you find that the Defendants have engaged in the violations of law I have instructed you on, including a conspiracy as alleged by Plaintiffs, you may not find that the Defendants' actions were protected by the First Amendment.  The violations of law I have instructed you on are not protected by the First Amendment.

The fact that an agreement to engage in illegal conduct necessarily takes the form of words also does not confer upon it, or upon the underlying conduct, protection under the First Amendment.

35

## Final Jury Instruction # 31

### Self-Defense

Certain Defendants have claimed that much of their conduct, including preparations they made in advance of, and actions they took during, the events in Charlottesville, Virginia on August 11 and 12, 2017, were motivated by considerations of self-defense.

As I mentioned earlier, if Plaintiffs prove that the alleged conspiracy was motivated, at least in part, by discriminatory racial animus, then it is no defense that Defendants also possessed some other motive, such as a desire to join together for mutual protection. Thus, if you find that Plaintiffs proved by a preponderance of the evidence each element of their claim under 42 U.S.C. § 1985(3), considerations of self-defense will not defeat that claim. But in deciding whether Plaintiffs have proved their Section 1985(3) claim, you may consider Defendants' assertions, along with any supporting evidence from any party, that they were motivated solely by self-defense, rather than by racial animus or a desire to commit racially motivated violence. You must consider all relevant evidence as stated in other instructions.

Principles of self-defense may be a relevant consideration in determining whether Defendants should be liable for Plaintiffs' claims under Virginia state law

36

for civil conspiracy; racial, religious or ethnic harassment or violence; and assault and battery.

The following law governs Defendants' claim of self-defense.

Self-defense is an affirmative defense which a Defendant bears the burden to prove by the preponderance of the evidence. The law recognizes that a person who suffers, or is threatened with, an assault or battery that he did not provoke has a right to use as much force in self-defense as is reasonably necessary to protect himself. A person who is being assaulted, however, may not react with reasonable force unless he has reason to believe, and does believe, that it is necessary to avoid threatened bodily injury. A person who is being subjected to a battery may use such reasonable force as is necessary to repel the threat of bodily injury

Force is "reasonable" only if it was no more or no greater force or means than the person in fact believed reasonably necessary, and no more or no greater force or means than that which would appear to a reasonable person, under like circumstances, to be necessary, in order to prevent bodily injury to himself. Additionally, self-defense is not available if the Defendant provoked or initiated the conflict. In other words, a Defendant can only claim self-defense for his actions if they were in response to an unprovoked attack.

Thus, to prove self-defense, a Defendant bears the burden of proving by a preponderance of the evidence that:

(1)     A person, unprovoked, threatened the Defendant with assault or battery such that the Defendant reasonably believed that the Plaintiff was going to inflict bodily injury on him;

(2)     The Defendant, in order to avoid bodily injury, used force;

(3)     The amount of force the Defendant used was no greater than the amount he believed was necessary to prevent bodily injury; and

(4)     The amount of force the Defendant used was no greater than the amount or means a reasonable person would have used in like circumstances in order to prevent bodily injury.

A Defendant may only use the amount of force reasonably necessary to avoid the harm he believes will be inflicted upon himself. If a Defendant reasonably believes that nondeadly force will be used against him, a Defendant may only use nondeadly force against that person in self-defense. Deadly force is only allowable as a defense when a Defendant reasonably believes deadly force will be used upon himself.

38

## Final Jury Instruction # 32

### Negligence Defenses Do Not Apply

Negligence defenses, including assumption of risk, contributory negligence, and sudden emergency, are not valid defenses to any of the claims that Plaintiffs bring against Defendants.  I instruct you to disregard these defenses when assessing Defendants' liability.

39

## Final Jury Instruction # 33

### Damages Generally

If Plaintiffs have proven one or more of their claims, then you must determine the damages to which Plaintiffs are entitled. However, you should not infer that Plaintiffs are entitled to damages merely because I am giving you these instructions. I give you these instructions on damages merely because I am required to charge you on all phases of the case that you might have to consider.

Under the law, the purposes of damages is to award, as far as possible, just and fair compensation for the losses which resulted from Defendants unlawful conduct. If you find the Defendants are liable on the claims as I have explained them, you must award Plaintiffs sufficient damages to compensate them for all injuries proximately caused by Defendants' conduct. These damages are known as "compensatory damages." Compensatory damages seek to make a Plaintiff whole—that is, to compensate the Plaintiff for damages he or she suffered. In determining the compensatory damages to which Plaintiffs are entitled, you shall consider any of the following injuries that you believe Plaintiffs have proven by a preponderance of the evidence were caused by the Defendants' unlawful actions:

(1)    Any bodily injuries they sustained and their effect on Plaintiffs' health according to their degree and probable duration;

40

(2)     Any physical pain and suffering, mental anguish, or emotional distress they suffered in the past and any they are reasonably certain to experience in the future;

(3)     The reasonable value of any medical expenses incurred in the past and any that may be reasonably expected to occur in the future;

(4)     Any disfigurement or deformity and any associated humiliation or embarrassment;

(5)     Any inconvenience caused in the past and any that probably will be caused in the future;

(6)     Any earnings that Plaintiffs lost because they were unable to work at their callings;

(7)     Any loss of earnings and lessening of earning capacity, or either, that Plaintiffs may reasonably be expected to sustain in the future; or

(8)     Any property damage Plaintiffs sustained.


Your verdict shall be for a sum that fully and fairly compensates Plaintiffs for the damages sustained as a result of Defendants' unlawful actions.

Plaintiffs are not required to prove the exact amount of their damages, but they must show sufficient facts and circumstances to permit you to make a reasonable estimate of each item. If Plaintiffs fail to do so, then they cannot recover for that item.

During the trial, some of the lawyers may have argued that the Plaintiffs should be awarded a specific figure of damages. As I have instructed you before,

41

the arguments of counsel, including any statements about the appropriate damages award, are not evidence.  You as the jury must determine the appropriate measure of damages based solely on the evidence before you.

## Final Jury Instruction # 34

### Duplicate Damages

If you find that Plaintiffs are entitled to damages, you must be careful not to award double or duplicate damages.  Double or duplicate damages means more than one award of money for the same loss, injury, violation, wrong or damage.  In this case, Plaintiffs are seeking damages from Defendants under a number of claims.  Where the same acts cause the same injury or loss to Plaintiffs under more than one claim, the Plaintiffs may recover only once for that injury or loss.  To recover damages under more than one of the claims, Plaintiffs must prove Defendants' liability for each of those claims and must present evidence of distinct, separate injuries or losses under those claims.

With respect to punitive damages, however, you may make separate wards on each claim that is established.

43

## Final Jury Instruction # 35

### Collateral Source Rule

If you find for Plaintiffs on liability, in determining the damages to which Plaintiffs are entitled, you shall not reduce a Plaintiff's damages award based on any evidence tending to show that he or she has received insurance benefits, employment or government benefits, or gratuities to help offset the losses he or she incurred as a result of Defendants' unlawful conduct.

44

## Final Jury Instruction # 36

### Punitive Damages

Punitive damages are awarded, in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, and to deter or prevent a defendant and others like him from committing such conduct in the future.

You may award Plaintiffs punitive damages if you find that the acts or omissions of a Defendant were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done with a reckless or callous disregard for the rights of the injured person. Plaintiffs have the burden of proving, by a preponderance of the evidence, that a Defendant acted maliciously or wantonly with regard to the Plaintiffs' rights.

If you find by a preponderance of the evidence that a Defendant acted with malicious intent to violate the Plaintiffs' federal rights or unlawfully injure him, or if you find that a Defendant acted with a callous or reckless disregard of the Plaintiffs' rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

45

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether a Defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages, standing alone, are likely to deter or prevent this defendant from similar wrongful conduct in the future, if it was in fact wrongful, or whether punitive damages are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the Defendant may have committed.

If you decide to award punitive damages, the same purposes should be kept in mind as you determine the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which the Defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter defendant or persons like him from committing wrongful acts in the future.

46

## Final Jury Instruction # 37

## James Fields's Trial Testimony

You may have noticed that Defendant James Fields, unlike other Defendants, did not testify at trial in his own defense. That is not because he chose not to testify. Defendant Fields refused to testify at a properly noticed deposition during the discovery process in this case. To level the evidentiary playing field that may have been skewed as a result of Defendant Fields's misconduct, the Court issued the appropriate sanction against him and prohibited him from testifying in his defense at trial.

**Final Jury Instruction # 38**

**Foreperson and Verdict Form**


When you go to the jury room, you should first select one of your members to act as your foreperson. The foreperson will preside over your discussions and speak for you here in court. It is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement. Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors. Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you need to communicate with me during your deliberations, you may send a note to me through the marshal, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone—including me—how your votes stand numerically. Your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or

48

done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, a form of verdict has been prepared for your convenience. The verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

The form reads: [[**READ VERDICT FORM**]].

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

ELIZABETH SINES, *et al.*,

                                        Plaintiffs,

            v.                                                    **Civil Action No. 3:17-cv-72**

JASON KESSLER, *et al.*,

                                        Defendants.

**VERDICT FORM**

## FIRST CLAIM: 42 U.S.C. § 1985(3)

1. Did Plaintiffs prove by a preponderance of the evidence their claim that one or more Defendants engaged in a conspiracy to commit racially motivated violence in violation of 42 U.S.C. § 1985(3)?

    _____ YES   _____ NO

    If you answered "YES" to the first part of this question, please indicate (by marking each appropriate line with a check mark), any and all Defendants against whom you find that Plaintiffs proved their 42 U.S.C. § 1985(3) claim:

    _____ ALL DEFENDANTS

    If not all Defendants, specify which ones:

    _____ Jason Kessler
    _____ Richard Spencer
    _____ Christopher Cantwell
    _____ James Alex Fields, Jr.
    _____ Robert "Azzmador" Ray
    _____ Nathan Damigo
    _____ Elliott Kline
    _____ Matthew Heimbach
    _____ Matthew Parrott
    _____ Michael Hill
    _____ Michael Tubbs
    _____ Jeff Schoep
    _____ League of the South
    _____ Vanguard America
    _____ Nationalist Socialist Movement
    _____ Identity Evropa
    _____ Traditionalist Worker Party

1

## SECOND CLAIM: 42 U.S.C. § 1986

2. Did Plaintiffs prove by a preponderance of the evidence their claim that one or more Defendants had knowledge of the conspiracy found in Claim 1 and failed to prevent that conspiracy from taking place in violation of 42 U.S.C. § 1986?

_____ YES   _____ NO

If you answered "YES" to the first part of this question, please indicate (by marking each appropriate line with a check mark), any and all Defendants against whom you find that Plaintiffs proved their 42 U.S.C. § 1986 claim:

_____ ALL DEFENDANTS

If not all Defendants, specify which ones:

_____ Jason Kessler
_____ Richard Spencer
_____ Christopher Cantwell
_____ James Alex Fields, Jr.
_____ Robert "Azzmador" Ray
_____ Nathan Damigo
_____ Elliott Kline
_____ Matthew Heimbach
_____ Matthew Parrott
_____ Michael Hill
_____ Michael Tubbs
_____ Jeff Schoep
_____ League of the South
_____ Vanguard America
_____ Nationalist Socialist Movement
_____ Identity Evropa
_____ Traditionalist Worker Party

## THIRD CLAIM: CIVIL CONSPIRACY

3. Did Plaintiffs prove by a preponderance of the evidence each element of their Virginia state law civil conspiracy claim?

_____ YES   _____ NO

If you answered "YES" to the first part of this question, please indicate (by marking each appropriate line with a check mark) which of the following Defendants you find, by a preponderance of the evidence, were members of that conspiracy.

_____ ALL DEFENDANTS

If not all Defendants, specify which ones:

_____ Jason Kessler
_____ Richard Spencer
_____ Christopher Cantwell
_____ James Alex Fields, Jr.
_____ Robert "Azzmador" Ray
_____ Nathan Damigo
_____ Elliott Kline
_____ Matthew Heimbach
_____ Matthew Parrott
_____ Michael Hill
_____ Michael Tubbs
_____ Jeff Schoep
_____ League of the South
_____ Vanguard America
_____ Nationalist Socialist Movement
_____ Identity Evropa
_____ Traditionalist Worker Party

## POTENTIAL DAMAGES FOR FIRST THREE CLAIMS

You must now consider what damages, if any, to impose with respect to the three conspiracy claims—Claims 1, 2, and 3—listed above.

If you answered "NO" to all of Questions 1, 2, and 3, you must skip Questions 4 and 5.

If you listed "YES" to any of Questions 1, 2, or 3, you may impose damages on Defendants for those claims. You may only impose damages on those Defendants you found liable for at least one of the three conspiracy claims.

4.  For each Plaintiff who you found for on Claims 1, 2, or 3, please state the total compensatory damages that will fully and fairly compensate the Plaintiff for the injuries sustained as a result of the conspiracy. All Plaintiffs except Chelsea Alvarado have brought these three claims against all Defendants. Plaintiff Alvarado has brought these three claims against all Defendants except James Alex Fields, Jr.; her damages should be assessed accordingly.

| Natalie Romero: | $ |
| Thomas Baker: | $ |
| April Muñiz: | $ |
| Elizabeth Sines: | $ |
| Marissa Blair: | $ |
| Marcus Martin: | $ |
| Chelsea Alvarado: | $ |
| Seth Wispelwey: | $ |
| Devin Willis: | $ |

4

5.  If you found for Plaintiffs as to Claims 1, 2, or 3, do you find that punitive damages should be awarded against at least one Defendant?

_____ YES   _____ NO

If you answered "YES" to the first part of this question, please state on the following lines the total punitive damages, if any, you are assessing against each Defendant.

| | |
|---|---|
| Jason Kessler: | $_____ |
| Richard Spencer: | $_____ |
| Christopher Cantwell: | $_____ |
| James Alex Fields, Jr.: | $_____ |
| Robert "Azzmador" Ray: | $_____ |
| Nathan Damigo: | $_____ |
| Elliott Kline: | $_____ |
| Matthew Heimbach: | $_____ |
| Matthew Parrott: | $_____ |
| Michael Hill: | $_____ |
| Michael Tubbs: | $_____ |
| Jeff Schoep: | $_____ |
| Vanguard America: | $_____ |
| League of the South: | $_____ |
| Identity Evropa: | $_____ |
| Traditionalist Worker Party: | $_____ |
| Nationalist Socialist Movement: | $_____ |

## FOURTH CLAIM: RACIAL, RELIGIOUS, OR ETHNIC HARRASSMENT OR VIOLENCE

6.  Plaintiffs Natalie Romero and Devin Willis bring a claim under Virginia Code § 8.01-42.1 (Virginia's racial, religious, or ethnic harassment or violence statute). Please indicate (by marking each appropriate line with a check mark) any and all Defendants against whom you find that Plaintiffs proved their Virginia Code § 8.01-42.1 claim.

    _____ Jason Kessler
    _____ Richard Spencer
    _____ Elliott Kline
    _____ Robert "Azzmador" Ray
    _____ Christopher Cantwell

    For each Plaintiff who you found for as to Claim 4, please state the total compensatory damages that will fully and fairly compensate that Plaintiff for the resulting injuries.

    Natalie Romero:    $_____
    Devin Willis:         $_____

7.  If you found for at least one Plaintiff as to Claim 4, do you find that punitive damages should be awarded against at least one Defendant?

    _____ YES    _____ NO

    If you answered "YES" to the first part of this question, please state on the following lines the total punitive damages you are assessing against any such Defendant:

    Jason Kessler:              $_____
    Richard Spencer:           $_____
    Elliott Kline:                 $_____
    Robert "Azzmador" Ray:   $_____
    Christopher Cantwell:      $_____

6

8. Plaintiffs Natalie Romero, April Muñiz, Seth Wispelwey, Elizabeth Sines, Marissa Blair, Marcus Martin, and Devin Willis also bring a claim under Virginia Code § 8.01-42.1, against Defendant James Alex Fields, Jr. Please indicate (by marking the appropriate line with a check mark) whether you find that Plaintiffs proved their Virginia Code § 8.01-42.1 claim against James Alex Fields, Jr.

_____ YES  _____ NO

If you found liability against James Alex Fields, Jr. as to Claim 4, please state the total compensatory damages that will fully and fairly compensate that Plaintiff for the resulting injuries.

Natalie Romero:      $_____
April Muñiz:         $_____
Seth Wispelwey:      $_____
Elizabeth Sines:     $_____
Marissa Blair:       $_____
Marcus Martin:       $_____
Devin Willis:        $_____

9. If you found for at least one Plaintiff in Question 8, do you find that punitive damages should be awarded?

_____ YES  _____ NO

If you answered "YES," to the first part of this question, please state on the following line the total punitive damages you are assessing against James Alex Fields, Jr.:

James Alex Fields, Jr:   $_____

7

## FIFTH CLAIM: ASSAULT OR BATTERY

10. Plaintiffs Natalie Romero, April Muñiz, Thomas Baker, Elizabeth Sines, Marissa Blair, and Marcus Martin bring a claim for assault or battery against Defendant James Alex Fields, Jr. Did those Plaintiffs prove by a preponderance of the evidence each element of their claim for assault or battery?

_____ YES   _____ NO

**If you answered "NO" to Question 10, please skip to Question 13. If you answered, "YES" proceed to Questions 11–12.**

11. For any Plaintiff who you found for as to Claim 5, please state the total compensatory damages that will fully and fairly compensate that Plaintiff for the resulting injuries.

Natalie Romero:       $_____
April Muñiz:          $_____
Thomas Baker:         $_____
Elizabeth Sines:      $_____
Marissa Blair:        $_____
Marcus Martin:        $_____

12. If you found for at least one Plaintiff as to Claim 5, do you find that punitive damages should be awarded?

_____ YES   _____ NO

If you answered "YES" to the first part of this question, please state on the following line the total punitive damages you are assessing against Defendant James Alex Fields Jr. for these claims:

$_____

8

## SIXTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13. Plaintiffs Natalie Romero, April Muñiz, Thomas Baker, Elizabeth Sines, Marissa Blair, and Marcus Martin bring a claim for intentional infliction of emotional distress against Defendant James Alex Fields, Jr.  Did Plaintiffs prove by clear and convincing evidence each element of their claim for intentional infliction of emotional distress?

_____ YES  _____ NO

**If you answered "NO" to Question 13, please proceed to the END. If you answered "YES" to Question 13, please proceed to Questions 14–15.**

14. For each Plaintiff who you found for as to Claim 6, please state the total compensatory damages that will fully and fairly compensate that Plaintiff for the resulting injuries.

Natalie Romero:      $_____
April Muñiz:         $_____
Thomas Baker:        $_____
Elizabeth Sines:     $_____
Marissa Blair:       $_____
Marcus Martin:       $_____

15. If you found for at least one Plaintiff as to Claim 6, do you find that punitive damages should be awarded?

_____ YES  _____ NO

If you answered "YES" to the first part of this question, please state on the following line the total punitive damages you are assessing against Defendant James Alex Fields, Jr. for these claims:

$_____

## END – STOP HERE

_____              _____
Foreperson                           Date