Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1                  UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF VIRGINIA
2                    CHARLOTTESVILLE DIVISION

3  ****************************************************************

4  ELIZABETH SINES, ET AL.,    CIVIL CASE NO.:  3:17CV72
                               NOVEMBER 19, 2021, 9:00 AM
5                              JURY TRIAL, DAY 20
          Plaintiffs,
6  vs.

7                              Before:
                               HONORABLE NORMAN K. MOON
8                              UNITED STATES DISTRICT JUDGE
   JASON KESSLER, ET AL.,      WESTERN DISTRICT OF VIRGINIA
9
          Defendants.
10
    ****************************************************************
11
    APPEARANCES:
12

13  For the Plaintiffs:     ALAN LEVINE, ESQUIRE
                            COOLEY LLP
14                          1114 Avenue of the Americas, 46th
                            Floor
15                          New York, NY  10036
                            212.479.6260
16
                            DAVID E. MILLS, ESQUIRE
17                          COOLEY LLP
                            1299 Pennsylvania Avenue, NW,
18                          Suite  700
                            Washington, DC  20004
19                          202.842.7800

20

21

22  Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                       255 West Main Street, Suite 304
23                     Charlottesville, Virginia  22902
                       434.296.9284
24
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25  TRANSCRIPT PRODUCED BY COMPUTER.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  APPEARANCES CONTINUED:

2  For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                EMILY C. COLE, ESQUIRE
3                               ROBERTA A. KAPLAN, ESQUIRE
                                Kaplan Hecker & Fink LLP
4                               350 Fifth Avenue, Suite 7110
                                New York, NY  10118
5                               212.763.0883

6  For the Defendants:          DAVID L. CAMPBELL, ESQUIRE
                                Duane, Hauck, Davis, Gravatt &
7                               Campbell, P.C.
                                100 West Franklin Street, Suite 100
8                               Richmond, VA  23220
                                804.644.7400
9
                                CHRISTOPHER CANTWELL, PRO SE
10                              #00991-509
                                USP Marion
11                              4500 Prison Road, PO Box 2000
                                Marion, IL  62959
12
                                BRYAN J. JONES, ESQUIRE
13                              Bryan J. Jones, Attorney at law
                                106 W. South Street, Suite 211
14                              Charlottesville, VA  22902
                                540.623.6952
15
                                JAMES E. KOLENICH, ESQUIRE
16                              Kolenich Law Office
                                9435 Waterstone Blvd., Suite 140
17                              Cincinnati, OH  45249
                                513.444.2150
18
                                JOSHUA SMITH, ESQUIRE
19                              Smith LLC
                                807 Crane Avenue
20                              Pittsburgh, PA  15216
                                917.567.3168
21
                                WILLIAM E. REBROOK, IV, ESQUIRE
22                              (Appearing via Zoom)
                                The ReBrook Law Office
23                              6013 Clerkenwell Court
                                Burke, VA  22015
24                              571.215.9006

25

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   APPEARANCES CONTINUED:

2   For the Defendants:          RICHARD SPENCER, PRO SE
                                 P.O. Box 1676
3                                Whitefish, MT  59937

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  (Proceedings commenced, 9:00 a.m.)

2              THE COURT:  Call the case, please.

3              THE CLERK:  Yes, Your Honor.  This is Civil Action

4  Number 3:17-cv-72, Elizabeth Sines and others versus Jason

5  Kessler and others.

6              THE COURT:  All right.  Before we begin, I will

7  remind everyone that under Standing Order 2020-12, 2013-8, the

8  Court's prohibition against recording or broadcasting court

9  proceedings remains in force.  Attorneys, parties, or their

10  staff and any members of the public or press accessing this

11  proceeding today may not record or broadcast it.  That means no

12  photography, no using any video or audio recording device, no

13  rebroadcasting, livestreaming, or otherwise disseminating any

14  live or recorded video or audio of this proceeding.

15              Last night the Court was informed by the U.S. Marshal

16  Service that one of the jurors, Juror 210, learned yesterday

17  that two of his children with whom he lives had been told by

18  the school to quarantine at home on account of the COVID-19

19  exposure they had yesterday.  That contact happened yesterday.

20  To be clear, because the contact happened yesterday, it would

21  not have any potential impact on the juror when he was in court

22  or to the rest of the jury today; however, considering these

23  circumstances, the Court has told the juror not to come in

24  today.  The Court finds that he should be excused for good

25  cause.  Sickness and family emergency are grounds for excusing

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   a juror for good cause, Federal Rule of Civil Procedure 47.

2           Further, Standing Order 2021-16 of this Court

3   reflects and acknowledges that public health agencies, in light

4   of higher COVID-19 rates over the past few months, recommend

5   the resumption of protective measures for both vaccinated and

6   unvaccinated persons; and that these measures include the

7   wearing of face masks in public indoor settings, social

8   distancing, and testing of those fully vaccinated people who

9   have a known exposure to someone with suspected or confirmed

10  COVID-19, Standing Order 2021-16.

11          This Court was not -- this juror was not vaccinated,

12  making those protective measures even more important, and that

13  given the timing of the juror's interaction with his children

14  who have been ordered to quarantine, testing would not appear

15  to be present -- to be a viable option for several days.  Under

16  these circumstances, the Court found that having the juror come

17  back to begin jury deliberations with the rest of the jury

18  would present an unacceptable increased risk to the health of

19  others, and would risk impairing the full jury's ability to

20  take the time they need in deliberations without undue fear of

21  health risk.

22          That's where we are.  I was hoping to get through

23  this without anything like that happening, but it did.

24          All right.  Are we ready to call the jury?

25          MS. KAPLAN:  We are, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MR. CANTWELL:  It's Christopher Cantwell.  I have one

2    thing before we do, Judge.  I fear that yesterday during

3    plaintiffs' counsel's closing arguments, Ms. Dunn in her

4    earlier portion, I feel that she badly misinformed the jury

5    about the implications of the adverse inferences against

6    Defendants Kline and Ray.  I sadly have not had access to a

7    transcript yet, but the gist of it was that the Court has

8    already found that there was a conspiracy, and it's just a

9    matter of determining who they conspired with.  I understand

10   there are facts deemed established against Kline and Ray and

11   that they -- and that the facts established include that they

12   conspired to commit racially motivated violence, but the

13   attempt to contain the spillover there I feel was violated by

14   saying that there is a conspiracy here.  They haven't --

15         THE COURT:  Well, Mr. Cantwell, I'm going to tell the

16   jury that closing arguments are not evidence in the case.  I've

17   got a little thing to say.  But other than that, we can't go

18   back at this point into the case.

19         All right.  Call the jury.

20   **(Jury in, 9:06 a.m.)**

21         THE COURT:  Good morning, ladies and gentlemen.

22   Before I read you the final jury instructions and you begin

23   your deliberations, let me tell you that one of your jurors,

24   Juror 210, learned yesterday that his children had been told by

25   their school to quarantine at home on account of a COVID-19

7

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   exposure they had yesterday.  The contact happened yesterday.

2   And so to be clear, it would not have any potential impact upon

3   that juror when he was in court or any of the rest of the jury

4   on that day; however, the Court determined that it was

5   appropriate to excuse Juror 210 in order to ensure the health

6   of the jury and the ability of the jury to complete its

7   deliberations.

8            At this time I would remind you of a few previously

9   given jury instructions.  Specifically, the evidence in the

10  case includes the sworn testimony of the witnesses, regardless

11  of who may have called them; all exhibits received in evidence,

12  regardless who may have produced them; all depositions read or

13  played into the record, regardless of who may have introduced

14  them; and all facts which may have been admitted or stipulated

15  to.  And that would also include the facts that I found that

16  you should consider as proven as to certain parties, which you

17  have those instructions.

18           I would remind you also that statements, arguments,

19  and questions by lawyers are not evidence, and that that

20  includes closing arguments are not evidence.  It's only to help

21  the lawyer to argue their side of the case and explain to you

22  their point of view as to how the facts apply to the law -- or

23  the law applies to the facts.

24           I would also remind you that you are the judges of

25  the facts, the credibility of the witnesses, and the weight of

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    the evidence.

2            Now I'm going to read the final instructions to you.

3            When you go to your jury room, you should first

4    select one of your number to act as your foreperson.  The

5    foreperson will preside over your discussions and speak for you

6    here in court.  And by speak for you in court, you will -- any

7    messages or anything like that, when you reach your verdict,

8    the foreperson will bring it back, hand it to the marshal, then

9    the clerk will read the verdict.  So the foreperson will not be

10   having to make any presentation in court.

11           It is your duty as jurors to discuss this case with

12   one another in the jury and try to reach an agreement.  Each of

13   you must make your own conscientious decision, but only after

14   you have considered all the evidence, discussed it fully with

15   the other jurors, and listened to the views of the other

16   jurors.  Do not be afraid to change your opinion if the

17   discussion persuades you that you should.  But do not make a

18   decision simply because other jurors think it is right or

19   simply to reach a verdict.  Remember at all times that you are

20   the judges of the facts.  Your sole interest is to seek the

21   truth from the evidence in the case.

22           If you need to communicate with me during your

23   deliberations you may send me a note to me through the marshal,

24   signed by one or more jurors.  I will respond as soon as

25   possible in writing or orally in open court, if necessary.  And

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    that is we would bring all of you back to answer the question.

2           There was a question about whether a dictionary would

3    be possible.  And because the words in these instructions have

4    meanings sometime in law that are not necessarily dictionary

5    definitions, what I would ask, if you need a definition, that

6    you send a note asking us to define the word for you.  As you

7    know, dictionaries often have two or three meanings in any

8    particular word, but there may be the words in these

9    instructions frequently have a very particular meaning.

10          Remember that you should not tell anyone, including

11   me, how your vote stands numerically.  Your verdict must be

12   based solely on the evidence and on the law that I have given

13   to you in my instructions.  Your verdict must be unanimous.

14   Nothing I have said or done is intended to suggest what your

15   verdict should be.  That is entirely for you to decide.

16          Finally, a form of verdict has been prepared for your

17   convenience.  The verdict form is simply a written notice of

18   the decision that you reach in this case.  You will take this

19   form to the jury room and when you -- when each of you has

20   agreed on the verdicts, your foreperson will fill it in -- fill

21   in the form, sign and date it, and advise the marshal or

22   bailiff that you are ready to return to the courtroom.

23          Now we will put the verdict form -- Ms. Dunn showed

24   you part of this yesterday.  It's the same form that was on the

25   stand yesterday.  With regard to the first claim, which is did

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  the plaintiffs prove by a preponderance of the evidence that

2  their claim that one or more defendants engaged in a conspiracy

3  to commit racially motivated violence in violation of 42 U.S.C.

4  Section 1985(3), you should answer that yes or no.  If you

5  answered -- if you unanimously found yes with regard to any

6  defendant -- of course, if it's all defendants, you would check

7  all defendants.  If you unanimously found as to any of the list

8  of defendants, you would check the ones that you found that

9  apply.

10         Number two, the second claim, did plaintiffs prove by

11  a preponderance of the evidence their claim that one or more

12  defendants had knowledge of the conspiracy found in Claim 1 and

13  failed to prevent that conspiracy from taking place in

14  violation of 42 U.S.C. Section 1986?  Again, your decision must

15  be unanimous, yes or no.  And if you answered yes, you would

16  either say to all defendants or check off the ones to whom you

17  think that -- you've decided that applies.

18         The third claim, did plaintiffs prove by a

19  preponderance of the evidence each element of their Virginia

20  state law civil conspiracy claim?  Again, if you unanimously

21  found yes or no, check.  And if you found yes, you have to

22  check whether it was all defendants, or check the name of

23  those, if any, that you found liable.

24         The potential damages for the first three claims, if

25  you found in favor of the plaintiffs on any one of the first

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    three claims, then you would come down for each plaintiff and

2    fill in the amount of compensatory damages that the plaintiff

3    is entitled to receive.  If you found for the plaintiffs and

4    awarded compensatory damages, then on Number 5 you would decide

5    if you should award punitive damages; and if so, you would put

6    in the amount by the name of any defendant whom you find should

7    have to pay punitive damages.

8            On the fourth claim, racial, religious, or ethnic

9    harassment or violence, Plaintiffs Natalie Romero and Devin

10   Willis bring this claim under Virginia Code Section 8.01-42.1,

11   Virginia's racial, religious, and ethnic harassment or violence

12   statute.  Please indicate by marking each appropriate line with

13   a checkmark any and all defendants against whom you find the

14   plaintiff proved their Virginia Code Section 8.01-42.1 claim.

15           If each of you found for -- for each plaintiff who

16   you found for as to Count Four, please state the total

17   compensatory damage that will fully and fairly compensate that

18   plaintiff for the resulting injuries.

19           And then 7, if you found for at least one of the

20   plaintiffs as to Claim 4, do you find that punitive damages

21   should be awarded against at least one defendant?  Answer yes

22   or no.  If yes, then you would insert the amount of punitive

23   damages to which you think -- which you think the defendant

24   should be -- have to pay.

25           Now, 8, the plaintiffs Natalie Romero, April Muñiz,

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  Seth Wispelwey, Elizabeth Sines, Marissa Blair, Marcus Martin,

2  and Devin Willis also claim under Virginia Code Section

3  8.01-42.1 against Defendant James Alex Fields, Jr.  Please

4  indicate by marking the appropriate line with a checkmark

5  whether you find that plaintiffs proved their Virginia Code

6  Section 8.01-42.1 claim against James Alex Fields, Jr.  And you

7  answer that yes or no and then you insert the amount of

8  damages.  If you answered yes, you would insert the amount of

9  damages you think the plaintiffs should recover.

10        If you found at least one plaintiff in question 8, do

11  you find that punitive damages should be awarded?  That's

12  paragraph 9.  Answer that yes or no.  If yes, you put in the

13  amount of punitive damages you think Mr. Fields should be

14  liable for.

15        On the fifth claim, Plaintiffs Natalie Romero, April

16  Muñiz, Thomas Baker, Elizabeth Sines, Marissa Blair, and Marcus

17  Martin bring a claim for assault and battery against James Alex

18  Fields, Jr.  Did those plaintiffs prove by a preponderance of

19  the evidence each element of their claim for assault and

20  battery?  And if you answer -- you answer that yes or no.

21  Everything still has to be unanimous.  If you answered no to

22  the question, please skip to 13.  If you answered yes, proceed

23  to questions 11 and 12.  For any plaintiff you found for as to

24  Claim 5, please state the total compensatory damages that will

25  fully and fairly compensate that plaintiff for the resulting

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    injuries, and you insert the amount.

2            Paragraph 12, if you found for at least one plaintiff

3    as to Claim 5, do you find that punitive damages should be

4    awarded?  Yes or no.  And if yes to the first part of this

5    question, please state on the following line the total punitive

6    damages you are assessing against Defendant Fields for these

7    claims.

8            The sixth claim, intentional infliction of emotional

9    distress, Plaintiffs Natalie Romero, April Muñiz, Thomas Baker,

10   Elizabeth Sines, Marissa Blair, and Marcus Martin bring a claim

11   for intentional infliction of emotional distress against

12   Defendant James Alex Fields, Jr.  Did plaintiffs prove by clear

13   and convincing evidence each element of their claim for

14   intentional infliction of emotional distress?  Yes or no.  And

15   if no, you go to the end.  But if yes, you fill in the amount

16   in Paragraph 14 that each plaintiff is entitled to recover

17   against Mr. Fields.

18           If you found for at least one plaintiff as to Claim

19   6, do you find that punitive damages should be awarded?  Answer

20   yes or no.  And if you answered yes to the first part of the

21   question, please state on the following line the total punitive

22   damages you are assessing against Defendant James Alex Fields,

23   Jr. for these claims, and you stop here.

24           Members of the jury, you are to answer all of the

25   questions on the jury form.  The Court has not instructed you

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  to find against -- ultimately against anyone, but I have

2  instructed you that certain elements against all of the

3  defendants have been -- against some of the defendants have

4  been proven.  And so you still look at each form -- each claim

5  and decide whether all of the elements have been proven to

6  that -- as to that particular defendant.  The verdict in the

7  case is up to you.

8          All right.  At this point I'm going to allow you to

9  go to the jury room.  You'll have in the jury room a copy --

10  each juror will have a copy of the instructions.

11          I've got one more instruction to read to you.  But

12  anyway, each juror will have a copy of the verdict form.  Each

13  juror will have a copy of all the instructions.  I think you

14  can work better if you do.  But the foreperson should remember

15  to have his or her copy available to be brought back into the

16  courtroom.

17          I will tell you now that any verdict must represent

18  the considered judgment of each juror.  In order to return a

19  verdict, it is necessary that each juror agree thereto.  In

20  other words, your verdict for each claim must be unanimous.

21  Each claim should be considered separately.  The failure to

22  reach a unanimous verdict for one claim does not preclude you

23  from reaching a unanimous verdict as to another claim.  It is

24  your duty as jurors to consult with one another and to

25  deliberate in an effort to reach an agreement if you can do so

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  without violence to individual judgment.  Each of you must

2  decide the case for yourself, but only after an impartial

3  consideration of all the evidence in the case with your fellow

4  jurors.  In the course of your deliberations, do not hesitate

5  to re-examine your views and change your opinion if convinced

6  it is erroneous, but do not surrender your honest conviction as

7  to the weight or effect of the evidence solely because of the

8  opinion of your fellow jurors, or for the mere purpose of

9  returning a verdict.

10         Remember, at all times you are not partisans.  You

11  are judges; judges of the facts.  Your sole interest is to seek

12  the truth from the evidence in the case.

13         Now, I did tell you yesterday we're going to work

14  from 9 to 5.  If the jury decides -- and that means if all of

15  you decide you want to go -- change the schedule a little bit,

16  that's okay, but generally the default is from 9 to 5.  But if

17  you get to a point where you think you can work an hour or so

18  and finish things up, that will be fine, but just let us know.

19  If you do not plan to stop at 5, let us know so we can prepare

20  for that eventuality.

21         All right.  You may retire now to the jury room.

22  **(Jury out, 9:24 a.m.)**

23         THE COURT:  Anything before --

24         MS. KAPLAN:  Not for us, Your Honor.

25         THE COURT:  Oh, you're going to have somebody

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  downstairs?

2          MS. KAPLAN:  Yeah, we're going to wait on the second

3  floor.

4          THE COURT:  All right.  And you all have somebody?

5          MR. KOLENICH:  Yes, Your Honor.

6          THE COURT:  Okay.  I did have a note.  One of the

7  things -- I probably inartfully tried to answer one of the

8  juror -- I got this note from the marshal this morning.  Juror

9  165 -- 164 wrote, "The Court said Robert Ray and Elliott Kline

10  has entered into an agreement to conspire in violence on August

11  11th and 12th.  Is compensation the only decision we need to

12  make?"

13          I think it's still up to the jury to determine that.

14          And then Matthew Heimbach was brought up concerning

15  the same thing above.  "Did the Court decide on this or do the

16  jurors decide?"

17          And then 165 asked if she could keep her notes after

18  the case is over.  And I don't see any reason why not.  Might

19  want to write a book.

20          Okay.  We'll be in recess until the jury returns.

21          (Recess, 9:26 a.m. to 10:45 a.m.)

22          THE COURT:  This is a real simple thing, I think.

23  The jury wants to know -- Juror Number 275 signed this -- "Can

24  we get a hard copy of medical expense summaries for all

25  plaintiffs?"

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  Yes.

2          MS. KAPLAN:  Easy.

3          THE COURT:  Can you all get that?

4          MS. KAPLAN:  Of course, Your Honor.

5          MR. KOLENICH:  No objection to that.

6          THE COURT:  How hard?  I mean --

7          MS. KAPLAN:  We can shoot down and get it downstairs.

8  Is it okay just to send someone up and give it to --

9          THE COURT:  Well, bring it to us and give it to Rob,

10  and then Rob can give it to the marshal.

11          MR. CAMPBELL:  Obviously just the stuff that was

12  admitted?

13          MS. KAPLAN:  Yeah.

14          MR. CAMPBELL:  Bring it to Rob here?

15          THE COURT:  Just bring it up here.  We'll be here.

16          (Recess, 10:46 a.m. to 12:10 p.m.)

17          THE COURT:  This is a simple question.  Question 11,

18  page 8, refer also to future expenses.  I think the answer to

19  that is yes.

20          And also, do compensatory damages include future

21  medical expenses?  The answer to that is yes.

22          MR. CAMPBELL:  Yes.

23          MS. KAPLAN:  We agree, Your Honor.

24          THE COURT:  That's all.

25          MS. DUNN:  Thank you.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1        (Recess, 12:10 p.m. to 2:24 p.m.)

2        THE COURT:  All right.  The jury thinks there is a

3    discrepancy in the instructions and the jury form, but it's

4    not.

5        They asked this question:  "On page 1 of the verdict

6    form it refers to 42 U.S.C. 1985(3).  It says 'one or more' on

7    question 1.  According to U.S.C. 1985(3) line 6 says two or

8    more.  We are struggling with this discrepancy.  Should on page

9    1 it say two or more?"

10        And the answer to that would be?  It's nothing --

11    they're correct.

12        MS. DUNN:  Can you say that one more time, Your

13    Honor?

14        THE COURT:  What the problem is, the instruction

15    says -- Instruction Number 12 says you must -- first the

16    existence of a conspiracy of two or more persons.  Then

17    question 1 on the jury form it says, "Did plaintiff prove by a

18    preponderance of the evidence their claim that one or more

19    defendants engaged in a conspiracy to commit racially motivated

20    violence in violation of 42 U.S.C. 1985(3)."

21        Well, both are correct.  But one has to do with when

22    you're talking about individual defendants, they have to

23    conspire with one or more persons.

24        MS. DUNN:  Right.

25        THE COURT:  You see?  And it doesn't necessarily have

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  to be another defendant.

2          MS. DUNN:  Correct.

3          MR. CAMPBELL:  Yeah.

4          THE COURT:  So I would try to get Rob to write

5  something up.

6          MR. LEVINE:  Your Honor, could you read into the

7  record what the question is?

8          THE COURT:  "Question 1 on page 1 of the verdict form

9  refers to 48 U.S.C. 1985(3).  It says 'one or more" in question

10 1.  42 U.S.C. 1985(3) line 6 says 'two or more.'  We are

11 struggling with the discrepancy.  Should number 1 on page 1 say

12 'two or more"'?  Number 275.

13         MR. DERISE:  Judge, would it help to cross reference

14 that with the verdict form?

15         THE COURT:  Yes.

16         MR. DERISE:  Did that make sense?

17         MR. CAMPBELL:  Yeah.  They can conspire with a

18 non-defendant.  They seem confused over that.

19         MR. DERISE:  Would it help to bring -- this is just

20 the instructions and the verdict form.

21         MS. DUNN:  So their question is about question 1 on

22 the verdict form.

23         MR. CAMPBELL:  Why does it say one or more --

24         MR. DERISE:  Question 1, page 1 of the verdict form.

25         MS. DUNN:  It says one or more, question mark.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MR. DERISE:  One or more engaged.  And then it says

2   for the statute, line 6, I think they're talking about --

3          MS. DUNN:  The instruction.

4          MR. DERISE:  I think they're talking about this, the

5   existence of a conspiracy of two or more.  And I think that's

6   where they're getting --

7          MS. KAPLAN:  Isn't it consistent, because here it

8   says you have to have two -- sorry, I'm a little slow on the

9   uptake, Judge.

10          THE COURT:  The instructions and the form are

11   correct.

12          MR. KOLENICH:  We can just tell them it's possible

13   for a defendant to conspire with someone who is a

14   non-defendant.

15          MS. KAPLAN:  If that's the question, we obviously

16   agree.

17          THE COURT:  For those of you who are planning to go

18   home at 5:00 and never see Charlottesville again, "can we take

19   the final jury instructions home with us to study over the

20   weekend?"

21          MS. DUNN:  That is such a question.

22          MS. KAPLAN:  To be clear, Your Honor, I was not

23   planning to never see Charlottesville again.

24          THE COURT:  I don't see anything wrong with it,

25   frankly.  As long as they don't share it with anyone else and

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   don't talk about it with anyone else.

2            MR. CAMPBELL:  Or make copies of it, or that kind of

3   thing.

4            THE CLERK:  Not share it with the media.

5            THE COURT:  They're not supposed to be talking to

6   anyone about the case.

7            MR. LEVINE:  Your Honor, would it be your practice to

8   let them take the instructions home?

9            THE COURT:  I have no practice.

10           MS. KAPLAN:  No one has ever asked, I assume.

11           THE COURT:  It's interesting that's one of the issues

12   in the Rittenhouse case -- was it Rittenhouse or the one in

13   Florida?

14           MS. DUNN:  Okay.

15           MR. CAMPBELL:  We don't object to it.  Maybe it will

16   help speed it along.

17           MS. DUNN:  Maybe we can think about this question

18   about whether they can take it home.

19           MS. KAPLAN:  There's so many people circling around

20   this that it worries us a little bit in terms of people talking

21   to them or them talking to people.

22           THE COURT:  Well, you know, if they adhere to the

23   rule they're not supposed to be talking to anybody about it --

24   I imagine all of them don't want to do it.  I think it's

25   probably just one or two people.

22

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  I think one issue is they shouldn't be

2   asking for other people to help them understand them.

3          THE COURT:  No.  I think --

4          MS. DUNN:  That would be very bad.

5          THE COURT:  I don't think that's the issue.

6          MR. ISAACSON:  I don't think it's good if one or two

7   take them home.  I mean, if there really only are one or two

8   that want to study them, I think that gets away from

9   deliberations.

10          THE COURT:  Well, but if they want to read them and

11   understand them, I think that's --

12          MR. ISAACSON:  Someone is going to come back an

13   expert on the instructions.

14          MS. DUNN:  I do think it would be good for us to

15   think about it.

16          THE COURT:  You can think about it and come back.  I

17   don't have any problem with that.

18          MS. KAPLAN:  If they're asking the question, Your

19   Honor, I guess we're probably not getting a verdict by 5

20   anyway.  So we'll give it some thought.

21          THE COURT:  Excuse me?

22          MS. KAPLAN:  As much as you think I don't want to

23   come to Charlottesville again, based on the last question it

24   sounds like they don't think they'll be done by 5, so we'll

25   give it some thought and come back, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  We're going to think about it.

2          MS. KAPLAN:  We're going to think about it.  It

3    sounds like we have time.  They're not close to a verdict.

4               Thank you, Your Honor.

5          THE COURT:  We're going to send them an answer.

6          MR. DERISE:  I guess a proposed response:  A

7    conspiracy is an unlawful agreement of two or more people.

8    Verdict form question 1 says "one or more defendants" because a

9    defendant could have been found to have conspired with a

10   non-defendant.

11         MS. DUNN:  So I think here's the thing:  The

12   instructions explain, like, this concept of agreement, which is

13   obviously going to be important.  Can't we just make this

14   shorter that says you can conspire with a non-defendant, which

15   seems to be the question?

16         THE COURT:  Well, I think you ought to refer -- I

17   mean, acknowledge that there is two different -- one says two

18   and one says one.

19         MS. DUNN:  It should really be one or more.  I mean,

20   isn't that -- I think the answer is you need to have -- it

21   needs to be one or more, and you can conspire with a

22   non-defendant I think are the true answers.

23         MR. ISAACSON:  It would be both statements are

24   correct because a defendant can conspire with a non-defendant.

25         MS. DUNN:  I think that's very confusing.  They seem

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  to be asking two things.  One is:  Can you conspire with a

2  non-defendant?  The answer is yes.  And the second is:  Is a

3  conspiracy one or more, or is a conspiracy two or more?  And

4  the answer is one or more.  And I think --

5           THE COURT:  Wait a minute, a conspiracy is not one or

6  more.

7           MR. CAMPBELL:  You can't have a conspiracy of one, I

8  don't think.

9           MS. DUNN:  Whether you need to conspire with two or

10 more people or one or more people.  And the answer is one or

11 more.

12          THE COURT:  Yes.  It just takes two to conspire.

13          MR. CAMPBELL:  I think they're just asking why they

14 don't line up.

15          MR. KOLENICH:  I think what he wrote is a solid

16 answer for purposes of the jury.

17          MS. DUNN:  I would not.  I disagree, because I think

18 it injects the concept -- what I'm proposing is to say you can

19 conspire with a non-defendant.  I think that's -- everyone

20 agrees on that, right?  And then to have a conspiracy, a person

21 can conspire with one or more people.  I think that's accurate,

22 too.

23          MR. KOLENICH:  Well, one defendant has to conspire

24 with one or more --

25          MS. DUNN:  To have a conspiracy, a defendant has to

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   conspire with one or more people.

2          MR. KOLENICH:  I'm all right with that.

3          MS. DUNN:  Is that okay?

4          MR. KOLENICH:  As long as it's clear that the other

5   people can be nonparties.

6          MS. DUNN:  And the other people could be -- the one

7   or more people can be non-defendants.

8          MR. DERISE:  So the anticipated response would be:

9   You can conspire with a non-defendant.  To have a conspiracy, a

10  defendant has to conspire with one or more people.  The one or

11  more people can be non-defendants.

12         MS. DUNN:  Say the last thing.

13         MR. DERISE:  The one or more people can be

14  non-defendants.

15         MS. DUNN:  Yeah, that's right.

16         MR. CAMPBELL:  Sure.

17         THE COURT:  While you're here, "What is the

18  definition of an unlawful objective?  How is that different

19  than an unlawful purpose?"

20         MS. KAPLAN:  I don't think there's any difference.

21         MR. CAMPBELL:  Is unlawful objective still in an

22  instruction?  So that was replaced by agreement in at least 13.

23  Maybe it's somewhere else.

24         MS. DUNN:  Your Honor, I think we agree that

25  objective and purpose are the same.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          THE COURT:  Are what, the same?

2          MS. DUNN:  Objective and purpose are the same thing.

3          THE COURT:  All right.  It says, "What is the

4    definition of unlawful objective?"  Can we say it means

5    unlawful purpose?

6          MS. KAPLAN:  How about an objective or purpose that

7    is not lawful?

8          MS. DUNN:  I don't think that's an answerable

9    question.

10          MR. CAMPBELL:  Yeah, I tend to agree with that.  The

11    definition, you can't really answer.  But I think you can say

12    yes, they're the same.

13          THE COURT:  Those questions this morning about

14    Heimbach and Kline, they were brought in before we came into

15    the courtroom.  And I thought I answered it.  I told them that

16    they had to decide the case.  Did I refer to -- I don't know

17    that I referred to the instruction or not.  I tried to tell

18    them they had to -- they ultimately had to decide the verdict.

19    I think I made an effort.

20          MR. DERISE:  But then they subsequently said that

21    they had no pending questions.

22          MS. KAPLAN:  Okay.  So that makes sense, Your Honor.

23          MS. DUNN:  So are we -- is there more to do on this?

24          THE COURT:  I don't have any questions.  I guess

25    that's it.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  Who asked the last question?

2          THE COURT:  The last question was not the foreman, at

3   least it's not the person that's been writing it.

4          THE CLERK:  The last ones were 275.

5          THE COURT:  Juror 164 wrote, what is the definition?

6          Heidi, you have the other one.

7          THE CLERK:  Yes.  Do you want them?

8          THE COURT:  No.  She wants to know.

9          THE CLERK:  275 was the last ones.

10         MS. KAPLAN:  275 was which one, Your Honor?

11         THE COURT:  164 wanted to know the definition.

12         THE CLERK:  These were both by 275.

13         MS. KAPLAN:  275 wanted to bring it home.

14         MS. DUNN:  It says "can we."  So who knows if it's on

15   behalf of themselves.

16         MS. KAPLAN:  But the question was posed by 275?

17         THE CLERK:  Yes.

18         MS. KAPLAN:  We're downstairs if you need us.

19         THE COURT:  Thank you all.

20         (Recess, 2:44 p.m. to 3:02 p.m.)

21         THE COURT:  Here's the question.  "Judge Moon, does

22   the plaintiff have to prove all five elements for each person?"

23   Juror 164.

24         MS. KAPLAN:  164?

25         THE COURT:  I don't know whether the question has a

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  deeper meaning.

2          MR. KOLENICH:  Are they asking do they have to find

3  against all defendants to find against --

4          THE COURT:  They just say, "Does the plaintiff have

5  to prove all five elements for each person?"

6          MS. DUNN:  The answer to me, this seems no because if

7  you look at these --

8          MR. MILLS:  They don't each have to do an overt act,

9  for example.

10          THE CLERK:  Do you want this on the public line or to

11  the attorneys on Zoom?

12          THE COURT:  Just the attorneys.

13          MR. CAMPBELL:  Four makes it clear that only one

14  person has to commit an overt act.  So I think the answer is

15  yes.

16          MS. KAPLAN:  The answer is no, given 4, because four

17  means each defendant doesn't have to have done an overt act.

18          MR. CAMPBELL:  But you still have to prove 4 that one

19  defendant did and by proving that it inversely implies that you

20  don't have to prove every defendant did.

21          MS. DUNN:  Yeah, I think this is --

22          MS. KAPLAN:  I think we could say yes --

23          MS. DUNN:  No.  The answer is not yes.

24          MS. KAPLAN:  I was going to explain something.  I was

25  going to say maybe the answer is under -- what's this called --

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  do they call these points four, Judge?

2          MR. KOLENICH:  Elements.

3          THE COURT:  They don't refer to --

4          MS. KAPLAN:  What if we say that under element 4 --

5  with respect to element 4, only one member of the conspiracy

6  has to have committed an overt act.  I think that's what

7  they're asking.

8          MS. DUNN:  No.  What they're asking --

9          MR. CAMPBELL:  That's what 4 says.

10          MS. DUNN:  What they're asking is, do we have to

11  prove each of these things with respect to everybody?  And the

12  answer is no.  That's not what this is saying.  If it were

13  saying that, it would be inconsistent with all the rest of the

14  instructions that then follow.

15          MS. KAPLAN:  I agree with that.

16          MS. DUNN:  So I'm not sure.  Why don't we think about

17  whether this question can be answered, but the answer -- if we

18  said yes, we would nullify all of the rest of the instructions,

19  pretty much.

20          MR. CAMPBELL:  Disagree.

21          MR. MILLS:  What about:  No, but it is important to

22  read the whole thing, and then send that instruction.

23          MR. CAMPBELL:  I disagree.  I think it's yes.

24          THE COURT:  I mean, you have to prove all the

25  elements have to apply.  You don't have to prove like the overt

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    act.

2          MS. KAPLAN:  But one of those elements is an overt

3    act.  That's why it's so complicated.

4          MS. DUNN:  What about if we said each of these

5    elements is explained in the jury instructions, because I don't

6    think -- I think more is going to be even more confusing,

7    honestly.  I mean, each one of these things is explained, and

8    in a lot of words.  So my vote would just be to say like each

9    of these things is explained in the jury instruction.

10          THE COURT:  Did you all agree on a suggestion?

11          MR. CAMPBELL:  No.

12          MR. KOLENICH:  No.  We're in disagreement.

13          MR. CAMPBELL:  So the instruction says, "To prove

14    this claim, plaintiffs must prove first the existence of a

15    conspiracy of two or more persons; second, motivated in whole

16    or in part by animus; third, purpose of the conspiracy is to

17    deprive plaintiffs of their right to be free from racially

18    motivated violence; fourth, at least one person involved in the

19    conspiracy took an overt act."

20          So it already says you don't have to prove an overt

21    act for every one in the instruction as it is.  It specifically

22    says only one person involved in a conspiracy.  Plaintiffs just

23    have to prove one person involved in a conspiracy --

24          MS. KAPLAN:  But even the last one, Dave, as I recall

25    is that the plaintiffs were damaged.  That doesn't apply to

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1    every defendant, either.  So it kind of doesn't make sense.

2    You don't have to show that every defendant somehow damaged the

3    plaintiffs.

4            MR. KOLENICH:  We all understand that, but it's

5    possible there is a juror who doesn't understand that they can

6    find for some defendants and find other defendants liable.  I

7    think that should be explicit in the answer.

8            MS. DUNN:  That's why I think the safest course that

9    doesn't create additional trouble is to say each of these

10   things is explained in the instructions.

11           MR. CAMPBELL:  Not say yes or no.

12           THE COURT:  All right.  Once you all agree, let me

13   know.

14           Do you have the question?

15           MR. LEVINE:  Your Honor, could it be read to us one

16   more time.

17           MS. DUNN:  Could we just talk for one second?

18           THE COURT:  Okay.

19           MS. DUNN:  Thank you, Your Honor.

20           (Discussion off the record.)

21           THE COURT:  What about if you say for any defendant

22   you hold liable, all five elements must be proven?

23           MR. CAMPBELL:  I like that.

24           MS. KAPLAN:  I'm sorry?

25           THE COURT:  For any defendant you hold liable, all

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  five elements must be proven.

2          MS. DUNN:  I don't think that's right, Your Honor.

3  There are two things.  In 4, there is an overt act.  So only

4  one defendant out of --

5          THE COURT:  No, but it doesn't say -- it says to be a

6  conspiracy, there must be an overt act.  It doesn't say the

7  particular defendant has to commit the overt act.

8          MS. DUNN:  But we think that's what the question may

9  be asking, and we think it's confusing.

10          Mr. Mills has a suggestion.

11          MR. MILLS:  I think what you're saying would be fine

12  if it's -- in order to find a defendant a member of the

13  conspiracy, all five elements must be found to be true;

14  however, not each defendant needs to have committed elements 4

15  and 5.  Elements 4 and 5 can be committed by any member of the

16  conspiracy.

17          MS. KAPLAN:  That's clearly true.

18          THE COURT:  Is that inaccurate?

19          MR. CAMPBELL:  What's 5?

20          MS. DUNN:  Five is injury.

21          MR. CAMPBELL:  Yeah, that's fine.

22          MR. MILLS:  We can write it down.

23          MS. KAPLAN:  Is someone writing that down?

24          MS. DUNN:  David is writing it down.

25          (Discussion off the record).

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  Your Honor, would you like us to stay

2    here?

3          (Recess, 3:24 p.m. to 4:27 p.m.)

4          THE COURT:  Here's the question:  "Can we have a

5    transcript of Matthew Parrott's testimony?"  Number 275.

6          MS. DUNN:  We can get that.

7          MR. CAMPBELL:  I would say no.  I don't think we want

8    to open that door and have them start reading transcripts of

9    the trial.  I think they have to go off their memory.

10         MR. SMITH:  I think you're right.  Jurors aren't

11   supposed to take transcripts into the jury room.

12         MS. DUNN:  We are fine if they want the transcript.

13         THE COURT:  Okay.

14         MR. CAMPBELL:  The defense is not.  I mean, that

15   could lead to them wanting every transcript in the case.

16         MR. SMITH:  Your Honor, we object.

17         THE COURT:  I think I told them when we started out

18   transcripts would not be available.

19         MR. CAMPBELL:  I think so, too, Judge.

20         MR. SMITH:  We should stick with that.

21         MR. CAMPBELL:  If they start trying to break a tie

22   between what two people recall in a transcript, then the next

23   time they have any sort of disagreement it's going to be the

24   next transcript.

25         MR. SMITH:  This is exactly why that rule exists.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          MS. DUNN:  We would also be okay if they have

2     specific questions, maybe that is the way to get their

3     questions answered.

4          THE COURT:  In the preliminary instruction, do you

5     recall if we had -- I think it's in there about the instruction

6     about transcripts, right?

7          MR. DERISE:  I recall that from earlier in the case.

8          THE COURT:  Generally -- I've had this before, and I

9     don't have any rule one way or the other, but I know in this

10    case we told them it would not be available.  But generally if

11    you put in evidence on one side, you've got to balance it with

12    evidence on the other.

13         If they ask a specific question -- I mean, the

14    transcript itself, how long did he testify?

15         MR. SMITH:  It's a long transcript, Judge.

16         THE COURT:  I'm just going to tell them, as I told

17    you at the beginning of the trial, the transcript would not be

18    available.

19         MR. SMITH:  Thank you, Your Honor.

20         MS. DUNN:  We're checking to see what was said.  I

21    don't know if you remember.  I also think if they have specific

22    questions, that's different.

23         THE COURT:  Well, I take that up differently.

24         MR. SMITH:  You could handle that at the time, if

25    that happens.  It's premature.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1        MR. LEVINE:  Judge, you might say in the answer if

2   they have specific questions, then the Court would consider

3   having testimony read to them to answer those questions.

4        MR. SMITH:  I feel like that could open up a torrent

5   of that.

6        MR. LEVINE:  So what?  Then we would know what they

7   would like read, which happens all the time.

8        MR. SMITH:  Right, what really pertains to that,

9   because it's testimony on one side, testimony on both sides.

10  It's impossible to be able to --

11       MR. LEVINE:  It's never impossible.  It happens all

12  the time.

13       MR. CAMPBELL:  I recall the judge advising the jury

14  at the beginning as well that they could take notes.  They

15  wouldn't have access to transcripts.

16       MR. SMITH:  I don't see why we shouldn't stick with

17  that.

18       MS. DUNN:  We're going to look it up.

19       THE COURT:  Are you looking?

20       MS. DUNN:  We are looking.

21       THE COURT:  You're going to have to rely -- here it

22  is.

23       "Recalling the evidence is very important because

24  this is not -- this is not a situation sometimes you might see

25  on TV or something where you will have a transcript of what

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  went on in the courtroom.  You're going to have to rely totally

2  upon the collective memory of the jury when you decide the

3  case."

4          MR. SMITH:  Thank you, Judge.

5          THE COURT:  If they do come back and ask for a

6  specific question, I'd be inclined to do it.

7          MS. KAPLAN:  I'm sorry, Judge, I didn't hear.

8          THE COURT:  If the jury comes back and says something

9  specific --

10         MS. KAPLAN:  Understood.

11         MR. SMITH:  We can convene then and figure out how to

12 deal with that.

13         MR. ISAACSON:  You can also obviously read back

14 transcript to them on topics.

15         MS. DUNN:  I would suggest that we say to them:  Do

16 you have a specific question?  Because they clearly have a

17 question, and it does seem like they should not get the whole

18 transcript.  That's clear from Your Honor's instruction.

19         MR. SMITH:  That is the situation that the jury finds

20 themselves in.  That is what we said we would be doing.

21         MS. DUNN:  I understand.  What I'm saying -- Your

22 Honor, what I'm saying is they obviously have a question about

23 something.  You could say, is there -- you know, if you have a

24 specific question, we could take that up.

25         MR. SMITH:  This is fine.  Was this the proposed

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1   instruction for that question?  It's fine.

2           THE COURT:  All right.  I'm telling them:  As you

3   were instructed at the beginning of the trial, transcripts of

4   testimony are not available.  You must rely upon the collective

5   memory of the jury.

6           That's all.  I just don't want to encourage them to

7   think they can keep coming back.

8           MS. DUNN:  Your Honor, the jury earlier asked whether

9   they could take the jury instructions home for the weekend.  We

10  would suggest waiting to answer that question until they decide

11  that they're done, because I think if we answer that question

12  too soon, they will stop deliberating and Your Honor told them

13  that they could stay longer if they would like.  So I think

14  when they come back and say we'd like to leave, then we --

15          THE COURT:  I agree with you.

16          MR. SMITH:  We agree with that, Your Honor.

17          THE COURT:  I'm not going to tell them until --

18          MS. DUNN:  Right.  We have a proposal for an

19  instruction if the jury is going to be permitted that I can

20  hand up.  And the defense has seen it.

21          MR. SMITH:  It's fine, Judge.

22          (Pause.)

23          THE COURT:  That's good.  I'll do that.

24          MS. DUNN:  Thank you, Your Honor.

25          MR. SMITH:  Thanks.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1          THE COURT:  Thank you all.

2          (Recess, 4:40 p.m. to 4:58 p.m.)

3  **(Jury in, 4:58 PM**

4          THE COURT:  All right.  Members of the jury, everyone

5  may be seated.

6          I understand you'd like to retire for the day.  A

7  question was asked if you could take the jury instructions

8  home.  I don't recommend that you do.  It's okay -- it's okay

9  that you do, except I have to give you this instruction:  I

10 will permit you to take jury instructions home over the

11 weekend.  You must not discuss the jury instructions with

12 anyone or show the instructions to anyone.  Do not do any

13 research or make any investigation about the facts or law in

14 this case.  As you have previously been instructed, do not

15 discuss the case with anyone or permit anyone to discuss it

16 with you.  This includes your family, friends, and those with

17 whom you work, as well as your fellow jurors.

18         Until you return to the jury room on Monday morning

19 to continue deliberating on your verdict, you simply are not to

20 talk about this case, and, of course, you are not to read this

21 and watch anything concerning the case over the weekend.

22         I want you to know we appreciate very much the

23 hardship this is on you and how hard a job it is.  All we can

24 say is we're grateful.  And I'm going to excuse you now until 7

25 a.m. -- I'm sorry, 9 a.m. Monday morning.  So you're excused.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/19/2021

1  **(Jury out, 5:00 p.m.)**

2              C E R T I F I C A T E

3      I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

4  the United States District Court for the Western District of

5  Virginia, appointed pursuant to the provisions of Title 28,

6  United States Code, Section 753, do hereby certify that the

7  foregoing is a correct transcript of the proceedings reported

8  by me using the stenotype reporting method in conjunction

9  with computer-aided transcription, and that same is a

10  true and correct transcript to the best of my ability and

11  understanding.

12      I further certify that the transcript fees and format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15      /s/ Lisa M. Blair              Date: November 19, 2021

16

17

18

19

20

21

22

23

24

25