Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021


1                       UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF VIRGINIA
2                          CHARLOTTESVILLE DIVISION


3    ****************************************************************

4    ELIZABETH SINES, ET AL.,      CIVIL CASE NO.:  3:17CV72
                                   NOVEMBER 22, 2021, 9:01 AM
5                                  JURY TRIAL, DAY 21
            Plaintiffs,
6    vs.

7                                  Before:
                                   HONORABLE NORMAN K. MOON
8    JASON KESSLER, ET AL.,        UNITED STATES DISTRICT JUDGE
                                   WESTERN DISTRICT OF VIRGINIA
9
            Defendants.
10
     ****************************************************************
11
     APPEARANCES:
12

13   For the Plaintiffs:      ALAN LEVINE, ESQUIRE
                              COOLEY LLP
14                            1114 Avenue of the Americas, 46th
                              Floor
15                            New York, NY  10036
                              212.479.6260
16
                              DAVID E. MILLS, ESQUIRE
17                            COOLEY LLP
                              1299 Pennsylvania Avenue, NW,
18                            Suite  700
                              Washington, DC  20004
19                            202.842.7800

20

21

22   Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                       255 West Main Street, Suite 304
23                     Charlottesville, Virginia  22902
                       434.296.9284
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25   TRANSCRIPT PRODUCED BY COMPUTER.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

 1  APPEARANCES CONTINUED:

 2  For the Plaintiffs:          MICHAEL L. BLOCH, ESQUIRE
                                 ROBERTA A. KAPLAN, ESQUIRE
 3                               Kaplan Hecker & Fink LLP
                                 350 Fifth Avenue, Suite 7110
 4                               New York, NY  10118
                                 212.763.0883
 5
                                 KAREN L. DUNN, ESQUIRE
 6                               WILLIAM A. ISAACSON, ESQUIRE
                                 Paul, Weiss, Rifkind, Wharton &
 7                               Garrison LLP
                                 2001 K Street, NW
 8                               Washington, DC  20006

 9  For the Defendants:          DAVID L. CAMPBELL, ESQUIRE
                                 Duane, Hauck, Davis, Gravatt &
10                               Campbell, P.C.
                                 100 West Franklin Street, Suite 100
11                               Richmond, VA  23220
                                 804.644.7400
12
                                 BRYAN J. JONES, ESQUIRE
13                               Bryan J. Jones, Attorney at law
                                 106 W. South Street, Suite 211
14                               Charlottesville, VA  22902
                                 540.623.6952
15
                                 JAMES E. KOLENICH, ESQUIRE
16                               Kolenich Law Office
                                 9435 Waterstone Blvd., Suite 140
17                               Cincinnati, OH  45249
                                 513.444.2150
18
                                 JOSHUA SMITH, ESQUIRE
19                               (Appearing via Zoom)
                                 Smith LLC
20                               807 Crane Avenue
                                 Pittsburgh, PA  15216
21                               917.567.3168

22                               RICHARD SPENCER, PRO SE
                                 P.O. Box 1676
23                               Whitefish, MT  59937

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  (Proceedings commenced, 9:01 a.m.)

2          THE COURT:  Good morning.

3          Okay.  First I'll say before we begin, I'll remind

4  everyone that under Standing Order 2020-12 and 2013-8 the

5  Court's prohibition against recording and broadcasting court

6  proceedings remains in force.  Attorneys, parties, and staff,

7  and any members of the public or press accessing this

8  proceeding today may not record or broadcast it.  That means no

9  photography, no using of video or audio recording device, no

10  rebroadcasting, livestreaming, or otherwise disseminating any

11  live or recorded video or audio on this proceeding.

12          The jury arrived about 8:30, and so they have started

13  deliberating.  I'm not going to bring them back into the

14  courtroom.

15          You all saw the letter, I assume, that plaintiffs

16  filed regarding the issue of transcripts?

17          MR. CAMPBELL:  Yes, Your Honor.  Has the Court

18  received my response?  I didn't file it.  I couldn't get ECF to

19  work last night, but I did email plaintiffs' counsel and the

20  Court as well.

21          THE COURT:  Okay.  No, I did not see your response.

22  If you'd like to summarize it, that will be all right.

23          MR. CAMPBELL:  Sure.  Your Honor, basically just that

24  we believe that doing this transcript would open Pandora's box

25  and would encourage the jury to do that with everything they're

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1    having difficulty recalling of nearly four weeks of testimony.

2            And then I quote the Fourth Circuit as well and say

3    that the Court didn't respond with a preference.  The Court

4    just answered the jury's request with -- consistent with the

5    Court's earlier instructions.  And there hasn't been, as the

6    Fourth Circuit requires, a reasonably well-focused request for

7    a specific answer to be read from the transcript.  That's not

8    what they asked for.  They just asked for the whole transcript.

9    So if they do come back and make any reasonably well-focused

10   request, I think the Court should possibly reconsider its

11   ruling.  But at this time having already ruled -- or not ruled,

12   but having already responded to the jury, and there being no

13   additional -- any specific or reasonably well-focused question

14   in response following them being told that they couldn't have

15   the transcript, I think the Court should leave it as it is.

16           THE COURT:  Well, the only thing that concerns me is

17   that the original instructions I gave them was sort of a

18   blanket statement that it was not -- they could not obtain the

19   transcript or a reading of it.  And it concerns me.  I would

20   hate to get a hung jury and find out that it could have been

21   resolved -- some issue could have been resolved if some issue

22   had been cleared up for them.

23           MR. CAMPBELL:  And Your Honor, I don't think, at

24   least to my recollection -- and perhaps the court reporter or

25   Your Honor's staff could find out -- I don't believe there was

5

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  a blanket prohibition to read-backs.  I think it was just as to

2  providing them the transcript.

3         THE COURT:  I think earlier when I first instructed

4  the jury I think I told them that they could not -- we've

5  indicated the transcripts are not available.  I told them that

6  in pretty uncertain terms.

7         So I'm inclined to grant the -- just tell them -- and

8  this is what I would say:  On Friday, you requested the

9  transcript of the testimony of Defendant Matthew Parrott.  I

10  told you that the transcript was not available; however -- and

11  then I would read the suggested -- if you have a specific

12  question about a particular witness's testimony, or any portion

13  of it, you may send the Court a note requesting that testimony,

14  and the Court will consider reading back the requested

15  testimony to the jury.  I think that's fairly innocuous.  I

16  mean, I have the same concerns that we've got I don't know how

17  many witnesses.  I would hate to get bogged down asking for so

18  much of this, but it's --

19         MR. KOLENICH:  We don't disagree with that, Your

20  Honor.  But I think the emphasis needs to be on the specific

21  request, rather than -- because if you say it like the way the

22  Court just read it, they might interpret it as:  Well, we did.

23  We asked for the testimony of Matt Parrott, which is specific.

24         THE COURT:  When I was reading that, I think I'll say

25  testimony of a witness, instead of focusing on him.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1    MR. KOLENICH:  Maybe part of the testimony of a

2   witness; otherwise, we might end up having to give them -- or

3   them again requesting all the testimony of Matt Parrott, which

4   took up half a day.

5    MS. KAPLAN:  I think, Mr. Kolenich, the language we

6   suggested, which I think the judge tends to read after the

7   "however" line says a specific question about the testimony of

8   a witness.  I think we're in agreement on that.

9    Again, if what is hanging them up, Your Honor, is

10  whether a particular witness was at a particular location on a

11  particular day and they think that's the kind of thing that's

12  appropriate for read-back --

13    THE COURT:  I think the problem with the instructions

14  I have given them so far, it seems like the door is slammed on

15  any --

16    MS. KAPLAN:  What's concerned us over the weekend,

17  Your Honor, is they may not even know that read-backs exist.

18  So that's what pushed them.

19    THE COURT:  I'm going to make that adjustment, send

20  them a note.

21    Anything else before we -- I mean, they're

22  deliberating.  We can just adjourn until we hear --

23    MR. KOLENICH:  Nothing else, Your Honor.

24    THE COURT:  -- until we get a message from Garcia.

25    MS. KAPLAN:  Thank you, Your Honor.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1          MR. CAMPBELL:  Thank you, Your Honor.

2          (Recess, 9:07 a.m.  To 10:13 a.m.)

3          THE COURT:  Another question.  You may want to listen

4   to this.  It's short, but I'm not sure we quite understand it.

5          "Does final jury instruction 32, which reads,

6   'negligence defenses, including assumption of risk,

7   contributory negligence, and sudden emergency are not valid

8   defenses to any of the claims that plaintiffs bring against

9   defendants.  I instruct you to disregard these defenses when

10  assessing defendants' liability.'"

11         The question is:  "Does final jury instruction number

12  32 apply only to financial liability"?

13         MS. KAPLAN:  I'm stumped too, Your Honor.

14         THE COURT:  I mean, it applies to everything.  It's

15  just not a defense.  I don't know how to make it much clearer.

16         MS. DUNN:  We would have thought this was the

17  clearest instruction in the pile.

18         THE COURT:  I could just say no, it applies to --

19  applies to any of the claims.  Are not valid defenses to any of

20  the claims.

21         MR. LEVINE:  Exactly.

22         THE COURT:  Actually, no one has argued any -- I

23  think the words may have popped up somewhere, but no one has

24  argued negligence or assumption of the risk or anything.

25         MR. KOLENICH:  A couple of questions were asked that

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  might have amounted to assumption of the risk, Your Honor.

2         THE COURT:  Hmm?

3         MR. KOLENICH:  I think some of the defendants asked

4  questions that were --

5         THE COURT:  Right.

6         MR. KOLENICH:  -- the same thing as assumption of the

7  risk.

8         THE COURT:  There was some implication that maybe if

9  they stayed home they wouldn't have been hurt, but that's not a

10  defense.

11         MS. DUNN:  No, that's not.

12         What if you -- sorry, Your Honor.  I was going to

13  suggest what if you just said:  The defenses do not apply to

14  any of the claims?

15         THE COURT:  Well, that's not changing the

16  instruction, but it's about the only thing I know to say is

17  something to that effect.

18         MS. DUNN:  Yeah.  I think you would need to say it

19  doesn't apply to any of the claims that plaintiffs brings

20  against defendants just for clarity, but the instruction

21  doesn't saying anything more than that, really.

22         THE COURT:  I mean, one thing you can say, I think

23  what it means is the defendants are not to be considered

24  responsible for their injuries.

25         MR. ISAACSON:  The plaintiffs?

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1          THE COURT:  The plaintiffs.

2          What did I say?

3          MR. ISAACSON:  You said the defendants.

4          MR. KOLENICH:  We're okay with that.

5          (Laughter).

6          THE COURT:  The plaintiffs are not -- something to

7   the effect that that's what it means; there are no defenses to

8   the -- if they find the defendants liable, they don't go --

9   they don't find -- there's no defense to it.

10         MS. KAPLAN:  One thing they could be thinking

11  about -- I'm just trying to speculate in my head -- they could

12  be thinking it doesn't affect liability, but do they somehow

13  discount the amount of damages for it, which obviously they

14  can't do.

15         THE COURT:  Well, that's what we were considering,

16  whether it applied to -- we were talking about punitive

17  damages.

18         MS. DUNN:  I mean, just to give my own view, my own

19  view is the safest thing to do is just repeat that it does not

20  apply to any of the plaintiffs' claims against the defendants.

21         MS. KAPLAN:  I think we all agree on that.

22         THE COURT:  Like it says, "Does final jury

23  instruction number 32 apply only to financial liability?"

24  Answer:  No, it applies to --

25         MR. ISAACSON:  All of plaintiffs' claims.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1        THE COURT:  -- all of the claims.

2        MR. KOLENICH:  Maybe the Court could say this is not

3   a negligence case, so negligence defenses don't apply to any of

4   the claims.

5        MS. KAPLAN:  Okay.  Well, maybe they're making

6   progress.  We can always hope.

7        THE COURT:  Well, how about that:  No, it applies to

8   all of the claims of the plaintiffs.  This is not a negligence

9   case, and so there are no defenses.

10        MR. CAMPBELL:  Well, not that there are no defenses.

11        MR. KOLENICH:  No negligence defenses.

12        THE COURT:  Well, I want to be sure.  No negligence

13   defenses.

14        MS. KAPLAN:  We're okay with that, Your Honor.

15        MS. DUNN:  Your Honor, I don't know if Mr. DeRise is

16   writing it.  Do you want us to write what you just said?

17        THE COURT:  Are you getting it down?

18        Let's say it again.  The answer is:  No, it applies

19   to all of the claims.  This is not a negligence case and

20   negligence defenses do not apply, which is in the heading of

21   the instruction.

22        Okay?

23        MS. DUNN:  Your Honor, instead of it applies to all

24   the claims, can you say, no, it applies to all plaintiffs'

25   claims against defendants, just because we don't --

                    Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1              THE COURT:  Okay.  That's what the instruction

2    says --

3              MS. DUNN:  Thank you.

4              THE COURT:  -- all plaintiffs' claims.

5              Okay.  Anything else?

6              MS. KAPLAN:  That's it, Your Honor.

7              Well, we don't know.  You would know, Your Honor, if

8    there's anything else.

9              MR. LEVINE:  I guess there isn't a 33?  There isn't

10   an instruction number 33?

11             THE COURT:  We'll send them a note back.

12             MS. DUNN:  Thank you, Your Honor.

13             (Recess, 10:20 a.m. to 11:31 a.m.)

14             THE COURT:  Another question.  I'm going to pass

15   around the note after I read it to you.

16             "Are words are form of violence?  (According to

17   federal law)."

18             Are words are form -- I think it means:  Are words a

19   form of violence?  (According to federal law).

20             I'm thinking about asking them what instruction

21   they're talking about first, but I think they're probably

22   talking about 17 or 30 or both.

23             MR. SPENCER:  I would firmly say "no" to the answer

24   are words a form of violence, according to many landmark

25   Supreme Court cases.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1        THE COURT:  Well, it looks like they're quoting

2   something out of an instruction to me because -- which, I mean,

3   I think you're right.  Words are not a form of violence.  But

4   in instruction -- for instruction 30, the fact that an

5   agreement to engage in illegal conduct necessarily takes,

6   quote, "the form of words," end quote also does not confer upon

7   it, or upon the underlying conduct, protection under the First

8   Amendment.

9        MR. KOLENICH:  Perhaps the answer, Your Honor, should

10  be:  Words alone are not a form of violence.

11       MS. KAPLAN:  I don't have a search to pull up.  Is

12  the only use of the word "words" in that -- is that 30?

13       MS. DUNN:  That's 30.  That's the last paragraph of

14  the First Amendment instruction.

15       MR. SPENCER:  Your Honor, I might be wrong, but I

16  think they're looking at the big picture on this one.  I don't

17  think it's about that.  I think everyone would agree that you

18  can't use words to embezzle money from your company and that's

19  somehow protected by the First Amendment.  I think this is a

20  big picture issue they're contemplating.

21       THE COURT:  I don't know what they're talking about.

22  It seems to me they're talking about a specific instruction.

23       MR. LEVINE:  Your Honor, I think directing them to

24  the particular instructions, and either reading it to them in

25  open court or directing them to it is a way to go here, and not

13

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  trying to answer it literally, but to give them the instruction

2  in the context.

3          MR. CAMPBELL:  Well, I think the response should

4  include the literal answer no, certainly, even if something

5  else is added.

6          MR. SPENCER:  Yes.

7          MS. KAPLAN:  I don't think there's any legal answer.

8  I don't think that's a legal answer.

9          THE COURT:  They're talking about is it federal law?

10  I don't know what --

11          MS. KAPLAN:  I don't think you can find federal law

12  the definition of words, not violence.  I don't think anything

13  exists.

14          MR. SPENCER:  Again, I think this is a big-picture

15  issue.  You have to express that.

16          THE COURT:  We don't know what they're talking about,

17  frankly.  That's the problem.

18          MR. SPENCER:  I can't know that, but I can sense

19  that.

20          MR. KOLENICH:  The Court told them that the abject

21  arguing in favor of violence standing alone is not -- it is

22  First Amendment protected.  So they have to find something

23  besides rhetoric or words.  It has to be words that form a

24  conspiracy.  If they want to refer them just to the jury

25  instructions, I think there wouldn't be a question if they

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  understood the jury instructions.

2          MS. DUNN:  Your Honor, there is -- the First

3  Amendment instruction gives the instruction in this area of

4  conversation.  So we would propose pointing them to this

5  instruction and seeing if they still have a question after

6  that.

7          THE COURT:  Say that again now.

8          MS. DUNN:  Because the First Amendment instruction,

9  number 30, addresses this issue, we would propose directing

10  them to this instruction and then seeing if they have

11  additional questions after that.

12          THE COURT:  I think this comes right out of that

13  instruction.

14          MS. KAPLAN:  We agree.

15          THE COURT:  That's why I would ask them --

16          MS. KAPLAN:  I could be wrong, Your Honor, but my

17  recollection is that's the only time the word "words" is used

18  in the entire set of instructions.  So it makes sense.

19          THE COURT:  I could just say I refer you to

20  instruction number 30.

21          MR. LEVINE:  Exactly.

22          THE COURT:  And that's the best answer I can give

23  you.

24          MR. SPENCER:  I agree with Mr. Campbell, though.  If

25  this is a philosophical question, I think it can be answered,

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1    or at least you could offer guidelines for answering it.  The

2    answer is no.

3              THE COURT:  I don't think it's philosophical.  I

4    think they're asking specifically about the instruction.

5              MR. LEVINE:  Your Honor, the good thing about your

6    instructions is that they're balanced.  You give each side

7    during the course of an instruction.  And so if Your Honor

8    directs them to the relevant instruction, then it's a very

9    balanced presentation to answer the question.

10             THE COURT:  Well, is the First Amendment instruction

11   30?

12             MS. KAPLAN:  30, Your Honor.

13             THE COURT:  Do you all think that that's confusing?

14   I mean, if you read it, it looks to me like it speaks for

15   itself.

16             MS. KAPLAN:  I mean, the one thing -- with respect to

17   Mr. Spencer, the one thing that Your Honor shouldn't do is

18   involve itself in philosophical debate about abstract words and

19   what they mean, because it's all in the context of this case.

20             MR. KOLENICH:  Your Honor, the technical answer to

21   the question is no.  You could just say no.

22             MS. KAPLAN:  I don't think it is a technical answer

23   to the question.

24             MS. DUNN:  It's not.  I mean, my concern, Your Honor,

25   is that going beyond this is going to invite some sort of

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  error.  Like we have an instruction that speaks to this issue

2  directly and it's a lawful instruction.  And I think if we

3  start mutating this, it may create problems.

4          MR. CAMPBELL:  Are you taking the position words are

5  a form of violence?

6          MR. LEVINE:  The instruction itself clarifies it.

7          MR. KOLENICH:  I think you should at least say the

8  words have to form a conspiracy, an agreement.

9          MR. SPENCER:  Yes.

10         MR. KOLENICH:  Words alone are not violence.  Words

11  have to amount to something more than -- that seems to be what

12  they're asking.  In other words, if the defendants walk by

13  chanting things, is that violence?  I think pretty clearly it

14  is not.

15         MS. KAPLAN:  But the problem with that is that brings

16  in almost every other instruction in the case, because if they

17  have words and they form a conspiracy and there is an overt act

18  of violence in the conspiracy, then they're liable for the

19  conspiracy.  So I don't think that works.

20         MR. KOLENICH:  So the words have to amount to a

21  conspiracy because words alone --

22         MS. KAPLAN:  But that's already in the conspiracy

23  instruction.

24         MR. KOLENICH:  Well, then at least refer them to more

25  than 30.  Refer them to the conspiracy instruction as well.

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1          MS. DUNN:  I think the problem is there is -- there

2    are other claims in this case.  And making things up at this

3    point is going to confuse the issue.  I mean, there are claims

4    about intentional infliction of emotional distress.  There are

5    claims about the underlying hate crime statute under Virginia

6    law.  This is an area that, if we do not want to try this case

7    again, I do not recommend going down this road.

8          MR. KOLENICH:  Can we at least give them 30 and then

9    whatever -- what is it, 13 is the --

10         MS. DUNN:  No.  I would give them 30.  They're not

11   shy about asking questions.  You know, if they have more

12   questions --

13         THE COURT:  What is -- I was looking at 17.

14         The word "form" is not anywhere on the jury verdict,

15   is it?

16         MS. KAPLAN:  I don't recall it being there.

17         MS. DUNN:  I don't see it anywhere.  We could search.

18         THE COURT:  I don't know why it would be.

19         MS. DUNN:  I only see it in instruction 30.

20         THE COURT:  I just think instruction 30 covers it.  I

21   don't know why -- I mean, it refers --

22         MS. KAPLAN:  We agree, Your Honor.

23         THE COURT:  -- to the First Amendment.  It refers to

24   the United States Constitution.

25         MR. SPENCER:  I agree.  And I think that's why

18

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1  they're asking the question, because it's a bigger thing.  This

2  is something that --

3          THE COURT:  But we're not trying a bigger thing.

4  We're trying a case based on the facts in this case.

5          MR. SPENCER:  I agree.  But everything is within a

6  bigger philosophical concept.  Even the smallest thing,

7  the fall of a sparrow, is within a bigger, wider context.

8          THE COURT:  Well, that's --

9          MR. KOLENICH:  Your Honor, we --

10          MR. SPENCER:  They're asking about that.  They're

11  sincerely asking about it.

12          MR. KOLENICH:  We did request an instruction that any

13  advocacy of violence has to be advocating imminent violence in

14  order to violate the First Amendment, and I'm not sure the

15  Court gave that instruction.  So I think this question kind of

16  gets back to that, which is certainly correct First Amendment

17  law.  Advocacy of violence, violent rhetoric, has to lead to

18  imminent violence, or else it's protected.

19          Now, at the same time, it's true that if this

20  advocacy amounts to a conspiracy, it's not protected, which the

21  Court has already told them.  But there is a missing piece

22  here.

23          MR. CAMPBELL:  It's still not a form of violence.

24          MR. KOLENICH:  Right.  They ask is the words

25  themselves a form of violence.  And I don't think that --

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1          MS. KAPLAN:  Your Honor, what I would respectfully

2     suggest is this area is perhaps one of the most complicated

3     areas -- as Your Honor knows -- of federal law and

4     constitutional law.  We have instructions in this case.  We

5     should stick with the instructions in this case.  As my

6     colleague, Karen, said, getting out of that, particularly in

7     the area of the First Amendment, is always treacherous.  They

8     have an instruction.  They should look at the instruction.

9          THE COURT:  What about the thing that you say I

10    didn't instruct on imminent violence.

11         MR. KOLENICH:  I don't think it's in the

12    instructions, Your Honor.

13         MS. DUNN:  It's not, because this is not an

14    incitement case.  We're not talking about that.

15         I think there is a lot of peril in starting to talk

16    more expansively about this area.  We are going to invite a

17    problem, in my view.

18         THE COURT:  All right.  You all may sit down or go

19    somewhere.  I'm going to -- I want to take a look at this.  I

20    mean, what I'm thinking right now is saying:  I'm referring you

21    to instruction 30.  If that doesn't answer your question, let

22    us know what instruction you're talking about.

23         MS. KAPLAN:  Sounds right to us, Your Honor.

24         MS. DUNN:  Thank you, Your Honor.

25              (Pause.)

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1        THE COURT:  This is what I told you I was going to

2   do:  "I'll refer you to instruction number 30.  If that does

3   not answer your question, which instruction are you referring

4   to?"

5        (Recess, 11:51 a.m. to 12:09 p.m.)

6        THE COURT:  This one says, "If we cannot come to a

7   unanimous decision on the first three claims, do we still

8   decide on Claims 4, 5, and 6"?

9        I wouldn't read a whole lot into that, just given the

10  way the questions have come.  Obviously, they do have to

11  consider 4, 5, and 6; but I don't want them to stop at 1, 2,

12  and 3 yet.

13       MR. CAMPBELL:  I would definitely agree, yes, Your

14  Honor, we would ask that they consider 4, 5, and 6 regardless,

15  of course.

16       THE COURT:  I don't understand why there is any

17  misunderstanding about that.  I think I'm going to tell them

18  they must continue to try to reach a unanimous decision on all

19  six counts.

20       MS. KAPLAN:  We agree, Your Honor.

21       THE COURT:  Because I think there's too much into it

22  not to ultimately have to go for the *Allen* charge.  I don't

23  want to give it now.

24       MS. KAPLAN:  Okay.  Thank you, Your Honor.

25       (Recess, 12:11 p.m. to 4:41 p.m.)

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1      THE COURT:  The jury is coming back tomorrow, and I'm

2 just going to call them in to tell them to not talk about the

3 case.

4      MS. KAPLAN:  Okay.

5      THE COURT:  So you all can take a seat.

6 **(Jury in, 4:43 p.m.)**

7      THE COURT:  Members of the jury, I want you to know

8 we continue to appreciate your continued hard work.  I know

9 this is not easy, but the reason I called you in is I have to

10 tell you every day when you're released not to discuss the case

11 with anyone, or allow anyone to discuss it with you or remain

12 within hearing of anyone discussing it.  Do not read or watch

13 or listen to anything outside the courthouse concerning the

14 case.  And so you're excused at this time.

15      Thank you.

16 **(Jury out, 4:44 p.m.)**

17 (Proceedings adjourned, 4:44 p.m.)

18

19

20

21

22

23

24

25

Sines, et al. v. Kessler, et al., 3:17CV72, 11/22/2021

1                           C E R T I F I C A T E

2          I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3    the United States District Court for the Western District of

4    Virginia, appointed pursuant to the provisions of Title 28,

5    United States Code, Section 753, do hereby certify that the

6    foregoing is a correct transcript of the proceedings reported

7    by me using the stenotype reporting method in conjunction

8    with computer-aided transcription, and that same is a

9    true and correct transcript to the best of my ability and

10   understanding.

11         I further certify that the transcript fees and format

12   comply with those prescribed by the Court and the Judicial

13   Conference of the United States.

14         /s/ Lisa M. Blair                    Date: November 22, 2021

15

16

17

18

19

20

21

22

23

24

25