IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:17-cv-00072 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| JASON KESSLER et al., | ) | By:   Joel C. Hoppe |
|     Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on two of Plaintiffs' petitions to recover their reasonable expenses and attorney's fees from Defendant Robert "Azzmador" Ray under Rule 37 of the Federal Rules of Civil Procedure. *See* Pls.' First R. 37 Fee Pet., ECF No. 985 (July 2, 2021) (filed under Fed. R. Civ. P. 37(b)(2)(C)); Pls.' Second R. 37 Fee Pet., ECF No. 1059 (Sept. 13, 2021) (filed under Fed. R. Civ. P. 37(d)(3)). These requests follow the Court's findings that Ray disobeyed a discovery order issued on May 18, 2020, *see* Mem. Op. & Order of Mar. 25, 2021 (Hoppe, J.), ECF No. 933; Order of May 18, 2020 (Hoppe, J.), ECF No. 728, and failed to appear for properly noticed depositions on July 29, 2020, and September 14, 2020, as well as for a civil contempt hearing before the presiding District Judge on September 14, 2020, *see* Order Finding Robert "Azzmador" Ray in Civil Contempt 2–5 (Moon, J.) ("Ray Civil Contempt Order"), ECF No. 877; Oral Order of Sept. 3, 2021 (Moon, J.), ECF No. 1039. Ray, who is representing himself in this action, did not file an opposition brief within the fourteen days allowed by the pretrial order. ECF No. 101. Accordingly, the Court considers Plaintiffs' fee petitions to be unopposed. *Id.* ¶ 7.

1

Plaintiffs seek a total award of $25,960.75 in attorney's fees and out-of-pocket expenses.[1] *See* Pls.' First R. 37 Fee Pet. 6–7; Pls.' Second R. 37 Fee Pet. 5. For the reasons explained below, I recommend that Plaintiffs are entitled to recover **$3,027.50** in reasonable attorney's fees caused by Ray's failure to obey the discovery order, and **$15,540.00** in reasonable attorney's fees caused by the failure to attend his depositions on July 29, 2020, and September 14, 2020, as well as the contempt hearing on September 14, 2020. The recommended total award of **$18,567.50**[2] reflects minor reductions in the hourly rates sought by Plaintiffs' attorneys, but no reduction in the hourly rate sought by their paralegals, *see* Mem. Op. of May 26, 2020, at 8–12 (Hoppe, J.), ECF No. 738, and a slight reduction in the number of hours claimed "to account for [some] excessively vague entries" and to exclude "noncompensable clerical tasks that should not have been included in their fee petition," *id.* at 20. *See id.* at 16–20. Plaintiffs' request for $2,025.75 in out-of-pocket expenses related to Ray's depositions should be denied. *See id.* at 22–23.

## I. The Legal Framework

"When a litigant files suit in a court in the United States, he or she will typically pay the costs associated with hiring an attorney. This is the 'American Rule' and it governs litigation in federal courts 'absent explicit congressional authorization' to the contrary." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15 (1994)). Plaintiffs filed their fee petitions under Rule 37 of the Federal Rules of Civil Procedure, which "partially abrogate[s] the American Rule," *id.*, by shifting fees where a party

---

[1] More specifically, Plaintiffs request $3,762.50 in attorney's fees under Rule 37(b)(2)(C), *see* Pls.' First R. 37 Fee Pet. 1, 6–7; $20,172.50 in attorney's fees under Rule 37(d)(3), *see* Pls.' Second R. 37 Fee Pet. 13; Oral Order of Sept. 3, 2021 (citing Fed. R. Civ. P. 37(d)(3)); and $2,025.75 to cover out-of-pocket expenses related to Ray's depositions on July 29 and September 14, 2020, and contempt hearing on September 14, 2020, *see* Pls.' Second R. 37 Fee Pet. Ex. A, ECF No. 1059-1.

[2] Ray should be directed to pay this amount in addition to any fees, fines, or damages, that have been, or may still be, awarded against him in this action.

fails in specific ways to cooperate in discovery. *See, e.g.*, Fed. R. Civ. P. 37(a), (b), (d). Two such failures are relevant to Plaintiffs' pending fee petitions. *See* Pls.' First R. 37 Fee Pet. 3 (citing Fed. R. Civ. P. 37(b)(2)(C)); Oral Order of Sept. 3, 2021 (citing Fed. R. Civ. P. 37(d)(3)). First, if a party "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure," Fed. R. Civ. P. 37(b)(2)(C). Second, if an individual "fails, after being served with proper notice, to appear for that person's deposition," Fed. R. Civ. P. 37(d)(1)(A)(i), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure," Fed. R. Civ. P. 37(d)(3). Each subsection further contains a "safe harbor[]" clause, Mem. Op. of May 26, 2020, at 23, that prohibits the otherwise mandatory award if "the failure was substantially justified or other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(b)(2)(C), (d)(3).

Separately, "federal [district] courts have inherent power to assess attorney's fees against" a litigant or attorney, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980), "for the willful disobedience of a court order . . . or when the [responsible] party has acted in bad faith, vexatiously, or for oppressive reasons," *id.* at 766 (internal quotation marks omitted).[3] *See*

---

[3] Federal magistrate judges, on the other hand, "have no inherent Article III powers—they have only those powers vested in them by Congress," *Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) (per curiam), and delegated to them by the presiding district judge, 28 U.S.C. § 636(b)(1). *See* Pretrial Order ¶ 13 (referring "[a]ll nondispositive pretrial motions and issues" under 28 U.S.C. § 636(b)(1)(A)). An order shifting attorney's fees "under the district court's 'inherent' power and issued after the conclusion of the underlying case . . . [is] not a nondispositive pretrial matter under § 636(b)(1)." *Reddick*, 456 F. App'x at 193–94. Accordingly, to the extent Plaintiffs seek to recover their expenses caused by Ray's failure to attend the civil contempt hearing in violation of Judge Moon's show cause order, *see* Show Cause Order to Robert "Azzmador" Ray, ECF No. 848; Oral Order of Sept. 3, 2021, I am "permitted only to enter a Report and Recommendation subject to the district court's *de novo* review," *Reddick*, 456 F. App'x at 194.

*Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991) (explaining that a federal court may shift attorney's fees either "as a sanction for the willful disobedience of a court order" or when the responsible party "shows bad faith by delaying or disrupting the litigation") (internal quotation marks omitted)); *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 542–43 (4th Cir. 2002) (explaining that a district court may exercise its inherent authority to shift attorney's fees only if "supported by a finding of bad faith or other similar abuse" of the litigation process). "In the Fourth Circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Certain Underwriters at Lloyd's, London v. Advanfort Co.*, No. 1:18cv1421, 2019 WL 3366103, at *8 (E.D. Va. July 25, 2019) (quoting *Raab v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)) (other quotation marks omitted). Shifting attorney's fees "under this bad-faith exception" to the American Rule, *In re White*, No. 2:07cv342, 2013 WL 2595652, at *29 (E.D. Va. Sept. 13, 2013), "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority . . . and making the [moving] party whole for expenses caused by his opponent's obstinacy," *Chambers*, 501 U.S. at 46 (cleaned up).

The party seeking fees always "bears the [initial] burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Project Vote/Voting for Am. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see Rainbow Sch., Inc. v. Rainbow Early Educ. Hldg.*, 887 F.3d 610, 620–21 (4th Cir. 2018) (affirming fees awarded under inherent authority); *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13cv658, 2014 WL 7185199, at *3 (E.D. Va. Dec. 16, 2014) (awarding fees under Rule 37) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008)). If

4

the movant makes this showing, the burden shifts to the "disobedient party to avoid expenses by showing that his failure [was] justified or that special circumstances make an award of expenses unjust." *Porter v. Johnson*, Civ. No. 04-2121, 2008 WL 2566749, at *1 (D.D.C. June 25, 2008) (quoting Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment). This "ensures that the disobeying party, rather than the innocent party, bears those costs." *In re Boston Sci. Corp.*, MDL No. 2326, 2015 WL 6043795, at *2 (S.D. W. Va. Oct. 15, 2015).

### III. Discussion

#### A.   *Lodestar Figure*

A fee award "is calculated using the lodestar method, in which the court multiples a reasonable hourly rate by a reasonable number of hours expended," *Smith v. Dist. of Columbia*, 249 F. Supp. 3d 106, 110 (D.D.C. 2017), dealing with the disobedient party's pertinent discovery failure or litigation misconduct, *see* Mem. Op. of May 26, 2020, at 7 (using lodestar method to award fees under Rule 37(b)(2)(C)); *Victor Stanley, Inc. v. SCH Enter.*, No. RDB-06-2662, 2021 WL 3510588, at *2–3 (D. Md. Aug. 10, 2021) (using lodestar method to award attorney's fees under inherent authority); *see also Rainbow Sch.*, 887 F.3d at 620–21 (explaining that district courts "have considerable discretion in awarding attorney's fees" under their inherent authority, and generally need only "determine the time and labor expended and the customary fees for like work and then consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment") (internal quotation marks omitted); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 521 (4th Cir. 2018) (affirming attorney's fees awarded under district court's inherent authority where the court "tailored the amount of sanctions to compensate only for costs caused by wrongful conduct").

The court's decision about "what constitutes a 'reasonable' number of hours and rate," *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009), is guided by twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (citing *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)). The attorneys' experience and ability, "the time and labor expended, the novelty and difficulty of the questions raised, [and] the skill required to properly perform the legal services rendered" are the "most relevant" factors in determining a reasonable fee award for a discovery violation. *Victor Stanley*, 2019 WL 3841932, at *2 (D. Md. Aug. 14, 2019) (quotation marks omitted); *see also Flame S.A.*, 2014 WL 7185199, at *3. When the applicant carries its "burden of showing that the claimed rate and number of hours are reasonable, the resulting [lodestar amount] is presumed to be the reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *see McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013) ("The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010))); *Davis v. Uhh Wee, We Care Inc.*, Civ. No. ELH-17-494, 2019 WL 3457609, at *10 (D. Md. July 31, 2019) (awarding fees under Rule 37(b)(2)(C)); *cf. Scott v. Clarke*, No. 3:12cv36, 2014 WL 1463755, at *5–6 (W.D. Va. Apr. 15, 2014) (Moon, J.) (awarding fees under Rule 37(a)(5)(A)); *Victor Stanley*, 2021 WL 3510588, at *2–3 (awarding fees under inherent authority).

Here, Plaintiffs seek a combined **$23,935.00** in attorney's fees for **82.9** hours of work by one partner-level attorney, two senior-level associate attorneys, and three paralegals:

| Name | Total Hours Claimed | Hourly Rate Claimed | Total Fee Claimed |
|---|---|---|---|
| Jessica Phillips, Esq. | 25.6 | $450 | $11,520.00 |
| Yotam Barkai, Esq. | 35.2 | $275 | $9,680.00 |
| Katherine Cheng, Esq. | 3.0 | $275 | $825.00 |
| Josh Hasler | 1.4 | $100 | $140.00 |
| Stephanie Spear | 12.5 | $100 | $1,250.00 |
| Brittany Zhang | 5.2 | $100 | $520.00 |
| **Total** | **82.9** | - | **$23,935.00** |

*See* Pls.' First R. 37 Fee Pet. 6 (seeking $3,762.50 for 13.3 hours of work performed by Ms. Phillips, Mr. Barkai, Ms. Cheng, and Mr. Hasler); Pls.' Second R. 37 Fee Pet. 5 (seeking $20,172.50 for 69.6 hours of work performed by Ms. Phillips, Mr. Barkai, Ms. Cheng, Ms. Spear, and Ms. Zhang). Ms. Phillips attests that the time claimed in the Exhibits attached to Plaintiffs' fee petitions reflects an "accurate accounting, based on contemporaneous records," of the hours each timekeeper devoted to Ray's pertinent discovery failure, including "work related to implementing the Court's May 18, 2020 Order," Pls.' First R. 37 Fee Pet., Decl. of Jessica Phillips, Esq. ¶ 10 (July 2, 2021) ("Phillips July 2 Decl."), ECF No. 985-2; *see id.* Ex. A, ECF No. 985-1, and time spent preparing for and attending Ray's depositions and subsequent civil contempt hearing, Pls.' Second R. 37 Fee Pet., Decl. of Jessica Phillips, Esq. ¶¶ 10–11 (Sept. 13, 2021) ("Phillips Sept. 13 Decl."), ECF No. 1059-2; *see id.* Ex. A, ECF No. 1059-1. Ms. Phillips's law firm typically charges its clients for this type of work. Phillips July 2 Decl. ¶ 14; Phillips Sept. 13 Decl. ¶ 16; *see Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.").

*1.    Hourly Rates*

Plaintiffs seek recompense at $450.00 per hour for partner Jessica Phillips, Esq.; $275.00 per hour for senior-level associates Yotam Barkai, Esq., and Katherine Cheng, Esq.; and $100.00 per hour for paralegals Josh Hasler, Stephanie Spear, and Brittany Zhang. *See* Pls.' First R. 37 Fee Pet. 10; Pls.' Second R. 37 Fee Pet. 9. They bear the burden "to show that the requested hourly rates are consistent with the prevailing market rates" for this type of work "in the relevant community." *McAfee*, 738 F.3d at 91 (quotation marks omitted). "The relevant market . . . is ordinarily the community" where the district court sits. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Prevailing hourly rates can "be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)); *see Depaoli v. Vacation Sales Assocs.*, 489 F.3d 615, 622–23 (4th Cir. 2007). The court may also rely on its "own familiarity with the rates prevailing in the district." *Rogers v. Summit Receivables*, No. 3:17cv69, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018) (quoting *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005)); *see Davis*, 2019 WL 3457609, at *10–11 (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000)); *Scott*, 2014 WL 1463755, at *5–6.

The legal market in central Virginia provides the benchmark for establishing reasonable hourly rates in this case, even though the six individuals seeking fees all worked in New York City or Washington, D.C., for a prestigious law firm during the relevant time, Pls.' First R. 37 Fee Pet. 10; Pls.' Second R. 37 Fee Pet. 9. *See* Mem. Op. of May 26, 2020, at 11 (citing *Scott*, 2014 WL 1463755, at *5–6). Ms. Phillips submitted declarations describing her and her

8

associates' exceptional qualifications and notable legal experience. *See* Phillips July 2 Decl. ¶¶ 3–8; Phillips Sept. 13 Decl. ¶¶ 3–9. Nevertheless, "this information alone 'is insufficient to establish that the rates sought are commensurate with the prevailing market rates' for attorneys with 'similar skill and . . . experience' handling discovery disputes in this judicial district." Mem. Op. of May 26, 2020, at 11 (quoting *Two Men & A Truck Int'l, Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 927 (E.D. Va. 2015)). Moreover, Plaintiffs sought lower hourly rates in their original Rule 37 fee petition—$400 for partners and $225 for associate attorneys—and I found those "proposed rates [were] reasonable" for work performed in 2019 "considering the[] attorneys' qualifications, the skill and professionalism required to represent [Plaintiffs'] interests while dealing with the unique and complicated discovery challenges in this case," and Judge Moon's fee awards for similar work in a comparable civil-rights case. Mem. Op. of May 26, 2020, at 11–12 (citing ECF No. 505). Plaintiffs do not explain why they increased by $50 their proposed hourly rates—i.e., $450 for Ms. Phillips and $275 for Mr. Barkai and Ms. Cheng—for performing essentially the same work in mid 2020. *See generally* Pls.' First R. 37 Fee Pet. 9–11 & n.4; Pls.' Second R. 37 Fee Pet. 8–10 & n.2. Plaintiffs' requested rate of $100 per hour for Mr. Hasler's, Ms. Spear's, and Ms. Zhang's paralegal services, Pls.' First R. 37 Fee Pet. 10; Pls.' Second R. 37 Fee Pet. 9, "is in line with prevailing rates for similar work in this judicial district and the surrounding area," Mem. Op. of May 26, 2020, at 12 (awarding the same) (collecting cases). Accordingly, I recommend allowing the same hourly rates that I previously found were reasonable for compensable work:

- Phillips                $400.00
- Barkai & Cheng          $225.00
- Hasler, Spear & Zhang   $100.00

*See* Mem. Op. of May 26, 2020, at 11–12.

    2.    *Hours Claimed*

Next, Plaintiffs must "document[] the appropriate hours," *Project Vote*, 887 F. Supp. 2d at 709 (citing *Hensley*, 461 U.S. at 437), their legal team spent dealing with Ray's failure to obey the May 18 2020 discovery order, Fed. R. Civ. P. 37(b)(2)(C), failure to attend his properly noticed depositions on July 29 and September 14, 2020, Fed. R. Civ. P. 37(d)(3), and failure to attend the contempt hearing, *see* Oral Order of Sept. 3, 2021. This requires "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity" so the court can "weigh the hours claimed and exclude hours that were not reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (cleaned up). Plaintiffs' counsel also "should make a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434. *See Lopez v. XTEL Contr. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) ("The party seeking fees 'must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary.'" (quoting *Travis v. Prime Lending*, No. 3:07cv65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (Moon, J.))).[4]

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. It may do so "by identifying and disallowing specific

---

[4] I acknowledge Plaintiffs' efforts to limit the number of hours billed for Ray's pertinent discovery failures, including by excluding all work performed by attorneys or paralegals not identified in Ms. Phillips's declarations. *See* Phillips July 2 Decl. ¶¶ 12–13; Phillips Sept. 13 Decl. ¶¶ 14–15. Nonetheless, the Court has an independent obligation to review Plaintiffs' billing records to ensure that its "payment order under Rule 37[] extends only to such 'reasonable' expenses, including attorney's fees," as are allowed by the relevant subsection. Mem. Op. of May 26, 2020, at 19 (citing Fed. R. Civ. P. 37(b)(2)(C)); *see* Fed. R. Civ. P. 37(d)(3) (authorizing court orders directing the party who failed to appear for his properly noticed deposition, his attorney, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure" to appear). Payment orders issued under the district court's inherent authority should be "tailored . . . to compensate only for costs caused by wrongful conduct." *Six*, 891 F.3d at 521.

hours that are not adequately documented, . . . by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved," *Guidry*, 442 F. Supp. 2d at 294, or by some reasoned combination of the two, *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016) ("There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors."). *See also Fox v. Vice*, 563 U.S. 826, 838 (2011) (noting that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," insofar as the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection"). Here, Plaintiffs' records are straightforward enough to set out a line-by-line summary deleting each unsupported or otherwise noncompensable hour claimed.

        *a.*      *Noncompensable Hours – Clerical Tasks*

Plaintiffs' legal team billed 5.8 hours performing "purely clerical tasks" like organizing exhibits, formatting documents, filing and serving papers, pulling transcripts for attorneys to review, and scheduling depositions. *LaMonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 521 (W.D. Va. 2016); *see* Phillips July 2 Decl. Ex A (Hasler entry of June 1); Phillips Sept. 13 Decl. Ex. A (Barkai entry of Sept. 9; Spear entries of July 24 and Sept. 14; and Zhang entries of Sept. 3–4). These tasks "should not be compensated at all" under a fee-shifting scheme because they "are ordinarily part of a law office's overhead" costs. *Two Men & A Truck*, 128 F. Supp. 3d at 929. Accordingly, I recommend excluding $680.00 from the overall fee award to account for the 5.8 total hours that Mr. Barkai (0.8 x $225 = $180.00) and the firm's three paralegals (5.0 x $100 = $500.00) spent on purely clerical tasks.

11

### b.     *Unreasonably Vague Entries – "Attention to" Tasks*

Plaintiffs may recover their reasonable fees for legal tasks that are traditionally performed by an attorney and for which the attorney would customarily charge a client. *Two Men & A Truck*, 128 F. Supp. 3d at 929. Such tasks include conducting factual or appropriate legal research, drafting or editing briefs, discussing legal strategy with co-counsel, reviewing discovery, and checking legal citations. *See, e.g.*, *id.* (cite checking, reviewing discovery); *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 526 (E.D. Va. 2017) (research, drafting, and editing); *Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 401 (E.D. Va. 2015) (appropriate strategic discussions); *Certain v. Potter*, 330 F. Supp. 2d 576, 582–83 (M.D.N.C. 2004) (appropriate legal research). Thus, Plaintiffs' billing records must "provide some guidance in identifying" the time spent on compensable tasks. *Denton*, 252 F. Supp. 3d at 523 (quoting *Buffington v. Balt. Cnty.*, 913 F.2d 113, 128 (4th Cir. 1990)). Vague descriptions are inadequate when the court cannot determine whether the time claimed is reasonable. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 675 (E.D. Va. 2015). Here, Plaintiffs' Second Fee Petition claims 4.4 hours that Ms. Phillips and Mr. Barkai spent giving "[a]ttention to" Ray's upcoming depositions and show cause hearing. Phillips Sept. 13 Decl. Ex. A (Barkai entries of Aug. 17, Aug. 27, and Sept. 6; Phillips entries of Aug. 24 and Aug. 26–27). As I explained in my prior Memorandum Opinion, these "Attention to" entries are unreasonably vague because they "'provide no insight as to the particular tasks performed'" and do not "'indicate the specific reasons for such time spent.'" Mem. Op. of May 26, 2020, at 18 (quoting *Stultz v. Virginia*, No. 7:13cv589, 2019 WL 4741315, at *6 (W.D. Va. Aug. 15, 2019)). Moreover, Plaintiffs do not explain why these two attorneys billed time "giving 'attention to' this work on top" of the numerous hours that they and their colleagues already billed for discussing legal strategy,

12

conducting research, drafting and reviewing briefs, and preparing for the depositions and hearing, *id.* at 18–19. *See generally* Phillips Sept. 13 Decl. Ex. A.

An order requiring one party to pay another's litigation expenses, including attorney's fees, extends only to such reasonable expenses as were caused by the responsible party's failure or misconduct. *See, e.g.*, Fed. R. Civ. P. 37(d)(3) (authorizing award of "reasonable" attorney's fees "caused by the failure" to attend a properly noticed deposition); *Six*, 891 F.3d at 521 (affirming district court order that "tailored the amount of sanctions to compensate only for costs by wrongful conduct"). "Without more information about how Plaintiffs' legal team . . . gave 'attention to'" Ray's failures, Mem. Op. of May 26, 2020, at 19, "it is nearly 'impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the total amount of time expended' thereon," *id.* (quoting *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (cleaned up)). *See Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 814–15 (E.D. Va. 2008) (excluding entries that did "not adequately describe the work performed or the effort involved," and therefore provided "no basis on which" the court could "identify whether such time entries [were] 'reasonable'"); *cf. Stultz*, 2019 WL 4741315, at *6 ("The vague and confusing descriptions weigh in favor of reducing the fee request because the Court cannot determine what the attorneys were billing for."). Accordingly, I recommend excluding 4.4 hours for time that Mr. Barkai and Ms. Phillips spent giving "attention to" Ray's failure to attend his July 29 and September 14 depositions, as well as the subsequent civil contempt hearing. *See* Mem. Op. of May 26, 2020, at 19–20; Oral Order of Sept. 3, 2021 ("The propriety and reasonableness of any specific requested sums shall be determined upon consideration of Plaintiffs' petition.").

        c.     *Other* Johnson *Factors*

13

The above analysis considers the time and labor expended having to deal with Ray's pertinent failures, including his failure to attend the contempt hearing (first *Johnson* factor); the skill required to properly perform the legal services rendered (third factor); the customary fees for like work (fifth factor); and the experience, reputation, and ability of the attorneys and paralegals seeking reimbursement (ninth factor). Additionally, although the issues related to Ray's failures "were not particularly novel, they also were not routine." Mem. Op. of May 26, 2020, at 20 (quoting *Victor Stanley*, 2019 WL 3841932, at *4). Ray "flaunted [his] discovery obligations under the Federal Rules," *Victor Stanley*, 2019 WL 3841932, at *4, and forced Plaintiffs to "expend[] considerable effort and resources" trying to obtain discovery to which they were clearly entitled, *see* Mem. Op. of May 26, 2020, at 21; Ray Civil Contempt Order 2–5. Accordingly, the second *Johnson* factor (novelty and complexity) supports a finding that "Plaintiffs' attorneys did not spend an unreasonable or excessive number of hours" on compensable tasks even though the underlying issues were straightforward and uncontested. *See* Mem. Op. of May 26, 2020, at 21 (finding the same).

    3.    *Adjusted Lodestar Figure*

Plaintiffs bear the burden of documenting the appropriate hourly rates for their attorneys and support staff and the number of hours expended considering the facts and circumstances of this case. While Plaintiffs' counsel excluded from their fee requests some hours that were excessive, redundant, or otherwise unnecessary, their billing records do not fully justify the 82.9 total hours and $23,935.00 in fees originally claimed—despite achieving excellent results for their clients. *See* Mem. Op. of May 26, 2020, at 22 (finding the same). Rather, after modestly reducing the attorneys' hourly rates and excluding **10.2** hours billed for purely clerical tasks and

14

for time spent giving "attention to" the matters, the Court finds that Plaintiffs' legal team reasonably expended **72.7** hours overall and that **$18,567.50** is a reasonable fee for their work.

B.     *Deposition Expenses*

Rule 37(d) requires a party who fails to attend his properly noticed deposition to "pay the reasonable expenses . . . caused by the failure," Fed. R. Civ. 37(d)(3), including fees owed to court reporters or videographers who would have provided necessary services for the deposition, *Power Home Solar, LLC v. Sigora Solar*, 339 F.R.D. 64, 69 (W.D. Va. 2021), if those expenses "would normally be charged to a fee-paying client," Mem. Op. of May 26, 2020, at 22 (citing *Spell*, 852 F.2d at 771). Plaintiffs' Second Fee Petition lists $2,025.75 in costs payable to TSG Reporting for court reporting, transcript services, and videography services for Ray's depositions on July 29, 2020 and September 14, 2020. *See* Phillips Sept. 13 Decl. Ex. A, at 3. Plaintiffs did not produce any invoices or receipts from TSG Reporting. Phillips Sept. 13 Decl. ¶ 13 ("The invoiced amounts, which were paid in full, are also reflected in Exhibit A."). "[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation," *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995), and that courts should not rely on the movant's "'unverified [c]hart' to determine whether [such] expenses should be reimbursed under Rule 37," Mem. Op. of May 26, 2020, at 23 (quoting *Haught v. Louis Berkman, LLC*, No. 5:03cv109, 2006 WL 344917, at *4 (N.D. W. Va. Feb. 13, 2006)). *Cf. Trimper*, 58 F.2d at 77 (district court properly denied reimbursement request where movant's "only record of the[] expenses . . . was an unverified 'Chart of Expenses,' with no receipts or bills attached"). Accordingly, Plaintiffs' request for $2,025.75 in deposition-related expenses should be denied. Mem. Op. of May 26, 2020, at 22–23 (denying request for travel expenses in part because Plaintiffs did not produce receipts necessary to verify amount sought) (citing *Haught*, 2006 WL 344917, at *4).

C.    *Rule 37's Safe Harbors*

Having determined that an award of **$18,567.50** reflects Plaintiffs' reasonable expenses caused by Ray's pertinent discovery failures, I must order him to pay this amount "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C), (d)(3). The court has "broad discretion to determine" whether either provision applies in a specific case. *Cf. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (explaining that the district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless" under Rule 37(c)(1), and that the imposition of sanctions "should be guided by . . . factors" including the evidence's importance and "the nondisclosing party's explanation for its failure"). Ray did not respond to either fee petition and therefore "gave up his chance to mitigate . . . the bill," Mem. Op. of May 26, 2020, at 25. Moreover, Ray's discovery failures were "not only totally unjustified, but did not represent [his] first failure . . . to discharge [his] obligations as a party in this case," *Bosworth v. Record Data of Md.*, 102 F.R.D. 518, 521 (D. Md. 1984). *See, e.g.*, Order of May 18, 2020, at 2–3 (discussing Ray's prior discovery failures); Ray Civil Contempt Order 2–5 (discussing Ray's discovery failures between June and September 2020). Thus, "there is no reason not to impose, and every reason to impose, the sanctions" sought in Plaintiffs' Rule 37 fee petitions. *Bosworth*, 102 F.R.D. at 521 (finding "every reason" to make plaintiff pay attorney's fees under Rule 37, and "no reason not to" impose monetary sanctions, where plaintiff's "totally unjustified" failure to attend her deposition was just the latest example of her "repeated[]" failures to comply with discovery).

IV. Conclusion

For the foregoing reasons, I recommend that Plaintiffs are entitled to recover **$3,027.50** in reasonable attorney's fees caused by Ray's failure to obey my May 18, 2020 discovery order, Fed. R. Civ. P. 37(b)(2)(C), and **$15,540.00** in reasonable attorney's fees caused by Ray's failure to attend his properly noticed depositions on July 29, 2020, and September 14, 2020, Fed. R. Civ. P. 37(d)(3), as well as the civil contempt hearing on September 14, 2020, in violation of the presiding District Judge's Show Cause Order, ECF No. 848. Plaintiffs are not entitled to out-of-pocket expenses related to the depositions. Ray should be ordered to pay the total amount of **$18,567.50** in addition to any other fees or fines imposed against him in this action.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk of Court shall send a certified copy of this Report & Recommendation to all counsel and pro se parties at their addresses of record.

ENTERED: December 1, 2021

Joel C. Hoppe
United States Magistrate Judge