## IN THE UNITED STAES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **ELIZABETH SINES ET AL.** | Case No. 3:17-CV-00072 |
| Plaintiffs, | (Judge MOON) |
| | (Magistrate Judge HOPPE) |
| v. | |
| **JASON KESSLER ET AL.** | **DEFENDANTS' POST TRIAL MOTIONS** |
| Defendants. | |

Defendants Jason Kessler, Nathan Damigo, and Identity Evropa ("moving Defendants") file the following post-trial motions pursuant to Civil Rules 50(B), 54, and 59, and the Scheduling Order at docket entry 1496.

### I. Conspiracy Claims

In order to succeed on their federal conspiracy claims plaintiffs were required to prove a defendant "entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events." Sines v. Kessler, 324 F. Supp 3d 765, 783. Further, the plaintiffs were required to prove specifically what persons agreed to the alleged conspiracy, the specific communications amongst the conspirators, and the manner in which any such communications were made. Id. at 784 citing A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 347. (4th Cir. 2011).

As to plaintiffs' state law civil conspiracy claim, Virginia law holds that "there can be no conspiracy to do an act that the law allows….. actions for …..civil conspiracy [will] lie

1

only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." Dunlap v. Cottman Transmission Sys., LLC, 287 Va. 207, 215 (2014.)

Both state and federal conspiracies require that the damages sustained have been legally "foreseeable" to the defendant. "The proximate cause of an event is that act or omission, in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event could not have occurred," Brin v. A Home Come True, Inc., 79 Va. Cir. 33, 35 (2009). "A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Sines v. Kessler, 324 F. Supp. 3d 765, 795 (W.D. Va. 2018). See also Docket entry 1461 at p.29, Final Jury Instruction 19.

An organization is not legally responsible for the actions of its agents, officers, or employees if those persons were acting outside the course and scope of the permissions to act the organization had given them. Colgate v. Disthene Group, Inc., 86 Va. Cir. 218, 223 (2013). A corporate officer is "outside the scope" where he has an independent or personal stake in the conspiracy. Buffalo Wings Factory, Inc. v. Mohd, 622 F. Supp. 2d 325, 335 (2007); See also Docket entry 1461 at p. 35 Final Jury Instruction 21-A.

Additionally, the Court has already found several activities the moving defendants may have engaged in to be lawful. "[A]bstract advocacy of lawlessness is protected speech under the First Amendment."); "[M]ere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment." Sines v. Kessler, 324 F. Supp. 3d 765, 802 (W.D. Va. 2018). [T]he constitutional guarantees of free speech and free press do

2

not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Id. at 803.

Indeed, the Court has already observed that it was the combination of the August 11th torchlight march *combined with* the violence around the statue that took the torchlight march outside the protection of the First Amendment. Sines, 324 F. Supp. at 801. Therefore, the torchlight march itself was lawful and non-actionable.

The plaintiffs' were required to "present specific facts that would allow a jury to reach a verdict that is based on more than mere speculation." Mettle v. CSX Transp. Inc., 2006 U.S. Dist. LEXIS 95611(Maryland District Court May 18, 2006).

Pursuant to Fed. R. Civ. P. 50(b), a district court may grant judgment notwithstanding the verdict if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. Cline v. Wal-Mart Stores, 144 F.3d 294, 298 (4th Cir. 1998).

Plaintiffs' have failed to prove a conspiracy

*Nathan Damigo*

Plaintiffs evidence, as to unlawfully conspiring, against Nathan Damigo appears to consist of the following:

1. That he was friends with Richard Spencer and Spencer's friends and associates.[1]
2. That Mr. Damigo had weekly calls with Richard Spencer's friends and associates.[2]
3. That Mr. Damigo was present at Alt Right parties where planning for Unite the Right was discussed.[3]

---

[1] Trial Transcript Day 4 p.100.
[2] Trial Transcript Day 9 p.100.
[3] Trial Transcript Day 9 p.109.

3

4. That Mr. Damigo asked for fake Antifa accounts to be set up. (Day 13 PX 0880.)

5. That Mr. Damigo admitted that he and/or Identity Evropa were "working with other Alt Right groups as to August 11th and 12th. (Trial day 13 at p.176.)

6. Videotape depositions, primarily those of Elliot Kline and Samantha Froelich.

7. Other substantially similar evidence.

The above does not provide evidence that would allow the jury to find either unlawful agreement or foreseeability of any acts that injured any plaintiff. First, there is no evidence of what the contents of any communications Mr. Damigo was proven to have was. Where evidence of contents was proven, it was innocuous such as "working with other Alt Right groups." Second, the video depositions and other exhibits do not implicate Damigo in anything more than having what the law considers "racial animus" as well as being acquainted with other Alt Right personalities.

Indeed, witness Samantha Froelich admitted, during the portion of her video deposition played on Trial day 17, that she never heard any plans calling for IE members to engage in any unlawful violence at Unite the Right. Her previous video testimony had established she was in a position, due to her relationships with Elliott Kline and Richard Spencer, to have been aware of those plans if they existed.

Accordingly, Mr. Damigo is entitled to a directed verdict in his favor as to all conspiracy claims.

*Identity Evropa*

Plaintiffs' claims of conspiracy against Identity Evropa ("IE")appear to depend entirely on the activities of defendant Elliott Kline. Yet, the law does not allow for

4

liability if Mr. Kline was acting "outside the scope" of what IE authorized him to do or had his own personal stake in the conspiracy.

The plaintiffs' provided no evidence that IE ever authorized Mr. Kline to enter into an unlawful conspiracy. Moreover, Mr. Kline, but not IE or Mr. Damigo, was the subject of evidentiary sanctions and an adverse inference jury instruction. Lastly, unrefuted evidence in the case establishes that Mr. Kline was actually working, for his own purposes, with or for defendant Richard Spencer and not acting in the interests of IE. [4]

Accordingly, there is no evidence from which a jury could properly find IE liable for conspiracy.

*Jason Kessler*

Jason Kessler was, admittedly, a major organizer of the Unite the Right event and was physically present at relevant locations on August 11th and 12th 2017. Plaintiffs' case against Mr. Kessler appears to be centered on a series of exhibits Mr. Kessler was shown during his testimony. Specifically Mr. Kessler was shown exhibits regarding such rhetoric as "cracking skulls" and "Battle of Charlottesville."

But mere rhetoric is constitutionally protected if it does not amount to unlawful agreement or foreseeability. The evidence at trial showed that Mr. Kessler limited his plans for physical altercation to legitimate self defense. He was careful to include warnings that Antifa must start any fights or there could be no Battle of Charlottesville though he was confident Antifa could be relied on to give the Alt Right a legal reason to fight them. [5]

---

[4] See Trial day 9 pgs. 193-206 wherein defendant Spencer admits that E. Kline did in fact work for Spencer at least as a bodyguard; and trial day 17, p. 95 where Spencer admits that Kline "kissed my butt" and talked to Spencer "all the time". See also trial day 13 at p. 192-193.
[5] Trial Day 16 at pgs. 54, 86-87.

The plaintiffs' reliance on over the top Alt Right rhetoric falls short of proving an unlawful agreement or foreseeability as to any act that damaged any plaintiff. Accordingly, Mr. Kessler is entitled to a directed verdict as to all conspiracy claims.

## II. Punitive Damages

"If a punitive damages award is unconstitutionally excessive, it is [the court's] obligation to order a remittitur or award a new trial." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008). Defendant must have "fair notice" of the possible amount of punitves. Butler v. Windsor 143 F. Supp. 3d 332. Punitives in an amount more than 4 times the compensatory damages is near the line of violating the Constitution, though there is no bright line rule mathematical rule as to punitives. State Farm Mutual v. Campbell 538 U.S. 408, 425.

Virginia law holds that "Because punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct. Willful and wanton negligence is the basis for the plaintiffs' claim for punitive damages against all three defendants. We recently defined willful and wanton negligence as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Griffin* v. *Shively*, 227 Va. 317, 321-22, 315 S.E.2d 210, 213 (1984).

We have decided a limited number of cases involving "willful and wanton" negligence. In *Griffin*, we found the evidence sufficient to create a jury issue of willful and wanton negligence where the defendant fired a gun in close proximity to a number of people in a relatively small room. 227 Va. at 322, 315 S.E.2d at 213. In *Friedman* v. *Jordan*, 166 Va.

6

65, 68, 184 S.E. 186, 187 (1936), we said chasing a bicyclist with a car and running over him involved "willful or wanton" negligence. We indicated that driving a vehicle on the wrong side of a street in the face of approaching traffic might constitute wanton negligence in *Thomas* v. *Snow*, 162 Va. 654, 664, 174 S.E. 837, 839 (1934).

On the other hand, we have held no jury issue of willful or wanton negligence was created merely because an employer failed to ascertain that a prospective employee lacked the proper chauffeur's license to operate a non-owned truck. *Wallen* v. *Allen*, 231 Va. 289, 297, 343 S.E.2d 73, 78 (1986). No such issue was raised because of a rear-end collision caused by a defendant's failure to keep a proper lookout, [***58] even though that failure may have been caused in part by her consumption of alcohol. *Baker* v. *Marcus*, 201 Va. 905, 910, 114 S.E.2d 617, 621 (1960). Looking away from the road and down at the gearshift while driving a heavy truck at a speed of 35 to 40 miles an hour while approaching a curve did not present a jury question of willful or wanton negligence in *Boward* v. *Leftwich*, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955). We pointed out in *Morris* v. *Dame*, 161 Va. 545, 569-70, 171 S.E. 662, 670-71 (1933), that a violation of the reckless driving statute did not, of itself, establish willful or wanton negligence. We sustained a trial court in striking a claim of punitive damages arising out of an automobile manufacturer's negligent design of a parking gear and negligent failure to correct the defect or warn others of it in *Ford Motor Co.* v. *Bartholomew*, 224 Va. 421, 436-37, 297 S.E.2d 675, 683-84 (1982)."
Philip Morris, Inc. v. Emerson, 235 Va. 380, 407-08, 368 S.E.2d 268, 283 (1988).

Punitive damages must bear some reasonable relationship to the compensatory amount awarded. Id.

Virginia code 8.01-38.1 limits punitive damages to $350,000. Moreover, it appears

7

that the Supreme Court has not, since *State Farm,* approved an award of punitive damages greater than 526 to 1. See TXO v. Alliance Resources 509 U.S. 443 (1993.) Defendants were unable to locate a Virginia case approving punitive damages in a greater ratio than 53 to 1.

Defendants did locate a 9th Circuit employment law case that approved a ratio of 125,000 to 1 however that was in an employment law case.

Moreover, Virginia law requires more than zero compensatory (that is at least nominal damages) to even award any punitive damages. Zedd v. Jenkins, 194 Va. 704 Supreme Court March 9, 1953. However, the same Virginia case seems to mandate a new trial if the punitive award must be reduced below the statutory maximum.

As such, the Court must reduce the punitives awarded to plaintiffs Wispelwey and Sines to zero and order a new trial. The Court should further reduce the awards to all other plaintiffs to no more than 526 to 1.

### III. Fourth Claim, August 11th Torch March

The plaintiffs' fourth claim was a stand alone, non-conspiracy claim in favor of plaintiffs Willis and Romero only regarding injuries sustained at the torch march. The jury found in their favor and against, *inter alia*, moving Defendant Jason Kessler. The jury could not properly have done so as to Kessler however, as the only evidence of Mr. Kessler's activities on at the torch march established him engaging in First Amendment protected expressive activity.

Specifically, neither Willis or Romero claims to have seen or heard Mr. Kessler at the torch march. In addition, though defendant Cantwell showed video of the incident multiple times to both plaintiffs Willis and Romero, Mr. Kessler does not appear anywhere in those

8

videos. There is no evidence Mr. Kessler ever referred to torches or lighter fluid as "self defense weapons".

Thus, as the Court has already found the torch march itself, without the violence at the rotunda, to be lawful activity, and since Mr. Kessler had nothing to do with the violence at the Rotunda, and since this fourth claim is not a conspiracy claim, then there is no evidence at all that would allow the jury to find against Mr. Kessler as to the torch march claim.

Accordingly, Mr. Kessler is entitled to a directed verdict as to the plaintiffs' fourth claim regarding the torch march injuries to plaintiffs Willis and Romero.

### IV. No Ratification by Kessler

The plaintiffs claim that Mr. Kessler's tweet regarding the death of Heather Heyer constitutes ratification of that act. However, there is no evidence that Mr. Kessler belonged to any group whose actions Mr. Kessler could ratify. As such, it is legally impossible for the jury to find against Mr. Kessler on the basis of ratification. NAACP v. Claiborne Hardware 458 US 886, 887 (1982).

In conclusion, moving defendants are entitled to a directed verdict and/or a remittitur of punitive damages and/or a new trial as stated above.

Respectfully Submitted,

s/James E. Kolenich
James E. Kolenich
KOLENICH LAW OFFICE
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
(513) 444-2150
JEK318@gmail.com

s/Elmer Woodard
Elmer Woodard

5661 US Hwy 29<br>
Blairs, VA 24527<br>
isuecrooks@comcast.net

*Trial Attorneys for Jason Kessler, Nathan Damigo, and Identity Evropa*

## **CERTIFICATE OF SERVICE**

I certify the above was served on JANUARY 7, 2021 on all ECF participants and that parties requiring service by other means were served as follows:

Robert Ray
*azzmador@gmail.com*
Vanguard America c/o Dillon Hopper
*dillon_hopper@protonmail.com*
Elliott Kline *eli.f.mosley@gmail.com*
*deplorabletruth@gmail.com* Matthew Heimbach
*matthew.w.heimbach@gmail.com*
Richardspencer@gmail.com
 Christopher Cantwell
*#00991-509*
*USP Marion*
*4500 Prison Rd.*
*PO Box 2000*
*Marion IL 62959*

Respectfully Submitted,

s/   James E. Kolenich