**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUÑIZ,
MARCUS MARTIN, NATALIE ROMERO,
CHELSEA ALVARADO, JOHN DOE, and
THOMAS BAKER,

       Plaintiffs,

  v.

JASON KESSLER, RICHARD SPENCER,
CHRISTOPHER CANTWELL, JAMES
ALEX FIELDS, JR., VANGUARD
AMERICA, ANDREW ANGLIN,
MOONBASE HOLDINGS, LLC, ROBERT
"AZZMADOR" RAY, NATHAN DAMIGO,
ELLIOTT KLINE a/k/a/ ELI MOSLEY,
IDENTITY EVROPA, MATTHEW
HEIMBACH, MATTHEW PARROTT a/k/a
DAVID MATTHEW PARROTT,
TRADITIONALIST WORKER PARTY,
MICHAEL HILL, MICHAEL TUBBS,
LEAGUE OF THE SOUTH, JEFF SCHOEP,
NATIONAL SOCIALIST MOVEMENT,
NATIONALIST FRONT, AUGUSTUS SOL
INVICTUS, FRATERNAL ORDER OF THE
ALT-KNIGHTS, MICHAEL "ENOCH"
PEINOVICH, LOYAL WHITE KNIGHTS
OF THE KU KLUX KLAN, and EAST
COAST KNIGHTS OF THE KU KLUX
KLAN a/k/a EAST COAST KNIGHTS OF
THE TRUE INVISIBLE EMPIRE,

       Defendants.

Civil Action No. 3:17-cv-00072-NKM

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    A.    Plaintiffs Had the Courage to Step Forward to Pursue This Case ......................... 2

    B.    From the Very Beginning, Defendants' Recalcitrance Required Plaintiffs to Expend Inordinate Time and Resources ............................................................ 2

    C.    Plaintiffs Successfully Opposed Numerous Motions to Dismiss the Complaint.............................................................................................................. 3

    D.    Plaintiffs Spent Close to Four Years in Pursuit of Discovery ............................... 4

        1.    Defendants Refused to Timely and Meaningfully Respond to Plaintiffs' Discovery Requests................................................................... 4

        2.    Despite Defendants' Continued Misconduct, Plaintiffs Managed to Obtain Discovery .................................................................................. 6

        3.    Plaintiffs Succeeded in Having Meaningful Discovery Sanctions Imposed.................................................................................................. 7

        4.    Plaintiffs Were Forced to Seek Discovery from Numerous Third Parties..................................................................................................... 9

    E.    Plaintiffs Prevailed Following a Four-Week Jury Trial....................................... 10

    F.    Plaintiffs' Approach to This Motion.................................................................... 11

REQUEST FOR FEES AND COSTS ........................................................................ 12

ARGUMENT ............................................................................................................ 13

I.    Plaintiffs' Requested Fees Are Reasonable and Should Be Awarded ........................... 14

    A.    Legal Standard .................................................................................................... 14

    B.    Plaintiffs' Requested Hourly Rates Have Previously Been Approved by the Court and Are Reasonable .......................................................................... 16

    C.    Plaintiffs' Fee Request Is Based on a Reasonable Number of Hours................... 16

        1.    Effort Expended on All Interrelated Claims (*Johnson* Factor 1).............. 16

2.      Novelty and Difficulty of the Case (*Johnson* Factor 2) ........................... 18

3.      Opportunity Costs, Time Limitations Imposed by the
        Circumstances, and Undesirability of the Case (*Johnson* Factors 4,
        7 & 10) .................................................................................................. 20

4.      Successful Outcome (*Johnson* Factor 8) .................................................. 21

5.      Fee Awards in Other Cases (*Johnson* Factor 12) ..................................... 21

D.      The Lodestar Amount Is Reasonable and There Is No Basis for
        Adjustment ......................................................................................................... 22

E.      Plaintiffs Should Be Awarded Fees for Their Time Preparing This Motion ........ 23

II.     An Award of Costs Is Warranted ..................................................................................... 23

A.      As the Prevailing Party, Plaintiffs Enjoy a Presumption in Favor of an
        Award of Costs ................................................................................................... 23

B.      Plaintiffs Should Be Reimbursed for the Costs of the Court-Approved,
        Third-Party Discovery Vendor ........................................................................... 25

CONCLUSION ................................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) ................................................................................. 24

*Ashmore v. Allied Energy, Inc.*,
   2016 WL 301169 (D.S.C. 2016) ............................................................. 25

*Barber v. Kimbrell's, Inc.*,
   577 F. 2d 216 (4th Cir. 1978) ................................................................ 15

*Brandon v. Guilford Cnty. Bd. of Elections*,
   921 F.3d 194 (4th Cir. 2019) ................................................................. 13

*Brat v. Personhuballah*,
   883 F.3d 475 (4th Cir. 2018) ................................................................. 14

*Broccoli v. Echostar Commc'ns Corp.*,
   229 F.R.D. 506 (D. Md. 2005) ............................................................... 24

*C.P.X. v. Garcia*,
   2021 WL 302754 (S.D. Iowa 2021) ....................................................... 21

*C.P.X. v. Garcia*,
   2021 WL 5917780 (8th Cir. 2021) ......................................................... 22

*Cab Siquic v. Star Forestry, LLC*,
   2016 WL 1650800 (W.D. Va. 2016) ...................................................... 16

*Campbell v. Barnes*,
   No. 30-2020-01141117 (Cal. Super. Ct. 2022) ...................................... 22

*Certain v. Potter*,
   330 F. Supp. 2d 576 (M.D.N.C. 2004) ................................................... 23

*Christiansburg Garment Co. v. E.E.O.C.*,
   434 U.S. 412 (1978) ............................................................................... 13

*Clark v. Milam*,
   891 F. Supp. 268 (S.D. W. Va. 1995) ................................................... 24

*Couch v. Manassas Autocars, Inc.*,
   77 Va. Cir. 30 (2008) ............................................................................ 21

iii

*Courthouse News Serv. v. Schaefer*,
  484 F. Supp. 3d 273 (E.D. Va. 2020) ........................................................................ 23

*Est. of Ward v. Trans Union Corp.*,
  2009 WL 10705140 (E.D.N.C. 2009) ......................................................................... 24

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ................................................................................................... 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................. 14, 17, 21, 23

*Herold v. Hajoca Corp.*,
  682 F. Supp. 297 (W.D. Va. 1988) ............................................................................ 20

*Indep. Fed'n of Flight Attendants v. Zipes*,
  491 U.S. 754 (1989) ................................................................................................... 14

*Irwin Indus. Tool Co. v. Worthington Cylinders Wisc., LLC*,
  747 F. Supp. 2d 568 (W.D.N.C. 2010) ...................................................................... 20

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................................... 15, 21

*Johnson v. Hugo's Skateway*,
  974 F.2d 1408 (4th Cir. 1992) ................................................................................... 23

*Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge, Par.*,
  327 F. App'x 472 (5th Cir. 2009) .............................................................................. 19

*Knussman v. Maryland*,
  73 F. App'x 608 (4th Cir. 2003) .......................................................................... 14, 23

*Lambert v. Sea Oats Condo. Ass'n, Inc.*,
  798 S.E.2d 177 (Va. 2017) ......................................................................................... 14

*Little v. Va. Ret. Sys.*,
  1992 WL 885023 (Va. Cir. Ct. 1992) ........................................................................ 17

*Maglaya v. Kumiga*,
  2015 WL 4624884 (N.D. Ill. 2015) ........................................................................... 19

*McAfee v. Boczar*,
  738 F.3d 81 (4th Cir. 2013) .................................................................... 14, 15, 21, 22

iv

*McKnight v. Cir. City Stores, Inc.*,
  14 F. App'x 147 (4th Cir. 2001) ......................................................... 17

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010) .......................................................................... 22

*Prison Legal News v. Stolle*,
  129 F. Supp. 3d 390 (E.D. Va. 2015) ................................................. 17

*Robinson v. Equifax Info. Servs., LLC*,
  560 F.3d 235 (4th Cir. 2009) ............................................................. 14

*Saleh v. Moore*,
  95 F. Supp. 2d 555 (E.D. Va. 2000) ............................................. 19, 20

*Salim v. Dahlberg*,
  2016 WL 2930943 (E.D. Va. 2016) ............................................. passim

*Schlegel v. Bank of Am., N.A.*,
  628 S.E.2d 362 (Va. 2006) ............................................... 14, 15, 16, 21

*St. John v. Thompson*,
  854 S.E.2d 648 (Va. 2021) ................................................................. 17

*Taylor v. Republic Servs., Inc.*,
  2014 WL 325169 (E.D. Va. 2014) .................................................. 15, 23

*TBC, Inc. v. DEI Sales, Inc.*,
  2017 WL 4151261 (D. Md. 2017) ....................................................... 25

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
  219 F.R.D. 93 (D. Md. 2003) ............................................................. 25

*Trans-Radial Sols., LLC v. Burlington Med., LLC*,
  2019 WL 6107858 (E.D. Va. 2019) .................................................... 20

*Univ. Support Servs., Inc. v. Galvin*,
  1996 WL 1065541 (Va. Cir. Ct. 1996) ............................................... 23

*Veasey v. Abbott*,
  13 F.4th 362 (5th Cir. 2021) .............................................................. 22

*Veasey v. Abbott*,
  2020 WL 9888360 (S.D. Tex. 2020) ................................................... 22

*W. Insulation, LP v. Moore*,
   362 F. App'x 375 (4th Cir. 2010) .................................................................. 15

*Wilkins v. Peninsula Motor Cars, Inc.*,
   587 S.E.2d 581 (Va. 2003) ........................................................................ 13

*Wolfe v. Green*,
   2010 WL 3809857 (S.D. W. Va. 2010) ...................................................... 19

*Xiao-Yue Gu v. Hughes STX Corp.*,
   127 F. Supp. 2d 751 (D. Md. 2001) ........................................................... 20

*Zubulake v. UBS Warburg LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003) ............................................................... 25

**Statutes**

28 U.S.C. § 1920 .................................................................................... 13, 24

42 U.S.C. § 1985(3) ................................................................................. 18, 19

Va. Code Ann. § 8.01-42.1 ...................................................................... passim

**Rules**

Federal Rule of Civil Procedure 54(d) ......................................................... 23, 24

**Other Authorities**

LeRoy, Michael H. *Targeting White Supremacy in the Workplace*,
   29 Stan. L. & Pol'y Rev. 107 (2018) ........................................................... 19

## PRELIMINARY STATEMENT

Attorneys' fee provisions, like the one at issue here in Section 8.01-42.1(B) of the Virginia Code, which provides a private right of action for acts of violence motivated by racial or religious animosity, are designed for the purpose of encouraging enforcement of the statute by private actors. That, of course, is exactly what Plaintiffs and their counsel have done here.

When Plaintiffs filed this lawsuit back in October 2017, they had no way of knowing that it would take them more than four years to obtain a verdict against 17 Defendants who conspired to bring about racially and religiously motivated violence in Charlottesville, Virginia, on August 11 and 12, 2017. Neither Plaintiffs nor their counsel could have predicted the utter disregard for this Court and the legal process demonstrated by Defendants—a disregard that would stymie discovery and protract this litigation to such an extent that the Court has already granted, at least in part, 12 separate motions for sanctions based on Defendants' abuse of the discovery process. Nor did Plaintiffs envision the lengths to which Defendants would go, including incarceration for civil contempt, to avoid fulfilling their most basic discovery obligations in this case.

Nevertheless, Plaintiffs persevered, with their counsel expending time and resources that would have been wholly unnecessary were it not for Defendants' never-ending recalcitrance, not to mention being the object of threats and insults to which few parties or counsel would voluntarily subject themselves. In light of these circumstances, it is not surprising that in these past four years, no other lawsuit—civil or criminal—challenging the illegal conspiracy that was at the core of Unite the Right has been litigated on the merits and decided by a jury.

Indeed, the circumstances present here are exactly those for which attorneys' fee provisions were designed. Enforcing the Virginia hate-crime statute's fee-shifting provision in this case, intended by the legislature to act as a deterrent, would not only signal to future bad actors that they should think twice before engaging in similar violent misconduct motivated by racial and religious

animus, but would signal to future victims of such illegal conduct that the risk of vindicating their rights under the statute is one worth taking.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs Had the Courage to Step Forward to Pursue This Case

The negative impacts of the events that took place in Charlottesville, Virginia, on August 11 and 12, 2017, continue to resonate today, more than four years later. Many individuals, like Plaintiffs, are still suffering from the physical and emotional injuries they sustained during those two days in Charlottesville. *See, e.g.*, ECF 1378 at 63:15–20, 69:13–14; ECF 1382 at 17:6–17, 109:17–23; ECF 1401 at 220, 223:20–224:2, 225:5–8; ECF 1419 at 25–26, 30:1–5; ECF 1428 at 72:4–76:7. But the repercussions from the hate-driven conspiracy that was Unite the Right have an even broader reach which should not be understated.  It is surely no coincidence that many who participated in Unite the Right also participated in the January 6, 2021 Capitol insurrection. *See, e.g.*, Tess Owen, *White Nationalists Who Marched in Charlottesville Hit with Jan. 6 Subpoenas*, Vice News (Jan. 20, 2022), https://tinyurl.com/47a3r3he; Michael Kunzelman, *'Baked Alaska,' far-right troll charged in Capitol riots, avoids house arrest*, Associated Press (June 6, 2021), https://tinyurl.com/mwc5uwy8.

Yet to this day, more than four years after Unite the Right, Plaintiffs are still the first and only ones to have taken on the burden—including the time and resources, not to mention the threats from Defendants, *see infra* at p. 21—of legally challenging this civil conspiracy to commit racially and religiously motivated harassment and violence on the merits, and of convincing a jury to hold accountable those responsible for organizing and carrying out the violence at Unite the Right.

### B.    From the Very Beginning, Defendants' Recalcitrance Required Plaintiffs to Expend Inordinate Time and Resources

Defendants' disregard for the law, the rules, and the orders of this Court made this litigation

inordinately and unnecessarily difficult, time-consuming, and resource-intensive from the start. After Plaintiffs filed their Complaint on October 11, 2017,[1] it literally took months just to serve all 25 Defendants. *See, e.g.*, ECF 215 (Fraternal Order of the Alt-Knights ("FOAK") first served on 12/21/2017); ECF 239 (Loyal White Knights of the KKK ("LWK") first served on 2/1/2018). Unable to personally serve some Defendants after numerous attempts, Plaintiffs had no choice but to resort to service via the Secretary of the Commonwealth. *See, e.g.*, ECF 198, 217, 219.

Yet even after the significant effort that went into properly serving the Complaint on every one of the 25 Defendants, many of them failed to respond. *See* ECF 268–71. Yet others attempted (improperly) to proceed *pro se* despite their entity status. *See* ECF 155, 275. As a result, early in the case, Plaintiffs obtained defaults against six Defendants. *See* ECF 210, 268–71, 280.[2]

## C.      Plaintiffs Successfully Opposed Numerous Motions to Dismiss the Complaint

Defendants filed 12 separate motions to dismiss the complaint. *See* ECF 93, 99, 104, 111, 113, 115, 117, 136, 138–39, 141, 143. After Plaintiffs filed an amended complaint, Defendants filed another six motions to dismiss. *See* ECF 201–02, 205, 207, 209, 212. All told, there were over 260 pages of briefing in connection with the motions to dismiss in this case, *see* ECF 94, 100, 105, 112, 114, 116, 118, 137, 140, 142, 144, 145, 204, 206, 209, 213, 231, 251, 253, 520–21, 664, including numerous frivolous arguments by Defendants, such as Defendants' contention that the violence at Unite the Right was somehow protected by the Second Amendment, *see* ECF 231 at 44–45; ECF 335 at 57–58.  Following oral argument, the Court largely denied Defendants' motions, dismissing only Plaintiffs' claims against Michael Peinovich and Plaintiff Hannah

---

[1] The 96-page complaint featured approximately 51 posts from the social media platform Discord and more than 20 other sources, including Twitter, Facebook, the white supremacist website the *Daily Stormer* (of which Defendant Andrew Anglin was an editor and Defendant Robert "Azzmador" Ray was a writer), and Defendant Christopher Cantwell's podcast *The Radical Agenda. See* ECF 1.

[2] Plaintiffs later obtained a default against a seventh Defendant, the Nationalist Front, which participated in early stages of the lawsuit but later abandoned the litigation, as described in Plaintiffs' Motion for Default Judgment filed concurrently with this motion. *See* ECF 967, 1136.

Pearce's claims against the moving Defendants, and narrowing the scope of the Va. Code § 8.01-42.1 claims (except those against Fields, who did not move to dismiss) to injuries from the violence at the August 11 torchlight rally. *See* ECF 335–36.

> ### D. Plaintiffs Spent Close to Four Years in Pursuit of Discovery

Defendants severely exacerbated the length and expense of this litigation by engaging in egregious discovery misconduct, forcing Plaintiffs to expend time and resources that otherwise would not have been necessary in order to pursue their claims.

> #### 1. Defendants Refused to Timely and Meaningfully Respond to Plaintiffs' Discovery Requests

Plaintiffs served their first document requests and interrogatories on Defendants on January 25, 2018. *See* ECF 539 at 12; ECF 933 at 8–9. Defendants' responses were due by February 26, 2018. *See* ECF 539 at 12; ECF 933 at 9. But Defendants failed to timely and meaningfully respond. Instead, as of mid-March 2018, Plaintiffs had not received a single document from any Defendant. *See* ECF 539 at 12; ECF 933 at 9. Various Defendants responded months after the fact without providing any legitimate explanation for their delay. *See* ECF 354 at 3 n.1. And even when Defendants did respond, their responses were deficient. *See id.* at 3–4. In fact, in the period leading up to October 2018, only five Defendants in the case (Christopher Cantwell, Nathan Damigo, Jason Kessler, Matthew Parrott, and Richard Spencer) produced any documents at all. *See id.* at 4.

At the same time, Defendants were publicly stating that they intended to destroy, or had already destroyed, evidence in the case. For example, in February 2018, Defendant Parrott posted on Facebook, "If you were involved in any altercation in Cville, and you haven't disabled your social media, you should do so." ECF 354-3 at 5. And in March 2018, he posted on the social networking website Gab, "All of the information systems [of the Traditionalist Worker Party ("TWP")] are completely air-gapped and will be destroyed within a few hours in order to guarantee

all membership information literally no longer exists anywhere." ECF 272-2 at 2. Plaintiffs were forced to expend significant time and resources tracking Defendants' efforts to evade discovery so that they could be brought to the Court's attention, in an effort to try to ensure the preservation of relevant evidence. *See* ECF 272, 354.

As a result of this behavior by Defendants, over the course of the litigation, Plaintiffs would ultimately be forced to file approximately 50 discovery motions. *See, e.g.*, ECF 272, 330, 354, 432, 457, 465, 547, 551, 565, 601, 650, 652, 671, 673–74, 689, 713, 750, 792, 794, 803, 816, 820, 859–60, 894, 898, 1003, 1011, 1266. Despite these efforts, as of October 2018, Defendants had still produced almost no documents and offered little explanation other than to baldly assert that their virtually non-existent document productions were adequate. *See* ECF 354 at 4.

Further complicating and prolonging matters was the fact that, over the course of the litigation, Defendants' attorneys filed ten separate motions to withdraw. *See* ECF 344, 357, 372, 420, 459, 530, 544, 691, 727, 1171. At the beginning of the case, for instance, Elmer Woodard and James Kolenich represented 13 Defendants. *See* ECF 131. By the end of the case, they represented only three. *See* ECF 1522 at 10. In support of their motions, Defendants' counsel explained that their clients had, among other things, failed to comply with counsel's "instructions or requests regarding discovery obligations" or "existing Court orders," ECF 460 at 1; "sent allegedly threatening internet communications directed at Ms. Kaplan, lead attorney for the Plaintiff's," ECF 531 at 2; and "rendered Attorney's continued representation . . . unreasonably difficult," *id.*; *see also, e.g.*, *id.* (noting client had "engaged in conduct Attorney's (*sic*) consider 'repugnant'").

Defendants' discovery misconduct continued even once they were *pro se*. On one end of the spectrum, certain *pro se* Defendants disappeared from the litigation entirely, like Robert "Azzmador" Ray and Elliott Kline. *See infra, e.g.*, pp. 7–9. Other *pro se* Defendants filed an

unending litany of motions—in Cantwell's case, 40 motions in total at the time of this filing, including at least 22 frivolous pretrial motions and motions *in limine* that were denied before trial. *See, e.g.*, ECF 1056, 1066, 1077, 1085, 1088, 1090, 1096, 1098–99, 1109, 1119, 1121–23, 1132–33, 1157–58, 1160, 1162, 1262, 1298.

### 2. Despite Defendants' Continued Misconduct, Plaintiffs Managed to Obtain Discovery

On October 2, 2018, Plaintiffs moved to compel all Defendants (except Fields) to permit the imaging of Defendants' electronic devices and social media accounts by a neutral third-party vendor. *See* ECF 354. The Court granted Plaintiffs' motion, finding that "ordering the parties to submit their electronic devices to a third-party vendor for imaging . . . [was] necessary and appropriate to manage discovery in this action." ECF 379 at 1 (the "imaging order"). As the Court later explained, "Plaintiffs had waited almost ten months for Defendants to produce the requested documents," which was "a significant delay," and "there were still concerns that 'some relevant information may have been lost.'" ECF 933 at 10 (citations omitted). "Plaintiffs agreed to front the costs of imaging and collecting this ESI, at least for the time being, to keep the case moving forward," *id.*, but reserved the right to later seek recoupment of their upfront costs, *see* ECF 379.

Despite the Court's Order, Defendants continued to evade their discovery obligations. Many Defendants refused to submit their devices to the vendor, failed to disclose correct social media accounts and passwords, lacked any explanation for why their devices and accounts were devoid of responsive material, and entirely ignored the process set up by the Court's Order. *See, e.g.*, ECF 432, 547, 650, 652, 671, 673, 894. For example, Defendant Matthew Heimbach, a prolific writer on social media, admitted that he "didn't take any steps to preserve anything [he] posted on any social media account," claimed that "every single social media account . . . that concerns the Unite the Right has been either disabled or deleted since [he was] sued in this case,"

and failed to produce nearly any posts from his numerous accounts—all despite continuing to post about the case throughout the litigation. *See* ECF 1006 at 2–4. Defendants also resorted to "the dog ate my homework" type of excuses such as Jeff Schoep's claim that his phone had "fallen in the toilet." *See, e.g.*, ECF 547 at 1. At times, Defendants lied outright. *See, e.g.*, ECF 610 (finding Kline's assertions "incredible" and holding him in contempt). And they conspired in plain view, advising each other to avoid complying with discovery. *See, e.g.*, ECF 936 at 16 n.9; ECF 716-4, 716-9. Even after the Court issued the imaging order, Plaintiffs were forced to expend time and resources filing yet another seven motions to compel. *See* ECF 547, 671, 673, 674, 689, 792, 803.

Despite these many challenges, by the end of the case, Plaintiffs had managed to collect more than 1.5 million documents from approximately 62 custodians, including more than 356,000 images and over 6,000 audiovisual files. *See* Declaration of Yotam Barkai ("Barkai Declaration" or "Barkai Decl.") ¶ 17. Plaintiffs introduced about 770 exhibits at Defendants' 16 depositions, for which Plaintiffs traveled to six cities. *See id.* ¶ 13. As with most aspects of this case, these depositions posed their own time- and resource-wasting disruptions. For instance, Defendants Kline and Ray failed to appear for their properly noticed depositions numerous times. *See, e.g.*, ECF 815, 877. Each of these no-shows required Plaintiffs to invest additional time and resources preparing for the depositions and working to secure Defendants' compliance and participation, including filing motions to compel, *e.g.*, ECF 792, 803, and for sanctions, described below.

### 3. Plaintiffs Succeeded in Having Meaningful Discovery Sanctions Imposed

To address the discovery misconduct described above, Plaintiffs were forced to move for sanctions no fewer than 12 times. *See, e.g.*, ECF 432, 457, 465, 565, 601, 671, 713, 750, 894, 898, 1003, 1028. All of Plaintiffs' motions were granted at least in part, if not in full. *See, e.g.*, ECF 483, 540, 599, 933, 936, 982, 1039, 1106, 1237, 1295. As the Court explained, sanctions were

clearly warranted where, as here, a defendant "acted in bad faith by stonewalling and ignoring the Court's orders over the previous eighteen months." ECF 936 at 13. The Court went on to observe:

> . . . such misconduct must obviously be deterred lest anyone else think he or she can behave this way in federal court . . . Vanguard's repeated and ongoing misconduct so far had caused significant procedural prejudice to Plaintiffs' ability to resolve their claims in a just, speedy, and inexpensive manner . . . [and] Plaintiffs expended enormous resources dealing with Vanguard's unacceptable delays, obfuscations, and disregard for both their proper discovery requests and this Court's many orders trying to enforce them.

*Id.* (cleaned up). Similarly, the Court found that:

> Ray's track-record of failing to fulfil his discovery obligations in a timely manner made him especially ill-suited to participate in a discovery process that is predicated upon one's prompt and good faith compliance with discovery obligations.

ECF 933 at 14 (cleaned up).

As a result, the Court ordered financial as well as evidentiary sanctions in Plaintiffs' favor, including instructing the jury that Defendants Kline and Ray had "entered into an agreement with one or more coconspirators to engage in racially motivated violence"; "were motivated by animus against racial minorities, Jewish people, and their supporters when conspiring to engage in acts of intimidation and violence"; "intended" and could "reasonably foresee[]" "that coconspirators would commit acts of racially-motivated violence and intimidation"; and, after Unite the Right, "ratified the racially-motivated violence." ECF 1461 at 29–30. The jury was further instructed that it could infer that Defendants Heimbach, Kline, NSM, Ray, and Vanguard "intentionally withheld or destroyed documents and electronically stored information." *Id.* at 33.

Plaintiffs also succeeded in having the Court take the extreme measure of holding Kline and Ray in contempt, ordering a warrant for Ray's arrest and taking Kline into custody. *See* ECF 599, 610, 877. Even after holding Kline in custody for two days, the Court explained that he had not yet "purged himself of contempt" or shown he was able to "comply with this Court's orders."

*See* ECF 634 at 4. Instead of additional jail time, the Court imposed evidentiary sanctions to "move the case forward on the merits." *See id.* (cleaned up). And even after the Court held that Ray could "purge himself of contempt, and thereby secure his release from detention, by appearing at a deposition," ECF 877 at 8, Ray avoided arrest and failed to appear for his deposition (or at trial).

Finally, the Court awarded Plaintiffs $135,782.50 in fees in connection with Plaintiffs' numerous successful motions for sanctions or to compel. *See* ECF 738, 739, 1485, 1486.[3]

### 4. Plaintiffs Were Forced to Seek Discovery from Numerous Third Parties

It is not uncommon for relevant discovery materials to be in the possession of third parties. Here, however, much of the third-party discovery was necessitated by Defendants' refusal to comply with their own discovery obligations. For example, Defendants failed to grant access to their social media accounts or, in many instances, their accounts had been shut down by the host platforms due to their offensive content. As a result, Plaintiffs needed to pursue discovery directly from the social media companies, including Discord, Twitter, Gab, and Facebook, in order to obtain posts related to Unite the Right. *See* Barkai Decl. ¶ 15(a). Plaintiffs likewise had to pursue discovery directly from cellular phone providers, including AT&T, Verizon, Sprint, and T-Mobile, in order to show the extent of Defendants' communications with other Defendants and third parties leading up to and during the weekend of August 11 and 12, 2017. *See id.*

In total, Plaintiffs served at least 92 subpoenas on approximately 60 non-parties. *See* Barkai Decl. ¶ 15. In several cases, time-consuming and laborious negotiations with those third parties were necessary in order to obtain the discovery to which Plaintiffs were entitled. For example, Plaintiffs first subpoenaed Discord, a key source of evidence in this case, on January 2, 2018. *See*

---

[3] Plaintiffs respectfully request that the Court reduce its prior decisions awarding attorneys' fees to Plaintiffs to a final judgment enforceable against Defendants.

Barkai Decl. ¶ 15(b). But it was not until more than ten months later, after an extensive series of meet-and-confers, that Discord finally began producing documents on November 20, 2018. *See id.* That production was followed by 13 further productions, stretching from December 14, 2018, to November 5, 2020. *See* Barkai Decl. ¶ 15(b). After almost three years of pursuing discovery from Discord, Plaintiffs obtained approximately 575,000 Discord posts, many of which featured prominently at trial. *See, e.g.*, ECF 1389 at 32–33, 38, 43, 49; ECF 1393 at 178–79.

Plaintiffs also took 17 third-party depositions, traveling to four cities to do so.[4] *See* Barkai Decl. ¶ 16. There were approximately 600 exhibits introduced at these depositions, and several third-party deposition videos were designated and played at trial. *See, e.g.*, ECF 1393 at 207; ECF 1401 at 66; ECF 1407 at 11–12, 116–18; ECF 1419 at 247; ECF 1422 at 16; ECF 1428 at 166.

\* \* \*

In addition to all of the discovery and motions described above, the parties to this action collectively served approximately 78 total sets of interrogatories, requests for production, and requests for admission, and filed a total of approximately 249 motions. *See* Barkai Decl. ¶ 14.

### E.     Plaintiffs Prevailed Following a Four-Week Jury Trial

As the Court knows all too well, the trial in this case was long and intense, lasting more than four weeks (22 trial days), the longest civil trial to date in the Western District of Virginia. ECF 1479 at 20. The trial was rescheduled multiple times, each time requiring Plaintiffs to adjust staffing and stop-and-start preparations. For example, in April 2019, the Court continued the July 8, 2019 trial date indefinitely, citing the "complicated nature of discovery" and the "number of discovery disputes." ECF 461. The case was eventually rescheduled for trial in October 2020, *see* ECF 597, and had to be rescheduled two more times due to the COVID-19 pandemic. *See* ECF

---

[4] Most of the depositions in the case took place via videoconference by Zoom due to the COVID-19 pandemic, which also saved time and money compared to in-person depositions.

844, 903, 924. Thirty-five witnesses testified at trial (including by deposition). *See* ECF 1477.[5] There were 949 exhibits admitted. *See* ECF 1476.[6] The trial transcript spanned close to 4,100 pages. *See* ECF 1317, 1324, 1339, 1366, 1378, 1382, 1389, 1393, 1397, 1401, 1407, 1413, 1419, 1422, 1428, 1431, 1443, 1454, 1458, 1469, 1472, 1479.

After working tirelessly for more than a month, Plaintiffs' attorneys achieved a resounding victory for their clients. The jury returned a verdict in Plaintiffs' favor on four of six claims (Counts III, IV, V, and VI); hung on the remaining two claims (Counts I and II); and awarded Plaintiffs a total of $26 million in damages. *See* ECF 1478.

### F.    Plaintiffs' Approach to This Motion

Plaintiffs took as conservative an approach as possible in connection with preparing this Motion. *First* and most importantly, at any one point in time, each firm is seeking fees for no more than six timekeepers, even though the total number of attorneys working on this case from each firm was far greater—up to 16 to 23 timekeepers per firm at any given time (as well as contract attorneys retained to conduct document review). *See* Barkai Decl.; Declaration of Karen Dunn ("Dunn Decl."); Declaration of Jessica Phillips ("Phillips Decl."); Declaration of Alan Levine ("Levine Decl."); *see also* Declaration of David C. Dinielli ("Dinielli Decl.") ¶ 27(f) (finding Plaintiffs' approach reasonable). As a result, Plaintiffs limited their fee request to just 26 of the dozens of timekeepers who worked on this case over the course of more than the past four years.

*Second*, in accordance with the prior orders of this Court, *see* ECF 738, 739, 1485, 1486, attorneys reviewed each firm's time entries, removing any attorney hours for non-legal or

---

[5] A total of 160 individuals were listed as proposed witnesses across the parties' witness lists. *See* ECF 1042–43, 1045–47, 1100–01, 1141, 1240–41.
[6] A total of 4,082 proposed exhibits were listed across the parties' exhibit lists. *See* 1140, 1061, 1068-70, 1081, 1107, 1142, 1239, 1283, 1351, 1370, 1380.

administrative tasks, and applying limited privilege redactions.[7] *See* Barkai Decl. ¶ 23. Many time entries were modified or removed entirely for these reasons. *Third* and finally, instead of applying their standard New York and Washington, D.C. market rates ranging from approximately $250 to over $1500, Plaintiffs' counsel applied local market rates for Charlottesville, Virginia, ranging from $100 to $450/hour, which, with the exception of $450/hour for the most experienced lawyers (Roberta Kaplan, Karen Dunn, and Alan Levine), have all been previously determined and approved by Magistrate Judge Hoppe. *See* ECF 738, 739, 1485, 1486.

## REQUEST FOR FEES AND COSTS

As outlined in the Barkai, Dunn, Phillips, and Levine Declarations and Exhibit A to each, Plaintiffs are seeking a total of **$12,726,103.85** in attorneys' fees for 46,950.2 hours of attorney and paralegal time devoted to successfully litigating their Va. Code § 8.01-42.1 and interrelated claims, including:

| Litigation Phase[8] | Date Range | Hours | Fees |
|---|---|---|---|
| Investigation & Complaint | Aug. 24 – Oct. 10, 2017 | 317.9 | $69,160.00 |
| Motions to Dismiss | Oct. 11, 2017 – Mar. 6, 2018 | 903.4 | $252,247.50 |
| Discovery & Summary Judgment | Mar. 7, 2018 – Aug. 23, 2021 | 30,666.1 | $8,302,588.00 |
| Pretrial Disclosures & Motions | Aug. 24 – Oct. 24, 2021 | 8,098.7 | $2,233,788.00 |
| Trial | Oct. 25 – Nov. 23, 2021 | 6,624.7 | $1,941,880.00 |
| Motion for Fees & Costs | Nov. 24, 2021 – Mar. 2, 2022 | 339.4 | $73,677.00 |

---

[7] At the Court's direction, Plaintiffs are prepared to provide unredacted versions of their counsel's time entries for the Court's *in camera* review.

[8] While Plaintiffs have assigned fees to various phases of the litigation, there is necessarily overlap between the different phases. For example, discovery work began during the "Motion to Dismiss" phase and continued into the "Pretrial Disclosures & Motions" phase.

| Litigation Phase[8] | Date Range | Hours | Fees |
|---|---|---|---|
| *Prior Fee Motions[9]* | | | *-$147,236.65* |
| TOTAL | | **46,950.2** | **$12,726,103.85** |

Plaintiffs are also seeking $1,812,439.30 in litigation costs, as detailed in Exhibits B-V to the Barkai Declaration, including the following:

| Category of Costs | Amount |
|---|---|
| Fees of the clerk and marshal (28 U.S.C. § 1920(1)) | $16,114.74 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case (28 U.S.C. § 1920(2)) | $241,908.99 |
| Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case (28 U.S.C. § 1920(4)) | $287,994.73 |
| Third-party discovery vendor, iDS (ECF 383) | $1,266,420.84 |
| TOTAL | **$1,812,439.30** |

## ARGUMENT

Statutory provisions to shift attorneys' fees to successful litigants in high-impact civil-rights cases are integral tools in the "arsenal of remedies available to combat violations of civil rights." *Evans v. Jeff D.*, 475 U.S. 717, 732 (1986). By incentivizing parties to bring suit, a civil-rights statute's fee-shifting provisions can "promote the vigorous enforcement" of the statute's substantive provisions and advance the statute's underlying public-policy goals. *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978); *see also Brandon v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194, 200 (4th Cir. 2019) (fee shifting "enable[s] potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights" (citation and quotation marks omitted)); *Wilkins v. Peninsula Motor Cars, Inc.*, 587 S.E.2d 581, 584 (Va. 2003) (fee shifting "encourage[s] private enforcement of the provisions of the statute"). Indeed, a civil-rights

---

[9] Plaintiffs are not seeking the $147,236.65 in fees that they already pursued in prior fee applications, all of which were awarded at least in part. *See* ECF 738, 739, 1485, 1486. The relevant time entries have not been removed from the exhibits to the Barkai, Dunn, Phillips, and Levine Declarations; however, as shown in the table above, Plaintiffs have subtracted the amount sought in prior fee motions from the total amount of fees they are seeking here.

statute's fee-shifting provisions work in tandem with its other provisions to deter wrongdoing and ensure that "wrongdoers make whole those whom they have injured." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989); *accord Brat v. Personhuballah*, 883 F.3d 475, 481 (4th Cir. 2018). Awarding meaningful fees under a fee-shifting provision is especially important where, as here, the legal complexity and political and financial risks associated with enforcing a particular civil-rights statute may discourage private entities from taking on such a case. *See* Dinielli Decl. ¶ 22 (noting only a firm with specific capabilities could take on this case).

## I.     Plaintiffs' Requested Fees Are Reasonable and Should Be Awarded

### A.     Legal Standard

Under Va. Code § 8.01-42.1(B), a prevailing party "shall be entitled . . . in the discretion of the court to an award of . . . reasonable attorney fees in an amount to be fixed by the court." In awarding fees, a court considers not just the time spent on a Section 8.01-42.1 claim, but also on any "interrelated" claims. *See, e.g.*, *Knussman v. Maryland*, 73 F. App'x 608, 613 (4th Cir. 2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Salim v. Dahlberg*, No. 1:15-CV-468, 2016 WL 2930943, at *2 (E.D. Va. May 18, 2016). Critically, Plaintiffs are not aware of a single published opinion that did not grant, at least in part, a request for fees under this statute.

In assessing fee awards, federal courts in the Fourth Circuit apply a three-step analysis known as the "lodestar" method, which is "analogous" to the method employed by the Virginia courts. *See, e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013); ECF 738 at 7 (applying lodestar method to prior fee award in this case); ECF 1485 at 5 (same); ECF 1486 at 4–5 (same); *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 798 S.E.2d 177, 183 (Va. 2017); *Schlegel v. Bank of Am., N.A.*, 628 S.E.2d 362, 369 (Va. 2006). *First*, the court "determine[s] a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In conducting this analysis, courts

in the Fourth Circuit look to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*,

488 F.2d 714, 717–19 (5th Cir. 1974) (the "*Johnson* factors"):

> (1) [t]he time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4) the
> attorney's opportunity costs in pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the outset of the litigation; (7) the
> time limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation, and ability of
> the attorney; (10) the undesirability of the case within the legal community in which
> the suit arose; (11) the nature and length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting *Johnson* factors).

As the *Johnson* factors "substantially overlap" with the relevant factors under Virginia law, *Salim*,

2016 WL 2930943, at *3, federal courts adjudicating fee petitions under Virginia law often

perform an analysis incorporating both sets of factors. *See, e.g.*, *W. Insulation, LP v. Moore*, 362

F. App'x 375, 380 & n.5 (4th Cir. 2010) (considering *Johnson* and Virginia factors).[10]

    *Second*, the court "subtract[s] fees for hours spent on unsuccessful claims *unrelated* to

successful ones." *McAfee*, 738 F.3d at 88 (emphasis added); *see also Salim*, 2016 WL 2930943, at

*4. However, fees should "be awarded for time spent on unsuccessful claims *if such claims are

interconnected to the successful claims*, i.e., the claims rest on the same facts or related legal

theories." *Taylor v. Republic Servs., Inc.*, No. 1:12-CV-00523, 2014 WL 325169, at *7 (E.D. Va.

Jan. 29, 2014) (emphasis added). *And third*, the court awards a "percentage of the remaining

amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88; *see

also Salim*, 2016 WL 2930943, at *4.

---

[10] Relevant factors under Virginia law include "the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate." *Schlegel*, 628 S.E.2d at 369.

**B.**     **Plaintiffs' Requested Hourly Rates Have Previously Been Approved by the Court and Are Reasonable**

The Court has already approved the following rates: (1) Partners/Counsel: $400/hr; (2) Associates: $225/hr; and (3) Case Managers/Paralegals: $100/hr. *See* ECF 738 at 11–12, 22; ECF 1485 at 8–9; ECF 1486 at 8–9. Only the hourly rate of $450 for Senior Partners (Ms. Kaplan, Ms. Dunn, and Mr. Levine), for whom Plaintiffs have not previously sought fees, has yet to be considered by this Court. All of the rates being sought, including for Senior Partners, are consistent with prevailing rates in the Charlottesville area. *See* ECF 738 at 10, 12 (approving Plaintiffs' previously requested rates as consistent with "prevailing market rates for this type of work in the relevant community" and "the presiding District Judge's fee awards for similar work" (cleaned up); ECF 1486 at 8–9 (same); *see also Salim*, 2016 WL 2930943 at *15 (awarding $500/hr for lead counsel and $110/hr for paralegal in "straightforward" litigation under Va. Code § 8.01-42.1); *Cab Siquic v. Star Forestry, LLC*, No. 3:13-CV-00043, 2016 WL 1650800, at *2 (W.D. Va. Apr. 22, 2016) (finding rates reasonable up to $450/hr); *see also* ECF 505 at 6–7, ECF 929 at 9–10 (collecting cases). These rates are also appropriate given the skill, ability, and experience of Plaintiffs' counsel (*Johnson* factors 3 and 9). *See* ECF 738 at 11–12 (approving requested rates in this case based on "attorneys' qualifications" and "skill and professionalism required to represent [Plaintiffs'] interests while dealing with the 'unique and complicated [discovery] challenges'"); ECF 1486 at 9 (acknowledging Plaintiffs' attorneys' "exceptional qualifications and notable legal experience"); *Schlegel*, 628 S.E.2d at 369 (considering similar factors under Virginia law); Barkai Decl. ¶ 4; Dunn Decl. ¶¶ 6–11; Phillips Decl. ¶¶ 6–10; Levine Decl. ¶¶ 4–10; *infra* at Part I.C.2.

**C.**     **Plaintiffs' Fee Request Is Based on a Reasonable Number of Hours**

**1.**     **Effort Expended on All Interrelated Claims (*Johnson* Factor 1)**

As discussed above, Plaintiffs are entitled to fees for their Section 8.01-42.1 claim (Count

IV)[11] and any "interrelated" claims. *See, e.g.*, *Salim*, 2016 WL 2930943, at *2. Claims are interrelated where they "involve a common core of facts" or are "based on related legal theories," and where counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435; *see also* Dinielli Decl. ¶¶ 19–25. "When claims are interrelated in this manner, the district court is not required to sort out the hours devoted to successful claims from those expended on fruitless efforts." *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 153 (4th Cir. 2001). Instead, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 405 (E.D. Va. 2015) ("[T]he interrelated nature of the facts and claims appear to prevent the case from being effectively viewed as a series of discrete claims." (cleaned up); *St. John v. Thompson*, 854 S.E.2d 648, 651 (Va. 2021) (upholding fee on claims "interrelated with the counts that were successful"); *Little v. Va. Ret. Sys.*, No. HB 1298-2, 1992 WL 885023, at *11 (Va. Cir. Ct. Nov. 17, 1992) (awarding fee where "all the Petitioner's legal theories in the instant case arose from a common nucleus of interrelated facts") (subsequent history omitted).

Here, where all of Plaintiffs' claims were interrelated and overlapping with Count IV, Plaintiffs are entitled to fees on the entirety of the litigation. More specifically, in Count IV, Plaintiffs alleged (and proved at trial) violations of Va. Code § 8.01-42.1 by certain Defendants at the torch march on August 11, 2017, and by Defendant Fields during the car attack on August 12, 2017. *See* ECF 1478. Plaintiffs' other claims are interrelated with Count IV as follows:

- In **Count I**, Plaintiffs alleged a conspiracy to commit racially motivated violence under the

---

[11] Because Plaintiffs voluntarily dismissed one cause of action before trial, *see* ECF 1238, the claim numbers in the jury verdict do not align with those in the operative complaint. The claim numbers from the jury verdict, ECF 1478, are used herein for ease of reference.

Ku Klux Klan Act ("KKK Act," 42 U.S.C. § 1985(3)), predicated on facts overlapping completely with those underlying Count IV—*i.e.*, the torch march on August 11 and the car attack on August 12. *See* ECF 557 at ¶¶ 335–43; ECF 1454 at 153. Indeed, this Court already concluded that "the alleged injuries to Plaintiffs' persons at the Friday night march, Saturday rally, and car attack," which the Court relied on in "addressing the fourth and fifth elements of the Section 1985(3) claim" (Count I), "would all violate Virginia's hate crime statute" (Count IV). ECF 335 at 48.

- Since **Count II** alleged that Defendants knew of the conspiracy alleged in Count I, but failed to prevent it, ECF 557 at ¶¶ 344–50; ECF 1454 at 149:13–19, Count II is similarly interrelated with Count IV.

- In **Count III**, Plaintiffs alleged (and proved) a Virginia common-law civil conspiracy, one of the goals of which was to violate Va. Code § 8.01-42.1 (Count IV). *See* ECF 335 at 48; ECF 557 at ¶ 353(a)–(c); ECF 1454 at 151:1–8; ECF 1478 at 3.

- In **Counts V and VI**, Plaintiffs alleged (and proved) assault and battery and intentional infliction of emotional distress by Fields in relation to the same conduct that formed the factual basis for Count IV—the car attack on August 12. *See* ECF 557 at ¶¶ 368–72; ECF 1454 at 154:4–8; ECF 1478 at 8–9.

### 2.   Novelty and Difficulty of the Case (*Johnson* Factor 2)

Invoking statutes rarely applied in practice, and even less often successfully, Plaintiffs' legal claims were novel and complex. As this Court has already acknowledged, "[v]ery few courts have provided elaboration of [Va. Code § 8.01-42.1]." ECF 335 at 49. Indeed, a Westlaw search found only 25 decisions citing Section 8.01-42.1, three of which were from this litigation. Plaintiffs likewise faced a dearth of precedent for their KKK Act claims. As scholars have explained, the KKK Act has been used sparingly since its enactment. *See, e.g.*, Michael H.

LeRoy, *Targeting White Supremacy in the Workplace*, 29 Stan. L. & Pol'y Rev. 107, 125–26 (2018) (KKK Act "lay mostly dormant" "[f]or nearly 90 years" after enactment). And courts have recognized that the statute is as complex as its use here is novel. *See, e.g.*, *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 487 (5th Cir. 2009) ("Section 1985(3) has unusual wording and a complex set of elements."); *Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *12 (N.D. Ill. Aug. 3, 2015) (describing statute as "nuanced" and "complex").

In addition to the novelty and complexity of Plaintiffs' core legal theories, their claims raised corollary legal and factual issues that generated further challenges. For example, Plaintiffs needed to address the intersection between the First Amendment—a defense frequently raised by Defendants—and KKK Act liability. *See, e.g.*, ECF 209 at 8–9; ECF 213 at 2–3. Plaintiffs also needed to rely on circumstantial evidence to prove their civil conspiracy claim (as conspiracy cases often do), which "generally is more time intensive than is the development of direct evidence." *Saleh v. Moore*, 95 F. Supp. 2d 555, 573 (E.D. Va. 2000), *aff'd* 11 F. App'x 241 (4th Cir. 2001).

This litigation was also exceptionally challenging not just due to its sheer size—including the number of Plaintiffs, Defendants, and claims, and the resulting breadth of discovery—but because of Defendants' never-ending discovery misconduct, as discussed above. Indeed, in granting Plaintiffs' previous fee applications, this Court already recognized the "unique and complicated discovery challenges in this case." ECF 738 at 11 (cleaned up); *see also, e.g.*, ECF 1486 at 14 (Defendants "forced Plaintiffs to expend[] considerable effort and resources trying to obtain discovery to which they were clearly entitled" (internal quotation marks omitted)); Dinielli Decl. ¶ 22. Other courts have similarly found the difficulties imposed by discovery misconduct, like that of Defendants here, to support an award of reasonable attorneys' fees. *See, e.g.*, *Wolfe v. Green*, No. 2:08-CV-01023, 2010 WL 3809857, at *11 (S.D. W. Va. Sept. 24, 2010) (finding "case

involved issues beyond those normally associated with civil rights cases," including that "defendants[] obstructed the discovery process"); *Saleh*, 95 F. Supp. 2d at 574 ("[T]he unwillingness of the Defendants to cooperate in the discovery process caused the Plaintiffs to spend inordinate amounts of time and expense in securing information . . . . This approach made the resolution of the questions posed in the action far more difficult than should have been the case."); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 766 (D. Md. 2001) ("Even in the absence of novel questions, an expenditure of significant hours may be reasonable where 'the case certainly posed difficulties from an evidentiary standpoint and required a high degree of skill to win.'" (quoting *Herold v. Hajoca Corp.*, 682 F. Supp. 297, 300 (W.D. Va. 1988))).

### 3. Opportunity Costs, Time Limitations Imposed by the Circumstances, and Undesirability of the Case (*Johnson* Factors 4, 7 & 10)

The opportunity costs for Plaintiffs' counsel in pursuing this litigation (*Johnson* factor 4) were obviously quite high. Plaintiffs' counsel committed more than four years to this case, with dozens of lawyers and paralegals spending many times the 46,950.2 hours being sought here—time that they otherwise could have committed to matters at their full New York and Washington, D.C. rates. *See, e.g.*, *Irwin Indus. Tool Co. v. Worthington Cylinders Wisc., LLC*, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). In addition, the protracted discovery caused by Defendants' constant non-compliance only exacerbated these opportunity costs. *See, e.g.*, *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18-CV-656, 2019 WL 6107858, at *4 (E.D. Va. Nov. 15, 2019).

Adding to these opportunity costs was the "undesirability" of the case (*Johnson* factor 10)—namely, the risks of litigating against Defendants who are known to be violent, associate with violent hate groups, or otherwise have the capacity to motivate and mobilize others to commit violence, including through social media. As the *Johnson* court explained, "[C]ivil rights attorneys face hardships in their communities. . . . Oftentimes, [their] decision to help eradicate

discrimination is not pleasantly received by the community or [their] contemporaries." 488 F.2d at 719; *see also* Dinielli Decl. ¶ 18(c). While Plaintiffs' counsel did not experience such a reception from the Charlottesville community, they did from Defendants and their "community." To give one key example, Plaintiffs' counsel, Ms. Kaplan, was subjected to threats throughout the litigation, including Cantwell stating, "After this stupid kike whore loses this fraudulent lawsuit, we're going to have a lot of fucking fun with her." ECF 511-2; *see* ECF 330-9, 330-10, 511-4.

### 4.    Successful Outcome (*Johnson* Factor 8)

Where, as here, "a plaintiff has obtained excellent results, [the plaintiff's] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Plaintiffs prevailed on four of their six claims, lost none (since the jury hung on the other two), and were awarded $26 million in damages. ECF 1478. The number of hours that Plaintiffs' counsel are requesting is reasonable considering the excellent outcome achieved for their clients. *See, e.g.*, *McAfee*, 738 F.3d at 88 n.5; *Schlegel*, 628 S.E.2d at 369; *Couch v. Manassas Autocars, Inc.*, 77 Va. Cir. 30, *5 (2008) (prevailing on two of six counts considered "highly successful").

### 5.    Fee Awards in Other Cases (*Johnson* Factor 12)

While it is difficult to find cases that would be a close comparator to this one in terms of the overall length of the litigation; the number of parties and third parties; the number, complexity, and novelty of the claims; the degree of discovery misconduct; and the reasonable market rates for attorney services, Plaintiffs' fee request is reasonable when compared to fee awards in other, similar cases. Indeed, courts routinely approve fee awards to the tune of millions of dollars in similar cases featuring mitigating factors that are absent here, such as shorter durations, fewer parties, less discovery misconduct, and shorter trials. *See* Dinielli Decl. ¶ 27. *See also, e.g.*, *C.P.X. v. Garcia*, No. 4:17-CV-00417, 2021 WL 302754, at *6 (S.D. Iowa Jan. 7, 2021) ($4,540,762.90 in fees in civil rights case with hourly rates statutorily capped below prevailing market rates for 19

attorneys, six paralegals, one intern, and one litigation analyst in 18-month lawsuit with voluminous, disorganized discovery, and nine-day bench trial), *aff'd*, No. 21-1206, 2021 WL 5917780 (8th Cir. Dec. 15, 2021); *Veasey v. Abbott*, No. 2:13-CV-193, 2020 WL 9888360, at \*48 (S.D. Tex. May 27, 2020) ($5,851,388.28 in fees with hourly rates up to $600 for 15-month litigation with three-week bench trial and numerous post-trial appeals and decisions, involving attorneys from 13 law firms and public interest organizations), *aff'd*, 13 F.4th 362 (5th Cir. 2021); *Campbell v. Barnes*, No. 30-2020-01141117 (Cal. Super. Ct. Jan. 20, 2022) ($2,974,082 in fees in civil-rights case with more than 19 months of litigation and two weeks of trial-like evidentiary hearings, involving 14 attorneys from two law firms and one public-interest organization).

### D.    The Lodestar Amount Is Reasonable and There Is No Basis for Adjustment

"The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88–89 (discussing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)). That presumption holds here. Plaintiffs' counsel engaged in a complicated, four-year lawsuit, made even more challenging (and costly) by Defendants' intentional discovery misconduct, ultimately achieving a resounding victory for their clients at trial. Now, Plaintiffs are seeking a conservative lodestar amount, including by using previously approved and reasonable local Charlottesville rates, excluding dozens of timekeepers who devoted thousands of additional hours to litigating this case, and eliminating duplicative, administrative, and other non-legal work from counsel's time entries. *See* Barkai Decl. ¶ 23.

While at the second and third stages of the lodestar analysis, the Court is supposed to "subtract fees for hours spent on unsuccessful claims *unrelated to successful ones*" and award a "percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff," *McAfee*, 738 F.3d at 88 (emphasis added), no such adjustments are warranted here.  First, since *all* of Plaintiffs' claims are interrelated, *see supra* at pp. 17–18, there is no justification for any such

subtraction. *See, e.g.*, *Knussman*, 73 F. App'x at 613 (only time on "unrelated" claims need be excluded); *Taylor*, 2014 WL 325169, at *3, 7 (same); *Salim*, 2016 WL 2930943, at *4 (same). Similarly, because Plaintiffs' "litigation as a whole" resulted in an "overall success," there is no cause to reduce the award by any percentage. *Certain v. Potter*, 330 F. Supp. 2d 576, 587 (M.D.N.C. 2004); *see also Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1419 (4th Cir. 1992); *Univ. Support Servs., Inc. v. Galvin*, No. 126614, 1996 WL 1065541, at *6 (Va. Cir. Ct. May 20, 1996) ("[I]n cases such as this one where the causes of action are interrelated, a mathematical approach comparing the number of issues in the case to the issues prevailed upon, is not appropriate." (citing *Hensley*, 461 U.S. at 435–36 n.11)); Dinielli Decl. ¶¶ 19–25.

### E.    Plaintiffs Should Be Awarded Fees for Their Time Preparing This Motion

Plaintiffs also request $73,677.00 in fees for their counsel's time preparing this Motion. *See* Va. Code § 8.01-42.1; *see also Salim*, 2016 WL 2930943, at *15–16. This amount is reasonable, as it again only includes the time of certain timekeepers (seven timekeepers from two of three firms), understating the time actually spent on the Motion. It is also well within the range of what courts have approved for similar applications. *E.g.*, *Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273, 280 (E.D. Va. 2020) (awarding $50,000 for time spent on fee petition).

## II.    An Award of Costs Is Warranted

In addition to their reasonable attorneys' fees, Plaintiffs are seeking an award of $1,812,607.70 in costs, including: (1) $546,018.46 in costs under Federal Rule of Civil Procedure 54(d) and Va. Code § 8.01-42.1(B); and (2) reimbursement of $1,266,420.84 in costs that Plaintiffs paid to the third-party discovery vendor, iDS, pursuant to the Court's Order, ECF 383.

### A.    As the Prevailing Party, Plaintiffs Enjoy a Presumption in Favor of an Award of Costs

Federal Rule of Civil Procedure 54(d) provides, in relevant part, that "[u]nless a federal

statute, [the Federal Rules], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d).[12] A prevailing party is one who prevails "on any significant claim affording some of the relief sought." *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 514 (D. Md. 2005) (cleaned up). In the Fourth Circuit, "this provision [] create[s] a presumption in favor of awarding costs to the prevailing party." *Est. of Ward v. Trans Union Corp.*, No. 4:04-CV-88, 2009 WL 10705140, at *1 (E.D.N.C. Feb. 25, 2009). Separately, Va. Code § 8.01-42.1(B) provides that "[a]ny aggrieved party who initiates and prevails in" an action brought under the statute is, in the discretion of the court, entitled "to an award of the cost of the litigation . . . in an amount to be fixed by the court."

Plaintiffs easily qualify for this presumption in favor of awarding costs under Rule 54(d): the jury returned a verdict in Plaintiffs' favor on four of their six claims, accompanied by a $26 million damages award, thereby affording Plaintiffs more than just "some of the relief sought." *Broccoli*, 229 F.R.D. at 514. Courts have readily deemed litigants the "prevailing party" under similar circumstances. *See, e.g.*, *Clark v. Milam*, 891 F. Supp. 268, 272 (S.D. W. Va. 1995) (finding prevailing party where jury returned verdict in their favor on two of four counts and awarded over $13 million) (subsequent history omitted).

Accordingly, Plaintiffs seek their eligible costs in this case, including court, docket, and service fees, as well as necessary transcript, printing, and copying fees. These costs, totaling $546,018.46, are outlined in detail in the Barkai Declaration and Exhibits B–T thereto, which include the actual vendor invoices enumerating these costs.

---

[12] "Costs" under Rule 54(d) are "defined by the categories of expenses enumerated in 28 U.S.C. § 1920," *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292 (2006), including, among other things, "[f]ees of the clerk and marshal," "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," 28 U.S.C. § 1920.

**B.**      **Plaintiffs Should Be Reimbursed for the Costs of the Court-Approved, Third-Party Discovery Vendor**

Finally, Plaintiffs seek reimbursement of the $1,266,420.84 they incurred for the Court-approved, third-party discovery vendor, iDS. As described above, *supra* at p. 6, pursuant to this Court's Order, Plaintiffs paid iDS to image, preserve, and produce information from Defendants' electronic devices after they refused to comply with their discovery obligations. *See* ECF 379, 383.

Under the discovery rules, "the presumption is that the responding party"—here, Defendants—"must bear the expense of complying with discovery requests." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003); *see also, e.g.*, *TBC, Inc. v. DEI Sales, Inc.*, No. CCB-14-3644, 2017 WL 4151261, at *7 (D. Md. Sept. 19, 2017) (same). Early in this case, however, Defendants objected to bearing the costs of their own document preservation and production. *See* ECF 354 at 13–14. Defendants offered only conclusory statements regarding the burden and expense of compliance with discovery, which do not suffice. *See, e.g.*, *Ashmore v. Allied Energy, Inc.*, No. 8:14-CV-00227, 2016 WL 301169, at *3 (D.S.C. Jan. 25, 2016); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 98 (D. Md. 2003). Nonetheless, "Plaintiffs agreed to front the costs of imaging and collecting this ESI, at least for the time being, to keep the case moving forward." ECF 933 at 10.

Under the imaging order entered by the Court, Plaintiffs maintained their right to later seek to recoup the costs of the third-party discovery vendor, which they never should have had to bear in the first instance. *See* ECF 379, 383. And that is what Plaintiffs are doing now. Defendants' continued disregard for their discovery obligations, which persisted even after Plaintiffs agreed to temporarily bear the costs of Defendants' electronic discovery, *see supra* at pp. 6–8, further confirms that Plaintiffs should be reimbursed for these discovery-related costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award Plaintiffs reasonable attorneys' fees in the amount of **$12,726,103.85** and costs in the amount of **$1,812,439.30**, and order such other further relief as the Court deems necessary and appropriate.

Date: March 9, 2022

Respectfully submitted,

Roberta A. Kaplan
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com

*Counsel for Plaintiffs*

Of Counsel:

Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
rtolentino@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &

Karen L. Dunn (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Matteo Godi (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
mgodi@paulweiss.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor

GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Daniel Philip Roy, III (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
droy@cooley.com

Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A. Strauss (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
Allegra Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary Anderson (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com
aflamm@cooley.com
gseidita@cooley.com
kjanderson@cooley.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I served the following via the ECF system:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party, and Matthew Heimbach*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, Nationalist Front, Matthew Parrott, Traditionalist Worker Party, and Matthew Heimbach*

I hereby certify that on March 9, 2022, I also served the following by electronic mail and U.S. mail:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

_____
Roberta A. Kaplan (*pro hac vice*)
KAPLAN HECKER & FINK LLP

*Counsel for Plaintiffs*