## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

ELIZABETH SINES, SETH WISPELWEY,
MARISSA BLAIR, APRIL MUNIZ,
MARCUS MARTIN, NATALIE ROMERO,
CHELSEA ALVARADO, DEVIN WILLIS,
and THOMAS BAKER,

                        Plaintiffs,

v.

JASON KESSLER, et al.,

                        Defendants.

**Civil Action No. 3:17-cv-00072-NKM**

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, EAST COAST KNIGHTS OF THE KKK, FRATERNAL ORDER OF THE ALT-KNIGHTS, AUGUSTUS SOL INVICTUS, THE LOYAL WHITE KNIGHTS OF THE KKK, AND THE NATIONALIST FRONT, AND FOR PREJUDGMENT INTEREST**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 3

I.      Factual Background ...................................................................................... 3

        A.      The Defaulted Defendants Are Neo-Nazis and White Supremacists. ................... 4

        B.      The Defaulted Defendants Planned and Participated in UTR. ............................. 5

                1.      Before UTR ................................................................................ 5

                2.      August 11, 2017 ......................................................................... 7

                3.      August 12, 2017 ......................................................................... 8

II.     Procedural Background .............................................................................. 10

        A.      Plaintiffs Properly Served the Defaulted Defendants. ........................... 10

        B.      Six Defaulted Defendants Failed to Appear and Defaulted. ................... 11

        C.      Plaintiffs Survived Motions to Dismiss Filed by the Answering
                Defendants and Defaulted Defendant NF. ............................................. 11

        D.      The NF Abandoned the Case and Defaulted. ......................................... 12

        E.      Plaintiffs Prevailed Against the Answering Defendants at Trial. .......... 12

ARGUMENT .......................................................................................................... 13

I.      This Court Should Enter Default Judgment Against the Defaulted Defendants. ............. 13

        A.      Default Judgment on Count III Is Warranted Against the Defaulted
                Defendants. ........................................................................................... 14

        B.      Default Judgment on Count IV Is Warranted Against Defaulted Defendant
                Invictus. ................................................................................................ 16

II.     This Court Should Hold the Defaulted Defendants Liable for Damages. ....................... 17

        A.      The Defaulted Defendants Are Jointly and Severally Liable with the
                Answering Defendants for Damages to Plaintiffs. ................................ 17

        B.      This Court Should Assess Additional Punitive Damages Against the
                Defaulted Defendants. .......................................................................... 22

III.    The Court Should Award Plaintiffs Prejudgment Interest with Respect to Compensatory
        Damages. ................................................................................................... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action S.A. v. Marc Rich & Co., Inc.*,
    951 F.2d 504 (2d Cir. 1991) ..................................................................................... 23

*Almy v. Grisham*,
    273 Va. 68 (2007) ................................................................................................... 14

*Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*,
    187 F.3d 628 (4th Cir. 1999) (unpublished) ............................................................ 23

*Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*,
    No. 5:17 Civ. 808, 2020 WL 10502725 (W.D. Tex. Aug. 11, 2020) ...................... 16

*Brin v. A Home Come True, Inc.*,
    79 Va. Cir. 33 (2009) ............................................................................................. 18

*CaterCorp, Inc. v. Catering Concepts, Inc.*,
    246 Va. 22 (1993) ................................................................................................... 18

*Cutaia v. Radius Eng'g Int'l*,
    No. 5:11 Civ. 77, 2014 WL 3359368 (W.D. Va. July 9, 2014) ............................... 19

*Cutcliff v. Reuter*,
    791 F.3d 875 (8th Cir. 2015) ................................................................................. 23

*E. Reg'l Med. Ctr., Inc. v. Wills*,
    No. 15 Civ. 0313, 2016 WL 1214739 (D. Md. Mar. 23, 2016) .............................. 16

*Gelber v. Glock*,
    293 Va. 497 (2017) ................................................................................................. 14

*Jefferson v. Briner, Inc.*,
    461 F. Supp. 2d 430 (E.D. Va. 2006) ..................................................................... 13

*Johnson Health Tech N. Am., Inc. v. Grow Fitness Grp., Inc.*,
    No. 17 Civ. 834, 2020 WL 869230 (W.D. Wis. Feb. 21, 2020) ............................. 19

*Justus v. Kellogg Brown & Root Servs., Inc.*,
    373 F. Supp. 2d 608 (W.D. Va. 2005) .................................................................... 23

*La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*,
    294 Va. 243 (2017) ................................................................................................. 18

*ME2 Productions, Inc. v. Ahmed*,
    289 F. Supp. 3d 760 (W.D. Va. 2018) .............................................................. 13, 17

# TABLE OF AUTHORITIES

**Page(s)**

*Montcalm Pub. Corp. v. Ryan*,
807 F. Supp. 975 (S.D.N.Y. 1992) ........................................................................23

*Oracle Am., Inc. v. Mai*,
No. 10 Civ. 1853, 2014 WL 12588632 (C.D. Cal. Mar. 3, 2014) ..........................18

*Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc*.,
No. 6:09 Civ. 4, 2009 WL 1872535 (W.D. Va. June 30, 2009) (Moon, J.) ....................13, 23

*Philadelphia Indemn. Ins. Co. v. TCM Constr., LLC*,
No. 6:20 Civ. 46, 2021 WL 4527246 (W.D. Va. Oct. 4, 2021) (Moon, J.)......................13, 15

*RBC Bank (USA) v. Epps*,
No. 4:11 Civ. 124, 2012 WL 3308227 (D.S.C. Aug. 13, 2012) .............................22

*Ryan v. Homecomings Fin. Network*,
253 F.3d 778 (4th Cir. 2001) .................................................................................13

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
682 F.3d 292 (4th Cir. 2012) .................................................................................18

*Tweedy v. RCAM Title Loans, LLC*,
611 F. Supp. 2d 603 (W.D. Va. 2009) (Moon, J.) .................................................13

*Wordtech Sys., Inc. v. Integrated Network Sols., Corp.*,
No. 2:04 Civ. 01971, 2009 WL 3246612 (E.D. Cal. Oct. 6, 2009) ........................16

**Statutes**

28 U.S.C. § 1961 .............................................................................................24, 25

42 U.S.C.
§ 1985(3) ................................................................................................................12
§ 1986.....................................................................................................................12

Va. Code Ann.
§ 6.2-302 ................................................................................................................24
§ 8.01-42.1 ..................................................................................................... *passim*

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
    4(e)(1) ................................................................................................................10
    5(a)(2) ................................................................................................................10
    12(b)(6) ..............................................................................................................15
    30(b)(6) ..............................................................................................................12
    55(a) ..................................................................................................................13
    55(b)(2) ........................................................................................................*passim*

Plaintiffs respectfully move this Court under Federal Rule of Civil Procedure 55(b)(2) to enter default judgment against seven Defendants—Andrew Anglin, Moonbase Holdings, LLC ("Moonbase"), East Coast Knights of the KKK ("East Coast Knights"), Fraternal Order of the Alt-Knights ("Alt-Knights"), Augustus Sol Invictus ("Invictus"), the Loyal White Knights of the KKK ("Loyal White Knights"), and the Nationalist Front ("NF") (collectively, the "Defaulted Defendants"), and also for an award of prejudgment interest on their compensatory damages.

## PRELIMINARY STATEMENT

On a harrowing weekend in August 2017, hundreds of neo-Nazis and white supremacists descended upon Charlottesville, Virginia, and engaged in hate-based harassment, intimidation, and violence against racial and religious minorities and their supporters. This "Unite the Right" event ("UTR") was well planned, heavily attended, and shockingly violent. Nine victims of the harassment and violence at UTR sued the leaders of the conspiracy who had planned, organized, and executed the abhorrent event—the Defendants here. Four years later, in November 2021, a jury returned a verdict for Plaintiffs, finding that the 17 Defendants on trial (the "Answering Defendants") had, among other things, engaged in a hate-based civil conspiracy in violation of Virginia law. The jury awarded more than $26 million in compensatory and punitive damages.

Seven of the Defendants against whom Plaintiffs had originally brought suit, however, were not at trial at all. Six of those Defaulted Defendants (Anglin, Moonbase, the East Coast Knights, the Alt-Knights, Invictus, and the Loyal White Knights) did not respond to Plaintiffs' Complaint and failed to participate in any aspect of these proceedings whatsoever. The Clerk of Court entered default against those six Defaulted Defendants in March 2018. ECF No. 268–71, 280. A seventh Defaulted Defendant (the NF) ceased to participate and effectively abandoned the litigation during the course of discovery. The Clerk entered default against the NF in September 2021. ECF No. 1136.

Now that a jury has adjudicated the Answering Defendants' liability and has assessed damages against them, this Court should enter default judgment against the Defaulted Defendants. Under a straightforward application of basic procedural rules, these Defaulted Defendants may not escape liability and damages through their own default. In other words, failing to participate in litigation is not a viable, proper, or even acceptable defense strategy.

*First*, this Court should enter default judgment against all seven Defaulted Defendants on Plaintiffs' Count III—that is, the claim that Defendants conspired in violation of Virginia law, for which the jury found all 17 Answering Defendants liable. Plaintiffs' Complaint contains detailed allegations that the seven Defaulted Defendants were co-conspirators in that same conspiracy, and for purposes of a default-judgment motion, those allegations must be taken as true.

*Second*, this Court should enter default judgment against Defaulted Defendant Invictus on Plaintiffs' Count IV—that is, the claim that Defendants committed racial, religious, or ethnic harassment, intimidation, or violence in violation of Virginia's hate-crime statute, Va. Code § 8.01-42.1, for which the jury found six of the 17 Answering Defendants liable. Plaintiffs' Complaint contains detailed allegations that Defendant Invictus violated the hate-crime law in connection with the August 11 torchlight march and, again, for purposes of a default-judgment motion, those allegations are to be taken as true.

*Third*, this Court should hold that the Defaulted Defendants are jointly and severally liable with the Answering Defendants for the jury's award of damages. This necessarily follows from the finding that the Defaulted and Answering Defendants engaged in a civil conspiracy. Under Virginia law, co-conspirators are jointly and severally liable for damages that arise from the conspiracy and the conspiracy's predicate acts.

*Fourth*, under the settled principle that awards of damages should be consistent across defaulting and answering defendants, the Court should assess the same amounts of punitive

damages against the Defaulted Defendants for Counts III and IV as the jury awarded against the Answering Defendants found liable on those same counts, or an additional $6,200,000 in punitive damages to be allocated as follows:

| Defaulted Defendant | Punitive Damage Award | Associated Count |
|---|---|---|
| Anglin | $500,000 | Count III |
| Moonbase | $1,000,000 | Count III |
| East Coast Knights | $1,000,000 | Count III |
| Alt-Knights | $1,000,000 | Count III |
| Loyal White Knights | $1,000,000 | Count III |
| NF | $1,000,000 | Count III |
| Invictus | $500,000 | Count III |
| Invictus | $200,000 | Count IV |
| **Total** | **$6,200,000** | |

Plaintiffs are not seeking any additional compensatory damages beyond the jury's award, which are again recoverable against all of the Defendants under basic principles of joint and several liability.

*Finally*, Plaintiffs seek an award of prejudgment interest on their compensatory damages.

## BACKGROUND

### I.      Factual Background

Plaintiffs' Complaint contains detailed allegations about the Defaulted Defendants' planning of and participation in the racially motivated harassment and violence at UTR. These allegations, which the Defaulted Defendants are deemed to have admitted as a result of their default, establish the Defaulted Defendants' liability on Count III, the common-law civil conspiracy claim, and Defaulted Defendant Invictus's liability on Count IV, the Virginia hate-

crime statutory claim.[1] *See* ECF 557, Second Am. Compl. ("Compl.") ¶¶ 351–55, 364–67.

### A.    The Defaulted Defendants Are Neo-Nazis and White Supremacists.

*Anglin and Moonbase*. Anglin is a neo-Nazi who, along with Moonbase, founded and operates the *Daily Stormer* (dailystormer.com), which proclaims itself the "world's most genocidal" website, and which was the most visited hate site on the Internet in 2016. Compl. ¶ 25. Anglin and Moonbase have used the *Daily Stormer* "as a hardcore front for the conversion of masses into a pro-white, Anti-Semitic ideology," to "sell[] global white supremacy," and to "make a racist army." *Id.* Followers of Anglin and the *Daily Stormer* ("Stormers") have formed local chapters ("Stormer Book Clubs") through which they conduct firearms training and coordinate violence. *Id.* Anglin has acknowledged: "I actually do want to gas kikes." *Id.* ¶ 201 n.9.

*The East Coast Knights*. The East Coast Knights is an unincorporated association of the Ku Klux Klan. Its mission is to promote white supremacy, and, among other activities, it circulates racist and violent online messages. *Id.* ¶ 43. The East Coast Knights tweeted pictures of burning crosses, an image of lynched black men captioned as "Alabama wind chimes," and a cartoon of a Klansman using two black men hung from trees as a hammock. *Id.*

*Invictus and the Alt-Knights*. Invictus is a white supremacist and second-in-command of the Alt-Knights. *Id.* ¶¶ 40–41. He believes that a violent, second Civil War is necessary to preserve "Western civilization." *Id.* ¶ 40. The Alt-Knights are the self-described "military wing" and "tactical defensive arm" of the Proud Boys (a pro-Western fraternal organization). *Id.* ¶ 41.

*The Loyal White Knights*. The Loyal White Knights are also an unincorporated association of the Ku Klux Klan. *Id.* ¶ 42. They seek to promote white nationalism and supremacy. *Id.*

*The Nationalist Front*. The NF is an umbrella organization comprising white supremacist,

---

[1]    This motion cites the last-filed complaint, which is the Second Amended Complaint ("Complaint"). Because Plaintiffs voluntarily dismissed one cause of action before trial, *see* ECF 106, the jury verdict refers to the Complaint's fifth claim (violating Va. Code § 8.01-42.1) as the fourth claim, and the Complaint's sixth claim (assault and battery) as the fifth claim. *See* ECF 1478. This motion uses the verdict's numbering.

neo-Nazi, and Klan groups, including Answering Defendants National Socialist Movement ("NSM"), Traditionalist Worker Party ("TWP"), League of the South ("LOS"), and Vanguard America ("Vanguard"). *Id.* ¶¶ 39, 195.

      **B.**    **The Defaulted Defendants Planned and Participated in UTR.**

Along with the Answering Defendants, the Defaulted Defendants "all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others in Charlottesville" at UTR. *Id.* ¶ 62.

      **1.**    **Before UTR**

In the months and weeks leading up to UTR, Anglin and Moonbase, through the *Daily Stormer*, urged Stormers to attend UTR and commit racial violence there. *Id.* ¶ 25. Their promotional poster for the event read: "UNITE THE RIGHT: Join [Answering Defendant] Azzmador and the *Daily Stormer* to end Jewish influence in America." *Id.* That invitation was accompanied by a Nazi-like figure wielding a hammer, ready to smash a Jewish star. *Id.* Elsewhere, they advertised UTR as an "earth-shaking day" and "a shot heard around the world," and they demanded "numbers in the streets" of Charlottesville to "secure the existence of our people and future for white children. It is our destiny. Next stop: Charlottesville, VA. Final stop: Auschwitz." *Id.* ¶ 85. They commanded the *Daily Stormer* community to attend: "You must make it there!"; "[w]e need to do everything we can to get as many people to attend this rally as possible" to "put the fear of god into the hearts and minds of our enemies." *Id.* ¶ 91. Indeed, they ordered Stormers to prepare for "war," "be ready to die," and get "in fit and fighting shape" because "[w]e are going to build an invisible empire," and "this summer, the Summer of the Black Sun, is when we are going to bring it all together." *Id.* ¶ 92. As Anglin put it: "There is a [sic] atavistic rage in us, deep in us, that is ready to boil over. There is a craving to return to an age of violence. We want a war." *Id.* ¶ 85.

Anglin and Moonbase also directed, planned, and incited acts of racially motivated violence and harassment at UTR by using a social-media platform called Discord. *Id.* ¶¶ 70, 321, 325. The *Daily Stormer* and the Stormer Book Clubs had private channels on a Discord server called "Charlottesville 2.0," which allowed them to exchange private group communications related to UTR. *Id.* ¶ 76. In addition, Anglin and Moonbase used the *Daily Stormer* to coordinate logistics for UTR, instructing attendees on where to be, when to be there, and what to bring. *Id.* ¶¶ 125, 185. In articles titled "Operational Security for Right Wing Rallies" and "Charlottesville: Why You Must Attend and What to Bring and Not to Bring!," Anglin advised rallygoers to bring tiki torches, pepper spray, flag poles, flags, shields, and weapons. *Id.* ¶¶ 117, 322. Anglin also raised funds, planned for legal support, and arranged travel for rallygoers. *Id.* ¶ 325. In a *Daily Stormer* article published days before UTR, on August 8, 2017, Anglin disputed that UTR was intended for "support of the Lee Monument," insisting instead that it was "a rallying point and battle cry for the rising Alt-Right movement." *Id.* ¶ 61.

Notably, Anglin and Moonbase coordinated with certain Answering Defendants to plan and promote racially motivated violence and harassment at UTR. *Id.* ¶ 62. A writer on Answering Defendant Spencer's website (altright.com) noted that the *Daily Stormer* was "going to bring a lot of young new cadres to the rally," including Answering Defendant Identity Evropa. *Id.* ¶ 91. On Answering Defendant Vanguard America's "Southern Front" Discord server, Answering Defendant Ray told Vanguard members in July 2017, "You don't think the [Stormer Book Clubs] have anything to do with books do you? … Think boots, not books." *Id.* ¶ 92.

The East Coast Knights also exhorted individuals to attend the UTR events: "We will be there! Join us!" *Id.* ¶ 93. And Invictus helped plan UTR for the Alt-Knights. He was featured on a UTR promotional poster, and he ordered his livestream audience to attend the most important "rally" of the year. *Id.* ¶¶ 40, 185, 326. With Answering Defendant Spencer and others, Invictus

co-authored and distributed a "Charlottesville Statement," which was meant to set forth UTR's animating philosophy. *Id.* ¶¶ 40, 84.

The member groups of the NF, meanwhile, coordinated their attendance at UTR as a "joint operation" and jointly planned, directed, and prepared for unlawful acts of harassment, intimidation, and violence. *Id.* ¶ 66. The groups communicated through private communications over Discord's "Charlottesville 2.0" server. *Id.* ¶ 76.

As a prelude to UTR, the Loyal White Knights held a white supremacist event in Charlottesville on July 8, 2017. *Id.* ¶¶ 56–57. Nearly fifty Klansmen marched through the streets of Charlottesville that day, shouting "white power" and carrying signs such as: "Jews are Satan's children." *Id.* ¶ 56. Some wore white Klan robes; many carried guns. *Id.* Plaintiff Romero peacefully counter-protested; she received racist and harassing phone calls from the Klan as a result. *Id.* ¶ 57.

### 2.   August 11, 2017

Defaulted Defendants Invictus, Anglin, Moonbase, and the NF worked with Answering Defendants Kessler, Spencer, Ray, and Cantwell to plan and participate in a torchlit march on the evening of August 11, 2017. *Id.* ¶¶ 142, 327. These Defaulted and Answering Defendants gathered at Nameless Field in Charlottesville, waited until dark, and then marched alongside 300 neo-Nazis and white supremacists from Nameless Field to the Rotunda at the University of Virginia and down to the Jefferson Statue. *Id.* ¶ 157. They deliberately took a circuitous route to threaten, intimidate, and harass as many bystanders as possible. *Id.* Plaintiffs Sines and Romero heard the marchers chanting slogans such as "Jews will not replace us!" and "Blood and soil!" *Id.* ¶ 160.

Upon arriving at the Rotunda, hundreds of marchers charged a group of fewer than thirty counter-protestors, mostly students and community members, including Plaintiffs Willis and Romero, who had locked arms around the Jefferson Statue. *Id.* ¶ 163. The marchers made monkey

noises at the black counter-protesters, including Willis. *Id*. ¶ 164. They then began to strike the counter-protesters, beat them onto the ground, and used their torches as weapons. *Id*. ¶ 167.

Several members of the NF groups participated in the march. *Id.* ¶ 184. Invictus, moreover, was an especially key player. Before the march, he made clear that the march's purpose was to harass and intimidate racial minorities using torches, explaining to a reporter: "Somebody forgot the pitchforks at home, so all we got is torches." *Id.* ¶ 149. He not only participated in the march, but he directed and incited violent attacks, the use of open flames, and the intimidation of minority residents and equal-rights advocates. *Id.* ¶¶ 40, 142, 328. On a live video feed streamed online, Invictus endorsed the mob's actions, calling it a "tight operation" and describing it as "High T!," meaning "high testosterone." *Id.* ¶ 158. That same night, in the march's immediate aftermath, Invictus harassed a friend of Plaintiff Wispelwey. *Id.* ¶ 181. He then approached Wispelwey, who was wearing a clerical collar, until they were inches apart. *Id.* Once Invictus was in Wispelwey's face, Invictus began demanding that Wispelwey state his church denomination. *Id.*

Additionally, Anglin and Moonbase, through the *Daily Stormer*, instructed UTR attendees that they would need torches for a march on the night of August 11, and explained how to obtain them. *Id.* ¶ 145. After the march, the *Daily Stormer* reported: "The 200+ honorable whites marched to the base of the statue as they carried torches reminiscent of the 3rd Reich." *Id.* ¶ 52.

### 3.   August 12, 2017

On August 12, the Defaulted Defendants, the Answering Defendants, and others acting at their direction further executed their plan to carry out racially motivated violence and harassment at UTR. The Defaulted and Answering Defendants used fists, shields, flags, clubs, and other weapons to attack peaceful counter-protesters. *Id.* ¶¶ 208, 211, 213, 221. They broke through peaceful lines of counter-protesters, spat on them, knocked them down, and doused them with foul liquids. *Id.* ¶¶ 208–10, 215, 220. The hateful violence culminated in carnage and death: Answering

Defendant Fields, following the Answering and Defaulted Defendants' common design, plowed his car into a crowd of peaceful counter-protesters, killing one person and injuring numerous others, including Plaintiffs Martin, Alvarado, Baker, and Romero. *Id.* ¶¶ 2, 372.

Although Anglin did not attend the UTR rally because he was in hiding to evade service in another lawsuit, over the course of the morning of August 12, he worked with Moonbase, *Daily Stormer* staff, and Answering Defendant Ray to maintain a contemporaneous live feed on the events in Charlottesville. *Id.* ¶¶ 25, 216. They used the feed to encourage followers to organize in groups, and to incite followers to engage in race-based violence. *Id.* ¶ 216. Among other exhortations, they told followers: "WHITE SHARIA NOW!" and "WE HAVE AN ARMY! THIS IS THE BEGINNING OF A WAR!" *Id.* Overall, hundreds of Stormers participated in the violent events of August 12. *Id.* ¶ 186. And on the evening of August 12, after Fields's attack, Anglin posted the following hateful message: "Roadkill Nights Powered by Dodge. It's going down Saturday Aug. 12th from 11am to 10 pm." *Id.* ¶ 264.

Invictus and members of the Alt-Knights participated in the violent events of August 12, *see id.* ¶ 186, as did members of the NF groups, *see id.* ¶¶ 39, 66, 116, 186, 211, 213, 230. According to Answering Defendant Parrott, several NF groups (Answering Defendants TWP, LOS, NSM, and others) joined together "to help create two shield walls" for "the fight" and charged through lines of counter-protesters. *Id.* ¶¶ 211, 213.

Members of the East Coast Knights participated in the violent events of August 12 as well. *Id.* ¶ 186. After the car attack, their Twitter account "liked" posts that celebrated and mocked the fatal violence: "3 fatalities in #Charlottesville. How many WN's [white nationalists]? NOT 1. Fuck the left, Fuck commies, and all kayaks belong in ovens. Amen."; "At least nobody important got hurt. #Charlottesville"; and "Dirty apes playing in the street gotta learn the hard way #Charlottesville." *Id.* ¶¶ 263, 269.

The Loyal White Knights similarly reveled in the lethal attack, changing their outgoing voicemail message to say: "Nothing makes us more proud at the KKK than when we see white patriots such as James Fields, Jr., age 20, taking his car and running over nine communist anti-fascist, killing one nigger-lover named Heather Heyer. James Fields hail victory. It's men like you that have made the great white race strong and will be strong again." *Id.* ¶ 42. The Grand Dragon for the Loyal White Knights recounted: "I'm sorta glad that them people got hit and I'm glad that girl died. They were a bunch of Communists out there protesting against somebody's freedom of speech, so it doesn't bother me that they got hurt at all." *Id.* ¶ 272.

## II.    Procedural Background

### A.    Plaintiffs Properly Served the Defaulted Defendants.

In October 2017, Plaintiffs commenced this action against 25 Defendants, including the Defaulted Defendants.[2] *See* ECF 1. As relevant here, Plaintiffs asserted a claim that Defendants, including the Defaulted Defendants, had engaged in a civil conspiracy in violation of Virginia law (Count III); and a claim that certain Defendants, including Defaulted Defendant Invictus, had committed racial, religious, or ethnic harassment or violence in violation of Virginia's hate-crime statute (Count IV). *See* Compl. ¶¶ 351–55, 364–67. There is no dispute that Plaintiffs properly served each Defaulted Defendant either directly or through the Secretary of the Commonwealth.[3] *See* Fed. R. Civ. P. 4(e)(1) (providing that proper service is made by following state law for serving summons); ECF 263–66, 918 (describing methods of serving process on the Defaulted Defendants).

---

[2]    One of the 25 Defendants, Michael Peinovich, was later dismissed from the case in the Court's opinion on Defendants' motions to dismiss. *See* ECF 335–36.

[3]    Plaintiffs served the Defaulting Defendants with the First Amended Complaint before entry of default. Because the Second Amended Complaint contained no new claims, and because the allegations against the Defaulting Defendants were the same in both the First and Second Amended Complaints, the Second Amended Complaint did not need to be served on the Defaulting Defendants. *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").

### B.    Six Defaulted Defendants Failed to Appear and Defaulted.

With the exception of the NF, none of the Defaulted Defendants responded to the Complaint or otherwise took any steps to defend against Plaintiffs' claims. On March 14, 2018, the Clerk entered default against the six Defaulted Defendants. *See* ECF 268–71, 280.

### C.    Plaintiffs Survived Motions to Dismiss Filed by the Answering Defendants and Defaulted Defendant NF.

In the fall of 2017, the Answering Defendants (along with Defaulted Defendant NF) filed twelve separate motions to dismiss the complaint. *See* ECF 93, 99, 104 (NF), 111, 113, 115, 117, 136, 138–39, 141, 143. After Plaintiffs filed an amended complaint in January 2018, the Answering Defendants (along with the NF) filed another six motions to dismiss. *See* ECF 201–02, 205 (multiple Defendants, including the NF), 207 (NF), 209, and 212.

Following oral argument in May 2018, the Court largely denied Defendants' motions, dismissing only Plaintiffs' claims against Defendant Michael Peinovich and Plaintiff Hannah Pearce's claims against the moving Defendants, and narrowing the scope of Count IV (except against Fields, who did not move to dismiss) to injuries from the violence at the August 11 torchlight rally. *See* ECF 335–36. In its opinion, the Court held that Plaintiffs had plausibly alleged all of their causes of action. *See, e.g.*, ECF 335 at 47–49 (Counts III & IV). For example, as to the civil conspiracy claim (Count III), the Court held that Plaintiffs had "adequately alleged that Defendants formed a conspiracy to attack black and Jewish counter-protesters, and their supporters, because of racial animus. Those allegations . . . can support the civil conspiracy claims." *Id.* at 49. As to the violation of Virginia's hate-crime statute, Va. Code § 8.01-42.1 (Count IV), the Court held that "the torchlight march was designed to intimidate racial minorities by replicating the Ku Klux Klan's and Nazi's use of torches," and that Plaintiffs Willis and Romero thus "plausibly alleged violations of the hate crime statute." *Id.* at 51.

### D.   The NF Abandoned the Case and Defaulted.

Although the NF was served with the Complaint and participated in early stages of the litigation, including moving to dismiss the Complaint, the NF refused to designate a Rule 30(b)(6) deponent and ultimately abandoned the litigation altogether. *See* ECF 918 at 2–5. Thus, with the consent of the NF, Plaintiffs moved for entry of default against the NF. *See id.* On September 30, 2021, the Court adopted Magistrate Judge Hoppe's Report and Recommendation, granted Plaintiffs' motion for entry of default against the NF, and ordered that further orders would issue entering default and default judgments against the NF. *See* ECF 1136 at 2.

### E.   Plaintiffs Prevailed Against the Answering Defendants at Trial.

The Court held a trial against the Answering Defendants, beginning on October 25, 2021. On November 23, 2021, the jury returned the following verdict:

*Counts I (42 U.S.C. § 1985(3))* and *II (42 U.S.C. § 1986)*: The jury could not reach a verdict and found for neither Plaintiffs nor Answering Defendants. ECF 1478 at 1–2.

*Count III (civil conspiracy)*: The jury found in favor of Plaintiffs, holding all Answering Defendants liable and awarding compensatory damages of $1 to each Plaintiff (except Plaintiffs Sines and Wispelwey) and punitive damages of $500,000 against each individual Defendant and $1 million against each organizational Defendant. *Id.* at 3–5.

*Count IV (violation of Va. Code § 8.01-42.1)*: The jury found against Answering Defendants Cantwell, Kessler, Kline, Ray, and Spencer, and awarded Plaintiffs Romero and Willis compensatory damages of $250,000 each, and punitive damages of $200,000 against each of these five Answering Defendants. *Id.* at 6.

*Count V (assault and battery)*: The jury found against Answering Defendant Fields, awarding Plaintiffs Baker, Blair, Martin, Muñiz, and Romero more than $800,000 in compensatory damages in total, and $6 million in punitive damages. *Id.* at 8.

*Count VI* (intentional infliction of emotional distress): The jury found against Answering Defendant Fields, awarding Plaintiffs Baker, Blair, Martin, Muñiz, and Romero more than $700,000 in compensatory damages in total and $6 million in punitive damages.[4] *Id.* at 9.

## ARGUMENT

### I.   This Court Should Enter Default Judgment Against the Defaulted Defendants.

"After the entry of default" against a defaulting defendant under Rule 55(a), "the non-defaulting party may move the court for 'default judgment'" under Rule 55(b)(2). *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 605 (W.D. Va. 2009) (Moon, J.). "In reviewing a motion for default judgment, the court views all well-pleaded factual allegations in the complaint as true for purposes of liability." *ME2 Productions, Inc. v. Ahmed*, 289 F. Supp. 3d 760, 762 (W.D. Va. 2018). This is because "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

"Default judgment should be entered then if the well-pleaded allegations in the complaint are sufficient to state a claim upon which relief can be granted." *Philadelphia Indemn. Ins. Co. v. TCM Constr., LLC*, No. 6:20 Civ. 46, 2021 WL 4527246, at *1 (W.D. Va. Oct. 4, 2021) (Moon, J.). "Entry of default judgment is committed to the discretion of the court." *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc*., No. 6:09 Civ. 4, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) (Moon, J.). To avoid the risk of "logically inconsistent judgments," the standard practice is for the court to delay entering default judgment against defaulting defendants until it has resolved claims against non-defaulting defendants. *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434 (E.D. Va. 2006).

Here, there is no dispute that the Clerk has properly entered default against the Defaulted Defendants under Rule 55(a). *See* ECF 268–71, 1136. This Court should now enter default

---

[4]   Plaintiffs will address the Answering Defendants' arguments with respect to punitive damages in their opposition to the Answering Defendants' post-trial motions.

judgment against them under Rule 55(b)(2). Specifically, this Court should enter default judgment against all the Defaulted Defendants on Count III, and against Defaulted Defendant Invictus on Count IV. The Complaint's well-pleaded allegations establish the Defaulted Defendants' liability on those Counts, and judgment is especially warranted given the jury verdict against the Answering Defendants on those same counts.

### A.   Default Judgment on Count III Is Warranted Against the Defaulted Defendants.

In Count III, Plaintiffs claim that the Answering and Defaulted Defendants entered into a common-law civil conspiracy in violation of Virginia law. *See* Compl. ¶ 353. To plead a claim for civil conspiracy under Virginia law, a plaintiff must adequately allege (i) that the defendants combined to accomplish by concerted action an unlawful purpose; (ii) that at least one conspirator committed an unlawful act in furtherance of the conspiracy; and (iii) that the plaintiff suffered injury. *See Gelber v. Glock*, 293 Va. 497, 533 (2017); *Almy v. Grisham*, 273 Va. 68, 80 (2007). The defendant "need not be aware of every aspect of the conspiracy," and may be liable "even though he played only a minor part." *See* ECF 1040 (denying Answering Defendant LOS's motion for summary judgment) at 53 n.8 (citation and punctuation omitted).

Here, Plaintiffs' Complaint alleges more than enough facts to establish the Defaulted Defendants' liability for civil conspiracy. Indeed, this Court's own prior holding on the Answering Defendants' and the NF's motions to dismiss powerfully supports that conclusion. In denying (in relevant part) the motions to dismiss, the Court expressly held that Plaintiffs had "adequately alleged" a "conspiracy to commit racial violence" at the events of August 11 and 12, 2017, and a "conspiracy to attack black and Jewish counter-protesters, and their supporters, because of racial animus." *See* ECF 335 at 47–49. The Court further noted that Plaintiffs had "adequately pled specific alleged violations of state tort and statutory law" that could serve as predicate unlawful acts taken in furtherance of the conspiracy. *Id.* at 48. "More specifically, the alleged injuries' to

14

Plaintiffs' persons at the Friday night march, Saturday rally, and car attack would all violate Virginia's hate crime statute," Va. Code § 8.01-42.1, and "constitute assaults and batteries" under Virginia law. *Id.* And the Court noted that the Plaintiffs had "pled that their injuries were caused by these unlawful acts …." *Id.* at 49. Thus, the Court held, Plaintiffs' allegations were sufficient to state a civil conspiracy claim under Rule 12(b)(6). *Id.* There is no reason for the Court to depart from its prior analysis and reach a divergent conclusion now under Rule 55(b)(2). *Compare* ECF 335 at 2 (defining Rule 12(b)(6) standard as whether complaint contains "enough facts to state a claim to relief that is plausible on its face" (citation omitted)), *with Philadelphia Indemn. Ins. Co.*, 2021 WL 4527246, at *1 (defining Rule 55(b)(2) standard as whether "well-pleaded allegations in the complaint are sufficient to state a claim upon which relief can be granted").

Plaintiffs' Complaint is replete with allegations that are specific to the Defaulted Defendants. According to the Complaint's allegations, which must be taken as true on a Rule 55(b)(2) motion, both the Answering Defendants *and* the Defaulted Defendants "all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others in Charlottesville" at UTR. Compl. ¶ 62; *see also supra* pp. 5–10.

Entering default judgment against the Defaulted Defendants finds support not only in the Complaint's allegations, but also in the jury verdict. The jury found all of the Answering Defendants liable for entering a civil conspiracy to commit at least one unlawful act, which according to the jury instructions, could have been: violating Virginia's hate-crime statute (Va. Code § 8.01-42.1); committing assault; or committing battery. *See* ECF 1478 ("Verdict") at 3; ECF 1461 ("Instructions") at 20. The jury also found certain Answering Defendants liable for violating Virginia's hate-crime statute, for committing assault, and for committing battery at UTR. *See* Verdict at 6–8. And the jury awarded Plaintiffs' damages for their injuries arising from the

conspiracy and from the conspiracy's predicate acts. *See* Verdict at 4–8. In other words, the jury necessarily found (i) that a civil conspiracy had been formed; (ii) that at least one co-conspirator had committed an unlawful act in furtherance of the conspiracy; and (iii) that Plaintiffs had suffered injury. Those findings, combined with the well-pleaded allegations that the Defaulted Defendants had entered the same racist conspiracy that the Answering Defendants had entered, should remove any doubt that the Defaulted Defendants' actions, too, satisfy the three elements for civil conspiracy under Virginia law. *See, e.g.*, *E. Reg'l Med. Ctr., Inc. v. Wills*, No. 15 Civ. 0313, 2016 WL 1214739, at *2 (D. Md. Mar. 23, 2016) (entering default judgment because the allegations "clearly establish[ed] liability"); *Wordtech Sys., Inc. v. Integrated Network Sols., Corp.*, No. 2:04 Civ. 01971, 2009 WL 3246612, at *2 (E.D. Cal. Oct. 6, 2009) (entering default judgment where plaintiff brought same claim against defaulted and answering defendants and jury decided claim against answering defendants: "the same result should apply"); *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17 Civ. 808, 2020 WL 10502725, at *3 (W.D. Tex. Aug. 11, 2020) (same).

## B. Default Judgment on Count IV Is Warranted Against Defaulted Defendant Invictus.

In Count IV, Plaintiffs claim that certain Answering Defendants and Defaulted Defendant Invictus violated Virginia's hate-crime statute, Va. Code § 8.01-42.1. *See* Compl. ¶¶ 366–67. A defendant violates this statute by committing "harassment," "intimidation," or "violence" while "motivated by racial, religious, or ethnic animosity." Va. Code Ann. § 8.01-42.1(A). Such a claim is sufficiently pleaded where, for example, the defendant is alleged to have "used racial slurs" against plaintiffs, "physically attacked" plaintiffs because of their race, "harassed" plaintiffs based on racial animus, or subjected plaintiffs to "discriminatory treatment." *See* ECF 335 at 49–50 (citing cases). In denying (in relevant part) the Answering Defendants' and the NF's motions to dismiss, this Court held that Plaintiffs had stated a claim under Va. Code § 8.01-42.1 against

several Answering Defendants who had participated in the torchlight march of August 11, 2017: Kessler, Spencer, Ray, and Cantwell (among others). *Id.* at 50–52. As this Court observed, a "torchlight march" is akin to a "burning cross": both are "intimidating 'in the constitutionally proscribable sense of the word.'" *Id.* at 52 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2002)); *see also id.* at 51 (noting Plaintiffs' allegation that "the torchlight march was designed to intimidate racial minorities by replicating the Ku Klux Klan's and Nazi's use of torches"). Moreover, the jury found several Answering Defendants liable for violating Va. Code § 8.01-42.1—including the Answering Defendants who participated in the torchlight march: Kessler, Spencer, Ray, and Cantwell. *See* Verdict at 6.

Given this Court's holding that Plaintiffs stated a claim under the hate-crime statute against Kessler, Spencer, Ray, and Cantwell based on their participation in the march, and the jury's verdict that these Answering Defendants were liable under the statute for that conduct, this Court should enter default judgment on Count IV against Defaulted Defendant Invictus as well. After all, Invictus engaged in that same conduct and was a central figure in the march. *See supra* pp. 6–7. The Complaint's allegations, combined with the jury verdict, supply more than adequate basis to enter judgment against Invictus on Count IV.

## II.     This Court Should Hold the Defaulted Defendants Liable for Damages.

Upon entering default judgment, "[i]f the facts alleged in the complaint establish liability, then the court must determine the appropriate amount of damages." *ME2 Prods., Inc.*, 289 F. Supp. at 762.

### A.     The Defaulted Defendants Are Jointly and Severally Liable with the Answering Defendants for Damages to Plaintiffs.

As an initial matter, to the extent that any damages arose from the conspiracy or the conspiracy's predicate acts, the Defaulted Defendants should be held jointly and severally liable with the Answering Defendants for the jury's award of damages in this case. This follows from

the Court's entry of default judgment against the Defaulted Defendants on Count III—that is, for civil conspiracy—and from bedrock rules of Virginia civil conspiracy law. Conspirators are "jointly and severally liable for all acts of coconspirators taken in furtherance of the conspiracy." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 312 n.10 (4th Cir. 2012) (citation and punctuation omitted) (applying Virginia law). Conspirators are also "jointly and severally liable for all damage resulting from the conspiracy." *Brin v. A Home Come True, Inc.*, 79 Va. Cir. 33 (2009) (citing *Worrie v. Boze*, 198 Va. 533, 540 (1957), *abrogated on other grounds by Station #2, LLC v. Lynch*, 280 Va. 166, 198–99 (2010)). The Virginia Supreme Court has explained the rationale behind these rules: "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 28 (1993). To capture the relevant wrongdoing, then, "civil conspiracy is a mechanism for spreading liability among coconspirators for damages sustained as a result of an underlying act that is itself wrongful or tortious." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 256 (2017) (citation and punctuation omitted).

Under Virginia's civil conspiracy law, because all of the Defendants are liable for the civil conspiracy in Count III, the Answering and Defaulted Defendants should all be held jointly and severally liable for damages that the jury awarded to Plaintiffs on Count III, the civil conspiracy claim; on Count IV, the Virginia hate-crime statutory claim, which was a predicate unlawful act of the conspiracy under the jury instructions; and on Count V, the claim for assault or battery, which was also a predicate unlawful act of the conspiracy under the jury instructions. *See* Verdict at 3–8; Instructions at 20–21. Such a ruling would comport with the approach taken by other federal courts ruling on Rule 55(b)(2) default-judgment motions in similar circumstances. *See, e.g.*, *Oracle Am., Inc. v. Mai*, No. 10 Civ. 1853, 2014 WL 12588632, at *6 (C.D. Cal. Mar. 3,

2014) (holding that defaulted defendant was jointly and severally liable for jury's $2,725,514.55 award of treble damages against answering defendant because they were "co-conspirators" in RICO and common-law fraud action); *Johnson Health Tech N. Am., Inc. v. Grow Fitness Grp., Inc.*, No. 17 Civ. 834, 2020 WL 869230, at *1 (W.D. Wis. Feb. 21, 2020) (holding that defaulted defendant was jointly and severally liable for jury's $503,795.27 damage award against answering defendant for breach of personal guaranty).

Apportioning damages jointly and severally among all of the conspirators for the damages arising from the conspiracy and predicate acts harmonizes with the jury's verdict. The jury was specifically instructed that "[w]here the same acts cause injury or loss to Plaintiffs under more than one claim, the Plaintiffs may recover only once for that injury or loss." *See* Instructions at 43. Further, courts recognize that when a jury finds defendants liable on multiple claims but awards compensatory damages on less than all claims, it is "reasonable to read" the jury's total damages award to reflect the full measure of damages for all claims. *Cutaia v. Radius Eng'g Int'l*, No. 5:11 Civ. 77, 2014 WL 3359368, at *3 (W.D. Va. July 9, 2014). It therefore stands to reason that the jury decided not to award Plaintiffs substantial compensatory damages on the claim for civil conspiracy *because* the jury decided to award Plaintiffs substantial compensatory damages on the claims for the predicate acts of the conspiracy. *See* Verdict at 3–8.

Moreover, the trial record in this case supports holding the Defaulted Defendants jointly and severally liable with the Answering Defendants for damages. Plaintiffs suffered severe injuries from the civil conspiracy that the Defaulted Defendants entered, and from the unlawful acts that furthered that conspiracy. To illustrate:

*Marcus Martin* is a Black man who was severely and permanently injured at UTR. He was hit directly by Answering Defendant Fields's speeding car when he pushed his then-fiancée out of the path of the car. Mr. Martin's left leg was shattered, his ankle was fractured, and he had ligament

19

damage in his foot. He also had scrapes on his right leg and was later diagnosed with PTSD and a traumatic brain injury. ECF 1419 (Day 13 Trial Tr.) at 12:9-22:1; 24:15-25:2; ECF 1428 (Day 15 Trial Tr.) at 137:16-138:3. As a result of his injuries, Mr. Martin incurred $36,438.08 in medical expenses. PX-3324A. He also had to miss many months of work in 2017 and 2018 and lost $20,472.68 in wages. PX-3324B. Mr. Martin continues to experience pain in his ankle, which is permanent. Day 13 Trial Tr. 26:7-15. His future care will cost $197,973. PX-4021. The jury awarded Mr. Martin a total of $255,975.00 in compensatory damages. *See* Verdict 3–9.

*Marissa Blair* is a Black woman who was marching in the crowd of counter-protestors on August 12 when Answering Defendant Fields plowed his car into the crowd. She was thrown to the sidewalk when her then-fiancée pushed her out of the way of the speeding car. She sustained a large hematoma on her thigh, scrapes and cuts on her arm, and an injury to her ribs. ECF 1407 (Day 11 Trial Tr.) at 70:23-77:13. Ms. Blair also suffered emotional trauma as a result of August 12. Day 11 Trial Tr. 78:13-79:10; 80:4-82:6. Ms. Blair incurred $1,100.00 in medical expenses. PX-3325. The jury awarded Ms. Blair $102,001.00 in compensatory damages. *See* Verdict 3–9.

*Thomas Baker* was struck by Answering Defendant Fields's car on August 12 while counter-protesting in downtown Charlottesville. ECF 1401 (Day 10 Trial Tr.) at 208:11-214:10. Mr. Baker sustained severe injuries, including a concussion, lacerations and bruising all over his body, as well as a torn ligament in his left wrist and a torn labrum in his right hip. Day 10 Trial Tr. 214:15-217:2. As a result, Mr. Baker incurred $66,660.51 in medical expenses. PX-3328A. Due to his injuries, Mr. Baker had to miss work in 2017 and 2018 resulting in $4,446.00 in lost wages. PX-3328B. Mr. Baker continues to experience constant pain in his hip and lower back. Day 10 Trial Tr. 217:19-220:25. He also suffers from panic attacks. Day 10 Trial Tr. 223:20-224:20. Mr. Baker's future care will cost $493,513. PX-4020. The jury awarded him $565,333 in compensatory damages. *See* Verdict 3–9.

*Natalie Romero* was severely and permanently injured at UTR. She was a counter-protestor at the torch march on August 11 and at the rally on August 12. On August 11, she was maced and verbally harassed. ECF 1378 (Day 5 Trial Tr.) at 25:17-30:21. On August 12, she was shoved, spit on, and later hit by Answering Defendant Fields's car. Day 5 Trial Tr. 41:3-44:21; 49:4-55:22. She suffered a skull fracture, a concussion, a traumatic brain injury, a shattered tooth root, a lip laceration, and multiple other cuts and bruises on her body. Day 5 Trial Tr. 55:24-71:17; Day 15 Trial Tr. 137:16-138:3. As a result, she incurred $81,001.24 in medical expenses. PX-3326. These injuries gravely affected her life: she had to take medical leave from UVA for a semester and continues to experience issues with her legs, anxiety, and PTSD. Day 5 Trial Tr. 69:13-15; 72:25-76:5; 77:25-78:21; Day 15 Trial Tr. 137:16-138:3. Her future care will cost $311,430. PX-4023. The jury awarded her $623,431.00 in compensatory damages. *See* Verdict 3–9.

*Devin Willis* is a Black man who counter-protested on August 11 and 12. On August 11, Mr. Willis was verbally harassed, kicked, punched, and pepper sprayed. Day 5 Trial Tr. 172:20-177:11; 180:7-187:2. On August 12, Mr. Willis was again pepper sprayed and knocked down by protestors. Day 5 Trial Tr. 207:13-210:12. After the events of that weekend, Mr. Willis began experiencing anxiety and depression. ECF 1382 (Day 6 Trial Tr.) at 9:24-17:17; Day 15 Trial Tr. 137:16-25. The jury awarded Mr. Willis $250,000.00 in compensatory damages. *See* Verdict 3–9.

*Chelsea Alvarado* was counter-protesting in Charlottesville on August 12 when she was hit and severely injured by Answering Defendant Fields's car. Ms. Alvarado sustained a concussion, a traumatic brain injury, contusions on her upper thighs, a hematoma on her left knee, and cuts and scrapes all over her hands and arms. ECF 1413 (Day 12 Trial Tr.) at 17:18-24:22; Day 15 Trial Tr. 137:16-138:3. Ms. Alvarado was subsequently diagnosed with depression, anxiety, and PTSD. Day 12 Trial Tr. 32:18-34:14; Day 15 Trial Tr. 137:16-25. Ms. Alvarado incurred $26,463.47 in medical expenses. PX-3321A. As a result of her injuries, she also had to

miss almost two months of work. Day 12 Trial Tr. 30:10-32:17. Ms. Alvarado's future care will cost $590,253.61. PX-4022. The jury awarded Ms. Alvarado $1.00 in compensatory damages.[5] *See* Verdict 3–9.

*April Muñiz* was walking with other counter-protestors on August 12 when Answering Defendant Fields ran his car into the crowd. After witnessing other people being hit by the car and the aftermath of the attack, Ms. Muñiz went into shock. ECF 1422 (Day 14 Trial Tr.) at 220:3-225:3. Ms. Muñiz was subsequently diagnosed with Acute Stress Disorder and PTSD. Day 14 Trial Tr. 226:4-228:4. Because of the trauma she experienced, Ms. Muñiz also had to postpone a surgery she had been scheduled to have for a painful pre-existing condition. Day 14 Trial Tr. 228:5-229:5. Ms. Muñiz incurred $7,725.36 in medical expenses. PX-3320A. Additionally, Ms. Muñiz was unable to work for large periods of time between 2017 and 2020, resulting in $204,901.48 in lost wages. PX-3320B. The jury awarded Ms. Muñiz $158,001.00 in compensatory damages. *See* Verdict 3–9.

*Elizabeth Sines* counter-protested the torch march on August 11. Day 15 Trial Tr. 49:25-51:21. She was also in the group of counter-protestors on August 12 when Answering Defendant Fields drove his car into the crowd. Day 15 Trial Tr. 66:3-68:21. As a result of the events of that weekend, Ms. Sines began experiencing panic attacks and anxiety. She was diagnosed with PTSD and major depressive disorder related to her PTSD. Day 15 Trial Tr. 72:1-76:7. The jury awarded Ms. Sines $50,000.00 in compensatory damages. *See* Verdict 3–9.

### B. This Court Should Assess Additional Punitive Damages Against the Defaulted Defendants.

It is well established that "consistent damage awards on the same claim are essential among

---

[5]    In addition to her claims in this case, Ms. Alvarado filed a separate civil action against Answering Defendant Fields in Virginia Circuit Court. ECF 893 at 1–2. On August 28, 2020, Ms. Alvarado settled her Virginia Circuit Court lawsuit and executed a release of her claims against Fields, which led to her voluntarily dismissing her claims against Fields in this action prior to trial. ECF 893, 1053.

joint and several tortfeasors." *RBC Bank (USA) v. Epps*, No. 4:11 Civ. 124, 2012 WL 3308227, at *3 (D.S.C. Aug. 13, 2012) (quoting *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)); *see also Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992) (holding that, when defaulting and answering defendants "acted together in a scheme to defraud," "the amount of damages which plaintiff may recover from defaulting and non-defaulting defendants should not differ"). And punitive damages are awardable when a defendant's conduct is "so willful," "wanton," or "malicious" as to "evidence a conscious disregard of the rights of others." *Justus v. Kellogg Brown & Root Servs., Inc.*, 373 F. Supp. 2d 608, 612 (W.D. Va. 2005) (citation and punctuation omitted).

Moreover, a court may award additional damages on a Rule 55(b)(2) motion for default judgment without an evidentiary hearing where, as here, (i) the record supports the award, and/or (ii) the court is familiar enough with the case, due to a long history of proceedings, to assess the award. *See Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *3 (entering default judgment and awarding $78,036.96 in damages, $4,070.50 in attorneys' fees, and $619.15 in costs without hearing); *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished) (affirming default judgment and awards of $350,000 in punitive damages, and $1,108,708 in compensatory damages, based on complaint); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508–09 (2d Cir. 1991) (affirming default judgment and $1.6 million damages award without hearing, due to lower court's familiarity with case); *Cutcliff v. Reuter*, 791 F.3d 875, 883–84 (8th Cir. 2015) (holding that lower court did not abuse discretion in awarding punitive damages without hearing).

Based on these principles, this Court should assess against the Defaulted Defendants the same amounts of punitive damages that the jury assessed against the Answering Defendants on Counts III and IV. Because the jury assessed $500,000 in punitive damages against each individual

Answering Defendant for Count III, and $1,000,000 in punitive damages against each organizational Answering Defendant for Count III, this Court should assess: $500,000 against Anglin; $1 million against Moonbase; $1 million against the East Coast Knights; $1 million against the Alt-Knights; $1 million against the Loyal White Knights; and $1 million against the NF. In addition, because the jury assessed $200,000 in punitive damages against the Answering Defendants who committed Count IV, the Court should assess $700,000 in punitive damages against Defaulted Defendant Invictus for committing Counts III ($500,000) and IV ($200,000).[6]

## III.   The Court Should Award Plaintiffs Prejudgment Interest with Respect to Compensatory Damages

The jury in this case awarded Plaintiffs a total of $2,004,743 in compensatory damages, allocated as follows:

| Plaintiff | Compensatory Damage Award |
|---|---|
| Chelsea Alvarado | $1 |
| Thomas Baker | $565,333 |
| Marissa Blair | $102,001 |
| Marcus Martin | $255,975 |
| April Muniz | $158,001 |
| Natalie Romero | $623,431 |
| Elizabeth Sines | $50,000 |
| Devin Willis | $250,001 |
| **TOTAL** | **$2,004,743** |

Under Virginia law, a plaintiff is entitled to an award of prejudgment interest on compensatory,

---

[6]   If this Court is inclined not to hold the Defaulted Defendants liable to Plaintiffs for damages already awarded by the jury without convening a hearing, then Plaintiffs alternatively request that this Court convene a hearing for the limited purpose of setting the Defaulted Defendants' damages liability. Plaintiffs also note that they have filed, concurrently with this motion, a motion for fees and costs; the Defaulted Defendants should be held responsible for their share of Plaintiffs' fees and costs as well.

though not on punitive, damages. *See* Va. Code Ann. §§ 8.01-382, 6.2-302; *see also* 28 U.S.C. § 1961. Accordingly, the Court should award Plaintiffs prejudgment interest that began accruing on August 12, 2017 with respect to Plaintiffs' compensatory damages here. Plaintiffs would be happy to submit more detailed calculations of these amounts if it would be helpful to the Court. But in any event, Plaintiffs believe the amount should be at least $540,000.

## CONCLUSION

This Court should enter default judgment against the Defaulted Defendants on Count III; enter default judgment against Defaulted Defendant Invictus on Count IV; hold the Defaulted Defendants jointly and severally liable with the Answering Defendants for Plaintiffs' damages; assess additional punitive damages against the Defaulted Defendants; and award Plaintiffs prejudgment interest on their compensatory damages.

Dated: March 9, 2022

Respectfully submitted,

*/s/ David E. Mills*
David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Alexandra Eber (*pro hac vice*)
Samantha Strauss (*pro hac vice*)
Allegra Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary Anderson (*pro hac vice*)
**COOLEY LLP**
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
aeber@cooley.com
sastrauss@cooley.com
aflamm@cooley.com
gseidita@cooley.com
kjanderson@cooley.com

Of Counsel:

Roberta A. Kaplan (*pro hac vice*)
Julie E. Fink (*pro hac vice*)
Gabrielle E. Tenzer (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
Emily C. Cole (*pro hac vice*)
Alexandra K. Conlon (*pro hac vice*)
**KAPLAN HECKER & FINK LLP**
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
rtolentino@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com

Makiko Hiromi (*pro hac vice*)
Nicholas A. Butto (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
mhiromi@paulweiss.com
nbutto@paulweiss.com

J. Benjamin Rottenborn (VSB 84796)
**WOODS ROGERS PLC**
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

Karen L. Dunn (*pro hac vice*)
Jessica Phillips (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Arpine S. Lawyer (*pro hac vice*)
Matteo Godi (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
kdunn@paulweiss.com
jphillips@paulweiss.com
wisaacson@paulweiss.com
alawyer@paulweiss.com
mgodi@paulweiss.com

Robert T. Cahill (VSB 38562)
**COOLEY LLP**
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Alan Levine (*pro hac vice*)
Philip Bowman (*pro hac vice*)
Amanda L. Liverzani (*pro hac vice*)
Daniel P. Roy, III (*pro hac vice*)
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
aliverzani@cooley.com
droy@cooley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jason Kessler, Nathan Damigo, and Identity Europa, Inc. (Identity Evropa)*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Defendants Matthew Parrott, Traditionalist Worker Party, and Matthew Heimbach*

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
edward@rebrooklaw.com

*Counsel for Defendants Jeff Schoep, National Socialist Movement, Nationalist Front, Matthew Parrott, Traditionalist Worker Party, and Matthew Heimbach*

27

I further certify that on March 9, 2022, I also served the following by electronic mail (or via U.S. mail as signified below):

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

*Via U.S. Mail*
Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959

*/s/ David E. Mills*
David E. Mills (*pro hac vice*)
COOLEY LLP

*Counsel for Plaintiffs*

28