IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH SINES, et al., | |
| *Plaintiffs,* | No. 3:17-cv-00072-NKM |
| v. | JURY TRIAL DEMANDED |
| JASON KESSLER, et al., | |
| *Defendants.* | |

**DEFENDANTS DAVID MATTHEW PARROTT, MATTHEW HEIMBACH, AND TRADITIONALIST WORKER PARTY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

**PRELIMINARY STATEMENT**

Plaintiffs' counsel expended literally tens of millions of dollars in connection with this case, suing a large number of people and entities they knew to have no assets. After the Court reduces the unlawful punitive damages awards, Plaintiffs will ultimately have won an amount from each of the Count III-only defendants which is less than the jurisdictional limit for small claims court in most states.

**I.     Defendants' Approach to This Response**

"Prevailed *against whom?*"

"What fees/costs are reasonable *as to whom?*"

Answering context-intensive questions like these can get tricky in a litigation with nine plaintiffs, twenty-five defendants, six counts (certain of which were brought against certain defendants and not others), a deadlocked jury on the two main counts in this action (counts I and

II)[1], a strange (and also, plainly unlawful) punitive damages situation on count III,[2] and a pretrial Offer of Judgment for $50,000 that will in all likelihood be triggered by Plaintiffs' much less favorable judgment against Defendants (at the very most, only 58 percent of the amount of the Offer).

Tricky, tricky, tricky indeed.

We will assume that Plaintiffs meet the technical definition of "prevailing party" with respect to Count III. Nevertheless, for the reasons that follow, they should ultimately be awarded very little in fees and costs from Defendants.

**II.    Analysis**

>   **1.   Plaintiffs were unsuccessful on two of their three claims against these Defendants, including the two main claims. Accordingly, the Court should, as a threshold matter, reduce the amount of fees/costs awarded against Defendants by two-thirds.**

Counts I and II were obviously the main counts in this litigation. (Indeed, this court only had jurisdiction to hear the case because of counts I and II, which were the only federal claims.) The jury deadlocked on both of those counts, meaning that Plaintiffs' case against these Defendants was actually ***two-thirds unsuccessful,*** and only one-third successful (assuming each of the three claims has equal weight — which they shouldn't, because, once again, counts I and II were really the main counts here).

---

[1]    Counts I and II should be considered the main, or primary, counts in this action, as they were the only counts that supported federal jurisdiction in the first place. *See infra* Part II.

[2]    After being properly reduced to bring it into accord with statutory and constitutional requirements in light of the total compensatory damages on count III being *seven total dollars* (with two plaintiffs receiving literally zero), this should result in a maximum potential judgment amount against each of the moving defendants of $7,291 — again, an amount less than the jurisdictional limit for small claims court in most states. *See infra* Part II.

If you took an examination at school, and you scored somewhere around 33 percent on that examination, would you believe your result on the examination to be a success?[3]

## 2. A further two-ninths reduction is warranted, because two of the nine plaintiffs received zero in compensatory damages from any Defendants on Count III (and thus cannot share in any punitive damages award on that count).

The jury obviously made a very deliberate decision to give two of the Plaintiffs zero dollars on Count III instead of the one dollar it gave to each of the other seven.

This enterprise is *not* "just throw lots of plaintiffs into the case and hope one sticks and there are never any adverse consequences in the reasonable fees/costs analysis if some of them just happen to lose." Fee awards should neither reward nor incentivize such improper attitudes and behavior by trial attorneys.

To be sure, Plaintiffs' stubborn insistence upon including many totally unnecessary parties in the action, as well as its stubborn refusal to settle **with any of them**, caused this litigation to not only become exponentially complex and unwieldy, but also to remain that way throughout its entirety. It was, to a huge extent, a problem of Plaintiffs' counsel's own making — whether that was (a) by their intentional design, or (b) merely as a freak consequence, totally unforeseeable to any of Plaintiffs' batallion of attorneys that are all highly experienced in complex litigation.[4]

---

[3] Plaintffs' counsel would characterize such results as "excellent," apparently. (Pl. Motion at 21.)

[4] *See* Pl. Motion at 1 ("When Plaintiffs filed this lawsuit back in October 2017, they had no way of knowing that it would take them more than four years to obtain a verdict against 17 Defendants . . . .").

3.  **Plaintiffs' refused to settle with any defendant in this case, no matter how tangential they actually were to the case (especially as parties to the litigation, instead of merely nonparty witnesses).**

This is a relevant *Johnson* factor for the Court to consider.

4.  **The Offer of Judgment**

On September 3, 2021, the undersigned served counsel for Plaintiffs (Michael Bloch, Esq.) with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68,[5] in the amount of $50,000 total for the three Defendants. (*See* Offer of Judgment at 1.)[6]

On or around September 9, 2021, Plaintiffs' counsel rejected this offer.[7]

Considering that the Plaintiffs judgment will ultimately be an amount equivalent to (after the legally-required reductions to the punitive damage award[8]) just 58 percent of the Offer of Judgment amount, Plaintiffs' far less favorable results against these Defendants necessitates a further significant reduction to any award. It bars recovery of any costs after this date, and ought to preclude any attorneys fees thereafter as well.

5.  **Re: The "*Johnson* Factors"**

The *Johnson* factors are not a rigid mathematical formula, just a thorough, helpful list of factors to consider when determining what is "reasonable" in this particular context.

---

[5] Declaration of Joshua Smith ("Smith Decl.") ¶ 3. The Smith Declaration is annexed hereto as Exhibit 1.

[6] A true and correct copy of the Offer of Judgment is annexed hereto as Exhibit 2. It is admissible because this is "a proceeding to determine costs." Fed. R. Civ. P. 68(b).

[7] Smith Decl. ¶ 4.

[8] Obviously, unlawful awards by the jury cannot be considered in this analysis, only the final amount of such an award following judicial modification to bring it into conformance with the law.

Plaintiffs sought ***multimillion-dollar judgments*** against each of the Defendants. They regularly, publicly stated, quite explicitly, that their goal in this litigation was to "bankrupt the Nazis." Well, for many of the 25 defendants (including two of three Defendants), they will ultimately have a judgment of, at most, approximately…$7,000. (For TradWorker, just $14,000.)[9] That's a miniscule fraction of what Plaintiffs sought from Defendants. It certainly won't bankrupt them, which is really saying something because most of them had no assets to begin with (also a relevant *Johnson* factor, by the way).

If you sought to get 100 percent on a test, and you only scored just a fraction of one percent, would you consider your results to have been a success?

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith, Esq.
Pennsylvania Bar ID No. 207585
Smith LLC
807 Crane Avenue
Pittsburgh, Pennsylvania 15216
(917) 567-3168 (phone)
joshsmith2020@gmail.com

*Counsel for Defendants David Matthew Parrott, Matthew Heimbach, and Traditionalist Worker Party*

Dated: April 13, 2022

---

[9]    *See, e.g.*, *Rike v. Harris*, No. 1:00CV00164, at *1 (W.D. Va. July 26, 2002) ("It is true that in determining the lodestar amount, 'the most critical factor is the degree of success obtained.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to all counsel of record in the case, as well as all ECF-registered *pro se* parties.

I hereby further certify that on April 13, 2022, I served a copy of the foregoing on the following non-ECF *pro se* parties, via electronic mail, as follows:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Robert "Azzmador" Ray
azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com

I hereby further certify that on April 13, 2022, I served a copy of the foregoing on the following non-ECF *pro se* party, via first-class mail, as follows:

Christopher Cantwell (00991-509)
USP Marion
U.S. Penitentiary
P.O. Box 1000
Marion, IL 62959

/s/ Joshua Smith
Joshua Smith, Esq.
Pennsylvania Bar ID No. 207585
Smith LLC
807 Crane Avenue
Pittsburgh, Pennsylvania 15216
(917) 567-3168 (phone)
joshsmith2020@gmail.com

*Counsel for Defendants David Matthew Parrott, Matthew Heimbach, and Traditionalist Worker Party*