## IN THE UNITED STAES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **ELIZABETH SINES ET AL.** | : | Case No.  3:17-CV-00072 |
| | : | |
| Plaintiffs, | : | (Judge MOON) |
| | : | (Magistrate Judge HOPPE) |
| v. | : | |
| | : | |
| **JASON KESSLER ET AL.** | : | |
| | : | **DEFENDANTS' REPLY BRIEF** |
| Defendants. | : | |
| | : | |
| | : | |

Defendants Jason Kessler, Nathan Damigo, and Identity Evropa ("moving Defendants"), through counsel, file the following reply to plaintiffs' *Omnibus Response to Post-Trial Motions* ECF 1574.

## I. <u>Conspiracy Claims:Foreseeability/Ratification/Scope of Agreement</u>
## <u>Law</u>

Under Virginia law, a sexual assault on a newspaper delivery boy was not foreseeable even though there had been three other sexual assaults on delivery boys for that same paper within the five years immediately preceding the relevant assault. <u>*A.H. v. Rockingham Publ'g Co.* 255 Va. 216, at summary (1998).</u>

Furthermore, a $20 million plaintiff's verdict was thrown out when the Court found that even though the accident in question was "undoubtedly foreseeable" it still was not legally foreseeable since defendant was not charged with protecting against "every conceivably foreseeable accident, without regard to common sense..." <u>*Holiday Motor Corp. v. Walters*, 292 Va. 461, 478 (2016.)</u>

1

The federal law regarding a *42 U.S.C. 1985* conspiracy and foreseeability is substantially similar and even more explicit. "[T]here are two substantive limitations on a defendant's responsibility for acts undertaken by co-conspirators: Those acts must be 'in furtherance of' the same conspiracy to which the defendant has agreed, and they must be reasonably foreseeable to the defendant." *United States v. Childress, 58 F.3d 693, 722, 313 U.S. App. D.C. 133 (D.C. Cir. 1995);* see also *United States v. Saro, 24 F.3d 283, 288, 306 U.S. App. D.C. 277 (D.C. Cir. 1994)* ("The extent of a defendant's vicarious liability under conspiracy law is always determined by the scope of his agreement with his co-conspirators. Mere foreseeability is not enough."). *Bowie v. Maddox 642 F. 3d 1122, 1132 (D.C. Cir. 2011.)*

Turning to "ratification" law, *Claiborne Hardware v. NAACP, 458 U.S. 886 (1982)* opposes plaintiffs' argument regarding ratification. *Claiborne* requires "specific intent" in order to impose liability for the acts of another. *id. at 919, 927.* Indeed, *Claiborne* uses some variation of "specific intent" no less than nine times. *id. at 920, 925, 930, 932.* ("liability permissible only for "conduct of which [organizer] had knowledge and specifically ratified"). *Id. at 930*.

The *Claiborne* court considered a case where a man named Charles Evers was in charge of an NAACP contingent holding a rally. Evers was among those sued for economic damage incurred by businesses subject to a boycott called for by Evers and the NAACP. The plaintiffs in *Claiborne* argued that Evers could be liable for their damages as someone "who participates in the decision making functions of an enterprise, with full knowledge of the tactics by which the enterprise is being conducted, manifests his assent to those tactics...." *id. at 897 n. 20*.

2

The _Claiborne_ court did not permit liability to attach to Evers even though it accepted evidence that "violence contributed to the success of the boycott," _id. at 933_, that Evers himself advocated that persons not cooperating in the boycott have their necks broken, _id. at 902_, and that NAACP leaders "certainly foresaw--and directly intended--... [the] economic injur[ies]" for which they were sued, _id. at 914._

_Claiborne's_ holding allows for liability but requires not merely wrongful intent, but specific intent: "A finding that [a leader] authorized, directed, or ratified **specific** tortious activity would justify holding him responsible for the consequences of that activity." _id. at 927._ (emphasis added.)

### **Argument as to Ratification**

Plaintiffs' _Response_ (ECF 1574) contains a section regarding Identity Evropa's liability wherein plaintiffs' assert "The Court found prior to trial that Kline conspired with at least one co-conspirator, that he was motivated by racial animus, that the violence of August 12 was foreseeable to him, and that he ratified the violence that occurred." ECF 1574 at PageID 30413-30414.

Plaintiffs then proceed to assert that "At no point did Damigo testify that Kline had acted outside of the scope of authority that Damigo gave Kline when he planned Charlottesville 2.0 on behalf of IE and engaged in civil conspiracy in violation of Virginia state law." id. at PageID 30414. This is curious as at no time during trial was any defendant under any obligation to prove anything. Additionally, the court limited it's pre-trial findings and sanctions regarding Mr. Kline to Mr. Kline himself and not to any other party in partly granting a _motion in limine_. see ECF 1350 and Final Jury Instruction #27 ECF 1457 at PageID 26952-26955.

Plaintiffs' effort regarding ratification is similarly off the mark. Plaintiffs reeled off numerous quotes that allegedly show ratification of tortious conduct by IE members. ECF 1574 at PageID 30413-30415. However, the *Claiborne* standard requires ratification by a "leader" not members complimenting a leader. *458 US at 927.* That defect aside, the various quotes highlighted by plaintiffs all lack the requisite *specificity.* Phrases such "Thanks for everything you did for our people this weekend @Fashy Haircut." (ECF1574 PageID 30415) don't come anywhere near the specificity requirement in *Claiborne.*

Plaintiffs also fail as to Jason Kessler allegedly ratifying the conduct of James Fields. They cite to two tweets and a handful of calls to Fields while he was held in jail awaiting trial. ECF 1574 at PageID 30417-18. A careful reading of the tweets demonstrates they don't quite meet the *Claiborne* standard.

While it is true they have a type of specificity in that there is no doubt Mr. Kessler is discussing the Fields car attack in both tweets, what the tweets lack is any actual approval of what Fields did.  Specifically, as to PX-1448, Mr. Kessler testified that he "didn't have full information" at the time he made that tweet. (Trial Day 16 at 153:11.) Moreover, PX-1448 never says that Mr. Kessler approved of Fields's actions, it merely asserted that he didn't care about the result of an action that Mr. Kessler never said he approved of. *Claiborne* requires ratification of "specific tortious *activity*" (emphasis added), not merely of activity's results. If it were otherwise the *Claiborne* court would not have approved of an organizer being involved with a boycott that violence or threats of violence helped succeed where the defendant had "directly intended" *the results* of the violent boycott. *458 at 902, 933.*

Perhaps realizing their miss with PX-1448 the plaintiffs, at trial, moved on to PX 2016A. This tweet has Mr. Kessler stating that a murder victim was "100% at fault" as she

failed to get out of the street during a "state of emergency". The contents of this tweet indicate that Mr. Kessler was still laboring under a misapprehension of the facts that established that James Fields did indeed commit murder on August 12, 2017. In addition, Mr. Kessler speaks of "fault" in this tweet. People do not ordinarily assign fault where an act is not wrongful. Thus, upon close reading, PX 2016A actually has Kessler implying he believes that Fields actions were wrongful but not subject to sanction by the government. This too fails to meet the _Claiborne_ standard.

Plaintiffs also allege that Kessler having a few phone calls with James Fields after Fields was incarcerated establishes ratification of Fields's actions. (ECF 1574 at PageID 30417-18.). But the trial record does not establish whether these contacts were publicized or what the contents of these contacts were. Moreover, it affirmatively establishes that Mr. Kessler broke off contact after just a few calls. (Trial Day 16 at 157-158.)

Thus, the argument from calling an incarcerated Fields is structurally incapable of proving ratification since nobody but Fields knew Kessler did it as far as the evidence at trial is concerned. It also implies that Kessler broke off contact and never again defended Fields after a certain point. This fact further implies that Kessler eventually came into possession of information that showed the truth of what James Fields did and that Mr. Kessler thereafter, as far as the trial evidence shows, did not comment further about the issue.

Plaintiffs have presented no case, nor are defendants aware of one, indicating that clandestinely calling an accused felon a few times, with no information on the contents of those calls, meets the _Claiborne_ standard as to ratification.

**Argument as to Foreseeability/scope of Agreement**

     If a car having a roll-over accident is not legally foreseeable, and if sexual assaults on a publication's delivery boys despite three prior incidents of exactly that is not legally foreseeable under Virginia law, then how can it be foreseeable to the moving defendants that a rally attendee would take alt right rhetoric seriously and drive his car into pedestrians, a thing that had literally never happened before at any defendant connected event? Moving defendants assert that it simply cannot be so as a matter of law.

     Moreover, it makes little sense to talk of "substantive limitations...for acts undertaken by co-conspirators" if any violent act by any co-conspirator will do. As the federal foreseeability standard is at least as strict as Virginia's it seems that the federal law also should find the James Fields car attack not foreseeable. Even if was foreseeable that alone is insufficient under federal law. _Bowie 642 F. 3d at 1132._   The James Fields car attack on a group of pedestrians was well outside the scope of anything the moving Defendants can credibly be said to have agreed to. Therefore, a jury cannot lawfully have found otherwise.

     Additionally the Court has already found that plaintiffs are not permitted to "label everyone at the rally.....who disagreed with them as co-conspirators" nor can plaintiffs treat "anonymous individuals who shouted antisemitic slogans" as co-conspirators. _Sines v. Kessler 324 F. Supp. 3d 765, 784 (W.D. Va. 2018.)_ It follows that plaintiffs cannot use the activity of anonymous participants throwing things or pushing and shoving anonymous counter-protestors as co-conspirators either.

## II. August 11 Torch March/Jason Kessler

In order to succeed on their August 11 torch march claims plaintiffs Willis and Romero were required to prove that Mr. Kessler, for racial reasons, threw fuel or torches at them and this conduct was not accidental but directed at them. Mr. Kessler had to have done this himself as this cause of action is not a conspiracy claim. *Sines at 800-801.*

The problem for these plaintiffs is that proof of their allegations against Mr. Kessler never materialized at trial. Plaintiffs' argument on this point is contained entirely at ECF 1574 PageID 30420-30421. Therein, Plaintiffs first argue that Kessler knew that the chants at the torch march were "offensive and intimidating". This is true and establishes the required "for racial reasons" element.

Next, Plaintiffs claim that Kessler was "at the forefront leading the group of white supremacists hundreds deep as they surrounded Mr. Willis and Ms. Romero (and other counterprotesters), pinned them against the statue, and refused to let them leave (PX-2500) as a "sign of dominance". id. at 30420. This is factually false. As proof plaintiffs cite to PX-2500, PX-2082, and certain trial testimony. [1]

PX-2500 shows social media posts by defendant Richard Spencer, including retweeting Mr. Kessler.[2] It is thus an admission by defendant Spencer, not Kessler. Moreover, it does not show Kessler or claim that Kessler led anybody to surround the plaintiffs or interact with plaintiffs in any way.

PX-2082 is a tweet by Mr. Kessler. The tweet shows a picture of torch marchers around the relevant statue. Mr. Kessler calls the picture "an incredible moment for white people." What it does not show is Mr. Kessler interacting in any way with either plaintiff or

---

[1] Trial Day 9 156:9-12.
[2] Mr. Kessler's tweet is PX-2082

any other counter-protestor. In fact, it doesn't show Mr. Kessler in the picture at all. It also does not show anybody throwing anything or fighting with plaintiffs or any counter-protestor.

The *Day 9 trial testimony* contains an answer where the witness admits that he didn't let counter-protestors leave the statue and that he did that as "a sign of dominance". The witness is not Mr. Kessler, however. It is defendant Richard Spencer. *Trial Day 9, 156:9-12.*

Having failed up to this point, the plaintiffs again attempt a ratification argument. To this end they direct the court's attention to PX-1458N and PX-2348. Exhibit 1458N is a text message from Mr. Kessler to defendant Elliott Kline wherein Mr. Kessler tells Kline "And thanks. You've done excellent work too. Let's knock this out of the park tomorrow." This exhibit is not anywhere close to meeting the *Claiborne* specificity standard. It is true the text message was sent after the torchlight march. However, it is unclear what Mr. Kessler was referring to in the text. And it is certain that there is no reference to physical assaults or restriction of movements of the plaintiffs in the text.

PX-2348 is a picture showing a large group of torch marchers. Mr. Kessler is visible in the picture holding a torch. What the picture does not show is the relevant statue, the plaintiffs, nor any other counterprotestor. It doesn't even clarify whether Mr. Kessler was at the head of the group or somewhere in the mix.

As a final effort the plaintiffs claim that the Final Jury Instructions "at 24" allowed the jury to "[take] into account Kessler's actions "before, during, and after the events" and his "presence at the scene of the events,". ECF 1574 at PageID 30421.  The Final Jury Instructions are located at ECF 1461. The quoted language does indeed appear at time stamp page 24. However, the language is in a section titled "membership in a conspiracy". However useful that language is to examining the conspiracy claims, it is completely useless as to the

claims of plaintiffs Willis and Romero against Mr. Kessler as to the non-conspiracy fourth claim on the verdict form.

In conclusion, moving defendants are entitled to a directed verdict in their favor and against all plaintiffs as to counts 1, 2, 3 and 4 of the Verdict Form.

Respectfully Submitted,

s/James E. Kolenich
James E. Kolenich
KOLENICH LAW OFFICE
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
(513) 444-2150
JEK318@gmail.com

s/Elmer Woodard
Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

*Trial Attorneys for Jason Kessler,Nathan Damigo, and Identity Evropa*

## CERTIFICATE OF SERVICE

I certify the above was served on MAY 5, 2022 on all ECF participants and that parties requiring service by other means were served as follows:

Robert Ray
*azzmador@gmail.com*

Vanguard America c/o Dillon Hopper
*dillon_hopper@protonmail.com*

Elliott Kline *eli.f.mosley@gmail.com*
*deplorabletruth@gmail.com*

Christopher Cantwell

*#00991-509*
*USP Marion*
*4500 Prison*
*Rd.*
*PO Box 2000*
*Marion IL 62959*

Respectfully Submitted,

s/    James E. Kolenich