UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ELIZABETH SINES, et. al

    Plaintiffs,

v.

JASON KESSLER, et. al

    Defendants.

Civil Action No. 3:17-cv-00072-NKM

**DEFENDANT JEFF SCHOEP'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS CHALLENGING THE PUNITIVE DAMAGES AWARD**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………1

LEGAL ARGUMENT……………………………………………………………...1

    I.    Virginia's limit applies to any punitive damage award in excess of $350,000..1

    II.    Virginia's Statutory Cap Applies To 'Any Action' As A Whole……………...3

    III.    Punitive Damages Award Is Fundamentally Unfair And Against Defendant's Due Process………………………………………………………………...4

    IV.    The Punitive Damages Award Exceeds The Level Necessary To Properly Punish And Deter …………………………………………………………….5

CONCLUSION…………………………………………………………………….6

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    Page(s)

*PBM Products, Inc. v. Mead Johnson & Co.*,
   204 F.R.D. 71 (E.D. Va. 2001)......................................................................................1

*Wackenhut Applied Technologies v. Sygnetron*,
   979 F.2d 980 (4th Cir. 1992).........................................................................................2

*Bray v. Brown,*
   521 S.E.2d 526, 527-28 (Va. 1999)................................................................................2

*Al-Abood v. Elshamari,*
   217 F.3d 225 (4th Cir. 2000)..........................................................................................2

*Pacific Mutual Life Insurance Co. v. Haslip*,
   499 U.S. 1 (1991)............................................................................................................4

*In re Exxon Valdez,*
   236 F. Supp. 2d 1043 (D. Alaska 2002)..........................................................................4

*Honda Motor Co. v. Oberg,*
   512 U.S. 415 (1994).........................................................................................................4

*Cooper Industries v. Leatherman Tool Group,*
   532 U.S. 424 (2001).........................................................................................................4

*Ulbrich v. Groth*,
   310 Conn. 375 (Conn. 2013)...........................................................................................5

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).........................................................................................................5

*Brink's Inc. v. City of New York*,
   546 F. Supp. 403, 413 (S.D.N.Y. 1982)..........................................................................6

**Statutes**

Virginia Code § 8.01-38.1 ………………………………………………………….passim

**Rules**

Fed. R. Civ. P. 59……………………………………………………………………….1

COMES NOW, Defendant Jeff Schoep, by and through counsel, respectfully submits this Reply in Support of his Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e), ECF 1542, in reply to Plaintiffs' Response in Opposition, ECF 1572.

## PRELIMINARY STATEMENT

The United States Supreme Court has held that protests, no matter how distasteful, outrageous, or offensive to the senses of the public at large or individual sections of society, are protected under the First Amendment[1]. It is only in very narrow places when a protest escalates into violence that it leaves its constitutional safe harbor and abandons its protection. This event, no matter how distasteful to the individuals who were opposed to it, does not lose its constitutional protection simply on those grounds. Therefore, it must be remembered when taken into consideration what this event was, there is no dispute that this was actually a protest. There may have been violent elements which do not get afforded constitutional protections, but this substantive event remained a constitutionally protected protest.

Here, the First Amendment provides substantial protection to Defendant Schoep. Where the jury found Defendant Schoep was not responsible for any actual damages[2] imposing such an outrageous punitive damages award would not only infringe upon his First Amendment Rights, but is fundamentally unfair and against Due Process. Additionally, under Virginia Code § 8.01-32.1 any punitive damage award in excess of $350,000 must be reduced[3].

## LEGAL ARGUMENT

**I. Virginia's limit applies to any punitive damage award in excess of $350,000**

"Virginia's limit will apply to any punitive damage award in excess of $350,000." VA. CODE ANN. § 8.01-38.1 (Michie 2000)." *PBM Products, Inc. v. Mead Johnson & Co.*, 204 F.R.D. 71, 74 (E.D. Va. 2001). Section 8.01-38.1 of the Virginia Code limits the amount of punitive damages that may be awarded in any action. Virginia Code § 8.01-32.1 provides:

---

[1] *See* ECF 1572 at 23. Plaintiffs respond to First Amendment argument
[2] Verdict, ECF 1478 at 3-5.
[3] "However, if a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award and enter judgment for such damages in the maximum amount provided by this section." Va. Code § 8.01-32.1

1

> In any action accruing on or after July 1, 1988, including an action for medical malpractice under Chapter 21.1 (§ 8.01-581.1 et seq.), the total amount awarded for punitive damages against all defendants found to be liable shall be determined by the trier of fact. In no event shall the total amount awarded for punitive damages exceed $350,000. The jury shall not be advised of the limitation prescribed by this section. However, if a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award and enter judgment for such damages in the maximum amount provided by this section.

Plaintiffs contend Virginia's punitive damages "cap should not apply in the extraordinary circumstances presented here."[4] Arguing that Virginia's statutory cap on punitive damages[5] is not applicable because the General Assembly "could not have contemplated, let alone intended, for this punitive-damages cap to apply" to "a multi-plaintiff civil rights lawsuit alleging a conspiracy." Plaintiffs insist "the General Assembly did not intend (and could not have intended) to limit punitive damages for the claims at issue here."

Any argument that the statutory cap should not be extended to Plaintiffs' claims is meritless. "There is no definitional language indicating that the term "any action" is limited to unintentional tort actions." *Wackenhut Applied Technologies v. Sygnetron*, 979 F.2d 980, 984 (4th Cir. 1992). The decision in *Wackenhut* makes it abundantly clear that "punitive damages for intentional acts are not eradicated by the cap, rather, they are limited so as to avoid excessive penalties." *Id.* at 985.

## II. Virginia's Statutory Cap Applies To 'Any Action' As A Whole

"We find no ambiguity in the instant statute and conclude that its plain meaning dictates that the cap on punitive damage awards applies to the action as a whole, and not to each defendant." See *Bray v. Brown,* 521 S.E.2d 526, 527-28 (Va. 1999) (stating that courts in Virginia apply the plain meaning of an unambiguous statute). "Giving this language its plain meaning, the statute mandates that the entirety of the punitive damages awarded in the action amount to no more than $350,000." *Al-Abood v. Elshamari*, 217 F.3d 225, 237 (4th Cir. 2000).

Plaintiffs contend the statutory context of Va. Code § 8.01-38.1 supports the conclusion

---

[4] *See* ECF 1572 at 6.
[5] Va. Code § 8.01-38.1

2

that in a multi-plaintiff lawsuit the cap on punitive damages applies to the individual "action" of *each plaintiff separately* and not to the overall lawsuit. *See* ECF 1572 at 9-10. Arguing that by adopting a per plaintiff application of the cap the punitive damages award would then be constitutional. This theory rests entirely on an aggregated approach holding defendants as a class liable for all claims[6] (except Count VI). *See* ECF 1154 at 18. Arguing that the jury was instructed to avoid awarding a double recovery,[7] and therefore, a sensible conclusion would be the "jury decided not to award Plaintiffs substantial compensatory damages on the claim for civil conspiracy because" they "decided to award Plaintiffs substantial compensatory damages on the claims for the predicate acts of the conspiracy." *See* ECF 1772 at 25. However, *only* Count I-III were brought against all defendants as a class. Plaintiffs' Second Amended Complaint, ECF 557, plainly differentiates which causes of action are brought against the defendants as a class and those brought as standalone claims against specified defendants. *See* ECF 557 at 101-108. Likewise, the Final Jury Instructions, ECF 1461, and the Verdict, ECF 1478, were both unambiguous. We must assume the jury followed and understood the instructions as read to them. Therefore we must take that at face value, without personal inference or personal judgment as to the reasons behind why the jury came to its conclusions and made its decisions. As such, an award from the jury must be accepted as being reached in proper fashion and we must not impose our own gloss on their decisions.

### III. Punitive Damages Award Is Fundamentally Unfair And Against Defendant Schoep's Due Process

The punitive damages award remains fundamentally unfair and against Due Process for Defendant Schoep, found liable under Count III only. *See* Verdict at 3-5. If the jury had found Defendant Schoep liable on Counts I-III, which were the only claims brought against the defendants as a class,[8] then his liability would be the aggregate compensatory damages (across Claims I-III) against the aggregate punitive damages (across Claims I-III). However, the jury

---

[6] Plaintiffs' voluntarily dismissed Claim IV of the Second Amended Complaint, *see* ECF 1291, the claim/count numbers in the jury verdict do not align with those in the complaint. The claim numbers from the jury verdict, ECF 1478, are used herein.
[7] *See* Final Jury Instructions at 43.
[8] Each cause of action in Plaintiffs Second Amended Complaint specifically states which defendant or defendants the count is brought against. *See* Second Amended Complaint, ECF 557 at 101-108.

found Defendant Schoep liable for *only* Count III. Therefore, the relevant ratio of punitive to compensatory damages would be that of Count III alone.[9] Plaintiffs cannot now, only after failing to prove Count I and Count II, attempt to hold Defendant Schoep liable for claims he was not sued for.

The United States Supreme Court's decisions establish that the Due Process Clause constrains the amount of punitive damages and requires judicial review of a jury's punitive damages award. The judicial review mandated by the Due Process Clause has its roots in the common-law method courts have employed when reviewing punitive damages awards for evidence of passion and prejudice. Consistent with that traditional method, the Supreme Court's cases make clear that the purpose of the judicial review of punitive damages awards mandated by the Due Process Clause is to determine whether such awards are tainted by juries' irrationality, arbitrariness, bias, or other improper motives. For that reason, the Court has held that judicial review is a necessary procedural requirement for the constitutionality of punitive damages.[10] The purpose of the review of punitive damages awards mandated by the Due Process Clause is not simply to ensure that the defendant has received notice of sanctionable conduct and the severity of the possible punishment. Rather, the fundamental purpose of due process review is to ensure that punitive damages awards are the product of the jury's "rational decisionmaking" and are not tainted by passion, partiality or prejudice. (*Pacific Mut. Life Ins. Co. v. Haslip* 499 U.S. 1, 18, 20 (1991).) If Plaintiffs' grotesque and unreasonable demands were left unchecked it would be an affront to due process.

### IV. The Punitive Damages Exceeds The Level Necessary To Properly Punish And Deter

"As the name implies, punitive damages are intended to punish and deter." *In re Exxon Valdez,* 236 F. Supp. 2d 1043, 1065 (D. Alaska 2002). Consideration of the particular facts and

---

[9] A ratio of 500,000 to 1. *See* Verdict, ECF 1478 at 3-5.
[10] See *Honda Motor Co. v. Oberg,* 512 U.S. 415, 434–35 (1994) ("such a decision [the 'exaction of exemplary damages'] should not be committed to the unreviewable discretion of a jury"); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 20–23 (1991) (judicial review was critical component in upholding constitutionality of punitive-damage award); *Cooper Industries*, 532 U.S. 424, 437 (judicial review does not violate the Seventh Amendment "[b]ecause the jury's award of punitive damages does not constitute a finding of 'fact').

circumstances of the case at bar must be given in order to determine the proper amount of punitive damages to award[11] and while the nature of a defendant's conduct is germane to the award, even outrageous conduct will not support an oppressive or patently excessive award.[12] Because the quintessence of punitive damages is to deter future misconduct by a defendant, the key question now before the Court is whether the amount of damages exceeds the level necessary to properly punish and deter. Evidence of Defendant Schoep's renunciation of white supremacy and his work to actively counter that ideology has been introduced to the Court through testimony and filings.[13] Since August of 2019, Defendant Schoep has actively been speaking out against racism, white supremacy, hate and violence. Defendant Schoep has spoken at numerous events focusing on countering radical extremism including: the European Union sponsored iCare4all's Int'l Symposium on Radicalisation and Extremism[14]; the California Legislative Assembly Select Committee on the State of Hate[15], a keynote speaker at the 6th Annual TLO conference for the Joint Regional Intelligence Center (JRIC)[16], panelist for Office of Juvenile Justice and Delinquency Prevention (OJJDP) webinar series: "An Introduction to Youth Hate Crimes and Hate Groups for Juvenile Justice Professionals Webinar Series". In 2020, Defendant Schoep founded Beyond Barriers, a 501(c)(3) nonprofit organization dedicated to a world devoid of extremism, radicalized organizations, hate, violence, coercive and violent ideologies.[17] Currently, he continues to work as an extremism consultant with the Simon Wiesenthal Center[18] and RAND Corporation[19], and the OJJDP.

"The court may intervene and set aside a verdict when the amount of the award is so excessive that it shocks the judicial conscience or it appears that it is the result of passion and

---

[11] *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).
[12] *See Ulbrich v. Groth*, 310 Conn. 375 (Conn. 2013)
[13] *See* ECF 694, ECF 1267, ECF 1527 (attached hereto as Exhibit A), ECF 1542.
[14] Exhibit B
[15] https://www.assembly.ca.gov/media/assembly-select-committee-state-hate-20191029/video
[16] *See* Exhibit C
[17] Beyond Barriers is a federally recognized 501(c)(3) nonprofit organization in good standing. https://beyondbarriersusa.org
[18] *See* Exhibit A at 6, 8. (ECF 1527)
[19] Chandra, Anita, Brian Michael Jenkins, Ryan Andrew Brown, Alina I. Palimaru, Amarnath Amarasingam, Myrieme Churchill, Chris Buckley, and Jeff Schoep, *Exiting Extremism: What Binds People to Extremist Groups and How Organizations Help Them Leave*, Santa Monica, Calif.: RAND Corporation, PT-A1071-1, 2021. As of May 04, 2022: https://www.rand.org/pubs/presentations/PTA1071-1.html.

prejudice." *Brink's Inc. v. City of New York*, 546 F. Supp. 403, 413 (S.D.N.Y. 1982). It has been well established that Defendant Schoep has not only renounced his supremacist/nationalist ideology, but now dedicates his life to work towards deradicalizing those who remain in these movements. Defendant Schoep is and continues to be the ONLY defendant in this case who has not only chosen to turn his life around but has set up a 501(c)(3) organization for the sole purposes of intervention, prevention and countering violent extremism.[20] While this change does not deter from a liability verdict, it does however prove that there is no need for deterrence of prior behavior.

## CONCLUSION

Affording Plaintiffs an award of punitive damages would countermand the jury's verdict and allow Plaintiff compensation when none is due. The purpose of awarding punitive damages is to protect the public, punish the defendant, *and* to deter the action in the future, not to compensate the plaintiff.[21] Here, Plaintiffs ask this Court for impermissible relief: for the Court to substitute an excessive award of punitive damages for its failure to prove compensatory damages. Plaintiffs should not be permitted to use an award of punitive damages as a backdoor to compensation it failed to prove.

For the foregoing reasons, the Court must reduce the total punitive damage award to no more than $350,000 and the award of punitive damages against Defendant Schoep, if such an award is justified, should be *de minimis*.

Date: May 5, 2022

Respectfully Submitted,

/s/ W. Edward ReBrook, IV
W. Edward ReBrook, IV (VSB 84719) The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015
Mobile: 571.215.9006

---

[20] *See* Exhibit A (Petition for Reconsideration, ECF 1527) at 2
[21] *See Zedd v. Jenkins,* 194 Va. 704, 707 (Va. 1953).

6

Email: <u>Edward@ReBrookLaw.com</u>

7

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2022, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to:

Roberta A. Kaplan
Julie E. Fink *(pro hac vice)*
Gabrielle E. Tenzer *(pro hac vice)*
Raymond P. Tolentino *(pro hac vice)*
Yotam Barkai *(pro hac vice)*
Emily C. Cole *(pro hac vice)*
Alexandra K. Conlon (pro hac vice)
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
jfink@kaplanhecker.com
gtenzer@kaplanhecker.com
rtolentino@kaplanhecker.com
ybarkai@kaplanhecker.com
ecole@kaplanhecker.com
aconlon@kaplanhecker.com
rkaplan@kaplanhecker.com

Alan Levine (*pro hac vice*) Philip Bowman (*pro hac vice*)
Daniel Philip Roy, III (*pro hac vice*)
Amanda Liverzani (*pro hac vice*)
COOLEY LLP
55 Hudson Yards New York, NY 10001
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com
pbowman@cooley.com
droy@cooley.com
aliverzani@cooley.com

David E. Mills (*pro hac vice*)
Joshua M. Siegel (VSB 73416)
Caitlin B. Munley (*pro hac vice*)
Samantha A. Strauss (*pro hac vice*) Alexandra Eber (*pro hac vice*) Allegra Flamm (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
Khary Anderson (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW

Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
jsiegel@cooley.com
cmunley@cooley.com
sastrauss@cooley.com
aeber@cooley.com
aflamm@cooley.com
gseidita@cooley.com
kjanderson@cooley.com

Robert T. Cahill (VSB 38562)
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

Nicholas A. Butto *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
nbutto@paulweiss.com

J. Benjamin Rottenborn (VSB 84796)
WOODS ROGERS PLC
10 South Jefferson St., Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com

*Counsel for Plaintiffs*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527

isuecrooks@comcast.net

James E. Kolenich Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249 jek318@gmail.com
*Counsel for Defendants Jason Kessler,
Nathan Damigo, and Identity Europa*

David L. Campbell Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C. 100
West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com
*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com
*Counsel for Defendants Michael Hill,
Michael Tubbs, and League of the South*

Joshua Smith Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com
*Counsel for Defendants Matthew Parrott,
Traditionalist Worker Party, and Matthew Heimbach*

I further certify that on May 5, 2022, I also served the following non-ECF participants, via electronic mail and U.S. mail, as follows:

Richard Spencer
richardbspencer@icloud.com
richardbspencer@gmail.com
Robert "Azzmador" Ray
azzmador@gmail.com

Vanguard America
c/o Dillon Hopper
dillon_hopper@protonmail.com

Elliott Kline a/k/a Eli Mosley
eli.f.mosley@gmail.com
deplorabletruth@gmail.com
eli.r.kline@gmail.com
Christopher Cantwell
Christopher Cantwell 00991-509
USP Marion, 4500 Prison Rd.
P.O. Box 2000
Marion, IL 62959