Richard Spencer
734 Clearwater Dr.
Whitefish, MT 59937

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES *et al.*, Plaintiffs<br><br>vs.<br><br>JASON KESSLER, *et al.*, Defendants | Case No: 3:17-cv-00072-NKM<br><br>RESPONSE TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50(B) AND RULE 59(A) POST-TRIAL MOTIONS |

    COMES NOW Mr. Richard Spencer's (*pro se*) response to the Plaintiffs' Omnibus Opposition to the Defendants' Rule 50(b) and Rule 59(a) Post-Trial Motions

    Mr. Spencer apologizes to the Court, as well as to the Plaintiffs, for the tardiness of his response. As mentioned in his request for an extension, a personal matter has arisen (an illness with multiple ramifications) that has made it quite difficult for him to be a good parent, make a living, and deal with this case. When Mr. Spencer asked for a two-week extension, he expected this to result in a May 12 deadline (two weeks after the April 27 deadline). It was his error not to specify this. When he discovered that the Court had set May 5, it was already too late. Mr. Spencer hopes his untimely filing will not overburden the Court, and he pleads its forgiveness and indulgence. Familiar ground is tread in this missive, but Mr. Spencer hopes that it will be considered.

The Plaintiffs' Omnibus Opposition motion is voluminous but not compelling. The justification for a direct verdict for Mr. Spencer on Claims III and IV remains clear.

§1

The Plaintiffs argue that, despite the jury's failing to reach a verdict on the federal laws in Claims I and II, Claim III still holds due to Mr. Spencer's putative violation of one or more state laws; Virginia Code §8.01-42.1 (Claim IV) is sufficient. Mr. Spencer is requesting a direct verdict on Claim IV (§8.01-42.1), as no reasonable jury could hold him liable for intimidation, harassment, or violence, which is "motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity." This would result in Claim III being untenable and thus necessitate, at best, a ruling in his favor or, at least, a new trial.

The Supreme Court has made clear, in *Snyder v. Phelps* (562 U.S. 443 (2011)), and other cases, that grotesque, outrageous, and tasteless public displays of a political nature are absolutely protected speech. The Charlottesville rally, and accompanying torch-light march that preceded it, were nothing if not political: they were demonstrations against the removal of the Robert E. Lee statue and attempts to promote the agenda of the Alt-Right movement. The Plaintiffs understood that weekend's events as such, as they testified. Thus, torches *per se*—however offensive some might find them—are not actionable in the context of a political event. They are the equivalent of the appalling signs hoisted by the Westboro Baptist Church, which were deemed to be protected speech in the Court's landmark decision.

Video from the Friday torch march was examined in excruciating detail throughout the trial. At no point did Mr. Spencer appear in the footage of the fracas and give-and-take involving the relevant Plaintiffs and Defendants. Plaintiffs Romero and Willis testified that they could not remember seeing Mr. Spencer that night, despite the

fact that they both had read about him and seen photos of him before the event. Willis: "I couldn't tell you if you were one of the hundreds of faces, you know." Plaintiff Sines testified that she was quite close to Mr. Spencer on Friday; given amble opportunity, Mr. Spencer did nothing to harm her and did not harass her; he ignored her. This is not a case of a witness not being able to remember her attacker due to the intensity of the moment; no evidence was presented of Mr. Spencer harming or directing harm towards Plaintiffs Romero and Willis. We are left with bold talk of "winning" and "dominating" and other outrageous political speech and gestures. (For what it's worth, Mr. Spencer did not carry a torch that evening.)

Natalie Romero and Devin Willis *chose* to be at the Jefferson statue and exercise their First Amendment rights as counter-protestors, as they articulated in their Opening Statement:

> On August 11th, Natalie and Devin were at a spaghetti dinner at the home of one of their professors when they learned that white nationalists were planning to march through campus that evening. Natalie and Devin drove to campus in a car with a bunch of their friends who had attended the dinner. Their plan was to counter hate and stand up for their own school and their own community.

The Friday-night event was not publicly announced; however, news of it reached the Plaintiffs (apparently leaked or intercepted). Romero and Willis ensconced themselves around the base of the Jefferson statue on the University of Virginia's campus. No evidence was presented as to a pre-existing plan to surround Willis and Romero, for the Defendants (and the rest of the Alt-Right protestors) had no idea they would be there. The surrounding of Romero and Willis occurred because the two actively chose to take part in a political rally and placed themselves at the heart of the action. When asked why he gathered with others at the base of the Jefferson statue, Mr. Willis's stated that he wanted to confront the Alt-Right protestors: "[Y]ou guys are well-

known for liking statues." These two Plaintiffs were outnumbered and surrounded for a period of time—a fact Mr. Spencer acknowledged—but no evidence was presented that Mr. Spencer ordered this to take place or that he inflicted any harm on the Plaintiffs.

§2

Claim III is based on common law. And due to the failures of Claims I and II and the dubiousness of Claim IV with regard to Mr. Spencer, we don't have much to go on in order to flesh it out. The Plaintiffs state that, along with Claim IV, the conspiracy must also be understood as involving Defendant Fields, who had pled guilty to crimes in other trials and was held liable for assault and battery in this one. The Plaintiffs state, "[I]t is black-letter law that all members of a conspiracy are liable for the foreseeable acts of other members." The operative word here is "foreseeable." Mr. Spencer and Mr. Fields had no communication (that is, two-way correspondence); all we have is Mr. Fields's posting of images and messages directed at Mr. Spencer on Twitter—something that could be done by anyone and is, in fact, done by countless individuals daily. The Plaintiffs did not attempt to connect Mr. Fields's vehicular attack to Mr. Spencer, outside vague and unfair insinuation. Taking the most favorable possible view towards the evidence presented by the Plaintiffs, perhaps Mr. Fields felt that Mr. Spencer would have wanted him to engage in a violent assault. Even in this hypothetical, Mr. Fields' actions were beyond Mr. Spencer's control. In other words, Mr. Fields's actions were in no way "foreseeable" to Mr. Spencer in the context of the logic of *U.S. v. Newsome*, 322 F.3d 328 (4th Cir. 2003).

Virginia law holds that "there can be no conspiracy to do an act the law allows" (*Werth v. Fire*). No one denies that Mr. Spencer was involved in a "conspiracy" to participate in the Unite The Right rally. There is simply no tort in agreeing to participate in a political rally, no matter how offensive or tasteless. There is no tort in engaging in

or witnessing bold talk, even the advocacy of violence, so long as that discussion does not involve the directing or inciting or producing imminent lawless actions (see *Dunlap v Cotton Tranmissions Systems* (2014)).

**§3**

No motion by the Plaintiffs would be complete without a rehearsal of Mr. Spencer's notorious rant: "We are coming back here like a fucking hundred times. I am so mad. . . . I rule the fucking world. . . etc." Here, the Plaintiffs aver, we find proof of the nefarious conspiracy and Mr. Spencer's *mens rea*.

This rant was recorded without Mr. Spencer's knowledge in a private meeting on the Saturday evening *after* the failed Charlottesville rally. Only a short snippet was released to the public, presumably because, free of context, it would create the greatest scandal. Full of vile invective, rage, frustration, and childish power fantasies, the transcript is a difficult read—and even more difficult to read closely and carefully. Mr. Spencer expressed outrage at what happened on August 12—"They don't do this to fucking me!"—evidence that he considered the event to be a disaster. His enmity and ire are not directed toward the Plaintiffs but towards the people he believed suppressed his ability speak and promote himself and his message. He vows revenge on the Charlottesville authorities—"We are going to fucking ritualistically humiliate them!"—but in the end, this was all talk. Mr. Spencer never "humiliated" or "ruled over" anyone. In a private setting, Mr. Spencer "lost it" and indulged in the kind of venting that is a telltale sign of his own humiliation. The Plaintiffs cannot simply trot out this rant as evidence of anything other than Mr. Spencer's deep character flaws, narcissism, and immaturity.

In conclusion, applying §8.01-42.1 in Count IV would mean holding Mr. Spencer accountable for actions Plaintiffs testified he did not do; it would mean holding him accountable for constitutionally protected speech; it would mean holding him accountable for actions by others that were unforeseeable and outside his control. Mr. Spencer thus continues to move that Claim IV be decided in his favor in a direct verdict. Claim III would thus loose validity, though it could be re-litigated, along with Claims I and II, in a new trial.

May 11, 2022.

Richard B. Spencer, *Pro Se*

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2022, a true and correct copy of the foregoing Motion for Summary Justice was mailed to the Clerk of the Court, which will provide electronic notice to all counsel of record.

_____
Richard B. Spencer, *Pro Se*

I further hereby certify that on MARCH 9, 2022, I also served the following non-ECF participants, via electronic mail, as follows:

Christopher Cantwell christopher.cantwell@gmail.com

Robert Azzmador Ray azzmador@gmail.com

Elliott Kline a/k/a Eli Mosley eli.f.mosley@gmail.com deplorabletruth@gmail.com

Vanguard America c/o Dillon Hopper dillon_hopper@protonmail.com

Matthew Heimbach matthew.w.heimbach@gmail.com