In The United States District Court For The Western District of Virginia Charlottesville Division

Sines, et al, Plaintiffs vs
Kessler, et al, Defendants
Civil Action 3:17-cv-00072

Defendant's motion for 8 months to reply to Plaintiffs Opposition, or in the alternative, said reply.

Comes now the Defendant, Christopher Cantwell and, he moves this Court to grant him, 8 months to reply to Plaintiffs' omnibus opposition motion dated 4-13-2022 and, failing this, offers what little he can offer, as a reply as he is corruptly denied necessary resources to litigate by the United States. In support he states as follows.

A. Motion for time

1.) Cantwell has asked the Court for a transcript, has filed an IFP application, has appealed the Magistrate's decision on a prior motion for more time, and as of 4-28-2022 is unsure if the United States Bureau of Prisons has corruptly prevented these motions from reaching the court, or if the Court has in similar fashion ignored them while making all haste to accomodate its copartisan Plaintiffs.

2.) Throughout this litigation, Cantwell has begged the Court's assistance while the Plaintiffs' misconduct and that of the United States, act in concert to prevent Cantwell from defending himself, but the Court clearly had decided this case long ago, and ignored Cantwell's legitimate concerns as mere speedbumps on the path to a predetermined outcome.

3.) Despite this, the Plaintiffs failed to prove a conspiracy to engage in racially motivated violence, which was the whole entire reason this case survived a motion to dismiss.

4.) The Plaintiffs now claim victory based on a malicious and dishonest dot connecting exercise which strings together outright falsehoods, mischaracterizations, and completely unrelated details which, to unweave and respond to, will require access to the record and the evidence.

5.) Cantwell had, and retains, the right to ask for a continuance based on the concerns he raised in timely fashion as Plaintiffs' misconduct and that of the United States became known to him. Cantwell had the right to object to severance as a means to accomodate Plaintiffs' misconduct. He need not choose

-2-

which of his rights should be violated, just because his adversary "warned" him that "as far as [they are] concerned" he waives his rights by preserving his objections. He did not waive anything.

6.) Cantwell's release paperwork has already begun, and he awaits transfer to a halfway house.

7.) Cantwell will be released from B.O.P. custody entirely in December of this year.

8.) While held at USP Marion, Cantwell is in the Communications Management Unit, where he is deprived of litigation resources even other prisoners have access to, and he is uniquely disadvantaged even among CMU inmates, as he is singled out to be deprived of vital documents, and other documents are held back from him until deadlines expire.

9.) As an example of documents held back, Cantwell received Document 1567 on 4-14-2022, one day after the 4-13-2022 deadline the document announced. As another, Cantwell received Plaintiffs' omnibus opposition on 4-27-2022, the day his reply was due. This makes Cantwell's tasks literally impossible.

-3-

10.) A shorter extension will not cure these prejudices. Throughout this process, Cantwell has rightly complained that prior such short extensions made these prejudices worse, because they were delivered to Cantwell after deadlines expired, causing Cantwell to submit documents based on the original deadline, giving Plaintiffs extra time to respond while Cantwell remained deprived of the means to litigate.

11.) Anticipating a similar outcome here, and convinced that the Court has little interest in doing anything other than supporting Plaintiffs' criminal conduct, Cantwell offers the following reply, noting that it will obviously be inadequate, an outcome inevitable and foreseeable to all involved, and caused by corrupt forces beyond Cantwell's control.

B. Reply to Plaintiffs' 4-13 Omnibus opposition.

12.) To borrow a phrase, Plaintiffs are "mistaking quantity for quality" as they string together completely unrelated statements stitched from an unspecified timeline of Cantwell's remarks made on his entertainment product, The Radical Agenda, to falsely claim, contrary to the jury's verdict, that they proved their claims.

-4-

13.) Cantwell could easily, by similar means, take out of context segments of decisions written by Judge Moon, and with equal credibility, accuse him of committing crimes he had presided over trials of. To unweave that deception Judge Moon or his counsel would need access to those decisions. Cantwell lacks this access because it has been corruptly kept from him. Plaintiffs are conscious of this fact, and have materially deceived the Court by stringing statements together which are wholly unrelated to create a fictional narrative.

14.) Plaintiffs also continue materially deceiving the Court and the public by describing their clients and their co-conspirator(s) as "peaceful protestors" and denying that they are "members of Antifa." They must do this because their claims fail once it is acknowledged that they knowingly, willingly, and with premeditation, participated in a conspiracy to attack the Defendants to violate Defendants' civil rights.

15.) "Antifa" is not an organization in which one carries a membership card, it is an ideology which justifies criminal violence and deception to stop lawful political activity they deem undesirable. Plaintiffs' counsel know this, hence the

-5-

talk of "membership" which is equal parts deceptive and unfalsifiable.

16.) Plaintiffs' Antifa adherence, association, and sympathy is demonstrated by their behavior and the company they keep. Most notably the armed mob chanting "Antifascista" as they illegally blocked traffic and attacked vehicles on August 12th, and the willingness of each Plaintiff to lie on the stand about the weapons the mob weilded and the "Antifascista" chant.

17.) On August 11th, video showed Plaintiffs' co-conspirator Thomas Massey start the violence. Plaintiffs materially deceive the Court in their opposition by claiming Cantwell "indiscriminately" deployed his pepper spray, which video confirms, Cantwell's uncontested testimony, that he sprayed only 2 white male combatants, Thomas Massey, and an unidentified bearded male with a peculiar hat he has called "Beany man".

18.) While Cantwell ultimately pleaded guilty to two misdemeanors, based on claims that his "overspray" had "affected" Emily Gorcenski and Kristopher Goad, neither of them are party to this suit, no evidence shows Cantwell did anything to cause Plaintiffs' alleged damages, and Cantwell's uncontested testimony, supported by

video, is that he was motivated by Massey's violent behavior. Since Massey was indisputably violent, and white, and Cantwell never directed his use of force at any peaceful actor, or racial minority, there is no evidence his use of force had any hint of racial animus. Cantwell need not prove self defense, or act within the limits of self defense to defeat Plaintiffs' claims, although he surely could if he did, the Plaintiffs had to prove that Cantwell caused their damages, and that he did so with racial animus, neither of which was proven by any stretch of the imagination.

19.) The Plaintiffs did not prove a racially motivated violent conspiracy. If they had, then they would have prevailed on their federal claims. The Plaintiffs insist on having it both ways, by pointing out that they only needed to prove harassment or intimidation to prevail on their claims under Virginia law, but then they justify those verdicts by pretending to have proven a racially motivated violent conspiracy, which they did not prove.

20.) When the Court ruled on motions for dismissal and summary judgment, it did so based on the claims of a racially motivated violent conspiracy, not harassment.

-7-

20.5) Regarding Cantwell's text to Mr. Spencer that he was willing to "Risk" violence and incarceration, the Plaintiffs know full well this followed a recorded conversation, offered into evidence at trial, between Kessler and Cantwell, in which Kessler told Cantwell the police received credible threats of violence against our demonstration, and that we might risk "misdemeanor charges" if we decided to proceed without a permit. The Plaintiffs here present this as evidence of a racially motivated violent conspiracy, which we cannot repeat enough, the Plaintiffs failed to prove. The verdict they seek to uphold does not support the claim they are falsely trying to make from this message, and the message itself is completely reasonable and legal.

-7.5-

21.) If the Plaintiffs had been honest from the outset, and sued based on the claim that "Jews would find the chants offensive" there would have been no trial. Instead they lied, and claimed their perfectly innocent clients were physically injured by a racially motivated violent conspiracy. They did this knowing that their clients were not innocent, and that no violent conspiracy existed on the part of the Defendants. They did so anticipating that they could drum up enough prejudice against the Defendants for their constitutionally protected speech that the jury would act on passion or prejudice. They succeeded in this, and only this, but not in proving racially motivated violence.

22.) If the Plaintiffs wanted to sue for harassment, they had to plead it. They pleaded violence, and they failed to prove that the violence which ensued despite Defendants' best efforts was part of an unlawful conspiracy by defendants, or that it was motivated by Defendants' views on race, which are otherwise constitutionally protected.

23.) Likewise, Cantwell's "advocacy of violence" acknowledged in his testimony was completely disconnected from the Plaintiffs claims in this case, and constitutionally protected. Cantwell testified that

-4-

he accurately views government force authorized by law to be "violence" and that this informs his "advocacy". And, as mentioned in the jury instructions, even "abstract" advocacy of "lawlessness" is constitutionally protected.

24.) The weakness of the Plaintiffs case is demonstrated by their use of adjectives, most notably "overwhelmingly." If the evidence was so overwhelming, they would have prevailed on Counts 1 and 2 and been awarded more than $1 on Count 3.

25.) On P.20, Plaintiffs state that "While in Charlottesville, Cantwell actively participated in the violence he had planned on." If Cantwell planned on this, why did he invite police? Why did he wear a body camera? Why did he limit his use of force to combatants? Why did the jury not find for Plaintiffs on Counts 1 and 2? Plaintiffs claims in the opposition brief contradict the jury verdict they seek to uphold, not to mention the evidence and common sense.

[margin: Why did he try to keep the 8-11 torch march a secret?]

26) On P.21 Plaintiffs state that "After the events on August 12th 2017 Cantwell joined his co-conspirators in celebrating their heinous acts." Again the gratuitous adjectives illustrate weakness.

Cantwell and his co-defendants celebrated escaping with their lives after they were attacked by violent criminals. Cantwell has never "celebrated" anything unlawful on the part of himself or his codefendants, he has always asserted that they acted lawfully, and he offered as proof ~~Dixon's~~ Dwayne Dixon's videotaped confession where he admits aiming an assault rifle at James Fields.

27.) On P.28 the Plaintiffs attempt to mislead the Court by mischaracterizing Cantwell's argument in the post trial motion. Cantwell stated that the video should have been admitted for the limited purpose of showing that the Defendants believed that Fields was innocent, which tended to negate the Plaintiffs' claims of "ratification". Cantwell did not argue that "the video tends to show that Fields is innocent" although it most certainly does. The Plaintiffs are also quite well aware that Mr. Dixon was doing more than reading from a paper, Dixon made this claim on social media as well, and the Plaintiffs intentionally lie when they pretend this is something other than what they know it to be.

C.) Conclusion

28.) For the sake of the country, not to mention the truth, and rights of the defendants, this

-10-

Court must honor its obligation to set aside the verdict or grant a new trial. Whatever preference the Court may hold for the Plaintiffs' political disposition Judge Moon knows the truth, that the Plaintiffs deceived the Court and the public in their pre and post trial filings, that the Plaintiffs lied under oath while contradicted by video in real time, that Plaintiffs sought out confrontations which Defendants sought to avoid, that Defendants coordinated with law enforcement and that Cantwell in particular conditioned his participation on said coordination. Judge Moon knows that a suit claiming mere "harassment" would not have survived dismissal, and that the Plaintiffs' failure to prove their federal claims shows that the Plaintiffs did not prove a racially motivated violent conspiracy.

To call this a House of Cards would be to give it too much credit. Like the "Russia Collusion" hoax of the 2016 election, like the "Russian Disinformation" claims about Hunter Biden's laptop in 2020, and like the "Jim Crow 2.0" claims in anticipation of the coming election, this case is self evidently fake. The Court will destroy its reputation by allowing this fraud to stand, and in due course, when the truth inevitably becomes more widely known, it will erode irreparably the

-11-

authority and credibility of the United States Federal Court system.

This outcome will suit the Plaintiffs just fine. They never sought justice or compensation. Ultimately, it isn't even the ~~Plaintiffs~~ Defendants they set out to destroy, but the United States.

This Court should not make itself an accomplice to that subversive conspiracy.

Respectfully Submitted,
Christopher Cantwell
4-28-2022

*[signature]*