In The United States District Court For The Western District of Virginia Charlottesville Division

Sines, et al, Plaintiffs vs. Kessler, et al, Defendants.

Civil Action No. 3:17-cv-00072

Defendants Motion For 7 months to reply to Plaintiffs' Opposition Challenging Punitive Damages at ECF 1572, or Alternatively, said Reply

Comes now the Defendant, Christopher Cantwell, and he moves this Court to grant him 7 months from the date this motion is filed to respond to Plaintiffs' opposition motion at ECF 1572. Failing this, he offers what reply he can, while his defense is corruptly interfered with by Plaintiffs' friends in the United States Government.

A. Motion for time

1.) Though Plaintiffs' motion is dated 4-17-2022, it was not mailed to Cantwell until 5-3-2022. Though the motion was scheduled for delivery by 5-7-2022 it was not given to Cantwell by USP Marion staff until 5-17-2022.

2.) It is no curiosity that this pattern of abuse persists. Cantwell has begged the Court for assistance to no avail, since he discovered Plaintiffs' service misconduct

in March of 2021. The Plaintiffs have been richly rewarded and not at all penalized, so they persist.

3.) Owing to this well documented pattern of abuse Cantwell has other motions for time pending, and has appealed two Magistrate's orders denying his extensions.

4.) A shorter extension than 7 months will not remedy the problem since the Court refuses to provide Cantwell access to the record or to compel his captors to cease their unlawful interference.

5.) Cantwell presently awaits transfer to a halfway house, and will be released from B.O.P. custody in December of this year.

6.) Cantwell has become accustomed to the Court ignoring his concerns, and offers the following reply to ECF 1572.

B.) Cantwell has offered abundant evidence that he cannot pay any of this nonsense.

7.) No later than 2019, Cantwell's attorneys moved to withdraw as counsel for non-payment. Cantwell made arrangements to get them to withdraw the motion, but this was not to last.

-2-

8.) In 2019, Plaintiffs filed, and subsequently lost, a meritless motion to enjoin Cantwell, falsely claiming he threatened Plaintiffs' counsel Roberta Kaplan. Citing this nuissance filing, Cantwell's attorneys again moved to withdraw, and Cantwell's inability to pay his own attorneys figured into those filings as well.

9.) In Cantwell's criminal trial in the District of New Hampshire, which Plaintiffs followed in excruciating detail, Cantwell was represented by the Federal Public Defender's office.

10.) Cantwell filed an IFP application with the Court prior to trial.

11.) The Court had Cantwell transported for trial at taxpayer expense noting his inability to pay the estimated $15,000 bill by the Marshals.

12.) Cantwell has submitted numerous sworn declarations stating that he is indigent.

13.) Cantwell told the jury in his opening statement that he was representing himself "Because I am poor". The rest of Cantwell's defense had nothing to do with finances, because he successfully defended himself against Plaintiffs' false claim of racially motivated violent conspiracy.

-3-

C.) Plaintiffs Failed To Prove A Conspiracy To Commit Racially Motivated Violence

14.) If Plaintiffs had proved a conspiracy to commit racially motivated violence, they would have prevailed on Counts 1 and 2. They did not.

15.) Despite this glaring hole in their story, the Plaintiffs teeter back and forth as convenience suits them between two contradicting falsehoods. On the one hand, the verdict should be upheld because they only had to prove "harassment" and Defendants "knew Jews would find the chants offensive" and so their failure to prove the central claim of this case should not disturb the verdict. On the other, they claim that the Court should ignore the plain text of the law because they actually did prove racially motivated violent conspiracy. Both claims cannot be true, and in fact, neither one is.

16.) Plaintiffs have absolutely no basis on which to connect the civil conspiracy of Count 3 to the Jury's findings against Fields on Counts 5 and 6.

17.) As in prior filings, Plaintiffs stitch together completely unrelated quotes and

-4-

details, by weaving in their own colorful commentary unsupported by the evidence to create a fictional narrative of Defendants intent and actual behavior. Cantwell cannot hope to unravel this nonsense without access to the record, and preserves for appeal this complaint.

18) The Jury asked the Court, after announcing that they had reached a partial verdict, something to the effect of "Are words a form of violence under the First Amendment?" Cantwell lacks access to the record to quote the Court's response.

19.) In light of this question, it is plain to see what happened. The jury was happy to hold the Defendants liable for their speech, but the Plaintiffs failed to prove a racially motivated violent conspiracy. So, acting on passion and prejudice, the jury awarded millions of dollars in punitive damages with no relation to compensatory awards because with the possible exception of Fields, no evidence was offered that the Defendants caused any harm to the Plaintiffs. The awards on Counts 3 and 4 were for "harassment", hence the speech question. The Antifa supporter in the jury, as Cantwell predicted, tried to sway the others that words are violence. Thankfully he failed.

-5-

20.) This was the Plaintiffs' plan all along. They filled their complaint with abundant demonstrably false nonsense in a malicious effort to link speakers and event organizers to Fields's carwreck, and intentionally deceived the Court and the public about the armed violence the Plaintiffs chose to associate themselves with, even though they knew the Defendants were compelled to defend themselves against Thomas Massey, Thomas Keenan, and the armed mob which was blocking traffic, disobeying a dispersal order, and attacking people and vehicles while chanting "Antifascista!"

21.) Knowing that their crimes would go unpunished, the Plaintiffs lied in open Court under oath, while contradicted in real time by video. They denied any of their associates were armed or violent or masked or "Antifa" even as the video played before them.

22.) As the Defendants warned from the outset, this was always about their constitutionally protected speech. The Plaintiffs lied to get as much prejudicial material in front of the jury as the Court would permit. They struck only white jurors, and made a Batson challenge the moment Defendants struck a black juror. The Court declined to rule on the challenge, leaving Defendants walking on eggshells

-6-

for the rest of jury selection, that if they struck another black juror, they would lose the Batson challenge. The Court **Further** aided in this racially motivated scheme of the Plaintiffs by allowing a black juror who Judge Moon observed was obviously cognitively impaired (Lacking access to the Record, Cantwell references Judge Moon's initial refusal to ask this juror about his mental state, calling the question "humiliating" and stating that the man's condition was, something to the ~~effect~~ effect of "obvious").

23.) Having successfully stacked the jury with their favored demographics, (and at least one violent Antifa extremist) the Plaintiffs spent the better part of a month complaining about the Defendants' political views and speech. They called pointless witnesses and bogus "experts" and utterly failed to prove a racially motivated violent conspiracy.

24.) The Plaintiffs' complaint, accordingly, bore almost no resemblance to the case presented to the jury. Even the pretrial document, currently unavailable to Cantwell, but which he thinks was titled "statement of facts" and purported to lay out what plaintiffs expected to prove at trial, did not even accuse Cantwell of participation in a conspiracy or doing any harm to any Plaintiff.

25.) In Judge Moon's decisions on motions to dismiss and for Summary Judgement, he stated that the Virginia claims withstood dismissal on the same grounds as the federal claims. When the Defendants said their activity was constitutionally protected, Judge Moon said racially motivated violence was not protected, and that the claims stood for that reason.

26.) If the Plaintiffs hadn't lied, if they had sued us for our words and claimed this was harassment, this trial never would have happened.

27.) The verdict should not stand for these reasons, and if it does, then surely the court should at least follow the plain language of the law, and reduce the total punitive damages to $350,000 or less for all Defendants, and all Plaintiffs in total.

28.) Alternatively, the Court should order a totally new trial. As Cantwell noted in his first post trial motion, the fact that Plaintiffs failed to prove Counts 1 and 2 render the remaining verdicts unconstitutionally vague, as evidenced by Plaintiffs and Defendants each trying to figure out as if by psychic telepathy which of the countless possible interpretations should apply to the damages. Such uncertainty is no way to account for $45,000,000+.

-8-

C.) Punitive Damages Should Not Be Awarded Per Plaintiff

29.) The purpose of limiting punitive damages is to protect Defendants from abusive awards such as presented here. The number of people abusing the system ought not multiply the abuse at the expense of Defendants' rights.

30.) While Plaintiffs wax philosophical about legislative intent, there is no carve out in the statute to punish people for their political views.

31.) When the legislature passed the hate crimes statute, they could have chosen to exempt this from the punitive damages cap, but they did not, and there is no reason for this court to engage in such activism.

D. Conclusion

32.) The Plaintiffs are owed nothing, Defendants cannot pay, and the Court aids and abets Plaintiffs' criminal behavior with every dollar awarded, to the detriment of its own authority and credibility. Soon, the truth will be known more widely, and this Court should be on the Right side.

Respectfully Submitted — Christopher Cantwell

-9-   5-17-2022