# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ELIZABETH SINES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JASON KESSLER, *et al.*, <br><br> *Defendants*. | CASE NO. 3:17-cv-00072 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

    This matter is before the Court on Plaintiffs' motion for entry of default judgment against Defendants Andrew Anglin, Moonbase Holdings, LLC, East Coast Knights of the KKK, Fraternal Order of the Alt-Knights, August Sol Invictus, The Loyal White Knights of the KKK, and the Nationalist Front. Dkt. 1554. None of these Defendants have opposed or otherwise responded to the motion. For the following reasons, the motion will be granted in part and denied in part. Default judgment will be entered against these Defendants for Virginia state law civil conspiracy (Count III) and against Defendant Invictus for violation of the Virginia hate crimes statute (Count IV), and such Defendants shall be jointly and severally liable with those Defendants that the jury found liable at trial for Plaintiffs' compensatory damages. However, for the reasons set forth below, the Court holds that Virginia law does not permit the Court to impose any additional punitive damages or prejudgment interest upon these Defendants.

    "Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails to plead or otherwise defend in accordance with the Rules." *United States v. Morandi*, 673 F.2d 725, 727 (4th Cir. 1982) (quotations omitted). After entry of default, the Court may enter "default judgment" under Rule 55(b) following motion for default

judgment. *See* Charles Alan Wright & Arthur R. Miller, 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed. Apr. 2022)

The Court has examined the pleadings and service of process and the record in this case with respect to the Defendants against which Plaintiffs seek entry of default judgment. There is no dispute that each of them was properly served either directly or through the Secretary of the Commonwealth of Virginia. *See* Fed. R. Civ. P. 4(e)(1); Va. Code § 8.01-329; Dkt. 263 (detailing efforts to effectuate service on Andrew Anglin and Moonbase Holdings, LLC); Dkt. 264 (same, as to East Coast Knights of the KKK); Dkt. 265 (Fraternal Order of Alt-Knights of the KKK ("FOAK"); Dkt. 266 (Augustus Sol Invictus); Dkts. 248, 275, 280 (Loyal White Knights of the KKK); Dkt. 918 at 2–3 (describing service on Nationalist Front and its early participation in case).

Plaintiffs sought entry of default against six of the Defendants who had failed to respond or otherwise participate in the case. Dkts. 263 (Andrew Anglin & Moonbase Holdings, LLC); 264 (East Coast Knights of the KKK); 265 (FOAK); 266 (Augustus Sol Invictus); 248, 280 (Loyal White Knights of the KKK). Thereupon, default was entered against them. *See* Dkts. 268 (Anglin & Moonbase); 269 (East Coast Knights); 270 (FOAK); 271 (Invictus); 280 (Loyal White Knights). Nationalist Front along with the answering defendants initially participated in the case and participated early in the litigation including moving to dismiss the complaint. However, subsequently, the Nationalist Front abandoned the litigation, and Plaintiffs moved for entry of default against Nationalist Front. Dkt. 918. The motion was referred to the Magistrate Judge, who recommended that Plaintiffs' motion be granted, and default be entered against the Nationalist Front. Dkt. 967. No objections to the Magistrate Judge's report & recommendation were filed and the Court adopted the recommendation that Plaintiffs' motion for entry of default

against Nationalist Front be granted, and that further orders would issue entering default and default judgment against Nationalist Front. Dkt. 1136.

In their motion, Plaintiffs seek entry of default judgment against Andrew Anglin, Moonbase Holdings, LLC, East Coast Knights of the KKK, FOAK, Augustus Sol Invictus, and Loyal White Knights of the KKK (collectively, "Defaulted Defendants"), on Plaintiffs' Count III (Virginia state law civil conspiracy), and default judgment against Invictus on Count IV (racial, religious, or ethnic harassment, intimidation, or violence, in violation of Virginia Code § 8.01-42.1). *See* Dkt. 1554 at 2–3. The jury in this case found all 17 answering defendants liable on Count III, and six of the answering defendants liable on Count IV. *See* Dkt. 1478 (verdict).

By failing to answer or otherwise respond, Defaulted Defendants have admitted the allegations as fact in the complaint which are accepted as true, except for those relating to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6). Default judgment should be entered then if the well-pleaded allegations in the complaint are sufficient to state a claim upon which relief can be granted. *Proctor v. Edmonds*, No. 7:18-cv-87, 2020 WL 4735348, at *2 (W.D. Va. Aug. 14, 2020).

The Court concludes that default judgment on Count III is warranted against the Defaulted Defendants, and that default judgment on Count IV is warranted against Invictus. In Virginia, common law civil conspiracy "consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *CBS v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995); *The Country Vintner, Inc. v. Louis Latour, Inc.*, 634 S.E.2d 745, 751 (Va. 2006) (same). A claim of civil conspiracy also "requires proof that the underlying tort was committed" by a co-conspirator in furtherance of that conspiracy. *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007). A defendant violates Virginia's hate-crime statute by committing "harassment,"

"intimidation," or "violence," while "motivated by racial, religious, or ethnic animosity." Va. Code § 8.01-42.1(A).

The Court has already denied Defendants' motions to dismiss Plaintiffs' Virginia state law civil conspiracy claim (Count III) and Virginia hate-crimes statute claim (Count IV), concluding that Plaintiffs stated plausible claims to relief. In its decision on the issue, the Court explained that the described "conspiracy to commit racial violence at the 'Unite the Right' events provides such a conspiracy" that is unlawful under Virginia law. *Sines v. Kessler*, 324 F. Supp. 3d 765, 799 (W.D. Va. 2018). Accordingly, the Court held that "Plaintiffs have plausibly alleged that Defendants … conspired to assault counter-protesters out of racial animus." *Id.* The Court further held that Plaintiffs "have adequately pled specific alleged violations of state tort and statutory law." *Id.* And this Court held that Plaintiffs "have also pled that their injuries were caused by the unlawful acts of Defendants." *Id.* As to Plaintiffs' Count IV, the Court held that Plaintiffs Romero and Willis "plausibly alleged violations of the hate crime statute by [Kline], Spencer, Kessler, Ray, and Cantwell," on account of their actions at the torch march on August 11, 2017, "and so the motion to dismiss these claims against these Defendants will be denied." *Id.* at 801. In addition, the jury found that all answering Defendants were liable for Virginia state law civil conspiracy, and that Kline, Spencer, Kessler, Ray, Cantwell (and Fields) were liable for violating Virginia's hate crime statute. *See* Dkt. 1478 at 3–7 (verdict). On this motion, Plaintiffs have established that they are entitled to default judgment against the Defaulted Defendants on these claims as well, and no reason at all (much less any valid reason) has been proffered as to why this Court should reach a contrary outcome as to Defaulted Defendants.

The complaint included numerous, specific allegations as to the Defaulted Defendants that, taken as true, would state a claim to relief for civil conspiracy. These allegations include, but are by no means limited to, the following.

4

Defendant Andrew Anglin is a neo-Nazi who, along with Moonbase, founded and operates the *Daily Stormer*, which calls itself the "world's most genocidal" website. Dkt. 557 (Second Am. Compl.) ¶¶ 25–26. Anglin and Defendant Robert "Azzmador" Ray, have used the *Daily Stormer* to, among other things, "sell [] global white supremacy," and to "make a racist army." *Id.* ¶ 25. Before Unite the Right, Anglin declared: "[w]e are taking back our birthright" from perceived threats from Jewish persons, and he further stated: "I am declaring the summer of 2017 the Summer of Hate." *Id.* at 19. And on the *Daily Stormer*, Anglin wrote to followers: "[t]here is a craving to return to an age of violence," and "[w]*e want a war*." *Id.* ¶ 85 (emphasis added). He further wrote that, "we will eventually win this struggle and secure the existence of our people and future for white children. It is our destiny. *Next stop: Charlottesville, VA*. *Final stop: Auschwitz*." *Id.* (emphasis added). Anglin wrote that he wanted to "get as many people to attend this rally [Unite the Right] as possible," in order to "put the fear of god into the hearts and minds of our enemies." *Id.* ¶ 91. Anglin and Moonbase coordinated with several of the answering defendants to plan and promote the violence at Unite the Right. *Id.* ¶ 62. A writer on Richard Spencer's website wrote that the *Daily Stormer* was "going to bring a lot of young new cadres to the rally," including Identity Evropa. *Id.* ¶ 91. Ray wrote on Defendant Vanguard America's Discord server in July 2017, "You don't think the [Stormer Book Clubs]"—referring to the local chapters of the *Daily Stormer*—"have anything to do with books do you? … Think boots, not books." *Id.* ¶ 92. Anglin and Moonbase, through the *Daily Stormer* explained that Unite the Right rally attendees would need tiki torches and explained how to get them. *Id.* ¶ 145. After the march, the *Daily Stormer* reported that "The 200+ honorable whites marched to the base of the statue as they carried torches reminiscent of the 3rd Reich." *Id.* ¶ 52.

Accordingly, Anglin urged his followers to get in "fit and fighting shape." *Id.* ¶ 92. Anglin and Ray issued directives on the *Daily Stormer* website in advance of Unite the Right—

including those entitled "Operational Security for Right Wing Rallies" and "Charlottesville: Why You Must Attend and What to Bring and Not to Bring!"—in which "Stormers" were told "they were required to bring tiki torches and should also bring pepper spray, flag poles, flags, and shields." *Id.* ¶¶ 117, 322. While Anglin did not attend Unite the Right, during the morning of August 12, 2017, Anglin worked with Moonbase, *Daily Stormer* staff, and Ray to maintain a live feed of the events in Charlottesville, during which they incited followers to engage in racial violence, telling followers: "WHITE SHARIA NOW!" and "WE HAVE AN ARMY! THIS IS THE BEGINNING OF A WAR!" *Id.* ¶ 216. After Fields' car attack, Anglin wrote "Roadkill Nights Powered by Dodge. It's going down Saturday Aug. 12th from 11am to 10 pm." *Id.* ¶ 264.

Defendant FOAK describes itself as the "tactical defensive arm" and the "military wing" of the Proud Boys, formed to focus on "street activism, preparation, defense, and confrontation." *Id.* ¶ 41. Defendant Invictus is the second-in-command at FOAK and FOAK attended Unite the Right in part to provide security to him. *Id.* Invictus helped plan Unite the Right on behalf of FOAK—he was featured on a poster for Unite the Right, and he ordered his livestream audience to attend it, which he called the most important rally of the year. *Id.* ¶¶ 40, 185, 326. Invictus, along with Spencer and others, organized and participated in the torch march on August 11, 2017, *id.* ¶¶ 40, 142, where Invictus explained to a reporter, "Somebody forgot the pitchforks at home, so all we got is torches," *id.* ¶ 149. Invictus told followers on his live video feed of the event that it was a "tight operation," and called it "high T!", meaning high testosterone. *Id.* ¶ 158. Invictus and FOAK members participated in the violence on August 12, 2017, *id.* ¶ 186.

East Coast Knights and Loyal White Knights are unincorporated associations of the Ku Klux Klan, which have a mission to promote white supremacy. *Id.* ¶¶ 42, 43. Before Unite the Right, on July 8, 2017, Loyal White Knights held a white supremacist rally in Charlottesville, in which nearly fifty Klansmen—some in Klan robes and many carrying guns—marched through

the streets, shouting "white power," and carrying signs like "Jews are Satan's children." *Id.* ¶¶ 56, 57. Plaintiff Romero peacefully counter-protested at the Klan rally, and she received racist and harassing phone calls from the Klan in response. *Id.* ¶ 57.[1] East Coast Knight encouraged its members and others to attend Unite the Right, writing "We will be there! Join us!", *id.* ¶ 93, and it conspired with the Nationalist Front and other Defendants to organize and participate in the violence on August 12, 2017, *id.* ¶ 43. East Coast Knights, Loyal White Knights, and FOAK, as well as the answering defendants, participated in the violence on August 12, 2017. *Id.* ¶ 186. This included use of "shields, flags, or fists" to break through crowds of counter-protestors and engaging in other violent acts. *See id.* ¶¶ 194–221. After Unite the Right, East Coast Knights celebrated the violence. *Id.* ¶ 262. One prominent member of East Coast Knights tweeted, only one hour after Fields' car attack, "At least nobody important got hurt. #Charlottesville," and later wrote "Dirty apes playing in the street gotta learn the hard way #Charlottesville", and other similar prejudiced sentiments—which were "liked" by the official East Coast Knights' Twitter account. *Id.* ¶ 263. After Unite the Right, Loyal White Knights changed their voicemail to a message expressing how "proud" they were of "white patriots such as James Fields, Jr." for his car attack and the injuries he caused Plaintiffs and the death of Heather Heyer. *Id.* ¶ 42.

The Nationalist Front is an umbrella organization comprised of white supremacist and neo-Nazi and Klan groups, including answering defendants National Socialist movement ("NSM"), Traditionalist Worker Party ("TWP"), League of the South ("LOS"), and Vanguard America, and which was led by, among others, Defendants Schoep, Heimbach, and Hill. *Id.* ¶¶ 39, 195. Nationalist Front groups coordinated their attendance at Unite the Right in a "joint

---

[1] After Unite the Right, Romero received increasingly threatening phone calls from a member of the Klan. *Id.* ¶ 57.

operation." *Id.* ¶ 66. Several members of the Nationalist Front participated in the planning of and attended the torch march on August 11, 2017. *See, e.g., id.* ¶ 184; *accord Sines v. Kessler*, 558 F. Supp. 3d 250, 266–67 (W.D. Va. 2021) (describing LOS's public relations chief's assistance to Kessler organizing the torch march). The Nationalist Front groups, marching together, were especially prominent in the violence on August 12, 2017, in which they chanted "Blood and soil!", among other things, and yelled "Get the fuck out of our country, bitches!", and similar threatening, harassing or intimidating language. Dkt. 557 ¶¶ 194–201. The Nationalist Front groups, led by Defendants Hill, Tubbs, Heimbach, and other LOS members, charged through stationary crowds of counter-protestors on numerous occasions, sparking brawls and violence and using flag poles and tear gas as weapons. *See, e.g.*, Dkt. 557 ¶¶ 195–221.

      These and the other allegations in the complaint more than establish all Defaulted Defendants' liability for civil conspiracy on Count III—as previously held by the Court in denying answering Defendants' motion to dismiss and as further supported by the jury verdict finding all answering defendants liable for civil conspiracy. The jury verdict also found certain answering defendants liable for violating Virginia's hate crime statute and for committing assault and battery at Unite the Right and awarded Plaintiffs substantial damages for violations of those predicate acts of the conspiracy. These findings further confirm that all Defaulted Defendants are liable for Virginia state law civil conspiracy. Considering the aforementioned allegations in the complaint, which are admitted as true, the Court further holds that default judgment is warranted against Defendant Invictus on Count IV for violating Virginia's hate-crime statute. The Court previously held that Plaintiffs had stated a claim for violation of the statute against Kline, Spencer, Kessler, Ray, Cantwell, for engaging in materially similar conduct as that engaged in by Invictus—who was also a central figure in the march—and that result is further supported by the jury's verdict that these defendants were also liable under

Virginia's hate crime statute for the same conduct. Accordingly, there is more than a sufficient basis to enter default judgment against Invictus on Count IV.

Pursuant to Virginia law on civil conspiracy, Defaulted Defendants are jointly and severally liable with the seventeen Defendants who went to trial for the compensatory damages awarded by the jury and for which all the Defendants would be jointly and severally liable—$1,303,284. *See Tire Eng'g & Dist., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 312 n. 10 (4th Cir. 2012) ("Consistent with Virginia law, the jury's finding of guilt on the civil conspiracy claim meant that the Appellants were held jointly and severally liable for the damages award."); *La Bella Donna Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 406 (Va. 2017) (explaining that "civil conspiracy is a mechanism for spreading liability amongst coconspirators for damages sustained as a result of an underlying act that is itself wrongful or tortious"); *see also* Dkt. 1622 at 76–78.[2]

Next, Plaintiffs contend that the Court "should assess additional punitive damages against the defaulted defendants." Dkt. 1554 at 22–23. In Plaintiffs' view, because the jury awarded $500,000 against each individual answering defendant and $1,000,000 against each organizational answering defendant for Count III, Plaintiffs argue that the Court should assess an additional $500,000 in punitive damages against Anglin and Invictus and an additional $1,000,000 against each of the defaulted organizational defendants (Moonbase, East Coast Knights, FOAK, Local White Knights, and Nationalist Front). *Id.* at 23–24. As explained by the Court in its opinion on Defendants' post-trial motions, Virginia's statutory cap on punitive damages states that, "[i]n no event shall the total amount awarded for punitive damages exceed

---

[2] Defendant James Alex Fields is solely responsible for an additional $701,459 in compensatory damages awarded on Count VI, resulting in a total compensatory damages liability for Fields in the amount of $2,004,743. *See* Dkt. 1622 at 77–78.

9

$350,000." Dkt. 1622 at 60 (quoting Va. Code § 8.01-38.1). Having concluded that "Virginia's $350,000 statutory cap on punitive damages applies to the action as a whole," the Court has held that the jury's punitive damages award must be reduced to $350,000 against all Defendants that the jury found liable on Counts III, IV, V and VI. Dkt. 1622 at 70; *see also id.* at 59–70 (describing application of Virginia's statutory cap on punitive damages). For the reasons set forth in that opinion, Virginia's statutory cap has limited the punitive damages awarded to $350,000 in this action, and because the Court cannot "assess *additional* punitive damages against the defaulted defendants," as Plaintiffs have asked, Dkt. 1554 at 22 (emphasis added), their request must be denied.[3]

Lastly, the Court will consider Plaintiffs' request that the Court award prejudgment interest with respect to the compensatory damages award. Dkt. 1554 at 24–25. Plaintiffs assert that "[u]nder Virginia law, a plaintiff is entitled to an award of prejudgment interest on compensatory, though not punitive, damages." *Id.* at 24–25 (citing Va. Code §§ 8.01-382, 6.2-302). Plaintiffs write that, therefore, "the Court should award Plaintiffs prejudgment interest that began accruing on August 12, 2017 with respect to Plaintiffs' compensatory damages here." *Id.* at 25. The Court must deny the request.

---

[3] Plaintiffs do not ask the Court to shift any portion of the capped punitive damages awarded by the jury against the answering defendants upon the defaulted defendants instead. In any event, even if the Court had the power to shift punitive damages from those defendants found liable by the jury to the defaulted defendants, it would not. The Court already concluded that the answering defendants found liable at trial are responsible for the pro rata share of the capped punitive damages award, as would reflect the percentage of punitive damages awarded by the jury against each defendant. *See* Dkt. 1622 at 76–79. The Court further notes that it is not as if defaulted defendants have been able to shirk responsibility for their actions on account of their non-responsiveness to the court proceedings. As explained above, they will have joint and several liability with the answering defendants for the compensatory damages award, as a result of Virginia law on conspiracy liability.

"Virginia Code § 8.01-382 prohibits the imposition of pre-judgment interest by the Court in a jury case." *Monogram Snacks Martinsville, LLC v. Wilde Brands, Inc.*, No. 4:20-cv-30, 2022 WL 4296297, at *1 (W.D. Va. Sept. 16, 2022) (internal quotation marks omitted). The Supreme Court of Virginia has explained that "the principal distinction between pre-judgment and post-judgment interest is that the decision whether to award pre-judgment interest is discretionary *with the trier of fact*, while the application of post-judgment interest for all money damages is mandatory." *Id.* (quoting *Upper Occoquan Sewage Auth. v. Blake Constr. Co., Inc.*, 655 S.E.2d 10, 23 (Va. 2008)) (emphasis added). In this case, the jury, not the Court, was the trier of fact, and thus prejudgment interest would have been a discretionary decision for the jury to render—had it been asked. Yet Plaintiffs did not request a jury instruction on prejudgment interest, nor submit a verdict form that would have asked the jury to determine prejudgment interest. Dkts. 1224 at 73–78 (Plaintiffs' proposed instructions on damages); 1450, 1450-1 (Plaintiffs' revised proposed verdict form); 1439-2 at 74–79 (Plaintiffs' revised proposed jury instructions on damages). And Plaintiffs did not object to the Court's final verdict form—based largely on Plaintiffs' proposed verdict form—which omitted any question of prejudgment interest. Because the jury did not award prejudgment interest here and further as it cannot so be awarded by the Court in these circumstances, Plaintiffs' request will be denied. *See Monogram Snacks Martinsville*, 2022 WL 4296297, at *1.[4]

For these reasons, in an accompanying Order, the Court will grant in part and deny in part Plaintiffs' motion for default judgment against the Defaulted Defendants, enter default

---

[4] Plaintiffs also cite the federal statute providing for post-judgment interest in support of its request. *See* Dkt. 1554 at 25 (citing 28 U.S.C. § 1961). This statute does not support an award of prejudgment interest because unlike *prejudgment* interest, federal law mandates an award of *post-judgment* interest. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc) (citing 28 U.S.C. § 1961).

11

judgment against all Defaulted Defendants on Counts III and enter default judgment against Defendant Invictus on Count IV, and thereby hold them jointly and severally liable for the compensatory damages awarded in the trial in this case. However, the Court will deny in part Plaintiffs' motion to the extent it seeks an additional award of punitive damages beyond the capped $350,000 awarded by the jury, and the Court will also deny Plaintiffs' request for prejudgment interest.

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

ENTERED this  6th   day of January, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE