IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| ELIZABETH SINES et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-00072 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| JASON KESSLER et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' post-trial Motion for Attorney's Fees and Costs ("Pls.' Mot."), ECF No. 1552, and Bill of Costs, ECF No. 1553. *See* Order of Jan. 5, 2023, ECF No. 1624. Plaintiffs seek **$12,726,103.35** in attorney's fees under Virginia Code § 8.01-42.1(B), *see* Pls.' Mot. 8, 19, 21, 30; and **$546,018.46** in other costs under Rule 54(d) of the Federal Rules of Civil Procedure, *see id.* at 20, 30–31.[1, 2] The Motion follows a jury verdict finding seventeen individual and organizational Defendants liable to nine Plaintiffs for those Defendants' conduct planning and participating in Unite the Right on August 11–12, 2017, in Charlottesville, Virginia.[3]

---

[1] Pinpoint citations to documents filed on the electronic docket use the header page numbers generated by CM/ECF and exhibit labels used by the filing party.

[2] Plaintiffs also request $1,266,420.84 in reimbursement for certain discovery expenses specifically under the parties' Stipulation & Order for the Imaging, Preservation, and Production of Documents, *see* Pls.' Mot. 32 (citing ECF No. 383), which I signed and entered in November 2018. I will address that request by separate Order.

[3] The following Plaintiffs went to trial: Natalie Romero, April Muñiz, Thomas Baker, Elizabeth Sines, Marissa Blair, Marcus Martin, Chelsea Alvarado, Seth Wispelwey, and Devin Willis. *See* Jury Verdict ¶¶ 4, 8, 11, 14, ECF No. 1631-1. The jury returned a general verdict, or verdicts, against each of seventeen "non-defaulted" Defendants: Jason Kessler; Richard Spencer; Christopher Cantwell; James Fields Jr.; Robert "Azzmador" Ray; Elliott Kline; Matthew Heimbach; Matthew Parrott; Michael Hill; Michael Tubbs; Jeff Schoep; Vanguard America; League of the South; Identity Evropa; Traditionalist Worker Party; and National Socialist Movement. Jury Verdict ¶¶ 1–13; *see* Pls.' Mot. 8. Plaintiffs do not seek attorney's fees or costs against seven other Defendants who have been found in default under Rule 55(a) of the Federal Rules of Civil Procedure. *See* Pls.' Mot. 10 & n.2; Pls.' Reply 6 n.1, ECF No. 1605.

More specifically, the jury found all seventeen Defendants liable to all nine Plaintiffs for Virginia common law civil conspiracy (Count III); found Defendants Jason Kessler, Richard Spencer, Elliott Kline, Robert "Azzmador" Ray, Christopher Cantwell, and James Fields Jr. liable to Plaintiffs Natalie Romero, April Muñiz, Elizabeth Sines, Marissa Blair, Marcus Martin, Seth Wispelwey, and Devin Willis for racially, religiously, or ethnically motivated harassment, intimidation, or violence (Count IV, Va. Code § 8.01-42.1(A)); and found Defendant Fields liable to Plaintiffs Romero, Muñiz, Sines, Blair, Martin, Wispelwey, Chelsea Alvarado, and Thomas Baker for assault or battery (Count V) and for intentional infliction of emotional distress (Count VI) under Virginia law. *See* J. 1–3, ECF No. 1631; Jury Verdict ¶¶ 3–14. The jury did not return a verdict on the merits of Plaintiffs' federal claims that one or more of those seventeen Defendants conspired to commit racially motivated violence (Count I, 42 U.S.C. § 1985(3)), or knew about that alleged conspiracy and failed to stop it (Count II, 42 U.S.C. § 1986). *See* Jury Verdict ¶¶ 1–2.

On Count III, the jury awarded nominal compensatory damages each to Romero, Muñiz, Baker, Blair, Martin, Alvarado, and Willis; no compensatory damages to Sines or Wispelwey; $500,000 punitive damages against each individual Defendant; and $1 million punitive damages against each organizational Defendant. *See* J. 2 (citing Jury Verdict ¶¶ 4–5). On Count IV, the jury awarded $250,000 compensatory damages each to Romero and Willis, and $200,000 punitive damages each against Kessler, Spencer, Kline, Ray, and Cantwell. The jury did not assign any damages to Fields's liability on Count IV. *See id.* (citing Jury Verdict ¶¶ 6–9). On Counts V–VI, the jury awarded at least $50,000 compensatory damages each to Romero, Muñiz, Baker, Blair, Martin, and Sines, plus $12 million punitive damages against Fields. *See id.* at 2–3 (citing Jury Verdict ¶¶ 11–12, 14–15). In December 2022, the presiding District Judge affirmed

the jury's verdicts finding all Defendants liable; reduced the jury's total punitive damages awards on Counts III–VI, as required by Virginia's statutory cap on punitive damages, Va. Code § 8.01-38.1, and otherwise affirmed the jury's verdicts awarding nominal and compensatory damages. *See* ECF Nos. 1622, 1623.

*

Plaintiffs filed their Motion and Bill of Costs on March 9, 2022. Defendants Spencer, Kline, Ray, Jeff Schoep, Vanguard America, and National Socialist Movement ("NSM") did not respond to Plaintiffs' requests for fees and costs. *See* Pls.' Reply 6 n.1 (May 27, 2022); Sched. Order ¶ 7, ECF No. 101. Defendants Kessler, Damigo, and Identity Evropa; Defendants League of the South ("LOS"), Michael Hill, and Micheal Tubbs; Defendant Fields; and Defendants Heimbach, Parrott, and Traditionalist Worker Party ("TWP") filed briefs opposing Plaintiffs' requests for attorney's fees under Virginia Code § 8.01-42.1(B), but those briefs did not address Plaintiffs' separate requests for other costs under Rule 54(d). *See* Defs. Kessler, Damigo & Identity Evropa's Br. in Opp'n 1–5, ECF No. 1570; Defs. LOS, Hill & Tubbs's Br. in Opp'n 1–2, ECF No. 1571; Def. Fields's Br. in Opp'n 1–3; Defs. Heimbach, Parrott & TWP's Br. in Opp'n 1–5, ECF No. 1575; *accord* Pls.' Reply 6, 13 n.5. Defendant Cantwell, appearing pro se, filed a letter brief joining the legal argument made in Defendants Kessler, Damigo, and Identity Evropa's brief opposing Plaintiffs' requests for attorney's fees under Virginia Code § 8.01-42.1. Def. Cantwell's Br. in Opp'n ¶ 10, ECF No. 1601. Plaintiffs' Motion is now fully briefed. No party requested oral argument.

I. The Legal Framework

In the United States, parities are ordinarily required to bear their own costs of litigation, including their attorney's fees. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health &*

3

*Human Res.*, 532 U.S. 598, 602 (2001) ("[T]he prevailing party is not entitled to collect from the loser."). "This is the 'American Rule,' and it governs litigation in federal courts 'absent explicit congressional authorization' to the contrary." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15 (1994)). Rule 54(d) of the Federal Rules of Civil Procedure creates a presumption that litigation "costs—other than attorney's fees—should be allowed to the prevailing party" in any lawsuit brought in federal court. Fed. R. Civ. P. 54(d)(1); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). "The opposite presumption exists with respect to attorney's fees." *Marx*, 568 U.S. at 382. The court's authority to award attorney's fees flows from—and is strictly defined by—the specific statutory provision allowing such fees in the particular action. *See, e.g., N.C. Dep't of Transp. v. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 12 (1986) ("On its face, [42 U.S.C.] § 1988 does not authorize a court to award attorney's fees except in an action to enforce the listed [federal] civil rights laws."); *Rishell v. Computer Sci. Corp.*, 702 F. App'x 103, 104 n.* (4th Cir. 2017) ("We have recognized that state laws concerning the award of attorney's fees are generally substantive laws." (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999)).

A.      *Attorney's Fees*

Congress has authorized the award of reasonable attorney's fees to the "prevailing party" in civil actions brought under certain federal civil-rights statutes, including 42 U.S.C. §§ 1985 and 1986. *See* 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs" of litigation). "[T]o qualify as a prevailing party [under § 1988], a civil rights plaintiff must obtain at least some relief on the merits of [the] claim" for which Congress authorized fee shifting. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). That relief must "materially alter[] the legal relationship between the parties by modifying the

defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 112. If the claim is tried by jury, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought," *id.* at 111, even if the jury merely found that defendant liable for nominal damages, *id.* at 113 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against . . . on the merits" of the plaintiff's substantive claim for relief, "§ 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The jury did not return a verdict either on Plaintiffs' § 1985(3) claim in Count I or on their § 1986 claim in Count II. The Court declared a mistrial on those Counts and dismissed them without entering judgment on the merits. *See* J. 4. Accordingly, § 1988(b) does not allow Plaintiffs to recover any "attorney's fee as part of the costs" of litigating their federal civil-rights claims. *Cf. Ge v. U.S. Citizenship & Immigration Servs.*, 20 F.4th 147, 156 (4th Cir. 2021) ("Parties who obtain merely procedural orders are not prevailing parties for the purposes of fee-shifting statutes[.]" (citing *Buckhannon*, 532 U.S. at 605)).

The Court entered an enforceable judgment in Plaintiffs' favor on the merits of their Virginia state-law claims in: (a) Count III (common-law conspiracy); (b) Count IV (Va. Code § 8.01-42.1(A)); and (c) Count V (assault or battery). *See* J. 3 (affirming the jury's findings of Defendants' liability and holding that "[a]ll Defendants will be jointly and severally liable for the nominal and compensatory damages awarded by the jury on Counts III, IV, and V, which amount is $1,303,284 (emphasis omitted)). It also entered an enforceable judgment in certain Plaintiffs' favor against Fields on the merits of those Plaintiffs' state-law claim in Count VI

(intentional infliction of emotional distress ("IIED")). *See id.* ("Defendant Fields is additionally liable for the compensatory damages award on Count VI, which amount is $704,459."). Determining whether Plaintiffs may recover attorney's fees for prevailing on their state-law causes of action requires this federal court to apply Virginia's substantive law governing that issue. *See Fairfax v. CBS Corp.*, 2 F.4th 286, 296–97 (4th Cir. 2021). If Virginia law is not clear, then this Court must predict how the Supreme Court of Virginia "would [rule] if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). It may look to "recent pronouncements of general rules or policies by the state's highest court," among other sources, in making that prediction. *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999). But it "should not create or expand" Virginia law in the process. *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

Virginia's version of the American Rule creates a presumption that, "absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 449 (Va. 1991); *see Sidya v. World Telecom Exchange Comm'ncs*, 870 S.E.2d 199, 207 (Va. 2022) (statute); *Manchester Oaks Homeowner's Ass'n, Inc. v. Batt*, 732 S.E.2d 690, 702 (Va. 2012) (statute); *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006) (contract). *But see St. John v. Thompson*, 854 S.E.2d 648, 650 (Va. 2021) (equitable exception in fraud cases). Plaintiffs do not "identify a specific statutory grant of authority that enables [the] court to award attorney's fees to" any Plaintiff, *Cnty. Dep't of Soc. Servs. v. O'Quinn*, 523 S.E.2d 492, 493 (Va. 2000), for prevailing on the common-law conspiracy claim against all Defendants (Count III) or the assault or battery and IIED claims against Defendant Fields (Counts V&VI).

Virginia Code § 8.01-42.1 allows courts to award "reasonable" attorney's fees to "[a]ny aggrieved party who initiates and prevails in an action authorized by th[at] section," Va. Code § 8.01-42.1(B). As relevant here, § 8.01-42.1 creates a right of "action for injunctive relief or civil damages, or both, . . . for any person who is subjected to" racial, religious, or ethnic harassment, intimidation, or violence directed to his or her person. *Id.* § 8.01-42.1(A); *see* Jury Verdict ¶¶ 6, 8 (Count IV). Plaintiffs' "claim for fees [is] compensable, if at all, only if [they] proved a violation of . . . [that] statue." *Sidya*, 870 S.E.2d at 207. The jury's favorable verdict on Count IV establishes that Romero and Willis "prevailed" against Kessler, Spencer, Kline, Ray, and Cantwell on their claim under § 8.01-42.1(A) related to those Defendants' racially or religiously motivated harassment at the torchlight march on August 11, 2017, and that Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis prevailed against Fields on a separate claim under § 8.01-42.1(A) related to Fields's racially or religiously motivated violence at Unite the Right on August 12, 2017.[4] Jury Verdict ¶¶ 6, 8; *Sines v. Kessler*, No. 3:17cv72, 2022 WL 18026336, at *2–3, *9–12, *18, *21 (W.D. Va. Dec. 30, 2022) (Moon, J.) ("*Sines IV*"), *appeal docketed*, No. 23-1122 (4th Cir. Feb. 2, 2023); *see generally Chase v. DaimlerChrysler Corp.*, 587 S.E.2d 521, 523 (Va. 2003) (explaining that, for the purposes of determining "prevailing party" status under a Virginia fee-shifting statute, the prevailing party is the "party in whose favor a judgment is rendered, regardless of the amount of damages awarded" (cleaned up)).

But no Plaintiff plausibly alleged—let alone proved—that Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, or NSM subjected him or her to racially, religiously, or ethnically motivated harassment, intimidation, or violence in violation of § 8.01-42.1(A). *See Sines v. Kessler*, 324 F. Supp. 3d 765, 800–01 (W.D. Va. 2018)

---

[4] Plaintiffs Alvarado and Baker did not bring any claim under § 8.01-42.1(A). *See* Jury Verdict ¶¶ 6, 8.

(Moon, J.) ("*Sines I*"); Second Am. Compl. ¶¶ 364–67, ECF No. 557; Jury Verdict ¶¶ 6, 8. The Virginia Supreme Court would not consider any Plaintiff to have "prevailed" against any of those Defendants in an action authorized by § 8.01-42.1. *See Sidya*, 870 S.E.2d at 208; *Ulloa*, 624 S.E.2d at 50. Nonetheless, Plaintiffs argue that they may recover more than $12.7 million in attorney's fees incurred pursuing the entire litigation—and hold all seventeen Defendants jointly and severally liable for those fees—because Plaintiffs' other claims were factually "related" to or "intertwined" with certain Plaintiffs' successful claims against Kessler, Spencer, Kline, Ray, Cantwell, and Fields under § 8.01-42.1 in Count IV; and the jury found all seventeen Defendants liable on Plaintiffs' Virginia common-law conspiracy claim in Count III.[5] *See* Pls.' Mot. 21–25, 30; Pls.' Reply 7, 9–10. Their position presents two threshold legal questions: First, given that § 8.01-42.1(B) is the sole source of authority to shift attorney's fees in this action, can Plaintiffs recover such fees for time spent litigating *other* causes of action (successful or unsuccessful) that were factually intertwined with their successful claims under § 8.01-42.1(A)? *See* Pls.' Mot. 19, 24–25; Pls.' Reply 7–9. Second, does § 8.01-42.1(B) allow Plaintiffs to recover attorney's fees from a Defendant who has *not* been found liable to any Plaintiff under § 8.01-42.1(A)? *See* Pls.' Reply 9–10.

Plaintiffs say the answer to both questions is "yes." *See generally* Pls.' Mot. 21–25, 30; Pls.' Reply 7, 9–10. But they rely entirely on *federal* cases discussing attorney's fees awarded under *federal* fee-shifting statutes—most notably *Hensley v. Eckerhart*, 461 U.S. 424 (1983)—to support their position. As relevant here, *Hensley* instructed federal district courts how to calculate "a reasonable attorney's fee to prevailing parties in civil rights litigation," 461 U.S. at

---

[5] For simplicity, the Court refers to Kessler, Spencer, Kline, Ray, Cantwell, and Fields as the six "Count IV Defendants," and to Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, and NSM as the Count IV Defendants' "conspirators."

429; *see* 42 U.S.C. § 1988, "where a plaintiff is deemed 'prevailing' even though he [or she] succeeded on only some of his [or her] claims for relief," *Hensley*, 461 U.S. at 434, but all of those claims, if successful, would have allowed the plaintiff to recover attorney's fees, *see Kelley v. Little Charlie's Auto*, No. 4:04cv83, 2006 WL 2456355, at *6 (W.D. Va. Aug. 22, 2006) (rejecting prevailing plaintiff's reliance on *Hensley* where "only one of Plaintiff's claims that was ultimately submitted to the [jury] contained a guarantee of attorney's fees" if she prevailed, *see* Va. Code § 59.1-204, whereas "all of the claims initially brought by the *Hensley* plaintiffs guaranteed attorney's fees even though the plaintiffs only prevailed on some of them").

In those situations, the federal court answers two questions to determine whether the "initial fee calculation"—i.e., "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—is, in fact, "reasonable" in the prevailing plaintiff's case. *See Hensley*, 461 U.S. at 433–34. "First, did the plaintiff fail to prevail on claims that were *unrelated to the claims* on which he [or she] succeeded?" *id.* at 434 (emphasis added). "Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* If the answer to the first question is "yes," then the court should exclude from the award all hours spent litigating those unsuccessful, unrelated claims. *See id.* ("The congressional intent to limit awards to prevailing parties requires that these *unrelated claims* be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." (emphasis added)). But *Hensley* also recognized there will be cases where "[m]uch of counsel's time is devoted to the litigation as a whole" because the plaintiff's *successful* claims for relief "involve[d] a common core of facts" or were "based on related legal theories" as the plaintiff's *unsuccessful* claims. *See id.* at 435. In those cases, "the district court should focus on the significance of the overall relief obtained by

the plaintiff in relation to the hours reasonably expended on the litigation" as a whole rather than trying to "divide the hours expended on a claim-by-claim basis." *Id.* "Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee" that "encompass[es] all hours reasonably expended on the litigation[.]" *Id.* "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

Plaintiffs argue persuasively that their unsuccessful federal conspiracy claims in Counts I & II and their successful common-law conspiracy claim in Count III were "intertwined" with their successful § 8.01-42.1(A) claims in Count IV, as all four claims involved evidence tending to show each that Defendant's misconduct was racially motivated (Counts I & II) or motivated by racial, religious, or ethnic animosity (Counts III & IV). *See* Pls.' Mot. 24–25; *see, e.g.*, *Sines IV*, 2022 WL 18026336, at *10 (noting the jury heard "substantial evidence that Kessler had labored ceaselessly for months to create a violent racial flashpoint in Charlottesville that weekend" and praised the violent events as "'an incredible moment for white people'"); *id.* at *20 ("Spencer's racist invectives made behind closed doors to the Unite the Right organizers in its immediate aftermath [and] his stated intent to 'ritualistically humiliate' those in Charlottesville who had opposed him including Jewish and African American persons (to whom he referred by racial epithets) . . . provided strong evidence to the jury that Spencer and his codefendants had been co-conspirators engaged in a Virginia state law civil conspiracy to commit various unlawful acts, including racial, religious, or ethnic violence and intimidation in violation of Va. Code § 8.01-42.1."); *id.* at *23 (holding that Hill, Tubbs, and LOS were not entitled to directed verdict on Counts I & II because evidence presented to the jury of "League of

the South's communications—both in public and in private—more than substantiate[d] that they agreed with their codefendants to commit racially motivated violence . . . at Unite the Right"). Plaintiffs also assert that the jury's decision to award more than $26 million in damages on four of the six claims presented to it shows that Plaintiffs achieved "excellent results" overall, even though the jury did not return a verdict on Plaintiffs' claims that Defendants conspired to commit racially motivated violence in violation of federal law (Counts I & II). *See* Pls.' Mot. 28; Pls.' Reply 12–13.

But Plaintiffs do not cite a single Virginia Supreme Court decision holding that courts should follow *Hensley*'s "related claims" approach in awarding attorney's fees under Virginia law. *See* Pls.' Mot. 21, 23–24; Pls.' Reply 7–8 (citing Pls.' Mot. 21, 23–24). Nor could they. The Virginia Supreme Court "has steadfastly rejected this approach," *Zoroastrian Ctr. & Dabr-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 n.8 (4th Cir. 2016) (noting that Virginia law does not allow a prevailing party to recover fees for unsuccessful claims (citing *Ulloa*, 624 S.E.2d at 50)). *See, e.g.*, *Sidya*, 870 S.E.2d at 207–08; *Manchester Oaks*, 732 S.E.2d at 702; *Ulloa*, 624 S.E.2d at 49–50. Instead, "Virginia courts have held that where multiple claims exist, only one of which permits the recovery of attorney's fees, the party requesting attorney's fees must fairly and reasonably separate out its attorney's fees with specificity. *A party is not entitled to recover fees for work performed on claims which do not allow for attorney's fees*." *Couch v. Manassas Autocars, Inc.*, No. 62623, 2008 WL 8201041, at *2 (Va. Cir. Ct. July 17, 2008) (emphasis added) (citing *Ulloa*, 624 S.E.2d at 49); *accord Sidya*, 870 S.E.2d at 207–08; *Manchester Oaks*, 732 S.E.2d at 702. Accordingly, "*Hensley* and its progeny [are] simply not analogous—and therefore not helpful—to resolve the present matter." *Kelley*, 2006 WL 2456355, at *6.

\*

The Virginia Supreme Court has not interpreted § 8.01-42.1(B), so this federal court "must apply state law to predict how that court would" resolve Plaintiffs' fee petition. *Fairfax*, 2 F.4th at 296. "When interpreting statutes, the Supreme Court of Virginia has instructed that the intent of the legislature 'must be gathered from the words used, unless a literal construction would involve a manifest absurdity.'" *Id.* (quoting *Chase*, 587 S.E.2d at 522). "Under basic principles of statutory construction, [the court] consider[s] all relevant provisions of a statute and do[es] not isolate particular words or phrases." *Lee Cnty. v. Town of St. Charles*, 568 S.E.2d 680, 682 (Va. 2002). "When the language in a statute is clear and unambiguous, [the court is] bound by the plain meaning of that language." *Id.* Statutory language is "ambiguous" if, read in context, "the text can be understood in more than one way or refers to two or more things simultaneously, [or when] the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 786 S.E.2d 144, 147 (Va. 2016) (cleaned up). In that case, the "[c]ourt must apply the interpretation that will carry out the legislative intent behind the statute." *Id.* at 146 (quotation marks omitted).

The Virginia Supreme Court has recognized that at least some statutory "fee-shifting provisions . . . are designed to encourage private enforcement of the [substantive] provisions of the statute." *Wilkins v. Peninsula Motor Cars, Inc.*, 587 S.E.2d 581, 584 (Va. 2003) (discussing the Virginia Consumer Protection Act, Va. Code § 59.1-204(B)). Nonetheless, statutes allowing attorney's fees to a prevailing party are "subject to strict interpretation" because they derogate Virginia's consistent adherence to the American Rule. *Chacey v. Garvey*, 781 S.E.2d 357, 361 (Va. 2015); *see, e.g.*, *id.* at 360–61 (holding that a state statute allowing the prevailing party to recover her "directly associated legal costs" did not authorize attorney's fee award); *O'Quinn*,

523 S.E.2d at 493 (noting that the prevailing party "must identify a specific statutory grant of authority that enables a court to award attorney's fees to her" and holding that the phrase "further relief" in Virginia's Declaratory Judgment Act did not authorize attorney's fees); *cf. Lannon v. Lee Connor Realty Corp.*, 385 S.E.2d 380, 383 (Va. 1989) (reversing trial court's award of attorney's fees, which relied on a federal bankruptcy court's decision recognizing federal courts' inherent power to sanction bad-faith litigation conduct, because Virginia did not have "a specific . . . statutory provision" authorizing such awards at that time).

Section 8.01-42.1(B) states, "[a]ny aggrieved party who initiates and prevails in an action authorized by this section shall be entitled . . . in the discretion of the court to an award of . . . reasonable attorney fees in an amount to be fixed by the court." Va. Code § 8.01-42.1(B). "[T]his section" includes § 8.01-42.1(A), which provides (as relevant here) that "[a]n action for injunctive relief or civil damages, or both, shall lie for any person who is subjected to acts of (i) intimidation or harassment [or] (ii) violence directed against his [or her] person . . . where such acts are motivated by racial, religious, . . . or ethnic animosity." *Id.* § 8.01-42.1(A). But, "[t]he provisions of this section shall not apply to any actions between an employee and his [or her] employer, or between or among employees of the same employer, for damages arising out of incidents occurring in the workplace or arising out of the employee-employer relationship." *Id.* § 8.01-42.1(C). The question is whether the phrase "in an action authorized by this section," *id.* § 8.01-42.1(B), refers to the entire civil action involving all Plaintiffs' factually related legal claims, as Plaintiffs argue, *see generally* Pls.' Mot. 21–25, 30; Pls.' Reply 7, 9–10, or only to certain Plaintiffs' statutory causes of action under § 8.01-42.1(A), as some Defendants suggest, *see, e.g.*, Defs. Kessler, Damigo & Identity Evropa's Br. in Opp'n 3–4.

"An 'action' and a 'cause of action' are quite different" under Virginia law. *Trout v. Comm'w Transp. Comm'r of Va.*, 400 S.E.2d 172, 173 (Va. 1991). Virginia's civil code states that, "unless the [statutory] context otherwise requires, the term[s] 'Action' and 'suit' may be used interchangeably and shall include *all civil proceedings upon claims at law, in equity, or statutory in nature* and whether in circuit courts or district courts[.]" Va. Code § 8.01-2(1) (emphasis added). A "cause of action," on the other hand, is "a set of operative facts which, under the substantive law, may give rise to a right of action." *Trout*, 400 S.E.2d at 174 (internal quotation marks omitted); *see* Va. Code § 8.01-273(A). "A right of action is a remedial right to presently enforce a cause of action." *Stone v. Ethan Allen, Inc.*, 350 S.E.2d 629, 631 (Va. 1986). A "claim" is the procedural vehicle for a plaintiff (or defendant bringing a counterclaim or crossclaim) to assert, or "plead," that remedial right in a complaint or other pleading. Va. Code § 8.01-272 ("In any civil action, *a party may plead* as many matters, whether of law or fact, as he shall think necessary. A party may join *a claim* in tort with one in contract provided that all *claims* so joined arise out of the same transaction or occurrence. The court . . . may order a separate trial for any *claim*." (emphasis added)); *see also id.* § 8.01-233 ("A defendant who pleads a counterclaim or cross-claim shall be deemed to have brought an action at the time he files such pleading.").

Read together, and applying the Virginia Supreme Court's "strict interpretation" standard, § 8.01-41.2(A), (B), and (C) make clear the Virginia General Assembly intended to allow a prevailing plaintiff to recover his or her reasonable attorney's fees incurred litigating a successful § 8.01-42.1(A) claim only, not fees incurred litigating any other claims. Subsection (A) identifies a specific cause of action and right of action "authorized by" § 8.01-42.1 and sets forth the elements of "an action for injunctive relief or civil damages, or both . . . for any person

14

who is subjected to acts of" racially, religiously, or ethnically motivated harassment, intimidation, or violence against his or her person. *Id.* § 8.01-42.1(A). Subsection (B) says that it applies only to the party who "initiated and prevailed in *an action* authorized by *this section*," *id.* § 8.01-42.1(B) (emphasis added), not "that it applies 'in *any* action' . . . , suggesting the legislature did not mean the former to mean the latter," *Sines IV*, 2022 WL 18026336, at *28 (quoting Va. Code § 8.01-38.1). Moreover, subsection (C) identifies certain "actions" that *are not* "authorized by this section"—i.e., "*any actions* between an employee and his employer [or coworkers] *for damages* arising out of incidents occurring in the workplace or arising out of the employee-employer relationship." *Id.* § 8.01-42.1(C) (emphasis added). This provision further suggests that the General Assembly intended to restrict attorney's fees awards to the reasonable fees the plaintiff incurred successfully litigating only the claim "authorized by this section," *id.* § 8.01-42.1(B), and did not authorize awards for attorney's fees incurred litigating any other claim. *Cf. Ulloa*, 624 S.E.2d at 49 (holding that a contractual provision that allowed the prevailing employer to recover all attorney's fees "by reason of any action relating to" the employment contract authorized fees related to successful breach of contract claim, but not those related to the successful statutory claim because proving a violation of the statute was "not dependent upon provisions contained in [the] contract between the parties").

**

Even if the statute's text is ambiguous, the Virginia Supreme Court has unequivocally held that "in an action *encompassing several claims* the prevailing party is entitled to an award of costs and attorneys' fees *only for those claims* for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed." *Manchester Oaks*, 732 S.E.2d at 702 (emphasis added) (citing *Ulloa*, 624 S.E.2d at 50). Thus, the party seeking attorney's fees under

a contractual or statutory fee-shifting provision has "the burden to establish to a reasonable degree of specificity those attorney's fees associated with" the successful claim that authorizes such award. *Ulloa*, 624 S.E.2d at 50. Under Virginia law, it simply does not matter if the party's other claims, successful or unsuccessful, "were intimately intertwined [with] and depended on a common factual basis" as that claim. *Ulloa*, 624 S.E.2d at 49; *see Hair Club for Men v. Ehson*, No. 1:16cv236, 2017 WL 1250998, at *4 (E.D. Va. Apr. 3, 2017) ("Virginia courts have applied this reasoning in rejecting attorney's fees for successful claims . . . [lacking an] independent statutory or contractual right to recovery."). A party cannot "recover fees for work performed on claims [that] do not allow for attorney's fees." *Couch*, 2008 WL 8201041, at *2 (citing *Ulloa*, 624 S.E.2d at 49); *cf. AV Auto. LLC v. Gebreyessus*, 877 S.E.2d 493, 500–02 (Va. 2022) (rejecting trial court's conclusion "that 'it would be impossible to separate time spent solely defending against the frivolous . . . claim because [plaintiff] mixed in that frivolous claim with its request for damages within nearly every count,'" reversing "award of sanctions in the full amount of [defendant's] requested attorney's fees" where defendant's "attorneys provided detailed billing statements" but trial "court failed to make any attempt to segregate the amounts incurred because of the [plaintiff's] sanctionable conduct" from the amount of fees requested, and remanding "for a recalculation of the attorney's fees" under § 8.01-271.1); *West Square, LLC v. Commc'n Techs., Inc.*, 649 S.E.2d 698, 703 (Va. 2007) ("Even though claims may be intertwined and have a common factual basis, West Square, as the party seeking an award of costs and expenses, had 'the burden to establish to a reasonable degree of specificity' those costs and expenses associated with the [qualifying] dispute." (quoting *Ulloa*, 624 S.E.2d at 50)).

The Virginia Supreme Court first articulated this "claim-by-claim" approach in *Ulloa* and *West Square*, both of which involved costs or attorney's fees sought under private contracts. In

*Manchester Oaks* (2012), it extended this approach to cases involving fee-shifting statutes. 732

S.E.2d at 702 ("Plaintiffs bear the burden of establishing the amount of costs and fees arising

from the [statutory] breach of contract claim for which the statute entitles them to an award."

(citing *Ulloa*, 624 S.E.2d at 50)). *Contra* Pls.' Reply 9 (arguing that *Ulloa* and *West Square* do

not apply here because "[i]n both of those cases, fees were awarded not under a Virginia statute,

but rather under contractual provisions that clearly specified the terms of the fee awards"). The

Virginia Supreme Court's strongest pronouncement of its claim-by-claim approach came in

March 2022, shortly after Plaintiffs filed this Motion. *See generally Sidya*, 870 S.E.2d at 207–08.

The *Sidya* Court held that Virginia's fee-shifting statutes "*only* authorize fees incurred in the

prosecution of th[ose] specific statutory claims—*not causes of action created by other statutes or

by common law.*" *Id.* at 207 (emphasis added). "For a fee award to survive appellate scrutiny, it

must be supported by sufficient evidence that tailors the fees to the specific successful claims

triggering the [statutory] right to such an award . . . and to the specific defendants against whom

the claims could be asserted." *Id.* at 208 (citing *Manchester Oaks*, 732 S.E.2d at 702); *cf. AV

Auto.*, 877 S.E.2d at 501 ("[T]he circuit court abused its discretion in failing to segregate the

sanctionable [frivolous] claim from the attorney's fees requested.").

It is worth noting that *Ulloa*, *West Square*, *Manchester Oaks*, and *Sidya* were relatively

straight-forward cases in which the nature of the prevailing party's substantive claims, the

litigation's procedural history, or both, provided some logical way for the court to separate the

attorney's fees or costs "associated with" a successful "triggering" claim from the fees or costs

associated with either unsuccessful claims or successful claims that did not allow fee-shifting.

*See, e.g.*, *Ulloa*, 624 S.E.2d at 49 (contractual provision that allowed prevailing employer to

recover all attorney's fees "by reason of any action relating to" employment contract did not

17

authorize attorney's fees for successful statutory claim that was "not dependent upon provisions contained in [the] contract between the parties"); *Manchester Oaks*, 732 S.E.2d at 702 (explaining, in a case where statute authorized plaintiffs to recover fees "only on claims that (a) were brought to enforce the Declaration and (b) they prevailed upon," plaintiffs' "claim for breach of fiduciary duties satisfie[d] neither criterion," their claim for declaratory and injunctive relief satisfied the first criterion, but it did "not satisfy the second because it was abandoned," and the "breach of contract claim satifie[d] both criteria" so plaintiffs were "statutorily entitled to an award of costs and fees on it" but not the other two). This case, on the other hand, was not at all straightforward. Plaintiffs' litigation team claims 46,950 hours spent investigating, developing, and litigating an extraordinarily complex, *see* Pls.' Mot. 19–20, "fact-intensive, multiple-defendant, civil-rights conspiracy case in which [P]laintiffs prevailed on fewer than all claims and seek fees pursuant to a fee-shifting provision applicable to just one of those claims," Pls.' Mot. Ex. 30, Decl. of David Dinielli, Esq. ¶ 9, ECF No. 1552-30. The difficulty here is not so much that Plaintiffs' § 8.01-42.1 claim *itself* was "intimately intertwined" with or "depended upon a common factual basis" as their other claims, *Ulloa*, 624 S.E.2d at 50; *see* Pls.' Mot. 24–25, but that the *nature and amount of work* necessary to successfully litigate the § 8.01-42.1 claims necessarily overlapped with work done on claims for which Plaintiffs cannot recover any attorney's fees under Virginia law, *see* Dinielli Decl. ¶¶ 9, 17–18, 20–28.

This overlap is especially apparent for the work associated with Counts I–IV. *See* Dinielli Decl. ¶¶ 18, 20–22, 27. For example, "Plaintiffs reasonably sought myriad communications, documents, and ESI that could help them prove each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events," *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1143291, at *5 (W.D. Va. Mar. 24, 2021)

("*Sines II*"), the central legal issue in Counts I and II, and a potential basis for all seventeen Defendants' liability in Count III, *see Sines I*, 324 F. Supp. 3d at 799–801. Much of that information would have revealed circumstantial facts about the alleged agreement itself, such as individuals' communications and relationships with potential conspirators. *See Sines II*, 2021 WL 1143291, at *10; Pls.' Mot. 16 ("Plaintiffs likewise had to pursue discovery directly from cellular phone providers . . . in order to show the extent of Defendants' communications with other Defendants and third parties leading up to and during the weekend of August 11 and 12, 2017."). But at least some of that information also would have "reveal[ed] insights about the individuals' intent and motivation," Dinielli Decl. ¶ 21, to engage in racial, religious, or ethnic harassment, intimidation, or violence in violation of § 8.01-42.1, the central legal issue in Count IV. *See Sines I*, 324 F. Supp. 3d at 799–801. Indeed, the jury saw and heard multiple communications where alleged conspirators openly expressed "animosity" toward Jewish and African American persons, Va. Code § 8.01-42.1(A), while planning Unite the Right. *See Sines IV*, 2022 WL 18026336, at *10, *20, *23.

There are no Virginia Supreme Court decisions reviewing an award of attorney's fees in a case comparable to this one. Nonetheless, I must follow Virginia's claim-by-claim approach in resolving Plaintiffs' request for attorney's fees under § 8.01-42.01(B). *See AV Auto*, 877 S.E.2d at 500–02. In doing so, I must ensure that Plaintiffs present "sufficient evidence," such as reliable billing records or "witness estimations," that the requested fees compensate work associated with their successful § 8.01-42.01(A) claims against Kessler, Spencer, Kline, Ray, Cantwell, and Fields. *See Sidya*, 870 S.E.2d at 207–08 (rejecting prevailing plaintiffs' assertion that their attorney's "fees did not need to be divided by claim or by defendant because all of the legal work compensated by the requested fees would have had to be performed to support the

19

specific [successful] fee-shifting claims" against the losing defendant, and vacating $1.6 million award of attorney's fees attributed to jury trial because "plaintiffs had only testified from a brief summary of the fees, and no further documentation was provided" to support their request); *AV Auto.*, 877 S.E.2d at 501 ("We do not find that it would impose additional and unnecessary burdens on the circuit court to segregate fees related to the [sanctionable] claim, as [defendant's] attorneys provided detailed billing statements and invoices." (quotation marks omitted)). But I am "not require[d] . . . to pore over pages and pages of billing records to evaluate the reasonableness of each line item." *Lambert v. Sea Oats Condo. Ass'n*, 798 S.E.2d 177, 184 (Va. 2017) (cleaned up). Moreover, I do not read *Sidya* or its predecessors as precluding an award of reasonable attorney's fees for work Plaintiffs' litigation team did on the successful § 8.01-42.1 claims just because that work was *also* used to advance another claim—successful or unsuccessful—that does not allow fee-shifting. *See, e.g.*, *Sidya*, 870 S.E.2d at 208 (affirming award of attorney's fees to prevailing plaintiff, under two Virginia fee-shifting statutes, over defendant's objection that plaintiff "failed to demonstrate that the fees were incurred *only* on the" two statutory claims (emphasis added)); *Manchester Oaks*, 732 S.E.2d at 702 ("[T]he Plaintiffs bear the burden of establishing the amount of costs and fees arising from the breach of contract claim for which the statute entitles them to an award."); *Schlegel v. Bank of Am., N.A.*, 628 S.E.2d 362, 369 (Va. 2006) (reversing and remanding fee award where prevailing interpleader's billing records contained "entries that relate *solely* to attorney's fees incurred" defending against Schlegel's non-triggering claims and the trial court "did not determine whether the amount awarded represented compensation for services that were necessary and appropriate to the cross-bill for interpleader" that authorized fee award); *cf. Signature Flight Support Corp. v. Landow Aviation Ltd. P'Ship*, 730 F. Supp. 2d 513, 528 (E.D. Va. 2010) ("[T]he holding in *Ulloa* simply

places the burden on a party seeking attorney's fees to establish that the fees sought are

'associated' with a successful claim. Thus, Plaintiff is not precluded from recovering attorneys'

fees on the work that it performed on a successful claim just because the associated work was

also used to advance an unsuccessful claim." (quoting *Ulloa*, 624 S.E.2d at 43)).

The Virginia Supreme Court has also indicated that a prevailing plaintiff may collect

attorney's fees only from a defendant, or defendants, who has been found liable to the plaintiff

on the underlying claim for which the fee award is authorized.[6] *See, e.g.*, *Sidya*, 870 S.E.2d at

---

[6] The only Fourth Circuit case on point, *Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1352 (4th Cir. 1991) (*Johnson I*), *vacated on other grounds*, 974 F.2d 1408, 1419 (4th Cir. 1992) (en banc) (*Johnson II*), is not inconsistent. In *Johnson I*, the panel explained that Plaintiff Johnson's counsel had "submitted billing sheets for the entire course of the litigation, making no distinction between *actions pursued against* [Defendant] Wines and those pursued against [Defendant] Hugo's Skateway." 949 F.2d at 1352 (emphasis added). "Johnson did not prevail against Wines on the [§ 8.01-42.1] racial harassment claim," but he did prevail against Hugo's Skateway on that statutory claim. *See id.* "Wines, on the other hand, had judgment entered against him on the [42 U.S.C. §] 1983 claim, the false arrest and false imprisonment claims, and on an assault and battery claim." *Id.* The panel held that Virginia Code § 8.01-42.1(B) did not allow Johnson to recover *from Hugo's Skateway* any "attorney's fees for claims as to which [Johnson] did not, in fact, prevail against Hugo's Skateway, but as to which he did prevail against Wines." 949 F.3d at 1352. Rather, Hugo's Skateway could be held responsible only for attorney's fees related to Johnson's successful § 8.01-42.1 "action[] pursued against" Hugo's Skateway. *See id.* (distinguishing *Hensley*, 461 U.S. 424, "for the simple reason that Johnson did prevail in every one of his claims, but partly only against different defendants" and explaining that Johnson was "seeking reimbursement from Hugo's Skateway for prevailing on three out of four claims against Wines though not against Hugo's"). To that end, *Johnson I* supports a conclusion that Plaintiffs' failure to name the Count IV Defendants' conspirators as party-defendants to the § 8.01-42.1(A) claims in Count IV necessarily protects those individuals and organizations from fee liability under § 8.01-42.1(B).

On rehearing en banc, the Fourth Circuit vacated *Johnson I* and, as relevant here, remanded the attorney's fee issue to the district court because it appeared "that the district court may . . . have reduced the ultimate fee award as a result of Johnson's success on only *one of the three counts raised against Hugo's*, despite the fact that he received a sizeable verdict and that *all three counts* arose from 'a common core of facts.'" *Johnson II*, 974 F.2d at 1419 (emphasis added) (quoting *Hensley*, 461 U.S. at 435). Thus, *Johnson II* was not about whether, under Virginia law, one defendant can be held liable to the plaintiff for attorney's fees incurred litigating successful claims "raised against" *other* defendants. It was simply an application of *Hensley*'s framework instructing federal courts how to calculate "reasonable" attorney's fees in civil-rights cases when the "prevailing" plaintiff succeeded on some, but not all, of his claims for relief against a defendant and those claims "involve[d] a common core of facts or [were] based on related legal theories." *See* 974 F.2d at 1419 (citing *Hensley*, 461 U.S. at 434–37). Nothing in *Johnson II* suggests Plaintiffs may hold the conspirator Defendants liable for attorney's fees under Virginia Code § 8.01-42.1(B).

207–08; *Ulloa*, 624 S.E.2d at 50. The two cases Plaintiffs cite to support their request for holding the conspirator Defendants jointly and severally liable for attorney's fees under § 8.01-42.1(B), *see* Pls.' Reply 9–10, both involved defendants who were all found liable to the plaintiff on the underlying federal statutory claim that authorized fee-shifting. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676–78 (4th Cir. 2015) (Sarbanes-Oxley Act); *Essex v. Randall*, No. Civ. A. DKC20033276, 2006 WL 83424, at *1, *5, *7 (D. Md. Jan. 11, 2006) (ERISA). Put differently, the plaintiffs in those cases established "the 'crucial connection' between [each defendant's] liability on the merits" of the unlawful act and the defendant's "liability for attorneys' fees under [the] fee-shifting statute[]." *In re Crescent City Estates*, 588 F.3d 822, 827 (4th Cir. 2009) (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989)). Conversely, a defendant's "status as a nonparty" to a specific claim for relief that allows fees to the prevailing plaintiff necessarily "protects" that defendant "from [fee] liability arising from that claim." *Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002) (citing *Zipes*, 491 U.S. at 762; *Graham*, 473 U.S. at 161–62). I am confident the Virginia Supreme Court would reach the same conclusion in this case. *Cf. Reineck v. Lemen*, 792 S.E.2d 269, 275–76 (Va. 2016) (holding that Virginia Code § 64.2-795, which allows courts in any "judicial proceeding involving the administration of a trust" to award "reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy," did not authorize "an award of attorney's fees against a litigant personally when that litigant is acting in a representative capacity" as the trust's curator).

**

To summarize, Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis may recover their "reasonable and necessary" attorney's fees "associated with" their successful

claims that Defendants Kessler, Spencer, Kline, Ray, Cantwell, and Fields subjected those Plaintiffs to racial, religious, or ethnic harassment, intimidation, or violence on August 11–12, 2017, in violation of Virginia Code § 8.01-42.1(A).[7] *See Sidya*, 870 S.E.2d at 207–08. The Court may hold Kessler, Spencer, Kline, Ray, Cantwell, and Fields jointly and severally liable for those attorney's fees. *Cf. Boyce v. Pruitt*, No. 05-3315, 2010 WL 7375630, at *7 (Va. Cir. Ct. July 28, 2010) (holding attorney and client jointly and severally liable for attorney's fees awarded under Virginia statute where their litigation misconduct "was a coordinated effort"). Additionally, Plaintiffs' counsel "may be reimbursed for [their] time spent in seeking fees under a fee-shifting statute," as long as they have not billed for time spent on "merely housekeeping [tasks] or unnecessary work." *Couch*, 2008 WL 8201041, at *7. The Court may not award attorney's fees (as opposed to Rule 54 costs) against any Defendant not named as a party-defendant to Plaintiffs' § 8.01-42.1 claims in Count IV. *See Reineck*, 792 S.E.2d at 275–76.

\*\*\*

Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis also bear the burden to show "that the requested fees are reasonable and that they were necessary" to litigating their successful § 8.01-42.1(A) claims against Kessler, Spencer, Kline, Ray, Cantwell, and Fields. *See Sidya*, 870 S.E.2d at 208; *Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998). "[T]he amount of recoverable attorney's fees rests within the sound discretion of the trial court," *Cangiano v. LSH Bldg. Co.*, 623 S.E.2d 889, 894 (Va. 2006), guided by certain relevant factors. The Virginia Supreme Court has "identified seven factors for courts to consider" in determining a "reasonable" attorney's fee award:

---

[7] As noted, Plaintiffs Alvarado and Baker did not bring any claim under § 8.01-42.1(A). *See* Jury Verdict ¶¶ 6, 8. Accordingly, any such award should be made to Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis.

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Lambert*, 798 S.E.2d at 182 (cleaned up).[8] A trial court abuses its discretion when it does not consider a "relevant factor that should have been given significant weight," when it "give[s] significant weight" to an "irrelevant or improper factor," or "when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Id.* (quotation marks omitted). Within those parameters, the trial court enjoys wide latitude to determine the extent to which the prevailing party has "prov[en] 'that the requested fees are reasonable *and* that they were necessary,'" *Sidya*, 870 S.E.2d at 208 (emphasis added) (quoting *West Square*, 649 S.E.2d at 702), to successfully litigating the claim on which that party may recover fees. *See Portsmouth 2174 Elmhurst*, 837 S.E.2d at 515 (noting that the trial court "is not required to consider all of the factors . . . in every situation, and particular factors may have added or lessened significance depending on the circumstances of each case" (internal quotation marks omitted)); *Denton v. Browntown Valley Assocs.*, 803 S.E.2d 490, 497 (Va. 2017) (affirming amount of attorney's fee award where the trial court's order "expressly referred to" each *Lambert* factor and the "record reflect[ed] that the court received evidence and expert opinion testimony to support each of them"); *Dewberry & Davis, Inc. v. C3NS, Inc.* 732 S.E.2d 239, 246 (Va. 2012) (reiterating that it is the "province of the trial court to determine" if

---

[8] Plaintiffs briefed their motion using the twelve "*Johnson/Kimbrell*" factors that the Fourth Circuit requires federal district courts to consider when determining a reasonable attorney's fee award under federal law. Pls.' Mot. 23–28. The Virginia Supreme Court has never adopted this "federal" standard as its own. *Cerroni v. Douglas*, No. 0389-22-4, 2023 WL 138144, at * (Va. Ct. App. Jan. 10, 2023) (citing *Portsmouth 2174 Elmhurst, LLC v. City of Portsmouth*, 837 S.E.2d 504, 515 (Va. 2020)); *see also West Square*, 649 S.E.2d at 703. Accordingly, I will consider the seven factors articulated in *Lambert* and its numerous predecessors.

requested fees are "reasonable, necessary, and appropriate to the particular circumstances of the litigation," but remanding fee award because trial court's conclusion that the amount awarded was "'fair and reasonable' did not resolve the [separate] issue of whether those fees were necessary" to prevailing party's success).

B.    *Other Costs*

Rule 54(d) creates a presumption that "costs—other than attorney's fee—should be allowed to the prevailing party" in any lawsuit brought in federal court, Fed. R. Civ. P. 54(d)(1).[9] *See Marx*, 568 U.S. at 377. The phrase "prevailing party" generally means the same thing as in federal fee-shifting statutes—i.e., the "'party in whose favor a judgment is rendered'" effecting some "'judicially sanctioned change in the legal relationship of the parties.'" *Malibu Media, LLC v. Baiazid*, 152 F. Supp. 3d 496, 500 (E.D. Va. 2015) (quoting *Buckhannon Bd. & Home Care*, 532 U.S. at 601). This Court's judgment affirming the jury's verdict as to Defendants' liability on Counts III–VI establishes that all nine Plaintiffs "prevailed" against all seventeen Defendants who went to trial. *See* J. 3–4; Jury Verdict ¶¶ 3, 6, 8, 10, 13. Thus, Plaintiffs may recover from those Defendants the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification ad the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

---

[9] While Plaintiffs say they are bringing this request under both Rule 54(d)(1) and Virginia Code § 8.01-42.1(B), *see* Pls.' Mot. 30, they rely entirely on Rule 54(d)(1) and 28 U.S.C. § 1920, as well as federal court decisions applying those federal authorities, to support the request. *See id.* at 30–31 & n.12. They have made no effort to show that any of their requested costs are allowed under Virginia law. *See generally Chacey*, 781 S.E.2d at 361 ("[T]he term 'costs' is limited to the costs necessary for the prosecution of a suit[.]"). Accordingly, this R&R does not address any requests for costs under § 8.01-42.1(B). *See Hughes v. B/E Aerospace, Inc.*, No. 1:12cv717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect the court to do the work that it elected not to do.").

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretations services under section 1828 of this title.

28 U.S.C. § 1920(1)–(6); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565–66 (2012). Rule 54(d)(1) does not allow the Court to award Plaintiffs any costs or litigation expenses "not enumerated in § 1920." *Taniguchi*, 566 U.S. at 565. "The prevailing party bears the [initial] burden of showing that the requested costs are allowed by § 1920." *Fells v. Va. Dep't of Transp.*, 605 F. Supp. 2d 470, 743 (E.D. Va. 2009).

Additionally, "the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx*, 568 U.S. at 377. "Factors justifying denying costs include misconduct by the prevailing party, the losing party's inability to pay, excessiveness of the costs in a particular case, the limited value of the prevailing party's victory, and the closeness and difficulty of the issues decided." *McLaurin v. Liberty Univ.*, No. 6:21cv38, 2022 WL 16953656, at *2 (W.D. Va. Nov. 15, 2022) (Moon, J.) (citing *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). Nevertheless, "it is incumbent upon the unsuccessful party to show" costs should not be awarded to the prevailing party. *Ellis v. Grant Thornton LLP*, 434 F. App'x 232, 235 (4th Cir. 2011) (citing *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994)); *see Fells*, 605 F. Supp. 2d at 742.

III. Discussion

A.    *Attorney's Fees*

Plaintiffs submitted more than 1,300 pages of detailed "accountings, based on contemporaneous records," documenting specific litigation-related tasks that 26 attorneys and

paralegals performed in this case between August 2017 and March 2022.[10] *See generally* Decl. of Yotam Barkai, Esq. ¶¶ 18–24 (Kaplan, Hecker & Fink ("KHF")), ECF No. 1552-1; Barkai Decl. Ex. A, KHF Billing R. 2–780, ECF No. 1552-2; Decl. of Karen Dunn, Esq. ¶¶ 13–18 (Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss")), ECF No. 1552-24; Dunn Decl. Ex. A, Paul Weiss Billing R. 2–93, ECF No. 1552-25; Decl. of Alan Levine, Esq. ¶¶ 12–18 (Cooley, LLP), ECF No. 1552-26; Levine Decl. Ex. A, Cooley Billing R. 2–280, ECF No. 1552-27; Decl. of Jessica Phillips, Esq. ¶¶ 12–18 (Boies Schiller Flexner ("BSF")), ECF No. 1552-28; Phillips Decl. Ex. A, BSF Billing R. 2–226, ECF No. 1552-27. Those accountings show **46,610.8** hours spent investigating, developing, and litigating all six Counts that Plaintiffs presented to the jury, plus **339.4 hours** spent on this fee petition:

| Litigation Phase | Date Range | Hours Claimed | Total Fee Claimed |
|---|---|---|---|
| Investigation & Complaint | Aug. 24 – Oct. 10, 2017 | 317.9 | $69,160.00 |
| Motions to Dismiss | Oct. 11, 2017 – Mar. 6, 2018 | 903.4 | $252,247.50 |
| Discovery & Summary Judgment | Mar. 7, 2018 – Aug. 23, 2021 | 30,666.1 | $8,302,588.00 |
| Pretrial Disclosures & Motions | Aug. 24 – Oct. 24, 2021 | 8,098.7 | $2,233,788.00 |
| Jury Trial | Oct. 25 – Nov. 23, 2021 | 6,624.7 | $1,941,880.00 |
| Motion for Fees & Costs | Nov. 24, 2021 – Mar. 2, 2022 | 339.4 | $73,677.00 |
| *Prior Fee Motions* | | | *-$147,236.65* |
| **Total** | | **46,950.2** | **$12,726,103.85** |

---

[10] Plaintiffs' counsel "removed any attorney hours for non-legal or administrative tasks, and also adjusted hours that exceeded what would typically be charged to a client for this kind of work" at their firm before submitting these records. Barkai Decl. ¶ 23; Dunn Decl. ¶ 18; Levine Decl. ¶ 18; Phillips Decl. ¶ 18.

*See* Pls.' Mot. 19–20. Plaintiffs' counsel did not follow Virginia's claim-by-claim approach when preparing their billing records. *See generally* Pls.' Mot. 21, 23–25, 29–30; Pls.' Reply 7–10. Given that the legislative policy behind fee-shifting provisions in civil rights statutes is to "encourage private enforcement" of those statutes, *Wilkins*, 587 S.E.2d at 584; *see also Commn'w ex rel. Fair Hous. Bd. v. Windsor Plaza Condo Ass'n*, 768 S.E.2d 79, 95 (Va. 2014), however, the Court should exercise its discretion to award reasonable attorney's fees to Plaintiffs for successfully litigating their § 8.01-42.1(A) claims in this case. Accordingly, before analyzing the reasonableness of the attorney's fees, I have endeavored "to segregate the amounts [Plaintiffs] incurred" on Count IV, *see AV Auto.*, 877 S.E.2d at 501, from the amounts related solely to Plaintiffs' claims in Counts I, II, III, V, and/or VI, *see Sidya*, 870 S.E.2d at 208; *Schlegel*, 628 S.E.2d at 369.

> 1.    *Attorney's Fees Associated With Count IV*

Plaintiffs' billing records clearly show they incurred attorney's fees "associated with" their successful § 8.01-42.1 claims in Count IV at each stage of the litigation. For example, their complaint alleged that Defendants subjected (or conspired to subject) certain Plaintiffs to racial, religious, or ethnic harassment, intimidation, or violence in violation of Virginia Code § 8.01-42.1. *See* Compl. ¶¶ 322–25, 334–37. Plaintiffs' counsel should be fairly compensated for some portion of the 318 hours it took to investigate, "research, write, and file" that pleading, *Lambert*, 798 S.E.2d at 184, even though it also included other legal claims and factual allegations, *cf. West Square*, 649 S.E.2d at 703–04 (prevailing party was entitled to recover the civil filing fee, costs of serving witness subpoenas, and court reporter expenses, but was not entitled to recover "requested expenses for depositions and miscellaneous items" because party "did not 'establish to a reasonable degree of specificity' what portion of those expenses were incurred with regard

to the lease dispute, as opposed to the non-suited claim" (quoting *Ulloa*, 624 S.E.2d at 50)).

Kessler, Spencer, Kline, Ray, and Cantwell each moved to dismiss Plaintiffs' original § 8.01-42.1 claim against them, *see Sines I*, 765 F. Supp. 3d at 800–01, so Plaintiffs also necessarily incurred attorney's fees "associated with" that claim for time spent researching, writing, and arguing those motions, *see*, *e.g.*, KHF Billing R. 16, 27–28, 50–53; BSF Billing R. 2, 19–25, 29–33,25; Cooley Billing R. 10, 26, 98. *See Lambert*, 798 S.E.2d at 184 ("There may be pretrial motions to research, write, and argue.").

Fact discovery in this case was complex, expansive, and voluminous. *See* Dinielli Decl. ¶ 27 ("The complexity of the facts determines the amount and type of discovery necessary to uncover them, not the number of claims."). Plaintiffs' outside expert, David Dinielli, Esq., submitted a declaration illustrating just how complex and time-consuming discovery can be in a "fact-intensive, multi-defendant, civil-rights conspiracy case" like this one. *Id.* ¶ 9. When Plaintiffs filed this lawsuit in October 2017, the world had seen and heard reports of the torch march, overtly racist and antisemitic chants, and violent clashes in Charlottesville a few months earlier. *See id.* ¶ 18. But "[t]he world had not yet seen or heard about the planning and coordination that enabled the conflagration." *Id.* "Understanding the planning and coordination was important not just for the sake of completing the historical record; it was also crucial to understanding who bore responsibility for the events and who should pay damages for injuries suffered as a result." *Id.* "The universe of potentially relevant facts" in this case was "not just large, it was also diffuse." *Id.* ¶ 22(a); *accord Sines II*, 2021 WL 1143291, at *5.

The parties served 78 sets of written discovery, Barkai Decl. ¶¶ 13–14, that needed to be propounded or answered, *see Lambert*, 798 S.E.2d at 183. Plaintiffs' counsel took 16 depositions of Defendants, at which they introduced roughly 770 exhibits, and they took 17 third-party

depositions. Barkai Decl. ¶¶ 13, 16. Plaintiffs also served 92 subpoenas on approximately 60 non-parties, including multiple social-media companies and cell phone providers, in part because certain Defendants had deleted discoverable ESI or refused to produce it themselves. *See id.* ¶ 15; *see* Dinielli Decl. ¶ 21 ("The responsible plaintiffs' lawyer will gather all those materials, mostly from third parties."). In the end, they "collected more than 1.5 million documents from approximately 62 custodians, including more than 356,000 images and over 6,000 audiovisual files." Barkai Decl. ¶ 17. Plaintiffs' litigation team had "to scrape all those sources and then piece the information together," Dinielli Decl. ¶ 22(a), to develop a comprehensive factual record that they believed would persuade the jury, *see id.* ¶ 17 ("As is true in this case, the outcome and success of [fact-driven impact] cases often depended as much or more on the extent and quality of the factual record [plaintiffs' counsel] developed as it did on legal questions put to the court."). *See also id.* ¶ 31 ("This is the way you build a factual record in a case such as this. The process is tedious and time-consuming, and it demands precision and patience.").

To be sure, Plaintiffs' primary goal during fact discovery was to gather as much information as possible "that could help them prove each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence at the August 11th and 12th events," *Sines II*, 2021 WL 1143291, *5, the central legal issue in Counts I and II, and a potential ground for liability in Count III. *See Sines I*, 324 F. Supp. 3d at 798–99. But some of that information would have "reveal[ed] insights about the individuals' intent and motivation," Dinielli Decl. ¶ 21, to engage in racial, religious, or ethnic harassment, intimidation, or violence in violation of Virginia Code § 8.01-42.1, the central legal issue in Count IV. *See Sines I*, 324 F. Supp. 3d at 799–801. Thus, the hours Plaintiffs' litigation team spent propounding, reviewing, and analyzing this discovery would be "associated with" their successful § 8.01-42.1 claims in

30

Count IV, as well as their conspiracy claims in Counts I–III. *See Signature Flight Support Corp.*, 730 F. Supp. 2d at 528 ("[T]he holding in *Ulloa* simply places the burden on a party seeking attorney's fees to establish that the fees sought are 'associated' with a successful claim." (quoting *Ulloa*, 624 S.E.2d at 43)). Plaintiffs' litigation team also spent time gathering photos, videos, and witness testimony concerning Fields's car attack on August 12, 2017, to develop their successful assault or battery claim (Count V) and IIED claim (Count VI) against Fields. *See, e.g.*, BSF Billing R. 66, 68–73, 76–80, 82, 85, 169, 189–91; Cooley Billing R. 36–37, 52–54, 50, 72, 85, 87, 92–94, 97–99, 136, 139. Attorney's fees incurred for those tasks were "associated with" Plaintiffs' successful § 8.01-42.1 claim against Fields because each Plaintiff needed to prove that Fields intentionally "subjected [that Plaintiff] to acts of . . . violence against his [or her] person," Va. Code § 8.01-42.1(A). *See Manchester Oaks*, 732 S.E.2d at 703 (affirming attorney's fee award to prevailing party where triggering breach-of-contact claim "largely subsume[d] the claim for declaratory judgment," which did not allow fees, "because the circuit court was required to ascertain what the [contract] required in order to determine whether the [defendant] had breached it").

At the same time, Plaintiffs have not "establish[ed] to a reasonable degree of specificity" that all 30,666 hours billed during the Discovery & Summary Judgment phase of this litigation were "associated with" Plaintiffs' successful § 8.01-42.1 claims. *Ulloa*, 624 S.E.2d at 50. For example, the substantial amount of time spent on tasks related to deposing Defendants Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, and NSM, *see, e.g.*, BSF Billing R. 153–55, 169, 172–76, 180, 185, 189, 194–200, 203; KHF Billing R. 227, 231–33, 238–39, 242, 247–54, 542–43; Cooley Billing R. 65–66, 70–71, 93–94, 96–99, 133–34, was not "associated with" the § 8.01-42.1 claims because Plaintiffs did not sue those

Defendants under § 8.01-42.1(A). That work was devoted entirely to developing Plaintiffs' conspiracy claims against those Defendants in Counts I–III, none of which allow attorney's fees in this case. Thus, Plaintiffs cannot recover those attorney's fees. *See Sidya*, 780 S.E.2d at 208; *Manchester Oaks*, 732 S.E.2d at 703.

Plaintiffs also have not established an entitlement to attorney's fees for the full 14,723.4 hours billed during the "Pretrial Disclosures & Motions" and "Jury Trial" phases of this litigation. Clearly, some portion of the time Plaintiffs' litigation team spent making pretrial disclosures; researching, writing, and arguing evidentiary motions; preparing dozens of witnesses to testify; working on stipulations and exhibits; and presenting each Plaintiff's case during the four-week jury trial was "associated with" those Plaintiffs' successful § 8.01-42.1 claims. *See, e.g.*, KHF Billing R. 531, 558, 634, 637–68, 647, 655, 657, 658, 666–67, 675–78, 687, 700–07, 723–64; Cooley Billing R. 225, 230, 240, 245–46, 269–80; Paul Weiss Billing R. 58–92. "Each of these tasks require[d] an attorney's [or paralegal's] time and, provided the time is reasonable in light of [their] experience and the nature of the case, [they] may expect compensation for that time at a reasonable rate." *Lambert*, 798 S.E.2d at 185. Even the Count IV Defendants concede that Plaintiffs should be reimbursed "for the costs necessary to effectively litigate the claim that—after all—[they] prevailed on," *id.* (emphasis omitted). *See* Defs. Kessler, Damigo & Identity Evropa's Br. in Opp'n 1–5; Def. Fields's Br. in Opp'n 1–3; Pls.' Reply 6, 13 n.5.

Here, the challenge lies in determining the extent to which Plaintiffs produced "sufficient evidence" that the requested fees compensate tasks or services associated with their successful § 8.01-42.01(A) claims against Kessler, Spencer, Kline, Ray, Cantwell, and Fields—but not those related solely to "causes of action created by other statutes or by common law." *Sidya*, 870 S.E.2d at 207–08; *see also Schlegel*, 628 S.E.2d at 369. Taking a rigid mathematical approach—

32

such as finding that only one-sixth of the 46,950 hours billed were associated with the one claim (of six) presented to the jury that allows Plaintiffs to recover any attorney's fees under Virginia law—is not appropriate in a complex, fact-intensive, civil-rights conspiracy case, like this one, where the type and amount of work that Plaintiffs' counsel performed on that one claim at each stage of the litigation overlapped to varying degrees with their work on the other five claims. *See* Dinielli Decl. ¶¶ 17–27.

Based on my extensive familiarity with the litigation, I find Plaintiffs' billing records and supporting affidavits "establish to a reasonable degree of specificity" that Plaintiffs' 26-member litigation team spent **11,737.5 hours** on compensable tasks "associated with," *Ulloa*, 624 S.E.2d at 50, Plaintiffs' successful § 8.01-42.1 claims against Kessler, Spencer, Kline, Ray, Cantwell, and Fields. This figure represents **25%** of the **46,950.2 hours** billed for the entire four-year litigation. In their brief, Plaintiffs recognize that their attorneys spent significantly more time and effort developing and litigating all Plaintiffs' conspiracy claims in Counts I–III, which required them to show that each of seventeen Defendants (including organizations) agreed with at least one other conspirator to commit racially motivated violence (Counts I & II), and to commit any *one* of the substantive torts (Count III) alleged in Counts IV, V, or VI, than they did developing or litigating certain Plaintiffs' § 8.01-42.1(A) claims against six individual Defendants in Count IV. *See generally* Pls.' Mot. 8–17, 23–27, 29–30; *accord* Dinielli Decl. ¶¶ 18, 20–22. Conversely, their attorneys spent relatively little time developing and litigating certain Plaintiffs' assault or battery claim (Count V) and IIED claim (Count VI) against Fields alone, neither of which required proof that Fields's car attack was "motivated by racial, religious, . . . or ethnic animosity," Va. Code § 8.01-42.1(A). Allowing certain Plaintiffs to claim **11,737.5 hours** for the entire litigation strikes a reasonable balance between compensating their counsel for work

associated with those Plaintiffs' successful § 8.01-42.1(A) claims, as the General Assembly clearly intended, *see Lambert*, 798 S.E.2d at 185, and not compensating them for work related solely to the claims that do not allow fee shifting in this case, *see Sidya*, 870 S.E.2d at 207–08.

Each member of Plaintiffs' litigation team—from partners billing $450 or $400 per hour, to associate attorneys billing $225 per hour, to paralegals billing $100 per hour—contributed to those overall hours. Plaintiffs' billing records are too detailed and voluminous to identify the individual attorney(s) and/or paralegal(s) who performed this work. *Cf. Lambert*, 798 S.E.2d at 185 (awarding attorney's fees "does not require the court to pore over pages and pages of billing records to determine the reasonableness of each line-item"). Accordingly, I find that Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis incurred **$3.18 million** in attorney's fees successfully litigating their § 8.01-42.1 claims in Count IV. As above, this figure represents **25%** of the **$12,726,103.86** billed for the entire litigation.

2.      *Reasonable Attorney's Fee Award*

Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis must also show $3.18 million in attorney's fees "are reasonable and that they were necessary" to successfully litigating their § 8.01-42.1 claims. *Sidya*, 870 S.E.2d at 280. "[T]he amount of recoverable attorney's fees rests within the sound discretion of the trial court," *Cangiano*, 623 S.E.2d at 894, guided by certain relevant factors. The Virginia Supreme Court has "identified seven factors for courts to consider" in determining a "reasonable" attorney's fee award:

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Lambert*, 798 S.E.2d at 183. Defendants Kessler and Fields assert that a court cannot award any attorney's fees against them "based on their inability to pay." Defs. Kessler, Damigo & Identity

34

Evropa's Br. in Opp'n 5; *see* Def. Fields's Br. in Opp'n 2–3. The Virginia Supreme Court has not identified the losing party's financial condition as a relevant factor that courts may consider in determining a reasonable attorney's fee award, and Defendants do not cite any Virginia court decision suggesting that courts should consider it. *See* Def. Fields's Br. in Opp'n 2. Accordingly, I consider only the seven factors above. *See Lambert*, 798 S.E.2d at 182 (noting that a trial court abuses its discretion when it "give[s] significant weight" to an "irrelevant or improper factor").

    a.    *Plaintiffs' litigation team expended reasonable time and effort on necessary and appropriate tasks*

The declarations submitted by Plaintiffs' lead counsel, as well as their outside expert, persuasively demonstrate that Plaintiffs' litigation team spent a reasonable amount of time and effort on tasks necessary to investigate, develop, and effectively litigate Plaintiffs' successful § 8.01-42.1 claims against six individual Defendants, *see Lambert*, 798 S.E.2d at 185, all of whom "adhere to right-wing extremist ideologies," Dinielli Decl. ¶ 22(b). *See generally* Dinielli Decl. ¶¶ 21–22, 32(d)–(f); Barkai Decl. ¶¶ 7–18, 22–24; Dunn Decl. ¶¶ 15, 17–19; Levine Decl. ¶¶ 17–19; Phillips Decl. ¶¶ 17–19. Plaintiffs also faced seemingly endless "unique and complicated" problems obtaining discovery from most of those Defendants, *Sines v. Kessler*, No. 3:17cv72, 2022 WL 972600, at *5 (W.D. Va. Mar. 30, 2022) ("*Sines III*") (published), which required their attorneys to devote even more time and effort to developing Plaintiffs' § 8.01-42.1 claims and generally made their jobs more difficult. Pls.' Mot. 11–17; *see, e.g.*, *Sines v. Kessler*, No. 3:17cv72, 2021 WL 5492826, at *1 (W.D. Va. Nov. 19, 2021) (Kline, Ray); *Sines v. Kessler*, No. 3:17cv72, 2021 WL 4820683, at *10–11, *15 (W.D. Va. Oct. 15, 2021) (Fields); *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1143291, at *5 (W.D. Va. Mar. 24, 2021) (discussing the parties' ESI Stipulation & Order, ECF No. 383, applicable to Kessler, Spencer, and Cantwell). Cantwell, who was incarcerated and represented himself for most of the four-year litigation, was

particularly vigorous in opposing Plaintiffs Romero and Willis's § 8.01-42.1(A) claim against

him before, during, and after trial. *See Lambert*, 798 S.E.2d at 185 ("Undoubtedly, the number of

tasks and the time required for them will vary . . . based on the vigor with which the opposing

party responds.").

       *b.*      *The legal services rendered were novel, complex, and valuable*

      Virginia's General Assembly enacted § 8.01-42.1 in 1988. "Very few courts ha[d]

provided elaboration of the statute" when Plaintiffs brought this lawsuit in October 2017. *Sines I*,

324 F. Supp. 3d at 800; *see* Pls.' Mot. 25. Even fewer had addressed the "intersection between

the First Amendment—a defense frequently raised by" several Count IV Defendants, Pls.' Mot.

26—and liability under § 8.01-42.1. *See Sines I*, 324 F. Supp. 3d at 800–04. In an uncharted legal

landscape like this, developing a persuasive factual record supporting each Plaintiff's § 8.01-42.1

claim required exceptional skill and resources. *See* Dinielli Decl. ¶¶ 17, 22(b)–(c). Those

challenges were only compounded by the facts that four Count IV Defendants represented

themselves for most of the litigation (Ray, Kline, Cantwell, Spencer) and two of those

Defendants were held in civil contempt for violating numerous discovery orders.

       *c.*      *Plaintiffs obtained very good results on their § 8.01-42.1 claims.*

      The "results obtained" factor looks at the "effectiveness of the attorney's representation

in achieving the client's goals." *Lambert*, 798 S.E.2d at 184. As noted, the jury found all six

Defendants liable to each Plaintiff under § 8.01-42.1(A), *see* J. 2–3, and it awarded $250,000

compensatory damages each to Romero and Willis, and $200,000 punitive damages each against

Kessler, Spencer, Kline, Ray, and Cantwell for his conduct at the torchlight march on August 11,

2017. While the jury did not require Fields to pay any damages to Romero, Muñiz, Wispelwey,

Sines, Blair, Martin, or Willis under § 8.01-42.1(A) for subjecting them to his violent "car

attack" on August 12, 2017, it awarded at least $50,000 compensatory damages to each of them,

plus $12 million punitive damages, against Fields for that same misconduct on Counts V–VI. *See id.* (citing Jury Verdict ¶¶ 11–12, 14–15). Accordingly, the jury's failure to assess damages against Fields under § 8.01-42.1(A), specifically, does not detract from the effectiveness of counsel's representation in obtaining "substantial" damages awards both to compensate each Plaintiff for his or her injuries, *Sines IV*, 2022 WL 18026336, at *38, and to "punish offensive or unlawful conduct and deter it in the future," *Wilkins*, 587 S.E.2d at 584.

        d.     *The fees incurred were consistent with those generally charged for similar services*

Each member of Plaintiffs' 26-member litigation team—from partners billing $450 or $400 per hour, to associate attorneys billing $225 per hour, to paralegals billing $100 per hour— contributed to the $3.1 million in attorney's fees Plaintiffs incurred on Count IV. These hourly rates are, objectively, "consistent with those generally charged for similar services," *Lambert*, 798 S.E.2d at 183, and with the prevailing market rates for this type of work in the Charlottesville area. *See Commn'w v. Orndoff*, No. CL19-955, 2020 WL 8839685, at *3 (Va. Cir. Jan. 3, 2020) (noting that this "is an objective factor" that can be "determined by expert testimony or the experience of the trial judge," and finding that $350 per hour for attorneys and $200 per hour for paralegals were rates "generally charged for similar services [by] lawyers and paralegals" with comparable experience in Shenandoah County). I have approved most of those hourly rates in awarding Plaintiffs attorney's fees in discovery disputes throughout this litigation. *See, e.g.*, *Sines III*, 2022 WL 972600, at *5. Additionally, no Defendant objected to these proposed hourly rates. *See* Pls.' Reply 6 & n.1.

Accordingly, I find that **$3.18 million** is a reasonable amount to compensate Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis for the attorney's fees necessarily

incurred to effectively litigate their successful § 8.01-42.1 claims against Defendants Kessler,

Spencer, Kline, Ray, Cantwell, and Fields. *See Lambert*, 798 S.E.2d at 185.

B.      *Other Costs Under Rule 54(d)(1)*

Plaintiffs submitted a Bill of Costs, ECF No. 1553, and copies of invoices, ECF Nos.

1552-4 to 1552-21, seeking three categories of costs under Rule 54(d)(1) and 28 U.S.C. § 1920:

| | |
|---|---|
| Fees of the clerk and marshal: | $16,117.74 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case: | $241,908.99 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case: | $287,994.73 |
| **Total:** | **$546,018.46** |

Pls.' Mot. 20 (citing 28 U.S.C. § 1920(1)–(2), (4)). The $16,117.74 in "fees of the clerk and

marshal" went entirely to private "legal process service provider[s]" that served, or tried to serve,

pleadings and/or subpoenas on various Defendants, third parties, and nonparties. *See* Pls.' Mot.

Ex. A, Decl. of Yotam Barkai, Esq. ¶ 25(a)–(b), (d), (f)–(g), (i)–(l), (n), (r), ECF No. 1551-1.

Plaintiffs paid $287,994.73 in fees to three litigation-support companies for printing copies of

exhibits, deposition and trial transcripts, and other materials used for witness preparation,

meetings, and depositions throughout the course of litigation. *See id.* ¶ 25(c), (e), (m). Finally,

Plaintiffs paid $241,908.99 in fees to private companies for making video recordings and/or

transcripts of multiple depositions or attempted depositions, as well as to this Court's official

court reporter for same-day transcripts of the four-week jury trial. *See id.* ¶ 25(h), (o)–(q).

No Defendant objected to Plaintiffs' requested costs under Rule 54(d)(1). *See* Pls.' Reply

6, n.1, 13 n.5. Nonetheless, this Court has an independent obligation to review Plaintiffs'

expense records to ensure that any payment order issued under Rule 54(d)(1) extends only to

those "costs" enumerated in 28 U.S.C. § 1920. *Taniguchi*, 566 U.S. at 565; *cf. Sines III*, 2022 WL 972600, at *6 n.4 (noting the Court had the same obligation to review Plaintiffs' billing records before awarding attorney's fees under Rule 37(b) or (d)).

      *1.*     *No Fees for Private Process Servers*

      "There is a longstanding circuit split" on whether fees paid to "private process servers are recoverable under § 1920(1), which provides that '[f]ees of the clerk and marshal' are taxable costs." *Qayumi v. Duke Univ.*, 350 F. Supp. 3d 432, 435 (M.D.N.C. 2018) (citing *Schwarz & Schwarz of Va. v. Certain Underwriters at Lloyds*, No. 6:07cv42, 2010 WL 452743, at *3 (W.D. Va. Feb. 8, 2010) (Moon, J.) (collecting cases)). The Fourth Circuit has not weighed in on that question. *See McLaurin*, 2022 WL 16953656, at *3. The trend in the Western District of Virginia is to deny such requests because federal courts cannot award costs "not enumerated in § 1920," *Taniguchi*, 566 U.S. at 565, and that statute's text does not reference fees for "private process severs," *Scates v. Shenandoah Mem'l Hosp.*, No. 5:15cv32, 2016 WL 6879269, at *1 (W.D. Va. Nov. 21, 2016) (collecting cases). *See, e.g.*, *McLaurin*, 2022 WL 16953656, at *3, *5. Plaintiffs do not cite any caselaw supporting their request to recover $16,117.74 in fees paid to private process services under § 1920(1). *See* Pls.' Mot. 20, 30–31. Accordingly, that amount should be cut from their Bill of Costs. *See Scates*, 2016 WL 6879269, at *1; *Schwarz & Schwarz of Va.*, 2010 WL 452743, at *3.

      *2.*     *Reduced Fees for Copying Case Materials*

      Plaintiffs paid $287,994.73 in fees to three litigation-support companies for printing copies of exhibits, deposition and trial transcripts, and other materials for use in the case:

- Case Driven Technologies: $250,888.31 for "items printed throughout trial" in October and November 2021, "including binders of exhibits, deposition and trial

transcripts, witness materials, and courtesy copies for each Defendant and the Court," Barkai Decl. ¶ 25(c);

- Epiq eDiscovery Solutions: $4,286.36 for "printing materials and binders in May 2019," *id.* ¶ 25(e); and

- TransPerfect Legal Solutions: $32,820.16 for printing and delivering "materials for witness preparation, meetings, and depositions," *id.* ¶ 25(m), from April 2018 through December 2021, *see id.* Ex. O, ECF No. 155-16, at 2–69.

*See* Pls.' Mot. 20 (citing 20 U.S.C. § 1920(4)). Section 1920(4) allows courts to tax as costs "[f]ees for exemplification and . . . making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Plaintiffs bear the initial burden to show that these copies were "reasonably necessary at the time" they were made. *Fells v. Va. Dep't of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009) (quoting *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987)).

Plaintiffs should be allowed **$250,888.31** in fees for making "binders of exhibits, deposition and trial transcripts, witness materials, and courtesy copies for each Defendant and the Court" during the jury trial. Barkai Decl. ¶ 25(c); *see Simmons v. O'Malley*, 235 F. Supp. 2d 442, 444 (D. Md. 2002) (the phrase "necessarily obtained for use in the case," § 1920(4), "includes, at a minimum, documents used at trial and copies furnished to the court and opposing counsel"). "Copies obtained merely for the convenience of [the prevailing party's] counsel, however, ordinarily are not allowed." *Simmons*, 235 F. Supp. 2d at 444 (collecting cases). Plaintiffs have not shown that the $37,106.42 in combined "charges for printing materials and binders in May 2019," Barkai Decl. ¶ 25(e) ($4,286.26), and "for the printing and delivery of materials for witness preparation, meetings, and depositions" throughout litigation, *see id.* ¶ 25(m) ($32,820.16), paid for copies of materials that were "reasonably necessary" for use in the

case, rather than obtaining copies for their attorneys' convenience. Accordingly, that amount should be cut from their Bill of Costs.

### 3.   *Reduced Fees for Transcripts or Recordings*

Plaintiffs paid $193,520.14 in fees to companies for "deposition services, including videos," or "transcripts and videos," from the depositions or "attempted depositions" of multiple parties and nonparty witnesses, Barkai Decl. ¶ 25(h), (o), (q) (citing *id.* Exs. J, Q, S), plus $48,388.85 in fees to this Court's official court reporter for "real time" transcriptions of live court proceedings and same-day productions of both a "rough draft" copy and a certified "daily" copy of the transcript from each day of the four-week jury trial, *id.* Ex. R, ECF No. 1552-19, at 2. *See* Pl.s' Mot. 20 (citing 28 U.S.C. § 1920(2)). The court reporter's invoice shows that Plaintiffs paid $23,807.70 for an original and two copies of the real time transcription and/or rough draft transcript—each of which cost $7,935.90 ($2.10 per page x 3,779 pages). *See* Barkai Decl. Ex. R, at 2. They paid $24,581.15 ($6.05 per page x 4,063 pages) for same-day production of the certified "daily" transcripts. *See id.*

Section 1920(2) allows courts to tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Plaintiffs bear the initial burden to show those costs were "'reasonably necessary at the time' they were incurred." *Fells*, 605 F. Supp. 2d at 742 (quoting *LaVay Corp.*, 830 F.2d at 528). Based on my extensive familiarity with pretrial discovery in this case, I find that Plaintiffs' costs related to recording or transcribing depositions generally were "necessary to counsel's effective performance and proper handling of the case." *Delapp v. Shearer's Foods, Inc.* No. 1:15cv20, 2016 WL 1718395, at *2 (W.D. Va. Apr. 29, 2016) (quoting *Scallet v. Rosenblum*, 176 F.R.D. 522, 526 (W.D. Va. 1997)). Thus, Plaintiffs may recover the full **$193,520.14** for those fees under § 1920(2).

The $48,388 for same-day trial transcripts is a different matter. First, Plaintiffs do not explain why their attorneys needed *three versions* of each day's trial transcript—one "real time" transcription, one "rough draft" copy, and one certified copy of the transcript "delivered daily" throughout trial—to try this case. *See generally* Pls.' Mot. 17–18, 30–31; *cf. Cherry*, 186 F.3d at 448–49 (explaining that, although § 1920(2) allows the prevailing party to recover fees for recording a deposition by any permitted method, including stenographic transcription or video recording, the party generally cannot recover the costs of recording by more than one method). In *Cherry*, the Fourth Circuit held that a prevailing party cannot "recover costs for *both* videotaping and transcribing [a] deposition" unless the party "demonstrates that both costs were 'necessarily obtained for use in the case.'" 186 F.3d at 449 (quoting 28 U.S.C. § 1920(2)). If the party fails to "show[] why either a transcript or a videotape would not have been sufficient for the need it identified," then the court should "allow only [the] transcription costs." *Id.* The same logic applies to trial transcripts and recordings. Assuming Plaintiffs needed both the real-time transcriptions of live court proceedings *and* a rough draft copy of those same transcriptions ($23,807.70) delivered to them the same day, Plaintiffs have not shown that they *also* needed a certified copy of each transcript delivered daily throughout trial ($24,581.15). Accordingly, the Court should cut $24,581.15 from Plaintiffs' Bill of Costs. *See* Barkai Decl. Ex. R, at 2.

    4.    *No Further Reductions in Recoverable Costs*

To recap, Plaintiffs carried their initial burden to show they are entitled to recover $468,216.15 in costs under Rule 54(d)(1) and 28 U.S.C. § 1920, broken down as follows:

- $217,327.84in fees for printed or electronically record deposition and trial transcripts necessarily obtained for use in the case, § 1920(2); and

- $250,888.31 in fees for exemplification and the costs of copying materials that were necessarily obtained for use in the case, § 1920(4).

Defendants now bear the burden to show why the Court should reduce that amount or deny costs altogether. *See Ellis*, 434 F. App'x at 235; *Fells*, 605 F. Supp. 2d at 742. "Factors justifying denying costs include misconduct by the prevailing party, the losing party's inability to pay, excessiveness of the costs in a particular case, the limited value of the prevailing party's victory, and the closeness and difficulty of the issues decided." *McLaurin*, 2022 WL 16953656, at *2 (citing *Cherry*, 186 F.3d at 446). "[I]t is incumbent upon the unsuccessful party to show" that recoverable costs should not be awarded to the prevailing party. *Ellis*, 434 F. App'x at 235 (citing *Teague*, 35 F.3d at 996).

Defendants Spencer, Kline, Ray, Jeff Schoep, Vanguard America, NSM, Hill, Tubbs, and LOS did not respond to Plaintiffs' request for costs under Rule 54(d)(1). *See* Pls.' Reply 6 n.1; Defs. LOS, Hill & Tubbs's Br. in Opp'n 1–2 (opposing Plaintiffs' request for attorney's fees under Va. Code § 8.01-42.1). Defendants Fields, Cantwell, Heimbach, Parrott, and TWP filed opposition briefs *suggesting* some relevant circumstances existed in this case, *see, e.g.*, Def. Fields's Br. in Opp'n 3 ("Finally, Fields manifestly has no ability to pay any award, much less the excessive award sought by Plaintiffs."); Cantwell Br. in Opp'n ¶ 9 ("Plaintiffs are not to be compensated in any way for this abuse of the legal system and Cantwell cannot pay anyway."); Defs. Heimbach, Parrott & TWP's Br. in Opp'n 2–3, 5 (noting that the jury deadlocked on Counts I and II and awarded at most nominal damages on Count III), but none presented any information or evidence *showing* "circumstances sufficient to overcome the presumption," *Ellis*, 434 F. App'x at 234, that Plaintiffs are entitled to taxable costs under Rule 54(d)(1).

Defendants Kessler, Damigo, and Identity Evropa also assert that they "cannot afford to pay the requested fees and costs." Defs. Kessler, Damigo & Identity Evropa's Br. in Opp'n 4 (emphasis omitted). A court may "deny costs to the prevailing party" if the "losing party is of such modest means that it would be unjust or inequitable to enforce Rule 54(d)(1) against him." *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 517 (D. Md. 2005) (citing *Cherry*, 186 F.3d at 447). But "the losing party must provide sufficient documentation establishing his inability to pay costs." *Id.*; *see McLaurin*, 2022 WL 16953656, at *4. "[M]ere allegations of hardship are insufficient." *Arthur v. Pet Dairy*, No. 6:11cv42, 2013 WL 6228732, at *2 (W.D. Va. Dec. 2, 2013) (Moon, J.).

Kessler submitted a sworn declaration attesting that he "cannot afford to pay" those fees and costs and that he "do[es] not expect that [he would] be able to do so in the future," Decl. of Jason Kessler ¶ 6 (Apr. 6, 2022), ECF No. 1570-3, because "it is not reasonable to expect [his] donors to send [him] money that they know is merely being passed through to the [P]laintiffs," *id.* ¶ 5. Damigo submitted a sworn declaration attesting that "[t]hroughout this litigation [he has] relied on money that is protected by law from garnishment or other collection activity to meet [his] financial obligations to [his] attorneys. Other than exempt income [he has] no money with which to pay the [P]laintiffs' requested fees and costs." Decl. of Nathan Damigo ¶¶ 4–5 (Apr. 6, 2022), ECF No. 1570-2. He did not identify this income's source or amount. Nor did he claim that he lacks *non-cash* assets that could be used to meet his financial obligations under Rule 54(d)(1). Nonparty Patrick Casey submitted a sworn declaration on Identity Evropa's behalf attesting that "Identity Evropa is a defunct organization that has no assets or revenue of any kind" and "cannot afford to pay the attorney fees and costs requested by the [P]laintiffs." Decl. of P. Casey ¶¶ 5–6 (Apr. 6, 2022), ECF No. 1570-1. No Defendant submitted financial

44

documents, or any other evidence, to substantiate his self-serving, conclusory assertion that he "cannot afford" or has "no money" to pay Plaintiffs' costs. Accordingly, they have not demonstrated "circumstances sufficient to overcome the presumption," *Ellis*, 434 F. App'x at 234, that Plaintiffs are entitled to taxable costs under Rule 54(d)(1).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT IN PART** Plaintiffs' post-trial Motion for Attorney's Fees and Costs, ECF No. 1552, and Bill of Costs, ECF No. 1553. Specifically, Plaintiffs Romero, Muñiz, Wispelwey, Sines, Blair, Martin, and Willis should be awarded **$3.18 million** in reasonable attorney's fees necessary to litigate their successful claims in Count IV that Defendants Kessler, Spencer, Kline, Ray, Cantwell, and Fields subjected those Plaintiffs to acts of racially, religiously, or ethnically motivated harassment, intimidation, or violence on August 11–12, 2017, in violation of Virginia Code § 8.01-42.1(A). *See* Va. Code § 8.01-42.1(B). The Court may hold Defendants Kessler, Spencer, Kline, Ray, Cantwell, and Fields jointly and severally liable for those attorney's fees. The Court may not award attorney's fees (as opposed to Rule 54 costs) against any Defendant not named as a party-defendant to Plaintiffs' § 8.01-42.1 claims in Count IV, or to any Plaintiff who did not bring a substantive claim under Virginia Code § 8.01-42.1(A).

Plaintiffs should be awarded **$468,216.15** in costs under Rule 54(d)(1) and 28 U.S.C. § 1920, broken down as follows:

- $217,327.84 in fees for printed or electronically record deposition and trial transcripts necessarily obtained for use in the case, § 1920(2); and

- $250,888.31 in fees for exemplification and the costs of copying materials that were necessarily obtained for use in the case, § 1920(4).

The Court may hold all Defendants jointly and severally liable for these costs under Rule 54(d)(1). Plaintiffs have not shown that they are entitled to costs for private process servers under 28 U.S.C. § 1920(1).

I will address Plaintiffs' request for $1,266,420.84 in reimbursement for certain discovery expenses under the parties' Stipulation & Order for the Imaging, Preservation, and Production of Documents, *see* Pls.' Mot. 32 (citing ECF No. 383 (Nov. 19, 2018) (Hoppe, M.J.)), in a separate Order.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk of Court shall send a certified copy of this Report & Recommendation to all counsel and pro se parties at their addresses of record.

ENTERED: March 7, 2023

Joel C. Hoppe
United States Magistrate Judge

46